**Summary of Athletic Coaching Contract**
**Edward J. Orgeron, Jr., Head Football Coach**

| | | Current | Proposed | Change | % | Notes |
|---|---|---|---|---|---|---|
| Basic | Term Ends | | 12/31/2021 | 5 years | | a |
| | Base Salary | $ 300,000 | $ 500,000 | $ 200,000 | 67% | a |
| | Supplemental Media Comp. | $ 3,450,000 | $ 2,500,000 | $ (950,000) | -28% | a |
| | Supplement TAF & Equip. | $ 550,000 | $ 500,000 | $ (50,000) | -9% | a |
| Incentive | Post-Season (max) | $ 500,000 | $ 1,100,000 | $ 600,000 | 120% | b |
| | Academic (max) | $ 200,000 | $ 200,000 | $ - | 0% | b |
| | Other | $ 150,000 | $ 275,000 | $ 125,000 | 83% | b |
| Benefits | Automobile | $ 19,200 | $ 24,000 | $ 4,800 | 25% | c |
| | Club Membership | Yes | Yes | no change | | c |
| | Other: | 0 | 0 | | | |
| **Total Certain Compensation** | | **$ 4,300,000** | **$ 3,500,000** | **$ (800,000)** | **-19%** | d |

Notes

(a) The amounts in the "*Current*" column represent former Head Coach Les Miles' contract terms. Coach Orgeron's contract term is for slightly over 5 years. The maximum liquidated damages begin at $12 million for the first calendar year of the contract; $8.5 million for the second calendar year, $6 million for the third, $4.5 million for the fourth, and $1 million for the final year.

(b) The goals for the post season incentives are the same as the previous coach; however, the amounts have changed for Coach Orgeron's contract. The academic incentives have changed to include GPA along with APR team academic goals; however, the overall maximum amount that can be earned is the same. The other incentives category has changed from where the previous coach had a longevity clause to where Coach Orgeron's other incentives include number of victories and National & SEC Coach of the year incentives.

(c) Coach Orgeron's contract does include the option of two courtesy vehicles or an allowance for two vehicles.

(d) Total Certain Compensation includes all compensation which the coach is contractually guaranteed to receive annually. It does not include the value of any incentive or fringe benefits although the Coach has received various amounts of compensation every year for post season competition, academic incentives or other incentives.

This document summarizes the key terms of the proposed employment contract for the athletic coach named below. Unless noted otherwise, the contract is attached and is based on the standard template normally used by LSU for contracts of this type. The campus recommends approval by the Board.

Recommended

_____
Joe Alleva
Vice Chancellor and Athletic Director

Reviewed, No Objections

_____
Daniel T. Layzell, Vice President for Finance
and Administration/CFO

Reviewed, No Objections

_____
Tom Skinner, LSU General Counsel

**Exhibit B**

# EMPLOYMENT AGREEMENT

**STATE OF LOUISIANA**

**PARISH OF EAST BATON ROUGE**

This Employment Agreement ("**Agreement**") is made and entered into effective the 17th day of March, 2017, by and between BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE ("**LSU**"), a body corporate existing under the Constitution and laws of the State of Louisiana, herein represented by F. King Alexander, its duly authorized President, on the one hand, and Edward J. Orgeron, Jr. ("**COACH**") and "O" The Rosy Finch Boyz, LLC (**"COMPANY"**) for the services of COACH, on the other hand.

1.  **Definitions**. For purposes of this Agreement, the following terms shall have the meaning shown:

    A.  "LSU A&M":  The campus of LSU which is located in Baton Rouge, Louisiana.

    B.  "President": The President of LSU.

    C.  "Athletic Director": The Vice Chancellor and Director of Athletics at LSU A&M.

    D.  "Base Salary Amount": The annual sum of Five Hundred Thousand and No/100 dollars ($500,000.00).

    E.  "Start Date":  November 28, 2016.

    F.  "End Date":   December 31, 2021.

    G.  "Program": The intercollegiate Football program at LSU A&M.

    H.  "Team": The intercollegiate athletic team which is a part of the Program.

2.  **Employment**.  LSU does hereby employ COACH as Head Football Coach of the Team. COACH will report directly to the Athletic Director and through him to the President. COACH will be responsible for the Program, and hereby agrees to accept such

LSU: 
COACH:

employment and to devote his attention, on a full-time basis, to the performance of the duties described in this Agreement.

3.    **Duties and Responsibilities**.    As Head Football Coach, COACH's duties and responsibilities shall include the following, all subject to compliance with applicable law, LSU by-laws and policies, and the directives, input, and advice of the President and the Athletic Director:

A.    Administering, managing, and leading the Program in a professionally appropriate and competent manner which allows the Team to effectively compete in the football classification generally known as the Power Five, within National Collegiate Athletic Association (**"NCAA"**) play;

B.    Hiring and firing (subject to appropriate approvals, such approvals not to be unreasonably withheld) and managing the assistant coaches and other athletic staff necessary and appropriate to assist COACH in meeting the responsibilities herein;

C.    Promoting and monitoring the success of the Team and its student-athletes both athletically and academically;

D.    Directing the Program, including management of staff, budget, and other resources;

E.    Understanding and agreeing that he and his staff, with reasonable assistance of LSU, are bound by and are required to be reasonably knowledgeable of: (i) applicable federal and state laws governing intercollegiate athletics; and (ii) all governing constitutions, by-laws, rules, policies, interpretations, legislation and regulations of the NCAA, the Southeastern Conference (**"SEC"**), LSU, and any

LSU: 
COACH:

other conference or organization of which LSU is or becomes a member during the term of this Agreement; all hereinafter collectively referred to as **"Governing Athletics Regulations."**

F.  Assuring and monitoring compliance with Governing Athletics Regulations by COACH and all student-athlete members of the Team, assistant coaches, other Program staff members, and other individuals under or subject to COACH's direct control, authority, or supervision;

