UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ABBY OWENS, ET AL. | CIVIL ACTION NO.:  3:21-cv-00242 |
| Plaintiffs, | SECTION |
| VERSUS | JUDGE VITTER |
| LOUISIANA STATE UNIVERSITY, et al. | MAGISTRATE JUDGE JOHNSON |
| Defendants. | |

**DEFENDANT TIGER ATHLETIC FOUNDATION'S
MEMORANDUM IN SUPPORT OF MOTION TO COMPEL CASE STATEMENT
AND COMPREHENSIVE SUPERSEDING COMPLAINT,
SECOND MOTION FOR EXTENSION OF TIME TO RESPOND, AND
ALTERNATIVE MOTION FOR STATUS CONFERENCE**

Defendant Tiger Athletic Foundation ("TAF") asks this Court to compel plaintiffs to file a

RICO case statement and a comprehensive superseding complaint to continue "to establish an

efficient procedure for handling this RICO case."[1]  This case was, and still is, a RICO case.  Despite

plaintiffs' dismissal of their *federal* racketeering claim, they continue to press—against different,

but improperly grouped defendants—a *state* racketeering claim, which the Fifth Circuit, Louisiana

appellate courts, and legal scholars call "analogous" to federal RICO claims, making this still a

"RICO case" in need of identification of specific supporting facts and an "efficient procedure."[2]

Relatedly, TAF asks this Court to extend its response deadline until 21 days after plaintiffs file

their case statement; this is the same responsive pleading timeline that this Court already imposed.

---

[1]      R. Doc. 48 at 1.

[2]      *Id.*

In addition, TAF also asks the Court to order plaintiffs to file a comprehensive superseding complaint, rather than piecemeal "eliminating" non-consecutive paragraphs of the operative complaint in later filings, such as their recent Rule 41 notice of dismissal.

Alternatively, TAF requests that the Court hold a status conference with all parties to establish how defendants should proceed with responding with plaintiffs' operative complaint and any other guidelines for efficiently proceeding with this case.

## BACKGROUND

Plaintiffs filed this Title IX and RICO lawsuit on April 26 asserting both federal and state racketeering claims against eighteen defendants.[3]   On June 25, plaintiffs filed an amended class action complaint that merely added named plaintiffs and more defendants.[4]

The crux of plaintiffs' allegations is, from roughly 2014 to 2020, LSU and its employees violated Title IX obligations by failing to maintain an adequate reporting, investigation, and disciplinary system for sexual assault complaints.[5]   For this, plaintiffs allege *twenty* liability counts against various combinations of grouped defendants, claiming violations of Title IX, § 1983, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, Louisiana tort law, the federal Racketeer Influenced and Corrupt Organizations Act, and the corresponding Louisiana Racketeering Act.

But—unlike every other defendant—TAF is not an educational program or institution

---

[3]       *See generally* R. Doc. 1.

[4]       *See generally* R. Doc. 22.

[5]       R. Doc. 1 at ¶¶ 110–352.

subject to Title IX,[6] a state actor subject to § 1983,[7] a "program or activity receiving Federal financial assistance" under the Rehabilitation Act,[8] or a "public entity" under the ADA.[9]  TAF is a legislatively favored private nonprofit corporation that "shall not be deemed to be a public or quasi public corporation or an administrative unit, public servant, employee, or agent of any institution of higher education for any purpose whatsoever."[10]  TAF has zero control over LSU, its employees, or their obligations under federal law, and frankly, doesn't belong in this case at all.

Yet in both the original and amended complaint, plaintiffs alleged more than ten theories of liability against TAF, accusing it of criminal racketeering activity under *both* federal and state RICO statutes.[11]  Spotting the number of parties involved and the complexity of plaintiffs' allegations, including their criminal racketeering accusations, on July 28, this Court—focused on "establish[ing] an efficient procedure for handling this RICO case"—rightly ordered plaintiffs to file a case statement identifying "the facts each plaintiff relies upon to initiate this RICO complaint as a result of the 'reasonable inquiry' required by Federal Rule of Civil Procedure 11."[12]  Notably

---

[6]    *See generally* 45 C.F.R. § 86.31 ("[N]o person shall . . . be subjected to discrimination under any academic, extracurricular, research, occupational training, or other education program or activity operated by a recipient which Federal financial assistance."); *cf.* R. Doc. 1 at ¶ 369.

[7]    *See generally* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, customer, or usage, of any State . . . causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."); *cf.* R. Doc. 1 at § 425.

[8]    *See generally* 29 U.S.C. § 794 ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance."); *cf.* R. Doc. 1 at ¶ 459.

[9]    *See generally* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."); *cf* R. Doc. 1 at ¶ 470.

[10]   La. Stat. § 17:3390(A)–(B).

[11]   R. Doc. 22 at ¶¶ 529–587.

