UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ABBY OWENS, ET AL. | CIVIL ACTION NO.: 3:21-cv-00242 |
| Plaintiffs, | SECTION |
| VERSUS | JUDGE VITTER |
| LOUISIANA STATE UNIVERSITY, et al. | MAGISTRATE JUDGE JOHNSON |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

**DEFENDANT TIGER ATHLETIC FOUNDATION'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL CASE STATEMENT AND COMPREHENSIVE SUPERSEDING COMPLAINT, SECOND MOTION FOR EXTENSION OF TIME TO RESPOND, AND ALTERNATIVE MOTION FOR STATUS CONFERENCE**

Plaintiffs' opposition only underscores the need for this Court to continue to apply its RICO order to plaintiffs' state RICO claims. First, Rule 11—which this Court invoked in its RICO order—always requires an advocate to personally assess and certify that their factual contentions and asserted claims have both evidentiary and legal support.[1] Plaintiffs here admit that, only *after* filing two complaints calling all defendants criminals and *after* this Court ordered plaintiffs to specify their bases for those accusations, they undertook their "Rule 11 diligence" into and "careful consideration" of their federal RICO claim—and promptly dismissed it. That same Rule 11 inquiry (and importantly too, this Court's goal of "establish[ing] an efficient procedure for handling this RICO case")[2] equally apply to plaintiffs' state RICO claim which accuse TAF of the same criminal racketeering conduct.[3]

---

[1] Fed. R. Civ. P. 11(b)(1)–(4).

[2] R. Doc. 48.

[3] After the diligence and careful consideration plaintiffs undertook for at least the last month and a half, jotting down the facts relevant to their state RICO claim in this Court's simple, organized list should be easy, not a "burden" like plaintiffs contend. *See* R. Doc. 80 at 2.

This is precisely why courts like this one, and around the country, issue RICO orders. "The mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect on those named as defendants[, and] [i]n fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation."[4]  According to the Federal Judicial Center, "[t]he impact of RICO allegations on a defendant's reputation makes it important to ensure that the claim is solidly based."[5]

The Federal Judicial Center also notes that courts consider RICO case statements as "part of the pleadings" because it "will assist the court when ruling on motions under Rule 12 and Rule 9(b)," as well as later dispositive motions like summary judgment under Rule 56.[6]  So, contrary to plaintiffs' contentions that a case statement is an "improper dilatory tactic[] that attempt[s] to accomplish the effects of a Rule 12 motion.,"[7] it's clear that case statements should be filed *before* any defendant responds under Rule 12:

> In ruling on motions under Rule 12, courts have considered the facts stated in the RICO case statement in conjunction with the allegations of the complaint. The RICO case statement, together with a reading of the complaint, will help narrow the issues and identify claims that lack merit, which can then be dismissed . . . before significant time and effort is spent. Finally, these statements can also help to focus discovery and provide a blueprint for trial.[8]

---

[4] *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990); *see also*, *e.g.*, *Saine v. A.I.A., Inc.*, 582 F. Supp. 1299, 1306 n.5 (D. Colo. 1984) ("A charge of racketeering, with its implications of links to organized crime, should not be easier to make than accusations of fraud.").

[5] Manual Complex Litig. § 35.31 (4th ed.).

[6] *Id.*

All of plaintiffs' arguments about a lack of cases or other authority requiring "any LRA specific case statement" is misplaced. R. Doc. 80 at 2. It is precisely because of the way plaintiffs have tried to manipulate their claims in this case—by now dismissing their federal RICO claim to pursue only a Louisiana RICO claim in federal court—that demonstrates why this scenario doesn't arise in other cases.

[7] R. Doc. 80 at 8.

[8] Manual Complex Litig. § 35.31 (4th ed.) (alterations omitted) (collecting cases).

