UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                         CIVIL ACTION NO. 3:21-cv-00242
    *Plaintiffs*

                                              JUDGE WENDY B. VITTER

VERSUS

                                              MAG. JUDGE SCOTT D. JOHNSON

LOUISIANA STATE UNIVERSITY, ET AL.
    *Defendants*

## MEMORANDUM IN SUPPORT OF RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Defendants Jennie Stewart, Angelo-Gene "A.G." Monaco, and James Marchand submit this memorandum in support of their Rule 12(b) motion to dismiss all claims alleged against them by plaintiffs in their Amended Class Action Complaint[1] pursuant to either Rule 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for plaintiffs' failure to state a claim.

This case is essentially a Title IX lawsuit against LSU brought by ten individual plaintiffs who all identify themselves as female students at LSU from 2013-2021 and who seek to represent a class consisting of every female student at LSU who enrolled at any LSU campus over a nine-year period. Their Amended Class Action Complaint is a sprawling, rambling 145-page document with 589 individually numbered paragraphs that attempts to state claims against the Board of Supervisors of Louisiana State University ("LSU"), the Tiger Athletic Foundation ("TAF"), and fifteen individual current or former employees of LSU, including LSU's President, its head football coach, and anyone plaintiffs could even tangentially link to alleged mishandling of LSU's Title IX enforcement program. Instead of simply pursuing a Title IX lawsuit against LSU, plaintiffs have opted to assert "shotgun" allegations against an amalgam of

---

[1] R.Doc. 22.

unrelated individual defendants, the apparent purpose of which is to cause LSU and the State of Louisiana to incur exorbitant legal fees and litigation expenses in defending the suit.  Plaintiffs' attempt to burden each of the individual defendants with the time and expense of defending clearly inapplicable and unnecessary claims should be rejected by this Court.

### RELEVANT FACTS ALLEGED IN AMENDED CLASS ACTION COMPLAINT

The facts alleged in the Amended Class Action Complaint are too numerous for these defendants to summarize, and they will no doubt be discussed at length by the many other parties named in this case.  To avoid wasting the Court's time with repetitive pleadings, these three movants will focus solely on the facts alleged specifically against them.

Plaintiffs allege that Monaco was the Associate Vice President of Human Resource Management for LSU from 2010 to April 10, 2018.[2]  Marchand served as LSU's Title IX Coordinator from 2013-15.[3]  Stewart is and has been LSU's Title IX Coordinator from 2015 to present.[4]

The factual allegations against Marchand and Monaco are beyond scant.  Plaintiffs allege that Marchand was the sole employee staffing LSU's Title IX office from 2013 to 2015.[5]  Monaco is alleged to have been designated as the LSU employee responsible for coordinating Title IX compliance pursuant to the university's Equal Opportunity Policy for an unidentified time period.[6]  Plaintiffs allege that "it has also been reported that Monaco refused to provide interim measures to one of the student victims of former LSU football coach Les Miles" at an

---

[2] Id., ¶ 34.
[3] Id., ¶ 46.
[4] Id., ¶ 47.
[5] Id., ¶ 62.
[6] Id., ¶ 63.

unspecified time.[7]   No additional facts are alleged specifically against Marchand or Monaco; these limited facts alone are woefully insufficient to state a valid claim.

The allegations against Stewart, while still vague, are at least slightly more detailed. Three of the ten named plaintiffs allege specific actions by Stewart.

Plaintiff Abby Owens alleges that she was raped in 2016 by an LSU football player.[8] Owens alleges that she was not aware of the existence of LSU's Title IX office prior to 2019.[9]  On May 20, 2019, Owens – who left LSU two years earlier, in March 2017[10] – contacted the Title IX office for the first time to request a copy of the investigation report for her alleged 2016 rape.[11] On May 22, 2019, plaintiffs claim Stewart told Owens that she had heard about her rape but did not move forward with an investigation because the Athletic Department did not provide Stewart the name of the alleged assailant.[12]   Plaintiffs allege no further contact between Stewart and Owens until her attorney submitted a public records request to the Title IX office to obtain a copy of any record relating to Owens' 2016 rape.[13]   Stewart responded to the request with an e-mail on August 17, 2020, stating that the Title IX office had no records to provide.[14]  Stewart also told Owens that if Owens wanted to learn the identity of the individual at LSU to whom the rape was reported she should contact the rehabilitation facility to which she was admitted in 2017, as that facility provided the initial report to LSU.[15]

---

[7] Id., ¶ 64.
[8] Id., ¶¶ 193-95.
[9] Id., ¶ 201.
[10] Id., ¶ 200.
[11] Id., ¶ 203.
[12] Id., ¶ 204.
[13] Id., ¶ 205.
[14] Id., ¶ 206.
[15] Id.

Plaintiff Elisabeth Andries alleges that she was assaulted by a male LSU student during a fraternity bus trip in October 2016.[16]  She alleges that the same student again attempted to assault her in July 2017 after she picked him up from a bar.[17]  Years later, on March 7, 2019, Andries reported the assaults to defendant Tracy Blanchard, LSU's Assistant Dean of Students & Associate Director of Advocacy In LSU's Office of Student Advocacy & Accountability ("SAA").[18]  SAA in turn reported the assaults to the Title IX office on March 8, 2019.[19]  On April 2, 2019, Stewart told Andries that there was no reason to issue a no-contact order against the alleged assailant because there had been no contact to forbid in the nearly two years since July 2017.[20]

LSU's Title IX investigation into Andries' complaint, issued on June 3, 2019,  concluded that the alleged assailant violated LSU's Title IX policies.[21]  The alleged assailant appealed the finding.[22]  He then requested an extension of the appeal deadline, which was extended twice.[23]  A second student who alleges she was assaulted by the same assailant on the same fraternity bus trip[24] spoke to Stewart and asked why she was not interviewed in the investigation and whether she should file her own complaint.[25]  When that student asked why the appeal deadline was extended twice, Stewart allegedly stated that she did not have to "justify her

---

[16] Id., ¶¶ 210-12.
[17] Id., ¶ 214.
[18] Id., ¶ 222.
[19] Id., ¶ 222.
[20] Id., ¶ 224.
[21] Id., ¶ 226.
[22] Id., ¶ 227.
[23] Id., ¶ 227.
[24] Id., ¶ 211
[25] Id., ¶ 227.

decisions" to students.[26]   Thereafter, on July 22, 2019, Stewart denied the alleged assailant's appeal.[27]

Finally, plaintiff Corinn Hovis alleges that she was raped by an LSU football player (Loe) on January 24, 2020.[28]   After Hovis suffered a panic attack later that night, her roommate contacted the dorm's Resident Assistant and Hovis decided to file a report with LSUPD, who in turn contacted the Baton Rouge Police Department because the incident occurred off campus.[29]   Residential Life personnel reported the incident to the Title IX office.[30]   On January 31, 2020, Stewart met with Hovis to explain her reporting options, with Hovis deciding to move forward.[31]   On March 6, 2020, the investigator assigned to the case concluded that Loe violated the Title IX policy.[32]   In June 2020, Loe was suspended for one month and issued a no-contact directive prohibiting him from communicating with Hovis.[33]   Hovis alleges that Loe violated this directive by having his girlfriend contact Hovis on two occasions in May 2020.[34]   Hovis alleges that these contacts were reported to Stewart but that LSU took no further disciplinary action against Loe.  Loe then transferred from LSU to another university on August 6, 2020.[35]

No other named plaintiffs lodge any specific factual allegations against Stewart whatsoever.  These limited facts alleged against Stewart provide no plaintiff with any claim directly against Stewart as an individual.

---

[26] Id., ¶ 227.
[27] Id., ¶ 229.
[28] Id., ¶¶ 323-25.
[29] Id., ¶ 326.
[30] Id., ¶ 328.
[31] Id., ¶ 328.
[32] Id., ¶ 330.
[33] Id., ¶ 331.
[34] Id., ¶ 332.
[35] Id., ¶ 332.

**LEGAL STANDARD**

To survive a Rule 12(b) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 697, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* at 678, 129 S.Ct. 1937.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. US Unwired, Inc.,* 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1986).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true.  *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Id.*  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.  *Lormand,* 565 F.3d at 257.  If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

**LAW AND ARGUMENT**[36]

Of the twenty counts stated in the Amended Class Action Complaint, six (Counts I, II, III, IV, X, XI) are stated purely against LSU and one (XVIII) has been voluntarily dismissed.  Stewart, Monaco, and Marchand will discuss the bases for dismissal of each of the thirteen remaining counts in turn.

