## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**                                **CIVIL ACTION NO.:**

**VERSUS**                                            **21-242-WBV-SDJ**

**LOUISIANA STATE UNIVERSITY, ET AL.**

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND
## UNDER RULE 12(b)(6) BY DEFENDANT EDWARD J. ORGERON, JR.

NOW INTO COURT, through undersigned counsel, comes Defendant, Edward J. Orgeron, Jr. (hereinafter "Orgeron"), who, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits this memorandum in support of his motion to dismiss any and all claims made against him in the Amended Class Action Complaint and Jury Demand filed by Plaintiffs, with prejudice.

### I.      Introduction

As an initial matter, Orgeron was not hired as LSU Head Football Coach until the 2017 season.  Prior to that time, he was instructed to report any of the types of problems alleged by Plaintiffs to Coach "Les" Miles, as he had no authority or responsibility to address such issues directly.  Accordingly, any allegations prior to 2017 are specifically denied as to Orgeron.

Plaintiffs allege that they are members of a putative class of current and former Louisiana State University ("LSU") students who attended the Baton Rouge campus between 2013 and 2021, are female presenting and/or LGBTQ+ identifying individuals, and who allege that they were victims of sex-based discrimination alleged to have been perpetrated by male LSU students and LSU employees.  The individual facts and circumstances of the purported class members fail to meet the requirements of Federal Rule of Civil Procedure 23 for pursuing this matter as a class action.  The questions of law and fact for each Plaintiff's claim are unique and unrelated to each

1

other and to those of potential other members. Their claims are individual each unto themselves, and no one claim is typical of the other. None of the representatives named herein can fairly and adequately protect the interests of the purported class, as each has a wholly unique perspective and circumstance, unrelated to the perspectives and circumstances of the others. The questions of law and fact affecting the individual members of the purported class clearly predominate over any questions that may be common to those of the purported class. Defendants are filing a motion to strike the class allegations pursuant to Rule 23(d)(1)(D) to address these deficiencies in greater detail.

Plaintiffs have made multiple claims under Title IX against LSU and various other individuals and entities alleging failure to uphold proper Title IX procedures and retaliation. Plaintiffs further allege that there was a "purposefully deficient" Title IX procedure within the LSU Athletic Department, which rose to the level of "racketeering activity" sufficient to state a claim under the Louisiana Racketeering Act.

Finally, Plaintiffs allege various other claims, including denial of Due Process, denial of Equal Protection under the law, denial of freedom of speech, and various state tort law claims.

## II.    Plaintiffs' allegations fail to meet the Rule 12(b)(6) standard of plausibility

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[1]  In order to meet this standard, a plaintiff must plead "facts that allow the court to 'draw a reasonable inference that the defendant is liable for the misconduct alleged'."[2]  Courts will not accept as true "conclusory allegations, unwarranted

---

[1] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed. 868 (2009).
[2] *Spector v. USAA Cas. Ins. Co.,* 2019 WL 1493467, *3 (E.D. La. April 3 2019) (quoting *Twombly, supra,* 550 U.S. at 570); *Iqbal, supra,* quoting *Twombly, supra,* 550 U.S. at 556.

factual inferences, or legal conclusions."[3] "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[4] If the complaint lacks an allegation regarding a required element necessary to obtain relief, dismissal of the complaint is proper.[5]

Plaintiffs' Amended Class Action Complaint ("ACAC") is a compilation of conclusory allegations, speculation, irrelevant narrative, and is so lacking in facts as to Orgeron that it completely fails to satisfy the requirements of Rule 12(b)(6) plausibility. Orgeron respectfully submits that the Court should dismiss Plaintiffs' claims made against him in the Amended Complaint in their entirety.

### III.    Plaintiffs' allegations fail to state a valid Title IX Claim against Orgeron

#### a.    Plaintiffs' Title IX Claims against Orgeron are Time-Barred

Since Title IX does not specify a limitations period[6], the appropriate statute of limitations for Title IX claims is the most analogous period established under state law.[7] The Fifth Circuit Court of Appeals has held that the appropriate statute of limitations for a Title IX claim is the state's personal injury limitations period.[8] In Louisiana, the applicable prescriptive period is one year from the day the injury or damage is sustained.[9] "A claim accrues when a plaintiff knows or has reason to know of the injury giving rise to the claim."[10]

---

[3] *Ferrer v. Chevron Corp.,* 484 F.3d 776, 680 (5th Cir. 2007, quoting *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005). See also, *Iqbal, supra,* 556 U.S. at 664, 129 S.Ct. at 1940.
[4] *Twombly, supra,* 550 U.S. at 555, citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).
[5] *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995).
[6] See, 20 U.S.C. § 1681, *et seq.*
[7] *Reed v. United Transp. Union,* 488 U.S. 319, 323, 109 S.Ct. 621, 624, 102 L.Ed.2d 665, 673 (1989).
[8] *Sewell v. Monroe City School Bd.,* 974 F.3d 577, 583 (5th Cir. 2020); *King-White v. Humble Indep. School Dist.,* 803 F.3d 754, 759 (5th Cir. 2015).
[9] La. Civ. Code art. 3492.
[10] *Sewell, supra; King-White, supra,* 803 F.3d at 762.

