# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT COURT OF LOUISIANA

| | | |
|---|---|---|
| **ABBY OWENS, ET AL** | * | **CIVIL ACTION NO:** |
| | * | **3:21-CV-00242-WBV-SDJ** |
| | * | |
| **VERSUS** | * | **JUDGE: THE HONORABLE WENDY** |
| | * | **VITTER** |
| **LOUISIANA STATE** | * | |
| **UNIVERSITY, ET AL** | * | **MAGISTRATE: THE HONORABLE** |
| | * | **SCOTT D. JOHNSON** |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ALL CLAIMS AGAINST DEFENDANTS, JULIA SELL AND MICHAEL SELL

**MAY IT PLEASE THE COURT:**

Julia Sell and Michael Sell (collectively, the "Sells"), co-coaches of the Louisiana State University ("LSU") Women's Tennis Team, and named Defendants herein, respectfully submit the instant Memorandum in Support of their Motion to Dismiss All Claims asserted against them. Plaintiffs' claims against the Sells are directly contradicted by statements and findings contained in exhibits to their own Amended Complaint, and their claims are legally without merit for the reasons cited herein.

## EXECUTIVE SUMMARY

The Sells assert that the Plaintiffs' claims should be dismissed for the following reasons:

1. **Failure to State a Claim by Seven of the Ten Named Plaintiffs** - Seven of the ten named Plaintiffs fail to assert any factual claims whatsoever against the Sells. Only three Plaintiffs, Abby Owens ("Owens"), Jade Lewis ("Lewis"), and Kennan Johnson ("Johnson"), make any factual allegations against the Sells. Julia and Michael Sell respectfully assert that all legal claims that

may have been asserted by the remaining seven Plaintiffs should be dismissed for failure to state any factual allegations whatsoever to support a facially plausible claim against them.

2.  **Lack of Standing -**   Owens, Lewis, and Johnson have all left LSU and graduated from college.  These Plaintiffs, therefore, have no possibility of damages caused by any future actions and lack standing to pursue injunctive relief intended to prospectively affect any of the Sells' alleged actions in coaching the LSU Women's Tennis Team.

3.  **Improper Filing of a Title IX Claim Against Individuals** – Plaintiffs' Title IX claims against the Sells are legally without merit as no Title IX claims may be asserted against individuals in any capacity.

4.  **No Cause of Action for First Amendment Retaliation** – Plaintiffs fail to demonstrate that any constitutionally protected speech resulted in adverse action against them. Owens has no basis to assert a claim for First Amendment Retaliation because she never reported her alleged assault to Julia or Michael Sell and had already left LSU and the Women's Tennis Team when the report was made by her father and, therefore, could not suffer any retaliation.  The sole claim of retaliation by Lewis, that Julia Sell told her former teammates to "stay away" from her, is conclusively proven to be false by Exhibit A to the Amended Complaint, the Husch Blackwell Report, which quoted Julia Sell telling the former teammates "Nobody is telling anybody don't hang out with Jade."  Johnson, who never made any Title IX or other report, asserts no retaliation claims at all.

5.  **Plaintiffs Cannot Meet Their Burden of Negating the Sells' Qualified Immunity on Civil Rights Claims** – Plaintiffs do not and cannot demonstrate that the Sells were on notice that their alleged actions violated a clearly established right, or that the Sells treated them differently from similarly situated individuals.

6.      **Plaintiffs Fail to Allege Who or How the Sells are Liable for Negligent Supervision** – The Sells are not specifically alleged to have supervision over any individual relevant to this case or how any alleged supervision was a cause in fact of Plaintiffs' alleged damages.

7.      **Plaintiffs Fail to Allege Special Circumstances to Permit Claims of Negligent Infliction of Emotional Distress in the Absence of Physical Injury** – Plaintiffs do not allege that they suffered any physical injury and fail to demonstrate why they would be entitled to emotional distress damages absent special circumstances as required by Louisiana law.

8.      **Plaintiffs Cannot Meet the High Bar to Maintain Claims of Intentional Infliction of Emotional Distress** – Plaintiffs fail to allege and cannot demonstrate that the Sells' alleged conduct was extreme and outrageous and that the Sells desired or were substantially certain that the Plaintiffs would suffer severe emotional distress due to the Sells' alleged actions, as required to maintain this cause of action pursuant to Louisiana law.

9.      **Plaintiffs Lack Standing and Have Failed to Make Proper, Specific Allegations to Maintain a Claim Pursuant to the Louisiana Racketeering Act** – Plaintiffs lack standing to assert these claims because they have not suffered an actionable injury or loss and have failed to provide specific allegations as required by this Court demonstrating how and when the Sells violated any predicate acts required to maintain this claim.

10.     **Untimeliness -** Most of Plaintiffs' claims are untimely on the face of their Amended Complaint.  Plaintiffs cannot meet their burden to demonstrate that they can avoid the time limitations based on the doctrine of *contra non valentem* and barely attempt to do so. Plaintiffs' argument that they did not know they could pursue their claims despite the fact that they made other reports and claims and investigated their case more than one year before filing the instant lawsuit demonstrates that they have no basis to avoid the set prescriptive periods for their claims.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

On April 26, 2021, Plaintiffs filed this Class Action Complaint and Jury Demand.  On June 25, 2021, Plaintiffs filed their Amended Class Action Complaint and Jury Demand ("Amended Complaint"), which is in excess of 589 paragraphs and 145 pages, the vast majority of which contains no explicit allegations against the Sells.[1]  The basis of the lawsuit is the "LSU Title IX and sexual misconduct response program", which Plaintiffs allege has been in "a state of complete neglect and dysfunction at all dates relevant to this complaint."[2]  If this Court accepts Plaintiffs' allegation as true for purposes of the instant motion, then Plaintiffs' own claims completely exonerate the Sells, as all of the Sells' alleged actions were based on direct instructions and policies set by their employer, LSU.

The Amended Complaint attaches and explicitly relies in large part on the findings contained in the "Louisiana State University Title IX Review" released by Husch Blackwell on March 3, 2021 (hereinafter, the "Husch Blackwell Report").[3]  The Husch Blackwell Report also exonerates the Sells by conclusively establishing that the Sells timely reported all claims of sexual assault and violence by Owens and Lewis without delay upon learning of same.[4]

As co-coaches of the LSU Women's Tennis Team, Julia and Michael Sell only interacted with three of the Plaintiffs, all of whom were members of that team.  The Sells had no oversight of the LSU Title IX Program, and Plaintiffs do not and cannot provide any factual assertions that the Sells had any duty pursuant to LSU's Policy related to that Program beyond the possible duty to timely report to Assistant Athletics Director and Associate Athletics Director for Student Services, Miriam Segar.

---

[1] See Amended Complaint, Record Document No. 22.
[2] *Id.*, ¶ 1.
[3] Said Report is attached as Exhibit A to the Amended Complaint.
[4] See Exhibit A to Amended Complaint, Husch Blackwell Report, pp. 71-73, 90.

Both Julia Sell and Michael Sell were named as Defendants in their individual and official capacities in an attempt by Plaintiffs to avoid legal restrictions on the claims that may be asserted. Other Defendants named in the Amended Complaint have markedly different roles from the Sells, including LSU administrators, LSU's Board of Supervisors, a private fundraising association and Louisiana State University itself. As made evident by Plaintiffs' own allegations in their Amended Complaint, the Sells had absolutely no contact whatsoever with the non-tennis Plaintiffs and had limited or no contact with many of the other named Defendants.

A.    **Claims Asserted in the Amended Complaint Relevant to Julia and Michael Sell**

1.    **Seven of the Ten Plaintiffs Assert no Factual Allegations Against the Sells.**

Importantly, only three of the ten named Plaintiffs make any mention of the Sells. The Amended Complaint is devoid of even a single allegation by the other seven Plaintiffs against the Sells. These seven Plaintiffs: (1) Calise Richardson; (2) Ashlyn Robertson; (3) Samantha Brennan; (4) Elisabeth Andries; (5) Jane Doe; (6) Corinn Hovis; and (7) Sarah Beth Kitch, have no relation to the Sells and do not make a single factual accusation about the Sells in the Amended Complaint.

Only the remaining three Plaintiffs, Jade Lewis,[5] Abby Owens,[6] and Kennnan Johnson,[7] assert any factual allegations or specific claims against the Sells. However, as discussed in detail below, the factual allegations and conclusory claims made by Lewis, Owens, and Johnson in the Amended Complaint with attached Exhibits, combined with the applicable law, are wholly and legally insufficient to state a cognizable cause of action against the Sells as a matter of law.

2.    **Claims Asserted by Jade Lewis Against the Sells**

Jade Lewis alleges that she was recruited to LSU to play tennis in 2017 and played one semester on the LSU Women's Tennis Team. It is alleged that in 2017, Lewis began a physically

---

[5] See Amended Complaint, ¶¶ 244 – 282, for those specific factual allegations being made by Lewis.
[6] See Amended Complaint, ¶¶ 192-208, for those specific factual allegations being made by Owens.
[7] See Amended Complaint, ¶¶ 283 – 301, for those specific factual allegations being made by Johnson.

abusive relationship with LSU football player, John Coe. This abusive relationship lasted from 2017 until apparently September 2018 – over two and a half years before filing her lawsuit, when John Coe was arrested a second time for physically assaulting Lewis and continuing to be in her presence in violation of court orders.[8]

Lewis makes various allegations that she reported this abuse to her teammates and athletic trainers, Donavon White ("White") and/or Sean Carter ("Carter"). In addition, Lewis claims that for the first time on or around April 25, 2018, she reported the abuse to Defendant, Miriam Segar, the Assistant Athletics Director and Associate Athletics Director for Student Services, White, and Athletic Trainer, Micki Collins.[9]  Notably, Lewis does not claim that she reported this abuse to Julia or Michael Sell.

Lewis alleges that Segar, who was set up by LSU as the point person to receive all Title IX reports related to the Athletic Department, reported the abuse to Title IX office, where the case was assigned to Investigator Scott. Numerous further allegations are made regarding the handling of the Title IX investigation by LSU, including allegations regarding Segar, Sanders, and Scott and further abuse suffered by Lewis at the hands of Coe.[10]

However, as to the Sells, the only specific claims made by Lewis are that Lewis' father allegedly reported Coe's assaults to Michael Sell in June and July of 2017, that unnamed members of the LSU Women's Tennis Team reported these assaults to Julia Sell from May 2017 into 2018, and the Sells did not relay these reports to LSU's administration or provide any resources to Lewis. Lewis does not provide any further details regarding these calls, the dates of the reports, what provoked them, or the substance of these reports. Lewis also claims that the Sells instructed Lewis'

---

[8] See Amended Complaint, ¶¶ 244-245, 275; John Coe has been identified in the Husch Blackwell Report as Drake Davis, who is not a defendant in this litigation.
[9] See Amended Complaint, ¶¶ 247, 249, 254.
[10] See Amended Complaint, ¶¶ 255 – 274.

teammates to "stay away from" her without any evidence that this actually occurred.[11]

These are the <u>only</u> specific factual allegations made by Lewis against the Sells and <u>the attached exhibit to Plaintiffs' own Amended Complaint demonstrates that these factual allegations are false.</u>  As discussed further below, the Husch Blackwell Report, attached by Plaintiffs to the Amended Complaint as Exhibit A and cited extensively by the Plaintiffs for the truth of the matters asserted therein, investigated Lewis' allegations and demonstrated that for the most part, Lewis' claims regarding the Sells are false.

Regarding the claim that David Lewis told Michael Sell about the abuse in June and July of 2017, Husch Blackwell demonstrated that Mr. Lewis had provided "inconsistent" statements to Husch Blackwell and the police, that Mr. Lewis told the police he was not aware of the abuse until late July 2017, and there was no reason why Mr. Lewis would have told only Michael Sell, but not the police or anyone else, when Lewis was not even enrolled in LSU or on the Tennis Team at that time.[12]  Husch Blackwell also noted a total lack of motive for the Sells to withhold this information and finally concluded that the Sells promptly reported all incidents to LSU for which there is evidence that they were told of the incidents.

