# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.    *  CIVIL ACTION NO. 3:21-cv-00242
  *Plaintiffs*     *
         *
VERSUS        *  JUDGE WENDY B. VITTER
         *
LOUISIANA STATE UNIVERSITY, ET AL., *  MAGISTRATE JUDGE
  *Defendants*     *  SCOTT D. JOHNSON
         *

* * * * * * * * * * * * * *

## FIELDON "F" KING ALEXANDER'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)

MAY IT PLEASE THE COURT:

On June 25, 2021, the ten (10) Plaintiffs in this matter filed a *First Amended Class Action Complaint* ("Amended Complaint").[1]  In their *Amended Complaint*, Plaintiffs asserted approximately thirteen causes of action against defendant, Fieldon "F" King Alexander ("Mr. Alexander").  Specifically, Plaintiffs asserted claims for purported acts that are alleged to have constituted Title IX Retaliation, First Amendment Retaliation, Denial of Equal Protection, Denial of Procedural Due Process, Conspiracy to Interfere with Civil Rights, Negligence, Negligent Supervision, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, Bad Faith Breach of Contract, Civil Conspiracy, Louisiana Racketeering Act violations, and Enrichment Without Cause.[2]  For the reasons that follow, Plaintiffs have failed to plead any valid claims against Mr. Alexander upon which relief can be granted.  All claims should, therefore, be dismissed with prejudice.

## BACKGROUND

---

[1] *See* Record Document No. 22.
[2] *See* Record Document No. 22, pages 101, 104, 106, 108, 111, 116, 119, 121, 122, 123, 127, 136, and 141.

The ten (10) Plaintiffs in this matter are current or former Louisiana State University ("LSU") students, who attended school at LSU at various points in time between the years 2013 and 2021.[3]  Although the factual circumstances surrounding each Plaintiff's enrollment at LSU, as well as each Plaintiff's timeline and/or chain of events are vastly different, the overall crux of the case is the same.  That is, Plaintiffs believe that they were damaged due to LSU's alleged failure to comply with Title IX of the Education Amendments of 1972.[4]

Title IX, however, only gives the Plaintiffs' claims against LSU itself, as only LSU is the recipient of federal funds.[5]  As a result, Plaintiffs use the same factual allegations that support their Title IX claims, to also bring claims against various individuals who were, or still are, employed by LSU.  Mr. Alexander, who served as Chancellor and President of LSU from July 1, 2013 to December 31, 2019, is one such individual.[6]

 Plaintiffs, however, cannot sue Mr. Alexander just because he was Chancellor and President of LSU. A simple review of Plaintiffs' Amended Complaint, however, reveals that is exactly what Plaintiffs have done.  Specifically, Plaintiffs' 145-page Amended Complaint sets forth only two factual allegations concerning Mr. Alexander's conduct, while Mr. Alexander was employed by LSU.  The first allegation simply alleges that Mr. Alexander received a copy of a 2017 audit report generated by LSU's Office of Internal Audit, relative to the Oversight and Prevention of Sexual Misconduct.[7]  Allegation 85 reads as follows:

> 85. According to the audit report's distribution list, Defendants Alexander and Stewart received a copy on September 13, 2017.

---

[3] *See* Record Document No. 22, paragraph 2.
[4] *See* Record Document No. 22, paragraphs 1-10.
[5] *Fitzgerald v. Barnstable Sch. Cmte.,* 555 U.S. 246, 247, 129 S. Ct. 788, 791, 172 L. Ed. 2d 582 (2009).
[6] *See* Record Document No. 22, paragraph 33.
[7] *See* Record Document No. 22, paragraph 85.

The second allegation simply alleges that Mr. Alexander, as President of LSU, was responsible for ensuring that all LSU employees did their jobs.[8]  Allegation 410 reads,

> 410.    As President of LSU, Defendant Alexander would have set the tone from the top on the importance of Title IX and would have been responsible for ensuring the Title IX Coordinator and the Associate Vice President for Human Resource Management did their jobs.

All other references, in the Amended Complaint, as to Mr. Alexander are nothing more than legal conclusions or mischaracterizations of events that happened after Mr. Alexander left LSU. Because the bareboned allegations against Mr. Alexander are woefully inadequate in terms of supporting the legal claims set forth in the Amended Complaint, the claims against Mr. Alexander should be dismissed.   Additionally, Plaintiffs' claims also fail for additional reasons that are addressed in this brief.

## LAW AND ARGUMENT

I.    **Plaintiffs Have Failed to Plead Viable Claims Against F. King Alexander.**

A.    **Rule 12(b)(6) Standard for Plausibility.**

Under Federal Rule of Civil Procedure No. 8, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to the relief.[9]  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."[10]  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."[11]

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[12]  A claim has facial plausibility when

---

[8] *See* Record Document No. 22, paragraph 410.
[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).
[10] *Id.* at 678.
[11] *Id.* at 678.
[12] *Id.* at 678.

