UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ABBY OWENS, ET AL | : | **CIVIL ACTION NO. 3:21-cv-00242** |
| Plaintiff, | : | |
| | : | |
| VERSUS | : | JUDGE WENDY B. VITTER |
| | : | |
| | : | |
| LOUISIANA STATE UNIVERSITY, ET AL | : | MAG. JUDGE SCOTT D. JOHNSON |
| Defendants. | : | |

# MEMORANDUM IN SUPPORT OF "O" THE FINCH BOYZ'S MOTION TO DISMISS PURSUANT TO RULE TO 12(b)(6)

**MAY IT PLEASE THE COURT:**

Defendant, "O" The Rosy Finch Boyz, LLC ("**Finch Boyz**"), submits this Memorandum in Support of its Motion to Dismiss Pursuant to Rule 12(b)(6) in response to Plaintiffs' *Amended Class Action Complaint and Jury Demand* (R. Doc. 22) ("**Amended Complaint**"). For the reasons more fully set forth below, all purported causes of action in the Amended Complaint should be dismissed against Finch Boyz.

## I.    INTRODUCTION

The Amended Complaint is 145 pages and contains 589 paragraphs, plus subparts.  In addition to the Amended Complaint, the Plaintiffs have filed *Plaintiffs' Louisiana Racketeering Act Case Statement* (the "**LRA Statement**")(R. Doc. 103). The LRA Statement is an additional 66 pages.  Despite the length of the Plaintiffs' recitation of its various claims, there is a total dearth of factual allegations regarding Finch Boyz or any actions or inactions attributed to Finch Boyz.

Finch Boyz is identified in the Complaint as a limited liability company owned by Edward James Orgeron (hereinafter "**Orgeron**") and Kelly L. Orgeron.[1] Finch Boyz's only alleged

---

[1] Amended Complaint at ¶37.

relationship/involvement with LSU is through a contract for services entered with LSU on March 17, 2017. The contract is relative to LSU's hiring of Orgeron as LSU's head football coach, whereby Finch Boyz agreed to furnish the services of Orgeron in connection with "promoting, appearing on, or participating in … LSU-sanctioned television, radio, social media, and internet programs concerning LSU and the Program." (R. Doc. 22-2, pages, 6-8). There are no other substantive factual allegations regarding Finch Boyz that pertain, in any way, to the claims in the instant litigation.

The implausibility of the claims against Finch Boyz is apparent even from a cursory review of the Amended Complaint. Specifically, the Plaintiffs' claims are primarily claims for violations of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.* (the "**Title IX Claims**"). The Title IX Claims are the crux of Counts I, II, III, IV, and V in the Amended Complaint. *However, Finch Boyz is specifically excluded from the Title IX Claims and is not a defendant under Counts I, II, III, IV and V.*[2] Instead, through conclusory statements and shotgun pleading, Finch Boyz is joined as a defendant in this litigation although no cognizable cause of action has been stated against it. For the reasons set forth herein, all claims against Finch Boyz should be dismissed.

## II.    RULE 12(B)(6) MOTION TO DISMISS STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the pleading requirements to state a claim for relief. A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). The standard for the adequacy of complaints under Rule 8(a)(2) is one of "plausibility."[3] Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all

---

[2] The instant motion addresses those Counts where Finch Boyz is identified as a defendant.
[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

2197466.v1

the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555–56, 127 S. Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2).[4] The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[5]

In conjunction with Rule 8, Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *See Thompson v. City of Waco, Tex*., 764 F.3d 500, 503 (5th Cir. 2014). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.[6] However, the foregoing tenet is inapplicable to legal conclusions.[7] Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.[8]

Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the *Iqbal* and *Twombly* standard to survive such a motion.[9] If the complaint does not meet this standard, it can be dismissed. *See id*. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558.

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).
[5] *Id*. (quoting *Plotkin v. IP Axess, Inc*., 407 F.3d 690, 696 (5th Cir. 2005)).
[6] *Lormand v. US Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *Lovick v. Ritemoney, Ltd*., 378 F.3d 433, 437 (5th Cir. 2004)).
[7] *Iqbal*, 129 S. Ct. at 1949.
[8] *Id*. (citing *Twombly*, 550 U.S. at 555).
[9] *See Iqbal*, 556 U.S. at 678–79, 129 S. Ct. at 1949.

Plaintiffs' Amended Complaint and LRA Statement are hornbook examples of "thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements." All claims asserted against Finch Boyz should be dismissed, with prejudice.

## III.    COUNTS XII-XV – PLAINTIFFS' TORT CLAIMS

### A.  Plaintiffs' Complaint Fails to State a Claim for Negligence Against Finch Boyz

Plaintiffs assert various negligence claims against Finch Boyz under Louisiana Civil Code article 2315 (Count XII – General Negligence; Count XIII – Negligent Supervision; and Count XIV – Negligent Infliction of Emotional Distress).[10]  Under Louisiana law, to establish negligence of any kind, a plaintiff must prove five separate elements:

(1)  the existence of a duty to conform one's behavior to a specific standard;

(2)  the defendant failed to conform to that duty;

(3)  the conduct was a cause in fact of the plaintiff's injuries;

(4)  the conduct was a legal cause of the plaintiff's injuries; and

(5)  that actual damages resulted.[11]

Here, even the most favorable reading of the Amended Complaint demonstrates unequivocally that Plaintiffs have failed to state any claim for negligence against Finch Boyz. More specifically, there are no facts pled that would establish any duty on the part of Finch Boyz to any Plaintiff, nor are there any facts pled that would establish that Finch Boyz acted, or failed

---

[10] Plaintiffs' also reference La. C.C. art. 2030 in relation to their tort claims; however, that article governs the absolute nullity of contracts.  It is unclear what article 2030 has to do with any negligence claims. To the extent Plaintiffs intended to reference La. C.C. art. 2320, which governs vicarious liability (the liability of a master/employer for damage occasioned by their servants/employees), there is no basis for any such claims against Finch Boyz, as Plaintiffs have failed to plead any facts that would support a claim for vicarious liability against Finch Boyz.  Plaintiffs have not alleged Finch Boyz is responsible for negligent acts of agents or employees, or even that Finch Boyz has any agents or employees.

[11] *Roberts v. Benoit*, 605 So.2d 1032, 1051 (La.1991), *on reh'g* (May 28, 1992); *Hood v. Water Treatment & Controls Co.*, CV 16-235-SDD-RLB, 2017 WL 343897, at *2 (M.D. La. Jan. 23, 2017); *Webb v. Wells Fargo Home Mortgage, Inc.*, CV 18-1076-JWD-SDJ, 2020 WL 5836730, at *4 (M.D. La. Sept. 15, 2020), *report and recommendation adopted*, CV 18-1076-JWD-SDJ, 2020 WL 5824018 (M.D. La. Sept. 30, 2020).

to act, in a manner that caused injury to Plaintiffs.  Indeed, Plaintiffs' negligence claims do not contain a specific reference to any alleged duty, action, inaction, or conduct by Finch Boyz.

