# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL**                    **CIVIL ACTION NO. 3:21-CV-00242**

**VERSUS**                              **JUDGE WENDY B. VITTER**

**LOUISIANA STATE UNIVERSITY,**          **MAGISTRATE JUDGE JOHNSON**
**ET AL**

## MEMORANDUM IN SUPPORT MOTION TO DISMISS ON BEHALF OF DEFENDANT, VERGE AUSBERRY

**MAY IT PLEASE THE COURT**:

**Verge Ausberry**, named defendant herein, submits the following memorandum in support of his *Motion to Dismiss* the claims asserted against him by **Abbie Owens, et al**, plaintiffs in this matter, and pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

The Original and Amended Class Action Complaints for Damage filed herein by the plaintiffs purport to assert the following causes of action against Mr. Ausberry:[1]

1.      20 U.S.C. § 1681 (Title IX) (retaliation)

2.      42 USC § 1983 – First Amendment retaliation

---

[1] The Complaints filed by the plaintiffs also assert several other causes of action against the various codefendants, but not Mr. Asuberry, which include the following: 1.20 U.S.C. § 1681 ("Title IX") (deliberate indifference)(hostile environment)(heightened risk)(erroneous outcome); Violation of Rehabilitation Act of 1973, 29 USC § 794; Violation of Americans With Disabilities Act, 42 USC § 12101; and Breach of Contract under Louisiana state law.

Furthermore, the Original and Amended Complaints initially purported to assert an allegation of a violation of the Racketeer Influence and Corrupt Organizations Act, 18 U.S.C. § 1962(c), against Mr. Ausberry, and the other defendants.  However, said claim and/or cause of action was dismissed by the plaintiffs on **September 7, 2021**, and <u>via</u> Notice of Dismissal as per Federal Rules of Civil Procedure Rule 41(a)(1)(A)(i) (Doc. No. 67).

1

3.     42 USC § 1983 – First Amendment denial of equal protection

4.     42 USC § 1983 – Fourth Amendment denial of due process

5.     42 USC § 1985 and 1986 – interference with civil rights

6.     Claim of negligence pursuant to La.C.C. Art. 2315

7.     Claim of negligent supervision pursuant to La.C.C. Arts. 2315 and 2030

8.     Claim of negligent infliction of emotional distress pursuant to La.C.C. Art. 2315

9.     Claim of intentional infliction of emotional distress pursuant to La.C.C. Art. 2315

10.    Claim of civil conspiracy pursuant to La.C.C. Art. 2324

11.    Violation of the Louisiana Racketeering Act ("LRA"), La.R.S. 15:1351

12.    Enrichment without cause, La.C.C. Art. 2298

Unfortunately for plaintiffs, the Original and Amended Complaints fail to state any plausible claims against Mr. Ausberry, inasmuch as:

1.  Title IX does not authorize suit against individuals who serve as school officials; these Title IX claims otherwise are time barred as well;

2.  Plaintiff's alleged causes of action pursuant to the Louisiana Racketeering Act is vague, fails to state any allegations of criminal activity, and/or fails to show a pattern of racketeering activity on the part of Mr. Ausberry, much less conduct or control of an enterprise;

3.  Claims under 42 USC § 1983 or 1985/1986 require a demonstration of intentional acts on the part of the actor for purposes of violating, or conspiring to violate, an individual's civil rights, and there are no allegations contained within the Complaints to state such a cause of action as to Mr. Ausberry; they also are time-barred;

4.  The state law claims of negligence, negligent supervision and the intentional or negligent infliction of emotional distress are so intertwined to the Title IX claim so as to be subsumed by them.  Also, there is no jurisprudential support for the notion that Mr. Ausberry owed and/or breached a duty to the plaintiffs to report and/or investigate their claim that does not wholly emanate out of the provisions of Title IX – that is, the plaintiff's claims are to be heard under Title IX, and are not found in Louisiana tort law; these claims likewise are time-barred;

5.  An equitable claim of enrichment without cause in Louisiana is not viable if there are other causes of action through which plaintiffs may seek their respectively-claimed relief, which exists here (namely, Title IX); and

6.  The plaintiffs' state law claims are barred by the application of sovereign immunity in favor of Mr. Ausberry, in his official capacity, pursuant to the 11th Amendment of the United States Constitution.

## **FACTUAL BACKGROUND**

The Original and Amended Class Action Complaints (Doc Nos. 1 and 22) filed herein by the named plaintiffs assert 20 counts of alleged violations of the United States Constitution, Title IX, and Louisiana state law, including the Louisiana Racketeering Act ("LRA") against several defendants, all of whom are in some way related in an official capacity to Louisiana State University.  12 of the counts are asserted against defendant, Verge Ausberry, who at all relevant times served as the University's Executive Deputy Athletic Director.  Mr. Ausberry is named as a defendant in his official and personal capacities.

