UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ABBY OWENS, ET AL. | CIVIL ACTION NO.:  3:21-cv-00242 |
| Plaintiffs, | SECTION |
| VERSUS | JUDGE VITTER |
| LOUISIANA STATE UNIVERSITY, et al. | MAGISTRATE JUDGE JOHNSON |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

**DEFENDANT TIGER ATHLETIC FOUNDATION'S MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS RACKETEERING CLAIMS**

Judy Y. Barrasso, 02814
Laurence D. LeSueur, 35206
Chloé M. Chetta, 37070
Lance W. Waters, 37351
Barrasso Usdin Kupperman
 Freeman & Sarver, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA  70112
Telephone:  (504) 589-9700
Facsimile:   (504) 589-9701
jbarrasso@barrassousdin.com
llesueur@barrassousdin.com
cchetta@barrassousdin.com
lwaters@barrassousdin.com

*Counsel for Tiger Athletic Foundation*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 1

STANDARD OF REVIEW ..................................................................................... 5

LAW AND ARGUMENT ....................................................................................... 6

I.      TAF cannot be liable under the Louisiana Racketeering Act because plaintiffs have not alleged that TAF engaged in narrowly defined "racketeering activity" ........................................ 7

      A.      Plaintiffs' corrupt influencing claim does not validly or plausibly allege TAF engaged in criminal activity ............................ 8

      B.      Plaintiffs' public intimidation claim fails because mere threats of economic harm are insufficient; and regardless, plaintiffs do not allege TAF threatened anyone ............................... 10

      C.      Plaintiffs' intimidating witnesses claim fails because they never allege TAF threatened force against or injured witnesses in their person or property ...................................... 11

      D.      Plaintiffs' public records claims against TAF fail because TAF, a private entity, neither "injured" public records nor maintained false public records .................................. 12

      E.      Plaintiffs' money laundering claims against TAF fail because, though plaintiffs try to allege TAF gave private donor funds "to the enterprise," plaintiffs do not allege TAF "derived" proceeds from any criminal activity ...................... 14

II.     Plaintiffs have not alleged TAF engaged in an actionable "pattern" of racketeering ................................................................. 15

III.    Plaintiffs fail to allege cognizable injuries caused "by reason of" the alleged violations of § 15:1353(A), (B), or (C) ............................... 18

IV.    Plaintiffs' claims based on predicate acts before April 26, 2016, and Sarah Beth Kitch's individual claim are prescribed ................... 23

CONCLUSION ....................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ames v. Ohle,*
  97 So. 3d 386 (La. App. 4th Cir. 2012) ........................................................... 24

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006) ............................................................................. 19, 20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................................. 4, 5

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
  459 U.S. 519 (1983) ................................................................................. 19

*Bast v. Cohen, Dunn & Sinclair, PC,*
  59 F.3d 492 (4th Cir. 1995) ........................................................................ 22

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................. 4, 5

*CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.,*
  2019 WL 2865256 (La. App. 1st Cir.) ............................................................ 6, 7

*Chimm v. Univ. of Tex. at Austin,*
  836 F.3d 467 (5th Cir. 2016) ........................................................................ 5

*Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc.,*
  2013 WL 4516007 (W.D. La. Aug. 22, 2013) ...................................................... 22

*Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc.,*
  544 F. App'x 455 (5th Cir. 2013) ................................................................... 21

*Crowe v. Henry,*
  43 F.3d 198 (5th Cir. 1995) ......................................................................... 20

*Davis-Lynch, Inc. v. Moreno,*
  667 F.3d 539 (5th Cir. 2012) ....................................................................... 20

*Doe v. Roe,*
  958 F.2d 763 (7th Cir. 1992) ....................................................................... 22

*ePlus Tech., Inc. v. Aboud,*
  313 F.3d 166 (4th Cir. 2002) ....................................................................... 15

*Farmer v. D&O Contractors, Inc.,*
  640 F. App'x 302 (5th Cir. 2016) ............................................................... 6, 23

*Grogan v. Platt,*
  835 F.2d 844 (11th Cir. 1988) ...................................................................... 22

*Gucwa v. Lawley*,
    731 F. App'x 408 (6th Cir. 2018) ............................................................... 22

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) .................................................................................... 15

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258 (1992) ............................................................................. 18, 19

*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*,
    187 F.3d 941 (8th Cir. 1999) ...................................................................... 22

*Hughes v. Tobacco Inst., Inc.*,
    278 F.3d 417 (5th Cir. 2001) ...................................................................... 22

*Jarecki v. G. D. Searle & Co.*,
    367 U.S. 303 (1961) .................................................................................... 10

*Joseph v. Bach & Wasserman, L.L.C.*,
    487 F. App'x 173 (5th Cir. 2012) ............................................................... 24

*Landry v. Airline Pilots Ass'n Int'l AFL-CIO*,
    892 F.2d 1238 (5th Cir. 1990) .................................................................... 21

*Malvino v. Delluniversita*,
    840 F.3d 223 (5th Cir. 2016) ...................................................................... 16

*McKay v. State ex rel. Div. of Admin.*,
    143 So. 3d 510 (La. App. 1st Cir. 2014) .................................................... 17

*Molina-Aranda v. Black Magic Enterprises, L.L.C.*,
    983 F.3d 779 (5th Cir. 2020) ................................................................. 5, 19

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
    781 F.3d 182 (5th Cir. 2015) ................................................................ 18, 20

*Poloceno v. Dallas Indep. Sch. Dist.*,
    826 F. App'x 359 (5th Cir. 2020) ................................................................. 3

*Price v. Pinnacle Brands, Inc.*,
    138 F.3d 602 (5th Cir. 1998) ........................................................................ 6

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
    615 F.3d 412 (5th Cir. 2010) ........................................................................ 5

*Quadvest, L.P. v. San Jacinto River Auth.*,
    7 F. 4th 337 (5th Cir. 2021) ......................................................................... 9

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979) .................................................................................... 22

*Rigney v. Dep't of Police*,
    10 So. 3d 861 (La. App. 4th Cir. 2009) ...................................................... 13

*Seals v. McBee*,
    898 F.3d 587 (5th Cir. 2018) ...................................................................... 10

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ............................................................... 7, 16, 21

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
    833 F.3d 512 (5th Cir. 2016) ............................................................... 7

*St. Germain v. Howard*,
    556 F.3d 261 (5th Cir. 2009) ............................................................... 7

*St. Paul Mercury Ins. Co. v. Williamson*,
    224 F.3d 425 (5th Cir. 2000) ............................................................... 6

*Standard Oil Co. of Cal.*,
    405 U.S. 251 (1972) ............................................................... 22

*State v. Fraley*,
    512 So. 2d 856 (La. 1987) ............................................................... 13

*State v. Nine Sav. Accts.*,
    553 So. 2d 823 (La. 1989) ............................................................... 6

