UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                   CIVIL ACTION NO.:  3:21-cv-00242

            Plaintiffs,          SECTION

VERSUS                               JUDGE VITTER

LOUISIANA STATE UNIVERSITY, et al.   MAGISTRATE JUDGE JOHNSON

            Defendants.          **ORAL ARGUMENT REQUESTED**

**DEFENDANT TIGER ATHLETIC FOUNDATION'S MEMORANDUM IN SUPPORT
OF RULE 12(b)(6) MOTION TO DISMISS NON-RACKETEERING CLAIMS**

Judy Y. Barrasso, 02814
Laurence D. LeSueur, 35206
Chloé M. Chetta, 37070
Lance W. Waters, 37351
Barrasso Usdin Kupperman
 Freeman & Sarver, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701
jbarrasso@barrassousdin.com
llesueur@barrassousdin.com
cchetta@barrassousdin.com
lwaters@barrassousdin.com

*Counsel for Tiger Athletic Foundation*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .................................................................................................. 1

BACKGROUND ..................................................................................................... 1

STANDARD OF REVIEW ..................................................................................... 5

LAW AND ARGUMENT ....................................................................................... 6

I.      Plaintiffs' civil rights and state-law claims are all untimely because they accrued more than one year ago, and equitable tolling does not apply .............................................................................. 7

II.     Plaintiffs do not allege any actionable civil rights claims against TAF .................................................................................... 12

      A.     As a private corporation, TAF cannot be liable for civil rights violations ....................................................................... 13

      B.     Plaintiffs fail to plead substantively valid civil rights claims because they cannot identify any impermissible conduct by TAF ...................................................................... 16

III.    Plaintiffs do not allege any actionable state-law claims against TAF ......................... 18

      A.     As a private corporation separate from LSU, TAF did not owe plaintiffs any duty, or breach any purported duty, to control LSU ......................................................... 18

      B.     Plaintiffs' citation to Louisiana Civil Code article 2030 governing absolute nullity of contracts is clearly misplaced ...................................................................... 21

      C.     Plaintiffs' negligent supervision claim fails because TAF has no duty to supervise people whom it does not employ ........................................................................ 22

      D.     Plaintiffs' infliction-of-emotional distress claims also substantively fail ................................................................. 22

      E.     Civil conspiracy under Louisiana Civil Code article 2324 is not a separately recognized cause of action .......................... 23

      F.     Plaintiffs' assertion of other claims precludes any unjust enrichment claim .................................................... 24

CONCLUSION ...................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Se. Com. Cleaning, LLC*,
  136 So. 3d 329 (La. App. 5th Cir. 2014) ................................................................ 11

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999) ............................................................................................. 13, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 5, 6, 14

*Audler v. CBC Innovis Inc.*,
  519 F.3d 239 (5th Cir. 2008) ................................................................................. 19

*Barrie v. V.P. Exterminators, Inc.*,
  625 So. 2d 1007 (La. 1993) .................................................................................... 19

*Beaudoin v. Hartford Acc. & Indem. Co.*,
  594 So. 2d 1049 (La. App. 3d Cir. 1992) ............................................................... 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 6

*Bennett v. Gen. Motors Corp.*,
  420 So. 2d 531 (La. App. 2d Cir. 1982) ................................................................. 11

*Blum v. Yaretsky*,
  457 U.S. 991 (1982) ............................................................................................. 13, 15

*Branden v. F.H. Paschen, S.N. Nielsen, Inc.*,
  2019 WL 1760694 (E.D. La. Apr. 22, 2019) ......................................................... 23

*Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001) ................................................................................................ 13

*Brinkmann v. Johnston*,
  793 F.2d 111 (5th Cir. 1986) ................................................................................. 14

*Butler v. Denka Performance Elastomer, L.L.C.*,
  2021 WL 4810639 (5th Cir. Oct. 15, 2021) ........................................................... 19

*Canterbury Joint Venture v. Prudential Ins. Co.*,
  99 F.3d 1136, 1996 WL 595717 (5th Cir. 1996) .................................................... 23

*Chimm v. Univ. of Tex. at Austin*,
  836 F.3d 467 (5th Cir. 2016) ................................................................................... 6

*Cornish v. Corr. Servs. Corp.*,
  402 F.3d 545 (5th Cir. 2005) ................................................................................. 15

*Crockett v. Cardona,*
    713 So. 2d 802 (La. App. 4th Cir. 1998) ................................................................... 23

*Crowe v. Henry,*
    43 F.3d 198 (5th Cir. 1995) ....................................................................................... 17

*Crutcher-Tufts Resources, Inc. v. Tufts,*
    38 So. 3d 987 (La. App. 4th Cir. 2010) ..................................................................... 23

*Culbertson v. Lykos,*
    790 F.3d 608 (5th Cir. 2015) ..................................................................................... 16

*Dhaliwal v. Dhaliwal,*
    184 So. 3d 773 (La. App. 2d Cir. 2015) .................................................................... 23

*Dietz v. Dietz,*
    2009 WL 2707402 (W.D. La. Aug. 27, 2009) ........................................................... 23

*Duncan v. Wal-Mart La., L.L.C.,*
    863 F.3d 406 (5th Cir. 2017) ..................................................................................... 18

*Eldredge v. Martin Mariette Corp.,*
    207 F.3d 737 (5th Cir. 2000) ..................................................................................... 11

*Entergy Gulf States Louisiana, L.L.C. v. La. Generating, L.L.C.,*
    2020 WL 961499 (M.D. La. Feb. 27, 2020) .............................................................. 24

*Faucheaux v. Terrebonne Consol. Gov't,*
    615 So. 2d 289 (La.1993) .......................................................................................... 19

*Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.,*
    581 F. App'x 440 (5th Cir. 2014) .............................................................................. 24

*Garber v. Baden & Ranier,*
    981 So. 2d 92 (La. App. 3 Cir. 2008) ....................................................................... 24

*In re Taxotere (Docetaxel) Prods. Liab. Litig.,*
    995 F.3d 384 (5th Cir. 2021) ......................................................................... 10, 11, 12

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.,* No. 15-4790,
    2017 WL 4517287 (E.D. La. Oct. 10, 2017) ............................................................. 12

*Ingram v. Freeman,*
    326 So. 2d 565 (La. App. 3d Cir. 1976) ................................................................... 23

*Insulation Techs., Inc. v. Indus. Labor & Equip. Servs., Inc.,*
    122 So. 3d 1146 (La. App. 4th Cir. 2013) ................................................................. 24

*Jackson v. City of Hearne, Tex.,*
    959 F.3d 194 (5th Cir. 2020) ......................................................................... 15, 16, 17

*Jefferson v. Lead Industries Ass'n,*
    106 F.3d 1245 (5th Cir. 1997) ................................................................................... 23

*Keenan v. Donaldson, Lufkin & Jenrette, Inc.,*
    575 F.3d 483 (5th Cir. 2009) ..................................................................................... 11

*Khoobehi Props., L.L.C. v. Baronne Dev. No. 2, L.L.C.,*
   288 So. 3d 224 (La. App. 5th Cir. 2019) ................................................................ 23

*King v. Phelps Dunbar, L.L.P.,*
   743 So. 2d 181 (La. 1999) ...................................................................................... 22

*Lebron v. Nat'l R.R. Passenger Corp.,*
   513 U.S. 374 (1995) ................................................................................................ 13

*Louisiana v. Guidry,*
   489 F.3d 692 (5th Cir. 2007) .................................................................................. 23

*Lynch v. Cannatella,*
   810 F.2d 1363 (5th Cir. 1987) ................................................................................ 15

*Marin v. Exxon Mobil Corp.,*
   48 So. 3d 234 (La. 2010) (reve ................................................................................ 11

