**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **ABBY OWENS, ET AL** | * | **NO.: 3:21-cv-00242** |
| | * | |
| **VERSUS** | * | **JUDGE: WBV** |
| | * | |
| **LOUISIANA STATE UNIVERSITY,** | * | **MAGISTRATE JUDGE: SDJ** |
| **ET AL** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM IN SUPPORT OF MOTION**</u>
<u>**TO DISMISS AMENDED COMPLAINT PURSUANT TO FEDERAL RULE**</u>
<u>**OF CIVIL PROCEDURE 12(B)**</u>

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Miriam Segar (hereinafter "Segar"), who respectfully submits this Memorandum in Support of her Motion to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b).

**I.    FACTUAL BACKGROUND.**

On April 26, 2021, Plaintiffs filed a Class Action Complaint and Jury Demand, asserting various claims against Segar, among others. On June 25, 2021, Plaintiffs filed an Amended Class Action Complaint and Jury Demand ("Amended Complaint") that merely added named plaintiffs and more defendants.

Plaintiffs claim they are "current and former Louisiana State University ("LSU") students who attended the Baton Rouge campus at some point from 2013 to 2021 and are female presenting and/or LGBTQ+ identifying individuals who were victims of sex-based discrimination, including rape, sexual assault, sexual harassment, and/or stalking, perpetrated by male LSU students and LSU employees."[1] Broadly, Plaintiffs contend that Defendants are liable to them for various violations of Title IX obligations including failing to maintain an adequate reporting, investigation, and disciplinary system for sexual assault complaints. Although Plaintiffs allegations essentially

---

[1] Doc. 22, ¶2.

assert a Title IX lawsuit, Plaintiffs instead allege *twenty* (20) liability counts against various combinations of grouped defendants, claiming violations of Title IX, § 1983, Section 504 of the Rehabilitation Act, Americans with Disabilities Act (ADA), Louisiana tort law, the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968[2], and the corresponding Louisiana Racketeering Act, La. R.S. 15:1351, *et seq.*

The claims against Segar include Count V – Violation of Title IX, Retaliation by Withholding Protection Otherwise Conferred by Title IX; Count VI – First Amendment Retaliation, 42 U.S.C. §1983; Count VII – Denial of Equal Protection, 42 U.S.C. §1983, Fourteenth Amendment; Count VIII – Denial of Procedural Due Process,  42 U.S.C. §1983, Fourteenth Amendment; Count IX – Conspiracy to Interfere with Civil Rights,  42 U.S.C. §1985, 1986; Count XII – Negligence, Louisiana Civil Code Article 2315; Count XIII – Negligent Supervision, Louisiana Civil Code Article 2315, 2030; Count XIV – Negligent Infliction of Emotional Distress, Louisiana Civil Code Article 2315, 2030; Count XV – Intentional Infliction of Emotional Distress, Louisiana Civil Code Article 2315, 2030; Count XVII – Civil Conspiracy, Louisiana Civil Code Article 2324; Count XIX – Civil Violations of the Louisiana Racketeering Act, La. R.S. 1:1351, et seq; Count XX – Enrichment without Cause, Louisiana Civil Code Article 2298.

With respect to Segar, she is only mentioned with respect to allegations asserted by five of the ten named Plaintiffs in the Amended Complaint – Calise Richardson ("Richardson"), Ashlyn Robertson ("Robertson"), Samantha Brennan ("Samantha Brennan"), Jade Lewis ("Jade"), and Corrin Hovis ("Hovis"). Plaintiffs' allegations rely heavily upon the Husch-Blackwell report, which is flawed and incomplete. Insofar as the Husch Blackwell Report makes any negative

---

[2] Plaintiffs filed a Notice of Dismissal on September 7, 2021, removing their federal RICO claims.

findings about Segar's conduct, those findings are inaccurate and are not based on a review of the totality of the facts and circumstances.

Richardson claims she reported to Verge Ausberry, LSU Athletics employee, that a football player was abusing her and that Ausberry directed her to report the abuse to Segar.[3] According to Richardson, Segar initiated a call to her, and Richardson attempted to return the call, but Segar did not respond.[4] Soon thereafter, Richardson states she reported the abuse allegations to another LSU employee, was immediately directed to the Student Advocacy and Accountability office ("SAA"), and a Title IX complaint was opened the same day.[5]

Robertson states a football player raped her at a party held at her apartment.[6] Robertson contends that Segar was informed of the rape by the LSU diving coach through a series of third-party hearsay reports.[7] To be clear, Robertson did not report the rape directly to Segar.[8] Robertson admits that she declined to proceed with a Title IX investigation when specifically asked by Associate Vice President and Dean of Students Mari Fuentes-Martin if she wished to proceed with an investigation.[9]

Samantha Brennan alleges she reported to Segar that a football player had taken a nude photograph of her without her consent, while she was incapacitated, and shared it with the football team.[10] Brennan contends she told Defendant Sharon Lewis that she did not want to make a police report but that Segar "ignored [her] request" and took her to the LSU Police Department to file a

---

[3] Id at ¶146
[4] Id.
[5] Id at ¶147-149.
[6] Id at 159.
[1] Id at ¶161.
[8] Id.
[9] Id at ¶164.
[10] Id at ¶180.

report.[11] Brennan claims she received no notice of the initiation of a Title IX investigation.[12]

Jade Lewis contends Segar first became aware of her abuse by a football player when she was examined by LSU athletic trainers.[13] Segar and the other LSU Athletics employees inquired how Lewis received the injuries and she told them of the abuse.[14] Segar reported the abuse to the Title IX office the next day.[15] Lewis also avers that Segar filed a second Title IX report of subsequent abuse of Lewis by the same football player after receiving a report of the abuse from the LSU Police Department.[16] The second report was filed by Segar on the same day she received the police report.[17] Lewis further contends she reported alleged retaliation to Segar (i.e. the football player's parents and some coaches "made comments to Plaintiff Lewis indicating that they blamed her for [the football player] being banned from the weight room) and that Segar told Lewis, "that's what happens when the cops come to your apartment."[18] Lewis claims Segar did not address or report the alleged retaliation to the Title IX office.[19] According to Lewis, on or around August 16, 2018, she showed Segar photos of bruises and scratches she received from the football player and also gave Segar text messages from the player which contained threats to kill her and also encouraged her to kill herself.[20] Segar reported these allegations to LSU Police Department that same day.[21] Plaintiff Lewis contends Segar did not report it to the Title IX office.[22]

Corrin Hovis avers that a football player raped her and that she reported the rape to her

---

[11] Id at ¶183.
[12] Id at ¶184.
[13] Id at ¶
[14] Id.
[15] Id.
[16] Id at ¶264.
[17] Id at ¶264.
[18] Id at ¶271.
[19] Id.
[20] Id at ¶272.
[21] Id.
[22] Id.

Residential Assistant, who filed a Title IX complaint.[23] According to Hovis, Segar was notified of a Title IX complaint against the football player.[24] Hovis also claims that Segar was notified on the same day the investigation concluded, March 6, 2020, of the outcome of the investigation finding that the football player violated Title IX policy by sexually assaulting Hovis,. [25] Hovis contends that the football player was not suspended from LSU until May 10, 2020.[26]

## II.    LAW AND ARGUMENT.

### i.    Fed. R. Civ. P. Rule 12(b)(1)

A challenge to subject matter jurisdiction pursuant to Fed. R. Civ. P. Rule 12(b)(1) may be raised at any time, by any party or by the court. *Thompson v. Gaskill*, 315 U.S. 442, 62 S. Ct. 673, 86 L.Ed. 951 (1942). The burden lies with the party invoking the jurisdiction of the court. *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941). In evaluating whether subject matter jurisdiction exists, the court accepts all uncontroverted factual allegations as true. *Gibbs v. Buck*, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939). If a conclusory averment of subject matter jurisdiction is negated by other allegations in the pleading, the case may be dismissed. *See e.g.*, *Sopher v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000), *citing Hardin v. Straub*, 954 F.2d 1193, 1199 (6th Cir. 1992) and *Wells v. Brown*, 891 F.2d 591, 592-594 (6th Cir. 1989).

### *Segar is entitled to 11th Amendment immunity for all official capacity claims*

The Eleventh Amendment provides that "(t)he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state."

---

[23] Id at¶325 & 326.
[24] Id at ¶330.
[25] Id at ¶330.
[26] Id at ¶331.

U.S. Const. amend. XI.  The Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S.Ct.1347, 39 L.Ed.2d 662 (1974).

The Eleventh Amendment is not an absolute bar, however, because states may consent to suit. *Id*., citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990). It is clear that Louisiana, by statute, has refused to waive any Eleventh Amendment sovereign immunity to suit in federal court with respect to the state and any state agency.  See La. R.S. 13:5106(A), which provides:

> No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court.

