**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**Abby Owens, et al.**              **Case No.: 3:21-cv-00242-WBV-SDJ**
*Plaintiff*

**v.**                             **JUDGE WENDY B. VITTER**

**Louisiana State University, et al.**   **MAGISTRATE JUDGE SCOTT D.**
*Defendants*                       **JOHNSON**


<u>**DEFENDANT'S MEMORANDUM IN SUPPORT OF**</u>
<u>**MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**</u>

### I. INTRODUCTION

Defendant Sharon Lewis submits this memorandum in support of her motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiffs have sued LSU, the Board of Supervisors of LSU, the Tiger Athletic Fund, and fifteen (15) individuals who either presently or previously worked for LSU, for what amounts to various alleged Title IX violations.[1] Since the individual Defendants (referred to in the Amended Complaint as the "LSU Defendants"), including Lewis, cannot be sued under Title IX (because Title IX applies only to the recipient of federal funds[2]), Plaintiffs have alleged various other claims under the Constitutional and Louisiana state laws against them that encompass the same conduct as prohibited by Title IX. To that end, Plaintiffs have asserted twelve (12) claims against Lewis in both her personal and official capacities.[3]

Plaintiffs use an impermissible "shotgun" approach in their Amended Complaint in violation of Fed. R. Civ. P. 8(a)(2) and 10(b). Plaintiffs group all Defendants together *in globo* for

---

[1] R. Doc. 21, p. 2, ¶ 1.
[2] *Minnis v. Board of Supervisors of Louisiana State Univ.*, 972 F.Supp.2d 878, 889 (M.D. La. 2013) (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009)).
[3] R. Doc. 22, p. 10. ¶ 40.

each Count or claim, without alleging specific facts necessary to maintain their legal claims against each separate Defendant. Further, Plaintiffs largely rely on conclusory allegations that simply regurgitate the elements of each claim. Plaintiffs' method of pleading renders it nearly impossible to discern the factual basis of each claim asserted against Lewis. Although the Amended Complaint can be dismissed on this basis alone, there are additional substantive reasons warranting dismissal under Fed. R. Civ. P. 12(b)(6).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Sharon Lewis is a long-time LSU Football Operations employee, who currently serves as the Associate Athletic Director for Football Recruiting and Alumni Relations.[4] At all times, Lewis dutifully followed the Athletic Department's policies and procedures for reporting any and all issues, including Title IX issues; those policies required Lewis to report all issues concerning student workers or student athletes to Miriam Segar, who was designated as the Athletic Department's Title IX point person and coordinator.[5] As Husch Blackwell found, "Lewis has lodged several reports of sex harassment through her tenure."[6] Indeed, under LSU's Title IX reporting policy (PM-73, "Title IX and Sexual Misconduct Policy") it was appropriate for a subordinate employee, such as Lewis, to report a Title IX violation to a designated supervisor, i.e., Miriam Segar, who would then be responsible for reporting the violation to LSU's Title IX Coordinator.[7] Even the Title IX Office understood Miriam Segar was the primary contact and Title IX designee for the Athletics Department; Miriam Segar considered herself the "Deputy Title IX

---

[4] R. Doc. 22, p. 10, ¶ 40; R. Doc. 22-1, p. 49, ¶ 3.

[5] R. Doc. 22-1, pp. 31, 34- 37; R. Doc. 22-1. P. 62, n. 160; R. Doc. 22-1, p. 182, ¶ 8; R. Doc. 22-1, p. 183, ¶ 13; R. Doc. 22-1, p. 185, ¶ 8; R. Doc. 22-1, p. 186, ¶ 16; R. Doc. 22-1, p. 188. ¶ 6, R. Doc. 22-1, pp. 195-200.

[6] R. Doc. 21-1, p. 49, ¶ 3.

[7] R. Doc. 22-1, p. 25, n 90.

Coordinator for Athletics."[8] Lewis did exactly what she was responsible for doing, followed the policy, and reported incidents to Miriam Segar; thus, she acted as any reasonable government official would have by following a policy she had no reason to question. Plaintiffs' suggestion that the Athletic Department's policy and procedures may have been in violation of Title IX, which is denied, is not a claim that can be asserted against Lewis as she had no authority or responsibility for drafting LSU's policies.

**A. Plaintiffs Factual Allegations**

This lawsuit is brought by ten (10) Plaintiffs on behalf of themselves and a putative class under Fed. R. Civ. P. 23. However, only two (2) of the 10 Plaintiffs, Calise Richardson ("Richardson") and Samantha Brennan ("Brennan"), have asserted factual allegations and claims against Lewis. Both Richardson and Brennan worked in the Athletic Department in Football Operations, where Lewis was a supervisor; it is solely through their work in Football Operations that they came into contact with Lewis.

**1. Plaintiff Calise Richardson's Factual Allegations Concerning Lewis**

Calise Richardson was an LSU student from 2014 through her graduation in the fall 2018.[9] From September 2014 through January 2017, Richardson was employed as a student worker in the Football Operations department under Lewis's supervision.[10] Thereafter, Richardson worked for the LSU Athletic Department for Life Skills Manager Brenton Sumler.[11]

Richardson's allegations and claims against Lewis emanate from an incident after a football game in October 2016.[12] Although the incident is not well explained in the Amended

---

[8] R. Doc. 22-1, pp. 31, 37.
[9] R. Doc. 22, p. 21, ¶ 21; R.Doc 22-1, p. 57, §2.
[10] R. Doc. 22, p. 26, ¶ 110; R.Doc 22-1, p. 57, §2.
[11] R. Doc. 22, p. 34, ¶ 147.
[12] R. Doc. 22, p. 29, ¶ 123.

Complaint, it is fully documented, in Richardson's own words, in the Husch Blackwell report.[13] The incident involved Richardson throwing a drink at a football player (identified in the Amended Complaint as "John Coe") in a bar because John Coe was kissing another woman.[14] Lewis first learned of the incident through John Coe's position coach, Dameyuen Craig, who was requesting Richardson be fired for her conduct.[15] Lewis refused to fire Richardson without hearing her side of the story; therefore, Lewis called Richardson into the office to ask her why she threw the drink on John Coe.[16]

According to the allegations in the Amended Complaint, it was during this meeting Richardson informed Lewis she was dating John Coe and he had "physically attacked her," thereby disclosing what the Amended Complaint describes as "dating violence."[17] However, these allegations are belied and directly contradicted by the Husch Blackwell report, which is attached to (and thereby incorporated into) the Amended Complaint.[18] In the Husch Blackwell report, Richardson admits she did _not_ disclose to Lewis that she was physically abused by John Coe; instead, at most, Richardson told Lewis she was "scared of" John Coe, but she "felt like she was in love" with him, she "just wanted him to get the help he needs" and for "him to go to therapy."[19] Further, Richardson admits at that time she was not ready to tell anyone about her abusive

---

[13] R. Doc. 22-1, p. 58.

[14] *Id.*

[15] R. Doc. 22-1, pp. 59, 62.

[16] R. Doc. 22, p. 29, ¶ 125; R. Doc. 22-1, p. 62, ¶ 2.

[17] R. Doc. 22, pp. 29-30, ¶¶ 126, 128.

[18] Richardson fails to explain the apparent factual discrepancies between her allegations in the Amended Complaint and her statements contained in the Husch Blackwell report. **Importantly, the Husch Blackwell report, not the allegations in the Amended Complaint control.** *Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4ᵗʰ 337, 345 (5th Cir. 2021) ("If an attached exhibit contradicts a factual allegation in the complaint, then indeed the exhibit and not the allegation controls.") (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)).

[19] R. Doc. 22-1, p. 60, ¶¶ 2-3.

relationship with John Coe.[20] Richardson stated, she "never told anyone [of John Coe's abuse] because she really liked him and wanted to help him."[21] Lewis adamantly denies Richardson disclosed John Coe committed any physical or sexual assault and, instead, during the meeting, Richardson told Lewis John Coe "never hit her" and denied feeling threatened.[22] Husch Blackwell noted two other witnesses who attended this meeting with Richardson confirmed Richardson did _not_ disclose physical violence or state she feared for her safety.[23]

In the Amended Complaint, Richardson further alleges Lewis laughed at and mocked her during their meeting; failed to offer any support, resources, accommodations or interim measures; and, failed to report the incident to LSU's Title IX Office or advise Richardson she could report the incident to the Title IX Office.[24] Again, these factual allegations are not supported by the Husch Blackwell report. First, Richardson admits Lewis offered to call campus police and Richardson declined.[25] Likewise, although Lewis did not report the incident to the Title IX Office, Lewis did follow the Athletic Department policy by immediately calling Miriam Segar to report her meeting with Richardson ("moments after the meeting occurred").[26]

Richardson claims she was retaliated against after her meeting with Lewis. First, she alleges the "LSU Athletics Department" refused to schedule her to work at events in which John Coe participated.[27] Richardson does _not_ allege who within the Athletics Department was

---

[20] R. Doc. 22-1, p. 60, ¶ 4.

[21] R. Doc. 22-1, p. 62.

[22] R. Doc. 22-1, p. 62, ¶ 2; R. Doc. 22-1, p. 65, § 4.

[23] R. Doc. 22-1, p. 60, ¶ 4; R. Doc. 22-1, p. 63 ("Never in the meeting did [Richardson] say anything about anything other than her throwing a drink on [John Coe].")

[24] R. Doc. 22, p. 30, ¶¶ 126, 129, 131. As noted in the Husch Blackwell report, Lewis (along with two other witnesses) adamantly denies this. R. Doc. 22-1, p. 60, ¶ 4.

[25] R. Doc. 22-1, p. 60.

[26] R. Doc. 22-1, pp. 62, 63.

[27] R. Doc. 22, p. 31, ¶ 132.

responsible for refusing to schedule her; further, she does _not_ allege Lewis was the decision maker or had any part in that decision.[28] Second, Richardson claims she was terminated from her student job in the Football Recruiting Office in 2017.[29] While Richardson claims she met with and was informed of the termination by Lewis, Defendant Keava Soil-Cormier, and the assistant to the head coach, Ya'el Lofton, she does _not_ allege Lewis was the decision-maker as to her termination.[30] Indeed, as the Husch Blackwell report states, Richardson was terminated from her student worker position due to a mandatory downsizing of all of the student workers.[31] However, thereafter, she began working for another section of the Athletics Department.[32] Richardson alleges other acts of retaliation by the Athletic Department that do not involve Lewis.[33]

Richardson asserts many factual allegations in the Amended Complaint that have nothing to do with Lewis. For instance, Richardson alleges she was raped by a football recruit; she was subject to various abuses in her job as a student worker; and was the victim of an attempted rape by a football player identified as "John Doe."[34] Importantly, Richardson has _not_ alleged Lewis was involved in or was ever made aware of any of these incidents; for that matter, she has not alleged she reported any of these incidents to anyone at LSU before this lawsuit.

