# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ABBY OWENS, ET AL** | * | **NO.: 3:21-cv-00242** |
| | * | |
| **VERSUS** | * | **JUDGE: WBV** |
| | * | |
| **LOUISIANA STATE UNIVERSITY,** | * | **MAGISTRATE JUDGE: SDJ** |
| **ET AL** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>MEMORANDUM IN SUPPORT</u>
## <u>OF JOSEPH ALLEVA'S MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

I.  BACKGROUND ...................................................................................................1

II. SUMMARY OF THE ARGUMENT ..................................................................3

III. ARGUMENT .......................................................................................................4

    A.  Plaintiffs' Complaint Fails to Meet Pleading Requirements as to Alleva....................4

IV. FEDERAL CLAIMS ...........................................................................................5

    A.  Title IX Does Not Provide a Cause of Action Against Individuals
        (Counts I-V)..........................................................................................................6

    B.  Plaintiffs' Claims Brought Pursuant To 42 U.S.C. § 1983 (Counts VI-
        VIII) Should Be Dismissed ...............................................................................7

        1.  Plaintiffs Fail To Properly Plead a Cognizable First
            Amendment Retaliation Claim Against Alleva; Sovereign
            Immunity Applies to the § 1983 Claims In Alleva's s Official
            Capacity and Qualified Immunity Applies to the § 1983 Claims
            in his Individual Capacity; and the § 1983 Claims Are Time
            Barred. ...............................................................................................7

            a.  Plaintiffs Fail to Allege a Cognizable First Amendment
                Retaliation Claim Against Alleva. ......................................................7
            b.  Plaintiffs Cannot Bring a § 1983 Claim Against Alleva in
                his Official Capacity Because He is Not a "Person" for
                Purposes of Claims under § 1983 and are Barred by the
                Doctrine of Sovereign Immunity. ......................................................9

                i.  Government Officials in Their Official Capacity are
                    not Recognized as a "Person" under § 1983............................................9
                ii.  Sovereign Immunity Under the Eleventh Amendment
                    Bars § 1983 Claims Against State Officials in Their
                    Official Capacity. .................................................................10

            c.  Qualified Immunity Shields Alleva, in his Individual
                Capacity, From Civil Liability for Plaintiffs' § 1983
                Claim of First Amendment Retaliation. ...........................................10
            d.  Plaintiffs' First Amendment Retaliation Claim Against
                Alleva is Barred by the One-Year Statute of Limitations
                for § 1983 Claims.............................................................13

2.  Plaintiffs Fail to Allege Specific Allegations Against Alleva for their § 1983 Equal Protection Claims, their Claims are Barred Because Alleva Enjoys Sovereign Immunity in his Official Capacity and Qualified Immunity in his Individual Capacity, and their Claims are Barred by the Applicable Limitations Period. ....................................................................................14

    a.  Plaintiffs Fail to State a Claim for Denial of Equal Protection Against Alleva.......................................14

    b.  Plaintiffs' Claims Against Alleva in his Official Capacity Are Barred Because Government Officials Are Not Recognized As "Persons" For Purposes of § 1983 Claims, by the Doctrine of Sovereign Immunity........................16

    c.  Qualified Immunity Shields Alleva, in his Individual Capacity, From Civil Liability for Plaintiffs' § 1983 Claims of Violation of Equal Protection. ...................16

    d.  Plaintiffs' Equal Protection Claims Against Alleva Are Barred by the One-Year Statute of Limitations for § 1983 Claims. ................................................................18

3.  Plaintiffs Fail To Allege Specific Allegations Against Alleva for their § 1983 Procedural Due Process Claims, their Claims against Alleva in his Official Capacity are Barred by Sovereign Immunity, Qualified Immunity Applies to their Claims against Alleva in his Individual Capacity, and the § 1983 Claims Are Barred by the Applicable Limitations Period. .........................................20

    a.  Plaintiffs Fail to State a Claim for Denial of Procedural Due Process Against Alleva.................................20

    b.  Plaintiffs' Claims Against Alleva in his Official Capacity Are Barred Because Government Officials Are Not Recognized As "Persons" For Purposes of § 1983 Claims and by Sovereign Immunity.......................................23

    c.  Qualified Immunity Shields Alleva, in his Individual Capacity, From Civil Liability for Plaintiffs' § 1983 Claim of Violation of Denial of Procedural Due Process.....................23

    d.  Plaintiffs' Procedural Due Process Claims Against Alleva Are Barred by the One-Year Statute of Limitations for § 1983 Claims. ................................................................24

C.  Plaintiffs' Fail to Make Specific Allegations against Alleva for their § 1985 Conspiracy to Deprive Constitutional Rights; Sovereign Immunity Bars their § 1985 Claims against Alleva in His Official Capacity; Qualified Immunity Applies to their § 1985 Claims against Alleva in His Individual Capacity; and the § 1985 Claims are barred by the Intracorporate Doctrine, and Applicable Limitations Period........................25

1. Plaintiffs Fail to Properly Allege a Conspiracy to Interfere with Plaintiffs' Constitutional Rights Pursuant § 1985. ..................25
2. Plaintiffs' Claims Against Alleva in his Official Capacity Are Barred Because Government Officials Are Not Recognized As "Persons" For Purposes of § 1985 Claims and Are Barred By Sovereign Immunity.........................................................26
3. Qualified immunity applies to Plaintiffs' § 1985 claims.................27
4. The Intracorporate Doctrine Bars Plaintiffs' Claims Under § 1985..........................................................................27
5. Plaintiffs' § 1985 Claims are Barred by the Applicable Limitations Period. ....................................................28

D. Plaintiffs' § 1986 Claims for Neglect to Prevent a Deprivation of Constitutional Rights Against Alleva Fail To Allege Specific Allegations Against Alleva and are Barred Because Alleva Enjoys The Benefit Of Sovereign Immunity For § 1986 Claims in his Official Capacity, Qualified Applies Immunity For § 1986 Claims in his Individual Capacity, the Plaintiffs' § 1986 Claims are Barred by the Intracorporate Doctrine, the Plaintiffs' § 1986 Claims are Barred Because There is no Underlying Valid § 1985 Claim, and the § 1986 Claims Are Barred by the Applicable Limitations Period..........................29

1. Plaintiffs' Claims Against Alleva in His Official Capacity Are Barred By Sovereign Immunity................................................29
2. Qualified immunity applies to Plaintiffs' § 1986 claims Against Alleva in his Individual Capacity ........................................29
3. There is no Valid § 1985 Claim Against Alleva, Thus, Preventing Plaintiffs' § 1986 Claim...............................................30
4. The Intracorporate Doctrine Bars Plaintiffs' Claims Under § 1986..........................................................................30
5. Plaintiffs' § 1986 Claims are Barred by the Applicable Limitations Period. ....................................................30

V. LOUISIANA RACKETEERING ACT CLAIMS. ....................................31

A. Plaintiffs Fail to Plead A Plausible Claim Under the Louisiana Racketeering Act..........................................................31
B. Sovereign Immunity Applies to Plaintiffs' State Law Racketeering Claims Against Alleva in his Official Capacity. ....................34
C. Qualified Immunity Applies to Plaintiffs' State Law RICO Claims...........................34
D. Plaintiffs Lack Standing to Assert LRA Claims Against Alleva ................................35

1. Plaintiffs Do Not have Standing to Assert LRA Claims Because Their Alleged Damages Were Not Proximately Caused by the Predicate Acts................................................................35

2.  **Damages For Personal Injuries or Expenses Related to Personal Injuries are not Recoverable under the Racketeering Act**.....................**38**

E.  **Plaintiffs Fail to Allege any Legally Cognizable Enterprise.** ........................**40**
F.  **Plaintiffs Cannot Show the Alleged Acts were Related or Posed a Threat of Continued Racketeering Activity.** ...........................................**41**
G.  **Plaintiffs Fail to Allege the Required Predicate Act to Support Their RICO Claims**..........................................................................................**42**

1.  **Public intimidation and retaliation in violation of La. R.S. 14:122.** ......................................................................................................**42**
2.  **Intimidating or injuring an impending witness in violation of La. R.S. 14:129.1.** .............................................................................................**43**
3.  **Injuring public records in violation of La. R.S. 14:132.** ......................**44**
4.  **Filing or maintaining false public records in violation of La. R.S. 14:133.** ......................................................................................................**44**
5.  **Money Laundering in violation of La. R.S. 14:230**...............................**45**
6.  **Corrupt Influencing in violation of La. R.S. 14:120** ............................**46**

H.  **Plaintiffs Fail to Allege Alleva Invested Any Alleged Proceeds From a Pattern of Racketeering Activity to Support a Claim Under La. R.S. 15:1353(A)** ...................................................................................................**46**

I.  **Plaintiffs Fail to Allege How Alleva Controlled the So-Called "Enterprise".** .......................................................................................................**47**

J.  **Plaintiffs Fail to Plead a Claim for Violation of §1353(C).** ........................**48**

K.  **Plaintiffs fail to Plausibly Plead Alleva was Engaged in a Conspiracy to Violate the LRA**.....................................................................**49**

L.  **Plaintiffs Should not be Given an Opportunity to Amend.** .........................**49**

VI. **STATE LAW TORT CLAIMS** .........................................................................**51**

A.  **Plaintiffs Fail to Make Specific Allegations Against Alleva on the Tort Claim.** ..........................................................................................................**51**

B.  **To the Extent Plaintiffs Sufficiently Allege Tort Claims Against Alleva in his Official and Individual Capacity, Barred by Sovereign Immunity, Discretionary Immunity pursuant to La. R.S. 9:2798.1 and/or Have Prescribed.**..........................................................................................**52**

1.  **Sovereign Immunity Bars Plaintiffs' State Law Tort Claims Against Alleva in his Official Capacity Federal Court.**...........................**52**
2.  **Discretionary Immunity Bars the State Law Tort Claims Against Alleva.**.........................................................................................................**52**

3.  All of Plaintiffs' Tort Claims Are Subject to a One-Year Prescriptive Period Which Lapsed Prior to the Filing of the Original Complaint...................................................................................53

VII. CONCLUSION ..................................................................................................55

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ABBY OWENS, ET AL** | * | **NO.: 3:21-cv-00242** |
| | * | |
| **VERSUS** | * | **JUDGE: WBV** |
| | * | |
| **LOUISIANA STATE UNIVERSITY,** | * | **MAGISTRATE JUDGE: SDJ** |
| **ET AL** | * | |
| | * | |

**********************************************************************

## MEMORANDUM IN SUPPORT OF JOSEPH ALLEVA'S MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Defendant, Joseph "Joe" Alleva ("Alleva"), respectfully submits this Memorandum in Support of his Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

On April 26, 2021, the ten named Plaintiffs[1] filed their Original Class Action Complaint and Jury Demand ("Original Complaint") asserting twenty (20) counts against various combinations of the eighteen (18) named Defendants.[2] Plaintiffs brought various federal and state law claims including claims arising under Title IX, claims for various constitutional violations under 42 U.S.C. §§ 1983, 1985, and 1986, claims pursuant to § 504 of the Rehabilitation Act, Americans with Disabilities Act ("ADA"),[3] federal and state racketeering claims pursuant to the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and the Louisiana Racketeering Act, La. R.S. 15:1351, *et seq.*,[4] and several state law tort claims. On June

---

[1] One "named" Plaintiff filed under a pseudonym, Jane Doe.
[2] Rec. Doc. 1.
[3] Plaintiffs do not allege any claims against Alleva under the ADA.
[4] The Louisiana Racketeering Act is also known as the Louisiana RICO Act. La. Prac. Emp. Law §14:24; *Viking Constr. Grp. v. Satterfield & Pontikes Constr. Inc.,* 728 F. App'x 405, 405 (5th Cir. 2018).

25, 2021, Plaintiffs filed an Amended Class Action Complaint and Jury Demand ("Amended Complaint") that merely added named plaintiffs and more defendants, bringing the total to twenty (20) named Defendants.[5]  Plaintiffs dismissed the federal RICO claims against all Defendants on September 7, 2021.[6]  Thereafter, the Court issued a Louisiana Racketeering Act Order on September 27, 2021, requiring Plaintiffs to provide more detail and factual allegations regarding their state law RICO claims.[7]  On October 18, 2021, Plaintiffs filed their Louisiana Racketeering Act Case Statement ("Case Statement") with the Court.[8]

The crux of Plaintiffs' allegations is, from roughly 2014 to 2020, Louisiana State University ("LSU") its employees and third parties violated their Title IX obligations and Plaintiffs' Constitutional Rights under the United States Constitution by failing to maintain an adequate reporting, investigation, and disciplinary system for sexual assault complaints.[9] [10]  The majority of Plaintiffs' claims arise from alleged sexual misconduct and assault committed by fellow students at LSU.[11]  None of the alleged perpetrators of sexual misconduct against the Plaintiffs are named Defendants to the instant lawsuit.  All of the named Defendants are either current or former employees of LSU or hold a position on LSU's Board of Supervisors.[12]

Alleva served as Athletic Director for LSU from July 1, 2008 through April 17, 2019.[13]

---

[5] Rec. Doc. 2.

[6] Rec. Doc. 67.

[7] Rec. Doc. 93.

[8] Rec. Doc. 103.

[9] Rec. Doc. 1, at ¶¶ 110-352.

[10] The Louisiana Racketeering Act is also known as the Louisiana RICO Act.  La. Prac. Emp. Law §14:24; *Viking Constr. Grp. v. Satterfield & Pontikes Constr. Inc.,* 728 F. App'x 405, 405 (5th Cir. 2018).

[11] However, there are two exceptions.  Defendant Kennan Johnson's claims arise from alleged verbal abuse by her tennis coaches.  Rec. Doc. 22, at pp. 65-69, ¶¶ 283-301.  The other exception is the allegations of Plaintiff Sarah Beth Kitch whose claims relate to sexual misconduct by an LSU professor.  Rec. Doc. 22, at pp. 79-83, ¶¶ 340-352.

[12] The two exceptions are the Tiger Athletic Foundation ("TAF"), and "O" Rosy Finch Boyz, LLC ("O Rosy Finch Boyz").

[13] Rec. Doc. 22, at p. 8, ¶ 35.

Alleva is no longer employed by LSU in any capacity.  Plaintiffs, many of whom have left LSU, waited to file their Original Complaint after the release of the Husch Blackwell Report on March 3, 2021.[14]

## II.  SUMMARY OF THE ARGUMENT

Plaintiffs' claims against Alleva all fail.  Plaintiffs' Title IX claims do not apply to Alleva or any individual Defendant(s). Plaintiffs' claims against Alleva for violations of their constitutional rights to free speech, equal protection, and due process under §§ 1983, 1985, and 1986, in his official and individual capacity, fail to sufficiently plead a factual basis for each claim against Alleva, are barred by sovereign immunity, qualified immunity, and/or the time limitations applicable for each claim.  Plaintiffs' state law claims are similarly insufficiently plead against Alleva, are barred by sovereign immunity, discretionary immunity, and/or are barred by the applicable prescriptive period for Louisiana state law tort claims.

Plaintiffs' LRA claims fail for numerous reasons.  First, Plaintiffs fail to make specific allegations as to Alleva's participation in a pattern of racketeering activity.  Second, Plaintiffs fail to plausibly allege their injuries were proximately caused by the alleged predicate acts.  Third, Plaintiffs' alleged injuries arise from or are closely related to personal injuries, which are not recoverable under the LRA.  Fourth, Plaintiffs fail to distinguish the RICO[15] person from the alleged RICO enterprise.  Fifth, Plaintiffs fail to allege an ongoing organization or a continuing unit.  Sixth, Plaintiffs fail to plausibly plead a pattern of racketeering activity and the relationship between the predicate acts alleged against Alleva and the threat of continuing activity.

