UNITED STATES DISCTRIC COURT
MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                    CIVIL ACTION NO. 3:21-CV-00242

VERSUS                                JUDGE VITTER

LOUISIANA STATE UNIVSERITY, ET AL.    MAGISTRATE JUDGE JOHNSON

---

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANT,
KEAVA SOIL-CORMIER, UNDER RULE 12(b)(6)**

---

MAY IT PLEASE THE COURT:

Defendant, Keava Soil-Cormier (hereinafter "Keava"), submits the following memorandum in support of her Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### I.    Introduction and Background

Plaintiffs in this suit are a number of women who claim damages arising from alleged sexual misconduct and discrimination while enrolled as students at LSU. Some of them claim to have suffered these harms at the hands of certain LSU football players during their tenure as student workers in the LSU Athletic Department or as student athletes. All of the plaintiffs claim to be representatives of a larger class of women similarly injured at LSU. The lawsuit names nearly twenty defendants, ranging from the LSU Board of Supervisors, Coach Orgeron, the Tiger Athletic Foundation, and several individuals employed within the LSU Athletic Department. The lawsuit relates alleged instances of sexual misconduct or discrimination committed against each of the ten named Plaintiffs, and it also attaches an investigative report concerning LSU's ostensible violations of Title IX, "the Husch Blackwell Report."

The Original Complaint was filed on April 26, 2021, bringing eighteen distinct claims against the several defendants.[1] On June 25, 2021, Plaintiffs filed an Amended Complaint, adding more

---

[1]    R. Doc. 1.

plaintiffs, factual allegations, and two additional "counts."[2] On September 7, 2021, Plaintiffs filed a Notice of Dismissal of Claim XVII, removing the claims concerning violation of the federal RICO Act.[3] On October 18, 2021, Plaintiffs filed a "Louisiana Racketeering Act Case Statement" pursuant to the Court's Order, ostensibly stating the racketeering claims with additional specificity.[4]

## II.    Factual allegations involving Keava

Only one plaintiff, Calise Richardson, makes claims against Keava. According to the Amended Complaint, Keava is an Associate Director of Recruiting Operations in the LSU Athletic Department, and prior to holding that position, she was a Recruiting Analyst in the Athletic Department.[5] According to the Amended Complaint, Calise Richardson was a student worker in the Athletic Department beginning in her freshman year in 2014, through her termination as a student worker in 2017,[6] and Keava was one of Richardson's supervisors.[7]

Richardson alleges that she and LSU football player "John Coe" were involved in a relationship in 2016, during which Coe became verbally and physically abusive. According to the Amended Complaint, in October 2016, an incident occurred at a bar after a football game in which Coe groped Richardson, Richardson became angry, and Coe shoved her to the ground.[8] Coe's teammates then had to restrain him from further attacking Richardson.[9] The Amended Complaint claims that Richardson received a call from Sharon Lewis, Richardson's "other direct supervisor," the next day asking why Richardson had thrown a drink at Coe at the bar the previous night.

---

[2]       R.Doc. 22.
[3]       R.Doc. 67.
[4]       R.Doc. 103.
[5]       R.Doc. 22, paragraph 41.
[6]       R.Doc. 22, paragraph 110.
[7]       R.Doc. 22, paragraph 137.
[8]       R.Doc. 22, paragraph 123.
[9]       R.Doc. 22, paragraph 124.

Richardson allegedly told Sharon Lewis that Coe had physically attacked her, to which Lewis allegedly responded by requesting that Richardson have a meeting with Coe, instead of reporting the act of dating violence.[10] Richardson refused to meet with Coe but agreed to meet with Sharon Lewis and Keava instead. When they met later that week, Richardson claims that she disclosed Coe's act of dating violence, and she claims that Sharon Lewis and Keava minimized her experience, laughed at her, and made her feel as if she could be responsible for ruining Coe's football career.[11] According to the Complaint, this humiliated and terrified Richardson. She claims that the incident was not reported to the Title IX office, no one told her that she could report the incident to the Title IX office, and she faced retaliation at work by not being scheduled to work at events in which Coe participated.[12]

The Amended Complaint relates an incident involving Richardson and an additional football player, "John Doe," in the fall of 2016. Richardson claims that Doe attempted to rape her one morning after he slept a night at her apartment because Doe had been kicked out of his apartment. When Richardson repeatedly told Doe to stop, he became angry and told her that he would ruin her life by getting her fired.[13] The Amended Complaint alleges that Richardson told Keava about the incident the next day, but Keava responded by asking her why she let Doe in her apartment if she didn't want to have sex with him. Keava allegedly asked Richardson about what happened between her and Doe in front of other student employees, which led to rumors being spread about Richardson. Richardson claims that Keava did not report the incident to the Title IX office, and at that point the Athletic Department had received at least two other rape accusations against Doe.[14]

---

[10]     R.Doc. 22, paragraphs 125-126.
[11]     R.Doc. 22, paragraphs 127-30.
[12]     R.Doc. 22, paragraphs 131-133.
[13]     R.Doc. 22, paragraphs 134-136.
[14]     R.Doc. 22, paragraph 137.

