**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ABBY OWENS ET AL**<br>*Plaintiff* | **Case No.: 21-242** |
| | **Division WBV-SDJ** |
| **v.** | |
| | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY**<br>**ET AL**<br>*Defendant* | **MAGISTRATE JUDGE JOHNSON** |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANT VERGE AUSBERRY'S MOTION TO DISMISS**

Plaintiffs, through undersigned counsel, respectfully submit this Opposition to Defendant Verge Ausberry's Motion to Dismiss ("Motion").[1]  Upon careful review of Defendants' arguments, Plaintiffs consent to dismissing the claim of Enrichment without Cause against Ausberry. With respect to the remainder of Plaintiffs' claims, the court should reject Ausberry's arguments that Plaintiffs have failed to state a claim because (i) Plaintiffs' allegations meet the Rule 12(b)(6) standard of plausibility; (ii) Plaintiffs have alleged sufficient facts to support their legal theories; (iii) Plaintiffs alleged sufficient facts to support their claims; (iv) Title IX authorizes suits against school officials; (v) Ausberry is not entitled to qualified immunity; and (vi) Plaintiffs' claims are not time-barred. Therefore, Ausberry's Motion should be denied.

**STATEMENT OF FACTS**

The Amended Class Action Complaint was brought by ten female-presenting and/or LGBTQ+ identifying current and former students at Louisiana State University ("LSU") who, over the course of approximately eight years, brought, attempted to bring, or were dissuaded entirely

---

[1] Doc. 112.

from bringing complaints of sex discrimination perpetrated by male LSU students and employees. The LSU Title IX process failed these Plaintiffs and the facts outlined in the Amended Complaint illustrate a Title IX response system so flawed that it might as well not have existed. Many were unable to ever make reports to the Title IX Office because employees discouraged or overtly prevented them from doing so. The few who were able to file complaints were ignored, the complaints were not appropriately addressed, and they experienced unlawful retaliation. For years, LSU, including Ausberry, and the Tiger Athletic Foundation ignored known systemic issues in LSU's Title IX response to promote male LSU athletes and coaches and reap the benefits of a venerated college football program. This created a campus culture which ignored and tacitly allowed trauma to be inflicted upon female-presenting and LGBTQ+ identifying individuals and a prioritization of sports revenue over student well-being.

Ausberry was an employee of LSU in his official and personal capacity at all relevant times. From July 2019 to present, Ausberry has been the Executive Deputy Athletic Director and Executive Director of External Relations for LSU. Before July 2019, he served in increasingly senior roles within the LSU athletics department, including Associate Athletics Director for Operations and Senior Associate Athletics Director. Doc. 22 at ¶38. Per the relevant LSU policies, Ausberry was a Responsible Employee and at all relevant times had a duty to supervise, train, and monitor students, including but not limited to some Plaintiffs and their assailants. This included the duty to ensure that the LSU Title IX Policy was followed to prevent, properly respond to, and remedy incidents of sex discrimination on LSU's campus. *Id.* at ¶492. LSU's Equal Opportunity Policy reads:

> All complaints of discrimination and/or harassment will be addressed. Substantiated cases shall result in appropriate discipline or other corrective action. The severity of the disciplinary action shall be consistent with the seriousness of the act of discrimination and/or harassment....

The President, Vice Presidents, Deans, Directors, Department Heads, and all other supervisory employees are responsible for assisting the University in the implementation of this policy. *Id.* at ¶ 54 (emphasis added).

The Title IX Policy includes the following in its statement of purpose:

LSU will take prompt action to prevent prohibited conduct, discipline those who violate this policy, prevent recurrence of prohibited behavior, and effect equitable remedies.

LSU will affirmatively promote prevention, awareness and training programs to encourage individuals to report concerns or complaints. Everyone has a responsibility to prevent and report acts of prohibited conduct. The entire LSU community is responsible for fostering a welcome environment conducive to learning. *Id.* at ¶ 56 (emphasis added).

Per the Title IX Policy: "Responsible Employees who receive notice or witness incidents of Sexual Misconduct must promptly notify the Title IX Campus Coordinator." The Title IX Policy identifies the following individuals as Responsible Employees: "Any employee given the duty of reporting actual notice of incidents of sexual violence or any other misconduct prohibited by this policy. Responsible Employees do not include victims' advocates, mental health counselors, or LSU Ombudsperson." *Id.* at ¶57 (emphasis added). As a Responsible Employee, Ausberry was responsible for reporting disclosures of sexual misconduct. Yet Ausberry repeatedly engaged in discriminatory, retaliatory, and other unlawful actions in his interactions with Plaintiffs and in response to Plaintiffs' reports of Title IX and Code of Student Conduct violations.

In November 2020, LSU retained the Husch Blackwell law firm to investigate its Title IX process and procedures. *Id.* at ¶68. On March 5, 2021, Husch Blackwell's investigative report and findings (hereinafter, the "Report") was publicly released and found that: (1) "[t]he University [and its employees] did not handle various items identified in the USA Today article in a manner consistent with obligations under Title IX, widely recognized best practices, and/or University policy"; and (2) "[v]arious incidents of athletics-related misconduct have not been appropriately reported to the University's Title IX Coordinator. We are especially concerned about a lack of

reporting prior to November 2016...." *Id.* at ¶¶69, 71, 73.  The Report deemed improper response to sexual misconduct reporting a deeply entrenched cultural problem at LSU. *Id.* at ¶87.  In the words of Interim President Thomas Galligan, "We failed those who it was our first duty to protect[,]" "it was an example of institutional betrayal[,]" "I am ashamed[,]" and, most notably, "[t]he athletic department incorrectly directed where to report potential Title IX issues." *Id.* at ¶¶1, 82.  As discussed in the Report, this culture was known to encourage sex discrimination by creating a hostile environment. *Id.* at ¶94.

On April 8, 2021, Defendant Lewis filed a lawsuit against LSU in this court alleging that she had been repeatedly disciplined and retaliated against for attempting to address known Title IX violations within the athletics department. Defendant Lewis also made admissions in her complaint that she did not comply with federal Title IX obligations and LSU policies and procedures. *Id.* at ¶105. Defendant Lewis alleged that Ausberry and Segar engaged in retaliation against her after she attempted to report Les Miles' alleged acts of sexual misconduct. *Id.* at ¶106.

In a text message to Ausberry dated April 14, 2018, football player John Coe admitted to punching Plaintiff Lewis in the stomach. Doc. 22-1 at 73. Ausberry was aware of Coe's prior pattern of violent abuse of his romantic partners because Plaintiff Richardson had told him about Coe's abuse. The week after Richardson found out that Coe was abusing Plaintiff Lewis just like he had abused Richardson, she reported Coe's abuse to Ausberry. *Id.* at ¶146. Ausberry stopped Richardson and told her she had to report the abuse to Segar. *Id.* Ausberry did not report these incidents to the police, the Title IX Office, or any other entity, nor did he offer Plaintiffs Lewis or Richardson any resources or interim measures, nor did he initiate any formal disciplinary action against Coe other than briefly banning him from the weight room.  Thus, Plaintiffs have pled sufficient facts to survive a 12(b)(6) Motion to Dismiss.

