## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS ET AL**<br>*Plaintiff*<br><br>**v.**<br><br>**LOUISIANA STATE UNIVERSITY ET AL**<br>*Defendants* | **Case No.: 21-242**<br><br>**Division WBV-SDJ**<br><br>**JUDGE WENDY B. VITTER**<br><br>**MAGISTRATE JUDGE JOHNSON** |

## PLAINTIFFS' OPPOSITION TO
## DEFENDANT EDWARD R. ORGERON, JR.'S MOTION TO DISMISS

Plaintiffs, through undersigned counsel, respectfully submit this Opposition to Defendant Edward R. Orgeron, Jr.'s Motion to Dismiss ("Motion").[1] The Court should reject Orgeron's arguments that Plaintiffs have failed to state a claim because (i) Plaintiffs have alleged sufficient facts to support their various claims; (ii) Plaintiffs' claims are not time-barred; (iii) Title IX authorizes suits against school officials for retaliation; (iv) Plaintiffs have alleged sufficient facts to support claims for violations of the Louisiana Racketeering Act ("LRA") by Orgeron; and (v) Plaintiffs have standing to assert an LRA claim. Therefore, the Motion should be denied.

## RELEVANT FACTS

Plaintiffs' Complaint was brought by ten female-presenting and/or LGBTQ+ identifying current and former students at Louisiana State University ("LSU") who brought, attempted to bring, or were dissuaded entirely from bringing complaints of sex-based discrimination, including rape, sexual assault, sexual harassment, and/or stalking, perpetrated by male LSU students and LSU employees. Doc. 22 at ¶109. For years, LSU, including Orgeron, and Tiger Athletic Foundation ("TAF") ignored and perpetuated known systemic deficiencies in LSU's response to

---

[1] Doc. 107.

reports of sexual misconduct in favor of promoting and glorifying LSU student-athletes and coaches to reap the financial and reputational benefits of a venerated college football program by protecting certain athletes from viable Title IX claims and by stifling LSU's Title IX policies as a whole. *Id*. at ¶¶428, 437. This behavior created a campus culture which ignores and even tacitly allows sex-based trauma to be inflicted upon female presenting and LGBTQ+ identifying individuals and a prioritization of sports and money over academics and student well-being. *Id*. at ¶¶430, 530.

Orgeron has served in his official and personal capacity as the head football coach at LSU from September 2016 to present and also served as the defensive line coach from January 2015 to September 2016. *Id*. at ¶36. The Title IX Policy reads: "Responsible Employees who receive notice or witness incidents of Sexual Misconduct must promptly notify the Title IX Campus Coordinator." *Id*. at ¶56-57. The Title IX Policy identifies Responsible Employees as any employee except victims' advocates, mental health counselors, or LSU Ombudsperson. *Id*. at ¶57. At all times during Orgeron's employment, regardless of whether he was the head football coach, he was a Responsible Employee with obligations to report disclosures of sexual misconduct ***to the Title IX Coordinator***. *Id*. at ¶82.  (Emphasis added).  During the time he was head coach, Orgeron also had authority to hire, fire, and discipline LSU Responsible Employees in the football department and used this status to influence LSU Responsible Employees to avoid mandatory reporting requirements, thereby violating his own employment policies. Doc. 22-2 at 4.

LSU retained the Husch Blackwell law firm to investigate LSU's Title IX policies and procedures *Id*. at ¶68. On March 5, 2021, Husch Blackwell's investigative report and findings ("Report") were publicly released. According to the Report, the prevalence of retaliatory coercion in LSU Athletics (to which Orgeron directly contributed) indicated "a deeply entrenched cultural

problem at LSU" which is known to encourage sexual harassment and assault by creating a hostile environment that treats women as second-class citizens. *Id*. at ¶¶82, 87, 94, 436, and 87.

Plaintiffs' Amended Complaint sets forth how in fall 2016, Plaintiff Robertson told her new boyfriend, who had been recruited to play on the LSU football team, about her rape by John Doe, another LSU football player. *Id*. at ¶¶159, 163-64, and 169. Robertson's boyfriend disclosed the rape to Orgeron, and Orgeron responded by telling him not to be upset because "everybody's girlfriend sleeps with other people." *Id*. at ¶169. Orgeron never reported the rape to the Title IX Coordinator or offered Robertson any support measures. *Id*. at ¶170. After being raped and harassed by John Doe, Robertson's grades began to decline, she began drinking heavily, using drugs and was sent to two rehabilitation centers. *Id*. at ¶¶172-73. She was ultimately forced to leave LSU before graduating, and must repay her TOPS scholarship. *Id*. at ¶174. Robertson learned from the Report that John Doe's name was not included in any of the records of her rape. *Id*. at ¶¶171, 448.

The Amended Complaint also alleges that Orgeron was aware of Coe's domestic violence against Plaintiff Lewis as early as July 2018. *See, e.g.*, *Id*. at ¶¶256, 265-271. The entire football coaching staff, managed by Orgeron, enabled the abuse and retaliated against Plaintiff Lewis for finally disclosing the abuse and intended for their conduct to cause Plaintiffs to suffer emotional distress so severe that it would silence any additional disclosures. *Id*. at ¶¶268-69 and 506.

Plaintiffs allege that Orgeron was a "Manager" of the LRA Enterprise with knowledge of Enterprise's scheme, including how the Enterprise made its money through racketeering activities. Orgeron was also aware that the Enterprise permeated every level of LSU football, the department under Orgeron's control. Orgeron was well aware of the Enterprise's scheme, as its goal was to increase Orgeron's own income. *Id*. at ¶¶567 and 572. Orgeron incentivized other LSU

Responsible Employees to intimidate witnesses and conceal reports of Sexual Misconduct; accepted incentive-based compensation from TAF that intentionally influenced his reporting of Sexual Misconduct; and made available things of value to be used for the purpose of running the Enterprise. *Id*. at ¶¶96-98, 548.

## LAW AND ARGUMENT

"It is well-settled in this Circuit that motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and are rarely granted."[2] There exists "a powerful presumption against rejecting pleadings for failure to state a claim[,]"[3] and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[4] Courts accept " all well-pleaded facts as true and [view] those facts in the light most favorable to the plaintiff[]."[5] In deciding a Rule 12(b)(6) motion to dismiss, this Court may take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[6] The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.[7] A complaint "does not need detailed factual allegations . . . but must provide the [plaintiff's] grounds for entitlement to relief—including factual allegations that when assumed to

---

[2] *Pride Centric Resources, Inc*. v. *LaPorte, et al*., 2021 WL 3741529, at *2 (E.D. La. Aug. 24, 2021) (citing *Financial Acquisition Partners LP* v. *Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys*., 117 F.3d 242, 247 (5th Cir. 1997))).

