## THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**　　　　　　**CIVIL ACTION NO. 3:21-CV-00242**

**VERSUS**　　　　　　　　　　　　**JUDGE WENDY B. VITTER**

**LOUISIANA STATE UNIVERSITY,**　**MAGISTRATE JUDGE JOHNSON**
**ET AL.**

### MEMORANDUM IN SUPPORT OF JONATHAN SANDERS, TRACY BLANCHARD, AND MARIA FUENTES-MARTIN'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c)

MAY IT PLEASE THE COURT:   Defendants Jonathan Sanders, Tracy Blanchard and Mari Fuentes-Martin ("Defendants"), file this Memorandum of Law in Support of their Rule 12(c) Motion for judgment on the pleadings, and respectfully show as follows:

## I.   INTRODUCTION

In their First Amended Complaint [rec. doc. 22] ("Complaint"), Plaintiffs[1] have brought causes of action against LSU and the Board of Supervisors, the Tiger Athletic Foundation ("TAF"), "O" The Rosy Finch Boyz, LLC, and individual employees of LSU. Counts I-IV & X-XI name LSU and Board of Supervisors, and do not include Defendants. Counts V-IX name "LSU Defendants."[2]   Counts XII-XV, XVII & XIX-XX[3] name "All Defendants."[4]   Count XI names LSU, its Board of Supervisors, and select individual

---

[1] "Plaintiffs" collectively include all plaintiffs in the above captioned case: Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch.  Complaint.

[2] "LSU Defendants" are defined by Plaintiffs as "collectively, the Board of Supervisors, LSU, and the individually named Defendants in their <u>official capacities</u>."  Complaint ¶ 49 (emphasis added).

[3] Count XVIII (Federal RICO) was withdrawn by Plaintiffs on September 7, 2021. [Rec. doc. 67]

[4] Though the term "All Defendants" is not explicitly defined in the Complaint, assumedly the term means named defendants, including Sanders, Blanchard and Fuentes-Martin, who are named in both their individual and official capacities.  Complaint ¶¶ 44-45 & 48.

defendants in their "official capacities."[5]  Because Counts I-IV and X-XI do not include allegations against Defendants Sanders, Blanchard and Fuentes-Martin, they are not addressed in this Memorandum.

Furthermore, the Plaintiffs have, for the most part, simply made generalized allegations against "Defendants"; Sanders, Blanchard and Fuentes-Martin are identified in only a handful of allegations, and only then for certain Plaintiffs.  Sanders is only identified with regard to the allegations of Plaintiffs Andries,[6] Lewis,[7] and Hovis.[8]  Defendant Blanchard in mentioned only in allegations by Andries.[9]  Defendant Fuentes Martin is named only in allegations by Plaintiff Robertson.[10]

Furthermore, Defendants are identified by name in only three causes of action: Count V (Title IX retaliation); Count XIII (negligent supervision) and Count XVI (bad faith breach of contract).  For Fuentes-Martin, her name does not appear in Count XIII.

## II.    LEGAL STANDARDS

### A.    Rule 12(c) motion on the pleadings.

"The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). To survive a 12(c) motion, "a complaint must contain sufficient

---

[5] The individuals are: Defendant Alexander, Defendant Monaco, Orgeron Defendants, Defendant Marchand, Defendant Stewart, Defendant Sanders, Defendant Blanchard and Defendant Fuentes-Martin.  Complaint at Count V.

[6] Complaint ¶¶ 230-31.

[7] *Id.* ¶¶ 265-268.

[8] *Id.* ¶ 332.

[9] *Id.* ¶¶ 221, 232, 234 & 241.

[10] *Id.* ¶¶ 164 & 171.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. *Mandujano v. City of Pharr*, Texas, 786 F. App'x 434, 437 (5th Cir. 2019).

### B.    Rule 12(b)(6) motion to dismiss.

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  This means Plaintiffs must plead "facts from which the court can draw a reasonable inference that the defendant is liable for the misconduct alleged." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021). "The "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  However, "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

### C.    Federal Rule of Civil Procedure 9(b).

Fraud or mistake must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Allegations which require Rule 9(b) particularity include various of Plaintiffs' causes of action, notably their claims for conspiracy and violations of the Louisiana Racketeering Act.  The Fifth Circuit has held, "We apply Rule 9(b) to fraud complaints with bite and without apology." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quotation marks and citation omitted).

