# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT COURT OF LOUISIANA

| | | |
|---|---|---|
| **ABBY OWENS, ET AL** | * | **CIVIL ACTION NO:** |
| | * | **3:21-CV-00242-WBV-SDJ** |
| | * | |
| **VERSUS** | * | **JUDGE: THE HONORABLE WENDY** |
| | * | **VITTER** |
| **LOUISIANA STATE** | * | |
| **UNIVERSITY, ET AL** | * | **MAGISTRATE: THE HONORABLE** |
| | * | **SCOTT D. JOHNSON** |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ALL CLAIMS AGAINST DEFENDANTS, JULIA SELL AND MICHAEL SELL

**MAY IT PLEASE THE COURT:**

Defendants, Julia Sell and Michael Sell (collectively, the "Sells"), co-coaches of the Louisiana State University ("LSU") Women's Tennis Team, respectfully submit the instant Memorandum in Support of their Motion to Dismiss All Claims asserted against them. Plaintiffs' claims against the Sells are directly contradicted by statements and findings contained in exhibits to their own Amended Complaint, and their claims are legally without merit for the reasons cited herein. Pursuant to Federal Rules of Civil Procedure 10(c), the Sells also adopt by reference all arguments asserted by other Defendants in their separate Motions to Dismiss to the extent those arguments are not inconsistent with the Sells' defenses and arguments contained herein.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

On April 26, 2021, Plaintiffs filed this Class Action Complaint and Jury Demand. On June 25, 2021, Plaintiffs filed their Amended Class Action Complaint and Jury Demand ("Amended Complaint"), which is in excess of 589 paragraphs and 145 pages, the vast majority of which contains no explicit allegations against the Sells. [Doc. 22]. Importantly, <u>only three of the ten</u>

named Plaintiffs, Jade Lewis, Abby Owens, and Kennan Johnson make any mention of the Sells.[1]
As co-coaches of the LSU Women's Tennis Team, Julia and Michael Sell only interacted with
these three Plaintiffs and had no oversight of the LSU Title IX Program.

If this Court accepts Plaintiffs' allegation as true for purposes of the instant motion, then
Plaintiffs' own claims completely exonerate the Sells, as all of the Sells' alleged actions were
based on direct instructions and policies set by their employer, LSU.  The Amended Complaint
attaches and explicitly relies in large part on the findings contained in the "Louisiana State
University Title IX Review" released by Husch Blackwell on March 3, 2021 (hereinafter, the
"Husch Blackwell Report").[2]  The Husch Blackwell Report also exonerates the Sells by
conclusively establishing that the Sells timely reported all claims of sexual assault and violence by
Owens and Lewis without delay upon learning of same.[3]

A.    **Claims Asserted in the Amended Complaint Relevant to Julia and Michael Sell**

1.    **Jade Lewis**

As to the Sells, the only specific claims made by Lewis are that Michael Sell failed to make
a report about assaults on Lewis after allegedly being told about those assaults by Lewis' father,
that the Sells did not report assaults on Lewis when they were reported to Julia Sell by unnamed
members of the LSU Women's Tennis Team, that the Sells did not provide any resources to Lewis,
and that Julia Sell instructed Lewis' teammates to "stay away from" her.[4]

The attached exhibit made part of Plaintiffs' own Amended Complaint demonstrates that
each of these factual allegations are false.  As discussed below, the Husch Blackwell Report, cited

---

[1] The remaining seven Plaintiffs, (1) Calise Richardson; (2) Ashlyn Robertson; (3) Samantha Brennan; (4) Elisabeth
Andries; (5) Jane Doe; (6) Corinn Hovis; and (7) Sarah Beth Kitch, have no relation to the Sells and do not make a
single factual accusation about the Sells in the Amended Complaint.
[2] Said Report is attached as Exhibit A to the Amended Complaint.
[3]  See Exhibit A to Amended Complaint, Husch Blackwell Report, pp. 71-73, 90.
[4] See Amended Complaint, ¶¶ 247, 251, 277.

extensively by Plaintiffs and attached to their Amended Complaint as Exhibit A, presents an investigation of each of these allegations and demonstrated that for the most part, Lewis' claims regarding the Sells are wholly without merit.

### 2.   Abby Owens

Abby Owens admits that the first time she disclosed the sexual assault was while she was in a rehabilitation facility <u>after</u> she voluntarily left LSU and was dismissed from the Women's Tennis Team for testing positive for Adderall.  The only interaction complained of by Owens in relation to the Sells is the report by Owens' father to Julia Sell about an assault after Owens had left LSU, which Julia Sell promptly reported to Miriam Segar, as detailed in the Husch Blackwell Report.  Therefore, Owens has asserted no claims against Michael Sell and her claims against Julia Sell are also <u>false</u> as demonstrated by the exhibits to Plaintiffs' own Complaint.

### 3.   Kennan Johnson

Kennan Johnson's claims are based upon allegations that the Sells created a hostile environment due to Johnson's weight and sexual orientation.  However, Johnson provides no further details to support those allegations.  It also notable that Johnson retained her scholarship while a student at LSU and admits that she graduated in the spring of 2019.

### B.   <u>The Husch Blackwell Report, included as part of the Amended Complaint as Exhibit A, Discredits Plaintiffs' Allegations Against the Sells.</u>

The crux of the Amended Complaint is to a large degree, based on the findings contained in the March 23, 2021 Husch Blackwell Report.  As set forth in the Amended Complaint, "in November 2020, LSU retained the Husch Blackwell law firm to investigate the school's handling of several Title IX-related incidents as well as LSU's Title IX policies and procedures."[5]   The

---

[5] See Amended Complaint, ¶68.

Husch Blackwell Report is 148-page document with 14 attached Exhibits, and under the Federal

Rules of Civil Procedure, is considered part of the Amended Complaint.[6]

In many instances related to the claims against the Sells, <u>the findings of the Husch</u>

<u>Blackwell Report expressly contradict the allegations contained in the Plaintiffs' Amended</u>

<u>Complaint. In these instances, and as discussed in more detail below, the findings of the Husch</u>

<u>Blackwell Report are controlling as a matter of law.</u>[7]

### 1.    Husch Blackwell Findings regarding LSU Title IX Reporting Policies.

As set forth in the Husch Blackwell Report, PM-73, a "Title IX and Sexual Misconduct

Policy," was adopted by LSU in June 2014, revised in December 2015, and was the applicable

reporting policy until its revision in August 2020.[8]  This Policy included language regarding who

was a "responsible person" for reporting claims of sexual discrimination to the Title IX

Coordinator.  Julia and Michael Sell were, therefore, required by LSU to follow this policy at all

applicable times relevant to this litigation.

The Husch Blackwell Report found that the "responsible person" policy was "poorly

crafted and confusing." Husch Blackwell concluded:

> Thus, it is important to note at the outset that despite contemporaneous assertions
> to the contrary, LSU **has never had a clear written policy requirement that all**
> **employees must report incidents potentially implicating the Title IX policy to the**
> **Title Coordinator**. In addition, even for employees identified as responsible
> employees PM-73, the ultimate reporting directives in the various sections of the
> policy are conflicting and unclear. This lack of clarity is a clear error and
> inconsistent with Department guidance in place during this time period.[9]

The conclusions of Husch Blackwell regarding PM-73 puts into question whether either Julia or

Michael Sell were "responsible parties" required by LSU to report incidents under Title IX and at

---

[6] See Federal Rule of Civil Procedure 10(c).
[7] See, e.g., *Stockwell v. Karan*, 442 F. App'x 911, 913 (5th Cir. 2011).
[8] See Exhibit A to Plaintiffs' Amended Complaint, Husch Blackwell Report, p. 21.
[9] *Id.* p. 23 (emphasis added).

a minimum, contradict Plaintiffs' claims in their Amended Complaint that the Sells had a reporting duty under PM-73 to report those claims made by Plaintiffs or breached any such duty.

