UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                           CIVIL ACTION NO. 3:21-cv-00242
   *Plaintiffs*

                                              JUDGE WENDY B. VITTER

VERSUS
                                              MAG. JUDGE SCOTT D. JOHNSON

LOUISIANA STATE UNIVERSITY, ET AL.
   *Defendants*


## MEMORANDUM IN SUPPORT OF RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Defendants Jennie Stewart, Angelo-Gene "A.G." Monaco, and James Marchand submit this memorandum in support of their motion to dismiss all claims alleged against them by plaintiffs in their Amended Class Action Complaint[1] for lack of subject matter jurisdiction under F.R.C.P. 12(b)(1) or for failure to state any claim under F.R.C.P. 12(b)(6).

Instead of pursuing a Title IX lawsuit against LSU, the entity which employed these defendants, plaintiffs opted to plead "shotgun" allegations against an amalgam of unrelated individual defendants, the apparent purpose of which is to cause LSU and the State of Louisiana to incur exorbitant legal fees and litigation expenses in defending the suit.  Plaintiffs' attempt to burden nineteen individual defendants with little or no relation to each other outside of the fact that they were associated with LSU with the time and expense to defend inapplicable, unnecessary, and cumulative claims should be rejected by this Court.

---

[1] R.Doc. 22.

**RELEVANT FACTS ALLEGED IN AMENDED CLASS ACTION COMPLAINT**

Plaintiffs allege that Monaco was the Associate Vice President of Human Resource Management for LSU from 2010 to April 10, 2018.[2]    Marchand served as LSU's Title IX Coordinator from 2013-15.[3]    Stewart is and has been LSU's Title IX Coordinator from 2015 to present.[4]

The factual allegations against Marchand and Monaco are beyond scant.    Plaintiffs allege only that Marchand was the sole employee staffing LSU's Title IX office from 2013 to 2015.[5]    He is never mentioned again.    Monaco is alleged to have been designated as the LSU employee responsible for coordinating Title IX compliance pursuant to the university's Equal Opportunity Policy for an unidentified period.[6]    Plaintiffs allege that "it has also been reported that Monaco refused to provide interim measures to one of the student victims of former LSU football coach Les Miles" at an unspecified time.[7]    This "victim" is not a plaintiff to this lawsuit. Monaco is then never mentioned again.    These extremely limited facts alone are obviously insufficient to state a valid claim; yet plaintiffs have tried to assert thirteen claims against Marchand and Monaco based only on those facts.

The allegations against Stewart, while still vague, are at least slightly more detailed. Three of the ten named plaintiffs allege specific actions by Stewart.

---

[2] Id., ¶ 34.
[3] Id., ¶ 46.
[4] Id., ¶ 47.
[5] Id., ¶ 62.
[6] Id., ¶ 63.
[7] Id., ¶ 64.

Plaintiff Abby Owens alleges that she was raped in 2016 by an LSU football player.[8] Owens alleges that she was not aware of the existence of LSU's Title IX office prior to 2019.[9] On May 20, 2019, Owens – who left LSU two years earlier, in March 2017[10] – contacted the Title IX office for the first time to request a copy of the investigation report for her alleged 2016 rape.[11]  On May 22, 2019, plaintiffs claim Stewart told Owens that she had heard about her rape but did not move forward with an investigation because the Athletic Department did not provide Stewart the name of the alleged assailant.[12]  Plaintiffs allege no further contact between Stewart and Owens until her attorney submitted a public records request to the Title IX office to obtain a copy of any record relating to Owens' 2016 rape.[13]  Stewart responded to the request with an e-mail on August 17, 2020, stating that the Title IX office had no records to provide.[14]  Stewart also told Owens that if Owens wanted to learn the identity of the individual at LSU to whom the rape was reported she should contact the rehabilitation facility to which she was admitted in 2017, as that facility provided the initial report to LSU.[15]

Plaintiff Elisabeth Andries alleges that she was assaulted by a male LSU student during a fraternity bus trip in October 2016.[16]  She alleges that the same student again attempted to assault her in July 2017 after she picked him up from a bar.[17]  Years later, on March 7, 2019, Andries reported the assaults to defendant Tracy Blanchard, LSU's Assistant Dean of Students &

---

[8] Id., ¶¶ 193-95.
[9] Id., ¶ 201.
[10] Id., ¶ 200.
[11] Id., ¶ 203.
[12] Id., ¶ 204.
[13] Id., ¶ 205.
[14] Id., ¶ 206.
[15] Id.
[16] Id., ¶¶ 210-12.
[17] Id., ¶ 214.

Associate Director of Advocacy In LSU's Office of Student Advocacy & Accountability ("SAA").[18]

SAA in turn reported the assaults to the Title IX office on March 8, 2019.[19]  On April 2, 2019,

Stewart told Andries that there was no reason to issue a no-contact order against the alleged

assailant because there had been no contact to forbid in the nearly two years since July 2017.[20]

LSU's Title IX investigation into Andries' complaint, issued on June 3, 2019,  concluded

that the alleged assailant violated LSU's Title IX policies.[21]  The alleged assailant appealed the

finding.[22]  He then requested an extension of the appeal deadline, which was extended twice.[23]

A second student who alleges she was assaulted by the same assailant on the same fraternity

bus trip[24] spoke to Stewart and asked why she was not interviewed in the investigation and

whether she should file her own complaint.[25]  When that student asked why the appeal

deadline was extended twice, Stewart allegedly stated that she did not have to "justify her

decisions" to students.[26]  Thereafter, on July 22, 2019, Stewart denied the alleged assailant's

appeal.[27]

Finally, plaintiff Corinn Hovis alleges that she was raped by an LSU football player (Loe)

on January 24, 2020.[28]  After Hovis suffered a panic attack later that night, her roommate

contacted the dorm's Resident Assistant and Hovis decided to file a report with LSUPD, who in

turn contacted the Baton Rouge Police Department because the incident occurred off

