UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                    CIVIL ACTION NO.:  3:21-cv-00242

             Plaintiffs,          SECTION

VERSUS                                JUDGE VITTER

LOUISIANA STATE UNIVERSITY, et al.    MAGISTRATE JUDGE JOHNSON

             Defendants.          **ORAL ARGUMENT REQUESTED**

**DEFENDANT TIGER ATHLETIC FOUNDATION'S**
**<u>MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS</u>**

Judy Y. Barrasso, 02814
Laurence D. LeSueur, 35206
Chloé M. Chetta, 37070
Lance W. Waters, 37351
Barrasso Usdin Kupperman
 Freeman & Sarver, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701
jbarrasso@barrassousdin.com
llesueur@barrassousdin.com
cchetta@barrassousdin.com
lwaters@barrassousdin.com

*Counsel for Tiger Athletic Foundation*

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................i-ii

TABLE OF AUTHORITIES .....................................................................................iii-ix

BACKGROUND ............................................................................................................1

STANDARD OF REVIEW ............................................................................................3

LAW AND ARGUMENT ..............................................................................................4

    I.      TAF is not liable under the Louisiana Racketeering Act because plaintiffs fail to allege actionable "racketeering," a valid "pattern," or causation of cognizable injuries..................................4

           A.      TAF has not engaged in narrowly defined "racketeering activity" ................................................................4

                  1.      Plaintiffs' corrupt influencing claim (La. Stat § 14:120) does not validly or plausibly allege TAF engaged in criminal activity....................................5

                  2.      Plaintiffs' public intimidation claim (La. Stat. § 14:122) fails because economic threats are insufficient, and TAF did not threaten anyone .....................................6

                  3.      Plaintiffs' intimidating witnesses claim (La. Stat. § 14.129.1) fails because they never allege TAF participated in threatening or injuring witnesses ...................................7

                  4.      Plaintiffs' public records claims (La. Stat. §§ 14:132, 133) fail because TAF neither "injured" nor maintained false public records ......................................8

                  5.      Plaintiffs' money laundering claims (La. Stat. § 14:230) fail because plaintiffs do not allege TAF "derived" proceeds from any criminal activity.....................................9

           B.      TAF has not engaged in any actionable "pattern" of racketeering............................................................................10

           C.      Plaintiffs have no cognizable injuries caused "by reason of" violations of § 15:1353(A), (B), or (C) ....................................12

    II.     Plaintiffs' racketeering claims based on predicate acts before April 26, 2016, Sarah Beth Kitch's individual racketeering claim, and various class claims are prescribed ......................................16

    III.    Plaintiffs' civil rights and state-law claims are all untimely, and neither tolling nor continuing tort theories apply..............................................17

IV.    Plaintiffs do not allege any actionable civil rights claims against TAF ................................................................................22

    A.    As a private corporation, TAF cannot be liable as a "state actor" ....................................................................22

    B.    Plaintiffs fail to identify any impermissible conduct by TAF ..................................................................................24

V.    Plaintiffs do not allege any actionable state-law claims against TAF ................................................................................26

    A.    As a separate private corporation, TAF did not owe plaintiffs any duty, or breach any purported duty, to control LSU's responses to sexual misconduct ....................26

    B.    Plaintiffs' infliction-of-emotional distress claims also substantively fail ....................................................28

    C.    Civil conspiracy under Civil Code article 2324 is not a separate cause of action ..........................................29

    D.    Plaintiffs' assertion of other claims precludes any unjust enrichment claim ........................................................29

CONCLUSION ..................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Se. Com. Cleaning, LLC,*
   136 So. 3d 329 (La. App. 5th Cir. 2014) ...................................................................20

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
   526 US. 40 (1999)...........................................................................................22, 23, 24

*Ames v. Ohle,*
   97 So. 3d 386 (La. App. 4th Cir. 2012) ...................................................................16

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) .........................................................................3

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
   459 U.S. 519 (1983)...................................................................................................13

*Barrie v. V.P. Exterminators, Inc.,*
   625 So. 2d 1007 (La. 1993) ......................................................................................26

*Beaudoin v. Hartford Acc. & Indem. Co.,*
   594 So. 2d 1049 (La. App. 3d Cir. 1992) ................................................................28

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)....................................................................................................3

*Bennett v. Gen. Motors Corp.,*
   420 So. 2d 531 (La. App. 2d Cir. 1982) ..................................................................20

*Blum v. Yaretsky,*
   457 U.S. 991 (1982)............................................................................................22, 23

*Branden v. F.H. Paschen, S.N. Nielsen, Inc.,*
   No. 19-2406, 2019 WL 1760694 (E.D. La. Apr. 22, 2019).....................................29

*Brinkmann v. Johnston,*
   793 F.2d 111 (5th Cir. 1986) ...................................................................................23

*Butler v. Denka Performance Elastomer, L.L.C.,*
   No. 20-30365, 2021 WL 4810639 (5th Cir. Oct. 15, 2021) ....................................26

*CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.,*
   No. 19-0745, 2019 WL 2865256 (La. App. 1st Cir.)................................................4

*Cornish v. Corr. Servs. Corp.*,
  402 F.3d 545 (5th Cir. 2005) ....................................................................................23, 24

*Covington v. Howard*,
  146 So. 3d 933 (La. App. 2 Cir. 8/13/14) ..............................................................28

*Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc.*,
  544 F. App'x 455 (5th Cir. 2013) ...........................................................................15

*Crockett v. Cardona*,
  713 So. 2d 802 (La. App. 4th Cir. 1998) ...............................................................28

*Crowe v. Henry*,
  43 F.3d 198 (5th Cir. 1995) ............................................................................14, 25

*Crutcher-Tufts Res., Inc. v. Tufts*,
  38 So. 3d 987 (La. App. 4th Cir. 2010) ..................................................................29

*Culbertson v. Lykos*,
  790 F.3d 608 (5th Cir. 2015) ..................................................................................24

*Davis-Lynch, Inc. v. Moreno*,
  667 F.3d 539 (5th Cir. 2012) ..................................................................................14

*Dhaliwal v. Dhaliwal*,
  184 So. 3d 773 (La. App. 2d Cir. 2015) ..................................................................29

*Dietz v. Dietz*,
  No. 08-0521, 2009 WL 2707402 (W.D. La. Aug. 27, 2009)..................................29

*Doe v. Roe*,
  958 F.2d 763 (7th Cir. 1992) ..................................................................................15

*Duncan v. Wal-Mart La., L.L.C.*,
  863 F.3d 406 (5th Cir. 2017) ..................................................................................26

*Entergy Gulf States La., L.L.C. v. La. Generating, L.L.C.*,
  No. 14-385, 2020 WL 961499 (M.D. La. Feb. 27, 2020)......................................30

*Farmer v. D&O Contractors, Inc.*,
  640 F. App'x 302 (5th Cir. 2016) .........................................................................4, 16

*Faucheaux v. Terrebonne Consol. Gov't*,
  615 So. 2d 289 (La.1993) .........................................................................................26

*Ferrera Fire Apparatus, Inc. v. JLG Indus.*,
  581 F. App'x 440 (5th Cir. 2014) ...........................................................................29

*Garber v. Baden & Ranier*,
    981 So. 2d 92 (La. App. 3 Cir. 2008) ................................................................29

*Grogan v. Platt*,
    835 F.2d 844 (11th Cir. 1988) .........................................................................15

*Gucwa v. Lawley*,
    731 F. App'x 408 (6th Cir. 2018) .....................................................................15

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989).........................................................................................10

*United States ex rel. Hendrickson v. Bank of Am., N.A.*,
    779 F. App'x 250 (5th Cir. 2019) .......................................................................3

*Holmes v. Sec. Investor Protection Corp.*,
    503 U.S. 258 (1992).........................................................................................13

*Hughes v. Tobacco Inst., Inc.*,
    278 F.3d 417 (5th Cir. 2001) ...........................................................................15

*Ingram v. Freeman*,
    326 So. 2d 565 (La. App. 3d Cir. 1976) ...........................................................29

*Insulation Techs., Inc. v. Indus. Labor & Equip. Servs., Inc.*,
    122 So. 3d 1146 (La. App. 4th Cir. 2013) ........................................................30

*United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*,
    816 F. App'x 892 (5th Cir. 2020) .......................................................................3

*Jackson v. City of Hearne, Tex.*,
    959 F.3d 194 (5th Cir. 2020) .............................................................23, 24, 25

*Jefferson v. Lead Indus. Ass'n*,
    106 F.3d 1245 (5th Cir. 1997) .........................................................................29

*Joseph v. Bach & Wasserman, L.L.C.*,
    487 F. App'x 173 (5th Cir. 2012).....................................................................16

*Keenan v. Donaldson, Lufkin & Jenrette, Inc.*,
    575 F.3d 483 (5th Cir. 2009) ...........................................................................20

*Khoobehi Props., L.L.C. v. Baronne Dev. No. 2, L.L.C.*,
    288 So. 3d 224 (La. App. 5th Cir. 2019) ..........................................................29

*King v. Phelps Dunbar, L.L.P.*,
    743 So. 2d 181 (La. 1999) ...............................................................................28

*Louisiana v. Guidry*,
    489 F.3d 692 (5th Cir. 2007) ................................................................29

*Lynch v. Cannatella*,
    810 F.2d 1363 (5th Cir. 1987) ............................................................23

*Malvino v. Delluniversita*,
    840 F.3d 223 (5th Cir. 2016) ..............................................................10

*Marin v. Exxon Mobil Corp.*,
    48 So. 3d 234 (La. 2010) .............................................................20, 21

*McKay v. State ex rel. Div. of Admin.*,
    143 So. 3d 510 (La. App. 1st Cir. 2014)..............................................12

