**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **ABBY OWENS, ET AL** | * | **NO.: 3:21-cv-00242** |
| | * | |
| **VERSUS** | * | **JUDGE: WBV** |
| | * | |
| **LOUISIANA STATE UNIVERSITY,** | * | **MAGISTRATE JUDGE: SDJ** |
| **ET AL** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM IN SUPPORT OF MOTION**
**TO DISMISS AMENDED COMPLAINT PURSUANT TO FEDERAL RULE**
**OF CIVIL PROCEDURE 12(B)**

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Miriam Segar (hereinafter "Segar"), who respectfully submits this Memorandum in Support of her Motion to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b).

**I.  FACTUAL BACKGROUND.**

On April 26, 2021, Plaintiffs filed a Class Action Complaint and Jury Demand, asserting various claims against Segar, among others.[1] Plaintiffs claim they are "current and former Louisiana State University ("LSU") students who attended the Baton Rouge campus at some point from 2013 to 2021 and are female presenting and/or LGBTQ+ identifying individuals who were victims of sex-based discrimination, including rape, sexual assault, sexual harassment, and/or stalking, perpetrated by male LSU students and LSU employees."[2] Broadly, Plaintiffs contend that Defendants are liable to them for various violations of Title IX obligations including failing to maintain an adequate reporting, investigation, and disciplinary system for sexual assault complaints.

With respect to Segar, she is only mentioned with respect to allegations asserted by five of

---

[1] On June 25, 2021, Plaintiffs filed an Amended Class Action Complaint and Jury Demand ("Amended Complaint") that merely added named plaintiffs and more defendants. Doc. 22.
[2] Doc. 22, ¶2.

1

the ten named Plaintiffs in the Amended Complaint – Calise Richardson ("Richardson"), Ashlyn Robertson ("Robertson"), Samantha Brennan ("Samantha Brennan"), Jade Lewis ("Jade"), and Corrin Hovis ("Hovis"), as follows:

| Plaintiffs | Date | Allegation |
|---|---|---|
| Richardson | Fall 2018 | According to Richardson, Segar initiated a call to her, and Richardson attempted to return the call, but Segar did not respond. Id at ¶147-149. |
| Robertson | January 26, 2016 | According to Robertson, Segar was informed of her rape by the diving coach who learned of it from Robertson's friend's mother. Id at ¶161. |
| Brennan | July 22, 2016 | According to Brennan, Segar "ignored [her] request" not to report the nude photograph to the police and took her to the LSU Police Department to file a report. Id at ¶183. |
| Lewis | April 25, 2018 | According to Lewis, Segar discovered her bruises during an examination, Lewis told Segar of the abuse by Coe and Segar reported the abuse to the Title IX office the next day. Id at ¶254. |
| | June 18, 2018 | Segar filed a second Title IX report the same day she learned of subsequent abuse of Lewis by Coe. Id at ¶264. |
| | August 2018 | Lewis claims she reported retaliation by football coaches and family of Coe and Segar did nothing to address it or support Lewis. Id at ¶171. |
| | August 16, 2018 | According to Lewis, she showed Segar photos of bruises and scratches she received from Coe and Segar reported it to the LSU police department but not the Title IX office. Id at ¶272. |
| Hovis | February 3, 2020<br><br>March 6, 2020 | According to Hovis, Segar was notified of a Title IX complaint against the football player. Hovis also claims that Segar was notified on the same day the investigation concluded, March 6, 2020, of the outcome of the investigation finding that the football player violated Title IX policy by sexually assaulting Hovis. Id at ¶330 |

## II.    LAW AND ARGUMENT.

### i.    Fed. R. Civ. P. Rule 12(b)(1)

A challenge to subject matter jurisdiction pursuant to Fed. R. Civ. P. Rule 12(b)(1) may be raised at any time, by any party or by the court.[3] The burden lies with the party invoking the jurisdiction of the court.[4] In evaluating whether subject matter jurisdiction exists, the court accepts all uncontroverted factual allegations as true.[5] If a conclusory averment of subject matter jurisdiction is negated by other allegations in the pleading, the case may be dismissed.[6]

      a.     11th Amendment Immunity

The Eleventh Amendment provides that "(t)he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. Const. amend. XI.  The Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S.Ct.1347, 39 L.Ed.2d 662 (1974). It is clear that Louisiana, by statute, has refused to waive any Eleventh Amendment immunity to suit in federal court with respect to the state and any state agency. [7]

Plaintiffs seek injunctive relief against Segar in her official capacity with respect to their Section 1983, 1985 and 1986 claims. Congress has not waived sovereign immunity for Section 1983 actions.[8] Suits for violation of 42 U.S.C. §1983 can only be brought by "persons."[9] State officials named in their official capacities are not considered "persons" for purposes of 42 U.S.C.

---

[3] *Thompson v. Gaskill*, 315 U.S. 442, 62 S. Ct. 673, 86 L.Ed. 951 (1942).

[4] *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941).

[5] *Gibbs v. Buck*, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

[6] *See e.g.*, *Sopher v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000), *citing Hardin v. Straub*, 954 F.2d 1193, 1199 (6th Cir. 1992) and *Wells v. Brown*, 891 F.2d 591, 592-594 (6th Cir. 1989).

[7] See La. R.S. 13:5106(A), which provides, "No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."

[8] *Richardson v. Southern University,* 118 F.3d 450, 453 (5th Cir. 1997).

[9] *Newton v. Caminita*, No. CV31600363BAJEWD, 2016 WL 4247593, at *2 (M.D. La. Aug. 9, 2016); *see* also *Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011).

§ 1983 because a suit against a state official in his official capacity is, in essence, a suit against the state.[10] This court has recognized that LSU and University Athletic administrators are entitled to Eleventh Amendment immunity protection from suit.[11] It follows that the same analysis applies to a suit against a state official in his official capacity pursuant to §§ 1985 and 1986.[12]

Plaintiffs are permitted to sue state officials in their official capacity for injunctive relief only if the *Ex Parte Young* doctrine applies.  The *Ex Parte Young* doctrine, which is to be applied on a case-by-case basis, is a very narrow exception to sovereign immunity set forth in the Eleventh Amendment.[13] The Supreme Court in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), held that an individual may sue a state official for prospective equitable relief requiring the state official to cease violating federal law, even if the state itself is immune from suit under the Eleventh Amendment.[14] The *Ex Parte Young* doctrine only applies to prospective relief and does not allow judgments against state officials based on some past violation of federal law.[15]

The relief sought by Plaintiffs is not truly one of prospective relief because they are seeking injunctive relief in order to punish past alleged actions or inactions. While Plaintiffs' amended complaint purports to request prospective injunctive relief, the requested injunctive relief is based on *past* alleged violations of federal law and does not relate to any alleged ongoing violation of federal law. Each Plaintiff that alleges action or inaction on the part of Segar has alleged past actions or inactions and makes no allegations that Segar is continuing to violate their federal rights in any way. Thus, *Ex parte Young* is inapplicable, and Segar is entitled to Eleventh Amendment

---

[10] *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989).
[11] *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.,* 972 F. Supp. 2d 878 (M.D. La. 2013).
[12] *Newton, supra; Washington, supra.*
[13] *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, L.Ed.2d 252 (1996).
[14] *Id.* at 155-66, 28 S.Ct. at 452-53. See generally, *Pennhurst, State School and Hospital v. Halderman*, 465 U.S. 189, 102, 104 S.Ct. 1900 (1984).
[15] *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993).

immunity for the official capacity claims asserted against her.

