## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ABBY OWENS, ET AL** | \* | **NO.: 3:21-cv-00242** |
| | \* | |
| **VERSUS** | \* | **JUDGE: WBV** |
| | \* | |
| **LOUISIANA STATE UNIVERSITY,** | \* | **MAGISTRATE JUDGE: SDJ** |
| **ET AL** | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF JOSEPH ALLEVA'S MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Defendant, Joseph "Joe" Alleva ("Alleva"), respectfully submits this Memorandum in Support of his Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6).

## I. BACKGROUND

Plaintiffs filed an original Class Action Complaint and Jury Demand, on April 26, 2021("Original Complaint"),[1] and an Amended Class Action Complaint and Jury Demand, on June 25, 2021 ("Amended Complaint"), asserting twenty (20) federal and state law claims against various combinations of the eighteen (18) named Defendants. The ten named Plaintiffs, many of whom have left LSU, waited until after the release of the Husch Blackwell Report, on March 3, 2021, to file their Original Complaint. The crux of their allegations is, from roughly 2014 to 2020, Louisiana State University ("LSU"), its employees, and third parties violated Plaintiffs' Title IX obligations and Constitutional Rights by failing to maintain an adequate reporting, investigation, and disciplinary system for sexual misconduct complaints.[2]  Alleva served as LSU's Athletic Director from July 1, 2008 through April 17, 2019.[3]  Alleva is no longer employed by LSU in any capacity.

---

[1] Rec. Doc. 1.
[2] Rec. Doc. 1, at ¶¶ 110-352.
[3] Rec. Doc. 22, at p. 8, ¶ 35.

## II.  ARGUMENT

**A.  Plaintiffs' Complaint Fails To Meet Pleading Requirements As To Alleva.**

Plaintiffs' Amended Complaint is 145 pages long and contains 580 separate paragraphs (excluding subparagraphs) and only contains 7 specific references to Alleva.[4]  Due to the lack of specific allegations against Alleva, Plaintiffs fail to satisfy the pleading requirements under Fed. R. Civ. Pro. 8 ("Rule 8").  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

The Complaint fails to adequately allege facts that would entitle Plaintiffs to relief against Alleva under Title IX, §§ 1983, 1985, and 1986, the Louisiana Racketeering Act ("LRA"), and state law tort claims.  Plaintiffs allege mere legal conclusions against Alleva with no factual allegations supporting those legal conclusions, and thus, fail to meet federal pleading requirements. *Id.* at 678.  The individual allegations of Plaintiffs Elizabeth Andries, Jane Doe and Sarah Beth Kitch do not contain any allegations that Alleva or the LSU Athletic Department was involved with the alleged mishandling of their reports of sexual misconduct; therefore, their claims do not comply with the requirements of Rule 8.  *Id.*  Plaintiff Corinn Hovis enrolled at LSU after Alleva was no longer the Athletic Director, and thus, her allegations do not comply with Rule 8.  To the extent the Court determines the allegations of these Plaintiffs (Andries, Jane Doe, Kitch, and Hovis), comply with Rule 8 with respect to Alleva, Alleva adopts the following arguments as to their claims.

---

[4] *See* Rec. Doc. 22, at pp. 8, 9 (¶ 35), 101 (¶ 413), 119 (¶ 492), 120 (¶ 492).  Four (4) of these seven (7) references to Alleva appear in the paragraph listing him as a named Defendant and alleging his position at LSU and domicile, which leaves only three (3) specific references to Alleva in the Amended Complaint.

### III.  FEDERAL CLAIMS

**A.  Title IX Does Not Provide A Cause Of Action Against Individuals (Counts I-V).**

Plaintiffs cannot assert claims against Alleva, either in his individual or official capacity, for alleged violations of Title IX.  It is well settled Title IX does not authorize suits against individuals, including school officials, as Title IX only applies to educational programs or activities that receive federal financial assistance.  *Alegria v. Williams*, 314 F. App'x 687, 690 (5th Cir. 2009); [5] *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 972 F. Supp. 2d 878, 889 (M.D. La. 2013).[6]  Accordingly, Plaintiffs' Title IX claims against Alleva should be dismissed, with prejudice.

**B.  Plaintiffs' Claims Brought Pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 (Counts VI-IX) Should be Dismissed.**

**1.  Plaintiffs' Cannot Assert §§ 1983, 1985, and 1986 Claims Against Alleva in his Official Capacity.**

Sovereign immunity bars Plaintiffs' First Amendment retaliation claim, Equal Protection and Procedural Due Process claims, and conspiracy to interfere with civil rights claim brought pursuant to §§ 1983, 1985, and 1986 against Alleva, in his official capacity as Athletic Director of LSU. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 68 (1989); *Kooros v. Nicholls State Univ.*, 379 Fed. Appx. 377, 378 (5th Cir. 2010); *Early v. S. Univ. & Agr. & Mech. Coll. Bd. of Sup'rs*, 252 F. App'x 698, 700 (5th Cir. 2007).[7]  Claims asserted pursuant to §§ 1983, 1985, and 1986 only apply to defendants recognized as "persons" under the statute.  The U. S. Supreme Court

---

[5] *See also, Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020).
[6] In *Minnis*, the Court summarily dismissed the plaintiff's Title IX claims against Alleva and several other individuals who are also named defendants in the instant lawsuit.
[7] *See also, Minnis*, 972 F. Supp. 2d at 887 (dismissing § 1983 claims against Alleva in his official capacity).

has expressly held that neither a state, nor its officials acting in their official capacity, are "persons" under § 1983.  *Will*, 491 U.S. at 71.[8]  Therefore, Plaintiffs' §§ 1983, 1985 and 1986 claims against Alleva in his official capacity must be dismissed.

> **2.    Plaintiffs Fail to Allege a First Amendment Retaliation Claim Against Alleva**.

Plaintiffs assert Alleva and the other Defendants retaliated against them for exercising their First Amendment right to Free Speech.[9]  However, Plaintiffs fail to make any specific allegations that Alleva violated their First Amendment rights in the Amended Complaint.[10]  Rather, Plaintiffs only generally allege the LSU Defendants' conduct caused a chilling effect on their free speech because the LSU Defendants: failed to investigate and report Plaintiffs' complaints of sexual assault and/or misconduct and shamed and laughed when Plaintiffs reported complaints of sexual misconduct; explained that Plaintiffs' made "the right choice" in not reporting the alleged sexual misconduct; told their teammates to avoid them after Plaintiffs made complaints of sexual misconduct; and provided insufficient training on the reporting rights of students.[11]  Plaintiffs' retaliation claim fails since the alleged actions or inactions of the LSU Defendants would not chill a person of ordinary firmness from continuing to exercise their free speech rights.[12]

---

[8] Because §§ 1985 and 1986 contain the same reference to "persons" as § 1983, the rationale of *Will* regarding § 1983 claims should apply with equal force to Plaintiffs §§ 1985 and 1986 claims.

[9] Rec. Doc. 22, at pp. 104-106, ¶¶ 423-432.

[10] To establish a First Amendment retaliation claim against a public official, a plaintiff must show: (1) he was engaged in constitutionally protected activity; (2) the official's actions caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing that activity; and (3) the official's adverse action was substantially motivated against plaintiff's exercise of constitutionally protected conduct.  *Johnson v. Bowe*, No. 19-40615, 856 Fed. Appx. 487, 492 (5th Cir. Apr. 12, 2021).

[11] Rec. Doc. 22, at p. 105, ¶ 427.

[12] *Colson v. Grohman*, 174 F.3d 498, 511-513 (5th Cir. 1999)(the alleged criticism of plaintiff, a criminal investigation, and false allegations about plaintiff were not sufficient retaliatory actions to chill a person of ordinary firmness).

Because the Amended Complaint does not allege Alleva had any face-to-face interactions with any of the Plaintiffs,[13] their claims against Alleva can only be predicated on his alleged inaction. However, Plaintiffs cannot assert a retaliation claim against Alleva based on his alleged "inaction." *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 305 (D. Mass. 2017).[14] Additionally, Plaintiffs fail to assert any alleged conduct by Alleva was substantially motivated by any purported protected speech -- requirement of a First Amendment retaliation claim. *Johnson v. Bowe*, No. 19-40615, 856 Fed. Appx. 487, 492 (5th Cir. Apr. 12, 2021). Moreover, contrary to the general allegations against Alleva in the Amended Complaint, the exhibits demonstrate that Alleva made concerted efforts to facilitate the LSU Athletics Department's compliance with Title IX.[15] For these reasons, Plaintiffs fail to state a First Amendment retaliation claim against Alleva under § 1983.

