## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                          CIVIL ACTION NO.  3:21-CV-00242

VERSUS                                      JUDGE WENDY B. VITTER

LOUISIANA STATE UNIVERSITY,                 MAGISTRATE JUDGE JOHNSON
ET AL.

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS LOUISIANA STATE UNIVERSITY AND THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

NOW INTO COURT, come defendants Louisiana State University ("LSU") and the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board").  LSU and the Board move this Court for dismissal of certain claims under Federal Rules of Civil Procedure 12(b)(6) and 17(b)(3).  As a threshold matter, LSU and the Board assert that Eleventh Amendment immunity bars many of Plaintiffs' claims.  To the extent not barred, LSU and the Board submit the following memorandum.

### I.     Background.

Plaintiffs' Class Action Complaint and Jury Demand, Doc. No. 22 (the "Complaint") asserts claims against the Board ranging from Title IX and federal disability law to generic state tort law.[1]  The gist of the Complaint is that defendants allegedly failed to prevent and respond to Plaintiffs' complaints about sexual discrimination and assault, and that this putative lack of prevention and response resulted from a criminal conspiracy among the named defendants.[2]

---

[1] Complaint, ¶¶ 366 *et seq.*
[2] Complaint, ¶¶ 1, 10, 32, 89-100, 530-31, 542-44, 562-63, 566-67, 572-73, 577.

1

Plaintiffs allege various personal injury damages, including associated pecuniary damages.[3] Plaintiffs' Complaint allegations fail for the reasons below.

## II.    LSU is not a Proper Party Defendant and Must be Dismissed.

Federal Rule of Civil Procedure 17(b)(3) provides that, the law of the state in which the district court is situated determines a party's ability to sue and be sued (other than for individuals sued in their individual capacity and business corporations). As a public entity, LSU can only be sued if state law grants it the capacity to sue and be sued.[4]

Louisiana law establishes the existence of LSU, but it does not grant LSU the capacity to sue or be sued. La. R.S. 17:3215. Rather, it is the Board that exercises all governance over the rights and property of LSU, and it is the Board (not LSU) that is empowered to sue and be sued in a lawsuit concerning LSU's affairs.[5]  In *Lewis v. Louisiana State University et al*, 2021 WL 4139138, *4-5 (M.D. La. Sept. 10, 2021), Judge Morgan dismissed claims against LSU for this same reason, stating that "[u]nder Louisiana law, LSU lacks capacity to be sued, and, therefore, is not a proper party defendant." Other federal courts have likewise concluded that universities in the LSU system lack the capacity to sue and be sued.[6] Therefore, LSU must be dismissed.

## III.    Plaintiffs' Factual Allegations Fail to State a Claim Against the Board.[7]

### A.    Rule 12(b)(6) Legal Standard.

Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face."[8] Plaintiffs must plead "facts from which the court can draw a reasonable inference that the

---

[3] Complaint, ¶¶ 208, 282, 301, 352, 377, 388, 398, 406, 421, 430, 438, 449, 454, 467, 478, 487, 495, 508, 524, 527, 533, 551, 575, 579, 584, 589.

[4] *Darby v. Pasadena Police Dept.*, 939 F.2d 311, 313-14 (5th Cir. 1991); *see Lancaster v. Harris County*, 821 F. Appx. 267, 271 (5th Cir. July 10, 2020) (listing cases).

[5] La. Const. Art. VIII § 7; La.R.S. 17:3351; *see Delahoussaye v. City of New Iberia,* 937 F.2d 144, 148 (5th Cir. 1991).

[6] *See, e.g., Frey v. Bd. of Supervisors of La. St. Univ. & Agric. & Mech. Coll.*, 2018 WL 4039181 (M.D. La. Aug. 23, 2018); *Raj v. La. State Univ.*, 2012 WL 629954, *2 (E.D. La. Feb. 27, 2012), *aff'd*, 714 F.3d 322 (5th Cir. 2013).

[7] The arguments presented in this Part III apply equally to LSU if it had the capacity to be sued.

[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955167 L.Ed.2d 929 (2007).

defendant is liable for the misconduct alleged."[9]   "[T]he Court need not accept as true legal conclusions couched as factual allegations."[10]   Plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."[11]

**B.    Plaintiffs' State Tort Claims Are Prescribed.**

Plaintiffs' tort claims are subject to the one-year prescription under La. C.C. Art. 3492.[12] Prescription under La. C.C.P. Art. 3492 "commences to run from the day injury or damage is sustained."   "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort."[13]   Rather, "prescription commences when the last tortious act occurs or the defendant's tortious conduct is abated."[14]   Plaintiffs filed their original complaint in this case on April 26, 2021.   Here, only causes of action that accrued on or after April 26, 2020 are timely.   The Complaint fails to cite any injury that was initially suffered by Plaintiffs on or after April 26, 2020, and, with few exceptions, fails to allege damage-causing conduct by the Board on or after April 26, 2020.

Plaintiffs cannot invoke the Board's alleged failure to remedy Plaintiffs' alleged harms as a basis for delaying the commencement of prescription under La. C.C. Art. 3492.   "Louisiana has rejected the contention that the continuing breach of duty could consist of defendant's failure to remedy the harm caused by the initial tortious conduct, because the breach of the duty to right a wrong . . . cannot be a continuing wrong which suspends the running of prescription."[15]

---

[9] *Spector v. USAA Cas. Ins. Co.*, 2019 WL 1493467, *3 (E.D. La. April 3, 2019) (quoting *Twombly*, 550 U.S. at 570).

[10] *K&F Restaurant Holdings, Ltd. V. Rouse*, 2017 WL 465470, *2 (M.D. La. Feb. 2, 2017) (citation omitted).

[11] *Twombly*, 550 U.S. at 555 (internal quotations, citations, and brackets omitted).

[12] *See Sherman v. Irwin*, 2021-0482 (La. App. 1 Cir. 7/19/21), 2021 WL 3034034, *1).   Plaintiffs have not asserted claims for sexual assault.

[13] *Henry v. Cisco Systems, Inc.*, 106 Fed. Appx. 235, 241 (5th Cir. July 23, 2004) (*quoting In re Med. Panel Review for the Claim of Moses,* 2000-2643 (La. 5/25/01), 788 So.2d 1173, 1183 (citation omitted)).

[14] *Henry*, 106 Fed. Appx. at 241 (*citing Bustamento v. Tucker,* 607 So.2d 532, 542 (La.1992)).

[15] *Body By Cook v. Ingersoll-Rand Co.*, 39 F.Supp.3d 827, 837 (E. D. La. 2014) (internal quotes & citations omitted).

3

Similarly, Plaintiffs cannot invoke *contra non valentem* to save their untimely tort claims.[16] Plaintiffs seem to invoke the so-called "discovery rule" of *contra non valentem* by alleging the Husch Blackwell report, released in March of 2021, alerted Plaintiffs to the alleged "systematic" and "pervasive" nature of sexual harassment at LSU.[17]  This "discovery rule" category asks "whether the plaintiff was reasonable in delaying filing suit in light of the information known to him."[18]  "Prescription begins to run from the time there is notice enough to call for inquiry about a claim, not from the time when the inquiry reveals facts or evidence sufficient to prove the claim."[19]  To invoke this category, Plaintiffs must establish they did not possess sufficient information to ". . .put a reasonable person on guard to call for inquiry more than one year before this lawsuit was filed."[20]  Here, Plaintiffs' allegations reveal that Plaintiffs knew more than a year before this lawsuit of their alleged injuries and the specific defendants whom they blamed. Plaintiffs do not allege latent injuries or that they were unaware, at least in a general sense, that they might have a legal claim.[21]  "While factual ignorance may prevent the running of prescription in some circumstances, ignorance of the law does not."[22]

---

[16] *Crane v. Childers*, 655 F. Appx. 203, 204-05 (5th Cir. July 11, 2016).

[17] Complaint, ¶¶ 68-88, 154, 175, 190, 207, 242, 281, 300, 320, 338, 351, 376, 387, 405, 420, 429, 437.

[18] *Ceasor v. State*, 2009-1584 (La. App. 1 Cir. 3/26/10), 2010 WL 1170232, * 7 (citation omitted), *writ denied*, 2010-0941 (La. 9/3/10); 44 So.3d 695.  In answering this question, "[a] plaintiff will be deemed to know what he could have learned through reasonable diligence." *Babineaux v. State, Through Department of Transportation and Development*, 2004-2649 (La. App. 1 Cir. 12/22/05), 927 So.2d 1121, 1124-25 (internal brackets supplied) (citation omitted).

[19] *LaFleur v. Blue*, 6 So.3d 348, 351 (La. App. 3 Cir. 2009) (internal quotation marks and citation omitted).

[20] *Alexander v. Fulco*, 895 So.2d 668, 674 (La. App. 2 Cir. 2005), *writ denied*, 901 So.2d 1107 (La. 2005).

[21] Whether Plaintiffs were aware of all the alleged deficiencies in the Title IX process is immaterial to the prescription question; notice that they might have a legal claim was sufficient to commence the running of prescription.  *See Rojas v. Dep't of Health & Human Resources, St. of La.*, 522 So.2d 1195, 1197 (La. App. 4 Cir. 1988) (defamation claim was prescribed despite claim the employee was prevented from viewing his personnel file (containing the defamatory statements) because plaintiff knew the employees had rated him incompetent), *writ denied*, 523 So.2d 1338 (La. 1988).

[22] *Lieber v. St. through Dep't of Transp. and Dev.* , 682 So.2d 1257, 1262 (La. App. 2 Cir. 1996) (internal brackets supplied) (listing cases), *writ denied*, 689 So.2d 1374 (La. 1997); *Coker v. Town of Glenmora*, 2009-1432 (La. App. 3 Cir. 5/5/10); 37 So.3d 532, 534-35 (employee's claim, based on employer providing inaccurate information about his eligibility for retirement benefits, was prescribed because his ignorance was not one of fact but of law concerning his eligibility), *writ denied*, 45 So.3d 1096 (La. 2010); *Lieber*, 682 So.2d at 1263.

