### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **Abby Owens, et al.**<br>*Plaintiff* | **Case No.: 3:21-cv-00242-WBV-SDJ** |
| **v.** | **JUDGE WENDY B. VITTER** |
| **Louisiana State University, et al.**<br>*Defendants* | **MAGISTRATE JUDGE SCOTT D. JOHNSON** |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

## I. INTRODUCTION

Defendant Sharon Lewis submits this memorandum in support of her Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiffs sued 18 Defendants for what amounts to alleged Title IX violations.[1] Since the individually named Defendants, including Lewis, cannot be sued under Title IX (because Title IX applies only to the recipient of federal funds[2]), Plaintiffs have asserted various other Constitutional and state law claims against them that encompass largely the same conduct as prohibited by Title IX. To that end, Plaintiffs have asserted 12 claims against Lewis in both her personal and official capacities.[3]

## II. FACTUAL AND PROCEDURAL BACKGROUND

Sharon Lewis is a long-time LSU Football Operations employee, who currently serves as the Associate Athletic Director for Football Recruiting and Alumni Relations.[4] Only two of the Plaintiffs, Calise Richardson and Samantha Brennan, have asserted factual allegations and claims

---

[1] R. Doc. 21, p. 2, ¶ 1.

[2] *Minnis v. Board of Supervisors of Louisiana State Univ.*, 972 F.Supp.2d 878, 889 (M.D. La. 2013) (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009)).

[3] R. Doc. 22, p. 10. ¶ 40.

[4] R. Doc. 22, p. 10, ¶ 40; R. Doc. 22-1, p. 49, ¶ 3.

against Lewis. Both Richardson and Brennan worked in the football recruiting office, where Lewis was their supervisor; it is solely through their work that they came into contact with Lewis.[5]

## A. Plaintiff Calise Richardson's Factual Allegations Concerning Lewis

The gravamen of Richardson's claim against Lewis emanates from an incident in October 2016.[6]  This incident is fully documented, in Richardson's own words, in the Husch Blackwell report, which is referenced and incorporated into the Amended Complaint and which controls.[7] The incident at issue occurred after a football game, at a bar, and involved Richardson throwing a drink at a football player (identified as "John Coe").[8] Lewis first learned of the incident through John Coe's position coach, Dameyuen Craig, who requested that Richardson be fired for her conduct.[9] Lewis refused to terminate Richardson without first hearing her side of the story; therefore, Lewis initiated a meeting with Richardson (with Defendant Keava Soil-Cormier as a witness) to find out why she threw the drink on John Coe.[10]

In the Amended Complaint, Richardson claims that it was during this meeting she informed Lewis and Soil-Cormier that John Coe had "physically attacked her" and committed "dating violence."[11] However, this allegation is belied and directly contradicted by Richardson's statements in Husch Blackwell report wherein she admits she did _not_ disclose she was physically abused by John Coe.[12] Indeed, Richardson admitted she was not ready to tell anyone about her

---

[5] R. Doc. 22, p. 41, ¶ 177. *See Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021) ("If an attached exhibit contradicts a factual allegation in the complaint, then indeed the exhibit and not the allegation controls.") (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)).

[6] R. Doc. 22, p. 29, ¶ 123.

[7] R. Doc. 22-1, p. 58.

[8] *Id.*

[9] R. Doc. 22-1, pp. 59, 62.

[10] R. Doc. 22, p. 29, ¶ 125; R. Doc. 22-1, p. 62, ¶ 2.

[11] R. Doc. 22, pp. 29-30, ¶¶ 126, 128.

[12] R. Doc. 22-1, p. 60, ¶¶ 2-3.

abusive relationship with John Coe at that time.[13] Richardson stated she "never told anyone [of John Coe's abuse] because she really liked him and wanted to help him."[14]

In the Amended Complaint, Richardson further alleges Lewis and Soil-Cormier minimized, laughed at, and mockingly questioned her during the meeting; failed to offer any support, resources, accommodations or interim measures; and, failed to report the incident to LSU's Title IX Office or advise Richardson she could report the incident to the Title IX Office.[15] Again, these factual allegations are not supported by the Husch Blackwell report. First, Richardson admits Lewis offered to call campus police and Richardson declined because she was not ready to publicly disclose her allegations of abuse by John Coe. [16] Likewise, Lewis followed the then-Athletic Department policy by immediately reporting the incident Miriam Segar, who was designated as the point person and Title IX coordinator for the Athletic Department.[17]

Richardson further claims that after the meeting she was retaliated against; however, she does not specifically allege Lewis took any actions to retaliate against her. Richardson alleges the "LSU Athletics Department" refused to schedule her to work at events in which John Coe participated.[18] Richardson does *not* allege Lewis was the decision maker, had any part in, or knowledge of that decision.[19] Richardson also claims she was terminated from her student job in the Football Recruiting Office in 2017.[20] While Lewis met with Richardson to discuss her

---

[13] R. Doc. 22-1, p. 60, ¶ 4.

[14] R. Doc. 22-1, p. 62. Further, Lewis adamantly denies Richardson disclosed John Coe committed any physical or sexual assault and, instead, during the meeting, Richardson told Lewis John Coe "never hit her" and she denied feeling threatened.

[15] R. Doc. 22, p. 30, ¶¶ 126, 129, 131. As noted in the Husch Blackwell report, Lewis (along with two other witnesses) adamantly denies this. R. Doc. 22-1, p. 60, ¶ 4.

[16] R. Doc. 22-1, p. 60.

[17] R. Doc. 22-1, pp. 62, 63.

[18] R. Doc. 22, p. 31, ¶ 132.

[19] *Id.*

[20] R. Doc. 22, p. 33, ¶¶ 141-142.

termination, Richardson does _not_ allege Lewis was the decision-maker as to her termination.[21] However, Richardson candidly admits that she immediately began working for another division in the Athletic Department, seemingly undercutting her retaliation claim.[22]

## B. Plaintiff Samantha Brennan's Factual Allegations Concerning Lewis

Brennan alleges on July 9, 2016, after a night in a bar when she was heavily intoxicated, she and a football player (identified as "John Doe") engaged in sexual relations[23], but she could not remember the details.[24] A few weeks later, on July 22, 2016, Brennan learned from a coworker that Joe Doe had purportedly taken a nude photograph of her, without her knowledge or consent, and he shared the photograph with members of the football team.[25] Lewis and Miriam Segar met with Brennan that same day to discuss the allegations involving John Doe.[26] It is undisputed that Lewis followed the Athletic Department policy by immediately apprising Miriam Segar (the designated Title IX coordinator for the Athletic Department) of the incident.

In the Amended Complaint, Brennan alleges Miriam Segar (not Lewis) took her to the LSU Police Department to file a complaint about the photograph, seemingly against her wishes.[27] Brennan decided not to pursue criminal charges against John Doe and she "wished to remain anonymous as it relates to LSU CARE, Title IX, Lighthouse, etc."[28] Brennan alleges she was never contacted by anyone at the Title IX Office and she is unaware if there was a Title IX investigation

---

[21] _Id._

[22] R. Doc. 22, p. 34, ¶ 147.

[23] Notably, the police report filed by Brennan states that she did not feel that she was sexually assaulted. R. Doc. 22-1, p. 101, "She did not recall fully what happened the night before **but she did not feel as if she was assaulted**. . . ."

[24] R. Doc. 22, pp. 41-42, ¶¶ 178-179.

[25] R. Doc. 22, p. 42, ¶ 180.

[26] R. Doc. 22, p. 42, ¶¶ 181-182.

[27] R. Doc. 22, pp. 42, ¶ 183.

