# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ABBY OWENS, ET AL. | * | CIVIL ACTION NO. 3:21-cv-00242 |
| *Plaintiffs* | * | |
| | * | |
| VERSUS | * | JUDGE WENDY B. VITTER |
| | * | |
| LOUISIANA STATE UNIVERSITY, ET AL., | * | MAGISTRATE JUDGE |
| *Defendants* | * | SCOTT D. JOHNSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**FIELDON "F" KING ALEXANDER'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

Fieldon "F" King Alexander ("Mr. Alexander") respectfully submits this Reply in response to Plaintiffs' Opposition (Record Doc. 135-3). In Alexander's Motion to Dismiss (Record Doc. 110), Mr. Alexander highlighted the complete dearth of factual allegations in Plaintiffs' Amended Complaint concerning him, by bringing to the Court's attention the fact that Plaintiffs' 145-page Amended Complaint contained only two core <u>factual</u> allegations concerning Mr. Alexander, <u>during his time at LSU</u>. Those allegations were as follows:[1]

> 85. According to the audit report's distribution list, Defendants Alexander and Stewart received a copy on September 13, 2017.

and

> 410. As President of LSU, Defendant Alexander would have set the tone from the top on the importance of Title IX and would have been responsible for ensuring the Title IX Coordinator and the Associate Vice President for Human Resource Management did their jobs.

In their Opposition, Plaintiffs did not refer the Court to any other purported allegations of fact, concerning Mr. Alexander. That is because no such allegations exist. Rather, Plaintiffs simply repackaged the same legal conclusions and formulaic recitations that they asserted in their Amended Complaint.

---

[1] Record Doc. 110-1, pages 2-3.

Importantly, Plaintiffs' own Opposition now leaves little doubt that Mr. Alexander played no role in the receipt, investigation, disposition, or alleged mishandling of any of the individual Title IX complaints. As a result, Plaintiffs' Opposition reinforces the simple truth: Mr. Alexander was sued because he was Chancellor of LSU during the time period in question. Because the above allegations do not satisfy the pleading standard for any of the claims asserted against Mr. Alexander, the claims are prescribed, and Mr. Alexander is entitled to immunity, the motion to dismiss should be granted.

**1. Failure to Plausibly Plead Title IX Claim.** In their Opposition, Plaintiffs argue that they can assert a Title IX retaliation claim against individual school employees. Plaintiffs cite no cases for this assertion.[2] To the contrary, both the United States Supreme Court and the Fifth Circuit have recognized that Title IX does not authorize suits against individual school employees. In the Fifth Circuit case of *Sewell v. Monroe City Sc. Bd.*,[3] involving Title IX retaliation claims, and the Supreme Court case of *Fitzgerald v. Barnstable School Committee*,[4] the courts recognized that Title IX did not allow for suits against individual employees. Consequently, Plaintiffs appear to be asserting a legal argument directly contrary to existing precedent. Legal arguments aside, the bare-boned allegations of Plaintiffs' complaint plead no retaliatory acts on the part of Mr. Alexander. As can be seen below, the claim against Mr. Alexander is based, not upon the conduct of Mr. Alexander himself, but rather conduct of LSU's Title IX office personnel. Specifically, Plaintiffs argue:[5]

---

[2] Plaintiffs do cite the case of *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005); however, that case did not involve a Title IX claim against an individual employee, nor did the case authorize any such claim.
[3] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020).
[4] *Fitzgerald v. Barnstable Sch. Committee*, 555 U.S. 246 (2009).
[5] Record Doc. 135-3, page 5.

action against them because they complained of discrimination."[15] Plaintiffs allege that Alexander engaged in materially adverse actions against Plaintiffs when LSU's Title IX Office failed to properly investigate Plaintiffs' claims of sex discrimination, failed to initiate appropriate interim measures to ensure their safety and ongoing equal access to educational opportunities and benefits,

**2. Failure to Plausibly Plead Civil Rights Claims.** In their Opposition, Plaintiffs finally acknowledge that Mr. Alexander would not have been "personally involved" in the alleged constitutional violations.[6]  Plaintiffs now argue that Mr. Alexander should be liable for constitutional violations as an alleged supervisor.[7]

A supervisory official may be held liable only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.[8]  Supervisory liability exists without overt personal participation in the offensive act if the official implements a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force of the constitutional violation.[9]

In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates.[10]  Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.[11]  For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.[12] Deliberate indifference requires a showing of more than negligence or even gross negligence.[13]

