**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ABBY OWENS ET AL**<br>*Plaintiff* | **Case No.: 21-242** |
| | **Division WBV-SDJ** |
| **v.** | |
| | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY**<br>**ET AL**<br>*Defendant* | **MAGISTRATE JUDGE JOHNSON** |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANT FIELDON "F' KING ALEXANDER'S MOTION TO DISMISS**

Plaintiffs, through undersigned counsel, respectfully submit this Opposition to Defendant Fieldon "F" King Alexander's ("Alexander") Motion to Dismiss ("Motion"). Doc. 110. The Court should reject the Alexander's arguments that Plaintiffs have failed to state a claim because (i) Plaintiffs have alleged sufficient facts to support all causes of action; (ii) Plaintiffs' claims are not time-barred; (iii) Alexander is not entitled to qualified immunity for Plaintiffs' claims; and (iv) Plaintiffs have standing to assert an LRA claim. Therefore, Alexander's Motion should be denied.

**RELEVANT FACTS**

Plaintiffs' Complaint was brought by ten female-presenting and/or LGBTQ+ identifying current and former students of Louisiana State University ("LSU") who brought, attempted to bring, or were dissuaded entirely from bringing complaints of sex-based discrimination, including rape, sexual assault, sexual harassment, and/or stalking, perpetrated by male LSU students and LSU employees. Doc. 22 at ¶ 109. For years, LSU, including Alexander, and the Tiger Athletic Foundation ("TAF") have ignored known systemic deficiencies in LSU's response to reports of sexual misconduct in favor of promoting and glorifying LSU student-athletes and coaches to reap the financial and reputational benefits of a venerated college football program by protecting certain

athletes from viable Title IX claims and by stifling LSU's Title IX policies as a whole. *Id*. at ¶¶ 428, 437. This behavior created a campus culture which ignores and even tacitly allows sex-based trauma to be inflicted upon female presenting and LGBTQ+ identifying individuals and a prioritization of sports and money over academics and student well-being. *Id*. at ¶¶ 430, 530. Despite Alexander's characterization of Plaintiffs' Complaint, his name is referenced at least 50 times throughout the document, including the attachments.[1]

 Alexander served as the President of LSU from July 1, 2013 to December 31, 2019. *Id*. at ¶ 33. As President of LSU, Alexander sets the tone from the top on the importance of Title IX and is responsible for supervising the Title IX Coordinator and the Associate Vice President for Human Resource Management to ensure that the Title IX Policy was followed to prevent, properly respond to, and remedy incidents of sex-based discrimination on LSU's campus. *Id*. at ¶¶ 410, 492.

The Title IX Policy reads: "Responsible Employees who receive notice or witness incidents of Sexual Misconduct must promptly notify the Title IX Campus Coordinator." *Id*. at ¶ 56-57. The Title IX Policy identifies Responsible Employees as any employee except victims' advocates, mental health counselors, or LSU Ombudsperson. *Id*. at ¶ 57. At all times during Alexander's employment, he was a Responsible Employee with obligations to report disclosures of sexual misconduct *to the Title IX Coordinator*. *Id*. at ¶ 82. Alexander is also responsible for upholding LSU's obligations under these agreements, which are offered and accepted upon student admission, and has contractual capacity. *Id*. at ¶ 522.

LSU retained the Husch Blackwell law firm to investigate LSU's Title IX policies and procedures and their findings ("Report") were publicly released on March 5, 2021. *Id*. at ¶ 68. According Husch Blackwell, the prevalence of retaliatory coercion in LSU Athletics indicated "a

---

[1] *See, e.g.*, Doc. 22 at ¶¶ 85, 101-02, 393, 410, 492, 522; Doc. 22-1 at 6, 10, 11, 30, 37-38, 42-44, 50-51, 55, 75, 101; 151; 164; 201.

deeply entrenched cultural problem at LSU" known to encourage sexual harassment and assault by creating a hostile environment that treats women as second-class citizens and fails to hold male students accountable for their acts of sexual misconduct. *Id*. at ¶¶ 69, 71, 73, 82, 87, 94, 436.

In a 2017, LSU's Office of Internal Audit researched LSU's Title IX response and found, *inter alia*, Responsible Employees do not understand their reporting obligations under Title IX; policies, procedures, and publications related to Title IX do not comply with federal requirements; campus Title IX websites are difficult to find; and LSU wholly lacks certain policies or guidelines. *Id.* at ¶ 84. Alexander received a copy of this audit and willfully ignored it. *Id.* at ¶¶ 85, 101, 393. From these factual allegations, and from the law as explained below, Plaintiffs have pleaded sufficient facts to survive a 12(b)(6) Motion to Dismiss.

## LAW AND ARGUMENT

"It is well-settled in this Circuit that motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and are rarely granted."[2] There exists "a powerful presumption against rejecting pleadings for failure to state a claim[,]"[3] and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[4]  Courts accept " all well-pleaded facts as true and [view] those facts in the light most favorable to the plaintiff[]."[5] In deciding a Rule

---

[2] *Pride Centric Resources, Inc*. v. *LaPorte, et al*., No. CV 19-10163, 2021 WL 3741529, at *2 (E.D. La. Aug. 24, 2021) (citing *Financial Acquisition Partners LP* v. *Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys*., 117 F.3d 242, 247 (5th Cir. 1997))).

[3] *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985); *Hernandez v. Baylor Univ*., 274 F. Supp. 3d 602, 609 (W.D. Tex. 2017) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co*., 563 F.3d 141, 147 (5th Cir. 2009))).

[4] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[5] *Meador v. Apple, Inc*., 911 F.3d 260, 264 (5th Cir. 2018) (quotation omitted).

12(b)(6) motion to dismiss, a court may take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[6]

Importantly, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.[7] A complaint "does not need detailed factual allegations . . . but must provide the [plaintiff's] grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level."[8] That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" meaning the court can draw the reasonable inference that the defendant is liable for the misconduct alleged.[9] Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[10]

## I.    <u>Title IX Claims</u>

Title IX retaliation is a claim that is properly brought against individuals as well as institutions. <u>Doc. 22 at</u> ¶ 409. Unlike general claims of Title IX violations, which must be made against recipients of federal funding, Title IX retaliation claims may be brought against both institutions and individuals. The language of the law itself makes this clear: "No recipient *or other person* may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by title IX…Intimidation, threats, coercion, or

---

[6] *Pride Centric Resources, Inc.* <u>2021 WL 3741529</u>, at *2 (citing *In re American Intern. Refinery*, <u>402 B.R. 728, 749</u> (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc*., <u>301 F. Supp. 2d 599, 602</u> n.3 (E.D. Tex. 2004))).

[7] *Braden v. Wal-Mart Stores, Inc*., <u>588 F.3d 585, 594</u> (8th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., <u>551 U.S. 308, 322–23</u> (2007)).

[8] *Hernandez*, <u>274 F. Supp. 3d at 609</u> (W.D. Tex. 2017) (quoting *Cuvillier v. Taylor*, <u>503 F.3d 397, 401</u> (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, <u>550 U.S. 544, 555</u> (2007))).

[9] *Hernandez*., <u>274 F. Supp. 3d at 678</u> (quoting *Ashcroft v. Iqbal*, <u>556 U.S. 662, 678</u>, <u>(2009)</u> (quoting *Twombly*, <u>550 U.S. at 570</u>)); *Meador*, <u>911 F.3d at 264</u> (quotation omitted).

