UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ABBY OWENS, ET AL.<br>  *Plaintiffs* | CIVIL ACTION NO. 3:21-cv-00242 |
| VERSUS | JUDGE WENDY B. VITTER |
| LOUISIANA STATE UNIVERSITY, ET AL.<br>  *Defendants* | MAG. JUDGE SCOTT D. JOHNSON |

**MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

**MAY IT PLEASE THE COURT:**

Defendant Jennie Stewart submits this memorandum in support of her Rule 12(b)(6) motion to dismiss all claims alleged against her by plaintiffs in their Second Amended Complaint[1] for plaintiffs' failure to state a claim.

Plaintiffs have alleged four counts of violations of Title IX by LSU and cannot assert those claims against Stewart or any other individual defendant because Title IX claims may only be asserted against "entities" such as LSU which receive federal funding. Rather than simply pursuing their Title IX lawsuit against LSU, plaintiffs have opted to attempt to state Section 1983 claims against Stewart and other individually named defendants on the basis that these defendants' alleged failures to comply with Title IX violated the plaintiffs' rights under the First and Fourteenth Amendments. There are no cases in which the U.S. Supreme Court or the Fifth Circuit Court of Appeals have ever held that a Title IX violation would also be a constitutional violation for which an individual state actor would have personal liability. Stewart is therefore entitled to qualified immunity from the Section 1983 claims.

---

[1] R.Doc. 182.

{01271383 - v1}    1

**FACTS ALLEGED IN THE COMPLAINT**

Stewart will focus solely on the allegations made specifically against her in the Second Amended Complaint.

Stewart is named "in her official and personal capacity" as LSU's Title IX Coordinator from 2015 to March 2021.[2] Plaintiffs allege that she was acting within the course and scope of her employment by LSU at all times described in the complaint.[3] Until 2018, Stewart was the only employee staffing LSU's Title IX Office.[4] She was expected to fulfill the roles of Title IX Coordinator for the entire LSU System, the ADA campus coordinator for the Baton Rouge campus, and the Clery Coordinator for the entire LSU system.[5]

The Husch Blackwell report attached by plaintiffs as Exhibit A to their complaint reflects that Stewart provided a presentation on September 23, 2016, to LSU's President, General Counsel, and Chief Financial Officer stating that the Title IX office was severely understaffed and underfunded and that at least $329,000 was needed in funding to hire a lead investigator, four or five other investigators, and two graduate assistants.[6] LSU President Alexander agreed with the recommendations, and Stewart immediately started drafting a job description for "lead investigator."[7] That position was not filled for another 19 months, and no additional resources were ever provided by the LSU administration in response to the presentation.[8] The report also

---

[2] Id., ¶ 21.
[3] Id., ¶ 23.
[4] Id., ¶ 40.
[5] Id., ¶ 61.
[6] R.Doc. 22-1, pp. 42-43.
[7] Id., p. 43.
[8] Id.

{01271383 - v1}   2

addressed a glaring problem regarding the Athletic Department's failure to report complaints of discrimination to the Title IX office overseen by Stewart.[9]

Each individual plaintiff makes the following factual allegations:

**Calise Richardson**: Richardson alleges that she was raped by a football recruit in 2015,[10] that she was groped at an off-campus bar in October 2016,[11] and that a football player attempted to rape her at her apartment in the fall of 2016.[12] Richardson makes no allegations of fact against Stewart except for alleging, in a single paragraph, that Stewart and others had "specific knowledge of the pervasive sex discrimination and retaliation she and others suffered."[13] No other allegations identify the source of this "specific knowledge."

**Ashlyn Robertson:** Robertson alleges that she was raped by a football player in January 2016.[14] Robertson makes no allegations of fact against Stewart except for alleging that Stewart "concealed the name of Robertson's assailant from Title IX records."[15]

**Samantha Brennan:** Brennan alleges no actions by Stewart.

**Abby Owens:** Owens alleges that she was raped by a football player in 2016.[16] She transferred to the University of Georgia in January 2018.[17] On May 20, 2019, Owens contacted LSU's Title IX office to ask for a copy of her report after she spoke to a reporter.[18] Two days later, she alleges that Stewart told her that Stewart had heard about the rape but did not move

---

[9] R.Doc. 182, ¶¶. 63-68.
[10] Id., ¶¶ 126-130.
[11] Id., ¶¶ 152-156.
[12] Id., ¶¶ 182-188.
[13] Id., ¶ 240(a).
[14] Id., ¶¶ 243-248.
[15] Id., ¶ 287(c).
[16] Id., ¶¶ 328-333.
[17] Id., ¶ 346.
[18] Id., ¶ 349-51.

