UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ABBY OWENS, ET AL. | CIVIL ACTION NO. 3:21-CV-00242 |
| VERSUS | JUDGE WENDY B. VITTER |
| LOUISIANA STATE UNIVERSITY, ET AL. | MAGISTRATE JUDGE JOHNSON |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT BY THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURALAND MECHANICAL COLLEGE**

NOW INTO COURT, through undersigned counsel, comes defendant the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"). The Board moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal of the claims asserted by plaintiffs Abby Owens, *et al.* ("Plaintiffs").

**I.     Background.**

On January 17, 2022, Plaintiffs filed a Second Amended Complaint and Jury Demand (hereinafter "Second Amended Complaint") (R. Doc. 182), asserting four Title IX claims against the Board. The gist of the Second Amended Complaint is that the Board allegedly failed to prevent and properly respond to Plaintiffs' respective complaints about sexual discrimination and assault perpetrated by male LSU student-athletes and others. On the face of the Second Amended Complaint, Plaintiffs' claims fail for the reasons below.

**II.    Plaintiffs' Factual Allegations Fail to State a Claim Against the Board and Must Be Dismissed Under Federal Rule of Civil Procedure 12(b)(6).**

  **A.     Applicable Legal Standard.**

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[1] This means Plaintiffs must plead "facts from which the court can draw a reasonable inference that the defendant is liable for the misconduct alleged."[2] "Though the Court is to accept all well-pleaded facts as true, the Court need not accept as true legal conclusions couched as factual allegations."[3] Plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."[4] Dismissal is proper if a plaintiff fails to allege a necessary element of her claim.[5]

### B. Plaintiffs' Title IX Claims are Prescribed and no Tolling Applies.

The date on which a federal claim begins to "accrue," for prescription purposes, is governed by federal law, even where, as here, such claims are subject to a borrowed state prescription statute. The Fifth Circuit summarized federal accrual precepts as follows:

> Under federal law, the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured. A plaintiff's awareness encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions. A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim. Actual knowledge is not required if the circumstances would lead a reasonable person to investigate further.[6]

In other words, "[t]he cause of action accrues even though the full extent of the injury is not then known or predictable."[7]

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[2] *Spector v. USAA Cas. Ins. Co.*, 2019 WL 1493467, *3 (E.D. La. April 3, 2019) (quoting *Twombly*, 550 U.S. at 570).
[3] *K&F Restaurant Holdings, Ltd. V. Rouse*, 2017 WL 465470, *2 (M.D. La. Feb. 2, 2017) (citation omitted).
[4] *Twombly*, 550 U.S. at 555 (internal quotations, citations, and brackets omitted).
[5] *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).
[6] *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal brackets and quotation marks omitted) (citations omitted).
[7] *Wallace v. Kato*, 549 U.S. 384, 391, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).

Title IX claims are subject to Louisiana's one year prescriptive period.[8] Other than perhaps one plaintiff (Hovis), Plaintiffs allege they had knowledge of their injuries, the conduct which allegedly caused those injuries, and the identity of some or all of the persons who engaged in the alleged conduct, well in advance of April 26, 2020.[9]

1. **Plaintiffs'[10] Title IX Deliberate Indifference, Hostile Environment, and Heightened Risk Claims Are Untimely.**

Although Plaintiffs revised the factual allegations included in the Second Amended Complaint, the timeliness concerns raised in the Board's originally-filed motion to dismiss remain.[11] Specifically, Plaintiffs allege the following regarding the timing of the alleged Title IX conduct:

