## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ABBY OWENS, ET AL** | * | **NO.: 3:21-cv-00242** |
| | * | |
| **VERSUS** | * | **JUDGE: WBV** |
| | * | |
| **LOUISIANA STATE UNIVERSITY, ET AL** | * | **MAGISTRATE JUDGE: SDJ** |
| | * | |
| | * | |

**************************************************************************

### MEMORANDUM IN SUPPORT OF MOTION
### TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE
### OF CIVIL PROCEDURE 12(B)

    **NOW INTO COURT,** through undersigned counsel, comes Defendant, Miriam Segar (hereinafter "Segar"), who respectfully submits this Memorandum in Support of her Motion to Dismiss Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b).

### I.  FACTUAL BACKGROUND.

    On April 26, 2021, Plaintiffs filed a Class Action Complaint and Jury Demand, asserting various claims against Segar, among others.[1] In their First Amended Complaint, Plaintiffs claim they are "current and former Louisiana State University ("LSU") students who attended the Baton Rouge campus at some point from 2013 to 2021 and are female presenting and/or LGBTQ+ identifying individuals who were victims of sex-based discrimination, including rape, sexual assault, sexual harassment, and/or stalking, perpetrated by male LSU students and LSU employees."[2] Plaintiffs alleged an onslaught of complaints against a host of defendants in their First Amended Complaint, including complaints of violations of Title IX, State Racketeering Laws, 1983 claims, and a number of tort claims.

    In their Second Amended Complaint, Plaintiffs have reduced the number of Defendants

---

[1] On June 25, 2021, Plaintiffs filed an Amended Class Action Complaint and Jury Demand ("Amended Complaint") that merely added named plaintiffs and more defendants. Doc. 22.

[2] Doc. 22, ¶2.

and alleged causes of action. Broadly, Plaintiffs contend that the "Defendants repeatedly engaged in discriminatory, retaliatory, and other unlawful actions in their interactions with Plaintiffs and in response to Plaintiffs' report of Title IX violations and violations of LSU's Code of Student conduct, thereby violating their own policies."[3] Plaintiffs allege Segar and other individual defendants are liable to them pursuant to 42 U.S.C. § 1983 for First Amendment Retaliation, Fourteenth Amendment Denial of Equal Protection and Substantive and Procedural Due Process.

Of the ten Plaintiffs, only five (5)[4] of them make any mention of Segar in their allegations – Calise Richardson ("Richardson"), Ashlyn Robertson ("Robertson"), Samantha Brennan ("Brennan"), Jade Lewis ("Jade"), and Corrin Hovis ("Hovis"). Nevertheless, none of the Plaintiffs make any credible allegations that Segar engaged in any act or omission that could plausibly be construed as a violation of the Plaintiffs' First or Fourteenth Amendment rights. The allegations of the five (5) Plaintiffs who mention Segar can be summarized as follows:

| Plaintiffs | Relevant dates | Allegation |
|---|---|---|
| Richardson | Fall 2018 | Richardson admits she never reported any abuse or sexual misconduct allegations to Segar. Although she and Segar both attempted to contact one another, Richardson reported her abuse allegations to her supervisor on October 1, 2018, shortly after her attempts to contact Segar. Richardson admits she reported the abuse allegations to the Student Advocacy and Accountability Office ("SAA") and to LSU Cares office and a Title IX complaint was opened the same day.[5]<br><br>According to Richardson's own statements to Husch Blackwell, the Title IX office provided her with resources and academic support and she "got |

---

[3] Doc. 182, ¶36.
[4] While Plaintiff, Abby Owens, does reference Segar once in the portion of the Second Amended Complaint wherein her individual allegations are set forth (*see Id*., ¶360a, alleging "LSU, including specifically Defendant Segar, had actual knowledge of others who had reported abuse by John Doe."), there are no specific allegations raised by Owens against Segar.
[5] *Id.,* at ¶¶215 – 222.

| | | |
|---|---|---|
| | | into counseling at LSU."[6] |
| Robertson | January 26, 2016 | Robertson admits she never reported any abuse or sexual misconduct allegations to Segar.[7] According to Robertson, Segar learned of Robertson's alleged rape from the LSU diving coach.[8] Segar immediately reported the rape allegations to the Deputy Title IX Coordinator.[9] Robertson admits that she declined to proceed with a Title IX investigation when she was contacted by the Title IX office.[10]<br><br>In an email authored by Robertson to the Deputy Title IX Coordinator, Robertson admitted that she met with the Director of LSU's Lighthouse Program and was made aware of all resources available to her.[11] Robertson even included a statement of appreciation for the support she received from LSU.[12] |
| Brennan | July 22, 2016 | Brennan reported having learned from a co-worker that John Doe took a nude photograph of her without her consent and shared it with members of the football team.[13] According to the police report, Brennan never even saw the picture and was not "fully sure it is even her."[14]<br><br>According to Brennan, she met with Segar and Sharon Lewis concerning her allegation.[15] Brennan claims she requested not to go to the police and that Segar ignored her request, however, the Husch Blackwell Report referenced a text message Brennan sent to a fellow student stating how "supportive everyone was" and that "[Lewis] and [Segar] were the ones who encouraged me to go to the police and [Segar] |

