**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ABBY OWENS, ET AL.**<br>*Plaintiff* | **Case No.: 21-242** |
| | **Division WBV-SDJ** |
| **v.** | |
| | **JUDGE WENDY B. VITTER** |
| **BOARD OF SUPERVISORS OF**<br>**LOUISIANA STATE UNIVERSITY**<br>**AND AGRICULTURAL AND**<br>**MECHANICAL COLLEGE, ET AL.**<br>*Defendant* | **MAGISTRATE JUDGE JOHNSON**<br><br>**JURY DEMANDED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT BOARD OF SUPERVISORS OF**
**LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL**
**COLLEGE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch (collectively, "Plaintiffs"), through undersigned counsel, respectfully submit this Opposition to Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College's ("Defendant" or "LSU") Motion to Dismiss Second Amended Complaint ("Motion") (ECF No. 201). Plaintiffs' factual allegations properly state claims against LSU, and the Motion must be denied.

**STATEMENT OF FACTS**

Plaintiffs filed a complaint in this Court alleging serious, systemic violations within the LSU Title IX program which stemmed from a purposefully deficient sexual misconduct and Title IX reporting scheme which LSU and its employees knowingly kept separate and apart from LSU's official Title IX Office to keep legitimate sexual assault claims within the athletics department and

outside of the normal reporting process to protect LSU athletics and its student athletes.[1]  This scheme stymied LSU's overall Title IX reporting system, successfully insulated coaches and players within LSU's athletic programs from legitimate sexual assault claims and allowed the athletics department to continue operating unhindered to reach levels of success the program wouldn't have reached otherwise without facing any consequences for the abuses of their players and coaching staff.[2]  This scheme allowed the University to reap the rewards of the football program's incredible success – including, but not limited to, a national championship, unprecedented increases in revenue, increases in merchandise and ticket sales, increases in TV contracts, increases in admission applications, and increases in alumni donations.[3]

Plaintiffs allege that the Defendants in this action repeatedly engaged in discriminatory, retaliatory, and other unlawful actions in their interactions with Plaintiffs and in response to Plaintiffs' reports of Title IX violations and violations of LSU's Code of Student Conduct, thereby violating their own policies.[4]  The LSU Title IX Policy identifies the following individuals as Responsible Employees: "Any employee given the duty of reporting actual notice of incidents of sexual violence or any other misconduct prohibited by this policy."[5]  The Title IX Policy requires that Responsible Employees who receive notice or witness incidents of Sexual Misconduct must promptly notify the Title IX Campus Coordinator.[6]  In a 2017 audit entitled "Oversight and Prevention of Sexual Misconduct (Multi-Campus)" completed by LSU's Office of Internal Audit, auditors made the following findings, among others: (1) additional procedures may be required to ensure "responsible employees" have been identified and understand their reporting obligations

---

[1] Second Am. Compl. ¶ 25, ECF No. 182.
[2] *Id*. at 26.
[3] *Id*. at 27.
[4] *Id*. at 36.
[5] *Id*. at 34.
[6] *Id*. at 33.

under Title IX; (2) Policies, procedures, and publications related to Title IX are not sufficient to meet institutional obligations outlined by OCR; (3) Published contact information for Title IX Campus Coordinators is incomplete and/or not widely communicated (all campuses except LSU A&M); and (4) that the University currently does not have policy or guidelines in the area of challenges associated with romantic or dating relationships.[7]  These findings were reflected in the Plaintiffs' personal experiences, in which they reported Title IX violations to the individual defendants in this action, who then failed to appropriately respond, failed to appropriately report their complaints to the Title IX Coordinator, and retaliated against the individuals who had made the reports.[8]

Plaintiffs allege that the training LSU provided for students and employees on its sexual misconduct and anti-discrimination policies, definitions, and investigation and reporting procedures falls far short of what is considered industry standard in terms of educating community members at higher education institutions about their rights and obligations with respect to sexual misconduct and sex discrimination on campus.[9]  There are numerous consulting and training resources available to higher education administrators to assist them with the task of training their campuses on sexual misconduct prevention and response as required by Title IX, the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act"), and federal guidance, all of which were available to Defendants as a matter of basic due diligence.[10] Institutions the size and scale of LSU generally provide much more comprehensive training to students and employees to inform them of their rights and obligations under the institution's Title

---

[7] Id. at ¶ 70.
[8] Id. at ¶¶ 114, 214, 215, 230, 299-310, 422-425, 481, 482, 484-487, 493, 518-526, 531-538, 681, 968, 988.
[9] Id. at ¶ 37.
[10] Id. at ¶ 38.

IX Policy than LSU did.[11] LSU's failure to comply with even the most basic of Title IX obligations has been, in the words of Louisiana State Representative Paula Davis, "a major screw-up."[12] In the words of former LSU President Galligan, "We failed those who it was our first duty to protect[,]" "it was an example of institutional betrayal[,]" and "I am ashamed."[13]

In November 2020, LSU retained the Husch Blackwell law firm to investigate the school's handling of several Title IX-related incidents as well as LSU's Title IX policies and procedures.[14] On March 5, 2021, Husch Blackwell's investigative report and findings (hereinafter, the "Husch Blackwell report") were publicly released and reported the following conclusions: (1) "The University did not handle various items identified in the *USA Today* article in a manner consistent with obligations under Title IX, widely recognized best practices, and/or University policy;" (2) "Various incidents of athletics-related misconduct [had] not been appropriately reported to the University's Title IX Coordinator; (3) there was "a lack of reporting prior to November 2016;" (4) "Institutional reporting policy and training have been unclear for years;" and (5) "The University's Title IX Office has never been appropriately staffed or provided with the independence and resources to carry out Title IX's mandates…."[15] Husch Blackwell found that LSU did not follow federal laws and regulations, best practices, or even its own policies and procedures in cases of reported sexual misconduct.[16] At a university level, Husch Blackwell found that LSU lacked effective Title IX leadership and was slow to adopt Title IX policies, hire personnel, and meaningfully address concerns identified by community members and internal and external reviews.[17]

---

[11] *Id.* at ¶ 39.
[12] *Id.* at ¶ 78.
[13] *Id.* at ¶ 79.
[14] *Id.* at ¶ 47.
[15] *Id.* at ¶¶ 47-54.
[16] *Id.* at ¶ 55.
[17] *Id.* at ¶ 56.

