**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ABBY OWENS, ET AL.**<br>*Plaintiff* | **Case No.: 21-242** |
| | **Division WBV-SDJ** |
| **v.** | |
| | **JUDGE WENDY B. VITTER** |
| **BOARD OF SUPERVISORS OF**<br>**LOUISIANA STATE UNIVERSITY**<br>**AND AGRICULTURAL AND**<br>**MECHANICAL COLLEGE, ET AL.**<br>*Defendant* | **MAGISTRATE JUDGE JOHNSON** |
| | **JURY DEMANDED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT MIRIAM SEGAR'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch (collectively, "Plaintiffs"), through undersigned counsel, respectfully submit this Opposition to Defendant Miriam Segar's ("Defendant" or "Segar") Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion") (ECF No. 202). Plaintiffs' factual allegations properly state claims against Segar and the Motion must be denied.

**STATEMENT OF FACTS**

Plaintiffs filed a complaint in this Court alleging serious, systemic violations within the LSU Title IX program which stemmed from a purposefully deficient sexual misconduct and Title IX reporting scheme which LSU and its employees knowingly kept separate and apart from LSU's official Title IX Office to keep legitimate sexual assault claims within the athletics department and outside of the normal reporting process to protect LSU athletics and its student athletes.[1]  This scheme stymied LSU's overall Title IX reporting system, successfully insulated coaches and

---

[1] Second Am. Compl. ¶ 25, ECF No. 182.

1

players within LSU's athletic programs from legitimate sexual assault claims and allowed the athletics department to continue operating unhindered to reach levels of success the program wouldn't have reached otherwise.[2]  This scheme allowed the University to reap the rewards of the football program's incredible success – including, but not limited to, a national championship, unprecedented increases in revenue, increases in merchandise and ticket sales, increases in TV contracts, increases in admission applications, and increases in alumni donations.[3]

Plaintiffs allege that the Defendants in this action repeatedly engaged in discriminatory, retaliatory, and other unlawful actions in their interactions with Plaintiffs and in response to Plaintiffs' reports of Title IX violations and violations of LSU's Code of Student Conduct, thereby violating their own policies.[4]  The LSU Title IX Policy identifies the following individuals as Responsible Employees: "Any employee given the duty of reporting actual notice of incidents of sexual violence or any other misconduct prohibited by this policy."[5]  The Title IX Policy requires that Responsible Employees who receive notice or witness incidents of Sexual Misconduct must promptly notify the Title IX Campus Coordinator.[6]  In a 2017 audit entitled "Oversight and Prevention of Sexual Misconduct (Multi-Campus)" completed by LSU's Office of Internal Audit, auditors made the following findings, among others: (1) additional procedures may be required to ensure "responsible employees" have been identified and understand their reporting obligations under Title IX; (2) Policies, procedures, and publications related to Title IX are not sufficient to meet institutional obligations outlined by OCR; (3) Published contact information for Title IX Campus Coordinators is incomplete and/or not widely communicated (all campuses except LSU

---

[2] *Id*. at 26.
[3] *Id*. at 27.
[4] *Id*. at 36.
[5] *Id*. at 34.
[6] *Id*. at 33.

A&M); and (4) that the University currently does not have policy or guidelines in the area of challenges associated with romantic or dating relationships.[7]  These findings were reflected in the Plaintiffs' personal experiences, in which they reported Title IX violations to the individual defendants in this action, who then failed to appropriately respond, failed to appropriately report their complaints to the Title IX Coordinator, and retaliated against the individuals who had made the reports.[8]

Plaintiffs allege that the training LSU provided for students and employees on its sexual misconduct and anti-discrimination policies, definitions, and investigation and reporting procedures falls far short of what is considered industry standard in terms of educating community members at higher education institutions about their rights and obligations with respect to sexual misconduct and sex discrimination on campus.[9]  There are numerous consulting and training resources available to higher education administrators to assist them with the task of training their campuses on sexual misconduct prevention and response as required by Title IX, the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act"), and federal guidance, all of which were available to Defendants as a matter of basic due diligence.[10] Institutions the size and scale of LSU generally provide much more comprehensive training to students and employees to inform them of their rights and obligations under the institution's Title IX Policy than LSU did.[11] LSU's failure to comply with even the most basic of Title IX obligations has been, in the words of Louisiana State Representative Paula Davis, "a major screw-up."[12] In the words of former LSU President Galligan, "We failed those who it was our first duty to protect[,]"

---

[7] *Id.* at ¶ 70.
[8] *Id.* at ¶¶ 114, 214, 215, 230, 299-310, 422-425, 481, 482, 484-487, 493, 518-526, 531-538, 681, 968, 988.
[9] *Id.* at ¶ 37.
[10] *Id.* at ¶ 38.
[11] *Id.* at ¶ 39.
[12] *Id.* at ¶ 78.

