UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ABBY OWENS, ET AL** | * | **NO.: 3:21-cv-00242** |
| | * | |
| **VERSUS** | * | **JUDGE: WBV** |
| | * | |
| **LOUISIANA STATE UNIVERSITY, ET AL** | * | **MAGISTRATE JUDGE: SDJ** |
| | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 12(B)**

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Miriam Segar (hereinafter "Segar"), who respectfully submits this Reply Memorandum in Support of her Motion to Dismiss Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b).

Segar moves to dismiss Plaintiffs' claims on the basis that the claims are time-barred and, in the alternative, because Plaintiffs have failed to state a claim against Segar for any of their allegations. A review of the Husch Blackwell Report (attached to the original Complaint and referenced in the Second Amended Complaint) (hereinafter "the Report") in conjunction with the Plaintiffs' own factual allegations demonstrate that Segar acted pursuant to the policies in effect at LSU and in the best interests of students who reported violations of LSU policies to her.

    A.    **Plaintiffs' Claims are all Time-Barred**

Plaintiffs contend they "did not become aware of Defendant's violations of their rights until the release of the Husch Blackwell report."[1] Plaintiffs also state they could not "have known they were 'misinformed' as to their rights under Title IX" until the publication of the report in March 2021.[2] In support of this assertion, Plaintiffs rely upon the case of *Doe 1 v. Baylor* from the

---

[1] *See* Plaintiffs' Opposition, Doc. 212, p. 8.
[2] *Id.*, at p. 9.

1

United States District Court for the Western District of Texas[3]; however, the case does not help Plaintiffs because no individual university employees were sued and no Section 1983 claims were asserted. Further, the case actually supports Segar's position that all of the claims asserted against her are time-barred.

In *Baylor*, the plaintiffs brought Title IX claims against the university for deliberate indifference and heightened risk pursuant to Title IX.[4] For plaintiffs' deliberate indifference claims, they contended that they reported their sexual assaults to the university and that the university's response was deliberately indifferent to them, causing them to be deprived of educational opportunities and benefits.[5] The *Baylor* plaintiffs also alleged heightened risk wherein they contended that the university's discriminatory practices in handling sexual assault reports prior to their own sexual assault exposed them to a heightened risk of being sexually assaulted.[6]

For the deliberate indifference claims (also referred to by the court as "post-reporting claims"), the Court found that "[w]ithin some reasonable amount of time after their initial reports, Plaintiffs would have understood that Baylor's deliberate indifference to their reports was the cause of those post-reporting injuries [i.e. subjected to further harassment or assault or otherwise deprived of educational opportunities to which they were entitled] or could reasonably have been expected to 'inquire further.'"[7] The *Baylor* Court found that the deliberate indifference claims

---

[3] *Jane Doe 1, et al v. Baylor Univ.,* 240 F.Supp.3d 646 (W.D. Tex. 2017).
[4] *Id.*
[5] *Id.*
[6] *Id.* The heightened risk claims by the Baylor plaintiffs are dissimilar to the Plaintiffs' allegations against Segar. It is important to note that the Plaintiffs do not bring Title IX claims against Segar, nor can they as Title IX claims do not authorize suits against school officials. *Fitzgerald v. Barnstable Sch. Comm* 555 U.S. 246, 257, 129 S. Ct. 788, 796, 172 L. Ed. 2d 582 (2009). The Plaintiffs cannot circumvent the law by attempting to style their allegations against Segar as 1983 claims when they are really identical to the heightened risk and/or deliberate indifference claims against the Board of Supervisors under Title IX.
[7] *Id.*, at 664. *See King–White*, 803 F.3d at 761–63; *see also Samuelson v. Or. State Univ.*, 162 F.Supp.3d 1123, 1127, 1134 (D. Or. 2016) (finding that a plaintiff was time-barred from bringing a claim because she "learned of [the funding recipient's] deliberate indifference to her report of rape when [the funding recipient] was in fact deliberately indifferent to her own report of the assault").

accrued at the time the plaintiffs had reported their assaults to Baylor personnel.[8]

Although the instant Plaintiffs have not specifically alleged deliberate indifference claims against Segar, they have alleged that they "reported Title IX violations to the individual defendants in this action, who then failed to appropriately respond, failed to appropriately report their complaints to the Title IX Coordinator, and retaliated against the individuals who had made the reports."[9] Therefore, the accrual of the Plaintiffs' causes of action arising from their post-reporting claims is similarly the date of their alleged report to LSU personnel, which are as follows:

