THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, ET AL.** | **CIVIL ACTION NO. 3:21-CV-00242** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY, ET AL.** | **MAGISTRATE JUDGE JOHNSON** |

**DEFENDANT JONATHAN SANDERS' REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

MAY IT PLEASE THE COURT:

Defendant Jonathan Sanders ("Defendant"), by and through undersigned counsel, files this Reply Brief in Support of his Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Reply") and in response to Plaintiffs' Opposition thereto ("Opposition"), and respectfully shows as follows:

**I.      INTRODUCTION**

Plaintiffs' Opposition reveals what is evident from its Second Amended Complaint ("Complaint") [Rec. Doc. 182]: Plaintiffs are still stuck in the mud by imputing to Defendant the actions, knowledge and policies of LSU and/or its "employees." The first six pages of the Opposition are headed "Statement of Facts," yet these are not the facts pertinent to Plaintiffs' § 1983 claims against Defendant. *See generally* Opposition at 1-6. The Opposition discusses, among other irrelevant things: sports teams and revenues; who is a "responsible individual" under Title IX; deficiencies in LSU's Title IX policies; and a plethora of alleged wrongdoing by LSU and its employees as a whole.

Plaintiff continues to impute alleged wrongdoing of an institution and all its members as a whole to Defendant. But Plaintiffs have voluntarily dismissed eight individual defendants. [Rec. Doc. 187.] In addition, all previous allegations against Defendant, save for the three § 1983 claims at issue here, are not present in Plaintiffs' Second Amended Complaint. [Rec. Doc. 182.] It is which claims that were dropped against Defendant that is telling: violation of Title IX; conspiracy to interfere with civil rights; negligence; negligent supervision; negligent and intentional infliction of emotional distress; bad faith breach of contract; "civil conspiracy"; and violations of Federal and State RICO statutes. What most of these withdrawn causes of action have in common is that Defendant allegedly was part of some type of general overarching scheme or conspiracy.

## II.    ARGUMENT

Plaintiffs set forth of the standard language that Rule 12(b)(6) motions are disfavored and that a complaint should not be dismissed unless it is beyond doubt that plaintiff can prove no set of facts which would support a claim. Opposition at 7.

It should be emphasized, however, that there are countervailing policy reasons § 1983 cases should be dismissed as early as possible. The Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.". *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

### A.    Plaintiffs' arguments in its Opposition show they still view this as a RICO or conspiracy type of case.

Plaintiffs continue to describe this case, and Defendant's position in it, as some type of collective behind the scenes secret scheme to protect the football team. These broad allegations have nothing to do with the actual § 1983 case against Defendant. For example, Defendant is accused of having "specific knowledge of the pervasive sex discrimination and

2

retaliation" directed to the Plaintiffs, but it was "LSU and its employees" that failed to train the student about resources available to her. Complaint ¶ 240. Nowhere is it alleged that Defendant was tasked with the lack of training complained of, just that the school generally did not train her.

These are precisely the types of allegations which do not give rise to a § 1983 case. In overcoming the qualified immunity defense, it is not enough for the plaintiff to allege that the government official violated a clearly established right in the generalized sense for that "would ... convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989) (citing *Anderson v. Creighton*, 483 U.S. 635).

### B. Plaintiffs' allegations against Defendant do not state any § 1983 causes of action.

The generalized assertions against Defendant are wanting, to say the least. Defendant is lumped in with "LSU employees" of being part of a "scheme" to treat athletes and non-athletes differently. *Id.* at 6. Defendant somehow also may or may not be on of the "LSU employees" in, according to Plaintiffs, a wide-ranging effort to "bury" negative information about athletes to "ensure that those complaints were never properly investigated. *Id.*

To recap, the specific allegations against Defendant are:

1. Defendant asked Plaintiff Andries "whether she was on drugs at the time of the assault and where she was sitting on the bus when she was assaulted." *Id.* ¶¶ 422-423.   Also:

    a.  Andries levels one accusation that Defendant did not report alleged sexual discrimination suffered by a third- party student. *Id.* ¶¶ 424-425 & 450.[1]

    b.  Andries was subject to a "mutual no contact order." *Id.* ¶ 438.

---

[1] Not surprisingly, a person lacks standing to bring a § 1983 on behalf of someone else. *Warth v. Seldin*, 422 U.S. 490, 514 (1975). This is just more piling on allegations which have no pertinence to the claims against Defendant.

3

2.  Jade Lewis complains that Defendant did not interview certain witnesses to her alleged assault. *Id.* ¶ 554-555. She also claims a violation of her Constitutional rights by being disciplined for having a candle in her room.[2]

3.  Corrin Hovis thinks a no-contact directive may have been violated by another student, but she was not, and is not, sure. *Id.* ¶ 681. She then blames LSU (not Defendant) for not taking disciplinary action. *Id.*

4.  Calise Richardson alleges that Defendant had "specific knowledge of the pervasive sex discrimination and retaliation [Richardson] and others suffered," but LSU (not Defendant) is alleged to have failed to conduct the training allegedly required. *Id.* ¶ 240.

