# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                    CIVIL ACTION NO.  3:21-CV-00242

VERSUS                                JUDGE WENDY B. VITTER

LOUISIANA STATE UNIVERSITY,           MAGISTRATE JUDGE JOHNSON
ET AL.

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT BY THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

NOW INTO COURT, through undersigned counsel, comes defendant the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"), who submits this reply brief in support of its motion to dismiss the claims asserted by plaintiffs Abby Owens, *et al.* ("Plaintiffs").

## I.    Plaintiffs' Title IX Claims are Prescribed.

Title IX claims are subject to Louisiana's one year prescriptive period.[1]  Therefore, only claims accruing on or after April 26, 2020 are timely.[2]  "Under federal law, the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[3]  "A plaintiff's awareness encompasses two elements:  (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions."[4]  In other words, "[t]he cause of action accrues even though the full extent of the injury is not then known or predictable."[5]  Plaintiffs do not dispute that their cause of actions accrued when they became aware of their injuries.  Instead, Plaintiffs claim they

---

[1] *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015).
[2] Plaintiffs filed their initial Complaint on April 26, 2021. (R. Doc. 1).
[3] *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal brackets, citations, and quotation marks omitted).
[4] *Id.*
[5] *Wallace v. Kato*, 549 U.S. 384, 391 (2007).

lacked knowledge of their injuries until the release of the Husch Blackwell report.[6]  This statement mischaracterizes the nature of Plaintiffs injuries.

Plaintiffs rely extensively on *Doe I v. Baylor*, 240 F. Supp. 3d 646 (W.D. Tex. 2017) to demonstrate that they did not learn of their claims until the release of the Husch Blackwell report. However, *Baylor* is not controlling.  Even if it were, Plaintiffs only cited a portion of *Baylor's* timeliness holding.[7]  The quoted language cited by Plaintiffs on pages 8-9 of their opposition memorandum relates to the statute of limitations discussion for the "heightened risk" claims **only**.[8] With respect to this type of claim, the *Baylor* court held "[w]hile it is plausible that Plaintiffs were aware of their heightened-risk claims at the time of their assaults, it is also plausible that they did not have reason to further investigate those claims until 2016."[9]  In other words, the court left open the possibility that for plaintiffs' factually distinct heightened risk claims only, plaintiffs may not have been aware of the causal connection between their injures and Baylor's alleged conduct allegedly caused those injuries.[10]

---

[6] R. Doc. 209, p. 8.

[7] R. Doc. 209, pp. 8-9.  The *Baylor* plaintiffs urged two types of claims.  *Baylor*, 240 F. Supp. 3d at 658.  The first type involved so-called "post-reporting" claims, meaning claims related to Baylor's handling of their reports.  *Id.*  (For the Owens' Plaintiffs, these type of claims would include their Title IX deliberate indifference, retaliation, and hostile environment claims.)  The second type related to Baylor's practices in handling reports of sexual assaults prior to plaintiffs' reports, and whether those practices "constituted a policy of intentional discrimination that increased Plaintiffs' risks of being sexually assaulted."  *Id.* at 658-659.  The *Baylor* court called this second type of claim "heightened risk" claims.  *Id. But see supra* Section II.C.

[8] R. Doc. 209, pp. 8-9.

[9] *Baylor*, 240 F. Supp. 3d at 663.

[10] The Fifth Circuit rejected a similar argument in *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 756 (5th Cir. 2015).  Much like the *Owens* Plaintiffs, in *King-White*, the plaintiffs urged the Fifth Circuit to adopt a "delayed accrual" because their claims against the school district were based on policies or customs that could not have been known at the time of the abuse.  *Id.* at 673. The Fifth Circuit declined to do so and referenced a Second Circuit ruling noting an unwillingness to "eviscerate the ordinary accrual rule by holding that the limitations period for a cause of action against a municipality runs anew upon the future discovery of facts tangentially related to the claim."  *Id.* (internal quotations omitted).  *See also Garrett v. Ohio State Univ.*, No. 2:18-CV-692, 2021 WL 7186147 (S.D. Ohio Sept. 22, 2021) (rejecting the plaintiffs' argument that the "statute of limitations did not begin to run until they learned of Ohio State's deliberate indifference via the Perkins Coie report") (collecting a number of cases discussing accrual); *Twersky v. Yeshiva Univ.*, 579 F. App'x 7 (2d Cir. 2014) (dismissing claims as untimely despite plaintiffs' argument that claims did not accrue until one of the defendants made an admission in an interview).

