IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>BOARD OF REGENTS OF THE<br>UNIVERSITY OF NEBRASKA, et al.,<br><br>　　　　　Defendants. | 4:21-CV-3049<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the defendants' motion to dismiss (filing 18) the plaintiff, Jane Doe's, second amended complaint (filing 13) pursuant to Fed. R. Civ. P. 12(b)(1) and (6). That motion will be granted in part and denied in part.

## I. BACKGROUND

According to Doe's second amended complaint, her claims arose as follows. Filing 13. Doe immigrated to the United States with her husband to pursue her PhD, and in May of 2014 she started a doctoral engineering program with the University of Nebraska-Lincoln (UNL). Filing 13 at 7. Although she considered joining multiple departments within the program, Doe ultimately enrolled in the Department of Mechanical and Materials Engineering after a professor in the department, John Roe, offered her a research assistant position. Filing 13 at 7. In this position, Roe would serve as Doe's advisor, and the faculty would fund her research. Filing 13 at 7.

Doe alleges that Roe began sexually harassing her in December 2014. Filing 13 at 8. Despite her efforts to maintain a professional relationship with

Roe, Doe alleges that she continued to endure the following harassment before reporting Roe's conduct to the university:

- <u>December 13, 2014</u>: Roe kissed Doe on the lips in his office.

- <u>Summer 2015</u>: Roe tried to hug Doe, told Doe he loved her, and kicked her legs between twenty and thirty times.

- <u>December 2014 to June 2016</u>: Roe sent Doe multiple unsolicited texts and emails of a sexual nature.

And after Doe refused these advances, Roe allegedly demoted her from first author on a research paper and prevented her from applying for or accepting certain internship opportunities. Filing 13 at 8. On or about June 21, 2016, Doe met with UNL's Office of Institutional Equity and Compliance (OIEC) to report Roe's sexual harassment and retaliation. Filing 13 at 8. After conducting an investigation, the OIEC sent Doe a letter, signed by UNL's Title IX investigator Tamiko (Tami) Strickman, concluding that Roe violated UNL's sexual harassment policy. Filing 1-11 at 1.

In this letter, Strickman noted that the OIEC's decision was based on the following evidence: (1) Roe was Doe's advisor and had a supervisory, evaluative role over her at the time of his harassing behavior; (2) Roe did not dispute that he kissed Doe on the lips in his office; (3) according to electronic messaging records, Roe had told Doe that he wanted to kiss her on multiple occasions; and (4) Roe did not dispute that he sent Doe a link to a romantic movie.[1] Filing 1-11 at 1-2. At the outset of the investigation, Doe was assigned

---

[1] In reaching its determination, the OIEC also concluded that the following accusations were *not* shown by the greater weight of the evidence: (1) Roe had kicked Doe in a forceful or harassing manner; (2) Roe told Doe he loved her; and (3) Roe's decision to move Doe from first

a new supervisor. Filing 1-11 at 2. Later, pursuant to the above findings, the OIEC issued a no-contact directive against Roe and agreed that the graduate school would cover tuition and fees for the remaining six credits Doe needed to complete a master's degree. Filing 1-11 at 2; filing 13 at 9-10.

After the investigation, Doe was forced to continue seeing Roe on campus from November 2016 to March 2017 because her office and the labs in which she worked were located in the Mechanical Engineering Department. Filing 14 at 9. And despite the no-contact order, Doe alleges that Roe would say hello, stare, smile, and sneer at her when he saw her. Filing 13 at 9. On March 7, 2017, Doe again reported Roe's actions to the OIEC in an email to Strickman. Filing 13 at 9; filing 1-19. Doe noted that she felt "really disturbed and unsafe," and was reporting the incident to "ask for . . . help." Filing 1-19. Strickman responded to this report the same day with a one-line email: "Would you like to go over additional safety planning with [a member of the UNL police force]?" Filing 1-20; filing 13 at 9. Strickman also allegedly told Doe that "she would talk to Roe." Filing 13 at 9.

According to Doe, this was the extent of the response she received to her March 7 report—neither Strickman nor Fischer ever followed up with her, confirmed that they spoke with Roe, or launched a Title IX or police investigation despite Roe's continued harassment and violation of the no-contact directive. Filing 13 at 10. And Doe claims that after this report, Roe continued to stare and say hello to her in the hallway and at university events, causing her "significant fear and anxiety." Filing 13 at 10. In the summer of

---

to second author was retaliatory based on her rejection of his sexual advances, as the evidence showed his decision was based on "subpar work product." Filing 1-11 at 2.

