## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**                    **CIVIL ACTION**

**VERSUS**                               **NO. 21-242-WBV-SDJ**

**LOUISIANA STATE UNIVERSITY, ET AL.**

### ORDER AND REASONS

Before the Court is a Rule 12(b)(6) Motion to Dismiss, filed by defendant, Jennie Stewart.[1]  Plaintiffs oppose the Motion,[2] Stewart has filed a Reply,[3] and both Stewart and Plaintiffs were allowed to file supplemental memoranda addressing recent authority.[4]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

## I.    FACTUAL and PROCEDURAL BACKGROUND

This case involves allegations by ten former students of Louisiana State University and Agricultural and Mechanical College ("LSU") that LSU and its Athletic Department funded and implemented a purposefully deficient sexual misconduct and Title IX reporting scheme separate from LSU's official Title IX office to keep sexual assault claims within the Athletic Department.[5]  In their Second Amended Complaint and Jury Demand ("Second Amended Complaint"), Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth

---

[1] R. Doc. 199.
[2] R. Doc. 213.
[3] R. Doc. 225.
[4] R. Docs. 260 & 285.
[5] R. Doc. 1 at ¶ 10; R. Doc. 22 at ¶ 10; R. Doc. 182 at ¶ 25.

Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch (collectively, "Plaintiffs"), allege that while attending school at LSU's Baton Rouge campus between 2009 and 2021, the defendants, LSU's Board of Supervisors, Jennie Stewart, Verge Ausberry, Miriam Segar, and Johnathan Sanders (collectively, "Defendants") repeatedly engaged in discriminatory, retaliatory, and other unlawful actions in their interactions with Plaintiffs and in response to Plaintiffs' reports of Title IX violations and violations of LSU's Code of Student Conduct, thereby violating their own policies.[6]  Plaintiffs allege that LSU handled Title IX complaints made against student-athletes differently than complaints made against non-athletes.[7] Plaintiffs further allege that, "Title IX complaints against student-athletes are purposefully buried or diverted so as to ensure that those complaints were never properly investigated or addressed and the student-athletes are not negatively impacted or prevented from concentrating on their athletics, all of which benefits LSU financially and causes further harm to Plaintiffs."[8]  Plaintiffs assert that Defendants' actions and inactions in response to their reports of Title IX violations subjected them to additional harassment and created a sexually hostile environment on campus.[9]

Plaintiffs allege that they were victims of sex-based discrimination, including rape, sexual assault, sexual harassment, and/or stalking, that was perpetrated by male LSU students and a male professor between 2009 and 2020, and that one

---

[6] R. Doc. 182 at ¶ 36.
[7] *Id*. at ¶ 43.
[8] *Id*. at ¶ 44.
[9] *Id*. at ¶ 45.

plaintiff was the victim of verbal and emotional abuse by an LSU tennis coach.[10] Although the alleged sexual misconduct occurred more than a year before Plaintiffs filed this lawsuit, Plaintiffs allege that they were unaware of LSU's inadequate Title IX reporting policies until the March 2021 publication of the Husch Blackwell report. According to Plaintiffs, LSU retained the Husch Blackwell law firm in November 2020 to investigate the school's handling of several Title IX-related incidents, as well as LSU's Title IX policies and procedures.[11]  Plaintiffs allege that Husch Blackwell publicly released its investigative report and findings on March 5, 2021, concluding that various incidents of athletics-related misconduct had not been appropriately reported to LSU's Title IX Coordinator and voicing concern about a lack of reporting prior to November 2016.[12]  Husch Blackwell also found that LSU's Title IX Office had never been appropriately staffed or provided with the independence and resources to carry out Title IX's mandates, noting that the Title IX Office "has at time not handled those matters reported to it appropriately." [13]  Husch Blackwell noted that its concerns about reporting were not limited to athletics, and that it found deficiencies in a variety of different matters.[14]  In the Second Amended Complaint, Plaintiffs allege that they could not have known that LSU and its employees, including the individual defendants, had concealed disclosures of sexual misconduct that should have been reported to LSU's Title IX Office, that LSU purposely handled complaints

---

[10] *Id*. at ¶¶ 113-741.
[11] R. Doc. 182 at ¶ 47.
[12] *Id*. at ¶¶ 51-52.
[13] *Id*. at ¶¶ 53-54.
[14] *Id*. at ¶¶ 52 & 54.

of sexual misconduct perpetrated by student athletes or others affiliated with the LSU Athletics Department in a different manner than complaints of sexual misconduct perpetrated by other individuals, and the defendants intentionally instituted a process of responding to disclosures of Title IX violations in a manner designed to deter any future disclosures.[15]

Pertinent to the instant Motion, Plaintiffs assert the following three claims under 42 U.S.C. § 1983 against Jennie Stewart in her individual capacity as LSU's Title IX Coordinator from 2015 to March 2021:[16] (1) First Amendment Retaliation; (2) Denial of Equal Protection under the Fourteenth Amendment; and (3) Denial of Substantive and Procedural Due Process under the Fourteenth Amendment.[17]  In her Motion to Dismiss, Stewart asserts that she is entitled to summary judgment and dismissal of Plaintiffs' three § 1983 claims because they are time-barred and, alternatively, because she is entitled to qualified immunity.[18]  Plaintiffs assert that their claims are not time-barred based upon the doctrine of *contra non valentum* because they were unaware of the causal connection between their injuries and the

---

[15] *Id*. at ¶ 83.

[16] *Id*. at ¶ 21.  The Court notes that in listing the defendants in this case in its Second Amended Complaint, Plaintiffs seem to assert that Stewart is being sued "in her official and personal capacity." *Id*.  In the heading of Counts V, VI, and VII, however, which contain the only claims asserted against Stewart, Plaintiffs assert that the claims are asserted against the individual defendants, including Stewart, "in their individual capacities." *Id*. at pp. 134, 142, & 145.  Plaintiffs further assert, in each count, that, "[A] valid individual capacity claim requires a Section 1983 plaintiff to 'establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation." *Id*. at ¶¶ 1007, 1065, & 1093 (quoting *Louisiana Cleaning Sys. v. Brown*, Civ. A. No. 14-2853, 2015 WL 6869907, at *7 (W.D. La. Nov. 9, 2015) (James, J.)) (internal quotation and quotation marks omitted).  Thus, Plaintiffs seem to assert these claims against Stewart in her personal capacity. *See*, *Brown*, Civ. A. No. 14-2853, 2015 WL 6869907, at *5-7 (addressing the plaintiffs' claims brought against a sheriff in his official and individual capacities).

[17] R. Doc. 182 at ¶¶ 754-1118.

[18] R. Doc. 199.

actions of the defendants, including Stewart, until the publication of the Husch Blackwell report in March 2021.[19]  As such, Plaintiffs argue that their claims did not begin to accrue until a month before they filed their Complaint on April 26, 2021. Plaintiffs further assert that they have alleged plausible § 1983 claims against Stewart under the First and Fourteenth Amendments and that Stewart is not entitled to qualified immunity.  In response, Stewart maintains that Plaintiffs' claims are time-barred and, alternatively, that she is entitled to qualified immunity.[20]

## II.    LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b) Motion to Dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[21]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[22]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[24]

---

[19] R. Doc. 213.

[20] R. Doc. 225.

[21] Fed. R. Civ. P. 12(b)(6).

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[23] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).

[24] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[25]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. [26] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[27]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[28]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[29]

### B. Liability under 42 U.S.C. § 1983 and Qualified Immunity

Title 42 U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law.  Specifically, § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights,

---

[25] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).
[26] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).
[27] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).
[28] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[29] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

privileges, or immunities secured by the Constitution and
laws, shall be liable to the party injured.[30]

Because § 1983 merely provides a remedy for designated rights, rather than creating
any substantive rights, "an underlying constitutional or statutory violation is a
predicate to liability."[31]  To establish § 1983 liability, the plaintiff must establish the
following three elements: (1) deprivation of a right secured by the United States
Constitution or federal law; (2) that occurred under color of state law; and (3) was
caused by a state actor.[32]

Qualified immunity is a defense to § 1983 claims that "shields government
officials from civil damages liability unless the official violated a statutory or
constitutional right that was clearly established at the time of the challenged
conduct."[33]  The Supreme Court has held that courts may grant qualified immunity
on the ground that a purported right was not "clearly established" by prior case law,
without resolving the often more difficult question of whether the purported right
exists at all.[34]  According to the Supreme Court, "This approach comports with our
usual reluctance to decide constitutional questions unnecessarily."[35]  The Supreme
Court has further held that, "A clearly established right is one that is 'sufficiently
clear that every reasonable official would have understood that what he is doing

---

[30] 42 U.S.C. § 1983.

[31] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[32] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

[33] *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)).

[34] *Reichle*, 566 U.S. at 664, 132 S.Ct. at 2093 (citing *Pearson v. Callahan*, 555 U.S. 223, 227, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

[35] *Reichle*, 566 U.S. at 664, 132 S.Ct. at 2093 (citing authority).

violates that right.'" [36]   "Where no controlling authority specifically prohibits a defendant's conduct[,] . . . the law cannot be said to be clearly established . . . . [G]eneralizations and abstract propositions are not capable of clearly establishing the law."[37]   While there need not be a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate."[38]   "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[39]   The Supreme Court has repeatedly advised courts "not to define clearly established law at a high level of generality," explaining that, "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'"[40]

Once a government official asserts the defense of qualified immunity, the burden shifts to the plaintiff to negate the defense.[41]   To overcome a claim of qualified immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct. [42]   The Supreme Court has held that, "lower courts have

---

[36] *Mullenix v. Luna*, 577 U.S. 7, 11-12, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012)).

[37] *Smith v. Davis*, 507 Fed.Appx. 359, 361 (5th Cir. 2013) (quoting *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc)) (internal quotation marks omitted).

[38] *Mullenix*, 577 U.S. at 11, 136 S.Ct. at 308 (quoting *Ashcroft*, 563 U.S. at 741, 131 S.Ct. 2074) (internal quotation marks omitted).

[39] *Mullenix,* 577 U.S. at 12, 136 S.Ct. at 308 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).  *See, Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) (same).

[40] *Mullenix*, 577 U.S. at 12, 136 S.Ct. at 308 (quoting *Ashcroft*, 563 U.S. at 742, 131 S.Ct. 2074) (internal quotation marks omitted) (emphasis added in *Mullenix*).

[41] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

[42] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citation omitted).

discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."[43]

## III.  ANALYSIS

### A.  Prescription/Tolling of Plaintiffs' § 1983 Claims

Stewart moves for the dismissal of Plaintiffs' § 1983 claims on the grounds that the claims are time-barred by the one-year prescriptive period set forth in La. Civ. Code art. 3492.[44]  The Fifth Circuit has held that, "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[45]  As the parties point out,[46] there is no federal statute of limitations for actions brought under 42 U.S.C. § 1983.[47]  When that is the case, "the settled practice is to borrow an 'appropriate' statute of limitations from state law."[48] In *Wilson v. Garcia*, the Supreme Court held that a § 1983 claim is best characterized as a personal injury action and, as such, is governed by the forum state's statute of limitations for personal injury actions.[49]  In *Owens v. Okure*, the Supreme Court

---

[43] *Ashcroft*, 563 U.S. at 735, 131 S.Ct. at 2080 (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

[44] R. Doc. 199-1 at p. 7 (citing *Elzy v. Roberson*, 868 F.2d 793 (5th Cir. 1989); La. Civ. Code art. 3492).

