## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**                    **CIVIL ACTION**

**VERSUS**                               **NO. 21-242-WBV-SDJ**

**LOUISIANA STATE UNIVERSITY, ET AL.**

### ORDER AND REASONS

Before the Court is Verge Ausberry's Motion to Dismiss Plaintiffs' Second Amended Complaint and Jury Demand.[1]  Plaintiffs oppose the Motion,[2] and Ausberry has filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

## I.    FACTUAL and PROCEDURAL BACKGROUND[4]

This case involves allegations by ten former students of Louisiana State University and Agricultural and Mechanical College ("LSU") that LSU and its Athletic Department funded and implemented a purposefully deficient sexual misconduct and Title IX reporting scheme separate from LSU's official Title IX office to keep sexual assault claims within the Athletic Department.[5]  In their Second Amended Complaint and Jury Demand ("Second Amended Complaint"), Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth

---

[1] R. Doc. 200.
[2] R. Doc. 210.
[3] R. Doc. 224.
[4] The factual background of this case was extensively detailed in the Court's Order and Reasons granting Jennie Stewart's Motion to Dismiss (R. Doc. 317) and, for the sake of brevity, will not be repeated here.
[5] R. Doc. 1 at ¶ 10; R. Doc. 22 at ¶ 10; R. Doc. 182 at ¶ 25.

Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch (collectively, "Plaintiffs"), allege that while attending school at LSU's Baton Rouge campus between 2009 and 2021, the defendants, LSU's Board of Supervisors, Jennie Stewart, Verge Ausberry, Miriam Segar, and Johnathan Sanders (collectively, "Defendants") repeatedly engaged in discriminatory, retaliatory, and other unlawful actions in their interactions with Plaintiffs and in response to Plaintiffs' reports of Title IX violations and violations of LSU's Code of Student Conduct, thereby violating their own policies.[6] Plaintiffs allege that LSU handled Title IX complaints made against student-athletes differently than complaints made against non-athletes.[7] Plaintiffs further allege that, "Title IX complaints against student-athletes are purposefully buried or diverted so as to ensure that those complaints were never properly investigated or addressed and the student-athletes are not negatively impacted or prevented from concentrating on their athletics, all of which benefits LSU financially and causes further harm to Plaintiffs."[8] Plaintiffs assert that Defendants' actions and inactions in response to their reports of Title IX violations subjected them to additional harassment and created a sexually hostile environment on campus.[9]

Plaintiffs allege that they were victims of sex-based discrimination, including rape, sexual assault, sexual harassment, and/or stalking, that was perpetrated by male LSU students and a male professor between 2009 and 2020, and that one

---

[6] R. Doc. 182 at ¶ 36.
[7] *Id*. at ¶ 43.
[8] *Id*. at ¶ 44.
[9] *Id*. at ¶ 45.

plaintiff was the victim of verbal and emotional abuse by an LSU tennis coach.[10] Although the alleged sexual misconduct occurred more than a year before Plaintiffs filed this lawsuit, Plaintiffs allege that they were unaware of LSU's inadequate Title IX reporting policies until the March 2021 publication of the Husch Blackwell report. According to Plaintiffs, LSU retained the Husch Blackwell law firm in November 2020 to investigate the school's handling of several Title IX-related incidents, as well as LSU's Title IX policies and procedures.[11]  Plaintiffs allege that Husch Blackwell publicly released its investigative report and findings on March 5, 2021, concluding that various incidents of athletics-related misconduct had not been appropriately reported to LSU's Title IX Coordinator and voiced concern about a lack of reporting prior to November 2016.[12]  Husch Blackwell also found that LSU's Title IX Office had never been appropriately staffed or provided with the independence and resources to carry out Title IX's mandates, noting that the Title IX Office "has at time not handled those matters reported to it appropriately."[13]  Husch Blackwell noted that its concerns about reporting were not limited to athletics, and that it found deficiencies in a variety of different matters.[14]

In the Second Amended Complaint, Plaintiffs allege that they could not have known that LSU and its employees, including the individual defendants, had concealed disclosures of sexual misconduct that should have been reported to LSU's

---

[10] *See*, *Id*. at ¶¶ 113-741.
[11] R. Doc. 182 at ¶ 47.
[12] *Id*. at ¶¶ 51-52.
[13] *Id*. at ¶¶ 53-54.
[14] *Id*. at ¶¶ 52 & 54.

Title IX Office, that LSU purposely handled complaints of sexual misconduct perpetrated by student athletes or others affiliated with the LSU Athletics Department in a different manner than complaints of sexual misconduct perpetrated by other individuals, and the defendants intentionally instituted a process of responding to disclosures of Title IX violations in a manner designed to deter any future disclosures.[15]

Pertinent to the instant Motion, Plaintiffs assert the following three claims under 42 U.S.C. § 1983 against Verge Ausberry, the current Executive Deputy Athletic Director and Executive Director of External Relations for LSU,[16] in his individual capacity:[17] (1) First Amendment Retaliation; (2) Denial of Equal Protection under the Fourteenth Amendment; and (3) Denial of Substantive and Procedural Due Process under the Fourteenth Amendment.[18]  In his Motion to Dismiss, Ausberry asserts that Plaintiffs have failed to state a cause of action under § 1983.[19]  Ausberry then raises the defense of qualified immunity, asserting that Plaintiffs have failed to

---

[15] *Id.* at ¶ 83.

[16] *Id.* at ¶ 19.

[17] The Court notes that in listing the defendants in this case in its Second Amended Complaint, Plaintiffs seem to assert that Ausberry is being sued "in his official and personal capacity." *Id.* at ¶ 19.  In the heading of Counts V, VI, and VI, however, which contain the only claims asserted against Ausberry, Plaintiffs assert that the claims are brought against the individual defendants, including Ausberry, "in their individual capacities." *Id.* at pp. 134, 142, & 145.  Plaintiffs further assert, in each count, that, "[A] valid individual capacity claim requires a Section 1983 plaintiff to 'establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation." *Id.* at ¶¶ 1007, 1065, & 1093 (quoting *Louisiana Cleaning Sys. v. Brown*, Civ. A. No. 14-2853, 2015 WL 6869907, at *7 (W.D. La. Nov. 9, 2015) (James, J.)) (internal quotation and quotation marks omitted).  Thus, Plaintiffs seem to assert these claims against Ausberry in his personal capacity.  *See*, *Brown*, Civ. A. No. 14-2853, 2015 WL 6869907, at *5-7 (addressing the plaintiffs' claims brought against a sheriff in his official and individual capacities).

[18] R. Doc. 182 at ¶¶ 754-1118.

[19] R. Doc. 200-1 at pp. 10-12.

show that any clearly established case law would have put a reasonable state official on notice that failing to report a Title IX complaint of misconduct would be a violation of Plaintiffs' rights under the First or Fourth Amendment.[20]  Ausberry further asserts that Plaintiffs' § 1983 claims are time-barred because all of the alleged actions occurred on or before February 2020, more than a year before this suit was filed in April 2021.[21]  Plaintiffs oppose the Motion, asserting that Ausberry is not entitled to qualified immunity and that their claims are not time-barred because they did not accrue until the release of the Husch Blackwell report in March 2021.[22]  In response, Ausberry maintains that Plaintiffs' claims are time-barred and that he is entitled to qualified immunity and the dismissal of Plaintiffs' § 1983 claims.[23]

## II.    LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b) Motion to Dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[24]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[25]  "A claim has facial plausibility when the plaintiff pleads factual

---

[20] R. Doc. 200-1 at pp. 11-12.  While Ausberry references Plaintiffs' "purported 1st and 4th Amendment claims of retaliation, equal protection and due process," (*Id.* at p. 11), this appears to be a grammatical error, as Plaintiffs only assert violations of their First and Fourteenth Amendment rights in the Second Amended Complaint.  *See*, R. Doc. 182 at ¶¶ 1002-1118.

[21] R. Doc. 200 at p. 1; R. Doc. 200-1 at pp. 2 & 12-13.

[22] R. Doc. 210.

[23] R. Doc. 224.

[24] Fed. R. Civ. P. 12(b)(6).

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[27]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[28]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[29] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[30]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[31]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[32]

---

[26] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).

[27] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).

[28] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[29] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[30] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[31] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[32] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

**B. Liability under 42 U.S.C. § 1983 and Qualified Immunity**

Title 42 U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law. Specifically, § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[33]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[34] To establish § 1983 liability, the plaintiff must establish the following three elements: (1) deprivation of a right secured by the United States Constitution or federal law; (2) that occurred under color of state law; and (3) was caused by a state actor.[35]

Qualified immunity is a defense to § 1983 claims that "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[36] The Supreme Court has held that courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law, without resolving the often more difficult question of whether the purported right

---

[33] 42 U.S.C. § 1983.
[34] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[35] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).
[36] *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)).

exists at all.[37]  According to the Supreme Court, "This approach comports with our usual reluctance to decide constitutional questions unnecessarily."[38]  The Supreme Court has further held that, "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[39]  "Where no controlling authority specifically prohibits a defendant's conduct[,] . . . the law cannot be said to be clearly established . . . . [G]eneralizations and abstract propositions are not capable of clearly establishing the law."[40]  While there need not be a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate."[41]  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[42]  The Supreme Court has repeatedly advised courts "not to define clearly established law at a high level of generality," explaining that, "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'"[43]

Once a government official asserts the defense of qualified immunity, the burden shifts to the plaintiff to negate the defense.[44]  To overcome a claim of qualified

[37] *Reichle*, 566 U.S. at 664, 132 S.Ct. at 2093 (citing *Pearson v. Callahan*, 555 U.S. 223, 227, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

[38] *Reichle*, 566 U.S. at 664, 132 S.Ct. at 2093 (citing authority).

[39] *Mullenix v. Luna*, 577 U.S. 7, 11-12, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012)).

[40] *Smith v. Davis*, 507 Fed.Appx. 359, 361 (5th Cir. 2013) (quoting *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc)) (internal quotation marks omitted).

[41] *Mullenix*, 577 U.S. at 11, 136 S.Ct. at 308 (quoting *Ashcroft*, 563 U.S. at 741, 131 S.Ct. 2074) (internal quotation marks omitted).

[42] *Mullenix,* 577 U.S. at 12, 136 S.Ct. at 308 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).  *See, Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) (same).

[43] *Mullenix*, 577 U.S. at 12, 136 S.Ct. at 308 (quoting *Ashcroft*, 563 U.S. at 742, 131 S.Ct. 2074) (internal quotation marks omitted) (emphasis added in *Mullenix*).

