## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                **NO. 21-242-WBV-SDJ**

**LOUISIANA STATE UNIVERSITY, ET AL.**

### ORDER AND REASONS

Before the Court is a Motion to Dismiss Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(B)(6), filed by defendant, Miriam Segar.[1] Plaintiffs oppose the Motion,[2] and Segar has filed a Reply.[3]   After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

## I.    FACTUAL and PROCEDURAL BACKGROUND[4]

This case involves allegations by ten former students of Louisiana State University and Agricultural and Mechanical College ("LSU") that LSU and its Athletic Department funded and implemented a purposefully deficient sexual misconduct and Title IX reporting scheme separate from LSU's official Title IX office to keep sexual assault claims within the Athletic Department.[5]   In their Second Amended Complaint and Jury Demand ("Second Amended Complaint"), Abby Owens,

---

[1] R. Doc. 202.
[2] R. Doc. 212.
[3] R. Doc. 226.
[4] The factual background of this case was extensively detailed in the Court's Order and Reasons granting Jennie Stewart's Motion to Dismiss (R. Doc. 317) and, for the sake of brevity, will not be repeated here.
[5] R. Doc. 1 at ¶ 10; R. Doc. 182 at ¶ 25.

Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch (collectively, "Plaintiffs"), allege that while attending school at LSU's Baton Rouge campus between 2009 and 2021, the defendants, LSU's Board of Supervisors, Jennie Stewart, Verge Ausberry, Miriam Segar, and Johnathan Sanders (collectively, "Defendants") repeatedly engaged in discriminatory, retaliatory, and other unlawful actions in their interactions with Plaintiffs and in response to Plaintiffs' reports of Title IX violations and violations of LSU's Code of Student Conduct, thereby violating their own policies.[6]  Plaintiffs allege that LSU handled Title IX complaints made against student-athletes differently than complaints made against non-athletes.[7] Plaintiffs further allege that, "Title IX complaints against student-athletes are purposefully buried or diverted so as to ensure that those complaints were never properly investigated or addressed and the student-athletes are not negatively impacted or prevented from concentrating on their athletics, all of which benefits LSU financially and causes further harm to Plaintiffs."[8]  Plaintiffs assert that Defendants' actions and inactions in response to their reports of Title IX violations subjected them to additional harassment and created a sexually hostile environment on campus.[9]

Plaintiffs allege that they were victims of sex-based discrimination, including rape, sexual assault, sexual harassment, and/or stalking, that was perpetrated by

---

[6] R. Doc. 182 at ¶ 36.
[7] *Id*. at ¶ 43.
[8] *Id*. at ¶ 44.
[9] *Id*. at ¶ 45.

male LSU students and a male professor between 2009 and 2020, and that one plaintiff was the victim of verbal and emotional abuse by an LSU tennis coach.[10] Although the alleged sexual misconduct occurred more than a year before Plaintiffs filed this lawsuit, Plaintiffs allege that they were unaware of LSU's inadequate Title IX reporting policies until the March 2021 publication of the Husch Blackwell report. According to Plaintiffs, LSU retained the Husch Blackwell law firm in November 2020 to investigate the school's handling of several Title IX-related incidents, as well as LSU's Title IX policies and procedures.[11] Plaintiffs allege that Husch Blackwell publicly released its investigative report and findings on March 5, 2021, concluding that various incidents of athletics-related misconduct had not been appropriately reported to LSU's Title IX Coordinator and voicing concern about a lack of reporting prior to November 2016.[12]

Husch Blackwell also found that LSU's Title IX Office had never been appropriately staffed or provided with the independence and resources to carry out Title IX's mandates, noting that the Title IX Office "has at time not handled those matters reported to it appropriately."[13] Husch Blackwell noted that its concerns about reporting were not limited to athletics, and that it found deficiencies in a variety of different matters.[14] In the Second Amended Complaint, Plaintiffs allege that they could not have known that LSU and its employees, including the individual

---

[10] *See*, *Id*. at ¶¶ 113-741.
[11] *Id*. at ¶ 47.
[12] *Id*. at ¶¶ 51-52.
[13] *Id*. at ¶¶ 53-54.
[14] *Id*. at ¶¶ 52 & 54.

defendants, had concealed disclosures of sexual misconduct that should have been reported to LSU's Title IX Office, that LSU purposely handled complaints of sexual misconduct perpetrated by student athletes or others affiliated with the LSU Athletic Department in a different manner than complaints of sexual misconduct perpetrated by other individuals, and the defendants intentionally instituted a process of responding to disclosures of Title IX violations in a manner designed to deter any future disclosures.[15]

Pertinent to the instant Motion, Plaintiffs assert the following three claims under 42 U.S.C. § 1983 against Miriam Segar, the Senior Associate Athletics Director and Senior Woman Administrator for LSU, in her individual capacity:[16] (1) First Amendment Retaliation; (2) Denial of Equal Protection under the Fourteenth Amendment; and (3) Denial of Substantive and Procedural Due Process under the Fourteenth Amendment.[17]  In her Motion to Dismiss, Segar asserts that she is entitled to summary judgment and dismissal of Plaintiffs' three § 1983 claims because the claims are time-barred and because she is entitled to qualified immunity.[18]

---

[15] *Id.* at ¶ 83.

[16] The Court notes that in listing the defendants in this case in the Second Amended Complaint, Plaintiffs seem to assert that Segar is being sued "in her official and personal capacity." *Id.* at ¶ 20. In the heading of Counts V, VI, and VII, however, which contain the only claims asserted against Segar, Plaintiffs assert that the claims are asserted against the individual defendants, including Segar, "in their individual capacities." *Id.* at pp. 134, 142, & 145.  Plaintiffs further assert, in each count, that, "[A] valid individual capacity claim requires a Section 1983 plaintiff to 'establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation." *Id.* at ¶¶ 1007, 1065, & 1093 (quoting *Louisiana Cleaning Sys. v. Brown*, Civ. A. No. 14-2853, 2015 WL 6869907, at *7 (W.D. La. Nov. 9, 2015) (James, J.)) (internal quotation and quotation marks omitted).  Thus, Plaintiffs seem to assert these claims against Segar in her personal capacity. *See, Brown*, Civ. A. No. 14-2853, 2015 WL 6869907, at *5-7 (addressing the plaintiffs' claims brought against a sheriff in his official and individual capacities).

[17] R. Doc. 182 at ¶¶ 754-1118.

[18] R. Doc. 202.

Plaintiffs argue that their claims are not time-barred based upon the doctrine of *contra non valentum* because they were unaware of the causal connection between their injuries and the actions of the Defendants until the publication of the Husch Blackwell report in March 2021.[19]  As such, Plaintiffs argue that their claims did not begin to accrue until a month before they filed their Complaint on April 26, 2021.[20] Plaintiffs further assert that they have alleged plausible § 1983 claims against Segar under the First and Fourteenth Amendments and that Segar is not entitled to qualified immunity.  In response, Segar maintains that Plaintiffs' claims are time-barred and, alternatively, that she is entitled to qualified immunity.[21]

## II.    LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b) Motion to Dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[22]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[23]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24]  "The plausibility standard is not akin to a

---

[19] R. Doc. 212.
[20] *See,* R. Doc. 1.
[21] R. Doc. 226.
[22] Fed. R. Civ. P. 12(b)(6).
[23] *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
[24] *Gentilello v. Rege,* 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft,* 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).

probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[25]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[26]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. [27] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[28]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[29]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[30]

### B. Liability under 42 U.S.C. § 1983 and Qualified Immunity

Title 42 U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law.  Specifically, § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights,

---

[25] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).
[26] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).
[27] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).
[28] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).
[29] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[30] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

> privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured.[31]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[32] To establish § 1983 liability, the plaintiff must establish the following three elements: (1) deprivation of a right secured by the United States Constitution or federal law; (2) that occurred under color of state law; and (3) was caused by a state actor.[33]

Qualified immunity is a defense to § 1983 claims that "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[34] The Supreme Court has held that courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law, without resolving the often more difficult question of whether the purported right exists at all.[35] According to the Supreme Court, "This approach comports with our usual reluctance to decide constitutional questions unnecessarily."[36] The Supreme Court has further held that, "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing

---

[31] 42 U.S.C. § 1983.

[32] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[33] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

[34] *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)).

[35] *Reichle*, 566 U.S. at 664, 132 S.Ct. at 2093 (citing *Pearson v. Callahan*, 555 U.S. 223, 227, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

[36] *Reichle*, 566 U.S. at 664, 132 S.Ct. at 2093 (citing authority).

violates that right.'"[37]   "Where no controlling authority specifically prohibits a defendant's conduct[,] . . . the law cannot be said to be clearly established . . . . [G]eneralizations and abstract propositions are not capable of clearly establishing the law."[38]   While there need not be a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate."[39]   "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[40]   The Supreme Court has repeatedly advised courts "not to define clearly established law at a high level of generality," explaining that, "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'"[41]

Once a government official asserts the defense of qualified immunity, the burden shifts to the plaintiff to negate the defense.[42]   To overcome a claim of qualified immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct.[43]   The Supreme Court has held that, "lower courts have

---

[37] *Mullenix v. Luna*, 577 U.S. 7, 11-12, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012)).

[38] *Smith v. Davis*, 507 Fed.Appx. 359, 361 (5th Cir. 2013) (quoting *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc)) (internal quotation marks omitted).

[39] *Mullenix*, 577 U.S. at 11, 136 S.Ct. at 308 (quoting *Ashcroft*, 563 U.S. at 741, 131 S.Ct. 2074) (internal quotation marks omitted).

[40] *Mullenix,* 577 U.S. at 12, 136 S.Ct. at 308 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).  *See, Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) (same).

[41] *Mullenix*, 577 U.S. at 12, 136 S.Ct. at 308 (quoting *Ashcroft*, 563 U.S. at 742, 131 S.Ct. 2074) (internal quotation marks omitted) (emphasis added in *Mullenix*).

