## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                **NO. 21-242-WBV-SDJ**

**LOUISIANA STATE UNIVERSITY, ET AL.**

### ORDER AND REASONS

Before the Court is Defendant Jonathan Sanders' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Plaintiffs oppose the Motion,[2] and Sanders has filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

## I.    FACTUAL and PROCEDURAL BACKGROUND[4]

This case involves allegations by ten former students of Louisiana State University and Agricultural and Mechanical College ("LSU") that LSU and its Athletic Department funded and implemented a purposefully deficient sexual misconduct and Title IX reporting scheme separate from LSU's official Title IX office to keep sexual assault claims within the Athletic Department.[5]  In their Second Amended Complaint and Jury Demand ("Second Amended Complaint"), Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth

---

[1] R. Doc. 203.
[2] R. Doc. 211.
[3] R. Doc. 227.
[4] The factual background of this case was extensively detailed in the Court's Order and Reasons granting Jennie Stewart's Motion to Dismiss (R. Doc. 317) and, for the sake of brevity, will not be repeated here.
[5] R. Doc. 1 at ¶ 10; R. Doc. 22 at ¶ 10; R. Doc. 182 at ¶ 25.

Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch (collectively, "Plaintiffs"), allege that while attending school at LSU's Baton Rouge campus between 2009 and 2021, the defendants, LSU's Board of Supervisors, Jennie Stewart, Verge Ausberry, Miriam Segar, and Johnathan Sanders (collectively, "Defendants") repeatedly engaged in discriminatory, retaliatory, and other unlawful actions in their interactions with Plaintiffs and in response to Plaintiffs' reports of Title IX violations and violations of LSU's Code of Student Conduct, thereby violating their own policies.[6]  Plaintiffs allege that LSU handled Title IX complaints made against student-athletes differently than complaints made against non-athletes.[7]  Plaintiffs further allege that, "Title IX complaints against student-athletes are purposefully buried or diverted so as to ensure that those complaints were never properly investigated or addressed and the student-athletes are not negatively impacted or prevented from concentrating on their athletics, all of which benefits LSU financially and causes further harm to Plaintiffs."[8]  Plaintiffs assert that Defendants' actions and inactions in response to their reports of Title IX violations subjected them to additional harassment and created a sexually hostile environment on campus.[9]

Plaintiffs allege that they were victims of sex-based discrimination, including rape, sexual assault, sexual harassment, and/or stalking, that was perpetrated by male LSU students and a male professor between 2009 and 2020, and that one

---

[6] R. Doc. 182 at ¶ 36.
[7] *Id.* at ¶ 43.
[8] *Id.* at ¶ 44.
[9] *Id.* at ¶ 45.

plaintiff was the victim of verbal and emotional abuse by an LSU tennis coach.[10] Although the alleged sexual misconduct occurred more than a year before Plaintiffs filed this lawsuit, Plaintiffs allege that they were unaware of LSU's inadequate Title IX reporting policies until the March 2021 publication of the Husch Blackwell report. According to Plaintiffs, LSU retained the Husch Blackwell law firm in November 2020 to investigate the school's handling of several Title IX-related incidents, as well as LSU's Title IX policies and procedures.[11]  Plaintiffs allege that Husch Blackwell publicly released its investigative report and findings on March 5, 2021, concluding that various incidents of athletics-related misconduct had not been appropriately reported to LSU's Title IX Coordinator and voicing concern about a lack of reporting prior to November 2016.[12]  Husch Blackwell also found that LSU's Title IX Office had never been appropriately staffed or provided with the independence and resources to carry out Title IX's mandates, noting that the Title IX Office "has at time not handled those matters reported to it appropriately."[13]  Husch Blackwell noted that its concerns about reporting were not limited to athletics, and that it found deficiencies in a variety of different matters.[14]

In the Second Amended Complaint, Plaintiffs allege that they could not have known that LSU and its employees, including the individual defendants, had concealed disclosures of sexual misconduct that should have been reported to LSU's

---

[10] *See, Id.* at ¶¶ 113-741.
[11] *Id.* at ¶ 47.
[12] *Id.* at ¶¶ 51-52.
[13] *Id.* at ¶¶ 53-54.
[14] *Id.* at ¶¶ 52 & 54.

