UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                              Case No.: 21-242-WBV-SDJ
*Plaintiffs*

                                                JUDGE WENDY B. VITTER
v.

                                                MAGISTRATE JUDGE JOHNSON
BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY                      JURY DEMANDED
AND AGRICULTURAL AND
MECHANICAL COLLEGE,
*Defendant.*

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

Now come Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch ("Plaintiffs"), through undersigned counsel, and respectfully submit this Memorandum in support of their Motion for Sanctions. Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("Board" or "Defendant") has failed to preserve relevant evidence and in doing so has violated both the December 10, 2021 Status Conference Report and Order (ECF No. 167) and the March 4, 2022 Agreed Order issued by this Court (ECF No. 207). Such bad faith actions taken by Defendant to obstruct the discovery process allow this Court to use its broad discretion in imposing sanctions, including a jury instruction granting an adverse inference, and an order that Defendant pay Plaintiffs' reasonable expenses, including attorney's fees, caused by Defendant's conduct. *See* Fed. R. Civ. P. 37(b) and 37(e).

FACTUAL AND PROCEDURAL BACKGROUND

On April 26, 2021, Plaintiffs filed this lawsuit against multiple defendants, including Julia Sell and Michael Sell. ECF No. 1. The Complaint alleged a pervasive culture of abuse, assault,

harassment, stalking, and a deeply flawed and harmful reporting system within Louisiana State University and Agricultural and Mechanical College ("LSU"). At the time the Complaint was filed, Julia and Michael Sell ("the Sells") were co-head tennis coaches of the LSU Women's Tennis team and LSU employees. *Id*. at ⁋⁋ 37-38.  The Sells' conduct and their communications with various persons were discussed throughout the original complaint, and upon information and belief, the Board retained counsel to represent the Sells in this matter. *See, e.g*., *Id*. at ⁋⁋ 37-38, 99, 105-06, 177, 181, 207, 209, 215, 217-18, 220, 222-27, 348, 352.

The Sells played a central role in the factual allegations, specifically those involving Plaintiffs Owens, Lewis, and Johnson, all former student athletes on the LSU women's tennis team while the Sells were co-head coaches. *See id*. at ⁋⁋ 99, 175, 214, 216. Plaintiffs Owens, Lewis, and Johnson alleged that the Sells engaged in sex discrimination, failed to properly report sexual misconduct (*see,* e.g., *id*. at ⁋⁋ 106, 177, 181, 224, 348), and retaliated against individuals who reported sexual misconduct (*see,* e.g., *id*. at ⁋⁋ 106, 177, 209, 217, 224, 225, 352). The Complaint alleged that the Sells engaged in actions that both directly discriminated against several Plaintiffs and indirectly perpetuated the discrimination experienced by several Plaintiffs. *See,* e.g., *id*. at ⁋⁋ 105-06, 209, 214-25, 227-29, 232, 352. Plaintiffs do not know what actions, if any, the Board undertook at the time the original Complaint was filed to ensure that relevant evidence would be preserved.

Between April 2021 and January 2022, one of the primary discovery issues negotiated between the parties involved the preservation of Electronically Stored Information ("ESI"). On or around December 10, 2021, these issues were raised with the Court and all parties were ordered to inform their clients to preserve ESI. ECF No. 167 at 3 ("Counsel also discussed with the Court their concerns regarding the preservation of electronically stored information and suggested that

the Court issue a protective order regarding same. The Court advised counsel that it will discuss the issue with Magistrate Judge Johnson, but instructed all counsel to inform their clients to preserve electronically stored information."). Plaintiffs do not know what actions, if any, the Board undertook at this time to ensure that relevant evidence was preserved.

On January 17, 2022, Plaintiffs filed the Second Amended Complaint, in which the Sells were no longer named defendants. ECF No. 182. However, the Sells' actions, inactions, and communications are still relevant to Plaintiffs' claims against the Board as identified throughout the Second Amended Complaint. *See,* e.g., *id.* at ¶¶ 327, 340-343, 455, 459-461, 471-475, 542-543, 547, 554, 557-559, 563-592, 596.

On January 21, 2022, the Board filed a Motion stating that that "plaintiffs and defendants in this litigation have met and conferred on the protective order and ESI order which are both attached herewith…," "Plaintiffs and defendants recognize that discovery is likely to seek…information of…nonparties…" "The parties also recognize the need for a uniform set of protocols for the collection and production of ESI data…," and "The parties believe they have a general agreement as to the protective order and agreed ESI order…," and requested that this Court issue an Agreed Order regarding the preservation of ESI. ECF No. 197. On March 4, 2022, this Court granted the Board's motion and issued the operative Agreed Order regarding the preservation and production of ESI ("ESI Order"). ECF No. 207. The ESI Order confirmed the parties' "duty to implement a 'litigation hold' and ensure the preservation of relevant documents…. *Id.* at ¶ 1. Plaintiffs do not know what actions, if any, the Board undertook at this time to ensure that relevant ESI was preserved.

In or around April 2022, the Sells left their employment at LSU. On July 9, 2022, Plaintiffs issued a subpoena *duces tecum* to the Sells requesting that they produce documents and electronic

data, including relevant text messages from each of their mobile phones.[1] On August 25, 2022, the Sells objected to Plaintiffs' subpoenas, stating that they were no longer in possession of their mobile phones from the relevant period and could not provide the requested messages. Michael Sell's objections included the following statement:

> Sell was required to return his official LSU email account, phone, and phone number used for texts from his LSU issued mobile phone and he can, therefore, provide no responses that may be contained therein, including any text messages other than those texts for which he previously saved "screen shots."[2]

Julia Sell provided a substantially identical response, stating that she was no longer in possession of her LSU-issued phone, as it had been returned to LSU. Therefore, she could not provide the requested information in response to the subpoena.

