UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                              CIVIL ACTION NO.  21-CV-242

VERSUS                                          JUDGE WENDY VITTER

LOUISIANA STATE UNIVERSITY,                     MAGISTRATE JUDGE SCOTT
ET AL.                                          JOHNSON

DEFENDANT BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND MECHANICAL COLLEGE'S MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

Defendant the Board of Supervisors of Louisiana State University and Agricultural and

Mechanical College (the "Board") submits this memorandum in opposition to Plaintiffs' Motion

for Sanctions (the "Motion").

## I.    INTRODUCTION

Abby Owens, Elisabeth Andries, Samantha Brennan, Jane Doe, Corinn Hovis, Kennan

Johnson, Sarah Beth Kitch, Jade Lewis, Calise Richardson, and Ashlyn Robertson ("Plaintiffs")

filed this suit against various defendants, including Michael and Julia Sell (the "Sells"), former

tennis coaches at Louisiana State University ("LSU"). (R. Docs. 1, 22)  The Sells were dismissed

from this suit on January 19, 2022. (R. Doc. 187)  In the instant Motion, Plaintiffs seek sanctions

against the Board in connection with the suspected contents of the Sells' LSU-issued iPhones.

Plaintiffs' Motion against the Board stems from an avoidable discovery dispute and hinges on the

unsubstantiated assumption that the Board is responsible for the absence of data on the physical

phones, namely text messages.[1]

---

[1] Curiously, in the Motion, Plaintiffs also purport to seek "social media messages exchanged between the Sells and students, staff and/or other third parties regarding the facts of this case." (R. Doc. 325-1, p. 14)  However, it is well-known that, like e-mail accounts, social media accounts (*i.e.,* Facebook and Twitter), including messages exchanged via social media accounts, are not tied to any particular device; instead, social media accounts are tied to the particular

1

In an effort to convince this Court that the Board has engaged in improper conduct, Plaintiffs take great liberties and mischaracterize the interactions between counsel for Plaintiffs and the Board, the efforts undertaken by the Board to investigate and respond to Plaintiffs' inquiries regarding the phones and corresponding data, as well as the evidence (or lack thereof) of improper conduct on the part of the Board.  For example, in their Motion, Plaintiffs state that they contacted the Board on September 6, 2022 and that the Board did not respond until September 8, 2022.  (R. Doc. 325-1, p. 5)  Plaintiffs omit a September 7, 2022 communication from the Board acknowledging receipt of the September 6, 2022 email, apologizing for not responding sooner, and stating that a response would be coming on September 8, 2022.  (Exh. 1)[2]  Plaintiffs also suggest almost a month passed (from September 16, 2022 until October 12, 2022) with no response from the Board.  (R. Doc. 325-1, p. 5)  However, Plaintiffs fail to acknowledge that, in that same time period, the parties were immersed in depositions, as the defendants deposed all ten Plaintiffs during that period.  They further fail to acknowledge that, during this same period, there were multiple document productions by the Board, including on September 16, 2022, September 21, 2022, and October 4, 2022.[3]

Plaintiffs attempt to paint a picture that the Board has been avoiding providing answers, delaying responses, and exhibiting elusive behavior is false.  While Plaintiffs suggest that they have been trying to address the issue for some time, so has the Board.  The Board worked for months to evaluate what information was available from the phones and intends to continue to do so.  Indeed, the Board's diligence in trying to determine what happened to the cell phones and

---

user and their contents can be accessed via multiple means, including phones and computers.  At no time did the Board have control over any social media accounts used by the Sells.
[2] This email is attached as Exhibit 1.
[3] Plaintiffs' other statements regarding the Board's "delay" in responding ignores that the Board and Plaintiffs were communicating nearly daily on numerous topics regarding the litigation.

PD.41254255.2

how to retrieve information is demonstrated in the very emails Plaintiffs attached to their Motion. Although Plaintiffs may be dissatisfied with the explanations provided thus far concerning the lack of information on the phones, that does not amount to spoliation of evidence.

## II.    FACTUAL BACKGROUND

While employed with LSU, the Sells used LSU-issued iPhones.  The iPhones were connected to the Sells' personal iCloud/Apple IDs, over which the Board has never had control. In April 2022, the Sells left their employment with LSU.  Upon their departure, the Sells returned their LSU-issued iPhones.  As indicated in the Board's interrogatory responses, upon information and belief, LSU Athletics IT discovered Mike Sell's laptop and iPhone on a ledge in the LSU Athletics IT office one morning with a Post-it note indicating that the devices belonged to Mike Sell.  (R. Doc. 325-6, pp. 10-11)  Similarly, LSU Athletics IT believes Julia Sell hand-delivered her cell phone to their office.  (R. Doc. 325-6, pp. 10-11)  LSU Athletics IT did not immediately turn on the Sells' devices to ascertain their status.

