## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                **NO. 21-242-WBV-SDJ**

**LOUISIANA STATE UNIVERSITY, ET AL.**

### ORDER AND REASONS

Before the Court is a Motion to Dismiss Second Amended Complaint by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College.[1]  Plaintiffs oppose the Motion,[2] and the Board of Supervisors has filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED in part and DENIED in part.**

## I.    FACTUAL and PROCEDURAL BACKGROUND[4]

This case involves allegations by ten former students of Louisiana State University and Agricultural and Mechanical College ("LSU") that LSU and its Athletic Department funded and implemented a purposefully deficient sexual misconduct and Title IX reporting scheme separate from LSU's official Title IX office to keep sexual assault claims within the Athletic Department.[5]  In their Second Amended Complaint and Jury Demand ("Second Amended Complaint"), Abby Owens,

---

[1] R. Doc. 201.
[2] R. Doc. 209.
[3] R. Doc. 231.
[4] The factual background of this case was extensively detailed in the Court's Order and Reasons granting Jennie Stewart's Motion to Dismiss (R. Doc. 317) and, for the sake of brevity, will not be repeated here.
[5] R. Doc. 1 at ¶ 10; R. Doc. 22 at ¶ 10; R. Doc. 182 at ¶ 25.

Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch (collectively, "Plaintiffs"), allege that while attending school at LSU's Baton Rouge campus between 2009 and 2021, the defendants, LSU's Board of Supervisors, Jennie Stewart, Verge Ausberry, Miriam Segar, and Johnathan Sanders (collectively, "Defendants") repeatedly engaged in discriminatory, retaliatory, and other unlawful actions in their interactions with Plaintiffs and in response to Plaintiffs' reports of Title IX violations.[6]  Plaintiffs allege that LSU handled Title IX complaints made against student-athletes differently than complaints made against non-athletes.[7] Plaintiffs further allege that, "Title IX complaints against student-athletes are purposefully buried or diverted so as to ensure that those complaints were never properly investigated or addressed and the student-athletes are not negatively impacted or prevented from concentrating on their athletics, all of which benefits LSU financially and causes further harm to Plaintiffs."[8]  Plaintiffs assert that Defendants' actions and inactions in response to their reports of Title IX violations subjected them to additional harassment and created a sexually hostile environment on campus.[9]

Plaintiffs allege that they were victims of sex-based discrimination, including rape, sexual assault, sexual harassment, and/or stalking, that was perpetrated by male LSU students and a male professor between 2009 and 2020, and that one

---

[6] R. Doc. 182 at ¶ 36.
[7] *Id*. at ¶ 43.
[8] *Id*. at ¶ 44.
[9] *Id*. at ¶ 45.

plaintiff was the victim of verbal and emotional abuse by an LSU tennis coach.[10] Plaintiffs allege that they were unaware of LSU's inadequate Title IX reporting policies until the March 2021 publication of the Husch Blackwell report. According to Plaintiffs, LSU retained the Husch Blackwell law firm in November 2020 to investigate the school's handling of several Title IX-related incidents, as well as LSU's Title IX policies and procedures.[11] Plaintiffs allege that Husch Blackwell publicly released its investigative report and findings on March 5, 2021, concluding that various incidents of athletics-related misconduct had not been appropriately reported to LSU's Title IX Coordinator and voicing concern about a lack of reporting prior to November 2016.[12] Husch Blackwell also found that LSU's Title IX Office had never been appropriately staffed or provided with the independence and resources to carry out Title IX's mandates, noting that the Title IX Office "has at times not handled those matters reported to it appropriately."[13] Husch Blackwell noted that its concerns about reporting were not limited to athletics, and that it found deficiencies in a variety of different matters.[14]

In the Second Amended Complaint, Plaintiffs allege that they could not have known that LSU and its employees, including the individual defendants, had concealed disclosures of sexual misconduct that should have been reported to LSU's Title IX Office, that LSU purposely handled complaints of sexual misconduct

---

[10] *See*, *Id*. at ¶¶ 113-741.
[11] *Id*. at ¶ 47.
[12] *Id*. at ¶¶ 51-52.
[13] *Id*. at ¶¶ 53-54.
[14] *Id*. at ¶¶ 52 & 54.

perpetrated by student athletes or others affiliated with the LSU Athletics Department in a different manner than complaints of sexual misconduct perpetrated by other individuals, and that Defendants intentionally instituted a process of responding to disclosures of Title IX violations in a manner designed to deter any future disclosures.[15]  Pertinent to the instant Motion, Plaintiffs assert the following four claims against the Board of Supervisors of LSU (the "Board"): (1) deliberate indifference to sex discrimination in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.* (hereafter, "Title IX"); (2) hostile environment in violation of Title IX; (3) heightened risk in violation of Title IX; and (4) retaliation by withholding protection otherwise conferred by Title IX in violation of Title IX.[16]

In its Motion to Dismiss, the Board asserts that Plaintiffs' Title IX claims are all time-barred because they are based on events that allegedly occurred more than one year before Plaintiffs filed this suit on April 26, 2021, and that equitable tolling does not apply.[17]  While recognizing that one incident alleged by Hovis may have occurred within the applicable time period, the Board contends that Hovis' deliberate indifference and hostile environment claims should be dismissed because her allegations fail to show that the Board acted with deliberate indifference or that she was deprived of educational opportunities.[18]  The Board also asserts that Hovis' heightened risk claim should be dismissed because it "is unavailable" in this Circuit,

---

[15] *Id.* at ¶ 83.
[16] *Id.* at ¶¶ 754-1001.
[17] R. Doc. 201 at ¶ 1; R. Doc. 201-1 at pp. 2-10.
[18] R. Doc. 201 at ¶ 2; R. Doc. 201-1 at pp. 4-5 & 10-12.

and further asserts that Plaintiffs cannot recover punitive damages from the Board under Title IX.[19]  Plaintiffs oppose the Motion, asserting that their claims were timely-filed based on the publication of the Husch Blackwell report, and further assert that they have alleged plausible claims under Title IX.[20]  Plaintiffs acknowledge that punitive damages are not available under Title IX, but assert that they can seek punitive damages based upon other claims asserted in their Second Amended Complaint.[21]  In response, the Board re-asserts the same arguments made in its Motion, maintaining that Plaintiffs' Title IX claims are time-barred, that Hovis' Title IX claims for deliberate indifference, hostile environment, and heightened risk fail as a matter of law, and that Plaintiffs are not entitled to punitive damages.[22]

## II.   LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b) Motion to Dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[23]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[24]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[19] R. Doc. 201 at ¶¶ 2 & 3; R. Doc. 2-1 at p. 12.
[20] R. Doc. 209.
[21] *Id.* at p. 25.
[22] R. Doc. 231.
[23] Fed. R. Civ. P. 12(b)(6).
[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

liable for the misconduct alleged."[25]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[26]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[27]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[28] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[29]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[30]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[31]

### B. Title IX.

"Congress enacted Title IX in 1972 with two principal objectives in mind: '[T]o avoid the use of federal resources to support discriminatory practices' and 'to provide

---

[25] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).

[26] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).

[27] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[28] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[29] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[30] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[31] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

individual citizens effective protection against those practices.'"[32]  In line with those
objectives, Title IX provides that, "No person in the United States shall, on the basis
of sex, be excluded from participation in, be denied the benefits of, or be subjected to
discrimination under any education program or activity receiving Federal financial
assistance."[33]  Title IX is enforceable by private right of action for damages.[34]
Through this private right of action, school districts may be liable for, among other
things, student-on-student sexual harassment if: (1) the district had actual
knowledge of the harassment; (2) the harasser was under the district's control; (3) the
harassment was based on the victim's sex; (4) the harassment was "so severe,
pervasive, and objectively offensive that it effectively bar[red] the victim's access to
an educational opportunity or benefit;" and (5) the district was deliberately
indifferent to the harassment.[35]

## III.    ANALYSIS

### A. Prescription/Tolling of Plaintiffs' Title IX Claims.

In its Motion to Dismiss, the Board asserts that all of Plaintiffs' Title IX claims,
except for Hovis' Title IX claims based upon one allegation, must be dismissed
because they are time-barred by Louisiana's one-year prescriptive period set forth in
La. Civ. Code art. 3492.[36]  "A statute of limitations may support dismissal under Rule

---

[32] *Roe v. Cypress-Fairbanks Ind. Sch. Dist.*, 53 F.4th 334, 340-341 (5th Cir. 2022) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (alteration in original)).

[33] *Roe*, 53 F.4th at 341 (*quoting* 20 U.S.C. § 1681(a)) (internal quotation marks omitted).

[34] *Franklin v. Gwinnett County Public Schs.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)).

[35] *Roe*, 53 F.4th at 341 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (alteration in original)) (internal quotation marks omitted).

[36] R. Doc. 201-1 at pp. 2-6.

