**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| ABBY OWENS, ET AL. | CIVIL ACTION NO.  3:21-CV-00242 |
| VERSUS | JUDGE WENDY B. VITTER |
| LOUISIANA STATE UNIVERSITY, ET AL. | MAGISTRATE JUDGE JOHNSON |

### STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO MOTION FOR SUMMARY JUDGMENT NO. 4: ABBY OWENS

Pursuant to Rule 56.1 of the Local Rules and in conjunction with its Motion for Summary Judgment No. 4: Abby Owens, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board") contends that the following are material facts which present no genuine issue: [1]

1. Abby Owens was a student at LSU from Fall 2013 to Spring 2017, where she was a member of the LSU tennis team.  (Owens 13, 102)[2]

2. On the evening of June 28, 2016, Owens and her friends consumed alcohol together at an off-campus apartment and then went to an off-campus bar, where she continued to consume alcohol to intoxication.  (Owens 14-16, 42-46)

3. Owens said she met John Doe at the bar for the first time and became "star-struck." (Owens 43-44, 46-47)  Doe and Owens exchanged numbers at some point during the evening.  (Owens 63)

---

[1] The Board accepts Plaintiff's facts as true for purposes of this motion and memorandum only.

[2] Relevant portions of the deposition transcripts and exhibits of Plaintiff, Ashlyn Mize, Samantha Brennan, Miriam Segar, Jennie Stewart, Julia Sell, and the 30(b)(6) of the Board are attached to the Board's motion as Exhibits A, B, C, D, E, F, and G respectively.  The declarations of Segar and Jonathan Sanders are also attached to the Board's motion as Exhibits H and I, respectively.  Citations to the depositions will be by the last name of the deponent and the page or exhibit number.  Deposition transcripts with more than one volume will include a Roman numeral to identify the cited volume.  Citations to the declarations will be by the witness's last name and paragraph or exhibit number.

PD.42458493.1

4. Doe eventually drove Owens and at least one friend home. (Owens 48-50) Doe dropped off Owens' friend and then drove to Owens' off-campus apartment complex, where Doe also lived. (Owens 50-52)

5. Doe texted Owens at around 2 a.m. and asked if he could come over, and Owens agreed. (Owens 53-54, 62)

6. The next day, Owens vaguely recalled having sex with Doe, although Owens did not find any physical evidence that she had done so. (Owens 55-57)

7. Owens remembered performing oral sex on Doe, and she does not believe she "resisted." (Owens 56-57)

8. She did not have any bruises or marks on her, nor did she find evidence of semen or condoms. (Owens 57-58)

9. She has questioned her "willingness" to engage in sex with Doe, recalling a flashback of telling Doe "not to forget her" as he left her apartment. (Owens 161)

10. Owens believes in hindsight that their sexual conduct should be considered non-consensual because she was intoxicated. (Owens 73, 160-162)

11. While Owens describes her condition as "heavily intoxicated" that night, she acknowledges she was able to stand, speak, walk, text, and perform oral sex. (Owens 53-58, 62-63, 67-68, 161)

12. Owens has no idea whether Doe was also intoxicated. (Owens 107-108, 164, 169)

13. Prior to her rehab in April 2017, Owens had not considered the encounter with Doe as sexual assault. (Owens 73) Therefore, Owens never reported the incident to anyone at LSU. (Owens 40, 86, 98, 207)

PD.42458493.1

14. Instead, within a few days of the incident with Doe, Owens told a friend that "she had sex" with Doe.  (Owens 59-60)

15. Owens never had any further interactions with Doe other than that she texted him to tell him she was sorry about something that occurred to Doe's brother and to see him briefly in the apartment lobby and in a bar.  (Owens 61-66)

16. Doe never acknowledged to Owens that the two of them had sex, and Doe did not do anything inappropriate to Owens thereafter.  (Owens 61-66)

17. **Prior to** this one night with Doe, Owens had been diagnosed with anxiety, depression, and an eating disorder, and she said she had been abusing alcohol with amphetamines such as Vyvanse and Adderall for years.  (Owens 21-23, 30-31, 35-37)

18. She acknowledged having an alcohol problem as early as her freshman year of college, and her drug and alcohol use continued throughout college. (Owens 35, 104-109, 116, 133-135, 140-144)  Owens testified that her alcohol and substance abuse caused her to have memory black-outs well before the event with Doe.  (Owens 22-23)  She knew the side effects of mixing Adderall and alcohol, but she said she could drink a lot more while on the medication.  (Owens 22-23)  Her eating disorder began in high school. (Owens 37)

19. Owens had been in a long-term relationship with someone who she said was emotionally and sexually abusive to her, although she never reported it to LSU. (Owens 108-113)

