UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, ET AL.** | **CIVIL ACTION NO. 3:21-CV-00242** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY, ET AL.** | **MAGISTRATE JUDGE JOHNSON** |

**STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO
MOTION FOR SUMMARY JUDGMENT NO. 7: ELISABETH ANDRIES**

Pursuant to Rule 56.1 of the Local Rules and in conjunction with its Motion for Summary Judgment No. 7: Elisabeth Andries, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board") contends that the following are material facts which present no genuine issue:

1. Elisabeth Andries ("Andries") began as an engineering student at LSU in the Fall of 2016. (R. Doc. 182, ¶ 362; Andries 21, 23-24)[1]

2. In addition to her studies, she worked between 20 and 50 hours per week. (Andries 23)

3. Andries received email communications from LSU about Title IX and sexual violence on campus in addition to annual Title IX training. (Andries 154-156; Andries Exhs. 32-36; Sanders Decl. ¶ 5)

4. In October 2016, Andries attended an off-campus Halloween party at Red Eye in New Orleans, hosted by Pi Kappa Phi. (Andries 25-26) She attended the party with John Roe, a male student she met in her Industrial Engineering classes. (Andries 26-27; R. Doc. 182, ¶ 363)

---

[1] The Board accepts Plaintiff's facts as true for purposes of this motion only.

5. Two of Andries' friends also attended the party with Pi Kappa Phi dates, and the party guests took buses to and from the bar in New Orleans. (Andries 26-27)

6. According to Andries, she had not eaten dinner prior to attending the party and became heavily intoxicated at some point during the event. (Andries 26-27)

7. Andries went to the bathroom at Red Eye and required assistance from her friends to leave the bar. (Andries 28; R. Doc. 182, ¶ 365)

8. As Andries and her friends were exiting the bar toward the buses, Roe allegedly escorted Andries to board a different bus than her friends. (Andries 28) Although Andries does not remember selecting a seat, she believes she was seated at the back of the bus, but Roe was in the front of the bus for some period of time. (Andries 26, 28-29; R. Doc. 182, ¶ 367)

9. Andries admits that her memory of these events is incomplete due to her level of intoxication, that she was throwing up in her hands, and that she was not conscious during the entire bus ride. (Andries 26, 31-32)

10. At some point after being seated, Roe allegedly began to grope Andries "underneath her shirt," and she believes this occurred for about 30 minutes. (Andries 26-27, 40) Andries allegedly told Roe "no," and believes he may have said "[c]ome on. It doesn't matter." (Andries 27, 29)

11. Andries believes she lost consciousness shortly after the bus left New Orleans, while Roe was allegedly groping her. (Andries 31) Andries testified that she did not regain consciousness until she returned to Baton Rouge. (Andries 31-32)

12. Upon returning to Baton Rouge, Andries, Roe and others rode in a truck back to North Hall where she and Roe both lived. (Andries 33) Andries testified that Roe was pulling

at her waistband and rubbing his hand along her back and under her shirt, although Andries did not include this allegation in her Complaint. (Andries 33, 38-39) Andries testified that when they returned to North Hall, Roe walked her to her room (while allegedly touching her inappropriately), but he did not enter. (Andries 33-34)

13. The next morning, Andries woke with bruises on her chest and went to her parents' house. (Andries 40) Although she was upset, she did not tell them what occurred with Roe. (Andries 35-37) Instead, Andries told her mom that she was embarrassed for throwing up and that her friends abandoned her. (Andries 37)

14. Andries did not report Roe's conduct to her parents or friends, her sorority, Roe's fraternity, LSU, or the police. (Andries 38, 40-43)

15. Andries continued to interact with Roe after the alleged assault. (Andries 43-47)

16. Andries sat next to Roe in their shared physics class and interacted socially with him. (Andries 43-45)

17. The weekend after the alleged assault, Roe invited Andries and her friend to an on-campus event concerning the National Presidential election. (Andries 45) Andries and her friend attended the event, and Andries and Roe were friendly to each other. (Andries 45)

18. Andries testified that she often did homework with groups that included Roe, and that because of their mutual friends, they were often together at each other's Greek house, bars in Tigerland, football games and post-game activities. (Andries 44-47)

19. In November 2016, Andries started seeing Tiffany McCaughey, a therapist at LSU's Student Health Center. (Andries 53) Andries allegedly told McCaughey about the

alleged assault in their first appointment, and McCaughey provided her with resources about LSU's Lighthouse Program. (Andries 53-54)

20. Under LSU's Title IX policy, mental health counselors are not considered "responsible person[s]" who are required to report incidents of sexual misconduct. (Andries Exh. 3) Therefore, Ms. McCaughey did not report the alleged assault. (Board 30(b)(6) I 48-49)

21. In July 2017, Andries picked up Roe from a bar and brought him back to her off-campus apartment. (Andries 49-50) Per Andries, Roe "tried to touch her again," but she immediately pushed him away. (Andries 49) Thereafter, she kicked him out of her apartment and did not speak to him for over a year. (Andries 49, 62)

