# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, ET AL.** | **CIVIL ACTION NO. 3:21-CV-00242** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY, ET AL.** | **MAGISTRATE JUDGE JOHNSON** |

### STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO MOTION FOR SUMMARY JUDGMENT NO. 8: SARAH BETH KITCH

Pursuant to Rule 56.1 of the Local Rules and in conjunction with its Motion for Summary Judgment No. 8: Sarah Beth Kitch, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board") contends that the following are material facts which present no genuine issue:

1. Sarah Beth Kitch enrolled as a graduate student at LSU in fall 2009.  (Kitch 22-23)[1]

2. In August 2009, Kitch met John Moe, one of her instructors who was a tenured professor in the Political Science Department.  (Kitch 26) According to Kitch, she and Moe had "closely aligned" interests as they both studied ancient and medieval political thought.  (Kitch 26)

3. Moe offered Kitch a scholarship to study Eric Voegelin political theory.  (Kitch 27)

4. Later, in 2011, Moe sponsored Kitch for the Earhart Fellowship, "a prestigious fellowship for political theory and students of American thought and politics."  (Kitch 28-29)

---

[1] The Board accepts Plaintiff's facts as true for purposes of this motion only.

PD.42457505.1

5.  Kitch alleges that, during her time as a graduate student, Moe engaged in conduct that made her uncomfortable.  (Kitch 38)

6.  According to Kitch, she was "informed" by Moe that she would drive him to and from class.  (Kitch 36-38)  Other students also drove Moe to class and other events.  (Kitch 35-36, 89-90)

7.  Additionally, she says Moe compared their relationship to Martin Heidegger and Hannah Arendt, a philosopher and his much younger student who had an affair.  (Kitch 39)  Kitch testified that this comment occurred in fall 2012.  (Kitch 41) Kitch said Moe did not mention the affair when he referenced the relationship.  (Kitch 41)

8.  When Kitch was preparing for her graduate student comprehensive exams, Moe allegedly reminded her that ". . . faculty were celestial and I was a mite."  (Kitch 39-40)

9.  Kitch alleges Moe commented on a secretary's dress in an unprofessional manner which Kitch thought was "a little generational drift and [Moe] doesn't know what's workplace appropriate." (Kitch 50)

10. Moe also allegedly "commented approvingly" on a pair of heels she wore "in a way that made me uncomfortable."  (Kitch 40)

11. Finally, Kitch alleges that, in March 2013, while she was writing her dissertation prospectus and preparing to defend it, Moe kissed her.  (Kitch 52; R. Doc. 182, ¶¶ 717-721)

12. Kitch did not have any other physical contact with Moe that made her uncomfortable. (Kitch 74)

13. Kitch did not report Moe's actions while she was enrolled at LSU.  (Kitch 94)

2

14. Two months later, in May 2013, Kitch graduated from the master's program and transitioned to the doctoral program.  (Kitch 24; Kitch Exh. 9)

15. The members of her dissertation advisory committee were Moe and two other professors in the Political Science Department, Cecil Eubanks and William Stoner. (Kitch 56, 70)  Moe served as Kitch's advisor.  (Kitch 63-65, 71)

16. Kitch chose a topic for her dissertation prospectus and successfully defended the prospectus.  (Kitch 70-72)

17. Kitch completed her dissertation in late fall 2014 and graduated from LSU with her doctorate in December 2014.  (Kitch 89, 178; Kitch Exh. 9)

18. While she was enrolled at LSU, Kitch never complained about Moe to the Title IX office. (Kitch 94; Board 30(b)(6) 48-49)

19. By her graduation in December 2014, Kitch knew the facts forming the basis of her claim—the identity of the perpetrator, the entirety of Moe's conduct towards her, and her injuries. (*See* R. Doc. 340, pp. 18-19)

