## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**
*Plaintiffs*

**v.**

**BOARD OF SUPERVISORS OF**
**LOUISIANA STATE UNIVERSITY**
**AND AGRICULTURAL AND**
**MECHANICAL COLLEGE, ET AL.**
*Defendants*

**Case No.: 3:21-cv-00242**

**Division WBV-SDJ**

**JUDGE WENDY B. VITTER**

**MAGISTRATE JUDGE JOHNSON**

**JURY DEMANDED**

### PLAINTIFFS' OPPOSITION TO THE BOARD OF SUPERVISORS FOR LOUISIANA STATE UNIVERSITY'S MOTION TO DISMISS

NOW COME Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch ("Plaintiffs"), through undersigned counsel, and respectfully submit this Opposition to The Board of Supervisors for Louisiana State University's ("Defendant," "the Board," or "LSU") Motion to Dismiss ("Motion").[1] The Court should reject Defendant's arguments and deny the Motion to Dismiss, because there is no binding precedent requiring this Court to dismiss emotional distress damages in private actions brought under Title IX. Moreover, Plaintiffs have asserted myriad damages that cannot and should not be construed as emotional distress damages, such that, even should the Court determine emotional distress damages are unavailable—which Plaintiffs contest—Plaintiffs should be permitted to maintain their claims for compensatory and consequential damages, as set forth herein. The dismissal sought by Defendant is therefore improper, and the Board's motion should be denied.

Therefore, the Motion should be denied.

---

[1] R. Doc. 352

1

**RELEVANT FACTS**

Plaintiffs' Complaint was brought by ten current and former students of Louisiana State University ("LSU") who brought, attempted to bring, or were dissuaded entirely from bringing complaints of sex-based discrimination, including rape, sexual assault, sexual harassment, and/or stalking, perpetrated by male LSU students and LSU employees. R. Doc. 22 at ¶ 109. For years, LSU ignored known systemic deficiencies in its response to reports of sexual misconduct.  By ignoring the recommendations of experts and its own internal Title IX experts and permitting Athletics to address sexual misconduct internally, LSU created a campus culture that ignores, and even tacitly condones, sex-based trauma inflicted upon female presenting and LGBTQ+ identifying individuals. *Id*. at ¶¶ 430, 530.

As a result of what the Husch Blackwell Report characterized as "a deeply entrenched cultural problem" resulting from the prevalence of retaliatory coercion in LSU Athletics and encouraging sexual harassment and assault, Plaintiffs herein have suffered significant losses and assert claims to for "general, special, incidental, and consequential injury and damages, past, present, and future," which they seek to recovery through this suit.  R. Doc. 182 at ¶ 1120. More specifically, Plaintiffs allege injuries in their Second Amended Complaint, consisting of, but not limited to the following:

a. Pain, suffering, and emotional distress;
b. Physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life;
c. Medical expenses;
d. Pharmaceutical expenses;
e. Loss of education and educational opportunities;
f. Additional educational expenses;
g. Loss of employment and earning capacity;
h. Travel and travel-related expenses;

i.    Prevention from performing daily activities and obtaining the full enjoyment of life;

j.    Expenses from psychological treatment, therapy, and counseling;

k.    Loss of the ability to perform as athletes on their chosen teams;

l.    Fractured family and personal relationships;

m.    A loss of consortium society and companionship; and

n.    All other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

*Id.* The broad majority of the foregoing classes of damages—in fact almost all—do not constitute emotional distress damages, Plaintiffs are entitled to recover any damages that a jury deems appropriate for losses they suffered due to medical, educational, travel, and other expenses, as well as lost opportunities and benefits they incurred as a result of LSU's wrongdoing. The Board's attempt to conflate each of these distinct categories of damages into one omnibus claim for emotional distress is unsupported by the law. Plaintiffs have sufficiently pleaded claims for damages they can plausibly be expected to recover at trial. Accordingly, the Board's Motion to Dismiss is without merit and should be denied.

## LAW AND ARGUMENT

Based on the various classes of damages asserted by Plaintiffs, as outlined above, the Board's Motion to Dismiss must fail. Plaintiffs have stated viable claims for damages which are compensable under applicable law. As such, the Board's Motion to Dismiss under Rule 12(b)(6) should be denied.

## I.    FRCP RULE 12(b)(6) STANDARD

"It is well-settled in this Circuit that motions to dismiss under Fed. R. Civ. P. R. 12(b)(6) are viewed with disfavor and are rarely granted." *Pride Centric Resources, Inc.* v. *LaPorte, et al.*,

No. CV 19-10163, 2021 WL 3741529, at *2 (E.D. La. Aug. 24, 2021) (citing *Financial Acquisition Partners LP* v. *Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997))). There exists "a powerful presumption against rejecting pleadings for failure to state a claim[,]"and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 609 (W.D. Tex. 2017) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009))); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Courts accept "all well-pleaded facts as true and [view] those facts in the light most favorable to the plaintiff." *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (quotation omitted). In deciding a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court. *Pride Centric Resources, Inc.* 2021 WL 3741529, at *2 (citing *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007)). A complaint "does not need detailed factual allegations… but must provide the [plaintiff's] grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right

