**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| ABBY OWENS, ET AL. ) | |
| ) | Case No. 3:21-cv-00242-WBV-SDJ |
| Plaintiffs, ) | |
| v. ) | Judge Wendy B. Vitter |
| ) | Magistrate Judge Scott D. Johnson |
| LOUISIANA STATE UNIVERSITY, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |

**AMICUS BRIEF SUBMITTED BY PUBLIC JUSTICE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii
INTERESTS OF PROPOSED AMICUS CURIAE ................................................................ 1
INTRODUCTION ................................................................................................................... 1
ARGUMENT ........................................................................................................................... 2
I.   Title IX Plaintiffs May Press Two Types of Pre-assault Claims. ............................. 2
II.  Schools' Control Does Not End at their Campus Boundaries. ................................. 5
III. Title IX Prohibits Educational Deprivations of All Kinds. ..................................... 10
CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*C.K. v. Wrye*,
  751 F. App'x 179 (3d Cir. 2018) ..................................................................................................3

*Chenier v. Bd. of Supervisors for La. Sys.*,
  No. 16-4125, 2017 WL 3425442 (E.D La. Aug. 8, 2017) ..........................................................3

*City of Canton v. Harris*,
  489 U.S. 378 (1989) ....................................................................................................................4

*Czerwienski v. Harvard Univ.*,
  No. 22-10202, 2023 WL 2763721 (D. Mass. Mar. 31, 2023) ..................................................11

*Davis ex rel. LaShonda D. v. Monroe County Board of Education*,
  526 U.S. 629 (1999) .......................................................................................................... passim

*DeGroote v. Ariz. Bd. of Regents*,
  No. CV-18-310, 2020 WL 10357074 (D. Ariz. Feb. 7, 2020) ...................................................6

*Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*,
  593 F.3d 507 (7th Cir. 2010) ......................................................................................................7

*Doe 1 v. Baylor Univ.*,
  240 F. Supp. 3d 646 (W.D. Tex. 2017) ......................................................................................5

*Doe 12 v. Baylor Univ.*,
  336 F. Supp. 3d 763 (W.D. Tex. 2018) ......................................................................................5

*Doe 1 ex rel. Doe II v. Huntington Indep. Sch. Dist.*,
  No. 9:19-CV-133, 2020 WL 10317505 (E.D. Tex. Oct. 5, 2020) ..............................................5

*Doe v. Bd. of Supervisors of Univ. of La. Sys.*,
  No. CV 22-338, 2023 WL 143171 (M.D. La. Jan. 10, 2023) ...........................................3, 5, 9

*Doe v. Fairfax Cnty. Sch. Bd.*,
  1 F.4th 257 (4th Cir. 2021) ..................................................................................................2, 11

*Doe v. Sch. Bd. of Broward Cnty.*,
  604 F.3d 1248 (11th Cir. 2010) .................................................................................................3

*Doe v. Texas A&M Univ.*,
  No. H-21-3728, 2022 WL 5250294 (S.D. Tex. Oct. 6, 2022) ...................................................5

*Doe ex rel. Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty.*,
   35 F.4th 459 (6th Cir. 2022) ................................................................................................4

*Farmer v. Kan. State Univ.*,
   918 F.3d 1094 (10th Cir. 2019) ......................................................................................2, 11

*Feminist Majority Found v. Hurley*,
   911 F.3d 674 (4th Cir. 2018) ....................................................................................5, 7, 9

*Fennell v. Marion Indep. Sch. Dist.*,
   804 F.3d 398 (5th Cir. 2015) ........................................................................................10, 11

*Fitzgerald v. Barnstable Sch. Comm.*,
   504 F.3d 165 (1st Cir. 2007) ..............................................................................................2

*Gebser v. Lago Vista Independent School District*,
   524 U.S. 274 (1998) ........................................................................................................3, 4

*Hernandez v. Baylor Univ.*,
   274 F. Supp. 3d 602 (W.D. Tex. 2017) ..............................................................................2, 5

*Jennings v. Univ. of N.C.*,
   482 F.3d 686 (4th Cir. 2007) ..............................................................................................11

*Karasek v. Regents of Univ. of Cal.*,
   956 F.3d 1093 (9th Cir. 2020) ....................................................................................2, 4, 5

*Lozano v. Baylor Univ.*,
   408 F. Supp. 3d 861 (W.D. Tex. 2019) ................................................................................5

*Mahanoy Area Sch. Dist. v. B. L. ex rel. Levy*,
   141 S. Ct. 2038 (2021) ........................................................................................................8

*Oden v. N. Marianas Coll.*,
   440 F.3d 1085 (9th Cir. 2006) ............................................................................................8

*Roe v. Cypress-Fairbanks Independent School District*,
   53 F.4th 334 (5th Cir. 2022) ................................................................................................5

*Roe v. Marshall Univ. Bd. of Governors*,
   No. 3:22-532, 2023 WL 2799733 (S.D. W. Va. Apr. 5, 2023) ........................................5, 6

*Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*,
   678 F. Supp. 2d 1008 (E.D. Cal. 2009) ..............................................................................8

*Ross v. Univ. of Tulsa*,
   859 F.3d 1280 (10th Cir. 2017) ..........................................................................................7

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*,
    511 F.3d 1114 (10th Cir. 2008) ..........................................................................................9

*Simpson v. Univ. of Colo. Boulder*,
    500 F.3d 1170 (10th Cir. 2007) .................................................................................. *passim*

*Stephenson v. Brownsboro Indep. Sch. Dist.*,
    No. 6:21-cv-427, 2022 WL 3697965 (W.D. Tex. Aug. 25, 2022) ............................................4

*Wamer v. Univ. of Toledo*,
    27 F.4th 461 (6th Cir. 2022) ................................................................................................11

*Williams v. Bd. of Regents of Univ. Sys. of Ga.*,
    477 F.3d 1282 (11th Cir. 2007) ..............................................................................................2

**Statutes**

20 U.S.C. § 1681(a) ..........................................................................................................................7

20 U.S.C. § 1681 *et seq.*..................................................................................................................1

42 U.S.C. § 1983..............................................................................................................................4

**Other Authorities**

85 Fed. Reg. 30,026 (May 19, 2020) ...............................................................................................9

87 Fed. Reg. 41,390  (July 12, 2022)..............................................................................................10

Amicus Brief of the United States, *Brown v. Arizona*,
    No. 20-15568 (9th Cir.), https://www.justice.gov/crt/case-
    document/file/1524916/download .......................................................................................10

*Environment*, Merriam-Webster, https://www.merriam-
    webster.com/dictionary/environment.....................................................................................6

Letter from Adele Rapport, Reg'l Dir., Off. for C.R., U.S. Dep't Educ., to Janice
    K. Jackson, Chief Exec. Officer, Chi. Pub. Schs. Dist. #299 (Sept. 12, 2019),
    https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more
    /05151178-a.pdf ....................................................................................................................9

Off. for C.R., U.S. Dep't Educ., Q&A on Campus Sexual Misconduct (2017),
    https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf...............................10

Off. for C.R., U.S. Dep't Educ., Questions and Answers on Title IX and Sexual
    Violence (2014),
    https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf...............................10

## **INTERESTS OF PROPOSED AMICUS CURIAE**

Public Justice is a national public interest advocacy organization that fights against abusive corporate power and predatory practices, the assault on civil rights and liberties, and the destruction of the earth's sustainability. In its Students' Civil Rights Project, Public Justice focuses on ensuring that educational institutions comply with the Constitution and anti-discrimination laws, including Title IX. Public Justice often represents students denied equal educational opportunities because of sex-based harassment suffered at school. Public Justice has particular expertise and interest in three questions at issue in this case: (1) the types of pre-assault claims available under Title IX, (2) schools' obligations under Title IX to prevent and address off-campus sexual harassment, and (3) what constitutes an educational injury for purposes of Title IX.

## **INTRODUCTION**

Every year, thousands of students experience sexual harassment by classmates and teachers. This abuse has the potential to derail a victim's education. Fortunately, federal law provides students with essential protections: Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, requires schools to address known harassment to stop its recurrence and protect students' opportunity to learn. This case arises from Louisiana State University's failures to live up to that obligation. The University's pending motions for summary judgment present an improperly narrow vision of schools' Title IX responsibilities, and potential liability—a vision that, if adopted by this Court and others, could have significant ramifications for not only the plaintiffs in this case but also for other students at other schools.

Title IX offers students more meaningful protection than LSU would have this Court believe. In this brief, amicus curiae seek to provide an overview of key principles of Title IX law that LSU gets wrong. First, Title IX plaintiffs may bring both harasser-specific and "official policy"

1

pre-assault claims, despite LSU's argument that the latter are unavailable in the Fifth Circuit. Second, contrary to LSU's contention, schools may exercise substantial control over off-campus sexual harassment. Third, plaintiffs may establish Title IX claims based on a wide range of cognizable educational injuries. Together, these well-established principles offer important protections for students like the plaintiffs here.

## ARGUMENT

### I. Title IX Plaintiffs May Press Two Types of Pre-assault Claims.

Title IX sexual harassment claims come in three primary forms: post-assault claims, harasser-specific pre-assault claims, and official policy pre-assault claims. Broadly speaking, with a post-assault claim, a plaintiff seeks to hold the recipient liable for its deliberate indifference to her reports that she had been sexually harassed.[1] By contrast, in a pre-assault, or "heightened risk," claim, a plaintiff contends that the recipient is liable based on its deliberate indifference that occurred prior to—and helped cause—the sexual harassment she then experienced. *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1099 (9th Cir. 2020); *Hernandez,* 274 F. Supp. 3d at 614-15 & n.4. Because this Court has previously dismissed most Plaintiffs' post-assault claims as untimely, amici will focus here on the two types of pre-assault claims, in hopes of clarifying the University's misapprehensions.

1. In a harasser-specific pre-assault claim, a plaintiff challenges a school's deliberate indifference to the risk a specific student or teacher with a history of harassment posed to the student

---

[1] In a post-assault claim, a recipient may be liable if its deliberate indifference either causes the plaintiff to suffer further harassment or if it forces her to lose out on educational opportunities by leaving her vulnerable to further harassment. *See, e.g.*, *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 274 (4th Cir. 2021), *cert. denied*, 143 S. Ct. 442 (2022); *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 171 (1st Cir. 2007), *rev'd and remanded on other grounds,* 555 U.S. 246 (2009); *Williams v. Bd. of Regents of Univ. Sys. of Ga.,* 477 F.3d 1282, 1296 (11th Cir. 2007); *Farmer v. Kan. State Univ.*, 918 F.3d 1094, 1103, 1106 (10th Cir. 2019); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 613 (W.D. Tex. 2017).

body—a deliberate indifference that allowed the same harasser to go on to abuse the plaintiff. For example, in one Eleventh Circuit case, a school received (though did not substantiate) reports that a teacher had harassed two students, the school failed to respond appropriately, and, as a result, the teacher later harassed the plaintiff. *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1257-59 (11th Cir. 2010); *see also, e.g., C.K. v. Wrye,* 751 F. App'x 179, 184 (3d Cir. 2018); *Doe v. Bd. of Supervisors of Univ. of La. Sys.*, No. CV 22-338, 2023 WL 143171, at *9 (M.D. La. Jan. 10, 2023); *Chenier v. Bd. of Supervisors for La. Sys.,* No. 16-4125, 2017 WL 3425442, at *7-9 (E.D La. Aug. 8, 2017). Harasser-specific pre-assault claims must meet the elements identified by the Supreme Court in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998) and *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999), including actual knowledge and deliberate indifference. *See, e.g.*, *Broward Cnty.*, 604 F.3d at 1254; *Bd. of Supervisors of Univ. of La. Sys.*, 2023 WL 143171, at *9.[2]

2. Official policy pre-assault claims, however, are based on a theory of liability separate from that in *Gebser* and *Davis*. In *Gebser*, the Supreme Court explained that the actual knowledge and deliberate indifference requirements applied only in cases, like that one, "that do not involve official policy of the recipient entity." *Gebser*, 524 U.S. at 290; *see also Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1176 (10th Cir. 2007) (noting the Supreme Court "suggeste[d] that the *Gebser* standards do not apply to some Title IX harassment claims"). As the Tenth Circuit explained in an opinion then-Judge Gorsuch joined, "[t]he Court did not elaborate on what it meant by 'involve official policy,' but the essence of the point is suggested by its reliance in the following

---

[2] While a harasser-specific pre-assault claim requires actual knowledge of harassment by same person who later harasses the plaintiff, "no circuit has interpreted *Gebser*'s actual notice requirement so as to require notice of the prior harassment of the Title IX plaintiff *herself.*" *Broward Cnty.*, 604 F.3d at 1257; *see also C.K.,* 751 F. App'x at 184 (similar).

3

paragraph on the doctrine regarding the imposition of liability on municipalities under 42 U.S.C. § 1983 for civil-rights violations." *Simpson*, 500 F.3d at 1177. Among the § 1983 cases *Gebser* cited was *City of Canton v. Harris*, 489 U.S. 378 (1989), in which "the Court held that a municipality may be liable under § 1983 for an officer's constitutional violation if the violation was the result of inadequate police training and the municipality's failure to train the officer amounted to deliberate indifference to the rights of those 'with whom police come into contact.'" *Simpson*, 500 F.3d at 1178 (quoting *Canton*, 489 F.3d at 388).

Accordingly, "a funding recipient may be said to have 'intentionally acted in clear violation of Title IX' when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary." *Simpson*, 500 F.3d at 1178 (quoting *Davis,* 526 U.S. at 642). Crucially, under such an "official policy" claim, "[a] school need not have had actual knowledge of a specific instance of sexual misconduct or responded with deliberate indifference to that misconduct before damages liability may attach." *Karasek*, 956 F.3d at 1112; *see also Simpson*, 500 F.3d at 1177 ("We do not think that the notice standards established for sexual-harassment claims in *Gebser* and *Davis* necessarily apply in this circumstance."). The Supreme Court meant what it said: "[T]he requirements it imposed" in *Gebser* do not apply to cases that "involve official policy of the [funding recipient]." *Simpson,* 500 F.3d at 1177 (quoting *Gebser*, 524 U.S. at 290).

The Sixth, Ninth, and Tenth Circuits have all recognized the availability of such official policy claims. *Doe ex rel. Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty.*, 35 F.4th 459, 465 (6th Cir. 2022), *cert. denied sub nom. Metro. Gov't of Nashville & Davidson Cnty. v. Doe*, 143 S. Ct. 574 (2023); *Karasek*, 956 F.3d at 1112 (9th Cir. 2020); *Simpson*, 500 F.3d at 1178 (10th Cir. 2007). So have district courts within the Fifth Circuit. *See, e.g.*, *P.S. ex rel. Stephenson v.*

4

*Brownsboro Indep. Sch. Dist.,* No. 6:21-cv-427, 2022 WL 3697965, at *5 (W.D. Tex. Aug. 25, 2022), *adopting R. & R.*, 2022 WL 14151208, at *1 (Oct. 24, 2022); *Doe 1 ex rel. Doe II v. Huntington Indep. Sch. Dist.,* No. 9:19-CV-133, 2020 WL 10317505, at *4-5 (E.D. Tex. Oct. 5, 2020); *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 879-80 (W.D. Tex. 2019); *Doe 12 v. Baylor Univ.,* 336 F. Supp. 3d 763, 781-83 (W.D. Tex. 2018); *Hernandez,* 274 F. Supp. 3d at 615 n.4; *Doe 1 v. Baylor Univ.,* 240 F. Supp. 3d 646, 661-62 (W.D. Tex. 2017); *cf. Doe v. Texas A&M Univ.*, No. H-21-3728, 2022 WL 5250294, at *6 (S.D. Tex. Oct. 6, 2022) (recognizing the Fifth Circuit has not foreclosed "Title IX claim[s] for creation of a general heightened risk" akin to those in *Simpson* and *Karasek*). No circuit court has adopted a different view. While the Fifth Circuit rejected a victim's argument that sounded something like an "official policy" claim in *Roe v. Cypress-Fairbanks Independent School District*, it did so because that plaintiff could not draw a causal connection between the school's conduct and the harassment she suffered. *See* 53 F.4th 334, 342 (5th Cir. 2022). And the Fifth Circuit expressly left open the possibility that a different plaintiff might succeed under a similar theory. *See id.*

## II. Schools' Control Does Not End at their Campus Boundaries.

The University is wrong that it lacked control over the contexts in which the Plaintiffs were harassed. Courts across the country, including within the Fifth Circuit, have recognized that schools can exercise control over off-campus contexts, including residences. *See, e.g.*, *Simpson*, 500 F.3d at 1173, 1177 (holding university exercised control over context of rapes that occurred at an off-campus student residence); *Feminist Majority Found v. Hurley,* 911 F.3d 674, 687 (4th Cir. 2018) (explaining that University had substantial control over harassment "within the immediate vicinity of the … campus"); *Bd. of Supervisors of Univ. of La. Sys.*, 2023 WL 143171, at *10 (collecting cases); *Roe v. Marshall Univ. Bd. of Governors*, No. 3:22-532, 2023 WL 2799733, at *4 (S.D. W. Va. Apr. 5, 2023) (collecting cases). As the cases demonstrate, a school may exercise

5

such control when it has the regulatory authority to increase or decrease the risk of harassment in that context, and also when it is otherwise responsible for *creating* the risk of harassment in that context.

      1. Title IX's "substantial control" requirement stems from the Supreme Court's holding that a school will not be vicariously liable for a student or teacher's harassment. *Davis*, 526 U.S. at 640-41. Rather, it will only be responsible for its own deliberate indifference that either causes a student to be harassed or makes them vulnerable to further harassment. *Id.* So, if a student is harassed in a context where a school has no way to influence the risk of harassment, or is harassed by a person over whom the school has no control, it cannot be liable under Title IX. *See id.* at 645-46. Control thus consists of two related parts: "control over the context in which the harassment occurs" and, "[m]ore importantly, … control over the harasser." *Id.* at 646. At issue in this case is the former.

      "The location at which the … harassment occurs is certainly part of a court's calculus in examining [control over] context—but it is not dispositive." *DeGroote v. Ariz. Bd. of Regents*, No. CV-18-310, 2020 WL 10357074, at *8 (D. Ariz. Feb. 7, 2020). After all, the Court chose the term "context," not "location." *Davis*, 526 U.S. at 645-46. And the one term *Davis* used synonymously with "context" is "environment," *id.* at 644—a term that evokes "conditions" or "circumstances" defined by more than simple geographic boundaries, *see Environment*, Merriam-Webster, https://www.merriam-webster.com/dictionary/environment ("1: the circumstances, objects, or conditions by which one is surrounded … 2[b]: the aggregate of social and cultural conditions that influence the life of an individual or community"); *see also Marshall Univ.*, 2023 WL 2799733, at *3 (explaining "context" is not limited to "physical locations").

2. A school may exercise substantial control over a context by regulating what happens in that environment. *See, e.g.*, *Hurley,* 911 F.3d at 687-89 (explaining school had substantial control because it could have "exercised control in … ways that might have corrected the hostile environment"); *Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 512 (7th Cir. 2010) (explaining recipient lacked control over context of harassment because it "lack[ed] the authority to take remedial action" in that context). *Davis* connected "control over context" to Title IX's text, 526 U.S. at 645, which forbids, among other things, "discrimination *under* any education program or activity," 20 U.S.C. § 1681(a) (emphasis added). The Court then adopted a series of dictionary definitions of "under" that all boil down to regulatory authority: "'in or into a condition of subjection, regulation, or subordination'; 'subject to the guidance and instruction of[,]' … 'subject to the authority, direction, or supervision of.'" *Davis*, 526 U.S. at 645 (citations omitted).

One common way schools exercise their regulatory authority is through discipline. *Davis* acknowledged this in summarizing its holding: "We thus conclude that recipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment *and the harasser is under the school's disciplinary authority*." 526 U.S. at 646-47 (emphasis added). In formulating the liability standard this way, with the last clause standing for the "control" requirement the Court had explained above, *Davis* made clear that disciplinary authority can provide a school with control over both the harasser and the context of the harassment.

That makes sense because disciplinary and other regulatory authority can, as a practical matter, place harassment within a school's control to prevent and remediate. *See, e.g.*, *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1287 n.5 (10th Cir. 2017) (holding school had sufficient control over context in part because its disciplinary authority meant it could have prevented the rape). Even on

7

campus, disciplinary authority is often the primary way that schools exercise control over a context. When harassment occurs behind a dorm room's closed door, or in a teacher's private office, officials may not exercise contemporaneous physical control sufficient to stop the harasser in the act. *See, e.g.*, *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1086-87 (9th Cir. 2006) (describing teacher's sexual harassment during one-on-one classes where "no one else was present" to intervene). But they can impose measures that make it more difficult for him to harass a student there again. *See id.* at 1087-88.

Schools are often able to exercise similar control over a student or employee's misconduct that occurs away from campus. A school's off-campus disciplinary authority may be particularly strong with respect to rule-breaking during official school activities. *See, e.g.*, *Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1025 (E.D. Cal. 2009) (holding school exercised control over off-campus football camp it sponsored). But, sometimes, that authority will also extend to misconduct within students' and teachers' off-campus residences and similar contexts, especially where that misconduct poses a threat to the school's mission. *See, e.g.*, *Mahanoy Area Sch. Dist. v. B. L. ex rel. Levy*, 141 S. Ct. 2038, 2045 (2021) (explaining schools can regulate students' off-campus "harassment" and "threats").

3. Regulatory power to reduce the risk of harassment is not the only way to demonstrate control. For instance, a school also exercises control where it *creates* the heightened risk of abuse in the given context. In *Simpson*, the University of Colorado had a practice of providing female student "[a]mbassadors" to high school athletic recruits, who were promised "a good time." *Simpson*, 500 F.3d at 1173. Predictably, some female students were raped by recruits and current student-athletes, including at one victim's off-campus apartment. *Id.* The location of the rapes was no obstacle to the plaintiffs' claims. After all, it would be nonsensical to say a school lacked control

over the context of rapes that were the direct result of its own course of conduct. *See id.* at 1178; *see also Doe v. Bd. of Supervisors of Univ. of La. Sys.*, 2023 WL 143171, at *10 (noting "multiple courts have found that off-campus rape and assault *is* actionable, particularly when the university is actually aware of prior assaults by the *same* student-attacker" and collecting cases).

Courts also look at other indicia of a "nexus between the out-of-school conduct and the school." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1121 n.1 (10th Cir. 2008). These include the location of the conduct and the likelihood it would affect the learning environment. *See, e.g.*, *Hurley,* 911 F.3d at 687 (holding that university controlled context of harassment "within the immediate vicinity of … campus" concerning "events occurring on campus and specifically target[ing] … students").

4. Consistent with courts across the country, the federal agencies responsible for enforcing Title IX have recognized that schools may exercise control over off-campus contexts, including student residences. In the preamble to Title IX regulations promulgated in 2020, the U.S. Department of Education explained that, under its interpretation of *Davis*'s control requirement, "even if a situation arises off campus"—including in an "off-campus apartment"—"the recipient [may still] exercise[] substantial control." 85 Fed. Reg. 30,026, 30,093 (May 19, 2020). That explanation was consistent with the Department's earlier enforcement efforts. For example, in a 2019 letter of findings, the Department found a school district violated Title IX in failing to address off-campus peer sexual harassment that occurred under the school's disciplinary authority, and by permitting a teacher with a history of sexual harassment to continue to access students, one of whom he then sexually assaulted off school grounds. *See* Letter from Adele Rapport, Reg'l Dir., Off. for C.R., U.S. Dep't Educ., to Janice K. Jackson, Chief Exec. Officer, Chi. Pub. Schs. Dist. #299 at 4-10, 33-34 (Sept. 12, 2019), https://www2.ed.gov/about/offices/list/ocr/docs/investigations/more

9

/05151178-a.pdf. In recent proposed updates to its regulations, the Department seeks to "clarify" further "that conduct occurring under a recipient's education program or activity includes but is not limited to . . . conduct that is subject to the recipient's disciplinary authority." 87 Fed. Reg. 41,390, 41,401 (July 12, 2022).[3]

The U.S. Department of Justice has adopted the same view. For example, in an amicus brief filed last year, it explained that "[o]ne way that a plaintiff can satisfy the substantial-control requirement is by showing that their harassment fell within the scope of 'the school's disciplinary authority,'" and described how a university exercised control over an off-campus student residence. Amicus Brief of the United States at 6-11, 18-20, *Brown v. Arizona*, No. 20-15568 (9th Cir.), https://www.justice.gov/crt/case-document/file/1524916/download (quoting *Davis*, 526 U.S. at 647)).

## III. Title IX Prohibits Educational Deprivations of All Kinds.

The University cannot seriously dispute that the Plaintiffs did not suffer educational deprivations as a result of the harassment they suffered. Instead, the University insists those deprivations are not the right kind to give rise to Title IX liability. That is incorrect.

To establish an educational injury, a plaintiff need not have been excluded from her education entirely nor face an "overt, physical deprivation of access to school resources." *Davis*, 526 U.S. at 650-51. Instead, a student is denied equal access when the harassment has "a 'concrete, negative effect' on [their] education." *Fennell v. Marion Inda. Sch. Dist.*, 804 F.3d 398, 410 (5th

---

[3] At the time of the events in this suit the Department also required schools to address off-campus harassment that creates a hostile environment on campus. Off. for C.R., U.S. Dep't Educ., Q&A on Campus Sexual Misconduct at 1 n.3 (2017), https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf; Off. for C.R., U.S. Dep't Educ., Questions and Answers on Title IX and Sexual Violence at 36 (2014), https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.

Cir. 2015) (quoting *Davis*, 526 U.S. at 654) (applying *Davis* to analogous Title VI racial harassment claim); *see also Jennings v. Univ. of N.C.*, 482 F.3d 686, 699 (4th Cir. 2007) (identifying manners of exclusion contemplated by *Davis*).

Examples of such negative effects include lost academic opportunities, for instance, missed classes, dropped courses, and changed study habits. *See, e.g., Fennell*, 804 F.3d at 410 (identifying changed study habits as a cognizable educational deprivation); *Wamer v. Univ. of Toledo*, 27 F.4th 461, 471 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 444 (2022) (holding student established educational deprivation when she changed her major to avoid further harassment); *Fairfax Cnty.,* 1 F.4th at 276 (holding jury could find educational deprivation where plaintiff's attendance declined); *Czerwienski v. Harvard Univ.,* No. 22-10202, 2023 WL 2763721, at *22 (D. Mass. Mar. 31, 2023) (holding plaintiffs were deprived of educational opportunities where they "sacrificed . . . academic goals," including dropping a course, to avoid further harassment). Exclusion from campus facilities is also a cognizable educational injury. *Davis*, 526 U.S. at 651 (identifying "female students [excluded] from using a particular school resource, such as "a computer lab," as an obvious Title IX injury); *Farmer,* 918 F.3d at 1104-05 (holding students were deprived of educational opportunities where they avoided campus library and other resources to avoid their rapists).

As the Fifth Circuit has recognized, diminished academic performance is also a common way that Title IX plaintiffs establish an educational deprivation. *See Fennell*, 804 F.3d at 410 (citing *Davis*, 526 U.S. at 654); *see also Fairfax*, 1 F.4th at 276 (same). The University misquotes *Davis* to argue that worsening grades are not a sufficient injury. *Davis* explained that a drop in GPA alone would not give rise to Title IX liability because a plaintiff must also establish all the other elements of a Title IX claim, *see* 526 U.S at 652—not, as the University suggests, because additional educational harms are necessary. To the contrary, *Davis* observed that a victim's grades

11

can "provide[] necessary evidence of a potential link between her education and [the] misconduct." *Id.* Nowhere in *Davis* did the Supreme Court seek to limit Title IX to prohibit only certain types of educational injuries. *See id.* at 651-52.

## Conclusion

For the reasons set forth above, Public Justice respectfully suggests that the Defendant's motion for summary judgment should be denied.

This 3rd day of August, 2023.

Respectfully submitted,

*/s/ Stephen J. Herman*
Stephen J. Herman, La. Bar No. 23129
HERMAN, HERMAN, & KATZ
820 O'Keefe Avenue
New Orleans, LA 70113
Telephone: (504) 581-4892
E-Mail: sherman@hhklawfirm.com

Alexandra Z. Brodsky*
Mollie Berkowitz*
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
E-Mail: abrodsky@publicjustice.net
E-Mail: mberkowitz@publicjustice.net

***Attorneys for Proposed Amicus Curiae,
Public Justice.***

*\*Pro hac vice* applications forthcoming

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing proposed Amicus Brief, together with the Motion for Leave to File, and the Memorandum in Support, will be filed electronically using the Court's ECF system, thereby effecting service on all counsel of record, and will further be served upon counsel of record *via* E-Mail, this 3rd day of August, 2023.

　　　　　　　　　　　　　　　　　　　　　　　_____/s/ Stephen J. Herman_____