UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, ET AL.**<br>*Plaintiffs*<br><br>v.<br><br>**BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE**<br>*Defendants* | Case No.: 3:21-cv-00242<br><br>Division WBV-SDJ<br><br>JUDGE WENDY B. VITTER<br><br>MAGISTRATE JUDGE JOHNSON<br><br>JURY DEMANDED |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE AND LIMIT EXPERT REPORT AND TESTIMONY OF BRETT SOKOLOW**

Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch ("Plaintiffs"), through undersigned counsel, respectfully submit this memorandum in support of their motion to strike the expert report of Brett Sokolow (the "Report") submitted on behalf of Defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("the Board").[1] For the reasons set forth herein, the Report and any related opinion testimony from Mr. Sokolow should be struck, to the extent that it:

a) Purports to state the "legal standards" applicable to this case;

b) Offers opinions on claims no longer at issue in this case; and/or

c) Contains legal conclusions as to the application of the law to the facts of this case.

Furthermore, Mr. Sokolow should not be permitted to amend his report at this late date.

---

[1] *See* Expert Report of Brett Sokolow (Mar. 1, 2023), attached hereto as Exhibit 1.

## BACKGROUND

The Report submitted by attorney Brett Sokolow, dated March 1, 2023, contains lengthy sections wherein Mr. Sokolow purports to summarize applicable law, including numerous decisions from the Supreme and Circuit Courts bearing on "deliberate indifference" and other aspects of Title IX law. *See*, *e.g.*, Report (Ex. 1) at pages 17-19, 22-24. In fact, Mr. Sokolow goes so far as to opine that heightened risk is not a recognized theory of liability in the Fifth Circuit, in direct contradiction to the prior holding of this Court. *See* Report (Ex. 1) at n. 42. In this case, this Court has allowed Plaintiffs to maintain their claims for heightened risk against the Board, contrary to Mr. Sokolow's opinion that no such theory of recovery exists. Additionally, the Report draws legal conclusions about deliberate indifference in the context of Plaintiffs' individual claims—other than Corinn Hovis—even though those claims have already been dismissed.

The Report goes on to conclude, *inter alia,* that: "A Reasonable Jury Could Conclude that LSU's Actions Were Not Clearly Unreasonable;" and that "LSU upheld the requisite standard of care in terms of its response to incidents upon receiving actual notice, its trainings offered to both staff and students, and in its policies and procedures." *Id*. at pages 53 and 55. In the Report, Mr. Sokolow also opines on whether the "standard of care" for deliberate indifference was met with regard to certain of the specific Plaintiffs' claims, as well as whether the Board's actions were "reasonable" or "not unreasonable." None of the foregoing opinions are proper expert testimony, but are instead impermissible legal conclusions. As such, any evidence or testimony concerning these matters should be struck, and the Board should be precluded from offering or making reference to same at trial.

**LAW AND ARGUMENT**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a **fact in issue**; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added).

In order for a witness to testify as an expert, the witness must be qualified by sufficient "knowledge, skill, experience, training or education." *Id*. Additionally, his testimony must be "relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert,* 509 U.S. at 592). In other words, admitting an expert opinion under "Rule 702 'requires a valid [ ] connection to the pertinent inquiry as a precondition to admissibility.'" *Id.* This, however, is not the end of the inquiry, as part of the Court's "gatekeeper" function is to ensure that expert opinions are "not only relevant but reliable." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). The burden of demonstrating that an expert's findings and conclusions are reliable is on the party seeking their admission—in this case, the Board. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

The expert's conclusions and opinions cannot usurp the function of the Court or the fact finder (in this case the jury) by offering legal opinions or making legal conclusions in violation of Federal Rule of Evidence 704. While Rule 704 provides that an expert "opinion is not

3

objectionable just because it embraces an ultimate issue," the Fifth Circuit has recognized that there are still limits that prohibit an expert from telling "the jury what result to reach" or allowing a "witness to give legal conclusions."

> Fed.R.Evid. 704 abolishes the per se rule against testimony regarding ultimate issues of fact. *United States v. Grote*, 632 F.2d 387, 390 (5th Cir.1980), *cert. denied*, 454 U.S. 819, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981); *United States v. Miller*, 600 F.2d 498, 500 (5th Cir.), cert. denied, 444 U.S. 955, 100 S.Ct. 434, 62 L.Ed.2d 327 (1979). The rule provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The rule was enacted to change the old view that the giving an opinion on an ultimate issue would "usurp the function" or "invade the province" of the jury. As the notes to Rule 704 point out, the traditional view was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information.
>
> **Rule 704, however, does not open the door to all opinions. The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give legal conclusions.** *United States v. Fogg*, 652 F.2d 551, 557 (5th Cir.1981), *cert. denied*, 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982); *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir.1977). See McCormick, Evidence § 12 (1972). The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one. The example given in the Advisory Committee Notes to Rule 704 is helpful. The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well as a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read. Moreover, allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.

*Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239–40 (5th Cir. 1983) (emphasis added).

4

In the present case, the Report suggests that Mr. Sokolow seeks to offer opinions on matters that are no longer relevant to this proceeding, as they bear exclusively on claims that have already dismissed by this Court—specifically, the claims of deliberate indifference alleged by all Plaintiffs other than Corinn Hovis. Such opinion testimony will not aid the fact finder in determining a fact in issue, as those claims will not be presented to the jury for determination. Put simply, there is no connection between these opinions and the pertinent inquiry in this case, and such opinions should therefore be struck and prohibited from being offered at trial.

In addition to these non-relevant opinions, the Report is also replete with legal conclusions and improper attempts to instruct the jury as to what conclusions it should reach. Those portions of the Report should likewise be struck, and Defendants should be prohibited from introducing, using, referring to, or eliciting testimony from Mr. Sokolow on these matters at trial.

I. **Any opinions regarding dismissed claims must be struck.**

First, Mr. Sokolow cannot be permitted to offer opinions on claims of deliberate indifference in connection with any Plaintiff other than Corinn Hovis, because those claims have been dismissed as to all other Plaintiffs. It is well-established that experts cannot opine about the merits of dismissed claims:

> To be admissible under Fed. R. Evid. 702, an expert's testimony must "fit" the facts of the case. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591 (1993). "Fit" is an aspect of relevance, and it means that an expert's testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id*. **To the extent the experts here are opining about the merits of dismissed claims, they fail the Daubert "fit" requirement for the simple reason that those merits have already been determined and are no longer relevant to the proceedings.** *See, e.g., Malletier v. Dooney & Bourke, Inc.*, 525 F.Supp.2d 558, 572 (S.D.N.Y.2007) (adopting the determination of Special Masters Barton and Capra that expert testimony concerning unrecoverable damages did not fit the facts of the case and therefore should be excluded). *See also Leverette v.*

5

> *Louisville Ladder Co.*, 183 F.3d 339 (5th Cir.1999) (expert opinion on product defect did not "fit" because it was inconsistent with and disregarded the applicable state legal standards governing liability for manufacturing defects); *United States v. Kokenis*, 662 F.3d 919, 927 (7th Cir.2011) (expert's theory properly excluded where it was not applicable to any transaction still in dispute in the case); *Lichtenstein v. Triarc Companies, Inc.*, 2004 WL 1087263, at *13 (S.D.N.Y.2004) (In an employment action, an expert who would measure the disparity in compensation between the plaintiff and male employees, to determine whether it could be ascribed to factors other than discrimination, could not be permitted to testify: "because the positions compared are not substantially equivalent as a matter of law, and because this results in dismissal of the pay disparity claim, Mr. Dorf's analysis is no longer relevant to any claim remaining in the case."); *Campbell, Jr. v. Consolidated Rail Corp.*, 2009 WL 36890, at *6 (N.D.N.Y.2009) (ergonomics expert testifying to injuries suffered by the plaintiff at the workplace could not testify that the work required "awkward postures of the knees, as well as lifting and carrying" because the plaintiff's claim regarding injuries to his lower extremities was no longer before the court); *Pakootas v. Teck Cominco Metals, Ltd.*, 2012 WL 1833397, at *1 (E.D.Wash.2012) (expert opinions were "rendered irrelevant as they relate to Teck's divisibility/apportionment defense which the court has dismissed as a matter of law"); *In re Vartec Telecom, Inc.*, 2009 WL 7309773 (Bkrtcy.N.D.Tex.2009) (motion to strike expert testimony regarding a transaction was granted, where the claim on that transaction had been dismissed).

*In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 JSR, 2012 WL 7007795, at *4 (S.D.N.Y. Nov. 29, 2012), *report and recommendation adopted sub nom. In re Refco Sec. Litig.*, No. 07 MDL 1902 JSR, 2013 WL 452400 (S.D.N.Y. Feb. 6, 2013) (emphasis added). *See also McCoy v. Isidore Newman Sch.*, No. CV 19-1810, 2022 WL 4533773, at *6 (E.D. La. Sept. 28, 2022), *on reconsideration in part*, No. CV 19-1810, 2022 WL 17252579 (E.D. La. Nov. 28, 2022) (holding that all expert testimony related to plaintiff's Title IX retaliation claim "is excluded as relevant" because the Court had previously dismissed that claim).

There is no dispute that this Court dismissed claims based upon the Title IX theory of "deliberate indifference," except as to Corinn Hovis. As such, Mr. Sokolow's opinions are not applicable to the other Plaintiffs' claims, and all portions of the Report addressing any claims other

6

than Corinn Hovis' deliberate indifference claim should be struck. Mr. Sokolow should not be permitted to testify as to deliberate indifference in connection with the other Plaintiffs' claims.

## II.    Mr. Sokolow cannot expand or revise his opinions at this late date.

Rule 26 of the Federal Rules of Civil Procedure prohibits Mr. Sokolow from expanding his opinions to offer opinions on Plaintiffs' heightened risk claims at this late date. In his opinion at page 18, Mr. Sokolow recognizes that "[u]nder Title IX, some courts have recognized that institutions act with deliberate indifference in two situations: those where the school failed to respond (post-assault) and those wherein individuals allege the school's actions before an assault, or a previous failure to respond, increased the risk (called a heightened-risk or pre-assault claim) of foreseeable harm. Here, the Plaintiff brings allegations of both types of sexual harassment."[2]

However, the remainder of Mr. Sokolow's Report only addresses whether LSU's actions were "deliberately indifferent" under Title IX.

> Under Federal Rule of Civil Procedure 26(a)(2), expert reports must contain 'a complete statement of all opinions the witness will express and the basis and reasons for them.' The rule also allows a party to 'supplement these disclosures when required under Rule 26(e).' Rule 26(e) requires parties to supplement disclosures 'in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'

*Shell Offshore, Inc. v. ENI Petroleum US LLC*, No. CV 16-15537, 2018 WL 1705527, at *9 (E.D. La. Apr. 9, 2018). The Board and Mr. Sokolow have been aware, since February 17, 2023, that all Plaintiffs' claims based on the deliberate indifference theory of Title IX, other than those asserted by Corinn Hovis, were dismissed with prejudice by this Court. Nevertheless, Mr. Sokolow failed

---

[2] *See* Report at page 18. In fact, at Footnote 42, Mr. Sokolow contends that "heightened risk" claims are not recognized in this Circuit which is directly contrary to the opinion reached by this Court in this case and does not address those claims any further in his Report.

or declined to include any opinions or analysis of Plaintiffs' remaining heightened risk claims before submitting his Report on March 1, 2023. Moreover, neither the Board nor Mr. Sokolow have made any attempt to amend the Report since that time, despite the plain obligations of Rule 26(e). Mr. Sokolow should therefore not be permitted to offer opinions beyond the scope of his March 1, 2023 Report at this late date.

### III. Legal conclusions and statements on how the fact finder should decide are inadmissible.

In the Report, Mr. Sokolow discusses the legal standards required for a finding of deliberate indifference at length, quoting from the Supreme Court's decision in *Davis v. Monroe County Board of Education* for the proposition that, in order for an educational institution to be found to be "deliberately indifferent to acts of student-on-student harassment," the response to the "harassment or lack thereof" must be "clearly unreasonable in light of the known circumstances." *See* Report (Ex. 1) at pages 17-18 (quoting *Davis*, 526 U.S. 629, 648 (1999)).

Not only does the Report impermissibly offer an instruction on the appropriate interpretation of the applicable law—a role and responsibility reserved to the purview of this Court—but further usurps the role of the fact finder by declaring the actions of the Board to have been "reasonable" or not "unreasonable." The direction to the jury on how it should find is not subtle; the Report goes so far as to declare in one heading: "A Reasonable Jury Could Conclude that LSU's Actions Were Not Clearly Unreasonable." Other examples from the Report that invade the role of the fact finder in this case include:

1. As to Plaintiff Andries:

    "LSU's actions were not so clearly unreasonable that courts have found such failures to constitute deliberate indifference. Indeed, Stewart's careful consideration of Andries' request itself could be considered proof that LSU was not indifferent. Indifference would be failing to consider the request. LSU considered it and then proposed an alternative that Stewart believed was more appropriate.

8

> A reasonable jury could see that not as indifference, but as a different of opinion.
>
> ***
>
> "The fact that she [Andries] was dissatisfied with the outcome does not mean that LSU failed to uphold the standard of care. Under Title IX, no one is entitled to a 'particular disciplinary action' and the purpose of Title IX is not to second-guess those decisions made by school administrators."

Report (Ex. 1) at pp. 47 and 49.

    2. As to Plaintiff Mize:

> "Review of all documents and evidence available to me supports my opinion that the defendants exceeded the standard of care…."

Report (Ex. 1) at page 56.

    3. As to Plaintiff Brennan:

> "Review of all documents and evidence available to me supports my opinion that the defendants met the standard of care…."

Report (Ex. 1) at page 56.

    4. As to Plaintiff Johnson:

> "…LSU comported with Title IX industry standards and the standard of care."

Report (Ex. 1) at page 57.

    5. As to Plaintiff Doe:

> The Board "complied with the industry standards and the standard of care in their response."

Report (Ex. 1) at page 57.

As previous Courts in this District evaluating expert reports in Title IX cases have held, expert opinions bearing on legal standards, like those set forth above, are inadmissible. "'Each courtroom comes equipped with a "legal expert," called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.'" *McCoy v. Isidore Newman Sch.*, No. CV 19-

1810, 2022 WL 4533773, at *5–6 (E.D. La. Sept. 28, 2022), *on reconsideration in part*, No. CV 19-1810, 2022 WL 17252579 (E.D. La. Nov. 28, 2022) (quoting *Lamar Advert. Co. v. Zurich Am. Ins. Co.*, 533 F. Supp. 3d 332, 341 (M.D. La. 2021); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997)). "Because judges, not expert witnesses, charge the jury on the law, expert testimony concerning legal standards is generally inadmissible as unhelpful to the jury." *Id.* (citing FED. R. EVID. 702(a)).

The rule is illustrated in *McCoy v. Isidore Newman School,* where Plaintiff sought to introduce testimony of a Title IX compliance expert whose report opined on the legal standards of Title IX and the Defendant high school's compliance with them, and ultimately concluded that the school had retaliated against plaintiff. *Id.* The expert's report included opinions concerning the environment and culture on campus prior to plaintiff's report of sexual assault, but further "contain[ed] categorical statements of the law, and include[d] her understanding of Supreme Court case law interpreting it, as well as legal conclusions" including:

> It is my professional opinion that Newman was aware of a toxic culture against females and that it did not take appropriate measures, consistent with industry standard, to address it prior to the sexual assault of MCM. Newman also failed to comply with industry standards in its response to MCM's assault once on notice. This failed response included deviations from industry standard in providing MCM with notice of the outcome of the investigation and any disciplinary action taken. Finally, Newman was on notice of retaliatory and harassing behavior by Newman students as a result of Newman's investigation into the assault and failed to respond in accordance with industry standard.

*Id.*

The Defendant objected to the expert's testimony on the grounds that her opinions invaded the province of the jury by making factual findings and credibility judgments, and the province of the court by instructing the jury on the applicable law, and further that her opinion would not be helpful to the jury and was irrelevant to the extent she opined on events that were not at issue. *Id.*

10

In other words, the expert in *McCoy,* like Mr. Sokolow here, was merely telling the jury which conclusion to reach. *Id.*

The *McCoy* Court agreed, finding the report "contain[ed] factual findings on the very issues the jury [wa]s tasked with resolving." *McCoy*, No. 2022 WL 4533773 at *6. Accordingly, the Court ordered that the expert's s report be redacted, and further limited the expert's testimony to the extent it attempted to interpret the law or instruct the jury as to the final conclusion it should make. In so holding, the Court explained:

> With respect to Bullard's statements of the law, as previously discussed, it is the province of the court to instruct the jury on the law. See supra; *see also*, *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (citation omitted). It is the jury's role to determine whether that law was transgressed. *Id*. Testimony by Bullard that Title IX or other federal regulations require a certain action and that Newman did not perform it would usurp these roles. To that extent, Bullard's testimony is excluded. However, to the extent Bullard's report and testimony can be redacted and limited to explicating industry compliance standards and practices under Title IX, and what is generally expected within the industry under those standards, it may be admitted.
>
> With respect to the legal conclusions offered by Bullard, while experts may offer their opinions on ultimate issues, they "may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Accordingly, all legal conclusions by Bullard are excluded and must be redacted.

In the instant case, just as in *McCoy*, any statements or opinions offered by Mr. Sokolow that purport to define the law applicable to Ms. Hovis' claims (or those of the other Plaintiffs, to the extent that he is permitted to testify as to those claims); or that state whether the Board's actions comported with the "standard of care," were "reasonable," or were not "unreasonable," or that provide a legal conclusion in any way, should be struck and should not be permitted to be offered at trial.

11

**CONCLUSION**

For the reasons stated herein, the majority of the March 1, 2023 Report of Brett Sokolow should be redacted to remove all reference to legal interpretations and conclusions. Further, Mr. Sokolow's testimony should be limited to opinions concerning Corinn Hovis' deliberate indifference claim, and Mr. Sokolow should be prohibited from testifying or making any reference as to the appropriate interpretation or application of the law and/or applicable standards of care, or from offering any legal conclusions at trial.

                                                      Respectfully Submitted

                                                      */s/ Endya L. Hash*

Karen Truszkowski                                    Catherine E. Lasky (La. Bar 28652)
*Pro Hac Vice*                                            Endya L. Hash (La. Bar 38260)
Temperance Legal Group                         Katie Lasky Law
503 Mall Court #131                             619 Homedale Street
Lansing, Michigan 48912                     New Orleans, Louisiana 70124
P: (844) 534-2560                                P: (504) 584-7336
F: (800) 531-6527                                F: (504) 375-2221
karen@temperancelegalgroup.com     katie@katielaskylaw.com
                                                        endya@katielaskylaw.com

                                                        Elizabeth K. Adnour
                                                        *Pro Hac Vice*
                                                        Abdnour Weiker, LLP
                                                        500 East Michigan Avenue, Suite 130
                                                        Lansing, Michigan 48912
                                                        P: (517) 994-1776
                                                        F: (614) 417-5081
                                                        liz@education-rights.com

                                                        *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served on all parties via counsel of record by the Court's CM/ECF system this 18th day of September 2023.

                                              */s/ Endya L. Hash*
                                              Endya L. Hash