UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, ET AL.** | **CIVIL ACTION NO. 3:21-CV-00242** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY, ET AL.** | **MAGISTRATE JUDGE JOHNSON** |

<u>**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE NO. 7:
TO EXCLUDE CERTAIN TESTIMONY FROM LIN CHI WANG**</u>

Defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"), submits this memorandum in support of its Motion in Limine to exclude Certain Testimony from Lin Chi Wang.

**I.     BACKGROUND.**

Plaintiffs filed the operative Second Amended Complaint and Jury Demand on January 17, 2022, asserting numerous claims against the Board and individual defendants. (R. Doc. 182) The defendants filed motions to dismiss, and Plaintiffs' only remaining claim is for heightened risk, except for Plaintiff Hovis who has a limited deliberate indifference claim arising out of John Loe's alleged violation of a no-contact order. (R. Doc. 340)[1]

Prior to this Court's ruling on the Board and other defendants' motions to dismiss, Plaintiffs identified Lin Chi Wang ("Wang") as their Title IX expert. Plaintiffs asked Wang to provide an opinion on the following question:

> In your expert opinion, did LSU meet industry standards and practice in connection with Title IX compliance in response to all reports made by Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson,

---

[1] On June 30, 2023, the Board also filed Motions for Summary Judgment, seeking summary dismissal of each Plaintiff's remaining claims. (R. Docs. 353-362) While the Board submits that the summary judgment pleadings reveal that all of Plaintiffs' remaining claims should be dismissed, with prejudice, the Court has not yet ruled on the summary judgment motions. As a result, the Board files this motion out of an abundance of caution in the event the claim(s) of one or more Plaintiffs remain following the Court's summary judgment ruling.

   Elisabeth Andries, Jane Doe, Ashlynn Robertson, Corinn Hovis, and Sarah Beth Kitch?

Because of this Court's ruling on the defendants' motions to dismiss, the Report of Lin Chi Wang, Title IX Expert and Attorney (the "Report") contains numerous opinions which are no longer relevant to the case and should be excluded on that basis alone.[2] However, portions of the Report should be excluded for other reasons. As discussed more fully below, Wang does not even attempt to causally connect some of her opinions to the Plaintiffs, and she makes impermissible factual and legal statements/conclusions. For these reasons, Wang's testimony should be excluded, in part.

## II.  LEGAL STANDARD.

Wang may only offer expert testimony if her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; her "testimony is based on sufficient facts or data"; her "testimony is the product of reliable principles and methods"; and she "has reliably applied the principles and methods to the facts of the case." (Fed. R. Evid. 702) Courts are charged to act as a "gatekeeper" of expert testimony and must ensure that the testimony is both reliable and relevant, as set forth in *Daubert v. Merrell Dow Pharm., Inc*., 506 U.S. 579, 590 (1993).[3]

## III.  ARGUMENT.

### A. Wang is not Qualified to Give Testimony in this Heightened Risk Case.

As an initial matter, Wang is not qualified to offer expert testimony in this case. In her Report, Wang identifies only two matters in which she served as an expert witness. Only one of those matters involved a university, and that matter did not contain a heightened risk claim. *See*

---

[2] The report of Lin Chi Wang is attached to the Board's motion as Exhibit A.
[3] *Daubert v. Merrell Dow Pharm., Inc*., 506 U.S. 579, 590 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

*Jane Doe v. Board of Regents of the University of Nebraska, et al.* No. 4:21-cv-3049, U.S. Dist. Court for the District of Nebraska. Because Wang lacks the training or experience to serve as an expert witness, particularly in the Title IX heightened risk context, she should not be given the opportunity to advise the jury on such matters, pursuant to Federal Rule of Evidence 702(a).

### B. Wang's General Title IX "Opinions" are not Causally Connected to the Plaintiffs.

Section VII of Wang's report titled "Overall Analysis and Basis of Opinion" is a lengthy discussion of "major" "systemic and structural issues." Wang describes these opinions as "systemic and structural issues at LSU relating to its Title IX operations and practices that impacted its campus community as a whole, and to each of the Plaintiffs." (Report p. 10)

However, Wang did not even attempt to connect these "major issues" to the Plaintiffs' situations. For example, Wang generally discusses the staffing of the Title IX office, the Title IX coordinator's level of supervisory authority over her subordinates and job duties, general training, and document protocols. (Report pp. 10-15) In fact, Wang does not mention any Plaintiff in this discussion at all—she merely opines on perceived deficiencies in LSU's Title IX operations. Because Wang has not attempted to causally connect these purported deficiencies to Plaintiffs' situations, they only risk confusing and misleading the jury, particularly where "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference," and neither do negligent delays, botched investigations of complaints, or responses that could have been improved.[4] Wang's generalized statements that lack a connection to Plaintiffs' situations should be excluded.

---

[4] *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (internal citations omitted).

### C.  Wang's Report does not Relate to Heightened Risk.

Wang issued her report on January 6, 2023, before this Court issued a ruling on the Board's Motion to Dismiss.  Wang's opinions with respect to Plaintiffs relate entirely to their deliberate indifference claims.  Consistently, Wang admitted that her opinion was to determine if LSU met industry standards and practice "**in response to all reports**" made by the Plaintiffs.  Thus, by her own words, Wang evaluated **post-reporting** conduct, which does not relate to a heightened risk claim.  (Report p. 2)  The expert discovery period has closed, and Wang cannot issue an amended report to now address Plaintiffs' heightened risk claims.  Therefore, to the extent Wang attempts to offer expert opinions on the strength of Plaintiffs' heightened risk claims at trial, she is precluded from doing so.[5]

### D. Wang Cannot Offer Argument or Testimony Related to Plaintiffs' Dismissed Deliberate Indifference Claim.

Except for Plaintiff Hovis, all Plaintiffs' deliberate indifference claims have been dismissed.  Thus, Wang's numerous "opinions" relating to LSU's responses to various reports have sexual misconduct do not aid the Court or jury in making a determination of liability.  Instead, because these opinions relate, in large measure, to dismissed claims, such opinions are irrelevant, risk confusing the jury, and should be excluded.  *See, e.g, McCoy v. Isidore Newman Sch.*, No. CV 19-1810, 2022 WL 4533773, at *6 (E.D. La. Sept.. 28, 2022), *on reconsideration in part*, No. CV 19-1810, 2022 WL 172552579 (E.D. La. Nov. 28, 2022) (cited by Plaintiffs in R. Doc. 429-1).

### E.  Wang's Factual and Legal Conclusions Should be Excluded.

---

[5] The Board is not taking the position that Wang's report does not discuss facts or factors that may be relevant to Plaintiffs' heightened risk claim, as did the Board's Title IX expert, Brett Sokolow.  Instead, the Board is drawing the Court's attention to the lack of expert **opinions** related in any way to Plaintiffs' heightened risk claim, and Wang's inability to articulate such opinions for the first time at trial.

"Expert witnesses may not testify to legal conclusions, which are the province of the court." *Pogozelska v. VanderCook Coll. Of Music*, 2023 WL 3819025, at *7 (N.D. Ill. June 5, 2023). "At the same time, an expert generally cannot testify as to legal conclusions that will determine the outcome of the case, such as what Title IX requires or whether a party 'has complied with those requirements.'" *Id.* However, Wang's report contains a number of legal conclusions, including that "LSU was generally not able to meet its Title IX obligations to take prompt and effective action to end Title IX-related harassment, prevent it from recurring, and remedy the effects of the harassment on the victim, and for the Title IX Coordinator to identify and address patterns or systemic problems." (Report, pp. 10, 26) With respect to each Plaintiff, Wang makes some variation of the following conclusion: "LSU failed to meet industry standards and practice in connection with Title IX compliance . . ." (*See, e.g.*, Report p. 17, 18, 30, 36, 43-44, 47, 49) Wang's report also contains numerous statements that "are problematic, both because they provide an editorialized gloss on the operative standard without citing binding case law, and because they infringe on the role of the court to instruct the jury on what the law is." *Id.* at *8. For example, Wang stated:

> When determining the appropriate number of employees to staff a Title IX office, the most important consideration, in addition to considering the population and size of the campus, is whether the school is able to take prompt and effective action to the end the Title IX-related harassment, prevent it from recurring, and remedy the effects to the harassment on the victim and for the Title IX Coordinator to oversee "all Title IX complaints and [identify] and [address] any patterns or systemic problems that arise during the review of such complaints" with the current staff and resources. The conclusion for LSU was clear given the number of internal assessments conducted and concerns raised within LSU, including from its own Title IX Coordinator in 2016, and from the numerous consequential mistakes made with each of Plaintiffs, detailed below: the Title IX office was ineffective in meeting its obligation to promptly and effectively end Title IX harassment, prevent it from recurring, and remedy the effects on the victim.

(Report pp. 13-14)

Wang cannot testify to the jury in the form of legal conclusions, which she unquestionably does in nearly all of her report. (*See, e.g.*, *Badeaux v. Eymard Bros. Towing Co.*, No. 19-13427, 2021 WL 4860300 (E.D. La. Oct. 19, 2021), citing *Bodzin v. City of Dallas*, 768 F.2d 722, 725 (5th Cir. 1985) (citing *United States v. Burton*, 737 F.2d 439, 443-44 (5th Cir. 1984)) ("[T]o the extent that [the expert] purports to make a legal conclusion regarding a breach of duty by defendants, he may not do so."); *King v. RC Offshore, L.L.C.*, No. 14-2404, 2016 WL 558369 (E.D.La. Feb. 12, 2016) (noting that the expert "cannot, in essence, tell the jury (1) the cause (and whose fault) of the incident, (2) the Defendant was negligent, and (3) the Plaintiff's own alleged negligence did not contribute. These considerations are squarely within the jury's province"). For example, the following legal conclusions should be excluded.

### i. Wang's References to "Best Practices" and "Material Mistakes" Should be Excluded.

In her report, Wang offers numerous opinions about whether LSU's actions complied with "best practices:"

- In connection with her opinion that "LSU could not take prompt and effective action to end the Title IX-related harassment . . . when reports were not being documented properly," Wang stated: "The training I received, and in trainings that I present, the **best practice** is to document date, time and location, how information was received, and all information received, including identities of all individuals involved, from the reporter, to the Parties' witnesses, and any other individuals who may have had contact with the Parties." (Report p. 15) (emphasis added)

- "Having a record to prevent future occurrences of sexual harassment by John Moe was Plaintiff Kitch's very goal in making a report to LSU Title IX office in 2019, and Plaintiff Kitch's report should have been documented, at the very least, according to Title IX guidance and **best practices**."  (Report p. 18) (emphasis added)

- "It is **best practice** for the Title IX Coordinator or appropriate designee to reach out to a Complainant as soon as the Complainant is identified to offer information about their rights and resources.  (Report p. 35) (emphasis added)

- Regarding Andries, Wang said "This contradicts **best practice** to interview relevant witnesses identified by a party, . . . . and "the investigator failed to interview that witness, contrary to LSU's own policy and best **practice**."  (Report p. 41) (emphasis added)

Relatedly, Wang also refers to some of LSU's actions as "material mistakes."  Such characterizations improperly create degrees of alleged Title IX violations, a distinction that does not exist under the law.[6]  For example, Wang itemized a listing of "material mistakes" related to Plaintiffs' Lewis and Richardson and noted that despite appropriately initiating a Title IX investigation related to Lewis, "material mistakes continued to occur."  (Report pp. 25, 28-29)  Wang also opined that not documenting John Doe's name in Mize's report was a "material mistake" and the alleged lack of communication received by one of Andries' professors was yet "another material mistake." (Report pp. 34, 41)

---

[6] Mistakes are insufficient to create Title IX liability. *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference.") (internal citations and quotations omitted).

The Board is not bound by what Wang believes are "best practices" or what mistakes are "material."[7] Wang does not articulate a legal standard related to heightened risk. Instead, Wang relies on her subjective beliefs and outdated Department of Education guidance. Wang's non-legally binding standards have no relevance to Plaintiff's Title IX claim. Because such irrelevant testimony disregards the legal standards for proving a Title IX heightened risk claim, Wang's testimony should be excluded under Rule 702 as lacking probative value and as unhelpful to the trier of fact.

Wang's suggestions that best practices are the legal standard or that "material" mistakes constitute a Title IX violation are not supported by the law and are not helpful to this Court.

### ii. Wang's Factual Conclusions are Based on Incomplete Review of the Record and Should be Excluded.

Many of Wang's factual conclusions are based on others' accounts of "facts," and not her own. Wang reviewed the Complaint, the Husch Blackwell Report, a news article from USA Today, and deposition testimony from five witnesses.[8] Wang did not review Plaintiffs' deposition transcripts, which contradict their own Complaint in many instances. To the extent Wang's conclusions are premised on information that is unsupported by Plaintiffs' own deposition transcripts, Wang's opinions require credibility determinations about whether her cited accounts should prevail over Plaintiffs' deposition transcripts. Wang cannot make credibility determinations about whether Plaintiffs' deposition testimony should be credited over allegations made in Plaintiffs' complaint (alleged without the benefit of discovery). Wang should not be allowed to introduce opinions that ignore the Plaintiffs' deposition testimony and usurp

---

[7] *See Sanches v. Carrollton-Farms Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011*)* (Title IX only requires a response which is "not clearly unreasonable").

[8] Wang improperly identified the Complaint as being of the matter *Jane Doe v. Board of Regents of the University of Nebraska, et al*, which is presumably a typographical error. Moreover, although Plaintiff purportedly reviewed transcripts from five other witnesses, it is clear from Wang's report that she relied most heavily on the Complaint, the Husch Blackwell report, and the USA Today article, which she admitted she accepted as true.

the jury's function as finder of fact. Wang's conclusions should be excluded as unsupported and irrelevant.

## IV.    CONCLUSION

For these reasons, Wang is not qualified to offer testimony. If this Court disagrees, Wang's testimony should be substantially limited to exclude her from offering opinions which are not connected to Plaintiffs' claims, are unrelated to heightened risk, that relate to Plaintiffs' dismissed deliberate indifference (or other) claims, and that make improper factual and/or legal conclusions.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:   /s/ *Susan W. Furr*
Shelton Dennis Blunt Bar Roll No. 21230
Susan W. Furr Bar Roll No. 19582
Karleen J. Green Bar Roll No. 25119
Gregory T. Stevens Bar Roll No. 29436
Jessica Coco Huffman LA Bar No.: 30445
Michael B. Victorian Bar Roll No.: 36065
Molly McDiarmid Bar Roll No. 36426
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: jessica.huffman@phelps.com
Email: molly.mcdiarmid@phelps.com
Email: greg.stevens@phelps.com
Email: michael.victorian@phelps.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on September 18, 2023, with the Court's CM/ECF system which will send electronic notice to all counsel of record.

/s/     *Susan W. Furr*