UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, ET AL.** | **CIVIL ACTION NO. 3:21-CV-00242** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY, ET AL.** | **MAGISTRATE JUDGE JOHNSON** |

### MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS DARREN CAHILL

Defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"), submits this memorandum in support of its Motion to Exclude Testimony of Plaintiffs' Expert Witness Darren Cahill. Because the proposed evidence is inadmissible under Federal Rule of Evidence 702, the testimony should be excluded.

**I.    BACKGROUND**

The Court is well-acquainted with the factual background of this matter, so the Board focuses only on a brief recitation of the relevant allegations. Plaintiff Jade Lewis has asserted a claim against the Board for Title IX heightened risk. Lewis played for the LSU tennis team for one semester – Spring 2017 – before leaving to enter the professional tennis circuit. She ultimately returned to LSU in or around April 2018, but she was no longer eligible to play tennis due to her receipt of compensation from her professional career. She claims the Board's Title IX violations caused diminution of her tennis abilities, rendering her unable to pursue a professional tennis career. Lewis claims she is owed damages for lost earning potential from the hypothetical professional career.

Plaintiffs intend to introduce Darren Cahill, who they describe as an "internationally recognized tennis player, coach, and commentator" as an expert witness in this matter. Cahill has

never served as an expert witness before. (Cahill 16)[1] On January 9, 2023, pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), Plaintiffs produced a purported expert disclosure for Mr. Cahill in the form of a statement from Plaintiffs' counsel. (Cahill Discl.) The disclosure represents that Mr. Cahill is "deeply familiar" with Plaintiff Lewis and her family, as Mr. Cahill formerly competed against Lewis' father in 1990 and "saw [Lewis] play on many occasions." (Cahill Discl., p. 1) The disclosure indicates that Mr. Cahill will offer testimony regarding Lewis' tennis career, specifically: (1) Lewis' athletic ability; (2) Lewis' potential for having had a professional tennis career; (3) the opinion that Lewis' tenure at LSU severely diminished her skill set and career potential; (4) his impressions about how Lewis' career was negatively affected by "the failures of the LSU Title IX response system"; and (5) Lewis' diminished earning potential (which he will attest will never be the same as it had been when she was in high school before LSU). Mr. Cahill will offer testimony related to "similarly situated" currently ranked tennis players' earnings in an attempt to establish what Lewis' earning potential could have been. (Cahill Discl., p. 2-3) In her deposition, Josephine Doherty, Plaintiffs' own expert on vocational rehabilitation, testified that the theory of achieving a professional sports career is too speculative to base a lost wage or lost earning capacity claim on. (*See* Doherty 300-302)

For the reasons set forth below, the Board moves to exclude the prospective expert testimony and opinions of Mr. Cahill based on his failure to comply with Federal Rule of Civil Procedure 26. The Board further moves to exclude the expert testimony based on Mr. Cahill's lack of qualifications as an expert, and because the opinions offered are unreliable and irrelevant.

---

[1] Relevant portions of the deposition transcript of Mr. Cahill are attached to the Board's motion as Exhibit A. Citations to the deposition will be by the last name of the deponent and the page or exhibit number. The purported expert disclosure of Mr. Cahill and deposition testimony of Josephine Doherty are also attached to the Board's motion as Exhibit B and C, respectively.

## II.   LAW AND ARGUMENT

Plaintiffs, as the proponents of expert evidence, have the burden of establishing admissibility of Mr. Cahill's opinions.[2] Plaintiffs must show Mr. Cahill's testimony complies with Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b) the testimony is based on sufficient facts or data;
>
> c) the testimony is the product of reliable principles and methods; and
>
> d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 thus implicates three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.[3] Courts are charged to act as a "gatekeeper" of expert testimony and must ensure that the testimony is both reliable and relevant, as set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 506 U.S. 579, 590 (1993).[4]

"A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."[5] "In order to be qualified as

---

[2] *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998).

[3] *Urda v. Valmont Industries, Inc.*, 561 F.Supp.3d 632, 636–37 (M.D. La. 2021) (citing *Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010)).

[4] *Daubert v. Merrell Dow Pharm., Inc.*, 506 U.S. 579, 590 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

[5] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

an expert, the proponent must demonstrate that the expert possesses a higher degree of knowledge, skill, experience, training, or education than an ordinary person."[6]

To satisfy the reliability requirement, Plaintiffs must demonstrate that "the testimony is the product of reliable principles and methods." Fed. R. Evid. 702. "An expert's testimony must be reliable at each and every step."[7] Moreover, "[t]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."[8] "Nothing in either *Daubert* or the Federal Rules of Evidence requires a court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[9]

The *Daubert* Court provided certain non-exclusive factors to consider when assessing whether a methodology is scientifically reliable: (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community.[10]

## A.  CAHILL FAILED TO COMPLY WITH FEDERAL RULE OF CIVIL PROCEDURE 26.

### 1. Cahill Did Not Furnish an Expert Report.

Plaintiffs produced an "expert disclosure" pursuant to FRCP 26(a)(2)(C) with respect to Mr. Cahill in lieu of a (required) expert report,. It is not clear why Plaintiffs believe Mr. Cahill is

---

[6] *Greenberg v. Bd. of Supervisors of Louisiana Univ. & Agric. & Mech. Coll.*, No. CV 19-*137*, 2019 WL 6330124, at *5 (E.D. La. Nov. 26, 2019).
[7] *Carlson v. Bioremedi Therapeutic Sys.*, 822 F.3d 194 (5th Cir. 2016) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007)).
[8] *Knight*, 482 F.3d at 355.
[9] *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).
[10] *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, 585 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 593-94).

not an expert requiring a formal expert report, but such position is mistaken. Because Mr. Cahill was "specially employed" to provide expert testimony in this case, he was obligated to provide a written expert report in compliance with Federal Rule of Civil Procedure 26(a)(2)(B). His failure to do so warrants exclusion of his testimony.

Under Federal Rule of Civil Procedure 26(a)(2)(B), an expert witness who is retained or specially employed to provide expert testimony in a case must provide an expert report containing specific information. "[A] witness is "specially employed" if [he] has no personal involvement in the facts giving rise to a case and is instead engaged specifically by a party to provide opinions and testimony bearing on the particulars of a case, without monetary payment for those services."[11] Mr. Cahill was contacted by Lewis' father to be an expert witness and to provide opinions and testimony bearing on the particulars of this case. (Cahill 19) Mr. Cahill has no personal involvement in the facts. He was a mere spectator of Lewis' tennis matches in early 2017 (before the events at issue in this litigation occurred) and, as he admits, never saw Lewis play again and never spoke with her while she was at LSU or about this case. (Cahill 22, 27)

The "quintessential example" of an expert who is not retained or specially employed "is the treating physician of a personal injury plaintiff, whose testimony, while necessarily based on his expert opinion as to diagnosis and treatment, is not specially formulated for trial purposes, and thus is not subject to the Rule 26 reporting requirement."[12] "[A] non-retained expert's testimony 'arises not from his enlistment as an expert, but, rather, from his ground-level involvement in the

---

[11] *Tolan v. Cotton*, No. CIV.A. H-09-1324, 2015 WL 5332171, at *7 (S.D. Tex. Sept. 14, 2015). Although courts have allowed "hybrid witnesses," or "non-retained" experts to avoid the requirements of Rule 26(a)(2)(B), Cahill does not qualify as a "non-retained expert" because he was not personally involved in the events giving rise to the litigation. *MGMTL, LLC v. Strategic Technology*, 2022 WL 474161, at *4 (E.D.La. 2022) (quoting Ferrara, Civ. A. No. 1:19cv956-HSO-JCG, 2021 WL 4819461 at *2).

[12] *See Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating & Air-Conditioning, Inc.*, No. CIV.A. 07-8446, 2009 WL 981724, *4 (E.D. La. Apr. 9, 2009).

events giving rise to the litigation.'"[13] Unlike a treating physician, Mr. Cahill was engaged to provide opinions bearing on the particulars of this case. Indeed, in describing his conversation with Mr. Lewis about being an expert witness, Mr. Cahill cited his knowledge of athletic attributes of professionals, not any underlying personal involvement. (Cahill 19) Because his opinions were specifically formulated for trial purposes, Mr. Cahill is a "specially employed" expert and was obligated to issue a written report.

Pursuant to Federal Rule of Civil Procedure 37, a party who fails to disclose information required by Rule 26(a) is precluded from using the undisclosed witness or information at a trial, at a hearing, or on a motion unless that failure was substantially justified or is harmless. Here, Plaintiffs have no justification for failing to provide a report and instead, as set forth below, put forth a purported disclosure that materially differed from or misrepresented Mr. Cahill's actual opinions and expected testimony. The failure to provide a proper report was neither justified nor harmless, and Mr. Cahill's testimony should be excluded.

   **2.    Cahill's Disclosure Is Deficient.**

Alternatively, even if Mr. Cahill was not required to furnish a written expert report under Rule 26(A)(2)(B), his disclosure still does not comply with Rule 26(A)(2)(C). For experts that are not retained or specially employed, a disclosure must be provided and must state the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions to which the witness is expected to testify. Fed.R.Civ.P. 26(A)(2)(C).

In multiple instances, Plaintiffs failed to provide an accurate statement of all of Cahill's opinions and bases therefor. Cahill testified under oath that he had not, in fact, offered the opinions reflected in the supposed disclosure. For example, Plaintiffs' disclosure states Cahill would opine

---

[13] *MGMTL*, 2022 WL 474161, at *4.

that Lewis was a "sure bet to be a success on tour," in reference to her potential to play professional tennis. Cahill testified he did not, and would not, opine that Lewis was a "sure bet to be a success on tour." (Cahill 35, 59) Elsewhere, Plaintiffs' disclosure states Cahill would opine that Lewis had the potential to be a top 20 singles player. Cahill testified he "would never" opine that Lewis had the potential to be a top 20 player. (Cahill 39) These inconsistencies show that in essence, Plaintiffs simply drafted a disclosure containing opinions they hoped Cahill would eventually testify to, rather than fulfilling their obligation under the Rules.

Additionally, taking each category of Mr. Cahill's disclosure individually (Cahill Discl., pp. 2-3), each is also deficient with respect to the requirements of Rule 26:

> Athletic ability – The disclosure provides no summary of the facts or data upon which the opinions in this section are based.
>
> Potential progression to professional tennis – The disclosure provides no summary of the facts or data upon which the opinions in this section are based.
>
> Skill level compared to other similarly situated tennis players – The disclosure provides no summary of the substantive facts or data upon which these opinions are based.
>
> Change in earning potential – The disclosure provides no summary of the substantive facts or data upon which these opinions are based, particularly with respect to Lewis' "substantially higher" earning potential before attending LSU and the "decreased" earning potential afterward.
>
> How [Lewis'] time at LSU negatively impacted her professional tennis career – The disclosure provides no summary of the substantive facts or data, it only states that Cahill will testify about his "observations" and "impressions." It also fails to disclose his opinions based on those supposed "observations" and "impressions."

These disclosures fail to identify any substance and fall far short of the requirements of the rule.[14]

---

[14] *See Tolan*, 2015 WL 5332171, at *8 (former professional baseball players' disclosures regarding plaintiff's capability to have a professional baseball career were deficient where they failed to identify the actual substance of

- 7 -

- 8 -

Moreover, to the extent Mr. Cahill might be considered a "non-retained" expert, his opinions extend past matters in which he may have had personal involvement. A witness can be both a non-retained expert with regard to certain portions of the testimony and a retained expert as to other portions, but "[w]hile non-retained experts may be asked questions that implicate their expertise, they cannot be asked to opine about broader issues beyond their own personal involvement unless they also submit written expert reports."[15] The opinions enumerated in Mr. Cahill's disclosure reach far beyond him observing Lewis play on limited occasions, specifically with respect to all topics besides observed athletic ability. Mr. Cahill did not provide a report on these broader opinions with which he had no personal involvement, so such testimony is precluded under Rule 37.

### B.  CAHILL CANNOT OFFER OPINIONS ABOUT CAUSATION.

Plaintiff indicates Mr. Cahill will testify that Lewis' "tenure at LSU diminished her capabilities" and how Lewis' "time at LSU negatively affected her." Plaintiffs have not provided any information regarding Mr. Cahill's alleged qualifications in this subject area. Plaintiffs have also not provided any information regarding the basis of the opinions to be offered by Mr. Cahill.

First, Mr. Cahill's experience as a player, coach, manager, and commentator do not, standing alone, qualify him to opine on LSU's role in Lewis' diminished professional success. Mr. Cahill's tennis experience and background do not qualify him to opine on the causal relationship between alleged Title IX failures and a purported change in Lewis' tennis performance. Cahill is not a mental health professional who could opine that LSU's purported failures caused emotional

---

the opinions and testimony beyond stating that "[Plaintiff] had the talent and skill to have a long-term career as a professional baseball player.").

[15] *MGMTL*, 2022 WL 474161, at *4.

issues that diminished her abilities. He is also not a medical professional who could opine that LSU's purported failures caused physical injuries that diminished her abilities.

In fact, in support of his opinion that Lewis' athletic capabilities diminished because of her alleged experiences at LSU, Cahill could only state (with no support): "I don't know how somebody could go through what she went through and still be able to perform to the best of her capabilities." (Cahill 38-39) This conclusion is not supported by a backdrop of any relevant experience, training, or knowledge, nor is it supported by any qualified analysis of the relevant facts. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."[16] Mr. Cahill has no more specialized understanding than the average person as to causation in this case. Nothing in his professional experience suggests that he possesses specialized knowledge, training, or experience to opine on how LSU's alleged actions affected Lewis' hypothetical professional athletic career.[17] Mr. Cahill lacks the kind of specialized knowledge required to qualify him as an expert as to the cause of Lewis' alleged diminished tennis career.

Additionally, as set forth above, even if Cahill was qualified to render an expert opinion as to causation for Lewis' alleged lost professional career and the valuation of same, this opinion would clearly "stray into opinions that [he] may have developed in preparation for the litigation of this matter," and would be subject to the expert report requirement of Fed. R. Civ. P. 26(a)(2)(B).[18]

---

[16] *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

[17] *Ronaldo Designer Jewelry, Inc. v. Cox*, 2020 WL 1124599, at *8 (N.D.Miss., 2020) (experienced jewelry retailer's retail experience did not qualify him to testify about how public perceived jewelry item in a trade infringement case).

[18] *MGMTL*, 2022 WL 474161, at *8.

"[T]estimony as to causation . . . has been considered the province of expert testimony subject to the requirements of section (a)(2)(B)."[19] Cahill did not prepare an expert report on this topic, and any such testimony should be excluded.

Mr. Cahill also has not, and cannot, explain how his professional experience constitutes a sufficiently reliable basis or methodology to opine on the causation of Lewis' tennis career deficiencies. His testimony consists of nothing more than *ipse dixit* conclusions.[20] He opines "if you put good people around you, the chances of you being successful are much, much better" and accordingly, Lewis' "trauma" damages her chances of being a professional tennis player. (Cahill 52) There are utterly no facts, scientific proof, or testing/analysis to support Cahill's bald conclusion, as it is sheer speculation. Mr. Cahill does not explain how he knows Lewis' "tenure at LSU diminished her capabilities." (Cahill Discl. P. 2) He does not explain how he knows Lewis' tennis skills and abilities declined once she started at LSU, nor does he even explain the support for his allegation that they did indeed decline.

Mr. Cahill further admits his opinion is based only on what Lewis' father told him and news reports. (Cahill 47) It is clear that he "uncritically accepted [plaintiff's father's] account and failed to interpose much in the way of independent professional judgment in arriving at his conclusion," indicating that he did not have a sufficient factual basis to arrive at any opinion, even if he were qualified to render one.[21] Where an expert can only testify as to the "possibility of causation," such testimony is based merely on subjective belief and unsupported speculation and

---

[19] *Moore v. DeJoy*, No. CV 18-12270, 2022 WL 19263947, at *4 (E.D. La. Feb. 23, 2022) (citing Rea v. Wis. Coach Lines, Inc., No. 12-1252, 2014 WL 4981803, at * 2 (E.D. La. Oct. 3, 2014).

[20] *De Boulle Diamond & Jewelry, Inc. v Boulle, Ltd*., No. 3:12-cv-1462, 2015 WL 12698060, at *2 (N.D. Tex. Jan. 21, 2015) (excluding opinion premised on experience where the proponent presented no evidence that the "testimony is reliable or comprised of more than his own *ipse dixi*t conclusions").

[21] *Lasseigne v. Taco Bell Corp*., 202 F.Supp.2d 512, 522 (E.D. La. 2002).

is inadmissible.[22] There is absolutely no basis or foundation for Mr. Cahill's conclusion that Lewis' tennis abilities and career were in any way connected to something that LSU did or did not do.[23]

### C. CAHILL CANNOT OFFER OPINION ABOUT EARNING POTENTIAL.

Mr. Cahill should also be prohibited from testifying with respect to Lewis' earning potential had she accomplished a professional tennis career. Plaintiffs have not established that he has any experience with evaluating or analyzing future income potential, negotiating contracts, or making economic projections regarding earnings. Indeed, he admits he has no training or experience in predicting earning potential. (Cahill 44) "Although mathematical exactness is not required, expert testimony of post-injury earning capacity must be based upon a proper factual foundation."[24] Mr. Cahill's experience did not allow him to do more than glance, with no specialized analysis, at a publicly available document listing "prize money" amounts. He can provide no greater insight than any ordinary person with access to the same document. There is no evidence that Cahill's experience in coaching, managerial, and broadcasting roles qualifies him to reliably testify as to what Lewis' expected earning range likely would have been.[25] Again, even Plaintiffs' own vocational rehabilitation expert has testified that any such opinion would be too speculative to pass muster. (*See* Doherty 300-302)

Even if Mr. Cahill was qualified to opine on these issues, it is clear his opinions should be excluded because he only offers conclusory speculative opinions that are not based on any facts or data, but rather, on his own personal experience.

---

[22] *Id*. at 523.
[23] *See Southern Snow Mfg. Co. v. Sno Wizard Holdings, Inc.*, 2011 WL 6296654, *2-4 (E.D. La. 2011) (excluding expert testimony as inadmissible where causation testimony was outside of expert's abilities and sheerly speculative).
[24] *Fruge v. Augusta Barge Co.*, 2009 WL 742310, at *1 (W.D.La., 2009) (internal citations and quotations omitted)
[25] *See Nkansah v. Martinez*, No. 3:15-CV-00646, 2017 WL 2812733, *6 (M.D. La. June 28, 2017) (finding witness to be unqualified to offer testimony on future lost earnings or loss of earning capacity where witness had no expertise in projecting future lost income and offered no methodology in support of her projections)

> [T]he law recognizes "an expert might draw a conclusion from a set of observations based on extensive and specialized experience." This does not mean, however, that an expert may bypass a reliability inquiry by simply referring to experience. To the contrary, "[i]f an opinion is based solely or primarily on experience, it 'must be grounded in an accepted body of learning or experience in the expert's field.'" In that regard, "[t]he witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts."[26]

In his disclosure, Plaintiffs stated simply that Mr. Cahill will "discuss the earnings of similarly situated players that are at Jade's level, had Jade gone pro as planned." (Cahill Discl., p. 3) His opinions on Lewis' earning potential are based solely on speculation and subjective belief and are thus unreliable and inadmissible.[27]

Mr. Cahill's "earnings" conclusion is based largely on his speculative opinion that Lewis would have been a top 50 player and his reliance on a "WTA Tour" document that purports to list the prize money earned by each current top 50 player. (Cahill 41-42) In her deposition, Plaintiffs' own expert, Josephine Doherty, a purported expert on earnings calculations, rejected this method as unreliable:

> Q: [Y]ou don't intend to offer any opinion as to whether or not Ms. Lewis actually had the potential to have a viable professional tennis career; right?
>
> A: That would be impossible to -- I would be uncomfortable making such an assertion. It was possible but I can't say it definitely would've happened, which is why I'm not including it in my analysis based upon the WTA earnings. And it would be difficult to -- even if one were to say yes, I believe there was a ninety-nine percent chance she could've had a professional tennis career. Who's to say how long it would be? There's a huge gap in terms of the number one tennis player and the number five tennis player and then number ten tennis player, endorsements. There's just so much that would be impossible to enumerate that I was uncomfortable going there.

---

[26] *Ronaldo Designer Jewelry, Inc. v. Cox*, 2020 WL 1124599, at *9 (N.D.Miss., 2020) (internal citations omitted).
[27] *See Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, 2016 WL 9414205, at *11 (E.D.La., 2016) (Expert testimony based merely on subjective belief or unsupported speculation may not be admitted.).

> Q: Because all of those things render it pretty speculative; right?
>
> A: And they vary drastically from person to person.
>
> Q: So, that's a yes?
>
> A: Yes.

(Doherty 301-302) Mr. Cahill agreed and admitted that any conclusion regarding Lewis' earning potential is speculative because it does not consider any external factors.[28] (Cahill 44, 46)

Mr. Cahill did not explain, outside of his personal observation, the basis for his chosen comparators for Lewis and why those comparators reliably reflect Lewis' estimated earning potential. (Cahill 43) Additionally, he could not say with any specificity where Lewis would fall on any exemplar rankings chart, besides stating generally and in a conclusory fashion that she would be "in the top 50." (Cahill 45-46) This opinion is wholly subjective, lacks any methodology, is unreliable, and does not assist the trier of fact in determining the any damages calculation.

Mr. Cahill also opined that Lewis' "marketability," and "endorsements" would increase her earning potential, but Plaintiffs have not established that he has any expertise in this subject, have not disclosed a methodology underlying that opinion, and any testimony he would offer is based solely on personal experience. (Cahill 46) In short, he offers nothing by which the Board or the Court could evaluate the reliability of his testimony under *Daubert* or Rule 702. As the Supreme Court has put it, expert testimony "that is connected to existing data only by the *ipse dixit* of the expert" is inadmissible, because in such cases "there is simply too great an analytical gap between the data and the opinion proffered."[29] An insurmountable "analytical gap" exists in Mr.

---

[28] *See Lasseigne,* 202 F. Supp.2d at. at 517-18 (expert testimony on causation was properly excluded as unreliable where expert lacked specialized knowledge to testify regarding such, could only testify as to a general theory, and admitted her conclusion was speculative).

[29] *General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519 139 L. Ed. 508 (1997).

Cahill's testimony. There has been no articulated methodology employed, and his speculative testimony regarding Lewis' earning potential is unreliable and should be excluded.[30]

### D.  CAHILL'S OTHER TESTIMONY IS IRRELEVANT.

Finally, the little information on which Mr. Cahill may arguably be qualified to provide an opinion is irrelevant. In order to be relevant, the expert's specialized knowledge must help the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702.  As the Supreme Court observed in *Kumho*, "the question before the trial court was specific, not general. The trial court had to decide whether this particular expert had sufficient specified knowledge to assist the jurors in deciding the *particular issues* in this case."[31] Yet again, the fact in issue is not whether Lewis was a talented tennis player. It is whether the Board's actions were the reason for Lewis' lost opportunity for professional success and, if so, the amount of damages for lost earning potential (if any) Lewis is due specifically as a result of LSU's (as opposed to some other bad actor's) actions or inactions. This is beyond the role of a tennis expert and, as shown above, Mr. Cahill's opinions on these issues are unreliable.

Mr. Cahill's qualified testimony provides only opinions with respect to Lewis' skill and abilities *before* the alleged incidents at issue in this lawsuit took place. In other words, while Cahill may be qualified to testify regarding Lewis' athletic skill or capability, the crucial part of his testimony is why and how Lewis' skill and earning potential diminished, and to what degree. Mr. Cahill cannot testify to these matters. He did not observe Lewis play after her freshman year and did not have any communications with Lewis while she was at LSU. (Cahill 22, 27) He cannot provide any opinion on how her tennis abilities were impacted, or how that might affect a

---

[30] *See Daubert I*, 509 U.S. at 590, 113 S.Ct. 2786 (noting that expert testimony based on mere "subjective belief or unsupported speculation" is inadmissible).

[31] *Kumho Tire*, 526 U.S. 137, 119 S.Ct. at 1178, 143 L.Ed.2d 238 (internal quotation marks and citations omitted) (emphasis added).

professional career. Mr. Cahill's testimony is irrelevant as it cannot assist the trier of fact in determining a fact in issue, because it is not based on any knowledge of Lewis' performance during or after her alleged experiences. Lewis' historical tennis performance and qualities as an athlete (*i.e.*, the only topics to which Mr. Cahill could arguably speak if a proper foundation were laid) have no relevance to the ultimate issues of whether LSU's actions caused a detriment to Lewis' potential tennis career after May of 2017 and, if so, what the valuation of related lost earning potential (if any) would be. The Court should exclude his testimony accordingly.

### III. CONCLUSION

For the reasons asserted herein, the Court should grant the Board's Motion to Exclude Testimony of Plaintiffs' Expert Darren Cahill because Plaintiffs failed to comply with the Rules of Civil Procedure, and because the proposed testimony is unreliable and irrelevant.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY: _____
Susan W. Furr, Bar No. 19582
Shelton Dennis Blunt, Bar No. 21230
Karleen J. Green, Bar No. 25119
Greg Stevens, Bar Roll No. 29436
Jessica Coco Huffman, Bar No. 30445
Michael B. Victorian, Bar No. 36065
Molly McDiarmid, Bar No. 36426
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: susie.furr@phelps.com
Email: dennis.blunt@phelps.com
Email: karleen.green@phelps.com
Email: greg.stevens@phelps.com
Email: jessica.huffman@phelps.com
Email: michael.victorian@phelps.com
Email: molly.mcdiarmid@phelps.com

PD.42980683.3

- 16 -

                              ATTORNEYS FOR DEFENDANT THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on September 18, 2023 with the Court's CM/ECF system, which will electronically send a copy of the same to all counsel of record.

                                              Gregory T. Stevens