Exhibit B

Case 3:21-cv-00242-WBV-SDJ    Document 438-2    09/18/23    Page 1 of 24

APRYL POOLEY

05/09/2023
Page 1

Page 1

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL

                         CASE NO. 3:21-CV-00242
VERSUS                   JUDGE WENDY B. VITTER
                         MAG. JUDGE JOHNSON

BOARD OF SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL AND MECHANICAL
COLLEGE

     * * * * * * * * * * * * * * * * * * * * * *

ZOOM DEPOSITION OF

DR. APRYL POOLEY

TAKEN VIA ZOOM, BATON ROUGE, LOUISIANA, ON

MAY 9, 2023, BEGINNING AT 8:31 A.M.

REPORTED BY:
     JENNIFER W. PICKETT
     CERTIFIED COURT REPORTER
     CERTIFICATE NUMBER 29011

Exhibit B

Case 3:21-cv-00242-WBV-SDJ   Document 438-2   09/18/23   Page 2 of 24

APRYL POOLEY

05/09/2023
Page 9

Page 9

1    **employed with Michigan State University**

2    **in the psychology department?**

3  A   That is correct.

4  Q   **Tell me what that position involves,**

5    **please?**

6  A   I am the director of training and

7    technical assistance for a program called

8    the Michigan Victim Advocacy Network,

9    which is run through the psychology

10   department at Michigan State University

11   but it's a statewide training and

12   technical assistance program for crime

13   victim services providers that is funded

14   through the Michigan Department of Health

15   and Human Services.

16 Q   **And particularly as to your role with**

17   **that program, what is it that you do?**

18 A   I develop and deliver the training and

19   technical assistance that we provide to

20   crime victim services organizations.  So,

21   we work with a lot of sexual assault and

22   domestic violence programs.  We work with

23   prosecuting attorneys' offices.  We've

24   worked with hospitals -- any agency that

25   provides services to crime victims -- and

Case 3:21-cv-00242-WBV-SDJ    Document 438-2    09/18/23    Page 3 of 24

```
 1        PhD psychologists, other people that have

 2        PhD's in certain fields that are medical

 3        field type adjacent, and I need to

 4        understand what you are qualified to do

 5        and what you can do from a medical

 6        perspective.  So, for instance, with your

 7        PhD in neuroscience, are you qualified or

 8        licensed to give any sort of diagnoses?

 9   A    No.  I am not a clinical provider.  I am

10        a researcher and so a PhD in neuroscience

11        does not include any licensure.  I don't

12        provide any type of services to trauma

13        survivors.  I am purely an academic

14        researcher.

15   Q    I appreciate that.  I notice that you

16        have in your qualifications as listed on

17        your CV, it talks about thirteen years of

18        experimental and applied research and

19        then it lists out several different areas

20        -- one being biological trauma and stress

21        responses, another being quantitative

22        data analysis; are you familiar with

23        those?

24   A    Yes.

25   Q    Let's start with biological trauma and
```

1    looking at now, it's referencing page

2    123, line 13 through 124, line 5.  So,

3    that would be referencing the original

4    full deposition transcript, which is

5    probably what you have.

6  Q  **Okay.  But in doing your work, did you**

7     **reference anything outside of those**

8     **summaries that were provided to you or**

9     **did you rely on the summaries?**

10  A  For the plaintiff deposition testimony I

11     relied on the transcript excerpts that I

12     was sent.  They're not summaries.

13     They're word-for-word.

14  Q  **I'm sorry.  That's an important**

15     **clarification.  So, it's not -- in other**

16     **words, it's not someone interpreting what**

17     **it says.  It's just pieces of the**

18     **transcript itself rather than the whole**

19     **thing?**

20  A  Correct.

21  Q  **And then for the Husch Blackwell report,**

22     **did you receive excerpts of that as well?**

23  A  That one I read the full report.

24  Q  **For the -- I'm sorry, go ahead.**

25  A  I was just opening it.  It's dated March

**Exhibit B**
Case 3:21-cv-00242-WBV-SDJ    Document 438-2    09/18/23    Page 5 of 24
APRYL POOLEY
05/09/2023
Page 25

Page 25

```
 1        just that that was carved out of the
 2        larger proceedings for you; is that
 3        correct?
 4   A    Yes.
 5   Q    And you reviewed the entirety of what you
 6        were provided as being President
 7        Galligan's testimony; correct?  So, you
 8        reviewed all 73 pages that you were
 9        provided?
10   A    Yes.
11   Q    Other than that, were you provided any
12        additional information that you relied on
13        in this case?
14   A    No.
15   Q    Were you asked to make any particular
16        assumptions in doing your work on this
17        case?
18   A    No.
19   Q    Did you talk to any of the plaintiffs in
20        this case?
21   A    No.
22   Q    Did you talk to any of the plaintiffs'
23        medical providers, counselors or
24        clinicians in this case?
25   A    No.
```

APRYL POOLEY

```
 1        experienced sexual assault.  Some of them
 2        who also experienced institutional
 3        betrayal and some of them who did not
 4        experience institutional betrayal.  In
 5        comparing those two groups, what their
 6        symptom profiles look like -- and this
 7        research has been going on for decades --
 8        and that's where these conclusions are
 9        drawn that people who have experienced
10        trauma like sexual assault and also have
11        more severe post-traumatic symptoms,
12        including the ones that you just read
13        that I listed there in these final
14        conclusions, and also some unique
15        symptoms specifically related to
16        institutional betrayal.  So, the
17        conclusions that I drew were largely
18        based on the research showing that it's
19        likely that if you experienced a trauma
20        like sexual assault and also
21        institutional betrayal, that these
22        symptoms were directly or indirectly
23        related to institutional betrayal.
24   Q    What do you mean by the word likely?
25   A    As I said, I'm not a clinician.  I didn't
```

Exhibit B
Case 3:21-cv-00242-WBV-SDJ   Document 438-2   09/18/23   Page 7 of 24
APRYL POOLEY
05/09/2023
Page 35

Page 35

```
 1        speak with any of these plaintiffs.  I'm
 2        not here to diagnose anything.  This is
 3        maybe more academic research talk for not
 4        wanting to -- correlation doesn't equal
 5        causation -- not wanting to apply
 6        causation where it doesn't belong.  These
 7        are correlations that have been
 8        researched over many years and found to
 9        be consistent that institutional betrayal
10        exacerbates these symptoms.  So, I'm
11        careful with the language that I use in
12        saying that it is likely that this was an
13        influence in this case but I can't
14        definitively confirm that based on the
15        information that I have.
16   Q   Sure, and so with regard to the trauma-
17        related symptoms that you mentioned and
18        there's a list.  Just for the record I'll
19        read it -- "anxiety, depression,
20        dissociation, memory issues, sleep
21        issues, avoiding people and places that
22        elicit trauma reminders, negative impacts
23        on work, school and relationships, higher
24        incidences of irritable bowel syndrome,
25        chronic pain, chronic fatigue and
```

Case 3:21-cv-00242-WBV-SDJ    Document 438-2    09/18/23    Page 8 of 24

```
 1   A    Yeah, correct.
 2   Q    Or really any of the issues in this list.
 3        You haven't looked at any evidence that
 4        they actually experienced any of these
 5        things; is that correct?
 6   A    Yes.
 7   Q    So, from an institutional-betrayal
 8        standpoint, we have characteristics of --
 9        and I think, correct me if I'm wrong, you
10        said there are eleven, is that right --
11        eleven characteristics that have been
12        associated with institutional betrayal?
13   A    Twelve, actually.  I'm sorry about that.
14        Yeah.
15   Q    My fault.  Okay, twelve.
16   A    No, I did say eleven but it's twelve.
17   Q    So, those characteristics -- or some of
18        them -- can be present at various
19        institutions; is that fair?
20   A    Yes.
21   Q    Whether a particular person experiences
22        them in any material way is actually a
23        very individual question; isn't it?
24   A    Whether any individual experiences
25        institutional betrayal is an individual
```

```
 1        question -- um, yes, that is fair to say;
 2        although, these factors are systemic
 3        factors that tend to be experienced more
 4        broadly by members of the institution if
 5        the systemic factors exist.  But yes,
 6        they are -- yes.
 7   Q    I guess my point is certainly not to
 8        minimize any of the individual
 9        characteristics or any of the symptoms
10        that you're talking about.  But
11        particularly with regard to trauma and
12        psychological issues, the way that one
13        person experiences those or reacts to
14        them or is effected by them can, in fact,
15        be very different than another person who
16        experiences objectively the same type of
17        thing; is that fair?
18   A    Yeah, that is true of trauma generally,
19        that the effects vary from person to
20        person.
21   Q    So, when you say "likely exacerbated and
22        prolonged each plaintiff's trauma-related
23        symptoms," you haven't really evaluated
24        what each plaintiff's trauma-related
25        symptoms were on an individual basis;
```

```
 1        right?

 2  A   Correct.  That was not something that was

 3        in the scope of my work.

 4  Q   And you haven't really looked at how long

 5        or to what extent they experienced any

 6        symptoms that they might have

 7        experienced; right?

 8  A   Correct.

 9  Q   So, when you say "likely exacerbated and

10        prolonged," what you're really saying is

11        that there's some research out there that

12        indicates that, in certain circumstances,

13        institutional betrayal can exacerbate or

14        prolong certain symptoms; is it fair?

15  A   Yes.

16  Q   And as to any one of these individual

17        plaintiffs, you're not really in a

18        position to say, more likely than not,

19        that they did experience any exacerbation

20        or prolongation of any symptoms; right?

21  A   Right.

22  Q   Okay.  Towards the middle, you talk about

23        contribution to long-term economic loss.

24        Have you evaluated any aspect of economic

25        loss as to any of these plaintiffs?
```

Case 3:21-cv-00242-WBV-SDJ    Document 438-2    09/18/23    Page 11 of 24

1        of someone to get better from a condition

2        like PTSD, that's not something that you

3        intend to offer an opinion on; correct?

4    A   Correct.

5    Q   So, you would defer to other experts with

6        regard to any clinical evaluation like

7        that; correct?

8    A   Yes.

9    Q   With regard to the state senate testimony

10       transcript that you looked at and that

11       you site to a few times, again I

12       understand from what you told me earlier

13       that it's your understanding that you had

14       the entirety of President Galligan's

15       testimony before the senate committee;

16       correct?

17   A   Yes.

18   Q   And you mentioned that at certain points

19       within the broader transcript there are

20       reference to speakers but it was

21       difficult for you to tell exactly who

22       those speakers were; is that fair?

23   A   Yes.

24   Q   Even within President Galligan's

25       testimony, are there references to

1      **speakers that it was difficult for you to**

2      **tell who exactly they were?**

3   A   Yes.

4   Q   **And we'll go through them but there are**

5      **various times in your report or your**

6      **affidavit where you cite to things that**

7      **are included in that transcript that**

8      **don't appear to have come from President**

9      **Galligan.  They appear to have come from**

10     **either a senator or a speaker that's**

11     **unidentified or someone questioning; is**

12     **that fair?**

13  A   Anytime that I refer to -- I did refer to

14     other speakers beyond President Galligan

15     because they were just included in this

16     chunk of transcript.  But anytime I refer

17     to somebody by name it's because it was

18     documented by what I'm assuming is a

19     court reporter.  That this a transcript

20     from that and it would have people state

21     their name and then they would say what

22     they said in the transcript.  So, anytime

23     in this report where I do refer to other

24     people, it was based on how they

25     identified themselves in this transcript.

Case 3:21-cv-00242-WBV-SDJ   Document 438-2   09/18/23   Page 13 of 24

1   Q    Out of all of the people that you quote

2        from that transcript, do you know which,

3        if any of them, were under oath when they

4        were speaking?

5   A    I do not.  I was assuming that everybody

6        was since it was part of a testimony

7        hearing.

8   Q    Okay.  I would like to get into more of

9        the meat of your report.  Can we take a

10       five-minute break?  Is that all right

11       with everybody?

12  A    That'd be great.

13  (Off the record.)

14  BY MR. STEVENS:

15  Q    Doctor, one thing we didn't talk about

16       that I want to make sure I understand

17       before we get into the more particular

18       substance of your report is your

19       understanding or involvement with a Title

20       IX analysis.  So, do you consider

21       yourself to be an expert on Title IX or

22       Title IX compliance?

23  A    No.

24  Q    Does any part of your work or training

25       involve Title IX or reporting or

Exhibit B

Case 3:21-cv-00242-WBV-SDJ    Document 438-2    09/18/23    Page 14 of 24

APRYL POOLEY

05/09/2023
Page 49

Page 49

1          **reporting response or anything of that**

2          **nature?**

3     A    No, not typically.  I had been involved

4          in a review of the relationship violence

5          and sexual misconduct policy at Michigan

6          State University several years ago as

7          they were revamping their policy to be in

8          compliance with Title IX guidance at the

9          time.  And so, I am familiar with what

10         Title IX is and some of the guidance in

11         relation to those types of policies but I

12         would not consider myself to be a Title

13         IX expert by any means.

14    Q    **And so given that, you don't intend to**

15         **offer any opinions to the jury about what**

16         **Title IX requires or does not require; is**

17         **that fair?**

18    A    Yeah.  No, I will not be doing that.

19    Q    **And I guess at the same time you wouldn't**

20         **offer any opinions about whether or not**

21         **any action or inaction by LSU would have**

22         **been in-compliance or not in-compliance**

23         **with Title IX; is that fair?**

24    A    Yeah, correct.

25    Q    **So, you mention, just kind of going**

1    mentioned a couple of times in your

2    report, isn't it true that even if an

3    institution exhibits certain

4    characteristics that you would correlate

5    with institutional betrayal, there can

6    also be -- particularly in individual

7    circumstances -- instances of

8    institutional support from that same

9    institution; correct?

10  A   Yes.

11  Q   So, it's fair to say that any

12      individual's experience of this trauma

13      that you're indicating can be

14      specifically correlated with

15      institutional betrayal, you would have to

16      know that individual's experience and

17      reaction to a particular set of facts;

18      correct?

19  A   Yes.

20  Q   And the only information you have in this

21      case about any particular plaintiff's

22      facts or experiences in that regard are

23      the excerpts of the deposition

24      transcripts that counsel provided to you;

25      correct?

Case 3:21-cv-00242-WBV-SDJ    Document 438-2    09/18/23   Page 16 of 24

1   A   Those transcripts as well as what was

2       outlined in the second amended complaint

3       that I reviewed.

4   Q   **In paragraph thirteen I think you lay out**

5       **the twelve different characteristics that**

6       **can constitute institutional betrayal;**

7       **correct?**

8   A   Correct.

9   Q   **And then as the report goes on, towards**

10      **the end you, broken down by plaintiff,**

11      **you try to correlate certain things with**

12      **some or all of these different**

13      **characteristics; correct?**

14  A   Yes.

15  Q   **Anywhere in your report did you record**

16      **any instances of a plaintiff experiencing**

17      **institutional support?**

18  A   No.

19  Q   **Is it your opinion that none of these**

20      **plaintiffs experienced any type of**

21      **institutional support?**

22  A   Based on what was outlined in the

23      documents that I reviewed, I did not see

24      any descriptions of that -- of what would

25      be considered institutional support.

Page 67

```
 1   Q    Is it true that instances of
 2        institutional support would tend to
 3        mitigate any effect of certain
 4        characteristics of institutional
 5        betrayal?
 6   A    They could, yes.
 7   Q    And you would certainly, as a researcher
 8        and a data analyst and a scientist, you
 9        would want to look at all of that
10        information to try to figure out what the
11        net impact of something was on an
12        individual; right?
13   A    Yeah.
14   Q    You talk in paragraph 14 about the
15        occurrence of institutional betrayal
16        being measured by an institutional
17        betrayal questionnaire; do you see that?
18   A    Yes.
19   Q    Help me understand what that is and who
20        typically fills that out?
21   A    So, that questionnaire is really just
22        those twelve items that are in the
23        paragraph above that except it's worded
24        in a way for people to answer yes or no
25        to any of those items.  So, those are
```

1    what support was there before you can

2    really talk about how something affected

3    any individual plaintiffs; correct?

4  A  Correct.

5  Q  Let's talk about the individual

6    plaintiffs and I'm trying to get down to

7    where you start talking about them.  It

8    looks like on page --

9  A  Page ten, I believe.

10  Q  Yeah, I'm sorry.  My PDF program is a

11    little bit clunky at times so as you see

12    me scrolling I'm waiting on it to catch-

13    up.  So, at paragraph 38 on page ten, you

14    start with a section that's titled

15    specific complaints consistent with

16    institutional betrayal.  And so, that's a

17    good starting point.  Is it fair to say

18    that that's essentially what you're doing

19    in this affidavit, is looking at certain

20    specific complaints that were presented

21    to you and saying whether or not they're

22    consistent with institutional betrayal?

23  A  Yes.

24  Q  Do you go beyond that at all or is that

25    essentially what you were tasked to do --

Page 83

1    look at these things and tell me whether

2    or not it could constitute institutional

3    betrayal?

4  A   That was really the extent of my work in

5      looking at the individual plaintiff's

6      complaints, is seeing what the complaint

7      itself describes and I quote things from

8      the complaint, from the deposition

9      testimonies, saying these would fit with

10     the definition of institutional betrayal.

11     And that was really all I did and then at

12     the end of each one I did offer a

13     conclusion that experiencing these forms

14     of institutional betrayal that were

15     outlined in this complaint could cause

16     further harm because that's what the

17     research supports -- that saying people

18     who experience these types of

19     institutional betrayal occurrences have

20     harm above and beyond their original

21     trauma.

22  Q   But again, to make that evaluation, to

23      determine not whether it could but

24      whether it did, you would have to know a

25      couple of additional things; right?  You

Page 97

```
1           individual perpetrator.  But I don't know
2           the extent of each individual
3           perpetrator's.
4    Q   You're saying the complaint.  You mean
5           the legal document, the pleading that was
6           filed in this case and that you said was
7           part of your file; correct?
8    A   Right.  Yes.
9    Q   So, you're taking at face value that the
10          allegations in that complaint are, in
11          fact, true; right?
12   A   I wasn't assuming whether anything in
13          there was true or not true.  I think my
14          report was really just based on here's
15          what's in the complaint and if any of
16          these things are found to be true, then
17          they could be related to this concept of
18          institutional betrayal that I outlined.
19          But it wasn't part of my job to determine
20          whether any of the claims were true or
21          not.  I figured that would happen over
22          the course of this investigation and
23          trial.
24   Q   In each of the conclusion sections you
25          talk about -- well, let me just read the
```

Case 3:21-cv-00242-WBV-SDJ    Document 438-2    09/18/23    Page 21 of 24

Page 99

1    correlations.  I'm looking at my

2    reference list again to see if I can pull

3    out a specific paper right now.  The

4    original institutional betrayal

5    questionnaire did not quantify the

6    experiences in that way.  It was did this

7    individual experience any of these twelve

8    types of institutional betrayal and then

9    it was either just a yes or no thing.

10   So, experiencing one form of that is

11   enough to elicit the type of harm of

12   institutional betrayal that we've talked

13   about.  And so, drawing from that

14   experiencing more than one of those is a

15   conclusion that the research is, I think,

16   still looking at but I don't know that

17   it's necessary to quantify it in that

18   way.  I think I quantified it that way in

19   the report just more as an informational

20   thing, to show there's these twelve

21   different types and here are some

22   instances in these individual experiences

23   that match-up with each of the twelve

24   types and whatever the triers of the

25   facts determine to be true or not true

Case 3:21-cv-00242-WBV-SDJ    Document 438-2    09/18/23    Page 22 of 24

APRYL POOLEY

```
 1  A   No.

 2  Q   So, is it your assumption in writing that

 3      sentence that there were none experienced

 4      by Ms. Richardson; no instances of

 5      institutional support?

 6  A   I don't think I would make that

 7      assumption.  I think what I am getting at

 8      when I say that is if someone at the

 9      institution responded with any of those

10      manifestations of institutional support

11      and that could become apparent, I don't

12      know what all the other types of evidence

13      are in this case.  That's not my role to

14      look at that but if those measures are

15      there, then that -- I provided that

16      information as part of the full picture

17      of this context that measures of

18      institutional support can mitigate the

19      effects of institutional betrayal.  But I

20      didn't see, in the documents that I

21      reviewed, evidence of that.

22  Q   Okay.  And so, I guess it's just a

23      semantics issue at some point but I guess

24      I just wanted to be clear.  It's your

25      position that if -- not had, but if --
```

1      someone at the institution provided

2      institutional support, it indeed would

3      have mitigated any alleged harm suffered

4      by institutional betrayal; right?

5   A   It could have, in the same way that I've

6      been speaking about the institutional

7      betrayal -- that it could have but it's

8      difficult to determine any specific

9      causation but it would be something that

10     would be important to consider in the

11     context of any individual's experience.

12  Q   I think I am actually just about done.

13     Give me one second.  I think that's all

14     the questions I have, Doctor.  I

15     appreciate your time today.

16  A   Great.  Thank you so much.

17     (Whereupon, the taking of the witness's

18  testimony was concluded at or about 11:01

19  A.M.)

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Jennifer Pickett, Certified Court
Reporter in and for the State of Louisiana,
Certificate No. 29011, which is current and in
good standing, as the officer before whom this
testimony was taken, do hereby certify that the
above and foregoing was taken under the
authority of R.S. 37:2554; that the foregoing
was taken by the undersigned as hereinbefore
set forth in the foregoing pages; that it was
reported by me in the stenomask method, was
prepared and transcribed by me or under my
personal direction and supervision, and is a
true and correct transcript to the best of my
ability and understanding; and that I informed
about the complete arrangement, financial or
otherwise, with the person or entity making
arrangements for deposition services; and that
I have acted in compliance with La. Code of
Civil Procedure Article 1434; that I am no
actual knowledge of any prohibited employment
or contractual relationship, direct or
indirect, between a court reporting firm and
any party litigant in this matter nor is there
any such relationship between myself and a
party litigant in this matter; I am not
related to counsel or to the parties herein,
and I am in no way concerned with the outcome
thereof.

_____

Jennifer Pickett, C.C.R.

# 29011