UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, ET AL.** | **CIVIL ACTION NO. 3:21-CV-00242** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY, ET AL.** | **MAGISTRATE JUDGE JOHNSON** |

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* AND *DAUBERT* MOTION TO EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFFS' EXPERT WITNESS DR. APRYL POOLEY**

Defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"), submits this memorandum in support of its Motion *In Limine* and *Daubert* Motion To Exclude or Limit Testimony of Plaintiffs' Expert Witness Dr. Apryl Pooley. The proposed evidence is irrelevant, unreliable, does not meet the standards of Federal Rule of Evidence 702 as applied by *Daubert*, and should be excluded.

**I.    BACKGROUND**

Plaintiffs intend to offer Dr. Apryl Pooley as an expert to present causation and damages testimony in an effort to connect Plaintiffs' emotional injuries to the alleged actions or inactions of LSU. Dr. Pooley purports to be an expert on "institutional betrayal," a novel academic research theory. There do not appear to be any reported cases interpreting the validity of this research theory as it pertains to a particular litigant's case. Similarly, Dr. Pooley has never been offered as an expert on "institutional betrayal." (Pooley Report, p. 1)[1]

---

[1] Relevant portions of the expert report and deposition transcript of Dr. Apryl Pooley are attached to the Board's motion as Exhibits A and B, respectively. Studies relied upon by Dr. Pooley are also attached to the Board's motion as Exhibits C and D, respectively. Citations to the deposition will be by the last name of the deponent and the page or exhibit number.

In her report, Dr. Pooley offers three main conclusions: (1) that LSU exhibited characteristics and practices consistent with institutional betrayal; (2) the institutional betrayal likely exacerbated and prolonged the plaintiffs' trauma-related symptoms (damages); and (3) the institutional betrayal inflicted additional harm on each plaintiff (causation). (Pooley Report, p. 38) These opinions are unsubstantiated, unreliable, and irrelevant, and at best would only serve to confuse the jury.

## II.   LAW AND ARGUMENT

Plaintiffs, as the proponents of expert evidence, have the burden of establishing admissibility of Dr. Pooley's opinions.[2] Plaintiffs must show Dr. Pooley's testimony complies with Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b) the testimony is based on sufficient facts or data;
>
> c) the testimony is the product of reliable principles and methods; and
>
> d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 thus implicates three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.[3] Courts are charged to act

---

[2] *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998).
[3] *Urda v. Valmont Industries, Inc.*, 561 F.Supp.3d 632, 636–37 (M.D. La. 2021) (citing *Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010)).

as a "gatekeeper" of expert testimony and must ensure that the testimony is both reliable and relevant, as set forth in *Daubert v. Merrell Dow Pharm., Inc*., 506 U.S. 579, 590 (1993).[4]

### A.   DR. POOLEY'S TESTIMONY AND OPINIONS ARE IRRELEVANT.

In order to be relevant, the expert's specialized knowledge must help the trier of fact to understand the evidence or to determine a fact in issue. FED.R.EVID. 702. Dr. Pooley's testimony should be excluded because it fails to meet the relevance standard of Rule 702, since her expected testimony does not relate to any remaining issue in this case.

#### 1.   Dr. Pooley's Opinions Relate to Precluded Damages for Emotional Distress.

Dr. Pooley's opinions attempt to correlate the presence of "institutional betrayal" to unspecified emotional trauma suffered by Plaintiffs. As set forth in the Board's Motion to Dismiss (R. Doc. 252), Plaintiffs' claims for emotional distress are precluded under *Cummings v. Premier Rehab Keller, P.L.L.C.*,[5] in which the U.S. Supreme Court held that damages for emotional distress are not recoverable for violations of anti-discrimination statutes such as Title IX.[6] Accordingly, Dr. Pooley's testimony cannot help the trier of fact to determine a fact in issue, because recovery of emotional distress damages is not at issue in this case. Dr. Pooley's testimony is irrelevant to the remaining claims and is thereby inadmissible.

#### 2.   Dr. Pooley's Opinions Relate to Irrelevant Events.

Dr. Pooley's opinions based on LSU's alleged post-reporting response or lack thereof should also be excluded, as examination of post-reporting conduct is the wrong legal standard for

---

[4] *Daubert v. Merrell Dow Pharm., Inc*., 506 U.S. 579, 590 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

[5] 142 S. Ct. 1562 (2022).

[6] *Id.* at 1571-1572, 1576. The Board hereby incorporates its arguments from its Motion to Dismiss, and in the interest of judicial efficiency will not repeat them at length here. Suffice it to say that since emotional damages are not recoverable in this lawsuit, Dr. Pooley's testimony regarding the alleged exacerbation of those alleged damages is not probative of any fact in issue and would only serve to confuse the jury.

the remaining pre-assault claims.[7] "Courts will exclude expert testimony when it relies on an incorrect legal standard."[8] If the expert does not rely on a correct legal standard, then his or her opinion improperly fails to fit "the facts of the case."[9] Pooley's testimony does not "fit" the facts of the case because it is not supported by law, and therefore does not assist the trier of fact to understand the evidence.

The majority of Dr. Pooley's report identifies several events for which the Board, as a matter of law, cannot be liable and attempts to draw a connection between those events and Plaintiffs' claimed harm. As this Court is aware, Plaintiffs' claims for post-reporting deliberate indifference have been dismissed as prescribed. The events Dr. Pooley relies upon to show "institutional betrayal" are largely post-reporting events that are no longer the subject of this lawsuit and which cannot serve as a basis for liability against LSU. Thus, Dr. Pooley's testimony will only serve to confuse the jury.

Moreover, as set forth in the Board's Motions for Summary Judgment, LSU could not be held liable for any behavior unless that behavior meets the high standard of deliberate indifference set forth by the Supreme Court.[10] Compared to the litany of events Dr. Pooley conclusively describes as "institutional betrayals," the Title IX standard significantly limits the causative events that are potentially attributable to LSU. There is no basis in Title IX liability for behavior that instead allegedly satisfies a novel academic theory of an "institutional betrayal." Accordingly, any attempt to draw a connection between Dr. Pooley's generalized opinions that LSU committed

---

[7] *See* Motion in Limine No. 6, regarding the exclusion of post-reporting conduct.
[8] *YETI Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 WL 429210, at *2 (W.D. Tex. Jan. 28, 2017) (citations omitted).
[9] *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. CV 13-0366, 2016 WL 9414205, at *9 (E.D. La. May 23, 2016).
[10] *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644-45 (U.S. 1999); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011).

"institutional betrayal" and alleged harm to Plaintiffs incorporates an incorrect legal standard and should be excluded.

### B. DR. POOLEY'S PRINCIPLES AND METHODS ARE UNRELIABLE.

Even if her testimony were relevant to this case (which is denied), Plaintiffs cannot show that Dr. Pooley's principles and methodology are sufficiently reliable. To satisfy the reliability requirement, Plaintiffs must demonstrate that "the testimony is the product of reliable principles and methods." Fed. R. Evid. 702. "An expert's testimony must be reliable at each and every step."[11] Moreover, "[t]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*."[12]

The *Daubert* Court provided certain non-exclusive factors to consider when assessing whether a methodology is scientifically reliable: (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community.[13]

Dr. Pooley stated she was tasked with analyzing the Plaintiffs' individual complaints and determining whether they are consistent with circumstances constituting "institutional betrayal." (Pooley 82-83) In her report, Dr. Pooley lists twelve circumstances which she claims constitute "institutional betrayal." (Pooley Report, p. 2) She cites two studies by Dr. Jennifer Freyd as support

---

[11] *Carlson v. Bioremedi Therapeutic Sys.*, 822 F.3d 194 (5th Cir. 2016) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007)).
[12] *Knight*, 482 F.3d at 355.
[13] *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, 585 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 593-94).

for her list.[14] In these studies, Dr. Freyd created and utilized a self-assessment questionnaire called the Institutional Betrayal Questionnaire ("IBQ"). (Exh. C, pp. 2-3; Exh. D, p. 4) The questionnaire asked students, based on their perception, to check "yes" or "no" if they felt the school had behaved in accordance with any of the circumstances, such as making the experience difficult to report, responding inadequately to the experience, covering up the experience, or punishing the student for reporting the experience. (Exh. C, p. 3; Exh. D, pp. 7-8)

This research and questionnaire were merely a measure of student perception. The research did not evaluate the actual conduct of any university in responding to the student's sexual assault. (*See* Exh. C, p. 3, "The IBQ is a tool for gathering a participant's experience rather than a scale meant to measure an underlying trait or state.") This study was not intended to connect *actual*, rather than perceived, school behavior to increased trauma symptoms. Rather, it simply describes a statistical correlation between a student's negative perception toward a university (or other institution) and underlying trauma symptoms. (Exh. C, pp. 3-4) Correlation, of course, is not causation. (Pooley 35) The overarching dissimilarity in the objectives of Dr. Freyd and Dr. Pooley's analyses makes clear that the unexplained "circumstances" and theories of Dr. Freyd's study cannot provide a reliable bases for Dr. Pooley's conclusions.

Relatedly, Dr. Pooley's methodology in simply stating how many of the twelve alleged factors a plaintiff's allegations supposedly meet (*i.e.*, conducting her analysis in a "check the box" fashion) is highly prejudicial, particularly in light of the fact that Dr. Pooley did no substantive analysis. For example, with respect to Richardson, Dr. Pooley concluded:

---

[14] Smith CP, Freyd JJ, *Dangerous Safe Havens: Institutional Betrayal Exacerbates Sexual Trauma*, 26 J. Traumatic Stress, 119-124 (2013); Smith CP, Freyd JJ, *Insult, then Injury: Interpersonal and Institutional Betrayal Linked to Health and Dissociation*, 26 J. Aggress. Maltreat. Trauma, 1117-1131 (2017) (attached as Exhibits C and D, respectively)

> To experience even one form of Institutional Betrayal in response to a disclosure of abuse is enough to cause further harm to a victim above and beyond the harm caused by the abuse, but to experience multiple accounts of eleven different types of Institutional Betrayal, as Richardson did, would be extraordinarily harmful to anyone . . .

(Pooley Rep., p. 13) Dr. Pooley's stated opinions seem to imply, and would imply to a jury, that a plaintiff with more "boxes checked" would necessarily have experienced a higher degree of exacerbation of symptoms than a plaintiff with less "boxes checked." This is contrary to Dr. Pooley's testimony, where she admitted that there is no basis in research for that conclusion. (Pooley 99) Dr. Pooley's quantification-based conclusions are especially prejudicial when viewed against the backdrop that Dr. Pooley has no knowledge of whether a plaintiff was actually affected by a so-called "institutional betrayal."

Dr. Pooley's conclusions regarding damages and causation are based on similarly unreliable methodology. After she concludes that certain behavior could constitute an institutional betrayal, she then offers a conclusion that experiencing institutional betrayal could cause further harm. (Pooley 83) Because Dr. Pooley admits she is not qualified to give any sort of medical diagnoses, she states she can only testify regarding the conclusion that if a person experiences institutional betrayal, it *may* exacerbate certain symptoms. (Pooley 12, 34-35). In discussing the foundation for that conclusion, Dr. Pooley admitted that correlating an individual's experience with institutional betrayal requires knowledge of the individual's experience and subjective reaction. (Pooley 65) Yet Dr. Pooley admits she did not speak to the plaintiffs, did not look at the substantive evidence to make a determination that any given plaintiff actually experienced certain symptoms or why, and did not know whether any given plaintiff had any particular alleged symptom before any conduct at issue in this litigation. (Pooley 25, 38-39, 65-66) Without this information Dr. Pooley lacks sufficient facts and data necessary to render her methodology and conclusions reliable.

PD.43104157.3

Similarly, Dr. Pooley admits that she is not in a position to state that any of the plaintiffs actually did experience any exacerbation or prolongation of any symptoms. (Pooley 39) She also could not say whether any plaintiff did in fact perceive a particular alleged "institutional betrayal" to actually be an "institutional betrayal." (Pooley 37-38) She did not administer the IBQ to the plaintiffs. (Pooley 39) Dr. Pooley's testimony, then, boils down to (1) concluding that institutional betrayal occurred; and (2) because it occurred, Plaintiffs may have experienced further symptoms. These conclusions bear no relevance to the ultimate issues of whether Plaintiffs' non-emotional distress damages were caused by LSU's pre-assault deliberate indifference (or, frankly, any action or inaction of LSU whatsoever). They are unreliable and unsupported by any actual evidence or analysis specific to the individual plaintiffs at issue in this case.

Dr. Pooley further admits that instances of institutional support would mitigate any effect of institutional betrayal and should be considered. (Pooley 66-67) However, she was not provided with full documentation or given the opportunity to analyze and fully consider the presence of institutional support. (Pooley 66-67, 101-102) For example, Dr. Pooley did not receive or review any of the depositions of LSU employees involved in Plaintiffs' cases, nor did she review any internal documentation regarding Plaintiffs' cases. She simply reviewed, and accepted as true, *excerpts* of Plaintiffs' depositions provided by counsel (she did not review the entire transcripts) and the Complaint.[15] (Pooley 23, 65-67) These documents are incomplete characterizations, contain only Plaintiffs' subjective perceptions and have been shown in many instances to be

---

[15] Although Dr. Pooley purportedly also reviewed the Husch Blackwell report and transcripts from the Louisiana State Senate Select Committee on Women and Children hearing, it is clear from Dr. Pooley's testimony that she relied most heavily on the Complaint and deposition excerpts, which she admitted she accepted as true. Moreover, the hearing transcript she was provided does not clearly depict who is speaking… and it is unclear whether Dr. Pooley appreciated the distinction between those questioning as opposed to those giving testimony at the hearing). (Pooley 46-48)

inaccurate. Dr. Pooley's own testimony indicates that failing to consider institutional support in her analysis renders her conclusions incomplete and unreliable.

Finally, Dr. Pooley admits her opinion is based largely on the contents of the Complaint, which she accepted as true. (Pooley 97) She did not make any outside determination as to the veracity of Plaintiffs' allegations in the complaint. (*Id*.) It is clear that Dr. Pooley "uncritically accepted [plaintiffs'] account and failed to interpose much in the way of independent professional judgment in arriving at [her] conclusion," indicating that Dr. Pooley did not have a sufficient factual basis to arrive at any opinion, even if she were qualified to render one.[16] Dr. Pooley did not collect the necessary information or investigate the actual, objective conduct of LSU before attempting to utilize institutional betrayal research to "correlate" Plaintiffs' damages to LSU's conduct. Dr. Pooley was not fully informed of the facts of the case, and thereby cannot reliably opine that any specific actions or inactions by LSU caused any alleged harm to Plaintiffs. This is particularly true when, as demonstrated by the Board's Motions for Summary Judgment, the allegations she relied upon in the Complaint are inconsistent with the facts, including Plaintiffs' own testimony. As a result, her testimony should be excluded.

## C. DR. POOLEY IS NOT QUALIFIED TO OFFER THE OPINIONS IN HER REPORT.

Dr. Pooley is also unqualified to offer the opinions that form the basis of her conclusions. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."[17] Dr. Pooley purports to be "an expert in the neurobiology of trauma and crime victim services." (Pooley Rep., p. 1) She holds a PhD in neuroscience and her experience concerns biological effects of trauma on the brain and body. *Id*.

---

[16] *Lasseigne v. Taco Bell Corp*., 202 F.Supp.2d 512, 522 (E.D. La. 2002).
[17] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

Although she claims to have experience developing training and programming for crime victim services organizations, this does not qualify Dr. Pooley to opine on the sufficiency of LSU's response to an individual plaintiff's reporting or circumstances. (Pooley 9) Instead of simply stating that certain conduct could correlate to a particular biological effect (*i.e.*, the only topic on which Pooley could arguably reliably speak), Dr. Pooley instead conclusively opines that certain LSU responses were improper and thus constituted an "institutional betrayal."

For example, Dr. Pooley states:

> When Richardson disclosed Coe's abuse to her mentor, Ausberry responded by telling her she had to report the abuse to Segar. Segar was not part of the Title IX Office, where a report should be directed, and there was no reason Richardson needed to disclose her experience to anyone else.

> \* \* \*

> When neither Coe nor Lewis (who was found in violation of Title IX) received any consequences in Richardson's case, this was another incidence of Institutional Betrayal where the institution mishandled a case by not enforcing any sanctions for violating its own policies.

> \* \* \*

> One common proactive step that LSU failed to take was to make Doe's victims aware that other students had made allegations against him, which is known to facilitate survivor participation in the reporting and investigation of their assaults by overcoming the challenge of the "isolated incident" narrative . . . LSU did not take this proactive step that could have prevented further violence by fully supporting the victims to participate in a proper investigation.

> \* \* \*

> Brennan was told that Defendant Segar was a student advocate, in a clear misrepresentation of her role in the Athletics Department.

(Pooley Rep., pp. 12, 16-17) As she admits, Dr. Pooley is not a Title IX expert, and none of her work or training involves Title IX or reporting response. (Pooley 48-49) Plaintiffs have not

- 10 -

provided any information regarding Dr. Pooley's alleged qualification to opine on whether a certain action taken by LSU was improper, or that she has any specialized knowledge of the internal constructs of Title IX response. Nothing in her professional experience suggests that she possesses specialized knowledge, training, or experience to opine that LSU's alleged actions were insufficient or improper.[18] Additionally, as set forth above, these opinions are not based on any facts or data but instead on uncriticized allegations. The opinions should be excluded.

### III. CONCLUSION

For the reasons asserted herein, the Court should grant the Board's Motion and exclude or limit Dr. Pooley's testimony accordingly.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY: _____
Shelton Dennis Blunt, Bar No. 21230
Susan W. Furr, Bar No. 19582
Karleen J. Green, Bar No. 25119
Greg Stevens, Bar Roll No. 29436
Jessica Coco Huffman, Bar No.30445
Michael B. Victorian, Bar No. 36065
Molly McDiarmid, Bar No. 36426
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: greg.stevens@phelps.com
Email: jessica.huffman@phelps.com
Email: michael.victorian@phelps.com
Email: molly.mcdiarmid@phelps.com

---

[18] *Ronaldo Designer Jewelry, Inc. v. Cox*, 2020 WL 1124599, at *8 (N.D.Miss., 2020) (experienced jewelry retailer's retail experience did not qualify him to testify about how public perceived jewelry item in a trade infringement case).

- 12 -

                                         ATTORNEYS FOR DEFENDANT THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on September 18, 2023, with the Court's CM/ECF system which will send electronic notice to all counsel of record.

_/s/ [signature]_____