UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, ET AL.** | **CIVIL ACTION NO. 3:21-CV-00242** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY, ET AL.** | **MAGISTRATE JUDGE JOHNSON** |

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* AND *DAUBERT* MOTION TO EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFFS' EXPERT WITNESSES JOSEPHINE DOHERTY AND ANDREW VERZILLI**

Defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"), submits this memorandum in support of its Motion *In Limine* and *Daubert* Motion To Exclude or Limit Testimony of Plaintiffs' Expert Witnesses Josephine Doherty and Andrew Verzilli. The proposed evidence does not meet the standards of Federal Rule of Evidence 702 as applied by *Daubert* and should be excluded.[1]

**I. BACKGROUND**

Plaintiffs engaged Josephine Doherty as a vocational rehabilitation and life care plan expert and disclosed her as such in accordance with the Court's Scheduling Order and Rule 26 of the Federal Rules of Civil Procedure. (R. Doc. 244) They likewise timely disclosed an expert in the field of psychiatry, Dr. Frank Ochberg, though Dr. Ochberg never issued a report. Instead, Doherty's eventual reports expand well beyond the fields of vocational rehabilitation and life care planning and purport to offer psychological diagnoses on which the remainder of her conclusions are based. Those conclusions, though, are not properly supported or backed by sufficient

---

[1] Relevant excerpts of the transcripts from Day 1 and Day 2 of Doherty's deposition, and from Verzilli's deposition, are attached hereto as Exhibits A, B, and C respectively. Citations to the depositions herein will be by the last name of the deponent and the day (as to Doherty) and the page number.

methodology or relevant evidence such that they are not admissible under a Rule 702 and *Daubert* analysis.

Further, Doherty relies in several instances on the Gamboa-Gibson Worklife Tables (the "Gamboa Tables"), which have been routinely excluded by Federal courts in Louisiana because, without limitation, they are based on statistics for broad categories of disabled, severely disabled, and non-disabled individuals and often, as here, lack evidence reliably tying that data to a specific person or their alleged condition.[2] The Gamboa Tables are based on broad questions posed by the Census Bureau related to the responding individuals' perception of their own disability, job status, and the correlative relationship between the two. They are at best, then, speculative as to causation and at worst wholly unreliable as applied to any given individual. They do not meet the threshold for scientific rigor and reliability mandated by *Daubert*, and all testimony based on the Gamboa Tables should therefore be excluded.

The Plaintiffs retained economist Andrew Verzilli to quantify the alleged economic (wage) damages suffered by each Plaintiff. His work in large part relies on the conclusions of Doherty, and is thereby flawed and inadmissible in those instances where she (and he) relied on the Gamboa Tables. Further, Verzilli fails to consider statistically valid work life data such that his conclusions are unsupported, inflated, and would only serve to confuse the jury. His opinions, too, should be excluded.

## II. LAW AND ARGUMENT

Plaintiffs, as the proponents of expert evidence, have the burden of establishing admissibility of Doherty and Verzilli's opinions.[3] Plaintiffs must show the experts' testimony

---

[2] *See*, e.g., *Noel v. Inland Dredging Company, LLC, et al.*, No. 17-1989, 2018 WL 1911821 (E.D. La. April 23, 2018); *Luwisch v. American Marine Corporation*, 17-3241, 2018 WL 3019019 (E.D. La. June 18, 2018).
[3] *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275-76 (5th Cir. 1998).

complies with Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b) the testimony is based on sufficient facts or data;
>
> c) the testimony is the product of reliable principles and methods; and
>
> d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 thus implicates three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.[4] Courts are charged to act as a "gatekeeper" of expert testimony and must ensure that the testimony is both reliable and relevant, as set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 506 U.S. 579, 590 (1993).[5] Neither Doherty nor Verzilli's proposed testimony meets these standards, and their testimony should be excluded accordingly.

### A. DOHERTY'S TESTIMONY IS IRRELEVANT AND WOULD THEREBY ONLY SERVE TO CONFUSE THE JURY

Doherty offers opinions as to each Plaintiff that the actions or inactions of LSU caused or contributed to their current psychological state (in most cases, in her opinion, PTSD), which in turn has caused a measurable wage loss that she attempts to quantify. Setting aside for the moment all other issues with her methodology, she has essentially admitted that none of the opinions she

---

[4] *Urda v. Valmont Industries, Inc.*, 561 F.Supp.3d 632, 636–37 (M.D. La. 2021) (citing *Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010)).

[5] *Daubert v. Merrell Dow Pharm., Inc.*, 506 U.S. 579, 590 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

could offer are actually relevant to the issues remaining in this case. For virtually every plaintiff she confirmed that she was neither asked to—nor did she—evaluate any actions or inactions by LSU *leading up to* the alleged assault or other event of which any given Plaintiff has complained.[6]

Plaintiffs brought this action against the Board under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. 1681, *et seq*., alleging claims for (1) post-reporting deliberate indifference; (2) hostile environment; (3) retaliation; and (4) pre-assault heightened risk. (R. Doc. 1) On March 31, 2023, the Court dismissed Plaintiffs' hostile environment and retaliation claims, as well as the post-reporting deliberate indifference claims of all Plaintiffs except for Plaintiff Hovis. (R. Doc. 340) Thus, the only remaining claims in this case are for pre-assault heightened risk by all Plaintiffs and Plaintiff Hovis's post-reporting deliberate indifference claim relating only to John Loe's alleged no-contact order violation. But Doherty's report and opinions do not address those remaining claims.

Doherty did not analyze any pre-incident actions or inactions of LSU whatsoever, and thereby is not in a position to testify as to what damages those actions or inactions may have caused. She is also, then, not in a position to distinguish or allocate between damages (if any) caused by post-incident conduct of LSU and damages (if any) caused by pre-incident conduct of LSU. Her over 290 pages of reporting in this matter involve solely her analysis of actions that are prescribed (and thereby that cannot serve as a basis for liability) and her attribution of alleged damages to *those* actions. Her opinions and testimony are irrelevant as to the remaining issues in the case and have no probative value whatsoever in this litigation. The Board would clearly be

---

[6] As to: Andries (Doherty Day 1 p. 171); Brennan (Doherty Day 1 p. 198); Hovis (Doherty Day 1 p. 239); Johnson (Doherty Day 2 pp. 350-351); Lewis (Doherty Day 2 pp. 299-300); Owens (Doherty Day 1 pp. 144-145); Richardson (Doherty Day 2 p. 315); and Robertson-Mize (Doherty Day 2 p. 323). Doherty similarly did not address pre-incident conduct of LSU or its relation to damages in her reports for Lewis or Jane Doe. In short, the only remaining viable causes of action in this case fall outside the scope of what she was engaged to do, outside the scope of her reports, and outside the scope of anything on which she can offer a valid opinion given her lack of evaluation of the issue.

prejudiced by the admission of such evidence, as the jury would be confused as to why an expert is being allowed to quantify damages on claims that have already been dismissed by the Court.

One of the threshold requirements of Rule 702 is that the proposed testimony assist the trier of fact to determine a fact *in issue*. Here, it will not. Doherty's testimony should be excluded in its entirety as to all Plaintiffs. In the alternative, it should be excluded its entirety on the basis of relevance as to all Plaintiffs except for Hovis, and in that instance excluded or limited as to Hovis for the reasons further set forth below.

### B. DOHERTY SHOULD BE LIMITED FROM OFFERING ANY TESTIMONY REGARDING CAUSATION

Doherty testified that she was not engaged to provide a causation analysis; she was asked to perform a vocational rehabilitation analysis. (Doherty Day 2 p. 315) She was disclosed essentially as a vocational rehabilitation and life care planning expert. (R. Doc. 244) As set forth above, she did not evaluate any action or inaction of LSU prior to the incidents at issue and cannot reliably opine as to causation, particularly with regard to any pre-incident heightened risk (if any). She further confirmed that it is outside the scope of vocational rehabilitation to offer medical diagnoses and that she only does so pursuant to other licenses (*i.e.* for which she was not disclosed as an expert in this case). (Doherty Day 1 pp. 44-45)

Doherty admits that she is not a Title IX expert and confirmed that she would not offer any Title IX opinions at trial. (Doherty Day 2 p. 306) She was not engaged to evaluate causation (medical or otherwise), did not undertake a sufficient analysis that would allow her to properly address causation, and causation is outside of the scope of Plaintiffs' disclosure of her role in this

case under Rule 26.[7] She should therefore be limited from offering any causation opinions at trial, medical or otherwise, as to any action or inaction of LSU at any time.

    C.    **ALL OPINIONS RELYING UPON THE GAMBOA TABLES SHOULD BE EXCLUDED**

Doherty relies on the Gamboa Tables in forming her opinions on multiple plaintiffs, namely: Owens, Andries, and Lewis. She concludes based on data utilized in those tables that each of those Plaintiff's participation in the labor force will be significantly reduced given their "disability." Those tables, though, have been determined to be limited in usefulness because they group a wide range of disabled persons with "little to no regard for the type or permanency of the injury, work history, or the ability or intention to return to work."[8] They offer nothing by which the finder of fact could reliably draw an inference as to work life of a specific person, such as these three Plaintiffs.[9]

The data on which the Gamboa Tables are based is derived from government surveys of American households, including the American Community Survey (ACS), produced by the U.S. Census Bureau. These surveys measure various labor-force characteristics like employment, earnings and work hours. Their primary purpose is to assist legislatures and government agencies in formulating and evaluating policies and programs. Their purpose is not to be used by plaintiff's experts in litigation to offer opinions as to future economic loss.[10]

---

[7] Again, Plaintiffs named a psychiatrist in their initial witness list but failed to produce any expert report from him. They apparently chose to try to have Doherty address medical causation and diagnoses but without proper disclosure and in a way that is materially deficient for the reasons set forth herein.

[8] *Noel v. Inland Dredging Company, LLC, et al.*, No. 17-1989, 2018 WL 1911821, at *2, (E.D. La. April 23,2018), citing *Lackey v. Robert Bosch Tool Corp.*, No. 16-29, 2017 WL 129891, at *10 (E.D. Ky. 2017).

[9] *Id*.

[10] *See*, e.g., https://www2.census.gov/programs-surveys/demo/guidance/disability/cpstableexplanation.pdf (accessed on September 18, 2023). *See*, also, Thomas Ireland: Why the Gamboa-Gibson Disability Work-Life Expectancy Tables Are Without Merit, 15 J. LEGAL ECON. 105, 106 (2009).

Doherty admits that the data gathered by the Census Bureau is based on the responders' subjective perception in responding to certain broad questions, a perception that we cannot validate or test in any material way.[11] (Doherty Day 1 pp. 132-135) She also admits that particularly with regard to emotional or psychological issues, a perceived disability can change over time with treatment. (Doherty Day 1 pp. 139-140) And yet her methodology lumps the three Plaintiffs at issue here in with a large, untested pool of persons who subjectively perceive themselves to have some sort of disability (the nature and extent of which is undisclosed) and assumes that their disability will remain for the entirety of their work life. There is simply no basis for that conclusion.

Use of the Gamboa Tables to reliably estimate an individual plaintiff's wage loss lacks acceptance in the academic community. As noted above, the government agencies that collect and disseminate the data relied upon caution that it was not gathered for that purpose and its reliability for use in that matter is not certain. As stated in an article in the Journal of Forensic Vocational Analysis, "prior peer-reviewed research has determined that any earnings capacity or worklife expectancy model which assumes that Census and ACS disability measures are permanent conditions are empirically invalid as individuals can transition into and out of a disability."[12] The Court should follow its own precedent and continue to exclude this speculative and unreliable methodology, and all opinions by Doherty or Verzilli that are based on it.

---

[11] Doherty testified that for what is deemed "Severe Disability" by the Gamboa Tables several of the factors would have conceivably required a physician's evaluation, administrative body's determination, or both, such as persons receiving SSDI. But she did not place any of the three Plaintiffs at issue in the "Severe Disability" category and confirmed, then, that her opinions effectively compared them against a large pool of persons who perceived themselves to suffer some sort of undisclosed disability, without any indication whatsoever that a licensed medical provider had ever confirmed the existence or extent of same. (Doherty Day 1 p. 134)

[12] Beveridge, et al., Critique of the American Community Survey as a Valid Instrument for Estimating Future Earning Capacity, 17 JOURNAL OF FORENSIC VOCATIONAL ANALYSIS, Vol. 1, p. 7.

PD.43121734.1

### D. DOHERTY'S OPINIONS AND TESTIMONY SHOULD BE EXCLUDED BECAUSE SHE FAILED TO PERFORM PROPER ANALYSES AS TO EARNING CAPACITY

Doherty confirmed that in performing her vocational rehabilitation analyses she did not perform a labor market survey and did not analyze whether any given Plaintiff was maximizing their post-accident earning potential. (Doherty Day 2 pp. 297-299) She performed no rigorous evaluation as to what any given Plaintiff's current earning potential actually is; she simply assumed (without analysis) that they are currently meeting it. Failure to properly analyze the market, each Plaintiff's transferrable skills, and potential earnings ignores the obligation of each Plaintiff to mitigate their alleged damages, and thereby premises a conclusion on the wrong legal standard. Doherty's conclusions are based on insufficient data and are thereby unreliable and inflated, and should be excluded.

### E. VERZILLI'S OPINIONS AND TESTIMONY SHOULD BE EXCLUDED TO THE EXTENT RELIANT UPON DOHERTY, AND FURTHER BECAUSE HE FAILED TO PERFORM PROPER ANALYSES AS TO WORK LIFE EXPECTANCY

Verzilli testified that his opinions are reliant upon the vocational analyses of Doherty to reach his conclusions. (Verzilli pp. 29-30) He likewise relied on Doherty as to each Plaintiff's earning history. (Verzilli p. 33) To that extent his opinions should be excluded because they are based on irrelevant, inadmissible, and unreliable evidence as set forth in the sections above.

Further, Verzilli failed to consider any reliable work life tables in calculating alleged reduced earning capacity, instead choosing to assume that each Plaintiff would work, uninterrupted, until the age of 67 under the guise of that being the "normal retirement age." He acknowledged that statistical work life tables that have been proven to be valid (*i.e.* unlike the Gamboa Tables) suggest that most people do *not* work uninterrupted until the "normal retirement

- 8 -

age," but testified that he is offering an opinion based on "potential" rather than "realization." (Verzilli pp. 50-56)

Plaintiffs are required to prove every element of their damages by a preponderance of the evidence. It follows, then, that they must establish that but for some action or inaction of LSU, they *more probably than not* would have achieved a specific work life. The work life actuarial tables take into account the fact that people do not exist in a vacuum, no one is 100% healthy throughout their life but for one intervening event, and there are multiple interruptions to job placement that people face throughout their lives, whether due to illness, injury, personal choice, or job transition. Verzilli, despite purporting to be an economic expert, conveniently ignores all of this (and, apparently, all non-LSU action/inaction related conditions from which any of these Plaintiffs suffer) and assumes that they all would have worked every single day until the age of 67 but for LSU. There is no reasonable, reliable, or objective basis for that assumption, and Verzilli's computations are therefore likewise unreliable and should be excluded.

### III. CONCLUSION

For the reasons asserted herein, the Court should grant the Board's Motion and exclude or limit Doherty and Verzilli's testimony accordingly.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: _____
Susan W. Furr, Bar Roll No. 19582
Shelton Dennis Blunt, Bar Roll No. 21230
Karleen J. Green, Bar Roll No. 25119
Gregory T. Stevens, Bar Roll No. 29436
Jessica Coco Huffman, LA Bar No. 30445
Michael B. Victorian, Bar Roll No. 36065
Molly McDiarmid, Bar Roll No. 36426

II City Plaza | 400 Convention Street, Suite 1100  
Baton Rouge, Louisiana 70802  
Telephone: 225 346 0285  
Facsimile: 225 381 9197  
Email: susie.furr@phelps.com  
Email: dennis.blunt@phelps.com  
Email: karleen.green@phelps.com  
Email: greg.stevens@phelps.com  
Email: jessica.huffman@phelps.com  
Email: michael.victorian@phelps.com  
Email: molly.mcdiarmid@phelps.com  

ATTORNEYS FOR THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on September 18, 2023 with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

*/s/ Gregory T. Stevens*
Gregory T. Stevens