CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.

                    CASE NO.: 3:21-CV-00242
VERSUS            JUDGE WENDY B. VITTER
                    MAG. JUDGE JOHNSON

BOARD OF SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL AND MECHANICAL
COLLEGE

  * * * * * * * * * * * * * * * * * * * *

DAY 2 OF THE DEPOSITION OF

JOSEPHINE DOHERTY

TAKEN VIA ZOOM, BATON ROUGE, LOUISIANA, ON

JULY 18, 2023, BEGINNING AT 1:45 P.M.

REPORTED BY:
    JENNIFER W. PICKETT
    CERTIFIED COURT REPORTER
    CERTIFICATE NUMBER 29011

Page 277

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

A P P E A R A N C E S

Representing: LSU Board of Supervisors
GREGORY STEVENS, ESQ.
MOLLY MCDIARMID, ESQ.
Phelps Dunbar, LLP
400 Convention Street, Suite 1100
II City Plaza
Baton Rouge, Louisiana 70802
greg.stevens@phelps.com


Representing: Plaintiffs
KAREN TRUSZKOWSKI, ESQ.
Temperance Legal Group
503 Mall Court #131
Lansing, Michigan 48912
karen@temperancelegalgroup.com

1      she was doing.
2  Q   Do any of your reports for the ten
3      plaintiffs in this case contain a labor
4      market analysis at all?
5  A   No, because I believe each of the persons
6      is working and I would complete a labor
7      market analysis if I had people who
8      weren't working, who were saying they
9      couldn't work.  But in this particular
10     case, I had a woman saying I've bounced
11     around from these different jobs.  I'm in
12     this current job.  I want to try to make
13     this career my career.  I have no
14     business telling her no, go work as a
15     teacher or as a receptionist.
16 Q   I accept that.  People can make a choice
17     to do what they want to do and pursue
18     what career they want.  I understand
19     that.  But as an expert offering opinions
20     to the court about a value of earning
21     potential moving forward, isn't it
22     important to establish that the offset
23     that you're using is maximized?  In other
24     words, isn't there an obligation to
25     mitigate damages where they should be

Page 298

1        going and maximizing their earning
2        potential?
3   A    And the problem in this particular case
4        is that Jade experienced this harm while
5        she was getting her training, while she
6        was in her undergraduate career and it
7        happened over a course of time.  She
8        fortunately was able to graduate with her
9        degree, but she essentially has an
10       aversion to going back to school.  She's
11       doing her best.  She's in a professional
12       job and all I have is her history at her
13       young age of -- she'll be twenty-five
14       this December.  That's all I have is her
15       career thus far so this is the best
16       estimation based upon her rather shallow
17       work history and her educational
18       attainment.
19  Q    **All right.  I'm going to object to the**
20       **responsiveness of that and I'm going to**
21       **ask my question again.  If you could**
22       **answer my question, I'm happy to let you**
23       **speak about whatever you want to speak**
24       **about to qualify it.  But my question was**
25       **actually pretty specific.  As an expert**

Page 299

```
 1      offering opinions to a court or a jury
 2      about a value of wage loss or impaired
 3      earning capacity in the future, isn't it
 4      important to establish what the current
 5      maximized earning potential of a
 6      plaintiff is so that your numbers will be
 7      accurate?
 8   A  No, I believe the most accurate
 9      information is her educational attainment
10      and her current earnings and moving
11      forward based upon her disability status.
12   Q  So, setting Ms. Lewis aside, your answer
13      to my broader question, which was
14      applicable to all of the plaintiffs, is
15      no?
16   A  All we have is the information on each
17      case.  And again, based upon Reed 2000,
18      all we could do is say what were her
19      capabilities pre-injury and what are they
20      now?
21   Q  Okay.  Were you asked to evaluate any
22      action or inaction by LSU prior to Ms.
23      Lewis' -- I guess prior to 2017 and to
24      comment on or evaluate how those affected
25      Ms. Lewis in any way?
```

Page 300

```
 1   A    No.
 2   Q    Karen mentioned the tennis issue.
 3        There's some mention in your report about
 4        a desire to become a tennis pro.  I think
 5        that at some point you discussed or even
 6        on page thirty-one, you set out some
 7        large numbers about life prize awards for
 8        WTA professionals.  Tell me about that
 9        analysis and how it informed your work in
10        this case.
11   A    Basically I used information contained
12        within the public domain in terms of data
13        put forth by the Women's Tennis
14        Association and what those ranges are.
15        But the heart -- and I mentioned those
16        because that was important to her and she
17        really felt as though she had the
18        potential to become a professional tennis
19        player had this not happened to her.  My
20        analysis, however, was much more
21        conservative, as I specifically looked at
22        her earnings based upon having a
23        disability and not having a disability
24        and not in the area of professional
25        tennis so that $850,000 that I cited was
```

```
 1      not support her in terms of assuring the
 2      Title IX process happened in a timely
 3      manner, assuring that ▮▮▮▮▮▮▮ was
 4      reprimanded in a timely manner, so I know
 5      that impacted her as well.
 6  Q   That's based on what she told you?
 7  A   Right, in conjunction with reading the
 8      records.
 9  Q   Were there any specific records that
10      informed you about Title IX issues?  We
11      established yesterday it's not really
12      your area of expertise?
13  A   No.  I'm not a Title IX expert, no.
14  Q   So, as far as what the processes were or
15      should've been, that's not really
16      something you can comment on.  You're
17      just going off of what's in records and
18      what Ms. Lewis told you; correct?
19  A   Correct.
20  Q   So, you wouldn't be offering opinions on
21      any of that at trial?
22  A   Correct.
23  Q   Let's talk about Ms. Richardson next,
24      please?
25  A   Okay, so you just want me to go ahead?
```

Page 315

1  was on that path and I do believe her,
2  that she plans on continuing with
3  avoidance.
4  Q  **She plans on continuing with avoidance?**
5  A  In terms of not living in a big urban
6  city and working in a larger institution.
7  Q  **Were you asked to evaluate any of the**
8  **actions or inactions of LSU leading up**
9  **to, I guess, the initial event in 2015**
10 **and how they impacted causation?**
11 A  No.
12 Q  **With regard to Ms. Richardson, how do you**
13 **distinguish between the actions of**
14 **whoever the unnamed recruit was,** ▇▇▇▇
15 ▇▇▇ **,** ▇▇▇▇▇▇▇▇ **, any of these people**
16 **and the actions or inactions of LSU with**
17 **regard to causing or contributing any**
18 **sort of wage impairment?**
19 A  And again, the perpetrators acted like
20 perpetrators and they had a complete
21 disregard for Ms. Richardson's well-
22 being.  But the persons who were educated
23 and supposed to be there to support her
24 and guide her and educate her and were
25 not.  So again, I was retained to do a

```
                                                   Page 323
 1       she left Louisiana State University, she
 2       had been working in food service or
 3       similar-type careers.  The last she
 4       attended school was I believe -- I don't
 5       want to mis-speak -- was in the fall of
 6       2017.  So, she has been out of school for
 7       about six years from the present time.
 8       Actually, that fall of 2017, she withdrew
 9       from all her courses.  So, the last she
10       completed any courses was in the third
11       semester of her 2016-'17 year.
12   Q   She's working towards a degree now
13       online; right?
14   A   At the time we met she had just started
15       taking courses.
16   Q   Were you asked to evaluate any action or
17       inaction of LSU prior to January 22nd,
18       2016 for how it impacted Ms. Robertson's
19       outcome or wage loss?
20   A   No.
21   Q   So, it looks like Ms. Robertson has
22       struggled with narcotics abuse, struggled
23       with some other issues and you mentioned
24       -- and I don't -- set Ms. Robertson aside
25       for a second.  It just made me think of
```

Page 350

```
 1      circumstances.  I don't think she should
 2      change career paths.  Tennis has been the
 3      only career she's ever wanted, something
 4      appended to tennis.
 5  Q   In light of the fact that that's your
 6      view, you in fact did not consider other
 7      alternative employment for her; right?
 8  A   No, because if you give someone a career
 9      that they love, they never have to work a
10      day in their life and at least she's
11      working in tennis in some capacity.
12  Q   You issued a rebuttal report April 13th,
13      2023.  It's two pages, addressed to Ms.
14      Abdnour.  I'll attach it as Exhibit 23.
15      (Johnson rebuttal report attached as
16      Exhibit 23.)  And again, you were just
17      evaluating Ms. Favaloro's report here.
18      You did not have a copy of Doctor
19      Meisler's?
20  A   Correct.
21  Q   And I think I forgot to ask you with
22      regard to this was one, you were not
23      asked to evaluate any of the actions or
24      inactions of LSU leading up to the date
25      of Ms. Johnson's first complaint to
```

Page 351

```
 1      evaluate any impact they would've had on
 2      her outcome; right?
 3  A   Correct.
 4  Q   With regard to Ms. Favaloro's report,
 5      what was your opinion there?
 6  A   As stated, I indicate that my opinions
 7      remain unchanged.  That basically Ms.
 8      Favaloro relied upon the psychological
 9      opinions of Doctor Meisler and did not
10      take into account Ms. Johnson's inability
11      to progress into a career that she
12      aspired, that the injury occurred while
13      Ms. Johnson was matriculating and
14      therefore a Reed 2000 analysis would be
15      appropriate in that there was a fact,
16      PTSD, that disrupted Ms. Johnson's
17      profession toward her goals.  Ms.
18      Favaloro spoke about transferable skills
19      but the problem is the injury occurred
20      when Ms. Johnson was still in school so
21      instead of completing transferable skills
22      analysis, it's more appropriate to look
23      at she was prevented from pursuing the
24      career that she would've aspired to
25      attain.
```

Page 357

C E R T I F I C A T I O N

I, Jennifer Pickett, Certified Court Reporter in and for the State of Louisiana, Certificate No. 29011, which is current and in good standing, as the officer before whom this testimony was taken, do hereby certify that the above and foregoing was taken under the authority of R.S. 37:2554; that the foregoing was taken by the undersigned as hereinbefore set forth in the foregoing pages; that it was reported by me in the stenomask method, was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding; and that I informed about the complete arrangement, financial or otherwise, with the person or entity making arrangements for deposition services; and that I have acted in compliance with La. Code of Civil Procedure Article 1434; that I am no actual knowledge of any prohibited employment or contractual relationship, direct or indirect, between a court reporting firm and any party litigant in this matter nor is there any such relationship between myself and a party litigant in this matter. I am not related to counsel or to the parties herein, and I am in no way concerned with the outcome thereof.

_____
Jennifer Pickett, C.C.R.

# 29011