CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL
                       CASE NO.: 3:21-CV-00242
VERSUS              JUDGE WENDY B. VITTER
                       MAG. JUDGE JOHNSON

BOARD OF SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL AND MECHANICAL
COLLEGE

   * * * * * * * * * * * * * * * * * * * *

ZOOM DEPOSITION OF

ANDREW VERZILLI

TAKEN VIA ZOOM, BATON ROUGE, LOUISIANA, ON

MAY 10, 2023, BEGINNING AT 3:01 P.M.

REPORTED BY:
    JENNIFER W. PICKETT
    CERTIFIED COURT REPORTER
    CERTIFICATE NUMBER 29011

EXHIBIT C

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

A P P E A R A N C E S

Representing: LSU Board of Supervisors
GREGORY STEVENS, ESQ.
MOLLY MCDIARMID, ESQ.
Phelps Dunbar, LLP
400 Convention Street, Suite 1100
II City Plaza
Baton Rouge, Louisiana 70802
greg.stevens@phelps.com


Representing: Plaintiffs
KAREN TRUSZKOWSKI, ESQ.
Temperance Legal Group
503 Mall Court #131
Lansing, Michigan 48912
karen@temperancelegalgroup.com

I N D E X

EXAMINATION OF ANDREW VERZILLI:        PAGE:

By MR. STEVENS:                          5


                    * * * * *

Stipulation:                             4

Reporter's Page:                       120

Certification:                         121

                    * * * * *


MARKED EXHIBITS:                       PAGE:

(Exhibits not received by reporter)
Exhibit A, CV:                          12
Exhibit B, testimony list:              12
Exhibit C, Andries report:              64
Exhibit D, Lewis report:                83
Exhibit E, Owens report:                83
Exhibit F, Robertson report:            83
Exhibit G, Richardson report:           89
Exhibit H, Bradford report:             95
Exhibit I, Kitch report:                98
Exhibit J, Hovis report:               103
Exhibit K, Brennan report:             109
Exhibit L, Johnson report:             113

```
 1        plaintiff-specific, what information did
 2        you obtain from those that you used in
 3        your work for this case?
 4   A    More of just why we're here.  I didn't --
 5        there was not really -- it's a subject
 6        that's hard to -- I kind of try to just
 7        be as general with the issues for each of
 8        the plaintiffs but I read the facts so I
 9        know what's happened and why we're all
10        here.
11   Q    But does that background change your
12        approach as an economist to your work in
13        this case?
14   A    No.
15   Q    You are not, I assume, a medical
16        professional; correct?
17   A    I am not a medical.
18   Q    So, you don't intend to offer any reports
19        or -- excuse me -- any opinions in this
20        case about any particular plaintiff's
21        condition or symptoms or diagnoses; is
22        that fair?
23   A    That's correct.
24   Q    What about restrictions, including work
25        restrictions?  Would you offer any
```

```
 1        opinions as to the those?
 2   A    No, I'm just relying on Ms. Doherty for
 3        the vocational aspect for each of the
 4        plaintiffs.
 5   Q    And I think you anticipated my next
 6        question.  I think you answered it but
 7        just to be clear, you're also not
 8        offering any opinions about vocational
 9        rehabilitation or access to the job
10        market.  You are basing your opinions on
11        Ms. Doherty's findings in that regard; is
12        that fair?
13   A    That's correct.
14   Q    So, part and parcel to that is if any of
15        those assumptions or findings by Ms.
16        Doherty changed or were rejected, that
17        would obviously change your valuations in
18        this case; right?
19   A    Yes, if Ms. Doherty does a supplement and
20        to the extent -- if I change something in
21        an assumption that I made based on her
22        vocational opinion, then my opinion will
23        change.
24   Q    Did you get any information from the
25        answers to interrogatories for many of
```

```
 1  A    No, they were the actual transcripts.
 2  Q    With regard to earning history or wage
 3       records or employment records, did you
 4       get any of that for any of these
 5       plaintiffs?
 6  A    I did not.
 7  Q    And so, to the extent you have any
 8       assumptions about that, that would've
 9       also come from Ms. Doherty's work?
10  A    That's correct.
11  Q    Again, I'm open to ideas here.  It seemed
12       like in a couple of these there was an
13       approach, a different methodology that
14       was used or at least -- I guess I'm
15       wondering if there's a way to group these
16       into groups that used similar
17       methodologies and we can sort of attack
18       them in that order rather than just
19       bouncing around?
20  A    Yeah.  I think we have -- there was the
21       reduced years approach, so there were
22       some plaintiffs where Ms. Doherty opined
23       that what happened is going to affect how
24       long the -- they're going to lose labor
25       force years.  Then we also have a couple
```

```
 1        between potential and realization --
 2        realized earnings.
 3   Q    Mr. Verzilli, you're familiar with the
 4        concept.  I'm quite positive you've been
 5        in cases where you've been presented with
 6        competing opinions based on work life
 7        estimates; right?
 8   A    Yes, I did but you cut off for a second
 9        so can you just repeat your question.
10   Q    Yes, I said I'm quite positive you've
11        been involved in cases where you've been
12        presented with the concept of basing an
13        analysis off of work life estimates;
14        correct?
15   A    Yes.
16   Q    Have you ever issued a report basing your
17        opinions off of work life estimates?
18   A    No, I have made assumptions as to
19        different retirement ages in certain
20        instances, like a federal law enforcement
21        officer or railroad workers that make it
22        thirty-sixty or school teachers or like
23        municipal workers that have early
24        retirement prohibitions.
25   Q    Would you agree with me that the work
```

1      life estimates and statistics are based
2      on the concept that it is more probable
3      than not for most people that they will
4      experience an interruption in the
5      workforce between a given time and when
6      they retire?
7  A   Sure, but that doesn't again take away
8      from what potential is and that's what
9      we're looking at.  What is the earning
10     capacity.  They measure realized
11     earnings.  The question -- I mean, I
12     don't want to -- they factor in that
13     someone may not be in the labor market
14     for a variety of reasons.
15 Q   Let me just ask it this way.  You're
16     certainly not going to offer any opinions
17     about causation in this case; right?
18 A   Absolutely, yes.  I'm not here -- I can't
19     give a causation opinion.
20 Q   With regard to what you are offering an
21     opinion on, is it your understanding that
22     you are supposed to be quantifying the
23     loss that each of these plaintiffs
24     experienced because of certain action by
25     the defendants?

1  A   I'm here to give a loss of earning
2       capacity as it relates to those conducts,
3       yes -- how that affected each plaintiff.
4  **Q**   **And the reality is that statistically**
5       **most workers experience interruptions in**
6       **their earning potential that aren't**
7       **related necessarily to a loss or an**
8       **accident or something that's in**
9       **litigation; isn't that right?**
10  A   Can you repeat the question.
11  **Q**   **I mean that's what the work life**
12       **estimates do, right?  Not everybody is in**
13       **litigation, right?  Not everyone has**
14       **experienced the type of things that these**
15       **plaintiffs are experiencing; correct?**
16  A   That's correct.
17  **Q**   **And the work life estimate tables factor**
18       **all of that in and the reality is that**
19       **most people experience interruptions in**
20       **their work life and it's because people**
21       **change jobs, lose jobs, get sick, things**
22       **of that nature; right?**
23  A   That can be true but the earning capacity
24       is to look at the production of income.
25       That's my understanding what the damages

```
 1        are.  So, the question is what is
 2        someone's potential and the impact that
 3        an event may have on that potential.
 4   Q    And you're assuming as part of your
 5        numbers that that potential would have
 6        been fully realized with no
 7        interruptions, working all the way to
 8        what you characterize as the normal
 9        retirement age but for the actions at
10        issue in this lawsuit.  That's what your
11        assumption is; right?
12   A    No, I never said realized earnings.  I
13        said this is the loss of her earning
14        capacity, their earning capacity.
15   Q    Would you agree that someone's earning
16        capacity would go down if they had an
17        illness that kept them from the
18        workforce?
19   A    Their realized earnings would be but what
20        is that illness.  I'd have to have more
21        information to see what that --
22   Q    I guess my concern, Mr. Verzilli, is it
23        certainly seems like you are projecting a
24        lack of realization of certain earning
25        capacity onto the defendants in this case
```

```
 1         that could be caused by other issues; is
 2         that --
 3   A     No, this is how I always -- this is what
 4         I look at in loss of earning capacity.
 5                  MS. TRUSZKOWSKI:
 6                       Greg, I'm going to object to
 7                       that question.  You're asking him
 8                       to speculate but Andy, you can go
 9                       ahead and respond.
10   A     I have to make an assumption about
11         retirement and I make an assumption of
12         retirement age depending again, as we
13         talked, and my assumption of normal
14         retirement has met Daubert challenges
15         several times.  My understanding is it's
16         the loss of that earning capacity that
17         the factfinders can consider.  I haven't
18         given an opinion of what should be
19         awarded or they're entitled to anything.
20         I'm looking at -- here's ten plaintiffs
21         and here's each one of their, based on
22         the case opinion, what their pre-injury
23         capacity -- absent the injuries what
24         their capacity was and the impact this
25         has had on them and I have to make
```

```
 1        assumptions but the question is, normal
 2        retirement is a reliable assumption as to
 3        when someone has potential to work.
 4   BY MR. STEVENS:
 5   Q    What peer-reviewed articles do you have
 6        to support that concept?
 7   A    What peer-reviewed articles?  I recited
 8        the data but you'd have to go back to
 9        looking at human capital and other texts
10        -- Braveman's one, and they talk about
11        earning capacity is a full-time, full
12        work year, is what we look at.  That's
13        just what it is.  Earning capacity's the
14        potential to produce income.
15   Q    Again, you said Braverman is one?
16   A    Braveman, yes.
17   Q    Braveman?  Excuse me.
18   A    Again, it's late in the day but even when
19        you look at the work life tables, the
20        upper-bound people, they go beyond normal
21        retirement age and that's really -- the
22        question is what are each of these
23        individuals' potentials.  They have the
24        potential to work to 67.  Will they
25        realize that?  We don't know.  We're
```

```
 1         sitting here today in 2023 and there's
 2         forty years plus of some of these
 3         plaintiffs into the future but clearly
 4         they have the potential to earn, to
 5         produce this income to normal retirement
 6         age.
 7   Q     So, you have not considered in your
 8         analysis whether or not it is
 9         statistically probably that any of these
10         plaintiffs would have actually realized
11         what you deem to be their potential
12         earning capacity despite the allegations
13         in this case?
14   A     That's right.  I don't think that -- my
15         understanding is I don't know if that's
16         the measure of damages.  Loss of earning
17         capacity is my understanding.
18   Q     That's not what I asked.  I asked in your
19         methodology whether or not you had even
20         considered that and it doesn't; right?
21         Your methodology does not take that into
22         account.
23   A     That's correct.
24   Q     And again, as far as any peer-reviewed
25         journals or articles or treatises that
```

C E R T I F I C A T I O N

    I, Jennifer Pickett, Certified Court Reporter in and for the State of Louisiana, Certificate No. 29011, which is current and in good standing, as the officer before whom this testimony was taken, do hereby certify that the above and foregoing was taken under the authority of R.S. 37:2554; that the foregoing was taken by the undersigned as hereinbefore set forth in the foregoing pages; that it was reported by me in the stenomask method, was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding; and that I informed about the complete arrangement, financial or otherwise, with the person or entity making arrangements for deposition services; and that I have acted in compliance with La. Code of Civil Procedure Article 1434; that I am no actual knowledge of any prohibited employment or contractual relationship, direct or indirect, between a court reporting firm and any party litigant in this matter nor is there any such relationship between myself and a party litigant in this matter.  I am not related to counsel or to the parties herein, and I am in no way concerned with the outcome thereof.

                                _____
                                Jennifer Pickett, C.C.R.

                                        # 29011