UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.

VERSUS

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND
MECHANICAL COLLEGE

CIVIL ACTION

No. 21-242-WBV-SDJ

**ORDER**

Before the Court is Plaintiffs' Motion for Sanctions (R. Doc. 325) against Defendant Board of Supervisors for Louisiana State University for failure to preserve relevant evidence. For the reasons given below, the Court grants Plaintiffs' request in part and denies it in part.[1]

**I.   BACKGROUND**

This case arises from claims over the effectiveness of LSU's Title IX and sexual misconduct response program, including but not limited to allegations of contradictory policies, failure to investigate, and insulating athletics programs from claims of sexual misconduct.[2] At the time of some of the events giving rise to this suit and at the time the Complaint was filed, Julia Sell and Michael Sell were co-head coaches of the LSU women's tennis team. (R. Doc. 1 at 10). The original Complaint discusses the Sells at length, alleging the Sells' failure to report assaults that they were informed of (R. Doc. 1 at 41-42), harassment of students (R. Doc. 1 at 50-51), and encouraging others to ignore abuse and assaults (R. Doc. 1 at 51).

---

[1] Plaintiffs request specific sanctions, including fees & costs and the Court's adoption of an adverse inference against Defendant. The Court finds only some of these sanctions appropriate.
[2] This description is an oversimplification in favor of efficiency, considering the extensive record and the limited question at issue in this order.

The instant motion is about data from LSU-issued cell phones used by the Sells in the course of their employment, more specifically, text messages that Plaintiffs assert could not be retrieved from any source other than the phones themselves. Notably, the Complaint explicitly mentions text messages between at least one Plaintiff and the Sells. (R. Doc. 1 at 51). The Sells and other defendants were dismissed without prejudice on January 19, 2022 (R. Doc. 187), but the facts surrounding their involvement remain relevant to ongoing litigation against the Board—the sole remaining Defendant.[3]

In December 2021, Plaintiffs expressed concern over preservation of electronically stored information in a status conference with the Court and suggested a protective order to ensure preservation. The District Judge verbally instructed counsel to preserve ESI (R. Doc. 167 at 3), and later the Court entered the parties' Agreed ESI Order (R. Doc. 205, 207).

The Sells left their employment at LSU and returned their cell phones to the University around April 2022 (R. Doc. 327 at 3). Plaintiffs issued a subpoena to the Sells on July 9, 2022, requesting relevant documents and communications, including text messages from their LSU-issued cell phones. (R. Doc. 325-1 at 3-4). The Sells responded that they no longer had possession of the phones and thus could not provide the relevant phone data. (R Doc. 325-1 at 4). In early September 2022, following the Sells' responses, Plaintiffs contacted Defendant Board, seeking responsive data from the cell phones that were now in the University's possession. (R. Doc. 325-1 at 5). In late October, the Board informed Plaintiffs that the data sought was not available. (R. Doc. 325-1 at 5). The Parties continued communications about the data available from the mobile data provider, about who had custody of the cell phones at all times after the Sells returned them, and about why the Sells' data was no longer on the phones. (R. Doc. 325-1 at 6-9; R. Doc. 327 at

---

[3] *See* Plaintiffs' Brief, R. Doc. 325-1 at 2, citing references to the Sells throughout the Complaint.

4). In late January 2023, Defendant Board provided Plaintiffs' attorney with the physical cell phones for inspection, at which time Plaintiffs confirmed that both phones had been wiped of all data. (R. Doc. 325-1 at 9). The same day, Plaintiffs informed Defendant that Plaintiffs believed the failure to preserve this cell phone data was a violation of their Agreed ESI Order (R. Doc. 325-1 at 9), and they subsequently filed the instant Motion for Sanctions.

Neither party argues that the Sells' communications on their LSU-issued cell phones are not subject to discovery here nor that the cell phones and data therein do not constitute ESI. The only question at issue here is the preservation of that data and whether sanctions are appropriate.

## II.   LEGAL STANDARD FOR SPOLIATION

The rule governing spoliation of ESI provides a clear directive for deciding whether and which sanctions can be imposed on a party that fails to preserve ESI. Fed. R. Civ. P. 37(e).[4] The parties have nevertheless cited competing and misstated legal standards for spoliation sanctions. As a preliminary matter, the Court will first address this confusion and the appropriate standards for the matter at hand.

### A. Plaintiffs' Statement of Law

Plaintiffs start by presenting the full text of Federal Rule 37(e), but then almost immediately misstate the rule regarding specific sanctions. Plaintiffs state that in order to sanction a party the Court must find that evidence was destroyed with a culpable state of mind. (R. Doc. 325-1 at 11). To support this proposition, Plaintiffs cite cases that either do not involve ESI or strictly involve adverse inference sanctions.[5] A culpable state of mind *is* necessary for sanctions

---

[4] N.b., Fed. R. Civ. P. 37(e) was amended in 2015, as will be discussed below.
[5] Plaintiffs even say "Some District Courts also consider 'four predicate elements,' which substantially overlap with the three-part inquiry," where the *three-part inquiry* is the test set out in *Mixon v. Pohlman*, 2022 WL 2867091 (E.D. La. 2022) for determining whether adverse inference is appropriate, and the *four predicate elements* being the

of adverse inference, dismissal, or default judgment. Fed. R. Civ. P. 37(e)(2). But a court may impose "measures no greater than necessary to cure the prejudice" if it finds that evidence that should have been preserved was irrevocably lost because a party failed to take reasonable steps to protect it. Fed. R. Civ. P. 37(e), (e)(1). Plaintiffs' misstatement of the rule would have left them with no available sanctions if the Sells' cell phone data were not destroyed in bad faith. But no finding of intent is necessary to impose sanctions here—the Court may impose appropriate sanctions to cure even an inadvertent loss of information if it should have been preserved in anticipation of litigation. *Id.*

### B. Defendant's Statement of Law

Defendant states that spoilation strictly involves "*intentional* destruction of evidence." (R. Doc. 327 at 6) (citing cases, emphasis added in Defendant's brief).[6] Defendant states a similar test to the one incorrectly cited by Plaintiffs: Defendant's suggested test requires duty to preserve, intentional destruction, and a bad faith act. (R. Doc. 327 at 6) (citing *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 Fed. Appx. 565, 573 (5th Cir. 2020)). Defendant here makes the same misstep as Plaintiffs: the case from which this standard was taken is not one involving ESI. Again, per Rule 37(e), no intent is necessary to find a culpable failure to preserve ESI and take measures necessary to cure it.

---

requirements set out in Rule 37(e). These are, in fact, not a choice of overlapping tests that courts can apply, but instead two distinct standards.

[6] Defendants cite this definition of spoilation despite citing numerous cases that define spoilation with no reference to intent. *See, e.g., Thomas v. Tangipahoa Parish School Board*, 2016 WL 3542286 at *1 (E.D. La. 2016) ("Spoilation of evidence is the destruction or the significant and meaningful alteration of evidence.") (quoting *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015)), *Consolidated Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006) ("spoilation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'") (quoting *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)).

## C. Appropriate Standard for Spoliation

While Plaintiffs begin with a presumption that the evidence in question is, in fact, ESI, Defendants do not mention the concept of ESI in their statement of law at all. But they do admit that the litigation hold issued by LSU General Counsel "encompassed ESI, including text messages regarding the Plaintiffs". (R. Doc. 327 at 7). It is unclear from their argument, but statements like this—and a notable lack of argument otherwise—lead the Court to conclude Defendant does not contest the assertion that the evidence at hand is classified as ESI. Thus, there should be no question that a standard specific to ESI is the appropriate legal standard for evaluating the spoliation of data on the Sells' cell phones.

In 2006, the Advisory Committee on Civil Rules introduced Rule 37(e)[7] to address the loss of ESI through no active fault of the custodian. "Under rule 37([e]), absent exceptional circumstances, sanctions cannot be imposed for loss of electronically stored information resulting from the routine, good-faith operation of an electronic information system." Advisory Committee Note to the 2006 Amendment. This addition restricted the Court's ability to impose sanctions, but it did not *grant* any power to impose sanctions; therefore, under the 2006 rule, the Court's power to sanction loss of ESI arose from the Court's inherent authority to fashion remedies—the same as any other sanction.

In 2015, the rule was changed again. The 2015 amendment supplants inherent authority, explicitly authorizing specific sanctions, and does not interfere with or rely on state law standards for spoliation tort claims. Fed. Prac. & Proc. Civ. § 2284.2 (3d ed.). The 2015 rule requires that parties take reasonable steps to preserve ESI that is relevant to litigation. Fed. R. Civ. P. 37(e). In assessing reasonableness, courts may consider factor such as the extent to which parties knew of

---

[7] Originally adopted as 37(f).

and protected against risk of loss and proportionality of resources. Committee Notes on the 2015 Amendment.

The Court may sanction a party for failure to preserve, provided that the lost ESI cannot be restored or replaced through additional discovery. *Id.* Rule 37(e) makes two types of sanctions available to the Court. Under Rule 37(e)(1), if the adverse party has suffered prejudice from the spoliation of evidence, the Court may order whatever sanctions are necessary to cure the prejudice. But under Rule 37(e)(2), if the Court finds that the party "acted with the intent to deprive another party of the information's use in the litigation," the Court may order more severe sanctions, including a presumption that the lost information was unfavorable to the party or an instruction to the jury that it "may or must presume the information was unfavorable to the party."

Finally, the Court may also sanction a party for failing to obey a discovery order. Fed. R. Civ. P. 37(b). Sanctions available under Rule 37(b) include an order directing that certain facts be taken as established for purposes of the action, payment of reasonable expenses, and civil contempt of court.

### III. DISCUSSION

Plaintiffs seek sanctions under Rule 37(e)(1), 37(e)(2), and 37(b)(2) for Defendant's failure to preserve ESI and failure to comply with a court order. Defendant argues that it took reasonable steps to preserve evidence, that it did not act with intent to deprive Plaintiff of relevant evidence, and that Plaintiff fails to show prejudice due to the lost evidence. Defendant does acknowledge that data has been erased, but Defendant claims that Plaintiff could access the supposedly lost data through other means.

A. **Rule 37(e)(1)**

As stated above, the Federal Rules allow the Court to impose sanctions necessary to cure prejudice if electronically stored information (1) should have been preserved for litigation, and (2) because of a failure to take reasonable steps to preserve, (3) is lost, (4) cannot be restored or replaced through additional discovery, and (5) the loss prejudices another party.[8] Fed. R. Civ. P. 37(e), (e)(1).

### 1. *Duty to Preserve ESI*

"A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant" to future litigation. *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015); *see also* Fed. R. Civ. P. 37(e), advisory committee's note on 2015 amendment (stating that rule requires preservation of evidence when litigation is reasonably foreseeable). "A variety of events may alert a party to the prospect of litigation." Fed. R. Civ. P. 37(e), note on 2015 amendment. Here, the Court finds that the Board's duty to preserve evidence arose no later than July 7, 2021, when it was served with the Complaint in this matter.[9] (R. Doc. 39). As LSU employees and originally named defendants[10] who are intricately tied to Plaintiffs' claims, there can be no doubt that the Sells are key players whose communications between each other and with third parties would be uniquely relevant to this matter; thus, Defendant had a duty to preserve these communications at least by the time Defendant learned of this litigation.

---

[8] Similar cases list the 4 prerequisites as those in Rule 37(e), listed here as elements 1-4. But the Rule 37(e) on its own contains no operative language—that comes in (e)(1) and (e)(2). The operative language of Rule 37(e)(1) states that if prerequisites 1-4 are met *and* another party is prejudiced by the loss of ESI, the court may order necessary sanctions. Thus, the Court has listed prejudice as a fifth prerequisite, this list covering the entirety of 37(e) and (e)(1). An analysis of 37(e)(2) would necessarily include prerequisites 1-4 *and* an intent to deprive.
[9] This does not preclude that the duty may have arisen earlier, e.g., if prior reporting indicated that Defendant should have known that evidence would be relevant to future litigation.
[10] The Sells were dismissed as Defendants on January 19, 2022. (R. Doc. 187).

### *2. Reasonable Steps to Preserve ESI*

Next, the Court considers whether Defendant took reasonable steps to preserve ESI. Even when litigation is foreseeable, a party is not required to preserve "every shred of paper, every e-mail or electronic document, and every backup tape." *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740 (N.D. Ala. 2017) (quoting *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liability Litigation*, 299 F.R.D. 502, 517–518 (S.D. W. Va. 2014)). But a party *is* required to preserve evidence from "those employees likely to have relevant information—the 'key players' in the case," and applies to "unique, relevant evidence that might be useful to the adversary." *In re Ethicon* at 517 (quoting *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 217-18 (S.D.N.Y.2003)); *see also In re Bertucci Contracting Co., L.L.C.*, 2014 WL 5483707, at *2 (E.D. La. Oct. 29, 2014).

Plaintiffs' counsel brought to the District Judge's attention their concerns over preservation of ESI at a status conference on December 10, 2021, and the District Judge instructed the parties to preserve ESI. (R. Doc. 167 at 3). On January 1, 2022, Defendant Board entered a proposed ESI Order (R. Doc. 197), which was entered by the Court on March 4, 2022 (R. Doc. 207). The Order states that "electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices" need not be preserved "*provided* that a copy of all such electronic data is saved in an accessible format elsewhere (such as on a server, laptop, desktop computer, or cloud storage)." (R. Doc. 207, § I(2)(viii)).

Because Defendant's primary argument is based on an incorrect definition of spoliation, Defendant does not make a specific argument for the *reasonableness* of its attempts to preserve ESI.[11] But Defendant does point to litigation hold notices as its attempts to preserve relevant

---

[11] Instead, the focus of Defendant's argument is on intent and bad faith destruction (or rather lack thereof).

evidence. (R. Doc. 327 at 7). Defendant asserts that a litigation hold was issued by LSU's General Counsel on May 23, 2021, to all relevant departments, covering ESI including text messages regarding Plaintiffs. *Id.* Similar litigation holds were also issued by the Board's counsel on June 17, 2021, and June 14, 2022, to "LSU". *Id.* It is unclear from Defendant's briefing who specifically is "LSU" for the purpose of this litigation hold.

The litigation hold notices and Agreed ESI Order are the only preservation measures mentioned by Defendant. Defendant does not argue that it did not have constructive control over the data on the Sells' cell phones, but in anticipation of such an objection, the Court refers to other cases finding that employers have control over employment-related data for preservation purposes even when it exists on an employee's personal device. *See, e.g., Miramontes v. Peraton, Inc.*, 2023 WL 3855603 at 5 (N.D. Tex. June 6, 2023) (citing cases). Especially as the cell phones in question were LSU-issued phones (R. Doc. 325-10 at 2), Defendant had the ability to preserve data therein.

"A party's discovery obligations do not end with the implementation of a 'litigation hold'—to the contrary, that's only the beginning. Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y.2004); *see also, Yelton v. PHI, Inc.*, 279 F.R.D. 377, 387 (E.D. La. 2011). The court in *Zubulake* set forth several steps that counsel should take "to ensure compliance with the preservation obligation": (1) issue a litigation hold at the outset of litigation or whenever litigation is reasonably anticipated; (2) clearly communicate the preservation duty to "key players"; and (3) "instruct all employees to produce electronic copies of their relevant active files" and "separate relevant backup tapes from others." *Zubulake*, 229 F.R.D. at 433–34.

While the Board issued litigation holds to undefined LSU recipients, they have not provided the Court with evidence of any further action. At any time after the start of litigation, after the oral instruction from the District Judge to preserve ESI, or after the Agreed ESI Order, Defendant could have required immediate backup of all of the Sells' cell phone data.[12] Indeed, the ESI Order explicitly states that data sent to and from cell phones should be retained and provides suggestions for backup storage. If not requiring data backups, Defendant could have had the Sells return the phones they used during the relevant period. Instead, the Sells maintained sole possession of their LSU-issued phones for around a year after the initiation of this litigation—and several months after they were dismissed as parties—with no apparent plan for preserving the data within. (R. Doc. 325-10 at 2).

More importantly, when the Sells left their positions at LSU, they returned their cell phones to the University ostensibly without removing relevant data from them. Julia Sell testified that, once the Husch Blackwell investigation began,[13] she got a personal cell phone that she did not use for LSU business, and that she did not delete anything from her LSU phone other than personal items, e.g., family photos or voicemails from her mother. (R. Doc. 325-10 at 2). She did not delete LSU-related data from her phone or return the phone to factory settings before returning the device to LSU. (R. Doc. 325-10 at 2). Michael Sell testified similarly that he returned his LSU phone to the IT department without deleting anything other than personal photos. (R. Doc. 327-2 at 2). He explicitly acknowledged knowing that he was not supposed to delete anything work-related from the phone. (R. Doc. 327-2 at 2-3).

---

[12] Defendant claims that the Sells' LSU phones were connected to their personal iCloud accounts (R. Doc. 327 at 3), but there is no evidence in the record that their text messages were being backed up, as uploading of text messages to iCloud is an opt-in feature, not a default one.
[13] Husch Blackwell began an official review of the University's Title IX program in November 2020.

The Sells returned their phones to LSU in April 2022. (R. Doc. 327 at 3). In May 2022, an LSU employee turned on Michael Sell's phone and found that it contained no data.[14] (R. Doc. 327 at 3). After months of back and forth with Plaintiffs' attorneys inquiring about the data on the returned phones, Defendant finally arranged for Plaintiffs' counsel to inspect the phones themselves, at which time Plaintiffs' counsel confirmed that the phones had been wiped of all data.

Though Defendant claims that, upon their return, the Sells' LSU-issued phones were kept "untouched" in an office until September 2022, it is clear that someone wiped the data from the phones. The record provides no clarity on who might have done this or when, but the result is the same: the Sells' data is no longer on the phones. In discussing reasonable steps to preserving ESI, the *Zubulake* court noted that "[o]ne of the primary reasons that electronic data is lost is ineffective communication with information technology personnel." *Zubulake*, 229 F.R.D. at 434. It seems the data here has fallen victim to this problem. Despite a litigation hold, Defendant either did not properly monitor or did not properly communicate to the relevant staff the need to preserve key data. Under the circumstances, Defendant took no meaningful steps to protect the data on the phones, which is why Defendant has no idea who deleted the data or when. This leads this Court to conclude that Defendant did not take reasonable steps to preserve the Sells' text communications.

### 3. & 4.  *Irrevocable Loss of ESI*

The Sells' phones have been wiped of their data and restored to factory settings, so it is clear that data has indeed been lost from its original source. Nevertheless, Defendant contends that Plaintiffs had the opportunity to inspect the data. In Plaintiffs' subpoena to the Sells, they requested "any and all communications, including but not limited to text messages and messages from any

---

[14] Defendant gives no information regarding Julia Sell's phone at the time.

other social media communications applications … sent or received by you… related to [parties] and/or Title IX." (R. Doc. 325-1 at fn. 1). Defendants argue that the Sells produced the relevant information, including that they were no longer in possession of the phones, and that Plaintiffs did not attempt to obtain the information on the phones through other means. (R. Doc. 327 at 11).

In fact, the Sells objected to Plaintiffs' subpoena request, saying that they were required to return their LSU accounts and phones and thus *could not* provide responses. (R. Doc. 325-1 at 4). Because the Sells themselves said the information could not be provided without the physical devices, Plaintiffs had no reason to believe the information was available to the Sells in the form of backup drives.[15] Furthermore, it is not Plaintiffs' responsibility to question the form or fact of the Sells' responses—it was reasonable for Plaintiffs to assume the Sells' lack of production meant they did not have access to the data and not to inquire further as to the Sells' access to backup versions. *See Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019). Finally, Plaintiffs' attempts to obtain first the data and then physical devices from Defendant Board *were* the attempts to obtain the Sells' data through other means after learning that the Sells themselves no longer had access.

Ultimately, however, it is not Plaintiffs' *attempts* at retrieving data that matter, but whether the data is recoverable at all. Defendants argue that Plaintiffs could access the Sells' text messages through subpoenas to third parties with whom they had text conversations. (R. Doc. 327 at 14). While Plaintiffs may be able to recover some text messages through third parties, they could not

---

[15] Defendant argues that the Sells' phone data was backed up to their iCloud accounts and that the requested data, if it existed, should be available through those accounts. But because the Sells did not provide that alternative in their subpoena response, Plaintiffs would have been reasonable to assume there was no alternative. And indeed, Defendant shows no evidence that the Sells' text messages were backed up to their iCloud (an opt-in feature), and Defendant even states that Michael Sell is "attempting to gain access" to his own iCloud account. Defendant cannot credibly argue that Plaintiff has had ample opportunity to review data that *may* be contained in a thus far inaccessible account.

have reasonably retrieved all responsive text messages this way. To subpoena all third parties with whom the Sells had responsive text exchanges, first Plaintiffs would need a comprehensive list of such third parties—information which existed on the Sells' phones. The Court cannot reasonably expect Plaintiffs to recover lost information through the use of lost information. And subpoenas to all third-party contacts would still exclude responsive text messages between Michael and Julia Sell. *Cf. Paisley Park* at 235.

Defendants also claim the substance of text messages with third parties would likely be captured in e-mails, but the mere potential for similar conversations is not sufficient to restore or replace the lost text messages. *Id.* Even when the information lost is "cumulative to some extent," the loss of the information still has an impact because Plaintiffs "cannot present the overwhelming quantity of evidence [they] otherwise *236 would have to support [their] case." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010) (considering spoliation motion before Rule 37(e) amendment). Defendants also refer to the fact that the Sells' responses to Plaintiffs' subpoena included screenshots of certain text message between the Sells and some Plaintiffs. (R. Doc. 327 at 14). These are, however, only those communications that the Sells themselves thought to capture; and because the Sells' response to the subpoena also indicates that they cannot respond fully without the physical phones, there is no reason to believe their screenshots are the full extent of the responsive data that was on the Sells' phones before they were wiped. At most, Plaintiffs can now obtain only "scattershot texts and [e-mails]," rather than "a complete record of defendants' written communications from defendants themselves." *Paisley Park* at 236 (citing *First Fin. Sec., Inc. v. Lee*, 2016 WL 881003, *5 (D. Minn. Mar. 8, 2016)).

Finally, Defendants argue that Plaintiffs have acknowledged that a method for recovering the wiped data does exist, but that Plaintiffs have merely chosen not to pursue it. (R. Doc. 327 at

15). Plaintiffs acknowledge that there are methods that *might* recover some of the data. An expert advised Plaintiffs that the only way to ensure recovery is with software available only to law enforcement or to have Sells' cooperation in obtaining deleted files, which would require a lengthy process with no guarantee of recovery. (R. Doc. 325-1 at 9). Thus, because there is no guaranteed way to recover the files and because any attempts would be impossible for civilians or extremely costly and potentially futile, the Court determines that the missing cell phone data cannot be replaced or restored for Plaintiffs' use.

### 5. *Prejudice to Plaintiffs*

There is no doubt that Plaintiffs are prejudiced by the loss of the text messages. Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case. *Victor Stanley*, 269 F.R.D. at 532. As set forth above in the Court's discussion regarding their ability to replace or restore missing information, Plaintiffs are left with an incomplete record of the communications that former defendants (and still key players) had with both each other and third parties. Neither the Court nor Plaintiffs can know exactly what ESI has been lost or how significant that ESI was to this litigation. Defendants claim that Plaintiffs cannot show that any relevant evidence has indeed been lost and thus there can be no showing of prejudice. But to allow such an argument would be to allow every spoliator to claim lack of evidence implies lack of relevance. Given the Sells' role in this litigation, it stretches the bounds of reason to think their LSU-issued cell phones would contain no relevant communications. Thus, the Court determines that Plaintiffs are prejudice by the loss of the Sells' text messages, and thus that sanctions necessary to cure the prejudice are appropriate under Rule 37(e)(1).

B. **Appropriate Sanctions**

For the court to adopt a presumption that lost ESI is unfavorable to Defendant or to instruct a jury to adopt such a presumption, the Court would have to find that Defendant intentionally deleted the ESI with the intent to deprive Plaintiffs of the use of the information. Fed. R. Civ. P. 37(e)(2). The Court cannot find on the existing record that Defendant wiped the phones' data with intent to deprive. Therefore, the Court finds that, absent any further showing of intent, adverse inference sanctions are inappropriate.[16] But as the instant motion and response were filed before the close of discovery, this Court believes it appropriate to leave final determination of adverse inference sanctions for the trial judge, who will have the benefit of the entire record and any developments on this issue that may have arisen in the intervening time. *Cf. Paisley Park*, 330 F.R.D. (citing *Monarch Fire Protection Dist. v. Freedom Consulting & Auditing Servs., Inc.*, 644 F.3d 633, 639 (8th Cir. 2011) (holding that it is not an abuse of discretion to defer sanction considerations until trial)).

Finally, the Court recognizes that while perhaps not a direct defiance of Court orders as anticipated by Rule 37(b), Defendant's failure to preserve ESI is particularly egregious given the Court's oral order and Agreed ESI Order, which should have put Defendant on notice to carefully monitor ESI. Thus, pursuant to Rule 37(e)(1),[17] the Court will order Defendant Board to pay reasonable expenses, including attorney's fees and costs, that Plaintiffs incurred as a result of Defendant's failure to preserve ESI. The Court will order Plaintiffs to file a submission with the

---

[16] While deferring an order of adverse inference for the trial judge, the undersigned would recommend at least informing the jury of Defendant's duty to preserve ESI and failure to do so.

[17] Rule 37(e)(1) does not expressly authorize the imposition of monetary sanctions, but the discretion of the Court in crafting appropriate sanctions to cure the prejudice due to loss of ESI is broad. *Paisley Park* at 237. And indeed many courts have imposed such sanctions under this rule. *See Spencer v. Lunada Bay Boys*, 2018 WL 839862 at *1 (C.D. Calif. 2018) (collecting cases).

Court, detailing such expenses, and allow Defendant Board the opportunity to respond to that submission.

IV. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that Plaintiffs' Motion for Sanctions is **GRANTED IN PART** and **DENIED IN PART** as follows:

a. Having found Plaintiffs prejudiced by Defendant's failure to preserve evidence, the Court orders that, within 21 days of this Order, Plaintiffs shall file a submission with the Court, detailing all reasonable fees, costs, and expenses they have incurred as a result of Defendant's failure to preserve the Sells' text messages. Within 14 days of that filing, Defendant may file a memorandum in response.

b. Plaintiff's request for an order of adverse inference is denied without prejudice, to be further determined by the trial judge.

Signed in Baton Rouge, Louisiana, on September 29, 2023.

*Scott Johnson*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**