UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS**, *et al.* <br> *Plaintiffs* <br><br> v. <br><br> **BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE** <br> *Defendant* | Case No.: 3:21-cv-00242 <br><br> Division WBV-SDJ <br><br> JUDGE WENDY B. VITTER <br><br> MAGISTRATE JUDGE JOHNSON <br><br> JURY DEMANDED |

**PLAINTIFFS' OPPOSITION TO BOARD'S MOTION IN LIMINE NO. 6: TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING CERTAIN POST-REPORTING CONDUCT**

Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch ("Plaintiffs"), through undersigned counsel, respectfully submit this Memorandum in Opposition to the Motion in Limine No. 6: To Exclude Evidence and Argument Regarding Certain Post-Reporting Conduct ("Motion No. 6") (ECF No. 435) filed by Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("Board" or "LSU"). Motion No. 6 is far too broad to be appropriate for determination at the motion in limine stage. Moreover, to the extent specific facts have been identified in Motion No. 6, those facts are undeniably relevant, at the very least, to one of the Plaintiffs' claims, if not more. This Court should therefore deny Motion No. 6 and instead reserve relevancy determinations, such as those sought by the Board here, for trial.

I.  **Standard**

As summarized by the Fifth Circuit Court of Appeals:

> A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.[1]

"It is well settled that motions in limine are disfavored."[2] "Motions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial."[3] "An order in limine excludes only clearly inadmissible evidence; therefore, evidence should not be excluded before trial unless it is clearly inadmissible on *all* potential grounds."[4] "Instead, courts should reserve evidentiary rulings until trial so that questions as to the evidence 'may be resolved in the proper context.'"[5]

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.[6] Although Motion No. 6 contains an enumerated list of certain conduct that the Board wishes to exclude, the items set forth in that list remain too broad and generalized to allow this Court to make any determination as to whether the identified conduct will be relevant at trial.

---

[1] *Randle v. Tregre*, 147 F. Supp. 3d 581, 595–96 (E.D. La. 2015), *aff'd*, 670 F. App'x 285 (5th Cir. 2016) (quoting *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n. 1 (5th Cir.1977) (internal quotations omitted)).

[2] *Washington v. E. Baton Rouge Par. Sch. Bd.*, No. CV 21-00192-BAJ-RLB, 2023 WL 2072083, at *1 (M.D. La. Feb. 17, 2023) (citing *Auenson v. Lewis*, 1996 WL 457258, at *1 (E.D. La. 8/12/1996); *Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)).

[3] *Id.* (quoting *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980) (superseded on other grounds)).

[4] *Id.* (quoting *Rivera v. Robinson*, 464 F. Supp. 3d 847, 853 (E.D. La. 2020); *Auenson*, 1996 WL 457258, at *1) (emphasis in original).

[5] *Id.* (quoting *Auenson*, 1996 WL 457258, at *1).

[6] FED. R. EVID. 401.

II. **<u>Argument</u>**

Plaintiffs agree with the Board that actions prior to each of the incidents of abuse giving rise to this suit are relevant to their claims. However, that is not the only conduct that is relevant in this action. Simply because an event occurred after certain incidents of abuse does not necessarily make the event irrelevant, as the Board contends. Such post-reporting events may—and likely will—still have a tendency to make a fact of consequence more or less probable.

In order to support their claims, Plaintiffs must establish several elements, including that: (1) the Board maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual misconduct that was known or obvious, (3) in a context subject to the Board's control, and (4) as a result, Plaintiffs suffered sex discrimination that deprived them of access to LSU's educational opportunities or benefits.[7] As such, post-reporting conduct of any party may be relevant for many reasons.

First, instances of additional sex discrimination following Plaintiffs' initial experiences of sexual misconduct may reveal the extent to which the Plaintiffs' heightened risk to sex discrimination was known or obvious.[8] Second, because Plaintiffs must prove the existence of an implicit, *de facto* policy of deliberate indifference to sex discrimination, as opposed to a written or explicit policy, circumstantial evidence and patterns of conduct are relevant. The Board's *de facto* policies are not likely to have changed substantially over the course of a few days; thus, whether post-reporting conduct is relevant to prove a pre-assault policy of deliberate indifference to sex discrimination is highly context-dependent. Ruling on the relevance of such matters is not appropriate pre-trial on a motion in limine. Third, because the claims of ten Plaintiffs are

---

[7] *See Doe ex rel. Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty.*, 35 F.4th 459, 464-65 (6th Cir. 2022).

[8] The Board appears to argue that only rape or sexual assault is severe enough to form the basis of a Title IX claim; however, sex discrimination and sexual misconduct also encompass sexual harassment and other misconduct, as outlined in LSU's own Title IX Policies. *See* ECF No. 1-2 at 155.

implicated in this lawsuit, even if the Board's response to a report made by a particular Plaintiff may be irrelevant to that Plaintiff's claims, the Defendant's response may be relevant to the claims of another Plaintiff who experienced sex discrimination later in time. In other words, what is "post-reporting conduct" as to one Plaintiff may be pre-reporting conduct as to another. As this Court has recognized, the relevance of such hypothetical, uncontextualized scenarios simply cannot be resolved at the motion in limine stage.[9] However, out of an abundance of caution, Plaintiffs address each instance of "post-reporting conduct" outlined in Motion No. 6, as follows.

### A. LSU's response to John Doe's December 2016 Assault of Calise Richardson

In December 2016, John Doe attempted to rape Plaintiff Calise Richardson, threatening to have her fired from the football recruiting department if she didn't comply with his sexual demands.[10] The following day, LSU representatives responded to this sexual misconduct by asking Richardson why she would let Doe into her apartment if she did not want to have sex with him.[11]

It is not conceivable that the Board could have completely changed its *de facto* policies regarding its response to sexual misconduct within twenty-four hours. although this line of questioning occurred the day after the incident with John Doe, it is hard to imagine that this general attitude did not pre-exist Richardson's reporting. Thus, this post-reporting conduct of LSU representatives tends to make the existence of the Board's generalized policy of deliberate indifference to reports of sexual misconduct the prior day more probable.

---

[9] *See Washington*, 2023 WL 2072083, at *4 (quoting *Collins*, 621 F.2d at 784).
[10] Memorandum in Support of Motion No. 6, ECF No. 435-1 at 2; Deposition Transcript of Calise Richardson, attached hereto as Exhibit 2, Volume I ("Richardson Dep. I") at 96-97. For ease of reference, a chronology of certain events ("Timeline") has been attached hereto as Exhibit 1.
[11] Richardson Dep. I (Ex. 2) at 96-97.

Further, following LSU's response to this report of sexual misconduct, both Plaintiffs Lewis and Andries were assaulted within the next seven months.[12] Thus, even if LSU's response is irrelevant to analyzing whether it maintained a policy of deliberate indifference to sex discrimination prior to Richardson's assault, which Plaintiffs specifically deny, its response occurred shortly before other instances of sexual misconduct alleged in this matter, and the evidence has a tendency to prove LSU maintained a policy of deliberate indifference prior to the assaults of Plaintiff Lewis, in May 2017, and Plaintiff Andries, the following July.

LSU's response to Richardson's disclosure of abuse by John Doe was to ask why she allowed John Doe into her apartment in the first place, demonstrating a heightened risk of sexual misconduct that was known or obvious at LSU.[13] It is not unreasonable to infer that the individual asking this question clearly believed that a heightened risk of sexual misconduct was so known or obvious at LSU that Richardson should have known not to allow John Doe into her apartment. Once again, although this response occurred one day after Richardson's assault, it makes the existence of a known or obvious heightened risk of sexual misconduct at LSU more probable.

Moreover, LSU's response to Richardson's report of her assault by John Doe tends to prove that the assault occurred in a context subject to the Board's control. The main factor in determining whether an event occurs in a context subject to a school's control is a determination of whether the school had the authority to discipline the parties involved.[14] At her deposition, Richardson

---

[12] Plaintiff Lewis was assaulted in May 2017. Deposition Transcript of Jade Lewis, attached hereto as Exhibit 3, Volume I ("Plaintiff Lewis Dep. I"), at 42. Plaintiff Andries was assaulted in July 2017. Deposition Transcript of Elisabeth Andries, attached hereto as Exhibit 4 ("Andries Dep."), at 48-50. *See also* Timeline (Ex. 1).

[13] Richardson Dep. I (Ex. 2) at 96-97.

[14] *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646-47, 119 S. Ct. 1661, 143 L.Ed.2d 839 (1999) ("We thus conclude that recipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student- on-student sexual harassment and the harasser is under the school's disciplinary authority."); *See, e.g.*, *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657 (1995) (noting schools may condition athletic eligibility on student conduct); *Upchurch v. Multnomah Univ.*, No. 3:19-cv-00850, 2021 WL 6622254, at *5 (D. Or. Dec. 31, 2021) (noting conditions school placed on student eligibility for prestigious campus position).

testified that she reported her assault to her supervisor because she as afraid her employment with the football program would be terminated.[15] The idea that LSU had to the authority to terminate Plaintiff Richardson after her assault, but did not possess that power prior to her assault, *i.e.*, one day earlier, is improbable at best, and entirely unsupported by the evidence. Thus, LSU's response tends to make the Board's control over the context of this discrimination more probable.

Lastly, Richardson's fear of termination demonstrates the extent to which she was deprived of access to educational benefits and opportunities as a result of the Board's policy of deliberate indifference to sexual misconduct. The Board's response to Richardson's assault is relevant to each element of Richardson's claim, and certain elements of other Plaintiffs' claims. Defendant's representations to the contrary are without merit. Further, if any discrete fact related to LSU's response should be excluded, this Court is certainly competent to rule accordingly at trial.[16]

**B. LSU's response to Abby Owens' Report of Rape in April 2017**

In April 2017, LSU learned that John Doe had raped Plaintiff Owens in June 2016.[17] Nevertheless, John Doe was permitted to continue attending and playing football for LSU. LSU took no action: its employees did not open a Title IX file or investigation; they simply discussed the report amongst themselves and then failed to document it.[18] Then within two months after LSU became aware of Plaintiff Owens' rape, Plaintiffs Lewis and Andries were then separately assaulted by John Doe.[19]

---

[15] Richardson Dep. I (Ex. 2) at 96:19-97:3 ("He got really angry and said he was going to try to get me fired . . . . I was telling [my supervisor] because I was scared to get in trouble and didn't want him to get me fired.").

[16] *See Washington*, 2023 WL 2072083, at *1 (quoting *Rivera*, 464 F. Supp. 3d 847, 853; *Auenson*, 1996 WL 457258, at *1).

[17] Deposition Transcript of Miriam Segar, attached hereto as Exhibit 5, Volume II ("Segar Dep. II"), at 90. *See also* Timeline (Ex. 1).

[18] Segar Dep. II (Ex. 5) at 90-94.

[19] Plaintiff Lewis was assaulted in May 2017. Lewis Dep. I (Ex. 3) at 42. Plaintiff Andries was assaulted in July 2017. Andries Dep. (Ex. 4) at 48-50. *See also* Timeline (Ex. 1).

LSU's response to Owens' disclosure was to do nothing, demonstrating a heightened risk of sexual misconduct that was known or obvious at LSU. This tends to make the claims of Plaintiffs Lewis and Andries, at a minimum, more probable. Even if LSU's response to Owens' reporting does not prove a pre-existing policy of deliberate indifference to sex discrimination as to Abby Owens, it certainly tends to prove that LSU maintained a policy of deliberate indifference prior to the assaults of Lewis and Andries in the following months.

Furthermore, LSU's lack of response to Owens's reporting of her rape is relevant to establish the extent to which Owens was deprived of access to educational benefits or opportunities as a result of the Board's policy of deliberate indifference to sex discrimination. After her assault, Abby Owens did not return to LSU following her stay in a rehabilitation facility.[20] A reasonable juror could conclude that had LSU properly investigated Plaintiff Owens' report of rape and disciplined her rapist—instead of taking absolutely no action—Owens may have felt safer and chosen to return to LSU.

In sum, the Board's response to Plaintiff Owens's disclosure of her rape by John Doe is relevant to both her claim and the claims asserted by other Plaintiffs in this litigation. Once again, the Board is welcome to raise objections to any discrete facts related to LSU's response to Owens' report at trial, and this Court is more than able to rule on the relevance of such evidence and/or testimony at that time.[21]  Doing so at this time would be improper.

---

[20] Deposition Transcript of Abby Owens, attached hereto as Exhibit 6 ("Owens Dep."), at 89:19-22 ("I didn't want to like be in the place where all of my traumas happened.").
[21] *Washington*, 2023 WL 2072083, at *1 (quoting *Rivera*, 464 F. Supp. 3d at 853; *Auenson*, 1996 WL 457258, at *1)).

### C. LSU's response to John Coe's actions after his expulsion

In July 2019, John Coe was allegedly expelled from LSU following two arrests for domestic violence committed against Plaintiff Jade Lewis.[22] The Board does not state which facts its Motion attempts to exclude in connection with this topic, and its Motion should therefore be denied on that basis.

> The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground. *Plair v. E.J. Brach Sons, Inc.*, 864 F. Supp. 67, 69 (N.D.Ill. 1994). The court may deny a motion in limine when it "lacks the necessary specificity with respect to the evidence to be excluded." *National Union v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).[23]

The Board has failed to meet its burden of demonstrating that any evidence related to its response to John Coe's actions after his expulsion are inadmissible. Thus, this Court lacks the necessary evidence and information to rule in the Board's favor and should deny its Motion on this point. Regardless, Plaintiffs do not intend to raise facts specific to events that followed John Coe's expulsion. Accordingly, and in the alternative, Motion No. 6 may be denied as moot.

However, out of an abundance of caution, Plaintiffs provide the following response. LSU did not expel John Coe until he had been arrested multiple times for domestic violence perpetrated against Plaintiff Jade Lewis. When he eventually was expelled, LSU failed to properly document the expulsion in John Coe's academic transcript.[24] The Board's delayed response to John Coe's repeated acts of abuse towards Lewis tends to show the extent to which Lewis was deprived of educational benefits by allowing Coe to remain enrolled at LSU while Lewis's grades and ability to participate in collegiate opportunities suffered.

---

[22] Deposition Transcript of Jennie Stewart, attached hereto as Exhibit 7 ("Stewart Dep."), at 210. *See also* Timeline (Ex. 1).
[23] *First Savings Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078 (D. Kan. 2000).
[24] Stewart Dep. (Ex. 7) at 210.

These facts are also relevant to claims asserted by Corinn Hovis, who was raped by an LSU football player in January 2020, only a few months after Coe was expelled.[25] The Board's failure to respond appropriately to Coe's domestic violence tends to show a general policy of deliberate indifference to sexual misconduct that predated and existed at the time of Hovis' assault.

Further, LSU's expulsion of John Coe proves that the abuse occurred in a context subject to the Board's control. LSU's ultimate expulsion of Coe in response to Coe's pleas of guilty to charges of dating violence and violation of a protective order proves that LSU had to the authority to discipline Coe—and perhaps prevent further domestic violence—all along. Thus, LSU's response tends to make the Board's control over the context of John Coe's abuse more probable. To the extent that the Board seeks to exclude evidence about its response after John Coe's expulsion, such facts are relevant to, at the very least, Plaintiffs Lewis and Hovis' claims. As this Court held in *Washington v. East Baton Rouge Parish School Board*, "rather than exclude an entire portion of evidence without context, the Court [should] defer ruling on this issue until trial."[26]

### D. LSU's response to Plaintiff Jane Doe's Reports of Stalking and Sexual Harassment

In May 2019, Plaintiff Jane Doe reported that John Poe was stalking and sexually harassing her.[27] LSU officials responded by failing to initiate a Title IX investigation; denying Doe a no-contact directive; moving Doe, not Poe, into a dormitory across campus; and blaming Doe for kissing Poe prior to his abuse.[28] LSU's failure to properly respond to her report eventually caused Doe to leave LSU.[29]

---

[25] Deposition Transcript of Corinn Hovis, attached hereto as Exhibit 8 ("Hovis Dep."), at 26. *See also* Timeline (Ex. 1).
[26] *Washington*, 2023 WL 2072083, at *5.
[27] Deposition Transcript of Plaintiff Doe, attached hereto as Exhibit 9 ("Plaintiff Doe Dep."), at 25. *See also* Timeline (Ex. 1).
[28] Plaintiff Doe Dep. (Ex. 9) at 54, 58, 75, 81.
[29] Plaintiff Doe Dep. (Ex. 9) at 97.

The Board argues that this Court should exclude "[e]vidence of any alleged conduct by LSU in response to Jane Doe's alleged report to LSU,"[30] but, as this Court held in *Washington*, "rather than exclude an entire portion of evidence without context, the Court [should] defer ruling on this issue until trial."[31] Plaintiff Jane Doe's abuse consisted of ongoing stalking and harassment, as opposed to an instance of rape that has a beginning and an end. Stalking and harassment require patterns of conduct and necessarily occur over a longer time-frame. Thus, LSU's response following Plaintiff Doe's initial report is not necessarily post-assault. Moreover, LSU's questioning of Doe about why she had kissed Poe in response to her reports of his abusive behavior tends to demonstrate a heightened risk of sexual misconduct that was known or obvious.

Additionally, LSU's response suggests that the assault occurred in a context subject to the Board's control because, although LSU did not initiate a Title IX investigation, it did initiate an investigation under the general Code of Student Conduct, which tends to make LSU's control over John Poe's abuse of Jane Doe more probable. LSU's decision to move Doe, rather than Poe, to a new dormitory is relevant to show a deprivation of access to educational benefits. Negative effects that sufficiently deny a student equal access to their education include changing living arrangements and/or routines to avoid an abuser.[32] If Plaintiff Doe left LSU as a result of LSU's actions, these facts are relevant to determine her damages, in addition to the Board's liability.

---

[30] Memorandum in Support of Motion No. 6., ECF No. 435-1 at 3.

[31] *Washington*, 2023 WL 2072083, at *5.

[32] *Davis*, 526 U.S. at 651 (identifying "female students [excluded] from using a particular school resource, such as "a computer lab," as an obvious Title IX injury); *Henderson v. Board of supervisors of Southern University and A&M College*, No. CV 21-297-JWD-RLB, 2023 WL 2614620, at *10 (M.D. La. Mar. 23, 2023) (quoting *Fennell*, 804 F.3d at 410 (internal citations, quotations, and alterations omitted)); *Prendergast as Next Friends of L.P. v. Wylie Indep. Sch. Dist.*, No. 18-20, 2018 WL 6710034, at *8 (E.D. Tex. Dec. 4, 2018), *report and recommendation adopted*, No. 18-20, 2018 WL 6705536 (E.D. Tex. Dec. 20, 2018)) (citing *Murrell v. Sch. Dist. No. 1, Denver, Colo*., 186 F.3d 1238, 1248–49 (10th Cir. 1999)); Vance v. Spencer Cty. Pub. Sch. Dist., 231 F.3d 253, 259 (6th Cir. 2000)). *See also Z. M-D. b/n/f Menzia v. Austin Indep. Sch. Dist., No*. 19-991, 2020 WL 4550909, at *5 (W.D. Tex. Aug. 6, 2020) (finding a concrete, negative effect on the victim's education because he "had to be hospitalized for severe depression and suicidal ideation due to the harassment, and ultimately withdrew from [the school] entirely."); *Yarbrough v. Denton Indep. Sch. Dist*., No. 420-433, 2021 WL 4704579, at *4 (E.D. Tex. Feb. 5, 2021)

Thus, LSU's response to Plaintiff Doe's reports of stalking and sexual harassment are relevant to her claim, and certain elements of other Plaintiffs' claims. Should any discrete fact related to this response warrant exclusion, this Honorable Court is competent to make such a ruling at trial.[33]

### E.  LSU's response to Plaintiff Elisabeth Andries's Report of Sexual Misconduct

In March 2019, Plaintiff Elisabeth Andries reported her sexual assault by LSU student John Roe, which occurred in October 2016.[34] LSU's response was to ask what Andries had been wearing on the night of her assault—the implication being that female students should have been so aware of the risk of assault that they were on notice to modify the way they dressed to avoid unwanted sexual conduct and, failing same, should reasonably expect to suffer harassment or assault.  Such a presumption on the part of LSU tends to demonstrate a known or obvious heightened risk of sexual misconduct at LSU and is therefore highly relevant here.[35]

LSU's actions after Andries reported sexual misconduct is further relevant to the extent to which Andries was deprived of access to educational benefits or opportunities as a result of the Board's policy of deliberate indifference. LSU's actions and inactions caused Andries to modify her class schedules, move to a new apartment, change on-campus jobs, and abandon her old study groups.  She also began experiencing heightened mental health symptoms.[36] Each of these facts is relevant to whether and to what extent Elisabeth Andries was denied access to educational benefits and opportunities as a result of her assault and LSU's failed response thereto.

---

(plaintiff "plausibly pleaded an example recognized by the Fifth Circuit: forcing a student to move to another district.").

[33] *Washington*, 2023 WL 2072083, at *1 (quoting *Rivera*, 464 F. Supp. 3d at 853; *Auenson*, 1996 WL 457258, at *1)).
[34] Andries Dep. (Ex. 4) at 78-80. *See also* Timeline (Ex. 1).
[35] Andries Dep. (Ex. 4) at 226:2-4 ("[I] then responded with "Do you also need to know what I was wearing?" And [Jonathan Sanders] said yes. I was wearing a Bernie Sanders costume.").
[36] Andries Dep. (Ex. 4) at 22, 117-19, 127, 130, 147, 180 ("I tended to avoid campus as much as possible.").

What is more, LSU's response to this report occurred concurrently with Co-Plaintiff Jane Doe's abuse.[37] Thus, this evidence goes to establishing a broader policy of deliberate indifference to sex discrimination during that time frame.

LSU's post-reporting conduct as to Andries is probative on all the foregoing matters and therefore tends to make numerous elements of Andries' and other Plaintiffs' claims more likely. "[R]ather than exclude an entire portion of evidence without context, the Court [should] defer ruling on this issue until trial."[38] Defendant may object to any related testimony or evidence at trial; the Court may take the matter up at that time.[39]  Doing so now would be premature.

**F. LSU's response to Plaintiff Sarah Beth Kitch's Report of Sexual Misconduct**

In or around August 2019, Plaintiff Sara Beth Kitch reported Professor Moe's sexual misconduct to LSU's Title IX Office.[40] The Office responded by telling Kitch that it was good that she did not report the abuse earlier, as nothing would have been done to stop the abuse.[41] The Office did not make any record of Kitch's report.[42]  To be clear, even LSU's Title IX Office—the body tasked with responding to reports of sexual misconduct at LSU—believed that if Kitch has disclosed the sexual misconduct at the time it occurred, "no one would have done anything and it would have only caused [her] trouble." [43]  This evidence clearly goes to whether a known or obvious heightened risk of sexual misconduct existed on LSU's campus at and around that time.

---

[37] Plaintiff Doe Dep. (Ex. 9) at 25. *See also* Timeline (Ex. 1).
[38] *Washington*, 2023 WL 2072083, at *5.
[39] *Washington*, 2023 WL 2072083, at *1 (quoting *Rivera*, 464 F. Supp. 3d at 853; *Auenson*, 1996 WL 457258, at *1)).
[40] Deposition Transcript of Sarah Beth Kitch, attached hereto as Exhibit 10 ("Kitch Dep."), at 122-123. *See also* Timeline (Ex. 1).
[41] Kitch Dep. (Ex. 10) at 124:12-21 ("And she asked why I hadn't reported earlier, and I told her that I -- what I told you, I thought it would imperil my standing as a grad student. And then she said, It's good that you didn't report then, no one would have done anything and it would have only caused you trouble. And I thought that fit my assessment of the university's lack of seriousness on these issues.").
[42] Kitch Dep. (Ex. 10) at 127.
[43] Kitch Dep. (Ex. 10) at 124:12-21.

Moreover, LSU's response reflects the larger state of affairs on campus at the time of Kitch's experiences, tending to make the existence of a known heightened risk of sexual misconduct more probable for all subsequent Plaintiffs. Although LSU's response occurred after Plaintiff Kitch's experiences of sexual misconduct, it occurred just a few months before Plaintiff Corinn Hovis was raped.[44] Thus, LSU's response to Kitch's report has a tendency to prove that LSU maintained a policy of deliberate indifference to reports of sexual misconduct in the period immediately preceding Hovis' rape in January 2020. If any discrete fact related to LSU's response to Kitch's report should be excluded, the Court can certainly make such a ruling at trial.[45]

### G. LSU's response to Plaintiff Kennan Johnson's reports of sexual misconduct

Plaintiff Kennan Johnson attended LSU and experienced sexual misconduct on the part of LSU officials between May 2017 and May 2019.[46] The Board asks this Court to exclude "[e]vidence of any alleged conduct by LSU in response to any purported disclosures by Johnson of alleged harassment[,]" but, as discussed with Plaintiff Doe's claims, this request is overbroad and inappropriate for the following reasons.[47] First, Plaintiff Johnson experienced ongoing sexual harassment over the course of two years, as opposed to a single, finite assault with a clear beginning and an end.[48] Thus, LSU's response to Johnson's report while Johnson was an LSU student was not necessarily "post-assault," as the Board claims, and was certainly antecedent to any subsequent claims of abuse asserted by Plaintiffs. LSU's response to Johnson's report of sexual harassment is therefore relevant to both Johnson's claim and the claims of the other Plaintiffs, and evidence of that response should not be excluded prior to trial.[49]

---

[44] *See* Hovis Dep. (Ex. 8) at 26; Timeline (Ex. 1).
[45] *Washington*, 2023 WL 2072083, at *1 (internal citations omitted).
[46] Deposition Transcript of Kennan Johnson, attached hereto as Exhibit 11 ("Johnson Dep."), at 287.
[47] Memorandum in Support of Motion No. 6., ECF No. 435-1 at 3.
[48] *See generally* Johnson Dep. (Ex. 11); *see, e.g.,* pp.161-165.
[49] *Washington*, 2023 WL 2072083, at *1 (internal citations omitted).

13

### H. Any response by LSU occurring after January 2020

The Board argues that this Court should exclude "[e]vidence of any alleged conduct by LSU occurring after Hovis' alleged report other than as it relates to Loe's alleged violation of the no-contact order."[50] However, certain responsive actions taken by LSU after January 2020 bear on claims asserted by multiple Plaintiffs—not just those of Corinn Hovis. Evidence of these actions has a tendency to make facts of consequence to Plaintiffs' claims more probable and should therefore be admitted, including but not limited to:

- In August 2020, LSU responded to Plaintiff Owens' public records request, confirming a complete lack of documentation regarding her rape;[51]

- In January 2021, LSU denied disability accommodations to Plaintiff Hovis;[52]

- In March 2021, LSU published the Husch Blackwell report, an investigative report containing information demonstrating the University's policy of deliberate indifference to reports of sexual misconduct;[53]

- In March 2021, LSU officials testified at a Louisiana State Senate Women and Children Committee Hearing and provided information relevant to certain Plaintiffs and the heightened risk of sexual misconduct on LSU's campus during the relevant period.[54]

The foregoing events are just a few examples of conduct by LSU occurring after January 2020 that tends to make key facts in issue more or less probable than they would otherwise be without this evidence. Testimony and evidence concerning these matters is therefore relevant and should be admitted.

---

[50] Memorandum in Support of Motion No. 6., ECF No. 435-1 at 3.
[51] Owens Dep. (Ex. 6) at 205.
[52] Hovis Dep. (Ex. 8) at 88.
[53] *See generally* ECF No. 1-2.
[54] *See generally* Segar Dep. I (Ex. 5) at 297.

Moreover, such evidence must be analyzed on a case-by-case basis in the context of a trial. If reference to any irrelevant events occurring after January 2020 is made at trial, the Court can exclude evidence related to those matters at that time.[55]

### I. The evidence in question is not unduly prejudicial.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[56] As this Court previously recognized in *Babin v. Plaquemines Parish*, "the purpose of a motion in limine is to prohibit opposing counsel 'from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."[57] None of the evidence cited by the Board in support of Motion No. 6 rises to this level of potential prejudice. This Court should disregard the Board's unsubstantiated claims of prejudice as inappropriate for determination on a motion in limine and deny Motion No. 6.

## CONCLUSION

For the foregoing reasons, Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch respectfully request that the Court deny the Board's Motion No. 6.

---

[55] *Washington*, 2023 WL 2072083, at *1 (quoting *Rivera*, 464 F. Supp. 3d 847, 853 (quoting *Auenson*, 1996 WL 457258, at *1)).
[56] FED. R. EVID. 403.
[57] 421 F. Supp. 3d 391, 395 (E.D. La. 2019) (quoting *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quotation and internal quotation marks omitted)).

<table>
<tr><td></td><td>Respectfully Submitted,</td></tr>
<tr><td></td><td>/s/  *Endya L. Hash*</td></tr>
<tr><td>Karen Truszkowski<br>*Pro Hac Vice*<br>Temperance Legal Group<br>503 Mall Court #131<br>Lansing, Michigan 48912<br>P: (844) 534-2560<br>F: (800) 531-6527<br>karen@temperancelegalgroup.com</td><td>Catherine E. Lasky (La. Bar 28652)<br>Endya L. Hash (La. Bar 38260)<br>Katie Lasky Law<br>619 Homedale Street<br>New Orleans, Louisiana 70124<br>P: (504) 584-7336<br>F: (504) 375-2221<br>katie@katielaskylaw.com<br>endya@katielaskylaw.com</td></tr>
</table>

Elizabeth K. Abdnour
*Pro Hac Vice*
Abdnour Weiker, LLP
500 East Michigan Ave Suite 130
Lansing, Michigan 48912
P: (517) 994-1776
F: (614) 417-5081
liz@education-rights.com

*Attorneys for Plaintiffs*