## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, et al.**
*Plaintiffs*

**v.**

**BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND
MECHANICAL COLLEGE**
*Defendant*

**Case No.: 3:21-cv-00242**

**Division WBV-SDJ**

**JUDGE WENDY B. VITTER**

**MAGISTRATE JUDGE JOHNSON**

**JURY DEMANDED**

### PLAINTIFFS' OPPOSITION TO BOARD'S MOTION IN LIMINE NO. 7: TO EXCLUDE CERTAIN TESTIMONY FROM LIN-CHI WANG

Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch ("Plaintiffs"), through undersigned counsel, respectfully submit this Memorandum in Opposition to the Motion in Limine No. 7 to Exclude Certain Testimony from Lin-Chi Wang ("Motion") filed by Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("Board" or "Defendant" or "LSU").[1]

### I.      BACKGROUND

The Board's motion seeks to limit and exclude testimony from Plaintiffs' Title IX expert, Lin-Chi Wang ("Wang"). Wang is undeniably qualified to opine as an expert on the subjects for which she is proffered as an expert and, unlike Defendant's Title IX expert, has on-the-ground experience working in a university Title IX office.[2]

---

[1] ECF No. 436.

[2] *Cf.* Curriculum Vitae of Lin-Chi Wang ("Wang CV"), attached to the Expert Report of Lin-Chi Wang ("Wang Report"), attached hereto as Exhibit A, at 51, *with* Curriculum Vitae of Brett Sokolow ("Sokolow CV"), attached hereto as Exhibit B.

Wang is the founder of Wang Law, LLC, a consulting and legal services firm focused on providing comprehensive Title IX and anti-discrimination compliance services for schools and workplaces.[3] Since founding the firm in October 2021, Wang has engaged with over 25 public and private colleges, universities, and K-12 districts across the nation, providing Title IX compliant investigations, hearing officer services, advisor services, policy review, training, and consulting. [4] Wang has also been retained as an expert to opine on these matters.[5]

Prior to entering private practice, Wang spent over five years working firsthand in university Title IX offices as both an investigator and Title IX Coordinator.[6] In those roles, Wang conducted and oversaw the response and investigation of all institutional reports and complaints of identity-based discrimination and harassment, Title IX sexual harassment, sexual misconduct, intimate partner violence, stalking, and retaliatory harassment.[7] In addition to serving as a first-responder and institutional investigator, Wang has also provided nearly 100 trainings to students, faculty, staff, athletic departments, and administrators on various aspects of sexual misconduct and anti-discrimination policies, procedures, and prevention strategies.[8] Throughout her career, Wang has received specialized training on Title IX (including but not limited to best practices for Title IX investigations and the duties of a Title IX Coordinator), Clery Act compliance at institutions of higher education, sexual assault trauma-informed interviewing, and sexual harm restorative justice facilitation. [9]

---

[3] *See* Wang Report at 1; Wang CV.
[4] *Id.*
[5] *Id. See, e.g., Jane Doe v. Board of Regents of the University of Nebraska*, et al., No. 4:21-cv-3049 (D. Neb.).
[6] *See* Wang Report at 1-2; Wang CV.
[7] *Id.*
[8] *Id.*
[9] *Id.*

In addition to being qualified, Wang is expected to offer opinion testimony on accepted practices, policies, and procedures for the development and implementation of effective Title IX programs, which will assist the jury in deliberating on material issues relevant to this litigation. As set forth in the following pages, Wang's testimony meets the requirements of Rule 702 of the Federal Rules of Evidence and is both relevant and reliable, and the Board has failed to meet its burden of proof in establishing grounds on which Wang's testimony should be limited or excluded. Accordingly, Defendant's Motion must be denied.

## II.    STANDARD OF REVIEW

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[10]

The overarching inquiry envisioned by Rule 702 is the validity, and thus the evidentiary relevance and reliability, of the principles that underlie a proposed expert submission.[11] "[T]he threshold question in determining whether an individual may offer expert testimony under Rule 702 is whether the individual has the qualifications to do so."[12] In making that determination, "the expert is viewed, not in a narrow sense, but as a person qualified by 'knowledge, skill, experience, training or education.'"[13]

---

[10] FED. R. EVID. 702; *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).

[11] *Daubert*, 509 U.S. at 594-95.

[12] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011) (citing FED. R. EVID. 702).

[13] *Id.* (citing FED. R. EVID. 702, Advisory Committee's Note).

The inquiry, however, does not stop there; the trial judge must also "ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable."[14] In determining the reliability of expert testimony, a court should consider the following, non-exclusive factors, as set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*: (1) whether a theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory; and (4) the general acceptance of the theory or technique.[15] In conducting a *Daubert* analysis, however, these factors are "neither all-encompassing nor is every factor required in every case."[16]

"When evaluating expert testimony, the overarching concern is whether or not it is relevant and reliable."[17] As Judge deGravelles has explained, "[t]he role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable."[18] However, this Court's "role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system," and the "rejection of expert testimony is the exception and not the rule."[19]

"The *Daubert* analysis should not supplant trial on the merits."[20] As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

---

[14] *Daubert*, 509 U.S. at 589; *Kumho Tire*, 526 U.S. at 141 ("the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge").

[15] *Kumho Tire*, 526 U.S. at 141; *Daubert*, 509 U.S. at 593-94.

[16] *Sexton v. Exxon Mobil Corp.*, No. CV 17-482-JWD-RLB, 2020 WL 5292046, at *6 (M.D. La. Sept. 4, 2020) (internal citations omitted).

[17] *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007).

[18] *Urda v. Valmont Indus., Inc.*, 561 F. Supp. 3d 632, 637 (M.D. La. 2021).

[19] *Id.* (internal citations omitted).

[20] *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

4

evidence."[21] The District Court judge must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions. . . . Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder."[22]

Here, the proposed testimony and expert report of Plaintiff's expert Lin-Chi Wang reflect opinions that are well-founded and reliable, and her testimony will be relevant and helpful to the jury at trial. The proposed testimony and expert report of Plaintiff's expert therefore meet the standards for admissibility under both Rule 702 and *Daubert* and, therefore, should not be excluded.

### III.    ARGUMENT

#### A.  Wang is qualified to give testimony in heightened risk cases.

The Board's arguments that Wang is not qualified to testify as an expert are without basis. The primary objection to Wang's qualifications appears to be that Wang is "not qualified to offer expert testimony in this case" because "Wang identifies only two matters in which she served as an expert witness."[23] Notably, the Board fails to attach Wang's Curriculum Vitae, which it cites in support of this contention, but Plaintiffs do not dispute the assertion. They do, however, dispute its significance. "[T]his fact alone certainly does not disqualify her since, for every expert witness, there must necessarily be a first time."[24]

As this Court has recognized, "[t]he courts have rejected the notion that the Federal Rules of Evidence require an expert to have previously opined on a specific issue to be 'qualified' as an

---

[21] *Daubert,* 509 U.S. at 595.

[22] *Anderson v. Allstate Ins. Co.*, CV 17-597-JWD-SJD, 2021 WL 292440, at *8 (M.D. La. Jan. 28, 2021) (internal citations and quotations omitted).

[23] Memorandum in Support of Motion, ECF No. 436-1, at 2.

[24] *Nkansah v. Martinez*, No. 3:15-CV-00646, 2017 WL 2812733, at *5 (M.D. La. June 28, 2017).

expert on that issue."[25] By Defendant's logic, no one could ever be qualified as an expert witness without any past experience as an expert witness, which would lead to the absurd result of no person ever being qualified as an expert witness. Everyone must start somewhere, and the fact that Wang has not previously served extensively as an expert witness is, in and of itself, irrelevant.

Further, unlike the Board's Title IX expert, Brett Sokolow, Wang has years of direct experience serving in a variety of roles in Title IX offices at higher education institutions; she has actually been a Title IX administrator and worked as both an investigator and a Title IX Coordinator.[26] By comparison, Sokolow's credentials do not indicate he has even *one day* of experience working in a Title IX office or conducting a single Title IX investigation.[27]

The Fifth Circuit has specifically held that experts can be qualified to offer opinions based upon their experience alone, based upon the Supreme Court's holding in *Kumho Tire* and the Advisory Committee Notes to Rule 702.[28] The caselaw is clear that a "the court may permit testimony 'where a proposed expert witness bases her testimony on practical experience rather than scientific analysis.'"[29] "In such cases, where a proposed expert witness bases her testimony on practical experience rather than scientific analysis, courts recognize that [e]xperts of all kinds

---

[25] *Nkansah*, 2017 WL 2812733, at *5. (citing *BP Exploration & Prod., Inc. v. Callidus Techs., L.L.C.*, No. 02-2318, 2003 WL 26118097 at *1–2 (E.D. La. Apr. 8, 2003)). *See also State v. Allen*, 41,548 (La. App. 2 Cir. 11/15/06, 13–14); 942 So. 2d 1244, 1255, *writ denied sub nom. State ex rel. Allen v. State*, 2007-0530 (La. 12/7/07); 969 So. 2d 619 (citing *State v. Smith*, 448 So. 2d 778, 780–81 (La. Ct. App. 1984); *State v. Chatman*, 337 So. 2d 1106 (La. 1976); *State v. Allen*, 03–2418 (La. 6/29/05), 913 So. 2d 788) ("There is no rule of law, statutory or jurisprudential, which requires that different standards be placed on those witnesses who seek to be qualified as an expert in a field for the first time.")).

[26] *See* Wang CV.

[27] *See* Sokolow CV.

[28] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting FED. R. EVID. 702 advisory committee's note and *Kumho Tire Co.*, 526 U.S. at 156, 119 S. Ct. 1167) ("'Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.' Likewise, in *Kumho Tire*, the Court explained that 'no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.'").

[29] *Nkansah*, 2017 WL 2812733, at *5 (citation omitted).

6

tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'"[30]

Although Wang's combination of education, training, and real-world experience at institutions of higher education make her exceedingly qualified to opine on the Title IX issues presented in this case, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue."[31] "Although an expert's qualifications may be less-than-sterling, she may still be certified. This is because [d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[32]

The Board further argues that Wang lacks "training . . . to serve as an expert witness" without identifying what such training might be, and it remains unclear to what training the Board refers in this line of argument.[33] As reflected in her expert materials, Wang has not only received specialized training on Title IX law and practice (including but not limited to best practices for Title IX investigations and the duties of a Title IX Coordinator), Clery Act compliance at universities, sexual assault trauma-informed interviewing, and sexual harm restorative justice facilitation—she has also herself provided nearly 100 trainings to others, including students, faculty, staff, athletic departments and coaches, and administrators, on various aspects of sexual misconduct and anti-discrimination policies, procedures, and prevention strategies.[34] It therefore seems unlikely that the Board's objection deems this extensive training insufficient.

---

[30] *Id.* (citing *Kumho Tire*, 526 U.S. at 149–50 (1999)); *Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) ("there is no question that an expert may still properly base his testimony on 'professional study or *personal experience.*'") (emphasis added by Court); *Watson v. Snap-On Tools, Inc.*, No. 04-1313-A, 2006 WL 2114558 at *5 (W.D. La. 2006)).

[31] *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623–24 (5th Cir. 2018) (internal quotations and citations omitted).

[32] *Id.*

[33] Motion, ECF No. 436, at 1.

[34] *See* Wang Report at 1-2; Wang CV.

Plaintiffs must therefore assume that the training to which the Board refers is, as their pleading states, training "to serve as an expert witness."[35] Plaintiffs, however, are unaware of any such expert witness training, and no evidence was provided to Plaintiffs with respect to any such training in connection with any of the Board's expert witnesses. The *curricula vitae* of the Board's own experts clearly demonstrate that the Board does not actually believe that "training . . . to serve as an expert witness" is a necessary qualification for an expert, as none of these documents reference any such training.[36] Put simply, the Board's arguments are without basis, and this Court should deny the Board's Motion to limit or exclude any of Wang's testimony on the grounds of a purported lack of qualifications, experience, or training.

### B.  Wang's "Overall Analysis and Basis of Opinion" is causally connected to the Plaintiffs' claims.

The Board argues that, because Wang's summary of systemic and structural issues at LSU is not explicitly and directly connected to the Plaintiffs, it is not relevant. Title IX reads, in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation, in be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[37] *Davis v. Monroe County Board of Education*, the seminal U.S. Supreme Court case interpreting which elements plaintiffs must prove to succeed with Title IX claims against educational institutions, defined the term "subjected" to encompass making a student "vulnerable to" further harassment.[38]

Wang's report outlines pervasive problems and issues within LSU's sexual misconduct response and reporting systems and Title IX office, which in turn made Plaintiffs vulnerable to

---

[35] Motion, ECF No. 436, at 1.

[36] *See, e.g.,* Sokolow CV.

[37] 20 U.S.C. § 1681(a).

[38] *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645, 119 S. Ct. 1661, 143 L.Ed.2d 839 (1999).

further harassment. Wang's opinions therefore relate directly to whether LSU subjected Plaintiffs to discrimination on the basis of sex, and this Court should deny the Board's Motion to limit or exclude any of Wang's testimony on this basis.

### C. Wang's report relates to heightened risk.

The Board erroneously asserts that Wang's opinions are not relevant because they relate entirely to claims for deliberate indifference. As an initial matter, it should be noted that Plaintiff Corinn Hovis has a surviving deliberate indifference claim, which the Board seems to ignore, and Wang's testimony, even if it did only relate to deliberate indifference, would remain relevant to that claim. More importantly, however, the assertion that Wang's opinion in relation to Plaintiffs relates entirely to their deliberate indifference claims is simply inaccurate.

Wang's opinions regarding what the Board terms as "Plaintiffs' dismissed deliberate indifference claim" are directly relevant to Plaintiffs' heightened risk claims and are admissible. The *Davis* Court explained that a school can be liable for its own deliberate indifference that "cause[s] students to undergo harassment or make[s] them liable or vulnerable to it."[39] In using the disjunctive, *Davis* "clearly indicates that Plaintiffs can state a viable Title IX claim by alleging alternatively *either* that [the defendant]'s deliberate indifference to their reports of rape caused Plaintiffs 'to undergo' [additional] harassment *or* 'made them liable or vulnerable' to it."[40] Vulnerability requires only a potential for harassment.[41]

---

[39] *Davis*, 526 U.S. at 645.

[40] *Farmer v. Kan. St. Univ.*, 918 F.3d 1094, 1103 (10th Cir. 2019) (quoting *Davis*, 526 U.S. at 645).

[41] *See* Webster's Third New International Dictionary 2566-67 (1993) (defining "vulnerable" to mean "capable of being wounded" or "open to attack or damage" (emphases added)).

As in its Motions for Summary Judgment and Supporting Memoranda,[42] the Board is again wrongly collapsing the second prong of the *Davis* analysis, and ignoring the required elements of a Title IX heightened risk analysis as defined by *Karasek v. Regents of the University of California*:

> (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school.[43]

It is impossible to entirely separate the events (including the actions and inactions of LSU) relevant to Plaintiffs' deliberate indifference claim from those relevant to Plaintiffs' heightened risk claim because, as *Karasek* explains, a policy of deliberate indifference to sexual misconduct is an element of a heightened risk claim; further, Plaintiff Corinn Hovis has a surviving deliberate indifference claim.[44] Accordingly, this Court should deny the Board's Motion to limit or exclude any of Wang's testimony on this basis.

### D.  Wang does not proffer improper factual or legal conclusions.

None of the excerpts from Wang's Report cited by the Board constitute either factual or legal conclusions. In fact, all of Wang's opinions cited by the Board are both relevant and reliable, and they do not "give legal conclusions or . . . tell the jury what result to reach."[45] As such, they are all admissible, and Wang's testimony should not be limited on this basis.

> With respect to the proper scope of expert testimony, testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. FED. R. EVID. 704(a)("An opinion is not objectionable just because it embraces an ultimate issue."). However, an expert cannot offer conclusions of law, *Snap–Drape, Inc. v. Com'r* 98 F.3d 194,

---

[42] ECF Nos. 353-383.

[43] *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1112 (9th Cir. 2020).

[44] The Board also filed a motion in limine to exclude evidence and argument related to Plaintiffs' dismissed deliberate indifference claims. ECF No. 430. Plaintiffs have filed an opposition to that motion, which discusses the interconnectivity of these claims in more depth. ECF No. 441.

[45] *Fulford v. Manson Construction Co.*, 2010 WL 1903865, * 1 (E.D. La. 2010) (internal citations omitted).

198 (5th Cir. 1996), nor go beyond the scope of his or her expertise. *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) (noting that expert testimony was properly rejected by the court because it went beyond expert's expertise).[46]

Federal Rule of Evidence 704 abolished the per se rule against testimony regarding ultimate issues of fact, as long as the expert's opinion does not infringe on this Court's role to instruct the jury on the law, or on the jury's role "to determine whether that law was transgressed."[47] Wang's report does neither of those things. Instead, Wang offers opinions about industry standards related to Title IX policies, procedures, and office operations—not the law—all of which are permissible expert opinions under Rule 704.[48]

First, "[t]he Fifth Circuit has held that general background testimony on federal regulations by an expert is admissible as long as the expert is not stating ultimate legal conclusions based upon those background facts."[49] In fact, in cases where complex regulation regimes are at issue, courts have found that such testimony is appropriate to assist the jury in understanding the applicable standard of care in a given industry.[50]

Second, courts have long distinguished between legal conclusions and opinions on industry standards and practices.[51] For example, in *NAZ, LLC v. Philips Healthcare*, the Eastern District admitted the testimony and report of an expert in healthcare architecture who evaluated the construction of an MRI facility in light of applicable industry regulations, standards, and

---

[46] *Doe v. Kerryville Indep. Sch. Dist.*, Case No. 5:21-cv-00369-XR (W.D. Tex. Aug 16, 2023).

[47] *United States v. Empire Bulkers, Ltd.*, 2022 WL 1811158, *2 (E.D. La. 2022) (citations omitted).

[48] *See e.g.*, *Empire Bulkers*, 2002 WL 1811158 at *2 (permitting expert to testify "to the extent Dolan's testimony will be introduced to explicate industry standards and practices…what would be generally expected within the industry…").

[49] *Van Winkle v. Rogers*, No. 6:19-CV-01264, 2022 WL 4231013, at *4 (W.D. La. Sept. 13, 2022), *aff'd*, No. 22-30638, 2023 WL 5994138 (5th Cir. Sept. 15, 2023).

[50] *Id.* (allowing expert to quote and refer to Federal Motor Carrier Safety Regulations and provide general background on same).

[51] *See, e.g. NAZ, LLC v. Philips Healthcare*, No. CV 17-2882, 2019 WL 77233, at *11–12 (E.D. La. Jan. 2, 2019).

practices.[52] The Court found the expert's testimony would be helpful to the jury because such an evaluation was "outside the life experiences of an average layperson" and held that the "report offer[ed] opinions on industry standards and practices, not impermissible legal conclusions."[53] In another case, *United States v. Crinel*, the Eastern District held:

> This case requires that the jury be informed of Medicare's standards and practices with respect to home health care services. A qualified expert may testify regarding an industry's custom or practices so long as the testimony does not cross "into the realm of making legal conclusions." Other cases within this circuit have allowed expert testimony of this sort. "[C]ourts have permitted experts to testify about the workings of Medicare systems, because the complexity of the regulations takes them beyond the ordinary understanding of jurors."[54]

Where an expert's "testimony relates to common practices and procedures, as she understands them *in her specific capacity and based on her training*," her opinion is admissible.[55] Witnesses may not "state dispositively what the law is, and that certain actions are 'illegal,'" but they may nevertheless "describe the practices and procedures with which they are familiar with which they believe comport with . . . guidelines" applicable to a given legal or regulatory structure.[56]

That is precisely what Wang's report and testimony does: Wang provides opinions about standard practices and procedures typically accepted in implementing Title IX programs on university campuses; she does not go so far as to interpret the law or tell the jury how it should find on the ultimate question of the Board's liability. Wang's testimony is, notably, distinguishable from the Board's own proffered expert, Brett Sokolow. Sokolow's report goes into great depth in

---

[52] *Id*. *See also McCoy v. Isidore Newman Sch.*, No. CV 19-1810, 2022 WL 4533773, at *6 (E.D. La. Sept. 28, 2022), *on reconsideration in part*, No. CV 19-1810, 2022 WL 17252579 (E.D. La. Nov. 28, 2022) (holding that the Plaintiff's Title IX expert could testify in order to explicate "industry compliance standards and practices under Title IX, and what is generally expected within the industry under those standards….").

[53] *Id*.

[54] *United States v. Crinel*, No. CR 15-61, 2016 WL 6441249, at *8–9 (E.D. La. Nov. 1, 2016) (collecting cases).

[55] *United States v. Davis et al.*, No. 2:15-CR-155 (E.D. La. Jan. 29, 2016) (emphasis in original).

[56] *Id*.

interpreting caselaw and making conclusory assertions that LSU satisfied its standard of care in this case; Wang's does not. A comparison of the respective reports of Sokolow and Wang illustrates precisely the distinction drawn by courts in addressing this issue, as outlined above. And for the same reasons, Sokolow's offering of legal conclusions essentially telling the jury how to rule is inadmissible, but Wang's description of industry practices is not and should not be excluded.

Wang does not offer legal conclusions, but rather permissible opinions regarding the standards and practices observed in the implementation of Title IX programs, policies, and procedures on university campuses. These opinions are well within the scope of Wang's expertise and do not intrude on the roles of the court or the jury in, respectively, interpreting and applying the law. As such, the Board's Motion to limit or exclude any of Wang's testimony on this basis should, likewise, be denied.

### E. Wang's references to best practices and material mistakes are directly relevant to Plaintiffs' heightened risk claim and are admissible.

For the same reasons, Wang's opinions on best practices and material mistakes in the context of Title IX are admissible and will aid the jury in understanding industry standards and practices and the complex regulatory scheme at issue in this case. Wang's report and opinions on these matters are both relevant and reliable, and the Board has cited no caselaw to support its argument that the quoted portions of her report should be excluded. As such, the Court should deny the Board's Motion to limit or exclude any of Wang's testimony on this basis.

**F. Objections to the facts supporting Wang's conclusions are not a proper basis to exclude expert testimony.[57]**

Defendant further complains that Wang's conclusions are based on an "incomplete review of the record" and "others' accounts of 'facts,' and not her own." Defendant's arguments on this issue, in sum, are that Wang put more weight on certain evidence and facts than others, and the Board disagrees with how she chose to do so.[58] This is not a proper basis for excluding or limiting expert testimony.

The general rule permitting expert testimony under Rule 702 "yields only when 'the source upon which an expert's opinion relies is of such little weight ... that [the] testimony would not actually assist the jury in arriving at an intelligent and sound verdict.'"[59] "When an expert's qualifications and methodology are sound and when that expert reviewed reliable evidence" his testimony should not be excluded.[60] "Any inconsistencies or weaknesses in [the expert's] testimony are ripe for cross-examination. However, they are not grounds to prevent his testimony entirely."[61]

Assuming *in arguendo* that the Board's criticisms of Wang's report were valid, those critiques are still not an appropriate basis for excluding testimony prior to trial. Doing so would only usurp the jury's role in deciding the weight to give to the testimony of various experts called to opine on these and other matters. The Board will have the opportunity to cross-examine Wang on what it perceives as weaknesses in her report and the bases for her opinions.

---

[57] For further discussion of caselaw applicable to this Subsection, see Plaintiffs' Memorandum in Opposition to Defendant's Motion to Exclude Josephine Doherty and Andrew Verzilli filed contemporaneously herewith. Plaintiffs expressly incorporate by reference all legal arguments set forth therein, as if pleaded *in extenso* here.

[58] Memorandum in Support of Motion, ECF No. 436-1, at 8.

[59] *Murray v. McKee*, No. CV 20-2979, 2023 WL 5950129, at *3 (E.D. La. July 21, 2023) (citing *Smith v. Starr Indemnity & Liability Company*, 807 Fed. Appx. 299, 302 (5th Cir. 2020).

[60] *Id.*

[61] *Id.*

Moreover, there is nothing preventing the Board from offering rebuttal testimony at trial to challenge Wang's conclusions. In fact, the Board has identified Brett Sokolow as an expert that it intends to call for that very purpose, and Sokolow has prepared a report with findings countering Wang's conclusions. "[A] differing opinion is not a question of admissibility."[62] It is for the jury to decide which of these various experts they find, after vigorous cross-examination, to be the most credible. Instead, the Board would have this Court take away the opportunity for the fact finder to deliberate on Wang's testimony, and to merely accept the testimony of Defendant's expert alone as gospel. But that is not what Rule 702 and *Daubert* permit.

"[T]he reliability of data underlying an expert's opinion goes to the weight of this evidence, but should not serve as a basis for its exclusion."[63] As this Court has made clear:

> Courts should not [be] lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Therefore, challenges to the factual bases or underpinnings of an expert opinion usually go only to weight and credibility of the evidence, not admissibility.[64]

If the Board chooses to challenge the assumptions upon which Wang relied in reaching her conclusions, it may properly do so through cross-examination.[65] "Simply disagreeing with the

---

[62] *Farshad v. Progressive Paloverde Ins. Co.*, No. CV 21-0934, 2022 WL 528316, at *2 (E.D. La. Feb. 22, 2022).

[63] *In re Katrina Canal Breaches Consol. Litig.*, No. CA 10-866, 2012 WL 4328354, at *1 (E.D. La. Sept. 20, 2012) (citing *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 392–93 (5th Cir.2002); *General Electric Capital Business Asset Funding Corp. v. S.A.S.E. Military Ltd.*, 2004 WL 5495590, *4 (W.D. Tex. Oct.21, 2004)).

[64] *Id.* (internal citations and quotations omitted). *See also Wright v. Nat'l Interstate Ins. Co.*, No. CV 16-16214, 2017 WL 4011206, at *3–4 (E.D. La. Sept. 12, 2017) ("Defendants' main objections are with issues of credibility and weight to be given to Plaintiff's experts, which are questions best left to the trier of fact. Defendants can address their concerns at cross examination. Accordingly, Defendants' motion is DENIED.").

[65] *Marin v. Falgout Offshore, LLC*, No. CIV.A. 11-428, 2011 WL 6000848, at *3 (E.D. La. Nov. 30, 2011) ("Simply disagreeing with the underlying facts relied on by an expert is not grounds for excluding that expert under *Daubert* . . . . Defendant may cross-examine both witnesses at trial regarding the facts of the incident . . . and whether the facts as presented at trial fit their expert opinions.").

underlying facts relied on by an expert is not grounds for excluding that expert under *Daubert*."[66] On a *Daubert* motion, Courts are "concerned with screening unreliable methodologies, not judging conclusions."[67] "When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts," but courts should not use Rule 702 as a means "to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.[68] To the extent that the Board believes Wang failed to consider relevant facts, or put too much weight on others, that does not render her opinion unreliable or warrant her exclusion.[69] Rather, those "issues should go to the weight the jury gives to that expert's opinion."[70]

Finally, the Board provides no specific examples of which of Wang's factual conclusions it objects to; further, it provides no caselaw to support its argument that the referenced portions of her report should be excluded. The Board has not met its burden of proof in terms of specificity.

For these reasons, the Board's Motion should be denied.

---

[66] *Martinez v. Offshore Specialty Fabricators, Inc.*, No. CIV.A. 08-4224, 2011 WL 820313, at *3 (E.D. La. Mar. 2, 2011); *United States v. Brown*, No. 3:21-CR-00238-01, 2023 WL 4637168, at *2 (W.D. La. July 19, 2023) (Government's apparent disagreement with expert's general analysis of toxicology screen was not suited to *Daubert* motion, and Government's arguments concerning effects of cocaine and duration of those effects were "better suited to vigorous cross-examination"); *Richardson v. SEACOR Lifeboats, LLC*, No. CIV.A. 14-1712, 2015 WL 2193907, at *3 (E.D. La. May 11, 2015) (holding that defendant may "attempt to prove at trial that the accounts of the incident made by the Plaintiff and his co-worker are inaccurate or inconsistent and cross-examine [the expert] regarding those disputed assumptions."); *Carroll v. Praxair, Inc.*, No. 2:05CV 0307, 2007 WL 656646, at *5 (W.D. La. Feb. 23, 2007) (holding defendant's disagreement with expert's diagnostic methods was not proper basis for excluding testimony under *Daubert* and opining: "That there exists an alternative (or even better) method to reach a medical diagnosis does not mean that the method employed by the instant expert is unreliable.").

[67] *Martinez*, 2011 WL 820313 at *3. *See also Bryant v. Tidy Bldg. Servs.*, 95-2724 (La. App. 4 Cir. 7/3/96), 678 So. 2d 48, 51, *writ denied*, 96-2026 (La. 11/8/96), 683 So. 2d 273 (Plotkin, J., dissenting) ("[t]he purpose of the *Daubert/Foret* test is to prevent the admission of unproven scientific theory from unqualified experts or from qualified experts using improper methods or research techniques; this type of evidence is commonly referred to as 'junk science.'").

[68] *Sigur v. Emerson Process Mgmt.*, 492 F. Supp. 2d 565, 567, n. 3 (M.D. La. 2007) (citing Advisory Committee Notes to Rule 702(1); *Downeast Ventures Ltd. v. Washington County,* 2007 WL 679887, *2-3 (D. Me. 2007)).

[69] *Murray*, 2023 WL 5950129 at *3.

[70] *Id*.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch respectfully request that the Court deny the Board's Motion in Limine No. 7 to Exclude Certain Testimony from Lin-Chi Wang.[71]

Respectfully Submitted,

/s/ Endya L. Hash

Karen Truszkowski
*Pro Hac Vice*
Temperance Legal Group
503 Mall Court #131
Lansing, Michigan 48912
P: (844) 534-2560
F: (800) 531-6527
karen@temperancelegalgroup.com

Catherine E. Lasky (La. Bar 28652)
Endya L. Hash (La. Bar 38260)
Katie Lasky Law
619 Homedale Street
New Orleans, Louisiana 70124
P: (504) 584-7336
F: (504) 375-2221
katie@katielaskylaw.com
endya@katielaskylaw.com

Elizabeth K. Abdnour
*Pro Hac Vice*
Abdnour Weiker, LLP
500 East Michigan Ave Suite 130
Lansing, Michigan 48912
P: (517) 994-1776
F: (614) 417-5081
liz@education-rights.com

*Attorneys for Plaintiffs*

---

[71] ECF No. 436.