UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, et al.**<br>*Plaintiffs*<br><br>v.<br><br>**BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE**<br> *Defendant* | Case No.: 3:21-cv-00242<br><br>Division WBV-SDJ<br><br>JUDGE WENDY B. VITTER<br><br>MAGISTRATE JUDGE JOHNSON<br><br>JURY DEMANDED |

**PLAINTIFFS' OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS DARREN CAHILL**

Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch ("Plaintiffs"), through undersigned counsel, respectfully submit this Memorandum in Opposition to the *Daubert* Motion to Exclude Testimony of Plaintiffs' Expert Witness Darren Cahill (the "Motion") (ECF No. 437) filed by Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board").

## BACKGROUND

Darren Cahill began playing tennis at the age of sixteen and thereafter left school to play professionally, where he excelled and earned "a career-high ranking of twenty-two in the world in singles and a career-high ranking of number ten in the world in doubles."[1]

---

[1] Transcript Excerpts from Deposition of Darren Cahill, attached hereto as Exhibit B, at 7:13-25.

When Cahill left the professional circuit due to a knee injury, he became a coach to tennis greats such as Lleyton Hewitt,[2] Andre Agassi,[3] and Simona Halep.[4] Currently, Cahill coaches Italian tennis player Jannik Sinner, who has climbed from the 15th to the 8th highest ranked player in the world with Cahill's guidance.[5] Cahill is a trained Tennis Australia High Performance Coach and acts as a consultant for Tennis Australia, teaching classes and giving lectures to young players and aspiring coaches.[6] When he is not coaching, Cahill is an ESPN commentator and provides broadcast commentary for world-class tennis tournaments including the Australian Open, U.S. Open, and Wimbledon.[7] He has served as a consultant and scout for Adidas player development teams and currently works for Nike as a talent scout, identifying young tennis talents and making recommendations for endorsement contracts.[8]

Cahill has been a "dear friend" and confidant of Plaintiff Jade Lewis' father, David Lewis, for years. They met shortly after they both began travelling and playing the junior tournament "futures" circuit together, where they "became great friends."[9] Later, the two men reconnected through the Swiss Tennis Federation, where their friendship deepened, and they have remained "quite close" since that time.[10]

---

[2] Cahill began coaching Hewitt at age 12 and, under Cahill's tutelage, ranked number 1 in the world three years after going pro. Cahill Dep. (Exhibit B) at 8:4-19.
[3] Agassi attained a world ranking of 9 or 10 while Mr. Cahill coached him; he would ultimately go on to become number 1 in the world. Cahill Dep. (Exhibit B) at 8:22-9:8.
[4] After Mr. Cahill began coaching Halep full time, she became the first Romanian to be ranked number 1 in the world and won two major titles during that time. Cahill Dep. (Exhibit B) at 10:1-10.
[5] Cahill Dep. (Exhibit B) at 10:12-20.
[6] Cahill Dep. (Exhibit B) at 14:25-15:18 (I lecture the kids or young adults about high performance and how to get into coaching and how to fast-track their coaching credentials and possibly get onto the tour or whether or not they wish to get into commentary or whether or not they wish to stay in Australia and become Tennis Australia coaches that are based at home or if they want to get on the road and coach highly-ranked professionals. So, I've been working for them probably for about ten years).
[7] Cahill Dep. (Exhibit B) at 11:3-12:22.
[8] Cahill Dep. (Exhibit B) at 49:4-50:24.
[9] Cahill Dep. (Exhibit B) at 16:7-17:2.
[10] Cahill Dep. (Exhibit B) at 17:3-18:1.

In recent years, Mr. Lewis has reached out to Cahill increasingly for advice and support, including but not limited to advice concerning Plaintiff Jade Lewis's budding tennis career. Cahill took an interest in Jade as a player and has followed her tennis career, believing her to be exceptionally talented.[11] Over the years he has offered advice on Jade's career, how to "transition from being a successful junior . . . to becoming a very good professional tennis player."[12] Later, when Jade Lewis decided to go to college instead of turning pro, Cahill participated in discussions about what school she should attend.[13] After Jade joined LSU's tennis team, Cahill monitored Jade's performance on the tennis court; at first, he saw her working hard to improve her game—and getting results.[14] Soon though, Jade began experiencing difficulties.[15] Around that time, Cahill learned about the difficulties Jade was facing off the court, and his conversations with Mr. Lewis about Jade's career shifted "completely away from tennis."[16] As Cahill testified at his deposition:

> I know that from an emotional point of view, it affected the family an incredible amount. It affected Jade a lot as well and then all the focus between David and I, all conversations basically was about looking after his daughter, trying to find a way out for his daughter.[17]

---

[11] *See, e.g.,* Cahill Dep. (Exhibit B) at 19:10-15 (I know Jade's game very well. I know what it takes to transition from a junior to a successful senior player. I know the attributes you need and Jade, she had a lot of those successful attributes); Cahill Dep. (Exhibit B) at 31:20-22 (testifying he saw Jade play approximately 10 times).
[12] Cahill Dep. (Exhibit B) at 18:12-25.
[13] Cahill Dep. (Exhibit B) at 18:12-25.
[14] Cahill Dep. (Exhibit B) at 22:21-25:3 (Initially the tennis performance because it was so spectacular when she first started there as a freshman. She was one of the best freshmen that has ever played college tennis, had some incredible wins…. I knew she made an outstanding start. She went undefeated for a good part of that first year. I think she was 17 and 0, which is outrageous as a freshman going and playing number one at LSU, such a division one, such an incredible college. So, I know she was incredibly successful with beating a half a dozen or so ranked players in the U.S. in the college system….she went there with the particular purpose to improve parts of her game, improve her physicality, improve her tennis IQ, improve her mentality and I'm a big fan of college tennis because it makes you do all of those things and you've got to play under enormous amounts of pressure, maybe more pressure than what you play when you're playing for yourself on the WTA tour. So, this was really hardening her up and getting her ready for what she would encounter as a professional athlete…. Q. And in that first year, did you feel like Jade did work on and improve those things that you're mentioning? A. Yes, I did.).
[15] Cahill Dep. (Exhibit B) at 19:22-25.
[16] Cahill Dep. (Exhibit B) at 26:23-24; *see also* Cahill Dep. at 19:22-25; 23:4-11 (So, we spoke a bit about how successful she was in that first year. · But that quickly segued into more of the problems that she encountered as well and we had less conversations about her tennis and a lot more conversations about the problems she was encountering).
[17] Cahill Dep. (Exhibit B) at 27:1-8.

3

In sum, Cahill was present to observe Jade Lewis' evolving tennis career from the time she was a junior player through her time at LSU. As a close family friend, he also has first-hand knowledge about the impact that Jade's abuse had on the young tennis star and her family.[18] Cahill was involved in this matter long before there was any specter of litigation on the horizon, and through that involvement, he developed certain opinions about, *inter alia,* Jade Lewis' talent, future success (both before and after her experiences at LSU), and the impact that Jade's experiences might have had on her career. These opinions were not formulated in anticipation of litigation, nor is Cahill relying in any way on information or materials provided to him by counsel. In fact, counsel never retained Darren Cahill to provide expert testimony, and he is not receiving any form of fee, incentive, or other compensation for to provide testimony in this case.

## LAW AND ARGUMENT

Defendant asserts that Darren Cahill should not be permitted to provide expert testimony based on his extensive qualifications and expertise related to the world of professional tennis. Cahill, however, serves the function of a hybrid fact/expert witness in this case, as he has personal knowledge about facts and events giving rise to this suit, but also possesses certain specialized knowledge and experience that will be helpful to the jury in understanding materials issues that will be presented at trial. To the extent that Cahill's opinions are related to or based on his own personal knowledge concerning Plaintiff Jade Lewis, Darren Cahill should therefore be permitted to testify as a non-retained expert.

---

[18] *See, e.g.,* Cahill Dep. (Exhibit B) at 26:21-27:8.

## I.  DARREN CAHILL IS A NON-RETAINED EXPERT.

"The distinction between retained and non-retained experts should be interpreted in a common sense manner."[19] As this Court explained in *MGMTL, LLC v. Strategic Technology*, "a retained *e*xpert is recruited to provide expert testimony without any prior, personal knowledge of the facts giving rise to litigation."[20] By comparison, "a non-retained expert's testimony 'arises not from his enlistment as an expert, but, rather, from his ground-level involvement in the events giving rise to the litigation.'"[21]

Non-retained experts, sometimes called "hybrid fact/expert witnesses," are treated differently than retained experts "because they were actual participants prior to litigation, [and] they do not receiv[e] additional compensation for their testimony at trial."[22] Their opinions are not formed in anticipation of litigation, or at the request of counsel, and "are not based upon any facts, information or documents generat[ed] by the subsequent litigation."[23] Common examples of non-retained experts include treating physicians with first-hand knowledge of plaintiffs' injuries and treatment,[24] and insurance adjusters who participate in pre-litigation investigation and whose "opinions regarding the costs of repair… are part of the 'normal insurance adjustment process."[25]

---

[19] *MGMTL, LLC v. Strategic Tech.*, No. CV 20-2138-WBV-MBN, 2022 WL 474161, at *4–5 (E.D. La. Feb. 16, 2022) (internal citations omitted); *Sean O'Connor, et al. v. Allied Trust Insurance Company*, No. CV 23-218, 2023 WL 6275928, at *2 (E.D. La. Sept. 26, 2023).
[20] *MGMTL,* 2022 WL 474161, at *4 (internal citations omitted).
[21] *Id*. *See also O'Connor*, 2023 WL 6275928, at *2–3.
[22] *O'Connor*, 2023 WL 6275928, at *2–3 (citing *Verret v. State Farm Fire & Cas. Co.*, No. CV 13-5596, 2014 WL 12742607, at *1 (E.D. La. Apr. 23, 2014); *Pendarvis v. Am. Bankers Ins. Co. of Fla.*, 2008 WL 8715813, at *3 (M.D. La. Jan. 24, 2008)).
[23] *Id*.
[24] *Rivera v. Walmart, Inc.*, No. CV 19-12616, 2022 WL 1080976, at *2 (E.D. La. Mar. 7, 2022) ("a treating physician is an example of a non-retained expert. *See* Fed. R. Civ. P. 26(a)(2) advisory committee's notes to 1993 amendment ('A treating physician, *for example*, can be deposed or called to testify at trial without any requirement for a written report.') (emphasis added). Courts' rationale for exempting treating physicians from the requirement of a written report is that their testimony is based on direct experience from their role as a treating physician "rather than from subsequent evaluation as a specially retained expert." *Knorr v. Dillard's Store Servs., Inc.*, No. CIV.A. 04-3208, 2005 WL 2060905, at *3 (E.D. La. Aug. 22, 2005)").
[25] *O'Connor*, 2023 WL 6275928, at *2–3. (citing *Verret*, 2014 WL 12742607 at *1 *Pendarvis.*, 2008 WL 8715813 at *3.

5

However, these are not the only types of witnesses who are permitted to testify as non-retained experts.[26] In *MGMTL, LLC v. Strategic Technology*, which the Board itself cites in support of its Motion,[27] this Court found that a software engineer was qualified to testify as a non-retained expert because he was not retained or employed to provide expert testimony, he did not regularly testify as an expert as part of his job, and his opinion testimony arose "not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation."[28]

A non-retained expert may testify "about his opinions formed as a result of his knowledge of the case gained through direct observation."[29] Such opinions are distinguished in the case law from those formed by retained experts based on information subsequently supplied by an attorney involved in litigating the case at hand.[30] "Stated another way, a hybrid witness can testify as 'an actor with regard to the occurrences from which the tapestry of the lawsuit was woven.'"[31] They may be asked questions that implicate their expertise, as long as they are only asked to opine about issues within the scope of their own personal involvement and do not stray into opinions developed in preparation for litigation.[32]

---

[26] *Rivera*, 2022 WL 108097, at *2 ("While the Advisory Committee Notes cite a treating physician as an example of a non-retained expert who does not have to provide a written report, the text of Rule 26 does not limit the types of experts to whom this exception may apply. The language of the Advisory Committee Notes indicates that a treating physician is only an example of a non-retained expert.").
[27] *See* Memorandum in Support of Motion at 5 (ECF No. 437-4).
[28] *MGMTL*, 2022 WL 474161, at *5.
[29] *Id.* at *4; *O'Connor*, 2023 WL 6275928 at *2.
[30] *See O'Connor*, 2023 WL 6275928 at *2 (citing *Pendarvis*, 2008 WL 8715813 at *3).
[31] *MGMTL*, 2022 WL 474161 at *4 (internal citations omitted).
[32] *Id.* In other words, his testimony is limited to expert opinions based upon his "personal knowledge and observations." *Id.*

In the instant case, Cahill falls squarely within the definition of a non-retained or "hybrid" witness. Cahill was close with the Lewis family and had personal knowledge and involvement in the events leading up to this lawsuit long before litigation commenced—in fact, Cahill was involved in Jade's career even before she elected to attend LSU.[33] Cahill continued to maintain a close relationship with the Lewis family at the time of Jade's enrollment and throughout the events that followed and, ultimately, led to this lawsuit.[34] Cahill has never served as an expert witness before,[35] but he does have specialized expertise and knowledge upon which he has formed certain opinions relevant to the facts of this case, and those opinions, considering his vast experience, would be helpful to the finder of fact in deliberating on material issues at trial. To be clear, these opinions were not formulated at the request of undersigned counsel, nor are they based on any information or documents provided to him by attorneys or anyone else in anticipation of litigation. Instead, they are based on his own knowledge of facts and events as he has come to understand them as a result of his relationship with the Lewis family. Considering the foregoing, it is hard to imagine how Cahill could possibly be construed as anything other than a non-retained, hybrid expert.

---

[33] Cahill Dep. (Exhibit B) at 20:15-21:10 ("I must admit I was a little bit surprised that Jade decided to go the college route only because she was so good as a young player. There was one particular match that she played at the New Zealand Open where she pushed -- I think Venus Williams was ranked twenty at that particular time and she had set points to win that first set. So, she was clearly showing that she could easily go professional if she wanted to but decided to go college because it was a great school, she could . . . continue to work on her game, continue to build a game that would be more successful when eventually she left college, whether or not that'd be after the first year or second year or third year."); see also Cahill Dep. (Exhibit B) at 60:10-13 ("She already had a ranking, which is -- coming out of juniors and to have a WTA ranking is not that usual. So, she was kind of unique.").
[34] Cahill Dep. (Exhibit B) at 18:2-25.
[35] Cahill Dep. (Exhibit B) at 16:2-4.

### A. AS A NON-RETAINED EXPERT, CAHILL'S DISCLOSURE IS SUFFICIENT.

Non-retained experts like Cahill "are not subjected to the same standard as specially retained expert witnesses."[36] A non-retained expert is not required to provide an expert report in advance of trial.[37] Instead, "non-retained experts . . . are subject to a 'separate, less stringent disclosure regime than their retained counterparts.'"[38] "To the extent that the source of facts which form the basis for the [non-retained] testifying witness's opinions are derived from information learned during a personal experience... as opposed to being subsequently supplied by an attorney involved in litigating a case involving an injury—then no Rule 26(a)(2)(B) report should be required."[39] It is only "[w]hen that testimony goes beyond a non-retained expert's 'ground-level involvement in the events giving rise to the litigation,' [that] an expert 'must comply with the Rule 26(a)(2)(B) reporting requirements, regardless of his status as a non-retained expert.'"[40]

Where hybrid witnesses are concerned, Rule 26(A)(2)(C) of the Federal Rules of Civil Procedure requires only that a disclosure be submitted stating (a) the subject matter on which the non-retained expert is expected to opine, and (b) a summary of the facts and opinions he is expected to give. The purpose of this less stringent notice requirement is to put parties on notice that a fact witness may, additionally, be called to offer certain opinions concerning the facts to which he is expected to testify, based on his specialized knowledge and expertise.[41]

---

[36] *Matter of Am. River Transportation Co., LLC*, No. CV 20-1327, 2022 WL 43690, at *2 (E.D. La. Jan. 4, 2022); *Bertuccelli v. Universal Studios LLC*, No. CV 19-01304, 2021 WL 2379545, at *2 (E.D. La. Jun. 10, 2021).
[37] *Am. River Transportation*, 2022 WL 43690 at *2 (permitting vessel captains to testify as non-retained experts after filing only affidavits, but not expert reports, in river boat collision case).
[38] *Id.* (quoting *Sheppard v. Liberty Mutual Ins. Co.*, No. 16-2401, 2017 WL 467092, at *1 (E.D. La. Feb. 2, 2017)); *see also O'Connor*, 2023 WL 6275928, at *2.
[39] *O'Connor*, 2023 WL 6275928 at *2 (citing *Pendarvis*, 2008 WL 8715813 at *3).
[40] *O'Connor*, 2023 WL 6275928 at *2 (citing *MGMTL,* 2022 WL 474161 at *6).
[41] *Cf. Bordelon Marine Inc. v. LaShip, LLC*, No. CV 22-3406, 2023 WL 4235600, at *3 (E.D. La. Jun. 28, 2023) (declining to permit non-retained expert to testify where identity of witness was not identified in purported Rule 26 disclosure consisting of an "itemized list of . . . damages" that failed to indicate it would form the basis or subject matter of any expert opinion and was not even produced in response to any interrogatory pertaining to witnesses, expert or otherwise, as "Defendants were not noticed in any way that [the witness] would be testifying as a non-retained expert prior to Plaintiff filing its opposition to the instant motion [in limine], almost two months beyond the

In this case, Plaintiffs submitted a disclosure (the "Disclosure") pertaining to Cahill's expected expert testimony sufficient to satisfy Fed R. Civ. P. 26(A)(2)(C). Specifically, that Disclosure states:

> Mr. Cahill is an internationally recognized tennis player, coach, and tennis commentator. He has been a friend and tennis colleague of the Lewis family since the 1990s. David Lewis (Jade's father) and Mr. Cahill competed against each other in the 1990 Davis Cup when David Lewis represented New Zealand. Mr. Cahill's CV is attached as Exhibit 1. Mr. Cahill is deeply familiar with Jade Lewis's tennis career both personally and professionally, as well as her potential for a successful professional tennis career.[42]

The Disclosure goes on to enumerate the five areas on which Cahill is expected to offer opinions at trial, including: (a) athletic ability; (b) potential progression to professional tennis; (c) skill level compared to other similarly situated tennis players; (d) change in earning potential; and (e) how Jade's time at LSU negatively impacted her professional tennis career.[43] The disclosure also provides a detailed summary of the nature of Cahill's expected opinions on the foregoing matters. For example, with regard to "athletic ability," the Disclosure states: "Mr. Cahill will attest that Jade is a natural strong and fast athlete that possessed easy power and a real desire to compete and win. Her technique was sound, and she was a great athlete, a massive advantage on the WTA Tour."[44] Attached to the Disclosure is a copy of Cahill's curriculum vitae and an additional 88 pages of documents reflecting data upon which Cahill might rely in testifying at trial, consisting of prize money data from the World Tennis Association.[45]

---

applicable deadline," and defendants would be prejudiced by permitting the expert to present expert testimony, with trial only two months away) with *Bertuccelli*, 2021 WL 2379545, at *1-2 (finding defendants in copyright infringement case provided adequate descriptions and information to satisfy the disclosure requirement of Rule 26 and therefore denying plaintiffs' request to exclude non-retained expert witnesses, where defendants' production included financial information and "publicly available images that Defendants may present at trial in support of factual issues, including to 'provide additional views of KCB and the HDD mask; to illustrate the respective artists' style and practice; and to show the prior existence of works containing elements that Plaintiffs allege were copied.'").

[42] *See* Expert Disclosure of Darren Cahill, attached hereto as Exhibit A, at p. 1.
[43] Disclosure (Exhibit A) at p. 2-3.
[44] Disclosure (Exhibit A) at p. 2.
[45] Disclosure (Exhibit A) and Exhibits A-1 and A-2 thereto.

9

Cahill's Disclosure was more than sufficient to put Defendant on notice of the expert testimony Plaintiffs expect to elicit from Cahill, and nothing in Rule 26's disclosure requirements should prevent Cahill from testifying as a non-retained expert witness.

### II. CAHILL IS QUALIFIED TO TESTIFY AS A NON-RETAINED EXPERT UNDER *DAUBERT* AND RULE 702.

"Regardless of whether a witness is proffered as a retained expert or as a non-retained expert, the witness must still satisfy the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and Fed. R. Evid. 702."[46] Under Rule 702 and *Daubert,* in order to offer expert testimony, a witness must be deemed to be qualified to opine on the matter by sufficient "knowledge, skill, experience, training or education," must employ a reliable methodology or basis for reaching his conclusions, and must be able to offer opinion testimony that is relevant and will aid the fact finder in determining a material issue at trial.[47]

It is beyond dispute that Darren Cahill is an immensely experienced and qualified expert on matters related to junior and professional tennis, development, coaching, scouting, endorsements, and the like.[48] Cahill has come to certain conclusions regarding Jade Lewis' talent and likelihood of career success based on his contemporaneous observations of her performance throughout her career, along with knowledge about her personal life and family, and his own experience and expertise in coaching and developing young talent.[49]

---

[46] *MGMTL,* 2022 WL 474161, at *4 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)); *O'Connor*, 2023 WL 6275928 at *2.

[47] *Daubert*, 509 U.S. 579; FRCP R. 702. For further discussion on the *Daubert* standard, please see Plaintiffs' Memorandum in Opposition to the Doherty/Verzilli Daubert Motion filed contemporaneously herewith.

[48] *See* Curriculum Vitae of Darren Cahill, attached hereto as Exhibit A-1. *See also* Cahill Dep. (Exhibit B) at 65:4-16 ("Apart from the qualifications that I've got from Tennis Australia, I was David's coach for North Australia for two years, I've coached three world number ones, I've coached the youngest ever world number one in Lleyton Hewitt at the time, I coached the oldest ever world number one in Andre Agassi at the time and I coached the first ever Romanian female number one player. I've been the coach of players that have won all four majors for the Australian Open, French Open, Wimbledon and U.S. Open"); *see also* "Background" Section, *supra* at pp. 1-4, for further discussion.

[49] *See, e.g.,* Cahill Dep. (Exhibit B) at 33:8-34:20 ("if you were born with some athletic abilities… and she comes from a pretty incredible family so her DNA with the type of athlete that she is was certainly passed down. So her uncle, Chris Lewis, made the final of Wimbledon way back in the year, losing to John McEnroe in the final. David

Moreover, Cahill's opinions are reliable, as they are based on his extensive and diverse experiences as a world-renowned and respected tennis pro, coach, commentator, and talent scout for prospective Nike and Adidas endorsement deals.[50] Cahill is in a unique position to help the jury understand what kind of considerations not only go into planning and cultivating the career of a young athlete with aspirations of becoming a professional tennis player, but what went into *this particular* athlete's decision-making process as she pursued a professional career. These matters are undeniably relevant to Jade Lewis' case, and Cahill's opinions are sound, reliable, and based on facts within his personal knowledge and involvement. As such, he should be permitted to testify as a hybrid witness under *Daubert*, and Defendant's Motion should be denied.

### B. DEFENDANT'S OBJECTIONS TO OPINIONS ON CAUSATION AND DAMAGES ARE MISPLACED.

Defendant objects that Cahill is being proffered to provide expert testimony on causation and damages. While "[a]n opinion is not objectionable just because it embraces an ultimate issue,"[51] the Board's speculation about what testimony Plaintiffs expect to elicit from Cahill reaches too far. Prior to filing its Motion, Defendant failed to confer with Plaintiffs' counsel regarding the issues raised in the present Motion. Had the Board done so, some of its concerns might have been ameliorated, as Plaintiffs do not intend to elicit expert testimony beyond the scope of Cahill's expertise on the issues of causation *or* lost earning potential.

---

was an incredible athlete and she also had an older uncle, Mark, who was a very good tennis player. Maybe not such as good an athlete as David and Chris, but certainly those attributes were passed down to Jade and she was a very, very good athlete and I think that when you're looking -- part of my overall with Adidas was to look at many areas of many players' games. So, it wasn't always about talent, it wasn't so much about the IQ of a tennis player or the emotional IQ. There are many boxes that needed to be ticked and the physical part is one of the big ones, especially when it comes to the WTA tour and she's a very, very good athlete. So, that gave her a great platform to jump from and there was many positives coming from the way she moved around the court, her fast twitch, her endurance and certainly she had a lot to look forward to from an athletic point of view." Q. "And that's based on your observations of seeing her play about ten times through her freshman year at LSU?" A. "Correct.").

[50] "Experience alone is sufficient to qualify a witness as an expert." *Danna v. Ritz-Carlton Hotel Co., L.L.C.*, 2020-0116, p. 15 (La.App. 4 Cir. 3/24/21), *writ denied,* 2021-00714 (La. 10/1/21); 324 So.3d 1053, and *writ denied,* 2021-00713 (La. 10/1/21); 324 So.3d 1059.

[51] Fed. R. Evid. 704.

11

Plaintiffs acknowledge that Cahill is not a physician or a mental health professional, nor is he an economist or a Title IX expert, and he will not be called to testify as an expert on those matters. Cahill is, however, an expert on scouting tennis talent, coaching, and bringing along young athletes in the professional tennis world. He *is* therefore qualified to opine on what, in his experience, makes an athlete successful, or potentially successful; what is required for a tennis player to play professionally; what he looks for in young athletes when he is scouting talent for potential endorsements; and what attributes he has observed in Jade Lewis in relation to same.[52] He is also more than qualified to testify, as a world class coach, on what environments and external factors tend to impact a young tennis player's performance and chances for success, and whether he was aware of any such impacts on Jade Lewis.[53] In other words, Plaintiffs expect to question Cahill on matters on which he has knowledge and expertise—namely tennis, coaching, scouting and endorsements. His opinions on those matters might inform the jury's understanding and deliberation on ultimate issues such as causation and/or damages, but Plaintiffs do not expect Cahill to offer an opinion on those ultimate issues themselves.

If Defendant objects to a given line of question as falling too far afield of Cahill's expertise, those objections can be raised at trial. The Board is represented by able counsel that are more than qualified to defend its interests in the courtroom through verbal objection; issuing a blanket limitation on anticipated, speculative testimony is inappropriate at the pre-trial stage.

---

[52] *See* Cahill Dep. (Exhibit B) at 68:1-8 (What I can talk with great confidence about was the type of player she was when she entered LSU and the type of player she was after her first year at LSU and the chances that she would have had had she decided to go professional without having that trauma involved in her life).

[53] Cahill Dep. (Exhibit B) at 66:13-67:8 (when I'm working with a player and they are talking about stuff that is happening off the court affecting them negatively on the court, yes. That is stuff that has to be dealt with from a coaching perspective. So, it's all tied together, whether it be hitting forehands or backhands or having parent issues or having boyfriend issues or having coaching issues. Everything affects a player's chances of success. So, you can't just talk about what is happening on the tennis court and whether it's a win over a loss. There's a lot more that goes into coaching than dealing with that… it's twenty-four/seven making sure that they are surrounded by good people and that they are dealing with the emotional IQ just as much as the tennis IQ in our instance).

## III. IN THE ALTERNATIVE, CAHILL MAY STILL TESTIFY AS A FACT WITNESS.

Should this Court determine that Cahill should not be admitted as a non-retained expert, Cahill should nevertheless be permitted to testify as a fact witness. Pursuant to Rule 602 of the Federal Rules of Evidence, a fact witness may testify to any matter concerning which he has personal knowledge. "Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience."[54] In other words, "[a] lay opinion must be the product of reasoning processes familiar to the average person in everyday life."[55] Moreover, a fact witness who is not testifying as an expert may still offer opinions that are (a) rationally based on his own perceptions; (b) helpful to either understanding the witness's testimony or determining a fact in issue; and (c) not rooted in the scientific, technical, or other specialized expertise of the witness.[56]

As discussed, Cahill has personal knowledge of facts relevant to this litigation. Thus, Cahill should not be precluded from testifying as a fact witness, regardless of this Court's finding on his qualification to testify as an expert. Even as a fact witness, Cahill should still be permitted to offer lay opinions that are not rooted in his specialized expertise, but rather rationally based on his own perceptions in following the trajectory of Jade Lewis' career and the pitfalls she faced after she enrolled in LSU. Cahill's lay opinions will be helpful to the jury in understanding both Jade Lewis' testimony and his own, and will aid the jury in making determinations as to material facts in issue. Cahill's lay testimony and opinions on such matters should therefore be admissible at trial, even if Cahill is permitted to testify only as a fact witness. As such, Cahill should not be precluded from testifying on these and other matters within his personal knowledge.

---

[54] *Fick v. Exxon Mobil Corp.*, No. CV 13-6608, 2016 WL 7976137, at *5 (E.D. La. Dec. 9, 2016) (citing, *inter alia*, *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999)).
[55] *Id.* (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d. Cir. 2005)).
[56] Fed. R. Evid. 701.

13

**CONCLUSION**

Considering the foregoing, Darren Cahill should be permitted to testify as a non-retained, hybrid witness at trial on the merits. In the alternative, Cahill should at the very least be allowed to testify as a fact witness on matters upon which he has personal knowledge, and further to offer lay opinions as permitted by Federal Rule of Evidence Rule 701. Accordingly, Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch respectfully request that the Court deny the Board's Motion.

Respectfully Submitted,

*/s/ Endya L. Hash*

| | |
|---|---|
| Karen Truszkowski | Catherine E. Lasky (La. Bar 28652) |
| *Pro Hac Vice* | Endya L. Hash (La. Bar 38260) |
| Temperance Legal Group | Katie Lasky Law |
| 503 Mall Court #131 | 619 Homedale Street |
| Lansing, Michigan 48912 | New Orleans, Louisiana 70124 |
| P: (844) 534-2560 | P: (504) 584-7336 |
| F: (800) 531-6527 | F: (504) 375-2221 |
| karen@temperancelegalgroup.com | katie@katielaskylaw.com |
| | endya@katielaskylaw.com |

Elizabeth K. Abdnour
*Pro Hac Vice*
Abdnour Weiker, LLP
500 East Michigan Ave Suite 130
Lansing, Michigan 48912
P: (517) 994-1776
F: (614) 417-5081
liz@education-rights.com

*Attorneys for Plaintiffs*