### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, et al.**<br>*Plaintiffs*<br><br>**v.**<br><br>**BOARD OF SUPERVISORS OF**<br>**LOUISIANA STATE UNIVERSITY**<br>**AND AGRICULTURAL AND**<br>**MECHANICAL COLLEGE**<br>*Defendant* | **Case No.: 3:21-cv-00242**<br><br>**Division WBV-SDJ**<br><br>**JUDGE WENDY B. VITTER**<br><br>**MAGISTRATE JUDGE JOHNSON**<br><br>**JURY DEMANDED** |

### MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE AND DAUBERT MOTION TO EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFFFS' EXPERT WITNESSES JOSEPHINE DOHERTY AND ANDREW VERZILLI

Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch ("Plaintiffs"), through undersigned counsel, respectfully submit this Memorandum in Opposition to the Motion in Limine and Daubert Motion to Exclude or Limit Testimony of Plaintiffs' Expert Witnesses Josephine Doherty and Andrew Verzilli (the "Motion") (ECF No. 439) filed by Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board") in the above-captioned litigation.

### BACKGROUND

Defendant's Motion seeks to limit the testimony of Josephine Doherty and Andrew Verzilli, experts in vocational rehabilitation and economics, respectively, who have been retained to testify on Plaintiffs' loss of earning capacity and future wages in the above-captioned litigation. As set forth below and in the memorandum that follows, both are highly credentialed and qualified to testify on the matters for which they are proffered.

Josephine Doherty is proffered as an expert in vocational rehabilitation and life care planning, and her specialized knowledge, experience, and expertise will be helpful to the jury in determining issues related to Plaintiffs' career prospects and loss of earning capacity as a result of the events forming the basis of this suit. Doherty has a Bachelor's of Sciences Degree in Humans Services, Masters' Degrees in both Psychology and Community Counseling, and is presently pursuing a PhD in Clinical Psychology.[1] With almost 30 years of experience in the field of vocational rehabilitation, Doherty is a Licensed Professional Counselor (LPC) and Certified Rehabilitation Counselor (CRC), a member of the National Board for Certified Counselors (NCC) and the American Board of Vocational Experts (ABVE), and possesses an International Psychometric Evaluation Certification (IPEC).[2] For more than 10 years, Doherty has served as Director, Rehabilitation Therapist, and Psychological Examiner for Comprehensive Assessment & Rehabilitations Services, Inc., where she has, among other things, provided vocational and earning capacity assessments to individuals with physical and mental disabilities and acquired physical and/or mental impairments that impact worklife expectancy.[3] She has also concurrently served as a vocational expert for the U.S. Social Security Administration since 2008.

Andrew Verzilli is a qualified economist proffered to opine on economic damages in the form of loss of wages and future earnings. Verzilli holds both a B.S. in Business Administration and an M.B.A. in Finance from Drexel and LaSalle Universities, respectively.[4] He has been an economist and principal of Verzilli Consulting Group, Inc./Verzilli & Verzilli and Consultants, Inc., f/k/a Andrew G. Verzilli, Ph.D. & Associates, since 1994. [5] In that role, he has provided

---

[1] *See* Curriculum Vitae of Josephine Doherty, attached hereto as Exhibit 1.
[2] *Id.*
[3] *Id.*
[4] *See* Curriculum Vitae of Andrew Verzilli, attached hereto as Exhibit 2.
[5] *Id.*

economic and financial analysis and prepared numerous reports on earning capacity estimates and

has testified as an expert economist in state and federal courts across the country, from Florida, to

New York, to Arizona.[6]  Verzilli has also served as adjunct professor at Drexel University, where

he taught Principles of Macro and Microeconomics for seven years, and has been published and

appeared as a guest lecturer on issues related to economics on numerous occasions over a period

of 30 years.[7]

Considering the depth and breadth of Doherty's and Verzilli's experience, along with their

formalized training and credentials, both are exceedingly qualified in their respective fields and

will be helpful to the jury in determining material issues related to understanding and quantifying

the impact of the events at issue in this suit on the Plaintiffs' lives, both now and in the future.

## LAW AND ARGUMENT

Pursuant to Rule 702 of the Federal Rules of Evidence, "[a] witness who is qualified as an

expert by knowledge, skill, experience, training, or education may testify in the form of an

opinion" where "the expert's scientific, technical, or other specialized knowledge will help the trier

of fact to understand the evidence or to determine a fact in issue;" the expert's "testimony is based

on sufficient facts or data" and is "the product of reliable principles and methods;" and "the expert

has reliably applied the principles and methods to the facts of the case."[8]  Thus, "the threshold

question in determining whether an individual may offer expert testimony under Rule 702 is

whether the individual has the qualifications to do so."[9] In making that determination, "the expert

is viewed, not in a narrow sense, but as a person qualified by 'knowledge, skill, experience, training

---

[6] *Id.*

[7] *Id.*

[8] *Matter of Tara Crosby, LLC*, 603 F. Supp. 3d 305, 307 (E.D. La. 2022).

[9] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011) (citing Fed. R. Evid. 702).

or education.'"[10] Upon determining the expert is qualified, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[11] and its progeny require that Courts "act as a 'gate-keeper' to ensure that the proffered expert testimony is 'both reliable and relevant.'"[12]

"Notwithstanding *Daubert*,…'the rejection of expert testimony is the exception and not the rule.'"[13] "[W]hen expert testimony or reports are challenged under *Daubert*, the Court's role as a gatekeeper does not replace either the traditional adversary system, or the jury's place within the system."[14] "The Daubert analysis should not supplant trial on the merits."[15] As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[16] The district judge must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"[17] "Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder."[18]

---

[10] *Id.* (citing Fed. R. Evid. 702, Advisory Committee's Note).

[11] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

[12] *Wagoner*, 813 F. Supp. 2d at 798 (citing *Wells v. SmithKline Beecham Corp.,* 601 F.3d 375, 378 (5th Cir. 2010)).

[13] *Johnson v. Samsung Electronics America, Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (quoting Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendments); *see also Williams v. E.I. du Pont de Nemours*, No. CV 14-382-JWD-EWD, 2016 WL 1417816, at *2 (M.D. La. Apr. 11, 2016) (same).

[14] *Morris v. Liberty Mut. Ins. Co.*, 2011 WL 317741, at *2 (E.D. La. 2011).

[15] *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

[16] *Daubert*, 509 U.S. at 595.

[17] *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Williams,* 2016 WL 1417816 at *2 (quoting *Johnson*, 277 F.R.D. at 165) ("Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'").

[18] *Anderson v. Allstate Ins. Co.*, No. CV 17-597-JWD-SJD, 2021 WL 292440, at *8 (M.D. La. Jan. 28, 2021) (citing General *Electric Capital Business Asset Funding corp. v. S.A.S.E. Military Ltd.*, No. SA-03-CA-189-RF, 2004 WL 5495590, at *5 (W.D. Tex. Oct. 21, 2004; *Viterbo,* 826 F.2d at 422; *Trinity Med. Servs., L.L.C. v. Merge Healthcare Sols., Inc.*, No. 17-592, 2020 WL 1309892, at *7 (M.D. La. Mar. 19, 2020)).

Defendant's Motion seeks to limit the testimony of Josephine Doherty and Andrew Verzilli, experts retained by Plaintiffs to testify on matters relevant to damages in this case—and not on causation, Defendant's liability, or Title IX standards and practices, as Defendant contends. Specifically, Doherty is proffered as an expert in vocational rehabilitation and life care planning, and her specialized knowledge, experience, and expertise will be helpful to the jury in determining issues related to Plaintiffs' career prospects and loss of earning capacity as a result of the events forming the basis of this suit.[19] Verzilli, for his part, is a qualified economist proffered to opine on economic damages in the form of loss of wages and future earnings. Both Doherty and Verzilli are exceedingly qualified in their respective fields and will be helpful to the jury in determining material issues related to understanding and quantifying the impact of the events at issue in this suit on the Plaintiffs' lives, both now and in the future.

Defendant does not seem to raise any legitimate challenge to the qualifications of either Doherty or Verzilli, but rather takes issue with the methodologies they employ in reaching conclusions in this case. Regardless, it should be noted that both are more than sufficiently qualified, and each has the necessary experience, skill, and technical expertise to offer insights and opinions beyond the understanding and knowledge of the common lay juror. Considering the credentials of these two experienced and skilled professionals, as described *supra,* both are qualified to opine on the matters for which they are, respectively, proffered as experts. The next question, then, becomes whether their testimony is sufficiently relevant and reliable to aid the jury in deliberating on issues that are material to this case. The answer to this query, as regards both Doherty and Verzilli, is resoundingly in the affirmative.

---

[19] Ms. Doherty does not intent to opine on whether the Board's actions or inactions, either before or after the events at issue, were the cause of Plaintiffs' diminished career prospects, nor whether the actions of others caused or impacted same. However, if questioned by Defendant on those matters at trial, it is expected that Ms. Doherty would answer in the affirmative.

## I. DEFENDANT'S OBJECTIONS SHOULD BE ADDRESSED THROUGH CROSS-EXAMINATION, NOT THE EXCLUSION OR LIMITATION OF EXPERT TESTIMONY.

"Loss of earnings capacity has been defined by the jurisprudence as a "diminution in [plaintiff's] stream of income."[20]

It is not predicated upon the difference of earnings before and after the injury but rather "encompasses the loss of one's earning potential—the loss or reduction of a person's capacity to do that which he is equipped by nature, training and experience, and for which he may receive recompense."[21]

The "base figure used to calculate future wage loss is the difference between what a person could have earned 'but for' the accident and what he is able to earn upon returning to work."[22]  While such an award must be supported by evidence and not based on mere speculation, when such a "claim cannot be established with mathematical certainty, it can be estimated by plaintiff's own testimony" and the testimony of experts qualified to opine on the matter.[23]

The testimony of experts in the fields of vocational rehabilitation and economics will, most certainly, aid the fact finder in making this determination.[24]  The general rule permitting expert testimony under Rule 702 "yields only when 'the source upon which an expert's opinion relies is of such little weight ... that [the] testimony would not actually assist the jury in arriving at an intelligent and sound verdict.'"[25] "When an expert's qualifications and methodology are sound and

---

[20] *Desimone v. Shoney's, Inc.*, No. CIV. A. 89-5081, 1990 WL 130612, at *3 (E.D. La. Sept. 6, 1990) (citing *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 169 (5th Cir. 1990).

[21] *Id.* (citing *Wactor v. Pickens Lumber Co.*, 505 So. 2d 815, 820 (La. App. 2 Cir.), *writ denied,* 508 So. 2d 827 (La. 1987)).

[22] *Id.* (quoting *Masinter v. Tenneco Oil Co.*, 867 F.2d 892, 899 (5th Cir. 1989).

[23] *Id.* (citing *Holman v. Reliance Ins. Companies*, 414 So.2d 1298 (La. App. 2d Cir.1982); *Partner v. Anderson*, 513 So. 2d 471 (La. Ct. App. 1987)*; Jordan v. Travelers Insurance Company*, 257 La. 995, 245 So.2d 151 (1971)).

[24] *See Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 3490431 (E.D. La. Jun. 26, 2020) (citing *Finnie v. Vallee*, 620 So. 2d 897, 901 (La. App. 4 Cir.), writ denied, 625 So. 2d 1040 (La. 1993)) ("Expert testimony of an economist might best prove this type of [earning capacity] loss. However, the plaintiff's own testimony, if credible and truthful, may suffice in proving his claim.")).

[25] *Murray v. McKee*, No. CV 20-2979, 2023 WL 5950129, at *3 (E.D. La. Jul. 21, 2023) (citing *Smith v. Starr Indemnity & Liability Company*, 807 Fed. Appx. 299, 302 (5th Cir. 2020)).

when that expert reviewed reliable evidence" his testimony should not be excluded.[26] "Any inconsistencies or weaknesses in [the expert's] testimony are ripe for cross-examination. However, they are not grounds to prevent his testimony entirely."[27]

Assuming *in arguendo* that Defendant's criticisms of Doherty's and Verzilli's reports were valid, those critiques are still not an appropriate basis for excluding or limiting testimony prior to trial. Doing so would only usurp the jury's role in deciding the weight to be given to testimony of the various experts called to opine on these and other matters. Defendant will have the opportunity to cross-examine both experts on what it perceives as weaknesses in their reports and the bases for their opinions, and there is nothing preventing Defendant from offering rebuttal testimony to challenge their conclusions. In fact, Defendant has identified experts it intends to call at trial for that very purpose, and those experts have prepared reports whose findings counter Doherty and Verzilli's conclusions. "[A] differing opinion is not a question of admissibility."[28] It is for the jury to decide which of these various experts they find to be the most credible. Instead, Defendant would have this Court take away from the fact finder the opportunity to deliberate on Plaintiffs' loss of earning capacity and future wage claims, and to merely accept the testimony of Defendant's experts alone as gospel. But that is not what Rule 702 and *Daubert* permit.

Moreover, Defendant's arguments concerning causation and actual losses incurred by Plaintiffs are inapposite. As both this Court and the Louisiana Supreme Court have noted:

> Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.[29]

---

[26] *Id*.

[27] *Id*.

[28] *Farshad*, 2022 WL 528316 at *2.

[29] *Carr v. Enter. Marine Servs., LLC*, No. CV 19-14777, 2021 WL 1985163, at *3 (E.D. La. May 18, 2021) (quoting *Folse v. Fakouri*, 371 So. 2d 1120, 1124 (La. 1979)).

Neither Doherty nor Verzilli are being proffered to testify on causation or actual losses sustained by Plaintiffs; their testimony is intended to, and will, aid the jury in quantifying lost earning capacity and future earnings. To the extent that the cause of Plaintiffs' injuries or the actual losses they have sustained call the accuracy of Doherty's and/or Verzilli's conclusions into question, those matters are appropriately addressed through cross-examination and the rebuttal testimony of other experts—not by excluding the opinions of these experts. Both witnesses "will presumably be subject to vigorous cross examination and '[i]t is the role of the adversarial system, not the court, to highlight weak evidence.'"[30]

All of these matters go to the bases upon which Doherty's and Verzilli's opinions are based, not the reliability of the methodologies they applied.[31] "[T]he reliability of data underlying an expert's opinion goes to the weight of this evidence, but should not serve as a basis for its exclusion.[32] As this Court has made clear:

> Courts should not [be] lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Therefore, challenges to the factual bases or underpinnings of an expert opinion usually go only to weight and credibility of the evidence, not admissibility.[33]

---

[30] *Becnel v. Lamorak Ins. Co.*, No. CV 19-14536, 2022 WL 2182527, at *3 (E.D. La. June 16, 2022) (holding Ms. Crawford, a vocational expert, "will presumably be subject to vigorous cross examination…. EMS is free to argue to the jury that Plaintiff would not have achieved the level of Captain with EMS. Indeed, EMS notes that Dr. Davis's proposed expert testimony contradicts Ms. Crawford's proposed testimony that Plaintiff would have likely achieved the level of Captain with EMS. Therefore, the Court will not exclude the challenged proposed testimony of Ms. Crawford.").

[31] *Farshad*, 2022 WL 528316 at *2 ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

[32] *In re Katrina Canal Breaches Consol. Litig.*, No. CA 10-866, 2012 WL 4328354, at *1 (E.D. La. Sept. 20, 2012) (citing *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 392–93 (5th Cir. 2002); *General Electric Capital Business Asset Funding Corp.*, 2004 WL 5495590 at *4).

[33] *Id.* (internal citations and quotations omitted). *See also Wright v. Nat'l Interstate Ins. Co.*, No. CV 16-16214, 2017 WL 4011206, at *3–4 (E.D. La. Sept. 12, 2017) ("Defendants' main objections are with issues of credibility and weight to be given to Plaintiff's experts, which are questions best left to the trier of fact. Defendants can address their concerns at cross examination. Accordingly, Defendants' motion is DENIED.").

The present motion is "predominantly based on attacks concerning the underlying facts upon which each opinion was based. That approach is not contemplated under a *Daubert* challenge."[34]   For example, Defendant raises objections to Verzilli's conclusions based on his assumption of Plaintiffs' projected retirement age of 67, "choosing to assume that each Plaintiff would work, uninterrupted, until the age of 67 under the guise of that being the 'normal retirement age.'"[35]   However, such an argument is unsupported by applicable case law.

To illustrate, in *Carr v. Enter. Marine Services, LLC*, the defendant objected to an expert's opinion based on the assumption that the plaintiff would continue to work until he was 74 because there was no "reliable evidence that Plaintiff would have worked until he was seventy-four."[36] The Eastern District declined to exclude the expert's testimony on this basis, finding that the defendant's arguments did not content that the expert "used an unreliable methodology to calculate lost wages," but rather that he "used questionable assumptions about Plaintiff's remaining worklife."  The Court denied the defendant's objection, opining:

> As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[45] As with Ms. Crawford, EMS's arguments go to the strength of Dr. Rice's testimony and EMS's concerns about the bases of Dr. Rice's opinion can adequately be addressed on cross-examination. Therefore, the Court will not exclude the challenged testimony of Dr. Rice.[37]

---

[34] *Id.*

[35] Mem. in Supp. of Mot. 8, ECF No. 439-1.

[36] *Carr*, 2021 WL 1985163 at *4.

[37] *Id.  See also Murray*, 2023 WL 5950129 at *2–3 (distinguishing *Naquin v. Elevating Boats, LLC*, 2012 WL 1664257 (E.D. La. May 11, 2012), which precluded "economist from calculating plaintiff's future lost wages based solely on the plaintiff's assurance that he intended to work until 70," on the grounds that the economist employed improper methodology in calculating plaintiff's expected working life" based on "plaintiff's self-serving testimony alone," but which deferred ruling and "did not out-right prevent expert from testifying the plaintiff would work until age 70," but instead allowed plaintiff to present additional evidence at trial that he likely would have had a longer work life expectancy than the standard rate used by the Department of Labor).

If the Board chooses to challenge the assumptions upon which Doherty and/or Verzilli relied in reaching their conclusions, it may properly do so through cross-examination.[38] "Simply disagreeing with the underlying facts relied on by an expert is not grounds for excluding that expert under *Daubert.*"[39] On a *Daubert* motion, Courts are "concerned with screening unreliable methodologies, not judging conclusions."[40]

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' [in Fed. R. Evid. 702] is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

> In other words, once it has been established that a legitimate factual dispute exists and that there is a plausible evidentiary basis for an expert's opinion, it is not the role of the court to take sides with regard to the factual dispute. At that point, the court determines whether the methodology used by the expert meets the reliability requirements of *Daubert,* and if so, the disputed factual issues are left to be weighed by the jury.[41]

---

[38] *Marin v. Falgout Offshore, LLC*, No. CIV.A. 11-428, 2011 WL 6000848, at *3 (E.D. La. Nov. 30, 2011) ("Simply disagreeing with the underlying facts relied on by an expert is not grounds for excluding that expert under *Daubert….* Defendant may cross-examine both witnesses at trial regarding the facts of the incident… and whether the facts as presented at trial fit their expert opinions.").

[39] *Martinez v. Offshore Specialty Fabricators, Inc.*, No. CIV.A. 08-4224, 2011 WL 820313, at *3 (E.D. La. Mar. 2, 2011); *United States v. Brown*, No. 3:21-CR-00238-01, 2023 WL 4637168, at *2 (W.D. La. July 19, 2023) (Government's apparent disagreement with expert's general analysis of toxicology screen was not suited to *Daubert* motion, and Government's arguments concerning effects of cocaine and duration of those effects were "better suited to vigorous cross-examination"); *Richardson v. SEACOR Lifeboats, LLC*, No. CIV.A. 14-1712, 2015 WL 2193907, at *3 (E.D. La. May 11, 2015) (holding that "[s]imply disagreeing with the underlying facts relied on by an expert is not grounds for excluding that expert under *Daubert,*" and defendant may instead "attempt to prove at trial that the accounts of the incident made by the Plaintiff and his co-worker are inaccurate or inconsistent and cross-examine [the expert] regarding those disputed assumptions."); *Carroll v. Praxair, Inc.*, No. 2:05CV 0307, 2007 WL 656646, at *5 (W.D. La. Feb. 23, 2007) (holding defendant's disagreement with expert's diagnostic methods was not proper basis for excluding testimony under *Daubert* and opining: "That there exists an alternative (or even better) method to reach a medical diagnosis does not mean that the method employed by the instant expert is unreliable").

[40] *Id. See also Bryant v. Tidy Bldg. Servs.*, 95-2724 (La. App. 4 Cir. 7/3/96), 678 So. 2d 48, 51, *writ denied,* 96-2026 (La. 11/8/96), 683 So. 2d 273 (Plotkin, J., dissenting) ("[t]he purpose of the *Daubert/Foret* test is to prevent the admission of unproven scientific theory from unqualified experts or from qualified experts using improper methods or research techniques; this type of evidence is commonly referred to as "junk science.'").

[41] *Sigur v. Emerson Process Mgmt.*, 492 F. Supp. 2d 565, 567, n. 3 (M.D. La. 2007) (citing Advisory Committee Notes to Rule 702(1); *Downeast Ventures Ltd. v. Washington County,* 2007 WL 679887, *2–3 (D. Me. 2007)).

This Court's decision in *Murray v. McKee* is instructive.[42]  There, like here, the defendant sought to exclude an undisputedly qualified vocational rehabilitation expert because his opinion was based on a purportedly "shaky foundation."[43]  Specifically, the defendant complained that the expert failed to consider any purportedly "inconvenient information" in forming his opinion on lost wages, including prior and subsequent accidents and other facts that caused defendant to question whether the plaintiff's injuries were adversely affecting his employment opportunities.[44] The plaintiff responded that his methodology was sound and based not merely on plaintiff's own self-reported capacities, but also on accounts of plaintiff's and defendant's physicians, hundreds of pages of medical and employment records, and government data,[45]  and that that defendant's motion was "really an attack on causation disguised as an issue with [the expert's] opinion." Instead, the plaintiff argued, the defendant "failed to point out any issue with the expert's methodology or qualifications, but merely disputed the facts upon which he based his opinion;[46] "[a]ny issues with the basis for [the expert] opinion are better left to the jury," as "attacks against the data that support an expert's opinion go to 'the weight of [the] evidence but should not serve as a basis for its exclusion.'"[47]

---

[42] *Murray*, 2023 WL 5950129 at *3.

[43] *Id*.

[44] *Id*.

[45] *Id*.  *See also Becnel*, 2022 WL 2182527 at *3 (declining to exclude expert testimony of vocational rehabilitation expert where her "opinions regarding Plaintiff's likely career advancement [were] rooted in some evidentiary support," such as medical records, an interview with the plaintiff, the opinion of his treating physician, vocational testing, the Dictionary of Occupational Titles, and associated research).

[46] *Id.* (internal citations omitted).

[47] *Id.*

The Eastern District agreed.[48]  It denied the defendant's motion, finding that even if the expert failed to consider the items enumerated by the defendants, that did not render the expert's methodology sufficiently unreliable to warrant his exclusion.[49]  Rather "these issues should go to the weight the jury gives to that expert's opinion."[50]  The Court came to a similar conclusion in *Guidry v. Enter. Offshore Drilling, LLC*, declining to exclude the testimony of an economist without vocational expertise to opine on lost future earnings, since the expert had not made a vocational rehabilitation determination that the plaintiff would only be capable of working minimum wage jobs, nor concluded that lost earnings must be premised on minimum wage. Instead, his report merely set forth the method for calculating lost future earnings, and used minimum wage as an example.  The Court explained:

> Dr. Rice's report sets forth his methodology, and discloses the assumptions upon which he relied in making his calculation. It does not foreclose a different conclusion if a different future wage rate is used. Thus, defendants' challenge is to the basis for Dr. Rice's opinion. Cross-examination and presentation of contrary evidence are the appropriate means to challenge it. Indeed, in their memorandum in support, defendants state that they intend to bring their own expert to testify that plaintiff can return to work in his pre-accident capacity, and that his earning capacity has not changed. There is no need for the court to issue a blanket exclusion of Dr. Rice's testimony based on *Daubert*.[51]

In another case in the Eastern District, *McCoy v. Isidore Newman School,* the testimony of the Board's own vocational rehabilitation expert in this case, Nancy Favaloro, was challenged on similar grounds.[52]  There, Favaloro had assessed "the vocational rehabilitation and future employability of plaintiff" and concluded that the plaintiff might be better suited to lower-skilled,

---

[48] *Murray*, 2023 WL 5950129 at *3.

[49] *Id.*

[50] *Id.*

[51] *Guidry v. Enter. Offshore Drilling, LLC*, No. CV 20-1795, 2022 WL 539276, at *1-*2 (E.D. La. Feb. 23, 2022).

[52] *McCoy v. Isidore Newman School*, No. CV 19-1810, 2022 WL 4533773, at *2 (E.D. La. Sept. 28, 2022), *on reconsideration in part,* No. CV 19-1810, 2022 WL 17252579 (E.D. La. Nov. 28, 2022).

lower-stress jobs.[53]   To reach this conclusion she had interviewed the plaintiff and reviewed the

plaintiff's school and medical records, including records of plaintiff's treating mental health

practitioners, physicians, and psychiatric experts.[54]   While the defendant did not challenge

Favaloro's credentials, it did challenge her ultimate opinion on the grounds that it was inconsistent

with record evidence, including plaintiff's own testimony that she had worked part time, completed

her undergraduate degree, and intended to pursue an advanced degree.[55]   The defendant also

argued that Favaloro's report was unreliable because it incorrectly cited the United States Bureau

of Labor statistics for the median hourly wages of jobs for which Favaloro determined the plaintiff

was suited.[56]

   The Court denied the defendant's motion to exclude Favaloro, holding:

> Essentially, Newman's position is that Favaloro should have relied solely on
> plaintiff's situation as a college student to predict her future earnings, and
> disregarded inconsistent medical or other evidence. This is a challenge to the bases
> for Favaloro's opinion. However, "questions relating to the bases and sources of an
> expert's opinion affect the weight to be assigned that opinion rather than its
> admissibility and should be left for the jury's consideration." It may be challenged
> through cross-examination. With respect to the contention that Favaloro incorrectly
> cites Bureau of Labor statistics, Newman acknowledges that while Favaloro's
> report purports to include the "median" average wage for certain post-injury jobs,
> she actually cited the "mean" hourly wage in the Atlanta, Georgia area for those
> positions. This oversight is easily corrected.[57]

---

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *McCoy,* 2022 WL 4533773 at *2 (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *14.38 Acres of Land,* 80 F.3d at 1077).

Here, Defendant merely disputes the facts upon which Doherty and Verzilli base their opinions; Defendant's motion is really an attack on causation disguised as *Daubert* issue.[58]   The caselaw is clear that objections such as those raised by the Defendant here are not the proper basis for excluding expert testimony, but rather may be addressed at trial through rigorous cross-examination and the presentation of rebuttal testimony through fact and expert witnesses. Defendant is represented by able counsel who may question Doherty and Verzilli on just such matters, and they have further identified both fact and expert witnesses that can serve that purpose. Defendant's Motion should therefore be denied.

## II.   DEFENDANT'S ATTACK ON THE GAMBOA GIBSON MODEL IS WITHOUT MERIT.

Faced with the adverse authority outlined in the preceding pages, Defendant's arguments concerning the Gamboa Gibson model also fail.  The Gamboa study has been relied on by experts in the field of vocational rehabilitation for over three decades, and "[i]t has been held that regression analyses like the Gamboa study 'are generally considered reliable disciplines.'"[59] Courts have found the Gamboa-Gibson model is "properly supported by statistical data;"[60] "the tables on which Dr. Gamboa relied are well-accepted, broadly-based census data that correlate the worklife expectancy of two similarly-situated groups of wage earners matching plaintiff's age, gender and level of education attained."[61]

---

[58] *See George v. Louisiana Dep't of Pub. Safety & Corr.*, No. CV31400338JWDEWD, 2016 WL 3455378, at *4 (M.D. La. June 20, 2016) ("it is clear that they simply disagree with the conclusions of this expert, not on *Daubert*-worthy grounds but rather, for reasons that are most appropriately tested by the traditional means of cross examination and ultimately left to the sound judgment of the jury").

[59] *Nilavar v. Osborn,* 137 Ohio App.3d 469, 738 N.E.2d 1271 (2nd Dist. 2000) (*citing State of Ohio ex rel. Montgomery v. Louis Trauth Dairy, Inc.,* 925 F.Supp. 1247 (S.D.Ohio 1996).

[60] *Shaheen v. Advantage Moving & Storage, Inc., 369 Ill. App.* 3d 535, 544, 860 N.E.2d 375, 383–84 (2006).

[61] *Knitowski v. Gundy, No. A-5945-0*9T1, 2011 WL 5419859, at *9–10 (N.J. Super. Ct. App. Div. Nov. 10, 2011) (citing *Creanga v. Jardal,* 185 *N.J.* 345, 360 (2005).

As Doherty explained in her expert report:

> [T]he Gamboa Gibson Worklife Expectancy Model is utilized because this model relies upon a life-participation-employment (LPE) model. The LPE model is the most reliable means of assessing reduced earning capacity specifically as associated with a work disability.[62]
>
> *****
>
> Additionally, the Gamboa Gibson Worklife Expectancy Model takes into consideration the fact that there is no mandatory retirement age, and the typical analysis includes the slight likelihood that an individual may work at least on a part-time basis up to the age of 84. Because the current standard retirement age is 67, this age was utilized in the present analysis, and thus, these figures are again conservative.[63]

Contrary to Defendant's assertions, the Gamboa Model has regularly been accepted by courts as a reliable basis for expert opinions and testimony.[64]  As one court explained:

> Mr. Gamboa relied on a study conducted by the U.S. Census Bureau, which he has used throughout his career and to which he applies his education and experience to try to account for the admitted limitations of the study. *The methodology of using worklife expectancy tables has been peer reviewed.* Gamboa has been allowed to testify 35 times in the past two years. Other courts have heard challenges to Mr. Gamboa and have found him competent to render expert opinions. The district court for the Eastern District of Pennsylvania found that "the Worklife Expectancy table really represents a statistical exercise constructed to estimate economic loss, and is not expected to reflect actuality. *The weight and credibility of the data relied upon to construct the table may be challenged on cross-examination at trial.*"[65]

---

[62] Excerpts from Josephine Doherty's Vocational Evaluation & Earning Capacity Assessment, attached hereto as Exhibit 3, at PLAINTIFFS_00001630.

[63] *Id.* at PLAINTIFFS_00001633.

[64] *See, e.g., Anderson, Kenneth v. Tommie L. Rogers, et al.*, No. CW 12-00542 (La. Ct. of App., May 29, 2012); writ application denied *Anderson, Kenneth v. Tommie L. Rogers, et al.*, No 2012-CC-1468 (La. Sup. Ct. Oct. 8, 2012); *Johnson v. CSX Transportation, Inc.,* 2006/2008. 04 L 4146 (Appellate Court of Illinois, December 24); *Firgurski v. Trinity Health-Michigan*, No. 11-026466-NH (Livingston Circuit Court of Michigan, March 5); *Borne v. Celadon Trucking Servs., Inc., No. W2013-01949-COA-R3CV*, 2014 WL 3778743, at *23–24 (Tenn. Ct. App. July 31, 2014), *aff'd in part, vacated in part, rev'd in part, 532 S.W.3d 27*4 (Tenn. 2017) (admitting vocational rehabilitation opinion based on Gamboa's model and finding "no basis for straying from the lost earnings figure suggested thereby); *Petersen v. Union Pacific R. Co.,* 2008 WL 2704746 (C.D.Ill.2008) (finding Gamboa qualified to make calculations and projections regarding future care and present lost income).

[65] *Thakore v. Universal Mach. Co. of Pottstown,* 670 F. Supp. 2d 705, 730–31 (N.D. Ill. 2009) (collecting cases).

15

In another case, a court admitted Gamboa to testify as an expert on the basis that his model was "properly supported by statistical data" and that he explained why particular American Community Survey (ACS) data tables were selected and relied upon, and incorporated necessary portions of medical records and doctor's opinions in order to reach a conclusion, and by doing so, competently explained "the 'why and wherefore,' of his opinion."[66]  The court found that "the findings of a medical doctor were a sufficiently reliable basis for a specialist's opinion under Rule 702(b);"[67]  Gamboa was simply "translating what the doctors have said ... and putting it into a work life and economic loss based on a reduced work life and… earning capacity as represented by his physical condition. Which, as a vocational economist, he's allowed to consider and to evaluate, *because that's what vocational counselors do.*[68]

In *Shafer & Freeman Lakes Environment Conservation Corp. v. Stichnoth*, a vocational expert used a computer program developed by Gamboa to analyze data sets and evaluate the plaintiff's claims for loss of capacity and future earnings.[69] The plaintiff moved to exclude his opinion on the basis that the data relied upon by Gamboa was based was scientifically unreliable.[70] The trial court rejected its arguments, similar to those asserted by Defendant's here, that the Gamboa model was not designed to be used in forecasting future earning capacity impairment.

---

[66] *Cox v. Matthews*, 901 N.E.2d 14, 21–22 (Ind. Ct. App. 2009).
[67] *Id.* at 22 (distinguishing *Kempf Contracting & Design, Inc. v. Holland–Tucker*, 892 N.E.2d 672, 678 (Ind.Ct.App.2008), which held that trial court had erred by admitting the testimony of vocational economic analyst on the grounds that the plaintiff had "failed to present *any* evidence to establish the scientific reliability of [the specialist's] methodology" (emphasis in original)).
[68] *Id.* (emphasis added).
[69] *Shafer & Freeman Lakes Env't Conservation Corp. v. Stichnoth, 877 N.E.2d 4*75, 484–85 (Ind. Ct. App. 2007)
[70] *Id.*

On review, the court of appeals upheld the trial court's ruling, holding:

 [O]ur review of the record shows that the trial court thoughtfully performed its gatekeeping function. As the trial court observed, and as the parties stated during oral argument, Dr. Berla's testimony was a hybrid of specialized knowledge and scientific evidence. The trial court carefully considered the arguments by both parties regarding the scientific bases for the challenged testimony, and we cannot say that the trial court's analysis was incorrect. Further, Shafer was able to thoroughly cross-examine Dr. Berla and present its own evidence that the Gamboa data sets were unreliable for use in this case. Shafer has not demonstrated that the trial court's decision to permit Dr. Berla's testimony was an abuse of discretion.[71]

Courts have also rejected the Board's argument that the Gamboa Tables fail to distinguish between degrees of impairment and group too wide a range of disabilities together.  As one court explained, "[w]hile it is true that some people within the ACS data may have sustained injuries greater than the injuries that plaintiff sustained, the ACS data also includes individuals who suffered a lesser injury." [72] The court rejected "defendants' contention that Dr. Gamboa's testimony was rendered inadmissible simply because the ACS data upon which he relied was not based on data that was identical to plaintiff's occupation and precise injury,"[73] reasoning that to find otherwise would set an untenable standard requiring every expert "to rely on a study that precisely mirrored the type of injury sustained by a similarly featured plaintiff before a court could admit"

---

[71] *Id.* In so affirming, the appellate court quoted the relevant portions of the trial judge's ruling, as follows:

Well, I certainly know a lot more than I did…. I'm still inclined to let the witness testify. I'll tell you why. I don't think this is real science. I think it's something someone can be an expert about. I think most experts who are social science experts gain their credibility and their ability to be an expert from some discipline that they're particularly trained at intellectually and have experience at by writing or studying or doing research or running surveys or something. And I think you can be qualified as an expert if you can demonstrate on the record that you have an ability based upon your experience and your training, your education, to give an opinion that recognizes all sides of the issue and because of what you know and study and thought about you believe that you're on the correct side of the issue.

[72] *Knitowski*, 2011 WL 5419859 at *9–10 (citing *Coll v. Sherry,* 29 N.J. 166, 174–75 (1959).

[73] *Id.* (citing *Coll v. Sherry,* 29 *N.J.* 166, 174–75 (1959).

testimony" relying "on such testing and related scientific literature as a basis for the opinion. That position is clearly inconsistent with existing law."[74]  Instead, the court found,

> Some accommodation must be made between the inability to foresee what will eventuate in the future and the principle that a plaintiff may not bring successive actions to recover for the results of a tortious personal injury as they unfold.... If the prospective consequences may, in reasonable probability, be expected to flow from the past harm, plaintiff is entitled to be indemnified for them. The amount to be awarded must largely be left to the good judgment of the jury.[75]

In denying the defendant's motion, the court held expert testimony is "not inadmissible simply 'because it fails to account for some particular condition or fact which the adversary considers relevant.' The weight and credibility of the data upon which an expert relies is best challenged though traditional tools for testing the validity of expert testimony, such as cross-examination."[76]

Another court of appeals reached the same conclusion in *Shaheen v. Advantage Moving & Storage, Inc.*, where the defendant argued that Gamboa relied on government statistics that failed to distinguish differences in the extent of partial disabilities and the effect of disabilities across different occupations, *i.e.,* the data only distinguished between severe and non-severe work disabilities, and failed to take into account that plaintiff earned more in the year following the accident than the preceding year.[77] The court denied the defendant's *Daubert* motion, finding "Gamboa provided an adequate foundation for his opinion with his credentials and his use of data typically used by persons in his profession."[78] Rather, the *Shaheen* court held, "Defendants' arguments go to the weight and credibility of Dr. Gamboa's testimony, not to its admissibility."[79]

---

[74] *Id*.

[75] *Id*.

[76] *Id.* (citing *Thakore*, 670 F.Supp.2d at 730) (holding any defects in Gamboa's testimony went to the weight of his opinion, not to its admissibility).

[77] *Shaheen*, 369 Ill. App. 3d at 544.

[78] *Id.* at 545 (citing *Becht v. Palac,* 317 Ill.App.3d 1026, 1034, 251 Ill.Dec. 560, 740 N.E.2d 1131 (2000).

[79] *Id.* (internal citations omitted) (noting defendants had effectively used the gain in actual earnings to impeach Gamboa).

In relying on the Gamboa Gibson model to perform calculations concerning Plaintiffs' vocational and earning capacities, Doherty simply translated information about the Plaintiffs' respective physical and psychological conditions and impairments into a framework to explain work life and economic losses based on a reduced work life and reduced earning capacity; Verzilli in turn translated those functional capacities into monetary figures to account for wage loss. As vocational rehabilitation and economics experts, they are allowed to consider and to evaluate the facts and circumstances of this case in that manner, "because that's what vocational [counselors and] economists do."[80]

### III.    VERZILLI'S OPINIONS ARE INDEPENDENTLY ADMISSIBLE, REGARDLESS OF THE COURT'S FINDING ON DOHERTY.

To the extent that this Court determines that Doherty's opinions should be limited or excluded—which Plaintiffs deny—Verzilli's testimony remains reliable and relevant, and his expert opinions should nevertheless be deemed admissible pursuant to Rule 702 and *Daubert*.[81] A similar issue was presented in *McCoy v. Isidore Newman School*, where an economic damages expert, John Theriot, authored an expert report quantifying loss of earnings and the cost of a life care plan prepared by vocational rehabilitation expert, Nancy Favaloro.[82] The defendant contended Theriot's report was based on unreliable methodology because he relied upon and accepted assumptions included in Favaloro's report, without independently investigating them.  As the Board does here, the *McCoy* defendant claimed "Theriot's reliance on Favaloro's opinion deviate[d] from accepted accounting principles because Favaloro's opinion was unreliable."[83]

---

[80] *Id.* (emphasis added).
[81] *Farshad*, 2022 WL 528316 at *2 (finding reliance of life care expert discussing future financials on the opinion of treating physician did not render her opinions or calculations defective).
[82] *McCoy,* 2022 WL 4533773.
[83] *Id.* at *2.

The *McCoy* court rejected this argument and declined to exclude Mr. Theriot's expert testimony, opining:

> This is a challenge to the bases of Theriot's opinion – specifically, Favaloro's opinion. The court has determined that Favaloro's report is admissible. Further, Theriot's reliance on the Favaloro report is not misplaced because it contains information "reasonably relied on by experts in his field." *See* FED. R. EVID. 703. Moreover, the assumptions incorporated by Theriot are within Favaloro's expertise, not Theriot's. As an economic expert, Theriot cannot be expected to opine on plaintiff's vocational rehabilitation; he has no choice but to rely on the expertise of a vocational rehabilitation specialist to establish benchmarks upon which to base a calculation.
>
> To the extent that Newman believes the assumptions relied upon in his calculations are unsupported, Newman may highlight that on cross-examination. On cross-examination, Newman may also request that Theriot perform an alternative calculation based on a different assumption. It will be the jury's task to determine which assumptions and calculations to credit.[84]

Here, the Board challenges the data on which Verzilli's calculations are based—namely, the conclusions of Doherty—and not his methodology.  Should the Board wish to cross-examine Verzilli on perceived weaknesses in Doherty's data or ask that he perform alternative calculations based other assumptions, it is entitled to do so.  It is not, however, entitled to have his opinions excluded on this basis.  Verzilli is a well-qualified expert economist whose method is sound, and his opinions will be relevant and helpful to the jury in determining material issues at trial. He should therefore be permitted to provide expert testimony, and Defendant's Motion should be denied as to Verzilli, regardless of the outcome as to Doherty.

---

[84] *Id.* at *3.  *Accord Farshad v. Progressive Paloverde Ins. Co.*, No. CV 21-0934, 2022 WL 528316, at *2 (E.D. La. Feb. 22, 2022) (finding methodology relied upon by treating physician was not clearly flawed, where competing expert did not put forth any allegations that expert's testimony or factual assumptions were unacceptable in her field, or that her approach differed from her own life care expert's approach, but Instead argued that treating physician's testimony should be disallowed because it was "directly contrary to the conclusions reached by plaintiff's" own life care expert, and therefore denying plaintiff's motion to exclude physician's testimony).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs Abby Owens, Samantha Brennan, Calise Richardson, Jade Lewis, Kennan Johnson, Elisabeth Andries, Jane Doe, Ashlyn Robertson, Corinn Hovis, and Sarah Beth Kitch respectfully request that the Court deny the Board's Motion in Limine and Daubert Motion to Exclude or Limit Testimony of Plaintiffs' Expert Witnesses Josephine Doherty and Andrew Verzilli (the "Motion") filed by Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board") in the above-captioned litigation.

Respectfully Submitted,

/s/ *Endya L. Hash*

| | |
|---|---|
| Karen Truszkowski | Catherine E. Lasky (La. Bar 28652) |
| *Pro Hac Vice* | Endya L. Hash (La. Bar 38260) |
| Temperance Legal Group | Katie Lasky Law |
| 503 Mall Court #131 | 619 Homedale Street |
| Lansing, Michigan 48912 | New Orleans, Louisiana 70124 |
| P: (844) 534-2560 | P: (504) 584-7336 |
| F: (800) 531-6527 | F: (504) 375-2221 |
| karen@temperancelegalgroup.com | katie@katielaskylaw.com |
| | endya@katielaskylaw.com |

Elizabeth K. Abdnour
*Pro Hac Vice*
Abdnour Weiker, LLP
500 East Michigan Ave Suite 130
Lansing, Michigan 48912
P: (517) 994-1776
F: (614) 417-5081
liz@education-rights.com

*Attorneys for Plaintiffs*