# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**                    **CIVIL ACTION NO.  3:21-CV-00242**

**VERSUS**                                **JUDGE WENDY B. VITTER**

**LOUISIANA STATE UNIVERSITY,**           **MAGISTRATE JUDGE JOHNSON**
**ET AL.**

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 1: ASHLYN MIZE ROBERTSON</u>

NOW INTO COURT, through undersigned counsel, comes defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board" or "LSU"), and submits this memorandum in support of this Motion for Summary Judgment. Plaintiff Ashlyn Mize Robertson ("Plaintiff" or "Mize") asserted claims under Title IX of the Education Amendments of 1972 ("Title IX").[1]  She is the first of the Plaintiffs to have allegedly been sexually assaulted by John Doe.[2]  She declined to participate in the Title IX process. Following this Court's ruling on the Board's motion to dismiss, Mize's only remaining claim is for Title IX heightened risk (pre-assault violation). (R. Doc. 340, p. 44) This claim fails as a matter of law for the reasons below.

## I.      FACTUAL BACKGROUND.

Mize was a student at LSU from Fall 2015 through September 2017, when she withdrew after being arrested and incarcerated for selling drugs, among other crimes.[3] (Mize 32, 43-44, 126-

---

[1] 20 U.S.C. § 1681, *et seq.*

[2] The Board accepts Plaintiff's facts as true for purposes of this motion and memorandum only. Per the Court's prior request, the Board has endeavored to eliminate duplication of legal arguments, where possible, and some of the memoranda cite laws and relevant facts from other memoranda. Therefore, the Board numbered its summary judgment motions for efficiency and to aid the court in its review.

[3] Relevant portions of the deposition transcripts and exhibits of Plaintiff, Miriam Segar, Jennie Stewart, and 30(b)(6) of the Board are attached to the Board's motion as Exhibits A, B, C and D, respectively.  The declarations of Segar and Jonathan Sanders are also attached to the Board's motion as Exhibits E and F, respectively.  Citations to the

127) During her entire time at LSU, Mize lived alone in **off-campus** housing. (Mize 15-17)  Mize

claims that, in January 2016, she hosted a party at her off-campus apartment, at which she drank

to intoxication. (Mize 66-67) She recalls going to her room and passing out on her bed. (Mize 67-

68) She recalls that several football players, who were also intoxicated, remained in her kitchen.

(Mize 67, 73) She cannot recall how many men were there.  (Mize 69) One of the men was John

Doe, although Mize said she did not invite him. (Mize 67, 73)[4]  Doe as well as others who were at

the party lived in Mize's same off-campus apartment complex.  (Mize 71; R. Doc. 182, ¶ 243)

Over the course of the next few days, Mize concluded that she had been sexually assaulted

by Doe while she was passed out in her apartment that night. (Mize 68, 76-77) Mize did not want

to report the conduct to the police. (Mize 96-97) Instead, Mize disclosed her belief to her friend

("Student A"), and she asked Student A not to tell anyone.[5] (Mize 82)  Despite her request, Student

A reported the incident to Student A's mother. (Mize 106)

Student A's mother called Student A's diving coach to share the information, and the

diving coach promptly relayed the information to Miriam Segar, Senior Associate Athletic

Director, on January 26, 2016. (Segar I 268-269; Segar Decl. ¶ 7, Exh. 5)  One hour later, Segar

met with Student A to obtain additional details. (Segar I 268-269, 271; Segar Decl. ¶ 7, Exh. 5)

Student A relayed to Segar that the assaulted individual [Mize] did not want to make a report.

(Mize 117; Segar Decl. ¶ 7, Exh. 5; *see also* Mize 109, 115) Later that same day, Segar followed

up with Student A by email, this time including information for Student A to "share with the

---

deposition will be by the last name of the deponent and the page or exhibit number.  Deposition transcripts with more
than one volume will include a Roman numeral to identify the cited volume.  Citations to the declarations will be by
the witness's last name and paragraph or exhibit number.

[4] In her intoxication, Mize perceived that Doe was not drinking. (Mize 70-71)

[5] Student A informed Segar that Mize said she "hooked up" with two men, Doe and another person. (Segar Decl., ¶ 7,
Exh. 5) Mize said it is possible she told Student A that she "hooked up" with two students and then the next day
explained that it was rape. (Mize 110-111) ████████████████████████████████████████████████
██████████████████████████████

individual you are concerned about [Mize]." (Mize Exh. 1; Segar Decl. ¶ 7, Exh. 5) That email advised, among other things, of the individual victim's rights to report to law enforcement and to report to LSU in order to allow the university to conduct an investigation. *Id.*

Mize does not recall Student A informing her of the resources that Segar included in the email, but she acknowledges that Student A encouraged Mize to visit LSU's health center, which Mize understood would be confidential. (Mize 84, 109-110, 113-114)[6] Mize went to the health center, but she said too much time had passed for a rape test to be performed. (Mize 83-84, 103) There, Mize learned she had a sexually transmitted disease, which Mize attributes to Doe ████████ ████████████████████████████████. (Mize 83-84, 102, 112)

On January 27, 2016, Segar shared the information she received from Student A with Mari Fuentes-Martin, Associate Vice President and Dean of Students, including the names of the students allegedly involved (Mize and Doe). (Segar I 267-268, 271-272; Segar Decl. ¶ 7, Exh. 5) Segar also again met with Student A, asking if Student A had spoken with Mize about her available resources and about reporting the incident. (Segar Decl. ¶ 7, Exh. 5) Student A indicated that she had, and she reiterated that Mize was adamant about not wanting assistance or wanting to report. (Segar Decl. ¶ 7, Exh. 5; *see also* Mize 109, 116) Segar again offered to meet with Mize. (Segar Decl. ¶ 7, Exh. 5) Segar followed up with Student A on January 28 and 29, 2016, attempting to encourage Mize to accept LSU's help. (Segar Decl. ¶ 7, Exh. 5) Student A once again communicated that Mize "really isn't wanting to have anything to do with it." (Segar Decl. ¶ 7,. Exh. 5)

---

[6] Mize was correct that the health center visits were confidential. While Mize testified that the health center nurse concurred with Mize's statement to her that Doe was "famous on campus," importantly, the nurse is **not** a representative of LSU whose alleged acts of "deliberate indifference" could be attributable to LSU. "[I]t is a district's own misconduct—**not** the actions of its students, rank-and-file employees, or other third parties—that exposes it to liability under Title IX." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 359 (5th Cir. 2020)(emphasis added). Mize testified that she had no problems with her discussion with the health center nurse. (Mize 120-121, 123)

From this point, Fuentes-Martin began communicating with Mize. (Segar I 278) On February 1, 2016, Fuentes-Martin reached out to Mize by email, saying, among other things:

> . . . My role as Deputy Title IX Coordinator for student cases is to ensure that we address immediate remedies for your safety and well-being. First and foremost, I want to discuss all of the services provided on and off campus to address your medical concerns as well as the availability of counseling. Secondly, we want to provide you with academic support and ensure that you are able to successfully continue with your studies at LSU. Lastly, I would like to discuss your options to investigate this incident which can be done administratively within LSU as a policy violation under Permanent Memorandum 73 (PM-73-Sexual Misconduct) which I have attached. I would like to encourage you to schedule an appointment with me so we can discuss this matter further. Please know that LSU is concerned for all of its student's [sic] and wishes to provide support and services through difficult challenges.
>
> I urge you to contact my office at (225) 578-XXXX to schedule a date and time that you can meet and discuss further. If you have any questions or just need to get further support and resources, please contact me either by phone or email at mari@lsu.edu.

(Mize 116; Mize Exh. 2)

In the meantime, on February 2, 2016, Mize met with someone in the LSU Lighthouse Program. (Mize 119-120) The Lighthouse Program is a free and confidential university resource which provides interpersonal violence prevention, support, and advocacy to the LSU campus community. (Sanders Decl., ¶ 5) The program assists student-survivors of sexual assault, interpersonal violence, stalking, and harassment with information and assistance for accessing critical services such as medical care, evidence collection and preservation, counseling and mental health care, academic accommodations, and with filing reports with investigative offices. (*Id.*) Mize did not need academic support (even though it was offered to her), and she sought no other support. (Mize 116-117)

On February 5, 2016, Mize responded to Fuentes-Martin's email:

> I apologize for responding this late but I wanted to think about everything and look at all of my options.  I have decided I would not like an investigation to be performed.  I have met with Ms. Sierra Fowler and I

4

know all of the resources that are available to me. I plan to use them if needed. I appreciate yours and LSU's support through this situation.

(Mize 118-119; Mize Exh. 3)   Although Mize expressed unwillingness to participate in an investigation, Fuentes-Martin asked her to contact Fuentes-Martin if she changed her mind:

> I'm glad you responded to me and I'm thankful that you took the time to meet with Seirra [sic]. We are all here to help you and will respect your decision not to proceed. I would like to leave the door open to future discussions with you should the need arise. I wish you the best in your endeavors.

(Mize 124; Mize Exh. 3)   Mize never returned to Fuentes-Martin or to anyone else to file a complaint against Doe or to provide details for an investigation. (Mize 124-125, 123-134) Doe also never committed another sexual act against Mize. (Mize 132)

## II.    STANDARD OF REVIEW.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The Supreme Court has interpreted this rule to mandate the entry of summary judgment against a party who is unable, after an adequate time for discovery, to establish the existence of any one element essential to her claim and on which she would bear the burden of proof at trial.[7]  The mere existence of a scintilla of evidence is insufficient.[8]  Likewise, "the mere existence of **some** factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be **genuine** and **material**."[9]  If the evidence leads to only one reasonable conclusion, summary judgment is proper.[10]

## III.    MIZE'S HEIGHTENED RISK CLAIM FAILS AS A MATTER OF LAW.

---

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).
[8] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).
[9] *Willis v Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (emphasis in original) (citation omitted).
[10] *See Anderson*, 477 U.S. at 250.

### A. **Mize Failed to Plead a Heightened Risk Claim.**

A heightened risk claim, or "pre-assault" claim, is based on a defendant's alleged acts of indifference **before** a plaintiff's assault.  Here, the Second Amended Complaint and Jury Demand (the "Complaint") sets forth purported "examples of how LSU created a heightened risk" of sexual misconduct on campus for Doe's victims, but every example discusses conduct occurring **after** Mize's alleged assault by Doe in January 2016. (R. Doc. 182, ¶ 930 (a)-(n)) The Complaint contains no factual allegations asserting a heightened risk claim for Mize.  Mize's failure to allege such a claim makes sense since Mize is the **first** of the Plaintiffs to allege conduct by Doe.

### B. **Mize's Heightened Risk Claim is Prescribed.**

Even if Mize had alleged a heightened risk claim (which she clearly has not), any such claim would be untimely.  As this Court has recognized, Title IX claims are subject to Louisiana's one-year prescriptive period. (R. Doc. 340, p. 8) "[T]he limitations period runs from the moment a plaintiff's claim accrues." (*Id.*, p. 9 (citing *King-White v. Humble Indep. Sch. Dist.,* 803 F.3d 754, 762 (5th Cir. 2015) (internal quotations omitted))).  "Federal law governs when a Title IX claim accrues." (*Id.*, p. 9 (citing *King-White*, 803 F.3d at 762)).  The Fifth Circuit summarized federal accrual precepts as follows:

> Under federal law, the limitations period begins to run the moment the plaintiff becomes aware that [she] has suffered an injury or has sufficient information to know that [she] has been injured. A plaintiff's awareness encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions. A plaintiff need not know that she has a legal cause of action; she need know only the facts that would support a claim.  Actual knowledge is not required if the circumstances would lead a reasonable person to investigate further.  (*Id.*, p 9)[11]

---

[11] *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal brackets, citations and quotations omitted); *see also Wallace v. Kato*, 549 U.S. 384, 391 (2007).

Mize claims that she was assaulted on January 22, 2016, yet she did not file suit until five years later, on April 26, 2021.  (Mize 62-63; R. Doc. 1; R. Doc. 182, ¶ 243) Therefore, Mize can only survive prescription challenges if the claim accrued at a later, timely date.  Mize cannot show her claim accrued at a later date, thus, any heightened risk claim must be dismissed.

### a.  The Husch Blackwell Report is Irrelevant to Mize's Timeliness Issue.

Plaintiffs argued to this Court that their claims were saved from prescription because they were unaware of certain facts until issuance of the Husch Blackwell Report. (R. Doc. 340, p. 2) For Mize to show the Husch Blackwell Report affected the accrual date, she must show that the Husch Blackwell Report revealed a causal link between her injuries and deliberately indifferent actions by the Board.[12]  More specifically, Mize must show that, until the issuance of the Husch Blackwell Report, she lacked knowledge of LSU's alleged deliberate indifference to a prior sexual assault by Doe that created a heightened risk of her own assault, which she cannot do.[13]  For example, in *King-White v. Humble Indep. Sch. Dist*., the Fifth Circuit evaluated whether a plaintiff's claim accrued at a later date.[14]  In that case, the plaintiff learned of complaints from other parents and of "policies" that allegedly "could not have been known at the time" of the abuse.[15]  In evaluating accrual, the Fifth Circuit referenced an analogous case held that ". . . the limitations period for a cause of action against a municipality [does not] run[] anew upon the future discovery of facts **tangentially** related to the claim."[16]  Consistently, the court held that the ordinary accrual rules applied to the plaintiffs' claims, despite tangential facts that the plaintiffs later learned.[17]

---

[12] *Piotrowski*, 237 F.3d at 576.
[13] *See id.*
[14] *King-White,* 803 F.3d at 761-763.
[15] *Id.* at 762-763.
[16] *Id.* at 763 (citations and internal alterations omitted) (emphasis added).
[17] *Id*. at 763.

Here, as in *King-White*, the Husch Blackwell Report does nothing to save any heightened risk claim (had she asserted one) from prescription, as Mize cannot point to any findings of sexual assaults by Doe **prior to** Mize's alleged assault.  Mize seems to acknowledge as much in her Complaint, where she alleges generally, not in the heightened risk context, that she learned the following from the Husch Blackwell Report:  (1)"LSU and its employees, including specifically Defendant Segar, had specific knowledge of the pervasive harassment and retaliation **she and others suffered**";[18] (2) "John Doe assaulted several more LSU students **following** Robertson's report"; (3) "LSU, including specifically Defendant Stewart, **concealed the name of Robertson's assailant from Title IX records**";[19] (4) "LSU and its employees failed to train Robertson on the resources available to her **as a survivor**"; and (5) "LSU's Title IX Policy is meant to prevent the specific emotional distress that Robertson endured." (R. Doc. 182, ¶ 287 (emphasis added))  The first four allegations relate to **post-assault** information, none of which is relevant to a heightened risk claim.[20]  The last allegation merely suggests that Mize was ignorant of the purpose of Title IX, a federal law, which does nothing to support her claim that the Husch Blackwell Report somehow disclosed information that was otherwise unavailable.  Because the Husch Blackwell Report revealed no **pre-assault** information that affected Mize's knowledge, she cannot avoid prescription on a heightened risk claim.

### b.  Plaintiff's Claims Accrued in 2016.

Had Mize asserted a heightened risk claim, such a claim accrued in February 2016.  Mize pleads that her alleged assault occurred on January 22, 2016. (R. Doc. 182, ¶ 243) This allegation

---

[18] Again, Mize cannot show that the Husch Blackwell Report revealed any conduct by Doe **to others** prior to Mize's own alleged assault.

[19] This allegation relates to post-assault activity and is irrelevant.  However, this issue is addressed in the summary judgment motions of Plaintiffs who claim subsequent abuse by Doe (and those arguments are adopted herein by reference).

[20] Notably, Mize testified that she learned of other women's allegations against Doe after her alleged assault and, as encouraged to do so by LSU, could have returned and made a report at any time.  (Mize 165-168, 198)

reached Segar by January 26, 2016, and Segar and Fuentes-Martin reached out to Mize and Student

A and offered Mize resources and a Title IX investigation from January 26, 2016, to February 1,

2016. (Segar I 267-268, 271-272, 278; Segar Decl. ¶ 7, Exh. 5; Mize 109, 116; Mize Exh. 2)  On

February 5, 2016, Mize wrote to LSU and declined a Title IX investigation. (Mize 118-119; Mize

Exh. 3)  As of that date, Mize had met with the Lighthouse Program, received notice of available

resources, been informed by email of LSU's resources for victims of sexual assault, and been asked

to report the incident. (Mize 116, 118-120; Mize Exhs. 2, 3) She also knew of the previous training

she had received prior to the alleged assault. (Mize 162) Further, as of February 5, 2016, Mize

knew of her injury, knew of the perpetrator, and knew how LSU responded. (Mize 118-119, 124;

Mize Exh. 3; *see also* R. Doc. 340, p. 18) These post-reporting offerings, when viewed alongside

the training she previously received, put Mize on notice of LSU's alleged "policy of deliberate

indifference," if one existed.  Mize knew the salient information related to her claim in February

2016, and any "tangential" information she may have later learned does not delay her accrual.

Mize has alleged nothing that would have precluded her from timely investigating her claims.

Therefore, her April 26, 2021 lawsuit is untimely.

### C. Mize Fails to Meet the Elements of a Heightened Risk Claim.

Putting aside Mize's failure to allege a Title IX "heightened risk" claim and the timeliness

issues associated with such claim, such a claim would still fail.  Title IX prohibits discrimination

on the basis of sex in all federally-funded educational programs.[21] The commonly recognized

claim under Title IX is a "post-reporting" or "deliberate indifference" claim, which claim this

Court has already dismissed as to Mize. (R. Doc. 340) Instead, the only remaining Title IX claim

---

[21] *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 2020 WL 7043944, at *7 (S.D. Tex. Dec. 1, 2020), *aff'd in part, rev'd in part*, 53 F.4th 334 (5th Cir. 2022).

at issue is a heightened risk claim, the existence and definition of which has been scarcely addressed in the Fifth Circuit.

The only Fifth Circuit opinion to have adopted a "heightened risk claim" under Title IX was *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, which evaluated and seemingly recognized the possibility of a pre-assault deliberate indifference claim, or "heightened risk" claim in the context of student-on-student sexual harassment.[22] In the instant case, this Court, consistent with *Roe*, likewise referenced a heightened risk framework premised on pre-assault student-on-student conduct in its ruling on the Board's motion to dismiss. (R. Doc. 340, pp. 37-39) This Court did **not** find a heightened risk claim existed based on an official policy.  Following this Court's lead (and the Fifth Circuit in *Roe*), the Board likewise focuses this motion on the *Roe* heightened risk analysis.

Under a pre-assault Title IX heightened risk theory, a plaintiff must prove: (1) the defendant had actual knowledge of a substantial risk that sexual abuse would occur; (2) the harasser was under the defendant's control; (3) the harassment was based on the victim's sex; (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit; and (5) the defendant was deliberately indifferent to the harassment.[23] (R. Doc. 340, p. 39)  Mize fails the first, second, fourth, and fifth elements.

### a.  Element One: Mize Cannot Establish Actual Knowledge.

Mize fails the first element because she cannot show that an appropriate person had knowledge that she faced a substantial risk of sexual harassment. "[P]laintiffs seeking to prove

---

[22] *Roe,* 53 F.4th at 340.
[23] *Id.* at 341 (internal citations omitted).

PD.41628101.2

actual knowledge must clear a high bar."[24] "[A]ctual knowledge [] means that the school must have actual, not constructive, knowledge of sexual harassment."[25] Specifically, in a case like this, where "pre-assault" behavior is at issue, a school must have knowledge "that there is a substantial risk that sexual abuse would occur."[26] A school can escape liability if it can show (1) "that it did not know of the underlying facts indicating a sufficiently substantial danger and that it was therefore unaware of a danger," or (2) "that it knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."[27]

Here, Mize was the **first** plaintiff to assert sexual assault allegations against Doe. (R. Doc. 182, ¶¶ 242-250) Mize can offer no **prior** reports to LSU of sexual assault by Doe. Thus, she cannot show any "substantial risk" which LSU was aware of and should have acted on before Mize's alleged assault.

### b. Element Two: Doe was not Under the Board's Control in This Context.

Title IX liability can only attach to student-on-student harassment when an educational institution exercises substantial control over both the harasser and the context in which the known harassment occurs.[28] "[B]ecause the harassment must occur 'under' 'the operations of' a funding recipient, the harassment must take place in a context subject to the school district's control."[29] Per the Supreme Court, "[t]he statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the

---

[24] *Kelly v. Allen Indep. Sch. Dist.*, 602 F. App'x 949, 953 n.3 (5th Cir. 2015).
[25] *Roe*, 53 F.4th at 341 (citing *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 650 (1999)); *K.S. v. Nw. Indep. Sch. Dist.*, 689 F. App'x 780, 784 (5th Cir. 2017).
[26] *Roe,* 53 F.4th at 341 (quoting *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 775 (5th Cir. 2020)) (internal quotations omitted).
[27] *Rosa H. v. San Elizario Indep. Sch. Dist.,* 106 F.3d 648, 659 (5th Cir. 1997) (citation and internal brackets omitted); *Kelly*, 602 F. App'x at 953 n.3 (applying standard to student-on-student harassment).
[28] *Davis,* 526 U.S. at 659.
[29] *Id.* (quoting 20 U.S.C. § 1681(a); § 1687 (defining "program or activity")) (other citations omitted).

11

harassment occurs."[30] Thus, Title IX does not cover student-on-student harassment that occurs off-campus, outside of a school program/activity, and outside of a context that is under the school's "substantial control."[31]

Mize's alleged assault occurred at her off-campus apartment during a drinking party that Mize hosted for some of her off-campus neighbors. (R. Doc. 182, ¶ 243-248; Mize 66-67, 71) Courts in other circuits have consistently held that student-on-student sexual harassment that occurs off campus is not "'under the control' of the university," unless it is at an off-campus facility that the university controls.[32] Although a school may exercise substantial disciplinary control over a student beyond the campus boundaries, it does not follow that the school exercises substantial control over conduct occurring in a private, off-campus apartment complex, where students happen to live.[33] Mize cannot show the Board exercised substantial control over Doe in the context of Mize's off-campus party at her off-campus apartment that had no affiliation to LSU other than that the participants happened to attend LSU.

---

[30] *Id.* at 644-645.

[31] *See id.*

[32] *Roe v. St. Louis Univ.*, 746 F.3d 874, 884 (8th Cir. 2014) (no control over rape which occurred during a private party at an off-campus apartment); *Garrett v. University of South Fla. Bd. of Trustees*, 824 F. App'x 959, 960, 965 (11th Cir. 2020) (no control over sexual assault occurring at off-campus apartment); *Samuelson v. Oregon State University*, 725 F. App'x 598, 599 (9th Cir. 2018) (no control where rape occurred at an off-campus party); *Doe v. Univ. of Missouri*, 2022 WL 4043458, at *15 (W.D. Mo. Aug. 30, 2022) (where almost all interactions occurred off campus, no control over harassment, even where school had very close disciplinary control over the student athlete at issue); *compare with Wreckhorst v. Kansas State Univ.*, 241 F.Supp. 3d 1154, 1167-68 (D. Kan. 2017) (control existed over fraternity house); *Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1177 (10th Cir. 2007) (control existed over recruiting activities off campus). As a note, some courts have cited cases finding a Title IX violation where the facts showed some off-campus conduct, but the issue of whether the school lacked "control" was not necessarily argued to the district court.

[33] In *Doe v. Bd. of Supvs. of the Univ. of Louisiana Sys.*, the court was "not persuaded" by the "one case" cited to show that off-campus student-on-student sexual assault is not actionable under Title IX. 2023 WL 143171, at *12 (M.D. La. Jan. 10, 2023). Here, though, the Board submits more robust authorities showing that off-campus activity is not covered under Title IX in this context. In addition, the *Doe* case involved different facts. There, the court focused on the fact that the plaintiff initially met the perpetrator for study sessions in the library on campus, which locations were only available because the assailant was an LSU student. *Id.* at *10. Here, Mize met Doe at her off-campus apartment complex where Doe also lived. (Mize 67, 71, 73) Moreover, the *Doe* court based its finding regarding off-campus conduct on the fact that, in that case, the court said the "university is actually aware of prior assaults by the **same** student-attacker." *Id*. at *10 (emphasis in original). By contrast, as shown above, Mize was the **first** plaintiff to allege sexual assault by Doe. (R. Doc. 182, ¶ 243-248)

### c.  Element Four, Part I: The Alleged Conduct was not Pervasive.

The Board does not intend to minimize the seriousness of an alleged sexual assault, but the single incident alleged by Mize does not meet the Title IX standard for being "severe, pervasive, **and** objectively offensive" harassment.[34] Title IX cases "are based on unwelcome sexual advances so severe and pervasive as to interfere with a student's educational atmosphere and opportunities."[35] Under *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, the Supreme Court made clear that the initial single incident is not sufficient to result in liability under Title IX. The Supreme Court expressly required that the harassment be pervasive to avoid imposing liability for a "single instance," even if that single instance is severe.[36] "A 'single instance of sufficiently severe one-on-one peer harassment' cannot have such a systemic effect [of denying equal access to an education] in light of 'the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment.'"[37] The Fifth Circuit has stated that only those claims involving "pervasive" and "widespread" conduct with the "systemic effect of denying the victim equal access to an educational program or activity" are actionable, finding that sexual harassment cannot be based on a single incident.[38]

### d.  Element Four, Part II: Plaintiff Cannot Meet her High Burden of Showing Deliberate Indifference That Caused Harassment.

#### i.  No Deliberate Indifference.

Plaintiff also cannot show that the Board was deliberately indifferent to prior sexual misconduct by Doe. As this Court has acknowledged, "deliberate indifference in the Title IX

---

[34] *Davis*, 526 U.S. at 652 (emphasis added).

[35] *Lewis v. Louisiana State Univ.*, 2021 WL 5752239, at *19 (M.D. La. Dec. 2, 2021) (citations omitted).

[36] *Davis*, 526 U.S. at 652-53.  *But see Roe*, 53 F.4th at 342-343 (acknowledging circuit split on "whether 'a single instance of sufficiently severe one-on-one peer harassment' could ever rise to the level of 'pervasive' harassment'" and noting that three circuits (6th, 8th, and 9th) have held there must be "**multiple** incidents of harassment; one incident of harassment is not enough" (emphasis in original) (citations omitted)).

[37]*Hill v. Cundiff*, 797 F.3d 948, 972 (11th Cir. 2015)  (quoting *Davis*, 526 U.S. at 652–53).

[38] *Carmichael v. Galbraith*, 574 F. App'x 286, 289-290 (5th Cir. 2014) (citing *Davis*, 526 U.S. at 652-654).

context is a 'high bar' and requires the defendant's response to be 'clearly unreasonable in light of the known circumstances.'" (R. Doc. 340, p. 28 (quoting *Roe,* F.4th at 341 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011))) "Title IX does not require flawless investigations or perfect solutions."[39] Rather, the school's response, or lack thereof, must be "clearly unreasonable in light of the known circumstances."[40] This standard is high in order to ensure institutions are liable for their own official decisions and not for their students' independent actions.[41] The institution's conduct "must amount to an intentional choice, not merely an unintentionally negligent oversight."[42] "[L]iability does not attach where the official with authority to take corrective action responds reasonably to a risk of harm, even if the harm ultimately was not averted."[43] Fifth Circuit precedent establishes that "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference," and neither do negligent delays, botched investigations of complaints, or responses that could have been improved.[44]

As the first plaintiff who was allegedly victimized by Doe, Plaintiff fails to meet her high burden of showing **prior** deliberate indifference to reports of sexual assault committed by Doe. Indeed, as noted earlier, she does not even make such allegation in her Complaint.[45]

---

[39] *Sanches,* 647 F.3d at 170 (citation omitted).

[40] *Davis,* 526 U.S. at 648.

[41] *Id.* at 643 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290-91 (1998)).

[42] *James v. Harris Cnty.*, 577 F.3d 612, 617–18 (5th Cir. 2009) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)); *see Ramos v. Webb Consol. Indep. Sch. Dist.,* 724 F. App'x 338, 340 (5th Cir. 2018) (applying same in Title IX context).

[43] *Doe,* 964 F.3d at 359 (quoting *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000)).

[44] *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (internal citations omitted).

[45] Contrast Mize's "facts" with those alleged in *Doe v. Bd. of Supvs. of University of La. Sys.*, No. 22-00338-BAJ-SDJ (M.D. La. Jan. 10, 2023). There, the court found deliberate indifference to be adequately alleged where the student-assailant had been allegedly accused by six women of sexual assault but was nonetheless allegedly allowed to transfer among three universities, and was never "suspended, expelled, criminally prosecuted, or even meaningfully investigated." The plaintiff was the sixth alleged victim of the student-assailant, and all five previous victims had allegedly reported their sexual assaults to their respective schools. Yet, the three schools he attended allegedly did not share this information with each other, and he was allegedly allowed to transfer freely among them. Additionally, upon reporting her assault, the plaintiff was allegedly not apprised of her Title IX rights, nor was she asked to make a

ii.     **No Causation.**

*Davis* also requires a causation showing— a plaintiff must show that a school's "deliberate indifference subject[ed] its students to harassment."[46] Evidence that a plaintiff was subjected to harassment because of deliberate indifference is a necessary causation element for a Title IX claim.[47] Critical to this inquiry is what occurred **after** the school's actual knowledge.[48] Mize cannot meet the *Davis* standard of showing that she was subjected to severe, pervasive, and objectively offensive harassment **because of** the alleged deliberate indifference. In fact, her testimony defeats her causation element:

> Q:  Do you think LSU bears any responsibility for what you say [Doe] did to you in January of 2016?
>
> A:  I believe they bear responsibility for what could have happened after the fact, **not the fact that he raped me, because that is his responsibility. He should bear that.** After the fact, I think LSU bears the responsibility, yes.

(Mize 184-185) (emphasis added)) Mize's post-assault allegations have already been dismissed, and her testimony defeats her heightened risk claim.

e.    **Element Five: Plaintiff Fails her Burden of Showing a Deprivation of Educational Benefits.**

Finally, Mize must show the existence of an injury, in that the harassment deprived her of "access to the educational opportunities or benefits."[49] To satisfy this requirement, the harassment must have had a "concrete, negative effect" on Mize's education.[50] Mize describes her injury as a decline in grades and her eventual resignation from LSU. (Mize 126-128; R. Doc. 182, ¶¶ 281,

---

report or statement. Similarly, deliberate indifference was adequately alleged in *Hernandez v. Baylor University*, where the student-assailant had allegedly assaulted six previous women, which Baylor had knowledge of and "failed to take any protective action." *Hernandez v. Baylor Univ.*, 274 F.Supp. 3d 602, 614-15 (W.D. Tex. 2017).

[46] *Davis*, 526 U.S. at 644.

[47] *Id.* at 645; *Doe v. Baylor Univ.*, 240 F.Supp. 3d 646, 660 (W.D. Tex. 2017).

[48] *Doe v. Univ. of Kentucky*, 959 F.3d 246, 251 (6th Cir. 2020); *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 622 (6th Cir. 2019).

[49]*Davis*, 526 U.S. at 650.

[50]*Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 585 (5th Cir. 2020) (citation omitted).

284) The Supreme Court has held "a mere decline in grades" is insufficient to show a Title IX violation.[51] Moreover, Mize's grades did not drop until Spring 2017, when she admittedly began selling drugs and started a relationship with a drug dealer who did **not** attend LSU. (Mize 28-33, 143; Mize Exh. 4) This was also well over a year after the alleged incident with Doe.  Notably, in the two semesters following the incident, her semester GPA dropped only .2 (from 3.221 to 3.011) and improved the next semester (to 3.228). (Mize Exh. 4) Further, although Mize's grades dropped later, she cannot show what caused the drop. Mize acknowledges that she chose not to use any of the educational resources offered to her. (Mize 116-117) In fact, she said she "didn't really need academic support." (Mize 117) Instead, she testified "[m]aybe if I would have used the tutoring resource, I could have kept my grades up a little bit more." (Mize 184)

In terms of Mize's departure from LSU, she testified that her mother withdrew her from school when she was arrested. (Mize 126-127) Mize testified that LSU does not bear responsibility for her arrest and subsequent withdrawal.  (Mize 185)

### D.  No Other Heightened Risk Theory is Available to Mize.

Collectively, Plaintiffs seem to base their heightened risk claims on allegations that LSU created a heightened risk of sexual misconduct by maintaining a "general custom or official policy" of deliberate indifference to reports of Title IX violations, seemingly merging two standards.[52] Notwithstanding, the Board also addresses Plaintiffs' insufficient "official policy" allegations.

### a.  The Fifth Circuit Does not Recognize Heightened Risk Based on an Official Policy.

The Fifth Circuit has not recognized a claim for Title IX heightened risk based on an official policy, and this Court's ruling on the Board's motion to dismiss does not suggest that an

---

[51] *Davis*, 526 U.S. at 652.

[52] For example, Plaintiffs frequently reference "deliberate indifference" and "actual knowledge," and make no reference to "intentional discrimination" (the official policy standard).  (*See, e.g.*, R. Doc. 182, ¶ 926)

official policy claim remains in this case. (*See* R. Doc. 340) Notably, Plaintiffs did not raise official policy heightened risk in their opposition to the Board's motion to dismiss.[53] (R. Doc. 209, pp. 20-21)  By contrast to the Fifth Circuit, the Tenth and Ninth Circuits have recognized a pre-assault heightened risk claim based on an official policy of an institution.[54] Out of an abundance of caution, the Board will demonstrate that the theory recognized by the Tenth and Ninth Circuits does not apply here.

The two cases cited most frequently for the proposition that a claim exists for heightened risk based on an official policy are *Simpson v. University of Colorado Boulder* and *Karasek v. Regents of Univ. of Ca.*, both of which involved lengthy, documented patterns of intentional conduct by the defendant-institutions that manifested in specific actions.[55] In *Simpson*, the plaintiffs were assaulted during a football recruiting visit.[56] For heightened risk claim purposes, the central question was whether the risk of such an assault during recruiting visits was obvious.[57] After reviewing the evidence, the Tenth Circuit held that a "jury could infer that the need for more or different training of player-hosts was so obvious, and the inadequacy so likely to result in Title IX violations, that [the] Coach [ ] could reasonably be said to have been deliberately indifferent to the need."[58] The holding in *Simpson* turned on the idea that there was some element of "encouragement" of the misconduct and that "the gist of the complaint is that CU sanctioned, supported, even funded, a program (showing recruits a 'good time') that, without proper control, would encourage young men to engage in opprobrious acts."[59] In other words, according to

---

[53] Plaintiffs' opposition addresses the actual knowledge and deliberate indifference factors, which apply to pre-assault heightened risk, not the official policy framework.  (R. Doc. 209, pp. 20-21)
[54] *See Simpson*, 500 F.3d 1170; *Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093 (9th Cir. 2020).
[55] *See generally Simpson*, 500 F.3d 1170; *Karasek,* 956 F.3d 1093.
[56] *Simpson,* 500 F.3d at 1180.
[57] *Id.* at 1180-1181.
[58] *Id.* at 1184-1185 (citation and brackets omitted).
[59] *Id.* at 1177.

17

*Simpson*, when the conduct is undertaken by an institution directly, "a funding recipient can be said to have 'intentionally acted in clear violation of Title IX' when the violation is **caused by** official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient."[60]

Thirteen years later, in *Karasek*, the Ninth Circuit reviewed plaintiffs' claims that UC "violated Title IX by maintaining a general policy of deliberate indifference to reports of sexual misconduct, which heightened the risk" of plaintiffs' harm.[61] There, the Ninth Circuit set forth the following elements for a so-called "pre-assault" claim to survive a motion to dismiss:

    1.   A school maintained a policy of deliberate indifference to reports of sexual misconduct;

    2.   Which created a heightened risk of sexual harassment that was known or obvious;

    3.   In a context subject to the school's control; and

    4.   **As a result** the plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school.[62]

The court remanded to the district court to apply these elements.

In 2020, the Fifth Circuit addressed heightened risk in its decision *Poloceno v. Dallas Indep. Sch. Dist.*, 826 F. App'x 359 (5th Cir. 2020). In *Poloceno*, the plaintiff was injured after being required to perform "260 ceiling jumps" for failing to wear proper gym clothes.[63] In response to the plaintiff's argument that she had properly asserted a heightened risk claim, the Fifth Circuit stated:

---

[60] *Id.* at 1178 (emphasis added) (citation omitted).
[61] 956 F.3d at 1099.
[62] *Id.* at 1112 (emphasis added) (quotations, bracket and citation omitted).
[63] 826 F. App'x at 361. Prior to plaintiff's injuries, the school principal allegedly observed students performing ceiling jumps and that same year, five females visited the school nurse with complaints of pain from performing ceiling jumps. *Id.*

> We have never recognized or adopted a Title IX theory of liability based on a general 'heightened risk' of sex discrimination, and we decline to do so. Moreover, the cases from our sister circuits that recognize the 'heightened risk' analysis limit this theory of liability to contexts in which students committed sexual assault on other students, circumstances not present here.[64]

In 2022, the Fifth Circuit addressed the issue in *Roe* when it affirmed summary judgment as to "whether the District was deliberately indifferent to the risk of [] sexual assault" (*i.e.*, a pre-assault heightened risk claim).[65] The *Roe* court evaluated plaintiff's generalized failure to train and educate and generalized record-keeping scheme claims.[66] Rather than citing factors considered by the *Simpson* or *Karasek* courts, the Fifth Circuit maintained the usual *Davis* framework: "(1) the District had actual knowledge of the harassment; (2) the harasser was under the District's control, (3) the harassment was based on the victim's sex; (4) the harassment was 'so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit;' and (5) the District was deliberately indifferent to the harassment."[67] Indeed, in *Roe*, the Fifth Circuit did not reference *Karasek* or *Simpson* and did not signal any intent to adopt those frameworks.[68]

The Fifth Circuit has not, in *Roe* or otherwise, recognized a claim of "heightened risk" based on "official policy." *Roe* sets forth the standard applicable to a heightened risk deliberate indifference claim, discussed above, and fails to endorse an official policy claim.[69] Nevertheless,

---

[64] *Id.* at 363 (citing *Simpson*, 500 F.3d 1170 and *Karasek,* 956 F.3d at 1112).

[65] *Roe,* 53 F.4th at 341, 348.

[66] *Id.* at 342.

[67] *Id*. at 341 (bracket and citation omitted).

[68] *Id.*  Although the plaintiff in *Roe* did not appeal the official policy claim, she did appeal her claims of deliberate indifference regarding a general lack of training, specifically that the school "disregarded its duties to train and educate students and staff, engaged in a record-keeping scheme designed to conceal reports of sexual misconduct and dismissed pleas from Jane Roe's mother that her daughter was in danger." *Roe,* 53 F.4th 335. Even when faced with a generalized lack of training and deficient policy argument, the Fifth Circuit did not utilize the *Karasek/ Simpson* factors.  Brf. for Plaintiff-Appellant Jane Roe, 2021 WL 1149812, at *1.

[69] The cases this Court cited in its Order and Reasons also do not adopt official policy liability.  This Court referenced *Doe v. Bd. of Supvs. of Univ. of La. Sys.*, 2023 WL 143171, at *12, which "recognized the availability of Title IX heightened risk claims." (R. Doc. 340, p. 39)  In *Doe*, the court did not reference *Karasek* or *Simpson* in evaluating plaintiff's heightened risk claim and did not evaluate plaintiff's claim under an official policy framework.  Similarly,

out of an abundance of caution, the Board will show why the record evidence in this case would not support such a claim.

### b. Mize Cannot Establish an Official Policy of Deliberate Indifference to Reports of Sexual Misconduct.

In other circuits that recognize such a claim, the "official policy rubric" is only available where the institution's official policy or custom caused the misconduct.[70] Otherwise, institutions would face near constant liability because the "very operation of a school would be accompanied by sexual harassment."[71] Instead, in order to establish liability based on an "official policy," plaintiff must show that a defendant had an official policy of intentional discrimination.[72]

Mize cannot establish that the Board "maintained a policy of deliberate indifference to reports of sexual misconduct."[73] Unlike the challenged "policies" in *Simpson* and *Karasek* relating to encouraging sex in football recruiting visits and informally resolving sexual assault claims to reduce the need for disclosure, Mize has not pointed to a single specific, non-conclusory policy, let alone one that caused her any harm. To maintain a policy of deliberate indifference, a school must do more than merely issue insufficient policies.[74] For example, "the failure to promulgate a grievance procedure does not itself constitute 'discrimination' under Title IX," and neither does non-compliance with federal regulations.[75]

---

in *Doe v. Texas A&M Univ.*, 2022 WL 5250294 (S.D. Tex. Oct. 6, 2022), the court dismissed plaintiffs' heightened risk claims because plaintiffs failed to show that TAMU was deliberately indifferent, and **not** based on whether plaintiffs could establish an official policy. *Id.,* at *16.

[70] *Simpson*, 500 F.3d at 1177-1178.

[71] *Id.* at 1177.

[72] *Id.* at 1178.

[73] *See Karasek*, 956 F.3d at 1112.

[74] *Doe* 1, 240 F.Supp. 3d at 662.

[75] *Gebser*, 524 U.S. at 292. The Supreme Court "has never held 'that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements,'" such as failure to comply with Department of Education regulations or the school's own regulations. *Sanches,* 647 F.3d at 169 (quoting *Gebser*, 524 U.S. at 292).

Notably, Mize's facts bear no similarity to other cases that have found heightened risk based on an official policy of deliberate indifference. Such cases turn on a pattern of actions, not a deficient policy. For example, in *Doe 1 v. Baylor University*, the court found plaintiffs' allegations sufficient to survive a motion to dismiss where they alleged (1) Baylor and its staff repeatedly misinformed victims of sexual assault as to their rights under Title IX; (2) failed to investigate reported sexual assaults; (3) discouraged those who reported sexual assaults from naming their assailants or otherwise coming forward; and (4) despite being informed of multiple sexual assaults, falsely (allegedly) reporting to the U.S. Department of Education that no such assaults took place on the university's campus during that period.[76] Instead, Mize's claims align more closely with the district court cases in the Fifth Circuit rejecting application of the official policy framework.[77]

It is undisputed that the Board's written official policy, Permanent Memorandum 73 ("PM-73"), prohibits sexual misconduct, including but not limited to sexual assault, sexual abuse, violence of a sexual nature, sexual harassment, non-consensual sexual intercourse, video voyeurism, obtaining, posting or disclosing an intimate description, photo, or video without express consent, dating violence, domestic violence, stalking and other sex crimes. (Stewart 203; Stewart Exh. 2) PM-73 requires each campus to "regularly offer training, educational and prevention programs designed to inform the campus or community about the law of [T]itle IX and

---

[76] *Doe 1*, 240 F.Supp. 3d at 662.

[77] *See, e.g.*, *P.S. by and through Stephenson v. Brownsboro Indep. Sch. Dist.*, 2022 WL 3697965 (E.D. Tex. Aug. 25, 2022) (finding no official policy liability where plaintiff failed to allege reports of sexual assault prior to plaintiff's assault or that the district maintained a policy of mishandling those reports); *Roe v. Cypress-Fairbanks Independent Sch. Dist.*, 2020 WL 6826213 (S.D. Tex. Nov. 20, 2020), *aff'd in part, rev'd in part*, 53 F.4th 334 (5th Cir. 2022) (no liability under *Karasek* factors where plaintiff had not shown a policy of deliberate indifference to reports of sexual misconduct to a known and obvious risk that caused plaintiff's harm); *Doe I on Behalf of Doe II v. Huntington Indep. Sch. Dist.*, 2020 WL 10317505, at *5 (E.D. Tex. Oct. 5, 2020) (no official policy liability where plaintiff failed to allege "concrete facts to establish [school district] had an official policy or custom of ignoring **sexual assault** as opposed to mere hazing" and where plaintiff failed to show that the school district "ignored reports of sexual assault or harassment within the athletics department" (emphasis in original)).

PD.41628101.2

LSU's Title IX Policy." (*Id.*) The Board's policies were promulgated to students and staff alike before and after Mize's assault. (Mize 112; Mize Exh. 1; Board 30(b)(6) I 29-30, 53-54; Board 30(b)(6) II 259-261; Stewart 38-41)[78] Despite PM-73, Plaintiffs' Complaint generally references the following deficiencies: (i) an alleged failure to report complaints, conduct investigations, and establish grievance procedures; (ii) training; and (iii) LSU's response to a 2017 Internal Audit, all of which fail to satisfy Plaintiffs' burden. (R. Doc. 182, ¶¶ 922, 923, 926)

### i. General Reference to Failure to Report Complaints, Initiate/Conduct Investigations and Grievance Procedures.

Plaintiffs' Complaint generally references shortcomings in reporting, investigations and grievance procedures with no specifics to tie those general categories to her claims. (R. Doc. 182, ¶¶ 926, 931) As discussed above, Mize lacks evidence that an employee failed to comply with Title IX. The evidence is undisputed that employees, non-employees, and students, including Mize, had the option to report Title IX claims through multiple mechanisms, including directly to a Title IX representative, or through Maxient.  (Board 30(b)(6) I 49-52) Likewise, information about how to contact the campus Title IX office was provided to students and was housed on the Student Advocacy and Accountability website, Dean of Students website, HRM website, and on the Title IX website at various points. (*Id.* 53-54) While Mize did not utilize LSU's reporting avenues, she can come forward with no evidence of failures in reporting, investigations, or grievance procedures that can constitute an official policy and that can be causally connected to any harm that Mize allegedly suffered.

### ii. Training.

Plaintiff cannot establish an official policy of deliberate indifference with relation to training. The Board provided training beginning in at least 2014, which training took place on an

---

[78]*See Roe,* 2020 WL 7043944, at *11.

annual basis. (Board 30(b)(6) I 30-32, 36-37) For ease of attendance, LSU administered the trainings electronically, the content of which was reviewed by Title IX. (Board 30(b)(6) I 33, 36-37) In addition to the campus-wide training, some departments, such as Athletics, Greek Life, and Residential Life, administered additional training to mitigate additional risks. (Board 30(b)(6) I 38-39, 41-43) Many of these trainings were developed by the Title IX office and included the "big three topics" of consent, healthy relationships, and bystander intervention. (Board 30(b)(6) I 39, 42-44) Like other students, Mize and her alleged assaulter, Doe, received MyStudentBody training. (Mize 162; Sanders Decl. ¶ 3) Because of his role as a student athlete, Doe received **additional** training through the Dan Beebe Group/Protection for All. (Segar II 348-349, 359-360; Segar Exh. 17; Segar Decl.,¶ 5, Exh. 2) Mize cannot show an official policy of deliberate indifference to training.

Mize also cannot causally link any alleged lack of training to her injuries. There is no evidence that any additional training on Title IX reporting or otherwise **prior to Mize's assault** would have led to a different result. (*See* Board 30(b)(6) I 40-41)

### iii.    Internal Audit

The Board anticipates that Plaintiffs will cite a 2017 Internal Audit commissioned by LSU, which Plaintiffs allege referenced some "problems and failings within the LSU Title IX process." (R. Doc. 182, ¶ 923) The 2017 Internal Audit and LSU's response are irrelevant to Mize's claims, since her alleged assault occurred **before** the audit.[79]

### c.  Mize Cannot Show a Known or Obvious Risk.

Not only can Mize not establish an "official policy" of deliberate indifference, she also cannot show that the risk of sexual misconduct that would result from such policy was "known or

---

[79] *Tackett v. Univ. of Kan.*, 234 F.Supp. 3d 1100, 1107 (D. Kan. 2017) (finding no institutional liability for heightened risk of sexual assault where alleged policies "played no part" in plaintiff's rape).

PD.41628101.2

obvious."[80] As indicated above, Mize alleges she was the first of any Plaintiff, or any student for

that matter, to have allegedly been assaulted by Doe. (R. Doc. 182, ¶ 243-248) Importantly, LSU

received no other reports regarding Doe's conduct prior to Mize's incident. (Board 30(B)(6) I 48-

49)[81] Although Plaintiffs collectively have pointed to other general allegations of sexual

misconduct, they have no evidence of widespread, systemic conduct that would put LSU on notice

of a particularized risk of sexual misconduct in the context that Mize alleges.[82]  Mize's generalized

allegations of widespread, systemic conduct do not meet her burden, particularly given that Mize's

alleged assault did not occur in any context that could be considered sanctioned or sponsored by

the university.  (*See infra* Section III(C))

### d. Element Three: Mize Has not Shown That the Alleged Misconduct Took Place in a Context Subject to the School's Control.

For the reasons set forth in Section III(C), the Board did not control the circumstances of

Mize's alleged assault.

### e. Element Four: Mize Cannot Show Causation.

An official policy or custom must have caused the alleged assault, as opposed to "simply

misconduct that happened to occur [at the school] among its students."[83] The standard for official

policy liability under Title IX cannot "mean that recipients can avoid liability only by purging their

---

[80] *See, e.g., Doe,* 2022 WL 5250294, at *6.

[81] *See Doe,* 2022 WL 5250294 (finding no *Karasek/Simpson* liability where there were no allegations that TAMU received reports of sexual misconduct by similarly situated students, that TAMU failed to address or actively concealed reports of sexual misconduct, that TAMU received reports of sexual misconduct committed by plaintiffs' assailants, or that TAMU had an official policy or custom that created a heightened risk of assault in plaintiffs' program).

[82] *See e.g., C.T. v. Liberal Sch. Dist.*, 562 F.Supp. 2d 1324, 1340 (D. Kan. 2008) (finding that weight training program at volunteer coach's home did not "bear the element of encouragement of misconduct" nor did it "create [] a risk of abuse that would have been obvious to school officials"); *Tackett,* 234 F.Supp. 3d at 1108 (rejecting argument for institutional liability based on the school's authority over its athletes and that it "should have known" of the heightened risk of assault at popular off-campus apartment complex for football players "based on the stereotypical assumption that football players are more prone to commit sexual assault" because such argument is based on theories of respondent-superior and constructive notice, both of which the Supreme Court rejected in *Gebser*, 524 U.S. at 282).

[83] *Simpson*, 500 F.3d at 1174.

schools of actionable peer harassment."[84] For the reasons set forth in Section III(C), Mize cannot establish any causal link between a purported policy of the Board and the harm she alleges. Plaintiff's generalized statements relating to training, LSU's 2017 audit, and failure to report complaints or to engage in investigations could not have prevented Mize's harm.  Mize and Doe each received LSU's training on Title IX. (Mize 162; Sanders Decl., ¶ 3; Segar II 348-349, 359-360; Segar Exh. 17; Segar Decl., ¶ 5, Exh. 2) Although Mize did not report her alleged incident to LSU, her friend did, causing no delay in reporting. (Mize 106, 109, 116; Segar I 268-269; Segar Decl., ¶ 7, Exh. 5) Then, having received a third-hand report, LSU promptly reached out to Mize to advise her of her Title IX resources and to investigate. (Mize 116, 124; Mize Exh.2) However, Mize chose not to report her claims, which is her right. (Mize 109, 116, 124, 133-134) Plaintiff cannot credibly show that additional training would have changed these circumstances.[85]

## IV.    CONCLUSION

For these reasons above, Mize's heightened risk claim fails as a matter of law.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:    _/s/ Susan W. Furr_
Shelton Dennis Blunt Bar Roll No. 21230
Susan W. Furr Bar Roll No. 19582
Karleen J. Green Bar Roll No. 25119
Jessica Coco Huffman LA Bar No.: 30445
Molly McDiarmid Bar Roll No. 36426
Gregory T. Stevens Bar Roll No. 29436
Michael B. Victorian Bar Roll No.: 36065
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802

---

[84] *Davis,* 526 U.S. at 650.
[85] *Tackett,* 234 F.Supp. 3d at 1107 (D. Kan. 2017) (finding no institutional liability for heightened risk of sexual assault where alleged policies "played no part in plaintiff's rape").

25

Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: jessica.huffman@phelps.com
Email: molly.mcdiarmid@phelps.com
Email: greg.stevens@phelps.com
Email: michael.victorian@phelps.com


ATTORNEYS FOR THE BOARD OF
SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL AND
MECHANICAL COLLEGE


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on June 30, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

/s/ *Susan W. Furr*
Susan W. Furr

PD.41628101.2