UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ABBY OWENS, ET AL. | CIVIL ACTION NO. 3:21-CV-00242 |
| VERSUS | JUDGE WENDY B. VITTER |
| LOUISIANA STATE UNIVERSITY, ET AL. | MAGISTRATE JUDGE JOHNSON |

### STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO MOTION FOR SUMMARY JUDGMENT NO. 1: ASHLYN MIZE

Pursuant to Rule 56.1 of the Local Rules and in conjunction with its Motion for Summary Judgment No. 1: Ashlyn Mize, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board") contends that the following are material facts which present no genuine issue [1]

1. Mize was a student at LSU from Fall 2015 through September 2017, when she withdrew after being arrested and incarcerated for selling drugs, among other crimes.[2] (Mize 32, 43-44, 126-127)

2. During her entire time at LSU, Mize lived alone in off-campus housing. (Mize 15-17)

3. Mize claims that, in January 2016, she hosted a party at her off-campus apartment, at which she drank to intoxication. (Mize 66-67)

---

[1] The Board accepts Plaintiff's facts as true for purposes of this motion and memorandum only.
[2] Relevant portions of the deposition transcripts and exhibits of Plaintiff, Miriam Segar, Jennie Stewart, and 30(b)(6) of the Board are attached to the Board's motion as Exhibits A, B, C and D, respectively. The declarations of Segar and Jonathan Sanders are also attached to the Board's motion as Exhibits E and F, respectively. Citations to the depositions will be by the last name of the deponent and the page or exhibit number. Deposition transcripts with more than one volume will include a Roman numeral to identify the cited volume. Citations to the declarations will be by the witness's last name and paragraph or exhibit number.

1

4. She recalls going to her room and passing out on her bed. (Mize 67-68) She recalls that several football players, who were also intoxicated, remained in her kitchen. (Mize 67, 73) She cannot recall how many men were there. (Mize 69)

5. One of the men was John Doe, although Mize said she did not invite him. (Mize 67, 73) Doe as well as others who were at the party lived in Mize's same off-campus apartment complex. (Mize 71; R. Doc. 182, ¶ 243)

6. Over the course of the next few days, Mize concluded she had been sexually assaulted by Doe while she was passed out in her apartment that night. (Mize 68, 76-77)

7. Mize did not want to report the conduct to the police. (Mize 96-97) Instead, Mize disclosed her belief to her friend ("Student A"), and she asked Student A not to tell anyone. (Mize 82)

8. Despite her request, Student A reported the incident to Student A's mother. (Mize 106)

9. Student A's mother called Student A's diving coach to share the information, and the diving coach promptly relayed the information to Miriam Segar, Senior Associate Athletic Director, on January 26, 2016. (Segar I 268-269; Segar Decl. ¶ 7, Exh. 5)

10. One hour later, Segar met with Student A to obtain details. (Segar I 268-269, 271; Segar Decl. ¶ 7, Exh. 5) Student A relayed to Segar that the assaulted individual [Mize] did not want to make a report. (Mize 117; Segar Decl. ¶ 7, Exh. 5; *see also* Mize 109, 115)

11. Student A informed Segar that Mize said she "hooked up" with two men, Doe and another person. (Segar Decl., ¶ 7, Exh. 5) Mize said it is possible she told Student A that she "hooked up" with two students and then the next day explained that it was rape. (Mize 110-111) Mize does not know who the second person was, or whether, in fact, there was a second person. (Mize 111)

12. Later that same day, Segar followed up with Student A by email, this time including information for Student A to "share with the individual you are concerned about [Mize]." (Mize Exh. 1; Segar Decl. ¶ 7, Exh. 5) That email advised, among other things, of the individual victim's rights to report to law enforcement and to report to LSU in order to allow the university to conduct an investigation. *Id.*

13. Mize does not recall Student A informing her of the resources that Segar included in the email, but she acknowledges that Student A encouraged Mize to visit LSU's health center, which Mize understood would be confidential. (Mize 84, 109-110, 113-114)

14. Mize went to the health center, but she said too much time had passed for a rape test to be performed. (Mize 83-84, 103) There, Mize learned she had a sexually transmitted disease, which Mize attributes to Doe ███████████████████ ███████████████ (Mize 83-84, 102, 112)

15. On January 27, 2016, Segar shared the information she received from Student A with Mari Fuentes-Martin, Associate Vice President and Dean of Students, including the names of the students allegedly involved (Mize and Doe). (Segar I 267-268, 271-272; Segar Decl. ¶ 7, Exh. 5) Segar also again met with Student A, asking if Student A had spoken with Mize about her available resources and about reporting the incident. (Segar Decl. ¶ 7, Exh. 5) Student A indicated that she had, and she reiterated that Mize was adamant about not wanting assistance or wanting to report. (Segar Decl. ¶ 7, Exh. 5; *see also* Mize 109, 116)

16. Segar again offered to meet with Mize. (Segar Decl. ¶ 7, Exh. 5) Segar followed up with Student A on January 28 and 29, 2016, attempting to encourage Mize to accept

3

LSU's help. (Segar Decl. ¶ 7, Exh. 5) Student A once again communicated that Mize "really isn't wanting to have anything to do with it." (Segar Decl. ¶ 7,. Exh. 5)

17. From this point, Fuentes-Martin began communicating with Mize. (Segar I 278) On February 1, 2016, Fuentes-Martin reached out to Mize by email, saying, among other things:

> . . . My role as Deputy Title IX Coordinator for student cases is to ensure that we address immediate remedies for your safety and well-being. First and foremost, I want to discuss all of the services provided on and off campus to address your medical concerns as well as the availability of counseling. Secondly, we want to provide you with academic support and ensure that you are able to successfully continue with your studies at LSU. Lastly, I would like to discuss your options to investigate this incident which can be done administratively within LSU as a policy violation under Permanent Memorandum 73 (PM-73-Sexual Misconduct) which I have attached. I would like to encourage you to schedule an appointment with me so we can discuss this matter further. Please know that LSU is concerned for all of its student's [sic] and wishes to provide support and services through difficult challenges.
>
> I urge you to contact my office at (225) 578-XXXX to schedule a date and time that you can meet and discuss further. If you have any questions or just need to get further support and resources, please contact me either by phone or email at mari@lsu.edu. (Mize 116; Mize Exh. 2)

18. In the meantime, on February 2, 2016, Mize met with someone in the LSU Lighthouse Program. (Mize 119-120)

19. The Lighthouse Program is a free and confidential university resource which provides interpersonal violence prevention, support, and advocacy to the LSU campus community. (Sanders Decl., ¶ 5) The program assists student-survivors of sexual assault, interpersonal violence, stalking, and harassment with information and assistance for accessing critical services such as medical care, evidence collection and preservation, counseling and mental health care, academic accommodations, and with filing reports with investigative offices. (*Id*.)

4

20. Mize did not need academic support (even though it was offered to her), and she sought no other support. (Mize 116-117)

21. On February 5, 2016, Mize responded to Fuentes-Martin's email:

    I apologize for responding this late but I wanted to think about everything and look at all of my options. I have decided I would not like an investigation to be performed. I have met with Ms. Sierra Fowler and I know all of the resources that are available to me. I plan to use them if needed. I appreciate yours and LSU's support through this situation. (Mize 118-119; Mize Exh. 3)

22. Although Mize expressed unwillingness to participate in an investigation, Fuentes-Martin asked her to contact Fuentes-Martin if she changed her mind:

    I'm glad you responded to me and I'm thankful that you took the time to meet with Seirra [sic]. We are all here to help you and will respect your decision not to proceed. I would like to leave the door open to future discussions with you should the need arise. I wish you the best in your endeavors. (Mize 124; Mize Exh. 3)

23. Mize never returned to Fuentes-Martin or to anyone else to file a complaint against Doe or to provide details for an investigation. (Mize 124-125, 123-134) Doe also never committed another sexual act against Mize. (Mize 132)

24. Mize claims that she was assaulted on January 22, 2016, yet she did not file suit until five years later, on April 26, 2021. (Mize 62-63; R. Doc. 1; R. Doc. 182, ¶ 243)

25. As of February 5, 2016, Mize had met with the Lighthouse Program, received notice of available resources, been informed by email of LSU's resources for victims of sexual assault, and been asked to report the incident. (Mize 116, 118-120; Mize Exhs. 2, 3) She also knew of the previous training she had received prior to the alleged assault. (Mize 162) Further, as of February 5, 2016, Mize knew of her injury, knew of the perpetrator, and knew how LSU responded. (Mize 118-119, 124; Mize Exh. 3; *see also* R. Doc. 340, p. 18)

5

26. Mize was the first plaintiff to assert sexual assault allegations against Doe. (R. Doc. 182, ¶¶ 242-250)  LSU received no prior reports of sexual assault by Doe.

27. Mize does not believe LSU bears responsibility for what Doe did to her in January 2016.  She believes "that is his responsibility." (Mize 184-185)

28. Mize's grades did not drop until Spring 2017, when she began selling drugs and started a relationship with a drug dealer who did **not** attend LSU. (Mize 28-33, 143; Mize Exh. 4) This was well over a year after the alleged incident with Doe.

29. In the two semesters following the incident, her semester GPA dropped only .2 (from 3.221 to 3.011) and improved the next semester (to 3.228). (Mize Exh. 4)

30. Mize chose not to use any of the educational resources offered to her. (Mize 116-117) She said she "didn't really need academic support." (Mize 117)

31. Mize's mother withdrew her from school when she was arrested. (Mize 126-127)

32. Mize testified that LSU does not bear responsibility for her arrest and subsequent withdrawal.  (Mize 185)

33. The Board's written official policy, Permanent Memorandum 73 ("PM-73"), prohibits sexual misconduct, including but not limited to sexual assault, sexual abuse, violence of a sexual nature, sexual harassment, non-consensual sexual intercourse, video voyeurism, obtaining, posting or disclosing an intimate description, photo, or video without express consent, dating violence, domestic violence, stalking and other sex crimes. (Stewart 203; Stewart Exh. 2)

34. PM-73 requires each campus to "regularly offer training, educational and prevention programs designed to inform the campus or community about the law of [T]itle IX and LSU's Title IX Policy." (*Id.*)

6

35. The Board's policies were promulgated to students and staff alike before and after Mize's assault. (Mize 112; Mize Exh. 1; Board 30(b)(6) I 29-30, 53-54; Board 30(b)(6) II 259-261; Stewart 38-41)

36. Employees, non-employees, and students, including Mize, had the option to report Title IX claims through multiple mechanisms, including directly to a Title IX representative, or through Maxient. (Board 30(b)(6) I 49-52) Likewise, information about how to contact the campus Title IX office was provided to students and was housed on the Student Advocacy and Accountability website, Dean of Students website, HRM website, and on the Title IX website at various points. (*Id.* 53-54)

37. The Board provided training beginning in at least 2014, which training took place on an annual basis. (Board 30(b)(6) I 30-32, 36-37) For ease of attendance, LSU administered the trainings electronically, the content of which was reviewed by Title IX. (Board 30(b)(6) I 33, 36-37)

38. In addition to the campus-wide training, some departments, such as Athletics, Greek Life, and Residential Life, administered additional training to mitigate additional risks. (Board 30(b)(6) I 38-39, 41-43) Many of these trainings were developed by the Title IX office and included the "big three topics" of consent, healthy relationships, and bystander intervention. (Board 30(b)(6) I 39, 42-44)

39. Like other students, Mize and her alleged assaulter, Doe, received MyStudentBody training. (Mize 162; Sanders Decl. ¶ 3) Because of his role as a student athlete, Doe received **additional** training through the Dan Beebe Group/Protection for All. (Segar II 348-349, 359-360; Segar Exh. 17; Segar Decl.,¶ 5, Exh. 2)

40. The 2017 Internal Audit and LSU's response occurred before Mize's alleged assault.[3]

41. Although Mize did not report her alleged incident to LSU, her friend did, causing no delay in reporting. (Mize 106, 109, 116; Segar I 268-269; Segar Decl., ¶ 7, Exh. 5)

42. Then, having received a third-hand report, LSU promptly reached out to Mize to advise her of her Title IX resources and to investigate. (Mize 116, 124; Mize Exh.2) However, Mize chose not to report her claims, which is her right. (Mize 109, 116, 124, 133-134)

43. The following occurred on January 26, 2016:

    o Within one hour of receiving the report from Student A, Segar met with Student A in person to obtain details about the potential issue. Student A insisted that the alleged victim did not want to report. (Segar Decl., ¶ 7, Exh. 5)

    o Segar notified Student Affairs of the concern. *Id*.

    o Segar emailed Student A and shared detailed information on the LSU Lighthouse program and the LSU Policy on Sexual Misconduct. *Id*

    o Segar reached out to Fuentes-Martin to update her on the situation. *Id*

44. The following occurred on January 27, 2016:

    o Segar spoke with Fuentes-Martin, and they discussed that they needed an account from the alleged victim about what happened. (Segar 267)

    o Segar again met with Student A to ask if she spoke with the alleged victim about resources and reporting the incident. Student A was adamant that the alleged victim [Mize] did not want assistance and did not want to report. Segar asked

---

[3] *See* facts in Summary Judgment No. 10, Section III.C.b.iii, which are adopted herein by reference.

  Student A to again speak with the alleged victim about reporting to the university or to the police. (Segar Decl., ¶ 7, Exh. 5; Mize 105, 108) The friend said she would do so. (Segar Decl., ¶ 7, Exh. 5)

45. The following occurred on January 28, 2016:

    o   Student A reported to Segar by text that "she [Mize] really isnt' wanting to have anything to do with it." (Segar Decl., ¶ 7, Exh. 5)

46. The following occurred on January 29, 2016:

    o   Fuentes-Martin asked Lighthouse representative, Sierra Fowler, to reach out to Mize." *Id*.

47. The following occurred on February 1, 2016:

    o   Fuentes-Martin reached out to Mize by email, saying she wanted to discuss all of the services provided by LSU to address Mize's concerns, to offer medical and psychological care, to offer academic support, and to discuss options for investigating the incident. Fuentes-Martin asked Mize to schedule a date and time to meet with Fuentes-Martin and provided Mize with her phone number and email address. (Mize Exh. 2)

48. The following occurred on February 5, 2016:

    o   Mize finally responded, at which time Mize apologized for her delay, stated that she had thought about everything and weighed her options, and she did not want to move forward with an investigation. Mize assured Fuentes-Martin that she had met with the Lighthouse Program and knew all of the resources available to Mize. (Mize 118-119; Mize Exh. 3)

9

- o   Fuentes-Martin responded to Mize and asked Mize to come back to Fuentes-Martin if she changed her mind. (Mize 123-124; Mize Exh. 3)

49. Segar and Fuentes-Martin endeavored to provide, and did provide, Mize with information about the services and resources available at LSU for victims of sexual assault. Their communications with Mize conveyed their interest in obtaining information from Mize and moving forward with an investigation.

50. Fuentes-Martin's communications conveyed her interest in hearing from Mize. Fuentes-Martin stated:

- "I would like to encourage you to schedule an appointment with me so we can discuss this matter further.
- "Please know that LSU is concerned for all of its student's [sic] and wishes to provide support and services through difficult challenges."
- "I urge you to contact my office at (225) 578-XXXX to schedule a date and time that you can meet and discuss further."
- "If you have any questions or just need to get further support and resources, please contact me either by phone or email at mari@lsu.edu."(Mize Exh. 2)

51. Mize had no issue with LSU's response at the time. (Mize 133)

52. Segar communicated Doe's name to Fuentes-Martin. (Segar I 264-68, 271-72; SEGAR 000344) Although Segar did not include his name in her write-up of the events, she did not conceal it from Title IX. (Segar 267)

                Respectfully submitted,

                **JEFF LANDRY**
                **ATTORNEY GENERAL**

                BY:   /s/ *Susan W. Furr*
                          Shelton Dennis Blunt Bar Roll No. 21230
                          Susan W. Furr Bar Roll No. 19582

        Karleen J. Green Bar Roll No. 25119
        Jessica Coco Huffman LA Bar No.: 30445
        Molly McDiarmid Bar Roll No. 36426
        Gregory T. Stevens Bar Roll No. 29436
        Michael B. Victorian Bar Roll No.: 36065
        II City Plaza | 400 Convention Street, Suite 1100
        Baton Rouge, Louisiana 70802
        Telephone: 225 346 0285
        Facsimile: 225 381 9197
        Email: dennis.blunt@phelps.com
        Email: susie.furr@phelps.com
        Email: karleen.green@phelps.com
        Email: jessica.huffman@phelps.com
        Email: molly.mcdiarmid@phelps.com
        Email: greg.stevens@phelps.com
        Email: michael.victorian@phelps.com

        ATTORNEYS FOR THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on June 30, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

        /s/ *Susan W. Furr*
        Susan W. Furr

PD.42455744.1