**EXHIBIT 1**

Administrative Resolution involves a thorough and impartial investigation, a review of all evidence and the investigation report by the parties, and an impartial Decision-Maker who reviews all evidence, the investigation report, and poses written questions to the parties in writing prior to making a decision.

Formal Resolution is used for Title IX cases, as well as any case where suspension, expulsion, or termination is possible. Formal Resolution involves a thorough and impartial investigation, a review of all evidence and the investigation report by the parties, a live hearing before an impartial panel of three individuals, and a decision by those decision-makers.

The parties may also appeal any decision from the Administrative or Formal Resolution processes.

**Resolution Process Pool**

The University will ensure there is an adequate pool of willing and trained members who are available year round to serve in the pool. Members can be faculty, administrators, staff, or students who are recruited or selected because of their ability to remain neutral and open-minded. Members of the pool will serve three-year rotating terms and must participate in bi-annual training provided by the Office of Civil Rights & Title IX. Training will ensure all pool members are equipped to serve as Hearing Panelist, Hearing Panel Chair, Appeals Reviewer, or as Advisor for the Complainant or the Respondent, but cannot serve in more than one role for a given case. The Title IX Coordinator or designee will assign roles for cases that present themselves.

1. **Informal Resolution**

   Informal Resolution is a process whereby the parties work with a professional to reach a resolution of the complaint without a decision by a Decision-Maker or a Hearing Panel regarding whether a policy is violated. This process is completely voluntary and requires the consent of both parties. A party may terminate the informal resolution process at any time before conclusion. Informal Resolution can include approaches such as mediation, Restorative Justice, Alternative Dispute Resolution, or other agreements between the parties. Informal Resolution does not use an investigation, calling of witnesses, or a report of findings with sanctions. The parties themselves create an outcome that resolves the complaint.

   The LSU Title IX Coordinator, in consultation with the applicable Title IX Campus Coordinator, must determine that the circumstances and parties are appropriate for informal resolution and shall appoint a trained individual to facilitate the process. Complaints involving violence that resulted in significant harm to others (e.g.: domestic violence, dating violence, etc.) are

25

**EXHIBIT H**

**EXHIBIT 1**

not appropriate for informal resolution.

Informal Resolution will never be required as a condition of enrollment or continuing enrollment, employment or continuing employment or enjoyment of any other right; require a waiver of right to investigation and adjudication under the Formal Resolution process; nor be utilized to resolve an allegation against a Respondent employee by a student Complainant.

If a Formal Complaint is resolved through Informal Resolution, a written agreement shall be issued including any terms, obligations or outcomes. Agreements will be drafted by the informal process facilitator, and must have the approval of the Complainant and Respondent. Upon approval of both parties, the Formal Complaint shall be dismissed. The

Agreement shall be promptly shared electronically with the parties by the Title IX Coordinator.

Discussion and information generated during the Informal Resolution process are considered confidential and shall not be used or admissible in the Formal Resolution process. Institutionally-imposed sanctions are not possible as the result of the Informal Resolution process. At the discretion of the Title IX Coordinator, however, a failure of the parties to uphold certain elements of the agreement may warrant referral for discipline. No facilitator of an informal process may be called as a witness in any procedure under this policy. The results of Informal Resolution are not subject to appeal.

## 2. Administrative Resolution

The Administrative Resolution process is the procedure by which allegations in a Formal Complaint are sex- or gender-based but do not rise to the level of requiring a Formal Hearing under Title IX, are otherwise identified as power-based violence, or for which Informal Resolution is either inappropriate or where one or both parties chose not to use Informal Resolution. The Administrative Resolution includes an investigation into the allegations and a single Decision-Maker who will determine the findings and sanctions.

The determination as to whether or not an Administrative Resolution is appropriate is made by the Title IX Coordinator, and must account not just for the nature and severity of the alleged violation, but also for the disciplinary history of the Respondent. Cases appropriate for Formal Resolution are not able to use the Administrative Resolution process unless the Respondent has accepted responsibility for all allegations.

Administrative Resolution will never be used unless a Formal Complaint is filed. The investigation for Administrative Resolution follows the procedures set forth in Section B of this policy.

26

**EXHIBIT H**

a. Questioning During Administrative Resolution

At the conclusion of the investigation, but prior to dissemination of the final investigation report, the Title IX Coordinator will appoint a trained, impartial person – typically from the Resolution Process Pool or from the Administrative Law Judges from the Louisiana Department of Administrative Law – to serve as Decision-Maker in the case. The final report will then be sent to the Decision-Maker, the parties, and their Advisors. Upon receipt of the final report, the Decision-Maker will contact the parties and their Advisors and offer them the opportunity to provide a list of questions, if desired, that the party would like asked of the other party and the witnesses. These questions must be submitted within five business days following the Decision-Maker's outreach. Upon receipt of such questions, the Decision-Maker will determine the relevance of each question and ask the relevant questions of the other party and the witnesses. The Decision-Maker can also ask their own questions of the parties and the witnesses.

This questioning – both from the parties and by the Decision-Maker – is done in writing. This is not a formal, in-person hearing, rather a decision by a trained Decision-Maker.

b. Decision-Making

Once the Decision-Maker, the parties and their Advisors have received a copy of the final investigation report, the Decision-Maker will review the investigation report, as well as all relevant evidence, the parties' additional statements, and responses to the draft investigation report. The Decision-Maker will then apply the preponderance of the evidence standard when determining responsibility. In order to find a Respondent responsible under the preponderance of the evidence standard, the evidence must show that the charge is more likely supported than not. If the Respondent is found responsible, the Decision-Maker may request input from the parties to evaluate possible sanctions. The Decision-Maker may also request input from relevant LSU officials in determining the appropriate sanctions (e.g.: HR, Student Affairs, etc.). Prior conduct history of the Respondent will also be considered when determining an appropriate sanction.

The Decision-Maker will prepare and provide to the Title IX Coordinator, typically within 10 business days of receiving the final investigation report, a written determination which will include:

a. Identification of the allegations constituting a violation of this policy;
b. A description of the procedural steps taken from receipt of the Formal Complaint through determination, including any notifications to the parties, interviews with parties and witnesses, evidence gathered and

27

**EXHIBIT H**

hearings held;

c. Findings of fact supporting the determination;
d. Conclusions regarding the application of the policy to the facts;
e. A statement explaining the sanction for each policy violation found "responsible;"
f. Whether additional remedies designed to restore or preserve equal access will be provided by LSU to the Complainant.

The Title IX Coordinator is responsible for effective implementation of any sanctions and sharing of outcomes. Students found responsible for violating this policy may expect the range of sanctions to include, but not be limited to, warning, disciplinary probation, deferred suspension, suspension, expulsion, psychological assessment, counseling, social restrictions, limited presence on campus, and/or revocation of admission or degree. Additional sanctions may also be imposed when appropriate. Students for whom sanctions are assigned will have a notation placed on their transcript indicating they have been found responsible for violations of code of conduct. (See Appendix D)

An employee found responsible for violating this policy may expect the range of sanctions to include, but not be limited to, suspension, demotion, psychological assessment, counseling, restricted presence on campus and/or termination of employment.

Both the Complainant and Respondent will be informed in writing of the outcome of any corrective action or disciplinary process. The written determination prepared by the Decision-Maker shall be simultaneously shared electronically y the Title IX Coordinator with all parties and Advisors. With limited exceptions such as imminent risk to the safety of others, sanctions from a Formal Hearing are not implemented until the conclusion of the appeals process.

Either party can file an appeal as is described in Section D below. The determination regarding responsibility and sanctions becomes final either:

a. If appealed, the date written notice is provided to the parties of the appeal result, or
b. If not appealed, the date on which an appeal would no longer be considered timely.

With limited exceptions, sanctions from the Administrative Resolution process are not implemented until the conclusion of the appeals process.

3. **Formal Resolution**

The Formal Resolution process is the procedure by which allegations in a Formal Complaint are presented in a formal PM 73 Hearing for a

28

**EXHIBIT H**

EXHIBIT 1

determination as to whether any of the policies were violated.

The determination as to whether or not a matter rises to the level of a Formal Resolution is made by a Title IX Coordinator and must account not just for the nature and severity of the alleged violation but also for the disciplinary history of the Respondent. Formal Resolution is used where the allegation either constitutes a possible violation of Title IX (as defined in this policy), or where probable cause indicates that an allegation, if true, could reasonably result in suspension, expulsion, or termination of the Respondent.

The Investigation for Formal Resolution follows the procedures set forth in Section B of this policy.

A minimum of 10 business days must pass once the final investigative report has been disseminated before the Hearing takes place. During this time, the Title IX Coordinator will secure members and name the chair of the Hearing Panel and ensure both parties have an Advisor who will be present during the Hearing Panel. At their discretion, the Hearing Panel Chair may, for good cause, issue one delay in the hearing of no more than 10 business days.

    a.  <u>Pre-Hearing Conference</u>

A Pre-Hearing conference shall be coordinated by the Title IX Coordinator, or designee, and chaired by the Hearing Panel Chair. Parties and Advisors are encouraged, but not required, to be present. Pre-Conference hearings may be conducted in person, via video technology, or a hybrid approach depending on the wishes of the parties and the Hearing Panel Chair.

This conference shall be conducted at least two business days prior to a scheduled Hearing Panel. Pre-Hearing Conferences are not recorded.

The purpose of the pre-hearing conference shall be to:

a. Identify the panelists and address any objections to members of the Hearing Panel;
b. Address evidentiary issues or questions to be posed at the hearing (i.e. numbers of witnesses, use of documents, relevance of evidence, expected length of hearing, etc.);
c. Ensure parties have Advisors available to conduct cross examination and that the Advisor is familiar with the hearing process under this policy;
d. Provide a forum to address any questions related to the Hearing Panel process and procedures.

29

# EXHIBIT H

b. <u>Hearing Panel</u>

The PM 73 Hearing Panel is appointed by the Title IX Coordinator and shall consist of one chair and two other individuals trained in adjudication. Hearing Panel chairs and members are typically selected from the trained Resolution Process Pool, or from the trained group of Administrative Law Judges, but the Title IX Coordinator may go outside of that group as long as the individuals have received appropriate training. The Hearing Panel shall afford each party an opportunity to present evidence and for their Advisor to question opposing parties and witnesses.

Hearings may be conducted in person, via video technology, or a hybrid approach depending on the wishes of the parties and the Hearing Panel Chair.

c. <u>Advisors in Hearings</u>

Each party is permitted to have an Advisor present with them throughout the Hearing. The Advisor may not answer questions on behalf of their advisee, and their role in the hearing is limited to cross-examination and questioning of the other party and the witnesses, and to consult with their advisee throughout the Hearing as needed. If a party does not have an Advisor at the Hearing, one shall be provided by LSU at no cost, typically selected from the Resolution Process Pool. The Advisor is the only person who may conduct cross-examination on behalf of a Complainant or Respondent. An Advisor will be appointed even in situations where a party elects not to participate in the Hearing.

d. <u>Presentation of Evidence</u>

The following describes the Hearing process.

1) The Hearing Panel Chair will oversee and manage the procedure and order for presentation of evidence. The Hearing will be recorded and the recording or transcript will be made available for the parties for review. No unauthorized recordings are permitted.

2) At the beginning of the Hearing, the Investigator will present a summary of the final Investigation Report and the relevant evidence and will be subject to questioning by the Decision-Makers and the parties' Advisors. The Investigator will be present for the entire Hearing, but not for deliberations, and the Panel and the parties may ask clarifying questions of the Investigator throughout the hearing, as deemed appropriate by the Chair. Neither the parties (or their Advisors), nor the Decision-Makers should ask the Investigator their opinions on

30

**EXHIBIT 1**

credibility, recommended findings or determinations.

3) Once the Investigator has presented their report, relevant evidence, and been questioned by the Panel and the parties' Advisors, witnesses will provide relevant information in turn. Typically, the Complainant will present first, followed by an order determined by the Hearing Panel Chair. Absent exigent circumstances, all evidence presented by the parties must have been submitted to the Investigator prior to the hearing.

4) At the conclusion of each party's or witness's presentation of evidence, the members of the Hearing Panel will be allowed to ask questions, followed by cross-examination by the parties' Advisors. Cross-examination must be conducted directly, orally, and in real-time by the party's Advisor, and never by a party personally. The parties must be able to see and hear each other, as well as the witnesses while each is giving testimony and answering questions.

Only questions relevant to determining whether the applicable policies have been violated or the credibility of a witness will be allowed. The Hearing Panel Chair will have sole authority to determine whether evidence presented or a question in cross-examination is relevant and whether it will be permitted. The Hearing Panel Chair must explain any decision to exclude evidence or a question as not relevant. Questions or evidence about a Complainant's sexual predisposition or prior sexual behavior are not relevant, unless: (1) offered to prove that someone other than the Respondent committed the conduct alleged in the complaint, or (2) concern specific incidents of the Complainant's prior sexual behavior with Respondent and are offered to prove consent. Only evidence submitted to cross-examination may be considered by the Hearing Panel to determine responsibility. The parties and witnesses must be willing to submit to cross-examination, and answer all relevant questions posed by the parties' Advisors.

5) At the conclusion of the hearing, the parties may provide the Chair with a written, sealed impact statement for the panel to consider only during the sanctioning phase of deliberations, if the Respondent is found in violation.

e. <u>Absence or Failure to Appear/Answer</u>

The Hearing Panel cannot draw an inference about the determination regarding responsibility based solely on a party's or witness's absence from the hearing or refusal to answer questions.

31

# EXHIBIT H

**EXHIBIT 1**

f.   Deliberations

The Hearing Panel shall deliberate in closed session with only panelists present. Deliberations are not recorded. The Hearing Panel is to apply the preponderance of the evidence standard when determining responsibility. Simple majority vote is required to determine the finding. In order to find a Respondent responsible under the preponderance of the evidence standard, the evidence must show that the charge is more likely supported than not. If the Respondent is found in violation for one or more of the allegations, the Panel will then shift to determining the appropriate sanctions.

g.   Determining Sanctions

During sanctioning deliberations, the Panel may consider the previously submitted impact statements in determining the appropriate sanction. LSU's sanctioning guidelines, as well as the prior conduct history of the Respondent and any power differential between the Respondent and the Complainant will also be considered when determining an appropriate sanction along with the nature, severity, pervasiveness, and predation of the violation(s).

In cases where the Respondent is an employee, the Panel may also consult with HRM to ensure the sanction is consistent with employment-related laws, regulations, and policies.

The Hearing Panel will prepare and provide to the Title IX Coordinator, typically within five business days of the Hearing, a written Determination Letter which must include:

1. Identification of the allegations constituting violation of the sex- or gender-based harassment and discrimination policy, as well as any other concurrent or ancillary policies;
2. A description of the procedural steps taken from receipt of the Formal Complaint through determination, including any notifications to the parties, interviews with parties and witnesses, evidence gathered and hearings held;
3. Findings of fact supporting the determination;
4. Conclusions regarding the application of the policy to the facts;
5. A rationale for each finding;
6. A statement explaining the sanction for each policy violation found "responsible;"
7. Whether additional remedies designed to restore or preserve equal access will be provided by LSU to the Complainant.

32

**EXHIBIT H**

The Title IX Coordinator is responsible for effective implementation of any sanctions and sharing of outcomes. The written determination prepared by the Hearing Panel chair shall be shared electronically by the Title IX Coordinator with the parties and Advisors, typically within three business days of receipt from the Hearing Panel.

The determination regarding responsibility and sanctions becomes final either:

    a. If appealed, the date written notice is provided to the parties of the appeal result, or
    b. If not appealed, the date on which an appeal would no longer be considered timely.

### h. Possible Corrective Actions

Students found responsible for violating this policy may expect the range of sanctions to include, but not be limited to, warning, disciplinary probation, deferred suspension, suspension, expulsion, psychological assessment, counseling, social restrictions, limited presence on campus, and/or revocation of admission or degree. Additional sanctions may also be imposed when appropriate. Students for whom sanctions are assigned will have a notation placed on their transcript indicating they have been found responsible for violations of code of conduct. (See Appendix D)

An employee found responsible for violating this policy may expect the range of sanctions to include, but not be limited to, suspension, administrative leave, demotion, psychological assessment, counseling, restricted presence on campus and/or termination of employment.

Both the Complainant and Respondent will be informed in writing of the outcome of any corrective action or disciplinary process. With limited exceptions such as imminent risk to the safety of others, sanctions from a Formal Hearing are not implemented until the conclusion of the appeals process.

## D. APPEAL

### 1. Right of Appeal

Any party may appeal a determination made by the Decision-Maker or the Hearing Panel. The following is an exhaustive list of the bases for appeal:

    a. The Title IX Coordinator, Investigator, Decision-Maker, or Hearing Panel members had a conflict of interest or bias for or against complainants or respondents generally or the individual Complainant

33

**EXHIBIT H**

or Respondent specifically that affected the outcome of the matter;

b. New evidence is discovered that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter;

c. Procedural irregularity that affected the outcome of the matter;

d. The outcome was clearly erroneous based the facts and evidence presented to the Decision-Maker or the Hearing Panel;

e. The sanctions imposed were inappropriate for both the violation and the disciplinary history of the Respondent.

## 2. Appeal Procedures

The Appeals process is to be deferential to the Hearing Panel's decisions. The process is not a rehearing. In most cases, the appeals are confined to a review of the relevant evidence, the Investigation Report, the Hearing Panel's determination letter and the recording of the hearing. The Appeals Review is also limited to specific grounds intended to ensure the decision of the Decision-Maker or the Hearing Panel was materially fair and consistent with LSU policies.

A Notice of Appeal must be in writing and submitted to the Title IX Coordinator within 5 business days of email notification of the Decision-Maker's or the Hearing Panel's decision. The Notice of Appeal shall contain the name of the Complainant and Respondent; identify the ground(s) for appeal; and if the appeal is based upon discovery of new information, a description/documentation of the new information and reason it was not discoverable prior to the Hearing Panel hearing.

Upon receipt of the Notice of Appeal, the Title IX Coordinator, typically within two business days of receipt of the Notice of Appeal, shall confirm receipt of the Notice of Appeal to the appealing party, notify any other party of the appeal, and contact the LSU Title IX Coordinator (if appeal went to a campus coordinator). The other party of the appeal shall be provided five business days to submit a response to the appeal to the Title IX Coordinator.

The LSU Title IX Coordinator, shall promptly appoint an impartial Appeals Reviewer and provide the Appeals Reviewer(s) with the Notice of Appeal. The Appeals Reviewer will then determine if the Notice of Appeal is timely and contains required elements for appeal. If so, the Appeals Reviewer will notify the parties of their identities. The Appeals Reviewer(s) are individuals trained in their responsibilities and are typically drawn from the Resolution Process Pool. If either of the parties challenges the impartiality of a Reviewer, the LSU Title IX Coordinator, in conjunction with the respective Title IX Campus Coordinator, will determine if cause exists to excuse the reviewer. If the Notice of Appeal is not timely or does not contain the

34

# EXHIBIT H

EXHIBIT 1

required elements, then the Notice of Appeal is dismissed and the decision of the Hearing Panel becomes final.

The Title IX Coordinator shall promptly forward the evidence and information relied upon by the Decision-Maker or Hearing Panel, to the Appeals Reviewer. The evidence and information shall include, but is not limited to:

    a.   The Notice of Appeal;
    b.   All evidence introduced at the hearing, including the investigation report;
    c.   Any pre-hearing determinations from the Hearing Panel Chair (if applicable);
    d.   The written findings of the Decision-Maker or Hearing Panel; and
    e.   The recording or transcript of the formal hearing (if applicable).

The Appeals Reviewer(s) shall render a written decision including finding and rationale and forward to the LSU Title IX Coordinator typically within 5 business days after receipt of the evidence and information. The reviewer may:

    a. Uphold the Hearing Panel outcome; or
    b. Overturn the Hearing Panel finding and sanction and remand for a new hearing; or
    c. Overturn the Hearing Panel sanction and remand for a sanctions-only hearing; or
    d. Overturn the Hearing Panel outcome and remand for a new or adjusted investigation (if the error was in the investigation), which is then subject to a new hearing; or
    e. Modify the Hearing Panel outcome for responsibility and/or sanctions.

The LSU Title IX Coordinator shall notify the respective Title IX Campus Coordinator who shall then notify the parties and Advisors, typically within two business days of receipt of the decision.

Decisions of the Appeal Reviewer are final. In the event of remand for rehearing, the subsequent Hearing Panel outcome may be appealed in accordance with the provisions herein. Otherwise, any appeal right exercised under this policy shall complete the process.

## VI. ADDITIONAL PROVISIONS

### A. PREEMPTION

To the extent a conflict exists between State or local law and Title IX, the obligation to comply with Title IX is not obviated or alleviated by any State or local law. To the extent other LSU or campus-based policies may conflict with this

35

**EXHIBIT H**

policy, the provisions of this policy shall supersede and govern.

## B. RECORD KEEPING

Records created or received under this policy will be maintained for at least seven years from the date each case is closed. The following shall be kept as part of the record:

- Each investigation including any determination regarding responsibility, whether through the Formal or Administrative processes;
- Any audio or audiovisual recording or transcript of a hearing;
- Any disciplinary sanctions imposed on the Respondent;
- Any remedies provided to the Complainant designed to restore or preserve equal access to LSU's education program or activity;
- Any appeal and result therefrom;
- Any informal resolution and result therefrom;
- All materials used to train Title IX Coordinators, Investigators, decision-makers, and any person who facilitates an informal resolution process; and
- Records of any actions, including supportive measures, taken in response to a report or Formal Complaint. These records will also include:
  - o The basis for all conclusions that the response was not deliberately indifferent;
  - o Any measures designed to restore or preserve access to LSU's education program or activity; and
  - o If no supportive measures were provided to the Complainant, document the reasons why such a response was not clearly unreasonable in light of the known circumstances.

LSU may be required to disclose information on a need-to-know basis in order to properly address a complaint, when there is a threat to others, pursuant to subpoena, or other court or administrative order, or as may be required by applicable law. Violations of confidentiality or privacy by any other persons involved in the resolution, investigation or administration of the complaint, including any employee, faculty, staff, or student may result in disciplinary or corrective action.

LSU will also maintain any and all records in accordance with state and federal laws.

## C. ADMINISTRATIVE REPORTING REQUIREMENTS

Act 472 of the 2021 Regular Session requires biannual reporting to institutional management boards and annual reporting to the Board of Regents with ultimate submission to the Louisiana Legislature. The Board of Regents Uniform Policy on Power-Based Violence requests an interim report from the System Board. Reporting form templates are available in the Board of Regents Uniform Policy. The following timeline is prescribed:

36

**EXHIBIT H**

a. Title IX Coordinator submits campus reports to the institution's Chancellor by October 10th and April 10th
b. Chancellor submits biannual reports to the President by October 24th and April 24th
c. President submits biannual report to the Board of Supervisors by November 7th and May 8th
d. Board of Supervisors submits annual report to the Board of Regents by December 1st and an interim report to the Board of Regents by June 1st
e. Board of Regents submits report to the Louisiana Legislature by January 15th

## D. TRANSCRIPT WITHHOLDING, NOTATION, AND COMMUNICATION

Consistent with state law and Board of Regents policy, any student who has received a Notice of Investigation and Allegation as the Respondent in a Title IX Formal Complaint, who is being investigated for a complaint of power-based violence, or who has been found responsible for an incident of power-based violence shall have a notation placed on their transcript or have the transcript withheld during the investigative and adjudication process. This applies specifically to a student who is the subject of a power-based violence complaint and is attempting to transfer to another postsecondary institution in the state of Louisiana. There is nothing in this policy that prohibits a notated transcript from being the only transcript provided when one is requested by the student regardless of the intent of use.

The Sending Institution must notify the student that their transcript is being withheld or notated, and of the appeals process to have the hold or notation removed. The transcript will be withheld or notated until the student is either found not responsible for the allegations in the report of power-based violence or until a request to appeal the withholding or notation is successful, whichever occurs first.

During a pending investigation and adjudication, the notation placed on the transcript shall read *"Administrative Matter Pending"* or similar such that it triggers an inquiry regarding the notation by the Receiving Institution directed to the Sending Institution. If a final decision has been made on the case and the transferring student has been found responsible for power-based violence, the notation on the transcript shall read **"Student Found Responsible in Violation of Code of Conduct"** or similar such that it triggers an inquiry regarding the notation by the Receiving Institution directed to the Sending Institution.

When a student transcript is notated as described above, the Receiving Institution must make a timely inquiry directed to the Sending Institution regarding the purpose of the transcript notation. Upon such an inquiry, the Sending Institution must timely

**EXHIBIT H**

disclose appropriate and factual information, consistent with the Family Education Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g.

If the student is not found responsible or if the student was initially found responsible and later evidence showed that the student was in fact not responsible, the Sending Institution must remove the notation and send an updated version of the transcript to the Receiving Institution (if known). Otherwise, the institution will determine the length of time the notation will remain on the student's transcript if the student was found responsible for an act of power-based violence. A student whose transcript has been held or notated as described above may appeal the hold or notation for good cause shown. The request shall be submitted to the Title IX Coordinator or designee of the Sending Institution. The institution shall notify the student of the decision no later than seven business days from the date the request was made.

## VII. RESOURCES

Title IX of the Education Amendments of 1972
La. R.S. 14:43.1.
Title 14 of the Louisiana Revised Statutes
La. R.S. 14:403
La. R.S. 44:51
Louisiana Board of Regents Uniform Policy on Power-Based Violence

# EXHIBIT H

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23    Page 33 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 367-14 *SEALED* 07/10/23    Page 33 of 50

**EXHIBIT 5**



**2015385001**                                                                 Closed
Information Only - SAA

R Redacted | Redacted **(898969972)**

## DEMOGRAPHICS

**DOB**                          **Athletics**                    **Risk Level**
Redacted                         Y

**Gender**                       **Greek**                        **Department/Course**
Male                             Not Greek

**Ethnicity**                    **Honors**
Black or African American        N/A

**Classification**               **ROTC / Veteran**
UCAC 1 PHSE                       N

**Major**                        **Pronouns**
Sport Administration

**Academic Advisor**             **Honorific**

**GPA Last Term / GPA Cumulative**
3.100 / 2.650

## CONTACT INFORMATION

**Housing**                      **Local**                        **Permanent**
Off Campus                                                        Redacted

**Username**
Redacted

**Email Address**
Redacted

**Emergency Contact**
Redacted

## INCIDENT AND CASE INFORMATION

**Report Number**                **Role**
20160722-007                     Alleged

**Incident Date**                **Incident Time**                **Incident Location**
2016-07-09                       unknown

**Reported Date**                **Referral Source**              **Reported By**
2016-07-25                       LSUPD                            Sgt Bodine

**Case Created Date**            **Assigned To**                  **Home Office**
2016-07-27                       Jonathan Sanders, Ph.D.          Office of the Dean of Students
                                 (Assoc. DOS & Dir. - SAA)

**Access Restriction**
PM-73

**EXHIBIT H**

BOS-002246

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23    Page 34 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 367-14 *SEALED* 07/10/23    Page 34 of 50    **EXHIBIT 5**

**Clery Reportability**

**Clery Rationale**

**Tags**
PM73

| **Next Deadline Date** | **Reason** |
|---|---|
| 0000-00-00 | |

**Incident Description**
On July 22, 2016, LSU PD Officers responded to the Public Safety Building in reference to a Video Voyeurism complaint. Officers arrived and met with a 19 year old female (LSU Student) who advised a nude picture of her was being passed around Football Operations. The female further stated she believes the picture was taken during the evening of July 9 or early morning of July 10 of 2016 by ████████ (LSU Student). The victim further stated she did not give consent to take the picture. The victim did not wish to pursue charges as of July 22, 2016.

## RESOLUTION INFORMATION

**Charges/Issues**
No charges/issues listed

**Findings (if applicable)**

**Appt. Date**
0000-00-00

**Appt. Time**

**Appt. Location**

**Hearing/Resolution Date**

**Hearing/Resolution Type**

**Hearing Officer(s)**

**Parental Notification**
No

**Holds in Place**

**Appeal Status**
No appeal filed

**Rationale**

**CC List**

## SANCTIONS / ACTIONS

✔ = completed, ✖ = incomplete, ➔ = referred to another case

No sanctions/actions listed

## NOTES

**Individual Notes**

| **Other note** | UNCATEGORIZED |
|---|---|
| *Jonathon Hyde* | Wednesday July 27, 2016 at 3:09pm |

The email chain below outlines the input from police, Deputy Title IX Coordinator for Students, and Title IX Coordinator on the matter.

"Mari and Jonathon,

Thank you. Yes, I agree with the approach. Absent prior consistent concerns, patterned behavior or other elevated risks, I think the right approach is to respect the wishes of the Complainant. If there are other factors (pattern, predations, threats, weapons, violence) then our approach may be different.

Thanks,



BOS-002247

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23   Page 35 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 367-14 *SEALED* 07/10/23    Page 35 of 50

**EXHIBIT 5**

Jennie

Jennie Stewart, JD
Title IX Coordinator
Office of the General Counsel
Louisiana State University
3810 West Lakeshore Drive, Ste 124, Baton Rouge, LA 70803
office 225-578-3918
jstewart@lsu.edu | lsu.edu | http://lsu.edu/hrm/policies_and_procedures/Title_IX_item71081.php

From: Maria Fuentes-Martin
Sent: Wednesday, July 27, 2016 1:32 PM
To: Jonathon M Hyde ; Jennie L Stewart
Subject: RE: 20160722-007 Video Voyeurism

Jennie,
Jonathan and I discussed this morning. My suggestion is to record in Maxient as a PM73 case, but as information only. This will mean that we were aware, know the name of the suspect, but will not conduct an investigation as per victim's request. With the attached emails, I think this will wrap up the case. Thoughts?
Mari

Mari Fuentes-Martin, Ed.D.
Associate Vice President & Dean of Students
Division of Student Life & Enrollment
Louisiana State University
333 Student Union, Baton Rouge, LA 70803
office 225-578-9442 | fax 225-578-9441
mari@lsu.edu | lsu.edu | www.lsu.edu/deanofstudents/

From: Jonathon M Hyde
Sent: Wednesday, July 27, 2016 9:52 AM
To: Jennie L Stewart
Cc: Maria Fuentes-Martin
Subject: FW: 20160722-007 Video Voyeurism

Jennie,
Please the email chain below. I have attached a copy of the report, and you can see that the information is very limited. Based on this information, I am seeking your guidance on how to proceed. Feel free to give me call as you see fit.
JH

From: Maria Fuentes-Martin
Sent: Monday, July 25, 2016 5:07 PM
To: Marshall S Walters
Cc: Jonathon M Hyde
Subject: Re: 20160722-007 Video Voyeurism

Thanks Marshall.

Sent from my iPhone

On Jul 25, 2016, at 4:36 PM, Marshall S Walters wrote:
All,

She was provided with all resource information and declined to seek any help at this time. She was adamant that her information not be shared beyond the police department; signed the waiver indicating that we could not release her information to anyone. She did not wish to pursue criminal charges at this time.

Marshall Walters
Captain
LSU Police Department
Louisiana State University
Public Safety Bldg, Baton Rouge, LA 70803

**EXHIBIT H**

BOS-002248

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23    Page 36 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 367-14 *SEALED* 07/10/23    Page 36 of 50

**EXHIBIT 5**

office 225-578-7330 | fax 225-578-0536
mwalt1@lsu.edu | lsu.edu | lsupd.com


From: Maria Fuentes-Martin
Sent: Monday, July 25, 2016 8:10 AM
To: Marshall S Walters
Cc: Jonathon M Hyde
Subject: FW: 20160722-007 Video Voyeurism

Marshall,
I believe this could be a PM73 case. Can you please see if student was provided info regarding Lighthouse and option to pursue complaint via code of conduct since she isn't sure about criminal route? I don't want to drop this case especially as the respondent is an athlete.
Thanks,
Mari


Mari Fuentes-Martin, Ed.D.
Associate Vice President & Dean of Students
Division of Student Life & Enrollment
Louisiana State University
333 Student Union, Baton Rouge, LA 70803
office 225-578-9442 | fax 225-578-9441
mari@lsu.edu | lsu.edu | www.lsu.edu/deanofstudents/



From: Bart Thompson
Sent: Monday, July 25, 2016 7:38 AM
To: Katie McGee ; Ernest G Ballard ; Jason J Droddy ; Jonathon M Hyde ; Maria Fuentes-Martin ; Lawrence J Rabalais
Subject: FW: 20160722-007 Video Voyeurism



From: Andrew J Bodine
Sent: Friday, July 22, 2016 8:40 PM
To: LSU PD Notify
Subject: 20160722-007 Video Voyeurism

Video Voyeurism, victim does not wish to pursue charges as of July 22, 2016 however she would like to think about it before continuing.


Sgt. A Bodine
LSU PD
Patrol Division
Louisiana State University
office 225-578-3231
abodin6@lsu.edu | lsu.edu "


---

**ELECTRONIC FILE CABINET**

| Doc ID | Filename | Date Modified | File Size | Associated with |
|--------|----------|---------------|-----------|-----------------|
| 00055602 | 20160722-007 ■Redacted | July 27, 2016 3:09 pm | 17.76kb | All parties |
| 00055603 | Case Creation Sheet | July 27, 2016 3:09 pm | 9.35kb | This individual |

**EXHIBIT H**

BOS-002249

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23   Page 37 of 50
Case 3:21-cv-00242-WBV-SDJ      Document 367-14 *SEALED* 07/10/23      Page 37 of 50
EXHIBIT 6



**2018371701**                                                      Closed
Behavioral Misconduct

████████████████████ **(898765752)**

## DEMOGRAPHICS

**DOB**                    **Athletics**              **Risk Level**
200█ Redacted              Not Athlete

**Gender**                 **Greek**                  **Department/Course**
Female                     Not Greek

**Ethnicity**              **Honors**
White                      N/A

**Classification**         **ROTC / Veteran**
UCFY 2 EVEG                 N

**Major**                  **Pronouns**
Environmental Engr

**Academic Advisor**       **Honorific**

**GPA Last Term / GPA Cumulative**
1.073 / 1.670

## CONTACT INFORMATION

**Housing**                **Local**                  **Permanent**
RES COLL ONE N H 0459                                 ████████████

**Username**
██████

**Email Address**
███████lsu.edu

**Emergency Contact**
████████████████████████

## INCIDENT AND CASE INFORMATION

**Report Number**          **Role**
                           Victim

**Incident Date**          **Incident Time**          **Incident Location**
2019-03-21                                            North Hall (RC3)

**Reported Date**          **Referral Source**        **Reported By**
2019-03-21                 Residential Life           Redacted

**Case Created Date**      **Assigned To**            **Home Office**
2019-03-21                 Alex Maxwell               Student Advocacy & Accountability
                           (Asst. Dir. SAA)

**Access Restriction**
No group-based restriction

**Clery Reportability**

Redacted                                              Page 1 of 17

**EXHIBIT H**

BOS-004182

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23    Page 38 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 367-14 *SEALED* 07/10/23    Page 38 of 50

**EXHIBIT 6**

**Clery Rationale**

**Tags**

**Next Deadline Date**                    **Reason**

**Incident Description**
** If this is a discrimination or harassment complaint, please indicate the protected status(es) that is/are the basis of the alleged behavior.
Sex/Gender

** Describe the incident(s)/event(s) including date, times, locations, and any potential witness(es) to the behavior.
At approximately 11:45am, Resident ████████ contacted former Resident Assistant ██████ with information regarding a potential dating violence and stalking situation. Resident ████████ shared that a relationship with Resident ████████ had become an issue (violence, stalking, etc.). Student ████ shared this information with Graduate Resident Director ████ via text. GRD ████ contacted Associate Director Christine Wesserling to follow up.

** Describe the impact the behavior has had on you.
N/A

** Have you taken any action to stop the behavior?
No

** If you have taken action to stop the behavior, what actions have you taken and what was the outcome?
N/A

** Please add any additional information that supports your complaint. You may upload screenshots, other pictures, or documents later in this form.
N/A

** What remedy are you seeking (no contact, restrictions or limitations, removal)?
N/A

---

## RESOLUTION INFORMATION

**Charges/Issues**                                        **Findings (if applicable)**
No charges/issues listed

**Appt. Date**                    **Appt. Time**                    **Appt. Location**
2019-05-23                        1:00 PM                           Suite 340, LSU Student Union

**Hearing/Resolution Date**       **Hearing/Resolution Type**       **Hearing Officer(s)**

**Parental Notification**         **Holds in Place**                **Appeal Status**
No                                                                  No appeal filed

**Rationale**

**CC List**

---

## SANCTIONS / ACTIONS

✔ = completed, ✘ = incomplete, ➜ = referred to another case

No sanctions/actions listed

## NOTES

**Individual Notes**



Page 2 of 17

**EXHIBIT H**

BOS-004183

**EXHIBIT 6**

---

**TIX Review**
*Jennie Stewart*

CASE NOTE
Thursday March 21, 2019 at 2:59pm

Assigning to Kimberly for inquiry phase of PM-73

---

**Residential Life Follow-Up**
*Kara Helgeson*

IN PERSON WITH STUDENT
Friday March 22, 2019 at 10:03am

From Jaclyn Saunders:

RLC Saunders retrieved Resident ████████ number from the No Bro desk at 1:15pm. At 1:30pm RLC Saunders called ████████ ████ was expecting the call and welcomed assistance. ████ let RLC Saunders know that ████ would be off work (████ works at Barnes and Nobles) at 5:00pm and would be heading back to North. ████ and Saunders agreed to meet in North at 5:30pm. RLC Saunders texted ████ shortly after, confirming the plan. At approximately 4:50pm ████ let Saunders know that ████ was headed back to North. ████ also asked if a friend could be in the room. RLC Saunders let ████ know that that was totally up to ████ RLC Saunders proceeded to North and met ████ in ████ room, accompanied with Resident ████ (████ suite mate). RLC Saunders went over the process with ████ explained that a Title IX investigation would be opened and someone would reach out, that RLC Saunders would need to share the information with Saunders' appropriate supervisor (while simultaneously explaining that information would remain private and not go beyond whom needed to know), that a safe space/ new room assignment would be an option, and that LSU PD was an option as well. ████ understood all of that information and than began to tell the story. ████ recounted that during football season ████ and friends met a guy named ████ . The night that the two met, ████ and ████ went to the bars in Tigerland and kissed. A few days later the couple "hooked up" - the definition of "hooked up" was not made clear". After the second interaction ████ had lost interest in ████ physically and wanted to maintain a friendship. However, ████ did not seem pleased with this and began be aggressive with ████ often calling ████ names such as "fat" or "hog". ████ would also say things such as "you need to work out", "You shouldn't eat that because you're going to get fat". In group settings ████ would attempt to "playfully wrestle" and has choked ████ and punched ████ and ████ and confided that ████ had left bruises after these incidents and say things such as "i'm not afraid to hit a girl" After these incidents, ████ limited communication with ████ roommate, ████, ████, has been dating ████ and ████ are pretty good friends. Often times ████, ████ , and ████ will hangout together in ████ and ████ room. At one point ████ had stolen food from ████ while ████ was in the room with ████ and ████ would then throw the food, such as cookies, under people's doors and at their doors. Once ████ realized ████ was stealing from ████ and vandalizing others' doors with ████ cut communication with ████. ████ blocked ████ on all social media and blocked ████ number. At one point ████ had sent a message request on Instagram and in the message request had mocked ████ for not having a job. After this incident ████ described incidents such as banging on the door and a cart being banged into the door. While ████ could not prove this, ████ and ████ believed that ████ was responsible. However, ████ still maintains a friendship with ████ and believes ████ shouldn't be upset with ████ behavior. ████ and ████ both stated that in the last few weeks ████ would pop in the parking lot late at night when ████ and ████ are walking back. ████ claimed that ████ will be in the union at an "odd" time such as 3:00pm to get lunch and ████ will be there as well. ████ has also shown up at ████ and ████ door, even when ████ has stated that ████ wants nothing to do with ████. Within the last week ████ had in ████ and ████ room, ████ stole a Polaroid picture of ████ Later that evening, ████ received a snap chat from Redacted of that photo of ████ and a note attached that read "meet me upstairs in 20 minutes". ████, believed ████ was responsible and confronted ████ about the incident and ████ laughed it off, per Redacted recollection. Shortly after, an unknown number called ████ A voicemail was recorded that accused ████ of being dramatic and having "issues". Later in the evening an unknown number texted ████ Those text messages are included, however, ████ had posed as Redacted boyfriend and asked about ████ emotional well being, then accusing ████ of bullying ████. After ████ finished the recount of events, RLC Saunders asked ████ if ████ wanted to move to a safe space for the time being. ████ indicated that this would be a good idea because ████ knew that ████ had reported ████ and ████ explained that ████ was upset about that that ████ would probably tell ████. RLC Saunders inquired about LSU PD, but ████ was hesitant, stating that ████ has talked ████ self out of trouble two other times and did not believe that LSU PD would do anything. RLC Saunders gave ████ the PM 73 booklet to review and RLC Saunders called AD Wesserling to make arrangements to move ████ temporarily into Evangeline. RLC Saunders made sure ████ understood the booklet and process and then RLC Saunders then escorted ████ to EVG. To get settled. Once in the room, Saunders and ████ decided to meet and go to Assignments on Friday, 3/22, at 3:45pm to make permanent room changes for ████ Saunders let ████ know that Saunders would check on ████ in the morning and to let Saunders know if any incidents occurred overnight.

---

**Residential Life Follow-Up**
*Kara Helgeson*

IN PERSON WITH STUDENT
Friday March 22, 2019 at 9:04pm
Last edited Sunday March 24, 2019 at 11:53am

From Jaclyn Saunders:

RLC Saunders met Resident ████ at Assignments. ████ received information for new assignments in EVG. ████ will have made a decision regarding which space on Monday and will be reading out to assignments for the official change. Until then ████ is in the Safe Space.

---

**EXHIBIT H**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23   Page 40 of 50    EXHIBIT 6
Case 3:21-cv-00242-WBV-SDJ     Document 367-14 *SEALED* 07/10/23     Page 40 of 50

**Inquiry Meeting**
*Kimberly Davis*

IN PERSON WITH STUDENT
Monday April 1, 2019 at 11:30am
Last edited Monday April 15, 2019 at 2:18pm

Just realized I never entered meeting notes.

I met with ▌▌▌ to gather additional information about her history with ▌▌. She said that she met ▌▌ in October of 2018; they lived in the same residence hall and went to a football game together. They hung out and made out a few times, but ▌▌ decided to stop spending time with him because he was too mean and would take "play fighting" too far. When ▌▌ turned 18, he excluded ▌▌ from his birthday party because he wanted to have 18 different women perform fellatio on him for his 18th birthday. Eventually, ▌▌ blocked ▌▌ because he would call her mean names such as "fat" or "hog."

▌▌ described a time when she and her roommate went to eat dinner and invited ▌▌, and ▌▌ grabbed ▌▌ butt without asking. Toward the end of the fall 2018 semester, ▌▌ exposed himself to Redacted (▌▌ former suitemate and current roommate) in Patrick F. Taylor Hall. She said she would get knocks on her residence hall door, but they person would always run away; she guessed that the person doing that was ▌▌.

Additionally, ▌▌ said that on Valentine's Day, ▌▌ slid a bar of chocolate under their room door for ▌▌ was not going to be back in the room until the following day, so ▌▌ picked up the candy and put it on ▌▌ desk. ▌▌ said that ▌▌ found out that she had moved the candy bar, and he said he was going to get revenge on ▌▌ for picking the candy up.

▌▌ also described ▌▌ frequent attempts to contact her by telephone. After ▌▌ blocked ▌▌ number, he would make new phone numbers so he could contact her. (Text messages and a voicemail that ▌▌ provided to me are uploaded to the EFC for this case.) ▌▌ said that ▌▌ would call to yell at her, and he once came to her door to try to talk to her when she was ignoring her calls. Sometimes, he would show up at random places at the same time as ▌▌ so ▌▌ asked her former roommate, ▌▌ ▌▌, not to share information about her schedule with ▌▌. ▌▌ says that ▌▌ shared information with ▌▌ anyway.

In the text messages ▌▌ shared, ▌▌ said she was bullying ▌▌. I asked ▌▌ what that was about, and she said that ▌▌ had been upset about a picture that went missing from their room (she was pretty sure ▌▌ took it), but she never said anything to confront ▌▌ about it.

I asked if ▌▌ had tried to reach out since ▌▌ moved to a different building, and ▌▌ said she had seen him outside of her new building once, but he was walking toward the gym, not waiting for ▌▌.

Next, I asked ▌▌ if she knew of other students who had similar problems with ▌▌ to what she has experienced. ▌▌ said that ▌▌ has two close female friends, and she does not know their names, but she thinks they have had some difficulties (her words were "been through a lot") with ▌▌.

Finally, I asked ▌▌ if she felt that her opportunities at LSU had been limited due to ▌▌ behavior. She said that she does not like to walk around alone at night because ▌▌ sneaked up behind her one night when she was walking alone (10:30-11:00 pm). She also avoids the gym because he goes there every day, and her friendship/relationship with her roommate was also ruined.

**Update**
*Crystal Loup*

CASE NOTE
Friday April 12, 2019 at 12:40pm

▌▌ reported that ▌▌ is unsupportive and unwilling to participate in Title IX investigation process d/t their friendship terminating and perceived allegiance to ▌▌. Student requested TItle IX follow-up with Redacted ▌▌ (current roommate) as material observer in case and consented to Lighthouse disclosure.

CASE NOTE
Friday May 3, 2019 at 10:27am

*Jeffrey Scott*

Discussed merits of case with Jennie Stewart, TIX Coordinator. It was agreed that actions do not rise to the level of a Title IX violation, however there appears to be student conduct issues. Case is being assigned to SAA for further action.

**Investigative Notes**
*Daniel DeLuca*

IN PERSON WITH STUDENT
Thursday May 30, 2019 at 9:32am

Met with ▌▌ on 5/23 to gather more information. Please see interview summary attached to EFC.

Redacted

Page 4 of 17

EXHIBIT H

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23   Page 41 of 50
Case 3:21-cv-00242-WBV-SDJ      Document 367-14 *SEALED* 07/10/23      Page 4 of 50

**EXHIBIT 6**

| | |
|---|---|
| **Invite for Follow Up**<br>*Daniel DeLuca* | EMAIL WITH STUDENT<br>Tuesday June 4, 2019 at 3:34pm<br>Last edited Wednesday June 5, 2019 at 8:27am |

From: Daniel DeLuca
Sent: Wednesday, June 5, 2019 8:27 AM
To: ██████ M ██████
Subject: RE: Follow Up

Great, would Friday at 9:00 am be good for you?

Best,
Daniel DeLuca

From: ██████ M ██████
Sent: Tuesday, June 4, 2019 3:40 PM
To: Daniel DeLuca
Subject: Re: Follow Up

Yes. I'm free anytime over the phone. I'd rather not drive I work from 7-4 everyday but I can take calls.

Get Outlook for iOS

From: Daniel DeLuca
Sent: Tuesday, June 4, 2019 3:34 PM
To: ██████ M ██████
Subject: Follow Up

Hi ████

I hope this email finds you well. I was wondering if you had a few minutes this week to connect about your case? A conversation over the phone would probably be best if you didn't want to drive to campus.

Look forward to hearing from you,
Daniel DeLuca

| | |
|---|---|
| **Information about NCO**<br>*Daniel DeLuca* | PHONE WITH STUDENT<br>Friday June 7, 2019 at 9:10am<br>Last edited Friday June 7, 2019 at 3:19pm |

Spoke with student about issuing a NCO between her and ████. She agreed that this would be best, and understood that she too could not contact him if this was in place. Had no further questions and agreed it was the best idea.

| | |
|---|---|
| **NCO**<br>*Daniel DeLuca* | CASE NOTE<br>Friday June 7, 2019 at 3:21pm |

NCO was issued in case # 2018371704. ████ was made aware and approved of this decision.

Redacted

Page 5 of 17

**EXHIBIT H**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23    Page 42 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 367-14 *SEALED* 07/10/23    Page 42 of 50    EXHIBIT 6

**Email forwarded from Lindsay Madatic**
*Jennie Stewart*

EMAIL WITH OTHER
Wednesday March 10, 2021 at 4:56pm

Hi!

Please see below request for information on a Title IX investigation.

Thanks!

Many Thanks,

Lindsay Madatic, SHRM-CP
|Office of Human Resource Management|Associate Director, Employee Relations
110 Thomas Boyd Hall| Baton Rouge, LA 70803
O: 225.578.1521| M: 225.578.8200 | F: 225.578.5981
Email: lmadat2@lsu.edu
www.lsu.edu/hrm

LSU HRM: Employment Resources for Student Success

CONFIDENTIALITY MESSAGE: This e-mail is CONFIDENTIAL and may contain PRIVILEGED information intended only for the use of specific individuals or entity named above. Any unauthorized dissemination or copying of the e-mail is strictly prohibited. If you or your employer is not the intended recipient of this e-mail, or responsible for delivering it to the intended recipient, and you have received this transmission in error, please immediately notify the sender by e-mail and delete this message. Thank you.

From: HRM Office <hr@lsu.edu>
Sent: Wednesday, March 10, 2021 3:29 PM
To: Lindsay N Madatic <lmadat2@lsu.edu>
Subject: FW: Title 9 report from 2019

Hey Lindsay,

Can you please assist?

Human Resource Management
Louisiana State University
110 Thomas Boyd Hall, Baton Rouge, LA 70803
office 225-578-8200 | fax 225-578-6571
hr@lsu.edu | lsu.edu | lsu.edu/hrm

CONFIDENTIALITY MESSAGE: This e-mail is CONFIDENTIAL and may contain PRIVILEGED information intended only for the use of specific individuals or entity named above. Any unauthorized dissemination or copying of the e-mail is strictly prohibited. If you or your employer is not the intended recipient of this e-mail, or responsible for delivering it to the intended recipient, and you have received this transmission in error, please immediately notify the sender by e-mail and delete this message. Thank you.

From: ███████ <███████gmail.com>
Sent: Wednesday, March 10, 2021 3:11 PM
To: HRM Office <hr@lsu.edu>
Subject: Title 9 report from 2019

Hello,

My name is ███████ I went to Lsu from 2018-2020 and eventually I dropped out. I filed a title 9 report in 2019 against ██ ███. I felt like my case was mistreated. Not once was I given updates on anything going on in my case. I didn't know if he got in trouble or even if LSU talked to him. I feel with everything going on I am in the right to ask for a copy of my file or to know if anything ever came of it.

███████gmail.com


Redacted    Page 6 of 17

# EXHIBIT H

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23   Page 43 of 50
**EXHIBIT 6**
Case 3:21-cv-00242-WBV-SDJ     Document 367-14 *SEALED* 07/10/23     Page 43 of 50

**Record Request**
*Daniel DeLuca*

CASE NOTE
Friday March 19, 2021 at 8:39am

Redacted case file was sent to student via her Gmail. Email in EFC.

**Follow up with Student**
*Daniel DeLuca*

PHONE WITH STUDENT
Tuesday March 23, 2021 at 3:02pm

█████ wanted to know the outcomes for the alleged student. After conversation with Jonathan and Trey we agreed that we are not able to provide those as outlined by FERPA. Email Chain is in EFC.

## ELECTRONIC FILE CABINET

| Doc ID | Filename | Date Modified | File Size | Associated with |
|--------|----------|---------------|-----------|-----------------|
| 00157125 | img4088.jpg | March 21, 2019 2:59 pm | 313.97kb | All parties |
| 00157124 | IR | March 21, 2019 2:59 pm | 3.02kb | All parties |
| 00157126 | img4089.jpg | March 21, 2019 2:59 pm | 285.19kb | All parties |
| 00157127 | img4090.jpg | March 21, 2019 2:59 pm | 267.27kb | All parties |
| 00157128 | img4091.jpg | March 21, 2019 2:59 pm | 258.99kb | All parties |
| 00157129 | Case Creation Sheet | March 21, 2019 2:59 pm | 9.86kb | This individual |
| 00157135 | InquiryRequest(Email) | March 21, 2019 3:09 pm | 704.41kb | This individual |
| 00160183 | voicemail-10.m4a | April 15, 2019 2:18 pm | 116.94kb | This individual |
| 00160184 | █████████ Text 1.png | April 15, 2019 2:18 pm | 248.16kb | This individual |
| 00160185 | █████████ Text 2.png | April 15, 2019 2:18 pm | 285.77kb | This individual |
| 00163512 | SAARequestToMeet(Email) | May 21, 2019 9:25 am | 72.04kb | This individual |
| 00163845 | Summary of potentially relevant information with █████ ████████.docx | May 30, 2019 9:33 am | 15.44kb | This individual |
| 00170157 | SAP Appeal | September 11, 2019 1:57 pm | 2.75kb | This individual |
| 00251979 | Record Request Sent_Email | March 19, 2021 8:39 am | 5.69kb | This individual |
| 00251981 | █████████ Case Files_Redacted.pdf | March 19, 2021 8:40 am | 3.53MB | This individual |
| 00252949 | Questions about alleged student_Email | March 23, 2021 3:01 pm | 7.08kb | This individual |
| 00292289 | Email - Document #00292289 | November 29, 2021 7:13 am | 39.40kb | This individual |



**EXHIBIT H**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ   Document 470-14   10/13/23   Page 44 of 50   **EXHIBIT 6**
Case 3:21-cv-00242-WBV-SDJ   Document 367-14 *SEALED* 07/10/23   Page 44 of 50



## 2018371702                                              Closed
Behavioral Misconduct

| Redacted | Redacted |
| --- | --- |

---

### DEMOGRAPHICS

| DOB | Athletics | Risk Level |
| --- | --- | --- |



Redacted

---

### CONTACT INFORMATION

**Housing**                    **Local**                         **Permanent**
RES COLL ONE N H 0459                                            Redacted

**Username**
Redacted

**Email Address**
Redacted

**Emergency Contact**
Redacted

---

### INCIDENT AND CASE INFORMATION

**Report Number**              **Role**
                               Material Observer

**Incident Date**             **Incident Time**                 **Incident Location**
2019-03-21                                                       North Hall (RC3)

**Reported Date**             **Referral Source**               **Reported By**
2019-03-21                     Residential Life                  Redacted

**Case Created Date**         **Assigned To**                   **Home Office**
2019-04-02                     Alex Maxwell                      Student Advocacy & Accountability
                               (Asst. Dir. SAA)

**Access Restriction**
No group-based restriction

**Clery Reportability**

Redacted                                                        Page 8 of 17

**EXHIBIT H**                                                   BOS-004189

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23    Page 45 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 367-14 *SEALED* 07/10/23    Page 45 of 50

# EXHIBIT 6

**Clery Rationale**

**Tags**

**Next Deadline Date**                          **Reason**

**Incident Description**
** If this is a discrimination or harassment complaint, please indicate the protected status(es) that is/are the basis of the alleged behavior.
Sex/Gender

** Describe the incident(s)/event(s) including date, times, locations, and any potential witness(es) to the behavior.
At approximately 11:45am, Resident ▉▉▉▉▉▉ contacted former Resident Assistant ▉▉ with information regarding a potential dating violence and stalking situation. Resident ▉▉▉ shared that a relationship with Resident ▉▉▉ had become an issue (violence, stalking, etc.). Student ▉▉▉ shared this information with Graduate Resident Director ▉▉ ▉▉ via text. GRD ▉▉ contacted Associate Director Christine Wesserling to follow up.

** Describe the impact the behavior has had on you.
N/A

** Have you taken any action to stop the behavior?
No

** If you have taken action to stop the behavior, what actions have you taken and what was the outcome?
N/A

** Please add any additional information that supports your complaint. You may upload screenshots, other pictures, or documents later in this form.
N/A

** What remedy are you seeking (no contact, restrictions or limitations, removal)?
N/A

## RESOLUTION INFORMATION

**Charges/Issues**                                                      **Findings (if applicable)**
No charges/issues listed

**Appt. Date**                    **Appt. Time**                    **Appt. Location**

**Hearing/Resolution Date**       **Hearing/Resolution Type**       **Hearing Officer(s)**

**Parental Notification**         **Holds in Place**                **Appeal Status**
No                                                                  No appeal filed

**Rationale**

**CC List**

## SANCTIONS / ACTIONS

✔ = completed, ✖ = incomplete, ➡ = referred to another case

No sanctions/actions listed

## NOTES

**Individual Notes**

# EXHIBIT H

BOS-004190

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23    Page 46 of 50    EXHIBIT 6
Case 3:21-cv-00242-WBV-SDJ    Document 367-14 *SEALED* 07/10/23    Page 46 of 50

CASE NOTE
Friday May 3, 2019 at 10:27am

*Jeffrey Scott*

Discussed merits of case with Jennie Stewart, TIX Coordinator. It was agreed that actions do not rise to the level of a Title IX violation, however there appears to be student conduct issues. Case is being assigned to SAA for further action.

## ELECTRONIC FILE CABINET

| Doc ID | Filename | Date Modified | File Size | Associated with |
|---|---|---|---|---|
| 00157125 | img4088.jpg | March 21, 2019 2:59 pm | 313.97kb | All parties |
| 00157124 | IR | March 21, 2019 2:59 pm | 3.02kb | All parties |
| 00157126 | img4089.jpg | March 21, 2019 2:59 pm | 285.19kb | All parties |
| 00157127 | img4090.jpg | March 21, 2019 2:59 pm | 267.27kb | All parties |
| 00157128 | img4091.jpg | March 21, 2019 2:59 pm | 258.99kb | All parties |
| 00158833 | Case Creation Sheet | April 2, 2019 5:06 pm | 9.86kb | This individual |
| 00158834 | InquiryRequest(Email) | April 2, 2019 5:11 pm | 704.04kb | This individual |



Redacted

# EXHIBIT H

BOS-004191

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23    Page 47 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 367-14 *SEALED* 07/10/23    Page 4 of 55

**EXHIBIT 6**



**2018371703**                                                                        Closed
Behavioral Misconduct



Redacted

---

## DEMOGRAPHICS

**DOB**                          **Athletics**                          **Risk Level**

Redacted

---

## CONTACT INFORMATION

**Housing**                      **Local**                              **Permanent**
EVANGELINE HALL 4423                                                    Redacted

**Username**
Redacted

**Email Address**
Redacted

**Emergency Contact**
Redacted

---

## INCIDENT AND CASE INFORMATION

**Report Number**                **Role**
                                 Material Observer

**Incident Date**                **Incident Time**                      **Incident Location**
2019-03-21                                                              North Hall (RC3)

**Reported Date**                **Referral Source**                    **Reported By**
2019-03-21                       Residential Life                       Redacted

**Case Created Date**            **Assigned To**                        **Home Office**
2019-04-26                       Alex Maxwell                           Student Advocacy & Accountability
                                 (Asst. Dir. SAA)

**Access Restriction**
No group-based restriction

**Clery Reportability**

Redacted

Page 11 of 17

**EXHIBIT H**

BOS-004192

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23    Page 48 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 367-14 *SEALED* 07/10/23    Page 48 of 50

**EXHIBIT 6**

**Clery Rationale**

**Tags**

**Next Deadline Date**                    **Reason**

**Incident Description**
** If this is a discrimination or harassment complaint, please indicate the protected status(es) that is/are the basis of the alleged behavior.
Sex/Gender

** Describe the incident(s)/event(s) including date, times, locations, and any potential witness(es) to the behavior.
At approximately 11:45am, Resident ▇▇▇▇▇▇ contacted former Resident Assistant ▇▇▇ with information regarding a potential dating violence and stalking situation. Resident ▇▇▇ shared that a relationship with Resident ▇▇▇ ▇ had become an issue (violence, stalking, etc.). Student ▇▇▇ shared this information with Graduate Resident Director ▇▇ ▇ via text. GRD ▇▇ contacted Associate Director Christine Wesserling to follow up.

** Describe the impact the behavior has had on you.
N/A

** Have you taken any action to stop the behavior?
No

** If you have taken action to stop the behavior, what actions have you taken and what was the outcome?
N/A

** Please add any additional information that supports your complaint. You may upload screenshots, other pictures, or documents later in this form.
N/A

** What remedy are you seeking (no contact, restrictions or limitations, removal)?
N/A

## RESOLUTION INFORMATION

**Charges/Issues**                                        **Findings (if applicable)**
No charges/issues listed

**Appt. Date**                    **Appt. Time**                    **Appt. Location**

**Hearing/Resolution Date**       **Hearing/Resolution Type**       **Hearing Officer(s)**

**Parental Notification**         **Holds in Place**                **Appeal Status**
No                                                                  No appeal filed

**Rationale**

**CC List**

## SANCTIONS / ACTIONS

✔ = completed, ✖ = incomplete, ➜ = referred to another case

No sanctions/actions listed

## NOTES

**Individual Notes**

**EXHIBIT H**

BOS-004193

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23    Page 49 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 367-14 *SEALED* 07/10/23    Page 49 of 50

**EXHIBIT 6**

*Jeffrey Scott*

CASE NOTE
Friday May 3, 2019 at 10:27am

Discussed merits of case with Jennie Stewart, TIX Coordinator. It was agreed that actions do not rise to the level of a Title IX violation, however there appears to be student conduct issues. Case is being assigned to SAA for further action.

## ELECTRONIC FILE CABINET

| Doc ID | Filename | Date Modified | File Size | Associated with |
|--------|----------|---------------|-----------|-----------------|
| 00157125 | img4088.jpg | March 21, 2019 2:59 pm | 313.97kb | All parties |
| 00157124 | IR | March 21, 2019 2:59 pm | 3.02kb | All parties |
| 00157126 | img4089.jpg | March 21, 2019 2:59 pm | 285.19kb | All parties |
| 00157127 | img4090.jpg | March 21, 2019 2:59 pm | 267.27kb | All parties |
| 00157128 | img4091.jpg | March 21, 2019 2:59 pm | 258.99kb | All parties |
| 00161370 | Case Creation Sheet | April 26, 2019 11:11 am | 9.85kb | This individual |
| 00161417 | InquiryRequest(Email) | April 26, 2019 12:22 pm | 703.99kb | This individual |



BOS-004194

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 470-14    10/13/23   Page 50 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 367-14 *SEALED* 07/10/23    Page 50 of 50

**EXHIBIT 6**



**2018371704**                                                   Closed
Behavioral Misconduct

Redacted    **Redacted**    Redacted    **Redacted**

## DEMOGRAPHICS

**DOB**                    **Athletics**                    **Risk Level**
Redacted                   Not Athlete

**Gender**                 **Greek**                        **Department/Course**
Male                       Not Greek

**Ethnicity**              **Honors**
White                      N/A

**Classification**         **ROTC / Veteran**
                           N

Redacted                   **Pronouns**

                           **Honorific**

## CONTACT INFORMATION

**Housing**                **Local**                        **Permanent**
RES COLL ONE N H 0299                                       Redacted

**Username**
Redacted

**Email Address**
Redacted

**Emergency Contact**
Redacted

## INCIDENT AND CASE INFORMATION

**Report Number**          **Role**
                           Alleged

**Incident Date**          **Incident Time**                **Incident Location**
2019-03-21                                                  North Hall (RC3)

**Reported Date**          **Referral Source**              **Reported By**
2019-03-21                 Residential Life                 Redacted

**Case Created Date**      **Assigned To**                  **Home Office**
2019-04-26                 Alex Maxwell                     Student Advocacy & Accountability
                           (Asst. Dir. SAA)

**Access Restriction**
No group-based restriction

**Clery Reportability**

Redacted                                                    Page 14 of 17

**EXHIBIT H**                                               BOS-004195