Case 3:21-cv-00242-WBV-SDJ   Document 471-6   10/13/23   Page 1 of 12
Case 3:21-cv-00242-WBV-SDJ   Document 369-6 *SEALED* 07/10/23   Page 1 of 12

11/18/2022
Page 1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


ABBY OWENS, ET AL
                      CASE NO.: 3:21-cv-00242
                      DIVISION WBV-SDJ
VERSUS              JUDGE WENDY B. VITTER
                      MAG. JUDGE JOHNSON
                      JURY DEMANDED

LOUISIANA STATE UNIVERSITY, ET AL

* * * * * * * * * * * * * * * * * * * * *


VIDEO CONFERENCE DEPOSITION OF

JEFFREY SCOTT


TAKEN VIA ZOOM, BATON ROUGE, LOUISIANA, ON

NOVEMBER 18, 2022, BEGINNING AT 9:03 A.M.



REPORTED BY:
    JENNIFER W. PICKETT
    CERTIFIED COURT REPORTER
    CERTIFICATE NUMBER 29011

**EXHIBIT D**

Case 3:21-cv-00242-WBV-SDJ   Document 471-6   10/13/23   Page 2 of 12
Case 3:21-cv-00242-WBV-SDJ   Document 369-6 *SEALED* 07/10/23   Page 2 of 12
11/18/2022
Page 48

```
 1        failure to report.  What was alleged that
 2        she did not report that she should have?
 3   A    Potential knowledge of a Title IX
 4        violation.
 5   Q    Do you remember what parties were
 6        involved that she should've reported that
 7        she did not?
 8                 MR. VAN-LARE:
 9                      Objection.  You can answer.
10   A    What was the question again?  I'm sorry.
11  BY MS. TRUSKOWSKI:
12   Q    Now I forgot, Albert.  Go ahead, Albert.
13                MR. VAN-LARE:
14                      I think the question was did
15                 you know what she should have
16                 reported that she did not.
17  BY MS. TRUSKOWSKI:
18   Q    Yes.  What was she supposed to report
19        that she didn't?
20   A    A student reported to her that there was
21        some potential violation of Title IX
22        involving a student athlete.
23   Q    Sharon, in your investigation, did not
24        report that directly to Title IX; is that
25        accurate?
```

**EXHIBIT D**

Case 3:21-cv-00242-WBV-SDJ  Document 471-6  10/13/23  Page 3 of 12
Case 3:21-cv-00242-WBV-SDJ  Document 369-6 *SEALED* 07/10/23  Page 3 of 12
11/18/2022
Page 49

```
 1  A   Yes, there was a finding of failure to
 2      report.
 3  Q   Do you know if she reported to anyone?
 4  A   Not to my knowledge.
 5  Q   Your understanding is that was the first
 6      investigation where a faculty member or
 7      administrator was found in violation of
 8      Title IX, is that accurate?
 9  A   I can't answer that.
10  Q   As part of that investigation did you
11      talk to Ms. Segar and/or Mr. Ausberry?
12  A   Yes.
13  Q   And what was their role in the
14      investigation and what happened with
15      Sharon Lewis?
16  A   They were termed what we would call
17      witnesses in the investigation and I
18      investigated them to see if Ms. Lewis had
19      reported the particular incident to
20      either one of those.
21  Q   What was the result of that?  Was your
22      conclusion that she had not reported it
23      to them?
24  A   Yes.
25  Q   Mr. Ausberry and Ms. Segar were later
```

**EXHIBIT D**

Case 3:21-cv-00242-WBV-SDJ     Document 471-6    10/13/23   Page 4 of 12
Case 3:21-cv-00242-WBV-SDJ     Document 369-6 *SEALED* 07/10/23   Page 4 of 12
11/18/2022
Page 52

```
 1        too much into Ms. Lewis.  I think Albert
 2        will be asking more questions about that.
 3        How involved, if at all was Miriam Segar
 4        -- how involved was she with your
 5        investigation of Sharon Lewis' failure to
 6        report?
 7   A    I interviewed her as a witness.
 8   Q    What was Ms. Segar's position about what
 9        had taken place?
10   A    I believe Ms. Segar told me that Ms.
11        Lewis had not reported any Title IX
12        violations to her.
13   Q    During your time there, did Miriam report
14        any other Title IX issues that may have
15        taken place in athletics?
16   A    I believe she did.
17   Q    Do you remember what any of those were?
18   A    Not right offhand, no.
19   Q    As part of your recordkeeping in the
20        Title IX office, were records kept such
21        that if there was a complaint made about
22        someone, but there was not necessarily an
23        investigation, if that person was
24        complained about a second or third time,
25        were your records such that you could
```

**EXHIBIT D**

Case 3:21-cv-00242-WBV-SDJ  Document 471-6  10/13/23  Page 5 of 12
Case 3:21-cv-00242-WBV-SDJ  Document 369-6 *SEALED* 07/10/23  Page 5 of 12
11/18/2022
Page 173

```
 1        interview at that building?
 2   A    Yes, sir.
 3   Q    And we will mark this as Exhibit 4.
 4        (Lewis interview notes attached as
 5        Exhibit 4.)  And we'll come back to that
 6        in just a moment but I want to show you,
 7        turn your attention to something else
 8        before we do that.  I'm going to take
 9        this off the screen.  Now, I'm going to
10        show you another email.  Do you see
11        before you, it should be an email dated
12        November 6th, 2018 at the top?
13   A    Yes.
14   Q    Can you identify this document?
15   A    It looks like an email from Sharon Lewis
16        to myself.
17   Q    So, you are the Jeffrey Scott that is the
18        recipient at the top of that email that's
19        showing?
20   A    Yes.
21   Q    And the date there appears to be November
22        6th, 2018 and it's at 7:22 A.M.; is that
23        correct?
24   A    Yes.
25   Q    So, that'd be the day following your
```

# EXHIBIT D

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER



**PM-73 Case Sharon Lewis**

**Investigator:**   Jeffrey Scott, Title IX Lead Investigator

**Date of Report:**                 11/16/2018

This report addresses allegations of a failure to report violations of University Policies on Sexual Misconduct under the definition within LSU's Title IX and Sexual Misconduct Policy (known hereafter as PM-73) concerning LSU employee Sharon Lewis toward LSU student Calise Richardson. Title IX Lead Investigator Jeffrey Scott conducted an investigation into these allegations.

**Involved Parties:**
Respondent is Sharon Lewis, Assistant Athletic Director for Football Recruiting
Complainant is Calise Richardson, LSU Undergraduate student
Material Observer 1 is Miriam Segar, Senior Associate Athletic Director/Senior Woman Administrator
Material Observer 2 is Verge Ausberry, Deputy Director of Athletics

**Date of Reported Incident:**         Fall of 2016

**Date LSU was notified of Incident:**  10/1/2018

**History of the Case:**

| | |
|---|---|
| 10/1/2018 | Complainant Richardson met with Tracy Blanchard, Assistant Dean of Students & Associate Director, Advocacy and filed a complaint. |
| 10/1/2018 | PM-73 case opened and assigned to Title IX Lead Investigator Jeffrey Scott. |
| 10/3/2018 | Complainant Richardson was interviewed in person at the University Administration Building (UAB) by Investigator Scott. |
| 11/5/2018 | Respondent Lewis was interviewed in person at the UAB by Investigator Scott. |
| 11/8/2018 | Material Observer Segar was interviewed via the telephone by investigator Scott. |
| 11/9/2018 | Material Observer Ausberry was interviewed in person at the UAB by Investigator Scott. |

**Alleged Violations:**
The alleged violations in this incident are consistent with conditions and concerns noted under the PM-73 for Dating Violence that includes, but is not limited to:

> **"Dating Violence"** includes but is not limited to:
>
> **"Dating Violence"** as defined by the Clery Act: Violence, including but not limited to sexual or physical abuse or the threat of such abuse, committed by a person who is or has been in a social relationship of a romantic or intimate nature with the alleged victim. The existence of such a relationship will be determined based on a consideration of the length and type of relationship and the frequency of interaction.

Page 1 of 6



BOS-004672

**EXHIBIT 1**

**EXHIBIT D**



**PM-73 Case Sharon Lewis**

"**Dating Violence**" as defined by Louisiana Law: Includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one dating partner against the other (La. RS§ 46.2151(C)) For purposes of this Section, "dating partner" means any person who is or has been in a social relationship of a romantic or intimate nature with the victim and where the existence of such a relationship shall be determined based on a consideration of the following factors:

(1) The length of the relationship,

(2) The type of relationship, and

(3) The frequency of interaction between the persons involved in the relationship

(PM-73, Section II, Definitions)

**Jurisdiction:**
Jurisdiction is defined within LSU's PM-73 Policy to say:
   A. *This policy shall apply to conduct that occurs on an LSU campus, at LSU sponsored activities, and/or when the Student or Employee is representing LSU. LSU shall have discretion to extend jurisdiction over conduct that occurs off campus when the conduct adversely and significantly affects the learning environment or LSU community and would be a violation of this policy and/or any applicable campus policy or code of conduct, if the conduct had occurred on campus. In determining whether or not to extend jurisdiction, LSU may consider, among other factors, its ability to gather information and effect a resolution. LSU may extend jurisdiction (over off-campus conduct) if the alleged conduct by the student or employee:*
   1. *Involved violence or produced a reasonable fear of physical harm, and/or*
   2. *Involved any other members of the LSU community or any academic work, records, documents, or property of LSU.*
   B. *Each Student shall be responsible for his/her conduct from the time of acceptance for admission through the actual awarding of a degree.*      (PM-73, Section I, numbers A and B)

**Standard of Proof:**
In order to determine that an LSU Student and/or Employee has violated PM-73, the standard of proof required is a preponderance of evidence (PM-73, Section V, Number B). The preponderance of evidence standard indicates that it is *more likely than not* that a violation has occurred.

**Interview with Complainant Calise Richardson:**
Interview was conducted with the Complainant on 10/3/2018, in the UAB. In the fall of 2016, Richardson was an intern assigned to the football staff and reported to Sharon Lewis. She stated in the summer of 2016 she began dating [Redacted] and it was known by everyone including football players and Lewis. Richardson said they dated for approximately 3-4 months.

Richardson stated sometime in the fall of 2016 after an LSU football game, she went to Tiger Land with ▓▓▓. She recalled it was after the game were recruits [Redacted] and [Redacted] (Texas A&M) were here for their recruiting visits. Richardson stated she was at JL's bar when she and ▓▓▓ got into an argument. She said ▓▓▓ pushed her and she fell back onto the floor. He was about to hit her when a few

Page 2 of 6

**EXHIBIT D**

BOS-004673

**PM-73 Case Sharon Lewis**

football players stopped him. She asked ▮▮, "You gonna hit me in public" (sic). She said the manager of JL's bar told ▮▮ to leave and he went outside. As she was leaving the bar, ▮▮ came running towards her swinging wildly and was again restrained by football players.

Richardson said the following Sunday morning, Lewis called her and said ▮▮ had called his coaches and told them what happened. Richardson stated Lewis told her that she had spoken to some of the football players and the story didn't match up to hers. Richardson said Lewis asked her if she wanted to have a meeting with ▮▮ and his position coach to iron things out and Richardson said no.

Richardson stated the following Tuesday she was called into a meeting with Lewis and Keava Soil-Cormier. Richardson said she was spoken to about filing a police report but felt they were coaxing her not to do that. Richardson stated she explained to Lewis that ▮▮ had issues and had been violent with her on several occasions. She told Lewis that she just wanted him to get some help because he had issues with women that stemmed from his childhood. Richardson said she told Lewis that she was very scared around ▮▮ when he had been drinking and that she believed ▮▮ was battling some other demons. Richardson said she was not presented with any support mechanisms and the meeting was over with Lewis saying she would take care of things.

Richardson stated later on after her meeting with Lewis, she was removed from working certain events that involved football and was not given a reason. She said about 6 months later she ran into ▮▮ and told him it was not ok what he did to her. She said ▮▮ responded "You know how I get when you make me mad".

Richardson stated she spent the spring 2017 semester abroad in Europe. She said before she left, Lewis told her that her job would be safe for when she returned in the fall. While in Europe, Richardson received a group email stating her position in football recruiting was being dissolved. Richardson said when she returned back to LSU in August 2017, she met with Lewis, Soil-Cormier, and Ya'el Lofton to see if there was anything else she could do in athletics. Richardson said Lewis responded she was let go because she couldn't pull the recruiting cards. Richardson explained that she never did this portion of the job. Richardson said Lewis appeared to be very cold and refused to help her. Richardson surmised it must have dealt with her reporting ▮▮ and asked Lewis to which she said no.

Richardson disclosed that about a month into her dating relationship with ▮▮, he became angry and pinned her up against the wall. He would grab her by the neck and hold her down on the bed. She said he had a very bad attitude especially if he had been drinking. Richardson stated she was embarrassed and never told anyone because she really liked ▮▮ and wanted to help him.

Richardson said she was doing well until the recent reports came out about ▮▮. She said it brought up old feelings and that she had to seek counseling. Richardson felt she was responsible because she knew ▮▮ was violent towards women because of what he did to her. Richardson said after ▮▮ first arrest he texted her when he got out of jail and wanted her to come over and she told him no and that she was over him. Richardson said after ▮▮ latest arrest she knew it was serious and she was very anxious and having problems. She stated she decided to meet with Verge Ausberry to tell him everything that happened. Ausberry told Richardson that he had to report this information to Miriam Segar.

Richardson said on 9/25/2018, Segar called her and left her a message. Richardson called Segar back and got her voicemail and left her a message. Richardson said after two days of not hearing back from Segar, she went to her boss Brent Sumler at the Cox Center and told him what happened. Sumler immediately

**EXHIBIT D**

BOS-004674



**PM-73 Case Sharon Lewis**

walked her over to Tracey Blanchard at LSU Cares where they filed the report and Blanchard was able to provide and refer her to further support mechanisms.

**Interview with Respondent Sharon Lewis:**
Interview was conducted with the Respondent on 11/5/2018, in the UAB. Lewis reported she is the Assistant Athletic Director for Football Recruiting. Lewis stated in the fall of 2016, Richardson worked for her as a student intern. She was aware that Richardson and ▇ were dating. Lewis stated that sometime in the fall of 2016, Coach Dameyune Craig (former WR coach) came to her because some football players had informed him of Richardson's behavior at Tiger Land. Lewis said she was told by Craig that Richardson reportedly threw a drink at ▇ and he threw a drink back at her. Craig told her that reportedly ▇ had to be restrained by other football players and Richardson was restrained by her girlfriends. Lewis said Craig told her he talked to ▇ and ▇ denied it and that he also talked with the other football player witnesses. Lewis stated she also talked to the other football players and they all gave her the same story. Lewis stated there did not seem to be any physical altercation between Richardson and ▇

Lewis stated she called Richardson to her office to discuss the incident that took place at a bar where it was alleged that she threw a drink at ▇. Lewis said Richardson never mentioned ▇ ever hit her. Lewis said she asked Richardson if she felt threatened and she said no. Lewis stated Richardson admitted to throwing a drink at ▇ because he was with another female. Lewis said because there was no report of a physical altercation or sexual assault she let Craig handle the football players and felt she felt no need to report the incident. Lewis stated this was the way athletics had always handled things.

Lewis was questioned if Richardson was offered any support and she responded that the athletics' staff and student athletes are given the athletics' student handbook before the fall season starts and all information is included in the handbook. Lewis said in regards to Richardson, Richardson did not feel threatened and Lewis had offered her to report ▇ to LSUPD, which she rejected.

Lewis stated she did not report this incident to the Title IX Coordinator because she felt there was no report of a sexual assault. Lewis further stated she was not completely aware of the Title IX Office until last year (2017). She said usually Title IX issues in athletics went through Segar's office. Lewis stated she could not recall if she reported this incident to Segar or Ausberry, but that she usually reports things of this nature to one or both. Lewis said that Segar speaks to athletics every fall about reporting and that she completes the annual training offered by Dan Beebe.

Lewis stated in regards to Richardson being removed from her football intern position, she got a directive from Athletics that she had to reduce staff. Lewis said Richardson was among those selected because her performance was not too good and that she had violated policy by giving out football player's personal information. Lewis stated she had exchanged emails with Richardson advising her of this. Lewis stated she was instrumental in helping Richardson get a job at the LSU Cox Communications Academic Center for Student Athletes. Lewis met with Richardson to see what direction she wanted to go with her career and they both felt Cox was the best fit. Lewis stated she told Richardson she would do whatever she could to make sure she landed the job. Lewis said she made a call to Brent Sumler and others at Cox to put in a good word for Richardson.

Page 4 of 6

**EXHIBIT D**

BOS-004675



**PM-73 Case Sharon Lewis**

**Additional Information Provided by Respondent:**
Lewis provided copies of emails between her office and Richardson regarding the athletic department's downsizing and Richardson's job performance.

**Interview with Material Observer Miriam Segar:**
Interview was conducted with Segar via the telephone on 11/8/2018. Segar stated that Lewis has never reported any Title IX/Sexual Misconduct issue to her. She recalled a few weeks ago receiving a voicemail message from Richardson and they played phone tag and never talked. Segar stated Ausberry had mentioned something to her about Richardson and a possible issue when she dated ▮▮▮ and that was the reason she reached out. She said she did not know how much information Ausberry knew but knows Richardson spoke with him. Segar stated that all athletics' staff are required to take the annual Dan Beebe training.

**Additional Information Provided by Material Observer:**
Segar provided copies of Lewis' signed acknowledgement forms from the Dan Beebe training for the years of 2016, 2017 and 2018.

**Interview with Material Observer Verge Ausberry:**
Interview was conducted with Ausberry on 11/9/2018, in the UAB. Ausberry stated he has been a mentor to Richardson. He said she came to him a few weeks ago in tears asking if she could talk with him. Ausberry stated she told him about how Lewis had fired her while she was in Europe and felt it was unfair. Richardson told Ausberry that she felt Lewis had fired her over an incident between her and ▮▮▮ that happened at Tiger Land in the fall of 2016. Richardson shared with Ausberry the incident involved ▮▮▮ throwing a drink at her. Ausberry said Richardson told him that she felt responsible for ▮▮▮ behavior. Ausberry stated he immediately told her that he didn't want to hear anymore and that she needed to speak with Segar since it sounded like a dating issue and that it dealt with ▮▮▮ which he already knew there was an investigation. Ausberry said he provided Richardson with Segar's phone number and told her that she really needed to disclose this information to Segar.

Ausberry stated this was the first time he had heard there was any issue between ▮▮▮ and Richardson. He stated Lewis nor anyone else informed him about this situation and it was only when Richardson came to him a few weeks ago that he first heard of all of this. Ausberry stated he knows to refer Title IX issues to Segar or directly to the Title IX Office and that is why he immediately referred Richardson to Segar.

Ausberry stated when Richardson was let go from her job with Lewis, he spoke with Richardson and helped direct her to an area of interest. Ausberry said he steered her in the direction of the Cox Academic Center because he thought this would be a better fit. Ausberry stated Lewis never shared with him why Richardson was let go and he never asked.

**EXHIBIT D**

BOS-004676



**PM-73 Case Sharon Lewis**

**Conclusion and Rationale:**

Given the testimony and evidence presented, this investigator finds that there is sufficient evidence to prove that Respondent Sharon Lewis violated LSU's PM-73 policy in that as a Responsible Person she failed to report a potential violation of LSU's Title IX and Sexual Misconduct Policy PM-73.

This determination is derived from the fact that both the Complainant and the Respondent admit to a meeting commencing whereby the conversation surrounded an allegation of dating violence between the Complainant and another LSU student athlete. The Respondent, a Responsible Person, admitted to a cursory inquiry involving questioning of potential witnesses to this allegation. The Respondent could not recall if she reported this information to the appropriate school designee. The Title IX Office had no record of this allegation ever being reported. Two Material Observers deny that the Respondent ever reported this information to them. PM- 73 defines a **Responsible Person** as: "Any employee who has the authority to take action to redress sexual violence or who has been given the duty of reporting incidents of sexual violence or any other misconduct prohibited by this policy by students or employees to the Title IX coordinator or other appropriate school designee. Responsible Persons do not include victims' advocates, mental health counselors, or clergy."

The Respondent completed the Human Relations Risk Training conducted by the Dan Beebe Group for the years 2016, 2017 and 2018 and signed her respective acknowledgement forms. The acknowledgement form states: "Employees are not required to confront anyone who is the source of the complaint or anyone closely associated with the persons who are the source of the complaint. However, I understand I have a responsibility to inform an uninvolved member of the Athletics Department or University administration, or otherwise utilize available avenues of reporting, so prompt action may be taken to stop misconduct and prevent future occurrences."

A review of Human Resource Management (HRM) training records revealed that The Respondent has never self-enrolled and taken the annual sexual misconduct training, *"Preventing Sexual Misconduct Training for Employees"*.

This case is being closed within the Title IX Office and referred to Human Resources Management (HRM) for any further review.

_____
Jeffrey Scott, Title IX Lead Investigator

# EXHIBIT D

BOS-004677

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Sharon Lewis interview

11/5/18 – **12:15pm**

UAB

- She is Asst. AD for Football Recruiting
- Calise worked for her as a student intern
- She was aware that Calise and ▇ were dating
- Coach Dameyune Craig (former WR coach) came to her because players had informed him of Calise behavior at Tiger Land – Calise reportedly threw drink at ▇ and he threw drink back at her – he had to be retrained by players – she was restrained by her girlfriends
- Craig told her he talked to ▇ and ▇ denied it- he also talked with other player witnesses
- She talked to other players also and they all gave the same story
- She called Calise in along with Keava, **Ya'el Lofton** and Calise said ▇ never hit her – Sharon said she asked if Calise felt threatened she said no – She admitted to throwing drink at ▇ cause he was with another girl -Sharon said because of no physical altercation or sexual assault she let Damien handle – She said this was way athletics handled things
- Asked if Calise was offered any support – she said they are given the athletics student handbook before season starts and all information is in there – Calise didn't feel threatened and Sharon offered LSUPD which she rejected
- She was not sure if she reported it to Miriam or Verge
- Miriam speaks to them every fall about reporting
- Did not report to TIX – felt since no sexual assault - Did not know of TIX till last year – always went through athletics
- She got directive from Athletics that she had to reduce staff – Calise was among those selected – her performance was not too good – violated policy by giving out players ▇ personal information – her evaluations were not up to par
- She exchanged emails with Calise advising her of this – will provide copies
- She was instrumental in helping Calise get job at Cox – helped her prepare
- Met with her to see what direction she wanted to go with her career and felt Cox was best fit – told her she would do whatever she could to make sure she landed the job
- Made call to Brent Sumler to put in good word for her

BOS-001289

**EXHIBIT 4**

**EXHIBIT D**