09/26/2022
Page 1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, SAMANTHA BRENNAN,
CALISE RICHARDSON, JADE LEWIS,
KENNAN JOHNSON, ELISABETH          CASE NO.
ANDRIES, JANE DOE, ASHLYN          3:21-CV-00242
ROBERTSON, CORINN HOVIS, AND
SARAH BETH KITCH

VS.

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL
COLLEGE, AND VERGE AUSBERRY,
MIRIAM SEGAR, JENNIE STEWART,
AND JONATHAN SANDERS, IN THEIR
INDIVIDUAL CAPACITIES

  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

         *** CONFIDENTIAL TRANSCRIPT ***

        *** SUBJECT TO PROTECTIVE ORDER ***

        The deposition of SAMANTHA BRENNAN, taken in

connection with the captioned cause, pursuant to

the following stipulations before RITA A. DEROUEN,

Certified Court Reporter, at Phelps Dunbar, 400

Convention Street, Suite 1100, Baton Rouge,

Louisiana 70802 on September 26, 2022, beginning

at 9:06 am.


        COURT REPORTERS OF LOUISIANA, L.L.C.
           9522 Brookline Avenue, Suite 217
            Baton Rouge, Louisiana  70809
      PHONE (225) 201-9650 * FAX (225) 201-9651
          E-mail:  depos@courtreportersla.com

# EXHIBIT G

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23    Page 2 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 2 of 37    09/26/2022

Page 50

1    to a friend who is going to come pick up the

2    wallet?

3        A.  Yes.

4        Q.  Okay.  So there was no text exchange with

5    him at all until this one, July 10th at 11:44 that

6    morning?

7        A.  Correct.

8        Q.  Okay.  All right.  So anyway -- but you

9    said earlier that the two of you did not arrive

10   together at your apartment, he came later?

11       A.  We got to the building --

12       Q.  To the building of the complex.

13       A.  -- of the apartment at the same time, but

14   to my actual apartment unit, that was not

15   together.

16       Q.  Okay.  So you must have given him your

17   apartment number at some point?

18       A.  Yes.

19       Q.  Okay.  All right.  So when he says, "I

20   came back to your apartment last night," I mean, I

21   guess we don't really know what he means by that?

22       A.  I don't know.

23       Q.  Okay.  All right.  So you said earlier

24   you've never -- you didn't really see ████ around

25   the apartment complex after the events of July 9th

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23    Page 3 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 3 of 37    09/26/2022

Page 51

 1  or July 10th?

 2      A.  Correct.

 3      Q.  Okay.  And did you ever speak with him on

 4  the phone after that -- those dates?

 5      A.  No, not that I recall.

 6      Q.  Okay.  Did you ever see him while you were

 7  out at bars after July 10th?

 8      A.  Not that I recall.

 9      Q.  So are you aware of any attempts he might

10  have made to try to contact you after July 10th?

11      A.  I'm not aware.

12      Q.  Okay.  Okay.  So let's then go to

13  paragraph 297 of the complaint.  And it says that

14  on July 22, 2016, your coworker told you that

15  ███████ had taken a nude photo of you and had shared

16  it with the football team; is that right?

17      A.  Yes.

18      Q.  Okay.  So this is about 12 days later.

19  12 days from the last -- anything with █████████

20  ████████ correct?

21      A.  Correct.

22      Q.  Okay.  All right.  And the coworker that

23  this refers to, is that ██████████ Hopefully I'm

24  pronouncing the name correctly.

25      A.  I believe so.

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23    Page 4 of 37    09/26/2022
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 4 of 37
Page 60

1  everything?

2      A.  (The witness nodded head.)

3      Q.  So at that point, you said her demeanor

4  changed.  What was the, I guess, plan of action at

5  that point from Ms. Lewis's perspective?

6      A.  She said she was going to have to go talk

7  to other people.  I don't recall exactly what she

8  said and how it ended.  I know at one point she

9  told me she had told Les Miles and that she would

10  get -- kind of follow back up with me.

11      Q.  Okay.  Now, at some point, you're in a

12  meeting with both Sharon Lewis and Miriam Segar;

13  is that correct?

14      A.  Yes.

15      Q.  Okay.  And do you recall that was the same

16  day as the initial meeting only with Sharon?

17      A.  It was the same day.

18      Q.  Okay.  All right.  And so -- and that is

19  expressed in paragraph 299 of your second amended

20  complaint, "Met with Sharon Lewis and Defendant

21  Segar at Sharon Lewis's request."

22      A.  Correct.

23      Q.  And that's your understanding, is that

24  Ms. Lewis, I guess, summoned you to that meeting?

25      A.  Correct.

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23    Page 5 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 5 of 37    09/26/2022
Page 63

1    did not want to go to the police at the time?

2        A.  No.

3        Q.  You don't recall making statements that

4    you did not want to go to the police?

5        A.  I do not recall those statements.

6        Q.  Okay.  Okay.  So it says, in

7    paragraph 308, "Sharon Lewis asked Brennan if she

8    wanted to initiate a police investigation or if

9    she wanted LSU to handle it internally."

10        Okay.  Paragraph 309, "Brennan told Sharon

11    Lewis that she wanted LSU to handle it

12    internally."

13        Then you say, at paragraph 310, "Defendant

14    Segar ignored Brennan's request and took Brennan

15    to the LSU Police Department to file a report."

16        So those are the allegations from your

17    second amended complaint.  Are those accurate?

18        A.  Not completely.  And I had -- after this

19    complaint was given to me, I had already e-mailed

20    my attorneys and let them know that this was not

21    completely accurate.

22        Q.  Okay.  So, okay, that's good to know.  I

23    appreciate your candor.

24        So what was the accurate representation of

25    what happened?

