# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                           CIVIL ACTION NO.  3:21-CV-00242

VERSUS                                       JUDGE WENDY B. VITTER

LOUISIANA STATE UNIVERSITY, ET               MAGISTRATE JUDGE JOHNSON
AL.

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 3: CALISE RICHARDSON

NOW INTO COURT, through undersigned counsel, comes defendant the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board" or "LSU"), and submits this memorandum in support of its Motion for Summary Judgment.[1] Plaintiff Calise Richardson ("Richardson") asserts claims of physical violence by John Coe and "attempted rape" by John Doe in 2016.  Following this Court's ruling on the Board's Rule 12(b)(6) motion to dismiss, Richardson's only remaining claim is for Title IX heightened risk (pre-assault violation).  This claim fails as a matter of law for the reasons below.

## I.      FACTUAL BACKGROUND

Calise Richardson enrolled at LSU in 2014. (Richardson 24)[2]  She alleges different types of assault by two male students, Coe and Doe, respectively.[3]

### a.  John Coe.

---

[1] The Board accepts Plaintiff's facts as true for purposes of this motion and memorandum only.

[2] Relevant portions of the deposition transcripts and exhibits of Plaintiff, Sharon Lewis, Keava Soil-Cormier, Jeffrey Scott, Abby Owens, Ashlyn Mize, Samantha Brennan, 30(b)(6) of the Board, and Miriam Segar are attached to the Board's motion as Exhibits A through I, respectively.  The declarations of Segar and Jonathan Sanders are also attached to the Board's motion as Exhibits J and K, respectively.  Citations to the depositions will be by the last name of the deponent and the page or exhibit number.  Deposition transcripts with more than one volume will include a Roman numeral to identify the cited volume.  Citations to the declarations will be by the witness's last name and paragraph or exhibit number.

[3] Although Richardson's Complaint references a 2015 alleged rape, the Board understands that these allegations are merely background and not part of Richardson's claims, since such allegations are clearly prescribed, and Richardson admits that she never reported the alleged rape.  (R. Doc. 182, ¶¶ 126, 130-131)  To the extent her claims include the 2015 alleged rape, the Board reserves the right to submit additional briefing on this issue.

PD.41628103.2

In Fall 2016, Richardson says she began dating Coe "for a few months." (Richardson 163-164) Coe lived in her apartment complex. (Richardson 89, 185) At the time, she believed she was in a healthy relationship with him, even though she said he was physically abusive to her and cheated on her. (Richardson 166, 169-171) Their dating relationship ended after an incident at JL's bar (an **off-campus** bar) (the "JL's Incident") in the fall of 2016. (Richardson 164, 166) At the bar, Richardson observed Coe kissing another woman and became angry. (Richardson 178-179) Coe approached her and tried to touch and/or kiss her. (Richardson 179, 182; (Richardson II 29) Richardson "swiped him off" and told Coe to leave her alone. (Richardson 179, 182) She said Coe pushed her, and fell to the ground. (Richardson 179, 267) Richardson yelled profanities at Coe, and Coe yelled profanities at Richardson. (Richardson 180, 183) Richardson threw a drink at Coe. (Richardson 179)

While Richardson describes Coe as the aggressor that evening, Coe reported to his position coach that Richardson had been aggressive toward him. (Richardson 187; Richardson II 80; S. Lewis 163-164; Soil-Cormier 40-41)[4] As a result, Coe's coach informed Sharon Lewis, Associate Athletic Director, of the situation and asked Lewis to fire Richardson. (Richardson 187; S. Lewis 163-164) Lewis did not do so. (Richardson 189) Instead, Lewis called Richardson to her office with Keava Soil-Cormier, Football Recruiting Analyst, to find out what happened. (Richardson 187-188) Richardson acknowledges that she may have laughed when telling them the story of what happened. (Richardson II 30) Lewis confirmed that Richardson laughed about throwing the drink, and neither Lewis nor Soil-Cormier perceived that Richardson was reporting physical abuse by Coe. (S. Lewis 161, 171-172; Soil-Cormier 119)[5]

---

[4] Others reported to Lewis that Richardson was the aggressor in the situation and that they had difficulty keeping Richardson in the car because she wanted to return to fight with Coe. (S. Lewis 166, 195)
[5] Richardson alleges that Soil-Cormier laughed at her when Richardson said she was scared of Coe, which Soil-Cormier denies, but which issue is immaterial to this motion. (Richardson 137; Soil-Cormier 118)

2

In her discussion with Richardson, Lewis asked whether Richardson wanted to file a police report about the JL's Incident. (Richardson 192, 194; Richardson II 74)  Lewis also said, "Whatever punishment you see fit, that's what we will do."  (Richardson 192-193; Richardson II 74)  Although Richardson cannot recall exactly what was said in the meeting, she believes Lewis said Richardson could report it to the police if she wanted to ruin Coe's life.  (Richardson 192)  Lewis and Soil-Cormier both deny any such comment about ruining Coe's life, but Lewis agrees she offered to take Richardson to the police.[6] (S. Lewis 169-170, 173, 250; Soil-Cormier 119)  Richardson never filed criminal charges against Coe because she said she was "in love" with him and wanted to protect Coe.  (Richardson 173, 193)[7]  Richardson and Coe ceased their "dating" relationship after the JL's incident in Fall 2016. (Richardson 164, 166; Richardson II 41)[8]

After the JL's Incident, Richardson experienced **no other physical altercations** by Coe:

> Q:  But I think you said after, after that incident, you-all would hook up from time to time, but I think you said he didn't physically harm you in any way after that; is that correct?
>
> A:  That is correct.

(Richardson II 14)  Richardson left to study abroad for the Spring semester of 2017, and when she returned, she restarted sexual conduct with Coe.  (Richardson 154-155, 186; Richardson II 15)  Their sexual relationship was on and off. (Richardson 163-164)  Coe did not physically coerce Richardson to have sex with him.  (Richardson Vol. 2 p. 20)  Despite their periodic sexual encounters, they never became "exclusive" again, and Richardson continued to see other people while sometimes having sex with Coe.  (Richardson 164-166)  She said this continued until

---

[6] For this motion **only**, the Board will accept Richardson's account.
[7] Plaintiff said she also told Dr. Poole, a campus counselor, about the incident, but she told Dr. Poole that she wanted it to remain confidential.  (Richardson 196)  Importantly, Richardson's alleged confidential medical disclosure would be exempted from PM-73's reporting requirement.  (Sanders Decl., ¶ 4, Exh. 1)
[8] Richardson already knew before the JL's incident that Coe was cheating on her with other women, but she officially ended any commitment to Coe after the JL's Incident.  (Richardson 169-170; Richardson II 41)

3

Coe's arrest in 2018.  (Richardson 164; Exh. 32)  In fact, she had made plans to have sex with

Coe on the evening he was arrested.  (Richardson 207-208)

When Richardson engaged in sex with Coe, she knew he was dating Jade Lewis.

