CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 1 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 1 of 35

EXHIBIT 11

Thank you for partnering with us in the accountability process. If you have any further questions, do not hesitate to contact us at 225-578-4307 or email me directly.

Jonathan Sanders, Ph.D.
Associate Dean of Students & Director of SAA

Distributed to:    Corinn Hovis

# EXHIBIT I

BOS-002512

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 2 of 35    EXHIBIT 11
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 2 of 35



— Office of the —
**President**

**Permanent Memorandum No. 73 (Supersedes PM-73 dated June 18, 2014)**

**Effective December 15, 2015**

**F. King Alexander, President** *F. King Alexander*

## TITLE IX AND SEXUAL MISCONDUCT POLICY

### POLICY STATEMENT

In accordance with Title IX and other applicable law, Louisiana State University ("LSU") is committed to providing a learning, working, and living environment that promotes integrity, civility, and mutual respect in an environment free of discrimination on the basis of sex and sexual misconduct which includes sexual assault, sexual harassment, dating violence, domestic violence, stalking and retaliation.

LSU prohibits sexual misconduct and sexual discrimination and has implemented this policy and procedure to prevent acts of sexual misconduct and sexual discrimination and to take prompt and appropriate action to investigate and effectively discipline those found to have engaged in such conduct, in a manner consistent with the law and due process.

LSU shall provide support and assistance to those who complain of sexual misconduct and shall report instances of sexual misconduct in accordance with law. This policy applies to all persons without regard to sexual orientation, gender identity and/or gender expression. Sexual misconduct violates an individual's fundamental rights and personal dignity. LSU considers sexual misconduct in all of its forms to be a serious offense. This policy has been developed to reaffirm these principles and to provide recourse for individuals whose rights have been violated. This policy establishes a mechanism for determining when rights have been violated in all LSU functions, including employment, student life, campus support services, LSU programs and/or an academic environment.

### NONDISCRIMINATION NOTICE

LSU does not discriminate on the basis of race, creed, color, marital status, sexual orientation, gender identity, gender expression, religion, sex, national origin, age, mental or physical disability, or veteran's status in its programs and activities and provides equal access to its programs and activities. Inquiries regarding the non-discrimination policy should be directed to the individual or individuals designated in each campus' applicable policy.

1

**EXHIBIT I**

BOS-002513

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 3 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 3 of 35

EXHIBIT 11

**FREEDOM OF SPEECH**

This policy is not intended to infringe on any form of speech that is protected by the First Amendment of the United States Constitution nor to regulate protected speech.

I.   **JURISDICTION**

    A.   This policy shall apply to conduct that occurs on an LSU campus, at LSU sponsored activities, and/or when the student or employee is representing LSU. LSU shall have discretion to extend jurisdiction over conduct that occurs off campus when the conduct adversely or significantly affects the learning environment or LSU community and would be a violation of this policy and/or any applicable campus policy or code of conduct, if the conduct had occurred on campus. In determining whether or not to extend jurisdiction, LSU may consider, among other factors, its ability to gather information and affect a resolution. LSU may extend jurisdiction (over off- campus conduct) if the alleged conduct by the student or employee:

        1.   Involved violence or produced a reasonable fear of physical harm; and/or
        2.   Involved any other members of the LSU community or any academic work, records, documents, or property of LSU.

    B.   Each student shall be responsible for his/her conduct from the time of acceptance for admission through the actual awarding of a degree or departure from the University.
    C.   Employees are responsible for their conduct during work hours, on campus, at LSU-sponsored activities, and/or when the employee is representing LSU or when their conduct would adversely affect LSU's image, regardless of whether such conduct occurs on-campus or off-campus.
    D.   This policy also applies to any person who is both a student and an employee at LSU, arising out of, or in connection with, conduct in either or both of those capacities. Any violation of this policy may subject such person to disciplinary action, as applicable, in either or both of those capacities.

II.   **DEFINITIONS**

**"Sexual Misconduct"**: A sexual act or contact of a sexual nature that occurs, regardless of personal relationship, without the consent of the other person(s), or that occurs when the person(s) is unable to give consent or whose consent is coerced or obtained in a fraudulent manner. For the purpose of this Policy, sexual misconduct includes, but is not limited to, sexual assault, sexual abuse, violence of a sexual nature, sexual harassment, non-consensual sexual intercourse, sexual exploitation, video voyeurism, contact of a sexual nature with an object, or the obtaining, posting or disclosure of intimate descriptions, photos, or videos without the express consent or the persons depicted therein, as well as dating violence, domestic violence and stalking, as well as crimes of a sexual nature as defined in Title 14 or the Louisiana Revised Statutes or at La. R.S. 44:51.

**"Advisor of Choice" or "Confidential Advisor"**: A student or employee has the right to have an **"Advisor of Choice"** or a "Confidential Advisor" present during any meeting conducted under this policy.

**"Advisor of Choice"**: This Advisor can be any person who the student or employee chooses but may not have personal involvement regarding any facts or circumstances of the alleged misconduct. This Advisor's only function shall be to assist and/or consult with the student or employee. This Advisor may not act

2



**EXHIBIT I**

BOS-002514

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ   Document 472-16   10/13/23   Page 4 of 35
Case 3:21-cv-00242-WBV-SDJ   Document 371-17 *SEALED* 07/10/23   Page 4 of 35   EXHIBIT 11

as a spokesperson. This Advisor may be an attorney but participation shall be limited as stated above.

"**Confidential Advisor**": A person trained in accordance with law and designated by the campus who the student or employee can choose to have support and advise them in accordance with law during the complaint process. This Confidential Advisor may be present during any meeting conducted under this policy to assist and/or consult with the student or employee. This Confidential Advisor may not act as a spokesperson.

"**Coercion**": The use of express or implied threats, intimidation, or physical force which places an individual in fear of immediate harm or physical injury or causes a person to engage in unwelcome sexual activity. Coercion also includes administering a drug, intoxicant, or similar substance with the intent to impair that person's ability to consent prior to engaging in sexual activity.

"**Complainant**": Any student or employee who alleges a violation under this policy.

"**Consent**": Consent to engage in sexual activity must exist from the beginning to the end of each instance of sexual activity. Consent is demonstrated through mutually understandable words or actions that clearly indicate a willingness to engage in a specific sexual activity. Silence alone, without actions evidencing permission, does not demonstrate consent. Consent must be knowing and voluntary. To give consent, a person must be of legal age. Assent does not constitute consent if obtained through coercion or from a person who the alleged offender knows or should reasonably know is incapacitated. The responsibility of obtaining consent, through mutually understandable words or actions, rests with the person initiating sexual activity. Use of alcohol or drugs does not diminish the responsibility to obtain consent. Consent to engage in sexual activity may be withdrawn by any person at any time. Once withdrawal of consent has been expressed, the sexual activity must cease. Consent is automatically withdrawn by a person who is no longer capable of giving consent. A current or previous consensual dating or sexual relationship between the Parties does not itself imply consent or preclude a finding of responsibility.

