# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**                    **CIVIL ACTION NO. 3:21-CV-00242**

**VERSUS**                                          **JUDGE WENDY B. VITTER**

**LOUISIANA STATE UNIVERSITY,**       **MAGISTRATE JUDGE JOHNSON**
**ET AL.**

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 4: ABBY OWENS

NOW INTO COURT, through undersigned counsel, comes defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"), and submits this memorandum in support of its Motion for Summary Judgment. Plaintiff Abby Owens ("Owens") asserted various Title IX claims. Her claims arise out of an incident of intoxicated sex with John Doe in 2016, which she did not report until after she withdrew from LSU in 2017.[1] Following this Court's ruling on the Board's motion to dismiss, Owens' only remaining claim is for Title IX heightened risk (pre-assault violation). (R. Doc. 340, p. 44) This claim fails as a matter of law for the reasons below.

## I.    FACTUAL BACKGROUND.

### A.  **Owens' "Assault."**

Owens was a student at LSU from Fall 2013 to Spring 2017, where she was a member of the LSU tennis team. (Owens 13, 102)[2] On the evening of June 28, 2016, Owens and her friends

---

[1] The Board accepts Plaintiff's facts as true for purposes of this motion and memorandum only.

[2] Relevant portions of the deposition transcripts and exhibits of Plaintiff, Ashlyn Mize, Samantha Brennan, Miriam Segar, Jennie Stewart, Julia Sell, and the 30(b)(6) of the Board are attached to the Board's motion as Exhibits A through G, respectively. The declarations of Segar and Jonathan Sanders are also attached to the Board's motion as Exhibits H and I, respectively. Citations to the depositions will be by the last name of the deponent and the page or exhibit number. Deposition transcripts with more than one volume will include a Roman numeral to identify the cited volume. Citations to the declarations will be by the witness's last name and paragraph or exhibit number.

consumed alcohol together at an off-campus apartment and then went to an off-campus bar, where she continued to consume alcohol to intoxication.  (Owens 14-16, 42-46)  Owens said she met John Doe at the bar for the first time and became "star-struck."  (Owens 43-44, 46-47)  Doe and Owens exchanged numbers at some point during the evening.  (Owens 63)  Doe eventually drove Owens and at least one friend home.  (Owens 48-50)  Doe dropped off Owens' friend and then drove to Owens' off-campus apartment complex, where Doe also lived.  (Owens 50-52)  Doe texted Owens at around 2 a.m. and asked if he could come over, and Owens agreed.  (Owens 53-54, 62)  The next day, Owens vaguely recalled having sex with Doe, although Owens did not find any physical evidence that she had done so.  (Owens 55-57)  Owens remembered performing oral sex on Doe, and she does not believe she "resisted." (Owens 56-57)  She did not have any bruises or marks on her, nor did she find evidence of semen or condoms.  (Owens 57-58)  She has questioned her "willingness" to engage in sex with Doe, recalling a flashback of telling Doe "not to forget her" as he left her apartment.  (Owens 161)[3]

Owens believes in hindsight that their sexual conduct should be considered non-consensual because she was intoxicated.  (Owens 73, 160-162)  While Owens describes her condition as "heavily intoxicated" that night, she acknowledges she was able to stand, speak, walk, text, and perform oral sex.  (Owens 53-58, 62-63, 67-68, 161)  Owens has no idea whether Doe was also intoxicated.  (Owens 107-108, 164, 169)

Prior to her rehab in April 2017, Owens had not considered the encounter with Doe as sexual assault.  (Owens 73)  Therefore, Owens never reported the incident to anyone at LSU. (Owens 40, 86, 98, 207)  Instead, within a few days of the incident, Owens told a friend that "she had sex" with Doe.  (Owens 59-60)  Owens never had any further interactions with Doe other than

---

[3] Doe was not present when Owens woke up. (Owens 59)

that she texted him to tell him she was sorry about something that occurred to Doe's brother and to see him briefly in the apartment lobby and in a bar.  (Owens 61-66)  Doe never acknowledged to Owens that the two of them had sex, and Doe did not do anything inappropriate to Owens thereafter.  (Owens 61-66)

**Prior to** this one night with Doe, Owens had been diagnosed with anxiety, depression, and an eating disorder, and she said she had been abusing alcohol with amphetamines such as Vyvanse and Adderall for years.  (Owens 21-23, 30-31, 35-37)[4]  Owens had been in a long-term relationship with someone who she said was emotionally and sexually abusive to her, although she never reported it to LSU.  (Owens 108-113) ███████████████████████

████████████████████████████ (Owens 84, 106-108, 116-117) ██████████

████████████████████████████████████████████████████████████

██████████████████████████████. (Owens 83-85, 106-108)

███████████████████████████████████████████[5] (Owens 84-86, 163) ████████████████████████████████████

█████████████████████████████████. (Owens 86, 109-110, 167)[6]

### B.  Owens' Report.

In January 2017, Owens finally disclosed to her parents that she had an alcohol/narcotic addiction and was "out of control," but she said they did not get her into a treatment program, so she returned to LSU.  (Owens 129-130)  By March 2017, her coach, Julia Sell, referred Owens to

---

[4] She acknowledged having an alcohol problem as early as her freshman year of college, and her drug and alcohol use continued throughout college. (Owens 35, 104-109, 116, 133-135, 140-144)  Owens testified that her alcohol and substance abuse caused her to have memory black-outs well before the event with Doe.  (Owens 22-23)  She knew the side effects of mixing Adderall and alcohol, but she said she could drink a lot more while on the medication. (Owens 22-23)  Her eating disorder began in high school.  (Owens 37)
[5] Again, Owens does not know whether Doe was intoxicated during their sexual encounter.  (Owens 107-108, 164)
[6] ████████████████████████████████████████████████████ (Owens 166)

