Case 3:21-cv-00242-WBV-SDJ    Document 373-4 *SEALED* 07/10/23    Page 1 of 47
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

May 14, 2018

Jade Lewis
Sent electronically to jademlewis@gmail.com

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017339601

Dear Jade,

My name is Jeff Scott and I work with the University on investigating cases that involve potential violations of LSU's Policies on sexual misconduct. Information has been forwarded to my office that you may have been involved in and/or have knowledge of a situation that was a potential violation of these policies on April 3, 2018.

I would like to speak with or meet with you regarding this incident. Please let me know your availability for this week May 14-18. 2018.

**Permanent Memorandum 73**
Louisiana State University is committed to providing a learning, working and living environment that promotes integrity, civility, and mutual respect in an environment free of discrimination on the basis of sex and sexual misconduct, which includes sex discrimination, sexual harassment, dating violence, domestic violence, sexual assault, stalking and retaliation. LSU prohibits sex discrimination and sexual misconduct. See the PM-73 policy attached to this letter.

For our requested meeting with you, I wanted to highlight that per the PM-73 Policy, you are welcome to have someone attend the meeting if you feel the need for support. Please note the policy section on "Advisor of Choice" about the role of an advisor in PM-73 meetings. If you would like an advisor but do not have one available to you, please click here.

Your safety and well being is our priority. I have listed out some resources below.

1. The Lighthouse is a confidential resource provided through the Student Health Center, and they can provide you with any type of assistance you need as far as filing a report, seeking outside assistance or simply having a confidential source to speak with. If you are interested in meeting with a Lighthouse representative, contact Susan Bareis at sbareis@lsu.edu.

2. If you feel you need assistance with classes or anything on the academic side, the Office of Disability Services can assist you in that respect. Reasonable accommodations may include but are not limited to; consideration for absences, alternate testing formats or locations and/or other arrangements as needed to meet your course requirements. You can contact Benjamin Cornwell at bjcornw@lsu.edu.

3. C.A.R.E (Communicate, Assess, Refer, Educate) provides intervention and assistance to students in distress, crisis, or of concern. You can contact Tracy Blanchard at tblanch@lsu.edu.



EXHIBIT

**EXHIBIT A**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

4. Please see the following website which lists campus and community resources available to you: http://students.lsu.edu/deanofstudents/title-ix/resources.

I understand that this is a lot of information. Please feel free to contact me if you have any questions. I look forward to hearing from you to set up a meeting time. I can be reached at jscott11@lsu.edu or at (225) 578-3328.

Jeffrey Scott
Title IX Lead Investigator
Louisiana State University
3810 West Lakeshore Drive, Ste. 123
Baton Rouge, LA 70803
Office: 225-578-3328
jscott11@lsu.edu | lsu.edu

# EXHIBIT A

BOS 003315

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER



# LSU

——— Office of the ———

## President

Permanent Memorandum No. 73 (Supersedes PM-73 dated June 18, 2014)

Effective December 15, 2015

F. King Alexander, President *F. King Alexander*

## TITLE IX AND SEXUAL MISCONDUCT POLICY

### POLICY STATEMENT

In accordance with Title IX and other applicable law, Louisiana State University ("LSU") is committed to providing a learning, working, and living environment that promotes integrity, civility, and mutual respect in an environment free of discrimination on the basis of sex and sexual misconduct which includes sexual assault, sexual harassment, dating violence, domestic violence, stalking and retaliation.

LSU prohibits sexual misconduct and sexual discrimination and has implemented this policy and procedure to prevent acts of sexual misconduct and sexual discrimination and to take prompt and appropriate action to investigate and effectively discipline those found to have engaged in such conduct in a manner consistent with the law and due process.

LSU shall provide support and assistance to those who complain of sexual misconduct and shall report instances of sexual misconduct in accordance with law. This policy applies to all persons without regard to sexual orientation, gender identity and/or gender expression. Sexual misconduct violates an individual's fundamental rights and personal dignity. LSU considers sexual misconduct in all of its forms to be a serious offense. This policy has been developed to reaffirm these principles and to provide recourse for individuals whose rights have been violated. This policy establishes a mechanism for determining when rights have been violated in all LSU functions, including employment, student life, campus support services, LSU programs and/or an academic environment.

### NONDISCRIMINATION NOTICE

LSU does not discriminate on the basis of race, creed, color, marital status, sexual orientation, gender identity, gender expression, religion, sex, national origin, age, mental or physical disability, or veteran's status in its programs and activities and provides equal access to its programs and activities. Inquiries regarding the non-discrimination policy should be directed to the individual or individuals designated in each campus' applicable policy.

1

**EXHIBIT A**

Case 3:21-cv-00242-WBV-SDJ    Document 473-4    10/13/23    Page 4 of 47
Case 3:21-cv-00242-WBV-SDJ    Document 373-4 *SEALED* 07/19/23    Page 4 of 47
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**FREEDOM OF SPEECH**

This policy is not intended to infringe on any form of speech that is protected by the First Amendment of the United States Constitution nor to regulate protected speech.

I.    **JURISDICTION**

     A.   This policy shall apply to conduct that occurs on an LSU campus, at LSU sponsored activities, and/or when the student or employee is representing LSU. LSU shall have discretion to extend jurisdiction over conduct that occurs off campus when the conduct adversely or significantly affects the learning environment or LSU community and would be a violation of this policy and/or any applicable campus policy or code of conduct, if the conduct had occurred on campus. In determining whether or not to extend jurisdiction, LSU may consider, among other factors, its ability to gather information and affect a resolution. LSU may extend jurisdiction (over off- campus conduct) if the alleged conduct by the student or employee:

         1.   Involved violence or produced a reasonable fear of physical harm; and/or
         2.   Involved any other members of the LSU community or any academic work, records, documents, or property of LSU.

     B.   Each student shall be responsible for his/her conduct from the time of acceptance for admission through the actual awarding of a degree or departure from the University.
     C.   Employees are responsible for their conduct during work hours, on campus, at LSU-sponsored activities, and/or when the employee is representing LSU or when their conduct would adversely affect LSU's image, regardless of whether such conduct occurs on-campus or off-campus.
     D.   This policy also applies to any person who is both a student and an employee at LSU, arising out of, or in connection with, conduct in either or both of those capacities. Any violation of this policy may subject such person to disciplinary action, as applicable, in either or both of those capacities.

II.    **DEFINITIONS**

**"Sexual Misconduct":** A sexual act or contact of a sexual nature that occurs, regardless of personal relationship, without the consent of the other person(s), or that occurs when the person(s) is unable to give consent or whose consent is coerced or obtained in a fraudulent manner. For the purpose of this Policy, sexual misconduct includes, but is not limited to, sexual assault, sexual abuse, violence of a sexual nature, sexual harassment, non-consensual sexual intercourse, sexual exploitation, video voyeurism, contact of a sexual nature with an object, or the obtaining, posting or disclosure of intimate descriptions, photos, or videos without the express consent or the persons depicted therein, as well as dating violence, domestic violence and stalking, as well as crimes of a sexual nature as defined in Title 14 or the Louisiana Revised Statutes or at La. R.S. 44:51.

**"Advisor of Choice" or "Confidential Advisor":** A student or employee has the right to have an "Advisor of Choice" or a "Confidential Advisor" present during any meeting conducted under this policy.

**"Advisor of Choice":** This Advisor can be any person who the student or employee chooses but may not have personal involvement regarding any facts or circumstances of the alleged misconduct. This Advisor's only function shall be to assist and/or consult with the student or employee. This Advisor may not act

2



Case 3:21-cv-00242-WBV-SDJ    Document 473-4    10/13/23    Page 5 of 47
Case 3:21-cv-00242-WBV-SDJ    Document 373-4 *SEALED* 07/19/23    Page 5 of 47
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

as a spokesperson. This Advisor may be an attorney but participation shall be limited as stated above.

"**Confidential Advisor**":  A person trained in accordance with law and designated by the campus who the student or employee can choose to have support and advise them in accordance with law during the complaint process.  This Confidential Advisor may be present during any meeting conducted under this policy to assist and/or consult with the student or employee. This Confidential Advisor may not act as a spokesperson.

"**Coercion**": The use of express or implied threats, intimidation, or physical force which places an individual in fear of immediate harm or physical injury or causes a person to engage in unwelcome sexual activity. Coercion also includes administering a drug, intoxicant, or similar substance with the intent to impair that person's ability to consent prior to engaging in sexual activity.

"**Complainant**": Any student or employee who alleges a violation under this policy.

"**Consent**": Consent to engage in sexual activity must exist from the beginning to the end of each instance of sexual activity.  Consent is demonstrated through mutually understandable words or actions that clearly indicate a willingness to engage in a specific sexual activity.  Silence alone, without actions evidencing permission, does not demonstrate consent.  Consent must be knowing and voluntary.  To give consent, a person must be of legal age.  Assent does not constitute consent if obtained through coercion or from a person who the alleged offender knows or should reasonably know is incapacitated.  The responsibility of obtaining consent, through mutually understandable words or actions, rests with the person initiating sexual activity. Use of alcohol or drugs does not diminish the responsibility to obtain consent. Consent to engage in sexual activity may be withdrawn by any person at any time.  Once withdrawal of consent has been expressed, the sexual activity must cease.  Consent is automatically withdrawn by a person who is no longer capable of giving consent.  A current or previous consensual dating or sexual relationship between the Parties does not itself imply consent or preclude a finding of responsibility.

"Dating Violence" includes but is not limited to:

"**Dating Violence**" **as defined by the Clery Act**: Violence, including but not limited to sexual or physical abuse or the threat of such abuse, committed by a person who is or has been in a social relationship of a romantic or intimate nature with the alleged victim. The existence of such a relationship will be determined based on a consideration of the length and type of relationship and the frequency of interaction.

"**Dating Violence**" **as defined by Louisiana Law**: Includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one dating partner against the other (La. RS § 46.2151(C))  For purposes of this Section, "dating partner" means any person who is or has been in a social relationship of a romantic or intimate nature with the victim and where the existence of such a relationship shall be determined based on a consideration of the following factors:
(1) The length of the relationship,
(2) The type of relationship, and
(3) The frequency of interaction between the persons involved in the relationship.

"Domestic Violence" includes but is not limited to:

"**Domestic Violence**" **as defined by the Clery Act**: Violence, including but not limited to sexual or physical

3


EXHIBIT A

PGS_003218

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

abuse or the threat of such abuse, committed by a current or former spouse or intimate partner or any other person from whom the alleged victim is protected under federal or Louisiana law.  Felony or misdemeanor crime of violence committed:

- By a current or former spouse or intimate partner of the victim;
- By a person with whom the victim shares a child in common;
- By a person who is cohabitating with, or has cohabitated with, the victim as a spouse or intimate partner;
- By a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred; or
- By any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.

**"Domestic Abuse" as defined by Louisiana Law**:  Abuse and violence including but not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family or household member against another. La. RS 46:2132(3).

**"Family violence" as defined by in Louisiana Law**: Any assault, battery, or other physical abuse which occurs between family or household members, who reside together or who formerly resided together. La. RS § 46.2121.1(2)

**"Hostile Environment"**:  Includes conduct of a sexual nature that is sufficiently severe, persistent, or pervasive to limit a student's or employee's ability to participate in or benefit from the education program or from one's employment, or to create a hostile or abusive educational or work environment.

