CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | **LSU POLICE<br>DEPARTMENT**<br>INCIDENT REPORT<br>NARRATIVE | ORI # ▇▇▇▇▇ |
|---|---|---|

| NARRATIVE | ☐ JUVENILE |
|---|---|

NARRATIVE TITLE:    SUPPLEMENT #1 - Garguiolo

NARRATIVE:

"thats it" - Lewis

"yeah but I'm going to go so it's not sketchy" ▇▇▇▇▇

"say u hear or something" - Lewis

"I love u" - Lewis

Attached to the case are the text messages provided to me by Ms ▇▇▇▇

On August 19th - 20th, 2018, I began writing search warrants for the case. These were warrants for the searches of Mr. ▇▇▇ cell phones (discovered he was using a secondary phone while I was at court for his bond hearing // cell phone number: Redacted - Apple I-Phone - Serial number FD4VH53PJCLN /// secondary cell phone number; Redacted - Apple I-Phone - G6TX18HZJCLG), Ms. Lewis' cell phone (843-295-8876 - Apple I-Phone - Serial number: F17WQHCMJCLG), Mr. Lewis' i-cloud data, Mr. ▇▇▇ i-cloud data, and cell phone records for all three phones.

Mr. ▇▇▇ cell phone (number Redacted search warrant was reviewed and signed by the Honorable Judge D. Johnson of the 19th JDC on 8-19-2018 at 0123 hours. This warrant was then provided to Ms. Blaize the following morning (8-20-2018) at the 19th JDC, she then provided me with Mr. ▇▇▇ cell phones

Mr. ▇▇▇ secondary cell phone (number Redacted search warrant was reviewed and signed by Judge Johnson on 8-20-2018 at 1240 hours. This cell phone was obtained earlier that morning at the court house through Ms. Blaize.

Ms. Lewis' cell phone (number 843-295-8876) search warrant was reviewed and signed by Judge Johnson on 8-19-2018 at 0123 hours. This cell phone was obtained on 8-20-2018 at approximately 1030 hours from Ms. Lewis at Lockett hall. These cellphones were placed into "air plane" mode at approximately 1045 hours. These cell phones were not analyzed by LSU PD Detectives, they were packaged as evidence and taken to the Louisiana Attorney General's office for digital forensic analysis.

Mr. ▇▇▇ cell phone records search warrant for his cell phone (phone number Redacted was reviewed and signed by Judge Johnson on 8-20-2018 at 1413 hours. This warrant was then digitally (electronic mail) sent to AT&T Mobility - Cingular wireless. On 8-25-2018, AT&T provided cell phone records relevant to this warrant. I did not find applicable evidence to the case in these provided records.

Mr. ▇▇▇ cell phone records search warrant for his cell phone (phone number Redacted was reviewed and signed by Judge Johnson on 8-20-2018 at 1418 hours. This warrant was then digitally (electronic mail) sent to Verizon wireless. On 8-25-2018, Verizon wireless provided cell phone records relevant to this warrant. I did not find applicable evidence to the case in these provided records.

Ms. Lewis' cell phone records search warrant for her cell phone (phone number 843-295-8876) was reviewed and signed by Judge Johnson on 8-20-2018 at 1423 hours. This warrant was then digitally (electronic mail) sent to Verizon wireless. On 8-25-2018, Verizon wireless provided cell phone records relevant to this warrant. I did not find applicable evidence to the case in these provided records.

Mr. ▇▇▇ Apple I - Cloud data search warrant for his e-mail Redacted @yahoo.com) was reviewed and signed by Judge Johnson on 8-20-2018 at 1434 hours. This warrant was then mailed to Apple Incorporated, I am awaiting these records; once the records are obtained I will add another supplement to the case.

Ms. Lewis' Apple I - Cloud data search warrant for her e-mail (jademlewis@gmail.com) was reviewed and signed by Judge Johnson on 8-20-2018 at 1436 hours. This warrant was then mailed to Apple Incorporated, I am awaiting these records; once the records are obtained I will add another supplement to the case.

All these search warrants are attached to the case

At approximately 1300 hours, the District Attorney's Office provided me with a "Go-Phone" (phone number: 225-223-1489) to give to Ms. Lewis due to her cell phone being taken as per the search warrant.

At approximately 1400 hours, I delivered the phone to Ms. Lewis at her apartment (Ox Bow hall // room 5006). Upon delivery of the cell phone Ms. Lewis invited me into her apartment at which time she spoke to me about the situation. Ms. Lewis explained to me that she did not want her parents to know of the victim in the situation was her because she believes that they will pull her out of school. Ms. Lewis indicated that was mad at Ms. Segar for investigating the incident and letting the police know what had happened. I then asked Ms. Lewis if she was threatened and thus recanted her statements, she explained that she was not. Ms. Lewis went on to say that she believed that the police were following her. When I asked why she though this she explained that while in "Tiger Land", shortly after Mr. ▇▇▇ was arrested, her friend, Redacted received a MIP (Minor in possession of an alcoholic beverage) while they were together. Ms. Lewis believed that this incident was retribution for the arrest of Mr. ▇▇▇. I explained the Jude (Juvenile underage drinking enforcement) Task Force to Ms. Lewis, and further said that working on this night was the Baton Rouge Police Department who would not have of known that Ms. Lewis was the victim of the ▇▇▇ assault, nor would they have of purposely targeted her for being a victim; Ms. Lewis did not seem accepting of my answer. Ms. Lewis went on to explain that she wanted all the media surrounding the case to end and she did not want to see Mr. ▇▇▇ go to jail, and due to the situation her friends were no longer talking to her. At this time I told Ms. Lewis that she should be expecting a phone call from Ms. Hamilton from the District Attorney's office, I then left the dormitory.

# EXHIBIT A

BOS-002122

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # ▉ |
|---|---|---|
| | NARRATIVE | ☐ JUVENILE |

**NARRATIVE TITLE:** SUPPLEMENT #1 Continued - Garguiolo

NARRATIVE:

On August 21st, 2018, at approximately 1000 hours I met with David and Rosalita Lewis at the Lod Cook hotel located in LSU's campus. The Lewis' had concerns for their daughter's safety and explained that they had known for the past six months that something was different about their daughter. Mr. and Mrs. Lewis reiterated previous information that they had given me. At this time I explained that the investigation is ongoing and their daughter's safety was the main concern for the Police Department.

I next wrote a search warrant for Ms J. Lewis' medical records held by LSU from January 1st 2017 to August 17th 2018. This warrant was reviewed and signed by Judge D. Johnson of the 19th JDC on August 21st 2018 at 1632 hours. This warrant was then served to the Office of the LSU President, F. King Alexander on August 22nd at approximately 1100 hours. At approximately 1630 hours, these records were made available to by the LSU General Counsel at this time I collected the records. Upon review I found that the first portion of records appeared to have come from the LSU health center, these records did not indicate that Ms. Lewis had a rib injury nor did they treat her for a rib injury. A second folder within the records packet had a typed statement from LSU Athletic training. The paper was dated April 25, 2018, and explained that due to Ms. Lewis not being an LSU Athlete at the time of her injury the record was placed into Microsoft Office and not LSU's record system. According to the report, Ms. Lewis notified Donovan White (Graduate Assistant Athletic trainer) that she believed that her ribs were broken due to an altercation with her boyfriend, ▉▉▉▉. Ms. Lewis explained that she was punched by Mr ▉▉ on April 3rd and was still having severe rib pain.  At this time Mr. White notified Micki Collins (Staff Athletic trainer for LSU Women's Tennis) who in turn notified Miriam Segar. According to the report, Ms. Lewis was then medically examined by Dr Carey Winder at 1730 hours on April 25, 2018. Upon physical examination Dr Winder diagnosed Ms Lewis with bruising of the soft tissue around her ribs. The report indicated that Ms. Lewis had pain with exhalation  twisting  etc  but had no fracture  The document went on to explain that Dr. Winder indicated that if the pain continued past ten days  Ms Lewis  should come see him in his office  Accompanied with this document was a treatment schedule for Ms. Lewis which was provided by Donovan White The treatment consisted of "Hivamat, laser and ice", on six occasions from 4/25/2018 until 5/7/2018 at which time Ms  Lewis' swelling was gone and she no longer had any pain.  On August 23rd , 2018  at approximately 1115 hours LSU's General Counsel were given more medical records from LSU Athletics on Ms. Lewis. These records were dated from 12/05/2016 to 5/15/ 2017 and did not show that Ms. Lewis was evaluated for violent abuse injuries. The report specifically showed that Ms Lewis was treated for ankle tightness, an illness, ankle sprain, and calf tightness.

On August 22nd. 2018 at approximately 0830 hours, Detective ▉▉ and I went to the LSU Tennis facility to interview Mike and Julia Sell (LSU Women's Tennis Coaches). Once at the tennis facility we first spoke with Kasen Dudley (LSU Tennis Director of Operations) When I asked if Mr. Dudley knew why we were speaking to him he explained that he was told by Mike Sell that the gir abused by ▉▉▉ was Jade Lewis. Mr. Dudley went on to explain that Mr Sell had told him that if Mr Lewis shows up at the facility he should get Mr. Sell to talk with him. When I asked if Mr. Dudley had heard of any such abuse he explained that Mason Trapan (Ex-Manager - left LSU in June 2018) had said that something had occurred between Ms  Lewis and Mr ▉ and that it was "bad news"; Mr. Trapan did not further explain to Mr. Dudley the incident.

We then went and spoke to Julia Sell in her office. Ms. Sell explained that she did not know of any abuse in the relationship between Ms. Lewis and Mr. ▉▉ until it was reported to her by ▉▉▉▉. According to Ms. Sell, Ms. ▉▉▉ explained to Ms. Sell that Ms. Lewis was in an incident at WCA with Mr. ▉ and that the police came to the disturbance, and that Ms Lewis had lied to the police about what had happened. Ms. ▉▉ explained further to Ms Sell that Ms. Lewis had bruises on her body which she was covering up with makeup. The information on this incident was then reported to Miriam Segar. Ms  Sell explained that she didn't realize a change in Ms. Lewis tennis play and that she did not know that Ms. Lewis was being abused We next spoke to Mike Sell in his office. Mr. Sell explained that he did not know of any violence which was occurring to Ms Lewis until it was brought to his and Ms  Sell's attention by Ms. ▉▉▉. Mr. Sell explained that the only injury that he knew that Ms. Lewis had suffered was a sprained ankle at Tulane during a tennis match in 2017. Mr. Sell went on to explain that he did not remember Ms. Lewis being injured in any other way during her course of her student athletic career. Mr. Sell went on to say that he knew there was involvement between Ms. Lewis and Mr. ▉▉ because Mr Lewis (J  Lewis' father) had called Mr Sell (September 2017). Mr. Sell explained that during this conversation, Mr. Lewis had explained that Mr. ▉▉ could 'detour' Ms. Lewis tennis career and that "he is a distraction to her". Mr. Sell explained that Mr Lewis never let him know that there was abuse occurring in the relationship from Mr. ▉▉ to Ms. Lewis. Mr. Sell indicated that he first knew of abuse when Ms. ▉▉▉ reported the incident that occurred at West campus Apartments between Ms  Lewis and Mr. ▉▉.

These interviews were recorded using a voice recorder and are attached to the case

I next wrote a search warrant for Ms J Lewis' medical records held by the office of Dr. Carey Winder (Baton Rouge Orthopaedic Clinic 8080 Bluebonnet Boulevard Suite 1000) from January 1st, 2017 to August 17th, 2018. This warrant was reviewed and signed by Judge D. Johnson of the 19th JDC on August 23rd, 2018 at 0954 hours. This warrant was then served the same day to Trey Williamson (Chief Executive Officer - Baton Rouge Orthopaedic clinic), Mr. Williamson explained he would get the medical files prepared to give to me.

