Case 3:21-cv-00242-WBV-SDJ    Document 474-4    10/13/23  Page 1 of 20
Case 3:21-cv-00242-WBV-SDJ    Document 375-4 *SEALED* 07/10/23  Page 1 of 20
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

"**Stalking" as defined by the Clery Act:** (1) The intentional and repeated following or harassing that would cause a reasonable person to feel alarmed or that would cause a reasonable person to suffer emotional distress; or (2) the intentional and repeated uninvited presence at another person's: home, work place, school, or any other place which would cause a reasonable person to be alarmed or would cause a reasonable person to suffer emotional distress as a result of verbal or behaviorally implied threats of death, bodily injury, sexual assault, kidnaping or any other statutory criminal act to the victim or any member of the victim's family or any person with whom the victim is acquainted. 34 CFR 668.46(a)(ii).

"**Stalking" as defined by Louisiana Law**: The intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal or behaviorally implied threats of death, bodily injury, sexual assault, kidnaping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted. La. RS § 14:40.2(A)  "Harassing" means the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures. "Pattern of conduct" means a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person. Constitutionally protected activity is not included within the meaning of pattern of conduct. La. RS § 14:40.2(C)

### III. TITLE IX COORDINATORS

The President shall designate the LSU Title IX Coordinator who shall be responsible for the implementation, enforcement, and coordination of Title IX for all LSU campuses. The Chancellor of each Campus shall designate a Campus Title IX Coordinator with designated responsibilities to oversee on-campus Title IX compliance for their respective campus. A Campus may appoint a Deputy Title IX Coordinator to assist the Campus Title IX Coordinator in their duties.

The President also shall designate a Deputy Title IX Coordinator for Athletics. In consultation with the Chancellors and Athletic Directors for each campus, this individual will monitor sports equity, including offerings, participation, and scholarships on all campuses for compliance with Title IX. Any investigations or complaints involving student athletes or Athletics personnel (other than those involving sports equity) shall be handled and/or investigated by the LSU Title IX Coordinator and/or the Campus Title IX Coordinator(s), or their designee, as appropriate under the circumstances and in accordance with this Policy.

### IV. INITIATION OF COMPLAINTS

#### A. Application

This policy applies to all campuses and other administrative units. These procedures may be supplemented by more specific campus procedures that are consistent with this Policy and PM-55.

Complaints of sexual discrimination which do not involve sexual misconduct or sexual assault shall be handled under any applicable campus specific policies.

6



JANE_DOE_000093

CONFIDENTIAL- SUBJECT TO PROTECTIVE ORDER

Each campus shall place the protocol for filing complaints under this policy on their website.

### B. Complaints

Any student or employee who believes that he or she has been subjected to sexual misconduct or any other violation of this policy has a right to report the conduct to the Campus Title IX Coordinator or to any other responsible person, which includes but is not limited to the campus administrator with responsibility for human resource management, student conduct or the department head of the relevant academic department. When the LSU Title IX Coordinator or the Campus Title IX Coordinator becomes aware of information that indicates that a violation of this policy may have occurred, he/she or their designee shall notify the parties involved of their rights under this policy. Persons who may have experienced criminal sexual misconduct are strongly encouraged to report the offense to campus police or local law enforcement, as well as to the Campus Title IX Coordinator or the persons named above. To the extent possible, the complainant and those who receive the complaint should preserve evidence and not disturb the potential crime scene. The complainant, however, has the legal right not to provide a statement to campus police or law enforcement.

### C. Notification of Complaints

Any responsible person who receives actual notice of a complaint under this policy *shall* promptly notify the Campus Title IX Coordinator, who shall be responsible for notifying the LSU Title IX Coordinator and any campus administrators, who may be involved in the resolution process. Notice of a complaint may or may not come from a formal complaint. Any supervisor, or other responsible party who witnesses or receives a report or complaint, shall notify the Campus Title IX Coordinator. Only individuals employed as mental health counselors, victim's advocates, University chaplains or others designated by the University as provided by law can guarantee confidentiality.

### D. Interim Measures

At any time after becoming aware of a complaint, the Campus Title IX Coordinator, a Deputy Title IX Coordinator(s), or other responsible party, may recommend that interim protections or remedies impacted parties involved be provided by appropriate LSU officials. These protections or remedies for the parties involved or witnesses will be provided by appropriate University officials. Remedies may include issuing a timely warning to the campus community, separating the parties, placing limitations on contact between the parties, interim suspension from campus, or making alternative workplace, classroom, course scheduling, dining, or student housing arrangements. Interim measures may vary depending on the nature of the complaint, status of respondent or other criteria. All parties shall be notified of the availability of these measures as well as the fact that such measures are put into effect.

### E. Confidentiality

All parties involved in a complaint, any investigation, and/or resolution, including witnesses, are encouraged to keep information concerning the complaint private until a final decision is rendered in order to protect both the complainant and the respondent.

7



**EXHIBIT A**

JANE_DOE_000094

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LSU may be required to divulge information on a need-to-know basis in order to properly address the complaint, when there is a threat to others, pursuant to subpoena, or other court or administrative order, or as may be required by applicable law. Violations of confidentiality by any other persons involved in the resolution, investigation or administration of the complaint, including any employee, faculty, staff, or student if identified and confirmed, may result in disciplinary or corrective action.

