**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**ABBY OWENS, ET AL.**                    **CIVIL ACTION NO. 3:21-CV-00242**

**VERSUS**                               **JUDGE WENDY B. VITTER**

**LOUISIANA STATE UNIVERSITY, ET**       **MAGISTRATE JUDGE JOHNSON**
**AL.**

<u>**DECLARATION OF JONATHAN SANDERS**</u>

Jonathan Sanders states under penalty of perjury as follows:

1.

I am over 18 years of age and competent to testify to the matters set forth below from personal knowledge or from records kept in the ordinary course of business.

2.

I have been employed at Louisiana State University and Agricultural and Mechanical College ("LSU") since July 2006. I am currently Associate Dean and Director of Student Advocacy and Accountability ("SAA") and have served in this capacity since September 2016. Prior to my current role, I served as Assistant Director of Greek Life from July 2006 to 2008, Associate Director of Greek Life from 2008 to 2013, and Assistant Dean and Associate Director of Greek Life from 2013 to 2016. In my current role, I oversee enforcement of LSU's policies and the Code of Student Conduct, and work with students in crisis, distress or concern as part of the LSU CARES Program. During the period from 2016 to 2018, I also served as the Title IX Case Manager and was responsible for assigning cases to investigators and tracking progress of cases. In my role, I have access to student academic records, student disciplinary records, and records regarding student complaints, including Maxient files.

# EXHIBIT D

3.

In 2007, LSU implemented the MyStudentBody Essentials Course, which contains alcohol, drug, and sexual violence prevention modules and includes information about university policies and resources. All incoming students under the age of 23 and all undergraduate students are required to complete the training. Students are required to pass each module with a score of 80% or higher and are encouraged to complete the training prior to beginning their first semester. Completion of the training is a prerequisite for registration for the second semester.

4.

In 2014, LSU adopted Permanent Memorandum No. 73 ("PM-73"), dated June 18, 2014. PM-73 is LSU's Title IX and Sexual Misconduct Policy. The policy prohibits sexual misconduct and sexual discrimination and addresses various issues such as jurisdiction, conduct subject to the policy, complaints, reporting, and training. PM-73 includes a definition of "Responsible Person" and indicates what employees have a duty to report sexual violence and other prohibited conduct. The policy expressly provides "Responsible Persons do not include victims' advocates, mental health counselors, or clergy." PM-73 applies to students and employees, and all members of the LSU community are made aware of the policy. Under the policy, each campus is required to offer training, and educational and prevention programs to inform the campus and community about Title IX and the policy. PM-73 has been revised periodically to comply with changes in the law. A true and correct copy of the original policy as well as the policies dated December 15, 2015; August 14, 2020; July 1, 2021; October 15, 2021; and January 19, 2022, are attached as Exhibit 1, collectively.

# EXHIBIT D

5.

LSU provides information about Title IX and associated resources in various ways.  In accordance with PM-73, students receive communications about campus safety, sexual violence, and available resources.  The communications contain a web address and information about "Tigers Are Committed," a guide on rights, available resources, and the university's procedures booklet for individuals who have experienced sexual assault, domestic violence, dating violence, or stalking.  Among the available resources is the Lighthouse Program, a free and confidential university resource which provides interpersonal violence prevention, support, and advocacy to the LSU campus community. At least as of 2016, information regarding Title IX was contained in LSU First Year Experience classes, Residential Life handbooks, and other orientation presentations.  In addition, the Office of Wellness and Health facilitated discussions between student leaders and new students surrounding sex-based discrimination.  Members of social Greek organizations were required to complete training on sex-based harassment and Title IX, among other topics.

6.

All employees are required to complete an annual Title IX training, which is provided through Moodle, the university's learning management system.

7.

Sarah Beth (Vosburg) Kitch enrolled as a graduate student at LSU in fall 2009.  She received a Master of Arts in May 2013 and a Doctor of Philosophy in December 2014.  During her enrollment at LSU, Ms. Kitch had a grade point average of ▮.  A true and correct copy of Ms. Kitch's transcript is attached as Exhibit 2.

**EXHIBIT D**

8.

Samantha Brennan enrolled as a student in spring 2016. After her first semester, Ms. Brennan was placed on formal scholastic warning because she had a semester grade point average of ███. A true and correct copy of Ms. Brennan's transcript is attached as Exhibit 3.

9.

Jade Lewis graduated in December 2020 with a bachelor's degree in Sports Administration and a minor in business. A true and correct copy of Ms. Lewis' transcript is attached as Exhibit 4.

10.

In July 2016, a video voyeurism complaint was filed against the student identified as John Doe in the Second Amended Complaint (the "Complaint"). The report was anonymous and did not identify the complainant. According to the notes from LSUPD, the victim did not wish to pursue charges and did not want her identity disclosed. A true and correct copy of the Maxient report is attached as Exhibit 5.

11.

According to LSU's records, by January 2018, Doe was no longer a student.

12.

In June 2019, SAA reviewed the complaint of Jane Doe against the student identified as John Poe in the Complaint. This was the first complaint of sexual harassment SAA received regarding Poe. The complaint was first reviewed by Title IX, and then Title IX transferred it to SAA to determine if Poe violated university policy. When SAA received the file, it included information from the initial meeting between Doe and Residential Life, notes from a meeting between Kimberly ███ and Doe, notes from Crystal Loup at the Lighthouse Program, and

-4-

# EXHIBIT D

notes from Jeffrey Scott, the Title IX investigator. A true and correct copy of the Maxient file is attached as Exhibit 6. After reviewing the file and conducting an investigation, SAA found Poe responsible for LSU Code of Student Conduct Section 10.2—Harassment and Property Misuse. Based on the information gathered during the investigation, and after considering mitigating and aggravating factors and the SAA Outcomes Guide, SAA imposed the following sanctions on Poe: (1) Disciplinary Probation without Restriction, (2) a No Contact Directive (between Poe and Doe), and (3) Commitment to Community Essay, which required Poe to write a reflection essay related to his conduct. Poe was informed of the outcome by correspondence from SAA dated June 7, 2019. According to the outcome letter, the No Contact Directive would remain in place until lifted in writing. Further, the letter stated, "Should you need to contact [Doe] you must do so through this office." A true and correct copy of the outcome letter to Poe is attached as Exhibit 7.

13.

In June 2019, SAA received the complaint of Elisabeth Andries after Title IX found the student identified as John Roe in the Complaint responsible for a violation of PM-73. When SAA received the file, it included notes from a meeting between Kimberly ██████ and Ms. Andries, notes from Tracy Blanchard, and notes from Jeffrey Scott, the Title IX investigator. A true and correct copy of the Maxient file is attached as Exhibit 8. SAA reviewed the file as well as additional information provided by Ms. Andries and Roe and third parties. Based on the information gathered and after considering mitigating and aggravating factors and the SAA Outcomes Guide, SAA imposed the following sanctions on Roe: (1) Anger Management and/or Healthy Relationships training, (2) Deferred Suspension, (3) a No Contact Directive (between Roe and Ms. Andries), and (4) Commitment to Community Course completion. Ms. Andries

# EXHIBIT D

was informed of the outcome by correspondence from SAA dated September 5, 2019. According to the outcome letter, the No Contact Directive would remain in place until lifted in writing. Further, the letter stated, "Should you need to contact Elisabeth Andries you must do so through this office." A true and correct copy of the outcome letter addressed to Ms. Andries is attached as Exhibit 9.

14.

On September 25, 2019, a University Hearing Panel ("UHP") reviewed Roe's outcome and changed Roe's discipline to a one-year suspension.

15.

In January 2020, Corrin Hovis submitted a complaint against the student identified as John Loe in the Complaint and Loe was found responsible for 10.2—Sexual Misconduct and Violating a Rule of the University. Based on the information gathered and after considering mitigating and aggravating factors and the SAA Outcomes Guide, SAA imposed the following sanctions on Loe: (1) Suspension and (2) a No Contact Directive (between Loe and Ms. Hovis). The suspension was for the period from May 10, 2020 to May 31, 2021. Loe was informed of the outcome by correspondence from SAA dated May 1, 2020. According to the outcome letter, the No Contact Directive would remain in place until lifted in writing. The outcome letter explained that the No Contact Order precluded "sending via email, campus or regular mail anything to one another" and "contacting or communicating with one another, including through a third party, social media, or in any way at any time." Further, the letter stated, "Should you need to contact Corrin Hovis you must do so through this office." A true and correct copy of the outcome letter addressed to Loe is attached as Exhibit 10, and a true and correct copy of the outcome letter address to Ms. Hovis is attached as Exhibit 11.

-6-

# EXHIBIT D

16.

On May 8, 2020, Ms. Hovis sent me a message she received from an anonymous Instagram account, ███████████████████ I asked Ms. Hovis if she knew the identity of the person and encouraged her to block the sender. Ms. Hovis indicated she did not know the identity of the sender, but she would block the person. I informed Ms. Hovis that I would look further into this situation. I contacted Miriam Segar, Sr. Associate Athletics Director/SWA to determine if LSU Athletics knew the owner of the account. I also contacted LSUPD to determine if there was a way for LSUPD to determine the account ownership. LSUPD responded that a criminal investigation would be required in order to determine the account owner, and that at this point, the messages did not show criminal conduct. True and correct copies of my communications with Ms. Hovis, Ms. Segar, and LSUPD are attached as Exhibits 12 and 13.

17.

On May 11, 2020, Ms. Hovis forwarded me a second message from a different Instagram account. A true and correct copy of my communication with Ms. Hovis is attached as Exhibit 14. On May 15, 2020, Mr. Scott e-mailed Loe to remind him that the No Contact Order prohibited him from communicating with Ms. Hovis via e-mail or social media. A true and correct copy of Mr. Scott's e-mail to Loe is attached as Exhibit 15. Loe denied any knowledge of the communications. A true and correct copy of Loe's response is attached as Exhibit 16.

*[Signature on following page]*

# EXHIBIT D

Pursuant to 28 U.S.C. §1746, I certify under penalty of perjury that I have read the foregoing declaration consisting of seventeen (17) numbered paragraphs and that it is true and correct to the best of my knowledge, information, and belief.

Executed on this 30th day of June, 2023.

_____
Jonathan Sanders

# EXHIBIT D

**EXHIBIT 1**



## Louisiana State University System
*3810 West Lakeshore Drive*
*Baton Rouge, Louisiana 70808*

*Office of the President*

225 / 578-2111
225 / 578-5524 fax

**Permanent Memorandum No. 73 (PM-73)**

**Effective June 18, 2014**

**F. King Alexander, President**

*F. King Alexander*

## TITLE IX AND SEXUAL MISCONDUCT POLICY

### TITLE IX AND SEXUAL MISCONDUCT

In accordance with Title IX and other applicable law, Louisiana State University ("LSU") is committed to providing a learning, working, and living environment that promotes integrity, civility, and mutual respect in an environment free of discrimination on the basis of sex and sexual misconduct which includes sex discrimination, sexual harassment, dating violence, domestic violence, sexual assault, stalking and retaliation. LSU prohibits sex discrimination and sexual misconduct. This policy applies to all persons without regard to sexual orientation, gender identity and/or gender expression.

Sex discrimination and sexual misconduct violate an individual's fundamental rights and personal dignity. LSU considers sex discrimination and sexual misconduct in all of its forms to be serious offenses. This policy has been developed to reaffirm these principles and to provide recourse for individuals whose rights have been violated. This policy establishes a mechanism for determining when rights have been violated in employment, student life, campus support services, LSU programs and/or an academic environment.

