# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**                    **CIVIL ACTION NO.  3:21-CV-00242**

**VERSUS**                                **JUDGE WENDY B. VITTER**

**LOUISIANA STATE UNIVERSITY,**           **MAGISTRATE JUDGE JOHNSON**
**ET AL.**

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 6: JANE DOE</u>

NOW INTO COURT, through undersigned counsel, comes defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board" or "LSU"), and submits this memorandum in support of this Motion for Summary Judgment.[1] Plaintiff Jane Doe ("Plaintiff" or "Doe") complains about alleged harassment by John Poe.  Doe reported the conduct to LSU, and LSU fully adjudicated her report.  Nevertheless, Doe asserted various Title IX[2] claims.  Following this Court's ruling on the Board's motion to dismiss, Doe's only remaining claim is for Title IX heightened risk (pre-assault violation).  (R. Doc. 340, p. 44) This claim fails as a matter of law for the reasons below.

## I.    FACTUAL BACKGROUND

Jane Doe enrolled at LSU as a freshman in Fall 2018.  (Rec. Doc. 182, ¶ 597; Doe 19)[3] Soon after her enrollment, Doe met John Poe, another LSU student, through her roommate.  (Doe 20) Poe was a friend of Doe's roommate's boyfriend.  (Doe 20) Doe, her roommate, and Poe all

---

[1] The Board accepts Plaintiff's facts as true for purposes of this motion and memorandum only.

[2] 20 U.S.C. § 1681, *et seq*.

[3] Relevant portions of the deposition transcripts and exhibits of Plaintiff, Jennie Stewart, and the 30(b)(6) of the Board are attached to the Board's motion as Exhibits A-C, respectively.  The declaration of Jonathan Sanders is also attached to the Board's motion as Exhibit D.  Citations to the depositions will be by the last name of the deponent and the page or exhibit number.  Deposition transcripts with more than one volume will include a Roman numeral to identify the cited volume.  Citations to the declarations will be by the witness's last name and paragraph or exhibit number.

lived in North Hall, a residence hall at LSU.  (Doe 20) Doe admits Poe was "really, really nice" when they first met, and they were friends. (Doe 28) Doe and Poe would go places together, including attending football games.  (Doe 28) According to Doe, she and Poe did not date.  (Doe 29) They kissed two times, but they did not have any other intimate contact.  (Doe 74-75)

Doe alleges that, sometime after they attended a football game together, Poe's behavior toward her changed. (Doe 35) Doe claims Poe took food from her room and took decorations off her dorm room door.  (Doe 22, 26, 20)[4]  Doe alleges Poe sometimes offered to return the items if she would go to his room and cuddle with him.  (Doe 26)  Doe further claims that Poe would "play fight" with her and call her names like "fat" and "pig."  (Doe 26, 35)  Doe admits she was never injured as a result of the play fighting, and she did not report Poe's actions to LSU.  (Doe 28)

Doe became frustrated with Poe and distanced herself from him.  (R. Doc. 182, ¶ 604)  She stopped talking to him and blocked him on her cell phone and social media accounts.  (Doe 31) Doe alleges that, despite her efforts, Poe would find ways to contact her or relay messages to her through her roommate. (Doe 31-32)

Around the same time, Doe received information about LSU's policies regarding campus safety.  (Doe 127-129; Doe Exhs. 20-21)  Doe was required to complete MyStudentBody training, a program that addresses alcohol, drugs, and sexual violence before November 2, 2018.  (Doe 127-128; Doe Exh. 20; Sanders Decl., ¶ 3) Completion of the training was a prerequisite for Spring 2019 registration.  (Doe Exh. 20)  LSU did not receive a report from Doe about Poe's behavior in 2018.  (Doe 32; Board 30(b)(6) I 48-49; Sanders Decl., ¶ 12)

During the Spring semester 2019, Doe's roommate invited her to go to Chipotle, and Doe agreed.  (Doe 38, 40; R. Doc. 182, ¶ 606)  Doe claims she did not realize Poe was invited to go

---

[4]  Despite Doe's objections, her roommate allowed Poe to enter their dorm room.  (Doe 20-21)

PD.41319959.1

until he got into her roommate's car.  (Doe 38, 40)  Doe claims Poe grabbed her butt as they were walking to the restaurant.  (Doe 38, 40-41)  Doe testified in her deposition that she told Poe to stop and not touch her again.  (Doe 38)  After the interaction, the three returned to North Hall with their food, but Doe and Poe did not eat together.  (Doe 42) Doe did not report Poe's behavior to anyone at LSU.  (Doe 42)

Poe's behavior toward Doe allegedly continued.  (Doe 22-25, 37-38, 43)  Doe alleges she was upset about not receiving a job, and Poe sent her a message on Twitter congratulating her on a job offer. (Doe 37-38, 43)[5]  She also alleges Poe took a picture from her room and wrote a phone number on it (which was not Doe's) with a message reading "Call for a good time." (Doe 22-25) After this incident, Doe was "fed up" and told her roommate that she was going to report Poe and her roommate's boyfriend to Residential Life.  (Doe 38-39) According to Doe, her roommate begged her not to report them. (Doe 43-44) Doe alleges that, after her conversation with her roommate, Poe got a new phone number, called Doe, and left a voicemail telling Doe although she was "struggling in life," that was not an excuse to take her anger out on her roommate.  (Doe 39) Doe alleges the next day or so, she received a text message from the same number (because she did not block the number). (Doe 39-40)  In the text message, Doe alleges Poe confirmed his identity and threatened to report her.  (Doe 40)

