**EXHIBIT 1**

**Appendix 8**
**DEFINITIONS**

**Actual Knowledge**  Any reasonable information of Sexual Misconduct or allegations of Sexual Misconduct provided to a Title IX Coordinator, Deputy Coordinator, or any other Responsible Employee. Notice would also include personal observation of such conduct by any employee.

**Advisor**  May be any person the Complainant or Respondent chooses, or appointed by LSU should the party not select someone.  The Advisor's function shall be to support and/or consult with the party during any proceeding or meeting under this policy. The Advisor  may, but is not required to, be an attorney.  Participation  shall  be  limited  as stated herein.

The Advisor may not act as a spokesperson except:
- During a Prehearing Conference or
- During the Hearing when conducting cross-examination of a witness.

Once a party shares the identity and contact email address for their Advisor, that Advisor shall be copied on correspondence from LSU on the case in accordance with the Procedures section of this policy.  A party may change Advisors at any time but must provide notice to the Title IX Campus Coordinator or Title IX Lead Investigator.

**Confidential Advisor**  Campus designees selected by Title IX Campus Coordinators and trained in accordance with Louisiana law to provide confidential services to students regarding reporting, supportive measures, rights to report to law enforcement and other information under this policy.

**Coercion**  The use of express or implied threats, intimidation, or physical force placing an individual in fear of immediate harm or physical injury or causes a person to engage in unwelcome sexual activity. Coercion may include administering a drug, intoxicant, or other substance with intent to impair one's ability to consent prior to engaging in sexual activity.

**Complainant**  An individual who believes that they are the victim of Sexual Misconduct under this policy and notifies the Title IX Coordinator or a Responsible Employee of the incident.

**Consent**  Clear, knowing and voluntary demonstrated through mutually understandable words or actions clearly indicating willingness to engage in a specific sexual activity and any conditions on the activity. It is active, not passive, and silence, absent actions evidencing permission, is not consent.  Responsibility for obtaining consent lies with the individual initiating the sexual activity.

Consent to engage in sexual activity may be withdrawn by any person at any time.  Once withdrawal of consent is expressed, the sexual activity must immediately cease.  Consent is automatically withdrawn by a person incapable of giving consent.  A current or previous consensual intimate relationship between the parties does not itself imply consent or preclude a finding of responsibility.

20

**EXHIBIT C**

To give consent, a person must be of legal age.  Consent cannot be obtained through Coercion, fraud or from a person who the alleged offender knows or should reasonably know is incapacitated.  Use of alcohol or drugs does not diminish the responsibility to obtain consent.

**Formal Complaint**  A document filed by a Complainant or signed by the Title IX Coordinator alleging Sexual Misconduct against a Respondent and requesting LSU to investigate the allegation.  At the time of filing, a Complainant must be participating in or attempting to participate in the educational program or activity of LSU.

A Formal Complaint may be filed with the Title IX Coordinator or TIX Campus Coordinator;
- In person,
- By mail,
- By electronic mail,
- By phone, or
- By submission through designated online portals.

A Formal Complaint by a Complainant must include the individual's physical or digital signature or otherwise indicate that the Complainant is the person filing the complaint. When the Title IX Coordinator/Campus Coordinator signs a Formal Complaint, the Coordinator is not a Complainant or otherwise a party and must otherwise comply with duties of the position.

**Formal Resolution**  A process by which allegations are presented to a Hearing Panel for determination as to whether a Respondent is responsible for a violation of this policy.

**Hearing Panel**  A body assembled to hear testimony and weigh evidence resulting in a decision regarding responsibility based on the preponderance of the evidence.

**Incapacitation**  An individual is considered to be incapacitated if, by reason of mental or physical condition, the individual is manifestly unable to make a knowing and deliberate choice to engage in sexual activity. Being drunk or intoxicated can lead to incapacitation; however, drunkenness or intoxication is not necessarily the same as incapacitation. Incapacitation is a state beyond drunkenness or intoxication. Individuals who are asleep, unresponsive or unconscious are incapacitated. Other indicators that an individual may be incapacitated include, but are not limited to, inability to communicate coherently, inability to dress/undress without assistance, inability to walk or stand without assistance, slurred speech, loss of coordination, vomiting, or inability to perform other physical or cognitive tasks without assistance.

**Informal Resolution**  A process whereby the parties voluntarily work with a professional to reach a mutually agreeable resolution of the complaint without a formal hearing.

**Interim Measures**  Remedial measures taken to help deescalate and offer a short-term temporary resolution during the pendency of a resolution under this policy.

**Non-Consensual Sexual Contact**  Any intentional sexual touching, or attempted sexual touching, without consent.

**EXHIBIT C**

**EXHIBIT 1**

**Non-Consensual Sexual Intercourse**  Having or attempting to have sexual intercourse, cunnilingus, or fellatio without consent. Sexual intercourse is defined as anal or vaginal penetration by a penis, tongue, finger, or inanimate object.

**Notice**  A report of Sexual Misconduct made to the Title IX Campus Coordinator, LSU Title IX Coordinator, Deputy Coordinator or any Responsible Employee.

**Respondent**  A person reported to have engaged in actions that may constitute Sexual Misconduct.

**Responsible Employee**  Any employee given the duty of reporting actual notice of incidents of sexual violence or any other misconduct prohibited by this policy. Responsible Employees do not include victims' advocates, mental health counselors, or LSU Ombudsperson.

**Retaliation**  Any acts or attempted acts against an individual for the purpose of discouraging an individual from exercising a right or privilege under this policy or Title IX. Activities protected from retaliation include reporting Sexual Misconduct, filing a Formal Complaint, and participation in an investigation, process or Hearing, whether as a party, witness or Advisor.

Prohibited retaliatory acts include, but are not limited to, intimidation, threats, coercion, or discrimination. Complaints alleging retaliation may be filed according to the grievance procedures under this policy.

**Sexual Discrimination**  Behaviors and actions that deny or limit a person's ability to benefit from, and/or fully participate in the educational programs, activities, and services because of a person's gender or perceived gender.

**Sexual Exploitation**  Any act attempted or committed by a person for sexual gratification, financial gain, or other advancement through the abuse or exploitation of another person's sexuality. Examples of sexual exploitation include, but are not limited to, non-consensual observation of individuals who are undressed or engaging in sexual acts, non-consensual audio- or videotaping of sexual activity, prostituting another person, human trafficking, allowing others to observe a personal consensual sexual act without the knowledge or consent of all involved parties, and knowingly exposing an individual to a sexually transmitted infection without that individual's knowledge.

**Sexual Harassment**  Conduct on the basis of sex that satisfies one or more of the following:
   1. Quid Pro Quo Sexual Harassment  An employee conditioning the provision of aid, benefit or service on the Complainant's participation in unwelcome sexual conduct; or
   2. Unwelcome conduct determined by a reasonable person to be so severe, pervasive and objectively offensive that it effectively denies a person equal access to the education program or activity; or

22

**EXHIBIT C**

3. Sexual Assault
   a. **Sex Offenses, Forcible** – Any sexual act directed against another person, without the consent of the Complainant including instances where the Complainant is incapable of giving consent.
      (1) **Forcible Rape** – Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the Complainant.
      (2) **Forcible Sodomy** – Oral or anal sexual intercourse with another person, forcibly and/or against that person's will or not forcibly or against the person's will (non-consensually) in instances where the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.
      (3) **Sexual Assault With An Object** – To use an object or instrument to penetrate, however slightly, the genital or anal opening of the body of another person, forcibly and/or against that person's will or not forcibly or against the person's will (non-consensually) in instances where the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.
      (4) **Forcible Fondling** – The touching of the private body parts of another person (buttocks, groin, breasts) for the purpose of sexual gratification, forcibly and/or against that person's will (non-consensually) or not forcibly or against the person's will in instances where the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.
   b. **Sex Offenses, Nonforcible** – Nonforcible sexual intercourse.
      (1) **Incest** – Nonforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by Louisiana law.
      (2) **Statutory Rape** – Nonforcible sexual intercourse with a person who is under the statutory age of consent of Louisiana.
   c. Sexual Assault also includes sexual battery as defined in La. R.S. 14:43.1.
4. Dating Violence  Violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the Complainant. The existence of such a relationship shall be determined based on the Complainant's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. For the purposes of this definition, Dating Violence includes, but is not limited to, sexual or physical abuse or threat of such abuse.  Dating Violence does not include acts covered under the definition of Domestic Violence.
5. Domestic Violence  A felony or misdemeanor crime of violence committed:
   a. By a current or former spouse or intimate partner of the Complainant;
   b. By a person with whom the Complainant shares a child in common;
   c. By a person who is cohabiting with, or has cohabited with, the Complainant as a spouse or intimate partner;

23

**EXHIBIT C**

    d. By a person similarly situated to a spouse of the Complainant under the domestic or family violence laws of Louisiana; or

    e. By any other person against an adult or youth who is protected from that person's acts under the domestic abuse or family violence laws of Louisiana.*To categorize an incident as Domestic Violence, the relationship between the parties must be more than people living together as roommates. The people cohabitating must be current or former spouses or have an intimate relationship.

6. <u>Stalking</u> Engaging in a course of conduct directed at a specific person that would cause a reasonable person to:

    a. Fear for the person's safety or the safety of others; or

    b. Suffer substantial emotional distress.

    c. For the purposes of this definition

        (1) Course of conduct means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.

        (2) Reasonable person means a reasonable person under similar circumstances and with similar identities to the Complainant.

        (3) Substantial emotional distress means significant mental suffering or anguish that may but does not necessarily require medical or other professional treatment or counseling.

        (4) Nothing in these definitions will be interpreted in a way that violates the First Amendment rights of any individual.

**Sexual Misconduct**  A sexual act or contact of a sexual nature that occurs, regardless of personal relationship, without the consent of the other person(s), or that occurs when the person(s) is unable to give consent or whose consent is coerced or obtained in a fraudulent manner. For the purpose of this Policy, Sexual Misconduct includes, but is not limited to, sexual abuse, violence of a sexual nature, Sexual Harassment, Non-Consensual Sexual Intercourse, Sexual Exploitation, video voyeurism, or the obtaining, posting or disclosure of intimate descriptions, photos, or videos without the express consent or the persons depicted therein, as well as dating violence, domestic violence and stalking, as well as crimes of a sexual nature as defined in Title 14 of the Louisiana Revised Statutes or at La. R.S. 44:51.

**Sexually-Oriented Criminal Offense**  Any sexual assault offense as defined in La. R.S. 44:51, and any sexual abuse offense as defined in La. R.S. 14:403.

**Supportive Measures**  Non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or Respondent regardless of whether a formal complaint has been filed. Such measures are designed to restore or preserve equal access to the education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the educational environment, or deter Sexual Misconduct. Supportive measure may include, but are not limited to;

**EXHIBIT C**

**EXHIBIT 1**

- Mental of physical health services;
- Academic arrangements or adjustments;
- Modifications of work of class schedules;
- Mutual restrictions on contact between the parties;
- Changes in work, housing or academic locations;
- Leaves of absence; and/or
- Increased security and monitoring of certain areas of campus.

Supportive measures shall remain as confidential to the extent that such confidentiality would not impair the ability to provide the supportive measures.  The Title IX Campus Coordinator shall bear responsibility for coordinating the effective implementation of supportive measures.

