UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ABBY OWENS, ET AL. | CIVIL ACTION NO. 3:21-CV-00242 |
| VERSUS | JUDGE WENDY B. VITTER |
| LOUISIANA STATE UNIVERSITY, ET AL. | MAGISTRATE JUDGE JOHNSON |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 8: SARAH BETH KITCH**

NOW INTO COURT, through undersigned counsel, comes defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"), and submits this memorandum in support of its Motion for Summary Judgment.[1] Plaintiff Sarah Beth Kitch ("Kitch") alleges she was harassed by John Moe while she was enrolled as a graduate student at LSU, but she did not report the conduct to the Title IX office before she graduated. Nevertheless, she asserted various Title IX claims. Following this Court's ruling on the Board's motion to dismiss, Kitch's only remaining claim is for Title IX heightened risk (pre-assault violation). (R. Doc. 340, p. 44) This claim fails as a matter of law for the reasons below.

I.   **FACTUAL BACKGROUND.**

Sarah Beth Kitch enrolled as a graduate student at LSU in fall 2009. (Kitch 22-23)[2] In August 2009, Kitch met John Moe, one of her instructors who was a tenured professor in the Political Science Department. (Kitch 26) According to Kitch, she and Moe had "closely aligned" interests as they both studied ancient and medieval political thought. (Kitch 26) Moe offered

---

[1] The Board accepts Plaintiff's facts as true for purposes of this motion and memorandum only.
[2] Relevant portions of the deposition transcripts and exhibits of Plaintiff and 30(b)(6) of the Board are attached to the Board's motion as Exhibits A and B. The declaration of Jonathan Sanders is also attached to the Board's motion as Exhibit C. Citations to the depositions will be by the last name of the deponent and the page or exhibit number. Deposition transcripts with more than one volume will include a Roman numeral to identify second volume. Citations to the declarations will be by the witness's last name and paragraph or exhibit number.

Kitch a scholarship to study Eric Voegelin political theory. (Kitch 27) Later, in 2011, Moe sponsored Kitch for the Earhart Fellowship, "a prestigious fellowship for political theory and students of American thought and politics." (Kitch 28-29)

Kitch alleges that, during her time as a graduate student, Moe engaged in conduct that made her uncomfortable. (Kitch 38) According to Kitch, she was "informed" by Moe that she would drive him to and from class. (Kitch 36-38)[3] Other students also drove Moe to class and other events. (Kitch 35-36, 89-90) Additionally, she says Moe compared their relationship to Martin Heidegger and Hannah Arendt, a philosopher and his much younger student who had an affair. (Kitch 39)[4] When Kitch was preparing for her graduate student comprehensive exams, Moe allegedly reminded her that ". . . faculty were celestial and I was a mite." (Kitch 39-40) Kitch alleges Moe commented on a secretary's dress in an unprofessional manner which Kitch thought was "a little generational drift and [Moe] doesn't know what's workplace appropriate." (Kitch 50) Moe also allegedly "commented approvingly" on a pair of heels she wore "in a way that made me uncomfortable." (Kitch 40) Finally, Kitch alleges that, in March 2013, while she was writing her dissertation prospectus and preparing to defend it, Moe kissed her. (Kitch 52; R. Doc. 182, ¶¶ 717-721) Kitch did not have any other physical contact with Moe that made her uncomfortable. (Kitch 74) Kitch did not report Moe's actions while she was enrolled at LSU. (Kitch 94)

Two months later, in May 2013, Kitch graduated from the master's program and transitioned to the doctoral program. (Kitch 24; Kitch Exh. 9) The members of her dissertation advisory committee were Moe and two other professors in the Political Science Department, Cecil Eubanks and William Stoner. (Kitch 56, 70) Moe served as Kitch's advisor. (Kitch 63-65, 71)

---

[3] Moe could not drive due to problems with his right leg. (Kitch 36) Kitch says driving Moe was part of her routine, and she was under the impression that it was part of her role. (Kitch 36-38)
[4] In her deposition, Kitch testified that this comment occurred in fall 2012. (Kitch 41) Notably, Kitch said Moe did not mention the affair when he referenced the relationship. (Kitch 41)

2

Kitch chose a topic for her dissertation prospectus and successfully defended the prospectus. (Kitch 70-72) Kitch completed her dissertation in late fall 2014 and graduated from LSU with her doctorate in December 2014. (Kitch 89, 178; Kitch Exh. 9)

