# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                           CIVIL ACTION NO.  3:21-CV-00242

VERSUS                                       JUDGE WENDY B. VITTER

LOUISIANA STATE UNIVERSITY, ET               MAGISTRATE JUDGE JOHNSON
AL.

## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 1: ASHLYN MIZE ROBERTSON

The Board submits this reply memorandum in support of its Motion for Summary Judgment No. 1: Ashlyn Mize Robertson ("Mize" or "Plaintiff").  For the reasons set forth below and in the Board's original memorandum, Mize's claim should be dismissed with prejudice. [1]

## I.    MIZE'S ARGUMENTS OF POST-REPORTING CONDUCT RELATE TO DISMISSED CLAIMS.

This Court dismissed Mize's post-reporting deliberate indifference claim, leaving only a heightened risk claim, a "before" violation, which focuses on conduct occurring pre-assault. Nevertheless, Mize argues numerous points in her opposition that relate to post-assault occurrences, which are irrelevant to her pre-assault claim.  For example, Mize argues that the Title IX office "concealed" Doe's name in the Maxient system to protect Doe, but whether or not that occurred has nothing to do with Mize's pre-assault heightened risk claim.  The same is true for her arguments regarding LSU's **response** to Mize's alleged assault.

Similarly, Mize's discussion of alleged post-assault conduct, such as Doe allegedly saying he had a gun with her name on it, calling her a bitch, and someone with Doe's initials allegedly throwing a protein shake on her car are all post-assault allegations, none of which

---

[1] The Board accepts Plaintiff's facts as true for purposes of its motion and memoranda only.  The Board adopts and incorporates by reference the arguments and evidence submitted in support of its motion, as well as the arguments and evidence referenced in the Board's other reply memoranda.

relate to her heightened risk claim, and all of which were dismissed with her deliberate indifference, hostile environment, and retaliation claims.   (R. Doc. 340, p. 44; Mize Opp. p. 3)[2]

## II.    MIZE'S SUMMARY JUDGMENT CONCESSIONS DEFEAT HER CLAIM.

While Mize refers to the Board's facts as "cherry-picking," she does not actually refute the facts (which consist largely of her own testimony).  Mize, through her silence, concedes the following facts and arguments:

- Plaintiffs did not plead a pre-assault heightened risk claim with respect to Mize.  Her claim fails for this reason alone.

- While Mize's opposition memorandum differentiates, for the **first time**, between what she now terms "Perpetrator-based Heightened Risk" and "Policy-based Heightened Risk,"[3] she concedes that Mize does not assert a Perpetrator-based Heightened Risk Claim.  She states: "In the present matter, all Plaintiffs have Policy-Based Heightened Risk claims; Plaintiffs Jade Lewis, Calise Richardson, Abby Owens, and Samantha Brennan also have Perpetrator-Based Heightened Risk claims."  (Mize Opp. p. 7)  She omits herself from the listing, undoubtedly due to the fact that Mize is the **first** of the Plaintiffs to have alleged conduct by Doe and Doe never committed another sexual act against her.  (Mize 132; R. Doc. 182, ¶¶ 242-250)

- Although Mize makes several official policy allegations about LSU's Title IX process, she admits that Fuentes-Martin (in LSU's Title IX office) "encouraged Plaintiff to make a Title IX report, but Plaintiff was too afraid to do so." (Mize Opp. p. 3)

---

[2] Moreover, Mize concedes that she never reported any such information to LSU.  (Mize 116, 124, 133-134)
[3] *See Cutrera v. Board of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). The Board also disputes Plaintiffs' characterization of two heightened risk claims, for reasons including that an official policy heightened risk claim is not available in the Fifth Circuit. Should this Court conclude an official policy claim is unavailable in the Fifth Circuit, summary judgment is warranted as a matter of law because Plaintiff has abandoned any other heightened risk claim. (*See* Mize Opp. p. 7)

- Plaintiff acknowledges she was not subjected to sexual assault by Doe following the one alleged incident in her apartment.  (Mize 132)

- As of February 5, 2016, Mize met with the Lighthouse Program, received notice of available resources, was informed by email of LSU's resources for victims of sexual assault, and was asked to report the incident. (Mize 116, 118-120; Mize Exhs. 2, 3) She knew of the training she received prior to the alleged assault. (Mize 162) Further, as of February 5, 2016, Mize knew of her injury, knew of the perpetrator, and knew how LSU responded. (Mize 118-119, 124; Mize Exh. 3; *see also* R. Doc. 340, p. 18)

## III.    VULNERABILITY ALONE DOES NOT ESTABLISH A TITLE IX CLAIM.

Mize tries to overcome the fact that she has no evidence of any pre-assault wrongdoing necessary for a heightened risk claim by arguing that, while she was not harassed a second time by Doe, she remained "vulnerable" to harassment after her first instance. In doing so, she attempts to allege that LSU's post-assault actions caused a heightened risk and that mere "vulnerability," with no severe, pervasive, and objectively offensive harassment, is sufficient.

