UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, ET AL.** | **CIVIL ACTION NO. 3:21-CV-00242** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY, ET AL.** | **MAGISTRATE JUDGE JOHNSON** |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 3: CALISE RICHARDSON**

The Board submits this memorandum in support of its Motion for Summary Judgment No. 3: Calise Richardson ("Richardson").[1] For the reasons set forth below and in the Board's original memorandum, Richardson's claims should be dismissed with prejudice.[2]

**I.    RICHARDSON'S POST-ASSAULT ARGUMENTS SHOULD BE DISREGARDED AS IRRELEVANT.**

Richardson devotes the bulk of her opposition to discussion of LSU's post-assault **response** to her purported complaint to Keava Soil-Cormier and Sharon Lewis, which is irrelevant to her pre-assault heightened risk claim. For example, the following all relate to post-assault conduct: (1) response of Soil-Cormier to Richardson's statement that Doe tried to have sex with her, including hearsay allegations about Soil-Cormier spreading rumors; (2) response of Soil-Cormier and Sharon Lewis to Richardson's statement about the JL's Incident with Coe; (3) Doe's alleged anger at Richardson in the days after their one sexual incident; (4) all allegations about Coe being released from jail and trying unsuccessfully to reach Richardson; and (5) the Title IX office's PM73 investigation of Sharon Lewis in October 2018 (including whether it included Coe and whether Lewis received discipline). (Richardson Opp. pp. 3-4, 6, 8-11)

---

[1] The Board accepts Plaintiff's facts as true for purposes of this motion and memorandum only.
[2] The Board adopts and incorporates by reference the arguments and evidence submitted in support of its motion, as well as the arguments and evidence referenced in the Board's other reply memoranda.

1

Richardson also includes arguments regarding her claim that she was terminated from her student worker position based on Title IX retaliation. (Richardson Opp. p. 11) Richardson's arguments fly in the face of this Court's dismissal of her retaliation and deliberate indifference claims. (R. Doc. 340, p. 44) All such allegations should be disregarded.

**II.    RICHARDSON'S ALLEGATIONS THAT ARE UNSUPORTED BY EVIDENCE AND THAT WERE UNKNOWN TO LSU SHOULD BE DISREGARDED.**

Richardson's opposition contains many statements that are unsupported by record evidence. For example, her opposition states that "For reasons unknown to Plaintiff, Sharon Lewis was named as the respondent in the investigation instead of John Coe, . . . ." (Richardson Opp. p. 10) Richardson's own testimony establishes that she knew precisely why Sharon Lewis was named in the PM73 report, specifically because during counseling at the LSU Health Center, Richardson decided she wanted to hold Sharon Lewis accountable for her response to the JL's Incident. (Richardson 203-205) Richardson went to Title IX because she was upset that, in her words, Lewis "knew and did nothing." (Richardson 221-222)

As another example, Richardson stated that "Plaintiff's harassment occurred both on and off campus . . ." (Richardson Opp. p. 13) Richardson cites no record evidence for this statement. Moreover, the statement is inconsistent with her testimony that the assault and other conduct by Doe occurred off campus. (Richardson 89, 93-94, Richardson II 22)

Her opposition states that "Coe appeared uninvited at Richardson's apartment complex, acting aggressively and threatening." (Richardson Opp. p. 5) Plaintiff testified that she never had contact with or saw Coe when he was allegedly behaving that way; she just "heard" from other people that he came to her apartment complex and was trying to find her. (Richardson 184-185)

Plaintiff's opposition falsely states that "Plaintiff's grades drastically declined" in connection with Coe's "presence on campus."[3] (Richardson Opp. p. 7) Richardson's transcript shows this allegation is unsupported. As shown by the Board, Richardson's grades in Fall 2017 actually improved from prior semesters, to a 3.56. (Richardson 275-76; Richardson Exh. 26) Richardson's GPA for the remainder of her time at LSU exceeded a 3.3 each semester. *Id.*

Richardson states in her opposition that Soil-Cormier "began spreading office rumors about Plaintiff's sexual activity, . . ." (Richardson Opp. p. 8) This statement is based on inadmissible hearsay evidence. (Richardson 107-109)

