UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, ET AL.** | **CIVIL ACTION NO. 3:21-CV-00242** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY, ET AL.** | **MAGISTRATE JUDGE JOHNSON** |

## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 6: JANE DOE

The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board") submits this reply memorandum in support of its Motion for Summary Judgment No. 6: Jane Doe ("Plaintiff" or "Doe").[1] For the reasons set forth below and in the Board's original memorandum, Doe's claim fails as matter of law.[2]

### I. DOE'S ARGUMENTS OF POST-REPORTING CONDUCT RELATE TO DISMISSED CLAIMS.

This Court dismissed the post-reporting deliberate indifference claim asserted by Doe, ruling that "Plaintiffs' Title IX deliberate indifference and hostile environment claims, asserted in Counts I and II of the Second Amended Complaint, . . . are time barred." (R. Doc. 340, pp. 19-20) Her sole remaining claim is one for heightened risk, a "before" violation, which is limited to conduct occurring before Poe's alleged harassment. Nevertheless, in her opposition, Doe argues numerous points that relate to post-harassment occurrences, essentially attempting to obtain another bite at the apple on her dismissed "deliberate indifference" claim. For example, Doe complains about the investigation of her complaint, the issuance of the No-Contact Order against

---

[1] The Board accepts Plaintiff's facts as true for purposes of its motion and memoranda only.
[2] The Board adopts and incorporates by reference the arguments and evidence submitted in support of its motion, as well as the arguments and evidence referenced in the Board's other reply memoranda.

1

Poe, and the lack of sufficient counseling sessions. (Doe Opp. pp. 9-10) These arguments are based on conduct that occurred after the alleged harassment by Poe and are completely unrelated to her remaining pre-assault heightened risk claim.

## II.   DOE'S HEIGHTENED RISK CLAIM IS PRESCRIBED.

Doe cannot establish that her claim was filed timely. In the Second Amended Complaint and Jury Demand (the "Complaint"), Doe alleged, generally, not in the heightened risk context, that she learned several things from the Husch Blackwell Report that put her on notice of her heightened risk claim, including (1) "LSU, including specifically Defendant Stewart, had specific knowledge of the pervasive harassment and retaliation Plaintiff Doe and others suffered;" (2) "Her claims fell under the scope of LSU's Title IX Policy;" (3) "LSU and its employees, specifically Defendant Stewart, had concealed all notes from Plaintiff Doe's multiple interviews and had misrepresented the facts of her report;" (4) "LSU and its employees failed to train Plaintiff Doe on the resources available to her as a survivor;" and (5) "LSU's Title IX Policy is meant to prevent the specific emotional distress that Plaintiff Doe endured." (R. Doc. 182, ¶ 649) These allegations are limited to to post-harassment information, which is irrelevant to Doe's pre-assault heightened risk claim.[3]

In her opposition, Doe argues, without explanation, that she "did not and could not have become aware of the Board's violations of her rights until the release of the Husch Blackwell report." (Doe Opp. p. 9) This statement suggests Doe is focused on conduct that occurred after the alleged harassment by Poe and her subsequent report. Moreover, although Doe argues that she learned of "LSU's Title IX failures with respect to other students" after reading the Husch

---

[3] The last allegation merely suggests that Doe was unaware of the purpose of Title IX, which is irrelevant to the issue of timeliness.

Blackwell Report, Doe does not identify any information in the Husch Blackwell Report that is related to her pre-assault claim.

The timeframe applicable to the conduct about which Doe complains is undisputed. The alleged harassment occurred in the fall of 2018 and spring of 2019. (Doe Opp. pp. 2-4) Doe reported Poe in March 2019, and the investigation of Doe's complaint was completed in June 2019. (Doe 32, 46, 84-85; Doe Exhs. 8-9; Sanders Decl. ¶12, Exhs. 6, 7) Doe did not have any interaction with Poe after her report to Residential Life in March 2019. (Doe 46) Doe's claim is clearly untimely, and therefore, should be dismissed.

### III. DOE'S CONCESSIONS PROVE SUMMARY JUDGMENT IS WARRANTED.

Doe has not introduced appropriate summary judgment evidence to refute the undisputed evidence introduced by the Board. Doe fails to address numerous significant facts and arguments supporting summary dismissal of her heightened risk claim, including:

- Plaintiffs did not plead a heightened risk claim with respect to Doe. Her claim fails for this reason alone. Consistent with her focus on post-harassment conduct, every example of how LSU created a heightened risk of sexual misconduct for Poe's victims set forth in the Complaint involves conduct occurring after Doe's alleged harassment by Poe. (R. Doc. 182, ¶ 934(a)-(c))

- In her attempts to confuse the issues before the Court by focusing on post-harassment conduct, Doe fails to cite any conduct prior to her alleged harassment to support her heightened risk claim.

