UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, ET AL.** | **CIVIL ACTION NO. 3:21-CV-00242** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY, ET AL.** | **MAGISTRATE JUDGE JOHNSON** |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 8: SARAH BETH KITCH**

The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board") submits this reply memorandum in support of its Motion for Summary Judgment No. 8: Sarah Beth Kitch ("Plaintiff" or "Kitch").[1] For the reasons set forth below and in the Board's original memorandum, Kitch's claim fails as matter of law.[2]

**I.   KITCH'S DECLARATION DOES NOT DEFEAT SUMMARY JUDGMENT.**

In support of her opposition to the Board's motion, Kitch submits her sworn declaration consisting of five paragraphs.[3] The Board acknowledges that the first three paragraphs contain information that may be appropriately included in a declaration and considered by the Court on summary judgment, although they do nothing to create a fact issue for purposes of precluding summary dismissal of Kitch's claim.[4] However, the self-serving information included in paragraphs 4 and 5 of the declaration, which is purportedly intended to establish the timeliness of Kitch's claim, should be disregarded by this Court.

---

[1] The Board accepts Plaintiff's facts as true for purposes of its motion and memoranda only.
[2] The Board adopts and incorporates by reference the arguments and evidence submitted in support of its motion, as well as the arguments and evidence referenced in the Board's other reply memoranda.
[3] Kitch is the only plaintiff to submit a declaration.
[4] Paragraph 2 of the declaration is intended to support Kitch's argument regarding the effects of Moe's alleged conduct, stating that she "first exhibited symptoms of Post Traumatic Stress Disorder in the Fall of 2015." (Kitch Decl. ¶ 5) Her argument invites the Court to assume her symptoms are solely related to Moe's conduct. Kitch conveniently fails to disclose that she testified in her deposition that she suffered what clinicians would describe as "severe child sexual abuse." (Kitch 152) In any event, Kitch's statements of medical opinion absent concurrence from her treating physician or other expert is not proper summary judgment evidence.

It is well-settled that "self-serving allegations are not the type of significant probative evidence required to defeat summary judgment. Thus, without more, a vague or conclusory affidavit is insufficient to create a genuine issue of material fact in the face of conflicting probative evidence."[5] Additionally, Kitch's conclusory allegation in paragraph 4 regarding news reports about this lawsuit cannot overcome her admission that the news reports contained no information related to her, and thus, cannot revive her otherwise untimely claim. (Kitch 152)[6] In short, Kitch cannot rely on unsubstantiated, self-serving statements to create a fact issue to defeat dismissal of her claim.[7]

## II.  KITCH'S HEIGHTENED RISK CLAIM IS PRESCRIBED.

Kitch cannot establish that her claim was filed timely. In the Second Amended Complaint and Jury Demand (the "Complaint"), Kitch alleged, generally, not in the heightened risk context, that she learned several things from the Husch Blackwell Report that put her on notice of her heightened risk claim, including (1) "LSU had specific knowledge of the pervasive harassment and retaliation Kitch and others suffered";[8] (2) "LSU and its employees failed to train Kitch on the resources available to her as a **survivor**"; and (3) "LSU's Title IX Policy is meant to prevent the specific emotional distress that Kitch endured." (R. Doc. 182, ¶ 740 (emphasis added))  Notably, Kitch retreats from this position in her opposition, presumably because the allegations relate to post-assault information, which is irrelevant to Kitch's pre-assault heightened risk claim.[9]

---

[5] *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013) (internal citations and quotations omitted).
[6] The excerpt from Kitch's deposition transcript is attached as Reply Memo Exhibit A for the Court's reference.
[7] *DeCossas v. St. Tammany Parish Sch. Bd.*, 2017 WL 3438347, at *8 (E.D. La. Aug. 10, 2017) (recognizing that a conclusory and self-serving affidavit, without other evidence, cannot create a factual dispute as to a necessary element of a claim).
[8] Kitch cannot show that the Husch Blackwell Report revealed any conduct by Moe.
[9] The last allegation merely suggests that Kitch was unaware of the purpose of Title IX, which is irrelevant to the issue of timeliness.

