UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ABBY OWENS, ET AL. | CIVIL ACTION NO. 3:21-CV-00242 |
| VERSUS | JUDGE WENDY B. VITTER |
| LOUISIANA STATE UNIVERSITY, ET AL. | MAGISTRATE JUDGE JOHNSON |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 10: CORINN HOVIS**

The Board submits this memorandum in support of its Motion for Summary Judgment No. 10: Corinn Hovis ("Hovis").[1] For the reasons set forth below and in the Board's original memorandum, Hovis' claims should be dismissed with prejudice.[2]

### I. HOVIS' ARGUMENTS REGARDING DISMISSED CLAIMS AND MISREPRESENTATIONS OF EVIDENCE SHOULD BE DISREGARDED.

This Court dismissed Hovis' deliberate indifference claim **except** "based upon John Loe's alleged violation of a no-contact directive." (R. Doc. 340, pp.19-20) Thus, the only remaining claims are (1) deliberate indifference for violation of the no-contact order; and (2) pre-assault heightened risk. Despite these narrow topics, Hovis devotes a substantial portion of her opposition to arguing about other purported acts of deliberate indifference that she never pled.[3] These arguments are irrelevant and should be disregarded. For example, Hovis' arguments about the discipline that Loe received following her alleged assault, about plaintiff's medical diagnoses following her alleged assault, about Hovis' requests for accommodations from professors and staff, and about Hovis' claim that counselors disregarded and minimized her trauma after her assault,

---

[1] The Board adopts and incorporates by reference the arguments and evidence submitted in support of its motion, as well as the argument and evidence referenced in the Board's other reply memoranda.
[2] The Board accepts Plaintiff's facts as true for purposes of its motion and memorandum only.
[3] Hovis' Complaint only alleges deliberate indifference in response to Loe allegedly violating his no-contact directive twice. (R. Doc. 182, ¶¶ 837, 839) This Court has already agreed that Plaintiff's only deliberate indifference claim relates to LSU's response to Loe's alleged violation of the no-contact order. (R. Doc. 340, pp. 19-20)

1

are all post-assault events that have no bearing on her heightened risk claim. (Hovis Opp. pp. 2-4, 9-10) Despite this Court's clear statement limiting Hovis' deliberate indifference claim to the no-contact order, Hovis states that "a reasonable jury could find LSU's arbitrary denial of Plaintiff's proven needed accommodations rises to the level of deliberate indifference." (Hovis Opp. p. 11)[4] Such a statement flies in the face of this Court's order limiting her deliberate indifference claim.

Plaintiff also misrepresents the evidence. For example, she states "Neither LSUPD nor Plaintiff's made a report to the Title IX office." (Hovis Opp. p. 2) The undisputed evidence shows that LSU's Residential Life staff (in Hovis' dorm) promptly reported the incident to LSU's Title IX office. (R. Doc. 182, ¶ 669) Similarly, Hovis misleadingly states that "Plaintiff's resident assistant (RA) called the LSU Police Department; police arrived and told Plaintiff they could not do anything because the rape did not occur on campus." (Hovis Opp. p. 2) The undisputed evidence shows that the Baton Rouge Police Department, not LSU Police Department, told Hovis they could not pursue her complaint. (R. Doc. 182, ¶¶ 667-668) LSUPD did take action by driving Hovis to the hospital for a SANE test. *Id.*

Hovis states that "[f]ollowing each of Loe's violations of the no-contact order, neither Title IX Coordinator Jennie Stewart nor Director of Student Advocacy & Accountability Jonathan Sanders initiated the appropriate investigation. . . " (Hovis Opp. pp. 9-10) The undisputed evidence shows this statement is false. Sanders responded almost immediately to Hovis, asking whether she knew the identity of the person, encouraging her to block the sender, and informing her that he would look further into the situation. (Sanders Decl. ¶ 16, Exh. 12) Hovis replied that she did

