**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ABBY OWENS ET AL**<br>*Plaintiff* | **Case No.: 21-242** |
| | **Division WBV-SDJ** |
| **v.** | |
| | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY ET AL**<br>*Defendants* | **MAGISTRATE JUDGE JOHNSON** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT NO. 1: ASHLYN MIZE ROBERTSON**

Plaintiffs, through undersigned counsel, respectfully submit this Opposition to Defendant's Motion for Summary Judgment No. 1: Ashlyn Mize Robertson ("Motion") (ECF No. 469) filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"). Several genuine issues of material fact exist for jury determination as to whether Plaintiff Ashlyn Mize Robertson ("Plaintiff") has sufficient evidence to prove suffering a deprivation of educational opportunity and/or benefits as a result of the Board's unofficial policy of ignoring sexual misconduct at Louisiana State University ("LSU" or the "University"). Further, genuine issues of material fact exist for jury determination as to whether Plaintiff has filed suit timely. Thus, the Board's Motion should be denied.

## I.    STANDARD OF REVIEW

The central issue of a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[1] In reviewing the evidence, the Court must construe all reasonable

---

[1] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

inferences in favor of the non-movant.[2] As a review of the facts relative to the operative legal standards noted herein indicates, the evidence is not so one-sided in favor of the Board, and the Court should **DENY** the motion for summary judgment.

Denial is especially warranted when the motion the defendant relies upon includes only a limited snapshot of the universe of relevant evidence, as the Board's Motion does here. In essence, it is their own story, in their own words, that they ask this Court to accept as fact. At the summary judgment stage, the Court should view these self-serving assertions and cherry-picked excerpts of testimony with a very high degree of caution. As the Fifth Circuit noted in *International Shortstop, Inc. v. Rally's Inc*., a "cold read" of a motion for summary judgment is generally no substitute for a trial, because it "cannot unmask the veracity of a witness clad in a costume of deception; it cannot unveil that a seemingly well-groomed witness is coming apart at the seams," or that "he fidgets when answering critical questions, his eyes shift from the floor to the ceiling and he manifests all other indicia attributed to perjurers."[3]

A denial of such a motion is fully in accord with strong public policy sentiments that summary judgment is a drastic remedy[4] and should be used sparingly.[5] This public policy becomes even more important when dealing with statutes like Title IX, which are designed to protect the civil rights of the litigants and are remedial in nature.

## II.    RELEVANT FACTS

### A.  The Board's mismanagement of sexual misconduct at LSU

*See* Opposition No. 4, Sec. II.A., incorporated herein by reference.

### B.  Plaintiff's experiences at LSU

---

[2] *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).
[3] *International Shortstop, Inc. v. Rally's Inc*., 939 F.2d 1257, 1265-1266 (5th Cir. 1991).
[4] *Smoot v. Chicago, R. I. & P., Co*., 378 F.2d 879 (10th Cir. 1967).
[5] *City Nat'l Bank of Fort Smith, Ark. v. Vanderboom*, 422 F.2d 221 (8th Cir. 1970).

*See* Opposition No. 2, Sec. II.B.; Opposition No. 3, Sec. II.B.; and Opposition No. 4, Sec. II.B., incorporated herein by reference.

Plaintiff began attending LSU in Fall 2015.[6] Plaintiff lived in apartment complex off campus called "The Standard."[7] On January 16, 2016, John Doe[8] raped her vaginally and anally after he came to her apartment uninvited while she had other friends from the football team over.[9] About a month after the incident, Doe threatened Plaintiff and told her he had a gun with her name on it.[10] On another occasion, she went to a party in another apartment in the complex and found Doe at the party when she arrived; he called her a bitch, and she immediately left.[11] Around May 2016, Plaintiff found a protein shake had been thrown on her car, and the cup had Doe's initials on it.[12]

After Doe raped Plaintiff in January 2016, she confided in her friend ███████, whose mother contacted the LSU Swimming and Diving coach; the coach reported the incident to Associate Athletic Director Miriam Segar.[13] Segar met with ███████ who told Segar that Doe had sexually assaulted Plaintiff and that Plaintiff had visible bruises on her body.[14] After talking with Segar, ███████ and Deputy Title IX Coordinator Mari Fuentes-Martin encouraged Plaintiff to make a Title IX report, but Plaintiff was too afraid to do so.[15] Plaintiff went to the LSU Health Center and told a nurse that Doe had raped her:[16]

> I told her that the university had reached out to me about an investigation, but I did not want an investigation against him because of who he was and that I didn't want

---

[6] Mize Dep. at 14.
[7] Mize Dep. at 15.
[8] John Doe is a pseudonym.
[9] Mize Dep. at 62-63, Mize Dep. at 67-68, 71.
[10] Mize Dep. at 86-89.
[11] Mize Dep. at 101.
[12] Mize Dep. at 101-102.
[13] PLAINTIFFS_000168-000170.
[14] PLAINTIFFS_000168; Mize Dep. at 206.
[15] PLAINTIFFS_000169; Mize Dep. at 129-30.
[16] Mize Dep. at 122.

my name to be plastered throughout LSU as the girl who cries rape against [John Doe]…. And she responded with, "I totally understand. I don't blame you. He is like a god around here." And…she didn't believe that things would get done correctly.[17]

In addition to understanding that her reporting would likely not be handled correctly, Plaintiff did not want to have to relive the rape throughout the Title IX process.[18] However, if Plaintiff had known that she was not Doe's only victim, she believes she would have moved forward with reporting.[19] Despite knowing Doe's identity, Segar improperly did not include his name in the file or in any of her reports on the incident as a means to evade Louisiana public records laws, which Husch Blackwell identified as an error.[20] As a result, Doe was not identified as a repeat offender when he raped Plaintiff Samantha Brennan five months later.[21]

