UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS ET AL**<br>*Plaintiff*<br><br>v.<br><br>**LOUISIANA STATE UNIVERSITY ET AL**<br>*Defendants* | Case No.: 21-242<br><br>Division WBV-SDJ<br><br>JUDGE WENDY B. VITTER<br><br>MAGISTRATE JUDGE JOHNSON |

**SUPPLEMENTAL OPPOSING STATEMENT OF MATERIAL FACTS AS TO OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT NOs. 1-10**

Pursuant to Rule 56.1 of the Local Rules and in conjunction with the Oppositions to Motions for Summary Judgment No. 1-10, Plaintiffs through undersigned counsel, submits the following additional facts which are applicable to all Plaintiffs:

1. In March 2021, the Husch Blackwell law firm issued a lengthy report describing problems within LSU's Title IX program, which had been prepared at LSU's request. PLAINTIFFS_000074-000335.

2. When the Husch Blackwell report was released, numerous LSU board members and administrators issued statements apologizing to survivors and accepting responsibility for LSU's failures. BOS-000076, BOS-002492, BOS-029930, BOS-000054-000055, BOS-002491, PLAINTIFFS_00001523, PLAINTIFFS_00001524.

3. In 2015, the Louisiana Legislature enacted the Campus Accountability and Safety Act ("Act 172"), which required educational institutions and their local law enforcement agencies to enter into memoranda of understanding to ensure they were communicating with each other about information related to sexual misconduct on campus. PLAINTIFFS_000092.

4. Despite years of knowing about this failure, LSU did nothing to bring LSUPD into compliance with the law. PLAINTIFFS_000093; BOS-029859; Stewart 107.

5. Prior to 2014, LSU did not have a Title IX reporting program. Segar 185, 228.

6. LSU created a new Title IX policy, PM-75, which it updated in 2015. Stewart 20, PLAINTIFFS_00002109.

7. In 2014, of two attorneys in LSU's general counsel's office, Jim Marchand, was named LSU's first Title iX Coordinator, despite the fact that an attorney for the University also serving as Title IX Coordinator created a known conflict of interest. PLAINTIFFS_000083; Stewart 21; PLAINTIFFS_00002109.

8. In 2016, Jennie Stewart was appointed as LSU's first full time Title IX Coordinator. Stewart 21-22, 31.

9. Stewart was supervised by the general counsel's office, under the title of "staff attorney." BOS-031795.

10. Stewart repeatedly raised concerns about LSU's failure to comply with Act 172 to LSU general counsel Tom Skinner and the LSUPD chief, but LSU did not fix the issue. Stewart 108-109.

11. In 2016, Stewart gave a comprehensive presentation to Skinner and Dan Layzell, LSU's Vice President of Finance and Administration, outlining how she believed LSU needed to restructure its Title IX office and response program. Stewart 63-66; PLAINTIFFS_000117-000118; PLAINTIFFS_000305-000316.

12. President F. King Alexander was also supposed to attend the presentation but backed out the last minute. Stewart 64.

13. Stewart's presentation identified a need for approximately 7-8 additional staff members for her office to function properly. PLAINTIFFS_000118.

14. Rather than hiring full time investigators, however, LSU sent an email to staff in November 2016 encouraging employees to volunteer to become investigators, on top of their current roles and responsibilities. BOS-032663.

15. Only one of the necessary positions Stewart had requested was ever filled—almost a year and a half later, in 2018. PLAINTIFFS_000118.

16. Jeffrey Scott, the lone hire, was tasked with "being the only investigator responsible for nine campuses and probably 50,000 individuals," from March 2018 to May 2021. Scott 14:11-13, 15.

17. Instead of giving Stewart the additional staff and support she requested, LSU began giving her more titles and roles to fill, further diminishing her ability to serve as an effective Title IX coordinator. Stewart 31-35; PLAINTIFFS_000086.

