## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS ET AL**
*Plaintiff*

**v.**

**LOUISIANA STATE UNIVERSITY ET AL**
*Defendants*

**Case No.: 21-242**

**Division WBV-SDJ**

**JUDGE WENDY B. VITTER**

**MAGISTRATE JUDGE JOHNSON**

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT NO. 3: CALISE RICHARDSON

Plaintiffs, through undersigned counsel, respectfully submit this Opposition to Defendant's Motion for Summary Judgment No. 3: Calise Richardson ("Motion") (ECF No. 471) filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"). Several genuine issues of material fact exist for jury determination as to whether Plaintiff Calise Richardson ("Plaintiff") has sufficient evidence to prove suffering a deprivation of educational opportunity and/or benefits as a result of the Board's unofficial policy of ignoring sexual misconduct at Louisiana State University ("LSU"), and/or the Board's deliberate indifference to the heightened risk created at LSU by John Coe[1] and John Doe.[2] Further, genuine issues of material fact exist for jury determination as to whether Plaintiff has filed suit timely. Thus, Defendant's Motion should be denied.

## I.     STANDARD OF REVIEW

*See* Opposition No. 1, Sec. I, incorporated herein by reference.

---

[1] John Coe is a pseudonym.
[2] John Doe is a pseudonym.

1

## II.    RELEVANT FACTS

### A.  The Board's mismanagement of sexual misconduct at LSU

*See* Opposition No. 4, Sec. II.A., incorporated herein by reference.

Until the release of the Husch Blackwell Report in March 2021, Plaintiff Richardson could not have known that: LSU had actual knowledge of other survivors that had reported abuse by John Coe, meaning LSU had specific knowledge of a heightened risk of assault by John Coe; LSU had specific knowledge of the pervasive harassment and retaliation she and others suffered; John Coe assaulted more LSU students; and LSU had expelled John Coe for violations of LSU's Student Code of Conduct.

### B.  Plaintiff's experiences at LSU.

*See* Opposition No. 2, Sec. II.B; Opposition No. 2, Sec. II.B.; Opposition No. 4, Sec. II.B.; and Opposition No. 5, Sec. II.B., incorporated herein by reference.

LSU had always felt like a "second home" to Plaintiff; she "grew up going to LSU football games" and has "had season tickets [her] whole life, as her father is an LSU alumnus.[3] Richardson began her education at LSU as a freshman in the fall of 2014 and worked for the recruiting staff of LSU's football team from approximately September 2014 to January 2017.[4] During Richardson's freshman year at LSU, she was raped by an LSU football player while she was drunk.[5] Unfortunately, this was only the first of many times Richardson would be abused by an LSU football player with no repercussions for the perpetrators.

---

[3] Richardson I Dep. 57:5-12.
[4] Richardson I Dep.  41; Richardson Dep. Ex. 19.
[5] Richardson I Dep. 82.

### 1. *Plaintiff's Abuse as a Football Recruiter*

During her time working in the LSU football recruiting office, Plaintiff learned from friends that women in her job position had been known for being "easy-access targets" for sexual assault by football players.[6] LSU wide receivers coach Tony Ball ("Ball") told Plaintiff multiple times "to show [the recruits] a really good time" in a sexually suggestive tone.[7] During her employment, an explicit video of another LSU student was being circulated around campus.[8] In the office, Football Recruiting Analyst Keava Soil-Cormier made light of this situation and even commented negatively on the student's appearance in the video, which was unwelcome to Plaintiff.[9] Football coach Will Wright obtained Plaintiff's phone number without her consent and contacted her on multiple occasions to spend personal time with her, which was unwelcome to her.[10] Plaintiff was raped during her second year at LSU by a football recruit.[11]

Plaintiff felt LSU was treating her "like a piece of meat" or "like a dangling carrot" for football athletes.[12] Plaintiff consistently received unwelcome and even threatening messages from recruits, current and former LSU football players and coaches, family members of coaches, and former LSU athletes; Residence Life Coordinator Kimberly Davis even gave Plaintiff's number to one of the unwelcome contacts.[13] Plaintiff believes that this was due to the culture at LSU, in which female student workers were "literally there to serve the players. [They were] nice little appetizers for [football players]."[14] On several occasions, her supervisors Assistant Athletic Director for Football Recruiting Sharon Lewis, Soil-Cormier, and Associate Head Football Coach Frank

---

[6] Richardson II Dep. 59:13-15.
[7] Richardson II Dep. 36:18-37:20, 54:8-9.
[8] Richardson I Dep. 131-132.
[9] Richardson I Dep. 132.
[10] Richardson II Dep. 61.
[11] Richardson I Dep. 84.
[12] Richardson II Dep. 54:16-24, 57:6-9.
[13] Richardson I Dep. 339, 343.
[14] Richardson I Dep. 346:13-23; Richardson I Dep. 348:4-353:6.

