**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ABBY OWENS, et al.** | **Case No.: 21-242** |
| *Plaintiffs* | |
| | **Division WBV-SDJ** |
| **v.** | |
| | **JUDGE WENDY B. VITTER** |
| **BOARD OF SUPERVISORS OF** | |
| **LOUISIANA STATE UNIVERSITY** | **MAGISTRATE JUDGE JOHNSON** |
| **AND AGRICULTURAL AND** | |
| **MECHANICAL COLLEGE** | |
| *Defendant* | |

**<u>OPPOSING STATEMENT OF MATERIAL FACTS TO MOTION FOR</u>**
**<u>SUMMARY JUDGMENT NO. 4: ABBY OWENS</u>**

Pursuant to Rule 56.1 of the Local Rules and in conjunction with the Opposition to Motion for Summary Judgment No. 4, Plaintiff Abby Owens, through undersigned counsel, submits responses to the Board's Statement of Undisputed Material Facts:

1. Abby Owens was a student at LSU from Fall 2013 to Spring 2017, where she was a member of the LSU tennis team.  (Owens 13, 102)

    **Admitted.**

2. On the evening of June 28, 2016, Owens and her friends consumed alcohol together at an off-campus apartment and then went to an off-campus bar, where she continued to consume alcohol to intoxication.  (Owens 14-16, 42-46)

    **Admitted.**

3. Owens said she met John Doe at the bar for the first time and became "star-struck." (Owens 43-44, 46-47) Doe and Owens exchanged numbers at some point during the evening. (Owens 63)

1

**Qualified.** Owens may have given Doe her phone number, but she does not expressly recall doing so. She only knows that she gave him her phone number because he texted her. (Owens 63)

4. Doe eventually drove Owens and at least one friend home. (Owens 48-50) Doe dropped off Owens' friend and then drove to Owens' off-campus apartment complex, where Doe also lived. (Owens 50-52)

**Admitted.**

5. Doe texted Owens at around 2 a.m. and asked if he could come over, and Owens agreed. (Owens 53-54, 62)

**Qualified.** Owens agreed that Doe could come to her apartment, but Owens expressly told Doe that "Nothing's going to happen." (Owens 53, 1-4)

6. The next day, Owens vaguely recalled having sex with Doe, although Owens did not find any physical evidence that she had done so. (Owens 55-57)

**Qualified.** Owens recalled being sexually assaulted by Doe. She did not have consensual sex with Doe.

7. Owens remembered performing oral sex on Doe, and she does not believe she "resisted." (Owens 56-57)

**Qualified.** Owens recalls her head being pushed down to "give him oral." Owens 56 4-7. Owens was not capable of "resisting" or consenting due to her level of intoxication.

8. She did not have any bruises or marks on her, nor did she find evidence of semen or condoms. (Owens 57-58)

**Admitted.**

9. She has questioned her "willingness" to engage in sex with Doe, recalling a flashback of telling Doe "Not to forget her" as he left her apartment. (Owens 161)

**Qualified.** Although Owens said, "don't forget me" she continued that sentence with "some kind of like dumb drunken or whatever." (Owens 61, 5-8.) Owens was not capable of consenting to sex with Doe and as such, any comment she made to Doe was while she was in an intoxicated state.

10. Owens believes in hindsight that their sexual conduct should be considered nonconsensual because she was intoxicated. (Owens 73, 160-162)

**Qualified.** It was her significant level of intoxication that causes her to believe the sexual encounter was nonconsensual. *Any* level of intoxication does not by definition lead to an inability to consent; rather, Owens was *so* intoxicated that she was unable to consent.

11. While Owens describes her condition as "heavily intoxicated" that night, she acknowledges she was able to stand, speak, walk, text, and perform oral sex. (Owens 53-58, 62-63, 67-68, 161)

**Qualified.** Owens may have been capable of standing, speaking, walking, texting, and performing oral sex. Because of her *level of* intoxication, any of these activities would not be conscious actions on her part.

