7

that, while not problematic alone, becomes harmful when the Institution uses that trust in membership to abuse its power or revokes aspects of that membership when responding inadequately to allegations of wrongdoing, furthering the harm victims incur. State Senator Regina Barrow explained how uniquely harmful this can be: "When a young person shows up for college, they go there so hopeful, bright-eyed, bushy-tailed, and many of them have come from small areas and they go there trusting so many people. And when they end up with someone that they feel they can trust, who is an adult, an administrator, a coach, and they violate that trust, some of them can't recover from that" (State Senate testimony transcript timestamp 5:45:30).

b) <u>Prestige</u>: LSU as an institution and as an athletic entity, particularly the LSU football program, holds an elevated role within the community, which can easily obscure the potential to perpetrate or facilitate abuse through action or inaction. This type of prestige was described by former President Tom Galligan in the State Senate hearing when he referred to the head football coach of the LSU football team as "probably the most powerful person in the whole state of Louisiana" (State Senate testimony transcript timestamp 7:11:30). Prestige in itself may not be harmful, but the documented prestige of the football program (ranking #7 in the nation) and the expenses and resources allocated to the football program can be harnessed to create trust and dependency in its members that leads to a conflict when abuse is occurring: to report abuse occurring by members of the football program or other programs in the Athletics Department means going up against a well-resourced and respected entity that has the power to remove privileges and resources from those making complaints, leading to the type of betrayal in which "the victim no longer feels like a valued member of the institution," "continued membership is difficult for the victim," and the victim is "punished or retaliated against the victim in some way (e.g., loss of privileges or status)." This type of culture of retaliation was also documented by several plaintiffs, described individually in more detail below.

c) <u>Priorities</u>: LSU has demonstrated that academic and athletic performance and reputation is prioritized and valued over the well-being and safety of its members. When very little resources are given to the Title IX Office (at times having only one single employee) in comparison to the Athletics Department, it is clear where the priorities lie, and this leads to high risk for Institutional Betrayal, particularly the type of betrayal that "suggests a victim's experience might affect the reputation of the institution." Louisiana State Senator Katrina Jackson questioned former LSU President Tom Galligan on LSU's priorities: "When I took at your athletic budget and other budgets at LSU, I think this is going to come down to a priority issue and probably funding [the Title IX Office] with the monies that LSU already have…I just believe that there's funding at LSU to take care of all this because it's a priority issue at this point" (State Senate testimony transcript timestamp 5:41:30). Scott Schneider of Husch Blackwell also addressed this issue in the State Senate hearing: "People can say what their values are, but at the end of the day [LSU's head football coach] was the highest paid public employee in the state of Louisiana…there are literally more people processing videos in the football operations than there are the entire university's Title IX office" (State Senate testimony transcript timestamp 7:22:30).

d) <u>Institutional denial</u>: Institutional Betrayal often follows when an institution's standard response to allegations of wrongdoing is to cast doubt on the veracity or importance of the reports, particularly when this institutional denial is predicated on the "othering" of the individual making the allegations against the institution as nonconforming. LSU exhibited this type of denial specifically when co-head tennis coach Julia Sell responded to reports of interpersonal violence with disbelief (see Plaintiffs Owens and Lewis below) and generally in the multiple documented Responsible Employees failing to report disclosures of violence.

31. Not only does LSU fit the bill for a high-risk institution, but several documented occurrences are consistent with specific manifestations of Institutional Betrayal. First, the Husch Blackwell report found