that LSU's "Title IX Office has never been appropriately staffed or provided with the independence and resources to carry out Title IX mandates" and that "institutional reporting policy and training have been unclear for years." Specifically, having LSU's Title IX Office inadequately staffed (at times including one single employee) and training well below industry standard leaving members undereducated about their rights and obligations with respect to sexual misconduct and discrimination "creates an environment in which interpersonal violence seems common or like no big deal," "creates an environment in which interpersonal violence seems more likely to occur," and "does not take proactive steps to prevent interpersonal violence," three occurrences of Institutional Betrayal as outlined in paragraph 13 above. Former LSU President Tom Galligan testified that "there was no culture of punishment at LSU. There was no notice at the time as to what would happen. The policies were very unclear. There were directions within departments to report title IX issues to places they should not have been reported" (State Senate testimony transcript timestamp 3:59:30). In addition to the understaffing and under-training of LSU's Title IX Office and Responsible employees, the university's relationship with local law enforcement has been inadequate, which former LSU President Tom Galligan described in the State Senate hearing outlining how LSU's Title IX Coordinator drafted an MOU with law enforcement about "about investigation protocols, information sharing, training, and more" but "I don't think they've ever signed it," which a State representative described as "insulting on so many levels" (State Senate testimony transcript timestamp 3:39:00).

32. A 2017 internal audit found that "published contact information for the Title IX Campus Coordinators is incomplete and/or not widely communicated" and "campus Title IX websites are difficult to find through regular navigation or the use of keyword searches," both of which constitute occurrences of Institutional Betrayal via "making it difficult to report interpersonal violence." State Representative Freeman spoke to this continuing to be an issue in 2021: "I went on that Title IX Website. I understand there's confusion about what to do, what number are students supposed to call? Because I didn't see any phone number or 24/7 [hotline]….You're not communicating with [students] about where they go, and that's just wrong" (State Senate testimony transcript timestamp 4:48:30).

33. As outlined by LSU's own Title IX policy, the employees listed as Defendants in this case are considered to be "Responsible Employees" who must notify the Title IX Coordinator of any reported or witnessed sexual misconduct, harassment, or relationship violence. The documented failures to adhere to this policy undermines the process in place which is meant to streamline reports and unburden victims of violence from having to navigate convoluted reporting processes themselves. Former LSU President Tom Galligan testified that, "The most serious misstep. And this is noted in the Husch Blackwell report, is failing to report by employees when they didn't understand they were responsible or they didn't comply with the regulation. That's the most serious misstep. Another misstep is failure to keep students properly apprised of the process and what's going on, which is perceived as delay or inaction. Another possible misstep is it helps a student to report the conduct to the police, but they don't report the same conduct to Title IX, because reporting to the police is not reporting to Title IX. Another potential misstep is failing to quickly intervene or take other appropriate intermediate measures" (State Senate testimony transcript timestamp 3:46:30). These instances of LSU Responsible Employees failing to notify the Title IX Coordinator and of other missteps in adhering to Title IX policy are consistent with several of the measurable manifestations of Institutional Betrayal, including: "Making it difficult to report the interpersonal violence," "Covering up the interpersonal violence or reports of such," "Responding inadequately to reports of interpersonal violence," and "Mishandling a victim's case."

34. The Husch Blackwell report found that "various incidents of athletics-related misconduct have not been appropriately reported to the University's Title IX Coordinator" and a single athletics employee reviewed each report of sex discrimination and decided whether the report was to be sent to the Title IX Coordinator. In addition to this being a violation of reporting processes as outlined in paragraph 33 above, this is also an example of LSU handling Title IX complaints against student-athletes differently than