UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS et al.** *Plaintiffs* | Case No.: 21-242 |
| v. | Division WBV-SDJ |
| **BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE** *Defendant* | JUDGE WENDY B. VITTER MAGISTRATE JUDGE JOHNSON |

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT NO. 7: ELISABETH ANDRIES

Plaintiffs, through undersigned counsel, respectfully submit this Opposition to Defendant's Motion for Summary Judgment No. 7: Elisabeth Andries ("Motion") (ECF No. 475) filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"). Several genuine issues of material fact exist for jury determination as to whether Plaintiff Elisabeth Andries ("Plaintiff") has proven suffering a deprivation of educational opportunity and/or benefits as a result of the Board's unofficial policy of ignoring sexual misconduct at Louisiana State University ("LSU"). Further, genuine issues of material fact exist for jury determination as to whether Plaintiff has filed suit timely. Thus, Defendant's Motion should be denied.

**I.   STANDARD OF REVIEW**

*See* Opposition No. 1, Sec. I, incorporated herein by reference.

**II.   RELEVANT FACTS**

   **A. The Board's mismanagement of sexual misconduct at LSU**

*See* Opposition No. 4, Sec. II.A., incorporated herein by reference.

1

### B. Plaintiff's experiences at LSU.

Elisabeth Andries first came to LSU as a student in August 2016.[1] She made several friends through her participation in the Greek community and through classes, including John Roe,[2] who invited her to a fraternity sponsored event on Halloween 2016 which involved a bus trip to a bar in New Orleans.[3] On the bus ride home, John Roe sexually assaulted Andries, aggressively groping Andries' breasts until they became bruised. While this was occurring, Andries was vomiting and repeatedly begging Doe to stop, telling him he was hurting her.[4] When they arrived back at Andries' dormitory, John Roe followed Andries to her room and continued making unwelcome sexual advances, touching Andries without her consent.[5] In July 2017, John Roe attempted to assault Andries again.[6]

The assault by Roe caused several lumps to form in Andries' breasts, and in July 2018, Andries had to see a specialist to have them removed. The assault also caused severe depressive episodes that hindered Andries' executive functioning.[7] This severe physical pain and trauma caused Andries to miss almost a third of her classes; she failed nearly every class that semester.[8] As a result of her decline in academic performance, Andries lost her scholarships, had to completely a lengthy withdrawal process in order to re-take those classes, and returned to LSU in the Fall of 2018 on academic probation.[9] Without a scholarship, Andries had to take on additional

---

[1] Andries Dep. at 25:12.
[2] John Roe is a pseudonym.
[3] Andries Dep. at 44:6, 46, 26:24.
[4] Andries Dep. at 27.
[5] Andries Dep. at 33-34.
[6] Andries Dep. at 44.
[7] Andries Dep. at 60, 159
[8] Andries Dep. at 59, 61.
[9] Andries Dep. at 60.

2

off-campus jobs to be able to pay for her education, which caused her to miss significantly more class than her on-campus jobs.[10]

When Andries finally gained the courage to seek help and reached out to Lighthouse, an organization on LSU's campus designed to assist survivors of sexual misconduct, she was told that there was nothing they could do for her unless she provided the name of her assailant.[11] They "told [Andries] if [Andries] didn't want to make a report, then there's not much that [LSU employees] could do for [her]."[12] Andries' last interaction with Roe occurred in Fall 2018 when Roe appeared at a LSU bar and attempted to physically assault Andries' significant other.[13] Andries later learned that three other women had been assaulted by John Roe.[14]

In spring 2019, Andries realized that John Roe was in one of her classes. At the sight of him, Andries had a panic attack and had to leave the class.[15] Andries missed around half of these classes due to panic attacks at seeing Roe.[16] That semester, Andries' roommate told her that depression and anxiety were conditions for which the school would allow her to miss class.[17] Andries discovered that disability services were available to survivors through a friend—not through her visit to the Lighthouse.[18] The Disability Services office told Andries about the Title IX office.[19] This was the first time she had heard of "Title IX" and her ability to file a report

---

[10] Andries Dep. at 23.
[11] Andries Dep. at 52, 56.
[12] Andries Dep. at 57:8.
[13] Andries Dep. at 63.
[14] Andries Dep. at 30.
[15] Andries Dep. at 64.
[16] Andries Dep. at 64:19.
[17] Andries Dep. at 65.
[18] Andries Dep. at 65:18.
[19] Andries Dep. at 65.

through that process.[20] Andries googled Title IX at LSU, but could not find any information, so she submitted a general student accountability complaint.[21]

Andries contacted the Title IX office and she requested a no-contact order, as she was scared to interact with Roe following his attempted physical assault of her significant other and her own sexual assaults by Roe.[22] The Title IX office did not give Andries any information about how the no-contact order would work or how long the investigation would take.[23] When Andries continued to experience anxiety over potential interactions with Roe in class, she followed up with Title IX and was told that a no contact order could not be issued because she was in a class with John Roe.[24] Title IX did not contact Andries again until the investigation was complete in May 2019.[25]

In May 2019, the Title IX office found Roe responsible for sexual misconduct in violation of Title IX.[26] Andries was told that the Office of Student Advocacy and Accountability ("SAA") would determine discipline, but she was given no timeline.[27] Andries learned from friends that John Roe had also been found responsible for sexual misconduct in a similar case reported by another student ("Student B").[28] During her initial meeting with Title IX office, Andries had named another LSU student who reported being sexually assaulted by John Roe as a witness.[29] LSU never contacted that student.[30]

---

[20] Andries Dep. at 66.
[21] Andries Dep. at 67.
[22] Andries Dep. at 72.
[23] Andries Dep. at 76.
[24] BOS-003164; Andries Dep. at 77.
[25] Andries Dep. at 85.
[26] Andries Dep. at 86.
[27] Andries Dep. at 86-87.
[28] Andries Dep. at 88.
[29] Andries Dep. at 75:23.
[30] Andries Dep. at 102.

John Roe was allowed to appeal the finding of responsibility, despite missing the deadline to file; the Title IX office did not notify Andries.[31] John Roe was also given an extension because of Title IX Coordinator Jennie Stewart's vacation.[32] No one notified Andries of the outcome of Roe's appeal, but in August 2019 she was contacted by Director of SAA, Jonathan Sanders, for a meeting.[33] The purpose of the meeting was to discuss the appropriate discipline for Roe.[34] However, during that meeting, Sanders instead re-read Andries the details of Roe's sexual assaults back to her, triggering severe anxiety.[35] Sanders then asked Andries whether she took drugs and what she was wearing on the night of the assault on the bus.[36] Andries felt like she was on trial, despite a finding of responsibility having already been made against Roe for two separate sexual assaults.[37] In conversations with Student B, Andries discovered that Sanders did the same thing to Student B.[38]

The only punishment SAA gave John Roe was a deferred suspension, which meant that Andries continued to encounter him on campus.[39] Quixotically, at this point, LSU finally entered a no-contact order—but it ordered it against *both* Andries and Roe, even though Andries had done nothing wrong.[40] Because Andries did not want to have to recount her sexual assault again, she accepted the outcome from SAA.[41]

---

[31] Andries Dep. at 88.
[32] Andries Dep. at 92.
[33] Andries Dep. at 96.
[34] Andries Dep. at 98.
[35] Andries Dep. at 225.
[36] Andries Dep. at 225.
[37] Andries Dep. at 98.
[38] Andries Dep. at 99-100.
[39] Andries Dep. at 103.
[40] Andries Dep. at 223.
[41] Andries Dep. at 105-107.

Andries continued to struggle academically due to the stress of the extended Title IX process.[42] In fall 2019, Andries requested that Roe be removed from a class they shared, but SAA employee Tracy Blanchard told her he had the "same right" to be in class with her, despite being found responsible for sexually assaulting two separate women.[43] Instead of removing Roe, Andries had to rearrange her own schedule to avoid being in the same classes as Roe, and she missed two weeks of class as a result[44] and had to complete several group projects alone.[45] Because Roe was in 4 out of 5 of her classes, she had to fight to stay in those classes and take them online to avoid campus as much as possible.[46] Andries had to beg her teachers for extensions on certain assignments and worked around the clock until the very last week of class to make up the work from the first two weeks she missed.[47] Ultimately, Andries was forced to consult with a therapist to determine whether and how she may want to switch majors to avoid interactions with Roe.[48]

Before the Title IX process, Andries had carefully crafted her schedule with her established study group, but she could not do so if she wished to avoid Roe.[49] Shifting her entire schedule around Roe caused her to lose the benefit—both educational and social—of her study group.[50] Andries eventually became withdrawn and stopped participating in campus activities.[51] Still, Andries could not avoid Roe. After seeing Roe at a football game in October 2019 and being forced to leave the game in a panic, she avoided campus as much as possible.[52] Andries also had

---

[42] Andries Dep. at 106.
[43] Andries Dep. at 126, 131, 235.
[44] Andries Dep. at 118.
[45] Andries Dep. at 131
[46] Andries Dep. at 117, 119, 122.
[47] Andries Dep. at 124.
[48] Andries Dep. at 126.
[49] Andries Dep. at 122.
[50] Andries Dep. at 122.
[51] Andries Dep. at 128.
[52] Andries Dep. at 83, 117.

6

to quit her job at a coffee shop near campus when Roe started to frequent that shop.[53] Andries' ability to participate in her sorority was also cut off due to her academic probation and the loss of her scholarship. Nevertheless, John Roe continued to be allowed to enter her sorority house.[54] Additionally, Andries had been treasurer for the LSU Formula One Society of Automated Engineers, but she was asked to resign because she was unable to remain focused and avoid dissociating in order to fulfill her responsibilities with the club.[55]

Andries graduated from LSU in spring 2021. After graduation, she moved to France to be as far away from John Roe and LSU as possible.[56]

### III. LAW AND ARGUMENT

*See* Opposition No. 1, Sec. III, incorporated herein by reference.

**A. Plaintiff has plead sufficient facts to support a Heightened Risk claim.**

*See* Opposition No. 1, Sec. III.B., incorporated herein by reference.

**B. A genuine issue of material fact exists as to whether Plaintiff's claims were timely filed.**

*See* Opposition No. 1, Sec. III.C., incorporated herein by reference.

LSU hid its inadequate Title IX policies from Plaintiff such that, even after learning about LSU's Title IX office, she could not find any information about what Title IX was or how complaints could be filed on LSU's campus.[57] Andries was not properly advised about the reporting and response process. At one point, Andries believed a decision on her complaint against Doe was final, because no appeals were filed in the allotted 10 days; unbeknownst to her, an extension had been granted to her assailant. Andries had no way of knowing whether such an

---

[53] Andries Dep. at 159.
[54] Andries Dep. at 160.
[55] Andries Dep. at 160.
[56] Andries Dep. at 148:17, 165.
[57] Andries Dep. at 67:3.

7

accommodation afforded to an accused assailant was common or unusual, and LSU did not advise her accordingly.[58] It was not until the publication of the Husch Blackwell report that Andries discovered that one of her professors had filed a student-in-distress complaint requesting that the school offer Andries more substantial assistance—but that request was ignored.[59]

To be clear, Andries' assailant was found responsible for sexual assault against two different women, but he only received a deferred suspension—which was effectively no punishment at all. Andries learned from the Husch Blackwell report that a student found responsible for two counts of sexual misconduct should have been, at the very least, suspended without deferral, or potentially expelled, from the university according to LSU's official policy.[60] Before the Husch Blackwell report, Andries had no way of knowing that LSU had failed her, much less how, and her claim could not therefore have accrued until the report's publication in 2021.[61] Defendant's Motion for Summary Judgment on the grounds of prescription is therefore without basis and must be denied.

### C. Policy-Based Heightened Risk Claim

*See* Opposition No. 1, Sec. III.D, incorporated herein by reference.

#### 1. *A genuine issue of material fact exists as to whether the Board maintained a policy of deliberate indifference to reports of sexual misconduct.*

*See* Opposition No. 1, Sec. III.D.1., incorporated herein by reference.

The experiences Andries had with LSU's Title IX process provide clear evidence that LSU was not following its official polices, and thereby maintained a policy of deliberate indifference. When Andries first discussed the issue of her grades declining as a result of her assault with an

---

[58] Andries Dep. at 91.
[59] Andries Dep. at 133-34.
[60] PLAINTIFFS_000333.
[61] Andries Dep. at 204.

8

LSU representative, she was told that she could have no access to any educational services unless she files a formal complaint.[62] LSU's Disability Services told Andries about the Title IX office but failed to report her sexual assault, in violation of the responsible employee provision of the Title IX policy.[63] Once Andries learned about Title IX, but without further resources or support, she attempted a fruitless internet search; she could not ascertain how to file a Title IX complaint.[64] When Andries did finally speak with a Title IX employee, they informed her she could not obtain a no-contact order, and they gave her no information about the investigation process or the timeline in which she should expect an investigation to be undertaken.[65] Despite LSU's written procedures requiring resolution in 30 days, the investigation process took over two months,[66] and Andries' witnesses were not even interviewed in the course of the investigation.[67] Moreover, no one told Andries that Roe had appealed the outcome.[68]

In disciplining Roe, SAA did not take into account that there had been two separate findings of sexual misconduct against John Roe, in addition to at least one other uninvestigated allegation of sexual misconduct.[69] As Andries learned when reading the Husch Blackwell report, two findings of sexual misconduct should result in suspension or expulsion, but John Roe's suspension was deferred; he was even allowed to attend football games in Fall 2019.[70] Even after LSU found Roe responsible for committing sexual misconduct against two separate women, it was Andries—and not Roe—who was forced to change her class schedule, move classes online, and change her major

---

[62] Andries Dep. at 56, 57:8
[63] Andries Dep. at 65:18, PLAINTIFFS_000360.
[64] Andries Dep. at 66-67.
[65] Andries Dep. at 72.
[66] BOS-002224; Andries Dep. at 82.
[67] Andries Dep. at 102.
[68] Andries Dep. at 88.
[69] *See generally* PLAINTIFFS_000333.
[70] Andries Dep. at 103, 204; PLAINTIFFS_000333.

9

to avoid her assailant.[71] To add insult to injury, a no contact order was issued against Andries, the victim of Roe's assaults.[72] And while a concerned professor had, in good faith, attempted to help Andries by submitting their concerns to the SAA, as Andries later learned in the Husch Blackwell report, SAA about her, and SAA did nothing with that report.[73] All of this evidence suggests deliberate indifference upon which a jury could find Defendant liable, and summary is therefore improper here.

> **2. *A genuine issue of material fact exists as to whether the Board's policy of deliberate indifference created a heightened risk of sexual harassment that was known or obvious.***

*See* Opposition No. 1, Sec. III.D.2., incorporated herein by reference.

In talking about the assault with her friends, Andries was learned of three other women who had been assaulted by John Roe.[74] It was clear to Andries at that moment that anyone could get away with sexual assault of multiple students and receive merely a slap on the wrist. A person found to have sexually assaulted two separate victims on the same night should receive more punishment than a deferred suspension.[75] What is worse, LSU refused to issue a no-contact order throughout the entirety of Andries' investigation. It was only upon the conclusion of the investigation, as discipline, that a no-contact order issued—against both Andries and Roe.[76] The natural result of issuing no contact orders against victims as a matter of standard practice is that victims will not come forward for fear of retaliation. All of these actions show evidence of heightened risk, and after the assault of three women, it is hard to imagine that the risk was not known and obvious to LSU.

---

[71] Andries Dep. at 107.
[72] Andries Dep. at 223.
[73] Andries Dep. at 203.
[74] Andries Dep. at 30, 103.
[75] Andries Dep. at 244.
[76] Andries Dep. at 77, 223.

> 3. *A genuine issue of material fact exists as to whether, as a result, Plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived her of access to the educational opportunities or benefits provided by LSU.*

*See* Opposition No. 6, Sec. III.B.3., incorporated herein by reference.

The negative effects to Andries due to LSU's deliberate indifference are extensive: (1) missing hours of class; (2) leaving her study groups; (3) losing the benefit of extracurricular activities, including participation in her sorority and engineering organizations on campus; (4) moving away from campus; (5) quitting her job; (6) going to new coffee shops because she feared running into Roe in public; (7) suffering a decline in her grades, below her known capacities and talent; (8) having to re-take several classes; (9) switching majors; (10) leaving on-campus job opportunities; (11) losing her scholarships; (12) losing the opportunity to to socialize with friends at school-sponsored events; and (13) experiencing academic probation.[77]

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment No. 7, as it relates to Elisabeth Andries.

Respectfully Submitted,

/s/ Catherine E. Lasky
Catherine E. Lasky (La. Bar 28652)
Endya L. Hash (La. Bar 38260)
Katie Lasky Law
619 Homedale Street
New Orleans, Louisiana 70124
P: (504) 584-7336
F: (504) 375-2221
katie@katielaskylaw.com
endya@katielaskylaw.com

Karen Truszkowski
*Pro Hac Vice*
Temperance Legal Group
503 Mall Court #131
Lansing, Michigan 48912
P: (844) 534-2560
F: (800) 531-6527
karen@temperancelegalgroup.com

---

[77] Andries Dep. at 23, 159-161, 166, 223.

11

>Elizabeth K. Abdnour
>*Pro Hac Vice*
>Abdnour Weiker LLP
>500 E. Michigan Ave., Ste. 130
>Lansing, MI 48912
>(517) 994-1776
>(614) 417-5081
>liz@education-rights.com
>
>*Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on all parties via counsel of record by electronic mail this 31st day of July 2023.

>*/s/ Elizabeth K. Abdnour*
>Elizabeth K. Abdnour