**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ABBY OWENS, et al.** | **Case No.: 21-242** |
| *Plaintiffs* | |
| | **Division WBV-SDJ** |
| **v.** | |
| | **JUDGE WENDY B. VITTER** |
| **BOARD OF SUPERVISORS OF** | |
| **LOUISIANA STATE UNIVERSITY** | **MAGISTRATE JUDGE JOHNSON** |
| **AND AGRICULTURAL AND** | |
| **MECHANICAL COLLEGE** | |
| *Defendant* | |

## OPPOSING STATEMENT OF MATERIAL FACTS  TO MOTION FOR SUMMARY JUDGMENT NO. 7: ELISABETH ANDRIES

Pursuant to Rule 56.1 of the Local Rules and in conjunction with the Opposition to Motion for Summary Judgment No. 7, Plaintiff Elisabeth Andries, through undersigned counsel, submits responses to the Board's Statement of Undisputed Material Facts:

1. Elisabeth Andries ("Andries") began as an engineering student at LSU in the Fall of 2016.  (R. Doc. 182, ¶ 362; Andries 21, 23-24)1

**Admitted.**

2. In addition to her studies, she worked between 20 and 50 hours per week.  (Andries 23)

**Admitted.**

3. Andries received email communications from LSU about Title IX and sexual violence on campus in addition to annual Title IX training.  (Andries 154-156; Andries Exhs. 32-36; Sanders Decl. ¶ 5)

**Qualified.**  Andries testified she has no reason to dispute that the emails were sent, but she does not recall seeing them. (Andries 154-156)

1

4. In October 2016, Andries attended an off-campus Halloween party at Red Eye in New Orleans, hosted by Pi Kappa Phi. (Andries 25-26) She attended the party with John Roe, a male student she met in her Industrial Engineering classes. (Andries 26-27; R. Doc. 182, ¶ 363)

**Admitted.**

5. Two of Andries' friends also attended the party with Pi Kappa Phi dates, and the party guests took buses to and from the bar in New Orleans. (Andries 26-27)

**Admitted.**

6. According to Andries, she had not eaten dinner prior to attending the party and became heavily intoxicated at some point during the event. (Andries 26-27)

**Qualified.** Andries testified that she had not eaten dinner before the party. She stated she started throwing up, but there is no reference to her saying she was heavily intoxicated on the cited pages. (Andries 26-27)

7. Andries went to the bathroom at Red Eye and required assistance from her friends to leave the bar. (Andries 28; R. Doc. 182, ¶ 365)

**Admitted.**

8. As Andries and her friends were exiting the bar toward the buses, Roe allegedly escorted Andries to board a different bus than her friends. (Andries 28) Although Andries does not remember selecting a seat, she believes she was seated at the back of the bus, but Roe was in the front of the bus for some period of time. (Andries 26, 2829; R. Doc. 182, ¶ 367)

**Admitted.**

9. Andries admits that her memory of these events is incomplete due to her level of intoxication, that she was throwing up in her hands, and that she was not conscious during the entire bus ride. (Andries 26-27)

**Qualified.** Andries testified that she blacked out, she was not conscious through the entire bus ride, and she was throwing up in her hands. There is no mention of intoxication on the cited pages of Andries' deposition. Therefore, stating she was intoxicated is an inference unsupported by the record cited. (Andries 26-27)

10. At some point after being seated, Roe allegedly began to grope Andries "underneath her shirt," and she believes this occurred for about 30 minutes. (Andries 26-27, 40) Andries allegedly told Roe "no," and believes he may have said "[c]ome on. It doesn't matter." (Andries 27, 29)

**Admitted.**

11. Andries believes she lost consciousness shortly after the bus left New Orleans, while Roe was allegedly groping her. (Andries 31) Andries testified that she did not regain consciousness until she returned to Baton Rouge. (Andries 31-32)

**Admitted.**

12. Upon returning to Baton Rouge, Andries, Roe and others rode in a truck back to North Hall where she and Roe both lived. (Andries 33) Andries testified that Roe was pulling at her waistband and rubbing his hand along her back and under her shirt, although Andries did not include this allegation in her Complaint. (Andries 33, 38-39) Andries testified that when they returned to North Hall, Roe walked her to her room (while allegedly touching her inappropriately), but he did not enter. (Andries 33-34)

**Admitted.**

13. The next morning, Andries woke with bruises on her chest and went to her parents' house. (Andries 40) Although she was upset, she did not tell them what occurred with Roe.

(Andries 35-37)  Instead, Andries told her mom that she was embarrassed for throwing up and that her friends abandoned her.  (Andries 37)

**Admitted.**

14.  Andries did not report Roe's conduct to her parents or friends, her sorority, Roe's fraternity, LSU, or the police.  (Andries 38, 40-43)

**Qualified.** Andries did not tell her parents or friends, Roe's fraternity, or the police.   There is no testimony on the cited pages regarding LSU. (Andries 38, 40-43)

15.  Andries continued to interact with Roe after the alleged assault.  (Andries 43-47)

**Admitted.**

16.  Andries sat next to Roe in their shared physics class and interacted socially with him. (Andries 43-45)

**Admitted.**

17.  The weekend after the alleged assault, Roe invited Andries and her friend to an on campus event concerning the National Presidential election.  (Andries 45)  Andries and her friend attended the event, and Andries and Roe were friendly to each other.  (Andries 45)

**Admitted.**

18.  Andries testified that she often did homework with groups that included Roe, and that because of their mutual friends, they were often together at each other's Greek house, bars in Tigerland, football games and post-game activities.  (Andries 44-47)

**Admitted.**

19.  In November 2016, Andries started seeing Tiffany McCaughey, a therapist at LSU's Student Health Center.  (Andries 53)  Andries allegedly told McCaughey about the alleged assault

in their first appointment, and McCaughey provided her with resources about LSU's Lighthouse Program. (Andries 53-54)

**Admitted**.

20. Under LSU's Title IX policy, mental health counselors are not considered "responsible person[s]" who are required to report incidents of sexual misconduct. (Andries Exh. 3) Therefore, Ms. McCaughey did not report the alleged assault. (Board 30(b)(6) I 48-49)

**Qualified.** Andries can neither admit nor deny why McCaughey did not report as she has no knowledge as to such but acknowledges that McCaughey did not report the alleged assault.

21. In July 2017, Andries picked up Roe from a bar and brought him back to her off-campus apartment. (Andries 49-50) Per Andries, Roe "tried to touch her again," but she immediately pushed him away. (Andries 49) Thereafter, she kicked him out of her apartment and did not speak to him for over a year. (Andries 49, 62)

**Admitted.**

22. Andries did not report this incident to LSU, and but for an interaction with Roe at a restaurant in the Fall of 2018, she did not have any other interaction with Roe. (Andries 52-53)

**Admitted.**

23. In Fall 2018, Andries was in Tigerland after a football game, and she encountered Roe. (Andries 63) Roe repeatedly tried to speak to Andries, but she ignored him. (Andries 63) Andries' boyfriend told Roe to "knock it off" and a fight nearly ensued. (Andries 63)

**Admitted.**

24. Andries finally met with Lighthouse at the end of 2017 or early 2018. (Andries 56-57) Andries explained to the Lighthouse representative that she was assaulted in October 2016, but she was not willing to provide the alleged assaulter's name. (Andries 56-57) Lighthouse provided

Andries resources for stress management and academic disability services.  (Andries 56-57; Andries Exh. 1)

**Admitted.**

25. Andries attended one or two victim's group meetings before she decided they were "useless" and stopped going.  (Andries 54-55)

**Qualified.**  Andries also stated that "the way I process trauma isn't really pertinent for a group setting." (Andreis 55)

26. Andries claims her grades drastically declined in Spring 2018 because "she was fully realizing her assault" and dealing with a medical issue that caused her to miss almost three weeks' of classes.  (Andries 59-62)  Ultimately, Andries withdrew for the Spring 2018 semester and returned in Fall 2018 on academic probation.  (Andries 60)

**Admitted.**

27. According to Andries, she did not have any classes with Roe and did not have any interaction with him in Fall 2018.  (Andries 62)

**Qualified.**  Andries testified that she saw Roe at Pluckers in the fall of 2018 he approached her and she avoided him, and Poe tried to fight with Andries' now-husband.  (Andries 63)

28. Andries and Roe were enrolled in a class together for the 2019 Spring semester, although they did not sit together or interact with each other.  (Andries 64)  Andries allegedly missed most of that class due to fear of Roe.  (Andries 64, 199-201)

**Admitted.**

29. Andries received a referral to LSU's Office of Disability Services from Dr. Laura Jones at LSU's Student Health Center.  (Andries 65)   Andries visited Disability Services to request

extended time to complete assignments, consideration for absences, and notetaking services. (Andries 65-67)

**Admitted.**

30. She received all of these accommodations, except for notetaking, because the class did not have an official note-taker. (Andries 67)  However, she was able to get notes from a friend in the class.  (Andries 67)

**Admitted.**

31. At the urging of Disability Services, Andries contacted LSU's Student Advocacy and Accountability Office ("SAA") to file a Title IX report.  (Andries 67)  Andries met with Title IX personnel Kim Davis and Jeff Scott regarding the incident with Roe.  (Andries 70-72)

**Admitted.**

32. Andries filed an online report on February 21, 2019.  (Andries Exh. 2)

**Admitted.**

33. Andries complains that she was assured she would receive a no-contact order from Title IX.  (Andries 71-72)  However, Davis later told her that since Roe had not contacted her personally since 2017, a no-contact order would not be issued.  (Andries 77-78)  Andries acknowledges that Roe had not attempted to contact her in class or otherwise since her re-enrollment.  (Andries 72-73)

**Admitted.**

34. In September 2017, Andries learned of a friend having a sexual incident with Roe that was not reported to LSU.  (Andries 74-75)

**Admitted.**

35. In 2019, Andries also learned that Roe allegedly assaulted another student on the bus that night, "Sarah Zoe," who made a complaint to Title IX shortly after Andries did. (Andries 30-31) Zoe allegedly did not know Roe's identity at the time of the alleged assault. (Andries 30-31)

**Admitted.**

36. Neither of the other alleged assaults by Roe were known to LSU until Andries reported her assault in March 2019 (R. Doc. 182, ¶ 397; Andries 70-71; Board 30(b)(6) I 4849)

**Qualified.** Andries can neither admit nor deny whether any of Roe's other assaults were known to LSU as she has no personal knowledge of such.

37. In June 2019, Scott contacted Andries and told her that he had completed the investigation and found Roe responsible for the assault Andries reported. (Andries 85; Andries Exh. 7; Sanders Decl. ¶ 13, Exh. 8)

**Admitted.**

38. Roe appealed this finding. (Andries 88-89) Andries complains about not receiving notice of Roe's appeal and LSU's extension of his appeal deadline. (Andries 87-91, 205-212) Ultimately, Roe's appeal was denied, and Andries understood that SAA would issue Roe a sanction in accordance with the Responsible finding. (Andries 95; Sanders Decl. ¶ 13, Exh. 9)

**Admitted.**

39. Andries then met with Jonathan Sanders of SAA in August 2019. (Andries 97) Andries viewed the meeting with Sanders negatively and was bothered by some of Sanders' questions and statements. (Andries 98-99)

**Admitted.**

40. SAA issued Roe a deferred suspension. (Andries 103)

**Admitted.**

41. Andries did not use LSU's procedures to challenge this outcome, but Roe and Zoe did. (Andries 104-105)

**Admitted.**

42. A University Hearing Panel reviewed the outcome and changed Roe's discipline to a one-year suspension. (Andries 111)

**Admitted.**

43. While Roe's appeal was pending in the Fall 2019, Andries and Roe had numerous classes scheduled together. (Andries 118-119) Andries changed some of her classes to avoid interaction with Roe. (Andries 118-119)

**Admitted.**

44. When Roe returned to campus in the Fall 2020, Tracey Blanchard in SAA notified Andries of Roe's readmission. (Andries 145-146)

**Admitted.**

45. Andries and Ashley Gray, counselor for LSU's College of Engineering, worked together to alleviate conflicts between Andries' and Roe's schedules without impacting Andries' anticipated graduation date. (Andries 147-149) Andries was able to schedule her classes without issue in the Fall 2020 and Spring 2021 and did not report any further conduct by Roe to LSU. (Andries 147-149)

**Qualified.** Andries did have to move her classes to accommodate Roe's class scheduling order to not be in class with Roe. (Andries 150)

46. Andries did not file suit until April 26, 2021. (R. Doc. 1)

**Admitted.**

9

47. All of the examples in the Second Amended Complaint and Jury Demand (the "Complaint") of how LSU created a heightened risk of sexual misconduct on campus for Roe's victims involve conduct occurring after Andries' alleged assault by Roe. (R. Doc. 182, ¶ 933 (a)-(c))

**Denied.** The Second Amended Complaint discusses LSU's systemic failures, some of which occurred after Roe sexually assaulted Andries, and some of which were ongoing.

48. All of Andries' allegations regarding what she learned from the Husch Blackwell Report relate to post-assault conduct. (R. Doc. 182, ¶ 450 (emphasis added))

**Qualified.** Andries is unable to admit or deny this allegation as she does not know whose post-assault conduct it references.

49. Andries knew the identity of the alleged perpetrator as of October 2016. (Andries 2527)

**Qualified.** If this statement references Roe, then Andries admits. If this statement references another alleged perpetrator, Andries is unable to admit or deny this allegation as she does not know who the alleged perpetrator is.

50. Andries visited Lighthouse at the end of 2017 or beginning of 2018, where she learned of resources for victims of sexual assault. (Andries 54, 57) She later learned of three other alleged victims. (Andries 30-31, 74-75)

**Admitted.**

51. One victim disclosed the alleged assault directly to Andries in September 2017. (Andries 74-75)

**Admitted.**

52. The other she learned of second-hand, and Andries contacted this student on Facebook around May 2019. (Andries 30-31)

**Admitted.**

53. The third victim allegedly submitted a statement to be read aloud in the September 2019 University Hearing Panel ("UHP") alleging that in 2016 or 2017, Roe "tried to shove his toe in her vagina." (Andries 110) Notably, Andries was aware of the incident involving the third victim because that student had previously disclosed it to her. (Andries 110)

**Admitted.**

54. Following the UHP, Andries was notified of the outcome—suspension for one year. (Andries 111, 114; Andries Exh. 19)

**Admitted.**

55. Roe filed another appeal, which was denied, and Andries was informed of the denial on October 26, 2019. (Andries 115; Andries Exh. 20)

**Qualified.** Until Andries was notified that the appeal was denied, she was not aware that Roe had filed another appeal. (Andries 115)

56. Andries was the first student to report sexual assault allegations against Roe. (Board 30(b)(6) I 47-49)

**Qualified.** Andries can neither admit nor deny as she has no personal knowledge as to whether other reports were made against Roe.

57. The Board's policies were promulgated to students and staff alike before and after Andries' alleged harassment. (Andries 153-156; Andries Exhs. 32-36; Board 30(b)(6) I 29, 52-54; Board 30(b)(6) II 259-261; Stewart 38-41)

**Qualified.** Andries can neither admit nor deny if policies were promulgated to students and staff as she has no personal knowledge of those events. Andries acknowledges that the Board and Stewart testified to such.

58. Employees, non-employees, and students, including Andries, had the option to report Title IX claims through multiple mechanisms, including directly to a Title IX representative, or through Maxient. (Board 30(b)(6) I 49-52)

**Qualified.** Andries can neither admit nor deny if policies were promulgated to students and staff as she has no personal knowledge of those events. Andries acknowledges that the Board testified to such.

59. Information about how to contact the campus Title IX office was provided to students and was housed on the Student Advocacy and Accountability website, Dean of Students website, HRM website, and on the Title IX website at various points. (Board 30(b)(6) I 49-52)

**Qualified.** Andries can neither admit nor deny if policies were promulgated to students and staff as she has no personal knowledge of those events. Andries acknowledges that the board testified as such.

60. The Board provided annual training beginning in at least 2014. (Board 30(b)(6) I 3032, 36-37) For ease of attendance, LSU administered the trainings electronically, the content of which was reviewed by Title IX. (Board 30(b)(6) I 33, 36-37)

**Qualified.** Andries can neither admit nor deny if the Board provided annual training or how they were administered or whether they were reviewed by Title IX as she has no personal knowledge of those events. Andries acknowledges that the board testified as such.

61. In addition to the campus-wide training, some departments, such as Athletics, Greek Life, and Residential Life, administered additional training to mitigate additional risks. (Board 30(b)(6) I 38-39, 41-43)

**Qualified.**   Andries can neither admit nor deny if some departments administered additional training or what the motivation for such training was as she has no personal knowledge of those events.   Andries acknowledges that the board testified as such.

62. Many of these trainings were developed by the Title IX office and included the "big three topics" of consent, healthy relationships, and bystander intervention. (Board 30(b)(6) I 39, 42-44)

**Qualified.**  Andries can neither admit nor deny the Title IX office developed any trainings, whether those trainings were the same trainings referenced above, or what topics those trainings covered as she has no personal knowledge of those events.   Andries acknowledges that the board testified as such.

63. Like other students, Andries and Roe received MyStudentBody training, which LSU mandated that students complete as a prerequisite to registering for classes.  (Sanders Decl. ¶ 3)

**Qualified.**  Andries can neither admit nor deny as she has no personal knowledge if Roe had said training.   Andries does not recall if she had the training herself. (Andries 153-156).

64. Andries acknowledged she received several communications regarding sexual assault, Title IX, and campus safety while she was at LSU.  (Andries 153-156; Andries Exh. 32-36)

**Qualified.**  Andries acknowledged receipt of said communications.  Andries does recall which communications she read or what they said. (Andries 153-156).

65. Andries and Roe were required to attend additional training associated with their Greek Life memberships. (Sanders Decl. ¶ 5)

13

**Qualified**.  Andries acknowledges that Sanders testified as such, but she has no knowledge if Roe attended any training associated with Greek Life memberships and can therefore neither admit nor deny this allegation.

## ADDITIONAL FACTS

1. Supplemental Opposing Statement of Material Facts to as to Opposition to Motions No. 1-10 is incorporated herein by reference.

2. Elisabeth Andries first came to LSU as a student in August of 2016 and joined the Greek community. Andries 25:12.

3. She made several friends through her participation in the Greek culture and through classes. Andries 44:6, 46. One such friend was John Roe, who invited Plaintiff to a fraternity sponsored event on Halloween of 2016. Andries 26:24.

4. Plaintiff acted as John Roe's guest to this event, which involved all of the attendees getting on several buses, which would travel an hour away to New Orleans to attend a party at a bar, then following the party the buses returned the attendees to LSU's campus. Andries 26.

5. During the bus ride back from the party, John Roe aggressively groped Andries's breasts until they became bruised, while Andries was repeatedly telling him to stop, telling him he was hurting her, and vomiting. Andries 27. During this assault, Andries lost consciousness. Andries 27, 31:9.

6. The next morning, Andries had horribly terrifying bits of memory and found painful dark bruises on her chest. Andries 40.

7. Andries isolated herself from everyone for the remainder of that weekend because she was in such physical and emotional pain, and she was not sure how to describe what had happened to her. Andries 37.

8. Andries attempted to continue her life as she was doing before this assault, as she and Roe had similar studies and friend groups and saw each other often. Andries 46. On some level, Andries was in denial and confused about her assault: "A mixture between not understanding what happened, not believing it happened." Andries 54.

9. She was successful at burying the memory for about eight months, but in July of 2017, John Roe attempted to assault Andries yet again. Andries 44.

10. "I told him to get the f*** out of my house and to not speak to me again. And then I locked the bedroom door." Andries 51:8. "I just never answered his texts or spoke to him again after that." Andries 44:3.

11. Following the second assault, Andries disclosed Roe's behavior to a few of her closest friends and her LSU therapist. Andries 52-53.

12. The assault by Roe had caused several lumps to form in her breasts and she had to see a specialist to have them removed; the assault also caused severe depressive episodes that hindered Andries's executive functioning. Andries 60, 159.

13. This severe physical and emotional pain caused Andries to miss almost a third of her classes, and she failed almost every class that semester. Andries 59, 61.

14. As a result of her decline in academic performance, Andries lost her scholarships, had to complete a lengthy withdrawal process to be allowed to re-take those classes, and returned in the Fall of 2018 on academic probation. Andries 60.

15. She had to take on additional off-campus jobs to be able to pay for her education and that caused her to miss much more class than her on-campus jobs. Andries 23.

16. When Andries finally got in touch with Lighthouse, an organization on LSU's campus designed to assist survivors of sexual misconduct, she was told that there was nothing they could do for her unless she provided the name of her assailant. Andries 52, 56.

17. They "told [Andries] if [Andries] didn't want to make a report, then there's not much that [LSU employees] could do for me." Andries 57:8.

18. Andries then worked with a therapist to determine whether and how she may want to switch majors to avoid interactions with Roe. Andries 126.

19. Andries's last interaction with Roe occurred in Fall of 2018 when Roe physically assaulted Andries's significant other. Andries 63.

20. In talking about the assault with her friends, Andries was able to find three other women who had been assaulted by John Roe. Andries 30.

21. In Spring of 2019, Andries realized that John Roe was in her class, and at the sight of John Roe, Andries had a panic attack and had to leave the class. Andries 64.

22. Andries missed around half of these classes because "Either I would show up and have to leave within -- before even class started or in the middle of it from having a panic attack or just the fear of going in there." Andries 64:19.

23. At some point in Spring of 2019, Andries's roommate informed her that depression and anxiety were conditions for which the school would allow her to miss class. Andries discovered that disability services were available to survivors through her friend, not through her visit to the Lighthouse. Andries 65:18.

24. When Andries finally found the Disability Services office, she was informed about the Title IX Office. Andries 65. This is the first time she had heard of "Title IX" and her ability to file a report through that process. Andries 66.

25. Andries googled Title IX at LSU, but could not find any information, so she submitted a general student accountability complaint. Andries 67.

26. When Andries got in touch with an LSU representative to discuss Title IX further, she requested a no-contact order, as she was scared to interact with Roe following his attempted physical assault of her significant other and his completed sexual assaults of her. Andries 72.

27. Following her initial interview with Title IX, Andries was discontented, as there was no information given about how the co-contact order would work or how long the investigation would take. Andries 76.

28. When Andries continued to experience anxiety over potential interactions with Roe in class, she followed up with Title IX and was told that a no contact order could not be issued because she was in the same class with John Roe. BOS-003164; Andries 77.

29. Title IX still did not inform her how long the investigation would take, nor how she was supposed to issue a peer-to-peer no contact order without contacting John Roe, her assailant. Andries 77, 81.

30. Title IX did not contact Andries again until the investigation was complete in May 2019. Andries 85.

31. In May 2019, the investigation was complete, and Roe had been found responsible for sexual misconduct in violation of Title IX. Andries 86.

32. Andries discovered through conversations with friends that John Roe had also been found responsible for sexual misconduct in a similar case reported by Student B. Andries 88.

33. John Roe appealed the finding of responsibility, despite missing the deadline, and the Title IX Office did not notify Andries. Andries 88.

34. John Roe was also given an extension as a result of Jennie Stewart's vacation scheduling. Andries 92. Andries was never notified as to whether Roe's appeal was successful, but in August 2019 she was contacted by Jonathan Sanders in SAA for a meeting. Andries 96.

35. Andries's understanding of the meeting was to discuss the appropriate punishment during the SAA process, but instead Sanders re-read Andries's assault case back to her, triggering severe anxiety, then proceeded to ask Andries, "if I had smoked pot, done heroin, cocaine, things along that matter . . . I then responded with 'Do you also need to know what I was wearing?' And he said yes. I was wearing a Bernie Sanders costume." Andries 225.

36. Andries felt like she was on trial, despite a finding of responsibility having already been made for two separate sexual assaults by Roe. Andries 98.

37. "I don't think it's relevant what my costume was at a Halloween party, to ask, to give his professional opinion of why a punishment was inflicted don't think it was necessary to know if I was under the influence of weed, heroin, or cocaine, any sort of that matter because assault is still assault in the end." Andries 228.

38. Andries discovered that Student B had a substantially similar experience. Andries 99-100.

39. During her initial meeting with Title IX office, Andries also disclosed the name of another LSU student who had been sexually assaulted by John Roe. Andries 75:23. Through subsequent discussions with this student, Andries discovered that the student was never contacted by any office to discuss her experiences with John Roe. Andries 102.

40. The only punishment received by John Roe from the SAA process was a deferred suspension, which allowed Andries to continue to run into him at campus events, such as football games. Andries103.

41. Andries was advised not to appeal the punishment because if she did so then they would need to re-determine everything, including whether he was responsible. Andries 105-107.

42. Andries was also continuing to struggle with her academics at this time because she missed several classes as a result of this process. Andries 106.

43. In Fall of 2019, Andries asked whether Roe could be forced out of the class because he was found to have committed two sexual assaults, but Tracy Blanchard told her that was not possible because Andries and Roe had the same rights, even though he was already found responsible for two sexual assaults. Andries 126.

44. Ashley Gray and Tracy Blanchard were absolutely shocked that Andries thought she would be able to have private study as a result of her sexual assault and having the same major field of study as her assailant. Andries 130. "The exact quote was 'Hmm, I've never thought of that.'" Andries 144:17. They told her such a thing would be impossible because of the group project aspect of the curriculum. Andries 131.

45. "As he was convicted of assaulting two women on campus and I had not been convicted of anything at that moment in time, I do believe that is a bit unjust." Andries 235.

46. Andries worked with Tracy Blanchard and Ashley Gray to rearrange her schedule to avoid being in the same classes as Roe, and Andries missed two weeks of class during this process. Andries 118.

47. Andries completed several group projects by herself. Andries 131.

48. Because Roe was in 4 out of 5 of her classes, she had to fight to stay in those classes and take them online to avoid campus as much as possible. Andries 117, 119. Having to shift her entire schedule around Roe caused her to take all of these classes on her own with a completely different set of students that Andries hadn't studied with before. Andries 122. Further, having missed the first two weeks of class with the rescheduling, Andries had to beg her teachers for extensions on certain assignments and worked around the clock until the very last week of class to make up the work from those first two weeks. Andries 124.

49. "I had a difficult time with some of my professors as well as the Title IX things and feeling unsafe on campus just from the assault in general because I had withdrawn from activities and failed out and things like that." Andries 128.

50. Following the UHP, in which three witnesses attested that they had been sexual assaulted by John Roe, he was suspended for a year, until May 2020. Andries 112.

51. Following his suspension, Andries still saw Roe at a football game in October 2019, and left the game in a panic. Andries 83.

52. Following that encounter, Andries avoided LSU's campus as much as possible. Andries 117.

53. Andries also had to quick a job at a certain coffee shop because Roe started to frequent that shop. Andries 159.

54. Andries had to stop attending her sorority because of the academic probation, loss of scholarship, and her sorority continued to all John Roe to enter the house. Andries 160.

55. Andries was formerly treasurer for the Formula One Society of Automated Engineers on LSU's campus, but she was asked to resign because she was unable to remain focused and avoid dissociating to get her job done. Andries 160.

56. Andries ultimately moved to France to be as far away from John Roe and LSU as possible. Andries 148:17, 165.

57. As Andries learned when reading the Husch Blackwell report, multiple findings of sexual misconduct should result in an automatic suspension at a minimum. Andries 103, 204. Andries also discovered that one of her professors had filed a student-in-distress complaint requesting that the school offer Andries more substantial assistance. Andries 133-34. LSU did nothing with that report. Andries 203.

58. LSU had no policy in place for private student or modifications to group work requirements. Andries 130-32, 144.

59. A no contact order was issued against Andries as a victim. Andries 223.

Respectfully Submitted

/s/ Catherine E. Lasky

Karen Truszkowski
*Pro Hac Vice*
Temperance Legal Group
503 Mall Court #131
Lansing, Michigan 48912
P: (844) 534-2560
F: (800) 531-6527
karen@temperancelegalgroup.com

Catherine E. Lasky (La. Bar 28652)
Endya L. Hash (La. Bar 38260)
Katie Lasky Law
619 Homedale Street
New Orleans, Louisiana 70124
P: (504) 584-7336
F: (504) 375-2221
katie@katielaskylaw.com
endya@katielaskylaw.com

Elizabeth K. Abdnour
*Pro Hac Vice*
Abdnour Weiker LLP
500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
(517) 994-1776
(614) 417-5081
liz@education-rights.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing pleading has been served on all

parties via counsel of record by electronic mail this 31st day of July 2023.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour
