**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ABBY OWENS, et al.** | **Case No.: 21-242** |
| *Plaintiffs* | |
| | **Division WBV-SDJ** |
| **v.** | |
| | **JUDGE WENDY B. VITTER** |
| **BOARD OF SUPERVISORS OF** | |
| **LOUISIANA STATE UNIVERSITY** | **MAGISTRATE JUDGE JOHNSON** |
| **AND AGRICULTURAL AND** | |
| **MECHANICAL COLLEGE** | |
| *Defendant* | |

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT NO. 8: SARAH BETH KITCH

Plaintiffs, through undersigned counsel, respectfully submit this Opposition to Defendant's Motion for Summary Judgment No. 8: Sarah Beth Kitch ("Motion") (ECF No. 476) filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"). Several genuine issues of material fact exist for jury determination as to whether Plaintiff Sarah Beth Kitch ("Plaintiff") has sufficient evidence to prove suffering a deprivation of educational opportunity and/or benefits as a result of the Board's unofficial policy of ignoring sexual misconduct at Louisiana State University ("LSU"). Further, genuine issues of material fact exist for jury determination as to whether Plaintiff has filed suit timely. Thus, Defendant's Motion should be denied.

I.      **STANDARD OF REVIEW**

*See* Opposition No. 1, Sec. I, incorporated herein by reference.

II.     **RELEVANT FACTS**

**A.  The Board's mismanagement of sexual misconduct at LSU.**

*See* Opposition No. 4, Sec. II.A., incorporated herein by reference.

1

### B.  Plaintiff's experiences at LSU

Plaintiff first enrolled at LSU in 2006 or 2007 as a dual enrollment student to take two courses.[1] In 2009, Plaintiff then enrolled in the Master of Political Theory program.[2] Plaintiff graduated from the master's program in May 2013 and continued in the doctoral program at LSU.[3,4] Plaintiff was to be Professor John Moe's assistant during her fellowship.[5]

In 2012, Moe informed Plaintiff that she would be driving him to and from class, twice a week on Tuesdays and Thursdays.[6] They were alone on these trips.[7] Moe did and said things that made Kitch uncomfortable, such as sexist and inappropriate comments.[8] For example, in fall 2012, Moe made a comment that he was like Heidegger and Plaintiff was like Arendt. As background, Martin Heidegger was a philosopher and Hannah Arendt was a student of Heidegger's and it was well-known that they had an affair, which was unwelcome to Plaintiff.[9]  Sometime in fall 2012 to fall 2013, Plaintiff witnessed Moe make a comment regarding a secretary's dress in a way that was not professional.[10] In fall 2012, Plaintiff purchased a pair of heels, dress slacks, and a dress blouse, which Moe "commented approvingly" on.[11]

Sometime in the Fall 2012 to Spring 2013, Plaintiff received a call from Moe's daughters concerned because they had not heard from him and asked if she would go by his house and check

---

[1] Kitch Dep. 22.
[2] Kitch Dep. 22-23.
[3] Kitch Dep. 24.
[4] Kitch Dep. 24-25.
[5] Kitch Dep. 33. John Moe is a pseudonym.
[6] Kitch Dep. 36-37.
[7] Kitch Dep. 37.
[8] Kitch Dep. 38.
[9] Kitch Dep. 41.
[10] Kitch Dep. 40.
[11] Kitch Dep. 40; Declaration of Sarah Beth Kitch.

on him.[12] When she arrived, she ⬛⬛⬛ was sitting on the couch with bottles on the couch next to

him. Moe stook up and "unsteadily" walked to the kitchen and Kitch followed him.[13] As they were

standing in the kitchen talking, Moe instructed Plaintiff to kiss him.[14] Plaintiff said no.[15] Moe then

leaned forward and kissed Plaintiff on the mouth.[16] Plaintiff was "repulsed and nauseated."[17]

Plaintiff finished her dissertation in Fall 2014.[18]

### III.   LAW AND ARGUMENT

*See* Opposition No. 1, Sec. III, incorporated herein by reference.

#### A. A genuine issue of material fact exists as to whether Plaintiff's claims were timely filed.

*See* Opposition No. 1, Sec. III.B., incorporated herein by reference.

Prior to this lawsuit, Kitch had not yet heard of any of the other Plaintiffs and first learned

of the lawsuit in a news article after its filing.[19]  Plaintiff's previous only contact  with the Title IX

Office was in Fall 2019.[20] The woman she spoke to asked Plaintiff why she had called then and

had not reported earlier. Plaintiff stated that she thought it would jeopardize her status as a graduate

student. The woman said, "[I]t's good that you didn't report then, no one would have done anything

and it would have only caused you trouble."[21] Plaintiff believes she spoke to two different people.[22]

She does not believe she told the story to Jennie Stewart but it might have been Chevon Gates.[23]

---

[12] Kitch Dep. 50.
[13] Kitch Dep. 51-52.
[14] Kitch Dep. 52.
[15] Kitch Dep. 52.
[16] Kitch Dep. 52.
[17] Kitch Dep. 52.
[18] Kitch Dep. 89.
[19] Kitch Dep. 19.
[20] Kitch Dep. 121.
[21] Kitch Dep. 123:7-124:18.
[22] Kitch Dep. 125.
[23] Kitch Dep. 126.

These two conversations were her only conversations with the Title IX office  and neither of those conversations did or could have alerted Plaintiff of the systemic failures at LSU's Title IX office.[24]

For these reasons, there is a disputed material fact as to whether Plaintiff did not become aware of her heightened risk claim against the Board until April or May of 2021;[25] thus, Board's motion that Plaintiff's claims are prescribed should be denied.

**B.  Policy-based Heightened Risk Claim**

*See* Opposition No. 1, Sec. III.D, incorporated herein by reference.

> ***1.  A genuine issue of material fact exists as to whether the Board maintained a policy of deliberate indifference to reports of sexual misconduct.***

*See* Opposition No. 1, Sec. III.D.2., incorporated herein by reference.

While Plaintiff was a student at LSU, she did not report Moe's behavior. Because Moe is very well-known and she was a third or fourth-year grad student, Plaintiff believed that reporting him would put her career at risk.[26] Plaintiff eventually made a report to the Title IX office in Fall 2019.[27] Plaintiff decided to report at that time because she knew people that were going to LSU and she felt she had nothing to lose at that point.[28] When Plaintiff called the Title IX office to make a report in 2019, a Title IX staffer told her it was a good thing she hadn't reported previously because it would have only caused her trouble.[29]

> ***2.  A genuine issue of material fact exists as to whether the Board's policy of deliberate indifference created a heightened risk of sexual harassment that was known or obvious.***

*See* Opposition No. 1, Sec. III.D.3., incorporated herein by reference.

---

[24] Kitch Dep. 126.
[25] Declaration of Sarah Beth Kitch.
[26] Kitch Dep. 46-47.
[27] Kitch Dep. 121-123.
[28] Kitch Dep. 122.
[29] Kitch Dep. 123.

**3. A genuine issue of material fact exists as to whether, as a result, Plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived her of access to the educational opportunities or benefits provided by LSU.**

*See* Opposition No. 6, Sec. III.B.3., incorporated herein by reference.

A university is liable for damages under Title IX if it "subjects" a student, or makes a student "vulnerable to," harassment that is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit."[30] The harassment suffered by Kitch meets this standard or at the very least creates a genuine issue of material fact such that this question must be decided by the fact finder and not on summary judgment. If someone talks about Moe or does an impression of him, it triggers a physiological response in Plaintiff.[31] When Moe made a comment about Plaintiff's shoes, it evoked in her she felt exposed and self-conscious.[32] After Moe forced a kiss on Plaintiff, she felt "disgusted and betrayed."[33] She felt like her "whole work was on the line" and that "the whole world had come apart and shifted."[34] In fall 2015, Plaintiff began showing symptoms of post-traumatic stress disorder.[35] Plaintiff was evaluated by her therapist sometime in the summer or fall of 2021.[36] Plaintiff has been in counseling since 2015, during which she is working through the effects of Moe's abuse and LSU's response to her report.[37]

After the kiss, Plaintiff did not trust Sandos and she became concerned that he was not evaluating her intellectual work appropriately.[38] In order to avoid working closely with Moe on

---

[30] *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).
[31] Kitch Dep. 61.
[32] Kitch Dep. 41.
[33] Kitch Dep. 52:24.
[34] Kitch Dep. 52:25-53:3.
[35] Kitch Dep. 127; Declaration of Sarah Beth Kitch.
[36] Kitch Dep. 127-128.
[37] Kitch Dep. 62.
[38] Kitch Dep. 65.

choosing a dissertation topic, she chose a topic that would be tolerable to her and of interest to him rather than pursuing her true interests.[39] Plaintiff also began going to a different professor, Cecil Eubanks, for feedback, rather than Moe.[40] Plaintiff was hired at the University of Missouri in August 2018 for a full-time "much less a tenure track position" as an assistant professor.[41] When it came time to turn her dissertation into a book, which was necessary for her to earn tenure, she could not complete it because she experienced stress and anxiety over Moe's abuse.[42] Ultimately, Plaintiff was forced to leave the University of Missouri because she was unable to complete the dissertation and therefore could not earn tenure.[43] As an academic, Plaintiff was always interested in obtaining a tenured professor position, which is very important for intellectual and professional progress.[44] Additionally, a tenured position would have allowed Plaintiff the ability to both work and parent.[45]

Plaintiff now works as a high school history teacher.[46] She lost maternity leave benefits that she had as an assistant professor and her salary is lower.[47] Plaintiff finds her current position humiliating because she "developed over 20 college courses… and I developed those classes so that I could spend time doing something I thought was valuable… And now I get a set of PowerPoints which are essentially copied out of a conventional textbook, and my job is to read off the information out of PowerPoints that were created by people who have less experience than I do."[48] She no longer has the time to research/write.[49]

---

[39] Kitch Dep. 67.
[40] Kitch Dep. 65-66.
[41] Kitch Dep. 106-107; Declaration of Sarah Beth Kitch.
[42] Kitch Dep. 92-93, 103.
[43] Kitch Dep. 132-133.
[44] Kitch Dep. 132, 164-165.
[45] Kitch Dep. 164-165,
[46] Kitch Dep. 134.
[47] Kitch Dep. 134, 157, 159.
[48] Kitch Dep. 166:11-25.
[49] Kitch Dep. 135.

Because the harassment sustained by Plaintiff was objectively offensive and pervasive and deprived her of the educational benefits of writing the dissertation on the topic of her choice which impacted her career opportunities, the Board's motion for summary judgment on Plaintiff's claim should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment No. 8, as it relates to Sarah Beth Kitch.

Respectfully Submitted,

/s/ Catherine E. Lasky

Karen Truszkowski
*Pro Hac Vice*
Temperance Legal Group
503 Mall Court #131
Lansing, Michigan 48912
P: (844) 534-2560
F: (800) 531-6527
karen@temperancelegalgroup.com

Catherine E. Lasky (La. Bar 28652)
Endya L. Hash (La. Bar 38260)
Katie Lasky Law
619 Homedale Street
New Orleans, Louisiana 70124
P: (504) 584-7336
F: (504) 375-2221
katie@katielaskylaw.com
endya@katielaskylaw.com

Elizabeth K. Abdnour
*Pro Hac Vice*
Abdnour Weiker LLP
500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
(517) 994-1776
(614) 417-5081
liz@education-rights.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served on all

parties via counsel of record by electronic mail this 31st day of July 2023.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour
