UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, et al.**<br>*Plaintiff*<br><br>v.<br><br>**BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND COMMUNITY COLLEGE**<br>*Defendant* | Case No.: 21-242<br><br>Division WBV-SDJ<br><br>JUDGE WENDY B. VITTER<br><br>MAGISTRATE JUDGE JOHNSON |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT NO. 10: CORINN HOVIS**

Plaintiffs, through undersigned counsel, respectfully submit this Opposition to Defendant's Motion for Summary Judgment No. 10: Corinn Hovis ("Motion") (ECF No. 478) filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board"). Several genuine issues of material fact exist for jury determination as to whether Plaintiff Corinn Hovis ("Plaintiff") has sufficient evidence to prove suffering a deprivation of educational opportunity and/or benefits as a result of the Board's unofficial policy of ignoring sexual misconduct at Louisiana State University ("LSU"). Thus, the Board's Motion should be denied.

**I.   STANDARD OF REVIEW**

*See* Opposition No. 1, Standard of Review, p. 1-2, incorporated herein by reference.

**II.   RELEVANT FACTS**

   **A.   The Board's mismanagement of sexual misconduct at LSU**

*See* Opposition No. 4, Sec. II.A., incorporated herein by reference.

1

### B. Plaintiff's Experience at LSU

Plaintiff started at LSU in Fall of 2019 and lived in the Miller Hall dormitory and rushed Kappa Delta sorority.[1] In January 2020, Plaintiff was raped by a quarterback on the LSU football team, John Loe,[2] in his vehicle outside of one of the bars in the Tigerland neighborhood near LSU.[3] Back at her dormitory, Plaintiff's resident assistant (RA) called the LSU Police Department; police arrived and told Plaintiff they could not do anything because the rape did not occur on campus.[4] Neither LSUPD nor Plaintiff's RA made a report to the Title IX office.[5] Plaintiff's parents learned of the Title IX office and made a report on her behalf and Title IX Coordinator Jennie Stewart contacted Plaintiff.[6] The case was assigned to LSU's sole investigator for all nine of its campuses, Jeffrey Scott.[7] During the investigation, Scott inquired into what Plaintiff was wearing that night and asked her to send him a photo of her outfit.[8]

After a lengthy investigation that extended for six months beyond the timeline outlined in the Title IX policy, Loe was ultimately found responsible for sexually assaulting Plaintiff, but the discipline imposed upon Loe, a mere one-year suspension, was insufficient, given that Plaintiff was a freshman and was concerned that she would see him on campus while she was trying to complete her education at LSU.[9] During that entire seven-month period, Plaintiff was uncomfortable with being on campus with Loe, but nothing was done to help her.[10] After the Title IX office issued a no-contact order, Plaintiff received two separate messages from Loe's girlfriend,

---

[1] Hovis Dep. 14, 17-18.
[2] John Loe is a pseudonym.
[3] Hovis Dep. 31-44. *See* Sec. III.A.2. below, incorporated herein by reference, for a more thorough description of Tigerland.
[4] Hovis Dep. 52.
[5] Hovis Dep. 52, 163.
[6] Hovis Dep. 52, 64.
[7] Hovis Dep. 68, Scott Dep. 14.
[8] Hovis Dep. 81.
[9] Hovis Dep. 129, 166.
[10] Hovis Dep. 136.

as well as messages from an anonymous account that she believed belonged to Loe's girlfriend.[11] LSU did not initiate any discipline against Loe for these violations of the no-contact order and did not even update Plaintiff on whether they investigated her complaints.[12]

After the rape Plaintiff was diagnosed with post-traumatic stress disorder (PTSD) and attention deficit hyperactivity disorder (ADHD).[13] Despite being approved for accommodations by the Disability Services office as early as January 2021, it was not until at least five months later that Plaintiff was able to receive these accommodations.[14] Sometimes, Plaintiff's professors simply refused to implement her approved accommodations, such as when Plaintiff was unable to attend her sociology midterm due to her diagnoses and thereafter failed the midterm, and her professor refused to allow her to take it at an alternate time, despite "consideration for absences" being listed within her approved accommodations that semester.[15] Due to the lack of access to accommodations for her spring semester, Plaintiff even had to hire a private tutor as she was failing a class.[16] Plaintiff ultimately ended up failing this course anyway due to the lack of access to vital, approved accommodations during the spring semester of 2020.[17]

Following that semester, Plaintiff requested and finally received accommodations in the summer and fall semesters of 2020.[18] However, even when accommodations were provided to Plaintiff, they did little to help her access her education; for example, Plaintiff was a social work major, in which there were few to no exams given, rendering the accommodations of time and a half on exams and reduced test taking environment virtually useless.[19] Plaintiff's accommodation

---

[11] Hovis Dep. 108.
[12] Hovis Dep. 110-111, 132.
[13] Hovis 1 Dep. 44-45.
[14] Hovis Dep. 88-89.
[15] Hovis Dep. 95.
[16] Hovis Dep. 198.
[17] Hovis Dep. 92, 95.
[18] Hovis Dep. 96.
[19] Hovis Dep. 105-6.

of "consideration of absences" was additionally unhelpful, as there was no guarantee that the "consideration" would be granted by her professors.[20] Plaintiff's overall grade was based on projects and assignments, rather than exams, yet she received no accommodations that provided support for these critical assignments.[21]

When Plaintiff applied for disability accommodations again on January 20, 2021, she was still "experiencing increased stress and anxiety related to past traumatic incidents in addition to current retraumatization."[22] However, Disability Services refused to reinstate Plaintiff's accommodations because the Lighthouse Program—LSU's program designed to assist victims of sexual assault—had a six-month limitation on access to accommodations.[23] Plaintiff was unable to secure accommodations again until the summer semester of 2021, after having to secure an appointment with an LSU psychiatrist.[24] Because Plaintiff did not receive vital accommodations through Disability Services during the spring semester of 2020 when the Title IX investigation was ongoing, she spiraled into a "deep depression," in which it was difficult for her to take care of herself or even get out of bed.[25]

## III.  LAW AND ARGUMENT

*See* Opposition No. 1, Sec. III, incorporated herein by reference.

### A. Post-Assault Deliberate Indifference Claim.

To prevail on summary judgment for a claim of student-on-student post-assault harassment, a defendant school, as the moving party, must demonstrate that there is no genuine dispute as to any one of the following material facts: "(1) [The school] had actual knowledge of

---

[20] Hovis Dep. 106.
[21] Hovis Dep. 106.
[22] Hovis Dep. 99.
[23] Hovis Dep. 101-102.
[24] Hovis Dep. 102-103.
[25] Hovis Dep. 91.

the harassment, (2) the harasser was under the [school's] control, (3) the harassment was based on the victim's sex, (4) the harassment was so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit, and (5) the [school] was deliberately indifferent to the harassment."[26] The Board does not dispute that LSU had actual knowledge of both John Loe's rape of Plaintiff or the subsequent retaliatory contact, or that the harassment was based on the victim's sex. The Board does dispute that John Loe was under LSU's control, that the harassment was so severe, pervasive, and objectively offensive that it deprived Plaintiff's access to an educational opportunity or benefit, and that LSU was deliberately indifferent.

> 1. *Plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived her of access to the educational opportunities or benefits provided by LSU.*

*See* Opposition No. 6, Sec. III.B.3., incorporated herein by reference.

As a result of her rape and subsequent harassment, Plaintiff suffered several negative consequences on access to her education. In *Doe v. Board of Supervisors of the University of Louisiana System*, the defendant also tried to make an argument that certain forms of harassment were not sufficiently severe to incur liability under Title IX.[27] In Judge Jackson's words, "Unquestionably, rape is severe and objectively offensive sexual harassment sufficient to support an actionable Title IX claim, even in the absence of allegations that a plaintiff's academic track was thrown off course."[28] This Court has found that a "reasonable jury could conclude that further

---

[26] *I.F. v. Lewisville Indep. Sch. Dist.*, 689 F.3d 360, 369 (5th Cir. 2019) (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011)).
[27] *Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, No. CV 22-00338-BAJ-SDJ, 2023 WL 143171, at *10 (M.D. La. Jan. 10, 2023).
[28] *Id.* at *11 (citing *Kelly v. Yale Univ.*, No. 01-cv-1591, 2003 WL 1563424, at *3 (D. Conn. Mar. 26, 2003) (Hall, J.) ("There is no question that a rape ... constitutes severe and objectively offensive sexual harassment under the standard set forth in *Davis*"); *accord Soper v. Hoben*, 195 F.3d 845, 855 (6th Cir. 1999) (rape "obviously qualifies as severe, pervasive, and objectively offensive sexual harassment that could deprive [the victim] of access to the educational opportunities provided by her school"); *Doe through Doe v. Brighton Sch. Dist.* 27J, No. 19-cv-0950, –– – F.Supp.3d ––––, ––––, 2020 WL 886193, at *6 (D. Colo. Feb. 24, 2020) (Martinez, J.) ("[A] single, serious sexual assault can meet the severe, pervasive, and offensive standard." (citing authorities))).

*encounters, of any sort*, between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities provided by a university."[29] The plaintiff in *Doe v. Board of Supervisors of the University of Louisiana System*, as in the present case, changed her routines and avoided certain areas of campus to minimize chance encounters with her assailant, plainly depriving her of the full scope of opportunities provided by her university.[30]

The abuse profoundly interfered with Plaintiff's education and her educational opportunities. She was diagnosed with PTSD and ADHD following the sexual assault.[31] As outlined *supra*, she was also denied accommodations from LSU's Disability Services.[32] The one semester that Plaintiff did have accommodations, she still failed a class because her professor refused to honor the accommodation.[33] Because Plaintiff did not receive vital accommodations through during the spring semester of 2020 when the Title IX investigation was ongoing, Plaintiff spiraled into a "deep depression," in which it was difficult for her to take care of herself or even get out of bed.[34]

A reasonable juror could find that Plaintiff suffered from harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived her of access to the educational opportunities or benefits provided by LSU.

### 2. *Plaintiff's harasser was under LSU's control.*

*See* Opposition No. 2, Sec. III.A.2., incorporated herein by reference.

---

[29] *Bd. of Supervisors of Univ. of La. Sys.*, 2023 WL 143171, at *11 (citing Kelly, 2003 WL 1563424, at *3) (emphasis added).
[30] *Id.*; Hovis Dep. 88-89, 92, 95, 108, 110-111, 132, 136, 144-45, 198.
[31] Hovis Dep. 144-145.
[32] Hovis Dep. 91-92, 95, 99, 101-02, 106, 144-45.
[33] *Id.*
[34] Hovis Dep. 91, 19-24.

6

In the present case, the Board did investigate John Loe's conduct and sanction him for his initial sexual assault of Plaintiff. These facts alone allow a jury to determine that LSU exercised substantial control over John Loe's conduct. There is no dispute that the Board held authority to discipline John Loe because he was disciplined. This alone can allow a jury to determine that LSU exercised substantial control over John Loe in his interactions with fellow LSU students.

Additionally, the Board had regulatory authority over John Loe's participation in its Athletics program, the broader school environment, the conduct of student athletes, student athletes' living arrangements, the level of supervision required for student athletes, participation in its educational opportunities, disciplinary record keeping practices, LSU Police Department resources, LSU Title IX Office resources, and student enrollment. Within each of these contexts, the Board had the power to investigate and discipline John Loe's sexual abuse of Plaintiff. All this authority gives the Board the significant power to influence the risk of sexual harassment of its students within the environment, indicating control over the context.

Additionally, John Loe's harassment occurred in an area near campus that students experience as part of University life.[35] The Tenth Circuit has specifically found an actional Title IX claim based on rapes occurring in vehicles off-campus, as in Plaintiff's case.[36] Plaintiff and John Loe met and interacted in an environment that while technically "off-campus" because of their connections to LSU.[37] Plaintiff met John Loe at a cluster of bars near LSU's campus known as "Tigerland," where John Loe was introduced to Hovis as "one of the quarterbacks for LSU."[38] These bars are famous even to Baton Rouge locals who do not attend LSU, as demonstrated during Plaintiff's own deposition:

---

[35] Hovis Dep. 31-44.
[36] *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1097 (10th Cir. 2019).
[37] *See Doe v. Board of Supervisors of the University of Louisiana System*, 2023 WL 143171, at *9.
[38] Hovis Dep. 31.

7

Q. I didn't go to LSU. I've heard – you know, I've heard about Tigerland, but I want to get your take on it. . . . What is Tigerland?

A. Tigerland is a cluster of one, two – of five different college bars. It would be equivalent to like College Station in Texas or -- it's just a cluster of bars that all college students go to. It's five of them.

Q. These bars are located off campus?

A. Yes, but right next to campus, like in walking distance . . . every week in sorority we'd have exchanges with one of the fraternities, and they're usually -- they're held at one of these bars in Tigerland. So that was my first exposure, I guess, to Tigerland.

Q: During the fall of 2019, would you go to Tigerland on a regular basis?

A. Once a week -- once or twice a week, probably on Thursdays, for exchanges; and then maybe an extra day, like a Saturday, for game days or something like that.[39]

For these reasons, a reasonable jury could find that the Board had control over both Plaintiff's abuser and the context of her abuse.

### 3. *LSU was deliberately indifferent to the harassment, subjecting Plaintiff to additional harassment.*

*See* Opposition No. 2, Sec. III.A.4., incorporated herein by reference.

Title IX's deliberate indifference element is satisfied when the school's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."[40] When confronted with a report of rape, law and policy converge, and the school cannot "turn a blind eye to that harassment."[41] "[D]oing nothing is always the wrong response[.]"[42] The Board would have

---

[39] Hovis Dep. 19:12-20:19
[40] *Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, No. CV 22-00338-BAJ-SDJ, 2023 WL 143171, at *10 (M.D. La. Jan. 10, 2023) (quoting *Davis*, 526 U.S. at 648, 119 S.Ct. 1661).
[41] *Bd. of Supervisors of Univ. of Louisiana Sys.*, 2023 WL 143171, at *10 (quoting *Farmer*, 918 F.3d at 1104).
[42] Bd. of Supervisors of Univ. of Louisiana Sys., 2023 WL 143171, at *10 (quoting 2001 Guidance at Preamble p. iii). See Davis, 526 U.S. at 641, 119 S. Ct. 1661 (indicating that a school cannot "remain idle in the face of known student-on-student harassment"); e.g. Farmer, 918 F.3d at 1104 (deliberate indifference established where plaintiffs reported off-campus rapes and university failed to investigate or discipline the attackers); Williams v. Bd. Of Regents Univ. System of Georgia, 477 F.3d 1282, 1296 (11th Cir. 2007) (deliberate indifference established where plaintiff reported rape and university waited eight months "before conducting a disciplinary hearing to determine

8

this Court consider Plaintiff's rape to be the only sexual harassment or discrimination that Plaintiff faced, and that the Board appropriately responded by investigating and sanctioning John Loe. However, this limited lens does not accurately depict Plaintiff's experiences or the harms she suffered.

First, although the LSU police officer that responded to Plaintiff's report of rape was kind to her, the officer did not make a report to the Title IX office and told Plaintiff that "technically," he could not "do anything" to help other than refer her to the Baton Rouge police department.[43] Plaintiff's RA didn't "really know what to do" either."[44] Only due to the good fortune of Plaintiff's parents' friend telling them about Title IX and how to file a complaint did Plaintiff get connected with the right resources.[45] A university's Title IX program that relies upon a victim's luck in finding resources through third parties it is not a functioning and viable system.

Although John Loe was found responsible for violating LSU's Title IX Policy, a reasonable jury could find that LSU's other conduct in response to both Plaintiff's rape and her subsequently reported harassment subjected Plaintiff to additional sex discrimination, or at a minimum subjected Plaintiff to being vulnerable to further harassment.[45] LSU's counselors disregarded and minimized Plaintiff's trauma after her rape.[46] Following each of Loe's violations of the no-contact order, neither Title IX Coordinator Jennie Stewart nor Director of Student Advocacy & Accountability Jonathan Sanders initiated the appropriate investigation and disciplinary procedures or followed up with Plaintiff to keep her informed of her rights or the process they were following at that

---

whether to sanction the alleged assailants"); Doe 1, 240 F. Supp. 3d at 660-61 (deliberate indifference established where plaintiffs reported rapes and sexual assaults and the university "did nothing (or almost nothing) in response").
[43] Hovis Dep. 52:16-20.
[44] Hovis Dep. 163:18-24.
[45] *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).
[46] Hovis Dep. 165:2-9.

time.[47] They merely sent an email to John Loe.[48] A reasonable jury could find this to be a non-response that would rise to the level of deliberate indifference as well as an act subjecting Plaintiff to additional harassment by Loe.

Though Plaintiff was provided support services through the Lighthouse Program, the resources she received were inappropriate and insufficient to her needs. Although she was approved for accommodations as early as January 2020, it was not until at least five months later that she was able to receive these accommodations.[49] Even after receiving these accommodations, during a particularly rough depressive episode, Plaintiff was not able to leave her room and walk across campus to take a mid-term exam.[50] One of Plaintiff's professors was aware of Plaintiff's diagnosed disabilities as well as the lasting effects of her rape and even had a meeting with a Lighthouse staff member about her needs, but LSU allowed this professor to deny Plaintiff her accommodations and fail her in his class.[51] Plaintiff's failure of that class was a direct consequence of LSU's deliberate indifference to sexual misconduct.

Following that semester, Plaintiff was denied accommodations because LSU only allowed survivors of sexual assault access to accommodations for six months total.[52] Even though Plaintiff "absolutely" was still "experiencing increased stress and anxiety related to past traumatic incidents in addition to current retraumatization," her needs were not taken into account.[53] Plaintiff was unable to secure accommodations again until the summer semester of 2021, after having to secure an appointment with an LSU psychiatrist to receive an additional formal medical recommendation in support of the accommodations, which she was able to use to secure her requests for

---

[47] Hovis Dep. 108:3-16, 132 2-6.
[48] Hovis Dep. 111:9-11.
[49] Hovis Dep. 88:1-89:1.
[50] Hovis Dep. 94, 95:20-25.
[51] Hovis Dep. 92-95.
[52] Hovis Dep. 98-99, 101-02.
[53] Hovis, Dep. 98:1-2, 99:2-5, 19-21.

accommodations through her graduation.[54] A reasonable jury could find LSU's arbitrary denial of Plaintiff's proven needed accommodations rises to the level of deliberate indifference.

### A. Policy-Based, Post-Assault Heightened Risk Claim

*See* Opposition No. 1, Sec. III.D, incorporated herein by reference.

1. *A genuine issue of material fact exists as to whether the Board maintained a policy of deliberate indifference to reports of sexual misconduct.*

*See* Opposition No. 1, Sec. III.D.1., incorporated herein by reference.

2. *A genuine issue of material fact exists as to whether the Board's policy of deliberate indifference created a heightened risk of sexual harassment that was known or obvious.*

*See* Opposition No. 1, Sec. III.D.2., incorporated herein by reference.

3. *A genuine issue of material fact exists as to whether this occurred in a context subject to the Board's control.*

*See* Opposition No. 1, Sec. III.D.3. and Sec. III.A.3. above, incorporated herein by reference.

4. *A genuine issue of material fact exists as to whether, as a result, Plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived her of access to the educational opportunities or benefits provided by LSU.*

*See* Opposition No. 6, Sec. III.B.3. and Sec. III.A.1. above, incorporated herein by reference.

### **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment No. 10, as it relates to Corinn Hovis.

---

[54] Hovis Dep. 102:17-20, 103:10-16.

11

Respectfully Submitted

| | |
|---|---|
| | */s/ Catherine E. Lasky* |
| Karen Truszkowski | Catherine E. Lasky (La. Bar 28652) |
| *Pro Hac Vice* | Endya L. Hash (La. Bar 38260) |
| Temperance Legal Group | Katie Lasky Law |
| 503 Mall Court #131 | 619 Homedale Street |
| Lansing, Michigan 48912 | New Orleans, Louisiana 70124 |
| P: (844) 534-2560 | P: (504) 584-7336 |
| F: (800) 531-6527 | F: (504) 375-2221 |
| karen@temperancelegalgroup.com | katie@katielaskylaw.com |
| | endya@katielaskylaw.com |

Elizabeth K. Abdnour
*Pro Hac Vice*
Abdnour Weiker LLP
500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
(517) 994-1776
(614) 417-5081
liz@education-rights.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served on all parties via counsel of record by electronic mail this 31st day of July 2023.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour