UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBY OWENS, ET AL.** | **CIVIL ACTION NO. 3:21-CV-00242** |
| **VERSUS** | **JUDGE WENDY B. VITTER** |
| **LOUISIANA STATE UNIVERSITY, ET AL.** | **MAGISTRATE JUDGE BRENNAN** |

### REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 2: SAMANTHA BRENNAN

The Board submits this memorandum in support of its Motion for Summary Judgment. Plaintiff Samantha Brennan ("Brennan").[1] For the reasons set forth below and in the Board's original memorandum, Brennan's claims should be dismissed with prejudice.[2]

**I.     BRENNAN'S POST-ASSAULT ARGUMENTS SHOULD BE DISREGARDED AS IRRELEVANT.**

Brennan devotes a significant portion of her opposition to discussion of LSU's post-assault response to her complaint, which is irrelevant to her pre-assault heightened risk claim. Her "Relevant Facts" section is a misnomer because the facts therein are predominantly irrelevant, addressing her post-photograph meetings with Sharon Lewis, Miriam Segar, and the police, none of which relates to her **pre-**assault claim. (Brennan Opp. pp. 2-7)  Similarly, her post-assault statements such as "Numerous high level Athletics officials were aware that Doe had sexually exploited Plaintiff but did not take appropriate action" should be disregarded as irrelevant (and as hearsay). (*Id.* at. p. 8)  Likewise, her post-assault lawsuit to obtain public records has no bearing on her pre-assault claims. (*Id.* at p. 18)  These post-assault "facts" relate to Brennan's dismissed deliberate indifference claim only and should be disregarded.

---

[1] The Board adopts and incorporates by reference the arguments and evidence submitted in support of its motion, as well as the arguments and evidence referenced in the Board's other reply memoranda.
[2] The Board accepts Plaintiff's facts as true for purposes of its motion and memoranda only.

1

## II.  BRENNAN FAILS TO ESTABLISH CAUSATION TO SUPPORT HER HEIGHTENED RISK CLAIMS.

### a. No Causation to Support her Perpetrator-Based Heightened Risk Claim.

Brennan's perpetrator-based heightened risk claim is based on her claim that Segar failed to include Doe's name in the Maxient system after learning third-hand of Mize's possible assault. Brennan fails to causally connect this purported "failure" to Brennan's own situation. The evidence is undisputed that Segar shared Doe's name with Fuentes-Martin (in Title IX) after hearing of Mize's potential assault. (Segar Decl. ¶ 7)  Thus, Plaintiff cannot show that Fuentes-Martin would have done anything differently had Doe's name been entered in Maxient versus simply being known to Fuentes-Martin.  Indeed, Brennan seems to acknowledge as much because she states that the Mize/Maxient situation meant Doe was "not identified as a repeat offender when he raped Plaintiff Brennan five months later."  In other words, she argues that Doe should have been deemed a "repeat offender" **after** Brennan's incident (*i.e.*, post-assault). Notably, Brennan's representation that she was "raped" is false based on Brennan's own testimony that she was **not** raped. (Brennan 73)

Brennan offers no evidence of any accuser account, witnesses, or other information that would support imposing discipline on Doe **prior to** Brennan's alleged photograph.  Similarly, Brennan lacks evidence that any discipline to Doe following Mize's incident would have stopped Brennan from meeting him at an off-campus bar, from allowing him to come to her off-campus apartment, and from standing naked while he took her picture. (Brennan 18-21, 83-84)  Even if Brennan speculates that discipline administered to Doe would have resulted in his removal from campus, Brennan did not meet Doe on campus.  (Brennan 18-19)  Thus, she cannot causally connect this allegation to any harm that Brennan allegedly suffered.

Brennan's opposition also details alleged conduct by a different perpetrator, John Coe. (Brennan Opp. pp. 8-9) Brennan does not introduce any evidence that she ever met Coe, much less that Coe engaged in any conduct towards Brennan. Nor does her Complaint contain such allegations. Accordingly, her extensive discussions regarding Coe's conduct are irrelevant to Brennan's claims.

### b. No Causation to Support her Official Policy Arguments.

An official policy or custom must have caused the alleged assault.[3] On the policy-based heightened risk claim, Brennan simply adopts other Plaintiffs' opposition memoranda. Brennan does not introduce evidence or arguments specific to her own situation or any facts to establish causal connection between purported policy and what occurred to Brennan. Similar to Mize, Brennan's only statement on this topic is her summary conclusion (with no citation) that "Plaintiff's sexual exploitation was the sort of injury that would be the expected consequence of LSU's policy of deliberate indifference to sexual misconduct on campus, and for this reason alone, summary judgment on this point must be denied." (Brennan Opp. p. 19) Brennan's official policy claim fails for the reasons set forth in the Board's other memoranda (adopted herein) and for the reason that Brennan offered no material issues of fact specific to Brennan to establish the required elements of her claim.

### c. No Causation to Support her Timeliness Argument.

On the topic of timeliness, Brennan argues that accrual of her claims was delayed by two events: (1) her alleged discovery that her police report referenced "video voyeurism" and not "distribution of pornography"; and (2) she learned in the Husch Blackwell report that "Doe's sexual exploitation of her 'may have been different'" had the name of Mize's alleged assailant (Doe) been recorded in the Maxient system. (Brennan Opp. p. 20) Taking these in reverse

---

[3] *Karasek v. Regents of University of California*, 956 F.3d 1093, 1113 (9th Cir. 2020).

order, the absence of Doe's name in the Maxient system has no bearing on Brennan's claims for the reasons discussed in Section II.a above.  Indeed, the language Plaintiffs quote from the Husch Blackwell report merely pondered (without concluding) whether the inclusion of Doe's name in Maxient would have impacted disciplinary charges against Doe **should subsequent events occur**. (R. Doc. 1-1, p. 100) Either way, that inquiry relates to post-assault discipline, not evidence supporting Brennan's pre-assault heightened risk claim.

Regarding the LSU police labeling Brennan's complaint as "video voyeurism," Brennan's opposition is not supported by her own testimony.  Brennan claimed in her opposition that Brennan testified "LSUPD's failure to document Plaintiff's complaint in full prevented her from later pressing charges against Doe in 2020, as the statute of limitations for video voyeurism was shorter than for distribution of pornography." (Brennan Opp. p. 18)  But she has presented no evidence to support her speculation that she was "prevented [ ] from pressing charges." (Brennan Opp. p. 18)  In her deposition, Brennan testified that she called the district attorney's office in 2020 or 2021 (she was unable to provide a definitive date) about her interest in pursuing charges and guess that "maybe the statute of limitation would have been longer" for a different crime. (Brennan 209)  Importantly, there is no crime in Louisiana for "distribution of pornography" involving a person over eighteen.  Instead, the Board presumes that the crime Brennan intended to reference was La. R.S. 14:283.2. Contrary to Plaintiff's argument, this crime carries the same four-year statute of limitations as video voyeurism. *See* La. Code Crim. Proc. 572(A)(2). Thus, Brennan's time period for pressing charges was the same, irrespective of the crime cited in the LSU police report.  Her claims are untimely.

4

III. **BRENNAN FAILS TO COME FORWARD WITH SUMMARY JUDGMENT EVIDENCE ESTABLISHING THE OTHER ESSENTIAL ELEMENTS OF HER CLAIM.**

    a. **Brennan Fails to Meet Her Other Perpetrator-Based Heightened Risk Elements.**

Brennan offers no evidence to establish a material issue of fact relating to any of the elements of her perpetrator-based heightened risk claim. For the first element (actual knowledge of a substantial risk of sexual harassment), Brennan cites to no material factual issues relating to Brennan. Brennan does not dispute that LSU received no account from Mize of her alleged assault or that Doe was her perpetrator. (Mize 206) Thus, Brennan fails to show how LSU had "actual knowledge" of what occurred to Mize. (Mize 133-134; *See* Summary Judgment No. 1, Section I, III; Segar Decl. ¶ 7) As mentioned, Brennan also alleges "facts" relating to John Coe for this element, all of which are irrelevant to Brennan's situation.[4]

For the second element (whether Doe was under the Board's control in this context), Brennan devotes nearly seven pages of her brief to citations to authorities (usually from other circuits), but she alleges no disputed facts relating to Brennan. (Brennan Opp. pp. 9-16) Rather, Brennan equates a school's right to discipline students with "control" over any context. *Id.* This position directly conflicts with the Supreme Court's holding in *Davis*, requiring that a school must exercise control over both the harasser **and** the context in which the harassment occurs, but stating that disciplinary authority may amount to control over the *harasser* only.[5] She also concludes (without introducing evidence) that "[t]he Board had regulatory authority over the apartment, and its authority gave it the power to influence the risk of sexual harassment in that context." (Brennan Opp. p. 13) She introduces no evidence that LSU had authority over

---

[4] Brennan also concludes that whether Sharon Lewis (among others) was an "appropriate" recipient of Brennan's report is a disputed issue of fact. Again, this is a post-assault issue for Brennan and irrelevant to her claim.
[5] *Davis Next Friend Lashonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 645 (1999).

Brennan's off-campus apartment. Brennan states that the Board "had the power to decide where in that area students could live, under what level of supervision." *Id*. Brennan cites no authority for this statement, nor can she, given that nothing in the evidence suggests the university placed requirements on where Brennan lived. Brennan cites *Doe v. Bd of Supervisors of University of Louisiana System*, which stated that Title IX's protection extends to "all of the academic, educational, extracurricular, athletic, and other programs of the school, whether they take place in the facilities of the school, on a school, bus, at a class or training program sponsored by the school at another location, or elsewhere."[6] (Brennan Opp. p. 15) But Brennan cites to no such circumstances that apply to Brennan and Doe. Rather, she resorts to arguing simply that she met Doe in an off-campus bar because some friends from work at LSU introduced them in an off-campus bar. *Id*. This is not the sort of conduct that falls within the scope of Title IX. Whether she knew of Doe as an LSU football player does not convert her off-campus conduct with Doe into Title IX conduct.[7] Brennan introduced no evidence that her apartment was an LSU facility, that the off-campus bar was an LSU facility, or that LSU played any role in the events at the off-campus bar or at Brennan's off-campus apartment. She fails this element.

Brennan fails the next element (harassment that was so severe, pervasive, and objectively offensive that it barred educational opportunities). Again, Brennan makes unsubstantiated statements. She states, without citing to authority, that "the measure of the severity of sexual harassment to incur liability under Title IX is analyzed by the actual deprivation of education opportunities and benefits that Plaintiff suffered." (Brennan Opp. p. 16) Brennan then argues the

---

[6] *Doe v. Bd. of Supervisors of Univ. of La. Sys.*, 2023 WL 143171, *3 (M.D.La. Jan. 10, 2023).
[7] Plaintiff cites *Chen v. Albany Unified Sch. Dist.*, 56 F.4th 708 (9th Cir. 2022), which is wholly distinguishable. Not only is *Chen* an out-of-circuit case, but it is also not a Title IX case. Instead, *Chen* involved a First Amendment claim where the court was faced with determining whether a school had sufficient control over high school students' social media posts for free speech purposes. *Id*. at 721-722.

effects of Doe's alleged photograph on Brennan.[8]  Brennan does not challenge the Board's evidence and authorities showing the one-time occurrence of her photograph falls far short of severe, pervasive, or objectively offensive harassment to meet her burden.  The Board outlined in detail, and with citations to plaintiff's own testimony, why Plaintiff fails this element. (*See* Memorandum in Support of Summary Judgment No. 2, Section III.A.c) Plaintiff fails to come forward with evidence to survive summary judgment.

Brennan fails the next element (deliberate indifference to harassment by the Board).  On this element, Brennan again offers no evidence to create a material dispute regarding her pre-assault heightened risk claim. (Brennan Opp. pp.17-18)  Rather, she argues post-assault conduct that only relates to her dismissed deliberate indifference claim.  Specifically, she argues about allegedly having to file suit to obtain her police report, about Sharon Lewis initially (for a few minutes) being "harsh and distant," in **response** to Brennan's complaint, and her allegation that the police mistakenly wrote her report as being based on "video voyeurism" rather than "distribution of the nude photo."[9]  (*Id.* at p. 18)  This is post-assault information that has no bearing on her pre-assault claim.

Brennan offers no evidence to establish her high burden of showing deliberate indifference by LSU.  In handling Mize's situation before her, she came forward with no evidence to refute LSU's many efforts to encourage Mize to provide information about her alleged report.  The undisputed evidence shows that Segar communicated Doe's name to Fuentes-Martin. (Segar Decl. ¶ 7) Although Segar did not include his name in her write-up of the

---

[8] Any loss of educational opportunities and other effects allegedly experienced by Plaintiff **as a result** of Doe's purported conduct cannot serve as evidence to establish the requisite severe, pervasive and offensive harassment, as the pertinent threshold inquiry is not the **effect** the conduct had on the individual, but rather whether the "harassment" itself was severe, pervasive, and objectively offensive. *See Sanches v. Carrollton-Farms Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (harassment must be severe, pervasive and objectively offensive) (citing *Davis*, 526 U.S. at 650)).

[9] As shown above in Section II.c, this is a baseless complaint.

events, she did not conceal it from Title IX. (Segar 267) Brennan cites to no Title IX obligation **requiring** the presence of Doe's name in the internal, online submission. Even if including Doe's name in the reporting system would have been a better practice, Title IX liability is **not** premised on whether LSU violated best practices.[10] The Supreme Court "has never held 'that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements.'"[11]

### b. Brennan Fails to Meet Her Official Policy-Based Heightened Risk Elements.

As set forth in its original memorandum, the Board denies that an official policy claim is available, but even if so, Brennan's opposition merely adopts plaintiffs' other memoranda. (Brennan Opp. pp. 18-19) She does not raise a genuine material fact to refute that she fails to meet the four *Karasek* factors. For reasons set forth in Section II.b. above, Brennan fails to meet the *Karasek* factors, and summary judgment is warranted.

## IV. CONCLUSION

Summary judgment is warranted as a matter of law on Brennan's heightened risk claim.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:  /s/ *Susan W. Furr*
Shelton Dennis Blunt Bar Roll No. 21230
Susan W. Furr Bar Roll No. 19582
Karleen J. Green Bar Roll No. 25119
Jessica Coco Huffman LA Bar No. 30445
Molly McDiarmid Bar Roll No. 36426
Gregory T. Stevens Bar Roll No. 29436
Michael B. Victorian Bar Roll No. 36065
II City Plaza | 400 Convention Street, Suite

---

[10] *See Sanches v. Carrollton-Farms Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011).
[11] *Id.* at 169 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292, 118 S.Ct. 1989 (1998)).

        1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: jessica.huffman@phelps.com
Email: molly.mcdiarmid@phelps.com
Email: greg.stevens@phelps.com
Email: michael.victorian@phelps.com

ATTORNEYS FOR THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

**<u>CERTIFICATE OF SERVICE</u>**

    I do hereby certify that on August 22, 2023, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

                                                        */s/ Susan W. Furr*
                                                         Susan W. Furr