# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                    CIVIL ACTION NO.  3:21-CV-00242

VERSUS                               JUDGE WENDY B. VITTER

LOUISIANA STATE UNIVERSITY,          MAGISTRATE JUDGE JOHNSON
ET AL.

## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO.  4: ABBY OWENS

The Board submits this reply memorandum in support of Motion for Summary Judgment

No. 4: Abby Owens ("Owens").[1]  For the reasons below and in the Board's original memorandum,

Owens' claims should be dismissed with prejudice.

## I.     OWENS' ARGUMENTS OF POST-REPORTING ACTIVITY RELATE TO DISMISSED CLAIMS AND ARE IRRELEVANT.

This Court dismissed Owens' post-reporting deliberate indifference claim, leaving only a

heightened risk claim, a "before" violation focusing on conduct occurring pre-assault.

Nevertheless, Owens argues numerous points that relate to post-assault occurrences (post-assault

"deliberate indifference"), which are irrelevant to her pre-assault claim.  For example, Owens

advances several arguments regarding LSU's alleged response to Owens' alleged assault, such as:

(1) "LSU failed to initiate any Title IX investigation into [Doe's] assault of Owens"; (2) "LSU

failed to create a Title IX report documenting the rape"; (3) LSU did not follow up with Owens

after her report and did not offer supportive services after her assault; (4) LSU failed to address

multiple sexual assaults perpetrated by Doe (two of the alleged assaults occurred **after** Owens'

alleged assault and are irrelevant for heightened risk purposes); (5) "Despite multiple reports to

---

[1] The Board accepts Plaintiff's facts as true for purposes of its motion and memoranda only.  The Board adopts and incorporates by reference the arguments and evidence submitted in support of its motion, as well as the arguments and evidence referenced in the Board's other reply memoranda.

PD.42802729.1

LSU employees, no Title IX report was ever created documenting Plaintiff's assault."; (6) "No one from LSU ever followed up with Plaintiff or anyone at the treatment center where she first reported the assault to gather the necessary information to create a report;" and (7) "Plaintiffs have been provided no evidence that LSU investigated the rape or disciplined Doe." (Owens Opp. pp. 15-16, 21) Each of these post-reporting conduct arguments relate to Plaintiff's dismissed deliberate indifference claim and should be disregarded.

## II.     OWENS' MISREPRESENTATIONS OF THE RECORD SHOULD BE DISREGARDED.

The Board asks this Court to carefully compare Owens' statements in her opposition with the record evidence she cites, many of which are misrepresented. For example, Owens falsely states that the Board showed its "true position" that "survivors are to blame for their own sexual abuse" in questioning plaintiff Hovis at her deposition. (Owens Opp. p. 4) In support, Owens quotes deposition testimony by one of the dismissed individual defendants, **not** by the Board. (Hovis 151) Owens' misrepresentation is inflammatory and unsupported.

Owens stated that "Stewart repeatedly raised concerns about LSU's failure to comply with Act 172 to LSU General Counsel Tom Skinner and the LSUPD Chief, but she was consistently ignored." (Owens Opp. p. 5) However, Owens cites deposition testimony in which Stewart did not testify about Act 172, did not say that LSU "failed to comply" with the Act, and did not say she was ignored by the General Counsel. Stewart merely testified about one reporting issue (whether a waiver was needed), without any mention of Louisiana law. *Id.* Stewart also said the General Counsel responded by convening a group to discuss the issue. (Stewart 108-109)[2]

---

[2] Owens makes other false statements related to Stewart. For example, Owen cites to three pages from Stewart's text messages to support Owens' statement that "Stewart repeatedly expressed frustration at being ignored and undermined, at one point sharing concerns of potential sex discrimination by DeCuir." (Owens Opp. p. 7) The pages Owens cites contain no such subject matter (and one of the pages was not even included in Owens' exhibits).

Also misleadingly, Owens states that "despite all her efforts, Stewart received an "unsuccessful rating in her performance review—a review conducted by DeCuir himself; two Athletics directors, Verge Ausberry and Miriam Segar, who were suspended for their Title IX-related failures, did not receive unsuccessful ratings in their performance reviews." (Owens Opp. p. 7)  Plaintiff cites to 30(b)(6) testimony, but the cited pages show that, in response to specific questions about performance reviews for F. King Alexander and Joe Alleva, the witness stated that "I don't have all of the detailed comments that were written in these evaluations. . . And also I don't have it memorized.  So, the only one I know of that had unsuccessful was Jennie Stewart." (Board 30(b)(6) 158-160)  Plaintiff's counsel did not name Ausberry or Segar in her questioning.

Owens made misleading statements about training.  For example, Owens states that "After training was implemented, LSU paid no attention to the content of the trainings," but her cited evidence contains no such information.  (Owens Opp. 10)  In fact, when asked about 2013 and 2014 trainings, the deponent testified that the "employee relations group" prepared the content of the trainings. (Board 30(b)(6) 138)  Owens also falsely states that "many high level LSU athletics employees did not take the training: Alleva only took it one year; Ausberry did not take it at all from around 2016-2020; Segar missed at least one year; Sharon Lewis did not take it at all until 2020; tennis coach Julia Sell did not take it from 2016 to at least 2020; and tennis coach Mike Sell did not take it at all until 2020 or 2021."  (Owens Opp. p. 11) Plaintiff relies on questioning in the 30(b)(6) deposition regarding training documents in personnel files, despite the clear testimony and evidence by Segar that the Athletic Department maintained records of Title IX training attended by Athletic Department employees, and all of the listed individuals attended training annually (with only minor exceptions).  (Board 30(b)(6) 292-294; Segar Decl. ¶ 6, Exh. 4)

As a final example, Owens deviates from the record evidence by stating that "After plying Plaintiff with shot of liquor, and **with full knowledge that she was too intoxicated to consent**, Doe . . . ." (Owens Opp. 14) (emphasis added) Plaintiff testified that she has no idea whether Doe was also intoxicated and thus cannot say what knowledge he had. (Owens 107)

### III.    OWENS' SUMMARY JUDGMENT CONCESSIONS DEFEAT HER CLAIM.

In her memorandum, Owens does not cite to summary judgment evidence refuting the undisputed evidence introduced by the Board. Owens concedes the following facts and arguments:

- Plaintiff and Doe received Title IX training. (Owens 18, 217-218; Segar Decl. ¶ 5)

- Owens did not disclose her alleged assault until **after** she was gone from LSU. (Owens 86)

- Owens never experienced further conduct by Doe after their one night. (Owens 61-66).[3]

- Sell promptly reported the allegation to Segar, who promptly reported to Jennie Stewart, Title IX Coordinator. (Segar 92; Segar II 391-392; Stewart 215)

- At the time of Owens' alleged assault, June 2016, the only other plaintiff with a prior experience related to Doe was Mize. (Brennan's photo incident occurred in July 2016, and Richardson's incident occurred in December 2016). (R. Doc. 182, ¶¶ 182, 187, 290, 298)

- Owens did not characterize her intoxicated sex with Doe as rape until the following year. (Owens 73, 85, 166) She was "not blackout-drunk," was able to stand, walk, speak, text, and perform oral sex. (Owens 53, 58, 62-63, 67-68, 161) She does not know what she said to Doe before sex, but afterward, she told Doe "not to forget about her." (Owens 160-161)

---

[3] Like Mize, Owens cannot argue she was "vulnerable to" further harassment, when it never occurred again. *See* Board's Reply Memorandum in Support of Summary Judgment No. 1, Section III.

- Owens does not refute the timeline showing LSU's numerous efforts to provide Mize with resources and to encourage Mize to report her situation. (Segar Decl. ¶ 7, Exh. 5; Mize 105, 108, 118-120, 124, 184; Mize Exhs. 2, 3)

## IV.    OWENS FAILS TO COME FORWARD WITH SUMMARY JUDGMENT EVIDENCE ESTABLISHING CAUSATION.

### a.    No Causation to Support her Perpetrator-Based Heightened Risk Claim.

Owens' perpetrator-based heightened risk claim is based on her argument that Segar failed to include Doe's name in Maxient after learning third-hand of Mize's possible assault.  However, Owens is unable to causally connect this "failure" to Owens' situation.  The evidence is undisputed that Segar shared Doe's name with Fuentes-Martin, and Owens cannot show that Fuentes-Martin would have done anything differently had Doe's name been entered in Maxient. (Segar Decl. ¶ 7)

Owens offered no evidence of any information that would support imposing discipline on Doe prior to Owens' alleged assault.  Similarly, Owens lacks evidence that discipline to Doe following Mize's incident would have stopped Owens from meeting Doe at an off-campus bar, permitting entry to her off-campus apartment, engaging in oral sex, and engaging in intoxicated intercourse. (Owens 14-16, 42-46, 50-52, 54-62) Even if Owens speculates that discipline to Doe would have removed him from campus, Owens did not meet Doe on campus.  (Owens 43-44)

### b.    No Causation to Support her Official Policy Arguments.

An official policy or custom must have caused the alleged assault.[4]  Owens attempts to aggregate a smattering of purported shortcomings into an official policy of deliberate indifference. Owens makes numerous "gotcha" arguments to suggest that over a seven-year period, some of LSU's Title IX efforts fell short of best practices. This argument fails from for several reasons: (1) "deliberate indifference" is not based on a failure to meet best practices, erroneous action, or

---

[4] *Karasek v. Regents of University of California*, 956 F.3d 1093, 1113 (9th Cir. 2020).

PD.42802729.1

failure to follow a school's own procedures;[5] (2) an official policy is not based on isolated "errors" by separate individuals that do not reflect institutional intent;[6] and (3) Owens fails to show how purported "failures" made a difference to her from a pre-assault heightened risk perspective.[7]

One "policy" that Owens argues is that LSU ignored Act 172 on sexual misconduct reporting. (Owens Opp. p. 4) Plaintiff has not asserted a violation of Act 172, nor can she do so now in opposition to summary judgment.[8] Moreover, a memorandum of understanding between LSU/LSUPD to communicate sexual misconduct information on campus is irrelevant to Owens' claims when, as a student, Owens never sought police or Title IX assistance. Thus, she cannot causally link harm she experienced to a memorandum between the police and Title IX.

Likewise, Owens argues that LSU did not adequately fund its Title IX program, leading to understaffing and/or too many roles for Stewart to fill. (Owens Opp. pp. 5-6) However, Owens introduced no evidence, much less "concrete evidence," showing that a different level of staffing would have affected Owens' outcome.[9] Owens also faults LSU for allowing student athletes and personnel to first report Title IX concerns to Segar. (Owens Opp. p. 7)[10] Again, Owens offers no evidence that she was impacted by such procedure. Before Owens' alleged assault, the only person LSU heard of possibly being assaulted by Doe was Mize. In that situation, Segar immediately informed the Title IX office upon hearing Student A's account of Mize's alleged assault.[11]

---

[5] *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011); *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (internal citations omitted).

[6] *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998) (funding recipient liable only "for its own official decision," not "its employees' independent actions").

[7] *Karasek*, 956 F.3d at 1113 (requiring a causal link between the official policy and the alleged harassment).

[8] *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim . . . raised only in response to a motion for summary judgment is not properly before the court.").

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986) (requiring a plaintiff to come forward with "concrete evidence" from which a reasonable jury could return a verdict in her favor).

[10] While Owens mentions training, Owens offers no argument, much less evidence, to show these training materials are causally connected to Owens' alleged harm in any way. (Owens Opp. p. 7)

[11] Although LSU's response to Owens' assault is irrelevant post-reporting conduct, it is noteworthy that in Owens' case, Segar immediately reported Owens' father's disclosure to Stewart, further demonstrating the absurdity of this argument that Segar impeded the Title IX reporting process. (Segar 92; Stewart 215)

Owens also discusses alleged events in 2013-2016 relating to former head coach Les Miles, whom **none** of the plaintiffs accuse of sexual misconduct. (Owens Opp. p. 8) Plaintiff references an argument being advanced in the *Sharon Lewis* case regarding whether the Taylor Porter law firm "concealed" documents relating to a settlement between Miles and a former student. Missing from Plaintiff's opposition is any argument or evidence linking this purported situation to any official LSU policy, much less a policy that somehow impacted Owens. (Owens Opp. p. 8, n. 45)

Owens argues an official policy relating to Segar disclosing Doe's name in Mize's context, but this "failure" allegedly occurred **once** only, which single instance can hardly serve as an "official policy." Further, the fact that Doe's name was subsequently disclosed in Maxient for Brennan refutes any "policy" to conceal Doe's name. As mentioned, Owens failed to show how this purported policy **caused** any detriment to Owens.

Owens' other arguments on a purported "policy of deliberate indifference" are: (1) A.G. Monaco allegedly contacted Alleva to discuss PM-73, but Alleva asked Segar to meet with Monaco instead; and (2) Alleva allegedly consulted Taylor Porter rather than Stewart on an issue. (Owens Opp. p. 9)[12] These isolated events do not constitute an official policy of deliberate indifference, nor are they causally linked to Owens. Her arguments fail the causation element.

### c. No Causation to Support her Timeliness Argument.

On timeliness, Owens merely adopts Mize's arguments, without arguing Owens' own facts. The only Doe-related information mentioned in the Husch Blackwell Report that predated Owens' assault was the absence of Doe's name in Maxient for Mize, which has no bearing on Owens' claims for the reasons above. (*See* R. Doc. 1-1, p. 100) Further, the Husch Blackwell

---

[12] Owens' medical causation statements (citing only her own medical opinions) are improper and should be disregarded. For example, Plaintiff states: "As a result of the assault, Plaintiff's alcohol and substance addiction worsened." (Owens Opp. p. 14) Plaintiff has not been identified as an expert and cannot attest to medical causation.

Report merely questioned whether the inclusion of Doe's name in Maxient would have impacted disciplinary charges against Doe **should subsequent events occur**.  *Id*. Owens' claims are untimely.

## V.    OWENS FAILS TO COME FORWARD WITH SUMMARY JUDGMENT EVIDENCE ESTABLISHING THE ESSENTIAL ELEMENTS OF HER CLAIM.

### a.    Owens Fails to Meet Her Policy-Based Heightened Risk Elements.

The Board denies that an official policy claim is available, but even if so, Owens fails to raise a genuine material fact as to any *Karasek* factor.  For the first element (actual knowledge), Owens cites to no material facts at issue relating to Owens. Owens does not dispute that LSU received no account from Mize of her alleged assault or that Doe was her perpetrator.  (Mize 206) Thus, Owens failed to show "actual knowledge" of Mize's event. (Mize 133-134; *see* Board's Memorandum in Support of Summary Judgment No. 1, Sections I, III; Segar Decl. ¶ 7, Exh. 5).

For the second element (control), Owens offers no material issues of fact.  Plaintiffs acknowledge that *Davis* forecloses vicarious liability under Title IX, but Plaintiffs essentially argue vicarious liability by equating disciplinary authority (similar to an employer's disciplinary authority) to "control." (Brennan Opp. Section III.a.2) This position directly conflicts with the Supreme Court's holding in *Davis*, requiring that a school must exercise control over both the harasser **and** the context in which the harassment occurs.[13]  Owens offered no evidence that LSU controlled the context or environment in which the harassment allegedly occurred.  All conduct between Doe and Owens occurred off campus and was unrelated to any LSU activities. (Owens 43-44)  Owens cites cases in which "the school brought the parties together," but Owens cites no evidence of LSU's involvement in her encounter with Doe.  (Owens Opp. p. 17) While she refers to the bar as a "popular LSU bar," she introduces no evidence, nor can she, that the bar was an

---

[13] *Davis*, 526 U.S. at 645 (emphasis added).

"LSU bar." *Id.* Instead, she cites *Chen v. Albany Unified School District*, 56 F.4th 708 (9th Cir. 2022), which is not a Title IX case and is non-binding.[14]

For the third element (the alleged harassment was so severe, pervasive, and objectively offensive that it barred Owens' access to an educational opportunity), Owens again misrepresents the record. She states that "LSU argues that because Plaintiff had trauma and mental health concerns prior to her experiences at LSU, LSU cannot be held responsible for harms caused to her," citing to page 3 of the Board's Motion. (Owens Opp. p. 18) At no point on page 3 does LSU argue that Plaintiff's prior addictions bar liability. Plaintiff also cites to a personal injury case regarding eggshell victims, which is irrelevant in this Title IX case. (*Id.* at p. 19) Owens attempts to meet the third element by arguing the damages allegedly impacted her educational opportunities.[15] Owens cannot show and did not argue severe, pervasive, and objectively offensive sexual misconduct as to her. (*See* Board Memorandum in Support of Summary Judgment No. 4, Section III.A.c.) Plaintiff failed to come forward with evidence to meet this element.

Lastly, as to the final element of showing a policy of deliberate indifference, Plaintiff merely cites to post-assault deliberate indifference arguments. She argues about the "adequacy" of LSU's responses to her situation and argues that after her father made his disclosure to Julia Sell, "the University failed to create a Title IX report documenting the rape." (Owens Opp. p. 20) She argues LSU never offered her "supportive services" or told her what her resources were. (*Id.* at 20-21) Plaintiff sums up this itemization of post-reporting conduct by stating: "A reasonable juror could find that the University's failure to properly respond to Plaintiff . . . amounted to

---

[14] Instead, *Chen* involved a First Amendment claim where the court was faced with determining whether a school had sufficient control over high school students' social media posts for free speech purposes. *Id.* at 721-22.

[15] Any loss of educational opportunities allegedly experienced by Owens **as a result** of Doe's purported conduct cannot serve as evidence to establish the requisite severe, pervasive and offensive harassment, as the pertinent threshold inquiry is not the **effect** the conduct had, but rather whether the "harassment" itself was severe, pervasive, and objectively offensive. *See Sanches v. Carrollton-Farms Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (**harassment** must be severe, pervasive and objectively offensive) (citing Davis, 526 U.S. at 650)).

deliberate indifference . . . ." (*Id.* at p. 21)  Thus, in her words, this section (consisting of post-reporting accusations), relates to her dismissed deliberate indifference claim.

Rather than meeting her burden, Owens resorts to summary statements that lack evidence, such as "every system upon which they should have been able to rely to protect them from sexual misconduct, . . . was rigged against them because of LSU's years-long pattern of conduct aimed at covering up and ignoring sexual misconduct at LSU" and "'LSU failed to meet industry standards and practice in connection with Title IX compliance and its own PM-73 policy as to each of the Plaintiffs." (Owens Opp. p. 13)  Plaintiff identified no "industry standards," much less introduced evidence as to how such unidentified standards had any effect upon the Plaintiffs.

    **b.**  **Owens Fails to Meet Her Perpetrator-Based Heightened Risk Elements.**

For the reasons above, Owens fails to establish all required elements.  Owens offers no evidence that LSU's conduct meets the high bar of deliberate indifference or to refute LSU's many efforts related to Mize.  Owens cites no Title IX obligation **requiring** the presence of Doe's name in the internal submission.  Even if including Doe's name in the reporting system would have been a better practice, Title IX liability is **not** premised on whether LSU violated best practices.[16]  The Supreme Court "has never held 'that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements.'"[17]

## VI.    CONCLUSION

Summary judgment is warranted as a matter of law on Owens's heightened risk claim.

                  Respectfully submitted,

                  **JEFF LANDRY**
                  **ATTORNEY GENERAL**

---

[16] *See Sanches*, 647 F.3d at 170.
[17] *Id*. at 169 (quoting *Gebser*, 524 U.S. at 292)

BY:    /s/ *Susan W. Furr*

Susan W. Furr Bar Roll No.  19582
Karleen J. Green Bar Roll No.  25119
Shelton Dennis Blunt Bar Roll No.
21230
Michael B. Victorian Bar Roll No.
36065
Molly C. McDiarmid Bar Roll No.
36426
Jessica Coco Huffman Bar Roll No.
30445
Gregory T. Stevens Bar Roll No. 29436
*Special Assistant Attorneys General*
II City Plaza | 400 Convention Street,
Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: susie.furr@phelps.com
Email: karleen.green@phelps.com
Email: michael.victorian@phelps.com
Email: molly.mcdiarmid@phelps.com
Email: jessica.huffman@phelps.com
Email: greg.stevens@phelps.com

ATTORNEYS FOR THE BOARD OF
SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on

August 22, 2023, with the Court's CM/ECF system.  Undersigned counsel will electronically send

an electronic copy of the same to plaintiffs' counsel.

/s/  *Susan W. Furr*_____
Susan W. Furr

PD.42802729.1