SEUNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ABBY OWENS, ET AL. | CIVIL ACTION NO. 3:21-CV-00242 |
| VERSUS | JUDGE WENDY B. VITTER |
| LOUISIANA STATE UNIVERSITY, ET AL. | MAGISTRATE JUDGE JOHNSON |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 5: JADE LEWIS**

The Board submits this reply memorandum in support of its Motion for Summary Judgment No. 5: Jade Lewis ("Lewis").[1] For the reasons set forth below and in the Board's original memorandum, Lewis' claims should be dismissed with prejudice.

**I.   LEWIS' OPPOSITION EXCEEDS THE MAXIMUM PAGE LIMIT.**

Lewis' opposition memorandum exceeds the maximum page limit under Local Rule 7.7 and should be stricken.

**II.   LEWIS' HEARSAY AND OPINION STATEMENTS ARE INADMISSIBLE.**

Lewis' opposition is comprised of 16 pages of "Relevant Facts," which, in most cases, are neither relevant nor facts. Her opposition is comprised, in large measure, of inadmissible statements of opinion and hearsay, which should be disregarded. Lewis opines on others' intentions (citing Lewis' testimony) as though her opinion on their intentions is admissible evidence. For example, Lewis states the following:

- "He [Coe] could do whatever he wanted to at school . . . Because he was the star player, . . . " (Lewis Opp. p. 2)  "And the vibe on the campus was like the one that I was the criminal." (*Id.* at 12)

---

[1] The Board accepts Plaintiff's facts as true for purposes of its motion and memoranda only. Additionally, the Board adopts and incorporates by reference the arguments and evidence submitted in support of its motion, as well as the arguments and evidence referenced in the Board's other reply memoranda.

1

- "After the incident, Miriam Segar reached out to Plaintiff saying, 'I heard the police went to your apartment, are you ok?,' indicating that LSUPD had reported the incident to Segar rather than the Title IX office, . . . ." (*Id.* at p. 10)  This is simply Lewis' supposition about what the LSUPD did.

- "Segar acted like there was no history of violence unless Lewis pressed charges." (*Id.* at p. 13)  Lewis' opposition also states that Lewis "felt that LSU officials wanted to keep the report internal and not go to the police and that reporting to the police was not a serious option." (*Id.* at p. 6)  Notably, Lewis admits Segar encouraged Lewis to file a police report to create a history if something happened again.  (Lewis 296)

- "After Coe's weight room suspension, all his teammates worked to isolate him to protect his football career." (Lewis Opp. p. 12) She cites to her testimony where she simply "guessed" that everyone was blaming her.  (*Id.* at p. 12, n.101; Lewis 306)

In her opposition, Lewis cites to inadmissible hearsay information.  In many instances, Lewis cites her own testimony as authority for the hearsay statements, including the following:

- "Almost immediately after this attack, Coe texted one of Plaintiff's teammates and told her about his attack on Plaintiff. Plaintiff believes this teammate confirmed to White that Coe had hit Plaintiff." (Lewis Opp. p. 3, Lewis 156)

- "In summer 2017, Plaintiff's father reported the assault to LSU when he called Plaintiff's tennis co-coach Mike Sell twice to share his concerns about his daughter's relationship with Coe.  During the second phone call, Plaintiff's father told Mike Sell that Coe had punched Plaintiff in the stomach.  Tennis co-coach Julia Sell's response was. . . ." (Lewis Opp. p. 4)  Plaintiff introduced no first-hand account of her father or the Sells about this hearsay conversation.  Instead, she cites Donovan White's

2

deposition, containing none of the information, and to the Husch Blackwell report, which relied on hearsay. *Id.*

- "Coe's roommate told Plaintiff that football coaches and players were saying it was her fault Coe was suspended from the weight room. . . " (*Id*. at p. 12)

- "Mike and Julia [Sell] told...the team to, like, stay away from me, like, the day after...it all came out... [I] couldn't talk to anyone in tennis anymore....like I was some criminal that put some six-foot-four 200-pound person in jail. I mean, that was just - -that was what LSU was giving off, that I was...the one at fault." (*Id*. at pp. 12-13) Lewis cites her testimony that she heard this from one of the girls on the team. (Lewis 399)

- "Coe's plan, as he told Plaintiff and Plaintiff told Segar, was to have Plaintiff committed so that he could say that Plaintiff was mentally ill and was making it all up." (Lewis Opp. p. 13)

- Numerous hearsay statements about information from Coe's mother, (*Id*. at pp. 8, 11, 15) as well as statements allegedly made by Jim Bernhard. (*Id.* at pp. 13-14)

- "The coaching staff knew Coe had an issue with women." (*Id.* at p. 15) In support, Lewis cites to another person's assumption. (*Id.*)

- "Joseph was aware of the violence, but believed Bernhard's narrative that Plaintiff wanted to ruin Coe's career." (*Id*. at p. 15) In support, Lewis cites to another person's assumption of what Joseph believed and what Bernhard said.

- "Despite statements from Plaintiff's roommate and others about Coe's history of abuse, the police never asked Plaintiff if Coe had hit her that night." (*Id.* at p. 8) Lewis cites her own testimony. (*Id.* at p.8, n.70)

3

### III. LEWIS' MISREPRESENTATIONS SHOULD BE DISREGARDED.

Lewis embellishes "facts" that are either contradicted by her own testimony or are unsupported by record evidence. For example, Lewis stated in her opposition that:

- "When LSUPD finally spoke with [Joseph], Joseph said he has to be careful when talking about 'high profile players.'" (*Id.* at p. 15) Instead, the cited "evidence" states that Joseph warned players that they have to adhere to "strict rules," such as not going to bars or Tigerland because they are high profile players. (*Id.* at p. 15, n.45)

- "Plaintiff met John Coe in January 2017 on the first day of school . . ." (*Id.* at p. 2) She testified that she met him at a bar, not school. (Lewis 11-15; R. Doc. 182, ¶ 456)

- Lewis' opposition statements distort the timeline of events. For example, when discussing her alleged contact with White in connection with the April 2017 incident, she states that "[d]espite the physical signs of injury lasting for days after the punch, White thought it was "playful" and did not report the assault to Title IX." (Lewis Opp. p. 3) In support of this misrepresentation, she cites to White's testimony from a year later, in connection with her April 2018 injury. (White 41, 53) Also, Lewis' testimony regarding this April 2017 event was that she had no bruising, no redness, and no marks on the injured area. (Lewis 165-166). The statement in her opposition is false.

- ". . . Coe was a student athlete at LSU and was permitted to remain on the football team until his second arrest in July 2019." (Lewis Opp. p. 8) Plaintiff cites no record evidence, and she admits in her opposition and testimony that Coe was suspended indefinitely from the team after the June 2018 incident. (*Id.* at p. 14; Lewis 90)

- "Despite numerous reports of Coe's repeated attacks on Plaintiffs Lewis and Richardson, LSU did not initiate any formal disciplinary action against him. Coe was

4

banned from using the Athletics weight room that summer, but that was an unofficial discipline that was meant to keep his abuse undocumented and unreported for any professional draft or transfer purposes." (Lewis Opp. p. 11) Richardson did not make her report about Coe until October 2018 (later than Summer 2018), and Lewis cites no evidence to support "numerous reports of Coe's repeated attacks on . . . Richardson." (Richardson 208, 212-214; Richardson Exh. 24) Her citation to Husch Blackwell also does not refer to numerous reports or discipline. Lewis' sworn testimony admits that, regarding her conclusions about the weight room, "this is my take on it." (Lewis 286)

- "After his arrest, Coe shoved Lewis again and tennis coaches Mike and Julia Sell saw her with a black eye and did not report it to anyone." (Lewis Opp. p. 15) Plaintiff's testimony does not include Julia Sell, nor can Lewis say what the Sells did in response. She testified she lied about the reason to Mike Sell. (Lewis 364-365; Lewis Exh. 15)[2]

- "[Coe] was afforded the rights and privileges of a student athlete including access to facilities even if he did not reside on campus after 2018." (Lewis Opp. p. 17) She cites no evidence to support this fallacy.

- "It was known that Bernhard had threatened to deport Plaintiff and lock her in a mental institution." (*Id.* p. 15) Her record cite contains none of this inflammatory information.

- "LSUPD attempted to contact Joseph several times during the investigation, but he never responded." (*Id.*) The cited page by Plaintiff, BOS-002117 shows the opposite, referencing that Joseph walked into the police station for an interview.

---

[2] While cited by the Board in its original memorandum, Lewis 364 was inadvertently omitted from Exhibit A. It is attached hereto as Reply Exhibit A.

- Lewis stated that "it was clear to Plaintiff that Sanders was less concerned about Coe's violence and more upset that Coe had a key to her room." (*Id.* at p. 10) Lewis' testimony shows that while the initial purpose of the meeting involved the key, Sanders quickly turned to investigating Lewis' relationship with Coe. (Lewis 272-273)

Lewis quotes her deposition to show that she "said she was hopeless after these events," but her quoted testimony says nothing of the sort. (Lewis Opp. p. 12) Elsewhere, Lewis argues "her tone of voice" made it clear that she was talking about how powerless she felt. (*Id.* at p. 11) Plaintiff did not introduce video of her deposition, so this statement is also unsupported. These examples are not exhaustive—Lewis' brief is filled with unsupported and inadmissible statements.

## IV. LEWIS FAILS THE ELEMENTS OF HER OFFICIAL POLICY HEIGHTENED RISK CLAIM.

Lewis adopts the opposition memoranda of other plaintiffs, without applying her own "facts" to the elements. For element one (policy of deliberate indifference), Lewis merely adopts Mize's opposition, without establishing or identifying a purported policy or arguing facts to show how the purported policy affected Lewis' situation. Lewis merely says LSU's unidentified official policy "manifested itself on its campus via the siloed Title IX process in Athletics that resulted in untrained school officials including White, Segar, Joseph, and Ausberry failing to take the appropriate action when Coe's violence against Plaintiff was reported." (*Id.* at p. 17) Lewis' and Mize's oppositions do not include any evidence that the listed persons were "untrained," nor do their pleadings identify what "appropriate action" each listed person failed to take in Lewis' case due to a lack of training. Lewis cites Husch Blackwell, saying they described LSU's discipline of Coe as "inefficient and insufficient sanctions," but this description falls below the standard of deliberate indifference. (*Id.* at p. 7)

Lewis also does not refute the steps that the Board took to obtain information to effectively address the volatile situation between Lewis and Coe.[3] With the exception of the 3-week delay that Lewis alleges resulted from Ausberry not reporting the Coe text message, she does not identify that any person's "inappropriate actions" were detrimental to her. Indeed, in Ausberry's situation, he testified to confusion regarding whether Lewis was a student, but in any event, evidence of a single "error" by Ausberry hardly constitutes an "official policy." (Ausberry 317-318)

For element two (a known or obvious heightened risk of sexual assault), Lewis does not address the Board's evidence on these points. Instead, Lewis' only argument on this element is her conclusory statement that "the rules did not apply to star football players like Coe." (Lewis Opp. p. 17) Plaintiffs offered no evidence of widespread, systemic conduct that created a "known risk" of physical violence by Coe and that would have precluded Lewis' alleged harm.[4]

For element three (subject to the Board's control), Lewis advances a number of unsubstantiated statements that refute her own testimony. She, like the other Plaintiffs, boil this element down to their argument that disciplinary authority equates to "control." This position directly conflicts with the Supreme Court's holding in *Davis*, requiring that a school must exercise control over both the harasser **and** the context in which the harassment occurs.[5] Lewis did not come forward with competent evidence to negate the Board's evidence and argument on this topic.

For element four (harassment that was so severe, pervasive, and objectively offensive), Lewis does not discuss "harassment" but rather discusses the effects of LSU's alleged treatment.[6]

---

[3] *See, e.g.*, Scott 37-38, 57-58; J. Lewis 82, 229-230, 241-242, 228-230, Exhs. 2-3, 17-18; Sanders 70-74.
[4] *See e.g.*, *C.T. v. Liberal Sch. Dist.*, 562 F.Supp. 2d 1324, 1340 (D. Kan. June 10, 2008); *Tackett v. Univ. of Kan.*, 234 F.Supp. 3d 1100, 1108 (D. Kan. 2017).
[5] *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 645 (1999); *see* Board's Reply Memorandum in Support of Motion for Summary Judgment No. 2, Section III.a.
[6] Any loss of educational opportunities and other effects allegedly experienced **as a result** of Coe's purported conduct cannot serve as evidence to establish the severe, pervasive and offensive harassment, as the pertinent threshold inquiry is not the **effect** the conduct had, but rather whether the "harassment" itself was severe, pervasive, and objectively offensive. *See Sanches v. Carrollton-Farms Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011).

In particular, she discusses retaliatory acts that she believes occurred. However, this Court dismissed her retaliation claim, so such allegations are irrelevant.[7] Moreover, her statements are misrepresentations. She references being put on "probation" for having a candle, which did not happen. (Lewis Opp. p. 20; Sanders 67-68) She references being isolated from her teammates, when she had not been on the team since 2017. (*Id.* at p. 20; Lewis 125, 172) She claims she was told she was ruining Coe's career but cites no evidence for such statement. (Lewis Opp. p. 20)

Lastly, Lewis concedes element five (causation). She advances no argument, nor can she. Lewis cannot come forward with evidence causally connecting any purported "official policy" to the harm she alleges. Nor can she introduce evidence to show how her situation would have been different had any of the listed persons taken a different action. Lewis admits she was unwilling to report Coe, so she cannot causally connect others' purported "failures" to her outcome.

## V. LEWIS FAILED THE ELEMENTS OF HER PERPETRATOR-BASED HEIGHTENED RISK CLAIM.

Lewis fails these elements for the reasons set forth in Section IV above. Regarding actual knowledge, Lewis again does not address the Board's evidence. Lewis does not dispute the Board's general timeline, including that information about Lewis' alleged assaults did not reach Title IX until April 2018, when Lewis reported to White, White reported to Segar, and Segar reported to Title IX. (Lewis Opp. pp. 3-5) Despite Lewis blurring dates, the undisputed facts show that, at most, Lewis alleges she reported in April 2017 to White who believed she reported "playful" conduct. (Lewis 165) Lewis left LSU immediately thereafter and returned a year later in April 2018. (Lewis 125, 170) By August 2018, Lewis involved the police, and she testified that she stopped interacting with Title IX because she had sought police assistance (meaning

---

[7] Lewis argues retaliation, stating: "The retaliation made Plaintiff feel alienated and isolated from her teammates." (Lewis Opp. p. 13) She does not support this statement with evidence and her claim is already dismissed.

8

references to conduct following her August 2018 report are irrelevant for heightened risk purposes). (Lewis 107, 113) Finally, she does not dispute that during April 2017 and April-August 2018, she lied to LSU about what was occurring between she and Coe. (Lewis Opp. pp. 8, 13)

In her deliberate indifference section, Lewis does not offer any evidence of deliberate indifference. Lewis instead offers inadmissible opinions about dating violence from sources whom Lewis never identified as an expert or lay witness in this case. Lewis also offers her own opinions that are unsupported by any evidence. For example, Lewis stated that "Plaintiff was invoking a clear survival strategy, as a trained professional would have recognized." (*Id.* at p. 25) Perhaps a trained professional would say so, but Plaintiff introduced no such evidence, and her statements of medical opinion from non-identified experts, if at all, are inadmissible. Similarly, despite testifying that she was **never** sexually assaulted by Coe (Lewis 24-25), Lewis now opines that she was subjected to sexual assault because she had sex with Coe out of fear of retaliation if she refused. (Lewis Opp. p. 3) However, Lewis' testimony is clear that the retaliation she feared was not sexual assault by Coe but rather fear that Coe would leave her. (Lewis 25) Finally, Lewis erroneously argues that because the Board includes dating violence in its PM-73 policy, then Title IX must also cover dating violence. (Lewis Opp. p. 22) Lewis cites to no authorities holding that the Board somehow creates Title IX coverage by being overly-inclusive in its policies. It is well-settled that the Board does not violate Title IX simply by not following its own policies.[8]

## VI.     LEWIS FAILED TO SHOW HER CLAIM IS TIMELY.

For the same reasons as above, Lewis cannot causally link her references to "untrained school officials" to her injuries. Indeed, the evidence shows that others who worked with Lewis

---

[8] *Sanches v. Carrollton-Farmers Branch Independent School Dist.*, 647 F.3d 156, 169 (5th Cir. 2011).

(Sanders, Scott, and Stewart) had training. (Board 30(b)(6) I 153-154)  Lewis introduced no evidence to show that their training versus others' training had any effect on Lewis' situation.

While Lewis alleges she had no prior knowledge of Richardson's situation, she also introduced no evidence that knowledge of Richardson's situation would have awakened Lewis to her claims sooner.  Lewis states that until the Husch Blackwell report, she did not know that Coe dated Richardson at the same time as Lewis; however, Lewis testified that she knew Coe was **never** faithful to her. (Lewis 16)  Lewis also states in her opposition that Husch Blackwell informed her that "Coe assaulted other LSU students; that at least three witnesses told Sanders about the full extent of Coe's abuse of Plaintiff, . . . but that Sanders only questioned Coe about the single June 18, 2018, incident; or that Ausberry concealed Coe's admission of sexual misconduct." (Lewis Opp. pp. 25-26)  Importantly, Lewis cites no record evidence to support this statement.  Indeed, Lewis introduced no evidence that LSU had knowledge that Coe abused "other LSU students" (Richardson aside), and Lewis provided no evidence to explain what Lewis meant by "the full extent of Coe's abuse of Plaintiff."  (*Id.* at 25)  Lewis cannot show that any of these purported revelations, if they had been supported by evidence, would have changed Lewis' situation as opposed to being "tangential" and insufficient to resurrect her untimely claim.  Lewis concedes, through her silence, the Board's evidence/arguments that Lewis was well aware in 2017 that she was at a "heightened risk" of assault by interacting with Coe and that Lewis' extensive interactions with LSU put her on notice of any purported "policy of indifference," if one existed.

## VII.   CONCLUSION

For these reasons above, Lewis' heightened risk claim fails as a matter of law.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

10

          BY:   /s/ *Susan W. Furr*
          Shelton Dennis Blunt Bar Roll No. 21230
          Susan W. Furr Bar Roll No. 19582
          Karleen J. Green Bar Roll No. 25119
          Jessica Coco Huffman LA Bar No.: 30445
          Molly McDiarmid Bar Roll No. 36426
          Gregory T. Stevens Bar Roll No. 29436
          Michael B. Victorian Bar Roll No.: 36065
          II City Plaza | 400 Convention Street, Suite 1100
          Baton Rouge, Louisiana 70802
          Telephone: 225 346 0285
          Facsimile: 225 381 9197
          Email: dennis.blunt@phelps.com
          Email: susie.furr@phelps.com
          Email: karleen.green@phelps.com
          Email: jessica.huffman@phelps.com
          Email: molly.mcdiarmid@phelps.com
          Email: greg.stevens@phelps.com
          Email: michael.victorian@phelps.com

          ATTORNEYS FOR THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on August 22, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

          /s/ *Susan W. Furr*
          Susan W. Furr