UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ABBY OWENS, ET AL. | CIVIL ACTION NO. 3:21-CV-00242 |
| VERSUS | JUDGE WENDY B. VITTER |
| LOUISIANA STATE UNIVERSITY, ET AL. | MAGISTRATE JUDGE JOHNSON |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 9: KENNAN JOHNSON**

The Board submits this reply memorandum in support of its Motion for Summary Judgment No. 9: Kennan Johnson ("Johnson").[1] For the reasons set forth below and in the Board's original memorandum, Johnson's claims should be dismissed with prejudice.[2]

**I.   JOHNSON CONCEDES THE RELEVANT FACTS SHOWING HER CLAIM IS PRESCRIBED.**

On the topic of prescription, Johnson simply adopts the arguments in Mize's opposition without alleging any facts at all relating to Johnson's own claim. In her silence, Johnson concedes the following:

- Johnson's alleged harassment took place during the period 2017 to Spring 2019 when she graduated, yet she did not file suit until approximately two years later, on April 26, 2021. (Johnson 18, 265; R. Doc. 1; R. Doc. 182, ¶ 594)

- The Husch Blackwell report did not mention Johnson's own allegations against J. Sell. (Johnson 289; R. Doc. 1-2)

---

[1] The Board adopts and incorporates by reference the arguments and evidence submitted in support of its motion, as well as the argument and evidence referenced in the Board's other reply memoranda.
[2] The Board accepts Plaintiff's facts as true for purposes of its motion and memorandum only.

1

- Johnson was not interviewed by Husch Blackwell, and she only appears to be referenced, not by name, in connection with her conversation regarding Jade Lewis's alleged assault. (Johnson 289; R. Doc. 1-2)

- The Husch Blackwell report did not mention any occurrences of sexual orientation that could constitute any official policy relating to sexual orientation.[3]

Johnson also concedes, through her silence, that the only information she alleges she learned from the Husch Blackwell Report was post-reporting conduct, which is irrelevant to her remaining pre-assault heightened risk claim. (R. Doc. 182, ¶ 595 (emphasis added)) Johnson offered no evidence or argument to save her claim from summary judgment based on timeliness alone.

## II. JOHNSON CONCEDES ESSENTIAL ELEMENTS OF HER POLICY-BASED HEIGHTENED RISK CLAIM.[4]

Regarding element one of her claim (existence of "a policy of deliberate indifference to reports of sexual misconduct"), Johnson merely cites to Mize's opposition. (Johnson Opp. p. 5) However, Mize does not discuss any policy of deliberate indifference to reports of alleged misconduct by a coach based on sexual orientation. (Mize Opp. p. 18) Johnson does not identify any such policy, much less provide facts to show an "official policy" of deliberate indifference to complaints of sexual orientation discrimination. In fact, Johnson refers to the Board's conduct as mere "mismanagement," which falls far short of the high burden of showing deliberate indifference. (Johnson Opp. p. 1) While Johnson states that a genuine issue of material fact exists, she does not identify what that fact is. She makes reference to a report she made to Sell of dating

---

[3] Johnson concedes that the Husch Blackwell report only referenced sexual orientation in the context of referencing the PM-73 Policy Committee recommendations that included adding "sexual orientation" to PM-73. (R. Doc. 1-2, pp. 41, 207) Notably, PM-73 (2014 version) already included sexual orientation. (R. Doc. 1-2, p. 152)
[4] Should this Court conclude policy-based heightened risk claim is unavailable in the Fifth Circuit, summary judgment is warranted as a matter of law because Johnson has abandoned any other heightened risk claim. (*See* Board Memorandum in Support of Motion for Summary Judgment No. 1, Section III.D; Mize Opp. p. 7)

2

violence by Johnson's partner, but she never made such allegation in her Complaint. Nor did she allege any official policy; rather, she simply states that regarding this one event with her partner, Segar "did not file the report with the Title IX office," citing Johnson's testimony. Johnson does not introduce any evidence to establish how Johnson would know whether Segar filed a report with Title IX. (Johnson Opp. p. 4) In fact, the record evidence shows Segar filed a report with the Title IX office. (Johnson 130-131, Johnson Exhs. 11-12) Notably, Johnson seems to acknowledge that no "official policy" exists, given that she refers to her policy argument as being based on an **"unofficial,"** not an official policy. (Johnson Opp. p. 1)

Regarding element two (known or obvious risk resulting from policy of deliberate indifference), Johnson again merely adopts Mize's opposition without providing any argument or facts specific to Johnson's situation. (Johnson Opp. p. 6) She provides no evidence of any prior reports of sexual orientation discrimination that would have alerted LSU to a known or obvious risk, thereby conceding this element. *Id.*

Regarding element three (control over the context of the harassment), Johnson fails to mention the element at all, thereby conceding the Board's argument and evidence on this element. (Johnson Opp. p. 3)

Regarding element four (severe, pervasive, and objectively offensive harassment that deprived her of access to educational opportunities), Johnson does not dispute the Board's evidence and argument regarding the absence of evidence that the conduct she alleges was severe and pervasive. (*See* Board's Memorandum in Support of Motion for Summary Judgment No. 9, Section III.C.c) In fact, Johnson never once states that the conduct she alleges was severe and pervasive.[5] Instead, Johnson argues the legal issue of whether Title IX covered sexual orientation

---

[5] Johnson alleges non-severe conduct such as "Sell would also ask personal questions prying into Plaintiff's relationship, despite having no fixed interest on any other team member's dating life asked about their relationship in

3

prior to 2020 (*see* Section IV below). Johnson also fails to establish "concrete" evidence that she was denied an educational opportunity.[6] Indeed, she concedes that her only potential educational loss was that Sell "refused to write her a letter in support" for graduate school. (Johnson Opp. 10) Johnson failed to introduce evidence to show that she was precluded from applying for graduate school without that one letter. *Id.*

Regarding element five (causation), Johnson again fails to mention the element at all, much less allege any facts to causally connect any identified official policy to the harm she allegedly suffered.

### III.    JOHNSON CONCEDES OTHER ISSUES THAT DEFEAT HER CLAIM.

In Mize's Opposition to the Board's Motion for Summary Judgment No. 1, Plaintiffs state that Johnson is not asserting a perpetrator-based claim on behalf of Johnson. (Mize Opp. p. 7) Consistently, Johnson does not make any mention of perpetrator-based harassment in her opposition. Accordingly, she concedes dismissal of any such claim.[7]

Johnson also conceded, through her silence, the Board's arguments in Section III.B relating to the unavailability of teacher-on-student heightened risk claims. *See* Board's Memorandum in Support of Summary Judgment No. 9, Section III.B.

---

ways she did not ask about straight teammates' relationships." (sic) (Johnson Opp. p. 3) Notably, Johnson does not introduce competent evidence to support this statement. Rather, she cites her own testimony, without establishing a foundation for how Johnson could know of all conversations between Sell and other team members.

[6] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 585 (5th Cir. 2020). Moreover, any loss of educational opportunities and other items allegedly experienced by Plaintiff **as a result** of Sell's purported conduct cannot serve as evidence to establish the requisite severe, pervasive and offensive harassment, as the pertinent threshold inquiry is not the **effect** the conduct had on the individual, but rather whether the "harassment" itself was severe, pervasive, and objectively offensive. *See Sanches v. Carrollton-Farms Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (**harassment** must be severe, pervasive and objectively offensive) (citing Davis, 526 U.S. at 650)).

[7] *See supra* n.4.

4

Lastly, Johnson does not contest the Board's cited authority that weight is not "based on sex," and thus not a protected class under Title IX.[8] Accordingly, her discussions relating to weight are immaterial.

## IV. JOHNSON FAILED TO SHOW THAT TITLE IX COVERED SEXUAL ORIENTATION ALONE AT THE TIME OF JOHNSON'S ALLEGED ASSAULT.

In support of her argument that Title IX covered sexual orientation discrimination during the time that Johnson attended LSU, Johnson cites to several documents issued by the Office of Civil Rights purporting to show that sexual orientation was covered by Title IX before 2020. (Johnson Opp. pp. 6-8) These documents do not support her claim for two reasons. First, the fact that each of these documents was rescinded either well before, or because of, the Biden Administration's 2020 efforts, suggests that coverage of sexual orientation changed in 2020. The 2010 Dear Colleague Letter currently reads:

> Not for Reliance for Certain Purposes. This document expresses policy that is inconsistent in some respects with the Department's regulations implementing Title IX of the Education Amendments of 1972, as amended in 2020, as well as Executive Orders 13988 (on combating discrimination based on gender identity or sexual orientation) . . . .[9]

Likewise, the 2015 Title IX Resource Guide (which does not expressly state sexual orientation discrimination alone is covered under Title IX) was rescinded in 2020, further indicating that its language conflicted with the 2020 efforts.[10] The 2011 Dear Colleague Letter (although silent about sexual orientation) was rescinded in September 2017.[11] Thus, Plaintiff's

---

[8] *See Patterson v. Hudson Area Sch.*, 724 F.Supp. 2d 682, 691 (E.D. Mich. 2010) (weight-based comments calling student "man-boobs" after student had gained 40 pounds were not sex based).

[9] U.S DEP'T OF EDUC., OFFICE FOR CIVIL RIGHTS, *Dear Colleague Letter* (Oct. 26, 2010), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.html.

[10] *See* U.S. DEP'T OF EDUC., OFFICE FOR CIVIL RIGHTS (Apr. 2015), https://www2.ed.gov/about/offices/list/ocr/docs/dcl-title-ix-coordinators-guide-201504.pdf; Notice of the Rescission of Outdated Guidance Documents, 85 Fed. Reg. 54150 (Aug. 31, 2020).

[11] *See* U.S DEP'T OF EDUC., OFFICE FOR CIVIL RIGHTS, *Dear Colleague Letter* (Apr. 4, 2011), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html; U.S DEP'T OF EDUC., OFFICE FOR CIVIL

5

cited documents were rescinded, refuting Johnson's position that discrimination based on sexual orientation alone was actionable prior to 2020.

Second, as outlined in the rescinded 2014 and 2015 OCR guidance documents, and as Plaintiff acknowledges, a school was not obligated to respond to discrimination based solely on sexual orientation where the discrimination was not also accompanied by sex discrimination.[12] Johnson Opp. p. 7, n.45 (noting that the sexual orientation discrimination must be accompanied by other "forms of discrimination prohibited under Title IX"). Plaintiff also concedes that, per the 2010 Dear Colleague Letter, ". . . Title IX does not prohibit discrimination based solely on sexual orientation . . ." *Id.*

At the time of Johnson's claims (in 2017 through Spring 2020) and up until the Biden Administration's 2020 efforts, sex discrimination was only actionable if a student experienced discrimination because of her sex or sex-stereotyping (such as the failure to conform to stereotypical notions of masculinity and femininity). *Id.* Discrimination based solely on a student's LGBT status was not actionable. *Id.*

### IV. CONCLUSION

For these reasons above, Johnson's heightened risk claim fails as a matter of law.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY: */s/ Susan W. Furr*
     Shelton Dennis Blunt Bar Roll No. 21230
     Susan W. Furr Bar Roll No. 19582

---

RIGHTS, *Dear Colleague Letter* (Sept. 22, 2017), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf.

[12] *See* U.S. DEP'T OF EDUC. OFFICE FOR CIVIL RIGHTS, (April 29, 2014) (https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf); (April 2015), https://www2.ed.gov/about/offices/list/ocr/docs/dcl-title-ix-coordinators-guide-201504.pdf.

          Karleen J. Green Bar Roll No. 25119
          Jessica Coco Huffman LA Bar No.: 30445
          Molly McDiarmid Bar Roll No. 36426
          Gregory T. Stevens Bar Roll No. 29436
          Michael B. Victorian Bar Roll No.: 36065
          II City Plaza | 400 Convention Street, Suite 1100
          Baton Rouge, Louisiana 70802
          Telephone: 225 346 0285
          Facsimile: 225 381 9197
          Email: dennis.blunt@phelps.com
          Email: susie.furr@phelps.com
          Email: karleen.green@phelps.com
          Email: jessica.huffman@phelps.com
          Email: molly.mcdiarmid@phelps.com
          Email: greg.stevens@phelps.com
          Email: michael.victorian@phelps.com

          ATTORNEYS FOR THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was filed on August 22, 2023, with the Court's CM/ECF system. Undersigned counsel will send an electronic copy of the same to Plaintiffs' counsel.

          /s/ *Susan W. Furr*
          Susan W. Furr