## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**                    **CIVIL ACTION**

**VERSUS**                               **NO. 21-242-WBV-SDJ**

**LOUISIANA STATE UNIVERSITY, ET AL.**

### <u>ORDER AND REASONS</u>

Before the Court is Defendant's Motion for Summary Judgment No. 1: Ashlyn Mize-Robertson,[1] filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board of Supervisors").[2]  Plaintiff opposes the Motion,[3] and the Board of Supervisors has filed a Reply.[4]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED.**

## I.    FACTUAL and PROCEDURAL BACKGROUND[5]

This case involves allegations by ten former students of Louisiana State University and Agricultural and Mechanical College ("LSU") that LSU and its

---

[1] The Second Amended Complaint refers to Plaintiff as "Ashlyn Robertson" or "Robertson." R. Doc. 182. Plaintiff's deposition refers to Plaintiff as "Ashlyn Brooke Mize." R. Doc. 469-1. The Board's Motion for Summary Judgment refers to Plaintiff as "Ashlyn Mize Robertson" or "Mize." R. Doc. 469-14. For clarity sake and to avoid confusion, the Court will refer to this plaintiff as  or "Mize-Robertson."

[2] R. Doc. 469.  The Court notes that the Board of Supervisors originally filed its Motion for Summary Judgment into the record under seal with the consent of the Court.  *See*, R. Docs. 364 & 365.  The Court subsequently ordered the Board of Supervisors to file a redacted version of the Motion into the record, which was filed into the record as R. Doc. 469.  *See,* R. Doc. 428.  Both motions, which are identical, remain pending at this time.  The remainder of this Order and Reasons, however, will reference only the redacted version of the Motion in the public record, R. Doc. 469.

[3] R. Doc. 480.  The Court notes that Plaintiffs originally filed their Opposition brief into the record under seal with the consent of the Court.  *See,* R. Doc. 405. The Court subsequently ordered Plaintiffs to file a redacted version of their Opposition brief into the record, which was filed into the record as R. Doc. 480.  *See*, R. Doc. 428.  The remainder of this Order and Reasons will refer only to the redacted version of the Opposition brief, R. Doc. 480.

[4] R. Doc. 491.

[5] The factual background of this case was extensively detailed by the Court in several prior Orders (*See,* R. Docs. 317, 319, 321, 323, & 340) and, for the sake of brevity, will not be repeated here.

Athletic Department funded and implemented a purposefully deficient sexual misconduct and Title IX reporting scheme separate from LSU's official Title IX office to keep sexual assault claims within the Athletic Department.[6] The instant Motion concerns the Title IX heightened risk claim asserted by plaintiff Ashlyn Mize-Robertson against the Board of Supervisors, which survived the Court's March 31, 2023 Order and Reasons granting in part and denying in part the Board of Supervisors' Motion to Dismiss the Second Amended Complaint.[7]

The Court limits its recitation of the facts alleged in the Second Amended Complaint to those alleged by Plaintiff Ashlyn Mize-Robertson, the facts asserted in the Complaint by other plaintiffs which Mize-Robertson relies on in support of her claims, and the facts set out in the Board's Statement of Undisputed Material Facts that Mize-Robertson admits are true in her Opposing Statement of Material Facts.[8] Mize-Robertson enrolled at LSU in the fall of 2015.[9] On January 22, 2016 Mize-Robertson hosted a party at her off-campus apartment which was attended by several members of the LSU football team, including John Doe, though he had not been invited.[10] After a brief interaction with John Doe, Mize-Robertson, who was intoxicated, went to her bedroom to lay down and subsequently passed out.[11] John Doe entered Mize-Robertson's bedroom while she was passed out and raped her.[12]

---

[6] R. Doc. 1 at ¶ 10; R. Doc. 22 at ¶ 10; R. Doc. 182 at ¶ 25.
[7] R. Doc. 340.
[8] R. Doc. 480-1. The Board's Undisputed Facts that are admitted by Mize-Robertson are Numbers 3, 8-10, 12-13, 15, 17, 22, 29, 31, 44-45, 47 and 48. Mize-Robertson offers qualified responses to all of the Board's other Undisputed Facts.
[9] R. Doc. 182 at ¶ 242.
[10] *Id.* at ¶¶ 243-244.
[11] *Id.* at ¶¶ 246-248.
[12] *Id.* at ¶ 249; R. Doc. 469-1 at pp. 16-21.

The following day, Mize-Robertson experienced flashbacks of John Doe spitting on her and penetrating her vaginally and anally.[13] Mize-Robertson told some friends about the rape, one of whom informed her mother who advised the diving coach and Miriam Segar, LSU's Senior Associate Athletic Director.[14] In her deposition, Segar testified that she had been made aware of the sexual assault of Mize-Robertson by January 29, 2016 and forwarded the information to Jim Marchand, LSU's Title IX coordinator, and Mari Fuentes-Martin, LSU's Associate Vice-President and Dean of Students.[15]  Segar further testified that she had been advised by Mize-Robertson's friend of Mize-Robertson's name and further that Mize-Robertson had been sexually assaulted by two male athletes.[16]  Segar also testified that, while she was told the name of the two male athletes, she did not include those athletes' names in the report she forwarded to Marchand and Fuentes-Martin because LSU tried not to include student athletes' names when filing a report for an NCAA violation because of public records requests and different things.[17] Within a week of the assault Mize-Robertson went to the LSU Health Center and informed a nurse of the assault.[18]

On February 1, 2016 Fuentes-Martin emailed Mize-Robertson and inquired if she wanted to pursue a Title IX investigation; Mize-Robertson declined, fearing that she would not be believed and fearing repercussions to her reputation.[19] Mize-Robertson claims that Doe "began a campaign of vicious harassment" against her

---

[13] R. Doc. 182 at ¶ 249; R. Doc. 469-1 at pp.21-22.
[14] R. Doc. 182 at ¶¶ 253-255; R. Doc. 469-1 at 17, 29-30.
[15] R. Doc. 469-3 at pp. 3-4.
[16] *Id.*
[17] *Id.*  at p. 5.
[18] R. Doc. 182 at ¶ 257; R. Doc. 469-1 at p. 24.
[19] R. Doc. 182 at ¶¶ 259-260; R. Doc. 469-1 at pp. 27, 38, 42.

following the assault, including by throwing a shake on her car in May 2016.[20] During the spring or summer of 2016, John Doe confronted Mize-Robertson about "spreading rumors" and told her he had "a gun with [her] name on it."[21] In the fall of 2016, Mize-Robertson told her new boyfriend of the rape. The boyfriend disclosed the rape to Coach Ed Orgeron, who responded that the boyfriend should not be upset because "everybody's girlfriend sleeps with other people."[22] Mize-Robertson contends that her grades declined and she began drinking heavily, using drugs, and engaging in hypersexual behavior to cope with the trauma.[23]  After being arrested on drug charges, Mize-Robertson left LSU.[24] She contends that she still suffers emotional, physical, and economic losses, including lost TOPS scholarship money which she must repay.[25] Mize-Robertson also advises that she has not been able to complete her education at another school because LSU will not release her transcript until she pays back the TOPS scholarship.[26]

On April 26, 2021, Mize-Robertson, along with nine other plaintiffs, filed suit against the Board of Supervisors as well as various LSU officials asserting, among other claims, Title IX violations.[27]  In the Second Amended Complaint, Mize-Robertson asserted seven claims as follows: Count I, Violation of Title IX, Deliberate Indifference to Sex Discrimination in violation of 20 U.S.C. §§ 1681, et seq.; Count II,

---

[20] R. Doc. 182 at ¶ 262; R. Doc. 469-1 at p. 28.
[21] R. Doc. 182 at ¶¶ 263-266; R. Doc. 469-2 at pp. 2-3.
[22] R. Doc. 182 at ¶¶ 272-273.
[23] R. Doc. 182 at ¶¶ 281-282; R. Doc. 469-1 at p. 43; R. Doc. 469-2 at pp. 6, 10-13.
[24] R. Doc. 182 at ¶ 284.
[25] *Id.* at ¶ 288.
[26] *Id.* In her Opposition brief, Plaintiffs advise that Mize-Robertson is now pursuing her bachelor's degree at another university. *See,* R. Doc. 480 at p. 4.
[27] R. Doc. 1.

Violation of Title IX, Hostile Environment in violation of 20 U.S.C. §§ 1681, et seq.; Count III, Violation of Title IX, Heightened Risk in violation of 20 U.S.C. §§ 1681, et seq.; Count IV, Violation of Title IX, Retaliation by Withholding Protection Otherwise Conferred by Title IX in violation of 20 U.S.C. §§ 1681, et seq.;[28] Count V, First Amendment Retaliation in violation of 42 U.S.C. § 1983 and the First Amendment;[29] Count VI, Denial of Equal Protection in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment;[30] and Count VII, Denial of Substantive and Procedural Due Process in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment.[31]

In response to a Motion to Dismiss filed by the Board of Supervisors, the Court dismissed Mize-Robertson's deliberate indifference, hostile environment, and retaliation claims.[32]  Thus, the only remaining claim asserted by Mize-Robertson against the Board of Supervisors is her heightened risk claim asserted in Count III.

In Count III of the Second Amended Complaint, Plaintiffs allege that the Board of Supervisors created a heightened risk of sex-based discrimination on LSU's campus by cultivating a "culture of silence by failing to report complaints of sex-based discrimination, initiate and/or conduct adequate investigations and grievance

---

[28] Mize-Robertson only asserted the claims in Counts I-IV against the Board of Supervisors.

[29] Mize-Robertson only asserted Count V against individually named defendants in their individual capacities. *See,* R. Doc. 182 at p. 134.  Those individual defendants were subsequently dismissed from this action. *See* R. Doc. 317, 319, 321, & 323.

[30] Mize-Robertson only asserted Count VI against individually named defendants in their individual capacities. *See,* R. Doc. 182 at p. 142.  Those individual defendants were subsequently dismissed from this action. *See* R. Doc. 317, 319, 321, & 323.

[31] Mize-Robertson only asserted Count VII against individually named defendants in their individual capacities. *See,* R. Doc. 182 at p. 145.  Those individual defendants were subsequently dismissed from this action. *See* R. Doc. 317, 319, 321, & 323.

[32] R. Doc. 340.

procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits."[33]

The Board of Supervisors seeks summary judgment on Mize-Robertson's heightened risk claim, arguing that any such claim based on LSU's general custom or official policy fails since the Fifth Circuit has not recognized a Title IX heightened risk claim based on an official policy, and further because this Court's ruling on the Board's Motion to Dismiss "does not suggest that an official policy claim remains in this case."[34] The Board of Supervisors further argues that, if such a claim exists, Mize-Robertson fails to meet the elements of such a claim and that any such claim is now prescribed.[35] Plaintiffs contend that the Board of Supervisors' argument that the Fifth Circuit has not recognized a heightened risk claim based on an official policy of deliberate indifference "is of no moment, as the United States Supreme Court has recognized such a claim."[36] Plaintiffs then assert that genuine issues of material fact preclude summary judgment on Mize-Robertson's policy-based heightened risk claim, including whether the claim is timely.[37] In response, the Board of Supervisors maintains that it is entitled to summary judgment on Mize-Robertson's heightened risk claim.[38]

---

[33] R. Doc. 182 at ¶ 926.

[34] *Id*. To the extent that the Board of Supervisors in its Motion suggests that Mize-Robertson has asserted a perpetrator-based heightened risk claim, the Court finds that she has not. *See,* R. Doc. 182 at ¶¶ 916-937. In their Opposition brief, Plaintiffs clarify that the only heightened risk claim asserted by Mize-Robertson is a policy-based heightened risk claim. *See,* R. Doc. 480 at p. 7. The Board of Supervisors acknowledges Plaintiffs' position in its Reply brief. *See,* R. Doc. 491 at p. 2.

[35] R. Doc. 469.

[36] R. Doc. 480 at p. 17.

[37] *Id*. at pp. 10-23.

[38] R. Doc. 491.

## II.    LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[39]  When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[40]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[41]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[42]  Where, as here, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[43]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to

---

[39] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[40] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[41] *Id*. (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[42] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[43] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[44]

**B. Title IX.**

"Congress enacted Title IX in 1972 with two principal objectives in mind: '[T]o avoid the use of federal resources to support discriminatory practices' and 'to provide individual citizens effective protection against those practices.'"[45]   In line with those objectives, Title IX provides that, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[46]   Title IX is enforceable by private right of action for damages.[47] Through this private right of action, institutions receiving federal funds may be liable for, among other things, student-on-student sexual harassment if: (1) the institution had actual knowledge of the harassment; (2) the harasser was under the institution's control; (3) the harassment was based on the victim's sex; (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit;" and (5) the institution was deliberately indifferent to the harassment.[48]

---

[44] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).

[45] *Roe v. Cypress-Fairbanks Ind. Sch. Dist.*, 53 F.4th 334, 340-341 (5th Cir. 2022) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (alteration in original)).

[46] *Roe*, 53 F.4th at 341 (*quoting* 20 U.S.C. § 1681(a)) (internal quotation marks omitted).

[47] *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)).

[48] *Roe*, 53 F.4th at 341 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (alteration in original)) (internal quotation marks omitted).

## III.   ANALYSIS

Plaintiffs alleges that the Board of Supervisors' Title IX policies and practices were so deficient that the Board of Supervisors was deliberately indifferent to the risk of Mize-Robertson's sexual assault and "cultivated a culture of silence by failing to report complaints of sex-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits or grievance procedures . . . ."[49]   The Court refers to this as Mize-Robertson's policy-based heightened risk claim, which is the only heightened-risk claim asserted by Mize-Robertson.  The Board of Supervisors argues that it is entitled to summary judgment on Mize-Robertson's claim because a heightened risk claim based on an official policy has not been recognized by the Fifth Circuit and, even if it were available, the evidence shows that Mize-Robertson cannot establish such a claim.[50] The Board of Supervisors further argues that any such claim is prescribed.[51]

At the outset, the Court rejects as baseless the Board of Supervisors' assertion that a heightened risk claim based upon an official policy is unavailable, as the Supreme Court has implicitly recognized a heightened risk claim based upon an institution's official policy.[52]   Additionally, the Fifth Circuit clearly recognized a

---

[49] R. Doc. 182 at ¶¶ 926-928.

[50] R. Doc. 469-14.

[51] *Id.*

[52] *See, Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (distinguishing claims involving an "official policy" of discrimination from those seeking to hold an institution liable for the discriminatory acts of an individual); *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (recognizing that an institution cannot be liable unless it has notice that its conduct could subject it to a damages claim, but clarifying that "this limitation on private damages actions is not a bar to liability where a

policy-based heightened risk claim in *Roe v. Cypress-Fairbanks Independent School District*, although the court ultimately determined that the plaintiff failed to raise a genuine dispute as to the elements of the claim.[53]    The Board of Supervisors acknowledges *Roe*, thought it contends that the Fifth Circuit "seemingly recognized" the possibility of a pre-assault heightened risk claim in the context of student-on-student sexual harassment.[54] The Court agrees with the Plaintiffs that *Roe* does not foreclose a policy-based heightened risk claim.[55]  The Court further notes that several district courts in this Circuit, including this one, have recognized a policy-based heightened risk claim.[56]  The Board of Supervisors fails to acknowledge or address

funding recipient intentionally violates the statute.") (quoting *Franklin v. Gwinnett Cnty. Pub. Schools*, 503 U.S. 60, 74-75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)) (internal quotation marks omitted).

[53] 53 F.4th 334, 341-42 (5th Cir. 2022) ("Roe first argues that the district's Title IX policies and practices were so deficient that the District was deliberately indifferent to the risk of her sexual assault. . . . . Relatedly, Roe also argues that the District was deliberately indifferent to the known risk of dating violence and sexual assault at Cypress Creek. . . . [T]hese theories do not suffice under our circuit's binding case law.  Even if Roe is correct that the District failed to appropriately implement its Title IX obligations, she does not connect this failure to the District's knowledge about her in particular. . . . Furthermore, the District's response to other incidents of sexual harassment do not show the District's knowledge of a substantial risk of *Roe's* sexual assault."  The Fifth Circuit explained that, "While genuinely disturbing, neither [argument] shows actual knowledge of Roe's risk of sexual assault.") (emphasis in original).

[54] R. Doc. 469-14 at p. 10 (citing *Roe*).

[55] R. Doc. 480 at pp. 14-20.

[56] *See, Doe v. Bd. Of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 467 (M.D. La. 2023) ("The recognition of this private right of action has given rise to two general avenues for Title IX claims—one for claims based on an official policy of discrimination and another for claims based on an institution's actual notice of and deliberate indifference to sexual harassment or assault.") (quoting *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 879 (W.D. Tex. 2019)) (internal quotation marks omitted); *Lozano*, 408 F. Supp. 3d at 882 ("The Court finds that Lozano has plausibly alleged that Baylor's selective enforcement of reports of domestic abuse and sexual assault created a heightened risk of assault, which subjected her to a sexually discriminatory education environment under Title IX. Lozano's heightened risk claim fits squarely within the official-policy rubric previously identified by the Supreme Court."); *Gruver v. La. through Bd. Of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 401 F. Supp. 3d 742, 762 (M.D. La. 2019) ("The Court finds that, as in *Baylor*, if these facts are proven, a jury may infer that LSU's policy created the heightened risk to Greek male students of serious injury or death by hazing, thereby inflicting the injury alleged herein.") (citing *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646 (W.D. Tex. 2017)); *Doe 12 v. Baylor Univ.*, 336 F. Supp. 3d 763, 783 (W.D. Tex. 2018) (concluding that, "These alleged facts, construed as true, 'raise a right to relief above the speculative level' that Baylor's policy or custom of inadequately handling and even discouraging

this authority in its Motion or Reply brief.  To the extent the Board of Supervisors asserts that, "this Court, consistent with *Roe*, likewise referenced a heightened risk framework premised on pre-assault student-on-student conduct in its ruling on the Board's motion to dismiss" and "did **not** find a heightened risk claim existed based on an official policy,"[57] the Board of Supervisors misconstrues the Court's prior ruling, which is not as narrow as the Board contends.

The Court likewise rejects as moot the Board of Supervisors' assertion that Mize-Robertson's heightened risk claim is prescribed as a matter of law.[58]  The Court previously determined that Plaintiffs' Title IX heightened risk claims did not accrue until the publication of the Husch Blackwell report in March 2021 and, as such, are timely.[59]  Thus, the only issue before the Court is whether the Board of Supervisors has shown that Mize-Robertson cannot meet the elements of her policy-based heightened risk claim.

For the reasons set forth below, the Court finds that Mize-Robertson has raised a genuine issue of material fact as to each element of her policy-based heightened risk claim, and thus the Board of Supervisors is not entitled to summary judgment.

---

reports of peer sexual assault constituted an official policy of discrimination that created a heightened risk of sexual assault, thereby inflicting the injury of which Plaintiffs complain.") (footnote and citation omitted); *Doe 1*, 240 F. Supp. 3d at 661 ("Plaintiff's heightened-risk claims fit squarely within the official-policy rubric previously identified by the Court, and the Court is satisfied that Plaintiffs have met their burden under Rule 12(b)(6).").

[57] R. Doc. 469-14 at p. 10 (emphasis in original).

[58] *Id.* at pp. 6-9.

[59] R. Doc. 340 at p. 20 (citing *Doe 1 v. Baylor University*, 240 F. Supp. 3d 646, 663 (W.D. Tex. 2017)).

### A. Mize-Robertson's Policy-Based Heightened Risk Claim

Plaintiffs assert that the Board of Supervisors' handling of reports of sexual assault created a heightened risk of sexual assault because "LSU knew of and permitted a campus condition rife with sexual misconduct, and sexual misconduct was rampant on campus."[60] Plaintiffs allege that the Board of Supervisors had an official policy, practice, and/or custom of deliberate indifference through which it cultivated a culture of silence by failing to: report complaints of sex-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits or grievance procedures."[61] Specifically, Plaintiffs assert that the Board of Supervisors failed to properly train employees in their Title IX reporting obligations, failed to ensure employee compliance with Title IX Policy, failed to report complaints of sex-based discrimination, and failed to initiate and/or conduct adequate investigations and grievance procedures under Title IX.[62]

Although not specifically asserted by either party, both parties seem to recognize that there is no Fifth Circuit authority regarding the analytical framework applicable to policy-based heightened risk claims.[63] The parties seem to agree that a policy-based heightened risk claim requires a plaintiff to prove the following four elements: (1) the institution maintained a policy of deliberate indifference to reports

---

[60] R. Doc. 182 at ¶¶ 917-921.
[61] *Id.* at ¶ 926.
[62] *Id.* at ¶¶ 922 & 926.
[63] *See,* R. Doc. 469-14 at pp. 16-20; R. Doc. 480 at pp. 14-19.

of sexual misconduct; (2) which created a heightened risk of sexual harassment that was known or obvious; (3) in a context subject to the school's control; and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."[64]  The Court will address each factor in turn.

### 1. *Element one: Whether the Board of Supervisors had a policy of deliberate indifference to reports of sexual misconduct.*

The Board of Supervisors asserts that it is entitled to summary judgment on Mize-Robertson's policy-based heightened risk claim because she cannot establish that LSU had an official policy of deliberate indifference to reports of sexual misconduct.[65]  The Court disagrees.  "The Supreme Court has repeatedly explained that where the Title IX violation in question is caused by an institution's discriminatory policy or custom, courts need not apply the actual notice and deliberate indifference framework typically used in cases involving institutional liability for sexual harassment or assault."[66]  "In evaluating such claims, courts must

---

[64] R. Doc. 469-14 at pp. 20-25 & nn.70, 80, 83 (quoting *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1177-78 (10th Cir. 2007); *Doe v. Texas A&M Univ.*, 634 F. Supp. 3d 365, 376 (S.D. Tex. 2022)) (internal quotation marks omitted; R. Doc. 480 at pp. 14-15 (quoting *Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 35 F.4th 459, 464-65 (6th Cir. 2022), cert. denied sub nom. *Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Doe*, 143 S.Ct. 574, 214 L.Ed.2d 340 (2023)) (internal quotation marks omitted).  The Court notes that the Board of Supervisors lists the fourth element as "causation."  R. Doc. 469-14 at pp. 24-25.

[65] R. Doc. 469-14 at pp. 20-23.

[66] *Doe 12 v. Baylor Univ.*, 336 F.Supp.3d 763, 779 (W.D. Tex. 2018) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (stating that the actual notice and deliberate indifference requirements are restricted to those cases "that do not involve [an] official policy of the [funding recipient]"); *Davis Next Friend LaShonda D v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (acknowledging that an institution cannot be liable unless it has notice that its conduct could subject it to a damages claim but providing that "this

consider whether the defendant-institution's policy or custom inflicted the alleged injury."[67] In its Motion, the Board of Supervisors recognizes that:

> "a funding recipient can be said to have 'intentionally acted in clear violation of Title IX' when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient."[68]

Plaintiffs have gone beyond the pleadings and produced an overwhelming amount of evidence that raises a genuine issue of material fact regarding whether the Board of Supervisors maintained a policy of deliberate indifference to reports of sexual misconduct, both before and after Mize-Robertson was raped by John Doe. Specifically, Plaintiffs have provided evidence supporting their contention that LSU had a longstanding policy of ignoring, underfunding, and undermining its official Title IX program by willfully refusing to allocate sufficient funding to the Title IX program, knowingly allowing various departments, including the Athletic Department, to circumvent the Title IX office and handle reports of sexual misconduct and harassment internally through school officials who were not given proper training, and by failing to follow industry-standard recommendations and best practices made by their own Title IX Coordinator and independent outside auditors.

---

limitation . . . is not a bar to liability where a funding recipient intentionally violates the statute")). *See, Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 661 (W.D. Tex. 2017) (same).

[67] *Doe 12*, 336 F. Supp. 3d at 779-80 (citing *Gebser*, 524 U.S. at 291, 118 S.Ct. 1989 (locating an analogue to the Title IX jurisprudence in the municipal liability doctrine); *Bd. Of Cnty. Comm'rs Bryan Cnty. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (explaining that plaintiffs seeking to impose liability on a municipality under § 1983 must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury"); *Collins v. City of Harker Heights*, 503 U.S. 115, 122, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (noting the necessity of analyzing whether execution of a municipal policy inflicted the injury)). *See, Doe 1*, 240 F. Supp. 3d at 661 (same).

[68] R. Doc. 469-14 at p. 18 (quoting *Simpson v. Univ. of Colorado, Boulder*, 500 F.3d 1170, 1178 (10th Cir 2007)).

First and foremost, there is the Husch Blackwell report, commissioned by LSU and issued on March 3, 2021, which reviewed, among other things, "Over 60 Title IX investigation case files from 2015 to present."[69]  One of the conclusions reached in the report is that, "Various incidents of athletics-related misconduct have not been appropriately reported to the University's Title IX Coordinator.  We are especially concerned about a lack of reporting *prior to November 2016* for reasons discussed below."[70]  The report further provides that, "our concerns about reporting are not limited to Athletics.  Institutional reporting policy and training have been unclear for years."[71] The authors of the report observed that, "there was a clear lack of leadership in providing clarity about institutional reporting obligations.  This was a long-recognized problem at the University that was never meaningfully addressed."[72]  The Husch Blackwell report also concluded that LSU's Title IX office "has never been appropriately staffed or provided with the independence and resources to carry out Title IX's mandates.  We have identified concerns that the Office has at times not handled those matters reported to it appropriately."[73]  The report again notes that, "while the *USA Today* article focused primarily on Athletics, we found deficiencies in a variety of different matters."[74]  The Husch Blackwell report also found that, "the University was slow to adopt Title IX policies, hire personnel, or meaningfully

---

[69] R. Doc. 480-35 at pp. 1 & 4.
[70] *Id.* at p. 5.
[71] *Id.* at pp. 5-6.
[72] *Id.* at p. 76, n.171.
[73] *Id.* at p. 6.
[74] *Id.*

address concerns identified by community members and internal and external reviews."[75]

The Husch Blackwell report further states that, "Many of the issues identified throughout this report have been flagged previously in other reviews of the University's Title IX operations," and that, "over the last five years, there have been at least five reviews (three form external consultants and firms, one from the University's Office of Internal Audit, and one from a University task force) conducted by the University which have touched on Title IX issues."[76]  The report mentions that on August 30, 2016, LSU President F. King Alexander issued a "Presidential Charge" to create a "task force" of students, faculty, and staff to review LSU's "current policies, practices, and procedures as they relate to Title IX and to provide recommendations to the President that reflect campus needs and are informed by nationally-recognized benchmarked practices."[77]   The task force submitted a report in February 2017 with 17 recommendations regarding Title IX compliance.[78] The Husch Blackwell report states that, "As part of this review, we have been unable to find any documentation memorializing how this Task Force report was assessed or addressed by the leadership of the University."[79]

The Husch Blackwell report points out that additional internal and external reviews of LSU's Title IX Policy were conducted in 2016, 2017, 2018, and 2019.[80]  The

---

[75] *Id.*
[76] *Id.* at p. 38.
[77] *Id.* (citation omitted).
[78] *Id.* at pp. 41-44.
[79] *Id.* at p. 44.
[80] *Id.* at pp. 39-40, 44-48.

Husch Blackwell report states that, "Remarkably, the [2019] report, which was done in part to assess the University's Title IX policies and practices as they apply to LSU's Athletics Department, was never shared with the University's Title IX Office or the Athletics Department."[81]  The "Recommendations" section of the Husch Blackwell report reiterates that, "Institutional policies were unclear, edicts were issued by supervisors that conflicted with policy, employees were overburdened with vast institutional roles and not provided with appropriate resources, calls for additional resources went unheeded, concerns were not responded to, etc."[82]  The report further states that, "As demonstrated in this report, the University has been provided with recommendations for years about Title IX which have never been implemented."[83]

There are also several letters and emails in the record, seemingly in response to the serious allegations and conclusions contained in the Husch Blackwell report, wherein LSU officials admit to the university's failings in its Title IX reporting obligations.  There is a letter from James Stephen Perry, a former member of the Board of Supervisors, directed to "Senator Barrow and Committee Members," in which Perry asserts that, "the University had failed its students," and that, "[t]here can be no question that LSU failed in its duties and that there were structural, communication, chain of command, and individual performance failures."[84]  Perry further states that he had read that, "many violations and threats against women

---

[81] *Id.* at p. 48.
[82] *Id.* at p. 139.
[83] *Id.* at p. 146.
[84] *See,* R. Doc. 480 at p. 2 (*citing* R. Doc. 483 at pp. 2-13); R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-4 at p. 1) (internal quotation marks omitted).  The Court notes that there is no date on the letter.

students both inside of and outside of the Athletics Department never even reached the Title IX office."[85]  There is also a letter issued by Jane Cassidy, Interim VP of Civil Rights & Title IX, to "LSU Students, Faculty, and Staff" wherein she admits that, "We now know with great clarity that our system to protect one another from sexual harassment and violence has failed, and we must act expeditiously to remediate the problem."[86]  Board of Supervisors President Remy Voisin Starns also issued a statement stating, "I . . . want to apologize to the survivors.  Our university did not do right by you.  We see that now, and we are here to tell you that it's not okay."[87]

Plaintiffs have also provided evidence indicating that LSU Interim President Tom Galligan testified to the Louisiana Senate that, "there was no culture of punishment at LSU.  There was no notice at the time as to what would happen.  The policies were very unclear.  There were directions within departments to report title IX issues to places they should not have been reported."[88]  Galligan also admitted that LSU's "most serious misstep.  And this is noted in the Husch Blackwell report, is failing to report by employees when they didn't understand they were responsible or they didn't comply with the regulation."[89]  In a letter to the "LSU Community" on March 5, 2021, Galligan advised that the results of the Husch Blackwell report would be disclosed and that, "Perhaps most troubling of all the report's findings is the

---

[85] R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-4 at pp. 1-2) (internal quotation marks omitted).
[86] R. Doc. 483 at p. 2 (*quoting* R. Doc. 483-5) (internal quotation marks omitted).  The Court notes that there is no date on the letter.
[87] R. Doc. 483 at p. 2 (*quoting* R. Doc. 483-17) (internal quotation marks omitted).  The Court notes that there is no date on Starns' statement.
[88] R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-53) (internal quotation marks omitted).
[89] R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-53) (internal quotation marks omitted).

understanding that, whether through our actions or inactions, our institution betrayed the very people we are sworn to protect.  Our job is to protect our students and support them in their times of need.  It has become clear we haven't always fully lived up to our commitment."[90]  The evidence also shows that despite having actual knowledge of Mize-Robertson's alleged rape by John Doe in January 2016, Miriam Segar intentionally omitted John Doe's name from the Title IX records pertaining to the rape.  The Court is aware of evidence in the record showing that Segar testified that, "So, it was that was just how we did it back then,"[91] which further raises a genuine fact regarding whether "that was just how we did it back then" references a widespread policy or practice of deliberate indifference.

The Court finds that the foregoing evidence is more than sufficient to raise a genuine issue of fact regarding whether the Board of Supervisors had a policy of deliberate indifference to reports of sexual misconduct. The Court further finds that this dispute is material as LSU's policy or practice of deliberate indifference is crucial to a determination of Mize-Robertson's policy-based heightened risk claim, thereby precluding summary judgment on this basis.

### 2. Element two: Whether the Board of Supervisors' policy of deliberate indifference to reports of sexual misconduct created a heightened risk of sexual harassment that was known or obvious.

The Court finds that the same evidence referenced above raises a genuine dispute regarding whether the Board's alleged policy of deliberate indifference

---

[90] R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-8) (internal quotation marks omitted).
[91] R. Doc. 480 at pp. 1-2 (*citing* R. Doc. 481 at pp. 2-7); R. Doc. 480 at p. 21 (*citing* R. Doc. 481 at pp. 9-16); *See,* R. Doc. 481 at p. 7 (*citing* 481-20 at p. 2); R. Doc. 470-6 at p. 11.

created a heightened risk of sexual harassment that was "known or obvious,"[92] especially in light of the wide timespan that the Husch Blackwell report encompassed, which included the timeframe before Mize-Robertson's alleged abuse. The Court agrees with Plaintiffs that additional sexual misconduct on campus is the expected consequence of failing to meaningfully investigate and report Title IX complaints and failing to adequately train staff and students regarding how to respond to sexual misconduct.[93]  The fact that John Doe is alleged to have committed additional acts of violence and harassment against several of the plaintiffs *after* LSU was notified of Mize-Robertson's rape further suggests that those acts were also the result of LSU's policy of deliberate indifference.

The Board of Supervisors argues that Mize-Robertson cannot establish causation because when she was asked during her deposition whether she thought LSU bore any responsibility for John Doe's attack, she testified, "I believe they [LSU] bear responsibility for what could have happened after the fact, not the fact that he raped me, because that is his responsibility. He should bear that. After the fact, I think LSU bears the responsibility, yes."[94]  The Board of Supervisors failed to acknowledge that Mize-Robertson also testified that:

> I believe that if I would have known that other women had allegations against [John Doe] I wouldn't have felt so alone and that I would have proceeded with the investigation.  At the time, I was scared. I was lonely because I felt like this has only happened to me, hasn't happened to anyone else.  No one reached back out to me to let me know that his name had came up in any more investigations, any more allegations,

---

[92] *Doe v. Texas A&M Univ.*, 634 F. Supp. 3d 365, 376 (S.D. Tex. 2022) (citing *Karasek v. Regents of Univ. of Calif.*, 956 F.3d 1093, 1112 (9th Cir. 2020)).

[93] R. Doc. 480 at p. 21; *See,* R. Doc. 480-35.

[94] R.Doc. 469-14 at p. 15 (*quoting* R. Doc. 469-1 at pp. 6-7) (internal quotation marks omitted).

But if I knew that there were other women, then I definitely would have proceeded with the investigation.[95]

Determining whether the Board of Supervisors' policy of deliberate indifference to reports of sexual misconduct created a heightened risk of sexual harassment that was known or obvious will require credibility determinations and the weighing of evidence, which is inappropriate at this stage. The Court rejects as baseless the Board of Supervisors' assertion that Plaintiffs "have no evidence of widespread, systemic conduct that would put LSU on notice of a particularized risk of sexual misconduct in the context that [Mize-Robertson] alleges."[96] The Board's position is contradicted by the evidence set forth above and cited in Mize-Robertson's Opposition brief.  Thus, genuine issues of material fact preclude summary judgment on the basis that Mize-Robertson cannot satisfy this element of her policy-based heightened risk claim.

### 3. Element three: Whether Mize-Robertson's alleged sexual assault occurred in a context subject to the Board's control.

To satisfy the third element of Mize-Robertson's heightened risk claim, Plaintiffs must show that the Board of Supervisors "exercises substantial control over both the harasser and the context in which the known harassment occurs."[97]  The Board of Supervisors argues that Mize-Robertson cannot satisfy the control element because her alleged rape occurred after a night of drinking at her off-campus apartment over which LSU had no authority.[98]  The Board of Supervisors declares

---

[95] R. Doc. 469-1 at pp. 48-49.
[96] R. Doc. 469-14 at p. 24.
[97] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 644-45, 119 S.Ct. 1661, 1672, 143 L.Ed.2d 839 (1999).
[98] R. Doc. 469-14 at p. 12.

that, "Title IX does not cover student-on-student harassment that occurs off-campus, outside of a school program/activity, and outside of a context that is under the school's 'substantial control.'"[99] The Board of Supervisors also cites out-of-circuit authority to support its position that student-on-student sexual harassment that occurs off campus is not under the control of the university unless it is at an off-campus facility that the university controls.[100]

Plaintiffs do not dispute that the rape occurred at Mize-Robertson's off-campus apartment. Instead, Plaintiffs cite out-of-circuit authority indicating that the control element is a "fact specific question" and that a school's disciplinary authority over a student can satisfy the control element.[101] Plaintiffs contend that "context" is "broader than the specific location where the harassment occurs—something more like the 'circumstances' or 'conditions' of the abuse,'" and may include "where the University permitted a hostile environment for female students to flourish."[102] Plaintiffs further assert that the Board of Supervisors had sufficient control over John Doe and the context of the sexual misconduct through its disciplinary authority, which it exercised through "its PM-73 Title IX policies and its Student Code of Conduct."[103] Mize-Robertson likewise asserts that the Board of Supervisors had

---

[99] *Id.* (citing *Davis*, 526 U.S. at 644-45, 119 S.Ct. 1661).
[100] R. Doc. 469-14 at p. 12, n.32 (citing authority).
[101] R. Doc. 480 at p. 21 (*citing* R. Doc. 481 at pp. 9-16).
[102] R. Doc. 481 at pp. 12-13.
[103] R. Doc. 481 at pp. 10-11 (*citing* R. Docs. 481-13, 481-14, & 481-4). According to the evidence submitted by Plaintiffs, "PM-73 Title IX policies" refers to Permanent Memorandum No. 73 issued by LSU's then-President, F. King Alexander, titled "Title IX and Sexual Misconduct Policy," which had an effective date of June 18, 2014 (R. Doc. 481-13; R. Doc. 480-8). That policy was superseded by Permanent Memorandum No. 73, which was also issued by President F. King Alexander and had an effective date of December 15, 2015. (R. Doc. 481-14; R. Doc. 480-9).

sufficient control over John Doe and the context of her alleged harassment because LSU had regulatory authority over the apartment where the incident occurred, as well as over the broader school environment, through its Student Code of Conduct.[104] Mize-Robertson also cites a decision from another Section of this court, wherein the court found an actionable Title IX heightened risk claim where the assailant was a university student subject to the school's codes of conduct and the alleged rape occurred at an off-campus apartment.[105] In response, the Board of Supervisors contends that Mize-Robertson "does not even state that any material issues of fact exist."[106]

Having reviewed the cases cited by both parties, the Court is not persuaded by the authority cited by the Board of Supervisors that a sexual assault occurring off campus cannot satisfy the control element of a heightened risk claim. The Supreme Court has made clear that, "recipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority."[107]  Further, the Court in *Davis* took pains to define terms and phrases in Title IX, including "under the operations of a funding recipient" and "the harassment must take place in a context subject to the school district's control." [108]  The Court further noted that Webster's Third New

---

[104] R. Doc. 481 at p. 13.
[105] *Id*. at pp. 14-15 (citing *Doe v. Bd. Of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 467-69 (M.D. La. Jan. 10, 2023)).
[106] R. Doc. 491 at p. 10.
[107] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 646-47, 119 S.Ct. 1661, 1673, 14 L.Ed.2d 839 (1999).
[108] 526 U.S. at 644-647, 119 S.Ct. at 1672-73.

International Dictionary defines "under" as "in or into a condition of subjection, regulation, or subordination," and Random House Dictionary defines "under" as "subject to the authority, direction, or supervision of."[109]

Here, Plaintiffs have provided the Court with a copy of LSU's Code of Student Conduct, which states that, "The University shall have discretion to extend jurisdiction over conduct that occurs off campus when the conduct adversely and significantly affects the learning environment or University community and would be in violation of the Code if the conduct had occurred on campus,," and when the alleged conduct involves "members of the University community."[110]  The Code of Student Conduct also defines "campus" broadly to include "all land, buildings, property, and facilities in the possession of, owned by, used by, or controlled by the University," as well as "land leased to others, property owned, managed or maintained by the University, and all streets, alleys, sidewalks, and public ways adjacent to any land of the University or the land upon which housing is located even if the housing is not owned by the University."[111] The Court has also been provided with LSU's Title IX and Sexual Misconduct Policy, effective December 15, 2015, which states:

> This policy shall apply to conduct that occurs on an LSU campus, at LSU sponsored activities, and/or when the student or employee is representing LSU.  LSU shall have discretion to extend jurisdiction over conduct that occurs off campus when the conduct adversely or significantly affects the learning environment or LSU community and would be a violation of this policy and/or any applicable campus policy or code of conduct, if the conduct had occurred on campus. . . LSU may extend jurisdiction (over off-campus conduct) if the alleged conduct by the student or employee:

---

[109] 526 U.S. at 645, 11 S.Ct. at 1672.
[110] R. Doc. 480-4 at p. 7.
[111] R. Doc. 480-4 at p. 4.

     1. Involved violence or produced a reasonable fear of physical harm; and/or

     2. Involved any other members of the LSU community or any academic work, records, documents, or property of LSU.[112]

While the Board of Supervisors seems to contest Plaintiffs' assertion that it had control over the context of Mize-Robertson's alleged sexual assault, it does not contest Plaintiffs' assertion that the Board of Supervisors had disciplinary authority over John Doe as a student and student-athlete.[113]  Further, while not directly conceding the point, the Board of Supervisors acknowledges in its Statement of Undisputed Material Facts that LSU officials Segar and Fuentes-Martin reached out to Mize-Robertson in an effort to pursue an investigation, thereby acknowledging that LSU could proceed with an investigation for an incident that occurred off-campus.[114] The Board of Supervisors' Statement of Uncontested Material Facts further advises Mize-Robertson "the services provided on and off campus to address your medical concerns as well as the availability of counseling,"[115] again seemingly acknowledging LSU's ability to provide resources to a student for off-campus incidents.

     Without clear guidance from the Fifth Circuit regarding whether sexual assault that occurs off campus can satisfy the control element, the Court looks to decisions from district courts in this Circuit which have found that off-campus rape and assault "*is* actionable, particularly when the university is actually aware of prior assaults by the *same* student-attacker."[116] While those cases were in a different

---

[112] R. Doc. 480-9 at p. 2.

[113] R. Doc. 491 at p. 10 (*citing* R. Doc. 492 at pp. 5-8).

[114] R. Doc. 469-15 at pp. 3-5.

[115] *Id.*

[116] *Doe v. Bd. Of Supervisors of Univ. of La. System*, 650 F. Supp. 3d 452, 468 (M.D. La. 2023) (emphasis in original) (citing *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 610-12 (W.D. Tex. 2017) (student-

posture than the instant matter, as they involved motions to dismiss rather than motions for summary judgment, the Court nonetheless finds them persuasive. The Court further finds that Mize-Robertson has raised a genuine issue of material fact regarding whether the Board of Supervisors exercised substantial control over both John Doe and the context in which the alleged rape occurred based upon its Title IX policies and its Code of Student Conduct. Accordingly, the Board of Supervisors has failed to show that it is entitled to summary judgment on the basis that Mize-Robertson cannot establish the control element of her heightened risk claim.

### 4. Element four: Whether, as a result of the Board's deliberate indifference, Mize-Robertson suffered harassment that was so severe, pervasive, and objectively offensive that it deprived her of access to the educational opportunities or benefits provided by LSU.

The Supreme Court has concluded that a defendant can be held liable for damages under Title IX "only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."[117] The Supreme Court has also suggested, without deciding, that a single instance of sufficiently severe one-on-one peer harassment is unlikely to satisfy the "severe, pervasive, and objectively

---

plaintiff stated actionable heightened risk *and* post-reporting claims based on sexual assault that occurred at 'an off-campus party,' where the university knew of prior reports of sexual assault committed by the same student-attacker); *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 883 (W.D. Tex. 2019) (actionable Title IX claims based on assaults occurring at off-campus apartment and a restaurant parking lot); *Doe I v. Baylor Univ.*, 240 F. Supp. 3d 646, 654 (W.D. Tex. 2017) (actionable Title IX claims based on sexual assault occurring "at a house near campus")).

[117] *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 650, 119 S.Ct. 1661, 1675, 143 L.Ed.2d 839 (1999); *See, Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 342 (5th Cir. 2022) (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011)) (same).

offensive" standard.[118]   Nonetheless, the Fifth Circuit in *Roe v. Cypress-Fairbanks Independent School District* recognized a circuit split regarding whether a single instance of sufficiently severe one-on-one peer harassment could ever rise to the level of "pervasive" harassment.[119]   The Fifth Circuit pointed out that while three circuits have held that "pervasive" student-on-student harassment for Title IX purposes requires multiple incidents of harassment,[120] four circuits have held that students must demonstrate only that a school's deliberate indifference made harassment more likely, not that it actually led to any additional post-notice incidents of harassment.[121] Without weighing-in on the circuit split, the Fifth Circuit in *Roe* concluded that a reasonable jury could conclude that the harassment experienced by the plaintiff in its case was pervasive "no matter on which side of the circuit split we fall."[122]

While the Board of Supervisors asserts that it does "not intend to minimize the seriousness of an alleged sexual assault," it then argues that Mize-Robertson cannot satisfy the fourth element of her heightened risk claim because the alleged one-time rape by John Doe does not meet the Title IX standard for being "severe, pervasive, **and** objectively offensive" harassment.[123]   In contrast, Mize-Robertson argues that a

---

[118] *Davis*, 526 U.S. at 652-53, 119 S.Ct. at 1676.

[119] *Roe*, 53 F.4th at 342 (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 652-53, 119 S.Ct. 1661, 14 L.Ed.2d 839 (1999)).

[120] *Roe*, 53 F.4th at 342-43 (citing *Kollaritsch v. Mich. Stat Univ. Bd. Of Trustees*, 944 F.3d 613, 620 (6th Cir. 2019); *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058 (8th Cir. 2017); *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000)).

[121] *Roe*, 53 F.4th at 343 (citing *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F. 4th 257, 275 (4th Cir. 2021); *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1108 (10th Cir. 2019); *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172 (1st Cir. 2007), *rev'd and remanded on other grounds*, 555 U.S. 246, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009); *Williams v. Bd. Of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1295-97 (11th Cir. 2007)).

[122] *Roe*, 53 F.4th at 343.

[123] R. Doc. 469-14 at p. 13 (quoting *Davis*, 526 U.S. at 652, 119 S.Ct. 1661) (internal quotation marks omitted) (emphasis added by the Board). The Board of Supervisors includes the same argument, and

single incident of sexual assault is sufficient to give rise to a Title IX violation.[124]
Mize-Robertson cites mostly out-of-circuit authority to support that position.[125] The
Board of Supervisors further argues that Mize-Robertson cannot show a deprivation
of educational benefits because her grades did not drop until Spring 2017, the year
following her assault, when she admittedly began her drug-related activity.[126]

The Court finds that Plaintiffs have provided sufficient evidence that John
Doe's alleged rape of Mize-Robertson while she was intoxicated and without her
consent, followed by at least two post-notice confrontations with Doe, including one
where Doe told her that he had "a gun with her name on it," was severe, pervasive,
and objectively offensive so as to bar Mize-Robertson access to educational benefits.[127]
As such, it is a question of fact that should be left to the jury.  Plaintiffs have likewise
provided sufficient evidence to raise a genuine dispute regarding whether LSU's
policy of deliberate indifference caused her to suffer that sexual harassment.  When
asked why she never filed a police report, Mize-Robertson testified that she, "wanted
to forget everything that had happened and not have to deal with the trauma of
retelling it retelling it and telling it and becoming public knowledge and . . ."[128]  She
further testified that she did not pursue a Title IX investigation because she "did not
want to keep reliving it," and because she did not want her "name plastered

---

same sentence, in its Motion for Summary Judgment No. 4: Abby Owens regarding Owens's allegation
of rape by John Doe and in its Motion for Summary Judgment No. 3: Calise Richardson regarding
Richardson's allegation of attempted rape by John Doe. *See,* R. Doc. 472-17 at p. 9;, R. Doc. 471-20 at
p. 10.
[124] R. Doc. 480 at p. 22 (*citing* R. Doc. 485 at pp. 11-16).
[125] *See,* R. Doc. 485 at p. 12, n.87 (citing authority).
[126] R. Doc. 469-14 at p. 16 (citations omitted).
[127] R. Doc. 480-3 at p. 20; R. Doc. 480-1 at pp. 8-9 & 19.
[128] R. Doc. 469-1 at p. 27.

throughout LSU as the girl who cries rape against [John Doe]."[129]    Determining whether LSU's policy of deliberate indifference caused Mize-Robertson to suffer harassment that was so severe, pervasive, and objectively offensive that it deprived her of access to the education opportunities or benefits provided by LSU will require credibility determinations and the weighing of evidence, which the Court cannot do in the context of a summary judgment motion.    When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[130]

Based upon the foregoing evidence, and while refraining from making credibility determinations or weighing the evidence, the Court finds that there exists a genuine issue of material fact regarding whether, as a result of the Board's policy of deliberate indifference, Mize-Robertson suffered harassment that was so severe, pervasive, and objectively offensive that it effectively barred her access to an educational opportunity or benefit.    Thus, the Board of Supervisors is not entitled to summary judgment on the basis that Mize-Robertson cannot establish this element of her heightened risk claim.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment No. 1: Ashlyn Mize-Robertson, filed by the Board of

---

[129] *Id.* at pp. 38, 42; R. Doc.480-1 at p. 7.
[130] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

Supervisors of Louisiana State University and Agricultural and Mechanical College[131] and Defendant's Motion for Summary Judgment No. 1: Ashlyn Mize-Robertson[132] are **DENIED.**

New Orleans, Louisiana, December 22, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[131] R. Doc. 469.
[132] R. Doc. 364.