# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ABBY OWENS, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                **NO. 21-242-WBV-SDJ**

**LOUISIANA STATE UNIVERSITY, ET AL.**

## <u>ORDER AND REASONS</u>

Before the Court is Defendant's Motion for Summary Judgment No. 2: Samantha Brennan, filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board of Supervisors").[1] Plaintiffs oppose the Motion,[2] and the Board of Supervisors has filed a Reply.[3] After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED.**

## I.    FACTUAL and PROCEDURAL BACKGROUND[4]

This case involves allegations by ten former students of Louisiana State University and Agricultural and Mechanical College ("LSU") that LSU and its Athletic Department funded and implemented a purposefully deficient sexual misconduct and Title IX reporting scheme separate from LSU's official Title IX office

---

[1] R. Doc. 470.  The Court notes that the Board of Supervisors originally filed its Motion for Summary Judgment into the record under seal with the consent of the Court.  *See*, R. Docs. 366 & 367.  The Court subsequently ordered the Board of Supervisors to file a redacted version of the Motion into the record, which was filed into the record as R. Doc. 470.  *See,* R. Doc. 428.  Both motions, which are identical, remain pending at this time.  The remainder of this Order and Reasons, however, will reference only the redacted version of the Motion, R. Doc. 470.

[2] R. Doc. 481.  The Court notes that Plaintiffs originally filed their Opposition brief into the record under seal with the consent of the Court.  *See*, R. Docs. 403 & 414.  The Court subsequently ordered Plaintiffs to file a redacted version of their Opposition brief into the record, which was filed into the record as R. Doc. 481.  *See*, R. Doc. 428.  The remainder of this Order and Reasons will refer only to the redacted version of the Opposition brief, R. Doc. 481.

[3] R. Doc. 492.

[4] The factual background of this case was extensively detailed by the Court in several prior Orders (*See,* R. Docs. 317, 319, 321, 323, & 340) and, for the sake of brevity, will not be repeated here.

to keep sexual assault claims within the Athletic Department.[5]  The instant Motion concerns the Title IX heightened risk claims asserted by plaintiff Samantha Brennan against the Board of Supervisors, which survived the Court's March 31, 2023 Order and Reasons granting in part and denying in part the Board of Supervisors' Motion to Dismiss the Second Amended Complaint.[6]

The Court limits its recitation of the facts alleged in the Second Amended Complaint to those alleged by Plaintiff Samantha Brennan, the facts asserted in the Complaint by other plaintiffs which Brennan relies on in support of her claims, and the facts set out in the Board's Statement of Undisputed Material Facts that Brennan admits are true in her Opposing Statement of Material Facts.[7]  In the Second Amended Complaint, Plaintiffs allege that on July 9, 2016, Brennan went out with a friend who worked for the media department of the LSU football team, and that the friend introduced her to John Doe, a well-known member of LSU's football team.[8] Plaintiffs allege that John Doe drove Brennan home that night and that John Doe took a nude photograph of Brennan without her consent while she was incapacitated.[9] Plaintiffs allege that on or around July 22, 2016, Brennan's coworker told her that John Doe had taken a nude photo of her and had shared it with the football team.[10] Brennan met with LSU officials about it on July 22, 2016, including Sharon Lewis

---

[5] R. Doc. 1 at ¶ 10; R. Doc. 22 at ¶ 10; R. Doc. 182 at ¶ 25.

[6] R. Doc. 340.

[7] *See,* R. Doc. 182, R. Doc. 470-18, & R. Doc. 481-1.  The Board's Undisputed Facts that are admitted by Brennan are Numbers 1-3, 9-10, 14, 18-22, 31, 33, 48-49, and 52.  Brennan denies or offers qualified responses to all of the Board's other Undisputed Facts.

[8] R. Doc. 182 at ¶¶ 290-291.

[9] *Id*. at ¶¶ 292-298.

[10] *Id*. at ¶ 297.

and Miriam Segar.[11]  Sharon Lewis was the Associate Athletics Director of Football Recruiting and Alumni Relations in 2021,[12] and Segar is the Senior Associate Athletics Director and Senior Woman Administrator for LSU, and previously served as Assistant Athletics Director and Associate Athletics Director for Student Services.[13]  Plaintiffs allege that Segar was a "Responsible Employee" required to report all disclosures of sexual assault to the Title IX office.[14]

Plaintiffs further allege that when Brennan met with Lewis and Segar, Segar had actual knowledge of John Doe's prior rape of at least one other LSU student, specifically, plaintiff Ashlyn Mize-Robertson.[15]  Plaintiffs allege that Lewis asked Brennan if she wanted to initiate a police investigation or if she wanted LSU "to handle it internally," and that Brennan said she wanted LSU to handle it internally.[16]

On April 26, 2021, Brennan, along with nine other plaintiffs, filed suit against the Board of Supervisors as well as various LSU officials asserting, among other claims, Title IX violations.[17]  In the Second Amended Complaint, Brennan asserted seven claims as follows: Count I, Violation of Title IX, Deliberate Indifference to Sex

---

[11] *Id*. at ¶ 299.

[12] *Id*. at ¶ 113.  The Court notes that the Second Amended Complaint does not specify what position Lewis held at LSU in 2016.

[13] *Id*. at ¶ 20.

[14] *Id*. at ¶ 304.

[15] *Id*. at ¶ 301.  Elsewhere in the Second Amended Complaint, Plaintiffs allege that Robertson was raped by John Doe on January 22, 2016, that it was reported to LSU a few days later, that John Doe continued to verbally harass Robertson in late spring/early summer of 2016, and that he threw a shake on her car during finals week in May 2016.  *Id*. at ¶¶ 243-248 & 253-255, & 262-268. The Second Amended Complaint refers to Plaintiff Robertson as Ashlyn Robertson or "Robertson."  *See,* R. Doc. 182. Plaintiff Robertson's deposition refers to her as Ashlyn Brooke Mize.  *See*, R. Doc. 365-1. The Board's Motion for Summary Judgment refers to her as Ashlyn Mize Robertson or "Mize." For clarity sake and to avoid confusion, the Court will refer to this plaintiff as "Mize-Robertson."

[16] *Id*. at ¶¶ 308-309.

[17] R. Doc. 1.

Discrimination in violation of 20 U.S.C. §§ 1681, et seq.; Count II, Violation of Title IX, Hostile Environment in violation of 20 U.S.C. §§ 1681, et seq.; Count III, Violation of Title IX, Heightened Risk in violation of 20 U.S.C. §§ 1681, et seq.; Count IV, Violation of Title IX, Retaliation by Withholding Protection Otherwise Conferred by Title IX in violation of 20 U.S.C. §§ 1681, et seq.;[18] Count V, Violation of Title IX, First Amendment Retaliation in violation of 42 U.S.C. § 1983 and the First Amendment;[19] Count VI, Denial of Equal Protection in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment;[20] and Count VII, Denial of Substantive and Procedural Due Process in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment.[21]

In response to a Motion to Dismiss filed by the Board of Supervisors, the Court dismissed Brennan's deliberate indifference, hostile environment, and retaliation claims against the Board of Supervisors.[22] Thus, the only remaining claim asserted by Brennan against the Board of Supervisors is her heightened risk claim asserted in Count III.

In Count III of the Second Amended Complaint, Plaintiffs allege that the Board of Supervisors created a heightened risk of sex-based discrimination on LSU's

---

[18] Brennan only asserted the claims in Counts I-IV against the Board of Supervisors.

[19] Count V, Violation of Title IX, First Amendment Retaliation in violation of 42 U.S.C. § 1983 and the First Amendment, was only asserted against individually named defendants in their individual capacities. *See,* R. Doc. 182.  Those individual defendants were subsequently dismissed from this action. *See,* R. Doc. 317, 319, 321, & 323.

[20] Count VI, Denial of Equal Protection in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment was only asserted against individually named defendants in their individual capacities. *See,* R. Doc. 182.  Those individual defendants were subsequently dismissed from this action. *See,* R. Doc. 317, 319, 321, & 323.

[21] Count VII, Denial of Substantive and Procedural Due Process in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment was only asserted against individually named defendants in their individual capacities. *See,* R. Doc. 182.  Those individual defendants were subsequently dismissed from this action. *See,* R. Doc. 317, 319, 321, & 323.

[22] R. Doc. 340.

campus by mishandling and discouraging reports of sexual assault.[23]  Plaintiffs
specifically allege that LSU created a heightened risk of sexual misconduct on
campus for John Doe's victims, including Brennan, because LSU failed to properly
record John Doe as Mize-Robertson's assailant or to properly investigate Mize-
Robertson's report, thereby allowing a known rapist to remain on campus with
unfettered access to the student body.[24]  Plaintiffs allege that LSU "knew or should
have known that this substantially heightened Brennan's risk of victimization."[25]
Ignoring her request, Plaintiffs allege that Segar took Brennan to the LSU Police
Department to file a report, and that an officer tried to coerce her into pressing
charges against John Doe.[26]  Plaintiffs allege that Brennan never received notice from
LSU about whether a Title IX investigation was conducted, that Brennan was never
contacted by anyone in the Title IX office or any other school officials about any
potential investigation of her report, and that no one at LSU ever offered Brennan
any support, resources, accommodations, or interim measures.[27]

    In the instant Motion, the Board of Supervisors seeks summary judgment on
Brennan's perpetrator-based heightened risk claim, arguing that her claim fails as a
matter of law because Brennan cannot meet any of the five necessary elements of her
claim.[28]  The Board of Supervisors further asserts that to the extent Plaintiff has

---

[23] R. Doc. 182 at ¶¶ 917-921.
[24] *Id*. at ¶ 930(f).
[25] *Id*.
[26] *Id*. at ¶¶ 310-311.
[27] *Id*. at ¶¶ 312-314.
[28] R. Doc. 470 at ¶¶ 1-2; R. Doc. 470-17 at pp. 5-16.  The Court notes that throughout its Memorandum
in Support, the Board of Supervisors repeatedly "adopts by reference" the arguments made in the nine
other concurrently-filed motions for summary pertaining to the other nine plaintiffs.  *See, generally*,
R. Doc. 470-17.  Further, in its Reply brief, the Board of Supervisors "adopts and incorporates by

asserted a heightened risk claim based on LSU's policy of deliberate indifference to sexual misconduct, that claim "is unavailable as a matter of law."[29]  The Board of Supervisors also asserts that Brennan's heightened risk claims are prescribed as a matter of law.[30]  Plaintiffs argue that genuine issues of material fact preclude summary judgment on both of Brennan's heightened risk claims, including whether the claims are timely.[31]  In response, the Board of Supervisors maintains that it is entitled to summary judgment on Brennan's heightened risk claims.[32]

## II.  LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[33]  When assessing whether a dispute regarding any material fact exists, the

---

reference" the arguments and evidence submitted in support of its Motion, as well as the arguments and evidence submitted in support of the Board's nine other reply memoranda.  R. Doc. 492 at p. 1, n.1.  It appears the Board of Supervisors used this tactic to avoid seeking leave to exceed the page limits applicable to supporting memoranda and reply briefs.  *See*, Local Civil Rule 7(g) of the Local Rules of the United States District Court for the Middle District of Louisiana.  Plaintiffs employ a similar tactic, cross-referencing portions of other opposition briefs they filed in response to the nine other motions for summary judgment filed by the Board of Supervisors, likely as a means to avoid requesting leave to exceed the page limit.  *See, generally*, R. Doc. 481.  The Court looks with extreme disfavor on motions that incorporate other motions, especially after discussing with counsel that it would allow individually filed briefing addressing each plaintiff's claims.  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)) (internal quotation marks omitted).  "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).  The Court discourages both parties from employing such tactics in the future.

[29] R. Doc. 470 at ¶ 3; R. Doc. 470-17 at pp. 17-21.

[30] R. Doc. 470 at ¶ 4; R. Doc. 470-17 at pp. 21-23.

[31] R. Doc. 481.

[32] R. Doc. 492.

[33] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." [34]    While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[35]   Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party. [36]   Where, as here, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[37]   The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[38]

## B. Title IX.

"Congress enacted Title IX in 1972 with two principal objectives in mind: '[T]o avoid the use of federal resources to support discriminatory practices' and 'to provide individual citizens effective protection against those practices.'"[39]   In line with those

---

[34] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[35] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[36] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[37] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

[38] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).

[39] *Roe v. Cypress-Fairbanks Ind. Sch. Dist.*, 53 F.4th 334, 340-341 (5th Cir. 2022) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (alteration in original)).

objectives, Title IX provides that, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[40]    Title IX is enforceable by private right of action for damages.[41] Through this private right of action, institutions receiving federal funds may be liable for, among other things, student-on-student sexual harassment if: (1) the institution had actual knowledge of the harassment; (2) the harasser was under the institution's control; (3) the harassment was based on the victim's sex; (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit;" and (5) the institution was deliberately indifferent to the harassment.[42]

## III.    ANALYSIS

In their Second Amended Complaint, Plaintiffs allege that the Board of Supervisors created a heightened risk of sexual misconduct on campus for John Doe's victims, including Brennan.[43]    The Court will refer to this as Brennan's perpetrator-based heightened risk claim.    Plaintiffs further allege that the Board of Supervisors' Title IX policies and practices were so deficient that the Board of Supervisors was deliberately indifferent to the risk of Plaintiffs' sexual assault and "cultivated a culture of silence by failing to report complaints of sex-based discrimination, initiate

---

[40] *Roe*, 53 F.4th at 341 (*quoting* 20 U.S.C. § 1681(a)) (internal quotation marks omitted).

[41] *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)).

[42] *Roe*, 53 F.4th at 341 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (alteration in original)) (internal quotation marks omitted).

[43] R. Doc. 182 at ¶ 930.

and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits or grievance procedures . . . ."[44]  The Court will refer to this as Brennan's policy-based heightened risk claim.  The Board of Supervisors argues that it is entitled to summary judgment on both claims because a heightened risk claim based on an official policy is "unavailable as a matter of law,"[45] and because Plaintiffs cannot establish the necessary elements of either claim.[46]  The Board of Supervisors also argues that any heightened risk claim is prescribed as a matter of law.[47]

At the outset, the Court rejects as baseless the Board of Supervisors' assertion that a heightened risk claim based upon an official policy is unavailable, as the Supreme Court has implicitly recognized a heightened risk claim based upon an institution's official policy.[48]  Additionally, the Fifth Circuit clearly recognized a policy-based heightened risk claim in *Roe v. Cypress-Fairbanks Independent School District*, although the court ultimately determined that the plaintiff failed to raise a genuine dispute as to the elements of the claim.[49]  The Board of Supervisors

---

[44] R. Doc. 182 at ¶¶ 926-928.
[45] R. Doc. 470 at ¶ 3; R. Doc. 470-17 at p. 17.
[46] R. Doc. 470 at ¶¶ 2 & 3.
[47] *Id.* at ¶ 4; R. Doc. 470-17 at pp. 21-23.
[48] *See, Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (distinguishing claims involving an "official policy" of discrimination from those seeking to hold an institution liable for the discriminatory acts of an individual); *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (recognizing that an institution cannot be liable unless it has notice that its conduct could subject it to a damages claim, but clarifying that "this limitation on private damages actions is not a bar to liability where a funding recipient intentionally violates the statute.") (quoting *Franklin v. Gwinnett Cnty. Pub. Schools*, 503 U.S. 60, 74-75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (internal quotation marks omitted)).
[49] 53 F.4th 334, 341-42 (5th Cir. 2022) ("Roe first argues that the district's Title IX policies and practices were so deficient that the District was deliberately indifferent to the risk of her sexual assault. . . . . Relatedly, Roe also argues that the District was deliberately indifferent to the known

acknowledges *Roe*, though it contends that the Fifth Circuit "seemingly recognized" the possibility of a pre-assault heightened risk claim in the context of student-on-student sexual harassment.[50] The Court agrees with Plaintiffs that *Roe* does not foreclose a policy-based heightened risk claim.[51] The Court further notes that several district courts in this Circuit, including this one, have recognized a policy-based heightened risk claim.[52] The Board of Supervisors fails to acknowledge or address this authority in its Motion or Reply brief.  To the extent the Board of Supervisors asserts that, "this Court, consistent with *Roe*, likewise referenced a heightened risk framework premised on pre-assault student-on-student conduct in its ruling on the

---

risk of dating violence and sexual assault at Cypress Creek. . . . [T]hese theories do not suffice under our circuit's binding case law.  Even if Roe is correct that the District failed to appropriately implement its Title IX obligations, she does not connect this failure to the District's knowledge about her in particular. . . . Furthermore, the District's response to other incidents of sexual harassment do not show the District's knowledge of a substantial risk of *Roe's* sexual assault."  The Fifth Circuit explained that, "While genuinely disturbing, neither [argument] shows actual knowledge of Roe's risk of sexual assault.") (emphasis in original).

[50] R. Doc. 470-17 at p. 17 (*citing* R. Doc. 469-14 at p. 10).

[51] R. Doc. 481 at pp. 18-19 (citing R. Doc. 480 at p. 18).

[52] *See, Doe v. Bd. Of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 467 (M.D. La. 2023) ("The recognition of this private right of action has given rise to two general avenues for Title IX claims— one for claims based on an official policy of discrimination and another for claims based on an institution's actual notice of and deliberate indifference to sexual harassment or assault.") (quoting *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 879 (W.D. Tex. 2019) (internal quotation marks omitted); *Lozano*, 408 F. Supp. 3d at 882 ("The Court finds that Lozano has plausibly alleged that Baylor's selective enforcement of reports of domestic abuse and sexual assault created a heightened risk of assault, which subjected her to a sexually discriminatory education environment under Title IX. Lozano's heightened risk claim fits squarely within the official-policy rubric previously identified by the Supreme Court."); *Gruver v. La. through Bd. Of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 401 F. Supp. 3d 742, 762 (M.D. La. 2019) ("The Court finds that, as in *Baylor*, if these facts are proven, a jury may infer that LSU's policy created the heightened risk to Greek male students of serious injury or death by hazing, thereby inflicting the injury alleged herein.") (citing *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646 (W.D. Tex. 2017)); *Doe 12 v. Baylor Univ.*, 336 F. Supp. 3d 763, 783 (W.D. Tex. 2018) (concluding that, "These alleged facts, construed as true, 'raise a right to relief above the speculative level' that Baylor's policy or custom of inadequately handling and even discouraging reports of peer sexual assault constituted an official policy of discrimination that created a heightened risk of sexual assault, thereby inflicting the injury of which Plaintiffs complain.") (footnote and citation omitted); *Doe 1*, 240 F. Supp. 3d at 661 ("Plaintiff's heightened-risk claims fit squarely within the official-policy rubric previously identified by the Court, and the Court is satisfied that Plaintiffs have met their burden under Rule 12(b)(6).").

Board's motion to dismiss" and "did **not** find a heightened risk claim existed based on an official policy,"[53] the Board of Supervisors misconstrues the Court's prior ruling, which is not as narrow as the Board contends.

The Court likewise rejects as moot the Board of Supervisors' assertion that Brennan's heightened risk claims are prescribed as a matter of law.[54]  The Court previously determined that Plaintiffs' Title IX heightened risk claims did not accrue until the publication of the Husch Blackwell report in March 2021 and, as such, are timely.[55]  Thus, the only issue before the Court is whether the Board of Supervisors has shown that Brennan cannot meet the elements of her heightened risk claims.  For the reasons set forth below, the Court finds that Brennan has raised a genuine issue of material fact as to each of the elements of her perpetrator-based heightened risk claim and her policy-based heightened risk claim and that the Board of Supervisors is not entitled to summary judgment.

### A. Brennan's Perpetrator-Based Heightened Risk Claim

#### 1. Element one: Whether the Board of Supervisors had actual knowledge of John Doe's harassment.

The Fifth Circuit has held that the first element, actual knowledge, "means that the school must have actual, not constructive, knowledge of sexual harassment." [56]  "Specifically, the school must have actual knowledge that

---

[53] R. Doc. 470-17 at p. 5 (*citing* R. Doc. 469-14 at p. 10) (emphasis in original).

[54] R. Doc. 470 at ¶ 4; R. Doc. 470-17 at pp. 21-23.

[55] R. Doc. 340 at p. 20 (citing *Doe 1 v. Baylor University*, 240 F. Supp. 3d 646, 663 (W.D. Tex. 2017)).

[56] *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022) (citing *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 650, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999); *K.S. v. Nw. Indep. Sch. Dist.*, 689 Fed.Appx. 780, 784 (5th Cir. 2017)).

harassment has occurred, is occurring, or that there is a 'substantial risk that sexual abuse would occur.'"[57]  According to the Fifth Circuit, "liability requires that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[58]  The Fifth Circuit has also held that for a school to have "actual knowledge" of harassment, an "appropriate person" – "an official [with] authority to address the alleged discrimination and to institute corrective measures" – must have actual knowledge of the discrimination and an opportunity to rectify it.[59]

The evidence before the Court clearly raises a genuine issue of fact regarding whether the Board of Supervisors had actual knowledge of Doe's sexual assault on at least one other student in January 2016, only months before when John Doe took the nude photograph of Brennan in July 2016.  The Court further finds this fact, whether the Board of Supervisors had actual knowledge, is material to Brennan's perpetrator-based heightened risk claim as both parties recognize that it is an essential element of the claim.  Plaintiffs allege in the Second Amended Complaint that Mize-Robertson was raped by John Doe on or about January 22, 2016, that she told a few close friends about the rape, including someone on the LSU swimming and diving team, that the friend told her own mother about the rape, that the mother told the diving coach about the rape, and that the diving coach told Miriam Segar about it on January 26,

---

[57] *Roe*, 53 F.4th at 341 (quoting *M.E. v. Alvin Indep. Sch. Dist.*, 840 Fed.Appx. 773, 775 (5th Cir. 2020)) (internal quotation marks omitted).

[58] *Roe*, 53 F.4th at 341 (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 659 (5th Cir. 1997)).

[59] *Doe v. Edgewood Ind. Sch. Dist.*, 964 F.3d 351, 358-59 (5th Cir. 2020) (quoting *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998)).

2016.[60]  Plaintiffs allege that Associate Vice President and Dean of Students Mari Fuentes-Martin was also made aware of the alleged rape, as she emailed Mize-Robertson on February 1, 2016 to ask if Mize-Robertson wanted to proceed with a Title IX investigation.[61]  The Board of Supervisors submitted a copy of Fuentes-Martin's February 1, 2016 email to Mize-Robertson as an exhibit to its Motion.[62]  In the email, Fuentes-Martin describes her role at LSU as "Deputy Title IX Coordinator for student cases" and confirms that she spoke to Senior Associate Athletics Director and Senior Woman Administrator for LSU Miriam Segar regarding a recent "incident" involving Mize-Robertson.[63]  Fuentes-Martin further advises that the incident can be handled "administratively within LSU as a policy violation under Permanent Memorandum 73 (PM-73-Sexual Misconduct)."[64]   The evidence before the Court shows that Mize-Robertson responded to Fuentes-Martin's email stating that she had decided that she did not want an investigation to be performed.[65]  In the Second Amended Complaint Plaintiffs allege that Segar was a "Responsible Employee" required to report all disclosures of sexual assault to LSU's Title IX office.[66]  In its Statement of Undisputed Material Facts, the Board of Supervisors admits that LSU, through Segar, was already aware of Mize-Robertson's alleged assault by Doe prior to Brennan's allegations regarding Doe, but states that, "at most,

---

[60] R. Doc. 182 at ¶¶ 248-254.
[61] *Id*. at ¶ 259.
[62] R. Doc. 470-4 at p. 16.
[63] *Id*.; *See*, R. Doc. 182 at ¶ 20.
[64] R. Doc. 470-4 at p. 16.
[65] R. Doc. 481-9 at pp. 2-3; R. Doc. 470-4 at pp. 9, 11, 12-13.
[66] R. Doc. 182 at ¶ 304.

Segar knew of a possibility of an alleged assault."[67] The Board of Supervisors argues that Mize-Robertson, "as the only person with knowledge of what occurred, deprived LSU of 'actual knowledge' when she chose not to participate in the Title IX process."[68] The Board of Supervisors puts forth the same argument in its Reply brief, stating that, "LSU received no account from Mize [Robertson] of her alleged assault or that Doe was her perpetrator.   Thus, Brennan fails to show how LSU had 'actual knowledge' of what occurred to Mize [Robertson]."[69]   Further, in its Reply brief, the Board argues, though it is unclear as to which factor it directs the argument, that Owens "lacks evidence that discipline to Doe following Mize-Robertson's incident would have stopped Brennan from meeting him at an off-campus bar, from allowing him to come to her off-campus apartment, and from standing naked while he took her picture."[70]

Plaintiffs submitted a portion of the Husch Blackwell report with their Opposition brief, which likewise shows that Segar knew in January 2016 of Mize-Robertson's allegation that she was sexually assaulted by John Doe, Segar reported the incident to then-Assistant Vice President, Human Resource Management and Deputy Title IX Coordinator, Gaston Reinoso, and Reinoso told Segar that she should contact Fuentes-Martin to discuss the matter.[71]   The portion of the Husch Blackwell report submitted by Plaintiffs further shows that Segar and Fuentes-Martin

---

[67] R. Doc. 470-18 at p. 6.
[68] R. Doc. 470-17 at p. 7.
[69] R. Doc. 492 at p. 5.
[70] *Id.* at p. 2.
[71] R. Doc. 481-9 at pp. 1-2.

conferred and that Segar made a written Title IX report on January 29, 2016.[72] According to the Husch Blackwell report, "There is nothing in the file materials documenting how the University arrived at is decision to not move forward with an investigation; although, given the circumstances, this was a reasonable decision. However, and significantly, none of the Title IX records regarding this incident mention [redacted] as the respondent."[73]  The Husch Blackwell report further indicates that Segar stated she did not include John Doe's name in the Title IX report because, "I got a lot of public information requests . . . [and] didn't think it was super secure."[74]  Segar similarly testified during her deposition that she was given John Doe's name as Mize-Robertson's assailant but she did not include John Doe's name in the report because "everybody knew the people because I had already told them who the people were,"[75] and because "at the time, we really didn't put - - we tried not to put student athlete names whether we were filing - - and students - - whether we were filing a report with - - for an NCAA violation or whatever, a summary, we didn't often - - we didn't always include it because of public records requests and different things."[76]

Based upon the foregoing evidence, the Court finds that Plaintiffs have raised a genuine dispute of a material fact, namely whether the Board of Supervisors had actual knowledge, through Segar and Fuentes-Martin, of John Doe's alleged rape of

---

[72] R. Doc. 481-9 at p. 2.
[73] *Id*. at p. 3.
[74] *Id*.
[75] R. Doc. 470-6 at p. 7.  *See, Id*. at pp. 10-11.
[76] R. Doc. 470-6 at p. 11.

Mize-Robertson in January 2016, prior to John Doe allegedly taking the nude photograph of Brennan in July 2016. Summary judgment on this basis is therefore precluded.

### 2. Element two: Whether the Board of Supervisors exercised substantial control over John Doe and the context in which the harassment occurred.

To satisfy the second element of her heightened risk claim, Brennan must show that the Board of Supervisors "exercises substantial control over both the harasser and the context in which the known harassment occurs."[77] The Board of Supervisors argues that Brennan cannot satisfy the control element because her alleged harassment occurred at her off-campus apartment and the nude photograph was allegedly taken on John Doe's personal cell phone, over which LSU had no authority.[78] The Board of Supervisors cites out-of-circuit authority to support its position that student-on-student sexual harassment that occurs off campus is not under the control of the university unless it is at an off-campus facility that the university controls.[79]

Plaintiffs do not dispute their allegation that John Doe took the photograph of Brennan at her off-campus apartment. Instead, Plaintiffs cite out-of-circuit authority indicating that the control element is a "fact specific question" and that a school's disciplinary authority over a student can satisfy the control element.[80] Plaintiffs

---

[77] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 644-45, 119 S.Ct. 1661, 1672, 143 L.Ed.2d 839 (1999).
[78] R. Doc. 470-17 at p. 8.
[79] *Id*. at p. 8, n.17 (citing authority).
[80] R. Doc. 481 at pp. 9-13 (citing authority).

contend that "context" is "broader than the specific location where the harassment occurs—something more like the 'circumstances' or 'conditions' of the abuse'" and may include "where the University permitted a hostile environment for female students to flourish."[81] Plaintiffs further assert that the Board of Supervisors had sufficient control over John Doe and the context of the sexual misconduct through its disciplinary authority, which it exercised through "its PM-73 Title IX policies and its Student Code of Conduct."[82]  Brennan likewise asserts that the Board of Supervisors had sufficient control over John Doe and the context of her alleged harassment because LSU had regulatory authority over the apartment where the incident occurred, as well as over the broader school environment, through its Student Code of Conduct.[83]  Brennan also cites a decision from another Section of this court, wherein the court found an actionable Title IX heightened risk claim where the assailant was a university student subject to the school's codes of conduct and the alleged rape occurred at an off-campus apartment.[84]  In response, the Board of Supervisors argues that Brennan's Opposition "alleges no disputed facts relating to Brennan."[85]

---

[81] R. Doc. 481 at p. 12.
[82] R. Doc. 481 at pp. 10-11 (*citing* R. Docs. 481-13, 481-14, & 481-4).  According to the evidence submitted by Plaintiffs, "PM-73 Title IX policies" refers to Permanent Memorandum No. 73 issued by LSU's then-President, F. King Alexander, titled "Title IX and Sexual Misconduct Policy," which had an effective date of June 18, 2014 (R. Doc. 481-13).  That policy was superseded by Permanent Memorandum No. 73, which was also issued by President F. King Alexander and had an effective date of December 15, 2015. (R. Doc. 481-14).
[83] R. Doc. 481 at p. 13.
[84] *Id*. at pp. 14-15 (citing *Doe v. Bd. Of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 467-69 (M.D. La. Jan. 10, 2023)).
[85] R. Doc. 492 at p. 5.

Having reviewed the cases cited by both parties, the Court is not persuaded by the authority cited by the Board of Supervisors that a sexual assault occurring off-campus cannot satisfy the control element of a heightened risk claim.  The Supreme Court has made clear that, "recipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority."[86]  Further, the Court in *Davis* took pains to define terms in Title IX, including "under the operations of a funding recipient" and "the harassment must take place in a context subject to the school district's control." [87]  The Court further noted that Webster's Third New International Dictionary defines "under" as "in or into a condition of subjection, regulation, or subordination" and that Random House Dictionary defines "under" as "subject to the authority, direction, or supervision of."[88]

Here, Plaintiffs have gone beyond the pleadings and provided the Court with a copy of LSU's Student Code of Conduct, which states that, "The University shall have discretion to extend jurisdiction over conduct that occurs off campus when the conduct adversely and significantly affects the learning environment or University community and would be in violation of the Code if the conduct had occurred on campus…" and when the alleged conduct involves "members of the University

---

[86] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 646-47, 119 S.Ct. 1661, 1673, 14 L.Ed.2d 839 (1999).
[87] *Id.*, 526 U.S. at 644-647, 119 S.Ct. at 1672-73.
[88] *Id.*, 526 U.S. at 645, 119 S.Ct. at 1672.

community . . . ."[89]  The Student Code of Conduct also defines "campus" broadly to include "all land, buildings, property, and facilities in the possession of, owned by, used by, or controlled by the University," as well as "land leased to others, property owned, managed or maintained by the University, and all streets, alleys, sidewalks, and public ways adjacent to any land of the University or the land upon which housing is located even if the housing is not owned by the University."[90] The Court has also been provided with LSU's Title IX and Sexual Misconduct Policy, effective December 15, 2015, which states:

> This policy shall apply to conduct that occurs on an LSU campus, at LSU sponsored activities, and/or when the student or employee is representing LSU.  LSU shall have discretion to extend jurisdiction over conduct that occurs off campus when the conduct adversely or significantly affects the learning environment or LSU community and would be a violation of this policy and/or any applicable campus policy or code of conduct, if the conduct had occurred on campus. . . LSU may extend jurisdiction (over off-campus conduct) if the alleged conduct by the student or employee:
> (1) involved violence or produced a reasonable fear of physical harm; and/or
> (2) involved any other members of the LSU community or any academic work, records, documents, or property of LSU.[91]

While the Board of Supervisors contests Plaintiffs' assertion that it had control over the context of Brennan's alleged sexual assault, it does not contest their assertion that the Board of Supervisors had disciplinary authority through its policies over John Doe as a student and student-athlete.[92]  Instead, the Board of Supervisors disputes whether a school's right to discipline equates with 'control' over any

---

[89] R. Doc. 481 at p. 13 (*citing* R. Doc. 481-4 at p. 7).
[90] R. Doc. 481-4 at p. 4.
[91] R. Doc. 481-14 at p. 2.
[92] *See*, R. Doc. 492 at pp. 5-6; R. Doc. 470-18, p. 9.

context.[93]   Further, while not directly conceding the point, the Board of Supervisors acknowledges in its Statement of Undisputed Material Facts that LSU officials Segar and Fuentes-Martin reached out to Mize-Robertson in an effort to pursue an investigation, thereby acknowledging that LSU could proceed with an investigation for an incident that occurred off-campus. [94]   The Board of Supervisors further acknowledge that Fuentes-Martin reached out to Mize-Robertson by email to advise her of "the services provided by LSU to address Mize's concerns, to offer medical and psychological care, to offer academic support, and to discuss options for investigating the incident,"[95] again seemingly acknowledging LSU's ability to provide resources to a student for off-campus incidents.

Without clear guidance from the Fifth Circuit regarding whether sexual assault that occurs off-campus can satisfy the control element, the Court finds persuasive decisions from district courts in this Circuit which have found that off-campus rape and assault "*is* actionable, particularly when the university is actually aware of prior assaults by the *same* student-attacker."[96]   While those cases were in a different posture than the instant matter, as they involved motions to dismiss rather than motions for summary judgment, the Court nonetheless finds them persuasive.

---

[93] *Id.*

[94] R. Doc. 470-18 at pp. 6-8.

[95] *Id.* at p. 7.

[96] *Doe v. Bd. Of Supervisors of Univ. of La. System*, 650 F. Supp. 3d 452, 468 (M.D. La. 2023) (emphasis in original) (citing *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 610-12 (W.D. Tex. 2017) (student-plaintiff stated actionable heightened risk *and* post-reporting claims based on sexual assault that occurred at 'an off-campus party,' where the university knew of prior reports of sexual assault committed by the same student-attacker); *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 883 (W.D. Tex. 2019) (actionable Title IX claims based on assaults occurring at off-campus apartment and a restaurant parking lot); *Doe I v. Baylor Univ.*, 240 F. Supp. 3d 646, 654 (W.D. Tex. 2017) (actionable Title IX claims based on sexual assault occurring "at a house near campus")).

The Court further finds that Plaintiffs have raised a genuine issue of material fact regarding whether the Board of Supervisors exercised substantial control over both John Doe and the context in which his alleged sexual assault of Brennan occurred based upon its Title IX policies and its Code of Student Conduct.  Accordingly, the Board of Supervisors has failed to show that it is entitled to summary judgment on the basis that Plaintiffs cannot establish the control element of Brennan's perpetrator-based heightened risk claim.

### 3. Element three: Whether the harassment was based upon Brennan's sex.

The third element of a heightened risk claim is whether the harassment was based on the victim's sex.[97]  While the Board of Supervisors recognizes this as the third element of a heightened risk claim in its Motion and asserts that Brennan cannot establish any of the elements of her heightened risk claim,[98] the Board does not make any argument or conduct an analysis of this element.[99]  In fact, the Board of Supervisors skips over this element entirely in its analysis of Brennan's heightened risk claim.[100]  As such, the Board of Supervisors has failed to make any showing that Brennan cannot satisfy the third element of her claim, and is therefore not entitled to summary judgment on that basis.

---

[97] *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F. 4th 334, 341 (5th Cir. 2022) (citing *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011)).  *See, Doe*, 650 F. Supp. 3d at 468 ("Despite their differences, the same elements define Plaintiff's heightened-risk claim and her post reporting claim.  *See Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341-42 (5th Cir. 2022).").
[98] R. Doc. 470 at ¶ 2; R. Doc. 470-17 at p. 5.
[99] *See, generally*, R. Doc. 470-17 at pp. 5-24.
[100] *See, Id*. at pp. 5-9.

**4. Element four: Whether the harassment was "so severe, pervasive, and objectively offensive" that it effectively barred Brennan's access to an educational opportunity or benefit.**

The Supreme Court has concluded that a defendant can be held liable for damages under Title IX "only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."[101]  The Supreme Court has also suggested, without deciding, that a single instance of sufficiently severe one-on-one peer harassment is unlikely to satisfy the "severe, pervasive, and objectively offensive" standard.[102]  Nonetheless, the Fifth Circuit in *Roe v. Cypress-Fairbanks Independent School District* recognized a circuit split regarding whether a single instance of sufficiently severe one-on-one peer harassment could ever rise to the level of "pervasive" harassment.[103]  The Fifth Circuit pointed out that while three circuits have held that "pervasive" student-on-student harassment for Title IX purposes requires multiple incidents of harassment,[104] four circuits have held that students must demonstrate only that a school's deliberate indifference made harassment more

---

[101] *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 650, 119 S.Ct. 1661, 1675, 143 L.Ed.2d 839 (1999); *See, Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 342 (5th Cir. 2022) (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011)) (same).

[102] *Davis*, 526 U.S. at 652-53, 119 S.Ct. at 1676.

[103] *Roe*, 53 F.4th at 342 (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 652-53, 119 S.Ct. 1661, 14 L.Ed.2d 839 (1999)).

[104] *Roe*, 53 F.4th at 342-43 (citing *Kollaritsch v. Mich. Stat Univ. Bd. Of Trustees*, 944 F.3d 613, 620 (6th Cir. 2019); *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058 (8th Cir. 2017); *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000)).

likely, not that it actually led to any additional post-notice incidents of harassment.[105] Without weighing-in on the circuit split, the Fifth Circuit in *Roe* concluded that a reasonable jury could conclude that the harassment experienced by the plaintiff in its case was pervasive "no matter on which side of the circuit split we fall."[106]

The Board of Supervisors argues that Brennan cannot satisfy the fourth element of her heightened risk claim because the single photograph allegedly taken by John Doe does not meet the Title IX standard for being "severe, pervasive, and objectively offensive" harassment.[107]  In contrast, Plaintiffs argue that a single incident of sexual assault is sufficient to give rise to a Title IX violation.[108]  Plaintiffs cite mostly out-of-circuit authority to support their position.[109]

Without clear guidance from the Fifth Circuit on this issue, the Court finds that whether the harassment Brennan experienced by John Doe – who allegedly took a nude photograph of Brennan, while she was intoxicated and without her consent,[110] and showed it to other people – was so severe, pervasive, and objectively offensive that it effectively barred Brennan's access to an educational opportunity or benefit offered by LSU is a question of fact that should be left to the jury.  The Court further finds that a reasonable jury could find that the alleged harassment rises to the level

---

[105] *Roe*, 53 F.4th at 343 (citing *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F. 4th 257, 275 (4th Cir. 2021); *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1108 (10th Cir. 2019); *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172 (1st Cir. 2007), *rev'd and remanded on other grounds*, 555 U.S. 246, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009); *Williams v. Bd. Of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1295-97 (11th Cir. 2007)).

[106] *Roe*, 53 F.4th at 343.

[107] R. Doc. 470-17 at p. 9 (quoting *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 652, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

[108] R. Doc. 481 at p. 16 (*citing* R. Doc. 480 at p. 22 (*citing* R. Doc. 485 at pp. 11-16)).

[109] *See*, R. Doc. 485 at p. 12, n.87 (citing authority).

[110] R. Doc. 182 at ¶ 298; R. Doc. 470-1 at pp. 33, 35-36, & 47-49.

of severe, pervasive, and objectively offensive, especially where the Board of Supervisors knew of John Doe's prior alleged rape of Mize-Robertson.[111]  Importantly, and despite assertions from the Board of Supervisors to the contrary, Brennan does not the allege that the harassment involved "a single act."[112]  Plaintiffs have alleged not only that John Doe took a nude photograph of Brennan, but that he "shared it with the football team."[113]  Brennan, by her own deposition, disputes the Board of Supervisor's claim that the photograph was not shared and, instead, testified, " . . . there's no way those are the only ones who saw it since [redacted name] is the one who told me it was going around. I believe more people saw it than just those two, but it might not have been sent outside of that group."[114] Brennan further contends that a co-worker was the person to informed her of the photograph and that it had been shared with others.[115] Brennan testified during her deposition that the photograph was taken without her consent after she had been drinking and that several people had seen it,[116] including one of her coworkers in the LSU recruiting office.[117]  Because there is evidence before the Court indicating that John Doe took the nude photo and then disseminated the photograph to others, the Court finds the

---

[111] *See, Davis*, 526 U.S. 652, 119 S.Ct. at 1676 ("The dropoff in LaShonda's grades provides necessary evidence of a potential link between her education and G.F.'s misconduct, but petitioner's ability to state a cognizable claim here depends equally on the alleged persistence and severity of G.F.'s actions, *not to mention the Board's alleged knowledge and deliberate indifference*.") (emphasis added).

[112] R. Doc. 470-17 at pp. 9-10.

[113] R. Doc. 182 at ¶ 297.

[114] R. Doc. 481-1, p. 3, referencing Brennan's deposition testimony 151: 17-23.

[115] *Id.*

[116] R. Doc. 470-1 at pp. 31-32 & 42.  *See also*, R. Doc. 367-1 at pp. 31-32 & 42 (sealed, unredacted version of Brennan's deposition testimony).

[117] R. Doc. 470-2 at pp. 1, 11, 12, & 13.  *See also*, R. Doc. 367-2 at pp. 1, 11, 12, & 13 (sealed, unredacted version of Brennan's deposition testimony).

facts of this case distinguishable from the in-circuit authority cited by the Board of Supervisors.[118]  While it is not appropriate to weight evidence or judge credibility at this point, Brennan has raise a genuine issue for trial regarding the severity, pervasiveness, and objectively offensiveness of the taking and sharing of the nude photograph. As a result, the Board of Supervisors is not entitled to summary judgment on the basis that Brennan cannot establish that her harassment was sufficiently pervasive, severe, and objectively unreasonable.

The Court further finds that a genuine issue of material fact exists as to whether Brennan can show that the alleged harassment effectively barred her access to an educational opportunity or benefit.  Plaintiffs allege that Brennan left the LSU recruiting team in August 2016 "because of intense feelings of humiliation and shame resulting from John Doe distributing a nonconsensual nude photograph of her," that Brennan "could not attend classes without hearing classmates cheer on John Doe," and that the "intense depression and lack of self-worth Brennan felt, caused by John Doe's distribution of her nude photograph without her consent, LSU's lack of

---

[118] R. Doc. 470-17 at p. 9, nn. 20, 23, 24 (citing *Lewis v. La. State Univ.*, Civ. A. No. 21-198-SM-RLB, 2021 WL 5752239, at *19-20 (M.D. La. Dec. 2, 2021) (Morgan, J.) (explaining that, "Title IX hostile environment cases are based on unwelcome sexual advances so severe and pervasive as to interfere with a student's educational atmosphere and opportunities," and ultimately concluding that, "Plaintiff has no hostile environment claim under Title IX because she clearly is not a student and she has never alleged she was subjected to unwelcome sexual advances.") (citations omitted); *Carmichael v. Galbraith*, 574 Fed.Appx. 286, 289-90 (5th Cir. 2014) (citing *Davis*, 526 U.S. at 652-54, 119 S.Ct. 1661) (affirming the district court's dismissal of plaintiff's Title IX claim based upon single videotaped incident in which thirteen-year-old middle schooler was stripped nude by members of the football team, tied up, placed into a trash can, and called homosexual slurs); *Ariel B. ex rel. Deborah B. v. Fort Bend Indep. Sch. Dist.*, 428 F. Supp. 2d 640, 648 (S.D. Tex. 2006) (finding that the actions of a male student in pulling down a thirteen-year-old student's top and touching her breast while another male student took a photograph "although inappropriate and offensive, the boy's alleged conduct on that one occasion does not rise to the level of severe and pervasive sexual harassment that would trigger Title IX protections.").

response, and the subsequent public support of John Doe caused Brennan to leave LSU."[119]  During her deposition, Brennan testified that she left the recruiting office because she was not sure who had seen the nude photograph and she "couldn't handle walking through the halls of that office wondering who's seen me butt naked."[120] Brennan further explained that John Doe, "practices in the same building.  It's all one organization, is what I kind of felt," and that while he was not part of the recruiting office, "the practice field was downstairs.  There's players walking in and out all the time, coaches.  It's all one building.  It's one house and the same - - the same work environment."[121]  Brennan further testified that if this incident had not happened, then "absolutely, I would have continued with my job there."[122]  Brennan testified that, "just having to be in an environment that 100,000 people cheered on this terrible person's name on a Saturday night.  That's why I ended up leaving."[123]

The Board of Supervisors argues that Brennan's deposition testimony refutes her claim that the taking and dissemination of the nude photograph was so severe, pervasive, and objectively offensive that it effectively barred Brennan's access to an educational opportunity or benefit because she testified that only two people saw the photograph, that she had no complaint with how LSU responded to her situation at the time, and that she attended LSU football games in the fall of 2016 while John Doe was a player.[124]  The Board of Supervisors further asserts that, other than not

---

[119] R. Doc. 182 at ¶¶ 316-317.
[120] R. Doc. 481-5 at p. 32.
[121] *Id*. at p. 34.
[122] *Id*.
[123] R. Doc. 481-5 at pp. 40-41.
[124] R. Doc. 470-17 at p. 16 (*citing* R. Doc. 470-2 at pp. 1, 10, 11, 12, 15, 16-17, 18-19, & 33).

enrolling in classes in the fall of 2016, Brennan did not remove herself from the LSU area, as she testified that she lived in housing near campus, worked in a bar near campus, and attended games.[125]  The Board of Supervisors does not dispute that Brennan did not enroll in classes in the fall of 2016. The Board of Supervisors claims that Brennan had only attended one semester of classes at LSU in the Spring of 2016, after which she was placed on formal scholastic warning due to her 1.98 GPA, which predated the alleged harassment by John Doe in July 2016.[126] The Board of Supervisor's arguments address the extent of Brennan's withdrawal from the environment as well as potential other reasons for her withdrawal, all of which are disputed by Brennan. Resolving this dispute will require credibility determinations and the weighing of evidence, which the Court cannot do in the context of a summary judgment motion. When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[127]

Based upon the foregoing evidence, and while refraining from making credibility determinations or weighing the evidence, the Court finds that there exists a genuine issue of material fact regarding whether Brennan's alleged sexual assault by John Doe was so severe, pervasive, and objectively offensive that it effectively

---

[125] R. Doc. 470-17 at p. 16 (*citing* R. Doc. 470-2 at pp. 8, 16-17, 18-19, & 33).

[126] R. Doc. 470-17 at p. 16 (*citing* R. Doc. 470-11 at ¶ 8).  The Court notes that the Board of Supervisors cited "Sanders Decl. ¶ 8, Exh. 3" to support these assertions, but did not submit any numbered exhibits with its Motion.  Instead, the Board of Supervisors labeled its exhibits A, A, A, B, C, D, D, E, F, G, H, H, H, H, H, and H (R. Docs. 470-1 through 470-16), forcing the Court to spend additional time combing through the record in search of the exhibit cited, which the Court ultimately found.

[127] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

barred Brennan's access to an educational opportunity or benefit.  Thus, the Board of Supervisors is not entitled to summary judgment on the basis that Brennan cannot establish this element of her heightened risk claim.

### 5. Element five: Whether the Board of Supervisors was deliberately indifferent to the harassment.

The fifth element of a heightened risk claim, deliberate indifference, is "a high bar, and neither negligence nor mere unreasonableness is enough."[128]  The deliberate indifference element is met where the school's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."[129]  The Fifth Circuit has cautioned that, "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . ."[130]  Additionally, Fifth Circuit precedent makes clear "that negligent delays, botched investigations of complaints due to the ineptitude of investigators, or responses that most reasonable persons could have improved upon do not equate to deliberate indifference."[131]  The Fifth Circuit has held that courts should afford broad deference to school officials and should not second-guess the disciplinary decisions made by school administrators.[132]

---

[128] *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) (citing *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 642, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).  *See, Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022) (same).

[129] *Davis*, 526 U.S. at 648, 119 S.Ct. at 1674.  *See, Roe*, 53 F.4th at 341 (quoting *Sanches*, 647 F.3d at 167) (same).

[130] *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (quoting *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)) (internal quotation marks omitted).  *See also*, *Sanches*, 647 F.3d at 168 ("Ineffective responses . . . are not necessarily clearly unreasonable.")

[131] *I.F.*, 915 F.3d at 369 (citing authority) (internal quotation marks omitted).

[132] *Roe*, 53 F.4th at 341 (citing *Davis*, 526 U.S. at 648, 119 S.Ct. 1661).

The Board of Supervisors argues that its handling of Mize-Robertson's allegations of rape negates the deliberate indifference element for Brennan because Mize-Robertson chose not to move forward with an investigation and Segar and Fuentes-Martin provided Mize-Robertson with information about the services and resources available at LSU for victims of sexual assault.[133]  The Board of Supervisors points out that Mize-Robertson testified during her deposition that she did not think that LSU did anything wrong at that time.[134]  Relying upon out-of-circuit authority, the Board of Supervisors asserts that it cannot be held liable for a plaintiff like Mize-Robertson, who chooses not to participate in the Title IX process.[135]  According to the Board of Supervisors, Plaintiffs argue that LSU was deliberately indifferent when Miriam Segar failed to include John Doe's name in the internal Maxient Title IX report she filed regarding Mize-Robertson's alleged sexual assault and further suggest that Segar concealed John Doe's name.[136]  The Board of Supervisors contends that the undisputed evidence shows that Segar communicated John Doe's name to Fuentes-Martin and, therefore, did not conceal it from Title IX.[137]  The Board of Supervisors asserts that there is no Title IX obligation requiring the presence of John Doe's name in the internal, online submission, and that even if including his name in

---

[133] R. Doc. 470-17 at pp. 11-13.  The Court notes that the Board of Supervisors asserts that, "LSU's handling of Mize's situation, the only conduct by Doe prior to Owens' incident, negates Owens' deliberate indifference element."  *Id*. at p. 11.  The reference to "Owens" rather than "Brennan" appears to be a mistake.

[134] R. Doc. 470-17 at p. 13 (*quoting* R. Doc. 470-4 at p. 12).

[135] R. Doc. 470-17 at p. 14 (citing *Roskin-Frazee v. Columbia Univ.*, 474 F. Supp. 3d 618, 627 (S.D.N.Y. 2019); *JD1 v. Canisius Coll.*, Civ. A. No. 1:21-cv-521, 2022 WL 2308902, at *9 (W.D.N.Y. June 27, 2022) (Crawford, J.)).

[136] R. Doc. 470-17 at p. 14.

[137] *Id*. (*citing* R. Doc. 470-6 at pp. 4-8 & 10-11).  The Court notes that the Board of Supervisors also cites "SEGAR 000344" but fails to direct the Court to where this exhibit can be found in the record.

the reporting system would have been better practice, Title IX liability is not premised on whether LSU violated best practices.[138]

Plaintiffs assert that a genuine issue of material fact exists as to whether the Board of Supervisors was deliberately indifferent to Brennan's report of John Doe's sexual assault.[139] Plaintiffs claim that when Brennan initially reported the incident, "LSU told her the situation could be handled 'officially or unofficially,'" but failed to explain what that meant.[140] Plaintiffs further assert that no action was taken by LSU against John Doe for the harm he caused Brennan by circulating the nude photograph he took without her knowledge or consent.[141] The Board of Supervisor's Statement of Uncontested Material Facts acknowledge that LSU Associate Vice President and Dean of Student Fuentes-Martin stated she "thought the nude picture 'might' be a PM-73 case (the scope of which is broder than Title IX) . . . However, bease don the limited information known by the Title IX office at the time (because Brennan did not authorize disclosure to Title IX), Fuentes-Martin and Jennie Stewart, Title IX coordinator, documented the case as 'information only,' and closed the case to 'respect the wishes of the complainant.'"[142] LSU Title IX coordinator Steward further tesfied"that if other factors became known in the future, then they would take a different approach" regarding the nude photograph.[143] Plaintiffs also assert that LSU withheld the police report Brennan filed against John Doe until

---

[138] R. Doc. 470-17 at p. 14 (citing *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011)).
[139] R. Doc. 481 at pp. 17-18.
[140] *Id*. at p. 18
[141] *Id*. (*citing* R. Doc. 481-5 at p. 57).
[142] R. Doc. 470-18 at p. 5.
[143] *Id*.

December 2020, when she was forced to obtain a court order for its release.[144] Plaintiffs further claim that the police report, in addition to containing a time discrepancy, only documented one complaint of video voyeurism, despite Brennan's main complaint being related to John Doe's distribution of the nude photograph.[145] Plaintiffs assert that LSU's failure to document Brennan's complaint in full prevented her from pressing charges against John Doe, as the statute of limitations for video voyeurism was shorter than the statute of limitations for distribution of pornography.[146]  Plaintiffs argue that a reasonable juror could find that these actions amounted to deliberate indifference.

To the extent Plaintiffs claim that the Board of Supervisors was deliberately indifferent to *Brennan's* reports of sexual assault by John Doe, Plaintiffs' argument misses the mark.  Because Brennan has brought a heightened risk claim, the correct focus is on LSU's response to John Doe's alleged *prior* rape of Mize-Robertson and any risk that arose as a result thereof.[147]

Nonetheless, the evidence before the Court raises a genuine issue of material fact regarding whether the Board of Supervisors was deliberately indifferent in its

---

[144] R. Doc. 481 at p. 18 (*citing* R. Doc. 481-5 at pp. 49-50).

[145] R. Doc. 481 at p. 18 (*citing* R. Doc. 481-5 at pp. 51-52).

[146] R. Doc. 481 at p. 18 (*citing* R. Doc. 481-5 at p. 53).

[147] *See, Doe v. Bd. Of Supervisors of Univ. of Louisiana Sys.,* Civ. A. No. 22-00338-BAJ-SDJ, 2023 WL 143171, at *12 (M.D. La. Jan. 10, 2023) (Jackson, J.) ("Second, ULS's argument that Plaintiff fails to allege ULS's 'knowledge of the alleged prior acts of sexual misconduct by Silva is flatly contradicted by Plaintiff's Complaint, which specifically asserts that in April 2015 Dean Tapo—an 'appropriate person' under Title IX, with authority to investigate and respond to allegations of sexual assault— *knew* of Silva's prior rape arrest, yet failed to conduct any investigation whatsoever, and instead responded by placing Silva on disciplinary probation.  These allegations establish ULS's actual knowledge of unlawful harassment *and*—based on ULS's alleged inaction—deliberate indifference to the same (for reasons already explained.).") (internal citation omitted).

response to Mize-Robertson's allegation that she was raped by John Doe.  The Court has already determined that the Board of Supervisors had actual knowledge of the alleged rape through Segar and Fuentes-Martin, who were aware of Mize-Robertson's allegations and knew the identities of the students involved. [148] The Board of Supervisors has conceded that it was made aware of Mize-Robertson's alleged assault by Doe prior to Brennan's incident.[149] The evidence before the Court also shows that Segar intentionally omitted John Doe's name from her written Title IX report regarding Mize-Robertson's allegations that was filed in the Maxient electronic reporting system in order to avoid public records requests.[150]

> Segar testified that:
>
> And at the time, we really didn't put - - we tried not to put student athlete names whether we were filing - - and students - - whether we were filing a report with - - for an NCAA violation or whatever, a summary, we didn't often - - we didn't always include it because of public records requests and different things. . . .So, it was that was just how we did it back then and – this is what I referenced [151]

Additionally, the Husch Blackwell report contains the following entry regarding LSU's response to Mize-Robertson's allegations of rape:

> There is nothing in the file materials documenting how the University arrived at its decision to not move forward with an investigation; although, given the circumstances, this was a reasonable decision. However, *and significantly*, none of the Title IX records regarding this incident mention [John Doe] as the respondent.  When asked why [John Doe's] name was not included in the written report Segar initially submitted the Fuentes Martin, Segar stated, she "didn't want to put it in writing" because "I got a lot of public information requests" and

---

[148] R. Doc. 470-6 at pp. 6-8 & 10-11.
[149] R. Doc. 470-18.
[150] *Id*. at pp. 10-11.
[151] *Id*. at p. 11.

"didn't think it was super secure." She added, "I just wanted to call and talk to people." In an interview with Husch Blackwell, Fuentes Martin confirmed that Segar verbally identified [John Doe] to her, and Fuentes Martin was "surprised that [John Doe's] name was not in the file."[152]

The Board of Supervisors' argument that it acted in a manner that respected Mize-Robertson's wishes and therefore cannot "be liable for a plaintiff who chooses not to participate in the Title IX process" misses the mark.[153] Under this argument, the Board of Supervisors would have no responsibility to discipline a student for conduct, regardless of the circumstances, if that was not the victim's wishes. Not only does that argument fly in the face of common sense, it also completely ignores LSU's own Title IX and Sexual Misconduct Policy, effective December 15, 2015, which states that, "Notice of a complaint may or may not come from a formal complaint," and, further, provides that "at any time after becoming aware of a complaint" the campus Title IX officials may recommend that interim protections or remedies be provided.[154] The remedies include "issuing a timely warning to the campus community, separating the parties, placing limitation on contact between the parties, interim suspension from campus, or making alternative workplace, classroom, course scheduling, dining, or student housing arrangements."[155] The Board of Supervisors' argument that Mize-Robertson testified in her deposition that she did not believe LSU did anything wrong is also a non-starter. The Board of Supervisors has not pointed to any legal support for its proposition that a victim's assessment of

---

[152] R. Doc. 481-9 at p. 3 (emphasis added).
[153] R. Doc. 470-17 at p. 14.
[154] R. Doc. 481-14 at p. 7.
[155] *Id.*

wrongdoing, or lack thereof, of a school for a Title IX violation is controlling, nor has the Court found any such support.

The Court rejects the Board of Supervisors' argument that the failure of LSU to include Doe's name in the online report of Mize-Robertson's alleged rape "falls far short of the legal standard for Title IX liability" to show deliberate indifference and is more akin to an erroneous action.[156]  Segar's testimony alone makes clear that she intentionally withheld John Doe's name from the official Title IX reporting system, and did so because he was an athlete.  She also testified that:

> at the time, we really didn't put - - we tried not to put student athlete names whether we were filing - - and students - - whether we were filing a report with - - for an NCAA violation or whatever, a summary, we didn't often - - we didn't always include it because of public records requests and different things. . . So, it was that was just how we did it back then and – this is what I referenced.[157]

The Court finds that the foregoing evidence raises a genuine dispute regarding whether the Board of Supervisors was deliberately indifferent to Mize-Robertson's allegation that she was raped by John Doe.  While Mize-Robertson chose not to pursue an investigation, a reasonable juror could find that the withholding of John Doe's name from Segar's Title IX report and LSU's failure to comply with its own Title IX and Sexual Misconduct Policy by instituting any of the remedies available to it constitutes deliberate indifference by the Board of Supervisors.  As explained by another Section of this Court, "Confronted with a report of rape, law and policy

---

[156] R. Doc. 470-17 at p. 14.
[157] R. Doc. 470-6 at p. 11.

converge: the school *cannot* 'turn a blind eye to that harassment.'"[158]  The evidence before the Court suggests that LSU turned a blind eye to Mize-Robertson's allegations of rape.  As such, the Motion is denied to the extent the Board of Supervisors asserts that Brennan cannot satisfy the fifth element of her heightened risk claim.

### B. Brennan's Policy-Based Heightened Risk Claim

In addition to a perpetrator-based heightened risk claim, Plaintiffs assert that the Board of Supervisors' handling of reports of sexual assault created a heightened risk of sexual assault because "LSU knew of and permitted a campus condition rife with sexual misconduct, and sexual misconduct was rampant on campus."[159] Plaintiffs allege that the Board of Supervisors had an official policy, practice, and/or custom of deliberate indifference through which it cultivated a culture of silence by failing to: report complaints of sex-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits or grievance procedures.[160]  Specifically, Plaintiffs assert that the Board of Supervisors failed to properly train employees in their Title IX reporting obligations, failed to ensure employee compliance with Title IX Policy, failed to report complaints of sex-based discrimination, and failed to initiate and/or conduct adequate investigations and grievance procedures under Title IX.[161]

---

[158] *Doe v. Bd. Of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 470 (M.D. La. 2023) (quoting *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1104 (10th Cir. 2019)).
[159] R. Doc. 182 at ¶¶ 917-921.
[160] *Id.* at ¶ 926.
[161] *Id.* at ¶¶ 922 & 926.

Although not specifically asserted by either party, both parties seem to recognize that there is no Fifth Circuit authority regarding the analytical framework applicable to policy-based heightened risk claims.[162]  The parties seem to agree that a policy-based heightened risk claim requires a plaintiff to prove the following four elements: (1) the institution maintained a policy of deliberate indifference to reports of sexual misconduct; (2) which created a heightened risk of sexual harassment that was known or obvious; (3) in a context subject to the school's control; and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school.[163]  The Court will address each factor in turn.

### 1. Element one: Whether the Board of Supervisors had a policy of deliberate indifference to reports of sexual misconduct.

The Board of Supervisors asserts that it is entitled to summary judgment on Brennan's policy-based heightened risk claim because Brennan cannot establish that LSU had an official policy of deliberate indifference to reports of sexual misconduct.[164]  The Court disagrees.  "The Supreme Court has repeatedly explained that where the Title IX violation in question is caused by an institution's discriminatory policy or

---

[162] *See,* R. Doc. 470-17 at p. 17; R. Doc. 481 at pp. 18-19 (*citing* R. Doc. 480 at pp. 14-19).

[163] R. Doc. 470-17 at pp. 17-21 & nn.43, 46, 48 (citing *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1112 (9th Cir. 2020); *Doe v. Texas A&M Univ.*, 634 F. Supp. 3d 365, 376 (S.D. Tex. 2022); *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1174 (10th Cir. 2007)); R. Doc. 481 at pp. 18-19 (*citing* R. Doc. 480 at pp. 14-15 (quoting *Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 35 F.4th 459, 464-65 (6th Cir. 2022), cert. denied sub nom. *Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Doe*, 143 S.Ct. 574, 214 L.Ed.2d 340 (2023))) (internal quotation marks omitted).  The Court notes that the Board of Supervisors lists the fourth element as "causation."  R. Doc. 470-17 at p. 21.

[164] R. Doc. 470-17 at pp. 17-20.

custom, courts need not apply the actual notice and deliberate indifference framework typically used in cases involving institutional liability for sexual harassment or assault."[165]  "In evaluating such claims, courts must consider whether the defendant-institution's policy or custom inflicted the alleged injury."[166]

In its Motion, the Board of Supervisors recognizes that:

"a funding recipient can be said to have 'intentionally acted in clear violation of Title IX' when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient."[167]

Plaintiffs have gone beyond the pleadings and produced an overwhelming amount of evidence beyond the pleadings that raises a genuine issue of material fact regarding whether the Board of Supervisors maintained a policy of deliberate indifference to reports of sexual misconduct, including by failing to provide adequate training or guidance regarding the handling of reports of sexual misconduct, which is the crux of Brennan's official policy claim.  Specifically, Plaintiffs have provided

---

[165] *Doe 12 v. Baylor Univ.*, 336 F.Supp.3d 763, 779 (W.D. Tex. 2018) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (stating that the actual notice and deliberate indifference requirements are restricted to those cases "that do not involve [an] official policy of the [funding recipient]"); *Davis Next Friend LaShonda D v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (acknowledging that an institution cannot be liable unless it has notice that its conduct could subject it to a damages claim but providing that "this limitation . . . is not a bar to liability where a funding recipient intentionally violates the statute"); *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 661 (W.D. Tex. 2017) (same).

[166] *Doe 12 v. Baylor Univ.*, 336 F. Supp. 3d 763, 779-80 (W.D. Tex. 2018) (citing *Gebser*, 524 U.S. at 291, 118 S.Ct. 1989 (locating an analogue to the Title IX jurisprudence in the municipal liability doctrine); *Bd. Of Cnty. Comm'rs Bryan Cnty. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (explaining that plaintiffs seeking to impose liability on a municipality under § 1983 must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury"); *Collins v. City of Harker Heights*, 503 U.S. 115, 122, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (noting the necessity of analyzing whether execution of a municipal policy inflicted the injury); *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 661 (W.D. Tex. 2017) (same).

[167] R. Doc. 470-17 at p. 17 (*citing* R. Doc. 469-14 at pp. 16-25); *See*, R. Doc. 469-14 at pp. 17-18 (quoting *Simpson v. Univ. of Colorado, Boulder*, 500 F.3d 1170, 1178 (10th Cir 2007)).

evidence supporting their contention that LSU had a longstanding policy of ignoring, underfunding, and undermining its official Title IX program by willfully refusing to allocate sufficient funding to the Title IX program, knowingly allowing various departments, including the Athletic Department, to circumvent the Title IX office and handle reports of sexual misconduct and harassment internally through school officials who were not given proper training, and by failing to follow industry-standard recommendations and best practices made by their own Title IX Coordinator and independent outside auditors.

First and foremost, the Husch Blackwell report, commissioned by LSU, and issued on March 3, 2021, which reviewed, among other things, "Over 60 Title IX investigation case files from 2015 to present."[168]  One of the conclusions reached in the report is that, "Various incidents of athletics-related misconduct have not been appropriately reported to the University's Title IX Coordinator.  We are especially concerned about a lack of reporting prior to November 2016 for reasons discussed below."[169]  The report further provides that, "our concerns about reporting are not limited to Athletics.  Institutional reporting policy and training have been unclear for years."[170]  The authors of the report observed that, "there was a clear lack of leadership in providing clarity about institutional reporting obligations.  This was a long-recognized    problem    at    the    University    that    was    never    meaningfully

---

[168] R. Doc. 481 at p. 2 (*citing* R. Doc. 483 at pp. 2-13 (*citing* R. Doc. 483-28)).  *See,* R. Doc. 483-28 at pp. 1 & 4.
[169] R. Doc. 483-28 at p. 5.
[170] *Id.* at pp. 5-6.

addressed."[171]  The Husch Blackwell report also concluded that LSU's Title IX office "has never been appropriately staffed or provided with the independence and resources to carry out Title IX's mandates.  We have identified concerns that the Office has at times not handled those matters reported to it appropriately."[172]  The report again notes that, "while the *USA Today* article focused primarily on Athletics, we found deficiencies in a variety of different matters."[173]  The Husch Blackwell report also found that, "the University was slow to adopt Title IX policies, hire personnel, or meaningfully address concerns identified by community members and internal and external reviews."[174]

The Husch Blackwell report further states that, "Many of the issues identified throughout this report have been flagged previously in other reviews of the University's Title IX operations," and that, "over the last five years, there have been at least five reviews (three form external consultants and firms, one from the University's Office of Internal Audit, and one from a University task force) conducted by the University which have touched on Title IX issues."[175]  The report mentions that on August 30, 2016, LSU President F. King Alexander issued a "Presidential Charge" to create a "task force" of students, faculty, and staff to review LSU's "current policies, practices, and procedures as they relate to Title IX and to provide recommendations to the President that reflect campus needs and are informed by

---

[171] *Id*. at p. 76, n.171,
[172] *Id*. at p. 6.
[173] *Id*.
[174] *Id*.
[175] *Id*. at p. 38.

nationally-recognized benchmarked practices."[176]    The task force submitted a report in February 2017 with 17 recommendations regarding Title IX compliance.[177] The Husch Blackwell report states that, "As part of this review, we have been unable to find any documentation memorializing how this Task Force report was assessed or addressed by the leadership of the University."[178]

The Husch Blackwell report points out that additional internal and external reviews of LSU's Title IX Policy were conducted in 2016, 2017, 2018, and 2019.[179] The Husch Blackwell report states that, "Remarkably, the [2019] report, which was done in part to assess the University's Title IX policies and practices as they apply to LSU's Athletics Department, was never shared with the University's Title IX Office or the Athletics Department."[180]    The "Recommendations" section of the Husch Blackwell report reiterates that, "Institutional policies were unclear, edicts were issued by supervisors that conflicted with policy, employees were overburdened with vast institutional roles and not provided with appropriate resources, calls for additional resources went unheeded, concerns were not responded to, etc."[181]    The report further states that, "As demonstrated in this report, the University has been provided with recommendations for years about Title IX which have never been implemented."[182]

---

[176] *Id*. (citation omitted).
[177] *Id*. at pp. 41-44.
[178] *Id*. at p. 44.
[179] *Id*. at pp. 39-40, 44-48.
[180] *Id*. at p. 48.
[181] *Id*. at p. 139.
[182] *Id*. at p. 146.

There are also several letters and emails in the record, seemingly in response to the serious allegations and conclusions contained in the Husch Blackwell report, wherein LSU officials admit to the university's failings in its Title IX reporting obligations.  There is a letter from James Stephen Perry, a former member of the Board of Supervisors, directed to "Senator Barrow and Committee Members," in which Perry asserts that, "the University had failed its students," and that "[t]here can be no question that LSU failed in its duties and that there were structural, communication, chain of command, and individual performance failures."[183]  Perry also states that he had read that "many violations and threats against women students both inside of and outside of the Athletics Department never even reached the Title IX office."[184]  There is also a letter issued by Jane Cassidy, Interim VP of Civil Rights & Title IX at LSU, to "LSU Students, Faculty, and Staff" wherein she admits that, "We now know with great clarity that our system to protect one another from sexual harassment and violence has failed, and we must act expeditiously to remediate the problem."[185]  Board of Supervisors President Remy Voisin Starns also issued a statement stating, "I . . . want to apologize to the survivors.  Our university did not do right by you.  We see that now, and we are here to tell you that it's not okay."[186]

---

[183] R. Doc. 481 at p. 19 (*citing* R. Doc. 483 at pp. 2-13); R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-4 at pp. 1-2) (internal quotation marks omitted).  The Court notes that there is no date on the letter.

[184] R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-4 at pp. 1-2) (internal quotation marks omitted).

[185] R. Doc. 483 at p. 2 (*quoting* R. Doc. 483-5) (internal quotation marks omitted).  The Court notes that there is no date on the letter.

[186] R. Doc. 483 at p. 2 (*quoting* R. Doc. 483-17) (internal quotation marks omitted).  The Court notes that there is no date on Starns' statement.

Plaintiffs have also introduced evidence indicating that LSU Interim President Tom Galligan testified to the Louisiana Senate that, "there was no culture of punishment at LSU. There was no notice at the time as to what would happen. The policies were very unclear. There were directions within departments to report title IX issues to places they should not have been reported."[187] Galligan also admitted that LSU's "most serious misstep. And this is noted in the Husch Blackwell report, is failing to report by employees when they didn't understand they were responsible or they didn't comply with the regulation."[188] In a letter to the "LSU Community" on March 5, 2021, Galligan advised that the results of the Husch Blackwell report would be disclosed and that, "Perhaps most troubling of all the report's findings is the understanding that, whether through our actions or inactions, our institution betrayed the very people we are sworn to protect. Our job is to protect our students and support them in their times of need. It has become clear we haven't always fully lived up to our commitment."[189] As previously discussed, the evidence before the Court also shows that despite having actual knowledge of Mize-Robertson's alleged rape by John Doe in January 2016, Miriam Segar intentionally omitted John Doe's name from the Title IX records pertaining to her rape testifying that "So, it was that was just how we did it back then."[190]

The Court finds that the foregoing evidence is more than sufficient to raise a genuine issue of fact regarding whether the Board of Supervisors had a policy of

---

[187] R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-53) (internal quotation marks omitted).
[188] R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-53) (internal quotation marks omitted).
[189] R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-8) (internal quotation marks omitted).
[190] R. Doc. 470-6 at p. 11.

deliberate indifference to reports of sexual misconduct. The Court further finds that this dispute is material as LSU's policy or practice of deliberate indifference is crucial to a determination of Brennan's policy-based heightened risk claim, thereby precluding summary judgment.

### 2. Element two: Whether the Board of Supervisors' policy of deliberate indifference to reports of sexual misconduct created a heightened risk of sexual harassment that was known or obvious.

The Court finds that the same evidence referenced above raises a genuine dispute regarding whether the Board's alleged policy of deliberate indifference created a heightened risk of sexual harassment that was "known or obvious,"[191] especially in light of the wide timespan that the Husch Blackwell report encompassed, which included the timeframe of Mize-Robertson's alleged abuse. The Court agrees with Plaintiffs that additional sexual misconduct on campus is the expected consequence of failing to meaningfully investigate and report Title IX complaints and failing to adequately train staff and students regarding how to respond to sexual misconduct.[192] The fact that John Doe is alleged to have committed additional acts of violence and harassment against several of the plaintiffs *after* LSU was notified of Mize-Robertson's rape further suggests that those acts were also the result of LSU's policy of deliberate indifference.

With respect to Brennan specifically, the Court finds that the risk of John Doe committing additional acts of sexual misconduct, including taking the nude

---

[191] *Doe v. Texas A&M Univ.*, 634 F. Supp. 3d 365, 376 (S.D. Tex. 2022) (citing *Karasek v. Regents of Univ. of Calif.*, 956 F.3d 1093, 1112 (9th Cir. 2020)).
[192] R. Doc. 481 at p. 19 (*citing* R. Doc. 480 at p. 21).

photograph of Brennan in July 2016, was known or obvious because LSU had actual knowledge only months earlier in January 2016 of Mize-Robertson's allegations that she was raped by John Doe. Further, there is no evidence that the Board of Supervisors, or anyone within the Title IX office, instituted any remedies available to it under LSU's Title IX Policy after learning that Mize-Robertson had allegedly been raped by John Doe. The Court rejects as baseless the Board of Supervisors' assertion that Plaintiffs "have no evidence of widespread, systemic conduct that would put LSU on notice **at that time** of a particularized risk of sexual misconduct in the context that Brennan alleges,"[193] which is contradicted by the evidence set forth above and cited in Brennan's Opposition brief. Thus, genuine issues of material fact preclude summary judgment on the basis that Brennan cannot satisfy the second element of her policy-based heightened risk claim.

### 3. Element three: Whether Brennan's alleged sexual assault occurred in a context subject to the Board's control.

With respect to this element and whether the sexual assault at issue occurred in a context subject to LSU's control, both parties rely upon the arguments they previously made regarding the control element of Brennan's perpetrator-based heightened risk claim.[194] Thus, for the same reasons previously stated with respect to Brennan's perpetrator-based heightened risk claim, the Court finds that genuine issues of material fact exist regarding whether the Board of Supervisors exercised

---

[193] R. Doc. 470-17 at p. 20 (emphasis in original).
[194] *See*, R. Doc. 470-17 at p. 20; R. Doc. 481 at p. 19.

substantial control over Brennan's off-campus apartment where the alleged sexual assault occurred.

   4.  ***Element four: Whether, as a result of the Board's deliberate
       indifference, Brennan suffered harassment that was so severe,
       pervasive, and objectively offensive that it deprived her of access to
       the educational opportunities or benefits provided by LSU.***

Both parties again rely upon the arguments they previously made regarding this element of Brennan's perpetrator-based heightened risk claim.[195]  For the same reasons that the Court determined genuine issues of material fact precluded summary judgment as to this element of Brennan's perpetrator-based heightened risk claim, the Court likewise finds that Plaintiffs have provided sufficient evidence to show that genuine issues of material fact exist regarding whether the Board of Supervisors' policy of deliberate indifference to reports of sexual misconduct caused Brennan to suffer harassment that was so severe, pervasive, and objectively offensive that it deprived her of access to educational opportunities and benefits provided by LSU.  As previously mentioned, Brennan testified during her deposition that she left the recruiting office because she was not sure who had seen the nude photograph and she "couldn't handle walking through the halls of that office wondering who's seen me butt naked."[196]  Brennan further explained that John Doe, "practices in the same building.  It's all one organization, is what I kind of felt," and that while he was not part of the recruiting office, "the practice field was downstairs.  There's players walking in and out all the time, coaches.  It's all one building.  It's one house and the

---

[195] R. Doc. 470-17 at p. 21; R. Doc. 481 at p. 19.
[196] R. Doc. 481-5 at p. 32.

same - - the same work environment."[197]   Brennan further testified that if this incident had not happened, then "absolutely, I would have continued with my job there."[198]  Brennan testified that, "just having to be in an environment that 100,000 people cheered on this terrible person's name on a Saturday night.  That's why I ended up leaving."[199]

Determining whether LSU's policy of deliberate indifference caused Brennan to suffer harassment that was so severe, pervasive, and objectively offensive that it deprived her of access to the education opportunities or benefits provided by LSU will require credibility determinations and the weighing of evidence, which the Court cannot do in the context of a summary judgment motion.  When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[200]  As such, the Board of Supervisors is not entitled to summary judgment on the basis that Brennan cannot satisfy this element of her policy-based heightened risk claim.

Because the Court finds that genuine issues of material fact preclude summary judgment on Brennan's perpetrator-based heightened risk claim and her policy-based heightened risk, the Board of Supervisors' Motion is denied.

---

[197] *Id*. at p. 34.
[198] *Id*.
[199] R. Doc. 481-5 at pp. 40-41.
[200] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment No. 2: Samantha Brennan, filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College [201] and Defendant's Motion for Summary Judgment No. 2: Samantha Brennan[202] are **DENIED.**

New Orleans, Louisiana, December 22, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[201] R. Doc. 470.
[202] R. Doc. 366.