**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

ABBY OWENS, ET AL.                          CIVIL ACTION

VERSUS                                      NO. 21-242-WBV-SDJ

LOUISIANA STATE UNIVERSITY, ET AL.

<u>**ORDER AND REASONS**</u>

Before the Court is Defendant's Motion for Summary Judgment No. 8: Sarah Beth Kitch, filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board of Supervisors").[1]  Plaintiff opposes the Motion,[2] and the Board of Supervisors has filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

I.    **FACTUAL and PROCEDURAL BACKGROUND**[4]

This case involves allegations by ten former students of Louisiana State University and Agricultural and Mechanical College ("LSU") that LSU and its Athletic Department funded and implemented a purposefully deficient sexual

---

[1] R. Doc. 476.  The Court notes that the Board of Supervisors originally filed its Motion for Summary Judgment into the record under seal with the consent of the Court.  *See,* R. Docs. 378 & 379.  The Court subsequently ordered the Board of Supervisors to file a redacted version of the Motion into the record, which was filed into the record as R. Doc. 476.  *See,* R. Doc. 428.  Both motions, which are identical, remain pending at this time.  The remainder of this Order and Reasons, however, will reference only the redacted version of the Motion in the public record, R. Doc. 476.

[2] R. Doc. 487.  The Court notes that Plaintiffs originally filed their Opposition brief into the record under seal with the consent of the Court.  *See,* R. Doc. 407.  The Court subsequently ordered Plaintiffs to file a redacted version of their Opposition brief into the record, which was filed into the record as R. Doc. 487.  *See,* R. Doc. 428.  The remainder of this Order and Reasons will refer only to the redacted version of the Opposition brief, R. Doc. 487.

[3] R. Doc. 498.

[4] The factual background of this case was extensively detailed by the Court in several prior Orders (*See,* R. Docs. 317, 319, 321, 323, & 340) and, for the sake of brevity, will not be repeated here.

misconduct and Title IX reporting scheme.[5]  The instant Motion concerns the Title IX heightened risk claim asserted by plaintiff Sarah Beth Kitch against the Board of Supervisors, which survived the Court's March 31, 2023 Order and Reasons granting in part and denying in part the Board of Supervisors' Motion to Dismiss the Second Amended Complaint.[6]

The Court limits its recitation of the facts to those alleged by Plaintiff Sarah Beth Kitch, the facts asserted in the Complaint by other plaintiffs which Kitch relies on in support of her claims, and the facts set out in the Board's Statement of Undisputed Material Facts that Kitch admits are true in her Opposing Statement of Material Facts.[7]

Kitch first enrolled at LSU as an undergrad in 2006 or 2007 and then enrolled as a political science graduate student in fall 2009 to pursue a master's degree in political theory.[8]  In August 2009, shortly after enrolling in her graduate program, Kitch first met John Moe, one of her instructors and a professor in the political science department at LSU.[9]  Kitch and Moe shared "closely aligned" interests, including in ancient and medieval political thought, and Moe encouraged her academic interests.[10]  Moe offered Kitch a scholarship worth several thousand dollars to study the thought of political scientist Eric Voegelin.[11]  Kitch received the Eric Voegelin

---

[5] R. Doc. 1 at ¶ 10; R. Doc. 22 at ¶ 10; R. Doc. 182 at ¶ 25.
[6] R. Doc. 340.
[7] R. Doc. 487-1.  The Board's Undisputed Facts that are admitted by Kitch are Numbers 1–3, 5, 8, 14, 15, 17, 20, 24–27.  Kitch either offers qualified responses or denies all of the Board's other Undisputed Facts.
[8] R. Doc. 476-1 at pp. 2–3.
[9] *Id.* at p. 5.
[10] *Id.* at pp. 5–6.
[11] *Id.* at pp. 6–7.

Scholars Award twice, in 2009 and 2010.[12]  In 2010, Moe sponsored Kitch for an H.B. Earhart Fellowship, described by Kitch as a "prestigious fellowship for political theory and students of American thought and politics."[13]  According to Kitch, Moe's sponsorship for the fellowship was likely the reason she received it.[14]  Kitch received this fellowship five times, in 2010, 2011, 2012, 2013, and 2014.[15]

Kitch interacted with Moe outside of the classroom during her time at LSU. Beginning in 2012, Moe "informed" Kitch that she would be driving him to and from his class because of difficulties with his right leg.[16]  Twice a week, Kitch drove to Moe's house before class, picked Moe up in his car, drove him in his car to LSU's campus, and then drove him back to his house after class.[17]  By fall 2013, Kitch stopped driving Moe as other, younger students had taken up the task.[18]

Kitch claims that Moe made several inappropriate comments in front of her during her tenure at LSU.[19]  First, in fall 2012, while Kitch was preparing for her comprehensive exams, Moe compared his relationship with Kitch to that of Martin Heidegger and Hannah Arendt; Kitch explains that Heidegger famously had a love affair with his younger student, Arendt.[20]  However, Moe did not explicitly mention the affair.[21]  Second, again while Kitch was in the midst of preparing for exams, Moe

---

[12] R. Doc. 476-2 at p. 5.
[13] R. Doc. 476-1 at pp. 7–8.
[14] *Id.*
[15] R. Doc. 476-2 at pp. 4–5.
[16] R. Doc. 476-1 at p. 10.
[17] *Id.* at p. 11.
[18] *Id.* at p. 33.
[19] *Id.* at p. 12.
[20] *Id.* at pp. 13, 15.
[21] *Id.* at p. 15.

told her that "faculty were celestial and [she] was a mite."[22] Third, in either 2012 or 2013, Moe commented on a secretary's dress in a way that Kitch thought "was not professional."[23] Kitch could not recall what Moe said.[24] Fourth, on one occasion, Moe "commented approvingly" on a pair of heels Kitch was wearing in a way that made her "uncomfortable."[25] Kitch could not recall what Moe had said to her but remembered that she felt self-conscious and that his comment evoked a "sense of exposure."[26] Kitch did not report any of Moe's comments to LSU while she was enrolled.[27]

Moe also allegedly made unwanted physical contact with Kitch on one occasion. At some point between fall 2012 and spring 2013, one of Moe's daughters who had not heard from him in some time called Kitch asking her to go to Moe's house to check on him.[28] When Kitch arrived at Moe's home, she found him seated on his couch near an assortment of wine bottles.[29] Moe arose and then walked into his kitchen.[30] While in the kitchen, Moe asked Kitch to kiss him.[31] Kitch told him no.[32] Nevertheless, Moe leaned forward and kissed her on the lips.[33] Kitch felt "repulsed and nauseated" by Moe's action.[34] Kitch left Moe's house soon after.[35] Besides the kissing incident,

---

[22] *Id.* at p. 14.
[23] *Id.* at pp. 14, 19.
[24] *Id.* at p. 19.
[25] *Id.* at p. 14.
[26] *Id.* at p. 15.
[27] *Id.* at p. 34.
[28] *Id.* at p. 19; R. Doc. 487-3 at p. 16.
[29] R. Doc. 487-3 at p. 19.
[30] *Id.*
[31] R. Doc. 476-1 at p. 20.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*

Moe did not have any other physical contact with Kitch that made her feel uncomfortable.[36]   Kitch also did not report this incident to LSU while she was enrolled.[37]

Kitch graduated from her master's program in May 2013 and stayed on at LSU in the doctoral program.[38]  Moe served as Kitch's doctoral advisor and was a member of her dissertation advisory committee alongside professors Cecil Eubanks and William Stoner.[39]  Kitch claims that she did not trust Moe as an advisor and "felt that he was not evaluating [her] intellectual work in the way that [she] hoped that he would."[40]  Accordingly, Kitch asked Cecil Eubanks for assistance with her prospectus and dissertation work; although it "wasn't his job," Eubanks assisted Kitch "without question."[41]

As part of his duties as doctoral advisor, Moe assisted Kitch in selecting a topic for her dissertation.[42]  Moe initially wanted Kitch to write about the relationship between religious liberty and political liberty.[43]  Kitch declined.[44]  Instead, Kitch "picked a thing that [she] knew would be tolerable to [her] and of interest to him," because she understood that, after the kiss, "whatever [she] wrote needed to be unoffensive to him . . . [and] something he would accept."[45]  Moreover, Kitch "didn't

---

[36] *Id.* at pp. 23, 30.
[37] *Id.* at p. 34.
[38] *Id.* at p. 4.
[39] *Id.* at pp. 26–27; R. Doc. 487-1 at ¶ 15.
[40] R. Doc. 476-1 at p. 25.
[41] *Id.* at pp. 25–26.
[42] *Id.* at pp. 24, 26; R. Doc. 487-3 at pp. 22–23.
[43] R. Doc. 487-3 at pp. 22–23.
[44] *Id.* at p. 23.
[45] *Id.* at p. 23.

want to work closely with him" on her dissertation and "didn't want to get into any kind of serious negotiation about a topic that [she] wanted to pursue more."[46]  Kitch presented her topic to Moe and he approved it.[47]

After Kitch selected her dissertation topic, she wrote and subsequently defended her prospectus to her advisory committee.[48]  Kitch then began writing her dissertation in full.[49]  Kitch interacted with Moe while writing her dissertation, although "[n]ot as often as before."[50]  Kitch had difficulty writing her dissertation because she was "very distressed by the way that [Moe] had changed [their] relationship."[51]  Throughout the writing process, Moe did nothing that Kitch felt was inappropriate or that made her uncomfortable.[52]  Ultimately, Kitch completed her dissertation in fall 2014 and graduated from LSU with her doctorate in December 2014.[53]  During her time at LSU, Kitch consistently maintained a 4.0 grade point average.[54]

After graduating from LSU, Kitch served as an instructor in the political science department at LSU for several years before accepting a postdoctoral research assistant role at Princeton University.[55]  After her postdoc, Kitch spent a year as a visiting assistant professor at Northern Illinois University before being hired by the

---

[46] *Id.*
[47] R. Doc. 476-1 at p. 27.
[48] *Id.* at pp. 27, 29.
[49] *Id.* at p. 28.
[50] *Id.* at p. 32.
[51] R. Doc. 487-3 at p. 25.
[52] R. Doc. 476-1 at pp. 23, 30.
[53] *Id.* at pp. 32, 48.
[54] R. Doc. 487-1 at ¶ 26 (citing R. Doc. 476-4 at ¶ 7).
[55] R. Doc. 476-2 at p. 3; R. Doc. 476-1 at p. 38.

University of Missouri as a tenure-track professor.[56]  Throughout this period after graduation, Kitch worked on her "dissertation-to-book" project as a means of gaining tenure at a university.[57]  At the University of Missouri, the custom for scholars in her field is to turn a dissertation into a full-fledged book.[58]  However, Kitch had a difficult time completing her book project; Kitch would "pull out the files, lose [her] capacity to speak, feel very distressed, alone, feel very betrayed."[59]  While teaching at Missouri, Kitch eventually realized that she could not finish her project.[60]  Because of her lack of "confidence in creating a credible tenure case" due to her inability to produce a book, Kitch voluntarily left the University of Missouri in May 2020.[61]  Kitch then transitioned to an adjunct position at the University of Houston before finally ending up as a high school history teacher at St. Agnes Academy in Houston, Texas.[62]

Kitch first reported Moe to LSU's Title IX office in 2018 or 2019.[63]  At that time, Moe was no longer a professor at LSU and Kitch was no longer a student or instructor at LSU.[64]  Kitch's report was the first report LSU had received of any alleged sexual harassment by Moe.[65]  Kitch claims that she first learned of LSU's mismanagement of Title IX in April or May 2021 when she saw news reports about this lawsuit.[66]

---

[56] R. Doc. 476-2 at p. 3; R. Doc. 476-1 at pp. 38, 40.
[57] R. Doc. 476-1 at pp. 31, 32, 36, 38.
[58] R. Doc. 487-3 at p. 29.
[59] *Id.* at p. 27.
[60] *Id.*
[61] R. Doc. 476-1 at pp. 43–44.
[62] *Id.* at p. 44; R. Doc. 487-3 at p. 39.
[63] R. Doc. 476-1 at p. 38.
[64] *Id.* at p. 49.
[65] R. Doc. 487-1 at ¶ 22.
[66] R. Doc. 487-2 at ¶ 4.

On April 26, 2021, several plaintiffs, not including Kitch, filed suit against the Board of Supervisors as well as various LSU officials asserting, among other claims, Title IX violations.[67]  Kitch first learned of this lawsuit in April or May 2021 and was initially unaware of the other plaintiffs in this suit.[68]  Kitch then contacted counsel for the Plaintiffs and joined in this action as a Plaintiff.[69]  In the Second Amended Complaint, Plaintiffs asserted seven claims as follows: Count I, Violation of Title IX, Deliberate Indifference to Sex Discrimination in violation of 20 U.S.C. §§ 1681, et seq.; Count II, Violation of Title IX, Hostile Environment in violation of 20 U.S.C. §§ 1681, et seq.; Count III, Violation of Title IX, Heightened Risk in violation of 20 U.S.C. §§ 1681, et seq.; Count IV, Violation of Title IX, Retaliation by Withholding Protection Otherwise Conferred by Title IX in violation of 20 U.S.C. §§ 1681, et seq.;[70] Count V, First Amendment Retaliation in violation of 42 U.S.C. § 1983 and the First Amendment;[71] Count VI, Denial of Equal Protection in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment;[72] and Count VII, Denial of Substantive and Procedural Due Process in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment.[73]

---

[67] R. Doc. 1.

[68] R. Doc. 487-2 at ¶ 4.

[69] *Id.* at ¶ 5.

[70] Kitch only asserted the claims in Counts I-IV against the Board of Supervisors.

[71] Kitch only asserted Count V against individually named defendants in their individual capacities. *See,* R. Doc. 182 at p. 134.  Those individual defendants were subsequently dismissed from this action. *See* R. Doc. 317, 319, 321 & 323.

[72] Kitch only asserted Count VI against individually named defendants in their individual capacities. *See,* R. Doc. 182 at p. 142.  Those individual defendants were subsequently dismissed from this action. *See* R. Doc. 317, 319, 321 & 323.

[73] Kitch only asserted Count VII against individually named defendants in their individual capacities. *See,* R. Doc. 182 at p. 145.  Those individual defendants were subsequently dismissed from this action. *See* R. Doc. 317, 319, 321 & 323.

In response to a Motion to Dismiss filed by the Board of Supervisors, the Court dismissed Kitch's deliberate indifference, hostile environment, and retaliation claims.[74]   Thus, the only remaining claim asserted by Kitch against the Board of Supervisors is her heightened risk claim asserted in Count III.

In Count III of the Second Amended Complaint, Plaintiffs allege that the Board of Supervisors created a heightened risk of sex-based discrimination on LSU's campus by cultivating a "culture of silence by failing to report complaints of sex-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits."[75]

The Board of Supervisors seeks summary judgment on Kitch's heightened risk claim, arguing that any such claim based on LSU's general custom or official policy fails because the Fifth Circuit has not recognized a Title IX heightened risk claim based on an official policy for teacher-on-student sexual assault allegations, and further, because this Court's ruling on the Board's Motion to Dismiss "does not suggest that an official policy claim remains in this case."[76]   The Board of Supervisors further argues that, if such a claim exists, Kitch fails to meet the elements of such a claim and that any such claim is now prescribed.[77]   In response, Plaintiffs contend

---

[74] R. Doc. 340.

[75] R. Doc. 182 at ¶ 926.

[76] *Id.* To the extent that the Board of Supervisors in its Motion suggests that Kitch has asserted a perpetrator-based heightened risk claim, the Court finds that she has not. *See,* R. Doc. 182 at ¶¶ 916–937.  In their Opposition brief, Plaintiffs clarify that the only heightened risk claim asserted by Kitch is a policy-based heightened risk claim. *See,* R. Doc. 487 at p. 4. The Board of Supervisors acknowledges Plaintiffs' position in its Reply brief. *See,* R. Doc. 498 at p. 4.

[77] R. Doc. 487-1.

that the Board of Supervisors' argument that the Fifth Circuit has not recognized a heightened risk claim based on an official policy of deliberate indifference "is of no moment, as the United States Supreme Court has recognized such a claim."[78] Plaintiffs then assert that genuine issues of material fact preclude summary judgment on Kitch's policy-based heightened risk claim, including whether the claim is timely.[79]  In reply, the Board of Supervisors contends that there are no genuine issues of material fact and maintains that it is entitled to summary judgment on Kitch's heightened risk claim.[80]

## II.    LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[81]  When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[82]   While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only

---

[78] R. Doc. 487 at p. 4 (incorporating by reference R. Doc. 480 at p. 17).

[79] *Id.* at pp. 3–7.

[80] R. Doc. 498.

[81] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[82] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

a scintilla of evidence."[83]  Instead, summary judgment is appropriate if a reasonable

jury could not return a verdict for the nonmoving party.[84]  Where, as here, the

nonmoving party will bear the burden of proof at trial on the dispositive issue, the

moving party may satisfy its burden by merely pointing out that the evidence in the

record is insufficient with respect to an essential element of the nonmoving party's

claim.[85]  The burden then shifts to the nonmoving party who must go beyond the

pleadings and, "by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there

is a genuine issue for trial.'"[86]

## B. Title IX.

"Congress enacted Title IX in 1972 with two principal objectives in mind: '[T]o

avoid the use of federal resources to support discriminatory practices' and 'to provide

individual citizens effective protection against those practices.'"[87]  In line with those

objectives, Title IX provides that, "No person in the United States shall, on the basis

of sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial

assistance."[88]  Title IX is enforceable by private right of action for damages.[89]

---

[83] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[84] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[85] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
[86] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).
[87] *Roe v. Cypress-Fairbanks Ind. Sch. Dist.*, 53 F.4th 334, 340-341 (5th Cir. 2022) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (alteration in original)).
[88] *Roe*, 53 F.4th at 341 (*quoting* 20 U.S.C. § 1681(a)) (internal quotation marks omitted).
[89] *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)).

Through this private right of action, institutions receiving federal funds may be liable for, among other things, student-on-student sexual harassment if: (1) the institution had actual knowledge of the harassment; (2) the harasser was under the institution's control; (3) the harassment was based on the victim's sex; (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit;" and (5) the institution was deliberately indifferent to the harassment.[90]

## III.  ANALYSIS

In their Second Amended Complaint, Plaintiffs allege that the Board of Supervisors' Title IX policies and practices were so deficient that the Board of Supervisors was deliberately indifferent to the risk of Plaintiffs' sexual assault and "cultivated a culture of silence by failing to report complaints of sex-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits or grievance procedures . . . ."[91]  The Court refers to this as Kitch's policy-based heightened risk claim, the only claim she has remaining in this matter.  The Board of Supervisors argues that it is entitled to summary judgment on Kitch's claim because a heightened risk claim based on an official policy is "unavailable as a matter of law,"[92] and because Kitch cannot establish

---

[90] *Roe*, 53 F.4th at 341 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (alteration in original)) (internal quotation marks omitted).
[91] R. Doc. 182 at ¶¶ 926-928.
[92] R. Doc. 476 at ¶ 4; R. Doc. 476-10 at p. 11.

the necessary elements of her claim.[93]  The Board of Supervisors also argues that any heightened risk claim is prescribed as a matter of law.[94]

At the outset, the Court rejects the Board of Supervisors' contention that a heightened risk claim is unavailable in the context of teacher-on-student conduct. The Board fails to provide any caselaw or reason to support its position that only student-on-student misconduct is actionable.  As the Fifth Circuit has explained, albeit not in the context of a heightened risk claim, "[p]eer harassment is *less* likely to support liability than is teacher-student harassment."[95]  The Court finds no reason to exclude teacher-on-student conduct from the ambit of Title IX.  Professors and teachers, as employees of Title IX educational institutions, are under the control of the institution in a far more direct way than are students; imposing liability on the institution for the actions of the latter but not the former turns Title IX on its head and flies in the face of decades of precedent.

The issue before the Court is whether the Board of Supervisors has shown that Kitch cannot meet the elements of her policy-based heightened risk claim. Although not specifically asserted by either party, the parties seem to recognize that there is no Fifth Circuit authority regarding the analytical framework applicable to policy-based heightened risk claims.[96]  The parties seem to agree that a policy-based

---

[93] R. Doc. 476 at ¶ 3; R. Doc. 476-10 at pp. 5-15.

[94] R. Doc. 476 at ¶ 2; R. Doc. 476-10 at pp. 3-5.

[95] *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 166 (5th Cir. 2011) (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 653, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (emphasis added); *accord Davis*, 526 U.S. at 653 ("The relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits . . . . Peer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment.").

[96] *See,* R. Doc. 476-10 at pp. 11-15; R. Doc. 487 at pp. 4-7.

heightened risk claim requires a plaintiff to prove the following four elements: (1) the institution maintained a policy of deliberate indifference to reports of sexual misconduct; (2) which created a heightened risk of sexual harassment that was known or obvious; (3) in a context subject to the school's control; and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."[97]

The Court begins and ends its analysis with consideration of the first factor, whether Kitch has demonstrated that LSU maintained a policy of deliberate indifference to reports of sexual misconduct and harassment prior to Kitch's allegations which caused her injuries.  Liability under Title IX requires a plaintiff to show that the school "cause[d the plaintiff] to undergo harassment or ma[d]e [the plaintiff] liable or vulnerable to it."[98]  To establish causation, Kitch must demonstrate that that it was the Board of Supervisors' policy which *caused* her injuries.  While Plaintiffs have produced evidence that the Board was deliberately indifferent to reports of sexual misconduct and harassment several years after the alleged harassment and after Kitch had graduated from LSU's graduate program in May 2013, much of which has been detailed in the Court's Orders and Reasons denying the Board of Supervisor's Motions for Summary Judgment as to other plaintiffs,[99] such evidence is insufficient to meet Kitch's burden at the summary judgment stage.

---

[97] R. Doc. 476-10 at pp. 11-15; R. Doc. 487 at pp. 4-7.  The Court notes that the Board of Supervisors lists the fourth element as "causation."  R. Doc. 476-10 at p. 15.
[98] *Davis*, 526 U.S. at 645.
[99] *See, e.g.*, R. Docs. 526, 527, 528, and 529.

To succeed on her policy-based heightened risk claim, Kitch must show that LSU maintained a policy of deliberate ignorance *prior* to when she was enrolled at LSU (fall 2009 through fall of 2014) and prior to the time that she alleges to have suffered harassment from Moe. Kitch may not rely on evidence of alleged subsequent failures by LSU which may have occurred after she was no longer on campus and not subject to any harassment.

Kitch principally relies on two separate pieces of evidence to demonstrate that LSU maintained a policy of deliberate indifference to reports of sexual misconduct: (1) the evidence generically relied on by all Plaintiffs in this lawsuit including the 2021 Husch Blackwell report as well as various audits conducted by LSU over the years; and (2) a Fall 2019 conversation Kitch had with an LSU Title IX staff member where the individual allegedly told Kitch that it was a good thing that Kitch did not report Moe's conduct back when Kitch was still enrolled as a student because "no one would have done anything and it would have only caused [her] trouble."[100]

As for the evidence incorporated by reference here by Kitch and relied on by all of the other Plaintiffs, the extensive Husch Blackwell report, the Court does not find that the evidence demonstrates that the Board of Supervisors maintained a policy of deliberate indifference to reports of sexual misconduct by professors or employees prior to when Kitch was enrolled as a graduate student and allegedly

---

[100] R. Doc. 476-1 at p. 42. The Court also notes that during her deposition Kitch brought up alleged misconduct by another LSU professor, Kevin Mulcahy, who allegedly harassed undergraduate and graduate students without repercussion. Although the Board mentioned Mulcahy's conduct in its Memorandum in support of its Motion, *see* R. Doc. 476-10 at p. 13, Kitch does not cite to or rely on Mulcahy's alleged misconduct to support her position that the Board of Supervisors maintained a policy of deliberate indifference. Accordingly, the Court does not consider Mulcahy's conduct in its analysis.

harassed by Moe.  The Court notes that the bulk of the evidence concerning the Board of Supervisors' policy of deliberate indifference postdates the time that Kitch was enrolled as a graduate student and subjected to any harassment from Moe.  Much of Plaintiffs' argument on this point goes to the Board's failure to comply with its Title IX Policy, PM-73, which was not adopted and effective June 2014, after Moe's alleged harassment of Kitch.[101]    Indeed, Plaintiffs' entire Opposition brief relies on an opposition brief filed by the Plaintiffs in response to a motion for summary judgment concerning another plaintiff who alleged that she was raped in January 2016, years after Kitch had graduated from LSU's graduate program.[102]    For instance, the Plaintiffs contend that "there is ample evidence supporting the conclusion that 'LSU failed to meet industry standards and practice in connection with Title IX compliance and its own PM-73 policy as to each of the Plaintiffs."[103]    Kitch, however, cannot rely on the Board of Supervisors' alleged mismanagement of PM-73 when the evidence does not reflect that that policy either pre-dated or covered her applicable time period. As such, the Court finds that the Board's failures to properly enforce its PM-73 policy, if proven, could not have caused Kitch's injuries.[104]

---

[101] R. Doc. 483-28 at p. 12; R. Doc. 476-4 at ¶ 4.

[102] R. Doc. 487 at p. 4 (incorporating by reference R. Doc. 480 at pp. 19–21).  Perplexingly, the Memorandum incorporated by reference by Kitch's Memorandum itself incorporates R. Doc. 483 at pp. 2–13, see R. Doc. 480 at p. 2, as to LSU's alleged misconduct and failures regarding its Title IX policy. Again, the Court discourages the parties from using this tactic whereby the Court must scavenge through numerous documents to find the various pieces of a party's argument.

[103] R. Doc. 483 at p. 13.

[104] *See Tackett v. Univ. of Kansas*, 234 F. Supp. 3d 1100, 1107 (D. Kan. 2017) (finding no Title IX liability where there was no connection between the alleged policies of the defendant-university and the plaintiff's injury)

Further, Plaintiffs' focus on the Board of Supervisor's alleged failure to comply with the Campus Accountability and Safety Act ("Act 172") is irrelevant to Kitch's claims because that law was not passed until 2015, two years after Kitch had graduated from LSU and several years after any alleged harassment by Moe.[105] Likewise, as the Board of Supervisors points out, the 2017 internal audit showing evidence of LSU's failure to manage its Title IX program postdates Kitch's time at LSU.[106] Further, the Husch Blackwell report, which came out in 2021, covers conduct that almost entirely occurred *after* Kitch had graduated from LSU and largely focuses on the implementation of LSU's PM-73 policy.[107] The one notable exception is the alleged sexual harassment by LSU's then-football coach, Les Miles, in 2012 and 2013 which is documented in the Husch Blackwell report.[108] However, the Court does not find this conduct sufficient to demonstrate that the Board of Supervisors maintained a *policy* of deliberate indifference to reports of sexual harassment prior to Kitch's time as a graduate student at LSU from fall 2009 to May 2013, even assuming that the Board erred in its handling of the Miles matter. Plaintiffs have failed to point this Court to any other record evidence supporting a policy of deliberate indifference prior to this period. Title IX "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action."[109]

---

[105] *See* R. Doc. 483 at p. 4.
[106] *See* R. Doc. 476-10 at p. 13.
[107] *See generally* R. Doc. 483-28.
[108] *See id.* at p. 49.
[109] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).

To the extent that Kitch asks the Court to infer that because the Board of Supervisors arguably had a policy of deliberate indifference to reports of sexual misconduct while the PM-73 policy was in effect in 2014, the Board of Supervisors *also* was deliberately indifferent prior to the implementation of PM-73 while she was subjected to harassment by Moe, the Court declines to do so. Kitch cannot support her burden of proof and defeat summary judgment by resorting to mere speculation.[110] The Court will not extrapolate that the Board of Supervisors was deliberately indifferent prior to Kitch's time as a graduate student (fall 2009 through May 2013) simply because there is evidence to suggest it may have been so in 2014 and beyond. Kitch must provide specific record evidence that the Board was deliberately indifferent prior to when she was enrolled as a graduate student at LSU and that that policy of indifference caused her injuries. She has failed to do so.

The Court further points out that the evidence relied on by Kitch, even if it were deemed sufficient, fails to show that the Board of Supervisors maintained a policy of deliberate indifference with respect to teacher-on-student sexual harassment. Nearly all of the evidence cited by the Plaintiffs in support of a policy of deliberate indifference pertains to student-on-student sexual harassment, especially by student-athletes. The one exception, allegations regarding former football coach Les Miles, at most shows that the Board of Supervisors was deliberately indifferent as to the conduct of one of LSU's star employees and does not, standing alone, show

---

[110] *See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) ("Conclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment." (quoting *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993))).

that the Board maintained a general policy of deliberate indifference with respect to other faculty members.  Plaintiffs have not provided any legal support, nor has the Court found any, to suggest that preferential treatment equates to proof of policy of deliberate indifference.

In effect, Kitch fails to demonstrate that any alleged policy of indifference with regards to student-on-student sexual harassment caused Moe, Kitch's professor, to harass her.  The Court will not simply assume such causation without sufficient evidence.  Deliberate indifference, even if found to exist at a separate time in relation to peer-to-peer sexual harassment, is not sufficient to prove deliberate indifference in every area, and at every time.

In sum, as to the evidence of LSU's policy of indifference, incorporated by reference by Kitch and relied on by Plaintiffs, Kitch fails to connect that evidence to the alleged harassment she received from Moe.  Kitch fails to show that any such evidence covers the specific time period prior to and during her enrollment as a graduate student at LSU, when she was allegedly harassed by Moe.  Kitch also fails to show  that the evidence proves that the Board of Supervisors maintained a policy of deliberate indifference as to reports of sexual harassment and misconduct by LSU's faculty.  Kitch must provide more than hunches and speculation to defeat summary judgment.

The Court now addresses the other piece of evidence Kitch relies on to support her claim that the Board maintained a policy of deliberate indifference while she was

enrolled at LSU—a Fall 2019 phone call with a member of LSU's Title IX staff.[111] During that call, Kitch reported Moe's harassment to LSU for the first time.[112] Kitch claims that the person with whom she spoke asked her why she had not reported Moe earlier, and that Kitch responded that she believed that she would have jeopardized her status as a graduate student if she had done so.[113] According to Kitch, the Title IX staff member told Kitch that "it's good that you didn't report then, no one would have done anything, and it would have only caused you trouble."[114] Kitch relies on this statement to demonstrate that there was policy of deliberate indifference while she was enrolled at LSU.

Viewing the statement in a light most favorable to Kitch, as the Court is bound to do at the summary judgment stage, the Court does not find that this one statement is sufficient to demonstrate a genuine factual dispute as to whether the Board of Supervisors maintained a policy of deliberate indifference to reports of sexual harassment. Initially, the comment does not indicate that the alleged futility of reporting Moe's conduct while Kitch was still enrolled is in any way related to a policy of deliberate indifference by the Board of Supervisors. Moreover, the comment, taken as true, could be construed as consistent with simple negligence on the part of the Board rather than deliberate indifference. Both the Fifth Circuit and the Supreme

---

[111] R. Doc. 487 at p. 4.
[112] R. Doc. 476-1 at p. 38.
[113] *Id.* at p. 42.
[114] *Id.*

Court have emphasized that the requirement of Title IX plaintiffs to show "deliberate indifference" means something more than mere negligence.[115]

It is also not lost on the Court that Kitch has admitted that her conversation with the Title IX officer "did or could [not] have alerted [Kitch] of the systemic failures at LSU's Title IX office."[116]  Kitch cannot have it both ways; she cannot assert that she was unaware of LSU's alleged policy of indifference while also claiming that the conversation is sufficient to demonstrate that the Board of Supervisors maintained a policy of deliberate indifference toward sexual harassment.

Based on the foregoing analysis, the Court finds that Kitch has failed to show that the Board of Supervisors maintained a policy of deliberate indifference to reports of sexual harassment which caused her particular injuries while she was enrolled as a graduate student at LSU.  Her reliance on conduct which postdates her time at LSU and the harassment she received from Moe does not provide the required causal nexus between the Board's conduct and her injury.  Accordingly, the Court grants summary judgment in favor of the Board.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment No. 8: Sarah Beth Kitch, filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical

---

[115] *See Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999) ("Likewise, we declined the invitation to impose liability under what amounted to a negligence standard—holding the district liable for its failure to react to teacher-student harassment of which it knew or should have known.").

[116] R. Doc. 487 at p. 4.

College[117] and Defendant's Motion for Summary Judgment No. 8: Sarah Beth Kitch[118] are **GRANTED** and Sarah Beth Kitch's heightened risk claim is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, December 31, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[117] R. Doc. 476.
[118] R. Doc. 378.