## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                              CIVIL ACTION

VERSUS                                          NO. 21-242-WBV-SDJ

LOUISIANA STATE UNIVERSITY, ET AL.

### ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment No. 10: Corinn Hovis, filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board of Supervisors").[1]  Plaintiff opposes the Motion,[2] and the Board of Supervisors has filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED in part and DENIED in part.**

## I.     FACTUAL and PROCEDURAL BACKGROUND[4]

This case involves allegations by ten former students of Louisiana State University and Agricultural and Mechanical College ("LSU") that LSU and its Athletic Department funded and implemented a purposefully deficient sexual misconduct and Title IX reporting scheme separate from LSU's official Title IX office

---

[1] R. Doc. 478. The Court notes that the Board of Supervisors originally filed its Motion for Summary Judgment into the record under seal with the consent of the Court.  *See,* R. Docs. 382 & 383.  The Court subsequently ordered the Board of Supervisors to file a redacted version of the Motion into the record, which was filed into the record as R. Doc. 478.  *See,* R. Doc. 428.  Both motions, which are identical, remain pending at this time.  The remainder of this Order and Reasons, however, will reference only the redacted version of the Motion in the public record, R. Doc. 478.

[2] R. Doc. 489.  The Court notes that Plaintiffs originally filed their Opposition brief into the record under seal with the consent of the Court.  *See,* R. Doc. 406. The Court subsequently ordered Plaintiffs to file a redacted version of their Opposition brief into the record, which was filed into the record as R. Doc. 489.  *See,* R. Doc. 428.  The remainder of this Order and Reasons will refer only to the redacted version of the Opposition brief, R. Doc. 489.

[3] R. Doc. 500.

[4] The factual background of this case was extensively detailed by the Court in several prior Orders (*See,* R. Docs. 317, 319, 321, 323, & 340) and, for the sake of brevity, will not be repeated here.

to keep sexual assault claims within the Athletic Department.[5]  The instant Motion concerns the Title IX deliberate indifference and heightened risk claims asserted by plaintiff, Corinn Hovis, against the Board of Supervisors, which survived the Court's March 31, 2023 Order and Reasons granting in part and denying in part the Board of Supervisors' Motion to Dismiss the Second Amended Complaint.[6]  The Court found that all of the plaintiffs, including Hovis, had alleged a facially plausible Title IX heightened risk claim, and that Hovis had alleged a plausible Title IX deliberate indifference claim "based upon the Board's failure to respond to [John] Loe's alleged violation of the no-contact directive issued by LSU in June 2020."[7]

The Court limits its recitation of the facts alleged in the Second Amended Complaint to those alleged by Hovis, the facts asserted in the Complaint by other plaintiffs which Hovis relies on in support of her claims, and the facts set out in the Board's Statement of Undisputed Material Facts that Hovis admits are true in her Opposing Statement of Material Facts.[8]  Hovis enrolled at LSU in the fall of 2019.[9] On January 24, 2020, Hovis went to a bar in Tigerland and saw a crowd of people taking a photograph with John Loe, "a highly recruited quarterback on LSU's football team."[10]  Hovis did not know who John Loe was, but when her friend told her who he was, Hovis joined the crowd and took a photograph with him.[11]  After Hovis and Loe

---

[5] R. Doc. 1 at ¶ 10; R. Doc. 22 at ¶ 10; R. Doc. 182 at ¶ 25.
[6] R. Doc. 340.
[7] Id. at p. 31.
[8] R. Doc. 489-1.  The Board's Undisputed Facts that are admitted by Hovis are Numbers 1-3, 6-8, 10-11, 13-15, 17, 21-25, 28-32, 34, 37-41, 58.  Hovis offers qualified responses to all of the Board's other Undisputed Facts.
[9] R. Doc. 182 at ¶ 651.
[10] Id. at ¶¶ 653-54.
[11] Id. at ¶¶ 655-56.

took a selfie together, Loe asked Hovis to go back to his residence.[12]  Plaintiffs allege that Hovis was heavily intoxicated when she agreed to leave the bar with Loe, and that Loe led Hovis to a sports utility vehicle ("SUV") where Hovis blacked out almost immediately.[13]  Plaintiffs allege that John Loe raped Hovis in the SUV and that Loe's friend drove Hovis back to her residence hall, where her sorority sisters and roommate had to help her walk.[14]  That same night, Hovis filed a report with the LSU Police Department ("LSUPD"), who then contacted the Baton Rouge Police Department ("BRPD").[15]  BRPD refused to take a statement from Hovis, but LSUPD did not agree with this conclusion and drove Hovis to the hospital for a Sexual Assault Nurse Examiner ("SANE") examination.[16]  According to Plaintiffs, the SANE showed that Hovis's cervix was bruised from the rape.[17]

LSU's Residential Life staff in Hovis's dormitory reported the incident to LSU's Title IX office.[18]  On January 31, 2020, Jennie Stewart, LSU's Title IX Coordinator,[19] met with Hovis to explain her reporting options, and Hovis decided to move forward with a Title IX investigation.[20]  As part of the Title IX process, LSU connected Hovis to the LSU Lighthouse Program, which provides assistance and accommodations to student-survivors of sexual assault, interpersonal violence, stalking, and

---

[12] *Id*. at ¶ 657.  R. Doc. 478-13 at ¶ 4.
[13] R. Doc. 182 at ¶¶ 658-59.
[14] *Id*. at ¶¶ 660-61.
[15] *Id*. at ¶ 665; R. Doc. 478-13 at ¶ 6.
[16] R. Doc. 182 at ¶¶ 666-67; R. Doc. 478-13 at ¶¶ 7-8.
[17] R. Doc. 182 at ¶ 668.
[18] R. Doc. 182 at ¶ 669; R. Doc. 478-13 at ¶ 9.
[19] R. Doc. 182 at ¶¶ 21, 670; R. Doc. 478-13 at ¶ 9.
[20] R. Doc. 182 at ¶¶ 670-71; R. Doc. 478-13 at ¶ 10.

harassment.[21]  The Lighthouse Program arranged accommodations including time and a half on assignments and exams, a notetaker, distraction reduced environments, and consideration for absences as a result of the trauma Hovis endured.[22]  LSU's Title IX investigator, Jeffrey Scott, interviewed Hovis on February 3, 2020.[23]  On March 6, 2020, Investigator Scott concluded that John Loe had violated LSU's Title IX Policy by sexually assaulting Hovis on January 24, 2020.[24]  LSU suspended John Loe from the football team in February 2020.[25]  Loe appealed the Title IX decision, but LSU upheld his suspension.[26]  By electronic letter dated May 1, 2020, LSU suspended John Loe from the university and its campus for one year (from May 10, 2020 to May 31, 2021), and issued a no-contact directive, ordering Loe to have no communication or contact with Hovis.[27]  John Loe never returned to LSU after his suspension because he transferred to another university to play football.[28]

Following the issuance of the no-contact order to John Loe, Hovis received two direct messages on Instagram that she believed were sent on behalf of Loe.[29]  According to Hovis, one message was from someone who represented herself as Loe's possible girlfriend, and the other was from an anonymous football account that Hovis believed to be the same woman.[30]  After receiving the first message from an

---

[21] R. Doc. 182 at ¶¶ 672-73; R. Doc. 478-13 at ¶ 11.
[22] R. Doc. 182 at ¶ 674; R. Doc. 478-13 at ¶ 12.  In response to the Board's Statement of Undisputed Material Facts, Plaintiffs claim that Hovis applied for accommodations on or around January 31, 2020, but that LSU refused to grant these accommodations until June 2020.  R. Doc. 489-1 at ¶ 12.
[23] R. Doc. 182 at ¶ 675; R. Doc. 478-13 at ¶ 13.
[24] R. Doc. 182 at ¶ 677; R. Doc. 478-13 at ¶ 13.
[25] R. Doc. 489-1 at ¶ 14.
[26] *Id*. at ¶ 15.
[27] R. Doc. 182 at ¶ 679; R. Doc. 489-1 at ¶ 16.
[28] R. Doc. 182 at ¶ 682; R. Doc. 489-1 at ¶ 17.
[29] R. Doc. 182 at ¶ 680; R. Doc. 489-1 at ¶ 21.
[30] R. Doc. 182 at ¶ 680; R. Doc. 489-1 at ¶ 22.

anonymous Instagram account, "lsufootballupdates2020," Hovis forwarded the message to Jonathan Sanders, the Associate Dean of Students and Direct of LSU's Office of Student Advocacy & Accountability, on May 8, 2020.[31]  Sanders responded almost immediately, asking whether Hovis knew the person's identity, encouraging Hovis to block the sender, and informing Hovis that he would look into the situation.[32] The second Instagram message came from a different sender, who referred to herself as John Loe's "on-and-off again girlfriend," and Hovis forwarded the message to Jennie Stewart on May 11, 2020, who responded that she was sorry Hovis had to deal with this and said that she would "work on it."[33]  Hovis also forwarded the message to Sanders on May 11, 2020, who responded that he was sorry to hear about it and that he would look further into it.[34]   LSU contacted John Loe about the communications via email and reiterated the no-contact prohibitions, which included no contact to Hovis through a third party.[35]  Hovis does not know whether the two Instagram messages were sent on John Loe's behalf.[36]

Plaintiffs allege that Hovis's grades suffered as a result of the rape, that she had difficulty making it to classes, that she ended up failing and having to pay to retake a class, that her anxiety about seeing John Loe was so overwhelming that she found it nearly impossible to attend a class that took place in a building near the football stadium, and that she had to start seeing a psychiatrist to seek

---

[31] R. Doc. 182 ¶¶ 22; R. Doc. 489-1 at ¶ 23.
[32] R. Doc. 489-1 at ¶ 24.
[33] *Id*. at ¶¶ 28-29.
[34] *Id*. at ¶ 30.
[35] *Id*. at ¶¶ 31-32.
[36] *Id*. at ¶ 34.

accommodations and medical intervention for her PTSD, generalized anxiety disorder, depression, and panic disorder.[37]

On April 26, 2021, Hovis, along with nine other plaintiffs, filed suit against the Board of Supervisors as well as various LSU officials asserting, among other claims, Title IX violations.[38]  In the Second Amended Complaint, Hovis asserted seven claims as follows: Count I, Violation of Title IX, Deliberate Indifference to Sex Discrimination in violation of 20 U.S.C. §§ 1681, et seq.; Count II, Violation of Title IX, Hostile Environment in violation of 20 U.S.C. §§ 1681, et seq.; Count III, Violation of Title IX, Heightened Risk in violation of 20 U.S.C. §§ 1681, et seq.; Count IV, Violation of Title IX, Retaliation by Withholding Protection Otherwise Conferred by Title IX in violation of 20 U.S.C. §§ 1681, et seq.;[39] Count V, First Amendment Retaliation in violation of 42 U.S.C. § 1983 and the First Amendment;[40] Count VI, Denial of Equal Protection in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment;[41] and Count VII, Denial of Substantive and Procedural Due Process in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment.[42]

---

[37] R. Doc. 182 at ¶¶ 683-694.

[38] R. Doc. 1.

[39] Hovis only asserted the claims in Counts I-IV against the Board of Supervisors.  R. Doc. 182 at pp. 91-134.

[40] Hovis only asserted the claim in Count V against individually-named defendants in their individual capacities. *See,* R. Doc. 182 at p. 134.  Those individual defendants were subsequently dismissed from this action. *See* R. Doc. 317, 319, 321, & 323.

[41] Hovis only asserted the claim in Count VI against individually-named defendants in their individual capacities. *See,* R. Doc. 182 at p. 142.  Those individual defendants were subsequently dismissed from this action. *See* R. Doc. 317, 319, 321, & 323.

[42] Hovis only asserted the claim in Count VII against individually-named defendants in their individual capacities. *See,* R. Doc. 182 at p. 145.  Those individual defendants were subsequently dismissed from this action. *See* R. Doc. 317, 319, 321, & 323.

In Count I of the Second Amended Complaint, Plaintiffs allege that the Board of Supervisors violated Title IX due to its deliberate indifference to sex-based discrimination.[43]    Plaintiffs assert that LSU was deliberately indifferent to the harassment experienced by Hovis because John Loe violated his co-contact directive twice, both instances were reported to "Responsible Employees" under LSU's Title IX policy, and "LSU took no action to enforce the no-contact order."[44]    Plaintiffs allege that LSU's deliberate indifference subjected Hovis to additional discrimination in the form of continued harassment by John Loe.[45]    In Count III of the Second Amended Complaint, Plaintiffs allege that the Board of Supervisors created a heightened risk of sex-based discrimination on LSU's campus by cultivating a "culture of silence by failing to report complaints of sex-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits."[46]

In response to a Motion to Dismiss filed by the Board of Supervisors, the Court dismissed Hovis's hostile environment and retaliation claims.[47]    The Court, however, determined that Plaintiffs had alleged sufficient facts in the Second Amended Complaint to assert a plausible Title IX heightened risk claim.[48]    The Court also concluded that Hovis had alleged a plausible Title IX deliberate indifference claim

---

[43] R. Doc. 182 at ¶ 755.

[44] *Id*. at ¶ 837.

[45] *Id*. at ¶ 839.

[46] *Id*. at ¶ 926.

[47] R. Doc. 340.

[48] *Id*. at pp. 35-41.

against the Board of Supervisors "based upon the Board's failure to respond to Loe's alleged violation of the no-contact directive issued by LSU in June 2020."[49]

The Board of Supervisors now seeks summary judgment on Hovis's deliberate indifference and heightened risk claims.[50]  The Board argues that Hovis's deliberate indifference claim is unsupported by the record evidence and that Hovis cannot meet the necessary elements of her heightened risk claim.[51]  The Board further asserts that, to the extent Hovis asserts a heightened risk claim based on an official policy, such claim is unavailable as a matter of law and, further, that Hovis cannot establish the necessary elements of such a claim.[52]  Plaintiffs assert that the Motion should be denied because genuine issues of material fact exist as to the elements of Hovis's deliberate indifference claim and her "Policy-Based, Post-Assault Heightened Risk Claim."[53]  In response, the Board of Supervisors maintains that it is entitled to summary judgment on both of Hovis's claims because Hovis failed to establish all of the elements of her deliberate indifference claim, Hovis did not oppose summary judgment on a pre-assault heightened risk claim, and because a "post-assault heightened risk claim" does not exist.[54]

---

[49] *Id.* at pp. 27-31.
[50] R. Doc. 478.
[51] *Id.*
[52] *Id.*
[53] R. Doc. 489.  *See, Id.* at p. 11.
[54] R. Doc. 500.

## II.    LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[55]  When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[56]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[57]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[58]  Where, as here, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[59]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to

---

[55] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[56] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[57] *Id*. (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[58] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[59] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[60]

**B. Title IX.**

"Congress enacted Title IX in 1972 with two principal objectives in mind: '[T]o avoid the use of federal resources to support discriminatory practices' and 'to provide individual citizens effective protection against those practices.'"[61]  In line with those objectives, Title IX provides that, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[62]  Title IX is enforceable by private right of action for damages.[63] Through this private right of action, institutions receiving federal funds may be liable for, among other things, student-on-student sexual harassment if: (1) the institution had actual knowledge of the harassment; (2) the harasser was under the institution's control; (3) the harassment was based on the victim's sex; (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit;" and (5) the institution was deliberately indifferent to the harassment.[64]

---

[60] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).

[61] *Roe v. Cypress-Fairbanks Ind. Sch. Dist.*, 53 F.4th 334, 340-341 (5th Cir. 2022) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (alteration in original)).

[62] *Roe*, 53 F.4th at 341 (*quoting* 20 U.S.C. § 1681(a)) (internal quotation marks omitted).

[63] *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)).

[64] *Roe*, 53 F.4th at 341 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (alteration in original)) (internal quotation marks omitted).

As explained by our sister court, "The recognition of this private right of action has given rise to two general avenues for Title IX claims—one for claims based on an official policy of discrimination and another for claims based on an institution's actual notice of and deliberate indifference to sexual harassment or assault."[65]  Here, Hovis uses both avenues to advance her claims, asserting a "post-reporting" claim of deliberate indifference as well as a "pre-reporting" heightened risk claim.  This Court has recognized that, despite their differences, the same five elements, set forth above, apply to both claims.[66]

## III.    ANALYSIS

### A. Hovis's Deliberate Indifference Claim

In her post-reporting claim, Hovis alleges that the Board of Supervisors was deliberately indifferent in response to her report that John Loe had twice violated the no-contact directive because LSU failed to discipline Loe, which subjected her to additional discrimination in the form of continued harassment by Loe.[67]  The Board of Supervisors argues that it is entitled to summary judgment on Hovis's deliberate indifference claim because Hovis lacks evidence that John Loe did, in fact, violate the no-contact order,[68] and because the evidence shows that Investigator Scott contacted John Loe about the two communications, showing that LSU did take action in

---

[65] *Doe v. Bd. Of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 467 (M.D. La. 2023) (quoting *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 879 (W.D. Tex. 2019)) (internal quotation marks omitted). *See, Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 657 (W.D. Tex. 2017) (same).

[66] *Doe*, 650 F. Supp. 3d at 468 (citing *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341-42 (5th Cir. 2022)).

[67] R. Doc. 182 at ¶¶ 679-81, 837-38.

[68] R. Doc. 478-12 at p. 7 (*citing* R. Doc. 478-1 at p. 10; R. Doc. 478-6 at ¶ 17; R. Doc. 478-11 at pp. 34-35).

response to her disclosures.[69]  The Board further asserts that Hovis cannot satisfy three elements of her deliberate indifference claim.  First, the Board asserts that Hovis cannot show that the alleged harassment was "so severe, pervasive, or objectively offensive" that it effectively barred her access to an educational opportunity or benefit.[70]  The Board also asserts that Hovis cannot show that John's Loe's alleged assault or the Instagram messages were under the Board's control in this context.[71]  Finally, the Board asserts that Hovis cannot meet her high burden of showing that Board's deliberate indifference caused further harassment.[72]

### 1. Whether the harassment was "so severe, pervasive, and objectively offensive" that it effectively barred Hovis's access to an educational opportunity or benefit.

The Supreme Court has concluded that a defendant can be held liable for damages under Title IX "only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."[73]  The Supreme Court has also suggested, without deciding, that a single instance of sufficiently severe one-on-one peer harassment is unlikely to satisfy the "severe, pervasive, and objectively offensive" standard.[74]  Nonetheless, the Fifth Circuit in *Roe v. Cypress-Fairbanks*

---

[69] R. Doc. 478-12 at pp. 7-8 (*citing* R. Doc. 478-6 at ¶ 17; R. Doc. 478-11 at pp. 19-33).

[70] R. Doc. 478-12 at pp. 8-9.

[71] *Id*. at pp. 9-10.

[72] *Id*. at pp. 10-11.

[73] *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 650, 119 S.Ct. 1661, 1675, 143 L.Ed.2d 839 (1999); *See, Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 342 (5th Cir. 2022) (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011)) (same).

[74] *Davis*, 526 U.S. at 652-53, 119 S.Ct. at 1676.

*Independent School District* recognized a circuit split regarding whether a single instance of sufficiently severe one-on-one peer harassment could ever rise to the level of "pervasive" harassment.[75]   The Fifth Circuit pointed out that while three circuits have held that "pervasive" student-on-student harassment for Title IX purposes requires multiple incidents of harassment,[76] four circuits have held that students must demonstrate only that a school's deliberate indifference made harassment more likely, not that it actually led to any additional post-notice incidents of harassment.[77] Without weighing-in on the circuit split, the Fifth Circuit concluded that a reasonable jury could conclude that the harassment experienced by the plaintiff in *Roe* was pervasive "no matter on which side of the circuit split we fall."[78]

The Board of Supervisors argues that Hovis cannot satisfy this element of her deliberate indifference claim because contact by a third-party via social media on two occasions is not factually comparable to the cases where courts have found severe, pervasive, and objectively offensive conduct.[79]   The Board also relies upon the Court's prior ruling that the Second Amended Complaint failed to allege sufficient facts to

---

[75] *Roe*, 53 F.4th at 342 (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 652-53, 119 S.Ct. 1661, 14 L.Ed.2d 839 (1999)),

[76] *Roe*, 53 F.4th at 342-43 (citing *Kollaritsch v. Mich. State Univ. Bd. Of Trustees*, 944 F.3d 613, 620 (6th Cir. 2019); *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058 (8th Cir. 2017); *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000)).

[77] *Roe*, 53 F.4th at 343 (citing *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F. 4th 257, 275 (4th Cir. 2021); *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1108 (10th Cir. 2019); *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172 (1st Cir. 2007), *rev'd and remanded on other grounds*, 555 U.S. 246, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009); *Williams v. Bd. Of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1295-97 (11th Cir. 2007)).

[78] *Roe*, 53 F.4th at 343.

[79] R. Doc. 478-12 at p. 8 (citing *Henderson v. Bd. Of Supervisors of Southern Univ. and A&M Coll.*, Civ. A. No. 21-297-JWD-RLB, 2022 WL 875592, at *4 (M.D. La. Mar. 23, 2022) (deGravelles, J.); *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 373 (5th Cir. 2019); *Chenier v. Bd. Of Supervisors for Louisiana Sys.*, 2017 WL 3425442, at *10 (E.D. La. Aug. 8, 2017)).

show that John Loe's violation of the no-contact directive was so severe, pervasive, and objectively offensive that it barred Hovis access to educational opportunities or benefits.[80]   The Board points out that the Court reviewed the allegations in the Second Amended Complaint and concluded that none of Plaintiffs' allegations "connect Hovis' alleged deprivation of access to educational opportunities and benefits to Loe's violation of the no-contact directive in May 2020."[81]

Plaintiffs adopt the arguments made in another opposition brief filed contemporaneously with this one, presumably the portion in which Plaintiffs asserted that they need only show that the harassment had a "concrete, negative effect" on their education to satisfy this element.[82]   The Court will also assume that Plaintiffs intend to adopt their prior assertion that, "[T]he continuing presence of the harasser may so alter the terms and conditions of education that the victim of harassment may be able to establish a claim for sex discrimination."[83]   Plaintiffs assert in their Opposition brief that, "As a result of her rape and subsequent harassment, Plaintiff suffered several negative consequences on access to her education."[84]   Plaintiffs claim that this Court has found that a "reasonable jury could conclude that further *encounters, of any sort*, between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational

---

[80] R. Doc. 478-12 at p. 9 (*citing* R. Doc. 340 at pp. 34-35).

[81] R. Doc. 478-12 at p. 9 (*quoting* R. Doc. 340 at p. 35) (internal quotation marks omitted); R. Doc. 478-12 at p. 11 (*citing* R. Doc. 340 at pp. 34-35).

[82] R. Doc. 489 at p. 5 (*citing* R. Doc. 485 at pp. 11-16).

[83] R. Doc. 485 at p. 15 (quoting *Wills v. Brown Univ.*, 184 F.3d 20, 37 (1st Cir. 1999)) (internal quotation marks omitted).

[84] R. Doc. 489 at p. 5.

opportunities provide by a university."[85]  Plaintiffs then point out that the plaintiff in that case, "as in the present case, changed her routines and avoided certain areas of campus to minimize chance encounters with her assailant, plainly depriving her of the full scope of opportunities provided by her university."[86]  Plaintiffs then assert that Hovis's abuse "profoundly interfered" with her education and educational opportunities because she was diagnosed with PTSD and ADHD after the sexual assault, she was denied accommodations from LSU's Disability Services, and she failed a class because a professor refused to honor the accommodation.[87]  Plaintiffs maintain that a reasonable juror could find that Hovis suffered from harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived her of access to the educational opportunities or benefits provided by LSU.

In response, the Board asserts that Hovis failed to argue that the two messages were severe, pervasive, and objectively offensive, and instead argued that "as a result of her rape" she experienced "consequences."[88]  The Board claims that while Plaintiffs cite authorities discussing whether Hovis's rape was severe and pervasive, the issue before the Court is whether the two messages Hovis received after LSU issued the no-contact order were severe, pervasive, and objectively offensive.[89]  As to the deprivation of educational opportunities, the Board points out that the Court has already found that Hovis failed to link her alleged deprivation of access to educational

---

[85] *Id*. at pp. 5-6 (quoting *Doe v. Bd. Of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 467 (M.D. La. 2023) (citing *Kelly v. Yale Univ.*, Civ. A. No. 01-cv-1591, 2003 WL 1563424, at *3 (D. Conn. Mar. 26, 2003) (Hall, J.))) (emphasis added by Plaintiffs).

[86] R. Doc. 489 at p. 5 (citing *Doe*, 650 F. Supp. 3d at 470).

[87] R. Doc. 489 at p. 5 (*citing* R. Doc. 489-2 at pp. 31-32, 34, 37, 38-39, 42, & 49-50).

[88] R. Doc. 500 at p. 3 (*quoting* R. Doc. R. Doc. 489 at p. 5) (internal quotation marks omitted).

[89] R. Doc. 500 at p. 4 (*citing* R. Doc. 489 at p. 5, n.28).

opportunities and benefits to John Loe's alleged violation of the no-contact order in May 2020.[90]    The Board claims that Plaintiffs merely assert the effects Hovis experienced from her alleged rape, rather than Loe's alleged violation of the no-contact order.[91]    The Board asserts that the Court previously described Hovis's deliberate indifference claim as "thin," and further argues that Hovis has failed to come forward with any disputed issues of fact to avoid summary judgment on this claim.[92]

The Court agrees with the Board of Supervisors that Plaintiffs have failed to show that John Loe's alleged violation of the no-contact order in May 2020 was so severe, pervasive, and objectively offensive that it effectively denied Hovis educational opportunities or benefits at LSU.  Specifically, Plaintiffs failed to cite any legal authority or make any argument to suggest that the two Instagram messages allegedly sent by John Loe's then-girlfriend constitute harassment that was severe, pervasive, or objectively offensive.[93]    Instead, Plaintiffs focus on the severity of Hovis's rape by John Loe.[94]    That, however, is not the issue before the Court, as the Court previously determined that Hovis had alleged a plausible claim for deliberate indifference based upon LSU's response, or lack thereof, to Hovis's report that John Loe twice violated the no-contact order issued by LSU.[95]    To the extent that Plaintiffs rely on a prior decision from this Court for the notion that, "further *encounters, of any*

---

[90] R. Doc. 500 at p. 5 (*citing* R. Doc. 340 at pp. 34-35).
[91] R. Doc. 500 at p. 5 (*citing* R. Doc. 489 at p. 6).
[92] R. Doc. 500 at p. 6 (*citing* R. Doc. 340 at p. 29).
[93] *See*, R. Doc. 480 at pp. 5-6.
[94] R. Doc. 489 at p. 5.
[95] R. Doc. 340 at p. 29.

*sort*, between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities provided by a university,"[96] as the Board correctly points out,[97] Plaintiffs have not alleged, nor does the evidence before the Court reflect, that Hovis had any further encounters with John Loe after the rape. The Court therefore finds that Plaintiffs have failed to raise a genuine issue of material fact regarding whether the two Instagram messages Hovis received constitute harassment that was severe, pervasive, and objectively offensive.

Plaintiffs have likewise failed to assert any facts or point to any evidence to show that the two Instagram messages that Hovis received caused a deprivation of educational opportunities or benefits offered by LSU. Instead, Plaintiffs erroneously focus on the alleged deprivation of opportunities that Hovis claims she suffered as a result of her rape by John Loe.[98] Again, that is not the proper inquiry at this juncture, since the Court previously determined that Hovis had alleged a plausible deliberate indifference claim based upon the Board's failure to respond to John Loe's alleged violation of the no-contact order issued by LSU.[99] The proper inquiry, drawing all inferences in favor of Hovis, is whether Hovis has raised a genuine dispute regarding whether she suffered a deprivation of educational opportunities as a result of John Loe's alleged violation of the no-contact order, *not* as a result of her rape. As in the

---

[96] R. Doc. 489 at p. 6 (quoting *Doe v. Bd. Of Supervisors of the Univ. of Louisiana Sys.*, 650 F. Supp. 3d 452, 470 (M.D. La. 2023)) (internal quotation marks omitted) (emphasis added by Plaintiffs).
[97] R. Doc. 500 at p. 4, n.8.
[98] R. Doc. 489 at p. 6.
[99] R. Doc 340 at p. 31.

prior Order and Reasons, the Court again finds that Plaintiffs have failed to allege any facts to show that Hovis was denied educational opportunities or benefits as a result of John Loe's alleged violation of the no-contact order.[100]  As such, and viewing the evidence in a light most favorable to Hovis, the Court finds that Plaintiffs have failed to raise a genuine dispute regarding whether the two Instagram messages constitute harassment that was so severe, pervasive, and objectively offensive that it effectively barred Hovis's access to an educational opportunity or benefit offered by LSU.  The Board is therefore entitled to summary judgment on Hovis's post-assault deliberate indifference claim.[101]

### B. Hovis's Policy-Based Heightened Risk Claim

Plaintiffs allege in their Second Amended Complaint that the Board of Supervisors' Title IX policies and practices were so deficient that the Board of Supervisors "cultivated a culture of silence by failing to report complaints of sex-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits or grievance procedures . . . ."[102]  The Court refers to this as Hovis's policy-based heightened risk claim, which is the only heightened-risk claim asserted by Hovis.[103]  The Board of Supervisors argues that it

---

[100] R. Doc. 340 at pp. 33-35.

[101] Because the Court finds that Hovis has failed to raise a genuine dispute regarding this element of her post-reporting deliberate indifference claim, and Hovis must show that she can establish each of the five elements of her deliberate indifference claim, the Court need not address the Board's arguments regarding whether Hovis can establish the control or deliberate indifference elements.

[102] R. Doc. 182 at ¶¶ 926-928.

[103] The Court notes that Plaintiffs also allege in the Second Amended Complaint that LSU created a heightened risk of sexual misconduct on campus with regard to John Loe's victims by allowing Loe to violate the no-contact order issued against him as to Hovis by doing nothing to discipline Loe or enforce

is entitled to summary judgment because a heightened risk claim based on an official policy has not been recognized by the Fifth Circuit and, even if it were available, the evidence shows that Hovis cannot establish such a claim.[104]

At the outset, the Court rejects as baseless the Board of Supervisors' assertion that a heightened risk claim based upon an official policy is unavailable, as the Supreme Court has implicitly recognized a heightened risk claim based upon an institution's official policy.[105]  Additionally, the Fifth Circuit clearly recognized a policy-based heightened risk claim in *Roe v. Cypress-Fairbanks Independent School District*, although the court ultimately determined that the plaintiff failed to raise a

---

the order, which substantially heightened Hovis' risk of victimization. R. Doc. 182 at ¶ 935. In their Opposition brief, however, Plaintiffs do not argue that Hovis has asserted a perpetrator-based heightened risk claim. Instead, Plaintiffs seem to argue that the Board is not entitled to summary judgment on Hovis's policy-based heightened risk claim. R. Doc. 489 at p. 11. The Court is also aware of Plaintiffs' assertion in another opposition brief that, "In the present matter, all Plaintiffs have Policy-Based Heightened Risk claims; Plaintiffs Jade Lewis, Calise Richardson, Abby Owens, and Samantha Brennan also have Perpetrator-Based Heightened Risk claims; and Plaintiff Corinn Hovis also has a Deliberate Indifference claim." R. Doc. 480 at p. 7. Thus, the Court construes the Second Amended Complaint as asserting only a policy-based heightened risk claim as to Hovis. The Court recognizes, however, that Plaintiffs address only a "Policy-Based, Post-Assault Heightened Risk Claim" in their Opposition brief. R. Doc. 489 at p. 11. This appears to be a typographical error, and the Court will treat it as such, because Plaintiffs go on to address the four factors of a policy-based heightened risk claim. *Id.* The Court notes that the Board did not extend the same courtesy to Plaintiffs in its Reply brief, and instead the Board argues that Plaintiffs did not oppose summary judgment on a pre-assault heightened risk claim and that a post-assault heightened risk claim does not exist. R. Doc. 500 at p. 6. As such, the Board did not address Plaintiffs' arguments regarding the four elements of Hovis's heightened risk claim in its Reply brief. *See, generally,* R. Doc. 500.

[104] R. Doc. 478-12 at pp. 12-13.

[105] *See, Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (distinguishing claims involving an "official policy" of discrimination from those seeking to hold an institution liable for the discriminatory acts of an individual); *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (recognizing that an institution cannot be liable unless it has notice that its conduct could subject it to a damages claim, but clarifying that "this limitation on private damages actions is not a bar to liability where a funding recipient intentionally violates the statute.") (quoting *Franklin v. Gwinnett Cnty. Pub. Schools*, 503 U.S. 60, 74-75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)) (internal quotation marks omitted).

genuine dispute as to the elements of the claim.[106]    The Board of Supervisors acknowledges *Roe*, though it contends that the Fifth Circuit "seemingly recognized" the possibility of a pre-assault heightened risk claim in the context of student-on-student sexual harassment.[107]    The Court agrees with the Plaintiffs that *Roe* does not foreclose a policy-based heightened risk claim.[108]    The Court further notes that several district courts in this Circuit, including this one, have recognized a policy-based heightened risk claim.[109]    The Board of Supervisors fails to acknowledge or

---

[106] 53 F.4th 334, 341-42 (5th Cir. 2022) ("Roe first argues that the district's Title IX policies and practices were so deficient that the District was deliberately indifferent to the risk of her sexual assault. . . . . Relatedly, Roe also argues that the District was deliberately indifferent to the known risk of dating violence and sexual assault at Cypress Creek. . . . [T]hese theories do not suffice under our circuit's binding case law.  Even if Roe is correct that the District failed to appropriately implement its Title IX obligations, she does not connect this failure to the District's knowledge about her in particular. . . . Furthermore, the District's response to other incidents of sexual harassment do not show the District's knowledge of a substantial risk of *Roe's* sexual assault."  The Fifth Circuit explained that, "While genuinely disturbing, neither [argument] shows actual knowledge of Roe's risk of sexual assault.") (emphasis in original).

[107] R. Doc. 478-12 at p. 13 (*citing* R. Doc. 469-14 at pp. 16-25); *See,* R. Doc. 469-14 at p. 10 (citing *Roe,* 53 F.4th at 340).

[108] R. Doc. 489 at p. 11 (*citing* R. Doc. 480 at pp. 14-23); R. Doc. 480 at pp. 14-20.

[109] *See, Doe v. Bd. Of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 467 (M.D. La. 2023) ("The recognition of this private right of action has given rise to two general avenues for Title IX claims—one for claims based on an official policy of discrimination and another for claims based on an institution's actual notice of and deliberate indifference to sexual harassment or assault.") (quoting *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 879 (W.D. Tex. 2019)) (internal quotation marks omitted); *Lozano*, 408 F. Supp. 3d at 882 ("The Court finds that Lozano has plausibly alleged that Baylor's selective enforcement of reports of domestic abuse and sexual assault created a heightened risk of assault, which subjected her to a sexually discriminatory education environment under Title IX. Lozano's heightened risk claim fits squarely within the official-policy rubric previously identified by the Supreme Court."); *Gruver v. La. through Bd. Of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 401 F. Supp. 3d 742, 762 (M.D. La. 2019) ("The Court finds that, as in *Baylor*, if these facts are proven, a jury may infer that LSU's policy created the heightened risk to Greek male students of serious injury or death by hazing, thereby inflicting the injury alleged herein.") (citing *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646 (W.D. Tex. 2017)); *Doe 12 v. Baylor Univ.*, 336 F. Supp. 3d 763, 783 (W.D. Tex. 2018) (concluding that, "These alleged facts, construed as true, 'raise a right to relief above the speculative level' that Baylor's policy or custom of inadequately handling and even discouraging reports of peer sexual assault constituted an official policy of discrimination that created a heightened risk of sexual assault, thereby inflicting the injury of which Plaintiffs complain.") (footnote and citation omitted); *Doe 1*, 240 F. Supp. 3d at 661 ("Plaintiff's heightened-risk claims fit squarely within the official-policy rubric previously identified by the Court, and the Court is satisfied that Plaintiffs have met their burden under Rule 12(b)(6).").

address this authority in its Motion or Reply brief. To the extent the Board of Supervisors asserts that, "this Court's ruling on the Board's motion to dismiss does not suggest that an official policy claim remains in this case,"[110] the Board of Supervisors misconstrues the Court's prior ruling, which is not as narrow as the Board contends.

Plaintiffs assert in the Second Amended Complaint that the Board of Supervisors' handling of reports of sexual assault created a heightened risk of sexual assault because "LSU knew of and permitted a campus condition rife with sexual misconduct, and sexual misconduct was rampant on campus."[111] Plaintiffs allege that the Board of Supervisors had an official policy, practice, and/or custom of deliberate indifference through which it cultivated a culture of silence by failing to: report complaints of sex-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits or grievance procedures."[112] Specifically, Plaintiffs assert that the Board of Supervisors failed to properly train employees in their Title IX reporting obligations, failed to ensure employee compliance with Title IX Policy, failed to report complaints of sex-based discrimination, and failed to initiate and/or conduct adequate investigations and grievance procedures under Title IX.[113]

---

[110] R. Doc. 478-12 at p. 13 (*citing* R. Doc. 340).
[111] R. Doc. 182 at ¶¶ 917-921.
[112] *Id*. at ¶ 926.
[113] *Id*. at ¶¶ 922 & 926.

Although not specifically asserted by either party, both parties seem to recognize that there is no Fifth Circuit authority regarding the analytical framework applicable to policy-based heightened risk claims.[114]  The parties seem to agree that a policy-based heightened risk claim requires a plaintiff to prove the following four elements: (1) the institution maintained a policy of deliberate indifference to reports of sexual misconduct; (2) which created a heightened risk of sexual harassment that was known or obvious; (3) in a context subject to the school's control; and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."[115]  The Board argues that Hovis cannot satisfy any of these elements,[116] while Plaintiffs argue that a genuine dispute of genuine fact exists as to each element.[117]

### 1. Element one: Whether the Board of Supervisors had a policy of deliberate indifference to reports of sexual misconduct.

The Board of Supervisors asserts that it is entitled to summary judgment on Hovis's heightened risk claim because she cannot establish that LSU had an official policy of deliberate indifference to reports of sexual misconduct.[118]  The Court

---

[114] *See,* R. Doc. 478-12 at pp. 12-19; R. Doc. 489 at p. 11 (*citing* R. Doc. 480 at pp. 14-23).

[115] R. Doc. 478-12 at pp. 13-19 & nn.24, 27 (citing *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1112 (9th Cir. 2020); *Doe v. Texas A&M Univ.*, 634 F. Supp. 3d 365, 376 (S.D. Tex. 2022)); R. Doc. 489 at p. 11 (*citing* R. Doc. 480 at pp. 14-23).  *See,* R. Doc. 480 at pp. 13-14 (citing *Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 35 F.4th 459, 464-65 (6th Cir. 2022), cert. denied sub nom. *Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Doe*, 143 S.Ct. 574, 214 L.Ed.2d 340 (2023)).  The Court notes that the Board of Supervisors lists the fourth element as "causation."  R. Doc. 478-12 at pp. 18-19.

[116] R. Doc. 478-12 at pp. 13-19.

[117] R. Do. 489 at p. 11.

[118] R. Doc. 478-12 at pp. 13-17.

disagrees. "The Supreme Court has repeatedly explained that where the Title IX violation in question is caused by an institution's discriminatory policy or custom, courts need not apply the actual notice and deliberate indifference framework typically used in cases involving institutional liability for sexual harassment or assault."[119] "In evaluating such claims, courts must consider whether the defendant-institution's policy or custom inflicted the alleged injury."[120] In its Motion, the Board of Supervisors recognizes that:

> "a funding recipient can be said to have 'intentionally acted in clear violation of Title IX' when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient."[121]

Plaintiffs have gone beyond the pleadings and produced an overwhelming amount of evidence that raises a genuine issue of material fact regarding whether the Board of Supervisors maintained a policy of deliberate indifference to reports of sexual misconduct before Hovis was raped by John Loe in January 2020. Specifically,

---

[119] *Doe 12 v. Baylor Univ.*, 336 F.Supp.3d 763, 779 (W.D. Tex. 2018) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (stating that the actual notice and deliberate indifference requirements are restricted to those cases "that do not involve [an] official policy of the [funding recipient]"); *Davis Next Friend LaShonda D v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (acknowledging that an institution cannot be liable unless it has notice that its conduct could subject it to a damages claim but providing that "this limitation . . . is not a bar to liability where a funding recipient intentionally violates the statute")). *See, Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 661 (W.D. Tex. 2017) (same).

[120] *Doe 12*, 336 F. Supp. 3d at 779-80 (citing *Gebser*, 524 U.S. at 291, 118 S.Ct. 1989 (locating an analogue to the Title IX jurisprudence in the municipal liability doctrine); *Bd. Of Cnty. Comm'rs Bryan Cnty. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (explaining that plaintiffs seeking to impose liability on a municipality under § 1983 must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury"); *Collins v. City of Harker Heights*, 503 U.S. 115, 122, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (noting the necessity of analyzing whether execution of a municipal policy inflicted the injury)). *See, Doe 1*, 240 F. Supp. 3d at 661 (same).

[121] R. Doc. 478-12 at p. 13 (*citing* R. Doc. 469-14 at pp. 16-25); R. Doc. 469-14 at p. 18 (quoting *Simpson v. Univ. of Colorado, Boulder*, 500 F.3d 1170, 1178 (10th Cir 2007)) (internal quotation marks omitted).

Plaintiffs have provided evidence supporting their contention that LSU had a longstanding policy of ignoring, underfunding, and undermining its official Title IX program by willfully refusing to allocate sufficient funding to the Title IX program, knowingly allowing various departments, including the Athletic Department, to circumvent the Title IX office and handle reports of sexual misconduct and harassment internally through school officials who were not given proper training, and by failing to follow industry-standard recommendations and best practices made by their own Title IX Coordinator and independent outside auditors.

First and foremost, there is the Husch Blackwell report, commissioned by LSU and issued on March 3, 2021, which reviewed, among other things, "Over 60 Title IX investigation case files from 2015 to present."[122]  One of the conclusions reached in the report is that, "Various incidents of athletics-related misconduct have not been appropriately reported to the University's Title IX Coordinator."[123]  The report further provides that, "our concerns about reporting are not limited to Athletics. Institutional reporting policy and training have been unclear for years."[124]  The authors of the report observed that, "there was a clear lack of leadership in providing clarity about institutional reporting obligations.  This was a long-recognized problem at the University that was never meaningfully addressed."[125]  The Husch Blackwell report also concluded that LSU's Title IX office "has never been appropriately staffed

---

[122] R. Doc. 489 at p. 1 (*citing* R. Doc. 483 at pp. 2-13 (*citing* R. Doc. 483-28))).  *See,* R. Doc. 483-28 at pp. 1 & 4.
[123] R. Doc. 483-28 at p. 5.
[124] *Id.* at pp. 5-6.
[125] *Id.* at p. 76, n.171.

or provided with the independence and resources to carry out Title IX's mandates. We have identified concerns that the Office has at times not handled those matters reported to it appropriately."[126]  The report again notes that, "while the *USA Today* article focused primarily on Athletics, we found deficiencies in a variety of different matters."[127]  The Husch Blackwell report also found that, "the University was slow to adopt Title IX policies, hire personnel, or meaningfully address concerns identified by community members and internal and external reviews."[128]

The Husch Blackwell report further states that, "Many of the issues identified throughout this report have been flagged previously in other reviews of the University's Title IX operations," and that, "over the last five years, there have been at least five reviews (three from external consultants and firms, one from the University's Office of Internal Audit, and one from a University task force) conducted by the University which have touched on Title IX issues."[129]  The report mentions that on August 30, 2016, LSU President F. King Alexander issued a "Presidential Charge" to create a "task force" of students, faculty, and staff to review LSU's "current policies, practices, and procedures as they relate to Title IX and to provide recommendations to the President that reflect campus needs and are informed by nationally-recognized benchmarked practices."[130]  The task force submitted a report in February 2017 with 17 recommendations regarding Title IX compliance.[131]  The

---

[126] *Id*. at p. 6.
[127] *Id*.
[128] *Id*.
[129] *Id*. at p. 38.
[130] *Id*. (citation omitted).
[131] *Id*. at pp. 41-44.

Husch Blackwell report states that, "As part of this review, we have been unable to find any documentation memorializing how this Task Force report was assessed or addressed by the leadership of the University."[132]

The Husch Blackwell report points out that additional internal and external reviews of LSU's Title IX Policy were conducted in 2016, 2017, 2018, and 2019.[133] The Husch Blackwell report states that, "Remarkably, the [2019] report, which was done in part to assess the University's Title IX policies and practices as they apply to LSU's Athletics Department, was never shared with the University's Title IX Office or the Athletics Department."[134] The "Recommendations" section of the Husch Blackwell report reiterates that, "Institutional policies were unclear, edicts were issued by supervisors that conflicted with policy, employees were overburdened with vast institutional roles and not provided with appropriate resources, calls for additional resources went unheeded, concerns were not responded to, etc."[135] The report further states that, "As demonstrated in this report, the University has been provided with recommendations for years about Title IX which have never been implemented."[136]

There are also several letters and emails in the record, seemingly in response to the serious allegations and conclusions contained in the Husch Blackwell report, wherein LSU officials admit to the university's failings in its Title IX reporting obligations. There is a letter from James Stephen Perry, a former member of the

---

[132] *Id*. at p. 44.
[133] *Id*. at pp. 39-40, 44-48.
[134] *Id*. at p. 48.
[135] *Id*. at p. 139.
[136] *Id*. at p. 146.

Board of Supervisors, directed to "Senator Barrow and Committee Members," in which Perry asserts that, "the University had failed its students," and that, "[t]here can be no question that LSU failed in its duties and that there were structural, communication, chain of command, and individual performance failures."[137]  Perry further states that he had read that, "many violations and threats against women students both inside of and outside of the Athletics Department never even reached the Title IX office."[138]  There is also a letter issued by Jane Cassidy, Interim VP of Civil Rights & Title IX, to "LSU Students, Faculty, and Staff" wherein she admits that, "We now know with great clarity that our system to protect one another from sexual harassment and violence has failed, and we must act expeditiously to remediate the problem."[139]  Board of Supervisors President Remy Voisin Starns also issued a statement stating, "I . . . want to apologize to the survivors.  Our university did not do right by you.  We see that now, and we are here to tell you that it's not okay."[140]

Plaintiffs have also provided evidence indicating that LSU Interim President Tom Galligan testified to the Louisiana Senate that, "there was no culture of punishment at LSU.  There was no notice at the time as to what would happen.  The policies were very unclear.  There were directions within departments to report title

---

[137] *See,* R. Doc. 489 at p. 1 (*citing* R. Doc. 483 at pp. 2-13); R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-4 at p. 1) (internal quotation marks omitted).  The Court notes that there is no date on the letter.

[138] R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-4 at pp. 1-2) (internal quotation marks omitted).

[139] R. Doc. 483 at p. 2 (*quoting* R. Doc. 483-5) (internal quotation marks omitted).  The Court notes that there is no date on the letter.

[140] R. Doc. 483 at p. 2 (*quoting* R. Doc. 483-17) (internal quotation marks omitted).  The Court notes that there is no date on Starns' statement.

IX issues to places they should not have been reported."[141]  Galligan also admitted that LSU's "most serious misstep.  And this is noted in the Husch Blackwell report, is failing to report by employees when they didn't understand they were responsible or they didn't comply with the regulation."[142]  In a letter to the "LSU Community" on March 5, 2021, Galligan advised that the results of the Husch Blackwell report would be disclosed and that, "Perhaps most troubling of all the report's findings is the understanding that, whether through our actions or inactions, our institution betrayed the very people we are sworn to protect.  Our job is to protect our students and support them in their times of need.  It has become clear we haven't always fully lived up to our commitment."[143]

The Husch Blackwell report further details that complaints of Title IX violations by LSU athletes were handled within the LSU Athletics Office, mostly through Miriam Segar.[144]  One example included in the report shows that despite having actual knowledge of plaintiff Ashlyn Mize-Robertson's alleged rape by another football player, John Doe, in January 2016, Miriam Segar, the Senior Associate Athletics Director and Senior Woman Administrator for LSU,[145] intentionally omitted John Doe's name from the Title IX records pertaining to the rape.[146] According to the Husch Blackwell report, when Segar was asked why John Doe's name was not included in the written report she submitted to the Title IX office, Segar

---

[141] R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-53) (internal quotation marks omitted).
[142] R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-53) (internal quotation marks omitted).
[143] R. Doc. 483 at p. 3 (*quoting* R. Doc. 483-8) (internal quotation marks omitted).
[144] R. Doc. 483-28, specifically at pp. 5, 48.
[145] R. Doc. 182 at ¶ 20.
[146] R. Doc. 483-28 at pp. 95-98.

stated that she "didn't want to put it in writing" because she gets a lot of public records requests and she "didn't think it was super secure."[147]  The Court is also aware of evidence in the record showing that Segar testified that, "So, it was that was just how we did it back then,"[148] which further raises a genuine fact regarding whether "that was just how we did it back then" references a widespread policy or practice of deliberate indifference.  Another incident detailed in the Husch Blackwell report involved an allegation of sexual harassment against a student-athlete that occurred off campus, which was received by the Athletics Office on December 13, 2019.[149]  The report notes that the Title IX Office did not receive any information about the report until the victim herself contacted the office, despite the fact that the Athletics Office had received the complaint.[150]  The report then advises, "[Miriam] Segar indicated that 'she was aware of the information' and that they 'were notified about a week ago.'  Despite that, Segar did not report the matter to the Title IX Office. This was an error if for no other reason than LSU's Title IX policy applied to 'off campus' conduct in certain situations."[151]  Regarding that particular incident, the report further documented that Segar indicated that, "Athletics conducted its own investigation into the matter" and concluded that it was not a Title IX violation.[152] The Husch Blackwell report further included that, "Individuals who participated in our Community Input interviews and who have worked in Athletics described a

---

[147] *Id,* at p. 97.
[148] R. Doc. 470-6 at pp. 10-11; R. Doc. 481-20 at p. 2.
[149] R. Doc. 483-28 at p. 102.
[150] *Id.*
[151] *Id.*
[152] *Id.*

culture that does not promote reporting of alleged misconduct. . . . Individuals also described a structure in Athletics that attempts to manage reports directly so as not to draw attention to cases."[153]  The Husch Blackwell report concluded, "The process whereby one person in Athletics serves as the gatekeeper of discrimination reports (and whether they get to the Title IX coordinator) **must end immediately**.  This process has served no one well."[154]

The Court finds that the foregoing evidence is more than sufficient to raise a genuine issue of fact regarding whether the Board of Supervisors had a policy of deliberate indifference to reports of sexual misconduct prior to John Loe's rape of Hovis in January 2020.  The Court further finds that this dispute is material, as LSU's policy or practice of deliberate indifference is crucial to a determination of Hovis's policy-based heightened risk claim.  As such, the Motion is denied to the extent that the Board seeks summary judgment on the basis that Hovis cannot establish this element of her claim.

### 2. *Whether the Board of Supervisors' policy of deliberate indifference to reports of sexual misconduct created a heightened risk of sexual harassment to Hovis that was known or obvious.*

The Board of Supervisors argues that Hovis cannot show that the risk of sexual misconduct that would result from any official policy of deliberate indifference was "known or obvious" because Hovis does not allege that John Loe assaulted anyone before Hovis.[155]  The Board claims that LSU did not receive any other reports

---

[153] *Id.* at p. 135.
[154] R. Doc. 483-28 at p 145 (emphasis in original).
[155] R. Doc. 478-12 at pp. 17-18 (*citing Doe v. Texas A&M Univ.*, 634 F. Supp. 3d 365, 376 (S.D. Tex. 2022); R. Doc. 182 at ¶¶ 651-98).

regarding John Loe's conduct prior to Hovis's report,[156] and further asserts that Plaintiffs "have no evidence of widespread, systemic conduct that would put LSU on notice of a particularized risk of sexual misconduct in the context that Hovis alleges."[157]

Plaintiffs, adopting by reference the arguments made in another opposition brief filed contemporaneously with this one, seem to assert that causation is a question of fact for the jury.[158]   In the other opposition brief, Plaintiffs argued that, "the occurrence of sexual misconduct on campus is the expected consequence of covering up sexual misconduct on campus, failing to meaningfully investigate Title IX complaints, failing to adequately train staff with respect to responding to sexual misconduct, and failing to adequately train students with respect to sexual misconduct."[159]   Plaintiffs also asserted that, "Plaintiff's sexual assault was the sort of injury that would be expected to result from LSU's policy of deliberate indifference to sexual misconduct on campus, and summary judgment on causation must be denied."[160]

The Court finds that the same evidence referenced above raises a genuine dispute regarding whether the Board's policy of deliberate indifference created a

---

[156] R. Doc. 478-12 at p. 18.   The Court notes that while the Board cites "Board 30(b)(6) I 48-49" in support of this assertion, the portion of the deposition transcript from the Fed. R. Civ. P. 30(b)(6) deposition of the Board of Supervisors, submitted by the Board, does not include pages 48 or 49, or any reference to Hovis or John Loe.  *See, generally*, R. Doc. 478-4.

[157] R. Doc. 478-12 at p. 18 (citing authority).

[158] R. Doc. 489 at p. 11 (*citing* R. Doc. 480 at p. 21).

[159] R. Doc. 480 at p. 21.

[160] *Id.*

heightened risk of sexual harassment to Hovis that was "known or obvious."[161]  This is especially true in light of the wide timespan that the Husch Blackwell report encompassed, which included the timeframe before Hovis's rape.  It is also significant that the Husch Blackwell report reveals that the 2019 Morgan Lewis Review, which was done in part to assess LSU's Title IX policies and practices as they apply to LSU's Athletics Department, was never shared with the University's Title IX Office or the Athletics Department.[162]  The Court agrees with Plaintiffs that additional sexual misconduct on campus is the expected consequence of failing to meaningfully investigate and report Title IX complaints and failing to adequately train staff and students regarding how to respond to sexual misconduct.[163]  The Court finds merit in the principle espoused in the Husch Blackwell report that, "Institutional failure to respond appropriately to allegations of sexual misconduct creates a variety of harms for the survivors.  Failing to respond appropriately also reinforces justifications for victims to not come forward in the first place.  This is a tragedy in its own right but can also create a fertile ground for serial perpetrators."[164]

Determining whether the Board of Supervisors' policy of deliberate indifference to reports of sexual misconduct created a heightened risk of sexual harassment that was known or obvious will require credibility determinations and the weighing of evidence, which is inappropriate at the summary judgment stage.

---

[161] *Doe v. Texas A&M Univ.*, 634 F. Supp. 3d 365, 376 (S.D. Tex. 2022) (citing *Karasek v. Regents of Univ. of Calif.*, 956 F.3d 1093, 1112 (9th Cir. 2020)).
[162] R. Doc. 483-28. at p. 48.
[163] R. Doc. 480 at p. 21; *See,* R. Doc. 483-28.
[164] R. Doc. 483-28 at pp. 7-8.

Moreover, the Court rejects as baseless the Board of Supervisors' assertion that Plaintiffs "have no evidence of widespread, systemic conduct that would put LSU on notice of a particularized risk of sexual misconduct in the context that Hovis alleges."[165]  The Board's position is contradicted by the evidence set forth above and incorporated by reference in Hovis's Opposition brief.  Accordingly, the Court find that genuine issues of material fact preclude summary judgment on the basis that Hovis cannot satisfy the second element of her policy-based heightened risk claim.

### 3. Element three: Whether Hovis's alleged sexual assault occurred in a context subject to the Board's control.

To satisfy the third element of Hovis's policy-based heightened risk claim, Plaintiffs must show that the Board of Supervisors "exercises substantial control over both the harasser and the context in which the known harassment occurs."[166]  The Board of Supervisors argues that Hovis cannot satisfy this element because the Board did not control the circumstances of Hovis's alleged assault or the subsequent direct messages from third parties.[167]  The Board points out that Hovis alleges that John Loe raped her in an SUV and then his friend drove her back to her residence hall, that she reported that she believed she had been drugged and sexually assaulted while at Tigerland, and that BRPD was alerted because the incident occurred off-campus.[168]  Thus, the Board asserts that Hovis has alleged that the rape occurred in circumstances outside of the Board's "substantial control."[169]  Incorporating by

---

[165] R. Doc. 478-12 at p. 18 (citing authority).
[166] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 644-45, 119 S.Ct. 1661, 1672, 143 L.Ed.2d 839 (1999).
[167] R. Doc. 478-12 at p. 18.
[168] *Id.* (*citing* R. Doc. 478-12 at pp. 9-10 (*citing* R. Doc. 182 at ¶¶ 660-61, 664-65)).
[169] R. Doc. 478-12 at pp. 9-10 (*citing* R. Doc. 469-14 at pp. 11-12).

reference the arguments made in another motion before the Court, the Board seems to assert that Hovis cannot satisfy this element of her claim because "Title IX does not cover student-on-student harassment that occurs off-campus, outside of a school program/activity, and outside of a context that is under the school's 'substantial control.'"[170]  The Board further asserts that social media messages sent by third-parties likewise do not "occur under the operations of a funding recipient" that would place them "in a context subject to the school district's control."[171]

Without addressing the Board's arguments directly, Plaintiffs incorporate by reference the arguments made in another opposition brief filed contemporaneously with this one, and assert that a genuine issue of material fact exists as to whether Hovis's harassment occurred in a context subject to the Board's control.[172]  The Court assumes that Plaintiffs intend to incorporate their prior argument that the control element is a "fact specific question" and that a school's disciplinary authority over a student can satisfy the control element.[173]  The Court also assumes that Plaintiffs intend to adopt their prior argument that "context" is "broader than the specific location where the harassment occurs—something more like the 'circumstances' or 'conditions' of the abuse,'" and may include "where the University permitted a hostile environment for female students to flourish."[174]   In the other opposition brief,

---

[170] R. Doc. 478-12 at p. 10 (*citing* R. Doc. 469-14 at pp. 11-12); R. Doc. 469-14 at p. 12 (citing *Davis*, 526 U.S. at 644-45, 119 S.Ct. 1661).

[171] R. Doc. 478-12 at p. 10 (citing *Davis*, 526 U.S. at 629, 119 S.Ct. 1661; *Henderson v. Bd. Of Supervisors of Southern Univ. & A&M Coll.*, Civ. A. No. 21-297-JWD-RLB, 2022 WL 875592, at *4 (M.D. La. Mar. 23, 2022)).

[172] R. Doc. 489 at p. 11 (*citing* R. Doc. 480 at p. 21 (*citing* R. Doc. 481 at pp. 9-16)).

[173] R. Doc. 481 at pp. 9-16.

[174] R. Doc. 481 at pp. 12-13 (citation omitted).

Plaintiffs argued that the Board of Supervisors had sufficient control over another former LSU football player, John Doe, and the context of his rape of plaintiff, Ashlyn Mize-Robertson, through its disciplinary authority, which it exercised through "its PM-73 Title IX policies and its Student Code of Conduct."[175]  Plaintiffs also asserted in their prior opposition brief that LSU has regulatory authority over an off-campus apartment and the broader school environment through its Student Code of Conduct.[176]  In support of their position, Plaintiffs cited a decision from another Section of this Court in which the Court found an actionable Title IX heightened risk claim where the assailant was a university student subject to the school's codes of conduct and the alleged rape occurred at an off-campus apartment.[177]

Having reviewed the cases cited by both parties, the Court is not persuaded by the authority cited by the Board of Supervisors that a sexual assault occurring off campus cannot satisfy the control element of a heightened risk claim.  The Supreme Court has made clear that, "recipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority."[178]  Further, the Court in *Davis* took

---

[175] R. Doc. 481 at pp. 10-11 (*citing Davis,* 526 U.S. at 646-47, 119 S.Ct. 1661; R. Docs. 481-13, 481-14, & 481-4).  According to the evidence submitted by Plaintiffs, "PM-73 Title IX policies" refers to Permanent Memorandum No. 73 issued by LSU's then-President, F. King Alexander, titled "Title IX and Sexual Misconduct Policy," which had an effective date of June 18, 2014.  R. Doc. 481-13.  That policy was superseded by Permanent Memorandum No. 73, which was also issued by President F. King Alexander and had an effective date of December 15, 2015.  R. Doc. 481-14.

[176] R. Doc. 481 at pp. 13-14 (*citing* R. Doc. 481-4 at p. 7).

[177] R. Doc. 481 at pp. 14-15 (citing *Doe v. Bd. Of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 467-69 (M.D. La. Jan. 10, 2023)).

[178] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 646-47, 119 S.Ct. 1661, 1673, 14 L.Ed.2d 839 (1999).

pains to define terms and phrases in Title IX, including "under the operations of a funding recipient" and "the harassment must take place in a context subject to the school district's control." [179]   The Court further noted that Webster's Third New International Dictionary defines "under" as "in or into a condition of subjection, regulation, or subordination," and Random House Dictionary defines "under" as "subject to the authority, direction, or supervision of."[180]

Here, Plaintiffs have provided the Court with a copy of LSU's Code of Student Conduct, which states that, "The University shall have discretion to extend jurisdiction over conduct that occurs off campus when the conduct adversely and significantly affects the learning environment or University community and would be in violation of the Code if the conduct had occurred on campus," and when the alleged conduct involves "members of the University community."[181]   The Code of Student Conduct also defines "campus" broadly to include "all land, buildings, property, and facilities in the possession of, owned by, used by, or controlled by the University," as well as "land leased to others, property owned, managed or maintained by the University, and all streets, alleys, sidewalks, and public ways adjacent to any land of the University or the land upon which housing is located even if the housing is not owned by the University."[182]   The Court has also been provided with LSU's Title IX

---

[179] 526 U.S. at 644-647, 119 S.Ct. at 1672-73.
[180] 526 U.S. at 645, 11 S.Ct. at 1672.
[181] R. Doc. 489 at p. 11 (*citing* R. Doc. 480 at p. 21 (*citing* R. Doc. 481 at pp. 9-16)); R. Doc. 481 at pp. 11 & 13 (*citing* R. Doc. 481-4).  *See*, R. Doc. 481-4 at p. 7.
[182] R. Doc. 481-4 at p. 4.

and Sexual Misconduct Policy, effective December 15, 2015, which states:

> This policy shall apply to conduct that occurs on an LSU campus, at LSU sponsored activities, and/or when the student or employee is representing LSU.  LSU shall have discretion to extend jurisdiction over conduct that occurs off campus when the conduct adversely or significantly affects the learning environment or LSU community and would be a violation of this policy and/or any applicable campus policy or code of conduct, if the conduct had occurred on campus. . . LSU may extend jurisdiction (over off-campus conduct) if the alleged conduct by the student or employee:
> 1. Involved violence or produced a reasonable fear of physical harm; and/or
> 2. Involved any other members of the LSU community or any academic work, records, documents, or property of LSU.[183]

While the Board of Supervisors seems to contest Plaintiffs' assertion that it had control over the context of John Loe's rape of Hovis that occurred off campus, the Board does not contest Plaintiffs' assertion that the Board had disciplinary authority over John Loe as a student and a student-athlete.[184]  Indeed, it is not lost on the Court that LSU initiated disciplinary proceedings against Loe as a result of this incident. Further, while not directly conceding the point in its pleadings, the Board of Supervisors acknowledges in its Statement of Undisputed Material Facts that LSU officials met with Hovis on January 31, 2020 to "explain [Hovis'] reporting options," and that Hovis decided to move forward with a Title IX investigation,[185] thereby acknowledging that LSU could proceed with an investigation for an incident that occurred off-campus.   The Board also concedes that LSU conducted a Title IX investigation and concluded that John Loe had sexually assaulted Hovis,[186] again

---

[183] R. Doc. 481-14 at p. 2.
[184] *See, generally,* R. Doc. 500 & R. Doc. 500 at p. 4, n.9.
[185] R. Doc. 478-13 at ¶ 10 (*citing* R. Doc. 182 at ¶¶ 670-71).
[186] R. Doc. 478-13 at ¶¶ 11-15.

acknowledging LSU's ability to provide resources to a student for off-campus incidents. Moreover, the Board's own Statement of Undisputed Material Facts makes clear that LSU exercised substantial disciplinary authority over John Loe when it suspended Loe from the football team in February 2020, when LSU suspended Loe from the university and its campus for one year on May 1, 2020, and when LSU issued a no-contact directive ordering Loe to have no communication or contact with Hovis.[187]

Without clear guidance from the Fifth Circuit regarding whether sexual assault that occurs off campus can satisfy the control element, the Court finds that Hovis has raised a genuine issue of material fact regarding whether the Board of Supervisors exercised substantial control over both John Loe and the context in which the rape occurred based upon its Title IX policies and its Code of Student Conduct. Accordingly, the Board of Supervisors is not entitled to summary judgment on Hovis's heightened risk claim on the basis that Hovis cannot establish that the Board exercised sufficient control over the perpetrator and the context of the rape.

To the extent the Board asserts that it is entitled to summary judgment because Plaintiffs cannot show that the university exercised control over the sender of the two Instagram messages or the context in which they were sent, the Court agrees. Plaintiffs failed to address this argument in their Opposition brief or submit any evidence to raise a dispute regarding whether the Board exercised substantial control over the context of the two social media messages. As such, the Court finds

---

[187] *Id*. at ¶¶ 14 & 16.

that the Board of Supervisors is entitled to summary judgment to the extent that Hovis has asserted a policy-based heightened risk claim based upon the two Instagram messages she received in May of 2020.

### 4. Element four: Whether, as a result of the Board's deliberate indifference, Hovis suffered harassment that was so severe, pervasive, and objectively offensive that it deprived her of access to the educational opportunities or benefits provided by LSU.

The Board of Supervisors asserts that Hovis "cannot establish any causal link between a purported policy of the Board and the harm she alleges."[188]  The Board argues that Hovis engaged in the Title IX process and that LSU issued and enforced a no-contact order in addition to suspending John Loe, such that Hovis cannot show that additional Title IX training would have changed her circumstances.[189]

In response, Plaintiffs incorporate by reference the arguments made in another opposition brief before the Court, wherein Plaintiffs argued that they need only prove that the harassment had a "concrete, negative effect" on their education to establish an educational injury.[190]  Plaintiffs also incorporate by reference the arguments they made regarding this element of Hovis's deliberate indifference claim.[191]

The Court finds that Plaintiffs have provided sufficient evidence to raise a genuine dispute regarding whether John Loe's rape of Hovis while she was intoxicated and without her consent was severe, pervasive, and objectively offensive to effectively bar Hovis from access to educational benefits.  The Board concedes that

---

[188] R. Doc. 478-12 at p. 18.
[189] *Id.* at pp. 18-19 (citing *Tackett v. Univ. of Kan.*, 234 F. Supp. 3d 1100, 1107 (D. Kan. 2017)).
[190] R. Doc. 489 at p. 11 (*citing* R. Doc. 485 at pp. 11-16).
[191] R. Doc. 489 at p. 11 (*citing* R. Doc. 489 at pp. 5-6).

LSU determined that John Loe violated LSU's Title IX policy when he raped Hovis in January 2020.[192]   Another Section of this Court has held that, "Unquestionably, rape is severe and objectively offensive sexual harassment sufficient to support an actionable Title IX claim, *even in the absence* of allegations that a plaintiff's academic track was thorn off course."[193]   This Court agrees.   Hovis, however, testified during her deposition that she was diagnosed with post-traumatic stress disorder and attention deficit hyperactivity disorder after she was raped, and that she had trouble attending classes that were near the LSU football stadium.[194]   Hovis also testified that she had trouble getting out of bed for a midterm that was in a building near the stadium and that she ultimately failed that class.[195]   The Court finds that this evidence, especially as it raises credibility issues, is sufficient to raise a genuine dispute regarding whether John Loe's rape of Hovis rises to the level of severe, pervasive, and objectively offensive harassment contemplated by Title IX.   As such, it is a question of fact that should be left to the jury.

Plaintiffs have likewise provided sufficient evidence to raise a genuine dispute regarding whether LSU's policy of deliberate indifference caused Hovis to suffer that sexual harassment.   Determining whether LSU's policy of deliberate indifference caused Hovis to suffer harassment that was so severe, pervasive, and objectively offensive that it deprived her of access to the education opportunities or benefits

---

[192] R. Doc. 478-13 at ¶¶ 9-16.
[193] *Doe v. Bd. Of Supervisors of Univ. of Louisiana Sys.*, 650 F. Supp. 3d 452, 469 (M.D. La. 2023) (citing *Kelly v. Yale Univ.*, Civ. A. No. 01-cv-1591, 2003 WL 1563424, at *3 (D. Conn. Mar. 26, 2003)).
[194] R. Doc. 489-2 at pp. 32 & 49-50.
[195] *Id*. at p. 32.

provided by LSU will require credibility determinations and the weighing of evidence, which the Court cannot do in the context of a summary judgment motion.  When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[196]

Based upon the foregoing evidence, and while refraining from making credibility determinations or weighing the evidence, the Court finds that there exists a genuine issue of material fact regarding whether, as a result of the Board's policy of deliberate indifference, Hovis suffered harassment that was so severe, pervasive, and objectively offensive that it effectively barred her access to an educational opportunity or benefit at LSU.  Thus, the Board of Supervisors is not entitled to summary judgment on the basis that Hovis cannot establish this element of her heightened risk claim.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment No. 10: Corinn Hovis, filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College[197] and Defendant's Motion for Summary Judgment No. 10: Corinn Hovis[198] are **GRANTED in part and DENIED in part.**  The Motions are **GRANTED** to the extent that the Board seeks summary judgment on Corinn Hovis's Title IX deliberate

---

[196] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).
[197] R. Doc. 478.
[198] R. Doc. 382.

indifference claim, which is **DISMISSED WITH PREJUDICE.** The Motions are also **GRANTED** to the extent that the Board seeks dismissal of a policy-based heightened risk claim asserted by Hovis that is based upon John Loe's alleged violation of the no-contact order, which claim is **DISMISSED WITH PREJUDICE**. The Motions are **DENIED** to the extent that the Board seeks summary judgment of Hovis's Title IX policy-based heightened risk claim that is based upon John Loe's rape of Hovis in January 2020.

New Orleans, Louisiana, December 31, 2023.

**WENDY B. VITTER**
**United States District Judge**