## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

ABBY OWENS, ET AL.                           CIVIL ACTION

VERSUS                                        NO. 21-242-WBV-SDJ

LOUISIANA STATE UNIVERSITY, ET AL.

### ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment No. 6: Jane Doe, filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board of Supervisors").[1]  Plaintiff opposes the Motion,[2] and the Board of Supervisors has filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

## I.      FACTUAL and PROCEDURAL BACKGROUND[4]

This case involves allegations by ten former students of Louisiana State University and Agricultural and Mechanical College ("LSU") that LSU and its Athletic Department funded and implemented a purposefully deficient sexual misconduct and Title IX reporting scheme separate from LSU's official Title IX office

---

[1] R. Doc. 474. The Court notes that the Board of Supervisors originally filed its Motion for Summary Judgment into the record under seal with the consent of the Court.  *See*, R. Docs. 374 & 375.  The Court subsequently ordered the Board of Supervisors to file a redacted version of the Motion into the record, which was filed into the record as R. Doc. 474.  *See,* R. Doc. 428.  Both motions, which are identical, remain pending at this time.  The remainder of this Order and Reasons, however, will reference only the redacted version of the Motion in the public record, R. Doc. 474.

[2] R. Doc. 485. The Court notes that Plaintiffs originally filed their Opposition brief into the record under seal with the consent of the Court.  *See,* R. Doc. 408. The Court subsequently ordered Plaintiffs to file a redacted version of their Opposition brief into the record, which was filed into the record as R. Doc. 485.  *See*, R. Doc. 428.  The remainder of this Order and Reasons will refer only to the redacted version of the Opposition brief, R. Doc. 485.

[3] R. Doc. 496.

[4] The factual background of this case was extensively detailed by the Court in several prior Orders (*See,* R. Docs. 317, 319, 321, 323, & 340) and, for the sake of brevity, will not be repeated here.

to keep sexual assault claims within the Athletic Department.[5]  The instant Motion concerns the Title IX heightened risk claim asserted by plaintiff Jane Doe against the Board of Supervisors, which survived the Court's March 31, 2023 Order and Reasons granting in part and denying in part the Board of Supervisors' Motion to Dismiss the Second Amended Complaint.[6]

The Court limits its recitation of the facts to those alleged by Plaintiff Jane Doe, the facts asserted in the Complaint by other plaintiffs which Doe relies on in support of her claims, and the facts set out in the Board's Statement of Undisputed Material Facts that Doe admits are true in her Opposing Statement of Material Facts.[7]

Doe first enrolled at LSU as an undergraduate student in Fall 2018 and soon after met John Poe, another LSU undergraduate student, through her roommate.[8] Both Poe and Doe lived in the same dorm room—North Hall—although on different floors.[9]  Doe quickly became friends with Poe—whom she described as "really, really, nice" at first—and they would hang out with one another, including attending football games and going to eat together at the dining hall.[10]  Doe and Poe kissed each other on two occasions but never dated and had no other intimate contact.[11]

---

[5] R. Doc. 1 at ¶ 10; R. Doc. 22 at ¶ 10; R. Doc. 182 at ¶ 25.
[6] R. Doc. 340.
[7] R. Doc. 485-1.  The Board's Undisputed Facts that are admitted by Doe are Numbers 1-7, 9-11, 19-22, 24-38, 41-44, 48-49, 52-55, 58.  Doe denies or offers qualified responses to all of the Board's other Undisputed Facts.
[8] R. Doc. 485-1 at ¶¶ 1, 2; R. Doc. 474-1 at p. 2.
[9] R. Doc. 474-1 at p. 2.
[10] *Id.* at pp. 9-10.
[11] *Id.* at p. 36.

At some point in Fall 2018 after attending an LSU football game together, Doe's relationship with Poe changed for the worse. Poe began calling Doe names such as "fat," "pig," and "fag."[12] Doe claims that Poe began stealing food and objects from her room and then offered to return them to her if she would come into his room and cuddle with her.[13] On one occasion in March 2019, Poe stole a Polaroid photograph of Doe and one of her suitemates from Doe's room and then wrote "Call for a good time" and an unknown phone number—not Doe's—on the photograph.[14] Poe posted a photo of the altered Polaroid on Snapchat for others to see.[15] On another occasion, Poe stole Doe's food, smashed it into her carpet, shoved it under other people's doors, and then threw it down the dormitory hall.[16]

Poe also engaged in unwanted physical contact with Doe. Doe alleges that on two or three different occasions Poe would "play fight" with her by body slamming and hitting her.[17] Doe was bruised but never injured in the play fighting and she never reported any of the incidents.[18] Doe also claims that Poe threatened her with violence once or twice and that she was scared of him because he was bigger and stronger than her.[19] Doe believes that Poe may have been joking about being violent towards her.[20]

---

[12] *Id.* at p. 13.
[13] *Id.* at p. 8.
[14] *Id.* at pp. 4, 7.
[15] *Id.* at p. 6.
[16] *Id.* at p. 4.
[17] *Id.* at p. 8; R. Doc. 485-2 at p. 11.
[18] R. Doc. 474-1 at p. 9; R. Doc. 485-2 at p. 62.
[19] R. Doc. 474-1 at p. 12.
[20] R. Doc. 485-2 at p. 17.

In Spring 2019, Doe's roommate invited her to go to Chipotle with her for dinner.[21]  Unbeknownst to Doe, Poe had been invited to come as well.[22]  The three of them drove to Chipotle together to pick up their food.[23]  Once there, Doe claims that Poe grabbed her buttocks for a few seconds in full view of Doe's roommate.[24]  Doe told Poe to stop, and he let go.[25]  The three of them then returned back to campus and they did not eat together.[26]  Nothing else transpired between Doe and Poe that evening.[27]  Doe did not report this incident at the time.[28]

After the Chipotle incident, Doe blocked Poe's phone number and social media accounts and threatened to report him to LSU.[29]  Nevertheless, Poe continued to find ways to contact Doe.  After Doe failed to obtain a job offer she was hoping to get at an engineering firm, Poe messaged her on Twitter—the one social media platform that Doe forgot to block Poe on—"Congrats on your job offer."[30]  When Poe ran into Doe in person, he would ask her how she was doing and Doe would tell him to stop.[31]  In March 2019, Poe also obtained a new phone number and called Doe several times, leaving her a voicemail.[32]  In the voicemail, Poe told Doe that she needed to grow up and that Doe should not take her anger out on her roommate.[33]  Poe also asked if Doe

---

[21] R. Doc. 474-1 at p. 17.
[22] *Id.* at p. 17.
[23] *Id.* at p. 15.
[24] *Id.* at pp. 15, 18.
[25] *Id.* at pp. 18, 19.
[26] *Id.* at p. 19.
[27] *Id.*
[28] *Id.*
[29] *Id.* at pp. 14, 15.
[30] *Id.* at pp. 14, 15, 20.
[31] *Id.* at p. 15.
[32] *Id.* at p. 16.
[33] *Id.*

was going to report him for stealing her Polaroid picture.[34]  Doe did not respond to Poe's messages and tried to ignore him.[35]  At some point, Poe texted Doe from his new phone number and after some back and forth, Poe told Doe that he was going to report her for harassing and bullying him.[36]  Doe did not have any further interaction with Poe after this although she saw him walking at night near her car on one occasion.[37]  Doe does not know why he was there and whether it was intentional or merely a coincidence.[38]

Doe reported Poe to LSU shortly after the voicemail exchange in March 2019.[39]  Doe initially submitted a complaint to her former RA on GroupMe.[40]  Her RA advised Doe that she was going to report Poe's conduct to her supervisor for further investigation.[41]  After the RA filed her report, an LSU Title IX official reached out to Doe asking her if she would speak with someone in the Title IX office.[42]  The Title IX official offered Doe the opportunity to move residence halls.[43]  Doe accepted the invitation and moved dormitories to Evangeline Hall where she stayed by herself.[44]  Doe claims that she felt that her concerns had been addressed by the Title IX

---

[34] *Id.*
[35] *Id.*
[36] *Id.* at p. 17.
[37] *Id.* at p. 22.
[38] *Id.*
[39] *Id.*
[40] *Id.* at p. 23.
[41] *Id.* at p. 24.
[42] *Id.* at pp. 27, 28.
[43] *Id.* at p. 28.
[44] *Id.* at p. 29.

official.[45]  Doe subsequently reached out to LSU's Lighthouse Program for further assistance.[46]

LSU's Title IX office investigated Doe's claims and interviewed Doe on multiple occasions.[47] The office also reviewed text messages and emails provided by Doe.[48] Ultimately, the Title IX office found that Doe's case did not fall under Title IX.[49] Nevertheless, the Title IX office referred Doe's complaint to LSU's Student Advocacy and Accountability ("SAA") office for determination of whether Poe's conduct violated SAA rules.[50]  After their own investigation, the SAA found Poe liable for a violation of LSU Code of Student Conduct Section 10.2 – Harassment and Property Misuse.[51] Poe was placed on disciplinary probation, issued a No Contact Directive prohibiting contact with Doe, and required to write a reflection essay regarding his conduct.[52]

On April 26, 2021, Doe and several other plaintiffs filed suit against the Board of Supervisors as well as various LSU officials asserting, among other claims, Title IX violations.[53]  In the Second Amended Complaint, Plaintiffs asserted seven claims as follows: Count I, Violation of Title IX, Deliberate Indifference to Sex Discrimination in violation of 20 U.S.C. §§ 1681, et seq.; Count II, Violation of Title IX, Hostile Environment in violation of 20 U.S.C. §§ 1681, et seq.; Count III, Violation of Title IX, Heightened Risk in violation of 20 U.S.C. §§ 1681, et seq.; Count IV,

---

[45] *Id.* at p. 30.
[46] *Id.* at p. 31.
[47] *Id.* at pp. 27-28, 38.
[48] *Id.* at p. 38.
[49] *Id.* at p. 41.
[50] *Id.*
[51] R. Doc. 474-7 at ¶ 12.
[52] *Id.*
[53] R. Doc. 1.

Violation of Title IX, Retaliation by Withholding Protection Otherwise Conferred by Title IX in violation of 20 U.S.C. §§ 1681, et seq.;[54] Count V, First Amendment Retaliation in violation of 42 U.S.C. § 1983 and the First Amendment;[55] Count VI, Denial of Equal Protection in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment;[56] and Count VII, Denial of Substantive and Procedural Due Process in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment.[57]

In response to a Motion to Dismiss filed by the Board of Supervisors, the Court dismissed Doe's deliberate indifference, hostile environment, and retaliation claims.[58]  Thus, the only remaining claim asserted by Doe against the Board of Supervisors is her heightened risk claim asserted in Count III.

In Count III of the Second Amended Complaint, Plaintiffs allege that the Board of Supervisors created a heightened risk of sex-based discrimination on LSU's campus by cultivating a "culture of silence by failing to report complaints of sex-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits."[59]

---

[54] Doe only asserted the claims in Counts I-IV against the Board of Supervisors.
[55] Doe only asserted Count V against individually named defendants in their individual capacities. *See,* R. Doc. 182 at p. 134.  Those individual defendants were subsequently dismissed from this action. *See* R. Doc. 317, 319, 321 & 323.
[56] Doe only asserted Count VI against individually named defendants in their individual capacities. *See,* R. Doc. 182 at p. 142.  Those individual defendants were subsequently dismissed from this action. *See* R. Doc. 317, 319, 321 & 323.
[57] Doe only asserted Count VII against individually named defendants in their individual capacities. *See,* R. Doc. 182 at p. 145.  Those individual defendants were subsequently dismissed from this action. *See* R. Doc. 317, 319, 321 & 323.
[58] R. Doc. 340.
[59] R. Doc. 182 at ¶ 926.

The Board of Supervisors seeks summary judgment on Doe's heightened risk claim, arguing that any such claim based on LSU's general custom or official policy fails because the Fifth Circuit has not recognized a Title IX heightened risk claim based on an official policy, and further, because this Court's ruling on the Board's Motion to Dismiss "does not suggest that an official policy claim remains in this case."[60] The Board of Supervisors further argues that, if such a claim exists, Doe fails to meet the elements of such a claim and that any such claim is now prescribed.[61] In response, Plaintiffs contend that the Board of Supervisors' argument that the Fifth Circuit has not recognized a heightened risk claim based on an official policy of deliberate indifference "is of no moment, as the United States Supreme Court has recognized such a claim."[62] Plaintiffs then assert that genuine issues of material fact preclude summary judgment on Doe's policy-based heightened risk claim, including whether the claim is timely.[63] In reply, the Board of Supervisors contends that there are no genuine issues of material fact and maintains that it is entitled to summary judgment on Doe's heightened risk claim.[64]

---

[60] R. Doc. 474-13 at p. 15. To the extent that the Board of Supervisors in its Motion suggests that Doe has asserted a perpetrator-based heightened risk claim, the Court finds that she has not. *See,* R. Doc. 182 at ¶¶ 916–937. In their Opposition brief, Plaintiffs clarify that the only heightened risk claim asserted by Doe is a policy-based heightened risk claim. *See,* R. Doc. 485 at p. 9. The Board of Supervisors acknowledges Plaintiffs' position in its Reply brief. *See,* R. Doc. 496 at pp. 3–4.

[61] R. Doc. 474-13.

[62] R. Doc. 485 at p. 9 (incorporating by reference R. Doc. 480 at p. 17).

[63] *Id.* at pp. 3–7.

[64] R. Doc. 496.

## II.    LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[65]  When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[66]   While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[67]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[68]   Where, as here, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[69]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to

---

[65] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[66] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[67] *Id*. (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[68] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[69] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[70]

**B. Title IX.**

"Congress enacted Title IX in 1972 with two principal objectives in mind: '[T]o avoid the use of federal resources to support discriminatory practices' and 'to provide individual citizens effective protection against those practices.'"[71] In line with those objectives, Title IX provides that, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[72] Title IX is enforceable by private right of action for damages.[73] Through this private right of action, institutions receiving federal funds may be liable for, among other things, student-on-student sexual harassment if: (1) the institution had actual knowledge of the harassment; (2) the harasser was under the institution's control; (3) the harassment was based on the victim's sex; (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit;" and (5) the institution was deliberately indifferent to the harassment.[74]

---

[70] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).
[71] *Roe v. Cypress-Fairbanks Ind. Sch. Dist.*, 53 F.4th 334, 340-341 (5th Cir. 2022) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (alteration in original)).
[72] *Roe*, 53 F.4th at 341 (*quoting* 20 U.S.C. § 1681(a)) (internal quotation marks omitted).
[73] *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)).
[74] *Roe*, 53 F.4th at 341 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (alteration in original)) (internal quotation marks omitted).

III.    ANALYSIS

In their Second Amended Complaint, Plaintiffs allege that the Board of Supervisors' Title IX policies and practices were so deficient that the Board of Supervisors was deliberately indifferent to the risk of Plaintiffs' sexual assault and "cultivated a culture of silence by failing to report complaints of sex-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits or grievance procedures . . . ."[75]  The Court refer to this as Doe's policy-based heightened risk claim.  The Board of Supervisors argues that it is entitled to summary judgment on Doe's claim because a heightened risk claim based on an official policy is "unavailable as a matter of law,"[76] and because Doe cannot establish the necessary elements of her claim.[77]  The Board of Supervisors also argues that any heightened risk claim is prescribed as a matter of law.[78]

Although not specifically asserted by either party, the parties seem to recognize that there is no Fifth Circuit authority regarding the analytical framework applicable to policy-based heightened risk claims.[79]  The parties seem to agree that a policy-based heightened risk claim requires a plaintiff to prove the following four elements: (1) the institution maintained a policy of deliberate indifference to reports of sexual misconduct; (2) which created a heightened risk of sexual harassment that

---

[75] R. Doc. 182 at ¶¶ 926-928.
[76] R. Doc. 474 at ¶ 5; R. Doc. 473-13 at p. 8.
[77] R. Doc. 474 at ¶¶ 4 & 5; R. Doc. 474-13 at pp. 8-20.
[78] R. Doc. 474 at ¶ 2; R. Doc. 473-13 at pp. 5-7.
[79] *See* R. Doc. 474-13 at pp. 15-20; R. Doc. 485 at pp. 9-16.

was known or obvious; (3) in a context subject to the school's control; and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] depriv[ed] the [plaintiff] of access to the educational opportunities or benefits provided by the school."[80]

The only issue before the Court is whether the Board of Supervisors has shown that Doe cannot meet the elements of her policy-based heightened risk claims. For the reasons set forth below, the Court finds that Doe fails to support her official policy-based heightened risk claim and that the Board of Supervisors is, therefore, entitled to summary judgment.

The Court begins and ends its analysis with consideration of the fourth factor, whether Doe has demonstrated that she suffered sex-based harassment "so severe, pervasive, and objectively offensive that it effectively bar[red] [her] access to an educational opportunity or benefit."[81] To be actionable under Title IX, complained-of conduct must be sufficiently severe, pervasive, and offensive *and* it must deny a plaintiff the benefits of her education. Moreover, the harassment must be based on sex, not on any other characteristic.[82] Whether gender-oriented harassment amounts to actionable discrimination "depends on a constellation of surrounding

---

[80] R. Doc. 469-14 at pp. 20-25 & nn.70, 80, 83 (quoting *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1177-78 (10th Cir. 2007); *Doe v. Texas A&M Univ.*, 634 F. Supp. 3d 365, 376 (S.D. Tex. 2022)) (internal quotation marks omitted; R. Doc. 480 at pp. 14-15 (quoting *Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 35 F.4th 459, 464-65 (6th Cir. 2022), cert. denied sub nom. *Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Doe*, 143 S.Ct. 574, 214 L.Ed.2d 340 (2023)) (internal quotation marks omitted). The Court notes that the Board of Supervisors lists the fourth element as "causation." R. Doc. 469-14 at pp. 24-25.

[81] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633, 119 S. Ct. 1661, 1675, 143 L. Ed. 2d 839 (1999).

[82] *See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011).

circumstances, expectations, and relationships."[83]  By its very terms, Title IX requires a plaintiff to demonstrate not simply that the harassment affected her education but that it "had a concrete, negative effect on [her] ability to receive an education."[84]  Purely *de minimis* effects are not sufficient.[85]  As the Court explains, the undisputed facts show that Doe was not subjected to "severe, pervasive, and unreasonably offensive" *sexual* harassment by Poe. The Court notes that Plaintiffs' arguments regarding this factor address the impact—the deprivation of access to educational benefits—on Doe of the alleged harassment but fail to address the first part of the factor, namely, whether the alleged harassment was "severe, pervasive, and objectively offensive."  Such arguments put the cart before the horse.  Accepting, for the moment, that Doe was deprived of educational benefits, she must first prove that the deprivation was because of sexual harassment that was severe, pervasive, and objectively offensive.

The Court first notes that there is no genuine dispute of material fact sufficient to preclude summary judgment.   While Doe generically claims the existence of a factual dispute as to whether she has demonstrated that Poe's harassment was so severe and pervasive so as to deny her the benefits of her education, Doe fails to specifically point to any material facts in dispute.   Moreover, Doe points to no

---

[83] *Davis*, at 651 (quoting *Oncale*, 523 U.S. at 82).

[84] *Id.* at 654; *accord Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 209 n.2 (5th Cir. 2019) (quoting *Davis*, 526 U.S. at 654); *Davis*, 526 U.S. at 650 ("The statute makes clear that, whatever else it prohibits, students must not be denied access to educational benefits and opportunities on the basis of gender.").

[85] *See Davis*, 526 U.S. at 654; *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 699 (4th Cir. 2007) ("In all events, the burden of showing a concrete, negative effect is sufficiently rigorous.  It is, in simple terms, an effect that is concrete (or real), negative, and substantial.").

disputed facts as to whether the harassment she received from Poe was based on sex and was sufficiently "severe, pervasive, and objectively offensive"; rather, Doe focuses her arguments as to whether the harassment deprived her of educational benefits. Further, the Board has accepted Doe's account of the underlying facts for the purposes of this Motion.[86] There are no disputed facts as to Doe's alleged harassment by Poe or as to the effects on her education while at LSU.

Harassment, no matter how severe, is actionable under Title IX only if it based on sex.[87] Harassment "on the basis of sex is the sine qua non of a Title IX sexual harassment case, and a failure to plead that element is fatal."[88] Further, offensive behavior must be more than "merely tinged with offensive sexual connotations" to support Title IX liability.[89] Courts "must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults."[90] "It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it."[91] The Supreme Court has instructed courts to look to the age of both the alleged harasser and victim

---

[86] R. Doc. 474-13 at p. 1 n.1.
[87] *See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) ("The offensive behavior, however, must still be based on sex, per the words of title IX[.]"); *see also Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022) (stating that Title IX liability depends in part on finding that the harassment was based on the victim's sex).
[88] *Sanches*, 647 F.3d at 166 (quoting *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002)).
[89] *Id.* at 165 (quoting *Frazier*, 276 F.3d at 66).
[90] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651, 119 S. Ct. 1661, 1675, 143 L. Ed. 2d 839 (1999).
[91] *Id.* at 651–52.

in considering whether "gender-oriented conduct rises to the level of actionable 'harassment.'"[92]

Here, much of Poe's offensive conduct directed at Doe, while inappropriate, immature, and offensive, are more akin to "teasing or bullying," not sexual harassment. First, Poe's rude comments calling Doe "fat" and "pig" are not plausibly based on sex and therefore are not actionable under Title IX. Rude, even inconsiderate comments about a person's weight and looks do not, standing alone, constitute sexual harassment.[93] Second, Poe's seemingly sarcastic remark to Doe— "Congrats on your job offer"—after Doe had failed to obtain a job likewise has no apparent basis in sex and therefore cannot qualify as sexual harassment. Third, Poe's stealing of Doe's food, smashing it into her carpet, and throwing it down the dormitory hall likewise does not constitute sexual harassment. Acts of bullying based on personal animus do not trigger Title IX's liability standard.[94] Plaintiffs have provided no evidence that Poe's conduct here, while rude and bullying, had any relation to Doe's sex. Similarly, Poe's stealing of a Polaroid picture from Doe's room, writing "Call for a good time" with an unknown phone number on the photograph and posting a photo of the altered Polaroid on Snapchat is juvenile teasing and "unpleasant conduct . . . not the proper stuff of a federal harassment claim." Although "tinged with offensive sexual connotations,"[95] Poe's conduct does not amount to sexual

---

[92] *Id.* at 651.

[93] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652, 119 S. Ct. 1661, 1675, 143 L. Ed. 2d 839 (1999) ("Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender.").

[94] *Id.*; *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011).

[95] *Sanches*, 647 F.3d at 165 (quoting *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002)).

harassment and was not even entirely directed toward Doe; the Court notes that the phone number written on the photograph was not Doe's and that Doe had blocked Poe on Snapchat at the time of the incident.[96]

Fourth, the Court does not find that Poe's contact with Doe after she had blocked his phone number and social media accounts amounts to sexual harassment. According to Doe, Poe changed his phone number and called Doe on several occasions, leaving her a voicemail telling Doe that she needed to grow up and that she should not take her anger out on her roommate.[97]  Poe also told Doe that he was going to report her for harassing and bullying him.[98]  Doe argues that Poe's conduct amounted to stalking considering she repeatedly told him that she did not want anything to do with him.[99]  Viewing the evidence in the light most favorable to Plaintiff, as the Court is bound to do at this stage, Doe fails to demonstrate that the stalking amounted to sexual harassment.  The cited deposition testimony relied on by the Plaintiffs does not show any sexual content or dimension whatsoever to Poe's comments.  Telling Doe to grow up and to treat her roommate better is not harassment "on the basis of sex."  Nor is threatening to report her for alleged bullying and harassment.  As the Fifth Circuit has explained, "[d]ating and relationships are an inescapable part of [college], as is the resulting stress . . . [i]t is a trying time for young people, who experience a wide range of emotions and often lack the skills to control them."[100]  The

---

[96] R. Doc. 474-1 at pp. 4, 6, 7.
[97] R. Doc. 474-1 at p. 16.
[98] *Id.* at p. 17.
[99] R. Doc. 485 at p. 2.
[100] *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011).

evidence before the Court which detail Poe's repeated attempts to contact Doe, although unwanted, are insufficient, on their own, to support Title IX liability.

The Court also does not find that Poe's "play fighting" with Doe constitutes actionable sexual harassment. According to Doe, Poe would occasionally, in Doe's words, "play fight" with Doe by body slamming and hitting her.[101] The play fighting occurred on two or three different occasions.[102] Doe claims that she was bruised but was never injured in the play fighting and she never reported any of the incidents.[103] Doe also claims that Poe threatened her with violence once or twice and that she was scared of him because he was bigger and stronger than her.[104] Doe believes that Poe may have been joking about being violent towards her.[105] Even construing all inferences in Doe's favor, the Court does not find that the record evidence supports that Poe's play fighting with Doe was based on sex. Poe's behavior towards Doe, while inappropriate, does not fall within the realm of sexual harassment. Plaintiffs have not provided any evidence that Poe's conduct was at all sexual in nature or anything more than a product of "personal animus" towards Doe.[106] The simple fact that Poe and Doe are of the opposite sex is by itself insufficient to support a finding of sex-based harassment[107]; Plaintiffs must demonstrate that Poe's harassment was

---

[101] R. Doc. 474-1 at p. 8.
[102] R. Doc. 485-2 at p. 11.
[103] R. Doc. 474-1 at p. 9; R. Doc. 485-2 at p. 62.
[104] R. Doc. 474-1 at p. 12.
[105] R. Doc. 485-2 at p. 17.
[106] *See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) ("There is nothing in the record to suggest that [harasser] was motivated by anything other than personal animus.").
[107] Treating all male-female harassment as *per se* sexual harassment has no basis in law or logic and flies in the face of Title IX's requirement that harassment must be "on the basis of sex." *Cf. Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1998) ("We have never held that workplace harassment, even harassment between men and women, is

based on sex as Title IX states. Moreover, even if Poe's play fighting and violent threats toward Doe do constitute harassment based on sex, the Court does not find them to be "severe, pervasive, and objectively offensive." Not only did Poe play fight with Doe on only a few limited occasions, Doe claims to have never been injured, only bruised, during the play fighting. Moreover, Doe herself claims that Poe was joking, at least sometimes, about using violence against her.[108] While it appears this was clearly unwanted by Doe, the play fighting does not rise to the level of severe harassment sufficient to support Title IX liability.

That said, viewing the evidence in a light most favorable to Plaintiff, some of Poe's comments and actions which are detailed below, however, do appear to have been "on the basis of sex" and thus plausibly constituted sexual harassment. Nevertheless, the Court does not find that Poe's conduct, viewed together, constitutes "severe, pervasive, and objectively offensive" sexual harassment.

As for Poe's stealing of items such as food and laundry supplies from Doe's room and telling her that she could have the items back if she came to his room and cuddled with him, such behavior is not severe enough to establish Title IX liability. At most, Poe's comment about cuddling is "merely tinged with offensive sexual connotations" which is insufficient to support liability under Title IX.[109] Poe's conduct may have been juvenile, disrespectful, and unwanted, but it does not arise to the level

---

*automatically discrimination because of sex* merely because the words used have sexual content or connotations.") (emphasis added).

[108] R. Doc. 485-2 at p. 17.

[109] *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (quoting *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002)).

of severe sexual harassment. Poe's acts are more closely associated with "insults, banter, teasing, shoving, pushing, and gender-specific conduct" which are "understandable . . . in the school setting" and not actionable under Title IX.[110]

Similarly, the Court does not find Poe's calling Doe a "fag" constitutes severe and objectively unreasonable sexual harassment. While that comment is plausibly based on sex, such a comment amounts to little more than "name-calling" and "teasing."[111] Moreover, there is no evidence that Poe subjected Doe to repeated harassment based on her prior romantic relationship or that his use of the word "fag" was pervasive.

Lastly, Poe's brief grabbing of Doe's clothed buttocks for several seconds, while sexual harassment, does not amount to "severe, pervasive, and objectively unreasonable" harassment. The Court recognizes that "uninvited contact with the private parts of either the victim's or harasser's body has often been held to constitute sexual harassment under Title IX."[112] Title IX liability, however, requires that sexual harassment be both severe and pervasive. In context, the Court does not view Poe's single incident of grabbing Doe's buttocks as amounting to severe and pervasive sexual harassment. Although the Court recognizes that a single instance of severe sexual harassment may be sufficient to establish that the harassment was

---

[110] *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651–52, 119 S. Ct. 1661, 1675, 143 L. Ed. 2d 839 (1999).

[111] *Id.* at 652 ("Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender.").

[112] *Carmichael v. Galbraith*, 574 Fed. Appx. 286, 290 (5th Cir. 2014).

pervasive,[113] Plaintiffs fail to establish that Poe's conduct meets that standard.  While inappropriate and uninvited, Poe's conduct is far less severe than the sexual harassment and assault that other courts have found to be sufficient to establish Title IX liability.[114]  Further, the Court notes that Poe grabbed Doe's clothed buttocks for only a few seconds while in a public setting and let go as soon as Doe told him to stop.[115]  Plaintiffs have failed to cite to any case law in which a court has held that conduct similar to Poe's constitutes actionable Title IX harassment.

A comparison to the harassment received by the plaintiff in *I.F. v. Lewisville Independent School District*[116] is instructive.  In that case, the plaintiff was subjected to a litany of harassing comments by her fellow peers after she claims she was raped. The plaintiff was called a "whore" and a "slut."[117]  The other students "spread rumors about her, talked about her loudly in her presence, and excluded her during cheerleading.  One student asked her the race of the baby she would be having. Others asked whether she had sex with multiple people and 'how did it feel to be f** in every single hole of your body?'"[118] The plaintiff's alleged rapist "wore the pants that he raped [plaintiff] in to school, which had [her] blood on them from intercourse, and stood on the lunch table and said, these are the pants that I took

---

[113] *See Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 342–43 (5th Cir. 2022) (explaining the circuit split on whether one instance of severe sexual harassment may suffice to demonstrate that the harassment was pervasive but declining to decide the issue).

[114] *See id.* at 343 (plaintiff suffered a "violent sexual assault and abusive relationship" and "was harassed to the point of attempted suicide"); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 615 (W.D. Tex. 2017) (plaintiff sexually assaulted by member of football team).

[115] *See* R. Doc. 474-1 at pp. 15, 18, 19.

[116] 915 F.3d 360 (5th Cir. 2019).

[117] *Id.* at 373.

[118] *Id.*

[plaintiff's] virginity in."[119]  On appeal, the Fifth Circuit found that the plaintiff had raised a genuine factual dispute about whether the above harassment was severe, pervasive, and objectively.[120]

Here, the harassment endured by Doe is not nearly as severe and pervasive as that alleged by the plaintiff in *I.F. v. Lewisville Independent School District*.  As explained above, most of Poe's comments and actions towards Doe were non-sexual in nature and thus do not plausibly constitute *sexual* harassment.  On the contrary, the harassment received by the *I.F.* plaintiff was almost entirely "on the basis of sex." Poe's behavior does not arise to the level of the peer harassment in *I.F.*

The evidence supports that Poe subjected to Doe to unwanted, inappropriate, and juvenile harassment, both verbal and physical.  To establish liability under Title IX, however, Doe must demonstrate that the harassment she endured was based on her sex and was gender oriented.  Doe has largely failed to do so.  Further, Doe has failed to demonstrate that the sexual harassment she did receive from Poe was "severe, pervasive, and objectively unreasonable." For these reasons, Doe cannot support her claims and summary judgment is entered for the Defendant.

## IV.      CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment No. 6: Jane Doe, filed by the Board of Supervisors of

---

[119] *Id.*
[120] *Id.*

Louisiana State University and Agricultural and Mechanical College[121] and Defendant's Motion for Summary Judgment No. 6: Jane Doe[122] are **GRANTED.**

 **IT IS FURTHER ORDERED** that Plaintiff Jane Doe's claims against Defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College are **DISMISSED WITH PREJUDICE**.

 New Orleans, Louisiana, December 31, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[121] R. Doc. 474.
[122] R. Doc. 374.