G.  Promptly reporting any known violation of Governing Athletics Regulations to the Athletic Director and the Associate Athletic Director for Compliance;

H.  Cooperating fully in any investigation of possible NCAA or SEC violations conducted or authorized by LSU, the SEC, or the NCAA at any time;

I.  Reasonably observing, respecting, and promoting the principles of institutional control in the Program;

J.  Reasonably understanding, observing, upholding, and promoting LSU's written academic standards, requirements, and policies, and reasonably promoting an environment in which admissions, financial aid, academic services for student-athletes, and recruiting can be conducted consistent with LSU's mission;

K.  Cultivating and maintaining reasonable interaction and effective relations with the Board of Supervisors, affiliated foundations, athletic conferences, institutional alumni, the media, the public, students, faculty, staff, and friends of LSU;

L.  Using reasonable efforts to exercise due care and supervision to provide that all student-athletes, assistant coaches, other program staff members, and other individuals under or subject to COACH's control, authority, or supervision

LSU: 
COACH:

comply with all Governing Athletics Regulations and act in accordance with the high moral, ethical, and academic standards of the Program and LSU;

**M.**   Using reasonable efforts to promote the goal of LSU that every student-athlete obtains a baccalaureate degree, and reasonably cooperating with academic counselors or similar persons designated by LSU to assist student-athletes and the faculty and administrators of LSU in connection with the academic pursuits of student-athletes;

**N.**   Performing these duties at all times in a manner consistent with good sportsmanship and in accordance with the high moral, ethical, and academic standards of the Department of Athletics and LSU;

**O.**   Performing all other reasonable duties customarily performed by head football coaches serving at colleges or universities that compete in the NCAA college football classification generally known as the Power Five; and

**P.**   Understanding and complying with NCAA Bylaw 11.1.1.1 ("Responsibility of Head Coach"), which provides: "An institution's head coach is presumed to be responsible for the actions of all institutional staff members who report, directly or indirectly, to the head coach.  An institution's head coach shall promote an atmosphere of compliance within his or her program and shall monitor the activities of all institutional staff members involved with the program who report, directly or indirectly, to the coach."

**4.**   <u>Term</u>.   The term (the "Term") of this Agreement shall be for a definite term, commencing on the Start Date and ending on the End Date, unless terminated sooner in accordance with Section 11 of this Agreement or extended by mutual written agreement

LSU:
COACH:

of the parties.  Under this Agreement, beginning January 1, 2017, each "Contract Year" shall coincide with the calendar year.

5.  **Base Salary**.  LSU will pay COACH the Base Salary Amount annually, in twelve (12) equal monthly installments on LSU's regular monthly payroll date.  Any amounts due to COACH under this Section for a partial Contract Year shall be pro-rated.  The total compensation provided to COACH and COMPANY hereunder, including without limitation, the Base Salary Amount, Supplemental Compensation and Other Supplemental Compensation referenced in Paragraph 6 below, shall be reviewed at the end of each season of Program and may be adjusted at that time by the Athletic Director, subject to recommendation, review, and approval pursuant to LSU personnel policies.  However, in no event will any compensation hereunder be reduced as a result of any such review.   All compensation paid to COMPANY under this Agreement shall be paid subject to and in accordance with LSU PM-67.

6.  **Supplemental Compensation**.

   A.   **Radio, Television, Social Media & Internet**.   LSU hereby engages, and COMPANY accepts such engagement to furnish the services of COACH, as required by this Paragraph 6, for which COMPANY shall be entitled to receive Supplemental Compensation in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000), during each Contract Year, as its fee for providing the services of COACH in connection with promoting, appearing on, or participating in, as requested, and making reasonable efforts to make successful, LSU-sanctioned television, radio, social media and internet programs concerning LSU and the Program.  The components of this section are as follows:

LSU:
COACH:

i.      Radio, Television, & Internet - Two Million ($2,000,000) Dollars; and

ii.     Social Media - Five Hundred Thousand ($500,000) Dollars.

The first installment payment of Supplemental Compensation shall be an amount equal to $1,062,500 and shall be payable on or before April 30, 2017.  Thereafter, beginning in the month of May 2017, Supplemental Compensation shall be payable in equal monthly installments and may be paid from affiliated foundation funds, subject to approval of LSU and the involved foundation.  Any amounts due to COMPANY under this Section for a partial Contract Year shall be pro-rated.

iii.    The reasonable efforts required of COACH and provided by COMPANY under this Section shall be the due diligence and personal time customarily exerted by head football coaches at SEC member institutions in the promotion and production of similar radio, television and internet programs at other institutions of higher education with major intercollegiate football programs.

iv.     LSU shall exclusively own all rights to the television, radio, and internet programs and shall be entitled, at its option, to produce and market the programs or negotiate with third parties for the production and marketing of the programs.  LSU shall retain all revenue generated by the programs including but not limited to that received from program sponsors for commercial endorsements used during the programs; provided, however, that nothing contained herein shall give third parties the right to a direct endorsement of COACH without COMPANY's prior consent.  "Program

LSU: _____
COACH: _____

sponsors" shall include, but not be limited to, those persons or companies who make financial contributions supporting, or who pay a fee for, commercial announcements and endorsements used on the programs.

v.  Without prior written approval of the President and the Athletic Director, COACH shall not appear on, or in, any radio, television, or internet programs or other electronic medium (except as provided below) other than those produced or sponsored by LSU, except routine news media interviews for which no compensation is received. COACH shall not appear in or make any commercial or commercial endorsement without prior written approval of the President and the Athletic Director. Such approval shall not be unreasonably withheld.

vi.  Without limiting the obligations of this Section 6.A, the parties agree that COACH's responsibilities as the head coach of the Team shall at all times supersede and take priority over any obligations that COMPANY and/or COACH may have pursuant to this Section 6.A.

**B.    Other Supplemental Compensation**.

i.  In addition to the Supplemental Compensation provided for in Section 6.A to COMPANY, COACH shall be entitled to receive Other Supplemental Compensation in the amount of Five Hundred Thousand Dollars ($500,000), during each Contract Year, payable in twelve (12) equal monthly installments. Other Supplemental Compensation shall consist of: (a) any monetary benefits earned or received for services rendered by COACH directly to the Tiger Athletic Foundation ("**TAF**"), which is

LSU:
COACH:

currently calculated to be Four Hundred Thousand Dollars ($400,000) during each Contract Year; (b) any supplemental monetary benefits paid or funded in its discretion by TAF; (c) any monetary benefits earned or received from the LSU football Team's shoe and equipment contracts, or similar vendors, which is currently calculated to be One Hundred Thousand Dollars ($100,000) for each Contract Year; and (d) any income or benefits earned or received by COACH from LSU other than the sums paid under Sections 5, 6, 7, and 8. Any amounts due to COACH under this Section for a partial Contract Year shall be pro-rated.

ii.    In the event the amount of Other Supplemental Compensation received by COACH in a Contract Year falls below Five Hundred Thousand Dollars ($500,000), LSU shall pay COACH the difference between Five Hundred Thousand Dollars ($500,000) and the actual Other Supplemental Compensation received during that Contract Year within thirty (30) days of such determination.  LSU shall have reasonable access to all documents and records of COACH that are necessary to verify the obligations contained in this Section 6.B.

7.    **Incentive Compensation**.

A.    **Regular Season Victory Incentive Compensation.**    In the event the Team achieves ten (10) or more regular season victories in an intercollege football season, LSU will pay COACH Regular Season Victory Incentive Compensation as follows:

*Regular Season Incentive Level*                    *Amount*

LSU: 
COACH:

| i. | Ten (10) Victories | $100,000 |
| ii. | Eleven (11) Victories | $150,000 |
| iii. | Twelve (12) Victories | $200,000 |

The Regular Season Victory Compensation, if payable, shall be considered earned as of the date of the last regular season game of that Contract Year and shall be paid within sixty (60) days following the final regular season football game in which the Team and COACH participates. The Regular Season Victory Incentive Compensation earned by COACH during each intercollegiate football season is not cumulative; thus, COACH will only be compensated for the highest of the three (3) incentive levels achieved during each intercollegiate football season. The Regular Season Incentive Compensation may be paid from affiliated foundation funds, subject to approval of LSU and the involved foundation.

**B.** **Post-Season Incentive Compensation**. In the event the Team participates in post-season football game(s), LSU will pay COACH Post-Season Incentive Compensation as additional compensation for the extra services required of COACH in the preparation for and his participation in post-season play as follows:

| *Post-Season Goal* | | *Amount* |
| i. | Participation in SEC Championship Game | $100,000 |
| ii. | Win SEC Championship Game | $200,000 |
| iii. | Appear in Non-College Football Playoff ("CFP") Post-Season Bowl Game | $25,000 |
| iv. | CFP Bowl Participant (excluding semi-finals) | $150,000 |

LSU: 
COACH:

| v. | CFP Semifinal Game Participant | $150,000 |
| vi. | CFP Final Game Participant | $150,000 |
| vii. | CFP Champion | $500,000 |

The Post-Season Incentive Compensation, if payable, shall be considered earned as of the date of each game at which a Post-Season Goal is attained and shall be paid within sixty (60) days following the final post-season football game in which the Team and COACH participates.  The Post-Season Incentive Compensation earned by COACH during each intercollegiate football season is cumulative based on any and all Post-Season Goals achieved [i.e. the total amount of Post-Season Incentive Compensation could equal up to One Million One Hundred Thousand Dollars ($1,100,000) in a given Contract Year should COACH and the Team achieve Post-Season Goals (i), (ii), (v), (vi), and (vii) during any Contract Year]. The Post-Season Incentive Compensation may be paid from affiliated foundation funds, subject to approval of LSU and the involved foundation.

C.  **Coaching Recognition Incentive Compensation.**  COACH may earn Coaching Recognition Incentive Compensation as follows:

i.  In the event COACH is named the National College Football Coach of the Year by ESPN (The Home Depot Award) <u>or</u> the National Sportscasters and Sportswriters Association (The Paul "Bear" Bryant Award) <u>or</u> the Associated Press <u>or</u> the American Football Coaches Association <u>or</u> COACH is named recipient of the Bobby Dodd Trophy, LSU will pay COACH Coaching Recognition Incentive Compensation in the amount of Fifty Thousand Dollars ($50,000).

LSU:
COACH:

ii.   In the event COACH is named SEC (Southeastern Conference) Coach of the Year by either the Associated Press (AP) or by vote of the SEC coaches, LSU will pay COACH a Coaching Recognition Incentive Compensation in the amount of Twenty Five Thousand Dollars ($25,000)

iii.  The Coaching Recognition Incentive Compensation, if payable, shall be considered earned as of the first date any of the listed honors is named and shall be paid within sixty (60) days of that date.  Only one incentive in Section 7.C.i and one incentive in Section 7.C.ii can be earned by COACH during each intercollegiate football season; thus, the maximum amount COACH can receive in Coaching Recognition Incentive Compensation is $75,000 during a Contract Year even if he receives more than one of the listed awards during that Contract Year.   The Coaching Recognition Incentive Compensation may be paid from affiliated foundation funds, subject to approval of LSU and the involved foundation.

**D.**   **Academic Incentive Compensation**.  In the event the Team achieves any one or more of the following Team Academic Goals, based on the Academic Progress Rate ("APR") compiled and reported annually by the NCAA, or on the grade point average ("GPA") calculated by LSU, in an Academic Year (defined as beginning with the summer semester and ending immediately prior to the summer semester of the following Contract Year) during the term of this Agreement, LSU will pay COACH Academic Incentive Compensation as follows, which Academic Incentive Compensation is hereby approved without further action by the Board of Supervisors.

LSU:
COACH:

| *Team Academic Goals* | | *Amount* |
|------|------|------|
| i. | Team cumulative GPA of 2.75 or higher | $75,000 |
| ii. | Team cumulative GPA of 3.0 or higher | $50,000 |
| iii. | Single year APR of 960 or higher | $75,000 |

The Academic Incentive Compensation, if payable, shall be considered earned as of the end of the spring semester each Academic Year and shall be paid within sixty (60) days following that date.   The Academic Incentive Compensation earned by COACH during each Academic Year is cumulative based on any and all Team Academic Goals achieved [i.e. the total amount of Academic Incentive Compensation could equal up to Two Hundred Thousand ($200,000) in a given Academic Year should COACH and the Team achieve all three (3) of the listed Team Academic Goals].   The Academic Incentive Compensation may be paid from affiliated foundation funds, subject to approval of LSU and the involved foundation.

8.    **Retirement and Fringe Benefits**.   COACH shall be entitled to participate in the retirement and fringe benefit programs available to all unclassified professional LSU employees, with contributions and benefit amounts (including state retirement benefits) based only upon the Base Salary Amount and any earned Post-Season Incentive Compensation and in accordance with the limitations of state retirement law. Regardless of whether the services required by this Agreement are performed directly for LSU or through contract with a separate legal entity, whether or not such other entity is under the control of COACH, sums paid or authorized under Sections 6 (Supplemental Compensation), 7.A (Regular Season Victory Incentive Compensation), 7.C (Coaching Recognition Incentive Compensation), 7.D (Academic Incentive Compensation), 8

LSU:
COACH:

(Retirement and Fringe Benefits), 9 (Additional Revenue), and 10 (Sports Camps) shall not be considered "base pay," "earned compensation," or "earnable compensation" as such terms are defined in Louisiana Revised Statutes 11:403 and 11:701, or other applicable Louisiana retirement laws, and shall not be included as compensation for the purpose of computation of retirement benefits. COACH understands and agrees that no contributions for purposes of any State of Louisiana retirement program will be made by LSU or withheld from COACH's compensation except as to the Base Salary Amount and any earned Post-Season Incentive Compensation, and COACH shall not be entitled to any retirement benefits that may otherwise be attributable to any other compensation paid pursuant to this Agreement. During the term of this Agreement and in accordance with LSU by-laws and policies, and applicable law, COACH will also receive the following benefits, part or all of which may be paid from affiliated foundation funds, subject to approval of LSU and the involved foundation:

A.     Membership in a social club, such as the University Club of Baton Rouge, provided that: (i) monthly dues shall be paid from affiliated foundation funds, subject to approval of such foundation; (ii) business-related (non-personal) expenses incurred in accordance with LSU and foundation policy will be reimbursed from affiliated foundation funds; and (iii) COACH shall be responsible for payment of all personal charges. Notwithstanding the foregoing COACH shall not be personally responsible for expenses authorized and incurred by COACH and his staff in connection with the ordinary functions associated with an intercollegiate football program, and in accordance with LSU policy;

LSU: _Mike_
COACH: _____

**B.**     Mobile communications device and service, for which some or all charges incurred may be paid from affiliated foundation funds;

**C.**     COACH will be allowed to invite guest(s) for travel to athletic events on chartered commercial transportation subject to approval by the Athletic Director;

**D.**     Paid vacation as approved by the Athletic Director;

**E.**     An annual automobile allowance in the amount of up to $2,000 per month or, to the extent consistent with state ethics laws, concurrent use of two (2) courtesy vehicles (if available) provided by dealership(s) and related insurance reimbursed from affiliated foundation funds;

**F.**     COACH will be provided tickets to home, away and postseason contests for football and other sports, subject to existing LSU regulations and policies; and

**G.**     Other customary, reasonable and related employee benefits to be provided by foundations affiliated with LSU, as authorized by the Athletic Director and President after review and approval by the LSU General Counsel and a determination that such benefits are in compliance with LSU by-laws and policies, and state laws.

**9.**     **Additional Revenue**.

**A.**     Subject to the limitations imposed by this Section and compliance with applicable laws and Governing Athletic Regulations, if any, and LSU's PM-11, COACH may earn or receive other revenue ("Additional Revenue") while employed by LSU provided, however, that COACH shall obtain prior written approval from the Athletic Director and President, which approval shall not be unreasonably withheld, before engaging in any commercial or private venture, including the use

LSU: _[signature]_
COACH: _[signature]_

of COACH's name by any commercial, public or private entity.  COACH shall report annually in writing to the President and the Athletic Director on or before January 31st of each Contract Year all athletics-related income from sources outside LSU or any affiliated foundation, and LSU shall have reasonable access to all records of COACH to verify this report.

**B.**     LSU does not guarantee any amount of Additional Revenue.

**C.**     COACH shall not, without prior written approval of the President and the Athletic Director, arrange for or agree to the receipt by any assistant football coach of any supplemental pay, bonus or other form of payment from any outside source, except for income earned by assistant coaches from COACH's operation of his sports camps, or as otherwise authorized by LSU in accordance with PM-11.

**10.    <u>Sports Camps</u>**.  Subject to limitations imposed by this Section and compliance with applicable laws, LSU policies and procedures, and Governing Athletic Regulations, COACH may operate or work at sports camps and/or clinics at LSU.  LSU does not guarantee or provide any supplemental compensation or additional revenue from operation of sports camps and/or clinics.  COACH shall not be permitted to sell, assign, lease, donate or otherwise transfer any ownership, assets or interests in such a camp or clinic to any other person or entity, without the prior written approval of the President.

**11.    <u>Termination</u>**. This Agreement may be terminated by the parties only as follows:

**A.     Termination by LSU for Cause**. This Agreement may be terminated by LSU, acting through the President or Athletic Director, for "cause" as defined herein, at any time prior to its expiration, upon written notice to COACH. In the event of termination for cause, COACH's Base Salary, Supplemental Compensation, Other

LSU: 
COACH:

Supplemental Compensation, Incentive Compensation, Fringe Benefits, and all other compensation and benefits provided for in this Agreement shall terminate on the termination date, and LSU shall not thereafter be liable to COACH for any sums or damages other than such compensation and benefits earned prior to the termination date. The termination date shall be the date on which notice of termination is given, or on such later date as may be set forth by LSU in the notice of termination. Any decision as to whether the criteria contained in this Section 11.A have been met shall not be made arbitrarily or capriciously by LSU.  Prior to termination for cause, COACH: (i) shall be provided with written notice of contemplated termination and a statement of the grounds and facts in support thereof; and (ii) shall have five calendar days from receipt of such notice to make a written request for hearing on the contemplated action.  If requested in writing by COACH, a hearing shall be held before the President or his designee(s), and at such hearing COACH shall have the right to counsel and to present the testimony of witnesses and other reliable evidence.  The procedures shall conform to, and evidence may be considered consistent with, federal and state due process standards for such hearings.

For purposes of this Section, "cause" shall be defined as:

i.      Committing a material violation of Governing Athletics Regulations (for purposes of this sub-paragraph (i) only, a material violation of NCAA Bylaws shall be a Level I or Level II violation), or failing promptly to report any such violation by another person to the President and the Associate Athletic Director for Compliance;

LSU:
COACH:

ii.     Commission of a material violation of Governing Athletics Regulations involving any aspect of the Program by any other person if either: (a) the violation occurs or continues to occur after COACH knew or should have known that it occurred, was about to occur or was occurring, or (b) COACH failed to establish and maintain reasonable policies and procedures, or to follow reasonable policies and procedures established in writing by the Athletic Department for the Program to prevent violations of Governing Athletics Regulations from occurring and to detect promptly any such violations which may occur;

iii.    Committing or being convicted of or pleading no contest to either: (a) any felony; or (b) any misdemeanor involving gambling, drugs, or alcohol;

iv.     Engaging in misconduct which either: (a) displays a continual, serious disrespect or continual, serious disregard for the mission of LSU; (b) brings COACH into substantial public disrepute sufficient to impair COACH's ability to perform the obligations contained herein without adverse impact on the Team or Program; or (c) constitutes moral turpitude or breaches the high moral and ethical standards applicable to COACH as a visible representative of LSU;

v.      Unreasonably refusing or repeatedly failing to perform any duties imposed upon COACH herein (including, but not limited to, those duties and responsibilities set forth in Section 3), or failing to perform the same to the best of COACH's reasonable ability, after written notice to COACH of LSU's reasonable expectation;

LSU: _____
COACH: _____

vi.    Knowingly committing material or repeated significant violations of any provision of this Agreement, provided said initial violations are not cured within ten (10) days of COACH's receipt of written notice of the same;

vii.    Prolonged absence from LSU without its consent, which will not unreasonably be withheld;

viii.    (a) Committing fraud or making any material misrepresentation in the performance of any duties and responsibilities herein, including, but not limited to, fraud or misrepresentation in the preparation or maintenance of documents or records of LSU, the NCAA, or the SEC, or documents or records pertaining to any recruit or student-athlete, including without limitation transcripts, eligibility forms, and compliance reports, or altering any such documents; or (b) counseling, instructing, encouraging, or knowingly and intentionally permitting any other person to commit such fraud or misrepresentation;

ix.    (a) Failing to respond reasonably, accurately, and fully within a reasonable time to any requests or inquiry relating to the performance of any duties at LSU, or at any prior employment at any other institution of higher learning, propounded by LSU, the NCAA, the SEC or any other governing body having supervision over the athletic programs of LSU or such other institution of higher education, or required by law or Governing Athletics Regulations; or (b) counseling, instructing, encouraging, or knowingly and intentionally permitting any other person to fail to so respond;

LSU:
COACH:

x.    (a) Participating in any gambling, bookmaking, wagering, or betting involving any athletic contest whatsoever whether by soliciting, placing, or accepting a bet or wager or through a bookmaker, a pool, or any other method of gambling; or (b) counseling, instructing, encouraging, or knowingly and intentionally permitting any student-athlete, assistant coach, or other individual under or subject to COACH's control, authority, or supervision to participate in such activity;

xi.    (a) Furnishing any information or data, other than information or data provided to the general public through press conferences, news releases, and the like, relating in any manner to any intercollegiate sport or to any student-athlete to any individual whom COACH knows or has reason to know to be a gambler, bettor, or bookmaker, or an agent of any such person; or (b) counseling, instructing, or encouraging any student-athlete, assistant coach, or other individual under COACH's control, authority, or supervision to furnish such information or data;

xii.    Using or consuming alcoholic beverages or controlled substances, steroids, or other drugs or chemicals, whether prescribed by a physician or not, to such degree and for such a period as to impair COACH's ability to perform the duties herein;

xiii.    Selling, purchasing, using, or possessing any controlled substances, steroids, or other drugs or chemicals, the sale, purchase, use, or possession of which by COACH is prohibited by law or Governing Athletics Rules. The provisions of this subsection do not prohibit the use or possession of

LSU:
COACH:

substances or drugs lawfully prescribed by a healthcare provider, and used in accordance therewith;

xiv.    Knowingly encouraging or permitting the sale, purchase, use, or possession by any student-athlete, assistant coach, or other individual under COACH's control, authority, or supervision of any controlled substances, steroids, or other drugs or chemicals, the sale, purchase, use, or possession of which by such person is prohibited by law or Governing Athletics Rules. The provisions of this subsection shall not apply to the purchase, use or possession of substances or drugs lawfully prescribed by a healthcare provider, and used in accordance therewith;

xv.    (a) Failing reasonably to cooperate in the investigation and enforcement of Governing Athletics Regulations; or (b) counseling, instructing, or encouraging any other person to fail to cooperate in such investigation and enforcement;

xvi.    Subject to any right of administrative appeal permitted or granted to COACH by the NCAA or SEC, the making or rendition of a finding or determination by the NCAA, SEC, or any commission, committee, council, or tribunal of the same, of any major or repetitive violations by COACH of NCAA or SEC rules, or of any such major or repetitive violations by others under the direct supervision of COACH which were knowingly and intentionally permitted, encouraged, or condoned by COACH, or about which violations COACH knew or reasonably should have known, and should have acted reasonably to prevent, limit, or

LSU: _____
COACH: _____

mitigate (it is recognized that this subsection expressly includes findings or determinations of violations during employment of COACH at any other institution of higher education); or

xvii.   Failing to report promptly to the Associate Athletic Director for Compliance any violations of Governing Athletics Regulations involving the Team of which COACH has or should have knowledge.

**B.**    **Termination by LSU Without Cause.**

i.    LSU shall have the right to terminate this Agreement without cause upon written notice to COACH and COMPANY. The termination date shall be the date on which written notice of termination is given, or on such later date as may be set forth by LSU in the written notice of termination.  In such event, LSU will pay COACH and COMPANY liquidated damages, in lieu of any and all other legal remedies or equitable relief as detailed below. In the event of termination by LSU without cause, COACH's Base Salary, Supplemental Compensation, Other Supplemental Compensation, Incentive Compensation, Fringe Benefits, and all other compensation and benefits provided for in this Agreement shall terminate on the termination date, and LSU shall not thereafter be liable to COACH or COMPANY for any sums or damages other than the liquidated damages provided for herein and any compensation earned pursuant to this Agreement prior to the termination date.

ii.   Liquidated damages payable by LSU under this Section 11.B shall be as follows:

LSU: _[signature]_
COACH: _[signature]_

| Contract Year | Maximum Liquidated Damages Amount |
|---|---|
| Between January 1, 2017 – December 31, 2017 | $12,000,000 |
| Between January 1, 2018 – December 31, 2018 | $ 8,500,000 |
| Between January 1, 2019 – December 31, 2019 | $ 6,000,000 |
| Between January 1, 2020 – December 31, 2020 | $ 4,500,000 |
| Between January 1, 2021 – December 31, 2021 | $ 1,000,000 |

The Maximum Liquidated Damages amount to be paid as set forth in the above schedule shall be reduced by the amount of compensation actually paid to COACH and COMPANY under this Agreement in the terminating Contract Year prior to termination, so that the sum of the liquidated damages to be paid under this Agreement and the compensation actually paid during the terminating Contract Year prior to termination equal the "Maximum Liquidated Damages" amount listed above.  For purposes of the preceding sentence "compensation actually paid during the terminating Contract Year" shall not include compensation paid during the terminating Contract Year that was due to COACH or COMPANY for a prior Contract Year. For example, should LSU terminate COACH and COMPANY after the second season on November 30, 2018, COACH and COMPANY would be paid $5,291,667 [$8,500,000 less ($3,500,000 divided by 12 months multiplied by 11 months)]. Partial months will be pro-rated.  LSU will pay the first $2,000,000 of liquidated damages to COACH within 60 days of termination, unless the total applicable sum of liquidated damages due to COACH is less than $2,000,000, in which case that sum shall be

LSU: _____
COACH: _____

paid to COACH within 60 days of termination. Should liquidated damages exceed $2,000,000, LSU will pay the remaining balance in equal monthly installments over the remaining duration of the Agreement, commencing on the last day of the month immediately following the month in which the initial $2 million payment is made and continuing on the last day of each succeeding month thereafter during the payment period. The liquidated damages amount for Contract Year January 1, 2021 – December 31, 2021 is not subject to reduction of any kind and the liquidated damages amount for any prior Contract Year is subject only to any reduction expressly provided herein.

iii.   The allocation of payment(s) between COACH and COMPANY shall be made on a pro rata basis according to their then applicable compensation under this Agreement.

iv.   The offsets, extinguishment and reductions pursuant to this Section 11, if applicable, are not intended to be deferred compensation, but rather a means to mitigate damages in accordance with Louisiana law, and LSU will reasonably cooperate with COACH and/or COMPANY to establish this fact, if necessary.

v.   The parties have bargained for this liquidated damages provision, giving consideration to the following: This is a contract for personal services. The parties recognize that termination of this Agreement by LSU prior to its expiration by lapse of term would cause COACH and COMPANY to lose the salary, supplemental compensation, fringe benefits, certain other

LSU:
COACH:


LSU-provided benefits, and possibly other income and benefits provided by third parties, which damages are impossible to determine with certainty. As such, the damages to be suffered by COACH and COMPANY in the event of a termination of this Agreement by LSU without cause are difficult to presently and accurately estimate. In addition, the parties expressly agree that all liquidated damages herein are not in any way a donation or a penalty, but rather are a good faith estimate of damages that will be incurred in the event of termination.    In consideration of this provision, COACH and COMPANY irrevocably waive any and all rights to equitable relief, including temporary restraining orders and injunctions, or actions seeking specific performance by LSU.

**C.    Termination by COACH and COMPANY Without Cause.**

i.    COACH and COMPANY shall have the right to terminate this Agreement without cause upon written notice to LSU. In the event COACH and/or COMPANY terminates this Agreement without cause, COACH and COMPANY will collectively pay, or alternatively cause a third party to pay, liquidated damages to LSU, in lieu of any and all other legal remedies or equitable relief. In any event, COACH shall be solely responsible for making arrangements for payment of any liquidated damages due to LSU under this Agreement, and COACH acknowledges that he is responsible to make such payment(s) in the event that COMPANY or the designated third party fails to make the required payment(s). In the event of

LSU: _____
COACH: _____

termination by COACH or COMPANY without cause, the Base Salary, Supplemental Compensation, Other Supplemental Compensation, Incentive Compensation, Fringe Benefits, and all other compensation and benefits provided for in this Agreement shall terminate on the termination date which, unless otherwise agreed to in writing by LSU on one hand and COACH and COMPANY on the other hand, shall be the earlier of: (i) the date on which COACH provides written notice of termination to LSU; (ii) the date on which COACH accepts employment from another employer; or (iii) the date on which COACH performs any work or services of any kind or nature whatsoever on behalf of or for the benefit of another employer. LSU shall not thereafter be liable to COACH or COMPANY for any sums or damages other than any compensation earned pursuant to this Agreement prior to the termination date. The Parties acknowledge that this provision is intended to obligate COACH and COMPANY to repay compensation and fees previously received under the premise that COACH and COMPANY would fulfill the Term of this Agreement.

ii.    In the event of termination without cause by COACH, liquidated damages owed under this Section 11.C will be as follows:

| *Termination by Coach Date* | *Amount* |
|---|---|
| On or Before 11/28/2017 | $3,500,000 |
| After 11/28/2017 and On or Before 11/28/2018 | $3,000,000 |
| After 11/28/2018 and On or Before 11/28/2019 | $2,500,000 |
| After 11/28/2019 and On or Before 11/28/2020 | $1,500,000 |

LSU: _____
COACH: _____

After 11/28/2020 and On or Before 11/28/2021          $500,000

On or After 11/29/2021          $-0-

COACH and/or COMPANY shall pay or cause to be paid such amount in a lump sum within sixty (60) days of the termination date.

iii.    The parties have bargained for this liquidated damages provision, giving consideration to the following:  This is a contract for personal services. The parties recognize that termination of this Agreement by COACH and COMPANY prior to its expiration by lapse of term would cause LSU to incur administrative, recruiting, and resettlement costs in obtaining a replacement head coach for Team, in addition to potentially increased compensation costs and loss of ticket revenues, loss of recruits or current student-athletes, loss of continuity and stability, and intangible damages such as damages to LSU's and/or the Program's reputation, and goodwill, which damages are impossible to determine with any certainty. COACH recognizes that his promise to work for LSU until its expiration by lapse of term is an essential consideration of and a material inducement for LSU's decision to employ him in the position described in Section 2, above. COACH also recognizes that LSU is making a highly valuable investment in his continued employment by entering into this Agreement and its investment would be lost or diminished were he to resign or otherwise terminate his employment with LSU prior to the expiration of its Term. The payment owed pursuant to this liquidated damages provision is to pay for the damages suffered as outlined above and to reimburse LSU

LSU: _[signature]_
COACH: _[signature]_

for expenses, including but not limited to (i) searching for, recruiting and hiring a replacement for COACH, (ii) relocating the new coach, and (iii) buying out the contract, if necessary, of the new coach. COACH expressly agrees that the amount of liquidated damages provided for herein is a reasonable approximation of the harm that LSU will incur in the event of such early termination by COACH.  In consideration of this provision, LSU irrevocably waives any and all rights to equitable relief, including temporary restraining orders and injunctions, or actions seeking specific performance by COACH and/or COMPANY.

iv.    Unless notice of termination under this Section 11 has been given by either party, neither COACH nor any agent on his behalf shall, under any circumstances, discuss or negotiate directly or indirectly prospective employment with any other institution of higher education, professional athletic team, or other athletics-related (including media and sports marketing) prospective employer without giving at least twenty-four (24) hours prior written notice to the President and the Athletic Director.

**D.    Suspension or Other Disciplinary Action.**

i.    In lieu of termination for cause, and in addition to any rights it may have under Section 11.A, LSU may impose upon COACH disciplinary sanctions less severe than termination, up to and including suspension or leave without pay for a period no longer than ninety (90) days for any act or omission which would be grounds for termination for cause. Imposition of such sanctions shall be at the discretion of LSU, and shall not be

LSU:
COACH:

exercised arbitrarily or capriciously. During a period of suspension under this sub-section, COACH shall not be entitled to receive any compensation or benefits under this Agreement.

ii.    LSU may suspend COACH for an indefinite period during any investigation by LSU, another governmental entity, or the NCAA or SEC to determine whether COACH has materially violated any laws or Governing Athletics Regulations. During such suspension, COACH shall receive only the Base Salary Amount set forth in Sections 1 and 5 and the Fringe Benefits set forth in Section 8, and shall not be entitled to receive Supplemental Compensation, Other Supplemental Compensation, Incentive Compensation, or any other benefits, compensation or remuneration set forth in this Agreement for the period of such suspension. If the matter giving rise to the suspension is finally resolved in favor of COACH, and does not otherwise represent an independent basis for termination for cause, LSU shall pay or make available to COACH and/or COMPANY the benefits and other compensation herein otherwise payable to COACH and/or COMPANY during the period of suspension. Any such compensation and/or benefits payable pursuant to this Agreement by an affiliated foundation shall only be paid by such foundation, subject to its approval. Suspension under this sub-section shall not limit any rights of LSU to terminate COACH for cause.

iii.    COACH shall be subject to disciplinary or corrective action by the NCAA or SEC for any violation of NCAA and SEC regulations, respectively.

LSU: 
COACH:

Such action by the NCAA or the SEC shall not preclude or in any manner affect LSU's right to take such other corrective or disciplinary action as it deems necessary or proper, including termination for cause as defined herein.

E.    **Termination by Death or Disability**. In the event of the death of COACH or the inability of COACH to perform the duties and obligations described in this Agreement by reason of disability, illness, or some other occurrence beyond the control of either party, and such inability to perform has continued or will continue beyond a reasonable period of time, but not less than ninety (90) consecutive days, this Agreement shall terminate as a termination for cause and all future obligations between the parties shall cease upon the termination date reasonably established by LSU, unless otherwise required by law.

F.    **Exclusive Remedies and Waiver of Claims**. The financial consequences of termination of this Agreement or suspension herein, and any remedies pertaining thereto, are exclusively set forth herein. Therefore, with the sole exception of payments required by this Agreement, in any instance of termination for cause or without cause, or suspension or other disciplinary sanction effected in accordance with the procedures established in this Agreement, neither COACH, nor COMPANY, nor LSU shall be entitled to receive, and each hereby waives any claim against the other, and their respective board members, officers, directors, agents, employees, successors, and personal representatives for consequential damages by reason of any alleged economic loss, including without limitation loss of collateral income, deferred income, loss of earning capacity, loss of business

LSU:
COACH:

opportunity, loss of perquisites, loss of fees from speaking, camps or other outside activity, or expectation income, or damages allegedly sustained by reason of alleged humiliation or defamation, or other non-compensatory and compensatory damages, punitive damages, and attorney's fees resulting from the fact of termination, the public announcement thereof, or the release by LSU or COACH of information or documents required by law. COACH and COMPANY acknowledge that in the event of either termination of this Agreement for cause, without cause, or otherwise, or suspension or other disciplinary sanction effected in accordance with the procedures established in this Agreement, COACH shall have no right to occupy the position of head coach of Team and that COACH and COMPANY's sole remedies are provided herein and shall not extend to injunctive relief or demands for specific performance by LSU. COACH further acknowledges and agrees that COACH is not eligible for and will not be considered for or granted academic tenure by LSU.

G.    **Key Man Insurance**. LSU or its affiliated athletic foundation, at the sole discretion of LSU, shall have the right at any time during the term of this Agreement to purchase "key man" insurance or other insurance on the life of COACH. COACH shall reasonably cooperate in the underwriting and issuance of any such insurance.

12.   <u>**Retention and Return of all Materials, Records, and Other Items.**</u> All documents, records, or materials, including without limitation personnel records, recruiting records, team information, films, statistics, or any other material or data furnished to COACH by LSU or developed by COACH on behalf of or at the expense of LSU or otherwise in

LSU:
COACH:

connection with the employment of COACH are and shall remain the sole and confidential property of LSU. Within ten (10) days of the expiration or termination of this Agreement, COACH shall cause any such materials in COACH's possession or control to be delivered to LSU. At the same time, COACH shall return to LSU all credit cards, keys, computers, mobile communication devices, and other items belonging to LSU which were issued to or are in the possession of COACH.

13. **Entire Contract**. This Agreement constitutes and expresses the entire agreement and understanding of the parties concerning the employment of COACH by LSU and shall, upon the effective date hereof, supersede any other oral and written agreements between the parties. There are no oral or other agreements, understandings, promises, or representations between the parties affecting this Agreement. Both parties have relied solely on their own respective judgments in entering into this agreement, with full opportunity to seek advice of competent counsel of their choosing. The Agreement shall be construed, if necessary, without reference to the party that was the principal drafter of the Agreement.

14. **Amendments to Contract**. This Agreement may be amended only by a written instrument duly approved by LSU through its designated representatives and accepted by COACH, such approval and acceptance to be acknowledged in writing. Except where expressly indicated in this Agreement, the written approval of the LSU Board of Supervisors shall be required to amend or waive any terms or conditions set forth herein. COACH expressly acknowledges that it would be unreasonable to rely upon any oral representations, or any representations made by anyone other than the particular LSU

LSU: _____
COACH: _____

representative(s) authorized by this Agreement, that purport to amend or waive any terms of this Agreement.

15. **Severability**. If any provision of this Agreement shall be deemed invalid or unenforceable, either in whole or in part, this Agreement shall be deemed amended to delete or modify, as necessary, the offending provision or to alter the bounds thereof in order to render it valid and enforceable.

16. **No Waiver of Default**. No waiver by the parties hereto of any default or breach of any covenant, term or condition of this Agreement shall be deemed to be a waiver of any other default or breach of the same or any other covenant, term or condition contained herein.

17. **Sovereign Immunity Not Waived**. It is expressly agreed and understood between the parties that nothing contained herein shall be construed to constitute a waiver or relinquishment by LSU of any rights to claim such exemptions, privileges and immunities as may be provided by law.

18. **"Force Majeure" Clause**. Neither party shall be considered in default of performance of any obligations under this Agreement if such performance is prevented or delayed by Force Majeure. "Force Majeure" shall be understood to be any cause which is beyond the reasonable control of the party affected and which is forthwith, by notice from the party affected, brought to the attention of the other party, including but not limited to war, hostilities, revolution, civil commotion, strike, lockout, epidemic, accident, fire, wind or flood or any requirements of law, or an act of God.

19. **Governing Law.** This Agreement shall be enforced and construed in accordance with the laws of Louisiana. Any civil action to enforce this Agreement shall be brought in a

LSU: 
COACH:

state or federal court having subject matter and personal jurisdiction over the parties that is domiciled in East Baton Rouge Parish, Louisiana.

THE PARTIES hereto have executed this Agreement on the day, month and year noted below, effective on the date first above written.

**[Signatures on Next Page]**

LSU:
COACH:

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE


By: _____  3/24/17

    F. King Alexander, President    Date
    Louisiana State University and
    Agricultural and Mechanical College


    _____  3 – 9-17

    Edward J. Orgeron, Jr., Head Coach    Date
    Louisiana State University and
    Agricultural and Mechanical College


"O" THE ROSY FINCH BOYZ, LLC


By: _____  3-9-17

    Edward J. Orgeron, Jr., President    Date


**RECOMMENDED:**

_____

Joseph Alleva, Vice Chancellor and Athletic Director
Louisiana State University and
Agricultural and Mechanical College


_____

Daniel T. Layzell, Vice President for Finance and Administration/CFO
Louisiana State University and
Agricultural and Mechanical College

LSU: _____
COACH: _____