[12]   R. Doc. 48 at 1.

too, Rule 11's "reasonable inquiry" requirement applies to *all* claims asserted in federal court,[13] and, here, the stain and prejudice of baseless accusations of criminal racketeering under state law is just as egregious as under federal law.

Specifically, the Court ordered plaintiffs to identify things like each defendant's alleged "predicate acts," "the pattern of racketeering," and each plaintiff's "injury to [their] business or property"—all of which apply equally to federal *and* state RICO claims because plaintiffs' claims depend on the same allegations and analogous legal provisions.[14]  But beyond merely identifying the basis for plaintiffs' racketeering claims, this Court required plaintiffs to identify specific misconduct alleged against each defendant, as well as other potential wrongdoers, all of whom are likely to be material fact witnesses and obvious deponents.[15]  The order also required plaintiffs to specify their damages—the early identification of which will help all parties work toward potential resolution.[16]  Again focused on efficiency and economy beyond federal racketeering claims, the Court asked plaintiffs to "[l]ist all other federal causes of action" as well as "all state claims" by "provi[ding] the relevant statute numbers [and] identify[ing] the specific defendants for each cause of action."[17]  The Court originally ordered plaintiffs to file their case statement by August 17, four months after plaintiffs filed their original complaint—giving them plenty of time to have reviewed and solidified the bases for their claims.[18]

---

[13]    *See generally* Fed. R. Civ. P. 11(b)(2).

[14]    R. Doc. 48 at 2, 4.

[15]    R. Doc. 48 at ¶¶ 2–4.

[16]    R. Doc. 48 at ¶ 17.

[17]    *Id.* at ¶¶ 18–19.

[18]    *See generally* R. Doc. 48 (imposing 20-day deadline); R. Doc. 51 at 1 (identifying August 17 as the deadline).

On August 3, plaintiffs—with all defendants' consent—sought a twenty-one- day extension to file their case statement "[b]ecause of the number of RICO Defendants and the complex nature of this action."[19]  The Court continued their deadline to September 7.[20]  Less than three business days before the new deadline, and in the wake of Hurricane Ida that left nearly all defense counsel displaced or without essential services, plaintiffs asked for consent to file a second amended complaint removing *only* their federal racketeering claim to "eliminate the need for the filing of the RICO statement."[21]  Plaintiffs demanded that all counsel respond within 48 hours.[22]

In the meantime, the Middle District of Louisiana issued an emergency order suspending certain case deadlines—including plaintiffs' case statement deadline—because of Hurricane Ida.[23]  On September 7, and without waiting for defendants' response to their request to amend, plaintiffs unilaterally filed a Rule 41 notice of dismissal removing Count "XVIII" as a cause of action and "eliminat[ing] paragraphs 535-542, 544-547, and 549-522" from their amended complaint.[24]  Plaintiffs confusingly purport to keep paragraphs 543 and 548, which fall under the heading of their now-dismissed Count XVIII, because they are "incorporated by reference" into "other claims."[25]  Those "other claims" include plaintiffs' state racketeering claims.[26]

After plaintiffs filed their dismissal, this Court ordered "that the deadline for Plaintiffs to file their RICO case statement, in accordance with the Court's RICO Order (R. Doc. 48), is reset

---

[19]    R. Doc. 51 at 1.

[20]    R. Doc. 54.

[21]    TAF Exh. A at 8.

[22]    *Id.*

[23]    M.D. La. General Order No. 2021-7, Omnibus Order Suspending Deadlines (signed Sept. 2, 2021).

[24]    R. Doc. 67 at 1.

[25]    *Id.*

[26]    *See generally* R. Doc. 22 at ¶¶ 553–580.

for September 27, 2021."[27]  On September 9, counsel for TAF emailed plaintiffs' counsel asking

for more time to respond considering plaintiffs' new court-ordered case statement deadline:

> In light of your Rule 41 dismissal of your federal racketeering claim, without dismissing your corresponding state racketeering claim, and Judge Vitter's order requiring you to file a RICO statement by September 27, TAF would like an additional extension of time to respond to your complaint—21 days after you file your RICO statement or dismiss your state racketeering claim.[28]

Plaintiffs' counsel replied that they do not consent to an extension because, after unilaterally

contacting "Chambers," they believe the case statement is no longer necessary:

> We contacted Chambers . . . and were told that because we have dismissed the RICO claim, there is no longer any requirement to file a RICO statement.  Therefore we do not consent to any additional extension of time for defendants to file responsive pleadings.[29]

TAF's counsel then asked for consent to a motion for a status conference, so that all parties could

communicate with the Court together, but plaintiffs' counsel declined that request as well.[30]

## LAW AND ARGUMENT

TAF's requested relief is simple.  TAF asks only that, because plaintiffs continue to accuse

all defendants of criminal racketeering activity and plaintiffs' state racketeering claims are

"analogous" to their federal claims, this Court should continue to require plaintiffs to file a RICO

case statement and allow TAF until *after* that case statement to respond.  TAF also asks the Court

to order plaintiffs to file a comprehensive superseding complaint, rather than piecemeal

"eliminating" non-consecutive paragraphs of the operative complaint in later filings.

Alternatively, TAF requests that the Court hold a status conference with all parties to establish

---

[27]     R. Doc. 70.

[28]     TAF Exh. A at 5.

[29]     *Id.* at 2.

[30]     *Id.* at 1.

how defendants should proceed with responding with plaintiffs' operative complaint and any other guidelines for efficiently proceeding with this case.

## I.    The Court should compel plaintiffs to file a racketeering case statement.

Because plaintiffs continue to accuse *all* defendants of criminal racketeering activity and this Court's RICO order required plaintiffs to identify pertinent information beyond their federal racketeering claim, the Court should continue to require plaintiffs to file a case statement.

The Louisiana Racketeering Act—colloquially known in the Fifth Circuit as the "Louisiana RICO Act"—is specifically "patterned after" or "modeled after" the federal RICO statute.[31]   The Fifth Circuit calls the two statutes "analogous,"[32] and Louisiana's appellate courts agree that federal RICO caselaw should inform courts' interpretation of the state racketeering statute:

> Jurisprudence regarding the Louisiana Racketeering Act is limited . . . . [and] Louisiana racketeering laws are modeled after the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").   Thus, the appellate court look[s] to federal jurisprudence interpreting RICO for guidance in interpreting the Louisiana counterpart. [33]

With these principles in mind, plaintiffs' dismissal of a federal racketeering claim while maintaining the state counterpart should not excuse them from filing a case statement to more

---

[31]    *State v. Nine Sav. Accts.*, 553 So. 2d 823, 825 (La. 1989) ("Because Act 727 was apparently patterned after 18 U.S.C. § 1961 et seq. (the Racketeer Influenced and Corrupt Organizations Act), federal decisions in this area are persuasive."); *State v. Sarrio*, 803 So. 2d 212, 226 (La. App. 5 Cir. 2001) (citing and quoting *State v. Touchet*, 759 So. 2d 194 (La. App. 3 Cir. 2000)); *see generally* La. Prac. Emp. Law § 14:24 ("The Louisiana Racketeering Act (LRA), [is] also known as the 'Louisiana RICO Act.'"); *Viking Constr. Grp. v. Satterfield & Pontikes Constr. Inc.*, 728 F. App'x 405, 405 (5th Cir. 2018) (abbreviating "the Louisiana Racketeering Act" to "Louisiana RICO").

[32]    *Farmer v. D&O Contractors, Inc.*, 640 F. App'x 302, 304 (5th Cir. 2016) ("Plaintiffs asserted claims pursuant to RICO, 18 U.S.C. § 1916 *et seq.*, and the analogous Louisiana Racketeering Act (LRA).").

[33]    *State v. Davenport*, 316 So. 3d 888, 903 (La. App. 4th Cir. 2017); *see also CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, No. 2019-CA-0745, 2019 WL 2865256, at *3 (La. App. 1st Cir. Jul. 2, 2019) (noting that La. Stat. § 15:1353 and 18 U.S.C. § 1962 "contain[] similar provisions"); *State v. Ables*, 829 So. 2d 561, 563-64 (La. App. 5th Cir. 2002) (explaining the circuit's practice of "looking to our federal counterpart" in interpreting the Louisiana Racketeering Act).

specifically identify the basis for *all* their racketeering accusations. Continuing to require plaintiffs to abide by a court order "designed to establish an efficient procedure for handling this RICO case" will still help this Court and all parties efficiently proceed with what is *still a RICO case*.[34] Things like the "alleged misconduct and basis of liability of each defendant," "the alleged injury to each plaintiff's business or property," "the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding each predicate act," "the pattern of racketeering activity," and "the names of the individuals . . . or other entities allegedly constituting the [criminal] enterprise" are all still relevant to plaintiffs' state racketeering claims.[35] And the early identification of these crucial details can only help narrow the issues, focus parties' impending discovery, and facilitate a potential resolution.

In addition, the Court's RICO order plainly asked for case details beyond plaintiffs' racketeering claims—again, all of which would still be hugely helpful. For example, the Court's order asked plaintiffs to "[l]ist all other federal causes of action, . . . provide the relevant statute numbers[, and] [i]dentify the specific defendants for each cause of action."[36] Likewise, the Court asked plaintiffs to "[l]ist all state claims . . . and identify the specific defendants for each state claim."[37] In plaintiffs' complaint, they purport to abbreviate certain categories of defendants, but then appear to indiscriminately use group pleading terms like "all defendants," their colloquial abbreviations like "the LSU defendants," and then list some defendants individually who appear to fall in either or both these categories, but not others.[38] All of this is very confusing, and clear

---

[34] R. Doc. 48 at 1.

[35] R. Doc. 48 at 1, 2, 4.

[36] R. Doc. 48 at 4.

[37] *Id*.

[38] *See generally* R. Doc. 22 at Count VI, ¶¶ 423–432.

delineations about which causes of action apply to which defendants will help not only defendants, but also this Court in resolving discovery disputes and dipositive motions.

Thus, because plaintiffs continue to pursue state racketeering claims against the same defendants, supposedly premised on the same criminal enterprise committing the same predicate acts to cause the same damages to plaintiffs as their federal racketeering claims, the Court should continue to require plaintiffs to file a RICO case statement. And because the Court's order requires plaintiffs to identify other helpful case details, the Court should continue to require plaintiffs to file a case statement for this reason too. TAF also ask the Court to extend TAF's deadline to respond until 21 days *after* plaintiffs' case statement, which tracks this Court's original response deadline

## II.    The Court should compel plaintiffs to file a comprehensive superseding complaint.

In what looks like a per se violation of the Federal Rules of Civil Procedure's requirement of a "short and plain statement of the [plaintiff's] claim,"[39] plaintiffs' operative complaint is 589 paragraphs (not including subparagraphs) and 144 pages long.[40] That's before including another 262-page, single-spaced legal report incorporated into and attached to the complaint.

And before any defendant has even answered their massive complaint, plaintiffs have "eliminat[ed]" certain liability counts and certain non-consecutive paragraphs of their complaint in later filings. According to plaintiffs' Rule 41 notice of dismissal of "Claim XVIII," this dismissal "includes elimination of paragraphs 535-542, 544-547, and 549-552 from the First Amended Complaint."[41]    But plaintiffs purport to "retain" paragraphs 543 and 548—which

---

[39]    Fed. R. Civ. P. 8(a)(2).

[40]    *See generally* R. Doc. 22.

[41]    R. Doc. 67 at 1.

undisputedly fall under the heading of their now-dismissed cause of action—because plaintiffs rely on those paragraphs elsewhere for other liability counts.[42]  In what plaintiffs themselves have called a "complex . . . action,"[43] this piecemeal approach to removing allegations from their complaint is needlessly difficult and confusing for all parties and the Court.  This Court should require plaintiffs to file a comprehensive superseding complaint that removes whatever paragraphs are no longer in play and renumbers the others so that all the parties and the Court are on the same page about what remains at issue.

## III.    Alternatively, the Court should hold a status conference will all parties.

If the Court is not inclined to compel plaintiffs to file a racketeering case statement or a comprehensive superseding complaint, TAF respectfully asks that the Court hold a status conference with the parties to address how defendants should proceed with responding to plaintiffs' operative complaint and to establish other guidelines for efficiently and economically proceeding with this case.

TAF's response deadline is rapidly approaching, but all defendants believed plaintiffs would file a case statement before any responses came due.  Plaintiffs' dismissal of their federal racketeering claim and unilateral decision not to file the court-ordered case statement has frustrated TAF's approach to its response, just a few days before its due date.  In addition, considering the number of parties involved, the Court can expect to receive several motions on defendants' response deadline, so establishing some sort of briefing schedule may be helpful for the parties and the Court.  Thus, TAF respectfully asks that the Court hold a status conference with all parties.

---

[42]     *Id.*

[43]     R. Doc. 51 at 1.

**CONCLUSION**

The Court should grant TAF's motion and require plaintiffs to file a case statement identifying the facts underlying its racketeering claims.  The Court issued its RICO order "to establish an efficient procedure for handling this RICO case," which should still apply considering this is still a RICO case in need of some overarching efficient procedures.  Relatedly, TAF should be given the same twenty-one day after plaintiffs' case statement within which to file its response. In addition, with plaintiffs recently dismissing one count of their twenty-count complaint and eliminating certain non-consecutive paragraphs from the complaint before any defendant has filed an answer, this Court should require plaintiffs to file a comprehensive superseding complaint that removes all allegations no longer at issue and renumbers its paragraphs to be consecutive, as contemplated by the Federal Rules of Civil Procedure.  Alternatively, this Court should hold a status conference with the parties to develop an efficient approach to responding to plaintiffs' complaint and proceeding with this case.

Respectfully submitted,

_/s/ Chloé M. Chetta_
Judy Y. Barrasso, 02814
Laurence D. LeSueur, Jr., 35206
Chloé M. Chetta, 37070
Lance W. Waters, 37351
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA  70112
Telephone:  (504) 589-9700
jbarrasso@barrassousdin.com
llesueur@barrassousdin.com
cchetta@barrassousdin.com
lwaters@barrassousdin.com

*Counsel for Defendant Tiger Athletic Foundation*

*1801770*

11