By synthesizing the most crucial information, this favored approach "conserves both judicial and party resources, and precludes the court, upon undertaking review of the sufficiency of a complaint, from having to 'forever sift through its pages'"—a particularly apt concern here.[9] This is especially true after plaintiffs hope to maintain certain aspects in non-consecutive paragraphs of their federal RICO claims to now pursue under Louisiana's RICO statute in what plaintiffs admit is already a "complex" case.[10] And in any event, whether this Court originally intended its RICO order to apply to both federal and state RICO claims is immaterial; this case is still a "RICO case," and this Court has inherent and broad Rule 16 authority to require a RICO case statement.[11]

Second, plaintiffs' argument that there are vast differences between federal and state RICO claims is simply wrong. As TAF noted in its supporting memorandum, the United States Fifth Circuit calls the two statutes "analogous."[12] And even a cursory review of the caselaw shows that the elements of federal and state RICO claims align.[13] Indeed, Louisiana courts define the Louisiana elements by *quoting federal caselaw*:

> The three required elements of a RICO claim are: 1) a person who engages in 2) a pattern of racketeering activity 3) connected to the acquisition, establishment, conduct, or control of an enterprise. *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000) (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855

---

[9] *Id.*

[10] *See generally* R. Doc. 67 at 1; R. Doc. 51 at 1.

[11] *See generally* Fed. R. Civ. P. 16(a) ("In any action, the court may order the attorneys . . . to appear for one or more pretrial conferences for such purposes as: (1) expediting disposition of the action; (2) establishing early and continuing control so that the case will not be protracted because of lack of management; (3) discouraging wasteful pretrial activities; (4) improving the quality of the trial through more thorough preparation; and (5) facilitating settlement.").

[12] R. Doc. 71-1 at 7 n.32 (citing *Farmer v. D&O Contractors, Inc.*, 640 F. App'x 302, 304 (5th Cir. 2016)).

[13] Since Louisiana's RICO statute was enacted thirty-eight years ago, there are only about 33 publicly available state-court cases (with almost the same amount of federal courts) citing it. Meanwhile there are hundreds of binding authorities applying the federal statute, with thousands more persuasive opinions from other circuits.

3

> F.2d 241, 242 (5th Cir. 1988), *cert denied*, 489 U.S. 1079 (1989); *see also Edvisors Network, Inc.* [*v. Husser*, No. 14-062, 2014 WL 3853457, at *4 (M.D. La. Aug. 5, 2014)]. . . . *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995) (citing *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 425 (5th Cir.), *cert denied*, 498 U.S. 895 (1990).[14]

These three elements of a state RICO claim are the subject of the RICO order requiring plaintiffs to "[l]ist each defendant and . . . the alleged misconduct and basis of liability of each defendant," as well as "the alleged wrongdoers, other than the defendants . . . and the alleged misconduct of each wrongdoer"; "[d]escribe in detail the pattern of racketeering activity . . . [including] the alleged predicate acts and the specific statutes allegedly violated; . . . the dates of the predicate acts, the participates in the predicate acts and a description of the facts surrounding each predicate act"; and [d]escribe in detail the alleged enterprise for each RICO claim . . . [and] the alleged relationship between the activities of the enterprise and the pattern of racketeering activity."[15]

In addition, plaintiffs' assertion that, unlike its federal counterpart, Louisiana's RICO statute allows any person, anywhere, injured in any way to pursue a state RICO claim is incorrect.[16] No Louisiana case has interpreted section 15:1356 this way (as evidenced by plaintiffs' failure to cite a single authority saying so).[17] Every Louisiana Court of Appeals faced with an issue of statutory interpretation has looked to federal law for guidance and support.[18] And federal courts

---

[14] *CamSoft Data Sys. Inc. v. S. Elecs. Supply, Inc.*, No. 19-0745, 2019 WL 2865256 (La. App. 1st Cir. July 2, 2019); *see also Viking Constr. Grp., LLC v. Satterfield & Pontikes Constr. Grp. Inc.*, No. CV 17-12838, 2018 WL 401182, at *2 (E.D. La. Jan. 12, 2018) (Africk J.) ("To state a valid civil claim under Louisiana RICO, a party must show that (1) a person engaged in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.") (citing *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003)), *aff'd*, 728 F. App'x 405 (5th Cir. 1028).

[15] R. Doc. 48 at 1, 2, 3.

[16] *See* R. Doc. 80 at 8.

[17] *See generally id.*

[18] R. Doc. 71-1 at 7 n.33 and accompanying text.

4

interpreting section 15:1356 still require "tangible injury to [a plaintiff's] business or property proximately caused by any alleged racketeering violation."[19]  Even if it were true that plaintiffs can assert any conceivable injury under Louisiana's RICO statute, this would be all the more reason to require them to "state how each victim allegedly was injured" and "the relationship between the plaintiff(s)' alleged injury(ies) and violation of the RICO statute."[20]  And where the Court required plaintiffs to "describe the alleged injury to each plaintiff's business or property," they could simply respond "none."[21]

Plaintiffs' final complaint that TAF and other defendants have contrived procedural hurdles to delay these proceedings is, again, simply wrong when viewed in context:

- When plaintiffs alleged both state and federal RICO claims, this Court ordered them to file a case statement identifying the specific bases for their RICO claims, "all other" federal claims plaintiffs asserted, and "all state claims."[22]

- Plaintiffs sought defendants' consent for more time to file their case statement "[b]ecause of the number of RICO Defendants and the complex nature of this action."[23]  All defendants agreed, and this Court granted plaintiffs an extension.[24]

- Days after Hurricane Ida, plaintiffs sought consent from all defendants to file a second amended complaint.[25]  When defendants asked for more time to consider this because nearly all counsel were displaced or without power (some without roofs and running

---

[19] *E.g.*, *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am. Inc.*, No. 11-cv-00856, 2013 WL 4516007, at *1 (W.D. La. Aug. 22, 2013) (granting defendants' 12(b)(6) motion to dismiss because plaintiff "failed to allege in its petition one of the requisite elements of standing under the Louisiana Racketeering Act, La. Rev. Stat. ann. § 15:1351, et seq. (namely, proof of a concrete injury)"); *Viking Constr.*, 2018 WL 401182, at *4 n.17 (noting—in Louisiana RICO case—that "[a] RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation" (quotation marks omitted)).

[20] R. Doc. 48 at 2, 4.

[21] *See generally id.* at 4.

[22] R. Doc. 48.

[23] R. Doc. 51.

[24] R. Doc. 54.

[25] R. Doc. 71-2 at 7–8.

5

- water), plaintiffs said that they would continue to insist on enforcing the September 28 responsive pleading deadline.[26]

- Three business days later, plaintiffs unilaterally dismissed their federal RICO claim, but specifically maintained their state RICO claim, and did not file an amended complaint (presumably to keep defendants' responsive pleading deadline from being continued).[27]

- After plaintiffs filed their notice of dismissal eliminating the federal RICO claim, this Court entered another RICO order, requiring plaintiffs' continued compliance with its earlier order, just by a new deadline.[28]

- When defendants asked plaintiffs about the Court's continued RICO order, plaintiffs' counsel reported that they contacted someone on this Court's staff—without inviting a single defense lawyer to be a part of that conversation—and "were told" that they need not comply with a pending court order.[29]

- Plaintiffs then explicitly refused to consent to participating in a court conference with all counsel "as unnecessary" until *after* TAF moved for this Court's intervention.[30] Strangely, plaintiffs' counsel emailed the Court their consent to a status conference, but, in its opposition, urge the Court to deny this request as an "improper dilatory tactic[]."[31]

- Plaintiffs also acknowledge Hurricane Ida's impact on normal work operations and now consent to an extension, when—in the hurricane's direct aftermath, knowing defense lawyers were displaced across the country or at home without power—plaintiffs insisted that all defendants abide by the original deadline.[32]

TAF's requests are only meant to help it—and the Court, and all counsel—understand what's going on and what exactly is required of both plaintiffs and the various defendants at this stage.

---

[26]   *Id.* at 6.

[27]   *See generally* R. Doc. 67.

[28]   R. Doc. 70.

[29]   R. Doc. 71-2 at 2.

[30]   *See id.* at 1.

[31]   *See generally* R. Doc. 80 at 8.

[32]   *Compare* R. Doc. 71-2 at 6 ("[W]e . . . would like to keep the responsive pleading deadlines on track if possible."), *and id.* at 2 ("[W]e do not consent to any additional extension of time for defendants to file responsive pleadings."), *with* R. Doc. 80 at 6 ("Plaintiffs agree to any extension to file responsive pleadings due to the extensive damage caused by Hurricane Ida.").

TAF continues to urge this Court to require plaintiffs to file a RICO case statement and a comprehensive superseding complaint, as plaintiffs originally said they would. And TAF again asks that this Court allow it more time to respond to the first amended complaint.

        Respectfully submitted,

        */s/ Chloé M. Chetta*
Judy Y. Barrasso, 02814
Laurence D. LeSueur, Jr., 35206
Chloé M. Chetta, 37070
Lance W. Waters, 37351
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA 70112
Telephone: (504) 589-9700
jbarrasso@barrassousdin.com
llesueur@barrassousdin.com
cchetta@barrassousdin.com
lwaters@barrassousdin.com

*Counsel for Defendant Tiger Athletic Foundation*

*1801765v3*