I.     **Plaintiffs' complaint should be dismissed in its entirely as an improper "shotgun pleading."**

Shotgun pleadings contain several counts within a complaint with each count "incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and conclusions.' *Copeland v. Axiom Mortgage Group, LLC*, 2016 WL 4250341, at *4 (S.D. Miss. 2016) (citations omitted).  Another characteristic of improper shotgun pleadings is that they fail to distinguish between the actions of individual named defendants and attempt to lump all defendants together in allegations.  *Id.*  This makes it impossible for any reader of the complaint, including the Court, to decipher which party committed which alleged acts.  The Fifth Circuit specifically discourages these types of shotgun pleadings "where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick."  *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986).  Shotgun complaints are subject to dismissal under F.R.C.P. 12(b)(6).  *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014).

---

[36] In addition to the arguments presented in this memorandum, Stewart, Monaco, and Marchand adopt and incorporate all arguments presented by the other twelve inappropriately named individual defendants in the motions to dismiss filed by those defendants.

Plaintiffs' Amended Complaint is on its face an obviously improper shotgun pleading. It is 145 pages long, contains 589 separately numbered paragraphs, and attaches a 262-page exhibit. It names nineteen separate defendants, many of whom are named on what would generously be described as a thin basis. Aside from Count I, each count purports to "adopt and incorporate by reference the previous plead (sic) paragraphs as if fully plead (sic) herein." Most counts refer to actions generically committed by "Defendants" with little attempt to distinguish between them. In response, the Court will be forced to wade through hundreds and hundreds of pages of pleadings in opposition, making this litigation practically impossible to manage. Instead of focusing narrowly on their Title IX claims against the entity defendants, plaintiffs have attempted to state numerous counts against every individual person listed in a voluminous report in the hopes of making at least claim against one defendant stick. To require defendants like Monaco and Marchand to defend themselves against such a pleading, where they are mentioned fewer times than could be counted on one hand, is absurd and a waste of the Court's and the parties' time and resources.

These defendants submit that the Court should dismiss the Amended Complaint in its entirety or require the plaintiffs to substantially narrow the defendants and claims before allowing this litigation to move forward.

**II.    All claims seeking damages from Stewart, Monaco, and Marchand in their "official capacities" must be dismissed.**

The State of Louisiana is immune from suit in federal court under the Eleventh Amendment, which bars actions in federal court against a state or state agency unless a state has consented to be sued or Congress has clearly and validly abrogated the immunity. *See*, e.g., *Pennhurst State Sch. & Hosp. v. Halderman*, 456 U.S. 89, 100 (1984); *Perez v. Region 20 Educ.*

*Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).  The State of Louisiana has not waived its immunity under Louisiana state law.  La. R.S. 13:5106(A) provides that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."  Plaintiffs' claims against Stewart, Monaco, and Marchand, government agents named in their official capacities, are "nothing more than a suit directly against [a] sovereign."  *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir. 2020) (quoting *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 941 (5th Cir. 1999).  These defendants are therefore entitled to dismissal of all state law claims brought against them in their official capacity under the Eleventh Amendment for lack of subject matter jurisdiction under F.R.C.P. 12(b)(1).

### III.    Count V, "Retaliation by Withholding Protection Otherwise Conferred by Title IX," must be dismissed against these defendants because Title IX creates no cause of action for individual liability.

Count V alleges that "the LSU Defendants," including Stewart, Monaco, and Marchand, retaliated against them for submitting Title IX complaints by failing to comply with various mandates of Title IX.  However, it is well established within the Fifth Circuit that Title IX does not create or provide a cause of action against an individual employee for individual liability. "Liability under Title IX does not extend to school officials, teachers, and other individuals." *Plummer v. Univ. of Houston*, 860 F.3d 767, 776 n. 12 (5th Cir. 2017) (citing *Davis v. Monroe Cty. Bd. of Ed.*, 526 U.S. 629, 640-43 (1999); *Jones v. Southern Univ.*, 2020 U.S. Dist LEXIS 50762, at *13 (M.D. La. Feb. 27, 2020) (dismissing Title IX claims against individual administrators at Southern University in Baton Rouge).  Plaintiffs appear to be aware of this, not having named any individual defendants in Counts I-IV alleging Title IX violations against LSU.  Count V against

Marchand, Monaco, and Stewart must be dismissed, with prejudice, because no claim lies against them individually under Title IX.

**IV.    Plaintiffs' three Section 1983 claims against Stewart, Monaco, and Marchand should be dismissed on the basis of qualified immunity.**

Counts VI, VII, and VIII respectively allege violations of the First Amendment as well as the equal protection and due process clauses of the Fourteenth Amendment. These claims are all asserted through the procedural vehicle provided by 42 U.S.C. § 1983.

Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States Constitution or federal law." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed. 2d 107 (1988)). Section 1983 "is not itself a source of substantive rights" but merely provides "a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed. 2d 114 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 61 L.Ed. 2d 433 (1979)).

To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Qualified immunity is an affirmative defense which may be pleaded by a government employee in response to any Section 1983 claim. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551, 196 L.Ed. 2d 463

(2017) (quoting *Mullenix v. Luna*, 136 S.Ct. 308, 308, 193 L.Ed. 255 (2015)).   It "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who **knowingly violate the law**."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  [Emphasis added.]  Courts will not deny immunity unless "existing precedent … placed the statutory or constitutional question beyond debate."  *Id.*; *Whitley*, 726 F.3d at 638 (quoting *Ashcroft*).  A plaintiff seeking to overcome qualified immunity bears the burden to show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Id.*  "Clearly established law" must be "particularized to the facts of a case."  *Samples v. Vadzemnieks*, 900 F.3d 655, 662 (5th Cir. 2018).  While this does not require a prior case "directly on point," "precedent must still put the underlying question beyond debate."  *Id.* (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)).

As set forth in the following sections, Stewart, Monaco, and Marchand are each entitled to qualified immunity against all Section 1983 claims pleaded by plaintiffs.

### a.  Count VI – "First Amendment Retaliation"

Plaintiffs allege generally that they exercised their constitutionally protected right to freedom of speech by reporting sexual misconduct to LSU employees and by criticizing LSU's handling of their complaints.[37]  They then allege that these defendants "attempt[ed] to regulate the content of Plaintiffs' speech" by failing to properly investigate reports or by making various statements—none of which are attributed anywhere in the shotgun complaint to Monaco, Marchand, or Stewart.

---

[37] Id., ¶ 426.

These three defendants submit that they are each entitled to qualified immunity dismissing Plaintiffs' First Amendment claim under the second prong of the qualified immunity analysis, as there is no clearly established case law which would have put any reasonable state official on notice that failing to properly investigate a Title IX report would be a violation of a student's First Amendment rights.  There is no case law even remotely on point with any precedential authority in the Fifth Circuit on this issue; this issue is *res nova*.

The First Amendment prohibits not only direct limits on individual speech but also adverse government action against an individual in retaliation for the exercise of protected speech activities.  *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).  To establish a First Amendment retaliation claim, a plaintiff must show that (1) she was engaged in a constitutionally protected activity; (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct.  *Id.*  With respect to the second element, to demonstrate a showing of injury, a plaintiff must show that her exercise of free speech has been curtailed.  *Keenan*, 290 F.3d at 259.

The limited factual allegations against Stewart, Monaco, and Marchand fail to establish that any plaintiff engaged in constitutionally protected speech or that any acts by these defendants were motivated by the protected speech of any plaintiff.  These claims therefore fail the first prong of the qualified immunity analysis regarding whether any constitutional right was violated.  *Ashcroft*, 563 U.S. at 743.  Further, there are zero reported cases from the U.S. Supreme Court or within the U.S. Fifth Circuit in which a state actor's alleged failure to properly

investigate a Title IX complaint was deemed to violate an individual's First Amendment rights. These claims likewise fail on the second prong of the qualified immunity analysis because there is no clearly established case law putting defendants on notice that their actions were violations of the plaintiff's rights.  *Id.*

Accordingly, the First Amendment claims against Stewart, Monaco, and Marchand should be dismissed on the basis of qualified immunity.

### b.  Count VII – Denial of Equal Protection

Plaintiffs allege that Stewart, Monaco, Marchand, and all other defendants "discriminated against Plaintiffs on the basis of sex by subjecting them to a hostile environment and failing to appropriately respond to and investigate reports of sexual misconduct and other violations detailed previously in [the] Complaint."[38]

The Fourteenth Amendment in part provides as follows:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

To state a claim of discrimination under the Fourteenth Amendment, a plaintiff must allege that (1) she received treatment different from that received by similarly situated individuals and (2) the unequal treatment stemmed from a discriminatory intent. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (alleging discrimination based on race).  To establish the necessary discriminatory intent, a plaintiff must show "that the decision maker singled out a particular group for disparate treatment and selected his [or her] course of action at least in part for the purpose of causing its adverse effect on an identifiable group."  *Id.*

---

[38] Id., ¶ 436.

(citing *Prister v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)).  Allegations of discriminatory intent that are merely conclusory, without reference to specific facts, will not suffice to overcome a motion to dismiss.  *Id.*

No allegations against Stewart, Monaco, and Marchand reflect intent by any of them to discriminate against the plaintiffs because of their gender.  Stewart, of course, is herself a woman and no basis is provided to conclude that she harbored discriminatory intent against other women.  The complaint alleges almost no facts specifically related to Monaco or Marchand, much less facts evidencing discriminatory intent.  None of these defendants are alleged to have made any comments reflecting discriminatory animus against women.  Plaintiffs do not even allege disparate treatment in the handling of Title IX complaints; there is no allegation that the Title IX complaints of any woman were treated differently from any man who filed complaints.  Stewart, Monaco, and Marchand are entitled to dismissal of this count based on qualified immunity under the first prong of the qualified immunity analysis.

### c.   Count VIII – Denial of Procedural Due Process

To establish a procedural due process claim under the Fourteenth Amendment, a plaintiff must show that (1) she was deprived of a life, liberty, or property interest protected by the Fourteenth Amendment and (2) the administrative procedures attendant to the deprivation did not satisfy the constitutional requirements of procedural due process.  *Wheelahan v. City of New Orleans,* No. 19-11720, 2020 U.S. Dist. LEXIS 54571, at pp. 42-43 (E.D. La. 3/30/20) (citing *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994)).

No plaintiff has alleged deprivation of any life, liberty, or property interest contemplated by the Fourteenth Amendment.  The plaintiffs generally allege that they were

deprived of "their liberty and property interest in accessing educational opportunities or benefits."[39]    But "most case law involving due process in the educational setting concerns student dismissals or suspensions from academic institutions."  *Smith v. Davis*, 507 Fed. Appx. 359, 362. (5th Cir. 2013).  None of the plaintiffs in the instant case were dismissed or suspended from school.  To the extent these plaintiffs allege a new theory that something other than discipline or dismissal could deprive them of a protected property interest in their education, there are no cases from the U.S. Supreme Court or within the Fifth Circuit which clearly establish that right.  This is, once again, a *res nova* claim.

Stewart, Monaco, and Marchand are entitled to qualified immunity and dismissal of plaintiffs' due process claims under both prongs of the qualified immunity analysis.

**V.    Count IX, "Conspiracy to Deny Civil Rights," must be dismissed as there are no allegations regarding a conspiracy involving Stewart, Monaco, or Marchand, and as noted above there are no viable claims for violation of equal process rights.**

Plaintiffs' claim under Count IX is premised upon 42 U.S.C. § 1985(3), which provides in relevant part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

A plaintiff must show four elements to establish a cause of action for conspiracy under Section 1985(3): (1) the defendants must conspire; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws; (3) the defendants must act in furtherance of the object of the conspiracy; and (4) some person was (a)

---

[39] Id, ¶ 446.

injured in his person or property or (b) deprived of having and exercising any right or privilege of a citizen of the United States. *McLellan v. Mississippi Power & Light Col.,* 545 F.2d 919, 923 (5th Cir. 1977).

To demonstrate a "conspiracy" for the purposes of a Section 1985(3) claim, plaintiffs must allege facts to establish an actual ***agreement*** between all the various defendants to come together to deprive the plaintiffs of their right to equal protection. See, e.g., *Barber v. District of Columbia Gov't*, 394 F.Supp.3d 49, 66 (D.D.C. 2019). And as set forth in Section II(b) above, plaintiffs cannot establish that Stewart, Monaco, or Marchand violated any rights to equal protection because they fail to allege that the Title IX complaints of male students were handled differently. Nothing in the complaint establishes "the existence of any events, conversations, or documents indicating that there was ever an agreement or meeting of the minds" between these three defendants and the various other defendants to participate in a conspiracy to violate their rights. *Id.* (citing *McManus v District of Columbia*, 530 F.Supp.2d 46, 75 (D.D.C. 2007). Plaintiffs allege no facts purporting to show that any of the three moving defendants had a meeting of the minds among themselves or with other defendants to agree to violate the rights of these plaintiffs. Plaintiffs provide nothing more than conclusory allegations of conspiracy. Plaintiffs' claims under Section 1985(3) must be dismissed.

Without a viable claim under Section 1985(3), the plaintiffs' claims under Section 1983 also fail, because a Section 1983 claim is entirely derivative from Section 1985. See, e.g., *Swift v. Motagnino*, 2002 U.S. Dist. LEXIS 30596, at *25 (E.D. La. Aug. 12, 2002).

**VI.    Count XII, "Negligence," must be dismissed against these defendants on the basis of Eleventh Amendment immunity because the State of Louisiana is the real, substantial party in interest.**

Plaintiffs allege that Stewart, Monaco, and Marchand were at all relevant times employees of LSU acting within the course and scope of their LSU employment.[40]  The Eleventh Amendment prohibits suit against state officials for violations of state law when "the state is the real, substantial party in interest."  *Hughes v. Savell*, 902 F.2d 376, 377 (5th Cir. 1990) (quoting *Ford Motor Company v. Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945). The State of Louisiana is the "real party in interest" if a judgment in a case would compel expenditures from the State treasury.  *Id.*   A claim that a state official violated a state law— including Louisiana Civil Code Article 2315, the provision which creates an action for negligence under Louisiana law—is a claim against the state per the Fifth Circuit.  *Id.* (citing *Pennhurst,* 465 U.S. at 121.  As the Supreme Court explained in *Pennhurst*:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

465 U.S. at 106.  Based upon this reasoning in *Pennhurst*, the Fifth Circuit concluded in *Hughes* that "where litigants accuse state officers of violating state common law when acting in the course and scope of their employment, the Eleventh Amendment prevents the litigant from raising the claim in federal court whether the litigant seeks damages or injunctive relief." *Hughes*, 902 F.2d at 378 (citing *Pennhurst*).  Further, under La. R.S. 13:5108.1(A)(1), the State of

---

[40] Id., ¶ 50.

Louisiana is required to defend and indemnify any State employee against claims for negligence "when the act that forms the basis of the cause of action took place while the individual was engaged in the performance of the duties of the individual's office, employment with the state, or engaged in the provision of services on behalf of the state or any of its departments." Plaintiffs allege that all acts by Stewart, Monaco, and Marchand were performed within the course and scope of their employment of LSU; therefore, the State of Louisiana would be ultimately responsible for paying any award rendered against these defendants for alleged negligence from State treasury funds.

As the Fifth Circuit noted later in *Richardson v. Southern Univ.*, 118 F.3d 450 (5th Cir. 1997), this attempt to state negligence claims against individual State employees in federal court is nothing more than a "creative attempt at repackaging the nature of [their] suit" against LSU itself. *Id.*at 453 (citing *Hughes*). Under these circumstances, Eleventh Amendment sovereign immunity bars these claims against Stewart, Monaco, and Marchand just as it bars them against LSU.

Stewart, Monaco, and Marchand anticipate that LSU, itself a defendant in this lawsuit, will move to dismiss all state law claims asserted by the plaintiffs against LSU based on Eleventh Amendment immunity. Plaintiffs' back door attempt to circumvent immunity by asserting these claims against individual employees, when the State itself is ultimately responsible, is a naked attempt to avoid Eleventh Amendment immunity. Based on the rationale of *Pennhurst* and *Hughes*, the Court should reject this attempt and dismiss all negligence claims against Stewart, Monaco, and Marchand based on Eleventh Amendment immunity, without prejudice to plaintiffs' rights to assert these claims in a Louisiana state court should they so choose.

VII.    **Count XIII, "Negligent Supervision," must also be dismissed based on Eleventh Amendment immunity.**

Stewart, Monaco, and Marchand submit that they are entitled to dismissal of these claims of negligence set forth in Count XIII for the same reasons they are entitled to dismissal of the claims for negligence set forth in Count XII.  The claims should be dismissed based on Eleventh Amendment immunity without prejudice to plaintiffs' rights to assert these claims in a Louisiana state court.

In addition, the moving defendants are immune from personal liability for claims of negligent training and supervision under state law.  La. R.S. 9:2798.1 provides public officials with immunity from tort liability "based upon the exercise of performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."  Per the Fifth Circuit, Louisiana courts have adopted a test analogous to the Federal Tort Claims Act's discretionary function test to determine whether an official is provided personal immunity under this statute. *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005).   A court must consider (1) whether a state law, regulation, or policy specifically prescribes the official's course of action, and (2) whether the challenged action is grounded in political, economic, or social policy.  *Id.*

In *Roberts*, the Fifth Circuit noted that a police chief "had a wide variety of options for training officers under his command" and "no law, regulation, or policy of the State of Louisiana explicitly directed his course of action," thus satisfying the first prong.  *Id.*  Further, the official's training and supervisory decisions were "grounded in policy considerations" because decisions to train involved considerations of community needs, situations that would be encountered by subordinates, and budgets available for training.  *Id.*  The court thus held that a failure to train

claim fell within the chief's discretionary immunity.  Other courts since *Roberts* have determined that training is a discretionary function subject to immunity under state law. *Hoffpauir v. Columbia Cas. Co.*, 2013 U.S. Dist. LEXIS 158026, at *35-36 ("hiring, training, supervising, or screening officers" were discretionary functions of sheriff subject to immunity under Louisiana law); *Aubin v. Columbia Cas. Co.*, 272 F.Supp.3d 828, 833 n.1 (M.D. La. 2017) (citing *Roberts* and *Hoffpauir* to dismiss a state law failure to train claim).

> **VIII.    Count XIV, "Negligent Infliction of Emotional Distress," must likewise be dismissed based on Eleventh Amendment immunity.**

Defendants re-adopt the arguments presented the two preceding sections of this memorandum and request that these claims be dismissed without prejudice based on Eleventh Amendment immunity.

> **IX.    Count XV, "Intentional Infliction of Emotional Distress," must be dismissed due to plaintiff's failure to state a claim.**

The Louisiana Supreme Court has repeatedly held that, to state a claim of intentional infliction of emotional distress under Louisiana law, a plaintiff must show that (1) the conduct alleged was extreme and outrageous, (2) the emotional distress suffered was severe, and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from her conduct.   *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991); *Nicholas v. Allstate Ins. Co.,* 765 So.2d 1017, 1022 (La. 2000); *LaBove v. Raftery,* 802 So.2d 566, 577 (La. 2001).   *See also Lincoln v. Mendler*, 2018 U.S. Dist. LEXIS 150018, at *7 (E.D. La. Aug. 31, 2018) (citing *White v. Monsanto).*   "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a

civilized community." *Id.* "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* The distress suffered "must be such that no reasonable person could be expected to endure it." *Id.* at 1210.

Louisiana courts have cautioned that intentional torts should be narrowly construed. *Gaspard v. Orleans Parish School Board,* 688 So.2d 1298, 1301 (La. App. 4 Cir. 1997). An intentional act occurs only when an actor ***consciously desired*** the consequences of the act to occur or when he knew the result was certain or so substantially certain as to be nearly inevitable or virtually certain to follow. *Id.* at 1301. Mere knowledge or appreciation of a risk does not constitute intent. *Id.* at 1301-1302.

According to the Fifth Circuit, Louisiana has set "a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that courts require truly outrageous conduct before allowing a claim even to be presented to a jury." *Morris v. Dillard Dep't Stores, Inc*., 277 F.3d 743, 756-56 (5th Cir. 2001). Regarding the severity of emotional distress sustained by a plaintiff, the Fifth Circuit has noted that the distress must be "unendurable." *Smith v. Amedisys Inc.,* 298 F.3d 434, 450 (5th Cir. 2002).

Plaintiffs allege no conduct by Stewart, Monaco, or Marchand which even remotely approaches the relevant standard set forth for a claim of intentional infliction of emotional distress. These claims must be dismissed with prejudice.

X.    **Count XVI, "Bad Faith Breach of Contract," must be dismissed because plaintiffs have not alleged any valid contract between themselves and the moving defendants.**

Plaintiffs allege that the LSU's Code of Student Conduct, Title IX Policy, Sexual Harassment Policy, and Equal Opportunity Policy collectively formed a "contract" with various

defendants including Stewart, Monaco, and Marchand.  These defendants submit that there was no contract to be breached.

Under Louisiana law, a contract is formed by consent of the parties established through offer and acceptance that may be made orally, in writing, or by action or inaction that is clearly indicative of consent.  *Ranson v. Cooper*, 16-29 (La. App. 1 Cir. 9/19/16), 228 So.3d 1254, 1257 (citing La. Civ. Code Art. 1927).  When there is no "meeting of the minds" between the parties, there is no consent and thus no enforceable contract.  *Id.*  Plaintiffs bear the burden of proving that an enforceable contract existed between them and LSU.  *Estate of Mayeux v. Glover*, 08-2031 (La. App. 1 Cir. 1/12/10), 31 So.3d 1090, 1095.

There is no factual support for a claim that Stewart, Monaco, or Marchand had intent to enter into a contract with the plaintiffs, or that any plaintiff had intent to enter into a contract specifically with these individual defendants.   There is no evidence that these defendants were personally involved in the drafting of any of these codes or policies or any amendments to those policies.  None of these documents were the "result of negotiations between" any plaintiff and any of these defendants; instead, these policies were unilaterally issued by LSU and were subject to unilateral amendment by LSU at any time without the input or consent of any plaintiff or these defendants.  Even if these documents somehow formed a contract between LSU and the plaintiffs, which is denied, there is no support for any contention that Stewart, Monaco, or Marchand as employees of LSU were themselves parties to the contract.

Finding the existence of a "contract" between these defendants and plaintiffs would diverge from current Louisiana jurisprudence.  No Louisiana state court or federal court applying Louisiana law has ever recognized a contractual relationship between a university

student and a *public* university.  *See*, e.g., *Dung Quoc Pham v. Univ. of La. At Monroe*, 2016 WL 10674046, at *2 (W.D. La. Apr. 8, 2016) ("It is unclear whether Louisiana recognized a contractual relationship between a student and public university").  Courts have found contractual relationships between students and *private* universities—see *Guidry v. Our Lady of the Lake Nurse Anesthesia Program*, 14-461 (La. App. 1 Cir. 1/29/15), 170 So.3d 209, 213—but there is no corollary for public universities such as LSU.  The reasoning for this is clear: public university students, unlike students at private universities, are afforded certain protections against arbitrary and capricious acts of a public institution through federal and state constitutional due process principles, whereas there is no such recourse for students attending a private university.  Courts have therefore described the relationship between private universities and their students as "contractual in nature."[41]

Allowing the plaintiffs to proceed with breach of contract claims in this case would create a brand-new cause of action never previously recognized against public universities in Louisiana.  The Court should decline plaintiffs' attempt to fundamentally alter the relationship that public universities currently have with their tens of thousands of students.

LSU's unilateral ability to change its handbooks and policies makes the handbook and policies cited by plaintiffs analogous to employment handbooks unilaterally mandated by employers.  As the Fifth Circuit has noted, "Louisiana courts have not been inclined to find

---

[41] *See Southwell v. Univ. of Incarnate Word*, 971 S.W.2d 351, 356 (Tex. App. – San Antonio 1998) ("[A] contractual relationship need not necessarily be logically inferred to exist between a student and a public school because education at such institutions is a benefit endowed by the State.  However, 'the relationship between a private school and its student has by definition primarily a contractual basis.'  If such were not the case, neither the school nor the student would have a remedy at a private institution in situations in which non-performance caused damage.  Accordingly, where a private college or university impliedly agrees to provide educational opportunity and confer the appropriate degree in consideration for a student's agreement to successfully complete degree requirements, abide by university guidelines, and pay tuition, a contract exists.")

contracts in employment manuals. *Wallace v. Shreve Memorial* Library, 79 F.3d 427, 430 (5th Cir. 1996). Employment manuals, like the LSU student handbook, are merely "unilateral expressions" of an employer's policy and procedures which is completely void of any bargained for agreement on terms and conditions. *Mix v. University of New Orleans*, 609 So.2d 958, 961 (La. App. 4 Cir. 1992). *See also Schwarz v. Administrators of Tulane Educational Fund*, 699 So.2d 895, 897 (La. App. 4 Cir. 1997) (holding that failure to grant tenure to a professor in accordance with the terms and conditions set forth in a faculty handbook did not breach any contract because the handbook was a unilateral expression of policy and did not represent a meeting of the minds); *Stanton v. Tulane University,* 777 So.2d 1242, 1250 (La. App. 4 Cir. 2001) (in affirming grant of Tulane motion for summary judgment, held that Tulane's employee manuals, policies, and procedures do not confer contractual rights); *Hartz v. Administrators of Tulane Educational Fund,* 275 F.Appx. 281, 289 (5th Cir. 2008) (in reversing district court's partial denial of Tulane motion for summary judgment, held that university policies and procedures are not contractual).

Plaintiffs' claims for breach of contract against Stewart, Monaco, and Marchand must be dismissed with prejudice.

**XI.    Count XVII, "Civil Conspiracy," must be dismissed.**

Plaintiffs' attempt to state a claim for civil conspiracy should be dismissed. It is well-established that an independent cause of action for civil conspiracy does not exist under Louisiana law. *Able Sec. and Patrol, LLC v. State of Louisiana,* 569 F.Supp.2d 617 (E.D. La. 2008); *Hardy v. Easterling,* 113 So.3d 1178, 1184 (La. App. 2 Cir. 2013). Under Louisiana law, civil conspiracy is not an independent cause of action, but must be accompanied by an underlying

tort.  See *Butz v. Lynch*, 97-2166 (La. App. 1 Cir. 04/08/98), 710 So.2d 1171.  The actionable element in a claim under this article is not the alleged conspiracy itself, but rather the tort which the conspirators allegedly agreed to perpetrate and which they actually committed in whole or in part.  *Id.*  To recover under this theory of liability, a plaintiff must prove that an agreement existed between parties to commit an illegal or tortious act which resulted in the plaintiff's injury.  *Silver v. Nelson*, 610 F. Supp. 505, 516-517 (E.D. La. 1985).  A plaintiff must establish that there was an agreement as to the intended outcome or result.  *Walker v. American Honda Motor Co., Inc.*, 93-1659 (La. App. 3 Cir. 6/1/94); 640 So. 2d 794, 797, *writ denied*, 94-1741 (La. 10/7/94); 644 So. 2d 644.

Plaintiffs do not and cannot plausibly claim that Stewart, Monaco, and Marchand reached an agreement among themselves or with other defendants with the intention to injure female students at LSU by not properly investigating instances of sexual assault.  Aside from conclusory statements, there are no facts which showed that any defendant entered into an agreement with anyone else to harm any plaintiff.  Because conspiracy cannot be a solo endeavor, and because conspiracy is not itself a stand-alone cause of action, defendants submit that Count XVII must be dismissed.

XII.    **Count XIX, "Civil Violations of the Louisiana Racketeering Act," must be dismissed.**

Plaintiffs' Louisiana Racketeering Act Case Statement ("LRA Case Statement") and Amended Class Action Complaint are devoid of facts that would entitle them to relief from these defendants under the Louisiana Racketeering Act ("LRA").

To state a claim under the LRA, a plaintiff must identify and allege facts demonstrating the requisite elements thereof, namely, "predicate acts" and a "pattern of racketeering

activity." Plaintiffs fail to allege sufficient facts that Stewart, Monaco, or Marchand committed predicate acts, thus failing to plead that these defendants engaged in a "pattern of racketeering activity," as required to state a claim for relief under the LRA. Rather, plaintiffs' claims are based on conduct that does not qualify as a "prohibited act" under the LRA. Further, plaintiffs fail to show how their alleged injuries have directly resulted from defendants' alleged racketeering and thus fail to establish that they have standing. Accordingly, plaintiffs have failed to state a claim upon which relief can be granted, and their LRA claim should be dismissed as a matter of law.

### A.    Elements of a Louisiana Racketeering Act Claim

The LRA is found at La. R.S. 15:1351, *et seq*.   Section 1353 sets forth the following prohibited activities:

> A.    It is unlawful for any person who has knowingly received any proceeds derived, directly or indirectly, from a pattern of racketeering activity to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in immovable property or in the establishment or operation of any enterprise.

> B.    It is unlawful for any person, through a pattern of racketeering activity, knowingly to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or immovable property.

> C.    It is unlawful for any person employed by, or associated with, any enterprise knowingly to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.

> D.    It is unlawful for any person to conspire or attempt to violate any of the provisions of Subsections A, B, or C of this Section.

To state a valid cause of action under the LRA (and the federal statute on which it is based), a party must allege that (1) a person or persons (within the meaning of RICO), (2) engaged in a

pattern of racketeering activity, (3) that was connected to the acquisition, establishment, conduct or control of an enterprise. *See* La. R.S. 15:1353 and 1356; *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425 439 (5th Cir. 2000) and *Brown v. Protective Life Ins. Co*., 353 F.3d 405 407 (5th Cir. 2003).  In addition, to proceed with any claim under the LRA, the complaint must sufficiently allege a "pattern of racketeering activity," defined by La. R.S. 15:1352(C) to be:

> [E]ngaging in at least two incidents of racketeering activity that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided...that the last of such incidents occurs within five years after a prior incident of racketeering activity.

"Racketeering activity" is defined in 18 U.S.C. § 1961(1) in terms of a list of state and federal crimes, which are described as "predicate acts." The predicate acts that may form the basis for such "racketeering activity" in an LRA claim are specifically enumerated in the LRA statute.  *See* La. R.S. 15:1352(A)(1)-(65).

Regarding the general requirements for proving a civil RICO[42] cause of action, the Fifth Circuit, in *Walker v. Beaumont Independent School District,* 938 F.3d 724, 738 (5th Cir. 2019), set forth the following:

> To establish a RICO "enterprise," a plaintiff must provide evidence of the existence of an entity separate and apart from the pattern of racketeering activity. *United States v. Turkette,* 452 U.S. 576, 583, 101  S.Ct. 2524, 69 L.Ed.2d 246 (1981).  The entity does not have to be a formal or legal entity, but it must have some sort of hierarchical or consensual decision-making structure, and it must exist for purposes other than just to commit redicate acts.  *Inre McCann,* 268 F.App'x 359, 366 (5th Cir. 2008); *United States v. Bledsoe,* 674 F.2d 647, 663

---

[42] The LRA was "modeled after the federal 'RICO' legislation and courts therefore look to "federal interpretations for guidance."  *See Egana v. Blair's Bail Bonds*, No. 17-5899, 2019 U.S. Dist. LEXIS 38428, at *7 n.9 (citing *State v. Nagi*, 2018 WL 1704253 (La. App. 1 Cir. 2018); *see also State v. Elmore*, 2017 La. App. LEXIS 1865 (La. App. 4 Cir. 2017).

(8th Cir. 1982).  A plaintiff establishes the existence of an enterprise by providing "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. *Turkette,* 452 U.S. at 583, 101 S.Ct. 2524.  For an informal enterprise, known as an association-in-fact enterprise, the "group need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods – by majority vote, consensus, a show of strength, etc."  *Boyle v. United States,* 556 U.S. 938,  948, 29 S. Ct. 2237, 173 L.Ed.2d 1265 (2009). "Members of the group need not have fixed roles; different members may perform different roles at different times…" *Id.*  Further, "while the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other.  The 'enterprise' is not the 'pattern of racketeering activity.'"  *Id.*  **Plaintiffs must "plead specific facts, not mere conclusory allegations,** which establish the enterprise."  *Manax v. McNamara,* 842 F.2d 808, 811 (5th Cir. 1988 [emphasis added].  Finally, **"a RICO plaintiff must plead the specified facts as to each defendant.  It cannot…'lump [ ] together the defendants.'"**  *In re MasterCard Int'l., Inc., Internet Gambling Litigation,* 132 F.Supp.2d 468, 476 (E.D. La. 2001), *aff'd,* 313 F.3d 257 (5th Cir. 2002) (quoting *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721 730 (7th Cir. 1998)) [emphasis added].

To withstand a motion to dismiss, a plaintiff must allege facts sufficient to establish the essential elements of his or her racketeering claim.  *Price v. Pinnacle Brands, Inc.,* 138 F.3d 602, 606 (5th Cir. 1998).  A plaintiff must allege specific facts concerning (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Elliot v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989).  *See also Robinson v. Standard Mortgage Corp.,* 191 F.Supp.3d 630, 638 (E.D.La. 2016) (Vance, J.); *Castrillo v. American Home Mortgage Servicing, Inc.,* 670 F.Supp.2d 516, 530 (E.D.La. 2009) (Vance, J.); *Scottsdale Insurance Co. v. Dorman,* 153 F.Supp.2d 852, 856 (E.D. La. 2001) (Clement, J.).

**B. Plaintiffs Fail to Allege Facts to Establish that Defendants Committed Predicate Acts Under the LRA.**

Plaintiffs allege that Stewart, Monaco, and Marchand committed the following predicate acts: (1) Public Intimidation (La. R.S. 14:122); (2) Intimidating Witnesses (La. R.S. 14:129.1); (3) Injuring Public Records (La. R.S. 14:132); (4) Maintaining False Public Records (La. R.S. 14:133); (5) Money Laundering (La. R.S. 14:230); and (6) Corrupt Influencing (La. R.S. 14:120). However, plaintiffs have listed only conclusory allegations as the basis for each of these predicate acts, failing to allege facts that establish illegal conduct attributable to these defendants.

### 1. Public Intimidation (La. R.S. 14:122):

Plaintiffs allege the predicate act of Public Intimidation.  La. R.S. 14:122(C)(1) defines this offense as follows:

> Public Intimidation is the use of . . . extortionate threats, or true threats upon any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty. . ." La. R.S. 14:122(A).  "'Extortionate threats' occur when a person communicates an unlawful threat to harm another person with the intention to obtain anything of value or any . . . advantage, . . . of any description and the person would not otherwise be able to lawfully secure such advantage willingly from the victim."

Plaintiffs list Stewart, Monaco, and Marchand as "Participants" in this predicate act.[43] However, the only allegation made against the defendants regarding Public Intimidation is the following statement:

> Defendant Lewis being told by Athletics Department staff during a mandatory meeting that individuals attempting to report Sexual Misconduct are "Tattletales." This is a direct consequence of the following: 1) LSU, Alexander, Alleva, Monaco, Ausberry, Marchand, Segar, and Stewart's consistent attempts to incentivize public employees to Retaliate against such employees; 2) the same

---

[43] LRA Case Statement, R.Doc. 103, p. 40.

Defendants' threats of Retaliation against individuals attempting to report Sexual Misconduct. . .[44]

An allegation of "attempts to incentivize public employees to retaliate," even if true, is clearly not a use of "extortionate threats" or "true threats." There is not a single allegation in the Amended Class Action Complaint or in the LRA Case Statement that Stewart, Monaco, or Marchand made any statements that constitute a threat. Not one factual allegation is offered to support these conclusory statements—statements which, even if true, obviously do not violate the statute.

## 2. *Intimidating Witnesses (La. R.S. 14:129.1)*

Plaintiffs also allege the predicate act of Intimidating Witnesses, citing La. R.S. 14:129.1:

> No person shall intentionally: (1) Intimidate or impede, by threat of force or force, or attempt to intimidate or impede, by threat of force or force, a witness . . . with intent to influence . . . his reporting of criminal conduct . . .; [or] (2) Injure or attempt to injure a witness in his person or property . . . with intent to influence . . . his reporting of criminal conduct . . .

Plaintiffs list Stewart, Monaco, and Marchand as "Participants" in this predicate act.[45] However, plaintiffs allege only the following facts against these three defendants regarding the predicate act of Intimidating Witnesses:

- "This inadequate training is a direct consequence of the inadequate Title IX training and reporting system;"[46]

- "[T]hese Defendants engaged in a pattern of attempts to incentivize Responsible Employees and students to Retaliate and threaten Retaliation against individuals attempting to report Sexual Misconduct;"[47]

---

[44] Id., p. 41.
[45] Id., p. 42.
[46] Id., p. 43.

- 'Stewart also denied Andries' request to remove Roe from their shared classes because "that would violate his rights;"'[48]

- "Defendant Monaco refused to provide Interim Measures to one of the student victims of former LSU football coach Les Miles"[49]

None of these allegations in the LRA Case Statement, nor any of the allegations in the Amended Class Action Complaint, indicate that the defendants made a "threat of force" or committed an act of "force" to intimidate or impede any of the plaintiffs. Nor do any of these allegations constitute an "attempt to intimidate or impede, by threat of force or force." None of the allegations pleaded thus far indicate that Stewart, Monaco, and Marchand used force, or the threat of force, to injure a witness. Thus, even accepting the allegations as true, they would not amount to a violation of La. R.S. 14:129.1.

### 3.   Injuring Public Records (La. R.S. 14:132)

Plaintiffs allege the predicate act of Injuring Public Records, citing La. R.S. 14:132 which defines this offense as "the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer" and "the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, defined as a public record pursuant to R.S. 44:1 et seq. and required to be preserved in any public office or by any person or public officer pursuant to R.S. 44:36."

---

[47] Id.
[48] Id.
[49] Id., p. 47.

Plaintiffs list Stewart, Monaco, and Marchand as "Participants" under this predicate act.[50] However, none of the alleged facts even mention Monaco or Marchand, with the exception of this conclusory statement: "Higher-ranking members of the Enterprise (TAF, Board Alexander, Alleva, Ausberry, Segar, Orgeron/Finch, Marchand, Stewart, Fuentes-Martin, Monaco, J. Sell, M. Sell) intentionally trained lower-ranking members to keep inadequate records in maintenance of the Enterprise."[51]   La. R.S. 14:132 does not mention intentional training. The statute speaks only to "the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record." Thus, none of the facts alleged under this predicate act indicate that Marchand or Monaco committed this crime.

Plaintiffs make the following allegation related to Stewart under this predicate act: "Unidentified persons under the control of Defendant Stewart in the Title IX Office and Defendant Fuentes-Martin in the Dean of Students' Office concealed notes or other written evidence of Plaintiff Doe's reports of Sexual Misconduct from public records."[52]   But this allegation is not against Stewart; rather, it is an allegation of criminal conduct by some unidentified person in the Title IX Office. Plaintiffs have not alleged that Stewart herself destroyed any records or intentionally falsified records.  It is facially apparent that these claims do not constitute a violation of La. R.S. 14:132.

### 4.   Maintaining False Public Records (La. R.S. 14:133)

Plaintiffs also allege the predicate act of Maintaining False Public Records, citing La. R.S. 14:133 which provides that "[f]iling false public records is the . . . maintaining as required by

---

[50] Id., p. 47.
[51] Id., p. 48.
[52] Id., p. 49.

law, regulation, or rule, with knowledge of its falsity, of any of the following: . . . Any document

containing a false statement or false representation of a material fact."

Plaintiffs list Stewart, Monaco, and Marchand as "Participants" under this predicate

act.[53] The following allegations were made against Marchand and Stewart:

> Defendants Marchand and Stewart, as campus Title IX Coordinators, were
> required by law to keep records of all reports of Sexual Misconduct, interview
> notes and investigation reports related to reports of Sexual Misconduct, and
> documentation related to the determination of responsibility, sanctioning, and
> any applicable appeals process for all reports of Sexual Misconduct. Marchand,
> Stewart, and their subordinate employees did not maintain these records
> appropriately and not only concealed material facts but also documented false
> information.[54]

Plaintiffs' allegations against Marchand and Stewart do not claim any "knowledge of

falsity" as required by La. R.S. 14:133. Plaintiffs go on to provide a list of examples of these

"false records" but fail to provide any facts thus far that indicate that Stewart had knowledge of

their falsity. Furthermore, a paragraph in the Amended Class Action Complaint states that

Marchand's role as Title IX Coordinator ended in 2015.[55] Only two named plaintiffs, Richardson

and Kitch, allege incidents of sexual harassment which occurred during the time that Marchand

was Title IX coordinator, but neither reported the misconduct during that time.[56]  No other

plaintiff alleges any incident or report of sexual misconduct which occurred while Marchand

was Title IX coordinator.[57]  Because Marchand was not serving as Title IX Coordinator when any

plaintiff submitted a report, he was under no obligation to keep records of non-existent

reports, nor did he handle or document facts in non-existent reports.

---

[53] Id., p. 50.
[54] Id., pp. 51-52.
[55] R.Doc. 22, ¶ 46.
[56] Id., ¶¶ 110, 111, 115, 340-42, 349.
[57] Id., ¶¶ 120, 156-59, 177, 193-95, 209. 244, 285, 302, 322.

The following allegation was made against Monaco under the predicate act of Maintaining False Public Records:

> Defendant Monaco knowingly maintained various human resource documents that he knew contained either false information or material misrepresentations of fact, including, but not limited to, any investigation reports stating that Les Miles did not violate Title IX.[58]

Plaintiffs have not provided a single fact in the LRA Case Statement or the Amended Class Action Complaint to support this conclusory allegation. Nor is this allegation even relevant to a single plaintiff's claims, as no plaintiff has alleged any misconduct directed at them by Les Miles nor any direct injury resulting from this alleged act by Monaco.

### 5. Money Laundering (La. R.S. 14:230)

Plaintiffs allege the predicate act of Money Laundering, citing La. R.S. 14:230 which provides a list of acts that constitute a violation of this statute. This list of acts includes the following:

> "(1) Conduct, supervise, or facilitate a financial transaction involving proceeds known to be derived from criminal activity, when the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of proceeds known to be derived from such violation or to avoid a transaction reporting requirement under state or federal law. (2) Give, sell, transfer, trade, invest, conceal, transport, maintain an interest in, or otherwise make available anything of value known to be for the purpose of committing or furthering the commission of any criminal activity. (3) Direct, plan, organize, initiate, finance, manage, supervise, or facilitate the transportation or transfer of proceeds known to be derived from any violation of criminal activity. (4) Receive or acquire proceeds derived from any violation of criminal activity, or knowingly or intentionally engage in any transaction that the person knows involves proceeds from any such violations. (5) Acquire or maintain an interest in, receive, conceal, possess, transfer, or transport the proceeds of criminal activity. (6) Invest, expend, or receive, or offer to invest, expend, or receive, the proceeds of criminal activity.

---

[58] R.Doc. 103, p. 51.

La. R.S. 14:230(B). Plaintiffs list Stewart, Monaco, and Marchand as "Participants" in this predicate act and allege that the "Participants" of the Enterprise "knowingly possessed proceeds derived from the Enterprise."[59] However, plaintiffs have offered no facts in the LRA Case Statement or in the Amended Class Action Complaint to support this conclusory allegation. Plaintiffs allege that "Marchand, Monaco, Stewart, and Fuentes- Martin consistently provided their respective Authority and Control of LSU employees to the Enterprise for the furtherance of the Enterprise."[60] This is the only other allegation made against these three defendants under the predicate act of Money Laundering; however, it does not amount to money laundering because it does not meet any of the six statutory definitions noted above. Plaintiffs do not provide any facts that could plausibly show that defendants committed the act of Money Laundering.

### 6. *Corrupt Influencing (La. R.S. 14:120)*

Plaintiffs allege the predicate act of Corrupt Influencing, citing La. R.S. 14:120 which provides:

> Corrupt influencing is the giving or offering to give anything of apparent present or prospective value to, or the accepting or offering to accept anything of apparent present or prospective value by, any person, with the intention that the recipient shall corruptly influence the conduct of any of the persons named in R.S. 14:118 (public bribery) in relation to such person's position, employment or duty.

Plaintiffs list Stewart, Marchand, and Monaco as "Participants" under this predicate act and provide the following allegation:

> [P]articipants created a compensation scheme that gave bonuses and incentive-based payments to Responsible Employees and to certain

---

[59] Id., p. 53.
[60] Id., p. 55.

programs/departments at LSU that intended to and did in fact corruptly influence public employees to have a deficient university-wide Title IX program that ignored, suppressed, and/or minimized Title IX complaints, intimidated victims and witnesses of Sexual Misconduct, and caused false records to be kept at LSU.[61]

There are no factual allegations in the LRA Case Statement or the Amended Class Action Complaint that support this conclusory statement. Plaintiffs do not provide a single fact indicating that any of these three defendants have given, offered, or accepted "anything of apparent present or prospective value."

Plaintiffs have failed to sufficiently plead any violation of state criminal law that could constitute racketeering activity under the LRA and serve as a predicate offense for a Louisiana RICO violation. Because plaintiffs fail to sufficiently plead any predicate acts, their LRA claim fails as a matter of law and should be dismissed.

### C. Plaintiffs Fail to Plead a "Conspiracy" to Violate the Louisiana Racketeering Act.

Plaintiffs similarly fail to sufficiently plead the existence of any agreement to violate the Louisiana Racketeering Act. To prevail on a racketeering conspiracy claim, plaintiffs must demonstrate "(1) that two or more people agreed to commit a substantive [racketeering] offense and (2) that [the defendants] knew of and agreed to the overall objective of the [racketeering] offense." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015); *see Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010). Further, "a RICO plaintiff must plead the specified facts as to each defendant. [It] cannot . . . 'lump[ ] together the defendants.'" *In re MasterCard Int'l, Inc., Internet Gambling Litig.*, 132 F.Supp.2d at 476 (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998)).

---

[61] Id., p. 56.

Finally, "because the core of a [racketeering] civil conspiracy is an agreement to commit predicate acts, a [racketeering] civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Crowe v. Henry,* 43 F.3d 198 (5th Cir. 1985) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F2d. 1134, 1140 (5th Cir. 1992)).

Here, plaintiffs have pleaded no facts indicating that Stewart, Monaco, or Marchand agreed to commit a substantive offense or that they knew of and agreed to the overall objective. Instead, plaintiffs have alleged broadly that the defendants entered into an agreement "to conduct the affairs of the Enterprise."[62] Plaintiffs provide the following identical statement for each defendant (with each respective defendant's name plugged in):

> Stewart is liable under La. R.S. § 15:1353(D) for conspiring with LSU, Alexander, Alleva, Orgeron, Finch, J. Sell, M. Sell, TAF, Segar, Marchand, Fuentes-Martin, Ausberry, Monaco, and various non-defendants to conduct the affairs of the Enterprise through a pattern of racketeering activity by agreeing with one or more co-conspirators to pursue the common criminal objective of operating the Enterprise designed to protect and maximize the future revenue created by LSU's athletics programs by, inter alia, violating the rights of Sexual Misconduct victims through a pattern of racketeering activity.[63]

However, simply alleging the existence of an agreement is not sufficient. *Martin v. Magee*, No. 10-2786, 2011 U.S. Dist. LEXIS 61977 (E.D. La. June 10, 2011). Plaintiffs have not provided any factual allegations plausibly suggesting that such an agreement was made by Stewart, Monaco, or Marchand. Plaintiffs have not demonstrated any type of "conspiracy" between or among the defendants beyond the fact that most of them simply work for the same institution. This is plainly insufficient. *Chaney*, 595 F.3d at 239 (Additionally, "a person cannot be held liable for a RICO conspiracy 'merely by evidence that he associated with other . . . conspirators or by

---

[62] Id., pp. 28, 29, 31.
[63] Id., p. 28.

evidence that places the defendant in a climate of activity that reeks of something foul.'") (quoting *United States v. Posada–Rios*, 158 F.3d 832, 857 (5th Cir. 1998)).

Further, "to establish a civil [racketeering] conspiracy, a [racketeering] conspiracy plaintiff [must] allege injury from an act that is analogous to an act of tortious character, meaning an act that is independently wrongful[.]" Davis-*Lynch, Inc. v. Moreno*, 667 F.3d 539, 552 (5th Cir. 2012) (quoting *Beck v. Prupis*, 529 U.S. 494 (2000). This "act of tortious character" is also known as a "predicate act." Without it, plaintiffs cannot establish a civil racketeering conspiracy. As demonstrated herein, plaintiffs' allegations of predicate acts are conclusory and insufficient. Instead of alleging predicate acts, plaintiffs have strung together a series of purported acts or omissions, lumped them all together, thrown in a legal conclusion that a statute was violated, yet failed to allege any facts specifying how any defendant's conduct constitutes a violation of the statute.   This is yet another example of plaintiffs' shotgun approach to pleading.

### D.  Plaintiffs Fail to Allege Injury and Lack Standing.

Plaintiffs have similarly failed to meet the requisite showing of injury caused by defendants' alleged predicate acts.

There is very little Louisiana jurisprudence regarding the LRA.  However, because the LRA was modeled on federal RICO legislation, and because of the parallels between RICO and the LRA, state and federal courts interpreting the LRA have held that federal RICO jurisprudence is persuasive. *See State v. Touchet*, 99-1416 (La. App. 3 Cir 04/05/00), 759 So. 2d 194; *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc*., No. 2:11-CV-00856, 2013 U.S. Dist. LEXIS 120297 (W.D. La. Aug. 21, 2013*); Zilbert v. Sasol N. Am., Inc*., No. 2:11 CV 00862, 2012 U.S. Dist. LEXIS

74920 (W.D. La. May 25, 2012). Those courts have applied the federal RICO standing element to LRA claims. *Id.*

Standing generally is a threshold consideration for any Court before moving on to the merits. However, RICO/LRA standing is unique in that a civil plaintiff has standing to assert a civil cause of action only if a violation of the statute proximately caused his injuries. *See In re MasterCard Int'l Inc., Internet Gambling Litig.*, 132 F.Supp. 2d at 495; *Jackson v. Nat'l Ass'n for Advancement of Colored People*, 546 F.App'x 438, 442 (5th Cir. 2013) (citing *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998)). A plaintiff must satisfy two elements to establish standing: injury and causation. *Jackson*, 546 F.App'x at 442. A cognizable RICO/LRA injury must be to business or property. "Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing." *Morrell v. Alfortish*, No. 10-924, 2010 WL 4668429, at *5 (E.D. La. Nov. 9, 2010) (Fallon, J.) (quoting *Price*, 138 F.3d at 607).

To establish standing, a plaintiff must plead more than "speculative damages" that "would not simply entail a calculation of present, actual damages." *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995). For purposes of causation, a plaintiff has a right of action only if the plaintiff can show that he has been injured "by reason of" a racketeering violation. *See Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016), *cert. denied*, 138 S.Ct. 76, 199 L.Ed. 2d 24 (2017) (citing 18 U.S.C. § 1964(c)). The United States Supreme Court has established that plaintiffs must demonstrate both "but-for" causation and proximate cause to show that they have been injured "by reason of" a racketeering violation. *Id.* To establish proximate cause, there must be "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* "When a court evaluates a [racketeering] claim for proximate

cause, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id.*

Plaintiffs have not alleged conduct by defendants that would rise to the level of a Louisiana Racketeering Act violation. At best, they have alleged what amounts to indirect injury, which is legally insufficient. Even if the alleged predicate acts were true, there is no indication that plaintiffs' injuries were directly caused by defendants' conduct. A simple "but-for" analysis easily shows that plaintiffs have not sustained direct injury arising from the purported predicate acts of Stewart, Monaco, and Marchand. For example, to allege direct injury, plaintiffs would have to allege facts indicating that if Stewart had not concealed "witness accounts of John Roe's abuse of Plaintiff Andries" (as alleged under the predicate act of Injuring Public Records), Andries would not have sustained injury to her business or property.[64] Such an analysis is impossible because plaintiffs do not plead any facts that would lead to this conclusion. The number of steps and assumptions one would have to pursue to find causation between defendants' alleged predicate acts and plaintiffs' claimed injuries evidences a relationship that is so indirect that standing cannot be reasonably conferred. Finally, even if plaintiffs had sufficiently alleged that such acts or omissions "directly" injured them, not "every injury is compensable [under RICO as] 'RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff.'" *Fuller v. Harrah's Entm't, Inc.*, No. CIV.A. 04-2108, 2004 WL 2452771, at *2 (E.D. La. Oct. 29, 2004) (quoting *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992)).

---

[64] Id., p. 49.

Even if plaintiffs were able show that their injuries resulted directly from defendants' predicate acts, they have not sufficiently alleged injury to business or property. The Eastern District and Fifth Circuit have both held that there is no recovery under racketeering laws for personal injuries. *Morell,* 2010 WL 4668429, at *5; *see also Labat v. Williams*, No. 08-4041, 2010 U.S. Dist. LEXIS 83260 (E.D. La. July 8, 2010) (quoting *Price*, 138 F.3d at 607) ("Furthermore, **since there is no recovery under RICO for personal injuries**, a plaintiff does not have standing to sue under 18 U.S.C. § 1964(c) based on such injuries").  [Emphasis added.] Under point #4 in plaintiffs' LRA Case Statement (titled "List the alleged victims and state how each victim allegedly was injured"), each plaintiff alleges personal injury consisting of "severe emotional and physical distress."[65]  This is clearly not an injury to business or property. Plaintiffs also allege economic damages in the form of "healthcare related expenses" incurred due to their emotional and physical distress, which is similarly unrecoverable under RICO and by extension the LRA.[66] *See Taitz v. Democrat Party of Miss.*, No. 3:12-cv-280-HTW-LRA, 2015 U.S. Dist. LEXIS 178819 (S.D. Miss. Mar. 31, 2015) ('Injury under civil RICO is defined as harm to "business or property;" thus, personal injuries such as medical expenses, emotional distress, or injuries related to defamation are not cognizable under RICO.') (citing *Gaines v. Tex. Tech Univ.*, 965 F.Supp. 886 (N.D. Tex. 1997) and *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979)). *See also Genty v. RTC*, 937 F.2d 899, 918 (3rd Cir. 1991) (holding that plaintiffs could not recover under RICO for medical expenses and damages for emotional distress resulting from exposure to toxic waste).

---

[65] Id., pp. 36-39.
[66] Id., pp. 37-38.

Plaintiffs also allege "severe economic damages" in the form of lost earning potential, lost opportunities for significant earning potential, lost scholarships, and lost future income.[67] These claims clearly constitute an "injury to mere expectancy interests or to an 'intangible property interest,'" neither of which is sufficient to confer standing.  See *Morrell v. Alfortish, supra.*  Not only is the use of the words "opportunities" and "potential" facially indicative of expectancy interest and/or intangibility, but further, alleging potential loss of revenue because of the inability to complete education and vocational opportunities is simply not sufficient to establish a financial injury to business or property sufficient to sustain a RICO cause of action. *See Labat v. Williams*, No. 08-4041, 2010 U.S. Dist. LEXIS 83260 (E.D.La. July 8, 2010).[68]

Plaintiffs have failed to allege facts to support any direct injury to plaintiffs' business or property and correspondingly have failed to allege facts sufficient to demonstrate standing under their LRA claim.

**XIII.    Count XX, "Enrichment Without Cause," must be dismissed.**

Louisiana Civil Code Article 2298 provides that a person who has been enriched without cause at the expense of another person is bound to compensate that person.  This remedy is subsidiary and shall not be available if the law provides another remedy for the impoverishment.  La. C.C. Art. 2298; *see also Walters v. Medsouth Record Mgmt*., LLC, 10-0351 (La. 06/04/10), 38 So. 3d 243)).  If plaintiffs allege that these defendants and others violated

---

[67] Id., pp. 36-39.

[68] In *Labat*, the court stated:  "In this case, Labat claims that he suffered a potential loss of revenue because he was not able to complete his education and vocational opportunities in jail so that he could later earn money through the work-release program. . . Labat's allegations, if true, do not establish that he was a "'person injured in his business or property by reason of a violation' of [RICO]" as required under § 1964(c). At best, he claims that he may have lost some earning potential if he could have been placed in a work-release program and if he had completed the necessary training. This is tenuous at best and is not adequate to establish that he actually suffered a financial injury to an existing business enterprise or property directly related to an illegal act by the defendants."

their rights under Title IX, plaintiffs may pursue their Title IX claims against LSU.  But where plaintiffs have literally asserted eighteen other counts for relief, they cannot recover under any theory of unjust enrichment.

Further, while plaintiffs alleged that the various defendants were enriched "by the millions of dollars that the LSU football program and TAF were able to bring into the school," there is no allegation claiming that Stewart, Monaco, or Marchand were unjustly enriched. There is no plausible claim that their jobs only existed and that they only received salaries and benefits because by covering up alleged sexual assaults the LSU football program and Athletic Department made money; all of their pay and benefits is funded by the State of Louisiana, not by the LSU football team or TAF.  This claim must be dismissed.

## CONCLUSION

Rather than pursue Title IX claims against LSU, Plaintiffs have instead opted to file egregious and convoluted shotgun pleadings firing away indiscriminately at every individual defendant they could think of in what appears to be an attempt to make this litigation as burdensome and unmanageable as possible.  Following the public release of the Husch Blackwell report on March 3, 2021, plaintiffs, in an apparent rush to be first to the courthouse, filed suit less than two months later with little if any due diligence into the merit of their claims against any specific individual defendant.  Their shotgun approach to litigation must be rejected.  Defendants Jennie Stewart, A.G. Monaco, and James Marchand urge the Court to dismiss with prejudice the many counts asserted against them in plaintiffs' Amended Class Action Complaint, either under Rule 12(b)(1) for lack of subject matter jurisdiction due to Eleventh Amendment immunity or under Rule 12(b)(6) for failure to state a claim.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

By:  _/s/ Gregory C. Fahrenholt_
**DENNIS J. PHAYER (La. Bar No. 10408)**
**GREGORY C. FAHRENHOLT (La. Bar No. 28572)**
**SYLVIA M. ZARZEKA (La Bar No. 38451)**
**Special Assistant Attorneys General**
**BURGLASS & TANKERSLEY, LLC**
5213 Airline Drive
Metairie, LA 70001
Tel: (504) 836-0412
Fax: (504) 287-0452
dphayer@burglass.com
gfahrenholt@burglass.com
szarzeka@burglass.com

***Attorneys for Defendants, Jennie Stewart,***
***A.G. Monaco, and James Marchand***