Plaintiff Ashlyn Robertson claims that her boyfriend disclosed that she had been raped by a football player to Orgeron, and that Orgeron never reported the rape nor offered her any accommodations to help her deal with its aftermath. (ACAC, ¶¶ 169-70.)  Putting aside the fact that these conversations and omissions are alleged to have occurred in the fall of 2016, prior to the time when Orgeron was Head Coach and had any authority or responsibility to take any such actions, Robertson's claims against Orgeron are time-barred. Robertson alleges that, as a result of the alleged rape and harassment, she engaged in behavior that led to her arrest in September 2017, two stints in rehabilitation centers in September 2017 and January 2018, her withdrawal from LSU in September 2017, and other alleged damages. (ACAC, ¶¶ 173-74.)   All of these alleged damages and injuries occurred more than one year before suit was filed in April 2021, and are therefore time-barred.

Plaintiff Jade Lewis' allegations against Orgeron consist solely of hearsay statements made by third parties, purportedly advising that they would advise Orgeron of information, or providing the contents of an alleged conversation between Orgeron and another Defendant to this proceeding.   (ACAC, ¶¶ 255-56.)   The allegations contain general references to allegedly insufficient actions taken by "LSU" and "some of the football coaches".   (ACAC, ¶¶ 269-70.) However, the one definitive action taken against her alleged offender was correctly attributed in the Amended Complaint to the "Orgeron Defendants," who appropriately "indefinitely suspended John Coe from the LSU football team" immediately upon learning of his arrest. (ACAC, ¶ 273.)  It is therefore undisputed that Orgeron took definitive action to discipline the offending player promptly upon receipt of evidence of his infraction.   In any event, these incidents are alleged to have occurred in June, 2018, three years prior to the filing of Plaintiffs' Amended Complaint in April 2021, and it is now too late for Plaintiff Lewis to state a valid claim therefor.

Plaintiff Calise Richardson makes no direct allegations against Orgeron, instead making allegations about "the LSU Athletics Department" (ACAC ¶ 132) or "the Athletic Department" (ACAC ¶¶ 143, 153). To the extent that said allegations are intended to apply against Orgeron, they are time-barred.

None of the other Plaintiffs have made any allegations against Defendant Orgeron.

**b.      Title IX does not authorize suits against school officials**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…".[11] The Title IX regulations related to employment further mandate that, "**recipient** shall make all employment decisions in any education program or activity operated by such **recipient** in a nondiscriminatory manner and shall not limit, segregate, or classify applicants or employees in any way which could adversely affect any applicant's or employee's employment opportunities or status because of sex."[12] "Recipient" is defined to mean "any State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any public or private agency, institution, or organization, or other entity, or any person, to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives such assistance, including any subunit, successor, assignee, or transferee thereof."[13] Title IX regulations make it clear that the prohibitions against discrimination on the basis of sex in employment apply exclusively to the recipients of Federal financial assistance.[14]

---

[11] 20 U.S.C. § 1681(a).
[12] 34 C.F.R. § 106.51 [emphasis supplied].
[13] 34 C.F.R. § 106.2.
[14] 34 C.F.R. § 106.11.

Title IX claims are not actionable against university employees because they do not meet the definition of "recipient" as defined by the Title IX regulations.[15]  An LSU employee is not "the State", nor is he an "agency, institution, or organization, or other entity."[16]  Congress specifically limited any right of action under Title IX to actions against a "recipient" as defined in the Title IX regulations. The Supreme Court held that, while Title IX reaches institutions and programs that receive Federal funds, it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.[17]  Since Orgeron is not a person "to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives such assistance, including any subunit, successor, assignee, or transferee thereof,"[18] he is not a "recipient" as defined in the Title IX regulations and is not subject to suit thereunder.

Accordingly, Plaintiffs have no right of action against Orgeron for their Title IX claims. Plaintiffs' claims against Orgeron under Title IX should be dismissed with prejudice.

<blockquote>

**c.    Plaintiffs fail to assert that Orgeron is responsible for any adverse employment action they allege resulted from the alleged retaliation for reporting Title IX complaints**
</blockquote>

Plaintiffs make numerous allegations against "all Defendants", "LSU Defendants", and "Defendants", regarding Count V, Retaliation by Withholding Protection Otherwise Conferred by Title IX, but no allegations against Orgeron specifically.  (ACAC, ¶¶ 409, 417-22.)

Plaintiffs characterize Orgeron as a "Responsible Employee" who was "responsible for reporting disclosures of sexual misconduct to the Title IX Coordinator.  (ACAC, ¶ 414.) Again, Orgeron did not become LSU Head Coach until 2017; prior to that date, he would have reported

---

[15] 34 C.F.R. § 106.2.

[16] *Id.*

[17] *Fitzgerald v. Barnstable School Comm.,* 555 U.S. 246, 257, 129 S.Ct. 788, 796, 172 L.Ed.2d 582 (2009); *Sewell v. Monroe City School Bd., supra; Hartley v. Parnell,* 193 F.3d 1263, 1270 (Ca. 11 1999).

[18] 34 C.F.R. § 106.2.

any misconduct of which he became aware to Coach Miles, but Plaintiffs make no distinction between his responsibilities prior to and after that date. Even after 2017, Plaintiffs make no specific allegations that Orgeron retaliated against any one of them for reporting Title IX complaints, or that he is responsible for any adverse employment action resulting therefrom. The Amended Complaint is wholly lacking in specific facts alleging that they reported a Title IX complaint of which Orgeron was aware, that he retaliated in any way against any one of them as a result of their filing of said complaint, or that they suffered any adverse employment action as a result of any action taken by him or for which he is responsible.

Plaintiffs have wholly failed to assert a valid claim against Orgeron for retaliation, or for any other adverse employment actions for which he is allegedly responsible.

In sum, Plaintiffs have wholly failed to state any valid Title IX claim against Orgeron, any such claims are time-barred, Title IX does not authorize suit against Orgeron as a school official, and they have failed to assert a valid claim against him for retaliation. Therefore, any and all Title IX claims asserted against him should be dismissed, with prejudice.

### IV.    Plaintiffs do not satisfy the LRA Pleading Requirements against Orgeron

Count XIX, Civil Violations of the Louisiana Racketeering Act, allege a "civil cause of action for conducting and/or participating in an enterprise through a pattern of racketeering" pursuant to the Louisiana Racketeering Act, La. R.S. 15:1351, *et seq.* (hereinafter the "LRA"). (ACAC, ¶ 554.)

Jurisprudence interpreting the LRA has consistently held that it is "patterned after" or "modeled after" the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").[19]

---

[19] *State v. Nine Sav. Accts.,* 553 So.2d 823, 825 (La. 1989); *State v. Sarrio,* 01-543, p. 22 (La. App. 5 Cir. 11/27/01), 803 So.2d 212, 226.

The Fifth Circuit has called the two statutes "analogous."[20]   Accordingly, Louisiana appellate courts have held that federal RICO jurisprudence should inform their interpretation of the LRA, and that they should look "to federal jurisprudence interpreting RICO for guidance in interpreting the Louisiana counterpart."[21]   Federal RICO jurisprudence is persuasive in Louisiana racketeering cases, because there is little jurisprudence interpreting the LRA, and the LRA is modeled on the federal RICO statute.[22]

The LRA is an inappropriate remedy to address Plaintiffs' claimed injuries, and appears to be asserted in an attempt to circumvent their time-barred Title IX claims.  However, Plaintiffs' LRA claims are also time-barred, and they have failed to plead a single element thereof to the level required for a cause of action thereunder.  They have failed to sufficiently plead any racketeering activity by Orgeron, much less a pattern thereof; have failed to plead sufficient facts that he knowingly received proceeds from a pattern of racketeering activity; have failed to allege sufficient facts to establish that he engaged or attempted to engage in any of the alleged predicate acts; have failed to sufficiently plead that Orgeron controls or participates in an enterprise through a pattern of racketeering activity; and, have failed to allege a specific agreement to commit the alleged predicate acts, thus failing to establish a conspiracy claim.  In short, Plaintiffs have entirely failed to properly plead any of the required elements of their LRA claims, and the Court should dismiss their LRA claims as to Orgeron.

### a.   Plaintiffs' LRA Claims are Time-Barred

As an initial matter, Plaintiffs' civil LRA claims are not timely.  For RICO claims, the Fifth Circuit uses the "injury discovery" rule, under which the limitations period runs from the

---

[20] *Id.*

[21] *State v. Elmore,* 2017-0223, p. 17 (La. App. 4 Cir. 10/18/17), 316 So.3d 888, 903.  See also, *State v. Ables,* 2002-386, pp. 4-5 (La. App. 5 Cir. 09/30/02), 829 So.2d 561, 563-4.

[22] *State v. Touchet,* 99-1416, p. 4 (La. App. 3 Cir. 04/05/00), 759 So.2d 194, 197.

8

date "when a plaintiff knew or should have known of his injury."[23]   The allegations of the Amended Complaint provide no assistance whatsoever in the determination of the claims being made, against which defendants, at what time, for which predicate acts, etc. (ACAC, ¶¶ 556-80.) One must, therefore, look to the Louisiana Racketeering Act Statement (hereinafter "LRAS") filed by Plaintiffs for more specific allegations regarding these claims.

The allegations of the LRAS as to Orgeron provide no dates for the "Alleged Misconduct and the Basis of Liability for Each."  Cross-referencing the allegations of the LRAS with the allegations of the referenced paragraphs of the Amended Complaint, there are some general dates provided for a few of the more specific allegations, but none for the more general (and arguably more serious) allegations, including "knowingly receiving funds generated by the Enterprise," "knowingly maintaining control of and an interest in the Enterprise," "making available things of value to be used for the purpose of running the Enterprise," and "knowingly associating with the Enterprise to conduct or participate in the affairs of the Enterprise." Consequently, it is impossible to know whether the majority of Plaintiffs' claims were brought timely.  Any that are found to have been brought untimely should be dismissed on that basis.  Even those that may have been brought timely, however, should be dismissed for failure to satisfactorily plead any of the required substantive elements as discussed in greater detail *infra*.

**b.     Plaintiffs fail to allege sufficient facts to support a violation of La. R.S. 15:1353(A) by Orgeron**

La. R.S. 15:1353(A) makes it unlawful for a person to knowingly receive any proceeds derived, directly or indirectly, from a pattern of racketeering activity to use or invest in the acquisition of any title to, or any right, interest or equity in immovable property or in the establishment or operation of an enterprise.

---

[23] *Boulmay v. Rampart 920, Inc.,* 124 F. Appx. 889, 891 (5th Cir. 2005), citing *Rotella v. Wood,* 528 U.S. 549, 553-4, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).

In support of Orgeron's alleged violation of La. R.S. 15:1353(A), Plaintiffs allege that he knowingly received funds generated by the "Enterprise" designed to protect and maximize the future revenue of the LSU athletics program by "violating the rights of Sexual Misconduct victims through a pattern of racketeering activity," and that he "used and invested these funds to operate and further establish the Enterprise through his control of LSU's football program." (LRAS, ¶ 2.C.v.)  This constitutes the full extent of the allegations made against Orgeron in support of this alleged violation.

These allegations fail to sufficiently plead any racketeering activity by Orgeron, much less a pattern thereof, or that he received any proceeds from a pattern of racketeering activity. The allegations do not state how Orgeron knew or should have known of any funds that would have been received by the program as a result of the "Enterprise", that any such funds were derived from a pattern of racketeering activity, or from the violation of any rights of victims of sexual misconduct.  Nor do they allege how Orgeron "used" or "invested" any such funds, assuming that they would have been received by the program (and that he knew that they were), in the operation of the "Enterprise" or the further establishment of same.  Simply acting as Head Coach for **part** of the time period of the allegations made in this lawsuit and lawfully managing the operations of the football program are insufficient to establish a violation of La. R.S. 15:1353(A).  **Not one fact** is alleged that he did otherwise. As quoted above, the LRAS simply restates legal conclusions and conclusory allegations in support of this allegation against Orgeron. Said statements fail to meet Plaintiffs' obligations, and this complaint should be dismissed.

     **c.**     **Plaintiffs fail to allege sufficient facts to support a violation of La. R.S. 15:1353(B) by Orgeron**

La. R.S. 15:1353(B) prohibits any person, through a pattern of racketeering activity, knowingly to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or immovable property.

Plaintiffs' allegations against Orgeron in support of his alleged violations of La. R.S. 15:1353(B) suffer from the same deficiencies as outlined above. (LRAS, ¶ 2.C.vi.)  While the allegations do contain references to some alleged "facts," which are expressly and specifically denied, they lend no support or proof of his alleged knowledge, through a pattern of racketeering activity, to acquire or maintain an interest in or control of the alleged "Enterprise."   The allegations made in support of this alleged violation, even if true, which is vehemently denied, would at best support allegations of workplace and student protection violations, not "patterns of racketeering activity" in support of an alleged criminal "Enterprise."

Plaintiffs' allegations are insufficient to allege a violation of La. R.S. 15:1353(B), and should be dismissed.

     **d.**     **Plaintiffs fail to allege sufficient facts to support a violation of La. R.S. 15:1353(C) by Orgeron**

La. R.S. 15:1353(C) prohibits any person employed by or associated with an enterprise to knowingly conduct or participate in the enterprise through a pattern of racketeering activity.

Plaintiffs' allegations in support of this alleged violation do nothing more than restate the language of the statute, adding "as described herein."  (LRAS, ¶ 2.C.vii.)   The total lack of any allegations of fact in support of this alleged violation is wholly insufficient to allege a violation of La. R.S. 15:1353(C). Since Plaintiffs fail to even make an effort to allege any facts in support of this allegation against Orgeron, this complaint should likewise be dismissed.

      **e.**      **Plaintiffs fail to allege sufficient facts to support a violation of La. R.S. 15:1353(D) by Orgeron**

La. R.S. 15:1353(D) makes it unlawful for any person to conspire or attempt to violate any of the provisions of Subsections A, B, or C of Section 1353.

Plaintiffs allege that Orgeron conspired with several named defendants and "various non-defendants" to "conduct or participate in the affairs of the Enterprise through a pattern of racketeering activity by agreeing with one or more co-conspirators to pursue the common criminal objective of operating the Enterprise designed to protect and maximize the future revenue" of the LSU athletics programs by "violating the rights of Sexual Misconduct victims through a pattern of racketeering activity." (LRAS, ¶ 2.C.viii.) Once again, there are no alleged facts in support of these bald summary conclusive allegations, which are specifically denied, and which do nothing more than restate the provisions of the statute itself.

Federal RICO jurisprudence provides that a civil conspiracy claim "requires an actual agreement between conspirators—they must specifically intend the illegal conduct."[24] "[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."[25] Plaintiffs have wholly failed to allege any facts, much less specific facts, in support of their alleged agreement between the alleged conspirators to commit the predicate acts alleged in the Amended Complaint. Plaintiffs' failure to provide facts in support of their allegations of a conspiracy to commit alleged illegal activity wholly fails to establish their conspiracy claims, requiring the dismissal of their claims for violations of La. R.S. 15:1353(D).

---

[24] *Snow Ingredients, Inc. v. SnoWizard, Inc.,* 833 F.3d 512, 526 (5th Cir. 2016), citing *Crowe v. Henry,* 43 F.3d 198, 206 (5th Cir. 1995), and *Abraham v. Singh,* 480 F.3d 351, 357 (5th Cir. 2007).
[25] *Tel-Phonic Services, Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1140 (5th Cir. 1992), quoting *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir. 1990). See also, *Glessner v. Kenny,* 952 F.2d 702, 714 (3d Cir. 1991); *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 47 (1st Cir. 1991).

In sum, Plaintiffs' alleged claims under the LRA are time-barred, they have failed to sufficiently plead that Orgeron engaged in a pattern of racketeering activity, that he committed any of the alleged predicate acts, that he controls or participates in an enterprise through a pattern of racketeering activity, or that he had a specific agreement or conspiracy with other persons to commit the alleged predicate acts. Accordingly, Plaintiffs have wholly failed to allege any facts in support of any of their claims of alleged violations of the Louisiana Racketeering Act as to Orgeron, and all such claims made against him should be dismissed.

### f.    Plaintiffs fail to adequately plead predicate acts, or "racketeering activity," by Orgeron

In order to state a valid cause of action under the Louisiana Racketeering Act, Plaintiffs must allege that the person engaged in "racketeering activity." "Racketeering activity" is defined therein as "committing, attempting to commit, conspiring to commit, or soliciting, coercing or intimidating another person to commit" a list of certain, specific listed crimes.[26]  Said crimes are typically referenced as the "predicate acts" for an LRA claim.

Plaintiffs claim that Orgeron engaged in three (3) predicate acts: Intimidating Witnesses, Injuring Public Records and Money Laundering.  (LRAS, ¶¶ 5.B.ii, iii and v.)  However, not one of the alleged predicate acts is supported by the facts alleged by Plaintiffs, and all are specifically denied.

### 1.    Intimidating Witnesses

La. R.S. 14:129.1, Intimidating, impeding or injuring witnesses, requires proof that a person intentionally used "threat of force or force" against a witness or member of his immediate family to intimidate or impede their testimony, reporting of criminal conduct, or appearance at a judicial hearing, or an intentional attempt to do so "by threat of force or force," or an intentional

---

[26] La. R.S. 15:1352.

injuring or attempt to injure a witness or member of his immediate family for the same purpose. There are no allegations in the ACAC or the LRAS that Orgeron threatened to use or did use threats of force or force against a witness or member of her family, or that he injured or attempted to injure any witness or family member.

Rather, the allegations against Orgeron regarding the alleged crime of Intimidating Witnesses involve an alleged conversation with Plaintiff Robertson's boyfriend, which Orgeron has consistently denied, and thus does not even allege any attempted intimidation by Orgeron of Plaintiff. There is no allegation that he ever spoke to her or her family, much less actually used force against her, threatened the use of force against her, or attempted to do so. Further, since Orgeron insists the alleged conversation never occurred, he had no knowledge of the alleged rape or repercussions thereof, and therefore no obligation to report same as alleged in the Amended Complaint. As to Ms. Scott, Orgeron has consistently and repeatedly denied that he ever spoke with her, and therefore could not have attempted to intimidate her. Plaintiffs do not contend that there was witness tampering in connection with any testimony before any official proceedings, reporting of criminal conduct, or an appearance at a judicial hearing, another required element for this alleged crime.  These are the only two factual allegations made against Orgeron in support of the allegation of Intimidating Witnesses. (LRAS, ¶ 5.B.ii.)

Plaintiffs have wholly failed to allege sufficient facts to support a claim that Orgeron has committed the predicate act of Intimidating Witnesses, and this claim against him should be dismissed.

### 2.    Injuring Public Records

La. R.S. 14:132, Injuring Public Records, prohibits the "intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing"

either filed in a public office or with a public officer, or defined as a public record and required to be preserved by the Public Records Law, La. R.S. 44:1, *et seq.*

In support of the allegation of Injuring Public Records, Plaintiffs allege that Orgeron and "O" The Rosy Finch Boyz, LLC, collectively and without distinguishing between them, "at a minimum, concealed from public records John Doe's rape of Plaintiff Robertson, and John Doe's Retaliation against Plaintiff Robertson." (LRAS, ¶ 5.B.iii.) As mentioned above, Orgeron has consistently denied that the alleged conversation with Plaintiff Robertson's boyfriend occurred, and therefore had no knowledge of the alleged rape or any other actions alleged to have been taken by the football player in question at the time of the incidents alleged. At the very least, Orgeron's lack of knowledge of the alleged rape, even if it occurred, eliminates the required element of intent from this alleged crime. Secondly, Plaintiffs allege that Orgeron failed to report the alleged rape. This allegation is insufficient to fulfill the essential elements of the crime of Injuring Public Records. La. R.S. 14:132 requires that a public document or record **exists,** and that the alleged perpetrator intentionally removes, mutilates, destroys, alters, falsifies or conceals it. Plaintiffs have made no such allegation. Rather, their only allegation in support of this alleged crime is that Orgeron failed to **file** a report of the alleged rape (about which he claims to have had no knowledge). Failure to file a public record does not constitute "intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing" as required by La. R.S. 14:132.

Plaintiffs continue to pile alleged violation upon violation, alleged crime upon crime, alleged predicate act upon predicate act, making the same unfounded conclusory allegations with no factual basis. This is plainly insufficient to meet the required pleading standard for stating a valid LRA claim.

Plaintiffs have wholly failed to state any facts in support of their claim that Orgeron committed any of the elements of the crime of Injuring Public Records, and this claim against Orgeron should also be dismissed.

### 3.    Money Laundering

La. R.S. 14:230, Money Laundering, prohibits a person from being involved in any financial transactions "involving proceeds known to be derived from criminal activity."

Regarding the claim of Money Laundering, Plaintiffs allege that Orgeron and "O" The Rosy Finch Boyz, LLC, again collectively and without distinguishing between them, were aware that Orgeron's compensation was derived from the "Enterprise" because it was connected with the performance of the team under his control and some compensation was provided by TAF. (LRAS, ¶ 5.B.iv.)  These allegations are perhaps the most puzzling of all.  Of course Coach Orgeron's incentive compensation was tied to the performance of the football team; such provisions are standard in coaching contracts for competitive football programs.  The insinuation that Orgeron was "aware" that his compensation was in any way tainted by a "racketeering enterprise" because it was "directly connected with the performance" of the football team is patently absurd.  Orgeron did not engage in any criminal activity or derive any proceeds from criminal activity, and Plaintiffs have not any alleged any facts or financial transactions that indicate otherwise. There are no allegations that Orgeron "knew" that any funds provided to the football program, the Athletics Department, or paid as part of his contractual compensation were "derived from criminal activity", and the lack of same is fatal to Plaintiffs' claim that Orgeron violated this predicate act.

Plaintiffs make no other allegations of Money Laundering against Orgeron, and this claim should clearly be dismissed against him for failure to allege sufficient facts in support thereof.

In sum, Plaintiffs have not alleged sufficient facts to support their claims that Orgeron violated any of the three predicate acts alleged against him, and thus they have failed to allege that he engaged in any racketeering activity. There are no allegations that he intentionally used the threat of force or force to intimidate any witness, that he removed or tampered with any public document, or that he was involved in financial transactions involving funds known to be derived from criminal activity. Since Plaintiffs have wholly failed to allege sufficient facts in support of any of the three predicate acts alleged against Orgeron, their LRA claims against him should be dismissed for failure to meet this required element.

g.   **Plaintiffs lack standing to assert an LRA claim due to the absence of an injury to their "business or property" and lack of proximate causation of their alleged injuries**

One of the requirements for a valid RICO cause of action pursuant to 18 U.S.C. § 1964(c) is an "injury to business or property" by the conduct constituting the violation. "A plaintiff only has standing to bring such a claim if he has been injured in his business or property by the conduct constituting the violation."[27] Under well-settled RICO jurisprudence, mere financial losses, such as Plaintiffs' allegations regarding their alleged personal injuries, medical expenses, lost income or benefits, and/or lost employment opportunities are not sufficient to confer standing to bring a RICO claim.[28] "Without a harm to a specific business or property interest—a categorial inquiry typically determined by reference to state law—there is  no injury to business

---

[27] *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985).
[28] *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931, 937 (1979); *Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 422 (5th Cir. 2001); *Gucwa v. Lawley,* 731 F. Appx. 408, 412 (6th Cir. 2018); *Evans v. City of Chicago,* 434 F.3d 916, 925, 928, 930 (7th Cir. 2006); *Bradley v. Phillips Petroleum Co.,* 527 F.Supp.2d 625, 646-47 (S.D. Tex. 2007); *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.,* 431 F.3d 353, 364 (9th Cir. 2005).

or property within the meaning of RICO."[29]  This standard is likewise applicable to claims brought under the LRA.[30]

Further, Plaintiffs must establish a direct causal relationship between the injuries they have asserted and the injurious conduct they have alleged. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."[31]  In other words, in order to state a claim under civil RICO, Plaintiffs must show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well."[32] Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged."[33] "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."[34]

Plaintiffs' allegations fall far short of this requirement. The relationship between Plaintiffs' alleged injuries and the purported "racketeering activities" asserted herein are far too attenuated to support a finding of proximate causation sufficient to confer standing in this matter. Plaintiffs have wholly failed to allege sufficient facts demonstrating that the alleged predicate offenses caused their alleged injuries. Not only have Plaintiffs wholly failed to plead sufficient facts to establish that Orgeron committed acts constituting intimidation of witnesses, injuring public records or money laundering, but they have also totally failed to allege how those alleged acts by Orgeron injured their "business or property." The required proximate causation is absent,

---

[29] *Diaz v. Gates,* 420 F.3d 897, 900 (9th Cir. 2005). See also, *Price v. Pinnacle Brands, Inc.,* 138 F.3d 602, 607 (5th Cir. 1998).

[30] *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am. Inc.,* 2:11-00856, 2013 WL 4516007, at *3 (W.D. La. Aug. 2013).

[31] *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461, 126 S.Ct. 1991, 1998, 164 L.Ed.2d 720, 731 (2006); *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 582 (1992). See also, *Waste Mgmt. of Louisiana, LLC v. River Birch, Inc.,* 920 F.3d 958, 965 (5th Cir.), cert. denied, 140 S.Ct. 628, 205 L.Ed.2d 390 (2019); *Rezner v. Bayerische Hypo-Und Vereinsbank AG,* 630 F.3d 866, 873 (9th Cir. 2010); *Jackson v. NAACP,* 546 F. Appx. 438, 442 (5th Cir. 2013).

[32] *Hemi Group, LLC v. City of New York, N.Y.,* 559 U.S. 1, 9, 130 S.Ct. 983, 987, 175 L.Ed.2d 943 (2010), citing *Holmes, supra.*

[33] *Id.*

[34] *Id.,* quoting *Holmes, supra,* 559 U.S. at 371, 274. See also, *Anza, supra,* 547 U.S. at 461.

and Plaintiffs therefore have no standing to assert LRA claims against Orgeron. Even to the extent that Plaintiffs may have pled sufficient proximate causation of their injuries, which is denied, they have only alleged personal injuries, which are insufficient to constitute injuries to their "business or property" as required for a valid cause of action under the LRA.

Plaintiffs' LRA claims against Orgeron should be dismissed for lack of standing to bring a claim against him, based on their failure to plead a direct injury, a failure to plead proximate causation between the alleged predicate acts and their alleged injuries, and a failure to plead injuries to their "business or property", all as required for standing to assert a valid cause of action.

## V.    Plaintiffs' other claims fail to allege acts by Orgeron with sufficient specificity to constitute a basis for a cause of action against him

In support of Count VI, First Amendment Retaliation, Plaintiffs make allegations against "all defendants", "LSU Defendants", "Individual Defendants", and "Defendants", but make no specific allegations against Orgeron.  (ACAC, ¶¶ 424, 426-32.) Such allegations are insufficient to state a valid cause of action against Orgeron for First Amendment Retaliation, and Plaintiffs' claims against him should be dismissed.

Similarly regarding Count VII, Denial of Equal Protection, Plaintiffs allege that "all Defendants" discriminated against them on the basis of sex, thus denying them equal protection under the law.   Again, Plaintiffs make allegations against "LSU Defendants", "Individual Defendants", and "Defendants", without any specific allegations against Orgeron.  (ACAC, ¶¶ 434-40.) Such conclusory allegations without specific facts regarding any alleged acts by Orgeron that are alleged to have denied any Plaintiff Equal Protection under the law are simply insufficient to state a valid cause of action against him, and Count VII should likewise be dismissed as to Orgeron.

Count VIII, Denial of Procedural Due Process (ACAC, ¶¶ 442, 444-45, 448-50), Count IX, Conspiracy to Interfere with Civil Rights (ACAC, ¶¶ 452-56), Count XII, Louisiana Civil Code Article 2315 (ACAC, ¶¶ 480-81, 483-88), Count XIII, Negligent Supervision (ACAC, ¶¶ 490-93, 495-96), Count XIV, Negligent Infliction of Emotional Distress (ACAC, ¶¶ 498-503), Count XV, Intentional Infliction of Emotional Distress (ACAC, ¶¶ 505-09), and Count XVI, Bad Faith Breach of Contract (ACAC, ¶¶ 511, 522-28), suffer from the same lack of specificity as to allegations against Defendant Orgeron. Without belaboring the point as to each of these counts, they each lack specific allegations of fact as to Orgeron, and fail to state a cause of action as to him. Counts VIII, Denial of Procedural Due Process, Count IX, Conspiracy to Interfere with Civil Rights, Count XII,, Louisiana Civil Code Article 2315, Count XIII, Negligent Supervision, Count XIV, Negligent Infliction of Emotional Distress, Count XV, Intentional Infliction of Emotional Distress, and Count XVI, Bad Faith Breach of Contract, should all be dismissed against him for failure to state a cause of action for which relief can be granted.

As to Count XVII, Civil Conspiracy, Plaintiffs make allegations against "all Defendants", "Defendants", and only make allegations against Orgeron in the context of "the Orgeron Defendants", collectively. (ACAC, ¶¶ 530-34.) Even in this context, Plaintiffs fail to make specific allegations against Defendant Orgeron, individually. Further, the allegations made in support of this alleged violation, even if true, which is vehemently denied, would at best support allegations of workplace and student protection violations, not Civil Conspiracy. Plaintiffs' allegations are insufficient to allege a violations of Civil Conspiracy, which requires specific allegations of facts showing an agreement between the conspirators to engage in the alleged illegal activity. No such facts have been alleged, and this allegation should be dismissed against Orgeron.

Count XX, Enrichment Without Cause, is pled in the alternative against "all Defendants" and "Defendants". (ACAC, ¶¶ 582-86.)  Again, Plaintiffs make no allegations against Orgeron specifically, alleging only that Defendants generally were enriched by the success of the LSU Football Program. There is nothing criminal, offensive or wrong about the fact that the coach, the football program, the Athletics Department, and the entire school benefited financially from the successes of the football team.  These allegations are, in fact, a compliment to Orgeron, and are wholly insufficient to state a cause of action against him. The only allegation that these funds were somehow improperly obtained is that they resulted from the collective Defendants' "scheme" to silence the Plaintiffs. The causal connection between the alleged acts of some of the Defendants in this lawsuit and the proceeds of the football program is so tenuous and imaginative as to render them entirely unrelated or, at best, completely speculative. Such allegations are insufficient to state a valid cause of action against Orgeron, and this claim against him should be dismissed.

In sum, all of the remaining claims made against Orgeron, either individually or in the context of the "Orgeron Defendants," "the Defendants," the "LSU Defendants," or "all Defendants," should likewise be dismissed for failure to state a cause of action against him.

## VI.    Conclusion

Plaintiffs have thrown a lot of spaghetti against the wall; fortunately, none of it has stuck to Edward J. Orgeron, Jr.

Plaintiffs have alleged sex-based discrimination occurring between 2013 and 2021. Prior to 2017, Orgeron was an assistant coach without the responsibility to report any such information of which he may have become aware to any person other than the Head Coach, "Les" Miles. Accordingly, any allegations made in this proceeding prior to 2017 should be dismissed as to Orgeron.

21

Each of the Plaintiff's claims are individual and unique, each unto themselves, with individual facts and circumstances, unique perspectives and outcomes, and are unrelated to the facts or claims of the other Plaintiffs, or of those in the purported class. Defendants are filing a motion to strike the class allegations to address these deficiencies in greater detail.

Plaintiffs fail to plead enough facts to state a claim to relief that is plausible on its face, as required to survive a Rule 12(b)(6) Motion. Mere conclusory allegations, unwarranted factual inferences or legal conclusions are insufficient to meet this burden. If the complaint fails to allege a required element necessary to obtain the requested relief, the complaint should be dismissed. That is precisely the circumstance with which this Court is presented.

Plaintiffs' Title IX claims against Orgeron are time-barred. There are few, very few, Title IX allegations made against Orgeron, and the ones that are made are (1) denied and (2) lacking in specific factual allegations. Regardless, they all are alleged to have occurred in 2016 to 2018, and suit was not filed until April 2021. Since suit must be filed within one year from the date the plaintiff knows or has reason to know of the injury giving rise to the claim, each of these claims is time-barred.

Further, Title IX does not authorize suits against school officials such as Orgeron. Title IX prohibits discrimination on the basis of sex in employment by recipients of Federal financial assistance, which include the State and its political subdivisions, instrumentalities, political subdivisions, public and private agencies, institutions, organizations or other entities, or a person to whom the Federal financial assistance is directly extended. Since Orgeron is not a "recipient" since he does not directly receive Federal financial assistance, Title IX does not authorize suits against him.

Plaintiffs fail to assert that they reported a Title IX complaint of which Orgeron was aware, that he retaliated in any way against any one of them as a result of their filing of the

22

complaint, or that they suffered any adverse employment action as a result of any action taken by him or for which he is responsible. Thus, they have wholly failed to state a cause of action against him for retaliation under Title IX.

Plaintiffs wholly failed to satisfy the pleading requirements to state a valid claim under the Louisiana Racketeering Act. As an initial matter, their LRA claims are time-barred. Further, whether one looks to the original Complaint and the Amended Complaint, or supplements those allegations with the additional information provided in the Louisiana Racketeering Act Statement filed by Plaintiffs, there are simply insufficient facts alleged to support any of the claims made by Plaintiffs to establish the required elements of an LRA claim. There are no specific facts alleged to support the claim that Orgeron: engaged in any racketeering activity, much less a pattern thereof; knowingly received any proceeds derived from a pattern of racketeering activity to use or invest or in the establishment or operation of an enterprise; knowingly acquired or maintained an interest in or control of an enterprise through a pattern of racketeering activity; knowingly conducted or participated in an enterprise through a pattern of racketeering activity; or, conspired or attempted to do any of the above. Simply saying that a person "engaged in an enterprise" is insufficient to allege a cause of action under the LRA; one must allege sufficient facts to support the claim. Plaintiffs have failed to do so.

Plaintiffs failed to adequately plead the predicate acts, or "racketeering activity," alleged to have been committed by Orgeron. Plaintiffs alleged that Orgeron engaged in three specific crimes, or predicate acts: Intimidating Witnesses, Injuring Public Records and Money Laundering. However, Plaintiffs failed to allege the required elements of any of these crimes. Plaintiffs did not allege any facts in support of the required element that Orgeron used threat of force or force against a witness to intimidate or impede their testimony, reporting of criminal conduct, or appearance at a judicial hearing, or intentional attempt to do so by threat of force or

force. Plaintiffs did not allege that Orgeron removed or tampered with any public document or otherwise injured any public record. And, finally, Plaintiffs did not allege that Orgeron was involved in any financial transactions involving proceeds known to be derived from criminal activity. In the absence of any facts in support of the alleged predicate acts, Plaintiffs have failed to allege any racketeering activity on the part of Orgeron, a required element of an LRA claim.

Further, Plaintiffs lack standing to assert an LRA claim because they have not suffered an injury to their "business or property." The personal injuries, medical expenses, lost income or benefits, and other personal damages alleged are not sufficient to confer standing to assert these claims.

In addition, in order to state a claim under civil RICO, Plaintiffs must establish that the predicate offense was the proximate cause of their injuries. Plaintiffs have wholly failed to establish that their claims against Orgeron for intimidating witnesses, injuring public records, and money laundering led directly to their alleged damages. Further, they cannot prove how these injuries constitute damage to their "business or property." Therefore, Plaintiffs lack standing to bring these claims, and they should be dismissed.

All of the other claims that may have been made against Orgeron in the context of the "Orgeron Defendants", "LSU Defendants", "the Defendants", or "all Defendants", should likewise be dismissed due to the total lack of specific allegations sufficient to state a claim for which relief can be granted.

WHEREFORE, after due consideration is had, Edward J. Orgeron, Jr. respectfully requests that, after due proceedings, his Motion to Dismiss Amended Class Action Complaint and Jury Demand be granted.

Respectfully submitted,

JEFF LANDRY
ATTORNEY GENERAL

/s/ Stephanie B. Laborde
Stephanie B. Laborde (#20908)
Benjamin M. Chapman (#28325)
Special Assistant Attorneys General
**Milling Benson Woodward, LLP**
6421 Perkins Road, Building B, Suite B
Baton Rouge, Louisiana 70802
Telephone: (225) 291-7300
Facsimile: (225) 291-4524
slaborde@millinglaw.com
bchapman@millinglaw.com

*Attorneys for Edward J. Orgeron, Jr.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing has been electronically filed with the United States District Court via the Court's CM/ECF system on November 8, 2021, and Notice of Electronic Filing sent to all interested parties by operation of same.

/s/ Stephanie B. Laborde

25