The Husch Blackwell Report also demonstrated that Lewis was not telling the truth regarding her teammates reporting the abuse to the Sells:

> …no witness interviewed [by Husch Blackwell for the Report], ***including the three teammates identified by Lewis***, have stated directly they told any LSU employee, including Julia Sell about the May 2017 abuse.  One of the students identified by Lewis was not enrolled at LSU until January 2018, and another did not join the team until August 2017….[T]he certain teammate to become aware of the May 2017 abuse after Davis texted her about the incident, but the teammate made clear in an interview that ***she did not relay this information to Julia Sell.***

*    *    *

---

[11] See Amended Complaint, ¶¶ 247, 251, 277.
[12] See Exhibit A to Amended Complaint, Husch Blackwell Report, pp. 71-73.

It is undisputed… that several teammates… did report the April and June 28 incidents to [Julia] Sell. ***It is similarly undisputed that [Julia] Sell appropriately reported the incidents to Miriam Segar, as instructed by Athletics policy at the time, and that those reports made it to the Title IX Office.***[13]

Finally, the claim that Julia Sell told Lewis' former teammates to stay away from Lewis was described by the Husch Blackwell Report as "somewhat misleading". In fact, as stated in the Husch Blackwell Report, <u>Julia Sell said just the opposite as demonstrated in audiotape of the meeting with the Tennis Team</u> that was supplied to Husch Blackwell. Husch Blackwell reported that many of the Tennis Team players had "expressed concerns" because Lewis continued to have contact with Coe/Davis. Julia Sell told the Tennis Team. ***". . . we all love Jade. We want Jade to be safe. Okay? Nobody is telling anybody don't hang out with Jade. Be friends okay…"***[14]

### 3.    Abby Owens

Owens alleges that she began at LSU as a freshman in the fall of 2013, after being recruited to the Tennis Team by Julia Sell. Owens claims that after going to "a student bar in Tigerland" where she had been drinking heavily, she was sexually assaulted later that night by the "star player on the football team." Owens admits that she did not report the alleged rape, asserting that she was afraid to disclose the rape and that the sexual assault "exacerbated the substance abuse problem she had formally developed as a result of a prior abusive relationship."[15]

Following her dismissal from the tennis team "for testing positive for Adderall" on or about April 4, 2017, Owens voluntarily took a medical withdrawal from LSU and "checked into a nearby rehabilitation facility." Owens admits that the first time she disclosed the sexual assault was while she was the rehabilitation facility <u>after</u> she left LSU and the Women's Tennis Team.

---

[13] See Exhibit A to Amended Complaint, Husch Blackwell Report, p. 90 (emphasis added).
[14] See Exhibit A to Amended Complaint, Husch Blackwell Report, pp. 90-91 (emphasis added).
[15] See Amended Complaint, ¶¶192-196. The Husch Blackwell Report identifies this player as Derrius Guice, who is also <u>not</u> a defendant in this litigation.

She claims that an unnamed "rehabilitation center official reported the sexual assault to LSU's Athletics Department" and "informed her parents of the report."[16] Notably, <u>Owens does not and cannot claim that this unnamed third party informed either of the Sells about Owens' claim.</u>

Owens specific allegations against the Sells mostly consist of specious, irrelevant, and impertinent claims regarding alleged (untrue) comments by Julia Sell in a conversation between Sell and Owens' father in late April 2017, after Owens left LSU and was admitted to the rehabilitation center. Owens admits that this conversation was the first time that either Julia or Michael Sell were informed of the alleged assault.[17] While the allegations in the Amended Complaint are that Julia Sell never forwarded the report by Owens' father,[18] the Husch Blackwell Report explicitly debunks that claim:

> <u>Notably, though, Sells [sic] **did** report the conversation she had with [Owens']</u>[19] <u>father to Miriam Segar, who, in turn, reported it to Title IX Coordinator Stewart.</u>[20]

Owens admits she did not return to LSU after taking the medical leave and entering the rehabilitation facility. She transferred to the University of Georgia in January 2018 and finished her degree that year. Owens is silent as to whether she could have returned to LSU to complete her degree.

Owens <u>does</u> <u>not</u> allege in the Amended Complaint that she ever personally reported the alleged sexual assault to Julia or Michael Sell. Nor does she allege <u>anyone</u> ever reported the sexual assault to Michael Sell. Therefore, the only interaction complained of by Owens in relation to Julia or Michael Sell is the report by Owens' father to Julia Sell after Owens had left LSU, which Julia Sell promptly reported to Miriam Segar, as detailed in the Husch Blackwell Report.

---

[16] See Amended Complaint, ¶¶196-197.
[17] See Amended Complaint, ¶198.
[18] See Amended Complaint, ¶198.
[19] Owens was referred to as "Complainant 2" throughout the Husch Blackwell Report.
[20] See Exhibit A to Amended Complaint, Husch Blackwell Report, p. 98 (bold in original) (underline added).

4.    **Kennan Johnson**

Separate and distinct from Lewis and Owens, whose claims originate with alleged sexual assaults and the alleged "mishandling" and reporting of Title IX claims, Kennan Johnson's claims are based upon allegations that the Sells created a hostile environment due to Johnson's weight and sexual orientation.[21]  Upon information and belief, Johnson is the only Plaintiff whose claims are based upon her LGBTQ+ status and who alleges that the Sells violated her rights to equal protection by creating a hostile environment on the Women's Tennis Team due to Johnson's sexual orientation.

Johnson was awarded an "official scholarship offer from LSU" on May 8, 2017.[22]  Johnson claims that Julia Sell subjected her to "abuse" by asking Johnson to take a leadership role on the team, lose weight, and refusing to give her one of the limited slots to play singles matches and threatening (but not actually taking away) her scholarship.

In specific reference to her sexual orientation, Johnson alleges that Sell made "disparaging comments," including that Johnson needed to keep her "lifestyle" out of the locker room, and that Johnson's sexual orientation "could make her teammates 'uncomfortable' and 'distract' them."[23]  However, Johnson provides no further details to support those allegations.

Johnson alleges that she ultimately sought psychological counseling and admitted herself to a hospital.[24]  Plaintiffs provide no details regarding this alleged medical treatment and also fail to note Johnson's issues unrelated to and prior to her time at LSU, including being dismissed from <u>two</u> separate collegiate tennis programs prior to the Sells giving her a chance at LSU.

Johnson graduated in the spring of 2019. She claims that although as an athlete she was

---

[21] See Amended Complaint ¶295, ¶436.
[22] See Amended Complaint, ¶285.
[23] See Amended Complaint, ¶295. Johnson's complaints were not addressed in the Husch Blackwell Report.
[24] See Amended Complaint, ¶¶298-299.

required to go to Title IX training, "she never learned that weight and sexual orientation harassment constituted sex discrimination and therefore could be addressed via a Title IX report."[25]  Likewise, she never filed a Title IX report, made a Title IX claim, or alleges that ether Julia or Michael Sell failed to properly report a claim as it related to Johnson.

**B.**     **The Husch Blackwell Report, included in the Amended Complaint as Exhibit A, Discredits Plaintiffs' Allegations Against the Sells.**

The crux of the Amended Complaint, is to a large degree, based on the findings contained in the March 23, 2021 Husch Blackwell Report.  As set forth in the Amended Complaint, "in November 2020, LSU retained the Husch Blackwell law firm to investigate the school's handling of several Title IX-related incidents as well as LSU's Title IX policies and procedures."[26]  The Husch Blackwell Report is 148-page document, with 14 attached Exhibits and under the Federal Rules of Civil Procedure is considered part of the Amended Complaint.[27]

In many instances related to the claims against the Sells, the findings of the Husch Blackwell Report expressly contradict the claims contained in the Plaintiffs' Amended Complaint. In these instances, and as discussed in more detail below, the findings of the Husch Blackwell Report are controlling as a matter of law.[28]

**1.**     **Husch Blackwell Findings regarding LSU Title IX Reporting Policies.**

As set forth in the Husch Blackwell Report, PM-73, a "Title IX and Sexual Misconduct Policy," was adopted by LSU in June 2014, revised in December 2015, and was the applicable reporting policy until its revision in August 2020.[29]  This Policy included language regarding who was a "responsible person" for reporting claims of sexual discrimination to the Title IX

---

[25] See Amended Complaint, ¶298-299.
[26] See Amended Complaint, ¶68.
[27] See Federal Rule of Civil Procedure 10(c).
[28] See, e.g., *Stockwell v. Karan*, 442 F. App'x 911, 913 (5th Cir. 2011).
[29] See Exhibit A to Plaintiffs' Amended Complaint, Husch Blackwell Report, p. 21.

Coordinator.  Julia and Michael Sell were, therefore, required by LSU to follow this policy at all applicable times relevant to this litigation.

The Husch Blackwell Report found that the "responsible person" policy was "poorly crafted and confusing."  Husch Blackwell found:

> PM-73, in somewhat circular fashion, defines "responsible person" as:
>
> Any employee who has the authority to take action to redress sexual violence or who has been given the duty of reporting incidents of sexual violence or any other misconduct prohibited by this policy by students or employees to the Title IX coordinator or other appropriate school designee.  Responsible Persons do not include victims' advocates, mental health counselors or clergy.[30]

After extensive discussion regarding the further confusion in the definition of "responsible party," Husch Blackwell concluded:

> Thus, it is important to note at the outset that despite contemporaneous assertions to the contrary, LSU *has never had a clear written policy requirement that all employees must report incidents potentially implicating the Title IX policy to the Title Coordinator*. In addition, even for employees identified as responsible employees PM-73, the ultimate reporting directives in the various sections of the policy are conflicting and unclear. This lack of clarity is a clear error and inconsistent with Department guidance in place during this time period.[31]

The conclusions of Husch Blackwell regarding PM-73 puts into question whether either Julia or Michael Sell were "responsible parties" required by LSU to report incidents under Title IX and at a minimum, contradicts Plaintiffs' claims in their Amended Petition that the Sells had a reporting duty under PM-73 to report those claims made by Plaintiffs or breached any such duty.

Moreover, citing approvingly to the Husch Blackwell Report as support for their extensive Title IX claims in their Amended Complaint, Plaintiffs echo the Husch Blackwell finding that there was "a unique problem in athletics surrounding reporting and lack of training."[32] Specifically

---

[30] *Id.* p. 22.
[31] *Id.* p. 23 (emphasis added).
[32] See Amended Complaint, ¶ 80.

as restated by the Plaintiffs, contrary to federal guidelines and best practices:

> At all relevant times, a single athletics employee [Defendant, Miriam Segar] reviewed each report of sex discrimination and made a determination regarding the whether the report was to be sent to the Title IX Coordinator.[33]

As relied upon by the Plaintiffs, Husch Blackwell concluded that all athletics employees needed to be clearly instructed regarding reporting sex-based discrimination to the Title IX Coordinator because **"such instruction had not been previously provided"** and that **"the athletic department incorrectly directed where to report potential Title IX issues."** [34]   It is therefore, evident, based upon the Husch Blackwell Report included in the Amended Complaint, that the Sells followed LSU's policy by promptly reporting the Owens and Lewis claims to Ms. Segar.

### 2. The Husch Blackwell Report casts serious doubt on claims by David Lewis that he reported Lewis' abuse to Michael Sell in the summer of 2017.

As discussed above, Husch Blackwell conducted an extensive investigation as to whether "Jade's father, David Lewis reported the May 2017 incident of abuse to tennis coach Mike Sell during the summer of 2017."[35]   After reviewing multiple statements, text messages, and other documentary evidence produced by David Lewis, the police, and others, and after conducting their own interviews, Husch Blackwell made the following findings <u>directly contradicting the subsequent allegations made by Plaintiff, Jade Lewis, in the Amended Petition</u>:

- ***There is insufficient evidence to conclude that David Lewis communicated that Jade Lewis was being abused by Davis in June 2017 to Michael Sell, as indicated by David Lewis' August 2018 police statement***.

- David Lewis' August 2018 statement that he told Mike Sell that Jade "was being physically abused by Mr. Davis" "on two separate occasions" in June and July 2017 ***is inconsistent with the information he provided as part of the Husch Blackwell*** review because any reports in June would have predated when David Lewis and his wife became aware of the abuse.

---

[33] See Amended Complaint, ¶ 81.
[34] See Amended Complaint, ¶ 82.
[35] See Exhibit A to Amended Complaint, Husch Blackwell Report, p. 68-73.

- ***Mike Sell has credibly denied David Lewis' assertion regarding reports of physical violence against Jade Lewis by Davis***.... We have been unable to identify any motive for Mike Sell, the tennis coach, to protect a "star football player" who was abusing one of his star tennis players, especially since Davis was clearly not a star football player.[36]

Husch Blackwell, therefore, finds "we have concluded that ***there is insufficient evidence to conclude that David Lewis reported to Mike Sell in June or July of 2017 that Davis had abused Jade Lewis.***"[37]

3. **The Husch Blackwell Report determines that the team members identified by Jade Lewis did not report any sexual assaults to Julia Sell before April 2018.**

Likewise, <u>in direct contradiction to those allegations made by Lewis</u> in Paragraph 275 of the Amended Complaint regarding reports by teammates of abuse to Julia Sell and Sell's alleged failure to report the same, the Husch Blackwell Report made the following conclusions:

- ...no witness interviewed [by Husch Blackwell for its Report], ***including the three teammates identified by Lewis***, have stated that they directly told any LSU employee, including Julia Sell about the May 2017 abuse. One of the students identified by Lewis was not enrolled at LSU until January 2018, another did not join the team until August 2017....[T]he third teammate did become aware of the May 2017 abuse after Davis texted her about the incident, but the teammate made clear in an interview that ***she did not relay this information to Julia Sell.*** [38]

- It is undisputed... that several teammates... did report the April and June 28 incidents to [Julia] Sell. ***It is similarly undisputed that [Julia] Sell appropriately reported those incidents to Miriam Segar, as instructed by Athletics policy at the time, and that those reports made it to the Title IX Office.***[39]

In short, Hush Blackwell concluded that in contrast to those allegations made by Plaintiff, Jade Lewis, **<u>Julia Sell followed the reporting policy in place in 2018 to properly report Lewis' abuse to Segar, who, in turn, reported those incidents to the Title IX Office.</u>**

---

[36] *Id.* (emphasis added).

[37] *Id.*

[38] See Exhibit A to Amended Complaint, Husch Blackwell Report, p. 90 (emphasis added).

[39] *Id.* (emphasis added).

## **LEGAL ARGUMENT**

I.    **Legal Standards for Applications of Rule 12(B)(1) AND 12(B)(6).**

### A.  **Rule 12(b)(1) Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the Court's subject matter jurisdiction. The party asserting jurisdiction over a claim has the burden of proof to show that subject matter jurisdiction exists.[40] "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[41] Further, the federal court's power as created by the U.S. Constitution is limited to "cases" and "controversies."[42] A "controversy" requires, for one, that the party bringing the action have standing, which requires a party to show "actual or present harm or a significant possibility of future harm."[43]

### B.  **Rule 12(b)(6) Legal Standard**

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[44]  The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."[45] "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

---

[40] *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018).
[41] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[42] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337, 136 S.Ct. 1540, 1547 (2016).
[43] *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1337 (Fed. Cir. 2007); *see also, Bauer v. Texas*, 341 F.3d 352, 357-58 (5th Cir. 2003).
[44] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 470, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).
[45] *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235- 36 (3d ed. 2004)).

recitation of the elements of a cause of action will not do."[46]  If the Plaintiff fails to allege facts sufficient to "nudge [ ][her] claims across the line from conceivable to plausible, [her] complaint must be dismissed."[47]

A claim only meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[48]  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[49]  Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[50]

### C. The Facts Asserted in the Attached Husch Blackwell Report Control Over Plaintiffs' Bald Allegations.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the District Court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto.[51]  The Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[52]  However, conclusory allegations and unwarranted deductions of fact are not accepted as true.[53]

---

[46] *Id.* (citations, quotation marks, and brackets omitted); *see also, Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct.1937, 1949 (2009).

[47] *Bell Atlantic*, 550 U.S. at 570, 127 S.Ct. at 1974.

[48] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[49] *Id.* at 679.

[50] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic*, 127 U.S. at 556).

[51] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004).

[52] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).

[53] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins*, 224 F.3d at 498 (Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Moreover, and significant for this case given the inclusion of the Husch Blackwell Report in Plaintiffs' Amended Complaint as Exhibit A, the Fifth Circuit has held:

> [E]xhibits attached to the complaint, however, are part of the complaint "for all purposes." <u>Thus it is not error to consider the exhibits to be part of the complaint for purposes of a Rule 12(b)(6) motion.</u>[54]

Not only can exhibits be considered, but ***<u>it is well established that in case of a conflict between the allegations in a complaint and the exhibits attached to the complaint, the exhibits control</u>***.[55] In fact, it was considered "well-established" that exhibits control over allegations at least as far back as 1940.[56] As any exhibit attached to a complaint is part of the pleading "for all purposes," dismissal of a claim pursuant to Rule 12(b)(6) is appropriate when an exhibit contradicts an assertion made in a complaint and eliminates any possible claim for relief.[57] In such a situation, dismissal is proper when a plaintiff fails to prove beyond a doubt that no set of facts would entitle them to relief.[58]

In *Simmons v. Peavy-Walsh Lumber Co.,* the Fifth Circuit affirmed the dismissal of the case holding that the exhibits to the plaintiff's complaint contradicted the allegations contained therein, thereby refuting plaintiff's own allegations by setting forth the evidence relied on to sustain the motion to dismiss.[59] In *Miller v. SS Hospitality Group, LLC,*[60] a plaintiff brought a §1983 claim against two police officers alleging excessive force. Defendant police officers moved to dismiss plaintiff's §1983 claim under Federal Rule of Civil Procedure 12(b)(6) and asserted they were entitled to qualified immunity.[61] In determining whether the police officers were entitled

---

[54] *United States ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir. 2004), (quoting Fed. R. Civ. P. 10(c)). (emphasis added).

[55] *Stockwell v. Kanan,* 442 F. App'x 911, 913 (5th Cir. 2011); *Simmons v. Peavy–Welsh Lumber Co.,* 113 F.2d 812, 813 (5th Cir. 1940).

[56] *Simmons, supra* at 812.

[57] Fed. R. Civ. P. 10(c); *Associated Builders, Inc. v. Ala. Power Co.,* 505 F.2d, 97, 100 (5th Cir. 1974).

[58] *Sheppard v. Texas Dept. of Transp.,* 158 F.R.D. 592, 595 (E.D. Tex. Nov. 15, 1994) (citing *Garrett v. Commonwealth Mortgage Corp.,* 938 F.2d 591, 594 (5th Cir. 1991)).

[59] *Id.*

[60] 2018 WL 3054691 (N.D. Tex. June 5, 2018).

[61] *Id.*

to qualified immunity, the court stated that the police report attached as an exhibit to plaintiff's complaint told an entirely different story than what plaintiff had alleged in the complaint itself. The District Court for the Northern District of Texas held that the police report, stating claimant resisted being escorted from the bar, was controlling and not the allegations in his complaint that he never resisted arrest.[62] Therefore, the court found the police officers were entitled to qualified immunity and dismissed plaintiff's excessive force claims brought under §1983.[63]

The instant case is similar. Owens and Lewis allege on one hand that the Sells failed to report information of sexual misconduct, while on the other, provide this Court with proof that the Sells made prompt reports of the sexual misconduct. By attaching the Husch Blackwell Report to their Amended Complaint, Plaintiffs' have "refuted [their] own allegations by setting forth the evidence relied on to sustain them."[64] As exhibits to a complaint control over allegations, the facts in Exhibit A should replace the conclusory allegations in Plaintiffs' Amended Complaint.

## II.    Seven of the Ten Plaintiffs Assert No Factual Claims Against the Sells.

As an initial matter, any potential cause of action asserted against Michael Sell and Julia Sell, excluding those brought by Owens, Lewis, and Johnson, should be dismissed under Rule 12(b)(6). As demonstrated herein, none of the other seven named Plaintiffs assert a single factual allegation against either of the Sells in their Amended Complaint.  They, therefore, do not allege facts sufficient to "state a claim to relief that is plausible on its face."[65] Throughout the Amended Complaint, "all Plaintiffs" allege violations of the law by some or "all Defendants." This vague description creates ambiguity and confusion as to what cause of action each individual Plaintiff asserts against each Defendant.

---

[62] *Id.*
[63] *Id.*
[64] *Simmons*, 113 F.2d at 813.
[65] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

As stated above, only three Plaintiffs –Owens, Lewis, and Johnson – have alleged any facts that could possibly be sufficient to create a cognizable cause of action against the Sells. This is based upon Owens, Lewis, and Johnson's proximity to the Sells, as all three were members of the LSU Women's Tennis Team, whereas the allegations of the remaining Plaintiffs are completely unrelated to any action, experience, or conduct involving the Sells. Therefore, although all Plaintiffs generally state in headings in the pleading that they are asserting legal claims against multiple Defendants, including the Sells, none of the Plaintiffs other than Owens, Lewis, and Johnson actually make any allegations against the Sells. The Sells respectfully assert that all claims by those seven Plaintiffs against them should be dismissed pursuant to Rule 12(b)(6) because those seven Plaintiffs fail to state any claim for relief that is plausible on its face.

### III.    Plaintiff Lack Standing to Obtain Prospective Injunctive Relief.

Plaintiffs request prospective injunctive relief from the Sells in the Sells' official capacity under Counts VII, VIII and IX of the Amended Complaint.  However, Plaintiffs lack standing for the relief requested because they are in no imminent or actual threat of injury as Owens, Lewis, and Johnson have all left LSU and graduated from college.[66] To satisfy the Article III requirements for standing, "a plaintiff seeking injunctive relief must 'show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged conduct.'"[67] The doctrine of standing limits a litigant's power to maintain a lawsuit in federal court to seek redress for a legal wrong.[68] As an element of subject matter jurisdiction, a challenge to standing may be brought under Federal Rule of Civil Procedure 12(b)(1). [69]

---

[66] See Amended Complaint, ¶ 200, ¶299; Jade Lewis graduated in 2020.
[67] *Armstrong v. Turner Indus., Inc*., 141 F.3d 554, 563 (5th Cir. 1998) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).
[68] *Spokeo, supra* at 337.
[69] *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017).

In *Muslow v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College*, the court determined that plaintiffs no longer employed by LSU were not entitled to injunctive relief because they lacked subject-matter jurisdiction.[70] Because these plaintiffs were no longer employed by the university, they could not "realistically face a threat that [defendants] will continue to violate [their] rights."[71]

In reference to the Sells, neither Owens, Lewis, nor Johnson have alleged a continuing violation or are in any immediate danger in sustaining a direct injury. In fact, all three Plaintiffs are no longer LSU tennis players or students. Just as in *Muslow*, Owens, Lewis, and Johnson are requesting injunctive relief for past acts and practices, which do not establish a concrete threat of future injury.  Plaintiffs here do not have the requisite standing to request injunctive relief from the Court. As a result, Plaintiffs claims for injunctive relief against the Sells in the Amended Complaint should be dismissed.

**IV.    The Title IX Retaliation Claims in Count V Should Be Dismissed as Title IX Does Not Provide for a Cause of Action Against Persons.**

Plaintiffs' cause of action against the Sells related to Title IX should be dismissed under FRCP 12(b)(6)[72] as Title IX only provides for a cause of action against "institutions," and not persons. Count V in the Amended Complaint alleges the Sells, in their official capacity, violated Title IX through acts of retaliation.

Title IX of the Education Amendment Act of 1972 provides that "[n]o person…shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[73]

---

[70] 2020 WL 1864876 at *11 (E.D. La. Apr. 14, 2020).
[71] *Id.* (*citing Gilbert v. Donahoe*, 751 F.3d 303, 313 (5th Cir. 2014)).
[72] Johnson does not appear to assert a claim in Count V against the Sells as she did not allege to have experienced retaliation for reporting an incident of sexual misconduct. This is because no such report was ever made by Johnson.
[73] 20 U.S.C. §1681(a).

A violation of Title IX occurs when an institution, while receiving federal funds, retaliates against a person because they complain of sex discrimination.[74] However, courts have consistently interpreted Title IX as solely providing a cause of action against institutions, not individuals.[75] Within the Fifth Circuit, several district courts have dismissed Title IX claims on this very basis.

For example, in *Wells v. Johnson*, the court dismissed a plaintiff's Title IX claims against individuals working in the plaintiff's school upon a 12(b)(6) motion as "[Title IX] has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."[76] In *Chestang v. Alcorn State University*, the U.S. District Court for the Southern District of Mississippi dismissed Title IX claims against an individual as the law only permits actions against "programs or activities that receive federal financial assistance."[77] The same result occurred in *Garza v. Galena Park Independent School District*.[78]

The precedent well established by the courts is firm - Title IX does not provide for suits against individuals. As individuals, the Sells cannot be sued under Title IX. Therefore, any cause of action in Count V against the Sells should be dismissed pursuant to Rule 12(b)(6) as the allegations in Count V do not state a claim for relief that is plausible on its face.

**V**.    **Plaintiffs Fail to Assert a Legally Cognizable First Amendment Retaliation Claim in Count VI.**

Plaintiffs, Owens, Lewis, and Johnson, fail to plead facts which would support a claim that Michael and Julia Sell retaliated against them for exercising their First Amendment Rights. Atypical are cases, like this one, in which a private citizens (Owens, Lewis and Johnson) allege

---

[74] *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183, 125 S.Ct. 1497, 1510 (2005).
[75] *See Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 247 (2009) ("Title IX reaches institutions and programs that receive federal funds…but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.").
[76] 2015 WL 5138279, at *4 (M.D. La. Aug. 28, 2015) (citing *Fitzgerald*, 555 U.S. at 247).
[77] 820 F.Supp. 2d 772, 777 (S.D. Miss. May 17, 2011) (internal citation omitted).
[78] 914 F.Supp. 1437 (S.D. Tex. Sept. 1, 1994).

that "state actors" (Michael and Julia Sell) took some action against them in retaliation for the exercise of their First Amendment rights, as opposed to the other way around. To survive a Motion to Dismiss, a plaintiff asserting a First Amendment Retaliation claim must advance non-conclusory allegations establishing:

    (1)    that the speech or conduct at issue was protected,

    (2)    that the defendant took adverse action against the plaintiff, and

    (3)    that there was a causal connection between the protected speech and the adverse action.[79]

First, the Amended Complaint contains absolutely no allegations whatsoever from Owens that she suffered retaliation by the Sells subsequent to engaging in protected speech or conduct. Nor could she, because Owens was no longer a student at LSU or a member of the Women's Tennis Team at the time she allegedly made her report to third parties. As asserted in the Amended Complaint, Owens was at the rehabilitation facility when she first reported the alleged assault to a counselor at that facility.[80] In fact, Owens does not allege that she ever personally informed the Sells about the assault. And because she did not return to LSU as a student or to the Tennis Team after her report, Owens does not allege and could not have suffered any retaliation in relation to any speech protected by the First Amendment.

Lewis' claim of retaliation is limited to her allegation that Julia Sell supposedly told Lewis' former teammates to "stay away" from her. However, as demonstrated above, this allegation has been thoroughly debunked by the Husch Blackwell Report, which demonstrated that Julia Sell said just the opposite of that ("Nobody is telling anybody don't hangout out with Jade").[81] Therefore, Lewis has not alleged a cognizable claim against the Sells either.

---

[79] *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98 (2nd Cir. 2001).
[80] See Amended Complaint, ¶ 197.
[81] See Exhibit A to Amended Complaint, Husch Blackwell Report, p. 90.

Kennan Johnson also fails to properly allege First Amendment retaliation as a claim against the Sells.  The Amended Complaint contains no allegations that Johnson spoke publicly or that such speech or conduct was protected. Furthermore, there are no allegations in the Amended Complaint that specifically allege that Michael or Julia Sell took retaliatory action against Johnson due to her exercising her First Amendment rights. The Amended Complaint fails to properly state a claim and cannot stand on vague generalities asserted against all "LSU Defendants" without pleading, with some degree of specificity, how Michael and Julia Sell violated Johnson's protected First Amendment rights.

Finally, due to the absence of any allegations directly against Michael Sell, the Sells respectfully assert that the First Amendment retaliation claim of Plaintiffs against Michael Sell should be dismissed for failure to state a claim upon which relief can be granted.

## VI.    All Claims in Count VII for Denial of Equal Protection Against the Sells Should Be Dismissed Pursuant to FRCP 12(B)(6).

Count VII alleges that the Sells, in both their official and personal capacities, violated the Plaintiffs' rights to equal protection under the Fourteenth Amendment. Again, the Amended Complaint suffers from being extremely vague, making it difficult to determine the exact nature of the claims brought by each of the Plaintiffs. That said, Lewis alleges that because of her sex, the Sells failed to report alleged sexual misconduct once notified by her father.[82] Owens also alleges that the Sells' failed to report allegations of sexual misconduct because of her sex.[83] Finally, Johnson alleges that the Sells violated her right to equal protection by creating a hostile environment due to Johnson's sexual orientation.[84]

Both Owens' and Lewis' claims have been shown to be false by the Husch Blackwell

---

[82] See Amended Complaint, ¶436; ¶277.
[83] See Amended Complaint, ¶436.
[84] See Amended Complaint, ¶436; ¶295.

Report.  Michael Sell was never told by David Lewis about is daughter's abuse.  Fellow tennis players did not tell the Sells about the Lewis abuse until April 2018, and upon learning of the potential abuse in 2018, the claim was promptly reported to Miriam Segar by Julia Sell.  The Husch Blackwell Report also demonstrates that Julia Sell promptly informed Miriam Segar about Owens' claims upon learning about same.[85]

The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." Violations of equal protection are actionable under 42 U.S.C. §1983, and to establish an equal protection claim, the "plaintiff must prove that similarly situated individuals were treated differently."[86] "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class."[87]

### A. Claims Against the Sells in Their Official Capacity for Damages Should be Dismissed As §1983 Only Permits Suits Against "Persons".

The Plaintiffs' claims against the Sells in their official capacity alleging a violation of the equal protection clause, should be dismissed as §1983 claims for damages cannot be brought against individuals sued in their official capacities. Although a suit brought against a public employee in their official capacity may seem like a suit against the individual, it is actually a suit brought against the individual's office and the state itself.[88] Section 1983 only provides for a cause of action to be brought against a "person," and the state is not a "person" within the meaning of

---

[85] See Exhibit A to Amended Complaint, Husch Blackwell Report, pp. 68-73, 90-91, 98.
[86] *Doe v. University of Mississippi*, 361 F.Supp 3d 597 (S.D. Miss. Jan. 16, 2019) (*citing Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999)).
[87] *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir.1999).
[88] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent.").

§1983.[89] Therefore, a public employee in their official capacity cannot be sued under §1983 because it is a suit against the state and not a "person."

In *Salcido v. University of Southern Mississippi*, the court dismissed a plaintiff's §1983 claims against three university employees in their official capacity because the cause of action was actually against the University of Southern Mississippi, and as an arm of the state, the University of Mississippi was not a "person" within the meaning of §1983.[90] Borrowing language from the United States Supreme Court, the district court stated that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity."[91]

The same result occurred in *Chestang v. Alcorn State University*.[92] In *Chestang*, a university student-plaintiff brought a lawsuit against the university and the professor which the plaintiff alleged sexually harassed him, asserting a cause of action under Title IX, §1983, and state law. The suit was brought against the professor in both his official and personal capacity, and the professor argued that he was immune from suit under the Eleventh Amendment and immune from suit under §1983 in his official capacity as §1983 claims cannot be brought against arms of the state. In granting the professor's motion to dismiss, the district court stated that it "need not reach the Eleventh Amendment issue because [the professor] is correct that a §1983 claim does not lie against him in his official capacity."[93]

Plaintiffs in the instant litigation have asserted in Count VII a §1983 claim against the Sells in their official and personal capacities alleging violations of equal protection, but just as in *Salcido*

---

[89] *Will,* 491 U.S. at 71.
[90] 2013 WL 2367877, *2 (S.D. Miss. May 29, 2013).
[91] *Id.* (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)).
[92] 820 F.Supp.2d 772, 778 (S.D. Miss. May 17, 2011).
[93] *Id.* at 779.

and *Chestang*, the claims against them for damages in their official capacities must be dismissed as §1983 only provides a cause of action against a "person" and not an arm of the state.[94] The Sells are employees of Louisiana State University, and any cause of action asserted against them in their official capacity is actually a suit against LSU – an arm of the state.[95] Therefore, Plaintiffs' cause of action for damages against the Sells in their official capacities under Count VII must be dismissed.

**B. Any Cause of Action in Count VII Asserted Against the Sells in their Personal Capacities Must Also Be Dismissed as the Sells Are Entitled to Qualified Immunity.**

The Sells assert they are entitled to qualified immunity as to the claims brought by Plaintiffs under Count VII against them in their personal capacities as every action taken by the Sells which involved the Plaintiffs was done in good faith. Further, Plaintiffs cannot meet their burden to show the Sells violated a statutory or constitutional right clearly established at the time of the challenged conduct. "Qualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[96] Although considered an affirmative defense, the plaintiff bears the burden of negating a defendant's claim for qualified immunity once it has been properly raised.[97]

In determining whether the plaintiff has successfully negated the defendant's right to qualified immunity, courts apply a two-prong test asking: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right at issue was "clearly established" at the time of the misconduct, rending the conduct objectively unreasonable.[98]

---

[94] *See Chestang*, *supra*. at 779; *Salcido*, *supra*. at *2.
[95] *See Raj v. Louisiana State University*, 714 F.3d 322, 328 (5th Cir. 2013) (holding that the Board of LSU is an arm of the state).
[96] *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012).
[97] *See Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2019).
[98] *Plummer v. University of Houston*, 2015 WL 12734039, at *11 (S.D. Tex. May 28, 2015) (*citing Saucier v. Katz*, 533 U.S. 193, 201 (2001)).

For the second prong of the test, a defendant does not violate a clearly established right "unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."[99] Sufficient precedent must have placed the statutory or constitutional question faced by the public official "beyond debate."[100] The United States Supreme Court has also "repeatedly told courts…not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."[101] Further, the Fifth Circuit has explained that qualified immunity "gives ample room for mistaken judgements by protecting all but the plainly incompetent or those who knowingly violate the law."[102]

Within the past month, the United States Supreme Court held that qualified immunity should be granted to an official when the facts of a case are "materially distinguishable" from the facts of a previous court decision determining that an official's action violated statutory or constitutional law.[103]

Upon information and belief, no precedent exists which would put the Sells on notice that failing to report allegations of sexual misconduct was a violation of constitutional or statutory law. Lewis and Owens allege that the Sells violated their rights to equal protection and failed to report incidents of sexual misconduct because of their sex. However, the facts which Plaintiffs allege in their Amended Complaint are materially distinguishable from any case which may purport to hold that failing to report sexual misconduct amounts to discrimination on the basis of sex.

---

[99] *Doe v. University of Mississippi*, 361 F.Supp. 3d 597 (S.D. Miss. Jan. 16, 2019) (*citing Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

[100] *Id.*

[101] *Id.*; *see also*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 2084 (2011).

[102] *Mendenhall v. Rise*, 213 F.3d 226, 230 (5th Cir. 2000) (citation omitted) (emphasis added).

[103] *Rivas-Villegas v. Ramon Cortesluna*, 2021 WL 4822662 (U.S. October 18, 2021) (per curiam); *City of Tahlequah, Oklahoma, et al. v. Austin P. Bond, as Special Administrator of the Estate of Dominic F. Rollice*, 2021 WL 482664 (U.S. October 18, 2021) (per curiam).

Regardless of any precedent that could be offered by Plaintiffs, Plaintiffs would also fail the first prong of the qualified immunity test because they fail to properly allege that the Sells violated one of Owens', Lewis', or Johnson's constitutionally protected rights. All three generally allege that they were the subject of sex discrimination: Owens and Lewis allege that the Sells failed to report knowledge of sexual misconduct because of their sex, and Johnson alleges that she was treated differently by the Sells on the basis of her sexual orientation. As to Lewis and Owens, failing to report incidents of sexual misconduct does not give rise to a violation of a constitutional right in this context. The Plaintiffs do not and cannot make any allegation that the Sells treated male players any differently from female players. This is in part because the Sells only coached female players, making it impossible for them to have treated male players any differently or violated their rights to equal protection.

In *Salcido*, the court dismissed a plaintiff's equal protection claims against individually named defendants because those defendants had no power over the alleged discriminatory acts and because those plaintiffs failed to identify similarly situated individuals that were treated differently.[104] Plaintiff alleged that she was given fewer clinical hours than Caucasian and American-born students. In dismissing the equal protection claims against the individual defendants, the district court referenced the fact that the individual defendants had no control over how clinical hours were assigned, just as the Sells have no control over how the Title IX program was administered.[105] Importantly, that court also held that plaintiff could not identify a similarly situated individual of a difference race, ethnicity, or national origin whose complaints of discrimination were handled differently by the defendants.[106]

---

[104] *Salcido*, 2013 WL 2367877, at *9.
[105] *Id.*
[106] *Id.*

In *Estate of Carmichael ex rel. Carmichael v. Galbraith*, the district court dismissed the equal protection claims brought by the estate of a queer-presenting male student against employees of the school because the estate failed to allege that the school employees acted differently when handling other incidents of bullying.[107] The plaintiff in *Estate of Carmichael* was bullied and harassed by his classmates, prompting him to ultimately take his own life. His estate brought an equal protection claim against the school officials, but the court dismissed the cause of action because the estate failed to plead that the school officials responded to reports of bullying differently with other students. The court held that the estate's complaint was speculative and defective because it failed to allege supporting facts which showed bullying would have been investigated or reported differently had the student been female.[108] Although the school officials may not have followed the school board's policies and procedures for reporting, the estate failed to plead a facially plausible equal protection claim because the estate only offered speculation that bullying was not reported because of the student's sex.[109]

Owens and Lewis also fail to allege that the Sells acted differently than any other similarly situated group when reporting (or failing to report) incidents of sexual misconduct. For example, no allegations are made that the Sells reported incidents of sexual misconduct when the alleged perpetrator was a woman. They have also not alleged that the Sells acted any differently when receiving reports from men instead of women. Plaintiffs assert, without providing any supporting facts, that the Sells treated Plaintiffs differently on the basis of their sex. However, without these supporting facts, Plaintiffs claims for equal protection should fall.

Further, Lewis and Owens make no allegations that the Sells acted with a discriminatory

---

[107] *Estate of Carmichael ex rel. Carmichael v. Galbraith*, 2012 WL 4442413, *4-5 (N.D. Tex. Sept. 26, 2012), *aff'd in part, rev'd in part sub nom. Carmichael v. Galbraith*, 574 Fed. Appx. 286, 291 (5th Cir. 2014).
[108] *Id.*
[109] *Id.*

intent or that they were motivated by a gender-based animus. Several courts have dismissed a cause of action under equal protection because of the plaintiff's failure to plead the individual defendant acted with a discriminatory animus.[110] In *Lozano v. Baylor University*, the district court dismissed an equal protection claim against the city's police department due to the plaintiff's failure to plausibly allege a discriminatory intent that raised a right to relief above a speculative level.[111] The plaintiff in *Lozano* alleged that the police discriminated against her on the basis of sex by suspending its investigations into football players that had been reported for committing violence against women.[112] In dismissing the claim against the police, the court stated it could not rely on the mere suggestion that the police suspended the investigation because reports of violence were made by women.[113] Because the Plaintiffs in the present case also fail to offer a discriminatory animus past mere speculation, the equal protection claims brought by Lewis and Owens should be dismissed.

As for the claims of Johnson, the Sells are entitled to qualified immunity because Johnson cannot prove the first or second prong of the test. Johnson alleges that the Sells treated her in a hostile manner because of her sexual orientation.[114] As to the second prong, neither the United States Supreme Court, nor the Fifth Circuit Court of Appeal, has held that sexual orientation discrimination in the context of higher education is a violation of the student's right to equal protection.[115] Therefore, it cannot be said that the Sells' alleged conduct in 2017 and 2018 was

---

[110] *See Muslow v. Board of Supervisors of Louisiana*, 2020 WL 1864876, at *22 (E.D. La. Apr. 14, 2020) (dismissing plaintiffs' equal protection claims during its analysis of the first prong of the qualified immunity test because defendants failed to allege facts sufficient to establish a discriminatory animus).

[111] 408 F.Supp. 3d 861 (W.D. Tex. Sept. 27, 2019).

[112] *Id.* at 886-887.

[113] *Id.* ("Although it is possible to speculate or infer from the alleged policies… the Court cannot rely on speculation.")

[114] See Amended Complaint, ¶295.

[115] *See* Ronna Greff Schneider, *Education Law: First Amendment, Due Process and Discrimination Litigation*, §4:13 ("as with discrimination involving sexual orientation in the education context, the Supreme Court has not yet determined the scope of legal protection for students…on the basis of gender identify under either Title IX or the federal constitution, including the Equal Protection Clause."); *see also* Office of the General Counsel, U.S. Dep't of

unreasonable since the right at issue was not clearly established in 2017, 2018, or even the present day. Johnson also cannot prove the first prong of the qualified immunity test - that the alleged conduct violated her constitutional rights. This is because in 2017 and 2018, Johnson had no constitutional right to be free from sexual orientation discrimination in the university setting in the first place. The Sells respectfully assert that they should be granted qualified immunity as per the equal protection claims brought by Johnson.

## VII.    All Causes of Action Brought in Count VIII Against the Sells for Violations of Procedural Due Process Should be Dismissed.

Count VIII of Plaintiffs' Amended Complaint alleges that the Sells, in both their official and personal capacities, violated Plaintiffs' procedural due process rights by failing to report allegations of sexual misconduct.[116] Only Owens and Lewis attempt to assert facts sufficient to allege such a claim. Johnson asserts no facts to make a cognizable claim for a procedural due process violation. As explained below, any cause of action asserted by Plaintiffs under Count VIII against the Sells should be dismissed.

Procedural due process requirements impose constraints on government actors when their actions deprive an individual of liberty or property interests.[117] "[F]or a person to have a procedural due process claim which damages or other relief can remedy, he must have been denied life, liberty, or property protected by the Fourteenth Amendment."[118] Just as with alleged violations of equal protection, a cause of action for a violation of procedural due process is asserted under 42 U.S.C. §1983. The amount of due process an individual is afforded is measured by a "flexible

---

Education, MEMORANDUM FOR KIMBERLY M. RICHEY ACTING ASSISTANT SECRETARY OF THE OFFICE FOR CIVIL RIGHTS (Jan. 8, 2021) (stating that LGBTQ students are not expressly included in protections under Title IX.)

[116] See Amended Complaint, ¶ 446.
[117] *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901 (1976).
[118] *Wilson v. Birnberg*, 667 F.3d 591, 597 (5th Cir. 2012)

standard" that depends on the practical requirements of the circumstances.[119]

### A. Claims Against the Sells in Their Official Capacity for Damages Should be Dismissed As §1983 Only Permits Suits Against "Persons."

Just as with the Plaintiffs' alleged violations of equal protection in Count VII, any cause of action for damages asserted under Count VIII against the Sells in their official capacities should be dismissed as a suit against a public employee in their official capacity is a suit against the state, and not a "person" and §1983 only provides for a cause of action to be brought against a "person".[120] A cause of action asserted against the Sells in their official capacity is actually a suit against LSU, an arm of the state; therefore, any cause of action asserted against the Sells in their official capacity under Count VIII should be dismissed.

### B. Any Cause of Action Asserted Against the Sells Personally Should Be Dismissed as They Are Entitled to Qualified Immunity.

The Sells assert they are entitled to qualified immunity as to the claims brought against them personally in Count VIII as every action taken by the Sells which involved the Plaintiffs was done in good faith. In the same way the Sells were entitled to qualified immunity from the allegations under Count VII, they are entitled to immunity from the claims in Count VIII as the Plaintiffs cannot satisfy their burden to show that: (1) a constitutional violation would have occurred on the facts plead; and, (2) that the right at issue was "clearly established" at the time of the misconduct, rending the conduct objectively unreasonable.[121]

Here, Plaintiffs Owens and Lewis allege that the Sells violated their procedural due process rights by failing to report allegations of sexual misconduct, but no constitutional or statutory violation occurs simply by failing to report, as Owens and Lewis did not experience a loss of liberty

---

[119] *See Mathews*, *supra.* at 333.
[120] *See Will, supra*. at 71.
[121] *Plummer*, 2015 WL 12734039, at *11.

or property interests as a result. The United States Fifth Circuit Court of Appeals has made clear that a plaintiff must "point to controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity."[122] In review of a plaintiff's due process claim, courts engage in a two part analysis, asking (1) whether the plaintiff has a liberty or property interest that is entitled to procedural due process protection; and if so, (2) what degree of process is due.[123] Caselaw on this issue almost unanimously addresses procedural due process violations when students are disciplined without due process; however, because no disciplinary actions were taken by the Sells against Owens or Lewis, no due process rights were created.[124]  Here, no due process rights were established, as the Sells did not deprive Plaintiffs of any liberty or property interest, and both left the university on their own accord. Similarly, no discipline is alleged by Johnson, who graduated from LSU on scholarship, so no due process rights were established or violated for her either.

   At least one court in the Fifth Circuit has addressed whether a university's grievance and complaint procedures adequately support a university student's due process rights.[125] The court in *Salcido* found that the university's president did not have a duty imposed upon him by the university's grievance procedures and thus could not have deprived the plaintiff of any of her due process rights because he had no obligation to the plaintiff under the university's policy.[126]

   According to Plaintiffs, in 2017 and 2018, when the Sells allegedly received reports that

---

[122] *Id.* (citing *Morgan v. Swanson*, 659 F. 3d 359, 371-72 (5th Cir. 2001)).
[123] *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153 (1982).
[124] *See Doe v. University of Mississippi*, 361 F.Supp. 3d 597 (S.D. Miss. Jan. 16, 2019) (university student alleging procedural due process violations after being suspended for the sexual assault of a female student); *Plummer v. University of Houston*, 860 F.3d 767 (5th Cir. 2017) (male and female university students asserting a violations of their procedural due process rights after being expelled by university for violating sexual misconduct policy); *Papin v. University of Mississippi Medical Center*, 347 F. Supp. 3d 274 (S.D. Miss. Sept. 28, 2018) (resident in medical school stated a cause of action for procedural due process violations after termination from the residency program).
[125] *See Salcido*, *supra* at 5.
[126] *Id.*

Plaintiff Lewis and Owens had been the victims of sexual misconduct, the LSU policy in place did not clearly instruct all athletic employees to report potential Title IX issues.[127] The Husch Blackwell Report concluded that the policy in place during 2017 and 2018, PM-73, was unclear on which employees of the university were required to report incident of sexual misconduct.[128] The report by Husch Blackwell states, "despite contemporaneous assertions to the contrary, LSU has never had a clear written policy requirement that **all** employees must report incidents potentially implicating the Title IX policy to the Title IX Coordinator."[129] Therefore, just as in *Salcido*, the procedural due process claims against the Sells in their personal capacity must be dismissed under the first prong of the qualified immunity analysis as no constitutional, statutory, or even university reporting requirement was violated by the Sells. Again, because no complaints were levied by Johnson, no claim for violation of due process rights can be asserted by her either.

**VIII.** **Plaintiffs' Cause of Action for Conspiracy to Interfere with Civil Rights Under Count IX Must Also Be Dismissed.**

Plaintiffs assert a cause of action against the Sells in Count IX, in both their official and personal capacities, for conspiracy to interfere with civil rights, actionable under 42 U.S.C. §1985 and §1986. "To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States."[130] A plaintiff must also show that the conspiracy was motivated by a class-based animus.[131] Therefore, a cause of action for conspiracy only arises if an actual violation

---

[127] See Amended Complaint, ¶ 82.
[128] Exhibit A to Amended Complaint, Husch Blackwell Report, pp. 21-23.
[129] *Id.* at p. 23.
[130] *J.D. Picayune School Dist.*, 2013 WL 2145734 (S.D. Miss May 15, 2013) (*citing Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir.1994)).
[131] *Id.*

of §1983 can be shown.[132] Section 1986 allows for a cause of action against the party who had

knowledge of a §1985 conspiracy, had the power to prevent it, but failed to do so.[133]

**A.  Claims Against the Sells in Their Official Capacity for Damages Under Count IX Must Be Dismissed as Those Claims Cannot Be Brought Against the State.**

Claims brought under §1985 and §1986 cannot be brought against persons acting in their

official capacity because "a state agency and its employees acting in their official capacities are

not 'persons' within the meaning of Section 1985 and 1986."[134] Similar to Plaintiffs' equal

protection and procedural due process claims, a cause of action for conspiracy cannot be brought

against the Sells in their official capacity, as those claims are actually claims against the state and

not against a "person" as required by law. Therefore, the Count IX claims asserted against the Sells

in their official capacity should be dismissed.

**B.  The Sells in Their Personal Capacity Are Entitled to Qualified Immunity.**

Because the Sells are entitled to qualified immunity on the claims asserted against them for

alleged violations of equal protection and procedural due process, qualified immunity should

extend to protect the Sells in their personal capacity from any cause of action asserted under §1985

and §1986. This is due, in part, to the fact that §1985 and §1986 claims depend entirely on proving

a §1983 claim.[135] Therefore, for the many reasons that the Sells are entitled to qualified immunity

in regards to the due process and equal protection claims – either because the Plaintiffs failed to

state a plausible cause of action or because the constitutional right did not exist at the time of the

alleged misconduct – the Plaintiffs' conspiracy claims as to the Sells must also be dismissed.

---

[132]  *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir.1990).
[133] *Khan v. Southern University A & M College*, 2006 WL 845763, at *12 (W.D. La Mar. 29, 2006).
[134] *Menard v. Bd. of Trustees of Loyola University of New Orleans*, 2004 WL 856641, at *5 (E.D. La. Apr. 19, 2004).
[135] *Pfannstiel, supra.* at 1187.

IX.    **Plaintiffs' Fail to Assert a Facially Plausible Claim in Count XIII that the Sells are Liable for Negligent Supervision.**

Negligent Supervision claims are analyzed under the duty-risk analysis contained in La. C.C. art. 2315 under which it must be demonstrated that the Sells, typically as an employer, breached a duty of reasonable supervision over LSU personnel under their control, causing damages.  There are absolutely no allegations contained in the Plaintiffs' Amended Complaint that either Michael or Julia Sell had a supervisory role over any individual.  Further, there are absolutely no allegations in the Amended Complaint that a lack of supervision caused or contributed to the alleged damages of any of the Plaintiffs.

The causation element of a negligent supervision claim can only be satisfied under La. C.C. art. 2315 if it is proven that the alleged lack of supervision was the cause-in-fact of a plaintiff's alleged damages. It must be shown that "but for" the lack of reasonable supervision, plaintiff's injuries would have been prevented.[136] The Plaintiffs have made no allegations that the Sells failed to provide reasonable supervision over any LSU-employed individual.  In fact, they specifically name Michael and Julia Sell as employees who required supervision, not as supervisors who caused damages for lack of proper supervision of other employees.[137] The Plaintiffs vaguely allege that all "remaining Individual Defendants," had a "duty to supervise, train and monitor students, including but not limited to the Plaintiffs and their assailants."[138]  The Plaintiffs provide no factual or legal basis for why Michael or Julia Sell, the co-head coaches of the LSU Women's Tennis Team, would have such a duty under Louisiana law to "supervise" LSU students so as to prevent sexual assault. Such allegations do not address the Sells' potential culpability and should be dismissed from the suit for failure to provide a factual basis from which relief can be granted.

---

[136] *Doe ex rel. Doe v. DeSoto Parish School Bd.*, 39,779 (La.App. 2 Cir. 6/29/05), 907 So.2d 275, 281.
[137] See Amended Complaint, ¶492.
[138] *Id.*

**X.** **Plaintiffs Fail to Assert a Facially Plausible Claim in Count XIV for Negligent Infliction of Emotional Distress.**

Negligent infliction of emotional distress claims are also analyzed under the duty-risk analysis.[139] Recovery for mental anguish or emotional distress is based on La. C.C. art. 2315, which provides in part: "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Courts use the duty-risk analysis to determine recovery under article 2315.[140]   For liability to attach under the duty-risk analysis, the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm or damages, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached.[141]   A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. [142]

When a defendant's negligent conduct causes the victim physical injury as well as emotional distress, the damages resulting from the negligent infliction of emotional distress have traditionally been recoverable.   However, when no physical injuries are present, to succeed in a claim for negligent infliction of emotional distress, a claimant must show that:

(1)     the defendant's conduct is negligent and

(2)     such conduct caused mental disturbance accompanied by physical injury, illness, or other physical consequences.[143]

In general, except for the tort of intentional infliction of emotional distress, **if a defendant's conduct is merely negligent and it causes only mental disturbance without a physical consequence, the defendant is not liable for the emotional injury**.[144]   While exceptions

---

[139] *Dennis v. Wiley,* 09-236 (La.App. 1 Cir. 9/11/09), 22 So.3d 189.

[140] *Barrino v. East Baton Rouge Parish School Bd.,* 96–1824 (La.App. 1 Cir. 6/20/97), 697 So.2d 27, 33.

[141] *Hardy v. Bowie,* 98–2821 (La.9/8/99), 744 So.2d 606, 613.

[142] *Barrino,* 697 So.2d at 33–34.

[143] *Duncan v. Bartholomew,* 2011-0855 (La.App. 4 Cir. 4/13/12), 88 So.3d 698.

[144] See, *e.g.*, *Kell v. Iberville Bank*, 352 F.Supp.3d 650, 664 (E. D. La. Nov. 7, 2018) (emphasis added).

to the general rule have been carved out, this is only in cases where there is the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious."[145]

None of the allegations made in the Plaintiffs' Amended Complaint as it pertains to the conduct of either Michael or Julia Sell give rise to a compensable claim for negligent infliction of emotional distress as defined by Louisiana courts. There are no allegations that any conduct of either Michael or Julia Sell resulted in any physical injury to any Plaintiff. As such, Louisiana law dictates that the Sells are not liable for any potential emotional injury absent a clear showing that they engaged in conduct that had an "especial likelihood or genuine and serious mental distress." None of the allegations made against he Sells are sufficient to meet this burden.

The Louisiana Supreme Court previously identified various types of cases involving "genuine and serious mental/emotional distress" so as to meet the above standard for recovery, including: negligent transmission of a telegraph message announcing death; mishandling of corpses; failure to maintain, install or repair consumer products; negligent damage to one's property while the plaintiffs were present and saw their property damaged; and instances of fright or nervous shock where the plaintiff was in great fear for his/her personal safety.[146] This list is not meant to be exhaustive, of course, but provides context as to what factual scenarios generally give rise to emotional distress claims resulting from a defendant's negligence.

There are three potential instances of "conduct" which purport to provide the factual basis for the emotional distress claims of Plaintiffs Owens and Lewis: 1) the Sells allegedly failing report pursuant to Title IX protocol; 2) an alleged in-person meeting between Owens' father and Julia Sell in Nashville, Tennessee; and 3) two alleged phone calls between Michael Sell and Lewis'

---

[145] *Moresi v. State through Dep't of Wildlife Fisheries*, 567 So.2d 1081, 1096 (La. 1990).
[146] *Id.*

father. It is critical to note that none of these three instances actually allege any communication between Michael or Julia Sell and either Owens or Lewis, themselves.  Alleged statements made (which are expressly denied) to the fathers of Owens and Lewis are insufficient to establish the causal link needed between the Sells' alleged conduct and the emotional damages allegedly sustained by Owens and Lewis.  Absent a connection between the Sells' conduct and the Plaintiffs themselves, there can be no recovery, as the examples provided by the Louisiana Supreme Court bear out. Thus, the allegations are insufficient to establish that Michael and/or Julia Sell conducted themselves in such a way as to cause compensable emotional distress to the Plaintiffs.

Further, an alleged failure to report under Title IX is not "conduct" at all, but arguably an omission which cannot meet the burden required to prevail on a claim for negligent infliction of emotional distress.  Even assuming, for argument's sake, that the Plaintiffs can "connect the dots" regarding causation, the conduct (allegedly disputing the veracity of the Plaintiffs' claims) does not create an "especial likelihood of genuine and serious mental distress" as required.

The allegations as pled by Plaintiffs Owens and Lewis contain no factual basis such as to support this essential element and are simply insufficient on their face to carry their burden. Further, none of the allegations asserted by Johnson demonstrate a possibility of genuine or serious mental distress as defined by the courts.  Johnson's claims are therefore, similarly without merit.

## XI.    **Plaintiffs Cannot Maintain Facially Plausible Cause of Action under Count XV for Intentional Infliction of Emotional Distress.**

Owens, Lewis, and Johnson also fail to plead facts in their Amended Complaint sufficient to maintain a cause of action for intentional infliction of emotional distress. In order to recover for intentional infliction of emotional distress, a plaintiff must establish:

(1)    that the conduct of the defendant was extreme and outrageous;

(2)    that the emotional distress suffered by the plaintiff was severe; and

(3)     that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[147]

Louisiana courts have set a very high threshold on conduct sufficient to sustain an intentional infliction of emotional distress claim, and the Louisiana Supreme Court has noted that court requires truly outrageous conduct before allowing a clam even to be presented to a jury.[148] **The conduct must be so outrageous in character and so extreme in degree, as to "go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community**."[149]  Thus, it is clear that a very high bar must be met for a plaintiff to prevail on a claim of intentional infliction of emotional distress.

There are no allegations presented by the Plaintiffs in their Amended Complaint that would remotely support a finding that either Michael or Julia Sell engaged in conduct that would be considered "extreme" or "outrageous."   The high bar to recover under a cause of action for intentional infliction of emotional distress has been described as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim, "Outrageous!"[150]

A failure to report pursuant to Title IX is not extreme or outrageous conduct. There is no jurisprudence stating that a person allegedly stating they would make someone cry, for example,

---

[147] *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991); *Prest v. La. Citizens Prop. Ins. Corp.*, 2012-0513 (La. 12/4/12), 125 So.3d 1079.
[148] *Nicholas v. Allstate Ins. Co.*, 99-2522 (La. 8/31/00), 765 So.2d 1017.
[149] *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991) (Emphasis added).
[150] Restatement (Second) of Torts 46, Comment D.

rises to this level either.  The allegations that Michael Sell purportedly told David Lewis by phone that his daughter's claims "could not be true" is, likewise, not considered by the courts to meet the "extreme", or "outrageous" standard, nor is any allegation that Julia Sell told Dan Owens in Nashville that she did not believe the claims of his daughter.

Furthermore, there are no allegations in the record which would support a finding that either Michael or Julia Sell intended to inflict emotional distress upon any Plaintiff nor do conversations with the parents of the Plaintiffs provide support for a finding that the Sells "knew" that "severe emotional distress" would be caused to either Abby Owens or Jade Lewis.  Without specific allegations that would support a cause of action for intentional infliction of emotional distress, this claim should be dismissed against Michael and Julia Sell.

## XII.    Plaintiffs' Cause of Action under Count XIX Should be Dismissed as Plaintiffs Have Failed to Allege Facts Sufficient to State a Plausible Claim.

Plaintiffs' Louisiana Racketeering Act Case Statement fails to sufficiently allege how the Sells' actions could have possibly violated any predicate acts required to maintain that claim and provides Defendants and this Court with nothing more than a recitation of the bald allegations already found in their Amended Complaint.

The Louisiana Racketeering Act in La. R.S. 15:1353 creates civil liability for four categories of conduct. First, it is unlawful for someone to knowingly receive proceeds derived from racketeering activity to then use those proceeds to operate an enterprise or to invest those proceeds in immovable property. Second, it is unlawful for a person to knowingly acquire through racketeering activity "any interest in or control of any enterprise or immovable property." Third, it is illegal for any employee or associate of the enterprise to knowingly conduct or participate in an enterprise through a pattern of racketeering activity. Fourth, it is illegal for someone to conspire

or attempt to violate any of the three abovementioned crimes.[151]

The Louisiana Racketeering Act is modeled after the federal RICO statutes.[152] Therefore, "federal decisions in this area are persuasive."[153] To state a claim under RICO and the Louisiana Racketeering Act, a plaintiff must allege the existence of: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.[154] In addition, the Louisiana Racketeering Act also requires that plaintiffs assert a connection to an enterprise and at least two predicate racketeering acts.[155] Plaintiffs assert in their Case Statement that the Sells are guilty of all four categories of illicit conduct under the Louisiana Racketeering Act.[156] The gist of Plaintiffs' racketeering claim is that the Sells were involved in an enterprise to cover-up incidents of sexual misconduct within LSU to protect the financial wellbeing of the LSU Athletics Department and themselves.

### A. Plaintiffs Owens, Lewis, and Johnson Lack Standing to Bring a Claim Under the Louisiana Racketeering Act.

Plaintiffs here lack standing to bring a Louisiana Racketeering Act claim as they do not allege any actionable injury or loss. The Louisiana Racketeering Act confers standing to a plaintiff "injured by reason of any violation of the provisions of R.S. 15:1353."[157] Plaintiffs Owens, Lewis, and Johnson allege damages as a result of a loss of future income;[158] however, La. R.S. 15:1356 does not provide standing for future damages, but only "any injury or loss having already

---

[151] *See* La. R.S. 15:1353(A)-(D).
[152] *See State v. Nine Sav. Accts.*, 553 So.2d 823, 825 (La. 1989).
[153] *Viking Construction Group, LLC v. Satterfield and Pontikes Construction Inc.*, 728 Fed.Appx. 405, 406 (5th Cir. 2018) (citing *State v. Touchet*, 759 So.2d 194, 197 (La. App. 3 Cir. 4/5/00)).
[154] *See Robertson v. Sun Life Financial*, 2017 WL 4226205, at *2 (E.D. La. Sept. 22, 2017) (*citing Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)).
[155] La. R.S. 15:1352-53.
[156] Plaintiffs' Louisiana Racketeering Act Case Statement pp. 19-22.
[157] *See* La. R.S. 15:1356.
[158] Plaintiffs' Louisiana Racketeering Act Case Statement pp. 36-38.

occurred."[159] Owens also alleges damages arising out of the loss of her scholarship, but the expectation of receiving a scholarship, once dismissed from the tennis team for testing positive for Adderall, is not the type of injury which can confer standing.[160]  Further, Owens does not allege that she was ever denied a scholarship to finish her studies at LSU.

Finally, the remainder of the damages asserted by Plaintiffs – expenses from medical treatment as a result of emotional distress and moving expenses – do not confer standing as the cause of these damages are too remote to establish causation. The United States Supreme Court has made clear that standing in a RICO civil suit only exists if the plaintiff has been injured *by reason of* the conduct constituting the violation.[161] To establish causation, a plaintiff must show that the predicate offense "not only was a 'but for' cause of his injury, but a proximate cause as well."[162] As explained by the district court in *Allstate Insurance Company v. Benhamou*, the United States Supreme Court has repeatedly stated that a plaintiff lacks standing to bring a racketeering claim when the proximate cause of the alleged harm is too attenuated from the predicate acts.[163]

Here, Plaintiffs cannot establish proximate cause for the alleged harms (medical expenses from emotional distress and moving expenses) as they are far too removed from the predicate acts alleged (money laundering, corrupt influencing, damaging public records, and intimidating witnesses). It is alleged that Julia Sell told Johnson to stop "worrying so much about other people" so that she would "be a better tennis player" in an alleged effort to influence Johnson to not report

---

[159] *Board of Sup'rs of Louisiana State University and Agr. And Mechanical College v. Guth*, 195 So.3d 579, 587 (La. App. 4 Cir. 5/25/15); *rev'd on other grounds*, 213 So.3d 390 (La. 2016) (while the Louisiana Supreme Court reversed the decision of the Fourth Circuit Court of Appeal because questions of material fact existed, the decision of the Fourth Circuit that plaintiffs did not have standing to bring a LRA claim was not expressly rejected by the Supreme Court.).

[160] Amended Complaint ¶196. *See Bowen v. Adidas America, Inc.*, 2021 WL 2141724, at *4 (D. S. C. May 26, 2021) (holding that "A RICO plaintiffs' claimed 'injury to mere expectancy interests or to an intangible property interest' cannot confer RICO standing.")

[161] *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285 (1985).

[162] *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 1318 (1992).

[163] 190 F.Supp. 3d 631, 644 (S.D. Tex June 2, 2016) (*citing Homes*, 503 U.S. at 271; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006); and *Hemi Group LLC v. City of New York*, 559 U.S. 1, 9-11 (2010)).

a crime, but Johnson's damages are for emotional distress, health care expenses, and loss of earning potential. Although the Sells deny these allegations even fit the crime of intimidating witnesses, the damages that Johnson alleges cannot be the proximate cause of Julia Sell simply remarking that Johnson should focus on training.

Again, Plaintiff Lewis argues, without merit, that Julia Sell committed the crime of intimidating witnesses by allegedly telling her former teammates "to stay away from Plaintiff Lewis." While Plaintiffs conclude, without any supportive facts whatsoever, that this was done to prevent teammates from coming forward about incidents of sexual misconduct, Lewis's damages are for a loss in earning potential, the costs of moving to New Zealand, and healthcare costs. It cannot be reasonably argued that these damages are the "but for" or proximate cause of Julia Sell's statement, especially in light of her graduation from LSU, her continued relationship with her abuser, and the slew of other potential causes.

The same is true for the crimes of corrupt influencing, money laundering, and injuring public record. Throughout the Case Statement, Plaintiffs' twist and distort the purpose of various criminal statutes in attempt to hang on to their Louisiana Racketeering claims, but they are unsuccessful in pleading facts which plausibly state a claim for how the conduct alleged could have caused Plaintiffs' racketeering damages, let alone the facts necessary to plausibly assert that the Sells have committed the predicate acts in the first place.

**B. Plaintiffs Fail to State Facts Sufficient to Prove that the Sells Committed the Predicate Acts.**

Plaintiffs fail to provide supportive factual information for their claims of money laundering, corrupt influencing, injuring public records, and intimidating witnesses. For example, Plaintiffs allege that "every instance of non-reporting is an intentional injury to the public

record."[164] According to the Plaintiffs, any time information is given to an employee of the state and not recorded, the employee has committed the crime of injuring public records under La. R.S. §14:132. <u>If this was the case, almost all state employees would be guilty of such a crime.</u> Such an absurd consequence indicates the alleged conduct is not the type of activity which this criminal statute intended to capture. Plaintiffs also fail to understand that in order for a public record to be "concealed," a record must exist. Receiving information about sexual misconduct is not a public record because nothing has been recorded. Further, Plaintiffs fail to state how this allegation fits the claims by Johnson, who made no reports regarding a hostile environment while at LSU.

Nor do Plaintiffs sufficiently allege the element of intent. This distortion of the law continues for the remaining three predicate acts which Plaintiffs allege the Sells are guilty of, but as the conduct alleged clearly does not fit the crime, Plaintiffs' have not sufficiently alleged facts required to make their claims plausible. As such, the Court should dismiss Plaintiffs' claims against the Sells in Count XIX under the Louisiana Racketeering Act.

### C. Plaintiffs Failed to Follow the Court's Order by Not Providing Sufficient Factual Information.

The Sells assert that Plaintiffs failed to comply with the Court's Louisiana Racketeering Act Order, the purpose of which was to provide further detail and provide information "with specificity" regarding Plaintiffs' Louisiana Racketeering claims.[165] In comparison to Plaintiffs' Case Statement, RICO case statements made in other cases before this Honorable Court provided dates, witness statements, and facts sufficient to determine whether an enterprise even existed.[166]

This Court ordered Plaintiffs to provide the dates for when each predicate act was committed. Plaintiffs failed to do so. This Court ordered Plaintiffs to describe the facts surrounding

---

[164] Plaintiffs' Case Statement page 47, note 36.
[165] Rec. Doc. 93.
[166] *See, e.g.,* Document 21 filed in *Shiell v. Jones et al*, 2020 WL 2331637 (E.D. La. May 11, 2020).

each predicate act. Plaintiffs repeated the allegations in the Amended Complaint and provided nothing new. Quite simply, almost no requested details regarding the predicate acts were delivered.

Instead, Plaintiffs claim that the Sells are liable under the Louisiana Racketeering Act for receiving an income pursuant to their employment and providing opportunities for students to obtain an LSU degree by offering athletic scholarships. These are not crimes. Therefore, the Court should dismiss all of Plaintiffs' claims under the Louisiana Racketeering Act asserted against the Sells as Plaintiffs have failed to comply with the Court's Order.

## XIII.  The Claims of Lewis, Johnson, and Owens Should be Dismissed as Untimely.

On the face of the Amended Complaint, the majority of the claims brought by Owens, Lewis, and Johnson against the Sells are untimely.  The original Complaint was filed by the Plaintiffs on April 26, 2021.  The Amended Complaint was filed on June 25, 2021.  In the Amended Complaint, Lewis, Johnson, and Owens assert a number of claims against the Sells all sounding in tort, each of which is subject to a one-year prescriptive period.  These include: (1) Count V, alleged violations of Title IX;[167] (2) Count VI – Count VIII, those claims arising under 42 U.S.C. §1983;[168] (4) Count IX, Conspiracy to Interfere with Civil Rights, arising under 42 U.S.C. §§ 1985, 1986;[169] and, (5) Counts XII -XV, claims arising under Louisiana Civil Code Article 2315 alleging, negligence, negligent supervision, negligent infliction of emotional distress and intentional infliction of emotional distress.[170]  All of these claims should be dismissed as untimely.

---

[167] *Sewell v. Monroe City Sch. Bd.,* 974 F.3d 577, 583 (5th Cir. 2020)(finding that Title IX claims are subject to state statutes of limitations for personal injury, which in Louisiana is one year), (*citing King-White v. Humble Indep. Sch. Dist.,* 803 F.3d 754, 759 (5th Cir. 2015)*; Griffin v. Round Rock Indep. Sch. Dist.,* 82 F.3d 414, 1996 WL 166999, at *1 (5th Cir. 1996) (unpublished per curiam).
[168] *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.,* 850 F.3d 731, 739 (5th Cir. 2017), *as revised*(the statute of limitations for §1983 is supplied by state law, so Louisiana's one-year prescriptive period applies).
[169] See *Balawajder v. Carpenter,* 992 F.2d 324 (5th Cir. 1993)(recognizing that the applicable statute of limitations for a claim arising under 42 U.S.C. §§ 1983 and 1985 is that of the forum state and that § 1986 has its own statute of limitations which requires commencement of a suit within one year after the cause of action accrues).
[170] See La.C.C.Art. 3492 providing that "delictual actions are subject to a liberative prescription of one year and that prescription commences to run from the day injury or damage is sustained.

A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred and the pleadings fail to raise some basis for tolling.[171]  "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,'" and while the limitations period is borrowed from state law, "the particular accrual date of a federal cause of action is a matter of federal law."[172] "[U]nder federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[173]

The Fifth Circuit has found that "[A] plaintiff's awareness encompasses two elements: (1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions."[174]  "'[A]wareness' [of the existence of the injury and causation] ... ***does not mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further***.'"[175] Thus, for awareness of causation, a plaintiff "must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection ... or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury."[176]  Further, "[a] plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, [sic] and is charged with the knowledge of all facts such an investigation would have disclosed."[177]

Although the burden of proof is normally on the party pleading prescription, if on the face

---

[171] *Taylor v. Bailey Tool Mfg. Co.,* 744 F.3d 944, 946 (5th Cir. 2014).
[172] *King–White,* 803 F.3d at 762 (quoting *Frame v. City of Arlington,* 657 F.3d 215, 238 (5th Cir. 2011)).
[173] *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)).
[174] *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)).
[175] *Id.* (quoting *Piotrowski*, 237 F.3d at 576) (emphasis added).
[176] *Harrison v. United States,* 708 F.2d 1023, 1027 (5th Cir. 1983).
[177] *Beckwith v. City of Houston*, 790 Fed.Appx. 568 (5th Cir. 2019)(citing *Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988)).

of the complaint it appears that prescription has run, ... <u>the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period</u>" based on the equitable doctrine of *contra non valentem*.[178]  The doctrine of *contra-non valentem* suspends prescription when the circumstances of the case fall into one of four categories: 1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; 2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; 3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or 4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.[179]

In this case, as discussed below, the claims of Owens, Lewis, and Johnson are prescribed on the face of the Amended Complaint.  However, it is anticipated that Plaintiffs will rely on the doctrine of *contra non valentem* to meet their burden and in an effort to defeat prescription. Specifically, it is suggested in the Amended Complaint that Plaintiffs were unaware of their causes of action "until the release of the [Husch Blackwell] Report."[180]

However, as recognized by the Plaintiffs themselves, the Husch Blackwell Report only address LSU's Title IX failures[181] and are unrelated to those other claims brought by the Plaintiffs, such as state court negligence claims arising under Louisiana Civil Code Article 2315.

As discussed in detail below, it is respectfully submitted that based on the allegations made by Owens, Lewis and Johnson in the Amended Complaint, the delictual causes of action subject

---

[178] *In re Taxotere (Docetaxel) Prod. Liab. Litig.,* 995 F.3d 384, 388–89 (5th Cir. 2021) (*citing Younger v. Marshall Indus. Inc.*, 618 So. 2d 866, 869 (La. 1993) (emphasis added).
[179] *Wimberly v, Gatch,* 635 So.2d 206, 211 (La. 1994).
[180] See Amended Complaint, ¶207 (Owens), ¶281 (Lewis), and ¶300 (Johnson).
[181] As stated above, the Husch Blackwell Report exonerates the Sells on these issues.

to one-year statute of limitations and/or prescriptive period should be dismissed as time-barred.

### A.    Abby Owens

Abby Owens' claims should have been filed at the latest by May 2020.   All actions upon which her claims arise began on June 28, 2016 when Owens alleges that she was raped by John Doe in June 2016 but admits that she disclosed the rape for the first time on or about **April 4, 2017** after taking a medical withdrawal from LSU and checking into a rehabilitation during her senior year.[182]   Owens then alleges that a rehabilitation official reported the sexual assault to LSU's Athletic Department and Owens' parents approximately one week later.[183]   Specifically, as to Julia Sell, it is alleged that in **late April 2017**, Owens' father reported the alleged rape to Julia Sell.[184] In response, Sell is alleged to have "never reported Owens rape to the police, the Title IX Office or any other entity."[185]   Further, Owens claims that in 2017 "no one at LSU offered Owens any support, resources, accommodations, or interim measures, failing to ensure that Owens could return safely to complete her degree."[186]   Therefore, as of April 2017, Owens had knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection ... or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury.

Further, Owens was aware of and actively investigating her potential causes of action by 2019.   Specifically, Owens admits that she "***learned about LSU's Title IX Office and their obligations in 2019 when she spoke with Jessica Luther, the reporter who covered her story.***"[187] On May 20, 2019, Owens requested a copy of her Title IX report from the Title IX Office.[188]

---

[182] See Amended Complaint, ¶¶193-197.
[183] See Amended Complaint, ¶197.
[184] See Amended Complaint, ¶198.
[185] See Amended Complaint, ¶ 199.  As stated, the Husch Blackwell Report has expressly debunked that claim.
[186] See Amended Complaint, ¶ 200.
[187] See Amended Complaint, ¶ 203.(emphasis added).
[188] See Amended Complaint, ¶ 203.

Owens then admits that on **May 22, 2019,** she was advised by Defendant, Stewart, who told her that "[Stewart] had heard about Owens' rape but decided not to move forward with an investigation since the Athletics' Department did not give her the name of the assailant."[189]

Based upon the foregoing, as of **May 22, 2019,** Owens was aware that LSU had taken no action in connection with her reported rape. Moreover, as to those allegations regarding Julia Sell, Owens admits that Julia Sell was advised of the rape and failed to report in **April 2017**. Lewis' father and certainly Lewis was aware at that time of this alleged failure to report. In waiting to file the lawsuit until April 26, 2021, Owens' claims based upon the one-year prescriptive period for Louisiana tort claims are time-barred and should be dismissed. These include all of Owens' claims.

### B.    Jade Lewis

The claims made by Jade Lewis as contained in the Amended Complaint are also prescribed on the face of the Complaint. All of the events involving Lewis upon which her claims are made occurred beginning in 2017 and ending in 2018 based upon a relationship with football player, John Coe. Specifically, as to the Sells, Lewis alleges that "**in the summer of 2017**" Lewis' father called Defendant, Michael Sell, on two occasions to share his concerns about his daughter's relationship with John Coe and allegedly informed Sell of an assault.[190] It is alleged that Michael Sell did not report the incident to the police, the Title IX Office, or any other entity and that "neither Defendant Michael Sell nor any other LSU employee offered Plaintiff Lewis any support, resources, accommodations, or interim measures, and no Title IX investigation was initiated."[191]

As to Julia Sell, Plaintiff Lewis alleges that "while the criminal case against John Coe was pending, Defendant, Julia Sell, instructed Plaintiff Lewis' former teammates on the tennis team to

---

[189] See Amended Complaint, ¶ 204.
[190] See Amended Complaint, ¶251. This claim has also been debunked by the Husch Blackwell Report.
[191] *Id.*

stay away from Plaintiff Lewis.  This admonition made Plaintiff Lewis feel alienated and isolated

from her teammates and closest friends during the time when she needed their support."[192]  Based

upon this allegation, as written, it is apparent that Lewis was aware of Julia Sell's alleged

"retaliation" against her **in 2018**.  Finally, and perhaps most tellingly, Plaintiff admits that:

> On October 18, 2018, Plaintiff Lewis' father sent letters to the National Collegiate
> Athletic Association ("NCAA") and SEC ***informing them that LSU officials had***
> ***repeatedly failed to take appropriate action after they were notified months***
> ***earlier that John Coe was abusing Plaintiff Lewis***.[193]

Thus, by Lewis' own admission, she was aware of the Sells' alleged wrongdoing and failure

to take action as of **October 18, 2018**, when Lewis' father felt it was necessary to contact the

NCAA to report LSU's failures. Based upon the foregoing, in waiting to file the lawsuit until April

26, 2021, Owens' claims based upon the one-year prescriptive period for Louisiana tort claims are

time-barred and should be dismissed.

## C.    Kennan Johnson

The events that provide a basis for Johnson claims allegedly occurred between May 8, 2017

when "Johnson got an official scholarship offer from LSU and achieved her lifelong dream of

becoming a member of the LSU Woman's tennis team"[194] and ended "when Johnson graduated

from LSU in Spring 2019."[195]  Shortly following her graduation, Johnsons admits that she "blocked

Defendant, Julia Sell's number, thus ending the relationship with her lifelong mentor."[196]  All of

the numerous allegations made against Julia Sell by Johnson occurred during Johnson's time at

LSU between 2017 and spring 2019.

Further, the allegations made by Johnson in these paragraphs suggest a pattern of alleged

---

[192] See Amended Complaint, ¶277. This claim has also been debunked by the Husch Blackwell Report.
[193] See Amended Complaint, ¶278. (emphasis added).
[194] See Amended Complaint, ¶285.
[195] See Amended Complaint, ¶299.
[196] See Amended Complaint, ¶299.

behavior by Julia Sell that supposedly directly negatively impacted Johnson. Johnson claims that Julia Sell's alleged harassment caused her to "starve herself", "severe anxiety," led to "throwing up regularly due to the nausea and anxiety" and was severe enough to cause her to seek help from a psychologist during that time period.[197]

It is evident from her allegations that Johnson was aware that her alleged injuries were caused directly by Julia Sell's alleged actions. Indeed, these alleged actions were sufficient enough for Johnson to block Julia Sell's phone number upon graduation in spring 2019 and seek the help of a psychologist. It is, thererfore, apparent that Johnson was aware of the alleged injuries caused by Julia Sell upon graduation in **spring 2019.** Thus, those causes of action listed above with a one-year statute of limitations should have been filed by no later than 2020 and should be dismissed as untimely.

## **CONCLUSION**

Ten Plaintiffs have filed multiple claims against Julia and Michael Sell in this lawsuit, alleging everything from racketeering, to conspiracy, to interference with civil rights, to First Amendment retaliation, to intentional infliction of emotional distress, and other negligence claims. Seven of these Plaintiffs fail to assert a single factual allegation in support of these claims. The remaining three Plaintiffs either make vague allegations or assert claims that are expressly debunked as unsupported, or untrue by the Husch Blackwell Report, included as part of Plaintiffs' Amended Complaint. Plaintiffs' claims are not facially plausible, are untimely, and do not meet the requirements set forth by the Federal Rules of Civil Procedure and related jurisprudence. Julia and Michel Sell, therefore, respectfully request that this Honorable Court dismiss all claims asserted by Plaintiffs against them with prejudice and for all other relief this Court deems equitable.

---

[197] See Amended Complaint, ¶¶ 287, 297.

Respectfully Submitted:


**JEFF LANDRY**
**ATTORNEY GENERAL**
**By:** **_/s/ Sidney W. Degan, III_**
**SIDNEY W. DEGAN, III (#04804)**
**KEITH A. KORNMAN (#23169)**
**JENA W. SMITH (#25255)**
Special Assistant Attorneys General
**DEGAN, BLANCHARD & NASH**
400 Poydras Street, Suite 2600
New Orleans, LA 70130
Telephone: (504) 529-3333
Facsimile: (505) 529-3337
sdegan@degan.com
kkornman@degan.com
jsmith@degan.com
**_Attorneys for Defendants,_**
**_Julia Sell and Michael Sell_**