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[13]  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.[14]  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.[15]

### B. Plaintiffs have Failed to Plead Facts that Plausibly Support Their Legal Theories Against Mr. Alexander.

Plaintiffs have attempted to assert thirteen (13) claims against Mr. Alexander.[16] Because, however, Plaintiffs have failed to plead any factual content that could be used to reasonably infer violations of the referenced laws on the part of Mr. Alexander, Plaintiffs' complaint must be dismissed with prejudice. Mr. Alexander's entitlement to dismissal under each legal theory asserted will be addressed separately.

#### 1. Title IX Retaliation

The first claim asserted against Mr. Alexander is contained in Count V of the *Amended Complaint*.[17]  Due to the definition of "LSU Defendants" provided in paragraph forty-nine (49) of the *Amended Complaint*, it appears this claim is asserted against Mr. Alexander in his official capacity.

Title IX's implementing regulations prohibit the recipient of federal funds from retaliating against any individual who makes a complaint or participates in an investigation under Title IX.[18] To establish a prima facie case of unlawful retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered a material adverse action; and, (3) that a causal link exists

---

[13] *Id*. at 678.
[14] *Id*. at 678.
[15] *Id*. at 678.
[16] *See* Record Document No. 22, pages 101, 104, 106, 108, 111, 116, 119, 121, 122, 123, 127, 136, and 141.
[17] Record Document 22, beginning at paragraph 408.
[18] *Arceneaux v. Assumption Parish Sch. Bd.*, 242 F. Supp. 3d 486, 495 (E.D. La. 2017).

between the protected activity and the adverse action.[19]  The Plaintiffs have plead no facts or acts showing that Mr. Alexander took any adverse action against any of the Plaintiffs as a result of their reporting of alleged Title IX violations.  Plaintiffs do not allege that Mr. Alexander knew them, do not allege that Mr. Alexander knew about their complaints, do not allege that Mr. Alexander directed that retaliatory action be taken against them, and do not allege any retaliatory acts they allegedly sustained on Mr. Alexander's orders.  In sum, Plaintiffs sued Mr. Alexander simply because he was President and Chancellor of LSU.  This, however, does not give rise to a Title IX Retaliation against Mr. Alexander.

Dismissal is warranted on additional grounds.  The law is well settled in that "a plaintiff may bring a Title IX claim for damages or injunctive relief against an institution or program receiving federal funds, but the statute does not authorize suits against school officials, teachers or other individuals."[20]  Because Plaintiffs cannot bring Title IX claims against individual school officials, Plaintiffs' Title IX claims against Mr. Alexander must be dismissed.

If, however, Plaintiffs' Title IX claims are allowed to proceed against Mr. Alexander, then Mr. Alexander would be entitled to qualified immunity.  Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known.[21]  In assessing a claim of qualified immunity, a court must determine whether: (1) the plaintiffs have asserted a constitutional or statutory violation; (2) the law regarding the alleged violation was clearly established at the time of the operative events; and (3) the record shows that the violation occurred, or at least gives rise to "a genuine issue of material fact as to

---

[19] *Id.*
[20] *Id.* at 492; *see also Barnstable Sch. Cmte.*, 555 U.S. at 247.
[21] *Brown v. Nationsbank Corp.*, 188 F.3d 579, 587 (5th Cir. 1999).

whether the defendant actually engaged in conduct that violated the clearly-established law."[22] This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.[23]

Counsel is not aware of any cases finding a university's chancellor to be in violation of Title IX by virtue of it being the alleged responsibility of the chancellor to "set the tone" as to the importance of Title IX, as alleged by Plaintiffs. Consequently, even if Plaintiffs' Title IX claims survive all the above-briefed deficiencies, Mr. Alexander is still entitled to be dismissed under the doctrine of qualified immunity.

Finally, Plaintiffs' Title IX claims against Mr. Alexander are obviously prescribed. Title VI and Title IX are subject to state statutes of limitations for personal injury actions.[24] In Louisiana, the relevant prescription period is one year.[25] Because Plaintiffs' Original Complaint was filed on April 26, 2021, only claims for Title IX retaliation occurring between April 26, 2020 to present would be timely. As Plaintiffs themselves have admitted, Mr. Alexander's employment with LSU ended in December of 2019.[26] Consequently, Mr. Alexander could not have possibly retaliated against LSU students from April 26, 2020 and beyond, because Mr. Alexander was not employed or affiliated with LSU at that time.

Consequently, for all the reasons set forth above, Plaintiffs have not, and cannot, assert a plausible Title IX retaliation claim against Mr. Alexander. Consequently, Plaintiffs' Title IX Retaliation claims against Mr. Alexander must be dismissed with prejudice.

### 2.    First Amendment Retaliation

---

[22] *Id.*
[23] *Pearson v. Callahan*, 555 U.S. 223, 244, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).
[24] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020)
[25] *Id.*
[26] *See* Document 22, paragraph 33.

In Count VI of the *Amended Complaint*, Plaintiffs bring First Amendment Retaliation claims against Mr. Alexander.  These claims fail for many of the same reasons as the Title IX claims. To bring a First Amendment Retaliation claim, a plaintiff must prove: (1) they were engaged in constitutionally protected activity, (2) the defendant's actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct.[27]  Courts in this jurisdiction have consistently held that claims of mere threatening language or gestures of a state official do not, even if true, amount to constitutional violations.[28]  Citizens do not have a constitutional right to courteous treatment by the State.[29] Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983.[30]

Plaintiffs have failed to allege any retaliatory acts on the part of Mr. Alexander.  Again, Plaintiffs do not allege that Mr. Alexander knew them, do not allege that Mr. Alexander knew about their complaints, do not allege that Mr. Alexander directed that retaliatory action be taken against them, and do not allege any retaliatory acts they allegedly sustained on Mr. Alexander's orders.  In fact, no Plaintiff alleges that they ever came into any contact with Mr. Alexander. Consequently, Plaintiffs have failed to plead any facts that could plausibly support a claim that Mr. Alexander retaliated against any of them.

Additionally, Mr. Alexander is entitled to qualified immunity as to this claim.  Counsel is not aware of any cases finding a university's chancellor to be in violation of the First Amendment by virtue of the chancellor's alleged responsibility to "set the tone" as to the importance of Title

---

[27] *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 351 (5th Cir. 2017).
[28] *See, e.g., Norwood v. City of Hammond*, 2003 WL 1090253 (E.D. La. 2003).
[29] *Norwood v. City of Hammond*, 2003 WL 1090253 at *2 (E.D. La. 2003) (citation omitted).
[30] *Id.*

IX, as alleged by Plaintiffs, or resulting from the receipt of audit information concerning a university's Title IX office.  Consequently, even if Plaintiffs' First Amendment Retaliation claims survive the above deficiencies, Mr. Alexander is still entitled to be dismissed under qualified immunity.

As to the timeliness of Plaintiffs' First Amendment Retaliation claim, Section 1983 borrows the forum state's general personal injury limitations period.[31]  In Louisiana, delictual actions are subject to a liberative prescription period of one year.[32]  Federal law, however, governs when the cause of action accrues and dictates that the limitations period begins when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.[33]

Consequently, only First Amendment retaliation claims that accrued between April 26, 2020 to present, would be actionable.  Mr. Alexander, however, left employment with LSU in December 2019.  As a result, Mr. Alexander could not have committed any retaliatory acts against the Plaintiffs during the applicable period; nor have Plaintiffs alleged any acts on the part of Mr. Alexander.  Consequently, the First Amendment retaliation claims against Mr. Alexander should be dismissed with prejudice.

### 3.    Denial of Equal Protection

In Count VII of their *Amended Complaint*, Plaintiffs bring Equal Protection claims against Mr. Alexander.[34]  These claims fail for many of the same reasons as the claims discussed above. The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction

---

[31] *Daggs v. Ochsner LSU Health System*, 2021 WL 865412 (W.D. La. 2021).
[32] La. Civil Code article 3492.
[33] *Moreau v. St. Landry Parish Fire Dist. No. 3*, 413 F. Supp. 3d 550, 563 (W.D. La. 2019).
[34] See Document 22, paragraph 433.

the equal protection of the laws.[35]  To prevail on a claim of gender discrimination under the Equal Protection Clause, a plaintiff must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.[36]  "Discriminatory intent" means that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.[37]  As has been aptly summarized by the Eastern District in the *Arceneaux* case:

> A plaintiff bringing a claim under Title IX or § 1983 for a violation of the Equal Protection Clause, may use either direct or circumstantial evidence to prove that she was subjected to intentional discrimination. Portis v. First Nat'l Bank of New Albany, Miss., 34 F.3d 325, 328 (5th Cir. 1994). "'Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption.'" Id. at 328–29 (quoting Brown v. E. Miss. Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993)). "[D]irect evidence includes any statement or written document showing a discriminatory motive on its face." Id. at 329 (citations omitted). If a "plaintiff presents direct evidence of discrimination, 'the burden of proof shifts to the [defendant] to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C., 778 F.3d 473, 475 (5th Cir. 2015) (quoting Brown, 989 F.2d at 861).
>
> When there is no direct evidence of intentional discrimination, a plaintiff must prove her case by inference using the McDonnel Douglas burden-shifting analysis. Id. at 475. First, the plaintiff must establish a prima facie case of discrimination, which creates a presumption that the defendant unlawfully discriminated against the plaintiff. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. *494 Buisson v. Bd. of Supervisors of the La. Cmty. and Tech. Coll. Sys., 592 Fed.Appx. 237, 243 (5th Cir. 2014) (citing McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007)). "If the [defendant] articulates a legitimate reason for the adverse ... action, 'the plaintiff then bears the ultimate burden of proving that the [defendant's] proffered reason is not true but instead is a pretext for the real discriminatory ... purpose.'" Id. (quoting McCoy, 492 F.3d at 556).

---

[35] U.S. Const. amend. XIV, § 1.

[36] *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004).

[37] *Arceneaux v. Assumption Parish Sch. Bd.*, 242 F. Supp. 3d 486, 493 (E.D. La. 2017).

> To establish a prima facie case under the McDonnel Douglas framework, a plaintiff must demonstrate that: (1) she belongs to a protected class; (2) she met the defendant's qualifications for participation in the activity; (3) she suffered an adverse action; and (4) that others not in her protected class received more favorable treatment under similar circumstances. Buisson, 592 Fed.Appx. at 243 (citing McCoy, 492 F.3d at 556).

In this case at bar, Plaintiffs have not alleged that they were treated, in any manner whatsoever, by Mr. Alexander.  Thus, Plaintiffs have certainly failed to allege facts showing that Mr. Alexander treated them differently than any other student or group of students.  Furthermore, Plaintiffs have failed to allege any concrete facts demonstrating that any alleged unequal treatment by Mr. Alexander was on the basis of sex.  Quite the opposite, Plaintiffs' *Amended Complaint* is quite clear in that Plaintiffs believe they were retaliated against because they reported Title IX violations, and not because of their sex.  For example, Plaintiffs have not pled that males who made Title IX complaints were treated any better by Mr. Alexander.

Additionally, for the same reasons set forth above as to the dismissal of the other legal causes of action, Mr. Alexander would be entitled to qualified immunity as to Plaintiffs' equal protection claims.  Plaintiffs have also failed to plead any offending conduct on the part of Mr. Alexander falling within the prescriptive period.

### 4.    Procedural Due Process

In Count VIII of their *Amended Complaint*, Plaintiffs bring Procedural Due Process claims against Mr. Alexander.[38]  There are three principal elements to any procedural due process claim: the plaintiff must demonstrate that a state actor (1) deprived him (2) of life, liberty, or property (3) without due process of law.[39]  The first element limits the coverage of the Due Process Clause to losses that arise out of coercive and culpable state conduct.[40]  For example, when an individual

---

[38] *See* Document 22, paragraph 441.
[39] *Woodard v. Andrus*, 649 F. Supp. 2d 496, 505 (W.D. La. 2009).
[40] *Id.*

knowingly and voluntarily relinquishes a protected interest to a state actor, there has been no "deprivation" that might implicate the Fourteenth Amendment.[41]  Similarly, a negligent act that causes unintended injury to a person's property does not 'deprive' that person of property within the meaning of the Due Process Clause.[42]

 The second element goes to the object of the protections afforded by the Due Process Clause.[43] It is only when the state deprives an individual of a "protected interest"—that is, "life, liberty, or property"—that fair procedures are constitutionally mandated.[44]

The third element relates to the constitutionally required procedures that must attend any deprivation of life, liberty, or property.[45]  As the Supreme Court has noted, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.[46]  In determining whether an individual's due process rights have been violated, the courts must therefore ask "what process is due."[47]

Plaintiffs have failed to allege any facts showing that Mr. Alexander deprived them of anything.  Even if Mr. Alexander acted negligently (which is absolutely denied), a negligent injury to Plaintiffs' property would not satisfy the first element of a procedural due process claim. Additionally, the Plaintiffs have failed to allege any liberty or property interest of which Mr. Alexander deprived them.  Finally, Plaintiffs have failed to allege or describe what process Mr. Alexander himself was supposed to provide to Plaintiffs.  Consequently, Plaintiffs have failed to plead a procedural due process claim against Mr. Alexander.

---

[41] *Id*.
[42] Id.
[43] *Woodard v. Andrus*, 649 F. Supp. 2d 496, 505 (W.D. La. 2009).
[44] *Id*.
[45] *Id*.
[46] *Id*.
[47] *Id*.

Additionally, for the same reasons set forth above as to the dismissal of the other legal causes of action, Mr. Alexander would be entitled to qualified immunity as to Plaintiffs' procedural due process claims. Plaintiffs have also failed to plead any offending conduct on the part of Mr. Alexander falling within the applicable one-year prescriptive period.

### 5. Conspiracy to Interfere with Civil Rights

In Count IX of their *Amended Complaint*, Plaintiffs bring Conspiracy to Interfere with Civil Rights claims against Mr. Alexander.[48] The claims are, presumably, brought under 42 U.S.C. § 1985(c). Under § 1983, conspiracy can furnish the conceptual spring for imputing liability from one to another.[49] A conspiracy may also be used to furnish the requisite state action.[50] Yet it remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient.[51] Without a deprivation of a constitutional right or privilege, the defendant has no liability under § 1983.[52]

To assert a claim of conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.[53] Thus, a plaintiff must show that the conspiracy was motivated by class-based animus.[54] Importantly, the plaintiff must allege facts that suggest an agreement among the alleged co-conspirators.[55]

---

[48] *See* Document 22, paragraph 451.
[49] *Homeowner/Contractor Consultants, Inc. v. Ascension Parish Planning and Zoning Comm'n,* 32 F. Supp. 2d 384, 395 (M.D. La. 1999).
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Body by Cook, Inc. v. State Farm Mutual Ins. Co.,* 869 F.3d 381, 389 (5th Cir. 2017).

Plaintiffs have failed to allege any facts plausibly asserting an actual deprivation of Plaintiffs' constitutional rights by Mr. Alexander.  Plaintiffs have also failed to allege any facts supporting a conspiracy between Mr. Alexander and any acts in furtherance of a conspiracy by Mr. Alexander.  Nor have Plaintiffs alleged facts supporting the existence of any agreement involving Mr. Alexander.

Additionally, for the same reasons set forth above as to the dismissal of the other legal causes of action, Mr. Alexander would be entitled to qualified immunity as to Plaintiffs' conspiracy claims.  Plaintiffs have also failed to plead any offending conduct on the part of Mr. Alexander falling within the applicable one-year prescriptive period.

### 6.    Negligence

In Count XII of their *Amended Complaint*, Plaintiffs bring state law negligence claims against Mr. Alexander.[56]  In order to assert a claim for negligence, a plaintiff must provide: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).[57]

In sum, Plaintiffs claim they were damaged because LSU's response to their Title IX complaints were allegedly inadequate.  Plaintiffs, however, have not even alleged that Mr. Alexander had any responsibility or duty in terms of receiving Plaintiffs' Title IX complaints, investigating Plaintiffs' Title IX complaints, or even communicating with Plaintiffs as to their Title

---

[56] *See* Document 22, paragraph 479.
[57] *McKee v. Wal-Mart Stores, Inc.*, 2006-1672, p. 4 (La. App. 1st Cir. 6/8/07), 964 So. 2d 1008, 1011.

IX complaints.  In sum, Plaintiffs fail to allege that Mr. Alexander had any direct role or responsibility as to the investigation of their individual Title IX claims.  To the contrary, Plaintiffs concede that other individuals at LSU were responsible for the individual investigations of their Title IX complaints.  Consequently, Plaintiffs have neither specified a duty owed to each individual defendant on the part of Mr. Alexander nor any breach thereof.  Plaintiffs cannot simply impute alleged negligence in the handling of their Title IX complaints to Mr. Alexander, simply because Mr. Alexander was Chancellor and System President during a portion of the relevant  period.

Even if Plaintiffs' *Amended Complaint* is considered to have stated a cause of action for negligence, Mr. Alexander is still entitled to dismissal pursuant to Louisiana Revised Statute 9:2798.1.  The statute provides in pertinent part that:

> A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.

> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

***

Again, the only allegations asserted against Mr. Alexander, that involve acts that took place during Mr. Alexander's tenure at LSU, are receipt of an "audit report"[58] and failure to "set the tone"[59].

Although the above allegations are insufficient to support a negligence claim against Mr. Alexander, to the extent Plaintiffs are improperly attempting to infer that Mr. Alexander's policymaking or discretionary decisions were deficient, such acts clearly fall within the confines of La. R.S. § 9:2798.1 and require dismissal.  Plaintiffs have also failed to plead any offending

---

[58] *See* Document 22, paragraph 85.
[59] *See* Document 22, paragraph 410.

conduct on the part of Mr. Alexander falling within the applicable one-year prescriptive period for negligence.

### 7.    Negligent Supervision

In Count XIII of their *Amended Complaint*, Plaintiffs bring negligent supervision claims against Mr. Alexander.[60]    Plaintiffs refer, in part, to Louisiana Civil Code article 2030 for this count.    Article 2030, however, governs "Absolute Nullity of Contracts."    Presumably, Plaintiffs intended to refer to Louisiana Civil Code article 2320, which is entitled "Acts of Servants, Students or Apprentices."    Article 2320 is the primary source for vicarious liability in Louisiana, and provides in pertinent part that:

> Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
>
> Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
>                                           ***

And as our jurisprudence has explained, "under article 2320, employers are answerable for the damage caused by their employees in the exercise of the functions in which they are employed."[61] When determining whether the employer is liable for the acts of an employee, factors to be considered are whether the tortious act was: (1) primarily employment rooted; (2) reasonably incidental to the performance of the employee's duties; (3) occurred on the employer's premises; and (4) occurred during hours of employment.[62]

Plaintiffs' claims against Mr. Alexander fail as a matter of law for the simple reason that Mr. Alexander is not the employer of any of the other individuals or entities referenced in this

---

[60] *See* Document 22, paragraph 479.
[61] *Samuels v. Southern Baptist Hospital*, 594 So. 2d 571, 573 (La. App. 4th Cir. 2/13/92).
[62] *Id.*

count; and Plaintiffs have not alleged Mr. Alexander to be. Consequently, Mr. Alexander cannot be vicariously liable, under article 2320, for the acts of any other LSU employees.

To the extent Plaintiffs construe this count as an additional negligence claim against Mr. Alexander (note that Plaintiffs already asserted an ordinary negligence claim against Mr. Alexander in Count XII), Mr. Alexander reiterates his response to Count XII, which is contained above. Additionally, paragraph 492 of the *Amended Complaint* makes clear that Plaintiffs' arguments are that, because there were alleged failures in LSU's Title IX office and because the chain of command for LSU's Title IX office (much like every other office or department) can ultimately be traced to the Office of Chancellor, there must have been a failure to train every individual along every rung of the chain of command. Plaintiffs' legal conclusions cannot be accepted as fact. Rather, Plaintiffs should be required to plead sufficient facts demonstrating how Mr. Alexander allegedly failed to supervise, train, or monitor employees.

Although the above allegations are insufficient to support a negligence claim against Mr. Alexander, to the extent Plaintiffs are improperly attempting to infer that Mr. Alexander's policymaking or discretionary decisions were deficient in terms resources allocated to LSU's Title IX department, such acts clearly fall within the confines of La. R.S. § 9:2798.1 and require dismissal. Plaintiffs have also failed to plead any offending conduct on the part of Mr. Alexander falling within the applicable one-year prescriptive period for negligence.

### 8.    Negligent Infliction of Emotional Distress

In Count XIV of their *Amended Complaint*, Plaintiffs bring negligent infliction of emotional distress claims against Mr. Alexander.[63] Specifically, Plaintiffs allege negligent

---

[63] *See* Document 22, paragraph 497.

infliction of emotional distress "in their response to reports of sexual misconduct and lack of prevention of sex-based discrimination."[64]

A claim for negligent infliction of emotional distress unaccompanied by physical injury is viable under La. C.C. art. 2315.[65] A determination of liability for tort damages for mental anguish based on La. C.C. art. 2315 requires application of the duty-risk analysis.[66] For liability to attach under the duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element).[67] Additionally, a defendant's conduct must be outrageous or such that he knew or should have known his conduct would cause genuine and severe mental distress as judged in light of the effect such conduct would have on a person of ordinary sensibilities.[68]

Plaintiffs have not alleged that Mr. Alexander was responsible for receiving, investigating, processing, or deciding their Title IX complaints. Further, Plaintiffs have not alleged Mr. Alexander had any direct role in the administration of their individual complaints. Consequently, Plaintiffs have failed to identify a legal duty owed by Mr. Alexander to Plaintiffs in terms of the processing of the Title IX reports. Plaintiffs have also failed to plead any acts constituting a breach of any such duty on the part of Mr. Alexander. Most importantly, Plaintiffs have not pled any

---

[64] *See* Document 22, paragraph 498.
[65] *Holmes v. Lea*, 2017-1268 (La. App. 1st Cir. 5/18/18), 250 So. 3d 1004, 1014.
[66] *Id*.
[67] *Id*.
[68] *Id*.

"outrageous conduct" on the part of Mr. Alexander in terms of their individual Title IX complaints, which is necessary under *Lea*. Consequently, Plaintiffs have failed to plead facts that could plausibly assert a claim for negligent infliction of emotional distress against Mr. Alexander.

To the extent Plaintiffs attempt to rely upon any policymaking or discretionary decisions made by Mr. Alexander as to the funding or structure of LSU's offices or departments, such acts clearly fall within the confines of La. R.S. § 9:2798.1 and require dismissal. Plaintiffs have also failed to plead any offending conduct on the part of Mr. Alexander falling within the applicable one-year prescriptive period for a negligent infliction of emotional distress claim.

### 9.    Intentional Infliction of Emotional Distress

In Count XV of their *Amended Complaint*, Plaintiffs bring intentional infliction of emotional distress ("IIED") claims against Mr. Alexander.[69] Specifically, Plaintiffs allege intentional infliction of emotional distress against all defendants "in their response to reports of sexual misconduct."[70] To recover for IIED, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[71]

Additionally, the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.[72] Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.[73] Persons must necessarily be expected to be

---

[69] *See* Document 22, paragraph 504.
[70] *See* Document 22, paragraph 505.
[71] *White v. Monsanto*, 585 So. 2d 1205, 1209 (La. 1991).
[72] *Id.*
[73] *Id.*

hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind.[74]

 Plaintiffs have never alleged they ever had any interactions or dealings with Mr. Alexander.  Plaintiffs have not pled any facts demonstrating "extreme or outrageous" conduct on the part of Mr. Alexander.  Plaintiffs have not pled any facts demonstrating a desire on the part of Mr. Alexander to inflict severe emotional distress on them.  Moreover, Plaintiffs have never even alleged that Mr. Alexander was aware of their complaints.  Consequently, Plaintiffs have failed to plead a plausible claim for IIED against Mr. Alexander.

Considering Mr. Alexander's position as Chancellor and System President, Mr. Alexander's policymaking or discretionary decisions made as to the funding, structure, or staffing of LSU's various offices or departments would clearly fall within the confines of La. R.S. § 9:2798.1 and require dismissal.  Plaintiffs have also failed to plead any offending conduct on the part of Mr. Alexander falling within the applicable one-year prescriptive period for an IIED claim.

### 10.    Bad Faith Breach of Contract

In Count XVI of their *Amended Complaint*, Plaintiffs bring claims against Mr. Alexander for bad faith breach of contract.[75]  It goes without saying that for there to be a breach of contract, there must first be a contract.  A contract is defined under Louisiana law as an agreement by two or more parties whereby obligations are created, modified, or extinguished.[76]

In their *Amended Complaint*, Plaintiffs allege that LSU's Student Code of Conduct, Title IX Policy, Sexual Harassment Policy, and Equal Opportunity Policy constitute a contract.[77]  Even if that proposition is accepted as true, the alleged "contract" would be between LSU and its

---

[74] *Id.*
[75] *See* Document 22, paragraph 504.
[76] La. Civ. Code art. 1906.
[77] *See* Document 22, paragraph 522.

enrolled students.  The contract would not be between Mr. Alexander (or any other LSU employee) and enrolled students.  Because Plaintiffs have failed to plausibly plead the existence of a contract between Plaintiffs <u>and Mr. Alexander</u>, Plaintiffs claims must be dismissed.

### 11.    Civil Conspiracy

In Count XVII of their *Amended Complaint*, Plaintiffs bring claims against Mr. Alexander for civil conspiracy pursuant to La. C.C., article 2324.[78]  The article provides in pertinent part that "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."[79]  Louisiana law does not recognize an independent cause of action for civil conspiracy; rather, actionable element of relevant statute is intentional tort that conspirators agreed to commit and committed in whole or in part causing plaintiff's injury.[80]  In order to prevail on a claim of civil conspiracy, a plaintiff must establish a meeting of the minds or collusion between the parties for the purpose of committing a wrongdoing.[81]  To establish the existence of a civil conspiracy, a plaintiff must show that an agreement existed to commit an illegal or tortious act, which act was actually committed, which resulted in the plaintiff's injury, and there was an agreement as to the intended outcome or result.[82]

Plaintiffs have failed to plead any facts plausibly supporting their claims that Mr. Alexander agreed to commit, and in fact participated in the commission of, an intentional tort. Plaintiffs have likewise failed to plead facts plausibly supporting the existence of an agreement or conspiracy between Mr. Alexander and all other co-defendants, or that there was any agreement involving Mr. Alexander as to an intent to harm Plaintiffs.

---

[78] *See* Document 22, paragraph 504.
[79] La. Civ. Code art. 2324(A).
[80] *Rhyce v. Martin*, 173 F. Supp. 2d 521 (E.D. La. 2001).
[81] *Phillips v. Whittington*, 497 F. Supp. 3d 122, 167 (W.D. La. 2020).
[82] *Barbe v. Ocwen Loan Servicing, LLC*, 383 F.Supp.3d 634 (E.D.La.2019).

Considering Mr. Alexander's position as Chancellor and System President, Mr. Alexander's policymaking or discretionary decisions made as to the funding, structure, or staffing of LSU's various offices or departments would clearly fall within the confines of La. R.S. § 9:2798.1 and require dismissal. Plaintiffs have also failed to plead offending conduct on the part of Mr. Alexander within the applicable one-year prescriptive period for a conspiracy claim.

### 12.    Louisiana Racketeering Act

In Count XIX of their *Amended Complaint*, Plaintiffs bring claims against Mr. Alexander under the Louisiana Racketeering Act ("LRA").[83] Plaintiffs' *Amended Complaint*, however, failed to allege any acts or conduct specific to Mr. Alexander. Plaintiffs were, therefore, required by this Court to file a LRA Case Statement, which Plaintiffs filed on October 18th.[84] The Case Statement, however, fails to allege facts that could plausibly assert an LRA claim against Mr. Alexander.

First, Plaintiffs have not plausibly pled the commission of any racketing activity on the part of Mr. Alexander. Rather Plaintiffs simply plead that Mr. Alexander committed the following predicate acts: Public Intimidation, Intimidating Witnesses, Injuring Public Records, Maintaining False Records, Corrupt Influencing, and Money Laundering.

As per Louisiana Revised Statute § 14:122, public intimidation is "the use of violence, force, extortionate threats, or true threats…with the intent to influence his conduct in relation to his position, employment, or duty…." Plaintiffs have not alleged any facts or acts that even remotely imply or insinuate that Mr. Alexander used violence, force, or threats against anyone, at any time, and for any reason.[85] For example, who did Mr. Alexander supposedly threaten?

---

[83] *See* Document 22, paragraph 553.
[84] *See* Document 103.
[85] *See* Document 103, 40-42.

As per Louisiana Revised Statute § 14:129.1, the statute provides, in pertinent part, that no person shall intentionally:

(1) Intimidate or impede, by threat of force or force, or attempt to intimidate or impede, by threat of force or force, a witness or a member of his immediate family with intent to influence his testimony, his reporting of criminal conduct, or his appearance at a judicial proceeding;

(2) Injure or attempt to injure a witness in his person or property, or a member of his immediate family, with intent to influence his testimony, his reporting of criminal conduct, or his appearance at a judicial proceeding; or

Plaintiffs have not alleged any facts or acts that even remotely imply or insinuate that Mr. Alexander used force or threatened force, against anyone. Nor have Plaintiffs alleged any facts to support their contention that Mr. Alexander injured or attempted to injure a witness related to a judicial proceeding. Again, Plaintiffs have never alleged they had any contact with Mr. Alexander.

Louisiana Revised Statute § 14:132 defines the "injuring of public records" as:

A. First degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer.
B. Second degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, defined as a public record pursuant to R.S. 44:1 et seq. and required to be preserved in any public office or by any person or public officer pursuant to R.S. 44:36.

Plaintiffs have not alleged any facts that plausibly support the claim that Mr. Alexander intentionally "removed, mutilated, destroyed, altered, falsified, or concealed" any record or document.

As to the claimed violations of La. R.S. § 14:133, the statute provides that:

"Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:
(1) Any forged document.
(2) Any wrongfully altered document.

(3) Any document containing a false statement or false representation of a material fact.

Plaintiffs have not alleged that Mr. Alexander filed any records with any public office or official, have not alleged that Mr. Alexander maintained any records, and have not alleged that Mr. Alexander maintained or filed records that were forged, wrongfully altered, or false.

As to Plaintiffs' claims that Mr. Alexander was engaged in Money Laundering (La. R.S. § 14:230) and Corrupt Influencing (La. R.S. § 14:120), Plaintiffs rely upon two allegations respectfully: "LSU, Alexander, Alleva, and other participants made available the time and space of the Athletics Department to facilitate this Enterprise-sponsored training" and "LSU, Alexander, Alleva, and other participants made available the time and space of the Athletics Department to facilitate this Enterprise-sponsored training that benefitted the Enterprise.[86] The "enterprise-sponsored training" referred to in the two allegations was an alleged "inadequate" Title IX training allegedly paid for by TAF for the LSU Athletic Department.[87] Even if these allegations are true, which is denied, the allegations are clearly insufficient to constitute Money Laundering or Corrupt Influencing on the part of Mr. Alexander.

A defendant is not civilly liable under the LRA unless that defendant has engaged in fraud or other criminal conduct.[88] Plaintiffs have failed to plead even one fraudulent or criminal act by Mr. Alexander. Because at least two such acts are required under La. R.S. § 15:1352(C), Plaintiffs have failed to plead a pattern of racketeering activity on the part of Mr. Alexander.

Considering Mr. Alexander's position as Chancellor and System President, Mr. Alexander's policymaking or discretionary decisions made as to the funding, structure, or staffing

---

[86] *See* Document 103, pages 54 and 56.
[87] *See* Document 103, pages 54 and 56.
[88] *CamSoft Data Systems, Inc. v. Southern Electronics Supply, Inc.*, 2019 WL 2865256 (La. App. 1st Cir. 7/2/19).

of LSU's various offices or departments would clearly fall within the confines of La. R.S. § 9:2798.1 and require dismissal.

### 13.    Enrichment Without Cause

In Count XX of their *Amended Complaint*, Plaintiffs bring claims against Mr. Alexander for enrichment without cause.[89]  Louisiana Civil Code article 2298 provides in pertinent part that, "a person who has been enriched without cause at the expense of another person is bound to compensate that person."  The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law.[90]  Plaintiffs have failed to plead any facts demonstrating that Mr. Alexander was somehow enriched at the expense of Plaintiffs.

Considering Mr. Alexander's position as Chancellor and System President, Mr. Alexander's policymaking or discretionary decisions made as to the funding, structure, or staffing of LSU's various offices or departments would clearly fall within the confines of La. R.S. § 9:2798.1 and require dismissal.  Plaintiffs have also failed to plead any offending conduct on the part of Mr. Alexander falling within the applicable one-year prescriptive period for an unjust enrichment claim.

## II.    Amendment is Futile.

Because Plaintiffs have already filed an original complaint, *Amended Complaint*, and an LRA Case Statement, Plaintiffs have had ample opportunity to attempt to plead a cause of action against Mr. Alexander. And because Plaintiffs can't plead around Mr. Alexander's time-based and immunity-based arguments, amendment would be futile.

---

[89] *See* Document 22, paragraph 581.
[90] La. Civ. Code art. 2298.

**<u>Conclusion</u>**

Plaintiffs' *Amended Complaint* offers nothing more than labels, legal conclusions, and formulaic recitations of the elements of the Plaintiffs' legal theories. The pleading is simply devoid of the factual allegations necessary to plausibly support a cause of action against Mr. Alexander. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."[91] For those reasons, as well as the other reasons set forth in this memorandum, Mr. Alexander's motion to dismiss should be granted.

Finally, Mr. Alexander anticipates that numerous co-defendants will be filing motions to dismiss on the same date as this filing. Those motions will likely provide additional briefing and argument as to the legal deficiencies in Plaintiffs' *Amended Complaint*, which additional briefing and argument is likely to be applicable to the claims asserted against Mr. Alexander. As a result, Mr. Alexander respectfully adopts the legal arguments contained in co-defendants motions to dismiss, to the extent the arguments are applicable to the claims asserted against Mr. Alexander.

**JEFF LANDRY**
**ATTORNEY GENERAL**
**BY:**    */s/ Evan M. Alvarez*
**ALEJANDRO "AL" PERKINS (#30288)**
**Email: aperkins@hamsil.com**
**WAYNE T. STEWART (#30964)**
**Email: wstewart@hamsil.com**
**EVAN M. ALVAREZ (#31596)**
**Email: ealvarez@hamsil.com**
**Special Assistant Attorneys General**

**HAMMONDS, SILLS, ADKINS, GUICE**
**NOAH & PERKINS, LLP**
2431 S. Acadian Thruway, Suite 600
Baton Rouge, Louisiana 70808
Telephone: (225) 923-3462
Facsimile: (225) 923-0315

Counsel for Defendant, Fieldon "F" King Alexander

---

[91] *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).