In paragraph 481 of the complaint, for instance, as part of Plaintiffs' general negligence claims (Count XII), Plaintiffs specify therein that "LSU Defendants and the Individual Defendants in their personal capacities" owed certain duties of reasonable care to Plaintiffs.  Then, in paragraph 482, Plaintiffs identify a specific duty of reasonable care on the part of defendant, TAF. There is, however, no corresponding paragraph regarding an alleged duty of reasonable care on the part of Finch Boyz. (R. Doc. 22, page 117, ¶ 483).  Similarly, with respect to Plaintiffs' claims for negligent supervision (Count XIII), there is no allegation that Finch Boyz attempted, undertook, or even owed a duty, to supervise any person(s) at LSU.  (R. Doc. 22, pages 119-120). Nor is there any specific allegation of a duty, or breach of a duty, on the part of Finch Boyz as it relates to plaintiffs' negligent infliction of emotional distress claims (Count IX).  (R. Doc. 22, pages 121-122).

Ultimately, in the 500+ paragraphs of Plaintiffs' complaint, there is not one allegation of an affirmative act by Finch Boyz that would support any negligence claim (whether general negligence, negligent supervision, or negligent infliction of emotional distress). The lack of any allegations specific to Finch Boyz is not surprising; however, given the nature of its limited contractual relationship with LSU and its lack of involvement with respect to the administration of the university, the athletic department, or the football team.  Indeed, Finch Boyz's only alleged relationship with LSU is through the contract referenced, *supra,* and attached to the Amended Complaint as Exhibit B. (R. Doc. 22-2).   There are no other duties or responsibilities on the part of Finch Boyz set forth in that contract. (R. Doc. 22-2, p. 3-5).

There is simply no factual allegation contained within Plaintiffs' complaint sufficient to state a cause of action for any kind of negligence against Finch Boyz. Plaintiffs' conclusory

2197466.v1

allegations that "All Defendants" were negligent and caused injury to Plaintiffs is insufficient to state a cause of action for negligence as to Finch Boyz. *See*, *Hood*, *supra* ("Plaintiffs' boiler plate pleading fails to specify a duty owed by [defendant] under Louisiana statutory] or jurisprudential law. Plaintiffs' failure to allege any specific duty owed, other than the conclusory allegation that [defendant's] alleged actions violated the entire body of Louisiana State and Ascension Parish law, is the exact type of "conclusory" pleading that the United States Supreme Court specifically held could not survive a 12(b)(6) motion to dismiss."). Accordingly, Plaintiffs have failed to state any claim for negligence against Finch Boyz, and those claims must be dismissed under FRCP 12(b)(6).

      **B.**      <u>Plaintiffs' Complaint Fails to State a Claim for Intentional Infliction of Emotional Distress Against Finch Boyz</u>

Plaintiffs also assert a claim for intentional infliction of emotional distress (Count XV). However, like with Plaintiffs' negligence claims, while Plaintiffs assert this claim against "All Defendants", there are no allegations specific to Finch Boyz.

To recover on a claim for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co*., 585 So.2d 1205, 1209 (La.1991). For the same reasons provided above relative to Plaintiffs' negligence claims, Plaintiffs have also failed to state a claim for intentional infliction of emotional distress.

Certainly, where Plaintiffs have not alleged any specific action or inaction of any kind on the part of Finch Boyz, Plaintiffs have also not alleged any facts to support a claim that Finch Boyz acted in an extreme or outrageous manner such that it intended/desired to cause emotional distress and harm to Plaintiffs. Accordingly, Plaintiffs have failed to state any claim for intentional

2197466.v1

infliction of emotional distress against Finch Boyz, and those claims must be dismissed under FRCP 12(b)(6).

### C.   Plaintiffs' Tort Claims Against Finch Boyz are Prescribed

Under Louisiana law, the prescriptive period for delictual actions, such as the instant claims, is one year.  La. C.C. art. 3492.  The one-year prescriptive period commences to run from the day injury or damage is sustained.  *Id.*; *Carter v. Matrixx Initiatives, Inc*., 391 Fed.Appx. 343, 345 (5th Cir.2010).  Damage is sustained within the meaning of Louisiana Civil Code article 3492 "when it has manifested itself with sufficient certainty to support accrual of a cause of action."[12]

Prescription may be raised in a Rule 12(b)(6) motion to dismiss.[13]  A prescriptive defense supports dismissal under 12(b)(6) "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[14]

For all the reasons discussed above (*i.e.*, the lack of any alleged facts supporting the existence of a duty or a breach thereof on the part of Finch Boyz), Finch Boyz maintains that Plaintiffs have failed to state a delictual claim of any kind against it.  Additionally, Finch Boyz submits here that any such claims (to the extent they exist) are also time-barred.

The original complaint in this matter was filed on April 26, 2021.  As shown below, while none of the Plaintiffs make any specific allegations as to Finch Boyz, all of the alleged injury-causing tortious activity described by Plaintiffs occurred well before a year prior to filing of the complaint:

- Calise Richardson – Alleged injury causing conduct from the fall of 2014 through the fall of 2018 (R. Doc. 22, pages 26-37);

---

[12] *Cormier v. Singh*, CV 17-1103-BAJ-EWD, 2019 WL 3024661, at *2 (M.D. La. June 17, 2019), *report and recommendation adopted*, CV 17-1103-BAJ-EWD, 2019 WL 3022194 (M.D. La. July 10, 2019).
[13] *See Tigert v. Am. Airlines Inc.,* 390 Fed.Appx. 357 (5th Cir. 2010) (affirming dismissal of time-barred claim under 12(b)(6)).
[14] *Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003); *Anderson v. City of New Orleans*, No. CIV.A. 03-3010, 2004 WL 1396325, at *3 (E.D. La. June 18, 2004) ("A complaint is subject to dismissal for failure to state a claim upon which relief can be granted if the prescriptive period has run.").

2197466.v1

- Ashlyn Robertson – Alleged injury causing conduct from January 2016 through January 2018 (R. Doc. 22, pages 37-41);

- Samantha Brennan – Alleged injury causing conduct from July 2016 through the fall of 2016 (R. Doc. 22, pages 41-43);

- Abby Owens – Alleged injury causing conduct from June 2016 through May 22, 2019 (R. Doc. 22, pages 45-47);

- Elisabeth Andres – Alleged injury causing conduct from October 2016 through October of 2019 (R. Doc. 22, pages 48-56);

- Jade Lewis – Alleged injury causing conduct from January 2017 through the fall of 2018 (R. Doc. 22, pages 56-65);

- Kenan Johnson – Alleged injury causing conduct from the fall of 2017 through the spring of 2019 (R. Doc. 22, pages 65-70);

- Jane Doe – Alleged injury causing conduct from October 2018 through December 2019 (R. Doc. 22, pages 70-75);

- Corinn Hovis – Alleged injury causing conduct in January of 2020 (R. Doc. 22, pages 75-77); and

- Sarah Kitch – Alleged injury causing conduct from 2009 through 2014 (R. Doc. 22, pages 79-81).

Because all of the injury causing conduct alleged by the named Plaintiffs occurred prior to April of 2020, each of the Plaintiffs' tort claims against Finch Boyz were prescribed prior to the filing of the original complaint on April 26, 2021. Thus, not only have the Plaintiffs failed to plead the facts necessary to assert any claims against Finch Boyz for either negligence or intentional infliction of emotional distress, those claims are also time-barred and must be dismissed.

## IV.    COUNT XVI – BAD FAITH BREACH OF CONTRACT

In Count XVI, Plaintiffs assert bad faith breach of contract claims against several defendants, including the "Orgeron Defendants[15]" which includes, by Plaintiffs' definition, Finch

---

[15] The "Orgeron Defendants" is a defined term in the Amended Complaint and includes Edward J. Orgeron and Finch Boyz, collectively.

2197466.v1

Boyz.  Plaintiffs, however, do not identify any agreement or contract that creates obligations in favor of Plaintiffs to which Finch Boyz is a party.

Plaintiffs' complaint describes Defendant LSU's Code of Student Conduct, Sexual Harassment Policy, Title IX Policy, and Equal Opportunity Policy as agreements which they contend set forth contractual obligations to all students at LSU, including Plaintiffs. (R. Doc. 22, pages 124-126).   There is no corresponding allegation, however, that any of those policies apply to Finch Boyz.  Again, as explained herein above, Finch Boyz's only contract with LSU is the March 17, 2017 contract relative to LSU's hiring of Orgeron as LSU's head football coach. Pursuant to that agreement, Finch Boyz merely agreed to furnish the services of Orgeron in connection with LSU-sanctioned television, radio, social media, and internet programs. There are no other duties or responsibilities on the part of Finch Boyz set forth in that contract.

Finch Boyz's obligations under the contract are owed exclusively to LSU, not LSU's students.  As such, even if Finch Boyz breached its contract with LSU (which it did not), that could not serve as the basis for any breach of contract claim by Plaintiffs in this matter.

Contrary to Plaintiffs' unsupported and conclusory allegations, at no time has Finch Boyz ever operated in any official capacity as an employee of LSU.  Plaintiffs' attempt to lump Finch Boyz in with Plaintiffs' claims against Orgeron by simply referring to "the Orgeron Defendants" is not supported by Finch Boyz's contract with LSU, nor is it supported by Louisiana law. See La. C.C. art. 24; *Ogea v. Merritt*, 13–1085 (La.12/10/13), 130 So.3d 888, 894–95 (Under Louisiana law, a limited liability company and its members are considered as being wholly separate persons.).

Simply put, Plaintiffs have failed to plead the existence of an agreement or contract that has been breached by Finch Boyz to Plaintiffs' detriment.  As such, Plaintiffs' complaint fails to state a claim for bad faith breach of contract as to Finch Boyz, and those claims must be dismissed.

2197466.v1

## V.   COUNTS VI-VIII – PLAINTIFFS' 42 U.S.C. § 1983 CLAIMS

### A.   Plaintiffs' Amended Complaint Fails to Allege Section 1983 Liability by a Private Company

In Counts VI-VIII, Plaintiffs' allege that Finch Boyz shares Section 1983 liability with the "LSU Defendants" and the "Individual Defendants" because "[a]t all relevant times, . . .  "O" The Rosy Finch Boyz, LLC are willful participants acting jointly with the other defendants in a conspiracy, the object of which was understood by all to be the deprivation of Plaintiffs' constitutional rights." (R. Doc. 22 at ¶¶ 424, 434, 442). This canned and conclusory language is repeated verbatim in each of the referenced paragraphs.  Such conclusionary allegations are mere "labels and conclusions," which do not meet the pleading standards of Rule 8(a)(2).

Section 1983 imposes liability upon any person who, acting under color of state law, deprives another of federally protected rights.[16] Alone, Section 1983 does not create any federally protected right, but it provides a cause of action for individuals to enforce federal rights created elsewhere, such as other federal statutes or the Constitution.[17]

To assert a claim for damages under this statute, a plaintiff must demonstrate (1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."[18] Thus, the general rule is that **private companies or individuals "are not considered to act under color of law, *i.e.*, are not considered state actors**."[19] However, a private company or citizen may be held liable under Section 1983 if that

---

[16] *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 972 F.Supp.2d 878, 883 (M.D. La.2013).
[17] *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) (Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.").
[18] *Am. Mfrs. Mut. Ins., Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (internal quotation marks and citation omitted); *Costanza v. Tchefuncte Harbour Ass'n, Inc*., 31 F.Supp.3d 849, 854 (E.D. La.2014).
[19] *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir.2005).

2197466.v1

citizen conspired with or acted in concert with state actors; the private citizen must be a "willful participant in joint activity with the State or its agents."[20] This test generally requires a plaintiff to allege a conspiracy between the private party and the state official or entity.[21] Here, the Plaintiffs have plead the labels of their purported claims, but none of the requisite facts.

Specifically, the Plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights.[22] The focus of the inquiry into whether a private actor can be subjected to constitutional liability is whether "such a close nexus between the State and the challenged action" exists "that seemingly private behavior may be fairly treated as that of the State itself."[23] Whether the conduct of private parties is state action depends upon the specific facts and circumstances surrounding the challenged action.[24] Allegations that are merely conclusory, without reference to specific facts, will not suffice.[25]

Here, the complaint provides only conclusory allegations and does not state a single specific factual allegation establishing that Finch Boyz conspired with a "state actor" to commit an illegal act. Further, Plaintiffs fail to establish causation; that is, there are no facts which support a causal connection between Finch Boyz and the unsupported deprivation of Plaintiffs' rights.

Count VI of Plaintiffs' complaint alleges that Finch Boyz "willfully participated" in a conspiracy with the LSU Defendants to violate the Plaintiffs' First Amendment rights due to retaliation in response to protected speech. (R. Doc. 22 at ¶ 424). However, Plaintiffs have not alleged specific facts supporting Finch Boyz' purported participation in such retaliation; that is because there are no such facts.

---

[20] *See Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir.2004) (citations omitted).

[21] *See, e.g.*, *Hey v. Irving*, 161 F .3d 7 (5th Cir.1998); *Hobbs v. Hawkins*, 968 F.2d 471, 480 (5th Cir.1992).

[22] *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994).

[23] *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (internal quotation omitted).

[24] *Albright v. Longview Police Dept.* 884 F.2d 835, 838 (5th Cir.1989) (citations omitted).

[25] *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir.1986); *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir.2004).

2197466.v1

Under Counts VII and VIII, the Plaintiffs further allege that Finch Boyz conspired to deprive them of their rights to equal protection and due process under the Fourteenth Amendment. (R. Doc. 22 at ¶¶ 434, 442). In the 500+ paragraph Amended Complaint, the Plaintiffs do not specifically set forth any "joint activity" with any state actors by Finch Boyz.

Under each Section 1983 claim, Plaintiffs make the same conclusory allegation that Finch Boyz "are willful participants acting jointly with the other defendants in a conspiracy, the object of which was understood by all to be the deprivation of Plaintiffs' constitutional rights." (R. Doc. 22 at ¶¶ 424, 434, 442). The Amended Complaint, however, does not impute any identifiable actions to Finch Boyz.[26]

Therefore, the Plaintiffs have not alleged a conspiracy between Finch Boyz and any state official or entity sufficient to plausibly plead liability under Section 1983 for a private company.

### B.    Plaintiffs' Claims of First Amendment Retaliation Are Not Adequately Pled Against Finch Boyz

In Paragraph 424 of the Amended Complaint, Plaintiffs' allege violations of 42 U.S.C. § 1983 "due to retaliation in response to protected speech," and again allege that  Finch Boyz "is a "willful participant[s] acting jointly with the other defendants in a conspiracy, the object of which was understood by all to be the deprivation of Plaintiffs' constitutional rights." There are no other allegations against Finch Boyz with respect to the First Amendment claims.

As a general rule, adverse government action taken in retaliation for the exercise of protected speech violates the First Amendment.[27] A "plaintiff must cross a certain threshold of harm before she can bring a claim for First Amendment retaliation." *Id.* at 513, n. 8. Mere false

---

[26] To the extent Plaintiffs attempt to impute the actions of Edward James Orgeron, Jr., owner of Finch Boyz, onto Finch Boyz, such imputation is violative of the Louisiana rules on limited liability companies. The LLC is a distinct legal entity (juridical person) separate and apart from its members. La. C.C. art. 24; La. R.S. 12:1303; *Ogea v. Merritt*, 2013-1085 (La. 12/10/13), 130 So. 3d 888, 894 (as a general proposition, the law considers an LLC and the member(s) comprising the LLC, as being wholly separate persons).

[27] *See Colson v. Grohman*, 174 F.3d 498 (5th Cir.1999); *Matherne v. Larpenter*, 54 F.Supp.2d 684, 687 (E.D. La.1999), *aff'd*, 216 F.3d 1079 (5th Cir.2000).

2197466.v1

accusations in retaliation for protected free speech do not give rise to a constitutional deprivation for purposes of the First Amendment. *Id*. at 510–12. "[R]etaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable under § 1983." *Id*. at 513.

In this case, Plaintiffs allege that LSU and other purported state actors, in an attempt "to regulate the content of Plaintiffs' speech by chilling an ordinary person from reporting sexual misconduct or voicing concerns about LSU's handling of student sexual misconduct and Title IX complaints" committed the following actions, *inter alia*, "failing to seriously investigate and/or appropriately report allegations of sexual abuse and/or misconduct; dismissing, laughing at, and/or shaming Plaintiffs when confiding in Defendants about their experiences of sexual misconduct; telling Plaintiffs' teammates to avoid them after they reported sexual misconduct; telling students they made the right choice in not reporting; and funding insufficient training on reporting rights of students." (R. Doc. 22 at ¶ 427). None of these actions specifically involve, or even mention, Finch Boyz.

The Amended Complaint does not explain what role Finch Boyz allegedly played in the challenged actions listed above. The Plaintiffs do not explain how Finch Boyz actively or willfully participated in the "chilling" of protected speech. Likewise, there is no allegation that Finch Boyz had an obligation to protect the Plaintiffs' first amendment rights.

The conclusory allegation alone that Finch Boyz "are willful participants acting jointly with the other defendants in a conspiracy" is not enough to survive a motion to dismiss. Therefore, the Court should dismiss the Plaintiffs' Section 1983 First Amendment claim against Finch Boyz.

C.    **Plaintiffs' Claims of Fourteenth Amendment Denial of Equal Protection Are Not Adequately Pled Against Finch Boyz**

In Paragraph 434 of the complaint, Plaintiffs' allege violations of 42 U.S.C. § 1983 "due to discrimination on the basis of sex that denied Plaintiffs equal protection under the law in

2197466.v1

violation of the Equal Protection Clause of the Fourteenth Amendment," and that Finch Boyz was a "willful participant[s] acting jointly with the other defendants in a conspiracy…." (R. Doc. 22 at ¶ 434). There are no other allegations related to Finch Boyz with respect to the Equal Protection Clause.

The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To prevail on a claim of gender discrimination under the Equal Protection Clause a plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent."[28] "Discriminatory intent" means " 'that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.' "[29]

In this case, Plaintiffs allege that LSU and other purported state actors, *inter alia*, "discriminated against Plaintiffs on the basis of sex by subjecting them to a hostile environment and failing to appropriately respond to and investigate reports of sexual misconduct" and that "female presenting and LGBTQ+ identifying students, like Plaintiffs," were "intentionally treated differently than similarly situated non-LGBTQ+ male presenting students for the purposes of maintaining the school's popular reputation and soliciting donor funds." (R. Doc. 22 at ¶¶ 436-37). Even in these overly generalized allegations, there is no allegation that Finch Boyz acted in concert or jointly with any other defendant to commit these alleged actions.

The Amended Complaint does not explain what role Finch Boyz allegedly played in the denial of equal protection. Plaintiffs' do not allege that Finch Boyz had the power to subject any Plaintiff or LSU student in general to a hostile environment. Plaintiffs' do not allege any facts to

---

[28] *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470 (5th Cir. 2001)); *see also Hinojosa v. Martinez*, 53 F.3d 1281 (5th Cir. 1995); *Arceneaux on Behalf of Rebekka A. v. Assumption Par. Sch. Bd.*, 242 F.Supp.3d 486, 493 (E.D. La.2017).
[29] *Id.* (quoting *Taylor*, 257 F.3d at 473).

support that Finch Boyz played any part or committed any illegal act in agreement with any state actor to treat "female presenting and LGBTQ+ identifying students" differently than "similarly situated non-LGBTQ+ male presenting students." The conclusory allegation that Finch Boyz was a "*willful participant acting jointly with the other defendants in a conspiracy*, falls woefully short of the pleading standard required to survive a Rule 12(b)(6) motion to dismiss.

### D.    Plaintiffs' Claims of Fourteenth Amendment Denial of Procedural Due Process Are Not Adequately Pled Against Finch Boyz

In Paragraph 442 of the Amended Complaint, Plaintiffs allege violations of 42 U.S.C. § 1983 "due to deprivation of their property and liberty interests without adequate notice or a meaningful opportunity to be heard in violation of the Due Process Clause of the Fourteenth Amendment," and that Finch Boyz was a "willful participant[s] acting jointly with the other defendants in a conspiracy, the object of which was understood by all to be the deprivation of Plaintiffs' constitutional rights." (R. Doc. 22 at ¶ 442). There are no other allegations against Finch Boyz with respect to the Procedural Due Process Clause.

The Due Process Clause of the Fourteenth Amendment declares that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."[30] "To prevail on a [procedural] due process claim, plaintiffs must [therefore] show that: (1) they possess a property interest that is protected by the due process clause, and (2) [the defendant's] procedures are constitutionally inadequate."[31]

---

[30] *Zinerman v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original); *Duhon v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, CV 20-2022, 2021 WL 3709519, at *5 (E.D. La. Aug. 20, 2021).
[31] *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008).

2197466.v1

The state action requirement reflects judicial recognition of fact that constitutional rights are protected only against infringement by the government.[32] Therefore, the proper defendants in a Section 1983 action are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it. *Id. (citing Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir.1995)).

Here, it is alleged that "certain Plaintiffs had no opportunity to be heard before being fraudulently told not to disclose the sexual misconduct," which "deprived Plaintiffs of their liberty and property interests in accessing educational opportunities and benefits." (R. Doc. 22 at ¶ 446). However, again, Plaintiffs fail to establish a causal connection between said violations of their due process rights and Finch Boyz.

There are no allegations that Finch Boyz owed any Plaintiff, any process of any kind. Plaintiffs do not allege that Finch Boyz instructed anyone to withhold incidents of sexual misconduct. Plaintiffs do not allege that Finch Boyz had any control over any Title IX investigation. The mere conclusory allegation that Finch Boyz are "willful participants acting jointly with the other defendants in a conspiracy" is wholly insufficient.

**E.    Plaintiffs' Section 1983 Claims Have Prescribed**

Nevertheless, to the extent Plaintiffs' Section 1983 claims are adequately pled (which they are not), those claims are prescribed under Louisiana's one-year prescriptive period. As detailed herein, the Plaintiffs' alleged injuries occurred at the earliest Fall of 2014 to the latest January of 2020 (see R. Doc. 22, pages 26-37; pages 37-41; pages 41-43; pages 45-47; pages 48-56; pages 56-65; pages 65-70; pages 70-75; pages 75-77; pages 79-81), and are, thus, prescribed under the liberative prescriptive period of one year for delictual actions.

---

[32] *Schmidt v. Principal Health Care of Louisiana, Inc.*, CIV.A. 96-1260, 1996 WL 264990, at *2 (E.D. La. May 16, 1996)(*citing United Auto Workers v. Gaston Festivals, Inc.*, 43 F.3d 902, 906 (4th Cir.1995)).

2197466.v1

Federal law does not establish a statute of limitations for Section 1983 claims; therefore, federal courts hearing Section 1983 claims must borrow a relevant statute of limitations from the forum state. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Rodriguez v. Holmes*, 963 F.2d 799, 803 (5th Cir. 1992). Section 1983 claims are best characterized as personal injury or delictual actions; therefore, federal courts borrow the forum state's law governing the prescription for delictual actions. *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).  In Louisiana, delictual actions are subject to a one-year prescriptive period, which runs from the day the injury is sustained. La. Civ. Code art. 3492.

For the reasons provided above, because all of the injury causing conduct alleged by the named Plaintiffs occurred prior to April of 2020, each of the Plaintiffs' Section 1983 claims against Finch Boyz were prescribed prior to the filing of the original complaint on April 26, 2021.

## VI.   COUNTS IX and XVII – PLAINTIFFS' CIVIL CONSPIRACY CLAIMS

### A.   Plaintiffs' Amended Complaint Fails to State a Claim for Conspiracy to Interfere With Civil Rights Against Finch Boyz

In Count IX, Plaintiffs seek "monetary compensation for past violations of constitutional rights from the Individual Defendants in their personal capacities, TAF, and Finch Boyz for the "Conspiracy to Interfere with Civil Rights" under 42 U.S.C. §§ 1985 and 1986. (R. Doc. 22 at ¶ 455). This is the only paragraph where Finch Boyz is named under Count IX. In order to plausibly plead a claim for conspiracy, there must be a claim of a constitutional violation on the part of Finch Boyz. As established above, Plaintiffs have failed to state a claim for a constitutional violation of the First and Fourteenth Amendments. For that reason alone, Plaintiffs' claim for conspiracy fails.[33]

---

[33] *Marchman v. Crawford*, 237 F.Supp.3d 408, 436 (W.D. La.2017), *aff'd*, 726 Fed.Appx. 978 (5th Cir.2018)("Logically, a plaintiff must state a claim for a constitutional violation to state a claim for a conspiracy to commit a constitutional violation under Section 1985; thus, the Court's decision that [plaintiff] has not stated a claim for a violation of either the First or Fourteenth Amendments means that she has also failed to state a claim under §

To the extent their Section 1983 claims are adequately pled (which they are not), Plaintiffs may recover under 42 U.S.C. § 1985 if they are injured as a result of a conspiracy to interfere with civil rights.[34] Subsection 3, applicable here, concerns the acts of two or more persons in conspiring to, deprive any person of certain rights. *Id*. To state a claim under 42 U.S.C. § 1985(3), Plaintiffs must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, either directly or indirectly, a person or class of persons of the equal protection of laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.[35] Plaintiffs must plead the operative facts upon which their claim is based. Mere conclusory allegations are insufficient. Equal specificity is required when a charge of conspiracy is made.[36]

By extension, if a plaintiff has not stated a claim for a conspiracy to commit a constitutional violation under Section 1985, then there can be no claim for a failure to prevent such a conspiracy under Section 1986.[37] In other words, to state a Section 1986 claim, a plaintiff must allege the existence of a conspiracy under Section 1985.[38] Section 1986 provides a cause of action against one who neglects to prevent a known civil rights conspiracy.[39]

Plaintiffs have failed to plead specific facts upon which the charge of conspiracy is based, have failed to allege facts sufficient to support their conspiracy theory, have failed to allege specific facts which demonstrate an agreement between Finch Boyz and any other defendant resulting in

---

1985" *citing  Farrar v. Bracamondes*, 332 F.Supp.2d 1126, 1131 (N.D. Ill. 2004) (when plaintiff has not established a deprivation of a federal right, he cannot establish a conspiracy to deprive him of a federal right under § 1985)).

[34] *Holdiness v. Stroud*, 808 F.2d 417, 424–425 (5th Cir.1987).

[35] *David v. Signal Int'l, LLC*, 37 F.Supp.3d 822, 833–34 (E.D. La.2014) (citing *Suttles v. U.S. Postal Serv.*, 927 F.Supp. 990, 1000–01 (S.D.Tex.1996)); *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Wong v. Stripling*, 881 F.2d 200, 202–203 (5th Cir.1989).

[36] *Holdiness*, 808 F.2d at 424 (citations omitted).

[37] *See Miss. Women's Med. Clinic v. McMillan*, 866 F.2d 788, 795 (5th Cir. 1989) (stating that the text of § 1986 itself dictates that there must be a valid § 1985 claim before there can be a valid § 1986 claim).

[38] *Rhyce v. Martin*, 173 F.Supp.2d 521, 532 (E.D. La.2001)*, citing Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir.1997) ("The text of § 1986 requires the existence of a § 1985 conspiracy.").

[39] *Id*.

the deprivation of Plaintiffs' rights, have failed to adequately allege a First Amendment retaliation claim, have failed to allege an equal protection or procedural due process claim, and have failed to show that Finch Boyz acted in furtherance of any alleged conspiracy. Not a single affirmative action in furtherance of the purported conspiracy is alleged in the 500+ paragraph Amended Complaint. Again, the conclusory allegation that the defendants conspired to "permit state actors to deprive Plaintiffs of Constitutional Rights to Free Speech, Due Process, and Equal Protection;" and that "[t]he defendants had knowledge that the wrongs conspired were to be committed and, having the power to prevent or aid in preventing commission of the same, neglected or refused to do so" (R.Doc. 22 at ¶ 452) cannot withstand a Rule 12(b)(6) motion to dismiss.

### B.    Plaintiffs' Complaint Fails to State a State Law Claim for Civil Conspiracy Against Finch Boyz

In Count XVII, Plaintiffs claim that "the Orgeron Defendants"—unlawfully conspired to violate their civil rights guaranteed by the State of Louisiana under La. C.C. art. 2324.

There is no general cause of action of civil conspiracy under Louisiana law.[40] Instead, Louisiana Civil Code article 2324 provides in pertinent part: "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."[41] In order to prevail on a claim of civil conspiracy, a plaintiff must establish a meeting of the minds or collusion between the parties for the purpose of committing a wrongdoing.[42]

The Louisiana Supreme Court has explained that Article 2324 "does not by itself impose liability for a civil conspiracy," for " '[t]he actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they

---

[40] *Phillips v. Whittington*, 497 F.Supp.3d 122, 167 (W.D. La.2020).
[41] *Id., citing* La. C.C. art. 2324.
[42] *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 2014-0323 (La. App. 4 Cir. 10/1/14), 151 So. 3d 670, 677 (citing *Guidry v. Bank of LaPlace*, 94-1758, p.9 (La. App. 4 Cir. 9/15/95), 661 So.2d 1052, 1058).

2197466.v1

actually commit in whole or in part.' "[43] In other words, a civil conspiracy is simply a means to impute liability for an underlying tort. *See id*. To establish the existence of a civil conspiracy, a plaintiff must show that "an agreement existed to commit an illegal or tortious act, which act was actually committed, which resulted in the plaintiff's injury, and there was an agreement as to the intended outcome or result."[44]

In this case, Plaintiffs allege that all defendants conspired "to systematically and fraudulently silence Plaintiffs and deprive them of their Constitutional and federal rights to protect the reputation and income of LSU athletics." The actionable element in a claim under article 2324 is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate. Here, because all of the underlying tort claims addressed above fail as a matter of law, the Plaintiffs also fail to state a claim of civil conspiracy against Finch Boyz. As previously discussed, Plaintiffs attempt to assert tort claims against Finch Boyz and fail because they have not plausibly alleged that Finch Boyz owes them any duty of any kind. As it stands, Plaintiffs merely allege that Finch Boyz was a party to a *conspiracy*—nothing more.

Significantly, the complaint never mentions that Finch Boyz entered into any agreement to commit an illegal or tortious act; that Finch Boyz actually committed an act; or that any agreement as to the intended outcome or result existed. Thus, Plaintiffs omit the critical elements of a conspiracy. In the absence of specific allegations supporting the existence of a conspiracy, Count XVII is deficient as pled.

---

[43] *Ross v. Conoco, Inc*., 828 So.2d 546, 552 (La. 2002) (*quoting Butz v. Lynch*, 710 So.2d 1171, 1174 (La. App. 1 Cir. 1998)).

[44] *Curole v. Delcambre*, 224 So.3d 1074, 1082 (La. App. 3 Cir. 2017); *Barbe v. Ocwen Loan Servicing, LLC*, 383 F.Supp.3d 634, 645–46 (E.D. La.2019); *Felder's Collision Parts, Inc. v. Gen. Motors Co*., 960 F.Supp.2d 617, 639 (M.D. La.2013).

2197466.v1

## C.    Plaintiffs' Civil Conspiracy Claims Have Prescribed

Nevertheless, to the extent Plaintiffs' conspiracy claims are adequately pled (which they are not), those claims are prescribed under Louisiana's one-year tort prescriptive period.

Like Section 1983, the Fifth Circuit applies the same one-year tort prescriptive period to Section 1985 claims in Louisiana.[45] Additionally, Section 1986 specifically states that actions brought under that provision must be commenced within one year of when the cause of action has accrued.[46]

Here, the conspiracy claims asserted in the complaint against Finch Boyz under 42 U.S.C. § 1985 and 1986 and Article 2324 are prescribed and should be dismissed because all of the injury causing conduct alleged by the Plaintiffs occurred prior to April of 2020—over one year before the complaint was filed.

## VII.    COUNT XIX – PLAINTIFFS' CIVIL VIOLATIONS OF THE LOUISIANA RACKETEERING ACT CLAIM

In the Amended Complaint, Plaintiffs originally asserted claims under the Federal Racketeer Influenced and Corrupt Organizations Act ("**Federal RICO**") and Louisiana Racketeering Act, La. R.S. 15:1351 (the "**LRA**").[47] As the Court is aware, when Plaintiffs were directed to file their Federal RICO statement, Plaintiffs voluntarily dismissed their Federal RICO claims.  Plaintiffs represented to the Court that the voluntary dismissal was "based upon [Plaintiffs'] counsel's Rule 11 diligence." (R. Doc. 90, Pg. 5)  The dismissal of the Federal RICO claims was appropriate inasmuch as "RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff."[48]  Indeed, "Congress

---

[45] *Burge v. Parish of St. Tammany*, 996 F.2d 786 (5th Cir.1993) (affirming application of one-year prescriptive period to Section 1985 claim).
[46] *See* 42 U.S.C. § 1986. *Mitchell v. Crescent River Port Pilots Ass'n*, 515 F.Supp.2d 666, 674–75 (E.D. La.2007), *aff'd*, 265 Fed.Appx. 363 (5th Cir.2008).
[47] Amended Complaint R. Doc. 22, at ¶¶ 535-580.
[48] *Oscar v. Univ. Students Co-op. Ass'n,* 965 F.2d 783, 786 (9th Cir.1992).

2197466.v1

was concerned in RICO with long-term criminal conduct."[49]    Thus, Plaintiffs attempt to reconfigure its prescribed tort and 1983 claims into Federal RICO claims was an ill-conceived strategy and was properly abandoned.

However, even after determining that their Federal RICO claims could not be asserted without violation of Rule 11, Plaintiffs continue to pursue their LRA claims which are based entirely on the same faulty "*facts.*" The LRA claims are inadequately plead and should be dismissed. Moreover, Rule 11 sanctions would be appropriate under these circumstances. Even in their 66 page LRA statement, Plaintiffs do not cure these defective claims but only exacerbate the inadequate nature of their attempt to invoke the LRA.

Pertinent here, the LRA is modeled after the Federal RICO Act.[50] Therefore, federal decisions regarding RICO are persuasive when interpreting the LRA.[51] Plaintiffs' LRA claims fail to satisfy any of requisite elements to state a cause of action.

A.    **Plaintiffs Do Not Allege Sufficient Facts to Support a Finding That Finch Boyz Committed Any "Racketeering Activity"**

The LRA states that "[a]ny person who is injured by reason of any violation of the provisions of R.S. 15:1353 shall have a cause of action **against any person engaged in racketeering activity** who violates a provision of R.S. 15:1353."[52] La. R.S. 15:1356(E). The plain language of the LRA establishes that one element of civil liability under the LRA is that the defendant **must have engaged in "racketeering activity."[53]** The LRA defines "racketeering activity" as committing, attempting to commit, conspiring to commit, or soliciting, coercing, or

---

[49] *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).

[50] *Meadaa v. K.A.P. Enterprises*, 09-1211 (W.D. La. 12/1/14), 2014 WL 6801636, at *6 (unpublished opinion).

[51] *Id*. citing *State v. Touchet,* 99-1416, p. 4 (La. App. 3d Cir. 4/5/00), 759 So.2d 194, 197.

[52] *CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc*., 2019-0745 (La. App. 1 Cir. 7/2/19), writ denied, 2019-01228 (La. 11/19/19), 282 So. 3d 1069.

[53] *See* La. R.S. 15:1356(E); *see also*, *Alack v. Jaybar, Inc***.,** 11-143 (E.D. La. 8/21/12), 2012 WL 13005346, at *6 (*citing* La. R.S. 15:1356); *De la Cruz v. Edwards*, 14-1729 (E.D. La. 11/13/15), 2015 WL 6696427, at *6 ("Section 1353 of the [LRA] sets forth the 'prohibited activities' under the statute, all of which are premised on the existence of a pattern of racketeering activity.").

intimidating another person to commit any crime which is punishable under one of the listed criminal provisions. La. R.S. 15:1352(A).  In RICO cases, the "racketeering activity" is referred to as the "predicate acts."

Here, Plaintiffs' LRA Statement identified the purported "Alleged Predicate Acts" as: (1) public intimidation and retaliation (La. Stat. § 14:122); (2) intimidating, impeding or injuring witnesses (La. Stat § 14:129.1); (3) Injuring Public Records (La. R.S. §14:132); (4) maintaining false public records (La. Stat. § 14:133); (5) corrupt influencing (La. Stat. § 14:120) and (6) money laundering (La. Stat. § 14:230).[54] Finch Boyz, however, was only alleged to have been a "participant" in four (4) of the alleged predicate acts. Even still, the allegations in the LRA Statement fall critically short as to Finch Boyz.

### 1.    Intimidating Witnesses

Finch Boyz is alleged in the LRA Statement to have participated in the violation of La. R.S. 14:129.1, Intimidating Witnesses. The LRA contains a five-page narrative regarding how certain defendants are alleged to have intimated certain witnesses.  Even as to the defendants identified in the narrative, the allegations fail to adequately allege a violation of the criminal statute.  Moreover, Finch Boyz is not even mentioned and no criminal behavior is attributed to Finch Boyz. Inclusion of Finch Boyz in this allegation is an overt breach of Rule 11. Finch Boyz is not alleged to have performed any "racketeering activity."

### 2.    Injuring Public Records

In the LRA Statement, Finch Boyz is alleged to have participated in the violation of La. R.S. 14:132, Injuring Public Records.[55] The referenced criminal statue prohibits the "intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document,

---

[54] LRA, R. Doc. 103, p. 40 of 66.
[55] LRA, R. Doc. 103, p. 47 of 66.

2197466.v1

or other thing" either filed in a public office or with a public officer, or defined as a public record and required to be preserved by the Public Records Law, La. R.S. 44:1, *et seq.*

Plaintiffs allege that Orgeron and Finch Boyz, "at a minimum, concealed from public records John Doe's rape of Plaintiff Robertson, and John Doe's Retaliation against Plaintiff Robertson." (LRA, pg. 49.) The Plaintiffs have failed to plead the obvious prerequisite for a claim related to "injuring public records" – *the existence of a public record*. There is no public record that is alleged to have been created or ever to have existed associated with this allegation. Plaintiffs' claim is more appropriately a *failure to create* a public record. This is not a violation of La. R.S. 14:132 and does not constitute racketeering activity. This allegation, again, violates Rule 11.

### 3.    Money Laundering

The Plaintiffs have also accused Finch Boyz of Money Laundering pursuant to La. R.S. 14:230 as a predicate act. The instant statute prohibits a person from being involved in any financial transactions "involving proceeds known to be derived from criminal activity." Here, all elements of the claim are deficient. The only allegation pertaining to Finch Boyz is that Finch Boyz received funds "derived from the Enterprise because…compensation…was directly connected with the performance of LSU athletics teams…."[56] This allegation is self-defeating. Indeed, if the "compensation" was generated and paid as a result of the performance of LSU athletic teams, then the proceeds were not "derived from criminal activity." Payment of "compensation" to Finch Boyz pursuant to its contract with LSU is not criminal and does not constitute a predicate act. The LRA Statement does not adequately identify or detail any money laundering, and certainly does not allege any action by Finch Boyz that would violate the pertinent statute.

---

[56] LRA, R. Doc. 103, p. 55 of 66.

2197466.v1

4.        **Corrupt Influencing**

Finally, Plaintiffs identified Finch Boyz as having violated La. R.S. 14:120, Corrupt Influencing. "[C]orrupt influencing is the <u>giving or offering</u> to give anything of apparent . . . value to . . . any person with the intention that the recipient shall corruptly influence the conduct of any [public employee] in relation to such person's position, employment or duty."[57] Here, Orgeron and Finch Boyz, are alleged to have "been paid millions of dollars by LSU and TAF" with the intention of influencing them.  At most, the LRA Statement alleges that Finch Boyz was *influenced*, not that Finch Boyz performed the "Corrupt Influencing."  Even if the allegation is accepted as written, Finch Boyz has not violated La. R.S. §14:120, by *receiving* funds, as that is not an act addressed by the pertinent statute.

Under any of the four purported predicate acts alleged against Finch Boyz, the Amended Complaint and the LRA Statement fail to adequately plead facts which establish the threshold element of Finch Boyz "racketeering activity."  Without these allegations, Plaintiffs do not have a civil cause of action under the LRA against Finch Boyz.

**B.        <u>Plaintiffs Fail to Allege Sufficient Facts to Support a Claim Pursuant to La.
        R.S. 15:1353 Against Finch Boyz</u>**

Even if the Court were to overlook the lack of "racketeering activity" alleged against Finch Boyz, the Amended Complaint also fails to satisfy the remaining elements of La. R.S. 15:1353 and its subparts.  Louisiana Rev. Stat. 15:1353, similar to 18 U.S.C.A. § 1962, makes four categories of conduct illegal.

First, under the LRA, "[i]t is unlawful for any person who has knowingly received any proceeds derived, directly or indirectly, from a pattern of racketeering activity to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the

---

[57] La. Stat. § 14:120(A).

investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in immovable property or in the establishment or operation of any enterprise." La. R.S. 15:1353(A).

In the LRA Statement, Plaintiffs allege that Finch Boyz knowingly received funds generated by the "Enterprise designed to protect and maximize the future revenue created by successful athletics programs by, *inter alia,* violating the rights of Sexual Misconduct victims through a pattern of racketeering activity," and that Finch Boyz "used and invested these funds to operate and further establish the Enterprise through its control of LSU's football program."[58]  No facts are pled in support of Plaintiffs' conclusions and generalizations that "Finch Boyz" used and invested funds in support of a criminal enterprise.  These conclusory allegations are wholly absurd and inadequate to state a cause of action.  This is precisely the type of "element" pleading which Rule 12(b)(6) does not countenance.

Second, under the LRA, it is also unlawful "for any person, through a pattern of racketeering activity, knowingly to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or immovable property." La. R.S. 15:1353(B). As referenced above, it is clear that *no* "racketeering activity" has been alleged against Finch Boyz and certainly no "pattern of racketeering activity."  Further, it has not been alleged that Finch Boyz exercised any modicum of control over any "enterprise or immovable property."  Given the limited scope of Finch Boyz contract with LSU, the notion of such and allegation is wholly implausible. Plaintiffs have failed to plead a violation of La. R.S. 15:1353(B).

Third, the LRA makes it unlawful "for any person employed by, or associated with, any enterprise knowingly to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." La. R.S. 15:1353(C). In the LRA Statement regarding Subsection

---

[58] LRA, R. Doc. 103, p. 5 of 66.

2197466.v1

(C), Plaintiffs merely recited the statutory language with no factual allegations.  This is insufficient to satisfy Rule 8 or 12(b)(6).

Lastly, under the LRA, it is unlawful "for any person to conspire or attempt to violate any of the provisions of Subsections A, B, or C of this Section." La. R.S. 15:1353(D). RICO contains similar provisions in 18 U.S.C.A. § 1962.2. In the LRA Statement, Plaintiffs aver that Finch Boyz conspired, "through its agents" with the other defendants herein to conduct the affairs of the Enterprise through a pattern of racketeering activity.  Here, again, the LRA Statement and the Amended Complaint only regurgitate the statutory elements of the cause of action without alleging any substantive facts regarding which unidentified "agent" of Finch Boyz is alleged to have participated in this vaguely described "conspiracy." To state a claim for RICO conspiracy, a plaintiff must "allege specifically such an agreement [to commit predicate acts]." *Abraham v. Singh,* 480 F3d 351, 357 (5th Cir. 2007)(citations omitted). Such an allegation must "specifically [allege] that the Defendants entered into an agreement and that each agreed to commit at least two predicate acts of racketeering." *Id.* Neither the Amended Complaint, nor the LRA Statement meet this requirement.  Here, Plaintiffs' buzzword pleading is insufficient under every element of the LRA.

### C.    Plaintiffs lack standing to assert an LRA claim Against Finch Boyz

The standing provision of the LRA provides "[a]ny person who is injured by reason of any violation of the provisions of R.S. 15:1353 shall have a cause of action against any person engaged in racketeering activity who violates a provision of R.S. 15:1353." However, not every injury to property is compensable under this section, because "RICO was intended to combat organized crime, not to provide a cause of action and treble damages to every tort plaintiff."[59] "Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient confer RICO

---

[59] *Oscar v. Univ. Students Co-op. Ass'n,* 965 F.2d 783, 786 (9th Cir.1992).

2197466.v1

standing."[60] Thus, an injury to property is "not actionable under RICO unless [it] result[s] in tangible financial loss to the plaintiff."[61] To sustain a RICO claim, plaintiffs must allege facts that could show that they sustained "a concrete financial loss, an actual loss of their own money, and not mere injury to a valuable intangible property interest."[62]

Here, Plaintiffs' alleged losses are not claims for "tangible financial losses" proximately caused by any alleged racketeering activity.  Rather, Plaintiffs have merely repackaged their tort and Title IX claims in the hopes of creating LRA liability.

With regard to causation -- "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."[63]  In other words, in order to state a claim under civil RICO, Plaintiffs must show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well."[64] Here, Finch Boyz has not been alleged to have committed any viable predicate offense and there can be no "causation." Regardless, the Amended Complaint and the LRA Statement never plead any facts which would create a causal connection between Finch Boyz's actions and Plaintiffs' "tangible financial losses" sufficient to satisfy any theory of proximate causation.

Simply put, Plaintiffs' LRA Claims should have been voluntarily dismissed along with their Federal RICO claims.  The instant motion to dismiss should be granted and Rule 11 sanctions should follow.

---

[60] *Price v. Pinnacle Brands, Inc*., 138 F.3d 602, 606 (5th Cir.1998).

[61] *Id*. at 785.

[62] *In re Taxable Mun. Bond Sec. Litig.,* 51 F.3d 518, 523 (5th Cir.1995) (citations omitted); *Fuller v. Harrah's Ent., Inc*., No. CIV.A. 04-2108, 2004 WL 2452771, at *2 (E.D. La. Oct. 29, 2004).

[63] *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461, 126 S.Ct. 1991, 1998, 164 L.Ed.2d 720, 731 (2006); *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 582 (1992). See also, *Waste Mgmt. of Louisiana, LLC v. River Birch, Inc.,* 920 F.3d 958, 965 (5th Cir.), cert. denied, 140 S.Ct. 628, 205 L.Ed.2d 390 (2019); *Rezner v. Bayerische Hypo-Und Vereinsbank AG,* 630 F.3d 866, 873 (9th Cir. 2010); *Jackson v. NAACP,* 546 F. Appx. 438, 442 (5th Cir. 2013).

[64] *Hemi Group, LLC v. City of New York, N.Y.,* 559 U.S. 1, 9, 130 S.Ct. 983, 987, 175 L.Ed.2d 943 (2010), citing *Holmes, supra*.

2197466.v1

## VIII.    <u>COUNT XX – PLAINTIFFS' ENRICHMENT WITHOUT CAUSE CLAIM</u>

In the Amended Complaint, Plaintiffs plead a claim for enrichment without cause, in the alternative.  This is strictly prohibited by Louisiana law. The existence of another remedy at law precludes an unjust enrichment claim. In *Walters v. MedSouth Record Management, LLC*, the Louisiana Supreme Court held that a plaintiff was precluded from seeking to recover pursuant to a claim for unjust enrichment because in his original petition he alleged that he had suffered harm as a "direct result of the negligent and tortious conduct" of the defendant. The court found that it was of no consequence that the plaintiff's tort claims had prescribed and held that "[b]ecause the law provided plaintiff with another remedy," the plaintiff had failed to state a cause of action for unjust enrichment. Here, although Plaintiffs have failed to state any other viable claims against Finch Boyz, it has brought numerous other counts and causes of action.  The important question is whether another remedy is available, not whether the party seeking a remedy will be successful.[65] The Louisiana Supreme Court and Louisiana Circuit Courts of Appeal have held that the existence of another remedy at law will preclude an unjust enrichment claim. Considering that Plaintiffs have pled numerous other claims against numerous other Defendants, they have another remedy at law and as such are precluded from seeking recovery on a claim of unjust enrichment.[66]

The Amended Complaint also fails to plead any of the other requisite elements of an unjust enrichment claim against Finch Boyz.  There are five elements to an unjust enrichment claim:

1.    There must be an enrichment.

2.    There must be an impoverishment.

3.    There must be a connection between the enrichment and impoverishment.

4.    There must be an absence of "justification" or "cause" for the enrichment and impoverishment.

---

[65] *Andretti Sports Mktg. Louisiana, LLC v. NOLA Motorsports Host Comm., Inc.,* No. CV 15-2167, 2015 WL 13540096, at *7–8 (E.D. La. Dec. 2, 2015).

[66] *Id.*

2197466.v1

     5.    The action will only be allowed when there is no other remedy at law.[67]

Finch Boyz is not alleged to have received any "enrichment" from Plaintiffs, nor is it alleged that Finch Boyz caused their alleged "impoverishment." There is no connection between any funds paid to Finch Boyz pursuant to its contract with LSU and Plaintiffs' alleged impoverishment. Specifically, none of the Plaintiffs paid anything to Finch Boyz and no amounts paid to Finch Boyz were otherwise due and payable to the Plaintiffs. Thus, there is a justification for the amounts paid to Finch Boyz. Every element of a cause of action for unjust enrichment is lacking from the Amended Complaint. Plaintiffs' alternative unjust enrichment claim should be dismissed, with prejudice.

## IX.   <u>CONCLUSION</u>

Defendant, "O" The Rosy Finch Boyz, LLC, prays that the Court grant its Motion to Dismiss, dismissing all claims asserted against it in the Amended Complaint, and as explained in the LRA Statement.

                          Respectfully submitted:

                          **BREAZEALE, SACHSE & WILSON, L.L.P.**
                          23rd Floor, One American Place
                          Post Office Box 3197
                          Baton Rouge, LA   70821-3197
                          Telephone (225) 387-4000
                          Telecopier (225) 381-8029

                          */s/ Carroll Devillier, Jr.*
                          Carroll Devillier, Jr. (La. Bar Roll #30477)
                          carroll.devillier@bswllp.com
                          David M. Charlton (La. Bar Roll #1759)
                          david.charlton@bswllp.com

                          *Attorneys for "O" The Rosy Finch Boyz*

---

[67] *Louisiana Workers' Compensation v. The Hartford And/or The Hartford Life Insurance Company,* 616 F. Supp. 2d 608 (M.D. La. 2008), citing *Minyard v. Curtis Products, Inc.,* 205 So.2d 422, 433, (La. 1967*); Edwards v. Conforto*, 636 So.2d 901 (La. 1993); La. C.C. Article 2298.

                                              2197466.v1