The 10 named plaintiffs, who are all alleged to be former or current students at the University, claim to have been injured and/or damaged as the result of acts of sexual harassment and/or misconduct committed by other students and/or LSU officials at some point from 2013-2021, along with claims of systemic issues in response to said reports/complaints of sexual misconduct; their respective allegations as asserted in the First Amended Complaint can be briefly summarized as follows:

**Calise Richardson**

Ms. Richardson alleges that as a student and a member of the recruiting staff of LSU's football team from September 2014 to January 2017 (¶110), she was subjected to sexual assault and abuse.  This included a rape which occurred in the Fall of 2015.  She contends that she often was offered as a sexual object to potential recruits.  She states that she reported the abuse to

defendants, Sharon Lewis and Keva Soil Cormier, but to no avail.  She contends that neither individual reported the incident to the Title IX office, and she was not provided any support, resources or interim measures.  She also claims that she was subjected to retaliation for reporting the abuse, including being denied job opportunities within the Football Department.

As it relates to Mr. Ausberry, she contends that she also reported the abuse to Mr. Ausberry in or about Fall 2018, whom she described as her mentor, because she understood that her claimed abuser also committed acts of sexual abuse upon co-plaintiff, Jade Lewis. (¶146)  She contends that Mr. Ausberry did not allow her to report the alleged abuse to him, but instead directed her to report the abuse to defendant Miriam Segar, Senior Associate Athletic Director. (*Id.*)

**Ashlyn Robertson**

Ms. Robertson alleges that she was a student at LSU beginning the Fall 2015 semester. (¶156)  She alleges that she was sexually assaulted/raped by a member of the LSU Football team in or about January 22, 2016.  She claims that she visited the LSU Student Health Center a few days after the incident, as was told it was better to not pursue an investigation.  She also claims that she initially denied wanting to pursue a Title IX investigation (¶164), but shortly thereafter and in or about May 2016, she was subjected to retaliation by said John Doe, who has also alleged to have sexually assaulted co-plaintiffs, Abby Owens and Samantha Brennan (¶166). She contends that certain defendants knew of the incident but never reported same to the University's Title IX office or any other entity. (¶170)  She claims that she withdrew from LSU in or about September 2017. (¶173)

**Samantha Brennan**

Ms. Brennan contends that she was drugged and sexually harassed by a member of the LSU Football Team in or about July 2016.  She claims to have reported this incident to defendants Lewis and Segar, whom she contends had actual knowledge of the individual's rape of at least one other student, i.e., co-plaintiff Robertson (¶181).  She contends that defendant Lewis, despite her requests, did not handle the claim internally but instead reported it to the LSU Police Department.   Ms. Brennan contends that she has never received any notice from LSU about whether a Title IX investigation was conducted, which left her feeling humiliated and shamed. (¶185)

**Abby Owens**

Ms. Owens also alleges sexual assault and rape against an LSU football player to have occurred in or about June 2016. (¶195)  She contends that she was afraid to report the rape, which she contends exacerbated a substance abuse problem that she had developed as a result of a prior abusive relationship.  She contends that she disclosed to a rehabilitation center official that she been raped by the individual, which official then reported the sexual assault to LSU's Athletic Department. (¶197)  Ms. Owens contends that she was never contacted by anyone at LSU's Title IX office. (*Id.*)  She also contends that she reported the incident to her tennis coach, defendant Julia Sell, whom, she contends, stated that she did not believe that Owens had been raped, and did not report same to any on-campus authorities. (¶199)  She also contends that defendant Stewart told her that she had heard about the alleged incident, but decided not to move forward with an investigation since the Athletic Department not provide her with the name of the assailant. (¶204)

**Elisabeth Andries**

Ms. Andries alleges an incident of sexual assault against an LSU student, which occurred in or about Fall 2016. (¶212) She alleges that she was forcefully groped by a student. She also alleges that this individual attempted a second assault in the Summer of 2017, (¶214) which caused her to experience panic attacks. She contends that the report resulted in the individual being deemed as violating LSU's Title IX policy in or about June 2019, but no significant penalties were issued; indeed, he continued to remain on campus and even enrolled in classes with Ms. Andries. (¶¶226 and 241)

**Jade Lewis**

Jade Lewis was a member of LSU's Women's Varsity Tennis team, and sometime in January, 2017, allegedly began a romantic relationship with an individual on the football team, whom she alleged became abusive to the point of physically assaulting (¶246). She contends to have reported the abuse to the team's athletic trainers, but to her knowledge, her incident was not reported to the police, LSU's Title IX office or any other entity (¶250). She contends that LSU did not respond to her reports of abuse until nearly a year later, at which point another incident of abuse occurred which resulted in the fracturing of her ribs, and at the hands of the aforesaid individual football player. (¶252)

As it relates to defendant, Ausberry, Ms. Lewis alleges that in or about April 2018, defendant Ausberry was informed by her abuser of the incident – i.e., that he purportedly admitted to Ausberry of punching Ms. Lewis in the stomach – and that defendant Ausberry also was aware of this individual's prior pattern of violent abuse as a result of plaintiff Richardson's reporting; yet, she claims, defendant Ausberry did not report this incident to the police, Title IX office or any other entity. (¶253)

**Kennan Johnson**

Ms. Johnson likewise was a member of the LSU Women's Varsity Tennis team. She contends that the coaches, defendants Julia and Michael Sell, would shame her with regards to her weight, as well as her sexual orientation (¶¶286, 287 and 296). She contends that they would hold the threat of losing her scholarship over her head, which affected Ms. Johnson's ability to complete her studies, although she graduated from LSU in Spring 2019 (¶299). She also contends that she reported the abuse being inflicted upon plaintiff Lewis, but to her knowledge, defendant Sell never reported same to the relevant entities at LSU (¶293).

**Jane Doe**

The unnamed plaintiff alleges that, in or about October 2018 as a student at LSU, she was sexually harassed by an individual whom she met through her roommate's boyfriend (¶303). She contends that the two kissed on a few occasions, but she rebuffed any further sexual advances, which resulted in the assailant becoming verbally abusive. (¶304) She contends that she reported the abuse to the Title IX office in March 2019, which conducted interviews that were purportedly inconsistent. (¶¶310-316) She contends that she was never informed as to whether or not the individual was disciplined, and as result, she stopped attending classes because she was afraid of seeing him. (¶317) She contends that she became so depressed and uncomfortable that she left LSU in December 2019 and enrolled in a community college. (¶319)

**Corinne Hovis**

Ms. Hovis alleges that sometime in January 2020 she was sexually assaulted by a "highly recruited quarterback on LSU's football team." (¶324) She contends that she was heavily intoxicated one evening, at which time she blacked out and thereafter was sexually assaulted in his vehicle. (¶325) She alleges that she reported the incident to the dorm's Resident Assistant

and filed a report with the LSU Police Department. (¶328)  She alleges that the University's Title IX office moved forward with an investigation in February 2020 that resulted in discipline for the accused individual in June 2020 (¶331), but nonetheless, LSU's handling of the incident was poor and caused her to be traumatized. (¶333)

## Sarah Beth Kitch

Ms. Kitch is alleged to be a former graduate student at LSU.  She alleges that in or about 2009, one of her professors sexually harassed her, including expressing interest in a sexual relationship and making inappropriate comments of a sexual nature, including allegations of inappropriate touching which occurred in or about March 2013. (¶¶343-344)  She contends that she was not aware of her reporting options to the Title IX office; and while she finished her doctoral program in 2014, she contends that the trauma of her professor's assault and harassment continues to haunt her. (¶346)

***

Each of the plaintiffs further allege, in boilerplate fashion, that "until the release of the [Husch Blackwell] report in March 2021, [plaintiffs] were unaware of LSU and the Board of Supervisors' knowledge of the pervasive harassment, heightened risk of sexual assault, and retaliation suffered by herself and the putative class members.  [Plaintiffs] were also unaware of the severe institutional level procedural deficiencies that avoid discipline for perpetrators and disincentivize student victim reporting…"

***Please note that with regards to the aforesaid plaintiffs, only Richardson and Lewis expressly put forth allegations that directly relate to the purported actions of Mr. Ausberry.***

## RULE 12(B)(6) STANDARD

To withstand a Rule 12(b)(6) Motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Doe v. Covington County School District*, 675 F.3d 849, 854 (5th Cir. 2012). Another way, a Court must be able to "draw a reasonable inference that the defendant is liable for the misconduct alleged." (*Id.*) This plausibility standard requires more than pleading the sheer possibility that a defendant has acted unlawfully. (*Id.* at 678) Thus, even if the allegations in the Complaint are true, if they cannot support a claim to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties in the Court. *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 558 (2007).

Further, the United States Supreme Court has noted that Rule 12(b)(6) requires dismissal of a lawsuit whenever a claim is based on an invalid legal theory:

"Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,'... a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one." *Brooks v. Amgen, Inc.*, No. 18-00657, 2019WL507491, at *2 (M.D. La. Feb. 8, 2019), *quoting Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (internal citations omitted).

When a complaint fails to satisfy these principles, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Brooks*, 2019WL507491, at *2, *quoting Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007), *quoting Twombly*, 550 U.S. at 558).

A plaintiff cannot simply submit an "unadorned, the defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and while factual allegations may be accepted as true for purposes of a 12(b)(6) motion, legal conclusions are not. (*Id.*)

## Plaintiff has Failed to State a Title IX Claim Against Defendant Ausberry

20 U.S.C. § 1681(A) provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal assistance…," and caselaw is **clear** that Title IX does <u>not</u> authorize a private right of action against individuals, including school officials and/or teachers. *Fitzgerald v. Barnstable School Commission*, 555 U.S. 246, 257 (2009); *Sewell v. Monroe City School Board*, 974 F.3d 577 (5th Cir. 2020); *see also Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007): "Because Title IX only prohibits discrimination by federal grant recipients, a supervisory school official may not be sued in his individual capacity, either directly under Title IX or under § 1983 based upon a violation of Title IX."

Mr. Ausberry is named as a defendant herein in his individual capacity, such that plaintiff's Title IX claim as against him must fail; and to the extent he is named as a defendant in his official capacity, i.e., as a supervisory school official, same would likewise fail as per the relevant jurisprudence.

## Plaintiffs' Claims Under Title IX are Time Barred

Notwithstanding the fact that the plaintiffs have no cause to bring a Title IX claim against Mr. Ausberry in his individual or official capacity, their claims under Title IX are nonetheless time-barred as they all are effectively alleged to have occurred on or before **February 2020**.

Although 20 U.S.C. § 1681 does not provide an express statute of limitations, the prevailing Fifth Circuit jurisprudence has applied a one-year prescriptive period for Title IX violations alleged to have occurred in Louisiana. *Sewell v. Monroe City School Board*, 974 F.3d 577, 583 (5th Cir. 2020): "A Title IX claim accrues when a plaintiff "knows or has reason to know of the injury giving rise to the claim." (*Id.* at 583)

A review of the Original and Amended Complaints reveal that the <u>most recent</u> violation – as alleged by Ms. Clovis – is purported to have occurred in **February 2020**, which is more than one year from the date of the filing of the instant lawsuit on **April 26, 2021**. All of the other incidents as alleged occurred well prior thereto.

And the contention that these alleged Title IX violations are "continuing" is of no moment; these plaintiffs respectively knew (and/or should have known) of their alleged "injuries" before **April 26, 2020**, and these purported injuries cannot be considered as "continuing" for purposes of the applicable prescriptive period simply by the assertion of an alleged conspiracy, or racketeering activity.

In sum, the Original and Amended Complaints fail to allege a cause of action sounding in a Title IX violation against defendant Ausberry, inasmuch as Title IX does not authorize private suits against supervisory officials, in their individual capacity or otherwise, and especially as each of these alleged violations occurred more than one year prior to the filing of their Original Complaint.

**The Plaintiffs Fail to State a Cause of Action Against Defendant Ausberry pursuant to the Louisiana Racketeering Act, or Conspiracy under La.C.C. Art. 2324**

La.R.S. 15:1352(A) defines "racketeering activity" as committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit any crime

which is punishable under the following provisions of Title 14 of the Louisiana Revised Statutes of 1950, the Uniform Controlled Dangerous Substances Law, or the Louisiana Securities Law and contains a laundry list of crimes under Louisiana law which may constitute "racketeering activity."

Pursuant to La.R.S. 15:1353(C) and (D):

C. It is unlawful for any person employed by, or associated with, any enterprise knowingly to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.

D. It is unlawful for any person to conspire or attempt to violate any of the provisions of Subsections A, B, or C of this Section.

La.R.S. 15:1352(B) defines "enterprise" as "any individual, sole proprietorship, partnership, corporation or other legal entity, or any unchartered association, or group of individuals associated in fact and includes unlawful as well as lawful enterprises and governmental as well as other entities."

Decisions under the federal Racketeer Influenced and Corrupt Organization Act (RICO) cases are persuasive in Louisiana racketeering cases, as Louisiana's racketeering laws are modeled upon the federal RICO legislation. *State v. Touchet,* 759 So.2d 194 (La.App. 3 Cir. 4/5/00).

According to La Civil Code Article 2324, "he who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other

person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable."

The Louisiana Supreme Court has held that conspiracy by itself is <u>not</u> an actionable claim under Louisiana law. *Ames v. Ohle*, 11–1540 97 So.3d 386, 393 (La.App. 4 Cir. 5/23/12). The actionable element of a conspiracy claim is not the conspiracy itself but rather the tort that the conspirators agree to perpetrate and actually commit in whole or in part. (*Id.*)

After reviewing the Louisiana Racketeering Act Case Statement submitted by the plaintiffs (Doc. 103), defendant Ausberry submits that the plaintiffs have failed to allege the existence of an enterprise involving defendant Ausberry, among others, but most importantly, failed to demonstrate the execution of a predicate crime under the LRA, or an actionable tort under La.C.C. Art. 2298; indeed, none of the allegations put forth against Mr. Ausberry reflect as an "alleged predicate act" as outlined under La.R.S. 15:1352.

That is, in their LRA Statement, the plaintiffs' contend that Mr. Ausberry and the other defendants conspired to/and violated Louisiana laws which prohibit public intimidation; intimidating witnesses; injuring public records; maintaining false public records; corrupt influencing; and/or money laundering. Yet the allegations are conclusory and lack the facts required to plead to the commission of these purported crimes; moreso, the Complaints put forth very little facts to implicate against defendant Ausberry, with the exception that he allegedly told another defendant (Sharon Lewis) as it relates to what is alleged to be her reports of work-related sexual harassment and retaliation, that "if she don't like it here, leave." (Doc. 103 at p. 42)

None of these allegations as to Ausberry (or the co-defendants) meet any of the elements of the purported crimes which form the basis of "racketeering activity;" nor do the allegations contain facts sufficient to <u>truly</u> contend that defendant Ausberry (i) intentionally concealed information from the public records (as it relates to what they contend to be his reporting requirements under Title IX); (ii) engaged in money laundering as that crime is defined under Louisiana law; (iii) trafficked in with regards to the crime of corrupt influencing, or better yet, "was is given, offered or accepted anything of apparent present or prospective value."

There are no facts asserted against Mr. Ausberry which detail threats of extortion or intimidation (as per La.R.S. 14:122 and/or 14:129.1), or the intentional destruction, or concealment, et al of a public record (as defined under La.R.S. 44:1), or the false filing of same (as per La.R.S. 14:132 or 14:133). Yet, what stands out most acutely with regards to the plaintiffs' allegations, however, and which should serve, on its own, to defeat their claims under the LRA, is the absence of any allegations detailing the existence of a conspirational operation or entity "separate and apart from the pattern of racketeering activity." *Walker v. Beaumont Independent School District*, 938 F.3d 724, 738 (5th Cir. 2019), *citing United States v. Turkette*, 452 US 576, 583 (1981). There can be no dispute that the Complaints lack specific facts, and assert <u>mere conclusory allegations</u> of the existence of a purported "enterprise." *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988).

Put simply, plaintiffs have failed to allege conduct on the part of defendant Ausberry, or the other defendants, that would rise to a level of an LRA violation. And what has been alleged is no more than indirect injury, further defeating their asserted claims under the LRA as per *Torres v. SGE Management, LLC*, 838 F.3d 629 (5th Cir. 2016), inasmuch as they collectively fail to establish the requisite but-for and/or proximate causation as it relates to their business or

property, which is required in order to assert a plausible claim under the LRA.  Their allegations are specious and fail to demonstrate a "pattern of racketeering activity" against defendant Ausberry, and as required under the LRA, much less any proscribed "prohibited acts."  *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).  Likewise, the Complaints fail to set forth any facts which particularly demonstrate a "conspiracy to commit racketeering," much less one to commit the substantive offenses as alleged; again, none of the underlying conduct as factually alleged serves to constitute any of the outlined predicate offenses which, traditionally and by the express terms of the LRA, would form the basis of a violation thereunder.

### The Plaintiffs' Complaints Fail to State a Cause of Action Pursuant to 42 U.S.C. § 1983

In order to state a claim under 42 USC § 1983, a plaintiff must allege a deprivation of a right or privilege secured by the Constitution and laws of the United States and that the deprivation was caused by an individual acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Establishing individual liability under § 1983 requires an affirmative showing that the defendant personally acted to deprive the plaintiff of her rights.  *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985):  "The defendant must have had personal knowledge and involvement in the alleged deprivation of appellant's rights in order to be liable."

Thus, while § 1983 allows a person to bring an individual-capacity civil suit against a state official, the plaintiffs must establish that the individual's actions were taken under color of state law with the *intention to deprive* that person of their federally- protected rights, in this matter, the plaintiff's federally-protected rights under Title IX.

That is, the plaintiffs must allege and establish that Mr. Ausberry's conduct was a cause in fact of the plaintiffs' claimed Constitutional deprivation.  *Monell v. Department of Social Services*, 436 U.S. 658, 692 (1978), and must show that Mr. Ausberry not only was involved in,

but encouraged the wrongful conduct, which requires a "causal relationship" of some kind between Ausberry's conduct and plaintiffs' alleged deprivation of their rights under the law.

Put simply, the plaintiffs must establish that Mr. Ausberry's intentionally conducted the duties of Executive Deputy Athletic Director in a manner that proximately caused the Constitutional injury which they complained of, but there are no allegations within Original and Amended Complaints which allege the commission of intentional actions on the part of Mr. Ausberry.

Further, Mr. Ausberry, may raise the affirmative defense of qualified immunity, which allows government officials to act and make decisions without fear of being sued for money; it is afforded to public officials performing discretionary functions which do not violate clearly established Constitutional rights "of which a reasonable person would know." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

And herein, there are no allegations which contend that defendant Ausberry committed any acts that were intentional and deliberate violation of their Constitutional rights.  In fact simply alleging a "pattern and practice", without more, is <u>insufficient</u> under Rule 12 pleading standards. *Twombley*, 550 U.S. at 558.  The law is well established that in suits filed under § 1983 against public officials in their private capacity, a claim must be stated with <u>particularity</u>. *Schultea v. Wood,* 47 F.3d 1427 (5th Cir.1995).  This is particularly so, as it relates to the purpored § 1983/1st and 4th Amendment claims which, as plead, fail to establish that (i) any of these plaintiffs engaged in constitutionally protected speech, that the (ii) defendants were motivated by the protected speech of any plaintiff and/or that (iii) Mr. Ausberry's alleged failure to properly investigate a Title IX Complaint was violative of their individuals 1st Amendment rights – further supporting the application of the qualified immunity defense. as there is no

"clearly established case law which would have put any reasonable state official on notice" that failing to investigate a Title IX report would be a violation of one's rights under the 1st and/or 4th Amendment.

There also are no allegations in the Complaints that any actions taken against these plaintiffs were based upon their gender.

Nevertheless, these claims are time barred, as all of the alleged actions took place on or before February 2020, and claims under § 1983 (as well as 1985/1986, as discussed §§ *infra*) must be filed within one year of the alleged action.

When a federal statute does not contain a limitations period (as is the case for Title IX and § 1983), the settled practice is to borrow an "appropriate" statute of limitations from state law. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), *partially superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 371, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004); *see also* 42 U.S.C. § 1988. *King-White v. Humble Independent School Dist.*, 803 F.3d 754, 759 (5th Cir. 2015): "Title IX and § 1983 should be governed by state statutes of limitations for personal injury actions."

The operative date from which the relevant limitations period runs is the day injury or damage is sustained, La. Civ. Code art. 3492, or, more precisely herein, "the date of the notice of the adverse action." See *Hartz v. Admr's of the Tulane Educ. Fund*, 275 Fed.Appx. 281, 287 (5th Cir. 2008). A claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured. *King-White*, 803 F.3d at 762.

Thus, as with regards to the plaintiffs' Title IX claims, their Section 1983, claims are subject to a one-year prescriptive period. All of the claims and alleged resulting injury are

alleged to have occurred prior to February, 2020, thus are alleged to have occurred more than one year prior to the filing of the instant suit in April 26, 2021, and subject to dismissal by the Court.

**The Plaintiffs' Complaints Fail to State a Cause of Action Pursuant to 42 U.S.C. § 1985 or 1986**

42 USC § 1985 and § 1986 are post-Civil War statutes which are designed to allow individuals to bring a private right of action against public officials who "conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws..." Similar to § 1983 claims, a § 1985 case involves the violation of an individual's civil rights by two or more people and "a conspiracy to interfere," which is (more or less) defined as an attempt to prevent, intimidate, threaten or force someone in way that impedes or their civil rights.

The § 1985 claims against defendant Ausberry are subject to dismissal, as the Complaints lack any allegation of a class-based discriminatory animus underlying the alleged actions. *Romero-Barcelo v. Hernandez-Agosteo*, 75 F.3d 23 (1st Cir. 1996). That is, to state a claim under 1985, a plaintiff must allege a conspiracy for the purpose of depriving another the equal protection of the laws, an act in furtherance of the conspiracy, <u>and</u> injury to a person or property, and there are no facts alleged herein which serve to plausibly suggest that defendant Ausberry conspired with others in order to violate the civil rights of these plaintiffs, whether pursuant to Title IX or otherwise. Any plausible allegations of a civil rights – related conspiracy must identify an overt act in furtherance of the conspiracy, and none has been asserted in any Complaint filed herein. *Sines v. Kessler*, 324 F. Supp. 3d 765 (W.D. Va. 2018).

And similarly, the plaintiffs' claims under §§ 1985 and 1986 are tolled, as the statutes fail to provide any substantive rights, *Marino v. Bowers*, 657 F.2d 1363 (3rd Cir. 1981), and do not provide a statute of limitations, such that one is borrowed from the applicable state law such that, similar to plaintiffs' Title IX and 1983 claims, claims under § 1985/1986 are subject to a one year prescriptive period, and dismissal herein on the grounds of prescription.

Furthermore, the intra-corporate conspiracy doctrine should apply to defeat the plaintiff's claims of conspiracy, inasmuch as the doctrine bars civil rights claims being asserted from an alleged conspiracy where the defendants are all agents of a particular entity, which as here, would be the Louisiana State University.  *Aucoin v. Kennedy*, 355 F. Supp 2d 830 (E.D. La. 2004).

## The Plaintiffs' Complaints Fail to State a Cause of Action Against Defendant Ausberry Pursuant to Louisiana's Civil Code Negligence Articles

As it pertains to the elements of the state law claims of negligence, negligent supervision, and the intentional and/or negligent infliction of emotional distress:

**Negligence** claims are examined using a duty-risk analysis. In order for liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element). *Pinsonneault v. Merchants & Farmers Bank & Trust Co*., 2001-2217 (La. 4/3/02), 816 So.2d 270, 275–76.

The elements of a **negligent hiring, training, and/or supervision** claim under Louisiana law, as with any negligence claim in Louisiana, are: (1) the defendant had a duty to conform its conduct to a specific standard; (2) the defendant failed to conform its conduct to that standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (in other words, the plaintiff and the plaintiff's injuries were within the scope of the defendant's duty); and (5) the plaintiff suffered damages. See *Roberts v. Benoit*, 605 So.2d 1032, 1040–46 (La. 09/09/1991).

To recover for a claim of **Intentional Infliction of Emotional Distress**, a plaintiff must establish the following:

1. That the conduct of the defendant was extreme and outrageous;

2. That the emotional distress suffered by the plaintiff was severe; and

3. That the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *Id.*

The plaintiff's burden is a heavy one, *Scarmoto v. Dunaway,* 694 So.2d 1041 (La. App. 5th Cir. 1997), and conduct which is merely tortious or illegal does not rise to the level of being extreme or outrageous; as explained in *White*, "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So.2d at 1209.

Recovery for the **negligent infliction of emotional distress** has been limited to those cases involving the "especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious." *Moresi v. Department of Wildlife and Fisheries*, 567 So.2d 1081, 1096 (La.1990). Thus, in order to prove a claim for negligent infliction of emotional distress, the plaintiffs must establish the following: (1) the defendants owed a duty to the plaintiffs; (2) defendants breached that duty; (3) the

defendants' breach of the duty was a cause-in-fact of the plaintiffs' alleged harm; (4) the defendants' breach was a legal cause of the harm plaintiffs' claim to have suffered; and (5) actual damages. *Crockett v. Cardona*, 97–2346, p. 3 (La.App. 4 Cir. 5/20/98), 713 So.2d 802, 804. In *Bacas v. Falgoust*, 99–1312, p. 1 (La.App. 5 Cir. 5/3/00), 760 So.2d 1279, 1282, the plaintiff was also required to establish "that the mental anguish suffered ... was genuine and serious."

Mr. Ausberry did not owe the plaintiffs a duty under state tort law. Herein, any duty that exists emanates from the provisions of Title IX, and there is no caselaw which extrapolates a tort-based duty in the context of handling and/or investigating claims of sexual harassment on a college campus. That is, it is the statutory or contractual obligations which a University or its officials owes to its students that provides the basis for the plaintiff's claims herein, as opposed to a general duty under Louisiana's Civilian law.

## The Plaintiffs' Claims Under Louisiana's Tort Laws are Time Barred

Because the plaintiffs' claims are general negligence allegations, the prescriptive period is one year, as mandated by Louisiana Civil Code Article 3492. And again, the Complaints facially allege acts occurring prior to February, 2020, yet their Complaint originally was filed in April, 2021. Based on same, their claims under Louisiana Civil Code articles 2030 and 2315 are ostensibly expired and prescribed.

## The Plaintiffs' Claims of Enrichment without Cause Under Louisiana Civil Code Article 2298 is not available herein

La.C.C. Art. 2298 provides that "a person who has been enriched without cause at the expense of another person is bound to compensate that person." Notably, the remedy under Art. 2298 is deemed "subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule."

21

Under Louisiana law, the remedy provided by unjust enrichment is precluded where there are other legal remedies, such as herein, Title IX.  *Zaveri v. Condor Petroleum*, 27 F. Supp. 3d 695 (W.D. La. 2014).  Further, the mere fact that a plaintiff does not successfully pursue another available remedy does <u>not</u> give the plaintiff the right to recover under the theory of unjust enrichment.  *Walters v. MedSouth Records Management*, 30 So.3d 245 (La. 2010).  Their pursuit for equitable relief should be dismissed.

## Any Claims Against Defendant Ausberry Seeking Damages in His Official Capacity Must Be Dismissed as per the 11th Amendment's Immunity Provisions

Defendant Ausberry is entitled to the dismissal of all claims brought against him in his official capacity under the 11th Amendment and for lack of subject matter jurisdiction pursuant to F.R.C.P. Rule 12(b)(1).

The Eleventh Amendment bars suits by private citizens against a state in federal court. See *Hutto v. Finney*, 437 U.S. 678, 700, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).  The bar applies not only to the state itself, but also protects state actors in their official capacities. *See Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 320 (2008).  This rationale applies to warrant the dismissal of plaintiffs' claims against defendant Ausberry (with the exception of the Title IX claims) and to the extent any claims assert acts taken on the part of defendant and in his official capacity as the University's Executive Deputy Athletic Director.  In this role, he is an arm of the state of Louisiana, and the Louisiana legislature has not waived Eleventh Amendment immunity for state law claims in federal court, and instead has expressly reserved such immunity.

"The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well."  A state's immunity from suit under the Eleventh Amendment "is not absolute," however, and "a state may waive its immunity by voluntarily consenting to suit."  "A federal court must examine each claim in a case to see if the

22

court's jurisdiction over that claim is barred by the Eleventh Amendment." The Fifth Circuit has concluded that Louisiana waived its Eleventh Amendment immunity to claims under Title IX by accepting federal funds. However, the Fifth Circuit has also recognized that Louisiana has not expressly waived its immunity under the Eleventh Amendment for all claims filed in federal court pursuant to Louisiana Revised Statute § 13:5106(A), which provides that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."

Defendant can find no authority that demonstrates that Louisiana has waived its Eleventh Amendment immunity to state law negligence claims asserted in federal court. *See also Raj v. Louisiana State Univ.*, 714 F.3d 322, 329 (5th Cir. 2013).

\*\*\*

In further support of his *Motion to Dismiss*, defendant Ausberry adopts and incorporates as if copied herein fully any and all of the arguments put forth by his co-defendants herein, and within the respective *Motions to Dismiss* they have filed in response to the plaintiffs' Complaint, and particularly with regards to those causes of action which are asserted in identical fashion against defendant Ausberry and his co-defendants.

\*\*\*

Finally, the plaintiffs have not, and cannot – if given another opportunity to amend their Complaints – allege plausible claims against these defendants, and particularly Mr. Ausberry; and the United States Supreme Court has noted that leave to amend need not be granted by the Court upon repeated failure on the part of the plaintiff to cure any deficiencies, and/or when the futility of same can be recognized by the Court. *Foman v. Davis*, 371 US 178, 182 (1962). This is particularly so as it pertains to the RICO Case Statement filed herein by the plaintiffs (Doc.

23

No. 103), which is factually deficient; that is, it is unsupported by factual allegations, much less existing law.

Respectfully Submitted,

**JEFF LANDRY
ATTORNEY GENERAL**

BY:   ___*/s/Darren A. Patin*_____
       **DARREN A. PATIN, #23244**
Special Assistant Attorney General
One Galleria Boulevard, Suite 1400
Metairie, Louisiana 70001
Telephone: (504) 836-6500
Facsimile:  (504) 836-6565
*Counsel for Defendant, Verge Ausberry*

## CERTIFICATE OF SERVICE

I, Darren Patin, attorney for Defendant, do hereby certify that I have date electronically filed the above and foregoing with the Clerk of the Court by using the CM/ECF system, and/or by email provided a true and correct copy of the foregoing to all counsel of record.

**SO CERTIFIED** this the 8th day of November, 2021.

*s/ Darren A. Patin*
_____
       **DARREN A. PATIN**