*State v. Touchet*,
    759 So. 2d 194 (La. App. 3d Cir. 2000) ............................................................... 6

*Stokeling v. United States*,
    139 S. Ct. 544 (2019) ............................................................... 11

*Swindol v. Aurora Flight Sciences Corp.*,
    805 F.3d 516 (5th Cir. 2015) ............................................................... 16

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
    975 F.2d 1134 (5th Cir. 1992) ............................................................... 5

*Toress v. S.G.E. Mgmt., L.L.C.*,
    838 F. 3d 629 (5th Cir. 2016) ............................................................... 19

*U.S. ex rel. Rafizadeh v. Cont'l Common, Inc.*,
    553 F.3d 869 (5th Cir. 2008) ............................................................... 5

*United States ex rel. Hendrickson v. Bank of Am., N.A.*,
    779 F. App'x 250 (5th Cir. 2019) ............................................................... 5

*United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*,
    816 F. App'x 892 (5th Cir. 2020) ............................................................... 4

*Viking Constr. Grp., LLC v. Satterfield & Pontikes Constr. Grp. Inc.*,
    2018 WL 401182 (E.D. La. Jan. 12, 2018) ............................................................... 21, 23

*Viking Constr. Grp., LLC v. Satterfield & Pontikes Constr. Grp. Inc.*,
    728 F. App'x 405 (5th Cir. 2018) ............................................................... 21

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ............................................................... 2

*Whitaker v. Collier,*
 862 F.3d 490 (5th Cir. 2017) ................................................................................. 6

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer,*
 90 F.3d 118 (5th Cir. 1996) ........................................................................... 15, 16

**Statutes**

18 U.S.C. § 1961 ........................................................................................................ 6

18 U.S.C. §1964 ................................................................................................. 18, 22

La. Stat. § 14:120 ...................................................................................................... 8

La. Stat. § 14:122 ............................................................................................ 8, 9, 10

La. Stat. § 14:129.1 ...................................................................................... 8, 11, 12

La. Stat. § 14:132 ............................................................................................... 12, 13

La. Stat. § 14:133 ................................................................................................. 8, 13

La. Stat. § 15:135 ...................................................................................................... 7

La. Stat. § 14:230 ................................................................................................. 8, 14

La. Stat. § 15:1352 ................................................................................................... 15

La. Stat. § 15:1353 ............................................................................................. 19, 20

La. Stat. § 15:1356 ............................................................................................. 18, 23

La. Stat. § 17:3390 ........................................................................................... 3, 9, 14

## INTRODUCTION

Tiger Athletic Foundation (TAF) seeks dismissal of plaintiffs' implausible racketeering claim. In this Title IX lawsuit against LSU, because TAF has no legal duties or responsibilities under Title IX, plaintiffs insist on trying to fit a square peg in a round hole by accusing TAF of criminal racketeering. Plaintiffs have filed two complaints full of legal conclusions and impermissible group pleading and continued to press both legally and factually deficient theories of liability in their court-ordered racketeering case statement. Plaintiffs have not—and consistent with their Rule 11 good-faith obligation, cannot—identify any person at TAF who supposedly engaged in any criminal conduct.

Plaintiffs' bald characterizations of TAF as a criminal mastermind responsible for forcibly silencing sexual misconduct victims, laundering dirty money, and corrupting public employees across the state make no sense, stretch Rule 12(b)(6)'s plausibility standard beyond recognition, and torture the text of the Louisiana Racketeering Act and state criminal laws. As plaintiffs' scant allegations reveal, TAF did not commit a single crime. The racketeering claim must be dismissed.

## BACKGROUND

This Title IX case arises out of LSU's alleged failure to maintain an adequate reporting, investigation, and disciplinary system for sexual misconduct complaints.

After a widely reported news article identified former LSU students who were sexually victimized on campus, LSU hired Husch Blackwell LLP to comprehensively investigate how it handles "Title IX-related incidents."[1] Husch Blackwell spent months interviewing employees, students, and alumni and reviewing university policies, training materials, internal

---

[1]    R. Doc. 22-1 at 3.

communications, and other documents.[2] Husch Blackwell concluded its investigation with a 262-page single-spaced report identifying specific failures and wrongdoers at LSU and outlining 18 overarching recommendations to "provide the University with a road map for correcting [the] problems identified . . . . [and] to create a [Title IX] system that all members of the University community can have confidence in."[3] Plaintiffs base their lawsuit on this report.[4]

Plaintiffs are ten former students who allegedly experienced varying types of actionable sex discrimination under Title IX.[5] The defendants include LSU, its Board of Supervisors, and fifteen former or current employees, ranging from top officials like the former university president and former athletic director to lower-level employees who interacted directly with students.[6] Plaintiffs allege five claims arising under Title IX against these state defendants and twelve supplemental claims (for the same injuries and damages) that specifically depend on LSU's claimed violations of Title IX.[7]

TAF, however, is a legislatively favored private, nonprofit corporation.[8] It is not a federally

---

[2]    *Id.* at 3–5.

[3]    *Id.* at 139.

[4]    Plaintiffs' first amended complaint attaches and incorporates by reference the Husch Blackwell Report, so "the court may . . . properly consider those documents" in resolving this motion to dismiss. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

[5]    *See generally* R. Doc. 22 at ¶ 2.

[6]    *Id.* at ¶¶ 30–48.

[7]    For example, plaintiffs allege that every defendant was negligent in "failing to report [students'] disclosures of sexual misconduct to LSU's Title IX Office"; "failing to properly investigate [students'] reports of sexual misconduct"; "failing to follow LSU policies in reviewing, investigating, and resolving complaints of sexual misconduct pursuant to Title IX"; "failing to ensure LSU implemented its Title IX Policy"; "failure to follow through with imposed discipline following Title IX investigations"; "failing to inform students of their Title IX rights"; and "failing to discipline employees in violation of LSU's Title IX Policy."  R. Doc. 22 at ¶ 483.

[8]    La. Stat. § 17:3390.

2

funded "educational institution" and is thus not subject to Title IX.[9]  But plaintiffs "belie[ve] TAF has over $400 million dollars [sic] in total assets."[10] So to shoehorn a private corporation without Title IX obligations into this Title IX case, plaintiffs allege TAF must have led LSU in a years-long, pervasive racketeering conspiracy that forcibly silenced victims, laundered dirty money from alumni donors, and corrupted public officials across the state and is thus liable for the same monetary damages plaintiffs seek from LSU, plus punitives, costs, and attorneys' fees.[11]

Yet no prosecutor has reached this conclusion. And neither did Husch Blackwell. In fact, though Husch Blackwell identifies by name certain LSU administrators, Athletic Department employees, and campus police officers whose ignorance of their Title IX obligations created a system that failed to meaningfully respond to Title IX complaints, Husch Blackwell does not identify TAF or any TAF employee among them as a potentially bad actor.[12] When TAF does come up, Husch Blackwell lauds a 77-page consulting report that TAF paid for as "replete with solid recommendations on various topics," including Title IX training for student-athletes, LSU's Title IX policy, and the on-campus reporting and investigation process.[13]

And plaintiffs' theory of racketeering liability—that TAF encouraged LSU to favor student-athletes in the Title IX process for financial gain—is directly undermined by Husch Blackwell's ultimate conclusions:

> [T]he suggestion that LSU student athletes in the Title IX process are getting special treatment is *simply not supported* . . . . There is also *no evidence* that anyone in a leadership position within the University has put *any sort of pressure* on the Title IX Office or

---

[9]     *See generally Poloceno v. Dallas Indep. Sch. Dist.*, 826 F. App'x 359, 362 (5th Cir. 2020) ("Title IX prohibits sex discrimination by recipients of federal education funding.").

[10]    R. Doc. 22 at ¶ 32.

[11]    *Id.* at ¶¶ 553–80.

[12]    *See generally* R. Doc. 22-1.

[13]    R. Doc. 22-1 at 39–40 (emphasis added).

otherwise to reach conclusions favorable to prominent student athletes.[14]

Importantly too, plaintiffs represent that their claims depend on this report because they did not know that LSU and its employees were responsible for the injuries they personally suffered until Husch Blackwell published its report.[15] Plaintiffs now ask the court to believe this report permits them to accuse TAF of (1) "funding an inadequate Title IX training" to "intimidate[] witnesses"—a fact nowhere in the report;[16] (2) corruptly influencing certain LSU employees with "incentive-based" and "other [unidentified] compensation"—another fact nowhere in the report;[17] and (3) doling out "private cell phones . . . [to] conceal[] information from public records requests"—yet another fact nowhere in the report.[18]

But the United States Supreme Court and Fifth Circuit are clear that, between allegations of "purposeful, invidious" conduct and an "obvious alternative explanation," courts must reject the former as implausible and dismiss the associated claim under Rule 12(b)(6).[19] Plaintiffs' claim that TAF is the chief racketeer in a massive, years-long conspiracy—that no one else has ever identified—is implausible, unsupported by any specific allegation, and should be dismissed.

---

[14]    *Id.* at 144–45.

[15]    *See, e.g.*, R. Doc. 22 at ¶ 154.

[16]    R. Doc. 103 at 3.

[17]    *E.g.*, *id.*

[18]    *E.g.*, *id.* at 3–4.

[19]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)); *see also United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897 (5th Cir. 2020) ("A claim is . . . not plausible if the facts pleaded are consistent with both the claimed misconduct and a legal and 'obvious alternative explanation.'").

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts "stat[ing] a claim to relief that is plausible on its face."[20] A claim is facially plausible only if its allegations allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] Allegations must show "more than a sheer possibility that [the] defendant has acted unlawfully."[22] Though courts accept well-pleaded facts as true, courts *cannot* "credit conclusory allegations or allegations that merely restate the legal elements of a claim."[23]

In a racketeering case founded on fraud-based predicate acts, a plaintiff must abide by Rule 9(b)'s heightened pleading requirements and plausibly plead fraud with particularity.[24] The plaintiff must allege "the 'who, what, when, where, and how of the alleged fraud.'"[25] Any "fail[ure] to distinguish among defendants or present necessary details" warrants dismissal.[26]

The Supreme Court instructs that, on a Rule 12(b)(6) motion, "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management.'"[27] It must be dismissed.[28] "Rule 8 . . . does not unlock . . . discovery for a plaintiff armed with nothing more than conclusions."[29] The Fifth

---

[20]   *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

[21]   *Iqbal*, 556 U.S. at 678.

[22]   *Id.*

[23]   *Chimm v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

[24]   *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 784 n.2 (5th Cir. 2020) (citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992)).

[25]   *U.S. ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 874 (5th Cir. 2008).

[26]   *United States ex rel. Hendrickson v. Bank of Am., N.A.*, 779 F. App'x 250, 252 (5th Cir. 2019).

[27]   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

[28]   *See id.*

[29]   *Iqbal*, 556 U.S. at 678.

Circuit agrees: "plaintiffs [ar]e not entitled to discovery without a properly pleaded complaint."[30]

## LAW AND ARGUMENT

Though enacted in 1983, civil jurisprudence interpreting the Louisiana Racketeering Act is limited.[31] But the Act is "patterned" or "modeled" after its federal counterpart,[32] and the Fifth Circuit considers the two statutes "analogous."[33] So even though plaintiffs are not pursuing a federal racketeering claim, federal cases should continue to guide this court's analysis.[34]

To state a Louisiana Racketeering Act claim, plaintiff must sufficiently plead that the defendant is "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise."[35] Even if these three elements are met, the court must evaluate whether the plaintiff has adequately alleged the "substantive requirements of each subsection" of § 15:1353 defining "prohibited activities."[36] And a civil plaintiff seeking money damages must sufficiently plead injury and causation as well.[37] Failure to adequately plead any one of these is fatal to the claim.

Applying both state and federal authority, plaintiffs do not allege a valid racketeering claim against TAF because TAF did not engage in any "racketeering activity," plaintiffs fail to allege a

---

[30]    *Whitaker v. Collier*, 862 F.3d 490, 502 (5th Cir. 2017).

[31]    *State v. Touchet*, 759 So. 2d 194, 197 (La. App. 3d Cir. 2000) (noting "[t]here is little Louisiana jurisprudence regarding [the Louisiana racketeering] statute").

[32]    *State v. Nine Sav. Accts.*, 553 So. 2d 823, 825 (La. 1989) ("Because Act 727 was apparently patterned after 18 U.S.C. § 1961 et seq. . . . federal decisions in this area are persuasive.").

[33]    *Farmer v. D&O Contractors, Inc.*, 640 F. App'x 302, 304 (5th Cir. 2016).

[34]    *See Nine Sav. Accts.*, 533 So. 2d at 825.

[35]    *CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, No. 19-0745, 2019 WL 2865256, at *4 (La. App. 1st Cir.), *writ denied*, 282 So. 3d 1069 (La. 2019) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000)).

[36]    *Id.*

[37]    *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998).

valid "pattern," plaintiffs fail to allege actionable injuries, and some of plaintiffs' claims are prescribed. Plaintiffs also overarchingly fail to plead any of the underlying conduct with particularity—lacking the basic "who, what, when, and where" components of their claims against TAF or failing to identify anyone at TAF acting criminally on its behalf.

## I.    TAF cannot be liable under the Louisiana Racketeering Act because plaintiffs have not alleged that TAF engaged in narrowly defined "racketeering activity."

The Louisiana Racketeering Act provides a cause of action against "*any person engaged in racketeering activity* who violates a provision of 15:1353."[38] In other words, a defendant cannot be liable under the Act "unless *that defendant* has engaged in . . . criminal conduct."[39] Allegations that a defendant generally profited or otherwise benefited from racketeering activity are insufficient.[40] Thus, potential liability does "not exist unless the pleadings allege actual criminal activity" by a specific defendant,[41] and a complaint that does not adequately allege the underlying criminal acts cannot survive a motion to dismiss.[42]

Here, plaintiffs try to build a racketeering claim by group pleading that every defendant either "commit[ed], attempt[ed] to commit, conspire[ed] to commit, or solicit[ed], coerc[ed], or

---

[38]    La. Stat. § 15:135 (emphasis added).

[39]    *CamSoft Data*, 2019 WL 2865256, at *4 (collecting cases); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 488 (1985) ("As defined in the statute, racketeering activity consists not of acts for which the defendant has been convicted, but of acts for which he could be.").

[40]    *CamSoft Data*, 2019 WL 2865256, at *4.

[41]    *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016) ("[C]ivil-RICO liability should not exist unless the pleadings allege actual criminal activity.").

[42]    *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) ("Appellants have still not sufficiently pled the predicate acts . . . and are unable to show that they were injured by a violation of RICO. The district court's dismissal of the RICO claims under Rule 12(b)(6) was therefore ultimately proper.").

intimidate[ed] another person to commit"[43] five crimes: (A) corrupt influencing (La. Stat. § 14:120); (B) public intimidation and retaliation (La. Stat. § 14:122); (C) intimidating, impeding or injuring witnesses (La. Stat § 14:129.1); (D) injuring public records (La. Stat. § 14:132) or filing or maintaining false public records (La. Stat. § 14:133); or (E) money laundering (La. Stat. § 14:230). But plaintiffs fail to include any specificity as to TAF by omitting any reference to a person at TAF who actually engaged in criminal conduct.  More importantly, the acts plaintiffs complain TAF committed do not violate any of these criminal statutes and cannot serve as a predicate for a civil racketeering claim.

### A. Plaintiffs' corrupt influencing claim does not validly or plausibly allege TAF engaged in criminal activity.

"[C]orrupt influencing is the giving or offering to give anything of apparent . . . value to . . . any person, with the intention that the recipient shall corruptly influence the conduct of any [public employee] in relation to such person's position, employment, or duty."[44]

To start, plaintiffs concede they never allege corrupt influencing in their complaint but manufactured this claim only after being ordered to provide a more specific case statement.[45] Now, plaintiffs argue TAF "gave bonuses and incentive-based payments" to certain public employees to "prioritize game wins . . . over their Title IX reporting requirements" and supposedly paid for Athletic Department training that influenced unidentified "LSU Responsible Employees" to "conceal reports of Sexual Misconduct and intimidate witnesses."[46] That argument is not sufficient to state a corrupt influencing claim.  Plaintiffs nowhere allege that any person acting on TAF's

---

[43]     R. Doc. 103 at 3 n.4.

[44]     La. Stat. § 14:120(A).

[45]     R. Doc. 103 at 55 n.39.

[46]     *Id.* at 56–57.

intended to corruptly influence anyone.  To the contrary, the Husch Blackwell report finds "*no evidence* that anyone . . . put *any sort of pressure* on the Title IX Office or otherwise to . . . favor[] . . . student athletes,"[47] directly contradicting—and thus superseding—plaintiffs' factually untethered and implausible accusations.[48] Coach Orgeron's football contract, likewise belies any such allegations because it reveals he could be paid for "services rendered . . . directly to [TAF]."[49] Rather than "services rendered" meaning forcibly silencing victims or falsifying public records, an "obvious alternative explanation" is that TAF may pay Coach Orgeron for participating in fundraising events for the private, nonprofit corporation the Louisiana legislature specifically encourages to fundraise for the state's largest university.[50]

**B.    Plaintiffs' public intimidation claim fails because mere threats of economic harm are insufficient; and regardless, plaintiffs do not allege TAF threatened anyone.**

"[P]ublic intimidation is the use of violence, force, extortionate threats, or true threats upon any [public employee], with the intent to influence his conduct in relation to his position, employment, or duty."[51] Plaintiffs concede that "violence, force, . . . or true threats" (which also

---

[47]    R. Doc. 22-1 at 144–45.

The Husch Blackwell report also says nothing about TAF funding "purposefully deficient Title IX training," as plaintiffs allege.  R. Doc. 22 at ¶ 10.  Rather, the report states an outside consultant tasked with addressing "NCAA compliance, student-athlete wellness and abuse, and other [non-Title IX] ethical concerns specific to athletics operations . . . *reasonably relied* on policies and information *shared by Athletics administration*," not TAF.  R. Doc. 22-1 at 32–33.

[48]    *Quadvest, L.P. v. San Jacinto River Auth.*, 7 F. 4th 337, 345 (5th Cir. 2021) ("If an attached exhibit contradicts a factual allegation in the complaint, then indeed the exhibit and not the allegation controls." (collecting cases)).

[49]    R. Doc. 22-2 at 8.

[50]    La. Stat. § 17:3390(B)(3) ("The corporation reimburses, either directly or through in-kind services, the cost of housing, personnel, which personnel shall remain public servants for all purposes, and other support furnished to the corporation by any institution . . . if any such support is furnished.").

[51]    La. Stat. § 14:122(A)(1).  Though plaintiffs use "retaliation" in this section of their case statement, *see* R. Doc. 103 at 40–41, they cannot mean to invoke "public . . . retaliation" as defined in § 14:122(B).  That requires the "use of violence, force, extortionate threats, or true threats upon [an

9

requires violent intent) do not apply here.[52] "Extortionate threats" means "communicat[ing] an unlawful threat to *harm another person* with the intention to obtain anything of value or any . . . advantage [that] the person would not otherwise be able to lawfully secure . . . *from the victim*."[53]

Though § 14:122 does not define "harm another person," the plain meaning is "material or tangible" "injury . . . or damage."[54] Reading this definition against the statute's surrounding terminology——violence, force, and violence again——reveals § 14:122 prohibits only threats of *physical* injury. Read any other way, the statute is unconstitutionally overbroad and unenforceable, as the Fifth Circuit held in *Seals v. McBee*.[55] Indeed, as the Supreme Court explains, the maxim "that a word is known by the company it keeps . . . is often wisely applied . . . to avoid [] giving [] unintended breadth to [] Acts of Congress."[56] Plaintiffs do not allege TAF (or anyone else) threatened a public employee with physical injury and thus cannot maintain a racketeering claim based on § 14:122 as a predicate act.

Even if some vaguer harm were actionable—contrary to *Seals*—plaintiffs fail to specify how TAF is involved.[57] They allege "participants . . . threatened [unidentified] public employees with harm in the form of adverse employment consequences such as [unidentified] Retaliation and

---

elected official]" if "[t]he violence, force, or threat is related to the [official's] duties" or "[i]s in retaliation or retribution for actions taken by the elected official as part of his official duties." *Id.*

[52]  *See* R. Doc. 103 at 40 n.28.

[53]  La. Stat. § 14:122(C)(1) (emphasis added).

[54]  *Harm*, Black's Law Dictionary (11th ed. 2019).

[55]  *Seals v. McBee*, 898 F.3d 587 (5th Cir. 2018). In *Seals*, the Fifth Circuit interpreted an earlier version of the statute criminalizing the "use of violence, force, or threats" against public employees. Even narrowly defining "threats" to mean any "statement of an intention to inflict pain, injury, damage, or other hostile action on someone," the Fifth Circuit found this definition "easily" encompassed lawful threats of "harm or injury to the character of [a] person." *Id.* at 594, 595. Thus, the statute was facially overbroad, unconstitutional, and unenforceable. *Id.* at 598, 600.

[56]  *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961).

[57]  *See* R. Doc. 103 at 40–41.

[unidentified] economic loss" to dissuade them from complying with "federal law and LSU's Title IX Policy."[58] But the only allegation against TAF is its supposed "bonus or incentive payments to public employees."[59] TAF's giving a public employee something of value is different from threatening a public employee to *receive* something valuable from the threatened employee.[60]

**C. Plaintiffs' intimidating witnesses claim fails because they never allege TAF threatened force against or injured witnesses in their person or property.**

Revised Statute § 14:129.1(A) prohibits any person from "intentionally" either (1) intimidating or impeding "by *threat of force or force*" a witness "with intent to influence . . . h[er] reporting of criminal conduct" or (2) injuring or trying to injure a witness "in h[er] person or property . . . with intent to influence . . . h[er] reporting of criminal conduct."[61]

The statute does not define "force" under subsection (A)(1), but its plain meaning (as in, "excessive force" or "deadly force") requires *physical* force.[62] Plaintiffs do not allege TAF (or anyone else) physically forced them to do anything, so they cannot state a racketeering claim based on § 14:129.1(A)(1) as a predicate act.[63] Though Jane Doe alleges she "was forced" to participate in four Title IX interviews, even if this qualified as criminal "force," Doe alleges nothing against TAF.[64] Neither she nor her harasser was a student-athlete, and Doe never alleges the Athletic

---

[58]     *Id.*

[59]     *See id.* at 41.

[60]     *See id.*

[61]     La. Stat § 14:129.1(A) (emphasis added).

[62]     *See generally Stokeling v. United States*, 139 S. Ct. 544, 551 (2019) (noting "[t]he overlap between 'force' and 'violence'" and that "force" typically means "power, violence, or pressure directed against a person or thing").

[63]     *See* R. Doc. 103 at 42–46.

[64]     *Id.* at 46.

Department or TAF knew about her mistreatment (or that TAF knew anything about her dissatisfaction with her confidential Title IX proceeding).[65]

Under subsection (A)(2) "injury . . . in [someone's] person" similarly conveys a tangible, physical injury. Plaintiffs' allegations of "witness intimidation" sweep far too broadly. For example, though defendants Stewart and Soil-Cormier's "laugh[ing] at" one victim and defendant Sanders's "inappropriate[ly] and unnecessary[ily]" questioning another may be rude, it is not a crime.[66] And plaintiffs still fail to allege TAF took any of these actions. Here, again, plaintiffs contend that TAF "created and implemented" inadequate Title IX training—but these allegations, even if true, do not constitute criminal intimidation of a witness.  Plus, these allegations are contradicted by federal law establishing TAF has *no* Title IX obligations and the Husch Blackwell report and therefore should not be considered. Because TAF has not injured or forcibly intimidated (or tried to do either to) any plaintiffs, they cannot state a racketeering claim with § 14:129.1(A)(1) or (2) as a predicate act.

**D. Plaintiffs' public records claims against TAF fail because TAF, a private entity, neither "injured" public records nor maintained false public records.**

Revised Statute § 14:132 criminalizes "injuring" public records by prohibiting the "intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, *filed or deposited*, by authority of law, in any public office or with any public officer."[67] The statute's past tense "filed or deposited" means the record must have been filed or deposited *before* the perpetrator took, destroyed, changed, or hid it.[68] Plaintiffs allege

---

[65]    *See generally* R. Doc. 22 at ¶¶ 302–21.

[66]    R. Doc. 103 at 43, 44.

[67]    La. Stat. § 14:132(A)–(B) (emphasis added).

[68]    *See* 17 La. Civ. Law Treatise, Criminal Jury Instructions, §10:214.

TAF tried to *preemptively* conceal public information by "providing [unidentified public employees] private cell phones."[69] Even if this were true, the Louisiana Supreme Court holds preemptive efforts to conceal public records do not violate § 14:132.[70]

Revised Statute § 14:133(A) criminalizes maintaining "false" records by prohibiting "maintaining as required by law, regulation, or rule, with knowledge of its falsity . . . (1) [a]ny forged document[,] (2) [a]ny wrongfully altered document[,] or (3) [a]ny document containing a false statement or false representation of a material fact."[71] Though TAF is a private corporation not subject to Louisiana's Public Records Act, plaintiffs allege from nothing that TAF "intentionally trained [lower-ranking members of the racketeering enterprise] to keep . . . false and misleading records."[72] Presumably, plaintiffs are again trying to rely on the Beebe Group's athletic department training in which Husch Blackwell found the consultant "*reasonably relied* on policies and information shared by *Athletics administration*."[73] And though Husch Blackwell notes only that this training may have "confused" students and employees about how to "report Title IX-specific misconduct,"[74] there is no suggestion, even among the specifically excerpted training

---

[69]    R. Doc. 103 at 50.

[70]    *State v. Fraley*, 512 So. 2d 856, 856 (La. 1987) (holding defendant "did not injure a public record" because he did not "falsify a record *already filed or deposited* . . ." (partial emphasis added)); *see also Rigney v. Dep't of Police*, 10 So. 3d 861, 866 (La. App. 4th Cir. 2009) (Tobias, J., concurring) ("[B]y implication, the statute requires that the concealment must take place *after* a record, document, or other thing has been deposited with the appropriate authority.").

For the same reason, plaintiffs' footnote theory that "[b]ecause all LSU employees are required to report . . . sexual misconduct, every instance of non-reporting"—preemptive failure to create a record—"is an intentional injury to the public records" also fails.  R. Doc. 103 at 47 n.36.

[71]    La. Stat. § 14:133(A).  Plaintiffs do not allege anyone "filed" or "deposited" false public records. *See generally* R. Doc. 103 at 50 & n.37.

[72]    R. Doc. 103 at 48, 51.

[73]    R. Doc. 22-1 at 33 (emphasis added).

[74]    *Id.* at 32.

slides, that employees were encouraged or expected to "falsify" records.[75] Nor do plaintiffs allege who at TAF allegedly "intentionally trained" LSU employees to falsify public records. Without details, plaintiffs' fantastical theories are not plausible allegations of criminal conduct, and their racketeering claim based on public records crimes cannot stand.

   **E. Plaintiffs' money laundering claims against TAF fail because, though plaintiffs try to allege TAF gave private donor funds "to the enterprise," plaintiffs do not allege TAF "derived" proceeds from any criminal activity.**

   "Money laundering" is basically defined as "knowingly" transacting, transferring, receiving, or maintaining "proceeds *of a criminal activity*" or "proceeds *known to be derived from criminal activity* . . . [or] from any violation of criminal activity."[76] And "proceeds" means "funds acquired or derived directly or indirectly from . . . an act."[77] The only "funds" TAF has access to are the "private funds" it receives voluntarily from alumni or community donors.[78]

   Plaintiffs contend TAF derived millions "from intimidat[ing] witnesses and creat[ing] false records" to build a football locker room and "hire inadequate Title IX training personnel."[79] Beyond plaintiffs' failure to viably allege against TAF the fundamental crimes of intimidating witnesses and falsifying public records, they don't allege how funds were supposedly "derived from" intimidating any witness or creating false public records.[80] Unless plaintiffs are prepared to argue that every TAF donor is a "knowing" racketeer and criminal conspirator in physically intimidating witnesses and falsifying public records, plaintiffs' argument cannot stand. Plaintiffs

---

[75]   *See id.* at 32–34.

[76]   La. Stat. § 14:230(B)(1)–(6) (emphasis added).

[77]   La. Stat. § 14:230(A)(4) (emphasis added).

[78]   *See generally* La. Stat. § 17:3390 (recognizing "private, nonprofit organizations that raise private funds for the support of public institutions of higher education").

[79]   R. Doc. 103 at 54.

[80]   *See generally id.*

again allege TAF "paid for . . . cell phones, used to further the Enterprise by concealing communications from public records,"[81] but still fail to explain how TAF "derived" proceeds from cell phone use, rather than from innocuous donations. Because plaintiffs cannot transform TAF's legitimate fundraising into "laundered" criminal proceeds, this racketeering claim fails.

## II.    Plaintiffs have not alleged TAF engaged in an actionable "pattern" of racketeering.

Even if plaintiffs had sufficiently alleged TAF engaged in criminal predicate acts, Plaintiffs' racketeering claims still fail because plaintiffs do not adequately allege TAF engaged in a "pattern of racketeering activity."[82] A "pattern" is "at least two incidents of racketeering activity that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents."[83] To establish a pattern, a plaintiff "must show that the racketeering predicates are related*, and that they amount to or pose a threat of *continued criminal activity*."[84] This continuous pattern requirement aims to ensure that the "extraordinary remedy [of racketeering claims] does not threaten the ordinary run of commercial transactions."[85] As explained above, plaintiffs fail to allege that TAF committed a single act of "racketeering" under Louisiana's criminal law, much less facts to sufficiently allege a threat of continued criminal activity.

Continuity "may be shown by either a closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'"[86]

---

[81]    R. Doc. 103 at 54.

[82]    La. Stat. § 15:1352(C).

[83]    *Id.*

[84]    *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

[85]    *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 (4th Cir. 2002).

[86]    *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996).

Plaintiffs' claim must depend on a "closed period" because they do not plausibly allege a "threat of repetition extending indefinitely into the future" or that the "predicates are a regular way of conducting defendant's ongoing legitimate business."[87] With Husch Blackwell's publication of its investigation report, LSU itself outed its Title IX practices and now regularly publishes "progress reports" detailing its remedial efforts.[88] Plaintiffs thus have no basis for contending supposedly criminal conduct continues today. To prevail on a "closed period" claim, plaintiffs must show "a series of related predicates extending over a substantial period of time."[89] Seven months of activity, for example, is insufficient.[90] And while the Supreme Court requires at least two acts of criminal racketeering, "two acts . . . may not be sufficient."[91]

Here, even if the allegations showed TAF committed any predicate crime, the allegations are sporadic and of undetermined duration, failing to show continuous racketeering activity. Both plaintiffs' complaint and racketeering case statement repeat these allegations (none of which is racketeering activity):

- TAF compensated certain athletic employees at an unidentified time and for an unidentified duration.[92]

---

[87]    *Id.*

[88]    *See, e.g.,* LSU, Title IX Progress, Progress on Husch Blackwell Recommendations (updated Oct. 18, 2021), https://www.lsu.edu/titleix-review/docs/hb-progress-report.pdf (last visited Nov. 7, 2021).

The court may judicially notice this information contained on a state website. *See generally Swindol v. Aurora Flight Sciences Corp.*, 805 F.3d 516, 519 (5th Cir. 2015) (taking judicial notice of public records available on official website).

[89]    *Word of Faith*, 90 F.3d at 122.

[90]    *Malvino v. Delluniversita*, 840 F.3d 223, 232 (5th Cir. 2016).

[91]    *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985).

[92]    R. Doc. 22 at ¶ 96.

16

- TAF once paid a consultant to conduct in-house Athletics Department training in 2016.[93]

- TAF paid for unidentified athletic employees' private cell phones at an unidentified time and for an unidentified duration.[94]

Plaintiffs' reliance on allegedly "private cell phones" is illuminating. While contending TAF paid for cell phones so LSU could avoid its public record obligations, plaintiffs do not allege that they have ever sent a public records request for cell phone records or that LSU failed to produce responsive information because it was allegedly "private."[95] And if LSU had failed to produce what plaintiffs contend is validly public information, that would be a basis for an public records suit in Louisiana state court—*not* claims of criminal racketeering against TAF.[96] Plaintiffs themselves allege "Louisiana's Public Records Law does not exempt any communications on the basis of who pays for its means, and such communications would not be exempt from disclosure under the law."[97] Thus, plaintiffs' own internally inconstant allegations reveal the absurdity of their argument that their failure to obtain public records through proper channels makes TAF a criminal. Importantly too, not one of the plaintiffs alleges that LSU's poor handling of their Title IX claims stems from any athletic employee's use of a phone.[98] And Andries, Doe, Hovis, and Kitch allege no relationship at all with a student-athlete or athletic employee.[99]

---

[93]    *Id.* at ¶ 99.

[94]    *Id.* at ¶ 100.

[95]    *See generally id.*

[96]    *See generally McKay v. State ex rel. Div. of Admin.*, 143 So. 3d 510, 514, 517 (La. App. 1st Cir. 2014) (affirming trial court's conclusion that cell phone call records and text messages are validly public records).

[97]    R. Doc. 22 at ¶ 100 n. 19.

[98]    R. Doc. 22 at ¶¶ 110–352.

[99]    *Id.* at ¶¶ 209–43, 302–21, 322–39, 340–52.

Plaintiffs' reliance on one isolated incident of LSU's hiring, and TAF's paying for, a consultant to train Athletic Department employees is also misplaced because this does not constitute a pattern of racketeering activity.  Though plaintiffs contend this one instance of training supposedly spawned a decades' worth of criminal racketeering by *other people*, plaintiffs cannot point to any conduct *by TAF*.  Accordingly, because plaintiffs have pleaded only sporadic and unrelated allegations against TAF, plaintiffs have failed to allege a cognizable pattern of racketeering activity.

## III. Plaintiffs fail to allege cognizable injuries caused "by reason of" the alleged violations of § 15:1353(A), (B), or (C).[100]

Plaintiffs contend, without supporting authority, that unlike the federal RICO Act, the Louisiana Racketeering Act—specifically "modeled after" and "analogous to" the federal RICO statute—"provides a remedy for *all* injuries without limitation."[101] But the statutory text, interpretative caselaw, and common sense prove otherwise.

Starting with the statutory text, § 15:1356(E) provides that "[a]ny person who is injured *by reason of any violation of the provisions of R.S. 1353* shall have a cause of action."[102] The federal racketeering remedial provision similarly states, "[a]ny person injured in his business or property *by reason of a violation of section 1962* . . . may sue therefor."[103] Interpreting only the phrase "by reason of" in *Holmes v. Securities Investor Protection Corp.*, the Supreme Court succinctly rejected the exact argument plaintiffs make here and held that, for a plaintiff to prove an injury

---

[100]    Failing to properly plead a claim under subsections (A), (B), or (C) means plaintiffs correspondingly fail to properly plead a conspiracy claim under subsection (D). *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 202 (5th Cir. 2015).

[101]    R. Doc. 80 at 8.

[102]    La. Stat. § 15:1356(E) (emphasis added).

[103]    18 U.S.C. §1964(c).

"by reason of" a defendant's violation of a substantive racketeering provision, the plaintiff must prove that the violation *proximately caused* the plaintiff's injury.[104] The Court began by noting "the very unlikelihood that Congress meant to allow *all* factually injured plaintiffs to recover[, so] RICO should not get such an expansive reading."[105] The Court also considered "[t]he general tendency of the law, in regard to damages at least, . . . not to go beyond the first step, "[106] aptly warning that "[a]llowing suits by those injured only indirectly would open the door to massive and complex damages litigation [that] would not only burden the courts, but would also undermine the effectiveness of treble-damages suits."[107]

The Fifth Circuit naturally requires the same showing, holding that a plaintiff has a cause action only if "she has been injured 'by reason of' a violation of RICO's criminal prohibitions."[108] Citing *Holmes*, the Fifth Circuit "requires plaintiffs to establish both but-for cause and proximate cause in order to show injury by reason of a RICO violation."[109] And proximate cause for RICO violation injuries is *not* a "foreseeability" test; "instead, the plaintiff must demonstrate that the alleged violation 'led directly' to the injuries."[110]

Because, like the federal racketeering statute, the Louisiana statute requires injuries to occur "by reason of a violation of R.S. 15:1353," the separate statutory language of § 15:1353 is important.  For example, subsection 1353(A) prohibits any person who "knowingly received any

---

[104]    *See* 503 U.S. 258, 267–68 (1992).

[105]    *Id.* at 266.

[106]    *Id.* at 271 (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983)).

[107]    *Id.* at 274 (alterations omitted) (quoting *Assoc. Gen. Contractors*, 459 U.S. at 545).

[108]    *Toress v. S.G.E. Mgmt., L.L.C.*, 838 F. 3d 629, 637 (5th Cir. 2016) (quotation marks partly omitted).

[109]    *Id.* at 636.

[110]    *Molina-Aranda v. Black Magic Enters., LLC*, 983 F.3d 779, 784 (5th Cir. 2020) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).

proceeds derived . . . from a pattern of racketeering activity" from "us[ing] or invest[ing] . . . . [those] proceeds [to] acqui[re] any title to, or any right, interest, or equity *in immovable property or in the establishment or operation of any enterprise.*"[111] So to pursue a right of action based on subsection 1353(A), a plaintiff must allege injury directly resulting from a defendant's "investment or use of racketeering proceeds," *not* the predicate acts of racketeering from which the income flowed.[112] "[A]lleging an injury solely from the predicate racketeering acts themselves is not sufficient because [subsection] (a) does not prohibit those acts."[113] Similarly, subsection 1353(B) prohibits any person from "knowingly . . . acquir[ing] or maintain[ing] . . . any interest in or control of *any enterprise or immovable property.*"[114] So a plaintiff's injury must stem directly from the defendant's controlling the enterprise or property, which is different from damages stemming from the predicate racketeering activity.[115] The same is true for Subsection 1353(C), which prohibits a person "associated with any enterprise [from] knowingly . . . . participat[ing] in . . . *such enterprise* [by] racketeering."[116] It makes sense that the statute focuses on commercial activity because, like antitrust laws that racketeering statutes are modeled on, racketeering statutes aim to criminalize "unfair methods of *competition.*"[117]

---

[111]    La. Stat. ¶ 15:1353(A) (emphasis added).

[112]    *See Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 550–51 (5th Cir. 2012) ("To establish a claim under § 1962(a), a plaintiff must show that its injuries resulted *from the investment or use of racketeering proceeds*. In other words, injuries resulting from predicate acts of 'racketeering activity' themselves cannot form the basis of an investment injury.").

[113]    N. *Cypress Med. Ctr.*, 781 F.3d at 201.

[114]    La. Stat. § 15:1353(B) (emphasis added).

[115]    *N. Cypress Med. Ctr.*, 781 F.3d at 202 (affirming dismissal because plaintiff could not show direct nexus between injuries and the defendant's controlling the enterprise).

[116]    La. Stat. § 15:1353(C).

[117]    *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457, 484 (2006) (emphasis in original removed and emphasis added).

It is thus incorrect for plaintiffs to say that none of their injuries must be tethered to business or property.[118]    Their argument, premised only on the federal statute's writing "business or property" into its remedial provision, ignores the rest of that provision, specifically, and the overall statutory text.    At least two federal district courts in the Fifth Circuit considering Louisiana racketeering claims have reached the same conclusion. In *Viking Construction Group, LLC v. Satterfield & Pontikes Construction Group Inc.*, Judge Africk cited Supreme Court and Fifth Circuit authorities holding "[a] RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."[119] Ultimately, Judge Africk dismissed the claims as untimely, and on "careful review of the record, the parties' briefs, and the district court's ruling," the Fifth Circuit affirmed.[120] In *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol North America Inc.*, Western District Judge Minaldi considered the injury-to-business-or-property requirement twice. First, finding plaintiffs "failed to allege a single tangible injury to their 'business or property' proximately caused by any alleged racketeering violation" and thus lacked "standing" to pursue a racketeering claim, Judge Minaldi dismissed plaintiffs' state racketeering claims under Rule 12(b)(1), rather than Rule 12(b)(6).[121] On appeal, the Fifth Circuit vacated Judge Minaldi's dismissal because "whether plaintiff stated a claim under Louisiana's Racketeering Act [is] a Rule 12(b)(6) question," not an "Article III standing" issue for dismissal under Rule 12(b)(1).[122] The Fifth Circuit found no error in Judge

---

[118]    *See generally Crowe v. Henry*, 43 F.3d 198, 203–04 (5th Cir. 1995) (noting that, when "[re]duced to their simplest terms," RICO's subsections are all connected to a business enterprise).

[119]    No. CV 17-12838, 2018 WL 401182, at *4 n.17 (E.D. La. Jan. 12, 2018) (Africk J.) (quoting *Sedina, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Landry v. Airline Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1260–61 (5th Cir. 1990)), *aff'd*, 728 F. App'x 405 (5th Cir. 2018).

[120]    728 F. App'x at 406.

[121]    No. 11-0856, 2012 WL 4960389, at *2 (W.D. La. Oct. 16, 2012).

[122]    *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc.*, 544 F. App'x 455, 457 (5th Cir. 2013).

Minaldi's substantive analysis.[123] On remand, Judge Minaldi again ruled that, because the plaintiff's alleged injury "would require 'extensive speculation' rather than 'the calculation of present, actual damages,'" in violation of Fifth Circuit law, the plaintiff "has not alleged a concrete financial loss which would confer RICO standing" under the Louisiana Racketeering Act.[124]

There should be no dispute that plaintiffs' injuries are not commercial, economic injuries since they dismissed their federal racketeering claim for imposing that requirement.[125] In any event, the Supreme Court, Fifth Circuit, and other federal circuits agree that personal injuries, emotional distress,[126] medical expenses,[127] loss of reputation,[128] lost income or benefits,[129] and lost employment opportunities[130] are not cognizable injuries for a racketeering claims.[131] Plaintiffs' claimed injuries are no different; thus, their racketeering claim should be dismissed.

---

[123]    *See id.*

[124]    No. 11-0856, 2013 WL 4516007, at *3 (W.D. La. Aug. 22, 2013).

[125]    *See generally* R. Doc. 67.

[126]    *E.g.*, *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995) ("An allegation of personal injury and pecuniary losses occurring [from mental anguish] are not sufficient to meet the statutory requirement of injury to 'business or property.'").

[127]    *E.g.*, *Gucwa v. Lawley*, 731 F. App'x 408, 412 (6th Cir. 2018) ("Even though personal injuries may lead to monetary damages, such personal injuries and their associated pecuniary losses—including medical expenses—do not confer relief under § 1964(c).").

[128]    *E.g.*, *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c).").

[129]    *E.g.*, *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992) ("Doe's loss of earnings . . . are plainly derivatives of her emotional distress—and therefore reflect personal injuries which are not compensable under RICO.").

[130]    *E.g.*, Grogan *v. Platt*, 835 F.2d 844, 848 (11th Cir. 1988) (holding RICO plaintiffs cannot recover for lost employment opportunities when they are "most properly understood as part of a personal injury claim").

[131]    *See generally Haw. v. Standard Oil Co. of Cal.*, 405 U.S. 251, 264 (1972) (applying the Clayton Act and interpreting the phrase "business or property" to require the plaintiff's injury to "refer to commercial interests or enterprises"); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (applying the Clayton Act and interpreting the phrase "business or property" to exclude "personal injuries suffered"); *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001) ("Because the only

**IV.    Plaintiffs' claims based on predicate acts before April 26, 2016, and Sarah Beth Kitch's individual claim are prescribed.**

Plaintiffs contend that all the alleged predicate acts began in 2009. But any racketeering claims that accrued before April 26, 2016, are prescribed.[132] Plaintiffs cannot use an independent predicate act inside the limitations period to "bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period."[133] The Fifth Circuit allows a plaintiff to recover only "for racketeering injuries discovered or discoverable within the limitations period."[134] Thus, any claims premised on conduct before April 2016 must be dismissed.

For the same reason, Sarah Beth Kitch's racketeering claim must be dismissed entirely. Kitch alleges injuries from LSU's Title IX failures while she was a Ph.D. student before she graduated and left in 2014.[135] There is no dispute Kitch had "knowledge or constructive knowledge of the injury giving rise to [her racketeering claim]," which triggers prescription,[136] because she alleges "this [graduate program] environment" caused her "severe health problems, including . . . panic attacks, persistent feelings of dread and despair, a sense of worthlessness, and feelings of intense shame and humiliation."[137] After graduating LSU—again, six years before this lawsuit— Kitch suffered "triggering flashbacks" to her harassment, which interfered with her work and career.[138] It's Kitch's knowledge of these injuries—no matter if she knew the "other elements of a

---

damages asserted . . . are for personal injuries, the district court's judgment on the pleadings . . . was proper.").

[132] La. Stat. § 15:1356(H).

[133] *Viking Constr. Grp.,* 2018 WL 401182, at *3.

[134] *Id.* (collecting cases).

[135] R. Doc. 22 at ¶¶ 340, 346.

[136] *Farmer*, 640 F. App'x at 304 n.3.

[137] R. Doc. 22 at ¶ 343.

[138] *Id.* at ¶¶ 346–47.

[racketeering claim]"—that "starts the limitations period running."[139]  The harassment and "daily

fear of sexual assault" Kitch alleges was enough to identify potential defendants and call for further

inquiry about her potential claims, meaning her claims prescribed years ago.[140]

## CONCLUSION

Plaintiffs' Louisiana Racketeering Act claims must be dismissed. They fail to allege any

legitimate underlying racketeering activity—let alone criminal conduct by TAF.  Plaintiffs also

fail to validly allege a "pattern" of racketeering or that they suffered injuries cognizable under

Supreme Court and Fifth Circuit precedent. Finally, many of plaintiffs' racketeering claims are

prescribed. For all these reasons, the court should grant this motion and dismiss plaintiffs'

racketeering claims against TAF.

Respectfully submitted,

*/s/ Chloé M. Chetta*
Judy Y. Barrasso, 02814
Laurence D. LeSueur, Jr., 35206
Chloé M. Chetta, 37070
Lance W. Waters, 37351
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA  70112
Telephone:  (504) 589-9700
jbarrasso@barrassousdin.com
llesueur@barrassousdin.com
cchetta@barrassousdin.com
lwaters@barrassousdin.com

*Counsel for Defendant Tiger Athletic
Foundation*

---

[139]    *See Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 176 (5th Cir. 2012); *Ames v. Ohle*, 97 So. 3d 386, 394 (La. App. 4th Cir. 2012) ("[P]rescription begins to run once there has been a determination that damage was sustained.").

[140]    R. Doc. 22 at ¶ 343.