*Meany v. Meany,*
   639 So. 2d 229 (La. 1994) ...................................................................................... 19

*Nicholas v. Allstate Ins. Co.,*
   765 So. 2d 1017 (La. 2000) .................................................................................... 22

*Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.,*
   577 F.3d 264 (5th Cir. 2009) .................................................................................. 17

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.,*
   615 F. 3d 412 (5th Cir. 2010) .................................................................................... 5

*Quadvest, L.P. v. San Jacinto River Auth.,*
   7 F.4th 337 (5th Cir. 2021) ...................................................................................... 3

*Richard v. Wal-Mart Stores, Inc.,*
   559 F.3d 341 (5th Cir. 2009) .................................................................................... 7

*Richard,*
   599 F.3d ...................................................................................................................... 8

*Rountree v. Dyson,*
   892 F.3d 681 (5th Cir. 2018) .................................................................................. 14

*Rundus v. City of Dallas, Tex.,*
   634 F.3d 309 (5th Cir. 2011) .................................................................................. 13

*Schott, Tr. for Estate of InforMD, LLC v. Massengale,*
   2019 WL 4738795 (M.D. La. Sept. 27, 2019) ........................................................ 23

*Smith v. Citadel Ins. Co.,*
   285 So. 3d 1062 (La. 2019) .................................................................................... 21

*Swindol v. Aurora Flight Sciences Corp.,*
   805 F.3d 516 (5th Cir. 2015) .................................................................................. 19

*Terrebone Par. Sch. Bd. v. Columbia Gulf Transmission Co.,*
   290 F.3d 303 (5th Cir. 2002) .................................................................................. 11

*Terrel v. Perkins,*
   704 So. 2d 35 (La. App. 1st Cir. 1997) ............................................................ 11

*Walker v. Beaumont Indep. Sch. Dist.,*
   938 F.3d 724 (5th Cir. 2019) ........................................................................... 3

*Wallace v. Kato,*
   549 U.S. 384 (2007) ......................................................................................... 7

*Walters v. MedSouth Record Management, LLC,*
   38 So. 3d 241 (La. 2010) ................................................................................ 24

*Whitaker v. Collier,*
   862 F.3d 490 (5th Cir. 2017) ........................................................................... 6

*White v. Monsanto,*
   585 So. 2d 1205 (La. 1991) ............................................................................ 22

## Statutes

20 U.S.C. § 1681 ......................................................................................... 18, 19

28 U.S.C. § 1367 ............................................................................................. 18

29 U.S.C. § 794 ............................................................................................... 19

42 U.S.C. § 12132 ........................................................................................... 19

La. Stat. § 15:1351 ............................................................................................ 7

La. Stat. § 17:3390 ......................................................................... 2, 13, 14, 20

Louisiana Civil Code article 2030 .............................................................. 1, 21

Louisiana Civil Code article 2298 ............................................................. 7, 24

Louisiana Civil Code article 2315 ............................................................... 6, 7

Louisiana Civil Code article 2324 .......................................................... 1, 7, 23

Louisiana Civil Code article 3492 ................................................................... 7

## INTRODUCTION

Tiger Athletic Foundation (TAF) seeks to dismiss plaintiffs' claims against it. This memorandum addresses plaintiffs' civil rights and state-law claims, while their racketeering claim is the subject of a separate, contemporaneously filed motion.  Because this case is fundamentally about LSU's alleged failure to abide by Title IX—for which TAF bears no legal duties or responsibilities—each of the extraneous claims against TAF should be dismissed.

## BACKGROUND

This Title IX case arises out of LSU's alleged failure to maintain an adequate reporting, investigation, and disciplinary system for sexual assault complaints. Plaintiffs are ten women who allege that, while students, they experienced varying types of actionable sex discrimination under Title IX. Plaintiffs also allege that, when they reported their mistreatment to LSU, they were either largely ignored or, worse, belittled.[1] No plaintiff alleges that she reported her harassment or assault to anyone at TAF or that anyone at TAF ever knew about it.[2]  In particular, Andries, Doe, Hovis, and Kitch allege mistreatment having nothing to do with a student-athlete or athletic department employee, and thus nothing to do with TAF.[3]

TAF is a legislatively favored private, nonprofit fundraising corporation that "enhances the programs, facilities, and research and educational opportunities" at LSU.[4]  Louisiana law prohibits TAF from being deemed a state, public, or quasi-public actor "for any purpose."[5]  But plaintiffs

---

[1]    Some plaintiffs never reported their mistreatment at all. *See generally* R. Doc. 22 at ¶¶ 297–98 (alleging Kennan Johnson did not understand "weight and sexual orientation harassment constituted [Title IX] sex discrimination" and "was afraid" to make a report).

[2]    *See generally id.* at ¶¶ 110–352 (failing to identify TAF in the "individual factual allegations").

[3]    *Id.* at ¶¶ 209–43, 302–21, 322–39, 340–52.

[4]    La. Stat. § 17:3390(A).

[5]    La. Stat § 17:3390(B).

try to allege that, despite TAF's legislatively defined role outside the university system, TAF exerts a "level of control over LSU . . . beyond what would normally be expected of a nonprofit organization."[6]    For example, plaintiffs allege that, according to a 2020 contract, TAF is "allow[ed]" to purchase life insurance for LSU's football coach, which, if obtained, would require the coach "to cooperate" with TAF.[7]   Plaintiffs neglect to explain what this has to do with, for instance, Title IX Coordinator Jennie Stewart's failure to investigate Abby Owens' alleged rape or to provide support resources to students like Samantha Brennan in 2016, tennis coach Julia Sell's allegedly ridiculing Kennan Johnson in 2017, or a Ph.D. professor's sexually propositioning students like Sarah Beth Kitch before 2014.[8] Plaintiffs also allege that they think TAF paid for athletic department employees' cell phones so that LSU can "attempt to evade" public records law.[9]  But plaintiffs don't say whether they've ever sent a public records request, whether LSU has ever successfully avoided producing records, or whether that avoidance stemmed at all from allegedly private phones.[10]   Fundamentally, plaintiffs complain that they think TAF spent fundraising money "on training related to sexual misconduct, bullying, discrimination and other bad behavior within LSU Athletics Department."[11] They repeatedly assert that TAF—which has no control over LSU's Title IX obligations as a matter of federal law—"implemented a purposefully deficient sexual misconduct and Title IX reporting scheme" at LSU to "insulate[] coaches and players . . . from legitimate sexual assault claims."[12]

---

[6]    R. Doc. 22 at ¶ 95.

[7]    *Id.* at ¶ 98.

[8]    *See generally id.* at ¶¶ 177–91, 192–208, 283–301, 340–52.

[9]    *Id.* at ¶ 100.

[10]    *See generally id.*

[11]    *Id.* at ¶ 99.

[12]    *See, e.g.*, *id.* at ¶ 10.

But the "Husch Blackwell Report," on which plaintiffs' claims explicitly depend, says the opposite, and when an attached exhibit contradicts a complaint's allegations, the United States Fifth Circuit Court of Appeals holds that "the exhibit and not the allegation controls."[13]  Husch Blackwell conducted a months-long, comprehensive review of LSU's Title IX practices, resulting in a 262-page report with recommendations to "meaningfully improv[e] LSU's efforts to prevent and effectively respond to sex-based misconduct."[14]  In 262 pages, Husch Blackwell mentions TAF only once.

Husch Blackwell writes that, in 2016, TAF paid outside consultant Dan Beebe Group ("Beebe Group") to "conduct an Independent Assessment of human relations risks, including misconduct prevention policies and programs" at LSU, generally, and within the Athletic Department, specifically.[15]  According to Husch Blackwell, (1) LSU's General Counsel and Internal Auditors—not TAF—received a draft report of Beebe Group's written assessment, (2) "University leadership"—not TAF—discussed the report's findings directly with Beebe Group, and (3) "the University"—not TAF—declined to request a final version of the report.[16]  Husch Blackwell also notes that Beebe Group's report was "replete with solid recommendations" that LSU did not implement and that Husch Blackwell still urged LSU—not TAF—to consider.[17]

---

[13]    *Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021).

    In addition, because plaintiffs' first amended complaint attaches and incorporates by reference the Husch Blackwell Report, "the court may . . . properly consider those documents" in resolving this motion to dismiss.  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

[14]    R. Doc. 22-1 at 3.

[15]    *Id.* at 39.

[16]    *Id.* at 39–40.

[17]    *Id.* at 39.

According to Husch Blackwell, starting in 2013, "the Athletic Department used Taylor Porter to present on the topic of workplace harassment."[18] Then, in 2016, "*the Athletic Department engaged its own outside consultant, the 'Dan Beebe Group'* . . . to provide separate training to Athletic Department students and employees regarding rights and obligations with respect to incidents and reports of sex-based misconduct" as well as issues like "NCAA compliance, student-athlete wellness and abuse, and other ethical concerns specific to athletics operations."[19] For its presentation, Beebe Group "reasonably relied on policies and information shared by *Athletics administration*"—not TAF.[20]

In twelve single-spaced pages of recommendations "informed by all of the materials [Husch Blackwell] reviewed, [its] comments throughout the report, [its] understanding of national trends and well-recognized best practices, and . . . the input of the various members of the University community," TAF never comes up.[21] If it were true that TAF inserted itself into LSU's Title IX reporting structure and implemented a "deficient" reporting scheme for private financial gain, the 1000-person national law firm tasked with rooting out problems in LSU's Title IX system would have uncovered that, noted it among the many other issues it found plagued LSU's Title IX processes, and addressed it among their many recommendations.[22] Instead, Husch Blackwell found "no evidence" to support plaintiffs' theory:

> [T]he suggestion that LSU student athletes in the Title IX process are getting special treatment is *simply not supported* by what we have learned in this review. There is also *no evidence* that anyone in a leadership position within the University has put *any sort of*

---

[18]    *Id.* at 31.

[19]    *Id.* at 32 (emphasis added).

[20]    *Id.* at 33 (emphasis added).

[21]    *Id.* at 139–40.

[22]    *See generally* R. Doc. 22-1.

*pressure* on the Title IX Office or otherwise to reach conclusions favorable to prominent student athletes.[23]

Against this background, plaintiffs' motive for including TAF in this Title IX lawsuit is clear. While the eighteen other defendants are state entities or state actors in a higher education system beset with legislative budget cuts, plaintiffs allege—untethered to any claim or alleged conduct—that they think "TAF has over $400 million dollars [sic] in total assets."[24] Because TAF has zero control over LSU, its employees, or its obligations under federal or state law, TAF doesn't belong here at all, and plaintiffs' claims should be dismissed.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts "stat[ing] a claim to relief that is plausible on its face."[25] A claim is facially plausible only if it allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[26] Allegations must show "more than a sheer possibility that [the] defendant has acted unlawfully."[27] Though courts accept well-pleaded facts as true, courts *cannot* "credit conclusory allegations or allegations that merely restate the legal elements of a claim."[28]

The United States Supreme Court instructs that, on a Rule 12(b)(6) motion, "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management.'" It must be dismissed.[29]

---

[23]    *Id.* at 144–45.

[24]    R. Doc. 22 at ¶ 32.

[25]    *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F. 3d 412, 417 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[26]    *Iqbal*, 556 U.S. at 678.

[27]    *Id.*

[28]    *Chimm v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

[29]    *Iqbal*, 556 U.S. at 685 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

"Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[30] The Fifth Circuit agrees: "[p]laintiffs [ar]e not entitled to discovery without a properly pleaded complaint."[31]

## LAW AND ARGUMENT

Plaintiffs plead eleven causes of action against TAF:[32] (1) Count VI: First Amendment retaliation under § 1983,[33] (2) Count VII: denial of equal protection under § 1983,[34] (3) Count VIII: denial of procedural due process under § 1983,[35] (4) Count IX: conspiracy to interfere with civil rights under §§ 1985 and 1986,[36] (5) Count XII: negligence under Louisiana Civil Code article 2315,[37] (6) Count XIII: negligent supervision under Louisiana Civil Code articles 2315 and 2030,[38] (7) Count XIV: negligent infliction of emotional distress under Louisiana Civil Code articles 2315 and 2030,[39] (8) Count XV: intentional infliction of emotional distress under Louisiana Civil Code articles 2315 and 2030,[40] (9) Count XVII: civil conspiracy under Louisiana Civil Code article 2324,[41] (10) Count XIX: violations of the Louisiana Racketeering Act, La. Stat. § 15:1351, *et*

---

[30]    *Iqbal*, 556 U.S. at 678.

[31]    *Whitaker v. Collier*, 862 F.3d 490, 502 (5th Cir. 2017).

[32]    Plaintiffs dismissed their federal RICO claim identified in Count XVIII.  *See* R. Doc. 67.

[33]    R. Doc. 22 at ¶¶ 424–32.

[34]    *Id.* at ¶¶ 434–40.

[35]    *Id.* at ¶¶ 442–50.

[36]    *Id.* at ¶¶ 452–56.

[37]    *Id.* at ¶¶ 480–88.

[38]    *Id.* at ¶¶ 490–96.

[39]    *Id.* at ¶¶ 498–503.

[40]    *Id.* at ¶¶ 505–09.

[41]    *Id.* at ¶¶ 530–34.

11

*seq.*,[42] and (11) Count XX: unjust enrichment under Louisiana Civil Code article 2298.[43]  Each of these claims should be dismissed.

I.    **Plaintiffs' civil rights and state-law claims are all untimely because they accrued more than one year ago, and equitable tolling does not apply.**

Because there is no federal statute of limitations provision for section 1983 claims, courts apply the forum state's statute of limitations for tort claims.[44]  Under Louisiana Civil Code article 3492, "[d]elictual actions are subject to a liberative prescription of one year."[45]  So this one-year prescriptive period applies to both plaintiffs' state-law tort and civil rights claims.

Plaintiffs first filed this suit on April 26, 2021,[46] making the only timely claims those that accrued on or after April 26, 2020.[47] A tort claim accrues and prescription begins to run "from the day injury or damage is sustained."[48] And the plaintiff "bears the burden of showing that prescription has not run when the face of the [complaint] shows that the action is time-barred."[49]

Here, plaintiffs' complaint shows nearly all their individual actions are untimely because each plaintiff (other than Corinn Hovis)[50] alleges suffering physical, mental, and emotional injuries from LSU's Title IX failures while they were students over two years ago:

---

[42]    *Id.* at ¶¶ 554–80.

[43]    *Id.* at ¶¶ 582–87.

[44]    *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but . . . federal law looks to the law of the State in which the cause of action arose. . . for the length of the statute of limitations: It is that which the State provides for personal-injury torts.").

[45]    La. Civ. Code art. 3492.

[46]    R. Doc. 1.

[47]    *See* La. Civ. Code art. 3492.

[48]    *Id.*; *see also Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009) (same).

[49]    *Richard*, 599 F.3d at 345.

[50]    Hovis alleges that she was "deeply traumatized by . . . [LSU's] Title IX investigation process," which ended in May 2020, when the school suspended her rapist.  R. Doc. 22 at ¶¶ 331–33.

- After Calise Richardson reported misconduct to defendants Sharon Lewis and Keava Soil-Cormier in 2016,[51] she "immediately . . . faced retaliation" at her on-campus job and Soil-Cormier "spread[] office rumors" about her—*five years* before this lawsuit.[52]   When Richardson learned in 2018—*three years* before this lawsuit—that a Title IX investigation was closed without any resulting discipline, she was "extremely upset."[53]

- In 2016—*five years* before this lawsuit—defendants Miriam Segar, Mari Fuentes-Martin, and Ed Orgeron learned a football player raped Ashlyn Robertson and allegedly did nothing.[54]   Robertson starting abusing drugs and alcohol "as a result of [the] rape."[55]

- In 2016—*five years* before this lawsuit—Samantha Brennan told defendants Sharon Lewis and Miriam Segar, then LSU police, that a football player circulated a sexually explicit photo of her, and none of them offered Brennan any support, resources, or accommodations.[56] Brennan experienced "intense feelings of humiliation and shame" and left LSU that same year—again, *five years* before this lawsuit.[57]

- A football player raped Abby Owens in 2016, which "severely exacerbated" her pre-existing substance abuse.[58]   Owens left LSU in March 2017—*four years* before this lawsuit—"because she could not bear to be [near] her rapist."[59] No one reported Owens' rape until after she left.[60] Owens blames defendants for her substance abuse problems and the monetary losses she incurred leaving LSU and enrolling elsewhere.[61]

- A fraternity member sexually assaulted Elizabeth Andries on a 2016 bus trip and tried to assault her again in 2017.[62]   That fall—*four years* before this lawsuit—Andries reported her assault to LSU and obtained victim resources in February 2018—*three years* before this lawsuit.[63] In 2019—*two years* before this lawsuit—defendant Jonathan Sanders

---

[51]   *Id.* at ¶¶ 123, 127.

[52]   *Id.* at ¶¶ 132, 138.

[53]   *Id.* at ¶ 152.

[54]   *Id.* at ¶¶ 157, 159, 161, 164, 169–70.

[55]   *Id.* at ¶¶ 173, 175.

[56]   *Id.* at ¶¶ 178, 180, 181, 183, 184.

[57]   *Id.* at ¶ 185; *see also* R. Doc. 22-1 at 102 ("Brennan stated she 'quietly' left LSU during the Fall 2016.").

[58]   R. Doc. 22 at ¶¶ 195–96.

[59]   *Id.* at ¶ 200.

[60]   *Id.* at ¶¶ 197–98.

[61]   *Id.* at ¶ 208.

[62]   *Id.* at ¶¶ 210, 212, 214.

[63]   *Id.* at ¶ 217.

"inappropriate[ly] and unnecessary[ily]" questioned Andries about her assault, and Andries had panic attacks when LSU failed to remove her assailant from her classes.[64]

- Jade Lewis experienced dating violence from 2017 to 2018—at least *three years* before this lawsuit—that defendants Julia Sell, Michael Sell, Verge Ausberry, Miriam Segar, Ed Orgeron, and Jonathan Sanders all knew about.[65] Though her abuse led to at least two Title IX investigations, LSU disciplined Lewis for "residential life policy" violations while her abuser remained on campus.[66] Lewis contends that LSU's "repeated failure to properly respond" to her abuse until 2019, when her abuser was arrested and pleaded guilty—*two years* before this lawsuit—caused her "severe . . . distress."[67]

- Defendant Julia Sell ridiculed Kennan Johnson from 2017 until she graduated in 2019 which "end[ed] the[ir] relationship"—*two years* before this lawsuit.[68] During that time— again, *two years* before this lawsuit—Johnson felt "very uncomfortable and alienated," emotionally abused, and physically sick from "starv[ing] herself [to] meet Defendant Julia Sell's expectations" and her "severe anxiety."[69]

- Jane Doe was harassed from 2018 to 2019—*two years* before this lawsuit.[70] She "painful[ly]" recounted her harassment during four different investigatory interviews in March 2019—again, *two years* before this lawsuit.[71] In 2019—again, *two years* before this lawsuit—LSU expelled Doe for failing grades, which she claims stemmed from anxiety about her harassment.[72] She re-enrolled in fall of 2019, only to become "so depressed and uncomfortable . . . after everything" that she left again and enrolled in community college in December 2019—again, *two years* before this lawsuit.[73]

- A Ph.D. professor harassed Sarah Beth Kitch from 2009 to 2014, when she graduated and left LSU—*six years* before this lawsuit.[74] During this time—again, *at least six years* before this lawsuit—Kitch believed the LSU administration prioritized its "general reputation" over sexual misconduct victims and alleges "[t]his environment" caused her "severe health problems, including . . . panic attacks, persistent feelings of dread and despair, a sense of worthlessness, and feelings of intense shame and humiliation."[75] After graduating—again,

---

[64]    *Id.* at ¶¶ 230, 233–34.

[65]    *Id.* at ¶¶ 247, 251, 253, 254, 256, 265, 266.

[66]    *Id.* at ¶ 264.

[67]    *Id.* at ¶ 282.

[68]    *Id.* at ¶¶ 285, 299.

[69]    *Id.* at ¶¶ 286, 297.

[70]    *Id.* at ¶¶ 303, 306.

[71]    *Id.* at ¶ 312.

[72]    *Id.* at ¶ 318.

[73]    *Id.* at ¶ 319.

[74]    *Id.* at ¶¶ 340, 346.

[75]    *Id.* at ¶ 343.

*six years* before this lawsuit—Kitch suffered "triggering flashbacks," which interfered with her work and career.[76]  In August 2019—*two years* before this lawsuit—"Kitch realized her career was already over," though she waited until now to sue for her "loss of her ability to . . . proceed with her expected academic career."[77]

Not one of these plaintiffs alleges that their injuries or damages manifested after 2019.  These claims are prescribed.

To resist this conclusion, plaintiffs try to invoke equitable tolling under *contra non valentem*, or the "discovery rule,"[78] by alleging that, until Husch Blackwell released its report on March 3, 2021, none of them knew *the extent of* LSU's culpability or that LSU *knowingly* failed to investigate or appropriately discipline sexual predators:

> Until the release of the Report in March 2021, [Plaintiff] was unaware of the knowledge that LSU . . . had regarding the pervasive harassment, heightened risk of sexual assault, and retaliation [Plaintiffs] suffered . . . .  [or] Defendants' intentional pattern of reacting to [Title IX] disclosures . . . in an extreme and outrageous manner designed to deter any future disclosures; intentional discriminatory treatment of female presenting students . . . ; intentional denial of students' rights to Title IX investigations; negligent acts and the contribution of the same to the conspiracy to intentionally deprive Plaintiffs of their rights; and the extent of Defendants' deviation from the duty of care.[79]

But based on the facts as plaintiffs plead them, Fifth Circuit precedent forecloses plaintiffs' argument that they failed to understand "the extent of" any defendant's impropriety.

Because *contra non valentem* is a judicial exception to prescription, courts "strictly construe" the doctrine *against* plaintiffs and apply it only in "exceptional" or "extreme" circumstances.[80]  Even when *contra non valentem* applies, prescription begins to run when

---

[76]     *Id.* at ¶ 347.

[77]     *Id.* at ¶¶ 349, 352.

[78]     The party asserting *contra non valentem* bears the burden of proving it applies.  *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 388–89 (5th Cir. 2021).

[79]     R. Doc. 22 at ¶¶ 88, 154, 175, 190, 207, 242, 281, 300, 320, 338.

[80]     *Terrebone Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002) (collecting Louisiana cases); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 390 (5th Cir. 2021); *see also Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (La. 2010) (reversing district

plaintiffs have actual or constructive knowledge of facts indicating they may have a claim.[81]

"Constructive" knowledge requires only enough information to "excite attention and prompt

further inquiry";[82] it does *not* require "facts or evidence sufficient to prove the claim."[83]

Just this year, in *In re Taxotere (Docetaxel) Products Liability Litigation*, the Fifth Circuit

emphasized how limited *contra non valentem* really is and reiterated several well-established

principles.[84]  First, "prescription runs [when] there is notice enough to call for *inquiry* about a

claim, not . . . when the inquiry reveals facts or evidence sufficient to *prove* the claim."[85]

"Plaintiffs are *not* entitled to wait to sue until they are certain of what and/or who caused their

injury."[86]  Second, a plaintiff's failure "to ascertain *whom to sue* within a year does not toll . . .

prescription"; plaintiffs must seek out whomever they believe may be responsible.[87]  In other

words, it is enough to know that someone caused the plaintiff's damage, "rather than requiring

actual knowledge of the *particular cause* of the [damage]."[88]  Indeed, the court explained that

"whatever is notice enough to excite attention and . . . call for inquiry is tantamount to knowledge

or notice *of everything to which inquiry may lead*."[89]

---

and appellate courts' failure to grant dismissal based on prescription and noting "lower courts have
interpreted . . . *contra non valentem* too broadly").

[81]  *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 489 (5th Cir. 2009).

[82]  *Eldredge v. Martin Mariette Corp.*, 207 F.3d 737, 743 (5th Cir. 2000).

[83]  *Keenan*, 575 F.3d at 489.

[84]  995 F. 3d 384 (5th Cir. 2021).

[85]  *Id.* at 391 (emphasis in original) (quotation marks omitted) (quoting *Terrel v. Perkins*, 704 So. 2d
35, 39 (La. App. 1st Cir. 1997).

[86]  *Id.* at 391 (emphasis added).

[87]  *Id.* (quoting *Bennett v. Gen. Motors Corp.,* 420 So. 2d 531, 537–38 (La. App. 2d Cir. 1982); *see
also Alvarez v. Se. Com. Cleaning, LLC*, 136 So. 3d 329, 337 (La. App. 5th Cir. 2014) ("Proof of
a cause of action against a particular defendant is not required to commence the running of
prescription.").

[88]  *In re Taxotere*, 995 F.2d at 392.

[89]  *Id.*at 391 (emphasis added).

Considering this, plaintiffs' argument that they did not know "the extent of [LSU's] deviation from the duty of care as outlined in [its] Title IX Policy" because they were unaware of LSU's "intentional" acts cannot save their untimely claims. Plaintiffs' distinction between intentional and negligent conduct is immaterial because a plaintiff "does not need to be aware of exactly which legal claims and theories will be used in [the plaintiff's] case" for prescription to run.[90] What's more, plaintiffs' allegations show they knew LSU mishandled their abuse because plaintiffs were *living through it*, interacting directly with many of the named defendants.[91]

Setting aside plaintiffs' failure to allege TAF had any involvement in LSU's handling Title IX reports, the allegations show plaintiffs' claims are untimely. Plaintiffs allegedly experienced direct, in-person mistreatment while students, which suffices, not only to call for further inquiry, but also to identify potential defendants. Thus, prescription began to run—and expired—long ago. Plaintiffs Richardson, Robertson, Brennan, Owens, Andries, Lewis, Johnson, Doe, and Kitch's civil rights and tort claims must be dismissed.

## II.    Plaintiffs do not allege any actionable civil rights claims against TAF.

Even if plaintiffs' civil rights claims are not prescribed, plaintiffs do not state a section 1983 claim against TAF for at least two reasons. First, TAF is a private corporation and not a state actor under section 1983.[92] Second, plaintiffs fail to properly allege the requisite elements of a civil rights claim *against TAF*, rather than other defendants.

---

[90]    *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, No. 15-4790, 2017 WL 4517287, at *2 (E.D. La. Oct. 10, 2017) (Fallon, J.).

[91]    *See supra* notes 52–77 and accompanying text.

[92]    If this court finds that TAF can be a state actor under section 1983, TAF reserves the right to argue immunity should apply, considering no court has held a private corporation like TAF liable under similar circumstances.

**A.  As a private corporation, TAF cannot be liable for civil rights violations.**

Section 1983 imposes liability on any person acting "under-color-of-state-law" who deprives another of a constitutional or federally guaranteed right.[93] The Supreme Court holds that section 1983 cannot reach private conduct, "no matter how discriminatory or wrongful."[94]

Revised Statute § 17:3390 provides that TAF "shall be a private entity that shall not be deemed to be a public or quasi public corporation or an administrative unit, public servant, employee, or agent of any institution of higher education for any purpose whatsoever."[95] The same statute also requires TAF be "under the direction and control of private individuals," and "the majority of [its] voting members . . . are not [state or public] employees."[96] TAF is also financially independent from LSU, earning money only through private sources.[97]

Plaintiffs hope to shoehorn TAF into their section 1983 claims (to threaten attorneys' fees under section 1988) by asserting TAF engaged in "joint action" with any or all the defendants who are state actors.  That is, when the "LSU Defendants and Individual Defendants . . . act[ed] under color of [state] law," plaintiffs contend TAF was a "willful participant[] acting jointly with the other defendants in a conspiracy, the object of which was understood by all to be the deprivation

---

[93]  *E.g.*, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

[94]  *Sullivan*, 526 U.S. at 49–50 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

[95]  La. Stat § 17:3390(B).

[96]  La. Stat. § 17:3390(A) and (B).

This means TAF cannot be independently considered a "state actor."  *Compare Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 398–99 (1995) (holding "Government-created and-controlled corporations" are "part of the Government for purposes of the First Amendment"), *and Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 289–91 (2001) (holding "pervasive entwinement of public institutions and public officials in [an athletic association's] composition and workings," thus "overwhelming" the essential "structure of the association," meant the association was a state actor), *with Rundus v. City of Dallas, Tex.*, 634 F.3d 309, 310–15 (5th Cir. 2011) (distinguishing *Lebron* and *Brentwood* when "no government employees, officials, or appointees" served in organizational leadership or had any "say in [its] internal decision making").

[97]  *See* La. Stat. § 17:3390 (A).

of Plaintiffs' constitutional rights."[98]   And though plaintiffs assert three civil rights theories premised on seemingly different conduct that violates different constitutionally protected rights,[99] the allegation-by-legal-conclusion that TAF "acted jointly" never changes.[100]

This cannot transform TAF into a state actor.  All plaintiffs have done is violate Rules 8 and 12(b)(6) by reciting the bare elements of the applicable test:[101] private acts may support § 1983 liability if the actor is "a willing participant in joint action with the state or its agents."[102]  The same cases plaintiffs must have reviewed to copy-and-paste this test require them to "*state specific facts*, not merely conclusory allegations."[103] For decades, the Fifth Circuit has held "mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of [§ 1983] conspiracy."[104] The court recently reminded us, "Plaintiffs who assert [civil rights] conspiracy claims . . . must plead the operative facts upon which their claim is based.  Bald allegations that a conspiracy existed are insufficient."[105]

Precedent commands that "[d]eciding whether a deprivation of a protected right is fairly attributable to the State begins by identifying the *specific conduct* of which the plaintiff complains."[106]  "To make the requisite showing of state action . . . [the plaintiff] must establish a

---

[98]    R. Doc. 22 at ¶¶ 424, 434, 442.

[99]    *Id.* at ¶¶ 423–32, 433–40, 441–50.

[100]   *See generally id.*

[101]   *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (alterations omitted) (quoting *Iqbal*, 556 U.S. at 678)).

[102]   *Brinkmann v. Johnston*, 793 F.2d 111, 112 (5th Cir. 1986).

[103]   *Id.* at 113 (emphasis added).

[104]   *Id.*

[105]   *Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 206 n.16 (5th Cir. 2020) (quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987)).

[106]   *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (emphasis added) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 US. 40, 51 (1999)).

sufficiently close nexus between the State and the challenged action of the [private] entity."[107] And the Supreme Court holds, "[w]hether such a 'close nexus' exists . . . depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."[108] "Action taken by private entities with the mere approval or acquiescence of the State is not state action."[109]

Here, plaintiffs fail to allege any "specific conduct" by TAF—what TAF did "jointly . . . . in a conspiracy," who at TAF "willful[ly] participat[ed]" in that joint action, when the joint action was taken, or with whom of the many other defendants TAF acted.[110] And plaintiffs' allegations of "control" are fundamentally backwards. Whereas the Supreme Court requires *the state* to "exercise[] coercive power" over a private entity to transform its conduct into state action, plaintiffs allege that TAF controlled LSU.[111] Presumably, plaintiffs will continue to fall back on the singular allegation of "separate" Athletic Department misconduct training,[112] but Husch Blackwell found this private consultation was "replete with solid recommendations" that LSU should, but refused to, implement.[113] LSU's independent refusal does not transform its failures into "state action" by TAF. Plaintiffs' civil rights claims against TAF must be dismissed.

---

[107]   *Cornish*, 402 F.3d at 550 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)) (emphasis omitted).

[108]   *Sullivan*, 526 U.S. at 52.

[109]   *Id.* (emphasis added).

[110]   *Compare Cornish*, 402 F.3d at 550, *with* R. Doc. 22 at ¶¶ 424, 434, 442.

[111]   *Compare Sullivan*, 526 U.S. at 52 ("Whether such a 'close nexus' exists, our cases state, depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."), *with* R. Doc. 22 at ¶ 95 ("TAF's level of control over LSU and its athletic programs goes well beyond what would normally be expected of a nonprofit organization . . . .").

[112]   R. Doc. 22 at ¶ 99.

[113]   R. Doc. 22-1 at 39–40.

**B. Plaintiffs fail to plead substantively valid civil rights claims because they cannot identify any impermissible conduct by TAF.**

Beyond pleading procedurally invalid civil rights claims because TAF is a purely private actor, plaintiffs likewise fail to plead substantively valid civil rights claims. For example, to properly plead a First Amendment retaliation claim, plaintiffs must allege (1) they were "engaged in a constitutionally protected activity," (2) TAF's "actions caused [them] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) TAF's "adverse actions were substantially motivated against [plaintiffs'] exercise of constitutionally protected conduct."[114]

But here, *none* of plaintiffs identify what "adverse action" TAF took against them. Plaintiffs discuss retaliation by only the "LSU Defendants"—a term plaintiffs themselves define to exclude TAF.[115] This hole is especially pronounced for plaintiffs Andries, Doe, Hovis, and Kitch, who were not harassed or assaulted by a student-athlete and had zero interaction with anyone in the Athletic Department.[116]  Indeed, *none* of plaintiffs even allege TAF knew they had reported misconduct;[117] thus, TAF cannot have been "substantively motivated" by reports it never

---

[114]    *Jackson*, 959 F.3d at 203 (quoting *Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015)).

[115]    *Compare* R. Doc. 22 at ¶ 49 ("Collectively, the Board of Supervisors, LSU, and the individually named Defendants in their official capacities shall be referred to as 'the LSU Defendants.'"), *with id.* at ¶ 428 ("The *LSU Defendants' retaliation* against Plaintiffs' speech serves no compelling state interest." (emphasis added)).

[116]    *See id.* at ¶¶ 209–43, 302–21, 340–352.

[117]    *Id.* at ¶¶ 110–55, 156–76, 177–91, 192–208, 209–43, 244–82, 283–301, 302–21, 322–39, 340–52.

    Some plaintiffs admittedly failed to report their mistreatment, so by their own allegations did not engage in protected speech. *See* R. Doc. 22 at ¶¶ 164, 170 (Robertson alleging she did not want to proceed with a Title IX investigation); *id.* at ¶¶ 196–98, 200 (Owens alleging she left LSU before anyone knew about her rape); *id.* at ¶¶ 297–98 (Johnson alleging she never reported her mistreatment because she "was afraid"); *id.* at ¶ 349 (Kitch alleging she never reported her harassment until half a decade after graduating).

knew about to take adverse action against people it never interacted with.[118]

The most plaintiffs offer is a conclusion that "TAF . . . [is a] willful participant[] acting jointly with the other defendants in a conspiracy, the object of which was understood by all to be the deprivation of Plaintiffs' constitutional rights."[119]  But as already explained, merely using the word "conspiracy" is not enough.[120]  These same issues plague plaintiffs' equal protection claim, procedural due process claim, and seemingly separate civil rights conspiracy claim against TAF.[121]  For each, plaintiffs must allege that *TAF*—not other, unrelated defendants—took some unfavorable action toward them.[122]  For instance, plaintiffs allege that "Defendants," generally and without distinction, "fail[ed] to appropriately respond to and investigate reports of sexual misconduct,"[123] and "failed[] to report complaints of sex discrimination, initiate and/or conduct adequate investigations and grievance procedures *under Title IX*."[124]  But again, TAF is a private corporation outside the university system that has no duty under Title IX to investigate or respond

---

[118]   *Jackson*, 959 F.3d at 203; *see also Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*, 577 F.3d 264, 271–72 (5th Cir. 2009) (finding, as a matter of law, defendant cannot be liable for a First Amendment retaliation claim absent evidence the defendant "knew or even could have been likely to discover that there were constitutionally protected dimensions" to plaintiff's speech).

[119]   R. Doc. 22 at ¶¶ 424, 434, 442.

[120]   *See Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995); *see also supra* notes 103–05 and accompanying text.

[121]   *See* R. Doc. 22 at 106–12, Counts VII, Count VIII, Count IX.

[122]   Plaintiffs' equal protection claim—premised on the idea that LSU differently treats female-presenting sexual misconduct victims—fails for the additional reason that plaintiffs entirely fail to allege how LSU treats male-presenting sexual misconduct victims.  It would be both legally and factually improper for plaintiffs to argue that the relevant inquiry here is the difference between female students, generally, and male students, generally, when the crux of plaintiffs' complaint is that LSU neglected to institute Title IX actions, investigate, or appropriately resolve sexual misconduct claims, and not every student is a sexual misconduct victim.  *See generally* R. Doc. 22 at 1. Thus, the only relevant comparison can be between female-presenting and male-presenting sexual misconduct victims.  *See id.* at ¶ 437.

[123]   R. Doc. 22 at ¶ 436.

[124]   *Id.* at ¶ 444 (emphasis added).

to reports of campus misconduct.[125] Because plaintiffs fail to plead the elements of substantive civil rights claims against TAF, these claims must be dismissed.

## III.    Plaintiffs do not allege any actionable state-law claims against TAF.[126]

As explained in section I, plaintiffs' state-law tort claims are prescribed.  But even if those claims were timely, plaintiffs fail to state any state-law claim against TAF for many reasons, separately addressed below.  Most crucially, plaintiffs' tort claims against TAF fail because plaintiffs seek to impose Title IX duties on an entity admittedly not subject to Title IX.

### A.    As a private corporation separate from LSU, TAF did not owe plaintiffs any duty, or breach any purported duty, to control LSU.

Louisiana's "standard negligence analysis"—the "duty-risk analysis"—requires a plaintiff to plead and prove five elements, two of which are particularly relevant here: "first, that the defendant had a duty to conform his conduct to a specific standard (duty)"; and, "second, that the defendant's conduct failed to conform to the appropriate standard (breach)."[127]

The "threshold issue" of any negligence claim is "whether the defendant owed the plaintiff a duty."[128] The court decides "whether, as a matter of law, a duty is owed to this particular plaintiff to protect [the plaintiff] from this particular harm."[129]  The relevant inquiry is whether "the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the

---

[125]    *See generally* 20 U.S.C. § 1681 ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.").

[126]    If the court dismisses all the federal claims, it should decline to exercise supplemental jurisdiction over plaintiffs' myriad state-law claims under 28 U.S.C. § 1367(c), and the court need not address TAF's remaining arguments.

[127]    *Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 409 (5th Cir. 2017).

[128]    *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Meany v. Meany*, 639 So. 2d 229, 233 (La. 1994)).

[129]    *Id.* (quoting *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1016 (La. 1993)).

claim that the defendant owed [the plaintiff] a duty."[130]  Plaintiffs cannot rely only on the general

duty to behave reasonably; "plaintiffs are still required to assert a 'specific standard' of care."[131]

Here, every "specific standard" plaintiffs invoke arises under Title IX, Section 504 of the

Rehabilitation Act, or the Americans with Disabilities Act—all of which do not apply to TAF.[132]

By its terms, Title IX governs only "any education program or activity receiving Federal

financial assistance" or "educational institutions."[133] And the Department of Education's latest

Title IX guidance reminds these entities receiving federal funds that they "remain[] ultimately

responsible for ensuring compliance with the legal obligations under the Title IX Rule."[134]  TAF

carries no such responsibility under the law, and Louisiana law prohibits TAF from being deemed

a public entity "for any purpose."[135]

In other words, TAF cannot be liable for allegedly "failing to properly investigate the

Plaintiffs' reports of sexual misconduct" if TAF has no duty to investigate sexual misconduct on

LSU's campus (not to mention plaintiffs' failure to allege that anyone at TAF knew plaintiffs

---

[130]    *Id.* (quoting *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 292 (La.1993)); *Butler v. Denka Performance Elastomer, L.L.C.*, No. 20-30365, 2021 WL 4810639, at *12 (5th Cir. Oct. 15, 2021) (same).

[131]    *Butler*, 2021 WL 4810639, at *12.

[132]    *See generally* R. Doc. 22 at ¶¶ 483.

[133]    20 U.S.C. § 1681. Similarly, Section 504 applies only to "any program or activity receiving Federal financial assistance," and the ADA applies to "services, programs, or activities of a public entity," which excludes a fiscally independent private corporation like TAF.  *See* 29 U.S.C. § 794; 42 U.S.C. § 12132.

[134]    United States Department of Education: Office for Civil Rights, Questions and Answers Regarding the Departmnet's Final Title IX Rule at 5 (Sept. 4, 2020), https://www2.ed.gov/about/offices/list/ocr/docs/qa-titleix-20200904.pdf (last visited Nov. 7, 2021); *see also id.* ("Similarly, each recipient is responsible for ensuring that its grievance procedures satisfy the Title IX Rule.").

The court may judicially notice this information contained on a public website. *See generally Swindol v. Aurora Flight Sciences Corp.*, 805 F.3d 516, 519 (5th Cir. 2015) (taking judicial notice of public records available on official website).

[135]    La. Stat. § 17:3390(B).

suffered sexual misconduct).    TAF likewise cannot be liable for "failing to ensure LSU implemented its Title IX Policy and Code of Student Conduct," if TAF has no legal say in LSU's Title IX Policy or Code of Student Conduct—because TAF is not an educational institution, and it has no students.  In any event, the Husch Blackwell report reveals that TAF's limited conduct, in paying a consultant to provide LSU a written assessment "replete with solid recommendations," cannot constitute breach of any purported duty.[136] All of plaintiffs' negligence claims must be dismissed.

In addition, Andries's, Doe's, Hovis's, and Kitch's claims against TAF must be dismissed because none of their allegations have anything to do with athletics. The crux of plaintiffs' claims against TAF is that TAF "control[s] . . . LSU athletics" and encourages poor Title IX practices "within LSU's Athletics Department."[137] Plaintiffs do not allege TAF interacted at all with LSU's Title IX department or any employees outside the Athletic Department.[138] Thus, plaintiffs fail to allege how TAF could owe any duty or breach any purported duty supposedly owed to students unrelated to athletics.  Andries, Doe, Hovis, and Kitch do not allege they were student-athletes or that they were assaulted by student-athletes.[139]  Nor do they allege reporting their mistreatment to anyone with the Athletic Department who could have conceivably been influenced by TAF's "control over LSU Athletics."[140]  Accordingly, their claims may be separately dismissed for this independent reason.

---

[136]    R. Doc. 22-1 at ¶ 39.

[137]    R. Doc. 22 at ¶ 99.

[138]    *See generally id.*

[139]    *Id.* at ¶¶ 209–43, 302–21, 322–339, 340–52.

[140]    *Id.* at ¶ 99.

**B. Plaintiffs' citation to Louisiana Civil Code article 2030 governing absolute nullity of contracts is clearly misplaced.**

In Counts XIII, XIV, and XV, plaintiffs allege that, besides negligence, every defendant is liable under Louisiana Civil Code article 2030 governing "absolute nullity of contracts."[141] But Louisiana law separates *ex delictu* liability from *ex contractu*, making article 2030 inapplicable to negligence.[142] At the very least, article 2030 does not apply to TAF because plaintiffs are not pursuing any contract claim against TAF.[143]

**C. Plaintiffs' negligent supervision claim fails because TAF has no duty to supervise people whom it does not employ.**

Plaintiffs' negligent supervision claim merely repackages their general negligence theory. Plaintiffs contend TAF had to supervise, train, and monitor LSU employees and students on Title IX even though only LSU bears ultimate responsibility for its employees, its students, and its Title IX obligations.[144]  This claim must be dismissed.

**D. Plaintiffs' infliction-of-emotional distress claims also substantively fail.**

In Count XIV, plaintiffs try to allege negligent infliction of emotional distress but say nothing specific about TAF, or mention TAF at all.[145]  In Count XV, plaintiffs assert intentional infliction of emotional distress, but are far from alleging "conduct . . . so outrageous in character,

---

[141]  *Compare* R. Doc. 22 at ¶¶ 489–96, 497–503, 504–09, *with* La. Civ. Code art. 2030 ("A contract is absolutely null when it violates a rule of public order . . . .").

[142]  *See generally Smith v. Citadel Ins. Co.*, 285 So. 3d 1062, 1067 (La. 2019) (noting "[f]ault is contractual when it causes a failure to perform an obligation that is conventional in origin . . . while fault is delictual when it causes the dereliction of one of those duties imposed upon a party regardless of his will").

[143]  *See* R. Doc. 22 at 123–24, Count XVI (asserting bad-faith breach of contract against LSU, Alexander, Monaco, Orgeron, "O" The Rosy Finch Boyz, Marchand, Stewart, Sanders, Blanchard, and Fuentes-Martin).

[144]  None of TAF's employees are named in this action, or even alleged to have engaged in any bad behavior.  *See generally* R. Doc. 22.

[145]  *Id.* at ¶¶ 497–503.

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[146]  Not even "tortious or . . . criminal" conduct that was "arbitrary and without compassion," or done with malice, rises to the "high threshold of [actionable] extreme and outrageous conduct."[147] While Louisiana courts have refused to recognize intentional infliction of emotional distress when a supervisor publicly "launched a profane tirade" against his employees;[148] another supervisor engaged in "violent, screaming rages" by calling his employee "dumb," "stupid," and "fat";[149] and a law firm repeatedly subjected an associate to allegedly "unbearable" race discrimination,[150] plaintiffs merely allege that TAF once "confused" female student-athletes (which does *not* include Richardson, Robertson, Brennan, Owens, Andries, Doe, Hovis, or Kitch) with Title IX training.[151]  But Louisiana imposes "strict guidelines" on emotional distress claims to "protect[] the court's time and limited resources" by "limit[ing] the class of claimants and prevent[ing] false claims."[152]  No case allows emotional distress claims to stretch this far.

### E.  Civil conspiracy under Louisiana Civil Code article 2324 is not a separately recognized cause of action.

Decades ago, in *Jefferson v. Lead Industries Ass'n*, the Fifth Circuit held, "Louisiana law does not recognize an independent cause of action for civil conspiracy."[153] The law has not

---

146    *White v. Monsanto,* 585 So. 2d 1205, 1209 (La. 1991).

147    *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1022, 1028 (La. 2000).

148    *White*, 585 So. 2d at 1207.

149    *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So. 2d 1049, 1050 (La. App. 3d Cir. 1992).

150    *King v. Phelps Dunbar, L.L.P.*, 743 So. 2d 181, 184 (La. 1999).

151    R. Doc. 22 at ¶ 506.

152    *Crockett v. Cardona*, 713 So. 2d 802, 805 (La. App. 4th Cir. 1998).

153    106 F.3d 1245, 1253–54 (5th Cir. 1997) (collecting cases); *Canterbury Joint Venture v. Prudential Ins. Co.*, 99 F.3d 1136, 1996 WL 595717, at *3 (5th Cir. 1996) ("[A]rticle 2324 of the Louisiana Civil Code does not provide an independent basis for liability.").

changed since. The Fifth Circuit,[154] nearly every Louisiana Circuit Court of Appeals,[155] and Louisiana's federal district courts continue to hold that "conspiracy . . . is not an independent cause of action"[156] because "[t]he actionable element of a conspiracy claim is not the conspiracy itself [but] the [underlying] tort."[157] So plaintiffs' separate "claim" for conspiracy under article 2324 is frivolous and must be dismissed.

### F. Plaintiffs' assertion of other claims precludes any unjust enrichment claim.

Plaintiffs' *twentieth* cause of action (Count XX) is unjust enrichment under Civil Code article 2298. But that article proclaims unjust enrichment is "subsidiary" and "shall not be available if the law provides another remedy for the [plaintiff's alleged] impoverishment."[158] In other words, an essential element of unjust enrichment is the lack of any other potential theory of liability.[159] As the United States Fifth Circuit explained in *Ferrera Fire Apparatus, Inc. v. JLG Industries, Inc.*, "Louisiana law is clear on this point . . . it is not the success or failure of other

---

[154] *Louisiana v. Guidry*, 489 F.3d 692, 706 n.54 (5th Cir. 2007) ("Louisiana law does not recognize an independent cause of action for civil conspiracy. The actionable element under article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing the plaintiff's injury.").

[155] *Dhaliwal v. Dhaliwal*, 184 So. 3d 773, 787 (La. App. 2d Cir. 2015) ("An independent cause of action for civil conspiracy does not exist in Louisiana."); *Ingram v. Freeman*, 326 So. 2d 565, 570 (La. App. 3d Cir. 1976) ("A conspiracy alone is not civilly actionable."); *Crutcher-Tufts Resources, Inc. v. Tufts*, 38 So. 3d 987, 991 (La. App. 4th Cir. 2010) ("Conspiracy by itself is not an actionable claim under Louisiana law."); *Khoobehi Props., L.L.C. v. Baronne Dev. No. 2, L.L.C.*, 288 So. 3d 224, 232 (La. App. 5th Cir. 2019) ("Louisiana law does not have an independent cause of action for civil conspiracy.").

[156] *Schott, Tr. for Estate of InforMD, LLC v. Massengale*, No. 18-759-JWD-RLB, 2019 WL 4738795, at *1 (M.D. La. Sept. 27, 2019) (granting 12(b)(6) motion to dismiss "conspiracy to commit fraud" claim); *see also Branden v. F.H. Paschen, S.N. Nielsen, Inc.*, No. 19-2406, 2019 WL 1760694, at *4 n.38 (E.D. La. Apr. 22, 2019) ("Louisiana law does not recognize an independent cause of action for civil conspiracy."); *Dietz v. Dietz*, No. 08-0521, 2009 WL 2707402, at *10 (W.D. La. Aug. 27, 2009) (same).

[157] *Khoobehi Props.*, 288 So. 3d at 232; *see also Jefferson v. Lead Industries Ass'n, Inc.*, 106 F. 3d 1245, 1254 (5th Cir. 1997) (same).

[158] La. Civ. Code art. 2298.

[159] *Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 F. App'x 440, 443–44 (5th Cir. 2014).

causes of action" that matters; the mere "*existence* of other causes of action" precludes a plaintiff

from pursuing unjust enrichment.[160]  Indeed, in *Walters v. MedSouth Record Management, LLC*,

the Louisiana Supreme Court held that plaintiffs cannot plead unjust enrichment even alternatively

to other claims.[161]  And Middle District of Louisiana Chief Judge Shelley Dick recently explained

that *Ferrera Fire* and *Walters* "directly . . . foreclos[e]" any argument that Rule 8's allowance for

alternative or inconsistent pleading permits plaintiffs to plead unjust enrichment among other

claims.[162]  Here, plaintiffs plead *nineteen* other causes of action alongside unjust enrichment—ten

others directly against TAF.[163]  As the Fifth Circuit, Louisiana Supreme Court, and Middle District

of Louisiana have all held, that alternative theories merely exist directly forecloses any unjust

enrichment claim.  Count XX should be dismissed.

---

[160]    581 F. App'x at 443–44 (alterations omitted) (emphasis added) (citing *Garber v. Baden & Ranier*, 981 So. 2d 92, 100 (La. App. 3 Cir. 2008).

[161]    38 So. 3d 241, 242 (La. 2010) ("Having pled a delictual action, we find plaintiff is precluded from seeking to recover under unjust enrichment. . . .  [even though] plaintiff's tort claims have been held to be prescribed. The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under . . . unjust enrichment.").

[162]    *Entergy Gulf States Louisiana, L.L.C. v. La. Generating, L.L.C.*, No. 14-385, 2020 WL 961499, at *5 (M.D. La. Feb. 27, 2020).

[163]    That plaintiffs pursue theories against *other* defendants is another reason to dismiss the unjust enrichment claim. *See Insulation Techs., Inc. v. Indus. Labor & Equip. Servs., Inc.*, 122 So. 3d 1146, 1151 (La. App. 4th Cir. 2013) (holding that a plaintiff's breach-of-contract claim against one defendant was an "available remedy" precluding an unjust enrichment claim against an entirely different defendant).

## CONCLUSION

For all these reasons, plaintiffs' civil rights and state-law claims against TAF should be dismissed as a matter of law.  Any amendment would be futile and should not be allowed.

Respectfully submitted,

_/s/ Chloé M. Chetta_
Judy Y. Barrasso, 02814
Laurence D. LeSueur, 35206
Chloé M. Chetta, 37070
Lance W. Waters, 37351
Barrasso Usdin Kupperman
  Freeman & Sarver, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA  70112
Telephone:  (504) 589-9700
Facsimile:   (504) 589-9701
jbarrasso@barrassousdin.com
llesueur@barrassousdin.com
cchetta@barrassousdin.com
lwaters@barrassousdin.com

*Counsel for Tiger Athletic Foundation*

*1786912*