Eleventh Amendment immunity from suit is not absolute. *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Congress may authorize a private party to bring a federal court suit against unconsenting states in the exercise of its power to enforce the Fourteenth Amendment. *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 80, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *College Savings,* 527 U.S. at 670, 119 S.Ct. 2219 (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)).

a.    11th Amendment immunity for Section 1983, 1985 and 1986 Claims:

Plaintiffs seek injunctive relief against Segar in her official capacity with respect to their Section 1983, 1985 and 1986 claims. Congress has not waived sovereign immunity for Section 1983 actions. *See Richardson v. Southern University,* 118 F.3d 450, 453 (5th Cir. 1997). Suits for violation of 42 U.S.C. §1983 can only be brought by "persons." *Newton v. Caminita*, No. CV31600363BAJEWD, 2016 WL 4247593, at *2 (M.D. La. Aug. 9, 2016); *see* also *Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011). State officials named in their official

6

capacities are not considered "persons" for purposes of 42 U.S.C. § 1983 because a suit against a state official in his official capacity is, in essence, a suit against the state. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989). This court has recognized that LSU and University Athletic administrators are entitled to Eleventh Amendment immunity protection from suit. *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll*., 972 F. Supp. 2d 878 (M.D. La. 2013). It follows that the same analysis applies to a suit against a state official in his official capacity pursuant to §§ 1985 and 1986. *Newton, supra; Washington, supra.*

Plaintiffs are permitted to sue state officials in their official capacity for injunctive relief only if the *Ex Parte Young* doctrine applies.  The *Ex Parte Young* doctrine, which is to be applied on a case-by-case basis, is a very narrow exception to sovereign immunity set forth in the Eleventh Amendment. *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, L.Ed.2d 252 (1996). The Supreme Court in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), enunciated what is now known as the *Ex Parte Young* doctrine. Specifically, the Court held that an individual may sue a state official for prospective equitable relief requiring the state official to cease violating federal law, even if the state itself is immune from suit under the Eleventh Amendment. *Id.* at 155-66, 28 S.Ct. at 452-53. See generally, *Pennhurst, State School and Hospital v. Halderman*, 465 U.S. 189, 102, 104 S.Ct. 1900 (1984). The *Ex Parte Young* doctrine only applies to prospective relief and does not allow judgments against state officials based on some past violation of federal law. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993).

There are generally only two instances where a federal court will apply the *Ex Parte Young* doctrine: (1) where there is *no state forum available* to vindicate the federal interests, thereby

placing upon an Article III court the special obligation to ensure the supremacy of federal statutory and constitutional law; and (2) where prospective relief is sought against individual state officers in a federal forum based on a federal right. *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 277, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1998) (Emphasis added.) Moreover, the applicability of *Young* "is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record." *Ex parte New York,* 256 U.S. 490, 500 (1921).

Adequate remedies exist in Louisiana state court to address the matters of this suit. As acknowledged by the U.S. Supreme Court, "[s]tates have a real and vital interest in preferring their own forum in suits brought against them, interests that ought not [] be disregarded based upon a waiver presumed in law and contrary to fact." *Coeur d'Alene,* 521 U.S. at 274. Because Louisiana's "courts are open to hear the case, and the State neither has nor claim[ed] immunity from their process or their binding judgment," *Coeur d'Alene, supra,* La. Const. art. XII, sec. 10, the *Ex Parte Young* doctrine should not apply to the claims brought by the Plaintiffs.

Additionally, the second instance of *Ex Parte* Young's applicability – "prospective relief sought against individual state officers based on a federal right" - is based upon the notion that federal courts can assure the peaceful resolution of disputes between states, *Couer d'Alene,* at 275, 117 S.Ct. at 2037 (citing *South Dakota v. North Carolina,* 192 U.S. 286, 24 S.Ct. 269, 48 L.Ed. 448 (1904)), and suits initiated by the United States against States. *Couer d'Alene,* (citing *U.S. v. State of Texas,* 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285 (1892). The Court, however, limited the expansiveness of the second prong and held that state courts are adequate forums for resolving federal questions. *Couer d'Alene*, *Id* at 275-76.  (Emphasis added). Given Louisiana's duty and ability to uphold federal law, together with Louisiana's strong interest in preferring its own forum

for suits brought against it and its state officials, Plaintiff's claims against the state officials should be barred by the Eleventh Amendment.

Moreover, the relief sought by Plaintiffs is not truly one of prospective relief. Plaintiffs are seeking injunctive relief in order to punish past alleged actions or inactions. *Ex Parte Young* abrogates sovereign immunity for state officials only when the violation of federal law is ongoing or when the injunctive relief will directly end the violation of federal law. *Id.* at 277-278. While Plaintiffs' amended complaint purports to request prospective injunctive relief, the requested injunctive relief is based on *past* alleged violations of federal law and does not relate to any alleged ongoing violation of federal law.

The basis for Plaintiffs' request for injunctive relief is that they are subjected to ongoing violations of their federal rights - retaliation in violation of freedom of speech, equal protection, due process, and sex-based discrimination. These are merely conclusory allegations which are not adequate to support the request for permanent injunction. Each Plaintiff that alleges action or inaction on the part of Segar has alleged past actions or inactions and makes no allegations that Segar is continuing to violate their federal rights in any way.

The events surrounding Richardson's allegations about Segar are alleged to have occurred in the fall of 2018. Richardson failed to allege any ongoing violation by Segar. The events surrounding Robertson's allegations about Segar are alleged to have occurred in January of 2016. Robertson failed to allege any ongoing violation by Segar. The events surrounding Brennan's allegations about Segar are alleged to have occurred in July of 2016. Brennan failed to allege any ongoing violation by Segar. The events surrounding Plaintiff Lewis's allegations about Segar are alleged to have occurred in April, June, and August of 2018. Lewis failed to allege any ongoing violation by Segar. The events surrounding Hovis's allegations about Segar are alleged to have

occurred in the January of 2020. Hovis failed to allege any ongoing violation by Segar. Thus, *Ex parte Young* is inapplicable, and Segar is entitled to Eleventh Amendment immunity for the official capacity claims asserted against her pursuant to 42 U.S.C. §1983, 1985 and 1986.

      b.      11th Amendment immunity for State Law Claims:

Plaintiffs' claims against Segar in her official capacity are in essence a suit against the state. *Hughes v. Savell*, 902 F.2d 376, 379 (5th Cir. 1990). Therefore, since the state enjoys Eleventh Amendment immunity from suit in federal court, all state law claims against Segar in her official capacity must be dismissed for lack of jurisdiction under the Eleventh Amendment.

      ii.      **FED. R. CIV. P. RULE 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 127 S.Ct 1955, 550 U.S. 544, at 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. The factual allegations must "raise a reasonable expectation that discovery will reveal evidence" of liability. *Twombly,* 550 U.S. at 556. "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff." *Lormand v. U.S. Unwired, Inc.,* 565 F .3d 228, 232-33 (5th Cir.2009); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal,* 129 S.Ct. at 149-50; *Anderson v. Law Firm of Shorty Dooley & Hall,* 2009 WL 3837550, 2(E.D. La., 2009). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are

"merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly,* at 557, 127 S.Ct. 1955 (brackets omitted).

The Supreme Court in *Ashcroft v. Iqbal* also surmised that "[d]etermining whether a complaint states a plausible claim for relief will …. be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Id*; citing Fed. R. Civ. P. Rule 8(a)(2).

### ***Prescription***

All of Plaintiffs' claims against Segar are prescribed with the exception of some of Plaintiffs' state racketeering claims.

a.    Title IX claims against Segar

Even if Title IX authorized a suit against a university employee, which it does not, as is more fully briefed hereinbelow, Plaintiffs' claims against Segar under Title IX are time-barred. Title IX does not provide a statute of limitations period. *See* 20 U.S.C. § 1681, et seq. When a federal cause of action does not specify an express statute of limitations, it is well-settled that courts should apply "the most closely analogous statute of limitations under state law." *Reed v. United Transp. Union*, 488 U.S. 319, 323 (1989). The Fifth Circuit applies the state's statutes of limitations for personal injury actions to Title IX claims. *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020); s*ee also King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015). In Louisiana, the prescriptive period for personal injury actions is one year. *See* La. Civ. Code art. 3492; *Sewell*, supra. "A claim accrues when a plaintiff knows or has reason to know of the injury giving rise to the claim." *Sewell*, supra. Plaintiffs filed their lawsuit on April 26, 2021,

thus, any claims of Plaintiffs for injury occurring prior to April 26, 2020 are time-barred. All of Plaintiffs' claims arising under Title IX assert injury which Plaintiffs knew or should have known prior to April 26, 2020.

Richardson's allegations involving Segar's failure to respond to her phone call occurred in the fall of 2018. Robertson claims Segar was informed of her rape allegations on January 26, 2016. Brennan alleges she informed Segar of her claims on or around July 22, 2016. Lewis contends she reported abuse and/or retaliation to Segar on four separate occasions with the final report being made on August 16, 2018. Hovis claims Segar was aware of her Title IX complaint on February 4, 2020, and of the conclusion of the investigation on March 6, 2020.

None of the aforementioned alleged events occurred within the applicable prescriptive period. For each of the alleged instances and each of the Plaintiffs, they either knew or should have known of their alleged injury on or around the dates provided above. Instead of bringing their claims soon after they became known, Plaintiffs waited and brought their claims too late.

B.    §1983, 1985 and 1986 claims against Segar:

Even if Qualified Immunity did not apply to bar Plaintiffs' §1983, 1985, and 1986 claims, which it does not, as is more fully briefed below, Plaintiffs' claims would be time-barred. As it relates to claims arising under §1983, 1985, and 1986, the applicable statute of limitations is "that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 1093, 166 L. Ed. 2d 973 (2007). In Louisiana, personal injury claims are subject to a one-year prescriptive period. *La C.C. art. 3492*. Furthermore, "prescription commences to run from the day injury or damage is sustained." *Id.* For the same reasons that Plaintiffs' Title IX claims against Segar are prescribed below, Plaintiffs' §1983, 1985, and 1986 claims are also prescribed.

c.    State Law delictual claims against Segar

12

In Louisiana, "[d]elictual actions are subject to a liberative prescription of one year," which begins to run from the date the injury or damage was sustained. *Id*. The same one-year period also applies to Plaintiffs' state tort claims asserting negligence,[27] negligent supervision,[28] intentional infliction of emotional distress,[29] negligent infliction of emotional distress,[30] civil conspiracy,[31] and enrichment without cause.[32] Prescription begins to run from the day the plaintiff's injury is sustained. *Chaverri v. Dole Food Co.,* 896 F. Supp. 2d 556, 567 (E.D. La. 2012), aff'd, 546 F. App'x 409 (5th Cir. 2013). "Injury is considered to have been sustained when damage to the plaintiff has "manifested itself with sufficient certainty to support accrual of a cause of action." *Id*. Therefore, a legal action by Plaintiffs asserting any such claims was required to be filed within one year of the date Plaintiffs are alleged to have been injured by such acts or omissions. As the instant lawsuit was filed on April 26, 2021, the damages must have been sustained no earlier than April 26, 2020; otherwise, those claims are considered to be prescribed under state law.

Of the ten Plaintiffs named in the instant lawsuit, only five of them have asserted any direct allegations against Segar for purported acts or omissions concerning their individual Title IX

---

[27] *Id*.

[28] The same prescriptive period for delictual actions in La. Civ. Code art. 3492 applies to negligent supervision claims. *Irby v. Mancuso*, 2016-78 (La. App. 3 Cir. 9/28/16); 201 So.3d 413, *writ denied*, 2016-2074 (La. 6/15/18); 257 So.3d 687.

[29] In *King v. Phelps Dunbar, L.L.P.*, 98-1805 (La. 6/4/99); 743 So.2d 181, the Supreme Court of Louisiana reasoned that "claims for intentional infliction of emotional distress are also governed by the one-year prescriptive period for delictual actions in La. Civ. Code Ann. art. 3492."

[30] In *Albe v. City of New Orleans*, 2014-0186 (La. App. 4 Cir. 9/17/14); 150 So.3d 361, *writ denied*, 2014-2166 (La. 12/8/14); 153 So.3d 445, the court held that negligent infliction of emotional distress was, unquestionably, tort-based or delictual, and thus subject to a one-year prescriptive period.

[31] In *Olympia Minerals, LLC v. HS Res., Inc.*, 2013-110 (La. App. 3 Cir. 4/1/15); 162 So.3d 674, *writ denied*, 2015-0854 (La. 10/30/15); 179 So.3d 614, the Third Circuit Court of Appeal held that civil conspiracy is governed by La. Civ. Code art. 3492. Therefore, civil conspiracy claims are subject to a liberative prescription of one year.

[32] Unjust enrichment is a subsidiary remedy that is not available where there is another remedy available under law. *See* La. C.C. art. 2298. However, in *Dugas v. Thompson*, 2011-0178 (La. App. 4 Cir. 6/29/11), 71 So. 3d 1059, the Fourth Circuit noted that where a plaintiff's available remedy has already prescribed, he may not then recover under a theory of unjust enrichment. Therefore, inasmuch as Plaintiffs' other state law tort claims have already prescribed herein, any action based upon unjust enrichment is not available.

13

issues. However, each of their state delictual claims raised against Segar are prescribed because their injury was sustained *prior to April 26, 2020*. Notably, much (if not all) of the damages Plaintiffs claim bear no direct relationship to the alleged lack of an appropriate Title IX reporting system but appear to stem from the underlying episodes of alleged sexual and/or physical abuse (*i.e.*, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, humiliation, physical assault, anxiety, emotional and physical pain and suffering, a denial of access to educational benefit, and other economic and non-economic damages[33]). Thus, to the extent Plaintiffs seek to recover damages based upon the underlying abuse, the date(s) of injury for each such event should be determinable of when prescription began to run.

Even if the source of Plaintiffs' claimed injuries was truly Defendants' purported acts or omissions in handling their individual Title IX issues, their delictual claims against Segar would still be considered prescribed based upon the very few factual assertions they have made respecting her. For the reasons that Plaintiffs' Title IX claims and §1983, 1985, and 1986 claims are prescribed as outlined above, Plaintiffs' state law delictual claims are also prescribed.

        d.    <u>Louisiana Racketeering Act claims against Segar</u>

In addition to raising delictual claims under state law, Plaintiffs have also asserted claims against Defendants pursuant to the Louisiana Racketeering Act, La. R.S. 15:1351, et seq. A civil proceeding asserting a claim for violation of La. R.S. 15:1353 is to be "commenced at any time within five years after the conduct in violation of a provision of this Chapter terminates or the cause of action accrues."[34] Thus, any claims arising prior to April 26, 2016 are prescribed.

### ***Qualified Immunity***

Qualified immunity provides state officials with immunity from suit. *Pearson v. Callahan*,

---

[33] *See* Doc. 22 at ¶487.
[34] La. R.S. 15:1356(H).

555 U.S. 223, 231-32, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). "The doctrine of qualified immunity seeks to strike a balance between competing social objectives, providing breathing space for the vigorous exercise of official authority while at the same time allowing a possibility of redress for victims of officials' abuses." *Kinney v. Weaver,* 367 F.3d 337, 349-50 (5th Cir. 2004). "As against claims under federal law, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.,* citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

The U.S. Supreme Court has refined the qualified immunity standard by defining "clearly established" in a way that encompasses the "objective reasonableness" inquiry. To be "clearly established," the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The question of whether the right was clearly established requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident**.** *Conroe Creosoting Co. v. Montgomery County,* 249 F.3d 337, 340 (5th Cir. 2001). An official's conduct is protected by qualified immunity unless the very action in question has been held unlawful. *Kinney,* 367 F.3d at 349-350, citing *Anderson, supra.*

To overcome qualified immunity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937. In other words, Plaintiffs herein must allege facts which, if true, would

show that Segar violated their rights in a way that she knew or should have known was unlawful.

A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. *Id.* Therefore, before engaging in the inquiry into whether the official unreasonably violated clearly established law, courts should first determine whether the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of federal law in the first place. *Id.* For the reasons set forth below, Segar is entitled to qualified immunity for the Section 1983, 1985 and 1986 claims brought against her in the Amended Complaint.

a.    First Amendment Retaliation claim pursuant to 42 U.S.C. 1983

Plaintiffs allege that they "engaged in constitutionally protected speech when they disclosed instances of sexual misconduct to the Individual Defendants and other LSU employees and when they publicly criticized LSU's handling of their complaints as violating the requirements of Title IX."[35] Plaintiffs further allege that all Defendants, including Segar, attempted to regulate the content of their speech by "failing to seriously investigate and/or appropriately report allegations of sexual abuse and/or misconduct; telling Plaintiff's teammates to avoid them after they reported sexual misconduct; telling students they made the right choice in not reporting; and funding insufficient training on reporting rights of students."[36]

The alleged conduct of Segar (which is denied) is not a violation of federal law, and she is entitled to qualified immunity. Alternatively, should this Court find that the alleged conduct is a violation of federal law, the conduct is not a "clearly established" violation of federal law; thus, Segar is entitled to qualified immunity.

---

[35] Doc. 22, ¶426.
[36] Id at ¶427.

i.    Plaintiffs failed to establish a violation of federal law

In order to establish a §1983 claim of retaliation for exercise of free speech analyzed in the private citizen context a plaintiff must prove that: (1) she was engaged in constitutionally protected activity; (2) the defendant's alleged actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the exercise of her protected right was a substantial or motivating factor the defendant's actions. *Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015), *disapproved of by Hersh v. Tatum,* 526 S.W.3d 462 (Tex. 2017); citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir.2002). Plaintiffs failed to allege all essential elements of their §1983 claim of retaliation for exercise of free speech against Segar.

Calise Richardson

Richardson claims that she attempted to call Segar and report abuse, but that Segar did not respond when Richardson returned Segar's call.[37] Richardson's allegations do not state that Segar was made aware of the abuse allegations prior to the phone call attempts. Further, Richardson reported the abuse allegations to another LSU employee soon after the missed calls with Segar; thus, Segar's alleged action of not responding to Richardson's phone call did not chill Richardson's speech and could not be said to be motivated by Richardson's alleged exercise of protected speech. Additionally, there is no allegation that Segar suppressed Richardson's speech or retaliated against her for alleged speech.

Ashlyn Robertson

Robertson contends that Segar was informed of her rape by the diving coach through a series of third-party hearsay reports.[38] To be clear, Robertson did not report the rape to Segar and does not allege that she ever spoke to Segar or communicated with her in any way. However,

---

[37] Doc. 22, ¶146.
[38] Doc. 22, ¶161.

17

Robertson seems to suggest that Segar should have taken a third-hand hearsay allegation and filed a Title IX report.[39] Nevertheless, Robertson admits that she declined to proceed with a Title IX investigation when specifically asked by Associate Vice President and Dean of Students Mari Fuentes-Martin if she wished to proceed with an investigation.[40] Because Robertson failed to report any Title IX violations to Segar and, in fact, did not report anything to Segar or communicate with her in anyway, Segar could not have violated Robertson's rights to free speech, or have caused Robertson to suffer any injury with respect thereto. Additionally, there is no allegation that Segar suppressed Robertson's speech or retaliated against her for alleged speech.

Samantha Brennan

Brennan claims when she reported that her nude photograph had been taken and disseminated without her consent, Segar took her to the LSU Police Department to file a report.[41] Brennan states she requested that her allegations be handled internally with LSU, and that Segar ignored that request.[42] This is a conclusory allegation. Segar properly escorted Brennan to the LSU Police Department to report a crime. Segar made a choice to report a crime to the LSU Police Department for further handling, including for Title IX reporting, as appropriate. Segar's actions cannot logically be said to have caused Brennan any injury. This action is not a free speech violation and did not cause Brennan any injury. Additionally, Brennan certainly makes no claim that her request that the allegation be handled internally motivated Segar to ignore the request and/or to take her to the police station. Furthermore, there is no allegation that Segar suppressed Brennan's speech or retaliated against her for her speech.

---

[39] Id at ¶171.
[40] Id at ¶164.
[41] Id at ¶183.
[42] Id.

Jade Lewis

Although Segar properly filed two Title IX reports of Lewis's abuse, Lewis claims Segar did not report retaliation Lewis allegedly experienced. Lewis also contends Segar did not report a third instance of reported abuse of Lewis to the Title IX office but instead reported the abuse to the LSU Police Department."[43] The fact that Segar did not report Lewis's alleged retaliation to the Title IX office, if true, did not chill Lewis's speech because she admits she later reported additional abuse to Segar. The fact that Segar reported the third instance of abuse to the LSU Police Department instead of the Title IX office, if true, can't be said to have chilled Lewis's speech or caused her any injury. Segar made a choice to report a crime to the LSU Police Department for further handling, including for Title IX reporting, as appropriate. Segar's actions cannot logically be said to have caused Lewis any injury. Additionally, there is no allegation that Segar suppressed Lewis's speech or retaliated against her for her speech.

Corrin Hovis

Hovis avers that Segar was notified of her Title IX complaint against an LSU quarterback, and subsequently of the outcome of the investigation, resulting in a finding that the player violated Title IX.[44] Hovis contends Segar was notified of the complaint on February 4, 2020 and of the conclusion of the investigation, on March 6, 2020.[45] According to Hovis, the LSU quarterback wasot suspended from LSU until May 10, 2020. To be clear, Hovis does not contend that Segar was involved in any way in the Title IX investigation or reporting or that she reported any allegations to Segar or had any communication with Segar at all. Hovis merely makes a conclusory allegation that Segar was aware of the investigation and the conclusion. Hovis does not even allege

---

[43] Id at ¶271.
[44] Id at ¶330.
[45] Id.

any injury she suffered by Segar's alleged awareness of the investigation and conclusion. These threadbare allegations cannot support a free speech retaliation claim. Additionally, there is no allegation that Segar suppressed Hovis's speech or retaliated against her for her speech.

ii.    Plaintiffs failed to allege Segar violated clearly established law

In the unlikely event this Court decides that Plaintiffs Richardson, Robertson, Brennan, Lewis and Hovis did allege a violation of a federal right with respect to their §1983 First Amendment retaliation claims against Segar, Segar shows that she did not violate clearly established law because Segar's alleged actions have not been held to be unlawful. A state official will not lose his qualified immunity unless the law is clear that the particular action by the state official violates a protected right. *Kinney, supra,* at 349-350. Instead, Segar asserts that the Plaintiffs have not alleged any conduct that would demonstrate that she acted in a way that she knew was unlawful. Undersigned counsel is not aware of any reported cases where a state official was found to have violated a student's First Amendment free speech rights under any of the factual allegation scenarios involving Segar.

Further, for the reasons more fully briefed above, the Plaintiffs failed to show that Segar retaliated against them on the basis of protected speech in violation of the First Amendment. Thus, Segar did not violate clearly established law with respect to Plaintiffs' alleged "free speech". Therefore, Segar is entitled to qualified immunity and to have Plaintiffs' claims against her for First Amendment retaliation pursuant to 42 U.S.C. 1983 dismissed because Plaintiffs failed to allege that Segar violated their federal rights and/or that Plaintiffs' federal rights were clearly established.

b. Fourteenth Amendment Denial of Equal Protection claim pursuant to 42 U.S.C. 1983.

The Equal Protection Clause states that "[n]o State shall ... deny to any person within its

jurisdiction the equal protection of the laws." *U.S. Const. amend. XIV, § 1, Grimm v. Gloucester Cty. Sch. Bd.,* 972 F.3d 586, 606 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *cert. denied*, 141 S. Ct. 2878 (2021). It is "essentially a direction that all persons similarly situated should be treated alike." *Id*, citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "To maintain an equal protection claim, a plaintiff typically alleges that he 'received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212–13 (5th Cir. 2009); *Taylor v. Johnson,* 257 F.3d 470, 473 (5th Cir.2001); *see In re United States,* 397 F.3d 274, 284 (5th Cir.2005); *Beeler v. Rounsavall,* 328 F.3d 813, 816–17 (5th Cir.2003); *Rolf v. City of San Antonio,* 77 F.3d 823, 828 (5thCir.1996).

Plaintiffs allege all Defendants discriminated against them on the basis of sex and denied them equal protection under the law in violation of the Equal Protection Clause of the Fourteenth Amendment.[46] When a right is clearly defined in the abstract, such as the right to equal protection, a state official will not lose his qualified immunity unless the law is clear that the particular action by the state official violates a protected right. *Kinney, supra,* at 349-350. Instead, Segar asserts she did not violate any clearly established right to equal protection for any of the named Plaintiffs.

Plaintiffs contend Defendants subjected them to a hostile environment and failed to appropriately respond to and investigate their reports of sexual misconduct and other violations.[47] Plaintiffs also contend "that all Defendants intentionally treated female presenting and LGBTQ+ identifying students, like Plaintiffs, differently than similarly situated non-LGBTQ+ male presenting students for the purposes of maintaining the school's popular reputation and soliciting

---

[46] Id at ¶434.
[47] Id at ¶436.

21

donor funds."[48] These are merely conclusory allegations lacking factual detail and cannot support a claim for denial of equal protection. None of the five Plaintiffs contend that Segar treated them differently than anyone else similarly situated. Therefore, Plaintiffs' Equal Protection claim was not clearly established, and Segar is entitled to qualified immunity for said claim.

    c.    <u>14TH Amendment Denial of Procedural Due Process Claim - 42 U.S.C. 1983</u>.

Plaintiffs claim all Defendants deprived them of their property and liberty interests without adequate notice or a meaningful opportunity to be heard in violation of the Due Process Clause of the Fourteenth Amendment.[49] In support of this claim, Plaintiffs allege Defendants "created a culture of silence by failing to report complaints of sex discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits or grievance procedures."[50]

In order to establish a due process violation, the plaintiff must show that he has been deprived of a protected liberty or property interest. *Garcia v. United States*, 666 F.2d 960, 963-64 (5th Cir. 1982). "It is only when the state deprives an individual of a 'protected interest' – that is, 'life, liberty, or property' – that fair procedures are constitutionally mandated." *Woodard v. Andrus,* 649 F. Supp. 2d 496, 505 (W.D. La. 2009). Protected property interests are created and defined by "state statutes or rules entitling citizens to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 572-73, 95 S. Ct. 729, 735, 42 L. Ed. 2d 725 (1975); *see also Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39, 105 S. Ct. 1487, 1491, 84 L. Ed. 2d 494 (1985).

Plaintiffs allege deprivation of their liberty and property interests, including the alleged

---

[48] Id at ¶437.
[49] Id at ¶442.
[50] Id at ¶444.

right to be provided adequate notice of the actions to be taken due to the alleged sex-based discrimination they suffered, and meaningful opportunity to be heard.[51] Plaintiffs also contend they were deprived of their liberty and property interests in accessing educational opportunities and benefits.[52] It is not clearly established that such interests are protected by procedural due process. It hasn't even been resolved whether a student's interest in continued enrollment at a post-secondary institution is protected by procedural due process. *See, e.g., Bd. of Curators of Univ. of Missouri v. Horowitz,* 435 U.S. 78, 84–85, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); *Bell,* 351 F.3d at 249. *McGee v. Schoolcraft Cmty. Coll.,* 167 F. App'x 429, 437 (6th Cir. 2006). If continued enrollment in a university is not an established protected interest, then it follows that access to educational opportunities and benefits is also not clearly established. Similarly, it is not clearly established that Plaintiffs have a right to notice of actions to be taken or an opportunity to be heard with respect to sex-based discrimination.

Furthermore, Plaintiffs failed to allege that Segar took any actions to deny them equal access to educational opportunities and benefits or grievance procedures. Plaintiffs also failed to allege that Segar failed to provide them notice of the actions to be taken or meaningful opportunity to be heard. In contrast, Segar properly reported each complaint she received from the Plaintiffs of sexual misconduct.

As previously discussed, Richardson did not even make a report to Segar of sexual misconduct or abuse. Nevertheless, Richardson did report her abuse to another LSU employee and a Title IX investigation was opened. Similarly, Robertson did not make a report to Segar, but her abuse was reported to another LSU employee, and she was provided an opportunity to make a Title IX complaint and she declined. Brennan was driven to the LSU police station by Segar so she

---

[51] Id at ¶445.
[52] Id at ¶446.

23

could make a report of her allegations. Segar reported all of Lewis's abuse allegations either to the Title IX office or the LSU Police Department. Hovis did not even allege that she reported any sexual misconduct allegations to Segar or that Segar had any involvement in her Title IX investigation.

Thus, Plaintiffs have not shown that Segar violated any clearly established procedural due process rights and Segar is entitled to qualified immunity for such claims asserted against her.

d.    <u>Conspiracy to Interfere with Civil Rights pursuant to 42 U.S.C. 1985 and 1986</u>

Plaintiffs allege "Defendants' pattern, practice, and custom as alleged in [the] Complaint constitute a conspiracy to permit state actors to deprive Plaintiffs of Constitutional Rights to Free Speech, Due Process, and Equal Protection."[53] As previously stated, Plaintiffs have failed to allege that Segar violated any of the aforementioned rights. Alternatively, should this Court find that the any of Segar's alleged conduct is a violation of federal law, the conduct is not a "clearly established" violation of federal law; thus, Segar is entitled to qualified immunity.

i.    Plaintiff failed to establish a violation of federal law

"To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, or equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson,* 30 F. 3d at 652-653 (5th Cir. 1994). Plaintiffs have not alleged all essential elements for their claim of conspiracy against Segar.

Plaintiffs' conspiracy allegations are threadbare and conclusory. It is well-settled that

---

[53] Id at ¶452.

baseless assertions without more are not sufficient to state a valid claim. *Twombly,* at 557, 127 S.Ct. 1955. Plaintiffs failed to provide any sufficient details of an alleged conspiracy between Segar and anyone else to deprive anyone of their constitutional rights.

With regard to the second factor, it is a requirement that the alleged conspirators must have violated a law which affords the plaintiff some protection.  In *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 925 (5th Cir. 1977), the Fifth Circuit analyzed the issue in this manner,

> If the object of the defendants' conspiracy did not include a violation of some law (independent of section 1985(3) itself) which protects the plaintiff, the conspiracy could not have deprived the plaintiff of the "protection of the laws". Put more simply, there can only be a deprivation of the rights of a plaintiff when the action of the defendants is otherwise illegal. If the defendants have not conspired to act contrary to law, an object of a section 1985(3) conspiracy has not been made out and the section is inoperable, regardless of whether the legal rights of the plaintiff are somehow affected.

As stated herein, Segar has not violated any Plaintiffs' constitutional rights, whether First Amendment, Equal Protection, or Procedural Due Process, or any other right. Thus, Plaintiffs failed to sufficiently allege the second element of their §1985(3) claim.

Further, Plaintiffs failed to allege an act in furtherance of the alleged conspiracy necessary to sufficiently meet the third essential element of their claim. Lastly, Plaintiffs failed to allege any cognizable injury caused by Segar in order to satisfy the fourth element necessary for their §1985(3) claim. As Plaintiffs cannot meet all of the essential elements of their §1985 claim, Segar is entitled to qualified immunity.

42 U.S.C. §1986 provides a cause of action against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed…"  As explained above, Plaintiffs failed to state a cause of action against Segar pursuant to 42 U.S.C. §1985; thus, Plaintiffs' claim

against Segar pursuant to 42 U.S.C. §1986 must also fail. *Galloway v. State of La.,* 817 F.2d 1154 (5th Cir. 1987).

ii.    Plaintiffs failed to allege Segar violated clearly established law

Alternatively, even if this Court were to find that Plaintiffs sufficiently stated a claim against Segar for conspiracy to violate their constitutional rights, Segar shows that such rights were not clearly established at the time of her alleged conduct. For the reasons asserted herein with respect to Plaintiffs §1983 claims for violation of First Amendment, Equal Protection, and Procedural Due Process, Segar did not violate clearly established law. Thus, it cannot be said that she violated any clearly established law respecting conspiracy to commit any such violations. As such, Segar is entitled to qualified immunity for the §1985 claims asserted against her. In turn, Segar is also entitled to qualified immunity for the §1986 claims asserted against her.

e.    <u>Title IX</u>

While the Title IX claims asserted against Segar are prescribed and are not properly brought against Segar as an LSU employee, Segar is also entitled to qualified immunity for said claims. In order to establish a Title IX claim "a plaintiff must show that: (1) the sexual harassment was severe, pervasive and objectively offensive; (2) the [school] had actual knowledge of the sexual harassment, and (3) it acted with deliberative indifference to the harassment." *Pemberton v. W. Feliciana Par. Sch. Bd.,* No. CIV.A. 09-30-C, 2010 WL 431572, at *3 (M.D. La. Feb. 3, 2010).

The *Pemberton* court reasoned:

> A funding recipient that does not engage in harassment directly may not be liable for damages unless its deliberate indifference subjects its student to harassment, that is the deliberate indifference must at a minimum cause the student to undergo harassment or make them liable or vulnerable to it. A defendant acts with deliberate indifference only where his response to the harassment or lack of response is clearly unreasonable in light of the known circumstances. *Davis*, 526 U.S. at 644–45, 648, 119 S.Ct. at 1672, 1674. Mere negligent action is insufficient to state a claim. *Watkins*, supra. Officials may avoid liability under a deliberate indifference

standard by responding reasonably to a risk of harm even if the harm ultimately was not averted. Determining what constitutes appropriate remedial action in Title IX discrimination cases necessarily depends on the particular facts of the case. *Doe v. Dallas Ind. School Dist.*, 220 F.3d 380, 384 (5th Cir.2000)(Title IX teacher-student harassment case). *Pemberton,* No. CIV.A. 09-30-C, 2010 WL 431572, at *3 (M.D. La. Feb. 3, 2010).

Segar's alleged action in all five Plaintiffs' cases clearly show she responded reasonably in light of the known circumstances; thus, she did not violate clearly established law with respect to the Plaintiffs' sexual misconduct allegations. In three of the cases (Richardson, Robertson, and Hovis), Segar never even received a report of alleged Title IX violation from the Plaintiffs. Thus, it was not unreasonable for Segar to refrain from reporting something she had no first-hand report of herself.

For Hovis, she only states that Segar was aware of the complaint and the investigation conclusion. Hovis seems to take issue with the two-month delay of punishment after the conclusion of the investigation. However, Hovis does not allege Segar had any control over disciplinary action and/or the timing of such action for football players. Thus, Segar's actions or inactions cannot be said to be unreasonable.

Brennan seems to take issue with Segar bringing her to the LSU Police Department and claims there was no Title IX investigation or report. Segar's decision to report a crime to the police does not suggest deliberate indifference or unreasonableness. A report to the LSU police could have reasonably been expected to address Brennan's concerns as well as to ensure appropriate Title IX reporting was accomplished.

Lewis also assigns blame on Segar for reporting her abuse to the LSU police instead of the Title IX office. This action also does not suggest deliberate indifference or unreasonableness as Segar had already reported two prior instances of abuse by the same perpetrator to the Title IX office. Notifying the LSU police of the third instance of reported abuse cannot be considered

27

deliberate indifference as it was reasonable to assume that appropriate Title IX reporting would follow the police report. Lewis also contends Segar did not report her allegations of retaliation by others due to her Title IX reports. Even if this is true, it is not clear that such reporting was required because the alleged retaliation was "comments" from the perpetrator's family and coaches blaming Lewis for the perpetrator's punishment. Lewis does not state what the comments were, how often the comments were made or how many individuals made the comments. This allegation is not sufficiently severe, pervasive or objectionable to establish a Title IX violation. Thus, Segar would be entitled to qualified immunity even if Plaintiffs were allowed to bring a Title IX claim against her.

### *Failure to State a Claim*

a.    Title IX

Plaintiffs contend the LSU Defendants violated Title IX due to retaliation.[54] This allegation appears to attempt to state a claim against Segar under Title IX in her official capacity only. Irrespective of which capacity Segar is sued under Title IX, whether official or individual, Plaintiffs have failed to state a claim against Segar under Title IX.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…" 20 U.S.C. § 1681(a). "Recipient" as that term is used in Part 106 of Title 34 of the Code of Federal Regulations means "any State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any public or private agency, institution, or organization, or other entity, or any person, to whom Federal financial assistance is extended directly or through another recipient and which

---

[54] Doc. 22, ¶409.

operates an education program or activity which receives such assistance, including any subunit, successor, assignee, or transferee thereof." 34 C.F.R. § 106.2.

In sum, Title IX claims are clearly not actionable against university employees because such employees do not meet the definition of "recipient" as defined by the Title IX regulations. 34 C.F.R. § 106.2. An employee is not "the State", nor is an employee an "agency, institution, or organization, or other entity." Id. Congress specifically limited any right of action under Title IX to actions against a recipient as that term is defined in the Title IX regulations.

Segar is alleged to be an employee of LSU.[55] As such, Segar is not a "recipient" as that term is used in 34 C.F.R. § 106.2 and is thus not liable for discrimination or retaliation under Title IX. Although Plaintiffs may have the right to bring a claim for Title IX discrimination and/or retaliation, it is not appropriate to bring this action against Segar, a university employee.

In *Fitzgerald v. Barnstable Sch. Comm.*, the Supreme Court held that while Title IX reaches institutions and programs that receive federal funds, it has consistently been interpreted as **not authorizing suit against school officials**, teachers, and other individuals. 555 U.S. 246, 257, 129 S. Ct. 788, 796, 172 L. Ed. 2d 582 (2009) (emphasis added.); see also *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577 (5th Cir. 2020). This notion was reiterated in *Minnis* and was applied in that suit which involved Title IX claims against school officials in both their individual and official capacities. *Minnis,* 927 F.Supp.2d at 889.

Title IX was enacted to eradicate gender discrimination in programs that receive federal funding. *Id*; see also *Gebser v. Lago Vista Indep. Sch. Dist*., 24 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 582 (2009). In essence, the recipient of the federal funds agrees not to discriminate and the Government, in turn, provides the federal funding. *Id.* Thus, claims of Title IX discrimination

---

[55] Doc. 22, ¶39.

may only be brought against the federal funds recipient, not its employees. *Jones v. S. Univ.,* 834 F. App'x 919, 923 (5th Cir. 2020). For the reasons discussed above, Plaintiffs claims against Segar for Title IX retaliation, whether in her official or individual capacity, and whether for damages or injunctive relief, must be dismissed with prejudice.

      b.   <u>Negligence Claim</u>

In addition to being prescribed, Plaintiffs' negligence claims against Segar also fail to state a claim upon which relief may be granted. They allege that Segar and other Defendants breached "a duty of reasonable care to ensure their safety and freedom from sex-based assault, harassment, and abuse while students at LSU."[56] According to Plaintiffs, the breach occurred with respect to Defendants "conducting investigations into their claims of sex-based assault, sexual misconduct, and abuse and enforcing the Title IX Policy."[57]

Negligence claims are examined using a duty-risk analysis in which a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element).[58] One of the necessary considerations in the duty-risk analysis is to determine what, if any, duties were owed by the respective parties. Whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case,

---

[56] Doc. 22, ¶ 481.
[57] *Id.*
[58] *Labarre v. Occidental Chem. Co.*, 2017-1368 (La.App. 1 Cir. 5/2/18); 250 So.3d 932, writ denied, 2018-0912 (La. 9/28/18); 252 So.3d 929 (citing *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 2001-2217 (La. 4/3/02), 816 So.2d 270, 275–76)).

and the relationship of the parties.[59] Duty is a question of law. *Id*. Simply put, the inquiry is whether the plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault— to support his claim.[60]

Plaintiffs cite various circumstances (discussed below) in which they contend Defendants failed to take appropriate action – many of which are not even implicated by the few allegations Plaintiffs raise in their Amended Complaint concerning Segar. Taken individually, each of the alleged omissions Plaintiffs assert in order to support their negligence claim either did not involve Segar or were not within the scope of any duty she had, based upon the few factual allegations Plaintiffs have raised concerning her.

Plaintiffs broadly claim that all Defendants breached the following alleged duties of reasonable care:

a. Failing to take reasonable protective measures to prevent recurrence or remedy effects of sexual misconduct after Plaintiffs' disclosures;
b. Failing to report Plaintiffs' disclosures of sexual misconduct to LSU's Title IX Office;
c. Failing to properly investigate the plaintiffs' reports of sexual misconduct;
d. Failing to properly discipline the perpetrators identified by Plaintiffs;
e. Failing to follow LSU policies in reviewing, investigating, and resolving complaints of sexual misconduct pursuant to Title IX;
f. Failing to keep accurate records of Plaintiffs' reports of sexual misconduct;
g. Failing to respond to substantiated reports of sexual misconduct against high-ranking LSU employees;
h. Failing to ensure LSU implemented its Title IX Policy and Code of Student conduct;
i. Failing to ensure LSU treated all similarly situated students equally;
j. Failing to encourage students to report instances of sexual misconduct;
k. Failing to follow through with imposed discipline following Title IX investigations;
l. Failing to provide reasonable accommodations to students with disabilities;
m. Failing to provide reasonable accommodations to students following disclosure of sexual misconduct;
n. Failing to interview witnesses to sexual misconduct indicated by Plaintiffs;
o. Failing to inform students of their Title IX rights;
p. Failing to provide Plaintiffs with information about their reports;
q. Failing to discipline employees in violation of LSU's Title IX Policy;

---

[59] *Id*. (*citing Joseph v. Dickerson*, 99-1046 (La. 1/19/00), 754 So.2d 912, 916).
[60] *Faucheaux v. Terrebonne Consol. Gov.*, 615 So.2d 289, 292 (La. 1993).

    **r.** Interfering in the enforcement of Title IX by hiring and paying for a separate Title IX training and audit for the Athletics Department;

    **s.** Creating an environment where all students are discriminated against on the basis of sex;

For the reasons previously ascribed hereinabove, none of the purported acts/omissions raised by the five Plaintiffs who assert allegations against Segar support the imposition of any duty upon Segar, nor do they demonstrate a breach of any duty by her. Accordingly, there can be no finding in this matter that Segar was negligent in any of her conduct toward Plaintiffs.

    c.   <u>Negligent Supervision Claim</u>

Though this claim is prescribed, Plaintiffs also fail to state a claim for negligent supervision against Segar.[61] Plaintiffs state that "Defendants had a duty to properly supervise, train, and monitor their employees and students and to ensure those employees' and students' compliance with all applicable statutes, laws, regulations, and institutional policies."[62] According to Plaintiffs, "[a]ll Defendants had a duty to supervise, train, and monitor students, including but not limited to the Plaintiffs and their assailants . . . to ensure that the Title IX policy was followed to prevent, properly respond to, and remedy incidents of sex-based discrimination on LSU's campus."[63] Thus, Plaintiffs appear to be claiming that Segar failed to properly supervise the student victims and assailants.

Plaintiffs' allegations in this regard are threadbare and conclusory. There is no allegation that either the student victims or assailants were employed by Segar. For liability to attach to Segar based upon the actions of those alleged to be under her control and/or supervision, a master-servant relationship must exist.[64] First, it is unclear how Segar in her capacity as Senior Associate Athletic

---

[61] In the Amended Compliant, Plaintiffs cite La. C.C. art. 2030 in support of this claim. (Doc. 22, p. 119 – Count XII); however, that citation is incorrect. Plaintiffs appear to have intended to cite La. C.C. art. 2320.

[62] Doc. 22, ¶ 491.

[63] Doc. 22, ¶ 492.

[64] *Hughes v. Goodreau*, 2001-2107 (La. App. 1 Cir. 12/31/02), 836 So. 2d 649, 656, <u>writ denied,</u> 2003-0232 (La. 4/21/03), 841 So. 2d 793.

Director (or even in her capacity prior to that) had any direct oversight of the student victims such that she should become liable for training them in Title IX policy. It is likewise unclear how Segar had such a degree of supervisory oversight of the alleged assailants to the point that she might have prevented them from committing the assaultive conduct from whence the plaintiffs' damages originated. The assailants' violation of Title IX was the underlying sexual and/or physical abuse/harassment of the victims. It is farfetched to say that Segar's failure to train the assailants in Title IX policy (even assuming she had a duty to do so – which she did not) either caused or contributed to the underlying act.

d. <u>Negligent Infliction of Emotional Distress</u>

Plaintiffs contend that Defendants negligently inflicted emotional distress upon them in their response to reports of sexual misconduct and in their lack of prevention of sex-based discrimination.[65] Plaintiffs allege that this occurred in the following ways – 1) Defendants' failure to respond appropriately to reports of sex discrimination; 2) their interference in and hindrance of a proper Title IX system at LSU; 3) their failure to conduct appropriate Title IX investigations; 4) their failure to provide Plaintiffs with appropriate interim measures and accommodations; 5) their retaliation against the Plaintiffs; 6) their failure to properly discipline the perpetrators; and 7) their failure to ensure that LSU and the LSU's Athletics Department were free of sex-based discrimination.[66]

Recovery for negligent infliction of emotional distress has been limited to those cases involving the "especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious."[67] Thus, in order to prove

---

[65] Doc. 22, ¶498.
[66] Doc. 22, ¶499.
[67] *Moresi v. Department of Wildlife and Fisheries*, 567 So.2d 1081, 1096 (La.1990).

a claim for negligent infliction of emotional distress, the plaintiffs must establish the following: (1) the defendants owed a duty to the plaintiffs; (2) defendants breached that duty; (3) the defendants' breach of the duty was a cause-in-fact of the plaintiffs' alleged harm; (4) the defendants' breach was a legal cause of the harm plaintiffs' claim to have suffered; and (5) actual damages.[68] The duties alleged herein by Plaintiffs overlap with those discussed above in the section concerning their negligence claim. For the same reasons set forth therein, Plaintiffs have also failed to set forth allegations of any duty that was breached by Segar to support a claim of negligent infliction of emotional distress.

e.    <u>Intentional Infliction of Emotional Distress</u>

Plaintiffs allege that Segar and the other Defendants intentionally inflicted emotional distress in their response to reports of sexual misconduct.[69] According to Plaintiffs, this was evident by various actions of Defendants, including 1) dismissing plaintiff's allegations of sexual misconduct; 2) failing to properly investigate such claims or protect Plaintiffs from their assailants; 3) justifying the behavior of the assailants; 4) failing to properly discipline the assailants; 5) openly mocking and spreading rumors about Plaintiffs; 6) isolating and alienating Plaintiffs; and 7) improperly disciplining and retaliating against Plaintiffs.[70]

Under Louisiana law, a plaintiff claiming intentional infliction of emotional distress ("IIED") must establish three elements: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would

---

[68] *Crockett v. Cardona*, 97–2346, p. 3 (La. App. 4 Cir. 5/20/98), 713 So.2d 802, 804.
[69] Doc. 22, ¶505.
[70] Id., ¶506.

be certain or substantially certain to result from his conduct.[71] "It is not enough that the defendant has acted with intent which is tortuous, or that he maliciously intended to inflict emotional distress.[72] "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.[73]

None of the scant factual allegations concerning Segar sufficiently plead the elements for a cognizable IIED claim. Even the most generous reading of the Amended Complaint does not set forth sufficient facts demonstrating that Segar was "extreme and outrageous" in her handling of Title IX complaints, which has been discussed at length throughout this brief.

Meanwhile, the emotional distress that Plaintiffs claim to have endured appears to stem from the underlying sexual and/or physical abuse – not the purported mishandling of the Title IX reporting. While the emotional distress they suffered because of their assailants was understandably severe, Plaintiffs do not tie their emotional distress to any specific acts or omissions by Segar concerning their individual Title IX matters. Finally, Plaintiffs cite no facts to support a belief that Segar desired to inflict severe emotional distress upon them or knew that severe emotional distress would be certain or substantially certain to result from her conduct. Therefore, no facts are alleged that, if true, set forth the elements for an IIED claim.

e.    Civil Conspiracy

Plaintiffs "allege a conspiracy between all Defendants to systemically and fraudulently

---

[71] *Ioppolo v. Rumana*, 581 F. App'x 321, 327 (5th Cir. 2014)(citing *White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La.1991)).

[72] *Id.*, at 327, citing *James v. Woods,* No. 14–216, —— F.Supp.3d ——, 2014 WL 1896760, *4 (E.D.La. May 12, 2014).

[73] *Id.*

silence Plaintiffs and deprive them of their Constitutional and federal rights to protect the reputation and income of LSU athletics."[74] They allege that "as a direct and proximate result of the Defendants' conspiracy, Plaintiffs have sustained injuries and damages."[75]

Pursuant to La. C.C. article 2324(A), "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." However, "[t]he actionable element of a conspiracy claim is not the conspiracy itself; rather, it is the tort that the conspirators agree to perpetrate and actually commit in whole or in part."[76] La. C.C. article 2324(A) requires a meeting of the minds or collusion. The Louisiana Supreme Court has held that conspiracy by itself is not an actionable claim under Louisiana law.[77] Instead, it is "the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part" that constitutes the actionable elements of a claim.[78] In order to recover under a conspiracy theory, a plaintiff must allege and prove that an agreement existed to commit an illegal or tortious act, which act was actually committed, which resulted in the plaintiff's injury, and there was an agreement as to the intended outcome or result.[79] Just as Segar did not commit any illegal or tortious acts that caused injury to Plaintiffs, she likewise cannot be found liable for civil conspiracy based thereon.

### f.    Civil Violations of the State Racketeering Act

Plaintiffs have raised a claim pursuant to Louisiana's Racketeering Act, La. R.S. 15:1351, et seq., in which they claim that Defendants, including Segar, conducted an enterprise through a

---

[74] Doc. 22, ¶530.

[75] *Id.*

[76] *Thomas v. N. 40 Land Dev., Inc.*, 2004-0610 (La. App. 4 Cir. 1/26/05), 894 So. 2d 1160, 1174, citing *Ross v. Conoco, Inc.,* 2002–0299, pp. 7–8 (La.10/15/02), 828 So.2d 546, 552 (citing *Butz v. Lynch*, 97–2166, p. 6 (La.App. 1 Cir. 4/8/98), 710 So.2d 1171, 1174).

[77] *Ross v. Conoco, Inc.*, 2002–0299 (La.10/15/02), 828 So.2d 546 (*citing Butz v. Lynch*, 97–2166 (La. App. 1 Cir. 4/8/98), 710 So.2d 1171). *See also* La. Civ. Code Art. 2324.

[78] *Id.*

[79] *Butz* at 1174.

pattern of racketeering. They allege the enterprise at issue in this case is an association-in-fact enterprise composed of all named Defendants.[80] Plaintiffs allege Defendants maintained an interest in and control of the "Enterprise" and also conducted or participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity alleged in the Amended Complaint. Plaintiffs allege Defendants' control and participation in the Enterprise were necessary for the successful operation of Defendants' scheme. Plaintiffs allege the "Enterprise" had an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engaged.

Plaintiffs allege Defendants and those employed by and/or associated with the Enterprise have conducted the affairs of the Enterprise through a pattern of racketeering activity in violation of LRA Sections 15:1353(a), (b), and (c) and have conspired to violate Section 15:1353(c) in violation of Section 15:1353(d) by utilizing donations solicited from international and national donors through TAF to make payments directly to LSU and on behalf of its employees and to implement a deficient sexual misconduct education program and reporting scheme within the Athletics Department that was knowingly unable to meet the standards mandated by the NCAA or Title IX and/or by falsely certifying to the NCAA that the Athletics Department was meeting the mandated standards to continue competing in interstate collegiate sporting events to protect the revenue from student-athletics to LSU, TAF, and Orgeron Defendants.

There is little Louisiana jurisprudence regarding this statute, but the State cites federal cases, noting that Louisiana racketeering laws are modeled upon federal "RICO" legislation.[81] Because of the parallel between the RICO and Louisiana's statutes, federal decisions in this area

---

[80] Doc. 22, ¶556.
[81] *State v. Touchet*, 1999-1416, p. 4 (La. App. 3 Cir. 4/5/00); 759 So.2d 194, 197.

are persuasive.[82] As established by federal jurisprudence "RICO claims under  have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'"[83]  Proof of the existence of an "enterprise" is essential. Also, the "pattern of racketeering activity" must be proven as a separate element.[84]

First, Plaintiffs have not plead a valid enterprise to support their LRA claim. "To 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' an individual must have some part in the operation or management of the enterprise itself." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539 (5th Cir. 2012), as revised (Jan. 12, 2012). Plaintiffs have failed to allege that Segar actually "operated" or "managed" the alleged enterprise involved in the various racketeering allegations set forth in their Amended Complaint. Participating in Title IX investigations and following the instructions of her supervisors does not show that Segar actually directed the enterprise's affairs. There is also nothing substantial in the Husch Blackwell Report showing that Segar had any control over the alleged "enterprise." At all relevant times, Segar simply performed the job duties assigned to her by her supervisors.

Moreover, there is no actual enterprise. Plaintiffs plead an association-in-fact enterprise consisting of LSU, its Board of Supervisors, its athletics staff, other LSU employees, and TAF. "[A]n association-in-fact enterprise includes 'a group of persons associated together for a common purpose of engaging in a course of conduct,' and that enterprise can be proved with 'evidence of an ongoing organization, formal or informal, and by evidence that the various associates function

---

[82] *Id*.
[83] *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007), quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer,* 90 F.3d 118, at 122 (5th Cir.1996).
[84] *Touchet*, supra, 197.

as a continuing unit.'[85] There are three indispensable structural features to an association-in-fact enterprise – "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."[86]

Plaintiffs also fail to set forth sufficient facts to show that the "enterprise" they allege had a common purpose. The actions described to support the concept of an enterprise do not describe a common course for all of those presumed to be associated with the enterprise, especially when considering that some of the alleged racketeering activity is connected to LSU athletics while other alleged actions by the enterprise have no relationship to athletics at all. Thus, there is no central, unifying theme among the various acts alleged, even if accepted as true.

Plaintiffs must also establish both a but for cause and proximate cause in order to show injury based upon the racketeering activity. *Waste Mgmt. of Louisiana, L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 965 (5th Cir.), *cert. denied*, 140 S. Ct. 628, 205 L. Ed. 2d 390 (2019). (Internal citations omitted.) The Louisiana Racketeering Statute provides in pertinent part: "Any person who is injured by reason of any violation of the provisions of R.S. 15:1353 shall have a cause of action against any person engaged in racketeering activity who violates a provision of R.S. 15:1353.[87] Here, Plaintiffs' Amended Complaint fails to show a pattern of racketeering activity by Segar connected to the conduct or control of any enterprise or that caused injury to Plaintiffs. "Racketeering activity" consists of two or more predicate criminal acts that are (1) related and (2) "amount to or pose a threat of continued criminal activity." *Abraham*, 480 F.3d 351, 355 (5th Cir. 2007).

Plaintiffs cite various predicate acts to support their theory of racketeering activity, all of

---

[85] *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015), *quoting Boyle v. United States,* 556 U.S. 938, 944-945, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009).
[86] *Plambeck*, 802 F.3d at 673–74, *relying upon Boyle*, 556 U.S. at 946, 129 S.Ct. 2237. (Emphasis added.)
[87] La. R.S. 15:1356.

which are incongruous with the specific factual allegations they raise concerning Segar. Moreover, Plaintiffs do not even allege that Segar has been charged and convicted with having violated any of the listed predicate acts or any other crimes. Finally, criminal statutes must be strictly construed and the words given their everyday meaning.[88] With these precepts in mind, a review of the predicate acts Plaintiffs rely upon demonstrates that not all of the elements for those offenses are pled within the Amended Complaint.

**Louisiana Revised Statute 14:122**

Plaintiffs first claim Defendants, including Segar, engaged in public intimidation and retaliation in violation of Louisiana Revised Statute 14:122;[89] however, the facts as alleged in the Amended Complaint do not demonstrate any crime in violation of that statute. "Public intimidation" is defined therein as the use of violence, force, extortionate threats, or true threats." None of the facts alleged against Segar demonstrate that she used violence, force, extortionate threats, or true threats against anyone. Moreover, per the statute, such acts must be directed against certain persons (*i.e.*, a public officer or public employee; a grand or petit juror; a witness for a trial or other proceeding before any court, board or officer; a voter or election official; a school bus operator). Within the Racketeering Case Statement, Plaintiffs suggest that Segar and other participants "threatened public employees with harm in the form of **adverse employment consequences such as Retaliation and economic loss** to influence [their] willingness to engage in inappropriate reporting, record-keeping and training."[90]

This is a blatant (though futile) attempt to place certain conduct within the strictures of La.

---

[88] There are "two established rules of statutory construction: (1) all criminal statutes are construed strictly; and (2) the words of a statute must be given their everyday meaning. *State v. Toups*, 2013-1371 (La. App. 1 Cir. 4/3/14), 144 So. 3d 1052, 1056; *citing State v. Hinton*, 08–1849 (La.App. 1 Cir. 2/13/09), 6 So.3d 242, 244, *writ denied,* 09–0821 (La.3/4/11), 58 So.3d 466.
[89] Doc. 22, ¶568 and 569; Doc. 103, p. 40.
[90] Doc. 103, pp. 40-41. (Emphasis added.)

R.S. 14:122; however, Plaintiffs have not identified any specific acts by Segar wherein she threatened economic loss upon any public employee, nor is it alleged that she had the supervisory authority to do so. In particular, Plaintiffs do not allege that Segar did so with respect to any of the five Plaintiffs who have raised any specific allegations concerning Segar. Meanwhile, "retaliation," as contemplated by La. R.S. 14:122(B), must be directed against an elected official.[91] Plaintiffs have identified no elected official that Segar retaliated against. As none of the facts asserted against Segar appear to violate the provisions of La. R.S. 14:122,[92] this predicate act does not support Plaintiff's claim of racketeering activity involving Segar.

### Louisiana Revised Statute 14:132

Plaintiffs next claim that Defendants, including Segar, injured public records in violation of La. R.S. 14:132.[93] However, Segar is not actually alleged to have intentionally removed, mutilated, destroyed, altered, falsified, or concealed "any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer,"[94] which would be a first degree offense. Segar also is not specifically alleged to have committed a second degree offense of the same statute by intentionally removing, mutilating, destroying, altering, falsifying, or concealing "any record, document, or other thing, defined as a public record pursuant to R.S. 44:1 et seq." While Plaintiffs do claim that Segar did not set forth certain information in some of her Title IX reports (*i.e.*, the name of the alleged assailant), this is still not in violation of La. R.S. 14:132, which requires the following essential elements for this crime – "1. intentional removal or concealment; 2. of a public record; 3. that the public record had been filed or deposited; 4. that the

---

[91] See La. R.S. 14:122(B).
[92] Also, as part of this Court's consideration, it should be noted that the Fifth Circuit has previously held that La. R.S. 14:122 is unconstitutionally overbroad inasmuch as it criminalizes threats. *Seals v. McBee*, 898 F.3d 587, 600 (5th Cir. 2018), *as revised* (Aug. 9, 2018)
[93] Doc. 22, ¶568 and 569; Doc. 103, p. 47.
[94] La. R.S. 14:132(A).

filing or depositing was by authority of law; and 5. that the public record had been filed or deposited in a public office or with any public officer."[95]

First, information that is not yet maintained as an existing document (either physically or electronically) is not considered a public record.[96] Also, Plaintiffs do not identify any particular law that required that this information be maintained as a public record.[97] Finally, regardless of whether the name of the perpetrator was set forth in a particular report or not, the reported violation of Title IX was lodged and readily susceptible to investigation, decision, and imposition of any discipline deemed appropriate by the Title IX Office.

### Louisiana Revised Statute 14:133

Plaintiffs also claim Defendants, including Segar, filed false public records in violation of La. R.S. 14:133.[98] This allegation is not only false but it is also not supported by the allegations set forth in the Amended Complaint. Indeed, Plaintiffs do not allege that Segar forged any document nor that she wrongfully altered any document. Rather, they appear to contend that she completed and submitted a document containing a *false statement or false representation of a material fact*, which would be a violation of La. R.S. 14:133(A)(3). Yet, they do not point to any particular statement Segar made in a report that is either false or a false representation of a material

---

[95] *State v. Gomez*, 433 So. 2d 230, 239 (La. Ct. App.), *writ denied*, 440 So. 2d 730 (La. 1983), and *writ denied,* 441 So. 2d 747 (La. 1983).

[96] "**The Public Records Law only applies to written documents** and the custodian has no duty to write down information which exists only as a matter of personal knowledge." *Ass'n for Rts. of Citizens, Inc. v. Par. of St. Bernard*, 557 So. 2d 714, 717 (La. Ct. App. 1990). (Emphasis added.) It should also be observed that in order for a mandamus action to be brought against a records custodian under Louisiana's Public Records Act, one of the express requirements is that "**the document requested must exist**." *Washington v. Cannizzaro*, 2018-0125 (La. App. 4 Cir. 11/7/18), 259 So. 3d 421, at 427. (Emphasis added.) Moreover, a public agency is not required to create a public record that is not already in existence in response to a request for specific information. *See Williams Law Firm v. Board of Supervisors of Louisiana State University*, 03-0079 (La.App. 1 Cir. 4/2/04), 878 So.2d 557, 563; and *Nungesser v. Brown*, 95-3005 (La. 2/16/96), 667 So.2d 1036, 1037.

[97] *Gomez, supra*, 239.

[98] Doc. 22, ¶568 and 569; Doc. 103, p. 50.

fact. Again, criminal statutes must be strictly construed,[99] and the alleged omission of the assailant's name within the report is not itself a falsity nor does it misrepresent a material fact.

### Louisiana Revised Statute 14:129.1

Plaintiffs assert that Defendants, including Segar, violated the provisions of La. R.S. 14:129.1.[100] Significantly, Plaintiffs identify no one that Segar intimidated "by **threat of force or force** . . . with intent to influence his testimony, his reporting of criminal conduct, or his appearance at a judicial proceeding."[101] Similarly, Plaintiffs do not identify any witness that Segar "**injured or at attempt[ed] to injure** . . . **in his person or property** . . . with intent to influence his testimony, his reporting of criminal conduct, or his appearance at a judicial proceeding."[102] The sole would-be example of intimidation Plaintiffs rely upon to implicate Segar is the alleged statement she made to Plaintiff Lewis (*i.e.*, "That's what happens when the cops come to your apartment."),[103] which clearly does not rise to the level of Segar threatening force or injury upon Plaintiff Lewis to support criminal activity as contemplated by La. R.S. 14:129.1.

### Louisiana Revised Statute 14:230

Plaintiffs assert that Defendants, including Segar, violated the provisions of La. R.S. 14:230 by committing the crime of money laundering.[104] Pursuant to that statute, "[i]t is unlawful for any person knowingly to do any of the" specific acts that are listed under Paragraph B thereof with regard to funds that are derived from criminal activity. Thus, it is essential to first determine whether the funds in question were in fact derived from criminal activity. Given that the other predicate offenses discussed herein do not demonstrate violations of the specific criminal statutes

---

[99] *Toups*, *supra*, at 1056.
[100] Doc. 22, ¶568 and 569; Doc. 103, p. 42.
[101] La. R.S. 14:129.1(A)(1). (Emphasis added.)
[102] La. R.S. 14:129.1(A)(2). (Emphasis added.)
[103] Doc. 103, p. 45.
[104] Doc. 22, ¶568 and 569; Doc. 103, p. 53.

relied upon by Plaintiffs, there can be no underlying criminal activity from which these funds were derived. This is fatal to Plaintiffs' assertion that any money laundering has occurred.

Within their Louisiana Racketeering Act Case Statement, Plaintiffs allege that TAF used money from the purported "enterprise" to directly compensate certain Defendants such as Segar "to assist them in remaining complicit in furthering the purpose of the Enterprise."[105] This is a patently conclusory allegation as Plaintiffs have identified no funds that are connected with known criminal activity. Indeed, they do not identify any funds that Segar obtained other than what she would have already been entitled to as part of her regular compensation for her employment and her position with LSU. This was compensation she received for performing her job, and Plaintiffs set forth no factual allegations that she received any additional funds beyond that amount to further the purpose of the enterprise.

### Louisiana Revised Statute 14:120

This particular predicate act is not raised within the Amended Complaint but is cited for the first time in Plaintiffs' Louisiana Racketeering Act Case Statement. [106] Essentially, Plaintiffs now allege that Segar committed the crime of corrupt influencing set forth in La. R.S. 14:120 by "accept[ing] anything of apparent present or prospective value . . . with the intention that [she would] corruptly influence the conduct of any of the persons named in R.S. 14:118 (public bribery) in relation to such person's position, employment, or duty." Similar to the allegations concerning money laundering, Plaintiffs do not identify anything of value that was provided to Segar aside from her salary and other compensation that she was already entitled to as part of her position and her employment with LSU. To their detriment, Plaintiffs also do not allege whom Segar intended to corruptly influence as a direct result of having received something of value. Plaintiffs refer to

---

[105] Doc. 103, p. 54.
[106] Doc. 103, p. 55.

44

public employees or officials but do not identify any that Segar allegedly intended to corruptly influence. Clearly, Plaintiffs have failed to plead adequately the elements for this crime, which appears to have been only added recently as an afterthought.

Accordingly, for the reasons stated above, Plaintiffs have failed to set forth a cognizable claim alleging civil violations of Louisiana's Racketeering Act.

g.    Enrichment Without Cause

Louisiana Civil Code Article 2298 states: "A person who has been enriched without cause at the expense of another person is bound to compensate that person. The five elements required to establish an unjust enrichment claim are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff. *Dugas v. Thompson*, 2011–0178 (La. App. 4 Cir. 6/29/11), 71 So.3d 1059, 1067–1068. *See also Huntsman Int'l LLC v. Praxair, Inc.*, 2015-0975 (La. App. 4 Cir. 9/14/16); 201 So.3d 899; *Vagelos v. Abramson*, 2012-1235 (La. App. 4 Cir. 10/2/13); 126 So.3d 639, writ denied, 2013-2574 (La. 1/27/14); 131 So.3d 61; *Arc Indus., L.L.C. v. Nungesser*, 2017-704 (La. App. 3 Cir. 3/7/18), writ denied, 2018-0522 (La. 5/18/18); 242 So.3d 1227.

For the reasons more fully explained hereinabove, Plaintiffs have failed to plead that Segar was enriched in any way by their Title IX claims or that there was any connection between their Title IX claims and any alleged enrichment. Furthermore, Plaintiffs failed to show that there is no other adequate remedy at law available to redress their claims. Thus, Plaintiffs failed to state a claim against Segar for enrichment without cause.

### III.    CONCLUSION

For the reasons stated above, Segar contends that all claims asserted against her by Plaintiffs must be dismissed.

Respectfully submitted on November 8, 2021.

JEFF LANDRY,
ATTORNEY GENERAL

SHOWS, CALI & WALSH, L.L.P.

/s/ Mary Ann White_____
John C. Walsh (LA 24903)
Jeffrey K. Cody (LA 28536)
Mary Ann White (LA 29020) (*Lead Counsel*)
628 St. Louis Street (70802)
P.O. Box 4425
Baton Rouge, LA 70821-4425
Tel: 225-346-1461
Fax: (225) 346-1467
john@scwllp.com
jeffreyc@scwllp.com
maryannw@scwllp.com
*Special Assistant Attorneys General*
**Counsel for Defendant, Miriam Segar**

### CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of November, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ Mary Ann White
Mary Ann White