Likewise, although Richardson alleges facts concerning Lewis in her recitation of "LSU's Flawed Title IX Investigation," these allegations are not levied as claims against Lewis.[35] Plaintiffs do not allege Lewis had control or authority over the Title IX Office's investigation. Indeed, the

---

[28] *Id.*
[29] R. Doc. 22, p. 33, ¶¶ 141-142.
[30] *Id.*
[31] R. Doc. 22-1, p. 65, n. 162.
[32] R. Doc. 22, p. 34, ¶ 147.
[33] R. Doc. 22, p. 33, ¶¶ 143-144.
[34] R. Doc. 22, pp. 26-27, ¶¶ 111-119; R. Doc. 22, pp. 31-33, ¶¶ 134-140.
[35] R. Doc. 22, pp. 34-35, ¶¶ 145-152.

Title IX investigation which is the basis of Richardson's complaint is the same investigation in which Lewis (not John Coe) became the target, and forms the basis of Lewis's own lawsuit against LSU.[36] Therefore, Richardson's allegations concerning how LSU's Title IX Office responded (or failed to respond) to her complaints, and, instead targeted Lewis, are asserted in support of her Title IX claims against LSU's Board of Supervisors, not her claims against Lewis.

### 2. Plaintiff Samantha Brennan's Factual Allegations Concerning Lewis

Plaintiff Samantha Brennan was a student at LSU in the Spring of 2016; she worked "as a recruiter for LSU's football team."[37] Brennan alleges, on July 9, 2016, after a night in a bar, she and a football player (identified as "John Doe") engaged in some form of sexual relations[38], but she could not remember the details.[39] A few weeks later, on July 22, 2016, Brennan learned from a coworker in the Athletics Department that Joe Doe had taken a nude photograph of her, which she claims was taken without her consent, and he shared the photograph with members of the football team.[40] The coworker encouraged Brennan to report the incident to Lewis.[41] That same day, Lewis and Miriam Segar met with Brennan to discuss the allegations involving John Doe.[42]

In the Amended Complaint, Brennan alleges Lewis asked her whether she wanted to initiate a police investigation or if she wanted LSU to handle it internally; according to the

---

[36] Lewis has filed suit against LSU and individual LSU Defendants, which is pending in this Court. (See Case Number 3:21-cv-00198-SM-RLB). Plaintiffs include allegations from Lewis's lawsuit in the Amended Complaint (see R. Doc. 22, pp. 24-26, ¶¶ 105-108), presumably in attempt to use the allegations in her lawsuit as admissions against her and the other Defendants.

[37] R. Doc. 22, p. 41, ¶ 177.

[38] Notably, the police report filed by Brennan states that she did not feel that she was sexually assaulted. R. Doc. 22-1, p. 101, "She did not recall fully what happened the night before **but she did not feel as if she was assaulted**. . . ."

[39] R. Doc. 22, pp. 41-42, ¶¶ 178-179.

[40] R. Doc. 22, p. 42, ¶ 180.

[41] *Id.*

[42] R. Doc. 22, p. 42, ¶¶ 181-182.

Amended Complaint, Brennan responded that she wanted it to be handled internally, however, Miriam Segar ignored her request and, instead, took her to the LSU Police Department to file a complaint.[43]  Brennan decided not to pursue criminal charges against John Doe and, as the Husch Blackwell report concludes, she stated she "wished to remain anonymous as it relates to LSU CARE, Title IX, Lighthouse, etc."[44] The LSU Police Department noted that Brennan "was adamant that her information not be shared beyond the police department."[45]

Brennan alleges she was never contacted by anyone at the Title IX Office and she is unaware if there was a Title IX investigation into her complaint.[46] However, it is apparent from the Husch Blackwell report that LSU's Title IX Office was aware of her complaint.[47] In addition, the Dean of Students, Defendant Mari Fuentes-Martin, was also aware of it and identified the complaint as a potential "PS-73" (Title IX) case. She followed up with the LSU Police Department, stating she did not want to "drop this case especially as the respondent is an athlete."[48]  If the Title IX Office did not appropriately investigate the complaint, that claim would properly be directed toward LSU's Board of Supervisors, not Lewis. Again, Lewis did exactly what she was instructed to do by notifying and involving Miriam Segar, who had been designated as the Title IX coordinator for the Athletics Department.

In the Amended Complaint, Brennan complains she was not offered any support, resources, accommodations or interim measures.[49] However, this allegation is contrary to her statements at the time. Indeed, shortly after her report, she texted a friend stating she "was really surprised how

---

[43] R. Doc. 22, pp. 42, ¶ 183.
[44] R. Doc. 22-1, p. 101.
[45] R. Doc. 22-1, p. 101.
[46] R. Doc. 22, p. 43, ¶ 184.
[47] R. Doc 22-1, p. 101.
[48] R. Doc. 22-1, p. 101.
[49] R. Doc. 22, p. 43, ¶ 184.

supportive everyone was, _especially Ms. Sharon [Lewis]_."[50] Further, the LSU Police Department confirmed Brennan "was provided with all resource information and declined to seek any help at this time."[51]

Brennan alleges, due to her intense feelings of humiliation and shame resulting from John Doe's distribution of the nude photograph of her, she left LSU in August 2016.[52] Four years later, on August 19, 2020, Brennan spoke publicly regarding her account of John Doe.[53] In May 2021, Brennan reenrolled as a student at LSU and is currently attending LSU; John Doe is no longer a student at LSU.[54]

### III. LEGAL STANDARDS

#### A. Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to challenge a court's subject-matter jurisdiction. "[A] claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory authority or constitutional power to adjudicate the claim." [55]

Constitutional standing is an element of subject matter jurisdiction that may be challenged under Rule 12(b)(1).[56] Article III of the United States Constitution specifies a federal court's "power extends only to 'Cases' and 'Controversies.'"[57] "A justiciable Article III controversy

---

[50] R. Doc. 22-1, p. 100, § 3.

[51] R. Doc. 22-1, p. 101.

[52] R. Doc. 22, p. 43, ¶ 185.

[53] R. Doc. 22, p. 43, ¶ 186.

[54] R. Doc. 22, p. 6, ¶ 20; R. Doc. 22, p. 44, ¶ 189.

[55] _Muslow v. Board of Supervisors of Louisiana State Univ. & Agr. & Mech. Coll._, No. 19-11793, 2020 WL 1864876, at *8 (E.D. La April 14, 2020) (citing _Griener v. United States_, 900 F. 3d 700, 703 (5th Cir. 2018)).

[56] _Muslow_, 2020 WL 1864876, at * 9 (citing _Moore v. Bryant_, 853 F.3d 245, 248 n.2 (5th Cir. 2017)).

[57] _Id._ (citing _Spokeo, Inc. v. Ronins_, 136 S.Ct. 1540 (2016)).

requires the party instituting the action to have standing and the issue presented to the court to be ripe."[58] Plaintiffs must establish standing as to each claim asserted.[59]

To satisfy the Article III standing requirement, plaintiffs seeking injunctive relief "must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future," as "past exposure to illegal conduct does not in itself show a present case or controversy. . . if unaccompanied by any continuing present adverse effects."[60]  In other words, "the plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred," and "the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."[61]

## B. Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[62]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[63] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[64]  "The plausibility standard is

---

[58] *Id.* (citing *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp*, 482 F.3d 1330, 1337 (Fed. Cir. 2007)).

[59] *Id.* (citing *Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1650 (2017)).

[60] *Id.* (citing *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)).

[61] *Id.*

[62] Fed. R. Civ. P. 12(b)(6).

[63] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[64] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678) (quotation marks omitted).

not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[65]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[66] The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[67] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[68] In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[69]

## IV.  ANALYSIS

### A. Dismissal under Fed. R. Civ. P. 12(B)(1): Lewis Has Sovereign Immunity

All claims against Lewis in her official capacity must be dismissed as she has Sovereign Immunity. "The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity."[70] The Board of Supervisors of LSU acts as an arm of the State of Louisiana, and thus, is subject to the protections of the Eleventh Amendment.[71] Government officials acting in their official capacities are included in this protection.[72]

---

[65] *Iqbal*, 556 U.S. at 679 (quotation omitted).

[66] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[67] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[68] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[69] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[70] *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).

[71] *Boston v. Tanner*, 29 F. Supp. 2d 743, 747 (W.D. La. 1998).

[72] *Minnis*, 972 F. Supp. 2d 878, 887 (M.D. La. 2013) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)).

The Supreme Court carved out a narrow exception to Eleventh Amendment immunity in the case of *Ex Parte Young*, which permits suits for prospective relief against state officials acting in violation of federal law.[73] However, to fit within the *Ex Parte Young* exception, plaintiffs must "allege an ongoing violation of federal law, and seek relief that properly can be characterized as prospective."[74] "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[75]

Plaintiffs filed suit against Lewis in both her official and personal capacities.[76] Additionally, amongst the many remedies in the Amended Complaint, Plaintiffs seek a permanent injunction.[77] However, Plaintiffs Richardson and Brennan cannot be entitled to a permanent injunction, or any prospective relief, because there are no allegations of ongoing violations of law. In fact, Richardson has graduated and is no longer a student at LSU.[78] Thus, she does not have standing to request a permanent injunction or to proceed against Lewis in her official capacity under the *Ex Parte Young* exception. Likewise, although Brennan has re-enrolled as a student at LSU[79], she does not have standing for a permanent injunction or to pursue claims against Lewis in her official capacity under *Ex Parte Young* because she has not alleged any ongoing, continuing

---

[73] *Blessett v. Texas Office of Attorney General*, No. 20-40135, 2021 WL 4726598, at *1 (5th Cir. Oct.. 8, 2021) (citing *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)).

[74] *Id.* (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

[75] *Verizon*, 535 U.S.  at 645.

[76] In many Counts, Plaintiffs fail to specifically designate whether Lewis is being sued in either her official or personal capacities. See Count V, R. Doc. 22, p. 101; Count IX, R. Doc. 22, p. 111; Count XIII, R. Doc. 22, p. 119; Count XIV, R. Doc. 22, p. 121; Count XV, R. Doc. 22, p. 122; Count XVII, R. Doc. 22, p. 127; Count XIX, R. Doc. 22, p. 136; Count XX, R. Doc. 22, p. 141.

[77] R. Doc. 22, p. 144, ¶ J.

[78] R. Doc. 22, p. 21, ¶ 21; R. Doc 22-1, p. 57, §2.

[79] R. Doc. 22, p. 44, ¶ 189.

violation of federal law by Lewis; quite the opposite, her allegations of violation of federal law (at least as directed to Lewis) allegedly occurred in the summer of 2016.[80] Further, the Athletic Department's policies for reporting Title IX violations were revised and clarified in 2019; the policy now clearly provides employees must report a Title IX concerns directly to LSU's Title IX Coordinator, not to Miriam Segar.[81] Because neither Richardson nor Brennan allege any ongoing violations of federal law, they lack subject matter jurisdiction and standing to pursue claims against Lewis in her official capacity for prospective relief.[82]  Additionally, state officials cannot be sued for violations of <u>state law</u> in federal court, even under the *Ex Parte Young* exception.[83] Thus, Lewis, in her official capacity, is immune from all of Plaintiffs' claims.

## B.  Dismissal of Plaintiffs' "Shotgun" Pleadings under Fed. R. Civ. P. 12(b)(6)

Complaints violating Fed. R. Civ. P. 8 and 10 are subject to dismissal pursuant to 12(b)(6).[84] Rule 8(a)(2) requires that a complaint "must contain," among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 10(b): "A party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . ." "Complaints violating either Rule 8(a)(2) or Rule 10(b), or both, are

---

[80] R. Doc. 22, p. 42, ¶ 181.

[81] R. Doc. 21-1, pp. 34, 37-38.

[82] *Muslow*, 2020 WL 1864876, at *11-12 (citing *Gilbert v. Donohoe*, 751 F.3d 303, 313 (5th Cir. 2014)).

[83] *Corn v. Mississippi Dept. of Public Safety*, 954 F.3d 268, 275 (5th Cir. 2020) (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

[84] *See Adams v. Walker*, No. CV 20-2794, 2021 WL 1894865, at *2 (E.D. La. May 11, 2021); *see also, Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-1127 (11th Cir. 2014) ("A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6). . . on the ground that the complaint provides it with insufficient notice to enable it to file an answer."); *Roe v. Johnson Cty., Texas*, No. 3:18-CV-2497-B-BN, 2019 WL 5031357, at *5 (N.D. Tex. July 29, 2019), report and recommendation adopted, No. 3:18-CV-2497-B-BN, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019) ("Shotgun pleadings are subject to dismissal under Rule 12(b)(6)").

often disparagingly referred to as 'shotgun pleadings.'"[85] The "unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, or in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.[86]  "A dismissal under Rules 8(a)(2) and 10(B) is appropriate where it is virtually impossible to know which allegations of fact are intended to support which claims for relief."[87]

Plaintiffs' Amended Complaint suffers from "shotgun" pleading deficiencies and violate Rules 8(a)(2) and 10(b). First, under no circumstances could Plaintiffs' Amended Complaint be considered a "short and plain statement of the claims." To the contrary, the Amended Complaint is 144 pages and contains over 589 paragraphs; further, it attaches and under Fed. R. Civ. P. 10(c), incorporates, the Husch Blackwell report (150 pages)[88], all of the exhibits to the Husch Blackwell report[89] (111 pages), and Ed Orgeron's contract (35 pages)[90]. This alone warrants dismissal of the Amended Complaint.[91]

---

[85] *Garig v. Travis*, No. 20-654-JWD-RLB, 2021 WL 2708910, at *17 (M.D. La. June 30, 2021) (citing *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (detailing the four most common "shotgun pleadings").

[86] *Id.*

[87] *Id.*

[88] R. Doc. 22-1, pp. 1-150.

[89] R. Doc. 22-1., pp. 151-262

[90] R. Doc. 22-2, pp. 1-35.

[91] *McZeal v. J.P. Morgan Chase Bank, NA*, No. 13-6754, 2014 WL 3166715, at *7-9 (E.D. La. July 7, 2014) (dismissing complaint that was 57 pages and "incomprehensible and disjointed" finding "If the Court cannot determine these facts, neither can the Defendants," and holding the Compliant failed to place the Defendants on notice of the claims against them and finding amendment would be futile); *Muniz v. Medtronic, Inc.*, No. A-13-CA-451-SS, 2014 WL 1236314, at *2 (W.D. Tex. Mar. 20, 2014) (dismissing 77 page complaint, stating, "The Court does not have the time or patience to read counsel's novel, and identify the precise issues relevant to whether the plaintiff has actually stated a claim that would survive a Rule 12(b)(6) motion to dismiss"); *see also Jaser v. AT&T Services Inc.*, No. 3:18-CV-3429-B-BH, 2020 WL 1329151 at *4-5 (N.D. Tex. March 23, 2020) (dismissing 180-page complaint against 20 defendants with a 310-page attachment); *Kluksdahl v. Loyola University New Orleans*, No. 16-2990, 2016 WL 4261732 at *1 (E.D. La. Aug. 12, 2016) (finding the plaintiff's 130-page complaint, consisting of "rambling, scattered arguments and factual allegations," "unquestionably fail[ed] to include 'a short and plain statement of the claim showing that the pleader is entitled to relief" under Rule 8, and ordering plaintiff to file an amended complaint not to exceed 20 pages) (citing *Barnes v. Tumlinson*, 597 Fed. Appx. 798,

Aside from its length, Plaintiffs' Amended Complaint violates more serious, cardinal rules of pleading. The most egregious violation is Plaintiffs' "group pleadings," that is, combining all of the Defendants, *in globo* as a collective group, for each Count, without specifying facts showing how each separate Defendant allegedly violated the law.[92] Plaintiffs "lump all Defendants together and generally state that 'Defendants" committed the alleged acts," rendering it "virtually impossible" for the Court and any individual Defendant to discern the specific factual predicate or grounds of the each claim made against each individual Defendant.[93] "By failing to provide corresponding factual support for each separate cause of action, failing to specify what Defendant took what action. . . . the Complaint violates the letter and spirit of Rules 8 and 10."[94] Thus, Plaintiffs' allegations based on a "theory of collective responsibility" cannot withstand a motion to dismiss.[95]

The Amended Complaint is also a "shotgun" pleading because it "sets forth an excessive number of facts and then asserts in a conclusory fashion that each of those facts supports a number of legal claims, with the result that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies."[96] Indeed, the Amended Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular

---

799 (5th Cir. 2015) (finding it was within the Court's discretion to limit plaintiff's voluminous pleadings to 30 pages).

[92] *See Cubas v. St. James Parish Sch. Bd.*, No. 20-1322-WBV-KWR, 2021 WL 1212537, at * 7 (E.D. La. March 31, 2021) (citing *Martinez v. City of North Richland Hills*, 846 Fed. Appx. 238, 243 (5th Cir. 2021) (observing that while "referring to a collective group of defendants is not a fatal pleading deficiency, each defendant is still entitled to know what he or she did that is asserted to be wrongful)).

[93] *Garig*, 2021 WL 2708910, at *19.

[94] *Garig*, 2021 WL 2708910, at * 18.

[95] *Cubas*, 2021 WL 1212537, at *7 (quoting *Martinez*, 2021 WL 742662, at * 4).

[96] *Martin v. Tesoro Corp.*, No. 2:11 CV 1413,  2012 WL 41866841, at *2 (W.D. La. May 21, 2012) (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11 Cir. 2001)).

cause of action."[97] Many Counts use language taken verbatim from the legal elements of the claims, without specifying which facts support each claim. There are many examples of this throughout the Amended Complaint as will be further explained as a basis for the dismissal of each Count as toward Lewis.[98]

## C. Dismissal of Count V: Plaintiffs' Retaliation Claim under Title IX

Title IX applies only to "institutions and programs that receive federal funds. . ." and has "consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."[99] Plaintiffs have improperly asserted a Title IX retaliation claim against the individual defendants, including Lewis. Courts within the Fifth Circuit routinely dismiss Title IX retaliation claims asserted against individuals.[100] Because there is no individual liability under Title IX, the retaliation claim asserted against Lewis under Title IX must be dismissed.

## D. Dismissal of Counts VI, VII, and VIII: Plaintiffs' Claims under 42 U.S.C. §1983

A state official may be sued in his individual capacity and held personally liable under §1983 if Plaintiffs can show the official, acting under state law, caused the deprivation of a federal

---

[97] *Garig*, 2021 WL 2708910, at * 18.

[98] *See, e.g.*, R. Doc. 22, p. 107, ¶ 436 (Plaintiffs' Equal Protection claim is limited to one paragraph stating Plaintiffs were discriminated on the basis of their sex without any specific facts to establish how each Defendant discriminated against the Plaintiffs).

[99] *Minnis*, 972 F.Supp.2d at 889 (citing *Fitzgerald*, 555 U.S. at 257); *see also, Alegria v. Williams*, 314 Fed. Appx. 687. 690 (5th Cir. 2009).

[100] *See Stollings v. Texas Tech Univ.*, No. 5:20-CV-250-H, 2021 WL 3748964, at *12 (N.D. Tex. Aug. 25, 2021) ("Moreover, the Court dismisses the Title IX claim against [the individually named Defendant] because only federally funded educational institutions are subject to liability in private causes of action under Title IX."); *Clark v. Nicholls State Univ.*, No. 19-6054, 2020 WL 360511, at * 2 (E.D. La. Jan. 22. 2020) ("Additionally, as to the individual Defendants, there is no individual liability under Title IX.") (citing *Plummer v. Univ. of Houston*, 860 F.3d 767, 783 n. 12 (5th Cir. 2017)).

right.[101]  According to the Fifth Circuit, "This standard requires more than conclusional assertions:
The plaintiff must allege specific facts giving rise to a constitutional violation.[102]

As a defense to § 1983 claims, Lewis invokes her qualified immunity.  Qualified immunity
insulates officials from suit under § 1983 for damages arising out of the performance of their
official duties if "their conduct does not violate clearly established statutory or constitutional rights
of which a reasonable person would have known."[103] It protects "all but the plainly incompetent
or those who knowingly violate the law."[104] This standard allows "ample room for mistaken
judgments." [105]

"When a defendant asserts qualified immunity, the plaintiff must show (1) that the official
violated a statutory or constitutional right, and (2) that the right was clearly established at the time
of the challenged conduct."[106] Thus, in order to defeat Lewis's qualified immunity defense,
Plaintiffs' Amended Complaint must allege facts that, if true, show Lewis violated their rights by
acting in a way she should have known was unlawful.[107] "When considering a defendant's
entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously
prohibited [the official's] conduct that every reasonable official would understand that what [she]
is doing violates the law."[108] A defendant's actions "are held to be objectively reasonable unless

---

[101] *McKey v. August*, No. 16-13642, 2021 WL 3602659, at * 6 (E.D. Aug. 13, 2021) (citing *Terry v. City of New Orleans*, 523 F.Supp.2d 486 (E.D. La. 2007)).

[102] *Id.* (citing *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002)).

[103] *Id.* (citing *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[104] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[105] *McKey*, 2021 WL 3602659, at * 6 (citing *Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2001)).

[106] *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *Moody v. Walker*, No. 2656-WBV-DMD, 2021 WL 3423597, at *10 (E.D. La., Aug. 5, 2021) (citing *Shaw v. Villanueva*, 918 F.3d 414, 417 (5th Cir. 2019)).

[107] *Minnis*, 972 F. Supp. 2d at 885.

[108] *Id.; McKey*, 2021 WL 3602659, at * 6 (citing *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001)); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (internal quotations omitted).

all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution. . . ."[109]

### 1. Plaintiffs' First Amendment Retaliation Claims

Count VI contains Plaintiffs' First Amendment retaliation claims. Plaintiffs claim they engaged in "constitutionally protected speech when they disclosed instances of sexual misconduct to the Individual Defendants," which includes Lewis, and when they "publicly criticized LSU's handling of their complaints as violating the requirements of Title IX."[110] Plaintiffs allege all Defendants (including Lewis) attempted to "regulate the content of Plaintiffs' speech by chilling an ordinary person from reporting sexual misconduct or voicing concerns about . . . Title IX complaints."[111] Plaintiffs claim a variety of adverse actions constituted retaliation.

In the specific context of the First Amendment claims asserted against Lewis, both Richardson and Brennan were student workers employed in the Football Operations office and both met with Lewis only because she was a supervisor in the Football Operations office. Thus, their claims should be viewed under the standard that applies to public employees; under this standard, to establish a First Amendment retaliation, Richardson and Brennan must show:

> (1) They suffered an adverse employment action;
>
> (2) They spoke as a citizen, rather than pursuant to their official job duties;
>
> (3) They spoke on a matter of public concern;
>
> (4) Their interest in the speech outweighed the government's interest in the efficient provision of public services; and,

---

[109] *McKey*, 2021 WL 3602659, at * 6 (citing *Thompson*, 245 F.3d at 457.
[110] R. Doc. 22, p. 104, ¶ 426.
[111] R. Doc. 22, p. 105, ¶ 427.

(5) Their speech precipitated the adverse employment action.[112]

Outside of the public employer context, when a First Amendment retaliation claim does not involve employment, the Fifth Circuit applies the test announced in *Keenan v. Tehhada*, and Plaintiffs must show:

> (1) Plaintiffs engaged in constitutionally protected activity;
>
> (2) Defendant's actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and,
>
> (3) Defendant's adverse actions were substantially motivated against the Plaintiffs' exercise of constitutionally protected speech.[113]

The only difference between the two standards is, in the *Keenan* (non-employment) context, plaintiffs are not required to prove their interest in the speech outweighs the employer's interest in promoting efficiency.[114] "As the Fifth Circuit has explained, the requirements are identical in all other respects. Therefore, plaintiffs in the *Keenan* context must still demonstrate the speech involved an issue of public concern to establish the communication was constitutionally protected."[115]

### a. Richardson and Brennan's Disclosures to Lewis were Personal Grievances, Not Matters of Public Concern

In analyzing the issue of whether a plaintiff's speech addresses a matter of public concern, courts focus on the content, form, and context of a given statement.[116] The court is to examine the speaker's motivation rather than looking at whether the public would have an interest in the

---

[112] *Moody*, 2021 WL 3423597, at *10-11 (citing *Hardesty v. Cochran*, 621 Fed. Appx. 771, 775 (5th Cir. 2015)).

[113] *Jones v. Turner*, 2011 WL 4406349, at *2 (W.D. La. Sept. 21, 2011) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

[114] *Id.* (citing *Frazier v. Hataway*, No. 02-30078, 2003 WL 261768, at * 2 (5th Cir. 2003)).

[115] *Id.*

[116] *Moody*, 2021 WL 3423597, at * 11 (citing *Godeaux v. East Baton Rouge Parish Sch. Bod.*, 540 Fed. Appx. 429, 434 (5th Cir. 2013)).

matter.[117]  Courts have found that when the speech involves only the speaker's personal complaint or issue (rather than, for instance, criticism of company-wide policy), it is not a matter of public concern, and, instead, the speaker is speaking only on a matter of private concern.[118]

The content, form, and context of Richardson and Brennan's alleged statements to Lewis demonstrate they were speaking only concerning private issues which were not matters of public concern.  First, the content of the speech concerned their issues/ complaints about the two football players, John Coe and John Doe, with whom they had consensual relationships.[119]  These statements were made to Lewis in 2016[120], at a time when neither Richardson nor Brennan were complaining publicly of LSU's systemic Title IX issues; instead, their statements to Lewis concerned only their specific issues or complaints about Coe and Doe. Richardson and Brennan made their alleged complaints "up the chain of command" to Lewis, a supervisor in the Athletics Department.[121]  These type of personal issue or grievances "are rarely a matter of public concern."[122]

---

[117] *Harris v. Pontotoc County Sch. Dist.*, 635 F.3d 685, (5th Cir. 2011) (reasoning that because almost anything that occurs within a public agency *could* be of concern to the public, the court does not focus on the inherent interest or importance of the matter discussed, but instead on the speaker's motivation).

[118] *See e.g., Marceaux v. Lafayette City-Parish Consol. Govt.*, 614 Fed. Appx. 705, 710, 2015 WL 3544648, at * 4 (5th Cir. June 8, 2015) (per curiam) (holding when a speaker "addresses personal matters" and the matters were "grievances communicated up the chain of command," the  "speech falls outside the protection of the First Amendment."); *Short v. City of West Point, Miss.*, No. 97–60086, 1997 WL 575048, *1 (5th Cir. Aug. 29, 1997) (holding an individual's complaint with the EEOC about discrimination is a private, personal dispute which is not protected by the First Amendment); *Ayoub v. Texas A & M Univ.*, 927 F.2d 834, 837 (5th Cir. 1991) (holding  professor's complaint about his pay was an issue of private concern because the complaint focused only on the professor's individual issues); *Hays v. LaForge*, 113 F. Supp.3d 883, 900 (N.D. Miss. 2015) (holding Plaintiff's grievance was not public and related to matters that were personal to him and internal to the university, and thus was not actionable First Amendment speech)

[119] Richardson allegedly informed Lewis of "dating violence" by John Coe, including that he had "physically attacked her," stalked her, and tried to attack her at her housing complex. R. Doc. 21, pp. 29-30, ¶¶ 126, 127, 129. Brennan informed Lewis that John Doe had taken and distributed a nude photograph of her without her consent. R. Doc. 22, p. 42, ¶ 182.

[120] R. Doc. 22, p. 29, ¶ 123; R. Doc. 22, p. 42, ¶ 181

[121] *Moody*, 2021 WL 3423597, at * 11 (citing *Davis v. McKinney*, 518 F.3d 303, 313 & n.3 (5th Cir. 2008)).

[122] *Muslow*, 2020 WL 1864876, at * 18 (citing *Harmon v. Dallas County*, 927 F.3d at 895).

Secondly, the form of the complaint is important. Both Richardson and Brennan spoke with Lewis in private, closed-door meetings. Speech made privately instead of publicly weighs against concluding that is on a matter of public concern.[123]  Brennan specifically requested that she remain anonymous.[124] It was not until years later Richardson and Brennan went public with their complaints about LSU's handling of Title IX matters.[125]

Third, the context of the speech demonstrates that it was a private, not public, concern. Again, Richardson and Brennan's alleged complaints occurred in 2016, well before any issues of LSU's Title IX compliance was a public issue.  In 2016, Richardson and Brennan's complaints were not made "against a backdrop of widespread debate in the community" or otherwise "active and articulated public concern."[126] Richardson and Brennan have not alleged this factor in the Amended Complaint.

### b. Plaintiffs Have Not Alleged Lewis Caused Them to Suffer an Adverse Employment Action or an Injury that Would Chill their Speech

Even if Richardson and Brennan were speaking as citizens on matter of public concern, they have not alleged sufficient facts to establish Lewis violated their rights by either taking adverse employment actions against them or causing them to suffer an injury intentionally designed to chill their speech. As to the adverse employment action element, Richardson claims she was terminated from her job in Football Operations six to ten months after her meeting with Lewis.[127] However, Richardson fails to allege that Lewis was the decision maker to the termination

---

[123] *Muslow*, 2020 WL 1864876, at * 19 (citing *Gibson v. Kilpatrick*, 838 F.3d 476, 486 (5th Cir. 2016)).
[124] R. Doc. 22-1, p. 101.
[125] *See* R. Doc. 22, p. 43, ¶ 186 (Brennan decided to go public on August 19, 2020). Lewis does not contest that Richardson and Brennan's public statements to the press or as a part of the Husch Blackwell report are not protected. However, those statements were made in 2020, and they have not alleged those statement precipitated any adverse actions against them by Lewis.
[126] *Muslow*, 2020 WL 1864876, at *20.
[127] R. Doc. 22, p. 33, ¶ 142.

(as opposed to being terminated due to an across-the-board reduction in force of the student-workers) or that Lewis was motivated with an intent to retaliate against her for the alleged complaint she made about John Coe. Richardson does not allege Lewis, or any other person in the Athletic Department, took any adverse employment actions against her after her report of John Doe's conduct of distributing the nude picture of her.

Further, Richardson and Brennan have failed to allege sufficient facts to establish Lewis's actions caused them to suffer any injury that would chill a person of ordinary firmness from continuing to engage in protected speech. Courts have found that "some retaliatory actions-even if they actually have the effect of chilling the plaintiff's speech-are too trivial or minor to be actionable as a violation of the First Amendment."[128]  Indeed, neither Richardson nor Brennan alleges any actions by Lewis that rise to the level of injury courts have found sufficient to chill the speech of a person of ordinary firmness.[129] At most, Richardson alleges Lewis laughed at and "mockingly questioned" her statement that she was afraid of John Coe; even if true, as a matter of law, this conduct falls far short of anything likely to chill speech.[130]

---

[128] *O'Neal v. Falcon*, 668 F. Supp. 2d 979, 987 (W.D. Tex. 2009) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

[129] Courts have found injuries sufficient to "chill" the speech of a person of ordinary firmness include: drawing guns on plaintiffs during a routine and potentially unwarranted traffic stop and separately and falsely charging plaintiffs with "deadly conduct"; *Keenan*, 290 F.3d at 259; violating local laws in refusing to grant a land permit; *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 40-41 (1st Cir. 1992); publication of "irrelevant, humiliating, and confidential" information related to plaintiff's rape; *Bloch v. Ribar*, 156 F.3d 673, 681 (6th Cir. 1998); and arresting plaintiff, handcuffing and placing him into leg irons, and holding him overnight in the coldest cell in the jail; *Simmons v. City of Mamou*, Civ. No. 09–663, 2012 WL 912858, at *7 (W.D. La. Mar. 15, 2012).

[130] Courts have found injuries more severe than those alleged by Richardson and Brennan to have been caused by Lewis insufficient to "chill" the speech of a person of ordinary firmness, including: criticism of a student's speech and presentation in a speech class by analogizing the speech style to that of a "drill sergeant"; *O'Neal*, 668 F.Supp.2d at 988; preventing access to information about a university athletics program, including by detaining and ticketing plaintiff for trespassing in university hallway; *Smith v. Plati*, 258 F.3d 1167, 1176-77 (10th Cir. 2001); encouraging the manager of a State office to not allow plaintiff to use the office's resources where the plaintiff was researching his case against the federal government; *Smart v. Holder*, 368 Fed. App'x 591, 592 (5th Cir. 2010); a traffic stop resulting in a speeding ticket where probable cause existed for the stop; *Benson v. McKinney*, Civ. No. 07–0672, 2009 WL 1033172, at *7

### c. Lewis is Entitled to Qualified Immunity

Plaintiffs have not pled sufficient facts to overcome Lewis's qualified immunity to the First Amendment claims. Plaintiffs have not alleged facts demonstrating Lewis (or any other Defendant or government official) could have reasonably known Richardson and Brennan's statements made to her in 2016, in a private meeting, concerning their personal complaints about John Coe and John Doe, constituted "protected speech on a matter of public concern" under the First Amendment. Further, Lewis could not have known or anticipated that her announcement to Richardson of a reduction in force applied to all student-workers working in Football Recruiting constituted a violation of Richardson's First Amendment rights. Finally, even if Lewis laughed and mocked Richardson (which is adamantly denied), no government official would know this isolated, off-hand conduct was unlawful or could be construed as sufficiently severe as to chill an individual's speech as a matter of Constitutional law. Simply put, these were not "clearly established" rights under the First Amendment.[131]

### 2. Plaintiffs' Equal Protection Claims

Count VII of the Amended Complaint sets forth Plaintiffs' Equal Protection claims under the Fourteenth Amendment. Plaintiffs claim all Defendants discriminated against them on the basis of their sex and denied them Equal Protection by subjecting them to "a hostile environment" and by "failing to appropriately respond to and investigate reports of sexual misconduct."[132]

---

(W.D. La. Apr. 16, 2009); falsifying a police report, refusal to interview witnesses, and failure to enforce a temporary restraining order; *Doe v. County of San Mateo*, 2009 WL 735149, at *6-7 (N.D. Cal. Mar. 19, 2009); and failure to investigate plaintiff's criminal complaint and failure to enforce a protective order; *Walbert v. Wichita Police Dept.*, Civ. No. 10–1234–MLB, 2011 WL 2473143, at *2 (D. Kan. June 21, 2011).

[131] *Muslow*, 2020 WL 1864876, at * 16 (citing *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1130 (5th Cir. 2014)).

[132] R. Doc. 22, pp. 106-107, ¶¶ 434, 436.

The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction the equal protection of the laws, which "is essentially a direction that all persons similarly situated should be treated alike."[133] In order to state a claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff can either allege that "a state actor intentionally discriminated against him because of membership in a protected class," or that "he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." [134]

Plaintiffs have failed to allege any specific facts to establish Lewis either intentionally discriminated against Plaintiffs because of their sex or intentionally treated Plaintiffs differently from other similarly situated individuals, i.e., similarly situated males who reported violations of Title IX. Indeed, Plaintiffs make no mention of how the complaints of similarly situated individuals outside their protected class were handled. In addition, Lewis is entitled to qualified immunity as to the Equal Protection claim because Lewis's actions of following the Athletic Department policy of reporting all complaints and issues involving student workers and student athletes to Miriam Segar were objectively reasonable. An individual in Lewis's circumstances could not have known that following the reporting procedures established by LSU would amount to a violation of the Equal Protection clause.

### 3. Plaintiffs' Procedural Due Process Claims

Count VII of the Amended Complaint asserts a claim for denial of Plaintiffs' procedural Due Process rights under the Fourteenth Amendment.  Plaintiffs claim Defendants deprived them of their liberty and property interests, by creating "a practice and/or custom of deliberate

---

[133] *McKey*, 2021 WL 3602659, at * 10 (citing *Club Retro*, 568 F.3d at 212).
[134] *Bertrand v. Cloud*, No. 6:19-CV-01342, 2021 WL 1034266, at * 5 (W.D. La. March 17, 20201) (citing *Gibson v. Texas Dep't of Ins.--Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012)).

indifference and cultivated a culture of silence by failing to report complaints of sex discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities. . . ."[135] Further, Plaintiffs claim Defendants failed to provide them with "adequate notice of the actions to be taken with regard to the sex-based discrimination they had suffered, as well as meaningful opportunities to be heard."[136] Plaintiffs provide two examples of Defendants' alleged violation of due process, neither of which involve or apply to Lewis. [137]

Under Fifth Circuit jurisprudence, "To show a due process violation in the public employment context, the plaintiff must first show that she had a legally recognized property interest at stake."[138] Such a showing "must be made by reference to state law."[139] "In Louisiana a person acquires a protectable property interest in a government job only if the contract has a 'for cause' clause, or if the employee is classified under the state civil service system ...."[140] Neither Richardson nor Brennan had a property interest in their continued employment as student workers in the Athletic Department; the student worker position is an untenured, unclassified, at-will position. Thus, they cannot claim they were in any way deprived of their due process rights in connection with their employment.

As for any other liberty or property interest, Richardson and Brennan have failed to specifically allege how Lewis deprived them of any right whatsoever. Although the Supreme Court and Fifth Circuit have assumed, without explicitly deciding, students have a constitutionally

---

[135] R. Doc. 22, p. 109, ¶ 444.
[136] R. Doc. 22, p. 109, ¶ 445.
[137] R. Doc. 22, pp. 109-110, ¶¶ 446-447.
[138] *Moody*, 2021 WL 3423597, at * 9 (citing *Lollar v. Baker*, 196 F.3d 603, 607 (5th Cir. 1999)).
[139] *Id.*
[140] *Id.* (citing *Vanderwall v. Peck*, 129 Fed.Appx. 89, 91 (5th Cir. 2005)).

protectable interest in continued higher education enrollment[141], there is no allegation Lewis did anything to deprive either Richardson or Brennan of that right. Richardson continued her enrollment at LSU through her graduation; Brennan voluntarily chose to withdraw from LSU, but has since reenrolled.  Lewis did not take any disciplinary action against them that would trigger their Due Process rights. The type of vague liberty and property interests asserted by Plaintiffs have been rejected by the Fifth Circuit.[142] This claim appears to be a repackaging of Plaintiffs' Title IX complaint against LSU's Board of Supervisors so it can be applied to the individual defendants. However, Plaintiffs have failed to allege any cognizable liberty or property interest that has been deprived by Lewis, so this claim must be dismissed.

Even if there were some form of liberty or property interest at issue, and even if Plaintiffs alleged Lewis participated in the deprivation of their property interest, all of which is denied, Lewis is entitled to qualified immunity. Plaintiffs have not alleged their alleged property or liberty interests (and the alleged deprivation of those interests) involved rights that were clearly established at the time of the challenged conduct such that a reasonable government official acting in Lewis's shoes would have known she was depriving them of their Due Process rights.

---

[141] *See Wren v. Midwestern State University*, No. 7:18-cv-00060-O-BP, 2019 WL 3099408, at * 11 (N. D. Tex. June 25, 2019) (citing  *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 222–23 (1985) (even if university student's "assumed property interest gave rise to a substantive right under the Due Process Clause to continued enrollment free from arbitrary state action, the facts of record disclose no such action")); *Shaboon v. Duncan*, 252 F.3d 722, 730 (5th Cir. 2001) (assuming, without deciding, that a medical resident had protected due process interest in his position).

[142] *See Huang v. Huang*, 846 Fed. Appx. 224, 231-32 (5th Cir. 2021) (holding Plaintiff's allegations that his Fourteenth Amendment Due Process rights were violated when he was told to sit at his desk, was refused an opportunity to clear his name, and when his complaints were not acted upon were not constitutionally protected liberty or property interest of which he was deprived).

**E. Dismissal of Count IX:  Plaintiffs' Claims for Conspiracy to Interfere with Civil Rights under 42 U.S.C. §§ 1985, 1986**

Plaintiffs claim "all Defendants" violated 42 U.S.C. §§ 1985 and 1986 because their "pattern, practice and custom . . . constitute a conspiracy . . . to deprive Plaintiffs of Constitutional Rights to Free Speech, Due Process,, and Equal Protection." [143] This is an example of Plaintiffs' shotgun pleading, providing absolutely no notice to the Court of any factual predicate to support the conclusory allegations.

Section 1986 prohibits a conspiracy to interfere with civil rights. [144] Section 1985 provides for three separate claims; although Plaintiffs do not explicitly state which §1985 claim they are asserting, the only one that could conceivably apply is §1985(3), prohibiting private conspiracies to deprive persons of equal protection of the laws.[145] To assert a viable claim under §1985(3) Plaintiff must allege four elements: (1) a conspiracy by the defendants; (2) to deprive Plaintiffs of the equal protection of the laws; (3) a purposeful intent to discriminate;  (4) an act in further of the conspiracy under color of state law or authority; and, (5) resulting injury.[146] At the core of a § 1985(3) claim is the existence of a conspiracy based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."[147]

Plaintiffs' Amended Complaint contains only one conclusory allegation, which recites and mirrors the legal standard verbatim with no operative facts to support this claim. Plaintiffs fail to allege any facts to establish Lewis engaged in a conspiracy with anyone. At most, Richardson

---

[143] R. Doc. 22, p. 111, ¶ 452.
[144] *Reed v. Gautreaux*, No. 19-130-SDD-RLB, 2019 WL 6219780, at * 3 (M.D. La. Nov. 21, 2019) (citing *Bishop v. J.O Wyatt Pharm.*, No. 2:15-CV-0033,  2015 WL 4997890, at * 7 (N.D. Tex. Aug. 21, 2015)).
[145] *McZeal v. State of Louisiana*, No. 19-517-SDD-RLB, 2021 WL 4163988, at * 10 (M.D. La. Aug. 11, 2021).
[146]  *Reed*, 2019 WL 6219780, at * 3 (citing *Bishop*, 2015 WL 4997890, at * 7); *McZeal*, 2021 WL 4163988, at * 10 (citing *United Broth. Of Carpenters and Joiners of Am. Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983)).
[147] *Id.* (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993)).

alleges the two meetings she attended with Lewis were also attended by Keava Soil-Cormier and Ya'el Loftin[148]; Brennan alleges the meeting she attended with Lewis was also attended by Miriam Segar[149].  However, neither Richardson nor Brennan alleged Lewis, Soil-Cornier, Loftin or Segar said anything to one another during the meetings, much less conspired with one another either in or outside of the meetings. Plaintiffs fail to allege Lewis had a discriminatory motive or animus.[150] Further, as demonstrated above, there was no Equal Protection violation; without an Equal Protection violation, there can be no conspiracy under §1985(3).  Finally, Plaintiffs have failed to allege Lewis took any specific action in furtherance of the conspiracy. Without any specific allegations concerning Lewis's involvement in a conspiracy and deprivation of Plaintiffs' Equal Protection rights, the §1985(3) claim must be dismissed.

In the Amended Complaint, Plaintiffs' allegation to support the §1986 claim is merely a recitation of the statute:  "The defendants had knowledge that the wrongs conspired were to be committed and, having the power to prevent or aid in preventing commission of the same, neglected or refused to do so."[151] The plain language of §1986 is derivative of §1985, and, therefore, a valid §1985 claim is a perquisite to a claim under §1986.[152] Because Plaintiffs fail to state a claim under §1985, their §1986 claim also fails.[153] Further, the 1986 claim fails because Plaintiffs have not identified any conspiracy that Lewis was aware of and to which she had the power to prevent. Quite the opposite, Lewis was unaware of much of the goings on in the upper

---

[148] See R. Doc. 21, ¶¶ 127-132, 142.

[149] See R. Doc. 21, ¶ 181.

[150] *See Reed*, 2019 WL 6219780, at * 3 (citing *Suttles v. U.S. Postal Service*, 927 F.Supp. 990, 1001 (S.D. Tex. 1996)); *Garig*, 2021 WL 2708910, at * 27 ( (citing *Villegas v. Gallaway*, 458 F. Appx 334, 338 (5th Cir. 2012)).

[151] R. Doc. 22, p. 111, ¶ 452.

[152] *McZeal*, 2021 WL 4163988, at * 10 (citing *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000)).

[153] *Id.*

administration of the Athletics Department, including the fact that she was the only individual disciplined for violation of the Title IX reporting policy, until the Husch Blackwell report was issued. Thus, it is inconceivable how she could have been a part of or had knowledge of any conspiracy at LSU.

**F. Dismissal of Plaintiffs' State Law Claims, Counts XII - XV, XVII, XIX, and XX**

Plaintiffs' remaining claims against Lewis are pendant state-law claims. Lewis seeks dismissal of these claims because they are either barred or because Plaintiffs have failed to state viable claims under Louisiana law. However, assuming the Court dismisses all of the federal claims asserted against Lewis, the Court may decline to exercise supplemental jurisdiction over these claims. [154]

**1. Negligence, Negligent Supervision, Negligent Infliction of Emotional Distress Claims are Barred by Sovereign Immunity and La. Rev. Stat. § 23:1032(A)(1)(a)**

First, Plaintiffs' negligence claims aimed at Lewis must be dismissed under the immunity afforded by the Eleventh Amendment. It is clear the State is the only "real, substantial party in interest" to these claims because any judgment against Lewis would be paid for by the State under the indemnity provisions of La. Rev. Stat. § 13:5108.1(A)(1).[155] Plaintiffs' attempt at "re-packaging" their Title IX claims as negligence claims therefore must fail.[156]

Secondly, both Richardson and Brennan were student workers in Football Operations in the Athletic Department. It is through this role they came into contact with Lewis, who was their

---

[154]*Abron v. Barrilleaux*, 519 F.Supp.3d 328, 342 (E.D. La. 2021) (stating the general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial because a state court is in a better position to determine its own state statutes; however, this rule is neither mandatory nor absolute, no single factor is dispositive, and the Fifth Circuit must review the district court's decision in light of the specific circumstances of the case at bar) (citing *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595 (5th Cir. 2009)).

[155] *Hughes v. Savell*, 902 F.2d 376, 377 (5th Cir. 1990) (citing *Ford Motor Co. v. Dept. of Treasury of Indiana*, 323 U.S. 459, 464 (1945)).

[156] *See Richardson v. Southern Univ.*, 118 F.3d 450, 453 (5th Cir. 1997).

supervisor in the department. Thus, because these negligence-based claims relate to their employment, occurred in the course of and arose of their employment, and specifically concern Lewis's alleged negligence in performing her job duties which caused the alleged injuries to Richardson and Brennan, these claims are barred and under La. Rev. Stat. § 23:1032(A)(1)(a) and Plaintiffs' exclusive remedies are under the Louisiana Workers' Compensation Act (LWCA).[157]

### 2. Plaintiffs' Negligence Claims

Plaintiffs have also failed to state any negligence claims (in Counts XII and XIII) against Lewis.  First, no Louisiana or Fifth Circuit court has recognized a negligence claim under Civ. Code art. 2315 against an individual employee for breach of a duty to report sexual misconduct. Likewise, no Louisiana court has ever held a University employee such as Lewis owes an independent duty of care to a student to ensure their "safety and freedom from sex-based assault, harassment, or abuse."[158] What Plaintiffs are requesting— making an administrator responsible for preventing a myriad of conduct, including criminal conduct[159] and acts that occur off-campus between men and women who are dating (such as Richardson and John Coe) or who engaged in consensual sexual relationships (such as Brennan and John Doe) —is  absolutely unprecedented. Further, there is no independent duty for a University employee such as Lewis to "supervise, train,

---

[157] *See Leonard v. Board of Supervisors of Louisiana State Univ. & Agr. &Mech. Coll.*, No. 2008 CA 1692 (La. App. 1 Cir. 2/13/09); 2009 WL 385795, at * 3 (holding student worker's claim arose out of her employment and that her heightened exposure to the risk of being injured was solely attributable to her employment, thus, her exclusive remedy was in workers' compensation); *see also, Hillard v. Parish,* 991 F.Supp.2d 769, 778 (E.D. La. 2014) (Louisiana courts routinely dismiss negligence claims against employers arising in the course and scope of employment); citing *Oramous v. Military Dept.*, No. 05–3677, 2007 WL 1796194, at *9 (E.D. La. June 18, 2007) (dismissing claims for negligent infliction of emotional distress and negligent failure to supervise); *Martin v. American Midstream Partners, LP*, 386 F.Supp.3d 733 (E.D. La. 2019) (holding negligent infliction of emotional distress claim barred by the LWCA).

[158] R. Doc. 22, p. 116, ¶ 481.

[159] "As the Fifth Circuit recognized . . ., Louisiana law generally imposes no duty to protect others from the criminal activities of third persons." *McKesson v. Doe*, 141 S.Ct. 48, 50 (2020).

and monitor their employees and students[160] and to ensure those employees' and student'

compliance with all applicable statutes, laws, regulations, and institutional policies." [161]Again, this

purported duty of care is so broad it is not reasonable. Finally, there is no general duty for

individual University employees to "ensure Title IX is followed."[162]

These fatal issues notwithstanding, Plaintiffs should not be permitted to assert a negligence

claim under Civ. Code 2315 to establish these broad duties because there are more specific statutes

that apply to the conduct at issue, primarily Title IX. Plaintiffs seemingly assert negligence claims

against the individual defendants because the individual defendants cannot be held personally

liable under Title IX; however, Louisiana law does not permit Plaintiffs to circumvent Title IX by

asserting a general negligence claim. Instead, under the well settled rules of statutory construction,

the more specific statute controls over a general statute.[163] Thus, for instance, the Fifth Circuit held

that a plaintiff could not assert a negligence claim under Civ. Code art. 2315 against her employer

for the employer's breaches of its duty already required by Title VII.[164] The Court noted there were

no Louisiana state court decisions permitting a plaintiff to recover under Civ. Code art. 2315 for

what amounted to employment discrimination.[165] The same result holds for Plaintiffs' claims

against Lewis under various negligence theories for what amount to obligations and liability under

---

[160] Plaintiffs make no allegations that it was within Lewis's job responsibilities to train any employees or students as to sexual assault, harassment, or other violations of Title IX or otherwise to "monitor Title IX investigations and response process at LSU." R. Doc. 22, p. 120, ¶ 493. Further Plaintiffs fail to allege which employees or students Lewis alleged failed to train, supervise or monitor. Even if this was a part of her job duty, she would be entitled to immunity under La. Rev. Stat. § 9:2798.1.

[161] R. Doc. 22, p. 119, ¶ 491.

[162] R. Doc. 22, p. 120, ¶ 492. Plaintiffs do not allege Lewis has any responsibility for drafting or enforcing LSU's Title IX policies and procedures.

[163] *Burge v. State*, No. 2010-C-2229, p. 5 (La. 2/11/11); 54 So.3d 1110, 113.

[164] *Roberson-King v. Louisiana Workforce Commission, Office of Workforce Development*, 904 F.3d 377, 379-80 (5th Cir. 2018) (reasoning that Civil Code art. 2315, is a general negligence statute which must yield to the more specific law, in that case Title VII or the Louisiana Employment Discrimination Law).

[165] *Id.*

Title IX. Indeed, Title IX, the more specific statute regulating the duties and standards for responding to reports of sexual misconduct, training, and other compliance issues, preempts the general negligence statute.[166]

### 3. Plaintiffs' Intentional and Negligent Infliction of Emotional Distress Claims

In Counts XIV and XV, Plaintiffs assert claims for negligent infliction of emotional distress (NEID) and intentional infliction of emotional distress (IIED) due to Defendants' alleged "extreme and outrageous conduct" comprised of Defendants "actions and inactions," including Defendants' alleged: "failure to respond appropriately to reports of sex discrimination;" failure to conduct appropriate Title IX investigations;" "failure to provide Plaintiffs with appropriate interim measures and accommodations;" "retaliation against Plaintiffs;" "failure to properly discipline the perpetrators;" "fail[ure] to . . . protect Plaintiffs from their assailants," "justifying the behavior of the assailants," "openly mocking and spreading rumors about Plaintiffs;" "isolating and alienating Plaintiffs;" and "failure to ensure LSU and the LSU Athletic Department . . . were free of sex-based discrimination".[167] The great majority of these allegations do not apply to Lewis.

For NEID, recovery is limited to those cases with an "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee the

---

[166] *See Melton v. Alaska Career College, Inc.*, No. 3:15-v-209 RRB, 2016 WL 1312738, at * 3 (D. Ala. April 4, 2016) (dismissing common law negligence claims for conduct that would violate Title IX) (citing *Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999) (Supreme Court "declined the invitation to impose liability under what amounted to a negligence standard . . . [concluding] that the district could be liable for damages only where the district itself intentionally acted n clear violation of Title IX.")); *see also, Doherty v. Emerson College*, No. 1:14-cv-13281-LTS, 2017 WL 4364406, at * 10 (D. Mass. Sept. 29, 2017) (dismissing negligence claim for negligently implementation of Title IX, as it would "likely raise federal preemption concerns"); *Doe v. University of the South*, 2011 WL 1258104, at * 14 (E.D. Tenn. March 31, 2011) (dismissing plaintiffs' negligence per se claim stating it was an attempt to make an "end run" around Title IX); *Doe v. Amherst College*, 238 F. Supp. 3d 195, 228 (D. Mass. 2017) (dismissing various negligence claims against individual defendants stating state law, "does not impose a common-law or statutory duty on administrators to enforce university policies").

[167] R. Doc. 22, pp. 121, ¶ 499; R. Doc. 22, p. 122, ¶ 506.

claims are not spurious."[168] "To date, Louisiana courts have identified four different scenarios where recovery is allowed for emotional distress absent physical injury."[169] "A plaintiff may recover for unintentional or negligent infliction of emotional distress unaccompanied by physical injury where the defendant's negligent conduct is deemed to be outrageous."[170]  The cases usually involve "facts where the defendant's conduct was outrageous or deemed outrageous because the defendant breached a special direct duty to the plaintiff and where the resulting mental distress the plaintiff suffered was easily associated with the defendant's conduct."[171]

A claim for IIED is actionable only if Plaintiffs show: (1) that the defendant's conduct was extreme and outrageous; (2) the plaintiff's emotional distress was severe; and (3) the defendant desires to inflict severe emotional distress or knew that severe emotional distress was be certain or substantially likely to occur.[172] According to the Louisiana Supreme Court, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[173] The Louisiana Supreme Court has further explained:

> Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts

---

[168] *Dillon v. Town of Abita Springs*, No. 21-899, 2021 WL 5039635, at * 5 (E.D. La. October 30, 2021) (quoting *Moresi v. Dep't. of Wildlife & Fisheries*, 567 So.2d 1081, 1096 (La. 1990)).

[169] *Collett v. Weyerhaeuser Co.*, No. 19-11144C/W 19-12252, 2021 WL 2579801, at * 5 (E.D. La.  June 23, 2021). The four scenarios are: (1) emotional distress stemming from a separate tort involving physical consequences to the plaintiff's person or property (such as assault, battery, false imprisonment, trespass); (2) intentional infliction of emotion distress; (3) when plaintiff is a direct participant in the accident causing the emotional injury and defendant owes a direct statutory duty to the plaintiff to refrain from the specific conduct that caused the accident; and (4) a bystander may recover if he either views the accident or comes upon the accident before a substantial change. *Id.*

[170] *Dillon*, 2021 WL 5039635, at *5 (citing *Doe v. Smith*, 2005-0653, p. 4 (La. App. 4 Cir. 7/13/05); 913 So.2d at 140, 143).

[171] *Id.* (citing *Covington v. Howard*, 49, 135, p. 8 (La. App. 2 Cir. 8/13/14); 146 So.3d 933, 938).

[172] *Cubas*, 2021 WL 1212537, at * 12 (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 563 (5th Cir. 2007)).

[173] *Id.* (citing *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991)).

that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam." [174]

It is apparent that Plaintiffs' allegations against Lewis do not meet the high threshold of stating a plausible claim of either NEID or IIED because the conduct complained of by Lewis was not "extreme and outrageous." Even reading the Amended Complaint in the light most favorable to Plaintiffs, Richardson at most alleges Lewis "laughed" and "mockingly questioned why [Richardson] was afraid of John Coe."[175] Further, Richardson and Brennan allege Lewis did not follow the Title IX policy by reporting their allegations to the Title IX Office and Lewis did not offer support, resources, accommodations or interim measures.[176] Even if true, one instance of "laughing" and "mocking" falls woefully short of extreme and outrageous conduct.[177] Further, Plaintiffs fail to allege any of the four special circumstances necessary for a NEID claim and fail to allege Lewis had any intent to inflict emotional distress as required for an IIED claim. Because Plaintiffs have failed to allege facts necessary to support either NEID or IIED claims, they should be dismissed.

### 4. Plaintiffs' State Law Civil Conspiracy Claim under Civil Code art. 2324

In Count XVII, Plaintiffs allege Lewis engaged in a civil conspiracy with all other Defendants to "systematically and fraudulently silence Plaintiffs and deprive them of their Constitutional and federal rights."[178] Plaintiffs claim Defendants' conspiracy was for the purpose

---

[174] *Id.*

[175] R. Doc. 22, p. 30, ¶ 129.

[176] R. Doc. 22, pp. 30-31, ¶¶ 131-132; R. Doc. 2, pp. 42-43, ¶¶ 183-184.

[177] *See Cubas*, 2021 WL 1212537, at * 12 (dismissing complaint for allegations defendant "began to belittle, scream and berate the Plaintiff in front of everyone."); *McCoy*, 492 F.3d at 554 (dismissing IIED claim where the plaintiff, a black city police officer, suffered harassment by a white supervisor who "twice [threw] wadded-up paper in her face and [ ] repeatedly entered her office only to stare at her and laugh in mocking derision.")

[178] R. Doc. 22, p. 127, ¶ 530.

of protecting "the reputation and income of LSU athletics."[179] They claim the "underlying acts" of the conspiracy include "the wrongful acts alleged herein, including, nit not limited to intentional and other torts set forth herein, namely implementing a deficient and secretive Title IX program and reporting scheme using TAF Funds . . . and otherwise stymie LSU's entire Title IX Policy. . . ."[180]

Louisiana Civil Code article 2324(A) provides: "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." "Article 2324, however, does not by itself impose liability for a civil conspiracy."[181] There must be an allegation of an underlying tort that the conspirators agreed to perpetrate and which they actually committed.[182] The purpose of Civ. Code art. 2324(A) is to compel any tortfeasor to pay the entire judgment. [183]

Plaintiffs fail to allege any facts supporting that Lewis engaged in a civil conspiracy to commit a tort with any other Defendant. To that end, Plaintiffs fail to specify what tort Lewis allegedly conspired to commit and with whom she conspired. Plaintiffs have failed to allege any facts to support the conclusory allegations that Lewis engaged in a conspiracy to implement "a deficient and secretive Title IX program and reporting scheme using TAF Funds . . . and otherwise stymie LSU's entire Title IX Policy."  Simply put, there is no basis to hold Lewis solidarily liable for the actions of any other Defendant.

---

[179] *Id.*
[180] R. Doc. 22, pp. 127-128, ¶ 530.
[181] *Pigg v. BPX Energy*, 2021 WL 3730052, at * 3 (W.D. La. July 9, 2021) (citing *Ross v. Conoco, Inc.*, No. 2002-C-0299, p. 8 (La. 10/15/02); 828 So. 2d 546, 552.
[182] *Id.*
[183] *Id.*

**5. Plaintiffs' Claims under the Louisiana Racketeering Act, La. Rev. Stat. § 15:1351**

Count XIX sets forth Plaintiffs' claims under the Louisiana Racketeering Act (LRA).[184] Without any support or specificity whatsoever, Plaintiffs claim Lewis—with all Defendants—is a part of an "Enterprise" and aided and abetted violations of the LRA.[185]

The LRA "was apparently patterned" after the federal RICO statute[186] and federal RICO jurisprudence is applicable to claims brought under the LRA.[187]  The provisions of the LRA to which Plaintiffs repeatedly point out "violations" by Defendants,[188] including Lewis, each prohibit activities or personal gains from "a pattern of racketeering activity."[189]  "Racketeering Activity" is a term defined by the LRA to include only certain enumerated crimes, including without limitation, murder, solicitation of murder, arson, kidnapping, and bigamy.[190]  A cause of action against Lewis for allegedly violating the LRA requires a showing that Lewis committed an act prohibited by the LRA.

Plaintiffs' Amended Complaint contains no allegations that Lewis committed any such enumerated, prohibited criminal act.  Plaintiffs' bald assertions against the alleged "enterprise" as a whole fail to establish a LRA violation against any defendant, and certainly fail to establish a claim against <u>Lewis</u> for a LRA violation.  Not only does the Amended Complaint not articulate any alleged acts by Lewis in violation of the LRA, Plaintiffs have failed to articulate what, if any,

---

[184] R. Doc. 22, p. 136.

[185] R. Doc. 22, pp. 136-139, ¶¶ 555- 557, 568.

[186] *State v. Nine Sav. Accts.*, 553 So. 2d 823, 825 (La. 1989).

[187] *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am. Inc.*, No. 2:11-CV-00856, 2013 WL 4516007, at *3 (W.D. La. Aug. 22, 2013) ("[T]he court once again must look to federal case law construing the federal Racketeer Influenced and Corrupt Organization Act to address [Plaintiff's] Louisiana Racketeering Act claim, based on the fact that the acts are parallel, and the dearth of case law specifically addressing Louisiana's Racketeering Act itself.") (citing *State v. Touchet*, 99–1416 (La. App. 3 Cir. 4/5/00); 759 So. 2d 194, 197).

[188] R. Doc. 22, pp. 137-10, ¶¶563-64, 568, 571, 577.

[189] La. Rev. Stat.  §§ 15:1353 (A), (B), (C), (D).

[190] La. Rev. Stat. § 15:1352.

harm recognized by the LRA was incurred by Plaintiffs as a direct result of <u>Lewis'</u> alleged participation in the supposed LRA violations.

Plaintiffs' Louisiana Racketeering Act Case Statement does not cure the deficiencies of Count XIX of the Amended Complaint to establish and substantiate a LRA claim against Lewis.[191] Plaintiffs' LRA Statement singles out Lewis for alleged violations of only two subparts of the LRA:  La. Rev. Stat. § 15:1353 (B)[192] and La. Rev. Stat § 15:1353 (C)[193] by alleged violations of La. Rev. Stat. § 14:129.1[194] and La. Rev. Stat. § 14:132.[195]

La. Rev. Stat. § 14:129.1 provides that "no person shall intentionally [] [i]ntimidate or impede, by threat of force or force, or attempt to intimidate or impede, by threat of force or force" a witness to influence testimony.[196]  As there are no allegations in the Amended Complaint or LRA Case Statement that Lewis used any force, or threatened any force against either Richardson or Brennan, Plaintiffs' LRA claims against Lewis based on their allegation Lewis violated La. Rev. Stat. § 14:129.1 fail as a matter of law.

La. Rev. Stat. § 14:132 (A) and (B) require the "intentional . . . concealment of any record . . . in any public office."[197]  Plaintiffs have not alleged intent by Lewis to conceal any public records, nor identified what documents were otherwise altered by Lewis in the public record; therefore, Plaintiffs' LRA claims against Lewis based on their allegation Lewis violated La. Rev. Stat. § 14:132 are fatally flawed.  Further, Plaintiffs' fail to allege how Lewis' alleged violations

---

[191] R. Doc. 103.
[192] R. Doc. 103, p. 18 ¶I(i).
[193] R. Doc. 103, p. 18 ¶I(ii).
[194] R. Doc. 103, p. 42 ¶5(B)(ii).
[195] R. Doc. 103, p. 42 ¶5(B)(iii).
[196] La. Rev. Stat. § 14:129.1.
[197] La. Rev. Stat. § 14:132 (A) and (B) (emphasis added).

of La. Rev. Stat. § 14:129.1 and La. Rev. Stat. § 14:132 harmed them, a further fatal impediment to Plaintiffs' LRA claims against Lewis.

Simply alleging, without any factual allegations in support, the existence of an "enterprise" and an agreement to commit prohibited acts is insufficient to support a claim of a conspiracy against Lewis.[198] Plaintiffs have not adequately supported any allegation that Lewis was a part of an "enterprise" beyond the plain fact that she was employed by the Athletic Department alongside other named defendants, which is insufficient.[199]  In order to prevail against Lewis, Plaintiffs must show—and have failed to do so—that Lewis "at least [knew] of the conspiracy and adopt[ed] the goal of furthering or facilitating the criminal endeavor."[200] Plaintiffs have not alleged facts supporting Lewis' knowledge of a conspiracy. In sum, Plaintiffs have failed to allege any sustainable claim against Lewis under the LRA and these claims should therefore be dismissed against Lewis as a matter of law.

### 6. Plaintiffs' State Law Unjust Enrichment Claim under Civil Code art. 2298

Plaintiffs' final claim in Count XX is for unjust enrichment.[201] To support a claim for unjust enrichment under Louisiana law, a party must show the following five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) that there is no other remedy at law.[202] Plaintiffs fail to allege any facts to establish that Lewis received an

---

[198] *Martin v. Magee*, No. 10-2786, 2011 WL 2413473, at *8 (E.D. La. June 10, 2011).

[199] *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) (citing *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998)); *Marlin v. Moody Nat. Bank, N.A.*, 248 Fed.Appx 534, 538 (5th Cir. 2007).

[200] *Chaney*, 595 F.3d at 239 (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)) (internal quotations omitted).

[201] R. Doc. 22, p. 141.

[202] *United States v. Hamdan*, No. 19-60-WBV-KWR, 2020 WL 2615916, at *11 (E.D. La. May 22, 2020) (citing *Richard v. Wal-Mart, Inc.*, 559 F.3d 341 (5th Cir. 2009)).

enrichment, Plaintiffs were impoverished and there is a connection between the two. Indeed, Plaintiffs claim "Defendants were enriched by millions of dollars that the LSU football program and TAF were able to bring into the school."[203] Plaintiffs do not allege Lewis received "millions of dollars," or any portion thereof, and, in fact, she did not. Plaintiffs also have not alleged they were impoverished by any action taken by Lewis.  This is yet another claim that fails due to Plaintiffs' "shotgun pleadings." Because there no factual basis for this claim, it must be dismissed.

### G. Dismissal of Plaintiffs' Class Action Claims

Lewis also moves to strike all class action allegations asserted against her pursuant to Fed. R. Civ. P. 12(b)(6).[204]  The class allegations, in particular as asserted against her individually, should be dismissed for these reasons:

#### 1. Plaintiffs' Claims for Emotional Damages Defeat Their Class Allegations

The Fifth Circuit has expressed significant opposition to certifying classes when it is clear the damages claimed (in particular, emotional damages), will generate individualized questions as to causation and the extent of damages suffered. *Steering Comm. v. Exxon Mobil Corp.*, the seminal case on the issue, was a putative mass tort class action in which the plaintiffs asserted claims for bodily injury, personal discomfort and annoyance, emotional distress, fear of future unauthorized exposures, and economic harm such as damage to business and property.[205] The Fifth Circuit affirmed the District Court's denial of class certification, finding Rule 23(b)(3)'s predominance requirement was not satisfied because the nature of the plaintiffs' claims, <u>particularly those</u>

---

[203] R. Doc. 22, p. 141, ¶ 583.

[204] *Coleman v. Sears Home Improvement Prods., Inc*., No. 16-cv-2537, 2017 WL 1064965, at *6-7 (E.D. La. Mar. 20, 2017) (authorizing and granting motion to strike class allegations pursuant to Fed. R. Civ. P. 12(b)(6)). Lewis anticipates the individually named Defendants will also file a joint motion to strike Plaintiffs' class allegations pursuant to Rule 23(d)(1)(D) because the nature of Plaintiffs' legal claims and damages sought make clear Plaintiffs inevitably cannot satisfy the requirements of Fed. R. Civ. P. 23(a) and (b).

[205] *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006).

involving emotional and other intangible injuries, proved individual issues would predominate. The court explained: "where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the [dissimilar] damages issue may predominate over any issues shared by the class").[206] The court continued:

> It is clear from the record that the damages claims in this case are not subject to any sort of formulaic calculation. Instead, each individual plaintiff suffered different alleged periods and magnitudes of exposure and suffered different alleged symptoms as a result. Some plaintiffs allege both personal and property injuries, while others allege only one or the other. Moreover, many plaintiffs allege as part of their claim for compensatory damages emotional and other intangible injuries. **The very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy. The amount of compensatory damages to which any individual class member might be entitled cannot be calculated by objective standards**.[207]

It is clear on the face of the Amended Complaint that the primary alleged damages, and the primary damages Plaintiffs seek to recover on behalf of a class, are intangible emotional damages that are inherently not subject to formulaic calculation and not suitable for class treatment. As to each Plaintiff, Plaintiffs focus their explanation of damages on the severe emotional injuries (e.g., depression and PTSD) alleged to have been suffered.[208] Plaintiffs also allege they suffered individualized personal injuries (see, e.g., the "physical distress," including "stomach aches, headaches and body aches" [209]). In attempting to plead why the class action device is "superior" under Rule 23(b)(3), Plaintiffs even make the self-defeating argument that class treatment is

---

[206] Id. at 601.

[207] Id. at 603 (citing Allison v. Citgo Petroleum Corp., 151 F.3d 402, 417 (5th Cir. 1998)) (internal quotations omitted) (emphasis added). See also Robertson v. Monsanto, 287 F. App'x 354 (5th Cir. 2008) (holding individualized issues of causation and damages related to personal, emotional and intangible injuries claimed by the plaintiffs precluded class certification and noting that "[a]lthough the alleged cause of the plaintiffs' injuries is a single incident ... each plaintiff still must show that [defendant's] negligence in causing the gas leak was proximately connected to the specific injuries complained of").

[208] R. Doc. 22, ¶¶ 155, 176, 208, 243, 282, 301, 321, 339, 352.

[209] R. Doc. 22, p. 36 ¶ 155.

superior because of putative class members' "severe mental health issues," the resulting lack of "physical ability to withstand a deposition," and the risk of "retraumatization."[210] These are precisely the types of injuries the Fifth Circuit has long held are not suited to class treatment.

Courts in the Fifth Circuit have granted motions to strike class allegations when it is clear on the face of the pleadings individualized issues as to damages will predominate reasoning:

> Clearly there would be no common issue with respect to the issue of entitlement to emotional damages. The inquiry into entitlement to emotional damages would require fact-intensive inquiry with respect to each individual borrower. There could be no class wide determination of that element of damages.[211]

### 2. Plaintiffs' "Shotgun Pleading" is Fatal to the Class Claims

The arguments made above provide ample grounds to strike Plaintiffs' proposed class as to <u>any</u> defendant, but Plaintiffs' class allegations are even more deficient when analyzed as to Lewis specifically. Plaintiffs make no attempt to distinguish between Lewis' and the numerous other defendants' alleged conduct, actions, liability, wrongdoing, and knowledge with respect to the <u>class</u> component of their Complaint, and, in so doing, blatantly fail to satisfy any of Rule 23's class pleading requirements as to Lewis. For example:

- As to "numerosity," Plaintiffs allege "membership in the Class is ascertainable based upon records maintained by the Defendants and Class Members,"[212] but obviously Lewis does not maintain any records that will support numerosity and Plaintiffs do not seriously contend she contains such records in her personal capacity.

- As to "typicality," Plaintiffs allege that element is satisfied "because each Plaintiff and each Class Member has been harmed by the same systemic failure to provide resources for LSU students who experience discrimination on the basis of sex…"[213], but nowhere do Plaintiffs

---

[210] R. Doc. 22, pp.85-86, ¶ 361.

[211] *Bauer v. Dean Morris, L.L.P.*, Nos. 08–5013, 08–5014, 2011 WL 3924963, at *7 (E.D. La. Sept. 7, 2011) (granting the defendant's motion to strike the class allegations pursuant to Rule 12(b)(6) "because common issues of liability and damages [did] not predominate over individual issues with respect to liability and damages.").

[212] R. Doc. 22, p. 85, ¶ 358.

[213] R. Doc. 22, p. 85, ¶ 359.

allege that Lewis systemically discriminated against all of them, let alone every student from 2013 to present at LSU who was harmed by discrimination on the basis of sex.

- As to "commonality," Plaintiffs allege common questions of fact include: (1) "whether Defendants operate programs in receipt of federal funds"[214], even though there is no allegation Lewis personally operates a program in receipt of federal funds, (2) "whether Defendants failed to adequately train employees on how to prevent misconduct and to properly respond to reports of the same"[215], even though there is no allegation Lewis was responsible for training employees, (3) whether Defendants "fail[ed] to conduct a prompt, equitable, thorough, reliable, and impartial grievance process…"[216], even though there is no allegation that was Lewis' responsibility.

Stated otherwise, the same reasons Plaintiffs' Constitutional and state law claims against Lewis fail pursuant to Rule 12(b)(6) largely warrant the Court striking any proposed class action against Lewis at the pleading stage. The Court's authority to strike class allegations is well-served to avoid the highly inequitable result of Lewis having to bear the cost of defending a vast putative class action which encompasses innumerable putative plaintiffs with whom she has no reasonable connection and which has no plausible chance of being certified particularly as to her. The class allegations against Lewis should be stricken with prejudice.

## V. CONCLUSION

For the reasons set forth above, Defendant Sharon Lewis, respectfully requests this Court grant this motion and dismiss Plaintiffs' claims against her with prejudice and at Plaintiffs' cost.

Respectfully submitted,
JEFF LANDRY
ATTORNEY GENERAL

By: /s/ Renee G. Culotta
Renee G. Culotta (LA Bar No. 24436)
Jessica A. Roberts (LA Bar No. 34732)
**Special Assistant Attorneys General**

---

[214] R. Doc. 22, p. 87,  ¶ 363(a).
[215] R. Doc. 22, p. 88, ¶ 363(m).
[216] R. Doc. 22, p. 88,  ¶ 363 (n).

42

**FRILOT L.L.C.**
1100 Poydras Street, Suite 3700
New Orleans, LA  70163
Telephone:      (504) 599-8000
Facsimile       (504) 599-8100
Email:           rculotta@frilot.com;
                 jroberts@frilot.com

**Counsel for Defendant, Sharon Lewis**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing pleading was served upon all counsel electronically via the CM/ECF filing system this 8th day of November, 2021.

*/s/ Renee G. Culotta*