---

[14] Rec. Doc. 22-1, at p. 1.  Husch Blackwell is a law firm retained by LSU to conduct an independent review of several Title-IX related incidents.  While the Husch Blackwell Report portrays itself as being thorough, there were numerous interviews that were not conducted that would have added further context to the findings in the Report.

[15] The terms "RICO" and "racketeering" will be used interchangeable throughout the Memorandum.

Under Plaintiffs' theory of the case against Alleva on the LRA claims, every Athletic Director in the country would be subject to potential racketeering claims solely because they are the head of the athletic department.

### III.  ARGUMENT

### A.  Plaintiffs' Complaint Fails To Meet Pleading Requirements As To Alleva.

Plaintiffs' Amended Complaint is one hundred forty-five (145) pages long and contains five hundred eighty-nine (580) separate paragraphs (excluding subparagraphs) and only contains seven (7) specific references to Alleva.[16]  Four (4) of these seven (7) references to Alleva appear in the paragraph listing him as a named Defendant and alleging his position at LSU and domicile, which leaves only three (3) specific references to Alleva in the allegations of the Amended Complaint.  Due to the lack of specific allegations against Alleva, Plaintiffs fail to satisfy the pleading requirements under Federal Rule of Civil Procedure 8.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement identifying the claim and showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  The Rule requires a complaint, on its face, to contain allegations of fact that, if accepted as true, state a plausible claim for relief by the plaintiff.  *Id.* at 678.  A pleading that relies on "labels and conclusions" or a "formalistic recitations of the elements of a cause of action" will not meet the pleading requirements under F.R.C.P. Rule 8.  *Id.*  A pleading requires more than "… an unadorned, the defendant-unlawfully-harmed-me accusation."  *Id.*  Even though courts are instructed to accept all of the allegations contained in the complaint as true, courts are not required

---

[16] *See* Rec. Doc. 22, at pp. 8, 9 (¶ 35), 101 (¶ 413), 119 (¶ 492), 120 (¶ 492).

accept as true legal conclusions cloaked as factual allegations. *Id.* Furthermore, a plaintiff must meet the plausibility requirement, which requires more than mere allegations that are consistent with a defendant's liability. *Id.* The Supreme Court has instructed district courts to *expeditiously* dismiss claims that clearly fail to provide any legal relief to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558.

The Complaint fails to state a claim upon which relief may be granted because it fails to adequately allege facts that would entitle the Plaintiffs to relief against Alleva under Title IX, §§ 1983, 1985, and 1986, the LRA, and state law tort claims. Plaintiffs only allege mere legal conclusions against Alleva with no factual allegations supporting those legal conclusions, thus, fails the pleading requirements the Federal Rules of Civil Procedure. *Ashcroft v. Iqbal*, 556 U.S. at 678.

The individual allegations of Plaintiffs, Elizabeth Andries, Jane Doe and Sarah Beth Kitch, do not contain any allegations that Alleva, or anyone else in the Athletic Department for that matter, was involved with the alleged mishandling of their reports of sexual misconduct; thus, their claims do not comply with the requirement of F.R.C.P. 8. *Ashcroft v. Iqbal*, 550 U.S. at 678. Likewise, Plaintiff, Corinn Hovis, enrolled at LSU after Alleva was no longer the Athletic Director; therefore, her allegations do not comply with F.R.C.P.8. To the extent the Court determines the allegations of Plaintiffs, Andries, Doe, Kitch, and Hovis, comply with F.R.C.P. 8 with respect to Alleva, Alleva adopts the following arguments as to their claims.

## IV.  FEDERAL CLAIMS

Plaintiffs allege the following claims based on federal law against Alleva in both his official and individual capacity:

5

A.  Violations of Title IX;[17]

B.  42 U.S.C. § 1983 claims based on three (3) alleged violations of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution, as follows:

    1.  Retaliation against Plaintiffs for exercising their First Amendment right to free speech;[18]

    2.  Denial of Equal Protection under the Fourteenth Amendment;[19] and

    3.  Denial of Procedural Due Process under the Fourteenth Amendment;[20]

C.  Claims based on 42 U.S.C. §§ 1985, 1986 alleging conspiracy to deprive Plaintiffs of their Constitutional rights of Free Speech, Due Process, and Equal Protection and neglect to stop the conspiracy.[21]

Defendant, Alleva, will address each individual federal claim in respect to both his official and individual capacities.

### A.  Title IX Does Not Provide A Cause Of Action Against Individuals (Counts I-V).

Plaintiffs bring various claims against specific Defendants based on the alleged violation of Title IX.[22]  While Plaintiffs' seemingly attempt to exclude the individual defendants from Counts I-IV of the Title IX claims, there is confusion as to which defendants are included in the definition of "LSU Defendants," which is used in various paragraphs of their Title IX allegations.[23] Therefore, out of an abundance of caution, Alleva will briefly address Plaintiffs' Title IX claims.

---

[17] Rec. Doc. 22, at pp. 91-104, ¶¶ 366-422.
[18] Rec. Doc. 22, at pp. 104-106, ¶¶ 423-432.
[19] Rec. Doc. 22, at pp. 106-108, ¶¶ 433-440.
[20] Rec. Doc. 22, at pp. 108-111, ¶¶ 441-450.
[21] Rec. Doc. 22, at pp. 111-112, ¶¶ 451-456.
[22] Specifically, Plaintiffs allege Deliberate Indifference to Sex Discrimination (Count I), Hostile Environment (Court II), Heightened Risk (Court III), Erroneous Outcome (Count IV), and Retaliation by Withholding Protection (Count V).  Rec. Doc. 22, at pp. 91-101 , ¶¶ 366-407.
[23] *See* Rec. Doc. 22, at p. 91, ¶ 369; *Compare with* Rec. Doc. 22, p. 11, ¶ 49 ("[c]ollectively, the Board of Supervisors, LSU, and the individually named Defendants in their official capacities shall be referred to as 'the LSU Defendants'").

Plaintiffs cannot bring claims against Alleva, either in his individual capacity or official capacity, for alleged violations of Title IX.  Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  It is well settled Title IX does not authorize suits against individuals, including school officials, as Title IX only applies to educational programs or activities that receive federal financial assistance.  *Alegria v. Williams*, 314 F. App'x 687, 690 (5th Cir. 2009); *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 972 F.Supp. 2d 878, 889 (M.D. La. 2013).[24]  Therefore, Plaintiffs' Title IX claims against Alleva should be dismissed, with prejudice.

**B.  Plaintiffs' Claims Brought Pursuant To 42 U.S.C. § 1983 (Counts VI-VIII) Should Be Dismissed.**

**1.  Plaintiffs Fail To Properly Plead a Cognizable First Amendment Retaliation Claim Against Alleva; Sovereign Immunity Applies to the § 1983 Claims In Alleva's s Official Capacity and Qualified Immunity Applies to the § 1983 Claims in his Individual Capacity; and the § 1983 Claims Are Time Barred**.

**a.  Plaintiffs Fail to Allege a Cognizable First Amendment Retaliation Claim Against Alleva.**

Plaintiffs assert Alleva and all the other Defendants retaliated against Plaintiffs for exercising their First Amendment right to Free Speech.[25]  To establish a First Amendment claim for retaliation against a public official, a plaintiff must show: (1) he or she was engaged in a

---

[24] *See also, Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (recognizing that courts have consistently interpreted Title IX as not providing a cause of action against individuals); *See also  Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (finding that the plaintiff's failure to appeal the dismissal of Title VI and Title IX "… makes sense as claims under those statutes may be brought only against the institution receiving federal funds, not employees of those institutions."); *Pemberton v. W. Feliciana Par. Sch. Bd.*, No. CIV.A. 09-30-C, 2010 WL 431572, at *4 (M.D. La. Feb. 3, 2010) ("Title IX has consistently been interpreted as not authorizing suit against school officials, teachers and other individuals.").  In *Minnis*, the Court summarily dismissed the plaintiff's Title IX claims against Alleva and several other individual defendants who are also named in the instant lawsuit.
[25] Rec. Doc. 22, at pp. 104-106, ¶¶ 423-432.

constitutionally protected activity; (2) the public official's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing that activity; and (3) the public official's adverse action was substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Johnson v. Bowe*, No. 19-40615, 856 Fed. Appx. 487, 492 (5th Cir. Apr. 12, 2021).

Plaintiffs fail to make any specific allegations Alleva violated Plaintiffs' First Amended rights in the Amended Complaint. Plaintiffs only generally allege the LSU Defendants' conduct caused a chilling effect on their free speech because the LSU Defendants: failed to investigate and report their complaints of sexual assault and/or misconduct shamed and laughed at Plaintiffs when they reported complaints of sexual misconduct; explained to Plaintiffs that they made "the right choice" in not reporting the alleged sexual misconduct; told Plaintiffs' teammates to avoid them after they made complaints sexual misconduct; and provided insufficient training on reporting rights of students.[26] While the reporting of alleged misconduct by a student may qualify as protected speech, Plaintiffs fail to state a retaliation claim against the LSU Defendants since their alleged actions or inactions would not chill a person of ordinary firmness from continuing to exercise their rights to free speech.[27]

Plaintiffs' Amended Complaint does not allege Alleva had any face-to-face interactions with any of the Plaintiffs;[28] thus, the basis of their claims against Alleva have to be predicated on his alleged inaction. However, Plaintiffs' retaliation claim cannot be based on Alleva's alleged

---

[26] Rec. Doc. 22, at p. 105, ¶ 427.
[27] *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999). In *Colson*, the U.S. Fifth Circuit Court of Appeals found alleged criticism of the plaintiff, a criminal investigation, and false allegations about the plaintiff were not sufficient retaliatory actions to chill a person of ordinary firmness. *Id.* at 511-513.
[28] Rec. Doc. 22, at pp. 104-106, ¶¶ 423-432.

8

"inaction."  *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 305 (D. Mass. 2017).[29]
Plaintiffs also fail to assert any alleged conduct by Alleva was substantially motivated by the
Plaintiffs' alleged protected speech which is required to establish a First Amendment retaliation
claim.  *Johnson*, 856 Fed. Appx. at 492.  Contrary to the general allegations against Alleva in the
Amended Complaint, the exhibits show Alleva made concerted efforts to enable compliance with
Title IX by the LSU Athletic Department.[30]

For the reasons stated above, Plaintiffs' First Amendment retaliation claim fails to state a
claim against Alleva under § 1983.  Nevertheless, even if it is determined that Plaintiffs'
allegations surpass the pleading threshold for a First Amendment retaliation claim, Alleva is
immune from their claim by the doctrines of sovereign immunity and/or qualified immunity.

**b.  Plaintiffs Cannot Bring a § 1983 Claim Against Alleva in his Official Capacity Because he is Not a "Person" for Purposes of Claims under § 1983 and are Barred by the Doctrine of Sovereign Immunity.**

**i.  Government Officials in Their Official Capacity are not Recognized as a "Person" under § 1983.**

Alleva, in his official capacity as an employee of LSU, cannot be liable for alleged
constitutional violations under § 1983.  Claims brought pursuant to § 1983 only apply to
defendants recognized as "persons" under the statute.[31]  The U. S. Supreme Court has expressly
held that neither a state, nor its officials acting in their official capacity, are "persons" under §

---

[29] Retaliation by inaction is a novel, unsupported theory that fails to allege a cognizable First Amendment retaliation claim. In *Thomas*, the court found a lack of support for the plaintiffs' theory that inaction or deliberate indifference by school officials could support a First Amendment retaliation claim.  267 F. Supp. 3d at 305.

[30] *See* Rec. Doc. 22-1, at pp. 195-198 (Email from Joe Alleva to all Athletics Staff dated June 8, 2016); Rec. Doc. 22-1, at pp. 199-200 (Joe Alleva Memo to All Athletics Employees dated February 14, 2018).

[31] "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …".  42 U.S.C. §1983 (emphasis added).

1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The express holding in *Will* removes Alleva in his official capacity from liability under § 1983; thus, Plaintiffs' First Amendment retaliation claims against Alleva, in his official capacity, must be dismissed.

### ii. Sovereign Immunity Under the Eleventh Amendment Bars § 1983 Claims Against State Officials in Their Official Capacity.

The Eleventh Amendment protects States from being sued in federal courts. U.S. Const. Amend. XI; *Kooros v. Nicholls State Univ.*, 379 Fed. Appx. 377, 378 (5th Cir. 2010). Alleva enjoys the protection of Eleventh Amendment sovereign immunity for Plaintiffs' First Amendment retaliation claims brought pursuant to § 1983[32] in his official capacity as Athletic Director of LSU. *Will*, 491 U.S. at 68. Sovereign immunity applies because claims against a state official in his official capacity are treated as a suit against the official's office. *Kooros*, 379 Fed. Appx. at 379–80.[33] Therefore, the claims against Alleva in his official capacity must be dismissed.

### c. Qualified Immunity Shields Alleva, in his Individual Capacity, From Civil Liability for Plaintiffs' § 1983 Claim of First Amendment Retaliation.

Alleva is entitled to qualified immunity on Plaintiffs' First Amendment retaliation claims against him in his individual capacity. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009); *Kooros*, 379 Fed. Appx. at 379.[34] Qualified immunity is grounded in the need to shield government

---

[32] Sovereign immunity likewise bars Plaintiffs' other § 1983 claims, along with Plaintiffs' claims under §§ 1985, and 1986. For the sake of clarity, Alleva will address each claim in turn and will refer back to the certain arguments such as sovereign immunity where applicable.

[33] *See also, Minnis*, 972 F. Supp. 2d at 887 (dismissing § 1983 claims against Alleva in his official capacity because of sovereign immunity); *Early v. S. Univ. & Agr. & Mech. Coll. Bd. of Sup'rs*, 252 Fed. Appx. 698, 700 (5th Cir. 2007) (applying qualified immunity to §§ 1983, 1985, and 1986 claims against university officials); *Gaines v. Texas Tech Univ.*, 965 F.Supp. 886, 889 (N.D. Tex. 1997) (RICO claims against Texas Tech officials in their official capacity was barred by sovereign immunity); *Chestang v. Alcorn State Univ.*, 820 F. Supp. 2d 772, 779 (S.D. Miss.2011) (finding a state is not a "person" within the meaning of § 1983; thus, government officials cannot be held liable for violations of § 1983 in their official capacity).[33]

[34] Since qualified immunity is an immunity from suit rather than a defense to liability, whether qualified immunity applies or not should be decided at the earliest early stages of in litigation. *Pearson*, 555 U.S. at 231-232.

10

officials from harassment, distraction, and liability for reasonable acts taken while performing his or her duties. *Pearson*, 555 U.S. at 231.[35]   It is well settled qualified immunity applies to government officials who are sued in their individual capacity for civil damages for performing discretionary functions. *Id.* at 237; *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Alleva, at all relevant times, was acting within his course and scope of employment as Athletic Director for LSU.[36]  Therefore, Alleva is entitled to qualified immunity for all of Plaintiffs' claims against him in his individual capacity.

Once a defendant raises the defense of qualified immunity, the burden shifts to the plaintiff to show qualified immunity is not applicable. *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012); *Kooros*, 379 Fed. Appx. at 379.  In order to defeat qualified immunity, a plaintiff must show there was a violation of a constitutional right, and that the right was clearly established at the time of the alleged violation. *Kooros*, 379 Fed. Appx. at 379.  To qualify as a clearly established right, existing precedent must have placed the statutory or constitutional question *beyond debate.  Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011).[37]  A government official does not lose qualified immunity if a certain right is only established in the abstract. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 (2017); *Cantrell v. City of Murphy*, 666 F.3d 911, 920 (5th Cir. 2012).

---

[35] In other words, qualified immunity gives government officials "breathing room" for potential mistakes in judgment so long as the officials conduct is reasonable and does not violate clearly established rights. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017).

[36] Rec. Doc. 22, at p. 11, ¶ 50.

[37] It is the plaintiff's burden to point to controlling authority or a significant amount of persuasive authority which defines the contours of the right with a high degree of particularity. *Morgan*, 659 F.3d at 371–72.

The Court must evaluate Alleva's qualified immunity defense in light of the specific allegations made against him in Plaintiffs' Amended Complaint, which there are few.[38]  Plaintiffs assert no specific allegations against Alleva relating to their First Amendment retaliation claim.[39] All of Plaintiffs' allegations regarding their First Amendment claim are generally plead against all named Defendants, and, at best, attempt to plead claims of ordinary negligence against the Defendants.[40]  Plaintiffs cannot rest on the general allegations contained in the Amended Complaint but must put forth specific evidence supporting their claim that Alleva violated their First Amendment right and acted in an unreasonable manner.  *Kooros*, 379 Fed. Appx. at 379. Legal conclusions couched as factual allegations are not sufficient to carry the Plaintiffs' burden of proving Alleva is not entitled to qualified immunity.  *Minnis*, 972 F. Supp. 2d at 886-87.[41] Plaintiffs cannot meet their burden of overcoming Alleva's defense of qualified immunity, and their § 1983 claim against Alleva for First Amendment retaliation should be dismissed.

---

[38] Courts must evaluate whether qualified immunity applies as to each specific defendant.  Therefore, the Plaintiffs cannot lump in general allegations made against other Defendants to defeat Alleva's qualified immunity.  *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007).

[39] For a government official to be liable under § 1983, the official must be either personally involved in the acts causing the deprivation of a constitutional right, or there must be a sufficient causal connection between the officials conduct and the alleged constitutional violation.  *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

[40] Rec. Doc. 22, at pp. 104-106, ¶¶423-432.  Negligence cannot support a violation of § 1983.  *Diaz ex rel. Diaz v. Mayor of Corpus Christi*, 121 F. App'x 36, 39 (5th Cir. 2005); *Hick v. Bexar Cty., Tex.*, 973 F. Supp. 653, 674 (W.D. Tex. 1997), *aff'd sub nom.*, *Hicks v. Bexar Cty.*, 137 F.3d 1352 (5th Cir. 1998).

[41] In *Minnis*, the plaintiff filed a lawsuit against LSU and several officials in the Athletic Department, including Alleva, alleging his constitutional rights had been violated when he was fired from his position as the Woman's Tennis Coach. In granting Alleva's motion to dismiss the claims based on alleged constitutional violations, the Court stated "[Plaintiffs'] allegations against Alleva, taken as a whole, are mere legal conclusions couched as factual allegations that the Court is not required to accept as true."  972 F. Supp. 2d at 884.  Similarly, in the instant case, Plaintiffs make very few specific allegations against Alleva and cannot meet their burden of showing qualified immunity does not apply.

### d. Plaintiffs' First Amendment Retaliation Claim Against Alleva is Barred by the One-Year Statute of Limitations for § 1983 Claims.

Plaintiffs' claims against Alleva are barred by Louisiana's limitations period for tort claims. *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 604 (5th Cir. 1988); *Aucoin v. Kennedy*, 355 F. Supp. 2d 830, 844 (E.D. La. 2004). The applicable statute of limitations for § 1983 claims brought in Louisiana federal courts is one year. *Auster Oil & Gas, Inc.*, 835 F.2d at 604. However, federal common law governs when the applicable limitations period begins to run for § 1983 claims. *Farmer v. Mouton*, No. CV 16-16459, 2018 WL 1123573, at *17 (E.D. La. Feb. 28, 2018) (quoting *Heath v. Bd. of Supervisors*, 850 F.3d 731, 737 (5th Cir. 2017)). Under federal law, the limitations period for § 1983 claims begin to run the moment the plaintiff knows or has reason to know of the injury. *Id.* Plaintiffs' alleged § 1983 claims for First Amendment retaliation that accrued prior to April 26, 2020 are barred.[42]

In the instant case, Plaintiffs, Richardson, Robertson, Brennan, Owens, Lewis, and Johnson, all had sufficient knowledge of their claims when they either received the final determination of their Title IX complaints (2018),[43] left LSU because of the alleged lack of support

---

[42] Plaintiffs' Original Complaint was filed on April 26, 2021. *See* Rec. Doc. 1.
[43] Rec. Doc. 22, at pp. 31 (¶ 133), 34 (¶¶ 145-153). Plaintiff Richardson found out that Sharon Lewis would not receive any discipline or sanction from LSU regarding her handling of complaints against John Doe and John Coe on or around November 18, 2018. Rec. Doc. 22, at p. 64, ¶ 278. Plaintiff Lewis' father sent a letter to the Southeastern Conference on October 18, 2018 informing them that LSU had failed to take appropriate action regarding Plaintiff Lewis' complaints of sexual misconduct.

they received from LSU's administration (2016/2017),[44] or graduated from LSU (2019).[45] *Stringer v. Town of Jonesboro*, 986 F.3d 502, 512–13 (5th Cir. 2021).[46]  Furthermore, Alleva was no longer the Athletic Director at LSU after April 17, 2019; therefore, any alleged cause of action that arose after his  departure as LSU's  Athletic Director would not apply to Alleva.[47]

The statute of limitation on Plaintiffs' § 1983 claims for First Amendment retaliation lapsed well before Plaintiffs filed their Original Complaint on April 26, 2021.  Therefore, Plaintiffs' § 1983 claims against Alleva should be dismissed, with prejudice.

    **2.  Plaintiffs Fail to Allege Specific Allegations Against Alleva for their § 1983 Equal Protection Claims, their Claims are Barred Because Alleva Enjoys Sovereign Immunity in his Official Capacity and Qualified Immunity in his Individual Capacity, and their Claims Are Barred by the Applicable Limitations Period**.

    **a.  Plaintiffs Fail to State a Claim for Denial of Equal Protection Against Alleva.**

Plaintiffs assert § 1983 claims against Alleva for the alleged denial of equal protection in violation of the Fourteenth Amendment.[48]   Plaintiffs allege, generally, that all Defendants discriminated against the Plaintiffs on the basis of sex by subjecting them to a hostile environment and failing to appropriately respond to and investigate their reports of sexual and other misconduct

---

[44] Rec. Doc. 22, at p. 40, ¶ 174.  Plaintiff Robertson withdrew from LSU in September 2017 because of alleged issues caused by sexual misconduct of another student and for the alleged failure of LSU to provide appropriate support and resources.  Rec. Doc. 22, at p. 43, ¶¶ 184-185.  Plaintiff Brennan left LSU in the fall of 2016 because the alleged lack of support from Athletic Department.  Rec. Doc. 22, at p. 46, ¶ 200.  Plaintiff Owens left LSU in March 2017 because of the allege lack of support, resources, accommodations, or interim measures by LSU to ensure she could finish her degree.

[45] Rec. Doc. 22, at p. 69, ¶ 299.  Plaintiff Johnson graduated from LSU in the spring of 2019.  Plaintiff Johnson alleges verbal abuse by the LSU tennis coaches and does not allege anything that would toll the limitations period for failure of the requisite knowledge of her claim.

[46] In *Stringer*, the court concluded that the plaintiff's cause of action for First Amendment retaliation under § 1983 accrued when she made repeated complaints to the town, and the town allegedly started to retaliate against the plaintiff.

[47] Including, all the allegations of Plaintiff Hovis which occurred entirely after Alleva was no longer Athletic Director at LSU.  Rec. Doc. 22, at pp. 75-79, ¶¶ 322-339.

[48] Rec. Doc. 22, at pp. 106-108, ¶¶ 433-440.  The Fourteenth Amendment prohibits a state from denying any person within its jurisdiction of equal protection of the law.  U.S. Const. Amend. XIV.

perpetrated by LSU students.[49]  Plaintiffs fail to asset any specific allegations regarding Alleva related to their § 1983 equal protection claim, which does not comply with the pleading requirements of F.R.C.P. 8.[50]

To plead a claim pursuant to § 1983 for denial of equal protection, a plaintiff must allege that (1) he or she received different treatment than similarly situated individuals, and (2) the unequal treatment was a result of discriminatory intent.  *Cook v. Hopkins*, 795 F. App'x 906, 914 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2643 (2020).  To establish discriminatory intent, a plaintiff must show a decision maker singled out a particular group or class of persons for disparate treatment, and this disparate treatment was selected for the purpose of causing adverse effects on the identifiable group.  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015).

In the Amended Complaint, Plaintiffs fail to assert any non-conclusory allegations to support they were treated differently than a similarly situated person on the basis of their sex, or that any alleged conduct by Alleva was motivated by a discriminatory intent.  Even assuming *arguendo* that there were potential issues regarding the reporting of alleged misconduct by student athletes (which Alleva wholly denies), those issues were not based on any intent to cause adverse effects on Plaintiffs because of their sex.  On its face, the Amended Complaint falls far short of asserting the requisite allegations against Alleva to support a claim for denial of equal protection under the Fourteenth Amendment.  Therefore, the § 1983 claims against Alleva based on the alleged denial of equal protection should be dismissed.

---

[49] Rec. Doc. 22, at p. 107, ¶ 436.
[50] *See Ashcroft v. Iqbal*, 550 U.S. at 678.

**b. Plaintiffs' Claims Against Alleva in his Official Capacity Are Barred Because Government Officials Are Not Recognized as "Persons" for Purposes of § 1983 Claims, and by the Doctrine of Sovereign Immunity.**

For the same reasons addressed in Section IV(B)(1)(b), hereinabove,[51] Plaintiffs' claims against Alleva in his official capacity should be dismissed because he does not fit the definition of a "person" under § 1983; thus, Alleva is shielded from liability by the doctrine of sovereign immunity.[52] Therefore, Plaintiffs' § 1983 claims against Alleva, in his official capacity, should be dismissed, with prejudice.

**c. Qualified Immunity Shields Alleva, in his Individual Capacity, from Civil Liability for Plaintiffs' § 1983 Claims for Violation of Equal Protection.**

Plaintiffs assert claims against Alleva, in his individual capacity, pursuant to § 1983 for the alleged violation of the equal protection clause in the Constitution. Plaintiffs base their equal protection claims on the alleged failure to properly investigate and respond to the reports of sexual misconduct by other LSU students.[53] While Plaintiffs fail to make specific allegations against Alleva, the § 1983 equal protection claims are seemingly based on his alleged failure to comply with Title IX with respect to their reports of sexual misconduct by other LSU students. For the reasons outlined above in Section IV(B)(1)(c),[54] and for the reasons that follow, qualified immunity applies to Plaintiffs' § 1983 equal protection claims against Alleva in his individual capacity.

Plaintiffs bear the burden of overcoming Alleva's defense of qualified immunity by showing his conduct violated a clearly established right and if so, that the conduct led was not

---

[51] *Supra* at p. 9.
[52] *Will*, 491 U.S. at 71; *See also, Kooros*, 379 Fed. Appx. at 379-80.
[53] Rec. Doc. 22, at p. 107, ¶ 436.
[54] *Supra* at p. 10.

16

"objectively reasonable." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532–33 (5th Cir. 1997). Plaintiffs' general allegations fail to allege Alleva engaged in conduct that violated a clearly established right. Plaintiffs attempt to allege they were entitled to a certain result as a result of the investigation and handling of their complaints of sexual misconduct perpetrated by other LSU students. It is important to note that Plaintiffs' injuries were caused by separate, private third-party actors,[55] and their allegations are based on the Defendants' alleged inaction.[56] To the extent Plaintiffs are claiming the LSU students who perpetrated the alleged sexual misconduct received disproportionate treatment because of their status as high-profile college athletes, their claims do not establish that Alleva's alleged conduct violated any clearly established rights. *See, e.g., Williams v. Bd. of Regents of Univ. Sys. of Georgia,* 477 F.3d 1282, 1301 (11th Cir. 2007)(defendants' "win at all cost" attitude in recruiting a basketball player with a history of criminal and disciplinary conduct did not violate the plaintiff's equal protection rights after the plaintiff was sexually assaulted by the player).

The only specific allegations against Alleva, which are contained in other sections of the Amended Complaint, involve his alleged failure to ensure the LSU Athletic Department complied with Title IX,[57] and his alleged negligence in supervising and training LSU Athletic Department personnel.[58] Both of these arguments fail to meet the Plaintiffs' heavy burden of defeating qualified immunity.

---

[55] The U.S. Fifth Circuit Court of Appeals has held there is no constitutional right to state protection for acts carried out by a private actor, and the Equal Protection Clause should not be used circumvent that rule. *Beltran v. City of El Paso*, 367 F.3d 299, 304 (5th Cir. 2004).
[56] While Plaintiffs allege a "hostile environment" as part of the alleged denial of equal protection, there are no allegations that any Plaintiff specifically interacted with Alleva.
[57] Rec. Doc. 22, at p. 101, ¶ 413.
[58] Rec. Doc. 22, at p. 119, ¶ 492.

First, the exhibits to Plaintiffs' Amended Complaint show Alleva issued several internal communications reminding all Athletic Department personal to abide by the requirements of Title IX and LSU's policies and discouraged any self-investigation by the Athletic Department staff.[59] Alleva's communications show he acted reasonably, thus, he entitled to qualified immunity. Second, alleged Title IX violations cannot form the basis of a § 1983 claim for violation of the Equal Protection Clause. *Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592, 608 (E.D. Tex. 2016). Third, any potential violation or noncompliance with Title IX does not rise to the level of a "clearly established" right required for qualified immunity. *Id.* Fourth, government officials whose conduct violates a statutory or administrative rule do not lose the protections of qualified immunity and the Amended Complaint fails to make specific allegations that Alleva violated any statutory or administrative rule. *Beltran v. City of El Paso*, 367 F.3d 299, 308 (5th Cir. 2004) (*citing Davis v. Scherer,* 468 U.S. 183, 195-197 (1984)). Finally, allegations of negligence cannot form the basis of a constitutional violation. *Diaz ex rel. Diaz v. Mayor of Corpus Christi*, 121 F. App'x 36, 39 (5th Cir. 2005). Therefore, Plaintiffs cannot meet their burden of defeating Alleva's qualified immunity defense and their claims against him should be dismissed, with prejudice.

### d. Plaintiffs' Equal Protection Claims Against Alleva Are Barred by the One-Year Statute of Limitations for § 1983 Claims.

Even if Plaintiffs were able to satisfy the pleading requirements and show qualified immunity is inapplicable their claims against Alleva are barred by the one-year limitations period

---

[59] *See* Rec. Doc. 22-1, at pp. 195-198 (Email from Joe Alleva to all Athletics Staff dated June 8, 2016); Rec. Doc. 22-1, at pp. 199-200 (Joe Alleva Memo to All Athletics Employees dated February 14, 2018). Exhibits to the Amended Complaint can be considered by the Court when ruling on Alleva's Motion to Dismiss. *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004). To the extent there are conflicts between the Amended Complaint and the exhibits, the contents of the exhibit controls. *Rouege Trucking, LLC v. Canales*, No. CIV.A. 14-304-JJB, 2015 WL 127870, at *7 (M.D. La. Jan. 7, 2015).

for § 1983 claims because they possessed the requisite knowledge of their injuries more than one-year before filing the instant lawsuit.  *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).[60]  According to Amended Complaint, Plaintiff allege they did not feel as if they received fair or appropriate support or resources from LSU.  Plaintiffs, Richardson, Robertson, Brennan, Owens, Lewis, and Johnson all had sufficient knowledge of their claims when they either received the final determination of their Title IX complaints,[61] left LSU because of the alleged lack of support they received from LSU's administration,[62] or graduated from LSU.[63]  Alleva no longer served as Athletic Director at LSU after April 17, 2019, which is two years prior to Plaintiffs' filing their Original Complaint.[64]  Plaintiffs Richardson, Robertson, Brennan, Owens, Lewis, and Johnson either left LSU or graduated from LSU prior to April 26, 2020, which is the last day the Plaintiffs' causes of action could accrue to be timely, and all Plaintiffs make allegations that give rise to sufficient information to start the running of the one-year limitations period for § 1983 claims prior to April 26, 2020.  Therefore, Plaintiffs' § 1983 claims against Alleva are time barred.

---

[60] "A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim." *Piotrowski*, 237 F.3d at 576.

[61] Rec. Doc. 22, at pp. 31 (¶ 133), 34 (¶¶ 145-153).  Plaintiff Richardson found out that Sharon Lewis would not receive any discipline or sanction from LSU regarding her handling of complaints against John Doe and John Coe on or around November 18, 2018.  Rec. Doc. 22, at p. 64, ¶ 278.  Plaintiff Lewis' father sent a letter to the Southeastern Conference on October 18, 2018 informing them that LSU had failed to take appropriate action regarding Plaintiff Lewis' complaints of sexual misconduct.

[62] Rec. Doc. 22, at p. 40, ¶ 174.  Plaintiff Robertson withdrew from LSU in September 2017 because of alleged issues caused by sexual misconduct of another student and for the alleged failure of LSU to provide appropriate support and resources.  Rec. Doc. 22, at p. 43, ¶¶ 184-185.  Plaintiff Brennan left LSU in the fall of 2016 because the alleged lack of support from Athletic Department.  Rec. Doc. 22, at p. 46, ¶ 200.  Plaintiff Owens left LSU in March 2017 because of the allege lack of support, resources, accommodations, or interim measures by LSU to ensure she could finish her degree.

[63] Rec. Doc. 22, at p. 69, ¶ 299.  Plaintiff Johnson graduated from LSU in the spring of 2019.  Plaintiff Johnson alleges verbal abuse by the LSU tennis coaches and does not allege anything that would toll the limitations period for failure of the requisite knowledge of her claim.

[64] Rec. Doc. 1.

**3. Plaintiffs Fail To Allege Specific Allegations Against Alleva for their § 1983 Procedural Due Process Claims, their Claims against Alleva in his Official Capacity are Barred by Sovereign Immunity, Qualified Immunity Applies to their Claims against Alleva in His Individual Capacity, and the § 1983 Claims Are Barred by the Applicable Limitations Period**.

**a. Plaintiffs Fail to State a Claim for Denial of Procedural Due Process Against Alleva.**

Plaintiffs' § 1983 claims for denial of procedural due process against Alleva are inadequate to state a cognizable action. Plaintiffs' claim for denial of due process arise from the alleged deprivation of their liberty and property interest in educational opportunities and benefits.[65] Specifically, Plaintiffs allege the Defendants denied them procedural due process by creating a practice/custom of deliberate indifference and cultivating a culture of silence by failing to report complaints of sexual discrimination, failing to initiate or conduct adequate investigations and grievance procedures under Title IX, and failing to ensure Plaintiffs had equal access to educational opportunities, benefits, or grievance procedures.[66] Plaintiffs further allege Defendants failed to provide Plaintiffs with adequate notice of what actions were to be taken regarding their complaints of sexual misconduct.[67] However, Plaintiffs do not allege how Alleva specifically denied them procedural due process.

The Fourteenth Amendment to the United States Constitution provides that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. Const. Amen. XIV, §

---

[65] Rec. Doc. 22, at pp. 109-110, ¶ 446.

[66] Rec. Doc. 22, at p. 109, ¶ 444. Plaintiffs' claims allege LSU and its employees failed to properly investigate and respond to reports of alleged sexual misconduct between LSU students. Rec. Doc. 22, at p. 3, ¶ 8 ("LSU's failure to appropriately respond to and investigate Plaintiffs' claims, as well as the sex discrimination and other harms perpetrated by LSU against Plaintiffs, caused them severe harm, denied them due process, denied them equal protection under the law, denied them freedom of speech, and denied them the ability to participate fully in their education as LSU students."). These allegations, at best, attempt to allege negligence on behalf of LSU and its employees which cannot form the basis of a constitutional violation.

[67] Rec. Doc. 22, at p. 109, ¶ 445.

1.  The U.S. Supreme Court has adopted a two-step analysis to determine whether a plaintiff's due process rights have been violated. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The first step is to examine whether there is a recognized liberty or property interest that has been interfered with by a governmental entity. *Id.*  The second step examines whether the government's procedures were constitutionally sufficient with respect to the liberty or property interest allegedly interfered with by the governments.  *Id.*

To appropriately state a claim for violation of procedural due process, Plaintiffs must allege they were deprived of a recognized liberty or property interest.  *Smith v. Davis*, 507 Fed. Appx. 359, 362 (5th Cir. 2013) (citing *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82, 98 S.Ct. 948, 55 L. Ed.2d 124 (1978)).  State law determines what constitutes a property interest for purposes of procedural due process. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S. Ct. 2074, 2077, 48 L. Ed. 2d 684 (1976).  The liberty or property interest allegedly violated must be more than "an abstract need or desire" or a "unilateral hope".  *Kentucky Dep't of Corr.*, 490 U.S. at 460.  The deprivation of the property right by the government or government official must be intentional; mere negligence does not rise to the level of a violation of procedural due process.  *Brown v. Douglas*, No. CV 21-104-P, 2021 WL 2933111, at *2 (W.D. La. June 1, 2021), *report and recommendation adopted*, No. CV 21-104-P, 2021 WL 2930975 (W.D. La. July 12, 2021).[68]

While Plaintiffs are not entirely clear as to what liberty or property interest they have allegedly been deprived of by Defendants, the allege a loss of access to "educational opportunities Amended Complaint."[69]  "The [Supreme] Court has not held college academic decisions implicate

---

[68] Even intentional deprivations cannot give rise to a procedural due process claim when there are adequate state post-deprivation remedies. *Brown*, 2021 WL 2933111 at *2.

[69] Rec. Doc. 22, at pp. 109-110, ¶ 446.

property or liberty interests, entitling a student to constitutional due-process protections." *Smith*, 507 Fed. Appx. at 362. This line of reasoning has extended to athletic scholarships as well. *Holden v. Perkins*, 398 F.Supp.3d 16-23 (E.D. La. 2019). Therefore, Plaintiffs § 1983 claims for denial of procedural due process fail at the pleading stage because Plaintiffs have failed to allege they were deprived of a recognized property interest.

Plaintiffs also attempt to allege they were deprived of procedural due process when Plaintiffs were not given notice of the status of their complaints regarding sexual misconduct.[70] However, Plaintiffs do not have a property interest in the status of an investigation, especially when they are not the persons under investigation or subject to punishment. *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 495 (5th Cir. 2011); *Bookenberger v. Terrebonne Par.*, No. CV 18-6373, 2019 WL 3858949, at *7 (E.D. La. Aug. 16, 2019).[71]

In sum, neither the alleged lost educational opportunities and benefits nor the purported failure to keep them apprised of investigations into other LSU students cannot serve as an actional basis for Plaintiffs' procedural due process claims. Furthermore, Plaintiffs' § 1983 claims for denial of procedural due process as to Alleva fail the pleading requirements since they do not make specific allegations regarding the conduct of Alleva that denied them a property right without due

---

[70] Rec. Doc. 22, at p. 109, ¶ 445.
[71] In *Davis*, the U.S. Fifth Circuit found that the plaintiff did not have a property interest in a certain investigation or investigative procedures. 448 Fed. Appx. at 495. In *Bookenberger*, the court rejected the notion that the plaintiff had a property interest in an investigation against the plaintiff after defendants failed to disclose the nature of the investigation and denying requests for documents regarding the investigation. 2019 3858949 at *7. Since the decisions in *Davis* and *Bookenberger* rejected the notion the respective plaintiffs had a property interest in investigations into their own conduct, Plaintiffs do not have a property interest in the investigations of other individuals.

process.[72]    Accordingly, Plaintiffs' § 1983 claims for denial of procedural due process against

Alleva should be dismissed.

> **b.  Plaintiffs' Claims Against Alleva in his Official Capacity are Barred Because Government Officials Are Not Recognized As "Persons" For Purposes of § 1983 Claims and By Sovereign Immunity.**

For the same reasons discussed above in Section IV(B)(1)(b),[73] Plaintiffs' claims against

Alleva in his official capacity should be dismissed because he does not meet the definition of a

"person" in § 1983.[74]    As a result, Alleva is shielded from liability by the doctrine of sovereign

immunity.[75]    Therefore, Plaintiffs' § 1983 claims against Alleva, in his official capacity, should be

dismissed, with prejudice.

> **c.  Qualified Immunity Shields Alleva, in his Individual Capacity, From Civil Liability for Plaintiffs' § 1983 Claim of Violation of Denial of Procedural Due Process.**

Plaintiffs assert claims against Alleva, in his individual capacity, pursuant to § 1983 for the

alleged violation of procedural due process guaranteed by the Fourteenth Amendment.    Plaintiffs

base their procedural due process claims on the alleged failure to properly investigate and respond

to the sexual misconduct of other LSU students.[76]    While Plaintiffs fail to make any specific

allegations against Alleva, the § 1983 procedural due process claims seemingly arise from the

alleged failure to comply with Title IX regarding the reported  sexual misconduct by other LSU

students and/or the alleged failure of certain university employees to provide updates on the status

---

[72] Plaintiff Andries alleges she was issued a mutual no-contact directive without the opportunity to be heard.  Rec. Doc., at p. 110, ¶ 447.  However, Plaintiff Andries makes no allegations that Alleva or anyone in the Athletic Department handled or were even aware of her complaint.  Rec. Doc. 22, at pp. 48-56, ¶¶ 209-243.

[73] *Supra* at p. 9.

[74] *Will*, 491 U.S. at 71.

[75] *Kooros*, 379 Fed. Appx. at 379-80.

[76] Rec. Doc. 22, p. 109, ¶ 444.

of disciplinary proceedings to certain Plaintiffs.  For the reasons outlined above in Section IV(B)(1)(c)[77] and for the reasons that follow, qualified immunity applies to Plaintiffs' § 1983 equal protection claims against Alleva in his individual capacity

Plaintiffs cannot defeat Alleva's claim of qualified immunity because they cannot show Alleva violated an established right.  As the U.S. Fifth Circuit has stated, the Supreme Court has never held a person has a recognized property interest in college education and benefits.  *Smith*, 507 Fed. Appx. at 362.  Furthermore, Plaintiffs cannot demonstrate there is an established right to receive notice of the actions that have or will be taken in connection with their complaints of sexual misconduct when Plaintiffs were not the subject of the investigation or potential punishment. *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x at 495; *Bookenberger*, 2019 WL 3858949, at *7.[78] Therefore, even if Plaintiffs were able to sufficiently plead a claim against Alleva for denial of procedural due process, Plaintiffs cannot show Alleva violated a clearly established right.  Thus, Plaintiffs' § 1983 claims for denial of procedural due process against Alleva should be dismissed.

### d. Plaintiffs' Procedural Due Process Claims Against Alleva Are Barred by the One-Year Statute of Limitations for § 1983 Claims.

Even if Plaintiffs were able to satisfy the pleading requirements and to show qualified immunity is inapplicable, Plaintiffs' claims against Alleva are barred by the one-year limitations period for § 1983 claims.[79] Plaintiffs possessed the requisite knowledge of their injuries more than

---

[77] *Supra* at p. 10.
[78] *See also Walsh v. Hodge*, 975 F.3d 475, 486–87 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1693, 209 L. Ed. 2d 468 (2021) (finding the exact contours of university disciplinary/termination proceedings are still in flux and not clearly established).
[79] *Jones v. Orleans Par. Sch. Bd.*, 688 F.2d 342, 344 (5th Cir. 1982).

one-year before filing the instant lawsuit.   Specifically, Plaintiffs, Richardson,[80] Robertson,[81] Brennan,[82] Owens,[83] Lewis,[84] and Johnson,[85] all had the prerequisite knowledge to begin the running of the limitations period before leaving LSU.  Plaintiffs, Richardson, Robertson, Brennan, Owens, Lewis, and Johnson either left LSU or graduated from LSU prior to April 26, 2020, which is the last day the Plaintiffs' causes of action could accrue to be timely, and all Plaintiffs make allegations that give rise to sufficient information to start the running of the one-year limitations period for § 1983 claims prior to April 26, 2020.  Therefore, any claims brought prior to April 26, 2020 (one year prior to when the Complaint was filed) is barred by the statute of limitations.

C.  **Plaintiffs Fail to Make Specific Allegations against Alleva for their § 1985 Conspiracy to Deprive Constitutional Rights; Sovereign Immunity Bars their § 1985 Claims against Alleva in his Official Capacity; Qualified Immunity Applies to their § 1985 Claims against Alleva in His Individual Capacity; and the § 1985 Claims are Barred by the Intracorporate Doctrine and Applicable Limitations Period**.

1.  **Plaintiffs Fail to Properly Allege a Conspiracy to Interfere with Plaintiffs Constitutional Rights Pursuant § 1985.[86]**

Plaintiffs' § 1985 claims against Alleva fail to meet the pleading requirements.   To establish a claim for conspiracy to deprive a person of civil rights under § 1985, Plaintiffs must prove the following: (1) a conspiracy involving two or more persons; (2) for the purpose of

---

[80] To the extent Plaintiff Richardson pleads a claim she was not informed of the status of her Title IX investigation and subsequent punishment imposed on Defendant Lewis, the Title IX investigation concluded in November 2018 more than a year before the Original Complaint was filed.

[81] Plaintiff Robertson alleges she was not informed of other sexual complaints filed against John Doe.  Rec. Doc., at p. 39, ¶ 171.

[82] Plaintiff Brennan does not make any specific allegations of denial of due process in her individual allegations.  Rec. Doc. 22, at p. 41-45, ¶¶ 177-191.

[83] Owens left LSU in March 2017 because of the alleged mishandling of her complaints.  Rec. Doc. 22, at p. 46, ¶ 200.

[84] Plaintiff Lewis alleges she was not informed of the status of John Coe's mandatory counseling (Rec. Doc. 22, at p. 59, ¶ 256), and she was put on academic probation for a violation of LSU's residential life policy in June 2018.  Rec. Doc. 22, at p. 61, ¶ 264.

[85] Plaintiff Johnson does not make any allegations pertaining to a denial of procedural due process even under the allegations made in the general portion of the Amended Complaint.

[86] Count IX in the Amended Complaint.  Rec. Doc. 22, pp. 111-112, ¶¶ 451-456.

25

depriving any person or class of persons of equal protections of the laws; (3) defendants acted in furtherance of the conspiracy; and (4) caused an injury to a person or property or caused a deprivation of any right of privilege afforded to citizens of the United States. *Hilliard v. Ferguson*, 30 F.3d 649, 652-653 (5th Cir. 1994). In addition, the plaintiff must show the conspiracy was motivated by a class-based animus. *Id.* at 653. Plaintiffs must allege more than mere conclusory allegations that Defendants conspired to deprive the Plaintiffs of civil rights. *U. S. ex rel. Simmons v. Zibilich*, 542 F.2d 259, 262 (5th Cir. 1976).

Plaintiffs cannot merely plead that Alleva was aware of the alleged constitutional violations, which they have not; rather, Plaintiffs must allege Alleva selected or affirmed a particular course of action because of the adverse effects it would have upon an identifiable and protected group. *Hagan v. Houston Indep. Sch. Dist.*, 51 F.3d 48, 53 (5th Cir. 1995) (*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 272, 113 S. Ct. 753, 760–61, 122 L. Ed. 2d 34 (1993)). Plaintiffs' Amended Complaint fails to make any allegations whatsoever against Alleva that would support a plausible cause of action against him for Plaintiffs' § 1985 claims.

### 2. Plaintiffs' Claims Against Alleva in his Official Capacity Are Barred Because Government Officials Are Not Recognized As "Persons" For Purposes of § 1985 Claims and Are Barred By Sovereign Immunity.

For the same reasons addressed above in Section IV(B)(1)(b),[87] Plaintiffs' claims against Alleva in his official capacity should be dismissed because Alleva does not a "person" for purposes of § 1985;[88] thus, he is shielded from liability by the doctrine of sovereign immunity.[89]

---

[87] *Supra* at p. 9.
[88] *Will*, 491 U.S. at 71. Section 1985 contains the same reference to "persons" as § 1983. Therefore, the rational of *Will* regarding § 1983 claims should apply to § 1985.
[89] *Early v. S. Univ. & Agr. & Mech. Coll. Bd. of Sup'rs*, 252 F. App'x 698, 700 (5th Cir. 2007).

### 3.  Qualified immunity applies to Plaintiffs' § 1985 claims.

Alleva is entitled to qualified immunity with respect to Plaintiffs' § 1985 claims. *Ziglar*, 137 S. Ct. at 1867.  Plaintiffs generally allege all Defendants conspired to deprive them of their constitutional rights to free speech, equal protection, and due process.[90]  For the reasons outlined in Sections IV(B)(1)(c),[91] IV(B)(2)(c),[92] and IV(B)(3)(c), above,[93] discussing qualified immunity as to each of Plaintiffs' § 1983 claims against Alleva in his individual capacity, qualified immunity bars Plaintiffs § 1985 claims for conspiracy to interfere with Plaintiffs' constitutional rights of free speech, equal protection, and due process.

### 4.  The Intracorporate Doctrine Bars Plaintiffs' Claims Under § 1985.

Plaintiffs' claims against Alleva fail because Alleva cannot conspire with fellow employees and officials of LSU for purposes of § 1985.  Conspiracy is an essential element of a cause of action for conspiracy to interfere with civil rights under § 1985. *U. S. ex rel. Simmons v. Zibilich*, 542 F.2d at 262.  A single entity, whether a private corporation or public body, cannot conspire with its employees, and its employees cannot conspire among themselves for purposes of supporting a § 1985 claim. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994); *Martin v. D.C.*, 78 F. Supp. 3d 279, 328 (D.D.C. 2015).  In *Hillard,* the Fifth Circuit held that a school board is a single entity for purposes of conspiracy claims brought pursuant to § 1985, and the same rationale applies to a university.  *Id.*; *See also, Chambliss v. Foote*, 421 F. Supp. 12, 15 (E.D. La. 1976), *aff'd*, 562 F.2d 1015 (5th Cir. 1977) (finding a university and its officials are a single entity that

---

[90] Rec. Doc. 22, at p. 111, ¶ 452.
[91] *Supra* at p. 10.
[92] *Supra* at p. 16.
[93] *Supra* at p. 23.

cannot conspire with one another). All of the individual Defendants were either employees or agents of LSU, thus, could not have conspired with each other for purposes of Plaintiffs' § 1985 claims.

### 5. Plaintiffs' § 1985 Claims are Barred by the Applicable Limitations Period.

Plaintiffs § 1985 claims are subject to a one-year statute of limitations. *Smith v. Humphrey*, 540 F. App'x 348, 349 (5th Cir. 2013); *Delouise v. Iberville Par. Sch. Bd.*, 8 F. Supp. 3d 789, 806 (M.D. La. 2014). Similar to § 1983 claims, federal law determines when § 1985 causes of action accrue. *Id.* The cause of action for Plaintiffs' § 1985 claims accrued when Plaintiffs knew or should have known they had been injured. *Id.* Plaintiffs Richardson,[94] Robertson,[95] Brennan,[96] Owens,[97] Lewis,[98] and Johnson[99] all had the prerequisite knowledge to begin the running of the limitations period before leaving LSU. Plaintiffs Richardson, Robertson, Brennan, Owens, Lewis, and Johnson either left LSU or graduated from LSU prior to April 26, 2020, which is the last day the Plaintiffs' causes of action could accrue to be timely. All Plaintiffs make allegations that give rise to sufficient information to start the running of the one-year limitations period for § 1985 claims prior to April 26, 2020. Therefore, Plaintiffs' § 1985 claims for conspiracy to deprive

---

[94] Rec. Doc. 22, at pp. 31 (¶ 133), 34 (¶¶ 145-153).

[95] Rec. Doc. 22, at p. 40, ¶ 174. Plaintiff Robertson withdrew from LSU in September 2017 because of alleged issues caused by sexual misconduct of another student and for the alleged failure of LSU to provide appropriate support and resources.

[96] Rec. Doc. 22, at p. 43, ¶¶ 184-185. Plaintiff Brennan left LSU in the fall of 2016 because the alleged lack of support from Athletic Department.

[97] Rec. Doc. 22, at p. 46, ¶ 200. Plaintiff Owens left LSU in March 2017 because of the allege lack of support, resources, accommodations, or interim measures by LSU to ensure she could finish her degree.

[98] Rec. Doc. 22, at p. 64, ¶ 278. Plaintiff Lewis' father sent a letter to the Southeastern Conference on October 18, 2018 informing them that LSU had failed to take appropriate action regarding Plaintiff Lewis' complaints of sexual misconduct.

[99] Rec. Doc. 22, at p. 69, ¶ 299. Plaintiff Johnson graduated from LSU in the spring of 2019. Plaintiff Johnson's alleges verbal abuse by the LSU tennis coaches and does not allege anything that would toll the limitations period for failure of the requisite knowledge of her claim.

Plaintiffs of their constitutional rights of free speech, equal protection, and due process should be dismissed.

 **D. Plaintiffs' § 1986 Claims for Neglect to Prevent a Deprivation of Constitutional Rights[100] Against Alleva Fail To Allege Specific Allegations Against Alleva and are Barred Because Alleva Enjoys The Benefit Of Sovereign Immunity For § 1986 Claims in his Official Capacity, Qualified Applies Immunity For § 1986 Claims in his Individual Capacity, the Plaintiffs' § 1986 Claims are barred by the Intracorporate Doctrine, the Plaintiffs' § 1986 Claims are Barred Because There is no Underlying Valid § 1985 Claim, and the § 1986 Claims Are Barred by the Applicable Limitations Period**.

  **1. Plaintiffs' Claims Against Alleva in his Official Capacity are Barred by Sovereign Immunity.**

Plaintiffs' § 1986 claims against Alleva in his official capacity are barred by sovereign immunity pursuant to the Eleventh Amendment. *Early v. S. Univ. & Agr. & Mech. Coll. Bd. of Sup'rs*, 252 F. App'x 698, 700 (5th Cir. 2007). In *Early* the United States Fifth Circuit Court of Appeals, on a matter of first impression, found that sovereign immunity applies to § 1986 claims against university officials in their official capacity. *Id.* Accordingly, Plaintiffs' § 1986 claims against Alleva in his official capacity should be dismissed with prejudice.

  **2. Qualified immunity applies to Plaintiffs' § 1986 claims Against Alleva in his Individual Capacity.**

Alleva is entitled to qualified immunity applies for Plaintiffs' § 1986 claims. *Early*, 252 Fed. Appx. at 700-701. For the reasons outlined above in Sections IV(B)(1)(c),[101] IV(B)(2)(c),[102] and IV(B)(3)(c)[103] discussing qualified immunity as to each of Plaintiffs' § 1983 claims and § 1985 claims against Alleva in his individual capacity, qualified immunity bars Plaintiffs § 1986

---

[100] Count IX in the Amended Complaint. Rec. Doc. 22, at pp. 111-112, ¶¶ 451-456.
[101] *Supra* at p. 10.
[102] *Supra* at p. 16.
[103] *Supra* at p. 23.

claims for negligent prevention of interference with Plaintiffs' constitutional rights of free speech, equal protection, and due process.

### 3. There is no Valid § 1985 Claim Against Alleva, Thus, Preventing Plaintiffs' § 1986 Claim.

A violation of § 1986 is wholly dependent on finding a violation of § 1985. *Ard v. Rushing*, 597 Fed. Appx. 213, 221 (5th Cir. 2014). For the same reasons addressed in Sections IV(C)(1)-(5) above[104] regarding Plaintiffs' § 1985 claims, their § 1986 Claims against Alleva in his individual capacity should be dismissed.

### 4. The Intracorporate Doctrine Bars Plaintiffs' Claims Under § 1986.

The same prohibition on intracorporate conspiracies bars claims brought under § 1986 just as it bars claims brought under § 1985. *Martin*, 78 F. Supp. 3d at 328. For the reasons briefed above in Section IV(C)(4),[105] Plaintiffs' § 1986 claims should be dismissed as Plaintiffs cannot allege a conspiracy among officials and employees of LSU.

### 5. Plaintiffs' § 1986 Claims are Barred by the Applicable Limitations Period.

Plaintiffs' § 1986 claims are limited by the statute's express one year limitations period. 42 U.S.C. § 1986;[106] *Williams v. Post*, 751 Fed. Appx. 572 (5th Cir. 2019) (*per curiam*). The limitations period of § 1986 is not subject to tolling, and thus, is akin to a statute of repose. *Bieros v. Nicola*, 839 F. Supp. 332, 337 (E.D. Pa. 1993).[107] Since Plaintiffs' § 1986 claims are not subject

---

[104] *Supra* at pp. 25-29.

[105] *Supra* at p. 26.

[106] § 1986 provides, "[b]ut no action under the provision of this section *shall* be sustained which is not commenced within one year after the cause of action has accrued." (emphasis added).

[107] While the United States Supreme Court has not directly answered the question of whether the limitations period in § 1986 is subject to tolling, the majority of district courts who have encountered this issue has found it is not subject to tolling. *Acosta-Felton v. Greinke*, No. 11-3103-RDR, 2013 WL 615469, at *4 (D. Kan. Feb. 19, 2013); *Johns v. Home Depot U.S.A., Inc.*, 221 F.R.D. 400, 407 (S.D.N.Y. 2004); *Lively v. Ballard*, No. 2:13-CV-28759, 2015 WL 5139120, at *5 (S.D.W. Va. Aug. 4, 2015), *report and recommendation adopted*, No. CV 2:13-28759, 2015 WL

to tolling, the limitations period would begin to run when Plaintiffs knew or had reason to know of the basis of their injuries.  For the reasons previously addressed herein, Plaintiffs had the requisite knowledge to begin the running of the limitations period on or before the time they left LSU,[108] which was well before April 26, 2020 (one year prior to filing the Original Complaint). Therefore, Plaintiffs' § 1986 claims against Alleva should be dismissed.

## V.  LOUISIANA RACKETEERING ACT CLAIMS.

### A.  Plaintiffs Fail to Plead A Plausible Claim Under the Louisiana Racketeering Act.

Plaintiffs have dismissed their federal RICO claims against all Defendants.[109]  However, Plaintiffs still allege claims under the Louisiana Racketeering Act, La. R.S. 15:1351, *et seq.*  On September 27, 2021, the Court issued its Louisiana Racketeering Act Order ("LRA Order") requiring the Plaintiffs to file a  Case Statement similar to the RICO Order issued by the Court for Plaintiffs' federal RICO claims .[110]  Plaintiffs' Case Statement, like their Amended Complaint, is very general and fails to make specific allegations against Alleva in light of the serious nature of the claims Plaintiffs assert against Alleva, i.e., that he has engaged in in criminal activity (predicate acts).[111]

A civil RICO/racketeering lawsuit is quasi-criminal in nature and should not be brought against the Defendants without a sufficient basis, both legal and factual, because such claims inevitably stigmatize the Defendants.  *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

---

5139155 (S.D.W. Va. Aug. 31, 2015); *Dixon v. Elmore*, No. CIV.A. 12-1180, 2012 WL 5830629, at *4 (W.D. Pa. Oct. 25, 2012), *report and recommendation adopted*, No. 2:12-CV-1180, 2012 WL 5830615 (W.D. Pa. Nov. 16, 2012).

[108] *Supra* at nn. 95-99.

[109] Rec. Doc. 67.

[110] Rec. Doc. 93.

[111] Plaintiffs' Racketeering Case Statement is subject to the pleading requirements under the Federal Rules of Civil Procedure including the heightened pleading requirements for allegations pertaining to fraudulent conduct.  *Wang v. Ochsner Med. Ctr.-Kenner, L.L.C.*, No. CV 17-5134, 2017 WL 6055167, at *12 (E.D. La. Dec. 7, 2017).

Therefore, to protect innocent parties, courts should dismiss frivolous RICO claims at the earliest possible stage of litigation. *Id.* Plaintiffs' generalized accusations against Alleva run afoul of the Court's LRA Order and federal pleading requirements; thus, they should be dismissed.[112]

The LRA is modeled after the federal RICO statutes, and thus, federal cases are persuasive authority for interpreting the Louisiana's RICO statutes. *State v. Nine Sav. Accts.*, 553 So.2d 823, 825 (La. 1989); *CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 2019-0745, p. 4 (La. App. 1 Cir. 7/2/19); 2019 WL 2865256 at *3 *writ denied*, 2019-01228 (La. 11/19/19); 282 So.3d 1069. Since the reported Louisiana cases interpreting the LRA are sparse, federal RICO caselaw should inform the court's interpretation and application of the LRA. *Zilbert v. Sasol N. Am., Inc.*, No. 2:11 CV 00862, 2012 WL 1950144, at *2 (W.D. La. May 29, 2012); *Camsoft Data Sys.*, 2019 WL 2865256 at *3. The LRA provides a cause of action for individuals harmed by four (4) prohibited activities in La. R.S. 15:1353:

(1)  receiving any proceeds derived from a *pattern of racketeering activity* and investing those proceeds to acquire interest in any immovable property, establishment, or operation of an enterprise.

(2)  knowingly acquire or maintain any interest in or control of an enterprise or immovable property through a *pattern of racketeering activity*;

(3)  knowingly conduct or participate in an enterprise through a *pattern of racketeering activity;* and

(4)  conspiring or attempting to violate the provisions of Subsections A, B, or C.[113]

---

[112] Plaintiffs have offered no explanation as to the reason they have readily asserted novel and frivolous claims against Alleva and the other Defendants in the public record while keeping the names of the persons who allegedly committed the acts of sexual misconduct anonymous.

[113] La. R.S. 15:1553(A) – (D).

Plaintiffs have alleged all Defendants, including Alleva, have violated all four (4) provisions of La. R.S. 15:1353.[114]  For the reasons addressed below, all of Plaintiffs' racketeering claims against Alleva fail.[115]

To establish their LRA claims against Alleva, Plaintiffs must show that he is (1) a person who engages in (2) a pattern of racketeering activity and is (3) connected to the acquisition, establishment, conduct, or control of an enterprise.  *CamSoft Data Sys.,* 2019 WL 2865256 at *4. "Enterprise" means any individual, sole proprietorship, partnership, corporation or other legal entity, or any association, or group of individuals associated in fact.  La. R.S. 15:1352(B). "Racketeering activity" is statutorily defined as committing, attempting, conspiring to commit an enumerated crime or soliciting, coercing or intimidating another person to commit crimes specifically enumerated in La. R.S. 15:1352.   "Pattern of Racketeering Activity" means committing, attempting to commit, conspiring to commit two or more of the enumerated predicate acts contained in La. R.S. 15:1352, or soliciting, coercing, or intimidating another person to commit the predicate acts.

Plaintiffs cannot rely on conclusory allegations that Alleva violated the LRA; rather, they but must make specific allegations that he engaged in the prohibited criminal activity expressly enumerated in La. R.S. 15:1352.  *Alack v. Jaybar, LLC*, No. CV 11-143, 2012 WL 13005346, at *6 (E.D. La. Aug. 21, 2012) (applying the Louisiana Racketeering Act).  Furthermore, Plaintiffs must plead Alleva engaged in the specific criminal conduct (predicate acts) set forth in §1352 and cannot lump him together with the other Defendants in their allegations.  *Walker v. Beaumont*

---

[114] Rec. Doc. 22 at p. 137, ¶ 563.
[115] Plaintiffs' claim for conspiracy to commit racketeering activity pursuant to La. R.S. 15:1353(D) fails if the Plaintiffs cannot state a substantive violation under La. R.S. 15:1353(A)-(C).  *Wang*, 2017 WL 6055167, at *15.

*Indep. Sch. Dist.*, 1:15-CV-379, 2017 WL 928459, at *7 (E.D. Tex. Mar. 6, 2017), *report and recommendation adopted*, 1:15-CV-379, 2017 WL 1166779 (E.D. Tex. Mar. 28, 2017), *aff'd*, 938 F.3d 724 (5th Cir. 2019).

As discussed more fully below, Plaintiffs fail to allege with any specificity how Alleva participated in, controlled, or derived proceeds or benefits from a pattern of racketeering activity; how he invested those proceeds/benefits in an enterprise; or conspired to engage in a pattern of racketeering activity.

**B.  Sovereign Immunity Applies to Plaintiffs' State Law Racketeering Claims Against Alleva in His Official Capacity.**

Sovereign immunity bars Plaintiffs' racketeering claims brought against Alleva in his official capacity because there is not an express waiver of sovereign immunity in the LRA.  *Will*, 491 U.S. at 71; *Treece v. State*, No. CIV. A. 99-1567, 2000 WL 1480356, at *4 (E.D. La. Oct. 4, 2000); *Gaines v. Texas Tech Univ.*, 965 F. Supp. 886, 889 (N.D. Tex. 1997).  Therefore, Plaintiffs' racketeering claims brought against Alleva in his official capacity should be dismissed.

**C.  Qualified Immunity Applies to Plaintiffs' State Law RICO Claims.**

Qualified immunity applies to LRA claims brought against Alleva in his individual capacity.  *Brown v. Nationsbank Corp.*, 188 F.3d 579, 588 (5th Cir. 1999).  In the racketeering context, the court should evaluate qualified immunity as to each predicate act under the two-part qualified immunity analysis to determine if there was a clearly established constitutional or statutory right violated and whether Alleva's conduct was "objectively reasonable."  *Id.*  Plaintiffs

have the burden of proving qualified immunity does not apply to Alleva's alleged criminal conduct with respect to each predicate act. *Id.*[116]

Plaintiffs have not and cannot overcome their burden of proof due to the sparse and generalized allegations against Alleva contained in the Amended Complaint and the Case Statement. None of the alleged predicate acts by Alleva constitute a violation of a clearly established constitutional or statutory right and none of their allegations establish that he acted unreasonably. Furthermore, Plaintiffs must show that Alleva possessed the requisite criminal intent for each predicate act, which they have not done. *See Foster v. Fisher*, 53-205, p. 16 (La. App. 2 Cir. 2/5/20); 290 So.3d 1215, 1226, *reh'g denied* (Feb. 27, 2020), *writ denied*, 2020-00481 (La. 6/22/20); 297 So.3d 761. Thus, Plaintiffs' LRA claims fail at the pleading stage.

### D.  Plaintiffs Lack Standing to Assert LRA Claims Against Alleva.

#### 1.  Plaintiffs Do Not have Standing to Assert LRA Claims Because Their Alleged Damages Were Not Proximately Caused by the Predicate Acts.

Plaintiffs do not have standing to sue under the LRA because Plaintiffs' alleged injuries were not proximately caused by the alleged predicate acts committed by Alleva or any of the other Defendants. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998).[117] Plaintiffs' purported injuries could not have been caused by any of the alleged predicate act because any such injuries were caused by intentional acts perpetrated by third persons who are not parties to the instant litigation; thus, Plaintiffs cannot state a claim under the LRA.[118] Plaintiffs fail to offer

---

[116] Plaintiffs allege Alleva committed the predicate acts of public intimidation and retaliation, intimidating or injuring an impending witness, injuring public records, filing, or maintaining false records, money laundering, and corrupt influencing. Rec. Doc. 103, at pp. 42-57.

[117] RICO standing is not usually treated as a jurisdictional issue but as a pleading requirement to maintain a LRA claim. *Zilbert*, 2012 WL 1950144, at *3.

[118] Rec. Doc. 103, at pp. 32-33, containing allegations of sexual misconduct against John Moe and John Doe.

35

anything other than conclusory allegations regarding how the alleged predicate acts of public intimidation and retaliation, intimidating or injuring an impending witness, injuring public records, filing or maintaining false records, money laundering, and corrupt influencing are the proximate cause for Plaintiffs' alleged injuries.[119]

For a plaintiff to have standing for a LRA claim, he/she must satisfy both the injury and causation elements. *Price*, 138 F.3d at 606.[120]  A RICO plaintiff must plausibly allege the RICO violation proximately caused the plaintiff's injuries. *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, No. 19-50638, 2020 WL 7486307, at *3 (5th Cir. Dec. 21, 2020).  "The proximate causation standard in this context is not one of foreseeability; instead, the plaintiff must demonstrate that the alleged violation "led directly" to the injuries." *Id.*  When courts evaluate whether the defendant's alleged conduct was the proximate cause of a plaintiff's injuries, the focus turns to the directness of the relationship between the conduct and the harm. *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 12 (2010).  Therefore, if any conduct not alleged against the defendant directly caused the harm, the plaintiff cannot sustain a RICO/racketeering claim. *Id.*; *Molina-Aranda*, 2020 WL 7486307, at *3.

A causal link that is too remote, purely contingent, or indirect is insufficient to constitute a RICO injury. *Hemi Grp.*, 559 U.S. at 9.  Allegations of a causal connection between the alleged RICO violations and a plaintiffs' injuries that are too attenuated fail to state a claim under RICO

---

[119] Rec. Doc. 22, at p. 139, ¶ 568.  Plaintiffs attempt to add an additional predicate act in their RICO Case Statement of corrupt influencing in violation of La. R.S. 14:120.  Alleva objects to any attempt to expand the allegations of the Amended Complaint without seeking leave of Court to file a second amended complaint.

[120] Courts use a stricter analysis when assessing whether a plaintiff has standing to sue under RICO to guard courts from an overflow of complex RICO cases with speculative or attenuated damages. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460, 126 S. Ct. 1991, 1998, 164 L. Ed. 2d 720 (2006).  Another motivating factor in applying a stricter analysis of what types of injuries are compensable under RICO/racketeering claims is the difficulty in courts ascertaining the damages caused by a remote or indirect action. *Anza*, 547 U.S. at 458; *Treadway v. Lisotta*, No. CIV. A. 08-1375, 2008 WL 3850462, at *5 (E.D. La. Aug. 15, 2008).

and the LRA. *Id.* at 10; *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 802 F. Supp. 2d 725, 728 (E.D. La. 2011). Likewise, damage to a plaintiff's speculative subjective expectations cannot form the basis of a RICO/racketeering claim. *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 409–10 (5th Cir. 2015); *Price*, 138 F.3d at 607; *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995).[121] Therefore, a claim that must rely on a "domino effect" of causation fails to state a RICO/racketeering claim. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 802 F. Supp. 2d at 729.

The U.S Supreme Court's decision in *Hemi Group* is instructive and should be followed when analyzing whether Plaintiffs' alleged injuries were proximately caused by the predicate acts they allege were committed by Defendants. In *Hemi Group*, the City of New York ("City") sued a cigarette distributer, alleging federal RICO claims predicated on mail and wire fraud. *Id.* at 4. The City alleged the defendant failed to file reports with the State of New York regarding out-of-state vendors to submit customer information to states where the vendors ship cigarettes, as required by federal law. *Id.* The City alleged the failure to file the reports with the State of New York led to tens of millions of dollars in unrecovered taxes from persons who purchased or possessed cigarettes within the City. *Id.* In holding that the City failed to state a claim under RICO, the Court found the City's alleged injuries were too attenuated, speculative, and remote to state a claim under RICO. Specifically, the court held the direct cause of the City's injuries was the failure by the persons who purchased or possessed cigarettes within the City to pay taxes not the failure of the defendant to file its required report with the State of New York, even though proper reporting would have made it easier to identify those who had failed to pay taxes on the

---

[121] Injury to an intangible property interest, even if very valuable, is not the sort of injury RICO was meant to compensate. *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d at 523.

cigarettes.  *Id.* at 11.  Of particular significance to the instant case, the Court found the City's theory of liability relied on a *separate action* carried out by *separate parties* who were not the defendant or alleged to be a part of the RICO enterprise.  *Id.*

Applying the holding and reasoning of *Hemi Group* to this case, Plaintiffs' theory of liability against Alleva is too attenuated from the predicate acts to give rise to a cognizable claim under the LRA.  Plaintiffs' allegations against Alleva seek to piece together a chain of speculative assumptions which cannot confer standing under the LRA.  Plaintiffs' theory of causation relies on the premise that the Defendants' failure to properly report and discipline the fellow LSU students who engaged in the alleged sexual misconduct led to a wide variety of physical and emotional damages.[122]  However, Plaintiffs' argument ignores the misconduct of third parties caused Plaintiffs' injuries. Since Plaintiffs' injuries and damages were not caused by the alleged predicate acts, they are not recoverable under the LRA and should be dismissed.  *Cullom v. Hibernia Nat. Bank*, 859 F.2d 1211, 1216 (5th Cir. 1988).[123]

### 2. Damages For Personal Injuries or Expenses Related to Personal Injuries are not Recoverable under the Racketeering Act.

As discussed above, Plaintiffs' alleged injuries and damages are related to, or arise from, personal injuries caused by the conduct of third-parties; thus, Plaintiffs do not have standing to assert claims under the LRA against Alleva.  *Vickers v. Weeks Marine, Inc.*, 414 F. App'x 656, 657

---

[122] Rec. Doc. 22, at pp. 142-143, ¶ 589(a)-(n).  The injuries suffered by specific Plaintiffs all arise from an underlying personal injury.  Rec. Doc. 22 at, Richardson, pp. 36-37, ¶ 155; Robertson, p. 41, ¶ 176; Brennan, pp. 44-45, ¶¶ 191-192; Owens, p. 48, ¶ 208; Lewis, p. 65, ¶ 282; and Johnson, pp. 69-70, ¶¶ 301.  *See also* Rec. Doc. 103, at pp. 36-40.
[123] In *Cullom*, the U. S. Fifth Circuit expressly held a plaintiff lacked standing under RICO for damages related to the plaintiff's loss of employment because he did participate in the alleged RICO scheme.  859 F.2d at 1216.  The loss of an athletic scholarship and the opportunities and benefits that are derivative from that scholarship is not recoverable under RICO.  *Bowen v. Adidas Am., Inc.*, No. CV 3:18-3118-JFA, 2021 WL 2141724, at *4 (D.S.C. May 26, 2021).

(5th Cir. 2011) (*per curiam*).[124]  Damages for or arising out of personal injuries are not recoverable

under the LRA.  *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001); *Zilbert*, 2012

WL 1950144 at *2 (interpreting the LRA).[125]  Likewise, pecuniary damages that closely relate to

or arise out of personal injuries are not recoverable for RICO/racketeering claims.  *Vickers*, 414 F.

App'x 656.[126]  Damages the courts have found to be closely associated with personal injuries and

not recoverable under RICO include expenses incurred to combat drug, alcohol, and gambling

addictions related to sexual assault,[127] psychological counseling/therapy,[128] loss of future earning

capacity,[129] medical expenses,[130] and lost opportunities.[131]  Furthermore, Plaintiffs' damages are

not concrete financial losses, and thus, not recoverable under the LRA as they would be speculative

---

[124] The district court opinion in *Vickers* which provides more detail regarding the prohibition against bringing RICO claims relating to personal injuries is found at *Vickers v. Weeks Marine, Inc.*, No. CV 09-6230, 2010 WL 11570439, at *2 (E.D. La. Apr. 7, 2010).

[125] "[E]ven if the Court undertook some philosophical approach" and construed the lost opportunity to bring a personal injury lawsuit as a property right, "the Court nevertheless would be unable to adopt such an interpretation because it would contravene Congress' intent in enacting the RICO statute." *Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 647 (S.D. Tex. 2007), *aff'd sub nom.*, *Bradley v. Phillips Chem. Co.*, 337 F. App'x 397 (5th Cir. 2009); *See also*, *Capdeboscq v. Francis*, No. CIV.A. 03-0556, 2003 WL 21418499, at *2 (E.D. La. June 16, 2003) (damages for humiliation and embarrassment not recoverable under RICO); *Robinson v. Castle*, No. CIV.A. H-11-649, 2011 WL 3813292, at *6 (S.D. Tex. Aug. 29, 2011) (damages for mental anguish and loss of consortium not recoverable); *Gaines v. Texas Tech Univ.*, 965 F. Supp. 886, 890 (N.D. Tex. 1997) (loss of future earning potential and educational opportunities not recoverable).

[126] *In re Vioxx Prod. Liab. Litig.*, No. MDL 1657, 2007 WL 3104220, at *1 (E.D. La. Oct. 23, 2007) (physical, emotional, and economic damages related to injuries arising from ingestion of a prescription drug were not recoverable under RICO).

[127] *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 329–30 (E.D.N.Y. 2012) (plaintiffs brought RICO claims against school officials who allegedly covered up or failed to properly investigate claims of sexual assault to students by the football coach).

[128] *Id.*

[129] *Gaines*, 965 F. Supp. at 890.

[130] *Borskey v. Medtronics, Inc.*, No. CIV. A. 94-2302, 1995 WL 120098, at *3 (E.D. La. Mar. 15, 1995), *aff'd in part*, 105 F.3d 651 (5th Cir. 1996)

[131] *Gaines*, 965 F. Supp. at 890 (finding the plaintiff's damages for his alleged knee injury, lost opportunity to play in the NFL, and lost educational opportunity).  As a general rule, damages for lost opportunity, regardless of whether the lost opportunity arises from personal injuries or injuries to business or property, as lost opportunity is too speculative to confer a plaintiff standing to assert a RICO claim.  *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d at 523; *Zilbert*, 2012 WL 1950144, at *3.

and difficult to quantify. *Scheppegrell v. Hicks*, No. CV 15-5794, 2016 WL 3020884, at *4 (E.D. La. May 26, 2016).

As evidenced by the Amended Complaint and Case Statement, Plaintiffs' damages arise from physical, emotional, and economic injuries related to the incidents of sexual misconduct perpetrated by third parties who are not parties to this lawsuit. Therefore, under clearly established precedent, Plaintiffs' injuries fail to confer standing to assert LRA claims against Alleva and their claims should be dismissed.

**E.  Plaintiffs Fail to Allege any Legally Cognizable Enterprise.**

An "enterprise" must be an entity separate from the pattern of activity in which it allegedly engages. *Sandifer*, 249 So.3d at 156; *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).[132] Allegations that an enterprise is created by the racketeering activity, itself, is not sufficient to plead that an enterprise is separate and apart from the pattern of racketeering activity for purposes of stating a cognizable RICO/LRA claim. *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015).

Plaintiffs fail to differentiate the alleged "pattern of racketeering activity" from the purported "association-in-fact" enterprise.[133] Plaintiffs allege the enterprise was created by the racketeering activity consisting of predicate acts of public intimidation and retaliation, intimidating or injuring an impending witness, injuring public records, filing or maintaining false records, money laundering, or corrupt influencing.[134] Plaintiffs further allege the predicate acts were

---

[132] The plaintiff alleging RICO violations must do more than allege a legal entity committed predicate acts through its agent or agents during the course of its business. *Elliott*, 867 F.2d at 881; *See also Atkinson v. Anadarko Bank & Tr. Co.*, 808 F.2d 438, 441 (5th Cir. 1987) (finding a bank, its holding company, and three of the bank's employees were not sufficient to create an enterprise when the alleged racketeering activity involved the regular activities of the bank).
[133] Rec. Doc. 103, at p. 60, § 7.
[134] Rec. Doc. 22, at p. 139, ¶ 568.

associated with "… operating a state university with a competitive athletics program and athletics booster organization."[135]  Claiming that the predicate acts were committed during the operation of Defendants' business does not sufficiently allege a RICO/racketeering claim as there is no distinction between the RICO person and the enterprise.  *Whelan*, 319 F.3d at 230.  Since Plaintiffs' have failed to distinguish the "enterprise" from the "pattern of racketeering activity," they have failed to satisfy the requirements to plead a claim under the LRA.

### F. Plaintiffs Cannot Show the Alleged Acts were Related or Posed a Threat of Continued Racketeering Activity.

Plaintiffs cannot establish a racketeering claim against Alleva because they will not be able to demonstrate a "pattern of racketeering activity" as required by the LRA.  *Meadaa v. K.A.P. Enterprises*, No. CIV.A. 09-1211, 2014 WL 6801636, at *6 (W.D. La. Dec. 1, 2014).  To show a pattern of racketeering activity, Plaintiffs must be able to show the relatedness between Alleva's alleged criminal (predicate) acts and a threat of continued racketeering activity.  *Id.*  Indeed, relatedness and continuity have been called the critical features of a pattern of racketeering activity. *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2901("RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff…must prove predicates are related, and that they amount to or pose a threat of continued criminal activity."); *Heller Financial, Inc. v. Grammco Computer Sales, Inc.,* 71 F.3d 518, 524 (5th Cir. 1996)("It is this factor of continuity plus relationship which combines to produce a pattern.").

Plaintiffs merely allege separate and independent incidents of alleged criminal conduct; thus, their allegations do not satisfy the relatedness and continuity requirements necessary to

---

[135] Rec. Doc. 103, at p. 60, § 8.

support a claim under the LRA.  Furthermore, LSU has made a concerted effort to remedy any alleged mishandling of reports of sexual assault; therefore, there is no threat of continuing racketeering activity.  *See Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer,* 90 F.3d 118, 122-123 (5th Cir.1996).

### G. Plaintiffs Fail to Allege the Required Predicate Acts to Support their RICO Claims.

Plaintiffs allege the Defendants engaged in the predicate acts of public intimidation and retaliation, intimidating or injuring an impending witness, injuring public records, filing or maintaining false records, money laundering, and corrupt influencing.[136]  For each of the alleged predicate acts, Plaintiffs are required to allege the requisite element of criminal intent even when pursuing civil RICO claims.  *Foster v. Fisher*, 53,205, p. 16 (La. App. 2 Cir. 2/5/20); 290 So.3d 1215, 1226, *reh'g denied* (Feb. 27, 2020), *writ denied*, 2020-00481 (La. 6/22/20); 297 So.3d 761. Plaintiffs fail to allege any affirmative *criminal* conduct on behalf of Alleva that indicates Alleva violated any of the alleged predicate acts.  Even taking Plaintiffs' allegations as true that Alleva allowed the predicate acts to occur, passive acquiescence is not enough to plead RICO claims. *Wang v. Ochsner Med. Ctr.-Kenner, L.L.C.*, No. CV 17-5134, 2017 WL 6055167, at *11 (E.D. La. Dec. 7, 2017).  For the reasons set for below, Plaintiffs' allegations against Alleva fall short of plausibly pleading Alleva's involvement in the alleged racketeering activity.

### 1. Public intimidation and retaliation in violation of La. R.S. 14:122.

Plaintiffs allege Alleva participated in the predicate act of public intimidation and retaliation.[137]  The crime of public intimidation requires a defendant to use violence, force,

---

[136] Rec. Doc. 22, at p. 139, ¶ 568; Rec. Doc. 103, at p. 55.  Alleva objects to Plaintiffs' attempt to add additional predicate acts in the Racketeering Case Statement.
[137] Rec. Doc. 103, at pp. 40-42.

extortionate, threats, or true threats on a public officer or employee to influence a course of conduct. La. R.S. 14:122. The U.S. Fifth Circuit has held that La. R.S. 14:122 is unconstitutionally overbroad insofar as it criminalizes "threats."[138]

Plaintiffs do not allege Alleva engaged any of the requisite criminal conduct on any employee of the Athletic Department to influence any public employee's conduct. Rather, Plaintiffs' merely contend Alleva took part in creating a culture that disincentivized public (LSU) employees from reporting allegations of sexual misconduct.[139] Exhibit A to the Amended Complaint shows Alleva requested that all Athletic Department employees use the proper channels for reporting Title IX complaints.[140] Thus, Plaintiffs' allegations in the Case Statement are expressly refuted by their own attachments/exhibits to the Amended Complaint. Accordingly, Plaintiffs have failed to plausibly plead that Alleva engaged in the predicate act of public intimidation and retaliation to support a claim under the LRA.

## 2. Intimidating or injuring an impending witness in violation of La. R.S. 14:129.1.

Plaintiffs allege Alleva participated in the predicate act of intimidating or injuring an impending witness.[141] The crime of intimidating or injuring an impending witness involves a defendant's use of force or threat of force against a witness with the intent to influence a witness' reporting of criminal conduct or testimony at a judicial proceeding. La. R.S. 14:129.1. Plaintiffs' do not make any allegations regarding any interactions between Alleva and the Plaintiffs.[142]

---

[138] *Seals v. McBee*, 898 F.3d 587, 600 (5th Cir. 2018), as revised (Aug. 9, 2018).
[139] Rec. Doc. 103, at p. 41.
[140] Rec. Doc. 22-1, at pp. 195-198 (Email from Alleva to all Athletics Staff dated June 8, 2016); Rec. Doc. 22-1, at pp. 199-200 (Alleva Memo to All Athletics Employees dated February 14, 2018).
[141] Rec. Doc. 103, at pp. 42-47.
[142] Rec. Doc. 103, at pp. 42-47.

Without any alleged interactions between the Plaintiffs and Alleva, it is not plausible that Alleva allegedly used or threatened to use force against Plaintiffs with the intent to influence their "reporting or criminal conduct or testimony."  Therefore, Plaintiffs' allegations as to this predicate act fail to satisfy the federal pleading requirements and the Court's LRA Order.

### 3.  Injuring public records in violation of La. R.S. 14:132.

Plaintiffs allege Alleva participated in the predicate act of injuring public records.[143]  The crime of injuring public records involves a defendant's intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record that is required to be kept by positive law.  La. R.S. 14:132.  Plaintiffs only allegations against Alleva for this predicate act is that he, along with other "high-ranking members" of the purported "enterprise," trained lower-ranking members to keep inadequate records.[144]  Moreover, Plaintiffs do not allege Alleva intentionally removed, mutilated, destroyed, altered, falsified, or concealed any document as to plausibly plead that he participated in the predicate act of injuring public records; thus, Plaintiffs have not sufficiently plead the predicate act of injuring public records.  To the extent Plaintiffs attempt to plead that public records were purportedly injured by Alleva because they contained allegedly fraudulent information, Plaintiffs must comply with the pleading requirements of Rule 9 and the Supreme Court's opinion in *Ashcroft v. Iqbal*, which they have not done.  556 U.S. at 687.

### 4.  Filing or maintaining false public records in violation of La. R.S. 14:133.

Plaintiffs allege Alleva participated in the predicate act of filing or maintaining false public records in violation of La. R.S. 14:133.[145]  The crime of filing or maintaining false records punishes

---

[143] Rec. Doc. 103, at pp. 47-50.
[144] Rec. Doc. 103, at p. 48.
[145] Rec. Doc. 22, at p. 139, ¶ 568; Rec. Doc. 22, at pp. 50-52.

individuals for filing or maintaining any forged, wrongfully altered, or document containing a false statement or representation of material fact. La. R.S. 14:133. Plaintiffs do not contend Alleva either created, filed, or maintained any public records that contained a misrepresentation of material fact or have been forged/altered.[146] To the extent Plaintiffs attempt to plead the alleged public records contained fraudulent information, Plaintiffs must comply with the pleading requirements of Rule 9 and the Supreme Court's opinion in *Ashcroft v. Iqbal,* which they have not done. 556 U.S. at 687. Therefore, Plaintiffs' allegations regarding Alleva's violation of La. R.S. 14:133 fail to satisfy the plausibility test.

### 5. Money Laundering in violation of La. R.S. 14:230.

Plaintiffs have also alleged that Alleva participated in the predicate act of money laundering in violation of La. R.S. 14:230.[147] However, Plaintiffs' Amended Complaint and Case Statement contain no allegations that could even remotely be construed to support a claim for of money laundering against Alleva. Although Plaintiffs assert Defendants received funds from third parties because of the success of LSU's football program in the Amended Complaint and in the Case Statement, they fail to allege how any such funds were "derived" from any criminal activity.[148] Plaintiffs further fail to allege that Alleva actually engaged in the predicate act of money laundering. Therefore, Plaintiffs' allegations are woefully inadequate to make a proper claim against Alleva for the predicate act of money laundering.

---

[146] Rec. Doc. 103, at pp. 51-52.
[147] Rec. Doc. 22, at p. 139, ¶ 568; Rec. Doc. 22, at pp. 53-55.
[148] Rec. Doc. 103, at pp. 53-55.

### 6.   Corrupt Influencing in violation of La. R.S. 14:120.

Plaintiffs attempt to expand their pleadings by adding another alleged predicate act of corrupt influencing to their Case Statement.  Specifically, Plaintiffs allege that Alleva "… made available the time and space of the Athletics Department to facilitate this Enterprise-sponsored training that benefited the Enterprise."[149]   First, Alleva objects to any expansion of Plaintiffs' allegations in the Amended Complaint without seeking leave of Court to file a second amended complaint.   Second, their expanded allegations fall short of satisfying the federal pleading requirements that Alleva engaged in a crime and had specific intent to influence any public official's conduct.  Thus, Plaintiffs fail to plausibly plead that Alleva engaged in the predicate act of corrupt influencing.

### H.   Plaintiffs Fail to Allege Alleva Invested Any Alleged Proceeds From a Pattern of Racketeering Activity to Support a Claim Under La. R.S. 15:1353(A).

The Louisiana Supreme Court has held that the prohibition of La. R.S. 15:1353(A) require more than the mere receipt of funds from racketeering activity; rather, it requires investment of those funds in property or in support of the operation of the enterprise.   *State v. Nine Sav. Accts.*, 553 So.2d at 825; *State v. Thibodeaux*, 20-91, p. 23 (La. App. 3 Cir. 3/17/21); 313 So.3d 445, 460, *reh'g denied* (Apr. 28, 2021), *writ denied*, 21-00751 (La. 10/5/21); __ So.3d ___, 2021 WL 4550943.   Plaintiffs' allegations against Alleva fail to plausibly assert any specific details of how he invested any money allegedly derived from a pattern of racketeering activity.   Plaintiffs merely claim Alleva used and invested funds created by the "enterprise" to operate and establish the enterprise through his control of the Athletics Department, without alleging how the money

---

[149] Rec. Doc. 103, at p. 56.

derived from the purported criminal activity was invested into the so-called "enterprise."[150]  These allegations are conclusory and mere recitations of the bare elements of Plaintiffs' alleged cause of action, which is insufficient under Rule 8 and Supreme Court precedent to state a plausible violation of the LRA.  *Ashcroft v. Iqbal*, 556 U.S. at 687.

## I.    Plaintiffs Fail to Allege How Alleva Controlled the So-Called "Enterprise."

Plaintiff's allegations regarding Alleva's purported interest and control of the so-called "enterprise" are wholly contrary to Plaintiffs' exhibits to the Amended Complaint and are insufficient to support a claim under La. R.S. 15:1353(B).  Plaintiffs allege Alleva had control of the enterprise by allowing TAF to fund inadequate Title IX training, paying LSU employees in a manner that influenced their reporting of sexual misconduct, allowing TAF to supply incentive-based compensation to LSU employees based on the athletic team's performance, and "… making available things of value to be used for the purpose of running the Enterprise."[151]  Plaintiffs' assertion that Alleva used his position as Athletic Director to "… stymie the creation of a compliant Title IX system at LSU…" is contradicted by the Husch Blackwell Report, which is attached to Plaintiffs' Amended Complaint.[152]  The Husch Blackwell Report demonstrates Alleva made numerous attempts to facilitate compliance with LSU's reporting policies by employees in the LSU Athletic Department.  In fact, Alleva specifically instructed Athletic Department employees to not self-investigate Title IX complaints.[153]

---

[150] Rec. Doc. 103, at p. 12, § F(i).

[151] Rec. Doc. 103, at pp. 12-13.

[152] Rec. Doc. 22-1, at pp. 195-198 (Email from Alleva to all Athletics Staff dated June 8, 2016); Rec. Doc. 22-1, at pp. 199-200 (Alleva Memo to All Athletics Employees dated February 14, 2018).

[153] Rec. Doc. 22-1, at pp. 195-198 (Email from Joe Alleva to all Athletics Staff dated June 8, 2016); Rec. Doc. 22-1, at pp. 199-200 (Joe Alleva Memo to All Athletics Employees dated February 14, 2018).

Plaintiffs have repeatedly failed to show how Alleva could "control" the purported enterprise while, at the same time, also instruct LSU employees to behave in a manner that is in direct conflict with the alleged purpose of the enterprise. Accordingly, Plaintiffs' allegations against Alleva under La. R.S. 15:1353(B) should be dismissed.

### J. Plaintiffs Fail to Plead a Claim for Violation of §1353(C).

For purposes of La. R.S. 15:1353(C), the alleged "enterprise" must be separate and distinct from the alleged RICO person, which is the defendant in a civil or criminal racketeering action. *Crowe v. Henry,* 43 F.2d 198, 204 (5th Cir. 1995). The "person-enterprise" distinction cannot be satisfied by alleging officers or employees of a corporation committed predicate acts in the course of its own business. *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 230 (5th Cir. 2003).[154]

According to Plaintiffs, the alleged "association-in-fact" enterprise consisted of LSU, TAF, and the individually named Defendants.[155] LSU, TAF, and the individual Defendants cannot be both the "RICO persons" and the alleged "enterprise." In addition, Plaintiffs allege "[e]ach member of the Enterprise is affiliated with or employed by LSU and TAF."[156] Under La. R.S. 15:1353(C), the defendant or RICO person must be "employed by or associated with" the ***enterprise***. Because Plaintiffs' Amended Complaint and Case Statement fail to properly identify an enterprise that is separate and distinct from the alleged RICO persons, i.e., the Defendants, and fail to allege the Defendants are affiliated with or employed by the "enterprise," their claims pursuant to La. R.S. 15:1353(C) should be dismissed.

---

[154] *See also Warnock v. State Farm Mut. Auto. Ins. Co.*, 833 F. Supp. 2d 604, 612 (S.D. Miss. 2011) (finding a law firm and its corporate client could not form a separate and distinct RICO enterprise).
[155] Rec. Doc. 103, at p. 58, § 6(i).
[156] Rec. Doc. 103, at p. 59.

**K. Plaintiffs' Fail to Plausibly Plead Alleva was Engaged in a Conspiracy to Violate the LRA.**

To sufficiently plead Alleva conspired to violate the LRA, Plaintiffs must allege he agreed with one or more persons to violate the substantive provisions of the LRA and agreed with the overall objective of the racketeering activity. *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015). Simply alleging an agreement existed is not sufficient to properly plead an actionable conspiracy claim under La. R.S. 15:1353(D). *Martin v. Magee*, No. CIV.A. 10-2786, 2011 WL 2413473, at *8-9 (E.D. La. June 10, 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544).

Plaintiffs' claim that Alleva conspired with the other Defendants likewise fails because Plaintiffs cannot establish an actionable claim under La. R.S. 15:1353(D) if they have not properly plead a violation of La. R.S. 15:1353(A)-(C). *Id.* Moreover, any alleged acts that Plaintiffs claim were done in furtherance of the conspiracy must also violate the LRA to be actionable; that is, such acts must be "independently wrongful" under the LRA. *Beck v. Prupis*, 529 U.S. 494, 505 (2000).[157] Because Plaintiffs' have failed to sufficiently plead violations of the LRA, their claims against Alleva under La. R.S. 15:1353(D) should be dismissed.

**L. Plaintiffs' Should Not be Given an Opportunity to Amend.**

Plaintiffs should not be allowed the opportunity to amend their Amended Complaint.[158] *Price*, 138 F.3d at 608. In *Price*, the court reasoned that in the context of RICO claims, the plaintiff

---

[157] To state a cause of action for RICO conspiracy, a plaintiff must sufficiently allege his or her injuries were caused by a predicate act. Furthermore, to the extent Plaintiffs attempt to plead that Alleva was negligent, civil conspiracy cannot be premised on negligence. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 526 (5th Cir. 2016).

[158] While normally federal courts give a plaintiff an opportunity to amend his or her complaint to state a cause of action upon which relief may be granted, the Fifth Circuit has held this rule does not apply with as much force when plaintiffs are alleging RICO claims against the defendants. *Price*, 138 F.3d at 608.

has multiple opportunities to articulate alleged facts and damages that are recoverable under RICO in the complaint, RICO case statement, and any opposition to a motion to dismiss; therefore, allowing the plaintiff another opportunity to attempt to state a cognizable claim would subject the defendant to further cost of litigation. *Id.* The Plaintiffs' have filed an Original and Amended Complaint, a Case Statement, and will presumably file opposition to the instant Motion to Dismiss. Therefore, if this Motion to Dismiss is granted, Plaintiffs' claims should be dismissed, with prejudice, without the opportunity to amend their Complaint. *Id.*

## VI. STATE LAW TORT CLAIMS

In addition to the federal claims previously discussed, Plaintiffs have alleged several claims based on state law causes of action against Alleva. Plaintiffs Amended Complaint alleges negligence,[159] negligent supervision,[160] negligent infliction of emotional distress,[161] intentional infliction of emotional distress,[162] civil conspiracy,[163] and violations of the Louisiana Racketeering Act, La. R.S. 15:1351, *et seq.*,[164] and unjust enrichment.[165] For the reasons discussed below, Plaintiffs' state law claims against Alleva should be dismissed, with prejudice.

### A. Plaintiffs Fail to Make Specific Allegations Against Alleva on the Tort Claims.

Plaintiffs' claims for negligent infliction of emotional distress and intentional infliction of emotional distress fail at the pleading stage as Plaintiffs' fail to allege extreme and outrageous

---

[159] Rec. Doc. 22, at pp. 116-119, ¶¶ 479-488.
[160] Rec. Doc. 22, at pp. 119-121, ¶¶ 489-496.
[161] Rec. Doc. 22, at pp. 121-122, ¶¶ 497-503.
[162] Rec. Doc. 22, at pp. 122-123, ¶¶ 504-509.
[163] Rec. Doc. 22, at pp. 127-129, ¶¶ 529-534.
[164] Rec. Doc. 22, at pp. 136-141, ¶¶ 553-580.
[165] Rec. Doc. 22, at pp. 141-142, ¶¶ 581-587.

conduct on behalf of Alleva, which is a required element of each claim.[166]  *Holden*, 2020 WL 6544174, at *3.  Extreme and outrageous conduct is a high threshold that cannot be plead generally. *Id.* at *4 (citing *Nicholas v. Allstate Ins. Co.*, 1999-2522 (La. 8/31/00); 765 So.2d 1017, 1028)).[167] Plaintiffs' Amended Complaint fails to make any allegations that Alleva engaged in extreme and outrageous conduct toward the Plaintiffs or intended to cause them severe emotional distress; thus, Plaintiffs have failed to state a claim against Alleva for intentional infliction of emotional distress or negligent infliction of emotional distress.

Likewise, Plaintiffs' claim for unjust enrichment also fails because Plaintiffs cannot have a cause of action for unjust enrichment under Louisiana law if there are *any* other available remedies at law.  *Walters v. MedSouth Rec. Mgmt.*, *LLC*, 2010-0353, p. 244 (La. 6/4/10); 38 So.3d 243, 244.[168]  Even pleading another potential cause of action, even if that action is barred by the limitations period or immunity, defeats the Plaintiffs' claim for unjust enrichment.  *Id.*  Therefore, based on their own Amended Complaint and the allegations contained therein, Plaintiffs' claim for unjust enrichment must be dismissed.[169]

Since Alleva's defenses to the state law tort claims apply to all of Plaintiffs' remaining claims, Alleva will address his defenses to these claims together.[170]

---

[166] *Pelitire*, 270 So.3d at 829 (finding the plaintiff must meet the heavy burden of proving outrageous conduct by the defendant to support a claim for negligent infliction of emotional distress.); *White*, 585 So.2d at 1209 (outrageous conduct is a requiring element of a claim for intentional infliction of emotional distress).

[167] Insults, indignities, threats, annoyances, petty oppressions, and other trivialities do not meet the standard for extreme and outrageous conduct.  *Holden*, 2020 WL 6544174 at *4.

[168] In *Walters*, the Louisiana Supreme Court found that the plaintiff's allegations of "negligent and tortious conduct" gave rise to a delictual action, thus, precluded a claim for unjust enrichment.  38 So.3d at 244.  It did not matter if the plaintiff's potential delictual action had already prescribed.  *Id.*

[169] Alleva does not concede that Plaintiffs' have properly plead any of their claims against Alleva, but failure to properly pursue another availability does not matter when determining whether Plaintiffs have a claim for unjust enrichment.  *Walters*, 38 So.3d at 244.

[170] A claim for civil conspiracy is not actionable without a separate underlying tort claim.  *Ross v. Conoco, Inc.*, 02-0299, pp. 8-9 (La. 10/15/02) 828 So.2d 546, 552.

**B. To the Extent Plaintiffs Sufficiently Allege Tort Claims Against Alleva in his Official and Individual Capacity, They are Barred by Sovereign Immunity, Discretionary Immunity pursuant to La. R.S. 9:2798.1 and/or Have Prescribed.**

**1. Sovereign Immunity Bars Plaintiffs' State Law Tort Claims Against Alleva in His Official Capacity.**

To the extent Plaintiffs attempt to plead tort claims against Alleva in his official capacity, those claims are barred by sovereign immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *Montgomery-Smith v. Louisiana Dep't of Health & Hosps.*, 299 F. Supp. 3d 790, 808 (E.D. La. 2018), *aff'd sub nom.*, *Montgomery-Smith v. George*, 810 F. App'x 252 (5th Cir. 2020). Therefore, Plaintiffs' claims of negligence, negligent supervision, negligent infliction of emotional distress, intentional infliction of emotional distress, civil conspiracy, and unjust enrichment against Alleva in his official capacity should be dismissed.

**2. Discretionary Immunity Bars the State Law Tort Claims Against Alleva.**

Alleva, as an official of a public university, enjoys tort immunity from claims arising under Louisiana law for the exercise or performance of his duties as Athletic Director of LSU. La. R.S. 9:2798.1(B). Under the discretionary function doctrine, as outlined in La. R.S. 9:2798.1, governmental decision makers exercising discretionary functions are immune from suit to avoid chilling the legislative discretion in policy formation by imposing tort liability for discretionary decisions. *Sarasino v. State Through Dep't of Pub. Safety & Corr.*, 16-408, p. 7 (La. App. 5 Cir. 3/15/17); 215 So.3d 923, 928.

In *Fowler v. Roberts,* 556 So.2d 1, 15 (La. 1989), the Louisiana Supreme Court adopted the two-step test enunciated in *Berkovitz v. U.S.,* 486 U.S. 531 (1988) for determining whether the discretionary function exception applies in specific fact situations. *Wilson v. Davis*, 07-1929, p. 7 (La. App. 1st Cir. 05/28/08); 991 So.2d 1052, 1058. The first step is for the court to determine

52

whether a government employee had an element of choice.  *Wilson,* 991 So.2d at 1058.  The second step is for the court to evaluate whether the discretion is the kind shielded by the discretionary function exception, that is, one grounded in social, economic or political policy.  *Id.*

To the extent Plaintiffs' tort claims are based on Alleva's position as Athletic Director of LSU, any decisions Alleva made regarding the Athletic Department's handling of Title IX claims and supervision of employees of the Athletic Department, are subject to the doctrine of discretionary immunity.  Plaintiffs fail to make any specific allegations as to Alleva's interaction with any of the Plaintiffs; thus, to the extent Plaintiffs' claims against Alleva are purely based on his position as Athletic Director, they are barred by discretionary immunity pursuant to La. R.S. 9:2798.1.

### 3.  All of Plaintiffs' Tort Claims Are Subject to a One-Year Prescriptive Period Which Lapsed Prior to the Filing of the Original Complaint.

Plaintiffs' state law tort claims against Alleva are prescribed.  The prescriptive period for tort actions begins to run from the date the injury was sustained. La. C.C. art. 3492.  There is no requirement the quantum of damages be certain, or that the damage be fully incurred before the prescriptive period on Plaintiffs' claims began to run.  *Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992).  In fact, prescription began to run on Plaintiffs' claims when they had sufficient information to call for an inquiry about their claims, not from the time they learned of facts or evidence sufficient to prove their claims.  *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 388–89 (5th Cir. 2021).  Plaintiffs are not entitled to wait to file a lawsuit until they are certain of who and what caused their injuries.  *Id.* at 392.  Furthermore, Plaintiffs' claims are prescribed on the face of the Amended Complaint; therefore, they have the burden to prove their claims against Alleva are not prescribed.  *Id.* at 388–89.

53

Plaintiffs, Richardson, Robertson, Brennan, Owens, Lewis, and Johnson, allege in the Amended Complaint that they did not feel as if they received fair or appropriate support or resources from LSU.[171]  Plaintiffs, Robertson, Brennan, Owens, and Lewis, either left LSU because of the alleged lack of support they received from LSU or were aware of their potential claims well before one (1) year prior to filing the Original Complaint.[172]  Taking the Plaintiffs' allegations as true, Plaintiffs  had sufficient knowledge their complaints were not being handled correctly by  LSU to trigger the running of prescription on their state law tort claims at the latest from the date they left LSU or notified the Southeastern Conference about the handling of the Title IX investigation.  Plaintiff, Richardson, found out  there would be no action against Sharon Lewis ("Lewis") after the Title IX investigation into her  complaints against John Doe and John Coe on or around November 2018, which would have started the running of the prescriptive period for her tort claims against Alleva.[173]  The claims of Plaintiff, Johnson, arise out of alleged verbal abuse by one or more of LSU's tennis coaches.[174]  The prescriptive period for Johnson's state law tort claims began to run from the time she suffered the alleged verbal abuse, and at the very latest when

---

[171] Rec. Doc. 22, at pp. 31 (¶ 133), 34 (¶¶ 145-153).  Plaintiff Richardson found out that Sharon Lewis would not receive any discipline or sanction from LSU regarding her handling of complaints against John Doe and John Coe on or around November 18, 2018.  Rec. Doc. 22, at p. 40, ¶ 174.  Plaintiff Robertson withdrew from LSU in September 2017 because of alleged issues caused by sexual misconduct of another student and for the alleged failure of LSU to provide appropriate support and resources.  Rec. Doc. 22, at p. 40, ¶ 174.  Plaintiff Robertson withdrew from LSU in September 2017 because of alleged issues caused by sexual misconduct of another student and for the alleged failure of LSU to provide appropriate support and resources.  Rec. Doc. 22, at p. 43, ¶¶ 184-185.  Plaintiff Brennan left LSU in the fall of 2016 because the alleged lack of support from Athletic Department.  Rec. Doc. 22, at p. 46, ¶ 200. Plaintiff Owens left LSU in March 2017 because of the allege lack of support, resources, accommodations, or interim measures by LSU to ensure she could finish her degree.  Rec. Doc. 22, at p. 64, ¶ 278.  Plaintiff Lewis' father sent a letter to the Southeastern Conference on October 18, 2018 informing them that LSU had failed to take appropriate action regarding Plaintiff Lewis' complaints of sexual misconduct.  Rec. Doc. 22, at p. 69, ¶ 299.  Plaintiff Johnson graduated from LSU in the spring of 2019.  Plaintiff Johnson's alleges verbal abuse by on of the LSU tennis coaches and does not allege anything that would toll the limitations period for failure of the requisite knowledge of her claim.
[172] *Supra* at nn. 95-99.
[173] Rec. Doc. 22, at pp. 34-35, ¶¶ 145-153.
[174] Rec. Doc. 22, at pp. 65-69, ¶¶ 283-301.

54

she reported the alleged abuse and no action was taken to remedy her complaints. *See Aguillard v. Louisiana Coll.*, 824 F. App'x 248, 252 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1079, 208 L.Ed. 2d 536 (2021).

Plaintiffs cannot satisfy their burden of proving their state law tort claims against Alleva are not prescribed because the prescription began to run more than one (1) year before the Original Complaint was filed. Accordingly, Plaintiffs' state law tort claims against Alleva should be dismissed, with prejudice.

## VII. CONCLUSION

For the reasons set forth above, Joseph "Joe" Alleva prays for the following relief:

1. Dismissal of Plaintiffs' 20 U.S.C. §§ 1961, et seq. (Title IX) claims against Alleva in his official and individual capacity;

2. Dismissal of Plaintiffs' First Amendment Retaliation claims brought pursuant to 42 U.S.C. § 1983 against Alleva in his official and individual capacity;

3. Dismissal of Plaintiffs' denial of Equal Protection claims brought pursuant to 42 U.S.C. § 1983 against Alleva in his official and individual capacity;

4. Dismissal of Plaintiffs' Denial of Procedural Due Process claims brought pursuant to 42 U.S.C. § 1983 against Alleva in his official and individual capacity;

5. Dismissal of Plaintiffs' First Amendment Retaliation claims brought pursuant to 42 U.S.C. § 1983 against Alleva in his official and individual capacity;

6. Dismissal of Plaintiffs' Conspiracy to Interfere with Plaintiffs' rights of Free Speech, Due Process, and Equal Protection brought to 42 U.S.C. § 1985 against Alleva in his official and individual capacity

7. Dismissal of Plaintiffs' Conspiracy to Interfere with Plaintiffs' rights of Free Speech, Due Process, and Equal Protection brought to 42 U.S.C. § 1986 against Alleva in his official and individual capacity;

8. Dismissal of Plaintiffs' negligence claims against Alleva in his official and individual capacity;

9. Dismissal of Plaintiffs' negligent supervision claims against Alleva in his official and individual capacity;

10. Dismissal of Plaintiffs' negligent infliction of emotional distress claims against Alleva in his official and individual capacity;

11. Dismissal of Plaintiffs' intentional infliction of emotional distress claims against Alleva in his official and individual capacity;

12. Dismissal of Plaintiffs' civil conspiracy claims against Alleva in his official and individual capacity;

13. Dismissal of Plaintiffs' Louisiana Racketeering Act claims against Alleva in his official and individual capacity; and

14. Plaintiffs' claims be dismissed with prejudice without the opportunity to amend.

Respectfully submitted:

**JEFF LANDRY**
**ATTORNEY GENERAL**

*/s/ Seth F. Lawrence*
**MICHAEL A. PATTERSON** (#10373)
**S. BROOKE BARNETT-BERNAL** (#31031)-T.A.
**SETH F. LAWRENCE** (#38316)
*Special Assistant Attorneys General*
LONG LAW FIRM, L.L.P.
1800 City Farm Drive, Building 6
Baton Rouge, Louisiana 70806
Telephone:    (225) 922-5110
Facsimile:    (225) 922-5105
map@longlaw.com
bbb@longlaw.com
sfl@longlaw.com
*Attorneys for Joseph "Joe" Alleva*

56

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing *Memorandum in Support of Joseph Alleva's Motion to Dismiss* was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, on this 8th day of November, 2021.

*/s/ Seth F. Lawrence*
Seth F. Lawrence