The last allegations in the Amended Complaint concerning Keava involve Richardson's termination from her student job in the football recruiting department. Richardson claims that she received an email in the spring of 2017 while she was studying abroad, notifying her that she was being terminated. When she returned from studying abroad, she met with Keava and an assistant to the head coaches, Ya'el Lofton, about her termination. According to Richardson, the reasons given for her termination were "clearly pretextual."[15] Thereafter, Richardson claims that in the fall of 2018 she was denied a job as a student athlete tutor in retaliation for reporting abuse by Coe and Doe, but she was given pretextual reasons for being denied the job. She claims that two other student jobs in the football department similarly fell through in the fall of 2018.[16]

Thereafter, Richardson asserts that she did obtain another student position in the LSU Athletic Department, working for Life Skills Manager Brenton Sumler.[17] She claims that she reported her abuse by John Coe to Sumler on or around October 1, 2018.[18] Sumler took her to the LSU Cares office, where Richardson again reported her alleged abuse, and a Title IX investigation was opened.[19] The investigation was conducted in October and November 2018, and a final investigative report was issued in November 2018.[20] Richardson claims that she then met with the lead Title IX investigator to review the report, and she became extremely upset to learn that the investigation did not result in sanctions against her supervisor, Sharon Lewis, for failure to report her abuse, or against John Coe for the actual abuse.[21]

---

[15]     R. Doc. 22, paragraphs 141-142.
[16]     R. Doc. 22, paragraphs 143-144.
[17]     R. Doc. 22, paragraph 147.
[18]     R. Doc. 22, paragraph 147.
[19]     R. Doc. 22, paragraphs 148-149.
[20]     R. Doc. 22, paragraphs 149-151.
[21]     R. Doc. 22, paragraphs 151-152.

### III.   Claims against Keava

Keava is named as a defendant in both her individual and official capacities.[22] She is included, in her official capacity, in the category of defendants identified as "the LSU Defendants."[23] Though the Amended Complaint contains twenty separate "counts," or claims, not all involve all defendants. Instead, each "count" is directed at specifically identified defendants. The claims in the Amended Complaint which include Keava as a defendant are as follows: (1) Count V – Violation of Title IX, Retaliation by Withholding Protection Otherwise Conferred by Title IX; (2) Count VI – First Amendment Retaliation; (3) Count VII – Denial of Equal Protection; (4) Count VIII – Denial of Procedural Due Process; (5) Count IX – Conspiracy to Interfere with Civil Rights; (6) Count XII – Negligence; (7) Count XIII – Negligent Supervision; (8) Count XIV – Negligent Infliction of Emotional Distress; (9) Count XV – Intentional Infliction of Emotional Distress; (10) Count XVII – Civil Conspiracy; (11) Count XIX – Civil Violations of the Louisiana Racketeering Act; and (12) Count XX – Enrichment Without Cause.

For the reasons outlined herein, all of these claims against Keava should be dismissed under Rule 12(b)(6) for failure to state a claim for which relief may be granted. Moreover, Keava adopts and incorporates by reference all arguments presented by the other named individual defendants in their Motions to Dismiss, to the extent they are not inconsistent herewith.

### IV.   Law and Argument

#### A.  *Applicable legal standards*

A motion to dismiss under Rule 12(b)(6) is appropriate when the Complaint fails to state a legally cognizable claim.[24] When deciding a Rule 12(b)(6) motion to dismiss, the court must accept

---

[22]    R.Doc. 22, paragraph 41.
[23]    R.Doc. 22, paragraph 49.
[24]    *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[25] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[26] A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] A complaint is insufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."[28] Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[29]

Although prescription is an affirmative defense, a Rule 12(b)(6) motion to dismiss may be granted on the basis of prescription if the untimeliness appears from the face of the complaint.[30] Therefore, "[a] Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense."[31] Generally, the party urging prescription bears the burden of proof on the issue.[32] "However, if the petition is prescribed on its face, then the burden of proof shifts to the Plaintiff to negate the presumption by establishing a suspension or interruption."[33]

Under Louisiana law, prescription begins to run once there has been a determination that damage was sustained.[34] The determination is not one on the merits, but it is simply a determination

---

[25]    *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).
[26]    *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 796 (5th Cir. 2011).
[27]    *Id*.
[28]    *Coleman v. Sweetin*, 745 F.3d 756, 764 (5th Cir. 2014).
[29]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[30]    *House of Raeford Farms of Louisiana LLC v. Poole*, 2021 WL 1081837 (W.D. La. 3/18/21), citing *Potier v. JBS Liberty Sec., Inc.*, 2014 WL 5449726 (W.D. La. 10/24/14).
[31]    *Id*., citing *Mann v. Adams Realty Co*., 556 F.2d 288, 293 (5th Cir. 1977).
[32]    *Taranto v. La. Citizens Prop. Ins. Corp*., 2010-0105 (La. 3/15/11); 62 So. 3d 721, 726.
[33]    *Id*.
[34]    *Landry v. Blaise, Inc*., 99–2617, p. 4, (La.App. 4 Cir. 8/2/00), 774 So.2d 187, 190.

that plaintiff sustained damage sufficient to support accrual of a cause of action against the defendants.[35] Prescription begins to run against a claimant when he obtains actual or constructive knowledge of facts indicating a cause of action.[36] Constructive knowledge of facts indicating a cause of action is whatever notice is enough to excite attention and put the injured party on guard and call for further inquiry.[37] It also includes knowledge or notice of everything to which a reasonable inquiry may lead.[38] Constructive knowledge is sufficient to commence the running of prescription.[39]

### B.  The Amended Complaint cannot state a claim against Keava for violation of Title IX.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…"[40] The Title IX regulations related to employment further mandate, in pertinent part, "recipient shall make all employment decisions in any education program or activity operated by such recipient in a nondiscriminatory manner and shall not limit, segregate, or classify applicants or employees in any way which could adversely affect any applicant's or employee's employment opportunities or status because of sex."[41]

"Recipient" as that term is used in Title IX, means "any State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any public or private agency, institution, or organization, or other entity, or any person, to whom Federal financial assistance is

---

[35]    *Id.*

[36]    *Barbe v. American Sugar Refining, Inc.*, 11–0544, p. 12 (La.App. 4 Cir. 12/14/11), 83 So.3d 75, writ denied, 12–0124, (La.3/23/12), 85 So.3d 92 (La.2012) (citing *Campo v. Correa*, 2001–2707, (La.6/21/02), 828 So.2d 502).

[37]    *Id.*

[38]    *Id.*

[39]    *Barbe*, 11–0544, p. 13, 83 So.3d 75.

[40]    20 U.S.C. § 1681(a).

[41]    34 C.F.R. § 106.51.

extended directly or through another recipient and which operates an education program or activity which receives such assistance, including any subunit, successor, assignee, or transferee thereof."[42] Title IX regulations make it clear that the prohibitions against discrimination on the basis of sex in employment apply exclusively to recipients of Federal financial assistance.[43]

In *Fitzgerald v. Barnstable Sch. Comm.*, the Supreme Court held that while Title IX reaches institutions and programs that receive federal funds, it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.[44] Title IX was enacted to eradicate gender discrimination in programs that receive federal funding.[45] In essence, the recipient of the federal funds agrees not to discriminate and the Government, in turn, provides the federal funding.[46] Thus, claims of Title IX discrimination may only be brought against the federal funds recipient, not its employees.[47]

In the instant suit, Keava is alleged to be an employee of LSU. As such, Keava is not a "recipient" as that term is used in 34 C.F.R. § 106.2 and thus cannot liable for discrimination or retaliation under Title IX. Although Plaintiffs may have the right to bring a claim for Title IX discrimination and/or retaliation, it is not appropriate to bring this action against Keava, a university employee.

Even if Title IX authorized a suit against a university employee, the claims against Keava under Title IX are time-barred. Title IX does not provide a statute of limitations period.[48] When a federal cause of action does not specify an express statute of limitations, it is well-settled that courts should

---

[42] 34 C.F.R. § 106.2.
[43] 34 C.F.R. § 106.11.
[44] 555 U.S. 246, 257, 129 S. Ct. 788, 796, 172 L. Ed. 2d 582 (2009); *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577 (5th Cir. 2020).
[45] *Id.*
[46] *Id.*
[47] *Jones v. S. Univ.*, 834 F. App'x 919, 923 (5th Cir. 2020).
[48] 20 U.S.C. § 1681, et seq.

apply "the most closely analogous statute of limitations under state law."[49] The Fifth Circuit applies the state's statues of limitations for personal injury actions to Title IX claims.[50] In Louisiana, the prescriptive period for personal injury actions is one year.[51] A claim accrues when a plaintiff knows or has reason to know of the injury giving rise to the claim.[52]

In the instant suit, the latest events involving Keava were the termination of Richardson and the alleged meeting in which Richardson was given "clearly pretextual reasons" for her termination in 2017. At that point, Richardson was aware of the injury giving rise to her claim; with respect to the other facts allegedly involving Keava, those scenarios occurred before Richardson's termination in 2017. With respect to any claims pertaining to an allegedly flawed or inadequate Title IX investigation, the Amended Complaint makes it clear that Richardson was "extremely upset" at the results of the Title IX investigation of her claims concerning John Coe in November 2018. At that point she had sufficient facts to excite her attention, put her on guard, and call for further inquiry: she had constructive knowledge of her claims, which commenced the running of prescription. The instant suit was filed in April 2021, which was (at a minimum) two-and-a-half years after the point at which prescription began to run on the claims against Keava. Notwithstanding the fact that there can be no Title IX claims raised against Keava as a matter of law, the face of the Amended Complaint demonstrates that these claims are prescribed. All Title IX allegations against Keava should, therefore, be dismissed with prejudice under Rule 12(b)(6).

### C. The Amended Complaint fails to state a claim against Keava under Section 1983.

42 U.S.C.A 1983 authorizes an injured person to assert a claim for relief against a person who,

---

[49]     *Reed v. United Transp. Union*, <u>488 U.S. 319, 323</u> (1989).
[50]     *Sewell v. Monroe City Sch. Bd.*, <u>974 F.3d 577, 583</u> (5th Cir. 2020); *King-White v. Humble Indep. Sch. Dist.*, <u>803 F.3d 754, 759</u> (5th Cir. 2015).
[51]     LSA-C.C. 3492; *Sewell*, supra.
[52]     *Id.*

acting under color of state law, violated the claimant's federally protected rights. To state a Section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[53] In the instant suit, Plaintiffs name Keava as a defendant "in her official and personal capacity,"[54] and they bring claims against her under Section 1983 for alleged First Amendment retaliation, denial of equal protection under the Fourteenth Amendment, and denial of procedural due process under the Fourteenth Amendment. For the following reasons, the claims under Section 1983 against Keava should be dismissed under Rule 12(b)(6).

   1.  The Amended Complaint cannot state a claim against Keava in her official capacity.

A judgment in a Section 1983 lawsuit against an official in his official capacity imposes liability against the entity he represents.[55] Therefore, it is well-settled that a suit against a governmental official in his or her official capacity is simply another way of alleging governmental liability.[56] When the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in the Fifth Circuit have found it is appropriate to dismiss them.[57]

In the instant suit, Keava is sued as an individual defendant in her "official capacity" as an employee of LSU. However, the governmental entity of which Keava may be considered an "official" is the Board of Supervisors of Louisiana State University Agricultural and Mechanical College (the "Board"),[58] which is also a named defendant in this suit. Under established Fifth

---

[53]    *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013).

[54]    R.Doc. 22, paragraph 41.

[55]    *Marceaux v. Lafayette City-Parish Consol. Government,* 921 F.Supp.2d 605 (W.D. La. 2013).

[56]    *Id.*, citing *Howell v. Town of Ball*, No. 12–951, 2012 WL 3962387 (W.D.La. Sept. 4, 2012).

[57]    *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir.2001); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir.1996).

[58]    Louisiana law recognizes the existence of LSU but does not grant LSU the capacity to sue or be sued. Rather, the Board exercises all governance over the rights and property of LSU, and the Board, not LSU, is

Circuit precedent, then, the claims against Keava in her official capacity are redundant of the claims against the Board; the official-capacity claims against Keava cannot be maintained in this suit, and these claims should be dismissed with prejudice.

Moreover, notwithstanding the redundancy of these claims, they are also subject to dismissal under Eleventh Amendment immunity. The Eleventh Amendment bars actions in federal court against a state or state agency unless a state has consented to be sued or Congress has clearly and validly abrogated the immunity.[59] The State of Louisiana has not waived its immunity under Louisiana law: LSA-R.S. 13:5106(A) provides that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."[60] As noted above, the claims against Keava as a government agent named in her official capacities is "nothing more than a suit directly against [a] sovereign."[61] Therefore, the claims against Keava in her official capacity are barred by the Eleventh Amendment, and should be dismissed under Rule 12(b)(6).

2. The Amended Complaint fails to state a claim under Section 1983 against Keava because these claims are prescribed.

Courts considering claims under Section 1983 must borrow the relevant state's statute of limitations for personal injury actions.[62] Louisiana's relevant limitations period is one year.[63] The limitations period begins to run when the plaintiff becomes aware that she has suffered an injury or has sufficient information to know that she has been injured.[64] Moreover, "[a] plaintiff need not realize that a legal cause of action exists; [she] need only know the facts that would support a

---

empowered to sue and be sued. La. Const. Art. VIII § 7; LSA-R.S. 17:3351; *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 148 (5th Cir.1991).

[59]    *Pennhurst State Sch. & Hosp. v. Halderman*, 456 U.S. 89, 100 (1984).

[60]    LSA-R.S. 13:5106(A).

[61]    *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir. 2020).

[62]    *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018).

[63]    LSA-C.C. 3492.

[64]    *Redburn*, supra.

claim."[65] The one-year limitations period applies to claims brought under Section 1983 for First Amendment retaliation;[66] for denial of equal protection under the Fourteenth Amendment;[67] and for denial of due process under the Fourteenth Amendment.[68]

In the instant suit, Plaintiffs' First Amendment retaliation allegations pertaining to Keava are that she failed to seriously investigate and appropriately report allegations of sexual abuse and misconduct, and dismissed, laughed at, and shamed Richardson when she confided in Keava about her experience of sexual misconduct—essentially, disclosures of Title IX violations.[69] According to the Amended Complaint, these acts allegedly occurred in 2016. Though Plaintiffs contend that they were unable to know "that all Defendants intentionally reacted to disclosures of Title IX violations in a manner designed to deter any future disclosures" until the release of the Husch Blackwell Report in 2021,[70] that is not the standard for the commencement of the running of prescription. The law requires only that Richardson have been aware that she had suffered an injury or had sufficient information to know that she had been injured. Based on the Amended Complaint, Richardson was aware of her injury under these facts in 2016. At the very latest, Richardson was aware of what she perceived to be an inadequate result of the Title IX investigation concerning her claims against John Coe in November 2018, at which point she had constructive knowledge of these claims. Based on the face of the Amended Complaint, then, this claim is prescribed.

The Section 1983 claims for violation of the Fourteenth Amendment fare no better. The Amended Complaint alleges that, with respect to both the alleged denial of equal protection and the alleged denial of procedural due process, Plaintiffs were subjected to a hostile environment

---

[65]    *Piotrowski v. City of Houston*, 51 F.3d 512, 516 n.10 (5th Cir. 1995).
[66]    *Stringer v. Town of Jonesboro*, 986 F.3d 502 (5th Cir. 2021).
[67]    *Taylor v. Bunge Corporation*, 775 F.2d 617, 618 (5th Cir.1985).
[68]    *Jones v. Orleans Parish School Bd*., 688 F.2d 342 (5th Cir. 1982).
[69]    R.Doc. 22 paragraph 427.
[70]    R.Doc. 22 paragraph 429.

and their reports of sexual misconduct were not properly responded to or investigated.[71] However, with respect to Richardson, the Amended Complaint asserts that the latest of her reports of alleged misconduct occurred in 2016 – more than five years before the Amended Complaint was filed. Plaintiffs contend that they were not aware of the putative violations until the publication of the Husch Blackwell Report. However, the Amended Complaint points out that Richardson was made aware of the results of the Title IX investigation of her claims concerning John Coe in November 2018, and she was "extremely upset" with the results of the investigation. Again, at that point she had constructive knowledge of any perceived injustice arising out of the Title IX investigation. These claims, too, are prescribed on their face. Therefore, all claims against Keava under Section 1983 are prescribed and are subject to dismissal under Rule 12(b)(6).

3. The Amended Complaint fails to state a claim under Section 1983 against Keava because she is entitled to qualified immunity.

Qualified immunity is an affirmative defense which may be pleaded by a government employee in response to any Section 1983 claim. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[72] It "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law."[73] Courts will not deny immunity unless "existing precedent … placed the statutory or constitutional question beyond debate."[74] A plaintiff seeking to overcome qualified immunity bears the burden of showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[75]

---

[71] R.Doc. 22 paragraphs 436 and 445.
[72] *White v. Pauly*, 137 S.Ct. 548, 551, 196 L.Ed. 2d 463 (2017).
[73] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).
[74] *Id.*; *Whitley*, 726 F.3d at 638.
[75] *Id.*

"Clearly established law" must be "particularized to the facts of a case."[76] While this does not require a prior case "directly on point," "precedent must still put the underlying question beyond debate."[77] If a plaintiff fails to establish a violation of a clearly established constitutional right, the defendant is entitled to qualified immunity.[78]

To state a claim for First Amendment retaliation, a plaintiff must show (1) she was engaged in a constitutionally protected activity; (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct.[79] With respect to the second element, to demonstrate a showing of injury, a plaintiff must show that her exercise of free speech has been curtailed.[80] With respect to the claims against Keava, there is no legal support for the position that an alleged failure to report a Title IX complaint constitutes a violation of an individual's First Amendment rights. There is thus no clear violation of a constitutional right sufficient to overcome qualified immunity. Moreover, with respect to being able to prove the second prong of the First Amendment retaliation claim against Keava, the Amended Complaint fails to show how Richardson's exercise of free speech was curtailed: she did report her instances of alleged abuse under the facts alleged in the Amended Complaint. Absent any violation of a constitutional right, then, Keava is entitled to qualified immunity on this claim.

To state a claim of discrimination under the Fourteenth Amendment, a plaintiff must allege that (1) she received treatment different from that received by similarly situated individuals and (2) the unequal treatment stemmed from a discriminatory intent.[81] To establish the necessary

---

[76]    *Samples v. Vadzemnieks*, 900 F.3d 655, 662 (5th Cir. 2018).
[77]    *Id.* (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)).
[78]    *Id.*
[79]    *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016).
[80]    *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002).
[81]    *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015).

discriminatory intent, a plaintiff must show "that the decision maker singled out a particular group

for disparate treatment and selected his [or her] course of action at least in part for the purpose of

causing its adverse effect on an identifiable group."[82] Allegations of discriminatory intent that are

merely conclusory, without reference to specific facts, will not suffice to overcome a motion to

dismiss.[83] In the instant suit, there are no factual allegations demonstrating any intent on the part

of Keava to discriminate against Richardson because of her gender. There are no factual allegations

showing how Richardson's Title IX complaints were treated any differently than similarly situated

male Title IX complainants: these allegations fail to satisfy the most basic elements of this claim.

As with the First Amendment Claim, the claim against Keava under the Fourteenth Amendment

for denial of equal protection fails to show any violation of a constitutional right. Keava is entitled

to qualified immunity, and this claim must be dismissed.

To establish a procedural due process claim under the Fourteenth Amendment, a plaintiff must

show that (1) she was deprived of a life, liberty, or property interest protected by the Fourteenth

Amendment and (2) the administrative procedures attendant to the deprivation did not satisfy the

constitutional requirements of procedural due process.[84] In the instant suit, Richardson has failed

to allege that Keava's actions deprived her of a life, liberty, or property interest. The Amended

Complaint alleges that "certain Plaintiffs had no opportunity to be heard before being fraudulently

told not to disclose the sexual misconduct," and others "provided substantial evidence including

the identifies of several witnesses who were not contacted or interviewed in their Title IX

investigations."[85] The Amended Complaint also specifically details a no-contact directive against

---

[82] *Id.*
[83] *Id.*
[84] *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994).
[85] R.Doc. 22 paragraph 446.

Plaintiff Andries.[86] However, none of these allegations involve either Richardson or Keava. Simply put, the Amended Complaint fails to establish any violation of the Fourteenth Amendment with respect to Keava. In the absence of a violation of a clearly established constitutional right, then, Keava is entitled to qualified immunity for this claim as well.

Therefore, the Section 1983 claims against Keava in both her official and individual capacity fail as a matter of law. Notwithstanding the substantive impediments which these claims face, the Section 1983 claims also prescribed prior to the filing of the instant suit. These claims should thus be dismissed with prejudice under Rule 12(b)(6).

### D. The Amended Complaint fails to state a claim for Conspiracy to Interfere with Civil Rights.

The Amended Complaint avers that Defendants participated in a conspiracy to interfere with civil rights under 42 U.S.C.A. 1985 and 1986. Claims under Sections 1985 and 1986 are closely connected: Section 1986 provides a cause of action against one who neglects to prevent a known civil rights conspiracy; to state a Section 1986 claim, a plaintiff must allege the existence of a conspiracy under Section 1985.[87] A conspiracy under Section 1985 requires an allegation of four elements: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.[88] To demonstrate a "conspiracy" for the purposes of a Section 1985 claim, plaintiffs must allege facts to establish an agreement between all the various defendants to come together to deprive the plaintiffs of their right to equal

---

[86]    R.Doc. 22 paragraph 447.
[87]    *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir.1997)
[88]    *Hilliard v. Ferguson*, 30 F.3d 649, 652 (5th Cir.1994).

protection.[89] Moreover, there must be an actual deprivation of a constitutional right or privilege; absent a deprivation, a mere conspiracy to deprive is insufficient.[90]

In the instant suit, there are no allegations that Keava agreed with any of the other defendants to come together to deprive any of the plaintiffs of their constitutional rights. More importantly, though, as detailed above, the Amended Complaint cannot establish that Keava committed any actual deprival of a constitutional right or privilege under Section 1983. A claim for conspiracy to interfere with civil rights is a secondary claim based on an underlying civil rights violation. Because the Amended Complaint fails to state a claim against Keava for any civil rights violations, the secondary conspiracy claim necessarily fails. As a result, this claim should be dismissed with prejudice under Rule 12(b)(6).

### E. The Amended Complaint fails to state a claim against Keava in tort under Louisiana law.

Keava is included in the scope of a number of tort claims under Louisiana law which Plaintiffs bring against all Defendants: negligence under Civil Code Article 2315; negligent supervision; negligent infliction of emotional distress; intentional infliction of emotional distress; and civil conspiracy under Civil Code Article 2324. As detailed herein, all of these claims are subject to dismissal under Rule 12(b)(6) because they fail substantively or because they are prescribed.

1. The tort claims against Keava are prescribed.

Under Louisiana law, delictual actions are subject to a one-year prescriptive period.[91] This prescriptive period applies to general claims of negligence, as well as to claims of negligent

---

[89]     *Barber v. District of Columbia Gov't*, <u>394 F.Supp.3d 49, 66</u> (D.D.C. 2019).
[90]     *Kaplan v. Clear Lake City Water Authority,* <u>794 F.2d 1059</u> (5th Cir. 1986).
[91]     LSA-C.C. 3492.

supervision[92] and negligent and intentional infliction of emotional distress.[93] With respect to claims of civil conspiracy under Article 2324, The Louisiana Supreme Court has held that conspiracy by itself is not an actionable claim under Louisiana law;[94] the actionable element of a conspiracy claim is the tort that the conspirators agree to perpetrate and actually commit in whole or in part.[95] The applicable prescriptive period is thus the prescriptive period governing the underlying tort that the conspirators allegedly committed.[96]

The prescriptive period of Article 3492 commences to run once there has been a determination that damage was sustained.[97] The determination is not one on the merits, but it is simply a determination that plaintiff sustained damage sufficient to support accrual of a cause of action against the defendants.[98] Prescription begins to run against a claimant when he obtains actual or constructive knowledge of facts indicating a cause of action.[99] Constructive knowledge of facts indicating a cause of action is whatever notice is enough to excite attention and put the injured party on guard and call for further inquiry.[100] It also includes knowledge or notice of everything to which a reasonable inquiry may lead.[101]

In the instant suit, the negligence allegations state that all Defendants breached a duty of reasonable care as a result of improper Title IX policies, accommodations, reporting, and investigations.[102] The negligent supervision allegations state that all Defendants had a duty to train,

---

92    *Irby v. Mancuso*, 2016-78 (La. App. 3 Cir. 9/28/16), 201 So. 3d 413, 418, writ denied, 2016-2074 (La. 6/15/18), 257 So. 3d 687

93    *Albe v. City of New Orleans*, 2014-0186 (La. App. 4 Cir. 9/17/14), 150 So. 3d 361, 367–68, writ denied, 2014-2166 (La. 12/8/14), 153 So. 3d 445

94    *Crutcher–Tufts Resources, Inc. v. Tufts*, 07–1556, p. 3 (La.App. 4 Cir. 9/17/08), 992 So.2d 1091, 1094.

95    *Ross v. Conoco, Inc.*, 2002–0299, pp. 7–8 (La.10/15/02), 828 So.2d 546, 552.

96    *Id.*; *Ames v. Ohle*, 2011-1540 (La.App. 4 Cir. 5/23/12), 97 So.3d 386.

97    LSA-C.C. 3492.

98    *Landry v. Blaise, Inc.*, 99–2617, p. 4, (La.App. 4 Cir. 8/2/00), 774 So.2d 187, 190.

99    *Barbe v. American Sugar Refining, Inc.*, 11–0544, p. 12 (La.App. 4 Cir. 12/14/11), 83 So.3d 75, writ denied, 12–0124, (La.3/23/12), 85 So.3d 92 (La.2012).

100   *Id.*

101   *Id.*

102   R.Doc. 22 paragraph 483.

supervise, and monitor students including the Plaintiffs, which included the duty to ensure that LSU's Title IX policy was followed.[103] As previously noted, the allegations implicating Keava occurred in 2016 and 2017, and Richardson became "extremely upset" at what she perceived to be an inadequate result of the Title IX investigation concerning her reported abuse by John Coe in 2018. According to the Amended Complaint, then, any breach of these alleged duties on the part of Keava would have occurred, at the latest, in 2018.

Though Plaintiffs contend that they were unable to know "the extent of Defendants' negligent acts and the contribution of same to the conspiracy to intentionally deprive Plaintiffs of their rights" until the publication of the Husch Blackwell Report in 2021, that is not the standard for the commencement of the running of prescription. According to the Louisiana Supreme Court, "[I]n cases in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage… even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage as a result of the completed tortious act."[104] The latest date by which Richardson *first* suffered actual and appreciable damage was November 2018 based on the allegations of the Amended Complaint. These claims are facially prescribed.

Similarly, with respect to the claims for negligent and intentional infliction of emotional distress, the Amended Complaint states that the Defendants' actions, whether negligent or intentional, caused emotional distress. As against Keava, any actions or inactions stem from the same limited set of facts which spanned 2016 through 2018, so any claim for infliction of emotional distress as a result of those alleged actions/inactions prescribed before suit was filed in

---

[103]    R.Doc. 22 paragraph 492.
[104]    *Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992).

April 2021. The attempts to tie these claims to the Husch Blackwell Report fail for the same reasons as those pertaining to the negligence claims.

Lastly, with respect to the civil conspiracy claim, the applicable prescriptive period is the prescriptive period governing the underlying tort that the conspirators allegedly committed. Because the one-year limitation of Article 3492 applies to the alleged underlying torts, this claim is prescribed for the same reasons previously outlined herein. Therefore, based on the face of the Amended Complaint, all Louisiana-law tort claims against Keava are prescribed.

2. The Amended Complaint cannot state claims of negligence, negligent supervision, or negligent infliction of emotional distress against Keava.

The Amended Complaint alleges that Keava, within the class of "all Defendants," is liable in negligence for having breached various duties, including a duty to supervise, train, and monitor students, including Plaintiffs.[105] It further alleges that she committed negligent infliction of emotional distress, which is not itself a separate tort absent physical injury, but is analyzed as a claim of negligence.[106] However, the Amended Complaint specifically alleges that Keava was, at all pertinent times, an employee of LSU. The Fifth Circuit has held that "where litigants accuse state officers of violating state common law when acting in the course and scope of their employment, the Eleventh Amendment prevents the litigant from raising the claim in federal court whether the litigant seeks damages or injunctive relief."[107] In *Hughes v. Savell,*[108] negligence claims against a state employee who was acting in the course and scope of his employment with the state were subject to dismissal under Eleventh Amendment immunity because the claims were, in essence, claims against the state. Similarly, in the instant suit, the claims of negligence against

---

[105]   R.Doc. paragraphs 481 and 492.
[106]   *Covington v. Howard*, 49,135 (La.App. 2 Cir. 8/13/14), 146 So.3d 933.
[107]   *Hughes v. Savell,* 902 F.2d 376 (5th Cir.1990).
[108]   118 F.3d 450 (5th Cir. 1997).

Keava arose within the scope of her employment with LSU based on the allegations contained in the Amended Complaint. As a result, the Amended Complaint cannot state a claim against Keava, a state employee, in negligence, and these claims should be dismissed.

3.  The Amended Complaint fails to state a claim for Intentional Infliction of Emotional Distress.

Plaintiffs allege that Keava and the other Defendants intentionally inflicted emotional distress in their response to reports of sexual misconduct. According to the Amended Complaint, Defendants dismissed plaintiff's allegations of sexual misconduct; failed to properly investigate such claims or protect Plaintiffs from their assailants; justified the behavior of the assailants; failed to properly discipline the assailants; openly mocked and spread rumors about Plaintiffs; isolated and alienated Plaintiffs; and improperly disciplined and retaliated against Plaintiffs.[109] Under Louisiana law, a plaintiff claiming intentional infliction of emotional distress ("IIED") must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[110] "It is not enough that the defendant has acted with intent which is tortious, or that he maliciously intended to inflict emotional distress.[111] "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[112]

In the instant suit, Keava is not implicated by all of the alleged instances of intentional

---

[109]    R.Doc. 22 paragraph 506.
[110]    *Ioppolo v. Rumana*, 581 F. App'x 321, 327 (5th Cir. 2014).
[111]    *Id.*
[112]    *Id.*

infliction of emotional distress, and the particular facts involving individual Plaintiffs appear to be conflated in this claim. However, the allegations of openly mocking and spreading rumors appear to align with Richardson's allegations against Keava. The law is clear, though, that insults, indignities, threats, oppressions, and trivialities do not rise to the level of intentional infliction of emotional distress. The extent of the allegations against Keava for this claim are simply inadequate to state a claim for which relief may be granted under Louisiana law. The Amended Complaint does nothing more than link this instance involving Keava to a claim for intentional infliction of emotional distress by conclusory allegations. This claim should, therefore, be dismissed under Rule 12(b)(6).

4. The Amended Complaint fails to state a claim for Civil Conspiracy.

The Amended Complaint brings a claim under Civil Code Article 2324 for alleged "civil conspiracy." However, Article 2324 does not by itself impose liability for a civil conspiracy.[113] The actionable element in a claim under this article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part.[114] To recover under a theory of civil conspiracy, a plaintiff must show that an agreement existed among the defendants to commit the tortious act which caused the plaintiff's injury.[115] The plaintiff must establish that there was an agreement as to the intended outcome or result.[116] In the instant suit, though, there are no claims that Keava was part of any agreement to commit tortious acts, and there are no allegations showing an agreement as to any intended outcome or result. Because the Amended Complaint fails to state any viable tort claim against Keava, the secondary claim of civil

---

[113] *Haygood v. Dies*, 49,972 (La.App.2d Cir.8/12/15), 174 So.3d 1211, citing *Butz v. Lynch*, 97–2166 (La.App. 1st Cir.4/8/98), 710 So.2d 1171.
[114] *Id.*
[115] *Haygood*, supra; *Butz*, supra.
[116] *Butz*, supra.

conspiracy necessarily fails. This claim should, therefore, be dismissed under Rule 12(b)(6).

**F. The Amended Complaint fails to state a claim for violation of the Louisiana Racketeering Act.**

The Amended Complaint sets forth claims under the Louisiana Racketeering Act ("LRA"), LSA-R.S. 15:1351, alleging that Keava, along with the other defendants, aided and abetted violations of the LRA. Plaintiffs allege Defendants and those employed by and/or associated with the Enterprise have conducted the affairs of the Enterprise through a pattern of racketeering activity in violation of LRA Sections 15:1353(a), (b), and (c) and conspired to violate Section 15:1353(c) in violation of Section 15:1353(d) by utilizing donations solicited from international and national donors through the Tiger Athletic Foundation to make payments directly to LSU and on behalf of its employees and to implement a deficient sexual misconduct reporting scheme within the Athletics Department.

The LRA is modeled on the federal RICO statute.[117] Federal jurisprudence is thus persuasive in LRA claims.[118] As established by federal jurisprudence, there are three elements to a RICO claim: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.[119] Proof of the existence of an "enterprise," as well as a "pattern of racketeering activity" are essential elements of this claim.[120]

In the instant suit, Plaintiffs have not plead a valid enterprise to support their LRA claim. "To 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' an individual must have some part in the operation or management of the enterprise itself."[121] Plaintiffs have failed to allege that Keava actually "operated" or "managed" the alleged enterprise involved in the various

---

[117]    *State v. Touchet*, 1999-1416, p. 4 (La. App. 3 Cir. 4/5/00); 759 So.2d 194, 197.
[118]    *Id*.
[119]    *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)
[120]    *State v. Touchet*, supra.
[121]    *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539 (5th Cir. 2012), as revised (Jan. 12, 2012).

racketeering allegations set forth in the Amended Complaint. The factual allegations against Keava are limited to alleged failure to report Richardson's Title IX claims and alleged belittling of Richardson after she reported a claim of abuse.[122] These allegations fall far short of operating or managing an alleged criminal enterprise, and are insufficient to satisfy this essential element of the LRA claim.

The more glaring deficiency in Plaintiffs' LRA claims against Keava, though, is the failure to demonstrate predicate acts of racketeering activity. The "racketeering activity" element consists of two or more predicate criminal acts that are (1) related and (2) "amount to or pose a threat of continued criminal activity."[123] The specific predicate acts of racketeering activity which Plaintiffs claim Keava committed are (1) intimidating witnesses under LSA-R.S. 14:129.1 and (2) injuring public records under LSA-R.S. 14:132.

LSA-R.S. 14:129.1 provides:

No person shall intentionally:

(1) Intimidate or impede, by threat of force or force, or attempt to intimidate or impede, by threat of force or force, a witness or a member of his immediate family with intent to influence his testimony, his reporting of criminal conduct, or his appearance at a judicial proceeding;

(2) Injure or attempt to injure a witness in his person or property, or a member of his immediate family, with intent to influence his testimony, his reporting of criminal conduct, or his appearance at a judicial proceeding.[124]

According to the LRA Case Statement, Keava committed this act by laughing at Richardson and mocking her when she reported alleged abuse by, and fear of, John Coe.[125] However, this allegation fails to satisfy the clear elements of 14:129.1: the statute requires a threat of force or actual force, or injuring or attempting to injure a witness. There are no allegations that Keava used force or

---

[122]    LRA Case statement, R.Doc. 103.
[123]    *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).
[124]    LSA-R.S. 14:129.1.
[125]    R.Doc. 103 p. 43.

threatened a use of force against Richardson, nor are there any allegations that Keava injured or attempted to injure Richardson in her person or property. The allegations against Keava do not fit the definition of intimidation of a witness; this scenario simply cannot be shoehorned into a predicate act under the LRA.

The second alleged predicate act fares no better. LSA-R.S. 14:132, "Injuring Public Records," states:

> A. First degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer.

> B. Second degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, defined as a public record pursuant to R.S. 44:1 et seq. and required to be preserved in any public office or by any person or public officer pursuant to R.S. 44:36.

According to the LRA Case Statement, Keava committed this act by concealing from public records John Coe's dating violence against Richardson and the Athletic Department's decision to retaliate against Richardson and fire her as a result of her reports against John Coe and John Doe.[126] This allegation necessarily fails on the most basic fact: Richardson alleges that no record was created of her complaint of dating violence. It is axiomatic that there cannot be a claim for concealing or destroying a public record that never existed. In order to shoehorn this allegation into 14:132, however, Richardson must allege that "concealment" of a public record encompasses the failure to create a public record; the facts clearly do not support a claim that Keava removed, mutilated, destroyed, or falsified a record. Moreover, alleged retaliation by terminating Richardson's employment has no relation whatsoever to the statutory definition of this offense. The LRA Case Statement, which is ostensibly the most detailed iteration of Plaintiffs' LRA claim, fails to demonstrate that Keava committed a predicate act sufficient to satisfy this requirement of

---

[126]    R.Doc. 103 p. 49.

an LRA claim.

The allegations involving Keava cannot serve as a basis for meeting the essential elements of a claim under the LRA. Based on the Amended Complaint and the LRA Case Statement, then, there is no plausible claim against Keava for violation of the LRA. This claim should, therefore, be dismissed under Rule 12(b)(6).

### G.  The Amended Complaint fails to state a claim for Enrichment Without Cause.

Plaintiffs allege that, in the event no other remedy at law is available, all Defendants are liable for enrichment without cause under Civil Code Article 2298.[127] A claim for unjust enrichment under Article 2298 requires proof of five elements: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there must be no other remedy at law available to the plaintiff.[128] In *Walters v. MedSouth Record Mgmt., LLC,*[129] the Louisiana Supreme Court upheld the dismissal of a claim for unjust enrichment where the plaintiff had also stated a claim for negligence because the plaintiff had another available remedy. In fact, the Court's dismissal of the unjust enrichment claim was not affected by the fact that the plaintiff's negligence claim had already been previously dismissed because it was prescribed: according to the Court in *Walters*, "[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."[130]

In the instant suit, Plaintiffs have a number of other available remedies. The mere fact that those remedies are unsuccessful, or that they have prescribed, does not affect the availability of

---

[127]    R.Doc. 22 paragraph 582.
[128]    *Carriere v. Bank of Louisiana*, 702 So.2d 648 (La.12/13/96).
[129]    38 So.3d 241, 242 (La.6/4/10).
[130]    *Id.*

those remedies as *Walters* makes clear. Therefore, Plaintiffs cannot state a claim for relief under Civil Code Article 2298, and this claim should be dismissed under Rule 12(b)(6).

## V.      __Conclusion__

Keava Soil-Cormier is a minor player in the factual allegations of this suit. Nearly all of the limited claims against her prescribed prior to the filing of Original Complaint; any claims which were not prescribed are substantively deficient beyond cure. The claims against Keava should, therefore, be dismissed with prejudice under Rule 12(b)(6). Plaintiffs have already amended their Complaint and have had yet another opportunity to set forth their claims in the LRA Case Statement; further amendment to more fully state claims against Keava would be futile. Defendant Keava Soil-Cormier thus prays that the Court would dismiss the claims against her under Rule 12(b)(6) with prejudice.

Respectfully Submitted,

**JEFF LANDRY**
ATTORNEY GENERAL

By:      __ /s/ Beau A. LeBlanc__
John Nickerson Chappuis (#4039)
Lamont P. Domingue (#20787)
Beau Anthony LeBlanc (#32549)
*Special Assistant Attorneys General*
700 St. John Street / P. O. Box 3527
Lafayette, LA 70502-3527
Phone: (337) 232-9700
Fax: (337) 235-4943
Email: jnc@volalaw.com
          lpd@volalaw.com
          bal@volalaw.com
ATTORNEYS FOR KEAVA SOIL-CORMIER

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 8th day of November, 2021, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

_____*s/ Beau A. LeBlanc*_____
BEAU A. LEBLANC