## LAW AND ARGUMENT

"It is well-settled in this Circuit that motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and are rarely granted."[2] There exists "a powerful presumption against rejecting pleadings for failure to state a claim[,]"[3] and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[4] Courts accept " all well-pleaded facts as true and [view] those facts in the light most favorable to the plaintiff[]."[5] In deciding a Rule 12(b)(6) motion to dismiss, this Court may take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[6] The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.[7]  A complaint "does not need detailed factual allegations . . . but must provide the [plaintiff's] grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level."[8] That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" meaning the court can draw the reasonable inference that the defendant is liable for the misconduct

---

[2] *Pride Centric Resources, Inc.* v. *LaPorte, et al.*, 2021 WL 3741529, at *2 (E.D. La. Aug. 24, 2021) (citing *Financial Acquisition Partners LP* v. *Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997))).

[3] *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 609 (W.D. Tex. 2017) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009))).

[4] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[5] *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (quotation omitted).

[6] *Pride Centric Resources, Inc.* 2021 WL 3741529, at *2 (citing *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008)).

[7] *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007)).

[8] *Hernandez*, 274 F. Supp. 3d at 609 (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

alleged.[9] Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[10]

## I.   Title IX

Plaintiffs do not allege any Title IX claims other than retaliation against Ausberry.  Title IX retaliation, which Ausberry does not address in his motion to dismiss, is a claim that is properly brought against individuals as well as institutions. Unlike many federal and state civil rights statutes, Title IX does not expressly address retaliation. In *Jackson v. Birmingham Board of Education*, the Supreme Court held that retaliation against a person who complains about sex discrimination is itself a form of discrimination "on the basis of sex" forbidden by Title IX.[11] Applying *Jackson*, courts have recognized the following elements to support a claim for Title IX retaliation: (1) a person engaged in protected activity, (2) the school took a materially adverse action against that person, and (3) that there was a "but-for" causal connection between the protected actively and the materially adverse reaction.[12] The Supreme Court has defined retaliation as an intentional act in response to a protected action.[13] "The very concept of retaliation is that the retaliating party takes action against the party retaliated against after, and because of, some action of the latter."[14] Federal courts have repeatedly affirmed that retaliation is a violation of federal civil rights.[15]  Unlike general claims of Title IX violations, which must be made against recipients of federal funding, retaliation claims may be brought against both institutions and individuals:

> No recipient **or other person** may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by title IX or this part, or because the individual has made a report or

---

[9] *Id.* at 678 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Meador*, 911 F.3d at 264 (quotation omitted).
[10] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).
[11] *Jackson v. Birmingham Board of Education*, 544 U.S. 167 173-74 (2005).
[12] *See, e.g.*, *Trudeau v. University of North Texas*, No. 20-40532 (5th Cir. July 9, 2021).
[13] *Jackson*, 544 U.S. at 173-74.
[14] *Fed. Mar. Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 514 (1958).
[15]  *See, e.g.*, *Jackson*, 544 U.S. 167; *Peters v. Jenney*, 327 F.3d 307, 320-21 (4th Cir. 2003); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part. Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by title IX or this part, constitutes retaliation. 34 CFR § 106.71(a). (Emphasis added).

To establish a *prima facie* case of Title IX retaliation in the Fifth Circuit, a plaintiff must show that they participated in activity protected by Title IX and that the defendant took an adverse action against them because of that activity.[16] "A Title IX retaliation plaintiff must show that the funding recipient *or its representatives* took an adverse action against them because they complained of discrimination."[17] (Emphasis added) As outlined in the Amended Complaint, Plaintiffs allege that Ausberry and other defendants engaged in materially adverse actions against Plaintiffs when they failed to report Plaintiffs disclosures of sexual misconduct by student-athletes and when LSU's Title IX Office failed to properly investigate Plaintiffs' claims of sex discrimination, failed to initiate appropriate interim measures to ensure their safety and ongoing equal access to educational opportunities and benefits, and failed to implement appropriate sanctions and responsive measures to remedy the sexually hostile environment and prevent its recurrence. Doc. 22 at ¶417. Plaintiffs have sufficiently pled a claim of Title IX retaliation against Ausberry, and this court should deny his motion to dismiss this claim against him.

## A. Prescription

A motion to dismiss may be granted on a prescription defense where it is evident from the pleadings that the action is time-barred and the pleadings fail to raise some basis for tolling.[18] Title

---

[16] *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864 (M.D. La. 2014).
[17] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 586 (5th Cir. 2020), citing *Sanches v. Carrollton-Farmers Branch Independent*, 647 F.3d 156 (5th Cir. 2011).
[18] *Hernandez*, 274 F. Supp. at 615 (quoting *Taylor v. Bailey Tool Mfg. Co*., 744 F.3d 944, 946 (5th Cir. 2014)).

IX claims are subject to the state statutes of limitations for personal injury actions.[19] In Louisiana, the relevant prescriptive period is one year.[20] Although courts look to state law for the length of the prescriptive period, the time at which a Title IX claim accrues and the prescriptive period commences "is a question of federal law," "conforming in general to common-law tort principles."[21] Accrual under federal common law occurs and the prescriptive period begins to run the moment the plaintiff becomes aware that he has suffered an injury.[22] However, a plaintiff's awareness encompasses two elements: (1) existence of the injury, and (2) "causation, that is, the connection between the injury and the defendant's actions."[23] A plaintiff does not need to know that they have a legal cause of action, but they need to have an awareness of the facts that would ultimately support the claim.[24]

Ausberry argues that the Title IX retaliation claims against him by all Plaintiffs are prescribed, as all injuries were sustained prior to February 2020, over one year from the filing of this suit. However, Plaintiffs allege that Ausberry engaged in materially adverse actions against them when he failed to report their disclosures of sexual misconduct to the Title IX Office.  Doc. 22 at ¶417. Plaintiffs could not have known about Ausberry's inactions until either obtaining a copy of their Title IX files or reviewing the Husch Blackwell report, both of which occurred within the year prior to filing this suit. Because Plaintiffs' complaint establishes a basis for tolling, the Plaintiffs' Title IX retaliation claims survive dismissal on the basis of prescription.

---

[19] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020) (citing *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015); *Griffin v. Round Rock Indep. Sch. Dist.*, 82 F.3d 414, 1996 WL 166999, at *1 (5th Cir. 1996)).

[20] *Sewell*, 974 F.3d at 583 (citing La. Civ. Code Ann. art. 3492; *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 739 (5th Cir. 2017)).

[21] *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388, (2007)); *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)).

[22] *King-White*, 803 F.3d at 762 (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010) (*quoting Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001))).

[23] *Id*. (Citation and internal quotation marks omitted in original)).

[24] *King-White*, 803 F.3d at 762 (quoting *Piotrowski*, 237 F.3d at 576).

## II.    **Louisiana Racketeering Act and Conspiracy**

Ausberry makes three arguments to dismiss Plaintiffs' LRA claims: (1) he committed no predicate acts; (2) he did not cause injury to Plaintiffs; and (3) Plaintiffs have not alleged the existence of an Enterprise separate and apart from the racketeering activity.  As to the argument regarding Ausberry's commission of predicate acts:

> To state a valid civil claim under Louisiana RICO, a party must show that (1) a person engaged in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise. The term "pattern of racketeering activity" means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurs after August 21, 1992, and that the last of such incidents occurs within five years after a prior incident of racketeering activity. La. Rev. Stat. 15:1352(C). "Racketeering activity" means "committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit any crime that is punishable under" one of 65 specified Louisiana criminal statutes. La. Rev. Stat. 15:1352(A)(1)-(65).[25]

A "defendant need not personally commit the predicate acts provided that the evidence is sufficient to connect him to the fraudulent scheme."[26] "In addition, where an act can be attributed to the conspiracy itself, it can be imputed to each co-conspirator."[27] As a result, Ausberry's contention that Plaintiffs' LRA and conspiracy claims must fail because his assertion that the only allegation against him is related to his comments to Defendant Lewis is without merit.

As to the argument that Ausberry did not cause injury to Plaintiffs, La. Rev. Stat. § 15:1356(E) details the civil remedies for LRA violations and provides:

> **Any person who is injured by reason of any violation of the provisions of R.S. 15:1353** shall have a cause of action against any person engaged in racketeering activity who violates a provision of R.S. 15:1353. Such injured person shall be

---

[25] *Viking Constr. Grp., LLC v. Satterfield & Pontikes Constr. Grp. Inc.*, 2018 WL 401182, at *2 (E.D. La. Jan. 12, 2018), *aff'd sub nom. Viking Constr. Grp., L.L.C. v. Satterfield & Pontikes Constr. Inc.*, 728 F. App'x 405 (5th Cir. 2018) (citing *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003)).
[26] *Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112, 115 (5th Cir. 1987).
[27] *Cty. of El Paso, Tex. v. Jones*, 2009 WL 4730303, at *12 (W.D. Tex. Dec. 4, 2009) (citing *Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946)).

entitled to recover three times the actual damages sustained or ten thousand dollars, whichever is greater. Such person shall also recover attorney fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred.  La. Rev. Stat. § 15:1356(E) (emphasis added).

Regarding causation, the Fifth Circuit has held "a person will be considered injured 'by reason of' a RICO violation if the predicate acts constitute (1) factual (but for) causation and (2) legal (proximate) causation of the alleged injury."[28] This does not require the Plaintiffs "allege injury and causation for each alleged episode engaged in by the enterprise, however."[29]

> [N]o requirement exists that the plaintiff must suffer an injury from two or more predicate acts, or from all of the predicate acts. Thus, a RICO verdict can be sustained when a pattern of racketeering acts existed, but when only one act caused injury. Stated differently, merely because one of the racketeering acts was not successful does not mean that it is unavailable to establish a pattern.[30]

In addition, at the motion to dismiss stage, Plaintiffs "need not prove the exact amount of damages incurred; [they] need only 'raise[ ] a right to relief above the speculative level.'"[31] As a result, Ausberry's contention that Plaintiffs' LRA and conspiracy claims must fail because his assertion that the only allegation against him is related to his comments to Defendant Lewis is without merit. Plaintiffs sufficiently allege that their injuries were proximately caused by the acts of the Enterprise. Plaintiffs' Title IX complaints against student-athletes were purposefully buried to ensure that the perpetrators were not prevented from concentrating on winning games. Doc. 22 at ¶65. According to experts at Husch Blackwell, the prevalence of retaliatory coercion in LSU Athletics (to which Ausberry directly contributed) indicated "a deeply entrenched cultural problem at LSU" which is known to encourage sexual harassment and assault by creating a hostile

---

[28] *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989).

[29] *Cty. of El Paso, Tex.,* 2009 WL 4730303, at *10 (citing *Deppe v. Tripp*, 863 F.2d 1356, 1366–1377 (7th Cir. 1988)).

[30] *Id.* (quoting *Deppe*, 863 F.2d at 1366-77 and citing *United States v. Baxter Intern., Inc.*, 345 F.3d 866, 883-884 (11th Cir. 2003) ("a complaint governed by the ordinary standard of Rule 8 ... need not allege the particulars of each instance of injury in order to survive a motion to dismiss."); *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001) ("Even if the precise amount of [plaintiff's] injury is not susceptible of ready proof, it is clear that a reasonable finder of fact could infer that some injury has occurred.")).

[31] *Id*. at *11 (quoting *Twombly*, 550 U.S. at 555).

environment that treats women, including Plaintiffs, as second-class citizens. Doc. 22 at ¶¶87, 94, 436. As a result of Ausberry and all other defendants' retaliatory actions of silencing and ignoring Plaintiffs' reports of abuse and concerns about LSU's Title IX process, Plaintiffs have suffered and will continue to suffer injuries. Doc. 22 at ¶430.

As to the argument that Plaintiffs have not alleged the existence of an Enterprise separate and apart from the racketeering activity, Plaintiffs clearly allege that "the Enterprise is an association in fact between and among LSU, TAF, and various employees and/or agents of LSU and TAF, with a pattern of predicate acts working in concert with the common purpose of generating maximum revenue from LSU's athletics programs for the benefit of the Leaders of the Enterprise: TAF, LSU, Alexander, and Alleva…." Doc. 103 at 58.  The participants in the Enterprise, including Ausberry, achieved this common purpose of maximizing revenue from LSU's athletics programs through both racketeering activity and legitimate activity. Without the racketeering activity, the Enterprise could still generate revenue from LSU's athletics programs for the benefit of the Leaders of the Enterprise by continuing to sell merchandise and tickets to Athletics events while also complying with their obligations to report sexual misconduct and not retaliate against survivors of sexual misconduct. The Enterprise itself is separate and distinct from the racketeering activity.

III.    **Civil Conspiracy**

Plaintiffs agree with Ausberry that:

Civil Code article 2324 does not by itself impose liability for a civil conspiracy. The actionable element in a claim under this article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part. In order to recover under this theory of liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury.[32]

---

[32] *Butz v. Lynch*, No. 97-2166 (La. App. 1 Cir. Apr. 8, 1998), 710 So. 2d 1171, 1174; writ denied, No. 98-1247 (La. Jun. 19, 1998), 721 So. 2d 473 (citing *Silver v. Nelson*, 610 F. Supp. 505, 516–517 (E.D. La. 1985)).

As set forth in the Amended Complaint and in the LRA Case Statement, Plaintiffs have alleged

numerous "illegal" acts agreed to by Defendants, including Ausberry, which resulted in Plaintiffs'

injuries.  The Fifth Circuit recognized that a claim under Article 2324:

> … action is for damages caused by acts committed pursuant to a formed conspiracy,
> and all of the conspirators will be regarded as having assisted or encouraged the
> performance of those acts. The plaintiff must therefore prove an unlawful act and
> assistance or encouragement that amounts to a conspiracy. This assistance or
> encouragement must be of such quality and character that a jury would be permitted
> to infer from it an underlying agreement and act that is the essence of the
> conspiracy.[33]

In their Amended Complaint and the LRA Case Statement, Plaintiffs sufficiently allege assistance

and encouragement among the Defendants, including Ausberry, sufficient to plead the existence

of a conspiracy pursuant to Article 2324, including, *inter alia*, intimidating witnesses;  that

Ausberry told Defendant Lewis that she "was making too big of a deal" about allegations of

misconduct and told her, "you need to just worry about doing your job," and "if you don't like it

here, leave;" openly discouraging peers from reporting and following up on reports of sexual

assaults committed by people in LSU athletics; intentionally training lower-ranking employees to

keep inadequate records and personally concealing information from public records; and accepting

money from LSU and TAF knowing that they were circumventing and/or supporting the

circumvention of Title IX processes. For these reasons, Ausberry's motion to dismiss Plaintiff's

civil conspiracy claim should be denied.

## IV.    Civil Rights Claims

Plaintiffs have plausibly pled a cause of action against Ausberry under 42 U.S.C. §§ 1983,

1985, and 1986. Ausberry argues that Plaintiffs have not pled either the existence of a conspiracy

---

[33] *Chrysler Credit Corp. v. Whitney Nat. Bank*, 51 F.3d 553, 557 (5th Cir. 1995) (citing *National Union Fire Ins. Co. v. Spillars*, 552 So.2d 627, 634 (La. Ct. App. 1989); writ denied, 556 So.2d 61 (La. 1990) and *Silver v. Nelson*, 610 F. Supp. at 517.

or that any actions against Plaintiffs were based upon their sex. Doc. 112 at 16-17. Ausberry's motion must be denied as Plaintiffs have pled both. Ausberry ignores that the Plaintiffs pled a conspiracy, of which Ausberry was a member, to deny constitutional and federal rights to all female-presenting and LGBTQ+ identifying LSU students, and that such caused the actual deprivation of the Plaintiffs' constitutional and federal rights. Even if Ausberry never interacted with the Plaintiffs, the law still provides liability for his participation in this scheme to silence survivors and maximize revenue for LSU's athletics department.

To allege conspiracy liability under 42 U.S.C. § 1983, a plaintiff must plead (1) that she has been deprived of a right secured by the Constitution or an appropriate federal law, (2) that at least one of the wrongdoers was acting under color of state law in depriving her of this right, (3) the state official(s) and the defendant reached an understanding to deprive plaintiff of constitutional rights, and (4) the defendant was a willful participant in joint activity with the state or its agents.[34]  42 U.S.C. § 1985(3) provides a remedy for a conspiracy to deprive a plaintiff of rights or privileges, either directly or indirectly, including the right to equal protection of the laws. To state claim for conspiracy to interfere with civil rights by depriving persons of rights or privileges, the plaintiff must allege facts demonstrating: (1) a conspiracy; (2) motivated by discriminatory animus; (3) for the purpose of depriving, either directly or indirectly, a person or class of persons of the equal protection of the laws; (4) an overt act in furtherance of the conspiracy; and (5) an injury.[35]  Finally, 42 U.S.C. § 1986 provides a cause of action against individuals who

---

[34] *Adickes v. S. H. Kress & Co*., 398 U.S. 144 (1970); *Tebo v. Tebo*, 550 F.3d 492 (5th Cir. 2008); *Abdeljalil v. City of Fort Worth*, 55 F. Supp. 2d 614 (N.D. Tex. 1999), aff'd, 234 F.3d 28 (5th Cir. 2000); *see also, Howard v. Lemmier*, No. CIV.A. 10-1814, 2011 WL 5508995, at *8 (E.D. La. Oct. 20, 2011), report and recommendation adopted, No. CIV.A. 10-1814, 2011 WL 5508978 (E.D. La. Nov. 10, 2011); *Green v. Howser*, 942 F.3d 772; *Panayotides v. Rabenold*, 35 F. Supp. 2d 411 (E.D. Pa. 1999), aff'd, 210 F.3d 358 (3rd Cir. 2000).
[35] *Griffin v. Breckenridge*, 403 U.S. 88 (1971); *Maxwell v. Dodd*, 662 F.3d 418 (6th Cir. 2011); *see Arvie v. Vidrine*, No. CV 6:21-1387, 2021 WL 4762679, at *4 (W.D. La. Sept. 22, 2021), report and recommendation adopted, No. CV 21-1387, 2021 WL 4762364 (W.D. La. Oct. 12, 2021); *Wright v. City of Harahan*, No. CV 19-13529, 2020 WL 815240, at *11 (E.D. La. Feb. 19, 2020).

have knowledge that any of the wrongs conspired to be done and mentioned in § 1985 are about to be committed and, having the power to prevent or aid in preventing commission of the same, neglect or refuse to do so. The claim constitutes an additional safeguard for those rights protected under § 1985.[36]

Plaintiffs have plausibly pled each of the required elements: (1) each Plaintiff was deprived of Equal Protection under the law, and some Plaintiffs were also deprived of Freedom of Speech and Due Process; (2) at least one of the wrongdoers in each of these deprivations of rights was acting under the color of state law in the capacity of their employment with LSU, an arm of the state of Louisiana; (3) defendants had an understanding that to increase athletics it would be necessary to deprive female-presenting and LGBTQ+ identifying LSU students of the aforementioned Constitutional rights and this agreement constituted the conspiracy;[37] (4) all defendants were willful participants in this conspiracy; (5) all plaintiffs are members of the class of individuals that defendants sought to deprive of constitutional rights; (6) Ausberry performed overt acts in furtherance of this conspiracy, such as purposefully concealing sexual misconduct reports from the Title IX Coordinator; (7) each plaintiff suffered serious injury as a result of the conspiracy; and (8) if Ausberry is found not to have been a party to the conspiracy, he was aware of its existence and had the power to prevent the conspiracy's success but refused to act. Co-conspirator TAF directly compensated Ausberry, who failed to report sexual misconduct by at a minimum Coe against Plaintiffs Lewis and Richardson in violation of Title IX and in an effort to protect male football players. The conspiracy worked to implement a deficient and secretive Title IX reporting scheme using TAF funds designed to insulate athletics to protect its revenue and

---

[36] *See Dooley v. City of Philadelphia*, 153 F. Supp. 2d 628 (E.D. Pa. 2001), on reconsideration in part on other grounds, 161 F. Supp. 2d 592 (E.D. Pa. 2001).
[37] Doc. 22 at ¶¶530, 542, 563, 567, 577.

stymie LSU's Title IX program to ensure a profitable and successful student athletics program that was able to continue competing unimpeded in interstate collegiate sports by protecting certain athletes from viable Title IX claims and by stifling LSU's Title IX program.  Doc. 22 at ¶¶530-31.

The intra-corporate conspiracy doctrine is not applicable as named defendants include not only employees of LSU but also TAF and "O" The Rosy Finch Boyz, LLC. Thus, Plaintiffs have met the statutory requirements for alleging an agreement between "two or more persons." Even assuming all defendants were employees of LSU, the Fifth Circuit has found that, "Although it is true that a corporation cannot conspire with itself, a conspiracy may be established where individual defendants are named and those defendants act outside the scope of their employment for personal reasons."[38] Plaintiffs name several individual defendants in their official and personal capacities and allege that these defendants acted with discriminatory animus. Thus, Plaintiffs are not relying on an intra-corporate conspiracy. There are sufficient facts pled that state a facially plausible claim. By accepting Plaintiffs' allegations as true, as this court must, Ausberry's motion to dismiss the civil rights claims against him must be denied.

### A.  Qualified Immunity

Ausberry claims that he is entitled to dismissal under the doctrine of qualified immunity. As the Supreme Court has held, state agencies and their employees acting in their official capacities are not "persons" subject to monetary liability under 42 U.S.C. § 1983.[39] The Fifth Circuit has also held that the Louisiana State University Board of Supervisors is considered an "arm of the state,"

---

[38] *Swann v. City of Dallas*, 922 F. Supp. 1184, 1208 (N.D. Tex. 1996), aff'd, 131 F.3d 140 (5th Cir. 1997) (citing *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir. 1987)).
[39] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

and thus also entitled to qualified immunity.[40] Ausberry claims that he is not a "person" because he was acting in his official capacity.

The doctrine of qualified immunity only shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[41] "Clearly established statutory or constitutional rights" refers to rights that are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[42] There need not be one case specifically stating which rights qualify as "clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate."[43] Officials who are either plainly incompetent or knowingly violate the law are not protected by qualified immunity.[44] It is important to note that "clearly established law" must not be defined "at a high level of generality," but must be defined by determining "whether the violative nature of particular conduct is clearly established."[45] The first prong of the statute will be examined in detail for each civil rights claim.

The second prong of the qualified immunity analysis requires this court to determine "whether the defendants' conduct was objectively reasonable in light of 'clearly established' law at the time of the alleged violation."[46] Conduct will be found to be "objectively reasonable unless every reasonable official in the same circumstances would have understood his or her actions to violate the law."[47] With emphasis on "objective," the defendant's subjective state of mind does

---

[40] *Coleman v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. 15-35-JJB-RLB, 2015 U.S. Dist. LEXIS 150270 at *2 (M.D. La. 2015)

[41] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[42] *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

[43] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

[44] *Malley v. Briggs*, 475 U.S. 335, 341 (1986), *see also Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015).

[45] *Ashcroft*, 563 U.S. at 742.

[46] *Kennedy v. Tangipahoa Par. Library Bd. of Control*, 224 F.3d 359, 377 (5th Cir. 2000).

[47] *Thornton v. Lymous*, 489 F. Supp. 3d 470, 482 (E.D. La. 2020).

not matter in the decision of whether the official is entitled to qualified immunity.[48] Ausberry acted unreasonably by failing to appropriately investigate and report sexual misconduct allegations and by promulgating insufficient Title IX training.

### B.  First Amendment Claims

It is clearly established that students may exercise their First Amendment rights on any topic unless doing so would "materially and substantially disrupt" school operations.[49] It has also been established for decades that school officials may not retaliate against students based on their protected speech.[50]   More specifically, it is clearly established law that students and student-employees are free to report claims of sexual assault without fear of retaliation.[51] Ausberry's motion to dismiss this claim should be denied.

### C.  Equal Protection Claims

It is clearly established that failing to report or investigate allegations of sexual assault violates the Equal Protection clause. First, "a State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."[52] More recently, the Supreme Court heard a case in which petitioners filed suit against the local school district's governing board and superintendent, alleging that their response to

---

[48] *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001).

[49] *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272 (1988) and *Healy v. James*, 408 U.S. 169, 189 (1972).

[50] *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667 (1973).

[51] *See* 34 C.F.R. § 106.71(a) ("[n]o recipient or other person may intimidate, threaten, coerce, or discriminate against any individual . . . because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under [Title IX]"). *See also Landesberg-Boyle v. Louisiana*, No. 03-3582, 2004 U.S. Dist. LEXIS 18276 at *17 (E.D. La. Sep. 9, 2004) (holding that "plaintiff's right as a public employee to report and protest to her employer, without fear of retaliation, instances of sexual abuse and harassment" on campus is a clearly established First Amendment right); *Wilson v. Univ. of Tex. Health Ctr.*, 973 F.2d 1263, 1268-69 (5th Cir. 1992) (holding that a public employer's retaliation for an employee's reports of workplace sexual harassment to her superiors represents a violation of a clearly established right; and *Doe v. Alvey*, No. 1:20-cv-410, 2021 U.S. Dist. LEXIS 55674 at *10 (S.D. Ohio Feb. 2, 2021) (holding that "a student-athlete's complaint about sexual assault to her coach constitutes constitutionally protected speech").

[52] *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989).

allegations of peer-on-peer sexual harassment of petitioners' daughter was inadequate and constituted unconstitutional sex discrimination in schools in violation of 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment.[53] The Supreme Court held that "Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools, or a substitute for § 1983 suits as a means of enforcing constitutional rights," and "§ 1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools," including in the case of school officials' inadequate responses to allegation of peer-on-peer sexual harassment.[54]  Ausberry's motion to dismiss this claim should be denied.

### D.  Due Process Claims

In *Perry v. Sindermann*, the Supreme Court clearly established the obvious principle that if public universities have mandatory disciplinary procedures and plaintiffs are eligible for the protections of those procedures, failing to follow the published procedures constitutes an unconstitutional deprivation of plaintiffs' property without due process.[55] In *Sindermann*, a lecturer at a public college was working under a contract for a certain term, with the option for the Board of Regents to renew the lecturer's contract at the end of the term.[56] The college also published a "Faculty Guide" that stated, "The Administration of the College wishes the faculty member to ***feel that he has permanent tenure***…as long as he is happy in his work."[57] (Emphasis added). Following the lecturer's public critique of the Board of Regents, the Board did not renew the lecturer's contract at the end of its term.[58] The Court found that the language in the faculty

---

[53] *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 250 (2009)
[54] *Id.* at 258.
[55] *See Perry v. Sindermann*, 408 U.S. 593 (1972).
[56] *Id.* at 595.
[57] *Id.* at 600.
[58] *Id.* at 595.

guide that encouraged professors to "feel" like they had tenure created a property right that cannot be deprived without due process, despite the lecturer's actual contract, which was clearly subject to termination at the end of its term.[59]

In the present case, Plaintiffs were not guided by some vague statement by LSU to "feel" like their reports would be investigated. Plaintiffs had a property right in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law. Unlike in *Sindermann*, LSU following Title IX procedures was not optional. Following procedures was mandatory after a student made a report. Acknowledging this clear Supreme Court ruling (and utilizing common sense), all Defendants should have known that Plaintiffs were entitled to LSU and its employees following LSU's own published procedures. Ausberry's motion to dismiss this claim should be denied.

### E. Prescription

The Civil Rights Act does not prescribe a statute of limitations. Instead, "[t]he statute of limitations for a suit brought under §1983 is determined by the general statute of limitations governing personal injuries in the forum state."[60] In Louisiana, the relevant prescriptive period is one year.[61] Although courts look to state law for the length of the prescriptive period, the time at which a §1983 claim accrues and the prescriptive period commences "is a question of federal law," "conforming in general to common-law tort principles."[62] As with Plaintiffs' §§1983, 1985, and 1986 claims, Ausberry's primary liability stems from his co-conspiratorship in the enterprise. Thus, all civil rights claims against Ausberry accrued when the Plaintiffs became aware of the

---

[59] *Id*. at 598.
[60] *Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016) (quoting *Piotrowski v. City of Hous*., 237 F.3d at 576.
[61] *See* La. Civ. Code Ann. art. 3492.
[62] *McDonough*, 139 S. Ct. at 2155 (quoting *Wallace*, 549 U.S. at 388; *King-White*, 803 F.3d at 754 (quoting *Frame*, 657 F.3d at 238.

facts, creating conspirator liability.[63] Due to the defendants' actions to conceal the conspiracy, Plaintiffs could not have known about Ausberry's participation in the conspiracy until the publication of the Husch Blackwell report in March 2021. Thus, the prescriptive period began to run in March 2021, and suit was filed three months later.

## V.    Negligence, Negligent Supervision, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress

### A.    Prescription

A motion to dismiss may be granted on a prescription defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling[64] Tort actions under Louisiana Civil Code article 2315 are subject to a one-year prescriptive period.[65] Typically, prescription commences to run from the day injury or damage is sustained.[66]Under Louisiana law, there are four jurisprudentially proven methods of extending prescription (or delaying the commencement of prescription).[67] *Contra non valentem* applies to prevent the running of liberative prescription: (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) Where the cause of action is not

---

[63] *See Adickes*, 398 U.S. 144; *Howser*, 942 F.3d 772; *Panayotides*, 35 F. Supp. 2d 411.

[64] *Hernandez*, 274 F. Supp. 3d at 615 (quoting *Taylor*, 744 F.3d at 946.

[65] La. Civ. Code art. 3492 ("Delictual actions are subject to a liberative prescription of one year.").

[66] *Id*. ("This prescription commences to run from the day injury or damage is sustained.").

[67] *Corsey v. State, Through Dept. of Corrections*, 375 So. 2d 1319 (La. 1979) ("The exception is founded on the ancient civilian doctrine of *Contra non valentem agere nulla currit praescriptio*, predating and within the penumbras of modern civilian codes, and it has been recognized from Louisiana's earliest jurisprudence.") (citing Comment, The Scope of the Maxim Contra Non Valentem in Louisiana, 12 Tulane L. Rev. 244 (1938); Planiol, Civil Law Treatise, Volume 1, Section 2704–05, Volume 2, Section 678 (LSLI translation, 1959); *Henson v. St. Paul Fire and Marine Ins. Co*., 363 So. 2d 711 (La. 1978); *Hyman v. Hibernia Bank & Trust Co*., 139 La. 411, 71 So. 598 (1916); *McKnight v. Calhoun*, 1884 WL 8050 (La. 1884); Quierry's Ex'r & Faussier's Ex'rs, 4 Mart. (O.S.) 609 (1817)).

known or reasonably knowable by the plaintiff.[68] This fourth, more modern, situation, which has been judicially characterized as a *contra non valentem* exception to the running of prescription, is generically similar to instances provided by statute where prescription does not begin to run until the claimant has knowledge of his cause of action.[69] In these situations, the cause of action does not mature (so prescription does not begin to run) until it is known or at least knowable.[70] It is also well-settled law that prescription does not begin to run on a continuing tort until the conduct is abated.[71] Prescription may also be interrupted when one acknowledges the right of the person against whom he is prescribing.[72] When prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors.[73]

Plaintiffs allege in the Complaint that Ausberry's negligent acts constituted a continuing tort in which Ausberry continued to ignore LSU's established Title IX policy and procedures and completely failed to achieve or even attempt compliance with federal regulations within LSU's athletics department. At all relevant times Ausberry has held a supervisory and/or directorial role in the LSU athletics department. His continuous negligence and negligent supervision caused damages to the Plaintiffs.[74]

---

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992); *Estate of Patout v. City of New Iberia*, 813 So. 2d 1248 (La. Ct. App. 3d Cir. 2002); *Risin v. D.N.C. Investments, L.L.C.*, 921 So. 2d 133 (La. Ct. App. 4th Cir. 2005); *Louisiana AG Credit, PCA v. Livestock Producers, Inc.*, 954 So. 2d 883 (La. Ct. App. 2d Cir. 2007); *Lopez v. House of Faith Non-Denomination Ministries*, 29 So. 3d 680 (La. Ct. App. 4th Cir. 2010).

[72] La. Civ. Code art. 3464.

[73] La. Civ. Code art. 3503.

[74] Kitsch's complaint went unaddressed in August 2019, compounding her mental illness; Owens' report of forcible rape went uninvestigated in April 2017, compounding her mental illness and allowing John Doe to sexually assault additional LSU students; Brennan's report of sexual assault by John Doe went uninvestigated in August 2018, compounding her mental illness, causing her to lose her job, and allowing John Doe to sexual assault additional LSU students; Richardson's multiple reports of sexual misconduct were either uninvestigated or inappropriately investigated throughout 2015-2018, compounding her mental illness, causing her to lose several job opportunities, and allowing John Doe and John Coe to sexually assault additional LSU students; Plaintiff Lewis's multiple reports of sexual misconduct were either uninvestigated or inappropriately investigated throughout 2017-2018, compounding her mental illness, causing her to lose several job opportunities, and allowing John Coe to sexually assault additional LSU students; Johnson's multiple reports of sexual misconduct were not investigated throughout 2017-2019,

As stated in the Complaint, Ausberry's negligent acts constituted a continuing tort in which he ignored LSU's established Title IX policy and failed to achieve or attempt compliance with federal regulations within LSU athletics. This continuing tort lasted at least through publication of the Husch Blackwell report. Because Ausberry's tortious conduct continued through March 2021, prescription could not have commenced to run until at least this date.

Plaintiffs remained ignorant of Ausberry's negligent conduct because of the lengths to which Ausberry and his co-defendants went to conceal LSU's non-compliance with law and LSU policies and procedures. Plaintiff Lewis could not have known about Ausberry's concealment of incriminating text messages from Coe and Richardson could not have known that the Title IX procedure followed by athletics was unlawful. Ausberry's role and its legal implications were not revealed to Plaintiffs until March 2021 via the publication of Husch Blackwell's report, revealing that: Ausberry continuously ignored LSU policy and failed to achieve or even attempt compliance with federal regulations within LSU athletics. To the extent that any prescriptive period had already begun to run in March 2021, that period would have been interrupted by joint-obligor President Thomas Galligan's admission that LSU "failed those who it was our first duty to protect." Doc. 22 at ¶1. LSU's acknowledgement interrupts prescription as to all joint and solidary obligors, *e.g.*, co-defendants.  Because Plaintiffs' complaint establishes a basis for tolling, their state tort claims survive dismissal on the basis of prescription.

---

compounding her mental illness, causing her to lose several tennis opportunities, and allowing John Coe and Julia Sell to discriminate against additional LSU students; Andries' reports of sexual misconduct were either uninvestigated or inappropriately investigated throughout 2016-2020, compounding Andries' mental illness, causing her to fall behind in her studies, and allowing John Roe to sexually assault additional LSU students; Jane Doe's reports of sexual misconduct were either uninvestigated or inappropriately investigated throughout 2018-2019, compounding her mental illness, causing her to lose educational opportunities, and allowing John Poe to continue to stalk her; Robertson's reports of sexual misconduct were either uninvestigated or inappropriately investigated throughout 2015-2017, compounding her mental illness, causing her to end her education, and allowing John Doe to sexually assault additional LSU students; Hovis' reports of sexual misconduct were either uninvestigated or inappropriately investigated throughout 2020, compounding her mental illness, causing Hovis' education to suffer and allowing John Loe to continue to retaliate against her.

### B.  Negligence

"There is an almost universal duty on the part of the defendant in negligence cases to use reasonable care so as to avoid injury to another. In some cases, the duty is refined more specifically that the defendant must conform his or her conduct to some specially defined standard of behavior."[75] In their Amended Complaint, Plaintiffs clearly pled that each of the individual Defendants, including Ausberry, owed a duty of "reasonable care" to them "to ensure their safety and freedom from sex-based assault, harassment, and abuse while students at LSU" as well as nearly twenty ways in which Ausberry breached those duties to Plaintiffs. *See* Doc. 22 at ¶¶481 and 483. Plaintiffs have pled that Defendants had a duty to keep them safe from assault and abuse—a duty that is well-established in existing case law and as a "matter of social policy."[76] Assessing the existence of a duty is not appropriate for disposition on a Rule 12(b) motion because it is a fact-intensive inquiry. "Generally, there is an almost universal legal duty on the part of a defendant in a negligence case to conform to the standard of conduct of a reasonable person in like circumstances. But whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case, and the relationship of the parties."[77]

As there is no categorical rule excluding a duty for school officials to maintain a safe environment for students, Ausberry's "no duty" argument must fail. "A 'no duty' defense 'generally applies when there is a categorical rule excluding liability as to whole categories of

---

[75] *Boykin v. Louisiana Transit Co.*, No. 96-1932 (La. Mar. 4, 1998), 707 So. 2d 1225, 1231.

[76] *See e.g.*, *River House Partners, LLC v. Grandbridge Real Est. Cap. LLC*, 2015 WL 6142874, at *4 (M.D. La. Oct. 19, 2015)( "…a tort claim arises out of breaches of duties imposed by law as a matter of social policy.").

[77] *Griffin v. Shelter Ins. Co.*, 2002-2628 (La. App. 1 Cir. Sep. 26, 2003), 857 So. 2d 603, 605, *writ denied*, 2003-2992 (La. Jan. 16, 2004), 864 So. 2d 635 (citing *Bowman v. City of Baton Rouge/Parish of East Baton Rouge*, 2002–1376, pp. 5–6 (La. App. 1st Cir. May 9, 2003). *See also Cuccia v. Hillhaven Corp.*, 1993 WL 114500, at *1 (E.D. La. Mar. 31, 1993)("In its motion, Defendant suggests that Plaintiffs cannot state a claim for breach of fiduciary duty. Plaintiffs ask this court to find that the relationship between a nursing home operator and resident should be viewed as one giving rise to such a duty. This court finds that the Complaint does state a claim based on a breach of an alleged fiduciary duty. It remains to be seen from the facts of this case whether such a duty existed.").

claimants or of claims under any circumstances.'"[78] Ausberry's argument that the negligence claim must fail because he had no duty to handle and investigate claims of sex discrimination is an overly narrow reading of Plaintiffs' claims and ignores the facts and claims stated in the Amended Complaint. For these reasons, Ausberry's motion to dismiss Plaintiffs' negligence claims must be denied.

### C. Negligent Supervision

"Louisiana courts may hold a supervisory employee liable 'where he negligently created or negligently failed to correct a dangerous condition of which he was or should have been aware under the circumstances.'"[79] "A claim for negligent hiring and supervision is analyzed under the same duty-risk standard for all negligence claims in Louisiana. This standard requires proof of duty, breach of duty, causation, scope of liability or protection, and damages."[80] Plaintiffs' Amended Complaint states each of the elements required. Doc. 22 at ¶491. Plaintiffs' negligence and negligent supervision claims are separate and distinct from their Title IX claims as they are based upon Defendants' duty of "reasonable care" to Plaintiffs "to ensure their safety and freedom from sex-based assault, harassment, and abuse while students at LSU." *See* Doc. 22 at ¶¶481 and 483. Accepting Plaintiffs' allegations as true, as this Court must, Ausberry's motion to dismiss the negligent supervision claim against him must be denied.

### D. Negligent Infliction of Emotional Distress

---

[78] *Chatman v. S. Univ. at New Orleans*, 2015-1179 (La. App. 4 Cir. Jul. 16, 2016), 197 So. 3d 366, 378 (quoting *Pitre v. La. Tech Univ.*, 95–1466, p. 22 (La. May 10, 1996), 673 So.2d 585, 596 (Lemmon, J., concurring)).

[79] *Autin v. Louisiana Dep't of Pub. Safety & Corr.*, No. CV 20-1214, 2021 WL 1210471, at *11 (E.D. La. Mar. 31, 2021), *reconsideration denied sub nom. Autin v. Goings*, No. CV 20-1214, 2021 WL 4476776 (E.D. La. Sept. 30, 2021*), amended sub nom. TROY AUTIN v. ROBERT GOINGS SGT., ET AL. Additional Party Names: Jonathan Stringer, Lance Wallace*, No. CV 20-1214, 2021 WL 5356875 (E.D. La. Nov. 17, 2021) (quoting *Fabre v. Travelers Ins. Co.*, 286 So.2d 459, 464 (La. App. 1 Cir. 1973)).

[80] *Id*. (citing *Kelley v. Dyson*, 08-1202 (La. App. 5 Cir. Mar. 24, 2009), 10 So.3d 283, 287-88).

Ausberry's only argument against Plaintiffs' NIED claims is that he had no duty towards any of the Plaintiffs. As explained above, this is simply inaccurate. Ausberry does not raise issues with any other element of the Negligent Infliction of Emotional Distress Claims against him.  His motion to dismiss this claim must be denied.

### E.  Intentional Infliction of Emotional Distress

Ausberry argues that Plaintiffs' IIED claims are inadequate because the conduct alleged does not meet the threshold requirement of extreme and outrageous. This is ultimately a question for a jury to decide. At this phase of the litigation and in response to a Rule 12(b)(6) motion, Plaintiffs must only present facts that, if true, would plausibly allow a finder of fact to determine that the Defendants' conduct is extreme and outrageous. Plaintiffs have alleged conduct such as

> …dismissing Plaintiffs' allegations of sexual misconduct, failing to properly investigate such claims or protect Plaintiffs from their assailants, justifying the behavior of the assailants, failing to properly discipline the assailants, openly mocking and spreading rumors about Plaintiffs, isolating and alienating Plaintiffs, and improperly disciplining and retaliating against Plaintiffs, the LSU Defendants engaged in extreme and outrageous conduct. Doc. 22 at ¶506.

These facts provide enough information for a jury to determine that the Defendants' conduct was extreme and outrageous.  To the extent Ausberry argues that Plaintiffs have not pled his intent: "All Defendants specifically intended for their conduct to cause Plaintiffs to suffer emotional distress so severe that it would silence any additional disclosures." Doc. 22 at ¶506.

To the extent that Ausberry's motion attempts to argue that Plaintiffs' emotional distress was not severe, the Amended Complaint details Plaintiffs' emotional distress as including post-traumatic stress disorder, body aches, social isolation, fear of being alone with men, substance use necessitating rehabilitation care and sober homes, vivid nightmares, headaches, total lack of self-worth, eating disorders, self-harm, panic attacks, constant fear of attacks, suicidal actions, obsessive compulsive disorders, inability to perform simple tasks such as getting out of bed or

changing clothes, loss of a sense of professional credibility, and intense shame.  Doc. 22 at ¶¶155, 176, 191, 208, 243, 282, 301, 321, 339, and 352.

Each of the Plaintiffs experienced a pattern of retaliation that culminated into a pattern of intentional behavior and outrageous conduct. It was not until the publication of the Husch Blackwell report in March 2021 that Plaintiffs were able to see that Defendants' outrageous conduct was not an isolated incident but a pattern of intentional behavior.  Thus, Ausberry's motion to dismiss this claim must be denied.

## VI.   Fed. R. Civ. P. 12(b)(1) and Eleventh Amendment Immunity

Ausberry challenges the court's subject matter jurisdiction per Louisiana's Eleventh Amendment sovereign immunity. The Eleventh Amendment to the U.S. Constitution provides the general rule of sovereign immunity and bars suits against a state. However, Congress and the Supreme Court have identified extensive exceptions to this general rule. The first exception is found in the seminal case *Ex parte Young*, in which the Supreme Court found that the Eleventh Amendment permits a private plaintiff to sue a state actor for prospective injunctive relief and, if successful, to stop a state from taking illegal action.[81] The second exception is found in congressional abrogation of sovereign immunity as under Congress's authority to enforce the civil rights amendments.[82] The third exception is found in a state's ability to waive its sovereign immunity.[83] Finally, state actors may always be sued in their personal capacities.[84]

Louisiana has not waived sovereign immunity in federal courts; thus, the third exception does not apply to this case. For each cause of action against Ausberry, a determination of sovereign

---

[81] *Ex parte Young*, 209 U.S. 123 (1908).
[82] *See Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976).
[83] *See, e.g., College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999).
[84] *See Johnson v. Lankford*, 245 U.S. 541 (1918); *Hopkins v. Clemson Agr. College of South Carolina*, 221 U.S. 636 (1911); *Tindal v. Wesley*, 167 U.S. 204 (1897).

immunity requires analyzing (1) whether the suit is for prospective injunctive relief or retrospective monetary relief, (2) whether congress has waived sovereign immunity for a particular cause of action, and (3) whether the cause of action is brought against Ausberry in his personal or official capacity. In his motion to dismiss, Ausberry challenges each claim against him except the Title IX claims.

### A. Civil Rights Claims

Plaintiffs bring civil rights claims against Ausberry in his personal and official capacities for prospective injunctive relief and retroactive monetary damages.[85] Civil rights claims for prospective injunctive relief are validly brought under the *Ex parte Young* doctrine. Claims for retrospective monetary damages are barred against Ausberry in his official capacity but allowed in his personal capacity.[86] "State officials sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them…[O]fficers sued in their personal capacity come to court as individuals."[87] Ausberry's motion to dismiss these claims should be denied.

### B. State Law Claims

Plaintiffs bring state law claims against Ausberry in his personal and official capacities for prospective injunctive relief and retroactive monetary damages.[88] As with all other claims, claims for prospective injunctive relief are always allowed under the *Ex parte Young* doctrine. Ausberry relies on *Raj v. Louisiana State University* on the premise that all Plaintiffs' state law claims against Ausberry are barred by sovereign immunity.[89] However, the Fifth Circuit dismissed Raj's

---

[85] Doc. 22 at 424, 431, 432, 434, 439, 440, 442, 450, 452, 455, 456, 49 ("the individually named Defendants in their official capacities shall be referred to as 'the LSU Defendants.'").

[86] *Hafer v. Melo*, 502 U.S. 21 (1991).

[87] *Id*. at 26.

[88] Doc. 22 at 480, 488, 490, 496, 498, 503, 505, 509, 530, 534, 580, 582, 586, 49 ("the individually named Defendants in their official capacities shall be referred to as 'the LSU Defendants.'").

[89] *Raj v. Louisiana State Univ*., 714 F.3d 322, 329 (5th Cir. 2013).

state law claims as barred by the Eleventh Amendment because Raj only sued the university itself as opposed to suing a university official.[90] There is no immunity that bars state law claims against Ausberry in his personal capacity from adjudication in a federal court. Ausberry's motion to dismiss these claims should be denied.

## VII.    **Miscellaneous Matters**

Plaintiffs have properly pled numerous causes of action against Ausberry. Ausberry's assertions that: 1) the prescription period has run on Plaintiffs' claims; and 2) he is entitled to qualified immunity, are inaccurate. Therefore, this court should grant Plaintiffs leave to amend their complaint as necessary, should such an action be appropriate in this matter.

Some Defendants have asserted that their Rule 12 motions to dismiss incorporate by reference all arguments found in co-defendants' briefs. To the extent that this court allows such incorporation, Plaintiffs also incorporate all arguments in opposition to the same.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny Defendant Verge Ausberry's Motion to Dismiss with the exception of the claim of Enrichment without Cause.


Respectfully Submitted,

/s/ *Catherine E. Lasky*
Catherine E. Lasky (La. Bar 28652)
Endya L. Hash (La. Bar 38260)
KATIE LASKY LAW
619 Homedale Street
New Orleans, Louisiana 70124
P: (504) 584-7336 / F: (504) 375-2221
katie@katielaskylaw.com
endya@katielaskylaw.com

/s/ *Elizabeth K. Abdnour*
Elizabeth K. Abdnour
*Pro Hac Vice*
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
P: (517) 292-0067 / F: (517) 709-7700
elizabeth@abdnour.com

---

[90] *Id.*

*/s/ **Karen Truszkowski***
Karen Truszkowski
*Pro Hac Vice*
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
P: (844) 534-2560 / F: (800) 531-6527
karen@temperancelegalgroup.com

*Attorneys for Plaintiffs*