[3] *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985); *Hernandez v. Baylor Univ*., 274 F. Supp. 3d 602, 609 (W.D. Tex. 2017) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co*., 563 F.3d 141, 147 (5th Cir. 2009))).

[4] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[5] *Meador v. Apple, Inc*., 911 F.3d 260, 264 (5th Cir. 2018) (quotation omitted).

[6] *Pride Centric Resources, Inc*. 2021 WL 3741529, at *2 (citing *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008)).

[7] *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 594 (8th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322–23 (2007)).

be true raise a right to relief above the speculative level."[8] That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" meaning the court can draw the reasonable inference that the defendant is liable for the misconduct alleged.[9] Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[10]

## I.  **Title IX**

### A.  **Retaliation**

With respect to Title IX, retaliation is a claim that is properly brought against individuals as well as institutions. In *Jackson v. Birmingham Board of Education*, the Supreme Court held that retaliation against a person who complains about sex discrimination is itself a form of discrimination "on the basis of sex" forbidden by Title IX and defined retaliation as an intentional act in response to a protected action.[11] "The very concept of retaliation is that the retaliating party takes action against the party retaliated against after, and because of, some action of the latter."[12] Applying *Jackson*, courts have recognized the following elements support a claim for Title IX retaliation: (1) a person engaged in protected activity; (2) materially adverse action was taken against that person; and (3) there was a "but-for" causal connection between the protected activity and the materially adverse reaction.[13] Federal courts have repeatedly affirmed that retaliation is a violation of federal civil rights.[14]

---

[8] *Hernandez*, 274 F. Supp. 3d at 609 (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

[9] *Id*. at 678 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Meador*, 911 F.3d at 264 (quotation omitted).

[10] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

[11] 544 U.S. 167, 173-74 (2005).

[12] *Fed. Mar. Bd. v. Isbrandtsen Co*., 356 U.S. 481, 514 (1958).

[13] *See, e.g*., *Trudeau v. University of North Texas*, No. 20-40532 (5th Cir. July 9, 2021).

[14] *See, e.g.*, *Jackson*, 544 U.S. 167; *Peters v. Jenney*, 327 F.3d 307, 320-21 (4th Cir. 2003); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

Unlike general claims of Title IX violations, which must be made against recipients of federal funding, Title IX retaliation claims may be brought against both institutions and individuals. The language of the law itself makes this clear: "No recipient *or other person* may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by title IX…Intimidation, threats, coercion, or discrimination …constitutes retaliation."[15]

To establish a *prima facie* case of Title IX retaliation in the Fifth Circuit, a plaintiff must show that they participated in activity protected by Title IX and that the defendant took an adverse action against them because of that activity.[16] "A Title IX retaliation plaintiff must show that the funding recipient *or its representatives* took an adverse action against them because they complained of discrimination."[17] Plaintiffs allege that Orgeron engaged in materially adverse actions against Plaintiffs when he failed to report Plaintiffs disclosures of sexual misconduct by student-athletes and failed to initiate appropriate interim measures to ensure their safety and ongoing equal access to educational opportunities. Doc. 22 at ¶417; see also Relevant Facts *supra*.

Finally, Orgeron argues that he was not a Responsible Employee until he was promoted to head coach of the football team in 2017. Orgeron does not and cannot cite any authority to support this proposition and this is contrary to LSU's Title IX Policy and the allegations in Plaintiffs' Amended Complaint. Orgeron's argument is itself an admission that he did not abide by LSU's Title IX Policy and instead siloed all reports of sexual misconduct within the Athletic Department. Doc. 107-1 at ¶6-7 ("[Orgeron] would have reported any misconduct of which he became aware to Coach Miles"). Orgeron was always a Responsible Employee, regardless of whether he was

---

[15] 34 CFR § 106.71(a) (emphasis added).

[16] *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864 (M.D. La. 2014).

[17] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 586 (5th Cir. 2020) (citing *Sanches v. Carrollton-Farmers Branch Independent*, 647 F.3d 156 (5th Cir. 2011)) (emphasis added).

head coach, had a duty to uphold LSU's Title IX Policy, and his failure to do so was materially averse to Plaintiffs.

The Amended Complaint specifically addresses three specific incidents where Orgeron was required to fulfill his reporting duties as a Responsible Employee and failed to do so. Doc. 22 at ¶169, 255-256, and 273. But for Orgeron's failures to enforce LSU's Title IX Policy, Brennan would not have been retaliated against at her job in LSU's football recruiting department, and Richardson, Robertson, and Plaintiff Lewis would not have been re-traumatized by subsequent sexual assaults and retaliation. Plaintiffs have sufficiently pleaded claims of Title IX retaliation against Orgeron, and his motion should be denied.

### B. Prescription

A motion to dismiss may be granted on a prescription defense where it is evident from the face of the pleadings that the action is time-barred and the pleadings fail to raise some basis for tolling.[18]  It is undisputed that Title IX claims are subject to the state statutes of limitations for personal injury actions, and in Louisiana, the relevant prescriptive period is one year.[19]

Although courts look to state law for the length of the prescriptive period, the time at which a Title IX claim accrues and the prescriptive period commences "is a question of federal law," "conforming in general to common-law tort principles."[20] Accrual under federal common law occurs and the prescriptive period begins to run the moment the plaintiff becomes aware that she has suffered an injury.[21] However, a plaintiff's awareness encompasses two elements: (1) existence

---

[18] *Hernandez*, 274 F. Supp. 3d at 615 (quoting *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014)).

[19] *Sewell*, 974 F.3d at 583 (citing *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015); *Griffin v. Round Rock Indep. Sch. Dist.*, 82 F.3d 414, 1996 WL 166999, at *1 (5th Cir. 1996); La. Civ. Code art. 3492; *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 739 (5th Cir. 2017)).

[20] *McDonough v. Smith*, 139 S. Ct. 2149, 2155, 204 L. Ed. 2d 506 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)); *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir.2011)).

[21] *King-White*, 803 F.3d at 762 (internal citations omitted).

of the injury, and (2) "causation, that is, the connection between the injury and the defendant's actions."[22] A Plaintiff does not need to know that they have a legal cause of action, but ***they need to have an awareness of the facts that would ultimately support the claim***.[23] (Emphasis added)

Orgeron argues that the Title IX retaliation claims against him by Plaintiffs Robertson, Lewis, and Richardson are all prescribed, as their injuries were sustained over one year from the filing of this suit. However, Orgeron fails to consider that the causation between Plaintiffs' injuries and Orgeron's actions was not known or reasonably knowable by these Plaintiffs until the release of the Report in March 2021, well within a year of filing this suit. Until the release of the Report, none of the Plaintiffs were or could have been aware of Orgeron's materially adverse actions against them including his concealment of their reports and participation in retaliation against them Because Plaintiffs' complaint establishes a basis for tolling, the Plaintiffs' Title IX retaliation claims have survived dismissal based on prescription.

## II.    Louisiana Racketeering Act and Conspiracy

In their Amended Complaint (Doc. 22) and LRA Case Statement (Doc. 103), Plaintiffs have "plausibly pleaded" all the elements of an LRA claim against Orgeron.

> To state a valid civil claim under Louisiana Racketeering Act, a party must show that (1) a person engaged in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise. The term 'pattern of racketeering activity' means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, principals, victims, or methods of commission . . . La. Rev. Stat. 15:1352(C). Racketeering activity' means 'committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit any crime that is punishable under' one of specified Louisiana criminal statutes. La. Rev. Stat. 15:1352(A)(1)-(65).[24]

---

[22] *Id*. (quoting *Piotrowski*, 237 F.3d at 576 (citation and internal quotation marks omitted in original)).

[23] *Id*.

[24] *Viking Constr. Grp., LLC v. Satterfield & Pontikes Constr. Grp. Inc.*, 2018 WL 401182, at *2 (E.D. La. Jan. 12, 2018), *aff'd sub nom. Viking Constr. Grp., L.L.C. v. Satterfield & Pontikes Constr. Inc.*, 728 F. App'x 405 (5th Cir. 2018) (citing *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003)).

A "defendant need not personally commit the predicate acts provided that the evidence is sufficient to connect him to the fraudulent scheme."[25] "In addition, where an act can be attributed to the conspiracy itself, it can be imputed to each co-conspirator."[26]

### A. Participation in the Enterprise

Plaintiffs' Amended Complaint and LRA Case Statement detail that Orgeron is liable under La. R.S. § 15:1353(A) for knowingly receiving funds generated by the Enterprise designed to protect and maximize the continuing future revenue created by LSU's successful athletics programs; Orgeron is liable under La. R.S. § 15:1353(B) for knowingly maintaining control of and an interest in the Enterprise through a pattern of racketeering activity; Orgeron is liable under La. R.S. § 15:1353(C) for knowingly associating with the Enterprise to conduct or participate in the affairs of the Enterprise through the pattern of racketeering activity; and Orgeron is liable under La. R.S. § 15:1353(D) for conspiring with leaders and managers of the Enterprise to conduct or participate in the affairs of the Enterprise through a pattern of racketeering activity by agreeing with one or more co-conspirators to pursue the common criminal objective of operating the Enterprise designed to protect and maximize the future revenue created by LSU's successful athletics programs by, *inter alia*, violating the rights of sexual misconduct victims, including Plaintiffs, through a pattern of racketeering activity.[27]

Orgeron's main complaint regarding Plaintiffs' LRA allegations is his contention that Plaintiffs allege "knowledge" and an "agreement" without alleging the specific factual scenario giving rise to that knowledge or agreement. It is well-settled law that knowledge and agreement

---

[25] *See Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112, 115 (5th Cir. 1987).

[26] *Cty. of El Paso, Tex. v. Jones*, 2009 WL 4730303, at *12 (W.D. Tex. Dec. 4, 2009) (citing *Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946)).

[27] Orgeron inexplicably argues that Plaintiffs' incorporation by reference of the facts pleaded in the Amended Complaint and Case Statement is some sort of admission that there are no facts to support their allegations against him. Orgeron cites no authority to support this contention and such an idea would defy the requirements of Rule 8.

may be established by pleading sufficient facts to allow a court to draw a plausible inference of such agreement.[28] Even in cases in which various federal statutes have required a heightened pleading standard for knowledge or agreement, the Fifth Circuit has found that facts indicating the defendant had control over certain departments and/or information, that a conclusion was so obvious that the defendant must have been aware of it, or that the defendant had motive and opportunity meet this highlighted pleading standard.[29] The Fifth Circuit and the Supreme Court have continuously acknowledged that the inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."[30] The totality of the facts alleged by Plaintiffs must be considered to determine the plausibility of Orgeron's knowledge or agreement and his request that this court require an even stricter plausibility standard to LRA claims should be denied.

Plaintiffs' Amended Complaint alleges an Enterprise that was so well integrated into LSU Athletics, specifically the football program and directly incorporated into Orgeron's own contract, that Orgeron could not reasonably believe any funds received from or used by the LSU football program were not a result of or in furtherance of the Enterprise. Orgeron's motion attempts to convince this Court that there is no way Orgeron could have known of this Enterprise, but for the purpose of this motion, Plaintiffs' version of the facts must be accepted as true. Plaintiffs have pleaded sufficient information to allow this Court to infer that Orgeron's required knowledge is plausible and that the members of the Enterprise had an agreement. Plaintiffs have pleaded sufficient facts to sustain an LRA cause of action against Orgeron.

---

[28] *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Iron Workers Benefit & Pension Fund - Iron Workers Dist. Council Philadelphia & Vicinity v. Anadarko Petroleum Corp.*, 788 F. App'x 268, 270 (5th Cir. 2019); *Masel v. Villarreal*, 924 F.3d 734, 747 (5th Cir. 2019), *as revised* (June 6, 2019).
[29] *See generally Id.*
[30] See *Tellabs*, 551 U.S. 308 at 322–23 and *Iron Workers*, 788 F. App'x at 270.

### B. Racketeering Activity

Throughout his Motion, Orgeron focuses on denying the various factual allegations in the Amended Complaint. However, factual denials are irrelevant at this stage of the litigation as this Court must only determine whether Plaintiffs' allegation, if ***taken as true***, are plausible. In addition, and just as importantly, to be liable under the LRA, a defendant does not need to actually commit a predicate act—a defendant need only to attempt to commit, conspire to commit, solicit, coerce or intimidate another person to commit the predicate act. *See supra*.

#### i. Intimidating Witnesses

Witness intimidation consists of intentionally attempting to intimidate or impede by threat of force a witness to influence reporting of criminal conduct. Witnesses include victims or a person the offender reasonably believes to have reported a crime to a peace officer.[31] Thus, to sustain a claim under the LRA, Plaintiffs must only plead that Orgeron attempted or solicited another to intimidate or impede a witness to influence the witness to not report criminal conduct. Plaintiffs' Amended Complaint, attachments thereto, judicially filed documents referenced therein, and LRA Case Statement are replete with examples of Orgeron and his employees attempting to intimidate reporters of criminal conduct or to impede their future reporting.[32] As a Manager of the Enterprise, Plaintiffs have adequately alleged that Orgeron knew of and encouraged witness intimidation. Orgeron and the entire Enterprises used intimidation and the threat of retaliation against survivors to silence them from reporting sexual misconduct.

#### ii. Injuring Public Records

Injuring public records consists of the intentional concealment of any public record. All documents required to be kept by all LSU employees, such as disciplinary and Title IX documents,

---

[31] *See* La. Rev. Stat. § 14:129.1.
[32] *See, e.g.,* Doc. 22 at ¶¶25, 93, 146, 169, 183, 271; Doc. 22-1 at 96; Doc. 103 at 7, 17, 41-47.

are public records. Because all LSU employees are required to report disclosures of sexual misconduct, every instance of non-reporting is an intentional injury to the public records and Orgeron cites no authority to the contrary. Plaintiffs have sufficiently pleaded facts to support their LRA claim based on injuring public records by Orgeron. Doc. 22 at ¶¶170, 171.

### iii.  *Money Laundering*

Orgeron argues that Plaintiffs' LRA claim based on the predicate act of money laundering must fail because it is not likely that Orgeron "knew" that his bonus compensation was derived from the Enterprise. This argument fails for the same reasons discussed above. This Court should take all of Plaintiffs' well-pleaded facts as true and analyze the totality of these facts to determine whether Orgeron's knowledge is plausible based on his control over the football program, his motive and opportunity to participate in the Enterprise, the plain language of his contract (which is a part of the Amended Complaint) and the obvious nature of LSU's prioritization of football wins over the education of survivors of sexual misconduct. By arguing that Orgeron had no knowledge of the Enterprise, Orgeron is asking this court to make an impermissible factual determination that disfavors Plaintiffs.[33]

### C.  Prescription

As stated above, a motion to dismiss may be granted on a prescription defense only where it is evident from the pleadings that the action is time-barred and the pleadings fail to raise some basis for tolling.[34] The LRA's five-year limitations period for civil claims is fixed by statute.[35] Importantly, the LRA's prescriptive period is distinguished from the RICO statute of limitations

---

[33] *See Meador*, 911 F.3d at 264.

[34] *Hernandez*, 274 F. Supp. 3d at 615 (quoting *Taylor*, 744 F.3d at 946 (5th Cir. 2014)).

[35] La Rev. Stat. § 15:1356(H)("Notwithstanding any other provision of law, a criminal or civil action or proceeding under this Chapter may be commenced at any time *within five years after the conduct in violation of a provision of this Chapter terminates or the cause of action accrues*.")(emphasis added).

because it is a statutorily created prescriptive period. RICO's statute of limitation is not found within the RICO statute, but is created by the common law primarily through the Supreme Court's comparison to the Clayton Act. However, the Louisiana Legislature enacted the LRA with its own statutory language for the prescriptive period. Because the LRA prescriptive period is based on statutory language, the majority of the RICO jurisprudence created by comparison to the Clayton Act is simply inapplicable when it contradicts the statutory language of the LRA. "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."[36] The plain language chosen by the Louisiana Legislature is that the five year prescriptive period commences either after the prohibited conduct or after the cause of action accrues.[37] Louisiana courts have interpreted the accrual of a cause of action to occur once the complainant has incurred injury and has actual or constructive knowledge of the facts indicating a cause of action.[38]

The Amended Complaint clearly states that the conduct giving rise to Plaintiffs' causes of action under the LRA are ongoing. Doc. 22 at ¶¶575, 566 ("the acts of racketeering by Defendants have been continuous during the past eight years for all named Defendants, and there is a continued threat of repetition of such conduct."). Without termination of this conduct, Plaintiffs' causes of action cannot prescribe under the first statutory scenario. Under the second statutory scenario, Plaintiffs' causes of action will prescribe five years after Plaintiffs discovered the facts indicating they had a cause of action. As alleged in the Amended Complaint for all Plaintiffs, this knowledge was obtained with the publication of the Report in March 2021. Prior to that time Plaintiffs could

---

[36] *Id.* at § 1:4.

[37] *Id.* at § 15:1356(H) and 1:3 ("Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language.").

[38] *Ames v. Ohle*, 2011-1540 (La. App. 4 Cir. May 23, 2012), 97 So. 3d 386, 394, *decision clarified on reh'g* (July 11, 2012), *writ denied*, 2012-1832 (La. Nov. 9, 2012), 100 So. 3d 837.

not have known of the actions of Orgeron, such as the concealment of reports of sexual misconduct, and their connection to the Enterprise. Doc. 22 at ¶376. Because Plaintiffs' Amended Complaint establishes a basis for tolling, Plaintiffs' LRA claims are not prescribed on their face.

### D.  Standing

Orgeron asserts that Plaintiffs have not sufficiently alleged the requisite injury to sustain an LRA claim. Orgeron's argument ignores the significant distinctions in the injury language in the LRA and that of RICO. This distinction must not be overlooked. Specifically, Section 15:1356(E) details the civil remedies for LRA violations and provides, "**Any person who is injured by reason of any violation of the provisions of R.S. 15:1353** shall have a cause of action against any person engaged in racketeering activity…."[39] While the "by reason of" language of the statute tracks that of RICO Section 1964(c), the "any person who is injured" is different, and this Court must give import to the language used by the Louisiana Legislature.[40] The injury provisions of RICO require a plaintiff to show injury to "his business or property."[41] Because this RICO language pre-dated the enacting of the LRA civil remedy statute by over a decade, following the rules of statutory construction, this Court must recognize that the Louisiana legislature intended for the LRA to differ from federal RICO by its choice to use different language, and as a result, Plaintiffs are not limited in the injuries that they can seek from the LRA Enterprise.[42]

---

[39] La. Rev. Stat. § 15:1356(E)(emphasis added).

[40] *See* La. Rev. Stat. § 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.").

[41] 18 U.S.C. § 1964(c).

[42]  *See e.g.*, *Thomas v. N. 40 Land Dev., Inc.*, 2004-0610 (La. App. 4 Cir. Jan. 26, 2005), 894 So. 2d 1160, 1175 (interpreting prior version of La. R.S. § 15:1356 after the 1992 amendments which "deleted the word 'drug' from the title of this Chapter; as a result, this Chapter is now entitled the 'Louisiana Racketeering Act.' The amendment also changed the defined term from 'drug racketeering activity' to 'racketeering activity.'" *Id.* (quoting La. R.S. 15:1352(A)). However, at the time of the *Thomas* decision, the Legislature had not amended La. R.S. § 15:1356 which still provided: "Any person who is injured by reason of any violation of the provisions of R.S. 15:1353 shall have a cause of action against any person engaged in a drug racketeering activity who violates a provision of R.S. 15:1353…." La. R.S. 15:1356 (emphasis added). The Louisiana Fourth Circuit held that the "remedies statute, on its face, is thus limited to drug racketeering activity' and noted "that this appears to be an issue the Legislature should address. If the

At the motion to dismiss stage, Plaintiffs "need not prove the exact amount of damages incurred; [they] need only 'raise[ ] a right to relief above the speculative level.'"[43] Plaintiffs are not required to "allege injury and causation for each alleged episode engaged in by the enterprise."[44]

> [N]o requirement exists that the plaintiff must suffer an injury from two or more predicate acts, or from all of the predicate acts. Thus, a RICO verdict can be sustained when a pattern of racketeering acts existed, but when only one act caused injury. Stated differently, merely because one of the racketeering acts was not successful does not mean that it is unavailable to establish a pattern.[45]

Plaintiffs sufficiently allege that their injuries were proximately caused by the acts of the Enterprise, including additional educational expenses, mental anguish because of the Enterprise's injuring of public records which caused certain Plaintiffs to leave LSU for other educational opportunities. "The excessive expenses and resources allocated to the football program were at the direct expense of and detriment to Plaintiffs and other similarly situated students." Doc. 22 at ¶91. Orgeron's efforts to protect male football players caused his failure to report Richardson and Robertson's rapes and Plaintiff Lewis' abuse in violation of Title IX, which both caused and exacerbated injuries to these Plaintiffs. *Id*. at ¶548. As a result of Orgeron and other defendants' retaliatory actions of silencing and ignoring Plaintiffs' reports of abuse and concerns about LSU's Title IX process, Plaintiffs have suffered and will continue to suffer injuries. *Id*. at ¶430.

---

Legislature intended to extend the civil remedies provision to non-drug activities, it should amend this statute to delete the word 'drug.'" *Id*.).

[43] *Hernandez*, 274 F. Supp. 3d at 609.

[44] *Cty. of El Paso, Tex.*, 2009 WL 4730303, at *10.

[45] *Id*. (quoting *Deppe*, 863 F.2d at 1366-77 and citing *United States v. Baxter Intern., Inc.*, 345 F.3d 866, 883-884 (11th Cir. 2003) ("a complaint governed by the ordinary standard of Rule 8 ... need not allege the particulars of each instance of injury in order to survive a motion to dismiss."); *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001) ("Even if the precise amount of [plaintiff's] injury is not susceptible of ready proof, it is clear that a reasonable finder of fact could infer that some injury has occurred.")).

Plaintiffs alleged that LSU funded a purposefully deficient sexual misconduct and Title IX reporting scheme, successfully insulating coaches and players within LSU's athletic programs from legitimate sexual assault claims *"and allowed the programs to continue operating unhindered to reach levels of success the program wouldn't have reached otherwise*." *Id*. at ¶10. (Emphasis added). Plaintiffs' Title IX complaints against student-athletes were purposefully buried to ensure that the perpetrators were not prevented from concentrating on winning games, which directly benefits Orgeron. *Id*. at ¶65. Orgeron prioritized decision making around the success of his highly profitable football program. *Id*. at ¶89. This singular focus on success and Orgeron's financial gain kept Plaintiffs' perpetrators like John Coe and John Doe on the field and in school, where they continued to retaliate against and commit additional forms of sexual misconduct against Plaintiffs, exacerbating previous injuries and inflicting additional injuries. *Id*. at ¶¶531, 572.

## III.    <u>Civil Rights</u>

Plaintiffs have plausibly pleaded a cause of action against Orgeron under Sections 1983, 1985, and 1986 of the Civil Rights Act. Plaintiffs have pleaded a conspiracy, of which Orgeron was a member, to deny constitutional and federal rights to all female-presenting and LGBTQ+ identifying students on LSU's campus, and that caused the actual deprivation of constitutional and federal rights of the Plaintiffs. Even if Orgeron never interacted with any of the Plaintiffs, the law still provides liability for his participation in this scheme to silence survivors and maximize revenue for LSU's Athletics Department.

To allege conspiracy liability under 42 U.S.C. § 1983, a plaintiff must plead (1) that she has been deprived of a right secured by the Constitution or an appropriate federal law, (2) that at least one of the wrongdoers was acting under color of state law in depriving her of this right, (3)

the state official(s) and the defendant reach an understanding to deprive plaintiff of her constitutional rights, and (4) the defendant was a willful participant in joint activity with the state or its agents.[46] To state claim for conspiracy to interfere with civil rights by depriving persons of rights or privileges under 42 U.S.C. § 1985(3), the plaintiff must allege facts demonstrating: (1) a conspiracy; (2) motivated by discriminatory animus; (3) for the purpose of depriving, either directly or indirectly, a person or class of persons of the equal protection of the laws; (4) an overt act in furtherance of the conspiracy; and (5) an injury.[47]  Finally, 42 U.S.C. § 1986 provides a cause of action against individuals who have knowledge that any of the wrongs conspired to be done and mentioned in Section 1985 are about to be committed and, having the power to prevent or aid in preventing commission of the same, neglect or refuse to do so. The claim constitutes an additional safeguard for those rights protected under section 1985.[48]

Plaintiffs have plausibly plead each of the elements required for these causes of action: (1) each Plaintiff was deprived of Equal Protection under the law at a minimum;[49] (2) at least one of the wrongdoers in each of these deprivations of rights was acting under the color of state law in the capacity of their employment with LSU, an arm of the state of Louisiana;[50] (3) all defendants had an understanding that to increase the money of the Athletics Department it would be necessary to deprive female-presenting and LGBTQ+ identifying LSU students of the aforementioned

---

[46] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Tebo v. Tebo*, 550 F.3d 492 (5th Cir. 2008); *Abdeljalil v. City of Fort Worth*, 55 F. Supp. 2d 614 (N.D. Tex. 1999), aff'd, 234 F.3d 28 (5th Cir. 2000); *see also*, *Howard v. Lemmier*, 2011 WL 5508995, at *8 (E.D. La. Oct. 20, 2011), report and recommendation adopted, 2011 WL 5508978 (E.D. La. Nov. 10, 2011); *Green v. Howser*, 942 F.3d 772 (7th Cir. 2019); *Panayotides v. Rabenold*, 35 F. Supp. 2d 411 (E.D. Pa. 1999), *aff'd*, 210 F.3d 358 (3d Cir. 2000).

[47] *Griffin v. Breckenridge*, 403 U.S. 88, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971); *Maxwell v. Dodd*, 662 F.3d 418 (6th Cir. 2011); *see Arvie v. Vidrine*, 2021 WL 4762679, at *4 (W.D. La. Sept. 22, 2021), report and recommendation adopted, 2021 WL 4762364 (W.D. La. Oct. 12, 2021); *Wright v. City of Harahan*, 2020 WL 815240, at *11 (E.D. La. Feb. 19, 2020).

[48] *Dooley v. City of Philadelphia*, 153 F. Supp. 2d 628 (E.D. Pa. 2001), on reconsideration in part on other grounds, 161 F. Supp. 2d 592 (E.D. Pa. 2001).

[49] Doc. 22 at ¶ 8.

[50] *Id*. at ¶ 424.

Constitutional rights, this agreement constituted the conspiracy; (4) all defendants were willful participants in this conspiracy; (5) all plaintiffs are members of the class of individuals that defendants sought to deprive of constitutional rights; (6) Orgeron performed overt acts in furtherance of this conspiracy, such as purposefully not reporting sexual misconduct to the Title IX Coordinator; (7) each plaintiff suffered serious injury as a result of the conspiracy; and (8) if Orgeron is found not to have been a party to the conspiracy, he certainly was aware of its existence and had the power to prevent the conspiracy's success but refused to act. *See e.g.*, Doc. 22 at ¶¶2, 93, 96-98, 155, 169-71, 176, 191, 243, 256, 269, 282, 339, 414, 424, 530, 531, 563, 567, 575, 577.

Plaintiffs can overcome a Motion to Dismiss for a government official in both his official and individual capacity even if the government official had no direct interaction with Plaintiffs.[51] "A decision to adopt a particular course of conduct represents official policy even if it is not intended to govern future conduct so long as the decision was made by a final policymaker."[52] Further, "a valid individual capacity claim requires a Section 1983 plaintiff to 'establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation.'"[53] In *Louisiana Cleaning System*, the plaintiff overcame the defendants' motion for summary judgment when, although the sheriff had no direct interaction with the plaintiff, the sheriff still ratified the deputies' conduct after the fact.[54]

As head football coach, Orgeron had a duty to train and supervise employees in the football department, including a duty to ensure that the Title IX Policy was followed to prevent, properly

---

[51] *See La. Cleaning Sys. v. Brown*, 2015 U.S. Dist. LEXIS 152077 (W.D. La. Nov. 9, 2015).

[52] *Hobart v. City of Stafford*, 916 F.Supp.2d 783, 792 (S.D. Tex. 2013).

[53] *La. Cleaning Sys.*, 2015 U.S. Dist. LEXIS 152077 at *16 (citing *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

[54] *Id*. at *14. If these allegations were sufficient to defeat a motion for summary judgment, they are more than sufficient to defeat Orgeron's Rule 12(b) motion.

respond to, and remedy incidents of sex-based discrimination on LSU's campus. Doc 22 at ¶ 492. Orgeron's pattern of ignoring sexual misconduct complaints shows the establishment of an official policy or custom that was the moving force behind the deprivation of Plaintiffs' constitutional rights. Although Orgeron may not have been "personally involved," his wrongful actions of ignoring hi responsibility to ensure the football program's compliance with Title IX were causally connected to the constitutional deprivation of the Plaintiffs.

Orgeron cannot rely upon the claim that Plaintiffs have made "conclusory allegations without specific facts" regarding acts by Orgeron that have stated a valid cause of action for First Amendment Retaliation, Denial of Equal Protection, and Denial of Procedural Due Process, when there are a multitude of pages in the Amended Complaint that contain specific allegations against Orgeron. Orgeron believes that Plaintiffs have "thrown a lot of spaghetti against the wall" and that "none of it has stuck to [Orgeron]," when there is sufficient factual matter that, if accepted as true, states a claim to relief that is plausible on its face. Accepting Plaintiffs' allegations as true, which this Court must, Orgeron's motion to dismiss the civil rights claims against him must be denied.

## IV.  **Negligence**

"There is an almost universal duty on the part of the defendant in negligence cases to use reasonable care so as to avoid injury to another. In some cases, the duty is refined more specifically that the defendant must conform his or her conduct to some specially defined standard of behavior."[55] Plaintiffs clearly pled that each of the Individual Defendants, including Orgeron, owed a duty of "reasonable care" to Plaintiffs "to ensure their safety and freedom from sex-based assault, harassment, and abuse while students at LSU" as well as nearly twenty ways in which Orgeron breached those duties to Plaintiffs. *See* Doc. 22 at ¶¶481 and 483. On a Rule 12(b) motion,

---

[55] *Boykin v. Louisiana Transit Co.*, 96-1932 (La. 3/4/98), 707 So. 2d 1225, 1231.

Plaintiffs' allegations must be accepted as true, and Plaintiffs have clearly pled a duty that is well-established in existing case law and as a "matter of social policy."[56]

To the extent that Orgeron's motion relies on his factual contention that he did not have any supervisory authority over the football program until he became head coach, that is a factual dispute that is inappropriate for determination on a Rule 12(b) motion. "A motion to dismiss may be granted only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. We construe all of the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint."[57]

Further, deciding the existence of a duty is not appropriate for disposition on a Rule 12(b) motion because it is a fact-intensive inquiry. "Generally, there is an almost universal legal duty on the part of a defendant in a negligence case to conform to the standard of conduct of a reasonable person in like circumstances. But whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case, and the relationship of the parties."[58]

Finally, because there is no "categorical rule" excluding a duty for school officials to maintain a safe environment for students, Orgeron's "no duty" argument must fail. "A 'no duty' defense 'generally applies when there is a categorical rule excluding liability as to whole categories

---

[56] *See e.g.*, *River House Partners, LLC v. Grandbridge Real Est. Cap. LLC*, 2015 WL 6142874, at *4 (M.D. La. Oct. 19, 2015)( "…a tort claim arises out of breaches of duties imposed by law as a matter of social policy.").

[57] *Meadowbriar Home for Child., Inc. v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996) (citing *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) and *La Porte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1255 (5th Cir. 1986)).

[58] *Griffin v. Shelter Ins. Co.*, 2002-2628 (La. App. 1st Cir. Sep. 26, 2003), 857 So. 2d 603, 605, *writ denied*, 2003-2992 (La. App. 1st Cir. Jan. 16, 2004), 864 So. 2d 635 (citing *Bowman v. City of Baton Rouge/Parish of East Baton Rouge*, 2002–1376, pp. 5–6 (La. App. 1st Cir. May 9, 2003), 849 So.2d 622, 627). *See also Cuccia v. Hillhaven Corp.*, 1993 WL 114500, at *1 (E.D. La. Mar. 31, 1993)("In its motion, Defendant suggests that Plaintiffs cannot state a claim for breach of fiduciary duty. Plaintiffs ask this court to find that the relationship between a nursing home operator and resident should be viewed as one giving rise to such a duty. This court finds that the Complaint does state a claim based on a breach of an alleged fiduciary duty. It remains to be seen from the facts of this case whether such a duty existed.").

of claimants or of claims under any circumstances.'"[59] Orgeron's claims that the negligence claim must fail because he had no duty to Plaintiffs is an overly narrow reading of Plaintiffs' claims and ignores the facts and claims stated in the Amended Complaint. For these reasons, Orgeron's motion as to Plaintiffs' negligence claims should be denied.

## V.   Negligent Supervision

Similarly, "Louisiana courts may hold a supervisory employee liable 'where he negligently created or negligently failed to correct a dangerous condition of which he was or should have been aware under the circumstances.'"[60] Furthermore, "[a] claim for negligent hiring and supervision is analyzed under the same duty-risk standard for all negligence claims in Louisiana. This standard requires proof of duty, breach of duty, causation, scope of liability or protection, and damages."[61]

Plaintiffs' Amended Complaint states each of the elements required including *inter alia* that Orgeron had a duty to properly supervise, train, and monitor employees and students and to ensure their compliance with all applicable statutes, laws, regulations, and institutional policies, and that he failed to do so. Doc. 22 at ¶491. These duties are confirmed by the contract between Orgeron and LSU, which is attached to Plaintiffs' Amended Complaint as Exhibit B and made a part thereof. *See* Doc. 22-2 at 3. Accepting Plaintiffs' allegations as true, Orgeron's motion to dismiss the negligent supervision claim against him must be denied.

## VI.   Negligent Infliction of Emotional Distress

Plaintiffs' Negligent Inflicton of Emotional Distress ("NIED") claims are based in Louisiana Civil Code Articles 2315 and 2316, and recovery is available in cases where the victim

---

[59] *Chatman v. S. Univ. at New Orleans*, 2015-1179 (La. App. 4 Cir. 7/6/16), 197 So. 3d 366, 378 (quoting *Pitre v. La. Tech Univ.*, 95–1466, p. 22 (La. May 1, 1996), 673 So.2d 585, 596 (Lemmon, J., concurring).
[60] *Autin v. Louisiana Dep't of Pub. Safety & Corr.*, 2021 WL 1210471, at *11 (E.D. La. Mar. 31, 2021), (quoting *Fabre v. Travelers Ins. Co.*, 286 So.2d 459, 464 (La. App. 1 Cir. 1973)).
[61] *Id.* (citing *Kelley v. Dyson*, 08-1202 (La. App. 5 Cir. 3/24/09), 10 So.3d 283, 287-88).

suffers no physical injury, bodily harm, or property damage by the hand of the negligent defendant, but does suffer mental distress.[62] For example, Louisiana courts have allowed recovery for negligent transmission of a message announcing death,[63] for mishandling of corpses,[64] for failure to install, maintain, or repair consumer products,[65] for failure to take photographs or develop film,[66] and for negligent damage to one's property.[67]

To recover for mental distress, Plaintiffs must only show the elements of negligence and an "especial likelihood of genuine and serious mental distress" referred to as the "special circumstances" element.[68] Louisiana jurisprudence following *Moresi* has indicated two methods by which Plaintiffs can show the "special circumstance" element: (1) showing that the defendant's conduct was outrageous and would cause genuine and severe mental distress to a person of ordinary sensibilities, or (2) showing that the defendant knew or should have known that the plaintiff was particularly vulnerable to emotional distress from his conduct.[69]

Orgeron's only argument related to Plaintiffs' NIED claims are that they lack specific allegations of fact to Orgeron. However, the complaint is replete with facts showing how Orgeron was negligent in failing to provide accommodations and support measures and in refusing to report any sexual misconduct. *See, e.g.*, Doc. 22 at ¶¶93, 169, 170, 171, 256, 273, 414, 492, 530, 531;

---

[62] La. Civ. Code art 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."); La. Civ. Code art. 2316 ("Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."); *Covington v. Howard*, 49,135 (La. App. 2 Cir. Aug. 13, 2014), 146 So. 3d 933, 937, *writ denied*, 2014-1927 (La. Nov. 21, 2014), 160 So. 3d 973.

[63] *Graham v. Western Union*, 109 La. 1069, 34 So. 91 (La. 1903).

[64] *French v. Ochsner Clinic*, 200 So.2d 371 (La. App. 4 Cir. 1967).

[65] *Pike v. Stephens Imports, Inc.*, 448 So.2d 738 (La. App. 4 Cir. 1984).

[66] *Grather v. Tipery Studios, Inc.*, 334 So.2d 758 (La. App. 4 Cir. 1976).

[67] *Lambert v. Allstate Ins. Co.*, 195 So.2d 698 (La. App. 1 Cir. 1967).

[68] *Moresi v. State Through Dept. of Wildlife and Fisheries*, 567 So. 2d 1096 (La. 1990).

[69] *See Covington*, 146 So. 3d at 940 (citing *Bordelon v. St. Frances Cabrini Hosp*., 93–1331 (La. App. 3 Cir. May 4, 1994), 640 So.2d 476; *Doe v. Dunn*, No. 39,179-CA (La. App. 2 Cir. Dec. 22, 2004), 890 So.2d 727, writ denied, No. 2005-0443 (La. Apr. 29, 2005), 901 So.2d 1066; *Succession of Harvey*, No. 97-2815 (La. App. 4 Cir. Jun. 24, 1998), 716 So.2d 911, *writ denied*, No. 98–2025 (La. Nov. 6, 1998), 728 So.2d 391).

Doc 22-1 at 55, 103 n. 198. These negligent acts exacerbated the post-traumatic stress disorder experienced by Plaintiffs following the sexual misconduct they endured. Further, the complaint clearly states that Orgeron should have known that these plaintiffs were particularly vulnerable to these injuries as a result of their status as survivors of sexual assault. In fact, an initial response following disclosure of sexual misconduct to a Responsible Employee can be a determining factor in whether a survivor will recover from the misconduct or whether the survivors' emotional injuries will linger. The recommended conduct in the Title IX Policy is specifically meant to avoid the type of emotional distress, or re-traumatization, caused by Orgeron's responses. Thus, Plaintiffs have pleaded a plausible claim for NIED and Orgeron's Motion should be denied.

**VII.    <u>Intentional Infliction of Emotional Distress</u>**

Orgeron's only argument related to Plaintiffs' Intentional Infliction of Emotional Distress ("IIED") claims are that they lack specific allegations of fact as to Orgeron. However, the Complaint clearly alleges that the Defendants' collective actions (including Orgeron's bad conduct) constituted an intentional pattern of reacting to disclosures of Title IX violations in an extreme and outrageous manner designed to deter any future disclosures. Doc. 22 at ¶506. *Walters v. Rubicon, Inc.* establishes that this type of collective action of a group with a united purpose to cause severe emotional distress is an adequate allegation to survive the pleading phase of litigation. In *Walters*, Walters worked as an environmental engineer under the supervision of the defendants.[70] As an environmental engineer, Walters had a right to disclose any potential violations of an environmental law, rule, or regulation without retaliation from his employer.[71] Over the course of his employment, each time Walters disclosed a reasonable concern regarding potential violations of environment regulations, Walters was subjected to verbal abuse, ridicule, and

---

[70] *Walters v. Rubicon, Inc.*, 96-2294 (La. App. 1 Cir. Dec. 29, 1997), 706 So.2d 503, 505.
[71] *See* La. Stat. Ann. § 30:2027; *Walters*, 706 So.2d at 508.

defendants would require him "to perform and/or ignore policies, procedures and factual situations which he believed to be illegal and/or in violation of [environmental regulations]."[72] In addition, Walters' coworkers would also "cut in front" of Walters in traffic, and they would make threatening gestures by forming a gun with their hand and mouthing "pow."[73] The continued nature of this abuse caused Walters to suffer extreme physical symptoms and stress-induced injuries, and he alleged that his superiors were aware that their behavior was causing his emotional distress.[74] The Louisiana Appellate Court ruled that although any of these actions individually would not rise to either intent or outrageous conduct required for a claim of IIED, when analyzed together, they appropriately plead a pattern of intentional behavior and outrageous conduct.[75]

As with *Walters*, Plaintiffs do not allege that any one isolated act by Orgeron in response to a disclosure of sexual misconduct constituted an extreme and outrageous act. Plaintiffs instead allege that the repeated pattern of Orgeron's responses to reports of sexual assault such as stating that known serial rapists are merely "troubled children" and are "just kidding" combined with the actions of the other defendants over time is the extreme and outrageous conduct performed with the intent to cause severe emotional distress. Like Mr. Walters, all LSU students have a right to disclose sexual misconduct without retaliation by LSU employees. Doc. 22-1 at 156. Additionally, each Defendant is aware of each Plaintiff's particular vulnerabilities as a survivor of sexual misconduct and has knowledge to a substantial certainty that denial of their experiences and retaliation would cause severe emotional distress. It was not until the publication of the Report that Plaintiffs were able to understand the full scope of Defendants' outrageous conduct. Thus, Plaintiffs have pled a plausible claim for NIED and Orgeron's Motion should be denied.

---

[72] *Walters*, 706 So.2d at 507.

[73] *Id.*

[74] *Id.*

[75] *Id.*

## VIII.    Bad Faith Breach of Contract

Orgeron's only argument regarding Plaintiffs' breach of contract claim is that it lacks specificity as to Orgeron. However, the Complaint specifically states that Orgeron, along with all other LSU employees, must follow LSU's policies and breached that obligation. Doc. 22 at ¶¶54-55. Orgeron is clearly a supervisory employee, as his employment contract places him in charge of the entire football department. The Title IX Policy states that not only is "[e]veryone [responsible] to prevent and report acts of prohibited conduct [and to foster] a welcome environment conducive to learning," but also states that "Responsible Employees who receive notice or witness incidents of Sexual Misconduct must promptly notify the Title IX Campus Coordinator." Doc. 22 at ¶¶56-57. As previously explained, at all times relevant to this case Orgeron was a Responsible Employee and never notified the Title IX campus Coordinator of any reports of sexual misconduct of which he was aware. The Amended Complaint is replete with examples of Orgeron's non-reporting and intentional creation of an environment that is not conducive to learning, but instead conducive to making him more money at the expense of Louisiana's students. *See, e.g.,* Doc. 22 at ¶93, 96-98, 169-71, 256, 414, 530, 531, 563, 567, 575, and 577. Thus, Plaintiffs have pled a plausible cause of action against Orgeron for bad faith breach of contract and his motion to dismiss this claim should be denied.

## IX.    Civil Conspiracy

Plaintiffs agree that:

Civil Code article 2324 does not by itself impose liability for a civil conspiracy. The actionable element in a claim under this article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually committed in whole or in part. In order to recover under this theory of liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury.[76]

---

[76] *Butz v. Lynch*, 710 So. 2d 1171, 1174 (La. App. 1 Cir. Apr. 8. 1998), *writ denied*, 721 So. 2d 473 (La. Jun. 19, 1998)(citing *Silver v. Nelson*, 610 F.Supp. 505, 516–517 (E.D. La.1985)).

Plaintiffs have alleged numerous "illegal" acts agreed to by Defendants which resulted in Plaintiffs' injuries.

The Fifth Circuit recognized that a civil claim requires proof of "an unlawful act and assistance or encouragement that amounts to a conspiracy. This assistance or encouragement must be of such quality and character that a jury would be permitted to infer from it an underlying agreement and act that is the essence of the conspiracy."[77] Plaintiffs allege assistance and encouragement among the Defendants sufficient to plead the existence of a conspiracy pursuant to Article 2324. For these reasons, Orgeron's Motion to dismiss Plaintiff's civil conspiracy claim should be denied.

## X. Enrichment Without Cause

Orgeron argues that the excessive compensation he received as a result of the success of the LSU football team is "entirely unrelated" to any alleged scheme to silence survivors. As previously discussed, the court must accept all pleaded facts as true and view those facts in the light most favorable to Plaintiffs.[78] Plaintiffs have plainly plead a direct causal connection between silencing survivors and perpetuating sexual misconduct and Orgeron's excessive compensation. Doc. 22 at ¶¶10, 65, 91, 572, and 583. For these reasons, Orgeron's Motion to dismiss Plaintiff's enrichment without cause claim should be denied.

---

[77] *Chrysler Credit Corp. v. Whitney Nat. Bank*, 51 F.3d 553, 557 (5th Cir. 1995) (citing *National Union Fire Ins. Co. v. Spillars*, 552 So.2d 627, 634 (La. App. 1989), *writ denied*, 556 So.2d 61 (La. 1990) and *Silver v. Nelson*, 610 F.Supp. at 517).
[78] *Meador*, 911 F.3d at 264.

**XI.**    **Cumulative Briefing**

Some Defendants have asserted that their Rule 12 motions incorporate by reference all applicable arguments found in co-defendants' briefs. To the extent that this Court allows such incorporation, Plaintiffs also incorporate all arguments in opposition to the same.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Edward R. Orgeron, Jr.'s Motion to Dismiss.

Respectfully Submitted,

*/s/ Catherine E. Lasky*
Catherine E. Lasky (La. Bar 28652)
Endya L. Hash (La. Bar 38260)
KATIE LASKY LAW
619 Homedale Street
New Orleans, Louisiana 70124
P: (504) 584-7336 / F: (504) 375-2221
katie@katielaskylaw.com
endya@katielaskylaw.com

*/s/ Karen Truszkowski*
Karen Truszkowski
*Pro Hac Vice*
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
P: (844) 534-2560 / F: (800) 531-6527
karen@temperancelegalgroup.com

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour
*Pro Hac Vice*
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
P: (517) 292-0067 / F: (517) 709-7700
elizabeth@abdnour.com

*Attorneys for Plaintiffs*