**D.    Federal Rule of Civil Procedure 8(a).**

"A pleading that states a claim for relief must contain: [] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Still, at a minimum a complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.. A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do*." Id.* (internal quotations and citations omitted).[11]

**III.    ARGUMENT**

Plaintiffs have failed to state any claims upon which relief may be granted, and therefore judgment on the pleadings should be rendered in favor of Sanders, Blanchard and Fuentes-Martin, pursuant to Rule 12(c).

**A.    Count V (Title IX retaliation) must be dismissed.**

Defendants Sanders, Blanchard and Fuentes-Martin have been accused of retaliation by withholding protection from Plaintiffs, pursuant to Title IX. Complaint ¶¶ 408-422. The Complaint is clear that for this cause of action, Defendants are being sued only in their official capacity. *Id.* ¶ 49.

The pertinent regulations implementing Title IX provide, "No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any [Title IX] right or privilege [] because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title IX]."

---

[11] The imposing 145 page, 589 paragraph complaint, with 10 plaintiffs and 19 defendants, simply does not give fair notice to Defendants regarding of what they are accused. Defendants Sanders, Blanchard and Fuentes-Martin are mentioned from time to time by name. But mostly, Plaintiffs group plead "Defendants" or "LSU Defendants." There are so many places that it is clear that these terms do not include Defendants Sanders, Blanchard or Fuentes-Martin, that it is near impossible to pick out the ones that do. The extreme over-reliance by Plaintiffs on the words "Defendants" and "LSU" renders the terms to have no discernable meaning.

34 C.F.R. § 100.7. As such, Plaintiffs' Title IX claims against Sanders, Blanchard and Fuentes-Martin are befuddling. Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009).

Even if Defendants could be held liable as individuals for Title IX retaliation, a plaintiff must plead a *prima facie* case showing: (1) the plaintiff engaged in a protected activity; (2) the plaintiff suffered a material adverse action; (3) there existed a causal link between the protected activity and the adverse action; and (4) that others not in her protected class received more favorable treatment under similar circumstances. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (the "McDonnell Douglas framework"); *see also Arceneaux v. Assumption Par. Sch. Bd.,* 733 F. App'x 175, 178 (5th Cir. 2018) (applying Title VII McDonnell Douglas framework in Title IX action); *Cano v. Harlandale Indep. Sch. Dist.*, No. 19-CV-01296, 2020 WL 7385843, at *3 (W.D. Tex. Dec. 16, 2020) (same). As discussed below, Plaintiffs do not sufficiently allege against each of the Defendants.

### 1.    Defendant Sanders did not retaliate against Andries, Lewis or Hovis.

The "facts" plead against Sanders involve only three of the named plaintiffs. For Andries, Plaintiffs allege that Sanders asked inappropriate questions and made inappropriate comments when she met with him. Complaint ¶ 230. Oddly, this is alleged to have happened <u>after</u> the student who allegedly assaulted Andries was found to have been responsible for violating Title IX. *Id.* No further allegations are made by Andries against Sanders, and therefore the Complaint falls well short of meeting the requirements of the McDonnell Douglas framework.[12]

---

[12] Plaintiffs appear to imply that Sanders' alleged neglect to contact a third party student or any other entity as somehow equating to some amorphous negligent act against other person. However, that third party is unnamed and is not a party to this action. *See id.* ¶ 231.

The protected activity apparently was reporting the alleged incident to another LSU staffer, but there is no causal link between Sanders' alleged comments and anything else alleged by Plaintiffs. The "inappropriate and unnecessary comments" and questions themselves are not material adverse actions, much less regular adverse actions. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Moreover, the alleged event was already divulged by Andries prior to the allegations, and thus the McDonnell Douglas framework is not remotely satisfied. *See id.* (the material adversity requirement "prohibits actions which are likely to deter victims of discrimination" from complaining.").

Plaintiffs further allege that as to Plaintiff Lewis, Sanders did not act as quickly as Lewis would have liked for conducting an interview of a person that she had reported. *Id.* ¶ 265. Then Lewis implies that Sanders waited two weeks too long for her to be to interviewed. *Id.* ¶ 266. Finally, Plaintiffs admit that Lewis did tell Sanders that "John Coe had punched her in the past," and that other witnesses allegedly reported that told Sanders about other assaults upon Lewis. *Id.* ¶ 268. Clearly, nothing anyone, including Sanders, ever did dissuaded Lewis and others from making complaints; Lewis simply did not endorse the outcome or procedure. That is not actionable under Title IX.

Finally, Plaintiffs make a fleeting reference to Sanders with regard to Plaintiff Hovis. The fullness of the allegation is that a report was made to Sanders about contact in violation of a "no contact directive" by another student. *Id.* ¶ 332. Again, due to the fact Hovis was not dissuaded from making multiple reports, there could have been no retaliation which affected her willingness to report offe4nses to LSU staff.

**2.    Defendant Blanchard did not retaliate against Andries.**

8

A cause of action for retaliation is not adequately alleged for retaliation against Defendant Blanchard. Plaintiffs admit that Plaintiff Andries reports of alleged sex discrimination were made to Blanchard (and others); this time on many multiple occasions over a period of seven months. *Id.* ¶¶ 221-241. Andries also claims that Blanchard did not give her the right advice, which is not in any way relevant to a retaliation claim. *Id.* ¶ 232. Lastly, Defendant Blanchard allegedly told Andries that since Andries and John Roe were both students, so they had "the same rights." *Id.* ¶ 234. This belies Plaintiffs' allegations by missing the mark on the requirement that some people were treated more favorably than the complainant.

### 3. Defendant Fuentes-Martin did not retaliate against Robertson.

The only Plaintiff that has made allegations against Defendant Fuentes-Martin is Plaintiff Robertson. *Id.* ¶ 164. The only thing she is "accused" of doing is asking of Robertson "wanted to proceed with a Title IX investigation," and that Robertson declined. No other allegations against Fuentes-Martin is nonsensical.

### 4. The Title IX allegations against Defendants have prescribed.

Louisiana's one-year prescriptive period applies to Plaintiffs' Title IX claims against Defendants. Title IX claims are subject to state statutes of limitations for personal injury actions. *See, e.g., King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015). Plaintiffs admit they knew of their injuries, what caused the injuries and the identities of Defendants Sanders, Blanchard and Fuentes-Martin prior to April 26, 2020, a year before the date the Complaint was filed. Plaintiff Andries' prescriptive period began to run, at the latest, on October 16, 2019. Among other things, Andries knew at least that her alleged harasser was disciplined on September 26, 2019 and that his appeal was denied on October 16, 2019. Complaint, ¶¶ 236, 241.

Plaintiff Lewis' retaliation claim prescribed no later than April 2019, a year after she reported her sex discrimination claim. *Id.* ¶¶ 246-261, 280.

Plaintiff Robertson's retaliation claim prescribed, at the latest, on February 4, 2017. The year before, Defendant Fuentes-Martin proactively asked her if she wanted to file a Title IX complaint for an alleged sexual assault on January 22, 2016. *Id.* ¶¶ 164, 169.

Finally, Defendant Hovis had all the information she needed to realize she had a Title IX claim, including multiple admitted contacts with various LSU administrators regarding her alleged sexual assault, prior to April 26, 2020. *Id.* ¶¶ 328-330.

**B.    Count VI (First Amendment retaliation) does not state a claim upon which relief may be granted.**

A plaintiff must plead the following non-conclusory elements for asserting a First Amendment Retaliation case: (1) she "was engaged in a constitutionally protected activity," (2) the defendant's actions caused her to "suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) the defendant's "adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 351 (5th Cir. 2017).

Plaintiffs' claims for First Amendment retaliation fail for the same basic factual infirmities as their claims for Title IX retaliation. *See supra* § II.A.1-3. The retaliation is insufficiently plead in the Complaint against Sanders, Blanchard or Fuentes-Martin.

C.    **Defendants are entitled to qualified immunity for Counts VI, VII & VIII
(Section 1983 claims).**

Count VI (First Amendment retaliation), Count VII (Denial of Equal Protection), and VIII
(Denial of Due Process) are all brought by Plaintiffs through 42 U.S.C. § 1983. Section 1983
provides a private right of action against parties acting "under color of any statute, ordinance,
regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the
United States Constitution or federal law." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003).
Section 1983 "is not itself a source of substantive rights" but merely provides "a method for
vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)
(internal citations and quotations omitted).

Pursuant to § 1983, a plaintiff must (1) allege a violation of a right secured by the
Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was
committed by a person acting under color of state law. *James v. Tex. Collin Cty.*, 535 F.3d 365,
373 (5th Cir. 2008) . "Qualified immunity attaches when an official's conduct does not violate
clearly established statutory or constitutional rights of which a reasonable person would have
known." *White v. Pauly*, 137 S.Ct. 548, 551 (2017).  It is meant to allow "government officials
breathing room to make reasonable but mistaken judgments and protects all but the plainly
incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743
(2011).

Immunity should not be denied unless "existing precedent … placed the statutory or
constitutional question beyond debate." *Id*.  To overcome the qualified immunity defense, a
plaintiff must establish "(1) that the official violated a statutory or constitutional right, and (2) that
the right was 'clearly established' at the time of the challenged conduct." *Id*. "Clearly established
law" must be "particularized to the facts of a case." *Samples v. Vadzemnieks*, 900 F.3d 655, 662

11

(5th Cir. 2018).   Precedent must "put the underlying question beyond debate." *al-Kidd*, 563 U.S. at 741.

Plaintiffs have failed to plead allegations that would overcome qualified immunity for Counts VI-VIII.

### 1.    Count VI – First Amendment Retaliation.

Plaintiffs allege they have a right of freedom of speech to report sexual discrimination to LSU employees and to criticize LSU's handling of their complaints. Complaint ¶ 426. All Defendants are then alleged to have "attempted to regulate the content of Plaintiffs' speech" by:

> failing to seriously investigate and/or appropriately report allegations of sexual abuse and/or misconduct; dismissing, laughing at, and/or shaming Plaintiffs when confiding in Defendants about their experiences of sexual misconduct; telling Plaintiffs' teammates to avoid them after they reported sexual misconduct; telling students they made the right choice in not reporting; and funding insufficient training on reporting rights of students.

*Id.* ¶ 427.

No clearly established case law exists which cover Plaintiffs' First Amendment allegations. To establish a First Amendment retaliation claim, plaintiff must show that (1) she was engaged in a constitutionally protected activity; (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct. *al-Kidd*, 563 U.S. at 743.

The deficient and conclusory allegations against Defendants Sanders, Blanchard and Fuentes-Martin do not allege that any plaintiff engaged in constitutionally protected speech or that they were motivated by any of Plaintiffs' protected speech.  These claims therefore fail to plead that any constitutional right was violated. *Id.*  Further, undersigned counsel has found no reported

12

cases within the jurisdiction of any controlling court in which a defendant's failure to investigate a Title IX complaint violates an individual's First Amendment rights. Therefore, Plaintiffs' First Amendment claims fail, because there is no clearly established case law putting defendants on notice that their actions were violations of the Plaintiffs' rights.

### 2.    Count VII – Denial of Equal Protection

Plaintiffs allege that all Defendants "discriminated against Plaintiffs on the basis of sex by subjecting them to a hostile environment and failing to appropriately respond to and investigate reports of sexual misconduct and other violations detailed previously."  Complaint ¶ 436.

The Equal Protection Clause of the Fourteenth Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  A "plaintiff must prove that similarly situated individuals were treated differently." *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999).  In addition, a plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class. *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir.1999).  Plaintiffs make no allegations that Defendants Sanders, Blanchard or Fuentes-Martin treated any of them differently than anyone else, whether in a protected class or not.  In fact, the only allegation which is on topic admits that Blanchard told Andries that since Andries and John Roe were both students, so they had "the same rights." Complaint ¶ 234.

To state a claim of discrimination under the Fourteenth Amendment, a plaintiff must allege that (1) she received treatment different from that received by similarly situated individuals, and (2) the unequal treatment stemmed from a discriminatory intent. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015).  The Complaint must allege "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in

part for the purpose of causing its adverse effect on an identifiable group." *Id.* Allegations of discriminatory intent that are merely conclusory allegations, without reference to specific facts, do not suffice to overcome a motion to dismiss. *Id.*

No allegations against Defendants Sanders, Blanchard or Fuentes-Martin remotely suggest intent to discriminate against Plaintiffs. The Complaint even fails to allege disparate treatment of Title IX reports. There are no allegations that anyone was treated differently than anyone else, much less based upon sex or gender identity.

Qualified immunity for Sanders, Blanchard and Fuentes-Martin bars Plaintiffs' cause of action under Count VII.

### 3.   Count VIII – Denial of Procedural Due Process

To establish a procedural due process claim under the Fourteenth Amendment, a plaintiff must show that (1) she was deprived of a life, liberty, or property interest protected by the Fourteenth Amendment and (2) the administrative procedures attendant to the deprivation did not satisfy the constitutional requirements of procedural due process. *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994)).

The Complaint is devoid of allegations of deprivation of any life, liberty, or property interest. Plaintiffs allege they were deprived of "their liberty and property interest in accessing educational opportunities or benefits." *Id.* ¶ 446. However, "most case law involving due process in the educational setting concerns student dismissals or suspensions from academic institutions." *Smith v. Davis*, 507 Fed. Appx. 359, 362. (5th Cir. 2013).

There are no opinions from the Supreme Court or the Fifth Circuit which clearly establish anything akin to a the "rights" Plaintiff assert. Count VIII should therefore be dismissed based upon qualified immunity.

**D.**     **Plaintiffs have not plead a claim under Count IX (Conspiracy to interfere with Civil Rights).**

A plaintiff must show plead four elements to allege a cause of action for conspiracy under Section 1985(3): (1) the defendants must conspire; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws; (3) the defendants must act in furtherance of the object of the conspiracy; and (4) some person was (a) injured in his person or property or (b) deprived of having and exercising any right or privilege of a citizen of the United States. *McLellan v. Mississippi Power & Light Col.*, 545 F.2d 919, 923 (5th Cir. 1977).

For a conspiracy properly to be plead, Plaintiffs must allege facts to establish an <u>actual agreement</u> between defendants to come together to deprive the plaintiffs of their right to equal protection. See, e.g., *Barber v. District of Columbia Gov't*, 394 F.Supp.3d 49, 66 (D.D.C. 2019). Nothing in the complaint establishes "the existence of any events, conversations, or documents indicating that there was ever an agreement or meeting of the minds" between these three defendants and the various other defendants to participate in a conspiracy to violate their rights. *Id.*

There is nothing plead in the Complaint which alleges facts that Defendants Sanders, Blanchard and Stewart agreed between themselves, other Defendants, or anyone else to violate the rights of any LSU students at any time.  The conspiracy allegations are even more deficient, as they would need to meet the heightened standard of pleading fraud with particularity.  FED. R. CIV. P. 9(B).

Count IX therefore also fails to state a claim for relief and must be dismissed.

**E.**     **Count XII (Negligence) does not set forth a cognizable claim.**

Plaintiffs claim Defendants "breached the duty of reasonable care by failing to take appropriate action in several circumstances, including but not limited to the following." Complaint

¶ 483.   The scattershot of the following 19 allegations of breach by all Plaintiffs against all Defendants, without any temporal limitations, make it impossible to tie any defendant with any action that was causally related to any harm suffered by any Plaintiff.

Even if a cause of action for negligence against Sanders, Blanchard or Fuentes-Martin could be squeezed out of the 145-page Complaint, the Eleventh Amendment prohibits lawsuits against government employees for violations of state law when "the state is the real, substantial party in interest" when the government would have to pay any judgment. *Ford Motor Company v. Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945).  A claim that a state official violated a state law, in this case negligence pursuant to La. C.C. art. 2315, is a claim against the state.

The Supreme Court held in *Pennhurst State Sch. & Hosp. v. Halderman*,

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

456 U.S. 89, 100 (1984).  Based upon this reasoning in *Pennhurst*, the Fifth Circuit concluded that "where litigants accuse state officers of violating state common law when acting in the course and scope of their employment, the Eleventh Amendment prevents the litigant from raising the claim in federal court whether the litigant seeks damages or injunctive relief." *Hughes v. Savell*, 902 F.2d 376, 378 (5th Cir. 1990).  Plaintiffs have admitted that Defendants Sanders, Blanchard and Fuentes-Martin were "acting in the course and scope of their employment with LSU at all times relevant to the allegations contained herein" Complaint ¶ 50.  Thus, any claims for negligence against Sanders, Blanchard or Fuentes-Martin, even if they were discernable, would be barred by the Eleventh Amendment.

16

Lastly, as with all Louisiana tort law claims plead by Plaintiffs, the claims in Count XII against Sanders, Blanchard and Fuentes-Martin have prescribed. *See supra* § III.A.4.

Count XII must be dismissed for the various reasons set forth above.

## F.    Count XIII (Negligent Supervision) must be dismissed.

For a claim of negligent supervision, Plaintiffs must sufficiently allege that defendants as an employer, breached a duty of reasonable supervision over LSU personnel under their control and causing damages. Negligent supervision claims are analyzed under the duty-risk analysis contained in La. C.C. art. 2315. Plaintiffs' Complain sets forth conclusory allegations that some defendants supervised other defendants, but gives no hint as to how Sanders, Blanchard or Fuentes-Martin failed to supervise properly. Further, there are absolutely no allegations in the Amended Complaint that a lack of supervision caused or contributed to the alleged damages of any of the Plaintiffs.

Plaintiffs allege:

> Defendants had a duty to properly supervise, train, and monitor their employees and students and to ensure those employees' and students' compliance with all applicable statutes, laws, regulations, and institutional policies, but they failed to do so and therefore breached the duties of care owed to Plaintiffs as alleged herein.

Complaint ¶ 491. Plaintiffs make a negligible effort to state that Fuentes-Martin "had a duty to supervise, train, and monitor all LSU personnel and the Title IX Office staff," and Sanders "had a duty to supervise, train, and monitor the SAA office staff, including Defendant Blanchard." Complaint ¶ 492. No allegation is made against Blanchard of a duty to supervise anyone, other than the elusive allegation that "All Defendants had a duty to supervise, train, and monitor students, including but not limited to the Plaintiffs and their assailants." *Id.*

17

Purportedly, all Defendants failures "to timely report and investigate the physical violence and sexual misconduct perpetrated against Plaintiffs, or to monitor the Title IX investigation and response process at LSU, is a breach of Defendants' duty to supervise." *Id.* ¶ 493. This last statement is in itself nonsensical offers nothing to indicate to any defendants any notice regarding what anyone actually did, or did not do, to violate their duty of care to properly supervise other people. In the exhaustive details alleged for the claims of Plaintiffs Robertson, Andries, Lewis and Hovis, no mention of "supervision," or lack thereof, is made.

As with negligence generally, discussed *supra* § III.F., so too are state employees exempt from liability for state law negligent supervision liability. Finally, as with all Louisiana tort law claims plead by Plaintiffs, the claims in Count XIII against Sanders, Blanchard and Fuentes-Martin have prescribed. *See supra* § III.A.4.

For the reasons set forth above, Count XIII does not state a claim upon which relief can be granted, because if fails even the most generous rules of pleading.

## G.    Count XIV (Negligent infliction of emotional distress) must be dismissed.

To plead a case of negligent infliction of emotional distress, a plaintiff is required to allege (1) the defendant's conduct is negligent, and (2) the conduct caused mental disturbance accompanied by physical injury, illness, or other physical consequences. *Moresi v. State, Department of Wildlife and Fisheries*, 567 So.2d 1081, 1096 (La.1990). Physical symptoms that are a response to, or a by-product of mental stress, are not the sort of "physical injury" contemplated by this rule. *Covington v. Howard*, 49,135 (La. App. 2 Cir. 8/13/14), 146 So.3d 933, 940-41. Infrequently, recovery has been limited to cases involving the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a

guarantee that the claim is not spurious." *Moresi*, 567 So.2d at 196. This test is an objective one, and the "eggshell" plaintiff scenario does not apply. *Covington*, 146 So.2d at 943.

The only plaintiffs alleging <u>any</u> acts or omissions by Defendants Sanders, Blanchard and Fuentes-Martin – negligent or not –are Plaintiffs Andries, Robertson and Hovis. Andries does not allege physical injury. Complaint ¶ 243. Robertson does not allege physical injury. *Id.* ¶ 176. Hovis does not allege physical injury (other than in conclusory boilerplate fashion). *Id.* ¶¶ 336 & 339. Thus, the claim of negligent infliction of emotional distress must be one of the special circumstances cases where there is an especial likelihood of genuine and serious mental distress.

Defendants do not assert Plaintiffs have failed to plead mental and emotional distress. However, in no manner can it be discerned from the Complaint that there was an "especial likelihood" that the alleged acts or omissions by Defendants Sanders, Blanchard and Fuentes-Martin could have led to serious mental distress.

Fuentes-Martin is accused only of reaching out to Plaintiff Robertson to ask if she wanted to institute a Title IX complaint. *Id.* ¶ 164. That cannot, under any circumstance, be considered any type of action which could be expected objectively to lead to serious emotional distress.

With regard to Plaintiff Andries, Sanders is accused of asking objectively normal questions in an investigation of sexual assault of whether Andries was "on drugs" or where she was when she was assaulted. *Id.* ¶ 230. Objectively, these are questions to be expected in an investigation, either by the respondent, or the investigator doing their job of knowing all facts and circumstances of a serious accusation. While Sanders may have been perhaps offended Andries, such questions, objectively, are not things in which there is an especial likelihood of serious mental distress. Nothing Blanchard allegedly did or said with regard to Andries can be considered to objectively have caused causing an "especial likelihood" of severe emotional distress.

19

Plaintiff Hovis has also failed to plead facts which objectively could be considered to have an especial likelihood to lead to serious emotional distress. Sanders is alleged only to have had received information that Hovis's alleged assailant had violated a no contact order. *Id.* ¶ 332.

Plaintiff Lewis likewise has not plead a case where it could be objectively expected that there would be an especial likelihood of serious emotional distress. Sanders merely conducted interviews. *Id.* ¶¶ 265-266.

Finally, as with other with the other state law tort claims, state employees are exempt from liability for state law tort claims. *See supra* § III.F. Furthermore, the tort claims against Sanders, Blanchard and Fuentes-Martin in Count XIV have prescribed. *See supra* § III.A.4.

Count XIV therefore has no merit and should be dismissed.

### H.    Count XV (Intentional infliction of emotional distress) does not state a claim for relief.

The elements of a cause of action for intentional infliction of emotional distress are (1) the conduct was extreme and outrageous; (2) the emotional distress was severe; and (3) that the defendant desired to inflict, or knew such distress would be substantially certain to result. *See, e.g., White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). The Complaint fails to satisfy these requirements against Defendants Sanders, Blanchard and Fuentes-Martin.

All Plaintiffs allege against all Defendants "extreme and outrageous conduct." Complaint ¶ 506. It then asserts that every defendant engaged in "openly mocking and spreading rumors about Plaintiffs, isolating and alienating Plaintiffs, and improperly disciplining and retaliating against Plaintiffs" and intended to cause harm by doing so. *Id.* This does not remotely meet the standard of being plausible.

There are no actual allegations of "openly mocking" or "spreading rumors" or "disciplining" by Defendants Sanders, Blanchard or Fuentes-Martin, much less isolating,

20

alienating or retaliating. These are bare conclusory statements, which are made even worse, because they are alleged against 19 different natural and juridical people by 10 plaintiffs. There is reference to discipline for Plaintiff Lewis for having a candle in her room, but the Complaint accuses only "LSU" of being responsible for this alleged retaliatory discipline. *Id.* ¶ 264. Discipline for one candle, in one room, of one plaintiff, by an unknown person is not enough to adequately allege that Defendants Sanders, Blanchard or Fuentes-Martin intentionally inflicted emotional distress.

Likewise, there are no allegations against them for "openly mocking" or "spreading rumors." One instance of mocking by two defendants against one plaintiff is alleged. *Id.* ¶ 129. One instance of spreading rumors against one plaintiff by unknown persons is alleged, but does not include Defendants Sanders, Blanchard or Fuentes-Martin. *Id.* ¶¶ 137-138.

The Count XV cause of action is fundamentally flawed, without merit, and should be dismissed.

## I.    Count XVI (Bad faith breach of contract) does not state a plausible claim.

Plaintiffs' claim for "Bad Faith Breach of Contract" against Sanders, Blanchard and Fuentes-Martin is difficult to conceptualize. There is no actual contract alleged between Plaintiffs and Defendants, other than possibly LSU itself. That terms of any such contract – possibly an offer of admission and acceptance by a student – are not set forth or referenced anywhere in the Complaint.

Plaintiffs point to various published LSU policies and baldly assert they somehow memorialize conventional obligations between Sanders, Blanchard and/or Fuentes-Martin and any LSU student.   the tens of thousands of LSU students. *Id.* ¶¶ 512-521. No matter how hard Plaintiffs may try to describe policies published by LSU as contracts, they fundamentally are not.

A contract is defined under Louisiana law as an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art 1906.

Count XVI must be dismissed, as there exists no allegations supporting the existence of a contract between Plaintiffs and Sanders, Blanchard and/or Fuentes-Martin to breach.

**J.**     **Count XVII (Conspiracy to deny civil rights) does not set forth a cognizable claim.**

For the same reasons set forth, *supra* III.E., Count XVII must be dismissed.

**K.**     **Count XIX (Louisiana Racketeering Act) should be dismissed.**

Plaintiffs' causes of action for violations of the Louisiana Racketeering Act (La. R.S. §15:1351 *et seq.* ("LRA")) against Sanders, Blanchard and Fuentes-Martin should be dismissed for the reasons set forth below.

La. R.S. § 15:1352(A) defines "racketeering activity" as committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit any crime." The statute provides that the following actions are unlawful:

> A. It is unlawful for any person who has <u>knowingly received any proceeds</u> derived, directly or indirectly, from a pattern of racketeering activity to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in immovable property or in the establishment or operation of any enterprise.
>
> B. It is unlawful for any person, through a pattern of racketeering activity, <u>knowingly to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or immovable property.</u>
>
> C. It is unlawful for any person employed by, or associated with, any enterprise <u>knowingly to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.</u>
>
> D. It is unlawful for any person to <u>conspire or attempt to violate</u> any of the provisions of Subsections A, B, or C of this Section.

*Id.* § 1353 (emphases added).

An "enterprise" is "any individual, sole proprietorship, partnership, corporation or other legal entity, or any unchartered association, or group of individuals associated in fact and includes unlawful as well as lawful enterprises and governmental as well as other entities." *Id.* § 1352(B).

More succinctly, to state a claim for relief under the LRA, a plaintiff must allege the existence of: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *See Robertson v. Sun Life Financial*, 2017 WL 4226205, at *2 (E.D. La. Sept. 22, 2017) (citing *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007). Furthermore, and importantly, Plaintiffs' LRA allegations must be plead with particularity. Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fifth Circuit has warned plaintiffs who plead fraudulent activities that "We apply Rule 9(b) to fraud complaints with bite and without apology." *Grubbs*, 565 F.3d at 185 (internal quotes and citations omitted).

LRA claims are difficult enough to decipher without group-pleading 19 defendants for conclusory and general allegations untied to any particular defendant. The LRA and Rule 9(b) require that a plaintiff plead, <u>with particularity</u>, "knowingly" being involved in criminal acts or a conspiracy to commit criminal acts.

Plaintiffs have failed to state a claim for violations of the LRA, so Count XIX must be dismissed.

### L.    <u>Count XX (Enrichment without cause) is not a remedy available to Plaintiffs</u>.

Plaintiffs have asserted claim in Count XX for enrichment without cause that should be summarily dismissed. "A person who has been enriched without cause at the expense of another person is bound to compensate that person." La. C.C. art. 2298. This cause of action is not

available to a plaintiff when "the law provides another remedy for the impoverishment or declares a contrary rule." *Id.*

Plaintiffs' Count XX claim for unjust enrichment fails, simply that for no other reason than Plaintiffs have plead 19 other causes of action. *See Zaveri v. Condor Petroleum*, 27 F. Supp. 3d 695 (W.D. La. 2014).

## IV.    CONCLUSION

For the reasons set forth above, Defendants Sanders, Blanchard and Fuentes-Martin pray this Court grant their Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c)

Respectfully submitted,

**JEFF LANDRY**
**ASSISTANT ATTORNEY GENERAL**

BY:    */s/ Mark R. Pharr, III*
Mark R. Pharr, III, Bar Role No. 21019
Lindsay Meador Young, Bar Roll No. 31261
William F. Large Bar Roll No. 34837
Rick Eisenstat, Bar Roll No. 35472
*Special Assistant Attorneys General*
328 Settlers Trace Blvd.
Lafayette, Louisiana 70508
Phone: 337-735-1760
Fax: 337-993-0933
Email: tiger@gallowaylawfirm.com
Email: LMeador@gallowaylawfirm.com
Email: WLarge@gallowalawfirm.com
Email: REisenstat@gallowaylawfirm.com
ATTORNEYS FOR JONATHAN
SANDERS, TRACY BLANCHARD AND
MARI FUENTES-MARTIN