Moreover, citing approvingly to the Husch Blackwell Report as support for their extensive Title IX claims in their Amended Complaint, Plaintiffs echo the Husch Blackwell finding that there was "a unique problem in athletics surrounding reporting and lack of training."[10] Specifically as restated by the Plaintiffs, contrary to federal guidelines and best practices:

> At all relevant times, a single athletics employee [Miriam Segar] reviewed each report of sex discrimination and made a determination regarding the whether the report was to be sent to the Title IX Coordinator.[11]

It is therefore, evident, based upon the Husch Blackwell Report that the Sells followed LSU's policy by promptly reporting the Owens and Lewis claims to Ms. Segar.

### 2. The Husch Blackwell Report casts serious doubt on claims by David Lewis that he reported Lewis' abuse to Michael Sell in the summer of 2017.

As discussed above, Husch Blackwell conducted an extensive investigation as to whether "Jade's father, David Lewis reported the May 2017 incident of abuse to tennis coach Mike Sell during the summer of 2017."[12]  Husch Blackwell made the following findings directly contradicting the allegations later made by Plaintiff, Jade Lewis, in her Amended Complaint:

> David Lewis' August 2018 statement that he told Mike Sell that Jade "was being physically abused by Mr. Davis" "on two separate occasions" in June and July 2017 *is inconsistent with the information he provided as part of [the Husch Blackwell]* review because any reports in June would have predated when David Lewis and his wife became aware of the abuse.[13]
>
> *Mike Sell has credibly denied David Lewis' assertion regarding reports of physical violence by Davis against Jade.* As noted above, Sell also pointed out that Davis was not even someone he knew at the time…  We have been unable to identify any motive for Mike Sell, the tennis coach, to protect a "star football

---

[10] See Amended Complaint, ¶ 80.
[11] See Amended Complaint, ¶ 81.
[12] See Exhibit A to Amended Complaint, Husch Blackwell Report, p. 68-73.
[13] *Id.* at p. 72 (emphasis added).

player" who was abusing one of his star tennis players, especially since Davis was clearly not a star football player.[14]

Husch Blackwell, therefore, concludes, "***there is insufficient evidence to conclude that David Lewis reported to Mike Sell in June or July of 2017 that Davis had abused Jade Lewis.***"[15]

3. **The Husch Blackwell Report determines that the team members identified by Jade Lewis did not report any sexual assaults to Julia Sell before April 2018.**

Likewise, <u>in direct contradiction to those allegations made by Lewis</u> in Paragraph 275 of the Amended Complaint regarding reports by teammates of abuse to Julia Sell and Sell's alleged failure to report the same, the Husch Blackwell Report made the following conclusions:

…***no witness*** interviewed [by Husch Blackwell], ***including the three teammates Lewis identified*** from this post during our interview her, ***have stated that they directly told any LSU employee, including Julia Sell, about the May 2017 abuse***. One of the students identified by Lewis was not enrolled at LSU until January 2018, another did not join the team until August 2017….[T]he third teammate did become aware of the May 2017 abuse after Davis texted her about the incident, but the teammate made clear in an interview that ***she did not relay this information to Julia Sell.***[16]

It is undisputed though that several teammates… did report the April and June 2018 incidents to [Julia] Sell. ***It is similarly undisputed that [Julia] Sell appropriately reported those incidents to Miriam Segar, as instructed by Athletics policy at the time, and that those reports made it to the Title IX Office.***[17]

In short, Hush Blackwell concluded that in contrast to those allegations made by Plaintiffs, <u>Julia Sell followed the reporting policy in place in 2018 to properly report Lewis' abuse to Segar, who, in turn, reported those incidents to the Title IX Office.</u>

4. **The Husch Blackwell Report concluded that Julia Sell promptly reported claims made by Owens' father.**

Owens admits that the first time either Julia or Michael Sell were informed of her alleged assault was during a conversation between Julia Sell and Owens' father after Owens left LSU and

---

[14] *Id.* (emphasis added).
[15] *Id*. at p. 73 (emphasis added).
[16] *Id.* at p. 90 (emphasis added).
[17] *Id*. (emphasis added).

was admitted to the rehabilitation center.[18]  While Owens alleges that Julia Sell never forwarded the report by Owens' father, the Husch Blackwell Report explicitly debunks that claim:

> Notably, though, Sells [sic] **did** report the conversation she had with [Owens'][19] father to Miriam Segar, who, in turn, reported it to Title IX Coordinator Stewart.[20]

## LEGAL ARGUMENT

## I.    Legal Standards for Applications of FRCP 12(b)(1) AND 12(b)(6).

### A.  Rule 12(b)(1) Legal Standard

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the Court's subject matter jurisdiction. The party asserting jurisdiction over a claim has the burden of proof to show that subject matter jurisdiction exists.[21] "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[22] Further, the federal court's power as created by the U.S. Constitution is limited to "cases" and "controversies."[23] A "controversy" requires, for one, that the party bringing the action have standing, which requires a party to show "actual or present harm or a significant possibility of future harm."[24]

### B.  Rule 12(b)(6) Legal Standard

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[25]  The allegations must be sufficient "to raise a right to relief

---

[18] See Amended Complaint, ¶198.
[19] Owens was referred to as "Complainant 2" throughout the Husch Blackwell Report.
[20] See Exhibit A to Amended Complaint, Husch Blackwell Report, p. 98 (bold in original) (underline added).
[21] *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018).
[22] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[23] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337, 136 S.Ct. 1540, 1547 (2016).
[24] *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp*., 482 F.3d 1330, 1337 (Fed. Cir. 2007); *see also, Bauer v. Texas*, 341 F.3d 352, 357-58 (5th Cir. 2003).
[25] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 470, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

above the speculative level," and "the pleading must contain something more. . .than. . .a statement

of facts that merely creates a suspicion [of] a legally cognizable right of action."[26]  "While a

complaint. . .does not need detailed factual allegations, a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."[27]  If plaintiffs fail to allege facts

sufficient to "nudge their claims across the line from conceivable to plausible, their complaint

must be dismissed."[28]

### C. The Facts Asserted in the Attached Husch Blackwell Report Control Over Plaintiffs' Bald Allegations.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the

District Court must limit itself to the contents of the pleadings, including any attachments and

exhibits thereto.[29]  The Court must accept all well-pleaded facts as true and view them in the light

most favorable to the plaintiff.[30]  However, conclusory allegations and unwarranted deductions

of fact are not accepted as true.[31]  Moreover, and significant for this case given the inclusion of the

Husch Blackwell Report in Plaintiffs' Amended Complaint as Exhibit A, the Fifth Circuit has held:

> [E]xhibits attached to the complaint, however, are part of the complaint "for all
> purposes." Thus it is not error to consider the exhibits to be part of the complaint
> for purposes of a Rule 12(b)(6) motion.[32]

---

[26] *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235- 36 (3d ed. 2004)).

[27] *Id.* (citations, quotation marks, and brackets omitted); s*ee also, Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct.1937, 1949 (2009).

[28] *Bell Atlantic*, 550 U.S. at 570, 127 S.Ct. at 1974.

[29] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir. 2004).

[30] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).

[31] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins*, 224 F.3d at 498 (Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[32] *United States ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir. 2004) (quoting Fed. R. Civ. P. 10(c)) (emphasis added).

Not only can exhibits be considered, but ***it is well established that in case of a conflict between the allegations in a complaint and the exhibits attached to the complaint, the exhibits control***.[33]  As any exhibit attached to a complaint is part of the pleading "for all purposes," dismissal of a claim pursuant to Rule 12(b)(6) is appropriate when an exhibit contradicts an assertion made in a complaint and eliminates any possible claim for relief.[34]

In *Simmons v. Peavy-Walsh Lumber Co.,* the Fifth Circuit affirmed the dismissal of the case holding that the exhibits to the plaintiff's complaint contradicted the allegations contained therein, thereby refuting plaintiff's own allegations by setting forth the evidence relied on to sustain the motion to dismiss.[35]  In *Miller v. SS Hospitality Group, LLC,*[36] a plaintiff brought a §1983 claim against two police officers alleging excessive force. Defendant police officers moved to dismiss plaintiff's §1983 claim under Federal Rule of Civil Procedure 12(b)(6) and asserted they were entitled to qualified immunity.[37] In determining whether the police officers were entitled to qualified immunity, the court stated that the police report attached as an exhibit to plaintiff's complaint told an entirely different story than what plaintiff had alleged in the complaint itself. Therefore, relying on the attached police report, the court found the police officers were entitled to qualified immunity and dismissed plaintiff's excessive force claims brought under §1983.[38]

By attaching the Husch Blackwell Report to their Amended Complaint, Plaintiffs' have "refuted [their] own allegations by setting forth the evidence relied on to sustain them."[39] As exhibits to a complaint control over allegations, the facts in Exhibit A should replace the

---

[33] See *Stockwell v. Kanan,* 442 F. App'x 911, 913 (5th Cir. 2011); *Simmons v. Peavy–Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940).
[34] Fed. R. Civ. P. 10(c); *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d, 97, 100 (5th Cir. 1974).
[35] *Simmons*, 113 F.2d at 813.
[36] 2018 WL 3054691 (N.D. Tex. June 5, 2018).
[37] *Id.*
[38] *Id.*
[39] *Simmons*, 113 F.2d at 813.

conclusory allegations in Plaintiffs' Amended Complaint.

## II.    Seven of the Ten Plaintiffs Assert No Factual Claims Against the Sells.

As an initial matter, any cause of action asserted against Michael Sell and Julia Sell, excluding those brought by Owens, Lewis, and Johnson, should be dismissed under Rule 12(b)(6). As demonstrated herein, none of the other seven named Plaintiffs assert a single factual allegation against the Sells in their Amended Complaint.[40]  Those plaintiffs, therefore, do not allege facts sufficient to "state a claim to relief that is plausible on its face."[41] The Sells respectfully assert that all claims by those seven Plaintiffs against them should be dismissed pursuant to Rule 12(b)(6).

## III.    Plaintiff Lack Standing to Obtain Prospective Injunctive Relief.

Plaintiffs request prospective injunctive relief from the Sells in the Sells' official capacity under Counts VII, VIII, and IX of the Amended Complaint.  However, Plaintiffs lack standing for the relief requested because they are in no imminent or actual threat of injury as Owens, Lewis, and Johnson have all left LSU and graduated from college.[42] To satisfy the Article III requirements for standing, "a plaintiff seeking injunctive relief must 'show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged conduct.'"[43] The doctrine of standing limits a litigant's power to maintain a lawsuit in federal court to seek redress for a legal wrong.[44] As an element of subject matter jurisdiction, a challenge to standing may be brought under Federal Rule of Civil Procedure 12(b)(1).[45]

In *Muslow v. Board of Supervisors of Louisiana State University and Agricultural and*

---

[40] These seven plaintiffs are: (1) Calise Richardson; (2) Ashlyn Robertson; (3) Samantha Brennan; (4) Elisabeth Andries; (5) Jane Doe; (6) Corinn Hovis; and (7) Sarah Beth Kitch.
[41] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[42] See Amended Complaint, ¶ 200, ¶299.
[43] *Armstrong v. Turner Indus., Inc*., 141 F.3d 554, 563 (5th Cir. 1998) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).
[44] *Spokeo, supra* at 337.
[45] *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017).

*Mechanical College*, the court determined that plaintiffs no longer employed by LSU were not entitled to injunctive relief because they lacked standing, and, therefore, subject-matter jurisdiction.[46] Because these plaintiffs were no longer employed by the university, they could not "realistically face a threat that [defendants] will continue to violate [their] rights."[47]

All three Plaintiffs are no longer LSU tennis players or students. Just as in *Muslow*, Owens, Lewis, and Johnson are requesting injunctive relief for past acts and practices, which do not establish a concrete threat of continuing or future injury. Plaintiffs here do not have the requisite standing to request injunctive relief from the Court. As a result, all of Plaintiffs claims for injunctive relief against the Sells in the Amended Complaint should be dismissed.

## IV. The Title IX Retaliation Claims in Count V Should Be Dismissed as Title IX Does Not Provide for a Cause of Action Against Persons.

Plaintiffs' cause of action against the Sells related to Title IX should be dismissed under FRCP 12(b)(6)[48] as Title IX only provides for a cause of action against "institutions," and not persons. Courts have consistently interpreted Title IX as solely providing a cause of action against institutions, not individuals.[49] Within the Fifth Circuit, several district courts have dismissed Title IX claims on this very basis.

For example, in *Wells v. Johnson*, the court dismissed a plaintiff's Title IX claims against individuals working in the plaintiff's school upon a 12(b)(6) motion as "[Title IX] has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."[50] In *Chestang v. Alcorn State University*, the U.S. District Court for the Southern District of

---

[46] 2020 WL 1864876 at *11 (E.D. La. Apr. 14, 2020).
[47] *Id.* (*citing Gilbert v. Donahoe*, 751 F.3d 303, 313 (5th Cir. 2014)).
[48] Johnson does not appear to assert a claim in Count V against the Sells as she did not allege to have experienced retaliation for reporting an incident of sexual misconduct.
[49] *See Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 247 (2009) ("Title IX reaches institutions and programs that receive federal funds…but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.").
[50] 2015 WL 5138279, at *4 (M.D. La. Aug. 28, 2015) (citing *Fitzgerald*, 555 U.S. at 247).

Mississippi dismissed Title IX claims against an individual as the law only permits actions against "programs or activities that receive federal financial assistance."[51]

The precedent well established by the courts is firm - Title IX does not provide for suits against individuals. As individuals, the Sells cannot be sued under Title IX. Therefore, any cause of action in Count V against the Sells should be dismissed pursuant to Rule 12(b)(6) as the allegations in Count V do not state a claim for relief that is plausible on its face.

## V.    <u>Plaintiffs Fail to Assert a Legally Cognizable First Amendment Retaliation Claim in Count VI.</u>

Atypical are cases, like this one, in which a private citizens (Owens, Lewis and Johnson) allege that state actors (Michael and Julia Sell) took some action against them in retaliation for the exercise of their First Amendment rights, as opposed to the other way around. To survive a Motion to Dismiss, a plaintiff asserting a First Amendment Retaliation claim must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.[52]

First, the Amended Complaint contains no allegations from Owens that she ever personally informed the Sells about her alleged assault or suffered retaliation by the Sells subsequent to engaging in protected speech or conduct.  Nor could she, because Owens was at the rehabilitation facility and no longer a student at LSU or a member of the Women's Tennis Team at the time she allegedly made her report to third parties.[53]   And because she did not return to LSU as a student or to the Tennis Team after her report, Owens does not allege and could not have suffered any retaliation in relation to any speech protected by the First Amendment.

---

[51] 820 F.Supp. 2d 772, 777 (S.D. Miss. May 17, 2011) (internal citation omitted).
[52] *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98 (2nd Cir. 2001).
[53] See Amended Complaint, ¶ 197.

Lewis' claim of retaliation is limited to her allegation that Julia Sell supposedly told Lewis' former teammates to "stay away" from her.  However, as demonstrated above, this allegation has been thoroughly debunked by the Husch Blackwell Report which demonstrated that Julia Sell said just the opposite of that ("Nobody is telling anybody don't hangout out with Jade").[54]  Therefore, Lewis has not alleged a cognizable claim against the Sells either.

Regarding Kennan Johnson, the Amended Complaint contains no allegations that Johnson spoke publicly, that such speech or conduct was protected, or the Sells took retaliatory action against Johnson due to her exercising her First Amendment rights. The Amended Complaint fails to properly state a claim and cannot stand on vague generalities asserted against all "LSU Defendants" without pleading with some degree of specificity how the Sells violated Johnson's protected First Amendment rights.

Finally, due to the absence of any allegations directly against Michael Sell, the Sells respectfully assert that the First Amendment retaliation claim of Plaintiffs against Michael Sell should be dismissed for failure to state a claim upon which relief can be granted.

## VI.    All Claims in Count VII, VIII, and IX Against the Sells Should Be Dismissed Pursuant to FRCP 12(B)(6).

Plaintiffs allege in Count VII that the Sells, in both their official and personal capacities, violated the Plaintiffs' rights to equal protection under the Fourteenth Amendment. Count VIII alleges that the Sells, in both capacities, violated Plaintiffs' procedural due process rights by failing to report allegations of sexual misconduct. In Count IX, Plaintiffs allege the Sells conspired to interfere with civil rights. However, and as explained below, all causes of action against the Sells brought in Counts VII, VIII, and IX should be dismissed pursuant to FRCP 12(b)(6) as 42 U.S.C.

---

[54] See Exhibit A to Amended Complaint, Husch Blackwell Report, p. 90.

§1983 does not provide for a cause of action against an individual in their official capacity and as the Sells are entitled to qualified immunity in their personal capacities.

### A.    Claims Against the Sells in Their Official Capacity for Damages Should be Dismissed as §1983 Only Permits Suits Against "Persons."

Plaintiffs assert equal protection and procedural due process claims under 42 U.S.C. §1983 against the Sells in their official capacities, but these claims must be dismissed as claims against a public employee in their official capacity is not a suit against a "person," but actually against the state.[55] Section 1983 only provides for a cause of action to be brought against a "person," and the state is not a "person" within the meaning of §1983.[56] Similar to Plaintiffs' §1983 claims, a cause of action for conspiracy under§§1985-86 also cannot be brought against the Sells in their official capacities.[57] Several courts have dismissed similar claims on these exact grounds.[58] Therefore, any cause of action asserted against the Sells in their official capacities found in Counts VII, VIII, and IX should be dismissed.

### B.    Claims Against the Sells in Their Personal Capacities Should be Dismissed as the Sells are Entitled to Qualified Immunity.

The Sells assert they are entitled to qualified immunity as to the claims brought by Plaintiffs under Counts VII, VIII, and IX as the Sells acted in good faith and Plaintiffs cannot meet their burden to show otherwise. "Qualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[59] Although considered an affirmative defense, the plaintiff bears the

---

[55] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent.").

[56] *Will*, 491 U.S. at 71.

[57] *See Menard v. Bd. of Trustees of Loyola University of New Orleans*, 2004 WL 856641, at *5 (E.D. La. Apr. 19, 2004).

[58] See Salcido v. Uni. of Southern Miss., 2013 WL 2367877, *2 (S.D. Miss. May 29, 2013); *see also Chestang v. Alcorn State Uni.*, 820 F.Supp.2d 772, 778 (S.D. Miss. May 17, 2011).

[59] *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012).

burden of negating a defendant's claim for qualified immunity once it has been properly raised.[60]

In determining whether the plaintiff has successfully negated the defendant's right to qualified

immunity, courts apply a two-prong test asking: (1) whether a constitutional right would have been

violated on the facts alleged, and (2) whether the right at issue was "clearly established" at the

time of the misconduct, rendering the conduct objectively unreasonable.[61]

For the second prong of the test, a defendant does not violate a clearly established right

"unless the right's contours were sufficiently definite that any reasonable official in the defendant's

shoes would have understood that he was violating it."[62] Sufficient precedent must have placed

the statutory or constitutional question faced by the public official "beyond debate."[63] The United

States Supreme Court has also "repeatedly told courts…not to define clearly established law at a

high level of generality, since doing so avoids the crucial question whether the official acted

reasonably in the particular circumstances that he or she faced."[64] Further, the Fifth Circuit has

explained that qualified immunity "gives ample room for mistaken judgements by protecting all

but the plainly incompetent or those who knowingly violate the law."[65] And recently, the United

States Supreme Court held that qualified immunity should be granted to an official when the facts

of a case are "materially distinguishable" from the facts of a previous court decision determining

that an official's action violated statutory or constitutional law.[66]

The Sells are entitled to qualified immunity as to Plaintiffs' equal protection claims as

---

[60] *See Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2019).

[61] *Plummer v. University of Houston*, 2015 WL 12734039, at *11 (S.D. Tex. May 28, 2015) (*citing Saucier v. Katz*, 533 U.S. 193, 201 (2001)).

[62] *Doe v. University of Mississippi*, 361 F.Supp. 3d 597, 615 (S.D. Miss. Jan. 16, 2019) (*citing Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

[63] *Id.*

[64] *Id.*; *see also*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 2084 (2011).

[65] *Mendenhall v. Rise*, 213 F.3d 226, 230 (5th Cir. 2000) (citation omitted) (emphasis added).

[66] *Rivas-Villegas v. Ramon Cortesluna*, 2021 WL 4822662 (U.S. October 18, 2021) (per curiam); *City of Tahlequah, Oklahoma, et al. v. Austin P. Bond, as Special Administrator of the Estate of Dominic F. Rollice*, 2021 WL 482664 (U.S. October 18, 2021) (per curiam).

Plaintiffs cannot prove either prong of the test. Owens and Lewis allege the Sells discriminated against them because of their sex by not reporting knowledge of sexual misconduct, and Plaintiff Johnson alleges she was treated differently by the Sells on the basis of her sexual orientation.

Plaintiffs cannot prove the second prong of the qualified immunity test because none of the alleged conduct involves a clearly established right "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."[67] As to Owens and Lewis, no precedent has been found which would put the Sells on notice that failing to report allegations of sexual misconduct amounts to unlawful discrimination on the basis of sex. As for Johnson, neither United States Supreme Court, nor the Fifth Circuit Court of Appeals, have held that sexual orientation discrimination in the context of higher education is a violation of the student's right to equal protection.[68] Therefore, under no circumstances could the Sells have known that the alleged conduct was a violation of Plaintiffs' rights.

Plaintiffs' allegations against the Sells also fail the first prong by not successfully pleading a violation of a constitutional or statutory right. As to Lewis and Owens, failing to report incidents of sexual misconduct does not amount to sex discrimination because no allegation was made that the Sells treated male players any differently from female player.[69] The Sells only coached female players, making it impossible to treat male players differently.[70] Lewis and Owens entirely fail to

---

[67] *Doe*, *supra* at 616.

[68] *See* Ronna Greff Schneider, *Education Law: First Amendment, Due Process and Discrimination Litigation*, §4:13 ("as with discrimination involving sexual orientation in the education context, the Supreme Court has not yet determined the scope of legal protection for students…on the basis of gender identify under either Title IX or the federal constitution, including the Equal Protection Clause."); *see also* Office of the General Counsel, U.S. Dep't of Education, MEMORANDUM FOR KIMBERLY M. RICHEY ACTING ASSISTANT SECRETARY OF THE OFFICE FOR CIVIL RIGHTS (Jan. 8, 2021) (stating that LGBTQ students are not expressly included in protections under Title IX.)

[69] To state a claim under the Equal Protection Clause, a §1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class. *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999).

[70] *See Salcido*, 2013 WL 2367877, at *9 (dismissing an equal protection claim against a school official because plaintiff failed to identify similarly situated individuals of a different race, ethnicity, or national origin whose

sufficiently plead a discriminatory intent.[71] As for Johnson, since no constitutional or statutory right existed in 2017 and 2018 to be free from sexual orientation discrimination in the university setting, no such right could have been violated.

The Sells are also entitled to qualified immunity from Plaintiffs' procedural due process claims because the rights in questions are not sufficiently defined and no constitutional violation occurred. Only Plaintiffs Owens and Lewis allege that the Sells violated their procedural due process rights; namely, that the Sells failed to report allegations of sexual misconduct. Johnson asserts no facts to make a cognizable claim for a procedural due process violation.

As to the second prong, no due process rights were clearly established based upon the facts alleged. Caselaw on this issue almost unanimously addresses procedural due process violations when students are disciplined without due process; however, because no disciplinary actions were taken by the Sells against Owens or Lewis, no due process rights were created.[72] The United States Fifth Circuit Court of Appeals has made clear that a plaintiff must "point to controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity."[73] Upon information and belief, only one district court in the Fifth Circuit found that a university's procedures may gave rise to a procedural due process right; but that right only implicates a university employee when it imposes an affirmative duty on that

---

complaints were handled differently by the official); *see also Estate of Carmichael ex rel. Carmichael v. Galbraith*, 2012 WL 4442413, 4-5 (N.D. Tex. Sept. 26, 2012).

[71] *See Lozano v. Baylor Uni.*, 408 F.Supp. 3d 861, 886-887 (W.D. Tex. Sept. 27, 2019) (dismissing an equal protection claim against a city's police department due to plaintiff's failure to plausibly allege a discriminatory intent past a speculative level); *see also Muslow v. Board of Supervisors of Louisiana*, 2020 WL 1864876, at *22 (E.D. La. Apr. 14, 2020).

[72] *See Doe v. University of Mississippi*, 361 F.Supp. 3d 597 (S.D. Miss. Jan. 16, 2019) (university student alleging procedural due process violations after being suspended for the sexual assault of a female student); *Plummer v. University of Houston*, 860 F.3d 767 (5th Cir. 2017) (male and female university students asserting a violations of their procedural due process rights after being expelled by university for violating sexual misconduct policy); *Papin v. University of Mississippi Medical Center*, 347 F. Supp. 3d 274 (S.D. Miss. Sept. 28, 2018) (resident in medical school stated a cause of action for procedural due process violations after termination from the residency program).
[73] *Id.* (citing *Morgan v. Swanson*, 659 F. 3d 359, 371-72 (5th Cir. 2001)).

university employee.[74] According to Plaintiffs, in 2017 and 2018, when the Sells allegedly received reports that Plaintiff Lewis and Owens had been the victims of sexual misconduct, the LSU policy in place did not clearly instruct all athletic employees to report potential Title IX issues.[75] The Husch Blackwell Report concluded that the policy in place during 2017 and 2018, PM-73, was unclear on which employees of the university were required to report incident of sexual misconduct.[76] As no controlling authority exists, and the Sells were under no clear duty to report, Owens and Lewis cannot prove that a procedural due process right was clearly established at the time.

Owens and Lewis also cannot prove the first prong of the test, since they were not deprived of any liberty or property interest.[77] The Sells never took any disciplinary action against Owens and Lewis, and both left the university on their own accord. Therefore, on the facts alleged, no procedural due process violation occurred, and the Sells should be entitled to qualified immunity from Plaintiffs' procedural due process claims.

In order to bring a conspiracy claim under U.S.C. §1985 and §1986, a violation of §1983 must be shown.[78] Since the Sells are entitled to qualified immunity as to the equal protection and procedural due process claims, qualified immunity extends to shield them from suit against Plaintiffs' conspiracy claims as well. Therefore, all claims under Counts VII, VIII, and IX against the Sells in their personal capacities should be dismissed as they are entitled to qualified immunity.

**VII.**  **Plaintiffs' Fail to Assert a Facially Plausible Claim in Count XIII that the Sells are Liable for Negligent Supervision.**

Negligent Supervision claims are analyzed under the duty-risk analysis contained in La.

---

[74] S*ee Salcido*, *supra* at 5.
[75] See Amended Complaint, ¶ 82.
[76] Exhibit A to Amended Complaint, Husch Blackwell Report, pp. 21-23.
[77] *See Logan v. Zimmerman Brush Co*., 455 U.S. 422, 428, 102 S.Ct. 1148, 1153 (1982).
[78] *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir.1990).

C.C. art. 2315 under which it must be demonstrated that the Sells, typically as an employer, breached a duty of reasonable supervision over LSU personnel under their control, causing damages. There are absolutely no allegations contained in the Plaintiffs' Amended Complaint that either Michael or Julia Sell had a supervisory role over any individual. Further, there are absolutely no allegations in the Amended Complaint that a lack of supervision caused or contributed to the alleged damages of any of the Plaintiffs.

The causation element of a negligent supervision claim can only be satisfied under La. C.C. art. 2315 if it is proven that the alleged lack of supervision was the cause-in-fact of a plaintiff's alleged damages. It must be shown that "but for" the lack of reasonable supervision, plaintiff's injuries would have been prevented.[79] The Plaintiffs do not allege that the Sells failed to provide reasonable supervision over any LSU-employed individual. In fact, <u>Plaintiffs specifically name Michael and Julia Sell as employees who required supervision</u>, not as supervisors who caused damages for lack of proper supervision of other employees.[80] The Plaintiffs provide no factual or legal basis for why Michael or Julia Sell, the co-head coaches of the LSU Women's Tennis Team, would have such a duty under Louisiana law to "supervise" LSU students so as to prevent sexual assault. Such allegations do not address the Sells' potential culpability and should be dismissed from the suit for failure to provide a factual basis from which relief can be granted.

## VIII.  <u>Plaintiffs Fail to Assert a Facially Plausible Claim in Count XIV for Negligent Infliction of Emotional Distress.</u>

When no physical injuries are present as is the case in the instant litigation, to succeed in a claim for negligent infliction of emotional distress, a claimant must show that: (1) the defendant's conduct is negligent; and (2) such conduct caused mental disturbance accompanied by physical

---

[79] *Doe ex rel. Doe v. DeSoto Parish School Bd.*, 39,779 (La.App. 2 Cir. 6/29/05), 907 So.2d 275, 281.
[80] See Amended Complaint, ¶492.

injury, illness, or other physical consequences.[81]

In general, **if a defendant's conduct is merely negligent and it causes only mental disturbance without a physical consequence, the defendant is not liable for the emotional injury**.[82]  While exceptions to the general rule have been carved out, this is only in cases where there is a clear showing of an "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious."[83] None of the allegations made against he Sells are sufficient to meet this burden.

The potential instances of "conduct" which purport to provide the factual basis for the emotional distress claims of Plaintiffs Owens and Lewis are: 1) the Sells allegedly failing report pursuant to Title IX protocol; 2) an alleged in-person meeting between Owens' father and Julia Sell in Nashville, Tennessee; and 3) two alleged phone calls between Michael Sell and Lewis' father. It is critical to note that none of these three instances actually allege any communication between Michael or Julia Sell and either Owens or Lewis, themselves.  Alleged statements made (which are expressly denied) to the fathers of Owens and Lewis are insufficient to establish the causal link needed between the Sells' alleged conduct and the emotional damages allegedly sustained by Owens and Lewis.

The Louisiana Supreme Court previously identified various types of conduct involving "genuine and serious mental/emotional distress" so as to meet the above standard for recovery, none of which apply here.[84]  Absent a connection between the Sells' alleged conduct and the Plaintiffs themselves, there can be no recovery.

Further, an alleged failure to report under Title IX is not "conduct" at all, but arguably an

---

[81] *Duncan v. Bartholomew,* 2011-0855 (La.App. 4 Cir. 4/13/12), 88 So.3d 698.
[82] See, *e.g.*, *Kell v. Iberville Bank*, 352 F.Supp.3d 650, 664 (E. D. La. Nov. 7, 2018) (emphasis added).
[83] *Moresi v. State through Dep't of Wildlife Fisheries,* 567 So.2d 1081, 1096 (La. 1990).
[84] *Id.*

omission which cannot meet the burden required to prevail on a claim for negligent infliction of emotional distress.  Even assuming, for argument's sake, that the Plaintiffs can "connect the dots" regarding causation, Plaintiffs do not and cannot claim that the alleged conduct creates an "especial likelihood of genuine and serious mental distress" as required.  Thus, the allegations are insufficient to establish that Michael and/or Julia Sell conducted themselves in such a way as to cause compensable emotional distress to the Plaintiffs.

Further, none of the allegations asserted by Johnson demonstrate a possibility of genuine or serious mental distress as defined by the courts and no such factual support is provided by Johnson.  Johnson's claims are therefore, similarly without merit.

## IX.  Plaintiffs Cannot Maintain Facially Plausible Cause of Action under Count XV for Intentional Infliction of Emotional Distress.

In order to recover for intentional infliction of emotional distress, a plaintiff must establish:

(1)     that the conduct of the defendant was extreme and outrageous;

(2)     that the emotional distress suffered by the plaintiff was severe; and

(3)     that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[85]

Louisiana courts have set a very high threshold on conduct sufficient to sustain an intentional infliction of emotional distress claim, and the Louisiana Supreme Court has noted that truly outrageous conduct is required before allowing a claim even to be presented to a jury.[86] **The conduct must be so outrageous in character and so extreme in degree as to "go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a**

---

[85] *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991); *Prest v. La. Citizens Prop. Ins. Corp.*, 2012-0513 (La. 12/4/12), 125 So.3d 1079.
[86] *Nicholas v. Allstate Ins. Co.,* 99-2522 (La. 8/31/00), 765 So.2d 1017.

**civilized community**."[87]  Thus, it is clear that a very high bar must be met for a plaintiff to prevail

on a claim of intentional infliction of emotional distress.

There are no allegations presented by the Plaintiffs in their Amended Complaint that would

remotely support a finding that either Michael or Julia Sell engaged in conduct that would be

considered "extreme" or "outrageous."   The high bar to recover under a cause of action for

intentional infliction of emotional distress has been described as follows:

> It has not been enough that the defendant has acted with an intent which is tortious
> or even criminal, or that he has intended to inflict emotional distress, or even that
> this conduct has been characterized by "malice" or a degree of aggravation which
> would entitle the plaintiff to punitive damages for another tort. Liability has been
> found only where the conduct has been so outrageous in character, and so extreme
> in degree, as to go beyond all possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized community. Generally, the case is
> one in which the recitation of the facts to an average member of the community
> would arouse his resentment against the actor, and leave him to exclaim,
> "Outrageous!"[88]

A failure to report pursuant to Title IX is not extreme or outrageous conduct. There is no

jurisprudence stating that a person allegedly stating they would make someone cry, for example,

rises to this level either.  The allegations that Michael Sell purportedly told David Lewis by phone

that his daughter's claims "could not be true" is, likewise, not considered by the courts to meet the

"extreme", or "outrageous" standard, nor is any allegation that Julia Sell told Dan Owens in

Nashville that she did not believe the claims of his daughter.

Furthermore, there are no allegations in the record which would support a finding that

either Michael or Julia Sell intended to inflict emotional distress upon any Plaintiff, nor do

conversations with the parents of the Plaintiffs provide support for a finding that the Sells "knew"

that "severe emotional distress" would be caused to either Abby Owens or Jade Lewis.  Without

---

[87] *White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La. 1991) (emphasis added).
[88] Restatement (Second) of Torts 46, Comment D.

specific allegations that would support a cause of action for intentional infliction of emotional distress, this claim against Michael and Julia Sell should be dismissed.

**X.    Plaintiffs' Cause of Action Under Count XIX Should be Dismissed as Plaintiffs Have Failed to Allege Facts Sufficient to State a Plausible Claim.**

Plaintiffs' Amended Complaint and Louisiana Racketeering Act ("LRA") Case Statement fails to sufficiently allege how the Sells' actions could have possibly violated any predicate acts required to maintain that claim and provides Defendants and this Court with nothing more than a recitation of the bald allegations already found in their Amended Complaint.

The LRA in La. R.S. 15:1353 creates civil liability for four categories of conduct. First, it is unlawful for someone to knowingly receive proceeds derived from racketeering activity to then use those proceeds to operate an enterprise or to invest those proceeds in immovable property. Second, it is unlawful for a person to knowingly acquire through racketeering activity "any interest in or control of any enterprise or immovable property." Third, it is illegal for any employee or associate of the enterprise to knowingly conduct or participate in an enterprise through a pattern of racketeering activity. Fourth, it is illegal for someone to conspire or attempt to violate any of the three abovementioned crimes.[89]

In addition, the LRA also requires that plaintiffs assert a connection to an enterprise and at least two predicate racketeering acts.[90] Plaintiffs assert in their Case Statement that the Sells are guilty of all four categories of illicit conduct under the Louisiana Racketeering Act.[91]

**A.    Plaintiffs Lack Standing to Bring a Claim Under the Louisiana Racketeering Act.**

Plaintiffs here lack standing to bring a LRA claim as they do not allege any actionable injury or loss. The LRA confers standing to a plaintiff "injured by reason of any violation of the

---

[89] *See* La. R.S. 15:1353(A)-(D).
[90] La. R.S. 15:1352-53.
[91] Plaintiffs' Louisiana Racketeering Act Case Statement pp. 19-22. [Doc. 103].

provisions of R.S. 15:1353."[92]  Plaintiffs Owens, Lewis, and Johnson allege damages as a result

of a loss of <u>future</u> income.[93] However, La. R.S. 15:1356 does not provide standing for future

damages, but only "any injury or loss having already occurred."[94] Owens also alleges damages

arising out of the loss of her scholarship, but the expectation of receiving a scholarship, once

dismissed from the tennis team for testing positive for Adderall, is not the type of injury which can

confer standing.[95]  Further, Owens does not allege that she was ever denied a scholarship to finish

her studies at LSU.

Finally, the remainder of the damages asserted by Plaintiffs – expenses from medical

treatment as a result of emotional distress and moving expenses – do not confer standing as the

cause of these damages are too remote to establish causation. The United States Supreme Court

has made clear that standing in a RICO civil suit[96] only exists if the plaintiff has been injured *by*

*reason of* the conduct constituting the violation.[97] To establish causation, a plaintiff must show

that the predicate offense "not only was a 'but for' cause of his injury, but a proximate cause as

well."[98] As explained by the district court in *Allstate Insurance Company v. Benhamou*, the United

States Supreme Court has repeatedly stated that a plaintiff lacks standing to bring a racketeering

claim when the proximate cause of the alleged harm is too attenuated from the predicate acts.[99]

---

[92] *See* La. R.S. 15:1356.

[93] Plaintiffs' Louisiana Racketeering Act Case Statement pp. 36-38.

[94] *Board of Sup'rs of Louisiana State University and Agr. And Mechanical College v. Guth*, 195 So.3d 579, 587 (La. App. 4 Cir. 5/25/15); *rev'd on other grounds*, 213 So.3d 390 (La. 2016) (while the Louisiana Supreme Court reversed the decision of the Fourth Circuit Court of Appeal because questions of material fact existed, the decision of the Fourth Circuit that plaintiffs did not have standing to bring a LRA claim was not expressly rejected by the Supreme Court.).

[95] Amended Complaint ¶196. *See Bowen v. Adidas America, Inc.*, 2021 WL 2141724, at *4 (D. S. C. May 26, 2021) (holding that "A RICO plaintiffs' claimed 'injury to mere expectancy interests or to an intangible property interest' cannot confer RICO standing.")

[96] Because of the "parallel" between the LRA and federal RICO statute, the Fifth Circuit Court of Appeals has found federal decisions in this area to be "persuasive". *Viking Construction Group, LLC v. Satterfield and Pontikes Construction Inc.*, 728 Fed.Appx. 405, 406 (5th Cir. 2018) (citing *State v. Touchet*, 759 So.2d 194, 197 (La. App. 3 Cir. 4/5/00)).

[97] *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285 (1985).

[98] *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 1318 (1992).

[99] 190 F.Supp. 3d 631, 644 (S.D. Tex June 2, 2016) (*citing Homes*, 503 U.S. at 271; *Anza v. Ideal Steel Supply Corp.*,

Here, Plaintiffs cannot establish proximate cause for the alleged harms (medical expenses from emotional distress and moving expenses) as they are far too removed from the predicate acts alleged (money laundering, corrupt influencing, damaging public records, and intimidating witnesses). It is alleged that Julia Sell told Johnson to stop "worrying so much about other people" so that she would "be a better tennis player" in an alleged effort to influence Johnson to not report a crime, but Johnson's damages are for emotional distress, health care expenses, and loss of earning potential. Although the Sells deny these allegations even fit the crime of intimidating witnesses, the damages that Johnson alleges cannot be the proximate cause of Julia Sell simply remarking that Johnson should focus on training.

Again, Plaintiff Lewis argues, without merit, that Julia Sell committed the crime of intimidating witnesses by allegedly telling her former teammates "to stay away from Plaintiff Lewis." While Plaintiffs conclude, without any supportive facts whatsoever, that this was done to prevent teammates from coming forward about incidents of sexual misconduct, Lewis's damages are for a loss in earning potential, the costs of moving to New Zealand, and healthcare costs. It cannot be reasonably argued that this statement is the "but for" or proximate cause of these damages, especially in light of Lewis' graduation from LSU, her continued relationship with her abuser, and the slew of other potential causes.

The same is true for the crimes of corrupt influencing, money laundering, and injuring public record. Throughout the Case Statement, Plaintiffs twist and distort the purpose of various criminal statutes in attempt to hang on to their LRA claims, but they are unsuccessful in pleading facts which plausibly state a claim for how the conduct alleged could have caused Plaintiffs' racketeering damages, let alone the facts necessary to plausibly assert that the Sells have

---

547 U.S. 451, 458 (2006); and *Hemi Group LLC v. City of New York*, 559 U.S. 1, 9-11 (2010)).

committed the predicate acts in the first place.

**B. Plaintiffs Fail to State Facts Sufficient to Prove that the Sells Committed the Predicate Acts.**

Plaintiffs fail to provide supportive factual information for their claims of money laundering, corrupt influencing, injuring public records, and intimidating witnesses. For example, Plaintiffs allege that "every instance of non-reporting is an intentional injury to the public record."[100] According to the Plaintiffs, any time information is given to an employee of the state and not recorded, the employee has committed the crime of injuring public records under La. R.S. §14:132. If this was the case, almost all state employees would be guilty of such a crime. Such an absurd consequence indicates the alleged conduct is not the type of activity which this criminal statute intended to capture. Plaintiffs also fail to understand that in order for a public record to be "concealed," a record must exist. Receiving information about sexual misconduct is not a public record because nothing has been recorded. Further, Plaintiffs fail to state how this allegation fits the claims by Johnson, who made no reports regarding a hostile environment while at LSU.

Nor do Plaintiffs sufficiently allege the element of intent. This distortion of the law continues for the remaining three predicate acts which Plaintiffs allege the Sells are guilty of, but as the conduct alleged clearly does not fit the crime, Plaintiffs' have not sufficiently alleged facts required to make their claims plausible. As such, the Court should dismiss Plaintiffs' claims against the Sells in Count XIX under the LRA.

**C. Plaintiffs Failed to Follow the Court's Order by Not Providing Sufficient Factual Information.**

The Sells assert that Plaintiffs failed to comply with the Court's Louisiana Racketeering Act Order, the purpose of which was to provide further detail and provide information "with

---

[100] Plaintiffs' Case Statement page 47, note 36.

specificity" regarding Plaintiffs' LRA claims.[101] In comparison to Plaintiffs' Case Statement, RICO case statements made in other cases before this Honorable Court provided dates, witness statements, and facts sufficient to determine whether an enterprise even existed.[102]

This Court ordered Plaintiffs to provide the dates for when each predicate act was committed. Plaintiffs failed to do so. This Court ordered Plaintiffs to describe the facts surrounding each predicate act. Plaintiffs repeated the allegations in the Amended Complaint and provided nothing new. Quite simply, almost no requested details regarding the predicate acts were delivered.

Instead, Plaintiffs claim that the Sells are liable under the LRA for receiving an income pursuant to their employment and providing opportunities for students to obtain an LSU degree by offering athletic scholarships. These are not crimes. Therefore, the Court should dismiss all of Plaintiffs' claims under the Louisiana Racketeering Act asserted against the Sells as Plaintiffs have failed to comply with the Court's Order.

## XI.    The Claims of Lewis, Johnson, and Owens Should be Dismissed as Untimely.

A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred and the pleadings fail to raise some basis for tolling.[103] "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,'" and while the limitations period is borrowed from state law, "the particular accrual date of a federal cause of action is a matter of federal law."[104] "[U]nder federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[105]

---

[101] Rec. Doc. 93.
[102] *See, e.g.,* Document 21 filed in *Shiell v. Jones et al*, 2020 WL 2331637 (E.D. La. May 11, 2020).
[103] *Taylor v. Bailey Tool Mfg. Co.,* 744 F.3d 944, 946 (5th Cir. 2014).
[104] *King–White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington,* 657 F.3d 215, 238 (5th Cir. 2011)).
[105] *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)).

The Fifth Circuit has found that "[A] plaintiff's awareness encompasses two elements: (1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions."[106]    "Finally, 'awareness' for accrual purposes **does _not_ mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further**.'"[107] Thus, for awareness of causation, a plaintiff "must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection ... or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury."[108]    Further, "[a] plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, [sic] and is charged with the knowledge of all facts such an investigation would have disclosed."[109]

Further, the burden of proof shifts to the plaintiff to prove a suspension or interruption of the prescriptive period based on the equitable doctrine of _contra non valentem_.[110]    _Contra non valentem_ suspends prescription when some cause of action is not known or reasonably knowable by the plaintiff, regardless of whether it is due to the actions of the defendant.[111]

In this case, the claims of Owens, Lewis, and Johnson are prescribed on the face of the Amended Complaint filed by the Plaintiffs on April 26, 2021.  Plaintiffs claim, however, that they were unaware of their causes of action "until the release of the [Husch Blackwell] Report."[112] However, as recognized by the Plaintiffs themselves, the Husch Blackwell Report only address

---

[106] _Id._ (quoting _Piotrowski v. City of Houston_, 237 F.3d 567, 576 (5th Cir. 2001)).

[107] _Id._ (quoting _Piotrowski_, 237 F.3d at 576) (italics and brackets in original) (other emphasis added).

[108] _Harrison v. United States,_ 708 F.2d 1023, 1027 (5th Cir. 1983).

[109] _Beckwith v. City of Houston_, 790 Fed.Appx. 568 (5th Cir. 2019)(citing _Jensen v. Snellings_, 841 F.2d 600, 607 (5th Cir. 1988)).

[110] _In re Taxotere (Docetaxel) Prod. Liab. Litig.,_ 995 F.3d 384, 388–89 (5th Cir. 2021) (_citing Younger v. Marshall Indus. Inc._, 618 So. 2d 866, 869 (La. 1993) (emphasis added).

[111] _Wimberly v, Gatch,_ 635 So.2d 206, 211 (La. 1994).

[112] See Amended Complaint, ¶207 (Owens), ¶281 (Lewis), and ¶300 (Johnson).

LSU's Title IX failures[113] and are unrelated to the other claims brought by the Plaintiffs.

### A.    Abby Owens

Abby Owens' claims should have been filed at the latest by May 2020.   Owens admits that she disclosed the rape for the first time on or about April 4, 2017.  Owens was aware of and actively investigating her potential causes of action by 2019.  Specifically, Owens admits that she "***learned about LSU's Title IX Office and their obligations in 2019 when she spoke with Jessica Luther, the reporter who covered her story.***"[114] On May 20, 2019, Owens requested a copy of her Title IX report from the Title IX Office.   Owens then admits that on **May 22, 2019,** she was advised by Title IX Coordinator, Stewart, who told her that "[Stewart] had heard about Owens' rape but decided not to move forward with an investigation since the Athletics' Department did not give her the name of the assailant."[115]  Based upon the foregoing, as of **May 22, 2019,** Owens was aware that LSU had taken no action in connection with her reported rape.

### B.    Jade Lewis

All of the events involving Lewis upon which her claims are made occurred beginning in 2017 and ending in 2018 based upon a relationship with football player.  As to Julia Sell, Plaintiff Lewis alleges that "while the criminal case against John Coe was pending, Defendant, Julia Sell, instructed Plaintiff Lewis' former teammates on the tennis team to stay away from Plaintiff Lewis. This admonition made Plaintiff Lewis feel alienated and isolated from her teammates and closest friends during the time when she needed their support."[116]  Based upon this allegation, as written, it is apparent that Lewis was aware of Julia Sell's alleged "retaliation" against her **in 2018**.  Finally, and perhaps most tellingly, Plaintiff admits, "On October 18, 2018, Plaintiff Lewis' father sent

---

[113] As stated above, the Husch Blackwell Report exonerates the Sells on these issues.
[114] See Amended Complaint, ¶ 203.(emphasis added).
[115] See Amended Complaint, ¶ 204.
[116] See Amended Complaint, ¶277. This claim has also been debunked by the Husch Blackwell Report.

letters" to the NCAA complaining that LSU officials had failed to respond to Lewis' complaints.[117]

Thus, by Lewis' own admission, she was aware of the Sells' alleged wrongdoing and failure to take action as of **October 18, 2018**, when Lewis' father felt it was necessary to contact the NCAA to report LSU's failures. Based upon the foregoing, in waiting to file the lawsuit until April 26, 2021, Owens' claims based upon the one-year prescriptive period for Louisiana tort claims are time-barred and should be dismissed.

### C.    Kennan Johnson

The events that provide a basis for Johnson claims allegedly occurred between May 8, 2017 when Johnson went to LSU and ended "when Johnson graduated from LSU in Spring 2019."[118] Shortly following her graduation, Johnsons admits that she "blocked Defendant, Julia Sell's number..."[119] All of the numerous allegations made against Julia Sell by Johnson occurred during Johnson's time at LSU. Johnson alleges that Julia Sell's actions caused her to "starve herself", "severe anxiety" led to "throwing up regularly due to the nausea and anxiety", and that her anxiety was severe enough to cause her to seek help from a psychologist during that time period.[120]

It is evident from her allegations that Johnson was aware that her alleged injuries were caused directly by Julia Sell's alleged actions. Indeed, these alleged actions were sufficient enough for Johnson to block Julia Sell's phone number upon graduation in spring 2019 and seek the help of a psychologist. It is, therefore, apparent that Johnson was aware of the alleged injuries caused by Julia Sell upon graduation in **spring 2019.** Thus, those causes of action listed above with a one-year statute of limitations should have been filed by no later than 2020 and should be dismissed as untimely.

---

[117] See Amended Complaint, ¶278.
[118] See Amended Complaint, ¶299.
[119] See Amended Complaint, ¶299.
[120] See Amended Complaint, ¶¶ 287, 297.

Respectfully Submitted:


**JEFF LANDRY**
**ATTORNEY GENERAL**
**By:** *_/s/ Sidney W. Degan, III_*
**SIDNEY W. DEGAN, III (#04804)**
**KEITH A. KORNMAN (#23169)**
**JENA W. SMITH (#25255)**
Special Assistant Attorneys General
**DEGAN, BLANCHARD & NASH**
400 Poydras Street, Suite 2600
New Orleans, LA 70130
Telephone: (504) 529-3333
Facsimile: (505) 529-3337
sdegan@degan.com
kkornman@degan.com
jsmith@degan.com
*Attorneys for Defendants,*
*Julia Sell and Michael Sell*