---

[18] Id., ¶ 222.
[19] Id., ¶ 222.
[20] Id., ¶ 224.
[21] Id., ¶ 226.
[22] Id., ¶ 227.
[23] Id., ¶ 227.
[24] Id., ¶ 211
[25] Id., ¶ 227.
[26] Id., ¶ 227.
[27] Id., ¶ 229.
[28] Id., ¶¶ 323-25.

campus.[29]  Residential Life personnel reported the incident to the Title IX office.[30]  On January

31, 2020, Stewart met with Hovis to explain her reporting options, with Hovis deciding to move

forward.[31]  On March 6, 2020, the investigator assigned to the case concluded that Loe violated

the Title IX policy.[32]   In June 2020, Loe was suspended for one month and issued a no-contact

directive prohibiting him from communicating with Hovis.[33]  Hovis alleges that Loe violated this

directive by having his girlfriend contact Hovis on two occasions in May 2020.[34]  Hovis alleges

that these contacts were reported to Stewart but that LSU took no further disciplinary action

against Loe.  Loe then transferred from LSU to another university on August 6, 2020.[35]

No other named plaintiffs lodge any specific factual allegations against Stewart.

Plaintiffs' original complaint was filed on April 26, 2021.  Only plaintiff Hovis alleged any actions

by Stewart which occurred within the one-year period prior to the filing of the suit.

## LAW AND ARGUMENT

I.    **Plaintiffs' complaint should be dismissed in its entirety as an improper "shotgun pleading."**

Shotgun pleadings contain several counts within a complaint with each count

"incorporating by reference the allegations of its predecessors, leading to a situation where

most of the counts (i.e., all but the first) contain irrelevant factual allegations and conclusions."

*Copeland v. Axiom Mortgage Group, LLC*, 2016 WL 4250341, at *4 (S.D. Miss. 2016) (citations

omitted).  These improper pleadings fail to distinguish between the actions of individual named

---

[29] Id., ¶ 326.
[30] Id., ¶ 328.
[31] Id., ¶ 328.
[32] Id., ¶ 330.
[33] Id., ¶ 331.
[34] Id., ¶ 332.
[35] Id., ¶ 332.

defendants and attempt to lump all defendants together in allegations. *Id.* It is impossible for any reader of the complaint, including the Court in its consideration of the defense motions to dismiss, to decipher which party committed which alleged acts. The Fifth Circuit discourages these types of shotgun pleadings "where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick." *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986). Shotgun complaints are subject to dismissal under F.R.C.P. 12(b)(6). *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014).

Plaintiffs' Amended Complaint is on its face an improper shotgun pleading. It is 145 pages long, contains 589 separately numbered paragraphs, and attaches a 262-page exhibit. It names nineteen separate defendants, many of whom are named on what would generously be described as a razor-thin basis. Aside from Count I, each count purports to "adopt and incorporate by reference the previous plead (sic) paragraphs as if fully plead (sic) herein." Most counts refer to actions generically committed by "Defendants" with little attempt to distinguish between them. Instead of focusing narrowly on their Title IX claims against the entity defendants, plaintiffs try to state claims against every person whose name was found in a report in the hopes that something will stick. Requiring defendants like Monaco and Marchand to defend themselves in this lawsuit, where they are mentioned fewer times than could be counted on one hand and didn't interact with a single plaintiff, is absurd.

## II.    All claims against Monaco and Marchand and most claims are prescribed.

The Amended Complaint alleges no factual allegations against Marchand after he no longer served as a Title IX Coordinator in 2015. The only allegation against Monaco is that he refused to provide interim measures to a student victims of former LSU football coach Les

Miles—who was fired by LSU in September 2016—though the student is not a plaintiff, and Les Miles is not a defendant.  Only plaintiff Hovis alleges any action by Stewart which occurred as recently as 2020.  This lawsuit was not filed until March 2021.  Monaco and Marchand submit that all claims asserted against them in this lawsuit are prescribed, and Stewart submits that all claims are prescribed, based on the same legal reasoning presented to the court by other defendants.

### III.    Count V must be dismissed against these defendants because Title IX creates no cause of action for individual liability.

"Liability under Title IX does not extend to school officials, teachers, and other individuals."  *Plummer v. Univ. of Houston*, 860 F.3d 767, 776 n. 12 (5th Cir. 2017) (citing *Davis v. Monroe Cty. Bd. of Ed.*, 526 U.S. 629, 640-43 (1999)); *Jones v. Southern Univ.*, 2020 U.S. Dist. LEXIS 50762, at *13 (M.D. La. Feb. 27, 2020) (dismissing Title IX claims against individual administrators at Southern University in Baton Rouge).  All Title IX against individual defendants should be dismissed.

### IV.    Plaintiffs' three Section 1983 claims against Stewart, Monaco, and Marchand in "official capacities" must be dismissed.

Section 1983 does not abrogate a state's sovereign immunity from suit in federal court.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Hanna v. LeBlanc*, 716 Fed. Appx. 265, 268 (5th Cir. 2017).  Each moving defendant, to the extent named in their official capacities as state officials, is not a "person" amenable to suit under Section 1983.  *Will*, 491 U.S. at 71 ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and "[a]s such, it is no different from a

suit against the State itself.").  Because these defendants are not "persons" in their official capacities, plaintiffs' Section 1983 claims against them should be dismissed.

**V.**    **Plaintiffs' Section 1983 claims against Stewart, Monaco, and Marchand in their individual capacities must be dismissed based on qualified immunity.**

To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Qualified immunity is an affirmative defense which may be pleaded by a government employee in response to any Section 1983 claim.  "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *White v. Pauly*, 137 S.Ct. 548, 551, 196 L.Ed. 2d 463 (2017) (quoting *Mullenix v. Luna*, 136 S.Ct. 308, 308, 193 L.Ed. 255 (2015)).  It "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who ***knowingly violate the law***."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  [Emphasis added.]  Courts will not deny immunity unless "existing precedent … placed the statutory or constitutional question beyond debate."  *Id.*; *Whitley*, 726 F.3d at 638 (quoting *Ashcroft*).  A plaintiff seeking to overcome qualified immunity bears the burden to show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Id.*  "Clearly established law" must be "particularized to the facts of a case."  *Samples v. Vadzemnieks*, 900 F.3d 655, 662 (5th Cir. 2018).  While this does not require a prior case "directly on point," "precedent must

still put the underlying question beyond debate." *Id.* (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)).

    a.  <u>Count VI – "First Amendment Retaliation"</u>

Plaintiffs allege that they exercised their constitutionally protected right to freedom of speech by reporting sexual misconduct to LSU employees and by criticizing LSU's handling of their complaints.[36]  They then allege that these defendants "attempt[ed] to regulate the content of Plaintiffs' speech" by failing to properly investigate reports or by making various statements—none of which are attributed anywhere in the shotgun complaint to Monaco, Marchand, or Stewart.

These three defendants are each entitled to qualified immunity dismissing Plaintiffs' First Amendment claim under the second prong of the qualified immunity analysis because there is no clearly established case law to put any reasonable state official on notice that failing to properly investigate a Title IX report would be a violation of a student's First Amendment rights.  This issue is *res nova* within the Fifth Circuit.

    b.  <u>Count VII – Denial of Equal Protection</u>

Plaintiffs allege that Stewart, Monaco, Marchand, and all other defendants "discriminated against Plaintiffs on the basis of sex by subjecting them to a hostile environment and failing to appropriately respond to and investigate reports of sexual misconduct and other violations detailed previously in [the] Complaint."[37]

To state a claim of discrimination under the Fourteenth Amendment, a plaintiff must allege that (1) she received treatment different from that received by similarly situated

---

[36] Id., ¶ 426.
[37] Id., ¶ 436.

individuals and (2) the unequal treatment stemmed from a discriminatory intent. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (alleging discrimination based on race).  To establish the necessary discriminatory intent, a plaintiff must show "that the decision maker singled out a particular group for disparate treatment and selected his [or her] course of action at least in part for the purpose of causing its adverse effect on an identifiable group."  *Id.* (citing *Prister v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)).  Allegations of discriminatory intent that are merely conclusory will not suffice to overcome a motion to dismiss.  *Id.*

Plaintiffs do not allege that they were treated differently than similarly situated male students who were assaulted or pursued Title IX complaints.  Nor are any specific facts pled which make discriminatory intent by Stewart, Monaco, or Marchand plausible.  Monaco and Marchand are alleged to have done nothing to any of the plaintiffs; they received no treatment from these defendants.  Stewart is a woman.  These defendants are entitled to qualified immunity under the first prong of the qualified immunity analysis.

c.  Count VIII – Denial of Procedural Due Process

To establish a procedural due process claim under the Fourteenth Amendment, a plaintiff must show that (1) she was deprived of a life, liberty, or property interest protected by the Fourteenth Amendment and (2) the administrative procedures attendant to the deprivation did not satisfy the constitutional requirements of procedural due process.  *Wheelahan v. City of New Orleans,* No. 19-11720, 2020 U.S. Dist. LEXIS 54571, at pp. 42-43 (E.D. La. 3/30/20) (citing *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994)).

No plaintiff has alleged deprivation of any life, liberty, or property interest contemplated by the Fourteenth Amendment.  The plaintiffs generally allege that they were

deprived of "their liberty and property interest in accessing educational opportunities or benefits."[38]    But "most case law involving due process in the educational setting concerns student dismissals or suspensions from academic institutions."  *Smith v. Davis*, 507 Fed. Appx. 359, 362. (5th Cir. 2013).  None of the plaintiffs in the instant case were permanently dismissed or suspended from school.[39]  There is no clearly established case law which would have placed any state education official on notice that anything short of formal discipline could be a violation of procedural due process.

Stewart, Monaco, and Marchand are entitled to qualified immunity and dismissal of plaintiffs' due process claims under both prongs of the qualified immunity analysis.

**VI.    Count IX, "Conspiracy to Deny Civil Rights," must be dismissed as there are no allegations regarding a conspiracy involving Stewart, Monaco, or Marchand, and as noted above there are no viable claims for violation of equal process rights.**

A plaintiff must show four elements to establish a cause of action for conspiracy under Section 1985(3): (1) the defendants must conspire; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws; (3) the defendants must act in furtherance of the object of the conspiracy; and (4) some person was (a) injured in his person or property or (b) deprived of having and exercising any right or privilege of a citizen of the United States.  *McLellan v. Mississippi Power & Light Col.,* 545 F.2d 919, 923 (5th Cir. 1977).  To demonstrate a "conspiracy" for the purposes of a Section 1985(3) claim, plaintiffs must allege facts to establish an actual ***agreement*** between all the various defendants

---

[38] Id, ¶ 446.

[39] One plaintiff, "Jane Doe," alleges that she was expelled from LSU after her attendance and grade suffered, but she alleges further that she appealed her expulsion and returned to LSU in fall 2019.  Id., ¶ 318.  Doe does not allege that Stewart, Monaco, or Marchand were involved in her expulsion or the appeal process.

to come together to deprive the plaintiffs of their right to equal protection.  *See*, e.g., *Barber v. District of Columbia Gov't*, 394 F.Supp.3d 49, 66 (D.D.C. 2019).

None of the three moving defendants are alleged to have reached any agreement between themselves or with others to intentionally violate constitutional rights.  Plaintiffs' claims under Section 1985(3) must be dismissed.

**VII.    All state law claims against the individual defendants (Counts XII, XIII, XIV, XV, XVI, XVII, XIX, and XX) must be dismissed based on Eleventh Amendment immunity because the State of Louisiana is the real, substantial party in interest.**

Plaintiffs allege that Stewart, Monaco, and Marchand were at all relevant times employees of LSU acting within the course and scope of their LSU employment.[40]  The Eleventh Amendment prohibits suit against state officials for violations of state law when "the state is the real, substantial party in interest."  *Hughes v. Savell*, 902 F.2d 376, 377 (5th Cir. 1990) (quoting *Ford Motor Company v. Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945).  The State of Louisiana is the "real party in interest" if a judgment in a case would compel expenditures from the State treasury.  *Id.*   A claim that a state official violated a state law— including Louisiana Civil Code Article 2315, the provision which creates an action for negligence under Louisiana law—is a claim against the state per the Fifth Circuit.  *Id.* (citing *Pennhurst,* 465 U.S. at 121.  As the Supreme Court explained in *Pennhurst*:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

---

[40] Id., ¶ 50.

465 U.S. at 106.  Based upon this reasoning in *Pennhurst*, the Fifth Circuit concluded in *Hughes* that "where litigants accuse state officers of violating state common law when acting in the course and scope of their employment, the Eleventh Amendment prevents the litigant from raising the claim in federal court whether the litigant seeks damages or injunctive relief." *Hughes*, 902 F.2d at 378 (citing *Pennhurst*).  Further, under La. R.S. 13:5108.1(A)(1), the State of Louisiana is required to defend and indemnify any State employee against claims for negligence "when the act that forms the basis of the cause of action took place while the individual was engaged in the performance of the duties of the individual's office, employment with the state, or engaged in the provision of services on behalf of the state or any of its departments." Plaintiffs allege that all acts by Stewart, Monaco, and Marchand were performed within the course and scope of their employment of LSU; therefore, the State of Louisiana would be responsible for paying any award rendered against these defendants for alleged negligence from State treasury funds.

As the Fifth Circuit noted later in *Richardson v. Southern Univ.*, 118 F.3d 450 (5th Cir. 1997), this attempt to state negligence claims against individual State employees in federal court is nothing more than a "creative attempt at repackaging the nature of [their] suit" against LSU itself.  *Id.* at 453 (citing *Hughes*).  Plaintiffs' back door attempt to circumvent immunity by asserting these claims against individual employees, when the State itself is ultimately responsible, is a naked attempt to avoid Eleventh Amendment immunity.  Based on the rationale of *Pennhurst* and *Hughes*, the Court should reject this attempt and dismiss all state law claims against Stewart, Monaco, and Marchand based on Eleventh Amendment immunity,

without prejudice to plaintiffs' rights to assert these claims in a Louisiana state court should they so choose.

Alternatively, if the Court declines to dismiss the state law claims against these defendants based on Eleventh Amendment immunity, the merits of each state law claim will be addressed in the remainder of this memorandum.

### VIII. Count XII, "Negligence," must be dismissed due to the discretionary immunity afforded to these defendants.

La. R.S. 9:2798.1 provides public officials with immunity from tort liability "based upon the exercise of performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."

All actions by Stewart, Monaco, and Marchand were within the course and scope of their employment with LSU. Their alleged failures in managing aspects of LSU's Title IX compliance program or in disciplining offenders of the Title IX policy are exactly the type of discretionary acts made by government employees that should not subject those employees to personal liability. Plaintiffs may have viable negligence claims against LSU, but it is unnecessary to require any individual defendant to defend these claims. All claims of general negligence by the moving defendants should be dismissed.

### VII. Count XIII, "Negligent Supervision," must be dismissed based upon state law discretionary immunity.

Stewart, Monaco, and Marchand again assert the discretionary immunity provided by La. R.S. 9:2798.1 as an affirmative defense. This immunity applies to claims related to training and supervision of employees. Louisiana courts have adopted a test analogous to the Federal

Tort Claims Act's discretionary function test to determine whether an individual official is provided personal immunity under this statute. *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005).   A court must consider (1) whether a state law, regulation, or policy specifically prescribes the official's course of action, and (2) whether the challenged action is grounded in political, economic, or social policy.  *Id.*

In *Roberts*, 397 F.3d 287, the Fifth Circuit noted that a police chief "had a wide variety of options for training officers under his command" and "no law, regulation, or policy of the State of Louisiana explicitly directed his course of action," thus satisfying the first prong. *Id.* Further, the official's training and supervisory decisions were "grounded in policy considerations" because decisions to train involved considerations of community needs, situations that would be encountered by subordinates, and budgets available for training. *Id.* The court thus held that a failure to train claim fell within the chief's discretionary immunity. Other courts since *Roberts* have determined that training of employees is a discretionary function subject to immunity under state law. *Hoffpauir v. Columbia Cas. Co.*, 2013 U.S. Dist. LEXIS 158026, at *35-36 ("hiring, training, supervising, or screening officers" were discretionary functions of sheriff subject to immunity under Louisiana law); *Aubin v. Columbia Cas. Co.*, 272 F.Supp.3d 828, 833 n.1 (M.D. La. 2017) (citing *Roberts* and *Hoffpauir* to dismiss a state law failure to train claim).   To the extent this count relates to the supervision of employees, training falls squarely within the actions protected by state law immunity.

## VIII. Count XIV, "Negligent Infliction of Emotional Distress," must likewise be dismissed based upon discretionary immunity.

Stewart, Monaco, and Marchand again assert the discretionary immunity provided by La. R.S. 9:2798.1 as an affirmative defense to any claim of negligence.  All acts by the moving

defendants which resulted in any alleged negligent infliction of emotional distress were discretionary acts related to these defendants' roles within the Title IX program at LSU and state law discretionary immunity applies.

IX.    **Count XV, "Intentional Infliction of Emotional Distress," must be dismissed due to plaintiff's failure to state a claim.**

The Louisiana Supreme Court has repeatedly held that, to state a claim of intentional infliction of emotional distress under Louisiana law, a plaintiff must show that (1) the conduct alleged was extreme and outrageous, (2) the emotional distress suffered was severe, and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from her conduct.  *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991); *Nicholas v. Allstate Ins. Co.,* 765 So.2d 1017, 1022 (La. 2000); *LaBove v. Raftery,* 802 So.2d 566, 577 (La. 2001).  *See also Lincoln v. Mendler*, 2018 U.S. Dist. LEXIS 150018, at *7 (E.D. La. Aug. 31, 2018) (citing *White v. Monsanto).*  "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Id.*  "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Id.*  The distress suffered "must be such that no reasonable person could be expected to endure it." *Id.* at 1210.

According to the Fifth Circuit, Louisiana has set "a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that courts require truly outrageous conduct before allowing a claim even to be presented to a jury." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 756-56 (5th Cir. 2001). Regarding the

severity of emotional distress sustained by a plaintiff, the Fifth Circuit has noted that the distress must be "unendurable." *Smith v. Amedisys Inc.,* 298 F.3d 434, 450 (5th Cir. 2002).

Plaintiffs allege no conduct by Stewart, Monaco, or Marchand which even remotely approaches the relevant standard for a claim of intentional infliction of emotional distress.

X.    **Count XVI, "Bad Faith Breach of Contract," must be dismissed because plaintiffs have not alleged any valid contract between themselves and the moving defendants.**

Plaintiffs allege that the LSU's Code of Student Conduct, Title IX Policy, Sexual Harassment Policy, and Equal Opportunity Policy collectively formed a "contract" with various defendants including Stewart, Monaco, and Marchand.  The moving defendants submit that there was no contract to be breached and to which they were individually parties.

Under Louisiana law, a contract is formed by consent of the parties established through offer and acceptance that may be made orally, in writing, or by action or inaction that is clearly indicative of consent. *Ranson v. Cooper*, 16-29 (La. App. 1 Cir. 9/19/16), 228 So.3d 1254, 1257 (citing La. Civ. Code Art. 1927).  When there is no "meeting of the minds" between the parties, there is no consent and thus no enforceable contract.  *Id.*  Plaintiffs bear the burden of proving that an enforceable contract existed between them and LSU.  *Estate of Mayeux v. Glover*, 08-2031 (La. App. 1 Cir. 1/12/10), 31 So.3d 1090, 1095.

There is no factual support for a claim that Stewart, Monaco, or Marchand had a meeting of the mind with any plaintiff, or that any plaintiff intended to enter into a binding contract with any of the individual defendants.   None of these codes or policies cited by plaintiffs were the "result of negotiations between" any plaintiff and any of these defendants.

Those policies were unilaterally issued by LSU and were subject to unilateral amendment by LSU at any time without the input or consent of any plaintiff or these defendants.

Finding the existence of a "contract" between these defendants and plaintiffs would diverge from current Louisiana jurisprudence. No Louisiana state court or federal court applying Louisiana law has ever recognized a contractual relationship between a university student and a *public* university. *See*, e.g., *Dung Quoc Pham v. Univ. of La. At Monroe*, 2016 WL 10674046, at *2 (W.D. La. Apr. 8, 2016) ("It is unclear whether Louisiana recognized a contractual relationship between a student and public university"). Courts have found contractual relationships between students and *private* universities—see *Guidry v. Our Lady of the Lake Nurse Anesthesia Program*, 14-461 (La. App. 1 Cir. 1/29/15), 170 So.3d 209, 213—but there is no corollary for public universities such as LSU. The reasoning for this is clear: public university students, unlike students at private universities, are afforded certain protections against arbitrary and capricious acts of a public institution through federal and state constitutional due process principles, whereas there is no such recourse for students attending a private university. Courts have described the relationship between private universities and their students as "contractual in nature."[41]

---

[41] *See Southwell v. Univ. of Incarnate Word*, 971 S.W.2d 351, 356 (Tex. App. – San Antonio 1998) ("[A] contractual relationship need not necessarily be logically inferred to exist between a student and a public school because education at such institutions is a benefit endowed by the State. However, 'the relationship between a private school and its student has by definition primarily a contractual basis.' If such were not the case, neither the school nor the student would have a remedy at a private institution in situations in which non-performance caused damage. Accordingly, where a private college or university impliedly agrees to provide educational opportunity and confer the appropriate degree in consideration for a student's agreement to successfully complete degree requirements, abide by university guidelines, and pay tuition, a contract exists.")

In the absence of any contract—particularly one to which Stewart, Monaco, or Marchand are parties as individuals—there can be no breach of contract. This claim must be dismissed.

**XI.      Count XVII, "Civil Conspiracy," must be dismissed.**

It is well-established that an independent cause of action for civil conspiracy does not exist under Louisiana law. *Able Sec. and Patrol, LLC v. State of Louisiana,* 569 F.Supp.2d 617 (E.D. La. 2008); *Hardy v. Easterling,* 113 So.3d 1178, 1184 (La. App. 2 Cir. 2013). As stated previously, there are no specific facts alleged which would establish the existence of any conspiracy.

**XII.     Count XIX, "Civil Violations of the Louisiana Racketeering Act," must be dismissed.**

Plaintiffs' Louisiana Racketeering Act Case Statement ("LRA Case Statement") and Amended Class Action Complaint are devoid of facts that would entitle them to relief from these defendants under the Louisiana Racketeering Act ("LRA"). Plaintiffs fail to allege sufficient facts that Stewart, Monaco, or Marchand committed predicate acts, thus failing to plead that these defendants engaged in a "pattern of racketeering activity," as required to state a claim for relief under the LRA. *See* La. R.S. 15:1353. Rather, plaintiffs' claims are based on conduct that does not qualify as a "prohibited act" under the LRA. Further, plaintiffs fail to show how their alleged injuries have directly resulted from defendants' alleged racketeering and thus fail to establish that they have standing. Accordingly, plaintiffs have failed to state a claim upon which relief can be granted, and their LRA claim should be dismissed as a matter of law.

To withstand a motion to dismiss, a plaintiff must allege facts sufficient to establish the essential elements of his or her racketeering claim. *Price v. Pinnacle Brands, Inc.,* 138 F.3d 602, 606 (5th Cir. 1998). A plaintiff must allege specific facts concerning (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Elliot v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989). *See also Robinson v. Standard Mortgage Corp.,* 191 F.Supp.3d 630, 638 (E.D.La. 2016) (Vance, J.); *Castrillo v. American Home Mortgage Servicing, Inc.,* 670 F.Supp.2d 516, 530 (E.D.La. 2009) (Vance, J.); *Scottsdale Insurance Co. v. Dorman,* 153 F.Supp.2d 852, 856 (E.D. La. 2001) (Clement, J.).

### A. Plaintiffs Fail to Allege Facts to Establish that Defendants Committed Predicate Acts Under the LRA.

"Racketeering activity" is defined in 18 U.S.C. § 1961(1) in terms of a list of state and federal crimes, which are described as "predicate acts." The predicate acts that may form the basis for such "racketeering activity" in an LRA claim are specifically enumerated in the LRA statute. *See* La. R.S. 15:1352(A)(1)-(65). Plaintiffs allege that Stewart, Monaco, and Marchand committed the following predicate acts: (1) Public Intimidation (La. R.S. 14:122); (2) Intimidating Witnesses (La. R.S. 14:129.1); (3) Injuring Public Records (La. R.S. 14:132); (4) Maintaining False Public Records (La. R.S. 14:133); (5) Money Laundering (La. R.S. 14:230); and (6) Corrupt Influencing (La. R.S. 14:120).[42] However, plaintiffs have listed only conclusory allegations as the basis for each of these predicate acts, failing to allege facts that establish illegal conduct attributable to these defendants.

---

[42] LRA Case Statement, R.Doc. 103, p. 40.

1. *Public Intimidation (La. R.S. 14:122):*

Plaintiffs list Stewart, Monaco, and Marchand as "Participants" in this predicate act.[43] However, an allegation of "attempts to incentivize public employees to retaliate,"[44] even if true, is clearly not a use of "extortionate threats" or "true threats." *See* La. R.S. 14:122(C)(1). There is not a single allegation in the Amended Class Action Complaint or in the LRA Case Statement that Stewart, Monaco, or Marchand made any statements that constitute a threat. Not one factual allegation is offered to support these conclusory statements—statements which, even if true, obviously do not violate the statute.

2. *Intimidating Witnesses (La. R.S. 14:129.1)*

Plaintiffs list Stewart, Monaco, and Marchand as "Participants" in this predicate act.[45] However, none of the allegations listed in the LRA Case Statement under this act,[46] nor any of the allegations in the Amended Class Complaint, indicate that the defendants made a "threat of force" or committed an act of "force" to intimidate or impede any of the plaintiffs. Nor do any of these allegations constitute an "attempt to intimidate or impede, by threat of force or force." *See* La. R.S. 14:129.1.  None of the allegations pleaded thus far indicate that Stewart, Monaco, and Marchand used force, or the threat of force, to injure a witness. Thus, even accepting the allegations as true, they would not amount to a violation of La. R.S. 14:129.1.

---

[43] Id.
[44] Id., p. 41.
[45] Id., p. 42.
[46] Id., pp. 43, 47.

### 3. Injuring Public Records (La. R.S. 14:132)

Plaintiffs list Stewart, Monaco, and Marchand as "Participants" under this predicate act.[47] However, none of the alleged facts even mention Monaco or Marchand, with the exception of this conclusory statement: "Higher-ranking members of the Enterprise (TAF, Board Alexander, Alleva, Ausberry, Segar, Orgeron/Finch, Marchand, Stewart, Fuentes-Martin, Monaco, J. Sell, M. Sell) intentionally trained lower-ranking members to keep inadequate records in maintenance of the Enterprise."[48]  La. R.S. 14:132 does not mention intentional training. The statute speaks only to "the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record." *See* La. R.S. 14:132. Thus, none of the facts alleged under this predicate act indicate that Marchand or Monaco committed this crime.

Plaintiffs allege "Unidentified persons under the control of Defendant Stewart in the Title IX Office" concealed notes or other written evidence of Plaintiff Doe's reports of Sexual Misconduct.[49]  But this allegation is not against Stewart; rather, it is an allegation of criminal conduct by some unidentified person in the Title IX Office. Plaintiffs have not alleged that Stewart herself destroyed any records or intentionally falsified records. It is facially apparent that these claims do not constitute a violation of La. R.S. 14:132.

### 4. Maintaining False Public Records (La. R.S. 14:133)

Plaintiffs list Stewart, Monaco, and Marchand as "Participants" under this predicate act.[50] However, the allegations listed by plaintiffs under this predicate act against Marchand

---

[47] Id., p. 47.
[48] Id., p. 48.
[49] Id., p. 49.
[50] Id., p. 50.

and Stewart[51] do not claim any "knowledge of falsity" as is required by La. R.S. 14:133. Plaintiffs

go on to provide a list of examples of these "false records" but fail to provide any facts thus far

that indicate that Stewart had knowledge of their falsity. Furthermore, a paragraph in the

Amended Class Action Complaint states that Marchand's role as Title IX Coordinator ended in

2015.[52] Only two named plaintiffs, Richardson and Kitch, allege incidents of sexual harassment

which occurred during the time that Marchand was Title IX coordinator, but neither reported

the misconduct during that time.[53]   No other plaintiff alleges any incident or report of sexual

misconduct which occurred while Marchand was Title IX coordinator.[54]   Because Marchand was

not serving as Title IX Coordinator when any plaintiff submitted a report, he was under no

obligation to keep records of non-existent reports, nor did he handle or document facts in non-

existent reports.

Also under this predicate act, plaintiffs allege that Defendant Monaco "knowingly

maintained various human resource documents that he knew contained either false

information or material misrepresentations of fact," including investigation reports stating that

Les Miles did not violate Title IX.[55] Plaintiffs have not provided a single fact in the LRA Case

Statement or the Amended Class Action Complaint to support this conclusory allegation. Nor is

this allegation even relevant to a single plaintiff's claims, as no plaintiff has alleged any

misconduct directed at them by Les Miles nor any direct injury resulting from this alleged act by

Monaco.

---

[51] Id., pp. 51-52.
[52] R.Doc. 22, ¶ 46.
[53] Id., ¶¶ 110, 111, 115, 340-42, 349.
[54] Id., ¶¶ 120, 156-59, 177, 193-95, 209. 244, 285, 302, 322.
[55] R.Doc. 103, p. 51.

5.  *Money Laundering (La. R.S. 14:230)*

Plaintiffs list Stewart, Monaco, and Marchand as "Participants" in this predicate act and allege that the "Participants" of the Enterprise "knowingly possessed proceeds derived from the Enterprise."[56] However, plaintiffs have offered no facts in the LRA Case Statement or in the Amended Class Action Complaint to support this conclusory allegation. Plaintiffs allege that "Marchand, Monaco, Stewart, and Fuentes-Martin consistently provided their respective Authority and Control of LSU employees to the Enterprise for the furtherance of the Enterprise."[57] This is the only other allegation made against these three defendants under the predicate act of Money Laundering; however, it does not amount to money laundering because it does not meet any of the six statutory definitions. *See* La. R.S. 14:230(B). Plaintiffs do not provide any facts that could plausibly show that defendants committed the act of Money Laundering.

6.  *Corrupt Influencing (La. R.S. 14:120)*

Plaintiffs list Stewart, Marchand, and Monaco as "Participants" under this predicate act but offer no factual allegations in the LRA Case Statement or the Amended Class Action Complaint that supports their conclusory statements regarding this predicate act.[58] Plaintiffs do not provide a single fact indicating that any of these three defendants have given, offered, or accepted "anything of apparent present or prospective value." *See* La. R.S. 14:120.

Plaintiffs have failed to sufficiently plead any violation of state criminal law that could constitute racketeering activity under the LRA and serve as a predicate offense for a Louisiana

---

[56] Id., p. 53.
[57] Id., p. 55.
[58] Id., p. 56.

RICO violation. Because plaintiffs fail to sufficiently plead any predicate acts, their LRA claim fails as a matter of law and should be dismissed.

B.    Plaintiffs Fail to Plead a "Conspiracy" to Violate the LRA.

Plaintiffs similarly fail to sufficiently plead the existence of any agreement to violate the Louisiana Racketeering Act. To prevail on a racketeering conspiracy claim, plaintiffs must demonstrate "(1) that two or more people agreed to commit a substantive [racketeering] offense and (2) that [the defendants] knew of and agreed to the overall objective of the [racketeering] offense." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015); *see Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010). Further, "because the core of a [racketeering] civil conspiracy is an agreement to commit predicate acts, a [racketeering] civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Crowe v. Henry,* 43 F.3d 198 (5th Cir. 1985) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F2d. 1134, 1140 (5th Cir. 1992)).

Plaintiffs have not provided any factual allegations plausibly suggesting that such an agreement was made by Stewart, Monaco, or Marchand.  The LRA claims must be dismissed.

C.    Plaintiffs Fail to Allege Injury and Lack Standing for their LRA claims.

Plaintiffs have similarly failed to meet the requisite showing of injury caused by any predicate acts.

There is very little Louisiana jurisprudence regarding the LRA.  However, because the LRA was modeled on federal RICO legislation, and because of the parallels between RICO and the LRA, state and federal courts interpreting the LRA have held that federal RICO jurisprudence is persuasive.  *See State v. Touchet*, 99-1416 (La. App. 3 Cir 04/05/00), 759 So. 2d 194; *Cox, Cox,*

*Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc.*, No. 2:11-CV-00856, 2013 U.S. Dist. LEXIS 120297 (W.D. La. Aug. 21, 2013*); Zilbert v. Sasol N. Am., Inc.*, No. 2:11 CV 00862, 2012 U.S. Dist. LEXIS 74920 (W.D. La. May 25, 2012).  Those courts have applied the federal RICO standing element to LRA claims.  *Id.*

Standing generally is a threshold consideration for any Court before moving on to the merits. However, RICO/LRA standing is unique in that a civil plaintiff has standing to assert a civil cause of action only if a violation of the statute proximately caused his injuries.  *See In re MasterCard Int'l Inc., Internet Gambling Litig.*, 132 F.Supp. 2d at 495; *Jackson v. Nat'l Ass'n for Advancement of Colored People*, 546 F.App'x 438, 442 (5th Cir. 2013) (citing *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998)). A plaintiff must satisfy two elements to establish standing: injury and causation.  *Jackson*, 546 F.App'x at 442.  A cognizable RICO/LRA injury must be to business or property. "Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing."  *Morrell v. Alfortish*, No. 10-924, 2010 WL 4668429, at *5 (E.D. La. Nov. 9, 2010) (Fallon, J.) (quoting *Price*, 138 F.3d at 607).

To establish standing, a plaintiff must plead more than "speculative damages" that "would not simply entail a calculation of present, actual damages."  *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995). For purposes of causation, a plaintiff has a right of action only if the plaintiff can show that he has been injured "by reason of" a racketeering violation.  *See Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016), *cert. denied*, 138 S.Ct. 76, 199 L.Ed. 2d 24 (2017) (citing 18 U.S.C. § 1964(c)). The United States Supreme Court has established that plaintiffs must demonstrate both "but-for" causation and proximate cause to show that they have been injured "by reason of" a racketeering violation.  *Id.*  To establish

proximate cause, there must be "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* "When a court evaluates a [racketeering] claim for proximate cause, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id.*

Plaintiffs have not alleged conduct by defendants that would rise to the level of a Louisiana Racketeering Act violation. At best, they have alleged what amounts to indirect injury, which is legally insufficient. Even if the alleged predicate acts were true, there is no indication that plaintiffs' injuries were directly caused by defendants' conduct. A simple "but-for" analysis easily shows that plaintiffs have not sustained direct injury arising from the purported predicate acts of Stewart, Monaco, and Marchand. For example, to allege direct injury, plaintiffs would have to allege facts indicating that if Stewart had not concealed "witness accounts of John Roe's abuse of Plaintiff Andries" (as alleged under the predicate act of Injuring Public Records), Andries would not have sustained injury to her business or property.[59] Such an analysis is impossible because plaintiffs do not plead any facts that would lead to this conclusion. The number of steps and assumptions one would have to pursue to find causation between defendants' alleged predicate acts and plaintiffs' claimed injuries evidences a relationship that is so indirect that standing cannot be reasonably conferred. Finally, even if plaintiffs had sufficiently alleged that such acts or omissions "directly" injured them, not "every injury is compensable [under RICO as] 'RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff.'" *Fuller v. Harrah's Entm't,*

---

[59] Id., p. 49.

*Inc.*, No. CIV.A. 04-2108, 2004 WL 2452771, at *2 (E.D. La. Oct. 29, 2004) (quoting *Oscar v. Univ.*

*Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992)).

Even if plaintiffs were able show that their injuries resulted directly from defendants'

predicate acts, they have not sufficiently alleged injury to business or property. The Eastern

District and Fifth Circuit have both held that there is no recovery under racketeering laws for

personal injuries. *Morell,* 2010 WL 4668429, at *5; *see also Labat v. Williams*, No. 08-4041,

2010 U.S. Dist. LEXIS 83260 (E.D. La. July 8, 2010) (quoting *Price*, 138 F.3d at 607)

("Furthermore, **since there is no recovery under RICO for personal injuries**, a plaintiff does not

have standing to sue under 18 U.S.C. § 1964(c) based on such injuries").   [Emphasis added.]

Under point #4 in plaintiffs' LRA Case Statement (titled "List the alleged victims and state how

each victim allegedly was injured"), each plaintiff alleges personal injury consisting of "severe

emotional and physical distress."[60]   This is clearly not an injury to business or property.

Plaintiffs also allege economic damages in the form of "healthcare related expenses" incurred

due to their emotional and physical distress, which is similarly unrecoverable under RICO and

by extension the LRA.[61]  *See Taitz v. Democrat Party of Miss.*, No. 3:12-cv-280-HTW-LRA, 2015

U.S. Dist. LEXIS 178819 (S.D. Miss. Mar. 31, 2015) ('Injury under civil RICO is defined as harm to

"business or property;" thus, personal injuries such as medical expenses, emotional distress, or

injuries related to defamation are not cognizable under RICO.') (citing *Gaines v. Tex. Tech Univ*.,

965 F.Supp. 886 (N.D. Tex. 1997) and *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326,

60 L.Ed.2d 931 (1979)). *See also Genty v. RTC*, 937 F.2d 899, 918 (3rd Cir. 1991).

---

[60] Id., pp. 36-39.
[61] Id., pp. 37-38.

### XIII.    Count XX, "Enrichment Without Cause," must be dismissed.

Louisiana Civil Code Article 2298 provides that a person who has been enriched without cause at the expense of another person is bound to compensate that person.  This remedy is subsidiary and shall not be available if the law provides another remedy for the impoverishment.  La. C.C. Art. 2298; *see also Walters v. Medsouth Record Mgmt*., LLC, 10-0351 (La. 06/04/10), 38 So. 3d 243)).  If plaintiffs allege that these defendants and others violated their rights under Title IX, plaintiffs may pursue their Title IX claims against LSU.  But where plaintiffs have literally asserted eighteen other counts for relief against even more defendants, they cannot recover under any theory of unjust enrichment.

### CONCLUSION

Following the public release of the Husch Blackwell report on March 3, 2021, plaintiffs rushed to the courthouse less than two months later with little if any due diligence done regarding the merits of claims against any individual defendants.  Plaintiffs could have filed a coherent lawsuit pursuing Title IX claims and related claims against LSU.  Instead, they chose to file egregious and convoluted shotgun pleadings, firing away indiscriminately into a crowd of individual defendants whose names appeared in a report to hit at least one.  The result is an unwieldly complaint which, if allowed to proceed, would result in an unmanageable litigation.

This shotgun approach to litigation must be rejected.  Defendants Jennie Stewart, A.G. Monaco, and James Marchand pray for dismissal of all claims asserted against them, either with prejudice pursuant to F.R.C.P. 12(b)(6) or without prejudice pursuant to F.R.C.P. 12(b)(1) (to the extent any claims are based on Eleventh Amendment immunity).

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

By:  */s/ Gregory C. Fahrenholt*
**DENNIS J. PHAYER (La. Bar No. 10408)**
**GREGORY C. FAHRENHOLT (La. Bar No. 28572)**
**SYLVIA M. ZARZEKA (La Bar No. 38451)**
**Special Assistant Attorneys General**
**BURGLASS & TANKERSLEY, LLC**
5213 Airline Drive
Metairie, LA 70001
Tel: (504) 836-0412
Fax: (504) 287-0452
dphayer@burglass.com
gfahrenholt@burglass.com
szarzeka@burglass.com
***Attorneys for Defendants, Jennie Stewart, A.G.***
***Monaco, and James Marchand***