*Molina-Aranda v. Black Magic Enters, L.L.C.*,
    983 F.3d 779 (5th Cir. 2020) ...........................................................3, 13

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
    781 F.3d 182 (5th Cir. 2015) ...........................................................12, 14

*Nicholas v. Allstate Ins. Co.*,
    765 So. 2d 1017 (La. 2000) ................................................................28

*Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*,
    577 F.3d 264 (5th Cir. 2009) ..............................................................25

*Price v. Pinnacle Brands, Inc.*,
    138 F. 3d 602 (5th Cir. 1998) ...............................................................4

*Quadvest, L.P. v. San Jacinto River Auth.*,
    7 F.4th 337 (5th Cir. 2021) ....................................................................2

*United States ex rel. Rafizadeh v. Cont'l Common, Inc.*,
    553 F.3d 869 (5th Cir. 2008) .................................................................3

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979)............................................................................15

*Richard v. Wal-Mart Stores, Inc.*,
    559 F.3d 341 (5th Cir. 2009) ..............................................................17

*Rigney v. Dep't of Police*,
    10 So. 3d 861 (La. App. 4th Cir. 2009) .................................................8

*Schott, Tr. for Estate of InforMD, LLC v. Massengale*,
    No. 18-759-JWD-RLB, 2019 WL 4738795 (M.D. La. Sept. 27, 2019)...............................29

*Seals v. McBee,*
    898 F.3d 587 (5th Cir. 2018) ............................................................6

*Sedima, S.P.R.L. v. Imrex Co.,*
    473 U.S. 479 (1985)................................................................11, 14

*St. Paul Mercury Ins. Co. v. Williamson,*
    224 F.3d 425 (5th Cir. 2000) ............................................................4

*State v. Fraley,*
    512 So. 2d 856 (La. 1987) ...............................................................8

*State v. Nine Sav. Accts.,*
    553 So. 2d 823 (La. 1989) ...............................................................4

*Stokeling v. United States,*
    139 S. Ct. 544 (2019).....................................................................7

*Swindol v. Aurora Flight Sciences Corp.,*
    805 F.3d 516 (5th Cir. 2015) .....................................................10, 27

*In re Taxotere (Docetaxel) Prods. Liab. Litig.,*
    995 F.3d 384 (5th Cir. 2021) .................................................19, 20, 21

*Terrebone Par. Sch. Bd. v. Columbia Gulf Transmission Co.,*
    290 F.3d 303 (5th Cir. 2002) ..........................................................20

*Terrel v. Perkins,*
    704 So. 2d 35 (La. App. 1st Cir. 1997)...............................................20

*Toress v. S.G.E. Mgmt., L.L.C.,*
    838 F. 3d 629 (5th Cir. 2016) .........................................................13

*Viking Constr. Grp., LLC v. Satterfield & Pontikes Constr. Grp. Inc.,*
    No. CV 17-12838, 2018 WL 401182 (E.D. La. Jan. 12 2018)...................14, 15, 16

*Walker v. Beaumont Indep. Sch. Dist.,*
    938 F.3d 724 (5th Cir. 2019) ............................................................2

*Wallace v. Kato,*
    549 U.S. 384 (2007) .....................................................................17

*Walters v. MedSouth Record Mgmt., LLC,*
    38 So. 3d 241 (La. 2010) ...............................................................30

*Whitaker v. Collier,*
    862 F.3d 490 (5th Cir. 2017) ............................................................3

*White v. Monsanto*,
   585 So. 2d 1205 (La. 1991) ...................................................................28

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
   90 F.3d 118 (5th Cir. 1996) ...................................................................10

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*,
   No. 15-4790, 2017 WL 4517287 (E.D. La. Oct. 10, 2017) ....................21

*Young v. United States*,
   727 F.3d 444 (5th Cir. 2013) .................................................................21

**Statutes & Rules**

18 U.S.C. §1964 ...............................................................................12, 15

20 U.S.C. § 1681 .............................................................................25, 26

29 U.S.C. § 794 .......................................................................................27

42 U.S.C. § 1983 .......................................................................17, 22, 23

42 U.S.C. § 12132 ..................................................................................27

17 La. Civ. Law Treatise, §10:214 ...........................................................8

Fed. Rule Civ. P. 8 ........................................................................3, 23, 30

Fed. Rule Civ. P. 9 ....................................................................................2

Fed. Rule Civ. P. 12 ............................................................................3, 15

La. Civ. Code art. 2298 ...........................................................................29

La. Civ. Code art. 2324 ...........................................................................29

La. Civ. Code art. 3492 ...........................................................................17

La. Stat § 14:120 ......................................................................................5

La. Stat. § 14:122 .....................................................................................6

La. Stat § 14:129 ......................................................................................7

La. Stat. § 14:132 .....................................................................................7

La. Stat. § 14:133 .....................................................................................8

La. Stat. § 14:230 .....................................................................................9

La. Stat. § 15:1352 ...............................................................................................4, 10

La. Stat. § 15:1353 ........................................................................................4, 12, 13, 14

La. Stat. § 15:1356 ..............................................................................................12, 16

La. Stat § 17:3390 .........................................................................................1, 8, 22, 27

La. Stat § 42:1101 ......................................................................................................5

La. Stat. § 42:1111 .....................................................................................................5

La. Stat. § 44:4 ...........................................................................................................8

**Other Authorities**

Department's Final Title IX Rule at 5 (Sept. 4, 2020),
    https://www2.ed.gov/about/offices/list/ocr/docs/qa-titleix-20200904.pdf (last
    visited Nov. 7, 2021)........................................................................................27

**BACKGROUND**

In this Title IX suit, plaintiffs are ten former LSU students who experienced sexual assault or harassment that LSU allegedly failed to meaningfully investigate or discipline. Plaintiffs have now filed two complaints full of legal conclusions and impermissible group pleading and have continued to press both legally and factually deficient theories of liability in their court-ordered racketeering statement.

Tiger Athletic Foundation (TAF) is not an educational institution like LSU with Title IX responsibilities. TAF is a legislatively favored private, nonprofit fundraising corporation that "enhances the programs, facilities, and research and educational opportunities" through private donations.[1] Louisiana law prohibits TAF from being deemed a state, public, or quasi-public actor "for any purpose."[2] No plaintiff alleges that TAF discriminated against her. Nor does any plaintiff allege reporting her mistreatment to anyone at TAF or that anyone at TAF ever knew about it.[3]

Husch Blackwell LLP comprehensively investigated how LSU handles "Title IX-related incidents."[4] After months of interviewing employees and students and reviewing university documents, Husch Blackwell concluded its investigation with a 262-page report.[5] Plaintiffs base their lawsuit on this report, going so far as to contend that they didn't know anything about their

---

[1]      La. Stat. § 17:3390(A).

[2]      La. Stat § 17:3390(B).

[3]      *See generally* R. Doc. 22 at ¶¶ 110–352 (failing to identify TAF in the "individual factual allegations"). In particular, Andries, Doe, Hovis, and Kitch allege mistreatment having nothing to do with a student-athlete or athletic department employee, and thus nothing at all to do with TAF.

[4]      R. Doc. 22-1 at 3.

[5]      *Id.* at 3–-5, 139.

claims (which depend on their personal experiences) until the report was published in 2021.[6] In

the United States Fifth Circuit Court of Appeals, when an exhibit attached to a plaintiff's complaint

contradicts the complaint's allegations, "the exhibit and not the allegation controls."[7] Thus, as least

as to TAF, the Husch Blackwell report controls here.

Husch Blackwell's report mentions TAF only once. In 2016, TAF paid an outside

consultant to "conduct an Independent Assessment of human relations risks, including misconduct

prevention policies and programs" at LSU.[8] Husch Blackwell noted that this assessment was

"replete with solid recommendations" that LSU—not TAF—declined to implement and that Husch

Blackwell still urged LSU—not TAF—to consider.[9] Plaintiffs' foundational theory of liability

(that TAF financially encouraged LSU to favor student-athletes in the Title IX process) is directly

undermined by Husch Blackwell's report:

> [T]he suggestion that LSU student athletes in the Title IX process
> are getting special treatment is *simply not supported* . . . . There is
> also *no evidence* that anyone in a leadership position within the
> University has put *any sort of pressure* on the Title IX Office or
> otherwise to reach conclusions favorable to prominent student
> athletes.[10]

With these findings, plaintiffs conjured up baseless criminal racketeering, civil rights, and other

unsupported accusations against TAF. Plaintiffs' claims against TAF must be dismissed.

---

[6]    *E.g.*, R. Doc. 22 at ¶ 154. Because plaintiffs' complaint attaches and incorporates this report, "the court may . . . properly consider those documents" in resolving this motion to dismiss. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

[7]    *Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021).

[8]    R. Doc. 22-1 at 39.

[9]    *Id.*

[10]   *Id.* at 144–45.

## STANDARD OF REVIEW

In a racketeering case founded on fraud-based predicate acts, a plaintiff must abide by Rule 9(b)'s heightened pleading requirement of particularity.[11] The plaintiff must specify "the 'who, what, when, where, and how of the alleged fraud.'"[12] Any "fail[ure] to distinguish among defendants or present necessary details" warrants dismissal.[13] In addition, the United States Supreme Court and Fifth Circuit are clear that, between allegations of "purposeful, invidious" conduct and an "obvious alternative explanation," courts must reject the former as implausible and dismiss the associated claim under Rule 12(b)(6).[14]

The Supreme Court also instructs that, "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management.'"[15] "Rule 8 . . . does not unlock . . . discovery for a plaintiff armed with nothing more than conclusions."[16] The Fifth Circuit agrees: "plaintiffs [ar]e not entitled to discovery without a properly pleaded complaint."[17]

---

[11]     *Molina-Aranda v. Black Magic Enters, L.L.C.*, 983 F.3d 779, 784 n.2 (5th Cir. 2020).

[12]     *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 874 (5th Cir. 2008).

[13]     *United States ex rel. Hendrickson v. Bank of Am., N.A.*, 779 F. App'x 250, 252 (5th Cir. 2019).

[14]     *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)); *see also United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897 (5th Cir. 2020) ("A claim is . . . not plausible if the facts pleaded are consistent with both the claimed misconduct and a legal and 'obvious alternative explanation.'").

[15]     *Twombly*, 550 U.S. 544, 559 (2007).

[16]     *Iqbal*, 556 U.S. at 678.

[17]     *Whitaker v. Collier*, 862 F.3d 490, 502 (5th Cir. 2017).

## LAW AND ARGUMENT

Each of plaintiffs' eleven causes of action against TAF should be dismissed as untimely, legally untenable, or for plaintiffs' failure to identify any specific underlying conduct—the basic "who, what, when, and where"—against TAF sufficient to establish their claims.

**I.    TAF is not liable under the Louisiana Racketeering Act because plaintiffs fail to allege actionable "racketeering," a valid "pattern," or causation of cognizable injuries.**

To state a Louisiana Racketeering Act claim,[18] a plaintiff must sufficiently plead that the defendant is "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise."[19] Even if these three elements are met, the court must evaluate whether the plaintiff has adequately alleged the "substantive requirements of each subsection" of § 15:1353 defining "prohibited activities."[20] And a civil plaintiff seeking money damages must sufficiently plead injury and causation as well.[21] Failure to adequately plead any one of these is fatal to the claim.

### A.  TAF has not engaged in narrowly defined "racketeering activity."

The Louisiana Racketeering Act provides a cause of action against "*any person engaged in racketeering activity* who violates a provision of 15:1353."[22] "Racketeering activity" is limited to specifically enumerated crimes under Louisiana law.[23] A defendant cannot be liable under the

---

[18]    The Louisiana Racketeering Act is "patterned" or "modeled" after its federal counterpart, and the Fifth Circuit considers the two statutes "analogous." *Farmer v. D&O Contractors, Inc.*, 640 F. App'x 302, 304 (5th Cir. 2016); *State v. Nine Sav. Accts.*, 553 So. 2d 823, 825 (La. 1989) ("Because Act 727 was apparently patterned after 18 U.S.C. § 1961 et seq. . . . federal decisions in this area are persuasive.").  State *and* federal caselaw will therefore guide this Court's analysis.

[19]    *CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, No. 19-0745, 2019 WL 2865256, at *4 (La. App. 1st Cir.), *writ denied*, 282 So. 3d 1069 (La. 2019) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000)).

[20]    *Id.*

[21]    *Price v. Pinnacle Brands, Inc.*, 138 F. 3d 602, 606 (5th Cir. 1998).

[22]    La. Stat. § 15:1353 (emphasis added).

[23]    La. Stat. § 15:1352(A).

Act "unless *that defendant* has engaged in . . . criminal conduct."[24] Generally profiting or otherwise benefiting from racketeering activity is insufficient.[25] Here, plaintiffs try to build their claim by group pleading that every defendant "commit[ed], attempt[ed] to commit, conspire[ed] to commit, or solicit[ed], coerc[ed], or intimidat[ed] another person to commit" five crimes.[26] But plaintiffs do not allege any particular conduct *by TAF* sufficient to show criminal activity—let alone state a racketeering claim.

> **1. Plaintiffs' corrupt influencing claim (La. Stat § 14:120) does not validly or plausibly allege TAF engaged in criminal activity.**

"[C]orrupt influencing is the giving or offering to give anything of apparent . . . value to . . . any person, with the intention that the recipient shall corruptly influence the conduct of any [public employee] in relation to such person's position, employment, or duty."[27] Plaintiffs concede they never allege corrupt influencing in their complaint but manufactured this claim for their racketeering case statement.[28] Now, plaintiffs argue TAF "gave bonuses and incentive-based payments" to public employees to "prioritize game wins . . . over their Title IX reporting requirements" and supposedly paid for training that influenced unidentified "LSU Responsible Employees" to "conceal reports of Sexual Misconduct and intimidate witnesses."[29] There is nothing criminal about TAF's legislatively permitted (and favored) financial support of LSU and its employees.[30] And plaintiffs do not allege that any person acting on TAF's behalf intended to

---

[24] *CamSoft Data*, 2019 WL 2865256, at *4 (collecting cases).

[25] *Id.*

[26] R. Doc. 103 at 3 n.4.

[27] La. Stat. § 14:120(A).

[28] R. Doc. 103 at 55 n.39.

[29] *Id.* at 56–57.

[30] *See generally* La. Stat § 42:1101(22)(c) ("Things of economic value shall not include salary and related benefits of the public employee . . . . Salary and related benefits of public employees of

corruptly influence anyone. The Husch Blackwell report finds "*no evidence* that anyone . . . put *any sort of pressure* on the Title IX Office or otherwise to . . . favor[] . . . student athletes,"[31] which directly contradicts—and thus supersedes—plaintiffs' unspecific and implausible accusations.

### 2. Plaintiffs' public intimidation claim (La. Stat. § 14:122) fails because economic threats are insufficient, and TAF did not threaten anyone.

"[P]ublic intimidation is the use of violence, force, extortionate threats, or true threats upon any [public employee], with the intent to influence his conduct in relation to his position, employment, or duty."[32] Plaintiffs concede that "violence, force, . . . or true threats" (which also requires "violent" intent) do not apply here.[33] "Extortionate threats" means "communicat[ing] an unlawful threat to *harm another person* with the intention to obtain anything of value or any . . . advantage [that] the person would not otherwise be able to lawfully secure . . . *from the victim*."[34]

The plain meaning of "harm another person" is "material or tangible" "injury . . . or damage."[35] Reading this definition against the surrounding terms (violence and force) reveals the law prohibits only threats of *physical* injury, which is not alleged.[36] Even if some vaguer harm

---

higher education . . . shall include any supplementary compensation, use of property, or other benefits provided to such employees . . . from a foundation organized by the alumni or other supportive individuals of a college or university . . . ."); La. Stat. § 42:1111(A)(1)(b) ("Any supplementary compensation or benefits provided to an employee of a public higher education institution . . . through a foundation . . . shall be deemed for purposes of this Subsection as compensation and benefits from the government to which he is duly entitled.").

[31] R. Doc. 22-1 at 144–45.

[32] La. Stat. § 14:122(A)(1).

[33] *See* R. Doc. 103 at 40 n.28.

[34] La. Stat. § 14:122(C)(1) (emphasis added).

[35] *Harm*, Black's Law Dictionary (11th ed. 2019).

[36] Otherwise, the statute is unconstitutionally overbroad, as the Fifth Circuit already held in *Seals v. McBee*, 898 F.3d 587 (5th Cir. 2018). Even narrowly defining "threats" as any "statement of an intention to inflict pain, injury, damage, or other hostile action on someone," the Fifth Circuit found this definition "easily" encompassed lawful threats of "harm or injury to the character of [a] person" making the statute facially overbroad, unconstitutional, and unenforceable. *Id.* at 594–95, 598, 600.

were actionable, plaintiffs fail to specify how TAF is involved.[37] They allege "participants . . . threatened [unidentified] public employees with harm in the form of adverse employment consequences such as [unidentified] Retaliation and [unidentified] economic loss" to dissuade them from complying with Title IX.[38] The only allegation against TAF is its supposed "bonus or incentive payments to public employees."[39] But TAF's providing supplementary compensation (as Louisiana law expressly permits) is different from physically threatening a public employee to *receive* something valuable from that threatened person.[40]

### 3. Plaintiffs' intimidating witnesses claim (La. Stat. § 14.129.1) fails because they never allege TAF participated in threatening or injuring witnesses.

Section 14:129.1(A) prohibits any person from "intentionally" either (1) intimidating or impeding "by threat of force or force" a witness "with intent to influence . . . h[er] reporting of criminal conduct" or (2) injuring or trying to injure a witness "in h[er] person or property . . . with intent to influence . . . h[er] reporting of criminal conduct."[41] The plain meaning of force (as in, "excessive force" or "deadly force") requires *physical* force.[42] "[I]njury . . . in [someone's] person" similarly conveys a tangible, physical injury. But plaintiffs do not allege TAF physically forced or injured them.[43] Paying for "inadequate" Title IX training, even if true, is not criminal intimidation.

---

[37]    *See* R. Doc. 103 at 40–41.

[38]    *Id.*

[39]    *See id.* at 41.

[40]    *See id.*

[41]    La. Stat § 14:129.1(A) (emphasis added).

[42]    *See generally Stokeling v. United States*, 139 S. Ct. 544, 551 (2019) (noting "[t]he overlap between 'force' and 'violence'" and that "force" typically means "power, violence, or pressure directed against a person or thing").

[43]    *See* R. Doc. 103 at 42–46.

### 4.    Plaintiffs' public records claims (La. Stat. §§ 14:132, 133) fail because TAF neither "injured" nor maintained false public records.

Section 14:132 criminalizes "injuring" public records by prohibiting the "intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record . . . *filed or deposited*, by authority of law, in any public office or with any public officer."[44] The past tense "filed or deposited" means a crime occurs only if the perpetrator "injures" the record *after* it was already filed or deposited.[45] Plaintiffs allege TAF tried to *preemptively* conceal information by "providing [unidentified public employees] private cell phones."[46] Even if this were true, preemptive efforts to conceal public records do not violate § 14:132.[47]

Section 14:133(A) criminalizes maintaining "false" records by prohibiting "maintaining as required by law, regulation, or rule, with knowledge of its falsity . . . (1) [a]ny forged document[,] (2) [a]ny wrongfully altered document[,] or (3) [a]ny document containing a false statement or false representation of a material fact."[48] Plaintiffs allege by conclusion that TAF (a private corporation not subject to Louisiana's Public Records Act)[49] "intentionally trained [lower-ranking members of the racketeering enterprise] to keep . . . false and misleading records."[50] Presumably, plaintiffs are again trying to rely on the outside consultant that Husch Blackwell found "*reasonably*

---

[44]    La. Stat. § 14:132(A)–(B) (emphasis added).

[45]    *See* 17 La. Civ. Law Treatise, Criminal Jury Instructions, §10:214.

[46]    R. Doc. 103 at 50.

[47]    *State v. Fraley*, 512 So. 2d 856, 856 (La. 1987) (holding defendant "did not injure a public record" because he did not "falsify a record *already filed or deposited* . . ." (partial emphasis added)); *see also Rigney v. Dep't of Police*, 10 So. 3d 861, 866 (La. App. 4th Cir. 2009) (Tobias, J., concurring) ("[B]y implication, the statute requires that the concealment must take place *after* a record, document, or other thing has been deposited with the appropriate authority.").

[48]    La. Stat. § 14:133(A).

[49]    La. Stat § 17:3390(C) ("No other books and records of any such corporation shall be subject to R.S. 44.1 et seq."); *see also* La. Stat. § 44:4.1(B)(9).

[50]    R. Doc. 103 at 48, 51.

*relied* on policies and information shared by *Athletics administration*."[51] And though Husch Blackwell notes only that this may have "confused" students and employees about how to "report Title IX-specific misconduct,"[52] there is no suggestion that anyone was encouraged or expected to "falsify" records.[53] Nor do plaintiffs allege who at TAF "intentionally trained" LSU employees to falsify records. Without details, plaintiffs' theories are not plausible, actionable allegations.

### 5. Plaintiffs' money laundering claims (La. Stat. § 14:230) fail because plaintiffs do not allege TAF "derived" proceeds from any criminal activity.

"Money laundering" is defined as "knowingly" transacting, transferring, receiving, or maintaining "proceeds *of a criminal activity*" or "proceeds *known to be derived from criminal activity* . . . [or] from any violation of criminal activity."[54] "Proceeds" means "funds acquired or derived directly or indirectly from . . . an act."[55] Plaintiffs contend TAF derived millions "from intimidat[ing] witnesses and creat[ing] false records" to build a football locker room and "hire inadequate Title IX training personnel."[56] Beyond plaintiffs' failure to viably allege against TAF the fundamental crimes of intimidating witnesses and falsifying public records, they don't allege how funds were supposedly "derived from" these crimes.[57] Unless plaintiffs are prepared to argue that every TAF donor is a "knowing" racketeer and criminal conspirator, this theory cannot stand. Plaintiffs again allege TAF "paid for . . . cell phones, used to further the Enterprise by concealing communications from public records,"[58] but still fail to explain how TAF "derived" money from

---

[51]    R. Doc. 22-1 at 33 (emphasis added).

[52]    *Id.* at 32.

[53]    *See id.* at 32–34.

[54]    La. Stat. § 14:230(B)(1)–(6) (emphasis added).

[55]    La. Stat. § 14:230(A)(4) (emphasis added).

[56]    R. Doc. 103 at 54.

[57]    *See generally id.*

[58]    R. Doc. 103 at 54.

cell phone use. Because plaintiffs cannot transform legitimate fundraising into "laundered" criminal proceeds, this racketeering claim fails.

### B. TAF has not engaged in any actionable "pattern" of racketeering.

Even if plaintiffs had sufficiently alleged TAF engaged in criminal predicate acts, the racketeering claims still fail because plaintiffs do not adequately allege TAF engaged in a "pattern of racketeering activity."[59] A "pattern" is "at least two incidents of racketeering activity that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents."[60] A plaintiff "must show that the racketeering predicates are related, and that they amount to or pose a threat of *continued criminal activity*."[61]

Continuity "may be shown by either a closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'"[62] With Husch Blackwell's publication of its investigation report, LSU outed its own Title IX practices and now regularly publishes "progress reports" detailing its remedial efforts.[63] And nearly all the plaintiffs have left LSU.  Thus, plaintiffs' claim must depend on a "closed period" because they do not plausibly allege supposedly criminal conduct continues today.[64] To prevail on a "closed

---

[59]      La. Stat. § 15:1352(C).

[60]      *Id.*

[61]      *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

[62]      *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996).

[63]      *See, e.g.,* LSU, Title IX Progress, Progress on Husch Blackwell Recommendations (updated Oct. 18, 2021), https://www.lsu.edu/titleix-review/docs/hb-progress-report.pdf (last visited Nov. 7, 2021).

         The court may judicially notice this information contained on a state website. *See generally Swindol v. Aurora Flight Sciences Corp.*, 805 F.3d 516, 519 (5th Cir. 2015).

[64]      *See Word of Faith Word Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (requiring a "threat of repetition extending indefinitely into the future").

period" claim, plaintiffs must show "a series of related predicates extending over a substantial period of time."[65] Seven months of activity, for example, is insufficient.[66] And while the Supreme Court requires at least two acts of criminal racketeering, "two acts . . . may not be sufficient."[67]

Here, even if the allegations showed TAF committed any predicate crime, the allegations are sporadic and of undetermined duration, failing to show continuous racketeering activity. Plaintiffs merely repeat the following allegations (none of which is racketeering): (1) TAF compensated certain athletic employees at an unidentified time and for an unidentified duration (as Louisiana ethics laws permit);[68] (2) TAF paid for unidentified athletic employees' private cell phones at an unidentified time and for an unidentified duration (as Louisiana ethics laws permit);[69] and (3) consistent with its legislative purpose to support university programs, TAF once paid a consultant to conduct in-house training in 2016.[70]   Though plaintiffs contend one instance of training supposedly spawned a decades' worth of criminal racketeering by *other people*, plaintiffs cannot point to any conduct *by TAF* that constitutes a "pattern," and the sporadic, unidentified and unrelated (lawful) actions allegedly committed by TAF is insufficient to demonstrate a "pattern" of racketeering.

Plaintiffs' continued reliance on supposedly "private" cell phones is especially specious. Although plaintiffs claim TAF paid for cell phones so LSU could avoid public record obligations, plaintiffs do not allege that they have ever sent a public records request for cell phone records or

---

[65]     *Word of Faith*, 90 F.3d at 122.

[66]     *Malvino v. Delluniversita*, 840 F.3d 223, 232 (5th Cir. 2016).

[67]     *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985).

[68]     R. Doc. 22 at ¶ 96.

[69]     *Id.* at ¶ 100.

[70]     *Id.* at ¶ 99.

that LSU failed to produce responsive information.[71] Even if LSU failed to produce what plaintiffs contend is public information (noting Louisiana law "does not exempt [from disclosure] any communications on the basis of who pays for its means"),[72] this might be a basis for a public records lawsuit against LSU—*not* claims of criminal racketeering against TAF.[73] Thus, plaintiffs' own internally inconsistent allegations reveal the absurdity of their arguing that their failure to obtain public records through proper channels shows some "pattern" of crime by TAF.[74]

### C. Plaintiffs have no cognizable injuries caused "by reason of" violations of § 15:1353(A), (B), or (C).[75]

The Louisiana Racketeering Act does not permit plaintiffs to recover for their personal injuries and associated damages, and plaintiffs do not allege any damage to business or property recoverable under the statute. Plaintiffs contend (without citation) that unlike the federal RICO Act, the Louisiana Racketeering Act—specifically "modeled after" the federal RICO statute— "provides a remedy for *all* injuries without limitation."[76] But plaintiffs are incorrect.

Section 15:1356(E) provides that "[a]ny person who is injured *by reason of any violation of the provisions of R.S. 1353* shall have a cause of action."[77] The federal remedial provision similarly states, "[a]ny person injured in his business or property *by reason of a violation of section*

---

[71]   *See generally id.* at ¶ 100.

[72]   R. Doc. 22 at ¶ 100 n. 19.

[73]   *See generally McKay v. State ex rel. Div. of Admin.*, 143 So. 3d 510, 514, 517 (La. App. 1st Cir. 2014) (affirming conclusion that cell phone records are validly public records).

[74]   Importantly too, not one of the plaintiffs alleges that LSU's poor handling of their Title IX claims stems from any athletic employee's cellphone use. R. Doc. 22 at ¶¶ 110–352.

[75]   Failing to properly plead a claim under subsections (A), (B), or (C) means plaintiffs correspondingly fail to properly plead a conspiracy claim under subsection (D). *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 202 (5th Cir. 2015).

[76]   R. Doc. 80 at 8.

[77]   La. Stat. § 15:1356(E) (emphasis added).

1962 . . . may sue therefor."[78] Interpreting only the phrase "by reason of" in *Holmes v. Securities Investor Protection Corp.*, the Supreme Court rejected the exact argument plaintiffs make here and held that, for an injury to be "by reason of" a violation of a substantive racketeering provision, the plaintiff must prove that the violation proximately caused the plaintiff's injury.[79] The Court began by noting "the very unlikelihood that Congress meant to allow *all* factually injured plaintiffs to recover[, so] RICO should not get such an expansive reading."[80] The Court also considered "[t]he general tendency of the law, in regard to damages at least, . . . not to go beyond the first step,"[81] warning that "[a]llowing suits by those injured only indirectly would open the door to massive and complex damages litigation [that] would not only burden the courts, but would also undermine the effectiveness of treble-damages suits."[82] Citing *Holmes*, the Fifth Circuit "requires plaintiffs to establish both but-for cause and proximate cause in order to show injury by reason of a RICO violation."[83] And proximate cause for RICO injuries is *not* a "foreseeability" test; "instead, the plaintiff must demonstrate that the alleged violation 'led directly' to the injuries."[84]

Because the Louisiana statute also requires injuries to occur "by reason of a violation of R.S. 15:1353," the separate statutory language of § 15:1353 is crucial. Subsection 1353(A) prohibits any person who "knowingly received any proceeds derived . . . from a pattern of racketeering activity" from "us[ing] or invest[ing] . . . . [those] proceeds [to] acqui[re] any title to,

---

[78]    18 U.S.C. §1964(c).

[79]    *See* 503 U.S. 258, 267–68 (1992).

[80]    *Id.* at 266.

[81]    *Id.* at 271 (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983)).

[82]    *Id.* at 274 (alterations omitted) (quoting *Assoc. Gen. Contractors*, 459 U.S. at 545).

[83]    *Toress v. S.G.E. Mgmt., L.L.C.*, 838 F. 3d 629, 636 (5th Cir. 2016).

[84]    *Molina-Aranda v. Black Magic Enters., LLC*, 983 F.3d 779, 784 (5th Cir. 2020).

13

or any right, interest, or equity in immovable property or in the establishment or operation of any enterprise."[85] So to pursue a right of action based on subsection 1353(A), a plaintiff must allege injury directly resulting from a defendant's "investment or use of racketeering proceeds," *not* the predicate criminal acts from which the income flowed.[86] "[A]lleging an injury solely from the predicate racketeering acts themselves is not sufficient because [subsection] (a) does not prohibit those acts."[87] Similarly, subsection 1353(B) prohibits any person from "knowingly . . . acquir[ing] or maintain[ing] . . . any interest in or control of any enterprise or immovable property."[88] So a plaintiff's injury must stem directly from the defendant's controlling the enterprise or property, which is different from damages stemming from the predicate criminal act.[89] The same is true for Subsection 1353(C), which prohibits a person "associated with any enterprise [from] knowingly . . . . participat[ing] in . . . such enterprise [by] racketeering."[90]

It is thus incorrect for plaintiffs to say that none of their injuries must be tethered to business or property.[91] This ignores the overall statutory scheme, as well as the overall statutory text. At least two federal district courts in the Fifth Circuit have reached the same conclusion. In *Viking Construction Group, LLC v. Satterfield & Pontikes Construction Group Inc.*, Judge Africk noted

---

[85]    La. Stat. ¶ 15:1353(A) (emphasis added).

[86]    *See Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 550–51 (5th Cir. 2012) ("To establish a claim under § 1962(a), a plaintiff must show that its injuries resulted *from the investment or use of racketeering proceeds*. In other words, injuries resulting from predicate acts of 'racketeering activity' themselves cannot form the basis of an investment injury.").

[87]    *N. Cypress Med. Ctr.*, 781 F.3d at 201.

[88]    La. Stat. § 15:1353(B) (emphasis added).

[89]    *N. Cypress Med. Ctr.*, 781 F.3d at 202 (affirming dismissal because plaintiff could not show direct nexus between injuries and defendant's controlling the enterprise).

[90]    La. Stat. § 15:1353(C).

[91]    *See generally Crowe v. Henry*, 43 F.3d 198, 203–04 (5th Cir. 1995) (noting that, when "[re]duced to their simplest terms," RICO's subsections are all connected to a business enterprise).

"[a Louisiana] RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."[92] Ultimately, Judge Africk dismissed the claims as untimely, and on "careful review of the record, the parties' briefs, and the district court's ruling," the Fifth Circuit affirmed.[93] In *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol North America Inc.*, Judge Minaldi considered the injury-to-business-or-property requirement twice, finding the plaintiff failed to allege "a single tangible injury to their 'business or property'"[94] or the "concrete financial loss which would confer RICO standing" under the Louisiana Racketeering Act.[95]

There is no dispute that plaintiffs' injuries are not "concrete" commercial, economic injuries since they dismissed their federal racketeering claim for imposing that requirement.[96] In any event, the Supreme Court, Fifth Circuit, and other circuits agree that personal injuries, emotional distress, medical expenses, loss of reputation, lost income, and lost employment opportunities are not cognizable injuries for a racketeering claim.[97] Thus, plaintiffs' racketeering claim should be dismissed.

---

[92]  No. CV 17-12838, 2018 WL 401182, at *4 n.17 (E.D. La. Jan. 12, 2018) (Africk J.) (quoting *Sedina, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)), *aff'd*, 728 F. App'x 405 (5th Cir. 2018).

[93]  728 F. App'x at 406.

[94]  No. 11-0856, 2012 WL 4960389, at *2 (W.D. La. Oct. 16, 2012).  Finding that the plaintiffs lacked (statutory) "standing" to pursue a racketeering claim, Judge Minaldi first dismissed plaintiffs' claims under Rule 12(b)(1), rather than Rule 12(b)(6).  *Id.*  The Fifth Circuit vacated the dismissal because the lack of statutory standing, not "Article III standing," is a Rule 12(b)(6) question, but found no error in the substantive analysis.  *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc.*, 544 F. App'x 455, 457 (5th Cir. 2013).

[95]  No. 11-0856, 2013 WL 4516007, at *3 (W.D. La. Aug. 22, 2013).

[96]  *See generally* R. Doc. 67.

[97]  *See generally Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (applying the Clayton Act and interpreting the phrase "business or property" to exclude "personal injuries suffered"); *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001) ("Because the only damages asserted . . . are for personal injuries, the district court's judgment on the pleadings . . . was proper."); *Gucwa v. Lawley*, 731 F. App'x 408, 412 (6th Cir. 2018) ("Even though personal injuries may lead to monetary damages, such personal injuries and their associated pecuniary losses—including

## II.    Plaintiffs' racketeering claims based on predicate acts before April 26, 2016, Sarah Beth Kitch's individual racketeering claim, and various class claims are prescribed.

Any racketeering claims that accrued before April 26, 2016 (five years before filing), are prescribed.[98] Plaintiffs cannot use an independent predicate act inside the limitations period to "bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period."[99] The Fifth Circuit allows a plaintiff to recover only "for racketeering injuries discovered or discoverable within the limitations period."[100]

For the same reason, Sarah Beth Kitch's claim must be dismissed entirely. Kitch alleges injuries from her time as a Ph.D. student before she graduated and left LSU in 2014.[101] There is no dispute Kitch had "knowledge or constructive knowledge of the injury giving rise to [her racketeering claim]" to trigger prescription,[102] because she alleges "this [graduate program] environment" caused her "severe health problems, including . . . panic attacks, persistent feelings of dread and despair, a sense of worthlessness, and feelings of intense shame and humiliation."[103] Kitch's knowledge of these injuries—no matter if she knew the "other elements of a [racketeering claim]"—"starts the limitations period running," and her claim prescribed years ago.[104]

---

medical expenses—do not confer relief under § 1964(c)."); *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992) ("Doe's loss of earnings . . . are plainly derivatives of her emotional distress—and therefore reflect personal injuries which are not compensable under RICO."); *Grogan v. Platt*, 835 F.2d 844, 848 (11th Cir. 1988) (holding RICO plaintiffs cannot recover for lost employment opportunities when they are "most properly understood as part of a personal injury claim").

[98]    La. Stat. § 15:1356(H).

[99]    *Viking Constr. Grp.*, 2018 WL 401182, at *3 (collecting Fifth Circuit cases).

[100]    *Id.* (collecting cases).

[101]    R. Doc. 22 at ¶¶ 340, 346.

[102]    *Farmer*, 640 F. App'x at 304 n.3.

[103]    R. Doc. 22 at ¶ 343.

[104]    *See Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 176 (5th Cir. 2012); *Ames v. Ohle*, 97 So. 3d 386, 394 (La. App. 4th Cir. 2012) ("[P]rescription begins to run once there has been a determination that damage was sustained.").

Similarly, plaintiffs' overbroad class definition includes prescribed claims. Plaintiffs define their putative class to include "past students from 2013 . . . who are harmed by Defendants' failure to provide resources for students who experience discrimination on the basis of sex."[105] But this definition fails to consider when the alleged injury-producing conduct occurred or when the putative class members' injuries materialized. Anything before April 26, 2016 is prescribed.

## III.    Plaintiffs' civil rights and state-law claims are all untimely, and neither tolling nor continuing tort theories apply.

Counts VI, VII, IX, XII, XIII, XIV, XV, XVII should be dismissed as facially untimely. Under Louisiana Civil Code article 3492, plaintiffs' state law tort claims are subject to a one-year prescriptive period,[106] which also applies to plaintiffs' civil rights claims brought under 42 U.S.C. §§ 1983 and 1985.[107] Plaintiffs first filed this suit on April 26, 2021,[108] making the only timely claims those that accrued on or after April 26, 2020.[109]

A tort claim accrues and prescription runs "from the day injury or damage is sustained."[110] Here, plaintiffs' complaint shows nearly all their claims are untimely because each plaintiff (other than Corinn Hovis)[111] alleges suffering physical, mental, and emotional injuries from LSU's Title IX failures while they were students at least *over two years ago*:[112]

---

[105]    R. Doc. 22 at ¶ 354.

[106]    La. Civ. Code art. 3492.

[107]    *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 . . . looks to the law of the State in which the cause of action arose. . . for the length of the statute of limitations.").

[108]    R. Doc. 1.

[109]    *See* La. Civ. Code art. 3492.

[110]    *Id.*; *see also Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009) (same).

[111]    Hovis alleges that she assaulted in January 2020 and was "deeply traumatized by . . . [LSU's] Title IX investigation process," which ended in May 2020. R. Doc. 22 at ¶¶ 331–33.

[112]    *Richard*, 599 F.3d at 345 (noting the plaintiff "bears the burden of showing that prescription has not run when the face of the [complaint] shows that the action is time-barred").

- After Calise Richardson reported misconduct to defendants Sharon Lewis and Keava Soil-Cormier in 2016,[113] she "immediately . . . faced retaliation" at her on-campus job and Soil-Cormier "spread[] office rumors" about her—*five years* before this lawsuit.[114] When Richardson learned in 2018—*three years* before this lawsuit—that a Title IX investigation was closed without any resulting discipline, she was "extremely upset."[115]

- In 2016—*five years* before this lawsuit—defendants Miriam Segar, Mari Fuentes-Martin, and Ed Orgeron learned a football player raped Ashlyn Robertson and allegedly did nothing.[116]  Robertson starting abusing drugs and alcohol "as a result of [the] rape."[117]

- In 2016—*five years* before this lawsuit—Samantha Brennan told defendants Sharon Lewis and Miriam Segar that a football player circulated a sexually explicit photo of her, and neither offered Brennan any support, resources, or accommodations.[118] Brennan experienced "intense feelings of humiliation and shame" and left LSU that same year—again, *five years* before this lawsuit.[119]

- A football player raped Abby Owens in 2016, which "severely exacerbated" pre-existing substance abuse.[120] She left LSU in March 2017—*four years* before this lawsuit—"because she could not bear to be [near] her rapist."[121] Owens blames defendants for her substance abuse and the monetary losses she incurred leaving LSU.[122]

- A fraternity member sexually assaulted Elizabeth Andries on a 2016 bus trip and tried to assault her again in 2017.[123]  That fall—*four years* before this lawsuit—Andries reported her assault to LSU and obtained victim resources in February 2018—*three years* before this lawsuit.[124] In 2019—*two years* before this lawsuit—defendant Jonathan Sanders "inappropriate[ly] and unnecessary[ily]" questioned Andries about her assault, and Andries had panic attacks when LSU failed to remove her assailant from her classes.[125]

- Jade Lewis experienced dating violence from 2017 to 2018—at least *three years* before this lawsuit—that defendants Julia Sell, Michael Sell, Verge Ausberry, Miriam Segar, Ed

---

[113]    *Id.* at ¶¶ 123, 127.

[114]    R. Doc. 22 at ¶¶ 132, 138.

[115]    *Id.* at ¶ 152.

[116]    *Id.* at ¶¶ 157, 159, 161, 164, 169–70.

[117]    *Id.* at ¶¶ 173, 175.

[118]    *Id.* at ¶¶ 178, 180, 181, 183, 184.

[119]    *Id.* at ¶ 185; *see also* R. Doc. 22-1 at 102 ("Brennan . . . 'quietly' left LSU during the Fall 2016.").

[120]    R. Doc. 22 at ¶¶ 195–96.

[121]    *Id.* at ¶ 200.

[122]    *Id.* at ¶ 208.

[123]    *Id.* at ¶¶ 210, 212, 214.

[124]    *Id.* at ¶ 217.

[125]    *Id.* at ¶¶ 230, 233–34.

Orgeron, and Jonathan Sanders all knew about.[126] Though her abuse led to at least two Title IX investigations, LSU disciplined Lewis while her abuser remained on campus.[127] Lewis contends that LSU's "repeated failure to properly respond" to her abuse until 2019—*two years* before this lawsuit—caused her "severe . . . distress."[128]

- Defendant Julia Sell ridiculed Kennan Johnson from 2017 until she graduated in 2019 which "end[ed] the[ir] relationship"—*two years* before this lawsuit.[129] During that time, Johnson felt "very uncomfortable and alienated," emotionally abused, and physically sick from "starv[ing] herself [to] meet Defendant Julia Sell's expectations."[130]

- Jane Doe was harassed from 2018 to 2019—*two years* before this lawsuit.[131] She "painful[ly]" recounted this during four different investigatory interviews in March 2019—again, *two years* before this lawsuit.[132] In 2019 (still *two years* before this lawsuit) LSU expelled Doe for bad grades, which she claims stemmed from her harassment.[133] She later re-enrolled, only to become "so depressed and uncomfortable" that she left again and enrolled in community college in December 2019—again, *two years* before this lawsuit.[134]

- A Ph.D. professor harassed Sarah Beth Kitch from 2009 to 2014, when she graduated and left LSU—*six years* before this lawsuit.[135] During this time—again, *at least six years* before this lawsuit—Kitch believed the LSU administration prioritized its "general reputation" over misconduct victims and alleges "[t]his environment" caused her "severe health problems, including . . . panic attacks, persistent feelings of dread and despair, a sense of worthlessness, and feelings of intense shame and humiliation."[136] After graduating—again, *six years* before this lawsuit—Kitch suffered "triggering flashbacks," which interfered with her work and career.[137] In August 2019—*two years* before this lawsuit—"Kitch realized her career was already over," though she waited until now to sue for her "loss of her ability to . . . proceed with her expected academic career."[138]

---

[126]   *Id.* at ¶¶ 247, 251, 253, 254, 256, 265, 266.

[127]   *Id.* at ¶ 264.

[128]   *Id.* at ¶ 282.

[129]   *Id.* at ¶¶ 285, 299.

[130]   *Id.* at ¶¶ 286, 297.

[131]   *Id.* at ¶¶ 303, 306.

[132]   *Id.* at ¶ 312.

[133]   *Id.* at ¶ 318.

[134]   *Id.* at ¶ 319.

[135]   *Id.* at ¶¶ 340, 346.

[136]   *Id.* at ¶ 343.

[137]   *Id.* at ¶ 347.

[138]   *Id.* at ¶¶ 349, 352.

To resist prescription, plaintiffs try to rely on *contra non valentem*, or the "discovery rule,"[139] by alleging that, until Husch Blackwell released its report, none of them knew *the extent of* LSU's culpability or that LSU *knowingly* failed to investigate or appropriately discipline sexual predators.[140] But plaintiffs' ignorance of the full "extent" of their claims does not trigger *contra non valentum*, which must be "strictly construe[d]."[141] Even when *contra non valentem* applies, prescription begins to run when plaintiffs have actual or constructive knowledge of facts indicating they may have a claim.[142] Just this year, in *In re Taxotere (Docetaxel) Products Liability Litigation*, the Fifth Circuit reiterated when a plaintiff has "constructive knowledge" to trigger prescription.[143] First, "prescription runs [when] there is notice enough to call for *inquiry* about a claim, not . . . when the inquiry reveals facts or evidence sufficient to *prove* the claim."[144]  "Plaintiffs are *not* entitled to wait to sue until they are certain of what and/or who caused their injury."[145]  Second, contrary to plaintiffs' suggestion that they may wait to sue until identifying by name every potential defendant, the Fifth Circuit explains that a plaintiff's failure "to ascertain whom to sue within a year does *not* toll . . . prescription"; plaintiffs must seek out whomever they believe may

---

[139]    The party asserting *contra non valentem* bears the burden of proving it applies. *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 388–89 (5th Cir. 2021).

[140]    R. Doc. 22 at ¶¶ 88, 154, 175, 190, 207, 242, 281, 300, 320, 338.

[141]    *Terrebone Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002) (collecting Louisiana cases); *In re Taxotere*, 995 F.3d at 390; *see also Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (La. 2010) (reversing to dismiss based on prescription and noting "lower courts have interpreted . . . *contra non valentem* too broadly").

[142]    *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 489 (5th Cir. 2009).

[143]    995 F. 3d 384 (5th Cir. 2021).

[144]    *Id.* at 391 (quoting *Terrel v. Perkins*, 704 So. 2d 35, 39 (La. App. 1st Cir. 1997)).

[145]    *Id.* at 391 (emphasis added).

be responsible.[146]  It is enough to know that someone caused the plaintiff's damage, "rather than requiring actual knowledge of the *particular cause* of the [damage]."[147] Indeed, the court explained that "whatever is notice enough to excite attention and . . . call for inquiry is tantamount to knowledge or notice *of everything to which inquiry may lead*."[148]

Considering this, plaintiffs' argument that they did not know "the extent of [LSU's] deviation from the duty of care as outlined in [its] Title IX Policy" because they were unaware of "intentional" acts cannot save their untimely claims. The fact that plaintiffs allege both intentional torts and negligence is immaterial; a plaintiff "does not need to be aware of exactly which legal claims and theories will be used in [the plaintiff's] case" for prescription to run.[149] What's more, plaintiffs' allegations show they knew LSU mishandled their abuse because plaintiffs were *living through it*, interacting directly with many named defendants.[150] For similar reasons, plaintiffs' "continuing tort" theory is misplaced. "[A] continuing tort is occasioned by continuing unlawful acts, *not* the continuation of the ill effects of an original wrongful act."[151] "Progressively worsening damages" caused by "previous, but terminated conduct" does not suffice.[152]  Here, any damage-causing conduct to these plaintiffs stopped, and prescription began to run, long ago—at least by

---

[146]   *Id.* (quoting *Bennett v. Gen. Motors Corp.,* 420 So. 2d 531, 537–38 (La. App. 2d Cir. 1982); *see also Alvarez v. Se. Com. Cleaning, LLC*, 136 So. 3d 329, 337 (La. App. 5th Cir. 2014) ("Proof of a cause of action against a particular defendant is not required to [start] prescription.").

[147]   *In re Taxotere*, 995 F.2d at 392.

[148]   *Id.* at 391 (emphasis added).

[149]   *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, No. 15-4790, 2017 WL 4517287, at *2 (E.D. La. Oct. 10, 2017) (Fallon, J.).

[150]   *See supra* notes 113–38 and accompanying text.

[151]   *Young v. United States*, 727 F.3d 444, 448 (5th Cir. 2013) (collecting Louisiana cases).

[152]   *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 254 (La. 2010).

the time all plaintiffs *left* LSU.[153] Plaintiffs' civil rights and state law tort claims are prescribed

and must be dismissed.

IV.    **Plaintiffs do not allege any actionable civil rights claims against TAF.**

      **A.  As a private corporation, TAF cannot be liable as a "state actor."**

      In addition to being untimely, plaintiffs' civil rights claims (Counts VI through IX) also

fail because TAF is a private corporation that cannot be liable under section 1983. [154] The Supreme

Court holds that section 1983 cannot reach private conduct, "no matter how discriminatory or

wrongful."[155] And Revised Statute § 17:3390 provides that TAF "shall be a private entity that shall

not be deemed to be a public or quasi public corporation or an administrative unit, public servant,

employee, or agent of any institution of higher education for any purpose whatsoever."[156] The

same statute also requires TAF be "under the direction and control of private individuals," and

"the majority of [its] voting members . . . are not [state or public] employees."[157]  TAF is also

financially independent from LSU, earning money through private sources.[158]

      Plaintiffs hope to shoehorn TAF into their section 1983 claims (to threaten attorneys' fees

under section 1988) by baldly asserting TAF engaged in "joint action" with any or all of the state-

actor defendants, claiming only that TAF was a "willful participant[] acting jointly with the other

---

[153]    *See generally id.* at 255 (finding no continuing tort and prescription began to run when oil-and-gas company closed waste pits on landowners' property).

[154]    If this court finds that TAF can be a state actor under section 1983, TAF reserves the right to argue certain immunities should apply, considering no court has held a private corporation like TAF liable under similar circumstances.

[155]    *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

[156]    La. Stat § 17:3390(B).

[157]    La. Stat. § 17:3390(A) and (B).

[158]    *See* La. Stat. § 17:3390 (A).

defendants in a conspiracy, the object of which was understood by all to be the deprivation of Plaintiffs' constitutional rights."[159]  And though plaintiffs assert three civil rights theories premised on seemingly different conduct that violates different constitutional rights,[160] the allegation-by-legal-conclusion that TAF "acted jointly" never changes.[161] This cannot transform TAF into a state actor. Plaintiffs' bare recitation of the elements for "joint action" violates Rules 8 and 12(b)(6) by failing to "*state specific facts*, not merely conclusory allegations."[162]  For decades, the Fifth Circuit has held "mere conclusory allegations of conspiracy cannot . . . state a substantial claim of [§ 1983] conspiracy."[163]  The court recently reminded us, "Plaintiffs who assert [civil rights] conspiracy claims . . . must plead the operative facts upon which their claim is based.  Bald allegations that a conspiracy existed are insufficient."[164]

Precedent commands that "[d]eciding whether a deprivation of a protected right is fairly attributable to the State begins by identifying the *specific conduct* of which the plaintiff complains."[165] "To make the requisite showing of state action . . . [the plaintiff] must establish a sufficiently close nexus between the State and the challenged action of the [private] entity."[166] And the Supreme Court holds, "[w]hether such a 'close nexus' exists . . . depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or

---

[159]    R. Doc. 22 at ¶¶ 424, 434, 442.

[160]    *Id.* at ¶¶ 423–32, 433–40, 441–50.

[161]    *See generally id.*

[162]    *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986).

[163]    *Id.*

[164]    *Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 206 n.16 (5th Cir. 2020) (quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987)).

[165]    *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (emphasis added) (quoting *Sullivan*, 526 US. at 51).

[166]    *Cornish*, 402 F.3d at 550 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

covert, that the choice must in law be deemed to be that of the State."[167] "Action taken by private entities with the mere approval or acquiescence of the State is not state action."[168]

Here, plaintiffs fail to allege any "specific conduct" by TAF—what TAF did "jointly . . . . in a conspiracy," who at TAF "willful[ly] participat[ed]" in that joint action, when the joint action was taken, or with whom of the many other defendants TAF acted.[169] And plaintiffs' allegations of "control" are fundamentally backwards: whereas the Supreme Court requires *the state* to "exercise[] coercive power" over a private entity to transform private conduct into state action, plaintiffs allege that TAF controlled LSU.[170] Presumably, plaintiffs will continue to fall back on the singular allegation that TAF once paid for a private consultant, but Husch Blackwell found this consultation was "replete with solid recommendations" that LSU should have, but refused to, implement.[171] Because LSU's independent refusal does not transform its failures into "state action" by TAF, plaintiffs' civil rights claims against TAF must be dismissed.

### B.  Plaintiffs fail to identify any impermissible conduct by TAF.

Plaintiffs' civil rights claims against TAF also fail because TAF committed no constitutionally impermissible conduct. For example, to properly plead a First Amendment retaliation claim, plaintiffs must allege (1) they were "engaged in a constitutionally protected activity," (2) TAF's "actions caused [them] to suffer an injury that would chill a person of ordinary

---

[167]    *Sullivan*, 526 U.S. at 52.

[168]    *Id.* (emphasis added).

[169]    *Compare Cornish*, 402 F.3d at 550, *with* R. Doc. 22 at ¶¶ 424, 434, 442.

[170]    *Compare Sullivan*, 526 U.S. at 52 ("Whether such a 'close nexus' exists, our cases state, depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."), *with* R. Doc. 22 at ¶ 95 ("TAF's level of control over LSU and its athletic programs goes well beyond what would normally be expected of a nonprofit organization . . . .").

[171]    R. Doc. 22-1 at 39–40.

firmness from continuing to engage in that activity," and (3) TAF's "adverse actions were substantially motivated against [their] exercise of constitutionally protected conduct."[172]

Here, *no* plaintiff identifies what "adverse action" TAF took against them. Plaintiffs discuss retaliation by the "LSU Defendants"—a term plaintiffs defined to exclude TAF.[173]  Indeed, because *none* of plaintiffs even allege TAF knew they had reported misconduct, [174] TAF cannot have been "substantively motivated" by reports it never knew about to take adverse action against people it never interacted with.[175] The most plaintiffs offer is a conclusion that "TAF . . . [is a] willful participant[] acting jointly with the other defendants in a conspiracy, the object of which was understood by all to be the deprivation of Plaintiffs' constitutional rights."[176] But as explained, the word "conspiracy" is not enough.[177] The same issues plague plaintiffs' equal protection claim, procedural due process claim, and seemingly separate civil rights conspiracy claim.[178]  For each, plaintiffs must allege that *TAF*—not other, unrelated defendants—took some unlawful action

---

[172]   *Jackson*, 959 F.3d at 203 (quoting *Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015)).

[173]   *Compare* R. Doc. 22 at ¶ 49 ("Collectively, the Board of Supervisors, LSU, and the individually named Defendants in their official capacities shall be referred to as 'the LSU Defendants.'"), *with id.* at ¶ 428 ("The *LSU Defendants' retaliation* against Plaintiffs' speech serves no compelling state interest." (emphasis added)).

This hole is especially pronounced for plaintiffs Andries, Doe, Hovis, and Kitch, who were not harassed or assaulted by a student-athlete and had zero interaction with anyone in the Athletic Department. *See id.* at ¶¶ 209–43, 302–21, 340–52.

[174]   *Id.* at ¶¶ 110–55, 156–76, 177–91, 192–208, 209–43, 244–82, 283–301, 302–21, 322–39, 340–52. Some plaintiffs admittedly failed to report their mistreatment, so by their own allegations did not engage in protected speech. *See* R. Doc. 22 at ¶¶ 164, 170 (Robertson); *id.* at ¶¶ 196–98, 200 (Owens); *id.* at ¶¶ 297–98 (Johnson); *id.* at ¶ 349 (Kitch).

[175]   *Jackson*, 959 F.3d at 203; *see also Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*, 577 F.3d 264, 271–72 (5th Cir. 2009) (finding, as a matter of law, defendant cannot be liable for a First Amendment retaliation claim absent evidence the defendant "knew or even could have been likely to discover that there were constitutionally protected dimensions" to plaintiff's speech).

[176]   R. Doc. 22 at ¶¶ 424, 434, 442.

[177]   *See Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995); *see also supra* notes 162–64 and accompanying text.

[178]   *See* R. Doc. 22 at 106–12, Counts VII, Count VIII, Count IX.

toward them. But plaintiffs fail to identify action by TAF because, as a private entity separate from LSU, it had no duty to investigate or respond to reports of Title IX misconduct.[179] So plaintiffs' general allegations that all "Defendants" violated Title IX do nothing to state a claim for civil rights violations *against TAF*,[180] and these claims should be dismissed.

## V.    Plaintiffs do not allege any actionable state-law claims against TAF.

### A.   As a separate private corporation, TAF did not owe plaintiffs any duty, or breach any purported duty, to control LSU's responses to sexual misconduct.

Louisiana's "duty-risk analysis" governs plaintiffs' negligence and negligent supervision claims (Counts XII and XIII) and requires them to plead and prove, at minimum, "first, that the defendant had a duty to conform his conduct to a specific standard (duty)"; and, "second, that the defendant's conduct failed to conform to the appropriate standard (breach)."[181]

Regarding "duty," the court decides "whether, as a matter of law, a duty is owed to this particular plaintiff to protect [the plaintiff] from this particular harm."[182] The relevant inquiry is whether "the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed [the plaintiff] a duty."[183] Plaintiffs *cannot* rely only on the general duty to behave reasonably; they "are still required to assert a 'specific standard' of care."[184] Here, every "specific standard" plaintiffs invoke arises under Title IX or the duties a

---

179   *See generally* 20 U.S.C. § 1681.

180   R. Doc. 22 at ¶¶ 436, 444.

181   *Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 409 (5th Cir. 2017).

182   *Id.* (quoting *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1016 (La. 1993)).

183   *Id.* (quoting *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 292 (La.1993)); *Butler v. Denka Performance Elastomer, L.L.C.*, No. 20-30365, 2021 WL 4810639, at *12 (5th Cir. Oct. 15, 2021) (same).

184   *Butler*, 2021 WL 4810639, at *12.

school owes to its students, which does not apply to TAF.[185]

By its terms, Title IX governs only "any education program or activity receiving Federal financial assistance" or "educational institutions."[186] And Title IX guidance reminds these entities receiving federal funds that they "remain[] ultimately responsible for ensuring compliance with the legal obligations under the Title IX Rule."[187] Thus, TAF carries no such responsibility under the law, and Louisiana law prohibits TAF from being deemed a public entity "for any purpose."[188] Neither does TAF have any duty to supervise LSU's employees or administrators because TAF is a purely separate, private entity.[189] In any event, the Husch Blackwell report reveals that TAF's limited conduct, in paying a consultant to provide LSU a written assessment "replete with solid recommendations," cannot constitute breach of any purported duty.[190]

In addition, because the crux of plaintiffs' claims against TAF is that it "control[s] . . . LSU athletics" and encourages poor Title IX practices "within LSU's Athletics Department,"[191] Andries's, Doe's, Hovis's, and Kitch's claims against TAF must be dismissed because none of

---

[185]    *See generally* R. Doc. 22 at ¶¶ 483.

[186]    20 U.S.C. § 1681. Similarly, Section 504 applies only to "any program or activity receiving Federal financial assistance," and the ADA applies to "services, programs, or activities of a public entity," which excludes a fiscally independent private corporation like TAF. *See* 29 U.S.C. § 794; 42 U.S.C. § 12132.

[187]    United States Department of Education: Office for Civil Rights, Questions and Answers Regarding the Departmnet's Final Title IX Rule at 5 (Sept. 4, 2020), https://www2.ed.gov/about/offices/list/ocr/docs/qa-titleix-20200904.pdf (last visited Nov. 7, 2021); *see also id.* ("Similarly, each recipient is responsible for ensuring that its grievance procedures satisfy the Title IX Rule.").

The court may judicially notice this information contained on a public website. *See generally Swindol*, 805 F.3d at 519.

[188]    La. Stat. § 17:3390(B).

[189]    *See generally id.*

[190]    R. Doc. 22-1 at ¶ 39.

[191]    R. Doc. 22 at ¶ 99.

their allegations have anything to do with athletics. Plaintiffs do not allege TAF interacted with LSU's Title IX department or any employees outside the Athletic Department,[192] and these plaintiffs don't allege reporting their mistreatment to any athletics employee who could have conceivably been influenced by TAF's alleged "control over LSU Athletics."[193]

### B.  Plaintiffs' infliction-of-emotional distress claims also substantively fail.

Count XIV tries to allege negligent infliction of emotional distress but doesn't mention TAF at all.[194]  Count XV asserts intentional infliction of emotional distress, but is far from alleging "conduct . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable."[195]  Not even "tortious or . . . criminal" conduct that is malicious or "arbitrary and without compassion," rises to this "high threshold" of actionable conduct.[196] While courts refuse to recognize intentional emotional distress claims when a supervisor publicly "launched a profane tirade" against his employees;[197] another engaged in "violent, screaming rages" by calling an employee "dumb," "stupid," and "fat";[198] and a law firm subjected an associate to allegedly "unbearable" race discrimination,[199] plaintiffs merely allege that TAF once "confused" female student-athletes (which does *not* include Richardson,

---

[192]    *See generally id.*

[193]    *Id.* at ¶ 99.

[194]    *Id.* at ¶¶ 497–503. To the extent a claim is asserted against TAF, it is assessed under the same general negligence standard set forth above, and should be dismissed for the same reasons. *See Covington v. Howard*, 146 So. 3d 933, 937 (La. App. 2d Cir. 2014) (holding that the general duty-risk analysis applies to emotional distress claims).

[195]    *White v. Monsanto,* 585 So. 2d 1205, 1209 (La. 1991).

[196]    *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1022, 1028 (La. 2000).

[197]    *White*, 585 So. 2d at 1207.

[198]    *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So. 2d 1049, 1050 (La. App. 3d Cir. 1992).

[199]    *King v. Phelps Dunbar, L.L.P.*, 743 So. 2d 181, 184 (La. 1999).

Robertson, Brennan, Owens, Andries, Doe, Hovis, or Kitch) with Title IX training.[200] Louisiana imposes "strict guidelines" on emotional distress claims to "protect[] the court's time and limited resources" by "limit[ing] the class of claimants and prevent[ing] false claims."[201] No case allows these claims to stretch this far.

### C.  Civil conspiracy under Civil Code article 2324 is not a separate cause of action.

Plaintiffs' separately pleaded Count XVII for civil conspiracy fails because the Fifth Circuit,[202] nearly every Louisiana Circuit Court of Appeals,[203] and Louisiana's federal district courts hold that "Louisiana law does not recognize an independent cause of action for civil conspiracy."[204] "[C]onspiracy . . . is not an independent cause of action"[205] because "[t]he actionable element of a conspiracy claim is not the conspiracy itself [but] the [underlying] tort."[206] Count XVII should be dismissed.

### D.  Plaintiffs' assertion of other claims precludes any unjust enrichment claim.

Civil Code article 2298 proclaims that unjust enrichment is "subsidiary" and "shall not be

---

[200]    R. Doc. 22 at ¶ 506.

[201]    *Crockett v. Cardona*, 713 So. 2d 802, 805 (La. App. 4th Cir. 1998).

[202]    *Louisiana v. Guidry*, 489 F.3d 692, 706 n.54 (5th Cir. 2007) ("Louisiana law does not recognize an independent cause of action for civil conspiracy.").

[203]    *Dhaliwal v. Dhaliwal*, 184 So. 3d 773, 787 (La. App. 2d Cir. 2015) ("An independent cause of action for civil conspiracy does not exist in Louisiana."); *Ingram v. Freeman*, 326 So. 2d 565, 570 (La. App. 3d Cir. 1976) ("A conspiracy alone is not civilly actionable."); *Crutcher-Tufts Res., Inc. v. Tufts*, 38 So. 3d 987, 991 (La. App. 4th Cir. 2010) ("Conspiracy by itself is not an actionable claim."); *Khoobehi Props., L.L.C. v. Baronne Dev. No. 2, L.L.C.*, 288 So. 3d 224, 232 (La. App. 5th Cir. 2019) ("Louisiana law does not have an independent cause of action for civil conspiracy.").

[204]    *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1253–54 (5th Cir. 1997) (collecting cases).

[205]    *Schott, Tr. for Estate of InforMD, LLC v. Massengale*, No. 18-759-JWD-RLB, 2019 WL 4738795, at *1 (M.D. La. Sept. 27, 2019) (dismissing "conspiracy to commit fraud" claim); *see also Branden v. F.H. Paschen, S.N. Nielsen, Inc.*, No. 19-2406, 2019 WL 1760694, at *4 n.38 (E.D. La. Apr. 22, 2019) ("Louisiana law does not recognize an independent cause of action for civil conspiracy."); *Dietz v. Dietz*, No. 08-0521, 2009 WL 2707402, at *10 (W.D. La. Aug. 27, 2009) (same).

[206]    *Khoobehi Props.,* 288 So. 3d at 232; *see also Jefferson*, 106 F. 3d at 1254 (same).

available if the law provides another remedy."[207] As the Fifth Circuit has explained, "Louisiana law is clear on this point . . . it is not the success or failure of other causes of action" that matters; the mere "*existence* of other causes of action" precludes unjust enrichment.[208] Indeed, the Louisiana Supreme Court holds that plaintiffs cannot plead unjust enrichment even alternatively to other claims.[209] And the Middle District of Louisiana Chief Judge recently explained these cases "directly . . . foreclos[e]" any argument that Rule 8 permits pleading unjust enrichment alternatively or inconsistently among other claims.[210] Here, plaintiffs plead *nineteen* other causes of action alongside unjust enrichment—ten others directly against TAF.[211] This forecloses any unjust enrichment claim, and Count XX should be dismissed.

## CONCLUSION

For all these reasons, the court should grant this motion and dismiss plaintiffs' claims against TAF.

---

[207] La. Civ. Code art. 2298.

[208] *Ferrera Fire Apparatus, Inc. v. JLG Indus.*, 581 F. App'x 440, 443–44 (5th Cir. 2014) (alterations omitted) (emphasis added) (citing *Garber v. Baden & Ranier*, 981 So. 2d 92, 100 (La. App. 3d Cir. 2008).

[209] *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 241, 242 (La. 2010) ("Having pled a delictual action, we find plaintiff is precluded from seeking to recover under unjust enrichment. . . . The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under . . . unjust enrichment.").

[210] *Entergy Gulf States La., L.L.C. v. La. Generating, L.L.C.*, No. 14-385, 2020 WL 961499, at *5 (M.D. La. Feb. 27, 2020).

[211] Plaintiffs' theories against other defendants is another reason to dismiss the unjust enrichment claim. *See Insulation Techs., Inc. v. Indus. Labor & Equip. Servs., Inc.*, 122 So. 3d 1146, 1151 (La. App. 4th Cir. 2013) (holding that plaintiff's breach-of-contract claim against one defendant was an "available remedy" precluding unjust enrichment claim against different defendant).

Respectfully submitted,

   /s/ Chloé M. Chetta
Judy Y. Barrasso, 02814
Laurence D. LeSueur, Jr., 35206
Chloé M. Chetta, 37070
Lance W. Waters, 37351
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA  70112
Telephone:  (504) 589-9700
jbarrasso@barrassousdin.com
llesueur@barrassousdin.com
cchetta@barrassousdin.com
lwaters@barrassousdin.com

*Counsel for Defendant Tiger Athletic Foundation*

31