### 2.    11th Amendment immunity for State Law Claims:

Plaintiffs' claims against Segar in her official capacity are in essence a suit against the state.[16] Therefore, since the state enjoys Eleventh Amendment immunity from suit in federal court, all state law claims against Segar in her official capacity must be dismissed for lack of jurisdiction under the Eleventh Amendment.

### ii.    FED. R. CIV. P. RULE 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[17] A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] The factual allegations must "raise a reasonable expectation that discovery will reveal evidence" of liability.[19] "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff."[20] The court is not, however, bound to accept as true legal conclusions couched as factual allegations.[21] The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.[22]

Plaintiffs have failed to state a claim for relief against Segar as to all of their claims. Plaintiffs allege the following violations against Segar: (1) Violation of Title IX Retaliation; (2) First Amendment Retaliation; (3) Denial of Equal Protection; (4) Denial of Procedural Due

---

[16] *Hughes v. Savell*, 902 F.2d 376, 379 (5th Cir. 1990).
[17] *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 127 S.Ct 1955, 550 U.S. 544, at 547 (2007)).
[18] *Iqbal,* 129 S.Ct. at 1949.
[19] *Twombly,* 550 U.S. at 556
[20] *Lormand v. U.S. Unwired, Inc.,* 565 F .3d 228, 232-33 (5th Cir.2009); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996).
[21] *Iqbal,* 129 S.Ct. at 149-50; *Anderson v. Law Firm of Shorty Dooley & Hall,* 2009 WL 3837550, 2(E.D. La., 2009).
[22] *Id*.

Process; (5) Conspiracy to Interfere with Civil Rights; (6) Negligence; (7) Negligent Supervision; (8) Negligent Infliction of Emotional Distress; (9) Intentional Infliction of Emotional Distress; (10) Civil Conspiracy; (11) Civil Violations of the Louisiana Racketeering Act; (12) Unjust Enrichment. For the reasons that follow, all claims against Segar should be dismissed.

## 1.    **Failure to State a Claim Against Segar under Title IX**

### a.    Plaintiffs' Claims are Prescribed

Plaintiffs' claims against Segar under Title IX are time-barred. Title IX does not provide a statute of limitations period.[23] When a federal cause of action does not specify an express statute of limitations, it is well-settled that courts should apply "the most closely analogous statute of limitations under state law."[24] The Fifth Circuit applies the state's statutes of limitations for personal injury actions to Title IX claims.[25] In Louisiana, the prescriptive period for personal injury actions is one year.[26] "A claim accrues when a plaintiff knows or has reason to know of the injury giving rise to the claim."[27] Plaintiffs filed their lawsuit on April 26, 2021, thus, any claims for injury occurring prior to April 26, 2020 are time-barred. All of Plaintiffs' claims arising under Sections 1983, 1985, and 1986 assert injury which Plaintiffs knew or should have known prior to April 26, 2020.

Richardson's allegations involving Segar's failure to respond to her phone call occurred in the fall of 2018. Robertson claims Segar was informed of her rape allegations on January 26, 2016. Brennan alleges she informed Segar of her claims on or around July 22, 2016. Lewis contends she reported abuse and/or retaliation to Segar on four separate occasions with the final report being

---

[23] 20 U.S.C. § 1681, et seq.
[24] *Reed v. United Transp. Union*, 488 U.S. 319, 323 (1989).
[25] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020); s*ee also King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015).
[26] La. Civ. Code art. 3492; *Sewell*, supra.
[27] *Sewell*, supra.

made on August 16, 2018. Hovis claims Segar was aware of her Title IX complaint on February 4, 2020, and of the conclusion of the investigation on March 6, 2020. None of the aforementioned alleged events occurred within the applicable prescriptive period. For each of the alleged instances and each of the Plaintiffs, they either knew or should have known of their alleged injury on or around the dates provided above. Instead of bringing their claims soon after they became known, Plaintiffs waited and brought their claims too late.

b.    No Cause of Action Against Segar

Plaintiffs contend the LSU Defendants violated Title IX due to retaliation.[28] This allegation appears to attempt to state a claim against Segar under Title IX in her official capacity only. Irrespective of which capacity Segar is sued under Title IX, whether official or individual, Plaintiffs have failed to state a claim against Segar under Title IX.

In *Fitzgerald v. Barnstable Sch. Comm.*, the Supreme Court held that while Title IX reaches institutions and programs that receive federal funds, it has consistently been interpreted as **not authorizing suit against school officials**, teachers, and other individuals.[29] This notion was reiterated in *Minnis* and was applied in that suit which involved Title IX claims against school officials in both their individual and official capacities.[30]

Title IX was enacted to eradicate gender discrimination in programs that receive federal funding.[31] In essence, the recipient of the federal funds agrees not to discriminate and the Government, in turn, provides the federal funding.[32] Thus, claims of Title IX discrimination may only be brought against the federal funds recipient, not its employees.[33] For the reasons discussed

---

[28] Doc. 22, ¶409.
[29] *Fitzgerald v. Barnstable Sch. Comm* 555 U.S. 246, 257, 129 S. Ct. 788, 796, 172 L. Ed. 2d 582 (2009) (emphasis added.); see also *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577 (5th Cir. 2020)
[30] *Minnis*, 927 F.Supp.2d at 889.
[31] *Id*; see also *Gebser v. Lago Vista Indep. Sch. Dist.*, 24 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 582 (2009).
[32] *Id.*
[33] *Jones v. S. Univ.,* 834 F. App'x 919, 923 (5th Cir. 2020).

above, Plaintiffs claims against Segar for Title IX retaliation, whether in her official or individual capacity, and whether for damages or injunctive relief, must be dismissed with prejudice.

Further, "a retaliation plaintiff must show that the funding recipient or its representatives took an adverse action against him because he complained of discrimination."[34] Plaintiffs claim the adverse actions they experienced included issuing a no-contact order against Plaintiffs; opening Plaintiffs up to being found responsible for violating the Code of Student Conduct if their abusers stalked them; depriving Plaintiffs of employment opportunities in the athletics department; expediently sanctioning Plaintiffs for possessing a candle in the immediate aftermath of reporting a Title IX violation; and spreading a false narrative about Plaintiffs and telling Plaintiffs' peers to stay away from Plaintiffs.[35] Segar not only had no authority take any such actions, but she is also not alleged to have taken any of the aforementioned actions. Conclusory allegations without factual support are insufficient to state a retaliation claim.[36]Thus, Plaintiffs' Title IX retaliation claims against Segar must fail.

## 2.    Failure to State a Claim Against Segar under Section 1983

### a.    Plaintiffs' Claims are Prescribed

As it relates to claims arising under §1983, 1985, and 1986, the applicable statute of limitations is "that which the State provides for personal-injury torts."[37] In Louisiana, personal injury claims are subject to a one-year prescriptive period.[38] Furthermore, "prescription commences to run from the day injury or damage is sustained." *Id.* For the reasons expressed above with respect to Plaintiffs' Title IX claims, Plaintiffs' §1983, 1985, and 1986 claims are prescribed.

---

[34] *Sewell,* 974 F.3d at 586.
[35] Doc. 22, ¶409.
[36] *Jones* at 834 F. App'x at 923
[37] *Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 1093, 166 L. Ed. 2d 973 (2007).
[38]*La C.C. art. 3492*.

b.    <u>Qualified Immunity</u>

Qualified immunity provides state officials with immunity from suit.[39] "As against claims under federal law, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[40] "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."[41]

The U.S. Supreme Court has refined the qualified immunity standard by defining "clearly established" in a way that encompasses the "objective reasonableness" inquiry. To be "clearly established," the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[42] In other words, Plaintiffs herein must allege facts which, if true, would show that Segar violated their rights in a way that she knew or should have known was unlawful. A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.[43] Therefore, before engaging in the inquiry into whether the official unreasonably violated clearly established law, courts should first determine whether the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of federal law in the first place.[44] For the reasons set forth below, Segar is entitled to qualified immunity for the Section 1983, 1985 and 1986 claims brought against her in the Amended Complaint.

---

[39] *Pearson v. Callahan*, 555 U.S. 223, 231-32, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).
[40] *Id.,* citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
[41] *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).
[42] *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
[43] *Id.*
[44] *Id.*

In order to establish a §1983 claim of retaliation for exercise of free speech a plaintiff must prove that: (1) she was engaged in constitutionally protected activity; (2) the defendant's alleged actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the exercise of her protected right was a substantial or motivating factor the defendant's actions.[45] For a conspiracy claim under Section 1983, Plaintiffs must allege (1) existence of a conspiracy involving state action and (2) deprivation of their civil rights in furtherance of the conspiracy.[46] Plaintiffs failed to allege all essential elements of their §1983 claim of retaliation for exercise of free speech against Segar.

With regard to the conspiracy claim, Plaintiffs' allegations of a conspiracy between Segar and any of the Defendants are threadbare and conclusory. Plaintiffs allege Defendants acted jointly in a conspiracy, the object of which was understood by all Defendants to be deprivation of Plaintiffs' constitutional rights.[47] Plaintiffs' allegations lack any factual detail or support. It is far-fetched to assume that the named Defendants, with varying dates of employment at LSU, distinct positions at different levels in various departments of LSU, and some of which are separate entities from LSU all joined together in a conspiracy to deprive the Plaintiffs of their constitutional rights. Plaintiffs' Amended Complaint is insufficient to allege a conspiracy under Section 1983.

Plaintiffs also failed to plead all elements of their free speech retaliation claim. Only three (3) of the Plaintiffs, Richardson, Brennan and Lewis, actually claim they engaged or attempted to engage in any speech with respect to their claims against Segar.

---

[45] *Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015), *disapproved of by Hersh v. Tatum,* 526 S.W.3d 462 (Tex. 2017); citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir.2002).
[46] *Plaisance v. Reese*, 353 F. Supp. 2d 735, 738 (E.D. La. 2004).
[47] Doc. 22, ¶424.

<u>Calise Richardson</u>

Richardson claims that she attempted to contact Segar, but that Segar did not respond when Richardson returned Segar's call.[48] Richardson reported her abuse allegations to another LSU employee soon after the missed calls with Segar; thus, Segar's alleged action of not responding to Richardson's phone call did not chill Richardson's speech and could not be said to be motivated by Richardson's alleged exercise of protected speech. Additionally, there is no allegation that Segar suppressed Richardson's speech or retaliated against her for alleged speech.

<u>Ashlyn Robertson</u>

Robertson contends that Segar was informed of her rape by the diving coach through a series of third-party hearsay reports.[49] To be clear, Robertson did not report the rape to Segar and does not allege that she ever spoke to Segar or communicated with her in any way. Because Robertson failed to report any Title IX violations to Segar and, in fact, did not report anything to Segar or communicate with her in anyway, Segar could not have violated Robertson's rights to free speech, or have caused Robertson to suffer any injury with respect thereto. Additionally, there is no allegation that Segar suppressed Robertson's speech or retaliated against her for same.

<u>Samantha Brennan</u>

Brennan claims when she reported that her nude photograph had been taken and disseminated without her consent, Segar took her to the LSU Police Department to file a report.[50] Brennan states she requested that her allegations be handled internally with LSU, and that Segar ignored that request.[51] This is a conclusory allegation. Segar properly escorted Brennan to the LSU Police Department to report a crime. Segar made a choice to report a crime to the LSU Police

---

[48] Doc. 22, ¶146.
[49] Id at ¶161.
[50] Id at ¶183.
[51] Id.

Department for further handling, including for Title IX reporting, as appropriate. Segar's actions cannot logically be said to have caused Brennan any injury that would chill a person of ordinary firmness from continuing to report sexual misconduct allegations. Furthermore, there is no allegation that Segar suppressed Brennan's speech or retaliated against her for her speech.

Jade Lewis

Although Segar properly filed two Title IX reports of Lewis's abuse, Lewis claims Segar did not report retaliation Lewis allegedly experienced.[52] Lewis also contends Segar did not report a third instance of reported abuse of Lewis to the Title IX office but instead reported the abuse to the LSU Police Department."[53] The fact that Segar did not report Lewis's alleged retaliation to the Title IX office, if true, did not chill Lewis's speech because she admits she later reported additional abuse to Segar. The fact that Segar reported the third instance of abuse to the LSU Police Department instead of the Title IX office, if true, can't be said to have chilled Lewis's speech or caused her any injury. Segar made a choice to report a crime to the LSU Police Department for further handling, including for Title IX reporting, as appropriate. Segar's actions cannot logically be said to have caused Lewis any injury. Additionally, there is no allegation that Segar suppressed Lewis's speech or retaliated against her for her speech.

Corrin Hovis

Hovis avers that Segar was notified of her Title IX complaint against an LSU quarterback, and subsequently of the outcome of the investigation, resulting in a finding that the player violated Title IX.[54] Hovis contends Segar was notified of the complaint on February 4, 2020 and of the conclusion of the investigation, on March 6, 2020.[55] According to Hovis, the LSU quarterback

---

[52] Id at ¶271.
[53] Id at ¶272.
[54] Id at ¶330.
[55] Id.

was suspended from LSU until May 10, 2020. To be clear, Hovis does not contend that Segar was involved in any way in the Title IX investigation or reporting or that she reported any allegations to Segar or had any communication with Segar at all. Hovis merely makes a conclusory allegation that Segar was aware of the investigation and the conclusion. Hovis does not even allege any injury she suffered by Segar's alleged awareness of the investigation and conclusion. These threadbare allegations cannot support a free speech retaliation claim. Additionally, there is no allegation that Segar suppressed Hovis's speech or retaliated against her for her speech.

In the unlikely event this Court decides that Plaintiffs Richardson, Robertson, Brennan, Lewis and Hovis did allege a violation of a federal right with respect to their §1983 First Amendment retaliation claims against Segar, Segar shows that she did not violate clearly established law because Segar's alleged actions have not been held to be unlawful. A state official will not lose his qualified immunity unless the law is clear that the particular action by the state official violates a protected right.[56] Instead, Segar asserts that the Plaintiffs have not alleged any conduct that would demonstrate that she acted in a way that she knew was unlawful. Undersigned counsel is not aware of any reported cases where a state official was found to have violated a student's First Amendment free speech rights under any of the factual scenarios involving Segar.

The Equal Protection Clause states that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."[57] It is "essentially a direction that all persons similarly situated should be treated alike."[58] "To maintain an equal protection claim, a plaintiff typically alleges that he 'received treatment different from that received by similarly situated

---

[56] *Kinney v. Weaver,* 367 F.3d 337, 350 (5th Cir. 2004).

[57] *U.S. Const. amend. XIV, § 1, Grimm v. Gloucester Cty. Sch. Bd.,* 972 F.3d 586, 606 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *cert. denied,* 141 S. Ct. 2878 (2021).

[58] *Id*, citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

individuals and that the unequal treatment stemmed from a discriminatory intent.'"[59]

Plaintiffs allege all Defendants discriminated against them on the basis of sex and denied them equal protection under the law in violation of the Equal Protection Clause of the Fourteenth Amendment.[60] When a right is clearly defined in the abstract, such as the right to equal protection, a state official will not lose his qualified immunity unless the law is clear that the particular action by the state official violates a protected right.[61] Instead, Segar asserts she did not violate any clearly established right to equal protection for any of the named Plaintiffs.

Plaintiffs contend Defendants subjected them to a hostile environment and failed to appropriately respond to and investigate their reports of sexual misconduct and other violations.[62] Plaintiffs also contend "that all Defendants intentionally treated female presenting and LGBTQ+ identifying students, like Plaintiffs, differently than similarly situated non-LGBTQ+ male presenting students for the purposes of maintaining the school's popular reputation and soliciting donor funds."[63] These are merely conclusory allegations lacking factual detail and cannot support a claim for denial of equal protection. Therefore, Plaintiffs' Equal Protection claim was not clearly established, and Segar is entitled to qualified immunity for said claim.

Plaintiffs claim all Defendants deprived them of their property and liberty interests without adequate notice or a meaningful opportunity to be heard in violation of the Due Process Clause of the Fourteenth Amendment.[64] In support of this claim, Plaintiffs allege Defendants "created a culture of silence by failing to report complaints of sex discrimination, initiate and/or conduct

---

[59] *Club Retro, L.L.C. v. Hilton,* 568 F.3d 181, 212–13 (5th Cir. 2009); *Taylor v. Johnson,* 257 F.3d 470, 473 (5th Cir.2001); *see In re United States,* 397 F.3d 274, 284 (5th Cir.2005); *Beeler v. Rounsavall,* 328 F.3d 813, 816–17 (5th Cir.2003); *Rolf v. City of San Antonio,* 77 F.3d 823, 828 (5thCir.1996).
[60] Doc. 22, ¶434.
[61] *Kinney, supra,* at 349-350.
[62] Doc. 22, ¶436.
[63] Id at ¶437.
[64] Id at ¶442.

14

adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits or grievance procedures."[65]

In order to establish a due process violation, the plaintiff must show that he has been deprived of a protected liberty or property interest.[66] "It is only when the state deprives an individual of a 'protected interest' – that is, 'life, liberty, or property' – that fair procedures are constitutionally mandated."[67] Protected property interests are created and defined by "state statutes or rules entitling citizens to certain benefits."[68]

Plaintiffs allege deprivation of their liberty and property interests, including the alleged right to be provided adequate notice of the actions to be taken due to the alleged sex-based discrimination they suffered, and meaningful opportunity to be heard.[69] Plaintiffs also contend they were deprived of their liberty and property interests in accessing educational opportunities and benefits.[70] It is not clearly established that such interests are protected by procedural due process. It hasn't even been resolved whether a student's interest in continued enrollment at a post-secondary institution is protected by procedural due process.[71] If continued enrollment in a university is not an established protected interest, then it follows that access to educational opportunities and benefits is also not clearly established. Similarly, it is not clearly established that Plaintiffs have a right to notice of actions to be taken or an opportunity to be heard with respect to sex-based discrimination.

---

[65] Id at ¶444.
[66] *Garcia v. United States*, 666 F.2d 960, 963-64 (5th Cir. 1982).
[67] *Woodard v. Andrus*, 649 F. Supp. 2d 496, 505 (W.D. La. 2009).
[68] *Goss v. Lopez*, 419 U.S. 565, 572-73, 95 S. Ct. 729, 735, 42 L. Ed. 2d 725 (1975); *see also Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39, 105 S. Ct. 1487, 1491, 84 L. Ed. 2d 494 (1985).
[69] Doc. 22, ¶445.
[70] Id at ¶446.
[71] *See, e.g., Bd. of Curators of Univ. of Missouri v. Horowitz,* 435 U.S. 78, 84–85, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); *Bell,* 351 F.3d at 249. *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 437 (6th Cir. 2006).

Furthermore, Plaintiffs failed to allege that Segar took any actions to deny them equal access to educational opportunities and benefits or grievance procedures. Plaintiffs' Amended Complaint is also void of any allegation that Segar failed to provide them notice of the actions to be taken or meaningful opportunity to be heard.

"To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, or equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States."[72] Plaintiffs have not alleged all essential elements for their claim of conspiracy against Segar. Plaintiffs' conspiracy allegations are threadbare and conclusory. It is well-settled that baseless assertions without more are not sufficient to state a valid claim.[73] Plaintiffs failed to provide any sufficient details of an alleged conspiracy between Segar and anyone else to deprive anyone of their constitutional rights.

With regard to the second factor, it is a requirement that the alleged conspirators must have violated a law which affords the plaintiff some protection. In *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 925 (5th Cir. 1977), the Fifth Circuit analyzed the issue in this manner, if the object of the defendants' conspiracy did not include a violation of some law (independent of section 1985(3) itself) which protects the plaintiff, the conspiracy could not have deprived the plaintiff of the "protection of the laws". Put more simply, there can only be a deprivation of the rights of a plaintiff when the action of the defendants is otherwise illegal. If the defendants have not conspired to act contrary to law, an object of a section 1985(3) conspiracy has not been made

---

[72] *Hilliard v. Ferguson,* 30 F. 3d at 652-653 (5th Cir. 1994).
[73] *Twombly,* at 557, 127 S.Ct. 1955.

out and the section is inoperable, regardless of whether the legal rights of the plaintiff are somehow affected. As stated herein, Segar has not violated any Plaintiffs' constitutional rights, whether First Amendment, Equal Protection, or Procedural Due Process, or any other right. Thus, Plaintiffs failed to sufficiently allege the second element of their §1985(3) claim.

Further, Plaintiffs failed to establish the third and fourth element of their §1985(3) claim. Plaintiffs did not allege any act of Segar "in furtherance of the alleged conspiracy" nor did they allege any cognizable injury caused by Segar. As Plaintiffs cannot meet all of the essential elements of their §1985 claim, Segar is entitled to qualified immunity.

42 U.S.C. §1986 provides a cause of action against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed." As explained above, Plaintiffs failed to state a cause of action against Segar pursuant to 42 U.S.C. §1985; thus, Plaintiffs' claim against Segar pursuant to 42 U.S.C. §1986 must also fail.[74]

### 3.    Failure to State a Claim of Negligence, Negligent Supervision, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, Civil Conspiracy and Unjust Enrichment Against Segar

#### a.    Plaintiffs' Claims are Prescribed

In Louisiana, "[d]elictual actions are subject to a liberative prescription of one year," which begins to run from the date the injury or damage was sustained.[75] The same one-year period also applies to Plaintiffs' state tort claims asserting negligence,[76] negligent supervision,[77] intentional

---

[74] *Galloway v. State of La.,* 817 F.2d 1154 (5th Cir. 1987).
[75] La. C.C. art. 3492.
[76] *Id.*
[77] *Irby v. Mancuso*, 2016-78 (La. App. 3 Cir. 9/28/16); 201 So.3d 413, *writ denied*, 2016-2074 (La. 6/15/18); 257 So.3d 687.

infliction of emotional distress,[78] negligent infliction of emotional distress,[79] civil conspiracy,[80] and enrichment without cause.[81]

Prescription begins to run from the day the plaintiff's injury is sustained.[82] "Injury is considered to have been sustained when damage to the plaintiff has "manifested itself with sufficient certainty to support accrual of a cause of action."[83] Therefore, a legal action by Plaintiffs asserting any such claims was required to be filed within one year of the date Plaintiffs are alleged to have been injured by such acts or omissions. As the instant lawsuit was filed on April 26, 2021, the damages must have been sustained no earlier than April 26, 2020; otherwise, those claims are considered to be prescribed under state law.

Of the ten Plaintiffs named in the instant lawsuit, only five of them have asserted any direct allegations against Segar for purported acts or omissions concerning their individual Title IX issues. However, each of their state delictual claims raised against Segar are prescribed because their injury was sustained *prior to April 26, 2020*. Thus, Plaintiffs' state law delictual claims are prescribed.

b.    <u>Plaintiffs failed to assert all necessary elements of their claims</u>

Negligence claims are examined using a duty-risk analysis.[84] One of the necessary considerations in the duty-risk analysis is to determine whether a legal duty exists and the extent of that duty, which depends upon the facts and circumstances of the case and the relationship of

---

[78] *King v. Phelps Dunbar, L.L.P.*, 98-1805 (La. 6/4/99); 743 So.2d 181.

[79] *Albe v. City of New Orleans*, 2014-0186 (La. App. 4 Cir. 9/17/14); 150 So.3d 361, *writ denied*, 2014-2166 (La. 12/8/14); 153 So.3d 445.

[80] *Olympia Minerals, LLC v. HS Res., Inc.*, 2013-110 (La. App. 3 Cir. 4/1/15); 162 So.3d 674, *writ denied*, 2015-0854 (La. 10/30/15.

[81] *Dugas v. Thompson*, 2011-0178 (La. App. 4 Cir. 6/29/11), 71 So. 3d 1059,.

[82] *Chaverri v. Dole Food Co.*, 896 F. Supp. 2d 556, 567 (E.D. La. 2012), <u>aff'd</u>, 546 F. App'x 409 (5th Cir. 2013).

[83] *Id*.

[84] *Labarre v. Occidental Chem. Co.*, 2017-1368 (La.App. 1 Cir. 5/2/18); 250 So.3d 932, writ denied, 2018-0912 (La. 9/28/18); 252 So.3d 929 (citing *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 2001-2217 (La. 4/3/02), 816 So.2d 270, 275–76)).

the parties.[85] Plaintiffs cite various circumstances in paragraph 483 of their Amended Complaint in which they contend all Defendants failed to take appropriate action. Taken individually, each of the alleged omissions Plaintiffs assert therein to support their negligence claim either did not involve Segar or were not within the scope of any duty she had. Indeed, none of the purported acts/omissions raised by the five Plaintiffs who have asserted specific allegations against Segar (discussed above) support the imposition of any duty upon Segar, nor do they demonstrate a breach of any duty by her. Accordingly, there can be no finding in this matter that Segar was negligent in any of her conduct toward Plaintiffs.

Plaintiffs also fail to state a claim for negligent supervision against Segar.[86] According to Plaintiffs, "[a]ll Defendants had a duty to supervise, train, and monitor students, including but not limited to the Plaintiffs and their assailants . . . to ensure that the Title IX policy was followed to prevent, properly respond to, and remedy incidents of sex-based discrimination on LSU's campus."[87] Thus, Plaintiffs appear to be claiming that Segar failed to properly supervise the student victims and assailants.

For liability to attach to Segar based upon the actions of those alleged to be under her control and/or supervision, a master-servant relationship must exist;[88] however, there is no allegation that either the student victims or assailants were employed by Segar.  Iit is further unclear how Segar, in her capacity as Senior Associate Athletic Director (or even in her capacity prior to that title), had any direct oversight over the student victims such that she should become liable for training them in Title IX policy or with respect to their alleged assailants. Indeed, it is

---

[85] *Id*. (*citing Joseph v. Dickerson*, 99-1046 (La. 1/19/00), 754 So.2d 912, 916).

[86] In the Amended Compliant, Plaintiffs cite La. C.C. art. 2030 in support of this claim. (Doc. 22, p. 119 – Count XII); however, that citation is incorrect. Plaintiffs appear to have intended to cite La. C.C. art. 2320.

[87] Doc. 22, ¶ 492.

[88] *Hughes v. Goodreau*, 2001-2107 (La. App. 1 Cir. 12/31/02), 836 So. 2d 649, 656, <u>writ denied,</u> 2003-0232 (La. 4/21/03), 841 So. 2d 793.

farfetched to say that Segar's failure to train the assailants in Title IX policy (even assuming she had a duty to do so – which she did not) either caused or contributed to the underlying acts.

Plaintiffs next contend that Defendants negligently inflicted emotional distress upon them in their response to reports of sexual misconduct and in their lack of prevention of sex-based discrimination.[89] Recovery for negligent infliction of emotional distress has been limited to those cases involving the "especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious."[90] Thus, in order to prove a claim for negligent infliction of emotional distress, the plaintiffs must establish the following: (1) the defendants owed a duty to the plaintiffs; (2) defendants breached that duty; (3) the defendants' breach of the duty was a cause-in-fact of the plaintiffs' alleged harm; (4) the defendants' breach was a legal cause of the harm plaintiffs' claim to have suffered; and (5) actual damages.[91] The duties alleged herein by Plaintiffs overlap with those discussed above in the section concerning their negligence claim. For the same reasons set forth therein, Plaintiffs have also failed to set forth allegations of any duty that was breached by Segar to support a claim of negligent infliction of emotional distress.

Plaintiffs allege that Segar and the other Defendants intentionally inflicted emotional distress in their response to reports of sexual misconduct.[92] Under Louisiana law, a plaintiff claiming intentional infliction of emotional distress ("IIED") must establish three elements: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result

---

[89] Doc. 22, ¶498-499.
[90] *Moresi v. Department of Wildlife and Fisheries*, 567 So.2d 1081, 1096 (La.1990).
[91] *Crockett v. Cardona*, 97–2346, p. 3 (La. App. 4 Cir. 5/20/98), 713 So.2d 802, 804.
[92] Doc. 22, ¶505 - 506.

from his conduct.[93] " "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

None of the scant factual allegations concerning Segar sufficiently plead the elements for a cognizable IIED claim, i.e., the Amended Complaint does not set forth sufficient facts demonstrating that Segar was "extreme and outrageous" in her handling of Title IX complaints; the emotional distress that Plaintiffs claim to have endured appears to stem from the underlying sexual and/or physical abuse rather than the purported mishandling of the Title IX reports; and Plaintiffs cite no facts to support a belief that Segar either desired to inflict severe emotional distress upon them or knew it was substantially certain. Therefore, no facts are alleged that, if true, set forth the elements for an IIED claim.

Plaintiffs "allege a conspiracy between all Defendants to systemically and fraudulently silence Plaintiffs and deprive them of their Constitutional and federal rights to protect the reputation and income of LSU athletics."[94] They allege that "as a direct and proximate result of the Defendants' conspiracy, Plaintiffs have sustained injuries and damages."[95] However, "[t]he actionable element of a conspiracy claim is not the conspiracy itself; rather, it is the tort that the conspirators agree to perpetrate and actually commit in whole or in part."[96] La. C.C. article 2324(A) requires a meeting of the minds or collusion. In order to recover under a conspiracy theory, a plaintiff must allege and prove that an agreement existed to commit an illegal or tortious act, which act was actually committed, which resulted in the plaintiff's injury, and there was an

---

[93] *Ioppolo v. Rumana*, 581 F. App'x 321, 327 (5th Cir. 2014)(citing *White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La.1991)).
[94] Doc. 22, ¶530.
[95] *Id*.
[96] *Thomas v. N. 40 Land Dev., Inc.*, 2004-0610 (La. App. 4 Cir. 1/26/05), 894 So. 2d 1160, 1174, citing *Ross v. Conoco, Inc.,* 2002–0299, pp. 7–8 (La.10/15/02), 828 So.2d 546, 552 (citing *Butz v. Lynch,* 97–2166, p. 6 (La.App. 1 Cir. 4/8/98), 710 So.2d 1171, 1174).

agreement as to the intended outcome or result.[97] Just as Segar did not commit any illegal or tortious acts that caused injury to Plaintiffs, she likewise cannot be found liable for civil conspiracy based thereon.

Louisiana Civil Code Article 2298 states: "A person who has been enriched without cause at the expense of another person is bound to compensate that person. The five elements required to establish an unjust enrichment claim are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff.[98]    For the reasons more fully explained hereinabove, Plaintiffs have failed to plead that Segar was enriched in any way by their Title IX claims or that there was any connection between their Title IX claims and any alleged enrichment. Plaintiffs failed to plead that there is no other adequate remedy at law available to redress their claims. Thus, Plaintiffs failed to state a claim against Segar for enrichment without cause.

### 4.    Failure to State a Claim for Civil Violations of State Racketeering Act

#### a.    Plaintiff's Claims are Prescribed

A civil proceeding asserting a claim for violation of La. R.S. 15:1353 is to be "commenced at any time within five years after the conduct in violation of a provision of this Chapter terminates or the cause of action accrues."[99] Thus, any claims arising prior to April 26, 2016, are prescribed.

#### b.    Plaintiffs failed to plead all necessary elements of their claims

Plaintiffs have raised a claim pursuant to Louisiana's Racketeering Act, La. R.S. 15:1351, et seq., in which they claim that Defendants, including Segar, conducted an enterprise through a

---

[97] *Butz* at 1174.
[98] *Dugas v. Thompson*, 2011–0178 (La. App. 4 Cir. 6/29/11), 71 So.3d 1059, 1067–1068.
[99] La. R.S. 15:1356(H).

pattern of racketeering. They allege the enterprise at issue in this case is an association-in-fact enterprise composed of all named Defendants.[100] Plaintiffs allege Defendants maintained an interest in and control of the "Enterprise" and also conducted or participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity alleged in the Amended Complaint. Plaintiffs allege Defendants' control and participation in the Enterprise were necessary for the successful operation of Defendants' scheme. Plaintiffs allege the "Enterprise" had an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engaged.

Plaintiffs allege Defendants and those employed by and/or associated with the Enterprise have conducted the affairs of the Enterprise through a pattern of racketeering activity in violation of LRA Sections 15:1353(a), (b), and (c) and have conspired to violate Section 15:1353(c) in violation of Section 15:1353(d) by utilizing donations solicited from international and national donors through TAF to make payments directly to LSU and on behalf of its employees and to implement a deficient sexual misconduct education program and reporting scheme within the Athletics Department that was knowingly unable to meet the standards mandated by the NCAA or Title IX and/or by falsely certifying to the NCAA that the Athletics Department was meeting the mandated standards to continue competing in interstate collegiate sporting events to protect the revenue from student-athletics to LSU, TAF, and Orgeron Defendants.

Louisiana racketeering laws are modeled upon federal "RICO" legislation.[101] Because of the parallel between the RICO and Louisiana's statutes, federal decisions in this area are persuasive.[102] As established by federal jurisprudence "RICO claims under  have three common

---

[100] Doc. 22, ¶556.

[101] *State v. Touchet*, 1999-1416, p. 4 (La. App. 3 Cir. 4/5/00); 759 So.2d 194, 197.

[102] *Id*.

elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'"[103]  Proof of the existence of an "enterprise" is essential. Also, the "pattern of racketeering activity" must be proven as a separate element.[104]

First, Plaintiffs do not plead a valid enterprise to support their LRA claim. "To 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' an individual must have some part in the operation or management of the enterprise itself."[105] Plaintiffs have failed to allege that Segar actually "operated" or "managed" the alleged enterprise involved in the various racketeering allegations set forth in their Amended Complaint. Participating in Title IX investigations and following the instructions of her supervisors does not show that Segar actually directed the enterprise's affairs. There is also nothing substantial in the Husch Blackwell Report showing that Segar had any control over the alleged "enterprise." At all relevant times, Segar simply performed the job duties assigned to her by her supervisors.

Moreover, there is no actual enterprise. Plaintiffs plead an association-in-fact enterprise consisting of LSU, its Board of Supervisors, its athletics staff, other LSU employees, and TAF. "[A]n association-in-fact enterprise includes 'a group of persons associated together for a common purpose of engaging in a course of conduct,' and that enterprise can be proved with 'evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'[106] There are three indispensable structural features to an association-in-fact enterprise – "a purpose, relationships among those associated with the enterprise, and longevity

---

[103] *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007), quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer,* 90 F.3d 118, at 122 (5th Cir.1996).
[104] *Touchet*, supra, 197.
[105] *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539 (5th Cir. 2012), as revised (Jan. 12, 2012).
[106] *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015), *quoting Boyle v. United States,* 556 U.S. 938, 944-945, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009).

sufficient to permit these associates to pursue the enterprise's purpose."[107]

Plaintiffs also fail to set forth sufficient facts to show that the "enterprise" they allege had a common purpose. The actions described to support the concept of an enterprise do not describe a common course for all of those presumed to be associated with the enterprise, especially when considering that some of the alleged racketeering activity is connected to LSU athletics while other alleged actions by the enterprise have no relationship to athletics at all. Thus, there is no central, unifying theme among the various acts alleged, even if accepted as true.

Plaintiffs must also establish both a but for cause and proximate cause in order to show injury based upon the racketeering activity.[108] The Louisiana Racketeering Statute provides in pertinent part: "Any person who is injured by reason of any violation of the provisions of R.S. 15:1353 shall have a cause of action against any person engaged in racketeering activity who violates a provision of R.S. 15:1353.[109] Here, Plaintiffs' Amended Complaint fails to show a pattern of racketeering activity by Segar connected to the conduct or control of any enterprise or that caused injury to Plaintiffs. "Racketeering activity" consists of two or more predicate criminal acts that are (1) related and (2) "amount to or pose a threat of continued criminal activity."[110]

Plaintiffs cite various predicate acts to support their theory of racketeering activity, all of which are incongruous with the specific factual allegations they raise against Segar. Plaintiffs do not allege Segar has been charged and convicted for the listed predicate acts or any other crimes. Also, criminal statutes must be strictly construed and the words given their everyday meaning.[111]

---

[107] *Plambeck*, 802 F.3d at 673–74, *relying upon Boyle*, 556 U.S. at 946, 129 S.Ct. 2237. (Emphasis added.)
[108] *Waste Mgmt. of Louisiana, L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 965 (5th Cir.), *cert. denied*, 140 S. Ct. 628, 205 L. Ed. 2d 390 (2019). (Internal citations omitted.)
[109] La. R.S. 15:1356.
[110] *Abraham*, 480 F.3d 351, 355 (5th Cir. 2007).
[111] There are "two established rules of statutory construction: (1) all criminal statutes are construed strictly; and (2) the words of a statute must be given their everyday meaning. *State v. Toups*, 2013-1371 (La. App. 1 Cir. 4/3/14), 144 So. 3d 1052, 1056; *citing State v. Hinton*, 08–1849 (La.App. 1 Cir. 2/13/09), 6 So.3d 242, 244, *writ denied,* 09–0821 (La.3/4/11), 58 So.3d 466.

With these precepts in mind, a review of the predicate acts Plaintiffs rely upon demonstrates that not all of the elements for those offenses are pled.

### Louisiana Revised Statute 14:122

Plaintiffs first claim Defendants, including Segar, engaged in public intimidation and retaliation in violation of Louisiana Revised Statute 14:122.[112] "Public intimidation" is defined therein as the use of violence, force, extortionate threats, or true threats." None of the facts alleged against Segar demonstrate that she used violence, force, extortionate threats, or true threats against anyone. Moreover, per the statute, such acts must be directed against certain persons (*i.e.*, a public officer or public employee; a grand or petit juror; a witness for a trial or other proceeding before any court, board or officer; a voter or election official; a school bus operator). Within the Racketeering Case Statement, Plaintiffs suggest that Segar and other participants "threatened public employees with harm in the form of **adverse employment consequences such as Retaliation and economic loss** to influence [their] willingness to engage in inappropriate reporting, record-keeping and training."[113]

Plaintiffs have not identified any specific acts by Segar wherein she threatened economic loss upon any public employee, nor is it alleged that she had the supervisory authority to do so. In particular, Plaintiffs do not allege that Segar did so with respect to any of the five Plaintiffs who have raised any specific allegations concerning Segar. Meanwhile, "retaliation," as contemplated by La. R.S. 14:122(B), must be directed against an elected official.[114] Plaintiffs have identified no elected official that Segar retaliated against. As none of the facts asserted against Segar appear to

---

[112] Doc. 22, ¶568 and 569; Doc. 103, p. 40.
[113] Doc. 103, pp. 40-41. (Emphasis added.)
[114] See La. R.S. 14:122(B).

violate the provisions of La. R.S. 14:122,[115] this predicate act does not support Plaintiff's claim of racketeering activity involving Segar.

### Louisiana Revised Statute 14:132

Plaintiffs next claim that Defendants, including Segar, injured public records in violation of La. R.S. 14:132.[116] However, Segar is not actually alleged to have intentionally removed, mutilated, destroyed, altered, falsified, or concealed "any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer,"[117] which would be a first degree offense. Segar also is not specifically alleged to have committed a second degree offense of the same statute by intentionally removing, mutilating, destroying, altering, falsifying, or concealing "any record, document, or other thing, defined as a public record pursuant to R.S. 44:1 et seq." While Plaintiffs do claim that Segar did not set forth certain information in some of her Title IX reports (*i.e.*, the name of the alleged assailant), this is still not in violation of La. R.S. 14:132, which requires the following essential elements for this crime – "1. intentional removal or concealment; 2. of a public record; 3. that the public record had been filed or deposited; 4. that the filing or depositing was by authority of law; and 5. that the public record had been filed or deposited in a public office or with any public officer."[118]

First, information that is not yet maintained as an existing document (either physically or electronically) is not considered a public record.[119] Also, Plaintiffs do not identify any particular

---

[115] Also, as part of this Court's consideration, it should be noted that the Fifth Circuit has previously held that La. R.S. 14:122 is unconstitutionally overbroad inasmuch as it criminalizes threats. *Seals v. McBee*, 898 F.3d 587, 600 (5th Cir. 2018), *as revised* (Aug. 9, 2018)

[116] Doc. 22, ¶568 and 569; Doc. 103, p. 47.

[117] La. R.S. 14:132(A).

[118] *State v. Gomez*, 433 So. 2d 230, 239 (La. Ct. App.), *writ denied*, 440 So. 2d 730 (La. 1983), and *writ denied,* 441 So. 2d 747 (La. 1983).

[119] "**The Public Records Law only applies to written documents** and the custodian has no duty to write down information which exists only as a matter of personal knowledge." *Ass'n for Rts. of Citizens, Inc. v. Par. of St. Bernard*, 557 So. 2d 714, 717 (La. Ct. App. 1990). (Emphasis added.) Moreover, a public agency is not required to create a public record that is not already in existence in response to a request for specific information. *See Williams Law Firm*

law that required that this information be maintained as a public record.[120] Finally, regardless of whether the name of the perpetrator was set forth in a particular report or not, the reported violation of Title IX was lodged and readily susceptible to investigation, decision, and imposition of any discipline deemed appropriate by the Title IX Office.

**Louisiana Revised Statute 14:133**

Plaintiffs also claim Defendants, including Segar, filed false public records in violation of La. R.S. 14:133.[121] This allegation is not supported by the allegations set forth in the Amended Complaint. Plaintiffs do not allege that Segar forged any document nor that she wrongfully altered any document. Rather, they appear to contend that she completed and submitted a document containing a *false statement or false representation of a material fact*, which would be a violation of La. R.S. 14:133(A)(3). Yet, they do not point to any particular statement Segar made in a report that is either false or a false representation of a material fact. Again, criminal statutes must be strictly construed,[122] and the alleged omission of the assailant's name within the report is not itself a falsity nor does it misrepresent a material fact.

**Louisiana Revised Statute 14:129.1**

Plaintiffs next assert that Defendants, including Segar, violated the provisions of La. R.S. 14:129.1.[123] Significantly, Plaintiffs identify no one that Segar intimidated "by **threat of force or force** . . . with intent to influence his testimony, his reporting of criminal conduct, or his appearance at a judicial proceeding."[124] Similarly, Plaintiffs do not identify any witness that Segar "**injured or at attempt[ed] to injure** . . . **in his person or property** . . . with intent to influence his

---

*v. Board of Supervisors of Louisiana State University*, 03-0079 (La.App. 1 Cir. 4/2/04), 878 So.2d 557, 563; and *Nungesser v. Brown*, 95-3005 (La. 2/16/96), 667 So.2d 1036, 1037.

[120] *Gomez, supra*, 239.
[121] Doc. 22, ¶568 and 569; Doc. 103, p. 50.
[122] *Toups, supra*, at 1056.
[123] Doc. 22, ¶568 and 569; Doc. 103, p. 42.
[124] La. R.S. 14:129.1(A)(1). (Emphasis added.)

testimony, his reporting of criminal conduct, or his appearance at a judicial proceeding."[125] The sole would-be example of intimidation Plaintiffs rely upon to implicate Segar is the alleged statement she made to Plaintiff Lewis (*i.e.*, "That's what happens when the cops come to your apartment."),[126] which clearly is not criminal activity as contemplated by La. R.S. 14:129.1.

**Louisiana Revised Statute 14:230**

Plaintiffs assert that Defendants, including Segar, violated the provisions of La. R.S. 14:230 by committing the crime of money laundering,[127] whereby, "[i]t is unlawful for any person knowingly to do any of the" specific acts that are listed under Paragraph B thereof with regard to funds that are derived from criminal activity. Since the funds in question must be derived from *criminal activity*, it is detrimental to Plaintiffs' claim that the other predicate offenses discussed herein do not demonstrate violations of the specific criminal statutes relied upon by Plaintiffs.

Within their Louisiana Racketeering Act Case Statement, Plaintiffs speculate TAF used money from the purported "enterprise" to directly compensate certain Defendants such as Segar "to assist them in remaining complicit in furthering the purpose of the Enterprise."[128] Yet, they do not identify any funds that Segar obtained other than what she would have already been entitled to as part of her regular compensation for her employment with LSU. Plaintiffs set forth no factual allegations that she received any additional funds beyond that amount to further the purpose of the enterprise.

**Louisiana Revised Statute 14:120**

This predicate act is cited for the first time in Plaintiffs' Louisiana Racketeering Act Case

---

[125] La. R.S. 14:129.1(A)(2). (Emphasis added.)
[126] Doc. 103, p. 45.
[127] Doc. 22, ¶568 and 569; Doc. 103, p. 53.
[128] Doc. 103, p. 54.

Statement. [129] Essentially, Plaintiffs now allege that Segar committed the crime of corrupt influencing set forth in La. R.S. 14:120 by "accept[ing] anything of apparent present or prospective value . . . with the intention that [she would] corruptly influence the conduct of any of the persons named in R.S. 14:118 (public bribery) in relation to such person's position, employment, or duty." Plaintiffs do not identify anything of value that was provided to Segar aside from her salary and other compensation that she was already entitled to as part of her position and her employment with LSU. Plaintiffs also do not allege whom Segar intended to corruptly influence Therefore, Plaintiffs have failed to plead adequately the elements for this crime, which appears to have been only added recently as an afterthought. Accordingly, for the reasons stated above, Plaintiffs have failed to set forth a cognizable claim alleging civil violations of Louisiana's Racketeering Act.

## III.   CONCLUSION

For the reasons stated above, Segar contends that all claims asserted against her by Plaintiffs must be dismissed.

Respectfully submitted on December 8, 2021.

*Signature page follows*



[129] Doc. 103, p. 55.

**JEFF LANDRY,**
**ATTORNEY GENERAL**

**SHOWS, CALI & WALSH, L.L.P.**

/s/ Mary Ann White
John C. Walsh (LA 24903)
Jeffrey K. Cody (LA 28536)
Mary Ann White (LA 29020) (*Lead Counsel*)
628 St. Louis Street (70802)
P.O. Box 4425
Baton Rouge, LA 70821-4425
Tel: 225-346-1461
Fax: (225) 346-1467
john@scwllp.com
jeffreyc@scwllp.com
maryannw@scwllp.com
*Special Assistant Attorneys General*
***Counsel for Defendant, Miriam Segar***

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ Mary Ann White
Mary Ann White