### 3.  Qualified Immunity Applies to the First Amendment Claims Against Alleva.

Alleva is entitled to qualified immunity on Plaintiffs' First Amendment retaliation claims against him in his individual capacity. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009); *Kooros*, 379 Fed. Appx. at 379.[16] Qualified immunity applies to government officials, who are sued in their individual capacity for civil damages for performing discretionary functions, and is grounded in the need to shield them from harassment, distraction, and liability for reasonable acts taken

---

[13] Rec. Doc. 22, at pp. 104-106, ¶¶ 423-432.

[14] Where the court found that retaliation by inaction is a novel, unsupported theory that fails to allege a cognizable First Amendment retaliation claim.

[15] *See* Rec. Doc. 22-1, at pp. 195-198 (Email from Joe Alleva to all Athletics Staff dated June 8, 2016); Rec. Doc. 22-1, at pp. 199-200 (Joe Alleva Memo to All Athletics Employees dated February 14, 2018). Alleva, on behalf of the Athletic Department, also engaged an outside consultant to provide Title IX training to students and employees. Rec. Doc. 22-1, at pp. 32.

[16] Whether qualified immunity applies should be decided at the earliest early stages in of litigation. *Pearson*, 555 U.S. at 231-232.

while performing their duties.  *Pearson*, 555 U.S. at 237.[17]  Alleva, at all relevant times, was acting within his course and scope of employment as LSU's Athletic Director; therefore, Alleva is entitled to qualified immunity for all of Plaintiffs' claims against him in his individual capacity.[18]

Plaintiffs bear the burden of proving qualified immunity is not applicable to Alleva. *Kooros*, 379 Fed. Appx. at 379.  To defeat qualified immunity, Plaintiffs must show there was a violation of a constitutional right, which was clearly established at the time of the alleged violation. *Id.*  A clearly established right means that existing precedent has placed the statutory or constitutional question *beyond debate.  Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011).[19] A government official like Alleva does not lose qualified immunity if a certain right is only established in the abstract.  *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 (2017).

Alleva's qualified immunity defense must be evaluated in light of the specific allegations made against him in the Amended Complaint.[20]  Because there are no specific allegations against Alleva relating to Plaintiffs' First Amendment retaliation claim in the Amended Complaint, Plaintiffs cannot meet their burden of overcoming Alleva's defense of qualified immunity; thus, their § 1983 claim against Alleva for First Amendment retaliation should be dismissed.  *Kooros*, 379 Fed. Appx. at 379.[21]

---

[17] In other words, qualified immunity gives government officials "breathing room" for potential mistakes in judgment so long as the officials conduct is reasonable and does not violate clearly established rights.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017).

[18] Rec. Doc. 22, at p. 11, ¶ 50.

[19] Plaintiffs bear the burden of showing a right is clearly established.  *Morgan*, 659 F.3d at 371–72.  Plaintiffs also bear the burden of proving that there must is sufficient causal connection between Alleva's conduct and the alleged constitutional violation.  *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

[20] Courts must evaluate whether qualified immunity applies as to each specific defendant.  *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007).

[21] Legal conclusions couched as factual allegations are not sufficient to overcome qualified immunity.  *Minnis*, 972 F. Supp. 2d at 884, 886-87 (where the court held plaintiff's allegations against LSU and several officials in the Athletic Department, including Alleva, for violation of his constitutional rights (when he was fired as a coach) were mere legal conclusions and were insufficient to overcome qualified immunity.  The same rationale applies to the instant case.

### 4.  Plaintiffs Fail to State a Claim for Denial of Equal Protection Against Alleva.

Plaintiffs' allegations related to their § 1983 claim for the denial of equal protection in violation of the Fourteenth Amendment are, generally, that Plaintiffs were[22] discriminated on the basis of sex because Defendants allegedly subjected them to a hostile environment and failed to appropriately respond to and investigate their reports of sexual misconduct perpetrated by LSU students.[23]  To plead a claim pursuant to § 1983 for denial of equal protection, Plaintiffs must allege that (1) they received different treatment than similarly situated individuals, and (2) the unequal treatment was a result of discriminatory intent.  *Cook v. Hopkins*, 795 F. App'x 906, 914 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2643 (2020).  To establish discriminatory intent, Plaintiffs must show a decision maker (Alleva) singled out a particular group or class of persons for disparate treatment, and this disparate treatment was selected for the purpose of causing adverse effects on the identifiable group.  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015).

Plaintiffs do not make any specific allegations against Alleva to support a § 1983 equal protection claim.  Additionally, Plaintiffs fail to assert any non-conclusory allegations to support they were treated differently than a similarly situated person on the basis of their sex, or that any alleged conduct by Alleva was motivated by a discriminatory intent.  Accordingly, Plaintiffs' allegations against Alleva neither comply with the pleading requirements of Rule 8 nor support a § 1983 equal protection claim against him; thus, their claim against Alleva should be dismissed.[24]

---

[22] Rec. Doc. 22, at pp. 106-108, ¶¶ 433-440.
[23] Rec. Doc. 22, at pp. 106-108, ¶¶ 433-440.  Rec. Doc. 22, at p. 107, ¶ 436.
[24] *See Ashcroft v. Iqbal*, 550 U.S. at 678.

**5.    Qualified Immunity Applies to Plaintiffs' § 1983 Equal Protection Claims Against Alleva.**

While Plaintiffs fail to make specific allegations against Alleva, their § 1983 equal protection claims are seemingly based on his alleged failure to comply with Title IX with respect to their reports of sexual misconduct by other LSU students. [25]  For the reasons outlined above in Section III(B)(3),[26] and for the reasons that follow, qualified immunity applies to Plaintiffs' § 1983 equal protection claims against Alleva in his individual capacity.  To overcome Alleva's defense of qualified immunity, Plaintiffs must show his conduct violated a clearly established right, and if so, that his conduct was unreasonable.  *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532–33 (5th Cir. 1997).

Plaintiffs fail to allege Alleva engaged in conduct that violated a clearly established right, which was not objectively reasonable.  Moreover, since Plaintiffs allege that they were entitled to certain relief as a result of the investigation and handling of their complaints of sexual misconduct perpetrated by other LSU students, their injuries were caused by private, third-party actors,[27] and their allegations are based on Alleva's alleged inaction.[28]  To the extent Plaintiffs are claiming the LSU students who perpetrated the alleged sexual misconduct received disproportionate treatment because of their status as high-profile college athletes, Plaintiffs' claims do not establish that Alleva's alleged conduct violated any clearly established right and was objectively unreasonable. *Williams v. Bd. of Regents of Univ. Sys. of Georgia,* 477 F.3d 1282, 1301 (11th Cir. 2007).[29]

---

[25] Rec. Doc. 22, at p. 107, ¶ 436.

[26] *Supra* at pp. 5-6.

[27] *Beltran v. City of El Paso*, 367 F.3d 299, 304 (5th Cir. 2004).

[28] There are no allegations that any of the Plaintiffs specifically interacted with Alleva.

[29] Defendants' "win at all cost" attitude in recruiting a basketball player with a history of criminal and disciplinary conduct did not violate the plaintiff's equal protection rights after the plaintiff was sexually assaulted by the player. *Williams*, 477 F.3d at 1301.

8

Plaintiffs' allegations related to their § 1983 Equal Protection claims cannot overcome Alleva's qualified immunity defense because: (1) Plaintiffs' own exhibits to the Amended Complaint establish Alleva issued several internal communications reminding all Athletic Department personnel to abide by the requirements of Title IX and LSU's policies and discouraged self-investigation by the staff;[30] (2) alleged Title IX violations cannot form the basis of a § 1983 claim for violation of the Equal Protection;[31] (3) any potential violation or noncompliance with Title IX does not rise to the level of a "clearly established" right required for defeating qualified immunity, and even government officials whose conduct violates a statutory or administrative rule do not lose the protections of qualified immunity;[32] and (4) allegations of negligence cannot form the basis of a constitutional violation.[33]  As Plaintiffs cannot meet their burden to defeat Alleva's qualified immunity defense, their claims against him should be dismissed, with prejudice.

**6. Plaintiffs Fail to State a Claim for Denial of Procedural Due Process.**

Plaintiffs' § 1983 claims for denial of procedural due process against Alleva, which arise from the alleged deprivation of their liberty and property interest in educational opportunities and benefits,[34] are insufficient to state a cognizable action.  Specifically, Plaintiffs allege Defendants denied them procedural due process by creating a practice/custom of deliberate indifference and cultivating a culture of silence by failing to report complaints of sexual discrimination, failing to initiate or conduct adequate investigations and grievance procedures under Title IX, and failing to

---

[30] See Rec. Doc. 22-1, at pp. 195-198 (Email from Joe Alleva to all Athletics Staff dated June 8, 2016); Rec. Doc. 22-1, at pp. 199-200 (Joe Alleva Memo to All Athletics Employees dated February 14, 2018).  Alleva's communications show he acted reasonably, and thus, that he is entitled to qualified immunity.
[31] Wilkerson v. Univ. of N. Texas, 223 F. Supp. 3d 592, 608 (E.D. Tex. 2016).
[32] Beltran, 367 F.3d at 308.
[33] Diaz ex rel. Diaz v. Mayor of Corpus Christi, 121 F. App'x 36, 39 (5th Cir. 2005).
[34] Rec. Doc. 22, at pp. 109-110, ¶ 446.

ensure Plaintiffs had equal access to educational opportunities, benefits, or grievance procedures.[35]

Plaintiffs further allege Defendants failed to provide them with adequate notice of the actions that would be taken in connection with their complaints of sexual misconduct.[36]  To properly state a claim for violation of procedural due process, Plaintiffs must allege they were deprived of a recognized liberty or property interest, which must be more than "an abstract need or desire" or a "unilateral hope." *Smith v. Davis*, 507 Fed. Appx. 359, 362 (5th Cir. 2013); *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  The deprivation of the property right by the government or government official must be intentional; mere negligence does not rise to the level of a violation of procedural due process.  *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986).

Plaintiffs do not allege how Alleva specifically denied them procedural due process in the Amended Complaint.  In addition, even though Plaintiffs fail to clearly articulate the liberty or property interest of which they have allegedly been deprived, Plaintiffs claim to have a loss of access to "educational opportunities" in the Amended Complaint.[37]  However, the "[Supreme] Court has not held [that] college academic decisions implicate property or liberty interests, entitling a student to constitutional due-process protections."  *Smith*, 507 Fed. Appx. at 362.[38] Therefore, Plaintiffs' § 1983 claims for denial of procedural due process fail at the pleading stage because they do not assert they were deprived of a recognized property interest.

Furthermore, Plaintiffs allegedly claim they were deprived of procedural due process when they were not given notice of the status of their sexual misconduct complaints.[39]  Plaintiffs do not

---

[35] Rec. Doc. 22, at p. 109, ¶ 444.

[36] Rec. Doc. 22, at p. 109, ¶ 445.

[37] Rec. Doc. 22, at pp. 109-110, ¶ 446.e

[38] This line of reasoning has also been extended to athletic scholarships.  *Holden v. Perkins*, 398 F.Supp.3d 16-23 (E.D. La. 2019).

[39] Rec. Doc. 22, at p. 109, ¶ 445.

have a property interest in the status of an ongoing investigation, particularly since Plaintiffs were not the persons under investigation or subject to any potential punishment. *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 495 (5th Cir. 2011);[40] *Bookenberger v. Terrebonne Par.*, No. CV 18-6373, 2019 WL 3858949, at *7 (E.D. La. Aug. 16, 2019).[41]

In sum, Plaintiffs' § 1983 claims for denial of procedural due process as to Alleva fail the pleading requirements because they do not make any specific allegations regarding the purported conduct by Alleva that denied them a property right without due process.[42] Furthermore, neither the alleged loss of educational opportunities and benefits, nor the purported failure to keep Plaintiffs apprised of the status of investigations into their complaints – the subjects of which were other LSU students (not Plaintiffs) – can serve as an actionable basis for their due process claims. Accordingly, Plaintiffs' § 1983 claims for denial of procedural due process against Alleva should be dismissed.

### 7. Qualified Immunity Applies to Plaintiffs' § 1983 Procedural Due Process Claims Against Alleva.

Plaintiffs' § 1983 claims for violation of procedural due process guaranteed by the Fourteenth Amendment, they assert against Alleva, in his individual capacity, are based on the alleged failure to properly investigate and respond to their sexual misconduct complaints of other LSU students.[43] Although Plaintiffs, again, fail to make any specific allegations against Alleva, their § 1983 procedural due process claims seemingly arise from (1) the alleged failure to comply

---

[40] In *Davis*, the Fifth Circuit found that the plaintiff did not have a property interest in an investigation or investigative procedures.

[41] In *Bookenberger*, the court rejected the notion that the plaintiff had a property interest in an investigation against the plaintiff after defendants failed to disclose the nature of the investigation and produce documents regarding it.

[42] Plaintiff Andries alleges she was issued a mutual no-contact directive without the opportunity to be heard. Rec. Doc., at p. 110, ¶ 447. However, she makes no allegations that Alleva or the LSU Athletic Department handled or was even aware of her complaint. Rec. Doc. 22, at pp. 48-56, ¶¶ 209-243.

[43] Rec. Doc. 22, p. 109, ¶ 444.

11

with Title IX regarding the reported sexual misconduct by other LSU students and/or (2) the alleged failure of certain LSU employees to provide updates on the status of disciplinary proceedings to certain Plaintiffs.

For the reasons outlined above in Section III(B)(3),[44] qualified immunity applies to Plaintiffs' § 1983 equal protection claims against Alleva in his individual capacity, which cannot be defeated because Plaintiffs cannot show Alleva violated an established right. The Supreme Court has never held that a person has a recognized property interest in college education and benefits. *Smith*, 507 Fed. Appx. at 362. In addition, there is no established right for Plaintiffs to receive notice of the actions that have or will be taken in connection with their complaints of sexual misconduct since they were not the subject of the investigations or potential punishment. *Davis*, 448 F. App'x at 495; *Bookenberger*, 2019 WL 3858949, at *7.[45] Even if Plaintiffs were able to adequately plead a denial of due process claim against Alleva, they cannot show Alleva violated a clearly established right; thus, Plaintiffs' § 1983 claims for denial of procedural due process should be dismissed.

### 8. Plaintiffs Fail to Allege a § 1985 Claim Against Alleva.

Plaintiffs' § 1985 claims against Alleva fail to meet the pleading requirements to state a claim. To establish a claim for conspiracy to deprive a person of civil rights under § 1985, Plaintiffs must prove: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving any person or class of persons of equal protections of the laws; (3) defendants acted in furtherance of the conspiracy; and (4) caused an injury to a person or property or caused a

---

[44] *Supra* at pp. 5-6.
[45] *See also Walsh v. Hodge*, 975 F.3d 475, 486–87 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1693 (2021)(finding the contours of university disciplinary proceedings are still in flux and not clearly established).

deprivation of any right of privilege afforded to citizens of the United States. *Hilliard v. Ferguson*, 30 F.3d 649, 652-653 (5th Cir. 1994). Plaintiffs must also prove that the conspiracy was motivated by a class-based animus. *Id.* at 653.

More than mere conclusory allegations that Defendants conspired to deprive the Plaintiffs of civil rights are required. *U. S. ex rel. Simmons v. Zibilich*, 542 F.2d 259, 262 (5th Cir. 1976). In addition, Plaintiffs cannot simply claim that Alleva was aware of the alleged constitutional violations, which they have not; rather, Plaintiffs must allege Alleva selected or affirmed a particular course of action because of the adverse effects it would have upon an identifiable and protected group. *Hagan v. Houston Indep. Sch. Dist.*, 51 F.3d 48, 53 (5th Cir. 1995). Plaintiffs' Amended Complaint fails to make any allegations whatsoever against Alleva that would support a plausible cause of action against him for under § 1985.

**9.   Qualified Immunity Applies to Plaintiffs' § 1985 Claims.**

Alleva is entitled to qualified immunity with respect to Plaintiffs' § 1985 claims. *Ziglar*, 137 S. Ct. at 1867.[46]  For the reasons outlined in Sections III(B)(3), III(B)(5), and III(B)(7),[47] qualified immunity bars Plaintiffs § 1985 claims against him for conspiracy to interfere with Plaintiffs' constitutional rights of free speech, equal protection, and due process.

**10.   The Intracorporate Doctrine Bars Plaintiffs' Claims Under § 1985.**

Plaintiffs' claims against Alleva fail because Alleva cannot conspire with fellow employees and officials of LSU for purposes of § 1985, which is an essential element of a cause of action for conspiracy to interfere with civil rights under § 1985. *U. S. ex rel. Simmons v. Zibilich*, 542 F.2d

---

[46] Plaintiffs generally allege all Defendants conspired to deprive them of their constitutional rights of free speech, equal protection, and due process.  Rec. Doc. 22, at p. 111, ¶ 452.
[47] *Supra,* at pp. 5-6, 8-9, and 11-12.

at 262. A single entity, whether a private or public, cannot conspire with its employees, and its employees cannot conspire among themselves for purposes of supporting a § 1985 claim. *Hilliard*, 30 F.3d at 653. In *Hillard,* the Fifth Circuit held a school board is a single entity for purposes of conspiracy claims brought pursuant to § 1985, and the same rationale applies equally to a university like LSU. *Id.*; *See also, Chambliss v. Foote*, 421 F. Supp. 12, 15 (E.D. La. 1976), *aff'd*, 562 F.2d 1015 (5th Cir. 1977). Since the individual Defendants were either employees or agents of LSU, they could not have conspired with each other for purposes of Plaintiffs' § 1985 claims.

**11.  Qualified Immunity Applies to Plaintiffs' 1986 Claims Against Alleva.**

Alleva is likewise entitled to qualified immunity protection with respect to Plaintiffs' § 1986 claims. *Early*, 252 Fed. Appx. at 700-701. For the reasons outlined above in Sections IV(B)(3), IV(B)(5), and IV(B)(7),[48] qualified immunity bars Plaintiffs § 1986 claims for negligent prevention of interference with Plaintiffs' constitutional rights of free speech, equal protection, and due process.

**12.  Without a Valid § 1985 Claim Against Alleva, There is No Viable § 1986 Claim.**

A violation of § 1986 is wholly dependent on a finding that there has been a § 1985 violation. *Ard v. Rushing*, 597 Fed. Appx. 213, 221 (5th Cir. 2014). For the same reasons addressed in Sections III(B)(8)-(10) regarding Plaintiffs' §1985 claims,[49] their § 1986 claims against Alleva in his individual capacity should be dismissed.

**13.  The Intracorporate Doctrine Bars Plaintiffs' § 1986 Claims.**

As with Plaintiffs' §1985 claims, the same prohibition on intracorporate conspiracies bars their claims under § 1986. *Martin*, 78 F. Supp. 3d at 328. Therefore, as addressed in Section

---

[48] *Supra* at pp. 5-6, 8-9, and 11-12.
[49] *Supra* at pp. 12-14.

III(B)(10),[50] Plaintiffs' § 1986 claims should be dismissed since they cannot allege a conspiracy among LSU officials and employees.

**14.    Plaintiffs' §§ 1983, 1985 and 1986 Claims are Time Barred.**

Plaintiffs' claims against Alleva are barred by the limitations period for tort claims under Louisiana law.  *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 604 (5th Cir. 1988); *Aucoin v. Kennedy*, 355 F. Supp. 2d 830, 844 (E.D. La. 2004).  The applicable limitations period for §§ 1983, 1985 and 1986 claims filed in Louisiana federal courts is one (1) year; however, federal common law governs when the running of the applicable time limitation is triggered.  *Auster Oil & Gas, Inc.*, 835 F.2d at 604; *Smith v. Humphrey*, 540 F. App'x 348, 349 (5th Cir. 2013); *Williams v. Post*, 751 Fed. Appx. 572 (5th Cir. 2019).  Under federal law, the limitations period for §§ 1983, 1985, and 1986 claims begins to run from the moment the plaintiff knows or has reason to know of the alleged injury.  *Id.*[51]

Plaintiffs all had sufficient knowledge of their claims as of the date they (1) received the final determination of their Title IX complaints (2018),[52] (2) purportedly left LSU because of the lack of support they received from the administration (2016/2017),[53] or (3) graduated from LSU

---

[50] *Supra* at pp. 13-14.

[51] The limitations period of § 1986 is not subject to tolling, and thus, is akin to a statute of repose.  *Bieros v. Nicola*, 839 F. Supp. 332, 337 (E.D. Pa. 1993).  The majority of district courts who have encountered this issue have found claims arising under §1986 not subject to tolling.  *Acosta-Felton v. Greinke*, No. 11-3103-RDR, 2013 WL 615469, at *4 (D. Kan. Feb. 19, 2013) (collecting cases).

[52] Rec. Doc. 22, at pp. 31 (¶ 133), 34 (¶¶ 145-153).  Plaintiff Richardson knew Sharon Lewis would not receive any discipline or sanction from LSU regarding her handling of complaints against John Doe and John Coe on or around November 18, 2018.  Rec. Doc. 22, at p. 64, ¶ 278.  Plaintiff Lewis' father sent a letter to the SEC, on October 18, 2018, to inform it that LSU had failed to take appropriate action regarding her complaints of sexual misconduct.

[53] Rec. Doc. 22, at p. 40, ¶ 174.  Plaintiff Robertson withdrew from LSU in September 2017 because of issues caused by sexual misconduct of another student and LSU's alleged failure to provide appropriate support and resources.  Rec. Doc. 22, at p. 43, ¶¶ 184-185.  Plaintiff Brennan left LSU in the fall of 2016 because of the Athletic Department's alleged lack of support. Rec. Doc. 22, at p. 46, ¶ 200.  Plaintiff Owens left LSU in March 2017 because of the alleged lack of support, resources, accommodations, or interim measures by LSU to ensure she could finish her degree.

(2019).[54]  As a result, the time limitation for Plaintiffs' claims expired well before the Original

Complaint was filed on April 26, 2021.[55]  Moreover, Alleva was no longer the Athletic Director

at LSU after April 17, 2019; thus, any cause of action alleged to arise arising after his departure as

Athletic Director would not apply to Alleva.[56]  Because Plaintiffs' alleged §§ 1983, 1985, and

1986 claims for First Amendment retaliation, Equal Protection, Procedural Due Process, and

conspiracy to interfere with civil rights all accrued prior to April 26, 2020, those claims are time

barred and should be dismissed.[57]

## V.  LOUISIANA RACKETEERING ACT CLAIMS.

### A.  Plaintiffs Fail to Plead A Plausible Claim Under the Louisiana Racketeering Act.

Plaintiffs' Louisiana Racketeering Act Case Statement ("Case Statement"), like their

Amended Complaint, fails to make specific allegations against Alleva in light of the serious nature

of the claims Plaintiffs assert against Alleva, i.e., that he has engaged in in criminal activity.[58]

---

[54] Rec. Doc. 22, at p. 69, ¶ 299.  Plaintiff Johnson graduated from LSU in Spring 2019 after allegedly being verbal abused by her tennis coaches.

[55] *See Stringer v. Town of Jonesboro*, 986 F.3d 502, 512–13 (5th Cir. 2021).  Plaintiffs allege they left LSU because they did not feel they received fair or appropriate support or resources from LSU.  Plaintiff Richardson alleges, as part of her procedural due process claim, that she was not informed of the status of the Title IX investigation and subsequent punishment imposed on Defendant Lewis, which concluded in November 2018.  Rec. Doc. 22, at p. 35, ¶¶ 150-152. Plaintiff Robertson alleges she was not informed of other sexual complaints filed against John Doe. Rec. Doc., at p. 39, ¶ 171.  Plaintiff Brennan does not make any specific allegations of denial of due process in her allegations. Rec. Doc. 22, at p. 41-45, ¶¶ 177-191.  Plaintiff Owens left LSU in March 2017 because of the alleged mishandling of her complaints.  Rec. Doc. 22, at p. 46, ¶ 200.  Plaintiff Lewis alleges she was not informed of the status of John Coe's mandatory counseling (Rec. Doc. 22, at p. 59, ¶ 256), and was put on academic probation for a violation of LSU's residential life policy in June 2018.  Rec. Doc. 22, at p. 61, ¶ 264.  Plaintiff Johnson does not make any allegations pertaining to a denial of procedural due process.

[56] Including Plaintiff Hovis' allegations, all of which occurred after Alleva was no longer Athletic Director at LSU. Rec. Doc. 22, at pp. 75-79, ¶¶ 322-339.

[57] Plaintiffs' Original Complaint was filed on April 26, 2021.  *See* Rec. Doc. 1.

[58] Rec. Doc. 103.  A civil RICO/racketeering lawsuit is quasi-criminal in nature and should not be brought without a sufficient basis, both legal and factual, because such claims inevitably stigmatize the defendants.  Therefore, to protect innocent parties, courts should dismiss frivolous RICO claims at the earliest possible stage of litigation.  *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

Plaintiffs' generalized accusations against Alleva run afoul of the Court's Louisiana Racketeering Act Order ("LRA Order") and federal pleading requirements, and thus, should be dismissed.[59]

Because the LRA is modeled after the federal RICO statutes, federal cases are persuasive authority for interpreting the Louisiana's RICO statutes. *State v. Nine Sav. Accts.*, 553 So.2d 823, 825 (La. 1989). The LRA provides a cause of action for individuals harmed by four (4) prohibited activities in La. R.S. 15:1353:

(1) receiving any proceeds derived from a ***pattern of racketeering activity*** and investing those proceeds to acquire interest in any immovable property, establishment, or operation of an enterprise.
(2) knowingly acquire or maintain any interest in or control of an enterprise or immovable property through a ***pattern of racketeering activity***;
(3) knowingly conduct or participate in an enterprise through a ***pattern of racketeering activity;*** and
(4) conspiring or attempting to violate the provisions of Subsections A, B, or C.[60]

Plaintiffs have alleged Alleva and the other Defendants have violated all four (4) provisions of La. R.S. 15:1353.[61] For the reasons addressed below, all of Plaintiffs' racketeering claims against Alleva fail.[62]

To establish their LRA claims against Alleva, Plaintiffs must show that he is (1) a person who engages in (2) a pattern of racketeering activity[63] and is (3) connected to the acquisition,

---

[59] Plaintiffs' Case Statement is subject to the pleading requirements under the Federal Rules of Civil Procedure including the heightened pleading requirements for allegations pertaining to fraudulent conduct. *Wang v. Ochsner Med. Ctr.-Kenner, L.L.C.*, No. CV 17-5134, 2017 WL 6055167, at *12 (E.D. La. Dec. 7, 2017).
[60] La. R.S. 15:1553(A) – (D).
[61] Rec. Doc. 22 at p. 137, ¶ 563.
[62] Plaintiffs' claim for conspiracy to commit racketeering activity pursuant to La. R.S. 15:1353(D) fails if the Plaintiffs cannot state a substantive violation under La. R.S. 15:1353(A)-(C). *Wang*, 2017 WL 6055167, at *15.
[63] "Racketeering activity" is defined as committing, attempting, conspiring to commit an enumerated crime or soliciting, coercing or intimidating another person to commit crimes specifically enumerated in La. R.S. 15:1352. "Pattern of Racketeering Activity" means committing, attempting to commit, conspiring to commit two or more of predicate acts, or soliciting, coercing, or intimidating another person to commit the predicate acts. La. R.S. 15:1352.

establishment, conduct, or control of an enterprise.[64]  Plaintiffs cannot rely on conclusory allegations that Alleva violated the LRA or lump him together with allegations made against the other Defendants; rather, they must make specific allegations that Alleva, himself,  engaged in the criminal activity expressly enumerated in La. R.S. 15:1352.  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019).   However, Plaintiffs fail to allege how Alleva, himself, participated in, controlled, or derived proceeds or benefits from a pattern of racketeering activity; or how he allegedly invested those proceeds/benefits in an enterprise; or how he allegedly conspired to engage in a pattern of racketeering activity.

**B.  Sovereign and Qualified Immunity Applies to Plaintiffs' LRA Claims.[65]**

Qualified immunity applies to Plaintiff's state law racketeering or RICO claims brought against Alleva in his individual capacity.  *Brown v. Nationsbank Corp.*, 188 F.3d 579, 588 (5th Cir. 1999).  Qualified immunity must be evaluated as to each predicate act, utilizing the two-part qualified immunity analysis, to determine whether a clearly established constitutional or statutory right was violated, and if so, whether Alleva's conduct was "objectively reasonable."  *Id.*  Plaintiffs have the burden of proving qualified immunity does not apply to Alleva's alleged criminal conduct with respect to each predicate act.  *Id.*

None of the alleged predicate acts by Alleva constitute a violation of a clearly established constitutional or statutory right and none of Plaintiffs' allegations establish that he acted unreasonably.  Furthermore, Plaintiffs must show Alleva possessed the requisite criminal intent

---

[64] *CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 2019-0745 (La. App. 1 Cir. 7/2/19), *writ denied*, 2019-01228 (La. 11/19/19), 282 So. 3d 1069.  "Enterprise" means any individual, sole proprietorship, partnership, corporation or other legal entity, or any association, or group of individuals associated in fact.  La. R.S. 15:1352(B).
[65] Sovereign immunity bars Plaintiffs' LRA claims against Alleva.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984).

for each predicate act, which they have not done.[66]  Thus, Plaintiffs' LRA claims fail at the pleading stage.

### C. Plaintiffs Lack Standing to Assert LRA Claims Against Alleva.

#### 1.    Plaintiffs' Injuries Were not Caused by the Alleged Predicate Acts.

Plaintiffs do not have standing to sue under the LRA because their purported injuries were not proximately caused by the alleged predicate acts committed by Alleva or the other Defendants. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998).  Rather, any such injuries were caused by the intentional acts perpetrated by third persons who are not parties to the instant litigation; thus, Plaintiffs cannot state a claim under the LRA.[67]  Plaintiffs fail to offer anything other than conclusory allegations to support that the alleged predicate acts of public intimidation and retaliation, intimidating or injuring an impending witness, injuring public records, filing or maintaining false records, money laundering, and corrupt influencing were the proximate cause for Plaintiffs' purported injuries.[68]

For Plaintiffs to have standing to assert a LRA claim, they must satisfy both the injury and causation elements.  *Price*, 138 F.3d at 606.[69]  Plaintiffs must plausibly allege the RICO violation proximately caused the plaintiff's injuries; that is, they must demonstrate the alleged violation directly led to the injuries.  *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, No. 19-50638,

---

[66] *Foster v. Fisher*, 53-205, p. 16 (La. App. 2 Cir. 2/5/20); 290 So.3d 1215, 1226, *reh'g denied* (Feb. 27, 2020), *writ denied*, 2020-00481 (La. 6/22/20); 297 So.3d 761.

[67] Rec. Doc. 103, at pp. 32-33, containing allegations of sexual misconduct against John Moe and John Doe.

[68] Rec. Doc. 22, at p. 139, ¶ 568.  Plaintiffs attempt to add the additional predicate act of corrupt influencing in violation of La. R.S. 14:120 in their Case Statement.  Alleva objects to any attempt by Plaintiffs to expand the allegations of their Amended Complaint without seeking leave of Court to file a second amended complaint.

[69] Courts use a stricter analysis when assessing whether a plaintiff has standing to sue under RICO because of the difficulty to ascertain remote or indirect damages.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006).

2020 WL 7486307, at *3 (5th Cir. Dec. 21, 2020).[70]  In evaluating whether the alleged conduct

was the proximate cause of the injuries, the court's focus turns to the directness of the relationship

between the conduct and the harm.  *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 12

(2010).  Thus, if any alleged conduct against Defendants did not directly cause the harm, Plaintiffs

cannot sustain a RICO/racketeering claim.  *Id.*; *Molina-Aranda*, 2020 WL 7486307, at *3.

A causal link that is too remote, purely contingent, or indirect is insufficient to constitute a

RICO injury, and fail to state a claim under RICO and the LRA.  *Hemi Grp.*, 559 U.S. at 9-10; *In

re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 802 F. Supp. 2d

725, 728 (E.D. La. 2011).  Likewise, damage to a plaintiff's speculative subjective expectations

cannot form the basis of a RICO/racketeering claim.  *Gil Ramirez Grp., L.L.C. v. Houston Indep.

Sch. Dist.*, 786 F.3d 400, 409–10 (5th Cir. 2015); *Price*, 138 F.3d at 607; *In re Taxable Mun. Bond

Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995).[71]  Therefore, a claim that must rely on a "domino

effect" of causation fails to state a RICO/racketeering claim.  *In re Oil Spill by Oil Rig Deepwater

Horizon in Gulf of Mexico, on Apr. 20, 2010*, 802 F. Supp. 2d at 729.

Plaintiffs' theory of causation relies on the premise that Defendants' failure to properly

report and discipline other LSU students who allegedly engaged in the sexual misconduct reported

by Plaintiffs led to a wide variety of physical and emotional damages.[72]  However, Plaintiffs'

argument ignores that it was the misconduct of third-parties, not Defendants, that caused Plaintiffs'

---

[70] "The proximate causation standard in this context is not one of foreseeability; instead, the plaintiff must demonstrate that the alleged violation 'led directly' to the injuries."

[71] Injury to an intangible property interest, even if very valuable, is not the type of injury that RICO was meant to compensate.

[72] Rec. Doc. 22, at pp. 142-143, ¶ 589(a)-(n).  The injuries suffered by specific Plaintiffs all arise from an underlying personal injury.  Rec. Doc. 22 at, Richardson, pp. 36-37, ¶ 155; Robertson, p. 41, ¶ 176; Brennan, pp. 44-45, ¶¶ 191-192; Owens, p. 48, ¶ 208; Lewis, p. 65, ¶ 282; and Johnson, pp. 69-70, ¶¶ 301.  *See also* Rec. Doc. 103, at pp. 36-40.

injuries.  Because Plaintiffs' injuries and damages were not caused by the alleged predicate acts, their claims are not recoverable under the LRA and should be dismissed.  *Cullom v. Hibernia Nat. Bank*, 859 F.2d 1211, 1216 (5th Cir. 1988).[73]

### 2. Damages For Personal Injuries are Not Recoverable Under the LRA.

Since Plaintiffs' alleged injuries and damages are related to or arise from personal injuries caused by the conduct of third-parties, they likewise do not have standing to assert claims under the LRA against Alleva.  *Vickers v. Weeks Marine, Inc.*, 414 F. App'x 656, 657 (5th Cir. 2011).[74] Damages for or arising out of personal injuries are not recoverable under the LRA.  *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001); *Zilbert v. Sasol N. Am., Inc.*, No. 2:11 CV 00862, 2012 WL 1950144, at *2 (W.D. La. May 29, 2012) (interpreting the LRA).  Furthermore, pecuniary damages that closely relate to or arise out of personal injuries are not recoverable racketeering claims.  *Vickers*, 414 F. App'x 656.[75]  The types of damages courts have found to be closely associated with personal injuries, and thus, not recoverable under RICO, include: expenses incurred to combat drug, alcohol, and gambling addictions related to sexual assault, psychological counseling/therapy, loss of future earning capacity, medical expenses,[76] and loss of opportunity.[77] Furthermore, Plaintiffs' damages are not concrete financial losses, and thus, not recoverable under

---

[73] Where the Fifth Circuit expressly held a plaintiff lacked standing under RICO for damages related to his loss of employment because he did participate in the alleged RICO scheme.  The loss of an athletic scholarship and derivative opportunities and benefits are not recoverable under RICO.  *Bowen v. Adidas Am., Inc.*, No. CV 3:18-3118-JFA, 2021 WL 2141724, at *4 (D.S.C. May 26, 2021).

[74] *See Vickers v. Weeks Marine, Inc.*, No. CV 09-6230, 2010 WL 11570439, at *2 (E.D. La. Apr. 7, 2010).

[75] *In re Vioxx Prod. Liab. Litig.*, No. MDL 1657, 2007 WL 3104220, at *1 (E.D. La. Oct. 23, 2007) (physical, emotional, and economic damages related to injuries were not recoverable under RICO).

[76] *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 329-30 (E.D.N.Y. 2012)(where plaintiffs brought RICO claims against school officials who allegedly covered up or failed to properly investigate claims of sexual assault to students by the football coach); *Borskey v. Medtronics, Inc.*, No. CIV. A. 94-2302, 1995 WL 120098, at *3 (E.D. La. Mar. 15, 1995), *aff'd in part*, 105 F.3d 651 (5th Cir. 1996); *Gaines*, 965 F. Supp. at 890(lost opportunity to play in the NFL and lost educational opportunity not recoverable).

[77] Damages for lost opportunity are too speculative to confer a plaintiff standing to assert a RICO claim.  *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d at 523; *Zilbert*, 2012 WL 1950144, at *3.

the LRA as they would be speculative and difficult to quantify. *Scheppegrell v. Hicks*, No. CV 15-5794, 2016 WL 3020884, at *4 (E.D. La. May 26, 2016).

As evidenced in the Amended Complaint and Case Statement, Plaintiffs' damages arise from physical, emotional, and economic injuries related to incidents of sexual misconduct perpetrated by third-parties who are not parties to this lawsuit. Therefore, under clearly established precedent, Plaintiffs' injuries fail to confer standing to them to assert LRA claims against Alleva.

### D. Plaintiffs Fail to Allege any Legally Cognizable Enterprise.

An "enterprise" must be an entity that is separate from the pattern of activity in which it engages. *Sandifer*, 249 So.3d at 156; *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).[78] Alleging an enterprise was created by the racketeering activity, itself, is not sufficient to plead that the enterprise is separate and distinct from the pattern of racketeering activity to state a cognizable LRA claim. *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015).

Plaintiffs fail to differentiate the alleged "pattern of racketeering activity" from the purported "association-in-fact" enterprise.[79] Plaintiffs assert the enterprise was created by the racketeering activity, consisting of the alleged predicate acts of public intimidation and retaliation, intimidating or injuring an impending witness, injuring public records, filing or maintaining false records, money laundering, or corrupt influencing.[80] Plaintiffs further assert that the predicate acts were associated with "… operating a state university with a competitive athletics program and athletics booster organization."[81] Claiming that the predicate acts were committed during the

---

[78] The plaintiff alleging RICO violations must do more than allege a legal entity committed predicate acts through its agent or agents during the course of its business.
[79] Rec. Doc. 103, at p. 60, § 7.
[80] Rec. Doc. 22, at p. 139, ¶ 568.
[81] Rec. Doc. 103, at p. 60, § 8.

operation of Defendants' business does not sufficiently allege a RICO/racketeering claim as there is no distinction between the RICO person and RICO enterprise. *Whelan*, 319 F.3d at 230. Since Plaintiffs' have failed to distinguish that the purported "enterprise" is separate and distinct from the alleged "pattern of racketeering activity," they have failed to satisfy the requirements to state a claim under the LRA.

### E. Plaintiffs' Allegations do not Plead a Threat of Continued Racketeering Activity.

Plaintiffs cannot establish a racketeering claim against Alleva because they cannot demonstrate a "pattern of racketeering activity" as required by the LRA. *Meadaa v. K.A.P. Enterprises*, No. CIV.A. 09-1211, 2014 WL 6801636, at *6 (W.D. La. Dec. 1, 2014). To show a pattern of racketeering activity, Plaintiffs must be able to establish the relatedness between Alleva's alleged criminal (predicate) acts and a threat of continued racketeering activity. *Id.* Indeed, relatedness and continuity have been called the critical features of a pattern of racketeering activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Plaintiffs merely allege separate and independent incidents of alleged criminal conduct; thus, their allegations do not satisfy the relatedness and continuity requirements necessary to support a claim under the LRA. Furthermore, LSU has made a concerted effort to remedy any alleged mishandling of reports of sexual assault, and therefore, there is no threat of continuing racketeering activity.[82]

### F. Plaintiffs Fail to Allege the Required Predicate Acts for their LRA Claims.

Plaintiffs allege that Defendants engaged in the predicate acts of public intimidation and retaliation, intimidating or injuring an impending witness, injuring public records, filing or

---

[82] *See Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122-123 (5th Cir. 1996).

maintaining false records, money laundering, and corrupt influencing.[83]  For each of the alleged

predicate acts, Plaintiffs must establish the requisite element of criminal intent even when pursuing

civil RICO claims.[84]  Plaintiffs fail to allege any affirmative *criminal* conduct on behalf of Alleva

that would indicate he violated any of the alleged predicate acts.  Even taking their allegations as

true that Alleva allowed the predicate acts to occur, passive acquiescence is insufficient to plead a

racketeering/RICO claim.  *Wang v. Ochsner Med. Ctr.-Kenner, L.L.C.*, No. CV 17-5134, 2017

WL 6055167, at *11 (E.D. La. Dec. 7, 2017).

     While Plaintiffs allege Alleva participated in the predicate acts of public intimidation and

retaliation,[85] intimidating or injuring an impending witness,[86] injuring public records,[87] filing or

maintaining false public records,[88] money laundering,[89] and corrupt influencing,[90] their claims fall

woefully short of plausibly pleading that he participated in any of the alleged predicate acts as

required by federal pleading requirements.  *Ashcroft*, 556 U.S. at 678.  Plaintiffs do not contend

that Alleva engaged in any of the requisite criminal conduct in order to influence the actions of

---

[83] Rec. Doc. 22, at p. 139, ¶ 568; Rec. Doc. 103, at p. 55.

[84] *Foster*, 290 So.3d at 1226.

[85] Rec. Doc. 103, at pp. 40-42.  The crime of public intimidation requires a defendant to use violence, force, extortionate, threats, or true threats on a public officer or employee to influence a course of conduct. La. R.S. 14:122. The U.S. Fifth Circuit has held that La. R.S. 14:122 is unconstitutionally overbroad insofar as it criminalizes "threats." *Seals v. McBee*, 898 F.3d 587, 600 (5th Cir. 2018), as revised (Aug. 9, 2018).

[86] Rec. Doc. 103, at pp. 42-47.  The crime of intimidating or injuring an impending witness involves a defendant's use of force or threat of force against a witness with the intent to influence a witness' reporting of criminal conduct or testimony at a judicial proceeding. La. R.S. 14:129.1.

[87] Rec. Doc. 103, at pp. 47-50.  The crime of injuring public records involves a defendant's intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record that is required to be kept by positive law. La. R.S. 14:132.

[88] Rec. Doc. 22, at p. 139, ¶ 568; Rec. Doc. 22, at pp. 50-52.  The crime of filing or maintaining false records punishes individuals for filing or maintaining any forged, wrongfully altered, or document containing a false statement or representation of material fact. La. R.S. 14:133.

[89] Rec. Doc. 22, at p. 139, ¶ 568; Rec. Doc. 22, at pp. 53-55.  Money laundering requires obtaining money from criminal activity. La. R.S. 14:230.

[90] Rec. Doc. 103, at p. 56.  Plaintiffs attempt to expand their pleadings by adding the predicate act of corrupt influencing. Rec. Doc. 103, at p. 56.  Alleva objects to any expansion of Plaintiffs' allegations in the Amended Complaint without seeking leave of Court to file a second amended complaint.

any LSU Athletic Department personnel or other public employee.[91]  Plaintiffs do not make any allegations regarding any interactions between any of them and Alleva that would support a claim of injuring or impeding a witness.[92]  Plaintiffs do not assert Alleva intentionally removed, mutilated, destroyed, altered, falsified, concealed, filed or maintained any document as to plausibly plead that he participated in the predicate acts of injuring public records or filing or maintaining false records.[93]  Although Plaintiffs contend Defendants received funds from third parties because of the success of LSU's football program in their Amended Complaint and Case Statement, they fail to allege how any such funds were "derived" from any criminal activity;[94]  thus, they have failed to plausibly plead Alleva engaged in the predicate act of public intimidation and retaliation to support a claim under the LRA.

### G.  Plaintiffs' Claim under La. R.S. 15:1353(A) Against Alleva Fails.

The Louisiana Supreme Court has held that La. R.S. 15:1353(A) requires more than receipt of funds from racketeering activity; rather, it requires investment of those funds in property or in support of the operation of the enterprise.  *State v. Nine Sav. Accts.*, 553 So.2d at 825.  Plaintiffs' allegations against Alleva fail to plausibly assert any details to show how he purportedly invested any money derived from a pattern of racketeering activity.  Instead, they merely claim Alleva used and invested funds created by the "enterprise" to operate and establish the "enterprise" through his

---

[91] Plaintiffs merely contend Alleva took part in creating a culture that disincentivized public (LSU) employees from reporting allegations of sexual misconduct. Rec. Doc. 103, at p. 41.  Plaintiffs' allegations are refuted by Exhibit A to their Amended Complaint, which shows Alleva requested that all Athletic Department employees use the proper channels for reporting Title IX complaints. Rec. Doc. 22-1, at pp. 195-198; Rec. Doc. 22-1, at pp. 199-200.
[92] Rec. Doc. 103, at pp. 42-47.
[93] Plaintiffs only allegations against Alleva for this predicate act is that he, along with other "high-ranking members" of the purported "enterprise," trained lower-ranking members to keep inadequate records. Rec. Doc. 103, at p. 48.  To the extent Plaintiffs attempt to plead that public records contained allegedly fraudulent information, Plaintiffs must comply with the pleading requirements of F.R.C.P. 9.  *Ashcroft*, 556 U.S. at 687.
[94] Rec. Doc. 103, at pp. 53-55.

control of the LSU Athletic Department, without asserting how the money allegedly derived from the criminal activity was invested into the "enterprise."[95]  Plaintiffs' allegations are conclusory and mere recitations of the bare elements of their cause of action, which is insufficient under Rule 8 to state a plausible LRA violation.  *Ashcroft*, 556 U.S. at 687.

**H.  Plaintiffs Fail to Allege How Alleva Controlled the So-Called "Enterprise."**

Plaintiff's allegations regarding Alleva's interest and control of the so-called "enterprise" are wholly contrary to their own exhibits to the Amended Complaint and are insufficient to support a claim under La. R.S. 15:1353(B).[96]  Plaintiffs' contention that Alleva used his position as Athletic Director to "… stymie the creation of a compliant Title IX system at LSU…" is contradicted by the Husch Blackwell Report, which is attached as an exhibit to Plaintiffs' Amended Complaint.[97] The Husch Blackwell Report demonstrates that Alleva made numerous attempts to facilitate the Athletic Department's compliance with LSU's reporting policies, and instructed Athletic Department employees not to self-investigate Title IX complaints.

Plaintiffs have repeatedly failed to show how Alleva could "control" the alleged enterprise while, at the same time, instructing LSU employees to behave in a manner that is in direct conflict with the alleged purpose of the enterprise.  Accordingly, Plaintiffs' claims against Alleva under La. R.S. 15:1353(B) should be dismissed.

---

[95] Rec. Doc. 103, at p. 12, § F(i).
[96] Plaintiffs allege Alleva had control of the enterprise by allowing TAF to fund inadequate Title IX training, paying LSU employees in a manner that influenced their reporting of sexual misconduct, allowing TAF to supply incentive-based compensation to LSU employees based on the athletic team's performance, and "… making available things of value to be used for the purpose of running the Enterprise."  Rec. Doc. 103, at pp. 12-13.
[97] Rec. Doc. 22-1, at pp. 195-198; Rec. Doc. 22-1, at pp. 199-200.

**I. Plaintiffs Fail to Plead a Claim for Violation of §1353(C).**

For purposes of La. R.S. 15:1353(C), the alleged "enterprise" must be separate and distinct from the alleged RICO person, which is the defendant in a civil or criminal racketeering action. *Crowe v. Henry*, 43 F.2d 198, 204 (5th Cir. 1995). The "person-enterprise" distinction cannot be satisfied by alleging officers or employees of a corporation committed predicate acts in the course of its own business. *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 230 (5th Cir. 2003). Plaintiffs allege the "association-in-fact" enterprise consisted of LSU, TAF, and the individually named Defendants; however, LSU, TAF and the individual Defendants cannot be the "RICO persons" *and* the RICO "enterprise."[98] In addition, Plaintiffs allege "[e]ach member of the Enterprise is affiliated with or employed by LSU and TAF." [99] Under La. R.S. 15:1353(C), the defendant or RICO person must be "employed by or associated with" the *enterprise*. Because Plaintiffs' Amended Complaint and Case Statement fail to properly identify an enterprise separate and apart from the alleged RICO persons, i.e., the Defendants, and fail to allege that Defendants are affiliated with or employed by the "enterprise," their claims under La. R.S. 15:1353(C) should be dismissed.

**J. Plaintiffs' Fail to Plead Alleva Conspired to Violate the LRA.**

To sufficiently plead Alleva conspired to violate the LRA, Plaintiffs must allege he agreed with one or more persons to violate the substantive provisions of the LRA and agreed with the overall objective of the racketeering activity. *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015). Simply alleging an agreement existed is not sufficient to properly plead an actionable conspiracy claim under La. R.S. 15:1353(D). *Martin v. Magee*, No. CIV.A. 10-2786, 2011 WL 2413473, at *8-9 (E.D. La. June 10, 2011). Plaintiffs'

---

[98] Rec. Doc. 103, at p. 58, § 6(i).
[99] Rec. Doc. 103, at p. 59.

contention that Alleva conspired with the other Defendants likewise fails because Plaintiffs cannot establish an actionable claim under La. R.S. 15:1353(D), if they have not properly plead a violation of La. R.S. 15:1353(A)-(C).  Moreover, any alleged acts that Plaintiffs claim were done in furtherance of the conspiracy must also violate the LRA to be actionable; that is, such acts must be "independently wrongful" under the LRA.  *Beck v. Prupis*, 529 U.S. 494, 505 (2000).[100] Because Plaintiffs have failed to sufficiently plead violations of the LRA, their claims against Alleva under La. R.S. 15:1353(D) should be dismissed.

## V. STATE LAW TORT CLAIMS

In the Amended Complaint, Plaintiffs assert state law tort claims of negligence, negligent supervision, negligent infliction of emotional distress, intentional infliction of emotional distress, civil conspiracy,[101] and unjust enrichment (collectively "State Law Tort Claims"),[102] which should be dismissed, with prejudice as to Alleva.

### A.  Plaintiffs Fail to Make Specific Allegations Against Alleva on the Tort Claims.

Plaintiffs' claims for negligent infliction of emotional distress and intentional infliction of emotional distress fail at the pleading stage as Plaintiffs' fail to allege extreme and outrageous conduct on behalf of Alleva, which is a required element of each claim.  *Holden v. Perkins*, No. CV 20-2143, 2020 WL 6544174, at *3-4 (E.D. La. Nov. 6, 2020).[103]  Plaintiffs' Amended Complaint fails to make any allegations that Alleva engaged in extreme and outrageous conduct

---

[100] To state a cause of action for a RICO conspiracy, Plaintiffs must sufficiently allege that their injuries were caused by the predicate acts.  Furthermore, to the extent Plaintiffs attempt to plead that Alleva was negligent, civil conspiracy cannot be premised on negligence.  *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 526 (5th Cir. 2016).

[101] A claim for civil conspiracy is not actionable without a separate underlying tort claim.  *Ross v. Conoco, Inc.*, 02-0299, pp. 8-9 (La. 10/15/02) 828 So.2d 546, 552.

[102] Rec. Doc. 22, at pp. 116-142, ¶¶ 479-587.

[103] Extreme and outrageous conduct is a high threshold that cannot be plead generally, and insults, indignities, threats, and annoyances do not meet the standard for extreme and outrageous conduct.  *Holden*, 2020 WL 6544174 at *4.

toward the Plaintiffs or intended to cause them severe emotional distress, thus, fails to state a claim against Alleva for intentional infliction of emotional distress or negligent infliction of emotional distress.  Likewise, Plaintiffs' claim for unjust enrichment fails because Plaintiffs cannot have a cause of action for unjust enrichment under Louisiana law if there are *any* other available remedies at law; [104] thus, it should be dismissed.[105]

**B. Plaintiffs' State Law Tort Claims are Subject to Immunity or are Time Barred.**

**1. Sovereign and Discretionary Immunity Bars Plaintiffs' State Law Tort Claims Against Alleva.**

To the extent Plaintiffs attempt to plead tort claims against Alleva in his official capacity, those claims are barred by sovereign immunity and should be dismissed.[106]  In addition, as an official of a public university, Alleva also enjoys tort immunity from claims arising under Louisiana law for the exercise or performance of his duties as LSU's Athletic Director.  La. R.S. 9:2798.1(B).  Under the discretionary function doctrine, La. R.S. 9:2798.1, governmental decision makers exercising discretionary functions are immune from suit to avoid chilling the legislative discretion in policy formation by imposing tort liability for discretionary decisions.[107]  Any decisions Alleva made regarding the Athletic Department's handling of Title IX claims and supervision of Athletic Department employees are subject to the doctrine of discretionary immunity.  Since Plaintiffs fail to make any specific allegations as to Alleva's interactions with

---

[104] Alleva does not concede that Plaintiffs have properly pled any of their claims against Alleva; however, the failure to properly pursue another available, alone, precludes a claim for unjust enrichment.  *Walters*, 38 So.3d at 244.
[105] *Walters v. MedSouth Rec. Mgmt.*, *LLC*, 2010-0353, p. 244 (La. 6/4/10); 38 So.3d 243, 244.
[106] *Pennhurst*, 465 U.S. at 121.
[107] *Sarasino v. State Through Dep't of Pub. Safety & Corr.*, 16-408, p. 7 (La. App. 5 Cir. 3/15/17); 215 So.3d 923, 928.  The Louisiana Supreme Court has held that discretionary immunity applies if the government official has an element of choice in making a decision, and that decision is grounded in grounded in social, economic or political policy.  *Fowler v. Roberts,* 556 So.2d 1, 15 (La. 1989); Wilson v. Davis, 07-1929, p. 7 (La. App. 1 Cir. 05/28/08); 991 So.2d 1052, 1058.

any of the Plaintiffs, to the extent their claims against Alleva are purely based on his position as Athletic Director, they are barred by discretionary immunity pursuant to La. R.S. 9:2798.1.

### 2. Plaintiffs' State Law Tort Claims Are Time Barred.

Plaintiffs' state law tort claims against Alleva are time barred because prescription began to run when they had sufficient information to call for further inquiry about their claims, not from the time they learned of facts or evidence sufficient to prove their claims. [108]  *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 388–89, 392 (5th Cir. 2021).[109]  Therefore, their claims should be dismissed.

## VI.  CONCLUSION

For the reasons set forth above, Defendant, Joseph "Joe" Alleva, prays for dismissal of the following claims asserted against him, in his official and individual capacity, by Plaintiffs: (1) 20 U.S.C. §§ 1961, *et seq.* claims; (2) First Amendment Retaliation, Equal Protection, and Denial of Procedural Due Process claims brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986; and (3) Louisiana Racketeering Act and State Law Tort Claims.  Alleva further prays for dismissal of Plaintiffs' claims with prejudice without the opportunity to amend.[110]

---

[108] The prescriptive period for tort actions begins to run from the date the injury was sustained. La. C.C. art. 3492.

[109] Plaintiffs are not entitled to wait to file a lawsuit until they are certain of who and what caused their injuries.

[110] Although federal courts typically give plaintiffs an opportunity to amend their complaint to state a cause of action upon which relief may be granted, as the Fifth Circuit held in Price, this rule does not apply with as much force to racketeering/RICO claims. 138 F.3d at 608.  Here, Plaintiffs have filed a 118-page Original Complaint, a 145-page Amended Complaint, a 66-page Case Statement, and will presumably file an opposition (up to 25 pages) to the instant Motion to Dismiss; thus, Plaintiffs' claims should be dismissed, with prejudice, without an opportunity to file another amended Complaint.  Id. (because plaintiff had multiple opportunities to allege facts and damages recoverable under RICO in the complaint, case statement, and opposition, allowing plaintiff another opportunity to attempt to state a cognizable claim would subject defendant to further litigation costs).

Respectfully submitted:

**JEFF LANDRY**
**ATTORNEY GENERAL**


*/s/ Seth F. Lawrence*
**MICHAEL A. PATTERSON** (#10373)
**S. BROOKE BARNETT-BERNAL** (#31031)-T.A.
**SETH F. LAWRENCE** (#38316)
*Special Assistant Attorneys General*
LONG LAW FIRM, L.L.P.
1800 City Farm Drive, Building 6
Baton Rouge, Louisiana 70806
Telephone:    (225) 922-5110
Facsimile:    (225) 922-5105
map@longlaw.com
bbb@longlaw.com
sfl@longlaw.com
*Attorneys for Joseph "Joe" Alleva*


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing *Memorandum in Support of Joseph Alleva's Motion to Dismiss* was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, on this 8th day of December, 2021.

*/s/ Seth F. Lawrence*
Seth F. Lawrence