Plaintiffs also seem to invoke the "intentional concealment "category of *contra non valentem* by alleging that, until the release of the Husch Blackwell report, the Board "concealed" the extent of sexual harassment on campus.[23]    However, this category only applies where the defendant engages in conduct that prevents a plaintiff from filing suit, not conduct which merely "lulls" a plaintiff into believing timely action is not required.[24]    At best, Plaintiffs allege the Board did not disclose some facts.  However, in the absence of an affirmative duty to speak, "concealment by silence alone is insufficient for an application of *contra non valentem*."[25]    Plaintiffs present no allegations to suggest the Board had a **duty** to disclose particular information to Plaintiffs, nor did Plaintiffs allege the Board **prevented** Plaintiffs from investigating their claims and filing suit.  Plaintiffs' allegations show they were aware of their injuries, the conduct which caused their injuries, and the persons they accused prior to April 26, 2020.  Plaintiffs' tort claims are prescribed.

**C.**    **Plaintiffs' Title IX Claims are Prescribed.**

The date on which a federal claim begins to "accrue," for prescription purposes, is governed by federal law, even where, as here, such claims are subject to a borrowed state prescription statute.  The Fifth Circuit summarized federal accrual precepts as follows:

> Under federal law, the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.  A plaintiff's awareness encompasses two elements:  (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions.  A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim.

---

[23] Complaint, ¶¶ 88, 154, 175, 190, 207, 242, 281, 300, 320, 338, 351, 376, 387, 405, 420, 429, 437.

[24] *Crump v. Sabine River Auth.*, 737 So.2d 720, 731 (La. 1999) (rejecting intentional concealment category of *contra non valentem* based upon plaintiff's claims that defendant assured her that drainage problem, which was eroding plaintiff's property, would be remedied). *See Greening v. W. Reserve Life Assurance Co. of Ohio*, 439 F.Supp.2d 612, 614 (M.D. La. 2006) (rejecting intentional concealment category of *contra non valentem* because "plaintiffs had complete access to the correct information prior to the sale.") (applying Louisiana law); *Marin*, 48 So.3d at 252.

[25] *In re Medical Review Panel of Gerard Lindquist*, 18-444 (La. App. 5 Cir. 5/23/19), 274 So.3d 750, 760 (listing cases); *see Adams v. Ochsner Clinic of Baton Rouge*, 1999-2502 (La. App. 1 Cir. 11/3/00), 771 So.2d 258, 261-62 (refusing application of concealment *contra non valentem* because physician had no duty to disclose certain information to patient).

Actual knowledge is not required if the circumstances would lead a reasonable person to investigate further.[26]

Title IX claims are subject to Louisiana's one year prescriptive period.[27]  Thus, Plaintiffs' federal causes of action are untimely for the same reasons their tort claims are untimely.  Other than perhaps one plaintiff (Hovis), Plaintiffs allege they had knowledge of their injuries, the conduct which allegedly caused those injuries, and the identity of some or all of the persons who engaged in the alleged conduct, well in advance of April 26, 2020.

### 1. Counts I-IV of Plaintiffs' Title IX Claims.

Plaintiffs alleged the following regarding the timing of the alleged Title IX conduct:

| **Plaintiff** | **Allegations re: Timing of Title IX Conduct** |
| --- | --- |
| Richardson | Richard's involvement with Doe and Coe took place in **Fall/October 2016**, and she alleges she spoke to Defendants Lewis and/or Soil-Cormier **within a day** of each event.[28] Thus, Richardson knew back then that neither offered her resources or allegedly made a report to the Title IX Office. |
| Robertson | Robertson pleads her alleged assault occurred on January 22, 2016, that she declined a Title IX investigation on **February 5, 2016**, and that the conduct was disclosed to Defendant Orgeron in the **Fall of 2016**.[29] |
| Brennan | Brennan's contact with Doe and her meeting with Defendants Lewis and Segar occurred in **July 2016**, and she left the LSU recruiting team in **August 2016,** in part because of "LSU's lack of response."[30] |
| Owens | Owens alleges contact with Doe on June 28, 2016, and she alleges she and her father first disclosed the rape in **April 2017**.  Owens knew, following the disclosures, that she "was never contacted by anyone at the Title IX office."[31] |
| Andries | Andries alleges contact with Roe in 2016-2017.  Andries engaged in a Title IX investigation that found that Roe violated the Title IX policy. Andries alleges she learned of the discipline administered to Roe on **September 26, 2019**, and that on **October 16, 2019**, LSU denied Roe's final appeal.[32] |
| Lewis | Lewis alleges contact with Coe from January 2017 to June 2018, and that, despite various individuals' having knowledge of the events, the events were not reported to the Title IX office until **April 2018**.  John Loe was expelled in July 2019.[33] |

---

[26] *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir.2001) (internal brackets, citations and quotation marks omitted); *see also Wallace v. Kato*, 549 U.S. 384, 391 (2007) (internal quotation marks and citations omitted).
[27] *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015).
[28] Complaint, ¶¶ 123, 125, 131, 135, 137, 139.
[29] Complaint, ¶¶ 159, 164, 169.
[30] Complaint, ¶¶ 179-181, 184.
[31] Complaint, ¶¶ 195, 197-198.
[32] Complaint, ¶¶ 236, 241.
[33] Complaint, ¶¶ 246-261, 280.

| Johnson | Johnson complains about her relationship with Julia Sell. She alleges that when she "graduated from LSU **in Spring 2019** . . . . Johnson blocked Defendant Julia Sell's number, thus ending the relationship with her lifelong mentor."[34] |
|---------|------------------------------------------------------------------------------|
| Doe | Doe alleges abusive behavior from Poe since October 2018, when she reported the conduct in March 2019. By **May 2019**, Doe alleges she was told her claims did not fall under Title IX and that LSU Student Advocacy and Accountability was determining what other avenues existed for charging Poe.[35] |
| Hovis | Hovis alleges an encounter with John Loe on January 24, 2020, and alleges that Loe was found to have violated the Title IX policy on **March 6, 2020**. In **May 2020**, Loe allegedly violated a no-contact order by having his girlfriend contact Hovis. Hovis claims that LSU did not take disciplinary action against Loe.[36] |

Conduct pre-dating April 26, 2020 is time-barred, meaning that only plaintiff Hovis alleged conduct occurring within the limitations period. All other alleged Title IX conduct is untimely.

## 2. Plaintiffs' Title IX Retaliation Claims.

Although Plaintiffs state that **all Plaintiffs** assert retaliation claims, **only four Plaintiffs** allege retaliatory conduct. As shown, Title IX claims are subject to Louisiana's one year prescriptive period for personal injury actions.[37] Thus, any events pre-dating April 26, 2020 are time-barred. Plaintiffs allege the following dates:

| Plaintiff[38] | Retaliatory Conduct Alleged |
|--------------|------------------------------|
| Richardson | **Immediately after** Richardson spoke with Defendants Lewis and Soil-Cormier, she faced retaliation at work. The LSU Athletics Department refused to schedule Richardson to work at the events in which Coe participated.[39] Richardson was terminated from her job in the football recruiting office in the **spring of 2017.**[40] When Richardson spoke with Soil-Corimer and Ya'el Lofton in **August 2017**, she believes Soil-Cormier and Lofton gave her pretextual reasons for why her employment ended.[41] Richardson was denied an athlete tutor position in **fall 2018.**[42] Richardson was allegedly denied two job opportunities in the Athletics Department in **fall 2018.**[43] |

---

[34] Complaint, ¶¶ 285-299.
[35] Complaint, ¶¶ 303-309, 313.
[36] Complaint, ¶¶ 325, 330-332.
[37] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583.
[38] Ashlyn Robertson, Samantha Brennan, Jane Doe, Corrin Hovis, and Sarah Kitch did not allege any retaliatory conduct against the Board.
[39] Complaint, ¶ 132.
[40] Complaint, ¶ 141.
[41] Complaint, ¶ 142
[42] Complaint, ¶ 143.
[43] Complaint, ¶ 144.

| Andries | LSU's issuance of a no-contact order on or around **September 26, 2019** constituted retaliation.[44] |
| Lewis | In **June 22, 2018,** LSU "wasted no time in immediately charging Plaintiff Lewis with violating the residential life policy for having a candle in her room and placing her on academic probation, while taking no disciplinary action against John Coe."[45]  In **2018,** while Coe was banned from the weight room, football coaches made comments to her indicating they blamed her for Coe being banned, and Julia Sell instructed her teammates to stay away from her (**also in 2018**).[46] |
| Johnson | Julia Sell "retaliated" against her regarding leadership roles on the tennis team.[47] Johnson graduated in **Spring 2019**, ending any alleged "retaliation.[48]" |

Per Plaintiffs' Complaint, each alleged adverse action occurred before April 26, 2020. Thus, Plaintiffs' retaliation claims are untimely and must be dismissed.[49]

**D**.    **Plaintiffs' Sections 1983, 1985 and 1986, ADA (Title II), and Rehabilitation Act Claims are also Prescribed.**

In addition to the Title IX claims, Plaintiffs' other federal claims are largely time- barred.[50] La. C.C. Art. 3492's one-year prescriptive period applies to Plaintiffs' other federal claims under 42 U.S.C. §§ 1983 and 1985, the ADA (Title II), and the Rehabilitation Act because federal law borrows a state's residual or general prescriptive statute of limitations.[51]  Thus, Plaintiffs' federal causes of action are prescribed for the same reasons as their tort and Title IX claims.

**E.    To the Extent Not Prescribed, Plaintiffs' Title IX "Heightened Risk" Claim Fails.**

Plaintiffs allege Title IX violations against "due to the heightened risk of sex-based discrimination on LSU's campus."[52]  However, the Fifth Circuit recently stated "[w]e have never

---

[44] Complaint, ¶ 237.

[45] Complaint, ¶ 264.

[46] Complaint, ¶¶ 270, 277.

[47] Complaint, ¶ 289.

[48] Complaint, ¶ 299.

[49] The continuing violation doctrine does not apply to retaliation.  *Hamic v. Harris Cnty. W.C. & I.D. No. 36*, 184 F. App'x 442 (5th Cir. 2006); *see also Lewis v. La. St. Univ. et al.*, 2021 WL 4139138, *5 (M.D. La. Sept. 10, 2021).

[50] *See Lewis.*, 2021 WL 4139138, at *5; *See McCoy*, 2011 WL 1898910, at *3.

[51] To the extent Plaintiffs argue that La. C.C. art. 3496.2 is applicable, the Fifth Circuit disagrees.  *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015); *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *A.W. Humble Indep. Sch. Dist.*, 25 F.Supp.3d 973, 988-89 (S.D. Tex. 2014) (rejecting plaintiff's argument that § 1983 and Title IX claims arising out of sexual assault were governed by sexual assault statute of limitations rather than general statute of limitations applicable to personal injury).  Additionally, Plaintiffs have not asserted sexual assault claims.

[52] Complaint, ¶ 391.

recognized or adopted a Title IX theory of liability based on a general 'heightened risk' of sex discrimination, and we decline to do so."[53] Plaintiffs' "heightened risk" claim should be dismissed.

## F.    To the Extent Not Prescribed, Plaintiffs Did Not Plead That Gender Bias Motivated the "Erroneous Outcomes" They Claim.

Generally, "erroneous outcome" claims are brought by the disciplined student alleging that a gender bias adversely affected the discipline.[54] Here, Plaintiffs are the complaining students, and they attempt to assert erroneous outcome claims without pleading the necessary elements. Plaintiffs must point to particular facts casting articulable doubt on the accuracy of the outcome, such as "a motive to lie on the part of the complainant or witness."[55] "If no such doubt exists . . . , the claim must fail."[56] "The plaintiff must also demonstrate a 'causal connection between the flawed outcome and gender bias.'"[57] Here, Plaintiffs do not identify what outcomes they believe were erroneous. In fact, several Plaintiffs pled no facts to question the accuracy of the outcomes. For example, Plaintiffs whose claims do not relate to the LSU football (namely Andries, Johnson, Doe, and Kitch) made no allegations that anyone involved in their investigations, if applicable, acted out of improper motive. Further, none of the Plaintiffs pled facts showing a causal connection between the Title IX outcomes and any gender bias. As to the LSU football allegations, Plaintiffs claim flaws in those investigations, if any, were due to the football players' "status" as a "god," not due to gender bias.[58] Plaintiffs fail to plead a Title IX "erroneous outcome" claim.

## G.    Plaintiffs Fail to State a Claim Under 42 U.S.C. §§ 1983, 1985 and 1986.

### 1.    As an arm of the state, the Board is not liable under Section 1983.

---

[53] *Poloceno v. Dallas Independent Sch. Dist.*, 826 F. App'x 359, 363 (5th Cir. 2020).
[54] *See, e.g.*, *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204 (5th Cir. 2019).
[55] *Id.*
[56] *Id.*
[57] *Id.* (emphasis added).
[58] *See, e.g.*, R. Doc. 22, ¶¶ 162, 196.

9

Section 1983 provides the remedy for violations of the U.S. Constitution by "persons" acting under color of state law.[59]  The Supreme Court has held that state agencies and their employees acting in their official capacities, are not "persons" subject to monetary liability under § 1983.[60]  The Board is considered an "arm of the state," and thus is not subject to suit under Section 1983.[61]  Accordingly, Plaintiffs' Section 1983 claims concerning federal constitutional (including the First Amendment) violations must be dismissed.  Notably, no vicarious liability exists under § 1983.[62]

### 2. Plaintiffs failed to allege facts demonstrating a conspiracy to interfere with civil rights under 42 U.S.C. §§ 1985 and 1986 (Count IX of the Complaint).

Plaintiffs' claims under 42 U.S.C. §§ 1985[63] and 1986 fail for the same reason.  The Supreme Court's interpretation of Section 1983 in *Will* (that "person" as used in Section 1983 does not include an "arm of the state" like the Board) extends to Sections 1985 and 1986 as well.[64]  For

---

[59] *Lafleur v. Texas Dept. of Health*, 126 F.3d 758, 759 (5th Cir. 1997).

[60] *Will v. Mich. Dep't of St. Police*, 491 U.S. 58, 70–71, 109 S.Ct. 2304 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). The agents of state agencies acting in their official capacities can still be sued for injunctive relief under the *ex parte Young* exception to sovereign (and the related, but distinct, Eleventh Amendment) immunity. *Fontenot v. McCraw*, 777 F.3d 741, 751-52 (5th Cir. 2015). *Will*, 491 U.S. at 71 n. 10, 109 S.Ct. 2304 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State") (internal quotation marks and citations omitted).

[61] *Coleman v. Bd. of Supervisors of La. St. Univ. and Agric. and Mech. Coll.*, 2015 WL 3872256, *1-2 (M.D. La. June 23, 2015); *accord*, *Dyess v. La. St. Univ. Bd. of Supervisors*, 2005 WL 2060915, *5 (E.D. La. Aug. 19, 2005); *McCormick v. Bd. of Supervisors La. St. Univ. and Agric. and Mech. Coll.*, 2004 WL 856657, *3 (E.D. La. April 19, 2004). The Board observes that the Complaint includes "custom and policy" allegations to charge a local government under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, the Board is an "arm of the state," not a local government, and thus *Monell* is inapposite to the Board's liability. *Will*, 491 U.S. at 70, 109 S.Ct. 2304

[62] *Shaw v. Villanueva*, 918 F.3d 414, 417 (5th Cir. 2019).

[63] Section 1985(1) applies only where state officers use force or threats to prevent a federal officer from carrying out his duties. There is no reference to any federal officer in the Complaint.

[64] *See, e.g., Anderson v. U.S. Dept. of Agric.*, 604 F. App. 513, 517 (7th Cir. 2015) "But Anderson's first claim, under 42 U.S.C. § 1986, is not cognizable because the agency is not a 'persons' under the statute.") (citations omitted); *Allen v. N.J.*, 2012 WL 3598843, *2 (D. N.J. Aug. 20, 2012) ("However, Sections 1983 and 1985 provide a cause of action only against 'persons,' whose definition does not encompass the State, its agencies, or its state officers, when acting in an official capacity.") (citations omitted); *Diaz v. N.M.*, 2001 WL 37125327, *1 (D. N.M. Jan. 12, 2001) ("The language of 42 U.S.C. §§ 1985 and 1986 precludes certain actions by 'persons.' However, neither the state nor its agencies qualify as 'persons' under 42 U.S.C. §§ 1985 and 1986.") (citations omitted); *Goodsell v. Utah*, 2006 WL 1720713, * (D. Utah June 12, 2006) ("It is well settled that entities entitled to Eleventh Amendment immunity are not considered 'persons' under the civil rights statutes and cannot be sued under those provisions.") (citations omitted); *Diaz v. New Mexico*, 2001 WL 37125327, *1 (D. N.M. Jan. 12, 2001) ("The language of 42 U.S.C. §§ 1985 and 1986

---

10

this reason alone, Plaintiffs' Sections 1985 and 1986 claims fail.

Plaintiffs also fail to allege the elements of a Section 1985 conspiracy claim, including "(1) a conspiracy involving two or more persons; [and] (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; . . . ."[65]  Plaintiffs fail to allege any facts showing conspiratorial meetings or communications about depriving Plaintiffs of equal protection of the laws.  Further, "alleged concerted action by employees or officials of the same entity or organization cannot constitute a conspiracy for purposes of § 1985."[66]  Section 1985(2) and (3) remedy discrimination, Plaintiffs must allege the conspiracy was motivated by a class-based animus, which Plaintiffs failed to do.[67]  Instead, Plaintiffs allege the Board's employees were motivated by a desire to protect LSU's reputation and football program, not a desire to harm women.  Finally, Plaintiffs' Section 1986 claim falls with their Section 1985 claim.[68]

## H.    Plaintiff Hovis Failed to State a Rehabilitation Act or ADA Claim.

To state her Rehabilitation Act ("RA") or Americans with Disabilities Act ("ADA") claim, a plaintiff must allege that she (1) has a disability, (2) was qualified to receive an educational benefit, and (3) was denied educational benefits by reason of her disability.[69]  Hovis is the only

---

precludes certain actions by 'persons.'  However, neither the state nor its agencies qualify as 'persons' under 42 U.S.C. §§ 1985 and 1986.") (citations omitted); *Richardson v. N.Y. St. Dept. of Corr. Serv.*, 1998 WL 268842, * (W.D.N.Y. April 29, 1998) ("However, the State and its agencies are immune from liability under 42 U.S.C. § 1981.  Also, such agencies are not 'persons' within the meaning of 42 U.S.C. § 1985(3).").  The Fifth Circuit has reached the same conclusion regarding Section 1985 in the related but distinct context of Eleventh Amendment immunity.  *Hines v. Mississippi Dept. of Corrections,* No. 00-60143, 2000 WL 1741624 (5th Cir. Nov. 14, 2000).

[65] *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994) (citation omitted); *Harris v. Ashby*, 2001 WL 863601, *7 (N.D. Tex. July 16, 2001) (citation omitted).

[66] *Marceaux v. Lafayette City-Parish Consol. Government*, 921 F.Supp.2d 605, 643-44 (W.D. La. 2013) (internal brackets and citation omitted).

[67] *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010); *Burns–Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir.), *cert. denied*, 512 U.S. 1207 (1994).

[68] *See Sims v. Chatham-Sims*, 2019 WL 3807484, *6 (N.D. Tex. July 26, 2019).

[69] *See Cadena v. El Paso Cnty*, 946 F.3d 717, 723 (5th Cir. 2020).  The R[ehabilitation] A[ct] and the ADA are judged under the same legal standards, and the same remedies are available under both Acts.  *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).

Plaintiff with ADA and RA claims.[70]  Plaintiff Hovis alleges she has PTSD, but she did not plead that she was denied a benefit to which she was entitled, or that that such denial was due to her disability. As to the second element, although Hovis made a conclusory statement that she was "qualified to participate in educational programs and activities at LSU," she does not plead facts showing entitlement to a benefit that she was denied.[71]  As to the third element, Hovis does not allege the failure to reinstate her accommodations was because of her disability.  In fact, Hovis said her accommodations were allegedly denied "because Lighthouse accommodation [sic] are only for six months."[72]  Plaintiff Hovis fails to plead essential elements of her claims.

## I.     Plaintiffs Fail to State a Claim Against the Board Under Louisiana Tort Law.

Plaintiff failed to state tort claims against the Board.

### 1.     The Board is not vicariously liable in tort for students' sexual conduct.

Nearly all Plaintiffs contend their alleged injuries flow from alleged physical and sexual batteries caused by students, not employees.[73]  The Board is not liable for such injuries for the following reasons.   First, while Plaintiffs allege the Board has vicarious liability for torts committed by its employees,[74] Plaintiffs allege most of the perpetrators are students (in off-campus bars or staying overnight in the apartment of their alleged victims).  Second, the Board owes no duty to protect Plaintiffs from the underlying physical or sexual batteries that Plaintiffs allege. "Whether a duty is owed is a question of law."[75]  Although Plaintiffs allege Title IX violations, a public body's failure to act within the framework of a regulatory regime does not automatically

---

[70] Complaint, ¶ 459.
[71] Complaint, ¶ 465.
[72] Complaint, ¶ 335.
[73] Only Plaintiff Kitch alleges an incident with a professor.  Complaint, ¶ 344.  Louisiana courts have found that such allegations of assault by a supervisor are insufficient, as a matter of law, to sustain a claim for vicarious liability under Louisiana law.  *Jackson v. Ferrand*, 658 So.2d 691, 695-97  (La. App. 4 Cir 1994) (reviewing vicarious liability for assaults occurring outside of the workplace), *writ denied*, 659 So.2d 496 (La. 1995).
[74] Complaint, ¶¶ 488, 496, 503, 509.
[75] *Berry*, 637 So. 2d at 414.

translate into tort liability; to the contrary, Louisiana courts have repeatedly read even mandatory provisions in statutes narrowly in terms of the establishment of a tort duty, particularly in cases where, as here, the imposition of a tort duty would impose an unreasonable burden on the public body.[76]  Plaintiffs have not alleged the existence of any rule or policy requiring the Board to take actions asserted in the Complaint.[77]  "In fact, since the late 1970s, the general rule is that no special relationship exists between a college and its own students because a college is not an insurer of the safety of its students."[78]  It is well-established that state tort law cannot provide a remedy for violations of Title IX rights beyond the remedies provided in Title IX.[79]  For these reasons, the Board is not liable for damages resulting from any underlying physical or sexual battery.  Because the Board is not liable for the underlying physical injury, the Board is also not liable for Plaintiffs' economic losses resulting from such underlying injury.[80]

### 2.    Plaintiffs' intentional infliction of emotional distress claims fail.

A plaintiff seeking damages for intentional infliction of emotional distress must prove: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional

---

[76] *Cormier*, 745 So.2d at 9 ("We hold that, as a matter of public policy, the Department owed no duty to Plaintiff, the victim of the tort of a private third party . . . . To hold otherwise would place too onerous a burden upon the State and would have a far-reaching effect on the liability of the state where licensing programs are concerned. Plaintiff failed to prove the element of duty and this failure is fatal to his case.") (citations omitted); *Williams v. Galliano*, 703 So.2d 1283 (La. 1997) ("Even assuming that the State, through the Department of Environmental Quality, has some duty to monitor landfills for compliance with permit regulations, that duty does not extend to third parties (especially where the third party's injury is unrelated to the regulation of environmental conditions)."); *Berry*, 637 So.2d at 414-15; *Laguerre v. Mendez*, 99 So.3d 296, 298(La. App. 5 Cir. 2009) (holding that La. R.S. 32:398(D), which provides a duty of the state police or the sheriff's office to investigate' certain accidents, could not be read to impose a duty to the plaintiff individually or the public to conduct follow-up investigation or locate a driver responsible for an accident).

[77] Even if the Board had the authority to take any of these actions, such authority cannot establish the existence of a tort duty in the absence of some requirement that the Board take these actions.  *Ardoin v. City of Mamou*, 685 So. 2d 294, 299 (La. App. 3 Cir. 1996).

[78] *Freeman v. Busch*, 349 F.3d 582, 587-88 (8th Cir. 2003); *see Williams v. Abilene Christian Univ.*, 2020 WL 10458627, *4-11 (N.D. Tex. Dec. 14, 2020) (discussing lack of tort duty to protect students from harm).

[79] *Humphries v. Penn. St. Univ.y*, *2 (M.D. Pa. June 16, 2020); *Z.J. v. Vanderbilt Univ.*, 355 F.Supp.3d 646, 703 (M.D. Tenn. 2018); *Doe v. Brown Univ.*, 166 F.Supp.3d 177, 196-97 (D. R.I. 2016); *Ross v. Univ. of Tulsa*, 2015 WL 4064754, *3- (N.D. Ok. July 2, 2015); *Doe v. Univ. of South*, 2011 WL 1258104, at *14 (E.D. Tenn. March 31, 2011).

[80] *Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 695-8-3 (5th Cir. 2011) (discussing La. economic loss rule).

distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[81]  "With regard to the first element, the supreme court has stated that 'the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"[82]  The intent element requires more than a "mere probability" that emotional distress will follow the conduct, and it is not met by the mere knowledge and appreciation of a risk, or by conduct which is only grossly negligent, reckless or wanton.[83]

Plaintiffs have not alleged that any LSU employee who responded to Plaintiffs' alleged sexual or physical batteries "desired to inflict severe emotional distress" or "knew that severe emotional distress would be certain or substantially certain to result from his conduct."  Instead, Plaintiffs' Complaint fails to distinguish "severe emotional distress" caused by the underlying perpetrators of physical or sexual battery (for which the Board is not liable), from subsequent "distress" caused by LSU employees' responses.

### 3.    Plaintiffs fail to allege negligent infliction of emotional distress.

Plaintiffs' Complaint does not support a claim for negligent infliction of emotional distress. In Louisiana, "a defendant will generally not be held liable where his conduct is merely negligent and causes only emotional injury unaccompanied by physical injury."[84]  Under this general rule, negligent infliction of emotional distress is generally unavailable.  The Louisiana Supreme Court created a narrow exception in *Moresi v. State, Dept. of Wildlife & Fisheries*,[85] allowing a negligent infliction of emotional distress claim "only when the situation creates the 'especial likelihood of

---

[81] *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La.1991).

[82] *Labbe v. Chem. Waste Mgmt.*, 786 So. 2d 868, 872 (La. App. 3 Cir. 2001) (*quoting White*, 585 So.2d at 1209).

[83] *Labbe*, 786 So. 2d at 872-73.

[84] *Bonnette v. Conoco, Inc.*, 837 So.2d 1219 (La. 2003).  Physical symptoms that are a product of mental stress are not covered and do not justify an exception.  *Covington v. Howard*, 146 So.3d 933, 940-41 (La. App. 2 Cir. 2014).

[85] 567 So.2d 1081 (La. 1990).

genuine and serious distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious."[86] The *Moresi* exception standard is an objective one, and thus any particular fragility of Plaintiffs.[87] Plaintiffs fail to allege circumstances which might cause a person of ordinary sensibilities to suffer severe emotional distress. At most, Plaintiffs claim they were interviewed by LSU investigators, some of whom allegedly doubted their claims or were not kind. These allegations fall short of negligent infliction of emotional distress.

### 4. Plaintiffs fail to allege a civil conspiracy claim.

Plaintiffs also assert a claim of civil conspiracy, but Louisiana law does not recognize a separate tort of civil conspiracy.[88] Rather, a "civil conspiracy" exists when two or more persons conspire to commit a specific intentional tort.[89] The only intentional tort Plaintiffs allege is intentional infliction of emotional distress, which fails (see above).[90] Plaintiffs also fail to allege that two or more persons agreed to intentionally inflict emotional distress upon Plaintiffs, or commit any other intentional tort to harm Plaintiffs. Plaintiffs' civil conspiracy claim fails.

### J. Plaintiffs Fail to State a Bad Faith Breach of Contract Claim Against the Board.

Plaintiffs assert a bad faith breach of contract claim pursuant to La. C.C. Art. 1997, but Plaintiffs fail to allege the existence of any "contract" between the parties.[91] Plaintiffs allege that LSU's policies and regulations proscribing sexual harassment are "contracts" between the Board

---

[86] *Touchard v. Slemco Elec. Found.*, 769 So.2d 1200, 1205 (La. 2000) (*quoting Moresi*, 567 So.2d at 1096) (emphasis supplied). Louisiana's general prohibition against compensation for emotional distress in the absence of physical injury, and the limited exception to this prohibition represented by the *Moresi* rule, are expressions of legal causation. *Covington,* 146 So.3d at 942-43. Legal causation limits recovery for certain injuries, as a matter of law on public policy grounds, even where the claimed injury may have been caused by tortious conduct. *Rando v. Anco Insulations Inc.*, 16 So. 3d 1065, 1088 (La. 2009) ; *TVince v. Koontz*, 213 So. 448, 455-56 (La. App. 5 Cir. 2017) .

[87] *Covington*, 146 So.3d 15 943.

[88] *See* Complaint, ¶¶ 529-34.

[89] *Schott, Tr. for Estate of InforMD, LLC v. Massengale*, 2019 WL 4741811, *13-14 (M.D. La. Sept. 27, 2019).

[90] Plaintiffs do use the term "fraudulently" in their conspiracy allegations, but fail to allege any fraud with particularity, as required by Federal Rule of Civil Procedure 9(b). *See Schott*, 2019 WL 4741811, *13-14. To the extent Plaintiffs allege a civil conspiracy claim duplicative of its LRA conspiracy claim, that claim fails for the reasons set forth *infra*.

[91] Plaintiffs allege that LSU's policy manuals and rules were part of the alleged student contract (payment of tuition fees in return for a college education). Complaint, ¶ 524.

and each individual student and that the Board breached these "contracts" by failing to protect Plaintiffs from (and provide sufficient redress for) their alleged experiences with sexual assault and harassment.[92]  However, in Louisiana, policy manuals and rules comprise "contracts" only when they are part of a bargained-for, bilateral agreement; unilateral expressions of policy that confer benefits are purely gratuitous and non-binding.[93]  Plaintiffs did not allege they bargained for the terms of any of putative policy manuals and rules.

Plaintiffs also allege no particular "contractual" term that was breached.  Instead, Plaintiffs generally allege the Board "breached [its] contractual obligations to Plaintiffs pursuant to the Code of Student Conduct, the Title IX Policy, and other governing documents by failing to provide Plaintiffs with an education free from sex-based discrimination and acts of sexual misconduct."[94]  Plaintiffs fail to identify any contractual promise of an education free from sexual harassment.  "Absent a breach of contract, there is no independent claim for allegedly acting in bad faith."[95]

Plaintiffs also failed to allege "bad faith" under La. C.C. Art. 1997.[96]  A defendant is only in "bad faith" if the contract breach is intentional **and** malicious.[97]  "Bad faith requires finding more than mere bad judgment or negligence, it implies the conscious doing of a wrong for

---

[92] Plaintiffs point to the collective allegations in the Complaint as indicia of the Board's "bad faith" in breaching these "contracts Complaint." ¶¶ 513-522.

[93] *Wallace v. Shreve Memorial Library*, 79 F.3d 427, 430-31 (5th Cir. 1996); *see Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. Appx. 289, 290-91 (5th Cir. 2008) (granting Rule 12(b)(6) motion because Tulane Faculty Handbook is not a "contract").  Under Louisiana law, a unilateral promise to perform requires both a gratuitous offer and an acceptance, neither of which Plaintiffs have alleged. *Townsend v. Urie*, 800 So.2d 11, 17 (La. App. 1 Cir. 2001).

[94] Complaint, ¶ 524.

[95] *Tedesco v. Pearson Educ., Inc.*, 2021 WL 2291148, *12 (E.D. La. June 4, 2021) (applying Louisiana law); *Berry v. LoanCity*, 2019 WL 4455998, *6 (M.D. La. Aug. 30, 2019) (dismissing contract claim where plaintiffs "failed to identify the source of any specific obligations to perform by with respect to the breach of contract claim.").

[96] In Louisiana, "good faith is always presumed and the plaintiff has the burden to allege defendants acted in bad faith." *Vincent v. Milligan*, 916 So.2d 238, 241 (La. App. 1 Cir. 2005) (citation omitted).

[97] *Olympia Minerals, LLC v. HS Res., Inc.*, 171 So.3d 878, 897, 899 (La. 2014); *see Castille v. St. Martin Parish School Bd.*, 218 So.3d 52, 56 (La. 2017) (reversing lower court ruling that contract was breached in bad faith, where "[n]othing in the record indicates the School Board's decision arose from conscious desire to cause harm to plaintiff, nor was it based on any dishonest or morally questionable motives.").

dishonest or morally questionable motives."[98]  Plaintiffs make no such allegation regarding any action or decision of the Board.[99]

Finally, Plaintiffs fail to allege a basis for recovery of non-pecuniary damages under La. C.C. Art. 1998.  Nonpecuniary damages can be recovered for a contract breach only when "the contract, because of its nature, is intended to gratify a nonpecuniary interest," meaning one intended to satisfy an interest of a spiritual order, such as a contract to create a work of art, or a contract to conduct scientific research, or a contract involving matters of sentimental value."[100] Plaintiffs' allegations fail because the alleged "contracts" were tied to Plaintiffs' purely pecuniary transaction with the Board, *i.e.*, the payment of tuition in return for an education.[101]

## K.    Plaintiffs Fail to State a Claim Against the Board Under the Louisiana Racketeering Act, La. R.S. 15:1351 *et seq.* (Count IX of the Complaint).

Plaintiffs supplemented their Complaint by filing Plaintiffs' Louisiana Racketeering Act ("LRA") Case Statement, Doc. No. 103 (the "LRA Statement"), which reiterates and emphasizes the Complaint's false allegations that the defendants are criminals.  The LRA is a criminal statute. In Louisiana, "[c]riminal statutes are generally subject to strict construction under the rule of lenity."[102]  Thus, in construing the LRA, the Court is obliged to construe the statute in favor of its most narrow application whenever there is any ambiguity in the statutory text.[103]  Louisiana courts have observed the LRA is modeled upon the Federal RICO Act, which cases are instructive.[104]

---

[98] *Sartisky v. La. Endowment for the Humanities*, 2014 WL 5040817, *2 (E.D. La. Sept. 26, 2014 (internal quotation marks and citation omitted) (applying Louisiana law); *US Fire Pump Co., LLC v. Alert Disaster Control (Middle East) Ltd.*, 2021 WL 296073, *17 (M.D. La. Jan. 28, 2021) (applying Louisiana law).

[99] The Board observes that the "vicarious liability" authorized by La. C.C. Art. 2320 applies only to delictual claim, and not contract claims.  *Mayer v. Access America*, 2007 WL 14695, *2 (E.D. La. Jan. 3, 2007).

[100] *Blair v. Bad Boy Inc.*, 137 So.3d 1223, 1231 (La. App. 2 Cir. 2014); *see Delaney v. Whitney Nat'l Bank*, , 703 So. 2d 709, 719 (La. App. 4 Cir. 1997).

[101] Complaint, ¶ 524.

[102] *State v. Tucker*, 170 So.3d 394, 406 (La. App. 2 Cir. 2015) (citation omitted).

[103] *State v. Turner*, 283 So.3d 997, 999 (La. 2019).

[104] *State v. Nine Sav. Accounts*, 553 So.2d 823, 825-26 (La. 1989); *CamSoft Data Systems, Inc. v. South. Electronics Supply, Inc.*, 2019 WL 2865256, *3, (La. App. 1 Cir. 2019).

## 1.    The Board is Immune from Plaintiffs' LRA Claims.

The Board is a governmental unit of the State of Louisiana, established by Article 8, Section 7 of the Louisiana Constitution of 1974.[105]  Under the Federal RICO Act, a governmental unit is immune from RICO claims because it (1) cannot form the *mens rea* necessary to commit criminal acts, and (2) enjoys common law immunity from punitive damages, such as treble damages under RICO.[106]  Nothing suggests a different result under the LRA.[107]  Indeed, Louisiana's civilian legal system even includes a reticence to impose criminal liability on private entities.[108]  Consistent with federal RICO, the LRA claims against the Board must be dismissed.

The Board is also entitled to sovereign immunity on the LRA claim.  While Article XII Section 10(A) of the Louisiana Constitution of 1974 "provides for the waiver of sovereign immunity from suits in contract or tort against the state, a state agency, or a political subdivision," Section 10(B) of Article XII, the Louisiana Constitution "retains sovereign immunity for suits other than those in contract or tort."[109]  An LRA claim is neither a tort nor a contract claim.[110]  Rather, it is a criminal statute to which is appended a private attorney general provision (the civil remedy) and was enacted to combat the economic consequences of organized criminal activity.[111]

---

[105] *Pegues v. Bd. of Supervisors of La. St. Univ. & Agric. & Mech. Coll.*, 2018 WL 4076385, *1 & n. 14 (E.D. La. August 27, 2018).

[106] *Davis v. City of Alvarado*, 835 Fed. Appx. 714, 720 (5th Cir. 2020); *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 412 (5th Cir. 2015).  Furthermore, the Fifth Circuit has stated, in regard to public entities' immunity from RICO claims, that "respondeat superior is not available as an end-run around this bar on RICO liability."  *Dammon v. Folse*, 846 F.Supp. 36, 39 n. 3 (E.D. La. 1994) (citation omitted).

[107] The Board could locate no Louisiana case in which a governmental unit was found guilty of a criminal violation.

[108] *State v. Chapman Dodge Center, Inc.*, 428 So.2d 413, 418 (La. 1983). As the *Chapman Dodge Center* court observed, the Civil Code of 1870 included an express prohibition against the imposition of criminal liability on private corporations.  *See Music Box, Inc. v. Mills*, 121 So. 196 (La.1929). *Canal Claiborne Ltd. v. Stonehenge Development, LLC*, 156 So.3d 627, 630 (La. 2014) (*citing* La. Const. Art. XII § 10(A)).

[109] *Canal Claiborne* 156 So.3d at 630, 640 (*citing* La. Const. Art. XII § 10(A).

[110] Sovereign Immunity also bars plaintiffs' unjust enrichment claim.  Complaint, ¶¶ 581-87; *see Canal Claiborne*, 156 So.3d at 627.  Since unjust enrichment is neither a tort nor a contract claim, Louisiana retains sovereign immunity.  The unjust enrichment claim also fails to the extent other legal remedies exist, even when such other remedies are prescribed or otherwise fail on the merits. *Walters v. MedSouth Record Mgmt., LLC*, 38 So.3d 245, 246 (La. 2010).

[111] *Nine Sav. Accounts*, 553 So.2d at 825-26 & n.2; *see Fisher v. Halliburton*, 2009 WL 5170280, *5 (S.D. Tex. Dec. 17, 2009) ("[P]ersonal injuries and their resulting pecuniary consequences are not compensable under RICO.") (internal quotation marks, ellipses, and citations omitted).  As Louisiana courts have observed, "[f]or prescription

Consequently, an LRA claim does not fall within the scope of the constitutional waiver of sovereign immunity found in La. Const. Art. XII § 10(A).[112]  Furthermore, nothing in the LRA evidences legislative intent to waive the Board's sovereign immunity against LRA claims.[113]  For these reasons, the Board is immune from Plaintiffs' LRA claim.

### 2.    Plaintiffs Fail to Plead the Elements of Their LRA Civil Liability Claim.

The LRA's civil remedy provision, La. R.S. 15:1356(E), provides (with emphasis supplied) that "[a]ny person who is injured by reason of any violation of the provisions of La. R.S. 1353 shall have a cause of action against **any person engaged in racketeering activity** who violates a provision of La. R.S. 15:1353."  Thus, "one element of civil liability under the LRA is that the defendant [**itself**] must have engaged in 'racketeering activity.'"[114]  "Racketeering activity" means the commission, or attempt or solicitation to commit, at least one of the specified predicate state criminal violations (the "Predicate Acts").[115]  An LRA civil plaintiff must also demonstrate a violation of La. R.S. 1353, including each of the four subsections of Section 1353 which require

---

purposes, the nature of an obligation is either contractual, quasi-contractual, delictual, quasi-delictual, or legal." *Landis & James Const. Co. v. Gee Cee Corp.*, 669 So.2d 1265, 1266 (La. App. 4 Cir. 1996) (citations omitted).  The LRA clearly imposes a legal obligation, as reflected in the fact that both criminal and civil LRA claims are governed by a statutorily prescribed five year prescriptive period.  La. R.S. 15:1356(H).

[112] *Compare Turner v. S. Wheel & Rim Serv., Inc.*, 332 So.2d 770, 771 (La. 1976). As Louisiana courts have observed, waivers of sovereign immunity are never implied and must be strictly construed.  *Tunica-Biloxi Tribe of Louisiana v. Blalock*, 2009-0459 (La. App. 3 Cir. 11/4/09), 23 So.3d 1041, 1047-48; *Freeman v. Department of Highways*, 197 So.2d 188, 201 (La. App. 1 Cir. 1967); *see Canal Claiborne*, 156 So.3d at 632-34.

[113] *See* La. Const. Art. XII § 10(B); *Canal Claiborne*, 156 So.3d at 639-40.  Notably, federal courts have found no waiver of sovereign immunity, explicit or implicit, in the analogous provisions of the Federal RICO Act.  *Dickson v. Bd. of Governors of Fed. Reserve Sys.*, 2018 WL 618995, *2 (W.D. Tex. May 10, 2018) (collecting cases).

[114] *Camsoft Data Sys.*, 2019 WL 2865256, *3 (citations omitted); *accord, De la Cruz v. Edwards*, 2015 WL 6696427, *6 ("Section 1353 of the [LRA] sets forth the 'prohibited activities' under the statute, all of which are premised on the existence of a pattern of racketeering activity."); *A1 Alack v. Jaybar, LLC*, 2012 WL 13005346, *5 (E.D. La. Aug. 21, 2012); *Thomas v. North 40 Land Development, Inc.*, 894 So.2d 1160, 1175 (La. App. 4 Cir. 2005).  Here, the LRA deviates from 18 U.S.C. § 1964(c) (the Federal RICO civil remedy provision), which provides a civil remedy to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter."  Thus, under federal law a plaintiff can invoke a civil remedy against defendants who have not personally engaged in "racketeering activity," but did engage in other conduct under Section 1962 (such as use/investment of proceeds or conspiracy).

[115] La. R.S. 15:1352(A).

proof of a **pattern** of "racketeering activity."[116]  Consequently, "[t]he three required elements of a LRA claim are: 1) a person who engages in 2) a pattern of racketeering activity 3) connected to the acquisition, establishment, conduct, or control of an enterprise."[117]  Plaintiffs' allegations fail to establish these elements.

>    a.    **The Board is Not Vicariously Liable for Alleged "Racketeering Activity" By Employees Who Are Not Separate RICO "Persons."**

As a juridical person, the Board (if not immune) can only incur LRA liability based on vicarious liability for Predicate Acts ("racketeering activity") by its employees.[118]  The Fifth Circuit, interpreting the Federal RICO Act, has held that a juridical person (corporate entity) is not vicariously liable for Predicate Acts by its employees if it is part of the same association-in-fact "enterprise" being conducted by the "pattern of racketeering activity."[119]  "Employees who, in the course of their employment associate to commit RICO predicate acts do not form a distinct RICO 'enterprise.'"[120]  Plaintiffs attempt to plead an "association-in-fact" enterprise which includes the Board, but the only persons alleged to have personally committed Predicate Acts ("racketeering activity") are employees of the Board.[121]  The Board cannot be held vicariously liable under the

---

[116] La. R.S. 15:1352(C) defines a "pattern of racketeering activity" as "at least two incidents of racketeering activity that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided . . . that the last of such incidents occurs within five years after a prior incident of racketeering activity."

[117] *Camsoft Data Sys.*, 2019 WL 2865256, *4 (internal brackets supplied) (listing cases).

[118] *See Camsoft Data Sys.*, 2019 WL 2865256, *5-6 (discussing application of vicarious liability to an LRA violation). Whether a person is an agent of a political subdivision (like the Board) is a question of law based on factors set forth in La. R.S. 42:1441.3.  Plaintiffs allege that all individual defendants are employees of LSU (and thus the Board) but do not specifically plead the existence of the statutory factors.  The Board reserves the question whether Plaintiffs can satisfy the statutory requirements.  *See Johnson v. City of Pineville*, 924 So.2d 443, 444-45 (La. Appp. 3 Cir. 2006).

[119] *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 425 (5th Cir.), *cert. denied,* 498 U.S. 895 (1990).

[120] *Senthilnathan v. AT&T, Inc.*, 2018 WL 472925, *1 (N.D. Tex. Jan. 3, 2018) (citation omitted).

[121] Complaint, ¶ 539; LRA Statement, at 40-53.  If the named defendants' roles as employees of LSU are discounted, the only organization structure which links those defendants is the alleged "racketeering activity" itself.  However, the law is clear that an LRA "association-in-fact" enterprise must have an existence separate and apart from the "racketeering" itself.  *State v. Sandifer*, 249 So.3d 142, 156 (La. App. 4 Cir. 2018), *writ denied*, 2018-1316 (La. 3/25/19), 267 So.3d 593, *writ denied*, 2018-1261 (La. 3/25/19), 267 So.3d 599, *writ denied*, 2018-1310 (La. 3/25/19), 267 So.3d 600, *cert. denied*, ___ U.S. ___, 140 S.Ct. 444 (2019).

LRA for the conduct of its employees.[122]  Plaintiffs' claims against the Board require proof that the Board itself engaged in "racketeering activity," which Plaintiffs failed to allege.

### b. Plaintiffs Also Fail to Allege Facts Showing that Board Employees Committed Any Predicate Acts ("Racketeering Activity").

Plaintiffs' LRA claims also fail because Plaintiffs do not allege the commission of any Predicate Act and thus cannot prove the existence of a "pattern of racketeering activity."

### i. Plaintiffs fail to allege a violation of La. R.S. 14:120.

Plaintiffs allege a violation of La. R.S. 14:120 (corrupt influencing), which makes it a crime for a person to give or accept something of value with the intention that the recipient shall corruptly influence the conduct of a public employee in relation to such public employee's position, employment, or duty.[123]  The statute does not proscribe bribery of public officials; rather, it prohibits the payment of persons with the intention of the payee thereafter "corruptly" influencing a public official.[124] The term "corruptly" indicates a desire to obtain a result which the party could not obtain by right.[125]  For this Predicate Act, Plaintiffs assert the Board paid its employees, funded its Title IX program, and made facilities available to the football team.[126]  Plaintiffs fail to identify a single payment made with the intention of "corruptly" influencing **another** official.  Moreover, no reported case has found the payment of a public employee's authorized salary and employment benefits violates the corrupt influencing statute.

### ii. Plaintiffs fail to allege a violation of La. R.S. 14:122(A)(1).

---

[122] *Landry*, 901 F.2d at 425; *accord, Collective Federal Sav. v. Creel*, 746 F.Supp. 1307, 1308-09 (M.D. La. 1990).
[123] *State v. Williams*, 35 So.2d 856, 858 (La. 1948).
[124] *See State v. Kotwitz*, 549 So.2d 351, 363 (La. App. 2 Cir. 1989) (reversing conviction where evidence showed payment was made not with the intention that the person receiving the payment "corruptly" influence district attorney, but rather that the person receiving the payment expose the district attorney as a drug user).
[125] *State v. Smith*, 212 So.2d 410, 414-15 (La. 1968).
[126] LRA Statement, at 64-66.

Plaintiffs next allege a violation of La. R.S. 14:122(A)(1) (public intimidation), which proscribes the "use of violence, force, extortionate threats, or true threats upon any [public officer or public employee] with the intent to influence his or her conduct in relation to his or her position, employment, or duty."[127]  *See* La. R.S. 14:122(C)(1)-(2) (defining "extortionate threats" and the "threats").  For this Predicate Act, Plaintiffs assert that LSU employees were threatened with "adverse employment consequences" to thwart the proper reporting of sexual harassment allegations.[128]  However, Plaintiffs fail to allege any information about such threats.  Plaintiffs' LRA Statement describes only statements to Plaintiff Lewis that she was a "tattletale" and could leave if she did not like her employment.[129]  Plaintiffs' allegations do not describe any "use of violence," "force," or "true threats," or "extortionate threats."[130]

### iii.    Plaintiffs fail to allege a violation of La. R.S. 14:129.1

Plaintiffs allege a violation of La. R.S. 14:129.1(A)(1) (witness intimidation):[131]

A. No person shall intentionally:

(1) Intimidate or impede, by threat of force or force, or attempt to intimidate or impede, by threat of force or force, a witness or a member of his immediate family with intent to influence his testimony, his reporting of criminal conduct, or his appearance at a judicial proceeding;

For this criminal offense, Plaintiffs cite instances where they allegedly received unsatisfactory/ unsympathetic verbal responses to their complaints, were given disciplinary punishment for their violations of LSU rules/policies, and did not receive support they desired.[132]  The plain language of the statute requires use of "threat of force" or "force," meaning the use of physical means to

---

[127] La. R.S. 14:122 proscribes the "public intimidation" of other classes of persons, but Plaintiffs make no allegation or assertion regarding any class of person other than public employees.
[128] LRA Statement, at 40-41.
[129] LRA Statement, at 41-42.
[130] Also, a "threat of adverse employment consequences" would have to be made by a supervisory employee, who already possesses authority to direct Title IX and similar reporting activities.
[131] The statute prohibits injuring/attempting to injure a witness or officer of the court, which Plaintiffs do not allege.
[132] LRA Statement, at 42-47.

overcome a victim's will.[133]  Plaintiffs' allegations do not reference a single threat or use of "force."

The statute is also limited to "witnesses" who are reporting a crime or witnesses in a civil or

criminal case,[134] and it requires proof that the offender acted with specific intent to influence the

witness' report of a criminal offense or appearance/testimony in a case.[135]  Plaintiffs fail to allege

any such acts by the Board or a "specific intent" to do so.[136]

### iv.    Plaintiffs fail to allege a violation of La. R.S. 14:132.

Plaintiffs allege a violation of La. R.S. 14:132 (injuring public records):

A. First degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer.

B. Second degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, defined as a public record pursuant to R.S. 44:1 et seq. and required to be preserved in any public office or by any person or public officer pursuant to R.S. 44:36.

"Thus the essential elements of the crime [of injuring public records] have been isolated as follows:

(1) intentional removal or concealment; (2) of a public record; (3) the public record has been filed

or deposited; (4) the filing or depositing was by authority of law; and (5) the filing or depositing

is in a public office or with a public officer."[137]  Proof of "injury" to a "public record" filed or

deposited in a public office is not enough; the filing or depositing of that record must be required

---

[133] *State v. Leblanc*, 506 So.2d 1197, 2000 (La. 1987).
[134] *Shafizadeh v. Guillory*, 2014 WL 2801331, *3 (W.D. La. June 19, 2014) ("La. R.S. 14:129.1 applies to intimidation or injury of a witness in a civil or criminal case with the intent to influence his testimony.") (applying Louisiana law).
[135] The use of the phrase "with intent to" in a Louisiana criminal statute indicates specific criminal intent is required to commit the offense.  *State v. Elzie*, 343 So.2d 712, 713-14 (La. 1977); *State v. Clarke*, 21-517 (La. App. 5 Cir. 8/11/21), --- So.3d ----, 2021 WL 3552367, *1.
[136] *Compare State v. Scott*, 41,690 (La. App. 2 Cir. 1/24/07), 948 So.2d 1159, 1162 (reversing burglary conviction where evidence that defendant committed unauthorized entry of house was insufficient to demonstrate specific intent to commit a theft or felony after such entry, as required to sustain a burglary conviction).
[137] *State v. Shows*, 508 So.2d 991, 994 (La. App. 2 Cir. 1987) (citation omitted).

PD.36172260.1

by a statute or legally promulgated rule.[138] Plaintiffs claim that this violation occurred when LSU employees "concealed" information by not including Plaintiffs' complaints in reports to LSU's Title IX Office.[139] Incomplete or insufficient reporting of sexual harassment does not violate La. R.S. 14:132. The statute protects the integrity of "public records" **after** they are filed or deposited; it does not regulate the contents of records before they are filed or deposited. Plaintiffs do not assert that any "public record" (which by law was filed or deposited in LSU's Title IX Office) was "injured" after being "filed or deposited."

### v.    Plaintiffs fail to allege a violation of La. R.S. 14:133.

The next Predicate Act Plaintiffs allege is a violation of La. R.S. 14:133 (maintaining false public records). La. R.S. 14:133 is violated when "the defendant maintains as required by law, regulation, or rule, (2) with knowledge of its falsity, (3) any document containing a false statement or false representation of a material fact.[140] Plaintiffs allege the existence of unspecified "reports" which they assert include "false statements" (including statements regarding complaints of sexual harassment and the course and conclusions of Title IX investigations).[141] Plaintiffs allege these "false statements" include any statement in which LSU states it complies with Title IX.[142]

Plaintiffs allegations of fraud (false statements) must comply with Federal Rule of Civil Procedure 9(b). "To satisfy Rule 9(b)'s pleading requirements, the plaintiffs must specify the

---

[138] *State v. Gomez*, 433 So.2d 230, 239 (La. App. 1 Cir.1983) ("La. R.S. 14:132 does not make it a crime to remove or conceal public records which are merely in the possession of a public office or public officer. It is essential to the crime that the record be filed or deposited in the office or with the officer **by authority of law**.") (emphasis in original), *writ denied*, 440 So.2d 730 (La. 1983), *and writ denied*, 441 So.2d 747 (La. 1983); *Shows*, 508 So.2d at 994 ("Thus, "LSA–R.S. 14:132 contemplates either that the law expressly mandate or permit the filing or depositing of the record in question and that there be in addition some official act of filing or depositing.").

[139] LRA Statement, at 47-50.

[140] *State v. Reason*, 15-695 (La. App. 5 Cir. 12/7/16), 206 So.3d 419, 423 (citations omitted). This statute also prohibits filing documents containing false statement. However, Plaintiffs have not asserted any violation of that portion of the statute, nor could they. LRA Statement, at 50-52. *White v. City of Kenner ex rel. Police Dept.*, 08-195 (La. App. 5 Cir. 9/16/08), 996 So.2d 294, 297-99, *writ denied*, 2008-2503 (La. 12/19/08), 996 So.2d 1135.

[141] LRA Statement, at 50-52.

[142] LRA Statement, at 51.

statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[143]  Plaintiffs do not identify specific statements they allege are false, and they do not plead that the alleged "false statements" comprise untrue statements of material fact or statements of aspiration, belief, or opinion (which are not considered "false statements").[144]  Plaintiffs fail to meet the requirements of Rule 9(b).

Plaintiffs also fail to allege a violation of La. R.S. 14:133.  While Plaintiffs name four putative custodians of documents, Plaintiffs fail to identify any particular document containing a false statement which any of these custodians was required "by law, regulation or rule" to maintain.[145]  Nor do Plaintiffs allege facts supporting a reasonable inference that any of these custodians (the alleged offenders) had actual knowledge of the falsity of statements contained in documents they maintained.[146]

### vi.    Plaintiffs fail to allege a violation of La. R.S. 14:230.

Finally, Plaintiffs assert violations of Louisiana's money laundering statute, La. R.S. 14:230.  Plaintiffs do not specify which subsection of the statute they rely upon, but a review of their allegations indicates they are asserting violations of La. R.S. 14:230(B)(2)-(6):

> (2) Give, sell, transfer, trade, invest, conceal, transport, maintain an interest in, or otherwise make available anything of value known to be for the purpose of committing or furthering the commission of any criminal activity.
>
> (3) Direct, plan, organize, initiate, finance, manage, supervise, or facilitate the transportation or transfer of proceeds known to be derived from any violation of criminal activity.

---

[143] *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (internal quotation marks and citation omitted).

[144] *See Police and Fire Retirement System of City of Detroit v. Plains All American Pipeline, L.P.*, 777 Fed.Appx. 726, 730-32 (5th Cir. July 16, 2019).

[145] LRA Statement, at 51-52.  Plaintiffs fail to identify the document or law requiring maintenance by the custodian.

[146] Under Rule 9(b), a plaintiff must still allege facts sufficient to make an inference of such knowledge plausible. *Ybarra v. Wells Fargo Bank, N.A.*, 575 Fed. Appx. 471, 474 (5th Cir. July 21, 2014).  These facts must include facts about the false statements themselves, which, as discussed *supra*, must be pleaded with particularity.  *U.S. ex rel. Wismer v. Branch Banking and Trust Co.*, 2013 WL 5989312, *7 (N.D. Tex. Nov. 12, 2013).

(4) Receive or acquire proceeds derived from any violation of criminal activity, or knowingly or intentionally engage in any transaction that the person knows involves proceeds from any such violations.

(5) Acquire or maintain an interest in, receive, conceal, possess, transfer, or transport the proceeds of criminal activity.

(6) Invest, expend, or receive, or offer to invest, expend, or receive, the proceeds of criminal activity.

The term "criminal activity" includes any felony offense under state and federal law.[147]

In support of their money laundering claim, Plaintiffs allege generally that "the Enterprise" provided things of value to various persons "for the purpose of" committing the other Predicate Acts.[148]  Plaintiffs also allege that "millions of dollars derived from the intimidation of witnesses and creation of false records" was used to fund athletics facilities, hire and retain LSU employees (including outside legal counsel), and otherwise fund campus activities.[149]  All of Plaintiffs' money laundering allegations depend on the existence of other Predicate Acts to supply the "criminal activity."  Since Plaintiffs fail to allege other Predicate Acts, the money laundering offense fails.

Additionally, Plaintiffs fail to identify any particular transfers of funds (or things of value), the circumstances of the transaction, or who participated in the transaction.  Rather, Plaintiffs' allegations are conclusory and generic, lumping all alleged members of the "Enterprise" together and failing to allege actionable conduct on behalf of any individual.  "[Allegations based on a 'theory of collective responsibility' cannot withstand a motion to dismiss."[150]  Absent such allegations, Plaintiffs do not state a violation of the money laundering statute.[151]

---

[147] La. R.S. 14:230(A)(1), (4). "Proceeds" is limited to "funds," defined as cash and cash equivalents. *Id.* at (A)(2).
[148] LRA Statement, at 53.
[149] LRA Statement, at 54-55.
[150] *Martinez v. City of North Richland Hills*, 846 Fed. Appx. 238, 243 (5th Cir. Feb. 25, 2021) (citation omitted).
[151] *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (allegations with lumped conduct of all defendants together insufficient to state a cause of action against a particular defendant).

PD.36172260.1

Furthermore, La. R.S. 14:230(B)(3)-(6) require proof of transactions involving the "proceeds" of "criminal activity." Under the statutory definition, the source of the "funds" which comprise such "proceeds" must be the "criminal activity." Plaintiffs do not identify **any** funds generated by the commission of any Predicate Act, much less facts concerning any transaction wherein those funds were subsequently used and invested. Per Plaintiffs' own allegations, the sources of funds generated by the LSU football program were voluntary ticket sales and donations made by LSU football supporters, not "criminal activity." Likewise, the funds derived from LSU's general operations were derived from tuition, donations, public funding, *etc.*, not criminal activity.

La. R.S. 14:230(B)(2) requires that any payment be made "for the purpose of committing or furthering the commission of criminal activity." Plaintiffs have not alleged any facts about these transactions, such as who was involved in making such payments or their purpose.

### c.    Plaintiffs Cannot Show the Board Violated La. R.S. 15:1353.

In addition to proving commission of Predicate Acts, Plaintiffs must also allege facts demonstrating violations of La. R.S. 1353, *i.e.*, substantive racketeering violations. Plaintiffs allege violations of all four subsections of Section 1353.[152]

### i.    Plaintiffs fail to allege a violation of La. R.S. 15:1353(a).

Under Section 1353(a) "it is unlawful for any person who has knowingly received any proceeds derived, directly or indirectly, from a pattern of racketeering activity to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in immovable property or in the establishment or operation of any enterprise."[153] This subsection prohibits a person who knowingly receives funds from "racketeering activity" "only from using or

---

[152] LRA Statement, at 2.
[153] *Camsoft Data Systems*, 2019 WL 2865256, *3.

investing the funds either (1) to acquire title to or an interest in immovable property or (2) to establish or operate any enterprise."[154]  Plaintiffs allege the following conduct:

> LSU is liable under La. R.S. § 15:1353(A) for knowingly receiving funds generated by the Enterprise designed to protect and maximize the continuing future revenue created by LSU's successful athletics programs by, inter alia, violating the rights of Sexual Misconduct victims through a pattern of racketeering activity. LSU used and invested these funds to operate and further establish the Enterprise through its control of its Athletics Department and Title IX Office.[155]

Allegations about use or investment of "funds generated **by the Enterprise**" is inapposite.  Section 1353(a) is violated only by use or investment of funds generated from "racketeering activity," *i.e.*, the commission of Predicate Acts.[156]  Plaintiffs fail to identify funds generated by the commission of a Predicate Act or actionable use or investment of such funds.  Also, federal courts have observed under the Federal RICO Act's counterpart that "investment in the racketeering 'enterprise' (i.e., the 'association in fact' of the defendants) itself is insufficient. . . ."[157]

### ii.    Plaintiffs fail to allege a violation of La. R.S. 15:1353(b).

Subsection 1353(b) makes it unlawful "for any person, through a pattern of racketeering activity, knowingly to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or immovable property."[158]  The purpose of this subsection is "to prohibit the takeover of a legitimate business through racketeering, typically extortion or loansharking."[159]  Plaintiffs suggest that the Board violated this subsection by providing inadequate funding for Title IX programs and otherwise incentivizing poor Title IX reporting practices.[160]  Plaintiffs fail to allege

---

[154] *Nine Sav. Accounts,* 553 So.2d at 825.
[155] LRA Statement at 8-9.
[156] *State v. Thibodeaux*, 2020-91 (La. App. 3 Cir. 3/17/21), 313 So.3d 445, 459-61, *writ denied* 2021-00751 (La. 10/5/21), 2021 WL 4550943.
[157] *First South Farm Credit ACA v. Smith*, 2010 WL 11562053, *10 (N.D. Ala. Oct. 25, 2010) (internal quotation marks in original).
[158] *Camsoft Data Systems*, 2019 WL 2865256, *3.
[159] *Vanderbilt Mortg. and Fin., Inc. v. Flores*, 735 F.Supp.2d 679, 700 (S.D. Tex. 2010).
[160] LRA Statement, at 9.

that the ownership or corporate governance of the Board or any immovable changed due to the commission of a Predicate Act, so they fail to state a claim under Section 1353(b).

### iii.    Plaintiffs fail to allege a violation of La. R.S. 15:1353(c).

Subsection 1353(c) makes it unlawful "for any person employed by, or associated with, any enterprise knowingly to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity."[161]  As shown, Plaintiffs fail to allege (1) the existence of a "pattern of racketeering activity," and (2) the existence of an association-in-fact "enterprise" distinct from the Board, so Plaintiffs' failed to state a La. R.S. 15:1353(c) claim.

### iv.    Plaintiffs fail to allege a violation of La. R.S. 15:1353(d).

Subsection 1353(d) makes it unlawful "for any person to conspire or attempt to violate any of the provisions of Subsections A, B, or C of this Section."[162]  An LRA conspiracy claim fails if the complaint fails to plead the requisite elements of the underlying LRA violation.[163]  Plaintiffs' LRA conspiracy claim due to their failure to allege violations of La. R.S. 15:1353(a), (b), or (c),

Plaintiffs' allegations fail to establish the Board violated Section 1353(d):

> by agreeing with one or more co-conspirators to pursue the common criminal objective of operating the Enterprise designed to protect and maximize the future revenue created by LSU's athletics programs by, *inter alia*, violating the rights of Sexual Misconduct victims through a pattern of  racketeering activity.[164]

Plaintiffs do not allege the Board agreed with other defendants to use or invest funds generated by a "pattern of racketeering activity," to employ "racketeering activity" to take control of some discernible enterprise or immovable property, or to conduct the affairs of an "association-in-fact" enterprise through a "pattern of racketeering activity."  Nor do Plaintiffs allege the Board agreed

---

[161] *Camsoft Data Systems*, 2019 WL 2865256, *3.

[162] *Camsoft Data Systems*, 2019 WL 2865256, *3 (quotation marks in original) (internal brackets omitted).

[163] *Nolen v. Nucentrix Broadband Networks, Inc.*, 293 F.3d 926, 930 (5th Cir. 2002); *see Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

[164] LRA Statement, at 10. *Egana v. Blair's Bail Bonds Inc.*, 2019 WL 1111465, *4 (E. D. La. March 11, 2019) (citation omitted); *see Gopalam v. Smith*, 2014 WL 518199, * (M.D. La. Feb. 6, 2014).

with others to commit Predicate Acts. "[M]ere association with conspirators or knowledge of illegal activity" are insufficient to establish a conspiracy to violate the LRA.[165]

### 3.    Plaintiffs fail to allege proximate causation.

Plaintiffs must establish a substantive LRA violation and meet the causation requirements of the LRA. La. R.S. 15:1356(E) provides a remedy only for a person "who is injured **by reason of** any violation" of the LRA (emphasis supplied). Under the Federal RICO Act, a person is injured 'by reason of' a RICO violation if the predicate acts constitute both but for and proximate causation of the injury.[166] Proximate causation requires the injury be directly attributable to the "racketeering activity" (*i.e.*, one of the predicate acts).[167] The injury-causing act itself must be a violation of the LRA, not simply caused by some act in furtherance of an LRA enterprise or conspiracy.[168]

Plaintiffs do not allege any Predicate Act led directly to the physical and sexual assaults, emotional distress, and economic harm they allegedly suffered. None of the acts of physical or sexual assault is an act of "racketeering activity." Nor do Plaintiffs allege any emotional distress or economic harm as a direct result of any alleged Predicate Acts. Finally, Plaintiffs do not allege that their harms were the result of any "use or investment" of the proceeds of "racketeering activity," or the acquisition or maintenance of any enterprise or immovable property.[169] Plaintiffs fail to allege they were injured "by reason of" an LRA violation.

---

[165] *Elliot*, 571 F.2d at 903 (citation omitted).

[166] *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989) (quotation marks in original) (listing cases).

[167] *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("[T]he plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well (internal quotation marks omitted) (*discussing Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992)).

[168] *Beck v. Prupis*, 529 U.S. 494, 505-06 (2000) (holding that plaintiff's injury was caused by overt act in furtherance of RICO conspiracy was insufficient as a matter of law to prove proximate causation).

[169] *See Parker & Parsley Petroleum Co. v. Dresser Indust.*, 972 F.2d 580, 584 (5th Cir.1992) ("[T]he causal language of section 1964(c) requires that the compensable injury stem from the violation of the RICO section in question, so any injury under section 1962(a) must flow from the use or investment of racketeering income."); *MH Pillars Ltd. v. Realini*, 2018 WL 1184847, *8 (N.D. Cal. 2018).

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**


BY:    /s/ *Susan W. Furr*
          Susan W. Furr Bar Roll No.  19582
          Karleen J. Green Bar Roll No.  25119
          Shelton Dennis Blunt Bar Roll No. 21230
          Michael B. Victorian Bar Roll No. 36065
          Molly C. McDiarmid Bar Roll No. 36426
          *Special Assistant Attorneys General*
          II City Plaza | 400 Convention Street, Suite 1100
          Baton Rouge, Louisiana 70802
          Telephone: 225 346 0285
          Facsimile: 225 381 9197
          Email: susie.furr@phelps.com
          Email: karleen.green@phelps.com
          Email: michael.victorian@phelps.com
          Email: molly.mcdiarmid@phelps.com


ATTORNEYS FOR LOUISIANA STATE
UNIVERSITY AND BOARD OF
SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL AND
MECHANICAL COLLEGE

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on November 8, 2021, with the Court's CM/ECF system, which will electronically send a copy of the same to all counsel of record.

          /s/ *Susan W. Furr*
          Susan W. Furr