[28] R. Doc. 22-1, p. 101.

into her complaint.[29] However, it is apparent from the Husch Blackwell report that LSU's Title IX

Office was aware of her complaint.[30]  If Miriam Segar or the Title IX Office did not appropriately

investigate and respond to Brennan's issue, that claim would properly be directed toward LSU's

Board of Supervisors (as a Title IX violation), not Lewis. Lewis did exactly what she was

instructed to do by notifying Miriam Segar, who had been designated as the Title IX employee for

the Athletics Department.  To the extent Brennan alleges any wrongdoing by Lewis, this directly

contrary to her statements made at the time, where she texted she "was really surprised how

supportive everyone was, *especially Ms. Sharon [Lewis]*."[31]

### III. LEGAL STANDARD AND ANALYSIS

### A. Dismissal under Fed. R. Civ. P. 12(b)(1): Lewis Has Sovereign Immunity

All claims against Lewis in her official capacity must be dismissed as she has Sovereign

Immunity.  "The Eleventh Amendment bars an individual from suing a state in federal court unless

the state consents to suit[32] or Congress has clearly and validly abrogated the state's sovereign

immunity."[33] State agencies, arms of the state and government officials acting in their official

capacities are included in this protection when the state is the real party in interest.[34]  The Supreme

Court carved out an exception to Eleventh Amendment immunity in *Ex Parte Young*, permitting

suits for prospective relief against state officials in their official capacity acting in violation of

---

[29] R. Doc. 22, p. 43, ¶ 184.

[30] R. Doc 22-1, p. 101.

[31] R. Doc. 22-1, p. 100, § 3.

[32] The State has not waived it sovereign immunity in this case.

[33] *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).

[34] *Minnis,* 972 F. Supp. 2d at 887 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)); *see also, Lewis v. La. State Univ.*, No. 3:21-cv-001989-SM-RLB, 2021 WL 5752239 at *8-12 (M.D. La. Dec. 2, 2021) (holding the LSU Board of Supervisors is an arm of the state entitled to Eleventh Amendment immunity).

federal law.[35] However, to fit within the *Ex Parte Young* exception, plaintiffs must "allege an ongoing violation of federal law, and seek relief that properly can be characterized as prospective."[36]

Neither Richardson nor Brennan fit within the narrow *Ex Parte Young* exception (and their equitable claims are moot) because they have not alleged any ongoing violations of federal law and no reasonable expectation that they would be subject to the same actions again. In fact, Richardson has graduated from LSU.[37] Thus, she does not have standing to request a permanent injunction or to proceed against Lewis in her official capacity under the *Ex Parte Young* exception. Likewise, although Brennan has recently re-enrolled as a student at LSU[38], she does not have standing for a equitable relief or to pursue claims against Lewis in her capacity under *Ex Parte Young* because she has not alleged any ongoing, continuing violation of federal law by Lewis; instead, her allegations date back to a single incident in 2016.[39] Further, the Athletic Department's policies for reporting Title IX violations were revised and clarified in 2019; the policy now clearly provides employees must report a Title IX concerns directly to LSU's Title IX Coordinator, not to Miriam Segar.[40] Plaintiffs have not alleged Lewis has violated the newly enacted policy. Because neither Richardson nor Brennan allege any ongoing violations of federal law, they lack subject matter jurisdiction and standing to pursue claims against Lewis in her official

---

[35] *Blessett v. Texas Office of Attorney General*, No. 20-40135, 2021 WL 4726598, at *1 (5th Cir. Oct.. 8, 2021) (citing *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)).

[36] *Id.* (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.")).

[37] R. Doc. 22, p. 21, ¶ 21; R. Doc 22-1, p. 57, §2.

[38] R. Doc. 22, p. 44, ¶ 189.

[39] R. Doc. 22, p. 42, ¶ 181.

[40] R. Doc. 21-1, pp. 34, 37-38.

capacity for prospective relief.[41] Additionally, state officials acting in their official capacities cannot be sued for violations of <u>state law</u> in federal court, even under the *Ex Parte Young* exception.[42] Thus, Lewis, in her official capacity, is immune from all of Plaintiffs' claims.

**B. Dismissal of Plaintiffs' "Shotgun" Pleadings under Fed. R. Civ. P. 12(b)(6)**

Complaints violating Fed. R. Civ. P. 8(a)(2) and 10(b) are subject to dismissal under 12(b)(6).[43] "Complaints violating either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"[44] The "unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, or in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."[45] "A dismissal under Rules 8(a)(2) and 10(B) is appropriate where it is virtually impossible to know which allegations of fact are intended to support which claims for relief."[46]

Plaintiffs' Amended Complaint suffers from "shotgun" pleading deficiencies and violates Rules 8(a)(2) and 10(b). First, under no circumstances could Plaintiffs' Amended Complaint be considered a "short and plain statement of the claims." To the contrary, the Amended Complaint is 144 pages and contains over 589 paragraphs; further, it attaches and under Fed. R. Civ. P. 10(c),

---

[41] *Muslow v. Board of Supervisors of La. State Univ.*, No. 19-11793, 2020 WL 1864876, at *11-12 (E.D. La. April 14, 2020) (citing *Gilbert v. Donohoe*, 751 F.3d 303, 313 (5th Cir. 2014)).

[42] *Corn v. Mississippi Dept. of Public Safety*, 954 F.3d 268, 275 (5th Cir. 2020) (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

[43] *See Adams v. Walker*, No. CV 20-2794, 2021 WL 1894865, at *2 (E.D. La. May 11, 2021); *see also, Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-1127 (11th Cir. 2014) ("A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6). . . on the ground that the complaint provides it with insufficient notice to enable it to file an answer."); *Roe v. Johnson Cty., Texas*, No. 3:18-CV-2497-B-BN, 2019 WL 5031357, at *5 (N.D. Tex. July 29, 2019), report and recommendation adopted, No. 3:18-CV-2497-B-BN, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019) ("Shotgun pleadings are subject to dismissal under Rule 12(b)(6)").

[44] *Garig v. Travis*, No. 20-654-JWD-RLB, 2021 WL 2708910, at *17 (M.D. La. June 30, 2021) (citing *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (detailing the four most common "shotgun pleadings").

[45] *Id.*

[46] *Id.*

incorporates, the Husch Blackwell report (150 pages)[47], all of the exhibits to the Husch Blackwell report[48] (111 pages), and Ed Orgeron's contract (35 pages)[49]. The Amended Complaint references and incorporates two separate hearings before the La. Senate Select Committee of Women & Children, approximately 16 hours of testimony.[50] The length and breadth of the Amended Complaint alone warrants dismissal.[51]

However, the most egregious "shotgun" pleading violation is Plaintiffs' "group pleadings," that is, combining all of the Defendants, *in globo* as a collective group, for each Count, without specifying facts showing how each separate Defendant allegedly violated the law.[52] Plaintiffs "lump all Defendants together and generally state that Defendants' committed the alleged acts," rendering it "virtually impossible" for the Court and any individual Defendant to discern the specific factual predicate or grounds of the each claim made against each individual Defendant.[53]

---

[47] R. Doc. 22-1, pp. 1-150.

[48] R. Doc. 22-1., pp. 151-262.

[49] R. Doc. 22-2, pp. 1-35.

[50] R. Doc. 22, p. 2, FN1; p. 18, FN 12; p. 20. ¶ 92; p. 21, FN 15; p. 24, ¶104, FN 20; p. 26, FN 22, 23.

[51] *McZeal v. J.P. Morgan Chase Bank, NA*, No. 13-6754, 2014 WL 3166715, at *7-9 (E.D. La. July 7, 2014) (dismissing complaint that was 57 pages and "incomprehensible and disjointed" finding "If the Court cannot determine these facts, neither can the Defendants," and holding the Compliant failed to place the Defendants on notice of the claims against them and finding amendment would be futile); *Muniz v. Medtronic, Inc*., No. A-13-CA-451-SS, 2014 WL 1236314, at *2 (W.D. Tex. Mar. 20, 2014) (dismissing 77 page complaint, stating, "The Court does not have the time or patience to read counsel's novel, and identify the precise issues relevant to whether the plaintiff has actually stated a claim that would survive a Rule 12(b)(6) motion to dismiss"); *see also Jaser v. AT&T Services Inc.*, No. 3:18-CV-3429-B-BH, 2020 WL 1329151 at *4-5 (N.D. Tex. March 23, 2020) (dismissing 180-page complaint against 20 defendants with a 310-page attachment); *Kluksdahl v. Loyola University New Orleans*, No. 16-2990, 2016 WL 4261732 at *1 (E.D. La. Aug. 12, 2016) (finding the plaintiff's 130-page complaint, consisting of "rambling, scattered arguments and factual allegations," "unquestionably fail[ed] to include 'a short and plain statement of the claim showing that the pleader is entitled to relief" under Rule 8, and ordering plaintiff to file an amended complaint not to exceed 20 pages) (citing *Barnes v. Tumlinson*, 597 Fed. Appx. 798, 799 (5th Cir. 2015) (holding it was within the Court's discretion to limit plaintiff's voluminous pleadings to 30 pages).

[52] *See Cubas v. St. James Parish Sch. Bd.*, No. 20-1322-WBV-KWR, 2021 WL 1212537, at * 7 (E.D. La. March 31, 2021) (citing *Martinez v. City of North Richland Hills*, 846 Fed. Appx. 238, 243 (5th Cir. 2021) (observing that while "referring to a collective group of defendants is not a fatal pleading deficiency, each defendant is still entitled to know what he or she did that is asserted to be wrongful)).

[53] *Garig*, 2021 WL 2708910, at *19.

"By failing to provide corresponding factual support for each separate cause of action, failing to specify what Defendant took what action. . . . the Complaint violates the letter and spirit of Rules 8 and 10."[54] Thus, Plaintiffs' allegations based on a "theory of collective responsibility" cannot withstand a motion to dismiss.[55]

The Amended Complaint is also an impermissible "shotgun" pleading because it "sets forth an excessive number of facts and then asserts in a conclusory fashion that each of those facts supports a number of legal claims, with the result that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies."[56] The Amended Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."[57] Many claims use language taken verbatim from the legal elements of the claims, without specifying which facts support each claim against each defendant. There are many examples of this throughout the Amended Complaint.[58]

## C. Dismissal of Count V: Plaintiffs' Retaliation Claim under Title IX

Title IX applies only to "institutions and programs that receive federal funds. . ." and has "consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."[59] Plaintiffs have improperly asserted a Title IX retaliation claim against the individual defendants, including Lewis. Courts within the Fifth Circuit routinely dismiss Title IX

---

[54] *Garig*, 2021 WL 2708910, at * 18.

[55] *Cubas*, 2021 WL 1212537, at *7 (quoting *Martinez*, 2021 WL 742662, at * 4).

[56] *Martin v. Tesoro Corp.*, No. 2:11 CV 1413, 2012 WL 41866841, at *2 (W.D. La. May 21, 2012) (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11 Cir. 2001)).

[57] *Garig*, 2021 WL 2708910, at *18.

[58] *See, e.g.*, R. Doc. 22, p. 107, ¶ 436 (Plaintiffs' Equal Protection claim is limited to one paragraph stating Plaintiffs were discriminated on the basis of their sex without any specific facts to establish how each Defendant discriminated against the Plaintiffs).

[59] *Minnis*, 972 F.Supp.2d at 889 (citing *Fitzgerald*, 555 U.S. at 257); *see also, Alegria v. Williams*, 314 Fed. Appx. 687. 690 (5th Cir. 2009).

retaliation claims asserted against individuals.[60] To the extent Plaintiffs attempt to rely on regulations, 29 C.F.R.§ 106.71(a), as a source of a claim against individual defendants, that too has been rejected.[61] Because there is no individual liability under Title IX, the retaliation claim asserted against Lewis under Title IX must be dismissed.

## D. Dismissal of Counts VI, VII, and VIII: Plaintiffs' Claims under 42 U.S.C. §1983

A state official may be sued in his individual capacity and held personally liable under §1983 if Plaintiffs can show the official, acting under state law, caused the deprivation of a federal right.[62] "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation.[63]

### 1. Lewis is Entitled to Qualified Immunity as to All §1983 Claims

As a defense to § 1983 claims, Lewis invokes her qualified immunity. Qualified immunity insulates officials from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[64] It protects "all but the plainly incompetent or

---

[60] *See Stollings v. Texas Tech Univ.*, No. 5:20-CV-250-H, 2021 WL 3748964, at *12 (N.D. Tex. Aug. 25, 2021) ("Moreover, the Court dismisses the Title IX claim against [the individually named Defendant] because only federally funded educational institutions are subject to liability in private causes of action under Title IX."); *Clark v. Nicholls State Univ.*, No. 19-6054, 2020 WL 360511, at * 2 (E.D. La. Jan. 22. 2020) ("Additionally, as to the individual Defendants, there is no individual liability under Title IX.") (citing *Plummer v. Univ. of Houston*, 860 F.3d 767, 783 n. 12 (5th Cir. 2017)).

[61] *Bowers v. Baylor*, 862 F.Supp. 142, 145-46 (W.D. Tex. 1994); *see also, Schrader v. Emporia State Univ.*, No. 19-2387-DDC-TJJ, 2021 WL 4284543, at * 22 n. 14 (D. Kan. Sept. 21, 2021) (noting 34 C.F.R. 106.71 was recently amended, taking effect on August 14, 2020, after the conduct giving rise to the lawsuit, and is only given prospective effect).

[62] *McKey v. August*, No. 16-13642, 2021 WL 3602659, at * 6 (E.D. Aug. 13, 2021) (citing *Terry v. City of New Orleans*, 523 F.Supp.2d 486 (E.D. La. 2007)).

[63] *Id.* (citing *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002)).

[64] *Id.* (citing *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

those who knowingly violate the law."[65] This standard allows "ample room for mistaken judgments."[66]

"When a defendant asserts qualified immunity, the plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[67] Thus, in order to defeat Lewis's qualified immunity defense, Plaintiffs' Amended Complaint must allege facts that, if true, show Lewis violated their rights by acting in a way she should have known was unlawful.[68] "When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited [the official's] conduct that every reasonable official would understand that what [she] is doing violates the law."[69] A defendant's actions "are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution. . . ."[70]

Lewis is entitled to qualified immunity because, at all times, she dutifully followed the Athletic Department's policies and procedures for reporting sexual misconduct; those policies required Lewis to report issues to Miriam Segar, who was designated as the Athletic Department's Title IX point person and coordinator.[71] Lewis did exactly what she was responsible for doing, followed the policy, and reported incidents to Miriam Segar; thus, she acted as any reasonable

---

[65] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[66] *McKey*, 2021 WL 3602659, at * 6 (citing *Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2001)).

[67] *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *Moody v. Walker*, No. 2656-WBV-DMD, 2021 WL 3423597, at *10 (E.D. La., Aug. 5, 2021) (citing *Shaw v. Villanueva*, 918 F.3d 414, 417 (5th Cir. 2019)).

[68] *Minnis*, 972 F. Supp. 2d at 885.

[69] *Id.; McKey*, 2021 WL 3602659, at * 6 (citing *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001)); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (internal quotations omitted).

[70] *McKey*, 2021 WL 3602659, at * 6 (citing *Thompson*, 245 F.3d at 457).

[71] R. Doc. 22-1, pp. 31, 62, 182-183, 185-186, 188, 195-200.

government official would have by following a policy she had no reason to question and certainly no reason to believe was unlawful. Plaintiffs' suggestion that the Athletic Department's policy and procedures may have been in violation of Title IX, which is denied, is not a claim that can be asserted against Lewis as she had no authority or responsibility for drafting LSU's policies. Further, as demonstrated, Lewis did not knowingly violate Plaintiffs' constitutional rights; instead, she acted just as any other reasonable official in her circumstances would have under the circumstances.

### 2. Plaintiffs' First Amendment Retaliation Claims

Count VI contains Plaintiffs' First Amendment retaliation claims.

#### a. Richardson and Brennan's Disclosures to Lewis were Personal Grievances, Not Matters of Public Concern

To establish First Amendment retaliation claim, Richardson and Brennan must show, amongst other elements, they engaged in protected speech. Because not all speech is protected by the First Amendment, to allege a plausible claim that their speech was the basis for retaliation by Lewis, Plaintiffs must identify the statements they rely upon.[72] In an instance of Plaintiffs' "shotgun" pleading, Richardson and Brennan fail to identify in the Amended Complaint the particular statements they are relying upon for this claim against Lewis. The only speech Richardson and Brennan made to Lewis concerned their very personal issues/complaints involving John Doe and John Coe in 2016.[73] However, the content, form, and context of this speech demonstrates that it was not protected speech on a matter of public concern[74], but instead, they

---

[72] *Mandawala v. Baptist School of Health Professions*, No. SA-19-CV-01415-JKP-ESC, 2020 WL 10352338, at *3 n 1 (2021) (citing *Judeh v. La. State Univ. Sys.*, No. 12-1758, 2013 WL 1702052 at *4 (E.D. La. April 18, 2013)).

[73] R. Doc. 22, p. 29, ¶ 123; R. Doc. 22, p. 42, ¶ 181.

[74] Richardson and Brennan were both students and public employees of the Athletic Department, and, thus, their speech must have been made as a citizen on a matter of public concern in order to receive protection. *See Moody*, 2021 WL 3423597, at *10-11 (citing *Goudeau v. East Baton Rouge Parish Sch. Bd.*, 540

were speaking only concerning private matters. Richardson and Brennan made these alleged statements "up the chain of command" to Lewis, their supervisor in the Athletics Department.[75] As to the form of the complaint, both Richardson and Brennan spoke with Lewis in private, closed-door, confidential meetings, which weighs against concluding that it was public concern.[76] The context of the speech also demonstrates that it was a private concern: In 2016, Richardson and Brennan's complaints were not made "against a backdrop of widespread debate in the community" or otherwise "active and articulated public concern."[77] It was not until years later Richardson and Brennan went public with their complaints about LSU's handling of Title IX matters (by testifying before a Senate committee and speaking with media).[78] As a matter of law, these types of personal issue or grievances "are rarely a matter of public concern."[79] Because Richardson and Lewis have failed to identify any protected speech on a matter of public concern made to Lewis (which

---

Fed.Appx. 429, 434 (5th Cir. 2013)); *Jones v. Turner*, No. 10-0235, 2011 WL 4406349, at *2 (W.D. La. Sept. 21, 2011) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). This is not a typical student speech case (where a school seeks to suppress or regulate the speech of a student) so that the standard of *Tinker v. Des Moines Indep. County Sch. Dist.*, 292 U.S. 503, 506 (1969) should not apply.

[75] *Moody*, 2021 WL 3423597, at * 11 (citing *Davis v. McKinney*, 518 F.3d 303, 313 & n.3 (5th Cir. 2008)).

[76] *Muslow*, 2020 WL 1864876, at * 19 (citing *Gibson v. Kilpatrick*, 838 F.3d 476, 486 (5th Cir. 2016)).

[77] *Muslow*, 2020 WL 1864876, at *20.

[78] *See* R. Doc. 22, p. 43, ¶ 186 (Brennan decided to go public on August 19, 2020). Lewis concedes that Richardson and Brennan's public statements to the press and Husch Blackwell in 2020 are protected speech on a matter of public concern. However, they have not alleged those statement precipitated any adverse actions against them by Lewis.

[79] *Muslow*, 2020 WL 1864876, at * 18 (citing *Harmon v. Dallas County*, 927 F.3d at 895); s*ee also*, *Marceaux v. Lafayette City-Parish Consol. Govt.*, 614 Fed. Appx. 705, 710, 2015 WL 3544648, at * 4 (5th Cir. June 8, 2015) (per curiam) (holding when a speaker "addresses personal matters" and the matters were "grievances communicated up the chain of command," the "speech falls outside the protection of the First Amendment."); *Short v. City of West Point, Miss.*, No. 97–60086, 1997 WL 575048, *1 (5th Cir. Aug. 29, 1997) (holding an individual's complaint with the EEOC about discrimination is a private, personal dispute which is not protected by the First Amendment); *Ayoub v. Texas A & M Univ.*, 927 F.2d 834, 837 (5th Cir. 1991) (holding professor's complaint about his pay was an issue of private concern because the complaint focused only on the professor's individual issues); *Hays v. LaForge*, 113 F. Supp.3d 883, 900 (N.D. Miss. 2015) (holding Plaintiff's grievance was not public and related to matters that were personal to him and internal to the university, and thus was not actionable First Amendment speech).

allegedly would have motivated Lewis to take adverse action or chill their speech), their First Amendment claim should be dismissed.

### b. Plaintiffs Have Not Alleged Lewis Caused Them to Suffer an Adverse Employment Action or an Injury that Would Chill their Speech

Even if Richardson and Brennan's statements to Lewis constitute protected speech, they have not alleged sufficient facts to establish Lewis violated their rights by either taking adverse employment actions against them or causing them to suffer an injury intentionally designed to chill their speech. As to the adverse employment action element, Richardson claims she was terminated from her job in the football recruiting office months after her meeting with Lewis.[80] However, Richardson does not allege that Lewis was the decision maker to the termination (as opposed to being terminated due to an across-the-board reduction in force of the student-workers) or that Lewis was motivated with any intent to retaliate against her for the alleged statements she made about John Coe. Brennan does not allege Lewis, or any other person in the Athletic Department, took any adverse employment actions against her after her report of John Doe's alleged conduct.

Further, Richardson and Brennan have failed to allege sufficient facts to establish Lewis's actions caused them to suffer any injury that would chill a person of ordinary firmness from continuing to engage in protected speech. Courts have found that "some retaliatory actions-even if they actually have the effect of chilling the plaintiff's speech-are too trivial or minor to be actionable as a violation of the First Amendment."[81]  Indeed, neither Richardson nor Brennan alleges any actions by Lewis that rise to the level of injury courts have found sufficient to chill the speech of a person of ordinary firmness.[82] At most, Richardson alleges Lewis laughed at and

---

[80] R. Doc. 22, p. 33, ¶ 142.
[81] *O'Neal v. Falcon*, 668 F. Supp. 2d 979, 987 (W.D. Tex. 2009) (citing *Keenan,* 290 F.3d at 258).
[82] Courts have found injuries sufficient to "chill" the speech of a person of ordinary firmness include: drawing guns on plaintiffs during a routine and potentially unwarranted traffic stop and separately and falsely charging plaintiffs with "deadly conduct"; *Keenan,* 290 F.3d at 259; violating local laws in refusing

"mockingly questioned" her statement that she was afraid of John Coe; even if true, as a matter of

law, this conduct falls far short of anything likely to chill speech.[83]

### c. Lewis is Entitled to Qualified Immunity

Plaintiffs have not pled sufficient facts to overcome Lewis's qualified immunity to the First

Amendment claims.  Plaintiffs have not alleged facts demonstrating Lewis (or a person in her

position) would have reasonably known Richardson and Brennan's statements made in 2016, in

private, closed door meetings, concerning their personal issues involving John Coe and John Doe,

constituted speech protected by the First Amendment. Further, Lewis could not have known or

anticipated that a reduction in force (that applied to half of the student-workers in football

recruiting office) that she did not mandate would constitute a violation of Richardson's First

Amendment rights. Finally, even if Lewis laughed and mocked Richardson (which is adamantly

denied), no government official would know this isolated, off-hand conduct was unlawful or could

---

to grant a land permit; *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 40-41 (1st Cir. 1992); publication of "irrelevant, humiliating, and confidential" information related to plaintiff's rape; *Bloch v. Ribar*, 156 F.3d 673, 681 (6th Cir. 1998); and arresting plaintiff, handcuffing and placing him into leg irons, and holding him overnight in the coldest cell in the jail; *Simmons v. City of Mamou*, Civ. No. 09–663, 2012 WL 912858, at *7 (W.D. La. Mar. 15, 2012).

[83] Courts have found injuries more severe than those alleged by Richardson and Brennan to have been caused by Lewis insufficient to "chill" the speech of a person of ordinary firmness, including: criticism of a student's speech and presentation in a speech class by analogizing the speech style to that of a "drill sergeant"; *O'Neal*, 668 F.Supp.2d at 988; preventing access to information about a university athletics program, including by detaining and ticketing plaintiff for trespassing in university hallway; *Smith v. Plati*, 258 F.3d 1167, 1176-77 (10th Cir. 2001); encouraging the manager of a State office to not allow plaintiff to use the office's resources where the plaintiff was researching his case against the federal government; *Smart v. Holder*, 368 Fed. App'x 591, 592 (5th Cir. 2010); a traffic stop resulting in a speeding ticket where probable cause existed for the stop; *Benson v. McKinney*, Civ. No. 07–0672, 2009 WL 1033172, at *7 (W.D. La. Apr. 16, 2009); falsifying a police report, refusal to interview witnesses, and failure to enforce a temporary restraining order; *Doe v. County of San Mateo*, 2009 WL 735149, at *6-7 (N.D. Cal. Mar. 19, 2009); and failure to investigate plaintiff's criminal complaint and failure to enforce a protective order; *Walbert v. Wichita Police Dept.*, Civ. No. 10–1234–MLB, 2011 WL 2473143, at *2 (D. Kan. June 21, 2011).

be construed as sufficiently severe as to chill an individual's speech as a matter of Constitutional law. Simply put, these were not "clearly established" rights under the First Amendment.[84]

### 3. Plaintiffs' Equal Protection Claims

Count VII of the Amended Complaint sets forth Plaintiffs' Equal Protection claims under the Fourteenth Amendment. The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction the equal protection of the laws, which "is essentially a direction that all persons similarly situated should be treated alike."[85] In order to state a claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff can either allege that "a state actor intentionally discriminated against him because of membership in a protected class," or that "he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." [86]

Plaintiffs have failed to allege any specific facts to establish Lewis either intentionally discriminated against Plaintiffs because of their sex or intentionally treated Plaintiffs differently from other similarly situated individuals, i.e., similarly situated males who reported violations of Title IX. Indeed, Plaintiffs make no mention of how the complaints of similarly situated individuals outside their protected class were handled. In addition, Lewis is entitled to qualified immunity as to the Equal Protection claim because Lewis's actions of following the Athletic Department policy of reporting all complaints and issues involving student workers and student athletes to Miriam Segar were objectively reasonable. An individual in Lewis's circumstances

---

[84] *Muslow*, 2020 WL 1864876, at * 16 (citing *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1130 (5th Cir. 2014)).

[85] *McKey*, 2021 WL 3602659, at * 10 (citing *Club Retro*, 568 F.3d at 212).

[86] *Bertrand v. Cloud*, No. 6:19-CV-01342, 2021 WL 1034266, at * 5 (W.D. La. March 17, 20201) (citing *Gibson v. Texas Dep't of Ins.--Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012)).

could not have known that following the reporting procedures established by LSU would amount to a violation of the Equal Protection clause.

### 4. Plaintiffs' Procedural Due Process Claims

Count VII of the Amended Complaint asserts a claim for denial of Plaintiffs' procedural Due Process rights under the Fourteenth Amendment. Plaintiffs provide two examples of Defendants' alleged violation of due process, neither of which involve or apply to Lewis.[87]

Under Fifth Circuit jurisprudence, "To show a due process violation in the public employment context, the plaintiff must first show that she had a legally recognized property interest at stake."[88] Such a showing "must be made by reference to state law."[89] "In Louisiana a person acquires a protectable property interest in a government job only if the contract has a 'for cause' clause, or if the employee is classified under the state civil service system ...."[90] Neither Richardson nor Brennan had a property interest in their continued employment as student workers in the Athletic Department; the student worker position is an untenured, unclassified, at-will position. Thus, they cannot claim they were in any way deprived of their due process rights in connection with their employment.

As for any other liberty or property interest, Richardson and Brennan have failed to specifically allege how Lewis deprived them of any right whatsoever. Although the Supreme Court and Fifth Circuit have assumed, without explicitly deciding, students have a constitutionally protectable interest in continued higher education enrollment[91], there is no allegation Lewis did

---

[87] R. Doc. 22, pp. 109-110, ¶¶ 446-447.
[88] *Moody*, 2021 WL 3423597, at * 9 (citing *Lollar v. Baker*, 196 F.3d 603, 607 (5th Cir. 1999)).
[89] *Id.*
[90] *Id.* (citing *Vanderwall v. Peck*, 129 Fed.Appx. 89, 91 (5th Cir. 2005)).
[91] *See Wren v. Midwestern State Univ.*, No. 7:18-cv-00060-O-BP, 2019 WL 3099408, at * 11 (N. D. Tex. June 25, 2019) (citing *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 222–23 (1985) (even if university student's "assumed property interest gave rise to a substantive right under the Due Process Clause to continued enrollment free from arbitrary state action, the facts of record disclose no such action"));

anything to deprive either Richardson or Brennan of that right. Richardson continued her enrollment at LSU through her graduation; Brennan voluntarily chose to withdraw from LSU, but has since reenrolled.  Lewis did not take any disciplinary action against them that would trigger their Due Process rights. The type of vague liberty and property interests asserted by Plaintiffs have been rejected by the Fifth Circuit.[92]

Even if there were some form of liberty or property interest at issue, and even if Plaintiffs alleged Lewis participated in the deprivation of their property interest, all of which is denied, Lewis is entitled to qualified immunity. Plaintiffs have not alleged their alleged property or liberty interests (and the alleged deprivation of those interests) involved rights that were clearly established at the time of the challenged conduct such that a reasonable government official acting in Lewis's shoes would have known she was depriving them of their Due Process rights.

**E. Dismissal of Count IX:  Plaintiffs' Claims for Conspiracy to Interfere with Civil Rights under 42 U.S.C. §§ 1985, 1986**

Plaintiffs claim "all Defendants" violated 42 U.S.C. §§ 1985 and 1986 because their "pattern, practice and custom . . . constitute a conspiracy . . . to deprive Plaintiffs of Constitutional Rights to Free Speech, Due Process,, and Equal Protection." [93] This is another example of Plaintiffs' "shotgun" pleading, providing absolutely no notice to the Court of any factual predicate to support the conclusory allegations.

_Shaboon v. Duncan_, 252 F.3d 722, 730 (5th Cir. 2001) (assuming, without deciding, that a medical resident had protected due process interest in his position).

[92] _See Huang v. Huang_, 846 Fed. Appx. 224, 231-32 (5th Cir. 2021) (holding Plaintiff's allegations that his Fourteenth Amendment Due Process rights were violated when he was told to sit at his desk, was refused an opportunity to clear his name, and when his complaints were not acted upon were not constitutionally protected liberty or property interest of which he was deprived).

[93] R. Doc. 22, p. 111, ¶ 452.

Section 1985 prohibits a conspiracy to interfere with civil rights. [94] Section 1985 provides for three separate claims, however, the only one that could conceivably apply is §1985(3), prohibiting private conspiracies to deprive persons of equal protection of the laws.[95] To assert a viable claim under §1985(3) Plaintiff must allege four elements: (1) a conspiracy by the defendants; (2) to deprive Plaintiffs of the equal protection of the laws; (3) a purposeful intent to discriminate;  (4) an act in further of the conspiracy under color of state law or authority; and, (5) resulting injury.[96] At the core of a § 1985(3) claim is the existence of a conspiracy based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."[97]

Plaintiffs' Amended Complaint contains only one conclusory allegation, which recites and mirrors the legal standard verbatim with no operative facts to support this claim. Plaintiffs fail to allege any facts to establish Lewis engaged in a conspiracy with anyone. Further, Plaintiffs fail to allege Lewis had a discriminatory motive or animus.[98] Further, as demonstrated above, there was no Equal Protection violation; without an Equal Protection violation, there can be no conspiracy under §1985(3).   Finally, Plaintiffs have failed to allege Lewis took any specific action in furtherance of the conspiracy. Without any specific allegations concerning Lewis's involvement in a conspiracy and deprivation of Plaintiffs' Equal Protection rights, the §1985(3) claim must be dismissed.

---

[94] *Reed v. Gautreaux*, No. 19-130-SDD-RLB, 2019 WL 6219780, at * 3 (M.D. La. Nov. 21, 2019) (citing *Bishop v. J.O Wyatt Pharm.*, No. 2:15-CV-0033,  2015 WL 4997890, at * 7 (N.D. Tex. Aug. 21, 2015)).
[95] *McZeal v. State of Louisiana*, No. 19-517-SDD-RLB, 2021 WL 4163988, at * 10 (M.D. La. Aug. 11, 2021).
[96]  *Reed*, 2019 WL 6219780, at * 3 (citing *Bishop*, 2015 WL 4997890, at * 7); *McZeal*, 2021 WL 4163988, at * 10 (citing *United Broth. Of Carpenters and Joiners of Am. Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983)).
[97] *Id.* (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993)).
[98] *See Reed*, 2019 WL 6219780, at * 3 (citing *Suttles v. U.S. Postal Service*, 927 F.Supp. 990, 1001 (S.D. Tex. 1996)); *Garig*, 2021 WL 2708910, at * 27 (citing *Villegas v. Gallaway*, 458 F. Appx 334, 338 (5th Cir. 2012)).

In the Amended Complaint, Plaintiffs' allegation to support the §1986 claim is merely a recitation of the statute: "The defendants had knowledge that the wrongs conspired were to be committed and, having the power to prevent or aid in preventing commission of the same, neglected or refused to do so."[99] The plain language of §1986 is derivative of §1985, and, therefore, a valid §1985 claim is a perquisite to a claim under §1986.[100] Because Plaintiffs fail to state a claim under §1985, their §1986 claim also fails.[101] Further, the 1986 claim fails because Plaintiffs have not identified any conspiracy that Lewis was aware of and to which she had the power to prevent. Quite the opposite, Lewis was unaware of much of the inner workings of the upper administration of the Athletic Department and LSU until the Husch Blackwell report was issued. Thus, it is inconceivable how she could have been a part of or had knowledge of any conspiracy.

## F. Dismissal of Plaintiffs' State Law Claims, Counts XII - XV, XVII, XIX, and XX

Plaintiffs' remaining claims against Lewis are pendant state-law claims. [102] Lewis seeks dismissal of these claims because they are either barred or because Plaintiffs have failed to state viable claims under Louisiana law.

### 1. Negligence, Negligent Supervision, Negligent Infliction of Emotional Distress Claims are Barred by Sovereign Immunity and La. Rev. Stat. § 23:1032(A)(1)(a)

First, Plaintiffs' negligence claims aimed at Lewis must be dismissed under the immunity afforded by the Eleventh Amendment. It is clear the State is the only "real, substantial party in interest" to these claims because any judgment against Lewis would be paid for by the State under

---

[99] R. Doc. 22, p. 111, ¶ 452.
[100] *McZeal*, 2021 WL 4163988, at * 10 (citing *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000)).
[101] *Id.*
[102] Assuming the Court dismisses all of the federal claims asserted against Lewis, the Court may decline to exercise supplemental jurisdiction over these claims. *Abron v. Barrilleaux*, 519 F.Supp.3d 328, 342 (E.D. La. 2021).

the indemnity provisions of La. Rev. Stat. § 13:5108.1(A)(1).[103] Plaintiffs' attempt at "re-packaging" their Title IX claims as negligence claims therefore must fail.[104]

Secondly, both Richardson and Brennan were student workers in the Athletic Department; it is through this employment they had contact with Lewis, who was their supervisor. Thus, because these negligence-based claims relate to their employment, occurred in the course of and arose of their employment, and specifically concern Lewis's alleged negligence in performing her job duties which caused the alleged injuries to Richardson and Brennan, these claims are barred and under La. Rev. Stat. § 23:1032(A)(1)(a) and Plaintiffs' exclusive remedies are under the Louisiana Workers' Compensation Act (LWCA).[105]

### 2. Plaintiffs' Negligence Claims

Plaintiffs have also failed to state any negligence claims (in Counts XII and XIII) against Lewis. First, no Louisiana or Fifth Circuit court has recognized a negligence claim under Civ. Code art. 2315 against an individual employee for breach of a duty to report sexual misconduct. Likewise, no Louisiana court has ever held a University employee such as Lewis owes an independent duty of care to a student to ensure their "safety and freedom from sex-based assault, harassment, or abuse."[106] What Plaintiffs are requesting— making an administrator responsible

---

[103] *Hughes v. Savell*, 902 F.2d 376, 377 (5th Cir. 1990) (citing *Ford Motor Co. v. Dept. of Treasury of Indiana*, 323 U.S. 459, 464 (1945)).

[104] *See Richardson v. Southern Univ.*, 118 F.3d 450, 453 (5th Cir. 1997).

[105] *See Leonard v. Board of Supervisors of Louisiana State Univ.*, No. 2008 CA 1692 (La. App. 1 Cir. 2/13/09); 2009 WL 385795, at * 3 (holding student worker's claim arose out of her employment and that her heightened exposure to the risk of being injured was solely attributable to her employment, thus, her exclusive remedy was in workers' compensation); *see also, Hillard v. Parish,* 991 F.Supp.2d 769, 778 (E.D. La. 2014) (Louisiana courts routinely dismiss negligence claims against employers arising in the course and scope of employment); citing *Oramous v. Military Dept.*, No. 05–3677, 2007 WL 1796194, at *9 (E.D. La. June 18, 2007) (dismissing claims for negligent infliction of emotional distress and negligent failure to supervise); *Martin v. American Midstream Partners, LP*, 386 F.Supp.3d 733 (E.D. La. 2019) (holding negligent infliction of emotional distress claim barred by the LWCA).

[106] R. Doc. 22, p. 116, ¶ 481.

for preventing a myriad of conduct, including criminal conduct[107] and acts that occur off-campus between adults —is  absolutely unprecedented.  Further, there is no independent duty for a University employee such as Lewis to "supervise, train, and monitor their employees and students[108] and to ensure those employees' and student' compliance with all applicable statutes, laws, regulations, and institutional policies."[109] Again, this purported duty of care is so broad it is not reasonable.  Finally, there is no general duty for individual University employees to "ensure Title IX is followed."[110] Such a duty falls well outside of the scope of Lewis's employment and job duties at LSU.

These fatal issues notwithstanding, Plaintiffs seemingly assert negligence claims against the individual defendants because they cannot be held personally liable under Title IX; however, Louisiana law does not permit Plaintiffs to circumvent Title IX by asserting a general negligence claim. Instead, under the well settled rules of statutory construction, the more specific statute controls over a general statute.[111] Thus, for instance, the Fifth Circuit held that a plaintiff could not assert a negligence claim under Civ. Code art. 2315 because Title VII covers the same breaches of

---

[107] "As the Fifth Circuit recognized . . ., Louisiana law generally imposes no duty to protect others from the criminal activities of third persons." *McKesson v. Doe*, 141 S.Ct. 48, 50 (2020).

[108] Plaintiffs make no allegations that it was within Lewis's job responsibilities to train any employees or students as to sexual assault, harassment, or other violations of Title IX or otherwise to "monitor Title IX investigations and response process at LSU." R. Doc. 22, p. 120, ¶ 493. Further Plaintiffs fail to allege which employees or students Lewis alleged failed to train, supervise or monitor.  Even if this was a part of her job duty, she would be entitled to immunity under La. Rev. Stat. § 9:2798.1.

[109] R. Doc. 22, p. 119, ¶ 491.

[110] R. Doc. 22, p. 120, ¶ 492. Plaintiffs do not allege Lewis has any responsibility for drafting or enforcing LSU's Title IX policies and procedures.

[111] *Burge v. State*, No. 2010-C-2229, p. 5 (La. 2/11/11); 54 So.3d 1110, 113.

duty.[112] The same result holds for Plaintiffs' claims against Lewis under various negligence theories for what amount to obligations and liability under Title IX.[113]

### 3. Plaintiffs' Intentional and Negligent Infliction of Emotional Distress Claims

In Counts XIV and XV, Plaintiffs assert claims for negligent infliction of emotional distress (NEID) and intentional infliction of emotional distress (IIED) due to Defendants' alleged "extreme and outrageous conduct" comprised of Defendants "actions and inactions," the great majority of which do not apply to Lewis.[114]  To state a claim for either NEID or IIED, Plaintiffs must allege truly outrageous conduct by the defendant.[115] The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[116]

It is apparent that Plaintiffs' allegations against Lewis do not meet the high threshold for either NEID or IIED because the conduct complained of by Lewis was not "extreme and outrageous." Even reading the Amended Complaint in the light most favorable to Plaintiffs, Richardson at most alleges Lewis "laughed" and "mockingly questioned why [Richardson] was

---

[112] *Roberson-King v. Louisiana Workforce Commission, Office of Workforce Development*, 904 F.3d 377, 379-80 (5th Cir. 2018) (reasoning that Civil Code art. 2315, is a general negligence statute which must yield to the more specific law, in that case Title VII or the Louisiana Employment Discrimination Law).

[113] *See Melton v. Alaska Career College, Inc.*, No. 3:15-v-209 RRB, 2016 WL 1312738, at * 3 (D. Ala. April 4, 2016) (dismissing common law negligence claims for conduct that would violate Title IX) (citing *Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999)); *see also, Doherty v. Emerson College*, No. 1:14-cv-13281-LTS, 2017 WL 4364406, at * 10 (D. Mass. Sept. 29, 2017) (dismissing negligence claim for negligently implementation of Title IX, as it would "likely raise federal preemption concerns"); *Doe v. Univ. of the South*, 2011 WL 1258104, at * 14 (E.D. Tenn. March 31, 2011) (dismissing plaintiffs' negligence per se claim stating it was an attempt to make an "end run" around Title IX); *Doe v. Amherst College*, 238 F. Supp. 3d 195, 228 (D. Mass. 2017) (dismissing various negligence claims against individual defendants stating state law, "does not impose a common-law or statutory duty on administrators to enforce university policies").

[114] R. Doc. 22, pp. 121, ¶ 499; R. Doc. 22, p. 122, ¶ 506.

[115] *Dillon v. Town of Abita Springs*, No. 21-899, 2021 WL 5039635, at * 5 (E.D. La. October 30, 2021) (quoting *Moresi v. Dep't. of Wildlife & Fisheries*, 567 So.2d 1081, 1096 (La. 1990)) (further noting that for NEID, recovery is limited to four specific scenarios, none of which apply here).

[116] *Id.* (citing *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991)).

afraid of John Coe."[117] Further, Richardson and Brennan allege Lewis did not follow the Title IX policy by reporting their allegations to the Title IX Office (although she did report it to Miriam Segar) and Lewis did not offer support, resources, accommodations or interim measures.[118] Even if true, all of this conduct falls woefully short of extreme and outrageous conduct.[119] Because Plaintiffs have failed to allege facts necessary to support either NEID or IIED claims, these claims should be dismissed.

### 4. Plaintiffs' State Law Civil Conspiracy Claim under Civil Code art. 2324

In Count XVII, Plaintiffs allege Lewis engaged in a civil conspiracy with all other Defendants to "systematically and fraudulently silence Plaintiffs and deprive them of their Constitutional and federal rights."[120] Louisiana Civil Code article 2324 "does not by itself impose liability for a civil conspiracy."[121] There must be an allegation of an underlying tort that the conspirators agreed to perpetrate and which they actually committed.[122] Instead, the purpose of Civ. Code art. 2324(A) is to compel any tortfeasor to pay the entire judgment. [123]

Plaintiffs fail to allege any facts supporting that Lewis engaged in a civil conspiracy to commit a tort with any other Defendant. To that end, Plaintiffs fail to specify what tort Lewis

---

[117] R. Doc. 22, p. 30, ¶ 129.

[118] R. Doc. 22, pp. 30-31, ¶¶ 131-132; R. Doc. 2, pp. 42-43, ¶¶ 183-184.

[119] *See Cubas*, 2021 WL 1212537, at * 12 (dismissing complaint for allegations defendant "began to belittle, scream and berate the Plaintiff in front of everyone."); *McCoy v. City of Shreveport*, 492 F.3d 551, 554 (5th Cir. 2007) (dismissing IIED claim where the plaintiff, a black city police officer, suffered harassment by a white supervisor who "twice [threw] wadded-up paper in her face and [ ] repeatedly entered her office only to stare at her and laugh in mocking derision.")

[120] R. Doc. 22, p. 127, ¶ 530.

[121] *Pigg v. BPX Energy*, 2021 WL 3730052, at *3 (W.D. La. July 9, 2021) (citing *Ross v. Conoco, Inc.*, No. 2002-C-0299, p. 8 (La. 10/15/02); 828 So. 2d 546, 552.

[122] *Id.*

[123] *Id.*

allegedly conspired to commit and with whom she conspired. Simply put, there is no basis to hold Lewis solidarily liable for the actions of any other Defendant.

**5. Plaintiffs' Claims under the Louisiana Racketeering Act, La. Rev. Stat. § 15:1351**

Count XIX sets forth Plaintiffs' claims under the Louisiana Racketeering Act (LRA).[124] Without any support or specificity whatsoever, Plaintiffs claim Lewis—with all Defendants—is a part of an "Enterprise" and aided and abetted violations of the LRA.[125]

The LRA "was apparently patterned" after the federal RICO statute[126] and federal RICO jurisprudence is applicable to claims brought under the LRA.[127]  The provisions of the LRA to which Plaintiffs repeatedly point out "violations" by Defendants,[128] including Lewis, each prohibit activities or personal gains from "a pattern of racketeering activity."[129]  "Racketeering Activity" is a term defined by the LRA to include only certain enumerated crimes, including without limitation, murder, solicitation of murder, arson, kidnapping, and bigamy.[130]  A claim against Lewis for allegedly violating the LRA requires a showing that Lewis committed an act prohibited by the LRA.

There are no allegations that Lewis committed any such enumerated, prohibited criminal acts.  Plaintiffs' bald assertions against the alleged "enterprise" as a whole fail to establish a LRA violation against Lewis for a LRA violation.  Not only does the Amended Complaint not articulate

---

[124] R. Doc. 22, p. 136.

[125] R. Doc. 22, pp. 136-139, ¶¶ 555- 557, 568.

[126] *State v. Nine Sav. Accts.*, 553 So. 2d 823, 825 (La. 1989).

[127] *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am. Inc.*, No. 2:11-CV-00856, 2013 WL 4516007, at *3 (W.D. La. Aug. 22, 2013) ("[T]he court once again must look to federal case law construing the federal Racketeer Influenced and Corrupt Organization Act to address [Plaintiff's] Louisiana Racketeering Act claim, based on the fact that the acts are parallel, and the dearth of case law specifically addressing Louisiana's Racketeering Act itself.") (citing *State v. Touchet*, 99–1416 (La. App. 3 Cir. 4/5/00); 759 So. 2d 194, 197).

[128] R. Doc. 22, pp. 137-10, ¶¶ 563-64, 568, 571, 577.

[129] La. Rev. Stat.  §§ 15:1353 (A), (B), (C), (D).

[130] La. Rev. Stat. § 15:1352.

any alleged acts by Lewis in violation of the LRA, Plaintiffs have failed to articulate what, if any, harm recognized by the LRA was incurred by Plaintiffs as a direct result of Lewis's alleged participation in the supposed LRA violations.

Plaintiffs' Louisiana Racketeering Act Case Statement does not cure the deficiencies of Count XIX of the Amended Complaint to establish and substantiate a LRA claim against Lewis.[131] Plaintiffs' LRA Statement singles out Lewis for alleged violations of only two subparts of the LRA:  La. Rev. Stat. § 15:1353 (B)[132] and La. Rev. Stat § 15:1353 (C)[133] by alleged violations of La. Rev. Stat. § 14:129.1[134] and La. Rev. Stat. § 14:132.[135]

La. Rev. Stat. § 14:129.1 provides that "no person shall intentionally [i]ntimidate or impede, by threat of force or force, or attempt to intimidate or impede, by threat of force or force" a witness to influence testimony.[136]  As there are no allegations in the Amended Complaint or LRA Case Statement that Lewis used force or threatened any force against either Richardson or Brennan, Plaintiffs' LRA claims against Lewis based on their allegation Lewis violated La. Rev. Stat. § 14:129.1 fail as a matter of law.

La. Rev. Stat. § 14:132 (A) and (B) require the "intentional . . . concealment of any record . . . in any public office."[137]  Plaintiffs have not alleged Lewis concealed any public records, nor identified what documents were otherwise altered by Lewis in the public record; therefore, Plaintiffs' LRA claims against Lewis based on their allegation Lewis violated La. Rev. Stat. § 14:132 are fatally flawed.  Further, Plaintiffs' fail to allege how Lewis' alleged violations of La.

---

[131] R. Doc. 103.
[132] R. Doc. 103, p. 18 ¶I(i).
[133] R. Doc. 103, p. 18 ¶I(ii).
[134] R. Doc. 103, p. 42 ¶5(B)(ii).
[135] R. Doc. 103, p. 42 ¶5(B)(iii).
[136] La. Rev. Stat. § 14:129.1.
[137] La. Rev. Stat. § 14:132 (A) and (B) (emphasis added).

Rev. Stat. § 14:129.1 and La. Rev. Stat. § 14:132 harmed them, a further fatal impediment to Plaintiffs' LRA claims against Lewis.

Simply alleging, without any factual allegations in support, the existence of an "enterprise" and an agreement to commit prohibited acts is insufficient to support a claim of a conspiracy against Lewis.[138] Plaintiffs have not adequately supported any allegation that Lewis was a part of an "enterprise" beyond the plain fact that she was employed by the Athletic Department alongside other named Defendants, which is insufficient.[139]  In order to prevail against Lewis, Plaintiffs must show—and have failed to do so—that Lewis "at least [knew] of the conspiracy and adopt[ed] the goal of furthering or facilitating the criminal endeavor."[140] Plaintiffs have not alleged facts supporting Lewis' knowledge of a conspiracy. In sum, Plaintiffs have failed to allege any claim against Lewis under the LRA and these claims should therefore be dismissed.

### 6. Plaintiffs' State Law Unjust Enrichment Claim under Civil Code art. 2298

Plaintiffs' final claim in Count XX is for unjust enrichment.[141] Plaintiffs fail to allege any facts to establish a claim for unjust enrichment, i.e., Lewis received an enrichment, Plaintiffs were impoverished and there is a connection between the two.[142] This is yet another claim that fails due to Plaintiffs' "shotgun pleadings." Because there no factual basis for this claim, it must be dismissed.

---

[138] *Martin v. Magee*, No. 10-2786, 2011 WL 2413473, at *8 (E.D. La. June 10, 2011).

[139] *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) (citing *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998)); *Marlin v. Moody Nat. Bank, N.A.*, 248 Fed.Appx 534, 538 (5th Cir. 2007).

[140] *Chaney*, 595 F.3d at 239 (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)) (internal quotations omitted).

[141] R. Doc. 22, p. 141.

[142] *United States v. Hamdan*, No. 19-60-WBV-KWR, 2020 WL 2615916, at *11 (E.D. La. May 22, 2020) (citing *Richard v. Wal-Mart, Inc.*, 559 F.3d 341 (5th Cir. 2009)).

**G. Dismissal of Plaintiffs' Class Action Claims**

Lewis also moves to strike all class action allegations asserted against her pursuant to Fed. R. Civ. P. 12(b)(6).[143]

**1. Plaintiffs' Claims for Emotional Damages Defeat Their Class Allegations**

The Fifth Circuit has expressed significant opposition to certifying classes when it is clear the damages claimed (in particular, emotional damages), will generate individualized questions as to causation and the extent of damages suffered. In *Steering Comm. v. Exxon Mobil Corp.*, the seminal case on the issue, the Fifth Circuit affirmed the District Court's denial of class certification, finding Rule 23(b)(3)'s predominance requirement was not satisfied because the nature of the plaintiffs' claims, <u>particularly those involving emotional and other intangible injuries,</u> proved individual issues would predominate. [144] The court explained: "where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the [dissimilar] damages issue may predominate over any issues shared by the class".[145]

It is clear on the face of the Amended Complaint that the primary damages are intangible emotional damages that are inherently not subject to formulaic calculation and not suitable for class treatment. Plaintiffs focus their explanation of damages on the severe emotional injuries alleged to have been suffered[146]; they also allege they suffered individualized <u>personal injuries</u>[147]. Plaintiffs even make the self-defeating argument that class treatment is superior because of

---

[143] *Coleman v. Sears Home Improvement Prods., Inc*., No. 16-cv-2537, 2017 WL 1064965, at *6-7 (E.D. La. Mar. 20, 2017) (authorizing and granting motion to strike class allegations pursuant to Fed. R. Civ. P. 12(b)(6)). Lewis anticipates the individually named Defendants may also file a joint motion to strike Plaintiffs' class allegations fail pursuant to Rule 23(d)(1)(D) because the nature of Plaintiffs' legal claims and damages sought make clear Plaintiffs cannot satisfy the requirements of Fed. R. Civ. P. 23(a) and (b).

[144] *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006).

[145] *Id*. at 601.

[146] R. Doc. 22, ¶¶ 155, 176, 208, 243, 282, 301, 321, 339, 352.

[147] R. Doc. 22, p. 36 ¶ 155.

putative class members' "severe mental health issues," the resulting lack of "physical ability to withstand a deposition," and the risk of "retraumatization."[148] These are precisely the types of injuries the Fifth Circuit has long held are not suited to class treatment. Courts in the Fifth Circuit have granted motions to strike class allegations when it is clear on the face of the pleadings individualized issues as to damages will predominate.[149]

### 2. Plaintiffs' "Shotgun Pleading" is Fatal to the Class Claims

Although there are ample grounds to strike Plaintiffs' proposed class as to <u>any</u> defendant, Plaintiffs' class allegations are even more deficient when analyzed as to Lewis specifically. Plaintiffs make no attempt to distinguish between Lewis' and the numerous other defendants' alleged conduct, actions, liability, wrongdoing, and knowledge with respect to the <u>class</u> component of their Complaint, and, in so doing, blatantly fail to satisfy any of Rule 23's class pleading requirements as to <u>Lewis</u>. For example:

- As to "numerosity," Plaintiffs allege "membership in the Class is ascertainable based upon records maintained by the Defendants and Class Members,"[150] but obviously Lewis does not maintain any records that will support numerosity.

- As to "typicality," Plaintiffs allege that element is satisfied "because each Plaintiff and each Class Member has been harmed by the same systemic failure to provide resources for LSU students who experience discrimination on the basis of sex…"[151], but nowhere do Plaintiffs allege that Lewis systemically discriminated against them, let alone every student from 2013 to present at LSU who was harmed by discrimination on the basis of sex.

- As to "commonality," Plaintiffs alleged common questions of fact that do not pertain to Lewis because there are no allegations that Lewis personally operated a program that receives federal funds, was responsible for training employees, or established the grievance procedures.

---

[148] R. Doc. 22, pp.85-86, ¶ 361.

[149] *Bauer v. Dean Morris, L.L.P.*, Nos. 08–5013, 08–5014, 2011 WL 3924963, at *7 (E.D. La. Sept. 7, 2011) (granting the defendant's motion to strike the class allegations pursuant to Rule 12(b)(6) "because common issues of liability and damages [did] not predominate over individual issues with respect to liability and damages.").

[150] R. Doc. 22, p. 85, ¶ 358.

[151] R. Doc. 22, p. 85, ¶ 359.

The Court's authority to strike class allegations is well-served to avoid the highly inequitable result of Lewis having to bear the cost of defending a vast putative class action which encompasses innumerable putative plaintiffs with whom she has no reasonable connection and which has no plausible chance of being certified particularly as to her. The class allegations against Lewis should be stricken with prejudice.

## IV. CONCLUSION

For the reasons set forth above, Defendant Sharon Lewis, respectfully requests this Court grant this motion and dismiss Plaintiffs' claims against her with prejudice and at Plaintiffs' cost.

Respectfully submitted,
JEFF LANDRY
ATTORNEY GENERAL


By: /s/ Renee G. Culotta
Renee G. Culotta (LA Bar No. 24436)
**Special Assistant Attorney General**
**FRILOT L.L.C.**
1100 Poydras Street, Suite 3700
New Orleans, LA  70163
Telephone:    (504) 599-8000
Facsimile      (504) 599-8100
Email:          rculotta@frilot.com;
                   jroberts@frilot.com

**Counsel for Defendant, Sharon Lewis**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing pleading was served upon all counsel electronically via the CM/ECF filing system this 8th day of December, 2021.


/s/ Renee G. Culotta


30