---

[6] Record Doc. 135-3, page 8.
[7] Record Doc. 135-3, page 8.
[8] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).
[9] *La. Cleaning Systems v. Brown*, 2015 WL 9581852 (W.D. La. 2015).
[10] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).
[11] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).
[12] *Id.*
[13] *Id.*

Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.[14]

The two bare-boned allegations against Mr. Alexander do not remotely approach the pleading requirement for supervisory liability. First, Plaintiffs do not allege that Mr. Alexander created any policy, much less a policy so deficient that it was a "repudiation of constitutional rights." Nor have Plaintiffs pled any conduct that would amount to deliberate indifference on the part of Mr. Alexander. To the contrary, Plaintiffs' core claim is that "LSU routinely failed to follow its own policies and procedures."[15]

Furthermore, Plaintiffs have failed to plead any facts or acts that could plausibly support a civil rights conspiracy claim against Mr. Alexander. Plaintiffs have alleged no facts that suggest any agreement among co-conspirators.[16] Nor have Plaintiffs alleged that Mr. Alexander had knowledge of the alleged wrongs that each individual Plaintiff suffered. Consequently, Plaintiffs have failed to allege any facts plausibly supporting any First Amendment, equal protection, due process violation, or conspiracy claim against Mr. Alexander.

**4.    Plaintiffs' Various State Law Claims.** Despite the lack of allegations concerning Mr. Alexander, Plaintiffs argue, in brief, that they have pled "nearly twenty ways in which Alexander breached those duties to Plaintiffs".[17] Plaintiffs then refer to paragraphs 481 and 483 of their Complaint. Mr. Alexander's name, however, can be found nowhere in those paragraphs. Rather, the paragraphs contain nothing more than pure legal conclusions that are directed towards all nineteen defendants equally. Considering the vastly different roles and responsibilities each

---

[14] *Id.*
[15] Record Doc. 22, paragraph 6.
[16] *Body by Cook, Inc. v. State Farm Mutual Ins. Co.*, 869 F.3d 381, 389 (5th Cir. 2017).
[17] Record Doc. 135-3, page 17, first full paragraph.

defendant had relative to their relationship with LSU, this shotgun pleading approach should not be accepted. Plaintiffs have failed to plausibly plead any acts of negligence by Alexander.

Akin to the general negligence claim, none of the allegations contained in Plaintiffs' Complaint plausibly plead a negligent supervision claim on the part of Mr. Alexander. Rather, for this count, and as evidenced by paragraph 492 of the Complaint, Plaintiffs have essentially attempted to plead an organizational chart for LSU, coupled with the legal conclusion that every person along the alleged organizational chart failed to train the level below it, thus making every person responsible for the alleged deficiencies in the handling of Title IX complaints.

As to Plaintiffs' claims for negligent infliction of emotional distress, Plaintiffs argue that they have pled conduct on the part of Mr. Alexander that was "so reckless as to demonstrate a substantial lack of concern for whether Plaintiffs were injured."[18] Plaintiffs refer to paragraphs 498 and 499 as support for the alleged "reckless conduct". Once again, Alexander's name can be found nowhere in those paragraphs. The paragraphs are nothing more than legal conclusions.

A claim for intentional infliction of emotional distress requires conduct on the part of a defendant to be extreme and outrageous.[19] The defendant must desire to inflict severe emotional distress or know that severe distress is certain or substantially to follow.[20] Plaintiffs claim that paragraph 506 of the Complaint pleads such conduct.[21] The paragraph is nothing more than a legal conclusion and references no conduct on the part of Mr. Alexander.

As to Plaintiffs' claim for breach of contract, Plaintiffs have not, and cannot, allege the existence of any contract between Plaintiffs and Mr. Alexander. Although Plaintiffs have alleged the existence of LSU's policies, even if LSU's policies were considered "contracts", such contracts

---

[18] Record Doc. 135-3, page 19.
[19] *White v. Monsanto,* 585 So. 2d 1205, 1209 (La. 1991).
[20] *Id.*
[21] Record Doc. 135-3, page 20.

would be between LSU and its students. Plaintiffs have not alleged any facts in their Complaint, and have not provided this Court with any law, to support their extraordinary argument that every employee at LSU, and every student at LSU, has entered a binding contractual relationship with each other, by virtue of LSU's policy manual.

As it relates to Plaintiffs' state law conspiracy claim, Plaintiffs claim in brief that "Plaintiffs sufficiently allege numerous illegal acts, assistance and encouragement among the Defendants, and resulting injuries sufficient to plead the existence of a conspiracy…."[22] But, where are those facts? In their brief, Plaintiffs do not cite to one location, in their Complaint, where the supposed "facts" can be found. The Opposition makes it abundantly clear that Plaintiffs have failed to plead any facts that plausibly support that argument that Mr. Alexander agreed to commit, and in fact participated in the commission of, an intentional tort; nor have they pled any facts supporting an agreement between Mr. Alexander and anyone else.

As to Plaintiffs' claims for violations of the Racketeering Act, La. R.S. § 15:1352(C) requires the commission of at least two predicate criminal acts for there to be considered racketeering activity. Mr. Alexander has pointed out that Plaintiffs have asserted no facts or acts that could be deemed a violation of any of the predicate offenses contained in state statute.

In their Opposition,[23] Plaintiffs did not identify one person, or one occasion, where Mr. Alexander committed or attempted to commit the crime of public intimidation. Plaintiffs did not identify one witness, or one occasion, where Mr. Alexander supposedly committed, or attempted to commit, the crime of witness intimidation. Plaintiffs did not plead one instance where Mr. Alexander removed, mutilated, destroyed, altered, falsified, or concealed a public record. Nor did Plaintiffs plead one instance where Mr. Alexander filed a false public record or maintained any

---

[22] Record Doc. 135-3, page 23.
[23] Plaintiffs did not oppose Mr. Alexander's motion to dismiss Plaintiffs' unjust enrichment claim (i.e., Count XX).

records. The only predicate offense for which Plaintiffs offer any purported allegation of fact, is for the offense of money laundering. Plaintiffs argue that the use of the Athletic Department Facilities for an allegedly inadequate Title IX training, paid for by TAF, constituted money laundering.[24] This bare-boned allegation does not remotely satisfy the plausibility standard for the pleading of a Louisiana RICO claim. Even if it did, the use of the Athletic Department facilities for the training at issue would only constitute one predicate offense, which is insufficient to constitute racketeering activity. A defendant is not civilly liable under the LRA unless that defendant has engaged in fraud or other conduct.[25] Mr. Alexander has engaged in no such conduct.

**5.    Prescription.** In his motion to dismiss, Mr. Alexander has argued that all claims asserted by Plaintiffs, other than the Louisiana Racketeering Act claim and breach of contract, are prescribed on their face, as the claims are subject to a one-year prescriptive period. Plaintiffs filed their original complaint on April 26, 2021.[26] Consequently, only injuries caused by Mr. Alexander after April 26, 2020, would be actionable. Plaintiffs, however, admit that Mr. Alexander's employment with LSU ended in December of 2019.[27] Plainly, Mr. Alexander was not employed by LSU during the actionable period.

To avoid the effects of prescription, Plaintiffs argue that "their causes of action were not known or reasonably known by these Plaintiffs until the release of the Report in March 2021."[28] In essence, Plaintiffs ask this Court to believe that they did not know they had been injured by LSU, until Husch Blackwell told them so. The argument is contrary to law and the allegations of Plaintiffs' own Complaint.

---

[24] Record Doc. 135-3, page 26; See also Record Doc. 103, pages 54-56.
[25] *CamSoft Data Systems, Inc., v. So. Electronics Supply, Inc.*, 2019 WL 2865256 (La. App. 1 Cir. 7/2/19).
[26] Record Doc. 1.
[27] Record Doc. 135-3, page 2, first full paragraph.
[28] Record Doc. 135-3, pages 6-7, 12, 15-16

First, a plaintiff need not know that she has a legal cause of action for her claim to accrue; she need know only the facts that would ultimately support a claim.[29] "Awareness" for accrual purposes does not mean actual knowledge; rather, all that must be shown is the existence of circumstances that would lead a reasonable person to investigate further.[30] Consequently, Plaintiffs' knowledge as to their "cause of action" is not the relevant factor for prescription.

Second, Plaintiffs' own Complaint completely undercuts their argument. Under federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.[31] Plaintiff Owens alleges that she was raped in 2016, checked into a rehab facility due to trauma in 2017, and left LSU for Georgia in January of 2018.[32] Plaintiff Brennan alleges that a nude photograph was taken of her in July of 2016, that she met with LSU about the photograph in July of 2016, that she left the recruiting team in August of 2016 due to humiliation/shame/depression, and left LSU in the fall of 2016.[33]

Plaintiff Richardson alleges she was raped in 2014, fall of 2015, and suffered an attempted rape in the fall of 2016.[34] She alleges she reported the incidents in the fall of 2016, and that she was, thereafter fired and denied jobs.[35] She alleges she was not satisfied with the results of LSU's Title IX investigation, which was concluded in November of 2018.[36] Plaintiff Lewis alleges she was abused in May of 2017/April of 2018/June of 2018, that LSU opened Title IX investigations in April of 2018 and June of 2018, and that she was retaliated against as of July of 2018.[37]

---

[29] *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 761 (5th Cir. 2015).
[30] *Id.*
[31] *Id.*
[32] Record Doc. 22, paragraphs 195, 196, and 200.
[33] Record Doc. 22, paragraphs 178-180, 181, 185. See also paragraph 124 of original complaint.
[34] Record Doc. 22, paragraphs 111, 114, 135.
[35] Record Doc. 22, paragraphs 137, 141, and 142-143.
[36] Record Doc. 22, paragraphs 151-152.
[37] Record Doc. 22, paragraphs 248, 252, 259 (abuse); 254 and 264 (Title IX investigation), 271 (retaliation).

Plaintiff Johnson alleges that she suffered verbal abuse in the fall of 2017, became suicidal from said abuse in August of 2018, and left LSU in the Spring of 2019.[38] Plaintiff Robertson alleges she was raped in January of 2016, met with LSU in February of 2016, had to enter rehab in 2017, and left LSU in 2017.[39] Plaintiff Hovis alleges that she was raped in January of 2020, which was a time when Mr. Alexander was not even employed by LSU.[40] Plaintiff Kitch alleges that she was harassed by a professor sometime between 2009-2013, and that she left LSU in 2014.[41] Plaintiff Doe alleges another student became abusive to her in 2018, she met with LSU in March and May of 2019, lost her scholarship in Spring of 2019, and left LSU in December of 2019.[42] Plaintiff Andries alleges she was assaulted in October of 2016, started therapy with LSU in November of 2016 due to the assault, suffered a panic attack in Spring of 2019 after seeing her accuser in class, was denied a no-contact order by LSU in April of 2019, continued to meet with LSU through 2019, and was ultimately unsatisfied with the discipline handed to her accuser, whose final appeal was denied in October of 2019.[43] The above clearly show that Plaintiffs had knowledge of their injuries prior to 2020.

**6. Immunities**. As to Mr. Alexander's qualified immunity claim, Plaintiffs have not referred the Court to one case where a university chancellor's alleged conduct in not acting upon an audit, or not "setting the tone", was deemed a violation of constitutional rights. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.[44] Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate

---

[38] Record Doc. 22, paragraphs 286, 288, 289(abuse); 301 (suicidal), 299 (left LSU).
[39] Record Doc. 22, paragraphs 157 (abuse); 163-164 (met with LSU), 173 (rehab), and 299 (left LSU).
[40] Record Doc. 22, paragraph 325 (abuse).
[41] Record Doc. 22, paragraph 340-346.
[42] Record Doc. 22, paragraphs 303-304, 307-308 (abuse); 310/313 (met with LSU), and 319 (left LSU).
[43] Record Doc. 22, paragraphs 212/214 (abuse); 213/216 (therapy), 218 (panic attack), denial of appeal (241).
[44] *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 391 (5th Cir. 2017).

indifference and do not divest officials of qualified immunity. As to Mr. Alexander's immunity defense under La. R.S. § 9:2798.1, decisions as to resource allocation, staffing, or funding for any specific office within a university would be discretionary or policymaking acts. Plaintiffs have cited no law, regulation, or policy that mandates the precise levels of manpower, resources, etc., that a chancellor is allegedly required to allocate to a Title IX office.

Finally, to the extent Plaintiffs are attempting to bring claims against Mr. Alexander in his official capacity as a state employee, those claims are subject to 11th Amendment Immunity. Mr. Alexander adopts the 11th Amendment immunity arguments made by co-defendant Ausberry in Doc. 113-1 (found at pages 22-23).

**JEFF LANDRY**
**ATTORNEY GENERAL**
**BY:** _/s/ Evan M. Alvarez_
**ALEJANDRO "AL" PERKINS (#30288)**
**Email: aperkins@hamsil.com**
**WAYNE T. STEWART (#30964)**
**Email: wstewart@hamsil.com**
**EVAN M. ALVAREZ (#31596)**
**Email: ealvarez@hamsil.com**
**Special Assistant Attorneys General**
**HAMMONDS, SILLS, ADKINS, GUICE, NOAH & PERKINS, LLP**
2431 S. Acadian Thruway, Suite 600
Baton Rouge, Louisiana 70808
Telephone: (225) 923-3462
Facsimile: (225) 923-0315