[10] *Iqbal*, <u>129 S.Ct. at 1950</u>.

discrimination . . . constitutes retaliation."[11] "The very concept of retaliation is that the retaliating party takes action against the party retaliated against after, and because of, some action of the latter."[12] Federal courts have repeatedly affirmed that retaliation is a violation of federal civil rights.[13]

In *Jackson v. Birmingham Board of Education*, the Supreme Court held that retaliation against a person who complains about sex discrimination is itself a form of discrimination "on the basis of sex" forbidden by Title IX and a violation of federal civil rights.[14] Applying *Jackson*, courts have recognized the following elements to support a claim for Title IX retaliation: (1) a person engaged in protected activity, (2) materially adverse action taken against that person, and (3) a "but-for" causal connection between the protected actively and the materially adverse action.

To establish a *prima facie* case of Title IX retaliation in the Fifth Circuit, "[a] Title IX retaliation plaintiff must show that the funding recipient *or its representatives* took an adverse action against them because they complained of discrimination."[15] Plaintiffs allege that Alexander engaged in materially adverse actions against Plaintiffs when LSU's Title IX Office failed to properly investigate Plaintiffs' claims of sex discrimination, failed to initiate appropriate interim measures to ensure their safety and ongoing equal access to educational opportunities and benefits, and failed to implement appropriate sanctions and responsive measures to remedy the sexually

---

[11] 34 CFR § 106.71(a) (emphasis added).

[12] *Fed. Mar. Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 514 (1958).

[13] *See, e.g.*, *Jackson*, 544 U.S. 167; *Peters v. Jenney*, 327 F.3d 307, 320-21 (4th Cir. 2003); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

[14] 544 U.S. 167, 173-74 (2005). *See also Peters v. Jenney*, 327 F.3d 307, 320-21 (4th Cir. 2003); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

[15] *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864 (M.D. La. 2014).; *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 586 (5th Cir. 2020) (citing *Sanches v. Carrollton-Farmers Branch Independent*, 647 F.3d 156 (5th Cir. 2011)) (emphasis added).

hostile environment and prevent its recurrence. This is sufficient to state a claim for Title IX retaliation under Fifth Circuit jurisprudence, and Alexander's Motion should be denied.

## A. Prescription

A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling.[16] It is undisputed that Title IX claims are subject to the state statutes of limitations for personal injury actions, and in Louisiana, the relevant prescriptive period is one year.[17] Although courts look to state law for the length of the prescriptive period, the time at which a Title IX claim accrues and the prescriptive period commences "is a question of federal law," "conforming in general to common-law tort principles."[18] Accrual under federal common law occurs and the prescriptive period begins to run the moment the plaintiff ***becomes aware*** that she has suffered an injury.[19] However, a plaintiff's awareness encompasses two elements: (1) existence of the injury, and (2) "causation, that is, the connection between the injury and the defendant's actions."[20]   A Plaintiff does not need to know that they have a legal cause of action, but they need to have an awareness of the facts that would ultimately support the claim.[21]

Alexander argues that the Title IX retaliation claims against him are all prescribed, as their injuries were sustained over 1 year from the filing of this suit. However, the causes of action were

---

[16] *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 615 (W.D. Tex. 2017) (quoting *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014)).

[17] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020) (citing *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015); *Griffin v. Round Rock Indep. Sch. Dist.*, 82 F.3d 414, 1996 WL 166999, at *1 (5th Cir. 1996); LA. CIV. CODE art. 3492; *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 739 (5th Cir. 2017)).

[18] *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)); *King-White*, 803 F.3d 754, 762 (5th Cir. 2015) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)).

[19] *King-White*, 803 F.3d 754, 762 (5th Cir. 2015) (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001))) (emphasis added).

[20] *King-White*, 803 F.3d 754, 762 (5th Cir. 2015) (quoting *Piotrowski*, 237 F.3d at 576).

[21] *Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (quoting *Piotrowski*, 237 F.3d at 576).

not known or reasonably knowable by these Plaintiffs until the release of the Report in March 2021, well within a year of filing this suit. Because Plaintiffs' complaint establishes a basis for tolling, the Plaintiffs' Title IX retaliation claims have survived dismissal based on prescription.

## B. Qualified Immunity

The doctrine of qualified immunity only shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[22] Clearly established statutory rights refers to rights that are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[23] Officials who are either plainly incompetent or knowingly violate the law are thus not protected by qualified immunity.[24] Whether a law is clearly established can cause much debate in relation to constitutional violations as the law relies on guidance from the Supreme court outlining general principles. However, under the Title IX statute, there is no ambiguity. Not only is the law on Title IX requirements clearly established by statute, regulations, federal guidance documents, and Fifth Circuit precedent, Plaintiffs have alleged that Alexander had ***actual knowledge*** of the illegality of his actions; thus, he cannot enjoy the protections of qualified immunity.[25] Doc. 22-1 at 13; Doc. 22 at ¶¶ 84-86.

Alexander's conduct was objectively unreasonable in the light of clearly established Title IX law,[26] and Alexander knew this. No reasonable official with Alexander's knowledge, the legal team at Alexander's disposal, and the voracious advocacy of community members directed toward

---

[22] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[23] *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

[24] *Malley v. Briggs*, 475 U.S. 335, 341 (1986), *see also Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015).

[25] *See Malley*, 475 U.S. at 341; *Mullenix*, 577 U.S. at 11-12.

[26] *See Kennedy v. Tangipahoa Par. Library Bd. of Control*, 224 F.3d 359, 377 (5th Cir. 2000); *Thornton v. Lymous*, 489 F. Supp. 3d 470, 482 (E.D. La. 2020).

Alexander could have thought their actions were not violative of Title IX law. Thus, Alexander's argument for qualified immunity fails and his Motion should be denied.

## II.     Civil Rights Claims

Alexander's main objection regarding Plaintiffs' civil rights claims is that Plaintiffs fail to allege any actual interaction between Plaintiffs and Alexander. However, this is not a bar to Plaintiffs' recovery.[27] "[A] valid individual capacity claim requires a Section 1983 plaintiff to 'establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation.'"[28] In *La. Cleaning Sys.*, the plaintiff overcame the defendants' motion for summary judgment when, although the sheriff had no direct interaction with the plaintiff, the sheriff still ratified the deputies' conduct after the fact. *Id.* at \*14. Alexander established an official policy or custom at LSU of ignoring Title IX obligations. This policy was the moving force behind the deprivation of Plaintiffs' constitutional rights. Although Alexander may not have been "personally involved," his wrongful actions of ignoring the damaging audit were causally connected to the constitutional deprivation of the Plaintiffs.

Alexander also claims that he is entitled to dismissal of all civil rights claims under the doctrine of qualified immunity. The Supreme Court has held, that state agencies, such as LSU, and their employees acting in their official capacities are not "persons" subject to monetary liability under § 1983.[29] As discussed in Section I.B. *supra*, the doctrine of qualified immunity only shields officials from civil liability so long as their conduct "'does not violate clearly established statutory

---

[27] *See La. Cleaning Sys. v. Brown*, No. 14-2853, 2015 U.S. Dist. LEXIS 152077 (W.D. La. Nov. 9, 2015).

[28] *La. Cleaning Sys.*, 2015 U.S. Dist. LEXIS 152077 at \*16 (citing *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

[29] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Coleman v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. 15-35-JJB-RLB, 2015 U.S. Dist. LEXIS 150270 at \*2 (M.D. La. 2015).

or constitutional rights of which a reasonable person would have known.'"[30] There need not be one case specifically stating which rights qualify as "clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate."[31] If the law is clearly established, the court then determines "whether the defendants' conduct was objectively reasonable in light of 'clearly established' law at the time of the alleged violation."[32] The defendant's subjective state of mind is not relevant.[33]

## A. First Amendment Free Speech Claims

To determine whether Alexander may enjoy qualified immunity for First Amendment Retaliation claims, the court must determine whether the law on First Amendment protection of sexual harassment and assault claims are clearly established. Across the U.S., including within the Fifth Circuit, it is clearly established that students may exercise their First Amendment rights free from retaliation by school officials unless doing so would "materially and substantially disrupt" school operations.[34] More specifically, it is clearly established law that students are free to report claims of sexual assault without fear of retaliation.[35] In *Landesberg-Boyle v. Louisiana*,[36] this court held that "plaintiff's right as a public employee to report and protest to her employer, without fear of retaliation, instances of sexual abuse and harassment" on campus is a clearly established First Amendment right. As far back as 1992, the Fifth Circuit has held that a public employer's

---

[30] *Harlow*, 457 U.S. at 818; *Reichle*, 566 U.S. at 664.

[31] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

[32] *Kennedy v. Tangipahoa Par. Library Bd. of Control*, 224 F.3d 359, 377 (5th Cir. 2000); *Thornton v. Lymous*, 489 F. Supp. 3d 470, 482 (E.D. La. 2020).

[33] *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001).

[34] *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272 (1988); *Healy v. James*, 408 U.S. 169, 189 (1972). *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667 (1973).

[35] 34 C.F.R. § 106.71(a) ("[n]o recipient or other person may intimidate, threaten, coerce, or discriminate against any individual . . . because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under [Title IX]"); *Doe v. Alvey*, No. 1:20-cv-410, 2021 U.S. Dist. LEXIS 55674 at *10 (S.D. Ohio Feb. 2, 2021) (holding that "a student-athlete's complaint about sexual assault to her coach constitutes constitutionally protected speech").

[36] No. 03 - 3582, 2004 U.S. Dist. LEXIS 18276 at *17 (E.D. La. Sep. 9, 2004)

retaliation for an employee's reports of workplace sexual harassment to her superiors represents a violation of a clearly established right.[37] Thus, Plaintiffs' First Amendment rights are clearly established with regards to reports of sexual misconduct, and Alexander's confusion is objectively unreasonable. Alexander is not entitled to qualified immunity on Plaintiffs' first amendment claims.

Further, Plaintiffs allege that Alexander's policies (both formal and de-facto) created a system that retaliated against *any* report of sexual misconduct, in a purposeful attempt to chill all students and faculty from any further reports (i.e. any further exercise of first amendment rights). Doc. 22 at ¶¶ 101, 109. These retaliatory responses from LSU's Title IX system were motivated by a desire to repress Plaintiffs' first amendment rights in an attempt to protect the reputation of the school and its football team. Thus, Plaintiffs have alleged a cause of action against Alexander for violation of their first amendment rights.

**B. Fourteenth Amendment Equal Protection Claims**

To determine whether Alexander may enjoy qualified immunity for First Amendment Retaliation claims, the court must determine whether the law on failing to report or investigate allegations of sexual assault violates the Equal Protection clause is clearly established. Across the U.S., including within the Fifth Circuit, it is clearly established that failing to report or investigate allegations of sexual assault violates the Equal Protection clause. First, "a State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."[38] The Supreme Court has held "that § 1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools,"

---

[37] *Wilson v. Univ. of Tex. Health Ctr.*, 973 F.2d 1263, 1268-69 (5th Cir. 1992)
[38] *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989).

including in the case of school officials' inadequate responses to allegation of peer-on-peer sexual harassment.[39] Thus, Alexander is not entitled to qualified immunity on this claim.

Further, Plaintiffs have clearly pleaded that they have alleged discrimination on the basis of sex. Plaintiffs clearly pleaded that Alexander created a culture at LSU that treated women as second-class citizens and created a hostile environment. This is undoubtedly discrimination on the basis of sex. Thus, Plaintiffs' claims against Alexander for violations of their right to equal protection have been plausibly pleaded, and Alexander's Motion should be denied.

## C. Fourteenth Amendment Due Process Claims

To determine whether Alexander may enjoy qualified immunity for Due Process claims, the court must determine whether the law granting Plaintiffs a property or liberty interest in the Title IX reporting and investigating process is clearly established. The Supreme Court has clearly established the obvious principle that if public universities have mandatory disciplinary procedures and plaintiffs are eligible for the protections of those procedures, failing to follow the published procedures constitutes an unconstitutional deprivation of plaintiffs' property without due process.[40] In *Sindermann*, a lecturer at a public college was working under a contract for a certain term.[41] The college also published a "Faculty Guide" that stated, "The Administration of the College wishes the faculty member to ***feel that he has permanent tenure***…."[42] Following the lecturer's public critique of the Board, the Board did not renew the lecturer's contract at the end of its term.[43] In this case, the Supreme Court found that the language in the faculty guide that encouraged professors to "feel" like they have tenure created a property right that cannot be

---

[39] *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009).

[40] *Perry v. Sindermann*, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972).

[41] *Perry*, 408 U.S. at 595.

[42] *Id.* at 600 (emphasis added).

[43] *Id*. at 595.

deprived without due process, despite the lecturer's actual contract, which was clearly subject to termination at the end of its term.[44]

In the present case, Plaintiffs were not guided by a vague statement by LSU to "feel" like their reports will be investigated. Plaintiffs had a property right in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law. Unlike *Sindermann*, LSU did not have any discretion in whether it decided to follow the Title IX procedures. There is no ambiguity regarding LSU and/or Alexander's responsibilities here. Thus, acknowledging this clear law (and utilizing common sense) Alexander should have known that Plaintiffs were entitled to have LSU and its employees follow LSU's own published procedures, which Alexander is credited as drafting. Plaintiffs have plausibly pleaded a claim against Alexander for deprivation of due process rights, and Alexander is not entitled to qualified immunity on this claim. Alexander's Motion should be denied.

### D. Prescription

Alexander further argues that Plaintiffs' civil rights claims are "obviously" prescribed. A motion to dismiss may be granted on a prescription defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling.[45] It is undisputed that Louisiana's one year period of liberative prescription applies to Plaintiffs' civil rights claims.[46] Although courts look to state law for the length of the prescriptive period, the time at which a §1983 claim accrues and the prescriptive period commences "is a question of federal law,"

---

[44] *Id*. at 598.

[45] *Hernandez v. Baylor Univ*., 274 F. Supp. 3d 602, 615 (W.D. Tex. 2017) (quoting *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014)).

[46] *Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016) (quoting *Piotrowski v. City of Hous*., 237 F.3d 567, 576 (5th Cir. 2001); La. Civ. Code art. 3492.

"conforming in general to common-law tort principles."[47] Accrual under federal common law occurs and the prescriptive period begins to run the moment the plaintiff ***becomes aware*** that she has suffered an injury.[48] However, a plaintiff's awareness encompasses two elements: (1) existence of the injury, and (2) "causation, that is, the connection between the injury and the defendant's actions."[49] A Plaintiff does not need to know that they have a legal cause of action, but they need to have an awareness of the facts that would ultimately support the claim.[50]

Here, Alexander's liability stems from actions that were taken outside of the purview of Plaintiffs and about which Plaintiffs could not have known until the publication of the Report in March 2021, well within the one-year prescriptive period.[51] Because Plaintiffs' complaint establishes a basis for tolling, the Plaintiffs' claims have survived dismissal on the basis of prescription. Alexander's Motion should be denied.

### E. Conspiracy

Plaintiffs have plausibly pleaded a cause of action against Alexander under Sections 1983, 1985, and 1986 of the Civil Rights Act. Plaintiffs have clearly pleaded a conspiracy to deny constitutional and federal rights to all female-presenting and LGBTQ+ identifying LSU students, and that caused the actual deprivation of constitutional and federal rights of the Plaintiffs. To allege conspiracy liability under 42 U.S.C. § 1983, a plaintiff must plead (1) that she has been deprived of a constitutional or statutory right, (2) that at least one of the wrongdoers was acting under color

---

[47] *McDonough v. Smith*, 139 S. Ct. 2149, 2155, 204 L. Ed. 2d 506 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)); *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)).

[48] *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir.2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001))).

[49] *King-White*, 803 F.3d at 762 (quoting *Piotrowski*, 237 F.3d at 576 (citation and internal quotation marks omitted in original)).

[50] *Id.*

[51] *Adickes v. S. H. Kress & Co*., 398 U.S. 144 (1970); *Green v. Howser*, 942 F.3d 772 (7th Cir. 2019); *Panayotides v. Rabenold*, 35 F. Supp. 2d 411 (E.D. Pa. 1999), *aff'd*, 210 F.3d 358 (3d Cir. 2000).

of state law, (3) the state official(s) and the defendant reach an understanding to deprive plaintiff of her rights, and (4) the defendant was a willful participant.[52] To allege liability under 42 U.S.C. § 1985(3) for conspiracy to interfere with civil rights by depriving persons of rights, the plaintiff must allege facts demonstrating: (1) a conspiracy; (2) motivated by discriminatory animus; (3) for the purpose of depriving, either directly or indirectly, a person *or class of persons* of the equal protection of the laws; (4) an overt act in furtherance of the conspiracy; and (5) an injury.[53] Finally, 42 U.S.C. § 1986 provides a cause of action against individuals who have knowledge that any of the wrongs conspired to be done in Section 1985 are about to be committed and, having the power to prevent or aid in preventing commission of the same, neglect or refuse to do so. The claim constitutes an additional safeguard for those rights protected under section 1985.[54]

Plaintiffs have plausibly pleaded each of the elements required for these causes of action: each Plaintiff suffered injury from a deprivation of Equal Protection as members of a protected class of individuals by a wrongdoer acting under the color of state law during employment with LSU; all defendants had an understanding that to increase the money of the Athletics Department it would be necessary to deprive and entire class of female-presenting and LGBTQ+ identifying LSU students of the aforementioned Constitutional rights, and all defendants were willful participants in this conspiracy, and Alexander performed overt acts in furtherance of this conspiracy; and if Alexander is found not to have been a party to the conspiracy, he certainly was

---

[52] *Adickes*, 398 U.S. 144; *Tebo v. Tebo*, 550 F.3d 492 (5th Cir. 2008); *Abdeljalil v. City of Fort Worth*, 55 F. Supp. 2d 614 (N.D. Tex. 1999), *aff'd*, 234 F.3d 28 (5th Cir. 2000); *see also, Howard v. Lemmier*, No. CIV.A. 10-1814, 2011 WL 5508995, at *8 (E.D. La. Oct. 20, 2011), *report and recommendation adopted*, No. CIV.A. 10-1814, 2011 WL 5508978 (E.D. La. Nov. 10, 2011).

[53] *Griffin v. Breckenridge*, 403 U.S. 88 (1971); *Maxwell v. Dodd*, 662 F.3d 418 (6th Cir. 2011); *see Arvie v. Vidrine*, No. CV 6:21-1387, 2021 WL 4762679, at *4 (W.D. La. Sept. 22, 2021), *report and recommendation adopted*, No. CV 21-1387, 2021 WL 4762364 (W.D. La. Oct. 12, 2021); *Wright v. City of Harahan*, No. CV 19-13529, 2020 WL 815240, at *11 (E.D. La. Feb. 19, 2020).

[54] *Dooley v. City of Philadelphia*, 153 F. Supp. 2d 628 (E.D. Pa. 2001), *on reconsideration in part on other grounds*, 161 F. Supp. 2d 592 (E.D. Pa. 2001).

aware of its existence and refused to act to  prevent the conspiracy's success.[55] There is sufficient factual matter that, if accepted as true, states a claim to relief that is plausible on its face. Alexander's Motion must be denied.

## III.    Prescription of State Tort Claims

A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling.[56] Tort actions are subject to a one-year prescriptive period that typically commences to run from the day injury or damage is sustained.[57] There are four jurisprudentially proven methods of delaying the commencement of prescription, including where the cause of action is not known or reasonably knowable by the plaintiff.[58] As previously addressed, Plaintiffs could not have known of their causes of action until the public disclosure of the Report in March 2021, well within the one-year prescriptive period.

Further, prescription does not begin to run on a continuing tort until the conduct is abated.[59] Plaintiffs allege that the negligent acts of Alexander constituted a disturbing pattern of continuous tortious interference with LSU's Title IX program, despite Alexander's duty to uphold the system

---

[55] Doc. 22 at ¶¶ 2, 8, 86, 155, 176, 191, 243, 282, 339, 393, 424, 530, 542, 563, 567, and 577.

[56] *Hernandez*, 274 F. Supp. 3d at 615 (quoting *Taylor*, 744 F.3d at 946).

[57] La. Civ. Code art. 3492.

[58] *Corsey v. State, Through Dept. of Corrections*, 375 So. 2d 1319 (La. 1979) ("The exception is founded on the ancient civilian doctrine of *Contra non valentem agere nulla currit praescriptio*, predating and within the penumbras of modern civilian codes, and it has been recognized from Louisiana's earliest jurisprudence." (citing Comment, The Scope of the Maxim *Contra Non Valentem* in Louisiana, 12 Tulane L. Rev. 244, 253–54 (1938); Planiol, Civil Law Treatise, Volume 1, Section 2704–05, Volume 2, Section 678 (LSLI translation, 1959); *Henson v. St. Paul Fire and Marine Ins. Co.*, 363 So. 2d 711 (La. 1978); *Hyman v. Hibernia Bank & Trust Co.*, 139 La. 411, 71 So. 598 (1916); *McKnight v. Calhoun*, 1884 WL 8050 (La. 1884); *Reynolds v. Batson*, 1856 WL 4826 (La. 1856)); *Cartwright v. Chrysler Corp.*, 255 La. 597, 598, 232 So. 2d 285 (1970); *Sumerall v. St. Paul Fire & Marine Ins. Co.*, 366 So. 2d 213 (La. Ct. App. 2d Cir. 1978)).

[59] *Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992); *Estate of Patout v. City of New Iberia*, 813 So. 2d 1248 (La. Ct. App. 3d Cir. 2002). *Risin v. D.N.C. Investments, L.L.C.*, 921 So. 2d 133 (La. Ct. App. 4th Cir. 2005); *Louisiana AG Credit, PCA v. Livestock Producers, Inc.*, 954 So. 2d 883 (La. Ct. App. 2d Cir. 2007); *Lopez v. House of Faith Non-Denomination Ministries*, 29 So. 3d 680 (La. Ct. App. 4th Cir. 2010).

in compliance with federal regulations and LSU's own policies. This continuous conduct caused Plaintiffs' damages.[60] Because Alexander's tortious conduct continued through December 31, 2019, the prescription could not have commenced to run until this date. Finally, prescription may be interrupted when a solidary obligor acknowledges the right of the person against whom he is prescribing.[61] Thus, had any prescriptive period already commenced prior to the Louisiana Senate Committee Hearing in March 2021, such a period was interrupted when LSU acknowledged its negligence,[62] well within the one-year prescriptive period. Because Plaintiffs' Complaint establishes multiple basis for tolling, the Plaintiffs' state tort claims have survived dismissal based on prescription.

## IV.    Louisiana's Qualified Immunity Statute

Alexander's qualified immunity based on La. R.S. §9:2798.1 is not applicable to this case, as Plaintiffs have pleaded that establishing an operable Title IX system at LSU was a mandatory, not a discretionary function. The statutory immunity in discretionary matters exercised by a governmental agency is not absolute and will not apply when the official has no rightful option but to adhere to the directive.[63] Further a government official who performs a discretionary function is not shielded from liability for civil damages for violations of clearly established statutory or constitutional rights of which a reasonable person would have known or for intentional torts.[64] Because Plaintiffs have plausibly pleaded Alexander's acts were not committed during his

---

[60] Although Hovis' injury occurred after Alexander's December 31, 2019, departure from LSU, his negligent actions were still affecting LSU's Title IX system and causing injury to Hovis in at least January 2020.

[61] La. Civ. Code arts. 3464, 3503.

[62] President Thomas Galligan admitted that LSU "failed those who it was our first duty to protect." Doc. 22 at ¶ 1.

[63] *Nick Farone Music Ministry v. City of Bastrop*, App. 2 Cir. 2012, 106 So.3d 125, 47,410 (La. App. 2 Cir. Sep, 26, 2012), *writ denied* 104 So.3d 446, 2012-2344 (La. Dec. 14, 2012), *on subsequent appeal* 179 So.3d 629, 50,066 (La. App. 2 Cir. Sep. 30, 2015); *Marino v. Parish of St. Charles*, 27 So.3d 926, 09-197 (La. App. 5 Cir. Oct, 27, 2009); *Mills v. City of Shreveport*, 58 F.Supp.3d 677 (W.D. La. 2014); *State of La. v. Public Investors, Inc*., 35 F.3d 216 (La. App. 5 Cir. 1994) *rehearing denied*.

[64] *See Amato v. Office of Louisiana Com'r of Securities*, 644 So.2d 412, 1994-0082 (La. App. 4 Cir. Oct. 3, 1994), *rehearing denied, writ denied* 649 So.2d 410, 1994-3024 (La. Feb. 3, 1995), *certiorari denied* 115 S.Ct. 2582, 515

discretionary policy making capacity but were violations of clearly established mandatory law, Louisiana's government official discretionary immunity cannot apply to Plaintiffs' Claims, and Alexander's motion must be dismissed

## V.    **Negligence**

"There is an almost universal duty on the part of the defendant in negligence cases to use reasonable care so as to avoid injury to another. In some cases, the duty is refined more specifically that the defendant must conform his or her conduct to some specially defined standard of behavior."[65] Plaintiffs pleaded that Alexander owed a duty of "reasonable care" to Plaintiffs "to ensure their safety and freedom from sex-based assault, harassment, and abuse while students at LSU" as well as nearly twenty ways in which Alexander breached those duties to Plaintiffs. Doc. 22 at ¶¶ 481, 483. Plaintiffs have clearly pleaded a duty of Defendants to keep Plaintiffs free from assault and abuse—a duty that is well-established as a "matter of social policy."[66] Further, deciding the existence and scope of a duty is not a determination appropriate for disposition on a Rule 12(b) motion because it is a fact-intensive inquiry. "Generally, there is an almost universal legal duty on the part of a defendant in a negligence case to conform to the standard of conduct of a reasonable person in like circumstances. But whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case, and the relationship of the parties."[67]

---

U.S. 1144, 132 L.Ed. 2d 832; *Morice v. Hospital Service District #3*, 430 F.Supp.3d 182, 2020 WL 730323 (E.D. La. 2019), *reconsideration denied*.

[65] *Boykin v. Louisiana Transit Co.*, 96-1932, 707 So. 2d 1225, 1231 (La. Mar. 4, 1998).

[66] *See e.g.*, *River House Partners, LLC v. Grandbridge Real Est. Cap. LLC*, 2015 WL 6142874, at *4 (M.D. La. Oct. 19, 2015) (noting that "…a tort claim arises out of breaches of duties imposed by law as a matter of social policy.").

[67] *Griffin v. Shelter Ins. Co.*, 2002-2628, 857 So. 2d 603, 605, (La. App. 1 Cir. Sep. 26, 2003), *writ denied*, 2003-2992 (La. Jan. 16, 2004), 864 So. 2d 635 (citing *Bowman v. City of Baton Rouge/Parish of East Baton Rouge*, 2002–1376, pp. 5–6 (La. App. 1 Cir. May 9, 2003), 849 So.2d 622, 627). *See also Cuccia v. Hillhaven Corp.*, 1993 WL 114500, at *1 (E.D. La. Mar. 31, 1993) ("This court finds that the Complaint does state a claim based on a breach of an alleged fiduciary duty. It remains to be seen from the facts of this case whether such a duty existed.").

Finally, because there is no "categorical rule" excluding a duty for school officials to maintain a safe environment for students, Alexander's "no duty" argument must fail. "A 'no duty' defense 'generally applies when there is a categorical rule excluding liability as to whole categories of claimants or of claims under any circumstances.'"[68] For these reasons, Alexander's motion as to Plaintiffs' negligence claims should be denied.

## VI.    **Negligent Supervision**

Any claims by Alexander that he cannot be liable for claims of negligent supervision because he is not the employer have been soundly rejected by this Court. "Louisiana courts may hold a supervisory employee liable 'where he negligently created or negligently failed to correct a dangerous condition of which he was or should have been aware under the circumstances.'"[69] Furthermore, "[a] claim for negligent hiring and supervision is analyzed under the same duty-risk standard for all negligence claims in Louisiana. This standard requires proof of duty, breach of duty, causation, scope of liability or protection, and damages."[70] As outlined above, Plaintiffs pleaded each of the elements required. Doc. 22 at ¶ 492. Accepting Plaintiffs' allegations as true, Alexander's Motion to dismiss the negligent supervision claim against him must be denied.

## VII.    **Negligent Infliction of Emotional Distress**

Plaintiffs' Negligent Infliction of Emotional Distress ("NIED") claims are based in Louisiana Civil Code, and Louisiana courts have established that recovery is available in cases where the victim suffers no physical injury, bodily harm, or property damage by the hand of the

---

[68] *Chatman v. S. Univ. at New Orleans*, 2015-1179 (La. App. 4 Cir. Jul. 6, 2016), 197 So. 3d 366, 378 (quoting *Pitre v. La. Tech Univ.*, 95–1466, p. 22 (La. May 10, 1996), 673 So.2d 585, 596 (Lemmon, J., concurring)).

[69] *Autin v. Louisiana Dep't of Pub. Safety & Corr.*, No. CV 20-1214, 2021 WL 1210471, at *11 (E.D. La. Mar. 31, 2021), *reconsideration denied sub nom. Autin v. Goings*, No. CV 20-1214, 2021 WL 4476776 (E.D. La. Sept. 30, 2021), *amended sub nom. TROY AUTIN v. ROBERT GOINGS SGT., ET AL. Additional Party Names: Jonathan Stringer, Lance Wallace*, No. CV 20-1214, 2021 WL 5356875 (E.D. La. Nov. 17, 2021) (quoting *Fabre v. Travelers Ins. Co.*, 286 So.2d 459, 464 (La. App. 1 Cir. 1973)).

[70] *Id.* (citing *Kelley v. Dyson*, 08-1202 (La. App. 5 Cir. Mar. 24, 2009), 10 So.3d 283, 287-88).

negligent defendant, but does suffer mental distress.[71] For example, Louisiana courts have allowed recovery for negligent transmission of a message announcing death,[72] for mishandling of corpses,[73] for failure to install, maintain, or repair consumer products,[74] for failure to take photographs or develop film,[75] and for negligent damage to one's property.[76]

To recover for mental distress, Plaintiffs must only show the elements of negligence and an "especial likelihood of genuine and serious mental distress" referred to as the "special circumstances" element.[77] Alexander's memorandum fails to acknowledge that Louisiana jurisprudence following *Moresi* has indicated two methods by which Plaintiffs can show the "special circumstance" element: (1) showing that the defendant should have known that his outrageous conduct would cause genuine and severe mental distress to a person of ordinary sensibilities, or (2) showing that the defendant knew or should have known that the plaintiff was particularly vulnerable to emotional distress from his act.[78] Courts also consider whether the risk of the emotional distress falls within the scope of protection of Alexander's general duty, in other words, which encompasses the idea of foreseeability.[79]

Plaintiffs' pleaded each of the elements required. Alexander's conduct was so reckless as to demonstrate a substantial lack of concern for whether Plaintiffs were injured. Doc. 22 at ¶¶ 498,

---

[71] La. Civ. Code art 2315; La. Civ. Code art. 2316; *Covington v. Howard*, 49,135 (La. App. 2 Cir Aug. 13, 2014), 146 So. 3d 933, 937, *writ denied*, 2014-1927 (La. Nov. 11, 2014), 160 So. 3d 973.

[72] *Graham v. Western Union*, 109 La. 1069, 34 So. 91 (1903)

[73] *French v. Ochsner Clinic*, 200 So.2d 371 (La. App. 4 Cir. 1967)

[74] *Pike v. Stephens Imports, Inc*., 448 So.2d 738 (La. App. 4 Cir. 1984)

[75] *Grather v. Tipery Studios, Inc*., 334 So.2d 758 (La. App. 4 Cir. 1976)

[76] *Lambert v. Allstate Ins. Co*., 195 So.2d 698 (La. App. 1 Cir. 1967)

[77] *Moresi v. State Through Dept. of Wildlife and Fisheries*, 567 So. 2d 1096 (La. 1990); *see Covington v. Howard*, 49,135 (La. App. 2 Cir. 8/13/14), 146 So. 3d 933, 940, *writ denied*, 2014-1927 (La. Nov. 21, 2014), 160 So. 3d 973.

[78] *See Covington*, 146 So. 3d at 940 (citing *Bordelon v. St. Frances Cabrini Hosp*., 93–1331 (La. App. 3 Cir. May 4, 1994), 640 So.2d 476; *Doe v. Dunn*, 39,179 (La. App. 2 Cir. Dec. 22, 2004), 890 So.2d 727, *writ denied*, 2005–0443 (La. Apr. 29, 2005), 901 So.2d 1066; *Succession of Harvey*, 97–2815 (La. App. 4 Cir. Jun. 24, 1998), 716 So.2d 911, *writ denied*, 98–2025 (La. Nov. 6, 1998), 728 So.2d 391).

[79] *Covington*, 146 So. 3d at 937-942 (citing *Bordelon*, 640 So.2d 476; *Roberts v. Benoit*, 605 So.2d 1032 (La. 1991); *Hill v. Lundin & Associates, Inc.,* 256 So.2d 620 (1972)).

499. Alexander should have known that a failure to prevent sex-based discrimination would certainly cause severe emotional distress to student survivors of sexual misconduct, as this class of persons is particularly vulnerable to emotional distress for sex-based discrimination. Alexander was well aware of his duties and that an initial response following disclosure of sexual conduct is a determinative factor for whether a survivor will recover from the misconduct or whether the survivors' emotional suffering will continue. The recommended conduct in the Title IX Policy is specifically meant to avoid the type of emotional distress, or re-traumatization, caused by Defendants' conduct.

As outlined in Section III, *supra*, Plaintiffs claims have not prescribed because Plaintiffs were made aware via the Report in March 2021 of the facts that implicate Alexander's liability for NIED, well within the year prior to Plaintiffs' filing. Alexander's qualified immunity argument regarding negligent infliction of emotional distress claims fails for the reasons discussed in Section IV, *supra*. For these reasons, Alexander's Motion to dismiss the negligent infliction of emotional distress claim against him must be denied.

## VIII.    Intentional Infliction of Emotional Distress

Alexander argues that Plaintiffs' Intentional Infliction of Emotional Distress ("IIED") claims are inadequate because they lack specific allegations of fact as to Alexander. However, the Complaint clearly alleges that the Defendants' collective actions (including Alexander's bad conduct) constituted an intentional pattern of reacting to disclosures of Title IX violations in an extreme and outrageous manner designed to deter any future disclosures. Doc. 22 at ¶506. *Walters v. Rubicon, Inc.* establishes that this type of collective action of a group with a united purpose to cause severe emotional distress survives the pleading phase of litigation. In *Walters*, Walters

worked as an environmental engineer under the supervision of the defendants.[80] As an environmental engineer, Walters had a right to disclose any potential violations of an environmental law, rule, or regulation without retaliation from his employer.[81] Over the course of his employment, each time Walters disclosed a reasonable concern regarding potential violations of environment regulations, Walters was subjected to verbal abuse and ridicule, and defendants would require him to "ignore policies, procedures and factual situations which he believed to be illegal and/or in violation of [environmental regulations]."[82] In addition, Walters' coworkers would "cut in front" of Walters in traffic, and make threatening gestures by forming a gun with their hand and mouthing "pow." [83] The continued nature of this abuse caused Walters to suffer extreme physical symptoms and stress-induced injuries, and he alleged that his superiors were aware that their behavior was causing his emotional distress.[84] The court ruled that although any of these actions individually would not rise to either intent or outrageous conduct required for a claim of IIED, when analyzed together, they appropriately pleaded a pattern of intentional behavior and outrageous conduct.[85]

　　As with *Walters*, Plaintiffs do not allege that any one isolated act by Alexander in response to a disclosure of sexual misconduct constituted an extreme and outrageous act. Plaintiffs instead allege that the repeated pattern of the Defendants' responses to reports of sexual assault combined other actions over time is the extreme and outrageous conduct performed with the intent to cause severe emotional distress. Like Walters, all LSU students have a right to disclose sexual misconduct without retaliation by LSU employees. Doc. 22-1 at 156. Additionally, each Defendant

---

[80] *Walters v. Rubicon, Inc.*, 96-2294 (La. App. 1 Cir. Dec. 29, 1997), 706 So. 2d 503, 505.
[81] *See* La. Stat. Ann. § 30:2027; *Walters,* 706 So.2d at 508.
[82] *Walters*, 706 So.2d at 507.
[83] *Id.*
[84] *Id.*
[85] *Id.*

is aware of each Plaintiff's particular vulnerabilities as a survivor of sexual misconduct and has knowledge to a substantial certainty that denial of their experiences and retaliation would cause severe emotional distress. Alexander's qualified immunity and prescription arguments regarding intentional infliction of emotional distress claims fail for the same reasons discussed in Sections III-IV, *supra*. Thus, Plaintiffs have pleaded a plausible claim for IIED and Alexander's Motion should be denied.

## IX.   **Breach of Contract**

Alexander argues that the LSU Student Code of Conduct, Title IX Policy, Sexual Harassment Policy, and Equal Opportunity Policy do not constitute a contract to which Alexander could be a party. Alexander does not cite any authority for this proposition. Although this precise issue has not been decided in a Louisiana court, prior analogous rulings and rulings throughout the United States establish the appropriate and consistent conclusion that a contractual relationship existed between LSU, its employees (including Alexander), and Plaintiffs. Louisiana courts have consistently found that an implied contract is created between private universities and their students, and courts in several other states have made similar, more expansive rulings regarding public universities, the terms of which are outlined in university policies.[86] In finding a contractual

---

[86] *Ahlum v. Administrators of Tulane Educ. Fund*, 617 So.2d 96, 98-99 (La. App. 4th Cir. 1993), *writ denied sub nom. Ahlum v. Adminst. Of Tulane Educ. Fund*, 624 So. 2d 1230 (La. 1993) (citing *Flint v. St. Augustine High School*, 323 So.2d 229, 235 (La. App. 4th Cir. 1975); *Babcock v. Baptist Theological Seminary v. Vance*, 596 S.W.2d 90, 97 (La. App. 4th Cir. 1989)) (finding a contractual relationship between the Defendant seminary and its student, noting that courts throughout the country have found similar contractual relationships to exist). *See, e.g.*, *Doe v. W. New Eng. Univ.*, 228 F. Supp. 3d 154, 169 (D. Mass. 2017) ("the relationship between a student and a university is based on a contract[,]" the terms of which are contained within the student handbook or other related materials); *Doe v. Rollins College*, 352 F. Supp. 3d 1205, 1212 (M.D. Fla. 2019) (denying Defendant's motion to dismiss a breach of contract claim finding sufficient allegations that a contract existed based on Plaintiff's enrollment, payment of tuition and fees, and attendance with the contractual terms in the student handbook and related procedures); *Havlik v. Johnson & Whales University*, 509 F.3d 25, 34 (1st Cir. 2007) ("A student's relationship to his university is based in contract[,]" and "[t]he relevant terms of the contractual relationship between a student and a university typically include language found in the university's student handbook."); *Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 810 (E.D. Pa. 2017) (citing *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999); *Reardon v. Allegheny College*, 926 A.2d 477, 480 (Pa. Super. Ct. 2007)) (finding the "relationship between a private educational institution and an enrolled student is contractual in nature[,]" and "[t]he contract between an educational institution and a student includes any

relationship between a university and its students, this court would follow the lead of several states throughout the country. Plaintiffs have alleged sufficient facts for each element of a contract between Plaintiffs and Alexander under Louisiana law.[87] Thus, Alexander's Motion to dismiss Plaintiffs' contract claims should be denied

## X.  Conspiracy

Plaintiffs agree that "The actionable element in a claim under this article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part. In order to recover under this theory of liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury."[88] The Fifth Circuit recognized that "[t]he plaintiff must therefore prove an unlawful act and assistance or encouragement that amounts to a conspiracy. This assistance or encouragement must be of such quality and character that a jury would be permitted to infer from it an underlying agreement and act that is the essence of the conspiracy."[89] Plaintiffs sufficiently allege numerous "illegal" acts, assistance and encouragement among the Defendants, and resulting injuries sufficient to plead the existence of a conspiracy pursuant to Article 2324.

Alexander's main contention with Plaintiffs' allegations is that specific factual scenario in which Alexander consummated that formal agreement is not listed.[90] Alexander misconstrues the

---

agreement between the parties [. . .] contained within a portion of the student handbook.") (internal quotations omitted).

[87] "Four elements are required for confection of a valid contract" (1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose. *Keller v. Sisters of Charity of Incarnate Word*, 597 So.2d 1113, 1115 (La. App. 1992).

[88] *Butz v. Lynch*, 97-2166 (La. App. 1 Cir. 4/8/98), 710 So. 2d 1171, 1174, *writ denied*, 98-1247 (La. Jun. 19, 1998), 721 So. 2d 473 (citing *Silver v. Nelson*, 610 F. Supp. 505, 516–517 (E.D. La. 1985)).

[89] *Chrysler Credit Corp. v. Whitney Nat. Bank*, 51 F.3d 553, 557 (5th Cir. 1995) (citing *National Union Fire Ins. Co. v. Spillars*, 552 So.2d 627, 634 (La. Ct. App. 1989), *writ denied*, 556 So.2d 61 (La. 1990); *Silver v. Nelson*, 610 F. Supp. 505, 517 (E.D. La. 1985)).

[90] Alexander makes the same argument with regard to civil rights conspiracy claims.

23

legal standard for alleging conspiratorial 'agreement.' Knowledge and agreement may be established by pleading sufficient facts that allow the court to draw a plausible inference.[91] Even in cases in which various federal statutes have required a heightened pleading standard for knowledge or agreement, the Fifth Circuit has found that facts indicating the defendant had control over certain departments and/or information, that a conclusion was so obvious that the defendant must have been aware of it, or that the defendant had motive and opportunity to meet this highlighted pleading standard.[92] Importantly, even in these situations with statutorily mandated highlighted pleading standards, the Fifth Circuit and the Supreme Court have continuously acknowledged that the inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."[93] The totality of the facts alleged by Plaintiffs must be considered to determine the plausibility of the agreement. By asserting that Plaintiffs must plead facts describing how Alexander consummated the agreement, Alexander asks this court to require an even stricter plausibility standard to Plaintiffs' claims for absolutely no reason. Plaintiffs have pleaded sufficient information to allow this court to infer that Alexander's required intent is plausible and that the Leaders and Managers of the Enterprise had an agreement. For these reasons, Alexander's motion to dismiss Plaintiff's civil conspiracy claim should be denied.

## XI.    <u>Louisiana Racketeering Act ("LRA")</u>

Plaintiffs have "plausibly pleaded" the elements of an LRA claim against Alexander:

To state a valid civil claim under Louisiana Racketeering Act, a party must show that (1) a person engaged in (2) a pattern of racketeering activity (3) connected to

---

[91] *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, <u>551 U.S. 308, 322–23</u> (2007); *Iron Workers Benefit & Pension Fund - Iron Workers Dist. Council Philadelphia & Vicinity v. Anadarko Petroleum Corp.*, <u>788 F. App'x 268, 270</u> (5th Cir. 2019); *Masel v. Villarreal*, <u>924 F.3d 734, 747</u> (5th Cir. 2019), *as revised* (June 6, 2019).

[92] *See, e.g., Tellabs, Inc.*, <u>551 U.S. at 322</u>–23; *Iron Workers Benefit & Pension Fund*, <u>788 F. App'x at 270</u> (5th Cir. 2019); *Masel*, <u>924 F.3d at 747</u>.

[93] *See, Tellabs, Inc.*, <u>551 U.S. at 322</u>–23; *Iron Workers Benefit & Pension Fund*, <u>788 F. App'x at 270</u>.

the acquisition, establishment, conduct, or control of an enterprise. The term "pattern of racketeering activity" means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents . . . . La. Rev. Stat. 15:1352(C). "Racketeering activity" means "committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit any crime that is punishable under" one of specified Louisiana criminal statutes. La. Rev. Stat. 15:1352(A)(1)-(65).[94]

A "defendant need not personally commit the predicate acts provided that the evidence is sufficient to connect him to the fraudulent scheme."[95] "In addition, where an act can be attributed to the conspiracy itself, it can be imputed to each co-conspirator."[96]

Alexander has ultimate authority over all LSU employees and authority to regulate Tiger Athletic Foundation's ("TAF") relationship with LSU. Alexander himself is only supervised by the Board and used his leadership role to establish an inadequate Title IX program with miniscule resources, which provided insufficient training for both students and employees and maintained inaccurate and incomplete records of sexual misconduct. Plaintiffs alleged that Alexander knowingly implemented a Title IX system unable to meet the standards mandated by federal regulations in order to purposefully protect the future income of LSU's athletics programs for the benefit of Alexander and other members of the Enterprise. Alexander made available his authority as LSU's President to further the Enterprise by *inter alia*, knowingly ignoring audits indicating deficiencies in LSU's Title IX system.

To be held liable under the Louisiana Racketeering Act, a defendant does not need to actually commit a predicate act, such as witness intimidation, a defendant need only to attempt to

---

[94] *Viking Constr. Grp., LLC v. Satterfield & Pontikes Constr. Grp. Inc.*, 2018 WL 401182, at *2 (E.D. La. Jan. 12, 2018), *aff'd sub nom. Viking Constr. Grp., L.L.C. v. Satterfield & Pontikes Constr. Inc.*, 728 F. App'x 405 (5th Cir. 2018) (citing *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003)).

[95] *See Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112, 115 (5th Cir. 1987).

[96] *Cty. of El Paso, Tex. v. Jones*, 2009 WL 4730303, at *12 (W.D. Tex. Dec. 4, 2009) (citing *Pinkerton v. United States*, 328 U.S. 640, 646–47(1946)).

commit, conspire to commit, solicit, coerce or intimidate another person to commit witness intimidation. *See supra*. Because Plaintiffs have already filed their extensive LRA Case Statement (Doc. 103) which is incorporated by reference, the detailed factual allegations will not be restated in full here. However, the Complaint and Plaintiffs' Case Statement both set forth the numerous predicate acts engaged in by Alexander including: ***public intimidation*** as defined by La. R.S. § 14:122 by *inter alia* threatening public employees with harm in the form of adverse employment consequences such as retaliation and economic loss to influence public employees' willingness to engage appropriate reporting, record-keeping and training to maintain compliance with federal law and LSU's Title IX Policy; ***intimidating witnesses*** as defined by La. R.S. § 14:129.1 by threatening of Plaintiffs and other sexual misconduct victims with economic loss, retaliation and harassment in order to force them to conceal reports of sexual misconduct that would jeopardize the operations of the Enterprise; ***injuring public records*** as defined by La. R.S. § 14:129.1 by concealing the identity of sexual assailants from public records; ***filing false public records*** as defined by La. R.S. § 14:133 by keeping false and misleading public records regarding sexual assault reports at LSU; ***money laundering*** as defined by La. R.S. § 14:230 by making payment to LSU employees and providing benefits to LSU athletics as a result of the Enterprise's operations, all overseen by Alexander; and ***corrupt influencing*** as defined by La. R.S. § 14:120 by providing time and space of the LSU Athletics Department to facilitate the deficient training funded by TAF.[97]

Alexander argues that "Enterprise-sponsored training" cannot be considered money laundering or corrupt influencing. Money laundering includes making available anything of value known to be for the purpose of committing or furthering the commission or attempt of any public intimidation, witness intimidation, injuring public records, maintaining false records, and corrupt

---

[97] *See generally* Doc. 103 at 10-12, 40-56; Doc. 22 at ¶¶ 1, 4-8, 10, 59-60, 73, 75-76, 84-86, 94, 96, 106(d), 108, 109, 393, 410, 492, 522.

influencing.[98] Further, corrupt influencing is the giving or receiving of anything of apparent value by any person with the intention that the recipient shall influence the conduct of any public employee in relation to their employment.[99] Thus, Plaintiffs must only plead that Alexander conspired to make available anything of value for the purpose of committing a predicate act. Plaintiffs allege he made available the time and space of the LSU Athletics Department to facilitate the Enterprise sponsored training that affirmatively provided false information to all trainees, constituting a form of filing false public records, concealing public records, public intimidation, witness intimidation and corrupt influencing. Plaintiffs have adequately alleged that Alexander, as a Leader of the Enterprise, knew of and facilitated money laundering and corrupt influencing.

Alexander's qualified immunity argument regarding LRA claims fails for the same reasons discussed above. These allegations, which must be accepted as true, are sufficient to allege predicate acts by Alexander for Plaintiffs' LRA claims and his Motion to dismiss should be denied.

### A. Prescription

A motion to dismiss may be granted on a prescription defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling.[100] The LRA's five-year limitations period for civil claims is fixed by statute, "Notwithstanding any other provision of law, a criminal or civil action or proceeding under this Chapter may be commenced at any time *within five years after the conduct in violation of a provision of this Chapter terminates or the cause of action accrues*."[101] Importantly, the LRA's prescriptive period is distinguished from the RICO statute of limitations because it is a statutorily created prescriptive period. RICO's statute of limitation is not found within the statute, but is created by common law,

---

[98] La. R.S. § 14:230(B); La. R.S. § 14:230(A)(1); La. R.S. § 14:2(A)(4); La. R.S. § 14:120, 122, 129.1, 132, 133.
[99] La. R.S. § 14:120.
[100] *Hernandez*, 274 F. Supp. 3d 602, 615 (W.D. Tex. 2017) (quoting *Taylor*, 744 F.3d at 946 (5th Cir. 2014)).
[101] La. R.S. § 15:1356(H).

primarily through the Supreme Court's comparison to the Clayton Act. However, knowing of these judicial opinions, the Louisiana Legislature enacted the LRA with its own statutory language limiting the prescriptive period. Because the LRA prescriptive period is based on statutory language, most of the RICO jurisprudence created by comparison to the Clayton Act is simply inapplicable when it contradicts the statutory language of the LRA. "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."[102] The plain language that the Louisiana Legislature chose is that a five year prescriptive period commences either after the prohibited conduct terminates or after the cause of action accrues, which Louisiana courts have interpreted to occur once the complainant has incurred injury and has actual or constructive knowledge of the facts indicating a cause of action..[103]

Plaintiffs pleaded that the conduct giving rise to Plaintiffs' causes of action under the LRA are ongoing. Doc. 22 at ¶ 575, 566. Without termination of this conduct, Plaintiffs' causes of action cannot prescribe under the first statutory scenario. Under the second statutory scenario, Plaintiffs' causes of action will prescribe five years after Plaintiffs discovered the facts indicating they had a cause of action. For all Plaintiffs, this knowledge was obtained with the publication of the Report in March 2021, within the five years of the filing of this suit against Alexander. Prior to that time Plaintiffs could not have known of the actions of Alexander. Because Plaintiffs' complaint establishes a basis for tolling, the Plaintiffs' LRA claims are not prescribed on their face and have survived dismissal based on prescription.

## XII. **Miscellaneous Matters**

---

[102] La. R.S. § 1:4.

[103] La. R.S. § 15:1356(H); La. R.S. § 1:3 ("Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language."); *Ames v. Ohle*, 2011-1540 (La. App. 4 Cir. May 23, 2012), 97 So.3d 386, 394, *decision clarified on reh'g* (July 11, 2012), *writ denied*, 2012-1832 (La. Nov. 9, 2012), 100 So.3d 837.

For the reasons outlined previously in this brief, Plaintiffs have properly pleaded numerous causes of action against Alexander. Alexander's assertions that: 1) the prescription period has run on Plaintiffs' claims; and 2) he is entitled to qualified immunity, are inaccurate. Therefore, this court should grant Plaintiffs leave to amend their complaint as necessary, should such an action be appropriate in this matter.

Some Defendants have asserted that their Rule 12 motions to dismiss incorporate by reference all arguments found in co-defendants' briefs. To the extent that this Court allows such incorporation, Plaintiffs also incorporate all arguments in opposition to the same.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Fieldon "F" King Alexander's Motion to Dismiss.

Respectfully Submitted,

/s/ *Catherine E. Lasky*
Catherine E. Lasky (La. Bar 28652)
Endya L. Hash (La. Bar 38260)
KATIE LASKY LAW
619 Homedale Street
New Orleans, Louisiana 70124
P: (504) 584-7336 / F: (504) 375-2221
katie@katielaskylaw.com
endya@katielaskylaw.com

/s/ *Karen Truszkowski*
Karen Truszkowski
*Pro Hac Vice*
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
P: (844) 534-2560 / F: (800) 531-6527
karen@temperancelegalgroup.com

/s/ *Elizabeth K. Abdnour*
Elizabeth K. Abdnour
*Pro Hac Vice*
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
P: (517) 292-0067 / F: (517) 709-7700
elizabeth@abdnour.com

*Attorneys for Plaintiffs*

29