forward with an investigation because the Athletic Department did not provide the name of Owens' assailant.[19]  On August 17, 2020, Stewart responded to a public records request stating that the Title IX office had no record of a Title IX case for Owens.[20]

**Elisabeth Andries:**  Andries alleges that she was assaulted on a fraternity bus trip in October 2016.[21]  She alleges that the same student assaulted her again in her apartment after she picked him up from a bar in July 2017.[22]  On the first day of classes in the spring 2019 semester, Andries saw her assailant sitting in one of her classes.  She filed complaints and sought a no-contact order.  On April 2, 2019, Stewart is alleged to have told Andries that there was no reason for a no-contact order since Andries had not spoken to her assailant since July 2017.[23]  A subsequent Title IX investigation concluded that the assailant had violated LSU's Title IX policy.[24]  The assailant sought to appeal and was granted two extensions of time to submit his written appeal.  The appeal was denied by Stewart on July 22, 2019.[25]  Stewart notified Andries of the outcome several days later.[26]  Andries makes no further allegations against Stewart.

**Jade Lewis:**  Lewis alleges that she was assaulted by an LSU football player on at least six occasions between 2017 and 2018.[27]  No report was provided by the Athletic Department to the Title IX office until April 2018.[28]  No specific allegations are made against Stewart.

---

[19] Id., ¶ 353.
[20] Id., ¶¶ 357-58.
[21] Id., ¶¶ 364-373.
[22] Id., ¶¶ 376-77.
[23] Id., ¶ 405.
[24] Id., ¶ 411.
[25] Id., ¶ 420.
[26] Id., ¶ 421.
[27] Id., ¶¶ 456-458.
[28] Id., ¶ 486.

**Kennan Johnson:**  Johnson alleges no acts by Stewart.

**Jane Doe:**  Doe makes no allegations against Stewart except for alleging that Stewart and others "had specific knowledge" of her harassment.[29]

**Corinn Hovis:**  Hovis alleges that she was raped by an LSU football player outside of an off-campus bar on January 24, 2020.[30]  Stewart met with Hovis on January 31, 2020, to discuss reporting options.[31]  On March 6, 2020, Title IX Investigator Jeff Scott concluded that Hovis' assailant had violated LSU Title IX policy.[32]  LSU disciplined the assailant in May 2020 by issuing a no-contact directive order and suspending him for three weeks.[33]  The assailant allegedly violated the no-contact directive twice before transferring to another university in August 2020.[34]  Stewart is alleged to have failed to take disciplinary action for violations of the no-contact directive.  No other allegations are made against Stewart.

**Sarah Beth Kitch:**  Kitch alleges that she was subjected to sexual harassment by a professor prior to graduating with a Ph.D. in 2014, years before Stewart was ever even hired by LSU.[35]  Kitch alleges she attempted to report the alleged abuse to LSU in August 2019 after "her career was already over" but that she did not receive any emails or documentation about her contacts with the Title IX office.[36]  She alleges no specific acts by Stewart.

---

[29] Id., ¶ 649.
[30] Id., ¶¶ 652-660.
[31] Id., ¶ 670.
[32] Id., ¶ 677.
[33] Id., ¶ 679.
[34] Id., ¶¶ 680, 682.
[35] Id., ¶¶ 699-724.
[36] Id., ¶¶ 733-736.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 697, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when a plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* at 678, 129 S.Ct. 1937. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of plaintiffs. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1986).

A legally sufficient complaint must establish more than a "sheer possibility" that a plaintiff's claim is true. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

**LAW AND ARGUMENT[37]**

Of the seven counts stated in the Second Amended Complaint, four (Counts I-IV) are stated purely against LSU alleging Title IX violations. Stewart is not a defendant to those Title IX

---

[37] In addition to the arguments presented in this memorandum, Stewart adopts and incorporates all arguments presented by the other defendants in the motions to dismiss filed by those defendants.

counts. The remaining three counts assert causes of action under 42 U.S.C. § 1983 against Stewart and other individual defendants solely in their individual capacities.

The very limited allegations of fact against Stewart are insufficient to state any viable Section 1983 claim. All claims against Stewart must be dismissed.

I. **Plaintiffs' Section 1983 claims against Stewart are prescribed.**

Section 1983 does not contain a statute of limitations, so courts must borrow an appropriate limitations period from state law. Federal courts in Louisiana apply the one-year prescriptive period set forth in La. C.C. art. 3492 to Section 1983 claims brought against Louisiana state officials. *Elzy v. Roberson*, 868 F.2d 793, (5th Cir. 1989).

The plaintiffs filed their original complaint in this matter on April 26, 2021.[38] Any claims related to actions by Stewart more than one year before the filing of suit, or prior to April 26, 2020, are prescribed and must be dismissed. None of the plaintiffs were assaulted or harassed after April 26, 2020, and only two plaintiffs (Owens and Hovis) allege that Stewart did anything at all after April 26, 2020. All Section 1983 claims against Stewart should be dismissed as prescribed.

II. **Alternatively, Plaintiffs' three Section 1983 claims against Stewart should be dismissed on the basis of qualified immunity.**

Counts V, VI, and VII respectively allege violations of the First Amendment right to free speech, the Fourteenth Amendment right to equal protection under the law, and the Fourteenth Amendment right to due process. These claims are all asserted through the procedural vehicle provided by 42 U.S.C. § 1983.

---

[38] R.Doc. 1.

Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States Constitution or federal law." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed. 2d 107 (1988)). Section 1983 "is not itself a source of substantive rights" but merely provides "a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed. 2d 114 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 61 L.Ed. 2d 433 (1979)).

To state a Section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Qualified immunity is an affirmative defense which may be pleaded by a government employee in response to any Section 1983 claim. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551, 196 L.Ed. 2d 463 (2017) (quoting *Mullenix v. Luna*, 136 S.Ct. 308, 308, 193 L.Ed. 255 (2015)). It "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who **knowingly** violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). [Emphasis added.] Courts will not deny immunity unless "existing precedent … placed the statutory or constitutional question beyond debate." *Id.*; *Whitley*, 726 F.3d at 638 (quoting *Ashcroft*). A plaintiff seeking to overcome qualified immunity bears the

burden to show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* "Clearly established law" must be "particularized to the facts of a case." *Samples v. Vadzemnieks*, 900 F.3d 655, 662 (5th Cir. 2018). While this does not require a prior case "directly on point," "precedent must still put the underlying question beyond debate." *Id.* (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)).

As set forth in the following sections, Stewart is entitled to qualified immunity on each of the three counts pled against her.

### a. Count V – "First Amendment Retaliation"

Plaintiffs allege generally that they exercised their constitutionally protected right to freedom of speech by reporting sexual misconduct to LSU employees and by criticizing LSU's handling of their complaints.[39] They then allege that all individual defendants, including Stewart, "attempt[ed] to regulate the content of Plaintiffs' speech"[40] because all of the individual defendants "did not want to address and properly respond to Plaintiffs' disclosures of abuse as it would have negatively impacted the reputation of both the LSU football program and the school."[41]

The First Amendment prohibits not only direct limits on individual speech but also adverse government action against an individual in retaliation for the exercise of protected speech activities. *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). To establish a First Amendment retaliation claim, a

---

[39] R.Doc. 182, ¶ 1012.
[40] Id., par. 1015
[41] Id., par. 1017.

{01271383 - v1}  9

plaintiff must show that (1) she was engaged in a constitutionally protected activity; (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct.  *Id.*  With respect to the second element, to demonstrate a showing of injury, a plaintiff must show that her exercise of free speech has been curtailed.  *Keenan*, 290 F.3d at 259.

      While plaintiffs allege that they engaged in constitutionally protected activities by complaining of sexual harassment or discrimination under Title IX, there are ***zero*** reported cases from the U.S. Supreme Court or within the U.S. Fifth Circuit in which a state actor's alleged failure to properly investigate a Title IX complaint was deemed to violate an individual's First Amendment rights.  These claims fail on the second prong of the qualified immunity analysis because there is no clearly established case law putting defendants on notice that their actions were violations of the plaintiffs' rights.  *Id.*  While plaintiffs cite several Supreme Court cases for the proposition that students have First Amendment rights, none of those cases involve Title IX complaints.  *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988), involved a claim by staff members of a high school newspaper who alleged that their rights to freedom of the press had been violated.  *Healy v. James*, 408 U.S. 169 (1972), involved claims by college students who alleged that their rights to free association had been violated by their university's failure to recognize a campus organization.  *Papish v. Board of Curators*, 410 U.S. 667 (1973), involved the suspension of a student who distributed publications on campus which contained alleged "indecent speech."  None of these cases clearly establish that the filing of a Title IX complaint constitutes "speech" protected by the First Amendment.  None of these cases would

have provided any reasonable government official with notice that failing to respond to a Title IX complaint would be a violation of a student's First Amendment rights.

Plaintiffs have no right to assert a Title IX claim against Stewart individually. They try to evade that prohibition by classifying their complaints as "free speech." In the absence of any clearly established case law, their attempts at creative pleading must be denied because Stewart is entitled to qualified immunity.

### b. Count VI – Denial of Equal Protection

The Fourteenth Amendment in part provides as follows:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

To state a claim of discrimination under the Fourteenth Amendment, a plaintiff must allege that (1) she received treatment different from that received by similarly situated individuals and (2) the unequal treatment stemmed from a discriminatory intent. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (alleging discrimination based on race). To establish the necessary discriminatory intent, a plaintiff must show "that the decision maker singled out a particular group for disparate treatment and selected his [or her] course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Id.* (citing *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)). Allegations of discriminatory intent that are merely conclusory, without reference to specific facts, will not suffice to overcome a motion to dismiss. *Id.*

No allegation against Stewart suggests any intent by her to discriminate against any plaintiff because of her gender. Stewart, like the plaintiffs, is a woman. No basis is provided to

{01271383 - v1}    11

conclude that Stewart harbored discriminatory intent against other women. Stewart is not alleged to have made any comments reflecting discriminatory animus against women. Plaintiffs do not even allege disparate treatment in the handling of Title IX complaints; there is no allegation that the Title IX complaints of any woman were treated differently from any man who filed complaints.

Stewart is entitled to dismissal of this count based on qualified immunity under the first prong of the qualified immunity analysis. Alternatively, she is entitled to qualified immunity under the second prong because there are no reported cases by the U.S. Supreme Court or the U.S. Fifth Circuit which would place a reasonable government official on notice that the Stewart's actions would violate a student's rights under the Fourteenth Amendment.

### c. Count VII – Denial of Procedural and Substantive Due Process

#### a. Procedural Due Process

To establish a procedural due process claim under the Fourteenth Amendment, a plaintiff must show that (1) she was deprived of a life, liberty, or property interest protected by the Fourteenth Amendment and (2) the administrative procedures attendant to the deprivation did not satisfy the constitutional requirements of procedural due process. *Wheelahan v. City of New Orleans,* No. 19-11720, 2020 U.S. Dist. LEXIS 54571, at pp. 42-43 (E.D. La. 3/30/20) (citing *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994)).

No plaintiff has alleged deprivation of any life, liberty, or property interest contemplated by the Fourteenth Amendment. The plaintiffs generally allege that they were deprived of "their liberty and property interest in accessing educational opportunities or

benefits."[42]   But "most case law involving due process in the educational setting concerns student dismissals or suspensions from academic institutions."  *Smith v. Davis*, 507 Fed. Appx. 359, 362. (5th Cir. 2013).  None of the plaintiffs in the instant case were dismissed or suspended from school.  To the extent these plaintiffs allege a new theory that something other than discipline or dismissal could deprive them of a protected property interest in their education, there are no cases from the U.S. Supreme Court or within the Fifth Circuit which clearly establish that right.  This is, once again, a *res nova* claim.  There is no case law which would have placed a reasonable government official on notice that Stewart failed to provide any plaintiff with constitutionally required administrative procedures which were denied.  Stewart is entitled to qualified immunity under both prongs of the analysis.

**b.  Substantive Due Process**

In addition to procedural due process, the Fourteenth Amendment protects substantive due process rights.   The substantive component of due process bars certain arbitrary government actions "even if their implementation is fair."  *Pham v. Univ. of La. At Monroe*, 194 F.Supp.3d 534, 544.  (W.D. La. 2016).  In determining whether government action is "arbitrary" in the constitutional sense, a Court asks whether the government action "shocks the conscience."  *Id.*  "'[O]nly the most egregious conduct' is arbitrary in the constitutional sense." *Id.* at 544-45 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)).

None of the actions allegedly committed by Stewart rise to the level "egregiousness" sufficient to provide any plaintiff with a claim.  Moreover, there is once again no clearly established case law which would inform any reasonable government official that any of

---

[42] Id, ¶ 446.

Stewart's actions would be a violation of any plaintiffs' right to substantive due process. Stewart is again entitled to qualified immunity.

## CONCLUSION

Plaintiffs may pursue whatever non-prescribed Title IX claims they wish against LSU. But Plaintiffs invite this Court to make new law and provide new Title IX-related claims against individual defendants through Section 1983, which no court has ever done before. That invitation should be rejected. All Section 1983 claims asserted against Defendant Jennie Stewart should be dismissed pursuant to F.R.C.P. 12(b)(6), with prejudice, and at plaintiffs' cost.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

By: */s/ Gregory C. Fahrenholt*
**DENNIS J. PHAYER (La. Bar No. 10408)**
**GREGORY C. FAHRENHOLT (La. Bar No. 28572)**
**SYLVIA M. ZARZEKA (La Bar No. 38451)**
**Special Assistant Attorneys General**
**BURGLASS & TANKERSLEY, LLC**
5213 Airline Drive
Metairie, LA 70001
Tel: (504) 836-0412
Fax: (504) 287-0452
dphayer@burglass.com
gfahrenholt@burglass.com
szarzeka@burglass.com

***Attorneys for Defendant, Jennie Stewart***