| **Plaintiff** | **Allegations re: Timing of Title IX Conduct** |
| --- | --- |
| Richardson | Richardson's involvement with John Doe and John Coe took place in **Fall/October 2016**, and she alleges she spoke to Defendants Lewis and/or Soil-Cormier **within a day** of each incident.[12] Thus, Richardson knew at that time that neither offered her resources or allegedly made a report to the Title IX Office. |
| Robertson | Robertson pleads her alleged assault occurred on January 22, 2016, that she declined a Title IX investigation on **February 5, 2016**, and that the conduct was disclosed to Defendant Orgeron in the **Fall of 2016**.[13] |
| Brennan | Brennan's contact with John Doe and her meeting with Defendants Lewis and Segar allegedly occurred in **July 2016**, and she alleges she left the LSU recruiting team in **August 2016,** in part because of "LSU's lack of response."[14] |
| Owens | Owens alleges contact with John Doe on June 28, 2016, and she alleges she first disclosed the rape to a rehabilitation center in **April 2017,** and that the facility reported the incident to LSU approximately a week later. Owens knew, |

---

[8] *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015).
[9] Plaintiffs filed their original Complaint on April 26, 2021. (R. Doc. 1) Only conduct occurring on or before April 26, 2020 is timely.
[10] Plaintiffs' claims are untimely, with the possible exception of plaintiff Hovis. Hovis' claims should be dismissed on substantive grounds, discussed *infra* Section C.
[11] R. Docs. 119, 148.
[12] Second Amended Complaint, ¶¶ 148, 152, 161, 166, 191. The other incidents Richardson mentions all occurred in early 2016. *See, e.g.*, Second Amended Complaint ¶ 134.
[13] Second Amended Complaint, ¶¶ 243, 248, 260, 273.
[14] Second Amended Complaint, ¶¶ 290-293, 299, 316. Although Brennan alleges she read an article about John Doe and tried to obtain a copy of her police report in 2020, these are actions on her part—not actions by the Board that would render her untimely claims timely. Second Amended Complaint, ¶ 319.

|         |                                                                                                                                                                                                                                                                                                                                                                                                        |
|---------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|         | following the disclosures, that she "was never contacted by anyone at the Title IX office."[15]                                                                                                                                                                                                                                                                                                         |
| Andries | Andries alleges contact with John Roe in 2016-2017. Andries engaged in a Title IX investigation that found that John Roe violated the Title IX policy. Andries alleges that she learned of the discipline being administered to John Roe on **September 26, 2019**, and that on **October 16, 2019**, LSU denied John Roe's final appeal.[16]                                                            |
| Lewis   | Lewis alleges contact with John Coe from January 2017 to June 2018, and that, despite various individuals having knowledge of the events, the events were not reported to the Title IX office until **April 2018**. John Loe was expelled in July 2019.[17]                                                                                                                                              |
| Johnson | Johnson complains about her relationship with Julia Sell. Prior versions of Plaintiffs' Complaint state that when she "graduated from LSU **in Spring 2019** . . . . Johnson blocked Defendant Julia Sell's number, thus ending the relationship with her lifelong mentor."[18] Johnson removed this allegation from her existing Second Amended Complaint, but she does not allege any additional conduct that occurred after her graduation from LSU in the Spring of 2019. |
| Doe     | Doe alleges abusive behavior from John Poe beginning in October 2018. She alleges she reported the conduct in March 2019. By **May 2019**, Doe alleges she was told her claims did not fall under Title IX and that LSU Student Advocacy and Accountability was determining what other avenues existed for charging Poe.[19]                                                                              |
| Hovis   | Hovis alleges an encounter with John Loe on January 24, 2020, and alleges that Loe was found to have violated the Title IX policy on **March 6, 2020**. In **May 2020**, John Loe allegedly violated a no-contact order by having his girlfriend contact Hovis. Hovis claims that LSU did not take disciplinary action against Loe for these violations.[20]                                              |
| Kitch   | Kitch alleges that Moe sexually harassed her during her time as a graduate student in the Political Science Department. Kitch finished her PhD program and left LSU's campus in **2014**. Kitch reported Moe's conduct in approximately **August 2019**.[21]                                                                                                                                              |

As mentioned, conduct pre-dating April 26, 2020 is time-barred, meaning that plaintiff Hovis' allegation about LSU's alleged lack of response to Loe's violation of the no-contact order

---

[15] Second Amended Complaint, ¶¶ 328, 337-338. Like Brennan, Owens alleges action on her part in 2019 and 2020, namely requesting her file from LSU and submitting a public records request. Second Amended Complaint ¶¶ 351, 357. These actions on her part have no bearing on the timeliness of her claims.
[16] Second Amended Complaint, ¶¶ 364, 435, 437.
[17] Second Amended Complaint, ¶¶ 456, 477-478, 486, 505, 552.
[18] Complaint, ¶¶ 285-299; Second Amended Complaint ¶ 594.
[19] Second Amended Complaint, ¶¶ 598-604, 613-619. Doe alleges action on her part in 2021, which action is immaterial to her Title IX claims.
[20] Second Amended Complaint, ¶¶ 652, 330-332.
[21] Second Amended Complaint, ¶¶ 699, 724, 728, 733.

is the **only** conduct she alleges occurred within the limitations period. All other alleged Title IX conduct alleged by Plaintiffs is untimely.

    2.    **Plaintiffs' Title IX Retaliation Claims Are Also Untimely.**

According to Count IV of Plaintiffs' Amended Complaint, "[a]ll Plaintiffs . . . allege violations of Title IX against the LSU Board of Supervisors due to retaliation."[22] Specifically, Plaintiffs allege that "LSU staff and other LSU students took adverse action against Plaintiffs after they made reports of sex discrimination and abuse to LSU staff and LSUPD."[23] Although Plaintiffs state that **all Plaintiffs** assert retaliation claims, **only six Plaintiffs** actually allege retaliatory conduct. As shown above, Title IX claims are subject to Louisiana's one year prescriptive period for personal injury actions.[24] Thus, any events pre-dating April 26, 2020 are time-barred.

Plaintiffs allege the following dates:

| Plaintiff[25] | Retaliatory Conduct Alleged |
|---|---|
| Owens | Following her stay in rehabilitation (in April 2017), Julia and Mike Sell did not allow Owens to rejoin the tennis team.[26] |
| Richardson | **Immediately after** Richardson spoke with Defendants Lewis and Soil-Cormier, she faced retaliation at work. The LSU Athletics Department refused to schedule Richardson to work at the events in which John Coe participated.[27] <br> Richardson was terminated from her job in the football recruiting office in the **spring of 2017.**[28] <br> When Richardson spoke with Soil-Corimer and Ya'el Lofton in **August 2017**, she believes Soil-Cormier and Lofton gave her pretextual reasons for why her employment ended.[29] <br> She alleges she was denied an athlete tutor position and two job |

---

[22] Second Amended Complaint, ¶ 940.
[23] Second Amended Complaint, ¶ 948.
[24] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583.
[25] Ashlyn Robertson, Samantha Brennan, Corrin Hovis, and Sarah Kitch did not allege any retaliatory conduct against the Board.
[26] Second Amended Complaint, ¶¶ 336, 951.
[27] Second Amended Complaint, ¶¶ 175-176.
[28] Second Amended Complaint, ¶ 203.
[29] Second Amended Complaint, ¶ 205.

| | |
|---|---|
| | opportunities in the Athletics Department in **Fall 2018.**[30] Richardson also alleges that Lewis and Soil-Cormier mocked her, limited her working opportunities, forced her to apologize to John Doe's girlfriend, that Ausberry told Richardson to stop reporting Coe, and Segar never returned Richardson's calls, which seemingly all occurred **in Fall 2018 or earlier**.[31] |
| Andries | Andries alleges that she was harassed with inappropriate questions during an unnecessary interview (on **August 22, 2019**), denied reasonable accommodations and interim measures (on **August 29, 2019**), and that LSU's issuance of a no-contact order on or around **September 26, 2019** constituted retaliation.[32] |
| Lewis | Lewis alleges that in **June 22, 2018,** LSU "wasted no time in immediately charging Plaintiff Lewis with violating the residential life policy for having a candle in her room . . ."[33] She also alleges that in **2018**, while Coe was banned from the weight room, football coaches made comments to her indicating they blamed her for John Coe being banned from the weight room and that Julia Sell instructed Lewis' teammates to stay away from Lewis (**also in 2018**).[34] |
| Johnson | Johnson alleges that Julia Sell "retaliated" against her by telling her that she would be a better tennis player if she stopped worrying so much about other people and subsequently harassed and berated her.[35] Johnson graduated from LSU in **Spring 2019**, ending any alleged retaliation.[36]" |
| Doe | Doe alleges she experienced retaliation when she was denied reasonable accommodations, denied information about her case under false pretenses, and was told her case did not fall under the scope of Title IX, all of which allegedly occurred in **2019**.[37] |

Per Plaintiffs' Second Amended Complaint, each alleged adverse action occurred before April 26, 2020. Thus, Plaintiffs' retaliation claims are untimely and must be dismissed.[38]

### 3.   *Contra Non Valentem* Does Not Revive Plaintiffs' Claims.

---

[30] Second Amended Complaint, ¶¶ 206, 209.
[31] Second Amended Complaint, ¶ 957.
[32] Second Amended Complaint, ¶¶ 422-423, 426-427, 988-990.
[33] Second Amended Complaint, ¶¶ 515-516.
[34] Second Amended Complaint, ¶¶ 529-30.
[35] Second Amended Complaint, ¶ 982.
[36] Second Amended Complaint, ¶ 594.
[37] Second Amended Complaint, ¶¶ 629-633, 995.
[38] The continuing violations doctrine does not apply to retaliation. *Hamic v. Harris Cnty. W.C. & I.D. No. 36*, 184 F. App'x 442 (5th Cir. 2006); *see also Lewis v. Louisiana State University et al.*, 2021 WL 4139138, *5 (M.D. La. Sept. 10, 2021).

Plaintiffs cannot invoke tolling or *contra non valentem* to save their untimely claims.[39] Plaintiffs seemingly invoke the so-called "discovery rule" of *contra non valentem* by alleging the Husch Blackwell report, released in March of 2021, made them aware of facts that they would not have otherwise known. Plaintiffs generally allege they learned the following from the report:[40]

a. LSU's reporting and response system was woefully inadequate in comparison to other comparable universities and substantially deviated from the duty of care as outlined in industry standards;

b. LSU and its employees, including Defendant Stewart, had specific knowledge of its institutional level procedural deficiencies;

c. LSU purposely handled complaints of sexual misconduct perpetrated by student athletes or others affiliated with the LSU Athletics Department in a different manner than complaints of sexual misconduct perpetrated by other individuals;

d. A causal connection existed between the failure of LSU's Title IX system and the success of its Athletics Department;

e. LSU and its employees, including Defendants Ausberry and Segar, encouraged and perpetrated sex discrimination by retaliating against employees who attempted to follow their reporting obligations;

f. LSU and its employees, including Defendants Ausberry and Segar, concealed disclosures of sexual misconduct that should have been reported to LSU's Title IX Office;

---

[39] *Crane v. Childers*, 655 Fed. Appx. 203, 204-05 (5th Cir. July 11, 2016). A motion to dismiss on the basis of prescription can be granted even where a plaintiff invokes the "discovery rule," *contra non valentem*, or some other exception to the running of prescription, if the exception is not warranted by the allegations of the complaint. *Id.*
[40] Second Amended Complaint, ¶ 83.

    g.  Defendants intentionally instituted a process of responding to disclosures of Title IX violations in a manner designed to deter any future disclosures;

    h.  LSU football players never received appropriate training regarding prevention of sexual misconduct; and

    i.  Numerous LSU employees, including the majority of those in the Athletics Department, did not understand their reporting obligations under Title IX.

None of these areas relate to Plaintiffs' claim or injuries.[41] "Prescription begins to run from the time there is notice enough to call for inquiry about a claim, not from the time when the inquiry reveals facts or evidence sufficient to prove the claim."[42]

In order to toll prescription, "it [i]s critical for the [P]laintiffs to establish that they did not possess information sufficient to excite curiosity, excite attention, or put a reasonable person on guard to call for inquiry more than one year before this lawsuit was filed."[43] Plaintiffs' allegations reveal that Plaintiffs were aware more than a year before this lawsuit of their alleged injuries and the specific defendants whom they named. Plaintiffs do not allege latent injuries or that they were unaware, at least in a general sense, that they might have a legal claim.[44] "While factual ignorance

---

[41] *Ceasor v. State*, 2009-1584 (La. App. 1 Cir. 3/26/10), 2010 WL 1170232, * 7 (citation omitted), *writ denied*, 2010-0941 (La. 9/3/10); 44 So.3d 695. In answering this question, "[a] plaintiff will be deemed to know what he could have learned through reasonable diligence." *Babineaux v. State, Through Department of Transportation and Development*, 2004-2649 (La. App. 1 Cir. 12/22/05), 927 So.2d 1121, 1124-25 (internal brackets supplied) (citation omitted).

[42] *LaFleur v. Blue*, 2008-1147 (La. App. 3 Cir. 3/4/09), 6 So.3d 348, 351 (internal quotation marks and citation omitted).

[43] *Alexander v. Fulco*, 39,293 (La. App. 2 Cir. 2/25/05), 895 So.2d 668, 674, *writ denied*, 2005-0781 (La. 5/6/05); 901 So.2d 1107.

[44] Whether Plaintiffs were aware of all the alleged deficiencies in the Title IX process is immaterial to the prescription question; notice that they might have a legal claim was sufficient to commence the running of prescription. *See Rojas v. Department of Health and Human Resources, State of Louisiana*, 522 So.2d 1195, 1197 (La. App. 4 Cir. 1988) (defamation claim was prescribed despite claim the employee doctor was prevented from viewing his personnel file (containing the defamatory statements) because plaintiff knew the employees had rated him incompetent, alerting him to inaccuracies in his file), *writ denied*, 523 So.2d 1338 (La. 1988).

may prevent the running of prescription in some circumstances, ignorance of the law does not."[45] Plaintiffs' Second Amended Complaint fails to satisfy this category of *contra non valentem.*

Plaintiffs also seem to invoke the "intentional concealment" category of *contra non valentem* by alleging that, until the release of the Husch Blackwell report, the Board successfully "concealed" the extent of sexual harassment on campus.[46] Such allegation is insufficient. This category only applies where the defendant engages in conduct which prevents the plaintiff from filing suit (because the plaintiff could not have discovered through reasonable investigation that she had a cause of action), not conduct which merely "lulls" the plaintiff into believing timely action is not required.[47] At best, Plaintiffs allege the Board did not disclose certain facts to Plaintiffs. However, in the absence of some affirmative duty to speak, "concealment by silence alone is insufficient for an application of *contra non valentem.*"[48] Plaintiffs present no allegations suggesting the Board had a **duty** to disclose any particular information to Plaintiffs, nor do Plaintiffs allege the Board **prevented** any of the Plaintiffs from investigating their claims and filing a lawsuit. Again, Plaintiffs' allegations show they were aware of their injuries, the conduct which caused their injuries, and the identities of the persons they accused prior to April 26, 2020.

---

[45] *Lieber v. State through Department of Transportation and Development*, 28,745 (La. App. 2 Cir. 10/30/96); 682 So.2d 1257, 1262 (internal brackets supplied) (listing cases), *writ denied*, 97-0087 (La. 3/7/97); 689 So.2d 1374; *Coker v. Town of Glenmora*, 2009-1432 (La. App. 3 Cir. 5/5/10); 37 So.3d 532, 534-35 (employee's claim, based on employer providing inaccurate information about his eligibility for retirement benefits, was prescribed because his ignorance was not one of fact but rather of law concerning his eligibility, *writ denied*, 2010-1302 (La. 10/1/10); 45 So.3d 1096; *Lieber*, 682 So.2d at 1263.

[46] *See, e.g.,* Second Amended Complaint, ¶¶ 81, 83, 360.

[47] *Crump v. Sabine River Authority*, 98-2326 (La. 6/29/99); 737 So.2d 720, 731 (rejecting application of intentional concealment category of *contra non valentem* based upon plaintiff's claims that defendant assured her that drainage problem, which was eroding plaintiff's property, would be remedied). *See Greening v. Western Reserve Life Assurance Company of Ohio*, 439 F.Supp.2d 612, 614 (M.D. La. 2006) (rejecting application of intentional concealment category of *contra non valentem* because "plaintiffs had complete access to the correct information prior to the sale.") (applying Louisiana law); *Marin*, 48 So.3d at 252.

[48] *In re Medical Review Panel of Gerard Lindquist*, 18-444 (La. App. 5 Cir. 5/23/19), 274 So.3d 750, 760 (listing cases); *see Adams v. Ochsner Clinic of Baton Rouge,* 1999-2502 (La. App. 1 Cir. 11/3/00), 771 So.2d 258, 261-62 (refusing application of third category of *contra non valentem* because physician had no duty to disclose certain information to his patient).

Therefore, Plaintiffs Richardson, Robertson, Brennan, Owens, Andries, Lewis, Johnson, Doe and Kitch's claims are prescribed and must be dismissed.

    **C.    Plaintiff Hovis is the Only Plaintiff Pleading Timely Conduct, But She Fails to State a Claim Against the Board.**

For the reasons set forth above, plaintiff Hovis is the only plaintiff who pleads timely conduct. She has asserted three claims against the Board: (1) Title IX Deliberate Indifference; (2) Title IX Hostile Environment; and (3) Title IX Heightened Risk. All three claims fail as a matter of law.

    **1.    <u>Hovis' Title IX Deliberate Indifference Claim Fails Because the Board's Actions Were Not Clearly Unreasonable.</u>**

In order to be liable for student-on-student sexual harassment, Hovis must show that the Board "was deliberately indifferent to the harassment."[49] "Deliberate indifference is an extremely high standard to meet."[50] A defendant is deliberately indifferent when the "school's response or lack of response was clearly unreasonable in light of the known circumstances."[51] "[C]ourts should refrain from second-guessing disciplinary decisions made by school administrators."[52]

Here, only one allegation could be considered a deliberate indifference claim: namely Hovis' allegation that LSU did not appropriately respond to her complaint that Loe violated the no-contact order.[53] Specifically, Hovis alleges: (1) on two occasions in May 2020, Loe's girlfriend contacted Hovis in violation of the no-contact order; (2) this contact was reported to Defendants Stewart and Sanders, but LSU did not take disciplinary action against Loe for violations of the no-

---

[49] *I.L. v. Houston Indep. Sch. Dist.*, 776 F. App'x 839 (5th Cir. 2019), citing *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 689 (5th Cir. 2017).
[50] *I.F. v. Lewisville Indep. Sch. Dist*. 915, F.3d 360 (5th Cir. 2019), citing *Domino v. Tex. Dept. of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).
[51] *I.L.*, 776 F. App'x at 842 (internal quotations omitted)
[52] *I.F.*, 915 F.3d at 369, citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ*, 526 U.S. 629, 648 (1999).
[53] The other Title IX conduct alleged is clearly untimely. In the event the Court determines it is timely, the Board reserves the right to assert additional bases for dismissal as to that conduct.

contact directive.[54]  As a matter of law, this alleged action is not clearly unreasonable in light of all the alleged facts.  Hovis admits that Loe was **suspended** in May 2020, meaning LSU had already taken significant disciplinary action by removing him from campus.  Hovis does not allege that the Board had prior knowledge of harassment by Loe (against Hovis or anyone else), nor does Hovis allege that the conduct recurred.[55]  Additionally, Hovis admits that it was Loe's girlfriend, not Loe, who contacted her.  Putting aside whether Loe's girlfriend's alleged conduct violated the no-contact order, Hovis' allegation that the Board did not take additional disciplinary action against Loe, beyond suspending him for one year, is not clearly unreasonable.[56]  Hovis' allegations do not support a deliberate indifference claim.

### 2. Hovis Cannot State a Hostile Environment Claim.

In order to establish a claim for a Hostile Environment, Hovis must show that the alleged harassment was so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school **and** that the funding recipient was deliberately indifferent to this harassment.[57]  For the same reasons articulated above in Section I.C.1, Hovis fails to allege deliberate indifference by the Board.

Additionally, Hovis does not allege a deprivation of educational opportunities.  Hovis claims she could not attend a class near the football stadium because of her fear of seeing Loe, and that she failed a class because she did not attend a midterm exam due to stress.  These allegations do not approach the standard set forth in *Davis Next Friend LaShonda D. v. Monroe County Board*

---

[54] Second Amended Complaint, ¶¶ 680, 681.

[55] *See, e.g., I.L.*, 776 F. App'x at 843 ("The school immediately investigated the sexual assault and implemented remedial measures that were almost entirely successful in eliminating *any* contact between the students and prevented future sexual contact or harassment. Even if the school's investigative and disciplinary response could have been better, neither "negligence nor mere unreasonableness is enough" to support a Title IX deliberate indifference claim.") (quoting *Sanches*, 647 F.3d at 167–68 (citations omitted)).

[56] *See, e.g., Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 388 (holding school was not deliberately indifferent, even though its actions were ineffective).

[57] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ*, 526 U.S. 629 (1999).

*of Education*, namely that the harassment "undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities."[58]  Hovis fails to allege a Hostile Environment claim.

### 3. To the Extent Not Prescribed, Plaintiffs' Title IX "Heightened Risk" Claim Fails.

In Count III, Hovis and others allege Title IX violations against LSU and the Board "due to the heightened risk of sex-based discrimination on LSU's campus," but such claim is unavailable.[59]  The Fifth Circuit recently stated "[w]e have never recognized or adopted a Title IX theory of liability based on a general 'heightened risk' of sex discrimination, and we decline to do so."  *Poloceno v. Dallas Independent Sch. Dist.*, 826 F. App'x 359, 363 (5th Cir. 2020).  Thus, Plaintiffs' "heightened risk" claim should be dismissed.

### D. Plaintiffs are not Entitled to Punitive Damages.

Plaintiffs seek punitive damages under Title IX, but punitive damages are not available under Title IX.[60]  Accordingly, this claim should be dismissed.

## III. Conclusion.

As shown, all claims against the Board are prescribed, with the possible exception of one allegation by Hovis.  Hovis' claims also suffer from other defects, and they, too, must be dismissed.  Thus, for the reasons stated herein, Plaintiffs' Second Amended Complaint must be dismissed, with prejudice.

---

[58] Second Amended Complaint, ¶ 905; *See Davis*, 526 U.S. at 651.
[59] Second Amended Complaint, ¶¶ 917, 935.
[60] *See Minnis v. Bd. Of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. 13-5-BAJ-RLB, 972 F. Supp. 2d 878 (M.D. La. 2013); *Kirk v. School Bd. Cty. Of Monroe*, 2020 WL 7931377 (W.D. La. Dec. 21, 2020).

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:   /s/ *Susan W. Furr*
Susan W. Furr Bar Roll No. 19582
Karleen J. Green Bar Roll No. 25119
Shelton Dennis Blunt Bar Roll No. 21230
Michael B. Victorian Bar Roll No. 36065
Molly C. McDiarmid Bar Roll No. 36426
*Special Assistant Attorneys General*
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: michael.victorian@phelps.com
Email: molly.mcdiarmid@phelps.com

ATTORNEYS FOR THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on February 14, 2022, with the Court's CM/ECF system, which will electronically send a copy of the same to all counsel of record.

/s/ *Susan W. Furr*
Susan W. Furr