---

[6] *See* Doc. 22-1 (Husch Blackwell Report), p 59. Though Plaintiffs did not append the report to the Second Amended Complaint, it is refenced throughout same and continues to be the foundation for much of their claims.
[7] Doc. 182, at ¶254.
[8] *Id.*
[9] *See* Doc. 22-1 (Husch Blackwell Report), pp. 93-94.
[10] Doc. 182, ¶260.
[11] *See* Doc. 22-1 (Husch Blackwell Report), p. 95.
[12] *Id.*
[13] Doc. 182, at ¶297.
[14] *See* Doc. 22-1 (Husch Blackwell Report), p. 99.
[15] Doc. 182, at ¶299.

| | | |
|---|---|---|
| | | came with me."[16]<br><br>Although Brennan claims she was offered no resources, accommodations, or interim measures, according to LSUPD Sergeant Walters, she "was provided with all resource information and declined to seek any help at this time."[17] |
| Lewis | April 25, 2018<br><br>June 18, 2018<br><br>August 2018<br><br>August 16, 2018 | Lewis admits that Segar timely reported every instance of known abuse of Lewis to the Title IX office and/or LSU Police Department.[18]<br><br>For Segar's first report, the Title IX investigator, Jeffrey Scott, stated Lewis was a "reluctant complainant" and did not want to move forward with the investigation however, he indicated that Lewis was "provided with additional support resources."[19]<br><br>For Segar's second report, Lewis denied any physical altercation with John Coe and stated she did not want to pursue any Title IX options.[20]<br><br>For Segar's third report, Lewis finally cooperated in the investigation and provided details of her abuse at the hands of John Coe.[21] Lewis also reported her complaints to the police and John Coe was arrested.[22] Nevertheless, Lewis retracted her reports two days after her report to the police in a text message to John Coe's coach, Mickey Joseph.[23]<br><br>Lewis claims she reported to Segar statements made by football coaches and Coe's mother indicating they blamed her for Coe being banned from the weight room. According to Lewis, Segar did not report this alleged retaliation to the Title IX office.[24] Lewis fails to provide any specific statements made by LSU employees or the |

---

[16] *See* Doc. 22-1 (Husch Blackwell Report), p. 98.
[17] *Id.*, at p. 99.
[18] Doc. 182, ¶486, 513, 537.
[19] See Doc. 22-1 (Husch Blackwell Report), p. 77.
[20] *Id.*, at p. 82.
[21] *Id.*, at pp. 84-86.
[22] *Id.*, at p. 86.
[23] *Id.*, at p. 87.
[24] Doc. 182, ¶530-534.

| | | identity of any of the employees who made such statements. |
|---|---|---|
| Hovis | February 3, 2020<br><br>March 6, 2020 | Hovis admits she never reported any sexual misconduct or abuse allegations to Segar. Hovis also admits she filed a Title IX complaint and the investigation resulted in John Loe's suspension.[25] Further, Hovis admits she received resources, assistance, and accommodations.[26] |

## II.    LAW AND ARGUMENT.

### i.    <u>FED. R. CIV. P. RULE 12(b)(6)</u>

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[27] A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[28] The factual allegations must "raise a reasonable expectation that discovery will reveal evidence" of liability.[29] "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff."[30] The court is not, however, bound to accept as true legal conclusions couched as factual allegations.[31] The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.[32]

---

[25] *Id.*, at ¶671 and 679.
[26] *Id.*, at ¶672, 673, and 674.
[27] *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 127 S.Ct 1955, 550 U.S. 544, at 547 (2007)).
[28] *Iqbal,* 129 S.Ct. at 1949.
[29] *Twombly,* 550 U.S. at 556
[30] *Lormand v. U.S. Unwired, Inc.,* 565 F .3d 228, 232-33 (5th Cir.2009); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996).
[31] *Iqbal,* 129 S.Ct. at 149-50; *Anderson v. Law Firm of Shorty Dooley & Hall,* 2009 WL 3837550, 2(E.D. La., 2009).
[32] *Id.*

Plaintiffs have failed to state a claim for relief against Segar as to all of their claims. Plaintiffs allege the following violations against Segar: (1) First Amendment Retaliation; (2) Fourteenth Amendment Denial of Equal Protection; and (3) Fourteenth Amendment Denial of Procedural Due Process. For the reasons that follow, all claims against Segar should be dismissed.

**ii.    PLAINTIFFS' CLAIMS ARE TIME-BARRED**

All of Plaintiffs' claims against Segar are time-barred. For claims asserted pursuant to 42 U.S.C. § 1983, the applicable statute of limitations is the state statute of limitations for personal injury.[33] In Louisiana, personal injury claims are subject to a one-year prescriptive period.[34] The Fifth Circuit has held "'the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'"[35] A plaintiff's awareness of an injury is determined by looking at two specific elements of their cause of action: (1) injury and (2) causation.[36]

To further explain the relationship between the elements of injury and causation necessary for accrual of a 1983 claim, the Fifth Circuit has held, "'[a] plaintiff need not know that she has a legal cause of action' for her claim to accrue; 'she need know only the facts that would ultimately support a claim.' [*Piotrowski*, 237 F.3d at 576]. Finally, 'awareness' for accrual purposes does not mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further.' Id. (citation and internal quotation marks omitted)."[37]

The Second Amended Complaint clearly shows that all Plaintiffs knew or should have

---

[33] *King-White v. Humble Indep. Sch. Dist.,* 803 F.3d 754, 762 (5th Cir. 2015).
[34] *La C.C. art. 3492*.
[35] *Spotts v. United States,* 613 F.3d 559, 574 (5th Cir.2010) (quoting *Piotrowski v. City of Houston,* 237 F.3d 567, 576 (5th Cir.2001)).
[36] *King-White*, 803 F.3d *at* 762.
[37] *Id.*

known of the existence of their alleged injuries [*i.e.*, the alleged constitutional violations] and the cause of their alleged injuries [i.e., action or inaction by LSU employees] prior to one year before filing the instant lawsuit. Plaintiffs filed their lawsuit on April 26, 2021, thus, any claims for injury occurring prior to April 26, 2020, are time-barred. All of Plaintiffs' claims against Segar assert injuries which Plaintiffs knew or should have known they had suffered prior to April 26, 2020.

Richardson's allegations involving Segar's purported failure to respond to her phone call occurred in the fall of 2018. Robertson claims Segar was informed of her rape allegations on January 26, 2016. Brennan alleges she informed Segar of her claims on or around July 22, 2016. Lewis contends she reported abuse and/or retaliation to Segar on four separate occasions, with the final report being made on August 16, 2018. Hovis claims Segar was aware of her Title IX complaint on February 4, 2020, and of the conclusion of the investigation on March 6, 2020. None of the aforementioned alleged events occurred within the applicable prescriptive period. For each of the alleged instances and each of the Plaintiffs, they either knew or should have known of their alleged injury on or around the dates provided above. Instead of bringing their claims soon after they became known, Plaintiffs waited and brought their claims too late.

In a feeble and inadequate attempt to assert their claims are not time-barred, Plaintiffs contend their harms were "knowingly and intentionally concealed" from them by Defendants, that the harms are "continuing in nature", and that the harms were not discoverable until the release of the Husch Blackwell Report in March 2021.[38] Plaintiffs contend that until the release of the Husch Blackwell Report they were not aware of the following allegations:

    a. LSU's reporting and response system was woefully inadequate in comparison to other comparable universities and substantially deviated from the duty of care as outlined in industry standards.

    b. LSU and its employees, including Defendant Stewart, had specific knowledge of its institutional level procedural deficiencies;

---

[38] Doc. 182, ¶81-83.

c. LSU purposely handled complaints of sexual misconduct perpetrated by student athletes or others affiliated with the LSU Athletics Department in a different manner than complaints of sexual misconduct perpetrated by other individuals;

d. There was a causal connection between the failure of LSU's Title IX system and the success of its Athletics Department;

e. LSU and its employees, including Defendants Ausberry and Segar, encouraged and perpetrated sex discrimination by retaliating against employees that attempted to follow their reporting obligations;

f. LSU and its employees, including Defendants Ausberry and Segar, had concealed disclosures of sexual misconduct that should have been reported to LSU's Title IX Office;

g. Defendants intentionally instituted a process of responding to disclosures of Title IX violations in a manner designed to deter any future disclosures;

h. LSU football players never received appropriate training regarding prevention of sexual misconduct; and

i. Numerous LSU employees, including the majority of those in the Athletics Department, did not understand their reporting obligations under Title IX.[39]

These allegations have no relation to the 1983 claims filed against Segar. Furthermore, the above allegations are entirely contradictory to the facts alleged in the Second Amended Complaint and the Husch Blackwell Report, which indicate that Segar immediately reported Plaintiffs' Title IX complaints whenever she had actual notice[40] of sexual misconduct and/or abuse to the Title IX campus coordinator, as required by LSU's then-existing Title IX policy. Those are not the actions of someone who is trying to conceal reports of sexual misconduct or abuse.

In the case of *King-White,* 803 F.3d at 756, the plaintiffs (A.W. (student/daughter) and mother) alleged that plaintiff A.W. was sexually abused by her teacher continuously from 2009 through 2011; however, the suit was not brought until December 4, 2013. Plaintiffs averred that for accrual purposes, the relevant injury should be viewed as the school's ratification of and

---

[39] Doc. 182, ¶83.

[40] Though it is true that Segar did not report Brennan's complaint to the Title IX office, Segar did not have *actual knowledge* of any sexual misconduct (*i.e.*, Brennan herself had never seen the nude photograph but had heard about it through friends who also had not seen it nor did the photograph ever surface) but nonetheless encouraged her to file a police report and even escorted her to LSUPD. As noted in the Husch Blackwell report, in a follow-up to her police report, Brennan informed the LSUPD detective "she still wished to not pursue charges against [John Doe] and also wished to remain anonymous as it relates to LSU Care, **Title IX**, Lighthouse, etc.". *See* Doc. 22-1, p. 99. (Emphasis added.)

8

deliberate indifference to the abuse, not the abuse itself.[41]  The Court was not persuaded by these arguments. The Court found that the plaintiffs had sufficient awareness of the injury (sexual abuse) in 2009; that plaintiff mother was aware of and consented to plaintiff A.W. living with the accused teacher; and that plaintiff mother complained to the school about the relationship between plaintiff A.W. and the teacher.[42] The Court found that a reasonable person who knew of the relationship between her daughter and the teacher, including the living arrangements, and had made complaints to the school with no action forthcoming by school officials, would have investigated further.[43] The Court determined the injury accrued when plaintiff A.W. knew of the abuse in 2009 and tolled until she turned 18.

In *Hernandez v. Baylor Univ.,* 274 F. Supp. 3d 602, 610 (W.D. Tex. 2017), the Court had differentiated plaintiff's claims as pre-reporting and post-reporting allegations. For her post-reporting allegations, which are analogous to the instant Plaintiffs' 1983 claims against Segar, the Court found they were time-barred. The Court concluded, "Plaintiff knew of her post-reporting injury, including her continuing vulnerability to Elliott's presence on campus, in 2012. She also knew that Baylor had failed to intervene. Further, because she notified Baylor of her assault, Plaintiff knew the university had actual knowledge of her assault and her continuing vulnerability to Elliott."[44] Plaintiff failed to timely file her suit for her post-reporting allegations within the applicable statute of limitations and those claims were dismissed.

Similar to the plaintiffs in *King-White* and *Hernandez*, Richardson, Robertson, Lewis, Brennan and Hovis's claims against Segar are time-barred. Plaintiffs' claims in this case are

---

[41] *King-White,* 803 F.3d at 762.
[42] *Id.*
[43] *Id.*
[44] *Hernandez,* 274 F. Supp.3d at 617.

subject to a one-year statute of limitations. All of the Plaintiffs knew of their alleged injuries more than one year before they filed their suit.

### a. First Amendment Retaliation claims are time-barred

Richardson claims she engaged in constitutionally protected speech when she reported John Coe's abuse to various LSU employees, including Segar.[45] Richardson claims Segar engaged in retaliatory conduct against her for her alleged report by never returning Richardson's calls.[46] While Richardson's allegations are entirely false and contradictory to her allegations in earlier portions of the Second Amended Complaint(*i.e.*, paragraphs 213 through 215[47]), they nevertheless demonstrate that Richardson was aware of her alleged injury (*i.e.*, purported retaliation by Segar for alleged protected speech) in the fall of 2018 when she alleges Segar did not respond to her return phone call. Richardson did not file the instant complaint until April 26, 2021, more than one-year from the date she knew of her alleged injuries. Thus, Richardson's claim of retaliation against Segar is time-barred and must be dismissed.

Lewis contends she engaged in constitutionally protected speech by reporting John Coe's abuse to various LSU athletics department employees, including Segar.[48] Lewis does not allege any retaliatory conduct on the part of Segar[49], however; even if she did allege any retaliatory conduct by Segar, her claims would be time-barred because her reports to Segar are alleged to all have occurred more than one-year before the instant suit was filed.[50]

No other Plaintiffs allege First Amendment retaliation claims against Segar.

---

[45] Doc. 182, ¶1026.
[46] *Id.*, at ¶1028 (f).
[47] According to Richardson's own complaint, she never reported allegations of abuse to Segar. See *Id.* at ¶214-215.
[48] *Id.*, at ¶1032.
[49] *Id.*, at ¶1034.
[50] *Id.*, at ¶¶483-484; 513; 535 (Lewis's final report to Segar was on August 16, 2018. John Coe withdrew from LSU on September 17, 2018 (*Id.*, at ¶545).

### b. Fourteenth Amendment Denial of Equal Protection Claims are time-barred

Plaintiffs Owens, Richardson, Robertson, Brennan, Lewis, Doe and Kitch claim their reported sexual assault allegations were not properly reported by Ausberry, Segar, or any others in leadership at LSU and that they were denied the opportunity for interim educational measures.[51] These allegations as to Segar completely contradict the allegations in the earlier portions of the Second Amended Complaint.[52] Nevertheless, Plaintiffs' claims are time-barred because they knew of their alleged injury (lack of proper reporting and denial of interim educational measures) more than one-year prior to the filing of their lawsuit.

First, Plaintiffs Owens, Richardson, Robertson, Doe, and Kitch do not allege that they made any report of sexual assault allegations to Segar.[53] Still, these Plaintiffs were aware of the alleged injury (lack of proper reporting and denial of interim educational measures) more than one-year prior to the filing of their lawsuit. According to Richardson, she reported her allegations in the fall of 2018 to Ausberry and was contacted by Segar shortly thereafter, although she and Segar never actually spoke.[54] Robertson alleges Segar was informed of her rape allegations January 26, 2016 through a report from the LSU swimming and diving coach.[55] Owens alleges she reported her rape to the rehabilitation facility where she was receiving treatment in April of 2017 and that her father reported the rape to tennis coach Julia Sell in late April 2017.[56] Plaintiff Doe alleges she

---

[51] *Id.* at ¶¶1070-1071.

[52] Owens, Doe and Kitch failed to allege any facts demonstrating that Segar was aware of their reported allegations. According to Plaintiffs' own allegations, Segar properly reported the sexual misconduct allegations brought by Robertson, Lewis and Brennan. As for Richardson, her own allegations show that Segar never received a report from her of any sexual misconduct or abuse.

[53] *Id.*, at ¶¶213-214; 254; 337; 618-619; 733-735.

[54] *Id.*, at ¶215.

[55] *Id.*, at ¶254.

[56] *Id.*, at ¶340.

reported her allegations to the Title IX office in March 2019.[57] Kitch contends she reported her claims to the Title IX office in August 2019.[58]

Regarding Plaintiffs Lewis and Brennan, their claims are also time-barred. Lewis's last report of abuse allegations to Segar occurred on August 16, 2018.[59] Brennan reported her allegations to Segar on July 22, 2016.[60] Even assuming Lewis and Brennan's allegations that Segar did not properly report their complaints as true, which is adamantly denied by Segar, their claims are time-barred because they were aware of their alleged injuries more than one-year prior to filing their lawsuit. Similar to the circumstances in *King-White* and *Hernandez,* these Plaintiffs made complaints to individuals at LSU and contend there was no action or insufficient action forthcoming by LSU. The court in *King-White* found that a reasonable person under those circumstances would have investigated further. Similarly, the court in *Hernandez* held that similar post-reporting allegations were known to the plaintiff at the time of her report and were time-barred. Plaintiffs' contentions that they could not have been aware of their injuries until the release of the Husch Blackwell Report are disingenuous. All of the allegations against Segar are what the court in *Hernandez* described as "post-reporting allegations" and are time-barred for the reasons described above.

   c.   **Fourteenth Amendment Denial of Substantive and Procedural Due Process Claims are time barred**.

Plaintiffs contend Defendants Ausberry, Segar, Stewart, and Sanders deprived them of their property and liberty interests without adequate notice or a meaningful opportunity to be heard in violation of the Due Process Clause of the Fourteenth Amendment.[61] Plaintiffs' claims in this

---

[57] *Id.*, at ¶619.
[58] *Id.*, at ¶735.
[59] *Id.*, at ¶535.
[60] *Id.*, at ¶299.
[61] *Id.*, at ¶1087.

regard are entirely speculative and conclusory. Plaintiffs claim Defendants failed to:

    a. Properly train employees in their Title IX reporting obligations.
    b. Ensure employee compliance with the Title IX Policy and other relevant policies.
    c. Report complaints of sex-based discrimination.
    d. Initiate and/or conduct adequate investigations and grievance procedures under Title IX.
    e. Ensure that victimized students had equal access to educational opportunities and benefits or grievance procedures.
    f. Ensure victimized students were provided with the interim measures necessary to maintain their educational access after making Title IX reports.
    g. Remedy hostile environments when they were discovered.
    h. Prevent the recurrence of hostile environments.[62]

Plaintiffs failed to allege any specific actions or inactions on the part of Segar that would potentially have violated their due process rights. The only allegation that could involve Segar's duties is the purported failure to "[r]eport complaints of sex-based discrimination." As stated herein, those allegations are completely false and are not even supported by the facts alleged in the Second Amended Complaint and the Husch Blackwell Report; however, even if true, they are time-barred for the reasons stated above.

### iii. FAILURE TO STATE A CLAIM AGAINST SEGAR UNDER SECTION 1983

#### a. Qualified Immunity

Qualified immunity provides state officials with immunity from suit.[63] "As against claims under federal law, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[64] "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."[65]

---

[62] *Id.*, at ¶1094.
[63] *Pearson v. Callahan*, 555 U.S. 223, 231-32, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).
[64] *Id.,* citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
[65] *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

The U.S. Supreme Court has refined the qualified immunity standard by defining "clearly established" in a way that encompasses the "objective reasonableness" inquiry. To be "clearly established," the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[66] In other words, Plaintiffs herein must allege facts which, if true, would show that Segar violated their rights in a way that she knew or should have known was unlawful. A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.[67] Therefore, before engaging in the inquiry into whether the official unreasonably violated clearly established law, courts should first determine whether the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of federal law in the first place.[68] For the reasons set forth below, Segar is entitled to qualified immunity for all claims brought against her.

### 1. First Amendment Retaliation Claims

In order to establish a §1983 claim of retaliation for exercise of free speech a plaintiff must prove that: (1) she was engaged in constitutionally protected activity; (2) the defendant's alleged actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the exercise of her protected right was a substantial or motivating factor for the defendant's actions.[69] Plaintiffs failed to allege all essential elements of their §1983 claim of retaliation for exercise of free speech against Segar.

---

[66] *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
[67] *Id.*
[68] *Id.*
[69] *Culbertson v. Lykos,* 790 F.3d 608, 618 (5th Cir. 2015), *disapproved of by Hersh v. Tatum,* 526 S.W.3d 462 (Tex. 2017); citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir.2002).

14

Only Plaintiff Richardson contends Segar engaged in retaliatory conduct in response to her alleged report of abuse allegations.[70]  Richardson claims that she attempted to contact Segar to report her allegations, but that Segar did not respond when Richardson returned Segar's call.[71] Richardson reported her abuse allegations to another LSU employee soon after the missed calls to and from Segar[72]; thus, Segar's alleged action of not responding to Richardson's phone call did not chill Richardson's speech and could not be said to be motivated by Richardson's alleged exercise of protected speech. Additionally, there is no allegation that Segar suppressed Richardson's speech or retaliated against her for her alleged speech. Pursuant to Plaintiffs' factual allegations, Segar was not even aware of Richardson's speech as she never actually spoke to Richardson. Furthermore, it is important to note that Richardson's report to Ausberry came after her alleged abuser's arrest for abusing Lewis, which was a result of Segar's proper reporting of Lewis's abuse allegations. This begs the question, why would Segar have wanted to suppress Richardson's reporting of prior abuse by John Coe when she had just assisted Lewis in reporting abuse committed by the very same assailant? The unlikelihood of this supports the obvious conclusion that Segar was not aware of Richardson's complaint; therefore, the alleged failure to return her call could not have been motivated by a desire to retaliate against her for exercising protected speech.

In the unlikely event this Court decides that Plaintiff Richardson, or any other Plaintiff did allege a violation of a federal right with respect to their §1983 First Amendment retaliation claims against Segar, Segar shows that she did not violate clearly established law because Segar's alleged actions have not been held to be unlawful. A state official will not lose his qualified immunity

---

[70] Doc. 182, ¶1028(f).
[71] Id., at ¶215.
[72] Id., at ¶219.

unless the law is clear that the particular action by the state official violates a protected right.[73]

Instead, Segar asserts that the Plaintiffs have not alleged any conduct that would demonstrate that

she acted in a way that she knew was unlawful. At all times Segar acted in accordance with the

policies and procedures in place at LSU. According to the Second Amended Complaint, LSU's

Title IX Policy reads: "Responsible Employees who receive notice or witness incidents of Sexual

Misconduct must promptly notify the Title IX Campus Coordinator."[74] A "Responsible Employee"

is defined in the Title IX Policy as "[a]ny employee given the duty of reporting actual notice of

incidents of sexual violence or any other misconduct prohibited by this policy."[75] Richardson

failed to allege that Segar received *actual notice* of any incident of sexual violence or other

misconduct relating to Richardson.

Richardson's allegations are that she reported her abuse at the hands of John Coe to

Ausberry, who stopped her and told her to report the abuse to Segar.[76] Richardson claims that

Segar called her but when she returned the call, Segar never responded.[77] There is no indication

that Segar was aware or had *actual notice* of Richardson's abuse report. Indeed, Plaintiffs do not

allege that Segar had any idea why Richardson had tried to call her in the first place, nor is it

alleged that Ausberry had provided any information to her. Segar, in compliance with the policy

in place, was only under a duty to report her *actual notice* of incidents of Title IX violations. In

Richardson's case, Segar was not made aware of any Title IX violations that she could have

reported. Undersigned counsel is unaware of any reported cases in any controlling jurisdiction that

establish that failure to respond to a phone call amounts to a violation of an individual's First

---

[73] *Kinney v. Weaver,* 367 F.3d 337, 350 (5th Cir. 2004).

[74] Doc. 182, ¶33.

[75] *Id.,* at ¶34.

[76] *Id.*, at ¶214.

[77] *Id.*, at ¶215.

Amendment rights to free speech and/or retaliation for engaging in protected speech. Thus, Segar did not violate clearly establish law and she is entitled to qualified immunity. Plaintiffs' claims arising pursuant to the First Amendment must be dismissed.

### 2.   Fourteenth Amendment Denial of Equal Protection

The Equal Protection Clause states that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."[78] It is "essentially a direction that all persons similarly situated should be treated alike."[79] "To maintain an equal protection claim, a plaintiff typically alleges that he 'received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'"[80]

Plaintiffs allege all Defendants discriminated against them on the basis of sex by "subjecting them to a hostile environment and failing to appropriately respond to and investigate reports of sexual misconduct and other violations detailed previously in [their] Complaint."[81] When a right is clearly defined in the abstract, such as the right to equal protection, a state official will not lose his qualified immunity unless the law is clear that the particular action by the state official violates a protected right.[82] Segar asserts she did not violate any clearly established right to equal protection for any of the named Plaintiffs.

Protected property interests are created and defined by "state statutes or rules entitling citizens to certain benefits."[83] Plaintiffs contend Defendants' actions or inactions deprived them

---

[78] *U.S. Const. amend. XIV, § 1, Grimm v. Gloucester Cty. Sch. Bd.,* 972 F.3d 586, 606 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *cert. denied*, 141 S. Ct. 2878 (2021).

[79] *Id.*, citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

[80] *Club Retro, L.L.C. v. Hilton,* 568 F.3d 181, 212–13 (5th Cir. 2009); *Taylor v. Johnson,* 257 F.3d 470, 473 (5th Cir.2001); *see In re United States,* 397 F.3d 274, 284 (5th Cir.2005); *Beeler v. Rounsavall,* 328 F.3d 813, 816–17 (5th Cir.2003); *Rolf v. City of San Antonio,* 77 F.3d 823, 828 (5thCir.1996).

[81] Doc. 182, ¶1065.

[82] *Kinney, supra,* at 349-350.

[83] *Goss v. Lopez,* 419 U.S. 565, 572-73, 95 S. Ct. 729, 735, 42 L. Ed. 2d 725 (1975); *see also Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701 (1972); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538-39, 105 S. Ct. 1487, 1491, 84 L. Ed. 2d 494 (1985).

of liberty and property by endangering them, treating them as second-class citizens at LSU, forcing them to move or leave LSU entirely against their prior wishes, and denying them opportunity to take advantage of interim measures to assist them in fully accessing their education after the alleged abuses.[84]

As for these allegations, Plaintiffs, who are all females, failed to allege that male students, or other gender-identifying students, who reported violations of Title IX were treated more favorably than Plaintiffs. Nevertheless, Plaintiffs contend "[i]t is clearly established that failure to report or investigate allegations of sexual assault violates the Equal Protection Clause."[85] In support of this assertion, Plaintiffs rely upon two Supreme Court cases.

The first case cited by Plaintiffs, *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 201, 109 S. Ct. 998, 1006, 103 L. Ed. 2d 249 (1989), considered the arguments of a mother and minor child that the state violated the child's equal protection rights by failing to protect him from abuse at the hands of his father who had custody of the child. Plaintiffs in their Second Amended Complaint provide a citation from that case which is included in footnote 3 of the case – "a State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."[86] However, the *Deshaney* court explained denial of protective services to minorities was not at issue in the case before it because that argument had not been advanced. The citation came from the case of *Yick v. Hopkins,* 118 U.S. 356, 6 S. Ct. 1064, 1065, 30 L. Ed. 220 (1886). In the *Yick* case, minority Chinese laundry owners were found to have violated local ordinances in the conduct of their businesses and buildings in which their businesses were housed and were imprisoned while white citizens who

---

[84] Doc. 182, ¶¶1067 – 1071.
[85] *Id.*, ¶1078.
[86] *Id.*, at ¶1079.

had similar violations were not found in violation and were not imprisoned.[87] The Supreme Court held that the blatant discrimination against the Chinese laundry owners was a violation of their rights to equal protection under the Fourteenth Amendment.[88]

The next case cited by Plaintiffs is *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258, 129 S. Ct. 788, 797, 172 L. Ed. 2d 582 (2009). While the Supreme Court determined in that case that §1983 claims are "available to plaintiffs alleging unconstitutional gender discrimination in schools", it did not address the merits of the claims in that case since the merits of the constitutional claims had not been addressed by the lower courts.[89]

The cases cited by Plaintiffs do not demonstrate that Segar violated clearly established law. Neither of the cited cases have similar fact patterns to the instant case. Further, neither of the cases sufficiently put Segar on notice that her actions or inactions violate clearly established law. Hence, Plaintiffs have failed to show that the alleged actions or inactions of Segar (i.e., failure to properly report alleged Title IX violations) are a clearly established constitutional violation. Thus, Segar is entitled to qualified immunity and Plaintiffs' claims must be dismissed.

### 3. Fourteenth Amendment denial of Substantive and Procedural Due Process

In order to establish a due process violation, the plaintiff must show that he has been deprived of a protected liberty or property interest.[90] "It is only when the state deprives an individual of a 'protected interest' – that is, 'life, liberty, or property' – that fair procedures are constitutionally mandated."[91] Plaintiffs contend they were deprived of their substantive and procedural due process rights due to Defendants' alleged failure to comply with "the administrative

---

[87] *Yick, supra.*
[88] *Id.*
[89] *Id.*, at 260.
[90] *Garcia v. United States*, 666 F.2d 960, 963-64 (5th Cir. 1982).
[91] *Woodard v. Andrus,* 649 F. Supp. 2d 496, 505 (W.D. La. 2009).

requirements of Title IX."[92]

The only specific action Plaintiffs contend was taken by Segar for this claim is her purported failure to report complaints of sex-based discrimination.[93] This allegation is disputed and contradicted by the allegations in Plaintiffs' own Second Amended Complaint.

Protected property interests are created and defined by "state statutes or rules entitling citizens to certain benefits."[94] Plaintiffs allege deprivation of their liberty and property interests, including the alleged right to be provided adequate notice of the actions to be taken due to the alleged sex-based discrimination they suffered, and meaningful opportunity to be heard.[95] Plaintiffs also contend they were deprived of their liberty and property interests in accessing educational opportunities and benefits.[96] It is not clearly established that such interests are protected by procedural due process. It has not yet been resolved whether a student's interest in continued enrollment at a post-secondary institution is protected by procedural due process.[97] If continued enrollment in a university is not an established protected property interest, then it necessarily follows that access to educational opportunities and benefits is also not clearly established.

Plaintiffs cite the case of *Perry v. Sindermann*, 408 U.S. 593 (1972), for the premise that a university's failure to follow published procedures constitutes an unconstitutional deprivation of property without due process.[98] The *Perry* case involved a professor's claim of a property interest

---

[92] Doc. 282, ¶¶1091-1092.

[93] Doc. 282, ¶1094.

[94] *Goss v. Lopez*, 419 U.S. 565, 572-73, 95 S. Ct. 729, 735, 42 L. Ed. 2d 725 (1975); *see also Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39, 105 S. Ct. 1487, 1491, 84 L. Ed. 2d 494 (1985).

[95] Doc. 182, ¶1095.

[96] *Id.*, at ¶1099.

[97] *See, e.g., Bd. of Curators of Univ. of Missouri v. Horowitz,* 435 U.S. 78, 84–85, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); *Bell,* 351 F.3d at 249. *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 437 (6th Cir. 2006).

[98] Doc. 182, ¶1107.

in his employment, which is not analogous to the instant Plaintiffs' claims. Nevertheless, as previously explained, Segar followed all LSU policies regarding reporting Title IX complaints. Thus, Plaintiffs failed to establish that Segar violated clearly established law and Segar is entitled to qualified immunity. For these reasons, Plaintiffs' claims arising under the Fourteenth Amendment for violation of procedural and substantive due process must be dismissed.

## III.    CONCLUSION

Plaintiffs have failed to state a claim against Segar for all claims. Plaintiffs contend Segar violated their constitutional rights pursuant to the First and Fourteenth Amendments. Plaintiffs' claims are all time-barred as to Segar, as stated hereinabove. In the alternative, should this Court determine some or all of Plaintiffs' claims against Segar are not time-barred, Segar is entitled to qualified immunity for all of their claims, as stated hereinabove. For the reasons stated herein, Segar contends that all claims asserted against her by Plaintiffs must be dismissed.

Respectfully submitted on February 14, 2022.

**JEFF LANDRY,**
**ATTORNEY GENERAL**

**SHOWS, CALI & WALSH, L.L.P.**

/s/ Mary Ann White_____
John C. Walsh (LA 24903)
Jeffrey K. Cody (LA 28536)
Mary Ann White (LA 29020) (*Lead Counsel*)
628 St. Louis Street (70802)
P.O. Box 4425
Baton Rouge, LA 70821-4425
Tel: 225-346-1461
Fax: (225) 346-1467
john@scwllp.com
jeffreyc@scwllp.com
maryannw@scwllp.com
*Special Assistant Attorneys General*
***Counsel for Defendant, Miriam Segar***

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of February, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ Mary Ann White
Mary Ann White