Defendant is vested with the authority to supervise and manage LSU by the Louisiana Constitution. LSU has three policies which guide the University's response to potential Title IX violations – Policy Statement 1: Equal Opportunity ("Equal Opportunity Policy"), last revised April 1, 2016; Policy Statement 73: Sexual Harassment ("Sexual Harassment Policy"), last revised April 1, 2016; and Permanent Memorandum 73: Title IX Policy Prohibiting Sexual Misconduct ("Title IX Policy"), last revised August 14, 2020.[18]

The Equal Opportunity Policy reads:

The University reaffirms and emphasizes its commitment to provide a workplace free from discrimination and harassment and to provide a means to address complaints of discrimination and/or harassment. LSU also reiterates its commitment and responsibility to protect its employees and students from discrimination, harassment, and retaliation for participating in the complaint process….

All complaints of discrimination and/or harassment will be addressed. Substantiated cases shall result in appropriate discipline or other corrective action. The severity of the disciplinary action shall be consistent with the seriousness of the act of discrimination and/or harassment….

The President, Vice Presidents, Deans, Directors, Department Heads, and all other supervisory employees are responsible for assisting the University in the implementation of this policy.[19]

The Title IX Policy includes the following statement of purpose:

Sexual Misconduct violates an individual's fundamental rights and personal dignity and will not be tolerated. LSU prohibits and is committed to an environment free of discrimination on the basis of sex and Sexual Misconduct. This policy affirms these principles and provides recourse for individuals whose rights have been violated.

LSU will take prompt action to prevent prohibited conduct, discipline those who violate this policy, prevent recurrence of prohibited behavior, and effect equitable remedies.

LSU will affirmatively promote prevention, awareness and training programs to encourage individuals to report concerns or complaints. Everyone has a

---

[18] These documents are on file with Plaintiffs' counsel.
[19] Second Am. Compl. ¶ 30, ECF No. 182.

> responsibility to prevent and report acts of prohibited conduct. The entire LSU community is responsible for fostering a welcome environment conducive to learning.[20]

The Sexual Harassment Policy includes the following statement of purpose: "To state the University policy and responsibility regarding sexual harassment as related to its employees and to its students who believe they have been harassed by an employee."[21] Defendant repeatedly engaged in discriminatory, retaliatory, and other unlawful actions in their interactions with Plaintiffs and in response to Plaintiffs' reports of Title IX violations and violations of LSU's Code of Student Conduct, thereby violating their own policies.

Not only was LSU's Title IX Office woefully inadequate to meet the needs of its campus and well outside the scope of industry standards for an institution of LSU's size, but LSU handled Title IX complaints against student-athletes differently than complaints against non-athletes.[22] Plaintiffs allege that Title IX complaints against student-athletes at LSU were purposefully buried or diverted to ensure that those complaints were never properly investigated or addressed, and the student-athletes were not negatively impacted or prevented from concentrating on their athletics, all of which benefited LSU and caused further harm to Plaintiffs.[23] Defendant's actions and inactions in response to Plaintiffs' reports of Title IX violations subjected Plaintiffs to additional harassment and created a sexually hostile environment on campus.[24] Plaintiffs suffered harm as a direct and indirect result.[25]

---

[20] *Id.* at ¶ 32.
[21] *Id.* at ¶ 35.
[22] *Id.* at ¶ 43.
[23] *Id.* at ¶ 44.
[24] *Id.* at ¶ 45.
[25] *Id.* at ¶ 46.

## LAW AND ARGUMENT

I.   **Plaintiffs' factual allegations properly state a claim against LSU and must not be dismissed under Federal Rule of Civil Procedure 12(b)(6)**

A.   **Applicable legal standard**

"It is well-settled in this Circuit that motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and are rarely granted."[26] There exists "a powerful presumption against rejecting pleadings for failure to state a claim[,]"[27] and  "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[28] Courts accept " all well-pleaded facts as true and [view] those facts in the light most favorable to the plaintiff[]."[29] In deciding a Rule 12(b)(6) motion to dismiss, this Court may take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[30] The complaint should be read as a whole, not parsed piece by piece to determine whether each individual allegation is plausible.[31]

A complaint "does not need detailed factual allegations…but must provide the [Plaintiff's] grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level."[32] That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" meaning the court

---

[26] *Pride Centric Resources, Inc*. v. *LaPorte, et al*., 2021 WL 3741529, at *2 (E.D. La. Aug. 24, 2021) (citing *Financial Acquisition Partners LP* v. *Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys*., 117 F.3d 242, 247 (5th Cir. 1997))).

[27] *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985); *Hernandez v. Baylor Univ*., 274 F. Supp. 3d 602, 609 (W.D. Tex. 2017) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co*., 563 F.3d 141, 147 (5th Cir. 2009))).

[28] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[29] *Meador v. Apple, Inc*., 911 F.3d 260, 264 (5th Cir. 2018) (quotation omitted).

[30] *Pride Centric Resources, Inc.* 2021 WL 3741529, at *2 (citing *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008)).

[31] *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 594 (8th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322–23 (2007)).

[32] *Hernandez*, 274 F. Supp. 3d at 609 (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

can draw the reasonable inference that the defendant is liable for the misconduct alleged.[33] Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[34]

### B. **Plaintiffs' claims were timely filed**

Defendant argues that Plaintiffs' claims are time-barred because their original Complaint was filed outside the prescription period. This is not the case, as Plaintiffs did not become aware of Defendant's violations of their rights until the release of the Husch Blackwell report.

### i. *Plaintiffs first became aware of Defendant's failures in March 2021*

The specific question of whether new information coming to light about an educational institution's mishandling of previously undisclosed Title IX reports could cause Plaintiffs to become aware of harms they suffered by the institution was addressed by the United States District Court for the Western District of Texas in the 2017 case, *Doe I v. Baylor*.[35] In *Baylor*, "Plaintiffs assert…that they had no reason to know of Baylor's alleged causal connection to their assaults until the spring of 2016, when media reports regarding the rampant nature of sexual assault on Baylor's campus first came to light."[36] The facts of the *Baylor* case mirror the facts of the instant matter. In *Baylor*, multiple plaintiffs were aware on some level that they had suffered harms but were not aware of the causal connection between the individual harms and the institution's complicity in such harms nor the systemic failures in the Baylor Title IX program. The *Baylor* court found:

> In the instant case, Plaintiffs allege Baylor and its staff repeatedly misinformed victims of sexual assault as to their rights under Title IX; failed to investigate reported sexual assaults; and discouraged those who reported sexual assaults from naming their assailants or otherwise coming forward….

---

[33] *Id*. at 678 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Meador*, 911 F.3d at 264 (quotation omitted).

[34] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

[35] *Jane Doe 1, et al. v. Baylor Univ.*, 240 F.Supp.3d 646 (W.D. Tex. 2017).

[36] *Id*. at 663.

> These alleged facts, if construed as true, could allow a jury to infer that Baylor's policy or custom of inadequately handling and even discouraging reports of peer sexual assault created a heightened risk of sexual assault, thereby inflicting the injury of which Plaintiffs complain.[37]

The first paragraph of the above quote could easily have been written to describe the present matter rather than the *Baylor* case.  Not until the publication of the Husch Blackwell report in March 2021 could Plaintiffs in this case have known that they were "misinformed" as to their rights under Title IX.  Simply because Plaintiffs knew they had been sexually assaulted, physically assaulted, or harassed does not mean that they had any knowledge as to the connexity of LSU's flawed Title IX program to those injuries. This is supported by the District Court's opinion in *Baylor*:

> "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,'" and while the limitations period is borrowed from state law, "the particular accrual date of a federal cause of action is a matter of federal law." "[U]nder federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." "[A] plaintiff's awareness encompasses two elements: (1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Id.* "'[A]wareness' [of the existence of the injury and causation]…does not mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further.'"  Thus, for awareness of causation, a plaintiff "must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection…or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury."[38]

Plaintiffs' claims were timely filed.  Until the release of the Husch Blackwell report in March 2021, Plaintiffs did not have the requisite knowledge to bring the claims before learning that their injuries were causally connected to actions and inactions by LSU.  As pled in Plaintiffs'

---

[37] *Id.* (internal citations omitted).

[38] *Id.* at 662-663 (internal citations omitted) (*King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (2015) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)), (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)), (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001))), (quoting *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983))).

complaints, the Plaintiffs did not have "knowledge of facts" that would lead them to think that their treatment by LSU was due to a systemic failure of the Title IX program nor that there was a "causal connection" between their injuries and the acts of LSU. Again, simply because Plaintiffs had been injured by their harassers and abusers does not give rise to claims against LSU. Not until Plaintiffs learned, through the Husch Blackwell report, that LSU could have and should have assisted them, or worse, that LSU actively concealed their complaints, did their claims against LSU accrue. For example, Plaintiffs Owens, Richardson, Robertson, Brennan, Lewis, Doe and Kitch could not have known until the release of the Husch Blackwell report that their "reports of sexual assault…were not investigated by LSU, Defendants Stewart or Sanders, and were not properly reported by Defendants Ausberry or Segar or any of the leaders of the athletic department or any other unit at LSU.[39]

In addition, the Second Amended Complaint contains detailed allegations of the specific **facts** that **each** of the Plaintiffs could not have known until the publication of the Husch Blackwell report, less than one year before the filing of Plaintiff's original complaint including the following:

240. Along with the information outlined *supra*, until the release of the Report in March 2021, Richardson could not have known that:

a. LSU, including specifically Defendants Stewart, Sanders, and Segar, had specific knowledge of the pervasive sex discrimination and retaliation she and others suffered;

b. LSU, specifically Defendant Segar, had actual knowledge of other survivors that had reported abuse by John Doe and John Coe, meaning LSU had specific knowledge of a heightened risk of assault by both John Doe and John Coe;

c. LSU and its employees failed to train Richardson on the resources available to her as a survivor, even though these same people knew the Athletics Department was an environment with a higher risk of sexual misconduct; and

---

[39] Second Am. Compl. ¶ 1070, ECF No. 182.

    d. LSU's Title IX Policy is meant to prevent the specific emotional distress that Richardson endured.[40]

277. It was not [until] Robertson read the Husch Blackwell Report that she realized that John Doe's name was not included in any of the records of her rape, even though Defendant Segar, Orgeron, and Fuentes-Martin all knew John Doe's identity.[41]

287. Along with the information outlined *supra*, until the release of the Report in March 2021, Robertson could not have known that:

    a. LSU and its employees, including specifically Defendant Segar, had specific knowledge of the pervasive harassment and retaliation she and others suffered;

    b. John Doe assaulted several more LSU students following Robertson's report;

    c. LSU, including specifically Defendant Stewart, concealed the name of Robertson's assailant from Title IX records;

    d. LSU and its employees failed to train Robertson on the resources available to her as a survivor; and

    e. LSU's Title IX Policy is meant to prevent the specific emotional distress that Robertson endured.[42]

325. Along with the information outlined *supra*, until the release of the Report in March 2021, Brennan could not have known that:

    a. LSU, including specifically Defendant Segar, had actual knowledge of other survivors that had reported abuse by John Doe, meaning LSU had specific knowledge of a heightened risk of assault by John Doe;

    b. LSU, including specifically Defendant Segar, had specific knowledge of the pervasive harassment and retaliation she and others suffered;

    c. John Doe assaulted more LSU students following Brennan's report;

    d. LSU and its employees failed to train Brennan on the resources available to her as a survivor, even though these same people knew the Athletics Department was an environment with a higher risk of sexual misconduct; and

---

[40] *Id*. at 240.
[41] *Id*. at ¶ 277.
[42] *Id*. at ¶ 287.

e. LSU's Title IX Policy is meant to prevent the specific emotional distress that Brennan endured.[43]

360. Along with the information outlined *supra*, until the release of the Report in March 2021, Owens could not have known that:

a. LSU, including specifically Defendant Segar, had actual knowledge of others who had reported abuse by John Doe;

b. LSU, including specifically Defendant Stewart, had specific knowledge of the pervasive harassment and retaliation Owens and others suffered;

c. John Doe assaulted more LSU students following Owens's report;

d. LSU employees, including Defendant Stewart, commonly concealed reports of sexual misconduct from LSU's Title IX Office;

e. LSU and its employees failed to train Owens on the resources available to her as a survivor, even though these same people knew the Athletics Department was an environment with a higher risk of sexual misconduct; and

f. LSU's Title IX Policy is meant to prevent the specific emotional distress that Owens endured.[44]

450. Along with the information outlined *supra*, until the release of the Report in March 2021, Andries could not have known that:

a. LSU, specifically Defendant Sanders, concealed information regarding John Roe's other victims;

b. LSU concealed information regarding subsequent reports related to Andries and John Roe;

c. LSU and its employees failed to train Andries on the resources available to her as a survivor; and

d. LSU's Title IX Policy is meant to prevent the specific emotional distress that Andries endured.[45]

554. Along with the information outlined *supra*, until the release of the Report in March 2021, Plaintiff Lewis could not have known that:

a. LSU, including specifically Defendants Segar, Julia Sell, Mike Sell, and Ausberry, had actual knowledge of other survivors that had reported abuse

---

[43] *Id*. at ¶ 325.
[44] *Id*. at ¶ 360.
[45] *Id*. at ¶ 450.

by John Coe, meaning LSU had specific knowledge of a heightened risk of assault by John Coe;

b. LSU, including specifically Defendant Stewart, had specific knowledge of the pervasive harassment and retaliation she and others suffered;

c. John Coe assaulted more LSU students;

d. LSU had expelled John Coe for violations of LSU's Student Code of Conduct;

e. Witnesses including Julia Sell and Mike Sell gave false information to the police;

f. At least three witnesses told Defendant Sanders about the full extent of John Coe's abuse of Plaintiff Lewis, but Defendant Sanders only questioned John Coe about the June 18, 2018, incident;

g. John Coe admitted his sexual misconduct to Defendant Ausberry, who was aware of John Coe's prior pattern of violent abuse of his romantic partners, and that Defendant Ausberry concealed this information;

h. LSU and its employees failed to train Plaintiff Lewis on the resources available to her as a survivor, even though these same people knew the Athletics Department was an environment with a higher risk of sexual misconduct; and

i. LSU's Title IX Policy is meant to prevent the specific emotional distress that Plaintiff Lewis endured.[46]

595. Along with the information outlined *supra*, until the release of the Report in March 2021, Johnson could not have known that LSU and its employees failed to train Johnson on the resources available to her as a survivor, even though these same people knew the Athletics Department was an environment with a higher risk of sexual misconduct; and that LSU's Title IX Policy is meant to prevent the specific emotional distress that Johnson endured.[47]

649. Along with the information outlined *supra*, until the release of the Report in March 2021, Plaintiff Doe could not have known that:

a. LSU, including specifically Defendant Stewart, had specific knowledge of the pervasive harassment and retaliation Plaintiff Doe and others suffered;

b. Her claims fell under the scope of LSU's Title IX Policy;

---

[46] *Id*. at ¶ 554.
[47] *Id*. at ¶ 595.

c. LSU and its employees, specifically Defendant Stewart, had concealed all notes from Plaintiff Doe's multiple interviews and had misrepresented the facts of her report;

d. LSU and its employees failed to train Plaintiff Doe on the resources available to her as a survivor; and

e. LSU's Title IX Policy is meant to prevent the specific emotional distress that Plaintiff Doe endured.[48]

697. Along with the information outlined *supra*, until the release of the Report in March 2021, Hovis could not have known that LSU, including specifically Defendants Stewart and Segar, had specific knowledge of the pervasive harassment and retaliation Hovis and others suffered; and that LSU's Title IX Policy is meant to prevent the specific emotional distress that Hovis endured. [49,50]

740. Along with the information outlined *supra*, until the release of the Report in March 2021, Kitch could not have known that:

a. LSU had specific knowledge of the pervasive harassment and retaliation Kitch and others suffered;

b. LSU and its employees failed to train Kitch on the resources available to her as a survivor; and

c. LSU's Title IX Policy is meant to prevent the specific emotional distress that Kitch endured.[51]

848. Until the release of the Report in March 2021 and the Louisiana Senate Committee Hearings, Plaintiffs were unable to know, and in fact Defendants concealed from Plaintiffs, that the Board of Supervisors was deliberately indifferent to the severe and pervasive sexual harassment such that LSU's response or lack thereof was clearly unreasonable in light of the known circumstances and that this deliberate indifference subjected Plaintiffs to continuing harassment.[52]

915. Until the release of the Report in March 2021 and the Louisiana Senate Committee Hearings, Plaintiffs were unable to know, and in fact Defendants had concealed from Plaintiffs, that the Board of Supervisors had actual knowledge of the pervasive harassment creating an objectively hostile and abusive environment in which Title IX violations were knowingly not reported properly and which was

---

[48] *Id*. at ¶ 649.
[49] Hovis' experiences were specifically outlined in the Husch Blackwell report under the name "Respondent H." *See* Second Am. Compl. ¶ 696, ECF No. 182.
[50] *Id*. at ¶ 697.
[51] *Id*. at ¶ 740
[52] *Id*. at ¶ 848.

permeated with discriminatory intimidation, ridicule, and insult which negatively altered the conditions of Plaintiffs' educational environment.[53]

937. Until the release of the Report in March 2021 and the Louisiana Senate Committee Hearings, Plaintiffs were unable to know, in fact the Board of Supervisors concealed from Plaintiffs, that the Board of Supervisors had specific knowledge of the pervasive harassment and heightened risk of sexual assault by certain assailants suffered by Plaintiffs and interfering with Plaintiffs' access to educational opportunities and benefits.[54]

1001. Until the release of the Report in March 2021 and the Louisiana Senate Committee Hearings, Owens, Richardson, Plaintiff Lewis, Johnson, Andries, and Plaintiff Doe were unable to know about the retaliation they suffered from LSU Responsible Employees following good-faith Title IX violation disclosures.[55]

1056. Until the release of the Report in March 2021, Plaintiffs were unable to know, in fact Defendants concealed from Plaintiffs, that the individual Defendants were retaliating against them for exercising their Constitutional right to free speech.[56]

1084. Until the release of the Report in March 2021, Plaintiffs were unable to know, in fact Defendants concealed from Plaintiffs, that the individual Defendants were retaliating against them for exercising their Constitutional right to Equal Protection.[57]

1117. Until the publication of the Report in March 2021 and the following Louisiana Senate Committee Hearing, Plaintiffs were unable to know, in fact Defendants concealed from Plaintiffs, that all Defendants intentionally denied Plaintiffs of their substantive and procedural due process rights regarding the events outlined *supra*.[58]

This Court and the Fifth Circuit have recognized that a complaint cannot be dismissed at the Rule 12(b) stage based upon the statute of limitations "unless the necessity of doing so is apparent on the face of the pleadings."[59] Because it is "apparent" from Plaintiffs' Second Amended

---

[53] *Id*. at ¶ 915.
[54] *Id*. at ¶ 937.
[55] *Id*. at ¶ 1001.
[56] *Id*. at ¶ 1056.
[57] *Id*. at ¶ 1084.
[58] *Id*. at ¶ 1117.
[59] *J.M. Smith Corp. v. Ciolino Pharmacy Wholesale Distributors, LLC*, 2015 WL 2383841, at *3 (E.D. La. May 19, 2015)(Zainey, J.)(citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir.2003) (A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.") (citations omitted)).

Complaint that they did not learn of their claims against Defendant until the publication of the Husch Blackwell report, dismissal pursuant to Rule 12(b) cannot be granted.

As the *Baylor* court held, this same analysis applies to Plaintiffs' heightened risk claims:

> While it is plausible that Plaintiffs were aware of their heightened-risk claims at the time of their assaults, it is also plausible that they did not have reason to further investigate those claims until 2016. Thus, accepting the allegations in the Complaint as true, the claims for heightened-risk liability did not accrue until spring 2016, and the two-year statute of limitations had not run by June 15, 2016, when this case was first filed.[60]

As for the *Baylor* Plaintiffs' deliberate indifference claims, the court held: "Because it is not 'evident' from the Complaint that the post-reporting claims of Does 1, 3, 4, 8, 9, and 10 are foreclosed by the statute of limitations, the Court denies Defendant's motion to dismiss with respect to these plaintiffs."[61]  Likewise, the Plaintiffs in the instant matter were not aware and had no reason to further investigate whether Defendant was culpable for the harms they had suffered due to the sexual misconduct they experienced and the lack of appropriate response from the responsible LSU employees.[62]

### ii.   The theory of **contra non valentem** *controls the initiation of the prescription period for Plaintiffs' claims*

In the alternative, Defendant's assertion that claims arising from conduct pre-dating April 26, 2020, are time-barred also fails as the causation between Plaintiffs' injuries and Defendant's actions or inactions were not known or reasonably knowable by these Plaintiffs until the release of the Husch Blackwell report in March 2021 because those actions and inactions were actively concealed by the Defendant from Plaintiffs.

---

[60] *Baylor*, 240 F.Supp.3d at 663.

[61] *Id.* at 664.

[62] *See also Lozano v. Baylor Univ.,* 408 F.Supp.3d 861, 901 (W.D. Tex. 2019) ("…the Court finds it plausible that Lozano had no reason to further investigate her heightened risk claim and discover the nature of the alleged injury until the release of Baylor's Findings of Fact and the subsequent media coverage in 2016…").

The theory of *contra non valentem*, from the Latin expression *contra non valentem agere nulla currit praescriptio*, means "a prescription does not run against one who is unable to act" and is a jurisprudential doctrine under which prescription may be suspended.[63] *Contra non valentem* provides that "prescription does not run against one who is ignorant of the facts upon which their cause of action is based, and is an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues."[64] The doctrine of *contra non valentem* applies only in exceptional circumstances, and must be strictly construed.[65] The doctrine does not exempt the plaintiff if the plaintiff's ignorance is attributable to the plaintiff's own willfulness or neglect. A plaintiff "will be deemed to know what he could by reasonable diligence have learned."[66]

Plaintiffs did not and could not have reasonably known that they had causes of action against LSU until the release of the Husch Blackwell report in March 2021. The investigation was conducted by Husch Blackwell, "a highly respected firm with exceptional expertise in these types of investigations"[67] which was hired by LSU and provided with documents and cooperation by Defendant and LSU employees—the extensive findings of the Husch Blackwell report, all of which are relevant to Plaintiffs' claims and none of which could have been known to Plaintiffs prior to the Report's publication are outlined in Paragraphs 47 through 83 of the Second Amended Complaint. The investigation was completed using ample resources, including LSU's permission to interview its employees and review its records, over the course of several months, and with access to internal and confidential information, none of which Plaintiffs would have or could have

---

[63] *In re Manus*, 45 So.3d 1099, 1129-1130 (La. App. 2010).
[64] *Jackson v. Jefferson Par. Clerk of Ct.*, 981 So. 2d 156, 160 (La. App. 2008).
[65] *Id.*
[66] *Id., citing Corsey v. State of Louisiana, Through the Department of Corrections,* 375 So.2d 1319, 1322 (La. 1979).
[67] *Title IX Review,* Louisiana State University (2021), https://www.lsu.edu/titleix-review/index.php.

been provided. Within the year—in fact, within two months of the release of the Husch Blackwell report—this suit was filed. In addition, Plaintiffs have pled how LSU employees reinforced that Plaintiffs should not report their assaults to the University.[68]

The causal connection between the harms Plaintiffs suffered and LSU and its employees' role in such harms could not have been discovered by Plaintiffs through a good faith effort, as LSU and its employees went to great lengths to ensure students did not understand their rights or LSU's obligations under Title IX. LSU and its employees accomplished this by failing to provide proper training to both students and employees; failing to initiate investigations as appropriate; and allowing inappropriate, untrained staff members to do their own *ad hoc* investigations. Plaintiffs had ignorance of what should have been done and the support and resources that they were entitled to receive. Plaintiffs didn't even know that they could expect anything different from their university because LSU's Title IX resources were so deficient. Plaintiffs did not know that LSU and its employees chose to underfund and neglect its Title IX responsibilities; that they should have provided them with more resources; or most egregiously, in many cases, that they purposefully buried or ignored Plaintiffs' reports of assault and abuse. Thus, the doctrine of *contra non valentem* must apply and Defendant's motion should be denied.

### C.  Plaintiffs have properly pled their claims against the Board of Supervisors

For the reasons stated below, Plaintiffs have pled sufficient facts to state facially plausible claims against the Board. By accepting Plaintiffs' allegations as true, as this Court must, Defendant's motion to dismiss the following claims against them must be denied.

---

[68] *See, e.g.,* Second Am. Compl. ¶¶ 133, 164, 174, 240, ECF No. 182.

### i.   Plaintiffs' Title IX deliberate indifference claim should not be dismissed

As Defendant correctly states, in order to be liable for student-on-student sexual harassment, Plaintiffs must show that the Board "was deliberately indifferent to the harassment" in order to plausibly state a claim.[69] Deliberate indifference may be shown by a clearly unreasonable response or lack of response by the school.[70] Plaintiffs have properly alleged that the Board of Supervisors acted with deliberate indifference to the acts of sex-based discrimination by failing to take any action to prevent them, deter the students and/or employees responsible, and/or protect Plaintiffs from sexual misconduct. The Board of Supervisors also acted with deliberate indifference to acts of sexual misconduct by failing to take immediate, effective remedial steps to resolve the Plaintiffs' allegations of sex-based discrimination. It must also be noted that the Board of Supervisors had actual knowledge of the sex-based discrimination, which was created by and furthered by Defendants' repeated failure to protect Plaintiffs consistent with LSU's own policies and federal law and guidance.

### ii.   Plaintiffs' Title IX hostile environment claim should not be dismissed

Defendant correctly states again that Plaintiffs must show that the harassment they endured was so severe, pervasive, and objectively offensive that it deprived them of access to the educational opportunities or benefits provided by the school in order to state a claim for a hostile environment.[71] Plaintiffs have properly alleged that the harassment they endured was so severe, pervasive, and objectively offensive that it deprived them of access to the educational opportunities by alleging a number of ongoing sexual and physical assaults, harassment, abuse, and stalking the Plaintiffs experienced, and the subsequent Title IX failures by the Board of Supervisors, led

---

[69] *I.L. v. Houston Indep. Sch. Dist.*, 776 F. App'x 839 (5th Cir. 2019), citing *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 689 (5th Cir. 2017).
[70] I.L., 776 F. App'x at 842 (internal quotations omitted).
[71] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ*, 526 U.S. 629 (1999).

Plaintiffs to experience substance abuse issues, miss a multitude of classes, fail courses, quit their educational jobs, and even unenroll from LSU.

Defendant is liable for the abusive and hostile educational environment the Plaintiffs experienced on campus because, as the Complaint and the Husch Blackwell Report detail at length, LSU had actual knowledge of the Plaintiffs' abusers' acts of sex-based discrimination against female and LGBTQ+ students but allowed them to continue to have unfettered access to these students, including Plaintiffs. Defendant is also liable for its failure to remedy the hostile educational environment experienced by Plaintiffs by failing to offer appropriate interim measures and accommodations that could have provided equal access to educational opportunities and benefits and failing to remedy known sexually hostile environments.  Thus, Defendant's motion should be denied.

### iii.   Plaintiffs' Title IX heightened risk claim should not be dismissed

Defendant argues that under *Poloceno v. Dallas Independent Sch. Dist.*, the heightened risk theory of liability under Title IX has not been recognized in the Fifth Circuit and therefore, this claim should be dismissed.[72] However, this is an incomplete characterization of the opinion in *Poloceno*. In *Poloceno*, the U.S. Court of Appeals for the Fifth Circuit declined to adopt the heightened risk theory of liability in that case specifically because the facts involved excessive physical exercise, rather students submitting other students to sexual assault.[73] The court clearly acknowledged heightened risk as a theory of liability in its "sister circuits," thereby keeping the option of adopting the heightened risk theory of liability open for future cases.[74]

---

[72] Doc. 201-1, 12 (citing 826 F. App'x 359, 363 (5th Cir. 2020)).
[73] *Poloceno,* 826 F. App'x at 363.
[74] *Id.*

Further, this Court has recognized a heightened risk theory of liability in Title IX cases. In

2019, this Court held the following in *Gruver v. State*, citing extensively to *Doe I v. Baylor*:

> …Plaintiffs allege that LSU's purposeful disregard of Greek male hazing
> complaints created a greater risk of danger for males in fraternities as compared to
> females in sororities. While *Baylor* is not binding, the Court finds the *Baylor* court's
> reasoning and analysis particularly persuasive and applicable herein because,
> substituting sexual assault/harassment allegations for "Greek male hazing," the
> allegations pled against the universities in both cases are extremely similar. Here,
> Plaintiffs have clearly alleged that LSU misinformed potential male students about
> the risk of hazing in fraternities, had actual notice of numerous hazing violations,
> and failed to address or correct the hazing issue for Greek males while aggressively
> and appropriately addressing and correcting hazing issues in sororities, thereby
> providing protection to female Greek students that was not equally provided to
> Greek male students. Plaintiffs' Complaint is replete with allegations that LSU had
> knowledge of the hazing problem within Greek fraternities and was deliberately
> indifferent to the risk this posed to male Greek students by a policy of general
> inaction to fraternity violations as opposed to strong corrective action taken in
> response to sorority violations. The Court finds that, as in *Baylor*, if these facts are
> proven, a jury may infer that LSU's policy created the heightened risk to Greek
> male students of serious injury or death by hazing, thereby inflicting the injury
> alleged herein. Accordingly, LSU's Motion to Dismiss shall be denied as to the
> Title IX claims asserted.[75]

As in *Baylor* and *Gruver*, Plaintiffs have pled substantial facts indicating that LSU had

knowledge of its Title IX failures and not only failed to remedy them but in fact perpetuated them.

Thus, building on this Court's own precedent, Defendant's motion should be denied.

### iv.  Plaintiffs' Title IX retaliation claim should not be dismissed

Unlike many federal and state civil rights statutes, Title IX does not expressly address

retaliation. In *Jackson v. Birmingham Board of Education*, the Supreme Court held that retaliation

against a person who complains about sex discrimination is itself a form of discrimination "on the

basis of sex" forbidden by Title IX.[76] Applying *Jackson*, courts have recognized the following

elements to support a claim for Title IX retaliation: (1) a person engaged in protected activity, (2)

---

[75] *Gruver v. State*, 401 F.Supp.3d 742, 762 (M.D. La. 2019)
[76] *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005).

the school took a materially adverse action against that person, and (3) that there was a "but-for" causal connection between the protected activity and the materially adverse action.[77] The Supreme Court has defined retaliation as an intentional act in response to a protected action.[78] "The very concept of retaliation is that the retaliating party takes action against the party retaliated against after, and because of, some action of the latter."[79] Federal courts have repeatedly affirmed that retaliation is a violation of federal civil rights.[80]

To establish a *prima facie* case of Title IX retaliation in the Fifth Circuit, a plaintiff must show that they participated in activity protected by Title IX and that the defendant took an adverse action against them because of that activity.[81] "A Title IX retaliation plaintiff must show that the funding recipient or its representatives took an adverse action against them because they complained of discrimination."[82] As outlined in the Second Amended Complaint, Plaintiffs allege that LSU engaged in materially adverse actions against Plaintiffs following Plaintiffs' disclosures of sexual misconduct, such as a complete failure of the institution to properly investigate Plaintiffs' claims of sex discrimination, to initiate appropriate interim measures to ensure their safety and ongoing equal access to educational opportunities and benefits, and to implement appropriate sanctions and responsive measures to remedy the sexually hostile environment and prevent its recurrence. Plaintiffs make clear in the Second Amended Complaint that they did not become aware of some of the retaliation nor LSU's role in covering up and perpetuating the retaliation until the Husch Blackwell report was released in March 2021, which led them to make the causal

---

[77] *See, e.g.*, *Trudeau v. University of North Texas*, No. 20-40532 (5th Cir. July 9, 2021).
[78] *Jackson*, 544 U.S. at 173-74.
[79] *Fed. Mar. Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 514 (1958).
[80] *See, e.g.*, *Jackson*, 544 U.S. 167; *Peters v. Jenney*, 327 F.3d 307, 320-21 (4th Cir. 2003); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).
[81] *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864 (M.D. La. 2014).
[82] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 586 (5th Cir. 2020), citing *Sanches v. Carrollton-Farmers Branch Independent*, 647 F.3d 156 (5th Cir. 2011).

connection between the retaliation they had experienced and LSU's culpability.  For these reasons, Defendant's motion should be denied.

## II.    Plaintiff Hovis pled sufficient facts to state a claim against Defendant

### A.    Hovis' Title IX deliberate indifference claim should not be dismissed

Hovis alleges that LSU engaged in deliberate indifference against her because it failed to properly respond to her report of sexual misconduct and failed to remedy the hostile environment the misconduct created.   Defendant argues that because it took some action against Hovis' perpetrator, it could not have engaged in deliberate indifference against her.   Defendant argues, "Hovis admits that Loe was **suspended** in May 2020, meaning LSU had already taken significant disciplinary action by removing him from campus."[83]   However, as the Complaint states, the suspension was only for a fleeting three weeks—hardly a "significant disciplinary action."[84] Worse, LSU did nothing to ensure that Hovis was protected from further abuse by Loe.  Although LSU eventually gave Loe a no-contact directive six months after Hovis reported her assault, ordering Loe not to contact Hovis, he had his girlfriend contact Hovis, violating the order on two occasions.[85]  Hovis reported both incidents to LSU employees, but LSU took no action to prevent or discipline Loe for these violations, eventually allowing him to simply transfer to another institution.[86]  Over the next few months, Hovis' grades and ability to participate in her education began to suffer, and she sought help from LSU.  Despite this, LSU refused to provide her with any accommodations to remedy the hostile environment she had experienced.[87]

---

[83] Mem. in Support of Mot. to Dismiss Sec Am. Compl. 11, ECF No. 201-1. (Emphasis in original).
[84] Sec. Am. Compl. ¶ 679.
[85] *Id*. at ¶¶ 679-680.
[86] *Id*. at ¶¶ 681-682.
[87] *Id*. at ¶¶ 687-693.

In *Stukenberg v. Abbott*, the U.S. Court of Appeals for the Fifth Circuit held that "To act with deliberate indifference, a state actor must consciously disregard a known and excessive risk to the victim's health and safety."[88]  The *Stukenberg* court further held: "A municipal defendant 'must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [it] must also draw that inference."[89]  It is difficult to imagine a more clear-cut example of a known and excessive risk to a victim's health and safety than a formerly good student who had recently suffered a sexual assault and whose grades suddenly bottomed out going to a university disability services office, pleading for help and support, and having that request be rebuffed and the student turned away empty handed.  Such a response is not only not reasonable—it is unconscionable.  Thus, Defendant's motion should be denied.

### B.  Hovis' Title IX hostile environment claim should not be dismissed

Hovis suffered a hostile environment at LSU because Defendant argues: "Hovis must show that the alleged harassment was so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school and that the funding recipient was deliberately indifferent this harassment."[90]  Here, Defendant cites generally to *Davis v. Monroe County Board of Education*, with no specific page reference.  Defendant appears to conflate the standard of proof required for a hostile environment claim with the standard of proof required for a deliberate indifference claim.[91]  Nowhere in *Davis,* nor in any other case known to Plaintiffs does the U.S. Supreme Court—or any other court—require that a plaintiff arguing that they suffered a hostile environment prove both that the alleged harassment

---

[88] *Stukenberg v. Abbott*, 907 F.3d 237, 252 (5th Cir. 2018) (*quoting Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004)).
[89] *Id*. (internal citations omitted).
[90] Mem. in Supp. of Mot. to Dismiss Second Am. Compl. 11, ECF No. 201-1.
[91] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).

they suffered was so severe, pervasive, and objectively offensive that it deprived a victim of educational opportunities and that a defendant was deliberately indifferent to that harassment. These are two separate claims.  A hostile environment claim only requires a plaintiff who experienced student-on-student sexual harassment to prove that the harassment was "severe, pervasive, and objectively unreasonable."[92]

Defendant entirely misstates and minimizes the educational harm suffered by Hovis: "Hovis claims she could not attend a class near the football stadium because of her fear of seeing Loe, and that she failed a class because she did not attend a midterm exam due to stress."[93]  In fact, Hovis alleges not only that those two harms occurred but that her grades suffered significantly, that she had difficulty even making it to her classes, that she ended up failing and having to pay to retake a class, that her anxiety over seeing Loe was so overwhelming that she found it nearly impossible to attend a class that took place in a building near the football stadium, and that she had to start seeing a psychiatrist to seek accommodations and medical intervention for her PTSD, generalized anxiety disorder, depression, and panic disorder.[94]  Hovis has pled sufficient facts to prove that the harassment she experienced was severe, pervasive, and objectively unreasonable. Thus, Defendant's motion should be denied.

## III.    Plaintiffs are entitled to seek punitive damages

Defendant correctly argues that punitive damages are not available under Title IX. However, punitive damages are available pursuant to other causes of action identified by Plaintiffs in the Second Amended Complaint.  Plaintiffs are therefore entitled to seek punitive damages.

---

[92] Id. at 652.
[93] Mem. in Supp. of Mot. to Dismiss Second Am. Compl. 11, ECF No. 201-1.
[94] Second Am. Compl. ¶¶ 683-698, ECF No. 182.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College's Motion to Dismiss.

Respectfully Submitted,

**s/Catherine E. Lasky**
Catherine E. Lasky (La. Bar 28652)
Endya L. Hash (La. Bar 38260)
Katie Lasky Law
619 Homedale Street
New Orleans, Louisiana 70124
P: (504) 584-7336
F: (504) 375-2221
katie@katielaskylaw.com
endya@katielaskylaw.com

**s/Elizabeth K. Abdnour**
*Pro Hac Vice*
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
Telephone: (517) 292-0067
Fax: (517) 709-7700
elizabeth@abdnour.com

**s/Karen Truszkowski**
*Pro Hac Vice*
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
Telephone: (844) 534-2560
Fax: (800) 531-6527
karen@temperancelegalgroup.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on March 14, 2022, I have electronically filed the above and foregoing with the Clerk of the Court by using the CM/ECF system, which will provide a true and correct copy of the foregoing to all counsel of record by email.

<u>s/Elizabeth K. Abdnour</u>
Elizabeth K. Abdnour
Attorney at Law