"it was an example of institutional betrayal[,]" and  "I am ashamed."[13]

In November 2020, LSU retained the Husch Blackwell law firm to investigate the school's handling of several Title IX-related incidents as well as LSU's Title IX policies and procedures.[14] On March 5, 2021, Husch Blackwell's investigative report and findings (hereinafter, the "Husch Blackwell report") were publicly released and reported the following conclusions: (1) "The University did not handle various items identified in the *USA Today* article in a manner consistent with obligations under Title IX, widely recognized best practices, and/or University policy;" (2) "Various incidents of athletics-related misconduct [had] not been appropriately reported to the University's Title IX Coordinator; (3) there was "a lack of reporting prior to November 2016;" (4) "Institutional reporting policy and training have been unclear for years;" and (5) "The University's Title IX Office has never been appropriately staffed or provided with the independence and resources to carry out Title IX's mandates…."[15]  Husch Blackwell found that LSU did not follow federal laws and regulations, best practices, or even its own policies and procedures in cases of reported sexual misconduct.[16] At a university level, Husch Blackwell found that LSU lacked effective Title IX leadership and was slow to adopt Title IX policies, hire personnel, and meaningfully address concerns identified by community members and internal and external reviews.[17]

LSU has three policies which guide the University's response to potential Title IX violations – Policy Statement 1: Equal Opportunity ("Equal Opportunity Policy"), last revised April 1, 2016; Policy Statement 73: Sexual Harassment ("Sexual Harassment Policy"), last revised

---

[13] *Id.* at ¶ 79.
[14] *Id.* at ¶ 47.
[15] *Id.* at ¶¶ 47-54.
[16] *Id.* at ¶ 55.
[17] *Id.* at ¶ 56.

April 1, 2016; and Permanent Memorandum 73: Title IX Policy Prohibiting Sexual Misconduct

("Title IX Policy"), last revised August 14, 2020.[18]

> The Equal Opportunity Policy reads:
>
> The University reaffirms and emphasizes its commitment to provide a workplace free from discrimination and harassment and to provide a means to address complaints of discrimination and/or harassment. LSU also reiterates its commitment and responsibility to protect its employees and students from discrimination, harassment, and retaliation for participating in the complaint process….
>
> All complaints of discrimination and/or harassment will be addressed. Substantiated cases shall result in appropriate discipline or other corrective action. The severity of the disciplinary action shall be consistent with the seriousness of the act of discrimination and/or harassment….
>
> The President, Vice Presidents, Deans, Directors, Department Heads, and all other supervisory employees are responsible for assisting the University in the implementation of this policy.[19]

The Title IX Policy includes the following statement of purpose:

> Sexual Misconduct violates an individual's fundamental rights and personal dignity and will not be tolerated. LSU prohibits and is committed to an environment free of discrimination on the basis of sex and Sexual Misconduct. This policy affirms these principles and provides recourse for individuals whose rights have been violated.
>
> LSU will take prompt action to prevent prohibited conduct, discipline those who violate this policy, prevent recurrence of prohibited behavior, and effect equitable remedies.
>
> LSU will affirmatively promote prevention, awareness and training programs to encourage individuals to report concerns or complaints. Everyone has a responsibility to prevent and report acts of prohibited conduct. The entire LSU community is responsible for fostering a welcome environment conducive to learning.[20]

The Sexual Harassment Policy includes the following statement of purpose: "To state the

---

[18] These documents are on file with Plaintiffs' counsel.
[19] Second Am. Compl. ¶ 30, ECF No. 182.
[20] *Id.* at ¶ 32.

University policy and responsibility regarding sexual harassment as related to its employees and to its students who believe they have been harassed by an employee."[21] Defendant repeatedly engaged in discriminatory, retaliatory, and other unlawful actions in her interactions with Plaintiffs and in response to Plaintiffs' reports of Title IX violations and violations of LSU's Code of Student Conduct, thereby violating LSU's own policies.

Not only was LSU's Title IX Office woefully inadequate to meet the needs of its campus and well outside the scope of industry standards for an institution of LSU's size, but LSU handled Title IX complaints against student-athletes differently than complaints against non-athletes.[22] LSU employees, including Segar, participated in this scheme. Plaintiffs allege that Title IX complaints against student-athletes at LSU were purposefully buried or diverted by LSU and its employees, including Segar, to ensure that those complaints were never properly investigated or addressed, and the student-athletes were not negatively impacted or prevented from concentrating on their athletics, all of which benefited LSU and caused further harm to Plaintiffs.[23] The actions and inactions of LSU and its employees, including Segar, in response to Plaintiffs' reports of Title IX violations subjected Plaintiffs to additional harassment and created a sexually hostile environment on campus.[24] Plaintiffs suffered harm as a direct and indirect result.[25]

---

[21] *Id.* at ¶ 35.
[22] *Id.* at ¶ 43.
[23] *Id.* at ¶ 44.
[24] *Id.* at ¶ 45.
[25] *Id.* at ¶ 46.

## LAW AND ARGUMENT

I.  **Plaintiffs' factual allegations properly state a claim against Segar and must not be dismissed under Federal Rule of Civil Procedure 12(b)(6)**

A.  **Applicable legal standard**

"It is well-settled in this Circuit that motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and are rarely granted."[26] There exists "a powerful presumption against rejecting pleadings for failure to state a claim[,]"[27] and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[28] Courts accept " all well-pleaded facts as true and [view] those facts in the light most favorable to the plaintiff[]."[29] In deciding a Rule 12(b)(6) motion to dismiss, this Court may take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[30] The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.[31]

A complaint "does not need detailed factual allegations…but must provide the [Plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level."[32] That is, "a complaint must contain sufficient factual

---

[26] *Pride Centric Resources, Inc.* v. *LaPorte, et al.*, 2021 WL 3741529, at *2 (E.D. La. Aug. 24, 2021) (citing *Financial Acquisition Partners LP* v. *Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997))).

[27] *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 609 (W.D. Tex. 2017) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009))).

[28] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[29] *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (quotation omitted).

[30] *Pride Centric Resources, Inc.* 2021 WL 3741529, at *2 (citing *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008)).

[31] *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007)).

[32] *Hernandez*, 274 F. Supp. 3d at 609 (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" meaning the court can draw the reasonable inference that the defendant is liable for the misconduct alleged.[33] Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[34]

### B. **Plaintiffs' claims were timely filed**

Defendant argues that Plaintiffs' claims are time-barred because their original Complaint was filed outside the prescription period.  This is not the case, as Plaintiffs did not become aware of Defendant's violations of their rights until the release of the Husch Blackwell report.

### i. *Plaintiffs first became aware of Defendant's failures in March 2021*

The specific question of whether new information coming to light about an educational institution's mishandling of previously undisclosed Title IX reports could cause Plaintiffs to become aware of harms they suffered by the institution was addressed by the United States District Court for the Western District of Texas in the 2017 case, *Doe I v. Baylor*.[35]  In *Baylor*, "Plaintiffs assert…that they had no reason to know of Baylor's alleged causal connection to their assaults until the spring of 2016, when media reports regarding the rampant nature of sexual assault on Baylor's campus first came to light."[36]  The facts of the *Baylor* case mirror the facts of the instant matter.  In *Baylor*, multiple plaintiffs were aware on some level that they had suffered harms but were not aware of the causal connection between the individual harms and the institution's complicity in such harms nor the systemic failures in the Baylor Title IX program.  The *Baylor* court found:

> In the instant case, Plaintiffs allege Baylor and its staff repeatedly misinformed victims of sexual assault as to their rights under Title IX; failed to investigate

---

[33] *Id*. at 678 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Meador*, 911 F.3d at 264 (quotation omitted).
[34] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).
[35] *Jane Doe 1, et al. v. Baylor Univ.*, 240 F.Supp.3d 646 (W.D. Tex. 2017).
[36] *Id*. at 663.

reported sexual assaults; and discouraged those who reported sexual assaults from naming their assailants or otherwise coming forward….

These alleged facts, if construed as true, could allow a jury to infer that Baylor's policy or custom of inadequately handling and even discouraging reports of peer sexual assault created a heightened risk of sexual assault, thereby inflicting the injury of which Plaintiffs complain.[37]

The first paragraph of the above quote could easily have been written to describe the present matter rather than the *Baylor* case.  Not until the publication of the Husch Blackwell report in March 2021 could Plaintiffs in this case have known that they were "misinformed" as to their rights under Title IX. Simply because Plaintiffs knew they had been sexually assaulted, physically assaulted, or harassed does not mean that they had any knowledge as to the connexity of LSU's flawed Title IX program to those injuries. This is supported by the District Court's opinion in *Baylor*:

"Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,'" and while the limitations period is borrowed from state law, "the particular accrual date of a federal cause of action is a matter of federal law." "[U]nder federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." "[A] plaintiff's awareness encompasses two elements: (1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." Id. "'[A]wareness' [of the existence of the injury and causation]…does not mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further.'" Thus, for awareness of causation, a plaintiff "must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection…or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury."[38]

Plaintiffs' claims were timely filed.  Until the release of the Husch Blackwell report in March 2021, Plaintiffs did not have the requisite knowledge to bring the claims before learning

---

[37] *Id.* (internal citations omitted).
[38] *Id.* at 662-663 (internal citations omitted) (*King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (2015) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)), (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)), (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001))), (quoting *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983)).

that their injuries were causally connected to actions and inactions by LSU. As pled in Plaintiffs'
complaints, the Plaintiffs did not have "knowledge of facts" that would lead them to think that
their treatment by LSU was due to a systemic failure of the Title IX program nor that there was a
"causal connection" between their injuries and the acts of LSU. Again, simply because Plaintiffs
had been injured by their harassers and abusers does not give rise to claims against LSU. Not until
Plaintiffs learned, through the Husch Blackwell report, that LSU could have and should have
assisted them, or worse, that LSU actively concealed their complaints, did their claims against
LSU accrue. For example, Plaintiffs Owens, Richardson, Robertson, Brennan, Lewis, Doe and
Kitch could not have known until the release of the Husch Blackwell report that their "reports of
sexual assault…were not investigated by LSU, Defendants Stewart or Sanders, and were not
properly reported by Defendants Ausberry or Segar or any of the leaders of the athletic department
or any other unit at LSU.[39]

In addition, the Second Amended Complaint contains detailed allegations of the specific
**facts** that **each** of the Plaintiffs could not have known until the publication of the Husch Blackwell
report, less than one year before the filing of Plaintiff's original complaint including the following:

> 240. Along with the information outlined *supra*, until the release of the Report in
> March 2021, Richardson could not have known that:
>
> > a. LSU, including specifically Defendants Stewart, Sanders, and Segar, had
> > specific knowledge of the pervasive sex discrimination and retaliation she
> > and others suffered;
> >
> > b. LSU, specifically Defendant Segar, had actual knowledge of other
> > survivors that had reported abuse by John Doe and John Coe, meaning LSU
> > had specific knowledge of a heightened risk of assault by both John Doe
> > and John Coe;
> >
> > c. LSU and its employees failed to train Richardson on the resources
> > available to her as a survivor, even though these same people knew the

---

[39] Second Am. Compl. ¶ 1070, ECF No. 182.

Athletics Department was an environment with a higher risk of sexual misconduct; and

d. LSU's Title IX Policy is meant to prevent the specific emotional distress that Richardson endured.[40]

277. It was not [until] Robertson read the Husch Blackwell Report that she realized that John Doe's name was not included in any of the records of her rape, even though Defendant Segar, Orgeron, and Fuentes-Martin all knew John Doe's identity.[41]

287. Along with the information outlined *supra*, until the release of the Report in March 2021, Robertson could not have known that:

a. LSU and its employees, including specifically Defendant Segar, had specific knowledge of the pervasive harassment and retaliation she and others suffered;

b. John Doe assaulted several more LSU students following Robertson's report;…

d. LSU and its employees failed to train Robertson on the resources available to her as a survivor; and

e. LSU's Title IX Policy is meant to prevent the specific emotional distress that Robertson endured.[42]

325. Along with the information outlined *supra*, until the release of the Report in March 2021, Brennan could not have known that:

a. LSU, including specifically Defendant Segar, had actual knowledge of other survivors that had reported abuse by John Doe, meaning LSU had specific knowledge of a heightened risk of assault by John Doe;

b. LSU, including specifically Defendant Segar, had specific knowledge of the pervasive harassment and retaliation she and others suffered;

c. John Doe assaulted more LSU students following Brennan's report;

d. LSU and its employees failed to train Brennan on the resources available to her as a survivor, even though these same people knew the Athletics Department was an environment with a higher risk of sexual misconduct; and

---

[40] *Id*. at ¶ 240.
[41] *Id*. at ¶ 277.
[42] *Id*. at ¶ 287.

e. LSU's Title IX Policy is meant to prevent the specific emotional distress that Brennan endured.[43]

360. Along with the information outlined *supra*, until the release of the Report in March 2021, Owens could not have known that:

a. LSU, including specifically Defendant Segar, had actual knowledge of others who had reported abuse by John Doe;…

c. John Doe assaulted more LSU students following Owens's report;

d. LSU employees, including Defendant Stewart, commonly concealed reports of sexual misconduct from LSU's Title IX Office;

e. LSU and its employees failed to train Owens on the resources available to her as a survivor, even though these same people knew the Athletics Department was an environment with a higher risk of sexual misconduct; and

f. LSU's Title IX Policy is meant to prevent the specific emotional distress that Owens endured.[44]

554. Along with the information outlined *supra*, until the release of the Report in March 2021, Plaintiff Lewis could not have known that:

a. LSU, including specifically Defendants Segar, Julia Sell, Mike Sell, and Ausberry, had actual knowledge of other survivors that had reported abuse by John Coe, meaning LSU had specific knowledge of a heightened risk of assault by John Coe;…

h. LSU and its employees failed to train Plaintiff Lewis on the resources available to her as a survivor, even though these same people knew the Athletics Department was an environment with a higher risk of sexual misconduct; and

i. LSU's Title IX Policy is meant to prevent the specific emotional distress that Plaintiff Lewis endured.[45]

595. Along with the information outlined *supra*, until the release of the Report in March 2021, Johnson could not have known that LSU and its employees failed to train Johnson on the resources available to her as a survivor, even though these same people knew the Athletics Department was an environment with a higher risk

---

[43] *Id*. at ¶ 325.
[44] *Id*. at ¶ 360.
[45] *Id*. at ¶ 554.

of sexual misconduct; and that LSU's Title IX Policy is meant to prevent the specific emotional distress that Johnson endured.[46]

697. Along with the information outlined *supra*, until the release of the Report in March 2021, Hovis[47] could not have known that LSU, including specifically Defendants Stewart and Segar, had specific knowledge of the pervasive harassment and retaliation Hovis and others suffered; and that LSU's Title IX Policy is meant to prevent the specific emotional distress that Hovis endured.[48]

740. Along with the information outlined supra, until the release of the Report in March 2021, Kitch could not have known that:

    a. LSU had specific knowledge of the pervasive harassment and retaliation Kitch and others suffered;

    b. LSU and its employees failed to train Kitch on the resources available to her as a survivor; and

    c. LSU's Title IX Policy is meant to prevent the specific emotional distress that Kitch endured.[49]

915. Until the release of the Report in March 2021 and the Louisiana Senate Committee Hearings, Plaintiffs were unable to know, and in fact Defendants had concealed from Plaintiffs, that the Board of Supervisors had actual knowledge of the pervasive harassment creating an objectively hostile and abusive environment in which Title IX violations were knowingly not reported properly and which was permeated with discriminatory intimidation, ridicule, and insult which negatively altered the conditions of Plaintiffs' educational environment.[50]

1001. Until the release of the Report in March 2021 and the Louisiana Senate Committee Hearings, Owens, Richardson, Plaintiff Lewis, Johnson, Andries, and Plaintiff Doe were unable to know about the retaliation they suffered from LSU Responsible Employees following good-faith Title IX violation disclosures.[51]

1056. Until the release of the Report in March 2021, Plaintiffs were unable to know, in fact Defendants concealed from Plaintiffs, that the individual Defendants were retaliating against them for exercising their Constitutional right to free speech.[52]

1084. Until the release of the Report in March 2021, Plaintiffs were unable to know, in fact Defendants concealed from Plaintiffs, that the individual Defendants were

---

[46] *Id*. at ¶ 595.
[47] Hovis' experiences were specifically outlined in the Husch Blackwell report under the name "Respondent H." *See* Second Am. Compl. ¶ 696, ECF No. 182.
[48] *Id*. at ¶ 697.
[49] *Id*. at ¶ 740.
[50] *Id*. at ¶ 915.
[51] *Id*. at ¶ 1001.
[52] *Id*. at ¶ 1056.

retaliating against them for exercising their Constitutional right to Equal Protection.[53]

1117. Until the publication of the Report in March 2021 and the following Louisiana Senate Committee Hearing, Plaintiffs were unable to know, in fact Defendants concealed from Plaintiffs, that all Defendants intentionally denied Plaintiffs of their substantive and procedural due process rights regarding the events outlined *supra*.[54]

This Court and the Fifth Circuit have recognized that a complaint cannot be dismissed at the Rule 12(b) stage based upon the statute of limitations "unless the necessity of doing so is apparent on the face of the pleadings."[55] Because it is "apparent" from Plaintiffs' Second Amended Complaint that they did not learn of their claims against Defendant until the publication of the Husch Blackwell report, dismissal pursuant to Rule 12(b) cannot be granted.

As the *Baylor* court held, this same analysis applies to Plaintiffs' heightened risk claims:

While it is plausible that Plaintiffs were aware of their heightened-risk claims at the time of their assaults, it is also plausible that they did not have reason to further investigate those claims until 2016. Thus, accepting the allegations in the Complaint as true, the claims for heightened-risk liability did not accrue until spring 2016, and the two-year statute of limitations had not run by June 15, 2016, when this case was first filed.[56]

As for the *Baylor* Plaintiffs' deliberate indifference claims, the court held: "Because it is not 'evident' from the Complaint that the post-reporting claims of Does 1, 3, 4, 8, 9, and 10 are foreclosed by the statute of limitations, the Court denies Defendant's motion to dismiss with respect to these plaintiffs."[57]  Likewise, the Plaintiffs in the instant matter were not aware that and had no reason to further investigate whether Defendant was culpable for the harms they had

---

[53] *Id*. at ¶ 1084.
[54] *Id*. at ¶ 1117.
[55] *J.M. Smith Corp. v. Ciolino Pharmacy Wholesale Distributors, LLC*, 2015 WL 2383841, at *3 (E.D. La. May 19, 2015)(Zainey, J.)(citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.") (Internal citations omitted)).
[56] *Id*. at 663.
[57] *Id.* at 664.

suffered due to the sexual misconduct they experienced and the lack of appropriate response from individual LSU employees.[58]

### ii. The theory of contra non valentem controls the initiation of the prescription period for Plaintiffs' claims

In the alternative, Defendant's assertion that claims arising from conduct pre-dating April 26, 2020, are time-barred also fails as the causation between Plaintiffs' injuries and Defendant's actions or inactions were not known or reasonably knowable by these Plaintiffs until the release of the Husch Blackwell report in March 2021 because those actions and inactions were actively concealed by the Defendant from Plaintiffs. The report details numerous significant actions and inactions by Segar, including her taking on the role of *de facto* Title IX Coordinator for the athletics department, her failure to appropriately respond to and report allegations of Title IX violations, and her ridicule and minimizing of reports that she received from some Plaintiffs.

The theory of *contra non valentem*, from the Latin expression *contra non valentem agere nulla currit praescriptio*, means "a prescription does not run against one who is unable to act" and is a jurisprudential doctrine under which prescription may be suspended.[59] *Contra non valentem* provides that "prescription does not run against one who is ignorant of the facts upon which their cause of action is based, and is an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues."[60] The doctrine of *contra non valentem* applies only in exceptional circumstances, and must be strictly construed.[61] The doctrine does not exempt the plaintiff if the plaintiff's ignorance is attributable to the plaintiff's

---

[58] *See also Lozano v. Baylor Univ.,* 408 F.Supp.3d 861, 901 (W.D. Tex. 2019) ("…the Court finds it plausible that Lozano had no reason to further investigate her heightened risk claim and discover the nature of the alleged injury until the release of Baylor's Findings of Fact and the subsequent media coverage in 2016…").
[59] *In re Manus,* 45 So.3d 1099, 1129-1130 (La. App. 2010).
[60] *Jackson v. Jefferson Par. Clerk of Ct.*, 981 So.2d 156, 160 (La. App. 2008).
[61] *Id.*

own willfulness or neglect. A plaintiff "will be deemed to know what he could by reasonable diligence have learned."[62]

Plaintiffs did not and could not have reasonably known that they had causes of action against LSU until the release of the Husch Blackwell report in March 2021. The investigation was conducted by Husch Blackwell, "a highly respected firm with exceptional expertise in these types of investigations"[63] which was hired by LSU and provided with documents and cooperation by Defendant and LSU employees—the extensive findings of the Husch Blackwell report, all of which are relevant to Plaintiffs' claims and none of which could have been known to Plaintiffs prior to the Report's publication are outlined in Paragraphs 47 through 83 of the Second Amended Complaint. The investigation was completed using ample resources, including LSU's permission to interview its employees and review its records, over the course of several months, and with access to internal and confidential information, none of which Plaintiffs would have or could have been provided. Within the year—in fact, within two months of the release of the Husch Blackwell report—this suit was filed. In addition, Plaintiffs have pled how LSU employees reinforced that Plaintiffs should not report their assaults to the University.[64]

The causal connection between the harms Plaintiffs suffered and LSU and its employees' role in such harms could not have been discovered by Plaintiffs through a good faith effort, as LSU and its employees went to great lengths to ensure students did not understand their rights or LSU's obligations under Title IX. LSU and its employees accomplished this by failing to provide proper training to both students and employees; failing to initiate investigations as appropriate; and allowing inappropriate, untrained staff members to do their own *ad hoc* investigations. Plaintiffs

---

[62] *Id., citing Corsey v. State of Louisiana, Through the Department of Corrections,* 375 So.2d 1319, 1322 (La. 1979).
[63] *Title IX Review,* Louisiana State University (2021), https://www.lsu.edu/titleix-review/index.php.
[64] *See, e.g.,* Second Am. Compl. ¶¶ 133, 164, 174, 240, ECF No. 182.

had ignorance of what should have been done and the support and resources that they were entitled to receive. Plaintiffs didn't even know that they could expect anything different from their university because LSU's Title IX resources were so deficient. Plaintiffs did not know that LSU and its employees chose to underfund and neglect its Title IX responsibilities; that they should have provided them with more resources; or most egregiously, in many cases, that they purposefully buried or ignored Plaintiffs' reports of assault and abuse. Thus, the doctrine of *contra non valentem* must apply and Defendant's motion should be denied.

### C. Defendant Segar is not entitled to qualified immunity

Defendant argues that she is entitled to qualified immunity because she was not put on notice that failing to report a Title IX case would be a violation of Plaintiffs' constitutional rights. "Clearly established statutory or constitutional rights" refers to rights that are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[65] There need not be one case specifically stating which rights qualify as "clearly established," but "existing precedent must have placed the statutory or  constitutional question beyond debate."[66] Officials who are either plainly incompetent or knowingly violate the law are not protected by qualified immunity.[67] It is important to note that "clearly established law" does not need to be defined "at a high level of generality," but must be defined by determining "whether the violative nature of particular conduct is clearly established."[68] The second prong of the qualified immunity analysis requires this court to determine "whether the defendants' conduct was objectively reasonable in light of 'clearly established' law at the time of the alleged violation."[69]

---

[65] *Reichle v. Howards*, 566 U.S. 658, 664 (2012).
[66] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).
[67] *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015).
[68] *Ashcroft*, 563 U.S. at 742.
[69] *Kennedy v. Tangipahoa Par. Library Bd. of Control*, 224 F.3d 359, 377 (5th Cir. 2000).

Segar acted unreasonably by failing to appropriately investigate and report sexual misconduct allegations and by acting improperly as a *de facto* Title IX Coordinator for the athletic department. Segar was a Responsible Employee under LSU's Title IX Policy, and she should have known that ignoring reports of sexual misconduct would have a chilling effect on victims' speech, that treating victims of student-athletes differently than other victims would violate their equal protection and substantive due process rights, and that refusing to follow published procedures would violate victims' procedural due process rights.

### D.  Plaintiffs have plausibly pled causes of action under 42 U.S.C. § 1983

Plaintiffs have plausibly pled causes of action against Segar under 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[70] Defendant's motion must be denied as Plaintiffs have adequately pleaded facts supporting that Segar's actions under the color of state law caused Plaintiffs to suffer violations of constitutional and federal rights. Segar does not dispute that she is a person acting under the color of state law at all relevant times. To state an individual capacity claim under Section 1983, a plaintiff must: (1) "establish that the defendant was either personally involved in a constitutional deprivation" *or* (2) establish "that his wrongful actions were causally connected to the constitutional deprivation."[71] Thus, each Plaintiff must only establish that (1) they suffered a deprivation of constitutional rights and (2) that Segar was either personally involved in that deprivation, or that Segar's wrongful actions were causally connected to their constitutional deprivations. Further, the United States Supreme Court has continued to rule that no

---

[70] *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254–2255 (1988).
[71] *La. Cleaning Sys.*, 2015 U.S. Dist. LEXIS 152077 at *16 (citing *James*, 535 F.3d at 373).

heightened pleading standard applies to civil rights claims or qualified immunity claims.[72] Plaintiffs have plausibly pled numerous constitutional claims under 42 U.S.C. § 1983 against Segar.

### i.    *Plaintiffs' First Amendment retaliation claim should not be dismissed*

Plaintiffs Owens, Richardson, Lewis, Johnson, Andries, and Jane Doe have each established that they have suffered a deprivation of constitutional rights in the form of First Amendment retaliation, and that Segar was either personally involved in that deprivation, or that Segar's wrongful actions were causally connected to their constitutional deprivations. To establish a First Amendment retaliation claim, "a plaintiff must show that: (1) [they were] engaged in constitutionally protected activity; (2) the defendant's actions caused [them] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct."[73]

Plaintiffs' disclosures of sexual misconduct are constitutionally protected form of speech pursuant to the First Amendment of which a reasonable public official would have known. Across the country, including within the Fifth Circuit, it has been clearly established that students may exercise their First Amendment rights on any topic unless doing so would "materially and substantially disrupt" school operations.[74] It has also been established for decades that school

---

[72] *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) ("[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim."). *See also Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) ("[P]leadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in Iqbal. * * * [T]here is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints. All that remains is the Rule 9 heightened pleading standard.").
[73] *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016) (*citing Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).
[74] *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272 (1988); *Healy v. James*, 408 U.S. 169, 189 (1972).

officials may not retaliate against students based on their protected speech.[75] More specifically, it is clearly established law that students and student-employees are free to report claims of sexual assault without fear of retaliation.[76]

Plaintiffs Owens, Richardson, Lewis, and Johnson have also alleged that they were deprived of this constitutional right by Segar's reactions to disclosures of sexual misconduct that chilled Plaintiffs from reporting sexual misconduct or voicing concerns about LSU's handling of student sexual misconduct and Title IX complaints. Segar was personally involved in the deprivation of Plaintiffs Robertson and Lewis' rights when she ignored Robertson's report of Plaintiff Lewis' abuse and told Plaintiff Lewis that retaliation is to be expected following a disclosure of domestic violence.[77] Although Segar lacked direct personal involvement in the deprivation of Plaintiffs Owens and Johnson's disclosures of sexual misconduct, her wrongful actions and inactions were causally connected to their constitutional deprivations due to the systemic, coordinated nature of failures within the Title IX program at LSU.

Plaintiffs Owens, Brennan, Lewis, and Johnson all experienced First Amendment retaliation when disclosing sexual misconduct to officials in LSU's athletics department. Julia Sell, an employee of LSU athletics, told Owens' father that she did not believe that Owens was raped and failed to take any action to report the assault or help Owens.[78] Julia Sell also told Johnson to stop "worrying so much about other people" in response to Johnson's disclosure that Plaintiff Lewis was being abused and again did nothing to help Plaintiff Lewis.[79] Julia Sell then told other

---

[75] *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667 (1973).

[76] *See* 34 C.F.R. § 106.71(a) ("[n]o recipient or other person may intimidate, threaten, coerce, or discriminate against any individual . . . because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under [Title IX]"). *See also Landesberg-Boyle*, 2004 U.S. Dist. at *17, *Wilson*, 973 F.2d at 1268-69 and *Alvey*, No. 1:20-cv- 410 at *10.

[77] Second Am. Compl. at ¶¶ 215, 531-532, ECF No. 182.

[78] *Id*. at ¶ 342.

[79] *Id*. at ¶¶ 580-583.

players on the tennis team to stay away from Plaintiff Lewis.[80] Keava Soil-Cormier, an employee of LSU athletics and Segar's subordinate, began spreading office rumors about Richardson's sexual activity after Richardson disclosed John Doe's rape to Soil-Cormier and then told Richardson to apologize to her rapist's significant other.[81]  Soon after this, for unexplained reasons, Richardson was terminated from her job in the athletics department. Segar ignored Richardson's report about Plaintiff Lewis' abuse and Richardson then experienced, losing her job in the athletics department.[82]  Segar's retaliation against individuals reporting instances of sexual misconduct set the tone for her subordinates' actions and created a culture within the LSU athletics program in which retaliation was believed to be the appropriate response to a disclosure of sexual misconduct.

Plaintiffs Owens, Brennan, Richardson, Lewis, and Johnson have pleaded sufficient facts for this Court to find that Segar's violation of Plaintiffs' constitutional right to freedom of speech is plausible. Segar understood that it would be necessary to deprive female and LGBTQ+ LSU students of their constitutional rights to benefit the athletics department. Thus, she trained her subordinates to chill such disclosures as often as possible. Defendant's motion should be denied.

### ii.  *Plaintiffs' Denial of Equal Protection claim should not be dismissed*

Plaintiffs Owens, Brennan, Richardson, Lewis, Jane Doe, Robertson, Johnson, Andries, Hovis, and Kitch have each established that they suffered a deprivation of constitutional rights in the form of denial of equal protection, and that Segar was either personally involved in that deprivation, or that Segar's wrongful actions were causally connected to their constitutional deprivations. It is clearly established that failing to report or investigate allegations of sexual assault violates the Equal Protection Clause of the Fourteenth Amendment. First, "a State may not,

---

[80] *Id*. at ¶ 584.
[81] *Id*. at ¶¶ 191-197.
[82] *Id*. at ¶ 214.

of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."[83] More recently, the Supreme Court heard a case in which petitioners filed suit against the local school district's governing board and superintendent, alleging that their response to allegations of peer-on-peer sexual harassment of petitioners' daughter was inadequate and constituted unconstitutional sex discrimination in schools in violation of 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment.[84] The Supreme Court held that "Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools, or a substitute for § 1983 suits as a means of enforcing constitutional rights," and "§ 1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools," including in the case of school officials' inadequate responses to allegation of peer-on-peer sexual harassment.[85]

Each of the Plaintiffs have alleged that they had a clearly established right to be free from discrimination on the basis of sex pursuant to the Equal Protection Clause of the Fourteenth Amendment. Each of the Plaintiffs have also alleged that and that Segar was either personally involved in that discrimination, or that Segar's wrongful actions were causally connected to their constitutional deprivations. Specifically, Segar created a hostile environment on LSU's campus, a form of sex discrimination in itself, and purposefully concealed reports of sexual misconduct from the Title IX Coordinator. Defendant's motion should be denied.

### iii.    *Plaintiffs' Denial of Substantive and Procedural Due Process claim should not be dismissed*

Plaintiffs Owens, Brennan, Richardson, Lewis, Jane Doe, Robertson, Johnson, Andries, Hovis, and Kitch have each established that they have suffered a deprivation of constitutional

---

[83] *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989).
[84] *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 250 (2009)
[85] *Id.* at 258.

rights in the form of denial of due process, and that Segar was either personally involved in that deprivation, or that Segar's wrongful actions were causally connected to their constitutional deprivations. Plaintiffs have clearly established rights to liberty and property pursuant to the Due Process Clause of the Fourteenth Amendment. Plaintiffs have a liberty and property right in accessing their full educational opportunities and benefits, as well as in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law.

The U.S. Court of Appeals for the Fifth Circuit has held that "The Supreme Court has expanded the definition of 'liberty' beyond the core textual meaning of that term to include [not only] the ... privileges [expressly] enumerated by the Bill of Rights, [but also] the 'fundamental rights implicit in the concept of ordered liberty' and 'deeply rooted in this Nation's history and tradition' under the Due Process Clause."[86]  In *Perry v. Sindermann*, the Supreme Court clearly established the obvious principle that if public universities have mandatory disciplinary procedures and plaintiffs are eligible for the protections of those procedures, failing to follow the published procedures constitutes an unconstitutional deprivation of plaintiffs' property without due process.[87] Therefore, under the Due Process Clause, deprivation of the liberty and property interests of Plaintiffs arising out of the Code of Student Conduct, LSU's Title IX Policy, and federal law and guidance cannot occur without notice and a meaningful opportunity to be heard. Plaintiffs have pled sufficient facts to proceed with claims of violations of both substantive and procedural due process.

---

[86] *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994) (citing *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990) (citations omitted), cert. denied, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991)).
[87] *See Perry v. Sindermann*, 408 U.S. 593 (1972).

### a) Substantive Due Process

The Fourteenth Amendment to the U.S. Constitution protects fundamental liberty interests against certain governmental intrusions irrespective of the fairness of the procedures utilized. Plaintiffs have each established that they suffered a deprivation of constitutional rights in the form of denial of substantive due process due to the deprivation of their fundamental liberty interest in bodily integrity. This deprivation directly resulted from the pervasive culture of failing to respond appropriately to complaints of sexual misconduct at LSU, which Segar directly participated in fostering.

In *Doe v. Taylor Independent School District*, the U.S. Court of Appeals for the Fifth Circuit established the following test to determine whether a school official could be held liable for a subordinate employee's sexual abuse of a student:

> (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and
> (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and
> (3) such failure caused a constitutional injury to the student.[88]

While the situation here is not completely analogous, as Plaintiffs have not alleged abuse by an employee, Plaintiffs are not aware of any case law that is directly on point. Thus, Plaintiffs ask this Court to apply the *Taylor* test to the present situation and replace "subordinate" with "student." Plaintiffs have pled sufficient facts to demonstrate that Segar learned of inappropriate sexual behavior by student-athletes, demonstrated deliberate indifference to student-victims by failing to take action that was obviously necessary to prevent or stop the abuse, and that such failure caused a constitutional injury to the student-victims. Defendant thus deprived Plaintiffs of their liberty

---

[88] *Taylor Indep. Sch. Dist.*, 15 F.3d at 454.

interest in bodily integrity and caused Plaintiffs to suffer grievous loss by being denied educational benefits. Defendant's motion should be denied.

### b) Procedural Due Process

The Fourteenth Amendment prohibits state actors from depriving an individual of fundamental liberty interests without due process of law. Included within this protection are the rights to notice and a hearing when the state wishes to deprive an individual of such interests. Plaintiffs Owens, Brennan, Richardson, Lewis, Jane Doe, Robertson, Johnson, Andries, Hovis, and Kitch have each established that they suffered a deprivation of their constitutional rights in the form of a denial of procedural due process, and that Segar was either personally involved in that deprivation, or that Segar's wrongful actions were causally connected to their constitutional deprivations. Plaintiffs had a property right in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law. Unlike in *Sindermann*, Segar's enforcement of Title IX procedures was never optional. Following procedures has always been mandatory after a student makes a report of sexual misconduct. Segar should have known that Plaintiffs were entitled to LSU and its employees following LSU's own published procedures. Segar was personally involved in the deprivation of Plaintiff Lewis' due process rights when she failed to file reports with LSU's Title IX Coordinator following Richardson's disclosure of John Coe's rape of Plaintiff Lewis and John Coe's admission of sexual misconduct.[89] Although Segar lacked personal involvement in the deprivation of other Plaintiffs' procedural due process rights, Segar's wrongful actions, nonetheless, were causally connected to their constitutional deprivations.

---

[89] Second Am. Compl. ¶ 214, ECF No. 182; Compl. Ex. A 73, ECF No. 22-1.

Plaintiffs have alleged the deprivation of this constitutional right through pleading that Defendant's failure to comply with the administrative requirements of Title IX and its own policies deprived Plaintiffs of their substantive and procedural due process rights to be heard prior to depriving them of their liberty and property interests. Defendant was personally involved in, and her actions were causally connected to, this deprivation, as Defendant decided not to report or investigate Plaintiffs' reports of sexual misconduct and to deny Plaintiffs support services. Defendant thus deprived Plaintiffs of their property and liberty interests and causing Plaintiffs to suffer grievous loss by being denied educational benefits. Defendant's motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Miriam Segar's Motion to Dismiss.

Respectfully Submitted,

**s/Catherine E. Lasky**
Catherine E. Lasky (La. Bar 28652)
Endya L. Hash (La. Bar 38260)
Katie Lasky Law
619 Homedale Street
New Orleans, Louisiana 70124
P: (504) 584-7336
F: (504) 375-2221
katie@katielaskylaw.com
endya@katielaskylaw.com

**s/Elizabeth K. Abdnour**
*Pro Hac Vice*
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
Telephone: (517) 292-0067
Fax: (517) 709-7700
elizabeth@abdnour.com

**s/Karen Truszkowski**
*Pro Hac Vice*

TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
Telephone: (844) 534-2560
Fax: (800) 531-6527
karen@temperancelegalgroup.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I do hereby certify that on March 14, 2022, I have electronically filed the above and foregoing with the Clerk of the Court by using the CM/ECF system, which will provide a true and correct copy of the foregoing to all counsel of record by email.

**s/Elizabeth K. Abdnour**
Elizabeth K. Abdnour
Attorney at Law