| **Plaintiffs** | **Accrual date/Date of Report** | **Allegation** |
|---|---|---|
| Richardson | October 1, 2018 | Richardson never reported any abuse or sexual misconduct allegations to Segar, nor does she allege Segar had indirect knowledge of them. Regardless of the fact she and Segar never spoke, Richardson reported her abuse allegations to her supervisor on October 1, 2018, shortly after attempting to contact Segar. Richardson admits she reported the abuse allegations to the Student Advocacy and Accountability Office ("SAA") and to LSU Cares office. A Title IX complaint was opened the same day.[10]<br><br>According to Richardson's own statements to Husch Blackwell, the Title IX office provided her with resources and academic support and she "got into counseling at LSU."[11] |
| Robertson | January 26, 2016 | Robertson admits she never reported any abuse or sexual misconduct allegations to Segar.[12] According to Robertson, Segar learned of Robertson's alleged rape from the LSU diving coach on January 26, 2016.[13] Segar immediately reported the rape allegations to the Deputy Title IX Coordinator.[14] According to the Husch Blackwell Report, Segar made a written "PM-73 or Title IX" report |

---

[8] *Id.*, at 664-665.
[9] *See* Plaintiffs' Opposition, Doc. 212, pg. 3.
[10] Second Amended Complaint, Doc. 182, at ¶¶215 – 222.
[11] *See* Doc. 22-1 (Husch Blackwell Report), p. 59. Though Plaintiffs did not append the report to the Second Amended Complaint, it is refenced throughout same and continues to be the foundation for much of their claims.
[12] Doc. 182, at ¶254.
[13] *Id.*
[14] *See* Doc. 22-1 (Husch Blackwell Report), pp. 93-94.

| | | |
|---|---|---|
| | | January 29, 2016.[15] On February 1, 2016, Mari Fuentes-Martin, Deputy Title IX Coordinator, sent Robertson an email urging her to contact her about Segar's report.[16] Robertson admits that she declined to proceed with a Title IX investigation when she was contacted by the Title IX office.[17]<br><br>In an email authored by Robertson on or about February 5, 2016 to the Deputy Title IX Coordinator, Robertson admitted that she met with the Director of LSU's Lighthouse Program and was made aware of all resources available to her.[18] Robertson even included a statement of appreciation for the support she had received from LSU.[19] |
| Brennan | July 22, 2016 | Brennan reported having learned from a co-worker that John Doe took a nude photograph of her without her consent and shared it with members of the football team.[20] According to the police report, Brennan never even saw the picture and was not "fully sure it [was] even her."[21]<br><br>According to Brennan, she met with Segar and Sharon Lewis concerning her allegation on or around July 22, 2016.[22] Brennan claims she requested not to go to the police and that Segar ignored her request, however, the Husch Blackwell Report referenced a text message Brennan sent to a fellow student stating how "supportive everyone was" and that "[Lewis] and [Segar] were the ones who encouraged me to go to the police and [Segar] came with me."[23]<br><br>Although Brennan claims she was offered no resources, accommodations, or interim measures, according to LSUPD Sergeant Walters, she "was provided with all resource information and declined to seek any help at this time."[24] |
| Lewis | April 25, 2018 – Lewis's first report | Lewis admits that Segar timely reported every instance of known abuse of Lewis to the Title IX office and/or LSU |

---

[15] *Id.*, at p. 94.
[16] *Id.*
[17] Doc. 182, ¶260.
[18] *See* Doc. 22-1 (Husch Blackwell Report), p. 95.
[19] *Id.*
[20] Doc. 182, at ¶297.
[21] *See* Doc. 22-1 (Husch Blackwell Report), p. 99.
[22] Doc. 182, at ¶299.
[23] *See* Doc. 22-1 (Husch Blackwell Report), p. 98.
[24] *Id.*, at p. 99.

4

| | | |
|---|---|---|
| | June 18, 2018 – second report by Segar, in response to LSUPD report<br><br>August 13, 2018 – Lewis's second report<br><br>August 16, 2018 – Lewis report to LSUPD | Police Department.[25]<br><br>For Segar's first report, the Title IX investigator, Jeffrey Scott, stated Lewis was a "reluctant complainant" and did not want to move forward with the investigation however, he indicated that Lewis was "provided with additional support resources."[26]<br><br>Segar's second report resulted from an LSUPD report she received concerning an incident between Lewis and John Coe. Although Lewis told Segar John Coe did not hit her or harm her, Segar still made the report noting she is "concerned about higher level of escalation and potential injury" and "for escalation of domestic violence."[27], Lewis denied any physical altercation with John Coe and stated she did not want to pursue any Title IX options.[28]<br><br>For Segar's third report, Lewis finally cooperated in the investigation and provided details of her abuse at the hands of John Coe.[29] Lewis also reported her complaints to the police and John Coe was arrested.[30] Nevertheless, Lewis retracted her reports two days after her report to the police in a text message to John Coe's coach, Mickey Joseph.[31] Segar noted in her report concern for Lewis's safety and "want[s] to make sure the case is handled with high priority and documented fully."[32]<br><br>Segar submitted another Title IX report on August 14, 2018 after John Coe reported concern for Lewis's mental health and personal safety. Coe told Segar that Lewis showed up at his WCA assignment and tried to enter his WCA residence and also his off-campus apartment. Coe also reported that Lewis has attempted to harm herself by cutting her wrist in the past.[33]<br><br>Lewis claims she reported to Segar statements made by football coaches and Coe's mother indicating they blamed her for Coe being banned from the weight room. |

---

[25] Doc. 182, ¶486, 513, 537.
[26] *See* Doc. 22-1 (Husch Blackwell Report), p. 77.
[27] *Id.*, at p. 80.
[28] *Id.*, at p. 82.
[29] *Id.*, at pp. 84-86.
[30] *Id.*, at p. 86.
[31] *Id.*, at p. 87.
[32] *Id.*
[33] *Id.*, at p. 84.

5

| | | |
|---|---|---|
| | | According to Lewis, Segar did not report this alleged retaliation to the Title IX office.[34] Lewis fails to provide any specific statements made by LSU employees or the identity of any of the employees who made such statements. |
| Hovis | Jan. 24, 2020 – date of assault and report by Hovis | Hovis admits she never reported any sexual misconduct or abuse allegations to Segar. Hovis also admits she filed a Title IX complaint and the investigation resulted in John Loe's suspension.[35] Further, Hovis admits she received resources, assistance, and accommodations.[36] |

For claims asserted pursuant to 42 U.S.C. § 1983, the applicable statute of limitations is the state statute of limitations for personal injury.[37] In Louisiana, personal injury claims are subject to a one-year prescriptive period.[38] The Fifth Circuit has held "'the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'"[39] A plaintiff's awareness of an injury is determined by looking at two specific elements of their cause of action: (1) injury and (2) causation.[40]

The alleged injury that can be surmised from the Second Amended Complaint (hereinafter "SAC"), which is specifically denied by Segar and for which the factual allegations are either non-existent or threadbare for each of the Plaintiffs, is that Plaintiffs were subjected to additional harassment, a sexually hostile environment on campus, and were refused access to resources, assistance, or accommodations. Plaintiffs knew or were aware of these purported injuries on or soon after the dates of their reports, well before the one-year statute of limitations. Plaintiffs filed their lawsuit on April 26, 2021, thus, any claims for injury occurring prior to April 26, 2020, are

---

[34] Doc. 182, ¶530-534.
[35] *Id.*, at ¶671 and 679.
[36] *Id.*, at ¶672, 673, and 674.
[37] *King-White v. Humble Indep. Sch. Dist.,* 803 F.3d 754, 762 (5th Cir. 2015).
[38] *La C.C. art. 3492*.
[39] *Spotts v. United States,* 613 F.3d 559, 574 (5th Cir.2010) (quoting *Piotrowski v. City of Houston,* 237 F.3d 567, 576 (5th Cir.2001)).
[40] *King-White*, 803 F.3d *at* 762.

time-barred. All of Plaintiffs' claims against Segar assert injuries which Plaintiffs knew or should have known they had suffered prior to April 26, 2020.

In their Opposition brief, Plaintiffs contend that the SAC "contains detailed allegations of the specific facts that each of the Plaintiffs could not have known until the publication of the Husch Blackwell report, less than one year before the filing of Plaintiff's original complaint…"[41] Plaintiffs contend they were not trained on resources available to them, they did not understand LSU's Title IX policy is meant to prevent the type of emotional distress they allegedly endured, and that LSU had knowledge of the "pervasive harassment and retaliation" they and others suffered.[42] These allegations bear no rational relationship to the claims filed against Segar.

Robertson, Brennan, and Hovis contend they were unaware until the release of the Report that LSU, including Segar, knew of the "pervasive harassment and retaliation" they suffered.[43] These allegations are inconsistent with the SAC and the Report. Robertson corresponded with the Title IX office about her assault allegations in 2016, thus she clearly knew LSU employees were aware of her assault. Robertson declined to pursue a complaint against her alleged perpetrator. She had sufficient information in 2016 of LSU's knowledge and involvement in her allegations to put her on notice to investigate any injury claims. Brennan clearly was aware in 2016 that Segar had knowledge of her allegation against John Doe because she admits she met with and reported same to Segar. She had sufficient information in 2016 of LSU's knowledge and involvement in her allegations to put her on notice to investigate any injury claims. Hovis reported her complaint to LSUPD and the Title IX office, thus she was sufficiently aware of LSU's knowledge of her alleged harassment at the time of her report in January of 2020. Contrary to Plaintiffs' assertions, they

---

[41] Doc. 212, pg. 10.
[42] *Id.,* at pp. 11-13.
[43] *Id.*

were aware of the necessary information for their perceived injuries well before the Report was published and the applicable statute of limitations. Hence, Plaintiffs' claims against Segar must be dismissed as untimely.

Plaintiffs also asserted an alternative argument that the theory of contra non valentum controls the prescriptive period for this action. In support of this theory, Plaintiffs aver that Segar took on the role of "*de facto* Title IX Coordinator for the athletics department", "fail[ed] to appropriately respond to and report allegations of Title IX violations", and "ridicule[d] and minimize[ed] [] reports that she received from some Plaintiffs."[44] These allegations are specifically denied. Further, the allegations that Segar was the *de facto* Title IX Coordinator for the athletics department and that she minimized and ridiculed reports she received from some Plaintiffs are not plead in the SAC. Thus, Plaintiffs are precluded from making such assertions in their Opposition brief. As explained in further detail herein and in Segar's Memorandum in support of her Motion to Dismiss, Segar performed her duties as instructed and reported all sexual misconduct allegations to the LSU authorities.

### B. Plaintiffs Failed to State any actionable allegations against Segar

Plaintiffs' Opposition brief evidences the clear lack of factual support for their myriad of conclusory and baseless allegations against Segar. Plaintiffs make outlandish allegations against Segar and others, including failure to appropriately respond to and report their sexual assault claims as well as retaliation for their reports. The Report, which is relied upon by the Plaintiffs, proves that these allegations are false. Sexual assault allegations were not buried but were properly reported by Segar. Segar made every reasonable attempt to ensure that the students who reported sexual assault to her were directed to the appropriate office or authority to be provided the help

---

[44] *Id.*, at p. 15.

8

and resources for their circumstances. Segar did not retaliate against any of the Plaintiffs, and Plaintiffs have failed to allege any credible allegations supporting this claim.

Further, Segar is entitled to qualified immunity for all claims brought against her. In order to overcome the defense of qualified immunity, Plaintiffs must allege facts which, if true, would show that Segar violated their rights in a way that she knew or should have known was unlawful. Plaintiffs failed to cite any case wherein a university employee who received a report of sexual abuse or misconduct was found to have violated a student's constitutional rights to free speech, equal protection, or due process under a similar set of facts alleged herein. Plaintiffs also cannot overcome Segar's qualified immunity defense because they failed to allege any facts which show Segar violated their rights.

In their Opposition brief, Plaintiffs aver Segar ignored their reports, treated victims of student athletes differently than other victims and refused to follow published procedures.[45] It is undisputed by the evidence referenced in the SAC and the Report that the policy at LSU in the Athletics Department during the relevant time dictated that sexual misconduct allegations were to be reported to Segar who would report same to the Title IX office. For each of the Plaintiffs whose sexual assault allegations were directly reported to Segar, Segar reported those allegations to the Title IX office or other LSU authorities. It was not Segar's role or duty to investigate any allegations, and she did not conduct investigations. Her only role was to report allegations, which she fulfilled for each of the Plaintiffs who reported complaints to her.

For the remainder of their Opposition Brief, Plaintiffs' assert a myriad of allegations against Segar that were not plead in their SAC and are not properly before the Court. These allegations include that Segar somehow violated the first amendment constitutional rights of

---

[45] *Id.*

Owens, Richardson, Lewis, Johnson, Andries, and Jane Doe although the only Plaintiff in this group to actually make a report to Segar was Lewis. It is well-established that Segar reported all known incidents of Lewis's abuse. Plaintiffs also contend that Segar denied equal protection and due process to Owens, Brennan, Richardson, Lewis, Jane Doe, Robertson, Johnson, Andries, Hovis, and Kitch although the only Plaintiffs to report sexual misconduct to Segar in this group are Brennan and Lewis, which was reported by Segar to the appropriate LSU authorities.

### III.  CONCLUSION

Plaintiffs' claims are all time-barred as to Segar. In the alternative, none of the allegations raised against Segar state a claim against her for the reasons discussed above. Finally, Segar is entitled to qualified immunity with respect to all of Plaintiffs' claims. Accordingly, all of Plaintiffs' claims asserted against Segar must be dismissed.

Respectfully submitted on March 22, 2022.

        **JEFF LANDRY,**
        **ATTORNEY GENERAL**

        **SHOWS, CALI & WALSH, L.L.P.**

        /s/ Mary Ann White_____
        John C. Walsh (LA 24903)
        Jeffrey K. Cody (LA 28536)
        Mary Ann White (LA 29020) (*Lead Counsel*)
        628 St. Louis Street (70802)
        P.O. Box 4425
        Baton Rouge, LA 70821-4425
        Tel: 225-346-1461
        Fax: (225) 346-1467
        john@scwllp.com
        jeffreyc@scwllp.com
        maryannw@scwllp.com
        *Special Assistant Attorneys General*
        **Counsel for Defendant, Miriam Segar**

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 22nd day of March, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

                                      /s/ Mary Ann White
                                      Mary Ann White