    **C.**    **Plaintiffs' complaints against Defendant do not involve Constitutional rights in the first place.**

It is difficult to fathom how the allegations against Defendant involve any Constitutional rights to begin with. Undersigned counsel can identify no cases establishing a right to not have an investigator ask an alleged victim things which might be uncomfortable, but which were clearly relevant to the investigation. There also are no cases we have found that establish a right to be entitled to a one-way no-contact order over a mutual no-contact order. Not having an acquaintance's sexual discrimination investigated is not a Constitutional right. Being free from reprimand for an admitted violation of dorm policies is not a Constitutional right. And there is no Constitutional right to having certain witnesses interviewed in an investigation.

    **D.**    **Defendant is entitled to qualified immunity.**

"It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975). Individuals are shielded from claims under § 1983 by qualified immunity when they exercise fair judgment. This immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 106 S.Ct. 1992 (1986).

---

[2] Lewis asserts that she was placed on academic probation as a result of the candle. However, she fails to plead that other students with candles in their rooms did not face any discipline.

4

An individual is immune if reasonable officials could differ on the lawfulness of the action in a court. *Spann v. Rainey*, 987 F.2d 1110 (5th Cir. 1993). Even if a plaintiff can show that the handling of her concerns was in some way flawed, claims arising out of negligent acts do not give rise to relief under § 1983. *Daneils v. Williams*, 474 U.S. 327 (1986).

Qualified immunity is not just an affirmative defense to be raised at trial, it is the freedom from suit or the right not to be sued altogether. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To win a lawsuit alleging a violation of §1983, a plaintiff must first prove that a constitutional right was violated. A court must then determine if qualified immunity protects government officials if their actions do not violate clearly established rights of which a reasonable person would have known or if their actions were nonetheless objectively reasonable. *Davis v. Scherer*, 468 U.S. 183, 191–93 (1984)   There are then two inquiries: (1) whether the right violated was clearly established at the time the violation occurred; and (2) whether the violation was nonetheless objectively reasonable at the time. If, in resolving the first inquiry, it is determined that the right was not clearly established, qualified immunity protects the official and the inquiries end. *Id.*  If instead it is determined that the right was clearly established, then, under the second inquiry, qualified immunity still protects the official if their violation <u>was objectively reasonable at the time</u>. *Id.* at 191-93.

The factual matters as plead by Plaintiffs show only that Defendant was doing his job in exercising his discretionary functions, and that he made some decisions with which the Plaintiffs did not agree. A purported violation of a right brought in a § 1983 case fails if there is any "rational relationship between the punishment and the offense." *Brewer by Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir. 1985) (student's complaint of punishment

5

involving an actual suspension from school dismissed). There can be little doubt that Defendant's actions were rationally related to conducting his job.

### E. Plaintiffs' contentions that their claims have not prescribed are without merit.

Plaintiffs' heavy and singular reliance upon a single District Court case is inapposite. *See* Opposition at 16-24 (citing *Jane Doe 1, et al. v. Baylor Univ.*, 240 F.Supp.3d 646 (W.D. Tex. 2017). First, *Baylor* is a Title IX case, and of course, there are no Title IX allegations against Defendant. *Baylor*, 240 F.Supp.3d at 652. Second, the case is brought a single institutional defendant, the university itself. *Id.* Third, the bulk of the allegations regard school-wide "policies," and of course, as an individual, Defendant is not responsible for, nor can he make, a school-wide policy.

An entire institution may, under certain circumstances (which Defendant does not believe are adequately plead) have a policy which results in harm to students. At its core, that is what Plaintiffs are still alleging, though they wish to drag Defendant into an alleged conspiracy. And this is why *Baylor* contains nothing instructive regarding timeliness in this case. In *Baylor*, it was the institution's policy, not an individual's own specific actions, which was at issue. Therefore, it is plausible that the media's reports of the existence of an improper Baylor "policy" set the date from when Texas' statute of limitations began to run. *Id.* at 663-664.

Defendant is not responsible for what the whole university does or does not do. He is not responsible for whatever other unnamed LSU employees did or did not do. Therefore, the discovery of a university-wide "policy" in the Husch Blackwell Report did not relieve any of Plaintiffs from their due diligence and reasonable inquiry responsibilities for the purpose of interrupting prescription. Plaintiffs have supplied no reason why the doctrines relating to prescription should not apply here as they would against any individual.

6

IV.     **CONCLUSION**

For the reasons set forth above, and in Defendant's Memorandum in Support of his Rule 12(b)(6) Motion to Dismiss Plaintiffs' Claims.

>   Respectfully submitted,
>
>   **JEFF LANDRY**
>   **ATTORNEY GENERAL**
>
> BY:    */s/ Mark R. Pharr, III*
>           Mark R. Pharr, III, Bar Role No. 21019
>           Lindsay Meador Young, Bar Roll No. 31261
>           William F. Large, Bar Roll No. 34837
>           *Special Assistant Attorneys General*
>           3861 Ambassador Caffery Pkwy., Ste. 300
>           Lafayette, LA 70503
>           Phone: 337-735-1760
>           Fax: 337-993-0933
>           Email: tiger@gallowaylawfirm.com
>           Email: LMeador@gallowaylawfirm.com
>           Email: wlarge@gallowaylawfirm.com
>           ATTORNEYS FOR JONATHAN SANDERS