On the other hand, the *Baylor* court's ruling on the timeliness of those plaintiffs' "post-reporting" claims supports that Plaintiffs' Title IX retaliation, deliberate indifference, and hostile environment claims herein are time-barred.  The *Baylor* court found that:

> All Plaintiffs allege they reported their sexual assaults to Baylor personnel and that Baylor failed to adequately assist them, sometimes discouraging them from seeking further assistance. . . . Within some reasonable amount of time after their initial reports, Plaintiffs would have understood that Baylor's deliberate inference to their reports was the cause of those post-reporting injuries or could reasonably have been expected to "inquire further."[11]

The *Baylor* court dismissed the claims of four plaintiffs whose initial assaults or reports fell well outside of the statute of limitations.[12]  Thus, even if the *Baylor* decision was controlling, which it is not, *Baylor* largely supports the Board's position on the untimeliness of Plaintiffs' claims.

Like four of the Plaintiffs in *Baylor*, **all Plaintiffs** herein (with the possible exception of Hovis) knew of their injuries—in that their assaults were alleged to have occurred and they knew of the Board's alleged indifference—well in advance of April 26, 2020:

- Richardson: 2016[13]

- Robertson: 2016[14]

- Brennan: 2016[15]

- Owens: 2017[16]

- Andries: 2016-2019 (at the latest)[17]

- Lewis: 2018-2019[18]

---

[11] *Baylor*, 240 F.Supp. 3d at 663-664.
[12] In Texas, the applicable statute of limitations is two years. *Id.* at 662.
[13] Second Amended Complaint, ¶¶ 148, 152, 161, 166, 191.
[14] Second Amended Complaint, ¶¶ 243, 248, 260, 273.
[15] Second Amended Complaint, ¶¶ 290-293, 299, 316.
[16] Second Amended Complaint, ¶¶ 328, 337-338.
[17] Second Amended Complaint, ¶¶ 364, 435, 437.
[18] Second Amended Complaint, ¶¶ 456, 477-478, 486, 505, 552.

- Johnson: 2019[19]

- Doe: 2019[20]

- Hovis: Jan-May 2020 (potentially one month of timely conduct)[21]

- Kitch: 2014, 2019 (at the latest)[22]

Similarly, for those plaintiffs who asserted retaliation claims, all claims accrued years before the plaintiffs' filed their lawsuit:

- Owens: 2017[23]

- Richardson:  2017-2018[24]

- Andries: 2019[25]

- Lewis: 2018[26]

- Johnson: 2019[27]

- Doe: 2019[28]

Other than perhaps Hovis (and for an extremely limited time period), Plaintiffs allege they had knowledge of their injuries and of the Board's response to those injuries well in advance of April 26, 2020.

### A.    *Contra Non Valentem* **is Not Applicable to Plaintiffs' Claims.**

Plaintiffs essentially argue that because the findings of the Husch Blackwell report are "relevant" to Plaintiffs' claims, the discovery rule of *contra non valentem* is triggered.  Plaintiffs

---

[19] Second Amended Complaint, ¶ 594.
[20] Second Amended Complaint, ¶¶ 598-604, 613-619.
[21] Second Amended Complaint, ¶¶ 652, 330-332
[22] Second Amended Complaint, ¶¶ 699, 724, 728, 733.
[23] Second Amended Complaint, ¶¶ 336, 951.
[24] Second Amended Complaint, ¶¶ 175-176; 203, 205-206, 209, 957.
[25] Second Amended Complaint, ¶¶ 422-423,426-427, 988-990.
[26] Second Amended Complaint, ¶¶ 515-516, 529-530.
[27] Second Amended Complaint, ¶¶ 594, 982.
[28] Second Amended Complaint, ¶¶ 629-633, 995.

PD.37059575.1

assert that they "did not and could not have reasonably known that they had causes of action against LSU until the release of the Husch Blackwell report in March 2021."[29]  Their pleadings show otherwise.  Plaintiffs outlined the information they allegedly learned from the Husch Blackwell report at pages 10-14 of their opposition memorandum.  None of the additional "information" relates to Plaintiff's individual claims or injuries, nor does the information erase Plaintiffs' earlier knowledge of the Board's response to their reports.[30]  Each plaintiff, with the possible exception of Hovis, knew of their Title-IX related injuries years before this suit was filed.  The fact that they did not know of others' claims has no bearing on when each Plaintiff learned of their own claim. "Prescription begins to run from the time there is notice enough to call for inquiry about a claim, not from the time when the inquiry reveals facts or evidence sufficient to prove the claim."[31]

Plaintiffs do not allege that the Board had a **duty** to disclose any particular information to Plaintiffs, nor do they allege that the Board **prevented** any of the Plaintiffs from investigating their claims and filing a lawsuit, as required for the "intentional concealment" category of *contra non valentem.*[32]

Consistently, the *Baylor* decision, on which Plaintiffs rely so heavily, concluded that no tolling applied to plaintiffs' Title IX claims.[33]  The *Baylor* court found that those plaintiffs provided

---

[29] R. Doc. 209, p. 17.

[30] R. Doc. 209, pp. 10-14.

[31] *LaFleur v. Blue*, 2008-1147 (La. App. 3 Cir. 3/4/09), 6 So.3d 348, 351 (internal quotation marks and citation omitted).

[32] *Crump v. Sabine River Authority*, 98-2326 (La. 6/29/99); 737 So.2d 720, 731 (rejecting application of intentional concealment category of *contra non valentem* based upon plaintiff's claims that defendant assured her that drainage problem, which was eroding plaintiff's property, would be remedied). *See Greening v. Western Reserve Life Assurance Company of Ohio*, 439 F.Supp.2d 612, 614 (M.D. La. 2006) (rejecting application of intentional concealment category of *contra non valentem* because "plaintiffs had complete access to the correct information prior to the sale.") (applying Louisiana law); *Marin*, 48 So.3d at 252.

[33] *Doe I v. Baylor*, 240 F. Supp 2d 646, 665 (W.D. Tex. 2017).

no explanation for why their injuries were "inherently undiscoverable" and failed to allege facts to support concealment.[34]

For these reasons, tolling does not apply to Plaintiffs' untimely claims.  The claims of Plaintiffs Richardson, Robertson, Brennan, Owens, Andries, Lewis, Johnson, Doe and Kitch claims are prescribed and must be dismissed.

## II.    Plaintiff Hovis Fails to State a Claim Against the Board.

Hovis is the only plaintiff with a potentially timely claim, but her claims of Title IX deliberate indifference, hostile environment and heightened risk fail as a matter of law.

### A.    The Board's Actions Were Not Clearly Unreasonable.

Hovis' deliberate indifference claim fails because she did not allege conduct by LSU that was clearly unreasonable.  "Deliberate indifference is an extremely high standard to meet."[35]  A defendant is deliberately indifferent when the "school's response or lack of response was clearly unreasonable in light of the known circumstances."[36]  "[C]ourts should refrain from second-guessing disciplinary decisions made by school administrators."[37]

Hovis' opposition fails to show how her allegations (that LSU failed to discipline Loe because his girlfriend contacted Hovis twice) rise to the level of "clearly unreasonable."[38]  In her opposition, Hovis claims LSU suspended Loe for three weeks and did nothing to ensure that Hovis was protected from further abuse by Loe.[39]  However, her Second Amended Complaint states that Loe was suspended from May 10, 2020 to May 30, 2021 (over a year, not three weeks) which

---

[34] *Id.*

[35] *I.F. v. Lewisville Indep. Sch. Dist.* 915, F.3d 360 (5th Cir. 2019), citing *Domino v. Tex. Dept. of Crim.* Justice, 239 F.3d 752, 756 (5th Cir. 2001); *see also I.L. v. Houston Indep. Sch. Dist.*, 776 F. App'x 839 (5th Cir. 2019), citing *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 689 (5th Cir. 2017).

[36] *I.L.*, 776 F. App'x at 842 (internal quotations omitted).

[37] *I.F.*, 915 F.3d at 369, citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ*, 526 U.S. 629, 648 (1999).

[38] Second Amended Complaint, ¶¶ 680, 681.  The other Title IX conduct alleged is clearly untimely.  In the event the Court determines it is timely, the Board reserves the right to assert additional bases for dismissal.

[39] R. Doc. 209, p. 23.

amounts to extremely significant disciplinary action against Loe by removing him from campus. Notably, Hovis does not allege that the Board had prior knowledge of harassment by Loe (against Hovis or anyone else), or that she suffered any injury (or contact) by Loe pending his suspension, or that Loe's conduct recurred.[40]  Hovis' allegations do not support a deliberate indifference claim.

**B.  Hovis Cannot State a Hostile Environment Claim.**

Hovis' allegations do not state a hostile environment claim for the reasons set forth above regarding deliberate indifference.[41]  Additionally, Hovis' allegations also do not sufficiently allege that the harassment she purportedly suffered "undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities."[42]  Hovis fails to allege a hostile environment claim.

**C.  Plaintiffs' Title IX "Heightened Risk" Claim Is Not Available.**

In Count III, Hovis and others allege Title IX violations against the Board "due to the heightened risk of sex-based discrimination on LSU's campus," but such claim is unavailable.[43] Plaintiffs acknowledge *Poloceno v. Dallas Independent Sch. Dist.*, 826 F. App'x 359, 363 (5th Cir. 2020), the Fifth Circuit's controlling ruling declining to adopt the heightened risk theory of liability.  *Poloceno* was decided after *Gruver v. State*, 401 F. Supp. 3d 742, 762 (M.D. La. 2019),

---

[40] *See, e.g., I.L.*, 776 F. App'x at 843 ("The school immediately investigated the sexual assault and implemented remedial measures that were almost entirely successful in eliminating *any* contact between the students and prevented future sexual contact or harassment. Even if the school's investigative and disciplinary response could have been better, neither "negligence nor mere unreasonableness is enough" to support a Title IX deliberate indifference claim.") (quoting *Sanches*, 647 F.3d at 167–68 (citations omitted)).

[41] The alleged harassment must be severe, pervasive and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school and the funding recipient was deliberately indifferent to the harassment.  *See Davis Next Friend  LaShonda D. Monroe County Board of Education*, 526 U.S. 629, 644, 650 (1999) ("If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment." (internal citations omitted)); *Sewell v. Monroe Cty. Sch. Bd.*, 974 F.3d 577, 584 (2020) (noting that school board is only liable for plaintiff's harassment or hostile environment discrimination claims "if it knew of the abuse and was deliberate indifferent").

[42] Second Amended Complaint, ¶ 905; *See Davis*, 526 U.S. at 651.

[43] Second Amended Complaint, ¶¶ 917, 935.

the case which Plaintiffs cite in support of their position.  Plaintiffs offered no persuasive reason for avoiding dismissal of their "heightened risk" claim.

### III.    Plaintiffs Punitive Damages Claim Must be Dismissed.

Plaintiffs admit that punitive damages are not available under Title IX, their only remaining claims against the Board.  Thus, the Board is entitled dismissal of Plaintiffs' punitive damages claim.[44]

### IV.    Conclusion.

For the reasons stated in the Board's memorandum in support of its motion to dismiss and herein, Plaintiffs' Second Amended Complaint must be dismissed, with prejudice.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:    /s/ *Molly C. McDiarmid*
Susan W. Furr Bar Roll No.  19582
Karleen J. Green Bar Roll No.  25119
Shelton Dennis Blunt Bar Roll No. 21230
Michael B. Victorian Bar Roll No. 36065
Molly C. McDiarmid Bar Roll No. 36426
*Special Assistant Attorneys General*
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: michael.victorian@phelps.com
Email: molly.mcdiarmid@phelps.com

---

[44] *See Minnis v. Bd. Of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. 13-5-BAJ-RLB, 972 F. Supp. 2d 878 (M.D. La. 2013); *Kirk v. School Bd. Cty. Of Monroe*, 2020 WL 7931377 (W.D. La. Dec. 21, 2020).

PD.37059575.1

ATTORNEYS FOR THE BOARD OF
SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL AND
MECHANICAL COLLEGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on

March 24, 2022, with the Court's CM/ECF system, which will electronically send a copy of the

same to all counsel of record.

/s/  *Molly C. McDiarmid*
Molly C. McDiarmid