3

2017, Doe made the decision to leave UNL "due to UNL's failure to protect her from Roe's continued harassment and stalking." Filing 13 at 10.

Additionally, Doe claims she was subjected to harassment and retaliation even after she began a PhD program at a new academic institution. Filing 13 at 10. First, Strickman requested that Doe sign documents allowing Roe to apply for a patent with the paper on which she claimed she had been retaliatorily demoted. Filing 13 at 10; filing 1-21. And, on September 25, 2017, Roe allegedly violated the no-contact directive by copying Doe on an email in which he was following up on the patent. Filing 13 at 10; filing 1-22; filing 1-23. Doe contacted Strickman on both September 27 and 28 to report Roe's communication, but she never received a response. Filing 13 at 11; filing 1-23; filing 1-24. According to Doe, no Title IX or police investigation was initiated based on this report. Filing 13 at 11.

On March 14, 2018, Doe contacted Strickman to report that the student who Roe promoted to first author in Doe's place was making false statements about her. Filing 13 at 11; filing 1-25. In addition to emphasizing how the student's false statements were damaging her professional reputation, Doe also outlined the shortcomings of the OIEC's response to her reports, demanded an apology, and requested information pertinent to her case that would allow her to clear her reputation. Filing 1-25. Strickman replied the same day stating that her office had investigated and closed the matter involving Doe and Roe. Filing 1-25. According to Doe, UNL did not initiate any investigations based on this report. Filing 13 at 12. Unsatisfied with this response, Doe wrote to UNL Chancellor Ronnie Green on May 20, 2019, describing the harassment she experienced and "UNL's indifference to her

plight." Filing 13 at 12; filing 1-26. Doe never received a response to this letter. Filing 13 at 12.

According to Doe, she has suffered financially and emotionally as a result of Roe's harassment, as she did not perform well academically when she was under Roe's control, was required to transfer to a new PhD program, developed joint pain from stress that required physical therapy, and experienced strains in her marriage. Filing 13 at 12-13. Doe has now sued the Board of Regents of the University of Nebraska, Tamiko Strickman and John Roe (in both their official and individual capacities), and other unidentified individuals. Filing 13 at 1. Doe's first two claims, specifically against the Board, are for violations of Title IX based on its alleged deliberate indifference to sex discrimination and retaliation. Filing 13 at 13-16. Doe also brought § 1983 claims against all of the defendants, arguing that their actions violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution. Filing 13 at 16-19. The Board and Tamiko (referred to collectively in this Order as "defendants") moved to dismiss Doe's claims under Fed. R. Civ. P. 12(b)(1) and (6).

## II. STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the

5

factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly,* 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are

alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). The Court may also take notice of public records. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

## III. DISCUSSION

### 1. TITLE IX

Doe's first two claims in her second amended complaint allege that the Board violated Title IX through both its deliberate indifference to Roe's continued sexual harassment and by retaliating against her for reporting Roe's harassment. Filing 13 at 13-16. The Board alleges, in part, that Doe has failed to state a claim under Title IX, and therefore, both claims should be dismissed. Filing 19 at 12-16.

### (a) Deliberate Indifference

First, Doe alleges that, despite the defendants' actual knowledge of Roe's previous sexual harassment, they were deliberately indifferent to her March 7, 2017 report, which led to her experiencing further sexual harassment by Roe. Filing 13 at 14-15. Title IX prohibits educational institutions that receive federal funds—the "grant recipient"—from discriminating on the basis of sex, and, under this statute, sex discrimination includes sexual harassment. *Du Bois v. Bd. of Regents of the Univ. of Minn.*, 987 F.3d 1199, 1202-03 (8th Cir. 2021). Where a plaintiff's claim is based on sexual harassment of a student by a teacher, the educational institution may be liable if "an official of the grant recipient with authority to address harassment complaints had actual notice of the teacher's alleged misconduct, and the official's inadequate response amounted to deliberate indifference to the discrimination." *KD v. Douglas*

7

*Cnty. Sch. Dist. No. 001*, 1 F.4th 591, 597-98 (8th Cir. 2021) (citing *Cox v. Sugg*, 484 F.3d 1062, 1067 (8th Cir. 2007)).

Actual notice may be established where it is shown that an official of the grant recipient with authority to address harassment complaints had prior knowledge of harassment previously committed by the same perpetrator. *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058 (8th Cir. 2017). And once a grant recipient has actual notice of sexual harassment, it may be deliberately indifferent if the "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Maher v. Iowa State Univ.*, 915 F.3d 1210, 1213 (8th Cir. 2019) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). Such deliberate indifference must, at a minimum, directly cause the plaintiff to undergo harassment or make them vulnerable to it. *K.T.*, 865 F.3d at 1057; *Ostrander v. Duggan*, 341 F.3d 745, 750 (8th Cir. 2003).

At this stage, taking all Doe's factual allegations as true, she has sufficiently pled a Title IX deliberate indifference claim against the Board based on her March 7, 2017 report to Strickman. First, it is undisputed that Strickman had actual knowledge of Roe's previous sexual harassment of Doe at the time of her March 7 report. In fact, the OIEC previously found, after an investigation led by Strickman, that Roe violated UNL's sexual harassment policy and had ordered Roe to cease all contact with Doe. *See* filing 19 at 5-6. It is also undisputed that Strickman, in her role as an Investigator and Deputy Title IX Coordinator at UNL during the relevant period, had authority to address harassment complaints, meaning her actual knowledge is imputed to the Board. *See* filing 13 at 6; filing 19 at 5-6.

Additionally, although Strickman responded to Doe's report the same day, Doe has pled sufficient facts to reasonably infer, at this stage, that Strickman's response was unreasonable given the severity of the circumstances allegedly known to her at the time, and that this deliberate indifference made Doe vulnerable to additional harassment. Specifically, Doe alleges that Strickman's only responses to this report were a one-line email asking if Doe would like to "go over additional safety planning," and a later statement from Strickman that she would "talk to Roe." Filing 1-20; filing 13 at 9. According to Doe, Strickman did not launch an investigation into the report, take steps to keep Roe from accessing Doe in the future, or follow up with Doe about conversations had with Roe. Filing 13 at 9-10.

In sum, besides an offer to talk about additional safety planning, Strickman allegedly took no action when faced with reports that Roe was violating a no-contact order and continually harassing a student whom he had—according to Strickman's own investigation—made multiple unwanted advances toward both on and off campus. And given that Doe has also alleged that Strickman's response led to continued "harassment, stalking, and violation of the no-contact directive" by Roe, see filing 13 at 10, Doe has sufficiently pled a Title IX deliberate indifference claim against the Board.

The defendants' argument to the contrary is premised on a disagreement about the applicable legal standard: they argue that Doe cannot state a Title IX deliberate indifference claim because she did not allege facts showing that Roe's harassment was so "severe, pervasive, and objectively offensive" that it had the systemic effect of denying the victim equal access to an educational program or activity. Filing 19 at 13. However, the cases relied upon by the defendants for this Title IX deliberate indifference standard involve incidents

9

of *student-on-student* harassment. *See, e.g.*, *Davis*, 526 U.S. at 650; *K.T.*, 865 F.3d at 1056; *Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 864 (8th Cir. 2011).[2] And the Court is aware of no authority, nor have the defendants cited to any authority, where the Eighth Circuit has applied this standard in a case involving *teacher-on-student* harassment. *Compare Shank v. Carleton Coll.*, 993 F.3d 567, 573 (8th Cir. 2021) (applying the "severe, pervasive, and objectively offensive" standard in a Title IX case involving student-on-student harassment), *and Pearson v. Logan Univ.*, 937 F.3d 1119, 1125 (8th Cir. 2019) (same), *with KD*, 1 F.4th at 597-98 (stating that a plaintiff in a Title IX teacher-on-student harassment case must show that an official of the grant recipient was deliberately indifferent to known acts of discrimination that occurred under its control); *Podrebarac v. Minot State Univ.*, 835 F. App'x 163, 164 (8th Cir. 2021) (same).

And this conclusion aligns with the Supreme Court's analysis in *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999), which first applied the "severe, pervasive, and objectively offensive" standard in a Title IX case involving student-on-student harassment. In doing so, the Supreme Court noted how this standard is necessary before imposing liability where schools may be dealing with immature students who are "still learning how to interact

---

[2] As for the Eighth Circuit case provided by the defendants which states that a necessary element of a hostile environment sexual harassment claim under Title IX is that the harassment was sufficiently severe or pervasive, *see Lam v. Curators of the Univ. of Mo. at Kan. City Dental Sch.*, 122 F.3d 654, 655 (8th Cir. 1997), the precedent relied on in that case was later abrogated by the Supreme Court in *Gebser v. Lago Vista Indep. Sch. Dist.*, which clarified the standard for teacher-on-student Title IX claims and did not reference the severe, pervasive, and objectively offensive standard. 524 U.S. 274 (1998).

appropriately with their peers." *Id.* at 651-52; *see also Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1284 (11th Cir. 2005); *Wamer v. Univ. of Toledo*, No. 20-cv-942, 2020 WL 6119419, at * 6-7 (N.D. Ohio Oct. 16, 2020).

For these reasons, the Court rejects the defendants' argument that Roe's conduct must have been "severe, pervasive and objectively offensive" for Doe to state a Title IX deliberate indifference claim. Therefore, the defendants' motion to dismiss Doe's Title IX deliberate indifference claim against the Board for failure to state a claim is denied at this stage in the proceedings.

### (b) Retaliation

Next, the Board argues that Doe has failed to state a Title IX retaliation claim since she has presented no facts showing that the Board denied her any benefits of an educational program or activity *because of* her March 7 report of Roe's sexual harassment. Filing 19 at 16. Under Title IX, intentional discrimination on the basis of sex includes when a "funding recipient retaliates against a person *because* [she] complains of sex discrimination." *Du Bois v. Bd. of Regents of the Univ. of Minn.*, 987 F.3d 1199, 1203 (8th Cir. 2021). A retaliation claim under Title IX requires a plaintiff to demonstrate that "(1) she engaged in protected conduct; (2) she suffered a materially adverse . . . act; and (3) the adverse act was causally linked to the [protected] conduct." *Id.* (citing *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1069 (8th Cir. 2017)). In sum, a Title IX retaliation claim must arise from "an intentional response to the nature of the complaint: an allegation of sex discrimination." *Id.*

It is undisputed that Doe engaged in a protected activity under Title IX since both parties acknowledge that Doe reported sexual harassment in her March 7 report to Strickman. *See* filing 13 at 9; filing 19 at 7. Additionally, Doe alleges that she suffered a materially adverse act when Strickman failed to

11

explore the foundation for her March 7 report, thereby allowing Roe to continue to harass her. Filing 13 at 16; filing 22 at 17. However, Doe does not allege any facts from which the Court could reasonably infer that Strickman *intentionally* failed to investigate Doe's March 7 report *because* it was a sexual harassment complaint.

At most, Doe alleges, in a conclusory manner, that "Defendants' adverse actions against Plaintiff were in direct response to and were in retaliation for the exercise of her rights under Title IX." Filing 13 at 16. And Doe argues that Strickman's acts can be classified as retaliatory because Strickman had a "duty to explore" the foundation of her report, but did not. Filing 22 at 17. But alleging that Strickman failed to adequately respond to the complaint—while it may establish that Strickman took an adverse action against Doe or that Strickman acted with deliberate indifference—is not enough, on its own, to support the inference that Strickman *intentionally* acted in an ineffective manner in retaliation to Doe's report of sexual harassment.[3]

The lack of any facts which would allow the Court to infer a retaliatory causal connection is further evidenced by Doe's brief. Under Doe's heading titled "but-for causal connection between the protected activity and the materially adverse action," Doe only notes that Strickman's "failure to respond was causally connected to Roe's further harassment of Plaintiff." Filing 22 at 17. But that misses the point. To state a Title IX retaliation claim, Doe must allege facts showing that Strickman's adverse conduct of failing to investigate *was causally related to Doe's protected activity of filing a sexual harassment*

---

[3] The Court does question, however, whether failing to act on a complaint of discrimination can, standing alone, form the basis for a retaliation claim—at that point, *any* actionable discrimination claim would also include a purportedly separate retaliation claim.

*claim,* not that Strickman's adverse conduct led to further harassment.

Although Doe does not need to establish a prima facie case of retaliation to survive a motion to dismiss, she must allege facts which support an inference that the Board could be liable for retaliation above a speculative level. Since Doe has not alleged facts from which the Court can reasonably infer that Strickman's conduct was intentionally retaliatory, Doe's Title IX retaliation claim against the Board is dismissed.

## 2. CONSTITUTIONAL CLAIMS

Doe also brought multiple constitutional claims against the defendants under 42 U.S.C. § 1983, but has agreed to dismiss these claims against the defendant Regents. Filing 22 at 3. The defendants argue that Doe's remaining constitutional claims—Doe's claims against Strickman in her individual capacity for denial of due process and equal protection under the Fourteenth Amendment—should be dismissed. The defendants argue, in part, that Doe has failed to state a valid claim, and even if she has, Strickman is entitled to qualified immunity.

"The essential elements of a § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) (citing *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999)). Since there is no dispute that Strickman acted under the color of state law, the Court will evaluate whether Doe has alleged sufficient facts to reasonably infer that Strickman's conduct violated Doe's constitutional rights under the Fourteenth Amendment.

13

(a) Due Process

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 2. The Due Process Clause "has two components: the procedural due process and substantive due process components." *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999). When reviewing either type of claim, the Court must first analyze the threshold question of whether the defendant's conduct violated a protected life, liberty, or property interest. *Id.*

### (i) Substantive Due Process

In her second amended complaint, Doe alleges, in part, that Strickman's deliberate indifference violated her substantive due process rights by subjecting her to Roe's sexual harassment and depriving her of her liberty interest in bodily integrity. Filing 13 at 17. On multiple occasions, the Eighth Circuit has stated that "[s]exual harassment by state actors violate[s] the Fourteenth Amendment and establishes a section 1983 action." *Cox v. Suggs*, 484 F.3d 1062, 1066 (8th Cir. 2007). And although the Court in *Cox* noted that some sexual harassment that is actionable under Title IX may not be a constitutional tort under the substantive due process clause, it did not elaborate on that distinction. *Id.* at 1068 n.1.

Later, in *Flaherty*, the Eighth Circuit held that, "[i]n the context of a § 1983 claim of unconstitutional sexual abuse by a teacher at an institution that receives Title IX funding . . . individual liability of a supervisory school official should be measured 'by the standards of the institution's Title IX liability established in *Gebser*.'" *Doe v. Flaherty*, 623 F.3d 577, 584 (8th Cir. 2010) (citing *Gebser*, 524 U.S. 274). Accordingly, to establish § 1983 liability, a

14

plaintiff must show that the supervisory official with authority to address sexual misconduct complaints had actual notice of a pattern of unconstitutional conduct, showed deliberate indifference to those acts, and such failure proximately caused injury to the plaintiff. *Id.*

The Court has already determined that Doe alleged sufficient facts, at this stage, to reasonably infer Strickman had actual notice of a pattern of sexual harassment by Roe, and that her deliberate indifference to the March 7 report resulted in Roe's continued sexual harassment of Doe.[4] As such, Doe has stated a substantive due process claim.[5]

Additionally, Strickman is not entitled to qualified immunity on this claim. Qualified immunity shields public officials performing discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015); *see Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).* In determining whether a government official is entitled to qualified immunity, the Court asks (1) whether the facts alleged establish a violation of

---

[4] Since the Eighth Circuit has held that sexual harassment by a state actor may violate a plaintiff's liberty interests under the Fourteenth Amendment, the Court need not decide, at this time, whether Doe also had a protected property interest in continuing her education. *See* filing 19 at 24; filing 22 at 21.

[5] The defendants argue that Strickman's conduct did not rise to the level of conscience-shocking. Filing 19 at 25. But where the deliberate indifference standard is used, a state actor's deliberate indifference to unconstitutional conduct may satisfy the "shocks the conscience" standard. *See Flaherty*, 623 F.3d at 584; *Shrum ex rel. Kelly v. Kluck,* 249 F.3d 773, 779 (8th Cir. 2001).

15

a constitutional or statutory right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Johnson v. Phillips*, 664 F.3d 232, 236 (8th Cir. 2011); *see Parker*, 777 F.3d at 980. For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Parker*, 777 F.3d at 980.

It is clearly established that university students have a right not to be discriminated against or harassed on the basis of sex. *Crawford v. Davis*, 109 F.3d 1281, 1284 (8th Cir. 1996). And it is also clearly established "that a supervisory school official with actual notice of ongoing sexual abuse against a student [is] required to take action to investigate and stop the abuse." *Doe v. Flaherty*, 623 F.3d 577, 584-85 (8th Cir. 2010). Nor is there any factual novelty in this case implicating the "fact-intensive" nature of the inquiry, *see Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004)—this is, factually, a garden-variety case of sexual harassment. Thus, based on the facts as alleged by Doe, Strickman violated Doe's clearly established Fourteenth Amendment rights when, despite her knowledge of Roe's previous harassment, she was deliberately indifferent to Doe's March 7 report. Therefore, the defendants' motion to dismiss Doe's substantive due process claim against Strickman for failure to state a claim is denied.

### (ii) Procedural Due Process

Doe has also alleged that the Strickman violated her procedural Due Process rights under the Fourteenth Amendment by failing to follow UNL policies in response to her March 7 report. Filing 13 at 17. Specifically, she alleges that Strickman did not initiate an investigation, follow the prescribed

16

remedial measures, or notify her of her rights under UNL policy or state and federal law. Filing 13 at 17. Unlike the substantive due process provision, which "protects individual liberty against certain government action regardless of the fairness of the procedures used," a procedural due process claim requires a plaintiff to establish both "that [her] protected liberty or property interest is at stake . . . . [and] that the defendant deprived [her] of such interest without due process of law." *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 816-17 (8th Cir. 2011). Having determined that Roe's continued sexual harassment of Doe after her March 7 report deprived her of her liberty interest in bodily autonomy—being free from sexual harassment by state actors—the question is whether Strickman's conduct deprived her of this interest without due process of law.

"Due process is a flexible concept, requiring only such procedural protections as the particular situation demands." *Id.* at 817 (citations omitted). In deciding whether a plaintiff received due process, the Court must consider whether he or she had the "opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* And when determining whether a university's procedures are constitutionally adequate, the Court must "consider the relevant governmental and private interests," including "the private interests affected by official action, the risk of an erroneous deprivation through the procedures used, the probable value of additional or substitute procedural safeguards, and the government's interest, including the burdens that additional safeguards would entail." *Doe v. Univ. of Ark. – Fayetteville*, 974 F.3d 858, 866 (8th Cir. 2020).

Taking Doe's allegations as true, she was not given an opportunity to be heard in a meaningful manner with regards to her March 7 report. In fact, Doe

17

alleges that Strickman deprived her of the procedural safeguards UNL had in place to investigate complaints of sexual harassment by failing open an OIEC investigation, take any statements from Doe or Roe, or determine the merits of Doe's claims. Filing 13 at 9. And by not investigating the claim in any manner, as Doe alleges, the risk of erroneous deprivation of Doe's right to be free from sexual harassment by a state actor was high. However, the use of additional investigative procedures by UNL and the OIEC to protect Doe's Fourteenth Amendment rights would not have placed any additional burden on the institution since, according to Doe, UNL's policy at that time already required the Title IX Coordinator to investigate sexual harassment complaints and determine their merit within sixty days. Filing 22 at 22. Accordingly, Doe has, at this stage, stated a procedural due process claim against Strickman in her individual capacity.

Next, the Court must determine whether Strickman is entitled to qualified immunity. The critical question is whether a reasonable person in Strickman's position would understand that failing to investigate a student's claim of ongoing sexual harassment and violation of a no-contact order by a professor would violate the student's procedural due process rights.

As stated earlier, it is clearly established that supervisory school officials with actual notice of ongoing sexual abuse against a student are required to take action to investigate and stop the abuse, and failing to do so violates the Fourteenth Amendment. *Flaherty*, 623 F.3d at 584-85. And while it may not be clearly established exactly what procedures a university must follow when investigating such claims, this precedent makes it clear to a reasonable person in Strickman's position that failing to do *any* investigation into a complaint of ongoing sexual harassment of a student by a professor, as alleged by Doe,

would violate students' procedural rights under the Fourteenth Amendment. As such, Strickman is not entitled to qualified immunity on this claim, and the defendants' motion to dismiss Doe's procedural due process claim is denied at this stage in the proceedings.

### (b) Equal Protection

Next, Doe alleges that Strickman's failure to investigate her sexual harassment claims violated her rights under the Fourteenth Amendment Equal Protection Clause. Filing 13 at 18-19. More specifically, she contends that claims of sexual harassment and assault—which are more likely to involve female victims—were treated differently than other complaints filed at UNL, disparately subjecting female students to a hostile educational environment. The defendants move to dismiss Doe's Fourteenth Amendment Equal Protection claim, arguing that Doe has failed to plead facts showing that she was treated differently than similarly situated students outside of her protected class. Filing 19 at 25. The Court agrees.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state . . . shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 2. And as discussed above, the Eighth Circuit has held that "[s]exual harassment by state actors violate[s] the Fourteenth Amendment and establishes a section 1983 action." *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007) (citations omitted). More recently, however, the Eighth Circuit emphasized that such claims implicating the Equal Protection Clause require proof of intentional discrimination, which can be shown if a plaintiff demonstrates that he or she was treated differently than similarly situated individuals outside of his or her protected class. *Does 1-2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 580 (8th Cir. 2021). This

19

requirement of intentional discrimination aligns with U.S. Supreme Court's holdings that "disparate impact alone is insufficient to show an equal protection violation; instead, proof of discriminatory intent or purpose is required." *United States v. Ronning*, 6 F.4th 851, 853 (8th Cir. 2021).

Doe has not pled any facts supporting the inference that she was treated differently than similarly situated male complainants. In fact, Doe does not allege that Strickman investigated her sexual harassment claim differently than she did sexual harassment claims made by male students. Instead, she alleges that UNL treated *all* complaints of sexual harassment and stalking differently than other types of complaints, which in turn had a disparate impact on female students. Filing 13 at 18. From this allegation, it can be inferred that males reporting sexual harassment also received inadequate responses from Strickman. And while this may prove disparate impact on female students—taking as true that most complainants were female—that is not enough to support an Equal Protection claim based on *intentional* gender discrimination. Since Doe's allegations, at most, allow an inference of disparate impact, the Court will grant the defendants' motion to dismiss Doe's Equal Protection claim.

### 3. STATUTE OF LIMITATIONS & STANDING

Finally, the defendants argue that Doe's Title IX and § 1983 claims are barred by the statute of limitations to the extent that these claims rely on actions or inactions that accrued prior to February 28, 2017. Filing 19 at 9, 17. Additionally, the defendants argue that Doe cannot rely on any actions or inactions that occurred after she left UNL to support her Title IX claims, since she lacks standing to bring claims based on conduct that occurred when she was no longer a student. Filing 19 at 11. Accordingly, the defendants ask the

20

Court to dismiss or strike all claims based on events that accrued prior to February 28, 2017 <u>and</u> after Doe left UNL in the summer of 2017.

"Neither § 1983 nor Title IX contains its own statute of limitation." *Walker v. Barrett*, 650 F.3d 1198, 1205 (8th Cir. 2011). Instead, the Supreme Court has held that § 1983 claims are governed by the personal injury statute of limitation of the state where the claim accrued, and the Eighth Circuit has held that Title IX claims are governed by the same statute of limitation. *Id.* at 1205 (citing *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 617-18 (8th Cir. 1995)). Under Nebraska law, a personal injury action must be brought within four years from the date on which the action accrued. Neb. Rev. Stat. § 25-207; *Anthony K. v. Neb. Dep't of Health and Human Servs.*, 855 N.W.2d 788, 799 (Neb. 2014). Claims accrue when a plaintiff knows or should know of the injury which is the basis for the action. *See K.T.*, 865 F.3d at 1057; *Haltom v. Parks*, No. 8:15-cv-428, 2018 WL 1033490, at * 6 (D. Neb. Feb. 21, 2018).

Although damages are only available with respect to events that occurred within the limitations period, *Kline v. City of Kan. City*, 175 F.3d 660, 665 (8th Cir. 1999), "[i]ncidents which occurred outside the filing period . . . may be admissible as relevant background to later discriminatory acts," *Kimzey v. Wal-Mart Stores*, 107 F.3d 568, 573 (8th Cir. 1997) (citation omitted). And for the purposes of this motion, it is critical to remember that the statute of limitations defense is "an affirmative defense, which the defendant must plead and prove." *Walker*, 650 F.3d at 1203 (citing *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008)). Thus, even if a statute of limitations defense exists, this defense "is not ordinarily a ground for Rule

12(b)(6) dismissal unless the complaint itself establishes the defense." *Joyce v. Teasdale*, 635 F.3d 364, 367 (8th Cir. 2011) (citing *Jessie*, 516 F.3d at 713 n.2)).

Here, Doe filed her original complaint on February 28, 2021. As such, for the defendants to prevail on their 12(b)(6) motion on statute of limitations grounds, the complaint must establish that all Doe's claims accrued *prior* to February 28, 2017. That is not the case. As outlined above, Doe has stated a Title IX deliberate indifference claim which accrued *after* February 28, 2017. Specifically, Doe alleged that Strickman was deliberately indifferent when responding to her March 7, 2017 report of Roe's sexual harassment. This claim accrued on or after March 7, 2017, when Doe learned that Strickman's actions, despite her actual knowledge of Roe's past conduct, were inadequate to address his ongoing sexual harassment. As such, the Court will not dismiss Doe's Title IX deliberate indifference claim on statute of limitations grounds. Likewise, the Court determined that Doe alleged sufficient facts to infer that Strickman's response to Doe's March 7 report may have violated Doe's due process rights under the Fourteenth Amendment; therefore, the Court will deny the defendants' request to dismiss Doe's § 1983 claims on statute of limitations grounds.

As for the defendants' actions that occurred prior to February 28, 2017, Doe argues, for the first time in her brief, that liability based on these actions is not time barred because all of the defendants' conduct—starting from its response to her original complaint in June 2021 and including its response to her March 7, 2017 report—are part of a continuing violation. Filing 22 at 5. However, this is wholly inconsistent with her complaint, which clearly alleges that the defendants' deliberate indifference to Roe's conduct began "after" her March 7 report. Filing 13 at 13. But even assuming Doe did allege a continuing

22

violation in her complaint, the Court is aware of no binding authority—nor has Doe provided any such authority—applying the continuing tort doctrine to Title IX or § 1983 claims based on sexual harassment. The Court is not inclined, nor required, to apply the theory to Doe's claims based on allegations raised for the first time in her brief. Thus, the defendants' conduct occurring prior to February 28, 2017, is time-barred and may not be used as the basis for defendants' liability.

Still, the Court will deny the defendants' request to strike factual allegations about conduct that occurred prior to February 28, 2017, as it may be admissible as relevant background to later discriminatory acts, including the defendants' actual knowledge at the time of their alleged violations.

Lastly, since the Court has determined that Doe sufficiently stated a Title IX deliberate indifference claim based on Strickman's response to Doe's March 7 report, it will only briefly address defendants' argument that Doe lacks standing to base this claim, in any part, on the defendants' conduct occurring after she left UNL in the summer of 2017. Filing 19 at 11-12. To support this argument, the defendants point to multiple cases where courts have held that a student's parents or students who were never enrolled in the university lacked standing to bring Title IX claims for incidents that occurred on campus. *See* filing 19 at 11-12. However, those cases are not applicable to determining standing in the instant case.

And while the Eighth Circuit has held it "is an adequate basis to dismiss an individual Title IX claim for *injunctive relief*" if the plaintiff is no longer a student, *see Podrebarac v. Minot State Univ.*, 835 Fed. Appx. 163 (8th Cir. 2020); *Grandson v. Univ. of Minn.*, 272 F.3d 568, 574 (8th Cir. 2001), where there is a Title IX damages claim, the critical question in determining standing

23

is whether the defendants' actions "exclude, deny, or subject the person to discrimination under an education program or activity," *Rossley v. Drake Univ.*, 958 F.3d 679, 684 (8th Cir. 2020). Therefore, since Doe is requesting money damages, filing 13 at 20-21, the critical question is whether the defendants' conduct continued to exclude or deny her access to an educational program even after she transferred.

At this early stage, Doe has alleged that she left UNL only because the defendants failed to adequately protect her from Roe's ongoing harassment. Filing 13 at 10. Because of this, she was unable to finish her PhD program, and allegedly had to start her degree over entirely at another university. Filing 13 at 10. Yet even after she left, Doe alleges that Roe continued to violate the no-contact directive, and Strickman failed to act on her reports of these violations. Taking these facts as true, as is required, the Court can infer that the defendants' actions deprived Doe of access to an educational program and prevented her from retuning to finish a degree for which she had already acquired substantial credit.

Therefore, although the Court has found that Doe stated a Title IX deliberate indifference claim without considering the defendants' actions that occurred after Doe left UNL, the Court will not find, at this early stage, that Doe lacks standing to support her claim with this conduct. But it is another matter entirely whether these actions could adequately support a Title IX claim.

IT IS ORDERED:

1. The defendants' motion to dismiss (filing 18) is granted in part, and in part denied.

24

2.    The plaintiff's Title IX retaliation claim is dismissed.

3.    The plaintiff's § 1983 claims against the defendant Board of
      Regents are dismissed as agreed by the plaintiff.

4.    The plaintiff's § 1983 claim against Strickman with respect
      to alleged violations of the Fourteenth Amendment Equal
      Protection Clause is dismissed.

Dated this 5th day of January, 2022.

BY THE COURT:

John M. Gerrard
United States District Judge

25