[45] *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)).

[46] R. Doc. 199-1 at p. 7.  *See also,* R. Doc. 213 at pp. 8-17.

[47] *See, King-White*, 803 F.3d at 758.

[48] *Id.* (citations omitted).  The Fifth Circuit noted, however, that, "Of course, this rule only applies to statutes enacted prior to passage of 28 U.S.C. § 1658, which now governs in such circumstances."  *Id.* at 758, n.3 (*citing* 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004)).  *See, Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018) ("Courts considering claims brought under § 1983 must borrow the relevant state's statute of limitations for personal injury actions.") (citing authority).

[49] *Wilson v. Garcia*, 471 U.S. 261, 276-80, 105 S.Ct. 1938, 1947-49, 85 L.Ed.2d 254 (1985), superseded by statute as stated in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).

clarified that when a state has multiple statutes of limitations for personal injury actions, a § 1983 claim should be governed by the general or residual statute for personal injury actions.[50] Accordingly, this Court will apply Louisiana's one-year prescriptive period for personal injury actions[51] to Plaintiffs' § 1983 claims, rather than the three-year period applicable to sexual assaults.[52]

The Fifth Circuit has held that, "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,' and while we borrow the limitations period from state law, 'the particular accrual date of a federal cause of action is a matter of federal law.'"[53] Thus, federal law governs when a § 1983 claim accrues.[54] A claim "accrues" under federal law when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.[55] According to the Fifth Circuit, a plaintiff's knowledge encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions.[56] "However, the plaintiff need not know that a legal cause of action exists; she need only know facts that would support a claim."[57]

---

[50] 488 U.S. 235, 249-50, 109 S.Ct. 573, 581-82, 102 L.Ed.2d 594 (1989).

[51] La. Civ. Code art. 3492.

[52] La. Civ. Code art. 3496.2.

[53] *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)).

[54] *Redburn*, 898 F.3d at 496 (*citing Piotrowski v. City of Houston*, 51 F.3d 512, 516 n.10 (5th Cir. 1995)); *Smith v. Regional Transit Authority*, 827 F.3d 412, 421 (5th Cir. 2016) (citing *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998)).

[55] *Redburn*, 898 F.3d at 496 (citing *Piotrowski*, 51 F.3d at 516). *See*, *Smith*, 827 F.3d at 421 ("This court has stated that '[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'") (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993)).

[56] *King-White*, 803 F.3d at 762 (quoting *Piotrowski*, 237 F.3d at 576).

[57] *Sherman v. Irwin*, Civ. A. No. 17-4061, 2018, WL 3632360, at *3 (E.D. La. July 31, 2018) (Barbier, J.) (citing *King-White*, 803 F.3d at 762).

Since the Louisiana statute of limitations applies to Plaintiffs' § 1983 claims, Louisiana equitable tolling principles apply. [58]   Louisiana law allows for the suspension of prescription under the doctrine of *contra non valentem*. [59]   The Louisiana Supreme Court has recognized four factual situations in which the doctrine of *contra non valentem* applies to suspend the prescriptive period, the most pertinent to this case being when "the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant."[60] "However, the doctrine of *contra non valentem* only applies in 'exceptional circumstances.'"[61]   Sometimes referred to as the "discovery rule,"[62] the Louisiana Supreme Court has further clarified that, "[t]his principle will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned."[63]   Similarly, a plaintiff may invoke the fraudulent concealment doctrine by proving two elements: (1) that the defendants concealed the conduct complained of; and (2) the plaintiff failed, despite the exercise of due diligence on her part, to discover the facts that form the basis of her claim.[64]

---

[58] *Green v. Doe*, 260 Fed.Appx. 717, 720 (5th Cir. 2007) (citing *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998)).

[59] *Broussard v. Brown*, 599 Fed.Appx. 188 (5th Cir. 2015) (citing *Corsey v. Louisiana*, 375 So.2d 1319, 1321-22 (La. 1979)).

[60] *Renfroe v. State ex rel. Dept. of Transp. and Development*, 2001-1646 (La. 2/26/02), 809 So.2d 947, 953 (citing *Plaquemines Parish Comm. Council v. Delta Dev. Co.*, 502 So.2d 1034 (La. 1987)).

[61] *Renfroe*, 809 So.2d at 953 (*quoting* La. Civ. Code art. 3467, Official Revision Commend (d); *State ex rel. Div. of Admin. v. McInnis Brothers Construction, Inc.*, 97-0742 (La. 10/21/97), 701 So.2d 937, 940). *See*, *Ellis v. Evonik Corp.*, Civ. A. No. 21-1089, 2022 WL 1719196, at *3 (E.D. La. May 27, 2022) (Vance, J.) (same).

[62] *Ellis*, Civ. A. No. 21-1089, 2022 WL 1719196, at *3.

[63] *Renfroe*, 809 So.2d at 953-54 (quoting *Corsey v. State of Louisiana, Through the Department of Corrections*, 375 So.2d 1319, 1322 (La., 1979)).

[64] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988) (citation omitted).

To satisfy the first element, the defendant must have engaged in affirmative acts of concealment.[65] The Fifth Circuit has held that silence is not enough, and that the defendant "must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry."[66]

Here, Stewart asserts that Plaintiffs' § 1983 claims are prescribed because the alleged harassment and sexual assaults occurred more than one year before Plaintiffs filed their Complaint on April 26, 2021. Plaintiffs argue that their § 1983 claims are timely because they did not accrue until the Husch Blackwell report was published in March 2021 and they learned that their injuries were causally connected to actions and inactions by LSU.[67] Plaintiffs repeatedly assert that they were not aware of the causal connection between their injuries and the actions and inactions by LSU, namely LSU's flawed Title IX program, until the publication of the Husch Blackwell report in March 2021.[68] While not a model of clarity, Plaintiffs seem to invoke both the doctrine of *contra non valentem* and the fraudulent concealment doctrine in asserting that LSU's actions and inactions "were actively concealed by the Defendant from Plaintiffs,"[69] that "LSU and its employees went to great lengths to ensure students did not understand their rights or LSU's obligations under Title IX,"[70] and

---

[65] *Allan*, 851 F.2d at 1528-29 (citing authority). *See*, *Rx.com v. Medco Health Solutions, Inc.*, 322 Fed.Appx. 394, 397 (5th Cir. 2009) (citing *Allan*, 851 F.2d at 1531)).

[66] *Allan*, 851 F.2d at 1529 (quoting *Crummer Co. v. Du Pont*, 255 F.2d 425, 432 (5th Cir.1958)) (internal quotation marks omitted).

[67] R. Doc. 213 at pp. 8-10.

[68] *Id*. at pp. 9-10, 15, 16-17.

[69] *Id*. at p. 15. *See also*, *Id*. at pp. 11-14 (alleging acts of concealment by Stewart).

[70] *Id*. at p. 17.

that LSU and its employees "purposefully buried or ignored Plaintiffs' reports of assault and abuse."[71]

The Court agrees with Stewart that, on their face, all of Plaintiffs' § 1983 claims asserted against her in Counts V, VI, and VII of the Second Amended Complaint accrued outside the applicable one-year statute of limitations. The Court addresses the claims made by each plaintiff in turn.

Plaintiffs allege that Richardson was raped by an LSU football player during her freshman year at LSU, which began in the fall of 2014, that she was raped by a football recruit in the fall of 2015, that she was verbally and physically abused by LSU football player John Coe between the summer of 2016 and 2017 and had reported the abuse by October 2016, and that LSU football player John Doe attempted to rape her in the fall of 2016 and she reported it to her direct supervisor the following day.[72] Plaintiffs allege that Robertson was raped by John Doe on January 22, 2016, that it was reported to LSU a few days later, that John Doe continued to verbally harass Robertson in late spring/early summer of 2016, and that he threw a shake on her car during finals week in May 2016.[73] Plaintiffs allege that John Doe took a nude photograph of Brennan without her consent on July 9, 2016, and that Brennan met with LSU officials about it on July 22, 2016.[74] Plaintiffs allege that John Doe also raped Owens on June 28, 2016, that she first disclosed the rape after checking into a nearby rehabilitation facility on or about April 4, 2017, and that the facility reported

---

[71] *Id.*
[72] R. Doc. 182 at ¶¶ 121-122, 124-130, 147-162, 182-191.
[73] *Id.* at ¶¶ 243-248 & 253-255, & 262-268.
[74] *Id.* at ¶¶ 290-306.

the sexual assault to LSU's Athletic Department approximately a week after the initial disclosure and informed Owens and her parents of the report.[75]

Plaintiffs allege that Andries was sexually assaulted by John Roe on a fraternity bus trip in October 2016, that John Roe attempted to sexually assault her again in July 2017, and that she reported the first assault to her LSU therapist in the fall of 2017.[76] Plaintiffs allege that Lewis was physically assaulted by John Coe at least six times between January 2017 and May 2018, and that she first disclosed the abuse to the tennis team athletic trainer in May 2017.[77] Plaintiffs allege that Johnson was verbally and emotionally abused and harassed by the LSU tennis coach, Julia Sell, between the fall of 2017 and her graduation in the spring of 2019, and that Johnson was afraid that she would lose her scholarship if she reported Sell to her psychologist.[78] Plaintiffs allege that Jane Doe was physically and verbally abused by John Poe between the fall of 2018 and March 2019 and that she reported the abuse in March 2019.[79] Plaintiffs allege that Hovis was raped by LSU football player John Loe on January 24, 2020, that she immediately reported it to her Resident Assistant, that she reported that she believed she had been drugged, that she filed a report with LSUPD, and that Baton Rouge Police Department officers were called but refused to take a statement from Hovis.[80] Finally, Plaintiffs allege that Kitch was verbally abused and sexually harassed by her Ph.D. professor and advisor, John Moe, between

---

[75] *Id.* at ¶¶ 328-338.
[76] *Id.* at ¶¶ 364-373, 376-377, 381.
[77] *Id.* at ¶¶ 456-459, 462-467, & 477-479.
[78] *Id.* at ¶¶ 562, 564-579, 584-589, 592, & 594.
[79] *Id.* at ¶¶ 598-626.
[80] *Id.* at ¶¶ 652-671.

the fall of 2009 and 2014, but that Kitch was terrified to disclose his pervasive harassment because no one at LSU seemed to experience repercussions for sexual assault and she was afraid that she would never graduate if she did not maintain a good working relationship with Moe.[81]

Plaintiffs' allegations are deeply disturbing. Accepting Plaintiffs' allegations set forth in the Second Amended Complaint as true, all of the alleged harassment and abuse occurred more than a year before Plaintiffs filed this suit on April 26, 2021. The Court's inquiry does not end there, as Plaintiffs argue that the Court should toll the statute of limitations based upon *contra non valentem* and the publication of the Husch Blackwell report in March 2021. Plaintiffs argue in their Opposition brief that they "did not and could not have reasonably known that they had causes of action against LSU until the release of the Husch Blackwell report."[82] In other parts of their brief, Plaintiffs argue that, "The causal connection between the harms Plaintiffs suffered and  LSU and its employees' role in such harms" could not have been discovered by Plaintiffs.[83] Plaintiffs rely primarily on the case *Doe I v. Baylor University* to support their position that they were unaware that their injuries were causally connected to actions and inactions by LSU until the publication of the Husch Blackwell report.[84]

The Court, however, finds that the publication of the Husch Blackwell report does not support the application of *contra non valentem* to the facts of this case.

---

[81] *Id*. at ¶¶ 699-724.
[82] R. Doc. 213 at p. 16.
[83] *Id*. at p. 17.
[84] *Id*. at pp. 8-9 & 14-15 (quoting *Doe I*, 240 F. Supp. 3d 646 (W.D. Tex. 2017)).

Initially, the Court notes that *Doe I* involves a motion to dismiss filed by the defendant university, not a university employee sued in her individual capacity, and is therefore distinguishable from this case. Indeed, Plaintiffs acknowledge that *Doe I* addressed, "The specific question of whether new information coming to light about an *educational institution's* mishandling of previously undisclosed Title IX reports could cause Plaintiffs to become aware of harms they suffered by the institution."[85] Before the Court is a Motion to Dismiss filed by Jennie Stewart, *not* a motion to dismiss filed by LSU.[86] Further, the question before the Court is whether the one-year statute of limitations was tolled as to Stewart based upon the doctrine of *contra non valentem*. Plaintiffs concede in their Opposition brief that they were aware of their injuries, *i.e.*, they knew they had been sexually assaulted, physically assaulted, or harassed.[87] Plaintiffs allege in the Second Amended Complaint that, with the exception of Johnson and Kitch,[88] they all either self-reported their assault or harassment to LSU personnel or their assault or harassment was reported to LSU personnel by someone else.[89] Plaintiffs also allege that LSU personnel: (1) never offered them any support, resources, accommodations, counseling, support services;[90]

---

[85] R. Doc. 213 at p. 8 (emphasis added).

[86] The Court acknowledges that the Board of Supervisors of LSU have also filed a Motion to Dismiss that remains pending before the Court. R. Doc. 201. That motion, however, is not currently before the Court.

[87] R. Doc. 213 at pp. 9-10.

[88] There are no allegations in the Second Amended Complaint that Johnson or Kitch ever reported their injuries to LSU. *See,* R. Doc. 182 at ¶¶ 556-596 & 699-741. Plaintiffs allege that Johnson did not report the abuse inflicted on her by Sell for fear of losing her scholarship (*Id*. at ¶¶ 571 & 592), and that Kitch was terrified to disclose her abuse and harassment by Moe because no one at LSU experienced repercussions for sexual assault and because she was afraid she would never graduate if she did not maintain a good working relationship with him (*Id*. at ¶¶ 703, 707, & 708).

[89] R. Doc. 182 at ¶¶ 161, 162, 191, 219, 253, 254, 255, 271-273, 290-306, 337-338, 381-382, 388-391, 459, 465, 467, 618-624, 664-671.

[90] *Id*. at ¶¶ 163, 172, 180, 199, 276, 313, 344, 354, 461, 470, 475, 482, 496, 629.

(2) did not report the sexual assault or harassment to the Title IX office;[91] and (3) did not inform plaintiffs that they could make a Title IX report.[92]  Plaintiffs further allege that Andries and Doe were encouraged to contact the Title IX Office,[93] and that the Title IX Office opened investigations into the allegations made by Richardson, Andries, Lewis, and Doe.[94]  Plaintiffs allege that they were subjected to further harassment or assault, or were otherwise deprived of educational opportunities to which they were entitled due to this deliberately indifferent response from the various LSU personnel.  Plaintiffs also allege that Richardson, Brennan, Owens, and Doe never heard from the Title IX Office.[95]

Based on the facts alleged in the Second Amended Complaint, the Court concludes that the findings of the Husch Blackwell report are not sufficient to show that Plaintiffs' claims were not known or reasonably knowable.[96]  The Court agrees with the Western District of Texas that, "Within some reasonable amount of time after their initial reports, Plaintiffs would have understood that [LSU's] deliberate indifference to their reports was the cause of those post-reporting injuries or could reasonably have been expected to 'inquire further.'"[97]  Thus, the Court concludes that

---

[91] *Id.* at ¶¶ 164, 173, 198, 228, 275, 343, 460, 469, 474, 481, 534, 538, 583.

[92] *Id.* at ¶¶ 174, 347-48.

[93] *Id.* at ¶¶ 392 & 619.

[94] *Id.* at ¶¶ 222, 397-402, 486-513, & 624.

[95] *Id.* at ¶¶ 181, 314, 339, & 633.

[96] *See, Renfroe v. State ex rel. Dept. of Transp. and Development*, 2001-1646 (La. 2/26/02), 809 So.2d 947, 954 ("the fact that the portion of the roadway was owned by some party other that [sic] the DOTD was 'reasonably knowable' by the plaintiff within the prescriptive period.  Thus, the doctrine of *contra non valentem* does not apply in this case."); *Doe #1 v. Bd. of Supervisors of Louisiana Statue Univ. and Agric. and Mech. College*, Civ. A. No. 21-564-SDD-SDJ, 2022 WL 16701930, at *15 (M.D. La. Nov. 3, 2022) (Dick, C.J.) ("The findings of the Husch Blackwell Report do not supply plausible grounds from which to conclude that the Plaintiffs [sic] claims were not known or reasonably knowable.").

[97] *Doe 1 v. Baylor University*, 240 F. Supp. 3d 646, 663-64 (W.D. Tex. 2017) (citing *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 761-63 (5th Cir. 2015)).

the publication of the Husch Blackwell report does not support the application of the doctrine of *contra non valentem* in this case.  To the extent Plaintiffs rely upon *Doe 1* to support their position that the Court should apply equitable tolling based upon the Husch Blackwell report,[98] that court applied equitable tolling *only* as to the plaintiffs' Title IX heightened risk claims against the university and *not* to their "post-reporting claims," which mirror the claims asserted by the Plaintiffs in this case.[99]  The *Doe I* court also found that tolling was unavailable to the plaintiffs and that the plaintiffs could not take advantage of Texas' discovery rule "because they have provided no explanation as to why their injuries were 'inherently undiscoverable,' *see King-White*, 803 F.3d at 764."[100]  The Western District of Texas also dismissed post-reporting claims as conclusively time barred in *Lozano v. Baylor University*, cited by Plaintiffs in a footnote as further support for their request to apply equitable tolling based upon the Husch Blackwell report.[101]  The Court notes that Plaintiffs have not alleged a heightened risk claim against Stewart.[102]

Nonetheless, to the extent that the Plaintiffs' Opposition brief may be construed as asserting equitable tolling based upon fraudulent concealment,[103] the Court finds that the publication of the Husch Blackwell report supports Plaintiffs'

---

[98] R. Doc. 213 at pp. 8-9 & 14-15.

[99] *See, Doe 1 v. Baylor University*, 240 F. Supp. 3d at 658, 663-665.

[100] *Id*. at 665 (quoting *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th 2015)).

[101] R. Doc. 213 at p. 15, n.58 (citing *Lozano v. Baylor University*, 408 F. Supp. 3d 861, 901 (W.D. Tex. 2019) (". . . the Court finds it plausible that Lozano had no reason to further investigate her *heightened risk* claim and discover the nature of the alleged injury until the release of Baylor's Findings of Fact and the subsequent media coverage in 2016 . . .").) (emphasis added).

[102] The Court notes that Plaintiffs only assert a heightened risk claim against the LSU Board of Supervisors in Count III of the Second Amended Complaint.  R. Doc. 182 at ¶¶ 916-937.

[103] *See*, R. Doc. 213 at pp. 10- 14, 15-16 & 17.

allegations of fraudulent concealment by Stewart as to certain plaintiffs. While Plaintiffs never mention the phrase "fraudulent concealment" in their Opposition brief,[104] Plaintiffs' allegations in the Second Amended Complaint, viewed in a light most favorable to plaintiffs, plausibly allege that Stewart engaged in "affirmative acts of concealment"[105] with respect to Robertson, Owens, and Doe. Specifically, Plaintiffs allege that, "LSU, including specifically Defendant Stewart, concealed the name of Robertson's assailant from Title IX records,"[106] and that, "LSU and its employees, specifically Defendant Stewart, had concealed all notes from Plaintiff Doe's multiple interviews and had misrepresented the facts of her report."[107] Regarding Owens, Plaintiffs allege that that Stewart "had known about Owen's alleged rape for approximately three years and during that time never did a single thing to investigate the claims or reach out to Owens."[108] Plaintiffs further allege that, "LSU employees, including Defendant Stewart, commonly concealed reports of sexual misconduct from LSU's Title IX Office."[109] While the intentional concealment allegations are thin, the Court finds that Plaintiffs have alleged sufficient facts at this stage from which the Court can reasonably infer that Robertson, Owens, and Doe could not have "discovered" their causes of action against Stewart in the exercise of due diligence until the publication of the Husch Blackwell report. Plaintiffs, however,

---

[104] *See, generally*, R. Doc. 213.
[105] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528-29 (5th Cir. 1988) (citing authority). *See, Rx.com v. Medco Health Solutions, Inc.*, 322 Fed.Appx. 394, 397 (5th Cir. 2009) (citing *Allan*, 851 F.2d at 1531)).
[106] R. Doc. 182 at ¶ 287(c).
[107] *Id.* at ¶ 649(c).
[108] *Id.* at ¶ 354.
[109] *Id.* at ¶ 360(d). *See also*, *Id.* at ¶¶ 351-359.

do not allege any "affirmative acts of concealment" by Stewart with respect to Richardson, Brennan, Andries, Lewis, Johnson, Hovis, or Kitch.  As such, the statute of limitations is equitably tolled only as to the claims asserted by Robertson, Owens, and Doe against Stewart.

### B. Qualified Immunity

Stewart further asserts, in the alternative, that Plaintiffs' 42 U.S.C. § 1983 claims should be dismissed on the basis of qualified immunity.[110]  Stewart asserts that instead of pursuing their Title IX claims against LSU, Plaintiffs are attempting to assert § 1983 claims against Stewart and other individual defendants on the basis that their alleged failure to comply with Title IX violated Plaintiffs' rights under the First and Fourteenth Amendments.[111]  Stewart argues that she is entitled to qualified immunity because there are no cases in which the United States Supreme Court or the Fifth Circuit Court of Appeals have ever held that a Title IX violation would also be a constitutional violation for which an individual state actor would have personal liability.[112]  In her Supplemental Memorandum, Stewart asserts that Plaintiffs' § 1983 claims should be dismissed based upon the recent ruling issued by our sister court in *Doe #1 v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College*,[113] and a recent ruling from outside this Circuit.[114]  Plaintiffs argue that Stewart is not entitled to qualified immunity and

---

[110] R. Doc. 199-1 at pp. 7-14.

[111] *Id.* at p. 1.

[112] *Id.*

[113] R. Doc. 260 at pp. 1-2 (citing *Doe # 1*, Civ. A. No. 21-564-SDD-SDJ, 2022 WL 16701930 (M.D. La. Nov. 3, 2022)).

[114] R. Doc. 260 at pp. 2-3 (citing *Thomas v. Bd. of Regents of the University of Nebraska*, Civ. A. No. 4:20CV3081, 2022 WL 1491102 (D. Neb. May 11, 2022)).

that she should have known that ignoring reports of sexual misconduct and failing to implement and enforce interim measures would have a chilling effect on victims' speech, that treating victims of student-athletes differently than other victims would violate their equal protection and substantive due process rights, and that refusing to follow published procedures would violate victims' procedural due process rights.[115] In their Supplemental Memorandum in Response to Stewart's Supplemental Memorandum, Plaintiffs argue that the cases cited by Stewart are either distinguishable from or irrelevant to the facts of this case.[116]

While the Court has determined that the statute of limitations is equitably tolled only as to the claims asserted against Stewart by Robertson, Owens, and Doe, the Court addresses the § 1983 claims made by all of the plaintiffs in its analysis of whether Stewart is entitled to qualified immunity. The Court does not limit its analysis to the claims asserted by Robertson, Owens, and Doe.

### 1. *Count V – Plaintiffs' § 1983 First Amendment Retaliation Claim*

Stewart claims that in Count V, Plaintiffs assert a § 1983 claim based upon an alleged violation of their First Amendment right to freedom of speech, specifically their right to report sexual misconduct to LSU employees and to criticize LSU's handling of their complaints.[117] Stewart contends that Plaintiffs then allege that the individual defendants, including Stewart, attempted to regulate the content of Plaintiffs' speech because they did not want to address and properly respond to

---

[115] R. Doc. 213 at pp. 18-19.
[116] R. Doc. 285.
[117] R. Doc. 199-1 at p. 9 (*citing* R. Doc. 182 at ¶ 1012).

Plaintiffs' disclosures of abuse, which would have had a negative impact on the reputation of LSU and its football team.[118] While Plaintiffs allege that they engaged in constitutionally protected activities by complaining of sexual harassment or discrimination under Title IX, Stewart argues that there are no reported cases from the Supreme Court or from within the Fifth Circuit in which a state actor's alleged failure to properly investigate a Title IX complaint was deemed to violate an individual's First Amendment rights.[119]    As such, Stewart argues that Plaintiffs' claim for First Amendment Retaliation fails the second prong of the qualified immunity analysis "because there is no clearly established case law putting defendants on notice that their actions were violations of the plaintiffs' rights."[120] While Plaintiffs cite several Supreme Court cases in the Second Amended Complaint for the proposition that students have First Amendment rights, Stewart argues none of those cases involve Title IX complaints.[121]    As such, Stewart contends that the cases do not clearly establish that the filing of a Title IX complaint constitutes speech protected by the First Amendment, nor would they have provided any reasonable government official with notice that failing to respond to a Title IX complaint would be a violation of a student's First Amendment rights.[122]    Stewart claims that Plaintiffs have no right to assert a Title IX claim against her individually, and they

---

[118] R. Doc. 199-1 at p. 9 (*citing* R. Doc. 182 at ¶¶ 1015 & 1017).
[119] R. Doc. 199-1 at p. 10.
[120] *Id*. (citing *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002)).
[121] R. Doc. 199-1 at p. 10 (citing authority).
[122] *Id*. at pp. 10-11.

are attempting to evade that prohibition by classifying their complaints as "free speech."[123]

Plaintiffs argue that they have plausibly pled a cause of action against Stewart for First Amendment Retaliation because they have each established that they suffered a deprivation of constitutional rights and that Stewart was either personally involved in that deprivation or her wrongful actions were causally connected to their constitutional deprivations.[124]  Plaintiffs claim that their disclosures of sexual misconduct are constitutionally protected forms of speech under the First Amendment of which a reasonable public official would have known.[125]  Plaintiffs contend that it is clearly established within the Fifth Circuit that students may exercise their First Amendment rights on any topic unless doing so would "materially and substantially disrupt" school operations,[126] and that, "it is clearly established law that students and student-employees are free to report claims of sexual assault without fear of retaliation."[127]  Plaintiffs assert that Owens, Richardson, Lewis, and Johnson have also alleged that they were deprived of their constitutional right by

---

[123] *Id*. at p. 11.

[124] R. Doc. 213 at p. 20.

[125] *Id*.

[126] *Id*. (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Healy v. James*, 408 U.S. 169, 189, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972)).

[127] R. Doc. 213 at p 20 (*citing* 34 C.F.R. § 106.71(a) ("[n]o recipient or other person may intimidate, threaten, coerce, or discriminate against any individual . . . because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under [Title IX]")).  The Court notes that Plaintiffs cited three additional cases in support of their position, but failed to provide a full citation to each case.  Because this sentence appears to be copied from the Second Amended Complaint, the Court believes that Plaintiffs intended to cite *Landesberg-Boyle v. State of Louisiana*, Civ. A. No. 03-3582, 2004 WL 2035003 (E.D. La. Sept. 10, 2004) (Africk, J.); *Wilson v. UT Health Center*, 973 F.2d 1263, 1268-69 (5th Cir. 1992); *Doe v. Alvey*, Civ. A. No. 1:20-cv-410, 2021 WL 1519628 (S.D. Ohio Feb. 2, 2021) (Litkovitz, C. Mag.).

Stewart's reactions to disclosures of sexual misconduct, which "chilled Plaintiffs from reporting sexual misconduct or voicing concerns about LSU's handling of student sexual misconduct and Title IX complaints."[128]   Plaintiffs contend that although Stewart lacked direct involvement in the deprivation of disclosures of sexual misconduct by Robertson, Lewis, and Johnson, as the Title IX Coordinator, Stewart's wrongful actions and inactions were causally connected to their constitutional deprivations due to the systemic, coordinated nature of the failures within the Title IX program at LSU.[129]

In response, Stewart asserts that Plaintiffs' First Amendment claims fail under both prongs of the qualified immunity analysis because Plaintiffs fail to cite any legal authority to support their assertion that follow up, or lack thereof, of Title IX complaints constitutes protected speech of which a reasonable government official would have known.[130]   Stewart points out that the three Supreme Court cases cited by Plaintiffs are not relevant to this case because they involved students who engaged in obviously public speech, directed to and intended to be heard by all other students and faculty, and this case concerns confidential reports of sexual harassment or assault not intended to be made publicly known to all other LSU students.[131]   Stewart further points out that although Plaintiffs assert that their claim against her is based on the First Amendment, Plaintiffs fail to cite any case law establishing that alleged

---

[128] R. Doc. 213 at p. 21.

[129] *Id.*

[130] R. Doc. 225 at p. 2.

[131] *Id.* at p. 3 (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Healy v. James*, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); *Papish v. Bd. of Curator of University of Missouri*, 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973)).

retaliation in response to Title IX complaints is prohibited by the First Amendment, and instead cite to a provision of the Code of Federal Regulations stating that retaliation is prohibited under Title IX.[132]  Stewart argues that since Plaintiffs' § 1983 claim is brought under the First Amendment, not Title IX, Plaintiffs must prove that any retaliation alleged violates the First Amendment, not Title IX.  Stewart maintains that Plaintiffs "do not and cannot" do so.[133]

In her Supplemental Memorandum, Stewart directs the Court to two recent decisions, from the Middle District of Louisiana and the District of Nebraska, in which courts dismissed similar § 1983 claims asserted against university officials in addition to their Title IX claims against the university on the basis of qualified immunity or failure to state a claim, respectively.[134]  Plaintiffs counter that the recent decision from the Middle District of Louisiana is not relevant because unlike the plaintiffs in that case, Plaintiffs have not commingled their § 1983 claims with their Title IX claims, insisting that their § 1983 claims are "clearly" based outside their Title IX claims.[135]  Plaintiffs also assert that Stewart misstates the District of Nebraska's decision regarding qualified immunity, and clarify that the court did not dismiss the plaintiffs' § 1983 claims in that case based upon qualified immunity.[136]  According to Plaintiffs, the court dismissed the § 1983 claims "because it determined

---

[132] R. Doc. 225 at pp. 3-4 (*citing* R. Doc. 213 at p. 20, n. 77 (*citing* 34 C.F.R. § 106.71(a))).

[133] R. Doc. 225 at p. 4.

[134] R. Doc. 260 at pp. 1-2 (citing *Doe #1 v. Bd. of Supervisors of Louisiana Statue Univ. and Agricultural and Mechanical College*, Civ. A. No. 21-564-SDD-SDJ, 2022 WL 16701930, at *22-24 (M.D. La. Nov. 3, 2022); *Thomas v. Bd. of Regents of the University of Nebraska*, Civ. A. No. 4:20CV3081, 2022 WL 1491102, at *17-18 (D. Neb. May 11, 2022)).

[135] R. Doc. 285 at pp. 2-3 (citing *Doe #1*, Civ. A. No. 21-564-SDD-SDJ, 2022 WL 16701930 at *47-48; R. Doc. 182 at ¶¶ 1002-58).

[136] R. Doc. 285 at p. 3.

that the facts alleged did not provide a basis for finding a violation of the plaintiffs' rights under the Equal Protection Clause."[137]   As such, Plaintiffs maintain that Stewart's Motion should be denied.

"To state a claim of First Amendment retaliation, plaintiff must show: 1) he was engaged in constitutionally protected activity, 2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and 3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct."[138] Here, Plaintiffs allege in the Second Amended Complaint that, "At all relevant times, Plaintiffs had a clearly established right to freedom of speech pursuant to the First Amendment, of which a reasonable person would have known." [139]   Plaintiffs, however, have failed to identify any legal authority supporting their position that a Title IX complaint of sexual misconduct is constitutionally protected speech.  In both the Second Amended Complaint and their Opposition brief, Plaintiffs cite three Supreme Court opinions for the proposition that: (1) it is "clearly established" that "students may exercise their First Amendment rights on any topic unless doing so would 'materially and substantially disrupt' school operations;"[140] and (2) school officials may not retaliate against students based on their protected speech.[141]  Those

---

[137] *Id.*

[138] *Mills v. City of Bogalusa*, 112 F. Supp. 3d 512, 516 (E.D. La. 2015) (citing *Keenan v. Teieda*, 290 F.3d 252, 258 (5th Cir. 2002)).

[139] R. Doc. 182 at ¶ 1011.

[140] *Id.* at ¶ 1008 & R. Doc. 213 at p. 20 (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Healy v. James*, 408 U.S. 169, 189, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972)).

[141] R. Doc. 182 at ¶ 1009 & R. Doc. 213 at p. 20 (citing *Papish v. Bd. of Curator of University of Missouri*, 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973)).

three cases, however, are clearly distinguishable from the facts of this case. First and foremost, none of those cases concerned Title IX reports of sexual misconduct. As Stewart points out, one case involved a First Amendment freedom of speech claim brought by staff members of a high school newspaper against the school district and school officials for deleting certain articles prior to publication.[142] Another case involved First Amendment claims brought by college students alleging that their rights to free association had been violated by their university's failure to recognize a campus organization,[143] while the third case involved First Amendment claims brought by a former college student who was expelled for distributing a campus newspaper that contained forms of alleged "indecent speech."[144] While jurisprudence, including the cited cases, make clear that students have First Amendment rights, none of the cases clearly establish that the filing of a Title IX complaint constitutes "speech" protected by the First Amendment.

The Court further finds that a plain reading of the Second Amended Complaint makes clear that Plaintiffs have sued LSU officials in their individual capacities, including Stewart, under 42 U.S.C. § 1983 based upon underlying violations of Title IX. Plaintiffs allege that they "engaged in constitutionally protected speech when they disclosed instances of sexual misconduct to the Individual Defendants and other

---

[142] *Hazelwood*, 484 U.S. at 262-63, 108 S.Ct. at 565-66. The Court notes that the Supreme Court concluded that, "no violation of First Amendment rights occurred." 484 U.S. at 276, 108 S.Ct. at 572.
[143] *Healy*, 408 U.S. at 170-77, 92 S.Ct. at 2340-44. The Supreme Court concluded that the decision violated plaintiffs' First Amendment rights if the denial was based on an assumed relationship with the national chapter of the organization, was the result of disagreement with the group's philosophy, or was a consequence of a fear of disruption, for which there was no support in the record. 408 U.S. at 184-194, 92 S.Ct. at 2348-2353.
[144] *Papish*, 410 U.S. at 667-670, 93 S.Ct.1197-99. In a per curiam opinion, the Supreme Court found that the expulsion was an impermissible regulation on speech protected by the First Amendment.

LSU employees and when they publicly criticized LSU's handling of their complaints as violating the requirements of Title IX."[145]  In both the Second Amended Complaint and their Opposition brief, Plaintiffs allege that, "More specifically, it is clearly established law that students and student-employees are free to report claims of sexual assault without fear of retaliation."[146]  As Stewart correctly points out, Plaintiffs cite 34 C.F.R. § 106.71(a) to support that position, which prohibits retaliation *under Title IX,* again directly tying Plaintiffs' § 1983 First Amendment retaliation claims to their Title IX claims.  That provision provides, in pertinent part, that:

> No recipient or other person may intimidate, threaten, coerce, or discriminate against any individual *for the purpose of interfering with any right or privilege secured by title IX* or this part, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part.[147]

In citing this provision, Plaintiffs seem to ignore clear Supreme Court precedent that, "Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include nonpublic institutions, § 1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals, see, *e.g.*, *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999)."[148]  Plaintiffs likewise ignore precedent from the Fifth Circuit recognizing that an

---

[145] R. Doc. 182 at ¶ 1012.  *See also*, *Id.* at ¶¶ 1020, 1026, 1032, 1038, 1044, & 1050.

[146] *Id.* at ¶ 1010 (*citing* 34 C.F.R. § 106.71(a); *Landesberg-Boyle v. State of Louisiana*, Civ. A. No. 03-3582, 2004 WL 2035003 (E.D. La. Sept. 10, 2004) (Africk, J.); *Wilson v. UT Health Center*, 973 F.2d 1263, 1268-69 (5th Cir. 1992); *Doe v. Alvey*, Civ. A. No. 1:20-cv-410, 2021 WL 1519628 (S.D. Ohio Feb. 2, 2021)); R. Doc. 213 at p. 20 (citing same authority).

[147] 34 C.F.R. § 106.71(a) (emphasis added).

[148] *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257, 129 S.Ct. 788, 796, 172 L.Ed.2d 582 (2009).

individual university employee, such as Stewart, cannot be held liable under Title IX.[149]  Thus, the Court finds that Plaintiffs' § 1983 claim against Stewart alleging First Amendment retaliation based upon an underlying Title IX violation appears to be an "end run around Title IX's explicit language limiting liability to funding recipients."[150]

While Plaintiffs also cite three district court cases to support their position that student claims of sexual assault are subject to First Amendment protection, including one from this Court, Plaintiffs' reliance on those cases is misplaced.[151]  Like the three Supreme Court cases cited by Plaintiffs, the district court cases are distinguishable because they do not involve Title IX claims of sexual misconduct.  Instead, two of the cases, including the one from this Court, involve a First Amendment retaliation claim brought by a terminated university employee against her university-employer, alleging she was terminated for reporting sexual harassment, which is analyzed under a different framework and requires consideration of whether the speech involves "a matter of public concern."[152]  In the third case, which is from outside this

---

[149] *Plummer v. Univ. of Houston*, 860 F.3d 767, 776 n.12 (5th Cir. 2017) ("Liability under Title IX does not extend to school officials, teachers and other individuals.  Hence, McConnell and Plummer do not appeal the dismissal of the University administrators.") (internal citation omitted) (citing *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640-643, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

[150] *Doe #1 v. Bd. of Supervisors of Louisiana Statue Univ. and Agric. and Mech. College*, Civ. A. No. 21-564-SDD-SDJ, 2022 WL 16701930, at *24 (M.D. La. Nov. 3, 2022) (quoting *Doe v. Napa Valley Unified School District*, Civ. A. No. 17-cv-03753-SK, 2018 WL 4859978, at *4 (N.D. Cal. Apr. 24, 2018) (Kim, M.J.)).  *See, Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592, 608 (E.D. Tex. 2016) (finding that the plaintiff could not state a claim under § 1983 based on an underlying violation of Title IX because Title IX does not allow suit against individuals).

[151] R. Doc. 182 at ¶ 1010 (*citing Landesberg-Boyle v. State of Louisiana*, Civ. A. No. 03-3582, 2004 WL 2035003 (E.D. La. Sept. 10, 2004); *Wilson v. UT Health Center*, 973 F.2d 1263, 1268-69 (5th Cir. 1992); *Doe v. Alvey*, Civ. A. No. 1:20-cv-410, 2021 WL 1519628 (S.D. Ohio Feb. 2, 2021)); R. Doc. 213 at p. 20 (citing same authority).

[152] *Landesberg-Boyle*, Civ. A. No. 03-3582, 2004 WL 2035003 at *5; *Wilson*, 973 F.2d at 1268-70.

Circuit, a student-athlete brought a § 1983 claim against her coach alleging violations of the First and Fourteenth Amendment and asserting that her Title IX complaint regarding retaliatory actions of her coach was constitutionally protected speech.[153] Plaintiffs fail to mention, however, that the district court in that case held that the plaintiff's Title IX complaint of mistreatment and retaliation by her coach was not protected speech under the First Amendment because Title IX "prohibits discrimination on the basis of sex" and "plaintiff's complaint is devoid of *any* allegations of discrimination based on her sex or gender."[154]  Thus, Plaintiffs have failed to cite any legal authority for the proposition that a Title IX complaint is protected speech under the First Amendment.   Even assuming, *arguendo*, that Plaintiffs could establish that a Title IX complaint is protected speech, Plaintiffs have failed to show that such First Amendment rights were "clearly established" at the time of the challenged conduct, as required to overcome qualified immunity.[155] Accordingly, Stewart is entitled to qualified immunity from Plaintiffs' § 1983 First Amendment retaliation claim asserted in Count V of the Second Amended Complaint.

### 2.  *Count VI – Plaintiffs' § 1983 Denial of Equal Protection Claim*

Stewart next argues that Plaintiffs' § 1983 Equal Protection claim should be dismissed because Plaintiffs have failed to allege any intent by Stewart to discriminate against any plaintiff on the basis of gender.[156]  Stewart points out that,

---

[153] *Alvey*, Civ. A. No. 1:20-cv-410, 2021 WL 1519628 at *1-2.
[154] *Id*. at *3 & 5-6 (emphasis in original).
[155] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citation omitted).
[156] R. Doc. 199-1 at p. 11.

like the Plaintiffs, she is a woman, and Plaintiffs have not alleged that she made any comments reflecting discriminatory animus against women. Stewart further asserts that Plaintiffs do not even allege disparate treatment in the handling of Title IX complaints, as there is no allegation that the Title IX complaints of any woman were treated differently from Title IX complaints of any man.[157] As such, Stewart argues she is entitled to qualified immunity under the first prong of the qualified immunity analysis. Alternatively, Stewart asserts that she is entitled to qualified immunity under the second prong of the analysis, since there are no reported cases from the Supreme Court or the Fifth Circuit that would place a reasonable government official on notice that her actions would violate a student's rights under the Fourteenth Amendment.[158]

Plaintiffs argue that it is clearly established that failing to report or investigate allegations of sexual assault violates the Equal Protection Clause of the Fourteenth Amendment.[159] Plaintiffs cite *Fitzgerald v. Barnstable School Committee*, a recent Supreme Court case in which the Court acknowledged that § 1983 claims based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools, including in the case of school officials' inadequate responses to allegations of peer-on-peer sexual harassment.[160] Plaintiffs assert that they have each alleged that they had a clearly established right to be free from discrimination on the basis of sex pursuant to the Equal Protection Clause of the

---

[157] *Id*. at p. 12.
[158] *Id*.
[159] R. Doc. 213 at p. 21.
[160] *Id*. at p. 22 (citing *Fitzgerald*, 555 U.S. 246, 250, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009)).

Fourteenth Amendment, and that they have each alleged that Stewart was either personally involved in that discrimination, or that her wrongful actions were causally connected to their constitutional deprivations.[161]  Specifically, Plaintiffs allege that, "Stewart created a hostile environment on LSU's campus, a form of sex discrimination in itself, failed to respond appropriately to reports of sexual misconduct as Title IX Coordinator, allowed a separate Title IX reporting system to exist in the athletics department, and purposefully concealed reports of sexual misconduct."[162]  As such, Plaintiffs assert that Stewart's Motion should be denied.

In response, Stewart asserts that Plaintiffs' Opposition brief fails to address any of the arguments made by Stewart in her Motion, and merely copies arguments from Plaintiffs' other opposition briefs filed in this case.[163]  Stewart points out that Plaintiffs failed to address how Stewart treated female students who submitted Title IX complaints differently from male students who submitted Title IX complaints, and failed to explain how Stewart had any intention to discriminate against female students due to their gender.[164]  Stewart argues that Plaintiffs' Equal Protection claim must be dismissed because Plaintiffs fail to even attempt to establish the necessary elements of an Equal Protection claim – that they received treatment different from that received by similarly situated male students and that the unequal treatment stemmed from a discriminatory intent.[165]

---

[161] R. Doc. 213 at p. 22.

[162] *Id.*

[163] R. Doc. 225 at p. 4.

[164] *Id.* at p. 5.

[165] *Id.* at pp. 4-5 (*citing* R. Doc. 199-1 at p. 11 (citing *Fenell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015))).

The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction the equal protection of the laws, which "is essentially a direction that all persons similarly situated should be treated alike."[166]  "To state a claim under the Equal Protection Clause, a plaintiff must demonstrate that he has been treated differently due to his membership in a protected class and that the unequal treatment stemmed from discriminatory intent."[167]  "It is well established that a showing of discriminatory intent or purpose is required to establish a valid equal protection claim."[168]  "To establish discriminatory intent, a plaintiff must show 'that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.'"[169]  Pertinent to the instant case, the Fifth Circuit has held that, "Allegations [of discriminatory intent] that are merely conclusory, without reference to specific facts, will not suffice."[170]

In Count VI of the Second Amended Complaint, Plaintiffs allege that Stewart and the other individual defendants "discriminated against Plaintiffs on the basis of sex by subjecting them to a hostile environment and failing to appropriately respond to and investigate reports of sexual misconduct and other violations detailed

---

[166] *Club Retro, LLC v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (quoting *Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993)) (internal quotation marks omitted).

[167] *Mills v. City of Bogalusa*, 112 F. Supp. 3d 512, 516 (E.D. La. 2015) (citing *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss*, 543 F.3d 221, 228 (5th Cir. 2008)).

[168] *Muslow v. Bd. of Supervisors of Louisiana State Univ. and Agric. and Mechan. College*, Civ. A. No. 19-11793, 2020 WL 1864876, at *22 (E.D. La. Apr. 14, 2020) (Ashe, J.) (quoting *Doe v. Silsbee Indep. Sch. Dist.*, 402 Fed.Appx. 852, 855 (5th Cir. 2010)).

[169] *Fennell*, 804 F.3d at 412 (quoting *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004)).

[170] *Fennell*, 804 F.3d at 412 (quoting *Priester*, 354 F.3d at 420).

previously in this Complaint."[171]  Plaintiffs assert that, "Defendants' discrimination against Plaintiffs on the basis of sex endangered the safety, privacy, security, and well-being of Plaintiffs," and that, "Defendants' actions and inactions deprived Plaintiffs of their right to equal dignity, liberty, and autonomy by treating them as second-class citizens at LSU."[172]  Plaintiffs allege that "Defendants'" actions and inactions deprived them of their rights to liberty and property by forcing some of them to move or leave LSU, against their prior wishes.[173]  Plaintiffs then allege that Owens, Richardson, Robertson, Brennan, Lewis, Doe, and Kitch all made reports of sexual assault that were not investigated by LSU, Stewart, or Jonathan Sanders, and were not properly reported by Verge Ausberry or Miriam Segar.[174]  Plaintiffs assert that these seven plaintiffs were all denied the opportunity to take advantage of interim measures that could have assisted them in fully accessing their education after they had been abused.[175]

Plaintiffs further allege that Doe was forced to move out of her residence hall to avoid her abuser, Doe was wrongly told that her claims did not fall under Title IX and was denied an investigation, and that Hovis was denied the protections of a no-contact directive when her abuser repeatedly violated the directive and LSU did nothing to discipline him or prevent future violations, therefore leaving her at ongoing risk of abuse.[176]  Plaintiffs allege that, "These are indisputable violations of

---

[171] R. Doc. 182 at ¶ 1066.
[172] Id. at ¶¶ 1067-1068.
[173] Id. at ¶ 1069.
[174] Id. at ¶ 1070.
[175] Id. at ¶ 1071.
[176] Id. at ¶¶ 1072-1074.

the Equal Protection clause, as Plaintiffs were denied the school's protective services as female victims of sexual assault, an acknowledged disfavored minority."[177] Plaintiffs further allege that, "It is clearly established that failing to report or investigate allegations of sexual assault violates the Equal Protection clause."[178] Plaintiffs then cite the same Supreme Court case cited in their Opposition brief, *Fitzgerald*, for the proposition that, "The actions of Defendants violated clearly established Constitutional law; thus, [the individual defendants] are not entitled to qualified immunity."[179]

The Court finds that while Plaintiffs have alleged that, as women, they belong to a protected class, there are no allegations in the Second Amended Complaint that Plaintiffs were treated differently from male students who reported sexual misconduct under the Title IX program at LSU.[180] Plaintiffs' Second Amended Complaint is silent regarding how, or whether, sexual misconduct allegations by any other group were handled differently. Nor are there any allegations that Stewart's actions or inactions were motivated by a discriminatory intent based on gender.[181] Thus, even accepting all well-pleaded facts in the Second Amended Complaint as true and viewing them in the light most favorable to the plaintiff, as the Court is bound

---

[177] *Id*. at ¶ 1075.
[178] *Id*. at ¶ 1078.
[179] *Id*. at ¶¶ 1080-1082 (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 250, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009) and *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)).
[180] To the extent that Plaintiffs allege in their Opposition brief that Stewart "should have known . . . that treating victims of student-athletes differently than other victims would violate their equal protection . . .rights" (R. Doc. 213 at pp. 18-19; *See also*, R. Doc. 182 at ¶¶ 43-44), Plaintiffs fail to allege or even address whether victims of student athletes are a protected class for purposes of the Equal Protection Clause. The Court has found no legal authority to suggest that they are.
[181] *See*, R. Doc. 182 at ¶¶ 1059-1085.

to do,[182] the Court finds that Plaintiffs have failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment against Stewart.  Accordingly, Plaintiffs have failed to show that Stewart violated a clearly established constitutional right.  Stewart is therefore entitled to qualified immunity from Plaintiffs' § 1983 Equal Protection claim.

### 3. Count VII – Plaintiffs' § 1983 Substantive and Procedural Due Process Claims

#### a. Procedural Due Process

Stewart next asserts that Plaintiffs' procedural due process claim asserted in Count VII must be dismissed because Plaintiffs have failed to allege a deprivation of any life, liberty, or property interest contemplated by the Fourteenth Amendment.[183] Stewart contends that Plaintiffs generally allege that they were deprived of "their liberty and property interest in accessing educational opportunities or benefits," and notes that most due process claims in the educational setting concern student dismissals or suspensions from academic institutions.[184]  Stewart points out that none of the Plaintiffs were dismissed or suspended from school.  Stewart argues that, to the extent Plaintiffs allege a new theory that something other than discipline or dismissal could deprive them of a protected property interest in their education, there are no cases from the Supreme Court or within the Fifth Circuit that clearly establish

---

[182] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[183] R. Doc. 199-1 at p. 12 (citing *Wheelahan v. City of New Orleans*, Civ. A. No. 19-11720, 2020 WL 1503560, at *16 (E.D. La. Mar. 30, 2020) (Brown, C.J.)).

[184] R. Doc. 199-1 at pp. 12-13 (quoting *Smith v. Davis*, 507 Fed.Appx 359, 362 (5th Cir. 2013)) (internal quotation marks omitted).

that right.  Stewart contends that this is, once again, a *res nova* claim by Plaintiffs.[185] Stewart asserts that she is entitled to qualified immunity under both prongs of the qualified immunity analysis because there is no case law that would have placed a reasonable government official on notice that Stewart failed to provide any plaintiff with constitutionally required administrative procedures that were denied.[186]

Plaintiffs argue that they have clearly established rights to liberty and property under the Fourteenth Amendment, including "a liberty and property right in accessing their full educational opportunities and benefits, as well as in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law."[187]  Plaintiffs assert that in *Perry v. Sinderman*, the Supreme Court "clearly established the obvious principle that if public universities have mandatory disciplinary procedures and plaintiffs are eligible for the protections of those procedures, failing to follow the published procedures constitutes an unconstitutional deprivation of plaintiffs' property without due process."[188]  Plaintiffs argue that under the Due Process Clause, deprivation of their liberty and property interests arising out of the Code of Student Conduct, LSU's Title IX Policy, and federal law and guidance cannot occur without notice and a meaningful opportunity to be heard.[189]

---

[185] R. Doc. 199-1 at p. 13.
[186] *Id*.
[187] R. Doc. 213 at p. 23.
[188] *Id*. at p. 23 (citing *Perry*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)).
[189] R. Doc. 213 at pp. 23-24.

Plaintiffs further claim that they had a property right in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law and that, unlike in *Perry*, Stewart's enforcement of Title IX procedures was never optional.[190]  Plaintiffs argue that "Stewart should have known that Plaintiffs were entitled to LSU and its employees following LSU's own published procedures."[191]  Plaintiffs claim that Stewart was personally involved in the deprivation of Lewis' due process rights when Stewart "failed to file reports with LSU's Title IX Coordinator following Richardson's disclosure of John Coe's rape of Plaintiff Lewis and John Coe's admission of sexual misconduct."[192]  While Stewart "lacked personal involvement in the deprivation of other Plaintiffs' procedural due process rights," Plaintiffs assert that Stewart's wrongful actions were causally connected to their constitutional deprivations.[193]  Plaintiffs contend that they have alleged a constitutional deprivation through pleading that, "Defendant's failure to comply with the administrative requirements of Title IX and its own policies deprived Plaintiffs of their substantive and procedural due process rights to be heard prior to depriving them of their liberty and property interests."[194]  As such, Plaintiffs assert that Stewart's Motion should be denied.

In response, Stewart argues that Plaintiffs' assertion that they have a liberty and property right in accessing their full educational opportunities and benefits, and

---

[190] *Id*. at p. 25.
[191] *Id*.
[192] *Id*. (*citing* R. Doc. 182 at ¶ 214; R. Doc. 22-1 at p. 75).
[193] R. Doc. 213 at pp. 25-26.
[194] *Id*. at p. 26.

in the investigation of reports of sexual misconduct, is conclusory and lacks any citation to legal authority.[195]  Stewart asserts that, while creative, Plaintiffs' position is not "clearly established law" merely because Plaintiffs say so, as Plaintiffs' claimed rights "are apparently created out of whole cloth."[196]  Stewart concedes that students subject to discipline by a public university are entitled to procedural due process.[197]  Stewart points out, however, that none of the plaintiffs in this case allege that they were disciplined by Stewart.  Stewart further argues that Plaintiffs cite no case law to support their proposition that the Fourteenth Amendment requires any specific process with respect to Title IX complaints filed by students against other students.[198]

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."[199]  "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."[200]  The Supreme Court has adopted a two-step analysis to determine whether an individual's procedural due process rights have been violated, asking first whether there exists a liberty or property interest that has been interfered with by the State,

---

[195] R. Doc. 225 at p. 5.

[196] *Id.*.

[197] *Id.* at p. 7 (citing *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Smith v. Davis,* 507 Fed.Appx. 359, 362 (5th Cir. 2013)).

[198] R. Doc. 225 at p. 7.

[199] U.S. Const. amend. XIV, § 1.

[200] *Duhon v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll*, Civ. A. No. 20-2022, 2021 WL 5562156, at *3 (E.D. La. Aug. 23, 2021) (Milazzo, J.) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)) (internal quotation marks omitted) (emphasis in original).

and then examining whether the procedures attendant upon that deprivation were constitutionally sufficient.[201]

Although not a model of clarity, Plaintiffs allege in the Second Amended Complaint that they have liberty and property interests "arising out of the Code of Student Conduct, LSU's Title IX Policy, and federal law and guidance," the deprivation of which cannot occur without notice and a meaningful opportunity to be heard. [202]    Plaintiffs assert that, "Defendants' failure to comply with the administrative requirements of Title IX and its own policies deprived Plaintiffs of their procedural due process right to be heard prior to depriving them of their liberty and property interests."[203]  Plaintiffs allege that the "Defendants, in their individual capacities and under color of law" violated their liberty and property rights by failing to: (1) properly train employees in their Title IX reporting obligations; (2) ensure employee compliance with the Title IX policy and other relevant policies; (3) report complaints of sex-based discrimination; (4) initiate and/or conduct adequate investigations and grievance procedures under Title IX; (5) ensure that victimized students had equal access to educational opportunities and benefits or grievance procedures; (6) ensure victimized students were provided with the interim resources necessary to maintain their educational access after making Title IX reports; (7) remedy hostile environments when they were discovered; and (8) prevent the

---

[201] *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010) (quoting *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)) (internal quotation marks omitted).
[202] R. Doc. 182 at ¶ 1090.
[203] *Id*. at ¶ 1091.

recurrence of hostile environments.[204]   Plaintiffs assert that throughout this deprivation, "Defendants continuously failed to provide Plaintiffs with adequate notice of the action to be taken with regard to the sex-based discrimination they had suffered, as well as meaningful opportunities to be heard."[205]

Plaintiffs allege that the actions and inactions of the defendants deprived Plaintiffs of their liberty and property interests "in accessing their full educational opportunities and benefits without due process."[206]   Plaintiffs similarly allege that, "When Defendants decided not to report or investigate Plaintiffs' reports of sexual misconduct and to deny Plaintiffs support services, they deprived Plaintiffs of their liberty and property interests and caused Plaintiffs to suffer grievous loss by being denied educational benefits."[207]   Plaintiffs further allege that several of them "received limited or no communications from the Title IX Office after reporting or limited or no interim measures – even if requested – thus denying them any procedural protections prior to the deprivation of their property and liberty interests in their education."[208]   Plaintiffs then assert that they "had a liberty and property right in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law."[209]   Plaintiffs allege that, "Defendants' actions violated clearly established Constitutional law; thus, they are not entitled to qualified immunity."[210]

---

[204] *Id*. at ¶ 1094.
[205] *Id*. at ¶ 1095.
[206] *Id*. at ¶¶ 1099 & 1101.
[207] *Id*. at ¶ 1105.
[208] *Id*. at ¶ 1106.
[209] *Id*. at ¶ 1112.
[210] *Id*. at ¶ 1115.

Although Plaintiffs allege a variety of nebulous liberty and property interests that Stewart purportedly violated, Plaintiffs have failed to demonstrate how their allegations amount to conduct violating a clearly established constitutional right. Regarding a protected property interest, "the hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"[211]  "A property interest is created when a person has secured an interest in a specific benefit to which the individual has 'a legitimate claim of entitlement.'"[212]  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it."[213]  As explained by the Fifth Circuit, "property interests are created, and their dimensions defined, 'by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"[214]

It is clear to the Court that Plaintiffs' purported property interest in "the investigation of reports of sexual misconduct" under LSU's Title IX program is an attempt by Plaintiffs to assert a § 1983 claim under the Fourteenth Amendment based upon underlying Title IX violations.  This is evident from Plaintiffs' laundry-list of actions and inaction alleged to have been taken by the individual defendants,

---

[211] *Findeisen v. N.E. Indep. School Dist.*, 749 F.2d 234, 237 (5th Cir. 1984) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982)) (internal quotation marks omitted).
[212] *Holden v. Perkins*, 398 F. Supp. 3d 16, 23 (E.D. La. 2019) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).
[213] *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.
[214] *Smith v. Davis*, 507 Fed.Appx. 359, 362 (5th Cir. 2013) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. 2701).

including Stewart, that purportedly "subjected Plaintiffs to violations of their liberty and property interests," all of which concern LSU's Title IX program.[215]  As previously explained, Title IX does not authorize suits against school officials, teachers, and other individuals.[216]  To the extent Plaintiffs allege procedural and substantive due process claims against Stewart based upon the deprivation of their purported property interest in "the investigation of reports of sexual misconduct" under LSU's Title IX program, such claims must be dismissed as an attempt to circumvent Title IX's explicit language limiting liability to "institutions and programs that receive federal funds." [217]

Additionally, the Court finds that Plaintiffs have failed to show, and this Court can find no binding precedent to suggest, that there is a recognized property interest in "accessing full educational opportunities and benefits" of a state university or in "the investigation of reports of sexual misconduct" under LSU's Title IX program.  As an initial matter, Plaintiffs offer no explanation regarding the "educational opportunities and benefits" of which they were allegedly deprived.  Plaintiffs offer only conclusory allegations that they were deprived of such purported liberty and property interests. [218]  Whether or not Plaintiffs may have had a unilateral

---

[215] R. Doc. 182 at ¶ 1094.

[216] *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257, 129 S.Ct. 788, 796, 172 L.Ed.2d 582 (2009) (citation omitted).

[217] *Id.*; *Doe #1 v. Bd. of Supervisors of Louisiana Statue Univ. and Agric. and Mech. College*, Civ. A. No. 21-564-SDD-SDJ, 2022 WL 16701930, at *24 (M.D. La. Nov. 3, 2022) (quoting *Doe v. Napa Valley Unified School District,* Civ. A. No. 17-cv-03753-SK, 2018 WL 4859978, at *4 (N.D. Cal. Apr. 24, 2018) (Kim, M.J.)).  *See, Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592, 608 (E.D. Tex. 2016) (finding that the plaintiff could not state a claim under § 1983 based on an underlying violation of Title IX because Title IX does not allow suit against individuals).

[218] R. Doc. 182 at ¶¶ 1099, 1101, & 1105.

expectation of such interests, they have failed to show a legitimate claim of entitlement to a recognized property interest.[219]

The Court also finds unavailing Plaintiffs' assertion that Stewart's failure to comply with the administrative requirements of Title IX interfered with their property interest in their education.  Plaintiffs allege that they were entitled to request and receive Title IX investigations when they reported violations and to obtain support measures, as outlined in LSU's Title IX policy and "relevant federal regulations."[220]  Plaintiffs then allege that, "When Defendants decided not to report or investigate Plaintiffs' reports of sexual misconduct and to deny Plaintiffs support services, they deprived Plaintiffs of their property and liberty interests and caused Plaintiffs to suffer grievous loss by being denied educational benefits."[221]  Again, Plaintiffs fail to identify the "support measures" and "educational benefits" of which they were purportedly deprived.  Plaintiffs, however, seem to suggest that they are included in Plaintiffs' liberty interest in their education.[222]

Although the Fifth Circuit has recognized a state-created liberty interest in higher education under the Texas Constitution,[223] the Fifth Circuit has held that, "Education—particularly post-graduate or professional education—is not a right afforded either explicit or implicit protection under the Constitution."[224]  The Fifth

---

[219] *See*, *Holden v. Perkins*, 389 F. Supp. 3d 16, 23 (E.D. La. 2019).
[220] R. Doc. 182 at ¶ 1104.
[221] *Id.* at ¶ 1105.
[222] *Id.* at ¶ 1106.
[223] *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017), *as revised* (June 26, 2017) (citing *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929-30 (Tex. 1995); *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961)).
[224] *Barnes v. Symeonides*, 44 F.3d 1005 (5th Cir. 1995) (citing authority).

Circuit further held that, "There is no state-created right to graduate-level education" in Louisiana.[225]  Plaintiffs have not cited any statutory, regulatory, jurisprudential, or other authority for the proposition that they had a constitutionally protected property or liberty interest in their higher education at LSU.

Moreover, even if Plaintiffs could point to binding precedent establishing a liberty or property interest in their education, it is clear to this Court that any purported interest was not "clearly established" at the time of the alleged deprivations, as required to overcome Stewart's claim for qualified immunity.[226]  As Stewart points out, the Fifth Circuit has explicitly recognized that, "Most case law involving due process in the educational setting concerns student dismissals or suspensions from academic institutions."[227]  After reviewing pertinent case law on this issue, this Court reaches the same conclusion.[228]  As explained by our sister

---

[225] *Barnes*, 44 F.3d 1005.

[226] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011).

[227] *Smith v. Davis*, 507 Fed.Appx. 359, 362 (5th Cir. 2013).

[228] *See*, *Barnes*, 44 F.3d 1005 (former LSU law student brought due process claims against the university and university officials after he was dropped from the student rolls for failing to pay his tuition and fees); *Perez v. Texas A&M Univ. at Corpus Christi*, 589 Fed.Appx. 244 (5th Cir. 2014) (student in state university's nursing program brought § 1983 action against university and its employees, asserting procedural and substantive due process violations arising from her dismissal from the program, after three warnings during clinical rotation caused her to fail a course for the second time); *Holden v. Perkins*, Civ. A. No. 18-13200, 398 F. Supp. 3d 16 (2019) (public university student athlete who had received an athletic scholarship to play volleyball alleged violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses regarding her removal from the team and the decision not to renew her scholarship after student complained about emotionally abusive treatment by coach); *Pham v. Univ. of Louisiana at Monroe*, 194 F. Supp. 3d 534 (W.D. La. 2016) (former university student brought § 1983 claim against university and faculty members alleging the university failed to comply with due process before punishing him on two occasions); *Babinski v. Queen*, Civ. A. No. 20-426-SDD-EWD, 2021 WL 4483061 (M.D. La. Sept. 29, 2021) (Dick, C.J.) (plaintiff brought six constitutional claims under § 1983, including procedural due process claim, and sought damages and injunctive relief mandating his reinstatement in the Ph.D. program and the removal of all impediments to his completion thereof); *Duhon v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, Civ. A. No. 20-2022, 2021 WL 5562156 (E.D. La. Aug. 23, 2021) (plaintiff sought damages and injunctive relief arising from his suspension and termination from the cardiology fellowship program at LSU and the subsequent loss of his Louisiana medical license).

court, "The United States Supreme Court has never addressed whether a university student has a protected liberty or property interest in *post-high school education*."[229]

In *Smith v. Davis*, the Fifth Circuit explained that in cases involving student dismissals or suspensions from academic institutions, "the Supreme Court has held students are afforded limited due-process protections, in the form of an informal give-and-take between the student and the administrative body dismissing him that would, at least, give the student the opportunity to characterize his conduct and put it in what he deems the proper context."[230]  The Fifth Circuit recognized that the Supreme Court "has not held college academic decisions implicate property or liberty interests, entitling a student to constitutional due-process protections.  Accordingly, our court has followed suit."[231]  The Fifth Circuit pointed out that, "to the extent our court has addressed this issue, it has held a student who is not denied access to public education does not have a property or liberty interest implicated."[232]  In the instant case, Plaintiffs have not alleged that they were suspended or expelled from LSU, or otherwise disciplined, as a result of reporting sexual misconduct.  Thus, Plaintiffs have failed to show that when Stewart allegedly failed to file and investigate their Title IX complaints, the law was clearly established that her actions violated Plaintiffs' procedural due process rights.

---

[229] *Pham*, 194 F. Supp. 3d at 543.
[230] *Smith*, 507 Fed.Appx. at 362 (quoting *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978)) (internal quotation marks omitted).
[231] *Smith*, 507 Fed.Appx. at 362.
[232] *Smith*, 507 Fed.Appx. at 362 (citing *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997) (no property or liberty interest implicated in transfer from one school program to another with stricter discipline because student never denied access to public education, even temporarily, such as through suspension or expulsion)).

The Court recognizes that Plaintiffs rely on *Perry v. Sinderman* for the proposition that, "the Supreme Court clearly established the obvious principle that if public universities have mandatory disciplinary procedures and plaintiffs are eligible for the protections of those procedures, failing to follow the published procedures constitutes an unconstitutional deprivation of plaintiffs' property without due process."[233] Plaintiffs' reliance on *Perry* is both misplaced and somewhat perplexing, as that case involved a procedural due process claim brought by a state junior college professor against the college when his employment contract was not renewed. Further, *Perry* does not stand for the proposition set forth above, as the case did not involve any disciplinary procedures. Instead, the case turned on the college's "de facto tenure program" contained in "an unusual provision" in the college's official Faculty Guide, which provided that, "Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work."[234] The Supreme Court concluded that, "A teacher, like the respondent, who has held his position for a number of years, might be able to show from the circumstances of this service – and from other relevant facts – that he has a legitimate claim of entitlement to job tenure," and that, "the respondent has alleged the existence of rules and understandings, promulgated and fostered by state

---

[233] R. Doc. 213 at p. 23 (citing *Perry*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). *See also*, R. Doc. 182 at ¶ 1107; *Id.* at ¶¶ 1107-1116.
[234] *Perry*, 408 U.S. at 599-600, 92 S.Ct. at 2699.

officials, that may justify his legitimate claim of entitlement to continued employment absent 'sufficient cause.'"[235]  The Supreme Court held that the professor must be given an opportunity to prove the legitimacy of his claim of such a property interest in light of the policies and practices of the institution.

Plaintiffs fail to explain how the holding in *Perry* applies in this case, beyond their conclusory allegation set forth above.  Plaintiffs merely assert in the Second Amended Complaint that, "Unlike in *Sinderman*, LSU following Title IX procedures was not optional.  Following procedures was mandatory after a student made a report."[236]  Plaintiffs further assert that, "Defendants knew or should have known that Plaintiffs were entitled to LSU and its employees following LSU's own published procedures," and that, "Defendants' actions violated clearly established Constitutional law; thus, they are not entitled to qualified immunity."[237]  For the reasons set forth above, the Court finds that *Perry* does not support Plaintiffs' contention that they have a protected liberty or property interest in their education or in the investigation of reports of sexual misconduct under LSU's Title IX policy. As such, Stewart is entitled to qualified immunity.

2. <u>Substantive Due Process</u>

Lastly, Stewart asserts that she is entitled to qualified immunity from Plaintiffs' substantive due process claim asserted in Count VII of the Second

---

[235] *Id.*, 408 U.S. at 602-603, 92 S.Ct. at 2700.
[236] R. Doc. 182 at ¶  1113 (citing *Perry*, 408 U.S. 593, 92 S.Ct. 2694); R. Doc. 213 at p. 25 (citing *Perry*, 408 U.S. 593, 92 S.Ct. 2694).
[237] R. Doc. 182 at ¶¶ 1114-1115 (citing *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)); *See*, R. Doc. 213 at p. 25.

Amended Complaint because none of the actions allegedly committed by Stewart rise to the level of "egregiousness" sufficient to support a substantive due process claim.[238] Stewart also argues that she is entitled to qualified immunity because there is no clearly established case law that would inform any reasonable government official that any of Stewart's actions would be a violation of Plaintiffs' rights to substantive due process.[239]

Plaintiffs claim that they have each established that they "suffered a deprivation of constitutional rights in the form of denial of substantive due process due to the deprivation of their fundamental liberty interest in bodily integrity," and that, "This deprivation directly resulted from the pervasive culture of failing to respond appropriately to complaints of sexual misconduct at LSU, which Stewart directly participated in fostering."[240] Plaintiffs then cite *Doe v. Taylor Independent School District*, wherein the Fifth Circuit established a test to determine whether a school official could be held liable for a subordinate employee's sexual abuse of a student, and ask this Court "to apply the *Taylor* test to the present situation and replace 'subordinate' with 'student.'"[241] In doing so, Plaintiffs admit that the facts of this case "are not completely analogous, as Plaintiffs have not alleged abuse by an employee," and concede that, "Plaintiffs are not aware of any case law that is directly on point."[242]

---

[238] R. Doc. 199-1 at p. 13 (citing *Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 544 (W.D. La. 2016)).
[239] R. Doc. 199-1 at pp. 13-14.
[240] R. Doc. 213 at p. 24.
[241] *Id.* (citing *Taylor*, 15 F.3d 443, 454 (5th Cir. 1994)).
[242] R. Doc. 213 at p. 24.

In response, Stewart asserts that Plaintiffs' Opposition brief is non-responsive to the arguments in her Motion and that Plaintiffs failed to address how any alleged action by Stewart, individually, was "arbitrary" in the constitutional sense. [243] Instead, Plaintiffs cite *Taylor*, a case involving sexual abuse of a student by a school employee and which Plaintiffs admit is not on point, and ask the Court to fashion a new legal test to somehow conclude that Stewart violated their substantive due process rights.[244] Stewart argues that, "How a legal test applied for the first time by this Court would ever be 'clearly established law' is inexplicable."[245] The Court agrees.

"Substantive due process bars arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them."[246] Substantive due process "ensures that, regardless of the fairness of the procedures used, the government does not use its power for oppressive purposes."[247] "To state a substantive due process claim, a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate government interest."[248] The Fifth Circuit has held that, "In reviewing a

---

[243] R. Doc. 225 at p. 6 (citing *Pham v. Univ. of La. Monroe*, 194 F. Supp. 3d 534, 544 (W.D. La. 2016)).

[244] R. Doc. 225 at p. 6 (citing *Taylor*, 15 F.3d 443).

[245] R. Doc. 225 at p. 6.

[246] *Holden v. Perkins*, 398 F. Supp. 3d 16, 22 (E.D. La. 2019) (citing *Lewis v. Univ. of Texas Medical Branch at Galveston*, 665 F.3d 625, 630-31 (5th Cir. 2011); *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007)).

[247] *Duhon v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll*, Civ. A. No. 20-2022, 2021 WL 5562156, at *4 (E.D. La. Aug. 23, 2021) (quoting *Patterson v. Def. POW/MIA Acct. Agency*, 343 F. Supp. 3d 637, 646 (W.D. Tex. 2018)) (internal quotation marks omitted).

[248] *Babinksi v. Queen*, Civ. A. No. 20-426-SDD-EWD, 2021 WL 4483061, at *12 (M.D. La. Sept. 29, 2021) (quoting *Williams v. Texas Tech. Univ. Health Sciences Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993)) (internal quotation marks omitted).

substantive due process claim, the existence of a protected property interest is a threshold issue we must reach before we consider whether the defendants' actions were arbitrary and capricious."[249]  "If there is no protected property interest, there is no process due."[250]

In the Second Amended Complaint, Plaintiffs allege that, "Defendants' failure to comply with the administrative requirements of Title IX and their own policies deprived Plaintiffs of their substantive due process rights to their liberty interest in bodily integrity and their property interest in their education."[251]  Plaintiffs also allege that their "rights to substantive and procedural due process were clearly established at the time of the incidents alleged, and Defendants' conduct was objectively unreasonable in the light of that then clearly established law." [252] Plaintiffs further allege that until the publication of the Husch Blackwell Report in March 2021, Plaintiffs were unaware, and the defendants concealed from Plaintiffs, that the defendants "intentionally denied Plaintiffs of their substantive and procedural due process rights regarding the events outlined *supra*."[253]  There is no other reference to Plaintiffs' substantive due process rights in the Second Amended Complaint.[254]  The Court has already determined that Plaintiffs have failed to show a protected property interest in their education.  As such, Stewart is entitled to

---

[249] *Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (citing *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)).
[250] *Wigginton*, 964 F.3d at 335 (quoting *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992)) (internal quotation marks omitted).
[251] R. Doc. 182 at ¶ 1092.
[252] *Id*. at ¶ 1116.
[253] *Id*. at ¶ 1117.
[254] *See, generally*, R. Doc. 182 at ¶¶ 1086-1118.

qualified immunity on Plaintiffs' substantive due process claim that is based upon their purported property interest in their education.

It is unclear to the Court, from either the Second Amended Complaint or the Opposition brief, the liberty interest that Plaintiffs are claiming they were purportedly deprived of by Stewart. Plaintiffs merely ask the Court to hold Stewart liable because she "learned of inappropriate sexual behavior by student-athletes, demonstrated deliberate indifference to student-victims by failing to take action that was obviously necessary to prevent or stop the abuse, and that such failure caused a constitutional injury to the student-victims."[255] The Court finds that such conclusory allegations, in addition to the vague allegations in the Second Amended Complaint, fail to demonstrate that Plaintiffs' purported liberty interest in their bodily integrity was clearly established when the challenged conduct occurred.

The Court also declines Plaintiffs' request to apply the test set forth by the Fifth Circuit in *Doe v. Taylor Independent School District* to determine "the personal liability of school officials in physical sexual abuse cases."[256] In that case, the Fifth Circuit held that, "A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff" establishes that: (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; (2) the defendant demonstrated deliberate indifference

---

[255] R. Doc. 213 at p. 25.
[256] *Taylor*, 15 F.3d 443, 454 (5th Cir. 1994).

toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student.[257]  That test was developed for a very narrow set of facts, none of which are present here.  This case does not involve claims of supervisor liability, nor does it involve claims of physical or sexual abuse of an elementary or secondary school student by a teacher.  Accordingly, the Court finds that Plaintiffs' reliance upon *Taylor* is misplaced.

The Court finds it significant that Plaintiffs admit in their Opposition brief that, "Plaintiffs are not aware of any case law that is directly on point" with respect to their substantive due process claim.[258]  Plaintiffs' admission shows that Plaintiffs cannot demonstrate that Stewart violated a constitutional right that was clearly established at the time of the challenged conduct.  As such, Stewart is entitled to qualified immunity on Plaintiffs' substantive due process claims.

### 4.  Leave to Amend is Denied

Although not mentioned by either party in their briefs,[259] the Court finds that granting Plaintiffs leave to amend their complaint to address the foregoing deficiencies is not appropriate in this case under Fed. R. Civ. P. 15.  This Court will "freely give leave [to amend] when justice so requires,"[260] but leave to amend "is by no means automatic."[261]  In exercising its discretion, this Court may consider such

---

[257] *Id*.
[258] R. Doc. 213 at p. 24.
[259] *See, generally*, R. Docs. 199-1, 213, & 225.
[260] Fed. R. Civ. P. 15(a).
[261] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).

factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[262] "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[263]

Applying those factors here, the Court finds that any amendment would likely be futile in light of the fact that the Court has determined that Stewart is entitled to qualified immunity as to Plaintiffs' three § 1983 claims because Plaintiffs have failed to show that Stewart's failure to report Title IX complaints violated Plaintiffs' constitutional rights that were clearly established at the time of the challenged conduct.[264] The Court further finds that granting Plaintiffs leave to amend would cause undue delay in this case. More importantly, however, Plaintiffs have already been afforded two opportunities to amend their allegations,[265] and have repeatedly failed to cure the deficiencies through amendments previously allowed, even allowing for an amendment following Motions to Dismiss filed by the defendants. Based upon the foregoing and exercising its discretion under Fed. R. Civ. P. 15, Plaintiffs will not be afforded a third opportunity to amend their claims against Stewart.

---

[262] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).

[263] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).

[264] *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)).

[265] *See*, R. Docs. 1, 22, 177, 180, 181, & 182.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Jennie Stewart's Rule 12(b)(6) Motion to Dismiss[266] is **GRANTED.**   All of Plaintiffs' claims asserted against Jennie Stewart in Counts V through VII in the Second Amended Complaint are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, February 17, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[266] R. Doc. 199.