[44] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct.[45]    The Supreme Court has held that, "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."[46]

## III.    ANALYSIS

### A. Prescription/Tolling of Plaintiffs' § 1983 Claims

Ausberry moves for the dismissal of Plaintiffs' § 1983 claims on the grounds that they are time-barred by the one-year prescriptive period set forth in La. Civ. Code art. 3492.[47]    The Fifth Circuit has held that, "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[48]    As Ausberry correctly points out,[49] there is no federal statute of limitations for actions brought under 42 U.S.C. § 1983.[50]    When that is the case, "the settled practice is to borrow an 'appropriate' statute of limitations from state law."[51]

---

[45] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citation omitted).

[46] *Ashcroft*, 563 U.S. at 735, 131 S.Ct. at 2080 (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

[47] R. Doc. 200-1 at pp. 12-13.

[48] *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)).

[49] *See,* R. Doc. 200-1 at p. 12.

[50] *See, King-White*, 803 F.3d at 758.

[51] *Id.* (citations omitted).    The Fifth Circuit noted, however, that, "Of course, this rule only applies to statutes enacted prior to passage of 28 U.S.C. § 1658, which now governs in such circumstances.    *See* 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004))."    *See, Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018) ("Courts considering claims brought under § 1983 must borrow the relevant state's statute of limitations for personal injury actions.") (citing authority).

In *Wilson v. Garcia*, the Supreme Court held that a § 1983 claim is best characterized as a personal injury action and, as such, is governed by the forum state's statute of limitations for personal injury actions.[52]    In *Owens v. Okure*, the Supreme Court clarified that when a state has multiple statutes of limitations for personal injury actions, a § 1983 claim should be governed by the general or residual statute for personal injury actions.[53]    Accordingly, this Court will apply Louisiana's one-year prescriptive period for personal injury actions[54] to Plaintiffs' § 1983 claims, rather than the three-year period applicable to sexual assaults.[55]

The Fifth Circuit has held that, "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,' and while we borrow the limitations period from state law, 'the particular accrual date of a federal cause of action is a matter of federal law.'"[56]    Thus, federal law governs when a § 1983 claim accrues.[57] A claim "accrues" under federal law when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.[58] According to the Fifth Circuit, a plaintiff's knowledge encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the

---

[52] *Wilson v. Garcia*, 471 U.S. 261, 276-80, 105 S.Ct. 1938, 1947-49, 85 L.Ed.2d 254 (1985), superseded by statute as stated in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).

[53] 488 U.S. 235, 249-50, 109 S.Ct. 573, 581-82, 102 L.Ed.2d 594 (1989).

[54] La. Civ. Code art. 3492.

[55] La. Civ. Code art. 3496.2.

[56] *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)).

[57] *Redburn*, 898 F.3d at 496 (*citing Piotrowski v. City of Houston*, 51 F.3d 512, 516 n.10 (5th Cir. 1995)); *Smith v. Regional Transit Authority*, 827 F.3d 412, 421 (5th Cir. 2016) (citing *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998)).

[58] *Redburn*, 898 F.3d at 496 (citing *Piotrowski*, 51 F.3d at 516).  *See*, *Smith*, 827 F.3d at 421 ("This court has stated that '[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'") (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993)).

injury and the defendant's actions.[59]  "However, the plaintiff need not know that a legal cause of action exists; she need only know facts that would support a claim."[60]

Since the Louisiana statute of limitations applies to Plaintiffs' § 1983 claims, Louisiana equitable tolling principles apply.[61]  Louisiana law allows for the suspension of prescription under the doctrine of *contra non valentem*.[62]  The Louisiana Supreme Court has recognized four factual situations in which the doctrine of *contra non valentem* applies to suspend the prescriptive period, the most pertinent to this case being when "the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant."[63] "However, the doctrine of *contra non valentem* only applies in 'exceptional circumstances.'"[64]  Sometimes referred to as the "discovery rule,"[65] the Louisiana Supreme Court has further clarified that, "[t]his principle will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned."[66]  Similarly, a plaintiff may invoke the

---

[59] *King-White*, 803 F.3d at 762 (quoting *Piotrowski*, 237 F.3d at 576).

[60] *Sherman v. Irwin*, Civ. A. No. 17-4061, 2018, WL 3632360, at *3 (E.D. La. July 31, 2018) (Barbier, J.) (citing *King-White*, 803 F.3d at 762).

[61] *Green v. Doe*, 260 Fed.Appx. 717, 720 (5th Cir. 2007) (citing *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998)).

[62] *Broussard v. Brown*, 599 Fed.Appx. 188 (5th Cir. 2015) (citing *Corsey v. Louisiana*, 375 So.2d 1319, 1321-22 (La. 1979)).

[63] *Renfroe v. State ex rel. Dept. of Transp. and Development*, 2001-1646 (La. 2/26/02), 809 So.2d 947, 953 (citing *Plaquemines Parish Comm. Council v. Delta Dev. Co.*, 502 So.2d 1034 (La. 1987)).

[64] *Renfroe*, 809 So.2d at 953 (*quoting* La. Civ. Code art. 3467, Official Revision Commend (d); *State ex rel. Div. of Admin. v. McInnis Brothers Construction, Inc.*, 97-0742 (La. 10/21/97), 701 So.2d 937, 940). *See*, *Ellis v. Evonik Corp.*, Civ. A. No. 21-1089, 2022 WL 1719196, at *3 (E.D. La. May 27, 2022) (Vance, J.) (same).

[65] *Ellis*, Civ. A. No. 21-1089, 2022 WL 1719196, at *3.

[66] *Renfroe*, 809 So.2d at 953-54 (quoting *Corsey v. State of Louisiana, Through the Department of Corrections*, 375 So.2d 1319, 1322 (La. 1979)).

fraudulent concealment doctrine by proving two elements: (1) that the defendants concealed the conduct complained of; and (2) the plaintiff failed, despite the exercise of due diligence on her part, to discover the facts that form the basis of her claim.[67] To satisfy the first element, the defendant must have engaged in affirmative acts of concealment.[68] The Fifth Circuit has held that silence is not enough, and that the defendant "must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry."[69]

Here, Ausberry argues that Plaintiffs' § 1983 claims are prescribed because all of the alleged harassment and sexual misconduct occurred on or before February 2020, more than one year before Plaintiffs filed their Complaint on April 26, 2021.[70] Ausberry also adopts and incorporates "any and all of the arguments put forth by his co-defendants" in their respective motions to dismiss the claims asserted in Counts V through VII, especially the arguments asserted by Segar.[71] Relying upon a 2017 case from the Western District of Texas, *Doe I v. Baylor University,* Plaintiffs assert that their § 1983 claims were timely-filed because Plaintiffs were unaware that their injuries were causally connected to actions and inactions by LSU until the release of the Husch Blackwell report in March 2021.[72] While not a model of clarity, Plaintiffs seem to invoke both the doctrine of *contra non valentem* and the fraudulent

---

[67] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988) (citation omitted).
[68] *Allan*, 851 F.2d at 1528-29 (citing authority). *See, Rx.com v. Medco Health Solutions, Inc.*, 322 Fed.Appx. 394, 397 (5th Cir. 2009) (citing *Allan*, 851 F.2d at 1531)).
[69] *Allan*, 851 F.2d at 1529 (quoting *Crummer Co. v. Du Pont*, 255 F.2d 425, 432 (5th Cir.1958)) (internal quotation marks omitted).
[70] R. Doc. 200 at p. 1; R. Doc. 200-1 at pp. 2 & 12-13.
[71] R. Doc. 200-1 at p. 13.
[72] R. Doc. 210 at pp. 17-25 (citing *Doe 1*, 240 F. Supp. 3d 646, 662-63 (W.D. Tex. 2017)).

concealment doctrine in asserting that LSU's actions and inactions "were actively concealed by the Defendant from Plaintiffs,"[73] that "LSU and its employees went to great lengths to ensure students did not understand their rights or LSU's obligations under Title IX,"[74] and that LSU and its employees "purposefully buried or ignored Plaintiffs' reports of assault and abuse."[75]  Plaintiffs claim that the Husch Blackwell report details "numerous significant actions and inactions by Ausberry," including that he reported Calise Richardson's disclosure of Jade Lewis' abuse to Segar, rather than the Title IX Coordinator, Ausberry's resistance toward and reprimands of Sharon Lewis for attempting to report Title IX violations, Ausberry's receipt of John Coe's admission of his abuse of Jade Lewis and his failure to act on that admission, and LSU's failure to discipline or meet with Ausberry regarding these repeated violations of LSU policy.[76]

For the reasons set forth in the Court's February 17, 2023 Order and Reasons granting Jennie Stewart's Rule 12(b)(6) Motion to Dismiss,[77] the Court finds that, on their face, all of Plaintiffs' § 1983 claims asserted against Ausberry accrued outside the applicable one-year statute of limitations.  Plaintiffs allege that Richardson was raped by an LSU football player during her freshman year at LSU, which began in the fall of 2014, that she was raped by a football recruit in the fall of 2015, that she was verbally and physically abused by LSU football player John Coe between the

---

[73] R. Doc. 210 at pp. 23-25.  *See, Id.* at pp. 20-21.
[74] *Id.* at p. 24.
[75] *Id.* at p. 25.
[76] R. Doc. 210 at p. 23 (*citing* R. Doc. 22-1 at pp. 59, 62-66, 73-76, & 100).
[77] R. Doc. 317 at pp. 13-15.

summer of 2016 and 2017 and had reported the abuse by October 2016, and that LSU football player John Doe attempted to rape her in the fall of 2016 and she reported it to her direct supervisor the following day.[78]  Plaintiffs allege that Robertson was raped by John Doe on January 22, 2016, that it was reported to LSU a few days later, that John Doe continued to verbally harass Robertson in late spring/early summer of 2016, and that he threw a shake on her car during finals week in May 2016.[79] Plaintiffs allege that John Doe took a nude photograph of Brennan without her consent on July 9, 2016, and that Brennan met with LSU officials about it on July 22, 2016.[80]  Plaintiffs allege that John Doe also raped Owens on June 28, 2016, that she first disclosed the rape after checking into a nearby rehabilitation facility on or about April 4, 2017, and that the facility reported the sexual assault to LSU's Athletic Department approximately a week after the initial disclosure and informed Owens and her parents of the report.[81]

Plaintiffs allege that Andries was sexually assaulted by John Roe on a fraternity bus trip in October 2016, that John Roe attempted to sexually assault her again in July 2017, and that she reported the first assault to her LSU therapist in the fall of 2017.[82]  Plaintiffs allege that Lewis was physically assaulted by John Coe at least six times between January 2017 and May 2018, and that she first disclosed the abuse to the tennis team athletic trainer in May 2017.[83]  Plaintiffs allege that

---

[78] R. Doc. 182 at ¶¶ 121-122, 124-130, 147-162, 182-191.
[79] R. Doc. 182 at ¶¶ 243-248 & 253-255, & 262-268.
[80] *Id*. at ¶¶ 290-306.
[81] R. Doc. 182 at ¶¶ 328-338.
[82] R. Doc. 182 at ¶¶ 364-373, 376-377, 381.
[83] *Id*. at ¶¶ 456-459, 462-467, & 477-479.

Johnson was verbally and emotionally abused and harassed by the LSU tennis coach, Julia Sell, between the fall of 2017 and her graduation in the spring of 2019, and that Johnson was afraid that she would lose her scholarship if she reported Sell to her psychologist.[84]  Plaintiffs allege that Jane Doe was physically and verbally abused by John Poe between the fall of 2018 and March 2019 and that she reported the abuse in March 2019.[85]  Plaintiffs allege that Hovis was raped by LSU football player John Loe on January 24, 2020, that she immediately reported it to her Resident Assistant, that she reported that she believed she had been drugged, that she filed a report with LSUPD, and that Baton Rouge Police Department officers were called but refused to take a statement from Hovis.[86]  Finally, Plaintiffs allege that Kitch was verbally abused and sexually harassed by her Ph.D. professor and advisor, John Moe, between the fall of 2009 and 2014, but that Kitch was terrified to disclose his pervasive harassment because no one at LSU seemed to experience repercussions for sexual assault and she was afraid that she would never graduate if she did not maintain a good working relationship with Moe.[87]

Plaintiffs' allegations are deeply disturbing.  Accepting Plaintiffs' allegations set forth in the Second Amended Complaint as true, all of the alleged harassment and abuse occurred between 2009 and February 2020,[88] which is more than a year before Plaintiffs filed this suit on April 26, 2021.[89]  But the Court's inquiry does not

---

[84] *Id.* at ¶¶ 562, 564-579, 584-589, 592, & 594.
[85] *Id.* at ¶¶ 598-626.
[86] *Id.* at ¶¶ 652-671.
[87] *Id.* at ¶¶ 699-724.
[88] R. Doc. 182 at ¶¶ 121-122, 124-130, 147-162, 182-191, 290-306, 328-338, 364-373, 376-377, 381, 456-459, 462-467, 477-479, 562, 564-579, 584-589, 592, 594, 598-626, 652-671, & 699-724.
[89] R. Doc. 1.

end there, as Plaintiffs argue that the Court should toll the statute of limitations based upon *contra non valentum* and the publication of the Husch Blackwell report in March 2021. The Court further finds, for the same reasons set forth in its February 17, 2023 Order and Reasons granting Jennie Stewart's Motion to Dismiss, that the publication of the Husch Blackwell report does not support the application of *contra non valentem* to the facts set forth in this case.[90]

Nonetheless, to the extent that the Plaintiffs' Opposition may be construed as asserting equitable tolling under the fraudulent concealment doctrine based upon Plaintiffs' allegations of intentional concealment by "Defendants," including Ausberry, in the Second Amended Complaint,[91] the Court finds that the publication of the Husch Blackwell report supports the application of the fraudulent concealment doctrine as regarding certain plaintiffs' claims. While Plaintiffs never mention the phrase "fraudulent concealment" in their Opposition brief,[92] Plaintiffs' allegations in the Second Amended Complaint, viewed in a light most favorable to Plaintiffs, plausibly allege that Ausberry engaged in "affirmative acts of concealment"[93] with respect to Jade Lewis. Specifically, Plaintiffs allege that, "LSU and its employees, including Defendants Ausberry and Segar, had concealed disclosures of sexual misconduct that should have been reported to LSU's Title IX Office."[94] The only

---

[90] R. Doc. 317 at pp. 15-18.
[91] *See*, R. Doc. 210 at pp. 19, 20, 21, 23, & 25. *See also*, R. Doc. 182 at ¶¶ 81, 83(f), 287(c), 360(d), 450(a) & (b), 554(g), 649(c), 1056, 1084, & 1117.
[92] *See, generally*, R. Doc. 210.
[93] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528-29 (5th Cir. 1988) (citing authority). *See, Rx.com v. Medco Health Solutions, Inc.*, 322 Fed.Appx. 394, 397 (5th Cir. 2009) (citing *Allan*, 851 F.2d at 1531)).
[94] R. Doc. 182 at ¶ 83(f)

specific allegation of concealment by Ausberry, however, pertains to plaintiff Jade Lewis.  Plaintiffs allege that, "In a text message to Defendant Ausberry dated April 14, 2018, John Coe admitted to punching Plaintiff Lewis in the stomach," that Ausberry "was aware of John Coe's prior pattern of violent abuse practice of his romantic partners because Plaintiff Richardson had told him about John Coe's abuse," and that, "To Plaintiff Lewis's knowledge, Defendant Ausberry did not report this incident to the police, the Title IX Office, or any other entity."[95]

Plaintiffs further allege that until the release of the Husch Blackwell report in March 2021, Lewis could not have known that, "LSU, including specifically Defendants Segar, Julia Sell, Mike Sell, and Ausberry, had actual knowledge of other survivors that had reported abuse by John Coe, meaning LSU had specific knowledge of a heightened risk of assault by John Coe," and that, "John Coe admitted his sexual misconduct to Defendant Ausberry, who was aware of John Coe's prior pattern of violent abuse of his romantic partners, and that Defendant Ausberry concealed this information."[96]  The Court finds that through these allegations Plaintiffs have invoked the fraudulent concealment doctrine and have plausibly alleged that Ausberry engaged in affirmative acts of concealment[97] with respect to Jade Lewis. The Court also finds that Plaintiffs have plausibly alleged that Jade Lewis could not have discovered her cause of action against Ausberry in the exercise of due diligence

---

[95] *Id.* at ¶¶ 479-481.

[96] R. Doc. 182 at ¶ 554(a) & (g).

[97] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528-29 (5th Cir. 1988) (citing authority).  *See, Rx.com v. Medco Health Solutions, Inc.*, 322 Fed.Appx. 394, 397 (5th Cir. 2009) (citing *Allan*, 851 F.2d at 1531)).

until the publication of the Husch Blackwell report in March 2021. The Court therefore finds that Jade Lewis' § 1983 claims against Ausberry did not accrue, and the prescriptive period on such claims did not begin to run, until March 2021, and that her claims against Ausberry are not time-barred.

The Court reaches a different conclusion with respect to the remaining plaintiffs. A review of the Second Amended Complaint reveals no allegations of fraudulent concealment by Ausberry with respect to Owens, Doe, Johnson, Brennan, Andries, Richardson, Robertson, Hovis, or Kitch.[98] As such, the Court finds that the § 1983 claims asserted by these plaintiffs against Ausberry are prescribed and must be dismissed. In reaching this conclusion, the Court recognizes that Plaintiffs have alleged that when Richardson attempted to tell Ausberry about her abuse from John Coe, Ausberry "immediately stopped Richardson and told her she had to report the abuse to Defendant Segar."[99] Plaintiffs, however, do not allege that Ausberry concealed any information regarding Richardson or John Coe, or that Ausberry advised Richardson not to report her abuse. Plaintiffs merely allege that Ausberry directed Richardson to report the alleged abuse to someone else – Segar – the Senior Associate Athletics Director and Senior Woman Administrator for LSU. As such, the statute of limitations is equitably tolled only as to the § 1983 claims asserted by Jade Lewis against Ausberry.

---

[98] *See, generally*, R. Doc. 182 at ¶¶ 121-451 & 556-741.
[99] R. Doc. 182 at ¶¶ 213-214.

### B. Qualified Immunity

Ausberry further asserts that Plaintiffs' § 1983 claims should be dismissed for failure to state a claim and because he is entitled to qualified immunity.[100]  Regarding the qualified immunity defense, Ausberry asserts that Plaintiffs have failed to establish that they engaged in constitutionally protected speech, that Ausberry's actions were motivated by the intent to suppress protected speech, or that Ausberry's alleged failure to properly report their alleged Title IX complaints violated their First or Fourteenth Amendment rights.[101]  Plaintiffs argue that Ausberry is not entitled to qualified immunity because he acted unreasonably by failing to appropriately investigate and report sexual misconduct allegations and by promulgating insufficient Title IX training.[102]  Plaintiffs argue that Ausberry should have known that refusing to hear a victim's report would have a chilling effect on her speech, that treating victims of student-athletes differently than other victims would violate their equal protection and substantive due process rights, and that refusing to follow published procedures would violate victims' procedural due process rights.[103]  In response, Ausberry maintains that Plaintiffs' claims are time-barred and that he is entitled to qualified immunity.[104]  Ausberry further asserts that the cases cited by Plaintiffs to support their First Amendment claim are not on point, and that

---

[100] R. Doc. 200-2 at pp. 10-12.
[101] R. Doc. 200-1 at p. 11.  While Ausberry references Plaintiffs' "purported 1st and 4th Amendment claims of retaliation, equal protection and due process," (R. Doc. 200-1 at p. 11), this appears to be a grammatical error, as Plaintiffs only assert violations of their First and Fourteenth Amendment rights in the Second Amended Complaint.  *See*, R. Doc. 182 at ¶¶ 1002-1118.
[102] R. Doc. 210 at p. 8.
[103] R. Doc. 210 at pp. 8-9.
[104] R. Doc. 224.

Plaintiffs' equal protection and due process claims should be dismissed because as the Associate Athletic Director, he was not in charge of handling any Title IX complaints submitted to LSU.[105]

While the Court has determined that the statute of limitations is equitably tolled only as to the claims asserted against Ausberry by Jade Lewis, the Court will not limit its qualified immunity analysis to only those claims. Instead, the Court will address the § 1983 claims asserted by all of the plaintiffs in determining whether Ausberry is entitled to qualified immunity.

### 1. *Count V – Plaintiffs' § 1983 First Amendment Retaliation Claim*

Ausberry asserts that Plaintiffs have failed to establish that they engaged in constitutionally protected speech, that Ausberry's actions were motivated by an intent to suppress their protected speech, and/or that Ausberry's alleged failure to properly report their Title IX complaints violated their First Amendment rights.[106] Ausberry argues that there is no clearly established case law that would have put any reasonable state official on notice that failing to report a Title IX complaint would be a violation of their respective rights under the First Amendment.[107]

Plaintiffs assert that their First Amendment claim should not be dismissed because Owens, Richardson, Lewis, Johnson, Andries, and Doe have established that they experienced First Amendment retaliation and that Ausberry was either personally involved in the retaliation or that his actions were causally connected to

---

[105] *Id.* at pp. 3-4.
[106] R. Doc. 200-1 at p. 11.
[107] *Id.* at pp. 11-12.

the retaliation.[108]  Plaintiffs claim that their disclosures of sexual misconduct are constitutionally protected forms of speech under the First Amendment of which a reasonable public official would have known.[109]  Plaintiffs contend that across the country, including within the Fifth Circuit, it is clearly established that students may exercise their First Amendment rights on any topic unless doing so would "materially and substantially disrupt" school operations.[110]  Plaintiffs claim that it "has also been established for decades that school officials may not retaliate against students based on their protected speech,[111] and that, "it is clearly established law that students and student-employees are free to report claims of sexual assault without fear of retaliation."[112]  Plaintiffs further assert that Owens, Richardson, Lewis, and Johnson have alleged that they were deprived of their constitutional right by Ausberry's reactions to disclosures of sexual misconduct, which "chilled Plaintiffs from reporting sexual misconduct or voicing concerns about LSU's handling of student sexual misconduct and Title IX complaints." [113]   Plaintiffs assert that Ausberry was

---

[108] R. Doc. 210 at p. 10.

[109] *Id.*

[110] *Id.* (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Healy v. James*, 408 U.S. 169, 189, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972)).

[111] R. Doc. 210 at p. 10 (citing *Papish v. Bd. of Curators of Univ of Mo.*, 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973)).

[112] R. Doc. 210 at p. 10 (*citing* 34 C.F.R. § 106.71(a) ("[n]o recipient or other person may intimidate, threaten, coerce, or discriminate against any individual . . . because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under [Title IX]")).  The Court notes that Plaintiffs cited three additional cases in support of their position, but failed to provide a full citation to each case.  Because this sentence appears to be copied from the Second Amended Complaint, the Court believes that Plaintiffs intended to cite *Landesberg-Boyle v. State of Louisiana*, Civ. A. No. 03-3582, 2004 WL 2035003 (E.D. La. Sept. 10, 2004) (Africk, J.); *Wilson v. UT Health Center*, 973 F.2d 1263, 1268-69 (5th Cir. 1992); *Doe v. Alvey*, Civ. A. No. 1:20-cv-410, 2021 WL 1519628 (S.D. Ohio Feb. 2, 2021) (Litkovitz, C. Mag.).

[113] R. Doc. 210 at p. 11.

personally involved in the deprivation of Richardson's rights when he directed her to stop talking about her experiences of sexual misconduct and did not report them to the Title IX Coordinator.[114]  Plaintiffs claim that although Ausberry lacked direct personal involvement in the deprivation of disclosures of sexual misconduct by Owens, Lewis, and Johnson, Ausberry's wrongful actions and inactions were causally connected to their constitutional deprivations due to the systemic, coordinated nature of the failures within the Title IX program at LSU.[115]

Plaintiffs further assert that Owens, Brennan, Lewis, and Johnson all experienced First Amendment retaliation when disclosing sexual misconduct to officials in LSU's athletics department.[116]  Plaintiffs claim that Julia Sell, a LSU athletics employee and Ausberry's subordinate, told Owens' father that she did not believe that Owens was raped and failed to take any action to report the assault or help Owens.[117]  According to Plaintiffs, Julia Sell also told Johnson to stop worrying so much about other people when Johnson disclosed that Jade Lewis was being abused, that she did nothing to help Lewis, and that she then told other players on the tennis team to stay away from Lewis.[118]  Plaintiffs assert that Segar, another LSU athletics employee and Ausberry's subordinate, told Lewis that retaliation is to be expected following a disclosure of domestic violence.[119]  Plaintiffs claim that Keava Soil-Cormier, another LSU athletics employee and Ausberry's subordinate, began

---

[114] *Id*. (*citing* R. Doc. 182 at ¶ 214).
[115] R. Doc. 210 at p. 11.
[116] *Id*.
[117] *Id*. (*citing* R. Doc. 182 at ¶ 342).
[118] R. Doc. 210 at p. 11 (*citing* R. Doc. 182 at ¶¶ 580-584).
[119] R. Doc. 210 at p. 11 (*citing* R. Doc. 182 at ¶¶ 531-532).

spreading office rumors about Richardson's sexual activity after she disclosed John Doe's rape, and then Soil-Cormier told Richardson to apologize to her rapist's significant other.[120]  According to Plaintiffs, soon after this and without explanation, Richardson was terminated from her job in the athletics department.  Plaintiffs assert that Ausberry ignored Richardson's report about Lewis' abuse, told Richardson to stop telling him about the abuse, and that Richardson then experienced retaliation, including losing her job in the athletics department.[121]  Plaintiffs argue that Ausberry's retaliation against individuals reporting instances of sexual misconduct set the tone for his subordinates' actions and created a culture within the LSU athletics program in which retaliation was believed to be the appropriate response to a disclosure of sexual misconduct.[122]  As such, Plaintiffs assert Ausberry's Motion should be denied.

In response, Ausberry asserts that Plaintiffs have failed to show that he had personal knowledge of, and involvement in, the alleged deprivation of their constitutional rights, resting instead on their self-serving and speculative representations of a conspiracy and bare-boned allegations that "plaintiffs' disclosures of sexual misconduct are constitutionally-protected forms of speech."[123] Ausberry asserts that the cases cited by Plaintiffs to support their First Amendment claim are not on point because they involved students who were actively engaged in

---

[120] R. Doc. 210 at p. 11 (*citing* R. Doc. 182 at ¶¶ 191-197).
[121] R. Doc. 210 at p. 12 (*citing* R. Doc. 182 at ¶ 214).
[122] R. Doc. 210 at p. 12.
[123] R. Doc. 224 at p. 3 (internal citations omitted).

public speech.[124]  Ausberry further assert that Plaintiffs have failed to cite any case law indicating that Ausberry's alleged actions were known and intentional violations of Plaintiffs' constitutional rights, especially since Plaintiffs' § 1983 claims are brought under Title IX, and individual employees of a university cannot be exposed to liability under Title IX.[125]

"To state a claim of First Amendment retaliation, plaintiff must show: 1) he was engaged in constitutionally protected activity, 2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and 3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct."[126] Here, Plaintiffs allege in the Second Amended Complaint that, "At all relevant times, Plaintiffs had a clearly established right to freedom of speech pursuant to the First Amendment, of which a reasonable person would have known."[127]  Plaintiffs, however, have failed to identify any legal authority supporting their position that a Title IX complaint of sexual misconduct is constitutionally protected speech to support a First Amendment retaliation claim.  In both the Second Amended Complaint and their Opposition brief, Plaintiffs cite three Supreme Court opinions for the proposition that: (1) it is "clearly established" that "students may exercise their First Amendment rights on any topic unless doing so would 'materially and

---

[124] R. Doc. 224 at p. 3.
[125] *Id*. at p. 4 (citing *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257, 129 S.Ct. 788, 796, 172 L.Ed.2d 582 (2009); *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577 (5th Cir. 2020)).
[126] *Mills v. City of Bogalusa*, 112 F. Supp. 3d 512, 516 (E.D. La. 2015) (citing *Keenan v. Teieda*, 290 F.3d 252, 258 (5th Cir. 2002)).
[127] R. Doc. 182 at ¶ 1011.

substantially disrupt' school operations;"[128] and (2) school officials may not retaliate against students based on their protected speech.[129]   Those three cases, however, are clearly distinguishable from the facts of this case.   First and foremost, none of those cases concerned Title IX reports of sexual misconduct.   One case involved a First Amendment freedom of speech claim brought by staff members of a high school newspaper against the school district and school officials for deleting certain articles prior to publication.[130]   Another case involved First Amendment claims brought by college students alleging that their rights to free association had been violated by their university's failure to recognize a campus organization,[131] while the third case involved First Amendment claims brought by a former college student who was expelled for distributing a campus newspaper that contained forms of alleged "indecent speech."[132]   While jurisprudence, including the cited cases, make clear that students have First Amendment rights, none of the cases clearly establish that the making of a sexual misconduct  complaint constitutes "speech" protected by the First Amendment.

---

[128] R. Doc. 182 at ¶ 1008 & R. Doc. 210 at p. 10 (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Healy v. James*, 408 U.S. 169, 189, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972)).

[129] R. Doc. 182 at ¶ 1009 & R. Doc. 210 at p. 10 (citing *Papish v. Bd. of Curator of University of Missouri*, 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973)).

[130] *Hazelwood*, 484 U.S. at 262-63, 108 S.Ct. at 565-66.   The Court notes that the Supreme Court concluded that, "no violation of First Amendment rights occurred."   484 U.S. at 276, 108 S.Ct. at 572.

[131] *Healy*, 408 U.S. at 170-77, 92 S.Ct. at 2340-44.   The Supreme Court concluded that the decision violated plaintiffs' First Amendment rights if the denial was based on an assumed relationship with the national chapter of the organization, was the result of disagreement with the group's philosophy, or was a consequence of a fear of disruption, for which there was no support in the record.   408 U.S. at 184-194, 92 S.Ct. at 2348-2353.

[132] *Papish*, 410 U.S. at 667-670, 93 S.Ct.1197-99.   In a per curiam opinion, the Supreme Court found that the expulsion was an impermissible regulation on speech protected by the First Amendment.

The Court further finds that a plain reading of the Second Amended Complaint makes clear that Plaintiffs have sued the individual LSU employees in their individual capacities, including Ausberry, under 42 U.S.C. § 1983 based upon underlying violations of Title IX.    Plaintiffs allege that they "engaged in constitutionally protected speech when they disclosed instances of sexual misconduct to the Individual Defendants and other LSU employees and when they publicly criticized LSU's handling of their complaints as violating the requirements of Title IX."[133]  In both the Second Amended Complaint and their Opposition brief, Plaintiffs allege that, "More specifically, it is clearly established law that students and student-employees are free to report claims of sexual assault without fear of retaliation."[134]  Plaintiffs, however, cite 34 C.F.R. § 106.71(a) to support that position, which prohibits retaliation *under Title IX*, again directly tying Plaintiffs' § 1983 First Amendment retaliation claims to their Title IX claims.  That provision provides, in pertinent part, that:

> No recipient or other person may intimidate, threaten, coerce, or discriminate against any individual *for the purpose of interfering with any right or privilege secured by title IX* or this part, or because the individual has made a report or complaint, testified, assisted, or

---

[133] R. Doc. 182 at ¶ 1012.  *See also*, *Id*. at ¶¶ 1020, 1026, 1032, 1038, 1044, & 1050.
[134] R. Doc. 182 at ¶ 1010 (*citing* 34 C.F.R. § 106.71(a); *Landesberg-Boyle v. State of Louisiana*, Civ. A. No. 03-3582, 2004 WL 2035003 (E.D. La. Sept. 10, 2004) (Africk, J.); *Wilson v. UT Health Center*, 973 F.2d 1263, 1268-69 (5th Cir. 1992); *Doe v. Alvey*, Civ. A. No. 1:20-cv-410, 2021 WL 1519628 (S.D. Ohio Feb. 2, 2021)); R. Doc. 210 at p. 10 (citing same authority).

participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part.[135]

In citing this provision, Plaintiffs seem to ignore clear Supreme Court precedent that, "Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include nonpublic institutions, § 1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals, see, *e.g.*, *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999)."[136]  Plaintiffs likewise ignore precedent from the Fifth Circuit recognizing that an individual university employee, such as Ausberry, cannot be held liable under Title IX.[137]  Thus, the Court finds that Plaintiffs' § 1983 claim against Ausberry alleging First Amendment retaliation based upon an underlying Title IX violation appears to be an "end run around Title IX's explicit language limiting liability to funding recipients," which, in this case, would be the LSU Board of Supervisors.[138] Plaintiffs have not provided any legal authority to support bringing a Title IX claim against an employee of a funding recipient/university, nor is this Court aware of any such authority.

---

[135] 34 C.F.R. § 106.71(a) (emphasis added).

[136] *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257, 129 S.Ct. 788, 796, 172 L.Ed.2d 582 (2009).

[137] *Plummer v. Univ. of Houston*, 860 F.3d 767, 776 n.12 (5th Cir. 2017) ("Liability under Title IX does not extend to school officials, teachers and other individuals.  Hence, McConnell and Plummer do not appeal the dismissal of the University administrators.") (internal citation omitted) (citing *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640-643, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

[138] *Doe #1 v. Bd. of Supervisors of Louisiana Statue Univ. and Agric. and Mech. College*, Civ. A. No. 21-564-SDD-SDJ, 2022 WL 16701930, at *24 (M.D. La. Nov. 3, 2022) (quoting *Doe v. Napa Valley Unified School District,* Civ. A. No. 17-cv-03753-SK, 2018 WL 4859978, at *4 (N.D. Cal. Apr. 24, 2018) (Kim, M.J..)).  *See, Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592, 608 (E.D. Tex. 2016) (finding that the plaintiff could not state a claim under § 1983 based on an underlying violation of Title IX because Title IX does not allow suit against individuals).

While Plaintiffs also cite three district court cases to support their position that student claims of sexual assault are subject to First Amendment protection, including one from this Court, Plaintiffs' reliance on those cases is misplaced.[139]  Like the three Supreme Court cases cited by Plaintiffs, the district court cases are distinguishable because they do not involve Title IX claims of sexual misconduct.  Instead, two of the cases, including the one from this Court, involve a First Amendment retaliation claim brought by a terminated university employee against her university-employer, alleging she was terminated for reporting sexual harassment, which is analyzed under a different framework and requires consideration of whether the speech involves "a matter of public concern."[140]  In the third case, which is from outside this Circuit, a student-athlete brought a § 1983 claim against her coach alleging violations of the First and Fourteenth Amendment and asserting that her Title IX complaint regarding retaliatory actions of her coach was constitutionally protected speech.[141]  Plaintiffs fail to mention, however, that the district court in that case held that the plaintiff's Title IX complaint of mistreatment and retaliation by her coach was not protected speech under the First Amendment because Title IX "prohibits discrimination on the basis of sex" and "plaintiff's complaint is devoid of *any* allegations of discrimination based on her sex or gender."[142]  Thus, Plaintiffs have failed to cite any legal authority for the proposition that a Title IX complaint is

---

[139] R. Doc. 182 at ¶ 1010 (*citing Landesberg-Boyle v. State of Louisiana*, Civ. A. No. 03-3582, 2004 WL 2035003 (E.D. La. Sept. 10, 2004); *Wilson v. UT Health Center*, 973 F.2d 1263, 1268-69 (5th Cir. 1992); *Doe v. Alvey*, Civ. A. No. 1:20-cv-410, 2021 WL 1519628 (S.D. Ohio Feb. 2, 2021)); R. Doc. 210 at p. 10 (citing same authority).

[140] *Landesberg-Boyle*, Civ. A. No. 03-3582, 2004 WL 2035003 at *5; *Wilson*, 973 F.2d at 1268-70.

[141] *Alvey*, Civ. A. No. 1:20-cv-410, 2021 WL 1519628 at *1-2.

[142] *Id*. at *3 & 5-6 (emphasis in original).

protected speech under the First Amendment.    Even assuming, *arguendo*, that Plaintiffs could establish that a Title IX complaint is protected speech, Plaintiffs have failed to show that such First Amendment rights were "clearly established" at the time of the challenged conduct, as required to overcome qualified immunity.[143] Accordingly, Ausberry is entitled to qualified immunity from Plaintiffs' § 1983 First Amendment retaliation claim asserted in Count V of the Second Amended Complaint.

## 2. *Count VI – Plaintiffs' § 1983 Denial of Equal Protection Claim*

Although not a model of clarity, Ausberry seems to assert that he is entitled to qualified immunity on Plaintiffs' § 1983 Equal Protection claim because, "There are no allegations in the Complaints that any actions taken against these plaintiffs were based upon their gender."[144]  Ausberry also asserts that Plaintiffs have failed to establish that his alleged failure to properly report their alleged Title IX complaints violated their Fourteenth Amendment rights, since there is no clearly established case law that would have put any reasonable state official on notice that failing to report a Title IX complaint would be a violation of their rights under the Fourteenth Amendment.[145]

Plaintiffs argue that it is clearly established that failing to report or investigate allegations of sexual assault violates the Equal Protection Clause of the Fourteenth Amendment.[146]  Plaintiffs cite *Fitzgerald v. Barnstable School Committee*, a recent

---

[143] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citation omitted).
[144] R. Doc. 200-1 at p. 12.
[145] *Id*. at pp. 11-12.
[146] R. Doc. 210 at p. 12.

Supreme Court case in which the Court acknowledged that § 1983 claims based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools, including in the case of school officials' inadequate responses to allegations of peer-on-peer sexual harassment.[147]  Plaintiffs assert that they have each alleged that they had a clearly established right to be free from discrimination on the basis of sex pursuant to the Equal Protection Clause of the Fourteenth Amendment, and that they have each alleged that Ausberry was either personally involved in that discrimination, or that her wrongful actions were causally connected to their constitutional deprivations.[148]  Specifically, Plaintiffs allege that, "Ausberry created a hostile environment on LSU's campus, a form of sex discrimination in itself, and purposefully concealed reports of sexual misconduct from the Title IX Coordinator."[149]  As such, Plaintiffs assert that Ausberry's Motion should be denied.

In response, Ausberry seems to assert that Plaintiffs' equal protection claims "cannot lie against Mr. Ausberry who, in his undisputed role as Associate Athletic Director, was not in charge of the handling of any Title IX complaints submitted to LSU, by a student athlete or otherwise."[150]  Ausberry maintains that, with the exception of Richardson and Lewis, no plaintiff has made allegations regarding his alleged actions or wrongdoings.[151]

---

[147] *Id*. at p. 13 (citing *Fitzgerald*, 555 U.S. 246, 250, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009)).
[148] R. Doc. 210 at p. 13.
[149] *Id*.
[150] R. Doc. 224 at p. 4.
[151] *Id*.

The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction the equal protection of the laws, which "is essentially a direction that all persons similarly situated should be treated alike."[152] "To state a claim under the Equal Protection Clause, a plaintiff must demonstrate that he has been treated differently due to his membership in a protected class and that the unequal treatment stemmed from discriminatory intent."[153] "It is well established that a showing of discriminatory intent or purpose is required to establish a valid equal protection claim."[154] "To establish discriminatory intent, a plaintiff must show 'that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.'"[155] Pertinent to the instant case, the Fifth Circuit has held that, "Allegations [of discriminatory intent] that are merely conclusory, without reference to specific facts, will not suffice."[156]

In Count VI of the Second Amended Complaint, Plaintiffs allege that the individual defendants "discriminated against Plaintiffs on the basis of sex by subjecting them to a hostile environment and failing to appropriately respond to and investigate reports of sexual misconduct and other violations detailed previously in

---

[152] *Club Retro, LLC v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (quoting *Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993)) (internal quotation marks omitted).

[153] *Mills v. City of Bogalusa*, 112 F. Supp. 3d 512, 516 (E.D. La. 2015) (citing *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss*, 543 F.3d 221, 228 (5th Cir. 2008)).

[154] *Muslow v. Bd. of Supervisors of Louisiana State Univ. and Agric. and Mechan. College*, Civ. A. No. 19-11793, 2020 WL 1864876, at *22 (E.D. La. Apr. 14, 2020) (Ashe, J.) (quoting *Doe v. Silsbee Indep. Sch. Dist.*, 402 Fed.Appx. 852, 855 (5th Cir. 2010)).

[155] *Fennell*, 804 F.3d at 412 (quoting *Priester*, 354 F.3d at 424).

[156] *Fennell*, 804 F.3d at 412 (quoting *Priester*, 354 F.3d at 420).

this Complaint." [157]   Plaintiffs also assert that Owens, Richardson, Robertson, Brennan, Lewis, Johnson, Doe, and Kitch were denied the opportunity to take advantage of interim measures that could have assisted them in fully accessing their education after they had been abused and that, "These are indisputable violations of the Equal Protection clause, as Plaintiffs were denied the school's protective services as female victims of sexual assault, an acknowledged disfavored minority." [158] Plaintiffs further allege that, "It is clearly established that failing to report or investigate allegations of sexual assault violates the Equal Protection clause." [159] Plaintiffs then cite the same Supreme Court case cited in their Opposition brief, *Fitzgerald*, for the proposition that, "The actions of Defendants violated clearly established Constitutional law; thus, [the individual defendants] are not entitled to qualified immunity." [160]

For the same reasons set forth in the Court's February 17, 2023 Order and Reasons granting Jennie Stewart's Motion to Dismiss, [161] the Court finds that Plaintiffs have failed to state an equal protection claim against Ausberry.  While Plaintiffs have alleged that, as women, they belong to a protected class, there are no allegations in the Second Amended Complaint that Plaintiffs were treated differently from male students who reported sexual misconduct under the Title IX program at

---

[157] R. Doc. 182 at ¶ 1066.
[158] R. Doc. 182 at ¶¶ 1071 -1075.
[159] *Id*. at ¶ 1078.
[160] *Id*. at ¶¶ 1080-1082 (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 250, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009) and *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)).
[161] R. Doc. 317 at pp. 35-36.

LSU.[162]  Plaintiffs' Second Amended Complaint is silent regarding how, or whether, sexual misconduct allegations by any other group were handled differently.  Nor are there any allegations that Ausberry's actions or inactions were motivated by a discriminatory intent based on gender.[163]  Thus, even accepting all well-pleaded facts in the Second Amended Complaint as true and viewing them in the light most favorable to the Plaintiffs, as the Court is bound to do,[164] the Court finds that Plaintiffs have failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment against Ausberry.  As such, Plaintiffs' claims must be dismissed.

### 3.  *Count VII – Plaintiffs' § 1983 Substantive and Procedural Due Process Claims*

#### a.  Procedural Due Process

While not entirely clear, Ausberry seems to assert that Plaintiffs have failed to state a procedural due process claim because they have not established that Ausberry's alleged failure to properly report their alleged Title IX complaints violated their Fourteenth Amendment rights.[165]  Ausberry asserts that this supports the application of the qualified immunity defense, as there is no clearly established law that would have put any reasonable state official on notice that failing to report a

---

[162] To the extent that Plaintiffs allege in their Opposition brief that Ausberry "should have known . . . that treating victims of student-athletes differently than other victims would violate their equal protection . . .rights" (R. Doc. 210 at p. 9; *See also*, R. Doc. 182 at ¶¶ 43-44), Plaintiffs fail to allege or even address whether victims of student athletes are a protected class for purposes of the Equal Protection Clause.  The Court has found no legal authority to suggest that they are.

[163] *See*, R. Doc. 182 at ¶¶ 1059-1085.

[164] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[165] R. Doc. 200-1 at p. 11.

Title IX complaint would be a violation of Plaintiffs' rights under the Fourteenth Amendment.[166]

Plaintiffs argue that they have clearly established rights to liberty and property under the Fourteenth Amendment, including "a liberty and property right in accessing their full educational opportunities and benefits, as well as in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law."[167]  Plaintiffs assert that in *Perry v. Sinderman*, the Supreme Court "clearly established the obvious principle that if public universities have mandatory disciplinary procedures and plaintiffs are eligible for the protections of those procedures, failing to follow the published procedures constitutes an unconstitutional deprivation of plaintiffs' property without due process."[168]  Plaintiffs argue that under the Due Process Clause, deprivation of their liberty and property interests arising out of the Code of Student Conduct, LSU's Title IX Policy, and federal law and guidance cannot occur without notice and a meaningful opportunity to be heard.[169]

Plaintiffs further claim that they have stablished that they each had a property right in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law and that, unlike in *Perry*,

---

[166] *Id*. at pp. 11-12.  While Ausberry references Plaintiffs' "purported 1st and 4th Amendment claims of retaliation, equal protection and due process," (R. Doc. 200-1 at p. 11), this appears to be a grammatical error, as Plaintiffs only assert violations of their First and Fourteenth Amendment rights in the Second Amended Complaint.  *See*, R. Doc. 182 at ¶¶ 1002-1118.

[167] R. Doc. 210 at p. 14.

[168] R. Doc. 210 at p. 14 (citing *Perry*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)).

[169] R. Doc. 210 at p. 14.

Ausberry's enforcement of Title IX procedures was never optional.[170]  Plaintiffs argue that following procedures has always been mandatory after a student makes a report of sexual misconduct, and that, "Ausberry should have known that Plaintiffs were entitled to LSU and its employees following LSU's own published procedures."[171] Plaintiffs claim that Ausberry was personally involved in the deprivation of Lewis' due process rights when he "failed to file reports with LSU's Title IX Coordinator following Richardson's disclosure of John Coe's rape of Plaintiff Lewis and John Coe's admission of sexual misconduct."[172]  While Ausberry "lacked personal involvement in the deprivation of other Plaintiffs' procedural due process rights," Plaintiffs assert that Ausberry's wrongful actions were causally connected to their constitutional deprivations. [173]  Plaintiffs contend that they have alleged a constitutional deprivation through pleading that, "Defendant's failure to comply with the administrative requirements of Title IX and its own policies deprived Plaintiffs of their substantive and procedural due process rights to be heard prior to depriving them of their liberty and property interests."[174]  Plaintiffs claim that "Defendant" was personally involved in, and his actions were causally connected to, this deprivation as "Defendant" was personally involved in, and his actions were causally connected to, this deprivation because "Defendant" decided not to report or investigate

---

[170] *Id.* at p. 16.
[171] *Id.*
[172] *Id.* (*citing* R. Doc. 182 at ¶ 214; R. Doc. 22-1 at p. 75).
[173] R. Doc. 210 at p. 16.
[174] R. Doc. 210 at p. 17.

Plaintiffs' reports of sexual misconduct and to deny Plaintiffs support services.[175]  As such, Plaintiffs assert that Ausberry's Motion should be denied.

In response, Ausberry asserts that Plaintiffs' procedural due process claims "cannot lie against Mr. Ausberry who, in his undisputed role as Associate Athletic Director, was not in charge of the handling of any Title IX complaints submitted to LSU, by a student athlete or otherwise."[176]  Ausberry maintains that, with the exception of Richardson and Lewis, no plaintiff has made allegations regarding his purported actions or alleged wrongdoings.[177]

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."[178] "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."[179] The Supreme Court has adopted a two-step analysis to determine whether an individual's procedural due process rights have been violated, asking first whether there exists a liberty or property interest that has been interfered with by the State,

---

[175] *Id*.

[176] R. Doc. 224 at p. 4.

[177] *Id*.

[178] U.S. Const. amend. XIV, § 1.

[179] *Duhon v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll*, Civ. A. No. 20-2022, 2021 WL 5562156, at *3 (E.D. La. Aug. 23, 2021) (Milazzo, J.) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)) (internal quotation marks omitted) (emphasis in original).

and then examining whether the procedures attendant upon that deprivation were constitutionally sufficient.[180]

Plaintiffs appear to allege in the Second Amended Complaint that they have liberty and property interests "arising out of the Code of Student Conduct, LSU's Title IX Policy, and federal law and guidance," the deprivation of which cannot occur without notice and a meaningful opportunity to be heard.[181]  Plaintiffs assert that, "Defendants' failure to comply with the administrative requirements of Title IX and its own policies deprived Plaintiffs of their procedural due process right to be heard prior to depriving them of their liberty and property interests."[182]  Plaintiffs allege that the "Defendants, in their individual capacities and under color of law" violated their liberty and property rights by failing to: (1) properly train employees in their Title IX reporting obligations; (2) ensure employee compliance with the Title IX policy and other relevant policies; (3) report complaints of sex-based discrimination; (4) initiate and/or conduct adequate investigations and grievance procedures under Title IX; (5) ensure that victimized students had equal access to educational opportunities and benefits or grievance procedures; (6) ensure victimized students were provided with the interim resources necessary to maintain their educational access after making Title IX reports; (7) remedy hostile environments when they were discovered; and (8) prevent the recurrence of hostile environments.[183]  Plaintiffs assert that

---

[180] *Meza*, 607 F.3d at 399 (quoting *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)) (internal quotation marks omitted).
[181] R. Doc. 182 at ¶ 1090.
[182] *Id*. at ¶ 1091.
[183] *Id*. at ¶ 1094.

throughout this deprivation, "Defendants continuously failed to provide Plaintiffs with adequate notice of the action to be taken with regard to the sex-based discrimination they had suffered, as well as meaningful opportunities to be heard."[184]

Plaintiffs allege that the actions and inactions of the defendants deprived Plaintiffs of their liberty and property interests "in accessing their full educational opportunities and benefits without due process."[185]  Plaintiffs similarly allege that, "When Defendants decided not to report or investigate Plaintiffs' reports of sexual misconduct and to deny Plaintiffs support services, they deprived Plaintiffs of their liberty and property interests and caused Plaintiffs to suffer grievous loss by being denied educational benefits."[186]  Plaintiffs further allege that several of them "received limited or no communications from the Title IX Office after reporting or limited or no interim measures – even if requested – thus denying them any procedural protections prior to the deprivation of their property and liberty interests in their education."[187]  Plaintiffs then assert that they "had a liberty and property right in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law."[188]  Plaintiffs allege that, "Defendants' actions violated clearly established Constitutional law; thus, they are not entitled to qualified immunity."[189]

---

[184] *Id.* at ¶ 1095.
[185] *Id.* at ¶¶ 1099 & 1101.
[186] R. Doc. 182 at ¶ 1105.
[187] *Id.* at ¶ 1106.
[188] *Id.* at ¶ 1112.
[189] *Id.* at ¶ 1115.

While Plaintiffs' Second Amended Complaint distinguishes the actions of individual defendants by name in some parts, other parts, including Plaintiffs' substantive and procedural due process claim, refers only to the actions of the "Defendants."[190]  This type of group pleading, where all of the defendants are lumped together and identical claims are asserted as to each defendant, makes it difficult for the Court to determine which defendants are allegedly responsible for which allegedly unlawful action.  The Fifth Circuit has held that, "while referring to a collective group of defendants is not a fatal pleading deficiency, '[e]ach defendant is [still] entitled to know what he or she did that is asserted to be wrongful.'"[191]  The Fifth Circuit further instructed that, "Because the notice pleading requirement of the Federal Rules of Civil Procedure entitle each defendant to know what he or she did that is asserted to be wrongful, allegations based on a 'theory of collective responsibility' cannot withstand a motion to dismiss."[192]  While the Court finds Plaintiffs' allegations against "Defendants," *in globo*, in Count VII are not sufficient under Fed. R. Civ. P. 8(a)(2), because Rule 12(b)(6) motions to dismiss are viewed with disfavor in this Circuit and are rarely granted,[193] the Court analyzes the specific claims made by Plaintiffs as to Ausberry to determine whether dismissal is warranted.

---

[190] *See*, R. Doc. 182 at ¶¶ 1086-1118.

[191] *Martinez v. City of North Richland Hills,* Case No. 20-10521, 2021 WL 742662, at *4 (5th Cir. 2021) (quoting *Heartland Consumer Products LLC v. DineEquity, Inc.*, Civ. A. No. 1:17-CV-01035-SEB-TAB, 2018 WL 465784, at *4 (S.D. Ind. Jan. 18, 2018)).

[192] *Martinez*, 2021 WL 742662, at *4 (quoting *Bank of Am., N.A. v. Knight*, 725 F.33d 815, 818 (7th Cir. 2013)).

[193] *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

Although Plaintiffs allege a variety of nebulous liberty and property interests that the "Defendants," allegedly including Ausberry, purportedly violated, Plaintiffs have failed to demonstrate how their allegations amount to conduct violating a clearly established constitutional right.   Regarding a protected property interest, "the hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"[194]   "A property interest is created when a person has secured an interest in a specific benefit to which the individual has 'a legitimate claim of entitlement.'"[195]   "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.   He must have more than a unilateral expectation of it."[196]  As explained by the Fifth Circuit, "property interests are created, and their dimensions defined, 'by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"[197]

It is clear to the Court that Plaintiffs' purported property interest in "the investigation of reports of sexual misconduct" under LSU's Title IX program is an attempt by Plaintiffs to assert a Title IX claim against an individual under the guise of a Fourteenth Amendment § 1983 claim.  This is evident from Plaintiffs' laundry-

---

[194] *Findeisen v. N.E. Indep. School Dist.*, 749 F.2d 234, 237 (5th Cir. 1984) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982)) (internal quotation marks omitted).

[195] *Holden v. Perkins*, 398 F. Supp. 3d 16, 23 (E.D. La. 2019) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

[196] *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

[197] *Smith v. Davis*, 507 Fed.Appx. 359, 362 (5th Cir. 2013) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

list of actions and inaction alleged to have been taken by the individual defendants, including Ausberry, that purportedly "subjected Plaintiffs to violations of their liberty and property interests," all of which concern LSU's Title IX program.[198]  Title IX claims may be brought against an entity that received federal financial assistance; Title IX does not authorize suits against school officials, teachers, and other individuals.[199]  To the extent Plaintiffs allege procedural and substantive due process claims against Ausberry based upon the deprivation of their purported property interest in "the investigation of reports of sexual misconduct" under LSU's Title IX program, such claims must be dismissed as an attempt to circumvent Title IX's explicit language limiting liability to "institutions and programs that receive federal funds."[200]

Additionally, the Court finds that Plaintiffs have failed to show, and this Court can find no binding precedent to suggest, that there is a recognized property interest in "accessing full educational opportunities and benefits" of a state university or in "the investigation of reports of sexual misconduct" under LSU's Title IX program.  As an initial matter, Plaintiffs offer no explanation regarding the "educational opportunities and benefits" of which they were allegedly deprived.  Plaintiffs offer only conclusory allegations that they were deprived of such purported liberty and

---

[198] R. Doc. 182 at ¶ 1094.

[199] *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257, 129 S.Ct. 788, 796, 172 L.Ed.2d 582 (2009) (citation omitted).

[200] *Id.*; *Doe #1 v. Bd. of Supervisors of Louisiana Statue Univ. and Agric. and Mech. College*, Civ. A. No. 21-564-SDD-SDJ, 2022 WL 16701930, at *24 (M.D. La. Nov. 3, 2022) (quoting *Doe v. Napa Valley Unified School District*, Civ. A. No. 17-cv-03753-SK, 2018 WL 4859978, at *4 (N.D. Cal. Apr. 24, 2018) (Kim, M.J.)).  *See*, *Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592, 608 (E.D. Tex. 2016) (finding that the plaintiff could not state a claim under § 1983 based on an underlying violation of Title IX because Title IX does not allow suit against individuals).

property interests. [201]   Whether or not Plaintiffs may have had a unilateral expectation of such interests, they have failed to show a legitimate claim of entitlement to a recognized property interest.[202]

The Court also finds unavailing Plaintiffs' assertion that Ausberry's failure to comply with the administrative requirements of Title IX interfered with their property interest in their education.   Plaintiffs allege that they were entitled to request and receive Title IX investigations when they reported violations and to obtain support measures, as outlined in LSU's Title IX policy and "relevant federal regulations."[203]   Plaintiffs then allege that, "When Defendants decided not to report or investigate Plaintiffs' reports of sexual misconduct and to deny Plaintiffs support services, they deprived Plaintiffs of their property and liberty interests and caused Plaintiffs to suffer grievous loss by being denied educational benefits."[204]   Again, Plaintiffs fail to identify the "support measures" and "educational benefits" of which they were purportedly deprived.   Plaintiffs, however, seem to suggest that they are included in Plaintiffs' liberty interest in their education.[205]

Although the Fifth Circuit has recognized a state-created liberty interest in higher education under the Texas Constitution,[206] the Fifth Circuit has held that, "Education—particularly post-graduate or professional education—is not a right

---

[201] R. Doc. 182 at ¶¶ 1099, 1101, & 1105.
[202] *See, Holden v. Perkins*, 389 F. Supp. 3d 16, 23 (E.D. La. 2019).
[203] R. Doc. 182 at ¶ 1104.
[204] R. Doc. 182 at ¶ 1105.
[205] R. Doc. 182 at ¶ 1106.
[206] *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017), *as revised* (June 26, 2017) (citing *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929-30 (Tex. 1995); *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961)).

afforded either explicit or implicit protection under the Constitution."[207]  The Fifth Circuit further held that, "There is no state-created right to graduate-level education" in Louisiana.[208]  Plaintiffs have not cited any statutory, regulatory, jurisprudential, or other authority for the proposition that they had a constitutionally protected property or liberty interest in their higher education at LSU.

Moreover, even if Plaintiffs could point to binding precedent establishing a liberty or property interest in their education, it is clear to this Court that any purported interest was not "clearly established" at the time of the alleged deprivations, as required to overcome Ausberry's claim for qualified immunity.[209]  The Fifth Circuit has explicitly recognized that, "Most case law involving due process in the educational setting concerns student dismissals or suspensions from academic institutions."[210]  After reviewing the pertinent case law on this point, this Court reaches the same conclusion.[211]  As explained by our sister court, "The United States

---

[207] *Barnes v. Symeonides*, 44 F.3d 1005 (5th Cir. 1995) (citing authority).

[208] *Barnes*, 44 F.3d 1005.

[209] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011).

[210] *Smith v. Davis*, 507 Fed.Appx. 359, 362 (5th Cir. 2013).

[211] *See*, *Barnes v. Symeonides*, 44 F.3d 1005 (5th Cir. 1995) (former LSU law student brought due process claims against the university and university officials after he was dropped from the student rolls for failing to pay his tuition and fees); *Perez v. Texas A&M Univ. at Corpus Christi*, 589 Fed.Appx. 244 (5th Cir. 2014) (student in state university's nursing program brought § 1983 action against university and its employees, asserting procedural and substantive due process violations arising from her dismissal from the program, after three warnings during clinical rotation caused her to fail a course for the second time); *Holden v. Perkins*, Civ. A. No. 18-13200, 398 F. Supp. 3d 16 (2019) (public university student athlete who had received an athletic scholarship to play volleyball alleged violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses regarding her removal from the team and the decision not to renew her scholarship after student complained about emotionally abusive treatment by coach); *Pham v. Univ. of Louisiana at Monroe*, 194 F. Supp. 3d 534 (W.D. La. 2016) (former university student brought § 1983 claim against university and faculty members alleging the university failed to comply with due process before punishing him on two occasions); *Babinski v. Queen*, Civ. A. No. 20-426-SDD-EWD, 2021 WL 4483061 (M.D. La. Sept. 29, 2021) (Dick, C.J.) (plaintiff brought six constitutional claims under § 1983, including procedural due process claim, and sought damages and injunctive relief mandating his reinstatement in the Ph.D. program and the removal of all impediments to his completion thereof); *Duhon v. Bd. of Supervisors*

Supreme Court has never addressed whether a university student has a protected liberty or property interest in *post-high school education*."[212]   That court further recognized that although there is disagreement among the circuits, the Fifth Circuit has held that a university student has some type of protected interest that must be appropriately safeguarded prior to expulsion.[213]

In *Smith v. Davis*, the Fifth Circuit explained that in cases involving student dismissals or suspensions from academic institutions, "the Supreme Court has held students are afforded limited due-process protections, in the form of an informal give-and-take between the student and the administrative body dismissing him that would, at least, give the student the opportunity to characterize his conduct and put it in what he deems the proper context."[214]   The Fifth Circuit recognized that the Supreme Court "has not held college academic decisions implicate property or liberty interests, entitling a student to constitutional due-process protections.  Accordingly, our court has followed suit."[215]   The Fifth Circuit pointed out that, "to the extent our court has addressed this issue, it has held a student who is not denied access to public education does not have a property or liberty interest implicated."[216]   In the instant

---

of Louisiana State Univ. & Agric. & Mech. Coll.*, Civ. A. No. 20-2022, 2021 WL 5562156 (E.D. La. Aug. 23, 2021) (plaintiff sought damages and injunctive relief arising from his suspension and termination from the cardiology fellowship program at LSU and the subsequent loss of his Louisiana medical license).

[212] *Pham*, 194 F. Supp. 3d at 543.

[213] *Id.* (citing *Dixon v. Ala. State Bd. of Ed.*, 294 F.2d 150, 157 (5th Cir. 1961)) (emphasis in original).

[214] *Smith*, 507 Fed.Appx. at 362 (quoting *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978)) (internal quotation marks omitted).

[215] *Smith*, 507 Fed.Appx. at 362.

[216] *Smith*, 507 Fed.Appx. at 362 (citing *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997) (no property or liberty interest implicated in transfer from one school program to another with stricter discipline because student never denied access to public education, even temporarily, such as through suspension or expulsion)).

case, Plaintiffs have not alleged that they were suspended or expelled from LSU, or otherwise disciplined, as a result of reporting sexual misconduct. Thus, Plaintiffs have failed to show that when Ausberry allegedly failed to file Title IX reports following Richardson's disclosure of John Coe's rape of Lewis and following John Coe's admission of sexual misconduct, the law was clearly established that his actions violated Plaintiffs' procedural due process rights.

The Court recognizes that Plaintiffs rely on *Perry v. Sinderman* for the proposition that, "the Supreme Court clearly established the obvious principle that if public universities have mandatory disciplinary procedures and plaintiffs are eligible for the protections of those procedures, failing to follow the published procedures constitutes an unconstitutional deprivation of plaintiffs' property without due process."[217] Plaintiffs' reliance on *Perry* is both misplaced and somewhat perplexing, as that case involved a procedural due process claim brought by a state junior college professor against the college when his employment contract was not renewed. Further, *Perry* does not stand for the proposition set forth above, as the case did not involve any disciplinary procedures. Instead, the case turned on the college's "de facto tenure program" contained in "an unusual provision" in the college's official Faculty Guide, which provided that, "Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long

---

[217] R. Doc. 210 at p. 14 (citing *Perry*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)).  *See also*, R. Doc. 182 at ¶ 1107; *Id.* at ¶¶ 1107-1116.

as he is happy in his work."[218]  The Supreme Court concluded that, "A teacher, like the respondent, who has held his position for a number of years, might be able to show from the circumstances of this service – and from other relevant facts – that he has a legitimate claim of entitlement to job tenure," and that, "the respondent has alleged the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent 'sufficient cause.'"[219]  The Supreme Court held that the professor must be given an opportunity to prove the legitimacy of his claim of such a property interest in light of the policies and practices of the institution.

Plaintiffs fail to explain how the holding in *Perry* applies in this case, beyond their conclusory allegation set forth above.  Plaintiffs merely assert in the Second Amended Complaint that, "Unlike in *Sinderman*, LSU following Title IX procedures was not optional.  Following procedures was mandatory after a student made a report."[220]  Plaintiffs further assert that, "Defendants knew or should have known that Plaintiffs were entitled to LSU and its employees following LSU's own published procedures," and that, "Defendants' actions violated clearly established Constitutional law; thus, they are not entitled to qualified immunity."[221]  For the reasons set forth above, the Court finds that *Perry* does not support Plaintiffs' contention that they have a protected liberty or property interest in their education

---

[218] *Perry*, 408 U.S. at 599-600, 92 S.Ct. at 2699.

[219] *Id*., 408 U.S. at 602-603, 92 S.Ct. at 2700.

[220] R. Doc. 182 at ¶  1113 (citing *Perry*, 408 U.S. 593, 92 S.Ct. 2694); *See,* R. Doc. 210 at p. 14 (citing *Perry*, 408 U.S. 593, 92 S.Ct. 2694).

[221] R. Doc. 182 at ¶¶ 1114-1115 (citing *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)); *See*, R. Doc. 210 at p. 14.

or in the investigation of reports of sexual misconduct under LSU's Title IX policy. As such, Ausberry is entitled to qualified immunity.

### 2. Substantive Due Process

Lastly, Ausberry seems to assert that Plaintiffs have failed to state a substantive due process claim because they have failed to establish that Ausberry's alleged failure to properly report their Title IX complaints violated their Fourteenth Amendment rights.[222]  Ausberry contends that this further supports the application of the qualified immunity defense, as there is no clearly established law that would have put any reasonable state official on notice that failing to report a Title IX complaint would be a violation of their respective rights under the Fourteenth Amendment.[223]

Plaintiffs claim that they have each established that they "suffered a deprivation of constitutional rights in the form of denial of substantive due process due to the deprivation of their fundamental liberty interest in bodily integrity," and that, "This deprivation directly resulted from the pervasive culture of failing to respond appropriately to complaints of sexual misconduct at LSU, which Ausberry directly participated in fostering."[224]  Plaintiffs then cite *Doe v. Taylor Independent School District*, wherein the Fifth Circuit established a test to determine whether a school official could be held liable for a subordinate employee's sexual abuse of a

---

[222] R. Doc. 200-1 at pp. 11-12.
[223] *Id*. at pp. 11-12.  While Ausberry references Plaintiffs' "purported 1st and 4th Amendment claims of retaliation, equal protection and due process," (R. Doc. 200-1 at p. 11), this appears to be a grammatical error, as Plaintiffs only assert violations of their First and Fourteenth Amendment rights in the Second Amended Complaint.  *See*, R. Doc. 182 at ¶¶ 1002-1118.
[224] R. Doc. 210 at p. 15.

student, and ask this Court "to apply the *Taylor* test to the present situation and replace 'subordinate' with 'student.'"[225]    In doing so, Plaintiffs admit that, "the situation here is not completely analogous, as Plaintiffs have not alleged abuse by an employee," and concede that, "Plaintiffs are not aware of any case law that is directly on point."[226]    Plaintiffs assert that they have alleged sufficient facts to demonstrate that Ausberry learned of inappropriate sexual behavior by student-athletes, demonstrated deliberate indifference to student-victims by failing to take action that was obviously necessary to prevent or stop the abuse, and that such failure caused a constitutional injury to the student-victims.[227]    As such, Plaintiffs argue Ausberry's Motion should be denied.

In response, Ausberry seems to assert that Plaintiffs' claims of substantive due process "cannot lie against Mr. Ausberry who, in his undisputed role as Associate Athletic Director, was not in charge of the handling of any Title IX complaints submitted to LSU, by a student athlete or otherwise."[228]

"Substantive due process bars arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them."[229]    Substantive due process "ensures that, regardless of the fairness of the procedures used, the

---

[225] *Id.* (citing *Taylor*, 15 F.3d 443, 454 (5th Cir. 1994)).
[226] R. Doc. 210 at p. 15.
[227] *Id.*
[228] R. Doc. 224 at p. 4.
[229] *Holden v. Perkins*, 398 F. Supp. 3d 16, 22 (E.D. La. 2019) (citing *Lewis v. Univ. of Tex*, 665 F.3d 625, 630-31 (5th Cir. 2011); *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007)).

government does not use its power for oppressive purposes."[230]  "To state a substantive due process claim, a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate government interest."[231]  The Fifth Circuit has held that, "In reviewing a substantive due process claim, the existence of a protected property interest is a threshold issue we must reach before we consider whether the defendants' actions were arbitrary and capricious."[232]  "If there is no protected property interest, there is no process due."[233]

In the Second Amended Complaint, Plaintiffs allege that, "Defendants' failure to comply with the administrative requirements of Title IX and their own policies deprived Plaintiffs of their substantive due process rights to their liberty interest in bodily integrity and their property interest in their education."[234]  Plaintiffs allege that their "rights to substantive and procedural due process were clearly established at the time of the incidents alleged, and Defendants' conduct was objectively unreasonable in the light of that then clearly established law."[235]  Plaintiffs further allege that until the publication of the Husch Blackwell Report in March 2021,

---

[230] *Duhon v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll*, Civ. A. No. 20-2022, 2021 WL 5562156, at *4 (E.D. La. Aug. 23, 2021) (quoting *Patterson v. Def. POW/MIA Acct. Agency*, 343 F. Supp. 3d 637, 646 (W.D. Tex. 2018)) (internal quotation marks omitted).

[231] *Babinksi v. Queen*, Civ. A. No. 20-426-SDD-EWD, 2021 WL 4483061, at *12 (M.D. La. Sept. 29, 2021) (quoting *Williams v. Texas Tech. Univ. Health Sciences Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993)) (internal quotation marks omitted).

[232] *Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (citing *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)).

[233] *Wigginton*, 964 F.3d at 335 (quoting *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992)) (internal quotation marks omitted).

[234] R. Doc. 182 at ¶ 1092.

[235] R. Doc. 182 at ¶ 1116.

Plaintiffs were unaware, and the defendants concealed from Plaintiffs, that the defendants "intentionally denied Plaintiffs of their substantive and procedural due process rights regarding the events outlined *supra*."[236]  There is no other reference to Plaintiffs' substantive due process rights in the Second Amended Complaint.[237]  The Court has already determined that Plaintiffs have failed to show a protected property interest in their education.  As such, Ausberry is entitled to qualified immunity on Plaintiffs' substantive due process claim that is based upon their purported property interest in their education.

It is unclear to the Court, from either the Second Amended Complaint or the Opposition brief, the liberty interest that Plaintiffs are claiming they were purportedly deprived of by Ausberry.   Plaintiffs merely ask the Court to hold Ausberry liable because he "learned of inappropriate sexual behavior by student-athletes, demonstrated deliberate indifference to student-victims by failing to take action that was obviously necessary to prevent or stop the abuse, and that such failure caused a constitutional injury to the student-victims."[238]  Plaintiffs made the same allegations against Jennie Stewart, and the Court previously determined that such conclusory allegations, in addition to the vague allegations in the Second Amended Complaint, fail to demonstrate that Plaintiffs' purported liberty interest in their bodily integrity was clearly established when the challenged conduct occurred.[239] The Court reaches the same conclusion with respect to Ausberry.

---

[236] *Id*. at ¶ 1117.
[237] *See, generally*, R. Doc. 182 at ¶¶ 1086-1118.
[238] R. Doc. 210 at p. 15.
[239] *See*, R. Doc. 317 at p. 52.

Additionally, and for the same reasons set forth in the Court's February 17, 2023 Order and Reasons granting Jennie Stewart's Motion to Dismiss, the Court declines Plaintiffs' request to apply the test set forth by the Fifth Circuit in *Doe v. Taylor Independent School District* to determine "the personal liability of school officials in physical sexual abuse cases."[240] As the Court previously determined, that case is clearly distinguishable and inapplicable to the facts of this case. The Court finds it significant that Plaintiffs admit in their Opposition brief that, "Plaintiffs are not aware of any case law that is directly on point" with respect to their substantive due process claim.[241] Plaintiffs' admission shows that Plaintiffs cannot demonstrate that Ausberry violated a substantive due process right that was clearly established at the time of the challenged conduct. As such, Ausberry is entitled to qualified immunity on Plaintiffs' substantive due process claims.

### 4. *Leave to Amend is Denied*

In the Motion, Ausberry asserts that, if given another opportunity to amend their complaint, Plaintiffs cannot allege plausible claims against him.[242] Ausberry cites Supreme Court authority for the proposition that, "leave to amend need not be granted by the Court upon repeated failure on the part of the plaintiff to cure any deficiencies, and/or when the futility of same can be recognized by the Court."[243]

---

[240] *Id.* at pp. 52-53. *See,* R. Doc. 210 at p. 15 (citing *Taylor,* 15 F.3d 443, 454 (5th Cir. 1994)).
[241] R. Doc. 210 at p. 15.
[242] R. Doc. 200-1 at p. 13.
[243] *Id.* (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Plaintiffs do not request leave to amend their Second Amended Complaint in their Opposition brief.[244]

The Court agrees with Ausberry and finds that granting leave to amend is not appropriate in this case under Fed. R. Civ. P. 15. This Court will "freely give leave [to amend] when justice so requires," [245] but leave to amend "is by no means automatic."[246] In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[247] "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[248]

Applying those factors here, the Court finds that any amendment would likely be futile in light of the fact that the Court has determined that Ausberry is entitled to qualified immunity as to Plaintiffs' three § 1983 claims because Plaintiffs have failed to show that Ausberry's conduct in failing to report Title IX complaints violated Plaintiffs' clearly established constitutional rights of which a reasonable person would have known at the time of the deprivation.[249] The Court further finds that granting Plaintiffs leave to amend would cause undue delay in this case. More

---

[244] *See, generally*, R. Doc. 210.

[245] Fed. R. Civ. P. 15(a).

[246] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).

[247] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).

[248] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).

[249] *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)).

importantly, however, Plaintiffs have already been afforded two opportunities to amend their allegations, [250] and have repeatedly failed to cure the deficiencies through amendments previously allowed.  Based upon the foregoing and exercising its discretion under Fed. R. Civ. P. 15, Plaintiffs will not be afforded a third opportunity to amend their claims against Ausberry.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Verge Ausberry's Motion to Dismiss Plaintiffs' Second Amended Complaint and Jury Demand[251] is **GRANTED.** All of Plaintiffs' claims asserted against Verge Ausberry in Counts V through VII in the Second Amended Complaint are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, February 17, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[250] *See*, R. Docs. 1, 22, 177, 180, 181, & 182.
[251] R. Doc. 200.