[42] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

[43] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citation omitted).

discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."[44]

## III. ANALYSIS

### A. Prescription/Tolling of Plaintiffs' § 1983 Claims

Segar moves for the dismissal of Plaintiffs' § 1983 claims on the grounds that the claims are time-barred by the one-year prescriptive period set forth in La. Civ. Code art. 3492.[45]  The Fifth Circuit has held that, "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[46]  As Segar correctly points out,[47] there is no federal statute of limitations for actions brought under 42 U.S.C. § 1983.[48]  When that is the case, "the settled practice is to borrow an 'appropriate' statute of limitations from state law."[49] In *Wilson v. Garcia*, the Supreme Court held that a § 1983 claim is best characterized as a personal injury action and, as such, is governed by the forum state's statute of limitations for personal injury actions.[50]  In *Owens v. Okure*, the Supreme Court

---

[44] *Ashcroft*, 563 U.S. at 735, 131 S.Ct. at 2080 (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

[45] R. Doc. 202-1 at pp. 6-13.

[46] *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)).

[47] R. Doc. 202-1 at p. 6.

[48] *See*, *King-White*, 803 F.3d at 758.

[49] *Id*. (citations omitted).  The Fifth Circuit noted, however, that, "Of course, this rule only applies to statutes enacted prior to passage of 28 U.S.C. § 1658, which now governs in such circumstances.  *See* 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004))."  *See*, *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018) ("Courts considering claims brought under § 1983 must borrow the relevant state's statute of limitations for personal injury actions.") (citing authority).

[50] *Wilson v. Garcia*, 471 U.S. 261, 276-80, 105 S.Ct. 1938, 1947-49, 85 L.Ed.2d 254 (1985), superseded by statute as stated in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).

clarified that when a state has multiple statutes of limitations for personal injury actions, a § 1983 claim should be governed by the general or residual statute for personal injury actions.[51] Accordingly, this Court will apply Louisiana's one-year prescriptive period for personal injury actions[52] to Plaintiffs' § 1983 claims, rather than the three-year period applicable to sexual assaults.[53]

The Fifth Circuit has held that, "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,' and while we borrow the limitations period from state law, 'the particular accrual date of a federal cause of action is a matter of federal law.'"[54] Thus, federal law governs when a § 1983 claim accrues.[55] A claim "accrues" under federal law when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.[56] According to the Fifth Circuit, a plaintiff's knowledge encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions.[57] "However, the plaintiff need not know that a legal cause of action exists; she need only know facts that would support a claim."[58]

---

[51] 488 U.S. 235, 249-50, 109 S.Ct. 573, 581-82, 102 L.Ed.2d 594 (1989).

[52] La. Civ. Code art. 3492.

[53] La. Civ. Code art. 3496.2.

[54] *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)).

[55] *Redburn*, 898 F.3d at 496 (*citing Piotrowski v. City of Houston*, 51 F.3d 512, 516 n.10 (5th Cir. 1995)); *Smith v. Regional Transit Authority*, 827 F.3d 412, 421 (5th Cir. 2016) (citing *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998)).

[56] *Redburn*, 898 F.3d at 496 (citing *Piotrowski*, 51 F.3d at 516). *See*, *Smith*, 827 F.3d at 421 ("This court has stated that '[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'") (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993)).

[57] *King-White*, 803 F.3d at 762 (quoting *Piotrowski*, 237 F.3d at 576).

[58] *Sherman v. Irwin*, Civ. A. No. 17-4061, 2018, WL 3632360, at *3 (E.D. La. July 31, 2018) (Barbier, J.) (citing *King-White*, 803 F.3d at 762).

Since the Louisiana statute of limitations applies to Plaintiffs' § 1983 claims, Louisiana equitable tolling principles apply.[59] Louisiana law allows for the suspension of prescription under the doctrine of *contra non valentem*.[60] The Louisiana Supreme Court has recognized four factual situations in which the doctrine of *contra non valentem* applies to suspend the prescriptive period, the most pertinent to this case being when "the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant."[61] "However, the doctrine of *contra non valentem* only applies in 'exceptional circumstances.'"[62] Sometimes referred to as the "discovery rule,"[63] the Louisiana Supreme Court has further clarified that, "[t]his principle will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned."[64] Similarly, a plaintiff may invoke the fraudulent concealment doctrine by proving two elements: (1) that the defendants concealed the conduct complained of; and (2) the plaintiff failed, despite the exercise of due diligence on her part, to discover the facts that form the basis of her claim.[65]

---

[59] *Green v. Doe*, 260 Fed.Appx. 717, 720 (5th Cir. 2007) (citing *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998)).

[60] *Broussard v. Brown*, 599 Fed.Appx. 188 (5th Cir. 2015) (citing *Corsey v. Louisiana*, 375 So.2d 1319, 1321-22 (La. 1979)).

[61] *Renfroe v. State ex rel. Dept. of Transp. and Development*, 2001-1646 (La. 2/26/02), 809 So.2d 947, 953 (citing *Plaquemines Parish Comm. Council v. Delta Dev. Co.*, 502 So.2d 1034 (La. 1987)).

[62] *Renfroe*, 809 So.2d at 953 (*quoting* La. Civ. Code art. 3467, Official Revision Commend (d); *State ex rel. Div. of Admin. v. McInnis Brothers Construction, Inc.*, 97-0742 (La. 10/21/97), 701 So.2d 937, 940). *See, Ellis v. Evonik Corp.*, Civ. A. No. 21-1089, 2022 WL 1719196, at *3 (E.D. La. May 27, 2022) (Vance, J.) (same).

[63] *Ellis*, Civ. A. No. 21-1089, 2022 WL 1719196, at *3.

[64] *Renfroe*, 809 So.2d at 953-54 (quoting *Corsey v. State of Louisiana, Through the Department of Corrections*, 375 So.2d 1319, 1322 (La. 1979)).

[65] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988) (citation omitted).

To satisfy the first element, the defendant must have engaged in affirmative acts of concealment.[66] The Fifth Circuit has held that silence is not enough, and that the defendant "must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry."[67]

Here, Segar argues that Plaintiffs' § 1983 claims are prescribed because Plaintiffs allege injuries that they knew or should have known they had suffered prior to one year before Plaintiffs filed their Complaint on April 26, 2021.[68] Relying upon a 2017 case from the Western District of Texas, *Doe I v. Baylor University,* Plaintiffs assert that their § 1983 claims were timely-filed because Plaintiffs were unaware that their injuries were causally connected to actions and inactions by LSU until the release of the Husch Blackwell report in March 2021.[69] For example, Plaintiffs claim that Owens, Richardson, Robertson, Brennan, Lewis, Doe, and Kitch could not have known until the release of the Husch Blackwell report that their reports of sexual assault were not investigated by LSU, Stewart, or Sanders, and were not properly reported to Ausberry, Segar, or any of the leaders of the athletic department or any other unit at LSU.[70] While not a model of clarity, Plaintiffs seem to invoke both the doctrine of *contra non valentem* and the fraudulent concealment doctrine in asserting that, "LSU actively concealed their complaints," that the actions and inactions of the Defendants, including Segar, "were actively concealed by the Defendant from

---

[66] *Allan*, 851 F.2d at 1528-29 (citing authority).  *See*, *Rx.com v. Medco Health Solutions, Inc.*, 322 Fed.Appx. 394, 397 (5th Cir. 2009) (citing *Allan*, 851 F.2d at 1531)).

[67] *Allan*, 851 F.2d at 1529 (quoting *Crummer Co. v. Du Pont*, 255 F.2d 425, 432 (5th Cir.1958)) (internal quotation marks omitted).

[68] R. Doc. 202-1 at p. 7.

[69] R. Doc. 212 at pp. 8-10 (citing *Doe 1*, 240 F. Supp. 3d 646, 662-63 (W.D. Tex. 2017)).

[70] R. Doc. 212 at p. 10 (*citing* R. Doc. 182 at ¶ 1070).

Plaintiffs," that "LSU and its employees went to great lengths to ensure students did not understand their rights or LSU's obligations under Title IX," and that LSU and its employees "purposefully buried or ignored Plaintiffs' reports of assault and abuse." [71]    Plaintiffs claim that the Husch Blackwell report details "numerous significant actions and inactions by Segar, including her taking on the role of *de facto* Title IX Coordinator for the athletics department, her failure to appropriately respond to and report allegations of Title IX violations, and her ridicule and minimizing of reports that she received from some Plaintiffs."[72]

In response, Segar maintains that Plaintiffs' claims are all time-barred and that the case cited by Plaintiffs, *Doe 1 v. Baylor University*, is distinguishable from the facts of this case because it did not involve § 1983 claims or claims against university employees.[73]   Segar also maintains that Plaintiffs' claims accrued on the date that they allegedly reported sexual misconduct to LSU personnel, all of which occurred more than a year before they filed this suit.[74]

For the reasons set forth in the Court's February 17, 2023 Order and Reasons granting Jennie Stewart's Rule 12(b)(6) Motion to Dismiss,[75] the Court finds that, on their face, all of Plaintiffs' § 1983 claims asserted against Segar accrued outside the applicable one-year statute of limitations.   Plaintiffs allege that Richardson was raped by an LSU football player during her freshman year at LSU, which began in

---

[71] R. Doc. 212 at pp. 10, 13-14, 15, & 16.
[72] *Id*. at p. 15.
[73] R. Doc. 226 at pp. 1-3 (citing *Doe 1*, 240 F. Supp. 3d 646, 664-665 (W.D. Tex. 2017)).
[74] R. Doc. 226 at pp. 3-6 (*citing* R. Doc. 182 at ¶¶ 215-222, 254, 260, 297, 299, 486, 513, 537, 530-534, 671, 672, 673, 673, & 679; R. Doc. 22-1 at pp. 59, 77, 80, 82, 84-86, 87, 93-94, 95, 98, & 99).
[75] R. Doc. 317 at pp. 13-18.

the fall of 2014, that she was raped by a football recruit in the fall of 2015, that she was verbally and physically abused by LSU football player John Coe between the summer of 2016 and 2017 and had reported the abuse by October 2016, and that LSU football player John Doe attempted to rape her in the fall of 2016 and she reported it to her direct supervisor the following day.[76]  Plaintiffs allege that Robertson was raped by John Doe on January 22, 2016, that it was reported to LSU a few days later, that John Doe continued to verbally harass Robertson in late spring/early summer of 2016, and that he threw a shake on her car during finals week in May 2016.[77] Plaintiffs allege that John Doe took a nude photograph of Brennan without her consent on July 9, 2016, and that Brennan met with LSU officials about it on July 22, 2016.[78]  Plaintiffs allege that John Doe also raped Owens on June 28, 2016, that she first disclosed the rape after checking into a nearby rehabilitation facility on or about April 4, 2017, and that the facility reported the sexual assault to LSU's Athletic Department approximately a week after the initial disclosure and informed Owens and her parents of the report.[79]

Plaintiffs allege that Andries was sexually assaulted by John Roe on a fraternity bus trip in October 2016, that John Roe attempted to sexually assault her again in July 2017, and that she reported the first assault to her LSU therapist in the fall of 2017.[80]  Plaintiffs allege that Lewis was physically assaulted by John Coe

---

[76] R. Doc. 182 at ¶¶ 121-122, 124-130, 147-162, 182-191.
[77] *Id*. at ¶¶ 243-248 & 253-255, & 262-268.
[78] *Id*. at ¶¶ 290-306.
[79] *Id*. at ¶¶ 328-338.
[80] *Id*. at ¶¶ 364-373, 376-377, 381.

at least six times between January 2017 and May 2018, and that she first disclosed the abuse to the tennis team athletic trainer in May 2017.[81]  Plaintiffs allege that Johnson was verbally and emotionally abused and harassed by the LSU tennis coach, Julia Sell, between the fall of 2017 and her graduation in the spring of 2019, and that Johnson was afraid that she would lose her scholarship if she reported Sell to her psychologist.[82]  Plaintiffs allege that Jane Doe was physically and verbally abused by John Poe between the fall of 2018 and March 2019 and that she reported the abuse in March 2019.[83]  Plaintiffs allege that Hovis was raped by LSU football player John Loe on January 24, 2020, that she immediately reported it to her Resident Assistant, that she reported that she believed she had been drugged, that she filed a report with LSUPD, and that Baton Rouge Police Department officers were called but refused to take a statement from Hovis.[84]  Finally, Plaintiffs allege that Kitch was verbally abused and sexually harassed by her Ph.D. professor and advisor, John Moe, between the fall of 2009 and 2014, but that Kitch was terrified to disclose his pervasive harassment because no one at LSU seemed to experience repercussions for sexual assault and she was afraid that she would never graduate if she did not maintain a good working relationship with Moe.[85]

Plaintiffs' allegations are deeply disturbing.  Accepting Plaintiffs' allegations set forth in the Second Amended Complaint as true, all of the alleged harassment

---

[81] *Id*. at ¶¶ 456-459, 462-467, & 477-479.
[82] *Id*. at ¶¶ 562, 564-579, 584-589, 592, & 594.
[83] *Id*. at ¶¶ 598-626.
[84] *Id*. at ¶¶ 652-671.
[85] *Id*. at ¶¶ 699-724.

and abuse occurred between 2009 and February 2020,[86] which is more than a year before Plaintiffs filed this suit on April 26, 2021.[87]  But the Court's inquiry does not end there, as Plaintiffs argue that the Court should toll the statute of limitations based upon *contra non valentum* and the publication of the Husch Blackwell report in March 2021.  The Court finds, for the same reasons set forth in its February 17, 2023 Order and Reasons granting Jennie Stewart's Motion to Dismiss, that the publication of the Husch Blackwell report does not support the application of *contra non valentem* to the facts set forth in this case.[88]

Nonetheless, to the extent that the Plaintiffs' Opposition brief may be construed as asserting equitable tolling under the fraudulent concealment doctrine based upon Plaintiffs' allegations of intentional concealment by "Defendants," including Segar, in the Second Amended Complaint,[89] the Court finds that the publication of the Husch Blackwell report supports the application of the fraudulent concealment doctrine to Jade Lewis.  While Plaintiffs never mention the phrase "fraudulent concealment" in their Opposition brief,[90] Plaintiffs' allegations in the Second Amended Complaint, viewed in the light most favorable to Plaintiffs,

---

[86] *Id.* at ¶¶ 121-122, 124-130, 147-162, 182-191, 290-306, 328-338, 364-373, 376-377, 381, 456-459, 462-467, 477-479, 562, 564-579, 584-589, 592, 594, 598-626, 652-671, & 699-724.

[87] R. Doc. 1.

[88] R. Doc. 317 at pp. 15-18.

[89] *See*, R. Doc. 212 at pp. 10-14, 15, & 16-17 (*citing* R. Doc. 182 at ¶¶ 1070, 915, 1056, 1084, & 1117). *See also*, R. Doc. 182 at ¶¶ 81, 83(e) & (f), 1056, 1084, & 1117.

[90] *See, generally*, R. Doc. 212.

plausibly allege that Segar engaged in "affirmative acts of concealment"[91] with respect to Lewis.

Plaintiffs allege that, "LSU and its employees, including Defendants Ausberry and Segar, had concealed disclosures of sexual misconduct that should have been reported to LSU's Title IX Office."[92]  Regarding Lewis, Plaintiffs allege that despite receiving numerous reports of John Coe's "repeated brutal attacks" on Lewis and Richardson, LSU did not initiate any formal disciplinary action against Coe other than banning him from the weight room in the summer of 2018.[93]  Plaintiffs assert that when Coe was banned from the weight room, his mother began reaching out to Lewis to "fix it" and that some of the football coaches made comments to her indicating that they blamed Lewis for Coe being banned from the weight room.[94]  Plaintiffs allege that when Lewis brought these statements to Segar's attention and asked why she was facing retaliation for Coe's punishment, Segar told Lewis, "That's what happens when the cops come to your apartment."[95]  Plaintiffs allege that Segar did nothing to address the retaliation, that Segar failed to report the retaliation to the Title IX office, and that no investigation was initiated into the retaliation.[96]  While Plaintiffs allege that Segar reported John Coe's abuse of Lewis to the Title IX office and/or the LSU Police Department on three separate occasions,[97] Plaintiffs

---

[91] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528-29 (5th Cir. 1988) (citing authority).  *See, Rx.com v. Medco Health Solutions, Inc.*, 322 Fed.Appx. 394, 397 (5th Cir. 2009) (citing *Allan*, 851 F.2d at 1531)).
[92] R. Doc. 182 at ¶ 83(f).
[93] *Id.* at ¶ 527.
[94] *Id.* at ¶¶ 529-530.
[95] *Id.* at ¶¶ 531-532.
[96] *Id.* at ¶¶ 533-534.
[97] *Id.* at ¶¶ 486, 513, & 537.

claim that Segar failed to report Lewis' allegations of retaliation to the Title IX office.[98]  While the intentional concealment allegations are thin, accepting all well-pleaded facts as true and construing them in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have alleged sufficient facts at this stage from which the Court can reasonably infer that Segar engaged in affirmative acts of concealment and that Lewis could not have discovered her cause of action against Segar in the exercise of due diligence until the publication of the Husch Blackwell report in March 2021.  The Court therefore finds that Lewis' § 1983 claims against Segar did not accrue, and the prescriptive period on such claims did not begin to run, until March 2021, and that her claims against Segar are not time-barred.

The Court reaches a different conclusion with respect to the remaining plaintiffs.  Regarding Robertson, the Court recognizes that Plaintiffs allege that Segar learned about John Doe's rape of Robertson from the LSU diving coach on January 26, 2016.[99]  The only other allegation made against Segar, however, is that John doe's name was not included in any of the records of her rape, even though Segar and other LSU officials "knew John Doe's identity."[100]  The Court concludes that Plaintiffs have not alleged any affirmative acts of concealment by Segar, and instead seem to suggest some sort of concealment by silence.  The Fifth Circuit has made clear, however, that silence is not enough, and that a defendant "must be guilty of

---

[98] *Id.* at ¶¶ 527-534 & 538.

[99] *Id.* at ¶¶ 243-254.

[100] *Id.* at ¶ 277.

some trick or contrivance tending to exclude suspicion and prevent inquiry."[101] Plaintiffs have not alleged any such actions by Segar with respect to Robertson and, as such, her §1983 claims against Segar are not equitably tolled by the fraudulent concealment doctrine.

The Second Amended Complaint likewise contains no allegations of affirmative acts of concealment by Segar with respect to Richardson, Brennan, Owens, Doe, Johnson, Andries, Hovis, or Kitch.[102]  As such, the Court finds that the § 1983 claims asserted by these plaintiffs against Segar are prescribed and must be dismissed.  The Court recognizes that Plaintiffs have alleged that Segar called Richardson after Richardson reported that she was being abused by John Coe, and that Segar "never responded" when Richardson returned the call.[103]  Plaintiffs, however, do not allege that Segar concealed any information regarding Richardson or John Coe, or that Segar advised Richardson not to report her abuse.  Similarly, while Plaintiffs allege that Brennan reported her rape by John Doe to Segar,[104] there are no allegations that Segar concealed that information from the Title IX Office.  As previously mentioned, the Fifth Circuit has held that silence is not enough to show fraudulent concealment, and that the defendant "must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry."[105]  The Second Amended Complaint does not allege

---

[101] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1529 (5th Cir. 1988) (quoting *Crummer Co. v. Du Pont*, 255 F.2d 425, 432 (5th Cir.1958)) (internal quotation marks omitted).
[102] *See, generally*, R. Doc. 182 at ¶¶ 121-241, 289-451 & 556-741.
[103] *Id*. at ¶¶ 213-215.
[104] *Id*. at ¶ 774.  *See also*, *Id*. at ¶¶ 299-312.
[105] *Allan*, 851 F.2d at 1529 (quoting *Crummer Co. v. Du Pont*, 255 F.2d 425, 432 (5th Cir.1958)) (internal quotation marks omitted).

any such actions by Segar with respect to Brennan.  As such, the statute of limitations is equitably tolled only as to the § 1983 claims asserted against Segar by Jade Lewis.

### B. Qualified Immunity

Segar further asserts that Plaintiffs' 42 U.S.C. § 1983 claims should be dismissed on the basis of qualified immunity.[106]  Plaintiffs argue that Segar is not entitled to qualified immunity because she acted unreasonably by failing to appropriately investigate and report sexual misconduct allegations and by acting improperly as a *de facto* Title IX Coordinator for the athletic department.[107]  Plaintiffs argue that, as a Responsible Employee under LSU's Title IX policy, Segar should have known that ignoring reports of sexual misconduct would have a chilling effect on victims' speech, that treating victims of student-athletes differently than other victims would violate their equal protection and substantive due process rights, and that refusing to follow published procedures would violate victims' procedural due process rights.[108]

While the Court has determined that the statute of limitations is equitably tolled only as to the claims asserted against Segar by Jade Lewis, the Court will not limit its qualified immunity analysis to only those claims.  Instead, the Court will address the § 1983 claims asserted by all of the plaintiffs in determining whether Segar is entitled to qualified immunity.  The Court will address each of Plaintiff's § 1983 claims in turn.

---

[106] R. Doc. 22-1 at pp. 13-21.
[107] R. Doc. 212 at p. 18.
[108] *Id.*

### 1. Count V – Plaintiffs' § 1983 First Amendment Retaliation Claim

Segar asserts that to establish a § 1983 claim of retaliation for exercise of free speech, a plaintiff must prove that: (1) she was engaged in constitutionally protected activity; (2) the defendant's alleged actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the exercise of her protected right was a substantial or motivating factor for the defendant's actions.[109]  Segar contends that Richardson is the only plaintiff who claims that Segar engaged in retaliatory conduct in response to her alleged report of abuse allegations, alleging that she attempted to contact Segar to report her allegations, but that Segar did not respond when Richardson returned Segar's phone call.[110]  Segar points out that Plaintiffs allege Richardson reported her abuse allegations to another LSU employee soon after the missed calls to and from Segar, so Segar's alleged failure to respond to Richardson's phone call did not chill Richardson's speech and was not motivated by Richardson's alleged exercise of protected speech.[111]  Segar further notes that there is no allegation that she suppressed Richardson's speech or retaliated against her for her alleged speech. Segar contends that, according to Plaintiffs' allegations, she was not even aware of Richardson's speech because she never actually spoke to Richardson.[112]

---

[109] R. Doc. 202-1 at p. 14 (citing *Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015), disapproved of by *Hersh v. Tatum*, 526 S.W. 3d 462 (Tex. 2017)).
[110] R. Doc. 202-1 at p. 15 (*citing* R. Doc. 182 at ¶¶ 215 & 1028(f)).
[111] R. Doc. 202-1 at p. 15 (*citing* R. Doc. 182 at ¶ 219).
[112] R. Doc. 202-1 at p. 15.

Segar further asserts that, even if the Court finds that any of the Plaintiffs have stated a § 1983 claim for First Amendment retaliation, she is entitled to qualified immunity because "she did not violate clearly established law because Segar's alleged actions have not been held to be unlawful."[113]  Segar claims that at all times, she acted in accordance with the policies and procedures in place at LSU and that, as a Responsible Employee under LSU's Title IX policy, she was required to promptly report to the Title IX Coordinator incidents of sexual misconduct and sexual violence of which she had actual notice.[114]  Segar asserts that Richardson failed to allege that she received actual notice of any incident of sexual violence or other misconduct relating to Richardson due to the missed phone calls between the two of them.[115]  Segar avers that she is unaware of any reported cases in any controlling jurisdiction that establish that failure to respond to a phone call amounts to a violation of an individual's First Amendment rights to free speech and/or retaliation for engaging in protected speech.[116]  As such, Segar argues that she did not violate clearly established law and, therefore, she is entitled to qualified immunity.  Segar does not address the First Amendment claim asserted by any other plaintiff.

Plaintiffs argue that they have plausibly pled a cause of action against Segar for First Amendment Retaliation because they "have adequately pleaded facts supporting that Segar's actions under the color of state law caused Plaintiffs to suffer

---

[113] *Id.*
[114] *Id.* at p. 16 (*citing* R. Doc. 182 at ¶¶ 33-34).
[115] R. Doc. 202-1 at p. 16 (*citing* R. Doc. 182 at ¶¶ 214-215).
[116] R. Doc. 202-1 at pp. 16-17.

violations of constitutional and federal rights."[117]  Plaintiffs assert that Owens, Richardson, Lewis, Johnson, Andries, and Doe have each established that they suffered a deprivation of constitutional rights via First Amendment retaliation and that Segar was either personally involved in that deprivation or her wrongful actions were causally connected to that deprivation.[118]  Plaintiffs claim that their disclosures of sexual misconduct are constitutionally protected forms of speech under the First Amendment of which a reasonable public official would have known.[119]  Plaintiffs contend that it is clearly established within the Fifth Circuit that students may exercise their First Amendment rights on any topic unless doing so would "materially and substantially disrupt" school operations,[120] and that, "it is clearly established law that students and student-employees are free to report claims of sexual assault without fear of retaliation."[121]

Plaintiffs assert that Owens, Richardson, Lewis, and Johnson have also alleged that they were deprived of their constitutional right by Segar's reactions to disclosures of sexual misconduct that "chilled Plaintiffs from reporting sexual

---

[117] R. Doc. 212 at p. 18.

[118] *Id*. at p. 19.

[119] *Id*.

[120] *Id*. (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Healy v. James*, 408 U.S. 169, 189, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972)).

[121] R. Doc. 212 at p. 20 (*citing* 34 C.F.R. § 106.71(a) ("[n]o recipient or other person may intimidate, threaten, coerce, or discriminate against any individual . . . because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under [Title IX]")).  The Court notes that Plaintiffs cited three additional cases in support of their position, but failed to provide a full citation to each case.  Because this sentence appears to be copied from the Second Amended Complaint, the Court believes that Plaintiffs intended to cite *Landesberg-Boyle v. State of Louisiana*, Civ. A. No. 03-3582, 2004 WL 2035003 (E.D. La. Sept. 10, 2004) (Africk, J.); *Wilson v. UT Health Center*, 973 F.2d 1263, 1268-69 (5th Cir. 1992); *Doe v. Alvey*, Civ. A. No. 1:20-cv-410, 2021 WL 1519628 (S.D. Ohio Feb. 2, 2021) (Litkovitz, C. Mag.).

misconduct or voicing concerns about LSU's handling of student sexual misconduct and Title IX complaints."[122]  Plaintiffs claim that Segar was personally involved in the deprivation of Robertson's and Lewis' rights when she ignored Robertson's report of Lewis' abuse and told Lewis that retaliation is to be expected following a disclosure of domestic violence.[123]  Although Segar lacked direct involvement in the deprivation of disclosures of sexual misconduct by Owens and Johnson, Plaintiffs assert that Segar's "wrongful actions and inactions were causally connected to their constitutional deprivations due to the systemic, coordinated nature of the failures within the Title IX program at LSU."[124]  Plaintiffs further assert that Owens, Brennan, Lewis, and Johnson "all experienced First Amendment retaliation when disclosing sexual misconduct to officials in LSU's athletics department," including Julia Sell and Keava Soil-Cormier.[125]  Plaintiffs argue that, "Segar's retaliation against individuals reporting instances of sexual misconduct set the tone for her subordinates' actions and created a culture within the LSU athletics program in which retaliation was believed to be the appropriate response to a disclosure of sexual misconduct."[126]

In response, Segar argues that Plaintiffs' Opposition brief shows the clear lack of factual support for their myriad of conclusory and baseless allegations against Segar, and further asserts that she properly reported sexual assault allegations.[127]

---

[122] R. Doc. 212 at p. 20.
[123] *Id*. (*citing* R. Doc. 182 at ¶¶ 215, 531-532).
[124] R. Doc. 212 at p. 20.
[125] R. Doc. 212 at pp. 20-21 (*citing* R. Doc. 182 at ¶¶ 342, 580-584, & 191-197).
[126] R. Doc. 212 at p. 21.
[127] R. Doc. 226 at p. 8.

Segar maintains that she is entitled to qualified immunity because Plaintiffs have failed to cite any jurisprudence where a university employee who received a report of sexual abuse or misconduct was found to have violated a student's constitutional rights to free speech.[128]  Segar contends that Plaintiffs cannot overcome the qualified immunity defense because they failed to allege any facts to show that Segar violated their rights.[129]  Segar asserts that the policy at LSU in the Athletic Department during the relevant time required sexual misconduct allegations to be reported to Segar, who would report them to the Title IX Office.  Segar claims that she reported any allegations of sexual assault to the Title IX Office or other LSU authorities when the allegations "were directly reported to Segar."[130]  Segar asserts that it was not her role or duty to investigate any allegations and that she did not conduct investigations.  Instead, Segar claims that her only role was to report allegations, which she did for each plaintiff who reported complaints to her.[131]  While Plaintiffs allege that Segar violated the First Amendment rights of Owens, Richardson, Lewis, Johnson, Andries, and Jane Doe, Segar claims that the only plaintiff in this group who reported sexual misconduct to her was Lewis.  Segar contends that it is "well-established" that Segar reported all known incidents of Lewis's abuse."[132]

"To state a claim of First Amendment retaliation, plaintiff must show: 1) he was engaged in constitutionally protected activity, 2) the defendants' actions caused

---

[128] *Id*. at p. 9.
[129] *Id*.
[130] *Id*.
[131] *Id*.
[132] *Id*. at p. 10.

him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and 3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct."[133] Here, Plaintiffs allege in the Second Amended Complaint that, "At all relevant times, Plaintiffs had a clearly established right to freedom of speech pursuant to the First Amendment, of which a reasonable person would have known."[134]   Plaintiffs, however, have failed to identify any legal authority supporting their position that a Title IX complaint of sexual misconduct is constitutionally protected speech to support a First Amendment retaliation claim.   In both the Second Amended Complaint and their Opposition brief, Plaintiffs cite three Supreme Court opinions for the proposition that: (1) it is "clearly established" that "students may exercise their First Amendment rights on any topic unless doing so would 'materially and substantially disrupt' school operations;"[135] and (2) school officials may not retaliate against students based on their protected speech.[136]  Those three cases, however, are clearly distinguishable from the facts of this case.  First and foremost, none of those cases concerned Title IX reports of sexual misconduct.  One case involved a First Amendment freedom of speech claim brought by staff members of a high school newspaper against the school district and school officials for deleting certain articles

---

[133] *Mills v. City of Bogalusa*, 112 F. Supp. 3d 512, 516 (E.D. La. 2015) (citing *Keenan v. Teieda*, 290 F.3d 252, 258 (5th Cir. 2002)).

[134] R. Doc. 182 at ¶ 1011.

[135] R. Doc. 182 at ¶ 1008 & R. Doc. 212 at p. 19 (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Healy v. James*, 408 U.S. 169, 189, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972)).

[136] R. Doc. 182 at ¶ 1009 & R. Doc. 212 at pp. 19-20 (citing *Papish v. Bd. of Curator of University of Missouri*, 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973)).

prior to publication.[137]  Another case involved First Amendment claims brought by college students alleging that their rights to free association had been violated by their university's failure to recognize a campus organization,[138] while the third case involved First Amendment claims brought by a former college student who was expelled for distributing a campus newspaper that contained forms of alleged "indecent speech."[139]  While jurisprudence, including the cited cases, make clear that students have First Amendment rights, none of the cases clearly establish that the making of a sexual misconduct  complaint constitutes "speech" protected by the First Amendment.

The Court further finds that a plain reading of the Second Amended Complaint makes clear that Plaintiffs have sued the individual LSU officials in their individual capacities, including Segar, under 42 U.S.C. § 1983 based upon underlying violations of Title IX.  Plaintiffs allege that they "engaged in constitutionally protected speech when they disclosed instances of sexual misconduct to the Individual Defendants and other LSU employees and when they publicly criticized LSU's handling of their complaints as violating the requirements of Title IX."[140]  In both the Second Amended Complaint and their Opposition brief, Plaintiffs allege that, "More specifically, it is

---

[137] *Hazelwood*, 484 U.S. at 262-63, 108 S.Ct. at 565-66.  The Court notes that the Supreme Court concluded that, "no violation of First Amendment rights occurred."  484 U.S. at 276, 108 S.Ct. at 572.
[138] *Healy*, 408 U.S. at 170-77, 92 S.Ct. at 2340-44.  The Supreme Court concluded that the decision violated plaintiffs' First Amendment rights if the denial was based on an assumed relationship with the national chapter of the organization, was the result of disagreement with the group's philosophy, or was a consequence of a fear of disruption, for which there was no support in the record.  408 U.S. at 184-194, 92 S.Ct. at 2348-2353.
[139] *Papish*, 410 U.S. at 667-670, 93 S.Ct.1197-99.  In a per curiam opinion, the Supreme Court found that the expulsion was an impermissible regulation on speech protected by the First Amendment.
[140] R. Doc. 182 at ¶ 1012.  *See also*, *Id.* at ¶¶ 1020, 1026, 1032, 1038, 1044, & 1050.

clearly established law that students and student-employees are free to report claims of sexual assault without fear of retaliation."[141]  Plaintiffs, however, cite 34 C.F.R. § 106.71(a) to support that position, which prohibits retaliation *under Title IX*.  That provision provides, in pertinent part, that:

> No recipient or other person may intimidate, threaten, coerce, or discriminate against any individual *for the purpose of interfering with any right or privilege secured by title IX* or this part, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part.[142]

In citing this provision, Plaintiffs seem to ignore clear Supreme Court precedent that, "Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include nonpublic institutions, § 1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals, see, *e.g.*, *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999)."[143]  Plaintiffs likewise ignore precedent from the Fifth Circuit recognizing that an individual university employee, like Segar, cannot be held liable under Title IX.[144]  Thus, the Court finds that Plaintiffs' § 1983 claim against Segar alleging First Amendment retaliation based upon an underlying Title IX violation appears to be an

---

[141] R. Doc. 182 at ¶ 1010 (*citing* 34 C.F.R. § 106.71(a); *Landesberg-Boyle v. State of Louisiana*, Civ. A. No. 03-3582, 2004 WL 2035003 (E.D. La. Sept. 10, 2004) (Africk, J.); *Wilson v. UT Health Center*, 973 F.2d 1263, 1268-69 (5th Cir. 1992); *Doe v. Alvey*, Civ. A. No. 1:20-cv-410, 2021 WL 1519628 (S.D. Ohio Feb. 2, 2021)); R. Doc. 212 at p. 20 (citing same authority).

[142] 34 C.F.R. § 106.71(a) (emphasis added).

[143] *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257, 129 S.Ct. 788, 796, 172 L.Ed.2d 582 (2009).

[144] *Plummer v. Univ. of Houston*, 860 F.3d 767, 776 n.12 (5th Cir. 2017) ("Liability under Title IX does not extend to school officials, teachers and other individuals.  Hence, McConnell and Plummer do not appeal the dismissal of the University administrators.") (internal citation omitted) (citing *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640-643, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

"end run around Title IX's explicit language limiting liability to funding recipients,"[145] which, in this case, would be the LSU Board of Supervisors. Plaintiffs have not provided any legal authority to support bringing a Title IX claim against an employee of a funding recipient/university, nor is this Court aware of any such authority.

While Plaintiffs also cite three district court cases in the Second Amended Complaint to support their position that student claims of sexual assault are subject to First Amendment protection, including one from this Court, Plaintiffs' reliance on those cases is misplaced.[146] Like the three Supreme Court cases cited by Plaintiffs, the district court cases are distinguishable because they do not involve Title IX claims of sexual misconduct. Instead, two of the cases, including the one from this Court, involve a First Amendment retaliation claim brought by a terminated university employee against her university-employer, alleging she was terminated for reporting sexual harassment, which is analyzed under a different framework and requires consideration of whether the speech involves "a matter of public concern."[147] In the third case, which is from outside this Circuit, a student-athlete brought a § 1983 claim against her coach alleging violations of the First and Fourteenth Amendment and

---

[145] *Doe #1 v. Bd. of Supervisors of Louisiana Statue Univ. and Agric. and Mech. College*, Civ. A. No. 21-564-SDD-SDJ, 2022 WL 16701930, at *24 (M.D. La. Nov. 3, 2022) (quoting *Doe v. Napa Valley Unified School District*, Civ. A. No. 17-cv-03753-SK, 2018 WL 4859978, at *4 (N.D. Cal. Apr. 24, 2018) (Kim, M.J.)). *See*, *Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592, 608 (E.D. Tex. 2016) (finding that the plaintiff could not state a claim under § 1983 based on an underlying violation of Title IX because Title IX does not allow suit against individuals).

[146] R. Doc. 182 at ¶ 1010 (*citing Landesberg-Boyle v. State of Louisiana*, Civ. A. No. 03-3582, 2004 WL 2035003 (E.D. La. Sept. 10, 2004); *Wilson v. UT Health Center*, 973 F.2d 1263, 1268-69 (5th Cir. 1992); *Doe v. Alvey*, Civ. A. No. 1:20-cv-410, 2021 WL 1519628 (S.D. Ohio Feb. 2, 2021)); R. Doc. 212 at p. 20 (citing same authority).

[147] *Landesberg-Boyle*, Civ. A. No. 03-3582, 2004 WL 2035003 at *5; *Wilson*, 973 F.2d at 1268-70.

asserting that her Title IX complaint regarding retaliatory actions of her coach was constitutionally protected speech.[148]   Plaintiffs fail to mention, however, that the district court in that case held that the plaintiff's Title IX complaint of mistreatment and retaliation by her coach was not protected speech under the First Amendment because Title IX "prohibits discrimination on the basis of sex" and "plaintiff's complaint is devoid of *any* allegations of discrimination based on her sex or gender."[149] Thus, Plaintiffs have failed to cite any legal authority for the proposition that a Title IX complaint is protected speech under the First Amendment.

Even assuming, *arguendo*, that Plaintiffs could establish that a Title IX complaint is protected speech, Plaintiffs have failed to show that such First Amendment rights were "clearly established" at the time of the challenged conduct, as required to overcome qualified immunity.[150]   Again, the Court has already determined that the § 1983 claims asserted by Richardson, Brennan, Owens, Doe, Johnson, Andries, Hovis, and Kitch are untimely.  The Court additionally finds that, even if those plaintiffs' claims were timely, Segar would be entitled to qualified immunity.  Accordingly, Segar is entitled to qualified immunity from Plaintiffs' § 1983 First Amendment retaliation claim asserted in Count V of the Second Amended Complaint.

### 2.  Count VI – Plaintiffs' § 1983 Denial of Equal Protection Claim

---

[148] *Alvey*, Civ. A. No. 1:20-cv-410, 2021 WL 1519628 at *1-2.
[149] *Id*. at *3 & 5-6 (emphasis in original).
[150] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citation omitted).

Segar next argues that Plaintiffs' § 1983 Equal Protection claim should be dismissed because she did not violate any clearly established right to equal protection for any of the named Plaintiffs.[151]  According to Segar, Plaintiffs allege that Defendants' actions or inactions deprived them of liberty and property by endangering them, treating them as second-class citizens at LSU, forcing them to move or leave LSU entirely against their wishes, and denying them the opportunity to take advantage of interim measures to assist them in fully accessing their education after the alleged abuses.[152]  Segar argues that Plaintiffs, who are all females, failed to allege that male students, or other gender-identifying students, who reported violations of Title IX were treated more favorably than Plaintiffs.[153]  Although Plaintiffs cite two Supreme Court cases for their contention that, "[i]t is clearly established that failure to report or investigate allegations of sexual assault violates the Equal Protection Clause," Segar argues those cases do not demonstrate that she violated clearly established law.[154]  Segar asserts that neither of the cited cases have fact patterns similar to this case, and that neither of the cases sufficiently put her on notice that her actions or inactions violated clearly established law.[155]  Because Plaintiffs have not shown that failure to properly report alleged Title IX

---

[151] R. Doc. 202-1 at p. 17.
[152] *Id*. at pp. 17-18 (*citing* R. Doc. 182 at ¶¶ 1067-1071).
[153] R. Doc. 202-1 at p. 18.
[154] *Id*. at pp. 18-19 (*quoting* R. Doc. 182 at ¶ 1078 and citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 201, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258, 129 S.Ct. 788, 797, 172 L.Ed.2d 582 (2009)).
[155] R. Doc. 202-1 at p. 19.

violations are a clearly established constitutional violation, Segar argues that she is entitled to qualified immunity.[156]

Plaintiffs argue that it is clearly established that failing to report or investigate allegations of sexual assault violates the Equal Protection Clause of the Fourteenth Amendment.[157]  Plaintiffs assert that in *Fitzgerald v. Barnstable School Committee*, the Supreme Court held that, "Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools, or a substitute for § 1983 suits as a means of enforcing constitutional rights," and that, "§ 1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools," including in the case of school officials' inadequate responses to allegations of peer-on-peer sexual harassment.[158]  Plaintiffs assert that they have each alleged that they had a clearly established right to be free from discrimination on the basis of sex pursuant to the Equal Protection Clause of the Fourteenth Amendment, and that they have each alleged that Segar was either personally involved in that discrimination, or that her wrongful actions were causally connected to their constitutional deprivations.[159]  Specifically, Plaintiffs allege that, "Segar created a hostile environment on LSU's campus, a form of sex discrimination in itself, and purposefully concealed reports of sexual misconduct from the Title IX Coordinator."[160]  As such, Plaintiffs assert that Segar's Motion should be denied.

---

[156] *Id.*
[157] R. Doc. 212 at p. 21.
[158] *Id.* at p. 22 (quoting *Fitzgerald*, 555 U.S. 246, 258, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009)).
[159] R. Doc. 212 at p. 22.
[160] *Id.*

In response, Segar asserts that Plaintiffs' Opposition brief shows a clear lack of factual support for their conclusory and baseless allegations against her, and further asserts that she properly reported sexual assault allegations.[161]  Segar maintains that she is entitled to qualified immunity and that Plaintiffs cannot overcome her qualified immunity defense because they failed to allege any facts to show that Segar violated their rights.  Segar points out that Plaintiffs failed to cite any case where a court found that a university employee who received a report of sexual abuse or misconduct violated a student's constitutional right to equal protection under a similar set of facts alleged herein.[162]

The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction the equal protection of the laws, which "is essentially a direction that all persons similarly situated should be treated alike."[163]  "To state a claim under the Equal Protection Clause, a plaintiff must demonstrate that he has been treated differently due to his membership in a protected class and that the unequal treatment stemmed from discriminatory intent."[164]  "It is well established that a showing of discriminatory intent or purpose is required to establish a valid equal protection claim."[165]  "To establish discriminatory intent, a plaintiff must show 'that the decision maker singled out a particular group for disparate treatment and

---

[161] R. Doc. 226 at p. 8.

[162] *Id.* at p. 9.

[163] *Club Retro, LLC v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (quoting *Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993) (internal quotation marks omitted).

[164] *Mills v. City of Bogalusa*, 112 F. Supp. 3d 512, 516 (E.D. La. 2015) (citing *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss*, 543 F.3d 221, 228 (5th Cir. 2008)).

[165] *Muslow v. Bd. of Supervisors of Louisiana State Univ. and Agric. and Mechan. College*, Civ. A. No. 19-11793, 2020 WL 1864876, at *22 (E.D. La. Apr. 14, 2020) (Ashe, J.) (quoting *Doe v. Silsbee Indep. Sch. Dist.*, 402 Fed.Appx. 852, 855 (5th Cir. 2010)).

selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.'"[166]  Pertinent to the instant case, the Fifth Circuit has held that, "Allegations [of discriminatory intent] that are merely conclusory, without reference to specific facts, will not suffice."[167]

In Count VI of the Second Amended Complaint, Plaintiffs allege that Segar and the other individual defendants "discriminated against Plaintiffs on the basis of sex by subjecting them to a hostile environment and failing to appropriately respond to and investigate reports of sexual misconduct and other violations detailed previously in this Complaint."[168]  Plaintiffs assert that, "Defendants' discrimination against Plaintiffs on the basis of sex endangered the safety, privacy, security, and well-being of Plaintiffs," and that, "Defendants' actions and inactions deprived Plaintiffs of their right to equal dignity, liberty, and autonomy by treating them as second-class citizens at LSU."[169]  Plaintiffs allege that "Defendants'" actions and inactions deprived them of their rights to liberty and property by forcing some of them to move or leave LSU, against their prior wishes.[170]  Plaintiffs then allege that Owens, Richardson, Robertson, Brennan, Lewis, Doe, and Kitch all made reports of sexual assault that were not investigated by LSU, Jennie Stewart, or Jonathan Sanders, and were not properly reported by Verge Ausberry or Segar.[171]  Plaintiffs assert that these seven plaintiffs were all denied the opportunity to take advantage

---

[166] *Fennell*, 804 F.3d at 412 (quoting *Priester*, 354 F.3d at 424).
[167] *Fennell*, 804 F.3d at 412 (quoting *Priester*, 354 F.3d at 420).
[168] R. Doc. 182 at ¶ 1066.
[169] *Id*. at ¶¶ 1067-1068.
[170] *Id*. at ¶ 1069.
[171] *Id*. at ¶ 1070.

of interim measures that could have assisted them in fully accessing their education after they had been abused.[172]

Plaintiffs further allege that Doe was forced to move out of her residence hall to avoid her abuser, Doe was wrongly told that her claims did not fall under Title IX and was denied an investigation, and that Hovis was denied the protections of a no-contact directive when her abuser repeatedly violated the directive and LSU did nothing to discipline him or prevent future violations, therefore leaving her at ongoing risk of abuse.[173]  Plaintiffs allege that, "These are indisputable violations of the Equal Protection clause, as Plaintiffs were denied the school's protective services as female victims of sexual assault, an acknowledged disfavored minority."[174] Plaintiffs further allege that, "It is clearly established that failing to report or investigate allegations of sexual assault violates the Equal Protection clause."[175] Plaintiffs then cite the same Supreme Court case cited in their Opposition brief, *Fitzgerald*, for the proposition that, "The actions of Defendants violated clearly established Constitutional law; thus, [the individual defendants] are not entitled to qualified immunity."[176]

For the same reasons set forth in the Court's February 17, 2023 Order and Reasons granting Stewart's Motion to Dismiss,[177] the Court finds that Plaintiffs have failed to state an equal protection claim against Segar.  While Plaintiffs have alleged

---

[172] *Id*. at ¶ 1071.
[173] *Id*. at ¶¶ 1072-1074.
[174] *Id*. at ¶ 1075.
[175] *Id*. at ¶ 1078.
[176] *Id*. at ¶¶ 1080-1082 (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 250, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009) and *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)).
[177] R. Doc. 317 at pp. 35-36.

that, as women, they belong to a protected class, there are no allegations in the Second Amended Complaint that Plaintiffs were treated differently from male students who reported sexual misconduct under the Title IX program at LSU.[178] Plaintiffs' Second Amended Complaint is silent regarding how, or whether, sexual misconduct allegations by any other group were handled differently.  Nor are there any allegations that Segar's actions or inactions were motivated by a discriminatory intent based on gender.[179]  Thus, even accepting all well-pleaded facts in the Second Amended Complaint as true and viewing them in the light most favorable to the Plaintiffs, as the Court is bound to do,[180] the Court finds that Plaintiffs have failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment against Segar.  As such, all of Plaintiffs' claims against Segar alleging violations of the Equal Protection Clause must be dismissed.

### 3. *Count VII – Plaintiffs' § 1983 Substantive and Procedural Due Process Claims*

#### a. Procedural Due Process

While not entirely clear, Segar seems to assert that she is entitled to qualified immunity from Plaintiffs' procedural due process claims because it is not clearly established that Plaintiffs' interest in accessing educational opportunities and

---

[178] To the extent that Plaintiffs allege in their Opposition brief that Segar "should have known . . . that treating victims of student-athletes differently than other victims would violate their equal protection . . .rights" (R. Doc. 212 at p. 18; *See also*, R. Doc. 182 at ¶¶ 43-44), Plaintiffs fail to allege or even address whether victims of student athletes are a protected class for purposes of the Equal Protection Clause.  The Court has found no legal authority to suggest that they are.  Further, Plaintiffs fail to allege any facts to show that "other victims" were treated differently than "victims of student athletes."
[179] *See*, R. Doc. 182 at ¶¶ 1059-1085.
[180] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

benefits or their interest in continued enrollment at a post-secondary institution are protected by procedural due process.[181]  To the extent Plaintiffs claim they were deprived of their procedural due process rights due to Defendants' alleged failure to comply with "the administrative requirements of Title IX," Segar asserts that the only allegation specific to her is that she purportedly failed to report complaints of sex-based discrimination.[182]  Segar argues that this allegation is contradicted by the allegations in the Second Amended Complaint.  Segar then asserts that the case relied upon by Plaintiffs for the proposition that a university's failure to follow published procedures constitutes an unconstitutional deprivation of property without due process, *Perry v. Sinderman*, involved a professor's claim of a property interest in his employment, which is not analogous to Plaintiffs' claims.[183]  Nonetheless, Segar maintains that she followed all LSU policies regarding reporting Title IX complaints. As such, Segar claims Plaintiffs have failed to establish that she violated clearly established law and maintains that she is entitled to qualified immunity.

Plaintiffs argue that they have clearly established rights to liberty and property under the Due Process Clause of the Fourteenth Amendment, including "a liberty and property right in accessing their full educational opportunities and benefits, as well as in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law."[184]  Plaintiffs

---

[181] R. Doc. 202-1 at p. 20.

[182] *Id.* at pp. 19-20 (*quoting* R. Doc. 182 at ¶¶ 1091-1092).  Although Segar attributes this assertion to "Doc. 282, ¶¶ 1091-1092," this appears to be a typographical error and an intended reference to the Second Amended Complaint, R. Doc. 182.

[183] R. Doc. 202-1 at pp. 20-21 (*citing* R. Doc. 182 at ¶ 1107; *Perry*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)).

[184] R. Doc. 212 at p. 23.

assert that in *Perry v. Sinderman*, the Supreme Court "clearly established the obvious principle that if public universities have mandatory disciplinary procedures and plaintiffs are eligible for the protections of those procedures, failing to follow the published procedures constitutes an unconstitutional deprivation of plaintiffs' property without due process."[185]  Plaintiffs argue that under the Due Process Clause, deprivation of their liberty and property interests arising out of the Code of Student Conduct, LSU's Title IX Policy, and federal law and guidance cannot occur without notice and a meaningful opportunity to be heard.[186]

Plaintiffs further claim that they had a property right in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law and that, unlike in *Perry*, Segar's enforcement of Title IX procedures was never optional.[187]  Plaintiffs argue that Segar should have known that Plaintiffs were entitled to LSU and its employees following LSU's own published procedures.  Plaintiffs claim that Segar was personally involved in the deprivation of Lewis' due process rights when she "failed to file reports with LSU's Title IX Coordinator following Richardson's disclosure of John Coe's rape of Plaintiff Lewis and John Coe's admission of sexual misconduct."[188]  While Segar "lacked personal involvement in the deprivation of other Plaintiffs' procedural due process rights," Plaintiffs assert that Segar's wrongful actions were causally connected to their

---

[185] *Id.* (citing *Perry*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)).
[186] R. Doc. 212 at p. 23.
[187] *Id.* at p. 25.
[188] *Id.* (*citing* R. Doc. 182 at ¶ 214; R. Doc. 22-1 at p. 75).

constitutional deprivations. [189]    Plaintiffs contend that they have alleged the deprivation of a constitutional right through pleading that, "Defendant's failure to comply with the administrative requirements of Title IX and its own policies deprived Plaintiffs of their substantive and procedural due process rights to be heard prior to depriving them of their liberty and property interests." [190]    Plaintiffs assert that "Defendant" decided not to report or investigate their reports of sexual misconduct and to deny Plaintiffs support services, which deprived Plaintiffs of their property and liberty interests. [191]    As such, Plaintiffs assert that Segar's Motion should be denied.

In response, Segar asserts that Plaintiffs' Opposition brief shows a clear lack of factual support for their conclusory and baseless allegations against her, and further asserts that she properly reported sexual assault allegations. [192]    Segar maintains that she is entitled to qualified immunity and that Plaintiffs cannot overcome her qualified immunity defense because they failed to allege any facts to show that Segar violated their rights.    Segar points out that Plaintiffs failed to cite any case where a court found that a university employee who received a report of sexual abuse or misconduct violated a student's constitutional right to procedural due process under a similar set of facts alleged herein. [193]    Segar further asserts that the

---

[189] R. Doc. 212 at p. 25.
[190] R. Doc. 212 at p. 26.
[191] *Id*.
[192] R. Doc. 226 at p. 8.
[193] *Id*. at p. 9.

only plaintiffs who reported sexual misconduct to her are Brennan and Lewis, and Segar claims that she reported that misconduct to the Title IX or LSU authorities.[194]

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."[195] "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."[196] The Supreme Court has adopted a two-step analysis to determine whether an individual's procedural due process rights have been violated, asking first whether there exists a liberty or property interest that has been interfered with by the State, and then examining whether the procedures attendant upon that deprivation were constitutionally sufficient.[197]

Plaintiffs appear to allege in the Second Amended Complaint that they have liberty and property interests "arising out of the Code of Student Conduct, LSU's Title IX Policy, and federal law and guidance," the deprivation of which cannot occur without notice and a meaningful opportunity to be heard.[198]  Plaintiffs assert that, "Defendants' failure to comply with the administrative requirements of Title IX and its own policies deprived Plaintiffs of their procedural due process right to be heard

---

[194] *Id.*

[195] U.S. Const. amend. XIV, § 1.

[196] *Duhon v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll*, Civ. A. No. 20-2022, 2021 WL 5562156, at *3 (E.D. La. Aug. 23, 2021) (Milazzo, J.) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)) (internal quotation marks omitted) (emphasis in original).

[197] *Meza*, 607 F.3d at 399 (quoting *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)) (internal quotation marks omitted).

[198] R. Doc. 182 at ¶ 1090.

prior to depriving them of their liberty and property interests."[199]  Plaintiffs allege that the "Defendants, in their individual capacities and under color of law" violated their liberty and property rights by failing to: (1) properly train employees in their Title IX reporting obligations; (2) ensure employee compliance with the Title IX policy and other relevant policies; (3) report complaints of sex-based discrimination; (4) initiate and/or conduct adequate investigations and grievance procedures under Title IX; (5) ensure that victimized students had equal access to educational opportunities and benefits or grievance procedures; (6) ensure victimized students were provided with the interim resources necessary to maintain their educational access after making Title IX reports; (7) remedy hostile environments when they were discovered; and (8) prevent the recurrence of hostile environments.[200]  Plaintiffs assert that throughout this deprivation, "Defendants continuously failed to provide Plaintiffs with adequate notice of the action to be taken with regard to the sex-based discrimination they had suffered, as well as meaningful opportunities to be heard."[201]

Plaintiffs allege that the actions and inactions of the defendants deprived Plaintiffs of their liberty and property interests "in accessing their full educational opportunities and benefits without due process."[202]  Plaintiffs similarly allege that, "When Defendants decided not to report or investigate Plaintiffs' reports of sexual misconduct and to deny Plaintiffs support services, they deprived Plaintiffs of their liberty and property interests and caused Plaintiffs to suffer grievous loss by being

---

[199] *Id*. at ¶ 1091.
[200] *Id*. at ¶ 1094.
[201] *Id*. at ¶ 1095.
[202] *Id*. at ¶¶ 1099 & 1101.

denied educational benefits."[203]   Plaintiffs further allege that several of them "received limited or no communications from the Title IX Office after reporting or limited or no interim measures – even if requested – thus denying them any procedural protections prior to the deprivation of their property and liberty interests in their education."[204]   Plaintiffs then assert that they "had a liberty and property right in the investigation of reports of sexual misconduct in accordance with LSU's published Title IX policy and the mandates of federal law."[205]   Plaintiffs allege that, "Defendants' actions violated clearly established Constitutional law; thus, they are not entitled to qualified immunity."[206]

While Plaintiffs' Second Amended Complaint distinguishes the actions of individual defendants by name in some parts, other parts, including Plaintiffs' substantive and procedural due process claim, refers only to the actions of the "Defendants."[207]   This type of group pleading, where all of the defendants are lumped together and identical claims are asserted as to each defendant, makes it difficult for the Court to determine which defendants are allegedly responsible for which allegedly unlawful action.   The Fifth Circuit has held that, "while referring to a collective group of defendants is not a fatal pleading deficiency, '[e]ach defendant is [still] entitled to know what he or she did that is asserted to be wrongful.'"[208]   The

---

[203] *Id*. at ¶ 1105.
[204] *Id*. at ¶ 1106.
[205] *Id*. at ¶ 1112.
[206] *Id*. at ¶ 1115.
[207] *Id*. at ¶¶ 1086-1118.
[208] *Martinez v. City of North Richland Hills,* Case No. 20-10521, 2021 WL 742662, at *4 (5th Cir. 2021) (quoting *Heartland Consumer Products LLC v. DineEquity, Inc.*, Civ. A. No. 1:17-CV-01035-SEB-TAB, 2018 WL 465784, at *4 (S.D. Ind. Jan. 18, 2018)).

Fifth Circuit further instructed that, "Because the notice pleading requirement of the Federal Rules of Civil Procedure entitle each defendant to know what he or she did that is asserted to be wrongful, allegations based on a 'theory of collective responsibility' cannot withstand a motion to dismiss."[209]  While the Court finds Plaintiffs' allegations against "Defendants," *in globo*, in Count VII are not sufficient under Fed. R. Civ. P. 8(a)(2), because Rule 12(b)(6) motions to dismiss are viewed with disfavor in this Circuit and are rarely granted,[210] the Court will  analyze the specific claims made by Plaintiffs as to Segar to determine whether dismissal is warranted.

For the same reasons set forth in the Court's February 17, 2023 Order and Reasons granting Ausberry's Motion to Dismiss,[211] the Court finds that Plaintiffs have failed to demonstrate how their allegations amount to conduct violating a clearly established constitutional right.  It is clear to the Court that Plaintiffs' purported property interest in "the investigation of reports of sexual misconduct" under LSU's Title IX program is an attempt by Plaintiffs to assert a Title IX claim against an individual under the guise of a Fourteenth Amendment § 1983 claim.  This is evident from Plaintiffs' laundry-list of actions and inaction taken by the individual defendants, including Segar, that purportedly "subjected Plaintiffs to violations of their liberty and property interests," all of which concern LSU's Title IX program.[212]

---

[209] *Martinez*, 2021 WL 742662, at *4 (quoting *Bank of Am., N.A. v.* Knight, 725 F.33d 815, 818 (7th Cir. 2013)).

[210] *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

[211] R. Doc. 319 at pp. 40-41.

[212] R. Doc. 182 at ¶ 1094.

Title IX does not authorize suits against school officials, teachers, and other individuals.[213] To the extent Plaintiffs allege procedural and substantive due process claims against Segar based upon the deprivation of their purported property interest in "the investigation of reports of sexual misconduct" under LSU's Title IX program, such claims must be dismissed as an attempt to circumvent Title IX's explicit language limiting liability to "institutions and programs that receive federal funds."[214]

The Court further finds, for the same reasons set forth in the Court's February 17, 2023 Order and Reasons granting Ausberry's Motion to Dismiss,[215] that Plaintiffs have failed to show, and this Court can find no binding precedent to suggest, that there is a recognized property interest in "accessing full educational opportunities and benefits" of a state university or in "the investigation of reports of sexual misconduct" under LSU's Title IX program. While Plaintiffs may have had a unilateral expectation of such interests, they have failed to show a legitimate claim of entitlement to a recognized property interest.[216] Additionally, the Fifth Circuit has held that, "There is no state-created right to graduate-level education" in Louisiana.[217] Plaintiffs have not cited any statutory, regulatory, jurisprudential, or

---

[213] *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257, 129 S.Ct. 788, 796, 172 L.Ed.2d 582 (2009) (citation omitted).

[214] *Id.*; *Doe #1 v. Bd. of Supervisors of Louisiana Statue Univ. and Agric. and Mech. College*, Civ. A. No. 21-564-SDD-SDJ, 2022 WL 16701930, at *24 (M.D. La. Nov. 3, 2022) (quoting *Doe v. Napa Valley Unified School District,* Civ. A. No. 17-cv-03753-SK, 2018 WL 4859978, at *4 (N.D. Cal. Apr. 24, 2018) (Kim, M.J.)).  *See, Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592, 608 (E.D. Tex. 2016) (finding that the plaintiff could not state a claim under § 1983 based on an underlying violation of Title IX because Title IX does not allow suit against individuals).

[215] R. Doc. 319 at pp. 41-45.

[216] *See*, *Holden v. Perkins*, 389 F. Supp. 3d 16, 23 (E.D. La. 2019).

[217] *Barnes v. Symeonides*, 44 F.3d 1005 (5th Cir. 1995).

other authority for the proposition that they had a constitutionally protected property or liberty interest in their higher education at LSU. Additionally, "Most case law involving due process in the educational setting concerns student dismissals or suspensions from academic institutions."[218]  Here, Plaintiffs have not alleged that they were suspended or expelled from LSU, or otherwise disciplined, as a result of reporting sexual misconduct. Thus, Plaintiffs have failed to show that Segar's alleged failure to report known instances of sexual abuse committed against Brennan and Lewis to the Title IX Office violated Plaintiffs' clearly established procedural due process rights. Finally, for the reasons set forth in the Court's February 17, 2023 Order and Reasons granting Ausberry's Motion to Dismiss,[219] the Court finds that *Perry v. Sinderman* does not support Plaintiffs' contention that they have a protected liberty or property interest in their education or in the investigation of reports of sexual misconduct under LSU's Title IX policy. As such, Segar is entitled to qualified immunity on Plaintiffs' Due Process claims.

2. Substantive Due Process

Lastly, Segar asserts that she is entitled to qualified immunity from Plaintiffs' substantive due process claims asserted in Count VII of the Second Amended Complaint for the same reasons that she claims she is entitled to qualified immunity from Plaintiffs' procedural due process claims.[220]  Essentially, Segar argues that it is not clearly established that Plaintiffs' interest in accessing educational opportunities

---

[218] *Smith v. Davis*, 507 Fed.Appx. 359, 362 (5th Cir. 2013).
[219] R. Doc. 319 at pp. 45-47.
[220] R. Doc. 202-1 at pp. 19-21.

and benefits or their interest in continued enrollment at a post-secondary institution are protected by substantive due process.[221]

Plaintiffs claim that they have each established that they "suffered a deprivation of constitutional rights in the form of denial of substantive due process due to the deprivation of their fundamental liberty interest in bodily integrity," and that, "This deprivation directly resulted from the pervasive culture of failing to respond appropriately to complaints of sexual misconduct at LSU, which Segar directly participated in fostering."[222] Plaintiffs then cite *Doe v. Taylor Independent School District*, wherein the Fifth Circuit established a test to determine whether a school official could be held liable for a subordinate employee's sexual abuse of a student, and ask this Court "to apply the *Taylor* test to the present situation and replace 'subordinate' with 'student.'"[223] In doing so, Plaintiffs admit that the facts of this case "are not completely analogous, as Plaintiffs have not alleged abuse by an employee," but claim that, "Plaintiffs are not aware of any case law that is directly on point."[224]

In response, Segar maintains that she is entitled to qualified immunity and that Plaintiffs have failed to cite any case where a court found that a university employee who received a report of sexual abuse or misconduct violated a student's

---

[221] R. Doc. 202-1 at p. 20.
[222] R. Doc. 212 at p. 24.
[223] *Id.* (citing *Taylor*, 15 F.3d 443, 454 (5th Cir. 1994)).
[224] R. Doc. 212 at p. 24.

constitutional right to substantive due process under a similar set of facts alleged herein.[225]

"Substantive due process bars arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them."[226]  Substantive due process "ensures that, regardless of the fairness of the procedures used, the government does not use its power for oppressive purposes." [227]  "To state a substantive due process claim, a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate government interest."[228]  The Fifth Circuit has held that, "In reviewing a substantive due process claim, the existence of a protected property interest is a threshold issue we must reach before we consider whether the defendants' actions were arbitrary and capricious."[229]  "If there is no protected property interest, there is no process due."[230]

In the Second Amended Complaint, Plaintiffs allege that, "Defendants' failure to comply with the administrative requirements of Title IX and their own policies deprived Plaintiffs of their substantive due process rights to their liberty interest in

---

[225] R. Doc. 226 at p. 9.

[226] *Holden v. Perkins*, 398 F. Supp. 3d 16, 22 (E.D. La. 2019) (citing *Lewis v. Univ. of Texas Medical Branch at Galveston*, 665 F.3d 625, 630-31 (5th Cir. 2011); *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007)).

[227] *Duhon v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll*, Civ. A. No. 20-2022, 2021 WL 5562156, at *4 (E.D. La. Aug. 23, 2021) (quoting *Patterson v. Def. POW/MIA Acct. Agency*, 343 F. Supp. 3d 637, 646 (W.D. Tex. 2018)) (internal quotation marks omitted).

[228] *Babinksi v. Queen*, Civ. A. No. 20-426-SDD-EWD, 2021 WL 4483061, at *12 (M.D. La. Sept. 29, 2021) (quoting *Williams v. Texas Tech. Univ. Health Sciences Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993)) (internal quotation marks omitted).

[229] *Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (citing *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)).

[230] *Wigginton*, 964 F.3d at 335 (quoting *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992)) (internal quotation marks omitted).

bodily integrity and their property interest in their education."[231]  Plaintiffs also allege that their "rights to substantive and procedural due process were clearly established at the time of the incidents alleged, and Defendants' conduct was objectively unreasonable in the light of that then clearly established law."[232] Plaintiffs further allege that until the publication of the Husch Blackwell Report in March 2021, Plaintiffs were unaware, and the defendants concealed from Plaintiffs, that the defendants "intentionally denied Plaintiffs of their substantive and procedural due process rights regarding the events outlined *supra*."[233]  There is no other reference to Plaintiffs' substantive due process rights in the Second Amended Complaint.[234]  The Court has already determined that Plaintiffs have failed to show a protected property interest in their education.  As such, Segar is entitled to qualified immunity on Plaintiffs' substantive due process claim that is based upon their purported property interest in their education.

It is unclear to the Court, from either the Second Amended Complaint or the Opposition brief, the liberty interest that Plaintiffs are claiming they were purportedly deprived of by Segar.  Plaintiffs merely ask the Court to hold Segar liable because she "learned of inappropriate sexual behavior by student-athletes, demonstrated deliberate indifference to student-victims by failing to take action that was obviously necessary to prevent or stop the abuse, and that such failure caused a

---

[231] R. Doc. 182 at ¶ 1092.
[232] R. Doc. 182 at ¶ 1116.
[233] *Id*. at ¶ 1117.
[234] *See, generally*, R. Doc. 182 at ¶¶ 1086-1118.

constitutional injury to the student-victims."[235]  Plaintiffs made the same allegations against Jennie Stewart and Verge Ausberry, and the Court previously determined that such conclusory allegations, in addition to the vague allegations in the Second Amended Complaint, fail to demonstrate that Plaintiffs' purported liberty interest in their bodily integrity was clearly established when the challenged conduct occurred.[236]  The Court reaches the same conclusion with respect to Segar.

Additionally, and for the same reasons set forth in the Court's two recent orders granting the motions to dismiss filed by Stewart and Ausberry,[237] the Court declines Plaintiffs' request to apply the test set forth by the Fifth Circuit in *Doe v. Taylor Independent School District* to determine "the personal liability of school officials in physical sexual abuse cases."[238]  As the Court previously determined, that case is clearly distinguishable and inapplicable to the facts of this case.  The Court finds it significant that Plaintiffs admit in their Opposition brief that, "Plaintiffs are not aware of any case law that is directly on point" with respect to their substantive due process claim.[239]  Plaintiffs' admission shows that Plaintiffs cannot demonstrate that Segar violated a substantive due process right that was clearly established at the time of the challenged conduct.  As such, Segar is entitled to qualified immunity on Plaintiffs' substantive due process claims.

### 4.  Leave to Amend is Denied

---

[235] R. Doc. 212 at p. 24.
[236] *See*, R. Doc. 317 at p. 52; R. Doc. 319 at p. 50.
[237] *See*, R. Doc. 317 at pp. 52-53 & R. Doc. 319 at p. 51.
[238] *See,* R. Doc. 212 at pp. 24-25 (citing *Taylor*, 15 F.3d 443, 454 (5th Cir. 1994)).
[239] R. Doc. 212 at p. 24.

Although not addressed by either party in their briefs,[240] the Court finds that granting Plaintiffs leave to amend their complaint to address the foregoing deficiencies is not appropriate in this case under Fed. R. Civ. P. 15. This Court will "freely give leave [to amend] when justice so requires,"[241] but leave to amend "is by no means automatic."[242] In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[243] "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[244]

Applying those factors here, the Court finds that any amendment would likely be futile in light of the fact that the Court has determined that Segar is entitled to qualified immunity as to Plaintiffs' three § 1983 claims because Plaintiffs have failed to show that Segar's conduct in failing to report Title IX complaints violated Plaintiffs' clearly established constitutional rights of which a reasonable person would have known at the time of the deprivation.[245] The Court further finds that granting Plaintiffs leave to amend would cause undue delay in this case. More importantly, however, Plaintiffs have already been afforded two opportunities to amend their

---

[240] *See, generally*, R. Docs. 202-1, 212, & 226.

[241] Fed. R. Civ. P. 15(a).

[242] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).

[243] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).

[244] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).

[245] *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)).

allegations, [246] and have repeatedly failed to cure these deficiencies through amendments previously allowed.  Based upon the foregoing, and exercising its discretion under Fed. R. Civ. P. 15, Plaintiffs will not be afforded a third opportunity to amend their claims against Segar.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Motion to Dismiss Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(B)(6), filed by Miriam Segar,[247] is **GRANTED.**  All of Plaintiffs' claims asserted against Segar in Counts V through VII in the Second Amended Complaint are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, February 17, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[246] *See*, R. Docs. 1, 22, 177, 180, 181, & 182.
[247] R. Doc. 202.