Title IX Office, that LSU purposely handled complaints of sexual misconduct perpetrated by student athletes or others affiliated with the LSU Athletics Department in a different manner than complaints of sexual misconduct perpetrated by other individuals, and the defendants intentionally instituted a process of responding to disclosures of Title IX violations in a manner designed to deter any future disclosures.[15]

Pertinent to the instant Motion, Plaintiffs assert the following three claims under 42 U.S.C. § 1983 against Jonathan Sanders in his individual capacity as the Associate Dean of Students and Director of LSU's Office of Student Advocacy & Accountability:[16] (1) First Amendment Retaliation; (2) Denial of Equal Protection under the Fourteenth Amendment; and (3) Denial of Substantive and Procedural Due Process under the Fourteenth Amendment.[17]  In his Motion to Dismiss, Sanders asserts that the claims asserted by Owens, Brennan, Johnson, Doe, Robertson, and Kitch should be dismissed because they make no allegations against him individually, and that the claims asserted by Richardson, Andries, Lewis, and Hovis should be

---

[15] *Id.* at ¶ 83.

[16] *Id.* at ¶ 22.  The Court notes that in listing the defendants in this case, Plaintiffs seem to assert that Sanders is being sued "in his official and personal capacity." *Id.*  In the heading of Counts V, VI, and VII, however, which contain the only claims asserted against Sanders, Plaintiffs assert that the claims are brought against the individual defendants, including Sanders, "in their individual capacities." *Id.* at pp. 134, 142, & 145.  Plaintiffs further assert, in each count, that, "[A] valid individual capacity claim requires a Section 1983 plaintiff to 'establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation." *Id.* at ¶¶ 1007, 1065, & 1093 (quoting *Louisiana Cleaning Sys. v. Brown*, Civ. A. No. 14-2853, 2015 WL 6869907, at *7 (W.D. La. Nov. 9, 2015) (James, J.)) (internal quotation and quotation marks omitted).  Thus, Plaintiffs seem to assert these claims against Sanders in his personal capacity.  *See*, *Brown*, Civ. A. No. 14-2853, 2015 WL 6869907, at *5-7 (addressing the plaintiffs' claims brought against a sheriff in his official and individual capacities).

[17] R. Doc. 182 at ¶¶ 754-1118.

dismissed as time-barred.[18]  Sanders then raises the defense of qualified immunity, asserting that Plaintiffs have failed to plead allegations that would overcome qualified immunity for Counts V, VI, and VII.[19]  Plaintiffs oppose the Motion, asserting that Sanders is not entitled to qualified immunity and that their claims are not time-barred because they did not begin to accrue until the release of the Husch Blackwell report in March 2021.[20]  In response, Sanders maintains that Plaintiffs' claims are time-barred and that he is entitled to qualified immunity.[21]

## II.    LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b) Motion to Dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[22]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[23]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24]  "The plausibility standard is not akin to a

---

[18] R. Doc. 203.
[19] R. Doc. 203-1 at pp. 10-13.
[20] R. Doc. 211.
[21] R. Doc. 227.
[22] Fed. R. Civ. P. 12(b)(6).
[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
[24] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).

probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[25]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[26]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. [27] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[28]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[29]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[30]

## B. Liability under 42 U.S.C. § 1983 and Qualified Immunity

Title 42 U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law.  Specifically, § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights,

---

[25] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).
[26] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).
[27] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).
[28] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).
[29] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[30] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

> privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured.[31]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[32]  To establish § 1983 liability, the plaintiff must establish the following three elements: (1) deprivation of a right secured by the United States Constitution or federal law; (2) that occurred under color of state law; and (3) was caused by a state actor.[33]

Qualified immunity is a defense to § 1983 claims that "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[34]  The Supreme Court has held that courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law, without resolving the often more difficult question of whether the purported right exists at all.[35]  According to the Supreme Court, "This approach comports with our usual reluctance to decide constitutional questions unnecessarily."[36]  The Supreme Court has further held that, "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing

---

[31] 42 U.S.C. § 1983.

[32] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[33] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

[34] *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)).

[35] *Reichle*, 566 U.S. at 664, 132 S.Ct. at 2093 (citing *Pearson v. Callahan*, 555 U.S. 223, 227, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

[36] *Reichle*, 566 U.S. at 664, 132 S.Ct. at 2093 (citing authority).

violates that right.'"[37]  "Where no controlling authority specifically prohibits a defendant's conduct[,] . . . the law cannot be said to be clearly established . . . . [G]eneralizations and abstract propositions are not capable of clearly establishing the law."[38]  While there need not be a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate."[39]  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[40]  The Supreme Court has repeatedly advised courts "not to define clearly established law at a high level of generality," explaining that, "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'"[41]

Once a government official asserts the defense of qualified immunity, the burden shifts to the plaintiff to negate the defense.[42]  To overcome a claim of qualified immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct. [43]  The Supreme Court has held that, "lower courts have

---

[37] *Mullenix v. Luna*, 577 U.S. 7, 11-12, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012)).

[38] *Smith v. Davis*, 507 Fed.Appx. 359, 361 (5th Cir. 2013) (quoting *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc)) (internal quotation marks omitted).

[39] *Mullenix*, 577 U.S. at 11, 136 S.Ct. at 308 (quoting *Ashcroft*, 563 U.S. at 741, 131 S.Ct. 2074) (internal quotation marks omitted).

[40] *Mullenix*, 577 U.S. at 12, 136 S.Ct. at 308 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).  *See, Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) (same).

[41] *Mullenix*, 577 U.S. at 12, 136 S.Ct. at 308 (quoting *Ashcroft*, 563 U.S. at 742, 131 S.Ct. 2074) (internal quotation marks omitted) (emphasis added in *Mullenix*).

[42] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

[43] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citation omitted).

discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."[44]

## III.   ANALYSIS

### A.  Failure to State a Claim under 42 U.S.C. § 1983

Sanders first asserts that the § 1983 claims asserted by Owens, Brennan, Johnson, Doe, Robertson, and Kitch should be dismissed because they fail to make any allegations as to Sanders in the Second Amended Complaint.[45]  Sanders further asserts that references to "Defendants," collectively, do not meet the standards necessary to overcome a Rule 12(b)(6) motion to dismiss a § 1983 lawsuit.[46]  Plaintiffs do not address Sanders' argument directly, choosing instead to file an Opposition brief that is nearly identical to the opposition briefs they filed in response to motions to dismiss filed by Jennie Stewart, Verge Ausberry, and Miriam Segar.[47] Nonetheless, Plaintiffs seem to address only the specific allegations of retaliation made by Jade Lewis, Corinn Hovis, and Elisabeth Andries against Sanders in their Opposition brief.[48]  In response, Sanders points out that the Second Amended Complaint includes only six allegations pertaining to Sanders, which are asserted by Andries, Hovis, Lewis, and Richardson.[49]

While Plaintiffs' Second Amended Complaint distinguishes the actions of individual defendants by name in some parts, other parts refer only to the actions of

---

[44] *Ashcroft*, 563 U.S. at 735, 131 S.Ct. at 2080 (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).
[45] R. Doc. 203-1 at p. 7.
[46] *Id*
[47] *Compare* R. Doc. 211 with R. Docs. 210, 212, & 213.
[48] *See*, R. Doc. 211 at pp. 8-9, 11, & 15.
[49] R. Doc. 227 at pp. 3-4 (*citing* R. Doc. 182 at ¶¶ 422-425, 438, 450, 554-555, 681, & 240).

the "Defendants" or "LSU and its employees."  This type of group pleading, where all of the defendants are lumped together and identical claims are asserted as to each defendant, prevents the Court from determining which defendants are allegedly responsible for which allegedly unlawful action.  The Fifth Circuit has held that, "while referring to a collective group of defendants is not a fatal pleading deficiency, '[e]ach defendant is [still] entitled to know what he or she did that is asserted to be wrongful.'"[50]  The Fifth Circuit further instructed that, "Because the notice pleading requirement of the Federal Rules of Civil Procedure entitle each defendant to know what he or she did that is asserted to be wrongful, allegations based on a 'theory of collective responsibility' cannot withstand a motion to dismiss."[51]  While the Court finds Plaintiffs' allegations against "Defendants," *in globo*, in Counts V, VI, and VII are not sufficient under Fed. R. Civ. P. 8(a)(2), because Rule 12(b)(6) motions to dismiss are viewed with disfavor in this Circuit and are rarely granted,[52] the Court will not dismiss Plaintiffs' allegations or their due process claims based upon Plaintiffs' use of group pleading.  Instead, the Court will  analyze the specific claims made by Plaintiffs as to Sanders to determine whether dismissal is warranted.

With that in mind, the Court agrees that Owens, Brennan, Johnson, Doe, Robertson, and Kitch have failed to state a 42 U.S.C. § 1983 claim against Sanders. The Second Amended Complaint is devoid of any allegations that Sanders had any

---

[50] *Martinez v. City of North Richland Hills,* Case No. 20-10521, 2021 WL 742662, at *4 (5th Cir. 2021) (quoting *Heartland Consumer Products LLC v. DineEquity, Inc.*, Civ. A. No. 1:17-CV-01035-SEB-TAB, 2018 WL 465784, at *4 (S.D. Ind. Jan. 18, 2018)).

[51] *Martinez*, 2021 WL 742662, at *4 (quoting *Bank of Am., N.A. v.* Knight, 725 F.33d 815, 818 (7th Cir. 2013)).

[52] *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

interactions with these six plaintiffs with respect to their sexual abuse allegations or that Sanders was ever made aware of their allegations.[53]  As such, the Court finds that Owens, Brennan, Johnson, Doe, Robertson, and Kitch have failed to allege facts sufficient to state a plausible § 1983 claim against Sanders and those claims must be dismissed.  Accordingly, the remainder the Court's analysis will address only the § 1983 claims asserted against Sanders by Richardson, Andries, Hovis, and Lewis.

## B. Prescription/Tolling of Plaintiffs' § 1983 Claims

Sanders argues that the § 1983 claims asserted by the remaining plaintiffs, Richardson, Andries, Lewis, and Hovis, must be dismissed on the grounds that they are time-barred by the one-year prescriptive period set forth in La. Civ. Code art. 3492.[54]  The Fifth Circuit has held that, "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[55] There is no federal statute of limitations for actions brought under 42 U.S.C. § 1983.[56] When that is the case, "the settled practice is to borrow an 'appropriate' statute of limitations from state law."[57]  In *Wilson v. Garcia*, the Supreme Court held that a § 1983 claim is best characterized as a personal injury action and, as such, is governed

---

[53] *See*, R. Doc. 182 at ¶¶ 242-288, 289-326, 327-361, 556-596, 597-650, and 699-741.

[54] R. Doc. 203-1 at pp. 8-10.

[55] *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)).

[56] *See*, *King-White*, 803 F.3d at 758.

[57] *Id*. (citations omitted).  The Fifth Circuit noted, however, that, "Of course, this rule only applies to statutes enacted prior to passage of 28 U.S.C. § 1658, which now governs in such circumstances.  *See* 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004))."  *See*, *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018) ("Courts considering claims brought under § 1983 must borrow the relevant state's statute of limitations for personal injury actions.") (citing authority).

by the forum state's statute of limitations for personal injury actions.[58]  In *Owens v. Okure*, the Supreme Court clarified that when a state has multiple statutes of limitations for personal injury actions, a § 1983 claim should be governed by the general or residual statute for personal injury actions.[59]  Accordingly, this Court will apply Louisiana's one-year prescriptive period for personal injury actions[60] to Plaintiffs' § 1983 claims, rather than the three-year period applicable to sexual assaults.[61]

The Fifth Circuit has held that, "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,' and while we borrow the limitations period from state law, 'the particular accrual date of a federal cause of action is a matter of federal law.'"[62]  Thus, federal law governs when a § 1983 claim accrues.[63] A claim "accrues" under federal law when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.[64] According to the Fifth Circuit, a plaintiff's knowledge encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the

---

[58] *Wilson v. Garcia*, 471 U.S. 261, 276-80, 105 S.Ct. 1938, 1947-49, 85 L.Ed.2d 254 (1985), superseded by statute as stated in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).

[59] 488 U.S. 235, 249-50, 109 S.Ct. 573, 581-82, 102 L.Ed.2d 594 (1989).

[60] La. Civ. Code art. 3492.

[61] La. Civ. Code art. 3496.2.

[62] *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)).

[63] *Redburn*, 898 F.3d at 496 (*citing Piotrowski v. City of Houston*, 51 F.3d 512, 516 n.10 (5th Cir. 1995)); *Smith v. Regional Transit Authority*, 827 F.3d 412, 421 (5th Cir. 2016) (citing *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998)).

[64] *Redburn*, 898 F.3d at 496 (citing *Piotrowski*, 51 F.3d at 516).  *See*, *Smith*, 827 F.3d at 421 ("This court has stated that '[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'") (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993)).

injury and the defendant's actions.[65]  "However, the plaintiff need not know that a legal cause of action exists; she need only know facts that would support a claim."[66]

Since the Louisiana statute of limitations applies to Plaintiffs' § 1983 claims, Louisiana equitable tolling principles apply.[67]  Louisiana law allows for the suspension of prescription under the doctrine of *contra non valentem*.[68]  The Louisiana Supreme Court has recognized four factual situations in which the doctrine of *contra non valentem* applies to suspend the prescriptive period, the most pertinent to this case being when "the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant."[69] "However, the doctrine of *contra non valentem* only applies in 'exceptional circumstances.'"[70]  Sometimes referred to as the "discovery rule,"[71] the Louisiana Supreme Court has further clarified that, "[t]his principle will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned."[72]  Similarly, a plaintiff may invoke the

---

[65] *King-White*, 803 F.3d at 762 (quoting *Piotrowski*, 237 F.3d at 576).

[66] *Sherman v. Irwin*, Civ. A. No. 17-4061, 2018, WL 3632360, at *3 (E.D. La. July 31, 2018) (Barbier, J.) (citing *King-White*, 803 F.3d at 762).

[67] *Green v. Doe*, 260 Fed.Appx. 717, 720 (5th Cir. 2007) (citing *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998)).

[68] *Broussard v. Brown*, 599 Fed.Appx. 188 (5th Cir. 2015) (citing *Corsey v. Louisiana*, 375 So.2d 1319, 1321-22 (La. 1979)).

[69] *Renfroe v. State ex rel. Dept. of Transp. and Development*, 2001-1646 (La. 2/26/02), 809 So.2d 947, 953 (citing *Plaquemines Parish Comm. Council v. Delta Dev. Co.*, 502 So.2d 1034 (La. 1987)).

[70] *Renfroe*, 809 So.2d at 953 (*quoting* La. Civ. Code art. 3467, Official Revision Comment (d); *State ex rel. Div. of Admin. v. McInnis Brothers Construction, Inc.*, 97-0742 (La. 10/21/97), 701 So.2d 937, 940). *See*, *Ellis v. Evonik Corp.*, Civ. A. No. 21-1089, 2022 WL 1719196, at *3 (E.D. La. May 27, 2022) (Vance, J.) (same).

[71] *Ellis*, Civ. A. No. 21-1089, 2022 WL 1719196, at *3.

[72] *Renfroe*, 809 So.2d at 953-54 (quoting *Corsey v. State of Louisiana, Through the Department of Corrections*, 375 So.2d 1319, 1322 (La. 1979)).

fraudulent concealment doctrine by proving two elements: (1) that the defendants concealed the conduct complained of; and (2) the plaintiff failed, despite the exercise of due diligence on her part, to discover the facts that form the basis of her claim.[73] To satisfy the first element, the defendant must have engaged in affirmative acts of concealment.[74] The Fifth Circuit has held that silence is not enough, and that the defendant "must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry."[75]

Here, Sanders argues that the § 1983 claims asserted by Richardson, Andries, Lewis, and Hovis are prescribed because all of their allegations of harassment and sexual misconduct occurred on or before February 2020, more than one year before Plaintiffs filed their Complaint on April 26, 2021.[76] Relying upon a 2017 case from the Western District of Texas, *Doe I v. Baylor University,* Plaintiffs assert that their § 1983 claims were timely-filed because Plaintiffs were unaware that their injuries were causally connected to actions and inactions by LSU until the release of the Husch Blackwell report in March 2021.[77] While not a model of clarity, Plaintiffs seem to invoke both the doctrine of *contra non valentem* and the fraudulent concealment doctrine in asserting that LSU's actions and inactions "were actively concealed by the Defendant from Plaintiffs,"[78] that "LSU and its employees went to great lengths to

---

[73] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988) (citation omitted).

[74] *Allan*, 851 F.2d at 1528-29 (citing authority).  *See*, *Rx.com v. Medco Health Solutions, Inc.*, 322 Fed.Appx. 394, 397 (5th Cir. 2009) (citing *Allan*, 851 F.2d at 1531)).

[75] *Allan*, 851 F.2d at 1529 (quoting *Crummer Co. v. Du Pont*, 255 F.2d 425, 432 (5th Cir.1958)) (internal quotation marks omitted).

[76] R. Doc. 203 at p. 1; R. Doc. 203-1 at pp. 9-10.

[77] R. Doc. 211 at pp. 16-25 (citing *Doe 1*, 240 F. Supp. 3d 646, 662-63 (W.D. Tex. 2017)).

[78] R. Doc. 211 at pp. 23-25.  *See, Id*. at pp. 18-22.

ensure students did not understand their rights or LSU's obligations under Title IX,"[79] and that LSU and its employees "purposefully buried or ignored Plaintiffs' reports of assault and abuse."[80]  Plaintiffs claim that the Husch Blackwell report details "numerous significant actions and inactions by Sanders," including that he misrepresented why he did not want to issue a no-contact directive in Lewis' case, that he knew a significant amount of information about how much abuse Lewis had suffered, and his inappropriate actions and inactions in another Title IX investigation.[81]  In response, Sanders maintains that the § 1983 claims of Richardson, Andries, Lewis, and Hovis are time-barred.[82]

For the reasons set forth in the Court's February 17, 2023 Order and Reasons granting Jennie Stewart's Motion to Dismiss,[83] the Court finds that, on their face, all of § 1983 claims asserted by Richardson, Andries, Lewis, and Hovis against Sanders accrued outside the applicable one-year statute of limitations.[84]  Plaintiffs allege that Richardson was raped by an LSU football player during her freshman year at LSU, which began in the fall of 2014, that she was raped by a football recruit in the fall of 2015, that she was verbally and physically abused by LSU football player John Coe between the summer of 2016 and 2017 and had reported the abuse by October 2016, and that LSU football player John Doe attempted to rape her in the fall of 2016 and

---

[79] Id. at p. 25.
[80] Id.
[81] Id. at pp. 23-24 (citing R. Doc. 22-1 at pp. 78, 81, 83, 119-120).
[82] R. Doc. 227 at p. 6.
[83] R. Doc. 317 at pp. 13-18.
[84] For the reasons stated in the Court's prior orders granting the motions to dismiss filed by Jennie Stewart, Verge Ausberry, and Miriam Segar, the Court also finds that the' § 1983 claims asserted by Owens, Brennan, Johnson, Doe, Robertson, and Kitch against Sanders accrued outside the applicable one-year statute of limitations.  Id.  See, R. Docs. 317, 319, & 321.

she reported it to her direct supervisor the following day.[85]  Plaintiffs allege that Andries was sexually assaulted by John Roe on a fraternity bus trip in October 2016, that John Roe attempted to sexually assault her again in July 2017, and that she reported the first assault to her LSU therapist in the fall of 2017.[86]  Plaintiffs allege that Lewis was physically assaulted by John Coe at least six times between January 2017 and May 2018, and that she first disclosed the abuse to the tennis team athletic trainer in May 2017.[87]  Plaintiffs allege that Hovis was raped by LSU football player John Loe on January 24, 2020, that she immediately reported it to her Resident Assistant, that she reported that she believed she had been drugged, that she filed a report with LSUPD, and that Baton Rouge Police Department officers were called but refused to take a statement from Hovis.[88]

Plaintiffs' allegations are deeply disturbing.  Accepting Plaintiffs' allegations set forth in the Second Amended Complaint as true, all of the harassment and abuse alleged by Richardson, Lewis, Andries, and Hovis occurred between 2014 and February 2020,[89] which is more than a year before Plaintiffs filed this suit on April 26, 2021.[90]  But the Court's inquiry does not end there, as Plaintiffs argue that the Court should toll the statute of limitations based upon *contra non valentem* and the publication of the Husch Blackwell report in March 2021.  The Court finds, for the same reasons set forth in its three prior orders granting the motions to dismiss filed

---

[85] R. Doc. 182 at ¶¶ 121-122, 124-130, 147-162, 182-191.

[86] *Id.* at ¶¶ 364-373, 376-377, 381.

[87] *Id.* at ¶¶ 456-459, 462-467, & 477-479.

[88] *Id.* at ¶¶ 652-671.

[89] *Id.* at ¶¶ 121-122, 124-130, 147-162, 182-191, 364-373, 376-377, 381, 456-459, 462-467, 477-479, & 652-671.

[90] R. Doc. 1.

by Jennie Stewart, Verge Ausberry, and Miriam Segar, that the publication of the Husch Blackwell report does not support the application of *contra non valentem* to the facts set forth in this case.[91]

The Court likewise finds that the publication of the Husch Blackwell report does not support the application of the fraudulent concealment doctrine with respect to Sanders. While Plaintiffs never mention the phrase "fraudulent concealment" in their Opposition brief,[92] Plaintiffs seem to allege some sort of concealment by Sanders with respect to Andries, Richardson, Lewis, and Hovis. Regarding Andries, Plaintiffs allege that she met with Sanders on or about August 22, 2019, at Sanders' request, to discuss the appeals and sanctioning process concerning John Roe, during which Andries told Sanders that she was aware of a third student who had been assaulted by John Roe.[93] Plaintiffs allege that Sanders never contacted that student, never reported this incident to the police, to the Title IX Office, or to any other entity, and that Andries' report was never investigated.[94] Plaintiffs further allege that until the publication of the Husch Blackwell report, Andries could not have known that, "LSU, specifically Defendant Sanders, concealed information regarding John Roe's other victims."[95] Plaintiffs, however, do not allege that Sanders concealed any information from Andries that prevented *Andries* from realizing her cause of action against Sanders, which is the relevant inquiry for fraudulent concealment. Plaintiffs fail to

---

[91] R. Docs. 317, 319, & 321.
[92] *See, generally*, R. Doc. 211.
[93] R. Do. 182 at ¶¶ 422-424.
[94] *Id*. at ¶ 425.
[95] *Id*. at ¶ 450(a).

explain how Sanders' alleged failure to interview and/or report the abuse of someone other than Andries constitutes an affirmative act of concealment that prevented Andries from discovering her cause of action against Sanders in the exercise of due diligence until the publication of the Husch Blackwell report in March 2021. The Court therefore finds that Plaintiffs have not invoked the fraudulent concealment doctrine with respect to Andries and that her claims are time-barred.[96]

The Court reaches the same conclusion with respect to Richardson, Lewis, and Hovis. The only allegation made by Richardson against Sanders is that, "until the release of the [Husch Blackwell] Report in March 2021, Richardson could not have known that . . . LSU, including specifically Defendants Stewart, Sanders, and Segar, had specific knowledge of the pervasive sex discrimination and retaliation she and others suffered."[97] There are no other allegations made by Richardson against Sanders, much less any alleged affirmative acts of concealment by Sanders.[98] Regarding Lewis, Plaintiffs allege that Sanders interviewed John Coe on or about July 11, 2018 regarding his attack of Lewis on June 18, 2018, but not about any of the other assaults Lewis had reported.[99] Plaintiffs allege that in the early hours of June 18, 2018, Coe, who was intoxicated at the time, entered Lewis' apartment, jumped on her while she was sleeping in her bed, began strangling her, then hit Lewis and ripped an earring out of her ear.[100] Plaintiffs further allege that Lewis' roommate

---

[96] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528-29 (5th Cir. 1988) (citing authority). *See, Rx.com v. Medco Health Solutions, Inc.*, 322 Fed.Appx. 394, 397 (5th Cir. 2009) (citing *Allan*, 851 F.2d at 1531)).

[97] R. Doc. 182 at ¶ 240(a).

[98] *Id*. at ¶¶ 121-241.

[99] R. Doc. 182 at ¶¶ 518-519.

[100] *Id*. at ¶¶ 505-506.

woke up to Lewis screaming and called the police, and that LSUPD arrived and separated Lewis and Coe, but did not make any arrests.[101]  Plaintiffs allege that when Sanders interviewed Lewis approximately two weeks after interviewing Coe, she told Sanders that Coe had punched her in the past.[102]  Plaintiffs allege that, "At least three witnesses told Defendant Sanders about the full extent of John Coe's abuse of Plaintiff Lewis," including Lewis' roommate, one of Lewis' teammates, and Coe's roommate and teammate on the football team.[103]  Plaintiffs then allege that until the release of the Husch Blackwell report, Lewis could not have known that, "At least three witnesses told Defendant Sanders about the full extent of John Coe's abuse of Plaintiff Lewis, but Defendant Sanders only questioned John Coe about the June 18, 2018 incident."[104]  Plaintiffs, however, do not allege that Sanders concealed any information regarding Lewis' allegations of abuse.  In fact, Plaintiffs allege that Sanders did not do enough.  As noted earlier, the Fifth Circuit has advised that "Concealment by defendant only by silence is not enough.  [The defendant] must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry."[105]  Plaintiffs have not alleged such actions.  Accordingly, Plaintiffs have not invoked the fraudulent concealment doctrine with respect to Lewis and her claims are time-barred.[106]

---

[101] *Id*. at ¶¶ 507-508.

[102] *Id*. at ¶¶ 520-521.

[103] *Id*. at ¶¶ 523-526.

[104] *Id*. at ¶ 554(f).

[105] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1529 (5th Cir. 1988) (quoting *Crummer Co. v. Du Pont*, 255 F.2d 425, 432 (5th Cir.1958)) (internal quotation marks omitted).

[106] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528-29 (5th Cir. 1988) (citing authority).  *See*, *Rx.com v. Medco Health Solutions, Inc.*, 322 Fed.Appx. 394, 397 (5th Cir. 2009) (citing *Allan*, 851 F.2d at 1531)).

The Court reaches the same conclusion regarding Hovis.  Plaintiffs allege in the Second Amended Complaint that John Loe twice violated a no-contact directive issued by LSU by having his girlfriend contact Hovis in May 2020.[107]  Plaintiffs allege that, "This contact was reported to Defendants Stewart and Sanders, but LSU did not take any disciplinary action against Loe for violations of the no-contact directive."[108]  Plaintiffs again allege that Sanders was silent.  Hovis makes no other allegations against Sanders in the Second Amended Complaint, let alone any allegations of affirmative acts of concealment.  Thus, the Court finds that Plaintiffs have not invoked the fraudulent concealment doctrine with respect to Hovis and her claims against Sanders are time-barred.

Based on the foregoing, the Court finds that the statute of limitations is not equitably tolled as to the § 1983 claims asserted by Andries, Richardson, Lewis, or Hovis against Sanders and that their claims are time-barred.[109]

### C. Leave to Amend is Denied

In his Motion, Sanders asserts that he is entitled to summary judgment of Plaintiffs' claims and that Plaintiffs should not be given another opportunity to amend their allegations because they "have had three chances to make sufficient allegations against Defendant, but they have failed."[110]  Thus, Sanders argues any

---

[107] R. Doc. 182 at ¶¶ 653, 679, & 680.

[108] *Id*. at ¶ 681.

[109] Although the Court need not address the issue of qualified immunity because it has determined that all of Plaintiffs' § 1983 claims asserted against Sanders are time-barred, the Court notes that it previously determined that the other individual defendants, Jennie Stewart, Verge Ausberry, and Miriam Segar are entitled to qualified immunity as to all of Plaintiffs' § 1983 claims.  *See*, R. Docs. 317, 319, & 321.  Based upon the qualified immunity analysis set forth in the Court's three prior Orders, Sanders also would have been entitled to qualified immunity as to Plaintiffs' § 1983 claims.

[110] R. Doc. 203-1 at p. 14.

further efforts to amend would be futile.[111]  Plaintiffs do not request leave to amend their Second Amended Complaint in their Opposition brief, nor do they address Sanders' allegations regarding the futility of any further amendment.[112]

The Court agrees with Sanders and finds that granting leave to amend is not appropriate in this case under Fed. R. Civ. P. 15.  This Court will "freely give leave [to amend] when justice so requires,"[113] but leave to amend "is by no means automatic."[114]  In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[115]  "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[116]

Applying those factors here, the Court finds that any amendment would likely be futile in light of the fact that the Court has determined that all of Plaintiffs' § 1983 claims are time-barred.[117]  The Court further finds that granting Plaintiffs leave to amend would cause undue delay in this case.  More importantly, however, Plaintiffs have already been afforded two opportunities to amend their allegations,[118] and have

---

[111] *Id.*

[112] *See, generally*, R. Doc. 211.

[113] Fed. R. Civ. P. 15(a).

[114] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).

[115] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).

[116] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).

[117] *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)).

[118] *See*, R. Docs. 1, 22, 177, 180, 181, & 182.

repeatedly failed to cure the deficiencies through amendments previously allowed. Based upon the foregoing and exercising its discretion under Fed. R. Civ. P. 15, Plaintiffs will not be afforded a third opportunity to amend their claims against Sanders.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Jonathan Sanders' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)[119] is **GRANTED.**  All of Plaintiffs' claims asserted against Jonathan Sanders in Counts V, VI, and VII of the Second Amended Complaint are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, February 17, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[119] R. Doc. 203.