During the same period, the parties were producing discovery. On or around June 14, 2022, the Board produced a copy of its "University Archives General Retention Schedule" ("Retention Policy") which states that copies of all university records are retained/destroyed in accordance with the guidelines stated therein. Exhibit 1 at BOS-000032.[3] The Retention Policy requires that staff records are to be retained for "2 years after termination or until final disposition of charge or civil action." Exhibit 1 at BOS-000033. The Retention Policy does not describe the method of retaining these records.

---

[1] The subpoenas specifically requested, "Please produce any and all communications, including but not limited to text messages and messages from any other social media communications applications such as Facebook Messenger, Signal, Whatsapp, etc., sent or received by you, from January 1, 2013 to present, related to the following topics: Abby Owens, Ashlyn Richardson, Corrin Hovis, Elisabeth Andries, Jade Lewis, Kennan Johnson, Jane Doe, Samantha Brennan, Sarah Beth Kitch, [John Coe, John Doe, and John Loe], and/or Title IX." A copy of the subpoena has not been filed as an exhibit to this Motion because of the Protective Order issued in this case (Doc. 206) and in the interests of judicial efficiency. The names of persons identified by pseudonyms in the complaints have been redacted from this Motion by use of the same pseudonyms. The identities of these persons are not determinative of any issue related to this Motion.

[2] A copy of these objections has not been filed as an exhibit to this Motion because of the Protective Order issued in this case (ECF No. 206) and in the interest of judicial efficiency.

[3] Although the Record Retention Policy is marked as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," the policy may be found by a simple internet search and contains no confidential information that would require redaction or filing under seal. *See* ECF No. 206 at ¶ 6.

On September 6, 2022, following receipt of the Sells' subpoena responses stating that the mobile phones containing their text messages were in LSU's possession, counsel for Plaintiffs contacted to counsel for the Board to request that the text messages be provided, specifically referencing the Sells' subpoena responses. Exhibit 2 at 4.[4]  On September 8, 2022, counsel for the Board replied stating they hoped to have an update soon about the Sells' mobile phone data. *Id*. at 3. On September 15, 2022, having heard nothing, Plaintiffs' counsel asked counsel for the Board about the status of the Sells' mobile phones. *Id*. On September 16, 2022, counsel for the Board replied: "In reference to the status of the information from the Sells devices, we are working to gather the available information and will get it to you as soon as possible. We hope to be in a position to share the available data by early next week." *Id*. at 2.

On October 12, 2022, after almost a month with no response, Plaintiffs' counsel again contacted counsel for the Board asking for an update as to the status of the data contained on the Sells' mobile phones. *Id*. at 1. Counsel for the Board did not respond to that message. *See id*. On October 19, 2022, Plaintiffs' counsel contacted counsel for the Board again – the fourth communication in a span of over a month – asking about the progress the Board was making on obtaining the Sells' mobile phones. *Id*. at 1. On October 24, 2022, counsel for the Board responded and stated that they would not be providing any additional information. *Id*. Specifically, counsel for the Board wrote:

> With respect to text messages, we have investigated whether the mobile phones could be searched by LSU. The only information retrievable by LSU on the mobile phones is a call/text log which indicates incoming/outgoing telephone numbers and the call/text time. The records from Verizon are also limited to August 2021-May 2022.  We are willing to produce the call/text log to you which contains that information, but otherwise the Board does not possess the data you are seeking.

---

[4] Information not relevant to this Motion has been redacted. *See* ECF No. 206 at ¶ 6.  For unknown reasons, upon redaction, some of the alphabetical letters in the original email were also deleted from the PDF document.

*Id.* Plaintiffs' counsel replied that day asking counsel for the Board to explain the location of the mobile phones. *Id.*  Again, Counsel for the Board did not respond. *See id.*

That same day, on October 24, 2022, Plaintiffs served the Board with a Request for Production and Interrogatories. Exhibit 3 at 12.[5] Plaintiffs' Request for Production No. 33 reads: "Please produce copies of all records regarding to the mobile phones issued to Michael Sell and Julia Sell as previously discussed between counsel." *Id.* Plaintiff's Interrogatory No. 6 reads: "Please identify all custodians of the mobile phones issued to Michael Sell and Julia Sell from April 26, 2021 to the present, including the transferor, transferee, and date of transfer." *Id.*

On November 23, 2022, the Board responded to Plaintiffs' October 24 discovery requests. In response to Request for Production No. 33, the Board provided call logs from its service provider, Verizon, as described in counsel for the Board's prior correspondence.  Call log records are not responsive to Request for Production No. 33, as the discussion between counsel was related to Plaintiffs' counsel's request for text messages, not phone call logs.  In response to Interrogatory No. 6, the Board wrote:

> The Board objects to Interrogatory No. 6 on the grounds that it is overly broad; unduly burdensome; seeks information which is irrelevant, immaterial and not proportional to the needs of this case; and is vague and ambiguous. In particular, as worded, the request is not limited to "custodians" of cell phones issued by LSU to Michael Sell and Julia Sell; and the term "custodian" is undefined and unclear. Subject to these objections, according to the best recollection of LSU's IT staff, Michael Sell returned his LSU-issued cell phone by leaving it on a ledge in the IT office with a post-it note indicating that the cell phone was issued to Michael Sell. LSU IT staff further indicated that it believes that Julia Sell came to the IT office and hand-delivered her LSU-issued cell phone. However, LSU is uncertain to whom Mrs. Sell physically handed her LSU-issued cell phone. The cell phones issued to Mr. and Mrs. Sell remained in the LSU IT office until approximately September 21, 2022, at which time the cell phones were placed in a safe in the LSU IT office. The cell phones have remained in the safe since September 21, 2022.

---

[5] Discovery requests and definitions not relevant to this Motion have been redacted. *See* Doc. 206 at ¶ 6.

Exhibit 4 at 10-11. This is not responsive to the interrogatory, as no information is provided as to who "wiped" the mobile phones.

On December 7, 2022, counsel for Plaintiffs contacted counsel for the Board to notify them that Plaintiffs planned to file a motion for sanctions regarding the spoliation of the Sells' cell phone evidence on December 12, 2022, and requested that counsel for the Board speak with counsel for Plaintiffs via phone to see if the matter could be resolved without litigation. Exhibit 5 at 2.

On December 9, 2022, counsel for Plaintiffs and counsel for the Board spoke via phone regarding this matter. During this call, Attorney Karleen Green told counsel for Plaintiffs that the Board had distributed a litigation hold document, but she did not state exactly what the document said or to whom it was distributed. Attorney Green said counsel for the Board was trying to figure out what happened to the Sells' mobile phones and said that counsel for the Board had asked LSU staff what had happened to the phones after the Sells returned them to LSU. Attorney Green said the phones were put into the "arsenal" where phones are put when they are returned to LSU. Attorney Green said that the Sells' relevant emails had been produced to Plaintiffs through the discovery process. Attorney Michael Victorian said the Board did not have any reason to think anything had been withheld or not turned over to LSU by the Sells. Attorney Green said counsel for the Board had been in discussions with LSU's IT department and had not gotten any information to indicate that there was anything deleted from the Sells' mobile phones. Attorney Green asked what specifically counsel for Plaintiffs was looking for. Attorney Elizabeth Abdnour said that Plaintiffs' counsel was looking for confirmation that nothing was deleted and that the Board had provided everything that was responsive on the mobile phones. Based on that conversation, counsel for Plaintiffs understood that the Board did not believe the Sells had deleted anything or that anyone at LSU had deleted anything on the mobile phones.

On December 13, 2022, Plaintiffs' counsel sent counsel for the Board copy of the Sells'

subpoena responses to counsel for the Board, stating that they returned their phones. Exhibit 6 at

11.[6] After several communications in which counsel for the Board asserted that they were working

with LSU to resolve the issue, they then sent the following email to Plaintiffs' counsel on January

20, 2023:

> We followed up with our client regarding the availability of data related to the Sells'
> mobile phone records. LSU's IT department was unable to retrieve any of the data
> on its own, so the department took the additional step of reaching out directly to the
> service provider – Verizon. Verizon is not able to access additional data either. The
> wireless provider only retains text message data for one year. So, while LSU was
> able to recover call logs dating back to 2012 for Julia Sell and 2015 for Michael
> Sell, the accompanying text message data is not available. Moreover, because
> Verizon only retains text message data for one year, any data relevant to Kennan
> Johnson, Abby Owens, and Jade Lewis would have been unavailable well before
> the lawsuit was filed.  We can confirm that we have provided you with all the
> mobile phone information available to us.

*Id*. at 5. Counsel for the Board's response failed to offer any explanation as to why the texts were

no longer on the Sells' mobile phones, which were admittedly in LSU's possession.  Counsel for

the Board's assertion that "because Verizon only retains text message data for one year, any data

relevant to Kennan Johnson, Abby Owens, and Jade Lewis would have been unavailable well

before the lawsuit was filed" is also inaccurate because Plaintiffs were not seeking records from

Verizon – Plaintiffs were seeking the actual data stored on the cell phones, which can be

maintained for any length of time unless it is deleted or destroyed.  In fact, multiple defendants

and third parties in this matter have produced to Plaintiffs text messages that were sent more than

one year ago in response to Plaintiffs' discovery requests.  Therefore, the idea that the information

requested "would have been unavailable well before the lawsuit was filed" is simply wrong.  Later

that day, because it was clear that counsel for the Board either did not understand or was unwilling

---

[6] Information not relevant to this Motion has been redacted. *See* ECF No. 206 at ⁋ 6.  For unknown reasons, upon
redaction, some of the alphabetical letters in the original email were also deleted from the PDF document.

to respond appropriately to Plaintiffs' requests in their subpoenas to the Sells, Plaintiffs' counsel requested the opportunity to personally inspect the phones with their technology experts so they could either retrieve the messages directly from the phones or identify when and/or how the text messages were deleted or destroyed. *Id.* at 4.

On or about January 25, 2023, Plaintiffs' attorney Endya Hash retrieved the Sells' two mobile phones from counsel for the Board's law offices. Upon inquiry, Phelps Dunbar paralegal Camille Schwaner told Attorney Hash it was their understanding that the phones were reset to factory settings. Both mobile phones had Post-it notes attached, identifying which had belonged to Mike Sell and which had belonged to Julia Sell. The Post-it note attached to Julia Sell's mobile phone indicated that it had been "wiped." Exhibit 7. When turned on, neither mobile phone contained any text messages or call logs nor any data at all. When Plaintiffs' technology expert reviewed the cell phones personally, he confirmed that they had been reset to factory settings and advised counsel for Plaintiffs that the data could only be recovered by software that is only legally available to law enforcement or by engaging in a lengthy recovery process that would not only require both the Board and the Sells' full cooperation, but also would not guarantee successful recovery.

The same day, Plaintiffs' counsel picked up the Sells' mobile phones, counsel advised counsel for the Board that because of the "wiping" of the Sells' phones, Plaintiffs' counsel would be adding the additional topic of "chain of custody and actions taken with regard to the Sells' mobile phones" to the previously scheduled Rule 30(b)(6) deposition of the Board. Exhibit 6 at 1. Plaintiffs' counsel also informed Defense counsel that the apparent "wiping" of the Sell's mobile phones was a violation of the March 4, 2022, ESI order, entered at least a month before the Sells departed from their role at LSU in or around April 2022, and highlighted the lack of response by

Defense counsel on this issue, which Plaintiff's counsel last raised in their October 24, 2022, email correspondence. Exhibit 6 at 1. Counsel for the Board did not respond. See *id*.

Julia Sell's deposition took place on January 30, 2023. Julia Sell stated under oath that she returned her mobile phone to LSU shortly after she and Mike Sell left their employment at LSU, around May of 2022. Exhibit 8, Deposition of Julia Sell at 211:11-212:3. She further testified that she saved everything on her phone "[a]s soon as the litigation started and [the] Husch Blackwell [investigation] started[.]" *Id*. at 212:14-19. Lastly, Julia Sell confirmed that she never reset her mobile phone to its factory settings. *Id*. at 213:6-8. To this date, the Board has not provided any text messages from either of the Sells' mobile phones, any documentation resulting from a search of those phones, any explanation as to why the contents of the phones was not preserved for litigation purposes, nor any explanation as to why the phones were wiped in violation of the Court orders issued in this matter. Instead, the Board has spent almost six months dodging questions from Plaintiffs' counsel about what happened to the contents of the mobile phones, only to ultimately tell Plaintiffs that the Board is no longer in possession of relevant evidence with no explanation as to how such a situation came to pass.

## LAW AND ARGUMENT

"Spoliation is a serious offense and a party's intentional destruction of relevant evidence threatens the sanctity and spirit of the judicial process." *Union Pump Co. v. Centrifugal Tech., Inc.,* 404 F. App'x 899, 906 (5th Cir. 2010). Common law, LSU's Retention Policy, and the relevant Court orders created a duty upon the parties to preserve potentially relevant information, and the Federal Rules of Civil Procedure ensure a District Court's ability to enforce this duty through a broad array of possible sanctions. *See Vick v. Texas Employment Com'n*, 514 F.2d 734, 737 (5th Cir. 1975); Fed. R. Civ. P. 37 Committee Note to 2015 amendment. Once a court

determines that ESI has been destroyed, it may then consider imposition of the appropriate responsive measure. *Ocean Sky Int'l, L.L.C. v. LIMU Co., L.L.C.*, No. 3:18-CV-00528, 2021 WL 1971505, at *11 (W.D. La. Apr. 16, 2021), *report and recommendation adopted*, No. 3:18-CV-00528, 2021 WL 1966833 (W.D. La. May 17, 2021).

## I.    THE BOARD'S FAILURE TO RETAIN ESI AND SPOLIATION OF EVIDENCE

The Board has breached its common law duty, acted adversely to its own Retention Policy, and violated both Fed. R. Civ. P. 37 and Court orders by destroying highly relevant ESI, and this Court must preserve the sanctity and spirit of the judicial process by sanctioning the Board appropriately. Federal Rule of Civil Procedure 37(e) empowers courts to impose sanctions for failure to preserve ESI:

> (e) If ESI that should have been preserved in the . . . conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>> (A) presume that the lost information was unfavorable to the party;
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>> (C) dismiss the action or enter a default judgment.

To sanction a party for the loss of ESI, Rule 37(e) requires that:

> (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a *culpable state of mind*; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Mixon v. Pohlman*, No. CV 20-1216, 2022 WL 2867091, at *5 (E.D. La. July 21, 2022) (quoting

*Thomas v. Tangipahoa Par. Sch. Bd.*, No. CV 14-2814, 2016 WL 3542286, at *1 (E.D. La. June

29, 2016) (quoting *Thermotek, Inc. v. Orthoflex, Inc*., No. 3:11-CV-870-D BF, 2015 WL 4138722,

at *12 (N.D. Tex. July 7, 2015))); *Smith v. Lee*, No. CV 19-1261, 2022 WL 1207145, at *4 (W.D. La. Apr. 22, 2022); *Barnett v. Deere & Co.*, Civil Action No. 2:15-CV-2-KS-MTP (S.D. Miss. 2016) (quoting *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d, 615-16 (S.D. Tex. 2010)). Some District Courts also consider "four predicate elements," which substantially overlap with the three-part inquiry: 1) the existence (at least at one time) of ESI that should have been preserved; 2) the ESI has been lost; 3) the ESI was lost because of a party's failure to take reasonable steps to preserve it; and 4) the ESI cannot be restored or replaced. *Richard v. Inland Dredging Co., LLC*, Civ. Action No. 15-0654, 2016 WL 5477750, at *3–4 (W.D. La. Sept. 29, 2016); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, Civ. Action No. 17-365, 2019 WL 4738915, at *1 (W.D. Tex. Sept. 27, 2019).

### a. The Board Had an Obligation to Preserve the Information Stored on the Sells' Mobile Phones

The Board had a duty to preserve ESI from the Sells' LSU-issued phones under common law, Fed. R. Civ. P. 37, its own policies, and the Court orders issued in this case. "It is axiomatic that a party must preserve materials that it reasonably knows or can foresee would be material to a legal or potential legal action." *Weatherspoon v. 739 Iberville, LLC*, No. CV 21-0225, 2022 WL 824618, at *6 (E.D. La. Mar. 18, 2022) (citing *Consolidated Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006)). "A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).

It is undisputed that the Board came into possession of the Sells' mobile phones when their employment with LSU terminated around April 2022. At that time, this lawsuit had been proceeding for about one year, and the Board knew that the Sells had originally been named Defendants in this lawsuit. *See*, e.g., ECF No. 1 at ¶¶ 37-38, 99, 105-06, 177, 181, 207, 209, 215,

217-18, 220, 222-27, 348, 352. The Board knew of the Sells' involvement in the litigation and knew that the evidence contained in their mobile phones would be of the utmost importance based on the allegations detailed in the Complaint. The Board was on notice that the information contained in those mobile phones would be relevant, if not essential, to Plaintiffs' ability to prove their claims. Thus, the Board should have preserved relevant ESI on the Sells' LSU-issued mobile phones when it came into their possession in or around April or May 2022.

Further, the Board produced its own document retention policies during discovery. Those policies establish duty to preserve personnel documents for a minimum of "2 years after termination or until final disposition of charge or civil action." Exhibit 1 at BOS-000033. The Sells left LSU in or around April 2022, and this litigation was ongoing at that time. Thus, the Board should have preserved information on the Sells' LSU-issued mobile phones from the time it came into possession of the mobile phones until at least the end date of this civil action.

Additionally, in March 2022, in response to the Board's motion, this Court issued the ESI Order that was negotiated between all parties. ECF Nos. 197 and 207. The ESI Order specifically reiterates the common law obligation to preserve ESI by stating that it does not modify the common law "duty to implement a 'litigation hold' and ensure the preservation of relevant documents once the party reasonably anticipates litigation." ECF No. 207 at ¶ I.1. The ESI Order then enumerates the only categories of ESI that parties are not required to preserve, including: "Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices *provided* that a copy of all such electronic data is saved in an accessible format elsewhere (such as on a server, laptop, desktop computer, or cloud storage)." *Id.* at ¶ I.2.viii. Thus, the Board explicitly requested that the Court issue an order requiring both parties to preserve ESI found on mobile devices, as opposed

to the mobile device itself. This is the ESI Plaintiffs seek, and this scenario was addressed by the ESI Order.

The Sells testified under oath that they did not delete or "wipe" their mobile phones prior to returning them to LSU.  Yet, as the phones themselves demonstrate, they were "wiped."  The Board had an obligation to preserve the ESI on the Sells' LSU-issued phones in accordance with the ESI Order, the issuance of which the Board itself moved this Court.

### b.  The Information Cannot Be Restored or Replaced Through Additional Discovery

Plaintiffs are certain that collection of the information in question through additional discovery, if possible, is cost-prohibitive. The specific information Plaintiffs seek are various text and other social media messages exchanged between the Sells and students, staff, and/or other third parties regarding the facts of this case. These text messages are relevant to establish whether the Board created or encouraged a hostile environment on the women's tennis team and/or whether the Board was deliberately indifferent towards disclosures or reports of sexual misconduct. Upon information and belief, text and social media messaging was a common communication method for the Sells.  Further, upon information and belief, the Sells failed to report known incidents of sex discrimination and encouraged sex discrimination against unfavorable student athletes.

Plaintiffs cannot reasonably subpoena each possible individual who may have exchanged text or social media messages with the Sells for at least the past 5 years to request that they not only produce messages between themselves and the Sells, but also produce the metadata accompanying those messages. Not only is the extraction of metadata from a mobile phone a strenuous and costly task for a non-party, but these non-parties have not been under any obligation to retain preserve relevant ESI and have not likely preserved these communications.  Further, Plaintiffs do not even know the identities of all the individuals with whom the Sells may have

communicated information relevant to this matter.  The ESI that was captured by and stored on the Sells' LSU-issued mobile devices, which was deleted by the Board and/or due to the Board's failure to comply with its evidence preservation obligations, was the only comprehensive source of this information.

The Sells' call logs and selected emails from the Sells' LSU accounts, which have been provided by the Board, are insufficient responses to this discovery request for several reasons. Email and text message are distinct forms of communication with separate purposes and formalities.  As the substantial evidence in this case has already shown, there is significant information contained in text and social media messages that is not contained in other forms of communication such as email or letters.  Further, several Plaintiffs themselves have direct experience communicating with the Sells via text and social media messaging and know that the Sells frequently commonly communicated relevant information via these methods and not via email.

Finally, Plaintiffs' experts have identified that the only possible method of extracting this information would require substantial participation by the Sells themselves and require them to share highly personal information related to various user accounts. The Sells have not been willing participants to this litigation, to the point of objecting to service of their deposition subpoenas, repeatedly attempting to reschedule their depositions, and requesting special relief from the Court prior to sitting for their depositions. Thus, participation by the Sells is unlikely without substantial and costly motion practice.

### c.  The Board Destroyed the Information in Bad Faith

Bad faith is generally defined as "destruction for the purpose of hiding adverse evidence." *Guzman*, 804 F.3d at 713. "[B]ad faith may be inferred by evidence that a party has misrepresented the existence of documents or allowed the destruction of documents, and had explanations of

spoliation that were not credible." *Mixon v. Pohlman*, No. CV 20-1216, 2022 WL 2867091, at *5 (E.D. La. July 21, 2022) (quoting *Dixon v. Greyhound Lines, Inc*., No. CIV.A. 13-179-JWD, 2014 WL 6087226, at *2 (M.D. La. Nov. 13, 2014)) (citing *Ashton v. Knight Transp., Inc*., 772 F. Supp. 2d 772, 802-03 (N.D. Tex. 2011) (concluding that defendants purposefully engaged in a concerted effort to destroy evidence by failing to preserve messages between the employee and the company in the hours and days surrounding the operative facts, despite a law enforcement request to preserve them)). A court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, and other factors. *Lou v. Lopinto*, No. CV 21-80, 2022 WL 16685539, at *7 (E.D. La. Nov. 2, 2022).

In the present case, the Board has admitted to intentionally wiping all data from the mobile phones by having its IT department reset those phones to the factory settings. When Attorney Hash retrieved the mobile phones from Phelps Dunbar on or about January 25, 2023, Julia Sell's mobile phone was labeled with a Post-it note stating the phone had been "wiped," and Ms. Schwaner confirmed verbally to Attorney Hash that the mobile phones had been reset to factory settings. Julia Sell confirmed during her deposition that her phone still had information on it and it was not reset to factory settings while in her custody. Exhibit 8, Deposition of Julia Sell at 212:14-213:8. The Board has provided no explanation as to how two mobile phones that were in the possession of key witnesses as recently as April 2022 were wiped of all data. In fact, the Board has provided information that directly contradicts this reality, indicating that the mobile phones "remained in the [LSU IT office] safe since September 21, 2022." Exhibit 4 at 11.

Further, the Board produced its own routine data retention policy that clearly states that ESI is never automatically destroyed upon an employee's termination. That the Board's affirmative destruction of information in direct opposition to its established policy is strong

evidence of bad faith. *See Mixon v. Pohlman*, No. CV 20-1216, 2022 WL 2867091, at *5 (E.D. La. July 21, 2022) (considering the existence of a company policy to determine whether information was destroyed in bad faith); *Lou v. Lopinto*, No. CV 21-80, 2022 WL 16685539, at *7 (E.D. La. Nov. 2, 2022) (citing *Ralser v. Winn Dixie Stores, Inc*., 309 F.R.D. 391, 397 (E.D. La. 2015)). This evidence permits the Court to make the clear inference that the Board, at the very least, "allowed the destruction of documents" and other evidence relevant to the present suit. *Mixon v. Pohlman*, WL 2867091 at *5. Because the Board has not provided any explanation for the loss of this important information while the mobile phones were in its possession, this Court may draw a reasonable inference of bad faith. *See Moore v. CITGO Ref. & Chemicals Co., L.P*., 735 F.3d 309, 316 (5th Cir. 2013) (finding no abuse of the district court's discretion to infer bad faith when the party was aware of the Court's prior rulings and nevertheless failed to conduct themselves in accordance with them). Based on the facts, the only reasonable conclusion to be drawn is that the Board purposefully destroyed relevant evidence, demonstrating bad faith.

### d. The Information Is Relevant and Its Destruction Prejudices Plaintiffs

The missing ESI is relevant to the Plaintiffs' claims and may also be the only documentary evidence regarding facts currently in dispute. Relevancy is determined by whether the information has any tendency to make a fact of consequence more or less probable than it would be without the information. Fed. R. Evid. 401; *Rimkus*, 688 F. Supp. 2d at 617. In this case, the Sells are central witnesses, and the times at which they learned of various facts triggering their duty to report potential sexual misconduct is a central question in this litigation. Examples of facts in dispute that could be clarified by information that was contained in the Sells' mobile phone data includes:

- When Julia Sell became aware that John Doe had raped Plaintiff Owens

- Whether Julia Sell told Plaintiff Owens' father that she did not believe Owens had been raped by John Doe

17

- Whether Julia and/or Mike Sell encouraged other student athletes to retaliate against Plaintiffs Lewis and/or Johnson

- Whether and when Julia and/or Mike Sell became aware of John Coe's abuse of Plaintiff Jade Lewis

- Whether Mike Sell told Plaintiff Lewis's father that John Coe's abuse of Plaintiff Lewis was not possible

- Whether Julia Sell discussed Plaintiff Johnson's weight and/or sexual orientation with other individuals.

These examples, among many others, constitute information that tends to make a fact of consequence more or less probable than it would be without such information. Thus, the ESI sought by Plaintiffs is relevant.

Because the information was destroyed in bad faith, this Court may assume Plaintiffs are prejudiced. "If the intent to deprive is found, prejudice is presumed, and the court may impose an adverse inference, dismiss the action or enter a default judgment." *In re Marquette Transportation Co. Gulf-Inland, LLC*, No. 6:18-CV-01222, 2022 WL 393640, at *1 (W.D. La. Feb. 8, 2022). Although Fed R. Civ. P. 37 requires a finding of prejudice before sanctions may be issued, "[c]ourts recognize that '[t]he burden placed on the moving party to show that the lost evidence would have been favorable to it ought not be too onerous, lest the spoliator be permitted to profit from its destruction.'" *Mixon v. Pohlman*, No. CV 20-1216, 2022 WL 2867091, at *5 (E.D. La. July 21, 2022) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 616 (S.D. Tex. 2010) (quoting *Chan v. Triple 8 Palace, Inc*., No. 03CIV6048(GEL)(JCF), 2005 WL 1925579, at *7 (S.D.N.Y. Aug. 11, 2005))).

Here, Plaintiffs can only speculate as to what information was contained on the Sells' mobile phones. Based on the personal experiences of some of the Plaintiffs, Plaintiffs reasonably suspect that the Sells' text and social media messages would have contained information relevant to this case. The fact that the Board destroyed this information negatively prejudices Plaintiffs' ability to prove the claims they assert in their Complaint.

## II.    APPROPRIATE SANCTIONS

The Federal Rules of Civil Procedure provide two avenues for a court to apply sanctions for a party's failure to retain relevant ESI: Rule 37(b) and Rule 37(e). Pursuant to these Rules, Plaintiffs ask this Court to order an adverse inference jury instruction and to issue monetary sanctions in the form of attorney's fees against the Board.

### a.    Adverse Inference

Pursuant to Fed. R. Civ. P. 37(e), the Court must issue sanctions sufficient to cure the prejudice to Plaintiffs. "Courts have broad discretion in crafting a remedy that is proportionate to both the culpable conduct of the spoliating party and resulting prejudice to the innocent party." *Mixon v. Pohlman*, No. CV 20-1216, 2022 WL 2867091, at *6 (E.D. La. July 21, 2022) (citing *Ashton*, 772 F. Supp 2d at 801). Among the measures that may be considered are "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist it in its evaluation of such evidence or argument." Committee Note on Rules—2015 Amendment to the Federal Rules of Civil Procedure, available at https://www.law.cornell.edu/rules/frcp/rule_37. Usually, "a finding of bad faith or willful misconduct [is required] to support the severest remedies under Rule 37(b)—striking pleadings or dismissal of a case[,]" but lesser sanctions do not require a finding of willfulness. *Allemang v. Louisiana*, No. 2:19-CV-0128, 2022 WL 15085614, at *2 (W.D. La. Oct. 25, 2022) (quoting *Smith*

19

& *Fuller*, 685 F.3d at 488 (quoting *Pressey*, 898 F.2d at 1021) (brackets in original)) (citing *Chilcutt v. United States*, 4 F.3d 1313, 1322 n. 23 (5th Cir. 1993)). Here, the Court should "presume that the lost information was unfavorable to the party" and "instruct the jury that it may or must presume the information was unfavorable to the party" as appropriate sanctions for the destruction of this important evidence. Fed. R. Civ. P. 37(e)(2)(a) and (b).

In *Yelton v PHI, Inc*., an instruction for an adverse inference be given to the jury was issued as sanctions for a party's bad faith spoliation of evidence. *Yelton v. PHI, Inc*., 279 F.R.D. 377, 394 (E.D. La. 2011), *objections overruled*, 284 F.R.D. 374 (E.D. La. 2012). In *Yelton*, the plaintiff was severely injured during a helicopter crash and brought a products liability claim against the helicopter's manufacturer and retailer. *Id*. at 380. Two days after the accident, the manufacturer voluntarily instituted a litigation hold directed to employees who may have had information about the helicopter. *Id*. Soon after, the manufacturer rehired a former engineer, did not advise the engineer of the litigation hold, and instructed the engineer to conduct an analysis of a simulation of the conditions of the crash. *Id*. The engineer created two internal reports containing his analysis of the simulation. *Id.* at 384. The plaintiff then sued the manufacturer, but the manufacturer unreasonably delayed the disclosure of any of the engineer's reports, and because the engineer was not notified of the litigation hold, certain information used in his reports was lost when he got a new computer. *Id.* at 384, 386. The manufacturer explained the spoliation by stating that the information had just "slipped beneath the waves." *Id.* at 377, 384. Here, the Board came into full control and possession of the Sells' mobile phones many months after it became aware that a litigation hold was necessary. As the Board has yet to provide any explanation for the loss of this information, a generous interpretation of the facts may be that the information contained on the Sells' mobile phones also just "slipped beneath the waves." *Id*.

In *Yelton*, the court used its inherent authority to impose sanctions because the amendment to Fed. R. Civ. P. 37 regarding ESI had not yet been enacted, and the manufacturer had not violated any discovery orders in the case. *Id.* at 385. The court's analysis has since been codified in Rule 37(e). Further, the Board violated both Court orders and its own document retention policies. Thus, the court's analysis in *Yelton* is instructive, and it found that the manufacturer had, in fact, spoliated certain relevant evidence. *Id.* at 391.

In determining the manufacturer's culpability, the *Yelton* court found both bad faith and prejudice to exist. *Id.* at 391 (citing *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir.2005); *Whitt v. Stephens County*, 529 F.3d 278, 284 (5th Cir. 2008) ("[A] jury may draw an adverse inference 'that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party.'" (quoting *Russell v. Univ. of Tex. of the Permian Basin*, 234 Fed. Appx. 195, 207 (5th Cir.2007)))). The court inferred the manufacturer's culpability because the litigation hold's necessity and the relevance of the engineer's simulation data were obvious, because a litigation hold had already been issued and the engineer was hired specifically for the purpose of analyzing a simulation of the accident that has resulted in the litigation. *Id.* at 392 ("It defies logic to think that [manufacturer's counsel], who was responsible for circulating discovery inquires [sic] internally to key people, failed to recognize the importance of [the engineer's] simulation analysis and the data used in conducting the analysis for over a two-year period."). Under those facts, the only plausible reason the court could find for the manufacturer not preserving the underlying data was because the results of the simulation were not on their face favorable, and therefore adverse to the manufacturer's interests. *Id.*

Similarly, the Board's culpability should be inferred from the following facts: the Board requested, and this Court ordered, a litigation hold; and that the Sells, as former Defendants and

current key witnesses, would have relevant communications and information on their LSU-issued mobile phones. The Board's culpability can be further inferred by counsel for the Board's labeling of Julia Sell's phone as "wiped" and their admission to Plaintiff's counsel that the phones were reset to factory settings. Exhibit 7. Lastly, Julia Sell's sworn testimony at her deposition confirmed that she was the last person in possession of her mobile phone before it was returned to LSU, and she was not the one who reset her mobile phone to factory settings. Exhibit 8, Deposition of Julia Sell at 211:11-212:3; 213:6-8.

In *Yelton*, the court found that the volume and substance of the missing information remained uncertain, and "[b]ecause we do not know what has been destroyed, it is impossible to accurately assess what harm has been done to the [innocent party] and what prejudice it has suffered." *Yelton*, 279 F.R.D. at 392 (quoting *Pension Comm. of the Univ. of Montreal Pension Plan*, 685 F.Supp.2d at 478). The same statement could be used to describe the data lost from the Sells' mobile phones in the present case.

In *Yelton*, to determine the sanctions necessary to cure the prejudice caused by the manufacturer's spoliation, the court sought to "restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.* at 393 (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779 (2d Cir. 1999) (quotation omitted)). Because the disclosure of the reports eventually occurred and the only data lost permanently was the data relied upon by the engineer in his analysis, the *Yelton* court found that the opposing party was substantially prejudiced, but not irreparably prejudiced; thus, some form of adverse inference instruction to the jury was sufficient to restore justice. *Id*. Conversely, Plaintiffs here are irreparably prejudiced by the loss of the Sells' contemporaneous thoughts and communications

22

presumably preserved in their text and social media messages.   Plaintiffs do not possess a report or summary of these communications.

In *Yelton*, the court ruled that the jury needed to hear evidence of the spoliation, but that "the degree of and particulars of the adverse inference" was "appropriately the responsibility of the District Judge" during the pre-trial motions phase of the case. *Id.* at 394. Here, there is a similar clear need for an adverse inference jury instruction. The degree of and particulars of the adverse inference may be decided during the motions *in limine* phase of the litigation.  However, under Fed R. Civ. P. 37(b) and 37(e) this Court's inherent authority to issue discovery sanctions in the interests of justice, Plaintiffs are entitled to an order requiring that evidence of the Board's spoliation to presented to the jury at trial.

#### b.  Attorneys' Fees

In addition to the broad range of sanctions detailed in Fed. R. Civ. P. 37(b)(2)(A), Subpart C compels a court to require a party to pay the opposing party reasonable expenses, including attorneys' fees, caused by the party's failure to obey a discovery order:

> *Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C) (emphasis in original); *Allemang,* 2022 WL at *2.  *See also Keller v. Riverbend Nursing & Rehab Ctr.*, No. CV 20-2858, 2022 WL 10460262, at *2 (E.D. La. Oct. 18, 2022) (citing *Lytal Enters., Inc. v. Newfield Expl. Co.*, No. 06-33, 2006 WL 3366128, at *1 (E.D. La. Nov. 17, 2006) (citing Fed. R. Civ. P. 37(b)(2)) ("The court's authority to hold parties who disobey its discovery orders in contempt and/or to impose sanctions in the form of reasonable attorney's fees and costs is unquestioned."); *Roadway Express, Inc. v. Piper*, 100 S. Ct. 2455, 2462-63 (1980).

This Court must order the Board to pay Plaintiffs' attorneys' fees and costs to deter spoliation and compensate Plaintiffs for the additional costs incurred when the relevant evidence was lost. *See Yelton,* 279 F.R.D. at 394.  Plaintiffs have spent considerable time and money attempting to obtain the evidence that they eventually realized had been spoiled, and additional time and resources will be required to determine the extent of the spoliation. Plaintiffs will never be able to recover any of the relevant evidence from the Sells' mobile phones that the Board destroyed. Accordingly, this Court must order the Board to pay Plaintiffs' reasonable attorneys' fees and costs to make Plaintiffs whole for both the destruction of important evidence and the time and resources spent on investigating this matter and bringing this Motion.

## CONCLUSION

Accordingly, in the light of the Board's failure to preserve evidence directly relevant to the case at hand and to otherwise comply with the Federal Rules of Civil Procedure, its own Retention Policy, and the Orders of this Court, Plaintiffs seek an order:

(a) Finding that Defendant and its attorneys failed to properly preserve evidence or destroyed evidence;

(b) Finding that Plaintiffs have been prejudiced by the loss of information;

(c) Compelling Defendant to cure the prejudice by restoring the destroyed information and communications and providing such to Plaintiffs, if at all possible;

(d) Finding that Defendant and its attorneys acted with the intent to deprive Plaintiffs of the use of this information in this litigation, and therefore:

  (i)  Presume that the lost information was unfavorable to Defendant;

  (ii)  Allow evidence of the destruction of evidence to be presented to the jury;

(iii)    Instruct the jury that it may or must assume the information was unfavorable

to Defendant; or

(iv)    Issue Default Judgment against Defendant.

(e)  Awarding Plaintiffs reasonable attorneys' fees and costs; and

(f)  Granting any other relief which the Court deems is just and equitable.


Respectfully Submitted,

**s/Elizabeth Abdnour**
Elizabeth Abdnour
Pro Hac Vice
Elizabeth Abdnour Law, PLLC
1100 W. Saginaw Street, Suite 4A-2
Lansing, Michigan 48915
P: (517) 292-0067
F: (517) 709-7700
elizabeth@abdnour.com

Catherine E. Lasky (La. Bar 28652)
Endya L. Hash (La. Bar 38260)
Katie Lasky Law
619 Homedale Street
New Orleans, Louisiana 70124
P: (504) 584-7336
F: (504) 375-2221
katie@katielaskylaw.com
endya@katielaskylaw.com

Karen Truszkowski
Pro Hac Vice
Temperance Legal Group, PLLC
503 Mall Court #131
Lansing, Michigan 48912
P: (844) 534-2560
F: (800) 531-6527
karen@temperancelegalgroup.com

*Attorneys for Plaintiffs*