In approximately May 2022, LSU Athletics IT turned on Mike Sell's phone in order to unenroll the device from LSU's Mobile Device Management System.  Upon turning on Mike Sell's phone, LSU Athletics IT discovered that the phone contained no data.  Afterward, both Mike Sell and Julia Sell's phones remained in the IT office, and to the best of LSU Athletics IT's knowledge, the phones were untouched until September 2022.  (R. Doc. 325-6, pp. 10-11)

Plaintiffs first contacted the Board regarding the Sells' cell phones in September 2022.  In response, counsel for the Board asked that LSU Athletics IT place the phones in a safe within the IT Department.[4]  Although there was no information available on the phones, LSU Athletics IT was able to retrieve call log data containing the incoming and outgoing telephone numbers and the

---

[4] The phones remained in the safe until January 2023, when the Board provided the phones to Plaintiffs for inspection.

call time dating back to 2012 for Julia Sell and 2015 for Michael Sell. This log was produced to Plaintiffs. Although not required to do so, the Board also contacted its service provider, Verizon, to determine if the Board could obtain any other information. The Board kept Plaintiffs informed regarding what information was accessible from LSU Athletics IT and Verizon, including that Verizon was unable to access additional data.[5]

The Board continued to work cooperatively with Plaintiffs to discuss the status of the Sells' phones, including by phone on December 9, 2022. In advance of that call, the Board contacted the Sells through their counsel. The Sells confirmed that they had retained all information from the cell phones relevant to this litigation, including screenshots of text messages with Jade Lewis and Kennan Johnson, which had been produced to Plaintiffs. Thus, based on this conversation, the Board concluded that all relevant information had been preserved. Accordingly, during the December 9 phone call, the Board informed Plaintiffs that they believed all relevant information from the phones had been produced.

In response to the Board's January 20, 2023 email outlining its efforts to obtain additional information from Verizon, Plaintiffs requested the opportunity to "personally inspect the cell phones with our own experts so that we can retrieve the messages directly from them or identify when the text messages were deleted - either while in the Sells' possession or after being returned to LSU." (R. Doc. 325-8, p. 4) The Board agreed to this request and provided the cell phones to Plaintiffs, subject to the condition that the Board first be given the opportunity to inspect the messages for privileged information, should any information be obtained. Plaintiffs agreed to this request. Counsel then obtained the phones from LSU Athletics IT and provided them to Plaintiffs on January 25, 2023. On that same day, Plaintiffs' counsel sent an email seeking to add an

---

[5] Because Verizon only retains text message data for one year, text message data was not available.

additional topic regarding "the chain of custody regarding the Sells' mobile phones" to the Rule 30(b)(6) deposition of the Board.  (R. Doc. 325-8, p. 1)

The following week, on January 30 and 31, 2023, Plaintiffs deposed Julia and Mike Sell. In each deposition, the Sells were asked whether they had deleted information or reset their phones before returning them.[6]  Both Mike and Julia Sell indicated that they had not.  They both further testified that they did not delete anything from their phones **specifically** because of this litigation:

> "As soon as the litigation started and Husch Blackwell started, I saved everything.  I didn't delete it but prior to that I would delete things I'd already answered or taken care of, whether it was a recruit's text or something that did not need my attention anymore." (J. Sell 212)

> "I knew I wasn't supposed to delete anything work-related or from the case scenario, so I handed it in from that standpoint." (M. Sell 12-13)

Less than one month after the Sells' depositions, Plaintiffs filed this Motion with no attempt to confer with the Board (or to the Board's knowledge, the Sells) and prior to taking the requested 30(b)(6) deposition of the Board on this issue.  Upon receipt of the Motion, the Board contacted the Sells' counsel in a good faith effort to further investigate this situation (in addition to the great lengths already taken).  The Board inquired about the Sells' ability to access a backed-up version of the phones via their previous iCloud storage accounts.   The Sells located their prior iCloud/Apple accounts.  Julia Sell was able to access her account and the information stored there. Mike Sell is still attempting to gain access to his account.  A search of Julia Sell's account revealed no new responsive information, consistent with the Sells' and the Board's belief that relevant data

---

[6] R. Doc. 325-10, p. 2; M. Sell Depo. p. 12 (attached as Exhibit 2).  While counsel for the Sells requested that the Sells' depositions be designated as confidential and subject to the protective order, counsel for the Sells consents to the filing of the referenced deposition excerpts with this opposition.

had been retained and produced by the Sells in response to Plaintiffs' subpoena.  The Sells provided a supplemental subpoena response to this effect.

### III.    LAW AND ARGUMENT

#### A.    Legal Standard for Spoliation

"The spoliation of evidence doctrine governs the *intentional* destruction of evidence."[7]  To succeed on a spoliation claim, Plaintiffs must prove three elements: (1) the Board had control over the evidence and was under an obligation to preserve it at the time of destruction; (2) the evidence was intentionally destroyed; and (3) the Board acted in bad faith.[8] As an additional consideration, courts have found that, "when a party moving for spoliation of evidence had ample opportunity to inspect and gather its own evidence regarding a specific matter, a finding of spoliation is improper."[9]

Plaintiffs cannot prove the second or third essential elements of a spoliation claim. Moreover, because Plaintiffs had ample opportunity to gather evidence regarding the phone contents, there can be no spoliation.

#### 1.    Plaintiffs cannot prove that the Board intentionally destroyed any evidence.

In order to establish that evidence was "intentionally" destroyed for purposes of the second essential element of a spoliation claim, a party alleging spoliation must establish that the opposing party both (1) intentionally destroyed the evidence; and (2) did so for the purpose of depriving other parties of its use.[10]  Plaintiffs fall far short of satisfying their burden in this regard, and the case law they cite offers no support for the positions they attempt to further.[11]

---

[7] *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 Fed. Appx. 565, 573 (5th Cir. 2020) (internal citations omitted) (emphasis added).
[8] *Id.* at 574.
[9] *In re Bertucci Contracting Co., L.L.C.,* 2014 WL 5483707, *3 (E.D. La. 2014).
[10] *Coastal Bridge Co.*, 833 Fed. Appx. at 574.
[11] *See* fn. 29.

PD.41254255.2

As an initial matter, the Board issued litigation holds to preserve relevant information. A litigation hold was issued by LSU's General Counsel on May 23, 2021, less than a month after this lawsuit was filed, to all relevant departments, including athletics, in order to ensure that relevant evidence would be preserved. The litigation hold covered, *inter alia,* electronically stored information ("ESI"), including text messages regarding the Plaintiffs. The litigation hold was emailed to high-level athletics administration. On June 17, 2021 and June 14, 2022 undersigned counsel for the Board also sent two litigation holds to LSU, which encompassed ESI, including text messages regarding the Plaintiffs.[12]

Moreover, Plaintiffs' claim that the Board "admitted to intentionally wiping all data from the mobile phones by having its IT Department reset those phones to the factory settings" is false. (R. Doc. 325-1, p. 17) Plaintiffs' position is based solely on a brief conversation between Board Attorney Camille Schwaner and Plaintiffs' Attorney Endya Hash on January 25, 2023, when handing the phones over to Attorney Hash. In particular, Attorney Hash inquired as to whether a password was required for the phones, in response to which Attorney Schwaner conveyed what she understood the two options to be—either 1) the phones were restored to factory settings and a password would not be required or 2) a password was required and the Board would attempt to locate it.[13] This is a far cry from an admission on the Board's part that it intentionally wiped the phones.

Further, Plaintiffs do not even know what evidence, if any, was destroyed, so they certainly have not and cannot prove that any purported destruction of evidence was done with the intent to

---

[12] In the concluding paragraph of the Motion, Plaintiffs seek a finding that the Board "and its attorneys failed to properly preserve evidence or destroyed evidence" and that the Board "and its attorneys acted with the intent to deprive Plaintiffs of the use of this information." (R. Doc. 325-1, p. 24) Plaintiffs' suggestion that the Board's attorneys engaged in any such conduct is wholly lacking in support and is improper.

[13] The Post-it note that refers to Julia Sell's phone as "wiped" was placed on the phone by LSU Athletics IT. It merely indicates the status of the phone.

deprive Plaintiffs of evidence. Since the Sells' phones lack information, Plaintiffs springboard to the conclusion that the information must have been deleted. However, according to the Sells, the information has been preserved and produced. The Sells, who were represented by separate counsel, have always maintained that they preserved relevant information for production to Plaintiffs prior to their departure from LSU. Indeed, this position is underscored by the fact that, when Julia Sell accessed her LSU iPhone data from her iCloud account, she located no other responsive information. Plaintiffs' piecemeal attempt to accuse the Board of something for which they have no evidence is nothing more than speculation and conclusion. Their baseless assertions amount to nothing.

### 2. Plaintiffs cannot prove that the Board acted in bad faith.

Plaintiffs also cannot prove that the Board acted with the requisite bad faith for purposes of the third essential element of a spoliation claim. In the Fifth Circuit, the imposition of sanctions for spoliation requires a showing of bad faith.[14] Bad faith is a high standard—it is more than even the intentional destruction of information despite potential litigation—a finding of bad faith must be predicated on the destruction of information for the purpose of hiding adverse information or suppressing the truth.[15] The Fifth Circuit has **explicitly rejected** the argument that spoliation of evidence may be based on the negligent destruction of evidence.[16] "Negligence is *not* enough to support the imposition of sanctions for spoliation."[17] Therefore, courts have declined to find a party acted with a culpable state of mind when the destruction of evidence could be explained by

---

[14] *Coastal Bridge Co.*, 833 Fed. Appx. at 574; *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005) ("The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'"); *King v. Illinois Cent. R. R.*, 337 F.3d 550, 556 (5th Cir. 2003) ("An adverse inference based on the destruction of potential evidence is predicated on the 'bad conduct' of the defendant.").

[15] *See Rogers*, 215 F. Supp. 3d at 517–519 (collecting cases).

[16] *Kemp v. CTL Distribution, Inc.*, 440 Fed. Appx. 240, 247 (5th Cir. 2011).

[17] *Coastal Bridge*, 833 Fed. Appx. at 574 (emphasis added).

negligence, incompetence, or reasons other than to deprive the plaintiff of its use.[18] "The potential levels of culpability range from no culpability to bad faith, with intervening levels including negligence, gross negligence, and willfulness."[19]

Plaintiffs point to no evidence, direct or circumstantial, showing that the Board intentionally destroyed the cell phone data at issue for the purpose of hiding adverse evidence. To find bad faith here, the Court would have to infer that, without reviewing the contents of the Sells' phones, the Board believed the contents would have been favorable to Plaintiffs and directed someone to delete the contents.[20] There is simply no evidence whatsoever that anyone acted for the purpose of depriving Plaintiffs of the phones' contents or with a "culpable state of mind."[21]

Indeed, Plaintiffs' suggestion that the Board acted in bad faith to deprive them of evidence defies logic. It makes no sense that the Board would voluntarily provide the phones to Plaintiffs for their expert's review if it wanted to shield any improper behavior. Moreover, even assuming someone unknowingly restored the phones to factory settings, at most, this would amount to mere negligence only, which does not constitute spoliation. In their Motion, Plaintiffs reference yet-to-be identified technology expert(s) who allegedly reviewed the phones. According to Plaintiffs, the expert(s) simply confirmed that the phones had been reset to factory settings.[22] However, there have been no findings by any expert(s) (or anyone else) of bad faith conduct on the part of the Board.

---

[18] *See e.g.*, *Rogers v. Averitt Express, Inc.*, 215 F. Supp. 3d 510, 520 (M.D. La. 2017) (no spoliation where the plaintiff had back surgery without giving the defendant the opportunity to conduct an independent medical exam, despite the defendant's specific letter to the plaintiff requesting an exam before undergoing surgery); *Thomas v. Tangipahoa Par. Sch. Bd.*, 2016 WL 3542286, at *3 (E.D. La. 2016) (no spoliation where employees negligently or incompetently lost a file); *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 346 (M.D. La. 2006) (failure to timely inform employees of a duty to preserve emails did not constitute bad faith).

[19] *Coastal Bridge Co.*, 833 Fed. Appx at 574.

[20] *Mixon v. Pohlman*, 2022 WL 2867091, at *9 (E.D. La. 2022).

[21] *See Coastal Bridge Co.*, 833 Fed. Appx. at 574

[22] Plaintiffs have not disclosed the identity of their technology expert, the expert's qualifications, what kind of examination was performed on the phone, or any written findings.

PD.41254255.2

There is no circumstantial evidence, let alone direct evidence, that the Board had knowledge of the contents of the phone or knew that any contents would be detrimental to this case.[23] Neither is there any evidence of a "desire to suppress the truth" by the Board. Although Plaintiffs claim that the Board sought to conceal the cell phone contents, Plaintiffs clearly ignore the fact that the contents could also be relevant to the Board's defenses such that the Board had an equally established interest in the data. The interest in this data is clear by the diligent investigatory efforts undertaken by the Board to communicate with LSU Athletics IT and Verizon.

Additionally, bad faith cannot be inferred under these circumstances.[24] Bad faith can only be inferred in situations where a "strong chain" of circumstantial evidence of bad faith is present, as exhibited by the cherry-picked cases relied upon by Plaintiffs in their Motion (R. Doc. 325, p. 15-17).[25] For instance, in *Ashton v. Knight Transportation, Inc.*,[26] the truck driver fled the scene, falsified his driver's log to make it appear he had not been at the scene, changed the tires on the truck, and his employer did not preserve communications with the driver in the hours and days surrounding the accident despite preserving communications beginning five days after the accident and despite a request from law enforcement to preserve all such communications within days of the accident.[27] As a further example, in *Moore v. CITGO*, another case cited by Plaintiffs, the court inferred bad faith where four individual plaintiffs disobeyed a court order to preserve and produce emails and willingly deleted their emails anyway.[28] No comparable circumstances are present here.

Finally, Plaintiffs argue that the phones were reset in violation of LSU's Personnel Record Retention Policy, citing cases that suggest bad faith for acting contrary to company policy. (R.

---

[23] *See Rogers,* 215 F. Supp. 3d at 517.
[24] *See Mixon,* 2022 WL 2867091, *9 (no bad faith could be inferred where the alleged spoliator had never viewed a surveillance video and no evidence existed that anyone believed it to be detrimental to their case).
[25] *In re Bertucci Contracting Co., L.L.C.,* 2014 WL 5483707, at *3; *Mixon,* 2022 WL 2867091, at *9.
[26] 772 F. Supp. 2d 772, 802-03 (N.D. Tex. 2011).
[27] *Id.*
[28] 735 F.3d 309, 317-18 (5th Cir. 2013).

PD.41254255.2

Doc. 325-1, pp. 16-17)  This argument is unfounded.  First, the Sells' personal text messages are not "personnel records" within the meaning of the policy.  Second, Plaintiffs' authority on this topic only further supports that bad faith is not present here, as they involve situations in which the court found **no bad faith** in the absence of a retention policy requiring preservation of evidence.[29]  Plaintiffs have not and cannot show bad faith.[30]

### 3.    Plaintiffs also had ample opportunity to inspect the material.

In addition to failing to satisfy all of the essential elements required for a spoliation claim, Plaintiffs also cannot succeed on their claim because they had ample opportunity to inspect the material at issue.   Here, the subpoena initially issued to the Sells sought, in pertinent part:

> [A]ll communications, including but not limited to text messages and messages from other social media communications applications such as Facebook Messenger, Signal, Whatsapp, etc., sent or received by you, from January 1, 2013 to present, related to . . . Abby Owens, Ashlyn Richardson, Corrin Hovis, Elisabeth Andries, Jade Lewis, Kennan Johnson, Jane Doe, Samantha Brennan, Sarah Beth Kitch [John Coe, John Doe, and John Loe], and/or Title IX.

(R. Doc. 325-1, p. 4 n.1)  The Sells produced the relevant information and responded that they no longer were in possession of the phones.

Plaintiffs, seemingly fixated on the information on the physical devices, did not attempt to obtain the information through their subpoenas or via other means.  Indeed, the discovery of this

---

[29] *Lou v. Lopinto*, 2022 WL 16685539, *7 (E.D. La Nov. 2, 2022) (holding routine destruction of information is not spoliation and even where a preservation policy is violated, there is only spoliation where there is bad faith); *Mixon*, 2022 WL 2867091, *9 (finding no bad faith where there was no policy for preserving video surveillance).

[30] *See* n. 17 and the cases cited therein; *see also Bertrand v. Fischer*, 2011 WL 6254091, *4 (W.D. La. 2011) (holding that a store's negligent failure to comply with its own internal recordkeeping policy was not enough to support a claim of spoliation in the absence of intentional bad faith destruction of the records); *Hale v. City of Biloxi*, 731 Fed. App'x 259, 265 (5th Cir. 2018) (holding that the district court did not err in refusing to draw an adverse inference where footage from a police body camera was not able to be located in a suit for use of excessive force, but the plaintiff had not shown any evidence that the camera footage had been destroyed on purpose or in bad faith); *Ford v. Potter*, 354 Fed. App'x 28, 33 (5th Cir. 2009) (holding that where a defendant could not locate interview notes requested by the plaintiff, the district court did not err in declining to draw an adverse inference for spoliation where the plaintiff could not affirmatively show that the notes were destroyed, and argued only that the defendant's inability to locate the notes "smell[ed] bad.").

material has come to light only because counsel for the Board went beyond the request specific to the Board and inquired about the Sells' iCloud accounts via their counsel. Plaintiffs chose not to pursue that route, even after knowing that (1) the Sells were no longer in possession of their phones; and (2) that no data was recoverable. Had they done so, this issue may have been avoided.

**B.    Plaintiffs Are Not Entitled to an Award of Sanctions**

Since Plaintiffs have failed to prove their spoliation claim, they necessarily are not entitled to an award of sanctions in any respect.   However, even if they could succeed on their spoliation claim (which the Board disputes), their requested sanction of an adverse inference instruction is not warranted.

The Fifth Circuit has instructed that "a party seeking sanctions is not entitled to an adverse inference instruction unless that party can show that its adversary intentionally and in bad faith disposed of the evidence."[31] As the party seeking the sanction of an adverse inference instruction based on spoliation of evidence, Plaintiffs must establish that "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."[32]

In addition to these elements, Plaintiffs must also show that the evidence would have supported the inference sought. Specifically, "[t]he moving party seeking an adverse inference instruction must provide some extrinsic evidence of the content . . . for the trier of fact to be able to determine in what respect and to what extent the [evidence] would have been detrimental."[33] "In

[31] *Condrey*, 431 F.3d at 203
[32] *Id.*
[33] *Valley View Rentals*, 2013 WL 12182682, at *7 (internal citations omitted)

short, there must be some showing that there is in fact a nexus between the proposed inference and the information contained in the lost evidence."[34] Importantly, the decision to exclude evidence or allow the jury to have a negative inference regarding the evidence is considered drastic.[35]

Plaintiffs cannot satisfy the requisite elements for an adverse inference instruction, namely the second or third essential elements.  Nor can they prove that any purported missing evidence would have supported the adverse inference they seek.

### 1.    Plaintiffs cannot prove that any evidence was destroyed with a culpable state of mind.

The standard for "culpable state of mind" largely mirrors the standard for "bad faith" in the context of spoliation.  Courts have declined to find a culpable state of mind when the destruction of evidence could be explained by negligence, incompetence, or reasons other than to deprive the movant of its use.[36]  For the same reasons provided above, there is altogether no evidence that any evidence was destroyed with a culpable state of mind.

### 2.    Plaintiffs cannot prove prejudice and no other sanctions are appropriate.

As to the third essential element for an adverse inference, courts consider whether the non-destroying party has suffered prejudice from the destruction of the evidence.[37]   In this case, Plaintiffs cannot show prejudice.[38]  This litigation was filed in 2021. The only plaintiffs who allege claims involving the Sells are Abby Owens, Jade Lewis, and Kennan Johnson. (R. Docs.

---

[34] *Id.*

[35] *Consol. Aluminum Corp.*, 244 F.R.D. at 340.

[36] *Knott v. Lowe's Home Centers LLC*, 2021 WL 1877377, at *2 (W.D. La. 2021) (citing *Consol. Aluminum Corp.* 244 F.R.D. at 346; *Thomas v. Tangipahoa Par. Sch. Bd.*, 2016 WL 3542286, at *3 (E.D. La. June 29, 2016); *Rogers v. Averitt Express, Inc.*, 215 F. Supp. 3d 510, 520 (M.D. La. 2017)).

[37]  *Consol. Aluminum Corp.*, 244 F.R.D. at 346.

[38] *See id.* (no prejudice where plaintiff would be able to obtain most, if not all, of the information from other sources that were preserved and produced, especially considering the "overwhelming amount of documentary evidence and emails" already produced by defendant); *see also Valley View Rentals, LLC v. Colonial Pipeline Co.*, 2013 WL 12182682, at *7 (M.D. La 2013) (no prejudice where party claiming spoliation could not point to any evidence which was destroyed and even if evidence had been destroyed, the evidence would not support the adverse inference sought).

1 & 182) Abby Owens attended LSU and played tennis from Fall 2013 through approximately April 2017. (R. Doc. 182, ¶¶ 327 & 336)  Jade Lewis played tennis in Spring 2017, and her alleged assailant was expelled from LSU in July 2019. (R. Doc. 182, ¶¶ 452 & 552)  Kennan Johnson played tennis at LSU from May 2017 through Spring 2019. (R. Doc. 182, ¶ 562 & 594)  These relevant periods at issue ended well before this litigation commenced in 2021.  The Sells were free to delete any messages prior to this time, despite any duty to preserve that may have later arisen.  Indeed, Julia Sell testified that she routinely deleted text messages from her phone prior to the commencement of the Husch Blackwell investigation.[39]  Plaintiffs have not been able to show that *any relevant* evidence has actually been lost. At most, Plaintiffs merely argue that relevant evidence *may have been lost*, which is insufficient for purposes of establishing prejudice.[40]  Similarly, their speculation regarding the content of the allegedly lost evidence is insufficient to prove that such evidence would have supported their claims.

Plaintiffs admit they have the same access to any text messages between Plaintiffs and the Sells.  (*See* R. Doc. 325-1, p. 14)  As to conversations with third parties, Plaintiffs merely speculate that the Sells may have communicated with third parties about their claims. Significantly, communications about Plaintiffs from the Sells to others are likely captured in the emails. Plaintiffs also had the opportunity to question the Sells about any relevant text messages during their depositions. Finally, the Sells produced in response to the subpoena the data they retained relevant to the lawsuit from their cell phones. The records include screen shots of text messages with the Sells, Jade Lewis, Kennan Johnson, and Abby Owens.

---

[39] Julia Sell Depo., p. 212.
[40] *Lou*, 2022 WL 16685539, at *8; *Consol. Aluminum Corp.*, 244 F.R.D. at 347 ("[I]n most instances where prejudice has been found to have occurred, the prejudice was readily apparent" and where party was unable to point to which emails were deleted, there was no prejudice).

14

Additionally, Plaintiffs have not even established that the material in question cannot be recovered. As they acknowledge, according to their own expert, there exists a method to recover the data they seek. Plaintiffs simply contend that the recovery method may be difficult because the Sells may not cooperate and the recovery method may be costly. Plaintiffs' speculation in this regard without any attempts to recover the data cannot serve to prove any prejudice.

Plaintiffs argue an instruction for an adverse inference is warranted based on the court's ruling in *Yelton v. PHI, Inc.*[41] Plaintiffs' reliance on *Yelton* is misplaced because that case is distinguishable from the instant litigation. In *Yelton*, a key witness testified in his deposition that electronically-stored data and hard copies of documents were not preserved. The witness testified that he maintained a computer file on his laptop that was specifically related to the matter at issue in the litigation, but he could not say for certain that the data was still available. According to the witness, he received a new computer, and the data on his old hard drive was "cleaned out." The witness further testified that, prior to the sale of his computer, he cleaned out the "unnecessary files." The witness confirmed that "some of the files, data, and work product from [the relevant time period] were deleted."[42] Additionally, the witness testified that his employer instructed him to exclude references to a report upon which he relied to complete an analysis, which was critical to the issue of liability in the litigation. Notably, the employer did not disclose the existence of the report or the underlying data in response to discovery requests. Three months after his deposition, the witness submitted a declaration which contradicted his deposition testimony. Among other things, the declaration stated: (1) the data files upon which he relied were transferred to a shared drive and preserved; (2) the discarded data contained mistakes and therefore was not valuable; and (3) no data relevant to the analysis was destroyed.

---

[41] 279 F.R.D. 377, 394 (E.D. La. 2011), *aff'd*, 284 F.R.D. 374 (E.D. La. 2012).
[42] *Id.* at 290.

PD.41254255.2

Based on these facts and others, the court concluded that some of the electronic data files supporting the analysis were deleted during the relevant time period.  The court's conclusion was based on the witness's testimony regarding the sale of his computer, which contained data used in the formulation and creation of the analysis. The court further concluded that, because the witness testified that the defendant instructed him to delete references to certain data relied upon during his analysis, the defendant did not want the parties to have access to the findings or the underlying data. The court's conclusion was bolstered by defendant's failure to disclose the existence of the report in its discovery responses, and defendant's representation that all relevant information had been provided.  As a result, the court concluded that the defendant intentionally destroyed evidence with a culpable state of mind.

The facts in this case bear no similarity to *Yelton.* First, there is no evidence that the Board violated the Court's order to preserve electronically-stored evidence. In fact, more than one litigation hold was issued in connection with this litigation, all of which encompassed ESI, including text messages and other data.  Additionally, there is no evidence that the Sells destroyed evidence.  Indeed, as stated above, in their depositions, both witnesses testified that they maintained the relevant information after the Husch Blackwell investigation began. Other than Plaintiffs' conclusory allegations, there is no proof that any evidence has been destroyed.  This point is bolstered by the supplemental subpoena response of Julia Sell.  Unlike *Yelton*, Plaintiffs' request for an adverse inference instruction is not substantiated.

### C.    Plaintiffs Are Not Entitled to Attorneys' Fees

Plaintiffs also seek attorneys' fees pursuant to Federal Rule of Civil Procedure 37. Attorneys' fees under Rule 37(b)(2)(C) are only appropriate where a party disobeyed a court order and that disobedience was *unjustified* or where no other circumstance would make such an award

unjust.[43] Sanctions under Rule 37 are only appropriate where there is willful disobedience or gross indifference.[44] Here, attorneys' fees are inappropriate for several reasons.

As shown, Plaintiffs cannot demonstrate the destruction of any evidence, let alone destruction in violation of any Court order, including the Court's ESI order.  In addition, as mentioned above, more than one litigation hold was issued in connection with this litigation, all of which encompassed ESI, including text messages and other data.

Even if the Board had disobeyed an order of the Court (which the Board disputes), Plaintiffs have not met the high standard of showing willful disobedience or gross indifference.  Here, the Board has been working diligently with Plaintiffs to provide all responsive, discoverable information.  Indeed, the Board took the additional step of providing Plaintiffs with the phones so that Plaintiffs' expert could evaluate what further work could be done to recover the information.  Based on the questioning in the Sells' depositions, it appeared that the Plaintiffs would be working with the Sells to attempt to recover more information.  Moreover, on January 25, 2023, Plaintiffs also indicated that they would be questioning a representative of the Board regarding the cell phones.  On information and belief, there have been no further inquiries of the Sells by Plaintiffs, and the 30(b)(6) deposition of the Board has yet to occur.  Nevertheless, Plaintiffs filed this Motion.

As can be seen, this Motion is largely based on Plaintiffs' failure to meet and confer or work cooperatively with counsel for the Board and the Sells.  The issue regarding the contents of the cell phones was never fully fleshed out.  Instead, Plaintiffs filed this extreme Motion, resulting in the unnecessary expenditure of time and resources. Plaintiffs' actions in this regard weigh strongly against an award of attorneys' fees.

---

[43] Fed.R.Civ.P. 37(b)(2)(C)
[44] *Keller v. Riverbend Nursing and Rehab Center*, 2022 WL 10460262, *2 (E.D.La 2022).

The Sells have identified their prior iCloud storage accounts containing the messages from the period at issue.  At no point up to the present have Plaintiffs requested that the Sells conduct a search of any storage or backup accounts.  Plaintiffs claim that they have not contacted the Sells because they believed they would be uncooperative.  However, when the Board contacted the Sells about the possibility of conducting a storage account search, the Sells were immediately willing to search for the requested information.  Julia Sell was able to access and search that account, while Mike Sell is still attempting to gain access.

**IV.    CONCLUSION.**

For these reasons, Plaintiffs' Motion for Sanctions should be denied.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:    /s/ Karleen J. Green
       Susan W. Furr Bar Roll No.  19582
       Karleen J. Green Bar Roll No.  25119
       Shelton Dennis Blunt Bar Roll No. 21230
       Molly McDiarmid Bar Roll No.  36426
       Michael B. Victorian Bar Roll No.: 36065
       *Special Assistant Attorneys General*
       II City Plaza | 400 Convention Street, Suite 1100
       Baton Rouge, Louisiana 70802
       Telephone: 225 346 0285
       Facsimile: 225 381 9197
       Email: susie.furr@phelps.com
       Email: karleen.green@phelps.com
       Email: dennis.blunt@phelps.com
       Email: molly.mcdiarmid@phelps.com
       Email: michael.victorian@phelps.com

PD.41254255.2

ATTORNEYS FOR THE BOARD OF
SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL AND
MECHANICAL COLLEGE


## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of February, 2023, I electronically filed the foregoing

with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing

to all counsel of record.


_____*/s/ Karleen J. Green*_____

PD.41254255.2