12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[37]  The Fifth Circuit has held that, "Title IX should be treated like [42 U.S.C.] § 1983 for limitations purposes."[38]  There is no federal statute of limitations for actions brought under 42 U.S.C. § 1983.[39]  When that is the case, "the settled practice is to borrow an 'appropriate' statute of limitations from state law."[40]  In *Wilson v. Garcia*, the Supreme Court held that a § 1983 claim is best characterized as a personal injury action and, as such, is governed by the forum state's statute of limitations for personal injury actions.[41]  In *Owens v. Okure*, the Supreme Court clarified that when a state has multiple statutes of limitations for personal injury actions, a § 1983 claim should be governed by the general or residual statute for personal injury actions.[42]  Accordingly, this Court will apply Louisiana's one-year prescriptive period for personal injury actions[43] to Plaintiffs' Title IX claims, rather than the three-year period applicable to sexual assaults.[44]

---

[37] *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)).

[38] *King-White*, 803 F.3d at 759 (citing authority from other Circuits).

[39] *See, King-White*, 803 F.3d at 758.

[40] *Id.* (citations omitted).  The Fifth Circuit noted, however, that, "Of course, this rule only applies to statutes enacted prior to passage of 28 U.S.C. § 1658, which now governs in such circumstances.  *See* 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004))."  *See, Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018) ("Courts considering claims brought under § 1983 must borrow the relevant state's statute of limitations for personal injury actions.") (citing authority).

[41] *Wilson v. Garcia*, 471 U.S. 261, 276-80, 105 S.Ct. 1938, 1947-49, 85 L.Ed.2d 254 (1985), superseded by statute as stated in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).

[42] 488 U.S. 235, 249-50, 109 S.Ct. 573, 581-82, 102 L.Ed.2d 594 (1989).

[43] La. Civ. Code art. 3492.

[44] La. Civ. Code art. 3496.2.

The Fifth Circuit has held that, "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,' and while we borrow the limitations period from state law, 'the particular accrual date of a federal cause of action is a matter of federal law.'"[45] Thus, federal law governs when a Title IX claim accrues.[46] A claim "accrues" under federal law when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.[47] According to the Fifth Circuit, a plaintiff's knowledge encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions.[48] "However, the plaintiff need not know that a legal cause of action exists; she need only know facts that would support a claim."[49] Further, for accrual purposes, "awareness" does not require actual knowledge; "rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further.'"[50]

Since the Louisiana statute of limitations applies to Plaintiffs' Title IX claims, Louisiana equitable tolling principles apply.[51] Louisiana law allows for the suspension of prescription under the doctrine of *contra non valentem*.[52] The

---

[45] *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)).

[46] *King-White,* 803 F.3d at 762 (citing *Frame v. City of Arlington,* 657 F.3d 215, 238 (5th Cir. 2011)).

[47] *King-White,* 803 F.3d at 762 (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)) (internal quotation marks omitted).

[48] *King-White*, 803 F.3d at 762 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)) (internal quotation marks omitted).

[49] *King-White*, 803 F.3d at 762 (quoting *Piotrowski*, 237 F.3d at 576) (internal quotation marks omitted).

[50] *King-White*, 803 F.3d at 762 (quoting *Piotrowski*, 237 F.3d at 576) (internal quotation marks omitted).

[51] *Green v. Doe*, 260 Fed.Appx. 717, 720 (5th Cir. 2007) (citing *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998)).

[52] *Broussard v. Brown*, 599 Fed.Appx. 188 (5th Cir. 2015) (citing *Corsey v. Louisiana*, 375 So.2d 1319, 1321-22 (La. 1979)).

Louisiana Supreme Court has recognized four factual situations in which the doctrine of *contra non valentem* applies to suspend the prescriptive period, the most pertinent to this case being when "the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant."[53] "However, the doctrine of *contra non valentem* only applies in 'exceptional circumstances.'"[54] Sometimes referred to as the "discovery rule,"[55] the Louisiana Supreme Court has further clarified that, "[t]his principle will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned."[56] An action can also be equitably tolled under the fraudulent concealment doctrine by proving two elements: (1) that the defendants concealed the conduct complained of; and (2) the plaintiff failed, despite the exercise of due diligence on her part, to discover the facts that form the basis of her claim.[57] To satisfy the first element, the defendant must have engaged in affirmative acts of concealment.[58] The Fifth Circuit has held that silence is not enough, and that the

---

[53] *Renfroe v. State ex rel. Dept. of Transp. and Development*, 2001-1646 (La. 2/26/02), 809 So.2d 947, 953 (citing *Plaquemines Parish Comm. Council v. Delta Dev. Co.*, 502 So.2d 1034 (La. 1987)).

[54] *Renfroe*, 809 So.2d at 953 (*quoting* La. Civ. Code art. 3467, Official Revision Comment (d); *State ex rel. Div. of Admin. v. McInnis Brothers Construction, Inc.*, 97-0742 (La. 10/21/97), 701 So.2d 937, 940). *See*, *Ellis v. Evonik Corp.*, Civ. A. No. 21-1089, 2022 WL 1719196, at *3 (E.D. La. May 27, 2022) (Vance, J.) (same).

[55] *Ellis*, Civ. A. No. 21-1089, 2022 WL 1719196, at *3.

[56] *Renfroe*, 809 So.2d at 953-54 (quoting *Corsey v. State of Louisiana, Through the Department of Corrections*, 375 So.2d 1319, 1322 (La. 1979)).

[57] *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988) (citation omitted).

[58] *Allan*, 851 F.2d at 1528-29 (citing authority). *See*, *Rx.com v. Medco Health Solutions, Inc.*, 322 Fed.Appx. 394, 397 (5th Cir. 2009) (citing *Allan*, 851 F.2d at 1531)).

defendant "must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry."[59]

### 1. Plaintiffs' Title IX Deliberate Indifference and Hostile Environment Claims

The Board argues that, with the exception of Hovis, Plaintiffs' Title IX deliberate indifference and hostile environment claims must be dismissed as untimely because Plaintiffs allege that they had knowledge of their injuries, the conduct that allegedly caused those injuries, and the identity of some or all of the persons who engaged in the alleged conduct more than one year before Plaintiffs filed this suit on April 26, 2021.[60] The Board further argues that Plaintiffs cannot invoke equitable tolling or the doctrine of *contra non valentem* based upon the publication of the Husch Blackwell report in March 2021 because the information contained in the report does not relate to Plaintiffs' clams or injuries.[61] To the extent Plaintiffs seem to invoke the fraudulent concealment doctrine, the Board argues that Plaintiffs have failed to allege acts of intentional concealment by the Board, since Plaintiffs allege only that the Board failed to disclose certain facts to them and do not allege that the Board had a duty to disclose any particular information or that the Board prevented Plaintiffs from investigating their claims and filing a lawsuit.[62]

Plaintiffs assert that their claims were timely-filed, relying upon the same arguments made in the opposition briefs they filed in response to the motions to

---

[59] *Allan*, 851 F.2d at 1529 (quoting *Crummer Co. v. Du Pont*, 255 F.2d 425, 432 (5th Cir.1958)) (internal quotation marks omitted).
[60] R. Doc. 201-1 at pp. 2-4.
[61] *Id*. at pp. 7-8.
[62] *Id*. at pp. 8-9 (citing authority).

dismiss filed by Jennie Stewart, Verge Ausberry, Miriam Segar, and Jonathan Sanders.[63]   Relying upon a 2017 case from the Western District of Texas, *Doe I v. Baylor University,* Plaintiffs assert that their Title IX claims were timely-filed because Plaintiffs were unaware that their injuries were causally connected to "actions and inactions by LSU," including the connection between their injuries and LSU's flawed Title IX program, until the release of the Husch Blackwell report in March 2021.[64]   Plaintiffs invoke the doctrines of *contra non valentem* and fraudulent concealment in their Opposition brief by asserting that they were unaware of the causal connection between their injuries and the Board's actions "because those actions and inactions were actively concealed by the Defendant from Plaintiffs."[65] Plaintiffs list all of the allegations in their Second Amended Complaint that support their position, including that, "LSU actively concealed their complaints,"[66] that "LSU, including specifically Defendant Stewart, concealed the name of Robertson's assailant from Title IX records," [67] that "LSU, specifically Defendant Sanders, concealed information regarding John Roe's other victims,"[68] that "LSU concealed information regarding subsequent reports related to Andries and John Roe,"[69] and that "LSU and its employees, specifically Defendant Stewart, had concealed all notes

---

[63] *See*, R. Docs. 210, 211, 212, & 213.
[64] R. Doc. 209 at pp. 8-9 (citing *Doe 1*, 240 F. Supp. 3d 646, 662-63 (W.D. Tex. 2017)).
[65] R. Doc. 209 at P. 16.  *See, Id*. at pp. 8-16 & 16-18.
[66] *Id*. at p. 10.
[67] *Id*. at p. 11 (*citing* R. Doc. 182 at ¶ 287).
[68] R. Doc. 209 at p. 12 (*citing* R. Doc. 182 at ¶ 450).
[69] R. Doc. 209 at p. 12 (*citing* R. Doc. 182 at ¶ 450).

from Plaintiff Doe's multiple interviews and had misrepresented the facts of her report."[70]  Plaintiffs also point to their allegation that:

> Until the release of the Report in March 2021 and the Louisiana Senate Committee Hearings, Plaintiffs were unable to know, in fact the Board of Supervisors concealed from Plaintiffs, that the Board of Supervisors had specific knowledge of the pervasive harassment and heightened risk of sexual assault by certain assailants suffered by Plaintiffs and interfering with Plaintiffs' access to educational opportunities and benefits.[71]

As such, Plaintiffs argue that they were not aware and had no reason to further investigate whether the Board was culpable for the harms they had suffered due to the sexual misconduct they experienced and the lack of appropriate response from the responsible LSU employees until the publication of the Husch Blackwell report in March 2021.[72]

In response, the Board argues that the *Baylor* case is not controlling but that, even if it was, it supports the Board's position regarding the untimeliness of Plaintiffs' claims.[73]  For the same reasons asserted in its Motion, the Board maintains that the doctrine of *contra non valentem*, including the category of intentional concealment, does not apply to Plaintiffs' Title IX claims.[74]

For the same reasons set forth in the Court's February 17, 2023 Order and Reasons granting the motion to dismiss filed by Jennie Stewart, the Court finds that, on their face, Plaintiffs' Title IX deliberate indifference and hostile environment

---

[70] R. Doc. 209 at p. 14 (*citing* R. Doc. 182 at ¶ 649).
[71] R. Doc. 209 at p. 15 (*citing* R. Doc. 182 at ¶ 937).
[72] R. Doc. 209 at p. 16.
[73] R. Doc. 231 at pp. 2-4.
[74] *Id*. at pp. 4-6.

claims, except for Hovis' claims based upon John Loe's alleged violation of a no-contact directive, accrued outside the applicable one-year statute of limitations.[75]  As the Board correctly points out,[76] the Second Amended Complaint alleges that Richardson was raped by an LSU football player during her freshman year at LSU, which began in the fall of 2014, that she was raped by a football recruit in the fall of 2015, that she was verbally and physically abused by LSU football player John Coe between the summer of 2016 and 2017 and had reported the abuse by October 2016, and that LSU football player John Doe attempted to rape her in the fall of 2016 and she reported it to her direct supervisor the following day.[77]  The Second Amended Complaint alleges that Robertson was raped by John Doe on January 22, 2016, that it was reported to LSU a few days later, that John Doe continued to verbally harass Robertson in late spring/early summer of 2016, and that he threw a shake on her car during finals week in May 2016.[78]  The Second Amended Complaint alleges that John Doe took a nude photograph of Brennan without her consent on July 9, 2016, and that Brennan met with LSU officials about it on July 22, 2016.[79]  Plaintiffs allege that John Doe also raped Owens on June 28, 2016, that she first disclosed the rape after checking into a nearby rehabilitation facility on or about April 4, 2017, and that the

---

[75] R. Doc. 317 at pp. 13-15.  While the prior order concerned Plaintiffs' claims against Jennie Stewart brought pursuant to 42 U.S.C. § 1983, the same one-year prescriptive period applicable to Plaintiffs' § 1983 claims applies to their Title IX claims against the Board.

[76] R. Docs. 201-1 pp. 3-4.

[77] R. Doc. 182 at ¶¶ 121-122, 124-130, 147-162, 182-191.

[78] *Id*. at ¶¶ 243-248 & 253-255, & 262-268.

[79] *Id*. at ¶¶ 290-306.

facility reported the sexual assault to LSU's Athletic Department approximately a week after the initial disclosure and informed Owens and her parents of the report.[80]

The Second Amended Complaint alleges that Andries was sexually assaulted by John Roe on a fraternity bus trip in October 2016, that John Roe attempted to sexually assault her again in July 2017, and that she reported the first assault to her LSU therapist in the fall of 2017.[81] Plaintiffs allege that Lewis was physically assaulted by John Coe at least six times between January 2017 and May 2018, and that she first disclosed the abuse to the tennis team athletic trainer in May 2017.[82] Plaintiffs allege that Johnson was verbally and emotionally abused and harassed by the LSU tennis coach, Julia Sell, between the fall of 2017 and her graduation in the spring of 2019, and that Johnson was afraid that she would lose her scholarship if she reported Sell to her psychologist.[83] Plaintiffs allege that Jane Doe was physically and verbally abused by John Poe between the fall of 2018 and March 2019 and that she reported the abuse in March 2019.[84] Plaintiffs allege that Hovis was raped by LSU football player John Loe on January 24, 2020, that she immediately reported it to her Resident Assistant, that she reported that she believed she had been drugged, that she filed a report with the LSU Police Department ("LSUPD"), and that Baton Rouge Police Department officers were called but refused to take a statement from Hovis.[85] Plaintiffs also allege that in June 2020, LSU disciplined Loe for violating

---

[80] *Id.* at ¶¶ 328-338.
[81] *Id.* at ¶¶ 364-373, 376-377, 381.
[82] *Id.* at ¶¶ 456-459, 462-467, & 477-479.
[83] *Id.* at ¶¶ 562, 564-579, 584-589, 592, & 594.
[84] *Id.* at ¶¶ 598-626.
[85] *Id.* at ¶¶ 652-671.

LSU's Title IX policy by suspending him from May 10, 2020 to May 31, 2021, and by issuing a no-contact directive ordering him to have no contact with Hovis.[86]  Plaintiffs allege that Loe violated the no-contact directive twice by having his girlfriend contact Hovis on two occasions in May 2020, that Hovis reported the contact to defendants Stewart and Sanders, but that LSU did not take any disciplinary action against Loe for violating the no-contact directive.[87]   Finally, Plaintiffs allege that Kitch was verbally abused and sexually harassed by her Ph.D. professor and advisor, John Moe, between the fall of 2009 and 2014, but that Kitch was terrified to disclose his pervasive harassment because no one at LSU seemed to experience repercussions for sexual assault and she was afraid that she would never graduate if she did not maintain a good working relationship with Moe.[88]  Plaintiffs also seem to allege that Kitch reported the harassment in August 2019.[89]

Plaintiffs' allegations are deeply disturbing.  Nonetheless, accepting Plaintiffs' allegations set forth in the Second Amended Complaint as true, all of the alleged harassment and abuse, with the exception of John Loe violating the no-contact directive as to Hovis in May 2020, occurred between 2009 and February 2020,[90] which is more than a year before Plaintiffs filed this suit on April 26, 2021.[91]  Additionally, again with the exception of Hovis, Plaintiffs' allegations regarding their hostile environment claim fail to show that Plaintiffs experienced a hostile environment at

---

[86] *Id.* at ¶ 679.
[87] *Id.* at ¶¶ 680-681.
[88] *Id.* at ¶¶ 699-724.
[89] *Id.* at ¶¶ 733-736.
[90] *Id.* at ¶¶ 121-122, 124-130, 147-162, 182-191, 290-306, 328-338, 364-373, 376-377, 381, 456-459, 462-467, 477-479, 562, 564-579, 584-589, 592, 594, 598-626, 652-671, & 699-724.
[91] R. Doc. 1.

LSU within one year before filing suit.  Plaintiffs' allegations in Count II are conclusory and fail to provide a timeframe for when Plaintiffs allegedly experienced a hostile environment at LSU.[92]  Plaintiffs' allegations elsewhere in the Second Amended Complaint indicate that many of the plaintiffs left LSU more than a year before filing suit,[93] while others experienced a hostile environment on campus in 2019 or earlier.[94]

Further, and importantly, Plaintiffs' hostile environment claim is duplicative of their deliberate indifference claim.  In Count I of the Second Amended Complaint, Plaintiffs repeatedly allege that the Board violated Title IX based upon its deliberate indifference to sex-based discrimination and that the Board "created and/or subjected Plaintiffs to a hostile educational environment in violation of Title IX . . . ."[95]  In Count II, Plaintiffs similarly allege that, "Plaintiffs allege violations of Title IX against Defendant LSU Board of Supervisors due to the Board of Supervisors' cultivation and perpetuation of a sexually hostile environment against them."[96]  For all of these reasons, the Court finds that Plaintiffs' Title IX deliberate indifference and hostile environment claims are time-barred on their face.

The Court further finds, for many of the same reasons set forth in its February 17, 2023 Order and Reasons granting Jennie Stewart's motion to dismiss, that the publication of the Husch Blackwell report does not support the application of *contra*

---

[92] R. Doc. 182 at ¶¶ 857-913.
[93] *Id*. at ¶¶ 284, 316-317, 345, 594, 648, & 724.
[94] *Id*. at ¶¶ 130-239, 451, & 456-552.
[95] *Id*. at ¶¶ 755, 757, 760, 778, 788, 815(j), & 847.
[96] *Id*. at ¶¶ 850, 853, 855, & 856.

*non valentem* to the facts set forth in this case.[97]  Specifically, the Court again finds that, within some reasonable amount of time after initially reporting the Title IX violations, Plaintiffs would have understood that the Board's deliberate indifference to their reports was the cause of their post-reporting injuries, including an allegedly hostile environment, or Plaintiffs could reasonably have been expected to inquire further.[98]

The Court reaches the same conclusion with respect to Plaintiffs' allegations of fraudulent concealment.  While Plaintiffs allege in the Second Amended Complaint that, "LSU and its employees, including Defendants Ausberry and Segar, had concealed disclosures of sexual misconduct that should have been reported to LSU's Title IX Office,"[99] the only allegations that can potentially be construed as acts of concealment by the Board, include the following:[100] (1) LSU, including defendant Stewart, concealed the name of Robertson's assailant from Title IX records;[101] (2) LSU, specifically defendant Sanders, concealed information regarding John Roe's other victims and concealed information regarding subsequent reports related to Andries and John Roe;[102] and (3) LSU and its employees, specifically Stewart, had concealed all notes from Jane Doe's multiple interviews and had misrepresented the

---

[97] R. Doc. 317 at pp. 15-18.

[98] *See,* R. Doc. 317 at p. 17 (quoting *Doe 1 v. Baylor University*, 240 F. Supp. 3d 646, 663-64 (W.D. Tex. 2017) (citing *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 761-63 (5th Cir. 2015))).

[99] R. Doc. 182 at ¶ 83(f).

[100] The Court notes that Plaintiffs' allegations refer to "LSU" and, according to the Second Amended Complaint, the Board is referenced in the Second Amended Complaint as "Board of Supervisors." R. Doc. 182 at ¶ 182.

[101] R. Doc. 182 at ¶ 287(c).

[102] *Id.* at ¶ 450(a) & (b).

facts of her report. [103]   Even accepting these allegations as affirmative acts of concealment by the Board, there are no allegations in the Second Amended Complaint that any of these acts prevented Plaintiffs from discovering the facts that form the basis of their deliberate indifference and hostile environment claims against the Board before the publication of the Husch Blackwell report in March 2021.   Stated another way, "Plaintiffs have not alleged any facts from which the court can reasonably infer that they could not have 'discovered' their post-reporting causes of action in the exercise of due diligence."[104]

As the Board points out,[105] Plaintiffs' allegations make clear that they were aware of their alleged injuries and the specific defendants allegedly responsible for those injuries more than a year before this lawsuit was filed.   As such, "Within some reasonable amount of time after their initial reports, Plaintiffs would have understood that [the Board's] deliberate indifference to their reports was the cause of those post-reporting injuries or could reasonably have been expected to 'inquire further.'"[106]   Accordingly, the Court finds that Plaintiffs' Title IX deliberate indifference and hostile environment claims, asserted in Counts I and II of the Second

---

[103] *Id.* at ¶ 649(c).

[104] *Doe 1 v. Baylor University*, 240 F. Supp. 3d 646, 665 (W.D. Tex. 2017) (citation omitted).   *See also, Doe #1 v. Bd. of Supervisors of Louisiana State University and Agricultural and Mechan. College*, Civ. A. No. 21-564, 2022 WL 16701930, at *15 (M.D. La. Nov. 3, 2022) (Dick, C.J.) ("Plaintiffs' allegations do not plausibly allege that LSU engaged in 'affirmative acts of concealment,' or that LSU affirmatively lulled Plaintiffs into inaction or perpetrated 'some trick or contrivance tending to exclude suspicion and prevent inquiry' such to excuse late filing.").

[105] R. Doc. 201-1 at p. 8.

[106] *Doe 1*, 240 F. Supp. 3d at 663-664 (citing *King-White v. Humble Indep. School Dist.*, 803 F.3d 754, 761-763 (5th Cir. 2015)).

Amended Complaint, except for Hovis' claims based upon John Loe's alleged violation of a no-contact directive, are time-barred.

### 2. *Plaintiffs' Title IX Heightened Risk Claims*

The Court reaches the opposite conclusion with respect to Plaintiffs' heightened-risk claims asserted in Count III of the Second Amended Complaint. Plaintiffs allege in the Second Amended Complaint that until the release of the Husch Blackwell report in March 2021, they had no reason to know, and the Board concealed from them, that the Board had specific knowledge of the pervasive harassment and heightened risk of sexual assault by certain assailants suffered by Plaintiffs that interfered with Plaintiffs' access to educational opportunities and benefits.[107]  The Court finds it plausible that Plaintiffs did not have reason to further investigate their heightened risk claims until the publication of the Husch Blackwell report in March 2021.  Accepting Plaintiffs' well-pleaded facts as true and viewing them in the light most favorable to Plaintiffs, as this Court is bound to do,[108] the Court finds that Plaintiffs' Title IX claims for heightened-risk liability did not accrue until March 2021 and, as such, are timely.[109]

### 3. *Plaintiffs' Title IX Retaliation Claims*

Turning next to Plaintiffs' Title IX retaliation claims, asserted in Count IV of the Second Amended Complaint, the Board points out that only six plaintiffs –

---

[107] R. Doc. 182 at ¶ 937.  *See, Id.* at ¶¶ 80, 81, 83, 96, 97, 240, 287, 325, 360, 450, 554, 595, 649, 697, 740, 848, 915, 937.

[108] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[109] *See, Doe 1 v. Baylor University*, 240 F. Supp. 3d 646, 663 (W.D. Tex. 2017).

Owens, Richardson, Andries, Lewis, Johnson, and Doe – actually allege retaliatory conduct and, further, that all of the alleged retaliatory conduct occurred more than a year before Plaintiffs filed this suit on April 26, 2021 and thus are time-barred.[110] Plaintiffs argue that they "make clear in the Second Amended Complaint that they did not become aware of some of the retaliation nor LSU's role in covering up and perpetuating the retaliation until the Husch Blackwell report was released in March 2021, which led them to make the causal connection between the retaliation they had experienced and LSU's culpability."[111]   Plaintiffs, however, do not reference any allegations in the Second Amended Complaint to support this position.  Elsewhere in their Opposition brief, however, Plaintiffs point out that they have alleged that it was not until the release of the Husch Blackwell report that Owens, Richardson, Lewis, Johnson, Andries, and Doe became aware of "the retaliation they suffered from LSU Responsible Employees following good-faith Title IX violation disclosures."[112]   In response, the Board maintains that Plaintiffs' retaliation claims accrued more than a year before Plaintiffs filed this suit and that equitable tolling does not apply to their claims.[113]   The Board further asserts that none of the "additional information" contained in the Husch Blackwell report, as outlined in Plaintiffs' Opposition brief, relates to Plaintiffs' individual claims or injuries, nor does the information "erase Plaintiffs' earlier knowledge of the Board's response to their reports."[114]

---

[110] R. Doc. 201-1 at pp. 5-6.
[111] R. Doc. 209 at pp. 22-23.
[112] *Id*. at p. 15 (*citing* R. Doc. 182 at ¶ 1001).
[113] R. Doc. 231 at p. 4 (*citing* R. Doc. 182 at ¶¶ 175-176, 203, 205-206, 209, 336, 422-423, 426-427, 515-516, 529-530, 594, 629-633, 951, 957, 982, 988-990, & 995); R. Doc. 231 at pp. 5-6.
[114] R. Doc. 231 at p. 5 (*citing* R. Doc. 209 at pp. 10-14).

The Court agrees with the Board that Plaintiffs' retaliation claims are time-barred. "To establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action."[115] According to the Fifth Circuit, "The language of the anti-retaliation provision of Title IX and that of Title VII are similar and 'should be accorded a similar interpretation.'"[116] The Fifth Circuit has also held that, in the context of a Title VII retaliation claim, "retaliation is, by definition, a discrete act, not a pattern of behavior."[117] At least one other court in this Circuit has interpreted this authority to mean that retaliation in the Title IX context is a discrete act.[118]

While Plaintiffs allege, generally, that, "Defendants repeatedly engaged in discriminatory, retaliatory, and other unlawful actions . . . in response to Plaintiffs' reports of Title IX violations,"[119] only six plaintiffs – Richardson, Owens, Andries, Lewis, Johnson, and Doe – allege retaliatory conduct or adverse action by Defendants. Plaintiffs allege that Richardson faced retaliation at work immediately after reporting her physical abuse by John Coe, including termination from her job in the

---

[115] *Collins v. Jackson Pub. Sch. Dist.*, 609 Fed.Appx. 792, 795 (5th Cir. 2015) (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)). *See also, Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011) (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005)) ("To establish title IX retaliation, [plaintiff] must show that the district or its representatives took an adverse action against her because she complained of harassment.").

[116] *Collins*, 609 Fed.Appx. at 795 (quoting *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 252 n.18 (5th Cir. 1997) (citations omitted)).

[117] *Hamic v. Harris County W.C. & I.D. No. 36*, 184 Fed.Appx. 442, 447 (5th Cir. 2006) (citation omitted).

[118] *Doe #1 v. Bd. of Supervisors of Louisiana State Univ. and Agric. and Mechan. College*, Civ. A. No. 21-564-SDD-SDJ, 2022 WL 16701930, at *18-19 (M.D. La. Nov. 3, 2022).

[119] R. Doc. 182 at ¶ 36. *See also, Id.* at ¶ 83(e).

football recruiting office "in the spring of 2017."[120]  Plaintiffs further allege that in the fall of 2018, Richardson was denied an athlete tutor position and that, "another two job opportunities with the football department vanished for Richardson without any explanation."[121]  Regarding Owens, Plaintiffs allege that on or about April 4, 2017, she checked into a rehabilitation facility and disclosed for the first time that she had been raped by John Doe on or around June 28, 2016.[122]  Plaintiffs allege that Owens' counselor reported her rape to LSU and that, after this disclosure, Julia and Mike Sell, who were "Responsible Employees" under LSU's Title IX policy,[123] engaged in materially adverse actions against Owens by disallowing her to re-join the tennis team following her rehabilitation.[124]

Plaintiffs further allege that Andries reported that she was sexually assaulted by John Roe to her LSU therapist in the fall of 2017, and that the assault was subsequently reported to LSU's Lighthouse Program, to the LSU Disability Services Office in February 2019, and to LSU's Title IX Office in March 2019.[125]  Plaintiffs allege that Andries suffered retaliation in response to reporting her abuse, which included being told that she had no right to be kept up to date on the status of her case, being harassed with inappropriate questions during an unnecessary interview on or around August 22, 2019, being denied reasonable accommodations and interim measures on or around August 29, 2019, and LSU issuing a mutual no-contact order

---

[120] R. Doc. 182 at ¶¶ 175 & 203.
[121] *Id*. at ¶¶ 206-209.
[122] *Id*. at ¶¶ 328-337.
[123] *Id*. at ¶ 33.
[124] *Id*. at ¶¶ 950-951.
[125] *Id*. at ¶ 364-397 & 985.

between Andries and John Roe on or around September 26, 2019.[126]  Plaintiffs allege

that after Lewis reported her abuse by John Coe to various LSU athletic department

staff between May 2017 and August 2018, Julia and Mike Sell retaliated against her

in the spring of 2019 "by telling Plaintiff Lewis's teammates to isolate themselves

from Plaintiff Lewis and manipulating Plaintiff Lewis and Johnson into

arguments."[127]  Plaintiffs also allege that after reporting John Coe's abuse to LSUPD

on June 18, 2018, defendant Jonathan Sanders retaliated against Lewis by

"immediately charging" her with violating the residential life policy for having a

candle in her room and placing her on academic probation on or around June 22,

2018.[128]  Finally, Plaintiffs allege that when Coe was banned from the weight room

in the summer of 2018, football coaches made comments to Lewis indicating they

blamed her for Coe being banned from the weight room.[129]

Plaintiffs allege that when Johnson reported John Coe's repeated abuse of

Lewis to Julia Sell, Sell retaliated against Johnson by telling her that she would be a

better tennis player if she stopped "worrying so much about other people." [130]

Plaintiffs do not provide a timeline for this alleged retaliation, but allege that

Johnson graduated from LSU in the spring of 2019.[131]  Plaintiffs further allege that

when Doe reported John Poe's stalking and harassment to LSU's Title IX office in

March of 2019,[132] she suffered retaliation in the form of being denied reasonable

---

[126] *Id*. at ¶¶ 422-423, 426-428, 434-438, & 986- 990.
[127] *Id*. at ¶¶ 962-963.  *See*, *Id*. at ¶¶ 458-470, 474-476, 483-485, & 547-548.
[128] *Id*. at ¶¶ 967-969.  *See, Id.* at ¶¶ 505-516.
[129] *Id*. at ¶¶ 527 & 530.
[130] *Id*. at ¶¶ 580-581 & 981-982.
[131] *Id*. at ¶ 594.
[132] *Id*. at ¶¶ 598-620 & 994.

accommodations, being denied any information about her case under false pretenses, and being told that her case did not fall under the scope of Title IX, all of which occurred in 2019.[133]  Plaintiffs also allege that Doe was retaliated against when LSU forced Doe to undergo "four traumatic interviews that caused severe emotional distress," all of which seemingly occurred in 2019.[134]

Even assuming, without deciding, that the acts alleged to have been taken by LSU individuals constitute adverse actions for purposes of retaliation under Title IX,[135] and that the Board can be held liable for retaliatory acts committed by the individual defendants and other LSU personnel,[136] all of the alleged acts of retaliation, by Plaintiffs' own accounts, occurred between 2017 and 2019, more than a year before Plaintiffs filed this suit on April 26, 2021.

The Court further finds that, for the same reasons previously given, the publication of the Husch Blackwell report in March 2021 does not support the application of *contra non valentem* or fraudulent concealment to the retaliation claims of Richardson, Owens, Andries, Lewis, Johnson or Doe.  As set forth in the Second Amended Complaint, and as with their Title IX deliberate indifference and hostile environment claims, Plaintiffs were aware of the retaliatory actions and by whom they were committed when they occurred or shortly thereafter.  Thus, Plaintiffs were

---

[133] *Id*. at ¶¶ 629-633, 995.

[134] *Id*. at ¶¶ 624-630 & 996.

[135] The Court notes that the Fifth Circuit has held that, in the context of a Title VII retaliation claim, retaliation "requires an adverse employment action, which has been defined in this Circuit as an ultimate employment decision, such as hiring, granting leave, discharging, promoting, and compensating."  *Hamic v. Harris County W.C. & I.D. No. 36*, 184 Fed. Appx. 442, 447 (5th Cir. 2006) (citation omitted).

[136] Neither party addressed this issue in their briefing.

aware of the facts that form the basis of their retaliation claims more than a year before they filed this lawsuit.  As such, the Court rejects Plaintiffs' contention that they "make clear in the Second Amended Complaint that they did not become aware of some of the retaliation nor LSU's role in covering up and perpetuating the retaliation until the Husch Blackwell report was released in March 2021 . . . ."[137] Accordingly, the Title IX retaliation claims asserted by Richardson, Owens, Andries, Lewis, Johnson, and Doe are time-barred and the Board's Motion is granted to the extent that the Board seeks dismissal of these claims.

As for the remaining plaintiffs, Robertson, Brennan, Hovis, and Kitch, the Second Amended Complaint contains only a conclusory allegation that LSU "had specific knowledge of the pervasive harassment and retaliation" that they each suffered.[138]  Such conclusory allegations are insufficient to state a plausible Title IX claim for retaliation against the Board.  The Board's Motion is therefore granted to the extent that the Board seeks dismissal of their retaliation claims.

### B. Hovis' Title IX Deliberate Indifference and Hostile Environment Claims.

Because the Court has determined that Hovis' Title IX deliberate indifference and hostile environment claims are not time-barred to the extent they are based upon Hovis' allegation that John Loe violated a no-contact directive in May 2020, the Court addresses the Board's assertion that these claims should be dismissed for failing to state a plausible claim for relief.

---

[137] R. Doc. 209 at pp. 22-23.
[138] R. Doc. 182 at ¶¶ 287(a), 325(b), 697, & 740(a).  *See, Id*. at ¶¶ 242-288, 289-326, 651-698, & 699-741.

### 1.  *Hovis' Title IX Deliberate Indifference Claim*

The Board asserts that Hovis' Title IX deliberate indifference claim fails because Plaintiffs have failed to show that the Board was "deliberately indifferent to the harassment."[139]  The Board claims that deliberate indifference "is an extremely high standard to meet," and that a defendant is deliberately indifferent when its response or lack of response was "clearly unreasonable in light of the known circumstances." [140]  According to the Board, Hovis alleges that LSU failed to appropriately respond to her complaint that Loe violated the no-contact order because LSU did not take any disciplinary action against Loe.  The Board argues that this alleged action is not clearly unreasonable in light of the facts because Hovis admits that Loe was suspended in May 2020, so LSU had already taken significant disciplinary action by removing Loe from campus.[141]  The Board asserts that Hovis does not allege that the Board had prior knowledge of harassment by Loe, against Hovis or anyone else, nor does Hovis allege that the conduct recurred.[142]

Plaintiffs argue that, as alleged in the Second Amended Complaint, "the suspension was only for a fleeting three weeks – hardly a 'significant disciplinary action.'"[143]  Plaintiffs assert that LSU did nothing to ensure that Hovis was protected from further abuse by Loe.  Although Hovis eventually obtained a no-contact directive six months after reporting her assault, Plaintiffs claim that Hovis reported both

---

[139] R. Doc. 201-1 at p. 10 (quoting *I.L. v. Houston Indep. Sch. Dist.*, 776 Fed.Appx. 839 (5th Cir. 2019)) (internal quotation marks omitted).
[140] R. Doc. 201-1 at p. 10 (quoting *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360 (5th Cir. 2019) and *I.L.*, 776 Fed.Appx. at 842) (internal quotation marks omitted).
[141] R. Doc. 201-1 at pp. 10-11.
[142] *Id*. at p. 11 (citing *I.L.*, 776 Fed.Appx. at 843).
[143] R. Doc. 209 at p. 23 (*citing* R. Doc. 182 at ¶ 679.

incidents of Loe's girlfriend violating that directive and that LSU took no action to prevent or discipline Loe for these violations. Instead, Plaintiffs assert that LSU eventually allowed Loe to transfer to another institution.[144] Plaintiffs further assert that over the next few months, Hovis' grades and ability to participate in her education began to suffer and she sought help from LSU, but that LSU refused to provide her with any accommodations to remedy the hostile environment she experienced.[145] Relying upon the Fifth Circuit's decision in *M.D. by Stukenberg v. Abbott*, Plaintiffs assert that the Board acted with deliberate indifference because it consciously disregarded a known and excessive risk to Hovis' health and safety.[146]

The Fifth Circuit has made clear that deliberate indifference in the Title IX context is a "high bar" and requires the defendant's response to be "clearly unreasonable in light of the known circumstances."[147] According to the Fifth Circuit, "neither negligence nor mere unreasonableness is enough."[148] "Courts afford broad deference to school officials and should not 'second-guess[] the disciplinary decisions made by school administrators.'"[149] Further, "Schools need not 'accede to a parent's remedial demands' or actually succeed in remedying the harassment."[150] The Fifth has further clarified, however, that, "when there is 'an official decision by the [school

---

[144] R. Doc. 209 at p. 23 (*citing* R. Doc. 182 at ¶¶ 679-682.

[145] R. Doc. 209 at p. 23 (*citing* R. Doc. 182 at ¶¶ 687-693).

[146] R. Doc. 209 at p. 24 (citing *M.D. by Stukenberg*, 907 F.3d 237, 252 (5th Cir. 2018)).

[147] *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022) (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011)) (internal quotation marks omitted).

[148] *Sanches*, 647 F.3d at 167 (citing *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 625 U.S. 629, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

[149] *Roe*, 53 F.4th at 341 (quoting *Davis*, 526 U.S. at 648, 119 S.Ct. 1661).

[150] *Roe*, 53 F.4th at 341 (quoting *Sanches*, 647 F.3d at 167-168).

district] not to remedy the violation' such that its deliberate indifference 'caus[es] the discrimination,' a school commits a Title IX violation."[151]

Accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiffs, as the Court is bound to do,[152] the Court finds that Plaintiffs allegations, while thin, are sufficient to show that the Board was deliberately indifferent in its response, or lack thereof, to Hovis' report that Loe twice violated the no-contact directive issued by LSU. Although not addressed by either party, the timeline set forth in the Second Amended Complaint regarding Loe's violation of the no-contact directive and his suspension from LSU is somewhat confusing. Plaintiffs allege that on March 6, 2020, one of LSU's Title IX investigators concluded that Loe violated LSU's Title IX policy by sexually assaulting Hovis on January 24, 2020 and that defendant Miriam Segar was notified of that conclusion that same day.[153] Plaintiffs then allege that in approximately June of 2020, LSU disciplined Loe for violating the Title IX policy by suspending him from LSU from *May 10, 2020 to May 31, 2021*, and by issuing a no-contact directive ordering Loe to have no communication or contact with Hovis.[154] Further, in their Opposition brief, Plaintiffs state that the suspension "was only for a fleeting three weeks."[155] Plaintiffs provide no additional information in the Second Amended Complaint regarding Loe's purported retroactive suspension, nor do Plaintiffs allege whether the no-contact directive was likewise

---

[151] *Roe*, 53 F.4th at 341 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-291, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998); *Davis*, 526 U.S. at 642-643, 119 S.Ct. 1661).
[152] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).
[153] R. Doc. 182 at ¶¶ 677-678.
[154] *Id*. at ¶ 679.
[155] R. Doc. 209 at p. 23.

retroactive to a date in May 2020. Nonetheless, despite alleging that LSU did not issue the no-contact directive until June 2020, Plaintiffs allege that Loe violated the directive twice by having his girlfriend contact Hovis in *May 2020*.[156] Believing this to be a typographical error, the Court reviewed Plaintiffs' prior amended complaint, which contains the same allegations.[157]

It is unclear to the Court from the foregoing allegations whether Loe's suspension occurred before or after his alleged violation of LSU's no-contact directive and, thus, whether the suspension can be considered a response by LSU to Loe's violation of the no-contact directive. In Count II of the Second Amended Complaint, however, Plaintiffs further allege that LSU was deliberately indifferent to the harassment experienced by Hovis when, after reporting Loe's two violations of the no-contact directive, "LSU took no action to enforce the no-contact order."[158] Viewing all well-pleaded facts in the light most favorable to Plaintiffs, the Court agrees with Plaintiffs that the Board's failure to respond to Loe's violation of the no-contact directive was clearly unreasonable in light of the known circumstances.[159] According to the Second Amended Complaint, those "known circumstances" include a prior determination by an LSU Title IX investigator that Loe violated LSU's Title IX policy by sexually assaulting Hovis on January 24, 2020, which resulted in Loe's subsequent

---

[156] R. Doc. 182 at ¶ 680.

[157] *See*, R. Doc. 22 at ¶¶ 330-332. The Court notes that the original Complaint filed on April 26, 2021 did not name Hovis as a plaintiff. *See*, R. Doc. 1.

[158] R. Doc. 182 at ¶ 837.

[159] *Id*. at ¶ 838. *See*, *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022) (citing authority) ("However, when there is 'an official decision by the [school district] not to remedy the violation' such that its deliberate indifference 'caus[es] the discrimination,' a school commits a Title IX violation.").

year-long suspension and the issuance of the no-contact directive at issue.[160]   The
Board does not contest or otherwise dispute these allegations in its briefing.[161]   As
such, the Court finds that Hovis has alleged a facially plausible Title IX deliberate
indifference claim against the Board based upon the Board's failure to respond to
Loe's alleged violation of the no-contact directive issued by LSU in June 2020.

### 2.  *Hovis' Title IX Hostile Environment Claim*

The Board next asserts that Hovis' hostile environment claim must be
dismissed because Plaintiffs have failed to show that the alleged harassment was so
severe, pervasive, and objectively offensive that it deprived Hovis of access to the
educational opportunities provided by LSU and that the Board was deliberately
indifferent to the harassment.[162]   The Board relies upon its prior arguments
regarding Hovis' failure to allege deliberate indifference, and further claims that
Hovis has not alleged a deprivation of educational opportunities.[163]   The Board
acknowledges that Plaintiffs have alleged that Hovis could not attend a class near
the football stadium out of fear of seeing Loe and that Hovis failed a class because
she did not attend a midterm due to stress.   The Board, however, argues that these
allegations are insufficient under Fifth Circuit authority, which requires an
allegation that the harassment "undermines and detracts from the victims'

---

[160] R. Doc. 182 at ¶¶ 677-679.
[161] *See, generally,* R. Docs. 201-1 & 231.
[162] R. Doc. 201-1 at p. 11 (citing *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 625 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).
[163] R. Doc. 201-1 at p. 11.

educational experience" and "effectively denied" the victim equal access to the institution's resources and opportunities.[164]

Plaintiffs assert that the Board appears to conflate the standard of proof required for a hostile environment claim with the standard applicable to a deliberate indifference claim, and argue that a hostile environment claim only requires proof that the harassment was severe, pervasive, and objectively unreasonable.[165] Plaintiffs further assert that the Board "entirely misstates and minimizes the educational harm suffered by Hovis."[166]  Plaintiffs point out that they also alleged that Hovis' grades suffered significantly, she had difficulty making it to classes, she ended up failing and having to pay to retake a class, her anxiety about seeing Loe was so overwhelming that she found it nearly impossible to attend a class that took place in a building near the football stadium, and that she had to start seeing a psychiatrist to seek accommodations and medical intervention for her PTSD, generalized anxiety disorder, depression, and panic disorder.[167]  As such, Plaintiffs argue that Hovis has pled sufficient facts to prove that the harassment she experienced was severe, pervasive, and objectively unreasonable.  In response, the Board maintains that Hovis' allegations are insufficient to state a hostile environment claim for the same reasons asserted in their Motion.[168]

---

[164] R. Doc. 201-1 at pp. 11-12 (*citing* R. Doc. 182 at ¶ 905; *Davis*, 526 U.S. at 651, 119 S.Ct. 1661).
[165] R. Doc. 209 at pp. 24-25 (citing *Davis*, 526 U.S. at 652, 119 S.Ct. 1661).
[166] R. Doc. 209 at p. 25.
[167] *Id*. (*citing* R. Doc. 182 at ¶¶ 683-698).
[168] R. Doc. 231 at p. 7.

Both the Supreme Court and the Fifth Circuit have recognized that a Title IX claim may be based on a hostile environment theory.[169]  As previously mentioned, to establish a Title IX hostile environment claim, a plaintiff must show that: (1) the defendant had actual knowledge of the harassment; (2) the harasser was under the defendant's control; (3) the harassment was based on the victim's sex; (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit;" and (5) the defendant was deliberately indifferent to the harassment.[170]  Here, the Board challenges the fourth and fifth elements of Hovis' hostile environment claim.  The Court has already determined that Plaintiffs have alleged sufficient facts to show that the Board was deliberately indifferent to Loe's violation of the no-contact directive, thus addressing the fifth factor.  The Court now finds that Plaintiffs have failed to allege sufficient facts to show that Loe's violation of the no-contact directive was so severe, pervasive, and objectively offensive that it barred her access to educational opportunities or benefits.

Although not mentioned by the parties, Plaintiffs allege in Count II of the Second Amended Complaint that Hovis was subjected to "severe, pervasive, and objectively offensive sexual harassment in the form of forcible rape in an environment that lacked appropriate training and support services for survivors of sexual

---

[169] *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 625 U.S. 629, 638-642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999); *Sewell v. Monroe City Sc. Bd.*, 975 F.3d 577, 583-584 (5th Cir. 2020).
[170] *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022) (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (alteration in original) (quoting *Davis*, 526 U.S. at 650, 119 S.Ct. 1661)).

misconduct."[171]  Plaintiffs further allege that Hovis' harassment "was sufficiently severe to create an objectively hostile environment" so as to alter the conditions of her educational environment because Hovis could not attend classes near the football stadium because of her fear and anxiety of seeing Loe and that Hovis failed one of her classes because she could not get out of bed for her midterm due to the stress and anxiety she experienced due to the rape.[172]  Count II contains no allegations regarding the severity of the harassment experienced by Hovis as a result of Loe's violation of the no-contact directive.

Elsewhere in the Second Amended Complaint, Plaintiffs allege that Loe twice violated the no-contact directive "by having his girlfriend contact Hovis on two occasion in May 2020," but Plaintiffs offer no other information regarding this contact.[173]  Plaintiffs also allege that, "Hovis was deeply traumatized by the rape and the Title IX investigation process,"[174] that, "Despite being an excellent student prior to the rape, Hovis failed one of her classes as a result of the rape because she couldn't get out of bed for her midterm exam,"[175] that she was denied an extension of her accommodations from LSU's Disability Services office in January 2021 even though she "still suffered the disabling consequences of Loe's rape,"[176] and that, "As a result of the rape and of LSU's failures, Hovis must go to a psychiatrist to get accommodations and medical intervention for PTSD, generalized anxiety disorder,

---

[171] R. Doc. 182 at ¶ 904.
[172] *Id.* at ¶ 905.
[173] *Id.* at ¶ 680.
[174] *Id.* at ¶ 683.
[175] *Id.* at ¶ 687.
[176] *Id.* at ¶¶ 690-691.

depression, and panic disorder."[177]  None of these allegations, however, connect Hovis'
alleged deprivation of access to educational opportunities and benefits to Loe's
violation of the no-contact directive in May 2020.  As such, even viewing all well-
pleaded allegations in the light most favorable to Hovis, the Court finds that Hovis
has failed to state a Title IX hostile environment claim against the Board based upon
Loe's alleged violation of the no-contact directive.

### C. Plaintiffs' Title IX Heightened Risk Claims.

The Board further asserts that, to the extent they are not time-barred,
Plaintiffs' Title IX heightened risk claims must be dismissed because the Fifth Circuit
has "never recognized or adopted a Title IX theory of liability based on a general
'heightened risk' of sex discrimination" and has "decline[d] to do so."[178]  Plaintiffs
argue that the Board has presented "an incomplete characterization" of the Fifth
Circuit's opinion in *Poloceno v. Dallas Independent School District*, and further assert
that the Fifth Circuit declined to adopt they heightened risk theory of liability in
*Poloceno* because the facts involved excessive physical exercise rather than student-
on-student sexual assault. [179]  Plaintiffs contend that the Fifth Circuit "clearly
acknowledged heightened risk as a theory of liability" in its sister circuits, thereby
keeping open the option of adopting the heightened risk theory of liability in a future
case.[180]  Plaintiffs further assert that, "this Court has recognized a heightened risk

---

[177] *Id*. at ¶ 694.
[178] R. Doc. 201-1 at p. 12 (quoting *Poloceno v. Dallas Independent School District*, 826 Fed.Appx. 359,
363 (5th Cir. 2020)).
[179] R. Doc. 209 at p. 20 (citing *Poloceno*, 826 Fed.Appx. at 363).
[180] R. Doc. 209 at p. 20 (citing *Poloceno*, 826 Fed.Appx. at 363).

theory of liability in Title IX cases," although Plaintiffs cite a case from the Middle District of Louisiana in support of that assertion.[181]  In response, the Board maintains that Plaintiffs' Title IX heightened risk claim is not available under *Poloceno,* and point out that the case relied upon by Plaintiffs was decided before *Poloceno,* which the Board contends is "the Fifth Circuit's controlling ruling" on this issue.[182]

While there is conflicting case law on this issue, the Court finds that a Title IX heightened risk claim is available to Plaintiffs.  The Court reaches this conclusion based the specific facts and language of *Poloceno*, as well as subsequent authority from within this Circuit recognizing a Title IX heightened risk claim in the context of allegations of student-on-student sexual harassment.  In *Poloceno*, an unpublished Fifth Circuit opinion from 2020, the plaintiff alleged that the defendant violated her daughter's rights under Title IX "by having 'a physical exercise program that did not consider the physical and metabolic differences between boys and girls.'"[183]  On appeal, plaintiff argued that the district court erred in dismissing her complaint on the basis that she had failed to allege intentional discrimination and had alleged only disparate impact.[184]  The Fifth Circuit, however, affirmed the lower court's dismissal of plaintiff's Title IX claim for failing to allege intentional discrimination.[185]  Plaintiff also argued on appeal that she had an actionable Title IX heightened risk claim and that the district court erred by recharacterizing it as a disparate-impact claim.[186]  The

---

[181] R. Doc. 209 at p. 21 (citing *Gruver v. State*, 401 F. Supp. 3d 742, 762 (M.D. La. 2019)).
[182] R. Doc. 231 at pp. 7-8 (citing *Poloceno*, 826 Fed.Appx. at 363).
[183] *Poloceno*, 826 Fed.Appx. at 362.
[184] *Id*.
[185] *Id*. at 363.
[186] *Id*.

Fifth Circuit held that, "We have never recognized or adopted a Title IX theory of liability based on a general 'heightened risk' of sex discrimination, and we decline to do so."[187]  Importantly, the Fifth Circuit then observed that, "the cases from our sister circuits that recognize the 'heightened risk' analysis limit this theory of liability to contexts in which students committed sexual assaults on other students, circumstances not present here."[188]

At first glance, it would appear that *Poloceno* stands for the proposition that the Fifth Circuit has expressly declined to recognize the availability of any Title IX heightened risk claim.  But in a more recent, published opinion, the Fifth Circuit seemed to recognize the availability of a heightened risk claim in the context of student-on-student sexual assault allegations.  In *Roe v. Cypress-Fairbanks Independent School District*, the plaintiff asserted that the defendant was liable under Title IX for her "pre-assault claims" and alleged that, "'[a]s a result of CFISD's deliberate indifference, Plaintiff was subjected to a heightened risk that she would be a victim of dating violence and sexual assault.  This risk materialized when she was assaulted on campus.'"[189]  In a supplemental brief to the district court, the defendant cited *Poloceno* to support its position that the plaintiff's heightened risk claim should

---

[187] *Id.*

[188] *Id.* (citing *Simpson v. Univ. of Colo. at Boulder*, 500 F.3d 1170 (10th Cir. 2007) (applying heightened-risk liability theory in a student-on-student sexual harassment case); *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1112 (9th Cir. 2020) (articulating a four-element test for a plaintiff's heightened risk theory in cases of sexual misconduct and sexual harassment)).

[189] *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, Civ. A. No. H-18-2850, 2020 WL 7043944, at *8 (S.D. Tex. Dec. 1, 2020) (Lake, J.), aff'd in part, rev'd in part by *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*,

be dismissed.[190]  The district court in *Roe* rejected that argument, concluding that:

> Because the claims at issue in *Poloceno* did not stem from sexual harassment or assault but, instead, from excessive physical exercise, and the Fifth Circuit explained its decision not to recognize the heightened risk theory in that case by stating that "the cases from our sister circuits that recognize the 'heightened risk' analysis limit this theory of liability to contexts in which students committed sexual assault on other students, circumstances not present here," *id.*, the court concludes that the Fifth Circuit has not foreclosed the possibility of recognizing the heightened risk theory in an appropriate case.  But this is not an appropriate case.[191]

Then, "Assuming without deciding that the Fifth Circuit would recognize plaintiff's ability to assert a Title IX claim based on her allegations that CFISD maintained an official policy that created a heightened risk that she would be sexually assaulted," the district court in *Roe* concluded that the defendant was entitled to summary judgment on the claim because plaintiff had failed to raise a genuine issue of material fact as to three of the four elements applicable to her heightened risk claim.[192]

The plaintiff in *Roe* appealed that decision, arguing that the defendant was deliberately indifferent to her risk of sexual assault and in response to her abusive relationship, sexual assault, and subsequent related harassment.[193]  In determining whether the district court had erred in concluding that the defendant was not deliberately indifferent to plaintiff's risk of sexual assault, the Fifth Circuit set forth the five elements that a Title IX plaintiff must prove,[194] and found that the two

---

[190] *Roe*, 53 F.4th 334 (5th Cir. 2022).

[191] *Roe*, Civ. A. No. H-18-2850, 2020 WL 7043944 at *8.

[192] *Id.* at *10-14.

[193] 53 F.4th 334, 340 (5th Cir. 2022).

[194] As explained elsewhere in this Order, a Title IX plaintiff must prove that: (1) the defendant had actual knowledge of the harassment; (2) the harasser was under the defendant's control; (3) the harassment was based on the victim's sex; (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or

elements at issue in the case were the defendant's actual knowledge of the sexual harassment and the defendant's deliberate indifference.[195]    The Fifth Circuit concluded that the plaintiff had failed to show that the defendant had actual knowledge of plaintiff's risk of sexual assault[196] and, as such, affirmed the district court's decision granting summary judgment on plaintiff's heightened risk claim.    The Fifth Circuit specifically found that the plaintiff was unable to create a genuine issue of material fact regarding whether the defendant was liable for pre-assault deliberate indifference.[197]    Noticeably absent from the *Roe* decision is any reference to *Poloceno* or the suggestion that a Title IX claim cannot be based upon a heightened risk theory of liability.

At least two district courts in this Circuit have similarly recognized the availability of Title IX heightened risk claims.    In *Doe v. Board of Supervisors of the University of Louisiana System*, the plaintiff alleged, among other things, that before her assault, the deliberate indifference of the Board of Supervisors of the University of Louisiana System ("ULS") to actual notice of the threat posed by one of its students, manifested by ULS's failure to investigate or meaningfully discipline the student after he was arrested for rape and ULS's failure to prevent him from transferring to Louisiana Tech University, substantially increased her risk of being sexually assaulted by the student.[198]    In denying ULS's motion to dismiss the heightened risk

---

benefit;" and (5) the defendant was deliberately indifferent to the harassment.    *Roe*, 53 F.4th at 341 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (alteration in original)) (internal quotation marks omitted).

[195] *Roe*, 53 F.4th at 341.

[196] 53 F.4th at 341-342.

[197] *Id*. at 342.

[198] Civ. A. No. 22-00338-BAJ-SDJ, 2023 WL 143171, at *12 (M.D. La. Jan. 10, 2023) (Jackson, J.).

claim, the Middle District of Louisiana, citing *Roe*, determined that the claim was both facially plausible and that it was timely-filed.[199]  The district court does not mention the *Poloceno* decision in its analysis or otherwise suggest that a Title IX heightened risk claim is not available in this Circuit.

*In Doe v. Texas A&M University*, a case that was decided before *Roe,* the plaintiffs also asserted a "pre-assault claim," alleging that the defendant created a heightened risk that their daughter would be assaulted.[200]  In addressing the defendant's motion to dismiss, the Southern District of Texas held that, "While the Fifth Circuit has not recognized as cognizable a Title IX claim for creation of a general heightened risk of discrimination, it has not foreclosed the possibility that such a claim may be cognizable in the context of student-on-student sexual assault."[201]  The district court further held that, "In *Poloceno* the court acknowledged that both the Ninth and Tenth Circuits have recognized Title IX heightened risk claims in the context of student-on-student sexual harassment or assault."[202]  The *Doe* court also recognized that, "Cases within the Fifth Circuit that have recognized Title IX pre-assault claims are based on allegations that the defendants failed to address sexually hostile environments after receiving reports of sexual assault."[203]  The district court ultimately granted the defendant's motion to dismiss the heightened risk claim,

---

[199] *Id*. at *12-16.  *See, Id*. at *9 (citing *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341-42 (5th Cir. 2022)).

[200] Civ. A. No. H-21-3728, 2022 WL 5250294, at *5 (S.D. Tex. Oct. 6, 2022) (Lake, J.).

[201] *Id*. at *6 (citing *Poloceno v. Dallas Indep. Sch. Dist.*, 826 Fed.Appx. 359, 363 (5th Cir. 2020)).

[202] *Doe*, Civ. A. No. H-21-3728, 2022 WL 5250294 at *6 (citing *Poloceno*, 826 Fed.Appx. at 363 & n.5).

[203] *Doe*, Civ. A. No. H-21-3728, 2022 WL 5250294 at *6 (citing *Does 1-10 v. Baylor University*, 240 F. Supp. 3d 646, 662 (W.D. Tex. 2017); *Doe 12 v. Baylor University*, 336 F. Supp. 3d 763, 782-83 (W.D. Tex. 2018)).

finding that the plaintiffs had failed to allege facts showing that the defendant had knowledge of objectively offensive conduct before the alleged sexual assaults occurred or that the defendant had an official policy or custom that created a heightened risk of sexual assault.[204]

The Court is aware of at least one case in which one of our sister courts dismissed a Title IX claim as not viable on the basis that the Fifth Circuit in *Poloceno* "unequivocally communicated that it has '**never** recognized or adopted' a heightened risk claim under Title IX, [and] it '**decline[s] to do so**.'"[205]  Nonetheless, the Court is not bound by that authority and notes that that court did not have the benefit of the Fifth Circuit's decision in *Roe*, as that opinion was released subsequent to the district court's order.  Relying upon *Roe,* the two *Doe* opinions issued by other district courts in this Circuit, and the specific facts of *Poloceno*, the Court finds that while the Fifth Circuit has not recognized a Title IX heightened risk claim, it has not foreclosed the possibility that such a claim may be cognizable in the context of student-on-student sexual assault allegations.  Accordingly, the Court concludes that Plaintiffs' Title IX heightened risk claims are not subject to dismissal on the only basis urged by the Board, namely that the claim is unavailable under *Poloceno*.[206]

---

[204] *Doe*, Civ. A. No. H-21-3728, 2022 WL 5250294, at *7-8.
[205] *Doe #1 v. Bd. of Supervisors of Louisiana State Univ. and Agric. and Mechan. College*, Civ. A. No. 21-564-SDD-SDJ, 2022 WL 16701930, at *16 (M.D. La. Nov. 3, 2022) (emphasis in original).
[206] *See*, R. Doc. 231 at p. 7.

### D. Punitive Damages.

The Board further asserts that Plaintiffs' claim for punitive damages should be dismissed because punitive damages are not available under Title IX.[207]  Plaintiffs concede that punitive damages are not available under Title IX, but assert that punitive damages are available pursuant to their other causes of action in the Second Amended Complaint.[208]  As such, Plaintiffs assert that the Motion should be denied with respect to the Board's request to dismiss their claim for punitive damages.

The Court finds Plaintiffs' Opposition brief puzzling.  Plaintiffs' readily admit that they are not entitled to punitive damages under Title IX, but seem to suggest that they can maintain a claim for punitive damages against the Board because they have alleged non-Title IX claims against other defendants.  Plaintiffs, however, fail to address the fact that they have alleged only Title IX claims against the Board.  As the Board points out, both the Western District of Louisiana and the Middle District of Louisiana have held that punitive damages are not available under Title IX.[209]  Plaintiffs have failed to direct the Court to any contradictory authority.  As such, because Plaintiffs have alleged only Title IX claims against the Board, the Court finds that Plaintiffs' claim for punitive damages against the Board must be dismissed.[210]

---

[207] R. Doc. 201-1 at p. 12 (citing *Minnis v. Bd. of Supervisors of Louisiana State Univ. and Agric. and Mechan. Coll.*, 972 F. Supp. 2d 878 (M.D. La. 2013); *Kirk v. Sch. Bd. City of Monroe*, Civ. A. No. 3:17-CV-01466, 2020 WL 7931377 (W.D. La. Dec. 21, 2020) (Hayes, M.J.)); R. Doc. 231 at p. 8 (citing *Minnis, supra*; *Kirk*, *supra*).

[208] R. Doc. 209 at p. 25.

[209] *Minnis*, 972 F. Supp. 2d at 889 (citing *Mercer v. Duke University*, 50 Fed.Appx. 643, 644 (4th Cir. 2002); *Kirk*, Civ. A. No. 3:17-CV-01466, 2020 WL 7931377 at *4 (citing *Barnes v. Gorman*, 536 U.S. 181, 185, 122 S.Ct. 2097, 2100, 153 L.Ed.2d 230 (2002); *Minnis*, 972 F. Supp. 2d at 889).

[210] To the extent Plaintiffs assert that they are entitled to punitive damages based upon other claims alleged in the Second Amended Complaint, the Court recently dismissed all of Plaintiffs' claims asserted against the remaining defendants.  *See,* R. Docs. 317, 319, 321, & 323.

### E. Leave to Amend is Denied.

Although not mentioned by either party in their briefs,[211] the Court finds that granting Plaintiffs leave to amend their complaint to address the foregoing deficiencies is not appropriate in this case under Fed. R. Civ. P. 15. This Court will "freely give leave [to amend] when justice so requires,"[212] but leave to amend "is by no means automatic."[213] In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[214] "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[215]

Applying those factors here, the Court finds that any amendment would likely be futile and is likely to cause undue delay in this case. More importantly, however, Plaintiffs have already been afforded two opportunities to amend their allegations,[216] and have repeatedly failed to cure the deficiencies through amendments previously allowed. Based upon the foregoing and exercising its discretion under Fed. R. Civ. P. 15, Plaintiffs will not be afforded a third opportunity to amend their claims against the Board.

---

[211] *See*, R. Docs. 201-1, 209, & 231.
[212] Fed. R. Civ. P. 15(a).
[213] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).
[214] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).
[215] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).
[216] *See*, R. Docs. 1, 22, 177, 180, 181, & 182.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion to Dismiss Second Amended Complaint by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College[217] is **GRANTED in part** and **DENIED in part.**  The Motion is **GRANTED** to the extent that the Board seeks dismissal of Plaintiffs' Title IX hostile environment and retaliation claims asserted in Counts II and IV of the Second Amended Complaint, and those claims are hereby **DISMISSED WITH PREJUDICE**.  The Motion is also **GRANTED** to the extent that the Board seeks dismissal of the Title IX deliberate indifference claims asserted by Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, and Sarah Beth Kitch in Count I of the Second Amended Complaint, and those claims are **DISMISSED WITH PREJUDICE.**  The Motion is also **GRANTED** to the extent that the Board seeks dismissal of Plaintiffs' claim against it for punitive damages.

The Motion is **DENIED**, however, to the extent that the Board seeks dismissal of Plaintiffs' Title IX heightened risk claim, asserted in Count III of the Second Amended Complaint, and to the extent that the Board seeks dismissal of Corinn Hovis' Title IX deliberate indifference claim, asserted in Count I of the Second

---

[217] R. Doc. 201.

Amended Complaint, to the extent that her claim is based upon John Loe's alleged violation of LSU's no-contact directive.

New Orleans, Louisiana, March 31, 2023.


**WENDY B. VITTER**
**United States District Judge**