20. After the relationship ended, she engaged in several incidents of intoxicated sex with men.  (Owens 84, 106-108, 116-117)  She said she had "unmindful," intoxicated sex

3

with four other men/students, at least one of which she now claims to be rape because of Owens' intoxication. (Owens 83-85, 106-108)

21. She has not deemed the others to be non-consensual because she believes the males were also intoxicated. (Owens 84-86, 163)

22. She also now questions whether her sexual encounters with her boyfriend were non-consensual because she was "intoxicated" on nearly every occasion. (Owens 86, 109-110, 167)

23. In treatment, Owens said "I've only ever had sex when I was intoxicated except the first time." (Owens 166)

24. In January 2017, Owens finally disclosed to her parents that she had an alcohol/narcotic addiction and was "out of control," but she said they did not get her into a treatment program, so she returned to LSU. (Owens 129-130)

25. By March 2017, her coach, Julia Sell, referred Owens to Dr. Lakeitha Poole, LSU therapist, for assessment and care. (Owens 145)

26. Owens lied to Dr. Poole and to Coach Sell about her drug and alcohol use. (Owens 76-77, 136, 150)

27. Owens subsequently showed up intoxicated at a tennis match and failed a breathalyzer. (Owens 19)

28. By April 2017, Owens failed an athletics drug test. (Owens 96, 152) LSU provided financial and planning aid to Owens to get her into a rehabilitation center (at Owens' request) in order to treat her addictions. (Owens 28, 87-88, 206; Segar II 395-96)

29. Julia Sell drove Owens to Lafayette, Louisiana to start the rehab, which Owens appreciated. (Owens 27-28)

4

30. Owens withdrew from LSU upon entering rehab. (Owens 95, 102)

31. In mid-April, 2017, Owens disclosed to the staff at the rehabilitation center that she had been "raped by an athlete at school." (Owens 69-70, 72)  Owens does not know whether anyone relayed this information to LSU.  (Owens  70-71, 86)  Owens said she is "95% sure" that she eventually (not at first) shared Doe's name with her counselor or someone at the rehab.  (Owens 71)

32. Owens also disclosed the incident to her father during rehab, but she did not disclose Doe's name at that time.  (Owens 73)

33. Prior to April 2017, Owens had not told anyone at LSU that she had been sexually assaulted by Doe.  (Owens 86)

34. LSU first learned of Owens' allegations when her father disclosed Owens' alleged "rape" to Julia Sell, at the SEC tennis tournament in Nashville, Tennessee, on April 19-23, 2017.  (Owens 77; J. Sell 171, 173-174)

35. Owens' father did not know the name of the football player, so he simply told Coach Sell that Owens reported in rehab that she had been raped by a football player.  (Owens 79; Segar II 391-392; J. Sell 137-139, 171-173)

36. After learning of the allegation from Owens' father, Sell reported the allegation to Miriam Segar, Senior Associate Athletic Director.  (Segar II 391-392)

37. Segar, in turn, made a report to Jennie Stewart, Title IX Coordinator.  (Segar 92; Stewart 215)  Segar said she was unsure how it should be handled, as Owens was no longer enrolled as a student, and Segar lacked any details about the assault, including the name of the assailant.  (Segar 241)

5

38. Stewart felt it would be inappropriate to interfere with Owens' treatment by contacting Owens in rehab. (Stewart 216)

39. Segar and Stewart expected that Owens would re-enroll at LSU, so Stewart informed Segar that once Owens re-enrolled, they would meet with her to gather information to make a Title IX report. (Segar II 392-396)

40. Owens attended in-patient rehab for four months from April 5, 2017 to August 7, 2017. (Owens 101-102)

41. Prior to her discharge from rehab, Owens withdrew from LSU altogether. (Owens 89-90, 92)

42. Her family moved her out of her apartment while Owens was in rehab, so Owens went straight to her home in Georgia. (Owens 92-93)

43. At the time of Owens' alleged assault, June 2016, the only other plaintiff with a prior experience related to Doe was Mize. (Plaintiff Brennan's photo incident occurred in July 2016, and plaintiff Richardson's incident occurred in December 2016). (R. Doc. 182, ¶¶ 182, 187, 290, 298)[3]

44. Mize provided no account to LSU of her alleged assault by Doe or even that Doe was her perpetrator. (Mize 206) Segar only learned of Mize's alleged assault through Mize's friend, who witnessed nothing, and according to Mize, there were no witnesses to what occurred that night. (Segar 268-269; Mize 103)

45. The report that Segar received from Student A included that Mize had been assaulted by two men that night. (Segar Decl. ¶ 7, Exh. 5) In her deposition, Mize denied knowledge of a second person. (Mize 110-112)

---

[3] The Board adopts Mize's relevant facts contained in Summary Judgment No. 1 by reference.

PD.42458493.1

46. Mize gave no information whatsoever to LSU. (Mize 133-134)

47. As of the date of Owens' interaction with Doe, neither Brennan nor Richardson had reported any conduct by Doe.

48. Owens' alleged assault occurred at her off-campus apartment after a night of drinking at an off-campus bar. (R. Doc. 182 ¶¶ 328-329, 333; Owens 45, 53)

49. Owens met Doe at an off-campus bar, not through any LSU activity. (Owens 43-44)

50. Owens does not know what she said to Doe prior to having sex with him, but she knows that afterward, she told Doe "not to forget about her" when he left. (Owens 160-161)

51. The first time Owens had negative feelings about the sexual encounter with Doe (in June 2016) was in rehab in April 2017. (Owens 166)

52. Before rehab, Owens said she felt shame because her conduct was "out of character." (Owens 42) However, she admits the incident with Doe was not the only incident in which she had intoxicated sex under similar circumstances, which were also out of character for her. (Owens 143) She describes one of those other instances (not the incident with Doe) as her "low point." (Owens 142-144)

53. Regarding Mize, on January 26, 2016 the following occurred:

    o Within one hour of receiving the report from Student A, Segar met with Student A in person to obtain details about the potential issue. Student A insisted that the alleged victim did not want to report. (Segar Decl., ¶ 7, Exh. 5)

    o Segar notified Student Affairs of the concern. *Id*.

    o Segar emailed Student A and shared detailed information on the LSU Lighthouse program and the LSU Policy on Sexual Misconduct. *Id*

    o Segar reached out to Fuentes-Martin to update her on the situation. *Id*

54. The following occurred on January 27, 2016:

- o Segar spoke with Fuentes-Martin, and they discussed that they needed an account from the alleged victim about what happened.  (Segar 267)

- o Segar again met with Student A to ask if she spoke with the alleged victim about resources and reporting the incident.  Student A was adamant that the alleged victim [Mize] did not want assistance and did not want to report.  Segar asked Student A to again speak with the alleged victim about reporting to the university or to the police.  (Segar Decl., ¶ 7, Exh. 5; Mize 105, 108)  The friend said she would do so. (Segar Decl., ¶ 7, Exh. 5)

55. The following occurred on January 28, 2016:

- o Student A reported to Segar by text that "she [Mize] really isn't wanting to have anything to do with it." (Segar Decl., ¶ 7, Exh. 5)

56. The following occurred on January 29, 2016:

- o Fuentes-Martin asked Lighthouse representative, Sierra Fowler, to reach out to Mize." *Id*.

57. The following occurred on February 1, 2016:

- o Fuentes-Martin reached out to Mize by email, saying she wanted to discuss all of the services provided by LSU to address Mize's concerns, to offer medical and psychological care, to offer academic support, and to discuss options for investigating the incident.  Fuentes-Martin asked Mize to schedule a date and time to meet with Fuentes-Martin and provided Mize with her phone number and email address. (Mize Exh. 2)

58. The following occurred on February 5, 2016:

8

  o Mize finally responded, at which time Mize apologized for her delay, stated that she had thought about everything and weighed her options, and she did not want to move forward with an investigation.  Mize assured Fuentes-Martin that she had met with the Lighthouse Program and knew all of the resources available to Mize.  (Mize 118-119; Mize Exh. 3)

  o Fuentes-Martin responded to Mize and asked Mize to come back to Fuentes-Martin if she changed her mind.  (Mize 123-124; Mize Exh. 3)

59. Mize never returned to Fuentes-Martin or to anyone else to file a complaint against Doe or to provide any details for an investigation.  (Mize 124)

60. Segar and Fuentes-Martin endeavored to provide, and did provide, Mize with information about the services and resources available at LSU for victims of sexual assault.  Their communications with Mize conveyed their interest in obtaining information from Mize and moving forward with an investigation.

61. Fuentes-Martin's communications conveyed her interest in hearing from Mize. Fuentes-Martin stated:

- "I would like to encourage you to schedule an appointment with me so we can discuss this matter further.

- "Please know that LSU is concerned for all of its student's [sic] and wishes to provide support and services through difficult challenges."

- "I urge you to contact my office at (225) 578-XXXX to schedule a date and time that you can meet and discuss further."

- "If you have any questions or just need to get further support and resources, please contact me either by phone or email at mari@lsu.edu."(Mize Exh. 2)

62. Mize had no issue with LSU's response at the time. (Mize 133)

63. Mize felt that she "was responsible for [her] decisions to use or not use the resources, . . ."  (Mize 184)

9

64. Segar communicated Doe's name to Fuentes-Martin. (Segar Decl. ¶ 7) Although Segar did not include his name in her write-up of the events, she did not conceal it from Title IX.  (Segar 267)

65. Fuentes-Martin, Deputy Title IX Coordinator for Students, had the knowledge of the potential perpetrator.  (Segar Decl. ¶ 7)

66. Owens withdrew from LSU because of a years-long substance abuse problem (pre-dating her alleged assault), which necessitated in-patient rehabilitation for four months. (Owens  95, 102)

67. She did not return to LSU after her rehab because there were too many temptations that created a risk of relapse if she returned to LSU.  (Owens 90, 92-93)

68.  The Board's policies were promulgated to students and staff alike before and after Owens' alleged harassment.[4] (Owens 18, 217-219; Owens Exhs. 8-11; Board 30(b)(6) I 29-30, 53-54; Board 30(b)(6) II 259-261; Stewart 38-41)

69. Owens had the option to report Title IX claims through multiple mechanisms, including directly to a Title IX representative.  (Board 30(b)(6) 51-52)  Likewise, information about how to contact the campus Title IX office was provided to students and was housed on the Student Advocacy and Accountability website, Dean of Students website, HRM website, and on the Title IX website at various points.  (Board 30(b)(6) 53-54)

70. Owens never reported her rape allegations while she was enrolled at LSU.  (Owens 40, 86, 98, 207)

---

[4] The Board adopts by reference the facts in Summary Judgment No. 1, Section III.D, including the discussion of LSU's PM-73 policy.

10

71. Doe's name appeared in the LSU police record for plaintiff Brennan as well as the Maxient report that disclosed Brennan's allegation (although this event occurred after Owen's alleged rape).  (Brennan Exh. 6; Brennan 190-191; Sanders Decl. ¶ 10, Exh. 5)

72. Student A's name is also absent from the Maxient record for Mize.  (Segar Decl. ¶ 7; Exh. 5)

73. For ease of attendance, LSU administered the trainings electronically, the content of which was reviewed by Title IX.  (Board 30(b)(6) 33, 36-37)

74. In addition to the campus-wide training, some departments, such as Athletics, Greek Life, and Residential Life, administered additional training to mitigate additional risks. (Board 30(b)(6) I 38-39, 41-43)

75. Many of these trainings were developed by the Title IX office and included the "big three topics" of consent, healthy relationships, and bystander intervention. (Board 30(b)(6) I 39, 42-44)

76. Like other students, Owens and her alleged harasser, Doe, received LSU Title IX training. (Sanders Decl. ¶ 3)  Because of their roles as student athletes, Doe and Owens received **additional** training through the Dan Beebe Group/Protection for All. (Segar II 348-349, 359-360; Segar Exh. 17; Segar Decl.¶ 5, Exhs. 2-3; Owens 18, 217-219; Owens Exhs. 8-11)

77. The 2017 Internal Audit (dated September 13, 2017) and LSU's response occurred after Owens' alleged assault.[5] (R. Doc. 182-1, p. 164-171)

78. Owens' alleged harassment took place on June 28, 2016, yet she did not file suit until almost five years later, on April 26, 2021. (R. Doc. 182 ¶ 328-333; R. Doc. 1)

---

[5] The Board adopts the facts set forth in Summary Judgment No. 10, Section III.C.b.iii.

79. In June 2016, Owens knew of her injury, knew of the perpetrator, knew of her intoxication, and knew what training she had received.

80. Owens never once looked at LSU's website to view the services offered.  (Owens 207, 212-213)

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**


BY:    /s/ *Susan W. Furr*
        Shelton Dennis Blunt Bar Roll No.
        21230
        Susan W. Furr Bar Roll No. 19582
        Karleen J. Green Bar Roll No. 25119
        Jessica Coco Huffman LA Bar No.:
        30445
        Molly McDiarmid Bar Roll No. 36426
        Gregory T. Stevens Bar Roll No. 29436
        Michael B. Victorian Bar Roll No.:
        36065
        II City Plaza | 400 Convention Street,
        Suite 1100
        Baton Rouge, Louisiana 70802
        Telephone: 225 346 0285
        Facsimile: 225 381 9197
        Email: dennis.blunt@phelps.com
        Email: susie.furr@phelps.com
        Email: karleen.green@phelps.com
        Email: jessica.huffman@phelps.com
        Email: molly.mcdiarmid@phelps.com
        Email: greg.stevens@phelps.com
        Email: michael.victorian@phelps.com


        ATTORNEYS FOR THE BOARD OF
        SUPERVISORS OF LOUISIANA STATE
        UNIVERSITY AND AGRICULTURAL
        AND MECHANICAL COLLEGE

12

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on June 30, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

/s/ *Susan W. Furr*_____
Susan W. Furr