22. Andries did not report this incident to LSU, and but for an interaction with Roe at a restaurant in the Fall of 2018, she did not have any other interaction with Roe. (Andries 52-53)

23. In Fall 2018, Andries was in Tigerland after a football game, and she encountered Roe. (Andries 63) Roe repeatedly tried to speak to Andries, but she ignored him. (Andries 63) Andries' boyfriend told Roe to "knock it off" and a fight nearly ensued. (Andries 63)

24. Andries finally met with Lighthouse at the end of 2017 or early 2018. (Andries 56-57) Andries explained to the Lighthouse representative that she was assaulted in October 2016, but she was not willing to provide the alleged assaulter's name. (Andries 56-57) Lighthouse provided Andries resources for stress management and academic disability services. (Andries 56-57; Andries Exh. 1)

25. Andries attended one or two victim's group meetings before she decided they were "useless" and stopped going. (Andries 54-55)

26. Andries claims her grades drastically declined in Spring 2018 because "she was fully realizing her assault" and dealing with a medical issue that caused her to miss almost three weeks' of classes. (Andries 59-62) Ultimately, Andries withdrew for the Spring 2018 semester and returned in Fall 2018 on academic probation. (Andries 60)

27. According to Andries, she did not have any classes with Roe and did not have any interaction with him in Fall 2018. (Andries 62)

28. Andries and Roe were enrolled in a class together for the 2019 Spring semester, although they did not sit together or interact with each other. (Andries 64) Andries allegedly missed most of that class due to fear of Roe. (Andries 64, 199-201)

29. Andries received a referral to LSU's Office of Disability Services from Dr. Laura Jones at LSU's Student Health Center. (Andries 65) Andries visited Disability Services to request extended time to complete assignments, consideration for absences, and note-taking services. (Andries 65-67)

30. She received all of these accommodations, except for notetaking, because the class did not have an official note-taker. (Andries 67) However, she was able to get notes from a friend in the class. (Andries 67)

31. At the urging of Disability Services, Andries contacted LSU's Student Advocacy and Accountability Office ("SAA") to file a Title IX report. (Andries 67) Andries met with Title IX personnel Kim Davis and Jeff Scott regarding the incident with Roe. (Andries 70-72)

32. Andries filed an online report on February 21, 2019. (Andries Exh. 2)

5

33. Andries complains that she was assured she would receive a no-contact order from Title IX. (Andries 71-72) However, Davis later told her that since Roe had not contacted her personally since 2017, a no-contact order would not be issued. (Andries 77-78) Andries acknowledges that Roe had not attempted to contact her in class or otherwise since her re-enrollment. (Andries 72-73)

34. In September 2017, Andries learned of a friend having a sexual incident with Roe that was not reported to LSU. (Andries 74-75)

35. In 2019, Andries also learned that Roe allegedly assaulted another student on the bus that night, "Sarah Zoe," who made a complaint to Title IX shortly after Andries did. (Andries 30-31) Zoe allegedly did not know Roe's identity at the time of the alleged assault. (Andries 30-31)

36. Neither of the other alleged assaults by Roe were known to LSU until Andries reported her assault in March 2019 (R. Doc. 182, ¶ 397; Andries 70-71; Board 30(b)(6) I 48-49)

37. In June 2019, Scott contacted Andries and told her that he had completed the investigation and found Roe responsible for the assault Andries reported. (Andries 85; Andries Exh. 7; Sanders Decl. ¶ 13, Exh. 8)

38. Roe appealed this finding. (Andries 88-89) Andries complains about not receiving notice of Roe's appeal and LSU's extension of his appeal deadline. (Andries 87-91, 205-212) Ultimately, Roe's appeal was denied, and Andries understood that SAA would issue Roe a sanction in accordance with the Responsible finding. (Andries 95; Sanders Decl. ¶ 13, Exh. 9)

39. Andries then met with Jonathan Sanders of SAA in August 2019. (Andries 97) Andries viewed the meeting with Sanders negatively and was bothered by some of Sanders' questions and statements. (Andries 98-99)

40. SAA issued Roe a deferred suspension. (Andries 103)

41. Andries did not use LSU's procedures to challenge this outcome, but Roe and Zoe did. (Andries 104-105)

42. A University Hearing Panel reviewed the outcome and changed Roe's discipline to a one-year suspension. (Andries 111)

43. While Roe's appeal was pending in the Fall 2019, Andries and Roe had numerous classes scheduled together. (Andries 118-119) Andries changed some of her classes to avoid interaction with Roe. (Andries 118-119)

44. When Roe returned to campus in the Fall 2020, Tracey Blanchard in SAA notified Andries of Roe's readmission. (Andries 145-146)

45. Andries and Ashley Gray, counselor for LSU's College of Engineering, worked together to alleviate conflicts between Andries' and Roe's schedules without impacting Andries' anticipated graduation date. (Andries 147-149) Andries was able to schedule her classes without issue in the Fall 2020 and Spring 2021 and did not report any further conduct by Roe to LSU. (Andries 147-149)

46. Andries did not file suit until April 26, 2021. (R. Doc. 1)

47. All of the examples in the Second Amended Complaint and Jury Demand (the "Complaint") of how LSU created a heightened risk of sexual misconduct on campus for Roe's victims involve conduct occurring **after** Andries' alleged assault by Roe. (R. Doc. 182, ¶ 933 (a)-(c))

48. All of Andries' allegations regarding what she learned from the Husch Blackwell Report relate to **post-assault** conduct. (R. Doc. 182, ¶ 450 (emphasis added))

49. Andries knew the identity of the alleged perpetrator as of October 2016. (Andries 25-27)

50. Andries visited Lighthouse at the end of 2017 or beginning of 2018, where she learned of resources for victims of sexual assault. (Andries 54, 57) She later learned of three other alleged victims. (Andries 30-31, 74-75)

51. One victim disclosed the alleged assault directly to Andries in September 2017. (Andries 74-75)

52. The other she learned of second-hand, and Andries contacted this student on Facebook around May 2019. (Andries 30-31)

53. The third victim allegedly submitted a statement to be read aloud in the September 2019 University Hearing Panel ("UHP") alleging that in 2016 or 2017, Roe "tried to shove his toe in her vagina." (Andries 110) Notably, Andries was aware of the incident involving the third victim because that student had previously disclosed it to her. (Andries 110)

54. Following the UHP, Andries was notified of the outcome—suspension for one year. (Andries 111, 114; Andries Exh. 19)

55. Roe filed another appeal, which was denied, and Andries was informed of the denial on October 26, 2019. (Andries 115; Andries Exh. 20)

56. Andries was the **first** student to report sexual assault allegations against Roe. (Board 30(b)(6) I 47-49)

57. The Board's policies were promulgated to students and staff alike before and after Andries' alleged harassment. (Andries 153-156; Andries Exhs. 32-36; Board 30(b)(6) I 29, 52-54; Board 30(b)(6) II 259-261; Stewart 38-41)

58. Employees, non-employees, and students, including Andries, had the option to report Title IX claims through multiple mechanisms, including directly to a Title IX representative, or through Maxient. (Board 30(b)(6) I 49-52)

59. Information about how to contact the campus Title IX office was provided to students and was housed on the Student Advocacy and Accountability website, Dean of Students website, HRM website, and on the Title IX website at various points. (Board 30(b)(6) I 49-52)

60. The Board provided annual training beginning in at least 2014. (Board 30(b)(6) I 30-32, 36-37) For ease of attendance, LSU administered the trainings electronically, the content of which was reviewed by Title IX. (Board 30(b)(6) I 33, 36-37)

61. In addition to the campus-wide training, some departments, such as Athletics, Greek Life, and Residential Life, administered additional training to mitigate additional risks. (Board 30(b)(6) I 38-39, 41-43)

62. Many of these trainings were developed by the Title IX office and included the "big three topics" of consent, healthy relationships, and bystander intervention. (Board 30(b)(6) I 39, 42-44)

63. Like other students, Andries and Roe received MyStudentBody training, which LSU mandated that students complete as a prerequisite to registering for classes. (Sanders Decl. ¶ 3)

64. Andries acknowledged she received several communications regarding sexual assault, Title IX, and campus safety while she was at LSU. (Andries 153-156; Andries Exh. 32-36)

65. Andries and Roe were required to attend additional training associated with their Greek Life memberships. (Sanders Decl. ¶ 5)

        Respectfully submitted,

        **JEFF LANDRY**
        **ATTORNEY GENERAL**

        BY:   /s/ *Susan W. Furr*
                Shelton Dennis Blunt Bar Roll No. 21230
                Susan W. Furr Bar Roll No. 19582
                Karleen J. Green Bar Roll No. 25119
                Jessica Coco Huffman LA Bar No.: 30445
                Molly McDiarmid Bar Roll No. 36426
                Gregory T. Stevens Bar Roll No. 29436
                Michael B. Victorian Bar Roll No.: 36065
                II City Plaza | 400 Convention Street, Suite 1100
                Baton Rouge, Louisiana 70802
                Telephone: 225 346 0285
                Facsimile: 225 381 9197
                Email: dennis.blunt@phelps.com
                Email: susie.furr@phelps.com
                Email: karleen.green@phelps.com
                Email: jessica.huffman@phelps.com
                Email: molly.mcdiarmid@phelps.com
                Email: greg.stevens@phelps.com
                Email: michael.victorian@phelps.com

                ATTORNEYS FOR THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on June 30, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

                                              /s/ *Susan W. Furr*
                                              Susan W. Furr