20. In late summer or fall 2019, Kitch alleges that she called the Title IX office to report Moe.  (Kitch 99, 122) At the time of her report, Kitch was no longer a student or faculty member, and Moe was no longer employed at LSU.  (Kitch 126, 186)

21. When Kitch contacted LSU in 2019 to report Moe's conduct, she had knowledge of all facts regarding her claim.  (Kitch 99, 122)

22. Kitch's post-graduation report was the first notice LSU received of any sexually harassing or inappropriate conduct by Moe.  (Board 30(b)(6) 48-49)

23. Kitch's post-graduation report of Moe was the only report of Title IX-related conduct LSU had ever received regarding Moe. (Board 30(b)(6) 48-49)

PD.42457505.1

24. Moe retired from LSU in spring 2015.  (Kitch 60)

25. Kitch did not read the Husch Blackwell Report, and there are no factual statements in the report relating to Kitch or Moe.  (Kitch 148; R. Doc. 1-1)

26. During her time as an LSU student, Kitch consistently had a 4.0 grade point average. (Sanders Decl. ¶ 7, Exh. 2)

27. Additionally, she received the Eric Vogelin Scholars Award twice (2009 and 2010) and the H.B. Earhart Fellowship five times (2010, 2011, 2012, 2013, and 2014). (Kitch Exh. 9)

28. Kitch suffered no loss in terms of a dissertation advisor, as she testified she sought advice from Professor Eubanks.  (Kitch 65-66)

29. According to her deposition testimony, Kitch excelled during her time at LSU.  (Kitch 56)

30. According to Kitch, her alleged damages came after she graduated, when she was unable to complete her dissertation-to-book project which impacted her ability to obtain a tenure track position.  (Kitch 75, 109, 132-133, 176-177)

31. The Board provided annual training beginning in at least 2014. (Board 30(b)(6) 30-32, 36-37) For ease of attendance, LSU administered the trainings electronically, the content of which was reviewed by Title IX.  (Board 30(b)(6) 33, 36-37)

32. Many of these trainings were developed by the Title IX office and included the "big three topics" of consent, healthy relationships, and bystander intervention. (Board 30(b)(6) 39, 42)

33. Like other faculty, Moe received LSU Title IX training. (Sanders Decl. ¶ 6)

4

34. Like other students, Kitch completed MyStudentBody training, a program that addresses alcohol, drugs, and sexual violence, which all students are required to complete.  (Kitch 96-97; Sanders Decl. ¶ 3)

35. Kitch received Title IX and sexual harassment training through LSU because of her role as a graduate student instructor.  (Kitch 94-97; Exh. 3)  In particular, as an instructor, Kitch completed ethics, sexual harassment, and Title IX training.  (Kitch 94; Kitch Exh. 3)

36. Employees, non-employees, and students, including Kitch, had the option to report Title IX claims through multiple mechanisms.  (Board 30(b)(6) 49-52)

37. Likewise, information about how to make a Title IX complaint was provided to students and was housed on the Student Advocacy and Accountability website, Dean of Students website, HRM website, and on the Title IX website at various points. (Board 30(b)(6) 52)

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:   /s/ *Susan W. Furr*
Shelton Dennis Blunt Bar Roll No. 21230
Susan W. Furr Bar Roll No. 19582
Karleen J. Green Bar Roll No. 25119
Jessica Coco Huffman LA Bar No.: 30445
Molly McDiarmid Bar Roll No. 36426
Gregory T. Stevens Bar Roll No. 29436
Michael B. Victorian Bar Roll No.: 36065
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802

5

PD.42457505.1

Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: jessica.huffman@phelps.com
Email: molly.mcdiarmid@phelps.com
Email: greg.stevens@phelps.com
Email: michael.victorian@phelps.com

ATTORNEYS FOR THE BOARD OF
SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on

June 30, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic

copy of the same to Plaintiffs' counsel.

/s/ *Susan W. Furr*
Susan W. Furr

6

PD.42457505.1