4

to relief above the speculative level."[2] "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" meaning the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. *Hernandez*., 274 F. Supp. 3d 602, 678 (W.D. Tex. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Twombly*, 550 U.S. at 570)); *Meador*, 911 F.3d at 264 (quotation omitted). Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

## II.    THE IMPACT OF *CUMMINGS V. PREMIER REHAB KELLER, P.L.L.C.*

The Board asserts that Plaintiffs' claims should be dismissed, in full, on the basis of the United States Supreme Court's April 28, 2022 decision in *Cummings v. Premier Rehab Keller*, *P.L.L.C.*, wherein the Court held, for the first time, that emotional distress damages are not recoverable in private actions to enforce the antidiscrimination provisions of the Rehabilitation Act and the Affordable Care Act. 212 L. Ed. 2d 552, 142 S. Ct. 1562, reh'g denied, 213 L. Ed. 2d 1081, 142 S. Ct. 2853 (2022). This Court is not bound to apply *Cummings* here, but even if it chooses to do so, the Board's arguments ignore Plaintiffs' claims for other compensatory and consequential damages, which remain recoverable even in ACA and Rehabilitation Act actions post-*Cummings*. Instead, the Board attempts to conflate these other classes of loss with those for emotional distress damages, suggesting that any losses incurred are tied to and therefore indistinguishable from Plaintiffs' emotional damage claims. That reading contradicts the courts' well-settled understanding of distinct classes of damages, misconstrues the holding in *Cummings*,

---

[2] *Hernandez*, 274 F. Supp. 3d at 609 (W.D. Tex. 2017) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

and is further inconsistent with numerous courts' interpretation and application of the *Cummings* rule since that decision was rendered.

### A.  THE COURT IS NOT BOUND BY *CUMMINGS*.

As a preliminary matter, *Cummings* was, as stated, a case involving the availability of damages in private actions under the Rehabilitation Act and the ACA, not Title IX, and there is no binding authority requiring this Court to extend *Cummings* to Title IX actions.  In fact, in the only case in which the Fifth Circuit has addressed the *Cummings* holding, *Luke v. Texas*, the Court noted, in *dicta*, that questions remained as to whether *Cummings* would extend beyond the Rehabilitation Act to actions brought under Title II, but ultimately deferred the question for determination by the Texas district court, noting that "[i]n any event, Luke also seeks nominal damages."  46 F.4th 301, 307 (5th Cir. 2022)

Moreover, several courts in other circuits have declined to extend *Cummings* to Title IX and maintained that damages for emotional distress remain available to plaintiffs asserting claims thereunder post-*Cummings*.  *See, e.g., Doe v. Purdue Univ.,* No. 18-CV-89-JEM, 2022 WL 2828238, at *4 (N.D. Ind. July 20, 2022) (holding evidence of emotional distress or harm admissible because *Cummings* was not a Title IX action, but rather applied only to Rehabilitation Act and Patient Protection and Affordable Care Act claims, and further, "since *Cummings* does not hold that it limits Title IX damages, it does not justify precluding evidence of Plaintiffs' consequential damages."); *Coleman v. Cedar Hill Indep. Sch. Dist.*, No. 3:21-CV-2080-D, 2022 WL 1470957, at *3 (N.D. Tex. May 10, 2022) (limiting the holding in *Cummings* to cases brought under the Rehabilitation Act).

While there are good reasons and arguments for not extending the *Cummings* rule to Title IX cases, Plaintiffs acknowledge that the majority of courts applying the new law have done so.

6

However, even if this Court decides to join with those courts and find emotional distress damages are unavailable here, dismissal of Plaintiffs' claims would still be improper, as Plaintiffs have asserted claims for a variety of compensatory, consequential, and nominal damages that have been long-accepted remedies in contractual breach cases and therefore remain available under *Cummings.*

## B. *CUMMINGS*, IF APPLIED, ALLOWS RECOVERY OF CONTRACT REMEDIES.

The lynchpin of the *Cummings* decision is the Court's holding that recovery in private actions brought in accordance with legislative acts passed under the Spending Clause should be limited to those remedies traditionally available in actions for breach of contract—which have not traditionally allowed damages for mental anguish. Accordingly, a brief discussion of damages in suits for breach of contract is instructive.

*Cummings* and its progeny cite to the Restatement (Second) of Contracts in defining "traditional" contract remedies that remain available in Spending Clause cases. According to the Restatement, "[e]very breach of contract gives the injured party a right to damages against the party in breach," and subject to certain limitations, "the injured party is entitled to recover for all loss actually suffered." Restatement (Second) of Contracts §§ 346, 347 (1981).

Addressing remedies for contractual breach, the Restatement explains that, "[o]rdinarily, when a court concludes that there has been a breach of contract, it enforces the broken promise by protecting the expectation that the injured party had" upon entering the contract. The court will therefore "attempt[ ] to put him in as good a position as he would have been … had there been no breach." Restatement (Second) of Contracts § 344(a) (1981). This "expectation interest," however, is not the only interest that may be protected. *Id.* If the beneficiary of the contract "changed his position in reliance on the contract by, for example, incurring expenses in preparing

7

to perform, in performing, or in foregoing opportunities to make other contracts… the court may recognize a claim based on his reliance rather than on his expectation." *Id.* "The interest protected in this way is called "'reliance interest.'" *Id.* Remedies to protect these interests are non-exclusive. Restatement (Second) of Contracts § 345(a) (1981).

Damages in cases of contractual breach "are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." Restatement (Second) of Contracts § 347 (1981). In some cases, "the sum awarded will do this adequately as, for example, where the injured party has simply had to pay an additional amount to arrange a substitute transaction and can be adequately compensated by damages based on that amount." *Id.* In other cases, however, "the sum awarded cannot adequately compensate the injured party for his disappointed expectation as, for example, where a delay in performance has caused him to miss an invaluable opportunity." *Id.* Such losses are described in the Restatement as follows:

> Items of loss other than loss in value of the other party's performance are often characterized as incidental or consequential. Incidental losses include costs incurred in a reasonable effort, whether successful or not, to avoid loss, as where a party pays brokerage fees in arranging or attempting to arrange a substitute transaction. Consequential losses include such items as injury to person or property resulting from defective performance.

*Id.* (internal citations omitted). However, the Restatement cautions, "[t]he terms used to describe the type of loss are not, however, controlling, *and the general principle is that all losses, however described, are recoverable*." *Id.* (emphasis added).

### III.   CLAIMS FOR COMPENSATORY AND CONSEQUENTIAL DAMAGES REMAIN AVAILABLE AFTER *CUMMINGS.*

The Supreme Court has held that compensatory damages are available for intentional violations of Title IX. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 70-71 and 76 (1992). Thus, even where Courts have found that *Cummings* bars claims for emotional distress damages under Title IX, they have still found that "there is nothing in the decision that bars a plaintiff from seeking other forms of compensatory damages under these three statutes." *A.T. v. Oley Valley Sch. Dist.*, No. CV 17-4983, 2023 WL 1453143, at *4 (E.D. Pa. Feb. 1, 2023) (denying summary judgment and permitting Plaintiffs to proceed to trial on claims for lost income, lost opportunity, fringe benefits, attorney fees, costs and any other non-emotional distress damages). *Williams v. Colorado Dep't of Corr.*, No. 21-CV-02595-NYW-NRN, 2023 WL 3585210, at *7 (D. Colo. May 22, 2023) (dismissing claims for emotional distress damages but permitting requests for damages for economic loss and physical pain and suffering to remain). Accordingly, Courts have repeatedly found that *Cummings* does not bar a plaintiff's Title IX claims wholesale where they seek compensatory damages and other remedies beyond emotional distress damages. *Doe v. Town of N. Andover*, No. 1:20-CV-10310-IT, 2023 WL 3481494, at *12 (D. Mass. May 16, 2023). Because Plaintiffs have incurred expenses and economic losses as a result of the Board's violations of Title IX, they are "entitled to recover for all loss[es] actually suffered." *See* Restatement (Second) of Contracts § 347 (1981).

### A. COSTS AND EXPENSES INCURRED AS A RESULT OF LSU'S VIOLATIONS.

Accordingly, Plaintiffs are entitled to seek compensatory damages for expenses and other financial losses they incurred as a result of LSU's wrongful conduct and have properly pled those in the Second Amended Complaint. Even after *Cummings,* damages for tuition and other school-

related expenses have been found to be recoverable in Title IX actions. For instance, in *Doe v. Town of North Andover* denied a defendant's motion to dismiss plaintiff's Title IX action under *Cummings,* finding that plaintiff sought "other relief, including damages for tuition, school expenses, and expenses incurred as a consequence of the assaults. No. 1:20-CV-10310-IT, 2023 WL 3481494, at *12 (D. Mass. May 16, 2023). *See also Alexander v. Thomas Univ., Inc.*, No. 7:21-CV-86 (HL), 2023 WL 2307612, at *6 (M.D. Ga. Mar. 1, 2023) (should plaintiff be able to establish that defendant discriminated against her in violation of Rehabilitation Act, she may be entitled to recover monetary damages, including lost tuition). *Accord Abdulsalam v. Bd. of Regents of Univ. of Nebraska*, No. 4:22-CV-3004, 2023 WL 4266378, at *4 (D. Neb. June 29, 2023) (suggesting that plaintiff could potentially assert claims for tuition and moving expenses, but finding plaintiff failed to plead facts in support of such a claim, where plaintiff did not relocate and was able to complete her education at the University of Nebraska). Additionally, where Title IX violations preclude students from obtaining scholarship money to subsidize their education, damages may also be recoverable. *See Fisk v. Bd. of Trustees of California State Univ.*, No. 22-CV-173 TWR (MSB), 2023 WL 2919317, at *12 (S.D. Cal. Apr. 12, 2023).

In the present case, the Board acknowledges numerous claims for compensatory damages asserted by Plaintiffs for costs and expenses they incurred as a result of the events giving rise to this suit. For instance, the Board's Memorandum filed in support of the present Motion notes of Ashlyn Mize Robertson's claims that she "lost four semester's worth of tuition…lost her TOPS scholarship and is being forced to pay money she owes as a result and is unable to complete her degree at another school because she has not repaid the owed TOPS money." *See* Def. Supp. Mem. (R. Doc. 352-1) at p. 2 (citing Second Amended Complaint (R. Doc. 182), ¶ 288). It also acknowledges that Samantha Brennan claims lost income from losing her job on LSU's recruiting

10

team and incurred moving expenses after leaving and then returning to LSU. *See* R. Doc. 352-1 at p. 3 (citing R. Doc. 182, ¶ 326).  Jade Lewis and Jane Doe also assert claims for compensatory damages for moving expenses they incurred after they were forced to relocate following their harassment and abuse. *See* R. Doc. 352-1 at p. 4 (citing R. Doc. 182, ¶¶ 555, 650).  Similarly, Abby Owens asserts claims for moving expenses incurred after was forced to transfer to the University of Georgia, despite being 18 credit hours away from graduation at LSU.  Moreover, without the benefit of her LSU scholarship, Ms. Owens incurred additional educational expenses at the University of Georgia, including but not limited to increased tuition payments, which were exacerbated by the extended time it took her to complete her degree as a result of her transfer. R. Doc. 352-1 at p. 3 (citing R. Doc. 182, ¶ 361).  Additionally, Corinn Hovis seeks damages for fees she had to pay to retake classes, as well as out-of-pocket expenses she had to pay for accommodations when LSU denied her requests for disability accommodations. *See* R. Doc. 352-1 at p. 4 (citing R. Doc. 182, ¶ 698).

All the foregoing examples represent claims for compensatory damages that Plaintiffs remain entitled to recover, regardless of whether the Court decides *Cummings* applies in this action.  The Board does not dispute that Plaintiffs have sufficiently pleaded facts in support of these claims; they merely ask the Court to ignore the distinction between these claims and those for emotional distress.   However, the distinction does exist, and Plaintiffs' claims for compensatory damages, including but not limited to the foregoing, should not be dismissed.

### B.  PHYSICAL INJURY AND MEDICAL TREATMENT

Courts have also found that plaintiffs remain entitled to recover for medical treatment necessitated by injuries resulting from violations of anti-discrimination Acts following *Cummings*. The same is true for any physical injuries incurred as a result.  These holdings are consistent with

11

*Cummings,* as it is widely accepted that damages are available for personal injury in breach of contract actions. *See* 11 Corbin on Contracts § 59.1; UCC § 2-715(2)(b). In fact, "distinguished authority has asserted that when conduct that causes bodily harm is wrongful not because it is a breach of … an express contract made by the defendant, there is no reason for applying a different rule as to the damages that can be recovered. § 6.9. Common law, 6 La. Civ. L. Treatise, Law of Obligations § 6.9 (2d ed.) (citing Corbin on Contracts 428 (1964)).

By way of example, in *Pennington v. Flora Community Unit School District No. 35,* plaintiffs alleged that their damages went "beyond those sought in *Cummings* because Plaintiffs were diagnosed with PTSD, which 'can cause physical symptoms' and is 'also associated with long-term physical health conditions like diabetes and heart disease,' and they incurred medical costs to treat their condition." No. 3:20-CV-11-MAB, 2023 WL 348320, at *2 (S.D. Ill. Jan. 20, 2023). The *Pennington* court denied the School District's request to dismiss plaintiffs' claims under the Rehabilitation Act and the ADA, finding "Plaintiffs alleged that they suffered an economic loss in the form of medical expenses, and Defendant did not present any argument that this type of compensatory damages is not recoverable." *Id.* at *4. In coming to this holding, the court opined:

> Plaintiffs did not only request emotional damages, as the School District contends. Plaintiffs very clearly requested medical expenses, which the allegations attribute to treatment for physical injuries they suffered as a result of bullying, as well as treatment for the psychological injuries (*see, e.g.*, Doc. 73, p. 10) (alleging that James R. was stabbed in the arm with a pencil by another student and had to have it surgically removed and that James R. was hospitalized due to suicidal ideations). As the Court sees it, these are compensatory damages for economic losses, which *Cummings* did not preclude. The School District's contention that Plaintiff is only claiming emotional damages is therefore without merit.

*Id.* at *3.  *See also Doe v. City of Pawtucket*, C. A. 17-365-JJM-LDA (D.R.I. Sep. 29, 2022) (holding claim for medical treatment for injuries remains available following *Cummings*).

Here, Plaintiffs have sought to recover damages for physical injuries and medical care resulting from LSU's failures alleged herein.  And, per the Board's own pleadings, Plaintiffs have alleged sufficient facts to support those claims.  To begin, the Board acknowledges that all of the Plaintiffs have alleged damages for healthcare expenses they incurred as a result of these events and LSU's failures. R. Doc. 352-1 at p. 2-5 (citing, e.g., R. Doc. 182, ¶¶ 451, 555, 650, 741).  They also note physical injuries and ailments suffered by Calise Richardson, Samantha Brennan, and Kennan Johnson.[3]  *See* R. Doc. 352-1 at p. 2 (citing Plaintiffs' Second Amended Complaint, R. Doc. 182, ¶¶ 241, 326, 596).

The Board fails to note, however, other significant physical injuries suffered by Plaintiffs, as set forth in the Complaint.  For instance, Jade Lewis suffered at least six assaults at the hands of John Coe, which were reported to LSU staff but were not thereafter reported to the Police or the Title IX Office, and for which no support, resources, accommodations, or other response was offered. R. Doc. 182 at ¶ 458-461.  Lewis has alleged extensive physical injuries as a result of the multiple, repeated assaults perpetrated against her by John Coe, during which Coe punched, shoved, and strangled her. *See, e.g.,* R. Doc. 182 at ¶¶ 463, 464, 478, 485, 500, 504, 505.  These injuries include but are not limited to a broken rib, bruises, scratches, an ear injury resulting from

---

[3] Calise Richardson claims physical injuries and physical symptoms as a result of her assault and has incurred healthcare expenses, in addition to costs associated with therapy, as a result. *See* R. Doc. 352-1 at p. 2 (citing Plaintiff's Second Amended Complaint, R. Doc. 182, ¶ 241).  Samantha Brennan also claims that her health has been negatively impacted by the trauma she experienced at LSU. *See* R. Doc. 352-1 at p. 3 (citing R. Doc. 182, ¶ 326).  In addition to emotional distress, Samantha Brennan claims she suffers severe physical ailments, including headaches, and has incurred healthcare expenses as a result. *See* R. Doc. 352-1 at p. 3 (citing R. Doc. 182, ¶ 326).  Kennan Johnson claims damages for hospital and other healthcare bills. *See* R. Doc. 352-1 at p. 4 (citing R. Doc. 182, ¶ 596).

Coe ripping her earring out of her ear. R. Doc. 182 at ¶¶ 483, 506, 525, 535, 535.  Lewis had to

seek medical attention for these injuries on multiple occasions. R. Doc. 182 at ¶¶ 464, 483.

    All of these are undisputedly the kind of physical injuries and compensatory and

consequential damages that are traditionally available in contract actions, and they remain

available to plaintiffs in Spending Clause cases.  Additionally, multiple plaintiffs have suffered

from substance abuse, eating disorders, post-traumatic stress disorder ("PTSD"), and self-harm

requiring treatment in various rehabilitation facilities, hospitals, and sober houses.[4]  *See* R. Doc.

352-1 at p. 2-5 (citing R. Doc. 182, ¶¶288, 361, 596, 741). Kennan Johnson experienced suicidal

ideation requiring hospitalization.  *See* R. Doc. 352-1 at p. 2-4 (citing R. Doc. 182, ¶ 596).  While

these injuries may suggest a component of mental distress, the cases cited above suggest that

damages associated with treatment of these injuries should still be treated as compensatory.[5]

    It was under that reasoning that the *Pennington* court found in favor of the plaintiffs in that

case—who argued that "PTSD… 'can cause physical symptoms' and is 'also associated with long-

term physical health conditions….'"—holding that plaintiffs' requests for medical expenses

incurred as a result of physical as well as psychological injuries from bullying, including but not

limited to the hospitalization of one plaintiff due to suicidal ideation, were permissible and should

not be precluded by *Cummings*. The same is true here regarding Plaintiffs' requests for

---

[4] Abby Owens claims damages for healthcare expenses, and additionally suffered damages from substance abuse, eating disorders, and self-harm requiring her to attend multiple rehab programs focused on substance abuse and co-occurring disorders. *See* R. Doc. 352-1 at p. 3 (citing R. Doc. 182, ¶ 361).  Similarly, Ashlyn Robertson had to pay out of pocket for rehabilitation centers and sober houses and is still recovering from the alcohol and substance abuse she developed at LSU. *See* R. Doc. 352-1 at p. 2 (citing R. Doc. 182, ¶ 288).  Kennan Johnson had to be hospitalized and underwent sever trauma therapy after attempting suicide as a result of her abuse. *See* R. Doc. 352-1 at p. 4 (citing R. Doc. 182, ¶ 596).

[5] "The exact line between mental suffering and physical pain may truly be an invisible one… since both forms of distress can be caused either by emotional upset or by disturbances to the cells of the body…. [T]he fluid state of the law seems to be the result of developments not only in the law itself but also in medical science."   § 6.9. Common law, 6 La. Civ. L. Treatise, Law Of Obligations § 6.9 (2d ed.).

compensatory damages for medical treatment and physical injuries incurred as a result of LSU's Title IX violations.

### C.  LOSS OF OPPORTUNITY

Courts have held that, under *Cummings,* plaintiffs can still recover loss of opportunity damages in Spending Clause cases.  In *Chaitram v. Penn Med.-Princeton Medical Center*, the Court held that "*Cummings* does not foreclose compensatory damages under an expectation-interest theory," and denied defendants 12(b)(6) motion to dismiss where the plaintiff, in addition to seeking damages for emotional distress, also sought injunctive relief injunctive relief and compensatory damages for claims involving violations of the Americans with Disabilities Act, the Rehabilitation Act, and the Affordable Care Act.  No. CV2117583MASTJB, 2022 WL 16821692, at *2 (D.N.J. Nov. 8, 2022).  While the plaintiff could not recover on claims for "shame, anxiety, frustration, emotional distress, fear and discrimination," compensatory damages "such as loss of opportunity damages, dignitary harm damages, and nominal damages" were still available post-*Cummings. Id.*

In another case involving violations of the ADA and Rehabilitation Act, *Montgomery v. District of Columbia*, the District Court reasoned that, in addition to suffering emotional distress and reputation damages, "the District's failure to accommodate his disability allegedly harmed [the plaintiff] in a different way—by depriving him of the opportunity to meaningfully access and fully participate in his interrogations." No. CV 18-1928 (JDB), 2022 WL 1618741, at *25 (D.D.C. May 23, 2022).  The court found that damages for this loss of opportunity were still recoverable:

> *Cummings* does not require a different conclusion. Using the contract analogy applied in that case here, the District agreed to receive federal funds in exchange for promising to refrain from discriminating against qualified individuals with disabilities. Montgomery, as a third-party beneficiary, alleges that the District

> failed to uphold that promise, which resulted in him losing the
> benefit of the bargain—i.e., being able to participate fully in his
> interrogations. A damages remedy for this type of alleged harm
> would be entirely appropriate in a traditional contract case.

*Id.* (internal citations omitted). Because this loss of opportunity was "the type of injury that would

normally be recoverable in a breach of contract case," *Cummings* did not bar recovery. *Id.* On that

basis, the *Montgomery* court denied summary judgment, finding that "while this loss of

opportunity may have caused Montgomery only slight harm, the harm is not necessarily non-

existent," and "the Court will not usurp the role of the jury and attempt to quantify such damages

in the summary judgment setting." *Id.*

### 1. Lost educational opportunities and benefits.

In the context of Title IX, lost educational opportunities are particularly relevant. "Lost

educational opportunities lie at the heart of Title IX private right of action cases…. 'The statute

makes clear that, whatever else it prohibits, students must not be denied access to educational

benefits and opportunities on the basis of gender.'" *Doe v. Fairfax Cnty. Sch. Bd.*, No.

118CV00614MSNIDD, 2023 WL 424265, at *5 (E.D. Va. Jan. 25, 2023) (citing *Davis Next Friend

LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650, 119 S. Ct. 1661, 143 L. Ed. 2d 839

(1999)). Accordingly, courts have held that damages for lost educational opportunities remain

available following *Cummings*. For instance, in *Doe v. Fairfax County School Board*, a federal

court in Virginia held that the plaintiff's claims for damages sustained as a result of lost educational

opportunities would not be dismissed under *Cummings*. No. 118CV00614MSNIDD, 2023 WL

424265, at *5 (E.D. Va. Jan. 25, 2023). In her complaint, the plaintiff identified lost educational

opportunities, and record evidence established two "concrete, negative effect[s]" her alleged

sexual assault had on her ability to participate in educational opportunities and benefits provided

16

by the school, as (a) her academic performance and class attendance declined after the assault, and

(b) she modified her behavior, isolated herself, and missed the band's end-of-year concert so at to

avoid coming into contact with her assailant.  *Id.*  The Court explained:

> Although it is true that principles of contract law place the burden
> on the plaintiff to prove damages with reasonable certainty,
> Restatement (Second) of Contracts § 352 cmt. a (1981),
> compensatory damages that are not based upon specific monetary
> harm but stem directly from lost opportunities suffered as a result of
> discrimination can nonetheless serve as a basis for damages in
> private right of action cases based on Spending Clause statutes.
> Accordingly, this Court finds that such losses of educational
> opportunities remain recoverable post-*Cummings* and that it would
> be premature at this time to preclude Plaintiff from presenting
> evidence related to compensatory damages for lost educational
> opportunities and benefits.

*Id.* (citing *Montgomery*, 2022 WL 1618741, at *25 n.39, *26; *Chaitram*, 2022 WL 16821692, at

*2; Final Jury Instrs., *Nancy Roe v. Purdue Univ.*, No. 4:18-cv-89-JEM (N.D. Ind. Sept. 23, 2022),

ECF No. 140 (Instr. No. 24) (instructing jury to "determine the amount of money that will fairly

compensate [plaintiff] for any injury that you find she sustained as a direct result of being denied

equal access to educational opportunities").

## 2.  *Lost earning capacity and employment opportunities.*

"Consequential damages for lost earning capacity are available in breach of contract cases

where a plaintiff alleges the loss of identifiable professional opportunities that the defendant's

breach actually adversely influenced or affected." 24 Williston on Contracts § 66.4 (4th ed. 2022)

(internal quotations omitted).  Thus, consistent with the Court's ruling in *Cummings,* damages for

loss of future earnings or employment opportunities remain available in cases like this one.  *See*

*Doe v. Texas Christian Univ.*, No. 4:22-CV-00297-O, 2022 WL 17631668, at *4 (N.D. Tex. Dec.

13, 2022) (denying summary judgment on economic damages and loss of future earnings claims

where plaintiff provided sufficient evidence of economic damages were "not 'entirely speculative'"); *Rullo v. Univ. of Pittsburgh*, No. 17-1380, 2021 WL 633381, at *3–4 (Feb. 18, 2021) (finding plaintiff adequately pled loss of identifiable professional opportunities where alleged Title IX violations led plaintiff to transfer to lower ranked law school and therefore lose access to certain caliber of jobs) (cited with approval in a post-*Cummings* Title IX case in *Doe v. Fairfax Cnty. Sch. Bd.*, No. 118CV00614MSNIDD, 2023 WL 424265, at *6–7 (E.D. Va. Jan. 25, 2023) (finding plaintiff could not recover for loss of future earnings where she failed to plead any identifiable opportunity foreclosed by discrimination and alleged loss was to attenuated from violations because breach occurred while Plaintiff was in high school); *Unknown Party v. Ariz. Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2022 WL 17081309, at *17 (Nov. 18, 2022) (finding loss of identifiable professional opportunities where both parties conceded Plaintiff was likely to become wrestling coach).

### 3. *Plaintiffs have alleged numerous lost educational and employment opportunities in their Complaint.*

In the present case, numerous Plaintiffs assert claims for loss of opportunities suffered due to LSU's failures, as the Board acknowledges in its Motion to Dismiss. These losses are compensable, and Plaintiffs have alleged sufficient facts on which they can justifiably be expected to prevail at trial.

Perhaps most notably, tennis player Jade Lewis, who was recruited to LSU from New Zealand and received a full scholarship for her exceptional tennis skills,[6] was extremely likely to go pro after college.[7] In fact, as a term of Lewis' scholarship, LSU agreed to allow Lewis to take

---

[6] Doc. 182 at ₱ 452-53.
[7] Evidence adduced through discovery supports this assertion. Deposition testimony of Coach Darren Cahill confirms Jade Lewis was heavily recruited by LSU, and she chose to forgo going straight to the pros as a teenager to attend LSU at the age of 17, when she could have gone pro after her junior year of high school. Cahill Dep. at 20:15-21:19. Lewis had a 17-0 win record her freshman year. Cahill Dep. at 23:15-21. Cahill testified that Lewis had the potential

a leave of absence to play tennis professionally while maintaining scholarship benefits.[8] As a result of her abuse and LSU's failures to address same, Lewis suffered significant economic damages, including her opportunity to play professional tennis and the opportunity for significant earning potential related to sponsorships.[9] She lost benefits of participating meaningfully in campus and athletic activities while on campus. *Id.* at 555.  Lewis' ability to play tennis was impacted by physical injuries she incurred as a result of John Coe's abuse; after one attack in which Coe punched Lewis in the stomach, she could not perform her tennis serve. R. Doc. 182 at ¶ 463. While Jade Lewis previously expected to continue a career in professional tennis, she lost that opportunity because of her abuse while attending LSU and, accordingly, lost sponsorship and other economic opportunities available to collegiate and professional athletes.

Other Plaintiffs also lost valuable educational opportunities and benefits. After Kennan Johnson experienced suicidal ideation and admitted herself to a hospital, she missed classes and was deprived of material opportunities to participate in student life and other educational opportunities and benefits. *See* R. Doc. 352-1 at p. 4 (citing R. Doc. 182, ¶ 596).  Elisabeth Andries also missed class and withdrew from campus activities because of her harassment, thus being deprived of valuable educational opportunities from which she would otherwise have benefitted. R. Doc. 352-1 at p. 3 (citing R. Doc. 182, ¶ 451).

Calise Richardson lost opportunities to participate in school and other educational opportunities and benefits; after her assault, her school attendance declined, her grades suffered, and she turned down multiple job opportunities as a result. *See* R. Doc. 352-1 at p. 2 (citing

---

to become a top-fifty ranked tennis player in the world.  Cahill Dep. at 39:20-25. She would have easily been the number one player in New Zealand, and her marketability would have also brought in endorsements. Cahill Dep. at 46:7-10.

[8] Doc. 182 at ¶ 454.

[9] Doc. 182 at ¶ 555.

Plaintiff's Second Amended Complaint, R. Doc. 182, ¶ 241).  Similarly, Corinn Hovis suffered a loss of educational opportunities due to classes missed as a result of these events, and her grades suffered.  *See* R. Doc. 352-1 at p. 4 (citing R. Doc. 182, ¶ 698).  In addition to having to retake at least one class, Ms. Hovis' declining grades and academic record adversely impacted her chances of getting into graduate school and therefore limited her previous plans of pursuing higher education following her matriculation from LSU. *See* R. Doc. 352-1 at p. 4 (citing R. Doc. 182, ¶ 698).

Jane Doe not only missed classes as a result of her abuse.  *See* R. Doc. 352-1 at p. 4 (citing R. Doc. 182, ¶ 650).  She was ultimately expelled and forced to enroll in community college, thereby losing significant educational opportunities and the benefits afforded to LSU students.  *See* R. Doc. 352-1 at p. 4 (citing R. Doc. 182, ¶ 650).  Ms. Doe's future professional success and career prospects were diminished as a result.  *See* R. Doc. 352-1 at p. 4 (citing R. Doc. 182, ¶ 650).  Abby Owens also had to leave LSU, and she claims loss of educational and employment opportunities as a result of her transfer to the University of Georgia.  R. Doc. 352-1 at p. 3 (citing R. Doc. 182, ¶ 361).  Those losses include lost scholarship benefits, a delay in graduating and entering the job market, and loss of income attributed to the delay in receiving her degree. R. Doc. 352-1 at p. 3 (citing R. Doc. 182, ¶ 361). Samantha Brennan similarly claims lost past and future income resulting from her inability to obtain a college degree without delay.  *See* R. Doc. 352-1 at p. 3 (citing R. Doc. 182, ¶ 326).  As for Ashlyn Robertson, not only did she lose her TOPS scholarship, as discussed above, and the educational opportunities and benefits afforded thereunder, she has further lost the opportunity to complete her degree at another school, because she has been unable to repay money owed to TOPS as a result of the loss of her scholarship. *See* R. Doc. 352-1 at p. 2 (citing Plaintiff's Second Amended Complaint, R. Doc. 182, ¶ 288).  Ms. Robertson has suffered

not only delay in entering the job market with a college degree; that opportunity has been completely precluded to date.

In addition to the students' lost opportunities, Sarah Beth Kitch sustained significant losses in terms of professional opportunities and, accordingly, loss of future earning capacity. *See* R. Doc. 352-1 at p. 5 (citing R. Doc. 182, ¶ 741). Ms. Kitch suffered the complete loss of her ability to complete her Ph.D. dissertation and earn tenure as a professor, and she therefore asserts damage claims for loss of past and future income and loss of professional opportunities as a result. *See* R. Doc. 352-1 at p. 5 (citing R. Doc. 182, ¶ 741).

All of the foregoing losses of opportunity, among others that may be shown at trial, are and remain compensable in Title IX actions, regardless of the application of *Cummings*. Plaintiffs have sufficiently pleaded facts to support these loss of opportunity damages, and their claims should therefore not be dismissed on the Board's 12(b)(6) Motion.

## IV.   PLAINTIFFS HAVE SUFFICIENTLY PLEADED CLAIMS FOR WHICH THEY CAN PLAUSIBLY BE EXPECTED TO RECOVER COMPENSATORY AND CONSEQUENTIAL DAMAGES.

In the present case, Plaintiffs have also asserted claims seeking to recover compensatory and consequential damages of the nature and classes described in the foregoing pages. Moreover, Plaintiffs have pleaded sufficient facts to support those claims. The Board's own Motion admits as much—in the Memorandum filed in support of its Motion to Dismiss, the Board acknowledges distinct factual allegations asserted on behalf of each Plaintiff sufficient to support claims for damages in the categories described herein, all of which support claims for recoverable damages. That being the case, Plaintiffs can plausibly be expected to prevail and recover damages at trial, and the Board's Motion to Dismiss should therefore be denied.

**<u>CONCLUSION</u>**

While this Court is not bound to apply *Cummings* to preclude claims for emotional distress here, Plaintiffs have sufficiently pleaded claims for recoverable compensatory damages and other losses that courts interpreting *Cummings* have found remain viable remedies under Title IX.  As such, the Board's Motion to Dismiss this lawsuit is without merit.  Plaintiffs have stated viable claims on which they can plausibly be expected to prevail at trial and have suffered damages which are compensable under applicable law.  Therefore, the Board's Motion to Dismiss under Rule 12(b)(6) should be denied.

Respectfully Submitted,

*/s/ Catherine E. Lasky*

Karen Truszkowski

*Pro Hac Vice*

Temperance Legal Group

503 Mall Court #131

Lansing, Michigan 48912

P: (844) 534-2560

F: (800) 531-6527

karen@temperancelegalgroup.com

Catherine E. Lasky (La. Bar 28652)

Endya L. Hash (La. Bar 38260)

Katie Lasky Law

619 Homedale Street

New Orleans, Louisiana 70124

P: (504) 584-7336

F: (504) 375-2221

katie@katielaskylaw.com

endya@katielaskylaw.com

Elizabeth K. Abdnour

*Pro Hac Vice*

Abdnour Weiker LLP

500 E. Michigan Ave., Ste. 130

Lansing, Michigan 48912

P: (517) 994-1776

F: (614) 417-5081

liz@education-rights.com

*Attorneys for Plaintiffs*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour