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23    Page 6 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 6 of 37    09/26/2022
Page 64

1    A.  I expected, I guess, to be shut down.

2    I've seen and heard, you know, movies that they

3    don't obviously want this to get out.  So I was a

4    little bit nervous and very confused.  And I

5    remember Sharon Lewis asking me if I wanted to

6    handle this officially or unofficially.

7    **Q.  Okay.**

8    A.  I was not sure what that meant.  I would

9    say officially, I assumed, presumed, that it was,

10   you know, an investigation and, you know, reports

11   and everything.

12       And I assumed unofficially would probably

13   mean that he was going to run like 100 killers at

14   practice that week.  But I wasn't sure.  But I

15   elected to do it unofficially.

16       But that is where Miriam Segar and Sharon

17   Lewis offered that I could go to the police and

18   file a police report if I wished.

19   **Q.  Was there indication by either one of them**

20   **that they thought a crime had been committed by**

21   **what he did?**

22   A.  If they encouraged me to make a police

23   report, I would assume that they had thought it

24   was police-worthy.

25   **Q.  Okay.  And was that a fair estimation in**

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23    Page 7 of 37    09/26/2022
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 7 of 37
Page 65

1    your mind, that it was police-worthy?

2        A.  Yes.

3        Q.  Okay.  All right.  And so let's see.  And

4    you said some of these allegations were not

5    correct, but I just want to focus in.

6            It says at 310, paragraph 310, "Defendant

7    Segar ignored Brennan's request and took Brennan

8    to LSU Police Department to file a report."

9            Kind of making it -- I mean, the way it

10   leads, to me, it's kind of like you were coerced

11   into going to the police department; is that

12   correct?

13       A.  That is not correct --

14       Q.  Okay.  So you were not --

15       A.  -- from my recollection.

16       Q.  Okay, very good.  And I'm sorry to talk

17   over you.

18            So Miriam Segar did not force you to go to

19   the police department?

20       A.  No.  I would say she encouraged.

21       Q.  Okay.  So in your mind, was she

22   supportive?

23       A.  Yes.

24       Q.  Okay.  And how did you get to the police

25   department?

# EXHIBIT G

Case 3:21-cv-00242-WBV-SDJ   Document 471-9   10/13/23   Page 8 of 37
Case 3:21-cv-00242-WBV-SDJ   Document 369-10 *SEALED* 07/10/23   Page 8 of 37   09/26/2022
Page 66

1    A.  I can't quite remember if we drove

2    separately or together, but I know a car is how I

3    got there, and Ms. Segar came with.

4    **Q.  Okay.  And when you had the meeting -- and**

5    **I apologize, I should have covered this earlier.**

6    **The meeting was held where?  The two**

7    **meetings, the meeting with Sharon and the meeting**

8    **with both of them after that, what building were**

9    **those held in?**

10    A.  It was in the Football Operations Building

11    in Sharon Lewis's office.

12    **Q.  Both meetings were in Sharon's office?**

13    A.  Yes.

14    **Q.  Okay.  Okay.  So then at some point,**

15    **either separately or together, but Ms. Segar**

16    **escorts you to the police department, LSU Police**

17    **Department?**

18    A.  Correct.

19    **Q.  Okay.  All right.  Was she able to go in**

20    **with you to make your report?**

21    A.  I believe she walked in with me, but they

22    wouldn't allow her in the interrogation room, I

23    guess, is what they kind of brought me to.

24    Because I remember sitting there alone in a

25    concrete box.

# EXHIBIT G

Case 3:21-cv-00242-WBV-SDJ     Document 471-9    10/13/23    Page 9 of 37
Case 3:21-cv-00242-WBV-SDJ     Document 369-10 *SEALED* 07/10/23     Page 9 of 37     09/26/2022

Page 68

1    this him being in a supportive role?

2         A.   Yes.

3         Q.   Did you appreciate that?

4         A.   I did.  Again, I thought I would be shut

5    down and try to make my statements be quiet and go

6    away.  So I was very surprised.

7         Q.   Okay.  And I apologize if I didn't say

8    this earlier, but what Miriam Segar did as far as

9    encouraging you to go to the police department,

10   did you find that was also -- were you

11   appreciative of that?

12        A.   I was, and I believe I texted her a thank

13   you.

14        Q.   And as it so happens, that was going to be

15   my next exhibit, so I appreciate the segue.

16             Okay.  So Exhibit 5 is going to be a text

17   exchange with Miriam Segar.

18             (Exhibit 5 was marked.)

19   BY MR. CODY:

20        Q.   So do you have it in front of you?

21        A.   I do.

22        Q.   Okay.  All right.  So does this appear to

23   be the text exchange that was just referenced?

24        A.   Yes.

25        Q.   Okay.  And so for the record, this is with

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23  Page 10 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 10 of 37    09/26/2022

Page 69

1    Miriam, it says it at the top.  And the time

2    stamp -- there's two different time stamps,

3    3:16 p.m., July 22nd, at the top, and the message

4    is, "This is Miriam with Athletics."  Okay?

5         And then it looks like your response to

6    that was then at 4:29 p.m. on the same day.  You

7    say, "Thanks again so much.  I really appreciate

8    everything you did today."

9         And then Miriam responds and says, "No

10   problem.  Let me know if you need anything."

11        Okay.  So that's an accurate

12   representation of the exchange that you had with

13   Ms. Segar on that day?

14        A.  Yes.

15        Q.  Okay.  So you were, in fact, appreciative

16   of what she had done?

17        A.  I was.

18        Q.  And at the beginning of that text exchange

19   it says, "This is Miriam with Athletics."

20        What did that mean to you?

21        A.  That she worked with athletics.

22        Q.  Okay.  So -- and you didn't know exactly

23   what her role is, it's safe to say, at the time of

24   the meeting with her, I suppose?

25        A.  Not that I recall.

# EXHIBIT G

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23  Page 11 of 37  09/26/2022
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 11 of 37
Page 74

1   also corrected that with my attorneys.

2       **Q.  Okay.  And I think we'll get to that in**

3   **just a bit.**

4       A.  Yes, I have never claimed rape.

5       **Q.  And I appreciate, again, the candor.**

6   **Thank you.**

7           **All right.  So let's look next at the**

8   **police report.  And so I'm going to mark this as**

9   **Exhibit 6.**

10          (Exhibit 6 was marked.)

11      A.  Can I make a clarification on my last --

12  BY MR. CODY:

13      **Q.  Yes, of course.**

14      A.  I did do an interview with a reporter that

15  laid out facts that did allude that I was raped.

16  So if that gets brought into light, I do want to

17  say that that might say it, but I have not pursued

18  it elsewhere, if that makes sense.

19      **Q.  Okay.  And I think I'm going to**

20  **probably -- that's going to be in my questions**

21  **later.**

22          **But just right now, since you brought it**

23  **up, if that statement was, in fact, in something**

24  **to a reporter, like an e-mail to a reporter or**

25  **something like that, you agree that that's**

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23   Page 12 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 12 of 37    09/26/2022

Page 87

1    Q.  Okay.  All right.  And at this time, you
2    do say you had not seen the picture, so you're not
3    fully sure if it was even you.
4         Now, since that time, you have seen the
5    picture, you said?
6    A.  Correct.
7    Q.  And so this -- yeah.  So, I mean, you're
8    certain at this point that it was you?
9    A.  (The witness nodded head.)
10   Q.  Okay.  And you go on to say you are not
11   sure if you wanted to pursue criminal charges at
12   this time and would like to think about it.
13   A.  Correct.
14   Q.  Okay.  So -- and, again, you know, we know
15   from talking about the earlier meeting with Miriam
16   Segar and Sharon Lewis that, you know, you needed
17   some support in order to go to the police office,
18   it wasn't something you wanted to do initially; is
19   that fair?
20   A.  Correct.
21   Q.  And still, even at this point, you
22   weren't -- you were kind of on the fence then
23   about actually pressing charges against ██████
24   A.  Right.
25   Q.  And, of course, here you had not seen the

# EXHIBIT G

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23  Page 13 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 13 of 37    09/26/2022
Page 89

 1          So yeah, still looking at this report,
 2   there is a page attached to it, it's called LSU
 3   Sexual Violence Confidentiality Notice and Waiver.
 4   And that's Bates stamped 10.
 5          And it appears to have -- and you tell me,
 6   but is that your signature at the bottom?
 7     A.   Yes.
 8     Q.   And that's your name and your phone number
 9   and your e-mail address?
10     A.   Yes.
11     Q.   And it's dated July 22, 2016?
12     A.   Yes.
13     Q.   Okay.  And so at this point, is it fair to
14   say you did not want your information to be
15   shared, you wanted to remain anonymous?
16     A.   Correct.
17     Q.   Okay.  And, again, I mean, you wanted time
18   to think about it.  I mean, this wasn't the final
19   word on this issue, whether you were going to
20   pursue it or not; is that fair?
21     A.   Right.
22     Q.   Okay.  Now, after the -- this report was
23   taken, and that -- again, that was Sergeant
24   Bodine, I believe -- there was a follow-up
25   conducted by a Detective Jeffery Melchior, if I'm

# EXHIBIT G

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23  Page 14 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 14 of 37    09/26/2022
Page 90

1    pronouncing it correctly.  And it looks like it's

2    on Bates Plaintiffs Number 8 of the report.  And

3    it's pretty brief.  But that -- is that accurate

4    to your recollection?

5             First off, this is part of the report, but

6    you recall seeing this?

7       A.  I recall seeing this page or -- what's

8    your question?

9       Q.  Do you recall seeing this page?

10      A.  Yes.

11      Q.  Okay.  And, unfortunately, we don't have

12   any type of time stamp or anything with this

13   supplement.  And I'm calling it a supplement

14   because the narrative title says, "Supplement 2

15   added by Detective J. Melchior," toward the top.

16            But do you have any recollection of when

17   this contact that's described in this supplemental

18   report, when that occurred?

19      A.  Not exactly, but I recall it happening.

20      Q.  Okay.  So you do recall a conversation --

21   well, and I'm just trying to make sure, was this a

22   face-to-face conversation or telephone?

23      A.  It was a phone call.

24      Q.  A phone call, okay.  And so you do

25   recall -- and I guess did he initiate the call?  I

# EXHIBIT G

Case 3:21-cv-00242-WBV-SDJ   Document 471-9   10/13/23   Page 15 of 37
Case 3:21-cv-00242-WBV-SDJ   Document 369-10 *SEALED* 07/10/23   Page 15 of 37   09/26/2022
Page 91

1  mean, I think it says "made contact."  He made the
2  contact, right?
3      A.  Correct.
4      Q.  Okay.  And so he was following up with you
5  about -- you know, after your initial report,
6  which we know was on July 22nd?
7      A.  Yes.
8      Q.  Okay.  Based on the dates we have here and
9  everything.
10          And we just don't know when this was.
11  Let's just try to get some idea.  So you think it
12  was still July when you had this, or was it
13  already into August, perhaps?
14      A.  I don't know for sure.
15      Q.  Okay.  Were you still at LSU when he
16  reached out to you?
17      A.  I think so.
18      Q.  Okay.  So -- and we'll get into this
19  later, but you -- about a month later, you had
20  left LSU?  At least by a month later you had left
21  LSU, correct?
22      A.  Temporarily.
23      Q.  Okay, yeah.  But you were out of town,
24  say, August 22nd?
25      A.  Yes, around that time.

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23  Page 16 of 37  09/26/2022
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 16 of 37

Page 92

1    Q.  All right.  But you don't recall if you

2   were still in town or had left or out of town at

3   the time that he initiated this contact?

4    A.  If I had to guess, I believe it was when I

5   was still at LSU, but I can't say for certain.

6    Q.  Okay.  All right.  So it says here he made

7   contact to follow up.  During the contact, it

8   talks briefly about the case.  It says here that

9   you were preparing to return home.  Okay.  So that

10  actually probably gives us some context then.

11       So at some point, you said you went back

12  briefly to home.  And you were saying home at that

13  point was Minnesota?

14   A.  Yes.

15   Q.  Okay.  So you were getting ready to go to

16  home, Minnesota.  And so you must have still been

17  at LSU, I guess it's safe to say?

18   A.  I would agree.

19   Q.  Okay.  And then it says you still wished

20  to not pursue charges against the accused and also

21  wished to remain anonymous.  And it says, "As it

22  relates to LSU Care, Title IX, Lighthouse,

23  et cetera."

24       Okay.  Now, you know, I know this was six

25  years ago, but do you recall exactly the

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23  Page 17 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 17 of 37    09/26/2022

Page 93

1    discussion about not pursuing the charges even at

2    this point, this follow-up report?

3        A.  Say that again, please.

4        Q.  Do you recall a specific discussion with

5    Detective Melchior about not pursuing charges on

6    whatever date this was?

7        A.  I remember he was very encouraging to --

8    if I remember correctly, to press charges.  Like

9    everybody was very encouraging.  And I had the

10   feeling that like there was a unanimous decision

11   that I -- like nobody tried to keep me from

12   pressing charges.  But that's all I really recall

13   about that conversation.

14       Q.  And when you say "nobody" -- so we've got

15   a few different defendants in this lawsuit.  And I

16   mentioned specifically Miriam Segar, but Verge

17   Ausberry is also a defendant in this lawsuit.

18           Are you aware of him ever trying to

19   dissuade you?  Did you have any interaction at all

20   with Verge Ausberry?

21       A.  I had no idea who he was.

22       Q.  Okay.  So there was no attempt by Verge

23   Ausberry to dissuade you from pursuing charges?

24       A.  I don't believe I've ever talked to him.

25       Q.  And what about -- we have other

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23  Page 18 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 18 of 37    09/26/2022
Page 94

1    defendants -- Jennie Stewart?

2        A.  I had never heard of her until this

3    lawsuit came to be.

4        Q.  Okay.  And what about Jonathan Sanders?

5        A.  Same, I had never heard of him.

6        Q.  Okay.  And anybody else affiliated with

7    LSU at all that you can think of that tried to

8    discourage, dissuade, prevent you from pursuing

9    charges against ███████  ███████

10       A.  Yes.  My coworker, ████████████████

11   ███████

12       Q.  Okay.  So those were student workers?

13       A.  Yes.

14       Q.  But anybody affiliated with the actual,

15   you know, administration?

16       A.  No.

17       Q.  Okay, very good.  And we'll get into that

18   shortly, what you just alluded to.

19            All right.  So we talked about the

20   discussion about whether to pursue charges when

21   you had this interaction with Detective Melchior.

22            And do you recall at all about insisting

23   that you would still remain anonymous at that

24   time?

25       A.  I know I had that waiver that I had to

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23  Page 19 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 19 of 37    09/26/2022
Page 95

1    sign initially, but I don't recall.  And the

2    follow-up question to that, but I -- that doesn't

3    mean it didn't happen, I just don't remember.

4    **Q.  And in that same sentence, I'm looking at**

5    **the first paragraph of this Supplement Number 2,**

6    **it says, "Anonymous as it relates to LSU Care,**

7    **Title IX, Lighthouse, et cetera."**

8    **Do you remember any specific discussion**

9    **about LSU Care?**

10    A.  I don't know specifically LSU Care.  I

11    know that I was offered to go to like a clinic and

12    get checked out, checked for STDs, stuff like

13    that.

14    **Q.  Okay.  And who offered to take you -- or**

15    **for you to go to a clinic?**

16    A.  I don't remember if it was Mr. Bodine or

17    Melchior, one of -- somebody at the police

18    department.

19    **Q.  So definitely somebody with the police**

20    **department.  Okay.**

21    A.  Yes.

22    **Q.  Were you concerned about potentially**

23    **having an STD?**

24    A.  I was naive thinking it wouldn't happen to

25    me.  So not really at the time.

# EXHIBIT G

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23   Page 20 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 20 of 37    09/26/2022

Page 96

1    Q.  And just for clarification, are you aware

2    of any STD contracted from this event?

3    A.  I did not have an STD contracted from this

4    event.

5    Q.  And with regard to those other things that

6    are specifically listed at the end of that

7    paragraph, Title IX, was there a discussion of

8    Title IX with Detective Melchior that you can

9    recall?

10    A.  I don't recall.

11    Q.  Okay.  And what about with regard to the

12    Lighthouse?

13    A.  I don't recall.

14    Q.  Okay.  But could it have happened and

15    maybe your recollection just isn't 100 percent

16    today?

17    A.  It could have happened.

18    Q.  Okay.  All right.  And so then we go on to

19    the second paragraph.  And it says that you

20    advised, after returning home, you planned to

21    reflect on everything, and then advise that if you

22    decided to pursue charges or seek help, that you

23    would notify Detective Melchior directly; is that

24    accurate?

25    A.  Yes.

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23  Page 21 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 21 of 37    09/26/2022
Page 97

1        Q.   Okay.  And it looks like he indicates that

2   he gave you his contact information and reiterated

3   that LSU P.D. and the University were here for

4   you.

5           Is that -- do you recall him saying that

6   or any discussion of being there for you or

7   anything of that nature?

8        A.   I do not recall.

9        Q.   Could it have happened?

10        A.   It could have happened.

11        Q.   Okay.  When he called you, did he call you

12   on your cell phone, do you know?

13        A.   Yes.

14        Q.   Okay.  Did you have like a landline at

15   all, or was it only a cell phone back then?

16        A.   Just a cell phone.

17        Q.   Okay.  So any telephone communication with

18   you would have been through cell phone?

19        A.   Correct.

20        Q.   Okay.  Do you know if you still have --

21   well, let me back up.

22           Were there any text messages that you can

23   recall with Detective Melchior?

24        A.   Not that I recall.

25        Q.   What about any text messages with Sergeant

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9   10/13/23   Page 22 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 22 of 37   09/26/2022

Page 98

1    Bodine?

2        A.   No.   I've never had his contact

3    information that I recall.

4        Q.   But you had, at least based on this -- I

5    mean, is it accurate to say you had Detective

6    Melchior's contact information?

7        A.   Yes.

8        Q.   And he had yours?

9        A.   Yes.

10       Q.   Okay.  Very good.  So let's see.  I think

11   we are pretty much done with -- let me just make

12   sure.  This is a few pages.  Oh, wait one second.

13   Okay.  Let me -- yeah, I don't want to get ahead

14   of myself.

15            So at what point did you see your picture?

16       A.   I would say either later that day or

17   within the immediate following days.

18       Q.   Okay.  And when we're saying that -- okay.

19   So the day -- July 22nd, we're kind of -- so that

20   was the day of the disclosure, right?

21       A.   Yes.

22       Q.   The day that you went, you talked to

23   Sharon, then Sharon and Miriam, and then went to

24   the police department.  So a few days after that?

25       A.   I would say within a few days I was shown

# EXHIBIT G

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23  Page 23 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 23 of 37   09/26/2022
Page 99

1  the picture.

2       **Q.  Okay.**

3       A.  Of that date.

4       **Q.  All right.  So at the time of this**

5  **supplemental report that we just went over, is it**

6  **a good chance that you had seen the picture at**

7  **that point?**

8       A.  At the point that I made this report, I

9  had not seen the picture.

10      **Q.  The initial narrative report?**

11      A.  Yes.

12      **Q.  And I'm asking about the follow-up report,**

13 **the Supplement Number 2 that we just went over**

14 **with Detective Melchior on a different date.**

15      A.  I don't know if I had seen it at that

16 point.

17      **Q.  Okay.  And that's fair.  We don't have a**

18 **time stamp here.  I'm not clear on when this**

19 **occurred, and that's why I was trying to see if**

20 **you had any knowledge of exactly when.**

21          **But it does say it looks like you're**

22 **getting ready -- you're preparing to return home**

23 **at this point when this narrative -- this**

24 **supplement was prepared.**

25          **So if we were to establish that you, you**

**EXHIBIT G**

09/26/2022
Page 133

1   A.   Yeah, because my lease at the University

2   House, I think is what it was called, that old

3   apartment where ███████  ██████  lived, I think it

4   changed apartment names like 25 times.

5   Q.   Really?

6   A.   Yes.

7   Q.   So where --

8   A.   It's continually changing names, from what

9   I've gathered.

10   **Q.   And just for the record, that's the one**

11   **that's right there on Chimes?  Or what's the**

12   **address for that apartment?  It's by like where**

13   **Cane's -- or, well, I don't know.**

14   **Where was the apartment you were at**

15   **before?**

16   A.   It was right on campus.  She might know if

17   she can talk.  I don't know.

18   **Q.   It's fine.  It's fine.**

19   A.   She went to it.

20   **Q.   Where was Wildwood located?**

21   A.   I remember it was by a McDonald's.  It

22   wasn't as close to campus as University House was.

23   But I don't remember what road that was on either.

24   It's been a long time since I've been back.

25   **Q.   Okay.  So you come back to Baton Rouge**

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23    Page 25 of 37
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 25 of 37    09/26/2022

Page 153

1    see what you said," I guess is what he says.

2        And then you say in response, "I was

3    really surprised how supportive everyone was,

4    especially Ms. Sharon.  I would have thought they

5    would have tried to shut me down, but her and an

6    advocate were the ones who encouraged me to go to

7    the police and the advocate came with me."

8        A.  Yes.

9        Q.  Okay.  So again, at this point, I mean,

10    you're saying that you did -- you know,

11    that -- when you're saying "advocate," you're

12    meaning Miriam Segar, but you're saying that she

13    and Sharon were supportive, and that surprised

14    you?

15        A.  Correct.

16        Q.  So even in 2017, that was still your

17    recollection of the events?

18        A.  Yes.

19        Q.  Okay.

20        A.  I am still surprised that they were as

21    supportive as they were.

22        Q.  Okay.  And he seems to know who Miriam is.

23    If we continue on, you say, "Miriam was the

24    advocate."

25        "Oh, she loves me," he says.  "I've had

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 471-9    10/13/23  Page 26 of 37   09/26/2022
Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 26 of 37
Page 212

1  number 40.

2      A.  Okay.

3      Q.  So it's the last sentence of Response to

4  Request for Admission Number 4.  It says, "Brennan

5  was not aware of her rights under LSU Cares,

6  Title IX, or the Lighthouse."

7      A.  I don't know what any of those things

8  really are, so correct, I don't know my rights.

9      Q.  You've seen your police report, you've

10 obtained your police report at this point?

11     A.  Yes.

12     Q.  And before you produced these -- or

13 prepared these responses.  So you -- I mean, you

14 recall it's noted in the police report, in the

15 supplemental police report, that there was a

16 discussion of those rights, that you did not want

17 -- you wanted to remain anonymous as to LSU Cares,

18 Title IX, or the Lighthouse?

19     A.  I wanted to remain anonymous is accurate.

20     Q.  Okay.  Okay.  And do you not recall ever

21 doing -- responding to the discovery from the

22 Board of Supervisors?

23     A.  I would have to relook at it.

24     Q.  Do you also remember doing initial

25 disclosures in this case?

**EXHIBIT G**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ   Document 471-9   10/13/23   Page 27 of 37
Case 3:21-cv-00242-WBV-SDJ   Document 369-10 *SEALED* 07/10/23   Page 27 of 37

6:51

**Miriam**

iMessage
Jul 22, 2016, 3:16 PM

This is Miriam with Athletics

Jul 22, 2016, 4:29 PM



Delivered

No problem.. Let me know if need anything.

February 15th, 2017 at 9:07pm from ████ ██████ (former employee for LSU football, and the person that brought ████ and I back to our apartment complex the night of the incident.)



EXHIBIT G

PLAINTIFFS_00001205

# LSU Police Department
## Initial Report Form

### Case Number:
**20160722-007**

| **Begin Incident Date / Time:** | **End Incident Date / Time:** | **Date Reported:** | **Officer:** |
|---|---|---|---|
| 7/9/2016  10:30:00PM | 7/10/2016  2:00:00AM | 7/22/2016  5:23:44PM | Bodine, Andrew J U1727 |

**Address:**
Public Safety Building

**COMPLAINANT**          SAMANTHA L BRENNAN

**Offense:**
**LRS 14:283**          VIDEO VOYEURISM

---

**Narrative:**
20160722-007
Video Voyeurism
On July 22, 2016 at approximately 1830 hours, LSU PD Officers were dispatched to the Public Safety Building in reference to Video Voyeurism complaint. Officers arrived and met with the victim (LSU Student 19 year old female) who stated someone had taken a nude picture of her without consent. The incident took place between July 9 and July 10 of 2016. The case is pending further investigation.



(Initial Version)
Date Printed:
08/20/2020

Case Number: 20160722-007
Page 1 of 1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**EXHIBIT G**

# LSU POLICE DEPARTMENT

## INCIDENT REPORT

| INCIDENT NUMBER | | | | | LA0170400 |
|---|---|---|---|---|---|
| 20160722-007 | | | | | |

### ADMINISTRATIVE INFORMATION

| REPORT DATE | INCIDENT START DATE | DOW | INCIDENT END DATE | INCIDENT DESCRIPTION |
|---|---|---|---|---|
| 07/22/2016 5:23:44 PM | 07/09/2016 10:30:00 PM | 7 | 07/10/2016 2:00:00 AM | 57 - INVESTIGATION |

| LOCATION OF INCIDENT | OFFENSE TRACT | CASE STATUS |
|---|---|---|
| Public Safety Building BATON ROUGE LA | OFF CAMPUS | INACTIVE |

| EVIDENCE COLLECTED ☐ | WEATHER | TEMP | LIGHTING | EXCEPTIONAL CLEARANCE | EXC CL DATE |
|---|---|---|---|---|---|
| | | | | D VICTIM REFUSED TO | |

### OFFENSE INFORMATION

| STATUTE CODE | STATUTE DESCRIPTION | | | | | TYPE OF WEAPON USED | | |
|---|---|---|---|---|---|---|---|---|
| 14:283 | VIDEO VOYEURISM | | | | | | | |

| UNITS ENTERED | FORCED ENTRY ☐ | COMPUTER USE ☐ | ALCOHOL USE ☐ | DRUG USE ☐ | SECURITY TYPE | COUNTS 1 | COMPLETED ☑ | F/M F |
|---|---|---|---|---|---|---|---|---|

| LOCATION TYPE | BIAS MOTIVATION | CRIMINAL ACTIVITY |
|---|---|---|
| RESIDENCE/HOME | NONE | |

| STATUTE CODE | STATUTE DESCRIPTION | | | | | TYPE OF WEAPON USED | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| UNITS ENTERED | FORCED ENTRY ☐ | COMPUTER USE ☐ | ALCOHOL USE ☐ | DRUG USE ☐ | SECURITY TYPE | COUNTS | COMPLETED | F/M |
|---|---|---|---|---|---|---|---|---|

| LOCATION TYPE | BIAS MOTIVATION | CRIMINAL ACTIVITY |
|---|---|---|
| | | |

### VICTIM INFORMATION

| VIC# 1 | SAME AS COMPLAINANT ☑ | NAME (LAST, FIRST MIDDLE) BRENNAN SAMANTHA L | | HOME # | CELL # 763-222-9562 | WORK # |
|---|---|---|---|---|---|---|

| ADDRESS | EMAIL |
|---|---|
| - | |

| DOB 9█/1995 | AGE 20 | TO AGE | SEX F | RACE W | ETHNICITY | RESIDENT STATUS NON-RESIDENT | HEIGHT | WEIGHT 0 |
|---|---|---|---|---|---|---|---|---|

| EYE COLOR | HAIR COLOR | SSN ████ | OLN # ████ | OLN STATE LA |
|---|---|---|---|---|

| SCARS/MARKS/TATTOOS |
|---|

| EMPLOYER/SCHOOL LSU STUDENT | OCCUPATION STUDENT | ADDRESS |
|---|---|---|

| TYPE OF VICTIM PERSON/INDIVIDUAL (NOT A | AGGRAVATED ASSAULT CIRCUM | JUST HOM CIRCUM | STATEMENT ☐ | DOMESTIC ☐ |
|---|---|---|---|---|

| INJURY TYPE | | RELATIONSHIP TO OFFENDER 1-10 | | Offenses Involved 1-10 | |
|---|---|---|---|---|---|
| ☐ None | ☐ Unconscious | 1: AQ | 6: | 1: 90Z | 6: |
| ☐ Minor | ☐ Lacerations | 2: | 7: | 2: | 7: |
| ☐ Internal | ☐ Bones | 3: | 8: | 3: | 8: |
| ☐ Teeth | ☐ Other | 4: | 9: | 4: | 9: |
| | | 5: | 10: | 5: | 10: |

### COMPLAINANT INFORMATION

| NAME (LAST, FIRST MIDDLE) BRENNAN, SAMANTHA L | HOME # | CELL # 763-222-9562 | WORK # | STATEMENT ☐ |
|---|---|---|---|---|

| ADDRESS | EMAIL |
|---|---|
| ████ | |

| DOB █1995 | AGE 20 | SEX F | RACE W | ETHNICITY | RESIDENT STATUS NON-RESIDENT | OLN # ████ | OLN STATE LA |
|---|---|---|---|---|---|---|---|

### OFFICER INFORMATION

| REPORTING OFFICER Bodine, Andrew J J1727 | REVIEWING OFFICER METZGER, JEFFREY U0079 | APPROVING OFFICER |
|---|---|---|

08/20/2020 9:37:53 AM    Page 1 of 8

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# EXHIBIT G

INCIDENT NUMBER:
20160722-007

**LSU POLICE
DEPARTMENT**
**INCIDENT REPORT**
SUSPECTS INFORMATION

LA0170400

| SCARS, MARKS, TATTOOS | | FACIAL HAIR | TEETH | SPEECH/VOICE |
|---|---|---|---|---|
| CLOTHING | | | | |

| DOMINANT HAND | RESIDENTIAL STATUS RESIDENT | WEAPON TYPE |
|---|---|---|

| OFFENSES INVOLVED 1-10 | | | | |
|---|---|---|---|---|
| 90Z | 2 | 3 | 4 | 5 |
| | 7 | 8 | 9 | 10 |

| SUSPECT # | NAME (LAST, FIRST MIDDLE) | DOB | AGE | TO AGE |
|---|---|---|---|---|
| ADDRESS | | OLN # | | OLN STATE |

| HOME # | CELL # | WORK # | SSN | ETHNICITY | SEX | RACE | HEIGHT |
|---|---|---|---|---|---|---|---|

| WEIGHT | HAIR COLOR | HAIR STYLE | HAIR LENGTH | EYE COLOR | GLASSES ☐ | BUILD | COMPLEXION |
|---|---|---|---|---|---|---|---|

| SCARS, MARKS, TATTOOS | | FACIAL HAIR | TEETH | SPEECH/VOICE |
|---|---|---|---|---|
| CLOTHING | | | | |

| DOMINANT HAND | RESIDENTIAL STATUS | WEAPON TYPE |
|---|---|---|

| OFFENSES INVOLVED 1-10 | | | | |
|---|---|---|---|---|
| | 2 | 3 | 4 | 5 |
| | 7 | 8 | 9 | 10 |

08/20/2020 9:37:53 AM    Page 2    of 8

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    **EXHIBIT G**    PLAINTIFFS_000003

| INCIDENT NUMBER | LSU POLICE | LA0170400 |
|---|---|---|
| 20160722-007 | DEPARTMENT | |
| | INCIDENT REPORT | |
| | NARRATIVE | |

| NARRATIVE | | JUVENILE |
|---|---|---|

NARRATIVE TITLE:  Narrative From CAD

NARRATIVE:
Complaint Type: 57 - INVESTIGATION
Caller Name:
Officer ID: U-1727, Officer Name: BODINE, ANDREW

[7/22/2016 5:24:01 PM . pos1 : babinc]
Cross streets: NICHOLSON DR//S CAMPUS DR
Landmark: PUBLIC SAFETY
Place Comment: UNIVERSITY PUBLIC SAFETY BLDG
Landmark Comment: 211 S STADIUM RD

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    EXHIBIT G    PLAINTIFFS_000004

| INCIDENT NUMBER: 20160722-007 | LSU POLICE DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | LA0170400 |

| NARRATIVE | | ☐ JUVENILE |

NARRATIVE TITLE:    SUMMARY

NARRATIVE:
**20160722-007**
Video Voyeurism
On July 22, 2016 at approximately 1830 hours, LSU PD Officers were dispatched to the Public Safety Building in reference to
Video Voyeurism complaint.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    PLAINTIFFS_000005

**EXHIBIT G**

| INCIDENT NUMBER: 20160722-007 | LSU POLICE DEPARTMENT INCIDENT REPORT NARRATIVE | ORI# LA0170400 |
|---|---|---|

| NARRATIVE | | ☐ JUVENILE |
|---|---|---|

NARRATIVE TITLE:    DETAILS

NARRATIVE:
20160722-007
Video Voyeurism
On July 22, 2016 at approximately 1830 hours, LSU PD Officers were dispatched to the Public Safety Building in reference to Video Voyeurism complaint. Officers arrived and met with the victim (LSU Student 19 year old female) who stated someone had taken a nude picture of her without consent. The incident took place between July 9 and July 10 of 2016  The case is pending further investigation.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    PLAINTIFFS_000006

**EXHIBIT G**

Case 3:21-cv-00242-WBV-SDJ    Document 369-10 *SEALED* 07/10/23    Page 34 of 37

| INCIDENT NUMBER: 20160722-007 | LSU POLICE DEPARTMENT INCIDENT REPORT NARRATIVE | | LA0170400 |
|---|---|---|---|
| | NARRATIVE | | ☐ JUVENILE |

NARRATIVE TITLE:  SUPPLEMENT

NARRATIVE:
20160722-007
Video Voyeurism
On July 22, 2016 at approximately 1830 hours, I Sgt. Bodine responded to the Public Safety Building in reference to a complaint about video voyeurism. Upon arrival, I met and spoke with Samantha L Brennan (LSU Student W/F DOB ███ 1995 PH 763-222-9562 University House Apt 5009) who stated a coworker saw a nude picture of her that was being passed around. Brennan stated today (July 22, 2016), she arrived to work at Football Operations and was approached by several friends saying they heard a nude picture of her was floating around. Brennan further stated that none of the friends who approached her actually saw the image, they were only told about it. Brennan then advised that there was only one incident recently where the picture could have been taken.
Brennan stated on Saturday July 9, 2016, that she and a friend went out for the evening in Tigerland. She said she first went to Fred's in Tigerland before going to Bogies. While out, Brennan said she only had 2 drinks and 2 shots during the night. While at Bogies, Brennan said the friend she went with left. After her friend left, Brennan advised she saw her friend ███ who works at football operations with her. When asked, Brennan did not know ███'s last name, only that he works in the equipment section. Brennan next advised that ███ had bought her a shot from what she remembers. While hanging out with ███ Brennan advised that ███ ███ (I ███ approached them and started to hang out. Brennan said from what she remembers, she was to intoxicated to drive home so ███ and ███ decided they would driver her and her vehicle back to her apartment.
After leaving Bogies to go to the apartment, Brennan advised that ███ drover her vehicle with her back to University House while ███ followed. Once back at University House, ███ brought ███ back home however Brennan stated she was unsure if she was left in the vehicle or her apartment. At this point, Brennan stated it started to get blurry.
Brennan advised that she believes ███ and her "fooled" around in her apartment especially on the couch. I did not question Brennan to the extent of her encounter but she did advise she does not fully recall what happened.
Brennan said on Sunday July 10, 2016 she woke up in her apartment naked. Brennan did not recall fully what happened the night before but she did not feel as if she was assaulted. Brennan did state that she found ███ wallet in between her couch cushion. At some point during the day on July 10, Brennan stated ███ contacted her to retrieve his wallet from her apartment. Brennan stated that the picture that was being passed around was of her naked standing in a doorway inside of her apartment. Brennan further stated that she did not see the picture so is not fully sure if it is even her however this was the only incident that she could think of where the picture could have been taken.
Brennan advised she was not sure if she wanted to pursue criminal charges at this time and would like to think about it. Detective Melchior was notified of the case. Sexual Violence Confidentiality Waiver was signed and attached to this report. Video footage of the interview was also requested to be burned and dropped into evidence.
Nothing further at this time
Sgt. A Bodine
LSU PD Patrol Division

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**EXHIBIT G**

PLAINTIFFS_000007

Case 3:21-cv-00242-WBV-SDJ    Document 369 *SEALED* 07/10/23    Page 35 of 37

20160722-007

**DEPARTMENT**
**INCIDENT REPORT**
**NARRATIVE**

LA0170400

| NARRATIVE | ☐ JUVENILE |
|---|---|

NARRATIVE TITLE:   Supplement #2 added by Det. J. Melchior

NARRATIVE:
Supplement #2 added by Det. J. Melchior

20160722-007
Video Voyeurism

I, Detective Jeffery C. Melchior of the LSU Police Department, made contact today with Ms. Brennan to follow up with her in reference to this case. During the contact, Ms. Brennan and I talked briefly about the case, as she was preparing to return home. While speaking with Ms. Brennan, I learned that she still wished to not pursue charges against the accused and also wished to remain anonymous as it relates to LSU CARE, Title IX, Lighthouse, etc ..

Ms. Brennan advised that after returning home, she planned to reflect on everything and advised that if she decided to pursue charges or seek help that she would notify me directly. I ensured that she had all of my contact information and reiterated to her that LSUPD and the University was here for her.

Nothing further at this time
Det. Jeffery C. Melchior
LSUPD- Detective Division

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**EXHIBIT G**

PLAINTIFFS_000008

20160722-007

**DEPARTMENT**
**INCIDENT REPORT**
NARRATIVE

LA0170400

| | NARRATIVE | | ☐ JUVENILE |
| --- | --- | --- | --- |

NARRATIVE TITLE:    SUPPLEMENT

NARRATIVE:
Sgt. A. Bodine requested video of an interview at LSUPD on 7/22/16 in reference to case 20160722-007 I, Sgt. R. Buckland copied video to DVD and submitted into evidence on 7/27/2016.
No Further RB

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**EXHIBIT G**

PLAINTIFFS_000009

# LSU
# Sexual Violence Confidentiality
# Notice and Waiver

| Law Enforcement | Case Number 20160722-007 |
|---|---|

As per Louisiana Revised Statute 46:1844, basic rights for victim and witness, this law enforcement agency shall NOT publicly disclose the name, address, or identity of crime victims.

The confidentiality of the identity of the victim of a sex offense may be waived by the victim.

Louisiana State University is committed to providing nonjudgmental and appropriate support services for all sexual assault survivors.

To assist you with accessing services and support, you can waive the confidentiality clause outlined above

*Please indicate your authorization by checking the options below that apply.*

☐ I authorize law enforcement to investigate this matter and pursue criminal charges

☐ I authorize law enforcement to share detailed case information with the Office of the Dean of Students. The Office will contact me to discuss interim remedies/measures for my safety and the University's Title IX/accountability process and to facilitate a referral to the LSU CARE Team who can offer support resources. While efforts will be made to keep information private, confidentiality is not guaranteed

**CONFIDENTIAL**

☐ I authorize law enforcement to share detailed case information with a Lighthouse Advocate, who can provide guidance and support. Some of the available resources include medical care and evidence collection, mental health counseling, academic accommodations, and housing relocation. Information about my case is **confidential** and will only be shared among select staff at the University on a need-to-know basis.

☐ I authorize a Lighthouse Advocate to contact me at the phone number or email address listed below to follow up with me about my case. The Advocate will respect my privacy by leaving only their name and phone number when attempting to contact me, unless given other instructions by me to provide more detailed messages. (See request below.)

Name: Samantha Brennan

Phone Number: 763-222-9562

Email Address: Samantha.brennan14@gmail.com

Request: _____

Signature _____                    Date 7-22-16

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# EXHIBIT G

PLAINTIFFS_000010