(Richardson 177)  Richardson said she had "inklings" that Coe was harming Lewis, but

Richardson never reported Coe and never said anything to Lewis about Coe.  (Richardson 174,

177)  Only after Lewis brought criminal charges against Coe (two years later) did Richardson

report Coe's conduct to LSU's Title IX office.  (Richardson 212-214)

At least a year after the JL's Incident, as part of her counseling, Richardson became

angry about how Sharon Lewis handled the meeting with Richardson about that incident.

(Richardson 203-205)  During counseling at the LSU Health Center, Richardson decided she

wanted to hold Sharon Lewis accountable for her response to the JL's Incident.  (Richardson

203-205)  However, Richardson waited until after Coe was arrested twice in 2018 (for his

conduct toward Jade Lewis) to report her own experience with Coe to the Title IX office.

(Richardson 208, 212-214; Richardson Exh. 24)  Richardson went to Title IX because she said

she was "walking around with the guilt that . . . I didn't report it. . . ."  (Richardson 212-213)

Richardson felt it was partly "[Richardson's] fault that Jade got abused."  (Richardson 212-213)

Richardson was upset with Sharon Lewis because she said Lewis "knew and did nothing."

(Richardson 221)  Therefore, she filed her Title IX report in Fall 2018, claiming Sharon Lewis

failed to take action after the JL's Incident in 2016.  (Richardson 213, 221-222)

The Title IX office conducted an investigation. (Richardson 270-271, Richardson Exh.

24)  It also offered Richardson counseling services, but Richardson said she was already

attending counseling through LSU.  (Richardson 216)  Title IX advised Richardson of the

Lighthouse Program, but she did not utilize that resource.  (Richardson 253)  The Title IX office

also offered academic accommodations, which she accepted. (Richardson 216) Investigator Scott with Title IX interviewed Richardson two days later regarding her report of Sharon Lewis's alleged failure to report Richardson's 2016 complaint about Coe. (Richardson 256, 271-272; Richardson Exhs. 19, 24-25) In less than 60 days, Scott completed his investigation and concluded that Sharon Lewis should have reported the JL's Incident to Title IX.[9] (Richardson 271, Richardson Exh. 24; Scott 48-49)

Plaintiff had no classes with Coe after the JL's incident, and she never spoke with Coe again after her Title IX report. (Richardson II 16, Richardson 208-209)

**b. John Doe.**

Richardson claims attempted rape by Doe in December 2016. (R. Doc. 182, ¶¶ 187-188) Richardson became friends with Doe during her junior year at LSU. (Richardson 86-87) They both lived at the same off-campus apartment complex. (Richardson 89) (Coe, Owens, Brennan, and Mize also lived in the same apartment complex. (Richardson 89; Owens 14-15; Brennan 133; Mize 15-16)) In December 2016, Doe was kicked out of his apartment, and Richardson let him "crash" at her apartment. (Richardson 90-91) Richardson allowed Doe to stay in her bed with her, which she had done a couple of times before. (Richardson 94) The next day, they were hanging out in her room and started to "play fight," which she said was normal for them. (Richardson 91) They began kissing and then Doe pulled her pants down and his own pants down enough that "their genitals were exposed" and tried to "insert himself." (Richardson 91-92) Richardson told him to "stop or something like that," and Doe did not listen right away. (Richardson 91) She then yelled at him to stop again, and he stopped. (Richardson 91-93) He got angry at her for stopping him. (Richardson 91-92) They both yelled at each other, then she

---

[9] Even if Sharon Lewis failed to understand in this one instance that Richardson was making allegations of physical abuse, Sharon Lewis demonstrated her willingness to report concerns that she perceived as sexual misconduct in other instances, such as in her prompt reporting to Segar of Samantha Brennan's complaint. (S. Lewis 249)

asked him to leave, and he left.  (Richardson 92-93)  Richardson does not recall the specifics of what she was yelling, but she thinks she tried to explain that she cared about him as a person and friend but did not want to "cross that line in [their] friendship."  (Richardson 93)  She does not "recall specifics" but thinks Doe said "something along the line" of "you dumb bitch, I'm going to ruin your life." (Richardson 93)  This occurred during the day in December 2016, while both Richardson and Doe were sober, and with no witnesses.  (Richardson 92, 99)  Richardson told her friend that she felt Doe got his feelings hurt because she rejected him. (Richardson II 24)

The next day, Richardson says she told her supervisor, Keava Soil-Cormier, that Doe "tried to have sex" and that Richardson did not want to have sex. (R. Doc. 182, ¶ 191; Richardson 96; Soil-Cormier 115-117)  She said Doe got angry and said he was going to try to get Richardson fired and was "going to tell everybody about the real me."  (Richardson 96) Richardson told Soil-Cormier that Richardson was sharing what happened with Soil-Cormier because Richardson "was scared to get in trouble and didn't want [Doe] to get [Richardson] fired."  (Richardson 96-97, 100)  Richardson was not asking Soil-Cormier to do anything. (Richardson 97)  Soil-Cormier only recalls Richardson telling her that Doe and Richardson were "messing around" and that "somewhere in-between she wanted it to stop and then it stopped." (Soil-Cormier 115-116)  Richardson told her that Doe was angry and left.  (Soil-Cormier 116)

Richardson did not report the incident with Doe to anyone else.  (Richardson 101)  She did not want to file a police report because she believed that "in Baton Rouge, Louisiana, at LSU, [Doe] was gold to everyone. And so I felt like I knew nothing was going to happen . . . ." (Richardson 101-102) Plaintiff had no classes with Doe after the incident.  (Richardson II 16)

Although Richardson went to the Title IX office in Fall 2018 (nearly two years later) to complain about Sharon Lewis not reporting the JL's Incident with Coe in Fall 2016, Richardson

did **not** report anything about Doe's alleged conduct in December 2016. (Richardson 101-102)

Nor did she report that Soil-Cormier allegedly failed to report Doe's conduct to Title IX. (Richardson 101-102)

## II.    STANDARD OF REVIEW

The Board adopts by reference the Standard of Review discussion set forth in Section II of Summary Judgment No. 1, which is adopted herein by reference.

## III.    RICHARDSON'S REMAINING HEIGHTENED RISK CLAIM FAILS AS A MATTER OF LAW.

### A.    <u>Richardson Fails to Meet the Elements of a Heightened Risk Claim.</u>

Richardson's "heightened risk" claim fails. *See* discussion in Section III.C. of Summary Judgment No. 1, adopted herein by reference.

Under a pre-assault Title IX heightened risk theory, a plaintiff must prove: (1) the defendant had actual knowledge of a substantial risk that sexual abuse would occur; (2) the harasser was under the defendant's control; (3) the harassment was based on the victim's sex; (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit; and (5) the defendant was deliberately indifferent to the harassment.[10]  Richardson fails to prove her essential elements.

#### a.    Element One: Richardson Cannot Establish Actual Knowledge.

Richardson fails the first element because she cannot show that an appropriate person had knowledge that she faced a substantial risk of sexual harassment. "[P]laintiffs seeking to prove actual knowledge must clear a high bar."[11]  "[A]ctual knowledge [ ] means that the school must have actual, not constructive, knowledge of sexual harassment."[12]  In a case like this one, where

---

[10] *Roe v. Cypress-Fairbanks*, 53 F.4th 334, 341 (5th Cir. 2022) (internal citations omitted); R. Doc. 340, pp.38-39.
[11] *Kelly v. Allen Indep. Sch. Dist.*, 602 F.App'x 949, 953 n.3 (5th Cir. 2015).
[12] *Roe*, 53 F.4th at 341.

"pre-assault" behavior is at issue, a school must have knowledge "that there is a substantial risk that sexual abuse would occur."[13] "[L]iability requires that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference.'"[14] A school can escape liability if it can show (1) "that it did not know of the underlying facts indicating a sufficiently substantial danger and that it was therefore unaware of a danger," or (2) "that it knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."[15]

**Coe.** With respect to Coe, Richardson was the **first** plaintiff to assert allegations against Coe. (R. Doc. 182, ¶¶ 152-156) Richardson can offer no **prior** reports to LSU of similar behavior by Coe. (Board 30(b)(6) 47) Thus, she cannot show any "substantial risk" which LSU or its employees were aware of and should have acted on before Richardson's physical encounter with Coe.

**Doe.** Plaintiffs Mize and Brennan are the only plaintiffs whom LSU knew may have experienced sexual misconduct by Doe prior to Richardson's alleged "attempted rape" by Doe. The Board adopts by reference the discussion set forth in Section III.A.a of Summary Judgment No. 2. As set forth in the Board's memorandum related to Brennan, LSU did not have actual knowledge of a substantial risk arising out of Mize's assault because Mize never provided any underlying facts to LSU. (Mize 116-120 124, 133-134; Mize Exh. 3) While Brennan reported her incident to Segar and LSUPD, Brennan was unwilling to participate in a Title IX investigation or to press criminal charges. (Brennan 74; Brennan Exh. 6) Brennan also alleged

---

[13] *Id.* (internal quotations omitted) (quoting *M.E. v. Alvin Indep. Sch. Dist.*, 840 F.App'x 773, 775 (5th Cir. 2020)).
[14] *Id.* (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 659 (5th Cir. 1997); *see Pierce v. Houston*, 2022 WL 2659027, *7 (S.D. Tex. 2022) (finding no actual knowledge where plaintiff testified that when she visited the Dean's office, she did not communicate her concerns to the Dean or anyone else in the office and she told receptionist that she had a "urgent, personal, sensitive matter" to address with the Dean, but never told her that she wanted to see the Dean because her advisor had sexually harassed her).
[15] *Rosa H.*, F.3d at 659 (citations and internal brackets omitted); *Kelly*, 602 F.App'x at 953, n.3 (applying standard to student-on-student harassment).

8

no sexual assault by Doe. Rather, Brennan accused Doe of taking a nude picture of her standing up, so her claim was entirely different from the third-hand story of Mize's alleged rape. (R. Doc. 182, ¶ 297) No evidence exists to conclude that Doe taking a naked photo of someone standing up would have given LSU actual knowledge of a "substantial risk" that he would go on to try to have sex with Richardson while both were sober and "fooling around."[16] The knowledge requirement cannot be satisfied by showing the school "should have known" there was a substantial risk of abuse.[17] Further, the actual knowledge of a substantial risk must be with respect to sexual misconduct or abuse; other unrelated conduct (such as Brennan's photo) is insufficient.[18]

> **b. Element Two: Neither Doe nor Coe Were Under the Board's Control in This Context.**

The Board adopts by reference Section II.C.b in Summary Judgement No. 1. Richardson's alleged incidents with Coe and Doe occurred at an off-campus bar and at her off-campus apartment, respectively. (R. Doc. 182, ¶¶ 152-155, 184, 187) Courts in other circuits have consistently held that student-on-student sexual harassment that occurs off campus is not "'under the control' of the university," unless it is at an off-campus facility that the university controls.[19] Although a school may exercise substantial disciplinary control over a student beyond the campus boundaries, it does not follow that the school exercises substantial control over

---

[16] Incidentally, Plaintiff Jade Lewis testified that she flew to Houston to meet Doe and had consensual sex with him. (Lewis 48, 53-54) This merely demonstrates that Doe was not always improper and drawing a conclusion at this time about his guilt based on an unsubstantiated story and a photo was premature.

[17] *M.E.*, 840 F.Appx. at 775.

[18] *Doe v. Edgewood*, 964 F.3d 351, 364 (5th Cir. 2020).

[19] *Roe v. St. Louis Univ.*, 746 F.3d 874, 884 (8th Cir. 2014) (no control over rape which occurred during a private party at an off-campus apartment); *Garrett v. Univ. of South Fla. Board of Trustees*, 824 F. App'x 959-960, 965 (11th Cir. 2020) (no control over sexual assault occurring at off-campus apartment); *Samuelson v. Oregon St. Univ.*, 725 F.App'x 598, 599 (9th Cir. 2018) (no control where rape occurred at an off-campus party); *Doe v. Univ. of Miss.*, 2022 WL 4043458, a*15 (W.D. Mo. Aug. 30, 2022) (where almost all interactions occurred off campus, no control over harassment, even where school had very close disciplinary control over the student athlete at issue); *But see Wreckhorst v. Kansas State Univ.*, 241 F. Supp. 3d 1154, 1167-68 (D. Kan. 2017) (control existed over off-campus fraternity house); *Simpson v. Univ. of Co. Boulder*, 500 F.3d 1170, 1177 (10th Cir. 2007) (control existed over recruiting activities off campus).

conduct occurring in a private, off-campus apartment complex, where students happen to live, or at an off-campus bar.[20]   Richardson cannot show the Board exercised substantial control over Coe or Doe in the context of off-campus conduct that was not affiliated with LSU.

### c. Element Four, Part I: The Alleged Conduct was not Severe, Pervasive and Objectively Offensive.

Under Title IX, institutions have an obligation to respond to harassment that is severe, pervasive, and objectively offensive within their education program and activity.[21]   The record does not support that the single incident of Coe pushing Richardson at JL's was severe, pervasive, and objectively offensive.[22]   Moreover, dating violence was not definitively covered by Title IX in 2016, particularly when it occurred outside of the school's control.[23]

With respect to the "attempted rape" by Doe, the Board does not intend to minimize the seriousness of an alleged attempted sexual assault, but the single incident alleged by Richardson does not meet the Title IX standard for being "severe, pervasive, and objectively offensive" harassment.  Title IX cases "are based on unwelcome sexual advances so severe and pervasive as

---

[20] In *Doe v. Board of Supervisors of the Univ. of La. Sys.*, 2023 WL 143171, at *12 (M.D.La. Jan. 10, 2023), the court was "not persuaded" by the "one case" cited by the defendant to show that off-campus student-on-student sexual assault is not actionable under Title IX. *Id*. at *10. Here, though, the Board submits more robust authorities showing that off-campus activity is not covered under Title IX in this context.  In addition, the *Doe* case involved different facts.  There, the court focused on the fact that the plaintiff initially met the perpetrator for study sessions in the library on campus, which locations were only available because the assailant was an LSU student.  *Id*.  Here, Richardson met the alleged perpetrator at her off-campus apartment complex where both Richardson and Doe lived.
[21] *Davis Next Friend Lashonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 633 (1999).
[22] *See GP by and through JP v. Lee Cnty. Sch. Bd.*, 737 F.App'x 910, 914 (11th Cir. 2018) (holding single battery "was unlikely to have the systemic effect of depriving [plaintiff] of an educational benefit"); *Nation v. Piedmont Indep. Sch. Dist.*, 2019 WL 4452953, at *10 (W.D. Okla. Sept. 17, 2019) (single instance where teacher punched student in genitals and referred to size of genitals was insufficient to establish severe and pervasive requirement).
[23] *See* United States Dep't of Educ., Office for Civil Rights, *Questions and Answers on the Title IX Regulations on Sexual Harassment* (July 2021) (Updated June 28, 2022), https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf (noting that the 2020 amendments define sexual harassment to include dating violence and domestic violence).  Title IX provides no remedy for interpersonal violence between students that is not based on sex, and incidents "motivated by other reasons, such as personal animus or jealousy" will not result in a Title IX violation. *See Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1124-1125 (N.D. Cal. 2013). The Fifth Circuit has made clear that incidents of "personal animus" are insufficient to show actionable sexual harassment. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (affirming summary judgment against a Title IX plaintiff because there was "nothing in the record to suggest that [the perpetrator] was motivated by anything other than personal animus"). Indeed, LSU's policy distinguishes between domestic violence that can trigger a Title IX violation and other domestic violence. (*See* Sanders Decl., ¶ 4, Exh. 1)

PD.41628103.2

to interfere with a student's educational atmosphere and opportunities."[24] The Supreme Court has made clear that the initial single incident is not sufficient to result in liability under Title IX.[25] The Supreme Court expressly required that the harassment be pervasive to avoid imposing liability for a "single instance," even if that single instance is severe. "A 'single instance of sufficiently severe one-on-one peer harassment' cannot have such a systemic effect [of denying equal access to an education] in light of 'the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment.'"[26] The Fifth Circuit has stated that only those claims involving "pervasive" and "widespread" conduct with the "systemic effect of denying the victim equal access to an educational program or activity" are actionable, finding that sexual harassment cannot be based on a single incident.[27]

Here, Richardson cannot establish conduct that is objectively severe or offensive. Doe had been sleeping with Richardson in her bed, which he had done before. (Richardson 94) They were kissing when Doe attempted to advance the interaction to sexual intercourse by pulling down their pants. (Richardson 91) Richardson told Doe to stop, and no sexual intercourse occurred. (Richardson 91-93) While Richardson subjectively characterized this event as "attempted rape," the context does not necessarily lead to that conclusion as opposed to it being two individuals exploring but stopping short of sexual intercourse. Indeed, in Richardson's text message to Doe after the event, she said "This isn't even a big deal." (Richardson 20-21; Richardson Exh. 33) To a friend, Richardson characterized what happened as Doe getting his feelings hurt because she told him no. (Richardson II 24, 26) Richardson cannot show that the conduct was **objectively** offensive and sufficiently severe.

---

[24] *Lewis v. La. St. Univ.*, 2021 WL 5752239, at *19 (M.D. La. Dec. 2, 2021).

[25] *Davis*, 526 U.S. at 652-653.

[26] *Id.*

[27] *Carmichael v. Galbraith*, 574 F. App'x 286, 289-290 (5th Cir. 2014) (citing *Davis*, 526 U.S. at 652-654).

PD.41628103.2

### d. Element Five: Plaintiff Cannot Meet her High Burden of Showing Deliberate Indifference That Caused Harassment.

#### i. No Deliberate Indifference.

Plaintiff also cannot show that the Board was deliberately indifferent to prior sexual misconduct by Coe or Doe. As this Court acknowledged, "deliberate indifference in the Title IX context is a 'high bar' and requires the defendant's response to be 'clearly unreasonable in light of the known circumstances.'"[28] "This standard is high in order to ensure institutions are liable for their own official decisions and not for their students' independent actions.[29] The institution's conduct "must amount to an intentional choice, not merely an unintentionally negligent oversight."[30] Fifth Circuit precedent establishes that "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference," and neither do negligent delays, botched investigations of complaints, or responses that could have been improved.[31]

**Coe.** Richardson, as the first plaintiff who was allegedly victimized by Coe, fails to meet her high burden of showing **prior** deliberate indifference to reports of dating violence committed by Coe. Her alleged assault by Coe pre-dated Plaintiff Jade Lewis' alleged assault by Coe. (R. Doc. 182, *compare* ¶¶ 152-155 *with* ¶¶ 456-457, 462) Only pre-assault information is relevant to Richardson's heightened risk claim.[32] Therefore, whether Sharon Lewis' **post-assault** response was deficient is irrelevant to Richardson's claim. Notably, Richardson experienced no further assault by Coe after she reported to Sharon Lewis. (Richardson II 14)

---

[28] R. Doc. 340, p. 28 (quoting *Roe v. Cypress-Fairbanks*, 53 F.4th 334, 341 (5th Cir. 2022)) (quoting *Sanches*, 647 F.3d at 167).

[29] *Davis*, 526 U.S. at 643 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290-91, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998)).

[30] *James v. Harris Cnty.*, 577 F.3d 612, 617–18 (5th Cir. 2009) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)); *see Ramos v. Webb Consol. Indep. Sch. Dist.*, 724 F. App'x 338, 340 (5th Cir. 2018) (applying same in Title IX context).

[31] *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (internal citations omitted).

[32] *See* R. Doc. 340, pp. 35-41 (discussing pre-assault heightened risk claim).

PD.41628103.2

**Doe.**    Richardson argues the Board was deliberately indifferent to prior sexual misconduct by Doe, citing LSU's "knowledge" relating to Mize and Brennan.  For the reasons above and in Summary Judgments Nos. 1 and 2, which are adopted herein, her claim fails.

The Board was also not deliberately indifferent to Brennan's allegations regarding the nude photo.  As soon as Brennan reported the photo to her Sharon Lewis, Lewis promptly reported the situation to Miriam Segar, Senior Associate Athletic Director.  (S. Lewis 249; Segar 242)  Segar and Lewis then met with Brennan the same day. (Segar 242)  Brennan said that in the meeting, she "expected . . . to be shut down" because she believed LSU wouldn't want "this to get out." (Brennan 63-64)  However, Brennan acknowledged that her expectation was wrong. (Brennan 65, 68-69) She found Segar to be "supportive." (Brennan 65)

Segar perceived that Brennan wanted Segar to speak with Doe and make him delete the picture from his phone.  (Segar 242-243)  However, Segar was concerned about compromising evidence of his wrongdoing if she went to Doe herself. (Segar 243) Segar said she had no authority to confiscate Doe's personal phone and no ability to verify whether Doe might have deleted the photo.  *Id.*  Therefore, Segar strongly urged Brennan to report the matter to the police who could conduct a forensic examination of Doe's phone and preserve evidence. (Segar 243)

Once Brennan agreed to meet with the LSU police ("LSUPD"), Segar accompanied Brennan to the police department to make the report.  (Brennan 66)  At the LSUPD, Brennan said she was again "very surprised" that the LSUPD was supportive and did not attempt to shut down her report. (Brennan 65-66)  As Segar expected, the LSUPD talked to Brennan about Title IX and asked Brennan whether she wanted to file a report with the Title IX office, which Brennan declined. (Brennan 89, 96, 212; Brennan Exh. 6)  The police interviewed Brennan, who indicated she had not yet seen the picture and could not say for sure that it was of Brennan.

(Brennan 87, 98-99; Brennan Exh. 6)  The police created a report that became part of the police records. (Brennan 74; Brennan Exh. 6)  The police also gave Brennan a Sexual Violence Confidentiality Notice and Waiver, which allowed her the option to waive confidentiality and allow the police to contact Student Affairs, the Lighthouse Program, and the Title IX office to share her concerns.  (Brennan Exh. 6)  Brennan signed the form but declined to allow a waiver to give the police access to LSU's resources for victims of sexual misconduct.  (Brennan 89)

Later that same day, Brennan texted Segar and thanked her, writing: "Thanks again so much I really appreciate everything you did today!" (Brennan 68; Brennan Exh. 5)  Segar replied immediately, saying "No problem. Let me know if need anything." *Id.*  Months later, Brennan recounted the event to someone, saying: "I was really surprised how supportive everyone was, especially Ms. Sharon.  I would have thought they would have tried to shut me down, but her and an advocate [Segar] were the ones who encouraged me to go to the police and the advocate [Segar] came with me." (Brennan 153)

After Brennan's initial encounter with the police, Sergeant Melchior, followed up with Brennan by phone to check whether she wanted to move forward with her complaint. (Brennan 89-93)  Brennan again advised that she did not want to do so.  (Brennan 92; Brennan Exh. 6)  She said she would let him know if she changed her mind.  (Brennan 96) Brennan recalls that the officer was "very encouraging of her to press charges."  (Brennan 93) Brennan said "everybody was very encouraging . . . like nobody tried to keep me from pressing charges."  (Brennan 93)  Brennan recalls also being offered the opportunity to undergo a physical exam, which she declined. (Brennan 95) She does not dispute the police report statement that Brennan was offered Title IX, Lighthouse and other resources. (Brennan 94-97) Nothing further happened between Doe and Brennan. (Brennan 50-51)

14

Three days after Brennan's report to Segar and Lewis, Mari Fuentes-Martin, Associate Vice President and Dean of Students, reached out to LSUPD about the potential report and learned that Brennan (whose name was unknown to Fuentes-Martin) instructed LSUPD that she did not want her report disclosed to the Title IX office.  (Sanders Decl., ¶ 10, Exh. 5)  Fuentes-Martin stated she thought the nude picture allegation "might" be a PM-73 case (the scope of which is broader than Title IX).  *Id.*  However, based on the limited information known by the Title IX office at the time (because Brennan did not authorize disclosure to Title IX), Fuentes-Martin and Jennie Stewart, Title IX Coordinator, documented the case as "information only", and closed the case to "respect the wishes of the Complainant."  *Id.*  Stewart indicated that if other factors became known in the future, then they would take a different approach.  *Id.*

At all times, LSU acted in a manner that respected Brennan's wishes.  Brennan made it abundantly clear that she did not want to report the photo.  Brennan was made aware of LSU's resources, and she chose not to use them and not to disclose to Title IX.  (Brennan 89)  Brennan thanked Segar for her attention to Brennan, and she praised Lewis, Segar, and the LSUPD for their collective efforts to assist Brennan.  (Brennan 65-66, 153)  LSU is not liable for a plaintiff who chooses not to participate in the Title IX process.[33]  Thus, in both cases (Mize's and Brennan's), LSU acted to assist the alleged victims by encouraging both women to report to Title IX, but both refused.  The evidence belies that LSU acted with deliberate indifference.[34]

---

[33] *Roskin-Frazee v. Columbia Univ.*, 474 F.Supp. 3d 618, 627 (S.D.N.Y. 2019) (finding no deliberate indifference where university respected privacy of student who clearly communicated to university employees that she did not want to report the alleged assault and withheld information); *JD1 v. Canisius Coll.*, 2022 WL 2308902, at *9 (W.D.N.Y. June 27, 2022) ("[W]here a plaintiff withholds the facts of any specific sexual assault and indicates that she does not wish to have it reported, the institution cannot be liable for honoring her request for privacy and taking no further action.") (internal quotations omitted).

[34] As shown in Summary Judgment No. 2, Section III.A.d.i, adopted herein, Richardson complains that, in Mize's situation, Segar did not include Doe's name in the Maxient system (LSU's reporting system). (R. Doc. 182, ¶ 930(b))  The evidence shows Segar communicated Doe's name to Fuentes-Martin, who played a role in both Mize and Brennan's situations and had the knowledge of the accused perpetrator. (Segar I 264-68, 271-72; Segar Decl. ¶ 7, Exh.5)  Further, Doe's name appeared in the Maxient report that disclosed Brennan's allegation, demonstrating no

### i.    No Causation.

*Davis* also requires a causation showing—a plaintiff must show that a school's "deliberate indifference subject[ed] its students to harassment."[35]  Evidence that a plaintiff was subject to harassment because of deliberate indifference is a necessary causation element for a claim under Title IX.[36]  Critical to this inquiry is what occurred **after** the school's actual knowledge.[37]  Richardson cannot meet the *Davis* standard of showing a causal link between severe, pervasive, and objectively offensive harassment and the alleged deliberate indifference.

As mentioned in note 34, Richardson complains that, in Mize's situation, LSU did not include Doe's name in the Maxient system (LSU's reporting system).  (R. Doc. 182, ¶ 930(b))  She claims that failing to document Doe's name gave Doe "unfettered access to the student body," implying that had the Maxient file been properly documented, Richardson's "attempted rape" would not have occurred. *Id.*  Plaintiff can only speculate that her incident with Doe would not have occurred but for this documentation issue. There is no indication that Doe's name appearing in a Maxient report without any specifics from Mize would have stopped Richardson from maintaining a personal friendship with Doe, allowing him to sleep at her off-campus apartment, and consensually "fooling around" with Doe prior to him seeking to have sex with her.  (Richardson 91, 94; Richardson II 25; Richardson Exh. 34)  Furthermore, given Segar's efforts to encourage Mize to make a Title IX report, it makes no sense to conclude that Segar's verbal disclosure of Doe's name versus a written disclosure was borne out of deliberate indifference.  (*See* Summary Judgment No. 1, Section I)  While Richardson argues that LSU's

---

official policy to conceal Doe's name.  (Brennan Exh. 6; Brennan 190-191; Sanders Decl. ¶ 10, Exh. 5)  Moreover, Student A's name is also missing from the Maxient record, further negating any "policy" to conceal the accused's name.  (Segar Decl., ¶ 7, Exh. 5)

[35] *Davis*, 526 U.S. at 645 (internal quotations and alterations omitted).

[36] *Id.*; *Doe 1 v. Baylor Univ.*, 240 F.Supp. 3d 646, 660 (W.D.Tex. 2017).

[37] *Doe v. Univ. of Kentucky*, 959 F.3d 246, 251 (6th Cir. 2020*); Kollaritsch v. Michigan State Univ. Board of Trustees*, 944 F.3d 613, 622 (6th Cir. 2019).

PD.41628103.2

failure to document Doe's name gave Doe "unfettered access" to campus, the "attempted rape" occurred off-campus, so she cannot show that any discipline of Doe by LSU would have restricted his off-campus access or made any difference.  Regarding Brennan, Richardson admits she knew of Brennan's allegations about the nude photo before Richardson's "attempted rape" by Doe, and yet Richardson invited Doe over and "fooled around" with him.  (Richardson II 23)  Thus, knowledge of that event did not change Richardson's behavior.  Richardson cannot causally link LSU's response to Mize's non-report or Brennan's photo to any heightened risk of unrelated events that occurred between Richardson and Coe in her off-campus apartment while both were sober.[38]

### e. Element Four, Part II: Plaintiff Fails her Burden of Showing a Deprivation of Educational Benefits.

Finally, Richardson must show the existence of an injury, in that the harassment deprived her of "access to the educational opportunities or benefits."[39]  To satisfy this requirement, the harassment must have had a "concrete, negative effect" on Richardson's education.[40]  Richardson merely claims that she was afraid to go to class, so her grades suffered.  The Supreme Court has held "a mere decline in grades" is insufficient to show a Title IX violation.[41]  The evidence shows Richardson's grades did not suffer.  Following Fall 2016, Richardson's grades actually improved from prior semesters, with grade point averages from 3.05 to 3.56.  (Richardson 275-276; Richardson Exh. 26)  By contrast, her grades before Fall 2016 spanned from 2.14 to 3.0.  *Id.*

### B. No Other Heightened Risk Theory is Available.

---

[38] Similarly, Richardson testified that she had sex with another male student, despite warnings from her friend and Richardson's own knowledge that the male student was accused of raping another student because he had sex with her while she was intoxicated.  (Richardson II 43-46)
[39] *Davis*, 526 U.S. at 650.
[40] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 585 (5th Cir. 2020) (quoting *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015)).
[41] *Davis*, 526 U.S. at 652.

Collectively, Plaintiffs seem to base their heightened risk claims on allegations that LSU created a heightened risk of sexual misconduct by maintaining a "general custom or official policy" of deliberate indifference to reports of Title IX violations, seemingly merging two claims. (*See, e.g.,* R. Doc. 182, ¶ 926)  Notwithstanding, the Board also addresses Richardson's insufficient "official policy" allegations.

### a. The Fifth Circuit Does not Recognize Heightened Risk Based on an Official Policy.

The Fifth Circuit has not recognized a claim for Title IX heightened risk based on an official policy, and this Court's ruling on the Board's motion to dismiss does not suggest that an official policy claim remains.  *See* discussion in Summary Judgment No. 1, Section III.D, adopted herein.

### b. Richardson Cannot Establish an Official Policy of Deliberate Indifference to Reports of Sexual Misconduct.

Richardson cannot establish that the Board "maintained a policy of deliberate indifference to reports of sexual misconduct."[42] *See* discussion in Summary Judgment No. 1, Section III.D.b, adopted herein, including the discussion of LSU's PM-73 policy.  The Board's policies were promulgated to students and staff alike before and after Richardson's alleged assault/attempted rape.[43]  Despite PM-73, Richardson's Complaint generally references the following deficiencies: (i) an alleged failure to report complaints, conduct investigations, and establish grievance procedures; (ii)  training; and (iii) LSU's response to a 2017 Internal Audit, all of which fail to satisfy Plaintiff's burden.[44]  However, Richardson has not pointed to any

---

[42] *See Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1112 (9th Cir. 2020).

[43] Sanders Decl., ¶ 4; *See Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, Civ. A. No. H-18-2850, 2020 WL 7043944, at *11 (S.D. Tex. Dec. 1, 2020), aff'd in part, rev'd in part by *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334 (5th Cir. 2022).

[44] R. Doc. 182, ¶¶ 922-923, 926.  *See* discussion in Summary Judgment No. 1, Section III.D.b, adopted herein. The 2017 Internal Audit and LSU's response are irrelevant to Richardson's claims, since her assault occurred before the audit.

specific, non-conclusory policy, let alone one that caused her harm.  *See* discussion in Summary Judgment No. 1, Section III.D, adopted herein.

> **i.    General Reference to Failure to Report Complaints, Initiate/Conduct Investigations and Grievance Procedures.**

Richardson's Complaint generally references shortcomings in reporting, investigations and grievance procedures with no facts to tie those general categories to her claims.  (R. Doc. 182, ¶¶ 926, 931)  The evidence is undisputed that she could report Title IX claims through multiple mechanisms, including to a Title IX representative, as Richardson ultimately did in 2018.  (Board 30(b)(6) 49-52)  Likewise, information about how to contact the Title IX office was provided to students and was housed on the Student Advocacy and Accountability website, Dean of Students website, HRM website, and on the Title IX website at various points.  (*Id.* at 53-54)  Indeed, Richardson made a complaint in 2018 to Title IX, mentioning Coe and nothing about an "attempted rape" by Doe.  (Richardson 101, 256, 271; Richardson Exhs. 19, 24)[45] Richardson can offer no evidence of failures in reporting complaints received by authorized persons, investigations, or grievance procedures, that constitute an official policy **and** that can be causally connected to any harm that Richardson allegedly suffered.  As shown, Richardson cannot prove that LSU acted with "deliberate indifference" to specific allegations or that LSU maintained a general policy of deliberate indifference to sexual misconduct reports.

With respect to Richardson's general allegations about the reporting mechanisms within the football department (to report to Segar), the undisputed facts demonstrate concerted efforts by Segar to encourage Mize and Brennan to come forward, provide information to Title IX, and take advantage of LSU's resources.  *See* Summary Judgment Nos. 1 and 2.  In Mize's case, she was unwilling to do so, which was her right.  (Mize 109, 116, 124, 133-134)  In Brennan's case,

---

[45] By the time of her Title IX report, neither Doe or Coe were still enrolled at LSU. (Sanders Decl., ¶ 11; R. Doc. 182, ¶ 544)

Segar immediately took Brennan to the police to report her concerns and learn about her options, including Title IX.  (Brennan 60, 65. 96)  Brennan also opted out of LSU's resources, which also was her right.  (Brennan Exh. 6)  Richardson can point to no conduct by the Board to establish a "policy of deliberate indifference" that existed before her alleged incidents with Doe or Coe.

### ii.    Training.

*See* discussion in Summary Judgment No. 1, Section III.D.b.ii, adopted herein.  Like other students, Richardson and her alleged assaulters, Coe and Doe, received LSU Title IX training.  (Sanders Decl. ¶ 3)  Because of their roles as student athletes, Coe and Doe received **additional** training through the Dan Beebe Group/Protection for All.  (Segar Decl., ¶ 5, Exh. 2) Richardson received the same training because of her role as a student worker in football. (Richardson II 9; Richardson Exh. 31; Segar Decl., ¶ 4, Exh. 1)  Richardson was aware of resources at LSU, like the Lighthouse program, in 2016. (Richardson 149-152, 253; Richardson Exh. 4)  Richardson even scheduled an LSU speaker to present to her sorority on sexual assault and LSU's resources. (Richardson 236; Richardson Exh.10)  Richardson received and completed a training course on sexual assault, some of which training LSU mandated that students complete as a prerequisite to registering for classes.  (Sanders Decl., ¶ 3; Richardson II 9-10, Richardson Exh. 31; Board 30(b)(6) 40-41)  Richardson cannot show an official policy of deliberate indifference to training, nor can she causally link any alleged lack of training to her injuries.  She lacks any evidence that additional training on Title IX **prior to Richardson's alleged assaults** would have led to a different result.

### c.   Element Two: Richardson Cannot Show a Known or Obvious Risk.

Not only does Richardson fail to establish an "official policy" of deliberate indifference, she also cannot show that the risk of sexual misconduct that would result from such policy was

"known or obvious."[46]  As indicated above, Richardson was the first Plaintiff, or any student for that matter, to have been assaulted by Coe.  (R. Doc. 182, ¶ 152).  Importantly, LSU received no other reports regarding Coe's conduct prior to Richardson's report to Sharon Lewis.[47]  (Board 30(b)(6) 47-48)

With respect to Doe, Richardson cannot show Mize's third-hand account of an intoxicated sexual assault created a known risk that Doe would attempt to have consensual sex with Richardson, in an entirely different context, including that they were friends and both were sober.  Although Plaintiffs collectively have pointed to other general allegations of sexual misconduct, they have no evidence of widespread, systemic conduct that would put LSU on notice **at that time** of a particularized risk of sexual misconduct in Richardson's context and that would have precluded Richardson's alleged "attempted rape."[48]

### d. Element Three: Richardson Has Not Shown that the Alleged Misconduct took Place in a Context Subject to the School's Control.

For the reasons set forth in Section III.A.b, the Board did not control the circumstances of Richardson's alleged assault.

### e. Element Four: Richardson Cannot Show Causation.

---

[46] *See, e.g.*, *Doe v. Texas A&M Univ.*, 2022 WL 5250294, at *6 (S.D.Tex., Oct. 6, 2022).

[47]  *See Doe*, 2022 WL 5250294 (finding no *Karasek/Simpson* liability where there were no allegations that TAMU received reports of sexual misconduct by similarly situated students, that TAMU failed to address or actively concealed reports of sexual misconduct, that TAMU received reports of sexual misconduct committed by plaintiffs' assailants, or that TAMU had an official policy or custom that created a heightened risk of assault in plaintiffs' program).

[48]*See e.g.*, *C.T. v. Liberal Sch. Dist.*, 562 F.Supp. 2d 1324, 1340 (D. Kan. June 10, 2008) (finding that weight training program at volunteer coach's home did not "bear the element of encouragement of misconduct" nor did it "create [ ] a risk of abuse that would have been obvious to school officials."); *Tackett v. Univ. of Kan.*, 234 F.Supp. 3d 1100, 1108 (D. Kan. 2017) (rejecting argument for institutional liability based on the school's authority over its athletes and that it "should have known" of the heightened risk of assault at popular off-campus apartment complex for football players "based on the stereotypical assumption that football players are more prone to commit sexual assault" because such argument is based on theories of respondent-superior and constructive notice, both of which the Supreme Court rejected in *Gebser*, 524 U.S. at 282).

An official policy or custom must have caused the alleged assault, as opposed to "simply misconduct that happened to occur [at the school] among its students."[49]  The standard for official policy liability under Title IX cannot "mean that recipients can avoid liability only by purging their schools of actionable peer harassment."[50]  Richardson's generalized statements relating to failure to report complaints or to engage in investigations, training, and LSU's 2017 audit could not have prevented Richardson's harm.  Richardson, Coe and Doe each received LSU's training on Title IX.  (Sanders Decl., ¶ 3; Segar Decl., ¶ 4, 5; Richardson II 9-10, Richardson Exh. 31) After Richardson allegedly reported to Sharon Lewis, no further assaults occurred by Coe.  (Richardson II 14) With respect to Doe, Richardson cannot show any causal link between LSU's response to Brennan and Mize that caused Richardson's "attempted rape" situation. The two prior incidents, if they had been reported to Title IX, were entirely different from Richardson's experience. For the reasons set forth in Section III.A.d.ii, Richardson cannot establish any causal link between a purported policy of the Board and the harm she alleges. Richardson cannot credibly show that additional training or different investigation or reporting would have changed her circumstances.[51]

## C.  Richardson's Heightened Risk Claim is Prescribed.

The Board adopts by reference the discussion set forth in Summary Judgment No. 1, Section III.B. Richardson's alleged harassment took place in 2016, yet she did not file suit until over four years later, on April 26, 2021. (R. Doc. 1)  Therefore, Richardson can only survive prescription challenges if the claim accrued at a later, timely date.  Richardson cannot show a later accrual.

---

[49] *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1174 (10th Cir. 2007).
[50] *Davis*, 526 U.S. at 650.
[51] *Tackett v. Univ. of Kan.*, 234 F.Supp. 3d 1100, 1107 (D. Kan. 2017) (finding no institutional liability for heightened risk of sexual assault where alleged policies "played no part in plaintiff's rape").

PD.41628103.2

### a. The Husch Blackwell Report is Irrelevant to Richardson's Timeliness Issue.

*See* discussion in Section III.B.a of Summary Judgment No. 1, which is adopted herein. In her Complaint, she alleges generally, not in the heightened risk context, that she merely learned from the Husch Blackwell Report that : (1) "LSU . . . had specific knowledge of the pervasive sex discrimination . . . **she and others suffered**;" (2) "LSU . . . had actual knowledge of other survivors that had reported abuse by John Doe and John Coe;" (3) "LSU and its employees failed to train Richardson on the resources available to her **as a survivor**, . . ."; and (4) "LSU's Title IX Policy is meant to prevent the specific emotional distress that Richardson endured." (R. Doc. 182, ¶ 240) The first and third allegations relate to **post-assault** information, which is irrelevant to her heightened risk claim. The second allegation as it relates to Coe is not supported by the record evidence, as shown below. The fourth allegation merely suggests that Richardson was ignorant of the purpose of Title IX, a federal law, which does nothing to support her claim that the Husch Blackwell Report somehow disclosed information that was otherwise unavailable.

**<u>Coe</u>**: Richardson was the **first** plaintiff allegedly assaulted by Coe, and she cannot point to any findings in the Husch Blackwell Report of sexual misconduct by Coe prior to Richardson's alleged experience. (30(b)(6) 47) Richardson and Lewis are the only two who assert physical assaults by Coe, and Richardson was first. (R. Doc 182, ¶¶ 152, 456) Therefore, she cannot show any "known risk" that LSU should have prevented before she started her relationship with Coe. More importantly, Richardson knew in 2018, three years before the Husch Blackwell Report, of Coe's arrests for assaulting Jade Lewis. (Richardson 194, 196, 207-208) Indeed, Richardson testified that it was her knowledge of Coe's abuse of Lewis that prompted Richardson to report to Title IX in 2018. (Richardson 212-213) Thus, with respect to

PD.41628103.2

Coe, Richardson was well aware of others who complained of abuse before the Husch Blackwell Report, and she did not first learn of salient facts supporting her claim from Husch Blackwell.

**Doe:**  Richardson testified that while Richardson was at LSU, she heard that Mize had a relationship with Doe and that Mize felt Doe had raped or sexually assaulted her.  (Richardson 119-121)  In addition to the other plaintiffs, Richardson said that "all throughout college" she heard other rumors about Doe being violent and getting angry when people rejected him. (Richardson 122-123)  She also was aware of Brennan's situation with Doe prior to Richardson's alleged attempted rape in December 2016 because Richardson saw Brennan crying in a bathroom, and Brennan said she was crying because Doe allegedly shared a naked photo of her. (Richardson 115-116)  Thus, while she was LSU and prior to her departure in December 2018, Richardson was aware of both Brennan's and Mize's situations with Doe.  (Richardson 25, 115-116, 122-123)  Accordingly, the Husch Blackwell Report did not educate her about any pre-assault Doe reports, negating her claim that she could not have known until the Husch Blackwell Report that LSU had "actual knowledge of other survivors that had reported abuse."  (R. Doc. 182, ¶ 240(b))  While she may not have known of Abby Owens' incident before Husch Blackwell, that knowledge does not relate to her heightened risk claim because LSU also had no knowledge of that incident **prior to** Richardson's incident with Doe. [52]

The only information Richardson learned from Husch Blackwell that would not have been known before was that (1) the Doe's name was not included in Mize's Maxient report; and (2) how Segar and the police responded to Brennan's nude photo.  Given that both Mize and Brennan refused to file Title IX claims, despite efforts from Segar to encourage them to report, Richardson cannot offer any evidence that she would have filed a claim sooner had she known of

---

[52] As of December 2016, Abby Owens' father had not yet reported that Owens claimed to have been raped.  (R. Doc. 182, ¶ 340; Owens 77)  Thus, this alleged incident cannot form the basis of her heightened risk claim because it was not yet known to LSU.

LSU's handling of their situations.  As shown, these facts are merely tangential; they are not the salient facts that support or delay accrual of Richardson's claim.[53]

### b. Plaintiff's Claims Accrued by 2018.

Richardson pleads her alleged assault by Coe occurred in Fall 2016, after which she experienced no further physical conduct (and merely continued a voluntary sexual relationship with Coe).  She testified that she pursued a Title IX claim with LSU's Title IX office in October 2018, and she received notice of their finding in November 2018, at which point she alleged she "was extremely upset" with the results. (R. Doc. 182, ¶¶ 234-236)  Richardson's report to Title IX was about Sharon Lewis' alleged failure to report Coe's conduct.  (Richardson Exh. 24)  In fact, she said that in 2018 Richardson went to Title IX because she was "walking around with the guilt that . . . I didn't report it. . . ."  (Richardson 212-213) Thus, her potential claim relating to Coe accrued at that time when she had knowledge of a perceived reporting failure within the LSU system.  Richardson also knew by Doe's departure in 2018 that Doe had allegedly assaulted numerous women.  (Sanders Decl., ¶ 11; Richardson 118-122 Richardson II 22-24)  She knew that the Title IX office had never reached out to her, and that Soil-Cormier had not reported Doe. Richardson knew the salient facts in 2018 that would support her claim.  Her claim is prescribed.

### IV.    CONCLUSION

For all of these reasons, Richardson's heightened risk claim fails as a matter of law.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:    _/s/ Susan W. Furr_
           Shelton Dennis Blunt Bar Roll No. 21230

---

[53] *See* Summary Judgment No. 1, Section III.B.a.; *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762-763 (5th Cir. 2015).

Susan W. Furr Bar Roll No. 19582
Karleen J. Green Bar Roll No. 25119
Jessica Coco Huffman LA Bar No.: 30445
Molly McDiarmid Bar Roll No. 36426
Gregory T. Stevens Bar Roll No. 29436
Michael B. Victorian Bar Roll No.: 36065
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: jessica.huffman@phelps.com
Email: molly.mcdiarmid@phelps.com
Email: greg.stevens@phelps.com
Email: michael.victorian@phelps.com

ATTORNEYS FOR THE BOARD OF
SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL AND
MECHANICAL COLLEGE

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on

June 30, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic

copy of the same to Plaintiffs' counsel.

/s/ *Susan W. Furr*
Susan W. Furr

26

PD.41628103.2