"**Dating Violence**" includes but is not limited to:

"**Dating Violence**" as defined by the Clery Act: Violence, including but not limited to sexual or physical abuse or the threat of such abuse, committed by a person who is or has been in a social relationship of a romantic or intimate nature with the alleged victim. The existence of such a relationship will be determined based on a consideration of the length and type of relationship and the frequency of interaction.

"**Dating Violence**" as defined by Louisiana Law: Includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one dating partner against the other (La. RS § 46.2151(C)) For purposes of this Section, "dating partner" means any person who is or has been in a social relationship of a romantic or intimate nature with the victim and where the existence of such a relationship shall be determined based on a consideration of the following factors:
(1) The length of the relationship,
(2) The type of relationship, and
(3) The frequency of interaction between the persons involved in the relationship.

"**Domestic Violence**" includes but is not limited to:

"**Domestic Violence**" as defined by the Clery Act: Violence, including but not limited to sexual or physical

3

# EXHIBIT I

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 5 of 35    EXHIBIT 11
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 5 of 35

abuse or the threat of such abuse, committed by a current or former spouse or intimate partner or any other person from whom the alleged victim is protected under federal or Louisiana law.  Felony or misdemeanor crime of violence committed:

- By a current or former spouse or intimate partner of the victim;
- By a person with whom the victim shares a child in common;
- By a person who is cohabitating with, or has cohabitated with, the victim as a spouse or intimate partner;
- By a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred; or
- By any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.

**"Domestic Abuse" as defined by Louisiana Law**:  Abuse and violence including but not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family or household member against another.  La. RS 46:2132(3).

**"Family violence" as defined by in Louisiana Law:** Any assault, battery, or other physical abuse which occurs between family or household members, who reside together or who formerly resided together. La. RS § 46.2121.1(2)

**"Hostile Environment":**  Includes conduct of a sexual nature that is sufficiently severe, persistent, or pervasive to limit a student's or employee's ability to participate in or benefit from the education program or from one's employment, or to create a hostile or abusive educational or work environment.

**"Incapacitation":**    An individual is considered to be incapacitated if, by reason of mental or physical condition, the individual is manifestly unable to make a knowing and deliberate choice to engage in sexual activity. Being drunk or intoxicated can lead to incapacitation; however, someone who is drunk or intoxicated is not necessarily incapacitated, as incapacitation is a state beyond drunkenness or intoxication. Individuals who are asleep, unresponsive or unconscious are incapacitated. Other indicators that an individual may be incapacitated include, but are not limited to, inability to communicate coherently, inability to dress/undress without assistance, inability to walk without assistance, slurred speech, loss of coordination, vomiting, or inability to perform other physical or cognitive tasks without assistance.

**"Respondent":** Any student or employee against whom a complaint under this policy has been made.

**"Responsible Person":**  Any employee who has the authority to take action to redress sexual violence or who has been given the duty of reporting incidents of sexual violence or any other misconduct prohibited by this policy by students or employees to the Title IX coordinator or other appropriate school designee. Responsible Persons do not include victims' advocates, mental health counselors, or clergy.

**"Retaliation":** Title IX prohibits retaliation. Any acts or attempted acts for the purpose of interfering with any report, investigation, or proceeding under this Policy, or as retribution or revenge against anyone who has reported Sexual Misconduct or who has participated (or is expected to participate) in any manner in an investigation, or proceeding under this Policy. Prohibited retaliatory acts include, but are not limited to, intimidation, threats, coercion, or discrimination.

4

# EXHIBIT I

BOS-002516

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ   Document 472-16   10/13/23   Page 6 of 35   EXHIBIT 11
Case 3:21-cv-00242-WBV-SDJ   Document 371-17 *SEALED* 07/10/23   Page 6 of 35

**"Sexual assault"**: Any type of sexual contact or behavior that occurs, or is attempted, without the explicit consent of the recipient. Sexual assault includes, but is not limited to, sexual acts, or attempted sexual acts, such as rape, fondling, incest or statutory rape, forced sexual intercourse, sodomy, child molestation, any sexual touching, and includes sexual acts against people who are unable to consent either due to age or incapacitation.

**"Sexual Assault" also includes but is not limited to:**

**"Sexual Assault" as defined by the Clery Act:** Any offense that meets the definition of rape, fondling, incest, or statutory rape as used in the FBI's UCR program.

**"Non-Consensual Sexual Intercourse"**: Having or attempting to have sexual intercourse, cunnilingus, or fellatio without consent. Sexual intercourse is defined as anal or vaginal penetration by a penis, tongue, finger, or inanimate object.

**"Non-Consensual Sexual Contact"**: Any intentional sexual touching, or attempted sexual touching, without consent.

**"Sexual Assault" also includes sexual battery as defined in La. R.S. 14:43.1.**

**"Sexual Discrimination"**: Behaviors and actions that deny or limit a person's ability to benefit from, and/or fully participate in the educational programs, activities, and services because of a person's gender.

**"Sexual Exploitation"**: Any act attempted or committed by a person for sexual gratification, financial gain, or other advancement through the abuse or exploitation of another person's sexuality. Examples of sexual exploitation include, but are not limited to, non-consensual observation of individuals who are undressed or engaging in sexual acts, non-consensual audio- or videotaping of sexual activity, prostituting another person, allowing others to observe a personal consensual sexual act without the knowledge or consent of all involved parties, and knowingly exposing an individual to a sexually transmitted infection without that individual's knowledge.

**"Sexual Harassment"**: The unwelcome conduct of a sexual nature when i) submission to such conduct is made either explicitly or implicitly a term or condition of a person's employment or education; ii) submission to or rejection of such conduct by a person is used as the basis for a decision affecting that person's employment or education; or iii) such conduct has the purpose or effect of unreasonably interfering with a person's employment or education, or creating an intimidating, hostile, or offensive employment or educational environment, and has no legitimate relationship to the subject matter of a course or academic research. Sexual Harassment also includes non-sexual harassment or discrimination of a person because of the person's sex and/or gender, including harassment based on the person's nonconformity with gender stereotypes. For purposes of this Policy, the various forms of prohibited Sexual Harassment are referred to as "Sexual Misconduct."

**"Sexually-Oriented Criminal Offense"**: any sexual assault offense as defined in La. R.S. 44:51, and any sexual abuse offense as defined in La. R. S. 14:403.

**"Stalking"** includes but is not limited to:

5

# EXHIBIT I

BOS-002517

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ   Document 472-16   10/13/23   Page 7 of 35
Case 3:21-cv-00242-WBV-SDJ   Document 371-17 *SEALED* 07/10/23   Page 7 of 35   EXHIBIT 11

**"Stalking" as defined by the Clery Act:** (1) The intentional and repeated following or harassing that would cause a reasonable person to feel alarmed or that would cause a reasonable person to suffer emotional distress; or (2) the intentional and repeated uninvited presence at another person's: home, work place, school, or any other place which would cause a reasonable person to be alarmed or would cause a reasonable person to suffer emotional distress as a result of verbal or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping or any other statutory criminal act to the victim or any member of the victim's family or any person with whom the victim is acquainted.  34 CFR 668.46(a)(ii).

**"Stalking" as defined by Louisiana Law:**  The intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress.  Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal or behaviorally implied threats of death, bodily injury, sexual assault, kidnaping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted. La. RS § 14:40.2(A)  "Harassing" means the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures.  "Pattern of conduct" means a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person.  Constitutionally protected activity is not included within the meaning of pattern of conduct.  La. RS § 14:40.2(C)

## III. TITLE IX COORDINATORS

The President shall designate the LSU Title IX Coordinator who shall be responsible for the implementation, enforcement, and coordination of Title IX for all LSU campuses. The Chancellor of each Campus shall designate a Campus Title IX Coordinator with designated responsibilities to oversee on-campus Title IX compliance for their respective campus.  A Campus may appoint a Deputy Title IX Coordinator to assist the Campus Title IX Coordinator in their duties.

The President also shall designate a Deputy Title IX Coordinator for Athletics.  In consultation with  the Chancellors and Athletic Directors for each campus, this individual will monitor sports equity, including offerings, participation, and scholarships on all campuses for compliance with Title IX.  Any investigations or complaints involving student athletes or Athletics personnel (other than those involving sports equity) shall be handled and/or investigated by the LSU Title IX Coordinator and/or the Campus Title IX Coordinator(s), or their designee, as appropriate  under the circumstances and in accordance with this Policy.

## IV. INITIATION OF COMPLAINTS

### A.  Application

This policy applies to all campuses and other administrative units.  These procedures may  be supplemented by more specific campus procedures that are consistent with this Policy and PM-55.

Complaints of sexual discrimination which do not involve sexual misconduct or sexual assault shall be handled under any applicable campus specific policies.

6

EXHIBIT I

BOS-002518

Case 3:21-cv-00242-WBV-SDJ   Document 472-16   10/13/23   Page 8 of 35
Case 3:21-cv-00242-WBV-SDJ   Document 371-17 *SEALED* 07/10/23   Page 8 of 35

**EXHIBIT 11**

Each campus shall place the protocol for filing complaints under this policy on their website.

### B.  Complaints

Any student or employee who believes that he or she has been subjected to sexual misconduct or any other violation of this policy has a right to report the conduct to the Campus Title IX Coordinator or to any other responsible person, which includes but is not limited to the campus administrator with responsibility for human resource management, student conduct or the department head of the relevant academic department. When the LSU Title IX Coordinator or the Campus Title IX Coordinator becomes aware of information that indicates that a violation of this policy may have occurred, he/she or their designee shall notify the parties involved of their rights under this policy. Persons who may have experienced criminal sexual misconduct are strongly encouraged to report the offense to campus police or local law enforcement, as well as to the Campus Title IX Coordinator or the persons named above. To the extent possible, the complainant and those who receive the complaint should preserve evidence and not disturb the potential crime scene. The complainant, however, has the legal right not to provide a statement to campus police or law enforcement.

### C.  Notification of Complaints

Any responsible person who receives actual notice of a complaint under this policy *shall* promptly notify the Campus Title IX Coordinator, who shall be responsible for notifying the LSU Title IX Coordinator and any campus administrators, who may be involved in the resolution process. Notice of a complaint may or may not come from a formal complaint. Any supervisor, or other responsible party who witnesses or receives a report or complaint, shall notify the Campus Title IX Coordinator. Only individuals employed as mental health counselors, victim's advocates, University chaplains or others designated by the University as provided by law canguarantee confidentiality.

### D.  Interim Measures

At any time after becoming aware of a complaint, the Campus Title IX Coordinator, a Deputy Title IX Coordinator(s), or other responsible party, may recommend that interim protections or remedies impacted parties involved be provided by appropriate LSU officials. These protections or remedies for the parties involved or witnesses will be provided by appropriate University officials. Remedies may include issuing a timely warning to the campus community, separating the parties, placing limitations on contact between the parties, interim suspension from campus, or making alternative workplace, classroom, course scheduling, dining, or student housing arrangements. Interim measures may vary depending on the nature of the complaint, status of respondent or other criteria. All parties shall be notified of the availability of these measures as well as the fact that such measures are put into effect.

### E.  Confidentiality

All parties involved in a complaint, any investigation, and/or resolution, including witnesses, are encouraged to keep information concerning the complaint private until a final decision is rendered in order to protect both the complainant and the respondent.

7

**EXHIBIT I**

BOS-002519

LSU may be required to divulge information on a need-to-know basis in order to properly address the complaint, when there is a threat to others, pursuant to subpoena, or other court or administrative order, or as may be required by applicable law. Violations of confidentiality by any other persons involved in the resolution, investigation or administration of the complaint, including any employee, faculty, staff, or student if identified and confirmed, may result in disciplinary or corrective action.

Only individuals employed as mental health counselors, victims' advocates, university chaplains or others designated by the University as provided by law can guarantee confidentiality.

## V.  PROCESSING OF COMPLAINTS

### A. Preliminary Inquiry

The Campus Title IX Coordinator or designee shall conduct or supervise the initial review of the complaint, with such assistance, as needed and/or appropriate under the circumstances, from other campus administrators with responsibilities relevant to the nature of the complaint. A complainant or respondent has the right to a confidential advisor or an advisor of choice at any stage of this process. The initial review of the complaint shall be concluded as quickly as possible, within a reasonable amount of time required to complete the review in a manner that is adequate, reliable and impartial and based on the nature and complexity of the complaint. Generally, the initial review should be ordinarily be completed within 15 business days of receipt of the complaint. The purpose of the initial inquiry is to determine whether there is reasonable cause to believe a specific policy/policies may have been violated. After completion of the preliminary inquiry, any initial determination that a policy has not been violated shall be made by the Campus Title IX Coordinator. A respondent or complainant can request a review of the initial determination to the LSU Title IX Coordinator, whose decision shall be final.

To ensure a prompt and thorough initial inquiry, the complainant should provide as much information as possible. A complaint may be submitted anonymously or by an individual who is not a party to the alleged violation. The following may, but is not required to be, provided in writing:

- The name of student(s) or employee(s) to include student organization, academic department, and position of the person(s) allegedly violating this Policy;
- A description of the incident(s), including the date(s), location(s), and the presence of any witness(es);
- If the complainant is an employee, the alleged effect of the incident(s) on the complainant's position, salary, benefits, promotional opportunities, work environment, or other terms or conditions of employment;
- The name(s) of other student(s) or employee(s) who might have been subject to the same or similar conduct; and/or

Any other information the complainant believes to be relevant to the alleged sexual misconduct, discrimination, harassment, or retaliation.

### B. Notice of Investigation

If, after the initial inquiry, the Campus Title IX Coordinator finds reasonable cause to believe a policy

8

EXHIBIT I

BOS-002520

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ   Document 472-16   10/13/23   Page 10 of 35
Case 3:21-cv-00242-WBV-SDJ   Document 371-17 *SEALED* 07/10/23   Page 10 of 35   EXHIBIT 11

or policies may have been violated, an investigation shall be conducted. At any time during the investigation the matter may be referred, if appropriate under this policy, to the informal resolution process. If an investigation is warranted, then at the recommendation of the Campus Title IX Coordinator, a trained investigator(s) will conduct a full investigation into the facts and circumstances of the complaint. The investigation may include in-person interviews with all parties involved, including witnesses and parties that the investigator(s) may deem appropriate. Both the respondent and complainant will be given the opportunity to identify witnesses to be interviewed. The investigator may also collect and review any documents or other relevant information to include but not limited to photographs, video recordings, and/or information from social media. Any such investigation shall be conducted by a trained person, authorized and assigned as an investigator by the Campus Title IX Coordinator, including, but not limited to, trained employees from human resource management department or the student services or student life department, or other qualified University employees. The Campus Title IX Coordinator will notify the appropriate Campus offices as necessary.

Both the respondent and complainant will be provided written notice that an investigation will be undertaken as well as the nature of the complaint. The notice should include the specific section(s) of policy that may have been violated. All parties will have an opportunity to identify pertinent evidence to be considered by the investigator(s). The investigator(s) will author a written investigative summary to include a timeline of events, facts, and circumstances surrounding the complaint. Upon completion of the investigative summary, the Campus Title IX Coordinator or designee, in consultation with the appropriate student services, student life department, or human resource management, will reach a finding based on a preponderance of the evidence or more likely than not that a policy was or was not violated. Prior to issuing a finding, the Campus Title IX Coordinator may request additional investigation, should he/she deem this to be appropriate.

Upon issuance of a notice of investigation, any and all effort should be made to conduct a thorough and prompt investigation based on the facts and circumstances of each complaint ordinarily within thirty (30) business days of the notice. Complicated or extensive investigations may take longer.

After a full investigation, a determination that a policy has or has not been violated, from a more likely than not or preponderance of the evidence standard, shall be made by the Campus Title IX Coordinator or his designee, by admission of responsibility by the respondent or by the complainant's admission of making false charges against the respondent. Both the complainant and the respondent will be given written notice of the results of the investigation

## VI. RESOLUTION PROCEDURES

In the event that a determination has been made that from a more likely than not or preponderance of the evidence standard that a policy has been violated, the University has both informal and formal resolution procedures to address alleged violations of this policy. Both procedures will be implemented by individuals who have received training on issues related to sexual misconduct. The complainant and respondent have the right to an advisor of choice or a confidential advisor at any stage of the Informal Resolution or Formal Resolution processes.

Both informal and formal resolution procedures will utilize a preponderance of the evidence standard throughout the process, with respect to determinations as to whether, or not, there has been a violation of this Policy.

9

EXHIBIT I

BOS-002521

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 11 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 11 of 35

**EXHIBIT 11**

As set forth below, an informal resolution procedure is available under certain circumstances. After a full investigation, or at the request of the parties as provided in Section V. B, or if the respondent accepts responsibility for violation(s) of policy and if the investigator finds that reasonable cause exists to believe that University policy has been violated, the Campus Title IX Coordinator or designee will determine whether the informal resolution procedure is appropriate. If an informal resolution is not appropriate, a formal hearing by a panel of trained hearing officers will be scheduled, for situations involving student matters only. In situations involving an employee as a respondent, the Campus Title IX Coordinator or designee will determine the appropriate procedure to follow in consultation with Human Resources Department and/or applicable campus administrator(s). .

If the Campus Title IX Coordinator or designee determines that informal resolution is appropriate, the complainant and respondent shall be advised of the option to pursue an informal resolution procedure. If both complainant and respondent agree in writing, the informal resolution procedure will be followed, without further investigation, unless and until informal resolution is unsuccessful.

**1. Informal Resolution:**

The use of the informal resolution procedure is optional and must be agreed upon by all parties involved. The informal resolution procedure will not be followed: if any of the persons involved in the complaint do not wish to engage in the informal procedure; if the Campus Title IX Coordinator deems the informal resolution procedure inappropriate for the alleged offense; if the respondent does not accept responsibility for the alleged policy violation(s); or, if an attempt to utilize the informal procedure has been unsuccessful. Informal procedures are not appropriate for, or applied in, cases involving violence resulting in significant harm to others. Additionally the parties may discontinue participation in the informal process at any time. Information obtained regarding the complaint and the investigative summary will be treated as private, with only those with a need to know being informed of the complaint.

An attempt to informally resolve the complaint shall be made by the Campus Title IX Coordinator or designee and should be ordinarily concluded within fifteen (15) calendar days of the decision to pursue informal resolution. Such informal resolution includes meeting with each party to the complaint; review of any initial findings; review or continuance of interim remedies; and any other actions deemed appropriate by the parties and LSU. Any further inquiry or review deemed necessary should be concluded in that same period. Once the informal resolution procedure is complete, written notification of the determination of whether or not this policy(s) was violated will be provided to the complainant and respondent. If a determination has been made that a policy was violated, any changes in status, restrictions, limitations, or other recommended outcomes shall be given to all parties. Any party not willing to accept the proposed informal resolution has the right to make a written request, within five (5) calendar days upon receipt of written notification of the proposed resolution, to the office of the Campus Title IX Coordinator, thereby requesting the opportunity to pursue the formal resolution procedure set forth below.

**2. Formal Resolution:**

If either the respondent or complainant is not in agreement with the outcome of the informal resolution process or if the University, the respondent, and/or the complainant have not consented

10

**EXHIBIT I**

BOS-002522

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 12 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 12 of 35
EXHIBIT 11

to and/or determined that informal resolution is inappropriate or insufficient, the formal procedure will be utilized.

Upon submission of written notification by either the respondent or complainant to the Campus Title IX Coordinator communicating an intent not to accept the proposed informal resolution outcome, formal consideration will be given for a formal resolution process. The complainant and the respondent will be notified in writing the specific section(s) of policy alleged to have been violated, and the date, time, and location of the formal resolution process. Information obtained regarding the complaint will be treated as privately as possible (as set forth herein) with only those with a legitimate educational interest being informed of the complaint and the outcome of the investigation.

The formal procedure will consist of a formal review of all allegations, the initial complaint, supporting documents, investigative summary and corresponding documentation. For complaints involving students as respondents, the formal procedure will consist of a panel of trained hearing officers as outlined in the code of student conduct and/or policy/policies governing student conduct. For complaints involving employees as respondents, the Title IX coordinator or designee and the Office of Human Resource Management and/or applicable campus administrator will direct the formal process of the investigation. Each Campus shall adopt or utilize existing procedures to address alleged violation(s) of this Policy that afford both the complainant and the respondent due process as well as appeal options and other procedural rights as outlined in University policy. The Campus procedures for resolution of such complaints may be subject to review by the LSU Title IX Coordinator.

## VII. RESOLUTION/DISCIPLINARY ACTION

LSU will take appropriate action against any person found to be in violation of this policy. (Note: violations of this policy may also be subject to individual civil or criminal liability under the state or federal law).

When an employee is deemed to have violated this policy, the Campus Title IX Coordinator and Human Resource Management and/or applicable campus administrator will jointly determine the appropriate disciplinary action, or recommendation for disciplinary action, up to and including dismissal, in accordance with applicable laws, rules, and/or LSU policies.

For violations involving students, except when acting in the capacity of an employee, the appropriate campus office or administrator responsible for student conduct, student services or student life will determine the appropriate action, pursuant to any applicable code of student conduct and/or policy/policies governing student conduct. In addition, to the extent possible, LSU will interact with appropriate law enforcement or third parties to address the actions of non-students or non-employees.

Violations of this Policy may result in outcomes such as residential life contract cancellation, deferred suspension, suspension, expulsion, class only restriction (student) and/or disciplinary action or separation of employment.

## VIII. APPEAL

11

EXHIBIT I

BOS-002523

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 13 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 13 of 35    EXHIBIT 11

Either party may appeal the findings of the formal resolution process in accordance with existing University policies detailing appeal procedures for students or for employees. Appeals must be submitted in writing to the Campus Title IX Coordinator or designee within ten (10) business days upon receipt, by the appealing complainant or the appealing respondent, of notification of the outcome of the formal resolution process.

## IX. COOPERATION WITH LAW ENFORCEMENT

LSU will comply with law enforcement requests for cooperation and such cooperation may require LSU to temporarily suspend the fact-finding aspect of a Title IX investigation while the law enforcement agency is in the process of gathering evidence. LSU will promptly resume its Title IX investigation as soon as notified by law enforcement that it has completed the evidence gathering process. LSU may provide up to 10 calendar days to allow for the law enforcement agency criminal process/investigation to unfold prior to resuming the fact-finding aspect of the Title IX investigation.

The University will implement appropriate interim steps/remedies during the law enforcement agency's investigation to provide for the safety of the complainant, the respondent, the campus community, and to avoid any instance of retaliation.

Each campus will develop protocols to coordinate efforts with local law enforcement agencies and other organizations such as crisis centers. A Memorandum of Understanding (MOU) may be utilized to establish those protocols.

## X. RETALIATION

Retaliation against a person who has been subjected to sexual misconduct, or against one, who in good faith brings a complaint of or sexual misconduct or who, in good faith, participates in the investigation of a sexual misconduct complaint, is prohibited; and shall be a violation of this policy and shall constitute misconduct subject to disciplinary or other action, as described above. LSU will take steps to prevent recurrence and remedy the effects of any violation of this Policy.

## XI. RECORD KEEPING

Records will be kept in accordance with Louisiana law and federal law. For students, records will be maintained for seven (7) years by the Dean of Students or other office tasked with the maintenance of student records, except in cases of cases of suspension and expulsion, which records shall be permanent. Employment actions in violation of this policy will be maintained in the employees' respective Employee Relations file.

## XII. OTHER ASSISTANCE

Campuses and the communities in which they are located can provide other assistance to persons impacted by a violation of this policy. Each campus will develop and maintain a list of departments, programs/services, or community-based agencies offering assistance to students and employees concerning issues related to this policy.

## XIII. CAMPUS CLIMATE SURVEY

12

EXHIBIT I
BOS-002524

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 14 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 14 of 36
EXHIBIT 11

Each campus shall administer a Campus Climate Survey to assess the knowledge, perceptions and behaviors of its students, faculty and staff regarding sexual misconduct. The survey shall be developed by the four management boards of public higher education in the state of Louisiana, in coordination with the Board of Regents. Each campus is encouraged to supplement the statewide survey with any additional information specific to its unique characteristics and that may assist in preventing sexual misconduct and administering strategies dealing with sexual misconduct. The annual Campus Climate Survey shall be submitted to the LSU Title IX Coordinator by June 1 of each year.

### XIV. TRAINING, EDUCATIONAL, AND PREVENTION PROGRAMS

Each campus shall regularly offer training, educational and prevention programs designed to inform the campus or community about the law of title IX and LSU's Title IX Policy. Each campus will develop and maintain a list of educational programs, prevention programs, and other events designed to reduce the incidence of sexual violence on campus or within the community. Each campus should identify and include a bystander intervention program and programs addressing issue related to this policy.

### XV. RELATED POLICIES

To the extent other LSU or campus-based policies may conflict with this policy, the provisions of this policy shall supersede and govern.

### XVI. TASK FORCE

Each campus shall establish a task force to address sexual misconduct. Each task force shall invite student members to be represented through their respective student government body or other student organizations.

### XVII. AMNESTY POLICY

LSU encourages reporting of sexual misconduct and seeks to remove barriers to an individual or group reporting such conduct. An individual or group who, in good faith, reports sexual misconduct, either as a complainant or a third party witness, shall not be sanctioned for a nonviolent student conduct violation, such as underage drinking, at or near the time of the complained incident, provided that any such violation did not and does not place the health and safety of any other person at risk. Each campus policy shall include amnesty policies in accordance with ACT 172 and other applicable state laws.

### XVIII. MEMORANDUM OF UNDERSTANDING

Each campus shall make diligent efforts to enter into Memorandum of Understanding (MOU) with law enforcement and criminal justice agencies in the parish in accordance with ACT 172 or any other applicable state laws. Such MOUs should clearly delineate the responsibilities, protocols for investigation, as well as commitments to share information, in accordance with Act 172 and state and federal confidentiality laws. The MOUs should be updated every two years. The MOU should provide for joint or shared trauma-informed training specific to assisting sexual assault victims.

13

EXHIBIT I

BOS-002525

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 15 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 15 of 35 **EXHIBIT 11**

### XIX. <u>TRANSFER</u>

In accordance with state and federal law, if a student accused of a sexually-oriented criminal offense as defined in La. R.S. 44:51 or any sexual abuse offense as defined in La. R.S. 14:403 seeks to transfer to another institution during an investigation, resolution procedure, and/or adjudication procedure, the institution shall withhold the student's transcript until such investigation or adjudication is complete and a final decision has been made. Each institution shall inform the respondent of the institution's obligation to withhold the transcript during the investigation.

If, upon the completion of an investigation, resolution procedure, and/or adjudication under this policy, the student is found responsible for sexually-oriented criminal offenses as defined in La. R.S. 44:51 or any sexual abuse offense as defined in La. R.S. 14:403, and seeks to transfer to another institution, institutions are required to communicate such a violation, when the institution becomes aware of the student's attempt to transfer, with the institution(s) to which the student seeks to transfer or has transferred.

**EXHIBIT I**

BOS-002526

CONFIDENTIAL— SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ     Document 472-16    10/13/23    Page 16 of 35
Case 3:21-cv-00242-WBV-SDJ     Document 371-17 *SEALED* 07/10/23     Page 16 of 35
EXHIBIT 12

# RE: Contact with Someone

---

**From: Jonathan B Sanders <jsanders@lsu.edu>**                    Fri, May 8, 2020 at 1:18 PM CDT (GMT-05:00)
To: Corinn Hovis <corinnhovis@gmail.com>

---

Thank you Corinn for sharing this information. I assume you do not know the identity of the person who sent this, but if you do, please let me know. I would encourage you to block them from any future communication. I will look into this further.

-Jonathan



**Jonathan Sanders, Ph.D.**
Associate Dean of Students
Director of Student Advocacy & Accountability
Louisiana State University
*4th Floor LSU Student Union, Baton Rouge, LA 70803
office 225-578-4307 | fax 225-578-5637
jsanders@lsu.edu | lsu.edu | lsu.edu/saa

*Please note that SAA has moved to the 4th floor of the LSU Student Union

---

**From:** Corinn Hovis <corinnhovis@gmail.com>
**Sent:** Friday, May 8, 2020 12:04 PM
**To:** Jonathan B Sanders <jsanders@lsu.edu>
**Subject:** Contact with Someone

Hi Mr. Sanders,

Someone contacted me and I was told to make you aware of it. It was through Instagram. This was the message I received.

# EXHIBIT I

HOVIS_00002843

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 17 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 17 of 35

**EXHIBIT 12**



11:23 ✈

Tap for details

11:21 AM

I've know ████ my whole life, since we were 5 years old, and im sorry for what happened to you, but he would never intentionally do anything to hurt anybody, he is a good person, and all he ever wanted to do was make a better life for his parents and his family, that's all he ever talked about, they went 5 years without any beds, and all his checks he got from the school he sent to them to help them pay bills or buy his brother clothes for school,if you would have told him no, i swear on my life he wouldn't have touched you, but you took everything away from him, he



████████████ wants to send you a message

9 followers 0 posts

Do you want to let ██████████ send you messages from now on? They'll only know you've seen their request if you choose Accept.

| Block | Delete | Accept |

**EXHIBIT I**

Case 3:21-cv-00242-WBV-SDJ Document 371-17 *SEALED* 07/10/23 Page 18 of 35

**EXHIBIT 12**



from the school he sent to them
to help them pay bills or buy his
brother clothes for school,if you
would have told him no, i swear
on my life he wouldn't have
touched you, but you took
everything away from him, he
can't even go to school there to
get his education anymore if he
wanted to, and now he cant
support his family, all because of
a big misunderstanding, and im
sorry if this has caused you hurt
or caused you and your family
hurt, but did you think about the
hurt and consequences he would
face, him and his family? He
probably has no chance of ever
playing football at a collegiate
level again



**EXHIBIT I**

HOVIS_00002845

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23   Page 19 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 19 of 35

**EXHIBIT 13**

**From:** Miriam F Segar <msegar@lsu.edu>
**To:** Jonathan B Sanders <jsanders@lsu.edu>
**Cc:** Jeremiah Shinn <jbs@lsu.edu>, Trey Jones <jones@lsu.edu>, Jennie L Stewart <jstewart@lsu.edu>
**Subject:** RE: Contact with Someone
**Date:** Fri, 08 May 2020 13:52:32 -0500
**Importance:** Normal
**Inline-Images:** image001.png; image002.png; image003.png

---

This is not an LSU Athletics site. Sorry this happened. Do you have a way to track who could have initiated? Sorry this happened.

Miriam Segar
Sr. Associate Athletics Director/SWA
225-578-5785
225-578-0631 fax

---

**From:** Jonathan B Sanders <jsanders@lsu.edu>
**Sent:** Friday, May 08, 2020 1:27 PM
**To:** Miriam F Segar <msegar@lsu.edu>
**Cc:** Jeremiah Shinn <jbs@lsu.edu>; Trey Jones <jones@lsu.edu>; Jennie L Stewart <jstewart@lsu.edu>
**Subject:** FW: Contact with Someone

Hello Miriam,

I wanted to share the following email I received from the complainant in the Title IX case with ▮Redacted▮ and to make sure this was on your radar. Would LSU Athletics know who the owner of the account is? Let me know if you would have any additional information. I have copied the others as an FYI.

Thanks,

Jonathan



**Jonathan Sanders, Ph.D.**
Associate Dean of Students
Director of Student Advocacy & Accountability
Louisiana State University
*4th Floor LSU Student Union, Baton Rouge, LA  70803
office 225-578-4307 | fax 225-578-5637
jsanders@lsu.edu | lsu.edu | lsu.edu/saa

*Please note that SAA has moved to the 4th floor of the LSU Student Union

---

**From:** Corinn Hovis <corinnhovis@gmail.com>
**Sent:** Friday, May 8, 2020 12:04 PM
**To:** Jonathan B Sanders <jsanders@lsu.edu>
**Subject:** Contact with Someone

Hi Mr. Sanders,

Someone contacted me and I was told to make you aware of it. It was through Instagram. This was the message I received.



**EXHIBIT I**

BOS-020043

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 20 of 35
**EXHIBIT 13**
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 20 of 35

do anything to hurt anybody, he is a good person, and all he ever wanted to do was make a better life for his parents and his family, that's all he ever talked about, they went 5 years without any beds, and all his checks he got from the school he sent to them to help them pay bills or buy his brother clothes for school,if you would have told him no, i swear on my life he wouldn't have touched you, but you took everything away from him, he



EXHIBIT I

BOS-020044

Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 21 of 35

touched you, but you took everything away from him, he can't even go to school there to get his education anymore if he wanted to, and now he cant support his family, all because of a big misunderstanding, and im sorry if this has caused you hurt or caused you and your family hurt, but did you think about the hurt and consequences he would face, him and his family? He probably has no chance of ever playing football at a collegiate level again



Redacted wants to send you a message

9 followers 0 posts

Do you want to let Redacted send you messages from now on? They'll only know you've seen their request if you choose Accept.

| Block | Delete | Accept |
|-------|--------|--------|

# EXHIBIT I

BOS-020045

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 22 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 22 of 35

**EXHIBIT 13**

**From:** Sarah M Drake <sdrake1@lsu.edu>
**To:** Jonathan B Sanders <jsanders@lsu.edu>, Bart Thompson <bthompson@lsu.edu>
**Subject:** RE: Contact with Someone
**Date:** Fri, 08 May 2020 18:07:37 -0500
**Importance:** Normal
**Inline-Images:** image004.png; image005.png; image006.png; image007.png

---

Jonathan,

I don't see any criminality to the messages. Of course if the messages continue or become harassing/ threatening in nature, then we could move forward with an investigation. We need a crime to investigate the owner of the social media account. I don't think there are any other ways do discover the owners except for striking up a conversation and just asking??

Let me know if you need anything else.

**LSU**

**Sarah Drake**
Detective
Police Department
Louisiana State University
101 Public Safety Building , Baton Rouge, LA  70803
Office 225-578-1347 | Mobile 225-317-6026 | Fax 225-578-3102
sdrake1@lsu.edu | lsu.edu | www.lsupd.com

---

**From:** Jonathan B Sanders <jsanders@lsu.edu>
**Sent:** Friday, May 08, 2020 1:59 PM
**To:** Bart Thompson <bthompson@lsu.edu>; Sarah M Drake <sdrake1@lsu.edu>
**Subject:** FW: Contact with Someone

Hello Bart and Sarah,

Do you know of a way to look to see who owns an Instagram account, besides a warrant? See below. I am not sure this would be criminal at this point , but wanted to at least check and see if there were other ways we could determine the owner of the account that you were aware of.

Thank you,

Jonathan

**LSU**

**Jonathan Sanders, Ph.D.**
Associate Dean of Students
Director of Student Advocacy & Accountability
Louisiana State University
*4th Floor LSU Student Union, Baton Rouge, LA  70803
office 225-578-4307 | fax 225-578-5637
jsanders@lsu.edu | lsu.edu | lsu.edu/saa

*Please note that SAA has moved to the 4th floor of the LSU Student Union

---

**From:** Jonathan B Sanders
**Sent:** Friday, May 8, 2020 1:56 PM
**To:** Miriam F Segar <msegar@lsu.edu>
**Cc:** Jeremiah Shinn <jbs@lsu.edu>; Trey Jones <jones@lsu.edu>; Jennie L Stewart <jstewart@lsu.edu>
**Subject:** RE: Contact with Someone

Thank you Miriam. We will look into it further, but currently we do not know who sent the message. If you hear anything on you end, just let me know.

-Jonathan

**LSU**

**Jonathan Sanders, Ph.D.**
Associate Dean of Students
Director of Student Advocacy & Accountability
Louisiana State University
*4th Floor LSU Student Union, Baton Rouge, LA  70803
office 225-578-4307 | fax 225-578-5637
jsanders@lsu.edu | lsu.edu | lsu.edu/saa

*Please note that SAA has moved to the 4th floor of the LSU Student Union

---

**From:** Miriam F Segar <msegar@lsu.edu>
**Sent:** Friday, May 8, 2020 1:53 PM
**To:** Jonathan B Sanders <jsanders@lsu.edu>

# EXHIBIT I

BOS-021454

Cc: Jeremiah Shinn <jbs@lsu.edu>; Trey Jones <jones@lsu.edu>; Jennie L Stewart <jstewart@lsu.edu>
**Subject:** RE: Contact with Someone

This is not an LSU Athletics site. Sorry this happened. Do you have a way to track who could have initiated? Sorry this happened.

Miriam Segar
Sr. Associate Athletics Director/SWA
225-578-5785
225-578-0631 fax

---

**From:** Jonathan B Sanders <jsanders@lsu.edu>
**Sent:** Friday, May 08, 2020 1:27 PM
**To:** Miriam F Segar <msegar@lsu.edu>
Cc: Jeremiah Shinn <jbs@lsu.edu>; Trey Jones <jones@lsu.edu>; Jennie L Stewart <jstewart@lsu.edu>
**Subject:** FW: Contact with Someone

Hello Miriam,

I wanted to share the following email I received from the complainant in the Title IX case with █Redacted█ and to make sure this was on your radar. Would LSU Athletics know who the owner of the account is? Let me know if you would have any additional information. I have copied the others as an FYI.

Thanks,

Jonathan



**Jonathan Sanders, Ph.D.**
Associate Dean of Students
Director of Student Advocacy & Accountability
Louisiana State University
*4th Floor LSU Student Union, Baton Rouge, LA 70803
office 225-578-4307 | fax 225-578-5637
jsanders@lsu.edu | lsu.edu | lsu.edu/saa

*Please note that SAA has moved to the 4th floor of the LSU Student Union

---

**From:** Corinn Hovis <corinnhovis@gmail.com>
**Sent:** Friday, May 8, 2020 12:04 PM
**To:** Jonathan B Sanders <jsanders@lsu.edu>
**Subject:** Contact with Someone

Hi Mr. Sanders,

Someone contacted me and I was told to make you aware of it. It was through Instagram. This was the message I received.



11:21 AM

I've know █Redacted█ my whole life, since we were 5 years old, and im sorry for what happened to you, but he would never intentionally do anything to hurt anybody, he is a good person, and all he ever wanted to do was make a better life for his parents and his family,

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**EXHIBIT I**

**EXHIBIT 13**

that's all he ever talked about,
they went 5 years without any
beds, and all his checks he got
from the school he sent to them
to help them pay bills or buy his
brother clothes for school,if you
would have told him no, i swear
on my life he wouldn't have
touched you, but you took
everything away from him, he



Redacted wants to send
you a message

9 followers 0 posts

Do you want to let ▮▮▮▮ Redacted ▮▮▮▮ send you
messages from now on? They'll only know you've seen
their request if you choose Accept.

Block          Delete          Accept



11:23

Redacted

from the school he sent to them
to help them pay bills or buy his
brother clothes for school,if you
would have told him no, i swear
on my life he wouldn't have
touched you, but you took
everything away from him, he
can't even go to school there to
get his education anymore if he
wanted to, and now he cant

**EXHIBIT I**

BOS-021456

Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 26 of 35

wanted to, and how he can't support his family, all because of a big misunderstanding, and im sorry if this has caused you hurt or caused you and your family hurt, but did you think about the hurt and consequences he would face, him and his family? He probably has no chance of ever playing football at a collegiate level again



**Redacted** wants to send you a message

9 followers 0 posts

Do you want to let **Redacted** send you messages from now on? They'll only know you've seen their request if you choose Accept.

**Block**        **Delete**        **Accept**

# EXHIBIT I

BOS-021457

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 26 of 35
EXHIBIT 14
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 26 of 35

**From:** Corinn Hovis <corinnhovis@gmail.com>
**To:** Jonathan B Sanders <jsanders@lsu.edu>
**Subject:** Re: Contacted again
**Date:** Tue, 12 May 2020 16:49:44 -0500
**Importance:** Normal

---

Sorry, my last email is kind of confusing haha! I just copied what I sent to Mrs. Jennie, which explains the first sentence!

On May 12, 2020, at 4:48 PM, Corinn Hovis <corinnhovis@gmail.com> wrote:

Yes, I have messaged both of them about it. Here are the screenshots. They pictures she sent us just more of the same stuff. If you want me to send you those just let me know.

<unknown.png>

<1__#$!@!#__unknown.png>

<2__#$!@!#__unknown.png>

On May 12, 2020, at 9:11 AM, Jonathan B Sanders <jsanders@lsu.edu> wrote:

I am so sorry to hear that Corinn. Can you share the details of the contact that you received?  I would be happy to look further into this as well.

-Jonathan

Jonathan Sanders, Ph.D.
Associate Dean of Students
Director of Student Advocacy & Accountability
Louisiana State University
*4th Floor LSU Student Union, Baton Rouge, LA  70803
office 225-578-4307 | fax 225-578-5637
jsanders@lsu.edu | lsu.edu | lsu.edu/saa

*Please note that SAA has moved to the 4th floor of the LSU Student Union

-----Original Message-----
From: Corinn Hovis <corinnhovis@gmail.com>
Sent: Monday, May 11, 2020 8:41 PM
To: Jonathan B Sanders <jsanders@lsu.edu>
Subject: Contacted again

# EXHIBIT I

BOS-021468

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 27 of 35
**EXHIBIT 14**
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 27 of 35

Hey Mr. Sanders,

I've been contacted by another person who is involved with ██Redacted██ Just figured I would let you know.

Thanks so much,
Corinn Hovis

# EXHIBIT I

BOS-021469

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ   Document 472-16   10/13/23   Page 28 of 35   EXHIBIT 14
Case 3:21-cv-00242-WBV-SDJ   Document 371-17 *SEALED* 07/10/23   Page 28 of 35

**From:** Corinn Hovis <corinnhovis@gmail.com>
**To:** Jonathan B Sanders <jsanders@lsu.edu>
**Subject:** Re: Contacted again
**Date:** Tue, 12 May 2020 16:48:44 -0500
**Importance:** Normal
**Inline-Images:** unknown.png; 1___$!@!___unknown.png; 2___$!@!___unknown.png

Yes, I have messaged both of them about it. Here are the screenshots. They pictures she sent us just more of the same stuff. If you want me to send you those just let me know.



**EXHIBIT I**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 29 of 35    **EXHIBIT 14**
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 28 of 36

heart to forgive Redacted and have mercy on him and give him a second chance at life. For the year I've know Redacted i know he would never intentionally do anything to hurt anyone, and if you said no, I swear on my mother he wouldn't have done

Redacted **wants to send you a message**

1,623 followers 9 posts

Do you want to let Redacted send you messages from now on? They'll only know you've seen their request if you choose Accept.

**Block**          **Delete**          **Accept**

9:07 ⌖                                    ▫️ 🔋

‹   Redacted   Redacted
                Tap for details

**EXHIBIT I**

BOS-021477

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 30 of 35    **EXHIBIT 14**
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 30 of 35

anything. And ik you're probably gonna block me after this, which is completely understandable, but I just thought you should know that Redacted isn't this terrible person you think he is, he made a mistake, and I'm sorry if his mistake caused trauma on you and your family, but I promise you he is the sweetest person I've ever met.

Image is blurred to protect you from unwanted content.

Tap to see preview.

Redacted wants to send you a message

1,623 followers 9 posts

**EXHIBIT I**

BOS-021478

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 31 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 31 of 35    **EXHIBIT 14**



1,023 followers 9 posts

Do you want to let Redacted send you messages from now on? They'll only know you've seen their request if you choose Accept.

**Block**          **Delete**          Accept

9:07

Redacted    Redacted
Tap for details

I typed these in my notes but they ended up being too long 

I seem really desperate rn, but that's because i am, i will do whatever to have him back at school w me, i come from a very abusive household, and Redacted had helped me get through so many things, and idk if i can do

**EXHIBIT I**

BOS-021479

school without, so if you don't have mercy for him, please have mercy for me and ik you don't know me but woman to woman i hope you understand

Hopefully you respond and we can try and talk things out, if you don't wanna respond I understand that as well

Redacted

Redacted ants to send you a message

1,623 followers 9 posts

Do you want to let Redacted send you messages from now on? They'll only know you've seen their request if you choose Accept.

**Block**        **Delete**        Accept

# EXHIBIT I

BOS-021480

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ   Document 472-16   10/13/23   Page 33 of 35
**EXHIBIT 14**
Case 3:21-cv-00242-WBV-SDJ   Document 371-17 *SEALED* 07/10/23   Page 33 of 35

On May 12, 2020, at 9:11 AM, Jonathan B Sanders <jsanders@lsu.edu> wrote:

I am so sorry to hear that Corinn. Can you share the details of the contact that you received?  I would be happy to look further into this as well.

-Jonathan


Jonathan Sanders, Ph.D.
Associate Dean of Students
Director of Student Advocacy & Accountability
Louisiana State University
*4th Floor LSU Student Union, Baton Rouge, LA  70803
office 225-578-4307 | fax 225-578-5637
jsanders@lsu.edu | lsu.edu | lsu.edu/saa

*Please note that SAA has moved to the 4th floor of the LSU Student Union

-----Original Message-----
From: Corinn Hovis <corinnhovis@gmail.com>
Sent: Monday, May 11, 2020 8:41 PM
To: Jonathan B Sanders <jsanders@lsu.edu>
Subject: Contacted again

Hey Mr. Sanders,

I've been contacted by another person who is involved with [Redacted] Just figured I would let you know.

Thanks so much,
Corinn Hovis

**EXHIBIT I**

BOS-021481

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 34 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 34 of 35
**EXHIBIT 15-16**

**From:** Jeffrey Scott <jscott11@lsu.edu>
**Sent:** Monday, May 18, 2020 3:03 PM
**To:** "2019324802+lsu@efc.maxient.com" <2019324802+lsu@efc.maxient.com>
**Subject:** FW: Case #2019324802
**Attachment(s):** image001.png   *334 bytes*

---

**From:** ██ █ Redacted < **Redacted** >
**Sent:** Friday, May 15, 2020 2:53 PM
**To:** Jeffrey Scott <jscott11@lsu.edu>
**Cc:** Jennie L Stewart <jstewart@lsu.edu>; Jonathan B Sanders <jsanders@lsu.edu>; Winston DeCuir <wdecuirjr@lsu.edu>; Susan Bareis <sbareis@lsu.edu>; Miriam F Segar <msegar@lsu.edu>
**Subject:** Re: Case #2019324802

Who has came in contact with her so that i know

Get  Outlook for iOS

---

**From:** ██ J Redacted < **Redacted** >
**Sent:** Friday, May 15, 2020 3:51:32 PM
**To:** Jeffrey Scott <jscott11@lsu.edu>
**Cc:** Jennie L Stewart <jstewart@lsu.edu>; Jonathan B Sanders <jsanders@lsu.edu>; Winston DeCuir <wdecuirjr@lsu.edu>; Susan Bareis <sbareis@lsu.edu>; Miriam F Segar <msegar@lsu.edu>
**Subject:** Re: Case #2019324802

Im sorry i dont know anybody that has contacted her

Get  Outlook for iOS

---

**From:** Jeffrey Scott <jscott11@lsu.edu>
**Sent:** Friday, May 15, 2020 3:22:12 PM
**To:** ██ █ Redacted < **Redacted** >
**Cc:** Jennie L Stewart <jstewart@lsu.edu>; Jonathan B Sanders <jsanders@lsu.edu>; Winston DeCuir <wdecuirjr@lsu.edu>; Susan Bareis <sbareis@lsu.edu>; Miriam F Segar <msegar@lsu.edu>
**Subject:** Case #2019324802

██ ,

It has come to my attention that persons claiming to be associated with you, one in particular claiming to be your "on and off girlfriend," have been contacting Corinn Hovis.  I wanted to take this opportunity to remind you of the **No Contact Order** between yourself and Corinn that was referenced in the letter sent to you on May 1, 2020, from Dr. Jonathan Sanders, Associate Dean of Students.

# EXHIBIT I

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 472-16    10/13/23    Page 35 of 35
Case 3:21-cv-00242-WBV-SDJ    Document 371-17 *SEALED* 07/10/23    Page 35 of 35    **EXHIBIT 15-16**

The No Contact Order specifically states: "There is a mutual "no contact" order between you and Corinn Hovis. You are directed to avoid contact with each other until such time as this directive is lifted in writing. This mutual "no contact" order does not imply any judgment regarding the factual nature of the incident. Both you and Corinn Hovis are to refrain from: 1. approaching one another at any time; 2. calling one another at any time; 3. sending via email, campus or regular mail anything to one another; 4. contacting or communicating with one another, **including through a third party**, social media, or in any way at any time. Should you need to contact Corinn Hovis you must do so through this office."

Thanks for your cooperation in this matter.

Image not found or type unknown

**Jeff Scott**
Title IX Lead Investigator
Louisiana State University
3810 West Lakeshore Drive, Ste. 123
Baton Rouge, LA 70803
Office:  225-578-3328
jscott11@lsu.edu | lsu.edu

# EXHIBIT I

BOS-001467