Dr. Lakeitha Poole, LSU therapist, for assessment and care.  (Owens 145)[7] Owens subsequently showed up intoxicated at a tennis match and failed a breathalyzer.  (Owens 19)  By April 2017, Owens failed an athletics drug test.  (Owens 96, 152)  LSU provided financial and planning aid to Owens to get her into a rehabilitation center (at Owens' request) in order to treat her addictions. (Owens 28, 87-88, 206; Segar II 395-96)  Julia Sell drove Owens to Lafayette, Louisiana to start the rehab, which Owens appreciated.  (Owens 27-28)  Owens withdrew from LSU upon entering rehab. (Owens 95, 102)

In mid-April, 2017, Owens disclosed to the staff at the rehabilitation center that she had been "raped by an athlete at school." (Owens 69-70, 72)  Owens believes that someone at the rehabilitation center may have relayed this information to LSU, but she does not know whether that occurred.  (Owens  70-71, 86)  Owens said she is "95% sure" that she eventually (not at first) shared Doe's name with her counselor or someone at the rehab.  (Owens 71) Owens also disclosed the incident to her father during rehab, but she did not disclose Doe's name at that time.  (Owens 73)  Prior to April 2017, Owens had not told anyone at LSU that she had been sexually assaulted by Doe.  (Owens 86)

LSU first learned of Owens' allegations when her father disclosed Owens' alleged "rape" to Julia Sell, at the SEC tennis tournament in Nashville, Tennessee, on April 19-23, 2017.  (Owens 77; J. Sell 171, 173-174)  Owens' father did not know the name of the football player, so he simply told Coach Sell that Owens reported in rehab that she had been raped by a football player.  (Owens 79; Segar II 391-392; J. Sell 137-139, 171-173)

After learning of the allegation from Owens' father, Sell reported the allegation to Miriam Segar, Senior Associate Athletic Director.  (Segar II 391-392)  Segar, in turn, made a report to

---

[7] Owens said she lied to Dr. Poole and to Coach Sell about her drug and alcohol use. (Owens 76-77, 136, 150)

Jennie Stewart, Title IX Coordinator.  (Segar 92; Stewart 215)  Segar said she was unsure how it should be handled, as Owens was no longer enrolled as a student, and Segar lacked any details about the assault, including the name of the assailant.  (Segar 241)  Stewart felt it would be inappropriate to interfere with Owens' treatment by contacting Owens in rehab.  (Stewart 216) Segar and Stewart expected that Owens would re-enroll at LSU, so Stewart informed Segar that once Owens re-enrolled, they would meet with her to gather information to make a Title IX report. (Segar II 392-396)  Owens attended in-patient rehab for four months from April 5, 2017 to August 7, 2017.  (Owens 101-102)  Prior to her discharge from rehab, Owens withdrew from LSU altogether.  (Owens 89-90, 92)  Her family moved her out of her apartment while Owens was in rehab, so Owens went straight to her home in Georgia.  (Owens 92-93)

### C.  Other Relevant Plaintiffs.

At the time of Owens' alleged assault, June 2016, the only other plaintiff with a prior experience related to Doe was Mize.  (Plaintiff Brennan's photo incident occurred in July 2016, and plaintiff Richardson's incident occurred in December 2016). (R. Doc. 182, ¶¶ 182, 187, 290, 298)  Thus, for heightened risk purposes, the only relevant plaintiff is Mize.  The Board adopts Mize's relevant facts contained in Summary Judgment No. 1, Section I of the Board's related memorandum by reference.[8]

## II.    STANDARD OF REVIEW.

The Board adopts by reference the Standard of Review discussion set forth in Section II of Summary Judgment No. 1, which is adopted herein by reference.

## III.    OWENS' REMAINING HEIGHTENED RISK CLAIM FAILS AS A MATTER OF LAW.

### A.  Owens Fails to Meet the Elements of a Heightened Risk Claim.

---

[8] For efficiency, the Board will hereafter refer to the related memorandum as Summary Judgment No. 1.

PD.41628100.2

Owens' "heightened risk" claim fails. *See* discussion in Section III.C. of Summary Judgment No. 1, adopted herein by reference.

Under a pre-assault Title IX heightened risk theory, a plaintiff must prove: (1) the defendant had actual knowledge of a substantial risk that sexual abuse would occur; (2) the harasser was under the defendant's control; (3) the harassment was based on the victim's sex; (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit; and (5) the defendant was deliberately indifferent to the harassment.[9]  Owens cannot meet these elements.

### a.  Element One: Owens Cannot Establish Actual Knowledge

The Board adopts by reference the authorities cited in Summary Judgment No. 1, Section III.C.a. "[P]laintiffs seeking to prove actual knowledge must clear a high bar."[10] "[A]ctual knowledge [ ] means that the school must have actual, not constructive, knowledge of sexual harassment."[11] Specifically, in a case like this one, where the "pre-assault" behavior is at issue, a school must have knowledge "that there is a substantial risk that sexual abuse would occur."[12]  The knowledge requirement cannot be satisfied by showing that the school "should have known" there was a substantial risk of abuse.[13]

LSU lacked knowledge of a substantial risk of sexual assault by Doe prior to Owens' incident.  Unfortunately, Mize's decision not to participate in an investigation or provide any information whatsoever deprived LSU of "actual knowledge" of any prior sexual misconduct by

---

[9] *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022) (internal citations omitted); R. Doc. 340, p. 39.
[10] *Kelly v. Allen Indep. Sch. Dist.*, 602 F. App'x 949, 953 n.3 (5th Cir. 2015).
[11] *Roe*, 53 F.4th at 341 (citing *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *K.S. v. Nw. Indep. Sch. Dist.*, 689 F. App'x 780, 784 (5th Cir. 2017)).
[12] *Roe*, 53 F.4th at 341 (quoting *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 775 (5th Cir. 2020)) (internal quotations omitted).
[13] *M.E.*, 840 F. App'x at 775.

PD.41628100.2

Doe.  *See* Summary Judgment No. 1, Section I.  Mize provided no account to LSU of her alleged assault by Doe or even that Doe was her perpetrator.  (Mize 206)  Segar only learned of Mize's alleged assault through Mize's friend, who witnessed nothing, and according to Mize, there were no witnesses to what occurred that night.  (Segar 268-269; Mize 103)  Thus, at most, LSU knew of a possibility of an alleged sexual assault, but constructive knowledge is not enough to meet Owens' burden.[14]  Indeed, the report that Segar received from Student A included that Mize had been assaulted by two men that night.  (Segar Decl. ¶ 7, Exh. 5) ██████████████

████████████████████████████████████████████████████████████

████████  (Mize 110-112)  Mize, as the only person with knowledge of what occurred, deprived LSU of "actual knowledge" when she chose not to participate in the Title IX process:

> Q:  And there isn't any description of events that happened that night that you ever gave to LSU, whether in an email, verbally, a written statement, or anything like that, to assist them in an investigation, correct?
>
> A:  No. I did not want an investigation.  I did not give them any information.

(Mize 133-134)

Mize did not share any details with LSU that would have given LSU actual "knowledge" that Doe might have sex with Owens while she was intoxicated.  *See* Summary Judgment No. 1, Section I and III (Segar Decl. ¶ 7, Exh. 5).  Importantly, as of this date, neither Brennan or Richardson had reported any conduct by Doe.

### b.  Element Two: Doe was not Under the Board's Control in this Context.

Title IX liability can only attach to student-on-student harassment when an educational institution exercises substantial control over both the harasser and the context in which the known harassment occurs.[15]  "[B]ecause the harassment must occur 'under' 'the operations of' a funding

---

[14] *Roe*, 53 F.4th at 341.
[15] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645 (1999).

recipient, the harassment must take place in a context subject to the school district's control."[16] Per the Supreme Court, "[t]he statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs."[17] Thus, Title IX does not cover student-on-student harassment that occurs off-campus, outside of a school program /activity, and outside of a context that is under the school's "substantial control."[18]

Owens' alleged assault occurred at her off-campus apartment after a night of drinking at an off-campus bar. (R. Doc. 182 ¶¶ 328-329, 333; Owens 45, 53)  Owens acknowledged that she met Doe at an off-campus bar, not through any LSU activity. (Owens 43-44) Courts in other circuits have consistently held that student-on-student sexual harassment that occurs off campus is not "'under the control' of the university," unless it is at an off-campus facility that the university controls.[19]  Although a school may exercise substantial disciplinary control over a student beyond the campus boundaries, it does not follow that the school exercises substantial control over conduct occurring in a *private, off-campus apartment complex, where students happen to live*.[20]  Owens

---

[16] *Id.* (quoting 20 U. S. C. § 1681(a); § 1687 (defining "program or activity") (other citations omitted).

[17] *Davis*, 526 U.S. at 644-645.

[18] *See id.* Conversely, student misconduct that "occurs during school hours and on school grounds" is a context in which the funding recipient retains substantial control. *Id.* at 646.

[19] *Roe v. St. Louis Univ.*, 746 F.3d 874, 884 (8th Cir. 2014) (no control over rape which occurred during a private party at an off-campus apartment); *Garrett v. University of South Fla. Board of Trustees*, 824 Fed.Appx. 959, 960, 965 (11th Cir. 2020) (no control over sexual assault occurring at off-campus apartment); *Samuelson v. Oregon State University*, 725 F. App'x 598, 599 (9th Cir. 2018) (no control where rape occurred at an off-campus party); *Doe v. Univ. of Missouri*, 2022 WL 4043458, at *15 (W.D. Mo. Aug. 30, 2022) (where almost all interactions occurred off campus, no control over harassment, even where school had very close disciplinary control over the student athlete at issue); *compare with Wreckhorst v. Kansas State Univ.*, 241 F. Supp. 3d 1154, 1167-68 (D. Kan. 2017) (control existed over off-campus fraternity house); *Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1177 (10th Cir. 2007) (control existed over recruiting activities off campus). As a note, some courts have cited to cases where off-campus conduct was found a violation of Title IX. In many such cases, the argument that the school lacked "control" was not raised to the district court.

[20] In *Doe v. Board of Suprvs. of the Univ. of La. Sys., et al.*, 2023 WL 143171, at *12 (M.D.La. Jan. 10, 2023), the court was "not persuaded" by the "one case" cited by the defendant to show that off-campus student-on-student sexual assault is not actionable under Title IX.  Here, though, the Board submits more robust authorities showing that off-campus activity is not covered under Title IX in this context.  In addition, the *Doe* case involved different facts.  There, the court focused on the fact that the plaintiff initially met the perpetrator for study sessions in the library on campus,

cannot show the Board exercised substantial control over Doe in the context of an off-campus apartment that had no affiliation to LSU other than that the parties happened to attend LSU.

### c. Element Four, Part I: The Alleged Conduct was not Severe, Pervasive, and Objectively Offensive

The Board does not intend to minimize the seriousness of an alleged sexual assault, but the single incident alleged by Owens does not meet the Title IX standard for being "severe, pervasive, *and* objectively offensive" harassment.[21] Title IX cases "are based on unwelcome sexual advances so severe and pervasive as to interfere with a student's educational atmosphere and opportunities."[22] Under *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, the Supreme Court made clear that the initial single incident is not sufficient to result in liability under Title IX. The Supreme Court expressly required that the harassment be pervasive to avoid imposing liability for a "single instance," even if that single instance is severe.[23] "A 'single instance of sufficiently severe one-on-one peer harassment' cannot have such a systemic effect [of denying equal access to an education] in light of 'the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment.'"[24] The Fifth Circuit has stated that only those claims involving "pervasive" and "widespread" conduct with the "systemic effect of denying the victim equal access to an educational program or activity" are actionable, finding that sexual harassment cannot be based on a single incident.[25]

---

which locations were only available because the assailant was an LSU student. *Id.* at *10. Here, Owens met the alleged perpetrator at an off-campus bar. (R. Doc. 182, ¶¶ 329-332).

[21] *Davis*, 526 U.S. at 652 (emphasis added).

[22] *Lewis v. Louisiana State Univ.*, 2021 WL 5752239, at *19 (M.D. La. Dec. 2, 2021) (citations omitted).

[23] *Davis*, 526 U.S. at 652-53. *But see Roe*, 53 F.4th at 342-343 (acknowledging circuit split on "whether 'a single instance of sufficiently severe one-on-one peer harassment' could ever rise to the level of 'pervasive' harassment'" and noting that three circuits (6th, 8th, and 9th) have held there must be "**multiple** incidents of harassment; one incident of harassment is not enough" (emphasis in original) (citations omitted)).

[24] *Hill v. Cundiff*, 797 F.3d 948, 972 (11th Cir. 2015) (quoting *Davis*, 526 U.S. at 652–53).

[25] *Carmichael v. Galbraith*, 574 F. App'x 286, 289-290 (5th Cir. 2014) (citing *Davis*, 526 U.S. at 652-654).

9

Moreover, Owens alleges intoxicated sex that she did not characterize as rape until the following year. (Owens 73, 85, 166)  She has acknowledged that she may have been willing to engage in the activity at the time, including that she performed oral sex without force. (Owens 56-57, 160-162)  While her intoxication and drug use likely affected her behavior, she acknowledges that she was "not blackout-drunk," was able to stand, walk, speak, text, and perform oral sex. (Owens 53, 58, 62-63, 67-68, 161) She does not know what she said to Doe prior to having sex with him, but she knows that afterward, she told Doe "not to forget about her" when he left. (Owens 160-161)  While Owens characterized this event as rape, the context does not necessarily lead to that conclusion as opposed to it being two individuals who may have both been intoxicated and who mutually engaged in sexual intercourse.  Owens admitted that she, herself, did not view it as rape until she was in counseling the following year in rehab.  (Owens 166)  She believes now that it was not consensual because she was intoxicated, but notably, ███████████████████ ███████████████████████████████████. (Owens 167)

The Board draws this Court's attention to guidance of the Association of Title IX Administrators ("ATIXA"), whose model policies regarding consent discuss incapacitation that would prevent consent and state that "incapacitation is . . . not synonymous with intoxication, impairment, blackout, and/or being drunk."[26]  If Owens had reported, LSU could have timely and fully investigated the consent issue, including Doe's state at the time.  Under these circumstances, it is difficult to conclude that Owens' alleged intoxicated sex with Doe was "objectively offensive" or "sufficient severe," especially when Owens did not view it as such for many months. (Owens

---

[26] Assoc. of Title IX Adm's, *One Policy, Two Procedures Model Policy*, p. 32, https://www.atixa.org/resources/ atixa-one-policy-two-procedures-1p2p/.

PD.41628100.2

73, 85, 166)[27]  She testified that the first time she had negative feelings about the sexual encounter

with Doe (in June 2016) was in rehab in April 2017:

> Q:    So you're saying the negative feelings started the first time you went to
> rehab?
>
> A:    Yeah.

(Owens 166)[28]

### d. Element Four, Part II: Plaintiff Cannot Meet her High Burden of Showing Deliberate Indifference That Caused Harassment.

### i. No Deliberate Indifference.

Owens also cannot show that the Board was deliberately indifferent to prior sexual

misconduct by Doe.  As this Court has acknowledged, "deliberate indifference in the Title IX

context is a 'high bar' and requires the defendant's response to be 'clearly unreasonable in light of

the known circumstances.'"[29] "Title IX does not require flawless investigations or perfect

solutions."[30] Rather, the school's response, or lack thereof, must be "clearly unreasonable in light

of the known circumstances."[31] This standard is high in order to ensure institutions are liable for

their own official decisions and not for their students' independent actions.[32] The institution's

conduct "must amount to an intentional choice, not merely an unintentionally negligent

oversight."[33] Fifth Circuit precedent establishes that "[a]ctions and decisions by officials that are

---

[27] On an intake form at the rehab center, Owens was asked whether she had any "bad sexual experiences," and Owens admits that she responded "no."  (Owens 135)

[28] ███████████████████████████████████████████████████████████ (Owens 42)  However, ███████████████████████████████████████████████████ (Owens 143)  Notably, ███████████████████████ (Owens 142-144)

[29] R. Doc. 340, p. 28 (quoting *Roe*, F.4th at 341 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011)).

[30] *Sanches*, 647 F.3d at 170 (citation omitted).

[31] *Davis*, 526 U.S. at 648.

[32] *Davis*, 526 U.S. at 643 (quoting *Gebser,* 524 U.S. at 290-91).

[33] *James v. Harris Cnty.*, 577 F.3d 612, 617–18 (5th Cir. 2009) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)); *see Ramos v. Webb Consol. Indep. Sch. Dist.,* 724 F. App'x. 338, 340 (5th Cir. 2018) (applying same in Title IX context).

merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference," and neither do negligent delays, botched investigations of complaints, or responses that could have been improved.[34]

LSU's handling of Mize's situation, the only conduct by Doe prior to Owens' incident, negates Owens' deliberate indifference element. The undisputed facts show the following response to Mize:

- January 26, 2016:

  o Within one hour of receiving the report from Student A, Segar met with Student A in person to obtain details about the potential issue. Student A insisted that the alleged victim did not want to report. (Segar Decl. ¶ 7, Exh. 5)

  o Segar notified Student Affairs of the concern. (Segar Decl. ¶ 7, Exh. 5)

  o Segar emailed Student A and shared detailed information on the LSU Lighthouse program and the LSU Policy on Sexual Misconduct. (Segar Decl. ¶ 7, Exh. 5)

  o Segar reached out to Fuentes-Martin to update her on the situation. (Segar Decl. ¶ 7, Exh. 5)

- January 27, 2016:

  o Segar spoke with Fuentes-Martin, and they discussed that they needed an account from the alleged victim about what happened.  (Segar 267)

  o Segar again met with Student A to ask if she spoke with the alleged victim about resources and reporting the incident.  Student A was adamant that the alleged victim [Mize] did not want assistance and did not want to report.  Segar asked

---

[34] *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (internal citations omitted).

Student A to again speak with the alleged victim about reporting to the university or to the police. (Segar Decl. ¶ 7, Exh. 5; Mize 105, 108) The friend said she would do so. (Segar Decl. ¶ 7, Exh. 5)

- January 28, 2016:
  - Student A reported to Segar by text that "she [Mize] really isnt' wanting to have anything to do with it." (Segar Decl. ¶ 7, Exh. 5)

- January 29, 2016:
  - Fuentes-Martin asked Lighthouse representative, Sierra Fowler, to reach out to Mize. (Segar Decl. ¶ 7, Exh. 5)

- February 1, 2016:
  - Fuentes-Martin reached out to Mize by email, saying she wanted to discuss all of the services provided by LSU to address Mize's concerns, to offer medical and psychological care, to offer academic support, and to discuss options for investigating the incident. Fuentes-Martin asked Mize to schedule a date and time to meet with Fuentes-Martin and provided Mize with her phone number and email address. (Mize Exh. 2)

- February 5, 2016:
  - Mize finally responded, at which time Mize apologized for her delay, stated that she had thought about everything and weighed her options, and she did not want to move forward with an investigation. Mize assured Fuentes-Martin that she had met with the Lighthouse Program and knew all of the resources available to Mize. (Mize 118-120; Mize Exh. 3)

    o   Fuentes-Martin responded to Mize and asked Mize to come back to Fuentes-Martin if she changed her mind.  (Mize 124; Mize Exh. 3)

Mize never returned to Fuentes-Martin or to anyone else to file a complaint against Doe or to provide any details for an investigation.  (Mize 124)

       As shown, Segar and Fuentes-Martin endeavored to provide, and did provide, Mize with information about the services and resources available at LSU for victims of sexual assault.  Their communications with Mize conveyed their interest in obtaining information from Mize and moving forward with an investigation.   Segar's persistent communications with Student A demonstrate that Segar did not want to let the situation drop. Similarly, Fuentes-Martin's communications conveyed her interest in hearing from Mize.  Fuentes-Martin stated:

- "I would like to encourage you to schedule an appointment with me so we can discuss this matter further."

- "Please know that LSU is concerned for all of its student's [sic] and wishes to provide support and services through difficult challenges."

- "I urge you to contact my office at (225) 578-XXXX to schedule a date and time that you can meet and discuss further."

- "If you have any questions or just need to get further support and resources, please contact me either by phone or email at mari@lsu.edu."

(Mize Exh. 2) These statements are the antithesis of "indifference."

       Moreover, Mize's own testimony refutes any deliberate indifference by LSU. Mize testified that she had no issue with LSU's response at the time:

    Q:  At the time that you – at the time that LSU was interacting with you to offer resources and ask you to participate in investigations, is there anything you think they did wrong at that point in time?

    A:  At that point in time, no.

(Mize 133)  Instead, Mize testified, "I was responsible for my decisions to use or not use the resources, . . ."  (Mize 184)

At all times, LSU acted in a manner that respected Mize's wishes but attempted to gain her cooperation. The institution is not liable for a plaintiff who chooses not to participate in the Title IX process.[35]

Owens argues that LSU was deliberately indifferent by not including Doe's name in the internal Maxient report regarding Mize, suggesting that Segar concealed Doe's name. The undisputed evidence shows that Segar communicated Doe's name to Fuentes-Martin. (Segar Decl. ¶ 7) Although Segar did not include his name in her write-up of the events, she did not conceal it from Title IX. (Segar 267) Owens can cite no Title IX obligation **requiring** the presence of Doe's name in the internal, online submission. Even if including Doe's name in the reporting system would have been a better practice, Title IX liability is **not** premised on whether LSU violated best practices.[36] The Supreme Court "has never held 'that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements.'"[37]

This alleged failure to include Doe's name in the online report (particularly when Mize was unwilling to give an account of the incident) falls far short of the legal standard for Title IX liability. The Fifth Circuit has made clear that erroneous actions do not amount to deliberate indifference.[38] Schools may avoid liability by responding reasonably to a risk of harm, even if the response is unsuccessful.[39]

### ii. No Causation.

---

[35] *Roskin-Frazee v. Columbia Univ.*, 474 F.Supp. 3d 618, 627 (S.D.N.Y. 2019) (finding no deliberate indifference where university respected privacy of student who clearly communicated to university employees that she did not want to report the alleged assault and withheld information); *JD1 v. Canisius Coll.*, 2022 WL 2308902, at *9 (W.D.N.Y. June 27, 2022) ("[W]here a plaintiff withholds the facts of any specific sexual assault and indicates that she does not wish to have it reported, the institution cannot be liable for honoring her request for privacy and taking no further action.") (internal quotations omitted).
[36] *See Sanches*, 647 F.3d at 170.
[37] *Id*. at 169 (quoting *Gebser*, 524 U.S. at 292)
[38] *See I.F.*, 915 F.3d at 369.
[39] *See Doe*, 964 F.3d at 359.

PD.41628100.2

*Davis* also requires a causation showing—a plaintiff must show that a school's alleged "deliberate indifference subject[ed] its students to harassment."[40] Evidence that a plaintiff was subjected to harassment because of deliberate indifference is a necessary causation element for a Title IX claim.[41] Critical to this inquiry is what occurred **after** the school's actual knowledge.[42]

Owens cannot show that she was subjected to severe harassment **because of** any alleged indifference. As of the date of Owens' alleged assault, LSU had no accuser account, no witnesses, and no information that would support imposing discipline on Doe. Owens cannot causally connect Doe's name not appearing in Maxient to her alleged harm, particularly where Fuentes-Martin, Deputy Title IX Coordinator for Students, had the knowledge of the potential perpetrator. (Segar Decl. ¶ 7) Accordingly, Owens cannot show that the absence of Doe's name in Mize's Maxient report put Owens at a heightened risk of harm.

Similarly, Owens lacks evidence that any discipline to Doe following Mize's incident would have stopped Owens from meeting him at an off-campus bar, allowing him to come to her off-campus apartment, engaging in oral sex, and then having intoxicated intercourse. (Owens 14-16, 42-46, 50-52, 54-62, 56-57) Even if Owens speculates that discipline administered to Doe would have resulted in his removal from campus, Owens did not meet Doe on campus, so her "unfettered access" argument is inapplicable. (Owens 43-44)

### e. Plaintiff Fails her Burden of Showing a Deprivation of Educational Benefits.

Finally, Owens must show the existence of an injury, in that the harassment deprived her of "access to the educational opportunities or benefits."[43] To satisfy this requirement, the

---

[40] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645 (1999).
[41] *Id.*; *Doe I v. Baylor Univ.*, 240 F.Supp. 3d 646, 660 (W.D. Tex. 2017).
[42] *Doe v. Univ. of Kentucky*, 959 F.3d 246, 251 (6th Cir. 2020*); Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 622 (6th Cir. 2019).
[43] *Davis*, 526 U.S. at 650.

harassment must have had a "concrete, negative effect" on Owens' education.[44]  Owens "guesses"

that the educational opportunities she was not able to participate in were the classes she did not

attend when she withdrew from school for rehab.  (Owens 230-231)[45]  As indicated above, Owens

withdrew from LSU because of a years-long substance abuse problem (pre-dating her alleged

assault), which necessitated in-patient rehabilitation for four months.  (Owens 95, 102)  She

testified that she did not return to LSU after her rehab because there were too many temptations

that created a risk of relapse if she returned to LSU.  (Owens 90, 92-93)  Owens cannot show

concrete evidence that she suffered a deprivation of educational benefits due to Doe, as opposed

to her pre-existing addiction.

## B. No Other Heightened Risk Theory is Available to Owens.

Collectively, Plaintiffs seem to base their heightened risk claims on allegations that LSU

created a heightened risk of sexual misconduct by maintaining a "general custom or official policy"

of deliberate indifference to reports of Title IX violations, seemingly merging two claims.  (*See,

e.g.*, Complaint, ¶ 926)  Notwithstanding, the Board also addresses Plaintiffs' insufficient "official

policy" allegations.

### a. The Fifth Circuit Does not Recognize Heightened Risk Based on an Official Policy.

The Fifth Circuit has not recognized a claim for Title IX heightened risk based on an

official policy, and this Court's ruling on the Board's motion to dismiss does not suggest that an

official policy claim remains in this case.  *See* discussion in Summary Judgment No. 1, Section

III.D, adopted herein.

---

[44]*Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 585 (5th Cir. 2020) (quoting *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015)).
[45] Her Complaint alleges that "Owens left LSU halfway through her senior year in March 2017 because she could not bear to be in close proximity to her rapist." (R. Doc. 182, ¶ 345)  In her deposition, Owens testified consistently that she left LSU to attend rehab for her addictions. (Owens 28, 87, 95, 102)

**b. Owens Cannot Establish an Official Policy of Deliberate Indifference to Reports of Sexual Misconduct.**

Owens cannot establish that the Board "maintained a policy of deliberate indifference to reports of sexual misconduct."[46]  *See* discussion in Summary Judgment No. 1, Section III.D, adopted herein, including the discussion of LSU's PM-73 policy. The Board's policies were promulgated to students and staff alike before and after Owens' alleged harassment.[47] (Owens 18, 217-219; Owens Exhs. 8-11; Board 30(b)(6) 29-30, 53-54; Board 30(b)(6) II 259-261; Stewart 38-41)  Despite PM-73, Plaintiffs' Complaint generally references the following deficiencies: (i) an alleged failure to report complaints, conduct investigations, and establish grievance procedures; (ii) training; and (iii) LSU's response to a 2017 Internal Audit, all of which fail to satisfy Plaintiffs' burden. (R. Doc. 182, ¶¶ 922, 923, 926)  However, Owens has not pointed to any specific, non-conclusory policy, let alone one that caused her harm.  *See* discussion in Summary Judgment No. 1, Section III.D, adopted herein.

**i. General Reference to Failure to Report Complaints, Initiate/Conduct Investigations and Grievance Procedures.**

Plaintiffs' Complaint generally references shortcomings in reporting, investigations and grievance procedures with no facts to tie those general categories to Owens's claims. (R. Doc. 182, ¶¶ 926, 931) The evidence is undisputed that Owens had the option to report Title IX claims through multiple mechanisms, including directly to a Title IX representative.  (Board 30(b)(6) 51-52)  Likewise, information about how to contact the campus Title IX office was provided to students and was housed on the Student Advocacy and Accountability website, Dean of Students website, HRM website, and on the Title IX website at various points.  (Board 30(b)(6) 53-54)

---

[46] *See Karasek v. Regents of the Univ. of Ca..,* 956 F.3rd 1093, 1112 (9th Cir. 2020).

[47] *See Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, Civ. A. No. H-18-2850, 2020 WL 7043944, at *11 (S.D. Tex. Dec. 1, 2020), aff'd in part, rev'd in part by *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334 (5th Cir. 2022).

PD.41628100.2

Owens never reported her rape allegations while she was enrolled at LSU. (Owens 40, 86, 98, 207) She can offer no evidence of failures in reporting complaints received by authorized persons, investigations, and grievance procedures, that can constitute an official policy **and** that can be causally connected to any harm that Owens allegedly suffered. Owens is unable to show that LSU maintained a general policy of deliberate indifference to reports of sexual misconduct.

To the extent Owens alleges an official policy of not recording information in Maxient, Mize is the only plaintiff who alleges this occurred. Indeed, Doe's name appeared in the LSU police record for plaintiff Brennan as well as the Maxient report that disclosed Brennan's allegation (although this event occurred after Owen's alleged rape). (Brennan Exh. 6; Brennan 190-191; Sanders Decl. ¶ 10, Exh. 5) The fact that Doe's name appeared in the records associated with Brennan's allegation demonstrates that no such policy existed. Moreover, Student A's name is also missing from the Maxient record, demonstrating no "policy" to omit the alleged accused's name. (Segar Decl. ¶ 7; Exh. 5)

###### ii.    Training.

Plaintiff cannot establish an official policy of deliberate indifference with relation to training. The Board provided training beginning in at least 2014, which training took place on an annual basis. (Board 30(b)(6) 30-32, 36-37) For ease of attendance, LSU administered the trainings electronically, the content of which was reviewed by Title IX. (Board 30(b)(6) 33, 36-37) In addition to the campus-wide training, some departments, such as Athletics, Greek Life, and Residential Life, administered additional training to mitigate additional risks. (Board 30(b)(6) I 38-39, 41-43) Many of these trainings were developed by the Title IX office and included the "big three topics" of consent, healthy relationships, and bystander intervention. (Board 30(b)(6) I 39, 42-44) Like other students, Owens and her alleged harasser, Doe, received LSU Title IX training.

19

(Sanders Decl. ¶ 3)  Because of their roles as student athletes, Doe and Owens received **additional** training through the Dan Beebe Group/Protection for All. (Segar II 348-349, 359-360; Segar Exh. 17; Segar Decl.¶ 5, Exhs. 2-3; Owens 18, 217-219; Owens Exhs. 8-11)  Owens cannot show an official policy of deliberate indifference to training, nor can she causally link an alleged lack of training to her injuries.  She lacks evidence that additional training on Title IX reporting or otherwise **prior to Owens' assault** would have led to a different result. (*See* Board 30(b)(6) I 40-41)

### iii.   Internal Audit.

*See* discussion in Summary Judgment No. 10, Section III.C.b.iii, adopted herein.  The 2017 Internal Audit (dated September 13, 2017) and LSU's response are irrelevant to Owens' claims, since her alleged harassment occurred **before** the audit.[48] (R. Doc. 182-1, p. 164-171)  Owens lacks any evidence from the 2017 Audit findings of the Board failing to train responsible employees.  Owens also lacks any basis for claiming an official policy, and she lacks any causal connection to any harm that Owens allegedly suffered.

### c.  Element Two: Owens Cannot Show a Known or Obvious Risk.

Not only can Owens not establish an "official policy" of deliberate indifference, she also cannot show that the risk of sexual misconduct that would result from such policy was "known or obvious."[49]  As indicated above, Owens was the second of the Plaintiffs, or any student for that matter, to have allegedly been assaulted by Doe.  (R. Doc. 182, ¶¶ 243-248)  Importantly, LSU had only received a single, third-hand report about Doe prior to Owens' alleged experience.

---

[48] *Tackett v. Univ. of Kan.*, 234 F.Supp. 3d 1100, 1107 (D. Kan. 2017) (finding no institutional liability for heightened risk of sexual assault where alleged policies "played no part in plaintiff's rape").
[49] *See, e.g., Doe v. Texas A&M Univ.*, 2022 WL 5250294, at *6 (S.D.Tex. Oct. 6, 2022).

PD.41628100.2

(Board 30(b)(6) 48-49)[50]  Mize's situation did not create a known risk because Mize was unwilling to come forward and tell her story.  *See* Summary Judgment No. 1, Section I.  As discussed, a single, unsubstantiated account from a third-party does not create a known or obvious risk of Owens' sexual assault, particularly given that Owens' alleged assault did not occur in any context that could be considered sanctioned or sponsored by the university.

Although Plaintiffs collectively have pointed to other general allegations of sexual misconduct, they have no evidence of widespread, systemic conduct that would put LSU on notice **at that time** of a particularized risk of sexual misconduct in the context that Owens alleges.[51] Owens' generalized allegations of widespread, systemic conduct do not meet her burden.

### d.  Element Three: Owens Has Not Shown that the Alleged Misconduct took Place in a Context Subject to the School's Control.

For the reasons set forth in Section II.A.b, the Board did not control the circumstances of Owens' alleged assault.

### e.  Element Four: Owens Cannot Show Causation.

An official policy or custom must have caused the alleged assault, as opposed to "simply misconduct that happened to occur [at the school] among its students.'"[52]  The standard for official policy liability under Title IX cannot "mean that recipients can avoid liability only by purging their

---

[50] *See Doe*, 2022 WL 5250294 (S.D. Tex. 2022) (finding no *Karasek/Simpson* liability where there were no allegations that TAMU received reports of sexual misconduct by similarly situated students, that TAMU failed to address or actively concealed reports of sexual misconduct, that TAMU received reports of sexual misconduct committed by plaintiff's assailants, or that TAMU had an official policy or custom that created a heightened risk of assault in plaintiff's program).

[51] *See e.g.*, *C.T. v. Liberal Sch. Dist.*, 562 F.Supp. 2d 1324, 1340 (D. Kan. June 10, 2008) (finding that weight training program at volunteer coach's home did not "bear the element of encouragement of misconduct" nor did it "create [ ] a risk of abuse that would have been obvious to school officials"); *Tackett*, 234 F.Supp. 3d at 1108 (rejecting argument for institutional liability based on the school's authority over its athletes and that it "should have known" of the heightened risk of assault at popular off-campus apartment complex for football players "based on the stereotypical assumption that football players are more prone to commit sexual assault" because such argument is based on theories of respondent-superior and constructive notice, both of which the Supreme Court rejected in *Gebser*, 524 U.S. at 282).

[52] *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1174 (10th Cir. 2007).

schools of actionable peer harassment."[53]  For the reasons set forth in Section III.A.d.ii, Owens cannot establish any causal link between a purported policy of the Board and the harm she alleges. Owens and Doe each received LSU's training on Title IX. (Owens 18, 217-218; Segar Decl. ¶ 5, Exhs. 2-3)  Plaintiff's generalized statements relating to training, LSU's 2017 audit, and failure to report complaints or to engage in investigations could not have prevented Owens' harm.

Owens also cannot establish any causal link between her alleged sexual assault and her allegations that Doe's name was not placed into the Maxient system regarding Mize.  In particular, Owens cannot show that she would have access to this Maxient information about Doe in the first place, nor can she show that the inclusion of this information about Doe in Maxient would have had any effect on Owens' off-campus occurrence with Doe.  Owens cannot credibly show that additional employee training or different investigation or reporting would have changed her situation.[54]

### C. Owens's Claims are Prescribed.

The Board adopts by reference the authorities set forth in Summary Judgment No. 1, Section III.B.  Owens' alleged harassment took place on June 28, 2016, yet she did not file suit until almost five years later, on April 26, 2021. (R. Doc. 182 ¶ 328-333; R. Doc. 1)  Therefore, Owens can only survive prescription challenges if the claim accrued at a later, timely date.  Owens fails to show a later accrual date.

### a. The Husch Blackwell Report is Irrelevant to the Timeliness of Plaintiff's Claims.

*See* discussion in Summary Judgment No. 1, Section III.B.a, adopted herein.  The only Doe-related information in the Husch Blackwell Report that predated Owens was the absence of

---

[53] *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).
[54] *Tackett*, 234 F.Supp.3d at 1107 (finding no institutional liability for heightened risk of sexual assault where alleged policies "played no part in plaintiff's rape").

Doe's name in the Maxient system for Mize. (R. Doc. 1-1, p. 97) This fact is merely tangential and not a salient "fact that would support" or delay accrual of Owens' claim. Indeed, the Husch Blackwell Report merely questioned whether the inclusion of Doe's name in Maxient would have impacted disciplinary charges against Doe should subsequent events occur. (R. Doc. 1-1, p. 102) In other words, would the presence of Doe's name in the Mize situation lead to discipline of Doe **after** Owens' situation? Either way, that inquiry relates to post-assault discipline, not evidence to support Owens' pre-assault heightened risk claim. Further, even if Doe's name had been included, Owens would not have been privy to the Maxient information **pre-harassment**.

Otherwise, Owens alleges that she learned the following from the Husch Blackwell Report: (1) that Segar had knowledge of others who had reported abuse by Doe; (2) that Stewart had knowledge of harassment that **Owens and others suffered**; (3) Doe assaulted more students "**following Owens's report**"; (4) LSU failed to train Owens on the resources available to her "**as a survivor"**; and (5) LSU's Title IX policy is meant to prevent the emotional distress that Owens endured. (R. Doc. 183 ¶ 360 (emphasis added)) The first four allegations relate to **post-assault** information, none of which is relevant to a heightened risk claim (with the exception of Segar's knowledge of Mize addressed above).[55] The last allegation merely suggests that Owens was ignorant of the purpose of Title IX, a federal law, which does nothing to support her claim that the Husch Blackwell Report somehow disclosed information that was otherwise unavailable. Because the Husch Blackwell Report revealed no **pre-assault** information that affected Owens' knowledge, she cannot avoid prescription on her heightened risk claim.

### b. Plaintiff's Claims Accrued in 2016.

---

[55] For the reasons above, LSU did not have "actual knowledge" of Mize's alleged assault by Doe.

Owens pleads her alleged assault by Doe occurred in June 2016.  (R. Doc. 182, ¶ 328, 333)

She re-classified her sexual interaction with Doe as rape in April 2017, when she was in rehab and

evaluated her intoxication at the time of the encounter.  (Owens 73, 85, 166)  In June 2016, Owens

knew of her injury, knew of the perpetrator, knew of her intoxication, and knew what training she

had received.  While she claims she never knew what LSU resources were available to her, she

also admits she never once looked at LSU's website to view the services offered.  (Owens 207,

212-213)  In any event, she believed she had not been offered resources, and she could have

investigated whether resources were available or missing in 2016.  Owens knew the salient

information related to her claim in July of 2016, and any tangential information she may have later

learned does not delay her accrual.  She has offered no reason she could not have further

investigated her claims in 2016.  Therefore, her April 26, 2021 lawsuit is untimely.

## IV.    CONCLUSION

For these reasons above, Owens' claim fails as a matter of law.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:    /s/ *Susan W. Furr*
Susan W. Furr Bar Roll No.  19582
Karleen J. Green Bar Roll No.  25119
Shelton Dennis Blunt Bar Roll No. 21230
Michael B. Victorian Bar Roll No. 36065
Molly C. McDiarmid Bar Roll No. 36426
*Special Assistant Attorneys General*
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285

PD.41628100.2

Facsimile: 225 381 9197
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: michael.victorian@phelps.com
Email: molly.mcdiarmid@phelps.com

ATTORNEYS FOR THE BOARD OF
SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on

June 30, 2023, with the Court's CM/ECF system.  Undersigned counsel will electronically send

an electronic copy of the same to plaintiffs' counsel.

/s/ *Susan W. Furr*
Susan W. Furr

25