**"Incapacitation"**:    An individual is considered to be incapacitated if, by reason of mental or physical condition, the individual is manifestly unable to make a knowing and deliberate choice to engage in sexual activity. Being drunk or intoxicated can lead to incapacitation; however, someone who is drunk or intoxicated is not necessarily incapacitated, as incapacitation is a state beyond drunkenness or intoxication. Individuals who are asleep, unresponsive or unconscious are incapacitated. Other indicators that an individual may be incapacitated include, but are not limited to, inability to communicate coherently, inability to dress/undress without assistance, inability to walk without assistance, slurred speech, loss of coordination, vomiting, or inability to perform other physical or cognitive tasks without assistance.

**"Respondent"**: Any student or employee against whom a complaint under this policy has been made.

**"Responsible Person"**: Any employee who has the authority to take action to redress sexual violence or who has been given the duty of reporting incidents of sexual violence or any other misconduct prohibited by this policy by students or employees to the Title IX coordinator or other appropriate school designee. Responsible Persons do not include victims' advocates, mental health counselors, or clergy.

**"Retaliation"**: Title IX prohibits retaliation. Any acts or attempted acts for the purpose of interfering with any report, investigation, or proceeding under this Policy, or as retribution or revenge against anyone who has reported Sexual Misconduct or who has participated (or is expected to participate) in any manner in an investigation, or proceeding under this Policy. Prohibited retaliatory acts include, but are not limited to, intimidation, threats, coercion, or discrimination.

4

# EXHIBIT A

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**"Sexual assault"**: Any type of sexual contact or behavior that occurs, or is attempted, without the explicit consent of the recipient. Sexual assault includes, but is not limited to, sexual acts, or attempted sexual acts, such as rape, fondling, incest or statutory rape, forced sexual intercourse, sodomy, child molestation, any sexual touching, and includes sexual acts against people who are unable to consent either due to age or incapacitation.

"Sexual Assault" also includes but is not limited to:

**"Sexual Assault" as defined by the Clery Act**: Any offense that meets the definition of rape, fondling, incest, or statutory rape as used in the FBI's UCR program.

**"Non-Consensual Sexual Intercourse"**: Having or attempting to have sexual intercourse, cunnilingus, or fellatio without consent. Sexual intercourse is defined as anal or vaginal penetration by a penis, tongue, finger, or inanimate object.

**"Non-Consensual Sexual Contact"**: Any intentional sexual touching, or attempted sexual touching, without consent.

"Sexual Assault" also includes sexual battery as defined in La. R.S. 14:43.1.

**"Sexual Discrimination"**: Behaviors and actions that deny or limit a person's ability to benefit from, and/or fully participate in the educational programs, activities, and services because of a person's gender.

**"Sexual Exploitation"**: Any act attempted or committed by a person for sexual gratification, financial gain, or other advancement through the abuse or exploitation of another person's sexuality. Examples of sexual exploitation include, but are not limited to, non-consensual observation of individuals who are undressed or engaging in sexual acts, non-consensual audio- or videotaping of sexual activity, prostituting another person, allowing others to observe a personal consensual sexual act without the knowledge or consent of all involved parties, and knowingly exposing an individual to a sexually transmitted infection without that individual's knowledge.

**"Sexual Harassment"**: The unwelcome conduct of a sexual nature when i) submission to such conduct is made either explicitly or implicitly a term or condition of a person's employment or education; ii) submission to or rejection of such conduct by a person is used as the basis for a decision affecting that person's employment or education; or iii) such conduct has the purpose or effect of unreasonably interfering with a person's employment or education, or creating an intimidating, hostile, or offensive employment or educational environment, and has no legitimate relationship to the subject matter of a course or academic research. Sexual Harassment also includes non-sexual harassment or discrimination of a person because of the person's sex and/or gender, including harassment based on the person's nonconformity with gender stereotypes. For purposes of this Policy, the various forms of prohibited Sexual Harassment are referred to as "Sexual Misconduct."

**"Sexually-Oriented Criminal Offense"**:  any sexual assault offense as defined in La. R.S. 44:51, and any sexual abuse offense as defined in La. R. S. 14:403.

"Stalking" includes but is not limited to:

5

BOS-002220

Case 3:21-cv-00242-WBV-SDJ    Document 473-4    10/13/23    Page 8 of 47
Case 3:21-cv-00242-WBV-SDJ    Document 373-6    Filed 01/17/23    Page 8 of 47
CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**"Stalking" as defined by the Clery Act:** (1) The intentional and repeated following or harassing that would cause a reasonable person to feel alarmed or that would cause a reasonable person to suffer emotional distress; or (2) the intentional and repeated uninvited presence at another person's: home, work place, school, or any other place which would cause a reasonable person to be alarmed or would cause a reasonable person to suffer emotional distress as a result of verbal or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping or any other statutory criminal act to the victim or any member of the victim's family or any person with whom the victim is acquainted. 34 CFR 668.46(a)(ii).

**"Stalking" as defined by Louisiana Law:** The intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal or behaviorally implied threats of death, bodily injury, sexual assault, kidnaping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted. La. RS § 14:40.2(A)  "Harassing" means the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures. "Pattern of conduct" means a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person. Constitutionally protected activity is not included within the meaning of pattern of conduct.  La. RS § 14:40.2(C)

### III. TITLE IX COORDINATORS

The President shall designate the LSU Title IX Coordinator who shall be responsible for the implementation, enforcement, and coordination of Title IX for all LSU campuses. The Chancellor of each Campus shall designate a Campus Title IX Coordinator with designated responsibilities to oversee on-campus Title IX compliance for their respective campus.  A Campus may appoint a Deputy Title IX Coordinator to assist the Campus Title IX Coordinator in their duties.

The President also shall designate a Deputy Title IX Coordinator for Athletics.  In consultation with  the Chancellors and Athletic Directors for each campus, this individual will monitor sports equity, including offerings, participation, and scholarships on all campuses for compliance with Title IX. Any investigations or complaints involving student athletes or Athletics personnel (other than those involving sports equity) shall be handled and/or investigated by the LSU Title IX Coordinator and/or the Campus Title IX Coordinator(s), or their designee, as appropriate under the circumstances and in accordance with this Policy.

### IV. INITIATION OF COMPLAINTS

#### A.  Application

This policy applies to all campuses and other administrative units. These procedures may be supplemented by more specific campus procedures that are consistent with this Policy and PM-55.

Complaints of sexual discrimination which do not involve sexual misconduct or sexual assault shall be handled under any applicable campus specific policies.

6

**EXHIBIT A**

BOS-002221

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Each campus shall place the protocol for filing complaints under this policy on their website.

### B.  Complaints

Any student or employee who believes that he or she has been subjected to sexual misconduct or any other violation of this policy has a right to report the conduct to the Campus Title IX Coordinator or to any other responsible person, which includes but is not limited to the campus administrator with responsibility for human resource management, student conduct or the department head of the relevant academic department. When the LSU Title IX Coordinator or the Campus Title IX Coordinator becomes aware of information that indicates that a violation of this policy may have occurred, he/she or their designee shall notify the parties involved of their rights under this policy. Persons who may have experienced criminal sexual misconduct are strongly encouraged to report the offense to campus police or local law enforcement, as well as to the Campus Title IX Coordinator or the persons named above. To the extent possible, the complainant and those who receive the complaint should preserve evidence and not disturb the potential crime scene. The complainant, however, has the legal right not to provide a statement to campus police or law enforcement.

### C.  Notification of Complaints

Any responsible person who receives actual notice of a complaint under this policy *shall* promptly notify the Campus Title IX Coordinator, who shall be responsible for notifying the LSU Title IX Coordinator and any campus administrators, who may be involved in the resolution process. Notice of a complaint may or may not come from a formal complaint. Any supervisor, or other responsible party who witnesses or receives a report or complaint, shall notify the Campus Title IX Coordinator. Only individuals employed as mental health counselors, victim's advocates, University chaplains or others designated by the University as provided by law can guarantee confidentiality.

### D.  Interim Measures

At any time after becoming aware of a complaint, the Campus Title IX Coordinator, a Deputy Title IX Coordinator(s), or other responsible party, may recommend that interim protections or remedies impacted parties involved be provided by appropriate LSU officials. These protections or remedies for the parties involved or witnesses will be provided by appropriate University officials. Remedies may include issuing a timely warning to the campus community, separating the parties, placing limitations on contact between the parties, interim suspension from campus, or making alternative workplace, classroom, course scheduling, dining, or student housing arrangements. Interim measures may vary depending on the nature of the complaint, status of respondent or other criteria. All parties shall be notified of the availability of these measures as well as the fact that such measures are put into effect.

### E.  Confidentiality

All parties involved in a complaint, any investigation, and/or resolution, including witnesses, are encouraged to keep information concerning the complaint private until a final decision is rendered in order to protect both the complainant and the respondent.

7

# EXHIBIT A

BOS 002222

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LSU may be required to divulge information on a need-to-know basis in order to properly address the complaint, when there is a threat to others, pursuant to subpoena, or other court or administrative order, or as may be required by applicable law. Violations of confidentiality by any other persons involved in the resolution, investigation or administration of the complaint, including any employee, faculty, staff, or student if identified and confirmed, may result in disciplinary or corrective action.

Only individuals employed as mental health counselors, victims' advocates, university chaplains or others designated by the University as provided by law can guarantee confidentiality.

## V.  PROCESSING OF COMPLAINTS

### A. Preliminary Inquiry

The Campus Title IX Coordinator or designee shall conduct or supervise the initial review of the complaint, with such assistance, as needed and/or appropriate under the circumstances, from other campus administrators with responsibilities relevant to the nature of the complaint. A complainant or respondent has the right to a confidential advisor or an advisor of choice at any stage of this process. The initial review of the complaint shall be concluded as quickly as possible, within a reasonable amount of time required to complete the review in a manner that is adequate, reliable and impartial and based on the nature and complexity of the complaint. Generally, the initial review should be ordinarily be completed within 15 business days of receipt of the complaint. The purpose of the initial inquiry is to determine whether there is reasonable cause to believe a specific policy/policies may have been violated. After completion of the preliminary inquiry, any initial determination that a policy has not been violated shall be made by the Campus Title IX Coordinator. A respondent or complainant can request a review of the initial determination to the LSU Title IX Coordinator, whose decision shall be final.

To ensure a prompt and thorough initial inquiry, the complainant should provide as much information as possible. A complaint may be submitted anonymously or by an individual who is not a party to the alleged violation. The following may, but is not required to be, provided in writing:

- The name of student(s) or employee(s) to include student organization, academic department, and position of the person(s) allegedly violating this Policy;
- A description of the incident(s), including the date(s), location(s), and the presence of any witness(es);
- If the complainant is an employee, the alleged effect of the incident(s) on the complainant's position, salary, benefits, promotional opportunities, work environment, or other terms or conditions of employment;
- The name(s) of other student(s) or employee(s) who might have been subject to the same or similar conduct; and/or

Any other information the complainant believes to be relevant to the alleged sexual misconduct, discrimination, harassment, or retaliation.

### B. Notice of Investigation

If, after the initial inquiry, the Campus Title IX Coordinator finds reasonable cause to believe a policy

8



# EXHIBIT A

BOS 003333

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

or policies may have been violated, an investigation shall be conducted. At any time during the investigation the matter may be referred, if appropriate under this policy, to the informal resolution process. If an investigation is warranted, then at the recommendation of the Campus Title IX Coordinator, a trained investigator(s) will conduct a full investigation into the facts and circumstances of the complaint. The investigation may include in-person interviews with all parties involved, including witnesses and parties that the investigator(s) may deem appropriate. Both the respondent and complainant will be given the opportunity to identify witnesses to be interviewed. The investigator may also collect and review any documents or other relevant information to include but not limited to photographs, video recordings, and/or information from social media. Any such investigation shall be conducted by a trained person, authorized and assigned as an investigator by the Campus Title IX Coordinator, including, but not limited to, trained employees from human resource management department or the student services or student life department, or other qualified University employees. The Campus Title IX Coordinator will notify the appropriate Campus offices as necessary.

Both the respondent and complainant will be provided written notice that an investigation will be undertaken as well as the nature of the complaint. The notice should include the specific section(s) of policy that may have been violated. All parties will have an opportunity to identify pertinent evidence to be considered by the investigator(s). The investigator(s) will author a written investigative summary to include a timeline of events, facts, and circumstances surrounding the complaint. Upon completion of the investigative summary, the Campus Title IX Coordinator or designee, in consultation with the appropriate student services, student life department, or human resource management, will reach a finding based on a preponderance of the evidence or more likely than not that a policy was or was not violated. Prior to issuing a finding, the Campus Title IX Coordinator may request additional investigation, should he/she deem this to be appropriate.

Upon issuance of a notice of investigation, any and all effort should be made to conduct a thorough and prompt investigation based on the facts and circumstances of each complaint ordinarily within thirty (30) business days of the notice. Complicated or extensive investigations may take longer.

After a full investigation, a determination that a policy has or has not been violated, from a more likely than not or preponderance of the evidence standard, shall be made by the Campus Title IX Coordinator or his designee, by admission of responsibility by the respondent or by the complainant's admission of making false charges against the respondent. Both the complainant and the respondent will be given written notice of the results of the investigation

## VI. RESOLUTION PROCEDURES

In the event that a determination has been made that from a more likely than not or preponderance of the evidence standard that a policy has been violated, the University has both informal and formal resolution procedures to address alleged violations of this policy. Both procedures will be implemented by individuals who have received training on issues related to sexual misconduct. The complainant and respondent have the right to an advisor of choice or a confidential advisor at any stage of the Informal Resolution or Formal Resolution processes.

Both informal and formal resolution procedures will utilize a preponderance of the evidence standard throughout the process, with respect to determinations as to whether, or not, there has been a violation of this Policy.

9

# EXHIBIT A

Case 3:21-cv-00242-WBV-SDJ    Document 473-4    10/13/23   Page 12 of 47
Case 3:21-cv-00242-WBV-SDJ      Document 373-4 *SEALED* 07/10/23  Page 12 of 47
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

As set forth below, an informal resolution procedure is available under certain circumstances. After a full investigation, or at the request of the parties as provided in Section V. B, or if the respondent accepts responsibility for violation(s) of policy and if the investigator finds that reasonable cause exists to believe that University policy has been violated, the Campus Title IX Coordinator or designee will determine whether the informal resolution procedure is appropriate. If an informal resolution is not appropriate, a formal hearing by a panel of trained hearing officers will be scheduled, for situations involving student matters only. In situations involving an employee as a respondent, the Campus Title IX Coordinator or designee will determine the appropriate procedure to follow in consultation with Human Resources Department and/or applicable campus administrator(s). .

If the Campus Title IX Coordinator or designee determines that informal resolution is appropriate, the complainant and respondent shall be advised of the option to pursue an informal resolution procedure. If both complainant and respondent agree in writing, the informal resolution procedure will be followed, without further investigation, unless and until informal resolution is unsuccessful.

### 1. Informal Resolution:

The use of the informal resolution procedure is optional and must be agreed upon by all parties involved. The informal resolution procedure will not be followed: if any of the persons involved in the complaint do not wish to engage in the informal procedure; if the Campus Title IX Coordinator deems the informal resolution procedure inappropriate for the alleged offense; if the respondent does not accept responsibility for the alleged policy violation(s); or, if an attempt to utilize the informal procedure has been unsuccessful. Informal procedures are not appropriate for, or applied in, cases involving violence resulting in significant harm to others. Additionally the parties may discontinue participation in the informal process at any time. Information obtained regarding the complaint and the investigative summary will be treated as private, with only those with a need to know being informed of the complaint.

An attempt to informally resolve the complaint shall be made by the Campus Title IX Coordinator or designee and should be ordinarily concluded within fifteen (15) calendar days of the decision to pursue informal resolution. Such informal resolution includes meeting with each party to the complaint; review of any initial findings; review or continuance of interim remedies; and any other actions deemed appropriate by the parties and LSU. Any further inquiry or review deemed necessary should be concluded in that same period. Once the informal resolution procedure is complete, written notification of the determination of whether or not this policy(s) was violated will be provided to the complainant and respondent. If a determination has been made that a policy was violated, any changes in status, restrictions, limitations, or other recommended outcomes shall be given to all parties. Any party not willing to accept the proposed informal resolution has the right to make a written request, within five (5) calendar days upon receipt of written notification of the proposed resolution, to the office of the Campus Title IX Coordinator, thereby requesting the opportunity to pursue the formal resolution procedure set forth below.

### 2. Formal Resolution:

If either the respondent or complainant is not in agreement with the outcome of the informal resolution process or if the University, the respondent, and/or the complainant have not consented

10



**EXHIBIT A**

BOS 002225

to and/or determined that informal resolution is inappropriate or insufficient, the formal procedure will be utilized.

Upon submission of written notification by either the respondent or complainant to the Campus Title IX Coordinator communicating an intent not to accept the proposed informal resolution outcome, formal consideration will be given for a formal resolution process. The complainant and the respondent will be notified in writing the specific section(s) of policy alleged to have been violated, and the date, time, and location of the formal resolution process. Information obtained regarding the complaint will be treated as privately as possible (as set forth herein) with only those with a legitimate educational interest being informed of the complaint and the outcome of the investigation.

The formal procedure will consist of a formal review of all allegations, the initial complaint, supporting documents, investigative summary and corresponding documentation. For complaints involving students as respondents, the formal procedure will consist of a panel of trained hearing officers as outlined in the code of student conduct and/or policy/policies governing student conduct. For complaints involving employees as respondents, the Title IX coordinator or designee and the Office of Human Resource Management and/or applicable campus administrator will direct the formal process of the investigation. Each Campus shall adopt or utilize existing procedures to address alleged violation(s) of this Policy that afford both the complainant and the respondent due process as well as appeal options and other procedural rights as outlined in University policy. The Campus procedures for resolution of such complaints may be subject to review by the LSU Title IX Coordinator.

### VII. RESOLUTION/DISCIPLINARY ACTION

LSU will take appropriate action against any person found to be in violation of this policy. (Note: violations of this policy may also be subject to individual civil or criminal liability under the state or federal law).

When an employee is deemed to have violated this policy, the Campus Title IX Coordinator and Human Resource Management and/or applicable campus administrator will jointly determine the appropriate disciplinary action, or recommendation for disciplinary action, up to and including dismissal, in accordance with applicable laws, rules, and/or LSU policies.

For violations involving students, except when acting in the capacity of an employee, the appropriate campus office or administrator responsible for student conduct, student services or student life will determine the appropriate action, pursuant to any applicable code of student conduct and/or policy/policies governing student conduct. In addition, to the extent possible, LSU will interact with appropriate law enforcement or third parties to address the actions of non-students or non-employees.

Violations of this Policy may result in outcomes such as residential life contract cancellation, deferred suspension, suspension, expulsion, class only restriction (student) and/or disciplinary action or separation of employment.

### VIII. APPEAL

11

BOS-002226

Either party may appeal the findings of the formal resolution process in accordance with existing University policies detailing appeal procedures for students or for employees. Appeals must be submitted in writing to the Campus Title IX Coordinator or designee within ten (10) business days upon receipt, by the appealing complainant or the appealing respondent, of notification of the outcome of the formal resolution process.

## IX. COOPERATION WITH LAW ENFORCEMENT

LSU will comply with law enforcement requests for cooperation and such cooperation may require LSU to temporarily suspend the fact-finding aspect of a Title IX investigation while the law enforcement agency is in the process of gathering evidence. LSU will promptly resume its Title IX investigation as soon as notified by law enforcement that it has completed the evidence gathering process. LSU may provide up to 10 calendar days to allow for the law enforcement agency criminal process/investigation to unfold prior to resuming the fact-finding aspect of the Title IX investigation.

The University will implement appropriate interim steps/remedies during the law enforcement agency's investigation to provide for the safety of the complainant, the respondent, the campus community, and to avoid any instance of retaliation.

Each campus will develop protocols to coordinate efforts with local law enforcement agencies and other organizations such as crisis centers. A Memorandum of Understanding (MOU) may be utilized to establish those protocols.

## X. RETALIATION

Retaliation against a person who has been subjected to sexual misconduct, or against one, who in good faith brings a complaint of or sexual misconduct or who, in good faith, participates in the investigation of a sexual misconduct complaint, is prohibited; and shall be a violation of this policy and shall constitute misconduct subject to disciplinary or other action, as described above. LSU will take steps to prevent recurrence and remedy the effects of any violation of this Policy.

## XI. RECORD KEEPING

Records will be kept in accordance with Louisiana law and federal law. For students, records will be maintained for seven (7) years by the Dean of Students or other office tasked with the maintenance of student records, except in cases of cases of suspension and expulsion, which records shall be permanent. Employment actions in violation of this policy will be maintained in the employees' respective Employee Relations file.

## XII. OTHER ASSISTANCE

Campuses and the communities in which they are located can provide other assistance to persons impacted by a violation of this policy. Each campus will develop and maintain a list of departments, programs/services, or community-based agencies offering assistance to students and employees concerning issues related to this policy.

## XIII. CAMPUS CLIMATE SURVEY

12



EXHIBIT A

BOS-002227

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Each campus shall administer a Campus Climate Survey to assess the knowledge, perceptions and behaviors of its students, faculty and staff regarding sexual misconduct. The survey shall be developed by the four management boards of public higher education in the state of Louisiana, in coordination with the Board of Regents. Each campus is encouraged to supplement the statewide survey with any additional information specific to its unique characteristics and that may assist in preventing sexual misconduct and administering strategies dealing with sexual misconduct. The annual Campus Climate Survey shall be submitted to the LSU Title IX Coordinator by June 1 of each year.

XIV. **TRAINING, EDUCATIONAL, AND PREVENTION PROGRAMS**

Each campus shall regularly offer training, educational and prevention programs designed to inform the campus or community about the law of title IX and LSU's Title IX Policy. Each campus will develop and maintain a list of educational programs, prevention programs, and other events designed to reduce the incidence of sexual violence on campus or within the community. Each campus should identify and include a bystander intervention program and programs addressing issue related to this policy.

XV. **RELATED POLICIES**

To the extent other LSU or campus-based policies may conflict with this policy, the provisions of this policy shall supersede and govern.

XVI. **TASK FORCE**

Each campus shall establish a task force to address sexual misconduct. Each task force shall invite student members to be represented through their respective student government body or other student organizations.

XVII. **AMNESTY POLICY**

LSU encourages reporting of sexual misconduct and seeks to remove barriers to an individual or group reporting such conduct. An individual or group who, in good faith, reports sexual misconduct, either as a complainant or a third party witness, shall not be sanctioned for a nonviolent student conduct violation, such as underage drinking, at or near the time of the complained incident, provided that any such violation did not and does not place the health and safety of any other person at risk. Each campus policy shall include amnesty policies in accordance with ACT 172 and other applicable state laws.

XVIII. **MEMORANDUM OF UNDERSTANDING**

Each campus shall make diligent efforts to enter into Memorandum of Understanding (MOU) with law enforcement and criminal justice agencies in the parish in accordance with ACT 172 or any other applicable state laws. Such MOUs should clearly delineate the responsibilities, protocols for investigation, as well as commitments to share information, in accordance with Act 172 and state and federal confidentiality laws. The MOUs should be updated every two years. The MOU should provide for joint or shared trauma-informed training specific to assisting sexual assault victims.

13

**EXHIBIT A**

ROS 003338

## XIX. <u>TRANSFER</u>

In accordance with state and federal law, if a student accused of a sexually-oriented criminal offense as defined in La. R.S. 44:51 or any sexual abuse offense as defined in La. R.S. 14:403 seeks to transfer to another institution during an investigation, resolution procedure, and/or adjudication procedure, the institution shall withhold the student's transcript until such investigation or adjudication is complete and a final decision has been made. Each institution shall inform the respondent of the institution's obligation to withhold the transcript during the investigation.

If, upon the completion of an investigation, resolution procedure, and/or adjudication under this policy, the student is found responsible for sexually-oriented criminal offenses as defined in La. R.S. 44:51 or any sexual abuse offense as defined in La. R.S. 14:403, and seeks to transfer to another institution, institutions are required to communicate such a violation, when the institution becomes aware of the student's attempt to transfer, with the institution(s) to which the student seeks to transfer or has transferred.

14

# EXHIBIT A

BOS-002229

**Louisiana State University**
**Sexual Misconduct and Sexual Harassment (PM73) Complaint Form**
*Submitted on April 26, 2018 at 10:30:12 pm CDT*

| | |
|---|---|
| Nature: | **Dating Violence** |
| Urgency: | **Normal** |
| Incident Date and Time: | **2018-04-03** |
| Incident Location: | **Off-Campus** |

Reported by

| | |
|---|---|
| Name: | **Miriam Segar** |
| Title: | **Sr. Associate Athletics Director** |
| Email: | **msegar@lsu.edu** |
| Phone: | **225-578-5785** |
| Address: | **North Stadium Drive** |
| | **[UNAUTHENTICATED]** |

Involved Parties

**Jade Lewis (896760043)**     1998-▓     jademlewis@gmail.com     843-295-8876
Victim     Female

Reda ▓▓▓ Redacted ▓▓▓
Alleged     Male

Questions

If this is a discrimination or harassment complaint, please indicate the protected status(es) that is/are the basis of the alleged behavior.

Describe the incident(s)/event(s) including date, times, locations, and any potential witness(es) to the behavior.
▓▓▓ and Lewis are in a dating relationship. It was reported by Lewis to the team athletic trainer and to me that she was punched in the stomach/rib area by ▓▓▓ on April 3, 2018. The incident was first reported to Athletics Administration on the evening of 4/25/2018 by Lewis. Lewis rib is very swollen and she has been unable to sleep and is having pain in her left rib area. Lewis saw a medical doctor on 4/26/2018 and was told to stop exercising and rest to allow time for the rib to properly heal.
As background to the incident, Lewis attended LSU in Spring 2017 and was romantically involved with ▓▓▓. Lewis did not return to school Fall 2017 and pursued professional athletic career. Lewis returned to Baton Rouge in March 2018 and is currently enrolled in an online course and is enrolling in Spring Intersession and Summer classes and will maintain enrollment in 2018-19 academic year. Upon her return to Baton Rouge, ▓▓▓ and Lewis reconnected and are romantically involved. Lewis reported that ▓▓▓ was first abusive to her in Spring 2017 when he was upset and punched her in the stomach. The punch on April 3, 2018 was the second time she had been physically abused by ▓▓▓. She indicated that ▓▓▓ is very possessive of her and doesn't like her to leave the apartment and always wants to know where she is. On April 3, he became jealous when she went out with friends. He confronted her that evening and "punched her in the stomach/ribs". Lewis was encouraged to cease contact with ▓▓▓ and file a report with LSU Police. Lewis indicated that she was still in a relationship with ▓▓▓ and did not want to report the incident to police. She notified us of the incident because she wanted medical care for the injury she sustained. Lewis was encouraged to utilize domestic abuse resources and has made an appointment with LSU Sport Psychologist.

Describe the impact the behavior has had on you.
Incident is concerning for safety and welfare of the student. The student wants to maintain privacy.

Have you taken any action to stop the behavior?
No



EXHIBIT
2

BOS-001836

**EXHIBIT A**

If you have taken action to stop the behavior, what actions have you taken and what was the outcome?
**I have encouraged Lewis to refrain from associating with ▮▮▮▮ and have encouraged reporting to police. She has also been encouraged to use university and community resources.**

Please add any additional information that supports your complaint. You may upload screenshots, other pictures, or documents later in this form.

What remedy are you seeking (no contact, restrictions or limitations, removal)?
**Counseling for both individuals and violent behavior to cease.**

*Pending IR #00014942*
*Submitted from 130.39.199.197 and routed to Jonathan Sanders (Associate Dean of Students & Director of SAA). Processed by routing rule #106.*
*Copies to: mari@lsu.edu,jbrum@lsu.edu,jstewart@lsu.edu,ahende3@lsu.edu,jsanders@lsu.edu*

BOS-001837

# EXHIBIT A

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER



**PM-73 Case 2017339601**

**Investigator:**   Jeff Scott

**Interview with Jade Lewis (Victim) May 21, 2018 @ 3:15pm; Miriam Segar escorted Lewis to interview**

Explained Title IX and PM-73 obligations

Lewis stated she did not want ▮▮▮▮ to get into trouble.  She just wants someone to talk to him and let him know what he did was wrong.  She is a reluctant complainant.

This is the second time he has punched her in the stomach.

No one else knows about it.  Not even his football coaches.

They are in a complicated relationship.  He has many other "girlfriends" besides her.  She is faithful to him but he is not to her.

He gets upset when he texts or calls her and she is out with friends.  He expects her to always be available for him.

She stated he comes from wealthy family and has attitude that nothing will ever happen to him.

She said if I talk with him I should not give him a heads-up beforehand because he may get upset at her.  She's worried for her safety.

She says she just wants someone to tell him this is not ok and that he needs to stop.

Thanked her coming to talk with me and provided her with Title IX handbook and highlighted services available to her.



EXHIBIT
3

**EXHIBIT A**

BOS-002230

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**2017339601**
Sexual Misconduct (PM-73 or Title IX)

Closed

No Photo
Available

# Jade Lewis (896760043)

## DEMOGRAPHICS

| | | |
|---|---|---|
| **DOB** Redacted | **Athletics** | **Risk Level** |
| **Gender** Female | **Greek** | **Department/Course** |
| **Ethnicity** | **Honors** | |
| **Classification** | **ROTC / Veteran** | |
| **Major** | **Pronouns** | |
| **Academic Advisor** | **Honorific** | |
| **GPA Last Term / GPA Cumulative** 0.000 / 0.000 | | |

## CONTACT INFORMATION

| | | |
|---|---|---|
| **Housing** | **Local** | **Permanent** |
| **Username** | Redacted (local) | |

**Email Address**
jademlewis@gmail.com

**Emergency Contact**

## INCIDENT AND CASE INFORMATION

| | | |
|---|---|---|
| **Report Number** | **Role** Victim | |
| **Incident Date** 2018-04-03 | **Incident Time** | **Incident Location** Off-Campus |
| **Reported Date** 2018-04-26 | **Referral Source** Staff | **Reported By** Miriam Segar msegar@lsu.edu |
| **Case Created Date** 2018-04-27 | **Assigned To** Jeffrey Scott (LSU TIX Lead Investigator) | **Home Office** Office of the Dean of Students |
| **Access Restriction** No group-based restriction | | |

# EXHIBIT A

BOS 002231

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Clery Reportability**

**Clery Rationale**

**Tags**
PM73

**Next Deadline Date**
2018-05-25

**Reason**
Unspecified at case creation

**Incident Description**
** If this is a discrimination or harassment complaint, please indicate the protected status(es) that is/are the basis of the alleged behavior.

** Describe the incident(s)/event(s) including date, times, locations, and any potential witness(es) to the behavior.
███ and Lewis are in a dating relationship. It was reported by Lewis to the team athletic trainer and to me that she was punched in the stomach/rib area by ███ on April 3, 2018. The incident was first reported to Athletics Administration on the evening of 4/25/2018 by Lewis. Lewis rib is very swollen and she has been unable to sleep and is having pain in her left rib area. Lewis saw a medical doctor on 4/26/2018 and was told to stop exercising and rest to allow time for the rib to properly heal.
As background to the incident, Lewis attended LSU in Spring 2017 and was romantically involved with ███. Lewis did not return to school Fall 2017 and pursued professional athletic career. Lewis returned to Baton Rouge in March 2018 and is currently enrolled in an online course and is enrolling in Spring Intersession and Summer classes and will maintain enrollment in 2018-19 academic year. Upon her return to Baton Rouge, ███ and Lewis reconnected and are romantically involved. Lewis reported that ███ was first abusive to her in Spring 2017 when he was upset and punched her in the stomach. The punch on April 3, 2018 was the second time she had been physically abused by ███. She indicated that ███ is very possessive of her and doesn't like her to leave the apartment and always wants to know where she is. On April 3, he became jealous when she went out with friends. He confronted her that evening and "punched her in the stomach/ribs". Lewis was encouraged to cease contact with ███ and file a report with LSU Police. Lewis indicated that she was still in a relationship with ███ and did not want to report the incident to police. She notified us of the incident because she wanted medical care for the injury she sustained. Lewis was encouraged to utilize domestic abuse resources and has made an appointment with LSU Sport Psychologist.

** Describe the impact the behavior has had on you.
Incident is concerning for safety and welfare of the student. The student wants to maintain privacy.

** Have you taken any action to stop the behavior?
No

** If you have taken action to stop the behavior, what actions have you taken and what was the outcome?
I have encouraged Lewis to refrain from associating with ███ and have encouraged reporting to police. She has also been encouraged to use university and community resources.

** Please add any additional information that supports your complaint. You may upload screenshots, other pictures, or documents later in this form.

** What remedy are you seeking (no contact, restrictions or limitations, removal)?
Counseling for both individuals and violent behavior to cease.

---

**RESOLUTION INFORMATION**

**Charges/Issues**
No charges/issues listed

**Findings (if applicable)**

**Appt. Date**

**Appt. Time**

**Appt. Location**

# EXHIBIT A

BOS-002232

Case 3:21-cv-00242-WBV-SDJ    Document 473-4    10/13/23    Page 22 of 47
Case 3:21-cv-00242-WBV-SDJ    Document 373-4 *SEALED***    07/21/23    Page 22 of 47
CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Hearing/Resolution Date | Hearing/Resolution Type | Hearing Officer(s) |
|---|---|---|

| Parental Notification | Holds in Place | Appeal Status |
|---|---|---|
| No | | No appeal filed |

**Rationale**

**CC List**

---

## SANCTIONS / ACTIONS

✔ = completed, ✘ = incomplete, ➔ = referred to another case

No sanctions/actions listed

---

## NOTES

**Individual Notes**

| **Case Note** | CASE NOTE |
|---|---|
| *Susan Barels* | Friday April 27, 2018 at 1:15pm |

Lighthouse Program notified to initiate contact to offer services.

| **Initial contact letter** | EMAIL WITH STUDENT |
|---|---|
| *Jeffrey Scott* | Monday May 14, 2018 at 10:29am |

Sent initial contact letter to victim.

| | UNCATEGORIZED |
|---|---|
| *Jeffrey Scott* | Monday May 21, 2018 at 9:57am |

Received text from Miriam Segar that victim is meeting with her today at 3pm and will see if she will meet with me.

| **Interview** | IN PERSON WITH STUDENT |
|---|---|
| *Jeffrey Scott* | Monday May 21, 2018 at 4:38pm |

Initial interview w/Jade. She is a reluctant complainant. Interview notes uploaded.

# EXHIBIT A

BOS-002233

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ   Document 473-4   10/13/23   Page 23 of 47
Case 3:21-cv-00242-WBV-SDJ   Document 373-4 *SEALED* 07/10/23   Page 23 of 47



**PM-73 Case 2017339602**

**Investigator:**   Jeff Scott

**Interview with** Reda   **June 5, 2018 @ 11:00am; Athletics Office**

Explained Title IX and PM-73 obligations. ▮ said he understood.

▮ stated that he and Jade Lewis are close acquaintances and they sometimes "hang out" together. He views the relationship mainly for sex but she wants more.

▮ stated that he and Lewis have a volatile relationship. She wants more from it than he does and she has occasionally gotten very physical with him. He has had to fight her off of him. She has even busted in his apartment door.

On the night in question. He went to her apartment to get his belongings. They got into an argument because she wanted him to stay. ▮ stated Lewis kept hitting him on the back and head. ▮ stated she hit him really hard in the back of the head and he just reacted and turned and punched her in the stomach. He then left the apartment. ▮ stated he did not recall punching Lewis before and maintained this was the first time.

▮ stated there have been several occasions where he could have reported Lewis for being violent but chose not to. He stated he has told her to stop calling and texting him but she will show up at his apartment. ▮ said she has even approached him when he has been out at clubs and on occasion he has had to get the club manager to ask her to leave.

▮ said he once got a call from Lewis' father threatening him because he did not know Lewis had gone to Houston with another male and felt ▮ was responsible.

▮ said he just wants Lewis to stop badgering him. ▮ stated that he told Coach Mickey Joseph about the incident with Lewis.

Thanked ▮ for meeting with me and advised him of some student support services and that he should have limited contact with Lewis.



EXHIBIT

4

BOS-001838

**EXHIBIT A**

**2017339602**
Sexual Misconduct (PM-73 or Title IX)

Closed

**R**Redacted Redacted **(896729279)**

## DEMOGRAPHICS

**DOB**
Redacted

**Athletics**
Y

**Risk Level**

**Gender**
Male

**Greek**
Not Greek

**Department/Course**

**Ethnicity**
Black or African American

**Honors**
N/A

**Classification**
HSS 2 IS

**ROTC / Veteran**
N

**Major**
Interdisciplinary Studies

**Pronouns**

**Academic Advisor**

**Honorific**

**GPA Last Term / GPA Cumulative**
0.000 / 1.913

## CONTACT INFORMATION

**Housing**
Off Campus

**Local**
Redacted

**Permanent**
Redacted

**Username**
Redacted

**Email Address**
Redacted

**Emergency Contact**
Redacted

## INCIDENT AND CASE INFORMATION

**Report Number**

**Role**
Alleged

**Incident Date**
2018-04-03

**Incident Time**

**Incident Location**
Off-Campus

**Reported Date**
2018-04-26

**Referral Source**
Staff

**Reported By**
Miriam Segar msegar@lsu.edu

**Case Created Date**
2018-04-27

**Assigned To**
Jeffrey Scott
(LSU TIX Lead Investigator)

**Home Office**
Office of the Dean of Students

**Access Restriction**
No group-based restriction

Export of File ID 2017339602 generated by Jeffrey Scott on November 24, 2020 at 11:05:21am CST

Page 1 of 3

# EXHIBIT A

BOS-001839

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 473-4    10/13/23    Page 25 of 47
Case 3:21-cv-00242-WBV-SDJ    Document 373-4 *SEALED* 07/10/23    Page 25 of 47

**Clery Reportability**

**Clery Rationale**

**Tags**

**Next Deadline Date**
2018-05-25

**Reason**
Unspecified at case creation

**Incident Description**
** If this is a discrimination or harassment complaint, please indicate the protected status(es) that is/are the basis of the alleged behavior.

** Describe the incident(s)/event(s) including date, times, locations, and any potential witness(es) to the behavior.
██████ and Lewis are in a dating relationship. It was reported by Lewis to the team athletic trainer and to me that she was punched in the stomach/rib area by ██████ on April 3, 2018. The incident was first reported to Athletics Administration on the evening of 4/25/2018 by Lewis. Lewis rib is very swollen and she has been unable to sleep and is having pain in her left rib area. Lewis saw a medical doctor on 4/26/2018 and was told to stop exercising and rest to allow time for the rib to properly heal.
As background to the incident, Lewis attended LSU in Spring 2017 and was romantically involved with ██████. Lewis did not return to school Fall 2017 and pursued professional athletic career. Lewis returned to Baton Rouge in March 2018 and is currently enrolled in an online course and is enrolling in Spring Intersession and Summer classes and will maintain enrollment in 2018-19 academic year. Upon her return to Baton Rouge, ██████ and Lewis reconnected and are romantically involved. Lewis reported that ██████ was first abusive to her in Spring 2017 when he was upset and punched her in the stomach. The punch on April 3, 2018 was the second time she had been physically abused by ██████. She indicated that ██████ is very possessive of her and doesn't like her to leave the apartment and always wants to know where she is. On April 3, he became jealous when she went out with friends. He confronted her that evening and "punched her in the stomach/ribs". Lewis was encouraged to cease contact with ██████ and file a report with LSU Police. Lewis indicated that she was still in a relationship with ██████ and did not want to report the incident to police. She notified us of the incident because she wanted medical care for the injury she sustained. Lewis was encouraged to utilize domestic abuse resources and has made an appointment with LSU Sport Psychologist.

** Describe the impact the behavior has had on you.
Incident is concerning for safety and welfare of the student. The student wants to maintain privacy.

** Have you taken any action to stop the behavior?
No

** If you have taken action to stop the behavior, what actions have you taken and what was the outcome?
I have encouraged Lewis to refrain from associating with ██████ and have encouraged reporting to police. She has also been encouraged to use university and community resources.

** Please add any additional information that supports your complaint. You may upload screenshots, other pictures, or documents later in this form.

** What remedy are you seeking (no contact, restrictions or limitations, removal)?
Counseling for both individuals and violent behavior to cease.

---

**RESOLUTION INFORMATION**

**Charges/Issues**
No charges/issues listed

**Findings (if applicable)**

**Appt. Date**

**Appt. Time**

**Appt. Location**

# EXHIBIT A

BOS-001840

| Hearing/Resolution Date | Hearing/Resolution Type | Hearing Officer(s) |
|---|---|---|

| Parental Notification | Holds in Place | Appeal Status |
|---|---|---|
| No | | No appeal filed |

**Rationale**

**CC List**

---

## SANCTIONS / ACTIONS

✔ = completed, ✘ = incomplete, ➜ = referred to another case

No sanctions/actions listed

## NOTES

**Universal Notes**
FERPA waiver for Marci Blaize, 9/7/18
Expulsion-case#2018441106

**Individual Notes**

|  | UNCATEGORIZED |
|---|---|
| *Jeffrey Scott* | Wednesday May 23, 2018 at 9:32am |

Reached out to Miriam Segar to schedule informal interview w/ ▮▮▮▮.

|  | UNCATEGORIZED |
|---|---|
| *Jeffrey Scott* | Thursday May 24, 2018 at 8:57am |

Spoke with Miriam Segar, she will be out of town till Monday the 28th. We will schedule interview then.

|  | UNCATEGORIZED |
|---|---|
| *Jeffrey Scott* | Monday June 4, 2018 at 4:44pm |

Interview with ▮Reda▮ tentatively scheduled for 11:00am on 6/5/18.

| **Interview** | IN PERSON WITH STUDENT |
|---|---|
| *Jeffrey Scott* | Tuesday June 5, 2018 at 1:49pm |

Interviewed ▮Reda▮ in the Athletic Office. Met with Miriam Segar afterwards and agreed that ▮▮▮▮ would be placed in mandatory counseling. Segar also stated she would inform Coach Orgeron.

---

## ELECTRONIC FILE CABINET

| Doc ID | Filename | Date Modified | File Size | Associated with |
|---|---|---|---|---|
| 00123116 | IR | April 27, 2018 11:30 am | 3.94kb | All parties |
| 00123118 | Case Creation Sheet | April 27, 2018 11:30 am | 10.70kb | This individual |
| 00126107 | Case 2017339602 ▮Reda▮ interview notes.pdf | June 5, 2018 4:18 pm | 101.02kb | This individual |

**EXHIBIT A**

BOS-001841

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 473-4    10/13/23    Page 27 of 47
Case 3:21-cv-00242-WBV-SDJ    Document 373-4 *SEALED* 07/10/23    Page 27 of 47

**Louisiana State University**
**Sexual Misconduct and Sexual Harassment (PM73) Complaint Form**

*Submitted on June 18, 2018 at 10:19:12 pm CDT*

| | |
|---|---|
| Nature: | **Dating Violence** |
| Urgency: | **Normal** |
| Incident Date and Time: | **2018-06-18  2:00 AM** |
| Incident Location: | **West Campus Apartments** |

<u>Reported by</u>

| | |
|---|---|
| Name: | **Miriam Segar** |
| Title: | **Sr. Associate AD** |
| Email: | **msegar@lsu.edu** |
| Phone: | **2255785785** |
| Address: | **LSU Athletics, North Stadium Drive** |
| | **[UNAUTHENTICATED]** |

<u>Involved Parties</u>

**Jade Lewis (896760043)**          1998 Redacted          jademlewis@gmail.com          843-295-8876
Victim                                         Female                       WCA

Reda     Redacted          Redacted
Alleged          Male          on campus

Redacted          Redacted
Witness          Female          WCA

<u>Questions</u>

If this is a discrimination or harassment complaint, please indicate the protected status(es) that is/are the basis of the alleged behavior.

Describe the incident(s)/event(s) including date, times, locations, and any potential witness(es) to the behavior.
In early morning hours of Monday, June 18 @ approximately 2:00am, Reda went to WCA apartments to Jade Lewis room. Jade had previously provided ███ a key and he entered the apartment with the key and went to her room. Jade was expecting ███ as the two had been texting prior to his arrival. Jade was upset with ███ because he had been in Miami, FL over the weekend and posted some things on social media with other girls. Jade indicated that although she knew ███ was coming over she asked him to leave once he arrived and didn't want to hear his excuses about the weekend.
███ (roommate) reported being awaken by Jade's scream and hearing her repeatedly say things like "stop- No-- Leave" . She also heard rustling in the room and Jade screamed another time. She called 911 and requested that the police come to help her roommate. Upon arrival the police separated the three individuals to gather statements. ███ reported that after the police left, Jade returned to the apartment and thanked her for calling the police and told her that ███ was drunk and that she was scared and that he had grabbed her neck and arms.
Jade told me that ███ did not hit or harm her and that she was telling him she didn't want to talk and asked him to leave but understood why her roommate called police. When asked if she was injured in any way, Jade told me that during the interaction with ███ that she had hit her ear on the bed causing her earring to fall out and bleed.

Describe the impact the behavior has had on you.
**This is the second incident I have reported with these same 2 individuals. I am concerned about higher level of escalation and potential injury.**



EXHIBIT
6

EXHIBIT A

BOS-001857

Have you taken any action to stop the behavior?
**No**

If you have taken action to stop the behavior, what actions have you taken and what was the outcome?

Please add any additional information that supports your complaint.  You may upload screenshots, other pictures, or documents later in this form.

What remedy are you seeking (no contact, restrictions or limitations, removal)?
**Alleged Victim indicates that she is in a relationship with individual and does not plan to stop seeing him. Concern for escalation of domestic violence.**

*Pending IR #00015180*
*Submitted from 130.39.199.197 and routed to Jennie Stewart (Title IX Coordinator, Office of the General Counsel). Processed by routing rule #106.*
*Copies to: mari@lsu.edu,jscott11@lsu.edu,jsanders@lsu.edu,*

BOS-001858

# EXHIBIT A

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



July 3, 2018

Jade Lewis
Sent electronically to jlew158@lsu.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2017360401

Dear Ms. Lewis,

On June 18, 2018, you were involved in a possible violation of the LSU Code of Student Conduct. Specifically, it is alleged that you may have been in an altercation with another student and provided the student a key to your apartment. As a result, you are charged with the following violations of the LSU Code of Student Conduct:

10.2.D Disorderly Conduct: Behavior that impairs or interferes with the orderly functions or processes of the University and/or the reasonable safety, security, or use of members of the University community.
10.2.W Residential Life Handbook – Violating, attempting to violate, or assisting with the violation of any rule, policy and/or regulation outlined within the Residential Life Living on Campus Handbook;
10.2.O Property Misuse: Intentional or reckless destruction, defacement or damage to University property or to the property of any individual or group; unauthorized entry or use of any property or facility.

Per Section 6.2 B of the Code of Student Conduct, you are required to meet with a Student Advocacy & Accountability hearing officer. **This meeting has been scheduled for July 9, 2018 AT 11:00 am in Suite 340 of the LSU Student Union.** If you cannot attend this meeting time and date, please call the main office at 225-578-4307 to reschedule. Per Section 6.4 of the Code, the SAA official will proceed with the Accountability meeting in your absence and will issue a decision as to your responsibility.

We encourage you to refer to the LSU Code of Student Conduct at lsu.edu/saa to review the Accountability process and your rights and responsibilities as a Charged Student. Please complete and bring the attached Student Statement Form to your meeting.

Per Section 4.4 of the Code of Student Conduct, a student has the right to have one Advisor of his/her choice present during any Accountability meeting. Upon request, Student Advocacy & Accountability (SAA) can partner students with an Accountability Advisor to assist them through the accountability process.

Per Section 10.1 of the Code of Student Conduct, you may not drop the course where an alleged violation of academic misconduct has occurred. Any Student who drops the course without written permission from SAA will be re-enrolled in the class.

If you have a disability and need accommodations for this meeting, please notify the office via email at dossaa@lsu.edu or call at 225-578-4307 and we will make the necessary arrangements.

*Louisiana State University • 340 LSU Student Union • Baton Rouge, LA • 70803 • O 225-578-4307 • E doss*

EXHIBIT
7

LEWIS_00000215

# EXHIBIT A

Case CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER SEALED* 07/10/23     Page 30 of 47

Concerned,

Jonathan Sanders
Associate Dean of Students & Director of SAA

CC:   Miriam Segar, Sr. Associate Athletics Director/SWA
      Kenneth Miles, Assistant Vice Chancellor of Academic Affairs & Executive Director Cox Communications
Academic Center for Student-Athletes

# EXHIBIT A



## STUDENT ADVOCACY AND ACCOUNTABILITY

340 LSU Student Union • P.O. Box 25123 • Baton Rouge, LA 70894 • (225) 578-4307

### Code of Student Conduct

#### Rights of a Charged Student- Section 6.1

The hearing, as provided by the Louisiana State University *Code of Student Conduct,* assures a student of due process which, in the University conduct setting, is characterized by fair play and reasonableness. Every student who is charged with violation of University policies as stated in the *Code* is entitled to:

A. To be notified through written communication of the specific allegation(s) and charges(s).

B. To be provided a reasonable amount of time to respond to the Charge letter.

C. To refuse to comment or answer questions.

D. To present information and/or Material Observers

E. To have the Charge(s) considered by a UHP, unless this right has been waived by the Student.

F. Per Policy Statement 30—Student Privacy Rights, to schedule a time prior to a UHP to inspect and review the information on which the Charge(s) are based.

G. To accept the Accountability Outcome(s) imposed, thereby waiving the right to have the Charge(s) considered by a UHP.

H. To have an Accountability Outcome imposed that is commensurate with the violation.

I. To have an Advisor present during an Accountability meeting.

J. To receive a list of all Material Observes to be called by the University at least two (2) business days prior to a UHP. However, a UHP may continue the proceedings to allow the University to identify Material Observers to rebut any information presented by the Student

K. To retain rights as a Student while the charges are being considered, and, if found Responsible, until he or she has exhausted his or her rights of appeal as established in this Code. However, a Student may be subject to an Interim Suspension or limitations or conditions a set forth in this code.

# EXHIBIT A

LEWIS_00000217

Case 3:21-cv-00242-WBV-SDJ   Document 373-4 *SEALED* 07/10/23    Page 32 of 47
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER



Division of
**Student Life & Enrollment**
**Student Advocacy & Accountability**

340 LSU Student Union
Baton Rouge, LA 70803
Telephone:  225-578-4307

## Student Statement Form

_____          _____
Printed Name                                           Student ID #

The purpose of this informal meeting with an administrator from the Student Advocacy & Accountability office is to provide you with the opportunity to address the stated charge(s) by describing what you experienced as a result of this incident.  In the space below, please furnish a detailed summary of what happened from your perspective and in your own words.  If appropriate, identify potential witnesses or other pertinent information that may require a follow-up investigation.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

To the best of my knowledge, everything I have recounted on this form is true.

_____          _____
Signature                                               Date

**\*\*PLEASE PRINT THIS FORM AND BRING TO YOUR ACCOUNTABILITY MEETING.\*\***

# EXHIBIT A

LEWIS_00000218

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER



LEWIS_00000219

**EXHIBIT A**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# LSU
**Police**

### VOLUNTARY STATEMENT

LSU POLICE DEPARTMENT                           . CASE # 2018 0619-001

Victim ☐    Complainant ☐    Suspect ☐    Witness ☑         Student ☑    Faculty ☐    Staff ☐    Non-LSU ☐

Name **Redacted**                     Driver's License State/#_____

Race I    Sex M    DOB **Redacted**    SSN _____    Email _____

Local Address **Redacted**                                  Phone **Redacted**

Home Address _____                                    Phone _____

My girl friend and I were in a fight, yelling and her roommate
Called the police

Signature **Redacted**    Location WCA RM 409    Date / Time 06/19/2018 0250

Officer's printed name HUGHES 42122    Officer's signature _____

Page 1 of 1

EXHIBIT
8

BOS-002003

# EXHIBIT A

# LSU
### Police

## VOLUNTARY STATEMENT

LSU POLICE DEPARTMENT                                    . CASE # 20180618-001

Victim ☑  Complainant ☐  Suspect ☐  Witness ☐          Student ☑  Faculty ☐  Staff ☐  Non-LSU ☐

Name __Jade Lewis__                    Driver's License State/# ▊▊▊▊▊

Race __White__  Sex __F__  DOB __[Redacted]998__  SSN __[Redacted]3813__        Email __jademlewis@gmail.__

Local Address ▊▊▊▊▊▊▊▊▊▊▊▊▊▊  Phone __8432958876__

Home Address ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊  Phone _____

Disaggreement over text. He came over to talk and yelled
at me I was tired and wanted ~~her him~~ him to leave
and he was refusing.

Signature __Jade Lewis__    Location __WG4-FM 409__    Date / Time __06/18/2018  0250__
Officer's printed name __HUGHES    U2122__    Officer's signature _____

Page 1 of __1__

## EXHIBIT A

BOS-002004

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 373-4 *SEALED* 07/10/23    Page 36 of 47
Case 3:21-cv-00242-WBV-SDJ    Document 373-4 *SEALED* 07/10/23    Page 36 of 47

# LSU
### Police

## VOLUNTARY STATEMENT

LSU POLICE DEPARTMENT    . CASE # 20180618-001

Victim ☐  Complainant ☑  Suspect ☐  Witness ☐    Student ☑  Faculty ☐  Staff ☐  Non-LSU ☐

Name: Redacted    Driver's License State/#: Redacted

Race: Black   Sex: F   DOB: Redacted   SSN: Redacted    Email: Redacted

Local Address: Redacted    Phone:

Home Address: Redacted    Phone: Redacted

Her screaming woke me out of my sleep. She cried at the top of her lungs and screamed, asking him to stop, to get off of her and to leave the room. He didn't, and I heard his low voice through the wall. Then, there was more screaming and thrashing within her room. It sounded like they were on the bed. I'm not sure how long the noise was for, but it kept going while I was on the phone with the police. Then, her door opened and she was sniffling as she left. She sounded like she was in her bathroom, then the door opened again. His voice was in the hallway, and she screamed again. The door slammed shut and he said "Shut up"

Signature: Redacted    Location: LUCA - Rm 409   Date / Time: 2.50am 6/18/18

Officer's printed name: HUGHES  112122    Officer's signature: [signature]

Page 1 of 1

## EXHIBIT A

BOS-002005

# LSU Police Department
# Initial Report Form

## Case Number:
## 20180618-001

| Begin Incident Date / Time: | End Incident Date / Time: | Date Reported: | Officer: |
|---|---|---|---|
| 6/18/2018  2:21:00AM | 6/18/2018  2:21:00AM | 6/18/2018  2:21:36AM | Hughes, Randall U2122 |

**Address:**
WEST CAMPUS APTS 409

**COMPLAINANT**           ███ Redacted Redacted

**Offense:**
**LRS INFO**              INFO ONLY

---

**Narrative:**
20180618-001

DISTURBANCE

On June 18, 2018, at 0221 hours, I, Officer Randall Hughes responded to West Campus Apartments on LSU campus regarding an argument between two people. Upon arrival, Officer Frost and I met with ███ ███ (LSU Student) who was the complainant, as well as ██Reda███ (LSU Student) and Jade Lewis (LSU Student) who were the two subjects arguing. ███, Lewis, and ███ provided statements regarding the incident, and all subjects were released from the scene without charges.

Officer Randall Hughes, U2122
LSUPD, Uniform Patrol Division

(Initial Version)
Date Printed:
11/20/2020

Case Number: 20180618-001
Page 1 of 1

## EXHIBIT A

BOS-002006

| INCIDENT NUMBER:<br>20180618-001 | LSU POLICE<br>DEPARTMENT<br><br>INCIDENT REPORT | ORI # |
|---|---|---|

## ADMINISTRATIVE INFORMATION

| REPORT DATE<br>06/18/2018 2:21:36 | INCIDENT START DATE<br>06/18/2018 2:21:00 AM | DOW<br>2 | INCIDENT END DATE<br>06/18/2018 2:21:00 AM | INCIDENT DESCRIPTION<br>DISTURBANCE - DISTURBANCE |
|---|---|---|---|---|

| LOCATION OF INCIDENT<br>WEST CAMPUS APTS 409 BATON ROUGE LA | OFFENSE TRACT<br>ON CAMPUS | CASE STATUS<br>INACTIVE |
|---|---|---|

| EVIDENCE COLLECTED ☐ | WEATHER | TEMP | LIGHTING | EXCEPTIONAL CLEARANCE | EXC CL DATE |
|---|---|---|---|---|---|

## OFFENSE INFORMATION

| STATUTE CODE<br>INFO | STATUTE DESCRIPTION<br>INFO ONLY | | | | TYPE OF WEAPON USED | |
|---|---|---|---|---|---|---|

| UNITS ENTERED | FORCED ENTRY ☐ | COMPUTER USE ☐ | ALCOHOL USE ☐ | DRUG USE ☐ | SECURITY TYPE | COUNTS<br>1 | COMPLETED ☑ | F/M<br>MISC |
|---|---|---|---|---|---|---|---|---|

| LOCATION TYPE<br>RESIDENCE/HOME | BIAS MOTIVATION<br>NONE | CRIMINAL ACTIVITY |
|---|---|---|

| STATUTE CODE | STATUTE DESCRIPTION | | | | TYPE OF WEAPON USED | |
|---|---|---|---|---|---|---|

| UNITS ENTERED | FORCED ENTRY ☐ | COMPUTER USE ☐ | ALCOHOL USE ☐ | DRUG USE ☐ | SECURITY TYPE | COUNTS | COMPLETED | F/M |
|---|---|---|---|---|---|---|---|---|

| LOCATION TYPE | BIAS MOTIVATION | CRIMINAL ACTIVITY |
|---|---|---|

## VICTIM INFORMATION

| VIC# | SAME AS COMPLAINANT ☐ | NAME (LAST, FIRST MIDDLE) | HOME # | CELL # | WORK # |
|---|---|---|---|---|---|

| ADDRESS | EMAIL |
|---|---|

| DOB | AGE | TO AGE | SEX | RACE | ETHNICITY | RESIDENT STATUS | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|---|

| EYE COLOR | HAIR COLOR | SSN | OLN # | OLN STATE |
|---|---|---|---|---|

| SCARS/MARKS/TATTOOS |
|---|

| EMPLOYER/SCHOOL | OCCUPATION | ADDRESS |
|---|---|---|

| TYPE OF VICTIM | AGGRAVATED ASSAULT CIRCUM | JUST HOM CIRCUM | STATEMENT ☐ | DOMESTIC ☐ |
|---|---|---|---|---|

| INJURY TYPE | | RELATIONSHIP TO OFFENDER 1-10 | | Offenses Involved 1-10 | |
|---|---|---|---|---|---|
| ☐ None | ☐ Unconscious | 1: | 6: | 1: | 6: |
| ☐ Minor | ☐ Lacerations | 2: | 7: | 2: | 7: |
| ☐ Internal | ☐ Bones | 3: | 8: | 3: | 8: |
| ☐ Teeth | ☐ Other | 4: | 9: | 4: | 9: |
| | | 5: | 10: | 5: | 10: |

## COMPLAINANT INFORMATION

| NAME (LAST, FIRST MIDDLE)<br>Redacted, ██ Redacted | HOME # | CELL #<br>█ Redacted | WORK # | STATEMENT ☐ |
|---|---|---|---|---|

| ADDRESS<br>Redacted | EMAIL<br>Redacted su.edu |
|---|---|

| DOB<br>Redacted | AGE<br>19 | SEX<br>F | RACE<br>B | ETHNICITY<br>N | RESIDENT STATUS<br>RESIDENT | OLN #<br>Redacted | OLN STATE |
|---|---|---|---|---|---|---|---|

## OFFICER INFORMATION

| REPORTING OFFICER<br>Jones, Randall<br>U2122 | REVIEWING OFFICER<br>Bergeron, Charles A<br>U1615 | APPROVING OFFICER |
|---|---|---|

11/20/2020 8:45:30 AM    Page 1  of 8

# EXHIBIT A

BOS-002007

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 373-4    10/13/23    Page 39 of 47
Case 3:21-cv-00242-WBV-SDJ    Document 373-4 *SEALED* 07/10/23    Page 39 of 47

| INCIDENT NUMBER:<br>20180618-001 | **LSU POLICE<br>DEPARTMENT**<br>**INCIDENT REPORT**<br>OTHER PERSONS INVOLVED | ORI # |
|---|---|---|

| INVOLVEMENT TYPE<br>OTHER | NAME (LAST, FIRST MIDDLE)<br>LEWIS, JADE M | HOME # | CELL #<br>843-295-8876 | WORK # |
|---|---|---|---|---|

| ADDRESS | | | EMAIL<br>jademlewis@gmail.com | |
|---|---|---|---|---|

| DOB<br>1998 | AGE<br>19 | TO AGE | SEX<br>F | RACE<br>W | | ETHNICITY<br>N | HEIGHT<br>507 | WEIGHT<br>130 |
|---|---|---|---|---|---|---|---|---|

| EYE COLOR<br>BLUE | HAIR COLOR<br>BLONDE OR | SSN<br>-3813 | OLN # | OLN STATE<br>SC |
|---|---|---|---|---|

| SCARS/MARKS/TATTOOS | | | | STATEMENT ☐ |
|---|---|---|---|---|

| INVOLVEMENT TYPE<br>OTHER | NAME (LAST,<br>Redacted | Redacted | HOME # | CELL #<br>Redacted | WORK # |
|---|---|---|---|---|---|

| ADDRESS<br>Redacted | | | EMAIL | |
|---|---|---|---|---|

| DOB<br>Redacted | AGE<br>21 | TO AGE | SEX<br>M | RACE<br>B | | ETHNICITY<br>N | HEIGHT<br>606 | WEIGHT<br>220 |
|---|---|---|---|---|---|---|---|---|

| EYE COLOR<br>BROWN | HAIR COLOR<br>BROWN | SSN | OLN # | OLN STATE<br>LA |
|---|---|---|---|---|

| SCARS/MARKS/TATTOOS | | | | STATEMENT ☐ |
|---|---|---|---|---|

| INVOLVEMENT TYPE | NAME (LAST, FIRST MIDDLE) | HOME # | CELL # | WORK # |
|---|---|---|---|---|
| ADDRESS | | | EMAIL | |
| DOB | AGE | TO AGE | SEX | RACE | ETHNICITY | HEIGHT | WEIGHT |
| EYE COLOR | HAIR COLOR | SSN | OLN # | OLN STATE |
| SCARS/MARKS/TATTOOS | | | | STATEMENT ☐ |

| INVOLVEMENT TYPE | NAME (LAST, FIRST MIDDLE) | HOME # | CELL # | WORK # |
|---|---|---|---|---|
| ADDRESS | | | EMAIL | |
| DOB | AGE | TO AGE | SEX | RACE | ETHNICITY | HEIGHT | WEIGHT |
| EYE COLOR | HAIR COLOR | SSN | OLN # | OLN STATE |
| SCARS/MARKS/TATTOOS | | | | STATEMENT ☐ |

| INVOLVEMENT TYPE | NAME (LAST, FIRST MIDDLE) | HOME # | CELL # | WORK # |
|---|---|---|---|---|
| ADDRESS | | | EMAIL | |
| DOB | AGE | TO AGE | SEX | RACE | ETHNICITY | HEIGHT | WEIGHT |
| EYE COLOR | HAIR COLOR | SSN | OLN # | OLN STATE |
| SCARS/MARKS/TATTOOS | | | | STATEMENT ☐ |

11/20/2020  8:45:30 AM    Page 2  of 8

**EXHIBIT A**

BOS-002008

| INCIDENT NUMBER: 20180618-001 | LSU POLICE DEPARTMENT INCIDENT REPORT NARRATIVE NARRATIVE | ORI # |
|---|---|---|

☐ JUVENILE

NARRATIVE TITLE:  Narrative From CAD

ATIVE:
Complaint Type: DISTURBANCE - DISTURBANCE
Caller Name:
Officer ID: U-2122, Officer Name: HUGHES, RANDALL

[6/18/2018 2:29:38 AM . pos1 . mand121]
TXT
NAME Redacted
ADDR   Redacted
SEX/F, DOB/            HGT/511, WGT/147, HAI/BRO  EYE/BRO
 Redacted      EXP 12/04/19
RSTR:NONE
STATUS:VALID


END

[6/18/2018 2:27:22 AM : pos1 . mand121]
DL NO              ACN 1011604600008612

                    299262563 BEAU CNTY
SEX F HGT 5 07 WGT 130 BIRTH    /1998 EYE
 RACE WHITE
STATUS-DL:NO SUSPENSION  CDL:NO DISQUALIFICATION
DRIVER LICENSE     CLASS  D  ISSUED  11/10/2016 ACN 1011604600008612
NO CURRENT VIOLATIONS, SUSPENSIONS, OR ACCIDENTS
** END OF INQUIRY

[6/18/2018 2:24:22 AM : pos2 . emason)
 )/F (NEW) OLN Redacted    DISC/03
 Redact
     Redacted
BATON ROUGE     70810
DOB  Redacted  RAC/B SEX/M EYE/BRN WGT/220 HGT/606
RES 00,00,00     EXP 20221214

[6/18/2018 2:23:41 AM : pos1 . mand121]
Landmark Comment: 60 LSU PLACE

[6/18/2018 2:22:02 AM : pos1 . mand121]
Cross streets: ASTER ST//BROUSSARD EXT
Landmark: WCA
Landmark Comment: 60 LSU PLACE

11/20/2020 8:45:30 AM    Page 3   of 8

**EXHIBIT A**

BOS-002009

| INCIDENT NUMBER: 20180618-001 | **LSU POLICE DEPARTMENT** INCIDENT REPORT NARRATIVE | ORI # ▬▬▬▬ |
|---|---|---|

| | NARRATIVE | ☐ **JUVENILE** |
|---|---|---|

**NARRATIVE TITLE:** SUMMARY

NARRATIVE:
20180618-001

DISTURBANCE

On June 18, 2018, at 0221 hours, LSUPD responded to West Campus Apartments on LSU campus regarding a disturbance.

11/20/2020  8:45:30 AM    Page 4    of 8

**EXHIBIT A**    BOS-002010

| INCIDENT NUMBER: 20180618-001 | **LSU POLICE DEPARTMENT** INCIDENT REPORT NARRATIVE | ORI # ▮170400 |
|---|---|---|
| | **NARRATIVE** | ☐ JUVENILE |

NARRATIVE TITLE:    DETAILS

RATIVE:
20180618-001

DISTURBANCE

On June 18, 2018, at 0221 hours, I, Officer Randall Hughes responded to West Campus Apartments on LSU campus regarding an argument between two people. Upon arrival, Officer Frost and I met with ▮▮▮▮▮▮ (LSU Student) who was the complainant, as well as ▮Reda▮▮ (LSU Student) and Jade Lewis (LSU Student) who were the two subjects arguing. ▮▮▮, Lewis, and ▮▮ provided statements regarding the incident, and all subjects were released from the scene without charges.

Officer Randall Hughes, U2122
LSUPD, Uniform Patrol Division

11/20/2020  8:45:30 AM    Page 5    of 8

**EXHIBIT A**

BOS-002011

| INCIDENT NUMBER: 20180618-001 | LSU POLICE DEPARTMENT INCIDENT REPORT NARRATIVE | ORI # |
|---|---|---|

NARRATIVE

NARRATIVE TITLE:  SUPPLEMENT

☐ JUVENILE

NARRATIVE:
20180618-001

DISTURBANCE

On June 18, 2018, at 0221 hours, I, Officer Randall Hughes responded to West Campus Apartments, room 409, on LSU campus regarding a disturbance. According to LSUPD Communications, one of the occupants believed her roommate was being attacked.

Upon arrival, Officer Frost and I met with ▓▓▓ (LSU Student, Redacted) who was the complainant. She directed us to room 409B where her roommate was staying. I knocked on the door and Reda ▓ (LSU Student, Redacted) answered the door. Inside I could see a female, later identified as Jade Lewis (LSU Student, 843-295-8876), lying in the bed in the room covering herself with the bed sheets. Lewis was only wearing a t-shirt and seemed to be in emotional distress because she was crying, sniffling, and red-faced as though she had been crying for an extended period of time. Officer Frost directed ▓ to sit in the living room and I proceeded to interview Lewis about the circumstances.

Lewis was still in distress and was not able to remain still while I interviewed her. She left the room to put on a pair of shorts and then walked back and forth between her room and ▓▓▓ room until I stopped her for the interview. Lewis stated that ▓ was her boyfriend and they were having an argument but was not sure how the argument got started. Lewis stated that the argument was not a physically violent one and that she was not hurt in any way. Lewis asked to go outside to get some fresh air, so Officer Persinger escorted her outside while I continued to investigate. While I was interviewing her, I observed that the room did not have any signs of a struggle.

I then interviewed ▓▓▓ who stated that she was woken up at approximately 0215 hours by ▓ and Lewis yelling. According to ▓▓, Lewis was yelling "No" and ▓ heard ▓ yell "Shut up" and then they were quiet until my arrival. I asked ▓ if she heard anything specific that would make her think that Lewis was being attacked, to which ▓ stated that, other than some shuffling and the previously mentioned yelling, she did not hear anything specific to Lewis being physically harmed. ▓ further explained that she had heard that ▓ was abusive towards Lewis from a mutual acquaintance of Lewis and ▓ named ▓. ▓ had met ▓ when he came to the apartment a couple weeks prior to this incident. ▓ stated that the day she met ▓, ▓ asked ▓ to try and get Lewis to break up with ▓ because ▓ had "choked out" Lewis. The only information ▓ was able to provide ▓▓▓ was his first name. ▓ also stated that Lewis had told her that ▓ has hit her before, but ▓ was unable to provide any specifics about those events. According to ▓, she believed that Lewis and ▓ had been dating for around a year and a half.

I met with Officer Frost who advised me that ▓ had stated that he was in the apartment and had been arguing with Lewis, but was also not providing details as to how the argument started.

I gave each person involved the opportunity to complete a Voluntary Statement Form, which each subject elected to do. ▓ written statement says that he and his girlfriend (Lewis) were fighting when her roommate (▓▓▓) called the police. After ▓ completed his written statement he was released from the scene. Before leaving the area, ▓ was advised that he should not return to the apartment that night and to make sure both parties are calm before meeting again. ▓ agreed that that was a good idea and proceeded to leave the area. Lewis' written statement says that she and ▓ had a disagreement over text. ▓ then came over to talk and started yelling at her. Lewis further wrote that she was tired and wanted ▓ to leave, but he was refusing. This conflicted with what she had told me before, as she had previously stated that she did not know the nature of their argument and had declined to provide details about what was said during the argument. ▓ had already left the scene by the time Lewis finished her written statement. Lighthouse program information was provided to Lewis and she was advised that she could follow up with the police department at any time if she wanted to discuss this incident later. Lewis was released from the scene after completing her statement, and she left the apartment to go to a teammate's apartment at the suggestion of officers to help prevent ▓ from returning for the night.

▓ written statement says that Lewis' screaming at the top of her lungs caused ▓ to wake up from sleeping. According to ▓ written statement, Lewis was asking ▓ to stop and to get off of her and leave the room. ▓ further states that she heard thrashing sounds within the room that sounded like they were on the bed. ▓ continues by stating that she heard Lewis' door open and heard Lewis sniffling in the bathroom. ▓ then states that the door to Lewis' room opens again and ▓ voice could be heard and Lewis screamed again followed by the door slamming and saying "Shut up". This conflicts with what she verbally stated to police, which was that she only heard Lewis yelling "No" and saying "Shut up".

▓ was instructed to return home and not return or have contact with Lewis for the rest of the night after completing his ▓ment, instructions he followed without issue. Lewis stated that she was not hurt and there were no obvious signs of injury on her person and I did not observe any signs of a struggle in the room that Lewis and ▓ were in. ▓ did not see any

11/20/2020 8:45:30 AM        Page 6   of 8

**EXHIBIT A**

BOS-002012

| INCIDENT NUMBER:<br>20180618-001 | **LSU POLICE<br>DEPARTMENT**<br>INCIDENT REPORT<br>NARRATIVE | ORI # ████ ██ |
|---|---|---|

| NARRATIVE | ☐ **JUVENILE** |
|---|---|

NARRATIVE TITLE:   SUPPLEMENT

NARRATIVE:

physical altercation and only heard phrases that indicated that there was an argument taking place. The ████ subject who has possibly witnessed a physical altercation has not been identified beyond his first name. At this time, all parties have described a verbal altercation took place, however a follow up for further investigation by detectives has been requested.

The written statements have been scanned and added into RMS under "Objects".

My Body Worn Camera Recorder was activated for this event.

Nothing further.

Officer Randall Hughes, U2122
LSUPD, Uniform Patrol Division

11/20/2020  8:45:30 AM     Page  7   of  8

**EXHIBIT A**

BOS-002013

| INCIDENT NUMBER:<br>20180618-001 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # |
|---|---|---|
| | NARRATIVE | ☐ JUVENILE |

NARRATIVE TITLE:    SUPPLEMENT #2-▮▮▮▮

ATIVE:
20180618-001
DISTURBANCE
On June 25, 2018 at approximately 1600 hrs, I met with Jade Lewis at her ▮▮Redacted▮▮ to discuss the events that occurred in the early hours of June 18, 2018.
Lewis explained that she had been involved in a dating relationship with ▮Reda▮. Lewis said that he had come over on that evening to discuss some comments that had been made via social media sites. Lewis said that the argument got heated and she and ▮▮ began to yell at each other, causing her to tell him to leave the apartment.
I confronted Lewis about the possibility that the argument lead to physical or sexual abuse. Lewis assured me that she and ▮▮▮ have only ever shared a consensual sexual relationship and that ▮▮ did not force himself on her. Lewis said that left after police arrived and that she has not had any problems with him since that time.
Lewis went on to explain that she and ▮▮ are no longer dating. I gave Lewis my card and information and told her that if she had any further problems that she could contact me directly or contact he police department at the main phone number.
Detective ▮▮▮
U-1319

11/20/2020 8:45:30 AM    Page 8    of 8

# EXHIBIT A

BOS-002014

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Case 3:21-cv-00242-WBV-SDJ    Document 473-4    10/13/23    Page 46 of 47
Case 3:21-cv-00242-WBV-SDJ    Document 373-4 *SEALED* 07/10/23    Page 46 of 47

## Louisiana State University
## Sexual Misconduct and Sexual Harassment (PM73) Complaint Form

*Submitted on August 13, 2018 at 8:53:27 pm CDT*

Nature:                            **Dating Violence**
Urgency:                          **Normal**
Incident Date and Time:   **2018-08-13**
Incident Location:            **Off-Campus 8:00 am**

<u>Reported by</u>

Name:       **Miriam Segar**
Title:         **Sr. Associate Athletics Director**
Email:        **msegar@lsu.edu**
Phone:       **225-578-5785**
Address:     **North Stadium Drive**
                    **[UNAUTHENTICATED]**

<u>Involved Parties</u>

**Jade Lewis (89-676-0043)**        1998██████        jlew158@lsu.edu        843-295-8876
Victim                                          Female                    Nicholson Gateway

**Reda** ████ **Redacted** ██████        ████████ **Redacted** ████████
Alleged                                        Male                      OFF

<u>Questions</u>

If this is a discrimination or harassment complaint, please indicate the protected status(es) that is/are the basis of the alleged behavior.

Describe the incident(s)/event(s) including date, times, locations, and any potential witness(es) to the behavior.
**Jade Lewis contacted me via text message on Sunday, August 12 asking to meet with me on Monday, August 13. We set a meeting for 8:00 am and she told me that she requested the meeting to let me know that she wanted to be truthful with the University and Athletics Department about the abuse she has suffered from** ████ **Reda** ████ **. She indicated she was coming forward now because she decided to break up with him had no reason to cover for him any longer. She expressed fear over retaliation as she indicated that** ████ **has told her that his guardian (Mr. Bernhard) would have her deported (she is international) and kicked out of LSU if she told about their violent relationship. Jade expressed interest in obtaining a restraining order. I explained that a restraining order could only be obtained through filing a police report and appealing to a judge for a court order, but encouraged her to talk with the police. She indicated she wanted to first speak with the University staff and truthfully answer questions about incidents. She indicated that she has text messaging and pictures that document the circumstances and she would be willing to share with University. Also said that there are other friends of hers that have witnessed events and are aware of circumstances. I encouraged her to be truthful and provide complete information to campus.**

Describe the impact the behavior has had on you.
**Concerned for her safety and want to make sure the case is handled with high priority and documented fully.**

Have you taken any action to stop the behavior?
**Yes**

If you have taken action to stop the behavior, what actions have you taken and what was the outcome?
**Encouraged Jade to report incidents to police and press formal charges. Encouraged Jade to report incidents to University investigators truthfully and in detail with any documentation available.**

**EXHIBIT**
**9**

BOS-001859

# EXHIBIT A

Please add any additional information that supports your complaint.  You may upload screenshots, other pictures, or documents later in this form.

What remedy are you seeking (no contact, restrictions or limitations, removal)?
**Full investigation conducted to determine necessary outcome.**

*Pending IR #00015379*
*Submitted from 130.39.199.197 and routed to Jennie Stewart (Title IX Coordinator, Office of the General Counsel). Processed by routing rule #106.*
*Copies to: mari@lsu.edu,jscott11@lsu.edu,jsanders@lsu.edu,*

# EXHIBIT A

BOS-001860