On August 27th, 2018 at approximately 0830 hours, I went to the Baton Rouge Orthopaedic Clinic and met with Dr Carey Winder  When speaking to Dr. Winder he explained that he did evaluate Ms. Lewis on April 25th 2018, during an evaluation visit that he normally conducts with LSU athletes at Tiger Stadium in the Broussard room on a weekly basis. He went on to explain that Ms  Lewis was brought to him by Micki Collins and Donovan White. Dr. Winder said that the injury occurred on April 3rd and was caused by an assault which left Ms. Lewis with pain near her rib area from being hit. Dr. Winder explained that he treated the injury as a contusion. He further explained to the training staff that if Ms. Lewis isn't better in a week to ten days

# EXHIBIT A

BOS-002123

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # ▮▮▮▮ |
|---|---|---|

| NARRATIVE | ☐ JUVENILE |
|---|---|

NARRATIVE TITLE:    SUPPLEMENT #1 Continued - Garguiolo

NARRATIVE:

they should bring her to his office to more formally assess her. Dr. Winder went on to say that the X-ray machine in the stadium was not in working order so she was not given an x-ray during the evaluation. When I asked if he had made a medical report on the examination he explained that he did not and LSU trainers usually notate his medical examinations when they occur at LSU. He went on to say that Mr. White did notate the examination in the LSU computer system. I was also provided the medical files for Ms. Lewis which show that on 2-23-2017 she was evaluated by Dr. Winder for a Left ankle sprain at the Baton Rouge Orthopaedic clinic, no other injuries were listed in these records.

On August 27th, 2018 at approximately 1420 hours, I made contact with Donovan White (Ex-LSU Athletic trainer) via a telephone call and spoke with him about Ms. Lewis. Mr. White explained that he worked with the LSU Tennis team in April, 2017. Mr. White said that he knew Mr. ▮▮▮ and Ms. Lewis were in an on and off relationship which he knew about from seeing them together in the training room in Tiger Stadium. Ms. Lewis would also mention how she "was going to see ▮▮▮". Everyone around Ms. Lewis knew her and Mr. ▮▮▮ were "a thing". Mr. White explained that he first knew that the abuse was occurring on April 25th of 2018 when he was notified of Ms. Lewis' injuries by [Redacted]. At this time Ms. Lewis approached Mr. White and told him that, her and ▮▮▮ got in an argument" and that "▮▮▮ hit her in the ribs". At this time Ms. Lewis had showed Mr. White her stomach area near her ribs which were bruised and visibly swollen. At this time Mr. White had given her ice because it was painful for Ms. Lewis to breathe, turn and get in position to lay on an examination table. Mr. White then notified his supervisor, Miki Collins who in turn notified Ms. Segar, a doctor then evaluated Ms. Lewis. During the doctor's evaluation of Ms. Lewis, Mr. White explained that he jotted down the evaluation in an electronic document and saved it into a computer, but he did not place it into the LSU athletic database. Ms. Lewis, Mr. White, Ms. Collins and Ms. Segar's office to talk about the incident. According to Mr. White, Ms. Lewis gave a time line of incidents with Mr. ▮▮▮ which went back to May-June of 2017. Ms. Lewis mentioned to Mr. White that Mr. ▮▮▮ would track Ms. Lewis' locations with her phone and ask her where she was and get jealous if she was talking to "any other guys". Mr. White described Mr. ▮▮▮ to be controlling based on the information that Ms. Lewis had given him.

On August 27th, 2018 at approximately 1630 hours, I was provided with Ms. Lewis' cellphone, which was confiscated as evidence with a search warrant, back from the Attorney General's office. AG investigators took Ms. Lewis' phone and electronically "dumped" all of the content which it contained on to a flash drive (Sandisk // USB 3 0 // 256 Gigabyte // 75-836 // 00001A). An application (UFED Reader) was used to examine and disseminate all the "dumped" data on the phone to find evidence relevant to the case. I reviewed this data for a short time and found evidence in photograph and text message forms. Due to the size of all the data I redirected the examination of Ms. Lewis' phone to Detective S. ▮▮▮ (LSU PD), see Detective ▮▮▮'s supplement attached to the case. Ms. Lewis' cellphone was placed back into the LSU PD evidence hold.

On August 29th, 2018 at approximately 1515 hours, Miriam Segar called me and provided me with more information relevant to the case. Ms. Segar explained that she had recent contact with ▮▮▮ who had some concerns over the case. According to Ms. Segar, Ms. ▮▮▮ was concerned for her safety due to providing police with evidence relevant to the case. I asked Ms. Segar what safety concerns ▮▮▮ had, Ms. Segar believed there could have been possible threats originating from the family of Mr. ▮▮▮. Ms. Segar further explained that Ms. ▮▮▮ had told her that Ms. Lewis was hit again in Mr. ▮▮▮'s apartment by Mr. ▮▮▮ shortly after he was bonded out of prison. Ms. Segar said that she then spoke to Ms. Lewis who explained that she was provided a lawyer for the case, which she indicated was provided to her by the Bernhard family.

At approximately 1620 hours, I called Ms. ▮▮▮ to discuss the recent information. Ms. ▮▮▮ explained that Mr. ▮▮▮ had thrown Ms. Lewis into a wall in his apartment after he was bonded out of prison. When I asked how she knew this she explained that Mr. ▮▮▮ had knew of the incident and told her about it. I further asked Ms. ▮▮▮ if she was concerned for her safety or if anyone had been threatening her she said no. I then asked her to meet with me the following day for another interview, she said she would be willing to meet.

On August 30th, 2018 at approximately 1050 hours, Detective ▮▮▮ and I met with ▮▮▮ for a second time at the LSU Police Department. I explained to Ms. ▮▮▮ that Ms. Segar had called me and explained a conversation that they had the previous day. Ms. ▮▮▮ went on to explain that Mr. ▮▮▮ had told her that on Sunday (8-19-2018) Ms. Lewis went to the apartment (Victory Commons) of Mr. ▮▮▮. According to Ms. ▮▮▮, Ms. ▮▮▮ had heard a thud against the wall in the apartment, at this time Mr. ▮▮▮ walked out of his room and saw Ms. Lewis crying and Mr. ▮▮▮ was "in her face". At this time Mr. ▮▮▮ said, "▮▮▮ did she or did she not ruin my life?" Mr. ▮▮▮ replied with, "▮▮▮ you're being so stupid, the neighbors could of heard, why are you hitting her?". At this time Mr. ▮▮▮ implied that no one had heard anything, Mr. ▮▮▮ then told Ms. Lewis to stop crying and "gather your tears" before she left the apartment. Ms. ▮▮▮ went on to say that she had spoken to [Redacted] about the incident. Ms. [Redacted] replied to this explaining that she had saw bruising on Ms. Lewis. Ms. ▮▮▮ asked Ms. Lewis about the bruising at which time she explained it was from falling off of her scooter.

When I asked Ms. ▮▮▮ why Ms. Segar had told me she was nervous for her safety she explained that she did not know what could happen if Mr. ▮▮▮ knew that she was aiding the Police in the investigation. Ms. ▮▮▮ explained that Mr. ▮▮▮'s family was quite powerful in Baton Rouge, and that ▮▮▮'s dad is really powerful which makes her feel uneasy but added that no threats were made to her. Ms. ▮▮▮ went on to say that Ms. [Redacted] received a MIP (minor in possession of an alcoholic beverage), and it was believed that the Bernhard family had the vehicle targeted by police to get Ms. Lewis and Ms. Richardson in trouble. I explained that the Jude Task Force works in a fashion to find underage drinkers and an MIP being issued to Ms. Richardson is just a part of such circumstances. Ms. ▮▮▮ also explained that there was a LSU Police vehicle parked outside of Ox Bow Hall which she found strange, the reason for this was added safety to the building. I next

# EXHIBIT A

BOS 002124

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # ▮▮▮▮▮ |
|---|---|---|

| NARRATIVE | ☐ JUVENILE |
|---|---|

NARRATIVE TITLE:   SUPPLEMENT #1 Continued - Garguiolo

NARRATIVE:

asked about the issue Ms. Segar had told me about an attorney. Ms. ▮▮▮▮ explained that Ms. ▮Redacted▮ had told her that Ms. Lewis was given an attorney that the Mr. ▮▮▮▮ family was paying for. I further explained to Ms. ▮▮▮▮ to call the police with any further information and especially with any new ongoing violence against Ms. Lewis.

This interview was recorded using my body camera and voice recorder which is attached to the case.

On August 30th, 2018 at approximately 1345 hours, I went to the Attorney General's office and met with Investigator Duane Vince of the Cyber Crimes unit. Investigator Vince provided me with two flash drives which contained the "dumped" data from both of Mr. ▮▮▮ cell phones (Personal cell phone ▮▮▮Redacted▮▮▮ // Sandisk USB flash drive // 256 Gigabytes // 75-836 - 00002A // Password: 75-836D@vls  /// cell phone ▮▮▮ // Sandisk USB flash drive // 128 Gigabytes // 75-836 - 00003A). Investigator Vince took Mr. ▮▮▮ cell phones and electronically "dumped" all of the content which the phones contained on to two separate flash drives. Upon retrieval of the flash drives Mr. Vince explained that Mr. ▮▮▮ cellphone ▮Redacted▮ was encrypted with a password because during his initial analysis of the phone data, he located a video which he determined to be child pornography (IMG 0424 - video of a juvenile male masturbating). The matter involving the child pornography is currently being investigated and the report will be supplemented at a later date.

I next signed a form showing the transfer of custody of the evidence from the A.G. Office's possession into mine.

I next used the application (UFED Reader) to examine and disseminate all the "dumped" data on the phones to find evidence relevant to the case.

I first reviewed Mr. ▮▮▮ cell phone ▮Redacted▮ for evidence. I first began to examine text messages between Mr. ▮▮▮ and other individuals. In one text message conversation Mr. ▮▮▮ was texted from the phone number ▮▮▮▮ this phone number appears to be ▮▮▮▮'s cellphone) on 4-24-2018 at 2331 hours. The text reads, "Yo this is Jade my phone died", Mr. ▮▮▮ responds with, "Stop texting me": "I blocked you for a reason" Ms. Lewis responds with, "My rib is broken"; "I'm at home"; "I can't stand or sleep on it I can't go to a doc bc I can't tell them what happened come to my apt" This string of text messages end on 4-25-2018 at 2346 hours.

Another text message conversation between Mr. ▮▮▮ and the phone number ▮Redacted▮ (listed in the contacts as "Baby Jo Jo" // this phone number is registered to multiple people) occurred on 4-14-2018 at 1624 hours. At this time Mr. ▮▮▮ sends a "snapshot" of a text message that he had with Ms. Lewis to "Baby Jo Jo" via a text message. In the conversation between Mr. ▮▮▮ and Ms. Lewis, Mr. ▮▮▮ text to her, " you hit me...and I hit you once...I'll be glad to go in court with that."; "And you know better than that...don't be stupid" "Baby Jo Jo" later texts, "and there is no proof anymore", Mr. ▮▮▮ replies, "she's not gonna win", "Baby Jo Jo" replies with, "The police is going to tell her she has nothing on you" "I told you this" hitting her "not a smart decision", Mr. ▮▮▮ responds with, "Idc"; "She broke into my house", Baby Jo Jo - "well yeah  Were there any witnesses?", Mr. ▮▮▮ -"Not at all" At 1738 hours, "Baby Jo Jo" asks, "Did you hit her again though? Like weeks ago?", Mr. ▮▮▮ responds with, "Yes".

On 5-19-2017 at 2328 hours, "Baby Jo Jo" asks "Baby Jo Jo" "Why did you punch her ? You are better than that", Mr. ▮▮▮ responds, "You don't understand". Mr. ▮▮▮ sends another text in this immediate conversation which reads, "Okay you don't....the way your BF was calling you out your name...she try's to do this to me  but she was acting as if she was better than me. Telling me what to do. Telling me what I am. No one talks to me like this. So I kicked her out and broke in my room and up her in her place simple".

Another message containing evidence is between Mr. ▮▮▮ and the phone number 225-939-2017(in contacts as "Verge" phone number is registered to Verge Ausberry) which occurred on 4-14-2018 at 1629 hours. At this time Mr. ▮▮▮ texts, "This Jade girl is crazy", Mr. Ausberry responds, "Who is that?"; "The tennis player?", Mr. ▮▮▮ responds, "Yes", Mr. Ausberry asks "What happened?", Mr. ▮▮▮ replies, "She's trying to go to compliance for me hitting her, she's trying to get me kick off the team. I went over there to get my stuff  She got mad that I wouldn't talk to her. She started to hit me. And I hit her in the stomach. (which is not good) and I walked out...then when we were out. She starts punching (I didn't touch her) me in the bar and so I got her kicked out. And she tries to call the police at the bag"; "Now because I don't want to be with her. She's trying to talk now...that happened like two weeks okay"

I next located a long history of text messages between Mr. ▮▮▮ and Ms. Lewis (phone number 843-295-8876 // "Jade Lewis listed in the phone contacts), and a third phone number ▮Redacted▮ //listed in phone contacts as ▮▮▮ was attached to this text message string as well. These text messages began on 11-29-2017 at 0107 hours and ended on 8-19-2018 at 1839 hours On 6-7-18 at 0825 hours Mr. ▮▮▮ texts, "Heard to good  I hit you", Ms. Lewis replies "What?"; No I didn't". Mr. ▮▮▮ then replies with, "You walked up to him and showed him your bruise"; "How'd he know I punched you in the rib"; later in this conversation Mr. ▮▮▮ again asks, "How did he know I punched you in the rib" Ms. Lewis responds in this specific conversation with, "It got around that u hit me"; "I have been talking about that for months"; "Idk why its all coming out now I ke This argumentative conversation went on for a prolonged amount of time and was based on Ms. Lewis telling another football player, "▮▮▮" that Mr. ▮▮▮ had hit her, at another point in the conversation Mr. ▮▮▮ texts, "I should punch you again Throughout the text message history between Mr. ▮▮▮ and Ms. Lewis, Mr. ▮▮▮ threatened to punch Ms. Lewis several times. The text messages Mr. ▮▮▮ had sent reads as follows: "I don't care..say it again and I'll come over there and punch you in the face myself" (sent on 4-16-2018 at 1557 hours); "I swear if I see you I'm going to punch you in the fucking face..." (sent on 4-16-2018 at 1649 hours); "You text me again I might punch you" (sent on 4-30-2018 at 0230 hours)  Dude just stop before I punch you" (sent on 5-18-2018 at 1011 hours); "I'm gonna punch you" (sent on 6-3-2018 at 2259 hours message argument ensued in the early morning hours of 6-18-2018 between Ms. Lewis and Mr. ▮▮▮  This is the evening in which LSU Police were dispatched to Ms. Lewis apartment over a domestic disturbance between her and Mr ▮▮▮

# EXHIBIT A

BOS 002125

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # |
|---|---|---|

| NARRATIVE | ☐ JUVENILE |
|---|---|

**NARRATIVE TITLE:**    SUPPLEMENT #1 Continued - Garguiolo

NARRATIVE:

In the text messages it appears that Mr. ███ goes to Ms. Lewis' apartment and leaves a short time later. At 0823 hours Ms Lewis texts Mr. ███ and says, "I just have to wear my hair down so she doesn't see my neck and it should be fine. ███ said if they ask her shes gonna tell the truth and she said she wants to see you walk out in handcuffs...Ill defend u as much as I can"; "███ isn't gonna talk trust me"; "its ███. Mr. ███ replied, "Don't tell ███ the truth"; "She doesn't know that anything happened"; "she didn't see anything". Ms. Lewis went on to text, "I promise me this is the last time, im done dealing with this constantly ur not like this u need to change"; "u know ill protect you but cops r involved they saw my neck and the blood "im not in the mood to talk about it im terrified of you after last night ive never seen that before". Mr. ███ went on to text, "its simple jade..."; "yelling that's it...no one saw anything...". Mr. ███ further texted, "I was blacked out when I got off the plane "like I was gone"; It was turnt af"; Ms. Lewis responded with, "ya so you took all my texts to an extreme"; "and then u went and hurt me"; "like im so scared of you p"; "I cant turn my neck I cant breathe my neck like my neck is purple". When speaking of the meeting with Ms. Segar, Ms. Lewis texted, "I just have to wear my hair down the girls covered my neck with make up", Ms. Lewis sent another text to Mr. ███ over the incident, "i really mean it when i say you need to stop being aggressive. im covered in bruises and this isnt a normal relationship or healthy...". Later in the conversation Mr. ███ texts, "We need to go to therapy together to get it over with", Ms. Lewis replies, "u just need to stop touching me"; "we wont have a problem". Throughout the remainder of the text message conversation Ms. Lewis and Mr. ███ continue to talk about the incident in Ms. Lewis' apartment and continue to argue about issues with their relationship.

I also found several images of Ms. Lewis' injuries on Mr. ███ cell phone. The first image is Ms. Lewis with a long scratch mark on her shoulder; on Ms Lewis's cell phone this picture was found with a caption which indicated that Mr. ███ had caused the injury. A second image found was the rib injury of Ms. Lewis which was originally showed to me by Ms. Segar, this image was found on the phone three times. Two images of the injuries to Ms. Lewis' neck where also located on the Mr. ███ cell phone. I knew these images to be of Ms. Lewis because she had also provided these pictures to Ms. Segar.

While searching through evidence I discovered a text message conversation between Mr. ███ and several other individuals including an unknown individual (shown as "J Red" in the phone contacts). "J Red" indicated that another individual with a telephone number of 337-577-3176 (number registered to ███ **Redacted** ███) explained in a screen shot that "J Red" had raped her. This text message was marked using the evidence software, neither of these individuals appear to be LSU Students. I also found a picture of a woman. ███ on Mr. ███ cell phone who appeared to be unconsciousness on the ground near the LSU's WCA apartments. Reference this picture to LSU PD case number 20180906-012 (Sex Offense).

All of the text message conversations and pictures deemed as evidence in the case were digitally marked as evidence. I then ██████d the found evidence using the UFED Reader application; to find the marked evidence I had saved locate it by clicking "load project session" and click "Save 8-31.pas" file.

Mr. ███ cellphone ███ **Redacted** ███ appeared to be newly operational and held no evidence pertinent to this case.

On August 30th 2018 at approximately 1545 hours, Detective ███ and I met with ███ **Redacted** ███ at the LSU Police Department. Ms. ███ **Redacted** ███ explained that Ms. Lewis and Mr. ███ have been dating since January of last year. She went on to explain that their relationship is up and down all the time, when I asked if there was abuse in the relationship she went on to explain that Mr. ███ punches and strangles Ms. Lewis. Ms. ███ **Redacted** ███ went on to explain the violent incident what had happened Sunday (8-19-2018) at Mr. ███ apartment between Ms. Lewis and Mr. ███. She said that Ms. ███ had told her that Ms. Lewis was pushed into a wall by Mr. ███. Ms. ███ **Redacted** ███ explained that she had viewed bruises on Ms. Lewis legs, when Ms. Richardson asked what caused the bruises Ms. Lewis replied that they were from her scooter. Ms. ███ **Redacted** ███ asked Ms. Lewis later, in a text message, why she was going to Mr. ███ apartment and if that was how she had gotten bruises on her leg, Ms. Lewis replied to this questioning with "he wouldn't let me leave".

When I asked about any other abuse Ms. ███ **Redacted** ███ saw she explained that she and Ms. ███ were coming back from practice when they saw Ms. Lewis come out of her apartment crying while holding her side stomach near her rib. Ms. Lewis went on to tell Ms. ███ **Redacted** ███ that Mr. ███ "had come in and punched her". When asked why Mr. ███ had did this Ms. ███ **Redacted** ███ explained that it was because her, Ms. Lewis and Ms. ███ had spent the night at someone's house Ms. ███ **Redacted** ███ explained another incident in which Mr. ███ dropped Ms. Lewis off in the "ghetto", threw Ms. Lewis' phone out the window and strangled her for waving to him.

When I asked why Ms. Lewis had recanted the story that she had told police Ms. Richardson explained that Ms. Lewis didn't want to see Mr. ███ go to jail but she went on to say that Ms. Lewis is influenced by who Mr. ███ adopted parents are. Ms. Richardson also explained that Mr. ███ parents are obtaining Ms. Lewis a lawyer. Ms. Richardson explained that when Mr. ███ was first arrested Ms. Lewis was seeing Mr. ███ "mum" and driving Mr. ███ vehicle.

I further explained to Ms. ███ **Redacted** ███ to call the police with any further information and especially with any new ongoing violence against Ms. Lewis.

This interview was recorded using my body camera and voice recorder which is attached to the case.

On August 31st, 2018 at approximately 1345 hours, Detective ███ and I went to Ms. Segar's office to speak to her in reference to her phone call with me two days prior. Ms. Segar explained that she had met with Ms. ███ (on 8-28-2018) who was upset because the situation is an issue for the women's Tennis team. Certain players on the Tennis team don't want to be around Ms. Lewis because they're scared that they are going to get hurt. According to Ms. Segar, Ms. ███ believes she put herself in danger for sharing information with police which could be harmful to Mr. ███ in reference to legal proceedings. ███ **Redacted** ███ went on to say everything she is doing to help Ms. Lewis is frustrating when Ms. Lewis is still going to Mr. ███ apartment. Ms. ███ explained that another physical altercation had taken place in the apartment between Mr. ███ and

# EXHIBIT A

BOS-002126

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # ████ |
|---|---|---|
| | NARRATIVE | ☐ JUVENILE |

NARRATIVE TITLE:   SUPPLEMENT #1 Continued - Garguiolo

NARRATIVE:

Ms. Lewis. I then asked if anyone was threatening or harassing Ms. ████ like Ms. Segar had told me during the phone call Ms. Segar said no, Ms. ████ just feels at risk during the investigation; other Tennis players are in fear of litigation. Ms. Segar went on to say that some parents of the Tennis players are scared that their children are at threat of physical harm. Ms. Segar went on to explain that she had talked to Mr. ████ and told him she was attempting to find him an on campus apartment in order to move him out away from Mr. ████. Mr. ████ went on to tell Ms. Segar another incident may have happened between Ms. Lewis and Mr. ████ again after his arrest because Ms. Lewis has been there a lot. When I asked Ms. Segar when on to reiterate that the first time she had heard that this abuse was occurring was April 26th, 2018, no one previous to her had reported the incident.

This interview was recorded using my body camera.

On September 4th, 2018, Detective ████ and I went and spoke to Micki Collins at tiger Stadium in reference to the case. Ms. Collins explained that in late April (25th) she was notified by Donovan White that he was told by Ms. Lewis that she had an issue with her ribs after being hit by ████. Ms. Collins went on to explain that Ms. Lewis was then evaluated by Dr. Winder and he had gone over treatment for the injury; no X-rays were given during this evaluation. After the evaluation Ms. Lewis, Mr. White, Ms. Collins went and spoke to Ms. Segar about the incident. Ms. Collins explained that Ms. Lewis was definitely hit by Mr. ████ but Ms. Lewis didn't want anything to happen that would get Mr. ████ in trouble.

Ms. Collins described being notified by an athletic trainer, Katherine, of another incident which occurred on June 18th, 2018, between Mr. ████ and Ms. Lewis. This trainer was notified of the incident by her athlete, ████. The trainer went on to say that, 'Jade is okay will be bruised and battered but didn't need medical attention'. Ms. Collins went on to text Ms. Lewis who essentially denied any violence. Ms. Collins brought this incident to Ms. Segar's attention.

I went on to explain to Ms. Collins that she should contact police with any other pressing information.

This interview was recorded using a voice recorder and Detective ████ body camera which is attached to the case.

On September 10th, 2018 at approximately 1100 hours, Detective ████ and I interviewed ████ again for a second time. This interview took place at the LSU Athletic business operation building on the 6th floor in a conference room. Present in the meeting was ████, Brian Capitelli (Mr. ████ attorney // 504-582-2425), Thomas Skinner (LSU General Counsel), Detective ████ and myself. Mr. ████ explained that he still currently lived in the Victory Commons apartment with Mr ████ but he believed that Mr. ████ would be moving out shortly due to being unable to pay the rent. Mr. ████ went on to explain that Ms. Lewis has gone to the apartment about ten out of the last fourteen days to see Mr. ████. Mr. ████ explained that Ms. Lewis comes to the apartment mostly at night and Mr. ████ lets her in the apartment. One night (over a week ago) Mr. ████ ████d a banging sound in the apartment and heard Ms. Lewis scream. Mr. ████ walked out and saw Mr. ████ and Ms. Lewis arguing at which time Mr. ████ indicated that Ms. Lewis was "in the wrong"; at this time Mr. ████ noticed a cut on Ms. Lewis' leg which he believed had happened during the argument. Mr. ████ went on to say that Ms. Lewis is, 'madly in love" with Mr. ████. Mr. ████ went on to explain that he is scared of Jim Bernhards 'power' but he has not been threatened by Mr. Bernhard. I then asked if Mr. ████ knew of Mr. ████ having any weapons in his possession, Mr. ████ indicated that he did not. I made it clear to Mr. ████ that he should call the police if he believes of any other violent incidents taking place between Mr ████ and Ms. Lewis. This interview was recorded using my body camera.

All evidence collected for this case was stored in my office (LSU Police Department // room 101D // Locked secure office) until my investigation was completed at which time I properly packaged and dropped all evidence into the LSU PD evidence hold. Evidence attached to the case is as follows: Title IX investigation interviews completed by LSU Title IX investigators, written statement of ████, sexual violence confidentiality notice and waiver signed by Jade Lewis, arrest warrant for Mr. ████, probable cause booking sheet for Mr. ████, LSU adult rights form completed by Mr. ████, Miriam Segar's Sexual completed misconduct and sexual harassment compliance forms about the incidents, text messages conversations between Mr ████ and Ms. Lewis (paper form), pictures of Ms. Lewis' injuries (paper form), search warrants (X3) for Mr. ████ phones and Ms. Lewis phone, search warrants (X3) for cell phone records for the cell phones, search warrants (X2) for I-Cloud data for Mr ████ and Ms. Lewis, search warrant of medical records for Ms. Lewis through LSU - records attached, search warrant of medical records for Ms. Lewis through Baton Rouge Orthopaedic Clinic - records attached, emergency call from initial domestic incident (LSU PD case number - 20180618-001) between Mr. ████ and Ms. Lewis at WCA, flash drives (X2) containing the dumped data from Mr ████ cell phones, flash drive containing the data from Ms. Lewis' cell phone, a flash drive (32 gigabyte // 'Sandisk' flash drive) containing recorded interviews, emails, text messages, warrants in digital form, and cell phone records

Nothing further to report at this time.

Detective Garguiolo
U2008
LSU PD Criminal Investigations Division

# EXHIBIT A

BOS_002127

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # ██████████ |
| --- | --- | --- |
| | NARRATIVE | ☐ JUVENILE |

NARRATIVE TITLE:   NCIC

NARRATIVE:

MSG 00140515C7 UNLSUB00 10C413 NC2K    2FFB97 20180916 05.39 08
CTL/ ████
ATN/

1L0100140515C73CW ████

CLEAR NAM █Reda██████ NIC/W624850257

MSG 00140515BD UNLSUB00 10C3FE NC2K    2FEBF8 20180916 01 19 42
CTL/ ████
ATN/POUNDS

1L0100140515BD2ZW ████

***MESSAGE KEY ZW SEARCHES WANTED PERSON FILE FELONY RECORDS REGARDLESS OF
EXTRADITION AND MISDEMEANOR RECORDS INDICATING POSSIBLE INTERSTATE
EXTRADITION FROM THE INQUIRING AGENCY'S LOCATION  ALL OTHER NCIC PERSONS
FILES ARE SEARCHED WITHOUT LIMITATIONS
MKE/WANTED PERSON
EXL/2 - LIMITED EXTRADITION SEE MIS FIELD
ORI █████Redacted██████████SEX/M RAC/B
DOE████████ HGT/606 WGT/220 EYE/BR0 HAI/BLK
SOC/█Redacted███
O██Redacted██OLS/LA OLY/2022
█████/ASSAULT
D██W/20180815 OCA/20180816-015
NOA/N
MIS█Reda████ IS WANTED FOR 1 FELONY COUNT OF BATTERY OF A DATING PARTNER
MIS/STRANGULATION   2 MISDEMEANOR COUNTS OF BATTERY OF A DATING PARTNER  2
MIS/MISDEMEANOR COUNTS OF VIOLATION OF PROTECTIVE ORDER   EXTRADITION IS LOCAL
MIS/ONLY
DNA/N
ORI IS LA STATE UNIV PD BATON ROUGE 225 578-3231
NIC/W624850257 DTE/20180916 0218 EDT DLU/20180916 0218 EDT

MSG 00140515BC UNLSUB00 10C3FC NC2K    2FEBD2 20180916 01:18:21
CTL/ ████
ATN/

1L0100140515BC3EW
LA0170400
NAM █Reda██████ NIC/W624850257
OCA/20180816-015

MSG 00140515AC UNLSUB00 10C3D6 DMV    76C11A 20180916 00 50 07
CTL/ ████
ATN/ABELS

███████ 00140515AC.ABELS
C██VE (NEW)OLN █Redacted██ DISC/03
██S █████
█Redacted██

11/20/2020 8:47:15 AM    Page 30 of 44

# EXHIBIT A

BOS-002128

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # ▮▮▮▮▮ |
|---|---|---|
| | NARRATIVE | ☐ JUVENILE |

NARRATIVE TITLE:    NCIC

NARRATIVE:

BATON ROUGE    70810
DOB ▮Redacted▮ RAC/B SEX/M EYE/BRN WGT/220 HGT/606
RES 00 00,00    EXP 20221214 ENDR NONE
PERS STATUS *V A L I D*

            W/LF/ NONE
* NEW PRIVATE LICENSE CLASS *
N/R

MSG 00140515B0 UNLSUB00 10C3DF NC2K    2FE9F4 20180916 01.00.29
▮▮▮▮▮
CTL/
ATN/DAVID ABELS INVESTIGATION

7L0100140515B02QH

THIS NCIC INTERSTATE IDENTIFICATION INDEX RESPONSE IS THE RESULT OF YOUR
INQUIRY ON NAM▮▮▮▮ SEX/M RAC/B DOB▮Redacted▮ PUR/C
ATN/DAVID ABELS INVESTIGATION
NAME        FBI NO.    INQUIRY DATE
▮Redacted▮      6EPCLPCPR    2018/09/16

SEX RACE BIRTH DATE  HEIGHT WEIGHT EYES HAIR PHOTO
M   B   ▮Redacted▮/606  220  BRO BLK N

BIRTH PLACE
LOUISIANA

(  )ERPRINT CLASS    PATTERN CLASS

IDENTIFICATION DATA UPDATED 2018/08/17

THE CRIMINAL HISTORY RECORD IS MAINTAINED AND AVAILABLE FROM THE
FOLLOWING:
LOUISIANA    - STATE ID/▮Redacted▮

THE RECORD(S) CAN BE OBTAINED THROUGH THE INTERSTATE IDENTIFICATION
INDEX BY USING THE APPROPRIATE NCIC TRANSACTION.


END

**EXHIBIT A**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # ████ |
| --- | --- | --- |
| | NARRATIVE | ☐ JUVENILE |

NARRATIVE TITLE:    SUPPLEMENT #5 Abels

NARRATIVE:

20180816-015
Supplement # 5

████████, of ████ Redacted ████████, La, DOB ██/1996 was arrested and booked into East Baton Rouge Parish Prison for violation of LRS 14:34.9 (K)- Battery of a Dating Partner (Strangulation), LRS 14:34.9- Battery of a Dating Partner (2 counts), and LRS 14 79- Violation of a Protective Order (2 Counts).
LSU Police Criminal Investigations Division has been investigating a dating violence situation between a (LSU Student) Jade Lewis and (Former LSU Student) ████.

On 08/17/2018, ████ Reda ████ was arrested for violation of LRS 14:34.1- Second Degree Battery (Dating Violence). ████ was booked into East Baton Rouge Parish Prison. ████ was released on bond and was ordered to have no contact with Lewis at the bond hearing by the Honorable Judge Donald Johnson. Since the arrest, LSU Police investigators have found further evidence for a past violation and evidence of batteries that have occurred since ████ was released on bond.

LSU Police investigators found evidence of an another battery that occurred during the incident at West Campus Apartments in June of 2018. Detective Garguiolo interviewed Lewis (see supplement). According to Lewis on 6-18-2018 a battery took place due to a social media argument. During this time frame, Lewis believes that it was about 0200 hours when ████ entered her apartment. Lewis stated that she gave him a key. At this time ████ walked in and immediately punched her in the stomach and began to strangle her. During the violent episode ████ ripped the ear ring out of her ear causing her ear to bleed. Lewis provided pictures that showed bruising around her neck and throat area. In one set of photographs Lewis is wearing a blue shirt, she explained that these pictures were taken the night of the strangulation. In another set of photographs, the bruising to her neck is darker and she is wearing a pink in color t-shirt. Lewis explained that these photos were taken the following day. Lewis went on to explain that she had one of her friends (LSU Student ████) covered up the bruising on her neck area the next day with makeup. Lt Abels. interviewed ████ and confirmed that she had she placed makeup on Lewis's neck area ████ advised that it appeared to be hand prints on Lewis's neck. ████ provided a written statement and the interview was recorded. (see supplement #2) LSU Police was working with the East Baton Rouge District Attorney's Office (DA's Office) in reference to the strangulation offense. At that time, it was understood that the District Attorney's Office was possible going to add the strangulation charged. Due to the incident that took place on 09/15/2018, LSUPD decided to add the charged to the arrest warrant.

The following two batteries have occurred after ████ was released on bond and order to have no contact with Lewis. On 09/15/2018, LSU Police Chief Bart Thompson received several text messages from Lewis' father in reference to another battery that occurred around 0200 hours on 09/15/2018. The father explained that a friend of Lewis ████ Redacted ████ received a Facetime call from Lewis. During the Facetime call Lewis showed ████ her left eye which was swollen and bruised. Lewis told ████ that the injury was caused by ████. Redacted ████ interviewed ████ (see supplement.) Lewis also sent two photographs of the eye injury, which ████ then sent to Lewis' father. Chief Thompson also communicated with ████ and was sent the two photographs. During the interview with Det. ████ stated that that Lewis told her the eye injury was caused by ████ slapping her several times on the face.

LSU Police investigators contacted a Domestic Violence Advocate from the DA's Office. The advocate was able to contact Lewis and have her agreed to come to LSUPD. When Lewis arrived at LSUPD. Captain Kazusky and I interviewed Lewis. During the interview we asked Lewis is she would remove the makeup from around her left eye. Lewis agreed. Detectives could see that Lewis' left eye was swollen but did not see any bruising. Lewis would not admit that she has been with ████ since the arrest and claimed that no batteries have occurred. After further questioning, Lewis admitted that she has been to ████ apartment since the arrest and there was an incident that took place on August 26, 2018. Lewis  stated that she was at ████ apartment (Apartment 307 Victory Commons Apartments) and the two got into an argument. During this argument, Lewis stated that she was pushed into a couch by ████ and injured her lower leg area. Lewis stated that she and ████ got into a fight and when she went to leave the apartment ████ pushed her into the couch and caused a small cut and bruised her lower leg (shin area). I continued to question Lewis about her eye. Lewis stated that a tennis ball hit her face. I again continued with the questioning, at which time Lewis stated that she was with ████ at his apartment around 0200 hours on 09/15/2018. Lewis stated that she went to sleep in ████ bed and woke up around 1000 hours with a black eye. Lewis continued to state that she did not know what happened. At this point I ended the interview.
With the two batteries occurring at ████ apartment Baton Rouge City Police Det. Terrell Averett was contacted. Upon Det Averett arrival he advised for LSUPD to handle the case. See file number 85173-18.
On 09/15/2018, I drafted an arrest warrant for ████ for violation of LRS 14:34 9 (K)- Battery of a Dating Partner (Strangulation), LRS 14:34.9- Battery of a Dating Partner (2 counts), and LRS 14 79- Violation of a Protective Order (2 Counts) The Honorable Judge Richard Anderson of the 19th JDC signed the arrest warrant.
Detectives searched for ████ the night of 09/15/2018 into the early morning hours of 09/16/2018. There was no answer at his apartment Det ████ maintained a watch on the apartment. At 0300 hours on 09/16/2018, Det ████ advised that she ████ Lewis entered the apartment. With this information detectives believed that ████ was in the apartment but refusing to answer the door The roommate ████ arrived at the apartment while detectives were trying to make contact ████ refused to

# EXHIBIT A

BOS 002130

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | **LSU POLICE<br>DEPARTMENT**<br>INCIDENT REPORT<br>NARRATIVE | ORI # ▅▅▅▅▅ |
|---|---|---|
| | **NARRATIVE** | ☐ **JUVENILE** |

NARRATIVE TITLE:    SUPPLEMENT #5 Abels

NARRATIVE:

speak with detectives and went into the apartment. Det. Garguiolo drafted a search warrant for the apartment for ▆▆Reda▆▆
(see Det. Garguiolo supplement) The Honorable Judge Richard Anderson of the 19th JDC signed the warrant. At 0500 hours
on 09/16/2018, LSUPD made entry into the apartment after several failed attempted to answer the door ▆▆▆ was inside the
apartment and taken in custody without incident. Lewis was found hiding in ▆▆▆' closet.
▆▆▆ was transported to East Baton Rouge Parish Prison and Lewis was transported by to her apartment
Nothing Further
Lt. Abels  David U0828

**EXHIBIT A**

ROS-002131

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | **LSU POLICE<br>DEPARTMENT**<br>INCIDENT REPORT<br>NARRATIVE | ORI # ▮▮▮▮ |
|---|---|---|
| | NARRATIVE | ☐ JUVENILE |

NARRATIVE TITLE:    SUPPLEMENT #6 - Garguiolo

NARRATIVE:

20180816-015

Second degree battery

On September 12th, 2018, The LSU Police Criminal Investigations Division met with the East Baton Rouge Parish District Attorney's office in reference to this case. During this meeting I, Detective Garguiolo, provided Melanie Fields (East Baton Rouge Assistant District Attorney) with files relevant to the case. A receipt to this exchange of files is attached to the case.

On September 16th, 2018, I wrote a search warrant for the apartment of ▮Redac▮ ▮▮▮ in order to apprehend him to make an arrest on a warrant signed earlier in the evening (see Lieutenant Abels' Supplement). Mr. ▮▮▮▮' apartment was located at 3390 Nicholson Drive, Apartment 307 C, Baton Rouge LA, 70802. The search warrant for Mr. ▮▮▮ was reviewed and signed by the Honorable Judge Richard Anderson of the 19th JDC on 9-16-2018 at a 0446 hours

At around 0510 hours, LSU PD Officers and Detectives preformed the search warrant at Mr. ▮▮▮▮' apartment; a Baton Rouge Police Officer was also on scene but remained outside the apartment. Mr. ▮▮▮▮ failed to answer the door when I announced our presence letting him know that we had a search warrant. Enough time was given for Mr. ▮▮▮ to answer the door which he had failed to do, at which time I opened the door using a door ram. Once the door was opened Mr. ▮▮▮ was on the other side and quickly taken into police custody. Officers then cleared the apartment finding Jade Lewis hiding in Mr. ▮▮▮▮' bedroom ▮▮▮▮ also came out of his own bed room. After the apartment was cleared I took custody of Mr. ▮▮▮ and read him his rights as per Miranda, he acknowledged that he understood his rights. I then explained that he was under arrest as per the arrest warrant, I also explained that a search warrant was conducted on his apartment in order to take him into police custody This was recorded using my body camera

Once at the LSU Police Department I spoke to Mr. ▮▮▮ but did not question him in reference to the arrest. I explained that that he was under arrest as per the charges on the warrant which included Battery of a dating partner (Strangulation - felony). Battery of a dating partner (2 counts - misdemeanor), and violations of Protective Orders (2 counts - misdemeanor). After reading this to Mr. ▮▮▮ he explained to me that he only put his hands around Ms. Lewis' neck during sex.

I next completed Mr. ▮▮▮▮' booking and probable cause form at which time he was transported to East Baton Rouge Parish Prison by an LSU PD Officer.

On September 17th, 2018, I, went to the Louisiana Attorney General's office and met with Duane Vince of the cybercrimes division. At this time Mr. Vince duplicated the flash drive dumped data of both Mr. ▮▮▮' phone (▮Redacted▮) and Ms. Lewis' phone. These duplicated flash drives contained data marked as evidence relevant to the case which was located by both Detective ▮▮▮ and I. The duplicate flash drives will be given to the EBR District Attorney Investigators along with the 911 call ▮ was made by ▮▮▮ ▮▮▮ at WCA (during the domestic incident between Lewis and ▮▮▮), and a flash drive with more case files. Also released from the AG's office into my custody was both of Mr. ▮▮▮' cell phones. Attached to the case is the receipt of this transfer.

The original flash drive evidence was resealed and dropped back into the LSU PD Evidence hold on 9-24-2018

Nothing further at this time.

Detective Garguiolo
U2008
LSU PD Criminal Investigations Division

# EXHIBIT A

BOS-002132

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # ███████ |
|---|---|---|
| | NARRATIVE | ☐ JUVENILE |

NARRATIVE TITLE:   SUPPLEMENT #7- ████

NARRATIVE:

20180816-015

On September 15, 2018 I meet with ██████████ in reference to information that she had concerning several violent incidents that occurred between ████████ and Jade Lewis in the days after ████ arrest. ████ explained that she has been friends with both ████ and Lewis and has been privy to hearing both sides of their stories as the events have unfolded over the past few days and months. ████ explained that since the time that ████ has been arrested she knows that Lewis has been going over to ████████ apartment and that they have seen each other several times ████ said that Lewis and ████ talk with her about arguments that they have, and that those arguments tend to involve blaming Lewis for the entire situation and issues pertaining to their romantic relationship. ████ stated that Lewis speaks about wanting to "cover up" the situation because she wants to be with ████

████ then explained to me that she was present for an incident where she saw ████████ physical abuse Lewis. ████ said that on the Sunday before the first LSU Football game, Sunday August 26, she went with Lewis to ████████ apartment in order to bring ████ food. ████ said that once inside the apartment, ████ Lewis, and ████ went into ████ bedroom where ████ started an argument with Lewis about their relationship and blamed Lewis for several things. ████ said that Lewis decided it was time to leave and attempted to get up and walk out of the bedroom, however ████ began aggressively blocking the door so that Lewis could not leave the room. ████ explained that while ████ was blocking the bed room door, Lewis manages to squeeze through an opening and escape the room. ████ said that she then saw ████ grab Lewis from behind, pick her up and threw her across the living room. ████ said that this act would cause bruising and small cuts to Lewis's shin. ████ told me that she herself became fearful that ████ would also become physical with her. ████ said that ████ began yelling at her to leave the apartment. ████ said she told ████ that she was not leaving without Lewis and that she was going to see anything that he was about to do. ████ said that at that time, ████ calmed down and both Lewis and ████ were allowed to leave.

████ said that the roommate ████████ was in the apartment at the time of this incident however he didn't come out of his bedroom until after the incident was over. ████ said that ████ asked, "Whats going on" but that he didn't say or do anything else. ████ does not know if ████ and ████ spoke after she and Lewis had left the apartment.

████ explains that she knows that between that night, August 26, 2018, and September 14, 2018 Lewis and ████ have been seeing each other at ████████ apartment. ████ said that Lewis told her that Lewis and ████ were having consensual sex. ████ said that on September 14 2018 Lewis had been at ████████ apartment and was speaking with ████ on the phone ████ said that during the phone call, Lewis accidently spoke about another guy that she is "seeing" ████ said that she ████ yes ████ overheard Lewis talking to ████ about the other guy, and Lewis abruptly ended the phone call and hung up on ████ said that she begin trying to contact Lewis via phone calls and text however Lewis wasn't responding. ████ said that after approximately 55 min of not being able to reach Lewis, Lewis called her and asked ████ to come to ████ apartment and pick her up

████ said that she picked Lewis up from ████████ apartment. Lewis explained to ████ that ████ had grabbed Lewis by the neck and taken her phone in order to look through her text messages to see if she was talking to other guys. ████ said that after picking Lewis up from ████████ apartment, they spent time together until about 0115 hrs when they parted way. ████ said that she would learn on the following day that after she left Lewis, Lewis went over to ████ apartment at approximately 0230hrs on September 15, 2018

████ said that she received a Facetime call from Lewis, who was at her own apartment, at approximately 1030 hrs on September 15, 2018. ████ said that she could see that Lewis had an abrasion over her left eye ████ said that Lewis told her that she had gone to ████████ apartment on the previous night after ████ and Lewis parted way. Lewis told ████ that ████ became angry at her again and began to argue with her about the same things that they had fought over on the previous day just before ████ had picked Lewis up ████ said that Lewis explained that ████ had become violent and started slapping her in the face repeatedly

I asked ████ if Lewis had any marks or bruises from being slapped by ████ ████ said that Lewis did have something above her left eye and described the area around the eye as being swollen and bruised ████ advised that Lewis had sent her photos of the damage to her eye, and that she had forwarded the photos to Chief Thompson. Those photos have been attached to this report, and placed into evidence. ████ advised that Lewis has covered the area around her eye with makeup so that she could go to dinner with the damage being seen by others.

████ spoke briefly on her opinion about Lewis s mindset towards ████ ████ explained that Lewis doesn't want ████ to go to jail and said that Lewis wants to be with ████ ████ describes Lewis as being delusional, saying that Lewis assumes that if she protects ████ by covering up facts and evidence of the abuse then ████ will want to be in a real relationship with her ████ describes Lewis as being addicted to ████

████ explained that Lewis says that she will not lie under oath and is concerned that she will "go down" for all of this which may affect her status as a student at LSU and possibly her citizenship.

I asked ████ where Lewis, who was at that time at the LSU PD being interview by Capt. Kazusky and Lt. Abels, would go after leaving the PD ████ said that she and Lewis and a few other friends made plans to go out to Tigerland but that she believes that Lewis would go back to ████ apartment after she went to Tigerland. ████ believes that the only way that Lewis will be physically separated from ████ is if ████ is in jail.

I ████ on body camera was recording during my interview of ████

After speaking with ████████ I returned to the LSU PD where investigators would obtain an arrest warrant for ████████ At

# EXHIBIT A

BOS 002133

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER: 20180816-015 | **LSU POLICE DEPARTMENT** INCIDENT REPORT NARRATIVE | ORI # ▓▓▓▓▓ |
|---|---|---|

| NARRATIVE | ☐ JUVENILE |
|---|---|

NARRATIVE TITLE:    SUPPLEMENT #7 ▓▓▓

NARRATIVE:

approximately 2330 hrs, once the arrest warrant was obtained. Detectives went to ▓▓▓ apartment complex, Victory Commons, located at 3390 Nicholson Dr. Baton Rouge, LA 70802, and knocked on the door to ▓▓▓ third floor apartment 307C. No one answered the door. ▓▓▓ car was not in the parking area leading Detectives to believe that he was not at home

I was assigned the task of sitting at the Victory Commons Complex and wait for ▓▓▓ arrival. There was no activity at the apartment until approximately. 0215hrs when ▓▓▓▓▓▓▓▓▓ roommate, pulled into the complex parking lot in his white Dodge Challenger. ▓▓▓ parked his car in his assigned parking spot, sits for several minutes, and then drives out of the complex again.

At approximately 0300 hrs on September 16, 2018, I observe Lewis arrive on foot, walk up the stairs to the third floor and knock on ▓▓▓ door. A few moments later the door opened, I could not see who opened the door, and Lewis entered the apartment

At approximately 0330 hrs, Detectives Kazusky, Abels, and myself attempt to make contact with the subjects inside of ▓▓▓ s apartment. Detectives became concerned for Lewis's safety when we realized that ▓▓▓ maybe inside the apartment and ▓▓▓ s and Lewis maybe in the apartment alone. Detectives knocked on the door to ▓▓▓ apartment several times with no response from anyone inside. While Detectives were knocking on the door, ▓▓▓ arrives to the front door of the apartment Capt Kazusky attempted to speak with ▓▓▓, but ▓▓▓ walks quickly past Detectives and enters his apartment closing the door quickly behind him

Capt Kazusky and Lt. Abels leave that apartment complex in order to obtain a search warrant for ▓▓▓ apartment, I stay at the apartment complex in order to watch the apartment. No one comes or goes from the apartment during this time.

At approximately 0500 hrs  Detectives Kazusky, Abels, Garguiolo, along with Lt. Bodine and Ofc Landerman arrive on scene and prepare to serve the search warrant and ▓▓▓ arrest warrant.

All Officers involved stack on the door to apartment 307C, ▓▓▓ apartment, knock loudly several times and announce the search warrant. There was no answer to the knocking of the door. At that time, Detective Garguiolo used a metal ram to ram the door open. After two strikes with the ram the door comes open to reveal ▓▓Reda▓▓ standing at the door. ▓▓▓ is given several verbal commands to put his hands up, to which he complies. He is told to turn around and walk towards the Officers at the door ▓▓▓ complies. As ▓▓▓ nears the door, I am able to take him into custody and cuff him. ▓▓▓ is then handed over to Capt. Kazusky

Officers then make entry into the apartment in order to check for Lewis. Lewis was found hiding in the closet of ▓▓▓ ▓▓▓ ▓om which is located at the rear of the apartment. Once Lewis is found, I take Lewis into my care until the rest of the apartment can be cleared

After making contact with Lewis, ▓▓▓ comes out of his room. I can see and hear Officers giving ▓▓▓ several verbal commands to put his hands up ▓▓▓ does not comply with Officers and Officers go hands on and take ▓▓▓ into custody.

After the apartment was cleared, I escort Lewis out to the balcony area, where we stay so that ▓▓▓, who was being escorted by Officers  can re-enter his apartment and put clothes on After dressing ▓▓▓ was escorted back to the LSU PD by Ofc Landerman

I then escort Lewis back to her apartment at Nicholson Gateway, which is located next door ▓▓▓ apartment complex  Victory Commons

My body camera was activated during the serving of the search warrant at ▓▓Redacted▓▓

▓▓Redac▓▓
U-1319

**EXHIBIT A**

BOS-002134

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | **LSU POLICE<br>DEPARTMENT**<br>**INCIDENT REPORT**<br>NARRATIVE | ORI # |
|---|---|---|

| | NARRATIVE | ☐ JUVENILE |
|---|---|---|

NARRATIVE TITLE:    SUPPLEMENT #8 - Garguiolo

NARRATIVE:
20180816-015
Second Degree Battery
On August 17th, 2018 at 1645 hours, I, Detective Garguiolo of the LSU Police Department wrote a warrant for the arrest of ▮▮▮▮▮ which was reviewed and signed by the Honorable Judge Donald Johnson of the 19th JDC
The last page of the arrest warrant indicated that the second degree battery charge occurred on 5-1-2017. The date of this charge correctly occurred on 4-3-2018 not 5-1-2017
On September 17th, 2018, I, Detective Garguiolo received back data which was warranted from the Apple Corporation
I received back two flash drives (Sandisk 32 gigabyte flash drives) containing the Apple I-cloud data from Ms. Lewis' email (jademlewis@gmail.com) and Mr. ▮▮▮ email (**Redacted**@yahoo.com <mailto **Redacted**@yahoo com>) as per the search warrants signed by the Honorable Judge Donald Johnson of the 19th JDC on 8-20-2018 at 1434 and 1436 hours.

I went through the data on both of the flash drives to locate evidence relevant to the case. The evidence that I located was not new but found prior on the "dumped data" flash drives from both Mr. ▮▮▮ and Ms. Lewis' cellular phones

The evidence on Ms. Lewis' I-cloud data were pictures of injuries she sustained and text messages talking about abuse by Mr ▮▮▮

Located on Mr. ▮▮▮ I-cloud was a picture of a text message string between him and Ms. Lewis which indicated that he wanted to 'punch' Ms. Lewis in the face. This text message string picture was also located on Mr. ▮▮▮ cell phone

Both files containing evidence from each flash drive was placed on compact disc. Placed into the LSU PD evidence hold is the compact disc flash drives (X2) of the I-Cloud data, and the search warrants for this data.

Nothing further to report

Nothing further to report
Detective Garguiolo
U2008
     PD Criminal Investigations Division

# EXHIBIT A

BOS 002135

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # ███████ |
| --- | --- | --- |
| | NARRATIVE | ☐ JUVENILE |

NARRATIVE TITLE:    SUPPLEMENT #9 - Garguiolo

NARRATIVE:
20180816-015

Second degree battery

While reviewing cell phone records for Mr. ███ cell phone (███ Redacted ███ // AT&T) I found that Mr. ███ was called by Verge Ausberry's cell phone (225-939-2017) after their last text message conversation relating to the battery of Jade Lewis. This phone call occurred on 4-14-2018 at 21:36:38 (UTC) and lasted for six minutes and one second. 21:36 hours Coordinated Universal Time (UTC) time is equivalent to 1636 hours Central Standard Time. The text messages between Mr. ███ and Mr. Ausberry occurred on 4-14-2018 at 1629 hours (CT)

On October 8th, 2018, Detective ███ and I, Detective Garguiolo, went to Tiger Stadium's Broussard Athletic Training Room to meet with Catherine Walker (578-2050 // Volleyball assistant athletic trainer // listed in previous report supplement as "Katherine") Ms. Walker explained that she is ███ athletic trainer, and that she was called by Ms. ███ in the early morning hours, approximately 0215 hours, of 6-18-2018 about an incident between her roommate, Jade Lewis, and "███ Ms. ███ explained to her that she had heard her roommate fighting with another individual, Ms. ███ had then called the Police. Ms. Walker explained that she went to Ms. ███ apartment after the incident to help calm her down. When Ms. Walker arrived she said the Police had already left and she never entered the apartment room nor did she see Ms. Lewis. Later in the morning hours Ms. Walker sent a text message to Micki Collins and explained what had occurred.

We then met with Micki Collins (second interview) in the training room. I asked Ms. Collins about the typed statement which she had completed and attached with the medical records for Ms. Lewis as per the medical records search warrant I had served. This letter was completed by Micki Collins for the search warrant, she explained that it was not the original document from the physical analysis of Ms. Lewis. Ms. Collins went on to explain that the medical analysis of Jade Lewis was completed at the Football Operations building and not the Broussard Training room at Tiger Stadium. Ms. Collins was in communication with technical support to attempt to locate the computer in an attempt to find Mr. White's notes on the medical evaluation of Ms. Lewis.

Around 1530 hours, Captain Kazusky and I, met with Micki Collins again at the LSU Football Operations Building. During this interview Ms. Collins identified one of the possible two computers that Donovan White could have saved his notes of the evaluation of Ms. Lewis by Dr. Winder on. This computer was taken to preserve possible evidence. When Ms. Collins was asked she explained that the typed statement she created about the evaluation of Ms. Lewis by Dr. Winder was produced off of her and Mr. White's memory of the incident. She also recreated the treatment schedule for Ms. Lewis which was also recreated by memory and Mr. White's calendar. Both forms were created to satisfy the search warrant because they could not locate the written notation of the incident. Ms. Collins was uncertain if Mr. White even notated the summary of the medical evaluation.

Around 1615 hours, Micki Collins telephoned me after we had left the Football Operations building. At this time Ms. Collins verified that there was no documentation or notation completed during Dr. Winder's medical examination of Ms. Lewis.

At 1700 hours was called by Ms. Collins who met me at the Football Operations building. Once at the building I collected the secondary computer that the medical evaluation may have been saved on. Both computers were collected as to preserve evidence in the case and a search warrant will be written for both computers. Both computers (First computer: DNQJJ02 // 29733473522 // Second computer: Optiplex 9020// OXPCG3 // BB7JK02) are being stored at the LSU Police Department and have not been turned on or plugged in.

On October 10th, 2018, at approximately 1500 hours, I, Detective Garguiolo telephoned and made contact with Donovan White (Second telephone interview). During this telephone call I asked where the medical analysis of Ms. Lewis by Dr. Winder was conducted. Mr. White explained that it took place at the LSU Football Operations building in the orthopedic office, he went on to explain that Ms. Lewis, Dr. Winder, Ms. Collins and himself were present in the room. When I asked if he had made a report in the database or with "Microsoft word" (saved on the computer) he explained that he did not. When I previously spoke to Mr White his story differed, he earlier explained that he had made notes of the medical evaluation and saved them in "Word" on the computer. Mr White went on to say that in August of 2018 (same time that the search warrant for medical records was completed by LSU Police Department and sent to LSU Athletics) he wrote down, into word, documentation notes from the day in which the medical examination of Ms. Lewis had occurred from his memory. Mr White did not have any reason or answer as to why no type of notation was made of the examination. Mr. White kept explaining that due to Ms. Lewis being a professional athlete he could not enter her into the LSU medical database, but he then said that he could have reentered her into the system but he did not. Dr. Winder previously explained that he did remember the athletic trainer D. White, typing on the computer and notating the examination notes that he had performed on Ms. Lewis.

Nothing further to report at this time

Detective Garguiolo

**EXHIBIT A**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # ████ |
|---|---|---|
| | NARRATIVE | ☐ JUVENILE |

**NARRATIVE TITLE:** SUPPLEMENT #9 - Garguiolo

NARRATIVE:
U2008
LSU PD Criminal Investigations Division

# EXHIBIT A

BOS-002137

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | **LSU POLICE<br>DEPARTMENT**<br>INCIDENT REPORT<br>NARRATIVE | ORI #  ████████ |
|---|---|---|

| NARRATIVE | ☐ JUVENILE |
|---|---|

NARRATIVE TITLE:    SUPPLEMENT #10 - Garguiolo

NARRATIVE:

20180816-015

Second degree battery

October 15th, 2018, at approximately 1345 hours, ███Redacted███, accompanied by his attorney - Ben Gibson, came to the Louisiana State University Police Department to talk about the incidents between Jade Lewis and ███Reda███

███Redact███ and I, Detective M. Garguiolo, talked to Mr ██████ about his relationship with ███Reda██ Mr ███ explained that his relationship with Mr ████ was a "football relationship"

I next asked him if he had any knowledge of a violent act which occurred between ███Reda███ and Jade Lewis in May of 2017 Mr ██████ explained that he had no memory of the incident

I next brought up in incident in 'Tiger Land' where Mr. ████ was said to have got into a verbal argument with Ms Lewis where he raised his hand to her as if to hit her. Mr. ██Redacted██ explained that he was present for that incident.

Mr. ██████ went on to say that he had heard rumors that Mr. ████ was hitting Ms. Lewis. Ms. Lewis showed Mr ████ the bruise mark on her bare skin near her rib area and explained that Mr ████ had hit her Mr. ██Redacted██ went on to say the Ms Lewis' father told her that he would go to the police about Mr. ████ if Ms Lewis did not go professional in tennis.

I next asked Mr. ██████ if Mickey Joseph knew of the violence between Mr ████ and Ms. Lewis. Mr. ██Redacted██ replied that Mr Joseph knew, at this time of his answer Mr. Gibson nudged Mr. ██Redacted██ under the table at which time Mr. ██Redacted██ indicated that Mr. Joseph knows of the violence now

This interview was recorded with my body camera.

Nothing further to report.

⊙ctive Garguiolo
U2008
LSU PD Criminal Investigations Division

**EXHIBIT A**

BOS 002138

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | **LSU POLICE<br>DEPARTMENT**<br>**INCIDENT REPORT**<br>NARRATIVE | ORI # |
|---|---|---|
| | NARRATIVE | ☐ JUVENILE |

NARRATIVE TITLE:    SUPPLEMENT #11 - Garguiolo

NARRATIVE:
20180816-015

Second degree battery

On November 7th, 2018, I, Detective Garguiolo of the Louisiana State University Police Department wrote a search warrant for the (2) computers located at the LSU Football Operations Building on October 8th, 2018

I wrote this search warrant to digitally examine both computers in an attempt to locate a medical record of Jade Lewis which may have been composed in a document form. This search warrant was signed by the Honorable Judge Fred T Crifasi of the 19th JDC on 11-7-2018 at 1359 hours

Both computers will be taken to the Louisiana Attorney General's office to be examined

The search warrant has been attached to the case.

Nothing further to report at this time

Detective Garguiolo
U2008
LSU PD Criminal Investigations Division

# EXHIBIT A

BOS-002139

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | **LSU POLICE<br>DEPARTMENT**<br>INCIDENT REPORT<br>NARRATIVE | ORI # ███████ |
|---|---|---|
| | **NARRATIVE** | ☐ **JUVENILE** |

NARRATIVE TITLE:   SUPPLEMENT #12 - Garguiolo

NARRATIVE:
20180816-015

Second degree battery
On December 14th, 2018, I, Detective Garguiolo of the Louisiana State University Police Department was contacted by Investigators of the Louisiana Attorney General's office in reference to the digital search of LSU Computers.
The A.G. investigators digitally analyzed the computers (2 Dell computers) collected from the LSU Football Operations building
As per the search warrant A.G. Investigators searched for a possible medical record which could have been completed in a document form which notated the medical examination of Jade Lewis.
Investigators were not able to locate any such document resembling a medical record in either computer
Nothing further to report
Detective Garguiolo
U2008
LSU PD Criminal Investigations Division

**EXHIBIT A**

BOS-002140

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # ▬▬▬▬ |
|---|---|---|

| NARRATIVE | ☐ JUVENILE |
|---|---|

| NARRATIVE TITLE:   SUPPLEMENT #13 - Garguiolo |
|---|

NARRATIVE:

20180816-015

Second degree battery
▬▬▬▬▬ of ▬▬▬Redacted▬▬▬ was arrested and booked into East Baton
Rouge Parish Prison for violation of LRS 14:79- Violation of a Protective Order (1 Count).

On January 17th, 2019, The Louisiana State University Police Department was notified by David Lewis (Father of Jade Lewis)
that Jade Lewis was still in contact with ▬▬▬
At approximately 1345 hours, I, Detective Garguiolo, made contact with Mr Lewis via a telephone call. During the call Mr. Lewis
explained that he was notified by Jade Lewis' friend ▬Redacted▬ that ▬▬ is in constant communication with Jade
Mr Lewis went on to explain that his daughter yielded as many as 8,000 text messages from two phone numbers ▬Redacted▬
▬Redacted▬ which he believes to be Mr. ▬▬ phones. These text message communications began around the
time of Thanksgiving (2018) and have been continued to present time (1-17-2019)
At approximately 1500 hours, ▬▬▬ came to the LSU PD to inform me more on the situation, this interview was
recorded with a voice recorder. Ms ▬▬ explained ▬▬ began to communicate with Jade Lewis on 11-15-2018 via
social media (Instagram - account Jessy_St_Marc).According to Ms. ▬▬ shortly thereafter Mr. ▬▬ called Ms Lewis with
a cellular phone (phone number ▬▬Redacted▬▬ explaining that it was him ( ▬▬) and this was his cell phone.
On 11-25 or 11-26-2018, Mr. ▬▬ called Jade Lewis' personal cell phone number to communicate with her. He went on to tell
her to use a specific phone application (exact application unknown) to change and thus disguise her phone number.According
to Ms. ▬▬ Ms Lewis and Mr. ▬▬ have been in constant contact since this date. Mr. ▬▬ also uses the phone number of
▬▬Redacted▬▬ which is potentially his phone number ▬Redacted▬ which is disguised by an application.
Mr ▬▬ continued contact with both Ms. Lewis and Ms. ▬▬ via social media accounts (Instagram account, Dtachli  //
Snapchat account ▬Redacted▬  //  I-Cloud account: ▬Redacted▬ @yahoo.com) as well. Mr. ▬▬ used his direct email
▬Redacted▬ @yahoo.com <mailto ▬Redacted▬ @yahoo.com>) to send direct messages in text message form to Ms. Lewis
Mr ▬▬ replied to a "story" on Ms ▬▬ instagram account and is as follows
▬▬- Smh
- hahahahaha you know me  Nice to see you back on gram
- lol don't tell anymore lol
▬Redacted▬Ahhh duh I would never snitch
It's believed that the word "anymore" was an error which was meant to be "anyone".
I was then provided a "screen shot" of a social media conversation between Ms. Lewis and Mr. ▬▬ the conversation is as
follows
▬▬- "Yeah Why?"
Lewis- "u didn't have anyone over last night?"
- "Why?" "I was asleep" "Did you?"
Lewis- "hmmm" "no I was w ▬▬ till 11:30 then went home"
- "ok" "cool"
Lewis- wyd today?"
- Not much house arrest lol"

Ms ▬▬ then provided me with a text message sent to her from the email ( ▬▬Redacted▬▬ @yahoo.com
<mailto ▬▬Redacted▬▬ ) of Mr. ▬▬ which is as follows:

▬▬- lol you sound hurt    I did treat her bad. I don't mean to. I control her because I'm scared to lose her. It's who I am  I
work on it get better. Simple. But I'm real to myself. What's your problem? You're just fake. I will never let someone like you get
to me in anyway ....you're the sugar mother of the football team. It's like you're a joke. And I'm glad you pointed it out that I
treat her badly  lol I'll work on that  treat my wifey right Soo she will not bad be on that level. Thank you...I needed that  Just
know when it all comes down to it  the decision between me and you Will not be hard. Lol you'll be alone again. And I don t
want that

On December 22nd, 2019 at 1918 hours, Ms ▬▬ received the following text message from Mr ▬▬ via his email
▬▬- "Give me dirty"
"Everything"
"on her so I can't hate"
"and move on" "Tell me everything"
"Don't tell her because I'll know"
"Dirt"
Thursday December 27th, 2019, 1402 hours
"( )r"
"Help Me"

| | 11/20/2020  8:47:15 AM | Page 43 of 44 |
|---|---|---|

# EXHIBIT A

BOS-002141

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | LSU POLICE<br>DEPARTMENT<br>INCIDENT REPORT<br>NARRATIVE | ORI # ▮▮▮▮▮▮ |
|---|---|---|
| | NARRATIVE | ☐ JUVENILE |

NARRATIVE TITLE:    SUPPLEMENT #13 - Garguiolo

NARRATIVE:

On January 10th, 2019 at approximately 2230 hours, according to Ms ▮▮▮▮ she and Ms. Lewis were in a vehicle together when Ms. Lewis received a telephone call from Mr. ▮▮▮▮. In the call Mr. ▮▮▮▮ explained to Ms. Lewis that she needed to come see him tonight and she better come because if not 'it's done' Ms ▮▮▮▮ explained that Mr ▮▮▮▮ told Ms Lewis to wear a black in color hoody sweater and wait at a specific area at which time 'someone' will come and pick her up Ms ▮▮▮▮ did not know of the specifics of where Ms Lewis needed to go nor who would be picking her up According to Ms ▮▮▮▮ Ms. Lewis did not go through with this meeting because Ms Lewis explained to her that she did not have enough time to clear her phone and thus did not go through with the meeting

Ms. ▮▮▮▮ also went on to explain that she knew Mr ▮▮▮▮ had an unsupervised party at the location he is staying which occurred the Friday after Thanksgiving

Ms. ▮▮▮▮ explained that Mr. ▮▮▮▮ is hostile and verbally abusive to Ms Lewis in their communications Ms. Lewis explained to Ms. ▮▮▮▮ that she knows where Mr ▮▮▮▮ is currently staying and that if she goes to visit him she is going to edit the digital location on her cellular phone to show that her location is on LSU's campus and not Mr. ▮▮▮▮' location

According to the bond parameters set by the court on 9-21-2018 Mr. ▮▮▮▮ is breaking such restrictions. Mr. ▮▮▮▮ was not to be in possession of a "smart" phone, the internet, or "smart" devices. He further was not to have any contact with the victim Jade Lewis Thus an arrest warrant will be constructed for ▮Reda▮▮▮ on violation of protective orders (LRS 14:79)

On January 23rd, 2019, I wrote an arrest warrant for ▮Redac▮▮▮ on one count of Violation of Protective Orders (LRS 14 79). This warrant was reviewed and signed by the Honorable Judge Richard Anderson of the 19th JDC on the same day (1-23-2019).

Shortly thereafter I called Mr. ▮▮▮▮ lawyer, Marcy Blaize, and I explained that I had an arrest warrant for Mr. ▮▮▮▮. At approximately 1245 hours on 1-23-2019 Mr. ▮▮▮▮ came to the LSU Police Department with Ms. Blaize. I next read Mr his rights as per Miranda (LSU adult rights form) in the interview room, he explained that he understood his rights and did not wish to speak about the incident. Mr. ▮▮▮▮ was then booked and transported to the East Baton Rouge Parish Prison

Attached to the case is the audio interview conducted with ▮Redacted▮▮▮, probable cause booking sheet, arrest warrant, adult rights form and interview video of Mr. ▮▮▮▮ placed onto compact disc.

Nothing further to report.

Detective M Garguiolo
U2008
LSUPD Criminal Investigations Division

# EXHIBIT A

BOS 002143

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER: 20180816-015 | **LSU POLICE DEPARTMENT** **INCIDENT REPORT** | ORI # |
|---|---|---|

## ADMINISTRATIVE INFORMATION

| REPORT DATE 08/16/2018 4:39:07 | INCIDENT START DATE 06/16/2018 4:39:00 PM | DOW 7 | INCIDENT END DATE 08/16/2018 4:39:00 PM | INCIDENT DESCRIPTION Battery |
|---|---|---|---|---|

| LOCATION OF INCIDENT ABO  BATON ROUGE LA | OFFENSE TRACT ON CAMPUS | CASE STATUS CLEARED |
|---|---|---|

| EVIDENCE COLLECTED | WEATHER | TEMP | LIGHTING | EXCEPTIONAL CLEARANCE | EXC CL DATE |
|---|---|---|---|---|---|

## OFFENSE INFORMATION

| STATUTE CODE 14:34.1 | STATUTE DESCRIPTION SECOND DEGREE BATTERY | TYPE OF WEAPON USED NONE |
|---|---|---|

| UNITS ENTERED | FORCED ENTRY | COMPUTER USE | ALCOHOL USE | DRUG USE | SECURITY TYPE | COUNTS 1 | COMPLETED ✓ | F/M |
|---|---|---|---|---|---|---|---|---|

| LOCATION TYPE GOVERNMENT/PUBLIC BUILDING | BIAS MOTIVATION NONE | CRIMINAL ACTIVITY NO GANG INVOLVEMENT |
|---|---|---|

| STATUTE CODE 14:34.9 | STATUTE DESCRIPTION Battery of a Dating Partner | TYPE OF WEAPON USED NONE |
|---|---|---|

| UNITS ENTERED | FORCED ENTRY | ALCOHOL USE | DRUG USE | SECURITY TYPE | COUNTS 3 | COMPLETED ✓ | F/M M |
|---|---|---|---|---|---|---|---|

| LOCATION TYPE RESIDENCE/HOME | BIAS MOTIVATION NONE | CRIMINAL ACTIVITY NO GANG INVOLVEMENT |
|---|---|---|

## VICTIM INFORMATION

| VIC# 1 | SAME AS COMPLAINANT | NAME (LAST, FIRST MIDDLE) LEWIS JADE M | HOME # | CELL # 843-295-8876 | WORK # |
|---|---|---|---|---|---|

| ADDRESS 62 CYPRESS MARSH Drive  409B HILTON HEAD ISLAND SC | EMAIL |
|---|---|

| DOB 998 | AGE 19 | TO AGE | SEX F | RACE W | ETHNICITY N | RESIDENT STATUS RESIDENT | HEIGHT 507 | WEIGHT 130 |
|---|---|---|---|---|---|---|---|---|

| EYE COLOR BLUE | HAIR COLOR BLONDE OR | SSN Redacted 3813 | OLN # 103927579 | OLN STATE SC |
|---|---|---|---|---|

SCARS/MARKS/TATTOOS

| EMPLOYER/SCHOOL LSU | OCCUPATION STUDENT | ADDRESS WEST CAMPUS APARTMENTS 409B BATON ROUGE |
|---|---|---|

| TYPE OF VICTIM PERSON/INDIVIDUAL (NOT A | AGGRAVATED ASSAULT CIRCUM LOVERS | JUST HOM CIRCUM | STATEMENT | DOMESTIC ✓ |
|---|---|---|---|---|

| INJURY TYPE | | RELATIONSHIP TO OFFENDER 1-10 | | Offenses Involved 1-10 | |
|---|---|---|---|---|---|
| None | Unconscious | 1: BG | 6: | 1: 13A | 6: |
| Minor | Lacerations | 2: | 7: | 2: 13A | 7: |
| Internal | Bones ✓ | 3: | 8: | 3: 90Z | 8: |
| Teeth | Other ✓ | 4: | 9: | 4: | 9: |
| | | 5: | 10: | 5: | 10: |

## COMPLAINANT INFORMATION

| NAME (LAST, FIRST MIDDLE) SEGAR, MIRIAM | HOME # 225-767-6126 | CELL # 225-936-8538 | WORK # 225-578-5785 | STATEMENT |
|---|---|---|---|---|

| ADDRESS 6160 MORGAN BEND Drive  BATON ROUGE LA 70820- | EMAIL |
|---|---|

| DOB 1972 | AGE 46 | SEX F | RACE W | ETHNICITY N | RESIDENT STATUS NON-RESIDENT | OLN # 5423137 | OLN STATE LA |
|---|---|---|---|---|---|---|---|

## OFFICER INFORMATION

| REPORTING OFFICER G...iolo, Michael U2008 | REVIEWING OFFICER | APPROVING OFFICER |
|---|---|---|

11/20/2020 8:47:15 AM    Page 1    of 44

# EXHIBIT A

BOS 002143

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER: 20180816-015 | LSU POLICE DEPARTMENT INCIDENT REPORT OTHER PERSONS INVOLVED | ORI # ▇▇▇▇▇ |
|---|---|---|

**INVOLVEMENT TYPE:** WITNESS
**NAME (LAST, FIRST MIDDLE):** Redacted , Redacted
**HOME #:**   **CELL #:** Redacted   **WORK #:**
**ADDRESS:** Redacted   **EMAIL:**

| DOB | AGE | TO AGE | SEX | RACE | | ETHNICITY | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|---|
| Redacted | 28 | | F | W | | N | | |

**EYE COLOR:**   **HAIR COLOR:**   **SSN:**   **OLN #:** Redacted   **OLN STATE:**
**SCARS/MARKS/TATTOOS:**   **STATEMENT:** ☐

**INVOLVEMENT TYPE:** WITNESS
**NAME (LAST, FIRST MIDDLE):** Redacted , ▇▇▇ ▇
**HOME #:**   **CELL #:** Redacted   **WORK #:**
**ADDRESS:** Redacted   **EMAIL:**

| DOB | AGE | TO AGE | SEX | RACE | | ETHNICITY | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|---|
| Redacted | 19 | | F | W | | N | | |

**EYE COLOR:**   **HAIR COLOR:**   **SSN:**   **OLN #:** Redacted   **OLN STATE:**
**SCARS/MARKS/TATTOOS:**   **STATEMENT:** ☐

**INVOLVEMENT TYPE:** WITNESS
**NAME (LAST, FIRST MIDDLE):** ▇▇▇ , C
**HOME #:**   **CELL #:** Redacted   **WORK #:**
**ADDRESS:** Redacted   **EMAIL:**

| DOB | AGE | TO AGE | SEX | RACE | | ETHNICITY | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|---|
| Redacted | 20 | | M | W | | N | 602 | 215 |

**EYE COLOR:**   **HAIR COLOR:**   **SSN:** Redacted   **OLN #:**   **OLN STATE:**
**SCARS/MARKS/TATTOOS:**   **STATEMENT:** ☐

**INVOLVEMENT TYPE:** WITNESS
**NAME (LAST, FIRST MIDDLE):** JOSEPH, Mickey
**HOME #:**   **CELL #:**   **WORK #:**
**ADDRESS:** LA   **EMAIL:**

| DOB | AGE | TO AGE | SEX | RACE | | ETHNICITY | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|---|
| | 00 | | M | B | | N | | 0 |

**EYE COLOR:**   **HAIR COLOR:**   **SSN:**   **OLN #:**   **OLN STATE:** LA
**SCARS/MARKS/TATTOOS:**   **STATEMENT:** ☐

**INVOLVEMENT TYPE:** WITNESS
**NAME (LAST, FIRST MIDDLE):** sell, julia
**HOME #:**   **CELL #:**   **WORK #:**
**ADDRESS:** LA   **EMAIL:**

| DOB | AGE | TO AGE | SEX | RACE | | ETHNICITY | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**EYE COLOR:**   **HAIR COLOR:**   **SSN:**   **OLN #:**   **OLN STATE:**
**SCARS/MARKS/TATTOOS:**   **STATEMENT:** ☐

# EXHIBIT A

BOS_002144

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER:<br>20180816-015 | **LSU POLICE DEPARTMENT**<br>INCIDENT REPORT<br>OTHER PERSONS INVOLVED | | ORI # ▮▮▮▮ |

| INVOLVEMENT TYPE<br>WITNESS | NAME (LAST, FIRST MIDDLE)<br>Sell, Mike | HOME # | CELL # | WORK # |
|---|---|---|---|---|
| ADDRESS<br>LA | | EMAIL | | |

| DOB | AGE | TO AGE | SEX | RACE | ETHNICITY | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|

| EYE COLOR | HAIR COLOR | SSN | OLN # | OLN STATE |

SCARS/MARKS/TATTOOS | STATEMENT ☐

| INVOLVEMENT TYPE<br>WITNESS | NAME (LAST, FIRST MIDDLE)<br>DUDLEY, KASEN REA | HOME # | CELL #<br>225-364-1330 | WORK # |
|---|---|---|---|---|
| ADDRESS<br>10229 Springwind CT  Baton Rouge LA 70810 | | EMAIL | | |

| DOB<br>▮990 | AGE<br>27 | TO AGE | SEX<br>M | RACE<br>W | ETHNICITY<br>N | HEIGHT<br>600 | WEIGHT<br>168 |
|---|---|---|---|---|---|---|---|
| EYE COLOR<br>BROWN | HAIR COLOR<br>BROWN | SSN<br>▮▮-9986 | OLN #<br>H00989576 | OLN STATE<br>HI |

SCARS/MARKS/TATTOOS | STATEMENT ☐

| INVOLVEMENT TYPE<br>WITNESS | NAME (LAST, FIRST MIDDLE)<br>winder, carey | HOME # | CELL # | WORK # |
|---|---|---|---|---|
| ADDRESS<br>LA | | EMAIL | | |

| DOB | AGE | TO AGE | SEX | RACE | ETHNICITY | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|

| EYE COLOR | HAIR COLOR | SSN | OLN # | OLN STATE |

SCARS/MARKS/TATTOOS | STATEMENT ☐

| INVOLVEMENT TYPE<br>WITNESS | NAME (LAST, FIRST MIDDLE)<br>White, Donovan | HOME # | CELL # | WORK # |
|---|---|---|---|---|
| ADDRESS<br>LA | | EMAIL | | |

| DOB | AGE | TO AGE | SEX | RACE | ETHNICITY | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|

| EYE COLOR | HAIR COLOR | SSN | OLN # | OLN STATE |

SCARS/MARKS/TATTOOS | STATEMENT ☐

| INVOLVEMENT TYPE<br>WITNESS | NAME (LAST, FIRST MIDDLE)<br>Collins, Micki | HOME # | CELL # | WORK # |
|---|---|---|---|---|
| ADDRESS<br>LA | | EMAIL | | |

| DOB | AGE | TO AGE | SEX | RACE | ETHNICITY | HEIGHT | WEIGHT |
|---|---|---|---|---|---|---|---|

| EYE COLOR | HAIR COLOR | SSN | OLN # | OLN STATE |

SCARS/MARKS/TATTOOS | STATEMENT ☐

11/20/2020 8:47:15 AM    Page 3 of 44

# EXHIBIT A

BOS-002145

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| INCIDENT NUMBER: 20180816-015 | **LSU POLICE DEPARTMENT** INCIDENT REPORT OTHER PERSONS INVOLVED | | ORI # ▮▮▮▮ |

**Person 1**

| INVOLVEMENT TYPE: WITNESS | NAME (LAST, FIRST MIDDLE): ▮▮ ▮▮ | | HOME # | CELL # Redacted | WORK # |
| ADDRESS: Redacted | | | | EMAIL | |

| DOB Redacted | AGE 18 | TO AGE | SEX F | RACE W | | ETHNICITY N | | HEIGHT | WEIGHT |
| EYE COLOR | | HAIR COLOR | | SSN | OLN # Redacted | | | | OLN STATE |
| SCARS/MARKS/TATTOOS | | | | | | | | | STATEMENT ☐ |

**Person 2**

| INVOLVEMENT TYPE | NAME (LAST, FIRST MIDDLE) | | HOME # | CELL # | WORK # |
| ADDRESS | | | | EMAIL | |

| DOB | AGE | TO AGE | SEX | RACE | | ETHNICITY | | HEIGHT | WEIGHT |
| EYE COLOR | | HAIR COLOR | | SSN | OLN # | | | | OLN STATE |
| SCARS/MARKS/TATTOOS | | | | | | | | | STATEMENT ☐ |

**Person 3**

| INVOLVEMENT TYPE | NAME (LAST, FIRST MIDDLE) | | HOME # | CELL # | WORK # |
| ADDRESS | | | | EMAIL | |

| DOB | AGE | TO AGE | SEX | RACE | | ETHNICITY | | HEIGHT | WEIGHT |
| EYE COLOR | | HAIR COLOR | | SSN | OLN # | | | | OLN STATE |
| SCARS/MARKS/TATTOOS | | | | | | | | | STATEMENT ☐ |

**Person 4**

| INVOLVEMENT TYPE | NAME (LAST, FIRST MIDDLE) | | HOME # | CELL # | WORK # |
| ADDRESS | | | | EMAIL | |

| DOB | AGE | TO AGE | SEX | RACE | | ETHNICITY | | HEIGHT | WEIGHT |
| EYE COLOR | | HAIR COLOR | | SSN | OLN # | | | | OLN STATE |
| SCARS/MARKS/TATTOOS | | | | | | | | | STATEMENT ☐ |

**Person 5**

| INVOLVEMENT TYPE | NAME (LAST, FIRST MIDDLE) | | HOME # | CELL # | WORK # |
| ADDRESS | | | | EMAIL | |

| DOB | AGE | TO AGE | SEX | RACE | | ETHNICITY | | HEIGHT | WEIGHT |
| EYE COLOR | | HAIR COLOR | | SSN | OLN # | | | | OLN STATE |
| SCARS/MARKS/TATTOOS | | | | | | | | | STATEMENT ☐ |

# EXHIBIT A

BOS-002146