Only individuals employed as mental health counselors, victims' advocates, university chaplains or others designated by the University as provided by law can guarantee confidentiality.

### V. PROCESSING OF COMPLAINTS

#### A. Preliminary Inquiry

The Campus Title IX Coordinator or designee shall conduct or supervise the initial review of the complaint, with such assistance, as needed and/or appropriate under the circumstances, from other campus administrators with responsibilities relevant to the nature of the complaint. A complainant or respondent has the right to a confidential advisor or an advisor of choice at any stage of this process. The initial review of the complaint shall be concluded as quickly as possible, within a reasonable amount of time required to complete the review in a manner that is adequate, reliable and impartial and based on the nature and complexity of the complaint. Generally, the initial review should be ordinarily be completed within 15 business days of receipt of the complaint. The purpose of the initial inquiry is to determine whether there is reasonable cause to believe a specific policy/policies may have been violated. After completion of the preliminary inquiry, any initial determination that a policy has not been violated shall be made by the Campus Title IX Coordinator. A respondent or complainant can request a review of the initial determination to the LSU Title IX Coordinator, whose decision shall be final.

To ensure a prompt and thorough initial inquiry, the complainant should provide as much information as possible. A complaint may be submitted anonymously or by an individual who is not a party to the alleged violation. The following may, but is not required to be, provided in writing:

- The name of student(s) or employee(s) to include student organization, academic department, and position of the person(s) allegedly violating this Policy;
- A description of the incident(s), including the date(s), location(s), and the presence of any witness(es);
- If the complainant is an employee, the alleged effect of the incident(s) on the complainant's position, salary, benefits, promotional opportunities, work environment, or other terms or conditions of employment;
- The name(s) of other student(s) or employee(s) who might have been subject to the same or similar conduct; and/or

Any other information the complainant believes to be relevant to the alleged sexual misconduct, discrimination, harassment, or retaliation.

#### B. Notice of Investigation

If, after the initial inquiry, the Campus Title IX Coordinator finds reasonable cause to believe a policy

8

Case 3:21-cv-00242-WBV-SDJ   Document 474-4   10/13/23 Page 4 of 20
Case 3:21-cv-00242-WBV-SDJ   Document 375-4 *SEALED* 07/10/23 Page 4 of 20
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

or policies may have been violated, an investigation shall be conducted. At any time during the investigation the matter may be referred, if appropriate under this policy, to the informal resolution process. If an investigation is warranted, then at the recommendation of the Campus Title IX Coordinator, a trained investigator(s) will conduct a full investigation into the facts and circumstances of the complaint. The investigation may include in-person interviews with all parties involved, including witnesses and parties that the investigator(s) may deem appropriate. Both the respondent and complainant will be given the opportunity to identify witnesses to be interviewed. The investigator may also collect and review any documents or other relevant information to include but not limited to photographs, video recordings, and/or information from social media. Any such investigation shall be conducted by a trained person, authorized and assigned as an investigator by the Campus Title IX Coordinator, including, but not limited to, trained employees from human resource management department or the student services or student life department, or other qualified University employees. The Campus Title IX Coordinator will notify the appropriate Campus offices as necessary.

Both the respondent and complainant will be provided written notice that an investigation will be undertaken as well as the nature of the complaint. The notice should include the specific section(s) of policy that may have been violated. All parties will have an opportunity to identify pertinent evidence to be considered by the investigator(s). The investigator(s) will author a written investigative summary to include a timeline of events, facts, and circumstances surrounding the complaint. Upon completion of the investigative summary, the Campus Title IX Coordinator or designee, in consultation with the appropriate student services, student life department, or human resource management, will reach a finding based on a preponderance of the evidence or more likely than not that a policy was or was not violated. Prior to issuing a finding, the Campus Title IX Coordinator may request additional investigation, should he/she deem this to be appropriate.

Upon issuance of a notice of investigation, any and all effort should be made to conduct a thorough and prompt investigation based on the facts and circumstances of each complaint ordinarily within thirty (30) business days of the notice. Complicated or extensive investigations may take longer.

After a full investigation, a determination that a policy has or has not been violated, from a more likely than not or preponderance of the evidence standard, shall be made by the Campus Title IX Coordinator or his designee, by admission of responsibility by the respondent or by the complainant's admission of making false charges against the respondent. Both the complainant and the respondent will be given written notice of the results of the investigation

## VI. RESOLUTION PROCEDURES

In the event that a determination has been made that from a more likely than not or preponderance of the evidence standard that a policy has been violated, the University has both informal and formal resolution procedures to address alleged violations of this policy. Both procedures will be implemented by individuals who have received training on issues related to sexual misconduct. The complainant and respondent have the right to an advisor of choice or a confidential advisor at any stage of the Informal Resolution or Formal Resolution processes.

Both informal and formal resolution procedures will utilize a preponderance of the evidence standard throughout the process, with respect to determinations as to whether, or not, there has been a violation of this Policy.

EXHIBIT A    JANE_DOE_000096

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

As set forth below, an informal resolution procedure is available under certain circumstances. After a full investigation, or at the request of the parties as provided in Section V. B, or if the respondent accepts responsibility for violation(s) of policy and if the investigator finds that reasonable cause exists to believe that University policy has been violated, the Campus Title IX Coordinator or designee will determine whether the informal resolution procedure is appropriate. If an informal resolution is not appropriate, a formal hearing by a panel of trained hearing officers will be scheduled, for situations involving student matters only. In situations involving an employee as a respondent, the Campus Title IX Coordinator or designee will determine the appropriate procedure to follow in consultation with Human Resources Department and/or applicable campus administrator(s). .

If the Campus Title IX Coordinator or designee determines that informal resolution is appropriate, the complainant and respondent shall be advised of the option to pursue an informal resolution procedure. If both complainant and respondent agree in writing, the informal resolution procedure will be followed, without further investigation, unless and until informal resolution is unsuccessful.

**1. Informal Resolution:**

The use of the informal resolution procedure is optional and must be agreed upon by all parties involved. The informal resolution procedure will not be followed: if any of the persons involved in the complaint do not wish to engage in the informal procedure; if the Campus Title IX Coordinator deems the informal resolution procedure inappropriate for the alleged offense; if the respondent does not accept responsibility for the alleged policy violation(s); or, if an attempt to utilize the informal procedure has been unsuccessful. Informal procedures are not appropriate for, or applied in, cases involving violence resulting in significant harm to others. Additionally the parties may discontinue participation in the informal process at any time. Information obtained regarding the complaint and the investigative summary will be treated as private, with only those with a need to know being informed of the complaint.

An attempt to informally resolve the complaint shall be made by the Campus Title IX Coordinator or designee and should be ordinarily concluded within fifteen (15) calendar days of the decision to pursue informal resolution. Such informal resolution includes meeting with each party to the complaint; review of any initial findings; review or continuance of interim remedies; and any other actions deemed appropriate by the parties and LSU. Any further inquiry or review deemed necessary should be concluded in that same period. Once the informal resolution procedure is complete, written notification of the determination of whether or not this policy(s) was violated will be provided to the complainant and respondent. If a determination has been made that a policy was violated, any changes in status, restrictions, limitations, or other recommended outcomes shall be given to all parties. Any party not willing to accept the proposed informal resolution has the right to make a written request, within five (5) calendar days upon receipt of written notification of the proposed resolution, to the office of the Campus Title IX Coordinator, thereby requesting the opportunity to pursue the formal resolution procedure set forth below.

**2. Formal Resolution:**

If either the respondent or complainant is not in agreement with the outcome of the informal resolution process or if the University, the respondent, and/or the complainant have not consented

10


EXHIBIT A

JANE_DOE_000097

to and/or determined that informal resolution is inappropriate or insufficient, the formal procedure will be utilized.

Upon submission of written notification by either the respondent or complainant to the Campus Title IX Coordinator communicating an intent not to accept the proposed informal resolution outcome, formal consideration will be given for a formal resolution process. The complainant and the respondent will be notified in writing the specific section(s) of policy alleged to have been violated, and the date, time, and location of the formal resolution process. Information obtained regarding the complaint will be treated as privately as possible (as set forth herein) with only those with a legitimate educational interest being informed of the complaint and the outcome of the investigation.

The formal procedure will consist of a formal review of all allegations, the initial complaint, supporting documents, investigative summary and corresponding documentation. For complaints involving students as respondents, the formal procedure will consist of a panel of trained hearing officers as outlined in the code of student conduct and/or policy/policies governing student conduct. For complaints involving employees as respondents, the Title IX coordinator or designee and the Office of Human Resource Management and/or applicable campus administrator will direct the formal process of the investigation. Each Campus shall adopt or utilize existing procedures to address alleged violation(s) of this Policy that afford both the complainant and the respondent due process as well as appeal options and other procedural rights as outlined in University policy. The Campus procedures for resolution of such complaints may be subject to review by the LSU Title IX Coordinator.

## VII. RESOLUTION/DISCIPLINARY ACTION

LSU will take appropriate action against any person found to be in violation of this policy. (Note: violations of this policy may also be subject to individual civil or criminal liability under the state or federal law).

When an employee is deemed to have violated this policy, the Campus Title IX Coordinator and Human Resource Management and/or applicable campus administrator will jointly determine the appropriate disciplinary action, or recommendation for disciplinary action, up to and including dismissal, in accordance with applicable laws, rules, and/or LSU policies.

For violations involving students, except when acting in the capacity of an employee, the appropriate campus office or administrator responsible for student conduct, student services or student life will determine the appropriate action, pursuant to any applicable code of student conduct and/or policy/policies governing student conduct. In addition, to the extent possible, LSU will interact with appropriate law enforcement or third parties to address the actions of non-students or non-employees.

Violations of this Policy may result in outcomes such as residential life contract cancellation, deferred suspension, suspension, expulsion, class only restriction (student) and/or disciplinary action or separation of employment.

## VIII. APPEAL

11



JANE_DOE_000098

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Either party may appeal the findings of the formal resolution process in accordance with existing University policies detailing appeal procedures for students or for employees. Appeals must be submitted in writing to the Campus Title IX Coordinator or designee within ten (10) business days upon receipt, by the appealing complainant or the appealing respondent, of notification of the outcome of the formal resolution process.

### IX. COOPERATION WITH LAW ENFORCEMENT

LSU will comply with law enforcement requests for cooperation and such cooperation may require LSU to temporarily suspend the fact-finding aspect of a Title IX investigation while the law enforcement agency is in the process of gathering evidence. LSU will promptly resume its Title IX investigation as soon as notified by law enforcement that it has completed the evidence gathering process. LSU may provide up to 10 calendar days to allow for the law enforcement agency criminal process/investigation to unfold prior to resuming the fact-finding aspect of the Title IX investigation.

The University will implement appropriate interim steps/remedies during the law enforcement agency's investigation to provide for the safety of the complainant, the respondent, the campus community, and to avoid any instance of retaliation.

Each campus will develop protocols to coordinate efforts with local law enforcement agencies and other organizations such as crisis centers. A Memorandum of Understanding (MOU) may be utilized to establish those protocols.

### X. RETALIATION

Retaliation against a person who has been subjected to sexual misconduct, or against one, who in good faith brings a complaint of or sexual misconduct or who, in good faith, participates in the investigation of a sexual misconduct complaint, is prohibited; and shall be a violation of this policy and shall constitute misconduct subject to disciplinary or other action, as described above. LSU will take steps to prevent recurrence and remedy the effects of any violation of this Policy.

### XI. RECORD KEEPING

Records will be kept in accordance with Louisiana law and federal law. For students, records will be maintained for seven (7) years by the Dean of Students or other office tasked with the maintenance of student records, except in cases of cases of suspension and expulsion, which records shall be permanent. Employment actions in violation of this policy will be maintained in the employees' respective Employee Relations file.

### XII. OTHER ASSISTANCE

Campuses and the communities in which they are located can provide other assistance to persons impacted by a violation of this policy. Each campus will develop and maintain a list of departments, programs/services, or community-based agencies offering assistance to students and employees concerning issues related to this policy.

### XIII. CAMPUS CLIMATE SURVEY

12



**EXHIBIT A**

JANE_DOE_000099

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Each campus shall administer a Campus Climate Survey to assess the knowledge, perceptions and behaviors of its students, faculty and staff regarding sexual misconduct. The survey shall be developed by the four management boards of public higher education in the state of Louisiana, in coordination with the Board of Regents. Each campus is encouraged to supplement the statewide survey with any additional information specific to its unique characteristics and that may assist in preventing sexual misconduct and administering strategies dealing with sexual misconduct. The annual Campus Climate Survey shall be submitted to the LSU Title IX Coordinator by June 1 of each year.

### XIV. TRAINING, EDUCATIONAL, AND PREVENTION PROGRAMS

Each campus shall regularly offer training, educational and prevention programs designed to inform the campus or community about the law of title IX and LSU's Title IX Policy. Each campus will develop and maintain a list of educational programs, prevention programs, and other events designed to reduce the incidence of sexual violence on campus or within the community. Each campus should identify and include a bystander intervention program and programs addressing issue related to this policy.

### XV. RELATED POLICIES

To the extent other LSU or campus-based policies may conflict with this policy, the provisions of this policy shall supersede and govern.

### XVI. TASK FORCE

Each campus shall establish a task force to address sexual misconduct. Each task force shall invite student members to be represented through their respective student government body or other student organizations.

### XVII. AMNESTY POLICY

LSU encourages reporting of sexual misconduct and seeks to remove barriers to an individual or group reporting such conduct. An individual or group who, in good faith, reports sexual misconduct, either as a complainant or a third party witness, shall not be sanctioned for a nonviolent student conduct violation, such as underage drinking, at or near the time of the complained incident, provided that any such violation did not and does not place the health and safety of any other person at risk. Each campus policy shall include amnesty policies in accordance with ACT 172 and other applicable state laws.

### XVIII. MEMORANDUM OF UNDERSTANDING

Each campus shall make diligent efforts to enter into Memorandum of Understanding (MOU) with law enforcement and criminal justice agencies in the parish in accordance with ACT 172 or any other applicable state laws. Such MOUs should clearly delineate the responsibilities, protocols for investigation, as well as commitments to share information, in accordance with Act 172 and state and federal confidentiality laws. The MOUs should be updated every two years. The MOU should provide for joint or shared trauma-informed training specific to assisting sexual assault victims.

13



EXHIBIT A    JANE_DOE_000100

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

### XIX. TRANSFER

In accordance with state and federal law, if a student accused of a sexually-oriented criminal offense as defined in La. R.S. 44:51 or any sexual abuse offense as defined in La. R.S. 14:403 seeks to transfer to another institution during an investigation, resolution procedure, and/or adjudication procedure, the institution shall withhold the student's transcript until such investigation or adjudication is complete and a final decision has been made. Each institution shall inform the respondent of the institution's obligation to withhold the transcript during the investigation.

If, upon the completion of an investigation, resolution procedure, and/or adjudication under this policy, the student is found responsible for sexually-oriented criminal offenses as defined in La. R.S. 44:51 or any sexual abuse offense as defined in La. R.S. 14:403, and seeks to transfer to another institution, institutions are required to communicate such a violation, when the institution becomes aware of the student's attempt to transfer, with the institution(s) to which the student seeks to transfer or has transferred.

**EXHIBIT A**

JANE_DOE_000101

Case 3:21-cv-00242-WBV-SDJ    Document 474-4    10/13/23   Page 10 of 20
Case 3:21-cv-00242-WBV-SDJ    Document 375-4 *SEALED* 07/10/23    Page 10 of 20
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**From:** Crystal V Loup <cramez1@lsu.edu>
**To:** [redacted] <[redacted]@lsu.edu>
**Subject:** RE: Lighthouse Program
**Date:** Fri, 26 Apr 2019 08:16:27 -0500
**Importance:** Normal
**Inline-Images:** image001.png; image002.png

---

Hey, [redacted]

I hope you're doing well – I'm sure you are busy prepping for finals week! 🙂

I wanted to give you a quick update on the Title IX situation – I did disclose limited information to the team this week and advocated for moving forward with the Title IX complaint. I spoke directly with Kimberly, who said that she would plan to reach out to you again as well as Redacted if she is still willing.

Please let me know once you hear from Kimberly again. Also, let me know if you want to come stop by anytime in the next couple of weeks, especially if you need any support moving forward with Title IX. I will continue to advocate on your behalf.

Thanks!



**Crystal Loup, M.Ed., PLPC**
Coordinator, Wellness & Health Promotion
LSU Student Health Center
Infirmary Road, Room 05A
Baton Rouge, LA 70803
cramez1@lsu.edu
225-578-0436 (Direct) 225-578-5718 (Main)
225-578-1278 (Fax) www.lsu.edu/shc
Pronouns: She/Her/Hers





CONFIDENTIALITY MESSAGE: This e-mail contains CONFIDENTIAL and/or PRIVILEGED information intended only for the use of the specific individual or entity named above. If you are not the intended recipient of this e-mail or an authorized agent responsible for delivering it to the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this e-mail is strictly prohibited. If you have received this transmission in error, immediately notify the sender by e-mail or telephone and delete the message. Thank you.

**EXHIBIT A**

BOS-003358

**From:** Kimberly ▉▉ <k▉▉@lsu.edu>
**To:** ▉▉ ▉▉ <▉▉@lsu.edu>
**Subject:** Re: Appointment
**Date:** Fri, 26 Apr 2019 12:26:36 -0500
**Importance:** Normal

Hi ▉▉

I wanted to reach out since it's been a few weeks since our meeting. I think Crystal has already told you that I had trouble reaching your old roommate, ▉▉. I just reached out to Redacted to gather additional information, hopefully next week.

If there are any questions that come up for you about the PM-73 process or if there's anything I can do from my end to assist you, please let me know. Good luck with finals next week!

**Kimberly** ▉▉
Graduate Assistant for Title IX
Louisiana State University
(225) 578-8227

---

**From:** Kimberly ▉▉
**Sent:** Monday, April 1, 2019 10:50 AM
**To:** ▉▉ ▉▉
**Subject:** Re: Appointment

Sounds good! I'll meet you by the stairs on the third floor (the side near SAA and campus life). I'm wearing a black dress.

Get Outlook for iOS

---

**From:** ▉▉ ▉▉ <▉▉@lsu.edu>
**Sent:** Monday, April 1, 2019 10:41
**To:** Kimberly ▉▉
**Subject:** Re: Appointment

I don't know where that is. Ill meet you on the Third floor

Get Outlook for iOS

**EXHIBIT A**

BOS-003421

Case 3:21-cv-00242-WBV-SDJ   Document 474-4   10/13/23   Page 12 of 20
Case 3:21-cv-00242-WBV-SDJ   Document 378-4 *SEALED* 07/10/23   Page 12 of 20
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER



May 21, 2019

Sent electronically to ███████@lsu.edu

PERSONAL AND CONFIDENTIAL

Regarding Case Number: 2018371701

Dear Ms. ███████

My name is Daniel DeLuca and I work with the University on investigating cases that involve potential violations of LSU's policies and/or the LSU Code of Student Conduct. Information has been shared that you may have been the victim of and/or have knowledge of an incident(s) involving a potential violation of these policies throughout the 2018-2019 academic year. Specifically, the information is revolved around the report you submitted to Residential Life on or about March 21, 2019.

**As a result, I am requesting to meet with you on May 23, 2019 AT 1:00 PM in Suite 340 of the LSU Student Union. Due to the end of the semester, you may wish to reschedule your meeting to an earlier date or hold this meeting via phone. To do so, please email me at ddeluca1@lsu.edu prior to the meeting date and time and indicate in the email that you prefer to participate via phone. If this is not a good phone number, please provide on in that email.**

If you cannot attend this meeting time and date, please call the main office at 225-578-4307 to reschedule or email me directly at ddeluca1@lsu.edu.

We encourage you to visit the LSU Code of Student Conduct at lsu.edu/saa to review the Accountability process and your rights and responsibilities as an LSU Student.

If you have a disability and need accommodations for this meeting, please notify the office via email at dossaa@lsu.edu or call at 225-578-4307 and we will make the necessary arrangements.

Concerned,

*[signature]*

Daniel DeLuca
Assistant Director, Student Advocacy & Accountability
ddeluca1@lsu.edu

Louisiana State University • 340 LSU Student Union • Baton Rouge, LA • 70803 • O 225-578-4307 • E dossaa@lsu.edu

EXHIBIT B  10-5-22 Bradford

**EXHIBIT A**

JANE_DOE_000102

Case 3:21-cv-00242-WBV-SDJ    Document 474-4    10/13/23    Page 13 of 20
Case 3:21-cv-00242-WBV-SDJ    Document 375-4 *SEALED* 07/10/23    Page 13 of 20
CONFIDENTIAL/SUBJECT TO PROTECTIVE ORDER

**From:** "▮▮▮▮ ▮ ▮▮▮▮▮▮▮" <▮▮▮▮▮@lsu.edu>
**To:** "Crystal V Loup" <cramez1@lsu.edu>
**Subject:** Re: Letter
**Date:** Fri, 24 May 2019 11:49:00 -0500
**Importance:** Normal
**Inline-Images:** image001.png; image002.png

---

Hey Mrs. Crystal,

I turned in my appeal letters and I should have an answer by Wednesday. I met with student accountability and advocacy and the person I talked to said that title ix said that ▮▮▮ wasn't in violation of their policies so they sent it to their office to try to find violations there. It was very disappointing I guess to hear that and I don't know what to make of it all. But the counselor who took my appeal papers was sounding like he thought it would go through and I would be readmitted.

Get Outlook for iOS

---

**From:** Crystal V Loup <cramez1@lsu.edu>
**Sent:** Friday, May 24, 2019 11:45 AM
**To:** ▮▮▮▮ ▮▮▮▮▮▮
**Subject:** RE: Letter

Hey, ▮▮▮

How did everything go yesterday?

**LSU**

**Crystal Loup, M.Ed., PLPC**
Coordinator, Wellness & Health Promotion
LSU Student Health Center
16 Infirmary Road, Room 05A
Baton Rouge, LA 70803
cramez1@lsu.edu
225-578-0436 (Direct) 225-578-5718 (Main)
225-578-1278 (Fax) www.lsu.edu/shc
*Pronouns: She/Her/Hers*



The Lighthouse Program — Violence Prevention, Advocacy & Support



EXHIBIT 9
10-5-22 Bradford

# EXHIBIT A

BOS-003393

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

To whom it may concern,

I am requesting that my TOPS status be reviewed as unique circumstances made it difficult for me to succeed in school. From October 2018 until March 2019, I was harassed, sexually harassed, and sexually assaulted by someone who lived in my dorm. I tried to stop the harassment multiple times over the course of school year but I could not get my tormentor to stop. Due to the continued harassment, I was on academic probation and my TOPS was suspended. I decided to report him to LSU in March 2019 after a weekend of non-stop harassment.

On March 21st, 2019, I texted my RA about the ongoing situation. That night I had my first interview with Title IX. During this interview they told me I had two options going forward, I could either stay in the dorm where my tormentor lived or move across campus immediately. The interviewer told me that she thought I should move across campus as soon as possible because I was unsafe. I made the decision to move permanently to the new dorm and I was not offered any assistance in moving my belongings.

I was told I could obtain a no contact order against my harasser. In my second interview I confirmed that I did want a no contact order. I never signed anything or got any documentation. I had in total, at least four interviews with different people from March 2019 until May 2019. During these interviews, I was asked to recall happened to me in detail. I would frequently cry during the interviews and feel guilt. The interviewers were condescending and I soon felt that I was wasting their times and that what happened to me was insignificant.

Due to the harassment and the repeated interviews, I suffered a decline in mental health. I did very poorly that semester because I could not cope with the situation. It felt as though it was out of my control. I was then expelled from LSU for failing my classes and I permanently lost my TOPS. I appealed the decisions and was accepted back in and awarded TOPS again.

I had my last interview about the case with Daniel DeLuca in May 2019. I asked him what was going on with my case since I hadn't been contacted by anyone else. He informed me that my harasser was not in violation of Title IX. He told me that I was being interviewed again so they could see if there were any other violations of student policy. He said he couldn't tell me anything else due to privacy laws and then started the interview. This was my second interview with DeLuca. He had interviewed me a few days prior over the phone. DeLuca never followed up with me after the interview.

I was extremely distraught during the interview. When I left the interview, I had a panic attack in my car. I was crying because I couldn't believe that my harasser wasn't in violation of Title IX. There was a witness to my sexual assault but they never interviewed her. I was confused on how they could decide that he was not guilty when they did not talk to the witness. I had text messages as well as a voicemail from my tormentor proving that I was a victim of harassment.

The whole time I dealt with Title IX, I only received one document. It was from the first interview stating that a case had been opened and they would investigate it. I was shocked that they made their decision and didn't even email me.

The only positive thing LSU did was they provided me with free therapy. They have a "Lighthouse" program which is free therapy for people that were involved with Title IX. I was in the lighthouse for months but I was not getting better. I had no resolution to my case and I did not know how to cope with it. I still felt guilt and I was very confused. Since I was not getting


EXHIBIT P12
16
10-5-22 Bradford

## EXHIBIT A

JANE_DOE_00000202

better, I was told I needed to leave Lighthouse and attend therapy with a therapist that did not specialize in Title IX. I was told that the reason for this was I was not having depression over just the title IX situation. My depression was affecting every part of my life and I needed to see someone that could handle my problems better.

The catch with this was that when you are in the Lighthouse program you can see a counselor as many times as you want as soon as you want. When you are in the regular counseling program that is not specialized for title IX, you are told that you have only eight sessions. LSU only allows you to have eight sessions with their counselors. I went to a few sessions and I was told I needed psychiatric help. I couldn't find anyone that took my insurance so I went undiagnosed for months.

I failed school again at the end of the Fall 2019 semester and I lost my TOPS again. I dropped out and did not attend the Spring 2020 semester. Since I dropped out of LSU, I lost access to therapy and the Lighthouse program. I had a further decline in my mental health and I developed poor coping mechanisms. This included consuming large amounts of food to the point where I gained over forty pounds in four months.

I moved back home in March 2020 and I started school again at Baton Rouge Community College that summer. I found a psychiatrist that took my insurance. I was diagnosed with anxiety, depression, obsessive compulsive disorder, insomnia, and binge eating disorder. I am receiving treatment and doing much better.

I then saw the USA Today article exposing the problems with LSU's title IX. I emailed the author of the article, Kenny Jacoby, and asked him if he could tell me if he had any information in there about my case. He told me that he had a list of all the cases in which any discipline action was taken. My case was not on the list. This confirmed for me finally that nothing was done. Kenny then gave my information to a lawyer working on the case at my request.

I then emailed the Title IX office and demanded that I receive any and all documentation on my case. Daniel DeLuca emailed me back with my "case file". It was just a form of questions he had to fill out and a typed report of one of my interviews. DeLuca stated that I had done nothing to stop my harasser. This was false. I had blocked all forms of communication and repeatedly told him to leave me alone.

I told DeLuca that my case file told me nothing new. That I needed to know why no discipline was taken. I also needed to know why no one was interviewed. DeLuca responded and said that he could not tell me anything else because of the Family Education Rights Protection Act. That is a violation of the federal title IX law. The victim must be informed of any outcome of the case and FERPA does not protect the privacy of the perpetrator.

The officials at Title IX did almost everything wrong. They moved me out of my dorm instead of my harasser. I was interviewed multiple times by multiple different people. I should have been given a copy of a no contact order. I should also have been notified before they made any decisions on if it was a title IX violation. I had the right to appeal if I wanted to. There also should have been a hearing that I should have been able to attend. I believe all of this was done intentionally as it is now thought that officials at Title IX and the athletics department purposely covered up cases to keep their numbers low. I have since joined a lawsuit against LSUs title IX as Jane Doe. I will attach a copy of the lawsuit and you can read more details about the case against LSU. My testimony starts on page 60.

# EXHIBIT A

JANE_DOE_00000203

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

JANE_DOE_00000204

Thank you for taking the time to read my story. I understand that I already lost TOPS twice and I am so grateful that I was able to get it back once. I think what happened to me is very unique and I hope that will be taken into consideration.

Sincerely,

▆▆▆▆▆▆▆▆

# EXHIBIT A

Case 3:21-cv-00242-WBV-SDJ    Document 474-4    10/15/25    Page 17 of 20
Case 3:21-cv-00242-WBV-SDJ    Document 375-4 *SEALED* 07/10/23    Page 17 of 20
CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

**From:** My Student Body <msb@LSU.EDU>
**To:** <BROADCAST_MSB_NO@LISTS.LSU.EDU>
**Subject:** \*\*\*Requirement: Deadline Approaching for MyStudentBody Essentials Course - Nov. 2nd
**Date:** Tue, 09 Oct 2018 11:21:52 -0500
**Importance:** Normal

---

<u>Deadline Approaching</u>

Hello Tiger,

Our records indicate you have not completed the MyStudentBody Essentials Course. This message is a friendly reminder to complete the MyStudentBody Essentials Course. All incoming students are **<u>REQUIRED</u>** to complete the MyStudentBody (MSB) Essentials Course. Please complete the requirement as soon as possible, as failure to do so will result in an inability to modify your course schedule for spring semester.

The MyStudentBody Essentials Course contains three modules: Alcohol, Drugs, and Sexual Violence, **you must complete <u>ALL</u> three modules with a passing score of 80% or higher to meet the requirement.** You can access the link to log-in and complete the course at www.lsu.edu/mystudentbody. You will be taken to the myLSU portal where you login using your myLSU username and password.

For all important information related to the MyStudentBody requirement, including log-in instructions, visit the Student Health Center website at www.lsu.edu/mystudentbody. If you have difficulty accessing the site, please reply to this message.


In Health,
The Office of Wellness and Health Promotion Staff
225-578-5718



**EXHIBIT A**

BOS-003391

Case 3:21-cv-00242-WBV-SDJ    Document 474-4    10/13/23   Page 18 of 20
Case 3:21-cv-00242-WBV-SDJ    Document 375-4 *SEALED* 07/10/23    Page 18 of 20
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**From:** My Student Body <msb@LSU.EDU>
**To:** <BROADCAST_MSB_NO@LISTS.LSU.EDU>
**Subject:** ***Requirement: Deadline Approaching for MyStudentBody Essentials Course - Nov. 2nd
**Date:** Mon, 29 Oct 2018 11:46:38 -0500
**Importance:** Normal

---

## Deadline Approaching

Hello Tiger,

Our records indicate you have not completed the MyStudentBody Essentials Course.  This message is a friendly reminder to complete the MyStudentBody Essentials Course.  All incoming students are **REQUIRED** to complete the MyStudentBody (MSB) Essentials Course. Please complete the requirement as soon as possible, as failure to do so will result in an inability to modify your course schedule for spring semester.

The MyStudentBody Essentials Course contains three modules: Alcohol, Drugs, and Sexual Violence, **you must complete ALL three modules with a passing score of 80% or higher to meet the requirement.**  You can access the link to log-in and complete the course at www.lsu.edu/mystudentbody. You will be taken to the myLSU portal where you login using your myLSU username and password.

For all important information related to the MyStudentBody requirement, including log-in instructions, visit the Student Health Center website at www.lsu.edu/mystudentbody.  If you have difficulty accessing the site, please reply to this message.


In Health,
The Office of Wellness and Health Promotion Staff
225-578-5718

**EXHIBIT A**

BOS-003384

Case 3:21-cv-00242-WBV-SDJ    Document 474-4    10/13/23   Page 19 of 20
Case 3:21-cv-00242-WBV-SDJ    Document 375-4 *SEALED* 07/10/23   Page 19 of 20
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

From: "LSU Division of Strategic Communications" <pubaffairs@lsu.edu>
To: "█████ ███████" <██████@lsu.edu>
Subject: Title IX Campus Climate Survey
Date: Thu, 21 Mar 2019 13:06:10 -0500
Importance: Normal

---

   Header Logo

March 21, 2019

Dear Students,

The LSU Title IX Coordinator and the Louisiana Board of Regents are conducting the annual Campus Climate Survey through Monday, April 22.

This survey is conducted to help improve education, prevention, and safety practices related to sexual violence on campus. Responses will be anonymous, but the names of those who complete the survey will be collected and entered into a drawing for prizes.

Completing the survey takes an average of 15-20 minutes. Once you have begun, there is no way to go back and finish where you left off. Because there is sensitive information collected, it is recommended that you take the survey in a private space.

Visit https://uky.az1.qualtrics.com/jfe/form/SV_1FCWORL2mN9CUh7 to complete the survey.

Thank you for your time.

   Footer Logo

 Facebook Link     Twitter Link     YouTube Link     Instagram Link

Copyright © 2018 | Provide Feedback | Accessibility Statement | Privacy Policy | Forward this email.

LSU students, faculty and staff are automatically subscribed to LSU Broadcast communications; membership is updated through the university's official records management systems. Since broadcast communications may be used in times of emergencies, current members of the LSU community cannot be unsubscribed. *If you have any questions or comments regarding the content of this e-mail, please contact the LSU entity that requested it.*



**EXHIBIT A**

BOS-003392

**From:** "LSU Division of Strategic Communications" <pubaffairs@lsu.edu>
**To:** "███ ███ ███" <█████@lsu.edu>
**Subject:** Annual Security and Fire Report - 2019
**Date:** Tue, 01 Oct 2019 10:05:55 -0500
**Importance:** Normal

---

  Header Logo

*October 1, 2019*

The safety of our students, faculty, and staff is of the utmost importance to LSU, and we urge you to report anything of concern to LSU Police immediately. If you See Something, Say Something by calling LSU PD at 578-3231 or using the LSU Shield mobile safety app. In an emergency, dial 911.

Each year, per the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (Clery Act), LSU is required to keep and disclose information about crimes that have occurred on campus, in off-campus buildings or on property owned or controlled by the university and on public property within or immediately adjacent to the campus. The LSU Annual Security and Fire Report, available online at lsu.edu/police/files/annual/2019report.pdf, includes these statistics for the previous three years. The report also includes institutional policies concerning campus safety, such as alcohol and drug use, crime prevention, crime reporting, sexual assault and others. You may also request a paper copy of the report from the LSU Police Department.

LSU offers a number of tools and safety-related resources for students, faculty and staff to utilize such as the emergency text messaging system, LSU Shield mobile app and evacuation plans, among others. To register your mobile phone to receive emergency text messages, visit http://my.lsu.edu and click on "Personal Preferences" and "Emergency Contacts." For more safety tips and tools, please visit lsu.edu/police.

  Footer Logo

 Facebook Link     Twitter Link     YouTube Link     Instagram Link

Copyright © 2019
Provide Feedback | Accessibility Statement | Privacy Policy
Forward this email.

*LSU students, faculty and staff are automatically subscribed to LSU Broadcast communications; membership is updated through the university's official records management systems. Since broadcast communications may be used in times of emergencies, current members of the LSU community cannot be unsubscribed. If you have any questions or comments regarding the content of this e-mail, please contact the LSU entity that requested it.*

**EXHIBIT A**