### Nondiscrimination Notice

LSU does not discriminate on the basis of race, creed, color, marital status, sexual orientation, gender identity, gender expression, religion, sex, national origin, age, mental or physical disability, or veteran's status in its programs and activities and provides equal access to its

*Louisiana State University & Agricultural and Mechanical College*
*LSU at Alexandria • LSU at Eunice • University of New Orleans • LSU in Shreveport • Hebert Law Center • LSU Agricultural Center*
*Pennington Biomedical Research Center • LSU Health Sciences Center - New Orleans • LSU Health Sciences Center - Shreveport • LSU Health Care Services Division*

# EXHIBIT D

programs and activities. Inquiries regarding the non-discrimination policy should be directed to the individual or individuals designated in each campus' applicable policy.

## I. JURISDICTION

**A.** This policy shall apply to conduct that occurs on an LSU campus, at LSU sponsored activities, and/or when the Student or Employee is representing LSU. LSU shall have discretion to extend jurisdiction over conduct that occurs off campus when the conduct adversely and significantly affects the learning environment or LSU community and would be a violation of this policy and/or any applicable campus policy or code of conduct, if the conduct had occurred on campus. In determining whether or not to extend jurisdiction, LSU may consider, among other factors, its ability to gather information and effect a resolution. LSU may extend jurisdiction (over off-campus conduct) if the alleged conduct by the student or employee:

1.    Involved violence or produced a reasonable fear of physical harm; and/or
2.    Involved any other members of the LSU community or any academic work, records, documents, or property of LSU.

**B.** Each Student shall be responsible for his/her conduct from the time of acceptance for admission through the actual awarding of a degree.

**C.** Employees are responsible for their conduct during work hours, on campus, at LSU-sponsored activities, and/or when the employee is representing LSU, or when their conduct would adversely affect LSU's image, regardless of whether such conduct occurs on-campus or off-campus.

**D.** This policy also applies to any person who is both a student and an employee at LSU, arising out of, or in connection with, conduct in either or both of those capacities. Any violation of this policy may subject such person to disciplinary action, as applicable, in either or both of those capacities.

## II. DEFINITIONS

"**Advisor of Choice**" A Student or Employee has the right to have one Advisor of his/her choice present during any meeting conducted under this policy. The Advisor may not have personal involvement regarding any facts or circumstances of the alleged misconduct. The Advisor's only function shall be to assist and/or consult with the Student or Employee. The Advisor may not act as a spokesperson. The Advisor may be an attorney but participation shall be limited, as stated above.

2

# EXHIBIT D

Case 3:21-cv-00242-WBV-SDJ   Document 474-7   10/13/23   Page 11 of 50
**EXHIBIT 1**
Case 3:21-cv-00242-WBV-SDJ   Document 375-7 *SEALED* 07/10/23   Page 11 of 50

"**Consent**" means the affirmative and voluntary agreement to engage in a specific sexual activity during a sexual encounter. Consent cannot be given by any individual who is mentally or physically incapacitated, either through the effect of drugs or alcohol or for any other reason; or under duress, threat, coercion, or force; or inferred under circumstances in which consent is not clear, including but not limited to the absence of "no" or "stop", or the existence of prior or current relationship or sexual activity.

"**Dating Violence**" includes violence committed by a person who is or has been in a relationship of a romantic or intimate nature with the victim: (1) The existence of such a relationship shall be determined based on the report and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. (2) For the purpose of this definition dating violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse. Dating violence does not include acts covered under the definition of domestic violence. (3) For the purposes of complying with Title 34 CFR 668.41, of the federal register and pertaining to the annual security report under the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (**Clery Act**), any incident meeting this definition is considered a crime for the purposes of Clery Act reporting.

"**Domestic Violence**" includes (1) A felony or misdemeanor crime of violence committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner, by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred, or by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred. (2) For the purposes of complying with Title 34 CFR 668.41, any incident meeting this definition is considered a crime for the purposes of Clery Act reporting.

"**Hostile Environment**" includes conduct of a sexual nature that is sufficiently severe, persistent, or pervasive to limit a student's or employee's ability to participate in or benefit from the education program or from one's employment, or to create a hostile or abusive educational or work environment.

"**Incapacitation**" includes a person's inability to provide consent due to the use of drugs or alcohol, when the person is asleep or unconscious, or because of an intellectual or other disability that prevents the student or employee from having the capacity to give consent.

"**Responding Person**" includes any student or employee against whom a complaint under this policy has been made for an alleged violation of this policy.

3

# EXHIBIT D

"**Responsible Party**" includes any employee: who has the authority to take action to redress sexual violence or who has been given the duty of reporting incidents of sexual violence or any other misconduct by students or employees to the Title IX coordinator or other appropriate school designee; or whom a student or employee could reasonably believe has this authority or duty; or any student employees.

"**Sexual assault**" is any type of sexual contact or behavior that occurs without the explicit consent of the recipient. Sexual assault includes sexual activities as forced sexual intercourse, forcible sodomy, child molestation, incest, fondling, attempted rape, and includes sexual acts against people who are unable to consent either due to age or incapacitation.

"**Sex Discrimination**" includes behaviors and actions that deny or limit a person's ability to benefit from, and/or fully participate in the educational programs, activities, and services because of a person's gender.

"**Sexual Harassment**" includes unwelcome sexual advances, intimidation, requests for sexual favors, and other verbal or physical conduct of a sexual nature when: (1) submission to such conduct is made either explicitly or implicitly a term or condition of employment, academic status, receipt of university services, participation in university activities and programs, or affects the measure of a student's academic performance; or, (2) submission to or rejection of such conduct is used as the basis for a decision affecting employment, academic status, receipt of services, participation in university activities and programs, or the measure of a student's academic performance; or, (3) such conduct has the purpose or effect of unreasonably interfering with employment, academic performance and is severe, persistent, or pervasive and/or creates an intimidating, hostile, or offensive work or educational environment.

"**Sexual Misconduct**" includes any sexual act or contact of a sexual nature that occurs, regardless of personal relationship, without the consent of the other person(s), or that occurs when the person(s) is unable to give consent or whose consent is coerced or obtained in a fraudulent manner. Sexual misconduct includes, but is not limited to, unwanted sexual contact with an object without consent and/or by force, video voyeurism, violence of a sexual nature, sexual abuse, non-consensual sexual intercourse, sexual exploitation, sexual assault, and obtaining, posting, or disclosure of intimate descriptions, photos or videos without express consent of the other person(s).

"**Stalking**" includes: (1) Engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for the person's safety or the safety of others; or suffer substantial emotional distress. (2) For the purpose of this definition course of conduct means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes,

4

**EXHIBIT D**

conducts surveillance, threatens, or communicates to or about, a person, or interferes with a person's property. Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling. Reasonable person means a reasonable person under similar circumstances and with similar identities to the victim.

## III. **TITLE IX COORDINATORS**

The President shall designate the LSU Title IX Coordinator who shall be responsible for the implementation, enforcement, and coordination of Title IX for LSU. The Chancellor of each Campus shall designate a Campus Title IX Coordinator with designated responsibilities to oversee on-campus Title IX compliance.

The President also shall designate a Deputy Title IX Coordinator for Athletics. In consultation with the Chancellors and Athletic Directors for each campus, this individual will monitor sports equity, including offerings, participation, and scholarships on all campuses for compliance with Title IX. Any investigations or complaints involving student athletes or Athletics personnel (other than those involving sports equity) shall be handled and/or investigated by the LSU Title IX Coordinator and/or the Campus Title IX Coordinators, or their designee, as appropriate under the circumstances and in accordance with this Policy.

## IV. **INITIATION OF COMPLAINTS**

A.    **Application**

This policy applies to all campuses and other administrative units. These procedures may be supplemented by more specific campus procedures that are consistent with this Policy and PM-55.

B.    **Complaints**

Any student or employee who believes that he or she has been subjected to discrimination, harassment or sexual misconduct or any other violation of this policy has a right to report the conduct to the Campus Title IX Coordinator or to any other responsible party which includes: the campus administrator with responsibility for human resource management, student conduct or the department head of the relevant academic department. Persons who may have experienced criminal sexual misconduct are strongly encouraged to report the offense to campus police or local law enforcement, as well as to the Campus Title IX Coordinator or the persons named above. To the extent possible, the complainant and those who receive the complaint should preserve evidence

5

# EXHIBIT D

and not disturb the potential crime scene.  The complainant, however, has the legal right not to provide a statement to campus police or law enforcement.

**C.   Notification of Complaints**

Any person who receives a complaint under this policy *shall* promptly notify the Campus Title IX Coordinator, who shall be responsible for notifying LSU Title IX Coordinator and any campus administrators, who may be involved in the resolution process.  Any supervisor, who witnesses or receives a report or complaint, *shall* notify the Campus Title IX Coordinator.

**D.   Interim Measures**

At any time after becoming aware of a complaint, the Title IX Coordinator may recommend that interim protections or remedies for the parties involved or witnesses be provided by appropriate LSU officials.  These protections or remedies for the parties involved or witnesses will be provided by appropriate University officials.  Remedies may include separating the parties, placing limitations on contact between the parties, interim suspension, or making alternative workplace, classroom, course scheduling, dining, or student housing arrangements.

**E.   Confidentiality**

All parties involved in a complaint, any investigation, and/or resolution, including witnesses, shall keep information concerning the complaint private and shall be notified of this obligation.   Only individuals employed as mental health counselors, victim's advocates and university chaplains can guarantee confidentiality.  LSU may be required to divulge information on a need-to-know basis in order to properly address the complaint or pursuant to subpoena, or other court or administrative order, or as may be required by applicable law.  Violations of confidentiality, if identified and confirmed, may result in disciplinary or corrective action.

**V. PROCESSING OF COMPLAINT**

**A. Initial Review**

The Campus Title IX Coordinator shall conduct or supervise the initial review of the complaint, with such assistance, as needed and/or appropriate under the circumstances, from other campus administrators with responsibilities relevant to the nature of the complaint.  A responding or complaining student or employee has the right to one advisor of choice at any stage of this process.  The initial review of the complaint shall be concluded as quickly as possible, within a

**EXHIBIT D**

reasonable amount of time required to complete the review in a manner that is adequate, reliable, and impartial.

To ensure a prompt and thorough initial review, the complainant should provide as much of the following information as possible.  A complaint may be submitted anonymously or by an individual who is not a party to the alleged violation.  This may, but is not required to be, provided in writing:

- The name, organization, department, and position of the person or persons allegedly violating this Policy;

- A description of the incident(s), including the date(s), location(s), and the presence of any witness(es);

- If the complainant is an employee, the alleged effect of the incident(s) on the complainant's position, salary, benefits, promotional opportunities, or other terms or conditions of employment;

- The name(s) of other student(s) or employee(s) who might have been subject to the same or similar conduct; and/or

- Any other information the complainant believes to be relevant to the alleged sexual misconduct, discrimination, harassment, or retaliation.

## B. Resolution Procedures

The University has both an informal and formal resolution procedure for alleged violations of this policy. Both procedures will be implemented by individuals who have received training on issues related to sex discrimination and sexual misconduct.  The complainant and the responding student or employee has the right to one advisor of choice at any stage of the Informal Resolution or Formal Resolution processes.

As set forth below, an informal resolution procedure is available under certain circumstances. After the initial review or a full investigation, if the investigator finds that reasonable cause exists to believe that this Policy has been violated, the Campus Title IX Coordinator or designee will determine whether the informal resolution procedure is appropriate.  If it is not appropriate, a full investigation is required.

If the Campus Title IX Coordinator or designee determines that informal resolution is appropriate, the complainant and responding person shall be advised of the informal resolution procedure.  If both consent in writing, the informal resolution procedure will be followed, without further investigation, unless and until informal resolution is unsuccessful.

# EXHIBIT D

A determination that there is not reasonable cause to believe that this Policy has been violated can be made only after full investigation. Such determination is subject to the approval of the Campus Title IX Coordinator or designee. In such case, the complainant, by written request, may have that determination reviewed by the LSU Title IX Coordinator, whose decision shall be final.

### 1. Informal Resolution

The use of the informal resolution procedure is optional and must be agreed upon by all parties involved. The formal procedure will be followed: if any of the persons involved in the complaint do not wish to engage in the informal procedure; if the Campus Title IX Coordinator deems the informal procedure inappropriate for the alleged offense; or, if an attempt to utilize the informal procedure has been unsuccessful. Informal procedures are not appropriate for, or applied in, cases involving violence or non-consensual sexual intercourse. Information obtained regarding the complaint will be treated as privately as possible, with only those with a need to know being informed of the complaint. Both informal and formal resolution procedures will utilize a preponderance of the evidence standard, throughout the process, with respect to determinations as to whether, or not, there has been a violation of this Policy.

An attempt to informally resolve the complaint shall be made or supervised by the Campus Title IX Coordinator and should be concluded within sixty (60) calendar days of the decision to pursue informal resolution. Such informal resolution can include meeting with each party to the complaint; review of any initial findings; recommending reassignment, separation or monitoring of the parties; a mediated or facilitated meeting with the parties (however, no complainant shall ever be required to meet with the responding person in an informal resolution); and any other actions deemed appropriate by the parties and LSU. Any further inquiry or review deemed necessary should be concluded in that same period. Once the informal resolution procedure is complete, written notification of the proposed resolution shall be given to all parties. Any party dissatisfied with the outcome of the informal resolution procedure has the right to make a written request, within fifteen (15) calendar days of written notification of the proposed resolution, to the office of the Campus Title IX Coordinator, that the formal resolution procedure, set forth below, be pursued.

### 2. Formal Resolution:
If any party is unsatisfied with the outcome of the informal resolution process or if LSU, the accused, and/or the complainant have not consented to and/or determined that informal resolution is inappropriate or insufficient, the formal procedure will be utilized.

In such cases, at the recommendation of the Campus Title IX Coordinator and after an initial review, a trained investigator will conduct a full investigation into the facts and circumstances of the complaint. The investigation may include in-person interviews with all parties involved and interviews of any direct witnesses. Both parties will be given the opportunity to identify

8

# EXHIBIT D

**EXHIBIT 1**

witnesses to be interviewed.  The investigator may also collect and review any documents or other relevant information to include but not limited to photographs, video recordings, or other social media.  All parties to the complaint will be provided written notice regarding the details of the alleged violation of this Policy prior to the initiation of the full investigation.  All parties will have an opportunity to identify pertinent evidence to be considered by the investigator.  The investigator will present a written investigative summary, based on a preponderance of the evidence standard, and will submit the summary to the Campus Title IX Coordinator and the LSU Title IX Coordinator, who will notify the appropriate Campus offices.  Any such investigation shall be conducted by the Campus Title IX Coordinator or a trained person, authorized and assigned as an investigator by the Campus Title IX Coordinator, including, but not limited to, trained employees from human resource management department or the , student services or student life department,  or other qualified University employees.

The complainant and the individual who is the subject of the complaint will be notified in writing of the results of the investigation.  Information obtained regarding the complaint will be treated as confidentially as possible (as set forth herein) with only those with a legitimate educational interest being informed of the complaint and the outcome of the investigation.

The formal procedure will consist of a formal review of all allegations presented by the complainant and the results of any investigation. Each Campus shall adopt procedures for Formal Resolution of complaints of violation of this Policy that afford both the complainant and the responding person due process.  The Campus procedures for resolution of such complaints shall be subject to review and approval by the LSU Title IX Coordinator.

## C. RESOLUTION/DISCIPLINARY ACTION

LSU will take appropriate action against any person found to be in violation of this policy.  (Note: violations of this policy may subject an individual to civil or criminal liability under the state or federal law).

When an employee is deemed to have violated this policy, the Campus Title IX Coordinator and Human Resource Management will jointly determine the appropriate disciplinary action, or recommendation for disciplinary action, up to and including dismissal, in accordance with applicable laws, rules, and/or LSU policies.

For violations involving students, except when acting in the capacity of an employee, the appropriate campus office for student services or student life will determine the appropriate action, pursuant to any applicable code of student conduct and/or policy/policies governing student conduct.

9

# EXHIBIT D

In addition, to the extent possible, LSU will interact with appropriate law enforcement or third parties to address the actions of non-students or non-employees.

Violations of this Policy may result in outcomes such as residential life contract cancellation, deferred suspension, suspension, expulsion, class only restriction and separation of employment (student).

## D. COOPERATION WITH LAW ENFORCEMENT

LSU will comply with law enforcement requests for cooperation and such cooperation may require LSU to temporarily suspend the fact-finding aspect of a Title IX investigation while the law enforcement agency is in the process of gathering evidence. LSU will promptly resume its Title IX investigation as soon as notified by law enforcement that it has completed the evidence gathering process. LSU may provide up to 10 calendar days to allow for the law enforcement agency criminal process/investigation to unfold prior to resuming the fact-finding aspect of the Title IX investigation.

The University will implement appropriate interim steps/remedies during the law enforcement agency's investigation to provide for the safety of the complainant and the campus community and the avoidance of retaliation.

## E. RETALIATION

Retaliation against a person who has been subjected to sexual discrimination or sexual misconduct, or against one, who in good faith brings a complaint of sexual discrimination or sexual misconduct or who, in good faith, participates in the investigation of a sexual discrimination or sexual misconduct complaint, is prohibited and shall be a violation of this policy and shall constitute misconduct subject to disciplinary or other action, as described above. LSU will take steps to prevent recurrence and remedy the effects of any violation of this Policy.

## F. RECORD KEEPING

Records will be kept in accordance with Louisiana law and federal law. For students, records will be kept for 7 (seven) years, except in cases of cases of suspension and expulsion, which records shall be permanent. Employment actions in violation of this policy will be filed in the employee/s' respective Employee Relations file.

# EXHIBIT D

## G. OTHER ASSISTANCE

Campuses and the communities in which they are located can provide other assistance to persons impacted by a violation of this policy.  Each campus will develop and maintain a list of departments, programs/services, or community-based agencies offering assistance to students and employees concerning issues related to this policy.

## H. PREVENTION PROGRAMS

Campuses and the communities in which they are located regularly offer educational programs and prevention programs designed to inform the campus or community on the negative impact of sexual violence.  Each campus will develop and maintain a list of educational programs, prevention programs, and other events designed to reduce the incidence of sexual violence on campus or within the community.  Each campus should identify and include a bystander intervention program and programs addressing issue related to this policy.

## I. RELATED POLICIES

To the extent other LSU or campus-based policies may conflict with this policy, the provisions of this policy shall supersede and govern.

11

# EXHIBIT D

EXHIBIT 1



# PERMANENT MEMORANDUM 73
# TITLE IX AND SEXUAL MISCONDUCT POLICY

POLICY DIGEST

Monitoring Unit:
Initially Issued: June 18, 2014
Last Revised: December 15, 2015

## I.  POLICY STATEMENT

In accordance with Title IX and other applicable law, Louisiana State University ("LSU") is committed to providing a learning, working, and living environment that promotes integrity, civility, and mutual respect in an environment free of discrimination on the basis of sex and sexual misconduct which includes sexual assault, sexual harassment, dating violence, domestic violence, stalking and retaliation.

LSU prohibits sexual misconduct and sexual discrimination and has implemented this policy and procedure to prevent acts of sexual misconduct and sexual discrimination and to take prompt and appropriate action to investigate and effectively discipline those found to have engaged in such conduct. In a manner consistent with the law and due process.

LSU shall provide support and assistance to those who complain of sexual misconduct and shall report instances of sexual misconduct in accordance with law. This policy applies to all persons without regard to sexual orientation, gender identity and/or gender expression. Sexual misconduct violates an individual's fundamental rights and personal dignity. LSU considers sexual misconduct in all of its forms to be a serious offense. This policy has been developed to reaffirm these principles and to provide recourse for individuals whose rights have been violated. This policy establishes a mechanism for determining when rights have been violated in all LSU functions, including employment, student life, campus support services, LSU programs and/or an academic environment

## II.  NONDISCRIMINATION NOTICE

LSU does not discriminate on the basis of race, creed, color, marital status, sexual orientation, gender identity, gender expression, religion, sex, national origin, age, mental or physical disability, or veteran's status in its programs and activities and provides equal access to its programs and activities. Inquiries regarding the non-discrimination policy should be directed to the individual or individuals designated in each campus' applicable policy.

## III.  FREEDOM OF SPEECH

This policy is not intended to infringe on any form of speech that is protected by the First Amendment of the United States Constitution nor to regulate protected speech.

### A.  Jurisdiction

This policy shall apply to conduct that occurs on an LSU campus, at LSU sponsored activities, and/or when the student or employee is representing LSU. LSU shall have discretion to extend jurisdiction over conduct that occurs off campus when the conduct adversely or significantly affects the learning environment or LSU community and would be a violation of this policy and/or any applicable campus policy or code of conduct, if the conduct had occurred on campus. In

1

# EXHIBIT D

determining whether or not to extend jurisdiction, LSU may consider, among other factors, its ability to gather information and affect a resolution. LSU may extend jurisdiction (over off- campus conduct) if the alleged conduct by the student or employee:

1. Involved violence or produced a reasonable fear of physical harm; and/or
2. Involved any other members of the LSU community or any academic work, records, documents, or property of LSU.

B. Each student shall be responsible for his/her conduct from the time of acceptance for admission through the actual awarding of a degree or departure from the University.

C. Employees are responsible for their conduct during work hours, on campus, at LSU-sponsored activities, and/or when the employee is representing LSU or when their conduct would adversely affect LSU's image, regardless of whether such conduct occurs on-campus or off-campus.

D. This policy also applies to any person who is both a student and an employee at LSU, arising out of, or in connection with, conduct in either or both of those capacities. Any violation of this policy may subject such person to disciplinary action, as applicable, in either or both of those capacities.

## IV. DEFINITIONS

**"Sexual Misconduct":** A sexual act or contact of a sexual nature that occurs, regardless of personal relationship, without the consent of the other person(s), or that occurs when the person(s) is unable to give consent or whose consent is coerced or obtained in a fraudulent manner. For the purpose of this Policy, sexual misconduct includes, but is not limited to, sexual assault, sexual abuse, violence of a sexual nature, sexual harassment, non-consensual sexual intercourse, sexual exploitation, video voyeurism, contact of a sexual nature with an object, or the obtaining, posting or disclosure of intimate descriptions, photos, or videos without the express consent or the persons depicted therein, as well as dating violence, domestic violence and stalking, as well as crimes of a sexual nature as defined in Title 14 or the Louisiana Revised Statutes or at La. R.S. 44:51.

**"Advisor of Choice" or "Confidential Advisor":** A student or employee has the right to have an "Advisor of Choice" or a "Confidential Advisor" present during any meeting conducted under this policy.

**"Advisor of Choice":** This Advisor can be any person who the student or employee chooses but may not have personal involvement regarding any facts or circumstances of the alleged misconduct. This Advisor's only function shall be to assist and/or consult with the student or employee. This Advisor may not act as a spokesperson. This Advisor may be an attorney but participation shall be limited as stated above.

**"Confidential Advisor":** A person trained in accordance with law and designated by the campus who the student or employee can choose to have support and advise them in accordance with law during the complaint process. This Confidential Advisor may be present during any meeting conducted under this policy to assist and/or consult with the student or employee. This Confidential Advisor may not act as a spokesperson.

**"Coercion":** The use of express or implied threats, intimidation, or physical force which places an individual in fear of immediate harm or physical injury or causes a person to engage in unwelcome sexual activity. Coercion also includes administering a drug, intoxicant, or similar substance with the intent to impair that person's ability to consent prior to engaging in sexual activity.
"Complainant": Any student or employee who alleges a violation under this policy.

2

# EXHIBIT D

**"Consent":** Consent to engage in sexual activity must exist from the beginning to the end of each instance of sexual activity. Consent is demonstrated through mutually understandable words or actions that clearly indicate a willingness to engage in a specific sexual activity. Silence alone, without actions evidencing permission, does not demonstrate consent. Consent must be knowing and voluntary. To give consent, a person must be of legal age. Assent does not constitute consent if obtained through coercion or from a person who the alleged offender knows or should reasonably know is incapacitated. The responsibility of obtaining consent, through mutually understandable words or actions, rests with the person initiating sexual activity. Use of alcohol or drugs does not diminish the responsibility to obtain consent. Consent to engage in sexual activity may be withdrawn by any person at any time. Once withdrawal of consent has been expressed, the sexual activity must cease. Consent is automatically withdrawn by a person who is no longer capable of giving consent. A current or previous consensual dating or sexual relationship between the Parties does not itself imply consent or preclude a finding of responsibility.

**"Dating Violence" includes but is not limited to:**

**"Dating Violence"** as defined by the Clery Act: Violence, including but not limited to sexual or physical abuse or the threat of such abuse, committed by a person who is or has been in a social relationship of a romantic or intimate nature with the alleged victim. The existence of such a relationship will be determined based on a consideration of the length and type of relationship and the frequency of interaction.

**"Dating Violence"** as defined by Louisiana Law: Includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one dating partner against the other (La. RS§ 46.2151(C)) For purposes of this Section, "dating partner" means any person who is or has been in a social relationship of a romantic or intimate nature with the victim and where the existence of such a relationship shall be determined based on a consideration of the following factors:

A. The length of the relationship,
B. The type of relationship, and
C. The frequency of interaction between the persons involved in the relationship.

**"Domestic Violence"** includes but is not limited to:

**"Domestic Violence" as defined by the Clery Act:** Violence, including but not limited to sexual or physical abuse or the threat of such abuse, committed by a current or former spouse or intimate partner or any other person from whom the alleged victim is protected under federal or Louisiana law. Felony or misdemeanor crime of violence committed:

A. By a current or former spouse or intimate partner of the victim;
B. By a person with whom the victim shares a child in common;
C. By a person who is cohabitating with, or has cohabitated with, the victim as a spouse or intimate partner;
D. By a person similarly situated to a spouse of the victim under the domestic or family
E. violence laws of the jurisdiction in which the crime of violence occurred; or
F. By any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.

**"Domestic Abuse"** as defined by Louisiana Law: Abuse and violence including but not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family or household member

3

**EXHIBIT D**

Case 3:21-cv-00242-WBV-SDJ    Document 474-7    10/13/23    Page 23 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 375-7 *SEALED* 07/10/23    Page 23 of 50
**EXHIBIT 1**

against another. La. RS 46:2132(3).

**"Family violence"** as defined by in Louisiana Law: Any assault, battery, or other physical abuse which occurs between family or household members, who reside together or who formerly resided together. La. RS § 46.2121.1(2)

**"Hostile Environment":** Includes conduct of a sexual nature that is sufficiently severe, persistent, or pervasive to limit a student's or employee's ability to participate in or benefit from the education program or from one's employment, or to create a hostile or abusive educational or work environment.

**"Incapacitation":** An individual is considered to be incapacitated if, by reason of mental or physical condition, the individual is manifestly unable to make a knowing and deliberate choice to engage in sexual activity. Being drunk or intoxicated can lead to incapacitation; however, someone who is drunk or intoxicated is not necessarily incapacitated, as incapacitation is a state beyond drunkenness or intoxication. Individuals who are asleep, unresponsive or unconscious are incapacitated. Other indicators that an individual may be incapacitated include, but are not limited to, inability to communicate coherently, inability to dress/undress without assistance, inability to walk without assistance, slurred speech, loss of coordination, vomiting, or inability to perform other physical or cognitive tasks without assistance.

**"Respondent":** Any student or employee against whom a complaint under this policy has been made.

**"Responsible Person":** Any employee who  has the  authority to take  action  to redress sexual violence or who has been given the duty of reporting incidents of sexual violence or any other misconduct prohibited by this policy by students or employees to the Title IX coordinator or other appropriate school designee. Responsible Persons do not include victims' advocates, mental health counselors, or clergy.

**"Retaliation":** Title IX prohibits retaliation. Any acts or attempted acts for the purpose of interfering with any report, investigation, or proceeding under this Policy, or as retribution or revenge against anyone who has reported Sexual Misconduct or who has participated (or is expected to participate) in any manner in an investigation, or proceeding under this Policy. Prohibited retaliatory acts include, but are not limited to, intimidation, threats, coercion, or discrimination.

**"Sexual assault":** Any type of sexual contact or behavior that occurs, or is attempted, without the explicit consent of the recipient. Sexual assault includes, but is not limited to, sexual acts, or attempted sexual acts, such as rape, fondling, incest or statutory rape, forced sexual intercourse, sodomy, child molestation, any sexual touching, and includes sexual acts against people who are unable to consent either due to age or incapacitation.

**"Sexual Assault"** also includes but is not limited to:

**"Sexual Assault"** as defined by the Clery Act: Any offense that meets the definition of rape, fondling, incest, or statutory rape as used in the FBI's UCR program.

**"Non-Consensual Sexual Intercourse":** Having or attempting to have sexual intercourse, cunnilingus, or fellatio without consent. Sexual intercourse is defined as anal or vaginal penetration by a penis, tongue, finger, or inanimate object.

**"Non-Consensual Sexual Contact":** Any intentional sexual touching, or attempted sexual touching, without consent.

**"Sexual Assault"** also includes sexual battery as defined in La. R.S. 14:43.1.

4

# EXHIBIT D

Case 3:21-cv-00242-WBV-SDJ    Document 474-7    10/13/23    Page 24 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 375-7 *SEALED* 07/10/23    Page 24 of 50
**EXHIBIT 1**

**"Sexual Discrimination":** Behaviors and actions that deny or limit a person's ability to benefit from, and/or fully participate in the educational programs, activities, and services because of a person's gender.

**"Sexual Exploitation":** Any act attempted or committed by a person for sexual gratification, financial gain, or other advancement through the abuse or exploitation of another person's sexuality. Examples of sexual exploitation include, but are not limited to, non-consensual observation of individuals who are undressed or engaging in sexual acts, non-consensual audio- or videotaping of sexual activity, prostituting another person, allowing others to observe a personal consensual sexual act without the knowledge or consent of all involved parties, and knowingly exposing an individual to a sexually transmitted infection without that individual's knowledge.

**"Sexual Harassment":** The unwelcome conduct of a sexual nature when i) submission to such conduct is made either explicitly or implicitly a term or condition of a person's employment or education; ii) submission to or rejection of such conduct by a person is used as the basis for a decision affecting that person's employment or education; or iii) such conduct has the purpose or effect of unreasonably interfering with a person's employment or education, or creating an intimidating, hostile, or offensive employment or educational environment, and has no legitimate relationship to the subject matter of a course or academic research. Sexual Harassment also includes non-sexual harassment or discrimination of a person because of the person's sex and/or gender, including harassment based on the person's nonconformity with gender stereotypes. For purposes of this Policy, the various forms of prohibited Sexual Harassment are referred to as "Sexual Misconduct."

**"Sexually-Oriented Criminal Offense":** any sexual assault offense as defined in La. R.S. 44:51, and any sexual abuse offense as defined in La. R. S. 14:403.

**"Stalking"** includes but is not limited to:

**"Stalking"** as defined by the Clery Act: (1) The intentional and repeated following or harassing that would cause a reasonable person to feel alarmed or that would cause a reasonable person to suffer emotional distress; or (2) the intentional and repeated uninvited presence at another person's: home, work place, school, or any other place which would cause a reasonable person to be alarmed or would cause a reasonable person to suffer emotional distress as a result of verbal or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping or any other statutory criminal act to the victim or any member of the victim's family or any person with whom the victim is acquainted. 34 CFR 668.46(a)(ii).

**"Stalking"** as defined by Louisiana Law: The intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal or behaviorally implied threats of death, bodily injury, sexual assault, kidnaping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted. La. RS § 14:40.2(A) "Harassing" means the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures. "Pattern of conduct" means a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person. Constitutionally protected activity is not included within the meaning of pattern of conduct. La. RS§ 14:40.2(C)

## V.  TITLE IX COORDINATORS

The President shall designate the LSU Title IX Coordinator who shall be responsible for the

5

**EXHIBIT D**

implementation, enforcement, and coordination of Title IX for all LSU campuses. The Chancellor of each Campus shall designate a Campus Title IX Coordinator with designated responsibilities to oversee on- campus Title IX compliance for their respective campus. A Campus may appoint a Deputy Title IX Coordinator to assist the Campus Title IX Coordinator in their duties.

The President also shall designate a Deputy Title IX Coordinator for Athletics. In consultation with the Chancellors and Athletic Directors for each campus, this individual will monitor sports equity, including offerings, participation, and scholarships on all campuses for compliance with Title IX. Any investigations or complaints involving student athletes or Athletics personnel (other than those involving sports equity) shall be handled and/or investigated by the LSU Title IX Coordinator and/or the Campus Title IX Coordinator(s), or their designee, as appropriate under the circumstances and in accordance with this Policy.

## VI. INITIATION OF COMPLAINTS

A.  Application

This policy applies to all campuses and other administrative units. These procedures may be supplemented by more specific campus procedures that are consistent with this Policy and PM-55.

Complaints of sexual discrimination which do not involve sexual misconduct or sexual assault shall be handled under any applicable campus specific policies.

Each campus shall place the protocol for filing complaints under this policy on their website.

B.  Complaints

Any student or employee who believes that he or she has been subjected to sexual misconduct or any other violation of this policy has a right to report the conduct to the Campus Title IX Coordinator or to any other responsible person, which includes but is not limited to the campus administrator with responsibility for human resource management, student conduct or the department head of the relevant academic department. When the LSU Title IX Coordinator or the Campus Title IX Coordinator becomes aware of information that indicates that a violation of this policy may have occurred, he/she or their designee shall notify the parties involved of their rights under this policy. Persons who may have experienced criminal sexual misconduct are strongly encouraged to report the offense to campus police or local law enforcement, as well as to the Campus Title IX Coordinator or the persons named above. To the extent possible, the complainant and those who receive the complaint should preserve evidence and not disturb the potential crime scene. The complainant, however, has the legal right not to provide a statement to campus police or law enforcement.

C.  Notification of Complaints

Any responsible person who receives actual notice of a complaint under this policy shall promptly notify the Campus Title IX Coordinator, who shall be responsible for notifying the LSU Title IX Coordinator and any campus administrators, who may be involved in the resolution process. Notice of a complaint may or may not come from a formal complaint. Any supervisor, or other responsible party who witnesses or receives a report or complaint, shall notify the Campus Title IX Coordinator. Only individuals employed as mental health counselors, victim's advocates, University chaplains or others designated by the University as provided by law can guarantee confidentiality.

D.  Interim Measures

6

# EXHIBIT D

At any time after becoming aware of a complaint, the Campus Title IX Coordinator, a Deputy Title IX Coordinator(s), or other responsible party, may recommend that interim protections or remedies impacted parties involved be provided by appropriate LSU officials.  These protections or remedies for the parties involved or witnesses will be provided by appropriate University officials. Remedies may include issuing a timely warning to the campus community, separating the parties, placing limitations on contact between the parties, interim suspension from campus, or making alternative workplace, classroom, course scheduling, dining, or student housing arrangements. Interim measures may vary depending on the nature of the complaint, status of respondent or other criteria. All parties shall be notified of the availability of these measures as well as the fact that such measures are put into effect.

E.  Confidentiality

All parties involved in a complaint, any investigation, and/or resolution, including witnesses, are encouraged to keep information concerning the complaint private until a final decision is rendered in order to protect both the complainant and the respondent.

LSU may be required to divulge information on a need-to-know basis in order to properly address the complaint, when there is a threat to others, pursuant to subpoena, or other court or administrative order, or as maybe required by applicable law. Violations of confidentiality by any other persons involved in the resolution, investigation or administration of the complaint, including any employee, faculty, staff, or student if identified and confirmed, may result in disciplinary or corrective action.

Only individuals employed as mental health counselors, victims' advocates, university chaplains or others designated by the University as provided by law can guarantee confidentiality.

## VII. PROCESSING OF COMPLAINTS

A.  Preliminary Inquiry

The Campus Title IX Coordinator or designee shall conduct or supervise the initial review of the complaint, with such assistance, as needed and/or appropriate under the circumstances, from other campus administrators with responsibilities relevant to the nature of the complaint.  A complainant or respondent has the right to a confidential advisor or an advisor of choice at any stage of this process. The initial review of the complaint shall be concluded as quickly as possible, within a reasonable amount of time required to complete the review in a manner that is adequate, reliable and impartial and based on the nature and complexity of the complaint. Generally, the initial review should be ordinarily be completed within 15 business days of receipt of the complaint. The purpose of the initial inquiry is to determine whether there is reasonable cause to believe a specific policy/policies may have been violated. After completion of the preliminary inquiry, any initial determination that a policy has not been violated shall be made by the Campus Title IX Coordinator. A respondent or complainant can request a review of the initial determination to the LSU Title IX Coordinator, whose decision shall be final.

To ensure a prompt and thorough initial inquiry, the complainant should provide as much information as possible. A complaint may be submitted anonymously or by an individual who is not a party to the alleged violation. The following may, but is not required to be, provided in writing:

1.  The name of student(s) or employee(s) to include student organization, academic department, and position of the person(s) allegedly violating this Policy;

2.  A description of the incident(s), including the date(s), location(s), and the presence of any

7

# EXHIBIT D

Case 3:21-cv-00242-WBV-SDJ    Document 474-7    10/13/23    Page 27 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 375-7 *SEALED* 07/10/23    Page 12 of 133

**EXHIBIT 1**

witness(es);

3. If the complainant is an employee, the alleged effect of the incident(s) on the complainant's position, salary, benefits, promotional opportunities, work environment, or other terms or conditions of employment;

4. The name(s) of other student(s) or employee(s) who might have been subject to the same or similar conduct; and/or

5. Any other information the complainant believes to be relevant to the alleged sexual misconduct, discrimination, harassment, or retaliation.

B.  Notice of Investigation

If, after the initial inquiry, the Campus Title IX Coordinator finds reasonable cause to believe a policy or policies may have been violated, an investigation shall be conducted. At any time during the investigation the matter may be referred, if appropriate under this policy, to the informal resolution process. If an investigation is warranted, then at the recommendation of the Campus Title IX Coordinator, a trained investigator(s) will conduct a full investigation into the facts and circumstances of the complaint. The investigation may include in-person interviews with all parties involved, including witnesses and parties that the investigator(s) may deem appropriate. Both the respondent and complainant will be given the opportunity to identify witnesses to be interviewed. The investigator may also collect and review any documents or other relevant information to include but not limited to photographs, video recordings, and/or information from social media. Any such investigation shall be conducted by a trained person, authorized and assigned as an investigator by the Campus Title IX Coordinator, including, but not limited to, trained employees from human resource management department or the student services or student life department, or other qualified University employees. The Campus Title IX Coordinator will notify the appropriate Campus offices as necessary.

Both the respondent and complainant will be provided written notice that an investigation will be undertaken as well as the nature of the complaint. The notice should include the specific section(s) of policy that may have been violated. All parties will have an opportunity to identify pertinent evidence to be considered by the investigator(s). The investigator(s) will author a written investigative summary to include a timeline of events, facts, and circumstances surrounding the complaint. Upon completion of the investigative summary, the Campus Title IX Coordinator or designee, in consultation with the appropriate student services, student life department, or human resource management, will reach a finding based on a preponderance of the evidence or more likely than not that a policy was or was not violated. Prior to issuing a finding, the Campus Title IX Coordinator may request additional investigation, should he/she deem this to be appropriate.

Upon issuance of a notice of investigation, any and all effort should be made to conduct a thorough and prompt investigation based on the facts and circumstances of each complaint ordinarily within thirty (30) business days of the notice. Complicated or extensive investigations may take longer.

After a full investigation, a determination that a policy has or has not been violated, from a more likely than not or preponderance of the evidence standard, shall be made by the Campus Title IX Coordinator or his designee, by admission of responsibility by the respondent or by the complainant's admission of making false charges against the respondent. Both the complainant and the respondent will be given written notice of the results of the investigation

## VIII.   RESOLUTION PROCEDURES

8

# EXHIBIT D

Case 3:21-cv-00242-WBV-SDJ    Document 474-7    10/13/23    Page 28 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 375-7 *SEALED* 07/10/23    Page 28 of 50
**EXHIBIT 1**

In the event that a determination has been made that from a more likely than not or preponderance of the evidence standard that a policy has been violated, the University has both informal and formal resolution procedures to address alleged violations of this policy. Both procedures will be implemented by individuals who have received training on issues related to sexual misconduct. The complainant and respondent have the right to an advisor of choice or a confidential advisor at any stage of the Informal Resolution or Formal Resolution processes.

Both informal and formal resolution procedures will utilize a preponderance of the evidence standard throughout the process, with respect to determinations as to whether, or not, there has been a violation of this Policy.

As set forth below, an informal resolution procedure is available under certain circumstances. After a full investigation, or at the request of the parties as provided in Section V. B, or if the respondent accepts responsibility for violation(s) of policy and if the investigator finds that reasonable cause exists to believe that University policy has been violated, the Campus Title IX Coordinator or designee will determine whether the informal resolution procedure is appropriate.  If an informal resolution is not appropriate, a formal hearing by a panel of trained hearing officers will be scheduled, for situations involving student matters only. In situations involving an employee as a respondent, the Campus Title IX Coordinator or designee will determine the appropriate procedure to follow in consultation with Human Resources Department and/or applicable campus administrator(s).

If the Campus Title IX Coordinator or designee determines that informal resolution is appropriate, the complainant and respondent shall be advised of the option to pursue an informal resolution procedure. If both complainant and respondent agree in writing, the informal resolution procedure will be followed, without further investigation, unless and until informal resolution is unsuccessful.

A.  Informal Resolution:

The use of the informal resolution procedure is optional and must be agreed upon by all parties involved. The informal resolution procedure will not be followed: if any of the persons involved in the complaint do not wish to engage in the informal procedure; if the Campus Title IX Coordinator deems the informal resolution procedure inappropriate for the alleged offense; if the respondent does not accept responsibility for the alleged policy violation(s); or, if an attempt to utilize the informal procedure has been unsuccessful. Informal procedures are not appropriate for, or applied in, cases involving violence resulting in significant harm to others. Additionally the parties may discontinue participation in the informal process at any time. Information obtained regarding the complaint and the investigative summary will be treated as private, with only those with a need to know being informed of the complaint.

An attempt to informally resolve the complaint shall be made by the Campus Title IX Coordinator or designee and should be ordinarily concluded within fifteen (15) calendar days of the decision to pursue informal resolution. Such informal resolution includes meeting with each party to the complaint; review of any initial findings; review or continuance of interim remedies; and any other actions deemed appropriate by the parties and LSU. Any further inquiry or review deemed necessary should be concluded in that same period. Once the informal resolution procedure is complete, written notification of the determination of whether or not this policy(s) was violated will be provided to the complainant and respondent. If a determination has been made that a policy was violated, any changes in status, restrictions, limitations, or other recommended outcomes shall be given to all parties. Any party not willing to accept the proposed informal resolution has the right to make  a written  request, within five (5) calendar  days upon  receipt of written notification of the proposed resolution, to the office of the Campus Title IX Coordinator, thereby requesting the opportunity to pursue the formal resolution procedure set forth below.

B.  Formal Resolution:

9

# EXHIBIT D

If either the respondent or complainant is not in agreement with the outcome of the informal resolution process or if the University, the respondent, and/or the complainant have not consented to and/or determined that informal resolution is inappropriate or insufficient, the formal procedure will be utilized.

Upon submission of written notification by either the respondent or complainant to the Campus Title IX Coordinator communicating an intent not to accept the proposed informal resolution outcome, formal consideration will be given for a formal resolution process. The complainant and the respondent will be notified in writing the specific section(s) of policy alleged to have been violated, and the date, time, and location of the formal resolution process. Information obtained regarding the complaint will be treated as privately as possible (as set forth herein) with only those with a legitimate educational interest being informed of the complaint and the outcome of the investigation.

The formal procedure will consist of a formal review of all allegations, the initial complaint, supporting documents, investigative summary and corresponding documentation. For complaints involving students as respondents, the formal procedure will consist of a panel of trained hearing officers as outlined in the code of student conduct and/or policy/policies governing student conduct. For complaints involving employees as respondents, the Title IX coordinator or designee and the Office of Human Resource Management and/or applicable campus administrator will direct the formal process of the investigation. Each Campus shall adopt or utilize existing procedures to address alleged violation(s) of this Policy that afford both the complainant and the respondent due process as well as appeal options and other procedural rights as outlined in University policy. The Campus procedures for resolution of such complaints may be subject to review by the LSU Title IX Coordinator.

## IX. RESOLUTION/DISCIPLINARY ACTION

LSU will take appropriate action against any person found to be in violation of this policy. (Note: violations of this policy may also be subject to individual civil or criminal liability under the state or federal law).

When an employee is deemed to have violated this policy, the Campus Title IX Coordinator and Human Resource Management and/or applicable campus administrator will jointly determine the appropriate disciplinary action, or recommendation for disciplinary action, up to and including dismissal, in accordance with applicable laws, rules, and/or LSU policies.

For violations involving students, except when acting in the capacity of an employee, the appropriate campus office or administrator responsible for student conduct, student services or student life will determine the appropriate action, pursuant to any applicable code of student conduct and/or policy/policies governing student conduct. In addition, to the extent possible, LSU will interact with appropriate law enforcement or third parties to address the actions of non-students or non-employees.

Violations of this Policy may result in outcomes such as residential life contract cancellation, deferred suspension, suspension, expulsion, class only restriction (student) and/or disciplinary action or separation of employment.

## X.  APPEAL

Either party may appeal the findings of the formal resolution process in accordance with existing University policies detailing appeal procedures for students or for employees. Appeals must be submitted in writing to the Campus Title IX Coordinator or designee within ten (10) business days

10

# EXHIBIT D

**EXHIBIT 1**

upon receipt, by the appealing complainant or the appealing respondent, of notification of the outcome of the formal resolution process.

## XI. COOPERATION WITH LAW ENFORCEMENT

LSU will comply with law enforcement requests for cooperation and such cooperation may require LSU to temporarily suspend the fact-finding aspect of a Title IX investigation while the law enforcement agency is in the process of gathering evidence. LSU will promptly resume its Title IX investigation as soon as notified by law enforcement that it has completed the evidence gathering process. LSU may provide up to 10 calendar days to allow for the law enforcement agency criminal process/investigation to unfold prior to resuming the fact-finding aspect of the Title IX investigation.

The University will implement appropriate interim steps/remedies during the law enforcement agency's investigation to provide for the safety of the complainant, the respondent, the campus community, and to avoid any instance of retaliation.

Each campus will develop protocols to coordinate efforts with local law enforcement agencies and other organizations such as crisis centers. A Memorandum of Understanding (MOU) may be utilized to establish those protocols.

## XII.  RETALIATION

Retaliation against a person who has been subjected to sexual misconduct, or against one, who in good faith brings a complaint of or sexual misconduct or who, in good faith, participates in the investigation of a sexual misconduct complaint, is prohibited; and shall be a violation of this policy and shall constitute misconduct subject to disciplinary or other action, as described above. LSU will take steps to prevent recurrence and remedy the effects of any violation of this Policy.

## XIII.  RECORD KEEPING

Records will be kept in accordance with Louisiana law and federal law. For students, records will be maintained for seven (7) years by the Dean of Students or other office tasked with the maintenance of student records, except in cases of cases of suspension and expulsion, which records shall be permanent. Employment actions in violation of this policy will be maintained in the employees' respective Employee Relations file.

## XIV. OTHER ASSISTANCE

Campuses and the communities in which they are located can provide other assistance to persons impacted by a violation of this policy. Each campus will develop and maintain a list of departments, programs/services, or community-based agencies offering assistance to students and employees concerning issues related to this policy.

## XV.  CAMPUS CLIMATE SURVEY

Each campus shall administer a Campus Climate Survey to assess the knowledge, perceptions and behaviors of its students, faculty and staff regarding sexual misconduct. The survey shall be developed by the four management boards of public higher education in the state of Louisiana, in coordination with the Board of Regents. Each campus is encouraged to supplement the statewide survey with any additional information specific to its unique characteristics and that may assist in preventing sexual misconduct and administering strategies dealing with sexual misconduct. The annual Campus Climate Survey shall be submitted to the LSU Title IX Coordinator by June 1 of each year.

# EXHIBIT D

Case 3:21-cv-00242-WBV-SDJ    Document 474-7    10/13/23    Page 31 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 375-7 *SEALED* 07/10/23    Page 31 of 50
**EXHIBIT 1**

## XVI. TRAINING, EDUCATIONAL, AND PREVENTION PROGRAMS

Each campus shall regularly offer training, educational and prevention programs designed to inform the campus or community about the law of title IX and LSU's Title IX Policy. Each campus will develop and maintain a list of educational programs, prevention programs, and other events designed to reduce the incidence of sexual violence on campus or within the community. Each campus should identify and include a bystander intervention program and programs addressing issue related to this policy.

## XVII. RELATED POLICIES

To the extent other LSU or campus-based policies may conflict with this policy, the provisions of this policy shall supersede and govern.

## XVIII. TASK FORCE

Each campus shall establish a task force to address sexual misconduct. Each task force shall invite student members to be represented through their respective student government body or other student organizations.

## XIX. AMNESTY POLICY

LSU encourages reporting of sexual misconduct and seeks to remove barriers to an individual or group reporting such conduct. An individual or group who, in good faith, reports sexual misconduct, either as a complainant or a third party witness, shall not be sanctioned for a nonviolent student conduct violation, such as underage drinking, at or near the time of the complained incident, provided that any such violation did not and does not place the health and safety of any other person at risk. Each campus policy shall include amnesty policies in accordance with ACT 172 and other applicable state laws.

## XX. MEMORANDUM OF UNDERSTANDING

Each campus shall make diligent efforts to enter into Memorandum of Understanding (MOU) with law enforcement and criminal justice agencies in the parish in accordance with ACT 172 or any other applicable state laws. Such MOUs should clearly delineate the responsibilities, protocols for investigation, as well as commitments to share information, in accordance with Act 172 and state and federal confidentiality laws. The MOUs should be updated every two years. The MOU should provide for joint or shared trauma-informed training specific to assisting sexual assault victims.

## XXI. TRANSFER

In accordance with state and federal law, if a student accused of a sexually-oriented criminal offense as defined in La. R.S. 44:51 or any sexual abuse offense as defined in La. R.S. 14:403 seeks to transfer to another institution during an investigation, resolution procedure, and/or adjudication procedure, the institution shall withhold the student's transcript until such investigation or adjudication is complete and a final decision has been made. Each institution shall inform the respondent of the institution's obligation to withhold the transcript during the investigation.

If, upon the completion of an investigation, resolution procedure, and/or adjudication under this policy, the student is found responsible for sexually-oriented criminal offenses as defined in La. R.S. 44:51 or any sexual abuse offense as defined in La. R.S. 14:403,and seeks to transfer to another institution, institutions are required to communicate such a violation, when the institution becomes aware of the student's attempt to transfer, with the institution(s) to which the student seeks to transfer or has transferred.

12

# EXHIBIT D

EXHIBIT 1



## PERMANENT MEMORANDUM 73

## Title IX Policy Prohibiting Sexual Misconduct

POLICY DIGEST
Monitoring Unit: Office of General Counsel & Legal Affairs
Initially Issued: December 15, 2015
Last Revised: August 14, 2020

## I. INTRODUCTION

This Permanent Memorandum outlines the procedures for addressing and resolving allegations of Sexual Misconduct (e.g. sexual assault, stalking, dating violence, domestic violence, sexual exploitation, sexual harassment, retaliation, etc.).  LSU's Title IX Coordinator is responsible for administering this policy at all University locations.

## II. NONDISCRIMINATION NOTICE

LSU is committed to creating an environment of inclusion and respect among students, faculty, staff and the community at large.  LSU does not discriminate on the basis of race, creed, color, marital status, sexual orientation, gender identity, gender expression, religion, sex, national or ethnic origin, age, disability, genetic information,  veteran's status or any other status or organization protected by state or federal law, in its programs and activities. This includes all aspects of LSU's education programs and activities, including admission and employment.

Inquiries regarding the non-discrimination policy should be directed to the individual or individuals designated in each campus' applicable policy. Inquiries about the application of Title IX and this policy may be directed to the LSU Title IX Coordinator, the respective Title IX Campus Coordinator, or to the U.S. Department of Education Office for Civil Rights Assistant Secretary.  https://www2.ed.gov/about/offices/list/ocr/contactus2.html

## III. POLICY STATEMENT/PURPOSE

Sexual Misconduct violates an individual's fundamental rights and personal dignity and will not be tolerated.  LSU prohibits and is committed to an environment free of discrimination on the basis of sex and Sexual Misconduct. This policy affirms these principles and provides recourse for individuals whose rights have been violated.

LSU will take prompt action to prevent prohibited conduct, discipline those who violate this

1

EXHIBIT D

**EXHIBIT 1**

policy, prevent recurrence of prohibited behavior, and effect equitable remedies.

LSU will affirmatively promote prevention, awareness and training programs to encourage individuals to report concerns or complaints.  Everyone has a responsibility to prevent and report acts of prohibited conduct.  The entire LSU community is responsible for fostering a welcome environment conducive to learning.

## IV. POLICY COVERAGE/SCOPE

This policy applies to all members of the University community, including faculty, staff, students, volunteers, organizations and any other affiliate that participates in activities associated with LSU.

This policy covers conduct that occurs:
- In the course of LSU's operations;
- On campus or any other University owned, leased, controlled or operated location;
- Within the bounds of the United States;
- At any LSU sponsored event or organizational activity in the United States whether on or off campus; and/or
- Where LSU exercised substantial control over the Respondent in the context of where or how the alleged incident occurred.

Students are responsible for their conduct from notice of admission through the awarding of a degree or departure from the University.  Employees are covered by this policy when representing LSU (or deemed to be a representative of LSU) whether before, during or after work.  This policy also applies to any person who is both a student and an employee at LSU.

Anyone subjected to Sexual Misconduct is encouraged to file a complaint with the Title IX office.  Any individual who has experienced Sexual Misconduct is also urged to utilize supportive measures available through the University whether or not the person who caused the harm is a University community member.  Supportive measures are available whether or not a Formal Complaint is filed.

This policy is not intended to infringe on or restrict rights guaranteed by the United States Constitution including free speech under the First Amendment, due processes clauses of the Fifth and Fourteenth Amendments and the Fourth Amendment.

2

**EXHIBIT D**

Case 3:21-cv-00242-WBV-SDJ     Document 474-7     10/13/23   Page 34 of 50
Case 3:21-cv-00242-WBV-SDJ     Document 375-7 *SEALED* 07/10/23      Page 34 of 50

EXHIBIT 1

**Appendix 1**
**REPORTING MISCONDUCT**

**REPORTING MISCONDUCT**

1. LSU strongly urges prompt reporting of any incidence of Sexual Misconduct. Complaints may be reported to:
   - LSU Title IX Coordinator, Title IX Campus Coordinator or Deputy Coordinator
   - Office of Student Advocacy and Accountability or Dean of Students
   - Office of Human Resource Management
   - Campus police department
   - Confidential survivor support services on campus (The Lighthouse Program, Confidential Advisors, etc)
   - Or any other Responsible Employee
   - Online at respective campus TIX webpages

     *A link to each campus' Title IX page may be found on the LSU Title IX page at https://www.lsu.edu/titleix/

2. An individual may also confidentially report to survivor support services (The Lighthouse Program, Confidential Advisors), mental health counselors, the LSU Ombudsperson, staff operating in a student health center capacity, or others designated by the University with a privileged role.

3. Upon notice of a possible complaint, Title IX Campus Coordinator will provide the Complainant information on reporting options, pursuing criminal charges, health care, counseling and supportive measures available.

4. Individuals are also strongly encouraged to report the offense to campus police or local law enforcement if they believe criminal conduct occurred (i.e. sexual assault, sexual battery, stalking, etc.).

5. To the extent possible, the Complainant and those who receive the complaint should preserve evidence and not disturb a potential crime scene.  (This includes preserving all text or email communications that may be related to the incident.)

6. Responsible Employees who receive notice or witness incidents of Sexual Misconduct must promptly notify the Title IX Campus Coordinator. The following are exceptions to the Responsible Employee reporting requirement:

   - Information disclosed at public awareness events (e.g. Take Back the Night, candlelight vigils, protests, speak outs), or other public forums in which individuals may disclose incidents of prohibited conduct as part of educating others, or

3

**EXHIBIT D**

Case 3:21-cv-00242-WBV-SDJ    Document 474-7    10/13/23    Page 35 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 375-7 *SEALED* 07/10/23    Page 35 of 50
EXHIBIT 1

- Disclosures made in the course of academic work product consistent with the assignment (ex. Public speaking class, creative writing assignment, group work)

**RIGHTS OF COMPLAINANT AND RESPONDENT FOLLOWING A REPORT**

1. The Complainant shall have the discretion and right to decide whether or when to file a Formal Complaint, report to law enforcement, and determine whether to proceed with a Formal Complaint, at the individual's discretion.

2. The Respondent shall have the right to be presumed not responsible of all allegations until found responsible for the alleged conduct by a hearing panel under this policy.

3. The Complainant and Respondent have equal rights:
   - To be treated with dignity and respect by LSU officials;
   - To take advantage of supportive measures;
   - To receive timely notice of proceedings, processes and outcomes under this policy;
   - To have an Advisor present at any meeting or hearing under this policy;
   - To refuse to engage in informal resolution of a complaint;
   - To present witnesses, including fact and expert witnesses, and any relevant evidence;
   - To receive amnesty for certain student misconduct, such as drug or alcohol violations, that occurred ancillary to the complaint at hand and consistent with this policy;
   - To be free from retaliation for reporting violations of this policy or cooperating with an investigation;
   - To be informed in writing of the outcome or resolution of the complaint, any sanctions, and the rationale for the outcome, where permissible;
   - To exercise a right of appeal as afforded in this policy.

4

**EXHIBIT D**

**Appendix 2**
**COMPLAINT AND INVESTIGATION**

**INITIAL RESPONSE TO REPORTS**

Upon actual knowledge of a report of Sexual Misconduct, the Title IX Campus Coordinator will promptly contact the Complainant to discuss the following:

- The process for filing a Formal Complaint;
- The right to have an Advisor; and
- The availability of supportive measures regardless of whether a Formal Complaint is filed.

**FORMAL COMPLAINT PROCESS**

1. A Complainant may file a Formal Complaint at any time.  A Formal Complaint must include the following:

   - Facts alleging prohibited conduct under this policy:
   - A signature (electronic or handwritten) or other designation that the Complainant is the individual choosing to file a Formal Complaint;
   - Some allegation or evidence the conduct occurred at a location or event covered by this policy; and
   - A statement that the Complainant is a student or other person seeking to participate in a program or activity of the university.

2. A Formal Complaint will be reviewed by the Title IX Coordinator to determine if it meets the threshold to proceed.  If all necessary component are present and the alleged conduct falls under this policy, an investigation will commence.

3. If the Formal Complaint warrants dismissal, the Complainant will be notified in writing by the Title IX Campus Coordinator within five business days of filing.  Other reasons for dismissal may include:
   - Withdrawal by Complainant;
   - At the time of complaint, the Complainant is no longer participating or attempting to participate as part of the LSU community; or
   - Respondent no longer affiliated with LSU.
   If a Formal Complaint is dismissed under this policy, the same facts may form the basis for a complaint under the applicable student code of conduct or other relevant policy or procedure. (i.e. non-sex or gender-based misconduct).

4. A Formal Complaint under this policy may be consolidated with other complaints when there are multiple allegations of conduct that arise out of the same facts or circumstances, such as when there are multiple Complainants or Respondents.

5. In very limited circumstances, a Title IX Campus Coordinator may file a Formal Complaint when the Complainant decides not to do so if the is determined that the

5

**EXHIBIT D**

Case 3:21-cv-00242-WBV-SDJ    Document 474-7    10/13/23    Page 37 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 375-7 *SEALED* 07/10/23    Page 43 of 56
EXHIBIT 1

allegations present a risk of substantial harm to community member(s).  This may include use of threats; use of weapons; use of violence; a continued pattern of behavior; and/or predatory behavior.

**NOTICE AND INVESTIGATION**

1. When an investigation commences the Respondent shall be sent written notice including the following:
   - The specific charges alleged;
   - The date and location, if known, of the incident;
   - As summary of the allegation with reasonable specificity; and
   - A request to meet with the Title IX Investigator.

2. The Investigator will make every effort to conduct a thorough and prompt investigation based on the facts and circumstances of each complaint within 30 business days of the notice.  Complex or consolidated investigations may take longer.

3. The investigation shall include meetings with the parties involved, including witness and any other parties the Investigator may deem appropriate.
   - The Respondent and Complainant will be given the opportunity to identify witnesses to be interviewed.
   - The Investigator may seek and collect, and parties may submit, any documents or other relevant information, including, but not limited to:
     - Photographs
     - Video or audio recordings
     - Information from social media
     - Screenshots or other communications
   - At the conclusion of the investigation, the Investigator shall prepare a draft investigative report that summarizes the investigation, and all relevant evidence obtained.
   - The draft report shall be sent electronically to each party and the party's Advisor, if identified.
   - All evidence shall be included, even that on which the university does not intend to rely in reaching a determination regarding responsibility and shall include inculpatory and exculpatory evidence whether obtained from a party or other source.

4. The parties shall have 10 business days from the date a draft report is submitted to review and submit a written response.  The Investigator will review the comments and prepare a final report.

5. The final investigative report shall:
   - Include a timeline of events;
   - Include facts and circumstances surrounding the complaint;

6

**EXHIBIT D**

**EXHIBIT 1**

- Summarize relevant evidence; and
- Be sent electronically, along with all evidence, to each party and Advisor, if identified, at least 10 business days prior to a hearing.

*All evidence shall be included, even that on which LSU does not intend to rely in reaching a determination regarding responsibility and shall include inculpatory and exculpatory evidence whether obtained from a party or other source.

7

# EXHIBIT D

**Appendix 3**
**INTERIM MEASURES**

1. Interim measures are remedial measures taken to help deescalate and offer a short-term temporary resolution during the pendency of a resolution.

2. The Campus Title IX Coordinator, or designee, may recommend interim measures such as a "no contact" order or suspend a Respondent from participating in the education program or activity on an emergency basis.

3. The following procedure applies to an emergency removal or limitation:
   - The Title IX Coordinator must make a determination that the Respondent presents an immediate threat to the physical health or safety of any other individual arising from the allegations of Sexual Misconduct.
   - Written notice must be provided to the Respondent through the institutional email address of the reason for the interim measure.
   - The Respondent shall have a right to notify the Title IX Campus Coordinator in writing, of any request to challenge the suspension or limitation.
   - The Title IX Coordinator shall provide an opportunity to meet (virtually or in person, at the discretion of the Title IX Coordinator) within three business days of receipt of notice.
   - Title IX Coordinator shall provide notice in writing of the decision within three business days after the meeting via institutional email.
   - The interim action shall be in effect while request for review and review are pending.

8

**EXHIBIT D**

**Appendix 4**
**INFORMAL RESOLUTION**

1. Informal resolution is a process whereby the parties work with a professional to reach a resolution of the complaint without a formal hearing.  This process is completely voluntary and requires the consent of both parties.  A party may terminate the informal resolution process at any time before conclusion.

2. The Title IX Coordinator must determine that the circumstances and parties are appropriate for informal resolution.  Complaints classified as sexual assault, rape, statutory rape, incest or involving violence resulting in significant harm to others are not appropriate for informal resolution.

3. The Title IX Coordinator shall appoint a trained individual to facilitate the process.

4. Informal resolution will never:
   - Be required as a condition of enrollment or continuing enrollment, employment or continuing employment or enjoyment of any other right;
   - Require a waiver of right to investigation and adjudication under the Formal Resolution process;
   - Be offered as a process unless a Formal Complaint is filed;
   - Be utilized to resolve an allegation against a Respondent employee by a student Complainant.

5. Informal Resolution Agreements
   - If a Formal Complaint is resolved through information resolution, a written agreement shall be issued including any terms, obligations or outcomes.
   - Agreements must have the approval of the Complainant and Respondent.
   - The agreement shall be shared electronically with the parties by the TIX Campus Coordinator within five business days of resolution.
   - Discussion and information generated during the informal resolution process are considered confidential and shall not be utilized or admissible in the formal resolution process.
   - No facilitator of an informal process may be called as a witness in any procedure under this policy.

9

**EXHIBIT D**

**EXHIBIT 1**

**Appendix 5**
**PROCEDURES FOR FORMAL RESOLUTION/PANEL HEARING**

**FORMAL RESOLUTION**

The formal resolution process is the procedure by which allegations in a Formal Complaint are presented in a formal PM-73 hearing for a determination as to whether this policy was violated.

**PRE-HEARING CONFERENCE**

A pre-hearing conference shall be coordinated by the Title IX Campus Coordinator and chaired by the Hearing Panel Chair. Parties and Advisors are encouraged, but not required, to be present.

This conference shall be conducted at least two business days prior to a scheduled Hearing Panel and 10 business days after the investigative report is sent to the parties and Advisors, if applicable.

The purpose of the pre-hearing conference shall be to:
1. Identify the panelists and address any objections to members of the Hearing Panel;
2. Address evidentiary issues or questions to be posed a the hearing (i.e. numbers of witnesses, use of documents, expected length of hearing, etc.);
3. Ensure parties will have Advisors available to conduct cross examination and that the Advisor is familiar with the hearing process under this policy;
4. Provide a forum to address any questions related to the Hearing Panel process and procedures.

**HEARING PANEL**

The PM-73 Hearing Panel shall consist of one chair and two other LSU employees trained in adjudication.  It shall afford each party an opportunity to present evidence and question opposing parties and witnesses.

**ADVISORS**

Each party is permitted to be represented by an Advisor.  If a party does not have an Advisor at the Hearing, one shall be provided by LSU at no cost. The Advisor may be, but is not required to be, an attorney.  The Advisor is the only person who may conduct cross-examination on behalf of a Complainant or Respondent.  An Advisor will be appointed even in situations where a party elects not to participate in the Hearing.

10

**EXHIBIT D**

**EXHIBIT 1**

## PRESENTATION OF EVIDENCE

1.  The procedure and order for presentation of evidence will be set and maintained by the Hearing Panel Chair.  Each party will be allowed the opportunity to present relevant evidence to the Hearing Panel.

2.  The Hearing Panel Chair will allow each party to present its own relevant evidence through submission of documents and witness testimony.  Each witness will then be subject to cross-examination by other parties.  Cross-examination must be conducted directly, orally and in real time by the party's Advisor and never by a party personally.

3.  Only questions relevant to determining the veracity of the allegations or the credibility of a witness will be allowed. The Hearing Panel Chair will have sole authority to determine whether evidence presented or a question in cross-examination is relevant and whether it will be permitted.  The Hearing Panel Chair must explain any decision to exclude evidence or a question as not relevant.

4.  Questions or evidence about a Complainant's sexual predisposition or prior sexual behavior are not relevant, unless: (1) offered to prove that someone other than the Respondent committed the conduct alleged in the complaint, (2) concern specific incidents of the Complainant's prior sexual behavior with Respondent and are offered to prove consent.

5.  Only evidence submitted to cross-examination may be considered by the Hearing Panel to determine responsibility.

6.  The Hearing will be recorded and the recording or transcript will be made available for the parties for review.


## FAILURE TO APPEAR/ANSWER

The Hearing Panel cannot draw an inference about the determination regarding responsibility based solely on:  (1) A party's or witness's absence from the hearing or (2) Refusal to answer questions.


## DELIBERATIONS

The Hearing Panel shall deliberate in closed session with only panelists present. The Hearing Panel is to apply the preponderance of the evidence standard when determining responsibility.  In order to find a Respondent responsible under the preponderance of the evidence standard, the evidence must show that the charge is more likely supported than not.
Upon reaching a decision, the Hearing Panel will invite the parties and Advisors to return to hear of the Hearing Panel's finding regarding responsibility for a violation of this policy.

11

**EXHIBIT D**

Case 3:21-cv-00242-WBV-SDJ    Document 474-7    10/13/23    Page 43 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 375-7 *SEALED* 07/10/23    Page 43 of 50

EXHIBIT 1

If the Respondent is found responsible, the Hearing Panel shall move to address sanctions.

## DETERMINATION AND SANCTIONS

If the Respondent is found responsible, the Hearing Panel may request input from the parties to evaluate possible sanctions. Prior conduct history of the Respondent will be considered when determining an appropriate sanction.  If additional information is requested, the Hearing Panel shall deliberate in closed session with only panelists present.

The Hearing Panel will notify the parties and Advisors of any sanction imposed.  The Hearing Panel will prepare and provide to the Title IX Campus Coordinator, within five business days of the Hearing, a written determination which must include:
- Identification of the allegations constituting Sexual Misconduct;
- A description of the procedural steps taken from receipt of the Formal Complaint through determination, including any notifications to the parties, interviews with parties and witnesses, evidence gathered and hearings held;
- Findings of fact supporting the determination;
- Conclusions regarding the application of the policy to the facts;
- A statement explaining the sanction for each policy violation found "responsible";
- Whether additional remedies designed to restore or preserve equal access will be provided by LSU to the Complainant.

The Title IX Campus Coordinator is responsible for effective implementation of any remedies and sharing of outcomes. The written determination prepared by the Hearing Panel chair shall be shared electronically by the Title IX Campus Coordinator with the parties and Advisors within three business days of receipt from the Hearing Panel.

The determination regarding responsibility and sanctions becomes final either:
- If appealed, the date written notice is provided to the parties of the appeal result, or
- If not appealed, the date on which an appeal would no longer be considered timely.

## POSSIBLE CORRECTIVE ACTIONS

Students found responsible for violating this policy may expect the range of sanctions to include, but not be limited to, disciplinary probation, deferred suspension, suspension, expulsion psychological assessment, counseling, social restrictions, limited presence on campus, revocation of admission or degree.  Additional sanctions may also be imposed when appropriate.

12

# EXHIBIT D

Case 3:21-cv-00242-WBV-SDJ      Document 375-7 *SEALED* 07/10/23      Page 44 of 50

**EXHIBIT 1**

An employee found responsible for violating this policy may expect the range of sanctions to include, but not be limited to, suspension, administrative leave, demotion, psychological assessment, counseling, restricted presence on campus or termination of employment.

Both the Complainant and Respondent will be informed of the outcome of any corrective action or disciplinary process.

13

# EXHIBIT D

**Appendix 6**
**APPEAL**

**RIGHT OF APPEAL**

Any party may appeal a Hearing Panel determination. The following is an exclusive list of the bases for appeal:
- Evidence of bias by a Hearing Panel member.
- New evidence has become available since the Hearing Panel hearing that was not previously available with due diligence.
- There was a significant and prejudicial departure from the procedures and standards in this policy.
- The outcome was clearly erroneous based the facts and evidence presented to the Hearing Panel.
- The sanctions imposed were inappropriate for the violation.

**APPEAL PROCEDURES**

Notice of Appeal must be in writing and shall be forwarded to the Title IX Campus Coordinator within 10 business days of email notification of the Hearing Panel decision. The Notice of Appeal shall contain the following information:
- Name of the Complainant and Respondent;
- Identify the ground(s) for appeal;
- If appeal is based upon discovery of new information, a description/documentation of the new information and reason it was not discoverable prior to the Hearing Panel hearing.

Upon receipt of the Notice of Appeal, the Title IX Campus Coordinator, within two business days of receipt of the Notice of Appeal, shall:
- Confirm receipt of the Notice of Appeal to the appealing party;
- Notify any other party of the appeal; and
- Contact the LSU Title IX Coordinator (if appeal went to a campus coordinator).

The LSU Title IX Coordinator, or designee, and respective Title IX Campus Coordinator shall, within 10 business days of notice, review the Notice of Appeal.  If the required elements for appeal exist, the LSU Title IX Coordinator shall:
- Appoint reviewer(s) (no more than three);
- Notify the parties of identity of the identity of reviewer(s); and
- Provide the parties five business days to challenge the reviewer(s) for conflict of interest or bias.  (The LSU Title IX Coordinator in conjunction with the respective Title IX Campus Coordinator will determine if cause exists to excuse the reviewer.)

The Title IX Campus Coordinator shall forward the appellate record to the reviewer. The record shall include, but is not be limited to:
- All evidence introduced at the hearing;

14

**EXHIBIT D**

Case 3:21-cv-00242-WBV-SDJ    Document 375-7 *SEALED* 07/10/23    Page 46 of 50

- Any pre-hearing determinations from the Hearing Panel Chair;
- The written findings of the Hearing Panel; and
- The recording or transcript of the formal hearing.

Within 10 business days of receipt of the appellate record, the reviewer(s) shall render a written decision including finding and rationale and forward to the LSU Title IX Coordinator. The reviewer may:

- Uphold the Hearing Panel outcome; or
- Modify the Hearing Panel outcome for responsibility and/or sanctions; or
- Overturn the Hearing Panel outcome and remand for a new hearing.

The LSU Title IX Coordinator shall notify the respective Title IX Campus Coordinator who shall then notify the parties and Advisors within two business days of receipt of the decision.

Appeal decisions are final. In the event of remand for rehearing, the subsequent Hearing Panel outcome may be appealed in accordance with the provisions herein. Any appeal right exercised under this policy shall complete the process.

15

**EXHIBIT D**

EXHIBIT 1

**Appendix 7**
**MISCELLANEOUS PROVISIONS**

**PROHIBITION OF RETALIATION**

No person may intimidate, threaten, coerce or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX or this policy or because the individual has made a report or complaint, testified, assisted or participated or refused to participate in any manner in an investigation, proceeding or hearing under this policy**.** Retaliation is a violation of this policy and shall constitute misconduct subject to disciplinary action herein. LSU will take steps to prevent recurrence and remedy the effects of any violation of this policy.

Charging an individual with disciplinary actions outside this policy for making materially false statements in bad faith in the course of a grievance proceeding does not constitute retaliation.  A finding of responsibility against a Respondent, alone, is not sufficient to conclude that any party made a materially false statement in bad faith.

**TITLE IX COORDINATORS**

The President shall designate the LSU Title IX Coordinator who shall oversee, on all LSU campuses, the implementation, enforcement, and coordination of Title IX. Each Chancellor shall designate a Title IX Campus Coordinator to oversee on-campus Title IX compliance for their respective campus.  Campuses may appoint Deputy Title IX Coordinator(s) to assist the Title IX Campus Coordinator in their duties. A listing of Campus designees may be found on the LSU Title IX webpage at https://www.lsu.edu/titleix/ or by contacting the LSU Title IX Coordinator:

      Jennie Stewart
      University Administration Building
      3810 W. Lakeshore Drive, Ste 123
      Baton Rouge LA 70803
      (225) 578-3918
      jstewart@lsu.edu

The President shall also designate a Deputy Title IX Coordinator for Athletics. In consultation with the Chancellors and Athletic Directors for each campus, this individual will monitor sports equity, including offerings, participation, and scholarships on all campuses for Title IX compliance. Complaints, supportive measures or other concerns related to issues of Sexual Misconduct involving student athletes or Athletics personnel (other than those involving sports equity) shall be addressed in accordance with this policy.

**AMNESTY POLICY**

LSU encourages reporting and seeks to remove barriers in reporting of Sexual Misconduct. A Complainant or witness who, in good faith, reports Sexual Misconduct, shall not be sanctioned for nonviolent student conduct violations, such as underage drinking, provided

16

**EXHIBIT D**

**EXHIBIT 1**

such violation did not place the health and safety of any other person at significant risk of harm.

## CONFIDENTIALITY

To the extent permitted by law, LSU will strive to maintain the confidentiality of any individual under this policy who:

- Has made a report or complaint;
- Has been named as a perpetrator;
- Has been named as a Respondent; or
- Has been named as a witness.

## COOPERATION WITH LAW ENFORCEMENT

LSU will comply with law enforcement requests for cooperation and such cooperation may require LSU to temporarily suspend the fact-finding aspect of an investigation under this policy while the law enforcement agency is in the process of gathering evidence. LSU will promptly resume its investigation as soon as notified by law enforcement that it has completed the initial evidence gathering process. LSU may provide up to 10 business days to allow for the law enforcement agency criminal process/investigation to unfold prior to resuming the fact-finding aspect of the investigation under this policy.

The University will implement appropriate interim steps and remedies during the law enforcement agency's investigation to provide for the safety of the parties to the case, the campus community, and to avoid any instance of retaliation.

## PREEMPTION

To the extent a conflict exists between State or local law and Title IX, the obligation to comply with Title IX is not obviated or alleviated by any State or local law.  To the extent other LSU or campus-based policies may conflict with this policy, the provisions of this policy shall supersede and govern.

## TASK FORCE

Each campus shall establish a task force to address Sexual Misconduct.  Each task force shall invite student members to be represented through their respective student government body or other student organizations.

## RECORD KEEPING

Records created or received under this policy will be maintained for seven years from the date each case is closed.  The following shall be kept as a part of the record:

- Each investigation including any determination regarding responsibility;

17

**EXHIBIT D**

Case 3:21-cv-00242-WBV-SDJ    Document 474-7    10/13/23  Page 49 of 50
Case 3:21-cv-00242-WBV-SDJ    Document 375-7 *SEALED* 07/10/23    Page 48 of 50

EXHIBIT 1

- Any audio or audiovisual recording or transcript of a hearing;
- Any disciplinary sanctions imposed on the Respondent;
- Any remedies provided to the Complainant designed to restore or preserve equal access to LSU's education program or activity;
- Any appeal and result therefrom;
- Any informal resolution and result therefrom;
- All materials used to train Title IX Coordinators, Investigators, decision-makers, and any person who facilitates an informal resolution process; and
- Records of any actions, including supportive measures, taken in response to a report or Formal Complaint.

LSU may be required to disclose information on a need-to-know basis in order to properly address a complaint, when there is a threat to others, pursuant to subpoena, or other court or administrative order, or as may be required by applicable law. Violations of confidentiality or privacy by any other persons involved in the resolution, investigation or administration of the complaint, including any employee, faculty, staff, or student may result in disciplinary or corrective action.

## MEMORANDUM OF UNDERSTANDING

Each campus shall make diligent efforts to enter into Memorandum of Understanding (MOU) with law enforcement and criminal justice agencies in the parish in accordance with Louisiana law.  In accordance with La. R.S. 17:3399.11, et seq., the MOUs should:
- Clearly delineate responsibilities;
- Establish protocols for investigation, including standard for notification and communication and measures to promote evidence preservation;
- Include agreed upon training and requirements for the parties on issues related to sexually-oriented criminal offenses for the purpose of sharing information and coordinating training, to the extent possible;
- Evidence a  commitment and protocols to share information; and
  - State that local law enforcement agencies shall include information on police reports regarding status of alleged victim as an LSU student

The MOUs should be updated every two years. The MOU should provide for joint or shared trauma-informed training specific to assisting sexual assault survivors.

## CAMPUS CLIMATE SURVEY

Each campus shall administer a Campus Climate Survey every three years (2022-2023, 2025-2026, etc) to assess the knowledge, perceptions and behaviors of its students, faculty and staff regarding Sexual Misconduct.  Each campus is encouraged to supplement the statewide survey with additional information specific to its unique characteristics that may assist in preventing Sexual Misconduct and administering strategies dealing with Sexual Misconduct.  The Campus Climate Survey shall be submitted to the LSU Title IX Coordinator by June 1 of each year the survey is required.

18

# EXHIBIT D

Case 3:21-cv-00242-WBV-SDJ    Document 474-7    10/13/23  Page 50 of 50
EXHIBIT 1
Case 3:21-cv-00242-WBV-SDJ    Document 375-7 *SEALED* 07/10/23    Page 50 of 50

**TRAINING, EDUCATIONAL, AND PREVENTION PROGRAMS**

Each campus shall regularly offer training, educational and prevention programs designed to inform the campus community about Sexual Misconduct, PM-73 and Title IX. Each campus will develop educational programs, prevention programs, and other events designed to reduce the incidence of sexual violence on campus or within the community. Each campus should identify and include a bystander intervention program and programs addressing issue related to this policy. Information on these programs shall be available on each campus's Title IX website.

**TRANSFER**

The Board of Regents' Uniform Policy on Sexual Assault requires that: (1) institutions communicate with each other regarding transfer of students against whom disciplinary action has been taken as a result of violation regarding sexually-oriented criminal offenses, as defined in La. R.S. 44:51 or any sexual abuse offense as defined in La. R.S. 14:403; and (2) institutions withhold transcripts of students seeking transfer with pending disciplinary action relative to sexually-oriented criminal offenses, until such investigation and adjudication is complete.

19

# EXHIBIT D