Shortly after this interaction, on or around March 19, 2019, Doe reported Poe to her former resident assistant.  (Doe 32, 46, 49-50; Doe Exhs. 1-2)[6] Within a few hours, a representative of Residential Life met with Doe (who was accompanied by one of her friends at Doe's request) in

---

[5] Doe believes her roommate told Poe about her job interview.  (Doe 43) Although Doe blocked Poe on other social media platforms, she forgot to block him on Twitter.  (Doe 37)
[6] Doe alleges she was worried that LSU would not take any action against Poe in response to her complaint. (Doe 52) During her deposition, Doe testified that Poe had been in trouble before for throwing food down the stairs and stealing a roadblock, but nothing happened to him.  (Doe 50-52)  Doe testified her knowledge is based on what her roommate told her, and Doe admits she has no personal knowledge of what, if any, action LSU took against Poe.  (Doe 50-52)

PD.41319959.1

Doe's room at North Hall. (Doe 53-54)  During the meeting, Doe was informed about available resources like the Lighthouse Program, a "No Contact" order, and the LSU Police Department.[7] (Doe 55-56) In addition, the complaint was submitted to the Title IX Office, and Doe was contacted by a representative of that office on March 21, 2019.  (Doe Exh. 5) Finally, Doe was offered the option to move to "a safe space" (*i.e.,* another room for a three-day period), with the option to move to another room permanently.  (Doe 53-55; R. Doc. 182, ¶¶ 620-622)  Doe accepted the temporary housing and ultimately relocated to another dorm.  (Doe 54-56) Doe testified that after the meeting she felt like her concerns had been addressed.  (Doe 56)

The Title IX office investigated Doe's complaint. (Doe Exh. 7) Based on the information gathered during the investigation, the Title IX office determined that Doe's allegations fell outside of Title IX. (Doe 84) However, Doe's complaint was referred to Student Advocacy and Accountability ("SAA") for further review to determine whether Poe's actions violated the Student Code of Conduct.  (Sanders Decl., ¶ 12, Exh. 6; Doe 84-85; Doe Exhs. 8 and 9)

SAA investigated Doe's complaint and cited Poe for violations of the Student Code of Conduct.  (Sanders Decl., ¶ 12, Exhs. 6, 7) Specifically, Poe was found Responsible (*i.e.*, liable) for the following violations:  Harassment and Property Misuse.  (Sanders Decl., ¶ 12, Exh. 7)  As a result of this finding, Poe was placed on disciplinary probation from June 7, 2019 through May 31, 2020. *Id*. In addition, a mutual "No Contact" Order between Poe and Doe was issued. *Id*.  Under the terms of the order, the parties were directed to avoid contact with each other until the directive was lifted in writing.[8]  *Id*.

---

[7] Doe visited Lighthouse on March 29, 2019 seeking academic accommodations, specifically, extended time, a distraction reduced environment, consideration for absences, and note taking. (Doe 57, 71-72; Doe Exh. 4)
[8] Poe was also required to write a reflection essay and submit it to SAA by July 7, 2019.  (Sanders Decl., ¶ 12)

Prior to Doe's complaint, the Title IX office did not receive any complaints about Poe. (Board 30(b)(6) I 48-49) Further, Doe admits she did not have any interaction with Poe after her report to Residential Life in March 2019. (Doe 46)

## II.    STANDARD OF REVIEW

*See* discussion in Summary Judgment No. 1, Section II, which is adopted herein by reference.

## III.    DOE'S REMAINING HEIGHTENED RISK CLAIM FAILS AS A MATTER OF LAW.

### A.    Doe's Heightened Risk Claim is Prescribed.

*See* discussion in Summary Judgment No. 1, Section III.B regarding prescription, which is adopted herein by reference. Doe's alleged harassment took place in the Fall of 2018 and in the Spring of 2019, yet she did not file suit until nearly two years later, on April 26, 2021. (R. Doc. 1; R. Doc. 182, ¶ 934) Therefore, Doe can only survive prescription challenges if the claim accrued at a later, timely date. As more fully explained below, Doe cannot meet this burden. Accordingly, her claim must be dismissed.

#### a.    The Husch Blackwell Report is Irrelevant to the Timeliness of Doe's Claim.

*See* discussion in Summary Judgment Motion No. 1, Section III.B.a, which is adopted herein by reference. Doe did not read the entirety of the Husch Blackwell Report, and none of the allegations in the Husch Blackwell Report relate to her. (Doe 95) Doe cannot show any findings of sexual misconduct by Poe in the Husch Blackwell Report prior to her alleged experience.

Nevertheless, Doe alleges generally, but not in the context of her heightened risk claim, that she could not have known of the following issues until the release of the Husch Blackwell Report: (1) "LSU, including specifically Defendant Stewart, had specific knowledge of the pervasive harassment and retaliation Plaintiff Doe and others suffered;" (2) "Her claims fell under

the scope of LSU's Title IX Policy;" (3) "LSU and its employees, specifically Defendant Stewart, had concealed all notes from Plaintiff Doe's multiple interviews and had misrepresented the facts of her report;" (4) "LSU and its employees failed to train Plaintiff Doe on the resources available to her as a survivor," and (5) "LSU's Title IX Policy is meant to prevent the specific emotional distress that Plaintiff Doe endured." (R. Doc. 182, ¶ 649)  However, Plaintiff testified that she never interacted with or spoke to Jennie Stewart. (Doe 118, 154-155)  Stewart testified that Kimberly Davis, a graduate student in the Title IX office, handled the intake of Doe's case, and that Stewart did not communicate directly with Doe. (Stewart 261-262)

More significantly, the undisputed evidence proves Doe's allegations are unsupported. Contrary to her assertions, Doe has no evidence to show that Stewart had knowledge of her alleged harassment and concealed any notes.[9]  The Maxient file regarding Doe's complaint indicates that Doe was interviewed by Davis of the Title IX Office, and the notes of her interviews were included in the file.  (Sanders Decl., ¶ 12, Exh. 6)  According to the Maxient file, although Doe provided the names of students to be interviewed in connection with her complaint, neither student responded to requests to be interviewed by Title IX.  (Sanders Decl., ¶ 12, Exh. 6; Doe Exh. 7) Based on the information obtained during the investigation, including Davis's notes, the Title IX office determined that Doe's complaint did not constitute a Title IX violation. (Sanders Decl., ¶ 12, Exh. 6) Contrary to her assertions, Doe has no evidence to show that Stewart had knowledge of her alleged harassment and concealed any notes.  Given that Doe took advantage of LSU's resources, as set forth above, she cannot credibly claim she was not adequately informed of her available resources.  Doe's other two allegations regarding Title IX's coverage and her post-reporting emotional distress are not included in the Husch Blackwell Report and are unrelated to

---

[9] Even if substantiated, such allegation is unrelated to the timelines of Doe's pre-assault claim.

PD.41319959.1

her alleged injury.  Finally, Doe cannot show that she "did not have reason to further investigate" her claims until after publication of the Husch Blackwell Report.  (R. Doc. 340, p. 20).

As in *King-White v. Humble Indep. Sch. Dist.,* 803 F.3d 754, 762 (5th Cir. 2015), discussed more fully in Section III.B.a of Summary Judgment Motion No. 1, any information Doe may have learned from the Husch Blackwell Report was merely tangential, and did nothing to revive her untimely claim.

### b.  Plaintiff's Claim Accrued in 2019.

To the extent this Court determines that Doe has asserted a heightened risk claim based on pre-assault conduct, such a claim accrued in 2019.  According to Doe, her alleged harassment occurred in the Fall of 2018 and the Spring of 2019.  (R. Doc. 182, ¶¶ 597-616)  By this time, she knew of her alleged injuries and the perpetrator.  (*See* Doe 22-25, 37-39, 40-44)  Doe's complaint reached the Title IX office by March 2019 and the SAA office by May 2019.  (Doe Exhs. 5, 8)  Between March and May 2019, Doe communicated with representatives in Residential Life, Lighthouse, Title IX, and Student Advocacy and Accountability to process her report.  (Doe 53-54, 57, 71-72, 84-85; Doe Exhs. 4-5, 7-9)  On May 14, 2019, Doe responded to an email from Crystal Loup, Coordinator, Wellness & Health Promotion at The Lighthouse Program stating: "I met with student accountability and advocacy and the person I talked to said that title ix said that [Poe] wasn't in violation of their policies so they sent it to their office to try and find a violation there."  (Doe 86-87; Doe Exh. 9)  Therefore, as of at least May 14, 2019, Doe knew that her complaint was not being handled by Title IX and instead was being handled by SAA.  Doe knew the salient information related to her claim no later than May 2019, and any "tangential" information she may have later learned does not delay her accrual.  Therefore, her April 26, 2021 lawsuit is untimely.

**B. Doe Failed to Plead a Heightened Risk "Pre- Assault" Claim.**

A heightened risk or "pre-assault" claim is based on defendant's alleged acts of indifference **before** a plaintiff's assault. Here, the Second Amended Complaint and Jury Demand (the "Complaint") sets forth purported "examples of how LSU created a heightened risk" of sexual misconduct on campus for Poe's victim. (R. Doc. 182, ¶ 934 (a)-(c)) Notably, all of the examples relate to conduct occurring **after** Doe's alleged harassment by Poe. (R. Doc. 182, ¶ 934 (a)-(c))[10] Doe's failure to allege such a claim makes sense because she is the **first and only** plaintiff to allege conduct by Poe, and the only student who made claims of a sexual nature against Poe. (Sanders Decl., ¶ 12; Board 30(b)(6) I 48-49)

**C. Doe Fails to Meet the Elements of a Heightened Risk Claim**

Doe's "heightened risk" claim fails for other reasons. *See* discussion in Summary Judgment No. 1, Section III.C of Memorandum in Support of Motion for Summary Judgment No. 1, which is adopted herein by reference.

If this Court determines that Doe has properly asserted a pre-assault claim, which the Board denies, her claim should be dismissed. Under a pre-assault Title IX heightened risk theory, a plaintiff must prove: (1) the defendant had actual knowledge of a substantial risk that sexual abuse would occur; (2) the harasser was under the defendant's control; (3) the harassment was based on the victim's sex; (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit; and (5) the defendant was deliberately indifferent to the harassment.[11] (R. Doc. 340, p. 39) Doe cannot establish the first, fourth, and fifth elements of this claim.

---

[10] Doe's allegation that Poe "continued to stalk" her is not a pre-assault allegation because it is based on post-reporting conduct.
[11] *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022) (internal citations omitted).

PD.41319959.1

### a.  Element One: Doe Cannot Establish Actual Knowledge.

Doe fails the first element because she cannot show that an appropriate person, let alone any person, had knowledge that she faced a substantial risk of sexual harassment by Poe. "[P]laintiffs seeking to prove actual knowledge must clear a high bar."[12] "[A]ctual knowledge [] means that the school must have actual, not constructive, knowledge of sexual harassment."[13] Specifically, in a case like this, where the "pre-assault" behavior is at issue, a school must have knowledge "that there is a substantial risk that sexual abuse would occur."[14] A school can escape liability if it can show (1) "that it did not know of the underlying facts indicating a sufficiently substantial danger and that it was therefore unaware of a danger," or (2) "that it knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."[15] The knowledge requirement cannot be satisfied by showing that the school "should have known" there was a substantial risk of abuse.[16]

Here, Doe has no record evidence to prove LSU had any actual knowledge of her risk of harassment by Poe.  Doe was the **only** plaintiff to assert harassment allegations against Poe, and Doe can offer no reports to LSU of Poe's sexual conduct **prior** to (or after) her situation.  (Board 30(b)(6) I 48-49)  Thus, she cannot show LSU or its employees were aware of any "substantial risk" which should have been acted upon before Doe's alleged incidents.

---

[12] *Kelly v. Allen Indep. Sch. Dist.*, 602 F. App'x 949, 953 n.3 (5th Cir. 2015).
[13] *Roe*, 53 F.4th at 341 (citing *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *K.S. v. Nw. Indep. Sch. Dist.*, 689 F. App'x 780, 784 (5th Cir. 2017).
[14] *Roe*, 53 F.4th at 341(quoting *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 775 (5th Cir. 2020)) (internal quotations omitted).
[15] *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 659 (5th Cir. 1997) (citation and internal brackets omitted); *Kelly,* 602 F. App'x at 953 n.3 (applying standard to student-on-student harassment).
[16] *M.E.*, 840 F. App'x at 775.

9

### b. Element Four: The Alleged Conduct was Not Severe, Pervasive and Objectively Offensive.

Doe cannot demonstrate the conduct that occurred was "severe, pervasive, **and** objectively offensive" such that it is actionable under Title IX.[17]  Title IX cases "are based on unwelcome sexual advances so severe and pervasive as to interfere with a student's educational atmosphere and opportunities."[18] "Whether conduct rises to the level of actionable harassment 'depends on a constellation of surrounding circumstances, expectations, and relationships including, but not limited to, the ages of the harasser and the victim and the number of individuals involved.'"[19]

Actionable harassment under Title IX necessitates the consideration that "schools are unlike the adult workplace and that [students] may regularly interact in a manner that would be unacceptable among adults."[20] "'Early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it.'"[21] "Thus, to be actionable, the harassment must be more than the sort of teasing and bullying that generally takes place in schools."[22]

While Poe's actions, if true, can certainly be classified as immature and unpleasant, these interactions "[are] not the proper stuff of a federal harassment claim."[23] As explained in *Sanches*, dating and relationships are an inescapable part of the college experience.[24] "It is a trying time for

---

[17]  *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999) (emphasis added).

[18] *Lewis v. Louisiana State Univ.*, 2021 WL 5752239, at *19 (M.D. La. Dec. 2, 2021) (citations omitted).

[19] *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) (quoting *Davis*, 526 U.S. at 651).

[20] *Id*. (internal quotations and citation omitted).

[21] *Id*. (quoting *Davis*, 526 U.S. at 651-52).

[22] *Id*.

[23] *Id*. at 167.

[24] *Id*.

PD.41319959.1

young people, who experience a wide range of emotions and often lack the skills to control them."[25]

Stealing food and door decorations and calling someone derogatory names are the precise types of

negative, juvenile student interactions about which the *Davis* Court cautioned.[26]    Indeed,

imposition of liability under these facts would mean that "no conduct would be beyond the reach

of [T]itle IX."[27]

> **c.    Element Four:    Plaintiff Cannot Meet her High Burden of Showing Deliberate Indifference That Caused Harassment.**
>
> **i.    No Deliberate Indifference.**

Plaintiff cannot show that the Board was deliberately indifferent to prior sexual misconduct

by Poe, nor does she allege pre-assault deliberate indifference, as discussed above.

As this Court has acknowledged, "deliberate indifference in the Title IX context is a 'high

bar' and requires the defendant's response to be 'clearly unreasonable in light of the known

circumstances.'"  (R. Doc. 340, p. 28 (quoting *Roe,* F.4th at 341 (quoting *Sanches v. Carrollton-*

*Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011)))  "Title IX does not require

flawless investigations or perfect solutions."[28]  Rather, the school's response, or lack thereof, must

be "clearly unreasonable in light of the known circumstances."[29]  This standard is high in order to

ensure institutions are liable for their own official decisions and not for their students' independent

---

[25] *Id.*  Moreover, "the Court can consider only sex-based harassment, not other incidents of bullying and teasing, in determining whether [the plaintiff] can show severe and pervasive harassment." *J.B. v. Klein Indep. Sch. Dis.*, 2020 WL 813020, at *5 (S.D. Tex. Feb. 18, 2020) (citations omitted).

[26] *See Davis*, 526 U.S. at 652 (damages are not available for acts of name-calling among students, even where the comments target differences in gender); *see also Ruvalcaba v. Angleton Indep. Sch. Dist.*, 2019 WL 8273375, at *3 (S.D. Tex. Dec. 19, 2019) (no actionable harassment where student bullied, insulted, and called plaintiff names and took her personal belongings); *Kirkpatrick v. Sch. Bd. of Lafayette Parish*, 2022 WL 2679605, at *2 (W.D. La. July 11, 2022), *aff'd*, 2023 WL 2755579 (5th Cir. Apr. 3, 2023) (isolated incident whereby student touched victim in an inappropriate manner, combined with student "smil[ing] and laugh[ing]" when they passed each other, was not severe or pervasive).

[27] *See Sanches,* 647 F.3d at 167.

[28] *Id.* at 170 (citation omitted).

[29] *Davis*, 526 U.S. at 648.

PD.41319959.1

actions.[30]  The institution's conduct "must amount to an intentional choice, not merely an unintentionally negligent oversight."[31]  "[L]iability does not attach where the official with authority to take corrective action responds reasonably to a risk of harm, even if the harm ultimately was not averted."[32]  Fifth Circuit precedent establishes that "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference," and neither do negligent delays, botched investigations of complaints, or responses that could have been improved.[33]

As the first plaintiff who was allegedly victimized by Poe, Plaintiff fails to meet her high burden of showing **prior** deliberate indifference to reports of sexual assault committed by Poe. Indeed, as noted earlier, she does not even make such allegation in her Complaint.[34]  Instead, Doe alleges that the following events constitute her heightened risk claim:

(a) Plaintiff Doe reported John Poe's stalking in March 2019, and LSU did not provide adequate support or accommodations to limit Poe's contact with Plaintiff Doe.

(b) LSU did nothing to discipline John Poe and he continued to stalk Plaintiff Doe, substantially heightening Plaintiff Doe's risk of victimization.

(c) Plaintiff Doe's fear kept her attendance low, her grades suffered, and eventually she had to leave LSU prior to completing her degree program.

---

[30] *Davis*, 526 U.S. at 643 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290-91 (1998)).

[31] *James v. Harris Cnty.*, 577 F.3d 612, 617–18 (5th Cir. 2009) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)); *see Ramos v. Webb Consol. Indep. Sch. Dist.*, 724 F. App'x 338, 340 (5th Cir. 2018) (applying same in Title IX context).

[32] *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 359 (5th Cir. 2020) (quoting *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000)).

[33] *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (internal citations omitted).

[34] Contrast Doe's "facts" with those alleged in *Doe v. Bd. of Supvs. of Univ. of La. Sys.*, 2023 WL 143171 (M.D. La. Jan. 10, 2023).  There, the court found deliberate indifference to be adequately alleged where the student-assailant had been allegedly accused by six women of sexual assault but was nonetheless allegedly allowed to transfer among three universities, and was never "suspended, expelled, criminally prosecuted, or even meaningfully investigated." *Id*. at *1. The plaintiff was the sixth alleged victim of the student-assailant, and all five previous victims had allegedly reported their sexual assaults to their respective schools and/or the police department. *Id*. at *6-7.  Similarly, deliberate indifference was adequately alleged in *Hernandez v. Baylor University*, where the student-assailant had allegedly assaulted six previous women, which Baylor had knowledge of and "failed to take any protective action." *Hernandez v. Baylor Univ.*, 274 F.Supp. 3d 602, 614-15 (W.D. Tex. 2017).

(R. Doc. 182, ¶ 934)

Doe's allegations relate to post-assault events, as discussed in Section III.B, above. Moreover, the undisputed record evidence proves these allegations are unsubstantiated.  The same night that Doe reported Poe, she was offered alternative housing away from Poe, which she accepted.  (Doe 54-56)  Notably, Doe testified that she was satisfied with the meeting:

> Q:    Did you report it [Poe's conduct] – did you ultimately report the conduct to the police?
>
> A:    No.
>
> Q:    Why not?
>
> A:    I felt like reporting it to Title IX was enough.
>
> Q:    Do you remember the name of the person who met with you that night?
>
> A:    No.
>
> Q:    At the end of the meeting, did you feel like your concerns had been addressed?
>
> A:    Yes.

(Doe 56)

Moreover, Doe used Lighthouse resources, including therapy and academic accommodations.  (Doe Exhs. 4, 16)  In fact, Doe testified that she met weekly with Crystal Loup in the Lighthouse Program from March 2019 to Fall 2019.  (Doe 63)[35]  Doe testified that she did know whether a no-contact order was implemented or whether discipline was imposed on Doe because she did not receive notice from SAA.[36] (Doe 114)  Regardless of whether Doe had notice of these events, the record evidence is undisputed that, following Doe's disclosures to SAA, Poe

---

[35] According to Doe, Loup suggested she see a different therapist for general depression.  (Doe 62-63)

[36] While not relevant to Doe's pre-assault heightened risk claim, the evidence indicates Poe was disciplined in connection with LSU's investigation of Doe's complaint.  (Sanders Decl., ¶ 12, Exh. 7)

PD.41319959.1

was charged with Harassment, Offensive Behavior, Property Misuse, and Stalking, and was ultimately found responsible for Harassment and Property Misuse. (Sanders Decl., ¶ 12, Exh. 7) As a result, Poe was placed on a one-year disciplinary probation, was directed to have **no contact** with Doe until the no contact directive was lifted and was required to write a reflection essay. (Sanders Decl., ¶ 12, Exh. 7). LSU's lack of knowledge prior to Doe's assault coupled with its post-reporting response negates any suggestion of deliberate indifference.

Doe's allegation of "continued stalking" is telling given the timing of her report. Doe alleges that Poe's behavior toward her began in Fall 2018. (Doe 22-23, 35; R. Doc. 182, ¶ 598) She further testified about an incident in which Poe grabbed her butt in early 2019, before she made a report. (Doe 38-41) Doe completed MyStudent Body training in November 2018, so she was aware of LSU's policies on Title IX. (Sanders Decl. ¶ 3; Doe 127-128; Doe Exh. 20) Yet, Doe waited until March 2019 to report Poe's conduct. (Doe 32, 46, 49-50; Doe Exhs. 1-2) The Board did not have actual knowledge of Poe's alleged conduct; therefore, there was no opportunity for the Board to act or remedy the conduct. Damages may not be recovered under Title IX unless the school has actual notice of, and is deliberately indifferent to, actionable sexual harassment.[37] The Board could not act with deliberate indifference because Doe did not give the Board the chance to act at all.

### ii. No Causation.

*Davis* also requires a causation showing—a plaintiff must show that a school's "deliberate indifference subject[ed] its students to harassment."[38] Evidence that a plaintiff was subjected to harassment because of deliberate indifference is a necessary causation element for a Title IX

---

[37] *Davis,* 526 U.S. at 650.
[38] *Id.* at 644.

14

claim.[39]  Critical to this inquiry is what occurred **after** the school's actual knowledge.[40]  Doe cannot meet the *Davis* standard of showing that she was subjected to severe, pervasive, and objectively offensive harassment **because of** the alleged deliberate indifference.  Indeed, as previously noted, Doe's report was the first complaint of harassment by Poe received by LSU.  (Board 30(b)(6) I 48-49)  Accordingly, Doe cannot show any direct causal connection between LSU's conduct and her experience with Poe.

####   D.   No Other Heightened Risk Theory is Available to Doe.

Collectively, Plaintiffs seem to base their heightened risk claims on allegations that LSU created a heightened risk of sexual misconduct by maintaining a "general custom or official policy" of deliberate indifference to reports of Title IX violations, seemingly merging two claims.[41]  Notwithstanding, the Board also addresses plaintiffs' insufficient "official policy" allegations.

#### a.   The Fifth Circuit Does not Recognize Heightened Risk Based on an Official Policy.

The Fifth Circuit has not recognized a claim for Title IX heightened risk based on an official policy, and this Court's ruling on the Board's motion to dismiss does not suggest that an official policy claim remains in this case.  *See* discussion in Summary Judgment No. 1, Section III.D, which is adopted herein by reference.

#### b.   Doe Cannot Establish an Official Policy of Deliberate Indifference to Reports of Sexual Misconduct.

Doe cannot establish that the Board "maintained a policy of deliberate indifference to reports of sexual misconduct."[42]  *See* discussion in Summary Judgment No. 1, Section III.D, which

---

[39] *Id.* at 645; *Doe v. Baylor Univ.*, 240 F.Supp. 3d 646, 660 (W.D. Tex. 2017).
[40] *Doe v. Univ. of Kentucky*, 959 F.3d 246, 251 (6th Cir. 2020); *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 622 (6th Cir. 2019).
[41] For example, Plaintiff frequently references "deliberate indifference" and "actual knowledge," and makes no reference of "intentional discrimination" (the official policy standard).  (R. Doc. 182, ¶ 926)
[42] *See Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1112 (9th Cir. 2020).

is adopted herein by reference, including the discussion of LSU's PM-73 policy. The Board's policies were promulgated to students and staff alike before and after Doe's alleged harassment.[43] (Doe 127-129; Doe Exhs. 20-21; Board 30(b)(6) I 29, 52-54; Board 30(b)(6) II 259-261; Stewart 38-41) Despite PM-73, Plaintiffs' Complaint generally references the following deficiencies: (i) an alleged failure to report complaints, conduct investigations, and establish grievance procedures; (ii) training; and (iii) LSU's response to a 2017 Internal Audit, all of which fail to satisfy Doe's burden. (R. Doc. 182, ¶¶ 922, 923, 926) Doe has not pointed to any specific, non-conclusory policy, let alone one that caused her harm. *See* discussion in Summary Judgment No. 1, Section III.D, which is adopted herein.

### i.  General Reference to Failure to Report Complaints, Initiate/Conduct Investigations and Grievance Procedures.

Plaintiffs' Complaint generally references shortcomings in reporting, investigations, and grievance procedures with no specifics to tie those general categories to Doe's claims. ( R. Doc. 182, ¶¶ 926, 931) As discussed above, Doe lacks evidence that an employee failed to comply with Title IX. The evidence is undisputed that employees, non-employees, and students, including Doe, had the option to report Title IX claims through multiple mechanisms, including directly to a Title IX representative. (Board 30(b)(6) I 49-52) Likewise, information about how to contact the campus Title IX office was provided to students and was housed on the Student Advocacy and Accountability website, Dean of Students website, HRM website, and on the Title IX website at various points. (*Id.* 53-54) In Doe's case, Title IX approached her directly following her disclosure to her former Resident Assistant. (Doe 77-79; Doe Exh. 5) Doe has no evidence of an alleged official policy relating to reporting failures.

---

[43] *See Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 2020 WL 7043944, at *11 (S.D. Tex. Dec. 1, 2020), *aff'd in part, rev'd in part* by *Roe*, 53 F.4th 334.

Similarly, no alleged official policy relating to shortcomings in investigations or grievance procedures exists.  The mere fact that Doe was dissatisfied that SAA handled her report instead of Title IX is a post-reporting complaint, which claim has been dismissed. (R. Doc. 340, p. 44) Nevertheless, Doe has not provided any evidence to show how SAA's adjudication of Doe's complaint constitutes an official policy. Doe has no evidence of others' experiences regarding Title IX as compared to SAA, nor can Doe show that the decision to address her report through SAA rather than Title IX resulted in lesser or different discipline to Poe.

### ii.    Training.

Plaintiff cannot establish an official policy of deliberate indifference with relation to training.  The Board provided annual training beginning in at least 2014. (Board 30(b)(6) I 30-32, 36-37)  For ease of attendance, LSU administered the trainings electronically, the content of which was reviewed by Title IX.  (Board 30(b)(6) I 33, 36-37)  In addition to the campus-wide training, some departments, such as Residential Life, administered additional training to mitigate additional risks. (Board 30(b)(6) I 39, 42)  Many of these trainings were developed by the Title IX office and included the "big three topics" of consent, healthy relationships, and bystander intervention. (Board 30(b)(6) I 39, 42)  Like other students, Doe and her alleged harasser, Poe, received LSU Title IX training.  (Doe 127-129; Doe Exhs. 20-21; Sanders Decl. ¶ 3) Doe also acknowledged that she received and completed a training course on sexual assault, which training LSU mandated that students complete as a prerequisite to registering for classes. (Doe 127-128; Doe Exh. 20) Doe cannot show an official policy of deliberate indifference to training.

Additionally, Doe cannot establish a causal link between any alleged lack of training and her injuries.  Indeed, there is no evidence that any additional training on Title IX **prior to Doe's harassment** would have led to a different result. (Board 30(b)(6) I 40-41)

17

iii.     **Internal Audit**

The Board anticipates that Plaintiffs will cite a 2017 Internal Audit commissioned by LSU, which, plaintiffs allege referenced some "problems and failings within the LSU Title IX process." (R. Doc. 182, ¶ 925)  *See* discussion in Summary Judgment No. 10, Section III.C.b.iii, which is adopted herein by reference.  The LSU Office of Internal Audit conducted this audit regarding Title IX obligations, specifically sexual misconduct (the "Audit").  (R. Doc. 1-1, p. 164)  The Audit reviewed activities between June 1, 2015 and December 31, 2016 (prior to Doe becoming an LSU student and prior to Doe's alleged interactions with Poe), and its findings related to multiple campuses.  (*Id.*)  The Audit noted that PM-73 was already in place since 2014, pre-dating the Audit's review period.  (R. Doc. 1-1, p. 166)  The only Audit finding Plaintiffs challenge in their Complaint is that "Responsible Employees were not properly trained in their obligations under the Title IX Policy."  (R. Doc. 182, ¶¶ 923, 926)[44]  Plaintiffs further allege that "the audit report was not acted upon and no additional training was provided to Responsible Employees to ensure that employees complied with their obligations under LSU policy and federal Title IX guidance."  (R. Doc. 182, ¶ 924)  Despite Plaintiffs' reference to the Audit, Doe does not even allege that a lack of reporting played any role in her harm.  Moreover, such an assertion is contradicted by Doe's testimony.  According to Doe, she contacted a former resident assistant to report Poe, and Doe acknowledges that the former resident assistant promptly reported the complaint on her behalf. (Doe 49-51, 53-54; Doe Exhs. 1-2)  Therefore, Doe lacks any basis for claiming her harm was caused by the existence of an official policy stemming from the Audit.

---

[44] Plaintiffs questioned some of the witnesses about the Board's response to the Audit.  (*See* Stewart 140-141)  Stewart testified that the institution implemented a standard mechanism to consistently record complaints of potential PM-73 violations and track their dispositions, specifically that the University utilized both Maxient and EthicsPoint for tracking of student and employee cases, respectively.  (Stewart 141) Stewart also testified regarding the efforts taken by Stewart and Tom Skinner, General Counsel, to ensure reporting.  (Stewart 142-143)

### c. Element Two: Doe Cannot Show a Known or Obvious Risk.

Not only can Doe not establish an "official policy" of deliberate indifference, she also cannot show that the risk of sexual misconduct that would result from such policy was "known or obvious."[45] As indicated above, Doe was the first of any Plaintiff, or any student for that matter, reported harassment by Poe. (Board 30(b)(6) I 48-49) Importantly, LSU received no other sexual reports regarding Poe's conduct prior to Doe's report.[46] (*Id.*) Although Plaintiffs collectively have made general allegations of sexual misconduct, they have no evidence of widespread, systemic conduct that would put LSU on notice of a particularized risk of sexual misconduct in the context that Doe alleges, particularly where, as here, Doe does not allege that the risk of her purported victimization was any higher due to her membership in a particular department, college, dorm, or other organizational context.[47] Doe's generalized allegations of widespread, systemic conduct do not meet her burden.

### d. Element Four: Doe Cannot Show Causation.

Doe can show no connection between LSU's nonspecific alleged official policy and Doe's harm. An official policy or custom must have caused the alleged assault, as opposed to "simply misconduct that happened to occur [at the school] among its students.'"[48] The standard for official policy liability under Title IX cannot "mean that recipients can avoid liability only by purging their

---

[45] *See, e.g., Doe v. Texas A&M Univ.*, 2022 WL 5250294, at *6 (S.D. Tex. Oct. 6, 2022).

[46] *See id.* (finding no *Karasek/Simpson* liability where there were no allegations that TAMU received reports of sexual misconduct by similarly situated students, that TAMU failed to address or actively concealed reports of sexual misconduct, that TAMU received reports of sexual misconduct committed by plaintiffs' assailants, or that TAMU had an official policy or custom that created a heightened risk of assault in plaintiffs' program).

[47]*See e.g., C.T. v. Liberal Sch. Dist.*, 562 F.Supp. 2d 1324, 1340 (D. Kan. 2008) (finding that weight training program at volunteer coach's home did not "bear the element of encouragement of misconduct" nor did it "create [] a risk of abuse that would have been obvious to school officials"); *Tackett v. Univ. of Kan.*, 234 F.Supp. 3d 1100, 1108 (D. Kan. 2017) (rejecting argument for institutional liability based on the school's authority over its athletes and that it "should have known" of the heightened risk of assault at popular off-campus apartment complex for football players "based on the stereotypical assumption that football players are more prone to commit sexual assault" because such argument is based on theories of respondent-superior and constructive notice, both of which the Supreme Court rejected in *Gebser*, 524 U.S. at 282).

[48] *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1174 (10th Cir. 2007).

schools of actionable peer harassment."[49]  For the reasons set forth in Section III.C.c.ii, Doe cannot

establish any causal link between a purported policy of the Board and the harm she alleges.  Doe's

generalized statements relating to training, LSU's 2017 audit, and failure to report complaints or

to engage in investigations could not have prevented Doe's harm or reduced Doe's risk of being

victimized.  Doe and Poe each received LSU's training on Title IX.  (Doe 127-129; Doe Exhs. 20-

21; Sanders Decl. ¶ 3) Moreover, as previously noted, Doe's complaints regarding the handling of

her complaint all relate to LSU's post-reporting conduct.  These issues have no bearing whatsoever

on whether and to what extent Doe was at a heightened risk of harm, and Plaintiff has no evidence

to establish otherwise.[50]

## IV.    CONCLUSION

For the reasons set forth above, Doe's claims must be dismissed as a matter of law.

Respectfully submitted,

**JEFF LANDRY
ATTORNEY GENERAL**

BY:    /s/ *Susan W. Furr*

Shelton Dennis Blunt Bar Roll No. 21230
Susan W. Furr Bar Roll No. 19582
Karleen J. Green Bar Roll No. 25119
Jessica Coco Huffman LA Bar No.: 30445
Molly McDiarmid Bar Roll No. 36426
Gregory T. Stevens Bar Roll No. 29436
Michael B. Victorian Bar Roll No.: 36065
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802

---

[49] *Davis*, 526 U.S. at 650.
[50] *Tackett*, 234 F.Supp. 3d at 1107 (finding no institutional liability for heightened risk of sexual assault where alleged policies "played no part in plaintiff's rape").

PD.41319959.1

Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: jessica.huffman@phelps.com
Email: molly.mcdiarmid@phelps.com
Email: greg.stevens@phelps.com
Email: michael.victorian@phelps.com

ATTORNEYS FOR THE BOARD OF
SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on

June 30, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic

copy of the same to Plaintiffs' counsel.

*/s/  Susan W. Furr*
Susan W. Furr

21

PD.41319959.1