25

**EXHIBIT C**



## PERMANENT MEMORANDUM 73

## Policy Prohibiting Sex- and Gender-Based Harassment and Discrimination, including Sexual Misconduct

Monitoring Unit: Office of Civil Rights & Title IX
Initially Issued: June 18, 2014
Last Revised: July 1, 2021

## TABLE OF CONTENTS

I.    Purpose and Commitment ........................................................................ 3

II.   Nondiscrimination Notice ........................................................................ 3

III.  Definitions ............................................................................................... 4

    A.  General Definitions ......................................................................... 4

    B.  Policy Definitions............................................................................. 6

IV.   Scope of Policy ..................................................................................... 10

V.    Procedures............................................................................................ 11

    A.  Reporting Misconduct .................................................................... 12

       1.  Mandatory Reporting ............................................................... 12

       2.  Limited Exceptions .................................................................. 13

       3.  Support for Complainant........................................................... 14

       4.  Supportive Measures................................................................ 14

       5.  Rights of Complainant and Respondent Following a Report ... 16

    B.  Complaint and Investigation........................................................... 17

       1.  Initial Response to Reports....................................................... 17

       2.  Formal Complaint Process ....................................................... 17

       3.  Advisors.................................................................................... 19

       4.  Notice and Investigation .......................................................... 19

       5.  Resignation While a Case is Pending....................................... 21

    C.  Resolutions .................................................................................... 21

1

**EXHIBIT C**

1. Informal Resolution....................................................................... 22

2. Administrative Resolution ........................................................... 23

    a. *Questioning During Administrative Resolution* ................... 24

    b. *Decision-Making*................................................................ 24

3. Formal Resolution  .................................................................... 25

    a. *Pre-Hearing Conference* .................................................... 26

    b. *Hearing Panel* ................................................................... 26

    c. *Advisors in Hearings* ......................................................... 27

    d. *Presentation of Evidence* ................................................... 27

    e. *Failure to Appear/Answer*................................................... 28

    f. *Deliberations* ..................................................................... 28

    g. *Determining Sanctions* ...................................................... 29

    h. *Possible Corrective Actions*................................................ 30

D. Appeal........................................................................................ 30

   1. Right of Appeal....................................................................... 30

   2. Appeal Procedures ................................................................ 31

VI. Additional Provisions............................................................................ 32

   A. Preemption .................................................................................. 32

   B. Record Keeping ........................................................................... 32

VII. Resources............................................................................................. 33

2

**EXHIBIT C**

**EXHIBIT 1**

## I. PURPOSE AND COMMITMENT

This Permanent Memorandum outlines the procedures for addressing and resolving allegations of sex- and gender-based harassment and discrimination, including Sexual Misconduct (e.g. sexual assault, stalking, dating violence, domestic violence, sexual exploitation, retaliation, etc.). Such procedures are required and governed by Title IX of the Education Amendments of 1972 which prohibits sex discrimination in any education program or activity receiving federal financial assistance. LSU's Title IX Coordinator[1] is responsible for administering this policy at all University locations.

Sex- and gender-based harassment and discrimination, including Sexual Misconduct, violates an individual's fundamental rights and personal dignity and will not be tolerated. LSU prohibits and is committed to an environment free of discrimination on the basis of sex, gender, and Sexual Misconduct. This policy affirms these principles and provides recourse for individuals whose rights have been violated.

LSU will affirmatively promote prevention, awareness and training programs to encourage individuals to report concerns or complaints. Everyone has a responsibility to prevent and report acts of prohibited conduct. Any LSU employee who has knowledge of sex- and gender-based harassment and discrimination, including Sexual Misconduct, must file a report with the Title IX Coordinator[2].

LSU will take prompt, thorough, and impartial action to discipline those who violate this policy, prevent recurrence of prohibited behavior, and effect equitable remedies.

## II. NONDISCRIMINATION NOTICE

LSU is committed to creating an environment of inclusion and respect among students, faculty, staff and the community at large. LSU does not discriminate on the basis of race, creed, color, marital status, sexual orientation, gender identity, gender expression, religion, sex, national or ethnic origin, age, disability, genetic information, veteran's status, or any other status or organization protected by state or federal law, in its programs and activities. This includes all aspects of LSU's education programs and activities, including admission and employment. The entire LSU community is responsible for fostering a welcome environment conducive to learning and working.

Inquiries regarding the non-discrimination policy should be directed to the individual or individuals designated in each campus's applicable policy. Inquiries about the application of Title IX or this policy may be directed to the Title IX Coordinator. Inquiries or concerns regarding Title IX may also be made to the U.S. Department of Education Office for Civil Rights; Dallas office, OCR.Dallas@ed.gov, (214) 661-9600.

---

[1] The term "LSU Title IX Coordinator" refers to the LSU A&M Coordinator, who also serves as the System Coordinator.
[2] The term "Title IX Coordinator" refers to either the LSU Title IX Coordinator, the respective Title IX Campus Coordinator, or their designee.

3

**EXHIBIT C**

**EXHIBIT 1**

This Permanent Memorandum applies to harassment and discrimination on the basis of sex, gender, gender identity, gender expression, and sexual orientation.

## III. DEFINITIONS

### A. GENERAL DEFINITIONS

**Actual Knowledge**: Any reasonable information of sex- and gender-based harassment and discrimination, including Sexual Misconduct or allegations of such provided to a Title IX Coordinator, Deputy Coordinator, or any other Mandatory Reporter. Actual Knowledge would also include personal observation by any employee of such conduct.

**Administrative Resolution:** A process by which allegations and evidence are presented to a Decision-Maker for determination as to whether a Respondent is responsible for a violation of this policy. Administrative Resolution is not used in cases where the allegation could violate Title IX, or where probable cause indicates that the Respondent found in violation faces suspension or expulsion from LSU, or termination of employment.

**Advisor**: May be any person not otherwise a party or witness to the case, selected by a party or appointed by LSU to accompany the party to meetings related to the Resolution Process, to advise the party on that process, and to conduct questioning for the party at the Hearing, if any. The Advisor may, but is not required to, be an attorney. Participation shall be limited as stated herein.

**Confidential Resource**: Those deemed confidential by law or professional ethics, or individuals explicitly selected, trained, and designated by LSU to provide confidential support to students and employees for concerns arising under this policy. Confidential Resources may also help facilitate supportive measures and assist with reporting to Title IX and/or law enforcement, if desired by the Complainant.

**Complainant:** An individual who is alleged to be the victim of conduct that could constitute sex- or gender-based harassment or discrimination under this policy.

**Dating Violence**: Violence, when on the basis of sex or gender, committed by a person who is or has been in a social relationship of a romantic or intimate nature with the Complainant. The existence of such a relationship shall be determined based on the Complainant's statement and with consideration of the length of the relationship, the type of relationship and the frequency of interaction between the persons involved in the relationship. For the purposes of this definition, Dating Violence includes, but is not limited to, sexual or physical abuse or threat of such abuse. Dating Violence does not include acts covered under the definition of Domestic Violence.

4

**EXHIBIT C**

**EXHIBIT 1**

**Decision-Maker**: A trained individual who reviews all relevant and directly related evidence including the investigation report and makes a decision regarding responsibility based on preponderance of the evidence as well as any applicable sanctions. A Decision-Maker is used during the Administrative Resolution Process.

**Determination Letter**: A letter provided by the Hearing Panel to the parties and their Advisors at the conclusion of the Formal Resolution Process. This letter summarizes the allegations and applicable policies, the investigation, and the findings and sanctions of the panel.

**Formal Complaint**: A document filed by a Complainant or signed by the Title IX Coordinator alleging sex- or gender-based harassment or discrimination (including Sexual Misconduct) against one or more Respondents, and requesting LSU to investigate the allegation.

**Formal Resolution**: A process by which allegations and evidence are presented in a live hearing to a Hearing Panel for determination as to whether a Respondent is responsible for a violation of this policy.

**Hearing Panel**: A body of three trained individuals assembled to hear testimony and weigh evidence resulting in a decision regarding responsibility based on the preponderance of the evidence.

**Incident Report:** Initial report alleging sex- or gender-based harassment or discrimination. An Incident Report does not, by itself, trigger an investigation.

**Informal Resolution**: A process whereby the parties voluntarily work with a professional to reach a mutually agreeable resolution of the complaint.

**Interim Measures**: Remedial measures taken to help deescalate and offer a short-term temporary resolution during the pendency of a resolution under this policy.

**Mandatory Reporter**: Any employee given the duty of reporting actual notice of incidents of sexual violence or any other misconduct prohibited by this policy. All LSU employees are considered Mandatory Reporters with a few notable exceptions which are identified in this policy.

**Notice**: A report of sex- or gender-based discrimination or harassment, including Sexual Misconduct, made to the Title IX Coordinator, Deputy Coordinator or any Mandatory Reporter.

**Resolution Process Pool:** A pool of trained LSU officials who can serve in any of the following roles at the direction of a Title IX Coordinator: Investigator, Hearing Panelist, Hearing Panel Chair, Appeals Reviewer, or as Advisor for the Complainant or the Respondent. Pool members cannot serve in more than one role for a given case.

**EXHIBIT C**

**EXHIBIT 1**

**Respondent:** A person alleged to have engaged in actions that could constitute sex- or gender-based harassment or discrimination, including Sexual Misconduct, under this policy.

**Title IX Coordinator:** Individual designated by the University to be responsible for responding to all complaints of possible sex- or gender-based harassment or discrimination and to coordinate appropriate responses to such complaints. All references to Title IX Coordinator in this document include Title IX Coordinator or designee.

## B. POLICY DEFINITIONS

**Coercion**: The use of unreasonable express or implied threats, intimidation, or physical force placing an individual in fear of immediate harm or physical injury or causes a person to engage in unwelcome sexual activity. Coercion may include administering a drug, intoxicant or other substance with the intent to incapacitate prior to engaging in sexual activity.

**Consent**: Clear, knowing, and voluntary permission demonstrated through mutually understandable words or actions clearly indicating willingness to engage in a specific sexual activity and any conditions on the activity. It is active, not passive; and silence, absent actions evidencing permission, is not consent. Responsibility for obtaining consent lies with the individual initiating the sexual activity.

Consent to engage in sexual activity may be withdrawn by any person at any time, as long as the withdrawal is reasonably and clearly communicated.  Once withdrawal of consent is expressed, the sexual activity must immediately cease. Consent is automatically withdrawn by a person who, during the activity, becomes incapacitated.  A current or previous consensual intimate relationship between the parties does not itself imply consent or preclude a finding of responsibility.

To give consent, a person must be of legal age.  Consent cannot be obtained through coercion, fraud, or from a person whom the alleged offender knows or should reasonably know is incapacitated. Use of alcohol or drugs does not diminish the responsibility to obtain consent.

**Domestic Violence**: A felony or misdemeanor crime of violence, when on the basis of sex or gender, committed by a current or former spouse or intimate partner of the Complainant; a person with whom the Complainant shares a child in common; a person who is cohabitating with, or has cohabitated with, the Complainant as a spouse or intimate partner; a person similarly situated to a spouse of the Complainant under the domestic or family violence laws of Louisiana; or by any other person against an adult or youth who is protected from that person's acts under the domestic abuse or family violence laws of Louisiana.

6

**EXHIBIT C**

**EXHIBIT 1**

*\*To categorize an incident as Domestic Violence, the relationship between the parties must be more than people living together as roommates. The people cohabitating must be current or former spouses or have an intimate relationship.*

**Hazing**: Acts likely to cause physical or psychological harm or social ostracism to any person within the LSU community when related to the admission, initiation, pledging, joining, or any other group-affiliation activity. Hazing falls under this policy when based either in whole or in-part on sex- or gender-based harassment and discrimination.

**Hostile Environment Harassment**: Unwelcome conduct, determined by a reasonable person, to be so severe, pervasive, and objectively offensive, that it effectively denies a person equal access to an education program or activity.

**Incapacitation**: An individual is considered to be incapacitated if, by reason of mental or physical condition, the individual is manifestly unable to make a knowing and deliberate choice to engage in sexual activity. Being drunk or intoxicated can lead to incapacitation; however, drunkenness or intoxication is not necessarily the same as incapacitation. Incapacitation is a state beyond drunkenness or intoxication. Individuals who are asleep, unresponsive, or unconscious are incapacitated. Other indicators that an individual may be incapacitated include, but are not limited to, inability to communicate coherently, inability to dress/undress without assistance, inability to walk or stand without assistance, slurred speech, loss of coordination, vomiting, or inability to perform other physical or cognitive tasks without assistance.

**Intimidation**: Implied threats or acts that cause an unreasonable fear of harm in another.

**Power-based Violence**: Any form of interpersonal violence intended to control or intimidate another person through the assertion of power of the person, including but not limited to dating violence, domestic violence, sexual assault, sexual harassment, and stalking.

**Quid Pro Quo Sexual Harassment:** An employee conditioning the provision of aid, benefit, or service on the Complainant's participation in unwelcome sexual conduct.

**Retaliation**: Any acts against an individual for the purpose of interfering with or discouraging an individual from exercising a right or privilege under this policy. Activities protected from retaliation include reporting sex- or gender-based harassment and discrimination; filing a Formal Complaint; and participation in an investigation, process or Hearing, whether as a party, witness, Hearing Panel member, appeals officer, or Advisor. Prohibited retaliatory acts include, but are not limited to, intimidation, threats, coercion or discrimination.

**EXHIBIT C**

EXHIBIT 1

**Sex and Gender Discrimination**: Behaviors and actions that deny or limit a person's ability to benefit from, and/or fully participate in the educational programs, activities and services because of a person's actual or perceived sex or gender.

**Sexual Assault**: Sexual contact or penetration without consent

    a. **Sex Offenses, Forcible**: Any sexual act directed against another person, without the consent of the Complainant including instances where the Complainant is incapable of giving consent.

        i. **Forcible Rape**: Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the Complainant.

        ii. **Forcible Sodomy**: Oral or anal sexual intercourse with another person, forcibly and/or against that person's will, or not forcibly or against the person's will (non-consensually) in instances where the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

        iii. **Sexual Assault With An Object:** To use an object or instrument to penetrate, however slightly, the genital or anal opening of the body of another person, forcibly and/or against that person's will, or not forcibly or against the person's will (non-consensually) in instances where the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

        iv. **Forcible Fondling**: The touching of the private body parts of another person (buttocks, groin, breasts) for the purpose of sexual gratification, forcibly and/or against that person's will (non-consensually), or not forcibly or against the person's will in instances where the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

    b. **Sex Offenses, Non-forcible**: Non-forcible sexual intercourse.

        i. **Incest** – Non-forcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by Louisiana law.

        ii. **Statutory Rape** – Non-forcible sexual intercourse with a person who is under the statutory age of consent of Louisiana.

    c. Sexual Assault also includes sexual battery as defined in La. R.S. 14:43.1.

**Sexual Exploitation:** An individual taking non-consensual or abusive sexual advantage of another for their own benefit or for the benefit of anyone other than the person being exploited, and that conduct does not otherwise constitute sexual harassment under this policy. Examples of sexual exploitation include, but are not limited to, non-consensual observation of individuals who are undressed or engaging in sexual acts, non-consensual audio- or videotaping of sexual activity,

8

EXHIBIT C

**EXHIBIT 1**

prostituting another person, human trafficking, allowing others to observe a personal consensual sexual act without the knowledge or consent of all involved parties, and knowingly exposing an individual to a sexually transmitted infection without that individual's knowledge.

**Sexual Harassment**: Conduct on the basis of sex or gender that satisfies one or more of the following:

      a.  Quid pro Quo Harassment;
      b.  Hostile Environment Harassment; or
      c.  Retaliation.

**Sexual Misconduct**: A sexual act or contact of a sexual nature that occurs, regardless of personal relationship, without the consent of the other person(s), or that occurs when the person(s) is unable to give consent or whose consent is coerced or obtained in a fraudulent manner. Examples include but are not limited to threatening or causing physical harm; extreme verbal, emotional, or psychological abuse; or other conduct which threatens or endangers the health or safety of any parson. For the purpose of this Policy, Sexual Misconduct includes, but is not limited to, sexual abuse, violence of a sexual nature, Sexual Harassment, Sexual Assault, Sexual Exploitation, as well as Dating Violence, Domestic Violence and Stalking when on the basis of sex or gender, as well as crimes of a sexual nature as defined in Title 14 of the Louisiana Revised Statutes or at La. R.S. 44:51.

**Sexually-Oriented Criminal Offense**: Any sexual assault offense as defined in La. R.S. 44:51, and any sexual abuse offense as defined in La. R.S. 14:403.

**Sexual Orientation Discrimination**: Behaviors and actions that deny or limit a person's ability to benefit from, and/or fully participate in the educational programs, activities, and services because of a person's actual or perceived sexual orientation.

**Stalking**: Engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for the person's safety or the safety of others or suffer substantial emotional distress.
    For the purposes of this definition:
      a.  Course of conduct means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.
      b.  Reasonable person means a reasonable person under similar circumstances and with similar identities to the Complainant.
      c.  Substantial emotional distress means significant mental suffering or anguish that may but does not necessarily require medical or other

9

**EXHIBIT C**

**EXHIBIT 1**

        professional treatment or counseling.

    d. Nothing in these definitions will be interpreted in a way that violates the First Amendment rights of any individual.


## IV. SCOPE OF POLICY

This policy applies to all members of the University community, including faculty, staff, students, volunteers, organizations, and any other affiliate that participates in activities associated with LSU.

Title IX law applies to educational institutions and specifically covers sexual misconduct under a limited set of circumstances. Title IX has jurisdiction over conduct that occurs:

    a. Where the Complainant is an LSU student, or an LSU employee acting within their job responsibilities;

    b. Where LSU exercised substantial control over the Respondent in the context of where or how the alleged incident occurred;

    c. In the course of LSU's operations;

    d. On an LSU campus or any other University owned, leased, controlled or operated location;

    e. Within the bounds of the United States; and

    f. At any LSU sponsored event or organizational activity in the United States whether on or off campus.

Sex- or gender-based harassment and discrimination have broad jurisdiction that includes all Title IX allegations, but also many more allegations that involve possible sex- or gender-based harassment or discrimination that do not rise to the level of a Title IX violation. If the sex- or gender-based harassment or discrimination does not meet Title IX jurisdictional requirements, then the allegation is "dismissed" as a Title IX case. The case still may be considered for possible investigation and resolution under this policy or the applicable student code of conduct, employee policies, or other relevant policy or procedure. (i.e. non-sex or gender-based misconduct). Such cases include, but are not limited to:

    a. Sex- or gender-based harassment or discrimination that does not meet the required definitions under Title IX;

    b. Off-campus or online conduct, social media or other electronic media/communication where:

        i. The University deems that the off-campus sexual misconduct effectively deprives someone access to LSU's educational programs or employment;

        ii. The Title IX Coordinator, in their discretion, exercises jurisdiction, such as when the Sexual Misconduct may affect the safety or well-being of the LSU community

10

**EXHIBIT C**

**EXHIBIT 1**

Further, even when the Respondent is not a member of the LSU community, supportive measures, remedies, and resources may be available to the Complainant by contacting the Title IX Coordinator.

Students are responsible for their conduct from notice of admission through the awarding of a degree or departure from the University.  Employees are covered by this policy when representing LSU (or deemed to be a representative of LSU) whether before, during, or after work.  This policy also applies to any person who is both a student and an employee at LSU.

This policy may also address any alleged misconduct (e.g.: student code of conduct, employee code of conduct, etc.) that is ancillary to or concurrent with alleged violations of this policy. Officials in the Resolution Process may consult with relevant departments (e.g.: HR, Student Affairs, Academic Affairs, etc.) regarding the ancillary or concurrent misconduct to help ensure greater uniformity in addressing such conduct.

This policy is not intended to infringe on or restrict rights guaranteed by the United States Constitution including free speech under the First Amendment, due processes clauses of the Fifth and Fourteenth Amendments and the Fourth Amendment. Additionally, this policy is not meant to inhibit or prohibit educational content or discussions inside or outside of the classroom that include germane, but controversial or sensitive, subject matter protected by academic freedom.


## V. PROCEDURES

Addressing allegations of sex- or gender-based harassment and discrimination is a necessarily detailed process committed to a fair and impartial resolution. In the sections below, the process is largely outlined in chronological order of reporting, supportive measures, investigating, options for resolution and appeal. The LSU Title IX Coordinator will aid in administering the process and serve as a consultant on cases involving Sexual Misconduct on all LSU campuses. Individual campuses are encouraged to adopt a Policy Statement to support this Permanent Memorandum by providing more explicit information at the local level.

### Amnesty Policy

LSU encourages reporting and seeks to remove barriers in reporting of sex- or gender-based harassment or discrimination, including sexual misconduct. A student Complainant and/or witness who, in good faith, reports an alleged violation of this policy and/or serves as a witness, shall not be sanctioned for concurrent or ancillary nonviolent student conduct violations, such as underage drinking, provided such violation did not place the health and safety of any other person at significant risk of harm. Additionally, LSU may, at the Title IX Coordinator's discretion, offer employee Complainants and witnesses

11

**EXHIBIT C**

amnesty from policy violations (typically more minor policy violations) related to the incident.

**LSU Title IX Coordinator and Title IX Campus Coordinators**

The LSU Title IX Coordinator serves as the Title IX Campus Coordinator for the LSU A&M campus and is responsible for administering this policy at all University locations. The LSU Title IX Coordinator can be contacted at:

LSU Title IX Coordinator
118 Himes Hall
Baton Rouge, LA 70803
titleix@lsu.edu
Phone: 225-578-9000
Fax: 225-578-4442

Each campus has a designated Title IX Campus Coordinator who serves as the local responder to complaints of Sexual Misconduct on individual campuses and is responsible for managing intake, providing supportive measures, convening Hearing Panels, and implementing sanctions. The Campus Coordinator works closely with the LSU Title IX Coordinator throughout the process. A listing of Title IX Campus Coordinators can be found here: https://www.lsu.edu/civil-rights/about/contact-us.php

## A. REPORTING MISCONDUCT

### 1. Mandatory Reporting

All employees, with few exceptions, are **required** to report instances of sex- or gender-based harassment and discrimination, including Sexual Misconduct and power-based violence (e.g. sexual assault, stalking, dating violence, domestic violence, sexual exploitation, retaliation, etc.) for which they are not the victim, but of which they are aware. The term "employee" includes students working in a position such as a teaching assistant or a residential advisor. An employee who fails to promptly make the report without good cause or, with the intent to harm or deceive, knowingly makes a report that is false, **shall be terminated.** Reports **must** be made to Title IX Coordinator. Reports to the Title IX Coordinator can be made in person, via phone, online, or email. A link to each campus' Title IX page may be found on the LSU Title IX page at https://www.lsu.edu/titleix/

Anyone subjected to sex- or gender-based harassment or discrimination is encouraged to file a complaint with the Title IX office. Any individual who has experienced sex- or gender-based harassment or discrimination or Sexual Misconduct is also urged to utilize supportive measures available through the University whether or not the person who caused the harm is a

**EXHIBIT C**

University community member.  Supportive measures are available whether or not a Formal Complaint is filed.

**2. Limited Exceptions**

There are limited exceptions to the reporting requirement. These exceptions represent LSU's commitment to providing victims and survivors of power-based trauma with confidential support and resources needed to address their needs. Employees who do not have to report power-based trauma to the Title IX Coordinator:

1. The following are confidential by reason of law:
   a. Mental health counselors acting within the scope of their licensure at the time of the report;
   b. Staff operating in a Student Health Center capacity at the time of the report;
   c. Staff providing services through a psychological services or other HIPPA protected center acting within the scope of their licensure at the time of the report;
   d. Clergy acting within the scope of their credentials at the time of the report.

2. Campuses may designate others as Confidential Resources so long as they receive annual training and are specifically listed on the campus's webpage.

*Note, these confidential sources must still report non-identifiable data consistent with the Clery Act's requirements.*

3. The following are exceptions to the Mandatory Reporter reporting requirement:

   a. Information disclosed at public awareness events (e.g.: Take Back the Night, candlelight vigils, protests, speak outs), or other public forums in which individuals may disclose incidents of prohibited conduct as part of educating others, or
   b. Disclosures made in the course of academic work product consistent with the assignment (ex. Public speaking class, creative writing assignment, group work)

In such cases, faculty are encouraged to contact the student to determine whether or not the student intended to report the matter to LSU to obtain supportive measures and/or to file a complaint. If so, the faculty member should report the matter to the Title IX Coordinator, in a manner consistent with this policy. In either case, the faculty member is encouraged to provide the student with the Title IX Coordinator's contact information.

13

**EXHIBIT C**

**EXHIBIT 1**

3. **Support for Complainant**

Upon notice of a possible complaint through an Incident Report, the Title IX Coordinator will provide the Complainant information on, and assistance with, reporting options including filing a Formal Complaint with LSU, and filing a criminal complaint with law enforcement (if applicable). The Title IX Coordinator will also provide the Complainant with options for other available supportive measures, including health care, counseling, academic adjustments, work adjustments, etc.

Individuals are strongly encouraged to report the offense to campus police or local law enforcement if they believe criminal conduct occurred (i.e. sexual assault, sexual battery, stalking, etc.). The Title IX Coordinator will offer to assist the individual in contacting campus or local law enforcement.

To the extent possible, the Complainant, and those who receive the complaint, should preserve evidence and not disturb a potential crime scene. (This includes preserving all text or email communications that may be related to the incident).

4. **Supportive Measures**

Supportive measures are offered to both parties upon receipt of notice of an alleged violation of this policy. It is not required that the matter be investigated for the parties to receive supportive measures. Such measures often apply while the resolution process under this policy is pending, and such measures can continue even following the conclusion of the process. LSU will implement measures in a way that does not unreasonably burden the other party.

Supportive measures are non-disciplinary, non-punitive individualized services offered as appropriate and as reasonably available. They are offered without fee or charge to the parties to restore or preserve access to LSU's education program or activity, including measures designed to protect the safety of all parties and/or LSU's educational environment, and/or to deter harassment, discrimination or retaliation.

The Title IX Coordinator shall bear responsibility for coordinating the effective implementation of supportive measures. Supportive measures are maintained as confidential to the extent possible, provided confidentiality does not impair LSU's ability to provide those supportive measures. Such supportive measures may include, but are not limited to:

   a.  Referral for counseling, medical, or other healthcare services;
   b.  Referral to campus or local advocacy programs;

14

**EXHIBIT C**

**EXHIBIT 1**

c. Referral to campus or local law enforcement;
d. Referral to community-based service providers
e. Safety Planning;
f. Implementing a no contact order, or other contact limitations;
g. Student financial aid counseling;
h. Relocating an on-campus student's housing to a difference on-campus location;
i. Changing an employee's work environment (e.g. reporting structure, office/workspace relocation);
j. Transportation accommodations;
k. Academic support, extensions of deadlines, or other course/program-related adjustments;
l. Alternative course completion options (e.g. Remote, Online, Incompletes, Withdrawals, etc.);
m. Referred for visa/immigration assistance;
n. Any other actions deemed appropriate by the Title IX Coordinator.

A Title IX Coordinator may suspend a Respondent from participating in the education program or activity on an emergency basis. Should such action be warranted, the dean, provost, and any other appropriate individuals such as the Athletic Director shall be notified in writing and informed of the limitations as well as the predicted timeline. In all cases where the Respondent has been removed from classes or participation in activities for which a scholarship has been awarded, every effort will be made to resolve the case expeditiously. The interim action shall be in effect while request for review and review are pending.

In order to determine whether an emergency removal or limitation is warranted, a Title IX Coordinator must undertake an individualized safety and risk analysis, resulting in a determination that the Respondent presents an immediate threat to the physical health or safety of any other individual arising from the allegations. Written notice of the emergency removal will be provided to the Respondent through, at a minimum, the institutional email address. The following timeline will be adhered to:

a. The Respondent shall have a right to notify the Title IX Coordinator in writing within three business days of any request to challenge the suspension or limitation;
b. The Title IX Coordinator shall provide an opportunity to meet (virtually or in person, at the discretion of the Title IX Coordinator) within three business days of receipt of notice;
c. Title IX Coordinator shall provide notice in writing of the decision within three business days after the meeting via institutional email.

15

**EXHIBIT C**

**5. Rights of Complainant and Respondent Following a Report**

The Complainant shall have the discretion and right to decide whether or when to file a Formal Complaint, report to law enforcement, and determine whether to proceed with a Formal Complaint. The Complainant also has the right to receive assistance from LSU in doing so.

The Respondent shall have the right to be presumed not responsible of all allegations until found responsible for the alleged conduct by a Hearing Panel under this policy.

The Complainant and Respondent have equal rights, including but not limited to:

   a. To be treated with dignity and respect by LSU officials;
   b. To receive a prompt, fair, and impartial process consistent with these procedures;
   c. To be offered and to receive reasonable supportive measures;
   d. To receive timely, written notice of the allegations, proceedings, processes and outcomes under this policy;
   e. To have an Advisor of their choice present at any meeting or hearing under this policy and to have that Advisor conduct cross-examination of the parties and witnesses in a hearing;
   f. To refuse to engage in informal resolution of a Formal Complaint;
   g. To present witnesses, including fact and expert witnesses, and any relevant evidence;
   h. To receive amnesty for certain student misconduct, such as drug or alcohol violations, that occurred ancillary to the complaint at hand and consistent with this policy;
   i. To not have inadmissible prior sexual history/predisposition used by the Decision-Maker;
   j. To be free from retaliation for reporting violations of this policy or cooperating with an investigation;
   k. A right to review and comment on all evidence prior to a decision being made (for Administrative Resolution and Formal Resolution);
   l. To be simultaneously informed in writing of the outcome or resolution of the complaint, any sanctions, and the rationale for the outcome, any appeal, or any other decision considered final;
   m. To exercise a right of appeal as afforded in this policy.


Additionally, parties participating in a Formal Resolution also have the following rights:

   a. The right to review and comment on all relevant and directly related

16

**EXHIBIT C**

EXHIBIT 1

evidence at least 10 days prior to completion of the final investigation report;

b. The right to review and comment on the final investigation report (if applicable) at least 10 days prior to a decision;

c. The right to be present for the entire hearing, whether in person or via video technology.

## B. COMPLAINT AND INVESTIGATION

In order for an investigation into a complaint of sex- or gender-based harassment and discrimination to occur, the Complainant, or under certain circumstances the Title IX Coordinator, must file a Formal Complaint. This is a step beyond an Incident Report, which is the first notification to the Title IX office that a possible violation occurred. The Incident Report does not trigger an investigation. The Formal Complaint will be reviewed and a determination made as to whether the offense meets the criteria to be considered as a Title IX complaint. If it does, a Title IX investigation will proceed. If it does not, the allegation may be investigated under the student Code of Conduct or other employee policies. Below is a detailed explanation of the process.

### 1. Initial Response to Reports

Upon Actual Knowledge of a report of sex- or gender-based harassment and discrimination, including Sexual Misconduct through an Incident Report, the Title IX Coordinator will promptly contact the Complainant to discuss the following:

a. The availability of supportive measures regardless of whether a Formal Complaint is filed;

b. The process for filing a Formal Complaint;

c. The right to have an Advisor of their choice;

d. The right to file a complaint with law enforcement, if the conduct alleged is criminal in nature, and to be assisted in doing so.

If the Title IX Coordinator has cause to believe that, as a result of the incident, there is reason to believe the safety of any person is in imminent danger, the Title IX Coordinator must immediately inform the Chancellor of the campus.

### 2. Formal Complaint Process

The Formal Complaint Process commences with the filing of a Formal Complaint by a Complainant or signed by a Title IX Coordinator alleging sex- or gender-based harassment or discrimination, including Sexual Misconduct, against one or more Respondents and requesting LSU to investigate the allegation. A Formal Complaint may be filed with the Title IX

17

**EXHIBIT C**

EXHIBIT 1

Coordinator in person, by mail, electronic mail, or submission through designated online portals.

A Complainant may file a Formal Complaint with a Title IX Coordinator at any time; there is no time limitation on doing so.  A Formal Complaint must be submitted by the Complainant and include the following components:

   a. Facts alleging prohibited conduct under this policy;
   b. A signature (electronic or handwritten) or other designation that the Complainant is the individual choosing to file a Formal Complaint;
   c. Some allegation or evidence the conduct occurred at a location or event covered by this policy; and
   d. A statement that the Complainant is a student, employee, or other person seeking to participate in a program or activity of the university.

The Title IX Coordinator will assess whether all necessary components are present in the complaint; whether the allegation, if true, would be a violation of Title IX and/or other applicable code of conduct or policies related to sex or gender discrimination; and whether the complaint falls within the Title IX jurisdiction. The Title IX Coordinator will make the decision to either begin a Title IX investigation, dismiss the Title IX complaint but begin an investigation outside of Title IX, or dismiss the complaint as a whole.

If the Formal Complaint warrants dismissal under Title IX because it does not meet the Title IX threshold under this policy, the Complainant will be notified in writing by the Title IX Coordinator, typically within five business days of filing.

Other discretionary reasons for dismissal may include withdrawal of complaint; at the time of complaint, the Complainant is no longer participating or attempting to participate as part of the LSU community; or Respondent is no longer affiliated with LSU.

A Formal Complaint under this policy may be consolidated with other complaints when there are multiple allegations of conduct that arise out of the same facts or circumstances, such as when there are multiple Complainants or Respondents. This policy may also address any alleged misconduct (e.g. student code of conduct, employee code of conduct, etc.) that is ancillary to or concurrent with alleged violations of this policy.

In very limited circumstances, a Title IX Coordinator may file a Formal Complaint when the Complainant decides not to do so if it is determined that the allegations present a risk of substantial harm to community member(s). This may include, but is not limited to, use of threats; use of weapons; use of violence; a continued pattern of behavior; and/or predatory behavior. If

18

EXHIBIT C

EXHIBIT 1

the Respondent is an employee, LSU may also be required to act on alleged misconduct irrespective of a Complainant's wishes.

### 3. Advisors

Each party is permitted to have an advisor of their choice present with them in all meetings and proceedings under this policy. The Advisor may be, but is not required to be, an attorney. The Advisor may not answer questions on behalf of their advisee. They also cannot act as a spokesperson except during a Prehearing Conference or the Hearing when conducting cross-examination of a party or a witness.

Once a party shares the identity and contact email address for their Advisor, that Advisor shall be copied on correspondence from LSU on the case in accordance with the Procedures section of this policy.  A party may change Advisors at any time but must provide prompt notice to the Title IX Coordinator and/or the Title IX Investigator.

### 4. Notice and Investigation

Upon determining that an investigation is warranted under this policy, the Title IX Coordinator will appoint the trained Investigator(s). When an investigation commences the Respondent, the Complainant, and their Advisors shall be sent a detailed, written Notice of the Investigation and Allegation (NOIA). including, at a minimum, the following:

    a. As summary of the allegation with reasonable specificity;
    b. The identity of the parties (if known);
    c. The specific policies implicated;
    d. The date and location of the incident (if known);
    e. The right for the parties to have an Advisor of their choice, who may be – but is not required to be – an attorney, present for all resolution-related proceedings, and that LSU can help appoint an Advisor, if desired by the party.
    f. A statement that LSU presumes the Respondent is not responsible of all allegations until found responsible for the alleged conduct by a hearing panel under this policy;
    g. A statement that the parties may inspect and review evidence, including the investigation report, consistent with these procedures, prior to a decision being made;
    h. A statement about LSU's policy on retaliation;
    i. A statement indicating that LSU policy prohibits knowingly false statements or knowingly submitting false information during the resolution process;
    j. A request to meet with the Title IX Investigator;
    k. An indication that the resolution process complies with Title IX's

19

EXHIBIT C

Regulations contained in Section 106.45 of 20 U.S.C. 1681;

l.  The notice of investigation and allegations may be amended during the course of the investigation, and that any amendments will be promptly communicated to the parties.

The Investigator will make a good faith effort to conduct a thorough, prompt, and impartial investigation based on the facts and circumstances of each complaint within 45 days of the receipt of the Formal Complaint. This timeframe may expand or contract based on factors such as the complexity or severity of the allegation, as well as the involvement of external parties (e.g. law enforcement). Complex or consolidated investigations may take longer.

LSU will comply with law enforcement requests for cooperation and such cooperation may require LSU to temporarily suspend the fact-finding aspect of an investigation under this policy while the law enforcement agency is in the process of gathering evidence. LSU will promptly resume its investigation as soon as notified by law enforcement that it has completed the initial evidence gathering process. LSU may provide up to 10 business days to allow for the law enforcement agency criminal process/investigation to unfold prior to resuming the fact-finding aspect of the investigation under this policy.

To maintain safety, to limit the impact of alleged misconduct, and to avoid any instance of retaliation, LSU will implement appropriate interim actions and supportive measures to the parties in the case, as well as the campus community during the law enforcement agency's investigation.

The investigation shall include meetings with the parties involved, including witnesses and any other parties the Investigator may deem appropriate. All investigation interviews will be recorded by the Investigator and no unauthorized recordings are permitted. The Respondent and Complainant will be given the opportunity to identify witnesses and request that they be interviewed. An attempt will be made to interview all available, relevant witnesses with follow-up interviews conducted as necessary.

The Investigator may seek and collect, and parties may submit, any documents or other relevant information, including, but not limited to:

a. Photographs
b. Emails or text messages
c. Video or audio recordings
d. Information from social media
e. Screenshots or other communications

20

**EXHIBIT C**

At the conclusion of the investigation, the Investigator shall prepare a comprehensive draft investigative report that summarizes the investigation, and all relevant evidence obtained. The draft report shall be sent electronically to each party and the party's Advisor, if identified. All evidence shall be included, even that on which the university does not intend to rely in reaching a determination regarding responsibility and shall include inculpatory and exculpatory evidence whether obtained from a party or other source.

The parties shall have 10 business days, from the date the draft report and the evidence are submitted to the parties, to review and submit a written response. All reasonably available evidence to be presented by the parties at the hearing must be submitted to the Investigator prior to completion of the final investigative report.  The Investigator will review the comments and prepare a final report, incorporating as deemed necessary any relevant feedback.

The final investigative report shall include a description of procedural steps taken from receipt of the formal complaint up to the decision, a timeline of the alleged incident(s) and facts and circumstances surrounding the complaint. The report will fairly summarize relevant evidence, but all evidence shall be included, even that on which LSU does not intend to rely in reaching a determination regarding responsibility. This includes inculpatory and exculpatory evidence whether obtained from a party or other source. The investigative report will not make any recommendation or decision about whether a violation occurred, nor make any formal assessment of credibility. The final report will be sent electronically, along with all evidence, to each party and Advisor, if identified, and to the Decision-Maker or Hearing Panel Chair.

### 5. Resignation While a Case is Pending

If a student permanently resigns from LSU or an employee resigns or retires from LSU while a case is pending, the Title IX Coordinator will have the discretion to continue the investigation to the extent possible. The employee also will not be eligible for rehire. In either case, LSU will, continue to address and remedy any systemic issues or concerns that contributed to the alleged violation, and provide supportive measures to the Complainant and others, as deemed necessary or appropriate by the Title IX Coordinator.

## C. RESOLUTIONS

This policy has three options for resolution following the filing of a Formal Complaint: Informal Resolution, Administrative Resolution, and Formal Resolution.

Informal Resolution is a voluntary process intended to provide parties the

21

**EXHIBIT C**

opportunity to mutually control the outcome, and is most often used in lower-level cases of sex-or gender-based harassment or discrimination. Informal Resolution can be used at any time during the resolution process.

Administrative Resolution involves a thorough and impartial investigation, a review of all evidence and the investigation report by the parties, and an impartial Decision-Maker who reviews all evidence, the investigation report, and poses written questions to the parties in writing prior to making a decision.

Formal Resolution is used for Title IX cases, as well as any case where suspension, expulsion, or termination is possible. Formal Resolution involves a thorough and impartial investigation, a review of all evidence and the investigation report by the parties, a live hearing before an impartial panel of three individuals, and a decision by those decision-makers.

The parties may also appeal any decision from the Administrative or Formal Resolution processes.

**Resolution Process Pool**

The University will ensure there is an adequate pool of willing and trained members who are available year round to serve in the pool. Members can be faculty, administrators, staff, or students who are recruited or selected because of their ability to remain neutral and open-minded. Members of the pool will serve three-year rotating terms and must participate in bi-annual training provided by the Office of Civil Rights & Title IX. Training will ensure all pool members are equipped to serve as Investigator, Hearing Panelist, Hearing Panel Chair, Appeals Reviewer, or as Advisor for the Complainant or the Respondent, but cannot serve in more than one role for a given case. The Title IX Coordinator or designee will assign roles for cases that present themselves.

1. **Informal Resolution**

   Informal Resolution is a process whereby the parties work with a professional to reach a resolution of the complaint without a decision by a Decision-Maker or a Hearing Panel regarding whether a policy is violated. This process is completely voluntary and requires the consent of both parties.  A party may terminate the informal resolution process at any time before conclusion. Informal Resolution can include approaches such as mediation, Restorative Justice, Alternative Dispute Resolution, or other agreements between the parties. Informal Resolution does not use an investigation, calling of witnesses, or a report of findings with sanctions. The parties themselves create an outcome that resolves the complaint.

   The LSU Title IX Coordinator, in consultation with the applicable Title IX Campus Coordinator, must determine that the circumstances and parties

22

**EXHIBIT C**

**EXHIBIT 1**

are appropriate for informal resolution and shall appoint a trained individual to facilitate the process. Complaints classified as sexual assault, or involving violence resulting in significant harm (e.g.: domestic violence, dating violence, etc.) to others are not appropriate for informal resolution.

Informal Resolution will never be required as a condition of enrollment or continuing enrollment, employment or continuing employment or enjoyment of any other right; require a waiver of right to investigation and adjudication under the Formal Resolution process; nor be utilized to resolve an allegation against a Respondent employee by a student Complainant.

If a Formal Complaint is resolved through Informal Resolution, a written agreement shall be issued including any terms, obligations or outcomes. Agreements will be drafted by the informal process facilitator, and must have the approval of the Complainant and Respondent. The Agreement shall be promptly shared electronically with the parties by the Title IX Coordinator.

Discussion and information generated during the Informal Resolution process are considered confidential and shall not be used or admissible in the Formal Resolution process. Institutionally-imposed sanctions are not possible as the result of the Informal Resolution process. At the discretion of the Title IX Coordinator, however, a failure of the parties to uphold certain elements of the agreement may warrant referral for discipline. No facilitator of an informal process may be called as a witness in any procedure under this policy. The results of Informal Resolution are not subject to appeal.

**2. Administrative Resolution**

The Administrative Resolution process is the procedure by which allegations in a Formal Complaint that do not rise to the level of requiring a Formal Hearing under these policies are addressed, but for which Informal Resolution is either inappropriate, or where one or both parties chose not to use Informal Resolution. The Administrative Resolution includes an investigation into the allegations and a single Decision-Maker who will determine the findings and sanctions.

The determination as to whether or not an Administrative Resolution is appropriate is made by the Title IX Coordinator, and must account not just for the nature and severity of the alleged violation, but also for the disciplinary history of the Respondent. Cases appropriate for Formal Resolution are not able to use the Administrative Resolution process unless the Respondent has accepted responsibility for all allegations. Administrative Resolution will never be used unless a Formal Complaint is filed.

23

**EXHIBIT C**

**EXHIBIT 1**

The investigation for Administrative Resolution follows the procedures set forth in Section B of this policy.

  a. <u>Questioning During Administrative Resolution</u>

At the conclusion of the investigation, but prior to dissemination of the final investigation report, the Title IX Coordinator will appoint a trained, impartial person – typically from the Resolution Process Pool or from the Administrative Law Judges from the Louisiana Department of Administrative Law – to serve as Decision-Maker in the case. The final report will then be sent to the Decision-Maker, the parties, and their Advisors. Upon receipt of the final report, the Decision-Maker will contact the parties and their Advisors and offer them the opportunity to provide a list of questions, if desired, that the party would like asked of the other party and the witnesses. These questions must be submitted within five business days following the Decision-Maker's outreach. Upon receipt of such questions, the Decision-Maker will determine the relevance of each question and ask the relevant questions of the other party and the witnesses. The Decision-Maker can also ask their own questions of the parties and the witnesses.

This questioning – both from the parties and by the Decision-Maker – is done in writing. This is not a formal, in-person hearing, rather a decision by a trained Decision-Maker.

  b. <u>Decision-Making</u>

Once the Decision-Maker, the parties and their Advisors have received a copy of the final investigation report, the Decision-Maker will review the investigation report, as well as all relevant evidence, the parties' additional statements, and responses to the draft investigation report. The Decision-Maker will then apply the preponderance of the evidence standard when determining responsibility. In order to find a Respondent responsible under the preponderance of the evidence standard, the evidence must show that the charge is more likely supported than not. If the Respondent is found responsible, the Decision-Maker may request input from the parties to evaluate possible sanctions. The Decision-Maker may also request input from relevant LSU officials in determining the appropriate sanctions (e.g.: HR, Student Affairs, etc.). Prior conduct history of the Respondent will also be considered when determining an appropriate sanction.

The Decision-Maker will notify the parties and Advisors of any sanction imposed.  The Decision-Maker will prepare and provide to the Title IX Coordinator, typically within 10 business days of receiving the final investigation report, a written determination which will include:

  a. Identification of the allegations constituting a violation of this policy;

24

**EXHIBIT C**

**EXHIBIT 1**

b.  A description of the procedural steps taken from receipt of the Formal Complaint through determination, including any notifications to the parties, interviews with parties and witnesses, evidence gathered and hearings held;
c.  Findings of fact supporting the determination;
d.  Conclusions regarding the application of the policy to the facts;
e.  A statement explaining the sanction for each policy violation found "responsible;"
f.  Whether additional remedies designed to restore or preserve equal access will be provided by LSU to the Complainant.

The Title IX Coordinator is responsible for effective implementation of any sanctions and sharing of outcomes. The written determination prepared by the Decision-Maker shall be simultaneously shared electronically by the Title IX Coordinator with the parties and Advisors.

Either party can file an appeal as is described in Section D below. The determination regarding responsibility and sanctions becomes final either:
a.  If appealed, the date written notice is provided to the parties of the appeal result, or
b.  If not appealed, the date on which an appeal would no longer be considered timely.

With limited exceptions, sanctions from the Administrative Resolution process are not implemented until the conclusion of the appeals process.

**3.  Formal Resolution**

The Formal Resolution process is the procedure by which allegations in a Formal Complaint are presented in a formal PM 73 Hearing for a determination as to whether any of the policies within PM 73: LSU's Sex- and Gender-based Harassment or Discrimination, were violated.

The determination as to whether or not a matter rises to the level of a Formal Resolution is made by a Title IX Coordinator, and must account not just for the nature and severity of the alleged violation but also for the disciplinary history of the Respondent.  Formal Resolution is used where the allegation either constitutes a possible violation of Title IX (as defined in this policy), or where probable cause indicates that an allegation, if true, could reasonably result in suspension, expulsion, or termination of the Respondent.

The Investigation for Formal Resolution follows the procedures set forth in Section B of this policy.

25

**EXHIBIT C**

**EXHIBIT 1**

A minimum of 10 business days must pass once the final investigative report has been disseminated before the Hearing takes place. During this time, the Title IX Coordinator will secure members and name the chair of the Hearing Panel and ensure both parties have an Advisor who will be present during the Hearing Panel. At their discretion, the Hearing Panel Chair may, for good cause, issue one delay in the hearing of no more than 10 business days.

a. <u>Pre-Hearing Conference</u>

A Pre-Hearing conference shall be coordinated by the Title IX Coordinator, or designee, and chaired by the Hearing Panel Chair. Parties and Advisors are encouraged, but not required, to be present. Pre-Conference hearings may be conducted in person, via video technology, or a hybrid approach depending on the wishes of the parties and the Hearing Panel Chair.

This conference shall be conducted at least two business days prior to a scheduled Hearing Panel. Pre-Hearing Conferences are not recorded.

The purpose of the pre-hearing conference shall be to:

a. Identify the panelists and address any objections to members of the Hearing Panel;
b. Address evidentiary issues or questions to be posed at the hearing (i.e. numbers of witnesses, use of documents, relevance of evidence, expected length of hearing, etc.);
c. Ensure parties have Advisors available to conduct cross examination and that the Advisor is familiar with the hearing process under this policy;
d. Provide a forum to address any questions related to the Hearing Panel process and procedures.

b. <u>Hearing Panel</u>

The PM 73 Hearing Panel is appointed by the Title IX Coordinator and shall consist of one chair and two other individuals trained in adjudication. Hearing Panel chairs and members are typically selected from the trained Resolution Process Pool, or from the trained group of Administrative Law Judges, but the Title IX Coordinator may go outside of that group as long as the individuals have received appropriate training. The Hearing Panel shall afford each party an opportunity to present evidence and for their Advisor to question opposing parties and witnesses.

Hearings may be conducted in person, via video technology, or a hybrid approach depending on the wishes of the parties and the Hearing Panel Chair.

26

**EXHIBIT C**

EXHIBIT 1

c.  Advisors in Hearings

Each party is permitted to have an Advisor present with them throughout the Hearing.  The Advisor may not answer questions on behalf of their advisee, and their role in the hearing is limited to cross-examination and questioning of the other party and the witnesses, and to consult with their advisee throughout the Hearing as needed.  If a party does not have an Advisor at the Hearing, one shall be provided by LSU at no cost, typically selected from the Resolution Process Pool. The Advisor is the only person who may conduct cross-examination on behalf of a Complainant or Respondent. An Advisor will be appointed even in situations where a party elects not to participate in the Hearing.

d.  Presentation of Evidence

The following describes the Hearing process.

1)  The Hearing Panel Chair will oversee and manage the procedure and order for presentation of evidence. The Hearing will be recorded and the recording or transcript will be made available for the parties for review. No unauthorized recordings are permitted.

2)  At the beginning of the Hearing, the Investigator will present a summary of the final Investigation Report and the relevant evidence and will be subject to questioning by the Decision-Makers and the parties' Advisors. The Investigator will be present for the entire Hearing, but not for deliberations, and the Panel and the parties may ask clarifying questions of the Investigator throughout the hearing, as deemed appropriate by the Chair. Neither the parties (or their Advisors), nor the Decision-Makers should ask the Investigator their opinions on credibility, recommended findings or determinations.

3)  Once the Investigator has presented their report, relevant evidence, and been questioned by the Panel and the parties' Advisors, witnesses will provide relevant information in turn. Typically, the Complainant will present first, followed by an order determined by the Hearing Panel Chair. Absent exigent circumstances, all evidence presented by the parties must have been submitted to the Investigator prior to the hearing.

4)  At the conclusion of each party's or witness's presentation of evidence, the members of the Hearing Panel will be allowed to ask questions, followed by cross-examination by the parties' Advisors. Cross-examination must be conducted directly,

27

EXHIBIT C

**EXHIBIT 1**

orally, and in real-time by the party's Advisor, and never by a party personally. The parties must be able to see and hear each other, as well as the witnesses while each is giving testimony and answering questions.

Only questions relevant to determining whether the applicable policies have been violated or the credibility of a witness will be allowed. The Hearing Panel Chair will have sole authority to determine whether evidence presented or a question in cross-examination is relevant and whether it will be permitted. The Hearing Panel Chair must explain any decision to exclude evidence or a question as not relevant. Questions or evidence about a Complainant's sexual predisposition or prior sexual behavior are not relevant, unless: (1) offered to prove that someone other than the Respondent committed the conduct alleged in the complaint, or (2) concern specific incidents of the Complainant's prior sexual behavior with Respondent and are offered to prove consent. Only evidence submitted to cross-examination may be considered by the Hearing Panel to determine responsibility. The parties and witnesses must be willing to submit to cross-examination, and answer all relevant questions posed by the parties' Advisors.

5) At the conclusion of the hearing, the parties may provide the Chair with a written, sealed impact statement for the panel to consider only during the sanctioning phase of deliberations, if the Respondent is found in violation.

e. <u>Failure to Appear/Answer</u>

If a witness or party does not attend the hearing, or if the witness or party refuses to answer a relevant question posed by the parties' Advisors, then the Hearing Panel may not rely on any statement made by the non-answering party in making its decision. Relatedly, the Hearing Panel cannot draw an inference about the determination regarding responsibility based solely on a party's or witness's absence from the hearing or refusal to answer questions.

f. <u>Deliberations</u>

The Hearing Panel shall deliberate in closed session with only panelists present. Deliberations are not recorded. The Hearing Panel is to apply the preponderance of the evidence standard when determining responsibility. A simple majority vote is required to determine the finding. In order to find a Respondent responsible under the preponderance of the evidence standard, the evidence must show that the charge is more likely supported

28

**EXHIBIT C**

**EXHIBIT 1**

than not. If the Respondent is found in violation for one or more of the allegations, the Panel will then shift to determining the appropriate sanctions.

g. <u>Determining Sanctions</u>

During sanctioning deliberations, the Panel may consider the previously submitted impact statements in determining the appropriate sanction. LSU's sanctioning guidelines, as well as the prior conduct history of the Respondent and any power differential between the Respondent and the Complainant will also be considered when determining an appropriate sanction along with the nature, severity, pervasiveness, and predation of the violation(s).

In cases where the Respondent is an employee, the Panel may also consult with HRM to ensure the sanction is consistent with employment-related laws, regulations, and policies.

The Hearing Panel will simultaneously notify the parties and Advisors in writing of any sanction imposed.  The Hearing Panel will prepare and provide to the Title IX Coordinator, typically within five business days of the Hearing, a written Determination Letter which must include:

1. Identification of the allegations constituting violation of the sex- or gender-based harassment and discrimination policy, as well as any other concurrent or ancillary policies;
2. A description of the procedural steps taken from receipt of the Formal Complaint through determination, including any notifications to the parties, interviews with parties and witnesses, evidence gathered and hearings held;
3. Findings of fact supporting the determination;
4. Conclusions regarding the application of the policy to the facts;
5. A rationale for each finding;
6. A statement explaining the sanction for each policy violation found "responsible;"
7. Whether additional remedies designed to restore or preserve equal access will be provided by LSU to the Complainant.

The Title IX Coordinator is responsible for effective implementation of any sanctions and sharing of outcomes. The written determination prepared by the Hearing Panel chair shall be shared electronically by the Title IX Coordinator with the parties and Advisors, typically within three business days of receipt from the Hearing Panel.

The determination regarding responsibility and sanctions becomes final either:

29

**EXHIBIT C**

a. If appealed, the date written notice is provided to the parties of the appeal result, or

b. If not appealed, the date on which an appeal would no longer be considered timely.

### h. Possible Corrective Actions

Students found responsible for violating this policy may expect the range of sanctions to include, but not be limited to, warning, disciplinary probation, deferred suspension, suspension, expulsion, psychological assessment, counseling, social restrictions, limited presence on campus, and/or revocation of admission or degree.  Additional sanctions may also be imposed when appropriate.

An employee found responsible for violating this policy may expect the range of sanctions to include, but not be limited to, suspension, administrative leave, demotion, psychological assessment, counseling, restricted presence on campus and/or termination of employment.

Both the Complainant and Respondent will be informed in writing of the outcome of any corrective action or disciplinary process. With limited exceptions such as imminent risk to the safety of others, sanctions from a Formal Hearing are not implemented until the conclusion of the appeals process.

## D.  APPEAL

### 1.  Right of Appeal

Any party may appeal a determination made by the Decision-Maker or the Hearing Panel. The following is an exhaustive list of the bases for appeal:

a.  The Title IX Coordinator, Investigator, Decision-Maker, or Hearing Panel members had a conflict of interest or bias for or against complainants or respondents generally or the individual Complainant or Respondent specifically that affected the outcome of the matter;

b.  New evidence is discovered that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter;

c.  Procedural irregularity that affected the outcome of the matter;

d.  The outcome was clearly erroneous based the facts and evidence presented to the Decision-Maker or the Hearing Panel;

e.  The sanctions imposed were inappropriate for both the violation and the disciplinary history of the Respondent.

30

# EXHIBIT C

## 2. Appeal Procedures

The Appeals process is to be deferential to the Hearing Panel's decisions. The process is not a rehearing. In most cases, the appeals are confined to a review of the relevant evidence, the Investigation Report, the Hearing Panel's determination letter and the recording of the hearing. The Appeals Review is also limited to specific grounds intended to ensure the decision of the Decision-Maker or the Hearing Panel was materially fair and consistent with LSU policies.

A Notice of Appeal must be in writing and submitted to the Title IX Coordinator within 5 business days of email notification of the Decision-Maker's or the Hearing Panel's decision. The Notice of Appeal shall contain the name of the Complainant and Respondent; identify the ground(s) for appeal; and if the appeal is based upon discovery of new information, a description/documentation of the new information and reason it was not discoverable prior to the Hearing Panel hearing.

Upon receipt of the Notice of Appeal, the Title IX Coordinator, typically within two business days of receipt of the Notice of Appeal, shall confirm receipt of the Notice of Appeal to the appealing party, notify any other party of the appeal, and contact the LSU Title IX Coordinator (if appeal went to a campus coordinator).

The LSU Title IX Coordinator, shall promptly appoint an impartial Appeals Reviewer and provide the Appeals Reviewer(s) with the Notice of Appeal. The Appeals Reviewer will then determine if the Notice of Appeal is timely and contains required elements for appeal. If so, the Appeals Reviewer will notify the parties of their identities. The Appeals Reviewer(s) are individuals trained in their responsibilities and are typically drawn from the Resolution Process Pool. If either of the parties challenges the impartiality of a Reviewer, the LSU Title IX Coordinator, in conjunction with the respective Title IX Campus Coordinator, will determine if cause exists to excuse the reviewer. If the Notice of Appeal is not timely or does not contain the required elements, then the Notice of Appeal is dismissed and the decision of the Hearing Panel becomes final.

The Title IX Coordinator shall promptly forward the evidence and information relied upon by the Decision-Maker or Hearing Panel, to the Appeals Reviewer. The evidence and information shall include, but is not limited to:

a. The Notice of Appeal;
b. All evidence introduced at the hearing, including the investigation report;
c. Any pre-hearing determinations from the Hearing Panel Chair (if

31

**EXHIBIT C**

applicable);
    d.   The written findings of the Decision-Maker or Hearing Panel; and
    e.   The recording or transcript of the formal hearing (if applicable).

The Appeals Reviewer(s) shall render a written decision including finding and rationale and forward to the LSU Title IX Coordinator typically within 5 business days after receipt of the evidence and information. The reviewer may:

    a. Uphold the Hearing Panel outcome; or
    b. Overturn the Hearing Panel finding and sanction and remand for a new hearing; or
    c. Overturn the Hearing Panel sanction and remand for a sanctions-only hearing; or
    d. Overturn the Hearing Panel outcome and remand for a new or adjusted investigation (if the error was in the investigation), which is then subject to a new hearing; or
    e. Modify the Hearing Panel outcome for responsibility and/or sanctions.

The LSU Title IX Coordinator shall notify the respective Title IX Campus Coordinator who shall then notify the parties and Advisors, typically within two business days of receipt of the decision.

Decisions of the Appeal Reviewer are final. In the event of remand for rehearing, the subsequent Hearing Panel outcome may be appealed in accordance with the provisions herein. Otherwise, any appeal right exercised under this policy shall complete the process.

## VI. ADDITIONAL PROVISIONS

### A. PREEMPTION

To the extent a conflict exists between State or local law and Title IX, the obligation to comply with Title IX is not obviated or alleviated by any State or local law. To the extent other LSU or campus-based policies may conflict with this policy, the provisions of this policy shall supersede and govern.

### B. RECORD KEEPING

Records created or received under this policy will be maintained for at least seven years from the date each case is closed. The following shall be kept as part of the record:
- Each investigation including any determination regarding responsibility, whether through the Formal or Administrative processes;
- Any audio or audiovisual recording or transcript of a hearing;
- Any disciplinary sanctions imposed on the Respondent;

32

**EXHIBIT C**

- Any remedies provided to the Complainant designed to restore or preserve equal access to LSU's education program or activity;
- Any appeal and result therefrom;
- Any informal resolution and result therefrom;
- All materials used to train Title IX Coordinators, Investigators, decision-makers, and any person who facilitates an informal resolution process; and
- Records of any actions, including supportive measures, taken in response to a report or Formal Complaint. These records will also include:
  - o The basis for all conclusions that the response was not deliberately indifferent;
  - o Any measures designed to restore or preserve access to LSU's education program or activity; and
  - o If no supportive measures were provided to the Complainant, document the reasons why such a response was not clearly unreasonable in light of the known circumstances.

LSU may be required to disclose information on a need-to-know basis in order to properly address a complaint, when there is a threat to others, pursuant to subpoena, or other court or administrative order, or as may be required by applicable law. Violations of confidentiality or privacy by any other persons involved in the resolution, investigation or administration of the complaint, including any employee, faculty, staff, or student may result in disciplinary or corrective action.

LSU will also maintain any and all records in accordance with state and federal laws.


## VII. RESOURCES

Title IX of the Education Amendments of 1972
La. R.S. 14:43.1.
Title 14 of the Louisiana Revised Statutes
La. R.S. 14:403
La. R.S. 44:51

**EXHIBIT C**



## PERMANENT MEMORANDUM 73

## Prohibiting Power-based Violence, including Sex- and Gender-based Harassment and Discrimination, and Sexual Misconduct

Monitoring Unit: Office of Civil Rights & Title IX
Initially Issued: June 18, 2014
Last Revised: October 15, 2021

## TABLE OF CONTENTS

I.   Purpose and Commitment ................................................................... 3

II.  Nondiscrimination Notice .................................................................. 3

III. Definitions ...................................................................................... 4

    A. General Definitions ...................................................................... 4

    B. Policy Definitions......................................................................... 6

IV.  Scope of Policy .............................................................................. 10

V.   Procedures..................................................................................... 11

    A. Reporting Misconduct ................................................................. 13

        1. Mandatory Reporting ............................................................... 13

        2. Limited Exceptions ................................................................. 14

        3. Confidentiality ........................................................................ 15

        4. Initial Contact with Complainant .............................................. 15

        5. Supportive Measures............................................................... 15

        6. Rights of Complainant and Respondent Following a Report ....17

    B. Complaint and Investigation......................................................... 18

        1. Initial Response to Reports....................................................... 18

        2. Formal Complaint Process ....................................................... 19

        3. Advisors.................................................................................. 20

        4. Notice and Investigation .......................................................... 21

**EXHIBIT C**

5.  Resignation While a Case is Pending ........................................ 23

C.  Resolutions ............................................................................... 23

1.  Informal Resolution ................................................................ 24

2.  Administrative Resolution ...................................................... 25

a.  *Questioning During Administrative Resolution* .................. 25
b.  *Decision-Making* ................................................................. 26

3.  Formal Resolution ................................................................. 27

a.  *Pre-Hearing Conference* .................................................... 28
b.  *Hearing Panel* ..................................................................... 28
c.  *Advisors in Hearings* .......................................................... 29
d.  *Presentation of Evidence* ................................................... 29
e.  *Absence or Failure to Appear/Answer* ............................... 30
f.  *Deliberations* ....................................................................... 30
g.  *Determining Sanctions* ....................................................... 31
h.  *Possible Corrective Actions* ............................................... 32

D.  Appeal ....................................................................................... 32

1.  Right of Appeal ...................................................................... 32

2.  Appeal Procedures ................................................................ 32

VI.  Additional Provisions ..................................................................... 34

A.  Preemption ............................................................................... 34

B.  Record Keeping ........................................................................ 34

C.  Administrative Reporting Requirements .................................... 35

D.  Transcript Withholding, Notation, and Communication ............. 36

VII.  Resources .................................................................................... 37

2

**EXHIBIT C**

**EXHIBIT 1**

## I. PURPOSE AND COMMITMENT

This Permanent Memorandum outlines the procedures for addressing and resolving allegations of power-based violence including sex- and gender-based harassment and discrimination, and Sexual Misconduct (e.g. sexual assault, stalking, dating violence, domestic violence, sexual exploitation, retaliation, etc.). Such procedures are required and governed by (1) Title IX of the Education Amendments of 1972 which prohibits sex discrimination in any education program or activity receiving federal financial assistance, (2) Act 472 of the 2021 Regular Legislative Session of the Louisiana Legislature, and (3) the Board of Regents Uniform Policy on Power-Based Violence. LSU's Title IX Coordinator[1] is responsible for administering this policy at all University locations.

Power-based violence, and sex- and gender-based harassment and discrimination, including Sexual Misconduct, violate an individual's fundamental rights and personal dignity and will not be tolerated. LSU prohibits and is committed to an environment free of discrimination on the basis of sex, gender, and Sexual Misconduct. This policy affirms these principles and provides recourse for individuals whose rights have been violated.

LSU will affirmatively promote prevention, awareness and training programs to encourage individuals to report concerns or complaints. Everyone has a responsibility to prevent and report acts of prohibited conduct. Any LSU employee who has knowledge of sex- and gender-based harassment and discrimination, including Sexual Misconduct, must file a report with the Title IX Coordinator[2].

LSU will take prompt, thorough, and impartial action to discipline those who violate this policy, prevent recurrence of prohibited behavior, and effect equitable remedies.

## II. NONDISCRIMINATION NOTICE

LSU is committed to creating an environment of inclusion and respect among students, faculty, staff and the community at large. LSU does not discriminate on the basis of race, creed, color, marital status, sexual orientation, gender identity, gender expression, religion, sex, national or ethnic origin, age, disability, genetic information, veteran's status, or any other status or organization protected by state or federal law, in its programs and activities. This includes all aspects of LSU's education programs and activities, including admission and employment. The entire LSU community is responsible for fostering a welcome environment conducive to learning and working.

---

[1] The term "LSU Title IX Coordinator" refers to the LSU A&M Coordinator, who also serves as the System Coordinator.
[2] The term "Title IX Coordinator" refers to either the LSU Title IX Coordinator, the respective Title IX Campus Coordinator, or their designee.

**EXHIBIT C**

**EXHIBIT 1**

Inquiries regarding the non-discrimination policy should be directed to the individual or individuals designated in each campus's applicable policy. Inquiries about the application of Title IX or this policy may be directed to the Title IX Coordinator. Inquiries or concerns regarding Title IX may also be made to the U.S. Department of Education Office for Civil Rights; Dallas office, OCR.Dallas@ed.gov, (214) 661-9600.

This Permanent Memorandum applies to incidents of power-based violence including harassment and discrimination on the basis of sex, gender, gender identity, gender expression, and sexual orientation.

## III. DEFINITIONS

### A. GENERAL DEFINITIONS

**Actual Knowledge**: Any reasonable information of sex- and gender-based harassment and discrimination, including Sexual Misconduct or allegations of such provided to a Title IX Coordinator, Deputy Coordinator, or any other Mandatory Reporter. Actual Knowledge would also include personal observation by any employee of such conduct.

**Administrative Resolution:** A process by which allegations and evidence are presented to a Decision-Maker for determination as to whether a Respondent is responsible for a violation of this policy. Administrative Resolution is not used in cases where the allegation could violate Title IX, or where probable cause indicates that the Respondent found in violation faces suspension or expulsion from LSU, or termination of employment.

**Advisor**: May be any person not otherwise a party or witness to the case, selected by a party or appointed by LSU to accompany the party to meetings related to the Resolution Process, to advise the party on that process, and to conduct questioning for the party at the Hearing, if any. The Advisor  may, but is not required to, be an attorney. Participation  shall  be limited as stated herein.

**Confidential Resource**: Those deemed confidential by law or professional ethics, or individuals explicitly selected, trained, and designated by LSU to provide confidential support to students and employees for concerns arising under this policy. Confidential Resources may also help facilitate supportive measures and assist with reporting to Title IX and/or law enforcement, if desired by the Complainant.

**Complainant:** An individual who is alleged to be the victim of conduct that could constitute power-based violence, or sex- or gender-based harassment or discrimination under this policy.

4

**EXHIBIT C**

**EXHIBIT 1**

**Decision-Maker**: A trained individual who reviews all relevant and directly related evidence including the investigation report and makes a decision regarding responsibility based on preponderance of the evidence as well as any applicable sanctions. A Decision-Maker is used during the Administrative Resolution Process.

**Determination Letter**: A letter provided by the Hearing Panel to the parties and their Advisors at the conclusion of the Formal Resolution Process. This letter summarizes the allegations and applicable policies, the investigation, and the findings and sanctions of the panel.

**Formal Complaint**: A document filed by a Complainant or signed by the Title IX Coordinator alleging sex- or gender-based harassment or discrimination (including Sexual Misconduct) against one or more Respondents, and requesting LSU to investigate the allegation.

**Formal Resolution**: A process by which allegations and evidence are presented in a live hearing to a Hearing Panel for determination as to whether a Respondent is responsible for a violation of this policy.

**Hearing Panel**: A body of three trained individuals assembled to hear testimony and weigh evidence resulting in a decision regarding responsibility based on the preponderance of the evidence.

**Incident Report:** Initial report alleging sex- or gender-based harassment or discrimination. An Incident Report does not, by itself, trigger an investigation.

**Informal Resolution**: A process whereby the parties voluntarily work with a professional to reach a mutually agreeable resolution of the complaint.

**Interim Measures**: Remedial measures taken to help deescalate and offer a short-term temporary resolution during the pendency of a resolution under this policy.

**Mandatory Reporter**: Any employee given the duty of reporting actual notice of incidents of sexual violence or any other misconduct prohibited by this policy. All LSU employees including Graduate Assistants are considered Mandatory Reporters (also referred to as "responsible employees") with a few notable exceptions which are identified in this policy.

**Notice**: A report of sex- or gender-based discrimination or harassment, including Sexual Misconduct, made to the Title IX Coordinator, Deputy Coordinator or any Mandatory Reporter.

**Resolution Process Pool:** A pool of trained LSU officials who can serve in any of the following roles at the direction of a Title IX Coordinator: Hearing Panelist, Hearing Panel Chair, Appeals Reviewer, or as Advisor for the Complainant or the Respondent. Pool members cannot serve in more than one role for a given case.

5

**EXHIBIT C**

**Respondent:** A person alleged to have engaged in actions that could constitute power-based violence, or sex- or gender-based harassment or discrimination, including Sexual Misconduct,under this policy.

**Title IX Coordinator:** Individual designated by the University to be responsible for responding to all complaints of possible sex- or gender-based harassment or discrimination and to coordinate appropriate responses to such complaints. All references to Title IX Coordinator in this document include Title IX Coordinator or designee.

## B. POLICY DEFINITIONS

**Coercion**: The use of unreasonable express or implied threats, intimidation, or physical force placing an individual in fear of immediate harm or physical injury or causes a person to engage in unwelcome sexual activity. Coercion may include administering a drug, intoxicant or other substance with the intent to incapacitate prior to engaging in sexual activity.

**Consent**: Clear, knowing, and voluntary permission demonstrated through mutually understandable words or actions clearly indicating willingness to engage in a specific sexual activity and any conditions on the activity. It is active, not passive; and silence, absent actions evidencing permission, is not consent. Responsibility for obtaining consent lies with the individual initiating the sexual activity.

Consent to engage in sexual activity may be withdrawn by any person at any time, as long as the withdrawal is reasonably and clearly communicated. Once withdrawal of consent is expressed, the sexual activity must immediately cease. Consent is automatically withdrawn by a person who, during the activity, becomes incapacitated. A current or previous consensual intimate relationship between the parties does not itself imply consent or preclude a finding of responsibility.

To give consent, a person must be of legal age. Consent cannot be obtained through coercion, fraud, or from a person whom the alleged offender knows or should reasonably know is incapacitated. Use of alcohol or drugs does not diminish the responsibility to obtain consent.

**Dating Violence**: Violence, when on the basis of sex or gender, committed by a person who is or has been in a social relationship of a romantic or intimate nature with the Complainant. The existence of such a relationship shall be determined based on the Complainant's statement and with consideration of the length of the relationship, the type of relationship and the frequency of interaction between the persons involved in the relationship. For the purposes of this definition, Dating Violence includes, but is not limited to, sexual or physical abuse or threat of such abuse. Dating Violence does not include acts covered under the definition of Domestic Violence.

6

**EXHIBIT C**

**Domestic Violence**: A felony or misdemeanor crime of violence, when on the basis of sex or gender, committed by a current or former spouse or intimate partner of the Complainant; a person with whom the Complainant shares a child incommon; a person who is cohabitating with, or has cohabitated with, the Complainant as a spouse or intimate partner; a person similarly situated to a spouse of the Complainant under the domestic or family violence laws of Louisiana; or by any other person against an adult or youth who is protected from that person's acts under the domestic abuse or family violence laws of Louisiana.

*To categorize an incident as Domestic Violence, the relationship between the parties must be more than people living together as roommates. The people cohabitating must be current or former spouses or have an intimate relationship.*

**Hazing**: Acts likely to cause physical or psychological harm or social ostracism to any person within the LSU community when related to the admission, initiation, pledging, joining, or any other group-affiliation activity. Hazing falls under this policy when based either in whole or in-part on sex- or gender-based harassment and discrimination.

**Hostile Environment Harassment**: Unwelcome conduct, determined by a reasonable person, to be so severe, pervasive, and objectively offensive, that it effectively denies a person equal access to an education program or activity.

**Incapacitation**: An individual is considered to be incapacitated if, by reason of mental or physical condition, the individual is manifestly unable to make a knowing and deliberate choice to engage in sexual activity. Being drunk or intoxicated can lead to incapacitation; however, drunkenness or intoxication is not necessarily the same as incapacitation. Incapacitation is a state beyond drunkenness or intoxication. Individuals who are asleep, unresponsive, or unconscious are incapacitated. Other indicators that an individual may be incapacitated include, but are not limited to, inability to communicate coherently, inability to dress/undress without assistance, inability to walk or stand without assistance, slurred speech, loss of coordination, vomiting, or inability to perform other physical or cognitive tasks without assistance.

**Intimidation**: Implied threats or acts that cause an unreasonable fear of harm in another.

**Power-based Violence**: Any form of interpersonal violence intended to control or intimidate another person through the assertion of power of the person, including but not limited to dating violence, domestic violence, sexual assault, sexual harassment, and stalking. Violations categorized as power-based violence are further described in the Louisiana Board of Regents Policy on Power-Based Violence/Sexual Misconduct.

**EXHIBIT C**

**EXHIBIT 1**

**Quid Pro Quo Sexual Harassment:** An employee conditioning the provision of aid, benefit, or service on the Complainant's participation in unwelcome sexual conduct.

**Retaliation**: Any acts against an individual for the purpose of interfering with or discouraging an individual from exercising a right or privilege under this policy. Activities protected from retaliation include reporting or opposing sex- or gender-based harassment and discrimination; filing a Formal Complaint; and participation in an investigation, process or Hearing, whether as a party, witness, Hearing Panel member, appeals officer, or Advisor. Prohibited retaliatory acts include, but are not limited to, intimidation, threats, coercion or discrimination.

**Sex and Gender Discrimination**: Behaviors and actions that deny or limit a person's ability to benefit from, and/or fully participate in the educational programs, activities and services because of a person's actual or perceived sex or gender.

**Sexual Assault**: Sexual contact or penetration without consent
    a. **Sex Offenses, Forcible**: Any sexual act directed against another person, without the consent of the Complainant including instances where the Complainant is incapable of giving consent.
        i. **Forcible Rape**: Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the Complainant.
        ii. **Forcible Sodomy**: Oral or anal sexual intercourse with another person, forcibly and/or against that person's will, or not forcibly or against the person's will (non-consensually) in instances where the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.
        iii. **Sexual Assault With An Object:** To use an object or instrument to penetrate, however slightly, the genital or anal opening of the body of another person, forcibly and/or against that person's will, or not forcibly or against the person's will (non-consensually) in instances where the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.
        iv. **Forcible Fondling**: The touching of the private body parts of another person (buttocks, groin, breasts) for the purpose of sexual gratification, forcibly and/or against that person's will (non-consensually), or not forcibly or against the person's will in instances where the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.
    b. **Sex Offenses, Non-forcible**: Non-forcible sexual intercourse.
        i. **Incest** – Non-forcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by Louisiana law.
        ii.

8

**EXHIBIT C**

**EXHIBIT 1**

  iii. **Statutory Rape** – Non-forcible sexual intercourse with a person who is under the statutory age of consent of Louisiana.

 c. Sexual Assault also includes sexual battery as defined in La. R.S. 14:43.1.

**Sexual Exploitation:** An individual taking non-consensual or abusive sexual advantage of another for their own benefit or for the benefit of anyone other than the person being exploited, and that conduct does not otherwise constitute sexualharassment under this policy. Examples of sexual exploitation include, but are notlimited to, non-consensual observation of individuals who are undressed or engaging in sexual acts, non-consensual audio- or videotaping of sexual activity, prostituting another person, human trafficking, allowing others to observe a personal consensual sexual act without the knowledge or consent of all involvedparties, and knowingly exposing an individual to a sexually transmitted infection without that individual's knowledge.

**Sexual Harassment**: Conduct on the basis of sex or gender that satisfies one or more of the following:

  a. Quid pro Quo Harassment;
  b. Hostile Environment Harassment; or
  c. Retaliation.

**Sexual Misconduct**: A sexual act or contact of a sexual nature that occurs, regardless of personal relationship, without the consent of the other person(s), or that occurs when the person(s) is unable to give consent or whose consent is coerced or obtained in a fraudulent manner. Examples include but are not limited to threatening or causing physical harm; extreme verbal, emotional, or psychological abuse; or other conduct which threatens or endangers the health or safety of any parson. For the purpose of this Policy, Sexual Misconduct includes, but is not limited to, sexual abuse, violence of a sexual nature, Sexual Harassment, Sexual Assault, Sexual Exploitation, as well as Dating Violence, Domestic Violence and Stalking when on the basis of sex or gender, as well as crimes of a sexual nature as defined in Title 14 of the Louisiana Revised Statutes or at La. R.S. 44:51.

**Sexually-Oriented Criminal Offense**: Any sexual assault offense as defined in La. R.S. 44:51, and any sexual abuse offense as defined in La. R.S. 14:403.

**Sexual Orientation Discrimination**: Behaviors and actions that deny or limit a person's ability to benefit from, and/or fully participate in the educational programs, activities, and services because of a person's actual or perceived sexual orientation.

**Stalking**: Engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for the person's safety or the safety of others or

9

**EXHIBIT C**

suffer substantial emotional distress.

For the purposes of this definition:

    a. Course of conduct means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.

    b. Reasonable person means a reasonable person under similar circumstances and with similar identities to the Complainant.

    Substantial emotional distress means significant mental suffering or anguish that may but does not necessarily require medical or other professional treatment or counseling.

    c. Nothing in these definitions will be interpreted in a way that violates the First Amendment rights of any individual.

## IV. SCOPE OF POLICY

This policy applies to all members of the University community, including faculty, staff, students, volunteers, organizations, and any other affiliate that participates in activities associated with LSU.

Title IX law applies to educational institutions and specifically covers sexual misconduct under a limited set of circumstances. Title IX has jurisdiction over conduct that occurs:

    a. Where the Complainant is an LSU student, or an LSU employee acting within their job responsibilities;

    b. Where LSU exercised substantial control over the Respondent in the context of where or how the alleged incident occurred;

    c. In the course of LSU's operations;

    d. On an LSU campus or any other University owned, leased, controlled or operated location;

    e. Within the bounds of the United States; and

    f. At any LSU sponsored event or organizational activity in the United States whether on or off campus.

Sex- or gender-based harassment and discrimination have broad jurisdiction that includes all Title IX allegations, but also many more allegations that involve possible sex- or gender-based harassment or discrimination that do not rise to the level of a Title IX violation. If the sex- or gender-based harassment or discrimination does not meet Title IX jurisdictional requirements, then the allegation is "dismissed" as a Title IX case. The case still may be considered for possible investigation and resolution under this policy or the applicable student code of conduct, employee policies, or other relevant policy or procedure. (i.e. non-sex or gender-based misconduct). Such cases include, but are not limited to:

10

## EXHIBIT C

    a. Sex- or gender-based harassment or discrimination that does not meet the required definitions under Title IX;

    b. Off-campus or online conduct, social media or other electronic media/communication where:

        i. The University deems that the off-campus sexual misconduct effectively deprives someone access to LSU's educational programs or employment;

        ii. The Title IX Coordinator, in their discretion, exercises jurisdiction, such as when the Sexual Misconduct may affect the safety or well-being of the LSU community

    c. Instances of power-based violence that are independent of sexual misconduct.

Further, even when the Respondent is not a member of the LSU community, supportivemeasures, remedies, and resources may be available to the Complainant by contactingthe Title IX Coordinator.

Students are responsible for their conduct from notice of admission through the awarding of a degree or departure from the University. Employees are covered by this policy when representing LSU (or deemed to be a representative of LSU) whether before, during, or after work. This policy also applies to any person who is both a student and an employee at LSU.

This policy may also address any alleged misconduct (e.g.: student code of conduct, employee code of conduct, etc.) that is ancillary to or concurrent with alleged violations of this policy. Officials in the Resolution Process may consult with relevant departments (e.g.: HR, Student Affairs, Academic Affairs, etc.) regarding the ancillary or concurrent misconduct to help ensure greater uniformity in addressing such conduct.

This policy is not intended to infringe on or restrict rights guaranteed by the United States Constitution including free speech under the First Amendment, due processes clauses of the Fifth and Fourteenth Amendments and the Fourth Amendment. Additionally, this policy is not meant to inhibit or prohibit educational content or discussions inside or outside of the classroom that include germane, but controversial or sensitive, subject matter protected by academic freedom.

## V. PROCEDURES

Addressing allegations of sex- or gender-based harassment and discrimination is a necessarily detailed process committed to a fair and impartial resolution. In the sections below, the process is largely outlined in chronological order of reporting, supportive measures, investigating, options for resolution, and appeal. The LSU Title IX Coordinator will aid in administering the process and serve as a consultant on cases involving Power-Based Violence and Sexual Misconduct on all LSU campuses. Individual campuses are encouraged to adopt a PolicyStatement to support this Permanent Memorandum by providing more explicit information at the local level.

**EXHIBIT C**