In late summer or fall 2019, Kitch alleges that she called the Title IX office to report Moe. (Kitch 99, 122) At the time of her report, Kitch was no longer a student or faculty member, and Moe was no longer employed at LSU. (Kitch 126, 186)[5] Kitch's post-graduation report was the first notice LSU received of any sexually harassing or inappropriate conduct by Moe. (Board 30(b)(6) 48-49)

## II.   STANDARD OF REVIEW.

The Board adopts by reference the Standard of Review discussion set forth in Memorandum in Support of Motion for Summary Judgment No. 1.[6]

## III.   KITCH'S REMAINING HEIGHTENED RISK CLAIM FAILS AS A MATTER OF LAW.

### A. Kitch's Heightened Risk Claim is Prescribed.

The Board adopts by reference the heightened risk discussion set forth in Summary Judgment No. 1, Section III.B. Kitch claims that Moe treated her inappropriately throughout her experience as a graduate student, which ended in December 2014. (R. Doc. 182, ¶ 724) She specifically challenges an alleged interaction that occurred in March 2013, yet she did not file suit until eight years later, on April 26, 2021. (R. Doc. 1) Therefore, Kitch can only survive prescription challenges if the claim accrued at a later, timely date. As more fully explained below, Kitch cannot satisfy this burden. Accordingly, her claim must be dismissed.

---

[5] Moe retired from LSU in spring 2015. (Kitch 60)
[6] For efficiency, the Board will hereafter refer to the related memorandum simply as Summary Judgment No. 1.

3

### a. The Husch Blackwell Report is Irrelevant to the Timeliness of Kitch's Claim.

*See* discussion in Summary Judgment No. 1, Section III.B.a, which is adopted herein by reference. Kitch did not read the Husch Blackwell Report, and there are no factual statements in the report relating to Kitch or Moe. (Kitch 148; R. Doc. 1-1) Thus, Kitch cannot show any findings in the Husch Blackwell Report of sexual assaults by Moe prior to her alleged experience.

Nevertheless, Kitch alleged generally, not in the heightened risk context, that she learned the following from the Husch Blackwell Report: (1) "LSU had specific knowledge of the pervasive harassment and retaliation Kitch "and others suffered";[7] (2) "LSU and its employees failed to train Kitch on the resources available to her as a survivor"; and (3) "LSU's Title IX Policy is meant to prevent the specific emotional distress that Kitch endured."(R. Doc. 182, ¶ 740) The first two allegations relate to post-assault information, which is irrelevant to Kitch's heightened risk claim. The last allegation merely suggests that Kitch was ignorant of the purpose of Title IX, a federal law, which does nothing to support her claim that the Husch Blackwell Report somehow disclosed information that was otherwise unavailable. Because the Husch Blackwell Report revealed no **pre-assault** information that affected Kitch's knowledge, she cannot avoid prescription on her heightened risk claim. Nor can Kitch show that she "did not have reason to further investigate" her claims until the Husch Blackwell Report was published. (R. Doc. 340, p. 20)

### b. Plaintiff's Claim Accrued Years Before her Lawsuit was Filed.

While she was enrolled at LSU, Kitch never complained about Moe to the Title IX office. (Kitch 94; Board 30(b)(6) 48-49) Nevertheless, by her graduation in December 2014, Kitch knew the facts forming the basis of her claim—the identity of the perpetrator, the entirety of Moe's

---

[7] Again, Kitch cannot show that the Husch Blackwell Report revealed any conduct by Moe.

4

conduct towards her, and her injuries. (*See* R. Doc. 340, pp. 18-19)  Kitch received Title IX and sexual harassment training through LSU because of her role as a graduate student instructor. (Kitch 94-97; Exh. 3)  Kitch knew the salient information related to her claim by December 2014, and any tangential information she may have later learned does not delay the accrual of her claim.[8] Therefore, her April 26, 2021 lawsuit is untimely.

### B. No Heightened Risk Claim is Available to Kitch.

Unlike other Plaintiffs in this action who allege student-on-student conduct, Kitch's allegations are of teacher-on-student conduct.  The Fifth Circuit has not recognized a heightened risk of sexual assault claim for cases involving teacher-on-student harassment.[9]  Indeed, this Court noted that the Fifth Circuit has "not foreclosed the possibility that such a claim may be cognizable in the context of **student-on-student** sexual assault allegations," acknowledging that the Fifth Circuit had not extended such cause of action to teacher-on-student claims.  (R. Doc. 340, p. 41 (emphasis added))  *See* Summary Judgment No. 1, Section III.D.a, which discussion is adopted herein.

### C. Kitch Fails to Meet the Elements of a Heightened Risk Claim.

Even if this Court recognizes a heightened risk claim in this context, Kitch's "heightened risk" claim fails on the merits. *See* discussion of heightened risk in Summary Judgment No. 1, Section III.C, which is adopted herein by reference.

Under a pre-assault Title IX heightened risk theory, a plaintiff must prove: (1) the defendant had actual knowledge of a substantial risk that sexual abuse would occur; (2) the harasser was under the defendant's control; (3) the harassment was based on the victim's sex; (4)

---

[8] Indeed, when Kitch contacted LSU in 2019 to report Moe's conduct, she had knowledge of all facts regarding her claim.  (Kitch 99, 122)
[9] *See Poloceno v. Dallas Independent Sch. Dist.*, 826 F. App'x 359, 363 (5th Cir. 2020).

5

the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit; and (5) the defendant was deliberately indifferent to the harassment.[10]  Kitch fails to meet essential elements of her claim.

### a. Element One: Kitch Cannot Establish Actual Knowledge.

Kitch's claim fails on the first element because she cannot show that an appropriate person had knowledge that she faced a substantial risk of sexual harassment. "[P]laintiffs seeking to prove actual knowledge must clear a high bar."[11] "[A]ctual knowledge means [] that the school must have actual, not constructive, knowledge of sexual harassment."[12]  Specifically, in a case like this one, where the "pre-assault" behavior is at issue, a school must have knowledge "that there is a substantial risk that sexual abuse would occur."[13] "[L]iability requires that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference.'"[14]  Finally, the actual knowledge of a substantial risk must be with respect to sexual misconduct or abuse; other unrelated conduct is insufficient.[15]  A school can escape liability if it can show (1) "that it did not know of the underlying facts indicating a sufficiently substantial danger and that it was therefore unaware of a danger," or

---

[10] *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir 2022).  The Board acknowledges that *Roe* involved a student-on-student claim, not a teacher-on-student claim like Kitch is purporting to assert.  *Id.*  The Board denies that a heightened risk claim is available to Kitch.  (*Id.*; *see* Section III.B)  In an abundance of caution, the Board evaluates Kitch's claim under the framework set forth in *Roe*.  (*See* R. Doc. 340, p. 38, n.194)  For the reasons set forth herein, Kitch's claims fail under *Roe* or a teacher-on-student deliberate indifference framework (which claim was dismissed).
[11] *Kelly v. Allen Indep. Sch. Dist.*, 602 F. App'x 949, 953 n.3 (5th Cir. 2015).
[12] *Roe*, 53 F.4th at 341 (5th Cir. 2022) (citing *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)); *K.S. v. Nw. Indep. Sch. Dist.*, 689 F. App'x 780, 784 (5th Cir. 2017).
[13] *Roe*, 53 F.4th at 341 (quoting *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 775 (5th Cir. 2020)) (internal quotations omitted).
[14] *Id.* (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 659 (5th Cir. 1997)); *see Pierce v. Houston Comm. Coll. Sys.*, 2022 WL 2659027, at *7 (S.D. Tex. July 9, 2022) (finding no actual knowledge where plaintiff testified that she did not communicate her concerns to the Dean or anyone else in the office and she told receptionist that she had an "urgent, personal, sensitive matter" to address with the Dean, but never told her that she wanted to see the Dean because her advisor had sexually harassed her).
[15] *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 364 (5th Cir. 2020).

(2) "that it knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."[16] The knowledge requirement cannot be satisfied by showing that the school "should have known" there was a substantial risk of abuse.[17]

Here, although Kitch alleges in her Complaint that "LSU was aware that Professor Moe continuously violated the Title IX policy by actively performing overt acts of sexual misconduct," she has not come forward with any evidence of prior knowledge by LSU. (R. Doc. 182, ¶ 936(a); Board 30(b)(6) 48-49) Other than Kitch's own experiences which she admits she did not report, Kitch offered no other allegedly sexual interactions between graduate students and Moe before or after her alleged experience. Instead, Kitch focuses on another professor in the political science department, Kevin Mulcahy. (Kitch 47-48) According to Kitch, Mulcahy "had a reputation . . . for his inappropriateness," including "berating [ ] students." (Kitch 47-49, 57) "To her knowledge," Mulcahy was not disciplined. (Kitch 47-49, 57)

Kitch's supposition regarding Mulcahy does not show that LSU had actual knowledge of Kitch's substantial risk of sexual misconduct at the hands of Moe. Here, Kitch's post-graduation report of Moe was the only report of Title IX-related conduct LSU had ever received regarding Moe. (Board 30(b)(6) 48-49) Thus, Kitch cannot offer evidence to show any "substantial risk" which LSU or its employees were aware of and should have acted on before Kitch's alleged assault.

---

[16] *Rosa H.*, 106 F.3d at 659; *see Kelly*, 602 F.App'x at 953 n.3 (applying standard to student-on-student harassment).
[17] *M.E.*, 840 F. App'x at 775.

7

### b. Element Four: The Alleged Conduct was not Severe, Pervasive And Objectively Offensive.

The single physical incident alleged by Kitch does not meet the Title IX standard for being "severe, pervasive, **and** objectively offensive" harassment.[18] Title IX cases "are based on unwelcome sexual advances so severe and pervasive as to interfere with a student's educational atmosphere and opportunities."[19] The Supreme Court made it clear that the initial single incident is not sufficient to result in liability under Title IX.[20] The Supreme Court expressly required that the harassment be pervasive to avoid imposing liability for a "single instance," even if that single instance is severe.[21]

The Fifth Circuit has also stated that only those claims involving "pervasive" and "widespread" conduct with the "systemic effect of denying the victim equal access to an educational program or activity" are actionable, finding that sexual harassment cannot be based on a single incident as a matter of law.[22] For example, "[a] 'single instance of sufficiently severe one-on-one peer harassment' cannot have such a systemic effect [of denying equal access to an education] in light of 'the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment.'"[23] Kitch has failed to demonstrate that the complained of conduct was severe, pervasive and offensive.

---

[18] *See, e.g.*, *Doe v. Miami Univ.*, 882 F.3d 579, 591 (6th Cir. 2018) (holding that one incident of non-consensual kissing does not rise to the level of severe, pervasive, and objectively offensive).
[19] *Lewis v. Louisiana State Univ.*, 2021 WL 5752239, at *19 (M.D. La. Dec. 2, 2021).
[20] *Davis*, 526 U.S.at 652-53 (emphasis added).
[21] *Id.*
[22] *Carmichael v. Galbraith*, 574 F. App'x 286, 289-290 (5th Cir. 2014) (citing *Davis*, 526 U.S. at 652-654).
[23] *Hill v. Cundiff*, 797 F.3d 948, 972 (11th Cir. 2015) (quoting *Davis*, 526 U.S. at 652–653).

### c. Plaintiff Cannot Meet her High Burden of Showing Deliberate Indifference That Caused Harassment.

#### i. No Deliberate Indifference.

Plaintiff also cannot show that the Board was deliberately indifferent to prior sexual misconduct by Moe.  Without actual knowledge of any prior sexual conduct by Moe (because there was none), there was no opportunity for the Board to act and remedy the conduct.  "[D]amages may not be recovered . . . unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct."[24]  The Board could not act with deliberate indifference because it was not given the chance to act at all.

#### ii. No Causation.

Evidence that a plaintiff was subject to harassment because of the deliberate indifference is a necessary causation element for a claim under Title IX.[25]  Critical to this inquiry is what occurred after the school's actual knowledge.[26]  A plaintiff must show that a school's "deliberate indifference subject[ed] its students to harassment," either by directly causing it or failing to act and making that student vulnerable to it.[27]  Kitch cannot show that she was subjected to severe, pervasive, and objectively offensive harassment **because of** the alleged deliberate indifference.  While Kitch alleges she was unaware of Title IX reporting options, she admits that she was trained on Title IX and sexual harassment.  (Kitch 96-97; Kitch Exh. 3)  She cannot show any direct causal connection between LSU's conduct and her allegations with respect to Moe.

---

[24] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998).
[25] *Davis*, 526 U.S. at 644-645; *Doe 1 v. Baylor Univ.*, 240 F.Supp. 3d 646, 660 (W.D. Tex. 2017).
[26] *Doe v. Univ. of Kentucky*, 959 F.3d 246, 251 (6th Cir. 2020*)*; *Kollaritsch v. Michigan State Univ. Board of Trustees*, 944 F.3d 613, 622 (6th Cir. 2019).
[27] *Davis*, 526 U.S. at 644.

### d. Plaintiff Fails her Burden of Showing a Deprivation of Educational Benefits.

Finally, Kitch must show that the harassment deprived her of "access to the educational opportunities or benefits."[28] To satisfy this requirement, the harassment must have had a "concrete, negative effect on [Kitch]'s education."[29]

Kitch cannot show deprivation of access to educational opportunities or benefits. During her time as an LSU student, Kitch consistently had a 4.0 grade point average. (Sanders Decl. ¶ 7, Exh. 2) Additionally, she received the Eric Vogelin Scholars Award twice (2009 and 2010) and the H.B. Earhart Fellowship five times (2010, 2011, 2012, 2013, and 2014). (Kitch Exh. 9) Further, Kitch's testimony proves she suffered no loss in terms of a dissertation advisor. According to Kitch, she became skeptical of Moe's ability to evaluate her work, so she sought advice from Professor Eubanks, another member of her dissertation committee:

> So I started showing up with chapters and asking him to read them. It wasn't his job. He didn't get credit for it. It was totally overtime on his part. But he's a tender and discreet man. He took me without question. I showed up, I asked him to read chapters, he read chapters.

(Kitch 65-66) While Kitch testified about fears of losing opportunities in her program, her fears never materialized. In fact, according to her deposition testimony, Kitch excelled during her time at LSU:

> When I took my comprehensive exams the fall before, my faculty, Cecil Eubanks, Jim Stoner, noted that I had performed with excellence. When I started the program, I had never read Aristotle, I had never read Plato. I entered the program at 18 and I mastered my field in three years. I was not able to give that up.

(Kitch 56) Allegations that a plaintiff "sustained damages in the form of embarrassment, humiliation, mental anguish, and emotional distress" are insufficient to show a concrete, negative

---

[28] *Id*. at 650.
[29] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 585 (5th Cir. 2020) (quoting *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015)).

10

effect on education.[30]  Instead, Kitch admits that her alleged damages came after she graduated, when she was unable to complete her dissertation-to-book project which impacted her ability to obtain a tenure track position.  (Kitch 75, 109, 132-133, 176-177)  These post-graduation events have no bearing on whether Kitch's educational opportunities while enrolled as a graduate student at LSU were impacted.[31]  (Kitch 99-100)

### D.  No Other Heightened Risk Theory is Available to Kitch.

Collectively, Plaintiffs seem to base their heightened risk claims on allegations that LSU created a heightened risk of sexual misconduct by maintaining a "general custom or official policy" of deliberate indifference to reports of Title IX violations, seemingly merging two claims.  (R. Doc. 182, ¶ 926)  Notwithstanding, the Board also addresses Kitch's insufficient "official policy" allegations.

#### a.  The Fifth Circuit Does not Recognize Heightened Risk Based on an Official Policy.

The Fifth Circuit has not recognized a claim for Title IX heightened risk based on an official policy, and this Court's ruling on the Board's motion to dismiss does not suggest that an official policy claim remains in this case.  *See* discussion in Section III.D Summary Judgment No. 1, which discussion is adopted herein by reference.  Nevertheless, out of an abundance of caution, the Board will show why the record evidence in this case would not support such a claim.

---

[30] *Henderson v. Bd. of Supvrs. of Southern Univ. & A&M Coll.*, 2023 WL 2614620, at *11 (M.D. La. Mar. 23, 2023).
[31] *See Morales v. Corinthian Colleges, Inc.*, 2013 WL 3994643, at *9 (W.D. Tex. Aug. 2, 2013*)* (noting that post-graduation events cannot form the basis for a Title IX claim); *Pierce v. Houston Comm. Coll. Sys*., 2022 WL 2659027, at *8, n.4 (S.D. Tex. July 9, 2022).

11

### b. Kitch Cannot Establish an Official Policy of Deliberate Indifference to Reports of Sexual Misconduct.

Kitch cannot establish that the Board "maintained a policy of deliberate indifference to reports of sexual misconduct."[32] Unlike the challenged policies in non-binding out-of-Circuit cases relating to encouraging sex in football recruiting visits and informally resolving sexual assault claims to reduce the need for disclosure, Kitch has not identified a single specific, non-conclusory policy, let alone one that caused her any harm.[33] Nor do Kitch's facts resemble other cases that have found heightened risk based on an official policy of deliberate indifference. *See* discussion in Section III.D of Motion for Summary Judgment No. 1, which discussion is adopted herein by reference. To maintain a policy of deliberate indifference, a school must do more than merely issue insufficient policies.[34] For example, "the failure to promulgate grievance procedure does not itself constitute 'discrimination' under Title IX," and neither does non-compliance with federal regulations.[35] Nevertheless, Plaintiffs' Complaint generally references the following deficiencies: (i) training; (ii) LSU's response to a 2017 Internal Audit, and (iii) an alleged failure to report complaints, conduct investigations, and establish grievance procedures, none of which apply to Kitch. (R. Doc. 182, ¶¶ 922, 923, 926)

### i. Training.

Plaintiff cannot establish an official policy of deliberate indifference with relation to training. The Board provided annual training beginning in at least 2014. (Board 30(b)(6) 30-32,

---

[32] *See Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1112 (9th Cir. 2020).
[33] *See generally Karasek*, 956 F.3d at 1112; *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007).
[34] *Doe 1 v. Baylor Univ.*, 240 F.Supp. 3d 646, 662 (W.D. Tex. 2017).
[35] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998). The Supreme Court "has never held 'that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements,'" such as failure to comply with Department of Education regulations or the school's own regulations. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 169 (5th Cir. 2011) (quoting *Gebser*, 524 U.S. at 292).

12

36-37) For ease of attendance, LSU administered the trainings electronically, the content of which was reviewed by Title IX. (Board 30(b)(6) 33, 36-37) Many of these trainings were developed by the Title IX office and included the "big three topics" of consent, healthy relationships, and bystander intervention. (Board 30(b)(6) 39, 42) Like other faculty, Moe received LSU Title IX training. (Sanders Decl. ¶ 6) Like other students, Kitch completed MyStudentBody training, a program that addresses alcohol, drugs, and sexual violence, which all students are required to complete. (Kitch 96-97; Sanders Decl. ¶ 3) Additionally, as an instructor, Kitch completed ethics, sexual harassment, and Title IX training. (Kitch 94; Kitch Exh. 3) Accordingly, Kitch cannot show an official policy of deliberate indifference to training that caused her injuries.

### ii. Internal Audit

The Board anticipates that Plaintiffs will cite a 2017 Internal Audit commissioned by LSU, which, Plaintiffs allege referenced some "problems and failings within the LSU Title IX process." (R. Doc. 182, ¶ 925) The 2017 Internal Audit and LSU's response are irrelevant to Kitch's claims because she graduated in 2014, years before the Audit was even commissioned.[36]

### iii. General Reference to Failure to Report Complaints, Initiate/Conduct Investigations and Grievance Procedures.

Plaintiffs' Complaint generally references shortcomings in reporting, investigations and grievance procedures with no specifics to tie those general categories to her claims. (R. Doc. 182, ¶¶ 926, 931) As discussed above, other than Kitch's allegation that Kevin Mulcahy (who she does not allege caused her harm) was not disciplined, Kitch lacks evidence that an employee failed to comply with Title IX. The evidence is undisputed that employees, non-employees, and students, including Kitch, had the option to report Title IX claims through multiple mechanisms. (Board

---

[36] *Tackett v. Univ. of Kan.*, 234 F.Supp.3d 1100, 1107 (D. Kan. 2017) (finding no institutional liability for heightened risk of sexual assault where alleged policies "played no part" in plaintiff's rape).

13

30(b)(6) 49-52)  Likewise, information about how to make a Title IX complaint was provided to students and was housed on the Student Advocacy and Accountability website, Dean of Students website, HRM website, and on the Title IX website at various points. (Board 30(b)(6) 52) While Kitch did not utilize LSU's reporting avenues, she can come forward with no evidence of failures in reporting that can constitute an official policy and that can be causally connected to any harm that Kitch allegedly suffered.

Similarly, generic references to grievance procedures and investigations do not apply to Kitch who acknowledges that she never made a Title IX report to LSU until, at earliest, five years after her graduation.  (R. Doc. 182, ¶¶ 733-734)

### c. Element Two: Kitch Cannot Show a Known or Obvious Risk.

Not only can Kitch not establish an "official policy" of deliberate indifference, she also cannot show that the risk of sexual misconduct that would result from such policy was "known or obvious."[37] (R. Doc. 340, pp. 40-41)  As indicated above, it is undisputed that Kitch is the only person to allege sexual assault by Moe.  (Board 30(b)(6) 48-49)  LSU received no other Title IX report regarding Moe prior to (or after) Kitch's report, which was not submitted until several years after her graduation.[38] (*Id.*)  Although Plaintiffs collectively have asserted other general allegations of sexual misconduct, they have no evidence of widespread, systemic conduct that would put LSU on notice of a particularized risk of sexual misconduct in the context that Kitch alleges.[39]  Kitch's generalized allegations of widespread, systemic conduct do not meet her burden.

---

[37] *See, e.g.*, *Doe v. Texas A&M Univ.*, 2022 WL 5250294, at *6 (S.D. Tex. Oct. 6, 2022).
[38]  *Id.* (finding no *Karasek/Simpson* liability where there were no allegations that TAMU received reports of sexual misconduct by similarly situated students, that TAMU failed to address or actively concealed reports of sexual misconduct, that TAMU received reports of sexual misconduct committed by plaintiffs' assailants, or that TAMU had an official policy or custom that created a heightened risk of assault in plaintiffs' program).
[39]*See e.g.*, *C.T. v. Liberal Sch. Dist.*, 562 F.Supp. 2d 1324, 1340 (D. Kan. 2008) (finding that weight training program at volunteer coach's home did not "bear the element of encouragement of misconduct" nor did it "create[] a risk of abuse that would have been obvious to school officials"); *Tackett*, 234 F.Supp. 3d at 1108 (D. Kan. 2017) (rejecting argument for institutional liability based on the school's authority over its athletes and that it "should have known" of

### d. Element Four: Kitch Cannot Show Causation.

Not only was Moe's alleged conduct not reported to LSU, there is no connection between the purported "official policy of deliberate indifference" and Kitch's alleged harm. An official policy or custom must have caused the alleged assault, as opposed to "simply misconduct that happened to occur [at the school] among its students."[40] The standard for official policy liability under Title IX cannot "mean that recipients can avoid liability only by purging their schools of actionable peer harassment."[41] For the reasons set forth in Section III.C.c.ii, Kitch cannot establish any causal link between a purported policy of the Board and the harm she alleges. Kitch's generalized statements relating to training, LSU's 2017 audit, and failure to report complaints or to engage in investigations could not have prevented Kitch's harm. Kitch and Moe each received LSU's training on Title IX and sexual harassment. (Sanders Decl. ¶¶ 3, 6; Kitch 96-97) Despite this training, Kitch did not report the alleged incident because of fear. There is no evidence to support her contention that her failure to report was a result of any alleged official policy of LSU.[42]

## IV. CONCLUSION.

For the reasons set forth above, Kitch's claims must be dismissed as a matter of law.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:  /s/ *Susan W. Furr*
Shelton Dennis Blunt Bar Roll No. 21230
Susan W. Furr Bar Roll No. 19582

---

the heightened risk of assault at popular off-campus apartment complex for football players "based on the stereotypical assumption that football players are more prone to commit sexual assault" because such argument is based on theories of respondent-superior and constructive notice, both of which the Supreme Court rejected in *Gebser*, 524 U.S. at 282).
[40] *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1174 (10th Cir. 2007).
[41] *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).
[42] *See Tackett*, 234 F.Supp.3d at 1107.

        Karleen J. Green Bar Roll No. 25119
        Jessica Coco Huffman LA Bar No.: 30445
        Molly McDiarmid Bar Roll No. 36426
        Gregory T. Stevens Bar Roll No. 29436
        Michael B. Victorian Bar Roll No.: 36065
        II City Plaza | 400 Convention Street, Suite 1100
        Baton Rouge, Louisiana 70802
        Telephone: 225 346 0285
        Facsimile: 225 381 9197
        Email: dennis.blunt@phelps.com
        Email: susie.furr@phelps.com
        Email: karleen.green@phelps.com
        Email: jessica.huffman@phelps.com
        Email: molly.mcdiarmid@phelps.com
        Email: greg.stevens@phelps.com
        Email: michael.victorian@phelps.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on June 30, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

        */s/ Susan W. Furr*
        Susan W. Furr