While Mize is correct that *Davis's* causation standard requires that the deliberate indifference "subject" the student to harassment, either by way of the student undergoing harassment or making the student vulnerable **to it**, she ignores that *Davis's* language refers to "vulnerability" that actually results in further harassment.[4]  In *Kollaritsch v. Michigan State University Board of Trustees,* a **post-assault** case, the court concluded that a plaintiff must suffer further harassment after the school receives actual knowledge in order to subject the school to liability for post-reporting conduct.[5]   The court specifically rejected the position advanced by Mize, reasoning that:

---

[4]*Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644-45 (U.S. 1999).
[5]*Kollaritsch v. Michigan State University Board of Trustees,* 944 F.3d 613, 623 (6th Cir. 2019).

The *Davis* Court described wrongful conduct of both commission (directly causing further harassment) and omission (creating vulnerability that **leads to further harassment**). The definition presumes that post-notice harassment has taken place; vulnerability is simply an alternative pathway to liability for harassment, not a freestanding alternative ground for liability.[6]

Plaintiffs cite to *Doe v. Metropolitan Government of Nashville and Davidson County, Tennessee*, which discussed the implications of *Kollaritsch* in terms of **pre-assault** violations.[7] Contrary to Mize's suggestion, the *Doe* court supports the Board's cited authorities and argument that vulnerability alone is insufficient. *Doe* distinguished *Kollaritsch* on the basis that the latter was limited to an "after" claim, whereas *Doe* also involved a "before" claim. In the context of a "before" claim, the *Doe* court merely clarified that a plaintiff may succeed on a claim based on a single incident of harassment **experienced by the plaintiff**, but there still must be other prior incidents of sexual misconduct to trigger liability.[8] As explained in *Doe*, a "before" claim requires "that the student show that the school's response to [prior] reports of sexual **misconduct** . . . lead to further **misconduct** [to the plaintiff], exactly what *Kollaritsch* requires for 'after' claims."[9] Per *Doe,* a past act of deliberate indifference must **cause** the harassment that forms the basis of the plaintiff's complaint; it is insufficient that a deliberately indifferent response causes a student to remain vulnerable, without more:

> "Before" claims consequently keep a student's vulnerability to harassment or sexual misconduct, without more, from forming the basis of a Title IX claim, just as *Kollaritsch* did in the context of student-on-student, university-based harassment claims.[10]

## IV. MIZE FAILS TO COME FORWARD WITH SUMMARY JUDGMENT EVIDENCE ESTABLISHING CAUSATION.

---

[6] *Id*. (emphasis added) (quotations and citation omitted).
[7] *Doe v. Metropolitan Government of Nashville and Davidson County, Tennessee,* 35 F.4th 459, 465 (6th Cir. 2022).
[8] *Id.* at 466.
[9] *Id.* at 465 (emphasis added) (citation and internal quotations omitted).
[10] *Id.* at 465-66 (citation omitted). To the extent Mize relies on *Doe* in the context of "after" claims, *Doe* is distinguishable because it arose in a high-school setting. Indeed, the *Doe* court acknowledged that *Kollaritsch* is the appropriate analysis for universities. *See Doe,* 35 F.4th at 467-468.

### a. No Causation to Support her Official Policy Arguments.

An official policy or custom must have caused the alleged assault, as opposed to "simply misconduct that happened to occur [at the school] among its students."[11]  Although Mize asserts that "official policy" heightened risk claims do not require a causation showing, her arguments state otherwise.  *Karasek*, which Mize acknowledges to be the proper "official policy" test, expressly requires a plaintiff to show that she suffered "severe, pervasive, and objectively offensive" harassment **as a result** of the school's policy of deliberate indifference.  (Mize Opp. p. 15, n. 64 (quoting *Doe*, 35 F.4th at 464-465))  Without question, *Davis* requires a causation showing— a plaintiff must show that a school's "deliberate indifference subject[ed] its students to harassment."[12]

In her opposition, Mize alleges the existence of three official policies:  (1) "willfully refusing to allocate sufficient funding to the Title IX program"; (2) "knowingly permitting various departments within the University, including Athletics, to circumvent the Title IX office and handle reports of sexual misconduct and harassment internally through school officials who were not given proper training"; and (3) "failing to follow industry-standard recommendations and best practices made by their own Title IX Coordinator and independent outside auditors." (Mize Opp. pp. 20-21)  Mize fails to introduce evidence to establish that any such "official policies" existed.  Significantly, Mize also introduces no evidence to causally connect these purported policies to her situation and injury.

Although Mize does not state how the second purported policy relates to her situation, the Board presumes she is referring to the fact that Miriam Segar in the Athletics Department first received the third-hand report about Mize's alleged assault.  The undisputed evidence shows

---

[11] *Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1174 (10th Cir. 2007).
[12] *Davis*, 526 U.S. at 644, 645; *see also, Doe v. Baylor Univ.*, 240 F.Supp. 3d 646, 660 (W.D. Tex. 2017).

Segar addressed the situation promptly, including immediately informing Mari Fuentes-Martin in the Title IX office who also promptly addressed the situation. (Segar I 267, 269, 271-272; Segar Decl. ¶ 7, Exh. 5; Mize 116, 118-119, 124; Mize Exhs. 2-3) Thus, Mize failed to show how this purported policy of reporting to Segar **caused** any detriment to Mize.[13] Moreover, this is a post-reporting response that is irrelevant to Mize's pre-assault claim.

Regarding the first and third purported policies, Mize again fails to introduce any evidence, much less argument, to establish a **causal** link between these purported policies and any harm to Mize. Instead, her argument on causation consists primarily of her summary statements. First, she states that "causation is a question of fact for the jury." (Mize Opp. p. 21) However, it is well-settled that, at the summary judgment stage, the plaintiff bears the burden of showing that a genuine factual dispute exists as to causation and, if the plaintiff fails to do so, summary judgment is appropriate.[14]

Next, she states that her alleged sexual assault was the kind "expected to result from LSU's policy of deliberate indifference to sexual misconduct on campus." (Mize Opp. p. 21) Again, Mize does not identify what prior "sexual misconduct on campus" existed at the time of her alleged assault, nor does she show any evidentiary basis for linking any prior LSU policy to the harm she allegedly suffered. Instead, her opposition brief speaks in generalities and quotes to string cites of authorities, without linking her arguments to evidence of Mize's own situation.

---

[13] *See Sanches v. Carrollton-Farms Branch Indep. Sch. Dist.*, 647 F.3d 156, 169-70 (5th Cir. 2011) (although school principal did not comply with district policy's reporting chain of command, the ultimate actions taken in investigating the complaint were what the district policy would have mandated, so the failure to report to the proper party was not clearly unreasonable or deliberately indifferent).

[14] *E.g., James v. Tex. Collin County*, 535 F.3d 365, 377 n.10 (5th Cir. 2008) (rejecting plaintiff's argument that the court was required to leave causation to the jury and noting that, "[w]hile causation is generally a question of fact to be left for the jury, at summary judgment the plaintiff bears the burden of showing that a genuine factual dispute exists," and if "the plaintiff fails to meet this burden, summary judgment is appropriate" (citation omitted)).

Mize has failed to show that the purported official policies, if any exist, had any impact on Mize. Her official policy arguments fail the required causation element.[15]

### b. No Causation to Support her Timeliness Argument.

On the topic of timeliness, Mize again argues generalities that have no bearing on what occurred with Mize.[16]  Similarly, she also claims the Husch Blackwell report is "relevant" to her timeliness burden, without providing any basis for relevancy.  Instead, she summarily states that the Husch Blackwell report first showed her generally that "LSU obscured information regarding its obligations by failing to provide proper training to both students and employees; failing to initiate investigations as appropriate; ignoring recommendations of experts in the field; purposefully underfunding the Title IX office; and instead allowing unqualified, untrained staff members to do their own *ad hoc* investigations."  (Mize Opp. p. 14)  Mize does not argue or introduce evidence of how proper training, timing of initiating investigations, recommendations of experts in the field, or underfunding of the Title IX office relates to her alleged assault.[17]

It is undisputed that Fuentes-Martin in the Title IX office promptly approached Mize and, as Mize admits, "encouraged Plaintiff" to file a Title IX report.  (Mize Opp. p. 3; Mize 116; Mize Exh. 2)  Thus, none of the alleged generalized failures had anything to do with Mize's own situation.  Rather, after admittedly being advised of all resources available to her, Mize simply

---

[15] Plaintiff argues that the Fifth Circuit recognizes an "official policy" heightened risk claim.  (Mize Opp. pp. 16-19)  The Board refers this Court to its arguments and controlling authorities detailed in its original memorandum in response to Plaintiff's argument in this regard.  (Mize Orig. Memo. pp. 16-21)

[16] Plaintiff relies on *Doe 1 v. Baylor* for her timeliness position. However, *Doe 1* is distinguishable. First, *Doe 1* was decided on a Motion to Dismiss, limiting the Court's focus to the allegations in the complaint and granting those plaintiffs the assumption of truth and the lower standard of "plausibility," which Plaintiff is not afforded at this summary judgment stage. *Doe 1 v. Baylor University*, 240 F.Supp.3d 646, 663 (W.D. Tex. 2017). In addition, *Doe 1* offered a mere four sentences of analysis with respect to prescription of plaintiffs' heightened-risk claims, with no discussion of each plaintiff's individual circumstance and knowledge. *Id*.

[17] Mize does not even define her "injury" clearly.  At some points, she appears to define her injury as her "treatment by LSU," or the alleged failure to provide post-reporting resources, or being "misinformed as to their rights."  (Mize Opp. pp. 11-12)  At another juncture, she refers to the correlation between "LSU's flawed Title IX program" and "deliberate indifference to discrimination."  (Mize Opp. p. 13)  While Plaintiff successfully confuses her points, she fails to overcome the essential inquiry: how the Husch Blackwell report demonstrated the causative relationship between LSU's misconduct and her assault.

chose not to make a complaint.  (Mize 118-119, 123-125, 133-134; Mize Exh. 3)   In her opposition, Mize said she knew at the time that "her reporting would likely not be handled correctly," but she offered no evidence that she did anything to investigate her options for better handling. (Mize Opp. p. 4) She maintains that she did not want to report. (Mize Opp. p. 3)

Similarly, Mize states that she "did not even know she could expect anything from her University, because LSU's Title IX resources were so deficient" to her.  (Mize Opp. p. 14) However, she admitted that LSU explained all available resources to her, and that Mize utilized the Lighthouse program.  (Mize 118-120; Mize Exh. 3)  Mize fails to identify how any of these resources were "so deficient."  Again, she simply alleges generalized failures without showing a causal connection between the alleged failures and her injury.

The other information she claims she learned from Husch Blackwell is post-reporting information, which is irrelevant to her pre-assault heightened risk claim.  For example, she states that, until issuance of the Husch Blackwell report, "Plaintiff did not and could not know what should have been done **in response to** her assault or the support and resources she was entitled to receive."  (Mize Opp. p. 14 (emphasis added))  LSU's actions "in response to her assault" and the responsive "support and resources" are post-reporting events relating to her dismissed deliberate indifference claim.  For the same reason, her statement that her claims did not accrue until Mize learned through Husch Blackwell that LSU should have assisted her or that it "actively concealed her complaint" lacks merit.  Mize introduced no evidence of what LSU allegedly did to fail to assist her, but either way, these events are post-reporting allegations and are irrelevant to her heightened risk claim.

Mize has failed to show what information from the Husch Blackwell report would have made any difference to her situation,[18] and generalized allegations are insufficient to avoid summary judgment.[19] Her claim is untimely.

## V.    MIZE OTHERWISE FAILS TO COME FORWARD WITH EVIDENCE TO SURVIVE SUMMARY JUDGMENT ON HER OFFICIAL POLICY CLAIM.

Mize fails to sustain her burden of submitting "significant probative evidence" necessary to avoid summary dismissal of her claim.[20]  Ironically, Mize cites the lower court's opinion in *Roe v. Cypress Fairbanks* (finding that the plaintiff failed to cite evidence capable of raising a genuine material fact as to three of the four *Karasek* factors), yet Mize, too, fails to raise a genuine material fact as to any of the *Karasek* factors.  For the first factor (a "policy" of deliberate indifference), Mize argues simply that whether a policy of deliberate indifference to reports of sexual misconduct exists is a question of fact for a jury.  (Mize Opp. pp. 19-20)  This is false, as Fifth Circuit courts have routinely held that determining whether a school's actions amounted to deliberate indifference may be decided as a matter of law on summary judgment.[21]

---

[18] Conveniently, Mize argues that had she known of Doe's other "victims," she "believes" she would have moved forward with reporting what happened to her. (Mize Opp. p. 4)  This statement is pure speculation.  Mize was the only known, alleged victim at the time, and she offered no evidence of any other persons who were allegedly assaulted by Doe before her such that she would have reported her claim had she not lacked such "knowledge."  Any alleged mismanagement by LSU has no impact on Plaintiff's allegation in this regard as it is undisputed that LSU received no reports regarding Doe's conduct prior to Mize's incident.  (Board 30(b)(6) I 48-49)

[19] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[20] *See State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).  For example, Mize cites to *Davis*, and she argues generally that claims against a school rest not on the underlying harassment but on the school's misconduct in the face of known student-on-student harassment.  (Mize Opp. p. 5)  However, Mize offers no evidence of any "known student-on-student harassment" that existed **before** Mize's alleged assault.  Similarly, Mize argues that LSU's deliberate indifference injured her, but she does not identify, much less introduce evidence, to show what, how, or why alleged deliberate indifference purportedly injured Mize. (*Id.*)  She argues that "severe, gender-based mistreatment played out on a 'widespread level' among students," but Mize introduced no evidence showing any such alleged mistreatment **prior to** Mize's assault.  (Mize Opp. p. 16)

[21] *Doe v. Dallas Independent School Dist.*, 220 F.3d 380, 387 (5th Cir. 2000) (citation omitted); *I.F. v. Lewisville Independent School District*, 915 F.3d 360, 370 (5th Cir. 2019) ("[P]laintiff's claim that courts should generally allow juries to decide the question of deliberate indifference is merely an advocacy position not grounded in law.").

Mize offers no disputed facts that would render summary judgment improper, nor do her arguments meet her burden of showing pre-assault deliberate indifference that affected Mize.[22]

As to the second factor, Mize states generically that a genuine issue of fact exists as to whether the Board's alleged policy of deliberate indifference created a heightened risk of sexual harassment that was known or obvious, but she identified no factual issues on this point.  For the third factor (the Board's lack of control), Mize does not even state that any material issues of fact exist.  Nor could she, as the Board relied on Mize's own testimony about the location and context of her alleged assault to show that Board control was lacking.  (*See* Board's Reply Memorandum in Support of Summary Judgment No. 2, Section III.a.)

Mize offered no factual issues relating to the fourth element (severe, pervasive, and offensive harassment).[23]  Instead, Mize discussed how she felt **after** the alleged assault, erroneously arguing the effect on her educational opportunities, which does not relate to whether the alleged conduct by Doe constituted severe, pervasive, and objectively offensive harassment.[24] (*See* Board's Memorandum in Support of Summary Judgment No. 1, Section III.C.c)

## VI.    CONCLUSION

For these reasons, Mize's heightened risk claim fails as a matter of law.

Respectfully submitted,
**JEFF LANDRY**
**ATTORNEY GENERAL**

---

[22] Plaintiff must meet a high bar in showing "deliberate indifference," beyond merely an inept investigation or lack of thorough response. (R. Doc. 340, p. 28 (quoting *Roe,* F.4th at 341 (quoting *Sanches* 647 F.3d at 167)). She must show "clearly unreasonable [conduct] in light of the known circumstances." *Davis,* 526 U.S. at 648; *I.F.,* 915 F.3d at 369 (internal citations omitted).

[23] Plaintiff states that "LSU's institutional policy of deliberate indifference directly caused the harm Plaintiff suffered . . . failing to ensure she was not deprived of these opportunities," but cites to no specific evidence in support of this sweeping statement.  (Mize Opp. pp. 22-23)

[24] Any loss of educational opportunities and other damages as a result of Doe's purported conduct cannot serve as evidence to establish the requisite severe, pervasive and offensive harassment, as the pertinent threshold inquiry is not the effect the conduct had on the individual, but rather whether the "harassment" itself was severe, pervasive, and objectively offensive. *See Sanches v. Carrollton-Farms Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (harassment must be severe, pervasive and objectively offensive) (citing *Davis*, 526 U.S. at 650)).

PD.42761125.1

BY:    /s/ Susan Furr
Shelton Dennis Blunt Bar Roll No. 21230
Susan W. Furr Bar Roll No. 19582
Karleen J. Green Bar Roll No. 25119
Jessica Coco Huffman LA Bar No.: 30445
Molly McDiarmid Bar Roll No. 36426
Gregory T. Stevens Bar Roll No. 29436
Michael B. Victorian Bar Roll No.: 36065
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: jessica.huffman@phelps.com
Email: molly.mcdiarmid@phelps.com
Email: greg.stevens@phelps.com
Email: michael.victorian@phelps.com

ATTORNEYS FOR THE BOARD OF
SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on August 22, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

/s/Susan Furr
Susan Furr

PD.42761125.1