Richardson's opinion that she was treated "like a piece of meat" is not supported by evidence. Student employee rules precluded her from seeing football recruits outside of work hours, fraternizing with them, or giving football recruits her personal contact information. (Richardson 76, Richardson Exh. 2)

Richardson stated that "Doe stalked Plaintiff in the weight room." (Richardson Opp. p. 8) Plaintiff's weight room testimony was about **Coe** and indicates that Coe did not "stalk" her in the weight room.[4] Rather, Richardson said she was working out in the weight room when Coe came in to work out as well. She said Coe proceeded to work out at nearby stations during which time she perceived his behavior to be "obnoxious." (Richardson II 14-16).

Similarly, Richardson's allegations of conduct that she never reported to LSU are also irrelevant. For example, Richardson advances arguments regarding statements allegedly made by Tony Ball and Will Wright and of personal questions posed by Frank Wilson, Soil-Cormier, and Sharon Lewis. (Richardson Opp. p. 3-4) However, these allegations in her opposition are **not**

---

[3] Plaintiff offers no support for her conclusory allegation. The exhibit Plaintiff cites in support of this statement makes no sense, as it is screenshots of text messages between her and Coe which have no relation to grades. (Richardson Opp. n.54)
[4] Plaintiff mistakenly confuses her references to Doe and Coe at numerous points in her opposition.

3

accompanied by citations to record evidence showing that Richardson ever reported any of these events to LSU. Without evidence that LSU knew of these purported incidents, her arguments are irrelevant (as well as untimely). (*Id.* at p. 3)

Richardson claims in her opposition that she was raped by an LSU football player while she was drunk, stating "this was only the first of many times Richardson would be abused . . . with no repercussions for the perpetrators." (*Id.* at p. 2) Richardson testified that she never disclosed the incident to LSU. (Richardson 86) Thus, her suggestion that there should have been repercussions when LSU had no knowledge is misleading and irrelevant. Likewise, Richardson claims that she was raped by a "football recruit," but admits that she never reported this, and that the individual was not an LSU student, nor did he ever enroll. (Richardson Opp. p. 3; Richardson 84) Her suggestion surrounding this allegation is similarly irrelevant and misleading.

Richardson stated that "On at least one occasion Doe pinned Plaintiff against the wall, choking her and yelling at her." (Richardson Opp. p. 7) Richardson offers no evidence that she ever reported this to LSU.[5]

As a final example, Richardson stated that "At this point [Richardson's alleged disclosure about Doe to Soil-Cormier], the Athletics Department had received at least two other sexual assault accusations against John Doe from both Plaintiffs Brennan and Robertson, . . ." (Richardson Opp. p. 8) Richardson refers to the "Athletics Department" as though everyone possesses the same information. Richardson introduces no evidence that Soil-Cormier had any knowledge of the Mize or Brennan incidents.

These are just some of the examples of Richardson's unsupported assertions throughout her opposition that are insufficient to defeat summary judgment.

---

[5] This allegation also does not appear anywhere in Plaintiff's Complaint.

4

### III. RICHARDSON FAILED TO ESTABLISH THE ELEMENTS TO SUPPORT HER HEIGHTENED RISK CLAIMS.

### a. Richardson Concedes and Otherwise Fails Required Elements of her Perpetrator-Based Heightened Risk Claim.

Richardson concedes some of the essential facts underlying her perpetrator-based heightened risk claim, and in other instances, her arguments fail to establish required elements.

For the first element (actual knowledge of a substantial risk of sexual assault), Richardson does not argue any facts relating to her own situation or refute the evidence submitted by the Board. Rather, she simply adopts the memoranda pertaining to other plaintiffs, not Richardson herself. Regarding Coe, Richardson concedes (through her silence) that Richardson was the first plaintiff to have alleged an assault by **Coe**. She admits in her testimony that the conduct ceased after she allegedly reported it to Sharon Lewis. (Richardson II 14, Richardson 208-209) As already conceded by plaintiffs (including Mize and Hovis), Richardson cannot assert a perpetrator-based heightened risk claim for Coe's conduct because she was Coe's first alleged victim, meaning LSU did not have prior actual knowledge of a significant risk of sexual assault by Coe. Her heightened risk claim relating to Coe fails for this reason **alone**.

For the first element regarding Doe, Richardson also does not argue any facts relating to her own situation or refute the evidence submitted by the Board, thereby also conceding that LSU did not have actual knowledge that Doe posed a substantial risk of sexual assault. She only references Brennan's opposition, which does nothing more than state (without any evidence), that "multiple high-level officials" knew Doe committed sexual misconduct and did not take appropriate action. Richardson does not address, much less dispute, that plaintiffs Mize and Brennan were the only plaintiffs whom LSU knew may have experienced sexual misconduct by Doe prior to Richardson's allegation that he "tried to have sex" with her. (Richardson 96) The

5

Board adopts its prior briefing showing that Mize never provided underlying facts to LSU to establish what, if anything, happened to her. Brennan did not allege that she was sexually assaulted in any way. Instead, she identified that she stood for a nude picture that was distributed to two people. Brennan's claim was entirely different from the third-hand report about Mize and also entirely different from Richardson's sober sexual experience with Doe in which he tried to have sex with her and stopped (but got angry that she refused him). Richardson has not identified any material issue of fact to defeat summary judgment on this element.

For the second element, Richardson concedes that all conduct occurred off-campus besides two alleged events: (1) Coe[6] stalking Plaintiff in the weight room; and (2) Doe[7] threatening to get Plaintiff fired from her job and spreading rumors that Plaintiff was a "whore" and a "liar."[8] (Richardson Opp. p. 13)  Regarding the off-campus conduct, like many other plaintiffs, Richardson equates the right to discipline students with "control" over any context, which directly conflicts with the Supreme Court's holding in *Davis*, requiring that a school must exercise control over both the harasser **and** the context in which the harassment occurs.[9] Next, she concludes (without offering any evidence) that because the off-campus harassment "posed a direct threat to students' education" and school environment, the Board had sufficient control over the harassment. In support of this statement, she offers *Chen v. Albany Unified School District*, 56 F.4th 708 (9th Cir. 2022), which is wholly distinguishable law.  Not only is *Chen* a non-binding, out-of-circuit case, but it is also not a Title IX case.[10] Richardson offers no evidence or argument to show that LSU had control of the off-campus conduct at issue.

---

[6] Erroneously identified as Doe.
[7] Erroneously identified as Coe.
[8] Both of these alleged occurrences are post-assault conduct which should be ignored. Nonetheless, Plaintiff's testimony shows that Coe did not "stalk" her in the weight room. (Richardson II 14-16).
[9] *Davis*, 526 U.S. at 645 (emphasis added).
[10] Instead, *Chen* involved a First Amendment claim where the court was faced with determining whether a school had sufficient control over high school students' social media posts for free speech purposes. *Id*. at 721-22.

For the third element, Richardson does not challenge the Board's evidence and authorities showing Doe trying to have sex with her was not sufficiently severe, pervasive, and objectively offensive, nor does she challenge the sufficiency of the alleged incident with Coe at JL's. The Board outlined in detail, and with numerous citations to authority, why Plaintiff fails this element. (*See* Board Memorandum in Support of Motion for Summary Judgment No. 3, Section III.A.c.) Richardson does not raise any material issues of fact on this issue.[11] Instead, Richardson focuses on alleged conduct occurring post-harassment, including reference to post-reporting acts by Soil-Cormier and Lewis, which is irrelevant because (1) Richardson's post-reporting claims have been dismissed; and (2) Richardson has not offered any evidence of an occurrence of further actionable sexual harassment by Coe or Doe.[12] Richardson offers no argument or evidence regarding pervasiveness or whether the harassment was objectively offensive. (Richardson Opp. pp. 14-17)

Finally, for the fourth element, Richardson also does not dispute that the Board was not deliberately indifferent to any prior sexual misconduct by Coe or Doe. On this element, Richardson offers no evidence to create a material dispute regarding her pre-assault heightened risk claim. Rather, she argues post-assault conduct mirroring her dismissed post-reporting

---

[11] Richardson also improperly attempts to measure the severity of the harassment by the deprivation of educational opportunities. Any loss of educational opportunities and other items allegedly experienced by Richardson **as a result** of Coe's or Doe's purported conduct cannot serve as evidence to establish the requisite severe, pervasive and offensive harassment, as the pertinent threshold inquiry is not the **effect** the conduct had on the individual, but rather whether the "harassment" itself was severe, pervasive, and objectively offensive. *See Sanches v. Carrollton-Farms Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (**harassment** must be severe, pervasive and objectively offensive) (citing Davis, 526 U.S. at 650)).

[12] *See* n.5. Plaintiff's allegation regarding the weight room does not rise to sufficiently severe, pervasive, and objectively offensive behavior. Additionally, Plaintiff's self-serving assertion that Doe's conduct occurred on campus is unsupported. She admits this conduct occurred through text message and offers no evidence that the Board had sufficient control over texts sent from a personal phone at an unspecified location. (Richardson II 22) Richardson's allegations about Doe becoming "verbally abusive" and "trying to get her fired" occurred contemporaneously with the attempted sexual encounter. (Richardson 96) Richardson only offers inadmissible hearsay regarding Doe calling her a "whore" to football employees, as she admits in her deposition that she was only told he had done so. (Richardson 114) Further, Richardson admits that the instances of Coe trying to contact her after she blocked him occurred after August 27, 2018, when Coe was no longer a student. (Richardson II 12-13)

deliberate indifference claim. Specifically, she argues about the Board's alleged failure to take action **after** she allegedly reported in 2016, about Soil-Cormier's alleged **response** to Richardson's disclosure about Doe, and about LSU's alleged failure to connect her to resources **after** her alleged abuse, all of which are post-assault events having no bearing on her pre-assault claim.[13] She also makes an allegation regarding a purported "report" she made to Ausberry after Coe's arrest in 2018, but she acknowledges elsewhere in her opposition that Coe was no longer an LSU student at that time, so it is unclear what "appropriate action" she believes should have occurred when LSU certainly had no control over the harasser. (Richardson Opp. p. 9)

Overall, Richardson offers no evidence to establish her high burden of showing pre-assault deliberate indifference by LSU. She does not refute the fact that she was the first person to be allegedly assaulted by Coe. She also does not refute that she experienced no further actionable harassment by Coe after she "reported" to Sharon Lewis. With respect to Doe, she comes forward with no evidence to refute LSU's efforts with respect to Mize and Brennan's alleged experiences, which through ample evidence and legal support, the Board has shown to be reasonable. Instead, she merely adopts the portion of Brennan's opposition, where Brennan, acknowledging that Lewis treated Brennan fairly, only complains that Brennan had to file suit to obtain her police report, and that Brennan believed her police report should have included "distribution of the nude photo." (Richardson Opp. p. 17) Richardson's opposition makes no attempt to demonstrate how these purported acts of "deliberate indifference" had any effect on whether Richardson befriended Doe at her off-campus apartment, allowed him to spend the night, fooled around with him the next day, and then rebuffed Doe's advances to have sober sex. Although Richardson concludes her argument by stating there is "no doubt" that a jury could

---

[13] Ironically, Plaintiff states that LSU's dissemination of information regarding Title IX and Plaintiff arranging a speaker on sexual assault to present for her sorority are irrelevant, yet Plaintiff simultaneously complains that she was not connected with Title IX resources. (Richardson Opp. p. 17)

PD.42855994.1

find in favor of Plaintiff on this element, her conclusion is not consistent with her briefing. Richardson fails these elements.

### b. Richardson Failed to Meet Her Policy-Based Heightened Risk Elements.

As set forth in its original memorandum, the Board denies that an official policy claim is available, but even if so, Richardson fails to raise a genuine material fact as to any of the four *Karasek* factors, particularly because she offers no specific analysis to her own facts and experience and merely adopts other oppositions. Plaintiff altogether omits the second *Karasek* element. To the extent she relies on her previous arguments, for reasons set forth in Section III.a. above, Richardson cannot meet her burden on this claim, and summary judgment is warranted.

## IV.  RICHARDSON'S CLAIM IS UNTIMELY.

Richardson argues that accrual of her claims was delayed by learning of events in the Husch Blackwell report: (1) her report of Coe's abuse was never reported to Title IX; (2) Soil-Cormier, Ausberry, and Lofton were not interviewed during the investigation into Sharon Lewis' handling of Richardson's complaint about Coe; (3) football coach Dameyunne Craig wanted Richardson fired following the JL's incident; (4) Morgan Lewis conducted an investigation; (5) Segar redacted Doe's name from "her" Title IX report;[14] (6) Sharon Lewis appealed Lewis' Title IX investigation; and (7) Segar, Ausberry, and Soil-Cormier made inconsistent reports about Plaintiff's experience with Coe. (Richardson Opp. p. 18-19) All of these allegations are "after" events relating to Richardson's dismissed post-reporting deliberate indifference/ retaliation claims, not evidence supporting Richardson's pre-assault heightened risk claim.

Importantly, Richardson knew by October 2018 that Lewis had allegedly failed to report Coe's conduct because Richardson **filed her own Title IX complaint** about this exact behavior. (Richardson 203-205, 221-222) Plaintiff's argument that she did not know about this alleged

---

[14] The Board will assume that Richardson intended to refer to "Mize's" report and not Richardson's.

failure to report until the Husch Blackwell report is a misrepresentation. Second, Richardson's complaints related to the subsequent investigation of Sharon Lewis bear no relation to either of her pre-assault heightened risk claims, as the investigation sought to determine after the fact (not pre-assault) whether Lewis made a **reporting** mistake. Likewise, her claim that certain individuals made inconsistent statements is a post-reporting complaint and the alleged "inconsistent statements" were not made in the context of any Title IX investigation (since she alleges some were not interviewed), but rather to Husch Blackwell. (R. Doc. 1-1, p. 61-62) Her allegation with respect to Craig concerns her dismissed retaliation claim and also did not cause her any harm because the undisputed evidence shows that she was **not** fired. (Richardson 187, 189; S. Lewis 163-164) Finally, the Morgan Lewis investigation was conducted in 2019, after Richardson's alleged experience, and bears no relation to her claims.[15] (R. Doc. 1-1, p. 44)

As set forth previously by the Board, Richardson learning that Doe's name was not included in Mize's Maxient report is merely a tangential fact that does not overcome the untimeliness of her claim. Recall that Richardson did not even mention Doe's name when she reported the Coe/Sharon Lewis issue to Title IX. (Richardson 101-102) Plaintiff offers no argument, evidence, or fact showing any causal relationship between this purported information from the Husch Blackwell report and her failure to file suit. Plaintiff has not overcome the clear evidence that her claim is untimely.

V. **CONCLUSION**

For all of these reasons, Richardson's heightened risk claim fails as a matter of law.

> Respectfully submitted,
> **JEFF LANDRY**
> **ATTORNEY GENERAL**

---

[15] This newfound reference to the Morgan Lewis investigation, which appears nowhere in the Complaint or previous briefing, emphasizes Plaintiff's eleventh-hour attempt to avoid the untimeliness of her claim.

        BY:    */s/ Susan Furr*
Shelton Dennis Blunt Bar Roll No. 21230
Susan W. Furr Bar Roll No. 19582
Karleen J. Green Bar Roll No. 25119
Jessica Coco Huffman LA Bar No.: 30445
Molly McDiarmid Bar Roll No. 36426
Gregory T. Stevens Bar Roll No. 29436
Michael B. Victorian Bar Roll No.: 36065
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: jessica.huffman@phelps.com
Email: molly.mcdiarmid@phelps.com
Email: greg.stevens@phelps.com
Email: michael.victorian@phelps.com

ATTORNEYS FOR THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on August 22, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

/s/ *Susan W. Furr*
Susan W. Furr