- In their opposition memoranda, Plaintiffs differentiate **for the first time** between "Perpetrator-based Heightened Risk" and "Policy-based Heightened Risk." According to Plaintiffs: "In the present matter, all Plaintiffs have Policy-Based Heightened Risk

claims; Plaintiffs Jade Lewis, Calise Richardson, Abby Owens, and Samantha Brennan also have Perpetrator-Based Heightened Risk claims . . . ." (Mize Opp. p. 7)  Doe is not identified as asserting a Perpetrator-Based Heightened Risk claim, undoubtedly because she is the first and only plaintiff alleging conduct by Poe.[4]

- Through her silence, Doe admits she received information about LSU's policies regarding campus safety, and she was required to complete MyStudentBody training, a program that addresses alcohol, drugs, and sexual violence before November 2, 2018. (Doe 127-129; Doe Exhs. 20-21; Sanders Decl. ¶ 3)[5]

- Throughout her opposition brief, Plaintiff takes great liberties and mischaracterizes her testimony and the evidence in an effort to manufacture fact issues on her claim.  For example, Doe alleges that Poe was not disciplined for past instances of misconduct. (Doe Opp. p. 9)  However, in her deposition, Doe testified that she has no personal knowledge of whether Poe was disciplined.  (Doe 52) Additionally, Doe claims she did not report Poe because she was concerned her Resident Assistant ("RA") would not believe her or make her move.  While Doe cites page 37 of her deposition in support of this claim, Doe's testimony on the cited page actually relates to her reluctance in getting a different roommate because of her friendship with her roommate.  Wholly absent from her testimony is any concerns about not being believed by her RA.  Rather, Doe testified that during the year there was a change in RA, and the students did not like the replacement.  Doe further testified that she felt comfortable with her former RA, and she ultimately reported Poe to her.  (Doe 49) It is undisputed that within hours

---

[4] Should this Court conclude a "Policy-based Heightened Risk" claim is unavailable in the Fifth Circuit, summary judgment is warranted as a matter of law because Plaintiff has abandoned any other heightened risk claim. (*See* Board Memorandum in Support of Motion for Summary Judgment No. 1, Section III.D.)
[5] Doe claims she was fearful of reporting Poe, but as explained in Section V.b., her position is not substantiated.

4

of Doe's report, she met with a representative from Residential Life who informed her about available resources like the Lighthouse Program, a "No Contact" order, and the LSU Police Department. (Doe 55-56) Further, Doe alleges that LSU failed to provide "sufficient counseling sessions . . . ." (Doe Opp. p. 9). However, it is undisputed that Doe used Lighthouse resources, including therapy and academic accommodations. (Doe Exhs. 4, 16) In fact, in her deposition, Doe testified that she met weekly with Crystal Loup in the Lighthouse Program from March 2019 to fall 2019. (Doe 63)[6]

## IV.   VULNERABILITY ALONE DOES NOT ESTABLISH A TITLE IX CLAIM.

*See* the discussion set forth in Reply Memorandum No. 1, Section III, which is adopted herein by reference.

## V.   DOE DOES NOT HAVE A VIABLE HEIGHTENED RISK CLAIM.

### a.   Doe Does Not Establish Causation to Support Her Official Policy Arguments.

*See* the discussion set forth in Reply Memorandum No. 1, Section IV.a., which is adopted herein by reference. In the opposition, Doe identifies numerous items that she claims are "[e]vidence of LSU's deliberate indifference **with respect to Doe** . . . ." (Doe Opp. p. 9 (emphasis added)) Specifically, Doe challenges several actions, including but not limited to, LSU's questioning of Doe during the investigation, failure to interview her witnesses, and failure to implement a No-Contact Order against Poe and/or failure to properly document such order. All of this conduct occurred **after** Doe's alleged harassment and cannot serve the basis for her heightened risk claim. Moreover, for the reasons set forth in the Board's original memorandum, the Board's actions in response to Doe's complaint do not show deliberate indifference. (*See* Board

---

[6] Doe's argument suggests LSU did not provide adequate resources to address Poe's conduct. However, Doe fails to offer any appropriate summary judgment evidence to support her argument and conveniently omits the impact of her pre-existing medical conditions on the need for additional resources.

5

Memorandum in Support of Summary Judgment No. 6, Sec. III.B.c.i) Doe cannot establish that the Board's purported official policies subjected her to harassment or made her vulnerable to further harassment that actually occurred as required by *Davis*. Therefore, her claim fails as a matter of law.[7]

### b. Doe Has Failed to Establish Essential Elements of Her Claim.

*See* the discussion set forth in Reply Memorandum No. 1, Section V, which is adopted herein by reference. As to the first *Karasek* factor (a "policy" of deliberate indifference), for the reasons outlined above (in Section V.a.), Doe fails to show a pre-assault policy of deliberate indifference that affected her.

With regard to the second factor (a known or obvious risk), Doe attempts to meet her burden by (1) arguing she was hesitant to report Poe because she was afraid he would not suffer any consequences, and (2) challenging the manner in which her Title IX complaint was handled. As previously mentioned, Doe has no evidence to substantiate her concern that Poe would not be disciplined. In fact, in her deposition, Doe admitted that her knowledge of any prior misconduct by Poe is based on what her roommate told her. (Doe 52) Doe does not and cannot dispute that her report of harassment by Poe was the first report regarding Poe that LSU received. (Board 30(b)(6) I 48-49) Moreover, other than unsubstantiated allegations, Doe has not alleged or identified any conduct by Poe that would put LSU on notice of a particularized risk of harassment.

With regard to the fourth factor (*i.e.,* "severe, pervasive, and objectively offensive" harassment), Doe fails to establish that Poe's conduct was "severe, persuasive, **and** objectively

---

[7] While Doe alleges that Poe was not properly disciplined for prior misconduct, she has offered no evidence to dispute the Board's summary judgment evidence that her complaint was the first LSU received about alleged harassment by Poe. (Board 30(b)(6) I 48-49) Moreover, although Doe testified that Poe had "been in trouble," she admitted that she did not have personal knowledge of whether he had been disciplined. (Doe 52) Doe cannot defeat summary judgment with conclusory allegations. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing cases).

offensive." Rather, Doe focuses on the deprivation of educational benefits and opportunities she experienced "as a result of Poe's abuse and the Title IX Office's mishandling of her claim." (Doe Opp. p. 16) However, Doe cannot establish a claim without showing that she experienced harassment that is actionable under Title IX, and she fails to meet this burden.[8]

Doe cites two cases from the Middle District of Louisiana—*Henderson v. Board of Supervisors of Southern University A&M College* and *Doe v. Board of Supervisors of the University of Louisiana System*—in support of her argument that Poe's conduct is actionable.[9] (Doe Opp. pp. 13-14) Her reliance on *Henderson* is misplaced, as the court's opinion states that the standard for proving a **deprivation of educational benefits** requires showing a concrete, negative effect on a plaintiff's education.[10] A plaintiff must still show that she suffered severe, pervasive, and objectively offensive harassment.[11] Moreover, both cases are factually distinguishable. *Henderson* involved sexual harassment in a high school setting,[12] and *Doe* involved an alleged rape.[13] As can be seen, neither of these cases relieve Doe of her burden of showing she experienced harassment that is actionable under the law.[14] For the reasons set forth in the Board's Memorandum in Support of Motion for Summary Judgment No. 6, the evidence remains undisputed that the alleged conduct about which Doe complains falls far short of the

---

[8] Any loss of educational opportunities and other items allegedly experienced by Plaintiff **as a result** of Poe's purported conduct cannot serve as evidence to establish the requisite severe, pervasive and offensive harassment, as the pertinent threshold inquiry is not the **effect** the conduct had on the individual, but rather whether the "harassment" itself was severe, pervasive, and objectively offensive. *See Sanches v. Carrollton-Farms Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (**harassment** must be severe, pervasive and objectively offensive) (citing Davis, 526 U.S. at 650)).
[9] *Henderson*, 2023 WL 2614620 (M.D. La. March 23, 2023); *Doe*, 2023 WL 143171 (M.D. La. Jan. 10, 2023).
[10] *Henderson*, 2023 WL 2614620, at *10.
[11] *Id.*, at *11 n.6.
[12] *See* footnote 10 in the discussion set forth in Reply Memorandum No. 1, Section V, which is adopted herein by reference.
[13] *Doe*, 2023 WL 143171, at *11.
[14] *See Davis,* 526 U.S. at 652; *Kirkpatrick v. Sch. Bd. of Lafayette Parish,* 2022 WL 2679605, at *2 (W.D. La. July 11, 2022), aff'd, 2023 WL 2755579 (5th Cir. Apr. 3, 2023).

7

severe, pervasive and objectively offensive conduct for purposes of Title IX. (*See* Board Memorandum in Support of Motion for Summary Judgment No. 6, Section III.C.b.)

## VI. CONCLUSION

For the reasons stated in the Board's memorandum in support of its Motion for Summary Judgment No. 6: Jane Doe and herein, Doe's heightened risk claim fails as a matter of law and should be dismissed, with prejudice.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:  /s/ *Susan W. Furr*
Shelton Dennis Blunt Bar Roll No. 21230
Susan W. Furr Bar Roll No. 19582
Karleen J. Green Bar Roll No. 25119
Jessica Coco Huffman LA Bar No.: 30445
Molly McDiarmid Bar Roll No. 36426
Gregory T. Stevens Bar Roll No. 29436
Michael B. Victorian Bar Roll No.: 36065
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: jessica.huffman@phelps.com
Email: molly.mcdiarmid@phelps.com
Email: greg.stevens@phelps.com
Email: michael.victorian@phelps.com

ATTORNEYS FOR THE BOARD OF<br>
SUPERVISORS OF LOUISIANA STATE<br>
UNIVERSITY AND AGRICULTURAL<br>
AND MECHANICAL COLLEGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on August 22, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

*/s/ Susan W. Furr*
Susan W. Furr

PD.42883433.1