Realizing that her reliance on the Husch Blackwell Report is misplaced, in her opposition memorandum, Kitch focuses on two events as the basis for her knowledge of a claim. First, Kitch alleges she had two conversations with the Title IX Office in 2019, several years after she graduated. Although Kitch claims one of the individuals with whom she spoke told her ". . . no one would have done anything and it would have only caused you trouble," Kitch argues, without any explanation, "neither of those conversations [with the Title IX Office] did or could have alerted Plaintiff of the systemic failures at LSU's Title IX office." (Kitch Opp. p. 4). Second, Kitch submits a declaration in support of her opposition in which states that she "first learned of LSU's systemic mismanagement of Title IX and sexual misconduct via news reports about this lawsuit in April or May of 2021." This information is insufficient to establish the timeliness of Kitch's claim, particularly in light of her admission that such news reports contained no information related to her. (Kitch 152)

A careful review of Kitch's opposition shows her claim is untimely. Kitch focuses on alleged conduct by Moe in fall 2012 and fall 2013. (Kitch Opp. p. 2) Kitch also claims Moe kissed her sometime between fall 2012 and spring 2013. (Kitch Opp. pp. 2-3). Kitch acknowledges that she completed her dissertation in fall 2014. (Kitch Opp. pp. 3) Accepting the facts alleged by Kitch as true, she either knew of the conduct forming the basis of her claim in 2014 or, at the latest, in 2019, after her phone calls with the Title IX Office. Tellingly, Kitch states in her opposition that, when the woman in the Title IX Office inquired in 2019 as to why Kitch did not previously make a report, Kitch "stated that she thought it would jeopardize her status as a graduate student." (Kitch Opp. p. 3) Kitch's statement in this regard leaves no doubt that, prior to that alleged conversation in 2019, she had knowledge of alleged "failures at LSU's Title IX office" such that she did not previously make a report. Kitch's claim is clearly untimely.

3

### III. KITCH'S SUMMARY JUDGMENT CONCESSIONS DEFEAT HER CLAIM.

Kitch has not introduced appropriate summary judgment evidence to refute the undisputed evidence introduced by the Board. Kitch fails to address numerous significant facts and arguments supporting summary dismissal of her heightened risk claim, including:

- In their opposition memoranda, Plaintiffs differentiate **for the first time** between "Perpetrator-based Heightened Risk" and "Policy-based Heightened Risk." According to Plaintiffs: "In the present matter, all Plaintiffs have Policy-Based Heightened Risk claims; Plaintiffs Jade Lewis, Calise Richardson, Abby Owens, and Samantha Brennan also have Perpetrator-Based Heightened Risk claims . . . ." (Mize Opp, p. 7) Kitch is not identified as asserting a Perpetrator-Based Heightened Risk claim, undoubtedly because she is the first and only plaintiff alleging conduct by Moe.[10]

- Kitch does not dispute that (1) she did not have any physical contact with Moe that made her uncomfortable after he allegedly kissed her (Kitch 74), and (2) she did not report Moe's actions while she was enrolled at LSU (Kitch 94).

- Kitch concedes, through her silence, the Board's arguments relating to the unavailability of teacher-on-student heightened risk claims. (*See* Board Memorandum in Support of Motion for Summary Judgment No. 8, Section III.B.)

- Kitch also concedes, through her silence, the Board's arguments relating to her inability to establish any causal link between a purported policy of the Board and the harm she alleges. (*See* Board Memorandum in Support of Motion for Summary Judgment No. 8, Section III.D.d.)

---

[10] Should this Court conclude a policy-based heightened risk claim is unavailable in the Fifth Circuit, summary judgment is warranted as a matter of law because Kitch has abandoned any other heightened risk claim. (*See* Board Memorandum in Support of Motion for Summary Judgment No. 1, Section III.D.)

4

- In her Complaint, Kitch alleges "At the time that Kitch attended LSU, LSU was aware that Professor Moe continuously violated the Title IX Policy by actively performing overt acts of sexual misconduct, . . . ." (R. Doc. 182, ¶936(a))  However, Kitch has not provided any evidence to dispute the Board's evidence that Kitch's post-graduation report of Moe was the only report of Title IX-related conduct LSU had ever received regarding Moe. (Board 30(b)(6) I 48-49)

- In her Complaint, Kitch alleges "Because LSU had not properly trained its Responsible Employees, LSU allowed a known abuser to remain on campus with unfettered access to the student body." (R. Doc. 182, ¶936(b)) Kitch has not provided any evidence to dispute the Board's evidence regarding training.  It is undisputed that Moe received LSU Title IX training. (Sanders Decl. ¶ 6)  Additionally, as a student, Kitch completed MyStudentBody training, a program that addresses alcohol, drugs, and sexual violence, which all students are required to complete.  (Kitch 96-97; Sanders Decl. ¶ 3) Additionally, as an instructor, Kitch completed ethics, sexual harassment, and Title IX training.  (Kitch 94; Kitch Exh. 3)

**IV.  VULNERABILITY ALONE DOES NOT ESTABLISH A TITLE IX CLAIM.**

*See* the discussion set forth in Reply Memorandum No. 1, Section III, which is adopted herein by reference.

**V.  KITCH HAS FAILED TO ESTABLISH ESSENTIAL ELEMENTS OF HER CLAIM.**

*See* the discussion set forth in Reply Memorandum No. 1, Sections IV and V, which are adopted herein by reference.

Even if this Court disagrees and determines that Kitch's claim is timely, she fails to establish essential elements of her claim.  As to the first *Karasek* factor (a "policy of deliberate

5

indifference"), Kitch fails to establish the Board maintained a pre-assault policy of deliberate indifference that affected her. Kitch cites the conversation she had with an individual in the Title IX Office in 2019 as evidence of such a policy. Notably, Kitch uses this conversation as both a sword and a shield. Kitch argues that the alleged comment by the LSU staff person that a report would have only caused her trouble is evidence of a policy of deliberate indifference. On the other hand, in an effort to avoid dismissal of her claim on timeliness grounds, Kitch also argues that neither of her conversations with the Title IX Office "did or could have alerted Plaintiff of the systemic failures at LSU's Title IX office." (Kitch Opp. p. 4) Kitch's conflicting positions in this regard are untenable and do nothing to create a fact issue for purposes of avoiding summary judgment. Moreover, the isolated comment, without more, is not evidence of conduct by the Board that shows a policy of deliberate indifference. Kitch has not offered any evidence to support her claim of pre-assault deliberate indifference that caused her alleged injury.

As to the second element (a "known or obvious risk"), Kitch fails to meet her burden of proof by identifying any facts in dispute that would preclude summary judgment. As previously mentioned, Kitch does not dispute that her 2019 complaint was the first complaint of Title IX-related conduct LSU had ever received regarding Moe. (Board 30(b)(6) I 48-49) Moreover, Kitch does not offer any evidence of conduct by Moe that would put LSU on notice of a particularized risk of sexual misconduct.

Kitch further fails to establish the fourth element (*i.e.,* "severe, pervasive, and objectively offensive" harassment that can be said to deprive plaintiff of educational opportunities). For the reasons set forth in the Board's Memorandum in Support of Motion for Summary Judgment No. 8, the evidence remains undisputed that the alleged conduct about which Kitch complains falls far

6

short of the severe, pervasive and objectively offensive conduct for purposes of Title IX. (*See* Board Memorandum in Support of Motion for Summary Judgment No. 8, Section III.C.b.)

In addition, Kitch cannot establish that she was deprived of educational opportunities or benefits.[11] In particular, Kitch cannot and does not dispute the following: (1) she maintained a 4.0 grade point average while at LSU; (2) she received numerous academic awards and fellowships while at LSU; and (3) the members of her dissertation committee said she "performed with excellence." (Sanders Decl. ¶ 7, Exh. 2; Kitch 56; Kitch Exh. 9) Rather, Kitch focuses on medical treatment she claims is the **result** of her interactions with Moe, her inability to maintain a tenure track position, and her employment, which she views as less prestigious than a tenure track position.[12] These post-graduation events cannot save her Title IX claim from dismissal.[13]

## VI.   CONCLUSION.

For the reasons stated in the Board's memorandum in support of its Motion for Summary Judgment No. 8: Sarah Beth Kitch and herein, Kitch's heightened risk claim fails as a matter of law and should be dismissed, with prejudice.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

---

[11] Any loss of educational opportunities and other items allegedly experienced by Plaintiff **as a result** of Moe's purported conduct cannot serve as evidence to establish the requisite severe, pervasive and offensive harassment, as the pertinent threshold inquiry is not the **effect** the conduct had on the individual, but rather whether the "harassment" itself was severe, pervasive, and objectively offensive. *See Sanches v. Carrollton-Farms Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (**harassment** must be severe, pervasive and objectively offensive) (citing Davis, 526 U.S. at 650)).

[12] In support of her argument that she was deprived of educational opportunities and benefits, Kitch argues that she now works as a high school teacher. (Kitch Opp. p. 6) However, Kitch is currently the Associate Director for the Civitas Institute at The University of Texas at Austin. *See* https://civitas.utexas.edu/people/. At the time of her deposition, Kitch was employed as a high school teacher. However, she further testified that she was considering an offer to work at the University of Texas. (Kitch 168-169) In any event, this is immaterial because, as argued above, post-graduation events cannot establish a Title IX claim.

[13] *See Morales v. Corinthian Colleges, Inc.*, 2013 WL 3994643, at *9 (W.D. Tex. Aug. 2, 2013*)* (noting that post-graduation events cannot form the basis for a Title IX claim); *Pierce v. Houston Comm. Coll. Sys.*, 2022 WL 2659027, at *8, n.4 (S.D. Tex. July 9, 2022).

BY:    /s/ *Susan W. Furr*
Shelton Dennis Blunt Bar Roll No. 21230
Susan W. Furr Bar Roll No. 19582
Karleen J. Green Bar Roll No. 25119
Jessica Coco Huffman LA Bar No.: 30445
Molly McDiarmid Bar Roll No. 36426
Gregory T. Stevens Bar Roll No. 29436
Michael B. Victorian Bar Roll No.: 36065
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: jessica.huffman@phelps.com
Email: molly.mcdiarmid@phelps.com
Email: greg.stevens@phelps.com
Email: michael.victorian@phelps.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on August 22, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

                                                                   */s/ Susan W. Furr*
                                                                   Susan W. Furr

Reply Exh. A

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, SAMANTHA BRENNAN,
CALISE RICHARDSON, JADE LEWIS,
KENNAN JOHNSON, ELISABETH           CASE NO.
ANDRIES, JANE DOE, ASHLYN           3:21-CV-00242
ROBERTSON, CORINN HOVIS, AND
SARAH BETH KITCH

VS.

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL
COLLEGE, AND VERGE AUSBERRY,
MIRIAM SEGAR, JENNIE STEWART,
AND JONATHAN SANDERS, IN THEIR
INDIVIDUAL CAPACITIES

* * * * * * * * * * * * * * * * * * * * * * * * *

*** CONFIDENTIAL TRANSCRIPT ***

*** SUBJECT TO PROTECTIVE ORDER ***

The deposition of SARAH BETH KITCH, taken in connection with the captioned cause, pursuant to the following stipulations before RITA A. DEROUEN, Certified Court Reporter, at Phelps Dunbar, 400 Convention Street, Suite 1100, Baton Rouge, Louisiana 70802 on October 12, 2022, beginning at 8:58 am.

COURT REPORTERS OF LOUISIANA, L.L.C.
9522 Brookline Avenue, Suite 217
Baton Rouge, Louisiana  70809
PHONE (225) 201-9650 * FAX (225) 201-9651
E-mail:  depos@courtreportersla.com

1   categorize as severe child sexual abuse.
2       Q.  And is that the characterization that
3   Ms. Volk used?
4       A.  She never gave it a label.  I told her my
5   stories, and she helped me to think about them and
6   integrate them into my life so that I could live a
7   whole life.  We all get wounded, and her job was
8   to help me find ways to carry that particular set
9   of things, which she did.
10      Q.  How do you know that clinicians would
11  describe what happened as severe child sexual
12  abuse?
13      A.  I read it in some books on sexual abuse.
14      Q.  Did you read the USA Today article that
15  was published about LSU?
16      A.  I did.
17      Q.  Did you speak to anyone -- any reporters
18  from USA Today?
19      A.  I did not.
20      Q.  Was there anything in the article that
21  related to you?
22      A.  No.
23      Q.  Did you use social media while you were
24  attending LSU?
25      A.  I think I had a Facebook account that I