---

[4] Similarly, Hovis argues that this Court should look to other new claims: ". . . a reasonable jury could find that LSU's other conduct **in response to** both Plaintiff's rape and her subsequently reported harassment subjected Plaintiff to additional sex discrimination, or at a minimum subjected Plaintiff to being vulnerable to further harassment." (Hovis Opp. p. 9 (emphasis added))

2

not know the identity. *Id*. Sanders investigated with Miriam Segar to determine if LSU Athletics knew the owner of the account, and with the LSUPD to determine if there was a way to determine the account ownership. (Sanders 156; Sanders Decl. ¶ 16, Exh. 13) In response to the contemporaneous second Instagram message from a different sender, LSU contacted Loe, who denied any knowledge about the communications. (Sanders Decl. ¶ 17, Exhs. 15, 16) LSU reiterated the no-contact prohibitions which included no contact to Hovis through a third party. *Id*. Thus, Hovis' statement that LSU did not investigate or take action is false.

### II.   HOVIS FAILS TO ESTABLISH THE ESSENTIAL ELEMENTS OF HER DELIBERATE INDIFFERENCE CLAIM.

Hovis' effort to argue her deliberate indifference claim is half-hearted. Indeed, in one heading, she merely refers to the Board's "mismanagement" of sexual conduct, not the higher, required standard of deliberate indifference. (Hovis Opp. p. 1) Substantively, Hovis argues that "LSU did not initiate any discipline against Loe for these violations of the no-contact order and did not even update Plaintiff on whether they investigated her complaints."[5] (Hovis Opp. p. 3) Not updating Hovis on whether LSU investigated the two messages that Hovis reported is hardly sufficient to meet the "high bar" of "deliberate indifference."[6]

Hovis fails all of the elements of a deliberate indifference claim. Specifically, Hovis does not even argue that the two messages were severe, pervasive, and objectively offensive. Instead, she argues that "as a result of her rape, . . ." she experienced "consequences."[7] (Hovis Opp. p. 5)

---

[5] Hovis conceded some of her prior arguments. For example, Hovis previously alleged that LSU did not advise Loe that the no contact order applied to third party communications. In her opposition, Hovis let go of this argument, presumably based on the clear evidence that LSU's no-contact directive to Loe advised him of this particular prohibition. (Sanders Decl. ¶ 15, Exhs. 10, 11) Hovis also previously alleged that LSU took no action in response to the two social media messages. Now, she seemingly acknowledges the undisputed evidence that Scott contacted Loe about the communications by email on May 15, 2020. (Sanders Decl. ¶ 17, Exhs. 13, 14)

[6] *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011).

[7] Any loss of educational opportunities and other "consequences" allegedly experienced by Hovis as a result of Loe's purported conduct cannot serve as evidence to establish the requisite severe, pervasive and offensive harassment, as the pertinent threshold inquiry is not the effect the conduct had on the individual, but rather whether the "harassment"

While she cites authorities discussing whether that "rape" is severe and pervasive, that is not the issue. (Hovis Opp. p. 5, n.28) The issue is whether the two messages after the no-contact order were severe, pervasive, and objectively offensive.[8]

Regarding the second element of "control," Hovis again focuses on her initial assault by Loe, not on the alleged violation of the no-contact order. Hovis offered no evidence that LSU had any control over whether a suspended student (Loe) interacted with the third parties who sent the two messages via their private social media accounts. Indeed, Hovis did not introduce evidence that the third persons who sent the messages were even LSU students over the whom the school had any authority. Hovis also offered no summary judgment evidence to link Loe to the text messages or to show a basis for additional discipline against Loe. Hovis' lengthy discussion of conduct occurring at an off-campus bar has no bearing on her deliberate indifference claim based on violation of a no-contact order.[9]

Regarding the third element of deliberate indifference (again, which can only relate to the two messages after Loe's no contact order), Hovis claims that: "Following each of Loe's violations

---

itself was severe, pervasive, and objectively offensive. *See Sanches v. Carrollton-Farms Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (harassment must be severe, pervasive and objectively offensive) (citing *Davis*, 526 U.S. at 650)).

[8] Hovis references the *Doe* court's statement about "further encounters . . . between a rape victim and her attacker," but Hovis concedes she had no further interactions with Loe following their one-time interaction. (Hovis 72) She cites the effects of Loe's "abuse," but again, the standard is not the effect the conduct had on the individual but rather whether the "harassment" itself was severe, pervasive, and objectively offensive. *See Sanches*, 647 F.3d at 165.

[9] Even As to the original assault, Hovis did not show that LSU controlled the circumstances or environment. Hovis acknowledges the alleged assault occurred in a personal "vehicle outside of one of the bars in the Tigerland neighborhood near LSU." (Hovis Opp. p. 2) Hovis had no prior contact with Loe that stemmed from any activities related to LSU. Rather, her first and only contact with Loe was off-campus at a bar. Hovis summarily opines, without any citation to record evidence, that "the Board had regulatory authority over John Loe's participation in its Athletics program, the broader school environment, the conduct of student athletes, student athletes' living arrangements, the level of supervision required for student athletes, participation in its educational opportunities, disciplinary record keeping practices, LSU Police Department resources, LSU Title IX Office resources, and student enrollment." (Hovis Opp. p. 7) These generalities are true for all universities, and Hovis has done nothing to show that her situation bore any connection to an LSU-sponsored activity or to an on-campus activity. Hovis states that she met Loe "because of their connections to LSU," but she identifies no such evidence other than her claim that she was told at the bar that Loe was an LSU quarterback. *Id.* Hovis makes reference to some fraternity events occurring at off-campus bars, but she does not introduce any evidence that she met Loe at a Greek event. (Hovis Opp. p. 8) In summary, Hovis acknowledges that her only contact with Loe occurred at an off-campus bar and with no involvement by LSU.

of the no-contact order, neither Title IX Coordinator Jennie Stewart nor Director of Student Advocacy & Accountability Jonathan Sanders initiated the appropriate investigation and disciplinary procedures or followed up with Plaintiff to keep her informed of her rights or the process they were following at that time." (Hovis Opp. p. 9) Although Hovis argues that a jury could find "a non-response that would rise to the level of deliberate indifference," she cites no authority that failing to advise the complainant of follow-up action leads to Title IX liability. (Hovis Opp. p. 10)  As shown above, LSU did not engage in a non-response.  It investigated the messages and sent correspondence to Loe emphasizing the no-contact order terms and the fact that it covered third persons.  (Sanders Decl. ¶¶ 16-17, Exhs. 12-16; Hovis 108-110)  Thereafter, no further contacts occurred.  (Hovis 72, 110, 132)

Regarding the next element (causation), Hovis fails to show any causal link between LSU's response to the two messages and any purported injuries.  She testified that the conduct ended, meaning she suffered no damages as a result of any purported response by LSU. (Hovis 110, 132) Further, while Hovis claims that LSU should have taken further disciplinary action against Loe, she concedes that Loe was already suspended from the university, and he never again sought readmission. (R. Doc. 182, ¶ 679; Hovis 166)  Thus, her argument is not causally connected to any further conduct by Loe.

Regarding the last element (deprivation of educational opportunities), this Court has also already found that Hovis failed to link her alleged deprivation of access to educational opportunities and benefits to Loe's alleged violation of the no-contact directive in May 2020.  (R. Doc. 340, pp. 34-35)  Plaintiff simply argues the effects she experienced from her alleged rape, rather than the no-contact order.  (*See, e.g.*, Hovis Opp. p. 6)  This Court previously described

Hovis' deliberate indifference claims as "thin," and Hovis has come forward with no disputed issues of fact to avoid summary judgment on this claim. (R. Doc. 340, p. 29)

### III. HOVIS CONCEDES SUMMARY JUDGMENT ON A PERPETRATOR-BASED HEIGHTENED RISK CLAIM.

Hovis adopts Opposition No. 1 relating to Mize. In that opposition, Mize acknowledges that Mize and Hovis (among others) are not asserting a pre-assault heightened risk based on student-on-student conduct (or Perpetrator-Based Heightened Risk). (Mize Opp. p. 7) That opposition states: "In the present matter, all Plaintiffs have Policy-Based Heightened Risk claims; Plaintiffs Jade Lewis, Calise Richardson, Abby Owens, and Samantha Brennan also have Perpetrator-Based Heightened Risk claims; and Plaintiff Corinn Hovis also has a Deliberate Indifference claim." *Id.* Thus, Hovis' name is omitted from the listing of plaintiffs who are asserting Perpetrator-Based Heightened Risk claims. Indeed, this makes sense given that Hovis was the first known victim of Loe. Hovis has conceded summary judgment on a Perpetrator-Based Heightened Risk claim.[10]

### IV. HOVIS DID NOT OPPOSE SUMMARY JUDGMENT ON A PRE-ASSAULT HEIGHTENED RISK CLAIM.

In her Law and Argument section, Hovis addresses two claims only: "Post-Assault Deliberate Indifference" and "Policy-Based, Post-Assault Heightened Risk Claim." (Hovis Opp. pp. 4, 11) Hovis does not oppose any pre-assault heightened risk claim.

### V. HOVIS' POST-ASSAULT HEIGHTENED RISK CLAIM DOES NOT EXIST.

As mentioned, Hovis conceded a perpetrator-based heightened risk claim and only argues post-assault heightened risk, as if such a claim exists. Importantly, Hovis does not allege a claim

---

[10] Should this Court conclude a policy-based heightened risk claim is unavailable in the Fifth Circuit, summary judgment is warranted as a matter of law because Plaintiff has abandoned any other heightened risk claim. (*See* Mize Opp. p. 7; Board Memorandum in Support of Motion for Summary Judgment No. 1, Section III.D)

6

titled "post-assault heightened risk" in her Complaint. Further, this Court has already dismissed her claims for all post-assault activity, including her hostile work environment and deliberate indifference claims. (R. Doc. 340, pp. 19-20) Nevertheless, Hovis attempts to re-package her dismissed claims as a post-assault heightened risk claim in an effort to revive the dismissed claims. Hovis can offer no authority that any such claim exists in this Circuit, much less elsewhere, or that she could meet the elements of this fictional claim. The reality is that a "Post-assault Heightened Risk Claim" is simply post-assault deliberate indifference, which no longer exists for Hovis.

Plaintiffs briefing reflects a misunderstanding of the law. As indicated by the Board, there are two types of Title IX claims: "before" claims and "after" claims. The distinction is that: "after" claims focus on the sufficiency of a school's response after a plaintiff's assault (the "commission" referenced in the Board's Reply Memorandum in Support of Summary Judgment No. 1, Section III), while "before" claims focus on the school's actions occurring before a plaintiff is assaulted and whether those actions created a heightened risk leading to the assault (the "omission" referenced in in the Board's Reply Memorandum in Support of Summary Judgment No. 1, Section III). Only the latter is "heightened risk," and the former is deliberate indifference.

Courts who have acknowledged "official policy" heightened risk claims make clear that the pertinent analysis is the time period before the assault.[11] Nonetheless, Plaintiffs' briefing attempts to "flip the script" and base their "official policy" heightened risk claim on actions occurring **post**-assault, arguing in many cases that LSU's response to their assaults left them at a "heightened risk" because they remained "vulnerable" to harassment. The cases Plaintiffs cite in support of the existence of an "official policy" heightened risk claim do not support the post-assault

---

[11] *Karasek v. Regents of University of California*, 956 F.3d 1093, 1112 (9th Cir. 2020); *Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1174 (10th Cir. 2007).

expansion Plaintiffs are attempting.[12] Indeed, the leading "official policy heightened risk" cases (in other circuits), *Karasek* and *Simpson*, only recognize a **pre-assault** "official policy heightened risk" claim, limiting their inquiry to the school's actions **before** the plaintiffs' assaults.[13] Absent from "official policy" heightened risk cases is any suggestion that a "heightened risk" claim can be based upon post-assault conduct, and Plaintiffs have offered no such authority.

As Plaintiffs and this Court are aware, Plaintiffs "after" claims have already been dismissed because Plaintiffs knew of their injuries and LSU's response well before the Husch Blackwell report.[14] As discussed the Board's Reply Memorandum in Support of Summary Judgment No. 1, Section III, mere vulnerability cannot serve as the basis for a pre-assault heightened risk claim, nor does "vulnerability" serve as objectively offensive harassment.[15]

Instead, the relevant question is whether prior to Hovis' assault, did LSU have an "official policy" of deliberate indifference towards sexual harassment which heightened the risk that she would ultimately be assaulted? As mentioned, Hovis did not attempt to introduce evidence or argue pre-assault heightened risk, so she concedes this claim.

Hovis makes no arguments regarding an official policy of discrimination that somehow impacted Hovis. Indeed, Hovis seemingly concedes that no "official policy" exists by stating that her argument is based on an **"unofficial"** policy, not an official policy. (Hovis Opp. p. 1) Rather, she adopts others' opposition memoranda without adding any facts to attempt to show whether,

---

[12] *Gruver v. State*, 401 F.Supp.3d 742, 762 (citations omitted); *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, Case No. H-18-2850, 2020 WL 6826213, *8 (S.D. Tex. Nov. 20, 2020). *See also Doe 1 v. Baylor University*, 240 F.Supp.3d 646, 658 (W.D.Tex., 2017); Doe 12 v. Baylor University, 336 F.Supp.3d 763, 775 (W.D.Tex., 2018).
[13] *Karasek*, 956 F.3d at 1112; *Simpson*, 500 F.3d at 1174.
[14] "[W]ithin some reasonable amount of time after initially reporting the Title IX violations, Plaintiffs would have understood that the Board's deliberate indifference to their reports was the cause of their post-reporting injuries, *including an allegedly hostile environment . . . .*" (R. Doc. 340, p. 18 (emphasis added))
[15] *See Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644-45 (U.S. 1999); *Doe v. Metropolitan Government of Nashville and Davidson County, Tennessee,* 35 F.4th 459, 465 (6th Cir. 2022); *Kollaritsch v. Michigan State University Board of Trustees,* 944 F.3d 613, 623 (6th Cir. 2019).

how, or why Hovis was impacted by any purported policy. Hovis was "assaulted" once and never again by Loe. Hovis fails to meet her burden of coming forward with evidence to establish the elements of an official policy claim, if one exists.

## IV.   CONCLUSION

For these reasons, Hovis' deliberate indifference and heightened risk claims fail as a matter of law.

Respectfully submitted,

**JEFF LANDRY
ATTORNEY GENERAL**

BY:   /s/ *Susan W. Furr*
Shelton Dennis Blunt, Bar No. 21230
Susan W. Furr, Bar No. 19582
Karleen J. Green, Bar No. 25119
Greg Stevens, Bar Roll No. 29436
Jessica Coco Huffman, Bar No.30445
Michael B. Victorian, Bar No. 36065
Molly McDiarmid, Bar No. 36426
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: greg.stevens@phelps.com
Email: jessica.huffman@phelps.com
Email: molly.mcdiarmid@phelps.com
Email: michael.victorian@phelps.com

ATTORNEYS FOR THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

9

10

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on August 22, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

/s/ *Susan W. Furr*
Susan W. Furr