Plaintiff believes that LSU wanted to protect Doe.[22] As a result of her attack, Plaintiff became so distressed that she began abusing drugs and was later incarcerated.[23] Plaintiff then went through a series of treatment and rehabilitation programs to regain her sobriety and get her life back on track.[24] Since that time, Plaintiff has successfully gotten sober and enrolled in Georgia State University to complete her bachelor's degree.[25]

### III.    LAW AND ARGUMENT

Title IX is an education civil rights law enacted by Congress to ensure that students do not face discrimination on the basis of sex that would diminish their educational experiences. The Board's argument as to the law's interpretation would rewrite Title IX as a harassment tort under

---

[17] Mize Dep. at 123:15-25.
[18] Mize Dep. at 117.
[19] Mize Dep. at 129-30, 183.
[20] PLAINTIFFS_000170-000171.
[21] PLAINTIFFS_000171.
[22] Mize Dep. at 129.
[23] Mize Dep. at 44-45, 54, 154, 157.
[24] Mize Dep. at 93, 147-148, 179-180.
[25] Mize Dep. at 13-14.

which the only cognizable violation is further harassment. However, "a [funding] recipient's deliberate indifference to sexual harassment of a student … constitutes 'discrimination' 'on the basis of sex[.]'"[26] In the present case, the Board's deliberate indifference to sexual harassment itself injured Plaintiff by subjecting her to discrimination on the basis of sex that interfered with her educational experiences—all that is required for a cognizable Title IX claim.[27]

LSU has tolerated and tacitly encouraged sexual harassment in ways expressly forbidden by Title IX's text, as interpreted by the U.S. Supreme Court. Specifically, *Davis v. Monroe County Board of Education*, the seminal U.S. Supreme Court case interpreting which elements plaintiffs must prove to succeed with Title IX claims against educational institutions, defined the term "subjected" to encompass making a student "vulnerable to" further harassment.[28] *Davis* emphasized that a plaintiff states a claim against a school not for a third-party's underlying harassment, but rather based on the defendant's "own misconduct … in the face of known student-on-student harassment."[29] That "deliberate indifference to sexual harassment of a student … constitutes the 'discrimination' 'on the basis of sex'" forbidden by Title IX.[30] Thus, a school may be liable "for deliberate indifference that results in a student being excluded from participation in, being denied the benefits of, or being subjected to discrimination under its programs."[31]

Consistent with the text, *Davis* explained a school can be liable for its own deliberate indifference that "cause[s] students to undergo harassment or make[s] them liable or vulnerable to it."[32] In using the disjunctive, *Davis* "clearly indicates that Plaintiffs can state a viable Title IX

---

[26] *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 174, 125 S. Ct. 1497 (2005).
[27] *See Bostock v. Clayton Co.*, 140 S. Ct. 1731, 1738, 207 L. Ed. 2d 218 (2020).
[28] *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).
[29] *Id*. at 640-41.
[30] *Jackson*, 544 U.S. at 174 (quoting *Davis*, 526 U.S. at 643).
[31] *Hall v. Millersville Univ.*, 22 F.4th 397, 409 n.4 (3d Cir. 2022).
[32] *Davis*, 526 U.S. at 645 (cleaned up).

5

claim by alleging alternatively *either* that [the defendant]'s deliberate indifference to their reports of rape caused Plaintiffs 'to undergo' [additional] harassment *or* 'made them liable or vulnerable' to it."[33]  Despite this, the Board relies on two Sixth Circuit cases, *Kollaritsch v. Michigan State University* and *Doe v. University of Kentucky*,[34] to insist that "[c]ritical to this inquiry is what occurred **after** the school's actual knowledge."[35] In doing so, the Board wrongly collapses *Davis*'s two prongs, rendering the latter superfluous.[36] The Board also conveniently ignores *Doe v. Metropolitan Government of Nashville & Davidson County, Tennessee*, a more recent Sixth Circuit decision that significantly modified and limited both *Kollaritsch* and *Doe v. University of Kentucky*.[37]

Vulnerability requires only a potential for harassment.[38]  A school may be liable, then, when its deliberate indifference "make[s]" the plaintiff "vulnerable" to abuse, regardless of whether further harassment actually occurs.[39]  This rule makes sense because continuing harassment is not necessary for a school's deliberate indifference to exclude victims, deny them the recipient's benefits, or otherwise subject them to discrimination.[40] That's especially clear in cases like this one, where a "student is put in the position of choosing to forego an educational opportunity in order to avoid contact with the harasser, or to continue attempting to receive the educational experience tainted with the fear of further harassment or abuse."[41]

---

[33] *Farmer v. Kan. St. Univ.*, 918 F.3d 1094, 1103 (10th Cir. 2019) (cleaned up) (quoting *Davis*, 526 U.S. at 645).

[34] *Kollaritsch v. Mich. St. Univ.*, 944 F.3d 613 (6th Cir. 2019); *Doe v. Univ. of Ky.*, 959 F.3d 246 (6th Cir. 2020).

[35] Motion No. 1 at 15 (emphasis in original); *see also* Motion No. 2 at 21, Motion No. 3 at 21-22, Motion No. 4 at 21-22, Motion No. 5 at 23-24, Motion No. 6 at 19-20, Motion No. 7 at 17, Motion No. 8 at 15, Motion No. 9 at 24-25, and Motion No. 10 at 18-19.

[36] *See Farmer*, 918 F.3d at 1104 (explaining courts "must give effect to each part of that sentence").

[37] *Doe ex rel. Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty.*, 35 F.4th 459 (6th Cir. 2022).

[38] *E.g., Vulnerable*, Webster's Third New International Dictionary 2566-67 (1993) (defining "vulnerable" to mean "capable of being wounded" or "open to attack or damage" (emphases added)).

[39] *E.g., Farmer*, 918 F.3d at 1103-04.

[40] 20 U.S.C. § 1681(a).

[41] *Wamer v. Univ. of Toledo*, 27 F.4th 461, 471 (6th Cir. 2022).

Ironically, the Board's argument that harassment, as opposed to deprivation of education is the relevant harm, would also turn *Davis*'s premise that a funding recipient is liable "only for its own misconduct" on its head, as the Board would premise a school's liability on the later misconduct of a separate actor: the harasser.[42] In fact, *Davis* itself addresses this issue:

> We recognized that the scope of liability in private damages actions under Title IX is circumscribed by *Pennhurst*'s requirement that funding recipients have notice of their potential liability. Invoking *Pennhurst*, *Guardians Assn.*, and *Franklin*, in *Gebser* we once again required "that 'the receiving entity of federal funds [have] notice that it will be liable for a monetary award'" before subjecting it to damages liability. *We also recognized, however, that this limitation on private damages actions is not a bar to liability where a funding recipient intentionally violates the statute. In particular, we concluded that Pennhurst does not bar a private damages action under Title IX where the funding recipient engages in intentional conduct that violates the clear terms of the statute.*[43]

Following *Davis* and *Doe v. University of Kentucky*, there is no doubt that there are multiple standards creating liability for an institution's violation of Title IX, including but not limited to (1) an institution's deliberate indifference to a report of sexual harassment ("Deliberate Indifference Claim"), and (2) creating a heightened risk of sexual harassment by either (a) deliberate indifference to sex discrimination by a particular perpetrator ("Perpetrator-based Heightened Risk Claim"), or (b) establishing an institutional policy of deliberate indifference to sex discrimination in general ("Policy-based Heightened Risk Claim"). In the present matter, all Plaintiffs have Policy-Based Heightened Risk claims; Plaintiffs Jade Lewis, Calise Richardson, Abby Owens, and Samantha Brennan also have Perpetrator-Based Heightened Risk claims; and Plaintiff Corinn Hovis also has a Deliberate Indifference claim.

---

[42] *Davis*, 526 U.S. at 640; *see Farmer*, 918 F.3d at 1104. Since *Doe v. Univ. of Ky.* and *Kollaritsch* were decided, the Sixth Circuit has limited its rule on the requirement of post-harassment abuse in heightened risk claims alleging deliberate indifference to past abuse to a subset of Title IX harassment cases. *See, e.g.*, *Doe v. Metro. Gov't.*, 35 F.4th at 468 ("*Kollaritsch*…does not apply to…high schools"); *Wamer*, 27 F.4th at 463 (declining to extend *Kollaritsch* to teacher-on-student harassment); *see also Farmer*, 918 F.3d at 1108 (distinguishing Eighth and Ninth Circuit cases); *Karasek v. Regents of the Univ. of Cal.*, 948 F.3d 1150, 1163 n.2 (9th Cir. 2020) (declining to "express [an] opinion on the circuit split").
[43] *Davis*, 526 U.S. at 642 (citations omitted) (emphasis added).

### A. Elements of Heightened Risk claims

Each Heightened Risk claim has a specific set of elements to test whether the Board has incurred liability for creating a heightened risk of sexual harassment at LSU. First, the *Karasek v. Regents of the University of California* test is used to determine whether the Board created a *Policy*-based Heightened Risk of sexual harassment by establishing a general institutional policy of deliberate indifference to sex discrimination; the *Karasek* test does not require further causation or further evidence of harassment.[44] Second, to determine whether the Board created a *Perpetrator*-based Heighted Risk of sexual harassment by deliberate indifference to sex discrimination by a particular perpetrator, there is the test utilized by the Board in its briefs, which analyzes, *inter alia*, a causation requirement and further evidence of harassment.[45] Both theories of heightened risk liability have been explicitly acknowledged by the U.S. Supreme Court and accepted by all Circuits that have reviewed the issue, as outlined in detail in Sec. III.D. below, and both should be applied here.

### B. Plaintiff has pleaded sufficient facts to support a Heightened Risk claim.

LSU contends that summary judgment is warranted on the basis that "[t]he Complaint contains no factual allegations asserting a heightened risk claim" for Plaintiff, because examples of how LSU created a heightened risk occurred after Plaintiff's assault.[46] But summary judgment is not the appropriate procedural device for testing the sufficiency of the pleadings.[47] Moreover, while allegations set forth in pleadings can be competent summary judgment evidence, they are not the only evidence that should be considered in determining whether summary judgment is

---

[44] *Karasek*, 948 F.3d at 1169.
[45] *See* Motion No. 1 at 10; *see also* Motion No. 2 at 5, Motion No. 3 at 7, Motion No. 4 at 6, Motion No. 5 at 10, Motion No. 6 at 8, Motion No. 7 at 9, Motion No. 8 at 5-6, and Motion No. 9 at 8.
[46] Motion No. 1 at 6; *see also* pleadings arguments in Motion No. 6 at 8, Motion No. 7 at 6-7, and Motion No. 9 at 10.
[47] *Cf.* Fed. R. Civ. P. 7(a), R. 12(c), and R. 12(h)(2) with Fed. R. Civ. P. 56.

proper. A party opposing summary judgment may show that a material fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Or, it may defeat summary judgment by showing "the materials cited [in support] do not establish the absence … of a genuine dispute.[48] Where a party opposing summary judgment can point to record evidence supporting each element of its claim, and where the movant cannot point to evidence showing there is no genuine issue of material fact as to any one of those elements, summary judgment should be denied.[49]

The Fifth Circuit's holding in *Turner v. Kansas City Southern Railway Company* is instructive.[50] There, the defendant employer moved for summary judgment seeking dismissal of an employee's discrimination claims, but the Court held that, because the reasons the employer offered for its adverse decision did not fulfill its burden under the applicable test set forth in *McDonnell Douglas*, the employer's failure was "the legal equivalent of the employer's having produced no reason at all." The Court went on to:

> Thus, because "the plaintiff[s] ... ha[ve] produced evidence sufficient to make out a *prima facie* case" with respect to the discipline of [plaintiffs] Turner and Thomas, "and the defendant employer has failed to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for its employment decision, the [plaintiffs] [are] entitled to take [their] case to a jury." *Id.* at 316 (citing, *inter alia*, *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004) ("[The plaintiffs'] *prima facie* case thus pretermits summary judgment dismissal of [their] action, leaving the ultimate question of discriminatory animus to be determined by the trier of fact.")).[51]

---

[48] Fed. R. Civ. P. 56(c)(1).

[49] *See, e.g.*, *Patrick v. Ridge,* 394 F.3d 311 (5th Cir.2004)*; Turner v. Kansas City S. Ry. Co.,* 675 F.3d 887, 904-05 (5th Cir. 2012), *as revised* (June 22, 2012).

[50] 675 F.3d at 904-05.

[51] *Id.*

As set forth in this and the other memoranda filed herewith, Plaintiffs can cite to ample summary judgment evidence establishing genuine issues of facts supporting each element of their *prima facie* claims for heightened risk. The fact that LSU is unable to point to competent rebuttal evidence, but rather points only to factual allegations made in pleadings before Plaintiff had the benefit of discovery, further supports the conclusion that Defendant's Motion is unsupported and should be denied.

### C. A genuine issue of material fact exists as to whether Plaintiff's claims were timely filed.

The Board argues that Plaintiff's claims are time-barred because her original Complaint was filed outside the prescriptive period. This is not the case, as Plaintiff did not become aware of the Board's violations of her rights until the release of the Husch Blackwell report in March 2021.[52]

The theory of *contra non valentem*, from the Latin expression *contra non valentem agere nulla currit praescriptio*, meaning "a prescription does not run against one who is unable to act," is a jurisprudential doctrine under which prescription may be suspended.[53] *Contra non valentem* provides that "prescription does not run against one who is ignorant of the facts upon which their cause of action is based, and is an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues."[54]

This Court has applied the Fifth Circuit standard for tolling prescription to Title IX heightened risk claims under the doctrine of *contra non valentum* to find that a plaintiff's heightened risk claim accrues when she reasonably should have known of the causal connection

---

[52] Mize Dep. at 170, 193, 196.
[53] *In re Manus*, 45 So.3d 1099, 1129-1130 (La. App. 2010).
[54] *Jackson v. Jefferson Par. Clerk of Ct.*, 981 So. 2d 156, 160 (La. App. 2008).

between her assault and the misconduct of school officials.[55] The relevant benchmark for measuring timeliness under Title IX is the date when the Plaintiff knew or should have known that LSU administrators with authority to take corrective action knew of their perpetrator's conduct, or of LSU's policy of deliberate indifference, and failed to respond appropriately.[56]

Thus, the mere discovery that a perpetrator assaulted other women is not sufficient to put a victim on notice that *the University knew* of such attacks yet ignored them.[57] In that case, this Court found a plaintiff's claims to be timely because "she could not have discovered the nonfeasance revealed in the USA Today article, which was uncovered by 'an accomplished and highly experienced investigative journalist, through multiple sources, including [the assailant's five prior victims]; interviews; official statements; requests; and other information, particularly given FERPA's general prohibition on disclosing the personally identifying information of students.'"[58]

Plaintiff did not have "knowledge of facts" that would lead her to think that her treatment by LSU was due to a systemic failure of the Title IX program, nor that there was a "causal connection" between her injuries and the acts of LSU. Again, simply because Plaintiff had been injured by her abuser does not give rise to claims against LSU. It was not until Plaintiff learned

---

[55] *Doe v. Bd. of Supervisors of Univ. of La. Sys.*, No. CV 22-00338-BAJ-SDJ, 2023 WL 143171, at *14 (M.D. La. Jan. 10, 2023) (citing *Snyder-Hill v. The Ohio State Univ.*, 48 F.4th 686, 704 (6th Cir. 2022); *Karasek v. Regents of Univ. of Ca.*, 500 F. Supp. 3d 967, 977 (N.D. Cal. 2020); *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 899 (W.D. Tex. 2019); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 617 (W.D. Tex. 2017); *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 663 (W.D. Tex. 2017); *accord King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015).

[56] *Bd. of Supervisors of Univ. of La. Sys.*, 2023 WL 143171, at *14. "In other words, discovering that a defendant caused an injury is part of discovering the injury." (Quoting *Snyder* at 702 (discussing *Rotella v. Wood*, 528 U.S. 549, 555-56, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)).

[57] *Id.* at *16.

[58] *Id.* at *7.

through the Husch Blackwell report that LSU could and should have assisted her, or worse, actively concealed her complaint, that her claims against LSU accrued.

The specific question of whether new information about a school's mishandling of previously undisclosed Title IX reports could cause a plaintiff to become aware of harms they suffered by the fault of the institution was addressed by the U.S. District Court for the Western District of Texas in the 2017 case, *Doe I v. Baylor*.[59] The facts of the *Baylor* case mirror the facts of the instant matter. In *Baylor*, "Plaintiffs assert[ed]... that they had no reason to know of Baylor's alleged causal connection to their assaults until the spring of 2016, when media reports regarding the rampant nature of sexual assault on Baylor's campus first came to light."[60] Multiple plaintiffs were aware on some level that they had suffered harms, but were not aware of the causal connection between the individual harms and the institution's complicity in such harms, or of the systemic failures in the Baylor Title IX program. The *Baylor* court found:

> Plaintiffs allege Baylor and its staff repeatedly misinformed victims of sexual assault as to their rights under Title IX; failed to investigate reported sexual assaults; and discouraged those who reported sexual assaults from naming their assailants or otherwise coming forward....
>
> These alleged facts, if construed as true, could allow a jury to infer that Baylor's policy or custom of inadequately handling and even discouraging reports of peer sexual assault created a heightened risk of sexual assault, thereby inflicting the injury of which Plaintiffs complain.[61]

The first paragraph of the preceding passage could easily have been written to describe the present matter rather than the *Baylor* case. Not until the publication of the Husch Blackwell report in, March 2021, could Plaintiffs in this case have known that they were "misinformed" as to their rights under Title IX. The simple fact that Plaintiffs knew they had been sexually assaulted,

---

[59] *Jane Doe 1, et al. v. Baylor Univ.*, 240 F.Supp.3d 646 (W.D. Tex. 2017).
[60] *Id.* at 663 (citations omitted).
[61] *Id.*

physically assaulted, or harassed does not mean that they had any knowledge as to the correlation between LSU's flawed Title IX program and deliberate indifference to discrimination. This conclusion is supported by the District Court's opinion in *Baylor*:

> "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,'" and while the limitations period is borrowed from state law, "the particular accrual date of a federal cause of action is a matter of federal law." "[U]nder federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." "[A] plaintiff's awareness encompasses two elements: (1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." "'[A]wareness' [of the existence of the injury and causation] ... does not mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further.'" Thus, for awareness of causation, a plaintiff "must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection ... or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury."[62]

Plaintiff's claims were timely filed. Plaintiff did not and could not have reasonably known that she had a cause of action against LSU until the release of the Husch Blackwell report in March 2021.[63] The investigation conducted by Husch Blackwell, a law firm hired by LSU, enjoyed the benefit of LSU's cooperation and documents provided by the University and its employees. The extensive findings of the Husch Blackwell report, all of which are relevant to Plaintiff's claims, could not have been known to Plaintiff prior to the Report's publication. The investigation was completed using ample resources, over the course of several months, and with access to internal and confidential information—along with the permission of LSU to interview its employees and review its records—none of which Plaintiff would or could have accessed on her own.

---

[62] *Id.* at 662-63 (citations omitted) (quoting *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (2015), (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)), (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)), (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001))), (*quoting Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983)).
[63] *See generally* PLAINTIFFS_000074-000335.

The causal connection between the harms Plaintiff suffered and the role of LSU and its employees in such harms could not have been discovered by Plaintiff through a good faith effort; in fact, the University and its employees went to great lengths to ensure students did not understand their rights or LSU's obligations under Title IX. LSU obscured information regarding its obligations by failing to provide proper training to both students and employees; failing to initiate investigations as appropriate; ignoring recommendations of experts in the field; purposefully underfunding the Title IX office; and instead allowing unqualified, untrained staff members to do their own *ad hoc* investigations. Plaintiff did not and could not know what should have been done in response to her assault or the support and resources she was entitled to receive. Plaintiff did not even know that she could expect anything from her University, because LSU's Title IX resources were so deficient. Plaintiff did not know that LSU chose to underfund and neglect its Title IX responsibilities, when it should have provided the Title IX Office and victims with more resources; that LSU failed to properly train its employees; or most egregiously, that LSU and its employees purposefully buried or ignored victims' reports of assault and abuse in many cases. Without knowledge of these facts, Plaintiff could not know she had a viable claim against LSU, and her claim therefore did not accrue until such facts were learned. For these reasons, a jury could find that Plaintiff did not become aware of her heightened risk claim against the Board until March 2021; thus, Board's motion should be denied.

**D. Policy-Based Heightened Risk claim**

To succeed on a Policy-based Heightened Risk Claim of a heighted risk of discrimination based on an institutional policy of deliberate indifference to sexual harassment, Plaintiff must show: (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a

context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."[64]

In support of its Motion, the Board argues both (1) that all heightened risk claims require proof of multiple instances of sexual harassment, and (2) that the Fifth Circuit has not recognized a claim for heightened risk based on an official policy. Both arguments fail, as a matter of law. Plaintiffs shall address each legal argument, in turn.

First, the Board erroneously relies on two Sixth Circuit cases, *Kollaritsch* and *Doe v. University of Kentucky*, to support its inaccurate contention that multiple instances of sexual harassment must occur, both before and after a reported instance of harassment, to create liability.[65] This argument ignores subsequent Sixth Circuit caselaw holding that only one instance of severe sexual harassment is necessary for an institution to incur liability based on its policy of deliberate indifference to sexual harassment in general. As the Sixth Circuit clarified in *Doe v. Metropolitan Government*, this type of heightened risk claim does not require further evidence of multiple instances of harassment. In that case, the plaintiffs contended that:

> MNPS had a widespread problem in its schools: numerous instances of sexual misconduct and the dissemination of sexual images of minor students without their consent. . . . MNPS was deliberately indifferent to these widespread problems, causing [plaintiffs] to be sexually harassed and videoed by fellow students on school property without their consent.[66]

The District Court relied upon *Kollaritsch* to reject plaintiffs' claims because there were not two instances of harassment against the same plaintiff-victim, one prior to and one after a report to the school. However, the Sixth Circuit reversed and admonished the District Court's narrow reading

---

[64] *Metro. Gov't*, 35 F.4th at 464-65 (citations omitted).
[65] Motion No. 1 at 13; *see also* Motion No. 2 at 15 FN 39, Motion No. 3 at 16 FN 37, Motion No. 4 at 16 FN 42, Motion No. 6 at 15 FN 40, Motion No. 7 at 12 FN 29, Motion No. 8 at 9 FN 26, Motion No. 9 at 18 FN 56.
[66] *Metro. Gov't*, 35 F.4th at 464-65 (citations omitted).

of *Kollaritsch* as "not tak[ing] into account the very different context and facts of this case."[67] The

Court explained:

> In distinguishing this case from a Kollaritsch-type claim, we reiterate that plaintiffs
> here assert a drastically different theory of Title IX liability than was asserted in
> Kollaritsch, in which college women alleged inadequate responses to their specific
> instances of harassment. Specifically, the university in Kollaritsch was not on
> notice of a possible Title IX violation until after the plaintiffs reported these
> incidents of sexual harassment. As the disciplinary records cited by Jane Doe and
> Sally Doe demonstrate, MNPS was aware of issues with sexual harassment in the
> school system well before the two students reported their incidents. Many of these
> incidents involved photos or videos. To hold MNPS is immune from liability as
> long as no student is assaulted twice, regardless of its indifference to widespread
> instances of sexual harassment across its schools, would defeat Title IX's purpose
> of eliminating systemic gender discrimination from federally funded schools.

> *Kollaritsch* thus does not bar Jane Doe and Sally Doe's Title IX "before" claims.[68]

In other words, "[e]xtending *Kollaritsch*'s same-victim requirement to Title IX "before" claims

like those here would thwart "Title IX's purpose of eliminating systemic gender discrimination

from federally funded schools," allowing schools to remain deliberately indifferent to widespread

discrimination as long as the same student was not harassed twice."[69] To support this analysis, the

Sixth Circuit relied on the analysis of both the majority and dissent in *Davis*, as well as cases from

other circuit courts: "Even the dissent suggests that Title IX liability may arise when a funding

recipient remains indifferent to severe, gender-based mistreatment played out on a 'widespread

level' among students."[70] Thus, the Board's arguments regarding *Kollaritsch* fail.

Next the Board argues, in further support of the present Motion,: "The Fifth Circuit has not

recognized a claim for Title IX heightened risk based on an official policy, and this Court's ruling

on the Board's motion to dismiss does not suggest that an official policy claim remains in this

---

[67] *Id*.
[68] *Id*. at 466 (citation omitted).
[69] *Id*. at 464-65 (citations omitted).
[70] *Id*.

case."[71]  First, whether the Fifth Circuit has recognized a Title IX heightened risk claim based on an official policy of deliberate indifference is of no moment, as the United States Supreme Court has recognized such a claim, which the U.S. District Court for the Western District of Texas acknowledged in *Doe I v. Baylor*:

> The Supreme Court has repeatedly explained that where the Title IX violation in question is caused by an institution's discriminatory policy or custom, courts need not apply the actual notice and deliberate indifference framework typically used in cases involving institutional liability for sexual harassment or assault. *See Gebser*, 524 U.S. at 290, 118 S.Ct. 1989 (stating that the actual notice and deliberate indifference requirements are restricted to those cases "that do not involve [an] official policy of the [funding recipient]"); *Davis*, 526 U.S. at 642, 119 S.Ct. 1661 (acknowledging that an institution cannot be liable unless it has notice that its conduct could subject it to a damages claim but providing that "this limitation ... is not a bar to liability where a funding recipient intentionally violates the statute").[72]

In *Baylor*, the plaintiffs alleged "a widespread pattern of discriminatory responses to female students' reports of sexual assault[,] which the court found to be 'arguably more egregious' than the institution having had 'knowledge of accusations against their specific assailants prior to their initial assaults[.]'"[73] The *Baylor* court wrote, "Indeed, even those Supreme Court justices who expressed skepticism regarding holding institutions liable for sexual assaults on individual students under Title IX have suggested that 'a clear pattern of discriminatory enforcement of school rules could raise an inference that the school itself is discriminating.'"[74]

The Board also completely ignores two recent decisions issued by this Court finding that a claim of Policy-based Heightened Risk due to an institutional policy of deliberate indifference *was* available. In *Gruver v. State*, this Court held:

> *Gebser* also dispenses with the actual notice and deliberate indifference requirements where the Title IX claim alleges an official policy of discrimination.

---

[71] Motion No. 1 at 16-17, Motion No. 2 at 17, Motion No. 3 at 18, Motion No. 4 at 17, Motion No. 6 at 15, Motion No. 7 at 13, Motion No. 8 at 11, Motion No. 9 at 20, and Motion No. 10 at 13.
[72] *Doe I v. Baylor Univ.*, 240 F.Supp.3d 646, 661 (W.D. Tex. 2017).
[73] *Id.* at 653.
[74] *Id.* at 653 (quoting Davis, 526 U.S. 629, 683) (Kennedy, J., dissenting).

> This logically leaves the claimant to prove only the policy of intentional discrimination. Davis also seems to support this approach where it says an institution can be sued for damages "where the funding recipient engages in intentional conduct that violates the clear terms of the statute."[75]

And, earlier this year in *Doe v. Board of Supervisors of the University of Louisiana*, this Court held: "The recognition of this private right of action has given rise to two general avenues for Title IX claims—one for claims based on an official policy of discrimination and another for claims based on an institution's actual notice of and deliberate indifference to sexual harassment or assault."[76]

The Board ignores these authorities and instead cites the Fifth Circuit's decision in *Roe v. Cypress-Fairbanks Independent School District*[77]—an interesting rhetorical choice as, upon careful review, *Cypress-Fairbanks* does not foreclose a heightened risk claim based on an institutional policy of deliberate indifference, but rather is silent on the issue. Had the Fifth Circuit wished to address the viability of this claim *Cypress-Fairbanks*, it certainly could have, as the case involved just such a fact scenario. The lower court in the *Cypress-Fairbanks* matter had, in fact, adopted and applied the *Karasek* test to the *Metropolitan Government* claim to ultimately determine that the plaintiff had not presented sufficient facts to allege a heightened risk claim based on an institutional policy of deliberate indifference:

> Assuming without deciding that the Fifth Circuit would recognize plaintiff's ability to assert a Title IX claim based on her allegations that CFISD maintained an official policy that created a heightened risk that she would be sexually assaulted, and would adopt the four factors articulated in *Karasek* for analyzing such claims, the court concludes that CFISD is entitled to summary judgment on plaintiff's pre-assault heightened risk claim because plaintiff has failed to cite evidence capable of raising a genuine issue of material fact as to three of *Karasek*'s four factors.[78]

---

[75] *Gruver v. State*, 401 F.Supp.3d 742, 759 (citations omitted).
[76] *Doe v. Bd. of Supervisors of Univ. of La. Sys.*, 2023 WL 143171, at *9.
[77] 53 F.4th 334 (5th Cir. 2022).
[78] *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, Case No. H-18-2850 (S.D. Tex. Nov. 20, 2020).

If the Fifth Circuit had any objection to the institutional policy theory of Title IX liability, it

certainly could have expressed such in its opinion on the *Cypress-Fairbanks* appeal.  It did not.[79]

Thus, in accordance with the U.S. Supreme Court, each of the Circuit Courts that has

confronted this issue, and District Courts of the Fifth Circuit, to succeed on a Policy-based

Heightened Risk claim of a heighted risk of discrimination based on an institutional policy of

deliberate indifference to sexual harassment, Plaintiff must only show:

> (1) a school maintained a policy of deliberate indifference to reports of sexual
> misconduct, (2) which created a heightened risk of sexual harassment that was
> known or obvious (3) in a context subject to the school's control, and (4) as a result,
> the plaintiff suffered harassment that was "so severe, pervasive, and objectively
> offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the
> educational opportunities or benefits provided by the school.[80]

Defendant's arguments that a policy-based claim is unavailable in this Circuit therefore fails, and

summary judgment is not warranted on those grounds.

### 1. A genuine issue of material fact exists as to whether the Board maintained a policy of deliberate indifference to reports of sexual misconduct.

An institution acts with "deliberate indifference" when its response to known sexual

harassment or sexual assault is "clearly unreasonable in light of the known circumstances."[81]

Because this standard "does not lend itself well to a determination by the Court on summary

judgment," courts have permitted Title IX claims to go to juries if some evidence supports a finding

of indifference. [82] As one court concluded, "generally, deliberate indifference is a fact-intensive

inquiry and is often a question for the jury's determination."[83] The Fifth Circuit has held that

---

[79] *See generally Roe v. Cypress-Fairbanks*, 53 F.4th 334 (5th Cir. 2022).
[80] *Metro. Gov't*, 35 F.4th at 464-65 (citations omitted).
[81] *Davis*, 562 U.S. at 648.
[82] *See Jane Doe A v. Green*, 298 F. Supp. 2d 1025, 1036 (2004).
[83] *Lilah R. ex. Rel. Elena A. v. Smith*, No. C 11-01860 MEJ, 2011 WL 2976805, at *5 (N.D. Cal. July 22, 2011).

whether an institution or its employees acted with deliberate indifference is a question of fact, appropriately decided by a jury.[84]

The failure to take any remedial action in response to actual knowledge of sexual misconduct is "clearly unreasonable" and amounts to "deliberate indifference."[85] A school need not "fully appreciate[] the harmful consequences of that discrimination" for its response to be deliberately indifferent.[86] A jury could reasonably find that a school was deliberately indifferent to reports of sex-based harassment when the school fails to address those reports.[87] When confronted with a report of rape, law and policy converge: the school cannot "turn a blind eye to that harassment."[88] "[D]oing nothing is always the wrong response."[89]

As set forth above in Section II.A., LSU had a longstanding policy of ignoring, underfunding, and undermining the University's official Title IX program by, *inter alia,* willfully refusing to allocate sufficient funding to the Title IX program; knowingly permitting various departments within the University, including Athletics, to circumvent the Title IX office and handle reports of sexual misconduct and harassment internally through school officials who were not given proper training; and failing to follow industry-standard recommendations and best

---

[84] "A prison official acts with deliberate indifference if 'he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' 'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Webb v. Livingston*, No. 14-40579 at 3 (5th Cir. Jul. 17, 2015) (citations omitted).

[85] *Davis*, 526 U.S. at 648.

[86] *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 259-60 (6th Cir. 2000) (quoting *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999)).

[87] *See Davis*, 526 U.S. at 654.

[88] *Bd. of Supervisors of Univ. of La. Sys.*, 2023 WL 143171, at *10 (quoting *Farmer*, 918 F.3d at 1104).

[89] *Id.* (quoting Office of Civil Rights, *2001 Revised Sexual Harassment Guidance*, U.S. EDUC. DEPT. at Preamble p. iii). *See Davis*, 526 U.S. at 641, 119 S. Ct. 1661 (indicating that a school cannot "remain idle in the face of known student-on-student harassment"); *see, e.g. Farmer*, 918 F.3d at 1104 (deliberate indifference established where plaintiffs reported off-campus rapes and university failed to investigate or discipline the attackers); *Williams v. Bd. of Regents Univ. Sys. of Georgia*, 477 F.3d 1282, 1296 (11th Cir. 2007) (deliberate indifference established where plaintiff reported rape and university waited eight months "before conducting a disciplinary hearing to determine whether to sanction the alleged assailants"); *Doe 1*, 240 F. Supp. 3d at 660-61 (deliberate indifference established where plaintiffs reported rapes and sexual assaults and the university "did nothing (or almost nothing) in response").

practices made by their own Title IX Coordinator and independent outside auditors. Accordingly, there is sufficient summary judgment evidence to support a finding that LSU maintained a policy of deliberate indifference.

### 2. A genuine issue of material fact exists as to whether the Board's policy of deliberate indifference created a heightened risk of sexual harassment that was known or obvious.

LSU wrongly argues that Plaintiff cannot prove causation and that summary judgment is therefore warranted. However, the Fifth Circuit has long held that causation is a question of fact for the jury.[90] The Court should reject this argument, because the law of causation in this Circuit mandates denial of summary judgment on this point.

Further, the occurrence of sexual misconduct on campus is the expected consequence of covering up sexual misconduct on campus, failing to meaningfully investigate Title IX complaints, failing to adequately train staff with respect to responding to sexual misconduct, and failing to adequately train students with respect to sexual misconduct. In other words, Plaintiff's sexual assault was the sort of injury that would be expected to result from LSU's policy of deliberate indifference to sexual misconduct on campus, and summary judgment on causation must be denied.

### 3. A genuine issue of material fact exists as to whether Plaintiff's assault occurred in a context subject to the Board's control.

See Opposition No. 2, Sec. III.A.2., incorporated herein by reference.

### 4. A genuine issue of material fact exists as to whether, as a result of Defendant's deliberate indifference, Plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived her of access to the educational opportunities or benefits provided by LSU.

---

[90] "Causation is a question of fact for the jury, and the jury has broad latitude to infer proximate cause from the evidence and circumstances surrounding an event." *Gutierrez v. Excel Corp.*, 106 F.3d 683 (5th Cir. 1997) (citation omitted).

*See* Opposition No. 6, Sec. III.B.3., incorporated herein by reference.

As the evidence shows, Plaintiff experienced harassment that was severe, pervasive, and objectively offensive due to LSU's policy of deliberate indifference.  Following her assault, Plaintiff felt alone and isolated, feeling as though she was the only person raped by Doe—But LSU knew this wasn't true.[91]  As a result, in or around April or May 2016, Plaintiff began drinking heavily and using marijuana at least once a day.[92]  She became addicted to both alcohol and marijuana.[93]  Soon, her drug abuse progressed to cocaine, methamphetamine, ecstasy, heroin, and prescription drugs including Xanax, Vyvanse, and pain medications.[94]  Plaintiff was arrested twice in 2017 and 2018  and went through the criminal justice system, including spending time in jail, due to her drug abuse and related actions.  These events only further caused her trauma.[95] It took extensive time and work in a series of treatment facilities, along with help from multiple counselors, to get Plaintiff sober again, costing her years of her life.[96] As Plaintiff herself testified:

These experiences significantly deprived Plaintiff of access to educational benefits and opportunities as a result of severe harassment protected against under Title IX. LSU argues that there is no causation based on Plaintiff's own testimony, in which she stated: "I believe they bear responsibility for what could have happened after the fact, not the fact that he raped me, because that is his responsibility. He should bear that. After the fact, I think LSU bears the responsibility, yes."[97]  In fact, this testimony supports a conclusion that LSU's institutional policy of deliberate indifference directly caused the harm Plaintiff suffered, which a jury could reasonably find based on the evidence.  But, as Plaintiff testified, "After the fact [of her attack]… LSU bears the

---

[91] Mize Dep. at 186.
[92] Mize Dep. at 20-23.
[93] Mize Dep. at 24.
[94] Mize Dep. at 25-26, 44.
[95] Mize Dep. at 44-45, 54, 154, 157.
[96] Mize Dep. at 93, 147-148, 179-180
[97] Mize Dep. at 185.

responsibility" for failing to ensure she was not deprived of these opportunities, and they failed to do so.  A reasonable jury could hold Defendant liability as a result, and summary judgment must therefore be denied.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment No. 1, as it relates to Ashlyn Mize Robertson.

Respectfully Submitted

_/s/ Catherine E. Lasky_

| | |
|---|---|
| Karen Truszkowski | Catherine E. Lasky (La. Bar 28652) |
| _Pro Hac Vice_ | Endya L. Hash (La. Bar 38260) |
| Temperance Legal Group | Katie Lasky Law |
| 503 Mall Court #131 | 619 Homedale Street |
| Lansing, Michigan 48912 | New Orleans, Louisiana 70124 |
| P: (844) 534-2560 | P: (504) 584-7336 |
| F: (800) 531-6527 | F: (504) 375-2221 |
| karen@temperancelegalgroup.com | katie@katielaskylaw.com |
| | endya@katielaskylaw.com |

Elizabeth K. Abdnour
_Pro Hac Vice_
Abdnour Weiker LLP
500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
(517) 994-1776
(614) 417-5081
liz@education-rights.com

_Attorneys for Plaintiffs_

**<u>CERTIFICATE OF SERVICE</u>**

 I hereby certify that a copy of the above and foregoing pleading has been served on all

parties via counsel of record by electronic mail this 31st day of July 2023.

        */s/ Elizabeth K. Abdnour*
        Elizabeth K. Abdnour