18. In 2019, an internal LSU committee found that it was inappropriate for Stewart to be responsible for so many divergent roles. Stewart 104-105.

19. LSU ignored the recommendation. Stewart 105.

20. Husch Blackwell found: "…[I]t is hard to see how someone could be successful with all of these roles (Title IX, Clery [Act], and the ADA) even with a large complement of support staff. On that score, though, the Title IX Office is comprised of Stewart, Scott, and one graduate assistant. The Title IX Office does not even have a designated administrative support person." PLAINTIFFS_000086.

21. Because the Title IX office was so under resourced, there was no process for oversight of the investigation process throughout Stewart's entire five-year tenure as Title IX Coordinator. Stewart 101-103.

22. In 2016, Stewart became aware that the LSU Athletics Department ("Athletics") was performing trainings that provided its employees with information about Title IX-related topics via an outside consulting firm, the Beebe Group. Stewart 48- 49, 56.

23. The Beebe Group training was not recognized as a Title IX training by LSU human resources, and its training materials did not reference the Title IX Coordinator. BOS-030264; Sharon Lewis 500.

24. Stewart had concerns about the content of the Beebe training, including but not limited to the fact that it did not clearly explain employee reporting obligations. Stewart 49-51.

25. Stewart provided her feedback to Athletics in 2016 and was advised that the information provided on reporting was going to be updated and clarified. Stewart 50-51, 56-57.

26. Training materials do not indicate that any changes were made until 2020, and those changes were minimal. *See* BOS-027330, BOS-027356, BOS-027360, BOS-027278, BOS-027409.

27. In 2020, Stewart learned that Athletics had never actually made the changes she recommended to the Beebe Group concerning these trainings and was still advising employees to report to Segar, rather than the Title IX office as specified in the PM-73, which she raised with her supervisor, Winston DeCuir, Jr., LSU's General Counsel. Stewart 58-60.

28. DeCuir refused to direct Athletics to comply with the PM-73. Stewart 58-60.

29. Stewart repeatedly expressed frustration at being ignored and undermined, at one point sharing concerns of potential sex discrimination by DeCuir. Stewart192, Stewart375, Stewart417.

30. Stewart received an "unsuccessful" rating in her performance review—a review conducted by DeCuir himself. 30b6 158-160.

31. Two Athletics directors, Verge Ausberry and Miriam Segar, who were suspended for their Title IX-related failures, did not receive unsuccessful ratings in their performance reviews. 30b6 158-160.

32. In 2013, two separate students came forward with allegations that Les Miles, LSU's celebrated football coach, had sexually harassed and retaliated against them. PLAINTIFFS_000123; Sharon Lewis 468-471.

33. Miles is also reported to have sexually harassed Assistant Athletic Director of Football Recruiting and Alumni Relations, Sharon Lewis. Sharon Lewis 459-62.

34. LSU, through its attorneys at Baton Rouge law firm Taylor Porter, ensured the complaints were buried. PLAINTIFFS_000122-125; BOS-029864-029896; *Lewis v. LSU* order.

35. When Athletics Director Joe Alleva fired Miles in 2016, it was not for sexual misconduct, but because he started the football season with a 2-2 record; Alleva nevertheless touted that Miles had done a "tremendous job" and was a "great ambassador for our University." Husch Blackwell found, "It is difficult to meaningfully determine the full extent of the impact [Miles' sexual harassment] and the University's handling of it had on the climate within the Athletics Department—both in terms of creating a culture which tolerated sexual misconduct and dissuaded employees from reporting that misconduct." PLAINTIFFS_000127.

36. In September 2014, former LSU Human Resources Director A.G. Monaco was tasked with rolling out LSU's new Title IX Policy, PM-73. BOS-031972; *see generally* PLAINTIFFS_000225-35.

37. Monaco reached out to Athletics Director Joe Alleva twice to schedule a meeting to go over the new policy. But Alleva ignored Monaco and sent Segar to meet with Monaco instead. BOS-031972.

38. In 2016, the LSU President's Cabinet held a meeting about concerns that sexual misconduct was not being properly reported to the Title IX office by Athletics. At that meeting, Alleva was directed to ensure that employees in Athletics made reports directly to Jennie Stewart, as Title IX Coordinator. Stewart 54-56.

39. Regardless, Alleva soon after sent an email to the entire Athletics department instructing them to go to Segar or human resources representative Wendy Nall with any reports of sexual misconduct, in violation of the requirements outlined in LSU's Title IX policy. PLAINTIFFS_000268-71.

40. Despite the clear instructions from the meeting with the President's Cabinet and the plain text of the PM-73, Alleva claimed he believed "that was totally within the realm of acceptable procedure at the time." Alleva 59:1-19.

41. Alleva was under this impression because of information he received from an attorney at Taylor Porter. Alleva 31.

42. Despite the PM-73's instruction to consult with LSU's Title IX Coordinator concerning such matters, Alleva was still going to Taylor Porter for Title IX advice, rather than the Title IX Coordinator. Alleva 31.

43. Alleva, who had no Title IX training himself, put Segar in the role of accepting Title IX reports for Athletics, without knowing what Title IX training she had, if any. Alleva 17.

44. Segar knowingly withheld the identities of student-athlete perpetrators from her reports of sexual misconduct to the Title IX office. Segar 270-272.

45. In 2018, Alleva sent another memorandum to LSU's head coaches, again directing them to report sexual misconduct to Segar. BOS-002297-02299.

46. Sharon Lewis, LSU's Assistant Athletic Director of Football Recruiting and Alumni Relations, was instructed to make all reports to Segar and did not even know the University had a Title IX Coordinator. Sharon Lewis 433-436, 457-458, 507, 509.

47. Even Title IX staff knew Athletics had its own Title IX reporting policy. Scott 30.

48. They also knew Athletics' practice of referring reports to Segar was a violation of the PM-73. Scott 100-101.

49. LSU did not implement mandatory Title IX training for employees until 2015. 30b6 134.

50. LSU paid no attention to the content of the trainings, whether employees actually completed the trainings, or what employees were told would happen if they did not attend. 30b6 138.

51. Until 2021, there was no process for ensuring that employees were actually paying attention to the trainings via quizzes and check-ins. 30b6 140-142.

52. Through April 2023, there was no policy regarding compliance with mandatory training and no one designated to monitor or remedy failure to complete the required training; LSU had no idea if there was any consequence for employees who did not take it. 30b6 145.

53. Many high-level LSU athletics employees did not take the training: Alleva only took it one year; Ausberry did not take it at all from around 2016 to 2020; Segar missed at least one

year; Sharon Lewis did not take it at all until 2020; tennis coach Julia Sell did not take it from 2016 to at least 2020; and tennis coach Mike Sell did not take it at all until 2020 or 2021. 30b6 83-99.

54. None of these employees received discipline or even a warning for their failure to complete the training. 30b6 138-145.

55. In 2011, and again in 2014, before even becoming Title IX Coordinator, Jennie Stewart and her colleagues raised concerns about LSU's Title IX issues, including but not limited to employees' confusion about reporting duties and lack of clarity on reporting procedures. Stewart 19-21, 84-85.

56. In 2016, Interim President Tom Galligan convened task forces at each campus to review Title IX response, policies, and procedures. PLAINTIFFS_000113-000114; PLAINTIFFS_000275.

57. The "PM-73 and Related Policies Workgroup" issued a report outlining 17 recommendations based on its findings, which included that LSU's Title IX policies were confusing; that LSU employees did not understand their reporting obligations; that LSU was in violation of Louisiana's Act 172; and that the Title IX Coordinator reporting to the general counsel's office created a potential conflict. PLAINTIFFS_000114-000117; PLAINTIFFS_000277-000303.

58. LSU ignored the report and recommendations, which "went nowhere." PLAINTIFFS_000117.

59. Sometime between 2015 and 2017, LSU initiated an audit of Athletics to evaluate its Title IX performance, but Athletics Director Joe Alleva does not know what was reviewed. Alleva 13; PLAINTIFFS_000112.

8

60. The final report from the audit was never provided to Husch Blackwell or produced in discovery in this case, and no evidence was provided to Plaintiffs to demonstrate that the results of the audit were reviewed or implemented. PLAINTIFFS_000112; *see generally* PLAINTIFFS_000104-000106.

61. In 2017, LSU's Office of Internal Audit also conducted a review of LSU's sexual misconduct reporting and response program and issued a report on its findings. PLAINTIFFS_000119; PLAINTIFFS_000237-000244.

62. The report noted that Title IX policy violations were not being properly documented; individuals going through the investigation process were not being properly notified of the initiation or outcome of the investigation; that employees did not understand their reporting obligations; and that LSU's policies and procedures were conflicting, confusing, and not in compliance with federal requirements. Husch Blackwell found no information indicating what LSU did to review or implement the report's recommendations. PLAINTIFFS_000119.

63. In 2018, Vice President of Student Affairs Kurt Kepler convened a committee "to review information pertaining to Student Risk Assessment related to Sexual Misconduct and provide…an overview of specific risks, current mitigating strategies, assessment of current strategies, and recommendations to improve our mitigating strategies." BOS-032523.

64. The committee issued a report finding numerous deficiencies including that new employees were not being provided Title IX training; that LSU was not maintaining necessary evidence for Title IX investigations; and that the "LSU app" did not include any information on sexual misconduct or Title IX. BOS-032524.

65. In 2018, LSU hired consulting firm Baker Tilly to conduct an "Athletics Risk Assessment," which found that one of the top risks in athletics was "Title IX" and "Failure to Report an Incident of Concern." Husch Blackwell found no information indicating what LSU did to address these concerns. PLAINTIFFS_000119.

66. In 2019, the Board itself hired law firm Morgan, Lewis & Bockius LLP to "conduct a privileged and confidential review of LSU's Title IX policies and practices as they apply to LSU's Athletics Department on its A&M-Baton Rouge Campus." Despite its "overly optimistic picture of the state of the University's Title IX compliance efforts," Morgan Lewis still identified concerns including, yet again, employee confusion about their reporting obligations. Husch Blackwell found no information indicating what LSU did to address these concerns; further, the report was never shared with the Title IX Office or Athletics. PLAINTIFFS_000119-000121.

67. LSU failed to meet industry standards and practice in connection with Title IX compliance and its own PM-73 policy as to each of the Plaintiffs. PLAINTIFFS_00002048.

Respectfully Submitted,

*/s/ Catherine E. Lasky*

| | |
|---|---|
| Karen Truszkowski | Catherine E. Lasky (La. Bar 28652) |
| *Pro Hac Vice* | Endya L. Hash (La. Bar 38260) |
| Temperance Legal Group | Katie Lasky Law |
| 503 Mall Court #131 | 619 Homedale Street |
| Lansing, Michigan 48912 | New Orleans, Louisiana 70124 |
| P: (844) 534-2560 | P: (504) 584-7336 |
| F: (800) 531-6527 | F: (504) 375-2221 |
| karen@temperancelegalgroup.com | katie@katielaskylaw.com |
| | endya@katielaskylaw.com |

        Elizabeth K. Abdnour
        *Pro Hac Vice*
        Abdnour Weiker LLP
        500 E. Michigan Ave., Ste. 130
        Lansing, MI 48912
        (517) 994-1776
        (614) 417-5081
        liz@education-rights.com

        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on all parties via counsel of record by electronic mail this 31st day of July 2023.

        */s/ Elizabeth K. Abdnour*
        Elizabeth K. Abdnour

11