Wilson asked Plaintiff personal questions about her dating and sexual history, which was unwelcome to her.[15] Plaintiff observed that "there was no 'zero tolerance'" exercised by LSU toward reports of Title IX violations by football players.[16]

### 2. *Richardson and John Coe*

John Coe was a highly recruited athlete who played on the LSU football team as a wide receiver from 2016 to 2017.[17] "[A]t LSU, [John Coe] was gold to everyone."[18] In summer 2016, Richardson and John Coe began an "exclusive committed relationship."[19] While Plaintiff believed her relationship with Coe to be "healthy" at the time, with resources and counseling she later realized it was "a traditional abusive relationship."[20] Coe was extremely controlling, jealous, rough and mentally, verbally, and physically abusive.[21] Coe controlled what Plaintiff wore and did not allow her to go to the bars unless he was present with her, becoming angry if she disobeyed his orders.[22] Coe blamed Plaintiff for his bad practices or games, shamed her for past sexual experiences, called her a "whore," and complained that her clothes were "inappropriate."[23] Coe physically assaulted Plaintiff by pinning her "up against the wall or [choking her] against the wall," pushing her, pinning her down, crushing her, and attempting to punch her.[24] Any time Plaintiff tried to assert her independence, Coe would belittle and shame her.[25] Even when Plaintiff

---

[15] Richardson II Dep. 35, 66.
[16] Richardson II Dep. 62:22.
[17] PLAINTIFFS_000129.
[18] Richardson I Dep. 101:21-22.
[19] Richardson I Dep. 163:7-164:4; Richardson Dep. Ex. 19.
[20] Richardson I Dep. 166:7-11, Richardson I Dep. 166:23-167:1.
[21] Richardson I Dep. 166.
[22] Richardson I Dep. 169.
[23] Richardson I Dep. 167:16-23; Richardson I Dep. 168:22-169:1.
[24] Richardson I Dep. 171:4-19.
[25] Richardson I Dep. 170; Richardson Dep. Ex. 33.

discovered that Coe was cheating on her during their exclusive relationship or engaged in reproductive coercion, she was too afraid to confront Coe in fear of his physical abuse.[26]

In fall 2016, Plaintiff went to J.L.'s bar in Tigerland with friends from the football team.[27] There, she saw John Coe kissing another woman at the bar; Coe maintained direct eye contact with Plaintiff throughout the kissing.[28] Coe then came over to Richardson, grabbed her hips and buttocks without her consent, and attempted to kiss her.[29] Plaintiff pulled away and told Coe not to touch her.[30] Coe shoved Plaintiff to the ground.[31] In response, Plaintiff threw a drink at him.[32] Coe then "squared up and charged and was swinging," and had to be restrained by five football players as "he just kept trying to push through them and swing" at Plaintiff.[33] Bouncers removed Coe from the bar.[34] While Plaintiff remained inside the bar, bystanders told her Coe was outside waiting for her, saying, "I'm going to kill her, I'm going to kill her, I'm going to get her."[35] When Plaintiff believed it was safe to exit the bar, Coe "came running toward [Plaintiff,] swinging wildly," and was again "restrained by football players.[36] Later that night, John Coe appeared uninvited at Richardson's apartment complex, acting aggressively and threatening.[37]

The following day, Plaintiff received a call from Sharon Lewis about the incident with John Coe at J.L.'s.[38]  Lewis said Coe had reported to a coach that Plaintiff has been "acting crazy at the bar" and that Coe had been "minding his business" when Plaintiff "just randomly came up and

---

[26] Richardson I Dep. 170.
[27] Richardson I Dep. 178-179; Richardson Dep. Ex. 19.
[28] Richardson I Dep. 179.
[29] Richardson I Dep. 179, 182.
[30] Richardson I Dep. 179.
[31] Richardson I Dep. 179; Richardson Dep. Ex. 19.
[32] Richardson I Dep. 179.
[33] Richardson I Dep. 179:21-180:2; Richardson Dep. Ex. 19.
[34] Richardson I Dep. 180; Richardson Dep. Ex. 19.
[35] Richardson I Dep. 180:7-13.
[36] Richardson Dep. Ex. 19.
[37] Richardson I Dep. 184-185.
[38] Richardson I Dep.  186-187; Richardson Dep. Ex. 19.

threw a drink at him."[39] Lewis said the coach wanted Plaintiff fired.[40] Lewis also "called around and asked some people who were there" to confirm that Coe's story was true, conducting "her own investigation."[41] Plaintiff told Lewis what had actually happened.[42] Lewis asked Plaintiff to meet with her and Soil-Cormier the following week.[43]

Plaintiff agreed to Lewis' request to meet with Lewis and Soil-Cormier the following week. Plaintiff again shared what happened with Coe during the meeting.[44] Lewis and Soil-Cormier minimized Plaintiff's assault by telling Plaintiff she could report the police if Plaintiff felt like this was "big enough to ruin [John Coe's] life."[45] Plaintiff said she "was scared" of Coe, but Lewis and Soil-Cormier laughed at Plaintiff and questioned why she was afraid of him.[46] Lewis and Soil-Cormier did nothing to help Plaintiff.[47] Neither Lewis nor Soil-Cormier mentioned "Title IX or compliance" and they did not ask Plaintiff if she needed resources.[48] Plaintiff asked that Coe be required to attend therapy, because of a "policy that, based on certain behaviors, coaches in athletic departments can mandate for their student athletes to see counseling."[49] Plaintiff has since realized that "giving the victim…the opportunity to decide another student's punishment [was] extremely inappropriate and manipulative."[50] Later, Coe threatened to ruin Plaintiff's reputation and get her fired.[51] Plaintiff was forced to schedule her classes during football practice times to avoid Coe.[52]

---

[39] Richardson I Dep. 187:5-10.
[40] Richardson I Dep. 187.
[41] Richardson I Dep. 187:19-23, 188:18-20.
[42] Richardson I Dep. 191.
[43] Richardson I Dep. 188; Richardson Ex. 19.
[44] Richardson I Dep. 192.
[45] Richardson I Dep. 192:13-20; Richardson Dep. Ex. 19.
[46] Richardson I Dep. 193:15-21; Richardson Dep. Ex. 19.
[47] Richardson I Dep. 204.
[48] Richardson I Dep. 192:21-22, 193:11-14; Richardson Dep. Ex. 19.
[49] Richardson I Dep. 193:4-8, 200:3-12.
[50] Richardson I Dep. 205:13-22.
[51] Richardson II Dep. 22.
[52] Richardson II Dep. 14, 16.

Coe harassed Plaintiff in in the weight room.[53] Due to her continued fear of her abuser's presence on campus, Plaintiff's grades drastically declined.[54]

### 3. *Richardson and John Doe*

Doe "was a highly recruited running back from Baton Rouge who committed to attend LSU in 2015."[55] Richardson first met John Doe in fall 2016 while he was a recruit.[56] Doe and Richardson were strictly friends at first.[57] Both lived at The Standard apartment complex.[58] On at least one occasion, Doe pinned Plaintiff against the wall, choking her and yelling at her.[59]  That same semester, Plaintiff went out to the bars with her friends, including John Doe.[60] John Doe said he had been kicked out of his apartment for vandalism and asked if he could stay at Plaintiff's apartment.[61] Plaintiff allowed him to stay over in her bed, which Doe had taken naps in previously while Plaintiff did her homework.[62] The next morning, Richardson and John Doe began to joke around when suddenly, Doe kissed Plaintiff.[63]  John Doe then pulled his and Plaintiff's pants down, exposing both of their genitals, and attempted to rape her.[64] Plaintiff told John Doe to stop multiple times; it was not until Plaintiff began to yell that Doe became angry and was yelling at Plaintiff that he would "ruin [her] life" and calling her a "dumb bitch," when Plaintiff was simply trying to explain that she did not want to have sex with him because she "care[d] about him as a person and a friend and…didn't want to cross that line in [their] friendship."[65]

---

[53] Richardson II Dep. 16.
[54] Richardson Dep. Ex. 33.
[55] PLAINTIFFS_000167.
[56] Richardson I Dep. 86-87.
[57] Richardson I Dep. 87-89.
[58] Richardson I Dep. 89.
[59] Richardson I Dep. 87-89, 302, 303.
[60] Richardson I Dep. 90, 99.
[61] Richardson I Dep. 90-91.
[62] Richardson I Dep.  91, 94.
[63] Richardson I Dep. 91.
[64] Richardson I Dep. 91-92.
[65] Richardson I Dep. 91:19-92:1, 93:1-15.

Later that day, Plaintiff called Soil-Cormier to tell her about John Doe's attempted rape and his threats to "get [Plaintiff] fired."[66] At this point, the Athletics Department had received at least two other sexual assault accusations against John Doe from both Plaintiffs Brennan and Robertson, but this was not known to Plaintiff Richardson at the time.[67] Plaintiff told Soil-Cormier about John Doe's attempted rape because she "wanted [Soil-Cormier] to step in and do…anything to protect [Plaintiff]" as Plaintiff's supervisor.[68] Soil-Cormier responded by asking why Plaintiff would let John Doe in her bed if she did not want to have sex with him, implying that the attempted rape was Plaintiff's fault.[69] Instead of making a report to the Title IX office, Soil-Cormier asked one of Plaintiff's coworkers what happened between Plaintiff and John Doe in front of other coworkers.[70] This led to rumors spreading about Plaintiff and caused dissension with one of her coworkers who was dating John Doe at the time.[71] Soil-Cormier even encouraged Plaintiff to apologize to Doe's girlfriend for his abuse.[72] For clarity, following Plaintiff's disclosure of an attempted rape, Plaintiff's direct supervisor and a Responsible Employee under the Title IX Policy began spreading office rumors about Plaintiff's sexual activity and then told Plaintiff to apologize to her abuser's significant other.

After the assault, John Doe publicly harassed and humiliated Plaintiff by telling other football players athletics workers that she was a "whore."[73] Doe texted Plaintiff "calling her names, threatening [her] [and arguing] about the meaning of someone staying stop and no."[74] When Doe

---

[66] Richardson I Dep. 96:16-97:3, 100:1-7.
[67] *See* Opposition Nos. 1 and 2.
[68] Richardson I Dep. 97:20-98:6.
[69] Richardson I Dep. 97.
[70] Richardson I Dep. 107.
[71] Richardson I Dep. 107, 109.
[72] Richardson I Dep. 136.
[73] Richardson I Dep. 114:18-21.
[74] Richardson I Dep. 94:19-95:6; Richardson Dep. Ex. 33.

learned Plaintiff had reported the attempted rape to Soil-Cormier, he called her a "dumb bitch."[75] John Doe continued to physically intimidate Plaintiff whenever he saw her in public spaces, getting in her face, and yelling at her to "get out of his space."[76] John Doe would go to bouncers and "try to kick [her] kicked out" of bars.[77] Even after blocking his phone number, Doe continued to contact Plaintiff through alternative phone numbers.[78] Plaintiff did not feel safe reporting John Doe's assault because of his positive reputation in the State of Louisiana.[79]

### 4. LSU's Flawed Title IX Investigation

On August 16, 2018, Coe was arrested and charged with felony dating violence.[80] On or around September 16, 2018, LSU police arrested John Coe a second time after detectives learned he was continuing to see and physically assault Plaintiff Lewis in violation of court orders.[81] The next day, John Coe withdrew from LSU.[82] Shortly thereafter, Deputy Athletics Director Verge Ausberry asked what Plaintiff thought about John Coe's recent arrest.[83] In tears, Plaintiff stated that she one "hundred percent believe[d]" that Coe was capable of causing abuse to others, "because [he was] also abusive to [her]."[84] Ausberry asked Plaintiff about the 2016 incident at J.L.'s, which Plaintiff had never disclosed to Ausberry.[85] Ausberry said he had not known Plaintiff was involved with Coe until she was in a meeting with Senior Associate Athletic Director Miriam Segar, and that Plaintiff's "name had come up" when the individuals in the Athletics compliance

---

[75] Richardson I Dep. 95:7-10.
[76] Richardson I Dep. 95:7-12, 98:18-99:6.
[77] Richardson I Dep. 95:15-17.
[78] Richardson II Dep. 13.
[79] Richardson I Dep. 152.
[80] BOS-002117.
[81] BOS-032685-032686.
[82] Jade Lewis II Dep. 372.
[83] Richardson I Dep. 213, 217
[84] Richardson I Dep. 217:22-218:3, 297:3; Richardson Dep. Ex. 20.
[85] Richardson I Dep. 220.

office were discussing Coe's assault.[86] Plaintiff told Ausberry that Sharon Lewis and Soil-Cormier failed to report the incident to Title IX when Plaintiff had initially reported the abuse.[87] Ausberry told Plaintiff she needed to report Coe's abuse to Segar, and Plaintiff received a phone call from Segar within the next week.[88] Plaintiff left Segar a voicemail, but Segar never responded.[89]

In March 2019, John Coe pleaded guilty to two counts of battery and one count of violating a protective order against Plaintiff Lewis.[90] Plaintiff Richardson was "walking around with the guilt that…[she had] just left [her report] with [Sharon Lewis] and trusted that maybe they would do what's right."[91] On September 28, 2018, Plaintiff told her boss, Skills Manager Brenton Sumler, that she believed that the reason behind Coe's arrest, his assault of Plaintiff Lewis, must be true "because he did it to [Richardson]" too.[92] Plaintiff revealed the details of the incident at J.L.'s to Sumler, as well as the subsequent meeting that she had with Sharon Lewis and Soil-Cormier that ultimately had no outcome, as they did not file a report with the Title IX office.[93] Sumler took Plaintiff to the Title IX office to file a report on Coe's assault.[94] Plaintiff was offered counseling and accommodations, and a Title IX investigation was finally initiated on October 1, 2018, nearly two years after her first report to Sharon Lewis.[95] For reasons unknown to Plaintiff, Sharon Lewis was named as the respondent in the investigation instead of John Coe, and Title IX never opened

---

[86] Richardson I Dep. 218:8-18.
[87] Richardson I Dep. 221-223; Richardson Dep. Ex. 19.
[88] Richardson I Dep. 218-219, 269, Richardson Dep. Ex. 19, 22.
[89] Richardson I Dep. 270; Richardson Dep. Ex. 19.
[90] Jade Lewis II Dep. 372.
[91] Richardson I Dep. 212:14-23.
[92] Richardson I Dep. 213:12-19, 214:5-9; Richardson Dep. Ex. 19.
[93] Richardson I Dep. 214.
[94] Richardson I Dep. 213, 252; Richardson Dep. Ex. 19.
[95] Richardson I Dep. 213; Richardson Dep. Ex. 16, 18, 19, 24.

an investigation into John Coe.[96]  The investigation left Plaintiff feeling "extremely upset, sad, hurt, angry…[and] very defeated."[97]

After Coe was released from jail, he texted Plaintiff asking her to hang out, and she declined.[98] Coe continued to harass Plaintiff via text through 2020.[99] Even after blocking his phone number, Coe continued to contact Plaintiff through alternative phone numbers.[100] Whenever Plaintiff would see Coe out at the bars following his arrest, she "would always leave."[101] Finally, although the November 16, 2018 Title IX investigation report found "sufficient evidence to prove that Respondent Sharon Lewis violated LSU's PM-73 policy in that as a Responsible Person she failed to report a potential violation of LSU's Title IX and Sexual Misconduct Policy PM-73," it was not until on or around July 18, 2019 that LSU expelled John Coe for violating the LSU Code of Student Conduct and the LSU Title IX Policy due to his abuse of Plaintiff Lewis.[102]

As a direct and indirect result of the actions and inactions of the Board and its employees, Plaintiff has suffered and continues to suffer as a result of the harassment that occurred and the University's failed response. The abuse John Coe and John Doe inflicted upon her and LSU's subsequent repeated failure to properly respond, while also firing Plaintiff Richardson from her position within LSU's Athletic Department, has completely distorted her previous lifelong passion for football and sports, causing a change in career trajectory.[103] While Plaintiff's Title IX investigation was ongoing in 2018, her grades were "suffering" and her professors had "expect[ed] better from" her.[104]

---

[96] Richardson Dep. Ex. 24.
[97] Richardson I Dep. 273:4-10.
[98] Richardson I Dep. 208.
[99] Richardson I Dep. 209, 211.
[100] Richardson II Dep. 13.
[101] Richardson I Dep. 211:13-14.
[102] Richardson Dep. Ex. 24; Jade Lewis II Dep. 372.
[103] Richardson I Dep. 315.
[104] Richardson Dep. Ex. 17.

Plaintiff's relationships with her family and friends have been torn apart.[105] Plaintiff sought counseling and even abused drugs to cope with the trauma she endured.[106] Plaintiff began experiencing increased anxiety when trying new tasks and is constantly vigilant and anxious.[107] Plaintiff was diagnosed with PTSD, depression, and anxiety; and even developed Diabetes, Type II and gastrointestinal issues.[108] Plaintiff had to adopt an emotional support animal to feel safe in her own home.[109] Plaintiff suffered significant economic damages including being forced to move from the apartment where Coe and Doe had abused her, as well as having to decline a scholarship to LSU for graduate school.[110] Plaintiff's graduation was delayed by one full semester.[111]

## III.    LAW AND ARGUMENT

*See* Opposition No. 1, Sec. III, incorporated herein by reference.

### A.  Perpetrator-based Heightened Risk Claim

*See* Opposition No. 2, Sec. III.A., incorporated herein by reference.

#### 1.  *A genuine issue of material fact exists as to whether the Board had actual knowledge that a substantial risk of sexual abuse would occur.*

*See* Opposition No. 2, Sec. III.A.1., incorporated herein by reference.

Plaintiffs Richardson and Lewis were both abused by John Coe, and LSU failed to take any action to protect the student body from continued harm.[112]

---

[105] Richardson I Dep. 318.

[106] Richardson I Dep. 319-320; Richardson Dep. Ex. 28.

[107] Richardson I Dep. 312-313.

[108] Richardson II Dep. 7; Richardson Dep. Ex. 17, 28, 31.

[109] Richardson I Dep. 309.

[110] Richardson I Dep. 305, 309-310.

[111] Richardson I Dep. 310:21-311:1.

[112] *See* Richardson II Dep. 29:16-25 ("...he absolutely did put his hands on me in that situation, and [Sharon Lewis] did know that"); Richardson II Dep. 30:4-17 ("I have a strong belief that before my conversation...that [Verge Ausberry] had some knowledge of what had happened between [Coe] and I"); Richardson II Dep. 123:7-10 ("To my knowledge from that conversation with [Ausberry], [the LSU Athletics Compliance Office] knew that there was some level of [her and Coe] that was similar to [Plaintiff Jade Lewis]"); and Richardson II Dep. 101:4-5, 20-24 (Plaintiff made a direct report to the Title IX office after Miriam Segar failed to respond to her urgent phone call in a reasonable time).

### 2. A genuine issue of material fact exists as to whether Plaintiff's harasser was under the Board's control.

*See* Opposition No. 2, Sec. III.A.2., incorporated herein by reference.

The University plainly had sufficient control to remove both Doe and Coe from campus if it so chose because it eventually expelled Coe in 2019 and because both were permitted to be on campus because they were student athletes which allowed them to have access to University facilities and resources. Despite the University's ability to remove Coe and Doe from campus or to discipline them in any way, Plaintiff's harassment occurred both on and off campus following her reports of their sexual abuse. Doe stalked Plaintiff in the weight room.[113] Coe threatened to get Plaintiff fired from her job and spread rumors that Plaintiff was a "whore" and a "liar."[114] Plaintiff was not connected with resources within the Title IX office until October 2018, two years after Coe assaulted her.[115] Instead, she was removed from her position in Athletics following her report of the assault.[116] Segar removed Doe's name in the Title IX report made against him.[117]

Rather than taking steps to stop Coe's pattern of violence, LSU allowed him to continue abusing women unfettered. In doing so, the University not only tolerated but exacerbated the risk to female students, and ensured the threat extended to the environment in which Doe abused Plaintiff. The fact that certain of the acts committed by Doe and Coe against Plaintiff Richardson occurred off-campus is not dispositive of the Board's responsibility for those actions. While numerous of the events occurred on campus, as in *Chen v. Albany Unified School District* and

---

[113] Richardson II Dep. 14-16.
[114] Richardson II Dep. 22:9-10, 13-15.
[115] PLAINTIFFS_000134.
[116] Richardson II Dep. 121-122.
[117] PLAINTIFFS_000170.

*Hurley*, the off-campus harassment in this case posed a direct threat to students' educations and the University environment.[118]

As an LSU student and member of the LSU football team, both Doe and Coe were subject to LSU policies and rules that governed their conduct and Coe was eventually disciplined for his actions by LSU although it was well after the harassment of Plaintiff Richardson. Thus, a reasonable juror could easily determine that the Board had control sufficient to create liability under Title IX and the Board's motion on this issue should be denied.

> **3. A genuine issue of material fact exists as to whether the harassment was so severe, pervasive, and objectively offensive that it effectively barred Plaintiff's access to an educational opportunity or benefit.**

*See* Opposition No. 1, Sec. III.C.4., incorporated herein by reference.

The sexual misconduct Plaintiff experienced was severe, pervasive, and objectively offensive. A university is liable for damages under Title IX if it "subjects" a student, or makes a student "vulnerable to," harassment that is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit."[119]

The abuse suffered by Plaintiff meets these requirements as it profoundly interfered with Plaintiff's education and her educational opportunities.  Both Coe and Doe sought to control Plaintiff and reacted violently when she asserted her independence. Coe grabbed her hips and buttocks without her consent and attempted to kiss her, then shoved her to the ground.[120] Coe also stalked Plaintiff.[121] Doe became verbally abusive after Plaintiff refused to have sex with him.[122]

---

[118] *Chen ex rel. Chen v. Albany Unified Sch. Dist., 56 F.4th 708, 721-722 (9th Cir. 2022)*; *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 687-89 (4th Cir. 2018); *see also DeGroote v. Ariz. Bd. of Regents*, No. CV-18-00310-PHX, 2020 WL 10357074 (D. Ariz. Feb. 7, 2020), at *8 (holding University exercised control over context of a perpetrator's off-campus harassment because his "violence against women…not only threatened the safety of [his victims] but threatened the safety of the larger University community").
[119] *Davis v. Monroe Cnty. Bd. of Ed*., 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).
[120] Richardson I Dep. 179, 182.
[121] Richardson II Dep. 14-16.
[122] Richardson II Dep. 24.

After his attempted rape, Doe threatened to "expose" Plaintiff to get her fired from her job, and to spread rumors that Plaintiff was a "whore" and a "liar."[123] Even after blocking his phone number, Coe continued to stalk Plaintiff using alternative phone numbers.[124]

When Plaintiff reported Coe's abuse to specifically stated to Lewis and Soil-Cormier that she "was scared" of Coe, Lewis and Soil-Cormier laughed at Plaintiff and questioned why she was afraid of him.[125] Later, Coe threatened to ruin Plaintiff's reputation and get her fired.[126] Plaintiff was forced to schedule her classes during football practice times to avoid Coe.[127] Coe harassed Plaintiff in in the weight room.[128] Due to her continued fear of her abuser's presence on campus, Plaintiff's grades drastically declined.[129]

In relation to her report of Doe's attempted rape, according to Plaintiff, instead of making a report to the Title IX office, Soil-Cormier asked one of Plaintiff's coworkers what happened between Plaintiff and John Doe in front of other coworkers.[130] This led to rumors spreading about Plaintiff and caused dissension with one of her coworkers who was dating John Doe at the time.[131] Soil-Cormier even encouraged Plaintiff to apologize to Doe's girlfriend for his abuse.[132] After the assault, John Doe publicly harassed and humiliated Plaintiff by telling other football players athletics workers that she was a "whore."[133] Doe texted Plaintiff "calling her names, threatening [her] [and arguing] about the meaning of someone staying stop and no."[134] When Doe learned

---

[123] Richardson II Dep. 22:9-10, 13-15.
[124] Richardson II Dep. 13.
[125] Richardson I Dep. 193:15-21; Richardson Dep. Ex. 19.
[126] Richardson II Dep. 22.
[127] Richardson II Dep. 14-16.
[128] Richardson Dep. 16.
[129] Richardson Dep. Ex. 17.
[130] Richardson I Dep. 107.
[131] Richardson I Dep. 107, 109.
[132] Richardson I Dep. 136.
[133] Richardson I Dep. 114:18-21.
[134] Richardson I Dep. 94:19-95:6.

Plaintiff had reported the attempted rape to Soil-Cormier, he called her a "dumb bitch."[135] John Doe continued to physically intimidate Plaintiff whenever he saw her in public spaces, getting in her face, and yelling at her to "get out of his space."[136] John Doe would go to bouncers and "try to kick [her] kicked out" of bars.[137] Even after blocking his phone number, Doe continued to contact Plaintiff through alternative phone numbers.[138]

Plaintiff has suffered and continues to suffer  due to LSU's deprivation her of access to their educational opportunities and benefits.  The abuse John Coe and John Doe inflicted upon Plaintiff and LSU's subsequent repeated failure to properly respond, as well as the subsequent retaliation by LSU employees toward Plaintiff, resulted in her firing from her position in Athletics at LSU and completely distorted her previous lifelong passion for football and sports, causing a change in career trajectory.[139] Plaintiff's relationships with her family and friends have been torn apart.[140] Plaintiff sought counseling and even abused drugs to cope with the trauma she endured.[141] Plaintiff began experiencing increased anxiety when trying new tasks and is constantly vigilant and anxious.[142] Plaintiff was diagnosed with PTSD, depression, and anxiety; and even developed Diabetes, Type II and gastrointestinal issues.[143] Plaintiff had to adopt an emotional support animal to feel safe in her own home.[144]  Plaintiff suffered significant economic damages including being forced to more from the apartment where Coe and Doe had abused her, as well as having to decline

---

[135] Richardson I Dep. 95:7-10.
[136] Richardson Dep. I 95:7-12, 98:18-99:6.
[137] Richardson Dep. I 95:15-17.
[138] Richardson Dep. II 13.
[139] Richardson Dep. I 315.
[140] Richardson Dep. I 318.
[141] Richardson Dep. I 319-320; Richardson Dep. Ex. 28.
[142] Richardson Dep. I 312-313
[143] Richardson II Dep. 7:14-18; Richardson Dep. Ex. 17, 28, 31.
[144] Richardson I Dep. 309.

a scholarship to LSU for graduate school.[145] Plaintiff's graduation was delayed by one full semester.[146]

### 4. A genuine issue of material fact exists as to whether the Board was deliberately indifferent to the harassment.

*See* Opposition No. 2, Sec. III.A.4., incorporated herein by reference.

Title IX required LSU to "adequately…respond" whenever it had "actual knowledge" of sex-based abuses.[147] The University failed to do so for Plaintiff Richardson.  In 2016, Plaintiff reported that Coe abused her and Defendants failed to take any action to protect her from continued harm.[148] After Coe's arrest in the fall of 2018, Plaintiff told Ausberry she was afraid Coe would hurt others, because of how he had hurt her.[149]  The University failed to take appropriate action.[150] Soil-Cormier responded to Plaintiff's disclosure of John Doe's attempted rape by blaming Plaintiff.[151]  Despite the University's knowledge of these incidents of abuse, Plaintiff was not connected with resources or the Title IX office until October 2018.[152] It is irrelevant that Plaintiff received mass emails from LSU regarding Title IX or had requested that Susan Barrios present to her sorority on the topic of sexual assault prevention and resources in April 2018; these unrelated facts do not relieve responsible employees' reporting duties under LSU's Title IX policy.[153]

There is no doubt that a jury could find that the University's actions and inactions amounted to deliberate indifference.[154] Thus, the Board's motion should be denied, and a jury should be permitted to decide whether the University unlawfully failed to meet its Title IX obligations.

---

[145] Richardson I Dep. 305, 309-310.
[146] Richardson I Dep. 310.
[147] *Gebser v. Lago Vista Indep. Sch. Dist.*, 118 S. Ct. 1989, 524 U.S. 274, 288-90 (1998).
[148] Richardson I Dep. 191-192.
[149] Richardson I Dep. 213, 217, 297.
[150] Richardson I Dep. 218-219, 269-270.
[151] Richardson I Dep. 97.
[152] PLAINTIFFS_000134, Richardson I Dep. 213.
[153] Richardson I Dep. 238-241.
[154] *Murrell v. School Dist. No 1*, 186 F.3d 1238, 1248 (10th Cir. 1999); *see also Davis*, 526 U.S. at 654.

### C.  Policy-based Heightened Risk Claim

*See* Opposition No. 1, Sec. III.D, incorporated herein by reference.

> ***1.  A genuine issue of material fact exists as to whether the Board maintained a policy of deliberate indifference to reports of sexual misconduct.***

*See* Opposition No. 1, Sec. III.D.1., incorporated herein by reference.

> ***2.  A genuine issue of material fact exists as to whether this occurred in a context subject to the Board's control.***

*See* Section III.D.2. above, incorporated herein by reference.

> ***3.  A genuine issue of material fact exists as to whether, as a result, Plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived her of access to the educational opportunities or benefits provided by LSU.***

See Section III.D.3. above, incorporated herein by reference.

### B.  A genuine issue of material fact exists as to whether Plaintiff's claims were timely filed.

*See* Opposition No. 1, Sec. III.B., incorporated herein by reference.

Plaintiff could not have known until the release of the Husch Blackwell report that her reports of sexual assaults were not investigated by LSU or Scott, and were not properly reported by Sharon Lewis, Keava Soil-Cormier, Verge Ausberry, Coordinator of Football Operations Ya'el Lofton, and Wide Receivers Football Coach Dameyunne Craig or any of the leaders of the athletic department or any other unit at LSU. From the Report, Plaintiff learned the following: Plaintiff's report of John Coe's abuse, which was received by Sharon Lewis, Keava Soil-Cormier, Verge Ausberry, Ya'el Lofton, and Dameyunne Craig was never reported to the Title IX office; Lewis simply left the matter to be handled by Craig because "this was the way athletics handled things."[155] During the Title IX investigation into Lewis' errors in handling Plaintiff's Title IX

---

[155] PLAINTIFFS_000135.

complaint against John Coe, Soil-Cormier, Ausberry and Lofton were never interviewed as part of the investigation, despite being present at the meeting in which Plaintiff disclosed the assault.[156] The Report revealed that Craig had wanted Plaintiff fired following John Coe's assault on her.[157] Plaintiff learned that an investigation into LSU's failures was completed by Morgan Lewis and that the report revealed a "general misunderstanding regarding proper reporting processes and lack of evidence of intentional withholding of information of failure to report" which was never shared with the Title IX Office and no employees were disciplined as a result.[158] Plaintiff also learned that Segar intentionally redacted John Doe's name from her report to the Title IX office.[159] Plaintiff did not know about Sharon Lewis' appeal of her Title IX complaint until the release of the Husch Blackwell report.[160] The Report exposed that Soil-Cormier, Segar, and Ausberry all made inconsistent reports about what happened to Plaintiff.[161]

Brent Sumler "was the first person to ever…give [Plaintiff] the resources" for victims of dating violence following her report to him on September 28, 2018.[162] Sumler accompanied Plaintiff to the Title IX office to finally file an official report of Coe's assault to Assistant Dean of Students & Associate Director, Advocacy Tracy Blanchard.[163] Plaintiff was offered counseling and accommodations, and a Title IX investigation finally was initiated on October 1, 2018, nearly *two years* after her first report to Sharon Lewis.[164] Still, none of this did or could have alerted

---

[156] PLAINTIFFS_000135-000136, PLAINTIFFS_000150.
[157] PLAINTIFFS_000136.
[158] PLAINTIFFS_000150-000151.
[159] PLAINTIFFS_000170.
[160] Richardson II Dep. 27.
[161] Richardson II Dep. 28; Richardson I Dep. 29. *See also* Richardson II Dep. 29:16-25 and Richardson II Dep. 30:1-5 (Plaintiff reported [Coe's] abuse and "absolutely said [she] was afraid or scared of [Coe]" to Sharon Lewis.
[162] Richardson I Dep. 213:13-15; Richardson Dep. Ex. 16.
[163] Richardson I Dep. 213; Richardson I Dep. 252.
[164] Richardson I Dep. 213; Richardson Dep. Ex. 16, 18, 24.

Plaintiff Richardson to the systemic failures of LSU's Title IX program which were only known to LSU. As a result, the Board's motion should be denied.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment No. 3, as it relates to Calise Richardson.

Respectfully Submitted

*/s/ Catherine E. Lasky*

| | |
|---|---|
| Karen Truszkowski | Catherine E. Lasky (La. Bar 28652) |
| *Pro Hac Vice* | Endya L. Hash (La. Bar 38260) |
| Temperance Legal Group | Katie Lasky Law |
| 503 Mall Court #131 | 619 Homedale Street |
| Lansing, Michigan 48912 | New Orleans, Louisiana 70124 |
| P: (844) 534-2560 | P: (504) 584-7336 |
| F: (800) 531-6527 | F: (504) 375-2221 |
| karen@temperancelegalgroup.com | katie@katielaskylaw.com |
| | endya@katielaskylaw.com |

Elizabeth K. Abdnour
*Pro Hac Vice*
Abdnour Weiker LLP
500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
(517) 994-1776
(614) 417-5081
liz@education-rights.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the above and foregoing pleading has been served on all parties via counsel of record by electronic mail this 31st day of July 2023.

                                      */s/ Elizabeth K. Abdnour*
                                      Elizabeth K. Abdnour