12. Owens has no idea whether Doe was also intoxicated. (Owens 107-108, 164, 169)

**Admitted.**

13. Prior to her rehab in April 2017, Owens had not considered the encounter with Doe as sexual assault. (Owens 73) Therefore, Owens never reported the incident to anyone at LSU. (Owens 40, 86, 98, 207)

**Qualified.** Owens did come to the realization that she was sexually assaulted while she was in treatment. Until that time, she had not been able to begin to process what had happened to her. Once she began the healing process with the help of a team of health care professionals, she began to understand what she had been through. In addition, Owens was reluctant to share the experience with LSU personnel, as she was fearful that nothing would be done as Doe was a prominent athlete, she would be blamed for the event, and she would be subject to retaliation. (Owens 69 15-19)

14. Instead, within a few days of the incident with Doe, Owens told a friend that "she had sex" with Doe. (Owens 59-60)

**Qualified.** Owens did disclose to her friend that a sexual act had occurred. She did not express this in a way implying that it was consensual or that she was a willing participant. (Owens 60, 11-15)

15. Owens never had any further interactions with Doe other than that she texted him to tell him she was sorry about something that occurred to Doe's brother and to see him briefly in the apartment lobby and in a bar. (Owens 61-66)

**Denied.** Owens did not text Doe. Doe texted Owens seeking sympathy because Doe's brother had committed murder. (Owens 64, 8-9) Doe approached Owens and sat next to her in a booth. (Owens 64 23-25, 65 1-2

16. Doe never acknowledged to Owens that the two of them had sex, and Doe did not do anything inappropriate to Owens thereafter. (Owens 61-66)

**Qualified.** Doe may not have acknowledged he had sex with Owens, because the event that occurred was an assault, not consensual sex. Doe did approach Owens later. Although he

did not sexually assault her again, he engaged in nonconsensual physical contact with her. (Owens 64 23-25, 65 1-20

17. Prior to this one night with Doe, Owens had been diagnosed with anxiety, depression, and an eating disorder, and she said she had been abusing alcohol with amphetamines such as Vyvanse and Adderall for years.  (Owens 21-23, 30-31, 35-37)

**Admitted.**  Plaintiff shows signs of disordered eating prior to being raped, but she was not diagnosed with an eating disorder until she was in treatment following the rape.

18. She acknowledged having an alcohol problem as early as her freshman year of college, and her drug and alcohol use continued throughout college. (Owens 35, 104-109, 116, 133-135, 140-144)  Owens testified that her alcohol and substance abuse caused her to have memory black-outs well before the event with Doe.  (Owens 22-23)  She knew the side effects of mixing Adderall and alcohol, but she said she could drink a lot more while on the medication.  (Owens 22-23)  Her eating disorder began in high school.  (Owens 37)

**Qualified.**  Owens admitted she knew that Adderall allowed someone to drink more.   She did not expressly say she "could drink a lot more while on the medication." (Owens 22 11-16)

19. Owens had been in a long-term relationship with someone who she said was emotionally and sexually abusive to her, although she never reported it to LSU.  (Owens 108-113)

**Admitted.**

20. After the relationship ended, she engaged in several incidents of intoxicated sex with men. (Owens 84, 106-108, 116-117) She said she had "unmindful," intoxicated sex with four other men/students, at least one of which she now claims to be rape because of Owens' intoxication. (Owens 83-85, 106-108)

**Qualified.**  This is a mischaracterization of Owens' testimony.   The word "unmindful" was not a word Owens used, it was in therapy notes. (Owens 106 19-21)

21. She has not deemed the others to be non-consensual because she believes the males were also intoxicated.  (Owens 84-86, 163)

**Denied.**  Owens testimony was that she was drunk, and she "kind of" consented.  (Owens 84 17-25)

22. She also now questions whether her sexual encounters with her boyfriend were nonconsensual because she was "intoxicated" on nearly every occasion. (Owens 86, 109110, 167)

**Denied.**  This is a mischaracterization of Owen's testimony.

23. In treatment, Owens said "I've only ever had sex when I was intoxicated except the first time." (Owens 166)

**Denied.**  This is a mischaracterization of Owens' testimony.   Owens was referring to her first partner only.  (Owens 167 1-8)

24. In January 2017, Owens finally disclosed to her parents that she had an alcohol/narcotic addiction and was "out of control," but she said they did not get her into a treatment program, so she returned to LSU.  (Owens 129-130)

**Denied.**  Owens told her parents in December 2016 that "it was out of control."  (Owens 129 18-19.)   Although Owens' parents did not put Owens into a treatment program, er parents took her to their family Doctor who prescribed an anti-depressant, Antabuse, and recommended she attend AA meetings. (Owens 129 15-25, 130 1-4)

25. By March 2017, her coach, Julia Sell, referred Owens to Dr. Lakeitha Poole, LSU therapist, for assessment and care.  (Owens 145)

**Admitted.**

26. Owens lied to Dr. Poole and to Coach Sell about her drug and alcohol use. (Owens 7677, 136, 150)

**Admitted.**

27. Owens subsequently showed up intoxicated at a tennis match and failed a breathalyzer. (Owens 19)

**Admitted.**

28. By April 2017, Owens failed an athletics drug test.  (Owens 96, 152)  LSU provided financial and planning aid to Owens to get her into a rehabilitation center (at Owens' request) to treat her addictions and unresolved trauma. (Owens 28, 87-88, 206; Segar II 395-96)

**Admitted.**

29. Julia Sell drove Owens to Lafayette, Louisiana to start the rehab, which Owens appreciated.  (Owens 27-28)

**Qualified.** Owens expressed that she was appreciative "at the time" she was taken to rehab. (Owens 28 6-7)

30. Owens withdrew from LSU upon entering rehab. (Owens 95, 102)

**Admitted.**

31. In mid-April, 2017, Owens disclosed to the staff at the rehabilitation center that she had been "raped by an athlete at school." (Owens 69-70, 72)  Owens does not know whether anyone relayed this information to LSU.  (Owens  70-71, 86)  Owens said she is "95% sure" that she eventually (not at first) shared Doe's name with her counselor or someone at the rehab.  (Owens 71)

**Admitted.**

32. Owens also disclosed the incident to her father during rehab, but she did not disclose Doe's name at that time.  (Owens 73)

**Admitted.**

33. Prior to April 2017, Owens had not told anyone at LSU that she had been sexually assaulted by Doe.  (Owens 86)

**Admitted.**

34. LSU first learned of Owens' allegations when her father disclosed Owens' alleged "rape" to Julia Sell, at the SEC tennis tournament in Nashville, Tennessee, on April 19-23, 2017. (Owens 77; J. Sell 171, 173-174)

**Denied**. Owens does not know whether LSU first learned of Owens' rape when her father disclosed the information to Julia Sell, or when Acadiana Addiction Center called LSU Athletics Department. Owens 189-90.

35. Owens' father did not know the name of the football player, so he simply told Coach Sell that Owens reported in rehab that she had been raped by a football player.  (Owens 79; Segar II 391-392; J. Sell 137-139, 171-173)

**Admitted.**

36. After learning of the allegation from Owens' father, Sell reported the allegation to Miriam Segar, Senior Associate Athletic Director.  (Segar II 391-392)

**Qualified.** Owens cannot admit or deny this allegation as it is not within her personal knowledge whether Sell reported it to Segar.

37. Segar, in turn, made a report to Jennie Stewart, Title IX Coordinator.  (Segar 92; Stewart 215)  Segar said she was unsure how it should be handled, as Owens was no longer

enrolled as a student, and Segar lacked any details about the assault, including the name of the assailant.  (Segar 241)

**Qualified.** Owens cannot admit or deny this allegation as it is not within her personal knowledge whether Sell reported it to Segar.

38. Stewart felt it would be inappropriate to interfere with Owens' treatment by contacting Owens in rehab.  (Stewart 216)

**Qualified.** Owens cannot admit or deny this allegation as it is not within her personal knowledge what Jennie Stewart thought.

39. Segar and Stewart expected that Owens would re-enroll at LSU, so Stewart informed Segar that once Owens re-enrolled, they would meet with her to gather information to make a Title IX report. (Segar II 392-396)

**Qualified.** Owens cannot admit or deny this allegation as it is not within her personal knowledge what Segar or Stewart thought.

40. Owens attended in-patient rehab for four months from April 5, 2017 to August 7, 2017. (Owens 101-102)

**Admitted.**

41. Prior to her discharge from rehab, Owens withdrew from LSU altogether.  (Owens 8990, 92)

**Admitted.**

42. Her family moved her out of her apartment while Owens was in rehab, so Owens went straight to her home in Georgia.  (Owens 92-93)

**Admitted.**

43. At the time of Owens' alleged assault, June 2016, the only other plaintiff with a prior experience related to Doe was Mize. (Plaintiff Brennan's photo incident occurred in July 2016, and plaintiff Richardson's incident occurred in December 2016). (R. Doc. 182, ¶¶ 182, 187, 290, 298)

**Qualified.** Owens cannot admit or deny this allegation as it is not within her personal knowledge what "prior experiences related to Doe" other people may have had.

44. Mize provided no account to LSU of her alleged assault by Doe or even that Doe was her perpetrator. (Mize 206) Segar only learned of Mize's alleged assault through Mize's friend, who witnessed nothing, and according to Mize, there were no witnesses to what occurred that night. (Segar 268-269; Mize 103)

**Qualified.** Owens cannot admit or deny this allegation as it is not within her personal knowledge what Segar and Mize communicated to each other or others.

45. The report that Segar received from Student A included that Mize had been assaulted by two men that night. (Segar Decl. ¶ 7, Exh. 5) In her deposition, Mize denied knowledge of a second person. (Mize 110-112)

**Qualified.** Owens cannot admit or deny this allegation as as she has no personal knowledge of its occurrence. Owens acknowledges that Segar and Mize did testify to the above.

46. Mize gave no information whatsoever to LSU. (Mize 133-134)

**Qualified.** Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence. Owens acknowledges that Mize did testify to the above.

47. As of the date of Owens' interaction with Doe, neither Brennan nor Richardson had reported any conduct by Doe.

**Qualified.**  Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.

48. Owens' alleged assault occurred at her off-campus apartment after a night of drinking at an off-campus bar. (R. Doc. 182 ¶¶ 328-329, 333; Owens 45, 53)

**Admitted.**

49. Owens met Doe at an off-campus bar, not through any LSU activity. (Owens 43-44)

**Qualified.**  Owens and Doe were both student athletes and based upon that status, they were aware of each other before they met in person.

50. Owens does not know what she said to Doe prior to having sex with him, but she knows that afterward, she told Doe "not to forget about her" when he left.  (Owens 160-161)

**Qualified.**  Although Owens said, "don't forget me" she continued that sentence with "some kind of like dumb drunken or whatever."  (Owens 61, 5-8.)   Owens was not capable of consenting to sex with Doe and as such, any comment she made to Doe was while she was in an intoxicated state.

51. The first time Owens had negative feelings about the sexual encounter with Doe (in June 2016) was in rehab in April 2017. (Owens 166)

**Denied.**   The first time Plaintiff disclosed the rape was in rehab in April 2017. (Owens 41.) Plaintiff testified having negative feelings well before going to rehab. (Owens 41.)

52. Before rehab, Owens said she felt shame because her conduct was "out of character." (Owens 42)  However, she admits the incident with Doe was not the only incident in which she had intoxicated sex under similar circumstances, which were also out of character for her. (Owens 143)  She describes one of those other instances (not the incident with Doe) as her "low point." (Owens 142-144)

11

**Qualified.**  Owens may have felt shame for other incidents of intoxicated sex.    However, those were instances with men she was acquainted with.  She was not acquainted with Doe other than she knew him from his athletic status.

53. Regarding Mize, on January 26, 2016 the following occurred:

o Within one hour of receiving the report from Student A, Segar met with Student A in person to obtain details about the potential issue. Student A insisted that the alleged victim did not want to report. (Segar Decl., ¶ 7, Exh. 5)   o Segar notified Student Affairs of the concern. Id.  o Segar emailed Student A and shared detailed information on the LSU Lighthouse program and the LSU Policy on Sexual Misconduct. Id   o Segar reached out to Fuentes-Martin to update her on the situation. Id

**Qualified.**  Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.  Owens acknowledges that Segar did testify as to the above.

54. The following occurred on January 27, 2016: o Segar spoke with Fuentes-Martin, and they discussed that they needed an account from the alleged victim about what happened.  (Segar 267)  o Segar again met with Student A to ask if she spoke with the alleged victim about resources and reporting the incident.  Student A was adamant that the alleged victim [Mize] did not want assistance and did not want to report.  Segar asked Student A to again speak with the alleged victim about reporting to the university or to the police.  (Segar Decl., ¶ 7, Exh. 5; Mize 105, 108)  The friend said she would do so. (Segar Decl., ¶ 7, Exh. 5)

**Qualified.**  Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.  Owens acknowledges that Segar did testify as to the above.

55. The following occurred on January 28, 2016: o Student A reported to Segar by text that "she [Mize] really isn't wanting to have anything to do with it." (Segar Decl., ¶ 7, Exh. 5)

**Qualified.**  Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.  Owens acknowledges that Segar did testify as to the above.

56. The following occurred on January 29, 2016: o Fuentes-Martin asked Lighthouse representative, Sierra Fowler, to reach out to Mize." Id.

**Qualified.**  Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.  Owens acknowledges that Segar did testify as to the above.

57. The following occurred on February 1, 2016: o Fuentes-Martin reached out to Mize by email, saying she wanted to discuss all of the services provided by LSU to address Mize's concerns, to offer medical and psychological care, to offer academic support, and to discuss options for investigating the incident.  Fuentes-Martin asked Mize to schedule a date and time to meet with Fuentes-Martin and provided Mize with her phone number and email address. (Mize Exh. 2)

**Qualified.**  Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.

58. The following occurred on February 5, 2016:  o Mize finally responded, at which time Mize apologized for her delay, stated that she had thought about everything and weighed her options, and she did not want to move forward with an investigation.  Mize assured Fuentes-Martin that she had met with the Lighthouse Program and knew all of the resources available to Mize. (Mize 118-119; Mize Exh. 3)  o Fuentes-Martin responded to Mize and asked Mize to come back to FuentesMartin if she changed her mind.  (Mize 123-124; Mize Exh. 3)

**Qualified.**  Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.

59. Mize never returned to Fuentes-Martin or to anyone else to file a complaint against Doe or to provide any details for an investigation. (Mize 124)

**Qualified.**  Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.

60. Segar and Fuentes-Martin endeavored to provide, and did provide, Mize with information about the services and resources available at LSU for victims of sexual assault.  Their communications with Mize conveyed their interest in obtaining information from Mize and moving forward with an investigation.

**Qualified.**  Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.

61. Fuentes-Martin's communications conveyed her interest in hearing from Mize. Fuentes-Martin stated: ☐ "I would like to encourage you to schedule an appointment with me so we can discuss this matter further.  ☐ "Please know that LSU is concerned for all of its student's [sic] and wishes to provide support and services through difficult challenges."  ☐ "I urge you to contact my office at (225) 578-XXXX to schedule a date and time that you can meet and discuss further."  ☐ "If you have any questions or just need to get further support and resources, please contact me either by phone or email at mari@lsu.edu."(Mize Exh. 2)

**Qualified.**  Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.

62. Mize had no issue with LSU's response at the time. (Mize 133)

**Qualified.**  Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.  Owens acknowledges that Mize did testify as to the above.

63. Mize felt that she "was responsible for [her] decisions to use or not use the resources, . . ." (Mize 184)

**Qualified.** Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence. Owens acknowledges that Mize did testify to the above.

64. Segar communicated Doe's name to Fuentes-Martin. (Segar Decl. ¶ 7) Although Segar did not include his name in her write-up of the events, she did not conceal it from Title IX. (Segar 267)

**Qualified.** Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence. Owens acknowledges that Segar did testify as to the above.

65. Fuentes-Martin, Deputy Title IX Coordinator for Students, had knowledge of the potential perpetrator. (Segar Decl. ¶ 7)

**Qualified.** Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence. Owens acknowledges that Mize did testify as to the above.

66. Owens withdrew from LSU because of a years-long substance abuse problem (predating her alleged assault), which necessitated in-patient rehabilitation for four months. (Owens 95, 102)

**Qualified.** This is a mischaracterization of Owens' testimony. As referenced, Owens did not expressly say she withdrew from LSU because of a years-long substance abuse problem.

67. She did not return to LSU after her rehab because there were too many temptations that created a risk of relapse if she returned to LSU. (Owens 90, 92-93)

**Admitted.**

68.   The Board's policies were promulgated to students and staff alike before and after Owens' alleged harassment.4 (Owens 18, 217-219; Owens Exhs. 8-11; Board 30(b)(6) I 29-30, 53-54; Board 30(b)(6) II 259-261; Stewart 38-41)

**Qualified.** Owens can neither admit nor deny this allegation as she has no personal knowledge as to who the policies were promulgated to.

69. Owens had the option to report Title IX claims through multiple mechanisms, including directly to a Title IX representative.  (Board 30(b)(6) 51-52)  Likewise, information about how to contact the campus Title IX office was provided to students and was housed on the Student Advocacy and Accountability website, Dean of Students website, HRM website, and on the Title IX website at various points.  (Board 30(b)(6) 53-54)

**Qualified.**  Owens may have been provided with information as to how to report to Title IX.  That does not mean she had express knowledge of those resources and knew how to access them.  Owens can neither admit nor deny whether information was housed anywhere as she has no personal knowledge of its occurrence.

70. Owens never reported her rape allegations while she was enrolled at LSU.  (Owens 40, 86, 98, 207)

**Denied.**  Owens did not herself directly report the allegations to LSU, but Owens did disclose the allegations to her rehab counselor who relayed that to LSU.

71. Doe's name appeared in the LSU police record for plaintiff Brennan as well as the Maxient report that disclosed Brennan's allegation (although this event occurred after Owen's alleged rape).  (Brennan Exh. 6; Brennan 190-191; Sanders Decl. ¶ 10, Exh. 5)

**Admitted.**

72. Student A's name is also absent from the Maxient record for Mize.  (Segar Decl. ¶ 7; Exh. 5)

**Admitted**.

73. For ease of attendance, LSU administered the trainings electronically, the content of which was reviewed by Title IX.  (Board 30(b)(6) 33, 36-37)

**Qualified.** Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.  Owens acknowledges that an LSU representative testified as to the above.

74. In addition to the campus-wide training, some departments, such as Athletics, Greek Life, and Residential Life, administered additional training to mitigate additional risks. (Board 30(b)(6) I 38-39, 41-43)

**Qualified.** Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.  Owens acknowledges that an LSU representative testified as to the above.

75. Many of these trainings were developed by the Title IX office and included the "big three topics" of consent, healthy relationships, and bystander intervention. (Board 30(b)(6) I 39, 42-44)

**Qualified.** Owens can neither admit nor deny this allegation as she has no personal knowledge of its occurrence.  Owens acknowledges that an LSU representative testified as to the above.

76. Like other students, Owens and her alleged harasser, Doe, received LSU Title IX training. (Sanders Decl. ¶ 3)  Because of their roles as student athletes, Doe and Owens received

17

additional training through the Dan Beebe Group/Protection for All. (Segar II 348-349, 359-360; Segar Exh. 17; Segar Decl.¶ 5, Exhs. 2-3; Owens 18, 217-219; Owens Exhs. 8-11)

**Qualified.** Owens can attest to her own training experience. She has no personal knowledge of any training Doe received nor was any evidence provided that Doe actually participated in any training.

77. The 2017 Internal Audit (dated September 13, 2017) and LSU's response occurred after Owens' alleged assault.5 (R. Doc. 182-1, p. 164-171)

**Admitted.**

78. Owens' alleged harassment took place on June 28, 2016, yet she did not file suit until almost five years later, on April 26, 2021. (R. Doc. 182 ¶ 328-333; R. Doc. 1)

**Qualified.** Owens did not have knowledge of the extent of LSU's Title IX deficiencies and the other allegations against Doe until the Husch Blackwell Report in March 2021.

79. In June 2016, Owens knew of her injury, knew of the perpetrator, knew of her intoxication, and knew what training she had received.

**Denied.** Owens did not know the extent of her injury until she was in rehab. Until the release of the Husch Blackwell Report in March 2021, Owens could not have known that LSU's policies caused her injuries.

80. Owens never once looked at LSU's website to view the services offered. (Owens 207, 212-213)

**Admitted.**

**ADDITIONAL FACTS**

1. Opposing Statements of Material Facts to Motion for Summary Judgment No. 1: Ashlyn Mize Robertson, No. 2: Samantha Brennan, and No. 3: Calise Richardson and Supplemental Opposing Statement of Material Facts as to Opposition to Motions No. 1-10 are incorporated herein by reference.

2. LSU had actual knowledge of an allegation that John Doe had raped a female student in January 2016. PLAINTIFFS_000168.

3. John Doe's name was not put into Segar's Title IX report nor any of the files related to this January 2016 allegation. PLAINTIFFS_000170

4. Despite having actual knowledge of Doe's rape of Plaintiff from her father Dan's report to Julia Sell and the treatment center's report to the athletics administration, the University failed to create a Title IX report documenting the rape. Owens 200:6-14; 205:6-9

5. Plaintiff was told by LSU employee Jennie Stewart that "there is no [Title IX] report." Owens 201-202.

6. LSU made "zero effort" to follow up with Plaintiff on the multiple reports it received about her assault. Owens 208:18-21.

7. LSU never offered Plaintiff any supportive services or told her "what [her] options were and what [her] resources were." Owens 213:3-18.

8. Plaintiff did not even know "Title IX was a thing" until years after her assault when she was advised by a reporter to request a copy of her Title IX report. Owens 208:22-23; 200:1-5, 15-18; 213:3-18 (the reporter told Plaintiff "there should have been a Title IX report filed" and what a mandatory reporter was.").

9. Owens began her education at LSU as a freshman in the fall of 2013. Owens 13.

10. She was recruited by Julia Sell and given a "full ride" to play for LSU's tennis team. Owens 13:14-15.

11. John Doe was a highly recruited athlete who played on the LSU football team as a running back from 2015 to 2018. PLAINTIFFS_000167.

12. Plaintiff had known of John Doe as a popular football player, but Owens first met Doe at a Tigerland bar called J.L.'s on the night of June 28, 2016. Owens 24-25, 42-44. *See* Opposition No. 10, Sec. III.A.2., incorporated herein by reference, for a more thorough description of Tigerland.

13. When Owens arrived at J.L.'s, she was already intoxicated, and Doe bought Owens even more drinks. Owens 44.

14.  Doe raped Plaintiff. Owens 40.

15. In April 2017, Plaintiff was intoxicated at a tennis game, and LSU required that she submit to a rehabilitation clinic before she returned to the tennis team. Owens 19-20, 27.

16. While in treatment, Plaintiff disclosed John Doe's rape for the first time. Owens 40:12-18.

17. The rehab center reported the rape to LSU and to Plaintiff's father. Owens 86.

18. In the summer of 2017, Plaintiff was considering whether to return to LSU, her father told her he had talked to Coach Julia Sell about the rape, and Sell had denied that Plaintiff could have been raped. Owens 89, 127; Dan Owens declaration; Segar 391:14-392:13 ("Q: What is she referring to, Owen's [sic] father disclosing to Juli[a]? What did you understand she was referring to? A: When Abigail Owens' father talked with Coach Julia Sell at the SEC women's tennis tournament in 2017. Q: What was your understanding of what he told Julia Sell? A: What was shared with me by Julia was that the father told her that, well, had thanked her for her help with Abby and then at some point in the conversation said that he

had learned that Abby had been assaulted by a football player. Q: Did Julia give you the name of that football player? The father did not disclose the name to Julia and Julia didn't have a name to give to me. Q: When did Julia make this report to you? A: She called me. I don't know if it was the same night or the day after but in the timeframe that it was reported to her.")

19. Once Plaintiff learned of Julia Sell's dismissiveness of her rape, she realized she could not return to LSU because she had no support from her coach and she did not want to be around Doe or "in the place where all of [her] traumas happened." Owens 89:20-23.

20. Owens was forced to give up her scholarship and transfer out of LSU. Owens 89.

21. Owens was just one of several female students Doe sexually assaulted. *See, e.g.*, Mize 62-63, Mize 67-68, 71.

22. LSU failed to initiate any Title IX investigation into his assault of Owens. PLAINTIFFS_000169.

Respectfully Submitted,

/s/ Catherine E. Lasky

Karen Truszkowski
*Pro Hac Vice*
Temperance Legal Group
503 Mall Court #131
Lansing, Michigan 48912
P: (844) 534-2560
F: (800) 531-6527
karen@temperancelegalgroup.com

Catherine E. Lasky (La. Bar 28652)
Endya L. Hash (La. Bar 38260)
Katie Lasky Law
619 Homedale Street
New Orleans, Louisiana 70124
P: (504) 584-7336
F: (504) 375-2221
katie@katielaskylaw.com
endya@katielaskylaw.com

Elizabeth K. Abdnour
*Pro Hac Vice*
Abdnour Weiker LLP

500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
(517) 994-1776
(614) 417-5081
liz@education-rights.com

*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on all

parties via counsel of record by electronic mail this 31st day of July 2023.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour